IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALEXANDER E. JONES, | § | Case No. 22-33553 |
| | § | |
| Debtor. | § | (Joint Administration Requested) |
| | § | |

**DEBTOR'S INITIAL STATUS REPORT**

TO THE HONORABLE CHRIS LOPEZ, UNITED STATES BANKRUPTCY JUDGE:

Alexander E. Jones ("Jones"), (the "Debtor"), debtor and debtor in possession in the above-captioned Chapter 11 case, and pursuant to the *Order Granting Debtor's Motion for Status Conference* [Docket No. 9] entered on December 3, 2022, files this Initial Status Report and in support thereof, respectfully states as follows:

**A.   Debtor's Background**

1.   Jones hosts a syndicated radio and video talk show in Austin, Texas and has done so since age 17.  Free Speech Systems, LLC ("FSS") FSS is a single member LLC, 100% owned by Jones, that produces and syndicates much of the show.  In addition, FSS offers high-end dietary supplement products, books, t-shirts, and other products, which are solely promoted and advertised by Jones during his radio and streaming video talk shows, for online sale to customers at the Infowars web site.

**B.   The Sandy Hook Litigation Commenced in 2018**

2.   In late 2012 and early 2013, Jones learned about and spoke on his show about, a conspiracy theory revolving around the Sandy Hook murders.  Without prior notice or demands, in 2018 the first lawsuits were filed against FSS and Jones in Connecticut and Texas.  The suits sought damages in for defamation and intentional infliction of emotional distress, compensatory

DEBTOR'S INITIAL STATUS REPORT - Page 1

and punitive damages.[1]

C.     **The Trials of the Connecticut and Texas Litigation**

3.     As a result of discovery sanctions, the Connecticut state court entered a series of default findings of liability and at trial prohibited the defense from offering almost all of their evidence in support of those defenses. As a result, and only in the damages phase, a jury awarded compensatory damages of $956,000,000. The Connecticut court added additional punitive damages, including attorney's fees and costs in the amount of $473,140,000, for a total award of **$1,429,140,000.**

4.     In Texas, as the first tried of these cases, the Travis County district court also entered several discovery sanctions defaults on liability, and likewise restricted most defenses of those damages claims. The court submitted both compensatory and punitive damages to a jury which awarded $4,100,000 in actual damages and over ten times actuals, or $45,200,000, in punitive damages, for a total of $49,300,000. Post-verdict, the Texas court made a *sua sponte* ruling that the Texas statutory tort reform "caps" generally applicable to tort damages were unconstitutional and permitted the amended pleadings adding for the first time *criminal* elder abuse.[2]

D.     **The Status of Entry of Judgments**

5.     Neither state court has entered a judgment on these verdicts and post-verdict actions. Although FSS agreed to orders conditionally lifting the automatic stay through entry of a judgment there has been no request to lift the stay to allow the Texas or Connecticut Court to enter a final appealable judgment against Jones.

---

[1]    A count was added in the Connecticut suit under that state's consumer protection statute and in the Texas suit (***post-verdict***) the court permitted new pleadings adding a count for criminal elder abuse.
[2]    The purpose of the criminal elder abuse cause of action was to remove the "cap" for tort damages which would have totaled $1.5 million for both Plaintiffs.

**DEBTOR'S INITIAL STATUS REPORT - Page 2**

6. Jones intends to seek authorization to coordinate the mediation and appeals so that there will not be multiple appeals by entering a Judgment against FSS (that has agreed to a lift stay only through entry of the judgment) and the Jones case stay that prevents such judicial action.[3] Both Jones and FSS intend to prosecute appeals to final judgment if a settlement is not reached.

**E.    The Proposed Mediation Supported by FSS and Jones**

7. Between these trials and verdicts, FSS and Jones have participated in initiating a proposed mediation reflected by this Court's order appointing a mediator. Jones has initially participated and indicated that he would also be prepared to mediate with these parties to attempt to reach a good faith, realistic settlement and resolution.

8. Jones will submit a matching order for mediation to be entered in this case.

**F.    "First Day" and The Debtor's Work Following**

9. While we do not anticipate standard "first day" pleadings, Jones will be filing a utility motion, professional employment applications, a motion to extend the deadline to file schedules and SOFA, an interim compensation motion, a motion regarding his employment agreement and payment, a claims bar date motion, and other contested matters.

10. With respect to this case, Jones is in the process of hiring and educating a reputable financial advisor to assist him with getting all details of past and present transactions organized and reported. Jones and his counsel believe having a financial advisor will not only help Jones reduce unnecessary expenses by putting in proper procedural controls, but also help put together what will be needed to assist other professionals in this case, in terms of records and reporting.

---

[3] *In re Vela*, No. 1-09-45134-dem, 2009 Bankr. LEXIS 2719, at *7-8 (Bankr. E.D.N.Y. Sep. 3, 2009): There is no evidence presented to the effect that the state court judge decided to grant LibertyPointe Bank's request prior to the date of the bankruptcy filing. *Thus, the state court's action can not fall within the category of a ministerial act, which even though undertaken subsequent to a bankruptcy filing, does not fall within the proscription of the automatic stay. …. The state court judge's act of signing the Memorandum Decision confirming the referee's report was an act in violation of the automatic stay.*

**DEBTOR'S INITIAL STATUS REPORT - Page 3**

This financial advisor will also interface with the FSS CRO Patrick McGill and the FSS Subchapter V Trustee's financial advisor, M3, to ensure that information requests are timely honored and duplication of efforts are avoided.

11. In addition to the overwhelming cost of the litigation with the Plaintiffs (estimated to exceed $13 million), Jones has incurred multiple other related legal costs. Furthermore, Jones's attention over last few years has been focused on his talk show and his family, and thus his personal finances, somewhat disorganized, are being reviewed and analyzed to ensure clarity and integrity of information going forward. Jones and FSS lost a great deal of money trusting people who did not have the ability or the character to handle the finances. As an example, Jones' contributions to FSS during only 2022 reflects the scope of this problem. Jones contributed (i) approximately $9 million to FSS up through the filing of its Chapter 11 case, and (ii) an additional $1.3 million to fund product shipping and consignment product purchases to maintain the FSS operations.

G. **Jones Assets, Liabilities, Schedules and Plan**

12. As of the Petition Date, Jones estimates that he personally has less than $12 million in assets (including an IRS deposit of $4.1 million and administrative costs due from FSS to Jones of approximately $1 million). Although Jones has a written employment agreement with FSS, including an indemnity for the litigation costs, his $1.3 million salary has gone unpaid for 2022 (other than partial post-petition payments beginning in August, 2022 *at approximately 40% of his contract salary*). FSS requires the continued participation by Jones in order to stay in business and make its plan payments or mediated settlement payments. What a plan of reorganization for Jones will look like depends in great part upon the other parties in this case. It is practically and functionally impossible for a human being who has less than $12 million in assets, who makes less than $2 million a year from the FSS business, to pay over $1.5 billion in debt. So, while Jones comes to this Court in good faith and wants to reach an amicable resolution between all the parties,

it is imperative that all parties do the same.  Any argument that Jones must give up his public life, or discontinue public discourse is contrary to supporting his ability to fund a plan and pay creditors, leaving Jones with limited options.

13. Jones's intention is to continue his broadcasts and The Alex Jones Show, and simultaneously proceed with this Chapter 11, acting in the best interests of the estate and the creditors, participating in good faith in the mediation process, and fulfilling all obligations for information transparency in pursuit of a fair and reasonable compromise and settlement.

**CROWE & DUNLEVY, P.C.**

By: */s/ Christina W. Stephenson*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
        aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**PROPOSED  ATTORNEYS  FOR  DEBTOR
ALEXANDER E. JONES**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon all parties registered to receive notices via the Court's ECF noticing system on this 6th day of December, 2022.

/s/ *Christina W. Stephenson*
Christina W. Stephenson