```
 1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                          HOUSTON DIVISION

 3                                  )   CASE NO: 22-33553-cml
                                    )
 4    ALEXANDER E. JONES,           )   Houston, Texas
                                    )
 5            Debtor.               )   Monday, January 23, 2023
                                    )
 6    _____)   2:02 P.M. TO 2:42 P.M.
                                    )
 7                                  )   CASE NO: 22-60043-cml
                                    )
 8    FREE SPEECH SYSTEMS LLC,      )
                                    )
 9            Debtor.               )
                                    )
10    _____)

11
                                 TRIAL
12
              BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
13                 UNITED STATES BANKRUPTCY JUDGE

14    APPEARANCES:

15    For Creditors:          AVI MOSHENBERG
                              DAVID ZENSKY
16                            McDowell Hetherington LLP
                              2300 N. Field Street, Suite 1800
17                            Dallas, TX 75201

18                            RYAN E. CHAPPLE
                              Cain & Skarnulis, PLLC
19                            303 Colorado Street, Suite 2850
                              Austin, TX 78701
20
      For Melissa A. Haselden: ELIZABETH FREEMAN
21                            The Law Office of Liz Freeman
                              P.O. Box 61209
22                            Houston, TX 77208

23    For Alexander E. Jones: VICKIE DRIVER
                              CHRISTINA WALTON STEPHENSON
24                            Crowe & Dunlevy, PC
                              2525 McKinnon Street, Suite 425
25                            Dallas, TX 75201
```

```
 1
                              SHELBY JORDAN
 2                            Jordan & Ortiz, PC
                              500 N. Shoreline, Suite 900 N
 3                            Corpus Christi, TX 78401

 4    For the U.S. Trustee:   JAYSON B. RUFF
                              Office of the U.S. Trustee
 5                            515 Rusk Street, Suite 3516
                              Houston, TX 77002
 6
      For Free Speech         RAYMOND WILLIAM BATTAGLIA
 7    Systems, LLC:           Law Offices of Ray Battaglia, PLLC
                              66 Granburg Circle
 8                            San Antonio, TX 78218

 9    Court Reporter:         ZILDE MARTINEZ

10    Courtroom Deputy:       ZILDE MARTINEZ

11    Transcribed by:         Veritext Legal Solutions
                              330 Old Country Road, Suite 300
12                            Mineola, NY 11501
                              Tel: 800-727-6396
13

14

15    Proceedings recorded by electronic sound recording;
      Transcript produced by transcription service.
16

17

18

19

20

21

22

23

24

25
```

1

2        HOUSTON, TEXAS; MONDAY, JANUARY 23, 2023; 2:02 P.M.

3                        (Call to Order)

4            CLERK:  All rise.

5            THE COURT:  Okay.  Good afternoon, everyone.  This

6    is Judge Lopez.  Today is December 7th.  I'm going to call

7    the 2 o'clock case.  It's the case of Alexander Jones, 22-

8    33553.  We're on a status conference.  The line is currently

9    completely muted.  Parties who wish to make an appearance

10   and you think you may want to speak and you're online, I'm

11   going to ask that you please hit 5*.

12           I'm also going to ask those who may be

13   participating by video -- happy that you're able to do so,

14   but just a friendly reminder that I still consider virtual

15   court as an extension of this court, so I would ask that

16   everyone please be mindful of your background.

17           Let me -- I'm just going to -- for the folks in

18   the courtroom, I'm just going to unmute a few lines here

19   just to make it a little easier, and then we'll see where we

20   go.  There is a last four digits 326 -- 7326.  I'm going to

21   unmute your line.  Let's see.  Okay, why don't we take

22   appearances in the courtroom?

23           MS. STEPHENSON:  Good afternoon, Your Honor.

24           THE COURT:  Good afternoon.

25           MS. STEPHENSON:  Christina Stephenson, Vickie

1    Driver, and Allison Gerard with Crowe and Dunlevy, and

2    Shelby Jordan from Jordan and Ortiz, for the debtor.

3           THE COURT:  Okay.  Good afternoon.  Good to see

4    you.

5           MR. RUFF:  Good afternoon, Your Honor.  Jayson

6    Ruff and Ha Nguyen for the U.S. Trustee's Office.

7           THE COURT:  Good afternoon.

8           MR. MOSHENBERG:  Good afternoon, Your Honor.  Avi

9    Moshenberg and Nick Lawson for the Texas plaintiffs, and

10   we're going to have David Zensky today speaking on behalf of

11   the Texas plaintiffs.

12          THE COURT:  Okay.  Mr. Zensky, have I unmuted your

13   line?  And if not, I may ask you to hit 5* so I can unmute

14   you.

15          MR. ZENSKY:  I believe you have, Your Honor.  Can

16   you hear me?

17          THE COURT:  Just fine, thank you.  I'm going to

18   keep your line --

19          MR. ZENSKY:  Thank you.

20          THE COURT:  -- completely unmuted.  I'm not going

21   to mute you, so just -- if you wouldn't mind, just monitor.

22   I'll keep you --

23          MR. ZENSKY:  Absolutely, Your Honor.

24          THE COURT:  Thank you.  Anyone else in the

25   courtroom wish to make an appearance?

1          MS. FREEMAN:  Good afternoon, Your Honor.

2    Elizabeth Freeman.  I am the counsel for Melissa Haselden,

3    the Sub V trustee for Free Speech Systems.  We are here to

4    observe and answer any questions, but we don't expect to be

5    participating today.

6          THE COURT:  Okay.  Good afternoon.  Good

7    afternoon, Ms. Haselden.  I see you there as well.  Okay.

8    Let me turn to the virtual world.  If anyone wishes to make

9    an appearance, why don't you hit 5*?  All righty.  There is

10   a, let's see, 9405 number.

11         MR. BATTAGLIA:  Good afternoon, Your Honor.  Ray

12   Battaglia for Free Speech Systems as well.  I'm probably an

13   observer today.

14         THE COURT:  Okay, thank you.  Good to see you, Mr.

15   Battaglia.  Anyone else wish to make an appearance?  Okay.

16   People certainly can reserve their right to make an

17   appearance, but why don't we proceed?  Thank you.

18         MS. STEPHENSON:  Thank you, Your Honor.  Thank you

19   for making the time for us to come in for this today.

20         THE COURT:  My pleasure.

21         MS. STEPHENSON:  We filed a petition for Alexander

22   Jones, or as he's better known, Alex Jones, on December 3rd.

23   We filed last night an initial status conference report, the

24   Docket 21 to give the Court and all parties in interest a

25   limited background and a preview of sort of where we are and

1    where we intend to go.  We hope it was helpful for Your

2    Honor.

3              THE COURT:  It was, thank you.

4              MS. STEPHENSON:  We intend to run this case

5    quickly.  We want to catch up with the Free Speech Systems

6    bankruptcy case, and I'll call that FSS, if that's all

7    right.

8              THE COURT:  Completely fine.

9              MS. STEPHENSON:  We want to engage in a

10   coordinated effort to communicate and avoid any duplication

11   of effort.  As Your Honor may remember, the Free Speech or

12   FSS case is 100 percent owned by Mr. Jones.

13             THE COURT:  Mm-hm.

14             MS. STEPHENSON:  And FSS produces and syndicates

15   Mr. Jones's radio and video talk show.  To this end, we

16   filed a motion for joint administration to try to reduce

17   unnecessary expenses and streamline issues where the two

18   debtors are aligned.  We have not sought substantive

19   consolidation.  The debtor also filed an emergency motion in

20   the FSS case, which Your Honor may have seen already.

21             THE COURT:  I did see.

22             MS. STEPHENSON:  That is an emergency motion to

23   modify certain lift stay orders to prevent judgements from

24   being entered at different times against FSS and Mr. Jones

25   in the underlying litigation so that we don't have different

1    appellant deadlines running, and also to avoid the automatic

2    stay being violated as to Mr. Jones.

3           We intend to file a motion for extension on the

4    deadline to file schedules and statement of financial

5    affairs so that the financial advisor can have an

6    opportunity to get in there and analyze records.  We are

7    currently going back and forth with the United States

8    Trustee's Office to reach an agreed-upon length of time on

9    that.

10           THE COURT:  Okay.

11           MS. STEPHENSON:  The debtor intends to also

12   participate in mediation with FSS and the litigation

13   plaintiffs in the hopes that an amicable resolution can be

14   reached.

15           THE COURT:  Okay.

16           MS. STEPHENSON:  And mostly, Your Honor, we wanted

17   to come today and let the Court know that Mr. Jones intends

18   to proceed with this Chapter 11 case in the best interests

19   of the estate and the creditors, and fulfill his obligations

20   in pursuit of a fair and reasonable compromise and

21   settlement.  Thank you.

22           THE COURT:  Thank you.  Is Mr. Jones available

23   online, or --

24           MS. STEPHENSON:  He is not available online today,

25   Your Honor.  He earlier had a family commitment that he had

1    to attend to.

2              THE COURT:  Okay.

3              MS. STEPHENSON:  Thank you, Your Honor.

4              THE COURT:  I'm always available if folks need to

5    move hearings back or ask for an adjustment of time.  I'm --

6    okay, so what do we need to do today?  Is there any business

7    we need to conduct today?

8              MR. ZENSKY:  Your Honor, David --

9              THE COURT:  (indiscernible) -- Mr. Zensky, I just

10   have a couple of questions before I open it up, and this is

11   just me just trying to catch up.  Somebody can provide me

12   just kind of a latest update as to where things stand in the

13   Texas litigation and the Connecticut litigation.  Just a

14   10,000-foot level.

15             MS. STEPHENSON:  We're post-jury verdict, pre-

16   judgement being entered in both cases, Your Honor.

17             THE COURT:  Okay.

18             MS. STEPHENSON:  And that is just flat procedural.

19   We -- we have (indiscernible) since Tuesday --

20             THE COURT:  That's all I'm looking for.

21             MS. STEPHENSON:  So, yes, thank you.

22             THE COURT:  Okay, so post-verdict, pre-judgement.

23   Is there any timing folks are thinking about, or -- I'm

24   trying to understand your lift stay motion.  That's where

25   I'm going.

1          MS. STEPHENSON:  Your Honor, in the Free Speech

2     case, originally there was a motion for relief from stay and

3     an order entered that allowed that to go through judgement.

4     Your Honor, we think that the Alexander Jones case would

5     prevent judgement being entered against him under the stay,

6     so if a judgement is entered against FSS and Alex is not,

7     then we'll have two different appellant deadlines.

8          The other issue is that if a judgement is entered,

9     it does start that appellant deadline, and what we'd really

10    like to do is focus everyone's efforts on the mediation

11    instead of moving full speed ahead in an appeal, which is,

12    just from Mr. Jones's and FSS's perspective, necessarily

13    reducing from any recovery that could be recovered by the

14    plaintiffs.  And so, it's just a bit of a vicious circle, so

15    we just feel like this -- this pause button that we're

16    getting in the stay is worth putting into the FSS case as

17    well so that we can all be, number one, running on the same

18    timeline, and number two, just not running the risk of

19    everybody spending a lot of money.

20          And if there is a resolution at mediation, it just

21    would moot the appeal, so we really feel like it's just a --

22    it's wasted time, money, and effort that really should be

23    put towards the best efforts in a mediation at this time.

24          THE COURT:  Okay.  Is there something that you're

25    seeking in terms of a mediation order different --

1              MS. STEPHENSON:  No, Your Honor.

2              THE COURT:  -- than what I've already entered?  Or

3       --

4              MS. STEPHENSON:  No, Your Honor.  We -- we have --

5       Mr. Jones has seen himself as being subject to and

6       participating under that order.

7              THE COURT:  Mm-hm.

8              MS. STEPHENSON:  -- if we need to enter it in this

9       case.  We don't feel like we need to, because we always felt

10      that we were part of that order.

11             THE COURT:  Okay.  And -- okay, and in terms of

12      timing on the emergency motion, when are you looking to come

13      back for that -- and joint admin, quite frankly?

14             MS. STEPHENSON:  Certainly.  I think a hearing

15      next week would be great, Your Honor.  We just wanted to

16      make sure that -- and I think if plaintiffs' counsel is

17      noticed herein, that hopefully we'll all work together and

18      figure out what we're going to do with that motion for

19      relief from stay before anybody takes any efforts to sever

20      Mr. Jones in those actions and try to move forward with the

21      judgement against FSS.

22             THE COURT:  Okay.  Let me look.

23             MR. ZENSKY:  Your Honor, could we be heard before

24      the hearing is scheduled on that issue, please?

25             THE COURT:  No, no.  I'm going to hear from

```
1    everyone.  I'm just taking a look at my calendar.  I wasn't
2    going to pick a date on that.
3              MR. ZENSKY:  Thank you.
4              THE COURT:  Yeah, quite frankly -- let me just
5    (indiscernible) the courtroom.  Is there anything else you
6    wish to tell me?
7              MS. STEPHENSON:  No, Your Honor.  We did send out
8    an email last night -- it was about 4:30 -- asking the
9    plaintiffs if they agreed.  I have heard that they do not
10   agree to that relief, so just wanted to be candid with the
11   Court that --
12             THE COURT:  The relief in the motion to lift stay?
13             MS. STEPHENSON:  Yes.
14             THE COURT:  Okay.
15             MS. STEPHENSON:  I did want to be candid with the
16   Court that we do expect an objection there, and I do
17   continue to hope that we can work through that and try to
18   reach a resolution before the hearing.
19             THE COURT:  Okay, sounds great.  Thank you.
20   Anyone else in -- anyone in the courtroom wish to be heard
21   on anything?  Yes, sir.
22             MR. MOSHENBERG:  I'll let Mr. Zensky speak from
23   the bankruptcy perspective, Your Honor, but I am counsel of
24   record in the tort actions by the Texas plaintiffs, so I
25   just wanted to clarify a couple nuanced issues.
```

```
 1                The Court in the Neil Heslin and Scarlett Lewis

 2    case that was tried in the summer --

 3                THE COURT:  Mm-hm.

 4                MR. MOSHENBERG:  -- had a hearing on November 22nd

 5    to enter the judgement.  At the hearing, the Court orally

 6    said that she will enter the judgement.  Before she had a

 7    chance to sign the judgement, Your Honor, the bankruptcy was

 8    filed.  Procedurally, that's what's happened there, Your

 9    Honor.

10                THE COURT:  Okay.

11                MR. MOSHENBERG:  And then, to be clear, the

12    Leonard Pozner case with Veronique De La Rosa -- that was

13    supposed to be scheduled against Alex Jones for late March,

14    but that was -- again, that was scheduled before the

15    bankruptcy had been filed.

16                THE COURT:  Mm-hm.  Mm-hm.

17                MR. MOSHENBERG:  And then, for the estate of

18    Fontaine, Your Honor, that was scheduled for October, Your

19    Honor, so both of those (indiscernible).

20                THE COURT:  October 2023?

21                MR. MOSHENBERG:  Yes, Your Honor.

22                THE COURT:  Okay.  Okay, thank you.

23                MR. MOSHENBERG:  Thank you.

24                THE COURT:  Anyone else in the courtroom?

25                MR. RUFF:  Just briefly, Your Honor.  I understand
```

1  from Your Honor's comments that we'll probably be setting a

2  hearing on the joint administration motion as well.

3           THE COURT:  I just haven't heard from Free Speech

4  as to what their perspective is.  There's a CRO there, so I

5  would --

6           MR. RUFF:  Yeah.  We just --

7           THE COURT:  I would need to hear from them, and

8  anyone else, quite frankly.

9           MR. RUFF:  Yeah.  We would just like the

10  opportunity for at least parties in interest to be able to

11  raise any concerns that we have.  We have some concerns --

12           THE COURT:  The motion.  Everybody gets their --

13           MR. RUFF:  Yeah --

14           THE COURT:  Everybody's rights are preserved on

15  it.  Yeah, I could -- today, no one has asked me for -- to

16  rule on anything or to consider anything today, so we'll

17  pick a date and we'll go forward for joint admin and

18  (indiscernible) because there's just separate counsel,

19  right?  We have a CRO and FSS --

20           MR. RUFF:  (indiscernible) proceedings.  You know,

21  separate confirmation --

22           THE COURT:  (indiscernible)

23           MR. RUFF:  There's lots of issues to be --

24           THE COURT:  Yeah.  So, we've just got to pick a

25  date --

1          MR. RUFF:  Okay.

2          THE COURT:  And go from there, but maybe we pick

3    the same date -- maybe we pick the same date for joint admin

4    if we're going to come next week on a motion to lift stay.

5    And obviously, subject to what -- Mr. Zensky may tell me not

6    to do that, but at some point we'll need to pick a date for

7    those motions and any other motions that are coming.

8          MR. RUFF:  Yeah, we have no opposition to being

9    heard at the same time, so --

10         THE COURT:  Okay.  Okay, thank you.  Mr. Zensky,

11   let me turn to you.

12         MR. ZENSKY:  Thank you, Judge Lopez.  Is it okay

13   if I present to the Court from the table?

14         THE COURT:  Absolutely.

15         MR. ZENSKY:  Okay, thank you.  This is my first

16   appearance in these cases before Your Honor, but as you

17   know, my firm has been involved from the outset in

18   representing both the Texas and Connecticut plaintiffs.  We

19   filed our notice of appearance in this case and you've

20   granted (indiscernible) and other lawyers may come, so thank

21   you for that.

22         Mr. Brimmage, as you know, was involved in the

23   early stages and continues to be as well.  My friend from

24   debtor's counsel has provided their initial perspective on

25   the case, so with the Court's permission, I'd like to

1    provide a few minutes of how the Texas and Connecticut

2    plaintiffs think about the Jones case and address certain

3    issues that were brought up in the initial presentation, if

4    that's okay.

5           THE COURT:  Sure.

6           MR. ZENSKY:  Yeah.  We're just four days into the

7    Alex Jones case, so all of this is preliminary, but we see

8    four sort of dating issues or threshold issues about the

9    Jones case.  The success of this case or the failure of it,

10   in our perspect -- in our view is going to turn on how

11   quickly and how close we get to full disclosure from this

12   debtor about all relevant financial matters, and one might

13   reasonably question whether that's possible.

14          We're here because Mr. Jones has stock in traded

15   lies, not truth, and to give one example, from the four

16   years of state court litigation where you got a different

17   answer depending on what day you asked the question, Judge

18   Bellis, the Connecticut trial judge, observed that the

19   corporate designee for Mr. Jones and FSS, who was supposed

20   to be ready to testify on their financial resources,

21   couldn't or wouldn't tell the parties whether the amount of

22   earnings that the debtor, Mr. Jones and FSS, had made in ten

23   years was 100 million or a billion.  That was the level of

24   disclosure forthcoming in that case, and our clients remain

25   as skeptical, if not more, that they will get any closer to

1   the truth in this case.  Without that, no Chapter 11 can

2   succeed, Your Honor, in our view.

3          Having brought the Chapter 11 and now subjecting

4   himself to the rules of bankruptcy, we will see.  We will

5   hope, cautiously, that the debtor understands his

6   obligations of disclosure and go from there, and that

7   disclosure is not just about the contours of the estate as

8   it exists today.  It includes after-acquired property, which

9   I'll touch on again in a minute, and of course all pre-

10  petition transactions and transfers that will be a keen

11  focus of the Sandy Hook families as basically this debtor's

12  only creditors, and a full and fair evaluation of that will

13  be paramount.

14         The second key that we see to the case, at least

15  at this stage, is asset retention.  Mr. Jones is now a

16  fiduciary for the Sandy Hook families with respect to

17  maintaining, if not maximizing, his estate, and obviously,

18  he may not dissipate current assets or after-acquired assets

19  other than ordinary, of course, living expenses.

20         And I want -- I want to touch on donations, Your

21  Honor.  It's our understanding that Mr. Jones's followers

22  have made more than $10 million of donations to him in

23  response to the verdicts, which as you probably know he

24  publicly mocked as they were being read.

25         THE COURT:  Mr. Zensky, let me tell you, I --

1          MR. ZENSKY:  And under the code --

2          THE COURT:  Mr. Zensky, let me just tell you, I do

3     a really good job of not following any of it, so anything

4     that you're telling me, I'm learning for myself.  I've

5     really, really, really tried to avoid watching anything that

6     could -- affecting any of these cases.  I just -- I just

7     thought it was my job to do so.  So, just -- just clarifying

8     the record on that.

9          MR. ZENSKY:  I appreciate that, Your Honor, and I

10    -- I understand completely.  In any event, that is -- I'll

11    represent that is what actually happened, and donations have

12    flooded in.  Those are property of the estate and, from our

13    perspective, may not be dissipated or done anything --

14    anything can be done with those donations that cannot be

15    done with property of the estate generally.  We'll caucus

16    and confer with debtor's counsel, and if there's any

17    disagreement on that, we will make sure that one or both

18    parties bring on a motion quickly to get that issue

19    resolved.

20          The third point that we see is critical here, of

21    course, is going to be asset recovery.  And our view, not

22    surprisingly, is that Mr. Jones has been insolvent at least

23    since the commencement of these litigations four years ago

24    in finding out where all the money that he has earned has

25    gone in those four years, whether by way of gifts or

 1   secreting or whatever the case may be.  It's going to have

 2   to be examined, focused on and litigated as appropriate to

 3   bring those assets back into the estate.  Needless to say,

 4   we don't view Mr. Jones as the proper player to conduct that

 5   investigation, prosecute those avoidance actions or

 6   preference actions and, if warranted, settle them.  If a

 7   committee is formed, it's our view that will certainly fall

 8   to the committee to conduct and if a committee is not

 9   formed, to individual creditors, meaning the Sandy Hook

10   families acting in a derivative capacity.

11            The last point I want to make before moving on to

12   the comments made prior is the nature of the claims here,

13   and from our perspective, Your Honor, it's clear that the

14   Sandy Hook family claims are non-dischargeable under the

15   express text of 523A(6).  Mr. Jones's conduct was -- "caused

16   willful and malicious injury to another entity."  Those are

17   the words of the discharge exemption.  "Entity", of course,

18   includes a person and that is a main feature of this case

19   that we will bring on in adversary proceedings at the

20   appropriate time to establish that.  We don't think there's

21   any doubt that the claims at issue here meet that standard

22   and as I am presumably informing the Court for the first

23   time, punitive damages were awarded in both cases, which

24   turned on the sort of conduct and standard that the code

25   exempts from discharge.

1              I know we're not here on FSS, but Mr. Battaglia is

2      here and Ms. Freeman.  We'll be making the same application

3      in FSS.  Although FSS is a corporate debtor, the discharge

4      provisions under Subchapter 5 are different than Chapter 11,

5      and a 4th Circuit case has established that, so we're not

6      here to argue it, but if we're giving previews of events to

7      come, this is an important one from our perspective.

8              So now, turning -- let me turn to the issue of the

9      modification motion for Mr. Jones's application to modify

10     the contingent lift stay orders that were entered in FSS.

11     So, as counsel told you, we have notified debtor's counsel

12     that we do plan to oppose the motion.  Our clients are not

13     as concerned as Mr. Jones about the possibility of two

14     different timetables for appeal, but more important, we

15     think that the problem -- if there is a problem, it should

16     be solved the other way, that the same contingent lift stay

17     order should be entered in this bankruptcy case so that

18     judgements can be entered forthwith in both cases and the

19     two debtors can pursue their appeals now.

20             We were surprised by Mr. Jones's posture on this

21     issue as reflected in the motion.  He believes and has said

22     he was treated unfairly by the state courts and that he has

23     valid grounds to eliminate or reduce these verdicts, but now

24     wants to put that off.  We have no doubt the verdicts will

25     be sustained in full, and think there's no time like the

1    present for the appellant process to begin.  So, we come at

2    this from the opposite side as debtor's counsel, and absent

3    any agreement on this, will file a motion in the Jones case

4    to enter the same sort of conditional lift stay order, and

5    that should be heard at the same time as the motion to

6    modify the lift stay in FSS with all respect, and that's why

7    I was asking to be heard before any sort of hearing was

8    scheduled.

9           There's also no emergency of any kind that we can

10   see that would have the FSS appeal deadlines get out in

11   front of the Jones appeal deadlines.  There is still post-

12   trial motion practice left to be completed in Connecticut,

13   and even if judgements were entered against FSS today,

14   tomorrow, based on the fact the stay was lifted, the first

15   appeal papers would not be due for weeks or months.  The

16   record would have to be compiled, so we're prepared to move

17   quickly, but we don't think we need a hearing on this issue

18   next week.  We would suggest sometime the week after,

19   depending on the Court's schedule.

20          I heard counsel's argument that this is an issue

21   of preserving resources and I think she said a vicious

22   circle, which we would agree with, and preserving debtor

23   resources often has resonance with the Court and parties.

24   But here, those resources are going to our clients if not

25   spent on an appellant lawyer, and we'd just as soon have

1    them spend it on the appellant lawyer, subject to the court

2    ruling on the lift stay, and get that process started.

3           Let me just look at my notes, Your Honor, if I

4    may.  With respect to the issue of mediation, we have been

5    engaged with Judge (indiscernible) based on the FSS

6    mediation order and will continue to do so.  If Mr. Jones

7    files a mediation order in this case, of course, we'll

8    provide any comments and respond and either way, we

9    certainly will continue with Judge (indiscernible) in good

10   faith.  We will evaluate any proposals that are made.

11          Our clients remain very skeptical, for the

12   reasons, principally, I discussed earlier about the

13   difficulty in getting full disclosure and the need for full

14   disclosure is equally if not more paramount to any potential

15   mediative solution as it is to contested planned

16   proceedings.  That's what I have, Your Honor, unless you

17   have any questions for me, and I would invite my co-counsel,

18   Ryan Chapel, who is appearing today for the Connecticut

19   plaintiffs to add anything that I may have left out, or Mr.

20   Moshenberg, who is in the courtroom.

21          THE COURT:  Okay.  Mr. Zensky, I have no

22   questions.  I appreciate the statements and the kind of

23   heads-up on what may be coming.  I found it very helpful.

24   Thank you.

25          MR. ZENSKY:  You're welcome, Your Honor.

1      THE COURT:  Okay.  Let's see.  I just unmuted a

2   2814 number.

3      MR. CHAPPLE:  That's me, Your Honor.  Can you hear

4   me okay?  This is Ryan Chapple.

5      THE COURT:  Just fine, thank you.

6      MR. CHAPPLE:  Thank you, Your Honor.  Your Honor,

7   I don't have anything of substance to add other than what

8   Mr. Zensky put forth, but I would like to note that

9   Connecticut trial counsel, Alinor Sterling, is on the line

10  as well, and to the extent you have any -- and we will be

11  filing to the extent it hasn't be filed a motion to pro hoc

12  Ms. Sterling in as well -- but to the extent you have any

13  particular questions relating to the Connecticut litigation

14  that weren't answered, Ms. Sterling and myself are both here

15  and happy to try to assist the Court.

16     THE COURT:  No, I -- unless there's something you

17  want to clarify in terms of where the stage is in the

18  Connecticut litigation at the 10,000-foot level, I -- I feel

19  like I'm comfortable with where things are.

20     MR. CHAPPLE:  And I do not, Your Honor.  I'll

21  certainly provide Ms. Sterling with the opportunity to, and

22  that's it.

23     THE COURT:  Okay.  All righty.

24     MR. CHAPPLE:  Thank you.

25     THE COURT:  Ms. Driver, when do you want to come

1   back for the hearing?  I'm just looking at my schedule.

2            MS. DRIVER:  Your Honor, Monday and Wednesday,

3   Thursday, and Friday are open for me.

4            THE COURT:  And what would we consider taking up

5   at those times?  Joint admin and --

6            MS. DRIVER:  The stay --

7            THE COURT:  And the stay.

8            MS. DRIVER:  And actually, it would be Monday and

9   Friday, Your Honor.  Co-counsel Shelby Jordan is actually --

10  we're both on Wednesday, so if we could look at Monday and

11  Friday, that would be helpful.

12           THE COURT:  I'm in mediation all day on Wednesday

13  -- next Wednesday, so that's --

14           MS. DRIVER:  Or Thursday.

15           THE COURT:  Good.  When do you anticipate filing

16  what I would call the schedule's extension motion?

17           MS. DRIVER:  We're going to be filing that today,

18  Your Honor.  We just wanted to, again, give -- we wanted to

19  give UST some time to look at it, so we've got their

20  position, we're going to get it filed, and we'll continue to

21  work with them to find a date that's agreeable to them.

22           THE COURT:  Okay.

23           MS. DRIVER:  Our -- just so the Court is aware,

24  our -- we have -- Mr. Jones has engaged BlackBriar advisors

25  Bob Schleizer and Harold Kessler as financial advisors, and

1   they've spent the last two days in meetings with folks

2   trying to get the information necessary, get the spigot

3   open, so to speak, to get that financial information and get

4   source documents, so a lot of the issues that Mr. Zensky is

5   concerned about related to Mr. Jones's voracity can

6   absolutely be wiped off the table because Mr. Schleizer as

7   an independent fiduciary won't have any sort of reason to

8   not cite us to source documents.

9            THE COURT:  Okay.

10           MS. DRIVER:  So, that's really the timing issue.

11  I just need to work with them.

12           THE COURT:  I got it.  I -- I think next Friday

13  the 16th would work for me.  Two of the motions are

14  typically heard on 24 hours' notice, the joint admin and

15  schedules extension motions.  So, I'll give everyone an

16  opportunity -- although, I am going to be interested in

17  hearing Mr. Battaglia, obviously Free Speech's, thoughts on

18  it, if any, on -- certainly on joint admin.  That's just as

19  a matter of course.  I think because there's an independent

20  CRO there, I need to -- it's only right for me to hear his

21  thoughts on that as well.  And on the lift stay motion, I

22  think as well we can take that up.

23           I would require any -- no, I'm not going to

24  require any deadline on terms of objection.  I think you

25  know -- you know what's coming, Ms. Driver.  I would just

1    ask the parties, you know, realistically by -- you know, the

2    15th by, I don't know, 4 o'clock just in terms of a response

3    would be helpful for me.  Just give me an opportunity to

4    prepare that evening and the next morning for it.  Mr.

5    Zensky, if you file your motion -- realistically -- I'll let

6    you word it how you want, but I get what you're asking.

7    You're essentially -- why don't we just -- if what you're

8    asking is essentially the opposite, then I -- I'm going to

9    make the call one way or the other, so why don't you get

10   something on file maybe by Monday that we can all look at,

11   and then we'll take everything up on Friday.

12            I'm looking at my calendar.  Would 1 o'clock work

13   for everyone?  It can be --

14            MS. DRIVER:  That works for our side, Your Honor.

15            THE COURT:  Okay, and we can appear virtually.

16   That's fine with me.

17            MS. DRIVER:  Thank you, Your Honor.

18            THE COURT:  What else did we need to take care of

19   today?

20            MS. DRIVER:  Your Honor, I just wanted to say one

21   thing.  We -- one thing that we really want to do is we

22   understand and we've had lots of communications with the

23   Subchapter V trustee in the temperature in these cases

24   staying lower.  So, one of the things that are offices are

25   trying to do is really just work with everybody as closely

1    as we can.  I understand there's a lot of emotion in these

2    cases and I -- there's no way -- we're simply trying to use

3    the bankruptcy court for what it's used for.  I file lots of

4    debtor cases and we're well aware of what debtors are

5    supposed to do in these cases.  This is different.  It's

6    complicated.  It's -- can be heated, but I'm here as an

7    officer of the Court to do the best that I can, and to try

8    to move forward in a way that gets exactly what this

9    bankruptcy court needs, what the code requires, what the

10   rules require, and to try to work towards a resolution.

11          It disheartens me slightly that the plaintiffs are

12   ready for Mr. Jones to spend money on appeals rather than to

13   his client, because it just concerns me about their desired

14   resolution to this matter, because if it's not money, then

15   it begs the question if we -- if we have the ability to

16   settle and if everybody is ready to settle.  So, I just --

17   I'm new, so I get to be a little bit of the newbie in the

18   room.  I have faith in the system, and I came here and I

19   come here with our idea that we're going to work through

20   this process; we're going to work with the Sub V trustee,

21   we're going to work with FSS.

22          Mr. Battaglia and I have talked about the joint

23   administration motion and the stay motion and he had

24   indicated no opposition, so I just want Your Honor to know

25   that we are coordinating with those folks as best as we can.

1   We are drinking from a fire hose, but I also just wanted to

2   let you know that I do not have -- I do not want to go tit

3   for tat with Mr. Zensky on allegations, so I'm just leaving

4   that for another day because I don't feel this was an

5   evidentiary presentation, so I just -- what my -- I just

6   don't want anybody to take my silence as Mr. Jones's

7   position in agreeing to those matters.  Thank you, Your

8   Honor.

9          THE COURT:  Everybody's just staking the ground.

10   I got it.

11          MR. ZENSKY:  Your Honor, it's Mr. Zensky.  Can I

12   just add one comment?

13          THE COURT:  Sure.

14          MR. ZENSKY:  I hope counsel -- thank you.  I hope

15   counsel did not take anything that I said as directed at

16   counsel.  I think I was very clear that we have

17   (indiscernible) misgivings about the debtor.  None of that

18   is directed at counsel, for the avoidance of any doubt.

19          THE COURT:  I got it.  So, Ms. Driver, when do you

20   -- do you think you can get that pleading done by Friday?

21   The schedule extension motion?  Do you think you can get

22   that motion done by Friday, the schedule extension motion?

23   Okay, and we'll just -- we'll take it up at that time.

24   Anything else we need to talk about today?  Anything else?

25   Mr. Jordan?  Sure, come on up.

1          MR. JORDAN:  Just very briefly -- this is a pure

2    protocol issue.  When I came in today, one of the U.S.

3    marshals asked me, "Is Mr. Jones going to be here?" and

4    that's because it is not uncommon for there to be news

5    people, microphones and all these sort of things, and I

6    said, "No, he's not going to be here today," but that I

7    would see if I could arrange a way to notify his office, or

8    their office -- not his, not this particular marshal -- in

9    advance when he was going to be, so they would know.  I

10   suspect they'll put stickers on the doors saying, "No

11   cameras.  Don't come in unless you're -- for business," that

12   sort of thing.

13          And so, I'm just -- but I don't know how to do

14   that.  I don't know who to talk to or whether I should just

15   simply notify your office for your office then to notify the

16   marshals that Mr. Jones will be here, but just the limited

17   amount of that kind of stuff is what I would like the Court

18   to know we want to address and certainly want you to have

19   some understanding of how that process has happened in the

20   past.

21          THE COURT:  Okay.

22          MR. JORDAN:  So, do you have any advice for me as

23   to who I should contact?  I really don't want to do it

24   without -- without your office knowing.

25          THE COURT:  If you just reach out to my case

 1    manager --

 2            MR. JORDAN:  Okay.

 3            THE COURT:  Yeah, plenty of folks have come

 4    through that door and I'm sure there's a process in place

 5    for it all.  I'm sure my case manager knows what it is.

 6            MR. JORDAN:  All right, I'll do that or have

 7    someone (indiscernible).

 8            THE COURT:  Okay, thank you.  Anything else we

 9    need to talk about today?  Okay.

10            MR. BATTAGLIA:  Your Honor?  Your Honor, this is

11    Ray Battaglia.  May I be heard?

12            THE COURT:  Absolutely, Mr. Battaglia.

13            MR. BATTAGLIA:  Just a couple things.  I filed a

14    motion requesting a hearing in connection with extending the

15    plan deadlines, which you had previously extended to the

16    16th, so that deadline expires before my hearings are set on

17    the 19th.  If we could take that up on the 16th, I would

18    appreciate it and that way I don't have to worry about

19    whether or not the expiration of the deadline before the

20    entry of an order is an issue for me.

21            THE COURT:  That's a good point.  What date did I

22    -- did I put it expires on the 16th?

23            MR. BATTAGLIA:  Yes, sir.

24            THE COURT:  Oh.  Maybe that's why I kept looking

25    at the 16th as -- yeah, why don't we take -- why don't we

```
 1   take up that on the 16th, and I don't think you -- you've

 2   already filed something.  Why don't we take that up -- it

 3   seems to me that it makes sense to provide a short extension

 4   of the time.  I think I've got to rule on some things and I

 5   don't -- I'm probably going to have some questions about the

 6   mediation just in terms of what happens now with an

 7   additional party and where that goes.  But I do think at

 8   some point -- and we're getting close to the holidays.  I

 9   think a short extension is appropriate.

10          Let's just figure out what makes the most sense on

11   that to kind of keep the cases at least parallel for now,

12   then we'll see where that goes.  So, Mr. Battaglia, yeah,

13   we'll hold a hearing in Free Speech on the extension of the

14   time to file the plan in that case.  I think that makes

15   sense.

16          MR. BATTAGLIA:  Thank you, Your Honor.

17          THE COURT:  Okay.  Mr. Battaglia, can you get a

18   notice out on that, just kind of a short notice of hearing

19   on that, today?

20          MR. BATTAGLIA:  Of course.

21          THE COURT:  Okay.

22          MR. BATTAGLIA:  Of course.

23          THE COURT:  And we'll set it for -- set it for the

24   same time.  All right.

25          MR. BATTAGLIA:  Fine, Judge.
```

1            THE COURT:  Anything else?

2            MR. ZENSKY:  Just --

3            THE COURT:  Go ahead, Mr. Zensky.

4            MR. ZENSKY:  As a house -- yes, thank you.  As a

5    housekeeping matter, since we'll be filing the motion that's

6    seeking relief in the Jones case, I take it that we should

7    file a notice of hearing for the same time, same day?

8            THE COURT:  Yeah, that makes sense to me.  Yeah.

9    Thank you.

10           MR. ZENSKY:  Thank you.

11           THE COURT:  Okay.  All right.  At some point I'd

12   like to see Mr. Jones.  I think it's important that he be

13   here, and I understand that today may not have been the day,

14   but I -- it's customary for a Chapter 11.  And I'm not

15   saying -- I know you know this.  Judges like to ask

16   questions and kind of make sure that everybody's on the same

17   page and that -- you know, kind of hearing some of the

18   thoughts.  But it sounds like -- if I understand, the goal

19   of this case is to try to dual track it at some point and

20   catch up with where FSS is, although they're different in

21   Subchapter V and a regular Chapter 11, but the timing -- if

22   there's going to be a proposed resolution, to kind of have

23   global one, if I understand it.  And some folks may agree

24   with that; some folks may not.  File motions and I'll

25   consider them when they come.  So, today is not the day for

1    me to consider anything.  I -- today was just a day, it

2    sounds like, for me to just kind of get a little smarter on

3    the issues and we'll see where things go.  So, it sounds

4    like I'll see everyone on the 16th.  All righty.  Thank you

5    very much.  Have a good day.

6              CLERK:  All rise.

7         (Proceedings adjourned at 2:42 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              <u>CERTIFICATION</u>

2

3       I certify that the foregoing is a correct transcript from

4       the electronic sound recording of the proceedings in the

5       above-entitled matter.

6

7       <i>Sonya M. Ledanski Hyde</i>

8

9

10      Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20      Veritext Legal Solutions

21      330 Old Country Road

22      Suite 300

23      Mineola, NY 11501

24

25      Date:  January 25, 2023