```
 1                    UNITED STATES BANKRUPTCY COURT
                       SOUTHERN DISTRICT OF TEXAS
 2                          HOUSTON DIVISION

 3                                    )   CASE NO: 22-33553-cml
                                      )
 4                                    )   Houston, Texas
       ALEXANDER E. JONES,            )
 5               Debtor.              )   Friday, January 20, 2023
                                      )
 6                                    )   10:04 A.M. TO 12:43 P.M.
       ------------------------------)
 7                                    )   CASE NO: 22-60043-cml
                                      )
 8                                    )
       FREE SPEECH SYSTEMS, LLC,      )
 9               Debtor.              )
                                      )
10                                    )
       ------------------------------)
11

12                         STATUS CONFERENCE

13          BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                   UNITED STATES BANKRUPTCY JUDGE
14

15     APPEARANCES:

16     For the William
       Aldenberg, et al.:       RYAN E. CHAPPLE
17                              Cain & Skarnulis, PLLC
                                303 Colorado Street, Suite 2850
18                              Austin, TX 78701

19                              AVI MOSHENBERG
                                DAVID ZENSKY
20                              McDowell Hetherington, LLP
                                1001 Fannin Street, Suite 2400
21                              Houston, TX 77002

22     For Free Speech
       Systems, LLC:            RAYMOND WILLIAM BATTAGLIA
23                              Law Offices of Ray Battaglia, PLLC
                                66 Granburg Circle
24                              San Antonio, TX 78218

25
```

```
 1                                 R.J. SHANNON
                                   Shannon & Lee LLP
 2                                 700 Milam Street, Suite 1300
                                   Houston, TX 77002
 3
       For PQPR:                   STEPHEN LEMMON
 4                                 Streusand Landon Ozburn and Lemmon
                                   1801 S Mopac Expressway, Suite 320
 5                                 Austin, TX 78746

 6     For Melissa A. Haselden:    ELIZABETH CAROL FREEMAN
                                   Law Office of Liz Freeman
 7                                 P.O. Box 61209
                                   Houston, TX 77208
 8
                                   MELISSA A. HASELDEN
 9                                 Haselden Farrow, PLLC
                                   Pennzoil Place
10                                 700 Milam, Suite 1300
                                   Houston, TX 77002
11
       For Alexander E. Jones:     VICKIE L. DRIVER
12                                 CHRISTINA WALTON STEPHENSON
                                   Crowe & Dunlevy, PC
13                                 2525 McKinnon Street, Suite 425
                                   Dallas, TX 75201
14
                                   SHELBY A. JORDAN
15                                 Jordan & Ortiz
                                   500 N. Shoreline, Suite 900 N
16                                 Corpus Christi, TX 78401

17     For the U.S. Trustee:       JAYSON B. RUFF
                                   Office of the U.S. Trustee
18                                 515 Rusk Street, Suite 3516
                                   Houston, TX 77002
19
       For Connecticut            ALINOR STERLING
20     Plaintiffs:                Koskoff Koskoff and Bieder
                                   350 Orange Street
21                                 New Haven, CT 06511

22     For W. Marc Schwartz
       And Schwartz:               MIKE RIDULFO
23                                 Kane Russell Coleman Logan
                                   Sage Plaza
24                                 5151 San Felipe, Suite 800
                                   Houston, TX 77056
25
```

```
 1    For Texas Plaintiffs:     SARA BRAUNER
                                 Akin Gump Strauss Hauer & Feld, LLP
 2                               1111 Louisiana Street, 44th Floor
                                 Houston, TX 77002
 3
      For Creditor David
 4    Wheeler, et al:           KYLE KIMPLER
                                 Paul Weiss Rifkind Wharton &
 5                               Garrison, LLP
                                 1285 Avenue of the Americas
 6                               New York, NY 10019

 7
      Court Reporter:           ZILDE MARTINEZ
 8
      Courtroom Deputy:         ZILDE MARTINEZ
 9
      Transcribed by:           Veritext Legal Solutions
10                               330 Old Country Road, Suite 300
                                 Mineola, NY 11501
11                               Tel: 800-727-6396

12


13
      Proceedings recorded by electronic sound recording;
14    Transcript produced by transcription service.

15

16

17

18

19

20

21

22

23

24

25
```

1                                   INDEX

2    DEBTORS' WITNESSES    DIRECT    CROSS    REDIRECT    RECROSS

3

4

5

6    GOVERNMENT'S WITNESSES    DIRECT    CROSS    REDIRECT    RECROSS

7

8

9

10   DEBTORS' EXHIBITS                              RECEIVED

11   Exhibits 1 through 7                           77

12

13

14   GOVERNMENT'S EXHIBITS                          RECEIVED

15

16

17

18

19

20

21

22

23

24

25

1          HOUSTON, TEXAS; FRIDAY, JANUARY 20, 2023; 10:04 A.M.

2                              (Call to Order)

3          MR. RUFF:  Your Honor, I did have a chance to talk

4     with Mr. Shannon about the exhibits.  You know, from our

5     perspective, I mean, the record is the record already.  And

6     so the extent we're trying to introduce anything new into

7     the record, we object.  And to the extent something is

8     already in the record, it's there.

9          THE COURT:  What I think we can do, I think I can

10    admit 1 through 12 for purposes of this motion, not for

11    purposes of -- the purposes -- you're making your case

12    whether I grant the rehearing and then open the record.  But

13    nothing that I introduce today obviously can be considered

14    part of the record in the prior hearing, the prior hearing

15    stands for itself.  If what you're asking me to do is admit

16    that these are the documents that you admitted in support of

17    the relief requested today for that purpose, I'm okay with

18    it.

19         MR. RUFF:  Okay.

20         THE COURT: All right?

21         MR. SHANNON:  And, Your Honor, Exhibits 13 through

22    26 we had submitted as demonstrative of the evidence that

23    would be submitted at a hearing because -- you know, talk

24    about what that evidence would look like.  So I think on the

25    basis that the Court just said, that it's not in the record

1    as evidence, that would apply to those as well.

2         THE COURT:  Right, but you just said that they are

3    demonstrative, right?  Now, if you want to just put on the

4    demonstrative, you can.  But I'm not going to admit a

5    demonstrative into evidence.  As well as Exhibit 27, which

6    is the presentation.

7         MR. SHANNON:  Right.

8         THE COURT:  But it certainly will be part of the

9    hearing if you go through it.

10        MR. SHANNON:  Okay.

11        THE COURT:  I'll give you every opportunity.  I'm

12   going to give you as much time as you need.  You obviously -

13   - you took a lot of time to prepare stuff, and I'm going to

14   sit here and I'm going to listen to every word you say.

15        MR. SHANNON:  And it goes quicker than it looks,

16   Your Honor.

17        THE COURT:  No, no, no.  That's not intended to

18   rush you.  It's intended to just say this is serious

19   business and I want to make sure that you have every

20   opportunity to make the case.

21        MR. SHANNON:  Thank you, Your Honor.

22        So I do think it makes some sense to start with

23   the background here, Judge.  We are here because the Court

24   denied the Debtor's application to employ Shannon & Lee.

25   And again, I'm just here for Shannon & Lee.  Mr. Ridulfo is

1    here for Mr. Schwartz.  But the Court's ruling appears to be

2    based on the conclusion that Shannon & Lee is at least

3    potentially not a disinterested person due to a

4    predisposition under circumstances that render the

5    predisposition and interest materially adverse to the

6    Debtor's bankruptcy.

7         The actual adverse interest wasn't articulated in

8    that ruling, but the Court mentioned the ability to make

9    difficult decisions with respect to Alex Jones PQPR.  But

10   the Court did leave open --

11        THE COURT:  Hold on a second.

12        All right, folks.  You're going to have to hit

13   five-star.

14        Please continue.

15        MR. SHANNON:  But the Court did leave open some

16   questions about where the ruling leaves Shannon & Lee in

17   terms of retention for the work that was already done and

18   the compensation for those services provided prior to the

19   Court's ruling.  And I do think that was consistent with

20   some of the cases that were mentioned in that ruling,

21   particularly LTHM Houston Operations LLC.  I also think it's

22   consistent with what I understand to be the Court's ruling,

23   which was that the Debtor failed to meet its burden of proof

24   since no party asserted that Shannon & Lee actually had an

25   adverse interest.  And --

```
 1              THE COURT:  Let me ask you a question.  Say one of

 2     the standards for confirmation under 1129 is good faith and

 3     no party raises an objection.  Do you still have to -- does

 4     the Debtor still have to prove good faith in connection with

 5     confirmation?

 6              MR. SHANNON:  Yes, Your Honor.  But I think that

 7     failing to prove it doesn't establish bad faith.  It

 8     establishes that they failed to mee the burden of proof.

 9              THE COURT:  Does the Debtor still have the burden

10     to prove good faith even if no one else objects to it?

11              MR. SHANNON:  You know, what that burden means in

12     that situation --

13              THE COURT:  I'm just asking you.  You've got to

14     prove 1129.  I've got to make a finding that there's good

15     faith.  Right?  Does the Debtor still have to prove good

16     faith, or can I just overlook it and say oh, I need to make

17     a separate finding on good faith?  I'll give you another

18     example.  Say the Debtor wants to assume an executory

19     contract.  Nobody raises an objection about the assumption.

20     Does this Debtor still need to meet the burden to assume a

21     contract under 365 or reject it?

22              MR. SHANNON:  Well, Judge, I think without an

23     objection --

24              THE COURT:  I should just sign orders?

25              MR. SHANNON:  Well, Bankruptcy Local Rule 9013-
```

1    1(g) says, you know, allegations in a pleading -- well, it

2    incorporates Rule 8 of the Federal Rules of Civil Procedure.

3    If there's not an objection to a pleading --

4            THE COURT:  I should just sign it?

5            MR. SHANNON:  Well, Judge, I think -- and what we

6    were really arguing is that if you raise it, Judge, it

7    should be raised before a hearing so that someone can say

8    okay, I need to prove that to the Judge.

9            THE COURT:  So the Code says let's just say good

10   faith.  Right?  Or the plan is feasible.  So somebody has to

11   object to that even though the Code says it?  Someone has to

12   raise it and the judge has to say, well, what about

13   feasibility, what about good faith, and what about

14   1129(a)(7), (a)(10)?  I've got to then raise the issue so

15   that the Debtor knows that they've got to satisfy the Code?

16           MR. SHANNON:  I think, Judge, that if no one

17   raises the issue, what I'm really saying is that, well, what

18   is the outcome of the finding that I'm not going to confirm

19   the plan.

20           THE COURT:  So then I've got to say, oh, nobody

21   raised 1129(a)(7), you get another rehearing to prove

22   because no one did?  You didn't have to prepare for it?  Or

23   should you just have to prepare for it?

24           MR. SHANNON:  I just think what does that ruling

25   mean when you would deny it because they have not met the

1    burden of proof.  It doesn't mean -- it doesn't prove the

2    opposite.  Right?  Failing to meet a burden of proof doesn't

3    prove, again, the opposite.

4         THE COURT:  So I should -- if the Debtor doesn't

5    meet its burden, I should just sign the order?

6         MR. SHANNON:  No.  I think that if the Debtor

7    doesn't meet its burden, you should essentially do what

8    we're saying here and what LTHM --

9         THE COURT:  Give them a round two and if they

10   don't do it in round two, then let's do it round three until

11   they finally get it right?

12        MR. SHANNON:  I don't think there can be a round

13   three.  Because if you say you didn't raise this, you need

14   to present evidence.  I'm not going to grant it based on the

15   evidence in front of me.  You kind of -- then it's raised

16   and so then there would be no round three.  It would be a

17   round two.

18        THE COURT:  So now the United States Trustee has

19   the burden to identify every issue.  So now the Trustee is

20   now going to have to file pleadings identifying every

21   potential objection that it could raise and that's going to

22   be the standard for moving going forward in this district?

23        MR. SHANNON:  I think that's what the bankruptcy

24   local rules require.  That's what Federal Rule of Civil

25   Procedure 8 requires.

1              THE COURT:  So you're saying under 1129 -- let's

2      just say there's questions about feasibility of the plan.

3      Evidence is presented on the feasibility of the plan.  No

4      one raises the feasibility issue, the judge should just sign

5      the order?

6              MR. SHANNON:  No, that's not what I'm saying,

7      Judge.  I'm saying that you should raise it.

8              THE COURT:  We'll give you a do-over.

9              MR. SHANNON:  That you should raise it and say no

10     one argued this, you need to come back and convince me about

11     this.

12             THE COURT:  Okay.

13             MR. SHANNON:  And that's why we're seeking -- this

14     is a Rule 59(a) motion, not a Rule 59(e) motion.  Because I

15     actually agree with you that if you're not convinced, then a

16     Rule 59(e) motion isn't really the appropriate way.  It's

17     Rule 59(a).

18             THE COURT:  Okay.

19             MR. SHANNON:  So to address the Court's questions,

20     again, we filed two motions.  The one we're here on today is

21     the Rule 59 motion.  We also filed an administrative expense

22     motion.  We're not here on that today.  But I do want to

23     talk about a comparison of the relief requested between

24     these two.

25             In the Rule 59 motion what we are requesting is a

1    rehearing.  Right?  To present that evidence that because it

2    wasn't an issue identified but the Court raise it, we want

3    to actually present that evidence, to have it actually be an

4    issue in controversy, despite the fact that it wasn't raised

5    and disinterestedness would have been deemed admitted under

6    Bankruptcy Local Rule 9013(g) --

7            THE COURT:  During the hearing, for example, you

8    asked Mr. Lee if he had ever taken a position contrary to

9    Mr. Jones.  And he highlighted an issue with -- in

10   connection with the cash collateral order.  And then I

11   corrected him and said that was an issue that I raised but

12   the Debtor had actually filed a motion.  How is that

13   (indiscernible)?  Doesn't that go to disinterestedness?

14           MR. SHANNON:  Well, Judge, at the beginning of the

15   hearing --

16           THE COURT:  Who asked the question?

17           MR. SHANNON:  Judge, at the beginning of the

18   hearing, you mentioned about whether there was a conflict,

19   right?  And so there was evidence about the conflict

20   because, you know, you raised that in the opening -- my

21   opening statement.  You said, well, is there a conflict

22   about taking positions adverse to Mr. Jones or PQPR.  But I

23   think the Court's ruling was really about a predisposition,

24   not a conflict.  And so either way there, Judge, I still

25   think it stands as far as not being a focus of the hearing.

1          THE COURT:  Okay.

2          MR. SHANNON:  So that's the Rule 59 motion.

3     There's also the administrative expense motion, which seeks

4     different relief.  And in particular, it seeks retroactive

5     approval for the employment on a limited basis and then

6     compensation and an administrative expense.  And that

7     limited basis is both limited in time as well as in the

8     scope.  So limited in time would be under 327(a).  Limited

9     in scope would be under 327(e).  But again, the Rule 59

10    motion is what we are here on today.

11         THE COURT:  So can you tell me about the 327(e)

12    argument?  If it's the Debtor's application -- I just want

13    to -- procedurally how would that -- I would grant the

14    rehearing and then -- or I would just say you don't get

15    under (a), you then go under (e)?  Then does the Debtor get

16    a do-over?  I -- how does it work?  Do I have authority to

17    force a Debtor to retain a professional under a different

18    code that they didn't ask me to?

19         MR. SHANNON:  Well, I do think that's really about

20    the administrative expense motion.  But we did talk about it

21    in the Rule 59 motion.

22         So I think that the point is in the application to

23    employ, in the actual basis for the relief, it just says --

24    it just said 327.  Now, the arguments that were presented

25    dealt with 327(a).  But that's the broader of the two

1    categories.  I mean, no one who qualifies under 327(a) who

2    is an attorney who represented the Debtor before wouldn't

3    qualify under 327(e).  Right?  Because it requires more to

4    be employed under 327(a).

5          THE COURT:  And so you think that a lawyer who

6    represents the Debtor in connection with the bankruptcy case

7    can be authorized under 327(e)?

8          MR. SHANNON:  For -- yeah, if it's appropriately

9    limited, Judge.  And I do think that --

10         THE COURT:  Let's just say it's in connection with

11   first day relief.  Let's just say it's in connection with --

12   do you think the Code says 327(a), we can put that aside and

13   just hire someone under 327(e) and the special purpose would

14   be the actual bankruptcy case itself?

15         MR. SHANNON:  There is a case that says that.  I

16   believe it's Stapleton.  I don't have that case in front of

17   me as we talk about it in the administrative expense motion.

18         THE COURT:  Okay.

19         MR. SHANNON:  But yeah, if it's appropriately

20   limited, yes.  I think in that Stapleton case -- I believe

21   it's a Delaware case.  I don't remember if it was bankruptcy

22   or the district court.  But they said if it's for a limited

23   aspect in the bankruptcy case, yes.  And I believe in that

24   case, it was related to cash collateral.  Typically you'll

25   see it through with respect to sale motions, sales and

1   liquidation of certain assets.

2          THE COURT:  I just want you to -- so we're all

3   clear, 327(e) says, trustee of the debtor can, with the

4   court's approval, employ for a specified special purpose

5   other than to represent the debtor in connection -- in

6   conducting the case.

7          MR. SHANNON:  Right.  And it's what conducting the

8   case has been interpreted by courts.  I mean, they say that

9   it's about --

10         THE COURT:  You don't think showing up at first

11  day hearings, working on cash collateral orders, seeking to

12  employ professionals, working with the Debtor, that's not

13  conducting the case?

14         MR. SHANNON:  Well, I'm not sure --

15         THE COURT:  Putting aside whether I can just --

16  whether the lawyer can ask for a different treatment under

17  327 than the movant did at this stage.  Putting that aside.

18  And I know that certainly the issue can be taken up in

19  connection with the (indiscernible) motion as well.  It gets

20  tricky, don't you think?

21         MR. SHANNON:  Well, in the actual application

22  though, there were specific things that were Shannon & Lee's

23  primary responsibility.

24         THE COURT:  Right.

25         MR. SHANNON:  They were administrative type

1    matters and they --

2         THE COURT:  In other words, that the Debtor is the

3    one that asked for retention under 327 and he would

4    represent the debtor and the estate, right?  That's what the

5    request was.  So you're saying that that was an (a) and (e)

6    application?

7         MR. SHANNON:  You know, look, I don't think the

8    application specified.  But I do think that the application

9    was seeking employment under 327(a).  But I do also think

10    that the primary responsibilities that were indicated would

11    be appropriate under 327(e).

12         THE COURT:  Okay.

13         MR. SHANNON:  And I also think that they were

14    particularly focused from the beginning of the case, the

15    first month, you know, moving for relief from stay sua

16    sponte by the debtor with respect to some of the Texas

17    litigation, working with the Connecticut plaintiffs to get

18    to an agreed order for relief from stay that would not

19    destroy the Debtor's business and still allow that

20    litigation to go forward.

21         I do think that those kinds of things, they're

22    limited enough that they do fall under 327(e).  And the

23    cases that talk about what conducting the case for 327(e)

24    means, they say it's about, you know, preparing the plan,

25    right?  Objecting to claims, those kind of core bankruptcy

```
 1   matters.

 2           THE COURT:  Okay.

 3           MR. SHANNON:  So anyway, the motion that we're

 4   here on today, Judge, the Rule 59 motion, is seeking relief

 5   under Rule 59(a).  Rule 59(a)(1)(B) of the Federal Rules F

 6   Civil Procedure says the court may on motion grant a new

 7   trial on all or some of the issues and to any party after a

 8   nonjury trial for any reason for which a hearing is

 9   heretofore been granted in a suit in equity.  Rule 59(a)(2)

10   talks about what the court can do after that.  It can open

11   the judgement if one has been entered, take additional

12   testimony, amend findings of fact and conclusions of law or

13   make new ones and direct the entry of a new judgment.

14           So I think that's what the real inquiry is here,

15   Judge.  I mean, is this a situation in which a rehearing has

16   been granted before in a nonjury trial?

17           The Fifth Circuit said in Conway v. Chemical

18   Leaman Tank Lines, it's well settled that Rule 59(a)

19   provides a means of relief in cases in which a party has

20   been unfairly made the victim of surprise.  That surprise

21   must have caused prejudice.  And if it did cause prejudice,

22   the kind of reasoning is that the hearing was inconsistent

23   with substantial justice.  Other courts have recognized that

24   basis.

25           Burdyn v. Old Forge Borough, it's a 2019 case
```

1    citing several circuit court opinions, described it this

2    way.  Surprised during trial by a major variance in theory

3    of recovery or defense undisclosed until after the trial is

4    underway is a long-established ground for granting a new

5    trial motion.

6           And the Fifth Circuit has also provided some

7    insight to what that means in a contested matter in a

8    bankruptcy case.  The case is In re DDS Materials Inc.  The

9    Fifth Circuit indicated that the question is whether the

10   focus of the hearing was evident to the movant prior to the

11   hearing.  That's -- I mean, that's what the Fifth Circuit

12   says applies in this kind of situation.

13          I think, Judge, that all the indications prior to

14   the September 20 hearing were that the only issue in

15   controversy with respect to the Shannon & Lee employment

16   application was Mr. Lee's decision not to supplement his

17   disclosures for (indiscernible) PLLC in the IW cases.

18   That's what the U.S. Trustee's objection raised, that single

19   issue.  It didn't argue that this created an adverse

20   interest, but rather that the Court should exercise its

21   discretion to deny the S&L employment application anyway.

22          And again, this is where Bankruptcy Local Rule

23   9013-1(g) comes into play.  Again, it makes Federal Rule of

24   Civil Procedure 8 applicable.  And under Federal Rule of

25   Civil Procedure 8, a party must respond to the substance of

1    a pleading and deny factual allegations where they are

2    deemed admitted.

3             I think that sole basis was consistent with the

4    conversations that I had with the U.S. Trustee before -- or

5    after they filed the objection.  I think it's consistent

6    with what was said at the September 13th hearing at which

7    the September 20 hearing was scheduled.

8             At that September 13th hearing, the parties

9    represented that the only issue with respect to the Shannon

10   & Lee employment application was Mr. Lee not supplementing

11   his disclosures.

12            The Plaintiffs filed a joinder after that

13   representation on September 15th, and they didn't add any

14   basis -- you know, any additional basis to that objection.

15   And that's what was, you know, addressed in the Debtor's

16   reply to the Shannon & Lee application at Docket 166.

17            I think that was also kind of supported with what

18   happened at the September 20th hearing.  You know, the

19   opening statements, the parties indicated that was the only

20   issue, was Mr. Lee not supplementing his disclosures in the

21   IW cases.

22            And I think when the Court brought up the

23   particular issue of disinterestedness for any other reason

24   kind of based on a predisposition, I mean, it was really

25   after the evidence had already closed.  And I think you were

1    right about that, Judge, when you said that none of the

2    parties have presented any arguments about this.  And what I

3    submit is that the reason why none of the parties present

4    any arguments about that was because the focus of the

5    hearing and the Court's ruling was not evident to any of the

6    parties beforehand.

7            THE COURT:  But why isn't the focus of the hearing

8    the statute, right?  Why isn't it the law?  The Debtor wants

9    to retain under 327(a), here are the standards under 327(a)

10   (indiscernible) not the focus of the hearing.  Why does it

11   matter if anyone showed up to talk about it?  Why isn't --

12   if the burden is on the movant to satisfy the initial burden

13   of proof, why isn't the burden on the movant to satisfy the

14   statute?  Why isn't the law the focus of the hearing?  Why

15   does it need to be what the United States Trustee did or

16   didn't do in this case?  It seems like you only have to have

17   hearings on the things that people mention.  And I got it,

18   that helps you focus and prepare.  But everybody knew that

19   disinterestedness was on the table.  Right?  Matter of fact,

20   I'm sure the application filed something saying that they

21   were disinterested, right?  And so it's not like

22   disinterested was a surprise.

23           MR. SHANNON:  Well, I think when you look at what

24   DDS Materials said though, it's about whether the focus of

25   the hearing was evident.  And I'm not saying that you're

1    wrong, Judge, in that, well, if disinterested is something

2    that you noted, the Court notices, that you have to grant

3    the motion.  But what I'm saying is that if it's not

4    evident, then the parties should have an opportunity to

5    present their evidence and arguments on that issue that was

6    not previously evident.

7              THE COURT:  The parties presented at the hearing,

8    for example, that in the last -- in the Info W cases, right,

9    there was a -- folks stood up in front of me and said we're

10   trying to do everything we can and we're exercising our

11   fiduciary duty.  And then they get a phone call after the

12   hearing that says, hey, we're going to have a meeting.

13   Folks are working on first day declarations for another case

14   in which they're supposed to be on the other side of it.

15   Right?  And during the case, it's me who is finding things

16   in cash collateral orders.  Oh, by the way, Your Honor,

17   we're going to pay for all of Mr. (indiscernible) travel

18   expenses in connection with the Connecticut trial during the

19   case.  Right?  That's a surprise, that disinterestedness was

20   on the table?

21             MR. SHANNON:  Well, before the hearing, yes.  And

22   I think --

23             THE COURT:  I'm sorry, but who submitted the

24   evidence showing time records?

25             MR. SHANNON:  Well, Judge, I think, for example,

1   the issue with the cash collateral order, Shannon & Lee

2   didn't work on that cash collateral order.  We certainly

3   didn't make the decision of what goes in there.  Right?  And

4   we need to -- and if it's not raised, how do we present

5   evidence that we weren't.  Right?  I mean, if it's not

6   something that says, hey, this is something that you should

7   consider --

8          THE COURT:  Why not just say, hey, I didn't work

9   on it?

10         MR. SHANNON:  Because, Judge, it wasn't raised by

11  any party.  I don't think it was raised by the court either

12  until the ruling.

13         THE COURT:  Let's talk about other matters that

14  were going on during the case.  Are you telling me that --

15  have you ever taken a position contrary, Mr. Lee?  Yeah.

16  Okay, give me an example.  Those were your questions.  Look

17  at the answer he gave.

18         MR. SHANNON:  Right.  And, Judge --

19         THE COURT:  He gave an answer.  I didn't ask him

20  that question, you did.  Right?

21         MR. SHANNON:  Judge, that was after --

22         THE COURT:  And he gave an answer.  But he gave an

23  answer.  If it was wrong, the answer was wrong, I found

24  those issue.  Right?  And he said I guess I need to correct

25  myself, something to that effect, right?  Tell me

1   (indiscernible) adverse interest to the estate, right?

2   Okay.

3           MR. SHANNON:  I mean, two things, Judge.  One, it

4   was in particular in response to your inquiry that you

5   raised at the beginning of the hearing, which is about a

6   conflict.  But two, I think that what he said was actually -

7   - well, the first one that he mentioned was rejecting Alex

8   Jones' request to extend the stay.  When he talked about

9   what was presented to the court, you know, yeah, what was

10  presented to the court with respect to the state court

11  attorneys and who was going to pay, the division of payment,

12  what that was, I do believe the additional evidence will

13  show that, look, Shannon & Lee, both me and Mr. Lee

14  originally did not propose for the Debtor to pay 100

15  percent.  Now, after negotiations, that's where it got.  And

16  that is what was submitted to the Court.  But that was after

17  negotiations.

18          THE COURT:  What's his answer?  That he did that,

19  right?  That was Mr. Lee's answer, right?  That he opposed

20  that relief.  That was his answer on the record, right?

21          MR. SHANNON:  With --

22          THE COURT:  We can pull up the transcript and we

23  can look at it.

24          MR. SHANNON:  Yeah, I think -- I mean, I would

25  have to take a look at the transcript, Judge.

1          THE COURT:  What else have you got?  I'm not

2    saying that's the only other reason, right?

3          MR. SHANNON:  Judge, I believe there is a way for

4    me to pull it up here, but...

5          THE COURT:  I'm going to pull it up and look at it

6    together.

7          All right.  "Has the Debtor, Free Speech System,

8    in this bankruptcy case ever taken any position contrary to

9    Alex Jones?"

10         "Yes."

11         "And could you describe of them?"

12         "In this Bankruptcy case as an example?"

13         "Yes."

14         "We've taken lots of positions.  One,

15   (indiscernible) to the automatic stay.  We've told him we

16   can't do that.  Number two, he asked us to bear a hundred

17   percent of the cost of all these things, including legal in

18   connection with these lawsuits.  We told him we're not going

19   to do that, and we (indiscernible) on that."

20         And I say, "Mr. Lee, a state court litigation,

21   isn't that what FSS originally filed, was a request to pay

22   for a hundred percent of legal fees for the two counsel that

23   are in the state court litigation?"

24         "We did, Your Honor.  And then once you told us we

25   couldn't do that, when we filed the retention pleadings for

1    Mr. Martin, the appellate lawyer, we already told him we

2    couldn't bear fifty-fifty."

3              And I say, "What I'm saying is that you said you

4    went against Mr. Jones on that.  That was at the request of

5    the United States Trustee and the court and said they

6    weren't going to approve without paying their fair share.

7    How did Shannon & Lee take a contrary position?  The

8    application was filed requesting a hundred percent of the

9    fees on an emergency basis."

10              "Yes, Your Honor.  That's correct.  We filed an

11    emergency basis saying to bear the hundred percent.  And

12    then a negotiation subsequently occurred.  And you're right.

13    I need to correct my testimony."

14              That's what I'm referring to.

15              MR. SHANNON:  Right.

16              THE COURT:  That's a surprise?

17              MR. SHANNON:  Yeah, well, you know, for example,

18    Judge, I think when you look at the emails, without knowing

19    that that was going to be an issue, the emails show that we

20    originally said that Alex Jones should be paying a

21    proportionate share.

22              THE COURT:  Got it.

23              MR. SHANNON:  I don't know if I can --

24              THE COURT:  I'm going to make you the presenter

25    again.  Hold on one second.  I apologize.

1           MR. SHANNON:  And so while it was the case that

2     what was filed with the court was a hundred percent --

3           THE COURT:  Sorry.  There we go.

4           MR. SHANNON:  While that was what was filed with

5     the Court, and that was in response to the Court's question,

6     that wasn't what was -- there wasn't the opportunity to

7     really present the background emails about that issue.

8           And so again, Your Honor, I would also say that

9     really what surprise means in a bankruptcy contested matter

10    is whether the focus was evident.  Again, that's from In re

11    DDS Materials.  And I'll also say, Judge, you really

12    shouldn't lose sight of the fact that, you know, the parties

13    that didn't raise the issue are the parties that received

14    discovery about the prepetition negotiations with PQPR.

15    They are the parties that have a financial interest in this

16    issue.  And I can only assume that they did their job and

17    looked at it.

18          So that's the evidence focus aspect of it.  But

19    then there also needs to be prejudice.  And I would say,

20    Judge, that I think the Court's ruling on an issue that

21    hadn't been raised before definitely did cause prejudice.

22    Again, it was a reference to the catchall provision relating

23    to an interest adverse to the estate "for any other reason".

24    And seemingly based on a predisposition under circumstances

25    that render the predisposition and interest adverse to the

1    Debtor's estate.

2            Judge, I just think that's inherently something

3    that needs to be raised and articulated in order to present

4    contrary evidence and arguments about it.

5            Again, with respect to the cash collateral order

6    that had the $80,000 of travel expenses, I mean, without

7    that being raised as an issue and that predisposition being

8    raised as an issue, I mean, why would we -- why would

9    someone then prepare and present -- what was the background

10   behind that, right?  I mean, I'll tell you the background

11   behind it was a way to actually get in agreement with the

12   Connecticut plaintiffs and to avoid a lift stay fight.

13           And that calls prejudice because Shannon & Lee was

14   not able to prepare and present evidence about the purported

15   predisposition.  If you really think about the evidence that

16   was in the record submitted for another purpose and point

17   the Court to that evidence or really argue the correct

18   application of the law on that particular issue.

19           I also think that Shannon & Lee was particularly

20   hamstrung because it required going into confidential

21   information, but there was no allegation to respond to or

22   reason to believe it was necessary, which would make it

23   appropriate under Texas Disciplinary Rule of Professional

24   Conduct 105.

25           And I do think it's important, Judge, that even if

1    none of this would change your mind, I think it still

2    matters for the record on appeal.  And Rule 59(a) based on

3    surprise is about ensuring a full and fair opportunity to

4    present evidence and arguments.

5            Again, I don't think we need to really go through

6    what all the additional evidence is, but I do think there's

7    substantial evidence that Shannon & Lee can now submit,

8    consistent with Rule 105 of the Texas Disciplinary Rules.

9    Exhibits 13 through 26 are demonstrative of this.  There

10   will be some testimony about that documentary evidence,

11   possibly some other documents as well.  This is some of the

12   additional evidence with respect to Alex Jones.  And the

13   same thing with PQPR.

14           You know, frankly, I think the evidence would show

15   that if anything, Shannon & Lee's initial reaction about

16   PQPR's asserted lien and note was about as skeptical as

17   possible.  And I think that's what the issue of

18   predisposition means.  But the concerns that the court

19   raised, I mean, Shannon & Lee are attorneys.  We don't get

20   to make the decision of whether to bring an action.

21           I also think another aspect of the prejudice is

22   the evidence that was already admitted, but that was

23   submitted for another purpose.  For example, I mean, there

24   are the actions that Mr. Lee took to ensure that Alex Jones

25   would not have any control over the Debtor, and that was

1    reflected in the revisions to Mr. Schwartz's engagement

2    letter.  And that was admitted at the September 20th

3    hearing.  But just kind of the way the issue was raised --

4    and that wasn't on anyone's mind that, well, that reflects

5    predisposition.  It was introduced to show when Mr. Schwartz

6    sent his engagement letter to the Debtor.

7            Again, same thing with respect to PQPR.  For

8    example, the U.S. Trustee introduced the Debtor's Schedule D

9    where the Debtor, and represented by Shannon & Lee,

10   indicated that PQPR's asserted claim was listed as disputed.

11   And, Judge, you know that what that ultimately means is that

12   PQPR has to file a proof of claim.  It's typically not going

13   to be an allowed claim until the Court enters an order

14   saying so.  Again, just something that was in the record but

15   wasn't identified as addressing that issue.

16           And lastly as far as the evidence goes -- and I

17   don't think this would have been admitted at the September

18   20th hearing, but there is evidence that's appropriate for

19   judicial notice that indicates that there was something else

20   going on here.  And the Court essentially gets the benefit

21   of an experiment, right?  They get a new CRO in place,

22   remove the co-counsel, and direct the Subchapter V trustee

23   to conduct an investigation as soon as practicable.  And I

24   think a lot of points that the Court has referenced in its

25   ruling are kind of called into question with the outcome of

1    that experiment.  I mean, Judge, I believe you referenced

2    that the Debtor had not brought an action against PQPR, and

3    it still hasn't.

4          And the Subchapter IV trustee is still

5    investigating.  Because it's a complicated issue.  I'm not

6    saying that the Subchapter V trustee isn't doing her job,

7    it's that it's a complicated issue.  And again, because

8    those things weren't raised, they weren't discussed at the

9    hearing.  And I just think there's some -- the evidence

10   that's appropriate for judicial notice kind of really points

11   out that there's something else going on.

12         The last element of prejudice is the ability to

13   present legal arguments.  But, you know, for example, what

14   constitutes an adverse interest, and particularly with

15   respect to the predisposition.  You know, whether Shannon &

16   Lee's employment could be approved under Section 327(e).

17   And if Mr. Lee was wrong about his duty to supplement his

18   disclosures in the IW cases, it does not indicate that the -

19   - he has an interest adverse to the Debtor's estate.  And

20   again, Judge, it's not, at least from my point of view, it

21   doesn't matter if it really will convince the court that the

22   record should reflect that.

23         Also, Judge, I think that you say, well, does the

24   party have to raise everything.  I mean, I think you get

25   things like when we try to address arguments that weren't

1   made, like the reply to the administrative expense motion,

2   right, where you have to address arguments that weren't

3   made, it just kind of spirals out of control.  And that's

4   very expensive, and I think that's why Bankruptcy Local Rule

5   9013(g) is important.

6           THE COURT:  I agree with that.  But isn't there a

7   difference between that and saying the Fifth Circuit issued

8   a decision in West Delta Oil in 2005 that talks about

9   standards under 327?  Isn't that a little different than

10  saying, you know, there is a case that's been out there for

11  the last, I don't know, 17 years at the time or 18 - you

12  know, 17 years at the time.

13          MR. SHANNON:  For example, in West Delta Oil

14  though, Judge, I mean, the court there said there was a

15  predisposition.  But --

16          THE COURT:  I'm just saying the standard, right?

17  I'm talking about the case says what it says, yet you don't

18  have to respond.  You don't have to make up arguments to

19  respond to that.  But shouldn't parties have to at least say

20  I know what this means under the Code and the Fifth Circuit

21  has ruled on it and I think I satisfy it under 327?

22          MR. SHANNON:  Well, but I think particularly when

23  you talk about a predisposition though, Judge -- for

24  example, again, just actually looking at what the facts were

25  there.  I mean, the facts -- what the Fifth Circuit said was

1    a predisposition was attempting to buy assets from the

2    estate, an attorney attempting to buy assets from the

3    estate.  That's a pretty clear case.  I think when you get

4    to things that are unarticulated and kind of fuzzy, I think

5    it does require more than that.  I mean, I do think that if

6    Shannon & Lee was trying to buy assets from the Debtor, I

7    think that would be a pretty obvious thing that we should

8    recognize.

9            THE COURT:  So let's just say hypothetically there

10   was a lawyer representing to the court in a prior case that

11   it was working opposite to -- on the opposite side of a

12   deal, but was actually meeting with the opposite side

13   preparing first day declarations and then assisting the

14   owner of that company in connection with trial on a personal

15   matter, participating in jury selection, related issues or

16   in connection with the personal trial.  And then the second

17   entity that they were supposedly on the opposite side of the

18   deal, that entity actually files.  And then things start to

19   show up in the case where it starts to get a little

20   uncomfortable between -- everybody knows there could be

21   potential issues between the debtor and the owner.  I'm not

22   saying there are, but there are potential issues.  You're

23   saying that that's all a surprise, right?  Like, man, I had

24   no idea that someone could ask whether there was a

25   predisposition towards rendering (indiscernible) where, you

1    know, 20 days before the case, I was drafting first day

2    declarations and helping someone out on personal matters.

3         MR. SHANNON:  Well, Judge, two things.  I do

4    believe the personal matter thing -- I mean, the U.S. --

5         THE COURT:  No, no.  I'm just saying -- I'm not

6    saying it's there.  I'm just saying it's -- I think it's a

7    little -- I guess what I'm saying is, isn't this case a

8    little different than the debtor files a Chapter 11 case, I

9    don't know anything about this case, the debtor, a new

10   debtor, application filed 14 days into the case.  And all of

11   the sudden non one raises the issue.  And then all of the

12   sudden someone says I think you're disinterested.  Right?

13   Isn't that a little different than evidence in the record

14   showing watch this timeline, watch this timeline.  Now we're

15   in a new case, lack of disclosure here, lack of transparency

16   here.  Look at what happened in between the two.  And then

17   during the case, look at where things are going.  Right?

18   Doesn't the Court have discretion to determine, like, are

19   you -- you know, are you free of all bias and interest

20   potentially, or is it better for the estate to have a

21   representative that doesn't have to deal with any of these

22   issues?

23        MR. SHANNON:  Well, a couple of things, Judge.

24   One, I think the particular factual things you brought up, I

25   don't know that I necessarily agree with them.   And I think

1    that's the things that the evidence would show.

2            THE COURT:  You disagree that Shannon & Lee was

3    working on a first day declaration for FSS?

4            MR. SHANNON:  Well, no, no.  I agree that Shannon

5    & Lee did that at some point.

6            THE COURT:  I know.  You disagree that Mr. Lee was

7    working on -- billed time for a jury focus group?

8            MR. SHANNON:  Well, but so --

9            THE COURT:  I'm just asking you.  I'm just asking

10   you.  Are you disagreeing that there is a time entry saying

11   --

12           MR. SHANNON:  I agree that there's a time entry.

13   But for --

14           THE COURT:  That's all I'm saying.

15           MR. SHANNON:  Right.  But what I'm saying is,

16   Judge, that look, you say that, well, it's jury selection

17   for Alex Jones.  But, Judge, there was a default alter ego

18   finding in that case.

19           THE COURT:  I'm just asking.

20           MR. SHANNON:  Right.  And I think that the

21   additional evidence though is saying, well, look at this

22   default alter ego finding.  It wasn't about Alex Jones.  It

23   was about there was a default alter ego finding.  A finding

24   against Alex Jones is a finding against FSS.  That's why it

25   mattered.  And that has to really --

1          THE COURT:  But the evidence was admitted into the

2     record, right?  And once the evidence was admitted into the

3     record, the Court asked a question about the evidence

4     admitted into the record.  You're saying that's a surprise?

5     I asked the question.  I asked -- on Page 66 of the record,

6     on Page 1.  "You attended a focus group hosted by someone in

7     participating on a jury selection of Alex Jones.  That was

8     work for FSS?"

9          He says, "Yes, Your Honor."

10          So (indiscernible) I can't ask questions about

11     evidence -- and that's a surprise?  You need a do-over on

12     that?

13          MR. SHANNON:  Judge, I'm not saying you can't ask

14     questions.  I'm saying that --

15          THE COURT:  But you need a do-over because the

16     evidence that you submitted and your time records the court

17     asks a question about and you're not prepared for it, and

18     that's why you want another hearing on it?

19          MR. SHANNON:  Judge, I mean, that's what In re DDS

20     says.  I mean, I do think that the evidence at the actual

21     hearing was that that was for FSS.

22          THE COURT:  I'm not saying it's not.  I'm not

23     saying it's not.  I'm just saying -- it's like everybody's

24     acting like there was a surprise.  I shouldn't ask questions

25     without documents admitted into the record, I should only

1   ask questions based on the evidence that I'm seeing at the

2   time that the hearing is there.  I shouldn't prejudge

3   evidence.  Once there is -- once there are documents, I

4   asked questions to make sure that I got comfortable with

5   what I understood.  So ask questions --

6          MR. SHANNON:  And what I'm saying, Judge, is that

7   it does cause prejudice when we don't have the opportunity

8   to respond to that --

9          THE COURT:  The witness was on the stand.  How

10  long has Mr. Lee been practicing?  Over -- far longer than I

11  have.  Are you telling me that he needs a do-over for a

12  question on a time record that he submitted?

13         MR. SHANNON:  I think there's additional evidence

14  that the Court should consider.  You know, if what matters

15  is about transparency and about focusing on what the truth

16  is and what's important is getting a full indication of the

17  issues, then yeah.  And it's not a do-over, right?  It's

18  about presenting the full evidence.

19         THE COURT:  Are you saying he didn't have an

20  opportunity to answer the question when I asked him that?

21         MR. SHANNON:  No, he had an opportunity to answer

22  the question, but we did not have an opportunity to present

23  the evidence of the default ruling, the default finding of

24  alter ego.

25         THE COURT:  Okay.  Okay.

1          MR. SHANNON:  And I just want to quickly, Judge --
2    I know we are going long, but --
3          THE COURT:  No, no.  I want you to take as much
4    time.  And the 11:00 will wait.
5          MR. SHANNON:  Okay.  Talk about the objections and
6    the replies.
7          THE COURT:  I've interrupted your -- and I've been
8    -- I need to sit here and I want to listen to what you're
9    saying.  I have asked a lot of questions because I want to
10   make sure that I understand the argument.  And that in no
11   way impedes on the amount of time that you have.  You take
12   as much time as you need.
13         MR. SHANNON:  Thank you, Your Honor.  I'll talk
14   about some of the -- real quickly the objections.  I'll let
15   the other parties make them.  But the first one is that both
16   Alex Jones and the U.S. Trustee argue that Shannon & Lee
17   does not have standing or authority to bring the Rule 59
18   motion.  Judge, I think that's contrary to both the language
19   in Rule 59(a)(1), which says "and to any party".  I think
20   it's also contrary to Bankruptcy Code Section 1109(b).  It
21   says a party in interest may raise and be heard on any issue
22   in a case under this chapter.  And a party is a party in
23   interest where it has a personal stake.  And that can be
24   addressed by favorable decision.
25              Courts have held that a professional can seek

1    relief with respect to a denied application to employ, which

2    really goes more to the standing aspect.  But, Judge, I

3    think they have a point to the extent that the Court's

4    ruling at the September 20th hearing doesn't prejudice the

5    administrative expense motion.

6        If the argument is you guys don't have standing,

7    you're not a party in interest because you have another

8    avenue to do that that's better fitting, that works better,

9    they have a point there.  And that's kind of why we said

10   that these two should kind of be considered together, why we

11   asked for a continuance of this motion pending the

12   administrative expense motion.  Because, you know, Shannon &

13   Lee's primary stake is that administrative expense motion.

14   I don't think it gets everything, but it kind of gets what I

15   care about, anyway.  And it's not clear if there's a dispute

16   about this issue.  I don't think it's necessarily for today

17   --

18        THE COURT:  I'm sorry, what is it that you care

19   about?

20        MR. SHANNON:  The administrative expense request,

21   right?  And whether there is prejudice that prevents seeking

22   the employment on a limited basis.

23        Again, I'm not sure there's a dispute on this.

24   Only the U.S. Trustee objects to both the Rule 59 motion and

25   the administrative expense motion.  But -- and also no one

1    who objects to the administrative expense motion directly

2    says, look, you're not able to seek retroactive approval of

3    the employment, or really even argues against it.  So I do

4    think that if the Court denies the Rule 59 motion, I think

5    that should be the basis.  You know?  And that would make

6    sense.  I mean, it hasn't been really what the parties have

7    said yet.

8           THE COURT:  What do you mean, that should be the

9    basis?  I just want to make sure I understand that

10   statement.

11          MR. SHANNON:  Well, that Shannon & Lee doesn't

12   need this relief to get what their real stake is.  Right?

13   That a Rule 59 motion, they're not precluded from seeking

14   the administrative expense motion, so this isn't the right

15   way to do it.  Which, again, if that is true, that it does

16   not prejudice it, then I can see the argument that Shannon &

17   Lee doesn't have a personal stake.  I don't think it gets

18   everything.  I think that the KLG Gates LLP v. Brown case

19   says there are other things that give a personal stake.  But

20   it certainly gets almost all of it.  It gets really what the

21   heart of it is.

22          The U.S. Trustee also argues that the Rule 59

23   motion should be denied because Shannon & Lee has not shown

24   manifest error.  Judge, Manifest error is a requirement for

25   motions to alter or amend the judgement under Rule 59(e).

1    59(e) has a different purpose than Rule 59(a).  Rule 59(e)

2    is about correcting judicial error based on the existing

3    record.  Rule 59(a) based on surprise is about ensuring

4    parties have a fair opportunity to create that record.

5           And also, Judge, I think as we said in the reply

6    at Note 7, I do think there was manifest error on some

7    points.  You know, for example, that Mr. Lee said, okay,

8    we're definitely going to go and negotiate against FSS and

9    Alex Jones and try to get a new plan support agreement.  I

10   mean, what he actually said at the end of the hearing was

11   we're going to make a decision quickly whether to do that or

12   to dismiss the case.

13          There were some other ones.  I don't think we need

14   to go through them all.  They're in the briefing.  Put

15   better in the briefing than I think I could right now.

16          The other objection is from the U.S. Trustee that

17   the evidence that Shannon & Lee seeks to introduce is

18   cumulative.  Again, Judge, that's an issue for motion

19   seeking a rehearing for newly-discovered evidence.  I also

20   just don't think that the evidence is merely cumulative

21   because cumulative evidence is evidence that only

22   corroborates, strengthens, or confirms other evidence.  And

23   that's not really all the additional evidence would do.  I

24   mean, just one example would be -- really go to the initial

25   reactions of Shannon & Lee to provide evidence of a

1    predisposition.

2            The last objection, kinds of arguments in the

3    objections, is by Alex Jones saying that some of the

4    evidence that Shannon & Lee seeks to introduce would be

5    subject to common interest privilege.  Judge, I really think

6    that's an issue for a rehearing.  But, you know, we disagree

7    with that.  But again, it's an issue for a rehearing.

8            So in conclusion, Judge, I just really think that

9    there are three main considerations that the Court should

10   keep in mind.  You know, was the basis of the Court's ruling

11   the evident focus of the September 20th hearing prior to

12   that hearing?  And again, I do think it's important that

13   it's prior to that hearing and if throughout the hearing it

14   became evident, I do think that's different.  And

15   essentially that question is was there surprise.  I just

16   think that the fact that the U.S. Trustee's objection raised

17   a different issue, you know, the allegations were deemed

18   admitted under Bankruptcy Local Rule 9013(g) that, Your

19   Honor, the representations at the September 13th hearing,

20   what the Sandy Hook plaintiffs said in their joinder, what

21   the parties said at the beginning of the September 20th

22   hearing, and what the Court itself noted after the closing,

23   that no one really talked about the Fifth Circuit standards

24   in any of the briefing or in their arguments.

25           So, again, essentially was there a surprise, I

1   think the answer is yes, based on what the Fifth Circuit

2   indicates that matters.

3          You know, two, did Shannon & Lee have a full and

4   fair opportunity to prepare and present evidence about the -

5   - evidence and arguments about whether it had a

6   predisposition under circumstances that made that

7   predisposition adverse to the estate.  Essentially was there

8   prejudice.

9          Again, Judge, I think the answer is yes, there was

10  prejudice.  I think that an adverse interest for any other

11  reason based on a predisposition is inherently something

12  that you need to know what you're arguing against.  The

13  issue was put into controversy for the first time after the

14  hearing started.  And under Rule 105 of the Texas

15  Disciplinary Rules, Shannon & Lee's ability to present

16  confidential information was limited.

17         And the last consideration, Judge, is what outcome

18  creates a full record.  You know, there's been a lot of talk

19  about transparency.  And I think that granting rehearing and

20  presenting this evidence is what does provide transparency.

21  So based on that, Judge, I think the Court should either

22  grant the Rule 59 motion, set a rehearing, or deny the

23  motion because it's unnecessary.  Because there's nothing in

24  your ruling that actually prevented Shannon & Lee from

25  seeking, you know, their interest and their personal stake

 1   that makes them a party in interest with respect to this

 2   issue.  And, Your Honor, absent I think what the Court's

 3   particular ruling was, I think that granting a Rule 59

 4   motion would be required.  But based on what the Court's

 5   ruling actually was, well maybe not.  Right?

 6          And I'll say that when I read the U.S. Trustee's

 7   objection, I kind of thought about it and I said, well, you

 8   know what?  They could have a point if these other certain

 9   things.  And also, Judge, holding a further hearing is

10   consistent with the way that courts in this district have

11   kind of dealt with issues that have been raised by the Court

12   but not addressed in the parties' briefing or the focus of

13   the hearing.  Again, the LTHM Houston Operations case

14   referenced in the Court's ruling indicates that.  And either

15   way, Judge, I think we just need to get a hearing set on the

16   remaining issues.  And I just think there are less legal

17   issues if the Court grants the Rule 59 motion.  But if not,

18   I still think we need a hearing.

19          THE COURT:  Thank you.

20          MR. SHANNON:  Thank you, Judge.

21          THE COURT:  Okay.  Mr. Ridulfo?

22          MR. RIDULFO:  Again, Your Honor, Mike Ridulfo for

23   Marc Schwartz.

24          THE COURT:  Mr. Ridulfo, before you begin, I want

25   to make sure, do you have -- are you going to need the

1    presenter role?  Are you going to make arguments?  I want to

2    make sure that I...

3            MR. RIDULFO:  I am going to make arguments, but

4    I'm not going to retread over the ground that --

5            THE COURT:  No, I mean in terms of making

6    presentations.  We're using this -- okay, perfect.  No, I

7    just wanted to make sure.  If you were going to do it, I

8    didn't want to ruin your flow.

9            MR. RIDULFO:  Thank you, Your Honor.  Just as a

10   preliminary matter, Your Honor, we had submitted exhibits

11   prior to this hearing.  I'm trying not to confuse the

12   record.

13           THE COURT:  Okay.

14           MR. RIDULFO:  Mr. Shannon asked for the admission

15   of 1 through 12.  And did I understand that those had been

16   admitted?

17           THE COURT:  For the purposes of this hearing,

18   yeah.

19           MR. RIDULFO:  Okay.  Our Exhibits 1 through 11

20   fall into that same category.  They're the same.

21           THE COURT:  I think they can be admitted for the

22   same.  If we could just say that Shannon & Lee 1 through 11

23   will apply to --

24           MR. RIDULFO:  Yes, except that --

25           THE COURT:  Or do you want your 1 through 11 in

1    there?

2              MR. RIDULFO:  No, it's our first three are

3    Exhibits 1, 2, and 3.  So, for example, Shannon & Lee's

4    Exhibit 2 is Shannon & Lee's application to employ.

5              THE COURT:  Got it, got it.

6              MR. RIDULFO:  Our Exhibit 2 is Schwartz's

7    application to employ.

8              THE COURT:  Why don't we just keep it separate?

9              MR. RIDULFO:  Okay.  And so we would ask for the

10   admission of Schwartz's Exhibits 1 through 11.

11             THE COURT:  Okay.  Give a second.  And that is at

12   Docket Number 386 it looks like.

13             MR. RIDULFO:  393.  We filed a corrected list

14   yesterday, Your Honor.

15             THE COURT:  Oh, got it.  Okay.  Got it.  And you

16   said 1 through 11?

17             MR. RIDULFO:  Yes, sir.

18             THE COURT:  All right.  Let me just take a quick

19   look.  Okay.  I'm going to admit 1 through 11 for purposes

20   of this hearing with the same stipulation that this is a

21   motion for a rehearing, so we're not opening up the prior

22   record.  This is simply allowing parties to make arguments

23   in support of the request for rehearing.  You know, let's

24   just call it 393, 1 through 11 are admitted for that

25   purpose.  Thank you.

 1             MR. RIDULFO:  Your Honor, as I just mentioned, Mr.

 2   Shannon went through his presentation.  I'm not going to

 3   repeat everything he said.  I would ask the Court to just

 4   allow me to incorporate that presentation as it relates to

 5   Mr. Schwartz.

 6             THE COURT:  So done.

 7             MR. RIDULFO:  The background information is the

 8   same, the arguments with respect to Rule 59.  The only issue

 9   that we don't have in common is the 327(e) issue.  I'm sure

10   the Court's aware of that.  And subject to that, we adopt

11   the arguments made by Mr. Shannon with respect to the

12   presentation.

13             THE COURT:  Okay.

14             MR. RIDULFO:  Your Honor, I'm here in a little

15   different spot because I wasn't at the September 20th

16   hearing.  I'm here to try to protect my client as best I

17   can.  And without question, it's a difficult situation.

18   Might I have done things a little different?  Maybe.  I

19   don't know.  I'm not here to Monday morning quarterback it.

20             We have in our Rule 59 motion outlined numerous

21   areas where we would ask the Court to reopen the record for

22   rehearing to allow Mr. Schwartz to present what I think is

23   overwhelming evidence of his disinterestedness.  We believe,

24   as Mr. Shannon argued, there was surprise.  We believe it

25   was not the focus of the hearing.  Mr. Schwartz had what I

1    would call numerous tense and pushback moments with Mr.

2    Jones that he would like to present before Your Honor on the

3    issue of disinterestedness.  This includes -- and I'm not

4    going to run through them all -- but as reflected in our

5    Rule 59 motion, issues such as Mr. Jones' alleged

6    entitlement to an indemnity from FSS, which Mr. Schwartz

7    rejected.  Mr. Jones' insistence on taking private jets with

8    a security detail to Connecticut, which was also pushed back

9    on by Mr. Schwartz.  Also, numerous issues with respect to

10   PQPR, the avoidance of their lien, the validity of their

11   claim.  And as it related to Mr. Schwartz also, and less so

12   I think Shannon & Lee, operational issues that dealt with

13   FSS's relationship with PQPR to purchase a product from

14   PQPR, the potential excesses that were associated with that

15   relationship, all of which were the subject of intense

16   negotiations and we submit the evidence would show

17   independent action by Mr. Schwartz.

18          Mr. Schwartz attended the meeting that I think was

19   the flashpoint, the September 20th hearing, on May 24th.  He

20   obviously did not participate in any jury selection issues

21   or anything of that nature.  His participation should have

22   been disclosed.  We don't dispute that.  I'm not sure

23   whether that would have been a motion to reopen the IW cases

24   for purposes of disclosure.  I'm not sure how that

25   procedurally would have worked.  But it is Mr. Schwartz's

1    view that that was the focus of the September 20th hearing

2    and not his decision.

3            And he would just like an opportunity to put his

4    evidence in the record.  I don't know that he is here to ask

5    the Court to change its mind, but just to reopen the record

6    to allow him an opportunity to introduce his evidence.

7    Because -- and the Court noted this at the ruling, that this

8    is a very difficult decision.  I think the Court said

9    something to the effect that you hope you never had to do

10   that again.  Mr. Schwartz feels the same way and

11   understands.  And having read it, it's hard to get context

12   sometimes from a transcript, but that came through loud and

13   clear, Your Honor.  And Mr. Schwartz wants an opportunity to

14   show the Court that not only is he a disinterested person in

15   this case, but that it's personally an affront to him to

16   have an employment application denied.  And he wants the

17   opportunity to present his evidence.  And the Court will

18   rule how the Court will Rule.  And we would just ask for

19   that opportunity.

20           And subject to that, Your Honor, I will answer any

21   questions the Court may have.

22           THE COURT:  No questions.  Thank you very much,

23   sir.  Okay.

24           Let me just ask, is there any other party who

25   supports the relief requested in either application?  This

1   is an opportunity to be heard.  If you do wish to speak, I'm

2   going to ask that you please hit five-star.  I muted one

3   line.  I don't know if that party wishes to make any form of

4   -- ask any questions.  Is there anyone else who wishes to be

5   heard in support of the relief?  Okay.

6           I'm going to start now with parties who oppose the

7   rehearing.  And I'll start in the courtroom.  Mr. Ruff, you

8   may proceed.  Thank you.

9           MR. RUFF:  Thank you, Your Honor.  Again, Jayson

10  Ruff with the U.S. Trustee's Office.  I will try to keep it

11  concise and to the point, Your Honor.  And really the issue

12  is not that complicated.  So hopefully that won't be too

13  difficult.

14          First is the issue of standing.  The applications

15  sought to be reconsidered were the Debtor's and not Shannon

16  & Lee's or Schwartz's.  Indeed, 327(a) by its plain language

17  when read in conjunction with 1107 only authorizes the

18  Debtor subject to Your Honor's approval to employe

19  professional persons.  The Debtor put forth the

20  applications.  The court denied the applications, and the

21  Debtor is not pursuing the applications any further.  The

22  professionals do not have an independent right to continue

23  seeking court authority for their employment.

24          Second, Your Honor, and I'll say this, Mr. Shannon

25  alluded to the fact that, well, it was unclear in the

1    application whether it was under 327(a) or 327(e).  I

2    actually think it was quite clear.  I read in Paragraph 24

3    of their application when they say the basis for relief, it

4    says subject to the bankruptcy court approval, Bankruptcy

5    Code Section 327(a) authorizes trustees and debtors in

6    possession to employ one or more, and so on and so forth.

7           However, with that being stated, it was unclear

8    whether or not the Rule 59 motion was only under 59(a)

9    and/or 59(e), so we addressed it.  And assuming for the sake

10   of argument that the professionals did have standing and

11   authority to seek a rehearing under Rule 59, the

12   professionals have not demonstrated how there is a manifest

13   error of law or mistake or effect by the Court or that there

14   is newly-discovered evidence, nor how any -- excuse me --

15   prejudicial error crept into the record that would entitle

16   them to a rehearing on the denial of the applications.  To

17   be successful, the professionals need to be able to show

18   these elements, and they have not.

19          Your Honor, when the Court first heard the

20   applications of Shannon & Lee and Schwartz, we were here

21   from early in the afternoon until well in the evening.  And

22   nothing was rushed.  All the parties had a full and fair

23   opportunity to present whatever evidence they wanted in

24   support of their respective positions, either for or against

25   the applications.  No one was shortchanged.

1          And then lastly, Your Honor, the purported

2     additional evidence that the professionals seek to admit was

3     readily available and could have been raised at the hearing

4     on September 20th.  Mr. Lee and Mr. Schwartz, as the Court

5     alluded to, each have multiple decades of experience

6     individually.  Not combined, individually.  And it's really

7     without credulity to say that they were unaware or surprised

8     that their disinterestedness would be an issue.  You know,

9     Mr. Shannon alluded to the fact that we were concerned about

10    the lack of disclosure in the prior cases and whether or not

11    there was a conflict of interest.  Well, the conflict is a

12    conflict of interest.  That itself ties into

13    disinterestedness, which is what was at issue and really was

14    what was at the heart of the Court's ruling in denying the

15    applications.  Looking at the history of the prior case, the

16    in-between period into the new case, and seeing whether or

17    not there was any lack of disinterestedness or not.

18          So to allow them to come in now and reopen the

19    record with fact that were readily -- and evidence for that

20    matter that were readily available to them at that time, the

21    original hearing would be nothing more than giving them a

22    second bite of the apple.  It's just not how the system

23    works.  It's not how the rules are set up, how the Code is

24    set up.  And so we would request that it be denied.

25          Now, a couple of things, Your Honor.  And I think

1    Your Honor gets this, but I'll just say it for the record.

2    There's nothing to stop -- 327(a) was the -- 327 was the

3    focus.  The Code, the legal authority for a Debtor to employ

4    (indiscernible) was the focus of that hearing.  We raised

5    issues, other parties raised some issues, but the focus was

6    they were seeking their employment.  To say that

7    disinterestedness somehow and being prepared to prove that

8    should the court raise the issue, that just doesn't --

9    again, it lacks credulity, especially given the experience

10   that these professionals have.

11          Your Honor, they also alluded to the fact that

12   some -- they would have raised it, but some of the

13   information was privileged and confidential.  Well, the

14   Debtor holds the privilege.  It was the Debtor's

15   application, so the Debtor could have waived that privilege

16   if it wanted to to present that evidence in support of those

17   applications.

18          And then finally, Your Honor, there was also

19   mention that, I believe with respect to Mr. Schwartz, that

20   if he could go back, he would have corrected his disclosures

21   and that maybe they would have had to seek a reopening.

22   Well, they didn't have to seek a reopening if they would

23   have just disclosed at the time that this stuff happened.

24   It was during the Info W cases, Your Honor.  So there was

25   really no need to reopen the case.  It was really just to

1    disclose at the time that things were happening.

2              So, Your Honor, unless you have any questions for

3    me, I promised you I would be concise.  Again, I think the

4    issue is relatively straightforward, and that's what we

5    have.

6              THE COURT:  Thank you.

7              Does anyone in the courtroom wish to be heard

8    opposing the relief requested?  Okay, I don't see anyone.

9              Mr. Shannon, Mr. Ridulfo, anything else you wish

10   to tell me?  Anything in response?

11             MR. SHANNON:  Just one quick thing, Judge.  I do

12   think it's important to keep in mind what the basis for the

13   adverse interest was, that it was a predisposition, that it

14   was still unarticulated really what the adverse interest of

15   material incentive was to act contrary to the estate.  So I

16   do think that's something to consider when deciding whether

17   it was a surprise or not.

18             THE COURT:  Thank you.

19             Anything else?  All right, folks.  Just give me a

20   second to look at something.

21             Okay.  All right.

22             So we are here on the applications -- I should say

23   the motions for a rehearing filed by Shannon & Lee and Mr.

24   Marc Schwartz.  The Court certainly has jurisdiction to

25   address this.  This is certainly a core proceeding under 28

1    U.S.C. 157(b).  Here is the Court's ruling.

2           On August 20th, the Debtor filed applications

3    under Section 327(a) of the Bankruptcy Code to employ

4    Schwartz as the Debtor's chief restructuring officer, along

5    with Schwartz's firm as advisors and Shannon & Lee as co-

6    counsel.

7           For the purposes of this decision, I am going to

8    refer to Schwartz and his company as "The Advisor"

9    collectively and Shannon & Lee as "The Firm".

10          The U.S. Trustee objected to both applications, so

11   did the Sandy Hook families.  They filed joinders to those

12   applications.

13          On September 20th, the Court conducted an

14   evidentiary hearing to consider the Debtor's applications to

15   employ the Advisor and the Firm.  After hearing the

16   evidence, the Court denied both applications for the reasons

17   stated on the record.

18          On October 4th, the Firm and the Advisor filed

19   motions in their individual capacities requesting a

20   rehearing under Federal Rule of Civil Procedure 59 to

21   present additional evidence on the issue of

22   disinterestedness for their applications.

23          The motions are essentially duplicates, I agree

24   with Mr. Ridulfo, other than the additional argument raised

25   in the Firm's rehearing motion on Section 327(e).  The

1    evidence would supposedly address items this Court found

2    problematic, but which the Firm and the Advisor didn't

3    address because they were allegedly not either raised before

4    the close of evidence or in the United States Trustee's

5    objection.  And I did allude that the alternative argument

6    raised in the Firm's motion is that it should be permitted

7    to present additional evidence to show that employment under

8    Section 327(e) of the Bankruptcy Code may be appropriate

9    under the circumstances.  The U.S. Trustee has objected to

10   both of these rehearing motions.  The Sandy Hook plaintiffs

11   also filed a joinder to the arguments raised in the U.S.

12   Trustee's objections.

13          Trustee is making three arguments.  First, that

14   the professionals don't have the requisite authority seek

15   reconsideration.  Trustee notes that the Debtor is the one

16   who filed the applications and the Debtor isn't seeking the

17   rehearing.  The Trustee notes that the debtor moved to

18   approve a different CRO.  And I'm talking about in his

19   papers.  And that employment was authorized by the Court.

20          Second, the Trustee argues that the rehearing

21   motions fail to satisfy the requirements for Federal Rule 59

22   for a new hearing.  According to the Trustee, the

23   professionals have not established any manifest error of law

24   or mistake, any newly-discovered evidence, or any

25   prejudicial error that crept into the record that would

1    entitle them to a rehearing.

2            Third, the purported additional evidence the

3    professionals seek was readily available and could have been

4    raised by them at the September 20th hearing.

5            I would note that Mr. Jones also objected to the

6    rehearing motions.  Mr. Jones is the owner and the operating

7    member of the Debtor.  He stated that the movants filed

8    their motions without any prior consultation with him.  He

9    also notes that the Debtor is not a party to the rehearing

10   motions and didn't file a joinder in support of them.  And

11   they also raised the issue that any new evidence contains

12   attorney-client and work product privileged communications.

13           (indiscernible) the advisor filed replies arguing

14   that they do have standing in their motions and that the

15   relief sought in the notions is appropriate.

16           They also raised an issue that was raised in their

17   papers, but they also I think -- certainly Mr. Shannon I

18   think gave this Court greater clarity.  There's also

19   separate motions for administrative expense filed by these

20   parties.  And certainly according to at least Shannon & Lee

21   -- Mr. Ridulfo, I know that you adopted many of the

22   arguments there for the presentation.  But to the extent

23   that it applies to Schwartz as well, I'll accept it, that

24   really I could just deny this motion because it's

25   unnecessary.  Because they should be able to -- they can

1    proceed under the motion for admin expense.  I'm not going

2    to agree with that.  If parties file motions requesting

3    rehearing under Federal Rule of Civil Procedure 58 which are

4    incorporated by Rule 9023, I take them incredibly serious.

5    I think professionals take them very seriously.  I'm not

6    just going to deny because there's another avenue.  I'm

7    going to take up the emotion.

8            I have not considered the motion for

9    administrative expense.  Maybe there will be a time that I

10   take them up on one or both professionals, but that's not

11   today.  What's before me are two motions for rehearing.

12   They were filed before the motions for admin expense, and

13   I'm going to take them up in the order that they were filed.

14           Certainly Mr. Ridulfo told me Mr. Schwartz is

15   taking the Court's ruling incredibly seriously.  So I spent

16   a lot of time preparing for today.  I'm not going to just

17   dismiss something, I'm going to take it on the merits.  I

18   think the parties deserve it.  I think the process deserves

19   this as well.

20           Let's start with the rules.  59(a)(1)(B) is

21   incorporated under Federal Rule of Bankruptcy Procedure

22   9023.  59(a)(1)(B) states that the Court may grant on a

23   motion a new trial on some or all issues and to any party

24   after a nonjury trial for any reason for which a rehearing

25   has been granted in a suit in equity, federal court.  Wright

1    & Miller Federal Practice and Procedure, Section 2804, agree

2    with, explains that the concept of a new trial under Rule 59

3    is broad enough to include a rehearing on any matter decided

4    by the Court without a jury.  So I do think proceeding under

5    Rule 59(a)(1)(B) and asking for a rehearing is completed by

6    the rule.

7           Rule 59(a)(2) also provides that after a nonjury

8    trial, court can open the judgment if one has been entered

9    and take additional evidence, amend findings of facts and

10   conclusions of law or make new ones and direct the entry of

11   a new judgement.  To reinstate a case under 59(a), the court

12   has to consider the entire record and conclude that manifest

13   injustice will result from letting the verdict stand.

14   Foradori v. Harris, 523 F.3d 506 (5th Cir. 2008).  Courts do

15   not grant relief under Rule 59(a) unless it is reasonably

16   clear that prejudicial error has crept into the record and a

17   substantial injustice has not been done and the burden of

18   showing harmful error rests on the parties seeking a new

19   trial.  Sibley v. Lemaire, 184 F.3d 481, 487 (5th Cir.

20   1999).

21          Let me start with the standing issue.  The movants

22   note that Rule 59(a)(1) provides that the Court may grant a

23   new trial on some or all issues and to any party, and the

24   Bankruptcy Code 1109 provides that a party in interest may

25   raise or be heard on any issue in a case.  Movants argue

1    that this qualification itself grants standing.

2    (indiscernible) have standing to seek a rehearing today.

3    What happens after the court would grant rehearing would be

4    another issue on parties' rights.  But I do think the

5    movants have the right to come today and ask for another

6    hearing on their applications.  But they fail to show why

7    the relief they seek is appropriate under 59(a).

8            Standard for approval of applications is Section

9    327(a), which provides that the Court would -- excuse, me

10   that the Debtor with the court's approval can employ

11   attorneys, accountants, appraisers, or other professional

12   persons -- ad Mr. Schwartz and his firm would qualify as

13   other professional persons -- that don't hold or represent

14   an interest adverse to the estate and that are disinterested

15   to represent or assist the Debtor in carrying out the

16   Debtor's duties under the Bankruptcy Code.  The term

17   disinterested is defined in the Bankruptcy Code under

18   Section 101(14)(A) includes -- this was all -- there's no

19   dispute that under the law, the party who files the

20   application under Section 327 has the burden to prove that

21   they satisfy the relevant legal standard in the Bankruptcy

22   Code.

23           In this case, the Firm and the Advisor elected to

24   file inflammatory pleadings attacking the United States

25   Trustee and to present evidence and testimony as it saw fit

1    rather than making their own case under Section 327.  Both

2    professionals, who are extremely experienced, are allowed to

3    present their evidence and argue in support of their

4    application.  Exhibits were admitted and a senior

5    representative of the Firm and the Advisor testified.  They

6    were examined by the attorney of their choosing, to my

7    knowledge.

8          Movants claim surprise about the issues related to

9    disinterestedness because the UST allegedly never raised the

10   issue specifically in their pleadings.  But that's part of

11   the legal standard under the statute for which their

12   retention was based on.  Movants cannot credibly argue that

13   the issues about the legal standard and caselaw upon which

14   the applications were based as well as the evidence

15   submitted in the record was a surprise.

16         The Court's ruling is based on the evidence

17   properly admitted at the hearing, Section 327(a), and

18   applicable law in this district.  Among the reasons I stated

19   in my decision denying the applications was that the Firm's

20   and the Agency's pre and post-petition actions color the

21   independence and impartiality required by the Bankruptcy

22   Code.  It wasn't just an appearance of a conflict of

23   interest, I found that the professionals held adverse

24   interest to the estate.  And the lack of transparency in the

25   bankruptcy process gave this Court great concern as to

1   whether these professionals could impartially represent the

2   Debtor.

3          The evidence admitted at the hearing on both

4   professionals -- and I'm trying to be nice here -- was

5   extremely troubling.  For example, Schwartz and Lee were

6   planning to start to work for this case, FSS, while they

7   were still working for the Info W debtors and telling the

8   Court that they were exploring all options in their

9   fiduciary capacity for the Info W case.

10          Between the Info W case and this case, Mr. Lee was

11   billing FSS for attending focus groups and participating on

12   jury perceptions in a case where Mr. Jones was a separate

13   defendant in the Connecticut and Texas litigation.

14          During this case, FSS sought approvals and relief

15   (indiscernible) applications to employ professionals and

16   cash collateral orders.  It made the court -- it was the

17   court and the U.S. Trustee who were pointing out issues,

18   asking professionals to pay -- this estate to pay 100

19   percent of expenses for a non-Debtor.  It was the court

20   sometimes pointing these issues out.  It's all in the

21   record.  All there.  I'm not adding anything new.  I'm

22   talking about the evidence that was admitted on the record

23   and what I heard that day.

24          During the hearing, it was specifically asked,

25   questions about potential conflicts with Alex Jones.  And

1    his answer was his answer.  You may not like the answer that

2    he gave, but he gave an answer.

3            Mr. Schwartz also gave very concerning answers

4    about what's going on in this case.  The record speaks for

5    itself.  I'm not going to point specifically things out.

6    There's a transcript.  There are questions, there are

7    answers.  I stand by every word I ruled on.  I stand by

8    everything I did, every part of the legal analysis.  The

9    questions and the answers are what they are.  I point things

10   out.  Those were just examples.  If I point things out, then

11   people focus that I focused this decision, I focus it on the

12   law before me, Rule 59.

13           Nothing I've heard today, been considered today,

14   warrants granting the relief requested.  Movants want a do-

15   over and hope to provide better answers.  Rule 59 isn't a

16   proper tool to ask for a second chance.

17           I disagree with Mr. Shannon's characterization

18   that there's not -- it was unclear as to what the Court

19   ruled on as to concerns about impartiality in this case.

20   Read the whole transcript.  It's there.  (indiscernible)

21   highlighted by the Firm's alternative argument.  So the

22   record is clear.  The Debtor filed an application to

23   (indiscernible) requested to retain the Firm as co-

24   bankruptcy counsel to the Debtor under Section 327(a).

25   That's specifically in the application.

1            The alternative argument today is that the Court

2    should consider additional evidence to retain the firm as

3    special counsel under Section 327(e), which requires a

4    different legal standard not requested in the original

5    application.  It is not a basis to change or even consider

6    granting an application filed by the Debtor on an illegal

7    theory.  If the Debtor wants to do it, the Debtor can file

8    it.

9            The movants point to no facts or caselaw

10   overlooked by this Court.  There's no evidence of manifest

11   injustice.  There's no surprise that a court holds movants

12   to satisfy their burden in connection with retention

13   applications under Section 327(e).

14           In this case, an application was filed, evidence

15   was presented, and they didn't meet the burden.  That

16   doesn't mean that the professionals are bad people, it just

17   means they didn't meet the burden.

18           Denying these applications as was appropriate

19   under the law.  You don't get a do-over.  You also can't

20   point to (indiscernible) of mistake in the law or fact this

21   Court made in rendering its decision.

22           There's also no basis to take additional

23   testimony, amend findings of fact and conclusions of law or

24   make new ones or direct the entry of a new judgement.

25           To ensure that we have a clean record, any other

1    argument raised by the movants in their papers or today in

2    the arguments not specifically discussed by me now, trust

3    me, I heard you.  I just rejected.  Both movants failed to

4    show that relief under Federal Rule 59 is warranted in this

5    case.  Both motions for rehearing are denied.  I will issue

6    a short order denying it on the basis of Rule 59, not

7    because it's irrelevant or because there's another

8    application out there.

9            I'm going to consider the motion for admin claim

10   as the motion for admin claim.  Maybe there's a basis to

11   grant it, maybe there's not.  I don't know.  That's not for

12   me today.  What I'm ruling on is a request for a rehearing

13   under Federal Rule of Civil Procedure 59, the legal standard

14   there.  And it's made applicable in this case, in bankruptcy

15   cases, under Federal Rule of Bankruptcy Procedure 9023.

16           Again, I reiterate, I hoped back then to never

17   rule on another application the way I did.  I hope to never

18   rule on one of these again.  I am bound by the law, and I am

19   duty-bound to rule based on the law and the facts, and

20   that's what I've done.  And that's what I did back then, and

21   that's what I'm doing now.  And that's my ruling.  I will

22   issue a short order, again, denying both motions for a

23   hearing for the reasons stated on the record.

24           Parties want a hearing on the admin claims.

25   Contact my case manager and let's pick a date.  We'll take

1    it up there.  They're separate in my mind.  We'll take that

2    up and how I rule, I don't know.  I haven't taken it up.

3    And I don't want to prejudge anything.  The law is the law

4    there, and we'll take it up.

5          On that one though I think -- I've said this

6    before.  You probably need to ride on that one.  I think it

7    creates -- motions for rehearing, I can rule on the record.

8    I think you're going to need a publishable decision on the

9    motion for an admin claim.  I don't care if it gets

10   published or not.  I don't care about that stuff.  But I do

11   think something -- I can walk through legal reasoning in a

12   request for the motion for an admin claim in these

13   circumstances.  I may change my mind, but at least I think

14   that's the way it would go.  So if we're going to go forward

15   on that, I want the issue fully briefed.  And I'm going to

16   set aside some time because I want parties to present all

17   their evidence.  The standard is the standard.  Whoever has

18   the burden of proof, present your case.  We'll take it up.

19   And that's how we'll deal with it.

20         What else do we need to talk about before we turn

21   to Alex Jones and the FSS, the regularly-scheduled matters?

22         If you filed a -- if you've made an appearance, I

23   should say, in connection with this and you want to stick

24   around for the remainder of the hearing, you are more than

25   welcome to.  If the parties who participated in the 10:00

1    don't wish to participate in the 11:00, that's completely

2    fine.  No need to ask me for permission to be excused.

3              With the permission of the parties, I'm going to

4    start with the 11:00.  And I'm going to assume that if you

5    made an appearance in the 10:00, it's good for the 11:00 as

6    well.

7              If you need to hang up, hang up.  No need to ask

8    me for permission to be excused.  My feelings will not be

9    hurt.

10             Mr. Ruff, anything in connection with the 10:00

11   before we turn to the 11:00?

12             MR. RUFF:  Yeah, and this is in connection with

13   the 10:00.  And it just -- I just want to throw it out there

14   and it just occurred to me.  With respect to the

15   administrative claim motion, might it make sense to first

16   deal with the legal issue of whether or not there is a legal

17   basis to make the admin claim?  And then if there is, if

18   Your Honor rules that there is, then we could set aside a

19   separate time to take up the evidence of what is the

20   magnitude of the claim, similar to whether or not someone

21   gets a judgment and then we figure out what the damages are?

22             THE COURT:  I understand the point.  I'm going to

23   take it all up at once.

24             MR. RUFF:  Fair enough, Your Honor.  I just --

25             THE COURT:  And I understand the point.  I just

1    don't want to have two separate hearings.  I will -- if

2    Shannon & Lee or Schwartz want to go forward with it, I want

3    them to -- you know, just like there was a standing issue

4    today and we dealt with the hearing, I want them to have

5    every opportunity to present everything.  If I'm going to

6    write -- everything I write, I'm going to write on it right

7    up front.  It's all going to -- whatever decision I issue

8    will address both, but I do understand the point.  There

9    could be an A, and A unlocks B, and we're going to deal with

10   it all in one hearing.

11          MR. RUFF:  Sounds good, Your Honor.

12          THE COURT:  Okay.  And again, I -- I

13   (indiscernible) want legal briefing on everything.  And I

14   think parties should be addressed.  If there are issues, I

15   want everything.  I want everyone to raise their issues.

16   Again, we'll take them up at that time.  But it's a good

17   question.  I'm glad you asked it.  Because I want to make

18   sure that everybody is really clear.  I'm going to give

19   everyone as much time -- clear out a half an afternoon or

20   something.  If we need it, we need it.  If we don't, then

21   it's there.  But those who want to go forward, just reach

22   out to my case manager, and we'll just clear out the time.

23          So let me take appearances.  Why don't -- I

24   understand that there could be parties who may make an

25   appearance just in the Alex Jones case and not in the Free

1    Speech.  We are holding kind of combined hearings.  But if

2    you are just -- if you can, just let us know if you're

3    making an appearance in one or in both.  I'm not going to

4    jam you if you -- because I think we're just going to take

5    the issues up as they proceed.

6              The parties in the courtroom, you've already

7    considered your appearance.

8              Mr. Battaglia, I would note -- that's your client

9    back there on video.  I just wanted you to see him there.

10   He is here.

11             Is there anyone on the line that wishes to make an

12   appearance?  I would just ask that you please hit five-star

13   and let's take things up.

14             Okay.  Last digits 4678.  All right, last digits,

15   361 number with the last digits 4678, you are live.

16             MR. JORDAN:  Shelby Jordan.  I represent Alex

17   Jones as co-counsel.

18             THE COURT:  Okay.  Good morning.

19             All right, 1174, last four digits.  Wait, no.  I'm

20   lying.  Let's see.  Someone hit -- anyone else -- anyone

21   wish to hit -- please hit five-star again.  Oh, I muted.

22   1933, last three digits.  A 917 number.

23             MR. ZENSKY:  Your Honor, David Zensky, Akin Gump

24   Strauss Hauer & Feld, proposed counsel for the Official

25   Committee of Unsecured Creditors in the Alex Jones case.

```
 1              THE COURT:  Okay.

 2              MR. ZENSKY:  I am appearing today with my partner,

 3   Sara Brauner.  I would be appearing in both cases as needed.

 4              THE COURT:  Okay.  Thank you, Mr. Zensky.  Good

 5   morning, Ms. Brauner.  Okay.  Anyone else?

 6              Yes.  I'm sorry, that's right.  I've got one in

 7   the courtroom.

 8              MR. MOSHENBERG:  Your Honor, good afternoon.  Or

 9   good morning, I should say.  Avi Moshenberg, here on behalf

10   of the Texas plaintiffs in the Jones and the FSS matter,

11   Your Honor.  Thank you.

12              THE COURT:  Okay.  Good morning.  All right.  Ms.

13   Stephenson, I know I've got o unmute your lines somewhere.

14   So let me -- I've got a 212 number there.  If you hear the

15   word, unmute it.  That was me.

16              MS. BRAUNER:  Good morning, Your Honor.  I believe

17   that was my line.  Sara Brauner, Akin Gump Strauss Hauer &

18   Feld, on behalf of the Jones UCC.

19              THE COURT:  All right, good morning.  Anyone else?

20   All right, Ms. Driver or Ms. Stephenson, I need one of you

21   to hit five-star.  I may just ask you a question or two.

22   I'm going to step out here.  Everyone mute your lines.

23   Let's see if I can get this done without -- all right.

24              Ms. Driver or Ms. Stephenson?

25              MS. DRIVER:  Your Honor, I believe you have me.
```

1          THE COURT:  All right.  There you are.  Okay.

2     Anyone else wish to make an appearance?

3          MR. KIMPLER:  Yes, Your Honor.  Are you able to

4     hear me?  I've been hitting five-star, but I'm not sure it's

5     working.

6          THE COURT:  Yeah.  I just unmuted the entire line,

7     folks.  So let's all be careful.

8          MR. KIMPLER:  Your Honor, if I may.  It's Kyle

9     Kimpler from Paul, Weiss, Rifkind, Wharton & Garrison.  I am

10    here today on behalf of the Connecticut plaintiffs in

11    individual capacity together with my co-counsel, Mr. Chapple

12    and Ms. Sterling.  We'll be appearing in both cases.

13         THE COURT:  Good morning, and good to see you, Mr.

14    Chapple and Ms. Sterling.  Good to see you.  All right.

15    Anyone else?

16         MR. CHAPPLE:  Good morning, Your Honor.

17         THE COURT:  All right.  I'm not sure who wants to

18    take the lead, but I appreciate everyone's patience in

19    connection with the prior hearing.  I really appreciate

20    everyone's patience.  All right.

21         MS. DRIVER:  Your Honor, Ms. Driver again on

22    behalf of Mr. Jones.

23         We did do an agenda today.  It wasn't exactly the

24    process that Your Honor had outlined.  I should have

25    included FSS.  So we are going to correct that for the next

1    matter.  But our matters up for today are I believe agreed

2    to with some comments from some of the U.S. Trustee and the

3    UCC.

4            THE COURT:  All right.  Before you start -- before

5    you --

6            MS. DRIVER:  Christina Stephenson has been

7    handling that --

8            THE COURT:  Ms. Driver, hold on a second.  Again,

9    folks, please mind your line.  If you're not Ms. Driver --

10   I'm going to have to mute the line.

11           MS. DRIVER:  Yeah.

12           THE COURT:  All right, Ms. Driver, go ahead and

13   hit five-star right away.  (indiscernible) five-start.  I'm

14   just going to unmute lines for the folks who I know are

15   there.  And just please keep your phone on mute.

16           Ms. Driver, are --

17           MS. DRIVER:  Your Honor, I was just about -- I am.

18   Your Honor, I was just about to throw this to Ms.

19   Stephenson.  She has been working with the U.S. Trustee and

20   Ms. Brauner with the Unsecured Creditors Committee, proposed

21   counsel, to make some just simple changes that were

22   absolutely acceptable to us to the orders that we will be

23   ready to present to you at the end of this hearing.

24           Ms. Schleizer on behalf of BlackBriar is here as

25   well to the extent we do have a couple of applications that

1    were set on negative notice that were not technically set

2    for hearing today, but their objection period has passed.

3    There were also some comments to their orders that have been

4    made as well.  And if Your Honor doesn't mind, we are happy

5    to present those near the end of the hearing if that's okay.

6    And again, Mr. Schleizer is here.  Mr. Jordan is here of

7    course for his application, and I am here on behalf of my

8    firm's application.

9            But Ms. Stephenson will be walking through the

10   presentations and the comments.

11           THE COURT:  Okay.  Before we begin -- I'm just

12   doing this because -- is there anyone who wishes to address

13   the Court about anything before we get started with the

14   agenda?  And for those in the virtual world, I'm doing the

15   equivalent of someone walking up to the podium before we

16   actually get started.  If there is someone, let me know.

17   Let's see.  Okay.

18           MR. BATTAGLIA:  Good morning, Your Honor.  This is

19   Ray Battaglia.

20           THE COURT:  Okay.  Good morning, Mr. Battaglia.

21   Before you being, Mr. Kimpler, did I (indiscernible).  I

22   want to make sure -- I know you said you were having some

23   issues hitting five-start.  Not issues hitting five-star,

24   you were hitting five-star and I didn't recognize you.  I

25   wanted to make sure that I recognized you.

1          MR. KIMPLER:  Yes.  Are you able to hear me, Your

2    Honor?

3          THE COURT:  Yes, just fine.  I apologize for that.

4    I wanted to make sure that I took care of you.  You were

5    hitting five-star correctly.  I was not hitting the right

6    button, and that's on me.  Okay.

7          Mr. Battaglia, were you just (indiscernible) or

8    did you wish to address the Court?

9          MR. BATTAGLIA:  Just address the Court briefly,

10   Your Honor.  Ray Battaglia on behalf of Free Speech Systems.

11   The agenda, which we had agreed would sort have one agenda

12   that was filed in both cases that would list everything does

13   leave off the Debtor's interim cash collateral, which is set

14   for today, Docket 6 in the FSS case.  And prepared to do

15   just that.  And we'll go in whatever the Court desires.

16         THE COURT:  So what I would like to do is address

17   -- go through the agenda and then take up cash collateral.

18   And then I'm going to ask if the parties are comfortable

19   proceeding with the retention applications today and if they

20   are.  But I'll leave that last.

21         So maybe we'll go through the agenda

22   (indiscernible) and then take up cash collateral, unless Mr.

23   Moshenberg is going to tell me it's a dumb idea.  But go

24   ahead.

25         MR. MOSHENBERG:  It's a horrible idea.

1          THE COURT:  Terrible.  Horrible.

2          MR. MOSHENBERG:  The only other matter, Your

3    Honor, is we are preparing to file a motion to lift the stay

4    for Texas plaintiffs Leonard Pozner and Veronique De La Ros.

5    We contacted the Court this morning, or my co-counsel did,

6    Jared (indiscernible).  We were told to bring it up today,

7    that there may be some omnibus scheduling the Court wanted

8    to do.  And I wanted to raise that to the Court's attention.

9          THE COURT:  Yeah.  I was made aware.  And -- but

10   since we're taking on omnibus hearing dates here -- normally

11   motions to lift stay are self-calendared and they're done on

12   a Tuesday at 10:00.  And there could be ten different ones

13   at that time because preliminary -- normally they are

14   preliminary hearings or reschedule of final there.  If you

15   want to file a motion and you need a hearing date -- I

16   wanted to see if we were going to have an omnibus date,

17   because then it could be taken up at the next omnibus date.

18   You need a separate hearing.  What I didn't want was a

19   potential -- like a hearing that was going to require

20   substantive time to be scheduled and you walked in and there

21   were 15 other people getting you there.

22          In connection with the Jones case or the FSS case,

23   I don't want to -- I want to keep you separate from the kind

24   of self-calendared 362 schedule to appropriate time.

25          MR. MOSHENBERG:  Okay.

1          THE COURT:  No, and I appreciate it.  That's a

2     good point.  And that goes for anybody else who is filing

3     who may seek relief.  I think some matters can bet put

4     together.  Some I think need separate hearings.  And if

5     we're going to have an omnibus hearing date, then we can

6     just kind of keep the agenda.  If you need a separate

7     hearing, you can also get one as well, as well as anyone

8     else.  All right?

9          MR. MOSHENBERG:  Perfect.  Thank you, Your Honor.

10          THE COURT:  Thank you.  So I guess all that being

11     said, (indiscernible) before you file.  Or once you file,

12     you need a hearing date.  If we schedule an omnibus and it's

13     within the time, you are welcome to -- if we pick another

14     date today, if you file something and you need a hearing, I

15     just don't want you to self-calendar it and get lumped in

16     with the Tuesday 10:00 folks.  Okay?  And make sure that

17     everyone has notice of a hearing.  Okay.

18          Ms. Stephenson, I'll turn it over to you.

19          MS. STEPHENSON:  Your Honor, can you hear me okay?

20          THE COURT:  Yeah.  No, I thought you had to hit

21     five-star.  I was going to say here I go again.  But go

22     ahead.

23          MS. STEPHENSON:  Okay, great.  Thank you.  Just a

24     matter of housekeeping before we get started.  So our

25     exhibits, they were filed with the witness and exhibit list

1    at Docket 97 with the exception of Exhibit 7.  That's the

2    employment agreement, which we were trying not to file on

3    the general docket.  We emailed that to all the parties, and

4    I believe we emailed a copy to the Court as well.

5           THE COURT:  So I just want to make sure my

6    courtroom deputy -- because we're kind of doing two cases at

7    the same time.  The witness and exhibit list was filed at

8    Docket 97 in 22-33553, the Alex Jones case.

9           MS. STEPHENSON:  That's correct.

10          THE COURT:  Okay.  Okay.  How do you wish to

11   proceed?  I'll turn it over to you.  Where do you want to

12   go?

13          MS. STEPHENSON:  If we could start with number one

14   on the agenda, employment of bankruptcy counsel.  That would

15   be the application to employ my firm, Crowe & Dunlevy PC.

16   It was filed on December 20th, 2022, Docket Number 69.  We

17   have not received any objections, but we did receive

18   comments from both the United States Trustee's Office and

19   the Unsecured Creditors Committee.  We have incorporated

20   those comments into a proposed order and we have also, at

21   the behest of the United States Trustee's office, filed a

22   supplemental declaration for Ms. Driver -- no, I'm sorry,

23   that was at the behest of the United States Trustee's

24   Office, forgive me -- clarifying the source of the retainer

25   that our firm received prepetition.  That supplemental

1    declaration is filed at Docket Number 89.  And if Your Honor

2    would like to view a redline of the proposed order, the

3    revised proposed order, it was at Docket 98-1.  The clean

4    version is at Docket (indiscernible).

5            THE COURT:  Let's do this just so we have a clean

6    record.  Does anyone object to the admission of the exhibits

7    1 through 7 at Docket 97?  Any objection to the admission of

8    those exhibits for purposes of today's hearing?  Okay.  So

9    they are admitted.  And that would include the initial

10   declaration of Vickie Driver and the supplemental

11   declaration of Vickie Driver at Docket 89.  I just want to

12   make sure that we had an evidentiary basis to proceed, and I

13   wanted to make sure -- well, you all know why.

14           MS. STEPHENSON:  Thank you, Your Honor.

15           (Exhibits 1 through 7 admitted into evidence)

16           THE COURT:  Let's see.  And I do appreciate the

17   supplemental declaration.  And that was filed at Docket 89,

18   right?

19           MS. STEPHENSON:  Ninety-eight.

20           THE COURT:  Ninety-eight.

21           MS. STEPHENSON:  Oh, I'm sorry, 89 is the

22   supplemental declaration.  You were correct, Your Honor.

23   Sorry.  I was looking at the proposed order.  Excuse me.

24           THE COURT:  No, no.  The proposed order was at --

25   okay.  Let me just -- I did -- I reviewed these very

1    carefully.  I did appreciate that there was some additional

2    disclosure.  I was going to ask questions about that.  And

3    we're in a separate hearing.  I would note for the record I

4    do consider, you know, every application.  And I know

5    sometimes there are unopposed applications, but I do take

6    every application, everything that's filed in front of me, I

7    take it seriously.  And I think sometimes parties talk about

8    things and work things out.  But I still need the

9    evidentiary basis to support relief requested.  Sometimes I

10   have questions, sometimes I don't.

11          This was going to be one of the ones that I have

12   questions about, just because I wanted to understand it a

13   little bit more.  But the declaration that was submitted and

14   now admitted into evidence, I did have the opportunity to

15   review, and it answered my question.  And I think there's

16   transparency, greater transparency about that.  So I very

17   much appreciate it.

18          So let me ask -- and I did review the initial

19   declaration by 12:01:57 Ms. Driver and I did have a chance

20   to review everything that was filed in connection with this.

21   Let me ask, does anyone wish to be heard in connection with

22   the application to retain Crowe & Dunleavy?  Okay.

23          Before the Court is an application to employ Crowe

24   & Dunlevy, PC, as counsel to Mr. Alex Jones under Section

25   327(a) of the bankruptcy code.  Court has noted that this is

1    a core proceeding under 28 U.S.C. 157.  Court has

2    jurisdiction to consider this application under 28 U.S.C.

3    1334.  The Court has reviewed the application, considered

4    the evidence submitted in the record.  Ms. Driver is here.

5    Appreciate the parties working on this.

6          The Court had expressed -- well, the Court had not

7    expressed -- the Court had some questions about the source

8    of the retainer provided to Crowe & Dunlevy.  Appreciate the

9    parties working in this case.

10          Let me ask, before I rule -- let me ask from the -

11    - just want to make sure the Committee had an opportunity to

12    review this application and I want to hear from the United

13    States Trustee, and I want to make sure they're okay with

14    it.

15          MR. RUFF:  Your Honor, I could just represent on

16    behalf of the U.S. Trustee, we did have an opportunity to

17    review it.  We made comments.  Those comments were

18    incorporated to our satisfaction and we have no opposition

19    to the application.

20          THE COURT:  Okay.  Committee, you all okay?  Oh,

21    Ms. Brauner, I got it -- oh, there you go, Ms. Brauner.  I

22    apologize.

23          MS. BRAUNER:  Can you hear me now, Your Honor?

24          THE COURT:  Yes, I can.  Hi.

25          MS. BRAUNER:  Thank you.  Sara Brauner, again,

1    Akin Gump, on behalf of the Committee.  We did have the

2    opportunity to review the application and we have some

3    limited comments, which were incorporated, and we have no

4    further issues.  Thank you.

5              THE COURT:  Okay.  And am I comfortable for both

6    parties that the revised comments are reflected in, I guess,

7    what's ECF 98?  The revised order that was filed on...?

8              MS. BRAUNER:  Yes, Your Honor, for the Committee.

9              THE COURT:  Okay.  Trustee?  (indiscernible)

10   revised on that?  Okay.  Just looking at the revised

11   comments here.  Okay.  With the additional disclosures that

12   were provided, and I appreciate the Committee and the UST

13   taking a look at this.  And I appreciate the additional

14   disclosures.  I just think more transparency is just so

15   important in cases.

16             And I believe that the standard under Section

17   327(a), as well as the Fifth Circuit case law, the Crowe &

18   Dunlevy application satisfies those standards.  And I'm

19   going to grant the application and I'm going to sign the

20   proposed order I've had an opportunity to review.  And there

21   are comments incorporating it by the Committee, or Committee

22   comments and UST comments.  I've reviewed those.  I'm

23   comfortable with them.  I think they make a lot of sense and

24   I will grant the application.  I'll get that signed and on

25   the docket shortly.

```
1              Where do we go next?

2              MS. STEPHENSON:  Okay.  Thank you, Your Honor.  We

3    would like to go next to the application to employ Jordan &

4    Ortiz, P.C. as Debtors' co-counsel, effective as of the

5    petition date.  It was filed on December 21, 2022 at Docket

6    Number 71.

7              There was also a supplemental declaration for Mr.

8    Shelby Jordan filed at Docket Number 90.  This has similar

9    clarification of the source of the retainer and an

10   additional verification requested by the (indiscernible)

11   that Mr. Shelby has no representation of any related

12   parties.  So that's in that supplemental declaration at

13   Docket Number 90.

14             And then you'll see the redline of the revised

15   proposed order that has the United States Trustee's and

16   UCC's comments at Docket Number 90 and the redline at 99-1

17   on the docket.

18             THE COURT:  Okay.  Let me just ask Mr. Ruff this

19   morning, same questions on this.  Have you had an

20   opportunity to review this application?  Are you comfortable

21   today?

22             MR. RUFF:  I have and I am comfortable, Your

23   Honor.

24             THE COURT:  Okay.  Ms. Brauner, same?

25             MS. BRAUNER:  Yes, Your Honor.  Thank you.
```

1              THE COURT:  Okay.  I have the same questions as

2      well for Mr. Jordan.  I do think the declarations provide

3      additional comfort to the Court on these issues.  There's a

4      proposed order at 99 that incorporates comments before this

5      hearing.  And again, application is requested under Section

6      327(a).  Court has jurisdiction.  And I think there's been

7      proper notice of today's hearing and service of the

8      applications in both, in Crowe & Dunlevy and in this one.

9              I'm comfortable that the standard has been met

10     under Section 327 as applying case law and the standards

11     directed under the Code.  I appreciate the careful attention

12     provided by the Committee and the United States Trustee.

13             I'm going to grant the application at 99 and I'll

14     sign the proposed order -- I should say the application and

15     the proposed order at Docket 99.  I do want to note for the

16     parties, you know, these professionals know that, but I'm

17     just saying it so that it is said.  Don't read anything into

18     it.  I'm just laying it out.

19             If it turns out that there are additional issues

20     that should be made aware of in connection with the

21     retainer, or any other connections that are undisclosed,

22     professionals have an ongoing duty to update their

23     disclosures and to bring issues to the Court.  I am

24     confident that these professionals, who are very

25     experienced, understand their duties.

1             I'm not going to spend -- I've got no basis to

2     think of anything now.  And just know, I'm just saying it so

3     that it's said. I want to make sure that there's constant

4     transparency in these cases.  So I'm only saying it so that

5     it is said, not because I'm -- no one should read anything

6     into that.  But I'm going to sign the order at 99.

7             Where do we go next?

8             MS. STEPHENSON:  All right.  Thank you, Your

9     Honor.  Next is the Debtors' utility motion.  It was filed

10    on 12-21-22.  There have been no objections filed.  We have

11    communicated with various utility companies since the motion

12    was filed.  We communicated with AT&T, Tri-County Water,

13    Spectrum Charter.

14            We have also incorporated comments from the UCC

15    into our revised proposed order filed at Docket Number 100.

16    And the redline is at Docket 100-1.  I believe there are no

17    comments from the United States Trustee on this one.

18            THE COURT:  Okay.

19            MS. STEPHENSON:  But I --

20            THE COURT:  Go ahead.

21            MS. STEPHENSON:  Sorry to interrupt.  I'm so

22    sorry.  I didn't mean to interrupt you, Your Honor.

23            THE COURT:  No, no.  What's up?

24            MS. STEPHENSON:  Oh, I was just going to say I can

25    give you a little bit of (indiscernible) for the procedures

1    if you want more detail.

2              THE COURT:  The only question...  First of all,

3    let me know, does anyone wish to be heard connection with

4    the utility motion?

5              My only -- first of all, let me just note, there's

6    been proper notice of today's hearing on this and service of

7    this motion.  The relief requested is standard, establishing

8    that utility companies can receive adequate assurance of

9    payment in accordance with Section 366 of the Bankruptcy

10   Code.  I appreciate the Committee's comments.

11             My only question is, can't we do this as a final?

12   Do we need an interim order to make sure that professionals

13   don't -- to make sure utilities don't turn lights off?  Is

14   there a reason?  I just want to know --

15             MS. STEPHENSON:  Your Honor --

16             THE COURT:  I don't want to get in the way of the

17   deal, but is there a...?

18             MS. STEPHENSON:  No.  And I tried to work that --

19             THE COURT:  No, no, no.  I'm just asking --

20             MS. STEPHENSON:  I tried to work that in --

21             THE COURT:  I'm not saying -- I don't want to know

22   about (indiscernible).  I just want to know, is there a

23   reason we can't do that as a final?  And I'm saying this

24   really like we are -- the case has been going on now for a

25   little over a month, and so we're kind of in second day

1  land.  And I'd rather just establish one procedure.  And I'm

2  happy to turn the word interim into final.  I don't want to

3  set a final hearing on a utility motion a month into the

4  case.

5          MR. RUFF:  No opposition, for two reasons, Your

6  Honor.  As you said, we're well down the road.  Unlike first

7  days, we've had a lot of notice and opportunity here.  And

8  then, you know, it goes without saying that if a utility

9  company does have an issue, they are free to come to Your

10  Honor and ask for relief from this order.

11          THE COURT:  That's exactly right.  Right, this

12  motion's been out there for about a month.  So that's --

13          MS. STEPHENSON:  I agree wholeheartedly, Your

14  Honor.

15          THE COURT:  So --

16          MS. STEPHENSON:  And on numbers (indiscernible)

17  the order, it had a paragraph that said, in event no timely

18  objections were filed then our order would be deemed a final

19  order.

20          THE COURT:  Yeah.

21          MS. STEPHENSON:  But we can get rid of that

22  paragraph --

23          THE COURT:  No, no, I can --

24          MS. STEPHENSON:  -- call it final.

25  (indiscernible)

```
 1              THE COURT:  I can turn it into a final.  It's been
 2    out there --
 3              MS. STEPHENSON:  Sounds great.
 4              THE COURT:  It's been out there for a month.  It's
 5    been out there for a month and this case has been pending
 6    for over a month.  I think that's more than enough notice
 7    for parties that need (indiscernible) it's utilities.  And
 8    again, I'm not prohibiting utilities from ever coming in.
 9    They certainly have the right to come in.  This is just to
10    allow the case to progress.  So I will -- I'm going to sign
11    the interim order, but I'm going to make it a final order.
12              Where do we go next?
13              MS. STEPHENSON:  Thank you, Your Honor.  Next we
14    have interim compensation procedures motion.  This was filed
15    on December 22, 2022 at Docket Number 74.  We used
16    procedures that were pretty much identical to the ones that
17    were approved in FSS.
18              We did incorporate some, you know, light comments
19    from the United States Trustee's office and the UCC into the
20    revised proposed order filed at Docket Number 101, and the
21    redline is at 101-1.
22              I would like to point out one correction that I
23    would like to make.  On the redline, Page 2 of 7, there's a
24    numbering boo-boo, where it says A and (a).  I'd like to go
25    back and fix that numbering boo-boo.
```

```
1                 THE COURT:  Wait, wait.  Can you -- let's see.
2    I'm looking at 101?
3                 MS. STEPHENSON:  Yes.
4                 THE COURT:  Okay.
5                 MS. STEPHENSON:  Yes.
6                 THE COURT:  Just give me a second.  Let me just
7    take a look at something.  What paragraph are you referring
8    to?
9                 MS. STEPHENSON:  The first paragraph.  Oh, you
10   know what?  That's not right.  (indiscernible) on Page 2, it
11   starts the procedures?
12                THE COURT:  Yep.
13                MS. STEPHENSON:  And we have a -- numbering is
14   wrong.  It's an A and then an (a).
15                THE COURT:  No.
16                MS. STEPHENSON:  No?
17                THE COURT:  We're good.
18                MS. STEPHENSON:  (indiscernible)
19                THE COURT:  Yeah.  No, I --
20                MS. STEPHENSON:  (indiscernible) paragraph?
21                THE COURT:  We're fine.
22                MS. STEPHENSON:  Oh, okay.
23                THE COURT:  Yeah.
24                MS. STEPHENSON:  Okay.  Okay, well --
25                THE COURT:  Yeah, no --
```

1          MS. STEPHENSON:  -- then the next thing that --

2          THE COURT:  I -- what I --

3          MS. STEPHENSON:  So on Paragraph 5 on Page 4 --

4          THE COURT:  Uh huh.

5          MS. STEPHENSON:  -- two pages later it says each

6   retained professional may submit its monthly fee statement

7   on or before January 16, 2023.  And what we would like to do

8   is just push this one day back to either today or tomorrow

9   or whatever the parties here see fit, just to allow the

10  professional parties here to go ahead and get December

11  circulated and submitted, so that we're not falling back a

12  month and, you know, next month everybody doesn't have to

13  review two months' worth of statements.

14         THE COURT:  How about January 27th, next Friday?

15         MS. STEPHENSON:  That's fine.

16         THE COURT:  Yeah.

17         MS. STEPHENSON:  Does anybody else have an

18  objection to that?  I'm fine with that.

19         THE COURT:  How about January 27th?  Let's just go

20  with that.  I'm doing this for the associates who are going

21  to get jammed over the weekend or having to cram one in.

22  I've been there.  Some days I'm not going to --

23         MS. STEPHENSON:  (indiscernible)

24         THE COURT:  Some days somebody's not going to

25  escape this and you'll have to crank it out to the wee hours

1    of the morning.  Just might be the day, next Friday, parties

2    can get their fees in.  Any object -- and the other change,

3    I think, because I just granted the relief requested, is I

4    can just say co-counsel remove the word proposed, just

5    because I technically -- you are technically counsel now,

6    you and Mr. Jordan, on your -- I don't want to call it --

7              MS. STEPHENSON:  (indiscernible)

8              THE COURT:  A(a) and A(b).  But you know what I

9    mean.

10             MS. STEPHENSON:  Thank you, Your Honor.

11             THE COURT:  Alrighty.  Any objection to the relief

12   requested here?  Okay.  It's granted.  Interim compensation

13   is permitted under the Code.  The standards are standard in

14   this District.  Everyone retains their rights.  Just an

15   interim compensation procedures, procedural -- parties.

16   There'll be plenty of disclosure on fees.  It's granted.

17   I'm making that little change -- changing it to January 27,

18   2023 and it is off to docketing.

19             Where do we go next?

20             MS. STEPHENSON:  Thank you, Your Honor.  The next

21   one I was going to hit was FSS motion to fix the date by

22   which Debtor must assume or reject executory contracts.  But

23   if we'd rather stay in the Alex Jones case and hit those to

24   inform in applications which were not set for hearing today,

25   which were just set on regular notice, we can just address

1    those if you'd like.

2              THE COURT:  Yeah, there was an extension of the

3    schedules request.  I don't I -- it was a proposed --

4              MS. STEPHENSON:  Oh, yes.

5              THE COURT:  -- agreed order on that.  So, here's

6    my question on that.  I want the date, whatever you pick to

7    be the date -- so tell me how much -- what I don't want are

8    third and fourth requests, because I think at some point the

9    case has to progress.  But I want accurate schedules.  So

10   I'm not trying to jam you.

11             The question I really want to know is how much --

12   you know, is the 7th the date that you can get it done?  Are

13   you confident about that?  Or do you need -- do I need to

14   push it to the 14th?  That's what I'm asking.  And I know

15   more time is always better, but I want accurate schedules

16   and I don't want additional requests because I think the

17   Committee has a point.  At some point, we've got to -- the

18   case has to progress.  And at some point there need to be

19   disclosures.

20             And the reason I'm asking this now is -- right --

21   it's just a lot -- it triggers a lot of other things in

22   connection with the FSS case and other things that could be

23   going on, and requests to assume or reject executory

24   contracts, while I'd like to see the Debtors' schedule and

25   actually have the Debtor listed as one of his contracts.  I

```
 1    don't want -- I want there to just be -- to the extent we
 2    can synch things up.
 3              So my question is what date do you really need?
 4    Is the 7th the date?  Are you confident?  I don't want to
 5    hold you to it, but what I'm saying is that's the question
 6    that I'm asking you.  It's the question that I would ask
 7    every debtor on a first day.  How much time do you really
 8    need?
 9              MS. DRIVER:  Am I still unmuted?
10              THE COURT:  Yes, you are.
11              MS. DRIVER:  (indiscernible) Okay.  I apologize.
12    I might just let Mr. Schleizer, who's on here today, just
13    weigh in on that.  (indiscernible) has been working
14    diligently and he also just cancelled a family vacation to
15    really make this work.  So I just want to make sure that if
16    we've done that -- if he prefers the 14th, that he gets to
17    let us know that.
18              Mr. Schleizer, could you ask to unmute your line?
19              THE COURT:  I'm not recommending the 14th, and I
20    just want to be clear (indiscernible).  I want them done.  I
21    just want them done right.  I think the Committee makes a
22    good point, you know.  And I understand the Committee's
23    concern.  They don't -- like at some point, we just need
24    them on file.  I just want to know what's the real date you
25    need?
```

```
 1          And I've probably -- hold on, folks.  Okay.  Did I
 2   unmute the right line?  Mr. Schleizer, are you there?  Hit 5
 3   Star again; let me see if I can get you.  Ah, there you are.
 4          MR. SCHLEIZER:  Thank you, Your Honor.  We started
 5   from a situation where there were no individual accounting
 6   records and titles to assets that have been a little bit
 7   difficult to get a handle on.  If we could have until the
 8   14th, I'll feel a lot more confident getting an accurate
 9   schedule.
10          THE COURT:  I give you to the 14th.  I'm only
11   saying this so that it's said, okay?  Don't get comfortable.
12   If you can get it in on the 10th, get it in on the 10th.  Do
13   what you have to do.  I'm going to give you until the 14th
14   because I want to make sure that you have what you need, and
15   I don't want -- I want them right.  It's really important to
16   get accurate schedules and I don't want you to file amended
17   schedules just because you tried to beat a deadline.  I'm
18   going to give you an extra seven days, but I want them, and
19   I want them right.  And I'm sorry you canceled your family
20   vacation, but...  That doesn't mean put it back on either,
21   Mr. Schleizer.  Just kidding.
22          MR. SCHLEIZER:  And --
23          THE COURT:  Okay.  I'm going to grant that to the
24   14th.  Why don't we turn to cash collateral?
25          MR. BATTAGLIA:  Yes, Your Honor.  Ray Battaglia,
```

1    for Free Speech Systems.

2         THE COURT:  Okay.

3         MR. BATTAGLIA:  Mr. Magill is in the courtroom,

4    should the Court have any questions.  We circulated the

5    eight interim cash collateral order, along with the cash

6    collateral budget two days (indiscernible) I believe and

7    uploaded it yesterday with the Court.  I've heard no

8    objections or no comments that I've not responded to

9    regarding the budget, which is the seminal document at the

10   end of the day.  The order doesn't change other than

11   changing the seventh to eighth interim.

12        So, Your Honor, with that, I've heard no

13   objections and we would ask the Court to approve it, subject

14   to whatever comments or questions you may have.

15        THE COURT:  Well, the question I had -- and maybe

16   a point of clarification -- there is a -- one -- I've never

17   seen it before -- request for (indiscernible) for about

18   $20,000 related to Mr. Jones going on a -- I think the

19   comment was, a road show, or road.  It looks like a one-time

20   expense.  Somebody can just provide me some clarity on what

21   that is.

22        MR. BATTAGLIA:  It is, and Your Honor, Mr. Magill

23   will provide the details.  But it is a road -- it may not

24   even happen at this juncture, but at the end of the day, it

25   is a roadshow to Florida to sort of meet with

1    (indiscernible), shall we say.  So it's meet and greet and

2    it does have, you know, value to the estate in maintaining

3    the Debtors' brand among the people who are his listeners

4    and viewers.  And Mr. Magill may have additional comments.

5          THE COURT:  Okay.  Mr. Magill?

6          MR. MAGILL:  Thank you, Your Honor.  Yes, it is a

7    one and done and it is not -- does not represent 100 percent

8    of the trip costs.  It's being shared by sponsors.  Mr.

9    Jones is going to a couple of his colleagues in South

10   Florida and they are paying the majority of the trip and the

11   expenses.

12         THE COURT:  Mm hmm.

13         MR. MAGILL:  But I thought that based on what he's

14   going to be doing and the fact that I believe this could

15   boost some sales that we really should be having --

16         THE COURT:  Mm hmm.

17         MR. MAGILL:  -- this time of the year, that I

18   thought it was worth the expense of doing that one and done.

19   But I wanted to make the Court aware that this is not 100

20   percent.  We're splitting the cost with others.

21         THE COURT:  Okay.  Let me ask, does anyone wish to

22   be heard in connection with the cash collateral order in the

23   Free Speech case?  I've got to... Okay.  Look, I've

24   reviewed the budget.  I've got no issues with it.  I

25   understand.  I just wanted some clarity on the expense.  You

1   know me, I'll ask --

2            MR. MAGILL:  Of course.

3            THE COURT:  I'll ask questions.

4            MR. BATTAGLIA:  And that is the question the U.S.

5   Trustee's office had as well, Your Honor --

6            THE COURT:  Yeah.

7            MR. BATTAGLIA:  -- and we addressed it with them.

8            THE COURT:  You got it.  I've got no issue with

9   it.  I think you all looked at it, you thought about it.

10  Okay.

11           MR. BATTAGLIA:  Your Honor, the order does provide

12  for a reset date for what hopefully would be the ninth

13  interim.  And I believe the budget takes us through February

14  17th, so it would require hearing it in advance of the 17th

15  --

16           THE COURT:  Okay.

17           MR. BATTAGLIA:  -- of February.

18           THE COURT:  Let me just ask before we kind of talk

19  about the other professionals.  When do we need to meet

20  again?  Maybe we can set whatever hearing date before the

21  17th...  When do we need to -- (indiscernible) going to come

22  back?

23           MR. BATTAGLIA:  Your Honor, anytime the week of

24  13th is fine by me.  I am -- let's see -- I think I'm

25  leaving on a vacation on the 17th, so the 17th would not be

1    good for me.

2              THE COURT:  Mr. Schleizer just cancelled his.

3    Just (indiscernible).

4              MR. BATTAGLIA:  I've been toiling in this coal

5    mine for about eight months now, Judge --

6              THE COURT:  Yeah.

7              MR. BATTAGLIA:  -- so I've earned a vacation.

8              THE COURT:  Yeah, I...  Okay.  Let me just pick a

9    date here.  How about February 14th?  No, wait.  What date

10   did you tell me, Mr. Battaglia?

11             MR. BATTAGLIA:  The 17th is the expiration of the

12   cash collateral order, and that's the day I leave the

13   country, so --

14             THE COURT:  Okay.

15             MR. BATTAGLIA:  -- anytime the 13th through the

16   16th is fine by me.

17             THE COURT:  What about the 14th at 1:00?

18             MR. BATTAGLIA:  That's fine, Judge.

19             THE COURT:  February 14th at 1:00.  Okay.  Let's

20   do it.

21             MR. BATTAGLIA:  Very good, Your Honor.

22             THE COURT:  Alrighty.  Let me write that down.

23             MR. BATTAGLIA:  The other motion, I wasn't sure

24   that it was set, but it is the Jones motion to compel a date

25   by which the Debtor must assume or reject contracts.

1    There's been an order circulated, Your Honor.  I know it's a

2    topic of some concern.  We addressed what Mr. Jones' salary

3    might be.  There is no change in the current budget for his

4    salary.  And we have had preliminary conversations about an

5    incentive-based compensation system, which we hope would be

6    advantageous to both estates.  But they have not progressed

7    because of the necessity of having some additional financial

8    information.

9         I know parties have filed reservations of rights,

10   and I'll tell the Court, we wouldn't contemplate doing

11   something that wasn't approved by this Court after

12   appropriate notice of hearing.  And I'm sure I speak for Ms.

13   Driver in that regard as well.  So if there is some

14   agreement by which we want to proceed with Mr. Jones, that

15   will be the subject of a forthcoming motion.

16        But with respect to the motion to compel

17   assumption -- a deadline for assumption or rejection, we

18   have consensually agreed to a 90-day, which could be

19   extended for cause shown for the filing of an appropriate

20   motion to either assume or reject by that deadline, and

21   which would, in and of itself, allow this Court to determine

22   any cure claims if the decision were made to assume.

23        I think my comments and I think Mr. Kimpler's firm

24   had some comments as well.  I think they align with each

25   other, but I'll let others comment.  So we at least

1    contemplated that within 90 days we will file something with

2    this Court on assumption or rejection.  If in the interim we

3    come up with some proposal to deal with a new or modified

4    contract, we'll bring to the Court's and the parties'

5    attention as well.

6              THE COURT:  Okay.  Anyone else wish to be heard?

7    So, there's nothing I need to do today.  Just sit back and -

8    - or are you asking me to sign the agreed order?

9              MR. BATTAGLIA:  I have no objection to the entry

10   of the order that has been revised.  And I think Ms.

11   Stephenson is controlling the document at this point.  I

12   don't know whether she has had other comments from other

13   parties.  But it seemed to me that it had percolated pretty

14   significantly (indiscernible).

15             THE COURT:  Everybody's just kind of preserving

16   their rights.

17             MS. STEPHENSON:  (indiscernible)

18             THE COURT:  Yes.  Yes.

19             MS. STEPHENSON:  There are only two parties that I

20   have not gotten final approval from on the proposed order

21   (indiscernible).  Mr. Battaglia's version was the last

22   version that we've been sending around that seems -- you

23   know, has the most approval, that I'm definitely fine with.

24             So we were just waiting to hear from the last

25   couple of groups to make sure everybody was signed off.

```
 1              THE COURT:  So, okay.
 2              MR. KIMPLER:  And Your Honor, if I may -- Kyle
 3    Kimpler, on behalf of --
 4              THE COURT:  Yes, Mr. Kimpler.
 5              MR. KIMPLER:  -- the Connecticut Plaintiffs.
 6              THE COURT:  Yes, sir.
 7              MR. KIMPLER:  I think what Mr. Battaglia said is
 8    consistent with our negotiations.  We've made some
 9    clarifying revisions to the proposed order, the Court having
10    (indiscernible) just intended to make sure that if a
11    decision to assume or amend the contract as stated, if
12    appropriate notice is given to the families so that they
13    have a chance to respond as appropriate.  (indiscernible)
14    concerned that the original order is a little bit unclear on
15    how that would work.  That seems to be (indiscernible) in
16    the same direction at this point.  And (indiscernible) will
17    be forthcoming.
18              THE COURT:  I think that makes a lot of sense and
19    I got it.  I got it.  So if there's going to be any decision
20    on assumption and rejection, everybody gets notice.
21    Everybody gets a chance, the opportunity to look at it and
22    give it some thought.  And this will be transparency in the
23    process.  So that makes sense to me.
24              The docket number where that is, I just want to...
25    Someone remind me.
```

1              MS. STEPHENSON:  It's on the FSS docket.  It's

2    349.

3              THE COURT:  FSS 349.  Just give me a second.

4    Okay.  That's the motion.  Is the proposed order that

5    everybody's describing, is that the one that's attached to

6    this at 349, or is there another one?

7              MS. STEPHENSON:  (indiscernible) No, Your Honor,

8    it has not been filed yet.  I was just waiting to get

9    everybody to sign off --

10             THE COURT:  No --

11             MS. STEPHENSON:  -- before I --

12             THE COURT:  No.

13             MS. STEPHENSON:  -- filed a redline.

14             THE COURT:  Got it.  So, once you upload that, can

15   you let (indiscernible) know it's up?

16             MS. STEPHENSON:  Yes, Your Honor.

17             THE COURT:  Okay.  Got it.  Okay.  And the agreed

18   order --

19             MR. BATTAGLIA:  And Your Honor, there are no other

20   matters (indiscernible) -- sorry.

21             THE COURT:  No, no, no, no.  Go ahead.,

22             MR. BATTAGLIA:  I was going to say there are no

23   other matters set in the FSS case.

24             THE COURT:  Okay.  So, going back to the Jones

25   case, there was an agreed order -- or I should say there was

1    an order on the extension.  That's the one at 88, right, Ms.

2    Stephenson, on the agreed order on the extension of time for

3    schedules?  Did I get that --

4              MS. STEPHENSON:  I think so.  I don't have that

5    one in front of me.  My apologies, Your Honor.

6              THE COURT:  No, no, no, no.  What is it -- okay --

7    yeah, that's the stip that says February 7th.  So I'm going

8    to just call it just order regarding additional extensions

9    of time.  I'm just going to change it because I know I'm

10   adding my date in here.  I'm going to call it an order.

11             MS. STEPHENSON:  Okay.

12             THE COURT:  And we'll go from there.  Let me ask

13   the parties, any issue with me -- anyone have any issue with

14   me taking up the additional retention applications today in

15   the Alex Jones case?  Okay.  I'm okay with it.  Let's

16   proceed.

17             MS. STEPHENSON:  Okay.  Your Honor,

18   (indiscernible) matters are the application for the

19   employment of Blackbriar Advisors LLC as financial advisor

20   to the Debtor.  That was filed December 29th of '22.  And

21   the application of the Debtor to employ Rachel Kennerly,

22   LLC, as tax accountant, Docket Number 83.  And that was

23   filed on 12-30-2022.

24             And what we've done on those two, Your Honor, is I

25   circulated the proposed orders and I have incorporated the

1    same comments from the United States Trustee's office that I

2    received on the prior professional orders; very, very

3    similar.  And I also made the same changes that I had

4    previously received from the UCC (indiscernible) as well.  I

5    have not filed those yet, but when I do, you'll see that

6    they look very, very similar to the ones that were filed for

7    Crowe & Dunlevy and Jordan & Ortiz.

8            THE COURT:  Okay.  Okay.  Any declarations you

9    wish to admit or any (indiscernible)?

10           MS. STEPHENSON:  No, I haven't done any

11   supplemental declarations.  But if Your Honor would like to

12   see supplemental declarations --

13           THE COURT:  No, no, no.

14           MS. STEPHENSON:  -- similar to the ones --

15           THE COURT:  I'm asking --

16           MS. STEPHENSON:  (indiscernible)

17           THE COURT:  Are we relying on the (indiscernible)

18   that's on file?

19           MS. STEPHENSON:  Yes.

20           THE COURT:  Okay.

21           MS. STEPHENSON:  Yes, Your Honor.

22           THE COURT:  Okay.  Okay.  All right.  Anyone wish

23   to be heard in connection with Mr. Schleizer's retention

24   application?

25           MR. RUFF:  Your Honor, only just to confirm what

1    was represented on the record already, that we did provide

2    comments and we understand that they are accepted.  Assuming

3    the orders submitted are the ones that we agreed to, then no

4    opposition to these applications.

5         THE COURT:  Okay.  Okay.  The Court has reviewed

6    this application and, again, this is another professional to

7    be retained under Section 327 of the Bankruptcy Code.  Court

8    has reviewed the declarations and understands the proposed

9    comments have been accepted.  Subject to review of the final

10   -- of the order that's submitted and making sure that

11   everybody's comfortable with that proposed -- that it

12   incorporates the comments from the Trustee. I'm going to

13   grant the application.

14        Debtor needs assistance to provide accurate

15   schedules.  Mr. Schleizer is involved in this case and is

16   working on it and needs the assurance that he's going to be

17   compensated for his work.  I find that the standards under

18   Section 327, as approved by the -- articulated by the Fifth

19   Circuit and the text itself, is satisfied here.  So it's

20   approved.  Okay.  Anything else?

21        And again, Ms. Stephenson and (indiscernible) the

22   order that gets uploaded, you all are going to let Ms.

23   (indiscernible) know.

24        MS. STEPHENSON:  Yes.  Yes, Your Honor.

25        THE COURT:  Okay.  Anything else?

1          MS. STEPHENSON:  Thank you.  That's all I have,

2    Your Honor.

3          THE COURT:  Okay.  Anything else anyone wants to

4    talk about?  Okay.  Folks, I appreciate everyone's time.

5    Thanks for everyone's patience.  Do we need to set another,

6    what I would call an omnibus hearing date at this time?  Or

7    folks want to reach out to my case manager and have one.

8    We'll be here on the 14th at 1:00.  That's probably not

9    enough time for full notice on something, but if there's an

10   emergency issue and folks want to set it on that date, fine

11   with me.  I'm not saying I'll grant it, but certainly we'll

12   be here on that date.  We can use that date if we need

13   another omnibus hearing date for something.  Sounds like

14   folks need to get some time in working on issues.

15         I did see something, Mr. Ridulfo, on a motion to

16   quash.  Is that something I need to -- do we need to set a

17   date on that, or maybe you all can just reach out to my case

18   manager if you need something there.

19         MR. RIDULFO:  I think so, Your Honor.

20         THE COURT:  Okay.  So I won't do anything there.

21   I just wanted to acknowledge it and give you -- I saw you

22   here.

23         MR. RIDULFO:  Thank you, Your Honor.

24         THE COURT:  Anything from the Committee in Alex

25   Jones?

1              MS. BRAUNER:  Nothing from us, Your Honor.

2              THE COURT:  All right, Mr. Zensky and Ms. Brauner,

3    I really appreciate your participation today.  Anything from

4    the Subchapter 5 Trustee in the FSS case?  Anything else we

5    need to talk about today?  Okay.  Anything from anyone?

6              Alrighty, folks.  Well, everyone go get some

7    lunch.  Thank you very much.  You all have a good day.

8              CLERK:  All rise.

9              (Proceedings adjourned at 12:34 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        CERTIFICATION

 2

 3    I certify that the foregoing is a correct transcript from

 4    the electronic sound recording of the proceedings in the

 5    above-entitled matter.

 6

 7    Sonya M. Ledanski Hyde

 8

 9

10    Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  January 26, 2023
```