IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **ALEXANDER E. JONES** | § | Case No. 22-33553 |
| | § | |
| Debtor. | § | |
| | § | |

**APPLICATION OF DEBTOR FOR AN ORDER AUTHORIZING EMPLOYMENT OF THE REYNAL LAW FIRM, P.C., AS SPECIAL COUNSEL UNDER 11 U.S.C. 327(e)**

**THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE CHRISTOPHER M. LOPEZ,
UNITED STATES BANKRUPTCY JUDGE:

Alexander E. Jones ("Jones" or "Debtor"), debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Chapter 11 Case"), pursuant to Sections 105(a) and 327(e) of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby moves for the entry of an order authorizing the retention of The Reynal Law Firm, P.C. ("The Reynal Firm" or the "Firm") as special counsel to Jones from January 8, 2023, pursuant to that certain engagement letter agreement by and between Debtor and The Reynal Firm (the "Engagement Agreement"), a copy of which is attached hereto as

**Exhibit A**. In support of this Application, Debtor submits the Declaration of F. Andino Reynal, attached hereto as **Exhibit B**, and further respectfully represents as follows:

## I.      JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2).  Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are sections 105, 327(e), 330, and 363(b) of title 11 of the Bankruptcy Code, Rule 2014 of the Bankruptcy Rules, and Rules 2014-1 and 2016-1of the Local Rules for the Bankruptcy Court for the Southern District of Texas (the "Local Rules").

## II.      BACKGROUND

**A.      Case Background**

3.      On December 2, 2022 (the "Petition Date"), Debtor filed his voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4.      Jones continues in possession of his holdings and is managing as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

5.      An official committee of unsecured creditors has been appointed in this Chapter 11 Case.  No trustee or examiner has been requested or appointed in this Chapter 11 Case.

**B.      Proposed Employment of the Reynal Firm**

       *i.      Scope of Employment*

6.      Subject to the Court's approval, Debtor desires to employ and retain The Reynal Firm as its special counsel in connection with the following cases (the "Matters"):

*Fontaine v. Free Speech Systems, LLC*, et al., D-1-GN-18-001605 (459th District Court, Travis County, Texas)

*Heslin, et al. v. Free Speech Systems, LLC, et al.*, D-1-GN18-001835 (459th District Court, Travis County, Texas)

*Pozner, et al. v. Free Speech Systems, LLC, et al.*, D-1-GN-18-001842 (459th District Court, Travis County, Texas) (collectively, the "Travis County Sandy Hook Lawsuits.")

7.      On December 19, 2022, the Bankruptcy Court entered an order modifying the automatic stay to allow Neil Heslin and Scarlett Lewis (the "Texas Post-Trial Plaintiffs") to proceed in their state court lawsuits against Debtor and Free Speech Systems, LLC for entry of final judgment, and to allow appeals, if any, as permitted by state law. (Doc. No. 58). Leonard Pozner and Veronique De La Rosa, plaintiffs in Cause No. D-1-GN-18-001842,  have also filed a motion to modify the automatic stay (Doc. No. 113). However, these parties have not reached trial on their claims against Debtor. After entry of the order modifying the automatic stay as to the Texas Post-Trial Plaintiffs, the Travis County, Texas 261st District Court entered a Final Judgment against Debtor and FSS in the lawsuit by the Texas Post-Trial Plaintiffs (Doc. No. 92-1). Debtor files this motion in connection with his efforts to defend himself in the Travis County Sandy Hook Lawsuits and the appeal that will follow. Post-trial motions in the suit by the Texas Post-Trial Plaintiffs are due by February 13, 2023.

                    *ii.      Necessity of Employment*

8.      Debtor desires to retain The Reynal Firm to act as his primary special litigation counsel on the Travis County Sandy Hook Lawsuits through the appeal, including any motions for sanctions, motions for new trial, and motions for judgment notwithstanding the verdict. During the course of the appeal, The Reynal Firm will provide services to Debtor at the direction of Debtor's appellate counsel, Martin, Disiere, Jefferson & Wisdom L.L.P., in order to save costs to Debtor's estate (collectively, the "Professional Services").

9.      Debtor desires to retain The Reynal Firm to represent it as his litigation and trial

counsel on these Matters because (a) The Reynal Firm has extensive experience and knowledge with Texas litigation practice and procedure, with the partners at The Reynal Firm having tried many cases in Texas courts and handled many appeals before Texas appellate courts; (b) The Reynal Firm is intimately familiar with the facts and issues in each of the Matters, including the pleadings filed on the docket, the discovery undertaken, the evidence adduced to date and the law applicable to the Matters, having represented Jones and other co-defendants on these Matters prior to the Petition Date; (c) due to the subject matter of the Matters and the parties involved, it would be virtually impossible to replace the Firm at this point, without causing great prejudice to Jones and his creditors (even if it could be done, the cost to have a new firm learn the extensive record and discovery in this case, would far exceed the budgeted cost for retaining the The Reynal Firm on an hourly basis).

10.     Debtor believes that the Firm is well qualified to perform the requested Professional Services.

11.     The Reynal Firm's proposed compensation will continue at the Firm's normal hourly rates set out in the Engagement Letter. The hourly rate structure is beneficial to the Jones estate based on the projected type of work The Reynal Firm will be doing in the foreseeable future for Debtor. If circumstances change, Debtor will seek an amendment of the retention of The Reynal Firm.

12.     No agreement exists, nor will any be made, to share any compensation received by The Reynal Firm for its services with any other person or firm, except as permitted by 11 U.S.C. § 504(b) and Bankruptcy Rule 2016.

13.     No promises have been made to or received by the Firm as to payment or compensation in connection with the Jones bankruptcy case, other than in accordance with the

provisions of the Bankruptcy Code and applicable Bankruptcy Rule.

14.     To the best of Debtor's knowledge, and, as set forth in the proposed attorney's declaration (the "Reynal Declaration") attached to this Motion as Exhibit B, The Reynal Firm does not have an adverse interest with respect to the matter on which the Firm is to be employed as special litigation counsel as required by 11 U.S.C.§ 327(e).

15.     The Reynal Firm intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including §§ 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the guidelines (the "Guidelines") established by the U.S. Trustee, and any orders of this Court in this Chapter 11 Case (the "Orders"), for all services performed and expenses incurred during its representation of Debtor.

16.     Debtor believes that The Reynal Firm's agreed terms of reimbursement, compensation, and hourly rates are reasonable. The Reynal Firm will notify Debtor and the U.S. Trustee of any change in the hourly rates charged for services rendered while the Chapter 11 Case is pending.

            *iii.*     *Retainer*

17.     The payment of a post-petition retainer is not prohibited by the Bankruptcy Code. 11 U.S.C. § 328(a) (a debtor may retain a professional person on any reasonable terms and conditions, including on a retainer).

18.     A determination of whether, and in what amount, a retainer should be paid is best left to the parties and the discretion of the Bankruptcy Court. Such a determination is made on a case-by-case basis.

19.     The moving party has the burden to establish that the proposed terms and conditions

of professional employment proposed in a bankruptcy case are reasonable.

20.     The Bankruptcy Court must consider several recognized factors, plus special factors which include, but are not limited to: (1) the retainer's economic impact on the debtor's ongoing business operation; (2) the retainer's economic impact on the ability of the debtor to reorganize; (3) the amount and reasonableness of the retainer; (4) the reputation of the special counsel; and (5) the ability of special counsel to disgorge such payments at the conclusion of the case should this Court determine that the fees paid to counsel are not justified.

21.     Here, The Reynal Firm's request for the $50,000 post-petition retainer satisfies the five-factor criteria: (1) the amount of the proposed retainer is modest; (2) the economic impact of the retainer on Jones's business operations and ability to reorganize is slight; (3) Jones must have competent counsel represent it in the Matters, as the Plaintiffs are represented by a top-tier personal injury law firm and the claims arising from the results of those matters will have a bearing on what other unsecured creditors of Jones will receive under a plan of reorganization; (4) The Reynal Firm is a premier criminal defense and white collar litigation and trial boutique law firm in Texas; and (5) the ability of the Court to successfully order special counsel to disgorge fees paid is strong, should it become necessary. The Firm is seeking to obtain a retainer, but has agreed to hold it and not take the retainer into income until the last invoice.

22.     The Proposed Order provides that The Reynal Firm shall continue to hold the Retainer in trust for satisfaction of its final fees and expenses as authorized by the Court, or as otherwise directed by the Court.

## IV.   RELIEF REQUESTED

23.     Debtor requests that the Court enter an order substantially in the form of the Proposed Order authorizing Debtor to retain The Reynal Firm as special counsel, pursuant to the

terms of the Engagement Agreement, as modified by the Proposed Order, effective as of January 8, 2023.

24.     Relief as of January 8, 2023 is appropriate because pursuant to Debtor's request, The Reynal Firm has continued to serve as litigation counsel on the Travis County Sandy Hook Lawsuits in addressing post-verdict matters, with assurances that Debtor would seek approval of its employment and retention effective as of January 8, 2023 that it may be compensated for services it has provided Debtor prior to the filing of this Application. No party in interest should be prejudiced as The Reynal Firm is providing valuable services to the estate at this time.

## V.     BASIS FOR RELIEF

25.     Bankruptcy Code § 327(e) provides that subject to bankruptcy court approval, trustees—and debtors-in-possession—"may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and, if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e).

26.     Bankruptcy Rule 2014 requires certain disclosures prior to the entry of an order approving the employment of a professional. According to Bankruptcy Rule 2014, the application must:

> (a)     Be filed by the trustee or committee and served on the United States Trustee (except in cases under Chapter 9 of the Bankruptcy Code).

> (b)     State the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee; and

(c)     Be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

**A.     The Reynal Firm Meets the Requirements of Bankruptcy Code § 327(e)**

27.     Based on the Reynal Declaration, Debtor submits that The Reynal Firm neither holds nor represents a disqualifying adverse interest. 11 U.S.C. § 327(e).

28.     The Reynal Declaration also discloses no connections with Debtor that would disqualify The Reynal Firm. Debtor is not aware of any connections in addition to those disclosed in the Reynal Declaration.

**B.     This Application and the Reynal Declaration Meet the Requirements of Bankruptcy Rule 2014**

29.     This Application and the Reynal Declaration meet the requirements as set out in Bankruptcy Rule 2014. This Application is made by Debtor and sets out the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, the proposed arrangement for compensation. The Reynal Declaration is a verified statement pursuant to 28 U.S.C § 1746 that sets out all connections that The Reynal Firm has with Debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee. Debtor is not aware of any other connections in addition to those disclosed in the Reynal Declaration.

## VI.     <u>CONCLUSION</u>

WHEREFORE, Debtor respectfully requests that this Court enter an order an order substantially in the form of the Proposed Order approving the employment of The Reynal Firm commencing on January 8, 2023 and granting such other relief as the Court deems appropriate under the presented facts and circumstances.

Dated:  February 8, 2023

Respectfully submitted,

**CROWE & DUNLEVY, P.C.**

By: */s/Vickie L. Driver*_____
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
            aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**ATTORNEYS FOR ALEXANDER E. JONES**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing pleading was served upon all parties registered to receive notices via the Court's ECF noticing system, the U.S. Trustee's Office, Counsel for the Unsecured Creditors' Committee, and all parties requesting notice pursuant to Rule 2002 on this 8th day of February, 2023.

*/s/ Vickie L. Driver*
Vickie L. Driver

**APPLICATION OF DEBTOR FOR AN ORDER AUTHORIZING EMPLOYMENT OF THE REYNAL LAW FIRM, P.C., AS SPECIAL COUNSEL UNDER 11 U.S.C. 327(E) - PAGE 9**

## Exhibit A

**The Reynal Firm Engagement Agreement**

# THE REYNAL LAW FIRM, P.C.

## PRIVILEGED AND CONFIDENTIAL

Via E-Mail: Alexejones1777@gmail.com

Alex E. Jones
3019 Alvin Devane Blvd-Suite 300
Austin, Texas 78704

February 2, 2023

Re: **Legal Services Agreement:** Lawsuits Set Out in Exhibit A

Mr. Jones:

Pursuant to a February 28, 2022, engagement letter among Alex Jones, Infowars LLC and Free Speech Systems, LLC, those entities retained Fertitta & Reynal LLP ("F&R LLP") to represent them in connection with suits brought against them by plaintiffs Fontaine, Heslin, Pozner and Lewis in Texas (the "Original Engagement Agreement"). A true and correct copy of the Original Engagement Agreement is attached hereto as **Exhibit B** and incorporated by reference as if fully set out.

As a result of our expertise and experience with the trial on the Heslin\Lewis matter, you have asked me and The Reynal Law Firm, P.C. (the "Firm") to act as special litigation and trial counsel for you in connection with the lawsuits set out in **Exhibit A**, all of which are pending in Travis County, Texas. You understand that with respect to the appeal of the *Heslin* and *Lewis* matters, you are retaining Martin, Disiere, Jefferson & Wisdom LLP as your primary appellate counsel. Nevertheless, you have asked us to assist Martin, Disiere, Jefferson & Wisdom LLP with these appeals based on the experience the Firm had with trying the Heslin\Lewis suit in Travis County last year. We appreciate the trust and confidence that your decision places in us and we look forward to a close and mutually rewarding relationship.

The purpose of this letter (the "Engagement Letter") is to set forth the terms of our representation, specify the scope of engagement, and amend the Original Engagement Agreement for the matters. Except as otherwise amended by this Engagement Letter, all the other terms and conditions of the Original Engagement Agreement shall control the retention of the Firm by you.

*Scope of Engagement*. The Firm shall act as special litigation and trial counsel for FSS in connection with the lawsuits described in **Exhibit A** (the "Professional Services").

*Legal Fees and Expenses*. The Firm shall be compensated for Professional Services provided to the Client on the Matter, in accordance with the Original Engagement Agreement, as amended by this Engagement Agreement. None of the provisions relating to a flat fee arrangement contained in the Original Engagement Agreement shall apply to these Matters.

Alexander E. Jones
February 2, 2023
Page 2 of 12

For Professional Services provided to Client by the Firm, the Firm shall be entitled to a fee in the amount equal to the time expended by each attorney, multiplied by the hourly rates set forth in the attached Hourly Billing Rate Schedule. The Client is responsible for reimbursing the Firm for expenses incurred on behalf of the Client pursuant to the attached Client Expense Policy.

*Retainer.* As a condition to the Firm accepting this engagement on your behalf, you have agreed to provide a retainer of $50,000.00 (the "Retainer") in connection with these Matters, subject to such payment being approved by the United States Bankruptcy Court, Southern District of Texas, Houston Division (the "Bankruptcy Court"). The instructions for remitting the retainer funds to the Firm will be provided in a separate electronic correspondence. The Retainer will serve as a security deposit and will be applied towards your final invoice for these Matters. Any balance will be returned to you. If you do not pay your invoices timely, the Firm may apply the Retainer to an unpaid invoice. Subject to Bankruptcy Court approval, the Firm reserves the right to have the Retainer replenished by the Client if the Firm anticipates that there is a risk in collecting future attorney's fees and/or reimbursement of costs. Notwithstanding anything contrary contained herein, the Firm understands and agrees that payment of its fees and expenses is subject to Bankruptcy Court approval, either on an interim basis pursuant to an order approving a procedure for interim compensation or pursuant a fee application.

*Invoices/Fee Statements.* The Firm's invoices will be issued to you during the month, if not more often, following the month that services are provided. The invoice will include a fee statement providing the details of the legal services performed, and the expenses incurred, for the Client. The invoices shall be informational only and shall only be paid upon allowance by a Bankruptcy Court order or pursuant to an order approving interim compensation of professionals.

*Conflicts.* The Firm has conducted an initial conflicts search based on information you provided. The Firm did not identify any connection that would prevent the Firm from representing you in this Matter. The firm may conduct additional conflicts searches following the commencement of this engagement. If the Firm identifies any conflict, then the Firm shall immediately notify the Client and the Firm and the Client shall take further actions as may reasonably be required to satisfy the Firm's ethical obligations and duties to the Client, all as more particularly described in the Terms of Retention.

While not a conflict, The Firm discloses that Free Speech Systems, a co-defendant, in all the lawsuits set out in Exhibit A, is also a client of the Firm.  The Firm has represented both FSS and Alex Jones prior to the Petition Date and will continue to do so on most of these Matters.

*General Prospective Waiver and Informed Consent.* The Firm represents many other companies and individuals. It is possible that during the time that we are representing you, some of our present or future Clients will have disputes or transactions with you. You agree that we may continue to represent or may undertake in the future to represent existing or new Client in any business or transactional matter that is not substantially related to our work for you, even if the interests of such Client in those other matters are directly adverse to you. We are not aware of any such matters at the present time. We agree, however, that your prospective consent to conflicting representations contained in the preceding sentence shall not apply in any instance where, because of our representation of you, we have obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in any such other matter by such client to your material disadvantage. *You are not giving the Firm a prospective waiver as to conflicting*

Alexander E. Jones
February 2, 2023
Page 3 of 12

_representation related to a litigation matter against you._ We encourage you to seek independent counsel regarding the import of the potential conflicts and prospective waiver discussed and this acknowledgment, waiver, and informed consent. We emphasize that you remain completely free to seek independent counsel at any time even if you decide to sign this Engagement Letter agreeing to its terms and the Terms of Retention.

Please call me with any questions you have after you complete your review of this Engagement Letter including the Terms of Retention. If the Engagement Letter is acceptable to you in this form, please indicate so by signing, dating, and returning it to me and filing an Emergency Application to Retain the Firm as Special Litigation and Trial Counsel.

Very truly yours,

_F. Andino Reynal_

The Reynal Law Firm, P.C.

ACCEPTED AND AGREED:

Alexander E. Jones

2-7-23

Dated

Alexander E. Jones
February 2, 2023
Page 4 of 12

## ADDENDUM TO ENGAGEMENT LETTER

The appropriate Client point of contact to address payment status:

Name:
Title:
Phone:
Work Email:


Invoices are to be delivered as follows:

By email: _____

Email: _____

By regular mail:

Address: _____

_____

_____

Alexander E. Jones
February 2, 2023
Page 5 of 12

TERMS OF RETENTION

These Terms of Retention are part of the Reynal Law Firm Engagement Letter. Because they are an integral part of our agreement to provide legal services, we ask that you review this document carefully. If you have any questions after reading it, please contact us promptly.

*Who Will Provide Legal Services?* In most cases, one attorney will be your principal contact. From time to time, that attorney may delegate parts of your work to other attorneys or to legal assistants or non-legal professionals in the Firm. We do this to involve those with special knowledge or experience in an area and to provide services to you in a timely, efficient, and cost-effective manner. Andino Reynal will be the primary attorney from our Firm who will be representing the Client.

*Scope of the Representation.* As a Firm, we undertake to provide representation and advice on the legal matters for which we are engaged, and it is important that we both have a clear understanding of the legal services that the Firm has agreed to provide. In our Engagement Letter with you, we specify the matter in which we will provide representation and the scope of the services we will provide. Please note that we do not provide legal advice regarding any tax issues or effects nor are we responsible for notifying any insurance carrier of any lawsuit. If there are any questions about the terms of engagement, including the scope of the representation that we are to provide in the matter, please raise those questions promptly with your principal contact at the Firm.

*Identity of Client.* It is our policy to represent only the person or entity identified in our Engagement Letter and not any affiliates. For example, unless otherwise specifically stated in our Engagement Letter, if you are a business organization (corporation, partnership, LLC, etc.), our representation does not include any parents, subsidiaries, employees, officers, owners, or affiliates (including commonly owned companies); if you are an individual, our representation does not include your employer, partners, spouse, siblings, or other family members.

*Your Cooperation.* To enable us to provide effective representation, you agree to: (1) disclose to us, fully and accurately and on a timely basis, all facts and documents that are or might be material or that we may request, (2) keep us apprised on a timely basis of all developments relating to the representation that are or might be material, (3) attend meetings, conferences, and other proceedings when it is reasonable to do so, and (4) otherwise cooperate fully with us.

*Outcomes.* We cannot and do not guarantee the outcome of any matter. Any expression of our professional judgment regarding your matter or the potential outcome is, of course, limited by our knowledge of the facts and based on the law at the time of expression. It is also subject to any unknown or uncertain factors or conditions beyond our control. Any expressions on our part concerning the outcome of the representation, or any other legal matters, are based on our professional judgment and are not guarantees.

*Conflicts of Interest.* We attempt to identify actual and potential conflicts at the outset of any engagement. In some instances, the applicable rules of professional conduct may limit our ability to represent Client with conflicting or potentially conflicting interests. Those rules of conduct often allow us to exercise our independent judgment in determining whether our relationship with one client prevents us from representing another. In other situations, we may be permitted to represent a client only if both or all Client consent to that representation. If a controversy unrelated to the subject matter of the representation develops between you and any other client of the Firm, we will

Alexander E. Jones
February 2, 2023
Page 6 of 12

follow the applicable rules of professional responsibility to determine whether we may represent either you or the other client in the unrelated matter. Unfortunately, sometimes conflicts arise or become apparent after work begins on an engagement. If this happens, we will do our best to address and resolve the situation in the manner that best serves the interests of all our affected Client. Rules concerning conflicts of interest vary with the jurisdiction. To avoid any uncertainty, the Connecticut Rules of Professional Conduct will be applicable to the representation.

*Fees.* The basis for determining our fee for legal services is set forth in the Engagement Letter itself. If you are unclear about the basis for determining your fee, please contact the attorney responsible for your representation. Clients frequently ask us to estimate the fees and other charges they are likely to incur in connection with a particular matter. We are pleased to respond to such requests, whenever possible, with an estimate based upon our professional judgment. This estimate always carries the understanding that, unless we agree otherwise in writing, it does not represent a maximum, minimum, or fixed-fee quotation.

*Expenses.* Our Firm may incur and pay a variety of charges on your behalf in connection with the engagement. Whenever we incur such charges on your behalf, we will bill them to you as part of your invoice in accordance with the attached Client Expense Policy.

*Delinquent Account and Withdrawal of Engagement.* Because FSS is a chapter 11 debtor, the charging of fees and termination of services are subject to Bankruptcy Court approval.

*Additional Retainer.* Subject to Bankruptcy Court approval, if the representation will require a concentrated period of activity, such as a trial, arbitration, or hearing, we reserve the right to require the payment of all amounts then owing to us and the payment to us of an additional retainer for the fees and expenses we estimate will be incurred in preparing for and completing the trial, arbitration, or hearing, as well as arbitration fees likely to be assessed. If you fail to timely pay any retainer deposit requested, we will have the right to cease performing further work for you and withdraw from the representation.

*Obligation to Pay Fees and Expenses.* Unless your Engagement Letter expressly provides that a third-party is agreeing to pay your attorney's fees and such third-party has agreed in writing, regardless of whether you are insured to cover the particular risk or pursuing parties for recovery of attorneys' fees and other charges, it remains your obligation to pay all amounts due to us within the time periods reflected in the Engagement Letter, as may be modified by an order of the Bankruptcy Court.

*Retention of Complementary Counsel.* From time to time during our engagement it may become prudent to engage additional counsel to work with and complement our representation of you. That complementary representation will only be done with your prior written consent and on terms and conditions which you approve. The engagement of complementary counsel may be done directly with you or through our firm, depending on the nature and extent of the representation involved, and shall be done only after written notice and approval of such retention by the Bankruptcy Court.

*Conclusion of Engagement.* Because our Firm has been engaged to provide legal services in connection with the representation in the Matter as specifically defined in our Engagement Letter, the attorney-client relationship terminates upon our completion of our services related to the representation in the Matter. After completion of the representation, upon written notification by the Firm that the

Alexander E. Jones
February 2, 2023
Page 7 of 12

matter is terminated, changes may occur in the applicable laws or regulations that could affect your future rights and liabilities regarding the Matter. Unless we are engaged after the completion of the representation to provide additional legal services, the Firm has no continuing obligation to give advice with respect to any future legal developments that may relate to the Matter.  If you later retain us to perform further or additional services, our attorney-client relationship will be subject to the terms of engagement agreed to at that time; in the absence of any specific agreement, these Additional Terms of Engagement shall apply to the further or additional representation.

*Termination.* We look forward to the opportunity to complete our representation of you on the specified matter. You may, however, terminate our representation at any time, with or without cause, by notifying us in writing. We will return your papers and other property to you promptly upon receipt of your request for those materials unless they are appropriately subject to a lien. You agree that we will own and retain our own files pertaining to the matter or case, including, for example, Firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal attorney's work product such as drafts, notes, internal memoranda, and legal and factual research including investigative reports, prepared by or for the internal use of attorneys. Your termination of our services will not affect your responsibility for payment of legal services rendered and other charges incurred before termination and in connection with an orderly transition of the matter.

*Document Retention.* You acknowledge and agree that the Firm may maintain all documents related to your matter digitally. The Firm is not required to maintain physical copies of any documents. At the conclusion of our representation of you, it is our firm's policy to return to you any physical documents to you. We will provide you with copies of any other documents you specifically request (such as copies of depositions, court documents, etc.), and you agree to pay for the associated copying costs and any professional time incurred in identifying any such documents you request. You agree that our Firm may elect to keep at its own expense, copies of any documents related to this matter or otherwise returned to you. Anytime following seven (7) years after the conclusion of our representation of you, the Firm may destroy or delete any files related to your engagement.

*Dispute Resolution.* The Engagement Letter is being entered and is to be performed within the State of Texas.  The Engagement Letter shall be interpreted in accordance with Texas law (without application of choice of law principles). FSS is under supervision of the Bankruptcy Court. Therefore, this Engagement Letter amends the Original Engagement Letter to delete all references and requirement for either party to arbitrate any disputes under this Engagement Agreement. Instead, all disputes regarding this Engagement Agreement shall be subject to review by the United States Bankruptcy Court.

*By returning the executed Engagement Letter, you acknowledge that you have been provided ample opportunity to have counsel explain to you the advantages and disadvantages of binding arbitration to make an informed decision about agreeing to the provision.*

*Modifications.* The Engagement Letter and these Additional Terms of Engagement reflect our entire agreement on the terms of this engagement. These written terms of engagement are not subject to any oral agreements or understandings, and any change in those terms can only be made in writing signed by you and the  Firm.

Alexander E. Jones
February 2, 2023
Page 8 of 12

Alexander E. Jones
February 2, 2023
Page 9 of 12

## Hourly Billing Rate Schedule

| BILLER | RATE |
|---|---|
| F. Andino Reynal | $800 |
| Joseph Magliolo | $800 |
| Lynn Hardaway | $800 |
| West Medlin | $400 |

Alexander E. Jones
February 2, 2023
Page 10 of 12

Client Expense Policy

In connection with the representation of a client, the Firm may incur expenses. Unless the Engagement Letter expressly provides to the contrary, the Firm's and the Client's rights and responsibilities related to such expenses are as follows:

*Legal Research and Related Services.* The Firm subscribes to certain online research services. These subscription-based services are part of the Firm's overhead and not charged to the Client. Certain services are charged on a per-transaction including, without limitation, the following examples: UCC searches, lien searches, title searches and other record searches. The Client is responsible for these pre-transaction charges. The Firm will advance the costs for all such services and submit bills to you for reimbursement. The Firm may seek prior approval from you if the anticipated aggregate monthly expense for such services exceeds $500.00. The Firm reserves the right to have the Client pay these expenses directly.

*Document Management and eDiscovery Services.* The Firm subscribes to advanced document management software systems. These subscription-based systems are part of the Firm's overhead and not charged to the Client. The Client is responsible for eDiscovery services. eDiscovery service providers typically charge per gigabyte of information stored. Additional services from the outside vendor may be required other than storage of the information and typically these are separately charged. If the Firm uses an eDiscovery service during the representation, then the Firm will seek the Client's prior approval before incurring expenses for such services. Rather than billing these expenses through the Firm, the Firm reserves the right to have the Client contract directly with the outside vendor to pay for these expenses. For the avoidance of doubt, the Client is responsible to the Firm for the payment of all fees and expenses incident to the firm's review and processing of discovery materials that are not handled by an outside vendor.

*Printing, Shipping, Postage and Related Expenses.* For all printing, shipping, postage, and related services the Firm may handle them in house or use an outside vendor. The Client is responsible for all such printing, shipping, postage, and related services at costs or the prevailing market rate if handled in house. The Firm may seek prior approval from the Client if the anticipated aggregate monthly expense for printing, shipping, postage, and related services exceeds $500.00. The Firm reserves the right to have the Client pay these expenses directly.

*Travel Expenses.* The Client will reimburse the Firm for expenses incurred in connection with out-of-town travel, but only for first class travel and, where appropriate, the cost of a rental car. All related travel expenses, i.e., lodging and meals, must be reasonable under the circumstances. The Firm will advance all such travel expenses and submit bills to you for reimbursement which will be included in the regular invoices to the Client. The attorney handling your matter will confer with you prior to traveling for your matter. Consistent with local bankruptcy rules, the Firm bills travel at ½ billable hourly rate when the lawyer is not working on the Client matter while travelling. The Firm will endeavor to locate a substitute service agent.

*Court Costs.* If requested by the Firm, the Client will advance court filing fees and all similar expenses prior to the Firm incurring such expenses. Any such expenses incurred by the Firm, will be included in the Firm's invoices to the Client for payment.

**EXHIBIT A**

Alexander E. Jones
February 2, 2023
Page 11 of 12

## <u>Matters For Which Alex Jones is Retaining The Reynal Law Firm</u>

Fontaine v. Free Speech Systems, LLC, et al., D-1-GN-18-001605 (459th District Court, Travis County, Texas)

Heslin, et al. v. Free Speech Systems, LLC, et al, D-1-GN18-001835 (459th District Court, Travis County, Texas)

Pozner, et al. v. Free Speech Systems, LLC, et al. D-1-GN-18-001842 (459th District Court, Travis County, Texas)

Alexander E. Jones
February 2, 2023
Page 12 of 12

## Exhibit B

### Original Engagement Letter, Dated February 28, 2022

# Fertitta & Reynal LLP

February 28, 2022

Alex Jones
Infowars, LLC.
Free Speech Systems, LLC.

**LEGAL SERVICES AGREEMENT (Subject to Binding Arbitration)** —*Fontaine v. Jones*, D-1-GN-18-001605; *Heslin v. Jones*, D-1-GN18-001835; *Pozner v. Jones*, D-1-GN-18-001842; *Lewis v. Jones*, D-1-GN-18-006623.

Dear Mr. Jones,

You have asked that Fertitta & Reynal LLP (the law firm) represent you; Infowars, LLC; and Free Speech Systems, LLC. in the above-referenced matters. "You" and "Clients" in this agreement refer to the clients to be represented and not to a person who pays any legal fees or expenses for the benefit of the client (a person who pays legal fees for another person is not the client).

We have met, discussed this case, and agreed that the law firm will handle this case based on monthly flat fee of $100,000, beginning March 1, 2022. We have further agreed that if the trials, currently scheduled to commence in April and May, are delayed for any reason, then the firm's monthly fee will be $50,000 per month until such time as the cases are set for trial again, at which point the fee would once more become $100,000 per month for trial.

The scope of our representation at this time is limited to our engagement to represent you regarding these cases and no other matter, including but not limited to any criminal, administrative, civil, forfeiture, immigration, or other matter. Any other legal services will require a written engagement agreement for that purpose.

You have carefully reviewed this letter and asked any questions that you had about the meaning of any language in this agreement (including the scope of representation and any applicable fees), we have agreed on the flat fee arrangement described above. Prior to your signature below on this agreement, we discussed the alternative of charging you on an hourly fee basis, instead of a flat fee. Specifically, we discussed the potential advantages and disadvantages of flat fees versus a fee

1

_____
(Your initials)

based on hourly fees calculated as an hourly rate multiplied by each hour or portion of an hour for all time involved in this representation. For example, Fertitta Reynal's hourly rate is at least $800 an hour, depending on various factors, so the applicable hourly charges would be multiplied by the amount of time spent as measured by the hour (or increment of each hour).   You have consulted with an attorney and determined independently that a monthly flat fee arrangement is to your advantage.

The law firm includes F. Andino Reynal, Zachary Fertitta, Joseph Magliolo, and Lynn Hardaway, and any one of these may work on your case (in addition to interns, law clerks, and other sub-contracted attorneys for legal research and writing that the law firm employs at its own expense, assuming a flat fee) at Fertitta Reynal's discretion. With notice to you, the firm is authorized to employ such other persons who it deems necessary for the proper handling of your case; however, you will be asked to approve the employment of other persons not in our law firm ~~and may be~~ *If mutually agreed* required to pay for their services by advance fee retainer or otherwise. These "other persons" may include (but are not limited to) consulting and/or testifying experts, investigators, consultants, translators, and other attorneys.

Court costs, deposition costs, duplication costs, consultant's fees and expenses, room and board, travel, translators, and other professional fees incurred on your behalf will be paid directly by you, or when advanced by the firm, will be borne by and paid for by you upon receipt of a statement for said expenses. Certain expenses *as mutually agreed* will be forwarded to you for payment directly.

The firm will provide to you, upon request, at monthly or otherwise appropriate intervals, an itemized statement setting forth in reasonable detail all advances for the above-mentioned expenses and a description in reasonable detail of all work performed on your behalf in these matters with the cost for services performed. Full payment is due on receipt of the statement of expenses.   Interest will be charged at the rate of ten percent (10%) per annum on any balance, whether for fees or expenses, more than thirty (30) days past due.

You understand that no representations have been made concerning the successful outcome of any actions that may be taken on your behalf.

In the event that you desire to terminate the firm and retain other counsel to represent your interests in any manner encompassed by this employment, it is understood that you agree to pay all fees, costs and expenses incurred by you or on your behalf up to and including the date of termination.

2

(Your initials)

The firm may withdraw from your representation in this matter at any time for any reason permitted by law including, but not limited to, if you render the representation unreasonably difficult for the firm to carry out, insist that the firm engage in conduct that is contrary to the judgment and advice of the attorneys and/ or ethical requirements or other law, or fail to cooperate and comply fully with all reasonable requests by the firm on any matter encompassed by or made the basis of this representation or contract. The firm may also withdraw from your representation for non-payment of fees and expenses under this contract.

The firm shall withdraw if discharged by you. Such discharge shall be communicated in writing by you to the firm. If permission for withdrawal from employment is required by the rules of the court, the firm shall withdraw if the court approves.

You and the law firm agree that any claim or dispute between them or against any agent, employee, successor, or assign of the other, whether related to this agreement or otherwise, and any claim or dispute related to this agreement or the attorney-client relationship or legal duties contemplated under this argument, including the validity of this arbitration clause, shall be resolved by binding arbitration.

If a dispute should arise under this agreement, either party may make a demand for arbitration by filing a demand in writing with the other.

The parties to this agreement may agree on a single arbitrator, but in the event that they cannot so agree, there shall be three arbitrators, one named in writing by each of the parties within thirty (30) days after demand for arbitration is made, and a third to be chosen by the two arbitrators so named. Should either party fail to timely join in the appointment of the arbitrators, the arbitrators shall be appointed in accordance with the provisions of Texas Civil Practice and Remedies Code Section 171.041.

Any arbitration hearing conducted under the terms of this agreement, and all proceedings to enforce any of the provisions of this agreement, shall take place in Harris County, Texas only or a venue agreed upon by you and the law firm. The hearing before the arbitrator(s) of the matter to be arbitrated shall be at the time and place within that county selected by the arbitrator(s). Notice of hearing shall be given and the hearing conducted in accordance with the provisions of Section 171.044 et seq. of the Texas Civil Practice and Remedies Code. The arbitrator(s) shall hear and determine the matter and shall execute and acknowledge the award

3

(Your initials)

in writing and deliver a copy thereof to each of the parties by registered or certified mail.

If there is only one arbitrator, his or her decision shall be binding and conclusive on the parties.  If there are three arbitrators, the decision by any two shall be binding and conclusive.  The submission of a dispute to the arbitrator(s) and the rendering of the arbitrator(s)' decision shall be a condition precedent to any right of legal action on the dispute.   A judgment confirming the award of the arbitrators may be rendered by any court having jurisdiction; or the court may vacate, modify, or correct the award in accordance with the provisions of the Texas General Arbitration Act (Texas Civil Practice and Remedies Code Section 171.087 et seq.).

The cost and expenses of arbitration, including the fees of arbitrator(s), shall be borne by the losing party, or in such proportions as the arbitrator(s) shall determine. These fees, costs and expenses could be substantial.

The law firm advises you, regarding the advantages and disadvantages of arbitration as compared with a judicial (in court) determination of disputes, the following:

(1)     There could be cost and time savings with an arbitration; however, these cost and time savings are not guaranteed and arbitration could, in some instances, be more expensive and take longer than a judicial determination of a dispute.

(2)     Participation in arbitration results in the waiver of significant rights, such as the right to trial by jury.

(3)     Arbitration could possibly result in a reduced level of discovery; which has the potential of saving costs, but savings are not guaranteed.

(4)     Arbitration generally has the relaxed application of rules of evidence, which has the potential of saving costs, but savings are not guaranteed—and relaxed application of the rules of evidence may mean that certain evidence may be admitted or excluded in ways inconsistent with such rules.

(5)     Arbitration awards are generally final and results in the loss of the right to judicial review because arbitration decisions can be challenged only on very limited grounds; and

4

<u>(Your initials)</u>

713.228.5900        917 Franklin, Sixth Floor, Houston, Texas 77002      www.frlaw.us

(6)     Generally, arbitrations are more private compared to a public trial (i.e., arbitrations are confidential and not open to the public—unlike what occurs in court).

We cite these factors and considerations so that you will be aware that there are some significant advantages and disadvantages of arbitration. Should you need more information about arbitration before signing this agreement, the law firm encourages you to ask questions, until you feel your questions are answered, and encourage you to seek independent counsel to advise you before signing this agreement if you feel that a third party could help you better understand your responsibility under this agreement. While it is not necessary for you to get advice from a third party, the law firm encourages you to do so if you still have questions before signing this agreement. By signing this agreement, you are representing that all your questions have been satisfactorily answered and that you either have, or have not, sought advice from independent counsel and that you are satisfied that entering into this contact of representation with an arbitration provision to handle disputes concerning it, is in your best interest, and you want to proceed accordingly.

Following the final disposition of your case, the firm will place your file in storage. The firm will destroy your file no earlier than five years from the date of the final disposition of your case. Please immediately contact me if you would like anything, especially any original documents or items, from the file.

If you use a credit card to pay legal fees or expenses, a 3% (three percent) convenience/processing fee will be added to the charge. For example, if you pay $1,000 in fees on your credit card, the law firm will charge the card for $1,030. You understand and agree to this charge if you use a credit card. If you do not want to incur the convenience/processing fee, then you are welcome to use another form of payment such as cash, check, money order, cashier's check, or bank wire.

All terms and conditions of our agreement are set forth in this letter and can only be modified in a subsequent writing that you and I sign. Please read this letter carefully and feel free to ask me any questions. If you are satisfied with this letter and the reasonableness of its terms and conditions, sign your initials and name where indicated as evidence that you have fully read, understand, and agree to the terms and conditions. I will provide you with a photocopy of the signed letter. Further, if any language or provision in this agreement is determined by an arbitrator or court to be invalid or unenforceable, then the remaining provisions and language are preserved and shall be interpreted to give them full legal force and effect.

5

_____
(Your initials)

Sincerely,

F. ANDINO REYNAL

I have carefully read, understand, and agree to the terms and conditions as set forth in this fee agreement for legal services.  If I had any questions about the meaning of anything in this agreement, I asked those questions before signing below.

AGREED:

Alex Jones, individually and on behalf of
Infowars, LLC. and Free Speech Sytems, LLC.

6

(Your initials)

## **Exhibit B**

**Reynal Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **ALEXANDER E. JONES** | § | **Case No. 22-33553** |
| | § | |
| **Debtor.** | § | |
| | § | |

**DECLARATION OF FEDERICO REYNAL IN SUPPORT OF**
**APPLICATION OF DEBTOR FOR AN ORDER AUTHORIZING EMPLOYMENT OF**
**THE REYNAL LAW FIRM, P.C., AS SPECIAL COUNSEL UNDER 11 U.S.C. 327(e)**

I, Federico Reynal, declare under penalty of perjury as follows:

1.  I am an attorney at law duly admitted and in good standing to practice in the State of Texas, United States District Court for the Southern District of Texas, the United States District Court for the Western District of Texas, and the Fifth Circuit Court of Appeals.  I am the founder of the Houston office of The Reynal Law Firm, P.C. (the "Firm" or "The Reynal Firm"), located at 917 Franklin, Sixth Floor, Houston, Texas 77002.

2.  I am making this declaration in support of Debtor's Application to Employ The Reynal Firm, P.C. as Special Counsel under 11 U.S.C. § 327(e) (the "Application").  Unless otherwise indicated, capitalized terms used but not defined herein have the meanings ascribed to such terms in the Application.

3.  Except as otherwise noted, all facts set forth in this declaration are based upon my personal knowledge, upon the client and matter records of The Reynal Firm reviewed by me or derived from information available to me that I believe to be true and correct. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

### A.      Scope of Services

4.      Pursuant to the Engagement Agreement, the Application, and the Proposed Order attached thereto, The Reynal Firm will serve as special counsel to Debtor in connection with the Travis County Sandy Hook Lawsuits, as more particularly specified in the Engagement Letter and the Application. More specifically, the Firm shall serve as Debtor's litigation counsel on the Travis County Sandy Hook Lawsuits through the appeal, including any motions for sanctions, motions for new trial, and motions for judgment notwithstanding the verdict. During the course of the appeal, The Reynal Firm will provide services to Debtor at the direction of Debtor's appellate counsel, Martin, Disiere, Jefferson & Wisdom L.L.P., in order to save costs to the Debtor's estate.

### B.      Proposed Compensation

5.      The Reynal Firm will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including §§ 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, Guidelines, and Orders for all services performed and expenses incurred during its representation of Debtor.

6.      Subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and the Orders, The Reynal Firm intends to request the allowance of its compensation as set out in the Engagement Agreement. These rates reflect the rates that The Reynal Firm ordinarily charges clients in bankruptcy and non-bankruptcy matters and are less than or equal to the rates of similarly skilled and experienced attorneys in this district. The Reynal Firm submits that these agreed terms of reimbursement, compensation, and hourly rates are reasonable. The Reynal Firm will notify Debtor of any change in the hourly rates charged for services rendered.

C.      **Disclosure of Connections**

  *i.*   *Search and General Descriptions of Connections*

7.      The Reynal Firm performed the following actions to determine whether it or any of its attorneys has any disclosable connections, to Debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any of the judges for the U.S. Bankruptcy Court for the Southern District of Texas.

8.      I conducted a search of The Reynal Firm files to determine using the list of parties in interest listed in Schedule 1 hereto whether the Firm had any connections to or represented any of the parties listed on Schedule 1.

9.      Except for Free Speech Systems, LLC ("FSS"), the search revealed that the Firm had and did not represent any of the parties listed on Schedule 1. The Firm also represents FSS and Kit Daniels, an FSS reporter, in connection with the Travis County Sandy Hook Lawsuits. Additionally, the Firm previously represented Owen Shroyer, an FSS reporter, in the Travis County Sandy Hook Lawsuits. And the firm also represented Jeffrey Shulse, a FSS employee, in an unrelated matter in the Southern District of New York. The firm's representation of Mr. Shulse in that prior matter concluded on January 24, 2022.

10.     Furthermore, The Reynal Firm may have provided services to creditors or other parties in interest inadvertently omitted from Schedule 1 or the description above. If such connections exist, they would be on matters wholly unrelated to the service for which Debtor seeks to engage The Reynal Firm.

11.     The results of the foregoing connections search process confirm that neither I, The Reynal Firm, nor any of its employees or partners, to the best of my knowledge, have any disqualifying connections.

12.     Based on the connections review conducted to date and described herein, to the best of my knowledge and insofar as I can ascertain, I and The Reynal Firm do not hold an interest adverse to Debtor or the estate with respect to the matter on which the Firm is to be employed.

13.     I am not a creditor, an equity security holder, or an insider of Debtor; I am not and was not within 2 years before the Petition Date a director of Debtor; and I do not have any interest materially adverse to the interests of Debtor's bankruptcy estate or any class of creditors or equity security holders.

14.     The Reynal Firm is not a creditor, an equity security holder, or an insider of Debtor; The Reynal Firm is not and was not within 2 years before the Petition Date an employee, officer, or director of Debtor; and The Reynal Firm does not have any interest materially adverse to the interests of Debtor's bankruptcy estate or any class of creditors or equity security holders.

15.     The Reynal Firm does not possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate. The Reynal Firm also does not possess or assert any economic interest that would create either an actual or potential dispute in which the estate is a rival claimant. The Reynal Firm does not have any incentive to act contrary to the best interests of the estate and its creditors.

**D.     Bankruptcy Rule 2016(b) Disclosures**

16.     Pursuant to Bankruptcy Code § 504 and Bankruptcy Rule 2016, The Reynal Firm has not shared or agreed to share (a) any of its compensation from the representation of Debtor with any other persons, or (b) any compensation any other persons have received, may have received, or will receive.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 1, 2023,

By: _/s/ F. Andino Reynal_____
Federico Reynal

**SCHEDULE 1**

**TO REYNAL DECLARATION**

**SEARCHED PARTIES**

Debtor & Professionals

  Crowe & Dunlevy, P.C.        BlackBriar Advisors, LLC
  Jordan & Ortiz, P.C.         Rachel Kennerly, LLC

Largest 20 Unsecured Creditors & Litigation Claimants

  Elevated Solutions Group       Dona Soto
  Atomial LLC           Erica Lafferty
  Cloudfare, Inc.          Francine Wheeler
  Jacquelyn Blott          Ian Hockley
  Joel Skousen           Jacqueline Barden
  eCommerce CDN LLC        Jennifer Hensel
  Paul Watson           Jeremy Richman
  Greenair, Inc.           Jillian Soto
  Edgecast, Inc.           Leonard Pozner
  Ready Alliance Group, Inc.       Marcel Fontaine
  Getty Images, Inc.         Mark Barden
  RatsMedical.com          Neil Heslin
  David Icke Books Limited       Nicole Hockley
  WWCR             PQPR Holdings Limited, LLC
  CustomTattoNow.com        Robert Parker
  AT&T              Scarlett Lewis
  Justin Lair            Veronique De La Rosa
  Brennan Gilmore          William Sherlach
  Carlee Soto-Parisi         William Aledenberg
  Carlos Soto           Larry Klayman
  Christopher Sadowski        Randazza Legal Group

Additional Unsecured Creditors

  Security Bank of Crawford       Amazon.com, Inc.
  City of Austin           High Gabriel Water Supply
  Texas Gas Service         Corporation d/b/a Texas Water
  Travis County MUD 3        Spectrum
  Texas Disposal Systems, Inc.      Travis County WCID 17
  Netflix, Inc.           Sirius XM Holdings, Inc.
  Hulu, LLC            AT&T, Inc.
  HBOMax            Robert Schmidt

Attorneys for Creditors and Parties in Interest

Kaster Lynch Farrar & Ball LLP
Koskoff Koskoff & Bieder
Zeisler & Zeisler P.C.
The Akers Law Firm PLLC
Waller Lansden Dortch & Davis, LLP
McDowell Hetherington LLP
Martin, Disiere, Jefferson & Wisdom L.L.P.

Cain & Skarnulis PLLC
Chamberlain, Hrdlicka, White, Williams & Aughtry P.C.
McCarthy & Holthus, LLP
Copycat Legal PLLC
Akin Gump Strauss Hauer & Feld LLP
Law Offices of Ray Battaglia, PLLC

U.S. Bankruptcy Judges and Staff

Chief Judge David R. Jones
Judge Marvin Isgur
Judge Christopher M. Lopez
Judge Jeffrey P. Norman
Judge Eduardo V. Rodriguez
Albert Alonzo
Ana Castro

Tracey Conrad
Jeannie Chavez
LinhThu Do
Tyler Laws
Kimberly Picota
Vriana Portillo
Mario Rios

U.S. Trustee Personnel

Alicia Barcomb
Jacqueline Boykin
Luci Johnson-Davis
Hector Duran
Barbra Griffin
Brian Henault
Linda Motton
Ha Nguyen
Glenn Otto
Yasmin Rivera

Jayson B. Ruff
Millie Sall
Patricia Schmidt
Christy Simmons
Gwen Smith
Stephen Statham
Christopher R. Travis
Clarissa Waxton
Jana Whitworth

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **ALEXANDER E. JONES** | § | **Case No. 22-33553** |
| | § | |
| Debtor. | § | |
| | § | |

**ORDER APPROVING APPLICATION OF DEBTOR FOR AN ORDER AUTHORIZING
EMPLOYMENT OF THE REYNAL LAW FIRM, P.C.,
<u>AS SPECIAL COUNSEL UNDER 11 U.S.C. 327(e)</u>**

Upon the application (the "<u>Application</u>")[1] filed by Debtor to retain and employ The Reynal

Law Firm, P.C. ("<u>The Reynal Firm</u>" or the "<u>Firm</u>") pursuant to Bankruptcy Code §§ 327(e) and

330 and Bankruptcy Local Rule 2014-1, as more fully set forth in the Application and all exhibits

and attachments to the Application; and upon the Court's finding that (i) the Court has jurisdiction

over this matter pursuant to 28 U.S.C. § 1334; (ii) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b); (iii) venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the

Application and the Reynal Declaration are in full compliance with all applicable provisions of the

Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and Orders and procedures of this

Court; (v) The Reynal Firm does not represent an interest adverse to Debtor's estate with respect

to the matters upon which it is to be engaged; (vi) The Reynal Firm is qualified to represent

Debtor's estate under § 327(e) of the Bankruptcy Code; (vii) the terms of The Reynal Firm's

employment have been disclosed and are reasonable under the circumstances; (viii) proper and

adequate notice of the Application, the deadline to file any objections to the Application, and the

hearing thereon was given, and no other or further notice is necessary; (ix) the legal and factual

---

[1]     Capitalized terms not defined herein have the meaning set forth in the Application.

bases set forth in the Application establish just cause for the relief granted herein; (x) the relief sought in the Application is in the best interest of Debtor's estate; (xi) any timely objection to the Application having been withdrawn or overruled for the reasons stated on the record at the hearing on the Application; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      In accordance with Bankruptcy Code §§ 327(e) and 330 and Bankruptcy Local Rule 2014-1, Debtor is authorized to employ and retain The Reynal Firm as of January 8, 2023, as special counsel, under the terms and conditions set forth in the Application and the Engagement Letter attached to the Application as <u>Exhibit A.</u>

2.      The Reynal Firm is authorized to perform Professional Services for Debtor that are necessary or appropriate in connection with serving as special counsel in connection with the Travis County Sandy Hook Lawsuits.

3.      The Reynal Firm shall be compensated for its services and reimbursed for related expenses in accordance with the terms and conditions of the Engagement Agreement, as set forth in the Application and subject to the procedures Bankruptcy Code §§ 330 and 331 of the Bankruptcy Code, and in accordance with applicable Federal Rules of Bankruptcy Procedure, Local Rules, and any orders of this Court.

4.      All compensation for services rendered and reimbursement for expenses incurred in connection with the above-captioned bankruptcy case shall be paid after further application to and order of this Court, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Guidelines, and any orders of this Court.

5.      This order shall be immediately effective and enforceable upon entry.

6.      This order, and all acts taken in furtherance or reliance thereon, shall be effective notwithstanding any objection until further order of this Court.

7.      Notwithstanding anything to the contrary in the Application, the Engagement Agreement, or the Declaration attached to the Application, The Reynal Firm shall not be entitled to reimbursement of expenses or fees from Debtor in connection with any objection to its fees, without further order of the Court.

8.      The Reynal Firm shall not charge a markup to Debtor with respect to any fees billed by contract attorneys who are hired by The Reynal Firm to provide services to Debtor and shall ensure that any such contract attorneys are subject to conflicts checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

9.      Prior to any increase in rates for any individual employed by the Reynal Law Firm and providing services to Debtor, The Reynal Firm shall file a supplemental declaration with the Court and provide ten business days' notice to Debtor, the United States Trustee, Counsel for the Official Committee of Unsecured Creditors, Counsel to the Connecticut Plaintiffs, and Counsel to the Texas Plaintiffs.[2] The supplemental declaration shall explain the basis for the requested rate increases in accordance with Bankruptcy Code section 330(a)(3)(F) and state whether Debtor has consented to the rate increase. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in § 330 of the Bankruptcy Code. Furthermore, the Court retains the right to review any rate increases pursuant to § 330 of the Bankruptcy Code.

---

[2] As such Notice Parties are defined in the *Order Granting Motion for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Chapter 11 Professionals*.

10.     The Reynal Firm shall use its reasonable efforts to avoid any duplication of services provided by any of Debtor's other retained professionals.

11.     The Reynal Firm will review its files periodically during the pendency of this chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, the Reynal Law Firm will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by FED. R. BANKR. P. 2014(a).

12.     To the extent that any of the Application, the Reynal Declaration, or the Engagement Agreement are inconsistent with this Order, the terms of the Order shall govern.

13.     Debtor and The Reynal Firm are authorized to take all actions necessary to effectuate the relief granted pursuant to this order in accordance with the Application.

14.     Notice of the Application provided by Debtor is deemed to be good and sufficient notice of the Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this order.


Dated: _____, 2023

                    **UNITED STATES BANKRUPTCY JUDGE**