```
 1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                         HOUSTON DIVISION

 3                                    )   CASE NO: 22-33553-cml
                                      )
 4                                    )   Houston, Texas
      ALEXANDER E. JONES,             )
 5              Debtor.               )   Tuesday, February 14, 2023
                                      )
 6                                    )   1:29 PM - 2:09 PM
      -----------------------------)
 7                                    )   CASE NO: 22-60043-cml
                                      )
 8                                    )
      FREE SPEECH SYSTEMS, LLC,       )
 9              Debtor.               )
                                      )
10                                    )
      -----------------------------)
11
                                     TRIAL
12
                 BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
13                  UNITED STATES BANKRUPTCY JUDGE

14
      APPEARANCES:
15
      For Free Speech          RAYMOND WILLIAM BATTAGLIA
16    Systems, LLC:            Law Offices of Ray Battaglia, PLLC
                               66 Granburg Circle
17                             San Antonio, TX 78218

18    For the U.S. Trustee:    HA MINH NGUYEN
                               Office of the U.S. Trustee
19                             515 Rusk Street, Suite 3516
                               Houston, TX 77002
20
      For Leonard Pozner:      JENNIFER JAYE HARDY
21                             Willkie Farr Gallagher LLP
                               600 Travis Street, Suite 2310
22                             Houston, TX 77002

23                             JARROD B. MARTIN
                               Chamberlain, Hrdlicka, White,
24                             Williams & Aughtry P.C.
                               1200 Smith Street, Suite 1400
25                             Houston, TX 77002
```

```
 1    For Melissa A. Haselden: ELIZABETH CAROL FREEMAN
                               Law Office of Liz Freeman
 2                             P.O. Box 61209
                               Houston, TX 77208
 3
                               MELISSA A. HASELDEN
 4                             Haselden Farrow, PLLC
                               Pennzoil Place
 5                             700 Milam, Suite 1300
                               Houston, TX 77002
 6
      For PQPR:                STEPHEN LEMMON
 7                             Streusand Landon Ozburn and Lemmon
                               1801 S Mopac Expressway, Suite 320
 8                             Austin, TX 78746

 9    For Alexander E. Jones:  VICKIE L. DRIVER
                               Crowe & Dunlevy, PC
10                             2525 McKinnon Street, Suite 425
                               Dallas, TX 75201
11
      For Capital Properties:  LYNN HAMILTON BUTLER
12                             Hush Blackwell
                               111 Congress Avenue, Suite 1400
13                             Austin, TX 78701

14    For William Alednberg    DAVID ZENSKY
      Et al.:                  McDowell Hetherington, LLP
15                             1001 Fannin Street, Suite 2400
                               Houston, TX 77002
16
      For Creditor David       KYLE KIMPLER
17    Wheeler, et al:          Paul Weiss Rifkind Wharton &
                               Garrison, LLP
18                             1285 Avenue of the Americas
                               New York, NY 10019
19
      Court Reporter:          Zilde Martinez
20
      Courtroom Deputy:        Zilde Martinez
21
      Transcribed by:          Veritext Legal Solutions
22                             330 Old Country Road, Suite 300
                               Mineola, NY 11501
23                             Tel: 800-727-6396

24
      Proceedings recorded by electronic sound recording;
25    Transcript produced by transcription service.
```

1

2      HOUSTON, TEXAS; TUESDAY, FEBRUARY 14, 2023; 1:29 PM

3                        (Call to Order)

4           THE COURT:  Good afternoon.  This is Judge Lopez.

5      We are getting ready to get started.  I appreciate

6      everyone's patience.  I am not -- give me a second.  I'm not

7      ready just yet, but I will be ready in one minute.  And I

8      will turn on my camera.  All right.  The line is completely

9      unmuted.

10          I'm going to ask everyone take a look at their

11     phones and place them on mute.  I'm going to call two cases

12     at the same time, 22-60043, the case of Free Speech Systems,

13     and I'm also going to call the individual case of Alex

14     Jones, 22-33553.

15          I hope everyone is doing okay.  I'm going to go

16     ahead and take appearances.  I will start in the courtroom.

17     Mr. Battaglia, good afternoon.

18          MR. BATTAGLIA:  Good afternoon, Your Honor.  Ray

19     Battaglia, for Free Speech Systems.

20          THE COURT:  Okay.

21          MR. BATTAGLIA:  And my client, Patrick Magill, is

22     on the phone.

23          THE COURT:  Good afternoon.  Okay.  Mr. Nguyen,

24     good afternoon.

25          MR. NGUYEN:  Good afternoon, Your Honor.  Ha

1    Nguyen, for the U.S. Trustee.

2              THE COURT:  Okay.  Good afternoon.

3              MS. HARDY:  Good afternoon, Your Honor.  Jennifer

4    Hardy, of Wilkie Farr, on behalf of the Texas Plaintiffs.

5    Also on the phone I have Avi Moshenberg and Jarrod Martin.

6              THE COURT:  Welcome to the party.

7              MS. HARDY:  Thank you, Your Honor

8              THE COURT:  Alrighty.

9              MS. FREEMAN:  Good afternoon, Your Honor.  Liz

10   Freeman, on behalf of Melissa Haselden, the Sub V Trustee

11   for the Free Speech case.

12             THE COURT:  Good to see you.

13             MS. FREEMAN:  Ms. Haselden is in the courtroom

14   today.

15             THE COURT:  Good afternoon.  Okay.  Mr. Lemmon, I

16   see you there on behalf of PQPR.  Good afternoon, sir.

17             MR. LEMMON:  Good afternoon, Your Honor.

18             THE COURT:  Okay.  Mr. Martin, I see you there as

19   well.  Ms. Driver, on behalf of Mr. Johns, good afternoon.

20   I see you --

21             MS. DRIVER:  Good afternoon, Your Honor.

22             THE COURT:  -- as well.  Let's see, who else

23   wishes to make an appearance this time?  And again,

24   everyone, if you could put your phone on mute so I don't

25   have to mute the entire line.

1          MR. BUTLER:  Your Honor, Lynn Butler, on behalf of

2    (indiscernible) Capital Properties (indiscernible) for Free

3    Speech.

4          THE COURT:  Okay.  Good afternoon.

5          MR. ZENSKY:  Good afternoon, Your Honor.  David

6    Zensky and Sara Brauner, Akin Gump Strauss Hauer & Feld,

7    proposed counsel for the Official Committee of Unsecured

8    Creditors in the Jones case.

9          THE COURT:  Okay.  Good afternoon, sir, Ms.

10   Brauner.  Good afternoon to both of you.

11         MS. BRAUNER:  (indiscernible)

12         MR. KIMPLER:  Good afternoon, Your Honor.  Are you

13   able to hear me?

14         THE COURT:  Just fine.  Thank you.

15         MR. KIMPLER:  Okay.  It's Kyle Kimpler, from Paul,

16   Weiss, Rifkind, Wharton & Garrison, on behalf of the

17   Connecticut Plaintiff.  I'm joined today by my co-counsel

18   Alinor Sterling and Ryan Chapple.

19         WOMAN 1:  Yeah, now if we ever have any questions

20   --

21         THE COURT:  All right, thanks.

22         WOMAN 1:  -- we can just come talk to you.  Yeah.

23         THE COURT:  Oh, I just found you.  Let's see.

24   Again, folks -- let's see.  I couldn't mute that line,

25   whoever that was.  Okay.  Just give me a second.  And Mr.

1    Zensky, as of yesterday evening, you are official, so I

2    signed the order.

3         MR. ZENSKY:  Thank you, Your Honor.  Mr.

4    (indiscernible) corrected me after I made our appearances.

5    Thank you for signing the order.

6         THE COURT:  No worries.  Anyone else wish to make

7    an appearance at this time?  Okay.

8         I did get a chance to see the agenda.  I have two

9    -- Mr. Battaglia, I've got two questions I want to just ask

10   just as a general matter, just general status.  One involves

11   the status of mediation and what's going on there.  I don't

12   want to know about the substance of them.  Just want to know

13   what's going on generally.

14        And then I have a question for Ms. Freeman as to

15   the status of the work that the Subchapter V Trustee is

16   doing in her investigation, just in terms of status on that.

17        MR. BATTAGLIA:  I think, Your Honor, the status of

18   the mediation, Judge Isgur is talking about really doing a

19   round-robin kind of mediation, not necessarily everybody

20   collecting in one place.  And beyond that, I know he's

21   waiting on information.  I know from the FSS Debtors'

22   perspective, I owe him the financial statements, which I

23   have drafts that are being finalized now for post-petition

24   period.

25        THE COURT:  Mm hmm.

1          MR. BATTAGLIA:  I have a five-year projected

2     budget now.  I have a balance sheet.  I have all of that

3     information --

4          THE COURT:  There are documents going to Judge

5     Isgur.

6          MR. BATTAGLIA:  -- that I need to get to Judge

7     Isgur.  I also have -- and we'll discuss this a little more

8     later -- a draft of a plan of reorganization.  I'll come

9     back to that.  And so, from my Debtor's perspective, I think

10    I will have everything in Judge Isgur's hand that he was

11    waiting for from me this week.  I know that he's also

12    waiting on Alex Jones' schedules and I'm not sure what else.

13    Ms. Driver can better tell the Court where things are --

14         THE COURT:  They're due today.  So I'm hoping they

15    get filed today.

16         MR. BATTAGLIA:  He may be looking for other

17    financial information from him as well.

18         THE COURT:  Got it.

19         MR. BATTAGLIA:  But --

20         THE COURT:  Just so -- so things -- people are

21    still talking --

22         MR. BATTAGLIA:  I think that's what --

23         THE COURT:  -- I guess is the --

24         MR. BATTAGLIA:  I think that's -- the starter's

25    gun goes off when he has all that.

1                THE COURT:  Okay.

2                MR. BATTAGLIA:  I know that, obviously, the

3    Committee can speak for itself.  They have retained

4    financial professionals to do their own analysis.  You're

5    going to ask Ms. Freeman about where M3 is in their

6    evaluation.

7                As far as I'm concerned, I don't owe anybody

8    anything and FSS doesn't owe anybody anything.  And you

9    know, we're certainly going to be responsive to requests for

10   information that I think people believe to be important to

11   come up with an efficient, meaningful mediation.

12               THE COURT:  Okay.  Thank you.  Just want to open

13   it up.  Anyone has anything else they wish to add -- again,

14   I don't want to know the substance of the mediation.  I just

15   want to make sure people feel comfortable that mediation is

16   progressing, that people are talking.  That's really what my

17   focus is on now, just to make sure, since we haven't chatted

18   about it in quite a bit.

19               And I suspect, you know, once the schedules are

20   filed, that is another piece of information that I suspect

21   people would have wanted to have seen.  So, I get it.  There

22   are a bunch of moving pieces here.  I just want to make sure

23   that people are still finding the process helpful.

24               MR. ZENSKY:  Your Honor, David Zensky, for the

25   Committee in the Jones case.  I would echo what Mr.

1    Battaglia said as far as the status.  Judge Isgur and the

2    mediating parties are waiting on information relevant to

3    both Debtors.  None of that has been forthcoming at.  But I

4    am glad that it is imminent.  And that will be the starting

5    gun, to borrow Mr. Battaglia's phrase, for the ability to

6    meaningfully engage.  So --

7                THE COURT:  Got it.

8                MR. ZENSKY:  -- we've had discussions, it's been

9    more of a sort (indiscernible) -- well, let me stop there.

10               THE COURT:  Got it.

11               MR. ZENSKY:  So I think that we're in agreement

12   with Mr. Battaglia's description of the status.

13               THE COURT:  Okay.  Thank you very much.  So, Ms.

14   Freeman?

15               MS. FREEMAN:  The investigation is ongoing and a

16   great deal of documentation has been provided to the

17   Trustee.  There's still some additional information that we

18   are expecting.  We have thus far found the parties to be

19   very cooperative and helpful to us in providing the

20   information that we need.  Of course, certain information

21   comes in and it begats a question --

22               THE COURT:  Mm hmm.

23               MS. FREEMAN:  -- which will create a new of

24   inquiry.  We are targeting and hoping to have the report

25   filed not later than March 31st.

1          THE COURT:  Okay.  Perfect.  Thank you.  That's

2    very helpful.  Alrighty.  Not sure who wants to take the

3    lead on the agenda.  Oh, Ms. Driver.  I'm sorry.

4          MS. DRIVER:  Well, Your Honor, I would just

5    mention that we are -- not being in Houston today is a

6    function of being in the office her in Austin finishing up

7    our draft of the schedule (indiscernible) --

8          THE COURT:  Hold on a second, Ms. Driver.  There

9    is someone --

10         MS. DRIVER:  (indiscernible)

11         THE COURT:  Ms. Driver, I'm going to -- let's just

12   see if I can -- there's someone who -- just, if everyone, if

13   you're not Ms. Driver, I'm going to ask that you please

14   place your phone on mute.  Thank you.  All right, there's

15   someone.  I hate to hit 5 star.  Go ahead, Ms. Driver.  Why

16   don't you proceed.

17         MS. DRIVER:  We also do have a protective order

18   that was (indiscernible) has been, I think, finalized.  And

19   we'll be able to produce just a deluge of information, based

20   upon the protections that are provided in that protective

21   order.  And that will be absolutely forthcoming as soon as

22   we can get the schedules and statements on file this

23   evening.  That's something that I'm going to have

24   (indiscernible) working on in the last two days of this

25   week.

1          So there will be just a lot of information that is

2     sent.  We had one bank that we were missing some statements

3     to go back four years.  We just got confirmation right

4     before this hearing that that bank has now gotten the proper

5     authorization to send those to us, so we should have a

6     pretty robust four years of statements on all of the

7     accounts for Mr. Jones.

8          In doing the schedules and statements, there are

9     some disclosures that are not particularly called for in the

10    schedules and statements that we also are going to be making

11    to the appropriate parties under the protective order.  So,

12    you know, for example, if there's -- if there is a bank

13    account that isn't Mr. Jones' but he is a signatory on it

14    vis-à-vis the ownership or control of an entity, that

15    information will be provided to, you know, all of the

16    parties to the protective order.

17          THE COURT:  Okay.

18          MS. DRIVER:  So we (indiscernible) that things are

19    moving pretty well.  To the extent that there is any gaps in

20    information that we don't have, I think it's going to be

21    information that the Committee will want as well, and I

22    imagine that we will just be working with the Committee to

23    not duplicate efforts in trying to get that information.

24          THE COURT:  So you mentioned a stipulated

25    protective order and I did see it on file.  I suspect you're

1     talking about the one at Docket 150.  I had a chance to

2     review it.  I did see it was signed by many of the parties.

3     I'm comfortable signing it now.  Any issues with me signing

4     the stip at 150?  Okay.  I'm going to sign it.

5             MR. BATTAGLIA:  Your Honor, I think there's a

6     companion -- Ms. Brauner can correct me if I'm wrong -- a

7     companion stip in the FSS case.

8             THE COURT:  All right.

9             MS. BRAUNER:  That's right, Your Honor.

10            THE COURT:  Let me track it down.  Oh, that makes

11    sense.  Okay.  That one would be at 446.  Okay.  I am going

12    to sign both of those and I'll get them on the docket

13    shortly.

14            MS. BRAUNER:  Thank you, Your Honor.

15            THE COURT:  You got it.  No, I appreciate it.

16    Thank you.  Okay.  Why don't we turn to the agenda?  Who

17    wants to take the lead?

18            MR. BATTAGLIA:  Your Honor, Ray Battaglia, for

19    Free Speech Systems.  There are only four motions on the

20    docket today.  I don't think we're going to need a lot of

21    time before the Court.

22            Cash collateral motion was circulated last week to

23    the constituents, was uploaded last night to -- as a

24    proposed order at Docket Number 456.  The U.S. Trustee's

25    office, Mr. Nguyen, had three questions.  I think we've

1    responded to them completely.

2            The form of the order has not changed other than

3    other than shifting from 8th to 9th interim order.  The

4    budget covers a six-week period instead of a four-week

5    period.  That was at the request of the Jones professionals,

6    who wanted it to end on a month-end, and we're fine

7    accommodating that.  So it's a hair longer than prior cash

8    collateral orders, but that's the reason.

9            And I'm happy to address any questions the Court

10   may have on that order.

11           THE COURT:  Well, I'm -- let me just take a look.

12   The order is filed at -- let's just see.

13           MR. BATTAGLIA:  456, Your Honor.

14           THE COURT:  456.  Let me just take a quick look at

15   it.  Anyone wish to be heard in connection with the...  When

16   do you want to come back?

17           MR. BATTAGLIA:  Your Honor, the budget ends at the

18   end of March, so sometime prior to the last day of March

19   we'll need a hearing date.

20           THE COURT:  Let's just see.

21           MR. BATTAGLIA:  The week of the 27th sometime.

22           THE COURT:  How about March 27th at 1:00 PM?

23           MR. BATTAGLIA:  It's fine by me, Judge.

24           THE COURT:  I'm going to sign it before anyone

25   says (indiscernible).  Okay.

1           And also -- look, I think it's important for me to

2   know -- this is the 9th interim and I've got no issues with

3   that.  Where you see me going with asking questions about

4   how the mediation is going and how the report of the Trustee

5   -- oh, excuse me -- the Subchapter V Trustee is doing is,

6   look, at some point I want to give mediation every chance

7   that it has.

8           And if the parties are working diligently in

9   mediation, then I want the parties focused on mediation.  At

10  some point, we're going to have to figure out what kind of

11  cases we have here in the Free Speech case and in the Jones

12  case.  And if a deal is reached, great.  If not, then I've

13  got some decisions that I suspect will be coming my way, and

14  folks filing plans.  And there's going to be a request for

15  me to lift the stay and things of that nature.

16          And so, I just want to make sure that I'm prepared

17  for what's going on.  And then also sending parties a

18  message.  You know, at some point, we're going to have to

19  make decisions about where things are.  We're not there

20  today, but at some point.  And this is not me trying to rush

21  anyone.  This is just saying -- it's just recognizing, you

22  know, we won't have a 12th interim.  Maybe that's where I'm

23  going.

24          We're going to have -- we're going to focus and

25  we're going to have to make decisions about, you know, where

1    these cases go.  Not today.  There are professionals who are

2    seeking retention too in connection with Appellate matters.

3    So at some point, we're going to have to make some

4    decisions.  But today's not that day.  I just -- I want the

5    case to progress and I want things just to continue to move.

6    So I appreciate when there are motions that are being filed.

7    In terms of the things that we can take care of, let's take

8    care of them.  So, anyway, that's not for today.  I'm

9    signing a cash collateral order, and I said March 27th at

10   1:00.

11             MR. BATTAGLIA:  Yes, sir.

12             THE COURT:  Okay.  Alrighty, folks.  All right.  I

13   am muting the entire line.  You know, Ms. (indiscernible),

14   you need to hit 5 star.

15             Okay, Mr. Battaglia, where do we go next?

16             MR. BATTAGLIA:  Motion is a motion to assume an

17   office lease.  And this is the Debtors' last remaining real

18   property, commercial real property lease.  It's where the

19   office and the studios are located.  Obviously, the urgency

20   comes from the fact that we're running up against our 210-

21   day deadline.  After the motion was filed and discussions

22   with counsel for the Connecticut Plaintiffs, they asked if

23   we would convert this or entertain an extension for 90 days.

24             The driver of that is a conversation between Mr.

25   Butler's client and myself.  I've had several communications

1    with him.  I know conceptually, he didn't have any issue,

2    but he had no authorization from his client.  But we've

3    asked on the agenda here to conform to what the Connecticut

4    Plaintiffs have requested, and just enter an order today

5    that extends the time to assume or reject, conditioned on

6    the Debtor continuing to perform under the terms of the

7    lease, which we are current on at this time.

8              And Mr. Butler, I know, is on the line.  I don't

9    know whether he has a position or a response.  He hasn't had

10   a conversation with his client, last I (indiscernible).

11             THE COURT:  All right.  Mr. Butler, can you hit 5

12   star?  There you go.  Mr. Butler, is that you?

13             MR. BUTLER:  Yeah, that is me.

14             THE COURT:  Okay.  I just wanted to make sure you

15   are okay with the 90-day extension.

16             MR. BUTLER:  Yeah, I -- well, Your Honor, I've

17   received no communications from my client since the

18   discussions with Mr. Battaglia occurred.  The rent's current

19   at early January, so I have no basis to oppose what they're

20   asking at this time at all.

21             THE COURT:  Okay.  Does anyone wish to be heard in

22   connection with the -- actually providing an extension of

23   the 365 before a period for another 90 days, which I would

24   note is permitted under the Code?  Anyone wish to be heard

25   in connection with that?  If you are, just need you to hit 5

1    star.  Alrighty.  I muted a 214 number.

2            MS. DRIVER:  I think that's me, Your Honor.

3    Vickie Driver --

4            THE COURT:  Oh.

5            MS. DRIVER:  -- for Mr. Jones.

6            THE COURT:  Yes, Ms. Driver.

7            MS. DRIVER:  Thank you.  I just wanted to -- and I

8    don't know if this is the appropriate time to do this, but

9    it was -- there is something that I was going to disclose to

10   the Court today and I spoke to the Committee's counsel about

11   it yesterday, that it was just cited in, I think, the

12   Connecticut's Plaintiffs' response to the motion to assume.

13   So it kind of jumps my disclosure gun but, I just sort of

14   wanted to let Your Honor know.  I know you read all the

15   pleadings.

16           But Mr. Jones did in fact test a podcast on

17   another forum, "Alex Jones Live", that is simply a test.  It

18   was a guest that just had not gotten a lot of time and just

19   wasn't, I think -- just wasn't really appealing, I think, to

20   the FSS platform.  But there's just not going to be anymore

21   posts on that.

22           There were some issues raised as to whether it was

23   appropriate to assume this lease if Mr. Jones is not going

24   to be with FSS and some quotes were pulled out of that two-

25   plus hour podcast that supported that.  I just wanted to

1    make clear on the record here today that I had someone in my

2    office review that entire podcast to make sure I understood

3    what was going on.

4         I think it's pretty clear, if you listen to the

5    entire thing -- and I'm not going to ask Your Honor or

6    anyone else to listen to it, but --

7         THE COURT:  Thank you.

8         MS. DRIVER:  -- the impression that -- yes, I

9    would just follow that on the record (indiscernible) that

10   you didn't need to listen to it or anything.  But I just

11   wanted to let Your Honor know that it was our office's, you

12   know -- we think that the entirety of the podcasts were very

13   clear that Mr. Jones' first want is to stick with FSS and

14   make it a viable business opportunity with that, you know,

15   some of the positions of, you know, that -- to make Mr.

16   Jones go away or to never hear from him again or

17   (indiscernible) platform him, just a year or so ago, he did

18   have a third party that had put the studio together as an

19   alternative.

20        Just because someone is making alternative plans

21   to support their family does not necessarily mean that

22   they're abandoning ship.  It's that just I think any prudent

23   person would think about how they would take care of their

24   family or make a living if they weren't going to be able to

25   do so at their current place of work.

1          In this situation, it is his absolute intention to

2   keep working with FSS and to try to make a deal with

3   everyone so that FSS can go forward as a continuing business

4   operation.  Obviously, it won't be able to continue if it

5   has 1.5 billion dollars' worth of judgments against it.  So,

6   obviously, that's predicated on their being a good result in

7   this case, which we're definitely committed to.

8          So I just wanted to make sure that, number one, we

9   acknowledge that there was another platform that carried a

10   podcast; number two, that we communicate Mr. Jones' solemn

11   promise to me that there will not be any more posts to that,

12   in the event that anyone believes that that is some way at

13   odds with FSS.

14          I would note that Mr. Jones' salary has not been

15   raised to his (indiscernible) tax rate.  And we have not

16   pressed that issue, just due to our understanding that the

17   FSS can (indiscernible) at this time.  So we don't intend to

18   press that at this time.

19          But at some point -- and I think with the filing

20   of the schedules and his budget, it'll (indiscernible)

21   become clear to everyone that what he is making and what he

22   needs to make may be just two different things, and that

23   there's just going to be a delta there that needs to be made

24   up somehow.

25          So we think that the 90-day extension gives us

```
 1   time to keep working towards a deal and that's an

 2   appropriate resolution.  But we just did not -- given that

 3   we were trying to get the schedules finish, we just didn't

 4   have time to file a response to that.  But I did want to put

 5   on the record that we acknowledge that happened and that the

 6   status as of this point is just it's in a hold pattern for

 7   now.

 8            THE COURT:  Does anybody else wish to be heard in

 9   connection with the -- what I would call the 90-day

10   extension?

11            MR. BATTAGLIA:  Your Honor, if we could enter a

12   sua sponte order today granting the 90-day extension and

13   then maybe -- I don't know how the Court and the Clerk's

14   office would prefer -- I could refile my motion to assume or

15   reject within the 90 days, or I can ask the Court to simply

16   take up this motion again at a later date, and I'll do

17   whichever.

18            THE COURT:  Yeah.  Why don't I just -- and by I, I

19   mean my law clerk, who's listening -- draft an order --

20            MR. BATTAGLIA:  I'm happy to do it, Judge.

21            THE COURT:  No, no, no.  We'll take care of it

22   right now.  We can just draft a short order extending the

23   time for 90 days, and I'm not going to put a specific date.

24   I'm just going to, you know, essentially count the

25   (indiscernible) just add the 90, so that way there's
```

1    clarity.  And then (indiscernible) can continue the hearing

2    on this motion to a date that may determine, and then

3    whenever you feel like you need to have a hearing on it,

4    we'll push it out there and we'll take it up.  And

5    everyone's rights are reserved for purposes of this motion.

6           And really, we'll have a status before the 90-day

7    period (indiscernible).  And what I'm thinking is when you

8    know you want to take it up, let's take it up and we'll set

9    a date and have everything firmed up so you're ready to go,

10   and everybody's rights are reserved.  And if Ms. Driver

11   wants to get a response on file, we'll set dates for all of

12   that.

13          For right now, we'll -- I believe someone is

14   typing as we speak, so we'll take care of it.

15          MR. BATTAGLIA:  The next matter, Your Honor, is

16   Docket Number 429.  It's a motion to sell personal property

17   in the existing warehouse racks.  I do not have a buyer in

18   hand.  I have -- Mr. Magill has three offers.  There's a

19   fourth that I think we need to circle back and make sure

20   that they're no longer interested.  And we've set a floor

21   price of $20,000.

22          The emergency here is that this a lease we've

23   rejected.  So we actually have no right to be in the

24   property anymore.  But the landlord has been pretty

25   cooperative in allowing Mr. Magill and the Debtors' people

1  in, and these racks are going to have to be dismantled and

2  removed.  But the value range is north of $20,000, but not

3  considerably so.

4          So we're just asking the Court to give us

5  authority to sell at a price exceeding that and have

6  received no indications of opposition.

7          THE COURT:  Does anyone wish to be heard in

8  connection with the motion to sell the warehouse racks?  I

9  expect this is an easy one.  And at this point, there are

10  bigger fish to fry than -- and I do understand that if you

11  don't sell the racks, then people get to charge you

12  administrative -- or at least make the -- at least argue

13  your stuff is still here and we're going to charge you for

14  it.

15          So, Mr. Magill, I'm going to approve this motion.

16  Just, you know, get it done is my message to you.  Hire

17  somebody and get it done.

18          MR. BATTAGLIA:  Yes, sir.

19          THE COURT:  Alrighty.  Where do we go next?

20          MR. BATTAGLIA:  Next is the motion for relief of

21  stay at Docket Number 406.  Do you want to -- I'll let Ms.

22  Hardy speak.  It's her motion.

23          THE COURT:  You got it.  Ms. Hardy, good

24  afternoon.

25          MS. HARDY:  Good afternoon, Your Honor.  So, with

1    respect to the motion to lift stay for Texas Plaintiffs, Mr.

2    Pozner and Ms. De La Rosa --

3                    THE COURT:  Mm hmm.

4                    MS. HARDY:  -- we have agreed to treat this

5    hearing as a preliminary hearing.  And what we'd like to do

6    from here is seek an agreed scheduling order among the

7    parties and schedule a hearing, not in the statutorily

8    required 30 days but a -- because that hits right during

9    spring break -- but the week after that --

10                   THE COURT:  Mm hmm.

11                   MS. HARDY:  -- of March 20th from Your Honor.  And

12   in the meantime, if we're unable to resolve the motion in

13   the meantime, which is possible that we will be able to,

14   then we would a limited amount of discovery on very discrete

15   topics from the Debtors, which I've already discussed with

16   Mr. Battaglia and Ms. Driver, and a couple of depositions

17   from them on very specific topics that were raised in their

18   objection.

19                   THE COURT:  Okay.  Look, and I will tell you, if

20   you want to work on an agreed scheduling order, just upload

21   it and I'll sign it.  I'm not going to get in the way of

22   that.  In terms of dates --

23                   MR. BATTAGLIA:  Could we do the 27th and we're

24   already setting something on the 27th.

25                   THE COURT:  That gets tricky.

```
 1              MR. BATTAGLIA:  Whatever works for the Court.

 2              THE COURT:  Why don't we have -- you're just

 3    coming back for cash collateral on that?

 4              MR. BATTAGLIA:  At this point.

 5              THE COURT:  I'd rather do Friday the 24th --

 6              MR. BATTAGLIA:  That's fine.

 7              THE COURT:  -- for that.  But I will tell you that

 8    if there is agreement, Mr. Battaglia, on a further interim,

 9    I suspect if you file that on the 24th and there was

10    agreement, I suspect we could --

11              MR. BATTAGLIA:  Yes, sir.

12              THE COURT:  -- take care of everything on the

13    24th.  That day I know I can give you as much time as you

14    need and there will be no -- and I'll just -- Ms.

15    (indiscernible) will just kind of carve out that day.  That

16    way I know I can give you as much time as you need.  We can

17    start whenever you want.  There's no in between.  You'll

18    have as much time and you know that you can work backwards

19    from that date.

20              MS. HARDY:  Understood.  Thank you, Your Honor.

21    And would replies from the Texas Plaintiffs two days prior

22    to the hearing be sufficient?

23              THE COURT:  Yeah.  Yeah, that's fine with me.  But

24    keep in mind, two days probably by noon, because I'm going

25    to want to see the witness and exhibit list filed by noon on
```

1    that day as well.  You all can work on that.  And in terms

2    of if you get something to Ms. (indiscernible), you just let

3    her know it's up there and I'll take a look at it.  If I

4    have any questions, I'll call everyone in.  But I suspect I

5    won't.

6             MS. HARDY:  Okay.

7             THE COURT:  Okay?

8             MS. HARDY:  Thank you, Your Honor.  And I suspect

9    we will be able to resolve the agreed order, but if not,

10   we'll let chambers know.

11            THE COURT:  Okay.  Yeah, let me know and we'll

12   just pick a date and we'll come in and take care of it.

13   Okay?

14            MS. HARDY:  Thank you.

15            THE COURT:  Okey-dokey.

16            MR. BATTAGLIA:  And Your Honor, that also applies

17   -- and I know Ms. Driver may or may not want to chime in --

18   but the similar motion to lift stay, I believe, is set in

19   the Jones case today.  And I think it's the same

20   (indiscernible).

21            MS. DRIVER:  Yes, Your Honor.

22            THE COURT:  Okay.  Yeah, Ms. Driver, I'll give you

23   that day and everybody can work backwards.  And so I suspect

24   we need to file something in the FSS case and in the --

25            MR. BATTAGLIA:  Jones case?

1          THE COURT:  -- even if it's the same, even if it's

2     unagreed, we'll file it in both cases so there's agreement

3     there.  Okay.

4          MS. DRIVER:  Understood.  Will do.

5          THE COURT:  Alrighty.

6          MS. HARDY:  Thank you, Your Honor.

7          THE COURT:  Alrighty.  Anything else we need to

8     talk about?

9          MR. BATTAGLIA:  Yeah.  The last thing, Your Honor,

10    is you had extended the deadline for Free Speech Systems to

11    file its plan to February 17th.

12         THE COURT:  Yeah.

13         MR. BATTAGLIA:  I have a pretty fully formed plan

14    that needs cleanup, and I'm ready to file on the 16th.  I'm

15    not doing it -- I don't want it to be perceived as a hostile

16    act, but it's along the lines of what you said earlier

17    today, which is this case needs to get moving in a

18    direction.  And I'm not going to ask the Court if I file it

19    to set a deadline for balloting or hearing for confirmation.

20         I don't think there's anything particularly

21    shocking in this draft plan.  It generally proposes to

22    contribute net distributable income to the Sub V Trustee to

23    hold in trust, pending allowing claims.

24         THE COURT:  Let me tell you, Mr. Battaglia -- let

25    me give you my thoughts on this, and I'll give you some

1    options.  I want you to file a plan that you're ready to go

2    with.  And if you're ready to file that plan, then we'll

3    take it up.  If you want a little bit more time, I'll give

4    it to you.  But if you want to get something on file, then

5    get it on file.  And I'm not telling you which way to go.

6    I'm just telling you -- I don't know what your -- obviously,

7    I haven't read it --

8            MR. BATTAGLIA:  What I don't want to do is subvert

9    the mediation.  That's not my intention here is that

10   mediation --

11           THE COURT:  So you tell -- and again, I have no

12   idea what's going on with Judge Isgur, what you all are

13   talking about.  And so you tell me what you think is best

14   and I'll give you some time, if that's what you need.

15           MR. BATTAGLIA:  My instructions from my client are

16   get a plan on file.  But I can visit with him and see if

17   that remains the case.  And I'd like to hear from the other

18   parties.  I mean, I have had --

19           THE COURT:  No, I need --

20           MR. BATTAGLIA:  -- some indications from the

21   Connecticut Plaintiffs that --

22           THE COURT:  I'm not worried about -- I'm worried

23   about what you -- you all tell me -- but you've got to tell

24   me today, because this is on the 17th.  So you...  I don't

25   know.  But if you want to get a plan on file, this is not me

1   not encouraging you.  I'm just giving you --

2          MR. BATTAGLIA:  Okay.

3          THE COURT:  -- I'm giving you -- if you were

4   wondering what the Judge might do after the Judge said we're

5   going to need to keep the case moving, you all tell me what

6   you need to do.  You know, it won't be June, right?  But if

7   you want to get a plan on file so everybody can look at it

8   and react to it, then file it and we'll the where things go.

9   I don't have a problem with that.

10          MR. BATTAGLIA:  (indiscernible) Mr. Magill?

11          THE COURT:  Huh?

12          MR. BATTAGLIA:  Can I have a moment with Mr.

13   Magill?

14          THE COURT:  Oh, of course.

15          MR. BATTAGLIA:  Your Honor, I think what we'll do

16   is we'll send this along with financial information to Judge

17   Isgur and perhaps two other parties and ask the Court today,

18   if you would, to sua sponte enter an order giving us another

19   extension on the deadline to file a plan for 30 days.

20          THE COURT:  What I'm going to do is give you...

21   Let's do this.  I'm going to give you an extension through

22   March 27, because by then we'll know -- we'll be all a lot

23   smarter at that point, right?  You'll know what's going on

24   with Ms. Hardy's motion.  I've either ruled up or down on

25   that day and I intend to do it on the 24th.  If we go

1      forward on that day, I'm going to make a decision.  And then

2      maybe you all have agreed to something by then.  We'll all

3      be a lot smarter.  Then they'll be -- schedules will be on

4      file.  I suspect parties will have continued their

5      conversations with Judge Isgur.  Everybody'll be a lot

6      smarter then.  And so I'll give you until March 27th, an

7      extension of that time, without prejudice to someone coming

8      in and saying no more.  But maybe you just file it on that

9      day and maybe we keep things moving in the FSS case.

10          I just think everybody'll be a lot smarter then

11     and I think you'll know at least what's going on with the

12     plan at that point as well, and how to address Ms. Hardy's

13     clients' claims in the plan, which I think is a missing

14     piece for you now.

15          So, I'm just going to do that.  I think it's just

16     the smart thing to do at this time.  And it's of no fault --

17     you all are having discussions, and the fact that there are

18     two cases that are essentially tracking around the same time

19     and at some point they may veer off.  But for right now, I

20     think it makes sense to keep them together.  And I think Ms.

21     Hardy's client would want a hearing in both cases at the

22     same time.  So let's just keep everything together now.  But

23     the 27th, I think you've got a little bit more breathing

24     room and you're that much smarter about kind of where things

25     go, Mr. Battaglia.

1            MR. BATTAGLIA:  Well, I'm not sure I'll be

2     smarter, but I'll know more.

3            THE COURT:  You'll know more.  That's a better way

4     of saying it.  Okay.

5            MR. BATTAGLIA:  Will the Court do a --

6            THE COURT:  Yeah.

7            MR. BATTAGLIA:  -- sua sponte, or shall I do it?

8            THE COURT:  No, no, no, no.  I am -- I'm on it.

9            MR. BATTAGLIA:  And Your Honor, I didn't have

10    anything else today.  Mr. Magill is concurring.  So --

11           THE COURT:  Okay.

12           MR. BATTAGLIA:  -- that concludes my presentation.

13           THE COURT:  Thank you.  Ms. Driver, anything else

14    we need to talk about today?

15           MAN:  She (indiscernible).

16           THE COURT:  Okay.  This is -- let me just ask -- I

17    did have one question.  I don't want to say anything else

18    about it.  I'm just going to ask a question, and Ms. Driver,

19    you can answer the question.  There are three applications

20    to employ professionals that are filed at 136, 138 and 139.

21    Can we just pick a date and then we can all just -- or

22    parties want to file something that they've worked out

23    something, and if I have any questions, I can ask my

24    questions?  But maybe I have some, maybe I don't.

25           But can we just have something on the schedule so

1    that we can have a date you consider those retention

2    applications?  I don't know if anyone's going to -- I don't

3    know anything.  I just know -- history has taught me that I

4    should set a date and allow people to just ask questions if

5    they want to on that day.  But maybe everything is agreed

6    and I don't have to worry about it.

7            Let's see.  And I know the Committee has a request

8    to appoint a professional as well.  So can we just pick a

9    date for that?  Or at least have something on the books.

10   How about that?  Can we have something on the books on

11   February 28th at 9:00 AM to consider those three?  And maybe

12   it's a short hearing.

13           Ms. Driver, let me ask -- Mr. Zensky, does that

14   work for you?  Ms. Brauner?  Just the -- I just want to have

15   something on the -- a hearing date on it so I can just keep

16   the case moving.

17           MS. BRAUNER:  That's fine for the Committee, Your

18   Honor.

19           THE COURT:  Okay.  Thank you.  Anything else we

20   need to talk about from the Committee's perspective?

21           MS. BRAUNER:  Your Honor, we would just like to

22   take a moment to circle back to the disclosure that Ms.

23   Driver raised regarding "Alex Jones Live", which was the

24   business venture that she described and that was addressed

25   in the objection to the assumption motion.

1          THE COURT:  Okay.

2          MS. BRAUNER:  We served, as the Debtor knows,

3     preliminary 2004 requests in respect of the "Alex Jones

4     Live" issue only.  This came to the attention of the UCC

5     through its own diligence.  And we were somewhat surprised

6     that we had not been informed about this business venture,

7     in whatever form it was taking previously.

8          So we expect the Debtors will cooperate and

9     respond to our 2004 requests.  But if not, we will be back

10    in front of the Court, because as I'm sure the Court can

11    appreciate, we are concerned about where this is going and

12    what impact it may have on (indiscernible).

13         THE COURT:  Okay.  And everybody knows, if you

14    need a hearing, Ms. (indiscernible) is just an email away,

15    and just let her know and we'll get you on; we'll get you

16    in.

17         MS. BRAUNER:  Thank you, Your Honor.

18         THE COURT:  Alrighty.  Thank you.

19         MR. KIMPLER:  Your Honor, are you able to hear me?

20         THE COURT:  Just fine.  Thank you.  Just --

21         MR. KIMPLER:  Thank you.  It's Kyle Kimpler again

22    on behalf of the Connecticut Plaintiffs.  I just wanted to

23    quickly go back to the comment about the FSS plan.  On

24    behalf of the Connecticut families, we certainly appreciate

25    Your Honor's -- an extension of the plan filing deadline.

1    We certainly think that makes sense here.

2              I want to be very clear that the plan has not been

3    seen by the Sandy Hook families.  And to my knowledge, no

4    substantive discussions at all have happened around the

5    contours of an FSS plan.

6              So I think it's -- especially while we're still

7    awaiting the Subchapter V Trustee's report -- I think it's

8    extremely premature to be filing that plan.  We'll reserve

9    all rights, obviously.  But I do think the extension makes a

10   lot of sense and we appreciate that.

11             THE COURT:  Okay.  Anything else?  Anyone else

12   wish to be heard?  And if you can, just hit 5 star.  All

13   right.  Thank you very much.  Thank you for your time.

14   Everyone have a good day.  Thank you.

15        (Proceedings adjourned at 2:09 p.m.)

16

17

18

19

20

21

22

23

24

25

1

2                          I N D E X

3

4                           RULINGS

5                                              Page        Line

6   Stipulation for Protective Orders

7        in Alex Jones and Free Speech

8        Systems, Granted                      12          9

9   Motion for Cash Collateral Order, Granted  13          22

10  Motion to Extend, Granted                  20          19

11  Motion to Sell Racks, Approved             22          13

12  Motion to Lift Stay re Texas Plaintiffs,

13  Granted                                    23          19

14

15

16

17

18

19

20

21

22

23

24

25

1                           CERTIFICATION

2

3      I certify that the foregoing is a correct transcript from

4      the electronic sound recording of the proceedings in the

5      above-entitled matter.

6

7      *Sonya M. Ledanski Hyde*

8

9

10     Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  February 17, 2023