IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ALEXANDER E. JONES, | ) Case No. 22-33553 (CML) |
| | ) |
| Debtor. | ) |
| | ) |

**NOTICE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
BANKRUPTCY RULE 2004 EXAMINATION OF ALEXANDER E. JONES**

Please take notice that, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 2004-1 of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), Alexander E. Jones (the "Debtor") is commanded to produce documents and electronically stored information ("ESI"), and respond to the requests for production (the "Requests"), identified in the attached **Exhibit A**, to the undersigned counsel for the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 case of Alexander E. Jones (the "Chapter 11 Case"), no later than **March 10, 2023, at 5:00 p.m. CST** (the "Production Date").

Please take further notice that the Committee reserves its rights under title 11 of the United States Code (the "Bankruptcy Code"), the Bankruptcy Rules, the Local Rules, and any applicable law regarding the subject matter of this Notice, and to amend, supplement, and/or modify Exhibit A attached hereto in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable law, and to issue additional and/or supplemental notices or Requests.

Dated: February 22, 2023         Respectfully submitted,

By: */s/ Marty L. Brimmage, Jr.*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr.
Texas Bar No. 00793386
Lacy M. Lawrence
Texas Bar No. 24055913
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: mbrimmage@akingump.com
Email: llawrence@akingump.com

*-and-*

Ira S. Dizengoff (admitted *pro hac vice*)
David M. Zensky (admitted *pro hac vice*)
Philip C. Dublin (admitted *pro hac vice*)
Sara L. Brauner (admitted *pro hac vice*)
Katherine Porter (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: idizengoff@akingump.com
Email: dzensky@akingump.com
Email: pdublin@akingump.com
Email: sbrauner@akingump.com
Email: kporter@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Alexander E. Jones*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 2004-1, I hereby certify that counsel for the Committee conferred with counsel for Alexander E. Jones on the Committee's Rule 2004 requests in the form reflected in Exhibit A on February 22, 2023.

*/s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.

## CERTIFICATE OF SERVICE

I certify that on February 22, 2023, a true and correct copy of the foregoing and the attached exhibit were served on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.

**EXHIBIT A**

**DEFINITIONS**

The following definitions apply to the Requests. Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1. The term "*1776coin*" shall refer to the business associated with the website www.1776coin.com.

2. The term "*Affiliate*" or "*Affiliates*" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

3. The term "*Agent*" shall mean any Person and their Professionals acting for or on behalf of another Person.

4. The term "*Alex-Jones-Live*" shall refer to the business associated with the website https://alexjones.live.

5. The terms "*all*," "*any*," and "*each*" shall each be construed as encompassing any and all of these terms.

6. The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications, or responses that might otherwise be construed to be outside of its scope.

7. The term "*Assets*" shall mean both real assets and intangible assets, including Real Property (whether owned or leased), fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, cash equivalents, Commodities, Commodities futures, precious metals, jewelry, wine, art, automobiles, watercraft, boats, and any other thing of value.

8. The term "*Commodities*" shall mean any tangible material that can be bought and sold. For the avoidance of doubt, this includes gold, silver, diamonds, platinum, palladium, and other precious metals. For the further avoidance of further doubt, this includes options, futures, and funds.

9. The term "*Communication*" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages, chat messages, Instant Bloomberg chat messages, social media messages (e.g., Facebook, Twitter), WhatsApp chat messages, Telegram app messages, GroupMe chat messages, or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

10. The term "*concerning*" shall mean relating to (however remotely), referring to, describing, evidencing, or constituting.

11. The term "*Corporate Records*" shall include articles of association, company bylaws, articles of incorporation, founding documents, policies and resolutions made by management, records of material transactions, approvals of material contracts, records of sale, purchase of real estate, annual reports, and any other Document concerning an entity's organization or material activities.

12. The term "*Cryptocurrency*" means any digital currency that utilizes cryptography or similar technology to secure transactions that are digitally recorded on a distributed ledger, such as a blockchain or similar technology.

13. The terms "***Debtor***" or "***Jones***" shall mean the Person who filed a petition for chapter 11 bankruptcy in the case of *In re Alexander E. Jones*, No. 22-33553 (CML) (Bankr. S.D. Tex.) and who goes by the name of Alexander Jones, Alex Jones, Alexander E. Jones, Alex E. Jones, Alexander Emeric Jones, Alex Emeric Jones, or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor, and Professionals of the Debtor.

14. The term "***Document***" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, and other data or data compilations.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets, and PowerPoint presentations.  A draft or non-identical copy is a separate document within the meaning of this term.

15. The term "***Financial Records***" shall include any Document or Communication that contains or summarizes information about any Person's or entity's financial activities or condition including, but not limited to, information about the Assets, balance sheets, budgets, cash flow, earnings, revenue, Gifts, Payments, Transfers in Assets or interests, Tax Documents, and books and records containing any of the above maintained in the ordinary course of business.

16. The term "***Gift***" shall mean any Transfer to a Person, either directly or indirectly, where full consideration (measured in money or money's worth) is not received in return.

17. The term "***including***" shall mean "including, but not limited to."

18. The term "*Income*" shall mean any compensation in exchange for goods or services, including fees, commissions, fringe benefits, and other similar items.

19. The term "*Insider*" shall have the meaning ascribed in 11 U.S.C. § 101(31).

20. The term "*IRS*" shall refer to the Internal Revenue Service.

21. The term "*Patriot Collectibles*" shall refer to the business associated with the website https://www.patriotcollectibles.com, which appears to include 1776coin.

22. The term "*Payment*" shall mean any voluntary or involuntary Transfer of an Asset directly or indirectly from You or on Your behalf having a value of $100 or more in exchange for any service, product, or other Asset, whether previously provided, provided contemporaneously with the Transfer, or to be provided in the future.

23. The term "*Person*" shall mean any natural person or any legal entity, unincorporated association, or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business or governmental entity or association.

24. The term "*Petition Date*" shall mean December 2, 2022.

25. The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, consultants (including independent consultants), independent contractors, advisors, and testifying or non-testifying experts.

26. The term "*Real Property*" shall have the meaning ascribed to the term in section 1.04(2) of the Texas Property Tax Code.

27. The term "*Tax Documents*" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment, or information return, statement, or other

Document relating to taxes, including any schedules or form or attachment thereto, whether prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an employer or employee, a tax preparer, a tax Professional, a bank or financial institution, the IRS, or any other governmental authority.

28. The term "*Transfer*" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)–(D), inclusive.

29. The terms "*You*," "*Your*," or "*Yours*" shall mean the Debtor, and any Person or entity over which the Debtor has agency or apparent authority.

30. The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

31. Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, or any other individual or entity acting or purporting to act on behalf of such Person.

32. The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

## **INSTRUCTIONS**

1. These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules, the Federal Rules of Civil Procedure, and the Local Rules.

2. Each Request is continuing in nature. If at any time additional Documents responsive to the Requests come into Your possession, custody, or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3. You are requested to produce all Documents, Communications, and information requested herein that are within Your possession, custody, or control or in the possession, custody, or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, or any other Person or entity acting or purporting to act on Your behalf.

4. If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify: (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information, or belief You have concerning the unanswered portion of any such Request(s).

5. All Documents shall be produced in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format. ***All Documents shall be produced with metadata, including but not limited to the date created/sent, author, recipients, cc-copies, bcc-blind copies, and whether the document contains redactions***.

6. If the response to any Request consists, in whole or in part, of an objection on the basis of or including burdensomeness, then provide those documents that can be produced without undue burden. For such documents that are too burdensome to produce, describe the process or

method required to obtain said documents, the quantity and location of the documents involved, and the estimated costs of the search.

7. If You intend to withhold any responsive Document, Communication, or other information on the basis of a claim of attorney-client privilege, work product protection, bank examination privilege, or any other ground of non-disclosure, You shall identify such Document, Communication, or information in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc, addressor/from, Document type, and topic covered and listed with a statement of the grounds alleged for withholding such Document, Communication, or other information, including any privilege claimed.

8. If Your response to any Request is any other objection, You must indicate if information is being withheld based on the objection(s), provide all information not covered by the objection, and state the specific basis of the objection.

9. If any Document responsive to these Requests has been destroyed, lost, or discarded, state when the Document was destroyed, lost, or discarded; identify the Person who destroyed, lost, or discarded the Document; and, in the event the Document was destroyed or discarded, identify the Person who directed that it be destroyed or discarded.  Additionally, detail the reasons for the destruction, loss, or discarding; describe the nature of the Document; identify the Persons who created, sent, received, or reviewed the Document; and state in as much detail as possible the contents of the Document.

10. Subject to Instruction No. 5 above, Documents should be produced in the manner they are kept in the ordinary course of business.  In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

11. All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

12. The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

13. Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied, or otherwise obtained from April 16, 2018, to the present.

14. By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to modify or otherwise to supplement these Requests.

**REQUESTS FOR PRODUCTION**

1. All Documents and Communications concerning Your intentions, expectations, and objectives in starting Alex-Jones-Live.

2. Documents sufficient to identify all owners, employees, contractors, contributors, sponsors, Affiliates, Agents, Insiders, and Professionals of Alex-Jones-Live.

3. Documents sufficient to identify any Person(s) that own or have an interest in Alex-Jones-Live.

4. All Documents and Communications concerning any actual or potential funding, backers, or financial, logistical, or other support for Alex-Jones-Live, and Documents sufficient to identify the amount and source of all funding or other support.

5. All Documents and Communications concerning the source of any infrastructure, intellectual property, or other resources utilized by Alex-Jones-Live.

6. Documents sufficient to identify the location where any work on behalf of Alex-Jones-Live is conducted or performed.

7. Documents sufficient to identify the "backers" and "infrastructure," as referenced by You on the Alex-Jones-Live podcast at approximately the one-minute-and-forty-second mark of the episode aired, recorded, streamed, or posted on February 2, 2023.

8. All Documents and Communications concerning the terms of the contemplated subscriptions to Alex-Jones-Live, as referenced by You on the Alex-Jones-Live podcast on the episode aired, recorded, streamed, or posted on or around February 4, 2023, and titled "Alex Jones Launches His New Subscriber Platform."

9. All Documents and Communications concerning the initiation of Alex-Jones-Live, including but not limited to "[Your] home studio that [You] started building two years ago" for

Alex-Jones-Live, as referenced by You on the Alex-Jones-Live podcast at approximately the one-minute-and-fifty-second mark of the episode aired, recorded, streamed, or posted on February 2, 2023.

10. Documents sufficient to identify the resources, funding, infrastructure, and personnel used to create all media, podcasts, shows, streams, videos, articles, links, reports, and live events for Alex-Jones-Live.

11. All Documents and Communications concerning Your statement that Alex-Jones-Live is "totally separate from Infowars," as stated by You on the Alex-Jones-Live podcast at approximately the one-minute-and-forty-second mark of the episode aired, recorded, streamed, or posted on February 2, 2023.

12. All Documents and Communications concerning Your statement that "[You] intend to use the bankruptcy as a vehicle to try to settle these cockamamie cases" but "if the systems don't treat us right and screw us over at the federal level like they did at the state level, that's fine because . . . [You] have five major offers," as stated by You on the Alex-Jones-Live podcast at approximately the fifteen-minute-and-forty-second mark of the episode aired, recorded, streamed, or posted on or around February 4, 2023, and titled "Alex Jones Launches His New Subscriber Platform."

13. All Documents and Communications concerning any Corporate Records, Financial Records, or Tax Records for Alex-Jones-Live or those referencing Alex-Jones-Live.

14. Documents sufficient to identify the date on which Alex-Jones-Live commenced operations.

15. All Documents and Communications concerning Income, profits, or revenue generated, received by, or in connection with Alex-Jones-Live.

16. All Documents and Communications concerning any projected Income, profits, or revenue expected in connection with Alex-Jones-Live.

17. All Documents and Communications concerning any actual or projected distribution of Income, profits, or revenue associated with Alex-Jones-Live to any other Person(s).

18. Documents sufficient to identify any Gifts, Payments, loans, or Transfers made by or to Alex-Jones-Live, including the amount of said Gifts, Payments, loans, or Transfers and the sender or recipient of said Gifts, Payments, loans, or Transfers.

19. All Documents and Communications concerning expenses associated with Alex-Jones-Live, including but not limited to rent, travel expenses, equipment expenses, real estate expenses, and employee salary expenses.

20. Documents sufficient to identify all travel planned in connection with Alex-Jones-Live.

21. All Documents and Communications concerning any contracts or agreements entered into by Alex-Jones-Live, including but not limited to copies of said contracts and Documents and Communications concerning the negotiations of said contracts.

22. All Documents and Communications concerning 1776coin or Patriot Collectibles and Alex-Jones-Live.

23. Documents sufficient to identify the "separate groups" that have set up "two studios in Austin," which are "already set up," as referenced by You on the Alex-Jones-Live podcast at approximately the six-minute mark of the episode aired, recorded, streamed, or posted on February 2, 2023.

24. Documents sufficient to identify the "five offers" You or Alex-Jones-Live has received, as referenced by You on the Alex-Jones-Live podcast at approximately the six-minute-

and-thirty-second mark of the episode aired, recorded, streamed, or posted on February 2, 2023, including but not limited to the identity of the offeror of each offer and the monetary amount or terms of each offer.

25. Documents sufficient to identify any offers made to hire or employ You or Alex-Jones-Live, other than the "five offers" referenced in Request 12 and Request 24.