# Exhibit 2

TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-18-00614-CV

Filed in The District Court
of Travis County, Texas
OCT 24 2019
At 6:04 P.M.
Velva L. Price, District Clerk

Infowars, LLC; Free Speech Systems, LLC; and Kit Daniels, Appellants

v.

Marcel Fontaine, Appellee

FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-18-001605, THE HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

MEMORANDUM OPINION

Appellants Infowars, LLC; Free Speech Systems, LLC; and Kit Daniels appeal from the district court's order partially denying their motion to dismiss under section 27.003 of the Texas Citizens Participation Act (TCPA).[1] *See* Tex. Civ. Prac. & Rem. Code § 27.003. We will affirm the district court's partial denial of Appellants' motion to dismiss.

---

[1] All citations in this opinion to the TCPA are to the version in effect before the September 2019 amendments became effective. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 961–64 (current version at Tex. Civ. Prac. & Rem. Code §§ 27.001–.011), amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, §§ 1–3, 5, 2013 Tex. Gen. Laws 2499, 2499–500 (the version at issue in this opinion); *see also* Act of May 20, 2019, 86th Leg., R.S., H.B. 2730, §§ 1–9 (the 2019 amendments), 11–12 (providing that a suit filed before the amendments become effective "is governed by the law in effect immediately before that date").

## BACKGROUND

On February 14, 2018, a shooter killed seventeen people at Marjory Stoneman Douglas High School in Parkland, Florida. That same day, the Infowars.com website published an article authored by Daniels entitled "MSM already covering it up."[2] The article provided information and commentary relating to the Parkland shooter, Nikolas Cruz, and included a clear photo of Marcel Fontaine below the text "another alleged photo of the suspect shows communist garb" and with the caption "Shooter is a commie."[3] In the photo, Fontaine is wearing a red shirt that features several famous communist leaders engaging in merriment. The photo remained on Infowars.com for about thirteen hours before it was removed, and no correction was issued at that time explaining that the photo was actually not that of the shooter. The parties appear to agree that Fontaine, who has never been to Florida, was not involved in the Parkland shooting.

By March 1, 2018, Fontaine requested that Appellants issue a correction pursuant to section 73.055 of the Civil Practice and Remedies Code. A month later, Fontaine filed the underlying lawsuit, and Appellants then issued a statement on the website noting that "we showed a photograph of a young man that we had received and stated incorrectly that it was an alleged photo of the suspected shooter at Douglas High School in Parkland, Florida. . . ." Fontaine's lawsuit alleged claims for defamation and defamation per se as well as intentional infliction of emotional distress. The petition further alleged that all defendants were engaged in a conspiracy and that Alex E. Jones[4] and Infowars, LLC are liable under the doctrine of

---

[2] The record shows that on Infowars.com, "MSM" refers to mainstream media.

[3] The article, which is attached to Daniels's affidavit, identifies the shooter as Nikolas Cruz and also provides the voting record and other information for "Nicolas Cruz" in addition to providing Fontaine's photo.

[4] Alex E. Jones is a defendant in the underlying litigation but is not a party to this appeal.

respondeat superior. Jones and Appellants filed a motion to dismiss under the TCPA. The district court granted the motion as to Fontaine's claim for intentional infliction of emotional distress, but denied the motion as to the defamation claim. Appellants raise three issues on appeal: (1) all claims against Infowars, LLC should have been dismissed because there is no evidence to support any cause of action against Infowars, LLC; (2) Fontaine failed to establish clear and specific evidence to support a prima facie case of defamation, conspiracy, and respondeat superior against Daniels and Free Speech Systems; and (3) the district court failed to award Appellants their reasonable and necessary attorney's fees as a result of the partial grant of their motion to dismiss.

## ANALYSIS

"Reviewing a TCPA motion to dismiss requires a three-step analysis." *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). First, the party moving for dismissal must show by a preponderance of the evidence that the TCPA applies to the legal action against it. Tex. Civ. Prac. & Rem. Code § 27.005(b). If the movant meets that burden, the nonmovant must establish by clear and specific evidence a prima facie case for each essential element of its claim. *Id.* § 27.005(c). "The words 'clear' and 'specific' in the context of this statute have been interpreted respectively to mean, for the former, 'unambiguous,' 'sure,' or 'free from doubt' and, for the latter, 'explicit' or 'relating to a particular named thing.'" *Hawxhurst v. Austin's Boat Tours*, 550 S.W.3d 220, 230 (Tex. App.—Austin 2018, no pet.) (quoting *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015)). "In determining whether a legal action should be dismissed under [the TCPA], the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a) ("Evidence").

Collectively, these elements require that the "plaintiff must provide enough detail to show the factual basis for its claim." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam). If the nonmovant satisfies that requirement, the burden shifts back to the movant to prove each essential element of any valid defenses by a preponderance of the evidence. Tex. Civ. Prac. & Rem. Code § 27.005(d).

The parties do not dispute that the TCPA applies to the defamation action against Appellees, and Appellants have not asserted any defense. As a result, only the second step of the TCPA analysis is at issue here—whether Fontaine established by clear and specific evidence a prima facie case for each essential element of his defamation claim. We review de novo whether the parties met their respective burdens of proof under section 27.005. *Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.).

**Liability of Infowars, LLC**

Appellants contend that Fontaine failed to establish any evidence of Infowars, LLC's involvement in publication of the alleged defamation, thereby falling short of the TCPA's requirement to establish a prima facie case for liability as to Infowars, LLC. In support of his contention that Infowars, LLC is a proper defendant in this case, Fontaine filed an affidavit by Marcus Turnini, who averred that he had visited the Infowars.com website and attached as exhibits to his affidavit a true and correct copy of portions of the website as they existed on August 1, 2018. Appellants objected that the district court should have excluded Turnini's affidavit on the grounds that the affiant was not an expert, did not profess to have personal knowledge about the contents of the webpages attached to his affidavit, and did not provide any

explanation about the contents of the webpages at the time the alleged defamatory article was published. On appeal, they assert that the affidavit should not have been admitted or considered.

In his affidavit, Turnini states that he is a paralegal, that he visited two separate links containing Infowars.com's terms of service, and that he attached true and correct copies of the website pages located at those links to his affidavit. Turnini is not acting as an expert for Fontaine. In this instance, Turnini's affidavit explains that he has personal knowledge of the contents of the exhibits by stating that he visited the website on August 1, 2018, and printed a true and correct copy of its contents. Although Appellants argue that evidence of the state of the website in August does not account for what might have been on the website on February 14, 2018, they do not present evidence or argument that the Terms of Use were different on February 14, 2018, or any time thereafter. The district court's order does not reveal whether the district court relied on Turnini's affidavit, but we conclude on this record that the district court would not have abused its discretion in considering Turnini's affidavit. *See Melton v. CU Members Mortg.*, __ S.W.3d __, __ No. 03-18-00363-CV, 2019 Tex. App. LEXIS 6507 at * 9 (Tex. App.—Austin, 2019) (no pet. h.) ("We review rulings on the admission or exclusion of evidence for abuse of discretion.").

At the time Turnini provided his affidavit, the online document containing Infowars.com's terms of service was entitled "INFOWARS LLC, TERMS OF USE & PRIVACY POLICY" (Terms of Use). The Terms of Use expressly applied to "planet.infowars.com and all other Uniform Resource Identifier[s] we use to provide our Products and Services." A Uniform Resource Identifier (URI) is a sequence of characters used to identify "resources via separately defined extensible sets of naming schemes." *Drauglis v. Kappa Map Grp., LLC*, 128 F. Supp. 3d 46, 56-57 (D.D.C. 2015). URI is a broad term that

5

includes Uniform Resource Locators (URLs), otherwise known as links. *Id.* at 57. Thus, the website link Infowars.com qualifies as a URI. The Terms of Use describe users' rights and abilities to use Infowars.com and provide for legal consequences for noncompliance. Under the Terms of Use, "'We,' 'us,' and 'our' means Infowars, LLC, a Texas limited liability company." Some of the rights and responsibilities specified by the Terms of Use include how "notices from us shall be sent" to users, how "We" gather information about users to use and to share with third parties, and how "We may review and delete any content you post on the Website or elsewhere utilizing our Services or System if we determine, in our sole discretion, that the content violates that rights of others, is not appropriate for the Website, or otherwise violates this Agreement." In other words, under the Terms of Use, use of Infowars.com initiated a relationship between the user and Infowars, LLC, and Infowars, LLC was involved in the website's operation. In the absence of argument or evidence that the contents of the Terms of Use changed between February 14, 2018, and August 1, 2018, we conclude that Fontaine has established by clear and specific evidence the minimum quantum of evidence necessary to support a rational inference that Infowars, LLC is a proper defendant.

**Prima Facie Case for Defamation**

The TCPA requires Fontaine to establish by clear and specific evidence a prima facie case for each essential element of his defamation claim against Appellants. Tex. Civ. Prac. & Rem. Code § 27.005(c). "In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *In re Lipsky*, 460 S.W.3d at 591. The TCPA "does not impose an elevated

evidentiary standard or categorically reject circumstantial evidence." *Id.* Defamation occurs when "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages (unless the statement constitutes defamation per se)." *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). "The status of the person allegedly defamed determines the requisite degree of fault." *In re Lipsky*, 460 S.W.3d at 593. A private individual need prove only negligence, whereas a public figure or official must prove actual malice. *Id.* (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). Finally, a plaintiff must plead and prove damages, unless the defamatory statements are defamatory per se. *Id.* (citing *Waste Mgmt. of Tex., Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 162 n.7 (Tex. 2014)). Defamation per se refers to statements that are so obviously harmful that general damages may be presumed. *Id.*

### False and Defamatory Publication

"Texas recognizes the common-law rule that defamation is either per se or per quod." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018). "Defamation per se occurs when a statement is so obviously detrimental to one's good name that a jury may presume general damages, such as for loss of reputation or for mental anguish." *Id.* (citing *Hancock v. Variyam*, 400 S.W.3d 59, 63-64 (Tex. 2013)). Defamation per quod is simply defamation that is not actionable per se. *Id.*

Appellants acknowledge that Fontaine is not the Parkland shooter, who at the time of the shooting had already been identified as another person. They nonetheless assert that by publishing a photograph of Fontaine with the accompanying text "another alleged photo of the suspect shows communist garb," "Daniels accurately reported" what he had seen on social

7

media. Appellants assert that Daniels obtained Fontaine's photo from www.4chan.org (4chan), a website that allows users to post images and text anonymously. *See United States v. Kernell*, 667 F.3d 746, 749 (6th Cir. 2012) ("4chan is known for its culture of anonymous posting, and often contains content that is offensive or socially unacceptable."); *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 836, 846-48 (E.D. Mich. 2019) (determining that the fair reporting privilege and wire-service privilege did not apply where reporter relied on information found on 4chan and discussing 4chan's unreliability as a news-gathering agency). Daniels had also seen Fontaine's photo "trending on social media, including Twitter." Specifically, Daniels relies on Fontaine's photo having been tweeted by an anonymous user, @LagBeachAntifa7, from an account called Laguna Beach Antifa. Fontaine's pleadings assert that the Laguna Beach Antifa account is a parody account and was not a reliable news source. Appellants assert that these sources formed the basis for Daniels's belief that the photo was of the Parkland shooter and that by using the adjective "alleged," Daniels absolved himself of liability for defamation because an anonymous user on 4chan and an anonymous user on Twitter had both alleged that the photo was of the Parkland shooter.

The precise text accompanying Fontaine's photo on 4chan had the title "Florida Shooter Was Commie!" and the text "FLORIDA SHOOTER WAS A CONFIRMED LIBERAL COMMIE!!! What r we going to do to help the country defend itself against the red scare/pol?[5] A million bucks says he supports ANTIFA too!" Laguna Beach Antifa tweeted the photo with the statement "Please don't RT[6] this picture of #NicholasCruz wearing an Antifa shirt. We don't need anymore bad press. #BrowardCounty #floridaschoolshooting." Although Daniels states

---

[5] The record shows that "/pol" refers to 4chan's "Politically Incorrect" discussion board.
[6] "RT" means to "retweet"—to electronically share the initial tweet on Twitter.

that he obtained the image from the 4chan post, the only 4chan post contained in the record has a time stamp showing that it was made after Daniels posted his article to Infowars.com, so it would be difficult to show that Daniels relied on that post to confirm the identity of the shooter before posting his article. The Laguna Beach Antifa tweet was posted about two hours before Daniels published his article. Fontaine asserts that Daniels could not have relied on any allegation from the tweet, which Fontaine describes as "an obvious joke," in that the tweet shares a photo that it asks others not to share. The record also contains an excerpt showing that the day before the Parkland shooting, the top Google search result for Laguna Beach Antifa's Twitter account described it as a parody account. Fontaine further explains in his response to the motion to dismiss that a reverse image search of the photo in question would have revealed that Fontaine's photo had been circulating on 4chan for days before the shooting with various comments mocking Fontaine and his shirt. Fontaine also notes that the image used by Daniels contains, as part of the image itself, the caption "Shooter is a commie," which is not included in either of the two sources that Daniels alleges he relied on, suggesting that the image used by Daniels originated elsewhere.

Even accepting Appellants' argument that Daniels based his belief regarding the shooter's identity on the tweet and that addition of the word "alleged" would render the text of the article technically accurate, it is not likely that Daniels was entitled to rely on the anonymous tweet. *See McDonald v. Raycom TV Broad., Inc.*, 665 F. Supp. 2d 688, 690 (S.D. Miss. 2009) (stating "as a general rule, one who repeats a defamatory statement attributed to another cannot avoid liability merely by showing that the statement was made by the other person because, under the republication rule of defamation, one who repeats slander or libel from another endorses it" but noting an exception for reports of an official action subject to the fair report

9

privilege); *see also Neely v. Wilson*, 418 S.W.3d 52, 61 (Tex. 2013) ("[I]t is a well-settled legal principle that one is liable for republishing the defamatory statement of another."). Moreover, "a plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). The "meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements." *Id.* As a result, a defendant may be liable for a publication that gets the details right but fails to put them in the proper context and thereby gets the story's gist wrong. *Id.*; *see Dallas Morning News*, 554 S.W.3d at 628 (explaining that defamation may arise from explicit statements, from the gist of an entire article, or "implicitly from a distinct portion of the article rather than from the article's as-a-whole gist."). Although in isolation the description "alleged photo" might be literally true,—i.e., that the photo is said to be that of the person thought to be the shooter—the statement as a whole is reasonably capable of defamatory meaning because a reasonable person's perception could be that the photo depicted the person thought to be the shooter. *See James v. Fort Worth Telegram Co.*, 117 S.W. 1028, 1029 (Tex. App.—Fort Worth 1909, no writ) ("persons who knew the plaintiff well, and knew her residence and family, would probably not be misled, but would at once conclude that the picture was inserted by mistake; but there may well be a considerable number of persons, who only know the plaintiff by sight, or have merely a slight acquaintance, who would recognize the picture at once, and would conclude that the article in fact did refer to the plaintiff, concluding (if they knew the plaintiff's name at all) that such name was merely another alias."). In a case

where a newspaper published the photo of a man named Jesse James, but erroneously identified him as Daniel Herring, who had committed homicide, one court wrote:

> There can be no doubt that imputing to a person that he has killed a human being under circumstances authorizing his arrest and detention by officers of the law tends to injure his reputation and to expose him to public hatred. . . . It is plain, we think, it should be construed as imputing the homicide to the man whose picture, forming a part of the publication, was identified by references to it as that of the man who did the killing. The evidence was uncontradicted that the picture was a reproduction of a photograph of appellant, and not a picture of the man guilty of the homicide. Therefore it is clear, we think, that the publication should be held to have imputed the killing to appellant.

*Id.* That court held that the "imputation in the publication" was "per se libelous." *Id.* at 1030. Because Appellants published Fontaine's photograph in an article describing him as the Parkland shooter, we conclude that Fontaine has established by clear and specific evidence a prima facie case that the article containing his photo was false and defamatory per se.

Appellants assert that Fontaine has also failed to make a prima facie case for conspiracy and respondeat superior. However, because civil conspiracy is "derivative," courts do not analyze the trial court's refusal to dismiss plaintiffs' causes of action for conspiracy separately from its refusal to dismiss their other causes of action. *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 797 (Tex. App.—Austin 2017, pet. granted). Similarly, the doctrine of respondeat superior is not a separate "legal action" and is not addressed separately from the underlying cause of action for defamation in a TCPA motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code § 27.001(6).

### *Requisite Degree of Fault*

Appellants urge that Fontaine should have to prove that they acted with actual malice because Fontaine's pleading, while asserting a host of facts, ultimately alleges that

11

Appellants acted with actual malice—that is, that Appellants published the defamatory article with knowledge of its falsity or with reckless disregard for the truth or falsity of the statements contained therein. However, Fontaine alleges a claim for defamation, asserts facts in his petition to explain the basis for his claim, and makes the uncontroverted assertion that he "is a private individual and is neither a public official nor a public figure." "In Texas, courts apply a negligence standard in cases involving a private plaintiff seeking defamation damages from a media defendant." *D Magazine Partners*, 529 S.W.3d at 434 (citing *Neely*, 418 S.W.3d at 61). Under a negligence standard, a defendant is negligent if the defendant knew or should have known a defamatory statement was false, unless the content of the false statement would not warn a reasonably prudent editor of its defamatory potential. *Id.*

Appellants rely on Daniels's assertion that he relied on the 4chan post and a tweet from a parody Twitter account to show that he did not publish the article with the requisite degree of fault. Appellants ask this Court to hold that using an image from an anonymous online source that is corroborated by another anonymous online source suffices to bar Fontaine from proceeding with a suit for defamation. The record does not contain a 4chan post that was published before Daniels posted his article; the only copy provided was published later. Fontaine argues that the timeline suggests that Daniels may not have relied on a 4chan post at all. The sole remaining publication on which Daniels might have relied is the tweet. Fontaine included images in his response to the motion to dismiss to support his assertion that the Twitter account on which Daniels relied was an obvious parody account and that on its face the tweet contains a joke indicating that it is not a serious source of information. Fontaine further alleges that, in addition to the dubious nature of Appellants' sources of information, failure to perform even the most basic review of the information, by performing a reverse image search, showed

that Appellants were intentionally avoiding the truth and were at least negligent in publishing the photo in the article. This Court has determined that reliance on a single dubious source for allegations may demonstrate more than mere negligence where there are obvious reasons to doubt the veracity of reports. *Warner Bros.*, 538 S.W.3d at 807; *cf. Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) (concluding there was prima facie evidence of recklessness by citing undisputed evidence that publisher failed to make any effort to interview key witness or to listen to tapes of key witness's interview); *D Magazine Partners*, 529 S.W.3d at 434 (holding that a magazine acted with negligence when it "failed to take reasonable steps to verify the accuracy of the story's gist and should have known the gist was false"). On this record, and given the limited scope of our TCPA review, we conclude that Fontaine has established by clear and specific evidence the minimum quantum of evidence necessary to support a rational inference that Appellants acted at least negligently.

### *Damages*

"Damages . . . are not always an essential element of defamation." *Brady v. Klentzman*, 515 S.W.3d 878, 886 (Tex. 2017) (citing *In re Lipsky*, 460 S.W.3d at 593). "If the statement is defamatory per se, then nominal damages may be awarded without proof of actual injury because mental anguish and loss of reputation are presumed." *Id.* To recover actual damages for loss of reputation or mental anguish or for economic loss, a plaintiff must present evidence of the existence and amount of these damages. *Id.* "But this is optional. The plaintiff can vindicate his name and obtain nominal damages without evidence of actual injury." *Id.* Accordingly, having determined that Fontaine has established a prima facie case that Appellants' publication was defamatory per se, we may presume nominal damages, which are sufficient to defeat Appellants' motion to dismiss. *See In re Lipsky*, 460 S.W.3d at 596 ("Pleading and proof

of particular damage is not required to prevail on a claim of defamation per se, and thus actual damage is not an essential element of the claim to which the TCPA's burden of clear and specific evidence might apply."). We therefore need not address Fontaine's affidavit and supplemental declaration that seek to establish his general and special damages. *See id.*

**Attorney's Fees**

Appellants assert that the district court abused its discretion by failing to award them "reasonable attorney's fees." *See* Tex. Civ. Prac. & Rem. Code 27.009(a)(1) (requiring an award of "reasonable attorney's fees . . . as justice and equity may require" if the court orders dismissal under the TCPA). Whether attorney's fees are reasonable is generally a question of fact. *See Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010). We review a trial court's decision to award attorney's fees for an abuse of discretion and review the amount awarded under a legal-sufficiency standard. *Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.*, 212 S.W.3d 665, 671 (Tex. App.—Austin 2006, no pet.). A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). A party seeking attorney's fees must prove the amount as well as the reasonableness and necessity of the fees sought. *Fawcett v. Grosu*, 498 S.W.3d 650, 666 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762-63 (Tex. 2012).

The district court granted Appellants' motion to dismiss relating to Fontaine's claim for intentional infliction of emotional distress, essentially agreeing with Appellants that it was legally barred because it was based on the same facts as the defamation claim. Appellants submitted evidence showing they incurred attorney's fees in the amount of $59,675 as of two

days before the hearing, and anticipated incurring an additional $5,000 through the conclusion of the hearing. At the hearing on the motion to dismiss, Fontaine argued that, in the event of a partial dismissal, he would be liable for a "pro rata share of the attorney's fees" if a defendant or cause of action were carved out of the case. Counsel for Fontaine expressly objected to the amount of attorney's fees sought by Appellants: "We do object to the amount of the affidavit in terms of we don't believe that those are reasonable attorneys' fees," and counsel for both parties presented specific arguments regarding the reasonableness of the fees. Counsel for Fontaine also stated he understood that he might not be able to survive a motion to dismiss as to both the claim for defamation and for intentional infliction of emotional distress based on this Court's opinion in *Warner Brothers*. *See* 538 S.W.3d at 814 (holding the trial court erred by not dismissing intentional infliction of emotional distress claim that was based on the same facts as plaintiff's defamation claim). The district court acknowledged that it was required to award attorney's fees "on that portion of the case that's dismissed," adding "you were put in this sort of difficult choice of having to decide whether to keep the gap filler for belt and suspenders purposes knowing that when you lose the belt or the suspenders, you're going to have to pay for it." Noting that the declaration in support of the fees did not segregate fees based on causes of action or defendants, the district court awarded Appellants $5,000 for attorney's fees for the portion of the TCPA motion that resulted in dismissal of Fontaine's claim for intentional infliction of emotional distress. In this case, we cannot conclude that the district court abused its discretion in awarding Appellants $5,000.

## CONCLUSION

Having determined that Fontaine established a prima facie case for defamation, we affirm the district court's order partially denying Appellants' motion to dismiss.

_____
Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Kelly

Affirmed

Filed: October 24, 2019

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## JUDGMENT RENDERED OCTOBER 24, 2019

## NO. 03-18-00614-CV

Infowars, LLC; Free Speech Systems, LLC; and Kit Daniels, Appellants

v.

Marcel Fontaine, Appellee

### APPEAL FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
### BEFORE CHIEF JUSTICE ROSE, JUSTICES TRIANA AND KELLY
### AFFIRMED -- OPINION BY JUSTICE TRIANA

This is an appeal from the order signed by the trial court on August 29, 2018. Having reviewed the record and the parties' arguments, the Court holds that there was no reversible error in the trial court's order. Therefore, the Court affirms the trial court's order. The appellant shall pay all costs relating to this appeal, both in this Court and in the court below.

## COURT OF APPEALS
## FOR THE
## THIRD DISTRICT OF TEXAS

P.O. BOX 12547, AUSTIN, TEXAS 78711-2547
(512) 463-1733

Date: October 24, 2019

Appeal No.: 03-18-00614-CV
Trial Court No.: D-1-GN-18-001605

Style: Infowars, LLC; Free Speech Systems, LLC; and Kit Daniels v. Marcel Fontaine

---

The enclosed opinion and judgment were sent this date to the following persons:

Mr. Kevin W. Brown
Waller Lansden Dortch & Davis, LLP
100 Congress Avenue, Suite 1800
Austin, TX 78701
* DELIVERED VIA E-MAIL *

The Honorable Velva L. Price
Civil District Clerk
Travis County Courthouse
P. O. Box 1748
Austin, TX 78767
* DELIVERED VIA E-MAIL *

Mr. Eric J. Taube
Waller Lansden Dortch & Davis, LLP
100 Congress Avenue, Suite 1800
Austin, TX 78701
* DELIVERED VIA E-MAIL *

The Honorable Billy Ray Stubblefield
Administrative Judge
Williamson County Courthouse
405 Martin Luther King, Box 2
Georgetown, TX 78626
* DELIVERED VIA E-MAIL *

The Honorable Scott H. Jenkins
Judge, 53rd District Court
P. O. Box 1748
Austin, TX 78767
* DELIVERED VIA E-MAIL *

Mr. Mark Bankston
Kaster Lynch Farrar & Ball, LLP
1117 Herkimer St.
Houston, TX 77008
* DELIVERED VIA E-MAIL *