**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| ALEXANDER E. JONES, | ) |
| | ) Case No. 22-33553 (CML) |
| Debtor. | ) |
| | ) |

**SECOND NOTICE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**BANKRUPTCY RULE 2004 EXAMINATION OF ALEXANDER E. JONES**

Please take notice that, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 2004-1 of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), Alexander E. Jones (the "Debtor") is commanded to produce documents and electronically stored information ("ESI"), and respond to the requests for production (the "Requests"), identified in the attached **Exhibit A**,[1] to the undersigned counsel for the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 case of Alexander E. Jones (the "Chapter 11 Case"), no later than **April 30, 2023, at 5:00 p.m. CDT** (the "Production Date").

Please take further notice that the Committee reserves its rights under title 11 of the United States Code (the "Bankruptcy Code"), the Bankruptcy Rules, the Local Rules, and any applicable law regarding the subject matter of this Notice, and to amend, supplement, and/or modify Exhibit A attached hereto in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable law.

---

[1] Exhibit A is being filed under seal out of an abundance of caution pursuant to the *Stipulated Confidentiality Agreement and Protective Order* [ECF No. 159]. A redacted copy is being filed contemporaneously.

Dated: March 13, 2023

Respectfully submitted,

By: *Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr.
Texas Bar No. 00793386
Lacy M. Lawrence
Texas Bar No. 24055913
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: mbrimmage@akingump.com
Email: llawrence@akingump.com

-*and*-

Ira S. Dizengoff (admitted *pro hac vice*)
David M. Zensky (admitted *pro hac vice*)
Philip C. Dublin (admitted *pro hac vice*)
Sara L. Brauner (admitted *pro hac vice*)
Katherine Porter (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: idizengoff@akingump.com
Email: dzensky@akingump.com
Email: pdublin@akingump.com
Email: sbrauner@akingump.com
Email: kporter@akingump.com

***Counsel to the Official Committee of Unsecured Creditors of Alexander E. Jones***

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 2004-1, I hereby certify that counsel for the Committee conferred with counsel for Alexander E. Jones on the Committee's Rule 2004 requests substantially in the form reflected in Exhibit A on March 1, 2023.

*/s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.


## **CERTIFICATE OF SERVICE**

I certify that on March 13, 2023, a true and correct copy of the foregoing and the attached exhibit were served on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.

**EXHIBIT A**

**DEFINITIONS**

The following definitions apply to the Requests.  Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1.      The term "*2022 Appeal Trust*" shall refer to any entity affiliated with You that goes by the name 2022 Appeal Trust, together with such entity's predecessors and successors in interest, and shall include all Persons acting on behalf of such entity, including such entity's Affiliates, current or former trustees or other fiduciaries, settlors, donors, beneficiaries, beneficial owners, Agents, advisors, attorneys and Professionals.

2.      The term "*2022 FSS Litigation Settlement Trust*" shall refer to any entity affiliated with You that goes by the name 2022 FSS Litigation Settlement Trust, together with such entity's predecessors and successors in interest, and shall include all Persons acting on behalf of such entity, including such entity's Affiliates, current or former trustees or other fiduciaries, settlors, donors, beneficiaries, beneficial owners, Agents, advisors, attorneys and Professionals.

3.      The term "*A. Emric Productions, LLC*" shall refer to the entity named A. Emric Productions, LLC for which articles of organization were filed with the Texas Secretary of State on or about May 10, 2007, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

4.      The term "*AEJ Austin Holdings LLC*" shall refer to the entity named AEJ Austin Holdings LLC for which articles of organization were filed with the Texas Secretary of State on or about September 24, 2018, and shall include any of its Affiliates, predecessors and successors

in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

5.      The term "*AEJ Holdings, LLC*" shall refer to any entity affiliated with You that goes by the name AEJ Holdings, LLC or AEJ Holdings LLC, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

6.      The term "*AEJ 2018 Trust*" shall refer to any entity affiliated with You that goes by the name AEJ 2018 Trust, together with such entity's predecessors and successors in interest, and shall include all Persons acting on behalf of such entity, including such entity's Affiliates, current or former trustees or other fiduciaries, settlors, donors, beneficiaries, beneficial owners, Agents, advisors, attorneys and Professionals.

7.      The term "*Account*" shall mean any arrangement or agreement by which one or more Persons accepts one or more Persons' Assets to hold on behalf of that Person, including but not limited to savings accounts, checking accounts, money market accounts, Certificate of Deposit accounts, brokerage accounts, currency accounts, Cryptocurrency accounts, commodities futures accounts, trust accounts, bailments, custodial agreements, safe deposit boxes, arrangements or agreements by which Assets are stored, and any other accounts held with a financial institution. For the avoidance of doubt, this includes, *but is not limited to*, the following Accounts:

a.      checking Account at Bank of America with the Account number ending in 6078 and belonging to Alexander E. Jones power of attorney David R. Jones;

b.      checking Account at Bank of America with the Account number ending in 4016 and belonging to Emric Productions, LLC;

c.      checking Account at Bank of America with the Account number ending in 2913 and belonging to Alexander Jones DBA Magnolia Management, Infowars, and Jones Productions;

d.      checking Account at JPMorgan Chase with the Account number ending in 7518 and belonging to Alexander E. Jones;

e.      checking Account at JPMorgan Chase with the Account number ending in 3520 and belonging to Alexander E. Jones;

f.      checking Account at PNC Bank with the Account number ending in 5233 and belonging to Alexander Jones # 22-33553 DIP; and

g.      checking Account at Security Bank of Crawford with the Account number ending in 8548 and belonging to Alexander Emric Jones.

■     ████████████████

8.      The term "*Affiliate*" or "*Affiliates*" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

9.      The term "*Agent*" shall mean any Person or entity and their Professionals acting for or on behalf of another Person or entity.

10.      The term "*Alexander E. Jones Descendent and Beneficiary Trust*" shall refer to any entity affiliated with You that goes by the name Alexander E. Jones Descendent and Beneficiary Trust, together with such entity's predecessors and successors in interest, and shall include all Persons acting on behalf of such entity, including such entity's Affiliates, current or

former trustees or other fiduciaries, settlors, donors, beneficiaries, beneficial owners, Agents, advisors, attorneys and Professionals.

11.     The terms "*all*," "*any*," and "*each*" shall each be construed as encompassing any and all of these terms.

12.     The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications, or responses that might otherwise be construed to be outside of its scope.

13.     The term "*Ascendant Health Labs LLC*" shall refer to any entity by the name of (or similar to) Ascendant Health Labs LLC, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

14.     The term "*Assets*" shall mean both real assets and intangible assets, including Real Property (whether owned or leased), fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, cash equivalents, Commodities, Commodities futures, precious metals, jewelry, watches, furniture, wine, art, Firearms, Domain Names, oil and gas leases, mineral rights, automobiles, watercraft, boats, and any other things exceeding $250 of value.

15.     The term "*ATM*" shall mean any automated teller machine or similar computer system through which one can complete financial transactions.

16.     The term "*Austin Shiprock Publishing LLC*" shall refer to the entity named Austin Shiprock Publishing LLC for which articles of organization were filed with the Texas Secretary of State on or about April 4, 2012, and shall include any of its Affiliates, predecessors and successors

in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

17.     The term "***Bank of America***" shall refer to Bank of America Corporation, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

18.     The term "***BellaMac LLC***" shall refer to any entity by the name of (or similar to) BellaMac LLC, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

19.     The term "***Bio Pros***" shall refer to any entity by the name of (or similar to) Bio Pros, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

20.     The term "***Blue Asension Logistics LLC***" shall refer to the entity named Blue Asension Logistics LLC for which articles of organization were filed with the Texas Secretary of State on or about March 7, 2022, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

22.     The term "*Certificate of Deposit*" shall mean any savings product offered by a bank or financial institution that earns interest on a fixed sum for a fixed period of time.

23.     The term "*CGS Partners LLC*" shall refer to any entity by the name of (or similar to) CGS Partners LLC, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

24.     The term "*Charge Card*" shall mean any card, plate, or other single credit device that may be used from time to time to obtain credit which is not subject to a finance charge.

25.     The term "*Charlotte Savings #1152*" shall refer to any entity affiliated with You that goes by the name Charlotte Savings #1152 as You disclosed in Your Schedules at Part 4, line 25, together with such entity's predecessors and successors in interest, and shall include all Persons acting on behalf of such entity, including such entity's Affiliates, current or former trustees or other fiduciaries, settlors, donors, beneficiaries, beneficial owners, Agents, advisors, attorneys and Professionals.

26.     The term "*Commodities*" shall mean any tangible material that can be bought and sold.  For the avoidance of doubt, this includes gold, silver, diamonds, platinum, palladium, and other precious metals.  For the further avoidance of further doubt, this includes options, futures, and funds.

27.     The term "*Communication*" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages,

chat messages, Instant Bloomberg chat messages, social media messages (e.g., Facebook, Twitter), WhatsApp chat messages, Telegram app messages, GroupMe chat messages, or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

28.     The term "*concerning*" shall mean relating to (however remotely), referring to, describing, evidencing, or constituting.

29.     The term "*Corporate Records*" shall include articles of association, company bylaws, articles of incorporation, founding documents, partnership agreements, management agreements, meeting minutes, policies and resolutions, records of material transactions, approvals of material contracts, records of sale, purchase of real estate, annual reports, and any other Document concerning an entity's organization or material activities.

30.     The term "*Credit Card*" shall mean any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

31.     The term "*Credit Documents*" shall include any Documents concerning any application or request for an extension of credit of any kind including, but not limited to, mortgages, personal loans, lines of credit, and credit cards.  For the avoidance of doubt, this includes, but is not limited to, the following types of Documents:  (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) residential rental Payment histories; (i) other Tax Documents; and (j) any other Document submitted in connection with an application for an extension of credit.

32.     The term "*Credit Report*" shall mean any Document prepared by a Credit Reporting

Agency or other financial Professional evidencing the record of a borrower's credit history or used to evaluate the creditworthiness of a Person.

33.     The term "***Credit Reporting Agency***" shall mean any entity whose primary purpose is to maintain historical creditor information, and shall include Equifax, Experian, and TransUnion.

34.     The term "***Cryptocurrency***" shall mean any digital currency that utilizes cryptography or similar technology to secure transactions that are digitally recorded on a distributed ledger, such as a blockchain or similar technology.

35.     The term "***Cryptocurrency Wallet***" shall mean any device, physical medium, program, app, service, or software that stores private keys for Cryptocurrency or Cryptocurrency transactions, whether encrypted or otherwise.

36.     The term "***Currency Transaction Report***" shall mean any report required to be filed pursuant to 31 CFR § 1010.311 or 31 CFR § 1021.311.

37.     The term "***Debit Card***" shall mean any card issued by a financial institution to a consumer for use in initiating an electronic fund Transfer from the Account of the consumer at such financial institution, for the purpose of Transferring money between Accounts or obtaining money, property, labor, or services.

38.     The terms "***Debtor***" or "***Jones***" shall mean the Person who filed a petition for chapter 11 bankruptcy in the case of *In re Alexander E. Jones*, No. 22-33553 (CML) (Bankr. S.D. Tex.) and who goes by the name of Alexander Jones, Alex Jones, Alexander E. Jones, Alex E. Jones, Alexander Emeric Jones, Alex Emeric Jones, or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor, and Professionals of the Debtor.

39.     The term "**_Debtor Related Entity_**" shall include the following Persons, each as defined herein:

      a.      A. Emric Productions, LLC;

      b.      AEJ Austin Holdings LLC;

      c.      AEJ Holdings LLC;

      d.      Austin Shiprock Publishing LLC;

      e.      Blue Asension Logistics LLC;

      f.      Emric Productions LLC;

      g.      Free Speech Systems, LLC;

      h.      Guadalupe County Land and Water L.L.C.;

      i.      InfoW, LLC;

      j.      IWHealth, LLC;

      k.      JLJR Holdings LLC;

      l.      Jones Production;

      m.      Jones Productions, LLC;

      n.      Jones Report, LLC;

      o.      LPTZ Holdings LLC;

      p.      Magnolia Holdings, Limited Partnership;

      q.      Magnolia Management, LLC;

      r.      MRJR Holdings Limited LLC;

      s.      Planet Infowars, L.L.C.;

      t.      PLJR Holdings LLC;

      u.      PQPR Holdings Limited LLC;

v.      Prison Planet TV, LLC; and

w.      Any other entity owned by You or for Your benefit, including any Debtor Related Trust.

40.      The term "***Debtor Related Trust***" shall refer to any trust for which You or any Debtor Related Entity is a beneficiary, settlor, donor, or trustee including, but not limited to, the Missouri 779384 Trust; the RXXCTTGAA Trust; the Alexander E. Jones Descendent and Beneficiary Trust; the 2022 Appeal Trust; the 2022 FSS Litigation Settlement Trust; the AEJ 2018 Trust; the Green Leaf Trust; ███████████████████ and the Hutton Cabin Trust, and shall include any of their Affiliates, predecessors and successors in interest, and any of their former or current trustees, settlors, donors, beneficiaries, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on their behalf.

41.      The term "***Document***" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, and other data or data compilations.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets, and PowerPoint presentations.  A draft or non-identical copy is a separate document within the meaning of this term.

42.      The term "***Domain Name***" shall mean any sequence of alphanumeric characters that forms all or part of the corresponding internet addresses.

43.     The term "***Dr. Jones Naturals***" shall refer to any entity by the name of (or similar to) Dr. Jones Naturals, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

44.     The term "***Dr. Sonny's LLC***" shall refer to any entity by the name of (or similar to) Dr. Sonny's LLC, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

45.     The term "***Emric Productions LLC***" shall refer to the entity by the name of Emric Productions LLC, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

46.     The term "***Equifax***" shall refer to Equifax Inc.

47.     The term "***Experian***" shall refer to Experian plc.

48.     The term "***Family Members***" shall include current or former spouses; children of the Debtor; parents; and first-degree, second-degree, third-degree, and fourth-degree relatives.

49.     The term "***Financial Records***" shall include any Document or Communication that contains or summarizes information about any Person's or entity's financial activities or condition including, but not limited to, information about the Assets, balance sheets, budgets, cash flow, earnings, revenue, Gifts, Payments, Transfers in Assets or interests, Tax Documents, Credit Documents, Mortgage Documents, and books and records containing any of the above maintained in the ordinary course of business.

50. The term "***FinCEN***" shall refer to the bureau of the United States Department of the Treasury named the Financial Crimes Enforcement Network.

51. The term "***Firearm***" shall mean (a) any weapon, including any gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (b) the frame or receiver of any such weapon; (c) any firearm muffler or firearm silencer; or (d) any destructive device.  For the avoidance of doubt, this definition is without regard to the date that the Firearm was manufactured.

52. The term "***Free Creek Media Inc.***" shall refer to the entity named Free Creek Media Inc., which was formed in Texas on or about December 23, 2019, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

53. The term "***Free Speech Systems, LLC***" shall refer to Free Speech Systems, LLC, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

54. The term "***FSS Bankruptcy***" shall mean the pending chapter 11 subchapter V proceeding before the Hon. Christopher M. Lopez in the United States Bankruptcy Court in the Southern District of Texas styled as *In re Free Speech Systems LLC*, Bankr. S.D. Tex., Case No. 4:22-60043.

55. The term "***Georgia Savings #1154***" shall refer to any entity affiliated with You that goes by the name Georgia Savings #1154, as You disclosed in Your Schedules at Part 4, line 25, together with such entity's predecessors and successors in interest, and shall include all

Persons acting on behalf of such entity, including such entity's Affiliates, current or former trustees or other fiduciaries, settlors, donors, beneficiaries, beneficial owners, Agents, advisors, attorneys and Professionals.

56.     The term "*Gift*" shall mean any voluntary or involuntary Transfer of an Asset having a value of $100 or more ***not*** made in exchange for any service, product, or other Asset.

57.     The term "*Green Leaf Trust*" shall refer to any entity affiliated with You that goes by the name Green Leaf Trust, together with such entity's predecessors and successors in interest, and shall include all Persons acting on behalf of such entity, including such entity's Affiliates, current or former trustees or other fiduciaries, settlors, donors, beneficiaries, beneficial owners, Agents, advisors, attorneys and Professionals.

58.     The term "*Guadalupe County Land and Water L.L.C.*" shall refer to the entity by the name of Guadalupe County Land and Water L.L.C. for which articles of organization were filed with the Texas Secretary of State on or about March 7, 2022, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

██  ███████████████████████████████████████████

███████████████████

60.     The term "*Hutton Cabin Trust*" shall refer to any entity affiliated with You that goes by the name Hutton Cabin Trust, together with such entity's predecessors and successors in interest, and shall include all Persons acting on behalf of such entity, including such entity's Affiliates, current or former trustees or other fiduciaries, settlors, donors, beneficiaries, beneficial owners, Agents, advisors, attorneys and Professionals.

61.     The term "*including*" shall mean "including, but not limited to."

62.     The term "*Income*" shall mean any compensation in exchange for goods or services, including fees, commissions, fringe benefits, and other similar items.

63.     The term "*InfoW, LLC*" shall refer to the entity named InfoW, LLC, formerly known as Infowars LLC, for which articles of formation were filed with the Texas Secretary of State on or about November 15, 2007, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

64.     The term "*Insider*" shall have the meaning ascribed in 11 U.S.C. § 101(31).

65.     The term "*IRS*" shall refer to the Internal Revenue Service.

66.     The term "*IWHealth, LLC*" shall refer to the entity named IWHealth, LLC, formerly known as Infowars Health, LLC, for which articles of formation were filed with the Texas Secretary of State on or about May 24, 2012, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

67.     The term "*JEDKH LLC*" shall refer to the entity named JEDKH LLC, which was formed in Texas on or about December 12, 2019, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

68.     The term "***JLJR Holdings, LLC***," shall refer to the entity named JLJR Holdings, LLC for which articles of formation were filed with the Nevada Secretary of State on or about October 2, 2013, which was registered to do business in Texas on or about October 9, 2013, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

69.     The term "***Jones Production***" shall refer to any entity affiliated with You that goes by the name of Jones Production, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

70.     The term "***Jones Productions, LLC***" shall refer to the entity by the name of Jones Productions, LLC for which articles of organization were filed with the Texas Secretary of State on or about November 14, 2007, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

71.     The term "***Jones Report, LLC***" shall refer to the entity by the name of Jones Report, LLC for which articles of organization were filed with the Texas Secretary of State on or about November 15, 2007, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

72.     The term "*JPMorgan Chase*" shall refer to JPMorgan Chase & Co., and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

73.     The term "*LPTZ Holdings LLC*" shall refer to the entity named LPTZ Holdings LLC for which articles of organization were filed with the Texas Secretary of State on or about April 12, 2022, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

74.     The term "*Magnolia Holdings, Limited Partnership*" shall refer to the entity named Magnolia Holdings, Limited Partnership for which articles of organization were filed with the Alaska Secretary of State on or about November 20, 2007, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

75.     The term "*Magnolia Management, LLC*" shall refer to the entity named Magnolia Management, LLC for which articles of organization were filed with the Alaska Secretary of State on or about November 16, 2007, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

76.     The term "*Missouri 779384 Trust*" shall refer to any entity affiliated with You that goes by the name Missouri 779384 Trust, together with such entity's predecessors and

successors in interest, and shall include all Persons acting on behalf of such entity, including such entity's Affiliates, current or former trustees or other fiduciaries, settlors, donors, beneficiaries, beneficial owners, Agents, advisors, attorneys and Professionals.

77.     The term "*Mortgage Documents*" shall include any Documents concerning any application or request for a line of credit secured by a mortgage on any residential or commercial Real Property, including but not limited to:  (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) copies of the purchase and sale agreement; (i) deeds of trust; (j) residential rental Payment histories; (k) other Tax Documents; and (*l*) any other Document submitted in connection with the above.

78.     The term "*Mountain Way*" shall refer to the entity by the name of Mountain Way, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

79.     The term "*MRJR Holdings Limited LLC*" shall refer to the entity named MRJR Holdings Limited LLC for which articles of organization were filed with the Nevada Secretary of State on or about June 12, 2019, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

80.     The term "*Negotiable Instrument*" shall include any unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it (a) is payable to bearer or to order at the time it is issued or first comes into

possession of a holder; (b) is payable on demand or at a definite time; and (c) does not state any other undertaking or instruction by the person promising or ordering Payment to do any act in addition to the Payment of money, and any similar instrument.

81.     The term "*Payment*" shall mean any voluntary or involuntary Transfer of an Asset having a value of $500 or more in exchange for any service, product, or other Asset, whether previously provided, provided contemporaneously with the Transfer, or to be provided in the future, and whether or not such service, product, or other Asset was or will be provided to the Person making or causing the Payment to be made.

███ █████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

83.     The term "*Person*" shall mean any natural person or any legal entity, unincorporated association, or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business or governmental entity or association.

84.     The term "*Petition Date*" shall mean December 2, 2022.

85.     The term "*Planet Infowars, L.L.C.*" shall refer to the entity named Planet Infowars, L.L.C. for which articles of organization were filed with the Texas Secretary of State on or about April 4, 2012, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

86.     The term "***PLJR Holdings, LLC***" shall refer to the entity named PLJR Holdings, LLC for which articles of organization were filed with the Nevada Secretary of State on or about October 2, 2012, which was registered to do business in Texas on or about October 9, 2013, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

87.     The term "***PNC Bank***" shall refer to PNC Financial Services Group, Inc., and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

88.     The term "***PQPR Holdings Limited LLC***" shall refer to the entity named PQPR Holdings Limited LLC for which articles of incorporation were filed on or about October 2, 2013, which was registered to do business in Texas on or about October 9, 2013, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

89.     The term "***Practitioners Products LLC***" shall refer to any entity by the name of (or similar to) Practitioners Products LLC, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

90.     The term "***Prepetition Litigation***" shall mean any litigation commenced against the Debtor or any Debtor Related Entity before December 2, 2022.

91.     The term "**Prison Planet TV, LLC**" shall refer to the entity named Prison Planet TV, LLC for which articles of organization were filed with the Texas Secretary of State on or about November 15, 2007, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

92.     The term "**Professional**" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, consultants (including independent consultants), independent contractors, advisors, and testifying or non-testifying experts.

93.     The term "**Promissory Note**" shall include any written Document that is or evidences a promise by one or more Persons to pay a debt to one or more Persons whether nontransferable or otherwise, and any similar Document.

95.     The term "**Public Storage**" shall refer to the entity by the name of Public Storage with headquarters at 701 Western Avenue, Glendale, California 91201, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

96.     The term "**Real Property**" shall have the meaning ascribed to the term in section 1.04(2) of the Texas Property Tax Code.

████████    ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████

98.     The term "***Reeves Law, P.C.***" shall refer to the law firm by the name of Reeves Law, P.C., whose address is 3735 Cherokee Street, Kennesaw, Georgia 30144, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

99.     The term "***Rex Jones Enterprises LLC***" shall refer to any entity by the name of (or similar to) Rex Jones Enterprises LLC, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

100.    The term "***Rex Savings #1156***" shall refer to any entity affiliated with You that goes by the name Rex Savings #1156, together with such entity's predecessors and successors in interest, and shall include all Persons acting on behalf of such entity, including such entity's Affiliates, current or former trustees or other fiduciaries, settlors, donors, beneficiaries, beneficial owners, Agents, advisors, attorneys and Professionals.

101.    The term "***RXXCTTGAA Trust***" shall refer to any entity affiliated with You that goes by the name RXXCTTGAA Trust, together with such entity's predecessors and successors in interest, and shall include all Persons acting on behalf of such entity, including such entity's

Affiliates, current or former trustees or other fiduciaries, settlors, donors, beneficiaries, beneficial owners, Agents, advisors, attorneys and Professionals.

102.    The term "*QuickBooks*" shall mean any accounting software developed by Intuit Inc.

103.    The term "*Schedules*" shall refer to the Schedules filed by the Debtor in this chapter 11 case [ECF No. 161], and any amendments thereto.

104.    The term "*Schedule C*" shall refer to Schedule C of IRS Form 1040 used to report income or loss from a business You operated or a profession You practiced as a sole proprietor.

105.    The term "*Security Bank of Crawford*" shall refer to Security Bank of Crawford, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

106.    The term "*SOFA*" shall refer to the Statement of Financial Affairs for Individual filed by the Debtor in this chapter 11 case [ECF No. 162], and any amendments thereto.

107.    The term "*Supplements*" shall mean any dietary, health, or wellness products, including, but not limited to, those currently or previously listed for sale by any entity in which You or any Debtor Related Entity hold a beneficial, legal, equitable, or pecuniary interest.

108.    The term "*Take Free Media Inc.*" shall refer to any entity by the name of (or similar to) Take Free Media Inc., and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

109.    The term "***Take it Media Inc.***" shall refer to the entity named Take it Media Inc., which was formed in Texas on or about February 2, 2022, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

110.    The term "***Tax Documents***" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment, or information return, statement, or other Document relating to taxes, including any schedules or form or attachment thereto, whether prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an employer or employee, a tax preparer, a tax Professional, a bank or financial institution, the IRS, or any other governmental authority.

111.    The term "***Transfer***" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)–(D), inclusive.

112.    The term "***TransUnion***" shall refer to TransUnion.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████

114.    The term "***Vallum Holdings LLC***" shall refer to the entity named Vallum Holdings LLC, which was formed in Nevada on or about November 21, 2019, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current

employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

115.    The term "**Verboten LLC**" shall refer to any entity by the name of (or similar to) Verboten LLC, and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

117.    The terms "**You**," "**Your**," or "**Yours**" shall mean the Debtor; the Debtor in his capacity as an employee, member, manager, owner, officer, director, or Professional of any Debtor Related Entity; the Debtor in his capacity as a settlor, grantor, beneficiary, or trustee of any Debtor Related Trust; and any Person or entity over which the Debtor has agency or apparent authority. This includes You:  (a) as an individual, (b) as trustee of the AEJ 2018 Trust and RXXCTTGAA Trust, (c) as co-trustee; settlor, or beneficiary of the Green Leaf Trust; Missouri 779384 Trust; Georgia Savings #1154; Rex Savings #1156; Charlotte Savings #1152; and Alexander E. Jones Descendent and Beneficiary Trust; (d) as a manager, member, or owner of Free Speech Systems, LLC; AEJ Austin Holdings, LLC; Guadalupe County Land and Water L.L.C.; Magnolia Management, LP; Jones Production; Emric Productions LLC; Jones Report, LLC; and Jones Productions, LLC, and (e) in any other capacity in which You have possession, custody, or control of Documents or information called for or responsive to these Requests.

118.    The term "***Youngevity International, Inc.***" shall mean Youngevity International, Inc., and shall include any of its Affiliates, predecessors and successors in interest, and any of its or their former or current employees, members, managers, officers, directors, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on its behalf.

119.    The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

120.    Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, or any other individual or entity acting or purporting to act on behalf of such Person.

121.    The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

## **INSTRUCTIONS**

1.      These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules and the Local Rules.

2.      Each Request is continuing in nature.  If at any time additional Documents responsive to the Requests come into Your possession, custody, or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3.      You are requested to produce all Documents, Communications, and information requested herein that are within Your possession, custody, or control or in the possession, custody, or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, members, managers, trustees, or any other Person or entity acting or purporting to act on Your behalf.

4.      You are requested to produce Documents, Communications, and information requested herein on a rolling basis.

5.      If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify:  (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information, or belief You have concerning the unanswered portion of any such Request(s).

6.      All Documents shall be produced with metadata in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format.  ***All Documents shall be produced with metadata, including but not limited to the date and time***

*created/sent, author, recipients, cc-copies, bcc-blind copies, family member information, MD-5 hash, subject line and title, and whether the document contains redactions*.

7.     If the response to any Request consists, in whole or in part, of an objection on the basis of or including undue burdensomeness, then provide those documents that can be produced without undue burden.  For such documents that are too unduly burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved, and the estimated costs of the search.

8.     If You intend to withhold any responsive Document, Communication, or other information on the basis of a claim of attorney-client privilege, work product protection, or any other ground of non-disclosure, You shall identify such Document, Communication, or information in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc, addressor/from, Document type, and topic covered and listed with a statement of the grounds alleged for withholding such Document, Communication, or other information, including any privilege claimed.

9.     If Your response to any Request is any other objection, You must indicate if Documents are being withheld based on the objection(s), provide all Documents not covered by the objection, and state the specific basis of the objection.

10.     If any Document responsive to these Requests has been destroyed, lost, or discarded, state when the Document was destroyed, lost, or discarded; identify the Person who destroyed, lost, or discarded the Document; and, in the event the Document was destroyed or discarded, identify the Person who directed that it be destroyed or discarded.  Additionally, detail the reasons for the destruction, loss, or discarding; describe the nature of the Document; identify

the Persons who created, sent, received, or reviewed the Document; and state in as much detail as possible the contents of the Document.

11.    Subject to Instruction No. 6 above, Documents should be produced in the manner they are kept in the ordinary course of business.  In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

12.    All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

13.    The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

14.    Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied, or otherwise obtained from April 1, 2018, to the present.

15.    By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to amend, to modify or, otherwise to supplement these Requests.

## REQUESTS FOR PRODUCTION

***Individual Debtor Requests***

1.      Documents sufficient to identify each of Your Assets that is worth, individually or in the aggregate-in-kind, over $250; the location of each Asset; the custodian of each Asset or otherwise having possession or control of the Asset if not You; and the value of each Asset, including any Asset that you own directly or indirectly.

2.      All Documents and Communications concerning any Asset planning or, estate planning with respect to, or consideration of any creditor's ability to reach, any Assets in which You have a legal, possessory, beneficial, equitable, pecuniary, or disputed interest.  The scope of this Request is from January 1, 2013, to present.

3.      All Documents and Communications concerning the filing of Your chapter 11 petition, including all Documents and Communications concerning the planning of the filing of Your chapter 11 petition.

4.      All Documents and Communications concerning any Gift made directly or indirectly by You, including Documents concerning the recipient of each Gift and the value of each Gift.

5.      All Documents and Communications concerning any Payment by You, any Debtor Related Entity, or any Debtor Related Trust, including Documents sufficient to identify the amount and recipient of each Payment and the specific goods, services, or Assets provided in exchange.

6.      All Documents and Communications concerning debts and other obligations owed by You to any Family Members including, but not limited to, any Promissory Notes, records of loan proceeds Transferred from the Accounts of any Family Member to You, and Documents and

Communications showing Payments of principal or interest made by You to any Family Members concerning these debts.

7.      All Documents and Communications concerning debts and other obligations owed to You by any Family Members including, but not limited to, any Promissory Notes, records of loan proceeds Transferred from the Your Accounts to any Family Members, and Documents and Communications showing Payments of principal or interest made by any Family Members to You concerning these debts.

8.      All Documents and Communications evidencing the debts purportedly related to the Payment of approximately $1.3 million to Your wife, father, and mother within the year prior to the Petition Date, as referenced in Your SOFA at Part 3, line 7, including, but not limited to, any Promissory Notes, records of loan proceeds Transferred from the Accounts of any Family Members to You, and Documents and Communications showing Payments of principal or interest made by You to any Family Members concerning these debts.

9.      All Documents and Communications concerning the Assets, liabilities, and financial condition of Free Speech Systems, LLC, including any legal or financial advice received in connection with the negotiation, preparation, and execution of notes with PQPR Holdings Limited LLC and security agreements with PQPR Holdings Limited LLC.

10.     All Documents and Communications concerning Your affiliation or employment with Free Speech Systems, LLC, including all Documents and Communications concerning the negotiation and preparation of Your employment agreements with Free Speech Systems, LLC.

11.     All Documents and Communications concerning any offers of employment, endorsement, or financial backing or support from any Person other than Free Speech Systems, LLC.

12.     All Documents and Communications concerning any Income however received or Transferred.

13.     All Documents and Communications concerning any Income received from IWHealth, LLC.

14.     All Documents and Communications concerning any Income received from Youngevity International, Inc.



17.     All Tax Documents, submitted to the IRS, or any other local, state, or national taxation authority worldwide, by You or on Your behalf including but not limited to:  (i) any Tax Documents reflecting your Assets or any Income received directly or indirectly; (ii) any gift tax returns; (iii) all Documents and Communications concerning Your individual tax return for the year ending December 31, 2019, including copies of Your individual tax return for the year ending December 31, 2019, and all schedules and statements to that tax return; (iv) all statements to Schedule C of Your individual tax return for the year ending December 31, 2018.  The scope of this Request is from January 1, 2013, to the present.



19.     All Documents and Communications concerning any rental Income received from Real Property You own or have any interest in personally or through any Debtor Related Trust, since January 1, 2013.

20.     Any premarital or postmarital agreement to which You are a party, and any separation agreement or settlement agreement to which You are a party in connection with a separation or divorce.

21.     Any court orders or agreements or Documents concerning Your obligation to pay alimony, maintenance, spousal support, or child support, including Documents sufficient to identify the amounts of any such expenses.

22.     Documents sufficient to identify all of Your current sources of Income and expected future sources of Income.

23.     Documents sufficient to identify all of Your current monthly expenses and expected future monthly expenses.

24.     All Documents and Communications concerning any claims You have or have had against Reeves Law, P.C.  For the avoidance of doubt, this Request includes all claims, whether or not You have filed a lawsuit against or made a demand for Payment from Reeves Law, P.C.

25.     All Documents and Communications concerning receivables, commissions, Payments, or Income You have received from Mountain Way.

26.     All Documents and Communications concerning Your access to any helicopter service, including Documents sufficient to identify the Person providing You with access to a helicopter service.

27.     Documents and Communications sufficient to identify all Firearms You own or have owned, or that are in Your possession, custody, or control.

28.     All Documents and Communications concerning any contracts or agreements between You and Public Storage, and Documents sufficient to identify all Assets stored at Public Storage locations and the value of those Assets.



31.     All Documents and Communications between You and Take it Media Inc. concerning the ownership and formation of Take it Media Inc.

32.     All Documents and Communications between You and Take it Media Inc. concerning the Transfer of any Assets between the Debtor and Take it Media Inc.

33.     All Documents and Communications between You and JEDKH LLC concerning the ownership and formation of JEDKH LLC.

34.     All Documents and Communications between You and JEDKH LLC concerning the Transfer of any Assets between the Debtor and JEDKH LLC.

35.     All Documents and Communications between You and Free Creek Media Inc. concerning the ownership and formation of Free Creek Media Inc.

36.     All Documents and Communications between You and Free Creek Media Inc. concerning the Transfer of any Assets between the Debtor and Free Creek Media Inc.

37.     All Documents and Communications between You and Vallum Holdings LLC concerning the ownership and formation of Vallum Holdings LLC.

38.     All Documents and Communications between You and Vallum Holdings LLC. concerning the Transfer of any Assets between the Debtor and Vallum Holdings LLC.

39.     All Documents and Communications between You or Free Speech Systems, LLC and any entities controlled by any Family Members or current or former employees of Yours or Free Speech Systems, LLC including, but not limited to, the following entities:

     a.   Ascendant Health Labs LLC;

     b.   BellaMac LLC;

     c.   Bio Pros;

     d.   Blue Asension Logistics LLC;

     e.   CGS Partners LLC;

     f.   DJN Health Lab LLC;

     g.   Dr. Jones Naturals;

     h.   Dr. Sonny's LLC;

     i.   Free Creek Media Inc.;

     j.   JEDKH LLC;

     k.   MRJR Holdings Limited LLC;

     l.   Practitioners Products LLC;

     m.   Rex Jones Enterprises LLC;

     n.   Take Free Media Inc.;

     o.   Take it Media Inc.;

     p.   Vallum Holdings LLC; and

     q.   Verboten LLC.

40.     All Documents and Communications concerning Your or Free Speech Systems, LLC's relationship with any entities controlled by any Family Members or current or former employees of Yours or Free Speech Systems, LLC including, but not limited to, the following entities:

      a.   Ascendant Health Labs LLC;

      b.   BellaMac LLC;

      c.   Bio Pros;

      d.   Blue Asension Logistics LLC;

      e.   CGS Partners LLC;

      f.   DJN Health Lab LLC;

      g.   Dr. Jones Naturals;

      h.   Dr. Sonny's LLC;

      i.   Free Creek Media Inc.;

      j.   JEDKH LLC;

      k.   MRJR Holdings Limited LLC;

      l.   Practitioners Products LLC;

      m.   Rex Jones Enterprises LLC;

      n.   Take Free Media Inc.;

      o.   Take it Media Inc.;

      p.   Vallum Holdings LLC; and

      q.   Verboten LLC.

41.     Documents sufficient to identify any Person(s) who handle Your personal finances, including accountants, tax advisors, other finance Professionals, personal assistants, secretaries, household assistants, nannies, or other Professionals.

***Debtor & Debtor Related Entity Requests***

42.     Documents sufficient to identify any entity in which You have had a legal, equitable, beneficial, contingent, or pecuniary interest since January 1, 2013.

43.     All Documents and Communications that You have received from any Debtor Related Entity as a member, manager, Affiliate, Professional, or Insider of that Debtor Related Entity concerning Assets, liabilities, Income, expenses, revenue, profits, any commercial agreement (formal or informal), or any other financial matter.

44.     All Documents and Communications produced by You or any Debtor Related Entity to any other party in any Prepetition Litigation.

45.     All articles of incorporation, LLC agreements, LLP agreements, founding Documents, organization Documents, organization charts, or other Corporate Records of any Debtor Related Entity.

46.     Documents sufficient to show each Asset of any Debtor Related Entity that is worth, individually or in the aggregate-in-kind, over $1,000; the location of each Asset; the custodian of each Asset or otherwise having possession or control of the Asset; and the value of each Asset, including any Asset the Debtor Related Entity owns directly or indirectly.

47.     All Documents and Communications concerning any Gift made directly or indirectly by any Debtor Related Entity, including Documents concerning the recipient of each Gift and the value of each Gift.

48.     All Documents and Communications concerning any Payment made directly or indirectly by any Debtor Related Entity, including Documents sufficient to identify the amount and recipient of each Payment, and the specific goods, services, or other Assets provided in exchange.

49.     Documents sufficient to identify all debts or other obligations owed to any Debtor Related Entity since January 1, 2013, including Documents concerning the identity of the debtors and the value of all debts.

50.     Documents sufficient to identify all contracts or agreements between any Debtor Related Entity and any Family Member, and all Documents and Communications concerning the negotiations of any such contracts or agreements.

51.     All agreements and contracts (a) between You and any Debtor Related Entity; or (b) which You entered into on behalf of any Debtor Related Entity.

52.     All consignment agreements entered into by You or by any Debtor Related Entity.

53.     All Documents and Communications concerning any Payments, transactions, dealings, Gifts, loans, investments, negotiations, donations, Transfers, or similar activity between You and any Debtor Related Entity.

54.     All Documents and Communications concerning the fees of any Professional of Yours, of any Debtor Related Entity, or of any Debtor Related Trust, or of any Professional benefiting You, any Debtor Related Entity, or any Debtor Related Trust.

55.     All Documents and Communications, including all Corporate Records, Financial Records, and Tax Documents, in Your possession, custody, or control, concerning You or any Debtor Related Entity.

56.     All Documents and Communications concerning the appointment or removal of any manager, member, director, or officer of any Debtor Related Entity.

57.     All Documents and Communications that You or any Debtor Related Entity have produced in any litigation in which You or any Debtor Related Entity was a party since January 1, 2013.

58.     All Documents and Communications that You or any Debtor Related Entity have produced or will produce to any party in the above captioned bankruptcy case, or the FSS Bankruptcy, including the subchapter V trustee, of the FSS Bankruptcy.

59.     All Documents and Communications concerning any Payments, transactions, dealings, Gifts, loans, investments, negotiations, donations, Transfers, or similar activity between You and any member, manager, officer, director, or owner of a Debtor Related Entity.

60.     All Documents and Communications concerning any Transfer for value of any Asset to or from You or any Debtor Related Entity since January 1, 2013, whether directly or indirectly, ***including but not limited to***:





61.     All Documents and Communications concerning any Account held in Your name or any Debtor Related Entity's name, or for which You or any Debtor Related Entity is a beneficiary or signatory, individually or jointly with any other Person(s).  For the avoidance of doubt, this Request includes, but is not limited to, Documents and Communications concerning the following topics:

    a.   Monthly and yearly Account statements;

    b.   Account-opening or Account-closing documentation;

    c.   Transfers involving any Accounts;

    d.   Addition, subtraction, or modification to Persons named on or having access to any Accounts;

    e.   The current balance of any Accounts; and

    f.   Changes of address to any Accounts.

62.     All Documents and Communications concerning any safe deposit boxes containing any of Your Assets, or safe deposit boxes to which You have access or that contain Assets in which You hold an interest.

63.     All Documents and Communications concerning any Certificates of Deposit purchased in Your name or any Debtor Related Entity's name, belonging to You or any Debtor

Related Entity, under Your control or any Debtor Related Entity's control, or in which You or a Debtor Related Entity has a legal, equitable, possessory, contingent, or pecuniary interest, including Documents and Communications sufficient to identify the value of any such Certificate of Deposit.

64.     All Documents and Communications concerning any Account held in Your name or any Debtor Related Entity's name, or for which You or any Debtor Related Entity is a signatory, individually or jointly with any other Person(s) (including You or any Person with which You are Affiliated), with respect to any Debit Card, Credit Card, Charge Card, ATM activity, or mobile-deposit information associated with any Account.

65.     All records, reports, or other Documents produced utilizing QuickBooks or similar accounting software used by or for You or any Debtor Related Entity.

66.     All Documents and Communications concerning any Credit Reports of Yours or any Debtor Related Entity from any Credit Reporting Agency.

67.     All Documents and Communications concerning any Negotiable Instrument or Promissory Note written, signed, or presented by or against You or any Debtor Related Entity whether cancelled or voided, and regardless of any personal or real defense that could be asserted against such instrument and regardless of whether the holder of such instrument is a holder in due course.

68.     All Documents and Communications concerning any Currency Transaction Report filed by any bank or financial institution concerning You or any Debtor Related Entity, including copies of any Currency Transaction Reports in Your possession, custody, or control.

69.     All Documents and Communications concerning any Cryptocurrency Wallets belonging to, controlled by, or benefitting You or any Debtor Related Entity at any point in time

and the value of the Assets held therein, including Documents and Communications concerning any Accounts held or controlled by You or any Debtor Related Entity with any Cryptocurrency brokerage firms or clearinghouses, including the value of the Assets therein on an Asset by Asset basis.  The scope of this Request is not limited in time.

70.     Copies of any FinCEN Form 105 filed by You or on Your behalf concerning Your or any Debtor Related Entity's reporting of international transportation of currency or monetary instruments across United States borders.

71.     All Documents or Communications concerning Your or any Debtor Related Entity's purchase, sale, acquisition, disposition, Transfer or Payment of any Assets including, but not limited to fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, cash equivalents, Commodities, Commodities futures, precious metals, jewelry, watches, furniture, wine, art, Firearms, Domain Names, oil and gas leases, mineral rights, automobiles, watercraft, boats, and any other things exceeding $250 of value.

72.     Any wage statements or Documents or Communications concerning Income received by or provided to any Persons employed by or performing work for You, any Debtor Related Entity, or any Professional of Yours or any Debtor Related Entity, related to such employment or work for You, any Debtor Related Entity, or any Professional of Yours or any Debtor Related Entity.

73.     Any retirement or deferred benefits statements, summaries, or Documents reflecting the Payment of future Income received by or provided to any Persons employed by or performing work for You or any Debtor Related Entity related to such employment or work for You or any Debtor Related Entity.

74.     All Documents and Communications concerning any Real Property of Yours or any Debtor Related Entity, including copies of any deeds to Real Property listed in Your or any Debtor Related Entity's name and any Mortgage Documents of Yours or any Debtor Related Entity.  The scope of this Request is from January 1, 2013, to the present.

75.     All Documents and Communications concerning all appraisals of any Assets or Real Property owned by You, any Debtor Related Entity, any Debtor Related Trust, or any Family Member.

76.     Documents sufficient to identify all Domain Names owned by You, any Debtor Related Entity, any Debtor Related Trust, or any Family Member.

77.     Documents and Communications sufficient to identify all Persons from whom You or any Debtor Related Entity purchased Supplements or similar products.

78.     Documents sufficient to identify all purchases of, sales of, or negotiations concerning Supplements or similar products by You or any Debtor Related Entity.

79.     Documents sufficient to identify all Persons with whom You or any Debtor Related Entity has entered a formal or informal agreement regarding any item to be sold, promoted, or advertised by You or any Debtor Related Entity and all contracts or agreements with such Persons.

80.     All Documents and Communications concerning any annuities or insurance policies purchased by You or any Debtor Related Entity or under which You or any Debtor Related Entity is a beneficiary including, but not limited to, life insurance policies; medical insurance policies; insurance policies for Assets with a fair market value of over $1,000; insurance policies related to any Commodities; homeowner's insurance policies; car insurance policies; directors and officers, errors and omissions, or management liability policies; or similar insurance policies.

81.     All Documents and Communications concerning Your or any Debtor Related Entity's retention or destruction of Documents.

82.     All litigation hold notices provided or sent to You or any Debtor Related Entity.

83.     All Documents and Communications provided by any Debtor Related Entity to any accounting-related Professional.

84.     Documents sufficient to identify the intellectual property rights held by You or any Debtor Related Entity.

85.     All Documents and Communications concerning the value of any intellectual property held by You or any Debtor Related Entity.

86.     All Documents and Communications concerning the Transfer of any intellectual property from or to You or any Debtor Related Entity or Debtor Related Trust.

87.     All Tax Documents submitted to, sent to, demanded by, or produced to the IRS, or any other local, state, or national taxation authority worldwide, by any Debtor Related Entity or any entity in which You are or were an owner.  The scope of this Request is from January 1, 2013, to the present.

88.     All Documents and Communications concerning Your interest in and any Income received, directly or indirectly, from PLJR Holdings, LLC.

89.     All Documents and Communications concerning any change in Your direct or indirect ownership or beneficial interest in PLJR Holdings, LLC.

***Debtor Related Trust Requests***

90.     Documents sufficient to identify all Debtor Related Trusts, including trust agreements, declarations of trust, and other governing instruments, with all amendments and modifications thereto.

91.     All Documents and Communications concerning any Account held in the name of any Debtor Related Trust, or for which any Debtor Related Trust is a signatory, individually or jointly with any other Person(s), with respect to any Debit Card, Credit Card, Charge Card, ATM Activity, or mobile-deposit information associated with any Account.

92.     All Account statements for any Account held in the name of any Debtor Related Trust, or for which any Debtor Related Trust is a signatory, individually or jointly with any other Person(s).

93.     All records, reports, or other Documents produced utilizing QuickBooks or similar accounting software used by or for any Debtor Related Trust.

94.     All Documents and Communications concerning Your role or affiliation with any Debtor Related Trust including as a settlor, trustee, beneficiary, or donor.

95.     Documents sufficient to identify all present and former: (a) trustees of any Debtor Related Trust; (b) beneficiaries of any Debtor Related Trust; (c) donors of any Debtor Related Trust; (d) settlors of any Debtor Related Trust; and (e) in the case of trustees of any Debtor Related Trust that are private trust companies, the officers, directors, managers and owners of such private trust companies; and (f) the dates of each appointment and termination of tenure for each of the foregoing.

96.     All Documents and Communications concerning:

a.    The Missouri 779384 Trust;

b.    the RXXCTTGAA Trust

c.    the AEJ 2018 Trust;

d.    the Green Leaf Trust;

e.    the Hutton Cabin Trust; and

f.   the Alexander E. Jones Descendent and Beneficiary Trust, ███████████

███████████████████████████████████████████

███████████████████████.

97.    All Documents and Communications concerning (a) Charlotte Savings #1152; (b) Georgia Savings #1154; (c) and Rex Savings # 1156, including all Account-opening Documents and including Documents sufficient to identify all current and former owners of each Account, Your beneficial interest in each Account, any other current or former beneficiaries or co-signers to each Account, and the value and location of these Accounts.

98.    All Documents and Communications You made or received in Your role as settlor, trustee, beneficiary, or donor of any Debtor Related Trust.

99.    All Documents and Communications concerning any Income received in Your role as trustee of any Debtor Related Trust.

100.    All Documents and Communications concerning any distributions or interest from the Alexander E. Jones Descendent and Beneficiary Trust or any Debtor Related Trust.

101.    Documents sufficient to identify all Assets of all Debtor Related Trusts, and all Documents and Communications concerning any Asset identified.

102.    All contracts, agreements, restatements, articles of incorporation, formation Documents, governing Documents, letters of wishes, or similar Documents, and any amendments thereto of any Debtor Related Trust.

103.    All books and records of any Debtor Related Trust, including all board minutes and other board materials for all corporate trustees.

104.    All probate court or other court filings and Documents by or concerning any Debtor Related Trust, including any sealed Documents.

105.   All Documents sufficient to show current or prior Assets, liabilities, receivables, and payables of any Debtor Related Trust, including any and all accountings, judicial or non-judicial, formal or informal, by the trustees or any investment advisor (whether or not a fiduciary) of such Debtor Related Trust.

106.   All Asset valuations or net worth and cash reports concerning any Debtor Related Trust that have been furnished to any loan or mortgage lender.

107.   All Documents sufficient to identify any Transfers, including loans or loan agreements, (a) between You and any Debtor Related Trust, (b) between any Debtor Related Entity and any Debtor Related Trust, or (c) among You, any Debtor Related Trust, and any Debtor Related Entity.

108.   All Documents sufficient to identify (a) any distributions to or for the benefit of, or appointments in favor of, beneficiaries of any Debtor Related Trust, whether outright or in further trust (such as in a trust decanting), including tax distributions or satisfaction of withholding or any other tax liability of such beneficiaries, and (b) any requests for distributions, whether or not satisfied, including an explanation of the basis or reasons for the decision to make or refuse such distributions.

109.   All Tax Documents provided to You or submitted to the IRS, or any other local, state, or national taxation authority worldwide, by any Debtor Related Trust.  This Request includes all associated schedules and similar Documents filed with any state, local, federal, or foreign taxation authority and drafts thereof.  The scope of this Request is from January 1, 2013, to the present.