```
                  UNITED STATES BANKRUPTCY COURT
               SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                      .
IN RE:                                .  Case No. 22-33553
                                      .  Chapter 11
ALEXANDER E. JONES,                   .
                                      .  515 Rusk Street
                                      .  Houston, TX 77002
                   Debtor.            .
                                      .  Wednesday, March 8, 2023
. . . . . . . . . . . . . . . .       .  1:19 p.m.
```

```
     TRANSCRIPT OF EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF
   UNSECURED CREDITORS OF ALEXANDER E. JONES TO COMPEL DEBTOR TO
     FILE AMENDED SCHEDULES AND STATEMENTS IN COMPLIANCE WITH
                       11 U.S.C.§ 521 [189]
             BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                UNITED STATES BANKRUPTCY COURT JUDGE
```

TELEPHONIC APPEARANCES:

For the Debtor:

Crowe & Dunlevy, P.C.
By:  VICKIE L. DRIVER, ESQ.
2525 McKinnon Street, Suite 425
Dallas, TX 75201
(214) 420-2142

Jordan & Ortiz, P.C.
By:  SHELBY A. JORDAN, ESQ.
500 North Shoreline, Suite 900 N
Corpus Christi, TX 78401
(361) 884-5678

APPEARANCES CONTINUED.

Audio Operator:          Zilde Martinez, ECR

Transcription Company:   Access Transcripts, LLC
10110 Youngwood Lane
Fishers, IN 46048
(855) 873-2223
www.accesstranscripts.com

```
     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

```
TELEPHONIC APPEARANCES (Continued):


For the U.S. Trustee:        Office of the United States Trustee
                             By:  HA MINH NGUYEN, ESQ.
                                  JAYSON B. RUFF, ESQ.
                             515 Rusk Street, Suite 3516
                             Houston, TX 77002
                             (713) 718-4650

For the Official            Akin Gump Strauss Hauer & Feld LLP
Committee of Unsecured      By:  MARTY L. BRIMMAGE, ESQ.
Creditors:                  2300 North Field Street, Suite 1800
                            Dallas, TX 75201
                            (214) 969-2885


                            Akin Gump Strauss Hauer & Feld LLP
                            By:  SARA L. BRAUNER, ESQ.
                                 KATHERINE PORTER, ESQ.
                            One Bryant Park
                            Bank of America Tower
                            New York, NY 10036-6745
                            (212) 872-8027

For the Texas               Willkie Farr & Gallagher LLP
Plaintiffs:                 By:  JENNIFER JAYE HARDY, ESQ.
                            600 Travis Street, Suite 2310
                            Houston, TX 77002
                            (713) 510-1766

For the Connecticut         Cain & Skarnulis PLLC
Plaintiffs:                 By:  RYAN E. CHAPPLE, ESQ.
                            303 Colorado Street, Suite 2850
                            Austin, TX 78701
                            (512) 477-5000

Also Present:               KYLE KIMPLER, ESQ.

                            ALINOR STERLING, ESQ.
```

```
 1        (Proceedings commence at 1:17 p.m.)

 2              THE COURT:  Okay.  Good afternoon, everyone.  This is

 3   Judge Lopez.  Today is March the 8th.  I'm going to call the

 4   1:15 case, which is the case of Alex Jones.

 5              Let me take appearances in the courtroom and then

 6   I'll go on the phone.  Folks, the line is completely unmuted.

 7   I'm going to ask everyone to please take a look at your phone

 8   and place it on mute.  I'm going to try my best to keep the

 9   line unmuted.  We'll see how that goes.

10              MR. RUFF:  Good afternoon, Your Honor.  Jayson Ruff

11   and Ha Nguyen for the U.S. Trustee's office.

12              THE COURT:  Okay.  Good afternoon to both of you.

13              Ms. Driver, I see you there.  Good afternoon.

14              MS. DRIVER:  Good afternoon, Your Honor.  Vickie

15   Driver here with Crowe & Dunlevy on behalf of Mr. Jones.

16              THE COURT:  Okay.  I see various members of the

17   Committee.  Let me go ahead and take an appearance from the

18   Committee.

19              MS. BRAUNER:  Good afternoon, Your Honor.  Sara

20   Brauner of Akin Gump on behalf of the Committee and with me is

21   my partner, Katherine Porter.

22              THE COURT:  Okay.  Good afternoon.  Alrighty.

23              MS. PORTER:  Good afternoon.

24              MR. BRIMMAGE:  Good afternoon, Your Honor.  Marty

25   Brimmage with Akin Gump here, also on behalf of the Committee.
```

1  Good afternoon.

2          THE COURT:  Good afternoon.  Okay, Ms. Hardy, I see

3  you there.  Good afternoon.

4          MS. HARDY:  Good afternoon, Your Honor.  Jennifer

5  Hardy of Wilkie Farr on behalf of the Texas plaintiffs.

6          THE COURT:  Okay.  Mr. Chapple, I see you there.

7  Good afternoon.  Do you wish to make an appearance?

8          MR. CHAPPLE:  Good afternoon, Your Honor.  Ryan

9  Chapple on behalf of the Connecticut plaintiffs, and I also

10  have Mr. Kyle Kimpler and Ms. Alinor Sterling as well.

11          THE COURT:  Okay, good to see both of you.  Good

12  afternoon.

13          Mr. Jordan, good afternoon.  Mr. Jordan, we can't

14  hear you.  I was just giving you the option, not a requirement.

15          MR. JORDAN:  Okay.  There we go.  I'm sorry, Judge.

16          THE COURT:  No worries.

17          MR. JORDAN:  Apologize.  Shelby Jordan, co-counsel

18  for Alex Jones.

19          THE COURT:  Okay.  It's not required to -- anyone

20  else wish to make an appearance for purposes of this hearing?

21          Okay.  Let me -- the Committee, I should say we're

22  here on an emergency motion of the Committee to compel the

23  filing of amended schedules and statements.  So it was filed up

24  by the Committee.  So I will turn things over to the Committee.

25          MS. PORTER:  Thank you, Your Honor.  This is

1  Katherine Porter.  I will be appearing for the Committee on --

2  in respect of this motion.

3           THE COURT:  Okay.

4           MS. PORTER:  The motion is largely consensual, and no

5  opposition has been filed, but I would request the opportunity

6  to address the Court briefly as we believe that the relief that

7  is requested in the motion is of great importance to creditors

8  in this case.

9           THE COURT:  Okay.

10          MS. PORTER:  May I proceed?

11          THE COURT:  Please.

12          MS. PORTER:  Thank you, Your Honor.  By the motion,

13  the Committee requests that the Court enter an order fixing a

14  deadline of March 24 of this year for Mr. Jones to file amended

15  statements and schedules that are both complete and accurate.

16  And to the extent that any information remains incomplete in

17  such amended schedules and statements, requiring that the

18  amended schedules and statements include a declaration for any

19  information that remains incomplete, with a reasonable

20  description of the efforts to obtain the relevant information

21  and the reason that the information or value cannot be

22  ascertained or estimated.

23          We seek this relief at this juncture in the case

24  because the Committee believes that it is necessary for the

25  Court to set clear and unambiguous deadlines for Mr. Jones to

1   file complete and accurate schedules and statements, and to

2   establish procedures designed to ensure that the disclosures

3   comply with the applicable rules.

4         The Committee has been concerned for some time about

5   the need for threshold financial disclosures from Mr. Jones and

6   the lack of meaningful progress in the case as a consequence of

7   the lack of such disclosures to date.  Mr. Jones chose to

8   commence this bankruptcy process, and if he wishes to avail

9   himself of the benefits and protections that are afforded by

10  bankruptcy, the Committee contends that he must also meet the

11  burdens that are required by Chapter 11, and those duties

12  include the obligation to prepare complete and accurate

13  schedules and statements.  As set forth in our motion, and as

14  this Court is well aware, the duty of the debtor to make

15  complete financial disclosures at the outset of the case is

16  crucial to the proper functioning of the bankruptcy case, and

17  creditors necessarily rely on the information contained in

18  these disclosures.

19        Mr. Jones has twice requested extensions for the

20  deadline to file his schedules and statements, which the Court

21  granted.  And the Court ultimately set the extended deadline to

22  February 14, which was a date that Mr. Jones' advisors

23  indicated at that time would allow sufficient time to prepare

24  the disclosure, not to start to prepare them.  The Committee

25  did not object to the extensions at the time that they were

1   requested, although the Committee did have concerns and

2   ultimately did submit a statement and reservation of rights,

3   expressing its concerns about the need for complete and

4   accurate disclosures and about the inevitable delays in the

5   case that would result from extensions.

6           Unfortunately, despite the extensions, the schedules

7   and statements that were filed on February 14th are facially

8   deficient.  I believe this point is not in dispute.  The

9   Committee corresponded with the debtor about the need for

10  amended disclosures in advance of the filing of its motion, and

11  the debtor conceded that the schedules and statements require

12  substantial amendment and also indicated that the amendment

13  could be prepared by the March 20th -- by March 24th.

14          That was the timeline that the Committee believes was

15  longer than was really appropriate, but that is the relief that

16  we request in the motion out of deference to the debtor's

17  counsel's request that the amended schedules and statements be

18  due on that date.  The Committee understands that the debtor's

19  amendments are already underway, and is hopeful that the next

20  round of disclosures will be complete.  Nevertheless, at this

21  stage in the case, we believe that it is critical that such

22  amendments be subject to clear deadlines and subject to clear

23  rules to facilitate complete and accurate disclosures.  The

24  relief that is requested in the motion is designed to ensure

25  that the amended disclosures are not deficient, or, if they

1  are, which again, we hope they won't be, to illuminate the

2  reason for such deficiencies.

3          Since we filed this motion, we have corresponded with

4  the debtor's counsel who expressed some concern about the

5  declarations requested in the motion, and we invited counsel to

6  suggest some sort of modification or accommodation to the

7  relief requested in the motion, but we have not received any

8  response on that point.  To be clear, we are not requesting a

9  call log of every outreach effort or an unduly burdensome

10  declaration, but rather a reasonable explanation of efforts

11  that are undertaken to obtain any information that is not

12  ultimately disclosed in the amended schedules and statements.

13          Likewise, we don't intend to impose unreasonable

14  deadlines.  We would be willing to agree that the

15  disclosures -- that the declaration that we ask for in

16  connection with the disclosures be delayed by a few days if

17  that would be -- if that would help counsel to the debtor to

18  prepare the declarations.  And again, we offer this

19  modification to Mr. Jones' counsel last week, but we have not

20  received a response.

21          But ultimately, our view is that the concept of a

22  declaration describing efforts to complete the disclosures to

23  the extent that the amended disclosures remain incomplete, is

24  essential at this juncture.  And we believe that such a

25  requirement may prove to be the keystone to distinguish the

1  forthcoming amended schedules and statements from the

2  February 14 disclosures that (audio interference) themselves

3  submitted on a timeframe that had been agreed to by the debtor

4  and ordered by the Court, but which did not result in adequate

5  disclosures.

6          The case has now been pending for more than three

7  months.  And while some professionals have agreed to take on

8  this case on a pro bono basis or on a reduced fee basis, others

9  have not.  And it remains true that fees are mounting in two

10  parallel bankruptcy cases and that the cumulative fees are

11  eating into recoveries that should be available to the

12  Committee's constituency.  That's one of the many reasons why

13  the Committee believes that the delay in time is a serious

14  point of concern and that we cannot wait indefinitely for

15  threshold disclosures and for the case to begin in earnest.

16          So for the reasons set forth in our motion and in

17  these brief remarks, we would request that the Court grant the

18  Committee's motion and enter the proposed order at Docket

19  Number 189-1.  I'd be happy to answer any questions the Court

20  may have.

21          THE COURT:  I have no questions.  Thank you very

22  much.

23          MS. PORTER:  Thank you.

24          THE COURT:  Let me hear from -- I'll start in the

25  courtroom.  Let me just hear from the United States Trustee.

1    Any thoughts?

2              MR. RUFF:  Well, just a couple of comments, Your

3    Honor.

4              THE COURT:  Okay.

5              MR. RUFF:  We don't oppose what is being sought here.

6    With that being said, however, it was a bit disheartening to

7    see what we did get filed as far as the schedules and what was

8    in there and what was not in there, and also the lack of

9    efforts taken to ascertain what the debtor has and to report

10   them on the schedules.

11             You know, we are -- it's the constituency of the

12   Unsecured Creditors Committee that is -- has the most to gain

13   or lose in these matters.  So we are, you know, deferring to

14   their desire to seek to compel.  But, you know, the Bankruptcy

15   Code and the Bankruptcy Rules and this Court's orders entered

16   already, already set forth deadlines for them to file complete

17   and accurate schedules.  So, like I said, it's a shame that

18   we're here given from where we've come from, and we're hoping

19   that, you know, that this will turn around.  We had to continue

20   the 341 hearing to the end of the month, so assuming that --

21             THE COURT:  End of this month?

22             MR. RUFF:  What's that?

23             THE COURT:  The end of this month?

24             MR. RUFF:  The end of this month.

25             THE COURT:  Okay.

1            MR. RUFF:  March 30th, Your Honor.  And assuming that

2    the schedules are amended by -- as intended by the March 24th

3    date, that will still allow parties-in-interest, you know, a

4    fair amount of time to be able to review them.  So as far as

5    the time frame, I think it works.  But I just wanted to express

6    at least our view that it is disappointing that we're even at

7    this point, quite frankly, given everything that's been said in

8    this case, the importance, the known importance of these

9    disclosures, which are important, not only in this case, but in

10   every bankruptcy case.  That is the bargain.  You get to get

11   your fresh start and you get relief under the Bankruptcy Code.

12   But you have to disclose, and you have to make a good faith

13   effort to disclose.  And, you know, the efforts that were made,

14   at least in my opinion, humble opinion, were just not there,

15   Your Honor.

16            THE COURT:  Okay.  Thank you.  Anyone else wish to be

17   heard?

18            MR. KIMPLER:  Your Honor, it's -- it's Kyle Kimpler

19   on behalf of the Connecticut plaintiffs.  May I be heard?

20            THE COURT:  Absolutely, Mr. Kimpler.  Good afternoon.

21            MR. KIMPLER:  So -- thank you.  So just to give you

22   the perspective of my clients; again, these are the Sandy Hook

23   families that had brought suit in Connecticut and have about

24   $1.4 billion of judgments against the debtor.  I'd echo what we

25   just heard from the U.S. Trustee.  We're extremely

1    disappointed.

2            I just want to give one example of that.  The debtor

3    listed eight different trusts that he has an interest in, but

4    the value of those trusts was listed as unknown.  One of those

5    trusts, called the Missouri Trust; the debtor is the settlor of

6    that trust.  The debtor is the beneficiary of that trust.  The

7    debtor's father is the trustee of that trust.  That trust has

8    paid very recently, a million plus dollars for retention

9    payments to the debtor's professionals.

10           From my clients' perspective, the notion that the

11   value of that trust is not known and was not known three weeks

12   ago, is pretty hard to believe.  My clients are not surprised.

13   We've been litigating with the debtor for now five years.  He's

14   never complied with discovery obligations.  He actively says to

15   his audience that they should make donations to him so that

16   those funds can be used to seek delays through legal

17   proceedings.  So this is not a surprise to us.  We've seen this

18   movie before.

19           At some point, enough has to be enough.  I hope we

20   don't have to be back here, Your Honor, on another extension or

21   similar motion, but at some point, you know, I think my clients

22   would say that there are going to need to be greater

23   consequences, but I'm hoping that that day will not come.

24           Your Honor, unless you have any questions, that's all

25   we wanted to say on this.

```
 1            THE COURT:  No, thank you very much.  Anyone else?
 2            MS. DRIVER:  Your Honor, I know you want to hear from
 3   everyone else first, so I just want to make sure I'm not
 4   jumping in line of any other counsel for the same -- Sandy
 5   Hook, who wishes to speak.
 6            THE COURT:  No, no, no.  I'm just going --
 7            MS. DRIVER:  -- who wishes to speak.
 8            THE COURT:  No one's walking up to the podium, so I
 9   can't go in order, so I'm just -- if anyone wishes to be heard?
10            MS. DRIVER:  No, I think everybody was -- I mean, I
11   think everyone on the phone is on -- in support of this motion.
12   We certainly were before we filed it.  Sandy Hook has seven
13   attorneys on the line.  I want to make sure that all their
14   seven have a chance to speak before I do.
15            THE COURT:  No.  You can speak.  Why don't you go?
16   Because I need to hear from you.
17            MS. DRIVER:  Oh, thank you, Your Honor.  I appreciate
18   that.  Thank you, Your Honor.
19            The schedules that we filed -- we worked from the
20   moment that they -- we have been working since the moment this
21   case was filed to get those completed.  This is the most
22   disorganized financial case I have ever encountered, and I
23   believe that I've heard the same for Mr. Schwiser (phonetic)
24   and Mr. Kessler, who've been doing this twice as long.  And so
25   it has been incredibly complicated.
```

1          One of the things that I would like to say is that

2    for an unopposed notion, this is the most I've ever heard, and

3    quite frankly, I've never been shamed by the U.S. Trustee's

4    office on a public hearing, but I am shamed, and I hear it.

5    What I would like to say is that my office lost an associate.

6    There is a spring break coming up, and there were just multiple

7    hurdles to cross.  We have been undergoing what I would

8    consider a yeoman's effort.  If you look at our fee statements,

9    and you accept that we're not lying about our time, you know

10   how much time we've been spending trying to do this.  So it is

11   very important for me to say to whoever's listening on this

12   line, and especially to Your Honor, that the efforts that we

13   have been undergoing are very, very robust in what is a very,

14   very complicated case.

15          What I can tell you also is that we have -- really

16   feel like we've broken through a couple of layers of

17   communication with third parties that had information.  And we

18   really do feel like we're drilling down on the matter.  But it

19   is just -- it's disheartening to me that we had to come on and

20   say a lot of the things that we've said here, that I'm sure

21   will be repeated in the media because I agreed to the relief

22   requested.

23          We had a very nice conversation where we agreed to

24   March 24th as the -- kind of the final amendment date.  And

25   while I did not see what sort of piece they wanted in an order

1  until it was filed, I understand they want a declaration and I

2  appreciate giving me a few days after the schedules are filed

3  to get that done.  We're dealing with a three-person team at

4  BlackBriar, and thankfully I've had a couple of associates from

5  our Oklahoma office that have just entered and are really

6  helping with the document review and production.

7        And just for the record, Your Honor, not -- we're not

8  just fully working on the schedules and statements, but we are

9  reviewing an ocean of documents to respond to what is over 106

10  requests for production that have been in draft form that have

11  been sent to us from the Committee, and we are attacking this

12  all at the same time.  And we also have a 2004 request that was

13  filed in front of Your Honor that we are working to respond to

14  by the end of this week.

15        Candidly, we have been effectively drowned and

16  overwhelmed by the multiple sets of lawyers for the same set of

17  plaintiffs.  And so it is, I -- like I said, I'm sufficiently

18  shamed.  I'm sufficiently admonished, and I believe that I'm

19  well aware of what the requirements are for the Bankruptcy

20  Code, and I am well aware of the fact that there are amendments

21  to make to these schedules.

22        As a matter of fact, what hasn't been told to Your

23  Honor, is that before the 341 meeting, the night before, I sent

24  a written statement of multiple amendments that we had

25  identified since the filing.  And that was sent out to the U.S.

1  Trustee and the Committee.  And so it -- I believe that our

2  efforts have been woefully underreported.  I believe that our

3  efforts have been in good faith, and it's just we have a client

4  in this situation that just has very little knowledge of his

5  financial background.

6         And so while it would be really nice just to go to

7  him and say, what do you own?  It is not appropriate for me to

8  rely on just what he says.  I am looking for secondhand support

9  for every fact in the scheduling statement because that is what

10 I believe is going to be required by the people who, as

11 Mr. Kimpler sufficiently said, never believe a word my client

12 says.

13        So we are undergoing what is a very, very detailed

14 analysis to get as much information as we can in these

15 schedules.  And it has taken longer than I anticipated.  But we

16 are absolutely here in good faith and absolutely admonishing

17 our client to do the same.

18        THE COURT:  Well, let me just say this, and I'm not

19 here to question anyone's efforts and their hard work.  I fully

20 understand folks have been working incredibly hard on the

21 schedules, and I'm speaking of you, Ms. Driver.  I don't

22 question that.  If you tell me you've been working hard, and

23 you've been working hard, we're still faced with the fact that

24 I have a Subchapter V case for an individual, right?  And the

25 case was filed in December -- on December 2nd.  Now we're

1   approaching a hundred days into a case, and we still don't have

2   kind of complete and accurate schedules and that's the dilemma

3   that we're faced with.  And --

4           MS. DRIVER:  It's not -- I'm sorry, Your Honor.  It's

5   not a Subchapter V.

6           THE COURT:  Just -- oh, excuse me, just the

7   individual case.  And I apologize.  I have to think about it.

8   We have to kind of figure out where we are in a -- and I got to

9   know if we have a case, and I keep saying that.  But we don't

10  have a case if there aren't accurate schedules.  And so we're

11  going to have -- I need to understand if the debtor is capable

12  of producing accurate schedules or not.

13          I gave an extra week extension at the time because I

14  wanted to make sure that there were complete and accurate

15  schedules.  I apologize.  I was confusing this with the FSS

16  case, which is related and put together.

17          But, you know, there's a Committee involved.  There

18  are numerous creditors involved.  The process demands

19  transparency.  The schedules are to be filed to the best of

20  one's ability.

21          So I'm going to grant the Committee's emergency

22  motion.  I'm going to find that emergency relief is

23  appropriate.  I do believe, despite it being uncontested, I

24  appreciate the comments from the Committee because I needed to

25  understand, and I've got to find that there's an actual need

1    for an emergency hearing and the basis for the relief

2    requested.  So I think the Committee had to do their job and

3    present a statement to the Court that I can then rely on as to

4    why the specific relief was requested and why certain relief

5    was requested in the proposed order.

6              I'm going to make two tweaks to the order, and I'm

7    going to tell everyone why.  I'm going to extend the deadline

8    to March 30th.  I know you got a 341.  Well, no -- yeah.  I'm

9    going to extend it to March 30th, because you told me you got a

10   341 at March --   I'm going to extend it to March 30th at noon.

11   Okay.  I'm going to give you as much time as possible.

12             I will note, Ms. Driver, that in every time this

13   debtor has asked for help, an application was filed, and I held

14   that hearing as soon as I could, and relief has been granted.

15   I'm also going to delete the paragraph requiring the

16   declaration, and I'm telling you why.  And I want the Committee

17   to understand why, because if the -- and I mean this, and I

18   want the Committee, and I want professionals to really

19   understand what I'm saying.

20             This is not an opportunity to, I should say, take

21   advantage of the situation.  But the reality is if we still

22   have incomplete schedules that are clearly not complete, I need

23   to hold a hearing, and I need BlackBriar to come in here, and I

24   need the debtor to come in here, and we need to have an in-

25   person hearing, where I can understand where we are, the

1  efforts that have been taken, and where this case goes.

2          So I don't -- I'd rather you spend your time making

3  sure that there are complete and accurate schedules.  And I

4  will tell everyone, I'd rather not hold the hearing, and I

5  don't want to rely on declarations as to whether there's -- I

6  think the debtor's going to have to come in, and we need to

7  have a conversation, and I need to hear from the debtor, and I

8  need to hear from BlackBriar.  I need to hear from the tax

9  advisor.  I need to hear from anyone who can tell me where the

10  deficiencies are in the efforts that have been taken so that

11  there's complete transparency in the process.

12          And I would do this in any Chapter 11 case in which,

13  you know, we were approaching four months and schedules had not

14  been on file.  I think we need to know what's really going on,

15  and I know everyone's working hard.  I need to now understand

16  more detail, and I hope we don't have to have the hearing.  I

17  hope the schedules are on file, and we can take things up in

18  the ordinary course, other matters, and proceed with the

19  Chapter 11 case.

20          But that's where we're going.  I don't want -- in

21  other words, my concern is that the schedules get filed and

22  there's a declaration and then you know, there would be

23  questions raised about the declaration.  Let's just bypass all

24  of that.

25          If there are incomplete schedules, the debtor will

1   know, and I'll schedule a hearing, and we'll have a hearing,

2   and we can all come in person and have a conversation about

3   kind of where things are.  And again, this is not to -- the

4   purpose of the hearing will be solely to understand the efforts

5   that have been taken in connection with the schedules, what --

6   any issues that remain outstanding.  It's going to be a serious

7   hearing if we have to have it, and I'm hoping to avoid it.  But

8   if we have to have it, we'll have it, and we'll do it in short

9   order.

10          So -- but I want the process to play out.  I want

11  schedules on file.  I want you to have a 341 hearing.

12  Obviously I'm not involved in that.  I don't know what goes on

13  in 341 meetings or listen to them.  But I'll be able to look at

14  the schedules myself, and I'll know if there's a real need for

15  a hearing, and I may have questions myself.

16          So, Ms. Driver, if you need additional help, file an

17  application and get the help.  But, you know, we can't go six

18  months in.  You know, this can't drag into five, six months

19  into a case without an individual that are not having filed

20  their schedules.  There has to be a point at which the case

21  must be able to proceed, but there's too much triggered off of

22  the filing of schedules and statements and accurate schedules

23  and statements.

24          But I do understand how serious they are.  They're

25  filed under penalty of perjury.  So I understand the need for

1   accuracy, and I respect that.  I think what I'm doing is trying

2   to balance the interests of the Committee, the transparency

3   that the process requires, and as well, giving the debtor every

4   opportunity to file complete and accurate schedules and

5   statements.

6           So I made those tweaks.  I hope the Committee's okay

7   with them, but I think -- I think it's necessary, so I can make

8   the changes.  I'm just adding two days and striking one

9   paragraph.  But everyone knows, if we still have a bunch of

10  unknowns, and Ms. Driver, that's not to say that you can't file

11  declarations, right?  You certainly can.  I'm just not going to

12  order you to do it.  I'd rather you spend your time not

13  preparing declarations, but knowing that there could be a

14  hearing coming afterwards.  So I'd rather you spend every

15  moment and BlackBriar, encouraging complete and accurate

16  disclosure because that's what the process requires.

17          Ms. Brauner, are you okay with that?

18          MS. PORTER:  Thank you, Your Honor.  This is

19  Katherine Porter.

20          THE COURT:  Oh, Ms. Porter.

21          MS. PORTER:  Thank you for granting the motion, and

22  we are -- we accept the changes.

23          THE COURT:  Okay.

24          MS. PORTER:  Thank you.

25          THE COURT:  Okay.  Ms. Driver, are you okay with

1    that?

2             Ms. Porter, I apologize.  You know, I -- you get into

3    reading boxes.  One of the problems with virtual hearings is

4    you start reading boxes, and you have a name in your head, but

5    then you read the box, and I apologize.  I know you were

6    conducting the hearing.

7             MS. PORTER:  It was very misleading.

8             Ms. Driver, are you okay with that?

9             MS. DRIVER:  Yes.

10            THE COURT:  Okay.

11            MS. DRIVER:  Yes, Your Honor.

12            THE COURT:  Okay.

13            MS. DRIVER:  Can you hear me?

14            THE COURT:  Just fine.  Thank you very much.

15   Anything else we need to talk about today?

16            MS. DRIVER:  Ms. Porter, I didn't know if we wanted

17   to just note for the record that one other thing that we've

18   been working on, and we've had just a great working

19   relationship with the party, is trying to work through the

20   motion for relief from stay that was filed on behalf of some of

21   the Texas plaintiffs.  I think we are moving -- we just wanted

22   to alert the Court that we are moving towards and through a

23   potential resolution.  And we will alert Your Honor if we

24   receive one so that you can have that time back on your

25   calendar.

1          THE COURT:  Okay.  Not a problem.  And everyone

2   knows, just email Ms. Saldana, and she'll get you a hearing

3   date for that and we can talk about it.  Okay?

4          Anything else we need to talk about today?  I'll get

5   this signed and on the docket.  Thanks, everyone.  Have a good

6   day.

7          MS. PORTER:  Thank you, Your Honor.

8          MS. DRIVER:  Thank you, Your Honor.

9          MS. BRAUNER:  Thank you.

10      (Proceedings concluded at 1:45 p.m.)

11                      * * * * *

12

13

14            **C E R T I F I C A T I O N**

15

16          I, Alicia Jarrett, court-approved transcriber, hereby

17   certify that the foregoing is a correct transcript from the

18   official electronic sound recording of the proceedings in the

19   above-entitled matter.

20

21

22

23   _____

24   ALICIA JARRETT, AAERT NO. 428      DATE: March 24, 2023

25   ACCESS TRANSCRIPTS, LLC