**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ALEXANDER E. JONES, | ) | Case No. 22-33553 (CML) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**NOTICE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
BANKRUPTCY RULE 2004 EXAMINATION OF ERIKA WULFF JONES**

Please take notice that, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 2004-1 of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), Erika Wulff Jones is commanded to produce documents and electronically stored information ("ESI"), and respond to the requests for production (the "Requests"), identified in the attached **Exhibit A** to the undersigned counsel for the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 case of debtor Alexander E. Jones (the "Debtor" and such case, the "Chapter 11 Case") on or before **May 19, 2023, at 5:00 p.m. CDT**.

Please take further notice that the Committee reserves its rights under title 11 of the United States Code (the "Bankruptcy Code"), the Bankruptcy Rules, the Local Rules, and any applicable law regarding the subject matter of this Notice, and to amend, supplement, and/or modify Exhibit A attached hereto in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable law.

Dated: April 25, 2023

Respectfully submitted,

By: */s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr.
Texas Bar No. 00793386
Lacy M. Lawrence
Texas Bar No. 24055913
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: mbrimmage@akingump.com
Email: llawrence@akingump.com

-*and*-

Ira S. Dizengoff (admitted *pro hac vice*)
David M. Zensky (admitted *pro hac vice*)
Philip C. Dublin (admitted *pro hac vice*)
Sara L. Brauner (admitted *pro hac vice*)
Katherine Porter (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: idizengoff@akingump.com
Email: dzensky@akingump.com
Email: pdublin@akingump.com
Email: sbrauner@akingump.com
Email: kporter@akingump.com

***Counsel to the Official Committee of Unsecured Creditors of Alexander E. Jones***

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 2004-1, I hereby certify that counsel for the Committee conferred with counsel for Erika Wulff Jones on the Committee's Rule 2004 requests substantially in the form reflected in Exhibit A on April 3 and April 12, 2023.

*/s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.

## CERTIFICATE OF SERVICE

I certify that on April 25, 2023, a true and correct copy of the foregoing and the attached exhibit were served on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.

## EXHIBIT A

## DEFINITIONS

The following definitions apply to the Requests.  Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1.      The term "*2022 Appeal Trust*" shall refer to any entity by the name of (or similar to) the 2022 Appeal Trust.

2.      The term "*2022 FSS Litigation Settlement Trust*" shall refer to any entity by the name of (or similar to) the 2022 FSS Litigation Settlement Trust.

3.      The term "*A. Emric Productions, LLC*" shall refer to the entity named A. Emric Productions, LLC for which articles of organization were filed with the Texas Secretary of State on or about May 10, 2007.

4.      The term "*AEJ Austin Holdings LLC*" shall refer to the entity named AEJ Austin Holdings LLC for which articles of organization were filed with the Texas Secretary of State on or about September 24, 2018.

5.      The term "*AEJ Holdings, LLC*" shall refer to any entity by the name of (or similar to) AEJ Holdings, LLC.

6.      The term "*AEJ 2018 Trust*" shall refer to any entity by the name of (or similar to) the AEJ 2018 Trust.

7.      The term "*Account*" shall mean any arrangement or agreement by which one or more Persons accepts one or more Persons' Assets to hold on behalf of that Person, including but not limited to savings accounts, checking accounts, money market accounts, Certificate of Deposit accounts, brokerage accounts, currency accounts, Cryptocurrency accounts, Commodities, Commodities futures accounts, trust accounts, bailments, custodial agreements, safe deposit boxes,

arrangements or agreements by which Assets are stored, and any other accounts held with a financial institution. For the avoidance of doubt, this includes but is not limited to any Accounts on any of the Schedules.

8.      The term "*Affiliate*" or "*Affiliates*" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

9.      The term "*Agent*" shall mean any Person or entity and their Professionals acting for or on behalf of another Person or entity.

10.      The term "*Alex Jones Live*" shall refer to the business associated with the website https://alexjones.live.

11.      The term "*Alexander E Jones Descendent and Beneficiary Trust*" shall refer to any entity by the name of (or similar to) the Alexander E. Jones Descendent and Beneficiary Trust.

12.      The terms "*all*," "*any*," and "*each*" shall each be construed as encompassing any and all of these terms.

13.      The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications, or responses that might otherwise be construed to be outside of its scope.

14.      The term "*Ascendant Health Labs LLC*" shall refer to any entity by the name of (or similar to) Ascendant Health Labs LLC.

15.      The term "*Assets*" shall mean both real assets and intangible assets, including Real Property (whether owned or leased), fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, cash equivalents, Commodities, Commodities futures, precious

metals, jewelry, watches, furniture, wine, art, Firearms, Domain Names, oil and gas leases, mineral

rights, automobiles, watercraft, boats, helicopters, and any other thing of value.

16.     The term "*ATM*" shall mean any automated teller machine or similar computer

system through which one can complete financial transactions.

17.     The term "*Austin Shiprock Publishing LLC*" shall refer to the entity named Austin

Shiprock Publishing LLC for which articles of organization were filed with the Texas Secretary of

State on or about April 4, 2012.

18.     The term "*BellaMac LLC*" shall refer to any entity by the name of (or similar to)

BellaMac LLC.

19.     The term "*Bio Pros*" shall refer to any entity by the name of (or similar to) Bio

Pros.

20.     The term "*Blue Asension Logistics LLC*" shall refer to the entity named Blue

Asension Logistics LLC for which articles of organization were filed with the Texas Secretary of

State on or about March 7, 2022.

21.     The term "*Certificate of Deposit*" shall mean any savings product offered by a bank

or financial institution that earns interest on a fixed sum for a fixed period of time.

22.     The term "*CGS Partners LLC*" shall refer to any entity by the name of (or similar

to) CGS Partners LLC.

23.     The term "*Charge Card*" shall mean any card, plate, or other single credit device

that may be used from time to time to obtain credit which is not subject to a finance charge.

24.     The term "*Commodities*" shall mean any tangible material that can be bought and

sold.  For the avoidance of doubt, this includes gold, silver, diamonds, platinum, palladium, and

other precious metals.  For the further avoidance of further doubt, this includes options, futures, and funds.

25.     The term "*Communication*" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages, chat messages, Instant Bloomberg chat messages, social media messages (e.g., Facebook, Twitter), WhatsApp chat messages, Signal app messages, Telegram app messages, GroupMe chat messages, or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

26.     The term "*concerning*" shall mean relating to (however remotely), referring to, describing, evidencing, or constituting.

27.     The term "*Corporate Records*" shall include articles of association, company bylaws, articles of incorporation, founding documents, partnership agreements, limited liability company agreements, management agreements, meeting minutes, board presentations, policies and resolutions, records of material transactions, approvals of material contracts, records of sale, purchase of real estate, annual reports, trust agreements, accounting, and any other Document concerning an entity's organization or material activities.

28.     The term "*Credit Card*" shall mean any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

29.     The term "*Credit Documents*" shall include any Documents concerning any application or request for an extension of credit of any kind including, but not limited to,

mortgages, personal loans, lines of credit, and credit cards.  For the avoidance of doubt, this includes, but is not limited to, the following types of Documents:  (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) residential rental Payment histories; (i) other Tax Documents; and (j) any other Document submitted in connection with an application for an extension of credit.

30.     The term "*Credit Report*" shall mean any Document prepared by a Credit Reporting Agency or other financial Professional evidencing the record of a borrower's credit history or used to evaluate the creditworthiness of a Person.

31.     The term "*Credit Reporting Agency*" shall mean any entity whose primary purpose is to maintain historical creditor information, and shall include Dun & Bradstreet Corporation, Equifax, Inc., Experian plc, and TransUnion.

32.     The term "*Cryptocurrency*" shall mean any digital currency that utilizes cryptography or similar technology to secure transactions that are digitally recorded on a distributed ledger, such as a blockchain or similar technology.

33.     The term "*Cryptocurrency Wallet*" shall mean any device, physical medium, program, app, service, or software that stores private keys for Cryptocurrency or Cryptocurrency transactions, whether encrypted or otherwise.

34.     The term "*Currency Transaction Report*" shall mean any report required to be filed pursuant to 31 CFR § 1010.311 or 31 CFR § 1021.311.

35.     The term "*David R. Jones, D.D.S., Inc.*" shall refer to the entity named David R. Jones, D.D.S., Inc. for which articles of organization were filed with the Texas Secretary of State on or about April 16, 1979.

36.     The term "***David R. Jones Family Limited Partnership***" shall refer to the entity named David R. Jones Family Limited Partnership for which articles of organization were filed with the Texas Secretary of State on or about November 21, 2008.

37.     The term "***Debit Card***" shall mean any card issued by a financial institution to a consumer for use in initiating an electronic fund Transfer from the Account of the consumer at such financial institution, for the purpose of Transferring money between Accounts or obtaining money, property, labor, or services.

38.     The terms "***Debtor***" or "***Jones***" shall mean the Person who filed a petition for chapter 11 relief in the case of *In re Alexander E. Jones*, No. 22-33553 (CML) (Bankr. S.D. Tex.) and who goes by the name of Alexander Jones, Alex Jones, Alexander E. Jones, Alex E. Jones, Alexander Emeric Jones, Alex Emeric Jones, or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor, and Professionals of the Debtor.

39.     The term "***Debtor Related Entity***" shall include the following Persons, each as defined herein:

      a.     A. Emric Productions, LLC;

      b.     AEJ Austin Holdings LLC;

      c.     AEJ Holdings LLC;

      d.     Alex Jones Live;

      e.     Austin Shiprock Publishing LLC;

      f.     David R. Jones, D.D.S., Inc.;

      g.     David R. Jones Family Limited Partnership;

      h.     Emric Productions LLC;

i.     Free Speech Systems, LLC;

j.     Guadalupe County Land and Water L.L.C.;

k.     InfoW, LLC;

l.     IWHealth, LLC;

m.     JLJR Holdings LLC;

n.     Jones Production;

o.     Jones Productions, LLC;

p.     Jones Report, LLC;

q.     LPTZ Holdings LLC;

r.     Magnolia Holdings, Limited Partnership;

s.     Magnolia Management, LLC;

t.     Planet Infowars, L.L.C.;

u.     PLJR Holdings LLC;

v.     PQPR Holdings Limited LLC;

w.     Prison Planet TV, LLC;

x.     RCGJ, LLC; and

y.     Any other entity directly or indirectly owned by the Debtor or for the

Debtor's benefit, including any Debtor Related Trust.

40.     The term "***Debtor Related Trust***" shall refer to any trust for which the Debtor or

any Debtor Related Entity is a beneficiary, settlor, donor, or trustee, including but not limited to

the Missouri 779384 Trust; the RXXCTTGAA Trust; the Alexander E. Jones Descendent and

Beneficiary Trust; the 2022 Appeal Trust; the 2022 FSS Litigation Settlement Trust; the AEJ 2018

Trust; the Green Leaf Trust; the Recharge Dynasty Trust; and the Hutton Cabin Trust; and shall

include any of their Affiliates, predecessors and successors in interest, and any of their former or current trustees, settlors, donors, beneficiaries, beneficial owners, Agents, advisors, attorneys, Professionals, or anyone else acting on their behalf.

41.     The term "***DJN Health Lab LLC***" shall refer to the entity named DJN Health Lab LLC for which articles of organization were filed with the Texas Secretary of State on or about December 26, 2018.

42.     The term "***Document***" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, and other data or data compilations.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets, and PowerPoint presentations.  A draft or non-identical copy is a separate document within the meaning of this term.

43.     The term "***Domain Name***" shall mean any sequence of alphanumeric characters that forms all or part of the corresponding internet addresses.

44.     The term "***Dr. Jones Naturals***" shall refer to any entity by the name of (or similar to) Dr. Jones Naturals.

45.     The term "***Dr. Sonny's LLC***" shall refer to any entity by the name of (or similar to) Dr. Sonny's LLC.

46.     The term "***Emric Productions LLC***" shall refer to any entity by the name of (or similar to) Emric Productions LLC.

47.     The term "***Family Member***" shall mean any of Jones's current or former spouses; any children of Jones; Jones's parents; and Jones's first-degree, second-degree, third-degree, and fourth-degree relatives.

48.     The term "***Financial Records***" shall include any Document or Communication that contains or summarizes information about any Person's or entity's financial activities or condition of the Debtor including, but not limited to, information about the Assets, balance sheets, budgets, cash flow, earnings, revenue, Gifts, Payments, Transfers in Assets or interests, Tax Documents, Credit Documents, Mortgage Documents, and books and records containing any of the above maintained in the ordinary course of business.

49.     The term "***FinCEN***" shall refer to the bureau of the United States Department of the Treasury named the Financial Crimes Enforcement Network.

50.     The term "***Firearm***" shall mean (a) any weapon, including any gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (b) the frame or receiver of any such weapon; (c) any firearm muffler or firearm silencer; or (d) any similar destructive device or weapon.

51.     The term "***Free Creek Media Inc.***" shall refer to the entity named Free Creek Media Inc., which was formed in Texas on or about December 23, 2019.

52.     The term "***Free Speech Systems, LLC***" shall refer to any entity by the name of (or similar to) Free Speech Systems, LLC.

53.     The term "***FSS Case***" shall mean the case captioned *In re Free Speech Systems, LLC*, Case No. 22-60043 (CML) (Bankr. S.D. Tex.).

54.     The term "***Gift***" shall mean any voluntary or involuntary Transfer of an Asset ***not*** made in exchange for any service, product, or other Asset.

55.      The term "*Green Leaf Trust*" shall refer to any entity by the name of (or similar to) Green Leaf Trust.

56.      The term "*Guadalupe County Land and Water L.L.C.*" shall refer to the entity by the name of Guadalupe County Land and Water L.L.C. for which articles of organization were filed with the Texas Secretary of State on or about March 7, 2022.

57.      The term "*Hutton Cabin Trust*" shall refer to any entity by the name of (or similar to) Hutton Cabin Trust.

58.      The term "*including*" shall mean "including, but not limited to."

59.      The term "*Income*" shall mean any compensation in exchange for goods or services, including fees, commissions, fringe benefits, and other similar items.

60.      The term "*InfoW, LLC*" shall refer to the entity named InfoW, LLC, formerly known as Infowars LLC, for which articles of formation were filed with the Texas Secretary of State on or about November 15, 2007.

61.      The term "*Insider*" shall have the meaning ascribed in 11 U.S.C. § 101(31).

62.      The term "*IRS*" shall refer to the Internal Revenue Service.

63.      The term "*IWHealth, LLC*" shall refer to the entity named IWHealth, LLC, formerly known as Infowars Health, LLC, for which articles of formation were filed with the Texas Secretary of State on or about May 24, 2012.

64.      The term "*JEDKH LLC*" shall refer to the entity named JEDKH LLC, which was formed in Texas on or about December 12, 2019.

65.      The term "*JLJR Holdings, LLC*," shall refer to the entity named JLJR Holdings, LLC for which articles of formation were filed with the Nevada Secretary of State on or about October 2, 2013, which was registered to do business in Texas on or about October 9, 2013.

66.     The term "***Jones Production***" shall refer to any entity by the name of (or similar to) Jones Production.

67.     The term "***Jones Productions, LLC***" shall refer to the entity by the name of Jones Productions, LLC for which articles of organization were filed with the Texas Secretary of State on or about November 14, 2007.

68.     The term "***Jones Report, LLC***" shall refer to the entity by the name of Jones Report, LLC for which articles of organization were filed with the Texas Secretary of State on or about November 15, 2007.

69.     The term "***LPTZ Holdings LLC***" shall refer to the entity named LPTZ Holdings LLC for which articles of organization were filed with the Texas Secretary of State on or about April 12, 2022.

70.     The term "***Magnolia Holdings, Limited Partnership***" shall refer to the entity named Magnolia Holdings, Limited Partnership for which articles of organization were filed with the Alaska Secretary of State on or about November 20, 2007.

71.     The term "***Magnolia Management, LLC***" shall refer to the entity named Magnolia Management, LLC for which articles of organization were filed with the Alaska Secretary of State on or about November 16, 2007.

72.     The term "***Missouri 779384 Trust***" shall refer to any entity by the name of (or similar to) the Missouri 779384 Trust.

73.     The term "***Mortgage Documents***" shall include any Documents concerning any application or request for a line of credit secured by a mortgage on any residential or commercial Real Property, including but not limited to:  (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters;

(g) Documents verifying creditworthiness; (h) copies of the purchase and sale agreement; (i) deeds of trust; (j) residential rental Payment histories; (k) other Tax Documents; and (*l*) any other Document submitted in connection with the above.

74. The term "***Mountain Way***" shall refer to the entity by the name of Mountain Way Marketing LLC.

75. The term "***MRJR Holdings Limited LLC***" shall refer to the entity named MRJR Holdings Limited, LLC for which articles of organization were filed with the Nevada Secretary of State on or about June 12, 2019.

76. The term "***Negotiable Instrument***" shall include any unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it (a) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (b) is payable on demand or at a definite time; and (c) does not state any other undertaking or instruction by the person promising or ordering Payment to do any act in addition to the Payment of money, and any similar instrument.

77. The term "***Payment***" shall mean any voluntary or involuntary Transfer in exchange for any service, product, or other Asset, whether previously provided, provided contemporaneously with the Transfer, or to be provided in the future, and whether or not such service, product, or other Asset was or will be provided to the Person making or causing the Payment to be made.

78. The term "***Person***" shall mean any natural person or any legal entity, unincorporated association, or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business, trust, governmental entity, or association.

79.     The term "*Planet Infowars, L.L.C.*" shall refer to the entity named Planet Infowars, L.L.C. for which articles of organization were filed with the Texas Secretary of State on or about April 4, 2012.

80.     The term "*PLJR Holdings, LLC*" shall refer to the entity named PLJR Holdings, LLC for which articles of organization were filed with the Nevada Secretary of State on or about October 2, 2012.

81.     The term "*PQPR Holdings Limited LLC*" shall refer to the entity named PQPR Holdings Limited LLC for which articles of incorporation were filed on or about October 2, 2013, which was registered to do business in Texas on or about October 9, 2013.

82.     The term "*Practitioners Products LLC*" shall refer to any entity by the name of (or similar to) Practitioners Products LLC.

83.     The term "*Prepetition Litigation*" shall mean any litigation commenced against the Debtor or any Debtor Related Entity before December 2, 2022.

84.     The term "*Prison Planet TV, LLC*" shall refer to the entity named Prison Planet TV, LLC for which articles of organization were filed with the Texas Secretary of State on or about November 15, 2007.

85.     The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, consultants (including independent consultants), independent contractors, advisors, and testifying or non-testifying experts.

86.     The term "*Promissory Note*" shall include any written Document that is or evidences a promise by one or more Persons to pay a debt to one or more Persons whether nontransferable or otherwise, and any similar Document.

87.     The term "***RCGJ, LLC***" shall refer to the entity named RCGJ, LLC for which articles of organization were filed with the Texas Secretary of State on or about March 17, 2016.

88.     The term "***Real Property***" shall have the meaning ascribed to the term in section 1.04(2) of the Texas Property Tax Code.

89.     The term "***Recharge Dynasty Trust***" shall refer to any entity by the name of (or similar to) Recharge Dynasty Trust.

90.     The term "***Rex Jones Enterprises LLC***" shall refer to any entity by the name of (or similar to) Rex Jones Enterprises LLC.

91.     The term "***RXXCTTGAA Trust***" shall refer to any entity by the name of (or similar to) the RXXCTTGAA Trust.

92.     The term "***QuickBooks***" shall mean any accounting software developed by Intuit Inc.

93.     The term "***Schedules***" shall refer to the Schedules filed by the Debtor in this chapter 11 case [ECF No. 161], and any amendments thereto, and the Schedules filed by Free Speech Systems, LLC in the FSS Case [FSS Case ECF No. 121], and any amendments thereto.

94.     The term "***Supplements***" shall mean any dietary, health, or wellness products, including, but not limited to, those currently or previously listed for sale by any entity in which the Debtor or any Debtor Related Entity holds a beneficial, legal, equitable, or pecuniary interest.

95.     The term "***Take Free Media Inc.***" shall refer to any entity by the name of (or similar to) Take Free Media Inc.

96.     The term "***Take it Media Inc.***" shall refer to the entity named Take it Media Inc., which was formed in Texas on or about February 2, 2022.

97.     The term "***Tax Documents***" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment, or information return, statement, or other Document relating to taxes, including any schedules or form or attachment thereto, whether prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an employer or employee, a tax preparer, a bank or financial institution, the IRS, or any other governmental authority.

98.     The term "***Transfer***" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)–(D), inclusive.

99.     The term "***Vallum Holdings LLC***" shall refer to the entity named Vallum Holdings LLC, which was formed in Nevada on or about November 21, 2019.

100.     The term "***Verboten LLC***" shall refer to any entity by the name of (or similar to) Verboten LLC.

101.     The terms "***You,***" "***Your,***" or "***Yours***" shall refer to Erika Wulff Jones as an individual; in her capacity as trustee, co-trustee, beneficiary, donor, or settlor of any Debtor Related Trust; in her capacity as manager, member, owner, employee, or consultant of any Debtor Related Entity; and in her capacity in any role in connection with the Debtor, any Debtor Related Trust, or any Debtor Related Entity.  This includes You:  (a) as an individual; (b) as trustee or co-trustee of the Missouri 779384 Trust; and (c) in any other capacity in which You have possession, custody, or control of Documents, Communications, or information called for or responsive to these Requests.

102.     The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

103.    Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, managers, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, trustees, fiduciaries, settlors, donors, beneficiaries, donors, or any other individual or entity acting or purporting to act on behalf of such Person.  In addition, the reference to any trust shall include any current or former trustees, or other fiduciaries, settlors, donors, and beneficiaries.

104.    The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

## <u>INSTRUCTIONS</u>

1.      These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules and the Local Rules.

2.      Each Request is continuing in nature.  If at any time additional Documents responsive to the Requests come into Your possession, custody, or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3.      You are requested to produce all Documents, Communications, and information requested herein that are within Your possession, custody, or control or in the possession, custody, or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, members, managers, trustees, or any other Person or entity acting or purporting to act on Your behalf.

4.      You are requested to produce Documents, Communications, and information requested herein on a rolling basis.

5.      If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify:  (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information, or belief You have concerning the unanswered portion of any such Request(s).

6.      All Documents shall be produced with metadata in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format.  ***All Documents shall be produced with metadata, including but not limited to the date and time***

***created/sent, author, recipients, cc-copies, bcc-blind copies, family member information, MD-5 hash, subject line and title, and whether the document contains redactions***.

7.      If the response to any Request consists, in whole or in part, of an objection on the basis of or including undue burdensomeness, then provide those documents that can be produced without undue burden.  For such documents that are too unduly burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved, and the estimated costs of the search.

8.      If You intend to withhold any responsive Document, Communication, or other information on the basis of a claim of attorney-client privilege, work product protection, or any other ground of non-disclosure, You shall identify such Document, Communication, or information in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc, addressor/from, Document type, and topic covered and listed with a statement of the grounds alleged for withholding such Document, Communication, or other information, including any privilege claimed.

9.      If Your response to any Request is any other objection, You must indicate if Documents are being withheld based on the objection(s), provide all Documents not covered by the objection, and state the specific basis of the objection.

10.      If any Document responsive to these Requests has been destroyed, lost, or discarded, state when the Document was destroyed, lost, or discarded; identify the Person who destroyed, lost, or discarded the Document; and, in the event the Document was destroyed or discarded, identify the Person who directed that it be destroyed or discarded.  Additionally, detail the reasons for the destruction, loss, or discarding; describe the nature of the Document; identify

the Persons who created, sent, received, or reviewed the Document; and state in as much detail as possible the contents of the Document.

11.     Subject to Instruction No. 6 above, Documents should be produced in the manner they are kept in the ordinary course of business.  In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

12.     All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

13.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

14.     Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied, or otherwise obtained from January 1, 2017, to the present.

15.     By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to amend, to modify, or otherwise to supplement these Requests.

## REQUESTS FOR PRODUCTION

1.      All Documents and Communications concerning any Assets or liabilities of the Debtor, Debtor Related Entities, or Debtor Related Trusts, including any appraisals.

2.      All Documents and Communications concerning any Accounts or Assets of, or on behalf of, You, the Debtor, any Debtor Related Entities, or any Debtor Related Trusts that are located in the Cayman Islands or any other non-U.S. location, or any trusts or entities in the Cayman Islands that are associated with the Debtor in any way.

3.      All Documents and Communications concerning any purchase, sale, acquisition, disposition, Transfer or Payment of any Assets for or on behalf of the Debtor or any Debtor Related Entity.

4.      All Documents and Communications between You and the Debtor or any other Person concerning any Asset planning or estate planning with respect to, or in consideration of any creditor's ability to reach, any Assets in which the Debtor has a legal, possessory, beneficial, equitable, pecuniary, or disputed interest.  The scope of this Request is from January 1, 2013, to present.

5.      All Documents and Communications concerning the Debtor's filing of his chapter 11 petition, including all Documents and Communications concerning the planning of the filing of his chapter 11 petition.

6.      All Documents and Communications concerning any Gift made directly or indirectly by the Debtor, or any Gift made directly or indirectly to the Debtor, including Documents concerning the recipient of each Gift, the giver of each Gift, and the value of each Gift.

7.      All Documents and Communications concerning any Payment made by the Debtor, any Debtor Related Entity, or any Debtor Related Trust, including Documents sufficient to identify

the payor, the amount and recipient of each Payment and the specific goods, services, or Assets provided in exchange.

8.      All Documents and Communications concerning debts and other obligations owed by or to the Debtor, and any Payments of principal or interest made on such debts.

9.      All Documents and Communications concerning the Debtor's affiliation or employment with Free Speech Systems, LLC including Documents and Communications concerning the preparation and negotiation of the Debtor's employment contracts.

10.     All Documents and Communications concerning any offers of employment, endorsement, or financial backing or support from any Person to the Debtor.

11.     Documents sufficient to identify any Person(s) who handle any of the Debtor's personal finances, including accountants, tax advisors, other finance Professionals, personal assistants, secretaries, household assistants, nannies, or other Professionals.

12.     Any premarital or postmarital agreement to which You are a party, and all Documents and Communications concerning any such premarital or postmarital agreements.

13.     Documents sufficient to identify any entity in which the Debtor has or has had a legal, equitable, beneficial, contingent, or pecuniary interest, and to identify any Person(s) who created or formed, or helped to create or form any such entities, and to identify the purpose of such entities.  The scope of this Request is not limited in time.

14.     All Documents and Communications concerning any entities that You created or formed, or helped create or form, for or on behalf of the Debtor, for the benefit of the Debtor, or at the direction of the Debtor, directly or indirectly, and to identify the purpose of such entities. The scope of this Request is not limited in time.

15.     All Documents and Communications concerning any entities or trusts formed for on behalf of any Family Member of the Debtor.

16.     All Documents and Communications concerning the creation or formation of any Debtor Related Entities or any Debtor Related Trusts.  The scope of this Request is not limited in time.

17.     All Documents and Communications concerning Assets, Transfers, liabilities, Income, expenses, revenue, profits, financial condition, or any commercial agreement (formal or informal), or any other financial matter related to the Debtor or to any Debtor Related Entity or any Debtor Related Trust.

18.     All Documents and Communications produced by You, the Debtor or any Debtor Related Entity to any other party in any Prepetition Litigation.

19.     All Documents and Communications that You or any Debtor Related Entity has produced or will produce to any party in the above-captioned bankruptcy case, or the FSS Case, including the subchapter V trustee, of the FSS Case.

20.     All Documents and Communications concerning any obligations, notes or security agreements with PQPR Holdings Limited LLC.

21.     All Documents and Communications with or concerning any entities controlled by the Debtor's Family Members, or current or former employees of the Debtor or Free Speech Systems, LLC including, but not limited to, the following entities:

     a.   Ascendant Health Labs LLC;

     b.   BellaMac LLC;

     c.   Bio Pros;

     d.   Blue Asension Logistics LLC;

e.  CGS Partners LLC;

f.  DJN Health Lab LLC;

g.  Dr. Jones Naturals;

h.  Dr. Sonny's LLC;

i.  Free Creek Media Inc.;

j.  JEDKH LLC;

k.  Mountain Way;

l.  MRJR Holdings Limited LLC;

m.  Practitioners Products LLC;

n.  Rex Jones Enterprises LLC;

o.  Take Free Media Inc.;

p.  Take it Media Inc.;

q.  Vallum Holdings LLC; and

r.  Verboten LLC.

22.    Documents sufficient to identify any Transfer of any Asset of the Debtor, Debtor Related Entity, or Debtor Related Trust to any of the entities listed in the prior Request, and any contracts or obligations with any of the entities listed in the prior Request.

23.    Documents sufficient to identify any Transfer of any Asset of the Debtor, Debtor Related Entity, or Debtor Related Trust to any Family Member of the Debtor, or to any entity or trust for the benefit of any Family Member of the Debtor.

24.    Documents sufficient to identify any entity that has received revenue derived directly or indirectly from (i) Jones, (ii) Free Speech Systems, LLC (iii) Infowars.com, (iv) Alex

Jones Live, (v) any entity created by or on behalf of any Family Member of Jones, (vi) any employee of Jones or Free Speech Systems, LLC or (vii) any Affiliate of any of the foregoing.

25.     Documents sufficient to identify any revenue received by Jones or any entity that he owns or controls, directly or indirectly, from (i) Free Speech Systems, LLC, (ii) Infowars.com, (iii) Alex Jones Live, (iv) any entity created by or on behalf of any Family Member of Jones, (v) any employee of Jones or Free Speech Systems, LLC, or (vi) any Affiliate of any of the foregoing.

26.     Documents sufficient to identify any money or thing of value that is owed to Jones or receivable derived directly or indirectly from (i) Free Speech Systems, LLC, (ii) Infowars.com, (iii) Alex Jones Live, (iv) any entity created by or on behalf of any Family Member of Jones, (v) any employee of Jones or Free Speech Systems, LLC or (vi) any Affiliate of any of the foregoing.

27.     Documents sufficient to identify any revenue received by any Family Member of Jones or entity for the benefit of any Family Member of Jones, directly or indirectly, from (i) Free Speech Systems, LLC, (ii) Infowars.com, (iii) Alex Jones Live, (iv) any entity created by or on behalf of any employee of Jones or Free Speech Systems, LLC, or (v) any Affiliate of any of the foregoing.

28.     All articles of incorporation, LLC agreements, LLP agreements, founding Documents, organization Documents, or organization charts, or other Corporate Records and Financial Records of any Debtor Related Entity or Debtor Related Trust.

29.     All board materials, meeting minutes, Financial Records, and Corporate Records for all Debtor Related Entities or Debtor Related Trusts.

30.     All audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity,

statements of retained earnings, and other financial statements or accounting reports, along with drafts, trial balances, and internal accounting work papers for any Debtor Related Entity.

31.      Documents sufficient to show each Asset (whether owned directly or indirectly) of the Debtor, any Debtor Related Entity, or any Debtor Related Trust that is worth, individually or in the aggregate-in-kind, over $250; the location of each Asset; the custodian of each Asset or otherwise having possession or control of the Asset; and the value of each Asset.

32.      All agreements and contracts with or concerning the Debtor.

33.      All consignment agreements entered into by the Debtor or by any Debtor Related Entity.

34.      All Documents and Communications concerning any Payments, transactions, dealings, Gifts, loans, investments, negotiations, donations, Transfers, or similar activity with or concerning the Debtor or a Debtor Related Entity or Debtor Related Trust.

35.      All Documents and Communications concerning the fees of any Professional of the Debtor, Debtor Related Entities, or Debtor Related Trusts, or of the fees of any Professional benefiting the Debtor, Debtor Related Entities, or Debtor Related Trusts.

36.      All Documents and Communications concerning any Account held in the name of the Debtor or any Debtor Related Entity or Debtor Related Trust, or for which the Debtor or any Debtor Related Entity or Debtor Related Trust is a signatory, individually or jointly with any other Person(s) (including You or any Person with which You are Affiliated), including but not limited to any Debit Card, Credit Card, Charge Card, ATM activity, or mobile-deposit information associated with any Account.

37.     For any Account held in the name of the Debtor or any Debtor Related Entity or Debtor Related Trust, or for which the Debtor or any Debtor Related Entity or Debtor Related Trust is a signatory, individually or jointly with any other Person(s):

    a.   All monthly and yearly Account statements;

    b.   All Account-opening or Account-closing documentation;

    c.   All Documents and Communications concerning any Transfers;

    d.   Addition, subtraction, or modification to Persons named on or having access to any Accounts;

    e.   The current balance of any Accounts; and

    f.   Changes of address to any Accounts.

38.     All Documents and Communications concerning any safe deposit boxes containing any of the Debtor's Assets, or safe deposit boxes to which the Debtor has access or which contain Assets in which the Debtor holds an interest.

39.     All Documents and Communications, including all Corporate Records, Financial Records, and Tax Documents, in Your possession, custody, or control, concerning the Debtor, any Debtor Related Entity, or any Debtor Related Trust.

40.     All Documents and Communications concerning the appointment or removal of any manager, member, director, or officer of any Debtor Related Entity.

41.     All Documents and Communications concerning any Certificates of Deposit in the name of the Debtor, any Debtor Related Entity or any Debtor Related Trust, belonging to the Debtor, any Debtor Related Entity or any Debtor Related Trust, under the control of the Debtor, any Debtor Related Entity or any Debtor Related Trust, or in which the Debtor or a Debtor Related Entity or Debtor Related Trust has a legal, equitable, possessory, contingent, or

pecuniary interest, including Documents and Communications sufficient to identify the value of any such Certificate of Deposit.

42.     All general ledgers and accounting statements related to the Debtor or any Debtor Related Entity or any Debtor Related Trust, including all records, reports, or other Documents produced utilizing QuickBooks or similar accounting software used by or for the Debtor or any Debtor Related Entity.

43.     All Documents and Communications concerning any Credit Reports of the Debtor or any Debtor Related Entity from any Credit Reporting Agency.

44.     All Documents and Communications concerning any Negotiable Instrument or Promissory Note written, signed, or presented by or against the Debtor or any Debtor Related Entity or Debtor Related Trust whether cancelled or voided, and regardless of any personal or real defense that could be asserted against such instrument and regardless of whether the holder of such instrument is a holder in due course.

45.     All Documents and Communications concerning any Currency Transaction Reports filed by any bank or financial institution concerning the Debtor or any Debtor Related Entity, including copies of any such Currency Transaction Reports in Your possession, custody, or control.

46.     Copies of any FinCEN Form 105 filed by or on behalf of the Debtor concerning the Debtor's or any Debtor Related Entity's reporting of international transportation of currency or monetary instruments across United States borders.

47.     All Documents and Communications concerning any Tax Documents concerning the Debtor or any Debtor Related Entity or any Debtor Related Trust, whether in their personal or professional capacity, including copies of any Tax Documents executed by or on behalf of the Debtor or any Debtor Related Entity or prepared for the Debtor or any Debtor Related Entity.

48.     All Documents and Communications concerning any Cryptocurrency Wallets belonging to, controlled by, or benefitting the Debtor or any Debtor Related Entity or Debtor Related Trust at any point in time and the value of the Assets held therein, including Documents and Communications concerning any Accounts held or controlled by the Debtor or any Debtor Related Entity or Debtor Related Trust with any Cryptocurrency brokerage firms or clearinghouses, including the value of the Assets therein on an Asset by Asset basis.  The scope of this Request is not limited in time.

49.     Any wage statements or bonus payments or similar Documents or Communications received by or provided to the Debtor or any Persons employed by or performing work for the Debtor, any Debtor Related Entity, or any Professionals of the Debtor or any Debtor Related Entity.

50.     Any retirement or deferred benefits statements, summaries, or similar Documents reflecting the payment of future Income received by or provided to any Persons employed by or performing work for the Debtor or any Debtor Related Entity.

51.     All Gifts, Payments or Transfers by the Debtor or any Debtor Related Entity or Debtor Related Trust to You and any invoices related to the same.

52.     All Documents and Communications concerning any Real Property of the Debtor or any Debtor Related Entity or Debtor Related Trust, including copies of any deeds to Real Property listed in the Debtor's or any Debtor Related Entity's name at any point in time and any Mortgage Documents of the Debtor or any Debtor Related Entity.  The scope of this Request is from January 1, 2013, to the present.

53.     Documents sufficient to identify all Domain Names owned by the Debtor, any Debtor Related Entity, or any Debtor Related Trust.

54.     Documents sufficient to identify all Persons with whom the Debtor or any Debtor Related Entity contracted or did business (formally or informally) concerning the promotion or sale of Supplements or any other product or services advertised by the Debtor or in connection with any Debtor Related Entity.

55.     Documents sufficient to identify all debts or other obligations owed by or to the Debtor or any Debtor Related Entity or any Debtor Related Trust.

56.     Documents sufficient to identify all contracts or agreements (formal or informal) between any Debtor Related Entity and the Debtor or any Family Member of the Debtor and all Documents and Communications concerning the negotiations of any such contracts or agreements.

57.     All Documents and Communications concerning any annuities or insurance policies purchased by the Debtor or any Debtor Related Entity or under which the Debtor or any Debtor Related Entity is a beneficiary.

58.     All Documents and Communications concerning Your, the Debtor's, or any Debtor Related Entity's retention or destruction of Documents.

59.     All litigation hold notices prepared, provided, or sent to or by You, the Debtor, or any Debtor Related Entity.

60.     All Documents and Communications concerning any Real Property or other Assets conveyed, Transferred, leased by the Debtor or any Debtor Related Entity or Debtor Related Trust.

61.     All Documents and Communications provided by the Debtor, any Debtor Related Entity, or any Debtor Related Trust to any accounting-related Professional.

62.     All Tax Documents related to the Debtor, any Debtor Related Entity, or any Debtor Related Trust.

63.     All Tax Documents submitted to, sent to, demanded by, or produced to the IRS, or any other local, state, or national taxation authority worldwide, by the Debtor, any Debtor Related Entity or any entity in which You or the Debtor are or were an owner, by You, by the Debtor, on Your behalf, on the Debtor's behalf, or for Your benefit, or for the Debtor's benefit.  The scope of this Request is from January 1, 2013, to the present.

64.     Documents sufficient to identify all Debtor Related Trusts, including trust agreements, declarations of trust, and other governing instruments, with all amendments and modifications thereto.

65.     All contracts, agreements, restatements, articles of incorporation, formation Documents, governing Documents, letters of wishes, or similar Documents, and any amendments thereto of any Debtor Related Trust.

66.     All books and records of any Debtor Related Trust, including all board minutes and other board materials for all corporate trustees.

67.     All Account statements for any Account held in the name of any Debtor Related Trust, or for which any Debtor Related Trust is a signatory, individually or jointly with any other Person(s).

68.     All Documents and Communications concerning Your or the Debtor's role or affiliation with any Debtor Related Trust including as a settlor, trustee, beneficiary, or donor.

69.     Documents sufficient to identify all present and former: (a) trustees of any Debtor Related Trust; (b) beneficiaries of any Debtor Related Trust; (c) donors of any Debtor Related Trust; (d) settlors of any Debtor Related Trust; and (e) in the case of trustees of any Debtor Related Trust that are private trust companies, the officers, directors, managers and owners of such private

trust companies; and (f) the dates of each appointment and termination of tenure for each of the foregoing.

70.     All Documents and Communications sent or received in Your role as settlor, trustee, beneficiary, or donor of any Debtor Related Trust.

71.     All Documents and Communications concerning any Income paid to any trustee of any Debtor Related Trust, including to You or to the Debtor or to any other Person.

72.     Documents sufficient to identify all Assets of all Debtor Related Trusts, and all Documents and Communications concerning any Asset identified.

73.     All Documents and Communications concerning any Transfers from, payments made by, or any distributions or interest from, or loans entered into by the Missouri 779384 Trust or any Debtor Related Trust.

74.     All probate court or other court filings and Documents by or concerning any Debtor Related Trust, including any sealed Documents.

75.     All Documents sufficient to show current or prior Assets, liabilities, receivables, and payables of any Debtor Related Trust, including any and all accountings, judicial or non-judicial, formal or informal, by the trustees or any investment advisor (whether or not a fiduciary) of such Debtor Related Trust.

76.     All Asset valuations or net worth and cash reports concerning any Debtor Related Trust, including any that have been furnished to any loan or mortgage lender.

77.     All Documents sufficient to identify any requests for distributions from any Debtor Related Trust, whether or not satisfied, including an explanation of the basis or reasons for the decision to make or refuse such distributions.

78.     All Documents and Communications concerning the Debtor's involvement in developing, launching, or investing in any other business or joint venture, or the use of any Assets or infrastructure of the Debtor or any Debtor Related Entity in connection with developing, launching, or investing in any other business or joint venture.

79.     Documents concerning any Transfer to or investment of any Asset in Carpe Donktum, National File, https://nationalfile.com/, Alex Jones Live, alexjones.live, or Logan Cook.