IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ALEXANDER E. JONES, | ) Case No. 22-33553 (CML) |
| | ) |
| Debtor. | ) |
| | ) |

**NOTICE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
BANKRUPTCY RULE 2004 EXAMINATION OF BANK OF ENGLAND MORTGAGE
CORPORATION**

Please take notice that, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 2004-1 of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), Bank of England Mortgage Corporation is commanded to produce documents and electronically stored information ("ESI"), and respond to the requests for production (the "Requests"), identified in the attached **Exhibit A**, to the undersigned counsel for the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 case of debtor Alexander E. Jones (the "Debtor" and such case, the "Chapter 11 Case") on or before **June 6, 2023 at 5:00 p.m. CDT**.

Please take further notice that the Committee reserves its rights under title 11 of the United States Code (the "Bankruptcy Code"), the Bankruptcy Rules, the Local Rules, and any applicable law regarding the subject matter of this Notice, and to amend, supplement, and/or modify Exhibit A attached hereto in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable law.

Dated: May 22, 2023

Respectfully submitted,

By: */s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr.
Texas Bar No. 00793386
Lacy M. Lawrence
Texas Bar No. 24055913
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: mbrimmage@akingump.com
Email: llawrence@akingump.com

*-and-*

Ira S. Dizengoff (admitted *pro hac vice*)
David M. Zensky (admitted *pro hac vice*)
Philip C. Dublin (admitted *pro hac vice*)
Sara L. Brauner (admitted *pro hac vice*)
Katherine Porter (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: idizengoff@akingump.com
Email: dzensky@akingump.com
Email: pdublin@akingump.com
Email: sbrauner@akingump.com
Email: kporter@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Alexander E. Jones*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 2004-1, I hereby certify that counsel for the Committee conferred with counsel for Bank of England Mortgage Corporation on the Committee's Rule 2004 requests substantially in the form reflected in Exhibit A on May 22, 2023.

*/s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.

## CERTIFICATE OF SERVICE

I certify that on May 22, 2023, a true and correct copy of the foregoing and the attached exhibit were served on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.

**EXHIBIT A**

**DEFINITIONS**

The following definitions apply to the Requests. Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.

1. The term "*Account*" shall mean any arrangement or agreement by which one or more Persons accepts one or more Persons' assets to hold on behalf of that Person, including but not limited to savings accounts, checking accounts, money market accounts, Certificate of Deposit accounts, brokerage accounts, currency accounts, cryptocurrency accounts, Commodities, Commodities futures accounts, trust accounts, bailments, custodial agreements, safe deposit boxes, arrangements or agreements by which assets are stored, and any other accounts held with a financial institution.

2. The term "*ACH Documentation*" shall mean any authorization of or consent to Payment that permits a Person to transfer financial assets from another Person's Account.

3. The term "*Affiliate*" or "*Affiliates*" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

4. The term "*Agent*" shall mean any Person or entity and their Professionals acting for or on behalf of another Person or entity.

5. The term "*Alex Jones Live*" shall refer to the business associated with the website https://alexjones.live.

6. The terms "*all*," "*any*," and "*each*" shall each be construed as encompassing any and all of these terms.

7. The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications, or responses that might otherwise be construed to be outside of its scope.

8. The term "*ATM*" shall mean any automated teller machine or similar computer system through which one can complete financial transactions.

9. The term "*Certificate of Deposit*" shall mean any savings product that earns interest on a fixed sum for a fixed period of time.

10. The term "*Charge Card*" shall mean any card, plate, or other single credit device that may be used from time to time to obtain credit which is not subject to a finance charge.

11. The term "*Commodities*" shall mean any tangible material that can be bought and sold. For the avoidance of doubt, this includes gold, silver, diamonds, platinum, palladium, and other precious metals. For the further avoidance of further doubt, this includes options, futures, and funds.

12. The term "*Communication*" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise). For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages, chat messages, Instant Bloomberg chat messages, social media messages (e.g., Facebook, Twitter), WhatsApp chat messages, Signal app messages, Telegram app messages, GroupMe chat messages, or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

13. The term "*concerning*" shall mean relating to (however remotely), referring to,

describing, evidencing, or constituting.

14. The term "*Credit Card*" shall mean any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

15. The term "*Credit Documents*" shall include any Documents concerning any application or request for an extension of credit of any kind including, but not limited to, mortgages, personal loans, lines of credit, and credit cards.  For the avoidance of doubt, this includes, but is not limited to, the following types of Documents: (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) gift letters; (g) Documents verifying creditworthiness; (h) residential rental Payment histories; (i) other Tax Documents; and (j) any other Document submitted in connection with an application for an extension of credit.

16. The term "*Credit Report*" shall mean any Document prepared by Dun & Bradstreet Corporation, Equifax, Inc., Experian plc, TransUnion or other financial Professional evidencing the record of a borrower's credit history or used to evaluate the creditworthiness of a Person.

17. The term "*Cryptocurrency Wallet*" shall mean any device, physical medium, program, app, service, or software that stores private keys for cryptocurrency or cryptocurrency transactions, whether encrypted or otherwise.

18. The term "*Currency Transaction Report*" shall mean any report required to be filed pursuant to 31 CFR § 1010.311 or 31 CFR § 1021.311.

19. The term "*Debit Card*" shall mean any card issued by a financial institution to a consumer for use in initiating an electronic fund Transfer from the Account of the consumer at such financial institution, for the purpose of Transferring money between Accounts or obtaining money, property, labor, or services.

20. The terms "***Debtor***" or "***Jones***" shall mean the Person who filed a petition for chapter 11 relief in the case of *In re Alexander E. Jones*, No. 22-33553 (CML) (Bankr. S.D. Tex.) and who goes by the name of Alexander Jones, Alex Jones, Alexander E. Jones, Alex E. Jones, Alexander Emeric Jones, Alex Emeric Jones, or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor, and Professionals of the Debtor.

21. The term "***Deposit Ticket***" shall mean any Document evidencing a deposit of financial assets to a bank or financial institution with information including, *inter alia*, the date, the name of the depositor, the depositor's Account number, and the value of the assets being deposited.

22. The term "***Document***" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information, and other data or data compilations. This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets, and PowerPoint presentations. A draft or non-identical copy is a separate document within the meaning of this term.

23. The term "***including***" shall mean "including, but not limited to."

24. The term "***Know Your Customer***" shall mean any Documents in Your possession, custody, or control concerning Your compliance with Rule 2090 of the Financial Industry Regulatory Authority and the supplementary material thereto.

25. The term "*Money Order*" shall mean any prepaid Negotiable Instrument or certificate issued by a government or financial institution that requires the issuer to pay a certain sum of money on demand to a Person.

26. The term "*Mortgage Documents*" shall include any Documents concerning any application or request for a line of credit secured by a mortgage on any residential or commercial Real Property, including but not limited to: (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) gift letters; (g) Documents verifying creditworthiness; (h) copies of the purchase and sale agreement; (i) deeds of trust; (j) residential rental Payment histories; (k) other Tax Documents; and (*l*) any other Document submitted in connection with the above.

27. The term "*Negotiable Instrument*" shall include any unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it (a) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (b) is payable on demand or at a definite time; and (c) does not state any other undertaking or instruction by the person promising or ordering Payment to do any act in addition to the Payment of money, and any similar instrument.

28. The term "*Offset Item*" shall mean activity or evidence of any withdrawals that are made on a deposit on any Account.

29. The term "*Payment*" shall mean any voluntary or involuntary Transfer in exchange for any service, product, or other asset, whether previously provided, provided contemporaneously with the Transfer, or to be provided in the future, and whether or not such service, product, or other asset was or will be provided to the Person making or causing the Payment to be made.

30. The term "*Person*" shall mean any natural person or any legal entity, unincorporated association, or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business, trust, governmental entity, or association.

31. The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, consultants (including independent consultants), independent contractors, advisors, and testifying or non-testifying experts.

32. The term "*Promissory Note*" shall include any written Document that is or evidences a promise by one or more Persons to pay a debt to one or more Persons whether nontransferable or otherwise, and any similar Document.

33. The term "*Real Property*" shall have the meaning ascribed to the term in section 1.04(2) of the Texas Property Tax Code.

34. The term "*Tax Documents*" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment, or information return, statement, or other Document relating to taxes, including any schedules or form or attachment thereto, whether prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an employer or employee, a tax preparer, a bank or financial institution, the IRS, or any other governmental authority.

35. The term "*Transfer*" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)–(D), inclusive.

36. The term "*Wire Transfer*" shall mean any electronic Transfer of financial assets from one Account to another Account.

37. The term "*Withdrawal Slips*" shall mean any Document prepared in order to withdraw financial assets from any Account with information including, *inter alia*, the date, the name of the withdrawer, the withdrawer's Account number, and the value of the assets being withdrawn.

38. The terms "*You*," "*Your*," or "*Yours*" shall refer to Bank of England Mortgage Corporation.

39. The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

40. Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, managers, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, trustees, fiduciaries, settlors, donors, beneficiaries, donors, or any other individual or entity acting or purporting to act on behalf of such Person. In addition, the reference to any trust shall include any current or former trustees, or other fiduciaries, settlors, donors, and beneficiaries.

41. The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

**INSTRUCTIONS**

1. These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules and the Local Rules.

2. Each Request is continuing in nature. If at any time additional Documents responsive to the Requests come into Your possession, custody, or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3. You are requested to produce all Documents, Communications, and information requested herein that are within Your possession, custody, or control or in the possession, custody, or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, members, managers, trustees, or any other Person or entity acting or purporting to act on Your behalf.

4. You are requested to produce Documents, Communications, and information requested herein on a rolling basis.

5. If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify: (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information, or belief You have concerning the unanswered portion of any such Request(s).

6. All Documents shall be produced with metadata in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format. ***All Documents shall be produced with metadata, including but not limited to the date and time***

*created/sent, author, recipients, cc-copies, bcc-blind copies, family member information, MD-5 hash, subject line and title, and whether the document contains redactions*.

7. If the response to any Request consists, in whole or in part, of an objection on the basis of or including undue burdensomeness, then provide those documents that can be produced without undue burden. For such documents that are too unduly burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved, and the estimated costs of the search.

8. If You intend to withhold any responsive Document, Communication, or other information on the basis of a claim of attorney-client privilege, work product protection, bank examination privilege, or any other ground of non-disclosure You shall identify such Document, Communication, or information in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc, addressor/from, Document type, and topic covered and listed with a statement of the grounds alleged for withholding such Document, Communication, or other information, including any privilege claimed.

9. If Your response to any Request is any other objection, You must indicate if Documents are being withheld based on the objection(s), provide all Documents not covered by the objection, and state the specific basis of the objection.

10. If any Document responsive to these Requests has been destroyed, lost, or discarded, state when the Document was destroyed, lost, or discarded; identify the Person who destroyed, lost, or discarded the Document; and, in the event the Document was destroyed or discarded, identify the Person who directed that it be destroyed or discarded. Additionally, detail the reasons for the destruction, loss, or discarding; describe the nature of the Document; identify

the Persons who created, sent, received, or reviewed the Document; and state in as much detail as possible the contents of the Document.

11. Subject to Instruction No. 6 above, Documents should be produced in the manner they are kept in the ordinary course of business. In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

12. All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

13. The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

14. Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied, or otherwise obtained from December 2, 2012, to the present.

15. By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to amend, to modify, or otherwise to supplement these Requests.

**REQUESTS FOR PRODUCTION**

1. Documents sufficient to identify any current or former Account in the Debtor's name, belonging to the Debtor, under the Debtor's control, or to which the Debtor has ever had a legal, equitable, possessory, contingent, beneficiary, or pecuniary interest, or for which the Debtor is a beneficiary or signatory, individually or jointly with any other Person(s).

2. Documents sufficient to identify any current or former Account of, for the benefit for any of the below listed entities or trusts, or for which any of the below listed trusts have or have had legal, equitable, possessory, contingent, beneficiary, or pecuniary interest:

    a. A. Emric Productions, LLC;

    b. AEJ Austin Holdings LLC;

    c. AEJ Holdings LLC;

    d. Alex Jones Live;

    e. Austin Shiprock Publishing LLC;

    f. David R. Jones, D.D.S., Inc.;

    g. David R. Jones Family Limited Partnership;

    h. Emric Productions LLC;

    i. Free Speech Systems, LLC;

    j. Guadalupe County Land and Water L.L.C.;

    k. InfoW, LLC;

    l. IWHealth, LLC;

    m. JLJR Holdings LLC;

    n. Jones Production;

    o. Jones Productions, LLC;

    p.  Jones Report, LLC;

    q.  LPTZ Holdings LLC;

    r.  Magnolia Holdings, Limited Partnership;

    s.  Magnolia Management, LLC;

    t.  Planet Infowars, L.L.C.;

    u.  PLJR Holdings LLC;

    v.  PQPR Holdings Limited LLC;

    w.  Prison Planet TV, LLC;

    x.  RCGJ, LLC;

    y.  the Missouri 779384 Trust;

    z.  the RXXCTTGAA Trust;

    aa.  the Alexander E. Jones Descendent and Beneficiary Trust;

    bb.  the 2022 Appeal Trust;

    cc.  the 2022 FSS Litigation Settlement Trust;

    dd.  the AEJ 2018 Trust;

    ee.  the Green Leaf Trust;

    ff.  the Recharge Dynasty Trust; and

    gg.  the Hutton Cabin Trust.

3. For each Account identified in response to Requests 1 or 2, Documents sufficient to demonstrate:

    a.  the date the Account was opened;

    b.  all Documents submitted in connection with opening the Account, including signature cards;

  c. Documents sufficient to identify the names of any Persons who have ever had a legal, equitable, possessory, contingent, beneficial, or pecuniary interest in the Account;

  d. Documents sufficient to identify any Person(s) who hold power of attorney over the Account and any changes made, including power of attorney or the addition, subtraction, or modification of other Persons from that Account;

  e. Documents sufficient to identify any beneficiary of any Account;

  f. any change of address of any Account;

  g. any Credit Reports;

  h. the date the Account was closed, if applicable;

  i. any Documents submitted or prepared in connection with closing the Account; and

  j. any Know Your Customer documentation.

4. For each Account identified in response to Requests 1 or 2, all Documents and Communications concerning:

  a. all monthly Account statements, with itemized transaction-level information;

  b. all yearly Account statements,

  c. any Deposit Tickets or Offset Items;

  d. any Withdrawal Slips, including any Documents and Communications concerning the substance of any withdrawals from any Account;

  e. all negotiated checks or cancelled checks including, but not limited to, checks written against or deposited into the Account and any bank checks (including certified checks, cashier's checks, official checks, or teller's checks) funded in whole or in part by the Account, including images of the front and back;

    f. any Money Orders;

    g. any Wire Transfers in, out, or by any Account, including information concerning the origins, destinations, Account numbers, financial institutions, and any other Wire Transfer information or ACH Documentation;

    h. any Negotiable Instruments;

    i. all Mortgage Documents;

    j. any notary log;

    k. any safe deposit box records, including opening Documents, signature cards, access-record logs, and any closing Documents;

    l. any loan, including all application materials, supporting Documents, copies of any related Tax Documents and statements of financial condition of any kind, monthly statements, and Payment history and methods;

    m. any Debit Card, Credit Card, Charge Card, ATM activity, or mobile-deposit information; and

    n. any Currency Transaction Reports.

5. For each Account identified in response to Requests 1 or 2, all Documents and Communications concerning any Cryptocurrency Wallets.