UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| Free Speech Systems LLC, | § | |
| | § | Case No. 22-60043 (CML) |
| Debtor. | § | |

**PQPR HOLDINGS LIMITED, LLC'S SUPPLEMENTAL OBJECTION TO SUBCHAPTER TRUSTEE'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING RETENTION OF M3 ADVISORY PARTNERS, LP AS FINANCIAL ADVISOR TO THE SUBCHAPTER V TRUSTEE**

PQPR LIMITED, LLC ("PQPR") submits this Supplemental Objection to Subchapter V Trustee's Motion for Entry of an Order Authorizing Retention of M3 Advisory Partners, LP as Financial Advisor to the Subchapter V Trustee (the "M3 Application") as follows:

### I.   INTRODUCTION

1.   The Subchapter V Trustee (the "Trustee") has requested authority to retain M3 Advisory Partners, LP ("M3") as a financial advisor to the Debtor [Docket No. 282]. PQPR, a secured creditor of the Debtor, filed a limited objection to M3's retention [Docket No. 305] on several bases, including the failure to provide a budget or cap the fees and expenses incurred by M3. The undersigned counsel has conferred with the Trustee's counsel regarding PQPR's objections, and counsel indicated that the Trustee is unwilling to voluntarily provide a budget or agree to a cap on M3's fees and expenses. This effectively gives M3 a blank check this Debtor cannot afford.

## II.     ISSUES WITH THE M3 APPLICATION

A.     **Inconsistencies Regarding Approval under § 328 or § 330**

2.     The Trustee has stated that a budget or cap is not necessary because M3's fees will be submitted to the Court for approval and interested parties can object at that time. However, the M3 Application, the Declaration of Brian Griffith in support of the M3 Application (the "<u>Griffith Declaration</u>"), and the M3 Engagement Letter are not clear on that issue. The Trustee's counsel's statement and the following portions of the M3 Application and the Griffith Declaration indicate that M3 will seek compensation for its services pursuant to Bankruptcy Code § 330, which provides the after-the-fact determination of "reasonable compensation for actual, necessary services."

- "M3 intends to **apply to the Court for allowance of compensation and reimbursement of expenses** for advisory support services in accordance with the terms and conditions set forth in the Engagement Letter (the "Fee and Expense Structure") as well as the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and orders of the Court." M3 Application at ¶ 14 (emphasis added).

- "M3 shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtor's chapter 11 case **in compliance with sections 330 and 331** of the Bankruptcy Code, and applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any other applicable procedures and orders of the Court." Griffith Declaration at ¶ 10 (emphasis added).

3.     However, other portions of the M3 Application and the M3 Engagement Letter indicate that M3's compensation will be subject to Bankruptcy Code § 328, and due and payable within 15 days of the Trustee's receipt of M3's invoices.

- "Section 327(a) authorizes the retention of M3 as financial advisor for the Trustee **to be compensated in accordance with § 328** as set forth herein and in the Engagement Agreement." M3 Application at ¶ 22 (emphasis added).

- "As compensation for providing the Services hereunder, M3 shall be entitled to **non-refundable professional fees based on the actual hours** incurred by M3 personnel…." M3 Engagement Letter § 4(i) (emphasis added).

- "M3 shall deliver to the Client an invoice for the Service Fees (as reduced by such discount) **on a monthly basis and the Debtor shall pay to M3 the amount invoiced** for the relevant period in accordance with the provisions of Section 4(b) below." M3 Engagement Letter § 4(i) (emphasis added).

- "All amounts owing hereunder shall, subject to approval of the Court, be due and payable by wire transfer of immediately available funds in accordance with instructions from time to time provided by M3 **within 15 days following receipt of the invoice therefor**, except that the Deferred Fees shall be payable from available funds without any requirement of further invoice promptly upon approval of the Court following the successful conclusion of the Debtor's bankruptcy proceeding." M3 Engagement Letter § 4(b) (emphasis added).

- "Unless expressly stated otherwise in the relevant invoice, **none of the amounts invoiced** by M3 from time to time with respect to the Engagement **shall be contingent upon, or in any way tied to the delivery of, any reports or other work product in the future, nor upon the outcome of any case or matters**. M3 Engagement Letter § 4(c) (emphasis added).

4. Despite the inconsistencies in the M3 Application, Griffith Declaration, and M3 Engagement Letter, it appears that M3 expects that its fees and expenses will be paid on a monthly basis without the Court's ability to adjust the amounts owed using a § 330 analysis ("M3 shall be entitled to **non-refundable professional fees based on the actual hours** incurred"). Clarity on this question is essential because "[o]nce the bankruptcy court has approved a rate or means of payment, … the court cannot on the submission of the final fee application instead approve a 'reasonable' fee under § 330(a), unless the bankruptcy court finds that the original arrangement was improvident due to unanticipated circumstances as required by § 328(a)." *In re Tex. Sec., Inc.,* 218 F.3d 443, 445–46 (5th Cir.2000).

**B.    Failure to Meet § 328 Burden**

5. The party filing an application to employ has the burden to prove that the professional should be retained. The Court, "in its duties as a gatekeeper, must have a sufficiently strong record when deciding whether to approve a professional under § 328(a)." *In re Energy*

3

*Partners, Ltd.,* 409 B.R. 211, 225 (Bankr. S.D. Tex. 2009). In *In re Energy Partners*, Judge Bohm employed the non-exclusive factors utilized by the Delaware Bankruptcy Court[1] and explained:

> …§ 328 applications require particularly close scrutiny at the outset because the money paid to these professionals will be even more difficult, if not virtually impossible, to disgorge once distributed…. [T]he Court should, under § 328, make a preemptive determination of the benefit that the professionals' services will provide the estate. This task is difficult because … when determining whether to approve a professional who seeks to be paid pursuant to § 328, the Court must predict whether, and to what extent, a professional will be able to provide a tangible, identifiable, and material benefit to the estate. For the Court to make such an assessment, the parties must make a sufficient record as to what tangible, identifiable, and material benefits the services of the proposed professionals will provide to the estate.

*Id*. at 229 (internal citations omitted). The M3 Application, Griffith Declaration, and M3 Engagement Letter provide only conclusory statements as to why it should be retained by the Trustee.

C.  **Inconsistencies with Previously Established Procedures**

6. On September 30, 2022, the Court entered an *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals* [Docket No. 202] (the "<u>Interim Compensation Order</u>"), which set forth requirements for interim compensation and reimbursement of expenses for "the professionals specifically retained pursuant to an order of the Court … **and the subchapter v trustee and her professionals** (collectively, the "<u>Retained Professionals</u>")…," "except as otherwise provided in an order of the Court authorizing the

---

[1] The non-exclusive factors established by the Delaware Bankruptcy Court include: "(1) whether terms of an engagement agreement reflect normal business terms in the marketplace; (2) the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation; (3) whether the retention, as proposed, is in the best interests of the estate; (4) whether there is creditor opposition to the retention and retainer provisions; and (5) whether, given the size, circumstances and posture of the case, the amount of the retainer is itself reasonable, including whether the retainer provides the appropriate level of "risk minimization," especially in light of the existence of any other "risk-minimizing" devices, such as an administrative order and/or a carve-out." *In re Insilco Techs., Inc.,* 291 B.R. 628, 633 (Bankr.D.Del.2003).

retention of a particular professional." The Interim Compensation Order allowed for monthly compensation of Retained Professional upon submission of a Monthly Fee Statement containing an invoice with fee and expense detail. It also set an Objection Deadline that is 14 days after service of the Monthly Fee Statement and provided for a hold-back of the greater of 20% of the requested fees or the aggregate amount of fees subject to an unresolved objection.

7. M3 proposes that it submit monthly invoices to the Trustee monthly for its hourly fees and expenses, which must be paid within 15 days of receipt and are non-refundable. Although the M3 Engagement Letter uses the words "subject to approval of the Court," it is unclear at what point the Trustee/M3 will seek such approval and if the payments are subject to objections. It is unlikely that 15 days is sufficient time for parties in interest to review the application and lodge any objections and for the Court to hold a hearing (if necessary) and approve the application.

8. Additionally, the M3 Engagement Letter states: "All amounts owing hereunder shall, subject to approval of the Court, be due and payable by wire transfer of immediately available funds in accordance with instructions from time to time provided by M3 within 15 days following receipt of the invoice therefor, **except that the Deferred Fees shall be payable from available funds without any requirement of further invoice promptly upon approval of the Court following the successful conclusion of the Debtor's bankruptcy proceeding**." M3 Engagement Letter § 4(b). "Deferred Fees" is not defined anywhere in the M3 Application or M3 Engagement Letter. It is unclear what fees M3 proposes to be paid without further Court approval.

D. **Inconsistencies with Interim Cash Collateral Orders and Budget**

9. PQPR holds a security interest in all of Debtor's assets. Thus, all assets are PQPR's cash collateral that cannot be utilized without PQPR's permission or Court order. This includes the payment of professional fees. The *Sixth Interim Order Authorizing Debtor's Use of Cash*

*Collateral and Providing Partial Adequate Protection* for the period of November 26 – December 23, 2022 [Docket No. 287] authorizes Debtor's use of PQPR's cash collateral to pay items set forth in the budget attached to the order. A hearing to extend the cash collateral order is scheduled for December 19, 2022. The Debtor's CRO has provided PQPR with a new proposed four-week cash collateral budget, and PQPR anticipates reaching an agreement on the use of cash collateral strictly as provided in the proposed budget. The budget provides for payment of professional fees as follows:

| | | | CURRENT 4 WEEK BUDGET | | |
|---|---|---|---|---|---|
| Week Number | 12/24/2022-12/30/2022 22 | 12/31/2022-1/06/2023 1 | 1/07/2023-1/13/2023 2 | 1/14/2023-1/20/2023 3 | Total |
| **Professional Fees** | | | | | |
| CRO Fees | - | (50,000.00) | - | - | (50,000.00) |
| Trustee Fees | (15,000.00) | - | (15,000.00) | - | (30,000.00) |
| Trustee Counsel | (15,000.00) | - | (15,000.00) | - | (30,000.00) |
| Legal Fees - Reynal | - | (21,630.00) | - | - | (21,630.00) |
| Ray Battaglia | - | (30,000.00) | - | - | (30,000.00) |
| **Total Professional Fees** | (30,000.00) | (101,630.00) | (30,000.00) | - | (161,630.00) |

This budget does not contain much, if any, "fat" to pay M3. PQPR objects to any payments to M3 unless and until the payments are included in the cash collateral budget, agreed to by PQPR, or ordered by the Court.

### III.   CONCLUSION

10.    PQPR's objection to the M3 Application is two-fold. First, PQPR objects to any "pre-approval" of M3's compensation under Bankruptcy Code § 328 and to any "non-refundable" payments. Second, PQPR objects to the use of its cash collateral to pay M3 unless such payments are provided for in the cash collateral budget and subject to a cap in any future cash collateral orders.

11. Therefore, PQPR requests that the Court deny the M3 Application as presented. To the extent M3's retention is approved, PQPR asks that the Court order the Trustee and M3 to provide sort of cap and/or budget for M3's fees and expenses, and that M3's retention is subject to the terms of the Interim Compensation Order and Bankruptcy Code § 330, such that M3 must demonstrate that the fees and expenses represent reasonable compensation for actual, necessary services.

Dated:  December 16, 2022               Respectfully submitted,

By: */s/ Stephen W. Lemmon*
Stephen W. Lemmon
Texas Bar. No. 12194500
STREUSAND, LANDON, OZBURN & LEMMON, LLP
1801 S. MoPac Expressway, Suite 320
Austin, Texas 78746
Telephone: (512) 236-9900
Facsimile: (512) 236-9904
lemmon@slollp.com

ATTORNEYS FOR
PQPR HOLDINGS LIMITED, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2022, a true and correct copy of the foregoing instrument was served via this Court's ECF notification system upon all parties registered to receive electronic notice of filings in this case.

                                           */s/ Stephen W. Lemmon*
                                           Stephen W. Lemmon