```
1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF TEXAS
2                          HOUSTON DIVISION

3                                  )  CASE NO: 22-33553-cml
     ALEXANDER E. JONES,           )
4                                  )  Houston, Texas
                                   )
5              Debtor.             )  Wednesday, August 23, 2023
                                   )
6                                  )  2:30 PM to 3:05 PM
     ------------------------------)
7                              HEARING

8          BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                  UNITED STATES BANKRUPTCY JUDGE
9

10   APPEARANCES:

11   For Debtor:             JOHN YOON
                             Crowe & Dunlevy
12                           2525 McKinnon Street
                             Dallas, TX 75201
13
     For Elevated Solutions: JOHNIE PATTERSON
14                           MIRIAM GOOTT
                             Walker & Patterson
15                           PO Box 61301
                             Houston, TX 77208
16
     For Committee:          KATHERINE PORTER
17                           Akin Gump Strauss Hauer & Feld LLP
                             23 N. Field Street
18                           Dallas, TX 75201

19   Court Reporter:         ZILDE COMPEAN

20   Courtroom Deputy:       ZILDE COMPEAN

21   Transcribed by:         Veritext Legal Solutions
                             330 Old Country Road, Suite 300
22                           Mineola, NY 11501
                             Tel: 800-727-6396
23

24
     Proceedings recorded by electronic sound recording;
25   Transcript produced by transcription service.
```

```
 1        HOUSTON, TEXAS; WEDNESDAY, AUGUST 23, 2023; 2:30 PM
 2                        (Call to Order)
 3        CLERK:  All rise.
 4        THE COURT:  Okay.  Good afternoon.  This is Judge
 5   Lopez.  I'm going to call the 2:30 case of Alexander Jones
 6   on an emergency motion.  Let me take appearances in the
 7   courtroom and then I'll turn to folks on the phone.  There's
 8   about eighteen people on the line.  I'd just ask that you
 9   please keep your phone on mute until you're ready to speak.
10   Just monitor yourselves.  I'm going to try to avoid enabling
11   the mute feature.  Mr. Patterson, good afternoon.
12        MR. PATTERSON:  Good afternoon.  Johnie Patterson,
13   here on behalf of Elevated Solutions.
14        THE COURT:  Okay.  Good afternoon.
15        MR. PATTERSON:  And Ms. Goode is here with me
16   also.
17        THE COURT:  Good afternoon, Ms. Goode.  Okay.  Who
18   wishes to make an appearance on behalf of the Committee?
19   Ms. Porter, are you making an appearance?
20        MS. PORTER:  Yes.  Good afternoon, Your Honor.
21   Katherine Porter from Akin on behalf of the Committee.
22        THE COURT:  Okay.  Anyone else wish to make an
23   appearance?
24        MR. YOON:  Judge, this is John Yoon from Crow and
25   Dunlevy on behalf of Debtor Alexander Jones.
```

1          THE COURT:  Okay, good afternoon.  All righty.

2     Ms. Porter filed a motion.  Why don't I turn it over to you

3     -- or the Committee, I should say.

4          MS. PORTER:  Thank you.  Thank you, Your Honor.

5     The Committee did file a motion.  I think this dispute is

6     quite simple.  As you will recall, we were before the Court

7     on June 8th on the ESG's motion to quash discovery directed

8     to ESG by the Committee and our countermotion to compel, and

9     we held a hearing on the Committee's request.

10         From our perspective, that hearing answered the

11    question that we are here asking again today, which is

12    whether or not bank accounts should be produced to the

13    Committee and if so whether there should be redactions for

14    transactions with counterparties that were identified as

15    counterparties that are relevant to business with the debtor

16    and/or FSS.  So, that is an issue on which we've reached an

17    impasse with ESG and we respectfully ask that the Court

18    confirm what we believe was already ordered, which is that

19    those bank accounts be produced to the Committee without

20    redaction.  We're happy for them to have whatever

21    appropriate confidentiality designations ESG would like, and

22    we are likewise happy for other transactions that have

23    nothing to do with the counterparties, FSS, or the debtor to

24    be redacted, but we do think transactions with the

25    counterparties ought to be visible to the Committee.

1        And then secondly, we would like the Court's

2    assistance in setting a date to complete this production as

3    we have been unable to reach an agreement with ESG counsel

4    for a date to complete production, and that has

5    (indiscernible) delaying depositions more than once.

6        THE COURT:  Got it, and you are seeking end of the

7    month, essentially, right?

8        MS. PORTER:  Correct, and -- but we are flexible

9    on this point.  We're happy -- as we made it clear to ESG's

10   counsel several times, happy to come to an agreement on a

11   date that works for ESG and to work the deposition around

12   that date, but we don't want to find ourselves in a position

13   for the third time where we have an agreed date which has to

14   move because we don't have documents.  It presents

15   complications, as I'm sure you can imagine.

16       THE COURT:  Okay.  All righty, thank you.  Let me

17   hear from ESG.

18       MR. PATTERSON:  I'll start off.  It hasn't been

19   three times; it's been once, and they cancelled it and moved

20   it at their request, so -- production is complete.  We have

21   been rolling documents out, but as I explained to the

22   Committee, you know, they have put this production request

23   on a man who runs a business, has a family, has to travel.

24   It's a burden, but we've rolled it out, and all that's

25   remaining is these bank statements.  And I think that there

1    is a fundamental misunderstanding by the Committee about how

2    these transactions work, but they're demanding unredacted

3    bank statements.  You didn't order that last time, and in

4    fact, last time you said that we could redact if we wanted

5    to.

6             We've provided every financial transaction that

7    ESG has had with either Debtor Jones or Debtor FSS.  They

8    have that.  They've had it.  They're unhappy with it because

9    they think that they -- in their mind they've created

10   something that's just not there, but now they want all these

11   other transactions from ESG that have -- they don't have

12   anything to do with the debtors.

13            THE COURT:  How do we know -- and I'll tell you

14   what -- how do we know that someone didn't do a transaction

15   with Company X but it was really intended for -- to benefit

16   -- like, don't people get a chance to look at that and make

17   a determination on their own?

18            MR. PATTERSON:  (indiscernible) --

19            THE COURT:  Coming up with a roundabout.  So, say

20   I don't want to do a direct transaction with Jones, but I

21   did a transaction with X, but then somehow it benefits Jones

22   because Jones gets the money on the back end.

23            MR. PATTERSON:  Okay.  The way you -- that's easy.

24   You go get production from Jones and see where his money's

25   coming from.  You're not going to get that from me, even if

1    it exists, right?  Because my contract --

2              THE COURT:  But I get to ask -- but I get to ask

3    you questions about it, right, in a deposition.

4              MR. PATTERSON:  We're -- 100 percent.

5              THE COURT:  But not if they're redacted.  I don't

6    under -- that's where I'm confused.

7              MR. PATTERSON:  But even under your scenario,

8    Judge, the money went to X, right?  How do you get to Alex

9    Jones from X, because all we know is --

10             THE COURT:  But it's discovery.

11             MR. PATTERSON:  "Yeah, I wrote a check to X."

12             THE COURT:  But it's discovery.

13             MR. PATTERSON:  But I have a contract that shows I

14   owe X $25.

15             THE COURT:  It's discovery.  Why do people then --

16   why do you have to do all that?  Why can't I ask you for

17   both?

18             MR. PATTERSON:  Where does it end, Judge?

19             THE COURT:  It doesn't.  It just --

20             MR. PATTERSON:  He is -- my guy is not a debtor.

21             THE COURT:  It ends with -- it turns over -- yeah,

22   but he's a party in interest in a very important litigation.

23             MR. PATTERSON:  If there were some connection,

24   Judge.  Number one --

25             THE COURT:  There doesn't have to be a connection,

1    Mr. Patterson.  I don't understand the --

2              MR. PATTERSON:  Of course --

3              THE COURT:  No, it doesn't.

4              MR. PATTERSON:  Rule 26 requires some connection,

5    Judge.  You can't go out --

6              THE COURT:  Are you telling me that you can't

7    investigate potential transactions with third parties

8    subject to confidentiality on a fishing expedition to

9    determine whether there is something that's truly

10   discoverable?

11             MR. PATTERSON:  I'm saying you can't go into my

12   business, a non-debtor, and say, "Give me all your financial

13   transactions.  I want to see your bank accounts."

14             THE COURT:  I don't think that's what they're

15   asking for.

16             MR. PATTERSON:  They're not the FBI.

17             THE COURT:  I think they're asking for -- I think

18   -- that's not what she asked for.

19             MR. PATTERSON:  It is.

20             THE COURT:  That's not what I heard.

21             MR. PATTERSON:  She said she wants unredacted bank

22   statements.

23             THE COURT:  Relating --

24             MR. PATTERSON:  And I said, "I'm not going to give

25   them to you."

1          THE COURT:  Relating to transactions to -- Ms.

2     Porter, isn't it just limited to the debtor's transactions

3     with either FSS or the counterparties?

4          MS. PORTER:  Correct.

5          THE COURT:  How is that unlimited?

6          MR. PATTERSON:  The conversation -- we're here

7     today because she said -- we have provided her copies, not

8     of the bank statements.  Copies of the instruments of each

9     transaction with the debtor, all right?

10          THE COURT:  Mm-hm.

11          MR. PATTERSON:  And she says, "We want unredacted

12     bank statements," and I said, "I don't have to give you

13     unredacted bank statements.  You even said we could redact."

14     And she said, "Well, I don't want them if they're redacted,

15     because they're meaningless."  That's why we're here.

16          THE COURT:  Ms. Porter, what's your --

17          MR. PATTERSON:  And so --

18          THE COURT:  Go ahead.  I'm confused why this

19     really got to me.  I'm a little confused --

20          MR. PATTERSON:  I am too, because I'm giving them

21     every --

22          THE COURT:  But you're not giving bank statements.

23     (indiscernible)

24          MR. PATTERSON:  I haven't given them bank

25     statements.  I gave them copies of the actual checks, wire

1    transfers, money orders, whatever they were.  I gave them

2    actual copies of those, of the transaction.  Right?

3            THE COURT:  Ms. Porter, what more are you looking

4    for?

5            MS. PORTER:  What we have are a smattering of

6    transaction records of the discrete transactions wholly with

7    the debtor from ESG.  What we're missing is the picture with

8    the counterparties, and we've asked for complete bank

9    records that are not redacted as to the counterparties so

10   that we can have an understanding of how the transactions --

11   in what larger business framework we can view the discrete

12   transaction information that's been provided.

13           We've received -- we haven't received the bank

14   account statements.  All we've received is single-line items

15   that say one transaction occurred on a given day, a

16   smattering of them, and they have no context for us.  We are

17   asking for the bank account statements to be unredacted

18   solely as to the debtor, FSS, and the counterparties, and

19   these counterparties are not developed through a fishing

20   expedition.  They are identified on an email from ESG to the

21   debtor's counsel, saying, "These are the counterparties

22   we're working with related to the debtor."

23           THE COURT:  Isn't this a -- this is a 2004 exam;

24   is that correct?

25           MS. PORTER:  Correct.

1          THE COURT:  How does Rule 26 kick in, Mr.

2     Patterson?

3          MR. PATTERSON:  Well, I guess the suggestion

4     otherwise is that there's no limit?

5          THE COURT:  No, I'm not saying that, but I'm

6     asking --

7          MR. PATTERSON:  Because if you're going to go --

8          THE COURT:  You mentioned Rule 26.

9          MR. PATTERSON:  If you're going to go under 2004,

10     it's more limited, because it has to relate to the debtor.

11     Right?  2004 is even more limited, and I'll read it to you,

12     but it says in 2004 "the debtor's financial transactions",

13     not mine.

14          THE COURT:  Let's read it together.  Let's read it

15     together.  Which part do you want to point me to?

16          MR. PATTERSON:  Scope.  I mean, there is a

17     definition in the scope of a 2004.  "It may relate only to

18     the acts, conduct, or property, or the liabilities and

19     financial condition of the debtor, or to any matter which

20     may affect the administration under Chapter 12 or 13."

21          THE COURT:  But she's referring to emails, and

22     she's asking for bank statements that relate to emails that

23     potentially -- this is all about Jones, isn't it?

24          MR. PATTERSON:  No, it's not what she's asking

25     for, Judge, and maybe that's -- I mean, they come with no

1    witness.  They come with no exhibits, so it's hard for you,

2    but --

3              THE COURT:  I don't think we need a witness.  I

4    don't think -- I don't think it's hard.  I think you get to

5    -- I think a 2004 is super broad and you get to ask -- it's

6    not governed by the Federal rules of civil procedure.  I

7    think you get to ask questions that relate to the financial

8    transactions and liability -- and liability of financial

9    transactions of the debtor, and that means --

10             MR. PATTERSON:  That's right.

11             THE COURT:  -- sometimes you get to ask questions

12   of other parties to determine -- to try to get to the bottom

13   of that.  But I do agree that's subject to confidentiality

14   and it's subject to a bunch of --

15             MR. PATTERSON:  And so I've got to tell them

16   everyone I do business with?  Because they just took a list.

17   I've given them every contract --

18             THE COURT:  But you don't want to give the bank

19   statements, Mr. Patterson.

20             MR. PATTERSON:  -- that I've had.  I'm sorry?

21             THE COURT:  I do think you have to give the bank

22   statements.  Now, I think the question is the scope of the

23   bank statements and what they do.  I think -- I think you

24   do.  I think --

25             MR. PATTERSON:  So what do I get to redact?

1      Because at the last hearing, you said we're free to redact.

2               THE COURT:  Oh, no, I do agree.

3               MR. PATTERSON:  -- if it didn't relate to the

4      debtors.  And so --

5               MS. PORTER:  If I may, what I had proposed to Mr.

6      Patterson was that any transactions with a counterparty that

7      is not on the list that we identified -- well, that ESG

8      originally identified and that we repeated in our 2004

9      request -- any transaction with a counterparty not on that

10     last can be redacted, and any personal transactions, to the

11     extent that those are reflected in the corporate bank

12     account statements, could also be redacted.  We're not

13     inquiring about ESG's personal financial matters -- Mr.

14     Delessio -- but the transactions involving FSS, the debtor,

15     and the identified counterparties would be revealed.  That

16     was our suggestion to Mr. Patterson.

17              THE COURT:  How is that unreasonable, Mr.

18     Patterson?

19              MR. PATTERSON:  Because their list is broader than

20     even the contracts we have and produced.  Right?  And so --

21     and they're making the assumption that the only business we

22     did with this supposed counterparty related to the debtor,

23     which may not be true.

24              THE COURT:  But don't they get to then ask

25     questions and determine which ones they are and --

```
 1              MR. PATTERSON:  They get to ask questions, Judge.

 2    Right?  We're talking -- we didn't quite finish the 2004,

 3    but 2004 has no provision for production of documents, zero.

 4    2004 doesn't even allow, it doesn't disallow, but there is

 5    nothing in 2004 that provides for production of documents,

 6    except in conjunction with the actual examination, and

 7    they're viewing these things separately.  We're more than

 8    happy -- told them multiple times, "We will walk you through

 9    all these things.  Ask the questions.  We will answer."

10    Right?  But to put my guy through this expense and this time

11    --

12              THE COURT:  We're talking about two years of bank

13    statements, Mr. Patterson, aren't we?  That's the burden

14    that we're talking about?

15              MR. PATTERSON:  Yes.

16              THE COURT:  Twenty-four months of bank statements?

17              MR. PATTERSON:  Multiple bank statements and

18    redaction.  He's going to pay me to redact.

19              THE COURT:  Or he can just submit it

20    (indiscernible) on his own.

21              MS. PORTER:  (indiscernible)

22              THE COURT:  He doesn't have to.

23              MS. PORTER:  (indiscernible)

24              MR. PATTERSON:  And why -- why would he be willing

25    to do that?
```

1          THE COURT:  I'm not saying he should.  He gets to

2     choose how he wants to do it, but that doesn't mean that the

3     expense matters.

4          MR. PATTERSON:  But the expense -- expense doesn't

5     matter to the UCC.  It matters to my guy.  He's trying to

6     run a business.  He's trying to survive and he's gotten

7     caught up in this mess, and now to explain to him, "Yeah,

8     your bank statements, your business bank statements are the

9     business of this UCC."  Personally, I can't explain that to

10    him.  I can explain, "They get to see what you've done with

11    the debtors," and he's produced the contracts, the emails,

12    the correspondence.  He's even given them background on his

13    business, formation documents.  I mean, this is -- this is

14    getting out of hand, and --

15         THE COURT:  So, let's finish our thought.  2004

16    doesn't mention it, but you can always -- 26 doesn't apply,

17    but 45 would apply, right?

18         MR. PATTERSON:  No.

19         THE COURT:  We'll just disagree with that, then.

20         MR. PATTERSON:  Okay.

21         THE COURT:  I think you can always subpoena.  I

22    think you can always subpoena with a 2004.  I just think you

23    can.

24         MR. PATTERSON:  Okay.  I --

25         MS. PORTER:  (indiscernible)

1          MR. PATTERSON:  I'm not here to argue with you on

2    that one, because I don't think it's an issue, because we've

3    agreed, but --

4          THE COURT:  But I think -- how many counterparties

5    are we talking about, Ms. Porter?

6          MS. PORTER:  Sixteen.

7          THE COURT:  Why do you need all sixteen?

8          MS. PORTER:  Because each of these is identified

9    by ESG to the debtor's counsel as a counterparty that was

10   relevant to FSS and/or the debtor that they were doing

11   business with.

12         THE COURT:  Mr. Patterson --

13         MS. PORTER:  ESG identified these as the

14   counterparties that are relevant to FSS and Alex Jones.

15         THE COURT:  What's the -- what's the response to

16   that, Mr. Patterson?

17         MR. PATTERSON:  Quite frankly, I don't know what

18   she's talking about.  There has been an email, but I can

19   tell you we have provided -- I'll take a step back.  ESG,

20   unlike the debtors in this case -- ESG did no deal without a

21   written contract with all of their parties.  We've produced

22   every contract.  Now, if they want to limit it to that, to

23   the real counterparties, I disagree, but it's -- it's

24   closer, I think.  But to have this random list of -- I don't

25   know who the sixteen are.  They were listed in the subpoena,

1    I think.

2              THE COURT:  Where did you get the sixteen from,

3    Ms. Porter?

4              MS. PORTER:  I'm looking at -- so, I apologize.  I

5    thought that this was already ordered.  And so, I feel like

6    we're revisiting the topic of the prior hearing, but I'm

7    looking at an email, and I can submit this in as evidence if

8    helpful.

9              THE COURT:  No, no, no.  I just want to know where

10   you got it from.

11             MS. PORTER:  It's an email that was written by

12   Joey Delessio to Vickie Driver, counsel to the debtor, that

13   lists the counterparties as FSS and Alex Jones.  And the

14   email is dated January 14th, 2023.

15             MR. PATTERSON:  And it's possible, although I'm

16   not looking at the email --

17             THE COURT:  Mm-hm.

18             MR. PATTERSON:  Number one, my client wrote it

19   before I was involved, so the use of the word

20   "counterparties" is probably misleading because the vast

21   majority of these relationships were done -- and I'm trying

22   to figure out how to explain them, but -- so, another third

23   party, a company called CMC --

24             THE COURT:  Mm-hm.

25             MR. PATTERSON:  Walt Cusick.  He may have appeared

1    in this, but he has a company out in California and he goes

2    out and contacts, for example, My Pillow, all right?  I

3    don't know if that's one or not.

4              THE COURT:  No, I got you.

5              MR. PATTERSON:  I'm making it up.

6              THE COURT:  You're just using it as an example.

7              MR. PATTERSON:  And he says, "Look, I can get you

8    on to advertise on the Free Speech website or on Alex

9    Jones's radio show," and they go, "Okay," and they make a

10   deal, all right?  My Pillow and CMC make a deal.  CMC has --

11   that's not what CMC does is actual -- get them on the

12   website or the radio.  Cusick calls Delessio, my client,

13   ESG, and says, "Hey, this guy's interested.  Can you make it

14   happen?"  Right?  And Joey says, "I can.  For this

15   particular transaction, let's have a contract."  CMC and ESG

16   enter into a contract, separate from -- he's not a party

17   with My Pillow.  Right?

18             THE COURT:  Mm-hm.

19             MR. PATTERSON:  He's with CMC, and once he has a

20   deal with CMC that says, "If I'm able to, I get this much

21   money," whatever it is, then he takes that deal to FSS or

22   Alex Jones, right, and tries to -- you know, say he gets a

23   banner put on the Free Speech website and he gets paid per

24   click, all right?  And he makes that deal with FSS.  His

25   counterparty is CMC.  That's who his deal is with, right,

```
 1    and the UCC is under -- assuming that My Pillow is his

 2    counterparty and it's not.  ESG may have another deal with

 3    My Pillow, with some other client, but to say, "Give me your

 4    bank statements related to My Pillow," in that instance

 5    would have nothing to do with the debtors, but they're

 6    saying they're entitled to see it.  You see what I'm saying?

 7    And so --

 8              THE COURT:  But don't you get to ask the question

 9    -- don't you get to see it and then ask the question to see

10    if there is?  If not, you're just redacting and one will

11    never be able to ask the question.

12              MR. PATTERSON:  Why don't they ask the questions

13    and figure out how it works before they give us the

14    discovery?

15              THE COURT:  I think you then get to subpoena and

16    then show up at a 2004 and ask questions based on the

17    subpoena.

18              MR. PATTERSON:  That's fine.  I'm just telling

19    you, they're saying "counterparty My Pillow" and in that

20    circumstance --

21              THE COURT:  But I think they're using

22    "counterparty" --

23              MR. PATTERSON:  -- I'm going to produce nothing,

24    because My Pillow is not our counterparty.

25              THE COURT:  I think you're going to produce what -
```

1    - now, I got that he was before your client, but I think if

2    your client identified sixteen people, I think that's a fair

3    basis to then seek documents based on them.  Don't you

4    think?

5              MR. PATTERSON:  You can seek them, and I'm telling

6    you, if My Pillow in my example that I gave you is

7    identified as a counterparty, he's going to say, "I have no

8    financial transactions with My Pillow.  Zero.  You get

9    nothing."  Right?  That's what I'm trying to tell the

10   Committee and the Court, but --

11             THE COURT:  I'm just telling you.  So, it sounds

12   like you're going to have to produce unredacted bank

13   statements if that's the answer.  Under attorneys' eyes only

14   --

15             MR. PATTERSON:  Why?

16             THE COURT:  Because we're not going to play this.

17   We're not going to go around.

18             MR. PATTERSON:  We're not -- Judge, that's what

19   I'm trying to tell you.

20             THE COURT:  I disagree.

21             MR. PATTERSON:  I don't want to play a game.

22             THE COURT:  Oh, I'm not saying you do.

23             MR. PATTERSON:  But they're pressing --

24             THE COURT:  I'm not saying you are.

25             MR. PATTERSON:  They're pressing an issue that

1    doesn't make sense and they won't understand it, though.

2            THE COURT:  But I think they get to ask the

3    question.  I don't think you get to explain it.  I think

4    they get to see the documents and they get to ask your

5    client questions and your client gets to answer the

6    questions.

7            MR. PATTERSON:  That's fine, and -- and I will

8    tell you, I don't think there are any more documents --

9            THE COURT:  I don't know.

10           MR. PATTERSON:  -- responsive based upon what

11   they're pressing.  If they're saying counterparties and

12   here's a list of your counterparties, he only has about

13   three -- legally, three, maybe two counterparties.  Right?

14   Because he doesn't do these deals with My Pillow and

15   whatever else they are.  I don't even remember the list.

16           THE COURT:  Got it.  He doesn't --

17           MR. PATTERSON:  He doesn't do deals with them.

18           THE COURT:  He doesn't deal with CMC and then --

19           MR. PATTERSON:  That's right.

20           THE COURT:  And then someone else, who would then

21   go do a deal with someone else.

22           MR. PATTERSON:  Right.  And so, as a counterparty,

23   My Pillow is not a counterparty, and if that's -- they want

24   those financial documents, I'm going to say "None," and if

25   that's the way they want to press it, that's fine.

```
 1                    THE COURT:  Well --

 2                    MR. PATTERSON:  But that's the answer, and that's

 3        accurate.

 4                    THE COURT:  Don't you get to then ask the

 5        questions if there is something -- and I'm not saying -- I'm

 6        not implying it one way or the other.  Don't you get to look

 7        at all the documents and then ask questions to see if there

 8        was something else going on?

 9                    MR. PATTERSON:  Sometimes.  Sometimes, yes.

10                    THE COURT:  But isn't that the purpose of

11        discovery to then rule those questions out, and then you

12        have testimony?

13                    MR. PATTERSON:  Generally, discovery isn't --

14        discovery is to flesh out what you suspect or know, not to

15        dig into someone and try to find something, especially a

16        third party.  The debtor --

17                    THE COURT:  Not find something.  You do get to ask

18        questions and to see if there is something there that is

19        discoverable, right?

20                    MR. PATTERSON:  Of course.  Ask -- I've begged

21        them.  "Ask questions.  Let him explain it to you."  Right?

22                    THE COURT:  But then you get to look at documents,

23        too.

24                    MR. PATTERSON:  If they're related to those things

25        in 2004, which these would not.
```

```
1              THE COURT:  I just disagree.

2              MR. PATTERSON:  Okay.

3              THE COURT:  I think you get to see the documents.

4              MR. PATTERSON:  Look, Judge, I --

5              THE COURT:  No, I know you're not -- I just

6     disagree.  I think -- I think you get to look at them, but I

7     do think there needs to be confidentiality in this part of

8     this.  You know, I do agree that from one perspective,

9     things have a funny way of finding their way outside of

10    closely viewed, and I think that would be really -- I want

11    to make sure that there are appropriate guardrails in place.

12    You know, this can't -- I don't want this going outside of

13    attorney -- you know, kind of the appropriate -- to where

14    you can see what you need and you can get the question --

15    the answers that you need.  Somebody's going to turn over --

16    you know, this case is -- there may be a lot of other people

17    interested in it for other reasons, and it can't get out.

18    That's what I meant.

19             MR. PATTERSON:  Okay.  On top of that, he's not

20    getting paid, my client, from this estate and from the

21    others.

22             THE COURT:  Agree.  I think that's a fair point,

23    too.

24             MR. PATTERSON:  You know, they owe him over half a

25    million dollars.  Post-petition.
```

```
 1              THE COURT:  The Jones estate or FSS?

 2              MR. PATTERSON:  Jones on the Platinum contract and

 3    FSS is holding up funds held by Cusick of about a half a

 4    million dollars, total.  Some of that belongs to FSS, but

 5    yeah, I mean, it's -- you know, it's a high-stakes game of

 6    what I call extortion.  It's not the legal extortion, but --

 7              THE COURT:  No, I know what you mean.

 8              MR. PATTERSON:  But you know, they're holding him

 9    up.

10              MS. PORTER:  I have to --

11              MR. PATTERSON:  He's owed a ton of money.  He's a

12    small business.

13              MS. PORTER:  Sorry, Mr. Patterson --

14              MR. PATTERSON:  And they're causing him to go

15    through this cost and expense when all they need to do is

16    ask some questions to understand the nature of the business

17    and it's going to make more sense, but we will go through t

18    his exercise.

19              THE COURT:  Ms. Porter?

20              MR. PATTERSON:  And if you're ordering me -- and I

21    want to make sure.  You're ordering me to produce 24 months

22    of unredacted bank statements?

23              THE COURT:  Subject to appropriate

24    confidentiality.  I am.

25              MR. PATTERSON:  Well, I -- and I -- with an order
```

1   that it won't leave their office, because if it does, it's a

2   problem.

3            THE COURT:  Yeah, I think it's attorneys' eyes

4   only, right?  Ms. Porter, doesn't that work?

5            MS. PORTER:  We would ask for it to be

6   professionals' eyes only so that the --

7            THE COURT:  Professionals' eyes only.  Yeah,

8   that's fair.

9            MR. PATTERSON:  And I would say attorneys, unless

10  they have a reason.  If they have a reason to send it to a

11  professional --

12           THE COURT:  I think the professional.  I think the

13  -- well, who are you limiting it to?

14           MS. PORTER:  Tenayo and Nardello are both advisors

15  to the Committee who have been helping us to analyze bank

16  statements and bank transactions, and I think that they are

17  (indiscernible)

18           THE COURT:  Both intimately involved in the

19  diligence, right?  Tenayo and --

20           MS. PORTER:  Correct.

21           THE COURT:  Okay.  I think that's fair.

22           MS. PORTER:  And I would like to state that there

23  is no -- to the extent this even has to be said, there's no

24  extortion going on.  This is not in any way linked to

25  payments that may or may not be due to Mr. Delessio.  That

1   has -- we have absolutely nothing to do with that.

2           THE COURT:  Okay.  Okay.  All righty, thank you.

3   I'll get something on the docket.  Thank you.

4           MS. PORTER:  Thank you.  May I also ask for a

5   completion date?

6           MR. PATTERSON:  It's complete except

7   (indiscernible).

8           THE COURT:  Yeah, I think it's complete except

9   with respect to bank statements, so why don't I do this.

10  Let me just take a look.  Today is the 23rd of August.

11  Would Sept -- let's see.  Is September 1 doable?  Realistic?

12  That's next Friday as another way to think about it.

13  September 4th is Labor Day.  That's what I'm trying to

14  avoid.

15          MR. PATTERSON:  I think so.  I mean, there -- I

16  guess this -- and I should have brought this up, but this

17  brings up -- there are bank statements that are closed.

18  When he purchased ESG from Mr. Jones's dad or brother or

19  someone, I don't know -- we provided all those documents --

20  there were bank statements, bank accounts in existence at

21  that time that he no longer has access to, and so he's not

22  going to pay to go get those.  The bank accounts he's using

23  today, he will produce, up to 24 months.  But if they're

24  expecting him to go --

25          THE COURT:  Let's --

1        MR. PATTERSON:  -- into old bank accounts, they

2   can subpoena those.

3        THE COURT:  Right, that's fine.  So, Ms. Porter,

4   why don't we go back 24 months on the active accounts, and

5   if you need more, then somebody just come back and let me

6   know.

7        MS. PORTER:  Your Honor, I would ask that if there

8   any bank account statements that are difficult for ESG or

9   Delessio -- Mr. Delessio to access on their own, that they

10  authorize us to get them for him.  We will work with him to

11  facilitate the burden and help with the expense in that

12  regard.  I think that solves that problem.

13       MR. PATTERSON:  They know how to use subpoenas,

14  Judge.  They don't need our permission.

15       THE COURT:  But is it already being requested?

16  That's the real question, Mr. Patterson.

17       MR. PATTERSON:  I'd have to go back and look.  It

18  seems to me that the request was broad enough to include old

19  bank accounts that he's not using that ESG -- before it was

20  Mr. Delessio's ESG -- utilized.

21       MS. PORTER:  I think that's important --

22       MR. PATTERSON:  It's just in the back of my mind.

23  I don't have specific -- but I seem to recall talking to Mr.

24  Delessio about that, and so he has -- my understanding is he

25  has two bank accounts.  One is just for -- it's a product

1    account on the deal he's doing with Mr. Jones, and then he

2    has his general operating account, which the other deals run

3    through.  That's my recollection, but I'm -- we can do

4    active accounts, but to ask him to go get old bank -- they

5    know the bank accounts.  They can just go subpoena them at

6    the same cost as us.  It's going to cost us money.

7            MS. PORTER:  It will cost a lot more effort on our

8    behalf to use a subpoena rather than to work cooperatively

9    with ESG, and I do believe that these are very important

10   bank account statements if they come from this period,

11   because we're talking about a time when ESG was owned by the

12   debtor's father and I think that the interrelationship is

13   important, for obvious reasons.  So, I would ask that if

14   there are bank account statements that are closed that fall

15   within the 24-month period that ESG be ordered to provide

16   them to us, and the Committee will offer to do whatever is

17   helpful in terms of reaching out to the bank, facilitating

18   that process, making it happen, but that ESG not be excused

19   from producing those --

20           MR. PATTERSON:  That goes beyond --

21           THE COURT:  Yeah.

22           MR. PATTERSON:  -- the very definition of

23   production, which is --

24           THE COURT:  Yeah, I will --

25           MR. PATTERSON:  "Give me what you have."  So --

1           THE COURT:  Yeah.  I think to the extent that he's

2      got them in his possession -- if they're there in his

3      possession, if he has copies of old stuff, I think he's got

4      to produce it, but if he -- I think to the extent that he

5      doesn't, that would exceed the scope of what I think he's

6      required to do, which is to go further out, in other words.

7      I think that's different if he's not -- I think that one

8      goes a little bit out, but I do think he's got to produce

9      active accounts in terms of what he has now, and if he's got

10     copies of old bank statements that are there or if he has --

11     if it's just as easy, Mr. Patterson, to just go get the new

12     -- you know, in other words, if he -- if it's just a matter

13     of kind of flipping something on and printing, I think

14     that's a little different than --

15          MR. PATTERSON:  If he has -- for example, and I

16     don't know (indiscernible) -- he had electronic copies of

17     old bank statements on his computer.  Yes, he would print

18     them off.

19          THE COURT:  That's where I'm going.

20          MR. PATTERSON:  Yes.

21          THE COURT:  Okay.

22          MR. PATTERSON:  And I will find out.  I will ask

23     if he has those, or paper copies in his files.  We'll

24     obviously -- that's production.  (indiscernible) he doesn't.

25          THE COURT:  Just let me ask you, just since we're

```
 1    kind of playing hypotheticals.  What's the -- if he doesn't
 2    have -- if he has an active -- well, I should say if he has
 3    access to an account.  Maybe he doesn't, but he has access
 4    to an account and it's just as simple -- as easy as getting
 5    it from the active account.  What's your view on that?
 6              MR. PATTERSON:  If he can -- look, if he can sit
 7    at his computer and print off the statement --
 8              THE COURT:  That's where I'm going.  If --
 9              MR. PATTERSON:  Yes.
10              THE COURT:  If it requires more -- if he's got to
11    go to a bank and start asking someone to reactivate to go do
12    all that other stuff, then I think that's the subpoena.
13    They've got to go that route.
14              MR. PATTERSON:  Right, if the account is closed,
15    he's obviously not going to have --
16              THE COURT:  Agreed.  Agreed.
17              MR. PATTERSON:  So, yes.  If he can sit and --
18              THE COURT:  Yeah.  We're all on the same page.  If
19    he can sit on his computer and sit around and print it or
20    get it that way, but if it's closed and he's got to go and
21    ask the bank to go do something --
22              MR. PATTERSON:  Right.
23              THE COURT:  -- to give him access, then I think
24    that goes outside of the bounds and he doesn't have to do
25    it.
```

1          MR. PATTERSON:  He will do that.

2          THE COURT:  Okay.  All right, let's shoot for --

3          MS. PORTER:  (indiscernible)

4          THE COURT:  I want to shoot for September 1st.  I

5    just want to set the date.  That's a Friday.  That Monday is

6    Labor Day, so I'm just trying to avoid that.  Ms. Porter?

7          MS. PORTER:  Thank you, Your Honor.  I would

8    request that any bank accounts that are not being produced

9    on the basis that they're closed be at least identified to

10   the Committee so that we know the universe.

11         MR. PATTERSON:  That's an interrogatory.

12         THE COURT:  Yeah, I think that's just a simple

13   rog, right?  You can just -- well, why do they need a rog?

14   I think they --

15         MR. PATTERSON:  To identify?  That would be

16   answering a question.  I have to respond to the request,

17   which I have, but to then say, "Tell me what you're not…" --

18   again, we're beyond the objection -- you know,

19   identification of withholding documents --

20         THE COURT:  No, no, but --

21         MR. PATTERSON:  We're beyond that.  So now we're

22   just saying --

23         THE COURT:  No, no.  I guess it's -- I view the

24   world a little different, and maybe Ms. Porter may agree or

25   disagree with this, but I think he gets to produce what he

1    has and then you get to show up at a 2004 and he gets to ask

2    questions.

3            MR. PATTERSON:   (indiscernible)

4            THE COURT:   Or you get to -- or you get to then --

5    then I agree.   Then you get to submit more formal discovery

6    if there is something there, I think.   But a 2004 -- the

7    purpose is to produce documents that are in your possession

8    and you can go get an examination.   That may be an

9    examination question if you know it.   I think that goes

10   outside of the scope, but to the extent -- I think we've got

11   to kind of play this by the book.

12           MS. PORTER:   (indiscernible) -- I believe that

13   he's -- Mr. Delessio is obligated to produce documents that

14   are in his possession, custody, and control.

15           THE COURT:   Mm-hm.

16           MS. PORTER:   Which means where he has the

17   practical ability to obtain the documents, and in this case,

18   the owner of the accounts, the prior owners -- the owner of

19   the prior accounts, ESG has the practical ability to obtain

20   these statements.   In fact, they are the only ones who

21   really have the authority to obtain these statements absent

22   a subpoena.   So, I understand it's a burden question and

23   they're asking to be excused from the burden, and I would

24   suggest that they identify for us documents they are not

25   producing on the basis of burden specifically by account

1    number.  That's my suggestion.  If the Court does not agree

2    with that (indiscernible) I certainly understand, but that's

3    how I view --

4           THE COURT:  No, I got it.  I'm really hoping that

5    this kind of works itself out and people aren't playing

6    obstinate and we have to show up six weeks later to a 2004

7    to then figure out a bank account and then continue.  I

8    don't want to get involved in this.  I think there's a way

9    to do this where everybody can at least find out what the

10   bank accounts -- where they're located and what banks they

11   were.  This can proceed.  I think there's a way to do this.

12          But if what you're asking me, Ms. Porter, is that

13   you're going to have to show up in October to come figure

14   out where that is, the answer is no, and if it does get

15   there, we're all -- we've all -- something's gone

16   drastically wrong from there.  It's a simple question.  It's

17   just a way to figure that out.  So -- all right, thank you

18   very much.  Have a good day.

19          MS. PORTER:  Thank you.

20

21          (Whereupon these proceedings were concluded at

22   3:05 PM)

23

24

25

```
 1              C E R T I F I C A T I O N

 2

 3       I, Sonya Ledanski Hyde, certified that the foregoing

 4   transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8   Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  August 25, 2023
```