IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| ALEXANDER E. JONES, | ) Case No. 22-33553 (CML) |
| Debtor. | ) |

**RESERVATION OF RIGHTS OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS IN RESPECT OF
ALEXANDER E. JONES'S JULY MONTHLY OPERATING REPORT**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 case (the "Chapter 11 Case") of Alexander E. Jones (the "Debtor" or "Jones") hereby files this reservation of rights (the "Reservation of Rights") in respect of Jones's *Debtor-In-Possession Monthly Operating Report for Filing Period ending 7/31/2023* [ECF No. 392] (the "July MOR"). In support of this Reservation of Rights, the Committee respectfully states as follows.

1. The Committee takes very seriously its fiduciary obligation to maximize the value of Jones's estate for the benefit of creditors. As such, one of the Committee's chief priorities from the outset of the Chapter 11 Case has been to ensure that the Debtor abides by a reasonable budget that accounts for the pending bankruptcy and the nature and magnitude of Jones's more than $1.5 billion in liabilities.[1] Despite the Committee's persistent efforts, however, Jones has refused to commit to what the Committee believes is a reasonable budget. Instead, his spending has only

---

[1] The Committee has endeavored to persuade Jones to undertake other actions to maximize value as well, such as encouraging Jones to sell appropriate non-exempt property. The Committee understands that Jones has largely resisted these requests and has been unwilling to consider selling any assets until very recently. Following long negotiations, the Committee understands that Jones intends to file a motion in the near term seeking authorization to sell discrete categories of non-exempt assets, including certain cars, boats and watches.

accelerated and, as demonstrated in recently filed monthly operating reports, is now nearing a staggering $100,000 per month, exclusive of legal and professional fees. Indeed, since commencing his bankruptcy case, and obtaining the protections that come with it, Jones has reported spending an aggregate of more than $740,000 in non-exempt assets—all in order to continue to enjoy his opulent, pre-petition lifestyle and maintain non-exempt assets, a majority of which should have been sold shortly after the commencement of the Chapter 11 Case. This dramatic waste of value and disregard for the interests of creditors is inappropriate and inconsistent with applicable law. It must stop. Accordingly, the Committee submits this Reservation of Rights to alert the Court and all parties in interest that if Jones does not dramatically and immediately adjust his spending habits, the Committee will seek further relief from the Court to protect the remaining value of Jones's estate for the benefit of creditors, including but not limited to seeking (i) a preliminary injunction to enjoin further waste of estate assets, (ii) appointment of a trustee and/or (iii) dismissal or conversion of the Chapter 11 Case.

2.  As demonstrated by the July MOR, more than nine months into the Chapter 11 Case, Jones continues—and indeed, has exacerbated—a troubling practice of excessive and unregulated spending. In July alone, Jones incurred more than $93,000 in expenses. By any measure, Jones's spending habits far exceed amounts that would be appropriate to maintain a reasonable standard of living and are inconsistent with his obligations as a debtor seeking protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[2]

---

[2] "A debtor cannot file a chapter 11 petition and claim an entitlement to live in the style to which he or she has become accustomed." *In re Weber, 209 B.R. 793, 800* (Bankr. D. Mass. 1997). Of course, Jones—just as any individual chapter 11 debtor—should be permitted to use property of the estate to pay for his ***necessary*** housing, clothing, utilities, transportation, child support/alimony and other necessary expenses such as those needed for asset preservation, but those expenditures should be reasonable as measured against Jones's income and assets and the magnitude of the liabilities that exist against the estate. *See e.g., id.*, at 798–99 (stating that "it is certainly appropriate to examine . . . the use of the debtor's resources during the administration of a [c]hapter 11 case" and noting that minor "belt-tightening [involving travel, a golf club membership, recreation and entertainment] could more than double the debtor's proposed payments to creditors"); *In re Devine*, Case No. 90-00088-H4-11, 1991

3. From the beginning, the Committee's advisors have made every effort to work with the Debtor's advisors to reach agreement on a reasonable monthly budget that would curtail the excessive spending. Specifically, in December 2022, shortly after Jones filed for chapter 11 protection, the Committee sent a letter to Jones's counsel explaining that a certain amount of "belt-tightening" is necessary for an individual debtor in a chapter 11 case with more than $1.5 billion in liabilities (the majority of which he would never be able to satisfy) and, therefore, requesting that Jones propose a budget.[3]

4. After the Committee reiterated this request numerous times by way of letters, e-mails and discussions over a period of almost six months, Jones sent the Committee a proposed budget on May 8, 2023. To be sure, the proposed budget showed no meaningful "belt-tightening" at all, proposing an annual expenditure of more than $700,000 a year to support a lavish lifestyle, including maintaining vacation homes, boats and other non-exempt assets.[4] Shortly after receiving the proposed budget, the Committee responded, identifying lower total annual expenditures the Committee would view as more appropriate and suggesting areas where reasonable cuts could be implemented.[5] Jones refused to consider these suggestions, and, as reflected in recent monthly operating reports, has exceeded even his *own*, overly-generous budget.[6]

5. In July alone, Jones reports incurring expenses in the amount of $93,180, exclusive of legal and professional fees. This includes, among other excessive discretionary spending:

---

Bankr. LEXIS 1057, at *15-17 (Bankr. S.D. Tex. July 10, 1991) (examining debtor's monthly operating reports and determining living expenses had not been properly curtailed).

[3] Letter from D. Zensky to Vickie L. Driver, *et al.*, dated December 30, 2022, attached hereto as **Exhibit A**.

[4] *See* May 19, 2023 Hr'g Tr. 27:19-28:22 (D. Zensky, counsel to the Committee).

[5] The Committee did not purport to dictate what the Debtor could spend each month on each category of expenses, but rather explained what it believed to be a reasonable annual budget and pointed out categories of expenses that seemed excessively high and could easily be reduced.

[6] *See Debtor-In-Possession Monthly Operating Report for Filing Period ending 5/31/2023* [ECF No. 337] ("May MOR"); *Debtor-In-Possession Monthly Operating Report for Filing Period ending 6/30/2023* [ECF No. 381] ("June MOR"); July MOR (the May MOR, the June MOR and the July MOR collectively the "MORs").

(a) $7,900 on "housekeeping," (b) $2,386 on "miscellaneous supplies / services," (c) $15,184 in payments to Jones's wife,[7] (d) $5,286 on "maintenance" for the homestead, (e) $3,902 on "maintenance" and $2,400 on "taxes" for the vacation lake house (a non-exempt asset), (f) $6,338 on "meals and entertainment" and an additional $3,388 on "groceries" and (g) $11,292 on childcare related expenses, including $7,649 on "child care," $1,443 for kids' "activities," and another $2,200 for "tuition / tutor." *See* July MOR [392-1] at 4. These expenses are *just for the month of July*. In May and June, Jones similarly reported incurring expenses of $63,925 and $85,114, respectively, exclusive of legal and professional fees.[8]

6. The Committee's advisors have been in communication with the Debtor's advisors to request additional details and supporting documentation concerning the spending reported in the MORs. Just yesterday, the Debtor's financial advisor, BlackBriar Advisors LLC, began to provide limited documentation regarding certain of the expenses. But documentation concerning many of the significant expenses has yet to be produced.[9] Based on representations from counsel, the Committee also understands that the Debtor's professionals intend to begin taking a more proactive role in overseeing and participating in the payment of Jones's expenses going forward and are working to reconcile apparent discrepancies and/or duplicative payments reported in recent MORs. The Committee appreciates these efforts and hopes that they will, in fact, result in the substantial curtailment of expenses going forward.

---

[7] Jones pays more than $15,000 to his wife, Erika Wulff-Jones every month, purportedly under a prenuptial agreement. Counsel to the Committee has informed counsel to the Debtor and counsel to Mrs. Wulff-Jones that these payments are textbook avoidable fraudulent transfers that must be recovered for the benefit of the estate and that these monthly payments must cease going forward. The Debtor has thus far refused to prosecute these claims and the Committee reserves all rights to seek standing to recover these transfers if the Debtor continues to refuse to recover the funds that have been transferred to Mrs. Wulff-Jones.

[8] *See* May MOR; June MOR. According to the May MOR and June MOR, childcare expenses in May and June totaled $13,660 and $16,255, respectively. Jones also spent an additional $13,000 on "Children's Activities" in June.

[9] As for the big-ticket expenses for which no supporting documentation has been produced, the Committee has serious concerns about how the expenses have been vetted and verified to date.

7. The Committee has been exceedingly judicious in seeking the Court's intervention in discovery and various other matters in this Chapter 11 Case and has every intention of continuing to work in good faith with the Debtor's advisors in respect of the Committee's concerns. That said, and notwithstanding promised efforts by the Debtor's advisors, the Committee can no longer remain silent in respect of the egregious spending that has continued month after month.

8. Accordingly, the Committee submits this Reservation of Rights to preview for the Court and parties in interest that if the Debtor does not correct his spending habits immediately and substantially, the Committee intends to seek further relief in the near term, including but not limited to seeking (i) a preliminary injunction to enjoin waste of estate assets, (ii) appointment of a trustee, and/or (iii) dismissal or conversion of the Chapter 11 Case.

9. For the avoidance of doubt, the Committee reserves its right to amend or supplement this Reservation of Rights on any basis and reserves all rights and remedies with respect to the July MOR and otherwise in the Chapter 11 Case.

Dated: August 29, 2023

Respectfully submitted,

By: ___/s/ Marty L. Brimmage_____
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr.
Texas Bar No. 00793386
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: mbrimmage@akingump.com

-and-

David M. Zensky (admitted *pro hac vice*)
Sara L. Brauner (admitted *pro hac vice*)
Katherine Porter (admitted *pro hac vice*)
Anna Kordas (admitted *pro hac vice*)
One Bryant Park

5

New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: dzensky@akingump.com
Email: sbrauner@akingump.com
Email: kporter@akingump.com
Email: akordas@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Alexander E. Jones*

**<u>CERTIFICATE OF SERVICE</u>**

      The undersigned certifies that on August 29, 2023, a true and correct copy of the foregoing Reservation of Rights was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

                                                 */s/ Marty L. Brimmage*
                                                 Marty L. Brimmage, Jr.

**Exhibit A**



**DAVID M. ZENSKY**
+1 212.872.1075/fax: +1 212.872.1002
dzensky@akingump.com

December 30, 2022

VIA E-MAIL

Vickie L. Driver
Christina W. Stephenson
Crowe & Dunlevy, P.C.
2525 McKinnon St., Suite 425
Dallas, TX 75201

Shelby A. Jordan
Antonio Ortiz
Jordan & Ortiz, P.C.
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX 78401

Re:   *In re Alexander E. Jones*, No. 22-33553 (CML) (Bankr. S.D. Tex.)

Dear Counsel:

I write on behalf of the Official Committee of Unsecured Creditors (the "UCC") appointed in the chapter 11 case of Alexander E. Jones (the "Chapter 11 Case"). It should come as no surprise that the UCC is concerned about Mr. Jones's accounting practices and the expenditure of estate funds during the pendency of this Chapter 11 Case. We also note your recent *Emergency Motion of Alexander E. Jones to Fix a Date by Which Debtor Must Assume or Reject Executory Contract* [ECF No. 349] (the "Emergency Motion" and the underlying agreement, the "Jones Employment Agreement") filed on December 21, 2022 in the bankruptcy case of Free Speech Systems, LLC ("FSS" and such case, the "FSS Case"), pursuant to which Mr. Jones urges FSS to assume the Jones Employment Agreement and compensate Mr. Jones in accordance with the terms thereof. In light of these circumstances, the UCC requests certain information, as outlined below.

Undoubtedly, transparency is the hallmark of cases commenced under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and applicable case law mandate that a chapter 11 debtor remain in strict compliance with bankruptcy reporting requirements.[1] Specifically, as I noted during the

---

[1] *In re McDowell*, 483 B.R. 471, 477 (Bankr. S.D. Tex. 2012) ("As the Fifth Circuit has said, the duty of disclosure in a bankruptcy proceeding is a continuing one. . . . Debtors must divulge all relevant facts in order to receive the full



December 30, 2022
Page 2

status conference held before the United States Bankruptcy Court for the Southern District of Texas (the "Court") on December 7, 2022, the Bankruptcy Code assigns a debtor in possession the fiduciary duties of a trustee. Therefore, in his capacity as a debtor in possession, Mr. Jones has a duty to maximize the value of his bankruptcy estate and to protect and conserve the value of that estate for benefit of his creditors.[2]

In view of the foregoing, the UCC requests the following information and clarifications, in no particular order of importance, at your earliest convenience. *First*, you have asserted repeatedly—including most recently during the hearing held before the Court on December 19, 2022 (the "December 19 Hearing")—that Mr. Jones has contributed approximately $900,000 of his own funds to FSS after FSS filed for bankruptcy protection to avoid the shutdown of operations.[3] To date, neither the UCC nor the Sandy Hook Families[4] have seen evidence of any such contributions. We request that you provide such evidence so the UCC may analyze the terms and timing of such contributions to determine the rights of the Jones estate and its creditors with respect to, and the propriety of, such contributions.[5]

*Second*, as you know, chapter 11 debtors are required to file Monthly Operating Reports ("MORs") pursuant to the United States Trustee's guidelines. Each MOR must be filed with the bankruptcy court no later than the 21st day of the month immediately following the reporting period covered by the MOR. Please confirm your intention to file the first MOR no later than January 23, 2023 and to file subsequent MORs in a timely fashion, as required by the U.S. Trustee's Guidelines. *See* 28 C.F.R. § 58.8.

*Third*, we understand based on your statements made to the Court at the December 19 Hearing[6] and in the Emergency Motion that Mr. Jones currently is preparing a budget that will be shared with the Court and Mr. Jones's creditors. Please let us know when you expect to complete the budget and, in the event it will not be completed by next week, whether you will provide a working draft of such budget (on a without prejudice basis) for the UCC's review now.

*Fourth*, Mr. Jones has conceded he will never be able to repay his obligations to creditors in full. Indeed, Mr. Jones has represented that the size of his estate is no greater than $10,000,000,

---

benefits and protections of the Bankruptcy Code, with the broad policy and goals of the Code favoring transparency and disclosure whenever possible.").

[2] *See* 11 U.S.C. § 1107(a); *In re Devine*, Case No. 90-00088-H4-11, 1991 Bankr. LEXIS 1057, at *18 (Bankr. S.D. Tex. July 10, 1991) ("Although debtors who exceed the financial requirements of [c]hapter 13 may reorganize in Chapter 11 without the safeguards of a trustee, they must fulfill the rights and duties of a trustee in protecting and enhancing the estate.").

[3] Dec. 19 Hearing Tr. 36:10-14.

[4] The plaintiffs in the Texas and Connecticut state court litigation are referred to collectively as the "Sandy Hook Families."

[5] To the extent any such contributions were made after Mr. Jones himself filed for bankruptcy protection, these contributions may not be proper absent court order. 11 U.S.C. § 363(c)(1); Bankr. S.D. Tex. R. 4002-1 ("The debtor must not transfer (sell, give, move, encumber) an asset outside of the ordinary course of business except on order.").

[6] Dec. 19 Hearing Tr. 36:1-7.



December 30, 2022
Page 3

as compared to obligations in excess of $1.5 billion. Accordingly, the UCC requests that, in addition to a budget, Mr. Jones provide evidence of concrete steps he has taken and will continue to take in order to curtail his standard of living. Mr. Jones's current salary draw based on the most recently entered cash collateral order entered in the FSS Case is $20,000 per pay period—*i.e.*, $40,000 per month.[7] While individual chapter 11 debtors are permitted to use property of the estate to pay their personal expenses, including *necessary* housing, clothing, utilities, transportation, child support/alimony and other *necessary* expenses such as those needed for asset preservation, the determination of what is construed as necessary and appropriate is made on a case-by-case basis, and courts often will evaluate the reasonableness of proposed personal expenditures in connection with the debtor's income or assets and the magnitude of claims.[8] In light of the significant disparity between Mr. Jones's outstanding indebtedness as compared to his alleged assets, the UCC expects that Mr. Jones will scale down his pre-petition standard of living dramatically to prevent further diminution of the bankruptcy estate and preserve value for his creditors.[9] To the extent the UCC determines that Mr. Jones's budget reflects excessive or unreasonable personal spending so as to erode property of the estate to the detriment of the estate creditors, the UCC will ask the Court to reject the budget and/or seek appointment of a chapter 11 trustee in this Chapter 11 Case.[10]

*Finally*, and further to the Emergency Motion and related discussions, to the extent Mr. Jones receives any increase in compensation as a result of further amendments to the cash collateral order in the FSS Case, renegotiation of the Jones Employment Agreement or otherwise, the difference between Mr. Jones's current salary and any increased amount should be placed in escrow for to the benefit of Mr. Jones's creditors. Moreover, under no circumstances should any wages or compensation payments be contributed to any employee annuity or life insurance plan, as contemplated by the Jones Employment Agreement. Mr. Jones's wages are property of the bankruptcy estate pursuant to Bankruptcy Code section 541[11]; and, as noted above, consistent with Mr. Jones's fiduciary duties, property of the estate must be preserved to maximize creditor recovery. Please confirm that Mr. Jones will act in accordance with the foregoing.

Please do not hesitate to contact me with any questions regarding the requests set forth herein. I look forward to your response. For the avoidance of doubt, nothing herein is intended to

---

[7] *Seventh Interim Order Authorizing Debtor's Use of Cash Collateral and Providing Partial Adequate Protection*, Case No. 22-60043 (Dkt. No. 333) (Bankr. S.D. Tex. Dec. 19, 2022).

[8] *See e.g., In re Weber*, 209 B.R. 793, 798–99 (Bankr. D. Mass. 1997) (stating that "it is certainly appropriate to examine . . . the use of the debtor's resources during the administration of a [c]hapter 11 case" and noting that minor "belt-tightening [involving travel, a golf club membership, recreation and entertainment] could more than double the debtor's proposed payments to creditors"); *In re Devine*, *supra*, 1991 Bankr. LEXIS 1057 at *15-17 (examining debtor's MORs and determining living expenses had not been properly curtailed).

[9] *In re Weber, supra* 209 B.R. at 800 ("A debtor cannot file a chapter 11 petition and claim an entitlement to live in the style to which he or she has become accustomed.").

[10] "When the debtor-in possession fails to fulfill his [fiduciary duties to the estate], § 1104(a)(2) provides that the court shall order the appointment of a trustee." *In re Devine*, *supra*, 1991 Bankr. LEXIS 1057 at *15 (same).

[11] *See* 11 U.S.C. § 541(a); *In re Blixseth*, No. 09-60452-7, 2011 Bankr. LEXIS 3060, at *11–12 (Bankr. D. Mont. Apr. 1, 2011).



December 30, 2022
Page 4

comprise a complete recitation of relevant facts or law or the UCC's rights and claims, and nothing herein constitutes a waiver or relinquishment of any of the UCC's rights, remedies, claims or objections, all of which expressly are reserved.

        Sincerely,

        */s/ David M. Zensky*
        David M. Zensky

cc: Avi Moshenberg
   Ryan Chapple
   Alinor Sterling
   Kyle Kimpler
   Philip Dublin
   Marty Brimmage
   Sara Brauner
   Anna Kordas