<u>**Exhibit A**</u>

**Creditors' Plan**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ALEXANDER E. JONES, | ) Case No. 22-33553 (CML) |
| | ) |
| Debtor. | ) |
| | ) |

**CREDITORS' NON-UNIFORM INDIVIDUAL
CHAPTER 11 PLAN OF LIQUIDATION FOR ALEXANDER E. JONES**

*/s/ Marty L. Brimmage, Jr.*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Marty L. Brimmage, Jr.
Texas Bar No. 00793386
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Fax: (214) 969-4343
E-mail: mbrimmage@akingump.com

*-and-*

David M. Zensky (admitted *pro hac vice*)
Sara L. Brauner (admitted *pro hac vice*)
Katherine Porter (admitted *pro hac vice*)
Anna Kordas (admitted *pro hac vice*)
Melanie A. Miller (*pro hac vice* pending)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Fax: (212) 872-1002
E-mail: dzensky@akingump.com
E-mail: sbrauner@akingump.com
E-mail: kporter@akingump.com
E-mail: akordas@akingump.com

***Counsel to the Official Committee of Unsecured
Creditors of Alexander E. Jones***

*/s/ Ryan Chapple*
**CAIN & SKARNULIS PLLC**
Ryan E. Chapple
State Bar No. 24036354
303 Colorado Street, Suite 2850
Austin, TX 78701
Telephone: (512) 477-5000
Fax: (512) 477-5011
E-mail: rchapple@cstrial.com

**KOSKOFF KOSKOFF & BIEDER, PC**
Alinor C. Sterling (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone: (203) 336-4421
E-mail: asterling@koskoff.com

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
Kyle J. Kimpler (admitted *pro hac vice*)
Stephanie P. Lascano (admitted *pro hac vice*)
Vida Robinson (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
E-mail: kkimpler@paulweiss.com
E-mail: slascano@paulweiss.com
E-mail: virobinson@paulweiss.com

***Co-Counsel to the Connecticut Plaintiffs***

*/s/ Avi Moshenberg*
**MCDOWELL HETHERINGTON LLP**
Avi Moshenberg
State Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, TX 77002
Telephone:  (713) 337-5580
Fax:  (713) 337-8850
E-mail:  Avi.Moshenberg@mhllp.com

**CHAMBERLAIN, HRDLICKA,**
**WHITE, WILLIAMS & AUGHTRY, PC**
Jarrod B. Martin
State Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, TX 77002
Telephone:  (713) 356-1280
Fax:  (713) 658-2553
E-mail:  jarrod.martin@chamberlainlaw.com

**WILLKIE FARR & GALLAGHER LLP**
Jennifer J. Hardy
State Bar No. 24096068
600 Travis Street
Houston, TX 77002
Telephone:  (713) 510-1766
Fax:  (713) 510-1799
E-mail:  jhardy2@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Stuart R. Lombardi (admitted *pro hac vice*)
Ciara A. Sisco (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 728-8000
Fax:  (212) 728-8111
E-mail:  rstrickland@willkie.com
E-mail:  slombardi@willkie.com
E-mail:  csisco@willkie.com

***Co-Counsel to the Texas Plaintiffs***

Dated:  January 5, 2024

**TABLE OF CONTENTS**

ARTICLE I. DEFINITIONS ............................................................................................................. 1

    A.    Defined Terms ................................................................................................. 1

    B.    Rules of Interpretation .................................................................................... 9

    C.    Computation of Time ..................................................................................... 10

    D.    Reference to Monetary Figures ..................................................................... 11

    E.    Controlling Document ................................................................................... 11

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS ...................... 11

    A.    Administrative Claims. .................................................................................. 11

    B.    Professional Fee Claims................................................................................. 11

    C.    Priority Tax Claims........................................................................................ 12

ARTICLE III. TREATMENT AND CLASSIFICATION OF CLAIMS ................................... 13

    A.    Classification of Claims ................................................................................ 13

    B.    Treatment of Claims ..................................................................................... 13

ARTICLE IV. THE GUC TRUST.............................................................................................. 15

    A.    The GUC Trust .............................................................................................. 15

    B.    The GUC Trustee .......................................................................................... 15

    C.    Assignments ................................................................................................... 16

    D.    GUC Trust Assets .......................................................................................... 16

    E.    Litigation Assets ........................................................................................... 16

    F.    Confidentiality ............................................................................................... 17

    G.    Tax Treatment of GUC Trust Under Applicable Laws .................................. 17

    H.    Transferability and Certain Securities Law Matters ..................................... 18

    I.    Retention of Professionals ............................................................................. 18

ARTICLE V. TREATMENT OF NON-DISCHARGEABLE CLAIMS .................................... 18

ARTICLE VI. MEANS OF IMPLEMENTATION..................................................................... 18

    A.    Plan Distributions.......................................................................................... 18

    B.    Jones Transfer Obligation ............................................................................. 19

    C.    Jones Full Disclosure .................................................................................... 19

    D.    Additional Obligations.................................................................................. 20

    E.    Premarital Agreement .................................................................................... 20

    F.    Dissolution of Statutory Committees and Cessation of Fee and Expense Payment 20

ARTICLE VII. PROCEDURES FOR DISPUTED CLAIMS ....................................................... 21

    A.    Objections to Prepetition Claims ................................................................. 21

    B.    Allowance of Claims .................................................................................. 21

    C.    Estimation of Claims .................................................................................. 21

    D.    No Distributions Pending Allowance .......................................................... 21

    E.    Resolution of Claims .................................................................................. 21

    F.    Retained Amounts ...................................................................................... 22

    G.    Late Filed Claims ...................................................................................... 22

    H.    Amendments to Claims ............................................................................... 22

ARTICLE VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................... 22

    A.    Rejection of Executory Contracts and Unexpired Leases ............................. 22

    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ........... 23

    C.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed ........ 24

ARTICLE IX. RETENTION OF EXEMPT PROPERTY ........................................................ 25

ARTICLE X. RELEASES AND EXCULPATIONS ................................................................ 25

    A.    Releases .................................................................................................... 25

    B.    Exculpations ............................................................................................. 25

ARTICLE XI. CONDITIONS PRECEDENT TO EFFECTIVENESS .................................... 26

ARTICLE XII. RETENTION OF JURISDICTION ............................................................... 26

ARTICLE XIII. MODIFICATION OF PLAN ....................................................................... 28

ARTICLE XIV. MISCELLANEOUS PROVISIONS ............................................................. 28

    A.    Immediate Binding Effect ........................................................................... 28

    B.    Discharge ................................................................................................. 28

    C.    Reservation of Rights ................................................................................. 28

    D.    FSS Plan ................................................................................................... 29

    E.    Entire Agreement ...................................................................................... 29

    F.    No Admission ............................................................................................ 29

# INTRODUCTION

The UCC and the Sandy Hook Families propose the following Plan pursuant to the provisions of chapter 11 of the Bankruptcy Code.  For the avoidance of doubt, Confirmation of the Plan shall not affect the FSS Case and shall not impair FSS's ability to prosecute the FSS Plan and perform thereunder if confirmed.

# ARTICLE I.
# DEFINITIONS

A. *Defined Terms*

As used in the Plan, capitalized terms shall have the meanings set forth below.

1.       "***Administrative Claim***" means a Claim for which a holder asserts and is determined to be entitled to priority for costs and expenses of administration of the Debtor's estate pursuant to sections 503 and 507(a)(1) of the Bankruptcy Code.

2.       "***Affiliate***" means an "affiliate" as defined by section 101(2) of the Bankruptcy Code, and shall include with respect to Jones, without limitation, A. Emric Productions LLC, AEJ Austin Holdings LLC, AEJ Holdings, LLC, Austin Shiprock Publishing, LLC, Emric Productions, Free Speech Systems, LLC, Guadalupe County Land and Water LLC, Info W, LLC, IWHealth, LLC, Jones Productions, Jones Productions, LLC, Jones Report, LLC, JLJR Holdings LLC, Magnolia Management LLC, Magnolia Management, LP, Magnolia Holdings Limited Partnership, Magnolia Limited Partnership, Planet Infowars, LLC, PLJR Holdings LLC, Prison Planet TV, LLC, PQPR Holdings Limited LLC, RCGJ, LLC, and the Jones Trusts.

3.       "***Allowed***" or "***Allowed Amount***" means, with respect to any Claim against the Debtor, except to the extent that the Plan provides otherwise, any portion thereof:  (a) that is allowed under the Plan, by Final Order, or pursuant to a settlement; (b) that is evidenced by a Proof of Claim timely Filed by the applicable Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or that is not required to be evidenced by a Filed Proof of Claim under the Plan, the Bankruptcy Code, or a Final Order); or (c) that is scheduled by the Debtor as not disputed, contingent, or unliquidated, and for which no Proof of Claim has been timely Filed; *provided that*, with respect to a Claim described in clauses (b) and (c) above, such Claim shall be considered Allowed only if and to the extent that such Claim is not Disallowed and no objection to the allowance of such Claim is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order.

4.       "***Bar Date***" means the dates established by the Bankruptcy Court or otherwise provided for by the Bankruptcy Code, the Bankruptcy Rules, or the Plan by which any Proof of Claim must be Filed with respect to such Claims; *provided that* there shall be no applicable Bar Date for Claims for which the Plan excludes from the requirement of Filing Proofs of Claim.

5.      "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended.

6.      "***Bankruptcy Court***" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

7.      "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

8.      "***Business Day***" means any day, other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)), or other day on which commercial banks are authorized to close under the laws of, or are in fact closed in, the state of Texas.

9.      "***Cash***" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

10.      "***Causes of Action***" means, collectively, any and all actions, claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or pursuant to any other theory of law or otherwise.  Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

11.      "***Chapter 11 Case***" means the above-captioned case filed under chapter 11 of the Bankruptcy Code.

12.      "***Claim***" means any "claim," as such term is defined in section 101(5) of the Bankruptcy Code, against the Debtor or the Debtor's Estate.

13.      "***Claimant***" means the holder of a Claim.

14.      "***Claims Objection Bar Date***" means the deadline for filing objections to requests for payment of Claims, which shall be the later of (a) ninety (90) days after the Effective Date and (b) ninety (90) days after the Filing of the applicable Claim.

15.      "***Clerk***" means the "bankruptcy clerk" as defined by Bankruptcy Rule 9001.

16.     "***Confirmation***" means the entry by the Bankruptcy Court of the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

17.     "***Confirmation Date***" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

18.     "***Confirmation Order***" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

19.     "***Cure Amount***" shall have the meaning ascribed to such term in <u>Article VIII.C</u> of the Plan.

20.     "***David Jones***" means Jones's father, Dr. David Jones.

21.     "***Debtor***" means Jones, the debtor in the above-captioned Chapter 11 Case.  For the avoidance of doubt, Debtor shall also refer to the Debtor as reorganized on or after the Effective Date in accordance with the Plan.

22.     "***Disallowed***" means (a) any Claim, or any portion thereof, that has been disallowed by Final Order or settlement, as provided in the Plan or the Confirmation Order; (b) any Claim or interest, or any portion thereof, that is not scheduled or that is scheduled at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules, a Final Order of the Bankruptcy Court, or otherwise deemed timely Filed under applicable law; or (c) any Claim, or any portion thereof, that is not Allowed.

23.     "***Disputed***" means, with respect to a Claim, any such Claim, or any portion thereof, (a) to the extent neither Allowed nor Disallowed under the Plan or a Final Order, or (b) for which a Proof of Claim or a motion for payment has been timely filed with the Bankruptcy Court, to the extent the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by Final Order.  To the extent only the Allowed amount of a Claim is disputed, such Claim shall be Allowed in the amount not disputed, if any, and Disputed as to the balance of such Claim.

24.     "***Effective Date***" means the first Business Day after the Confirmation Date on which (a) all conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to <u>Article XI</u> of the Plan; (b) no stay of the Confirmation Order is in effect; and (c) the UCC files a notice of the occurrence of the Effective Date.

25.     "***Entity***" means an "entity" as defined by section 101(15) of the Bankruptcy Code.

26.     "***Erika Jones***" means Jones's wife, Erika Wulff Jones.

3

27.    "***Estate***" means the estate created by sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case and all property (as defined in section 541 of the Bankruptcy Code, including any Causes of Action) acquired by the Debtor after the Petition Date through the Effective Date.

28.    "***Executory Contract***" means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

29.    "***Exempt Assets***" are all of the Debtor's assets that are exempt pursuant to section 1123(c) of the Bankruptcy Code.

30.    "***Exempt Asset Schedule***" is the schedule enumerating all Exempt Assets.

31.    "***Exculpated Parties***" means, collectively, and in each case, solely in its capacity as such:  (a) the Sandy Hook Families; (b) the immediate family members of the Sandy Hook Families; (c) the UCC; and (d) with respect to each of the foregoing (a)-(c), such Entities' respective employees, agents, financial advisors, and attorneys, including (i) counsel to the Sandy Hook Families, (ii) counsel to the UCC, and (iii) advisors to the UCC, including accountants, representatives, and other Professionals, each in their capacity as such.

32.    "***Filed***" means filed with the Bankruptcy Court in the Chapter 11 Case.

33.    "***Final Order***" means, as applicable, an order or judgment of the Bankruptcy Court, or court of competent jurisdiction with respect to the subject matter, that has not been reversed, stayed, modified, or amended, as entered on the docket in this Chapter 11 Case or the docket of any court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; *provided that* the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order will not preclude such order from being a Final Order.

34.    "***FSS***" means Free Speech Systems, LLC.

35.    "***FSS Case***" means the bankruptcy case of FSS, Case No. 22-60043 (CML), pending before the Bankruptcy Court.

36.    "***FSS Docket***" means the docket in the FSS Case.

37.    "***FSS Plan***" means the *Debtors' First Amended Plan of Reorganization Under Subchapter V of the Bankruptcy Code*, filed at FSS Docket No. 756 (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms thereof).

38.     "*General Unsecured Claim*" means any Claim other than a Secured Claim, Priority Claim, Other Priority Claim, or Subordinated Claim.

39.     "*GUC Election Cash Pool*" means an amount in Cash of $50,000.00.

40.     "*GUC Trust*" shall have the meaning ascribed to such term in Article IV.A of the Plan.

41.     "*GUC Trust Agreement*" means the agreement establishing and describing the GUC Trust, which shall be submitted in connection with the Plan Supplement and shall be in form and substance acceptable to the UCC and the Sandy Hook Families.

42.     "*GUC Trust Assets*" means (a) all Jones's assets, rights, and claims that are not Exempt Assets, whether owned by Jones directly, indirectly, or otherwise held for the benefit of Jones existing as of the Effective Date, in each case whether presently known or discovered at any time by the GUC Trustee, and including, but not limited to, Cash, any tax refund to which Jones is entitled (whether or not such refund is immediately available to Jones as of the Effective Date), 100% of Jones's equity ownership interests in FSS, Jones's full, direct or indirect ownership interests in PQPR, all assets held in the Jones Trusts, any current contractual right entitling Jones to future royalties, and any identified equitable or future interests in property, (b) the Litigation Assets, and (c) once all Professional Fee Claims have been irrevocably paid in full or Disallowed pursuant to one or more Final Orders of the Bankruptcy Court, any remaining Cash held in the Professional Fee Escrow Account.

43.     "*GUC Trust Interests*" means interests in the GUC Trust.

44.     "*GUC Trustee*" shall have the meaning ascribed to such term in Article IV.A of the Plan.

45.     "*Impaired*" means, with respect to any class of Claims, a class of Claims that is "impaired" as defined by section 1124 of the Bankruptcy Code.

46.     "*Insider*" means an "insider" as defined by section 101(31) of the Bankruptcy Code.

47.     "*Internal Revenue Code*" means the U.S. Internal Revenue Code of 1986, as amended.

48.     "*IRS*" means the Internal Revenue Service.

49.     "*Jones*" means Alexander E. Jones, the Debtor in the above-captioned Chapter 11 Case.

50.     "*Jones Full Disclosure*" shall have the meaning ascribed to such term in Article VI.C of the Plan.

51.     "*Jones Transfer Obligation*" shall have the meaning ascribed to such term in Article VI.B of the Plan.

52.     "***Jones Trusts***" shall mean the Recharge Dynasty Trust, the 2022 Litigation Settlement Trust, the RXXCTTGAA Trust, the Green Leaf Trust, the AEJ 2018 Trust, the Missouri779384 Trust, and the Alexander E. Jones Descendent and Beneficiary Trust.

53.     "***Lien***" means a "lien" as defined by section 101(37) of the Bankruptcy Code.

54.     "***Litigation Assets***" are those litigation-related assets and Causes of Action to be vested in the GUC Trust, as described in Article IV.E of the Plan.

55.     "***Litigation Committee***" shall have the meaning ascribed to such term in Article IV.B of the Plan.

56.     "***Material Misstatement***" shall have the meaning ascribed to such term in Article VI.C of the Plan.

57.     "***Non-Dischargeable Claims***" means any and all claims arising out of the following proceedings that have not been dismissed:  (a) *Heslin* v. *Jones*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas; (b) *Pozner* v. *De La Rosa, et al.*, Case No. D-1-GN-001842, in the Judicial District Court of Travis County, Texas; (c) *Lafferty* v. *Jones, et al.*, Case No. UWY-CV18-6046436-S, in the Judicial District of Waterbury of the Connecticut Superior Court; (d) *Sherlach* v. *Jones, et al.*, Case No. UWY-CV18-6046437-S, in the Judicial District of Waterbury of the Connecticut Superior Court; and (e) *Sherlach* v. *Jones, et al.*, Case No. UWY-CV18-6046438-S, in the Judicial District of Waterbury of the Connecticut Superior Court, in each case, to the extent such claims were determined to be non-dischargeable by the Bankruptcy Court's memorandum decisions dated October 19, 2023,[1] or pursuant to any further Final Order.

58.     "***Other Priority Claim***" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, including any Priority DSO Claim.

59.     "***Petition Date***" means December 2, 2022, the date on which Jones commenced the Chapter 11 Case.

60.     "***Plan***" means this Creditors' Non-Uniform Individual Chapter 11 Plan of Liquidation for Alexander E. Jones, proposed by the UCC and the Sandy Hook Families, as it may be amended, modified, and/or supplemented from time to time.

61.     "***Plan Supplement***" means the compilation of documents and forms of documents, term sheets, agreements, schedules, and exhibits to the Plan (or draft forms thereof, in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules), and any additional documents Filed prior to the Effective Date as amendments to the Plan Supplement, each of which shall be acceptable to the UCC and the Sandy Hook Families.  The Plan Supplement

---

[1]     *Memorandum Decision on Connecticut Plaintiffs' Motion for Summary Judgment Against Jones*, Adv. Pro. No. 23-03037 [Docket No. 76]; *Memorandum Decision on Texas Plaintiffs' Motion for Summary Judgment Against Jones*, Adv. Pro. No. 23-03035 [Docket No. 46].

may include the following (including drafts or forms, as applicable), or the material terms of the following, as applicable:  (a) GUC Trust Agreement; (b) the Schedule of Assumed Executory Contracts and Unexpired Leases; (c) the Schedule of Rejected Executory Contracts and Unexpired Leases; (d) the Exempt Asset Schedule; and (e) any other necessary documentation related to implementation of the Plan.

62.     "*Premarital Agreement*" is the agreement by and between Jones and Erika Jones, dated as of December 18, 2016.

63.     "*Priority Claim*" means an Administrative Claim, a Priority Tax Claim, or a Professional Fee Claim.

64.     "*Priority Claims Bar Date*" means the deadline for filing requests for payment of Priority Claims, which shall be thirty (30) days after the Effective Date.

65.     "*Priority DSO Claim*" means an Allowed Claim for prepetition domestic support obligations that is entitled to priority under section 507(a)(1) of the Bankruptcy Code.

66.     "*Priority Tax Claim*" means a Claim for which the holder asserts and is determined to be entitled to priority under section 507(a)(7) of the Bankruptcy Code.

67.     "*Professional*" means an Entity retained pursuant to a Bankruptcy Court order in accordance with section 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code.

68.     "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been previously paid.

69.     "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtor with Cash on or before the Effective Date in an amount equal to the Professional Fee Escrow Amount.

70.     "*Professional Fee Escrow Amount*" means the total amount of Professional Fee Claims estimated pursuant to Article II.B.3 of the Plan.

71.     "*Protective Order*" means the *Stipulated Confidentiality Agreement and Protective Order* [Docket No. 159].

72.     "*Proof of Claim*" means a written proof of claim Filed against the Debtor in the Chapter 11 Case by the applicable Bar Date.

73.     "*PQPR*" means PQPR Holdings Limited LLC.

74.    "***Released Parties***" means, collectively, and in each case, solely in its capacity as such:  (a) the Sandy Hook Families; (b) the immediate family members of the Sandy Hook Families; (c) the UCC; (d) with respect to each of the foregoing (a)-(c), such Entities' respective current and former Affiliates, and such Entities' and their current and former Affiliates' current and former successors, assigns, employees, agents, financial advisors, and attorneys, including (i) counsel to the Sandy Hook Families, (ii) counsel to the UCC, and (iii) advisors to the UCC, including accountants, representatives, and other Professionals, each strictly in their capacity as such; (e) members of Jones's family that are legally minors as of the Effective Date; and (f) any Insider or Affiliate of Jones that has made, or has caused to be made, a Release Settlement Payment.

75.    "***Releasing Parties***" means (a) Jones and his Estate; (b) the UCC; (c) the Sandy Hook Families; (d) any Insider or Affiliate of Jones that has made, or has caused to be made, a Release Settlement Payment; and (e) all holders of Claims, Interests, or Cause of Actions that (i) vote to accept the Plan or (ii) are Unimpaired and do not timely file an objection to the releases contained in Article X of the Plan that is not resolved before Confirmation.

76.    "***Release Settlement Payment***" means a payment to the GUC Trust of an amount of Cash acceptable to (a) prior to the Effective Date, the UCC, and (b) after the Effective Date, the GUC Trustee, as determined in accordance with the GUC Trust Agreement, on account of Trust Cause of Action against any Insider or Affiliate of Jones.

77.    "***Sandy Hook Families***" means Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, Erica Ash (aka Erica Lafferty), Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine.

78.    "***Sandy Hook Family Claims***" means any Claim for which a Proof of Claim has been Filed in the Chapter 11 Case by any member of the Sandy Hook Families.

79.    "***Schedule of Assumed Executory Contracts and Unexpired Leases***" means the list of Executory Contracts and Unexpired Leases that will be assumed by the Debtor pursuant to the Plan as of the Effective Date, which list shall be included in the Plan Supplement.

80.    "***Schedule of Rejected Executory Contracts and Unexpired Leases***" means the list of Executory Contracts and Unexpired Leases that will be rejected by the Debtor pursuant to the Plan as of the Effective Date, which list shall be included in the Plan Supplement.

81.    "***Schedules and Statements***" means, collectively, the Third Amended Schedules of Assets and Liabilities [Docket No. 501] and the Third Amended Statement of Financial Affairs [Docket No. 502], as may be amended and supplemented from time to time.

82.    "***Secured Claim***" means a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as

determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim; *provided that* no Claim asserted by any Insider or Affiliate of the Debtor shall be a Secured Claim.

83.     "***Specific Disclosure Statement***" means the Creditors' Specific Disclosure Statement as Filed or amended, including all exhibits and schedules attached thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

84.     "***Subordinated Claim***" means a Claim subject to subordination pursuant to sections 509(c) and/or 510(c) of the Bankruptcy Code, or any other provision of the Bankruptcy Code or applicable law subordinating such claim to any General Unsecured Claim.

85.     "***Trust Causes of Action***" shall have the meaning ascribed to such term in Article IV.E.2 of the Plan.

86.     "***UCC***" means the Official Committee of Unsecured Creditors in this Chapter 11 Case, appointed pursuant to Docket No. 42.

87.     "***Unexpired Lease***" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

88.     "***Unimpaired***" means, with respect to a class of Claims, a class of Claims that is not Impaired.

89.     "***U.S. Trustee***" means the Office of the United States Trustee for the Southern District of Texas.

B.  *Rules of Interpretation*

For purposes of the Plan:

1.      in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender;

2.      any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions;

3.      any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified;

4.      any reference to an Entity as a holder of a Claim includes that Entity's successors and assigns;

5.     unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan;

6.     unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

7.     subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws;

8.     captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

9.     unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;

10.     all references to docket numbers of documents Filed in this Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system;

11.     all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to this Chapter 11 Case, unless otherwise stated;

12.     all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties, or, if applicable, the GUC Trustee, that have such consent, acceptance, or approval rights, including by electronic mail;

13.     any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and

14.     the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation."

C.  *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D. *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

E. *Controlling Document*

In the event of an inconsistency between the Plan and the Specific Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS**

A. *Administrative Claims.*

To the extent that Administrative Claims have not been paid in full or otherwise satisfied during this Chapter 11 Case, each holder of an Allowed Administrative Claim will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following: (a) if such Administrative Claim is Allowed prior to the Effective Date, on the Effective Date or in the ordinary course of business, whichever is later; or (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter.  Any objection to an Administrative Claim must be Filed by the Priority Claims Objection Bar Date.

**HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE CLAIMS THAT DO NOT FILE AND SERVE SUCH A REQUEST BY THE PRIORITY CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE CLAIMS AGAINST THE DEBTOR, THE ESTATE OR THE PROPERTY OF ANY OF THE FOREGOING, AND SUCH ADMINISTRATIVE CLAIMS SHALL BE DEEMED DISCHARGED AS OF THE EFFECTIVE DATE WITHOUT THE NEED FOR ANY OBJECTION FROM THE DEBTOR OR ANY NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT OR ANY OTHER ENTITY.**

B. *Professional Fee Claims.*

1.   **Final Professional Fee Applications and Payment of Professional Fee Claims**.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred through and including the Effective Date must be Filed no later than the Priority Claims Bar Date.  The Bankruptcy Court shall determine the Allowed Amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Rules.  Jones shall pay to the Professionals the amount of the Allowed Professional Fee Claims owing to such Professionals in

Cash, including from funds held in the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of a Final Order of the Bankruptcy Court. Any objection to a Professional Fee Claim must be Filed by the Priority Claims Objection Bar Date.

2. **Professional Fee Escrow Account**.

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens or Claims shall encumber the Professional Fee Escrow Account or Cash held therein. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estate or the Debtor.

Distributions to holders of Professional Fee Claims shall be made in accordance with Article VI.A.1 of the Plan. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals or Disallowed pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the GUC Trust without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

3. **Professional Fee Escrow Amount**.

The Professionals shall provide a reasonable and good-faith estimate of their unpaid Professional Fee Claims incurred in rendering services to the Debtor and Estate before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtor and the UCC no later than five (5) days before the anticipated Effective Date; *provided*, *however*, *that* such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtor, in consultation with the UCC, may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be used by the Debtor to determine the amount to be funded to the Professional Fee Escrow Account.

C. *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall receive treatment in a manner consistent with section 1129(a)(9)(C) of the Bankruptcy Code.

**ARTICLE III.**
**TREATMENT AND CLASSIFICATION OF CLAIMS**

A. *Classification of Claims*

All Claims against the Debtor of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, or arising from the rejection or assumption of an Executory Contract and/or Unexpired Lease, whether resulting in a Claim that is Allowed or not, shall be bound by the provisions of the Plan.  The Claims are hereby classified as follows:

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Claims | Unimpaired | Not entitled to vote (presumed to accept) |
| 2 | Other Priority Claims | Unimpaired | Not entitled to vote (presumed to accept) |
| 3 | General Unsecured Claims | Impaired | Entitled to vote |
| 4 | Subordinated Claims | Impaired | Not entitled to vote (deemed to reject) |

B. *Treatment of Claims*

Holders of Claims classified in Article III.A that are Allowed shall be satisfied in the manner set forth below.

1. Class 1 – Secured Claims.

   a. **Classification**.  Class 1 consists of all Secured Claims.

   b. **Treatment**.  Each holder of a Secured Claim that is Allowed shall receive payment in full in Cash on account of such holder's Allowed Secured Claim.

   c. **Voting**.  Class 1 is Unimpaired under the Plan.  Holders of Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

   d. **Claimants**.  There are two Class 1 Claimants, (i) the Security Bank of Crawford, which has Filed a Proof of Claim in the amount of $80,161.04 (Claim No. 2) and (ii) Bank of America, N.A., which has Filed a Proof of Claim in the amount of $26,354.73 (Claim No. 22).

2. Class 2 – Other Priority Claims.

   a. **Classification**.  Class 2 consists of all Other Priority Claims.

   b. **Treatment**.  Each holder of an Other Priority Claim that is Allowed shall receive payment in full in Cash on account of such holder's Allowed Other Priority Claim.

13

c. **Voting**. Class 2 is Unimpaired under the Plan. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

d. **Claimants**. Class 2 Claimants include one holder of a Priority DSO Claim who is not Erika Jones, including the Priority DSO Claim identified at item 4.12 in the Schedules and Statements. Class 2 Claimants shall also include any other holders of Other Priority Claims. For the avoidance of doubt, Erika Jones is not entitled to any Priority DSO Claims or any Other Priority Claims and any Claim asserted by, or on behalf of, Erika Jones on the basis of the Premarital Agreement will be treated as a Class 4 Subordinated Claim.

3. Class 3 – General Unsecured Claims.

a. **Classification**. Class 3 consists of all General Unsecured Claims.

b. **Treatment**. Each holder of a General Unsecured Claim that is Allowed shall be entitled to receive, at such holder's election, (i) the holder's *pro rata* share of the GUC Election Cash Pool, such pro rata share to be calculated based on the total amount of Allowed General Unsecured Claims held by holders that make such election, or (ii) the holder's *pro rata* share of the GUC Trust Interests, such *pro rata* share to be calculated based on the aggregate amount of Allowed General Unsecured Claims that make such election. For the avoidance of doubt, however, any holder of a General Unsecured Claim that has waived that holder's Claim is not entitled to such *pro rata* share under this Article III.B.3.b.

c. **Voting**. Class 3 is Impaired under the Plan. Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

d. **Claimants**. At present, there are twenty-five Class 3 Claims, (i) twenty-one Class 3 Claims Filed by or on behalf of individuals comprising the Sandy Hook Families; (ii) one Class 3 Claim held by American Express National Bank, which has Filed a Proof of Claim in the amount of $149,678.58 (Claim No. 1); (iii) one Class 3 Claim held by Reeves Law, PLLC, which has Filed a Proof of Claim in the amount of $24,611.13 (Claim No. 5); (iv) one Class 3 Claim held by the City of Austin, which has Filed a Proof of Claim in the amount of $86.60 (Claim No. 3); and (v) one Class 3 Claim held by the IRS to the extent that any portion of its Claim in the amount of $586,884.64 (Claim No. 4) is deemed to be a non-Priority Tax Claim. However, additional Claims may be Allowed General Unsecured Claims if filed by the applicable Bar Date or other time period provided for by the Plan or an order of the Bankruptcy Court, and otherwise Allowed.

4. Class 4 – Subordinated Claims.

a. **Classification**. Class 4 consists of all Subordinated Claims.

14

b. **Treatment**.  Holders of Subordinated Claims, regardless of whether such claims are Allowed, are not entitled to any distributions or to receive or retain any property under the Plan.

c. **Voting**.  Class 4 is Impaired under the Plan.  Holders of Subordinated Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

d. **Claimants**.  At present, there is one Class 4 Claimant, FSS, which has Filed a Proof of Claim in the amount of $0.00 (Claim No. 26).  However, additional Claims may be Subordinated Claims if filed by the applicable Bar Date or other time period provided for by the Plan, and otherwise Allowed.  For the avoidance of doubt, any Claim asserted by, or on behalf of, Erika Jones on the basis of the Premarital Agreement will be treated as a Subordinated Claim.

## ARTICLE IV.
## THE GUC TRUST

A. *The GUC Trust*

On or before the Effective Date, a trust shall be established for the benefit of holders of General Unsecured Claims that elect to receive GUC Trust Interests (the "***GUC Trust***").  The GUC Trust shall be governed and administered in accordance with the GUC Trust Agreement, which sets forth, *inter alia*, the powers, authority, responsibilities, and duties of the GUC Trustee.

The purpose of the GUC Trust shall be the liquidation and administration of the GUC Trust Assets and making distributions to holders of GUC Trust Interests in accordance with the terms of the Plan and the GUC Trust Agreement.

B. *The GUC Trustee*

The GUC Trust shall be administered by a trustee who shall be chosen by the Sandy Hook Families in accordance with the GUC Trust Agreement (the "***GUC Trustee***").  On or before the Effective Date, the GUC Trustee, on behalf of the Debtor, shall execute the GUC Trust Agreement and shall take all other steps necessary to establish the GUC Trust pursuant to the GUC Trust Agreement and consistent with the Plan.  For the avoidance of doubt, if, for any reason the individual or entity chosen to serve as the GUC Trustee shall need to be replaced, the Sandy Hook Families shall appoint a subsequent GUC Trustee unless otherwise provided by the GUC Trust Agreement.  The GUC Trust Agreement shall establish an oversight committee (the "***Litigation Committee***") consisting of members of the Sandy Hook Families appointed in accordance with the terms of the GUC Trust Agreement to oversee performance of the GUC Trustee's duties with respect to the GUC Trust Assets and otherwise serve the functions to be described in the Plan and the GUC Trust Agreement.

The GUC Trustee shall be responsible for all decisions and duties with respect to the GUC Trust Assets, subject to the authority granted to it under the Plan, the Confirmation Order, and the GUC Trust Agreement, as applicable, and shall file with the Bankruptcy Court periodic public

reports on the status of claims reconciliation and distributions, which reports may be included in the quarterly reporting required by the U.S. Trustee.  In addition, the GUC Trustee shall issue quarterly written reports and engage in update calls upon reasonable request with representatives of the Sandy Hook Families.

The GUC Trustee shall owe fiduciary duties to all holders of GUC Trust Interests consistent with the fiduciary duties a member of an official committee appointed pursuant to section 1102 of the Bankruptcy Code owes to its constituents, and the Litigation Committee must consent to any proposed material action, including any settlement in respect of any action, by the GUC Trustee in accordance with the terms of the GUC Trust Agreement.

C.  *Assignments*

On the Effective Date, the Non-Dischargeable Claims will be assigned to the GUC Trust.

D.  *GUC Trust Assets*

On the Effective Date, all GUC Trust Assets will vest in the GUC Trust.  For the avoidance of doubt, the Exempt Assets will not vest in the GUC Trust.  The GUC Trust Interests shall only be transferrable in the sole discretion of the GUC Trustee in accordance with the terms of the GUC Trust Agreement.

Under section 1141(b) of the Bankruptcy Code, the GUC Trust Assets shall be assigned, transferred, and vest in the GUC Trust upon the occurrence of the Effective Date, free and clear of all Claims, Liens, encumbrances, and interests; *provided, however*, *that* the GUC Trustee may abandon or otherwise not accept any assets that the GUC Trustee believes, in good faith, to have no value to, or will be unduly burdensome to, the GUC Trust in accordance with the terms of the GUC Trust Agreement.  Any assets that the GUC Trustee so abandons (whether before or after the Effective Date) or otherwise does not accept shall not be GUC Trust Assets.

E.  *Litigation Assets*

The following assets constitute "***Litigation Assets***" and will vest in the GUC Trust and be administered by the GUC Trustee in accordance with the terms described herein and in the GUC Trust Agreement:

1.      **Initial Litigation Funding**.  A total of $500,000 in Cash, which shall be funded by Jones's Estate to the GUC Trust for administrative expenses in connection with administering the Litigation Assets; *provided that* the source and manner of funding shall be acceptable to the GUC Trustee; *provided, further, that* a portion of the proceeds from liquidation of the Litigation Assets may be retained by the GUC Trustee in its discretion as continued funding for administration of the Litigation Assets.

2.      **Trust Causes of Action**.  All Causes of Action (a) belonging to Jones's Estate (including those belonging to the Jones Trusts), whether or not initially asserted prior to Confirmation, including, but not limited to, any estate claims or causes of action against or related to Jones, any Insider or Affiliate of Jones, and (b) the Texas State Court fraudulent conveyance action filed by Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Marcel

16

Fontaine previously removed and then transferred to the Bankruptcy Court (together, such Causes of Action, the "***Trust Causes of Action***").

3.      **Release Settlement Payments**.  All Release Settlement Payments made to the GUC Trust shall immediately vest in the GUC Trust upon payment.

4.      **Books & Records**.  Jones's books and records, including all documents, communications, and information of Jones, any Jones Trusts, and any entities owned or controlled by Jones, including such documents, communications, and information protected by the attorney-client privilege, the work-product privilege, or any other applicable evidentiary privileges pertaining in any way to the Litigation Assets.  All discovery obtained by the UCC during the Chapter 11 Case shall be transferred to the GUC Trust.

5.      **Investigative Powers**.  The GUC Trust and the GUC Trustee will retain the right to conduct any discovery related to the acts, conduct, or property, or to the liabilities and financial condition of Jones, or to any matter which may affect the administration of Jones's Estate or any Trust Causes of Action, or to Jones's right to a discharge, under Bankruptcy Rule 2004, to the full extent that such powers were available prior to the Effective Date.

6.      **Audit Powers**.  The GUC Trust or the GUC Trustee may retain a professional to conduct financial audits of Jones as necessary and request information from applicable third parties in connection with the same (including Erika Jones and David Jones) to ensure the veracity of financial disclosures.

7.      **Privileges**.  All privileges in respect of the Trust Causes of Action, including the attorney-client privilege, held by Jones shall transfer to the GUC Trust.

F.      *Confidentiality*

The GUC Trustee shall be deemed a party to the Protective Order and shall be permitted to receive Discovery Material, Confidential Material, and Professionals' Eyes Only Material (each as defined in the Protective Order) in accordance with the terms thereof.

G.      *Tax Treatment of GUC Trust Under Applicable Laws*

The GUC Trust is intended to be treated, and shall be reported, as a "qualified settlement fund" within the meaning of section 468B of the Internal Revenue Code and Treasury Regulations section 1.468B-1 for U.S. federal income tax purposes and shall be treated consistently for state and local tax purposes to the extent applicable.  The GUC Trustee shall be the "administrator" of the GUC Trust within the meaning of Treasury Regulations section 1.468B-2(k)(3). Notwithstanding the foregoing provisions of this Article IV.G, (a) the GUC Trust shall be implemented with the objective of maximizing tax efficiency to the holders of GUC Trust Interests and (b) to the extent that the GUC Trust is not expected to be treated as a "qualified settlement fund" under applicable law or in the event of a final determination under section 1313(a) of the Internal Revenue Code that the GUC Trust does not qualify as a "qualified settlement fund," the holders of GUC Trust Interests and the GUC Trustee intend that the GUC Trust be treated as a partnership, liquidating trust, or other tax-efficient entity for U.S. federal income tax purposes and

will take all actions reasonably necessary to cause the GUC Trust to be treated as such a partnership or other tax-efficient entity.

The GUC Trustee shall be responsible for filing all tax returns of the GUC Trust and the payment, out of the assets of the GUC Trust in accordance with the GUC Trust Agreement, of any taxes due by or imposed on the GUC Trust.   The GUC Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the GUC Trust for all taxable periods through the dissolution thereof.  Nothing in this Article IV.G shall be deemed to determine, expand, or contract the jurisdiction of the Bankruptcy Court under section 505 of the Bankruptcy Code.

H.  *Transferability and Certain Securities Law Matters*

Unless the GUC Trust Agreement expressly provides otherwise, any and all GUC Trust Interests shall be non-transferable other than if transferred by will, intestate succession, or otherwise by operation of law.  In addition, any and all GUC Trust Interests will not be registered pursuant to the Securities Act or any applicable state or local securities law pursuant to section 1145 of the Bankruptcy Code, and will be exempt from the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

I.  *Retention of Professionals*

The GUC Trustee, upon consultation with the UCC prior to the Effective Date, may enter into employment agreements and retain professionals, including any necessary accountants, attorneys, financial advisors, or other consultants, in furtherance of the administration of the assets of the GUC Trust, without further order of the Bankruptcy Court.

**ARTICLE V.**
**TREATMENT OF NON-DISCHARGEABLE CLAIMS**

The Plan will not discharge any Non-Dischargeable Claim and the rights of the Sandy Hook Families, acting through the GUC Trust, to exercise all rights, remedies, and other legal entitlements, whether arising under state, federal, or foreign law, with respect to the Non-Dischargeable Claims are expressly preserved and nothing to the contrary in the Plan will limit, affect, or otherwise impact such rights; *provided that* no individual holder of any Sandy Hook Family Claim shall be entitled to receive more than the aggregate Allowed amount of such Holder's Sandy Hook Family Claim on account of such Claims pursuant to the Plan.

**ARTICLE VI.**
**MEANS OF IMPLEMENTATION**

The Plan will be implemented in accordance with the following provisions:

A.  *Plan Distributions*

1.    **Distributions to holders of Allowed Priority Claims**.  Distributions to holders of Allowed Priority Claims will be made as follows:

a. <u>Professional Fee Claims</u>. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to the applicable Professionals from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order of the Bankruptcy Court. To the extent the funds held in the Professional Fee Escrow Account are insufficient to satisfy the Allowed Amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied by the GUC Trustee in Cash once Allowed or as soon as reasonably practicable thereafter.

b. <u>Priority Tax Claims and Administrative Claims</u>. Holders of Allowed Priority Tax Claims and Allowed Administrative Claims shall receive Cash, which shall be satisfied by the GUC Trustee once Allowed or as soon as reasonably practicable thereafter.

2.    **Distributions to holders of Allowed Secured Claims.** Distributions to holders of Allowed Secured Claims will be made on the Effective Date, which shall be satisfied in Cash once Allowed or as soon as reasonably practicable thereafter.

3.    **Distributions to holders of Other Priority Claims.** Holders of Allowed Other Priority Claims shall receive Cash, which shall be satisfied by the GUC Trustee once Allowed or as soon as reasonably practicable thereafter.

4.    **Distributions to holders of Allowed General Unsecured Claims**. Holders of Allowed General Unsecured Claims shall receive, at their election, either (a) satisfaction of their *pro rata* share of the General Unsecured Claim Cash Pool in full in Cash on the Effective Date, or as soon as reasonably practicable thereafter, or (b) their *pro rata* share of GUC Trust Interests in accordance with the provisions of <u>Article III</u> and <u>Article IV</u> herein.

B.  *Jones Transfer Obligation*

Jones shall be fully responsible for taking all necessary actions required to vest the GUC Trust Assets in the GUC Trust (the "***Jones Transfer Obligation***"). The Jones Transfer Obligation begins on the Confirmation Date and must be completed in full no later than 30 (thirty) days after the Confirmation Date. To the extent that Jones fails or refuses to comply with the Jones Transfer Obligation, there shall be no limitation on the rights and ability of the Sandy Hook Families, the GUC Trustee, and the UCC to petition any court of competent jurisdiction to enforce the Jones Transfer Obligation pursuant to section 1142(b) of the Bankruptcy Code, any other provision of the Bankruptcy Code, or applicable non-bankruptcy law or to seek any other appropriate remedies under the Bankruptcy Code or applicable non-bankruptcy law.

C.  *Jones Full Disclosure*

No later than thirty (30) days after the Confirmation Date, Jones shall provide an affidavit (the "***Jones Full Disclosure***") containing all facts and information concerning his assets, rights, claims, interests, and/or any Causes of Action, held either directly or indirectly and including the assets set forth on the Exempt Asset Schedule, and any transfers of the Debtor's property exceeding

$5,000 as to a gift for no exchange of goods or services and $25,000 as to all other transfers in the ten (10) years prior to the Petition Date and running through the Effective Date.  Discovery of any Material Misstatement in the Jones Full Disclosure shall (a) void any discharge granted under the Plan, and (b) subject Jones to all penalties available under applicable law.

"***Material Misstatement***" means an omission by Jones or his representatives to disclose in the Jones Full Disclosure (a) an asset, right, claim, interest, or Cause of Action of the estate, held either directly or indirectly and including the assets set forth on the Exempt Asset Schedule, that reasonably could be argued to have a value of $5,000 or more; (b) any voluntary or involuntary transfer of cash or property within the ten (10) years prior to the Petition Date that reasonably could be determined to have a value of $5,000 or more that was not made in exchange for any service, product or other asset; or (c) any other voluntary or involuntary transfer of cash or property within the ten (10) years prior to the Petition Date that reasonably could be argued to have a value of $25,000 or more.  It shall not be a defense to a Material Misstatement that the subject asset(s) or transfer(s) were omitted inadvertently or based on good faith or mistaken judgment.

D.  *Additional Obligations*

Jones shall cooperate in good faith with the Sandy Hook Families, the UCC, the GUC Trustee, the Jones Estate, FSS, and their respective representatives, in carrying out the terms of the Plan, including by responding timely to reasonable discovery requests in connection with actions by the GUC Trustee and cooperating in pursuing and obtaining any tax refund or royalty amounts to which Jones or the GUC Trust is entitled.

Prior to the Effective Date, Jones shall also provide reasonable notice to the UCC in advance of the formation and/or incorporation of any trust or other entity on his behalf, or from which he expects to potentially receive distributions, dividends, or other payments, or in which he owns a direct or indirect beneficial interest.

E.  *Premarital Agreement*

Jones shall, in any event, cooperate with the GUC Trustee's efforts to investigate and pursue any Causes of Action arising from or related to payments made pursuant to the Premarital Agreement for the benefit of the GUC Trust.

F.  *Dissolution of Statutory Committees and Cessation of Fee and Expense Payment*

On the Effective Date, any statutory committee appointed in this Chapter 11 Case shall dissolve automatically and the members thereof shall be released and discharged from all rights and duties arising from, or related to, this Chapter 11 Case, except that the UCC will stay in existence solely for the limited purposes of (a) receiving payment for its fees and expenses, including filing and prosecuting final fee applications of UCC Professionals and (b) participating in any appeals of the Confirmation Order.  The Debtor, the Estate, and the GUC Trust shall not be responsible for paying any fees or expenses incurred by any statutory committee appointed in this Chapter 11 Case after the Effective Date.

## ARTICLE VII.
## PROCEDURES FOR DISPUTED CLAIMS

A.  *Objections to Prepetition Claims*

As of the Effective Date, objections to, and requests for estimation of Claims against the Debtor may only be interposed and prosecuted by the GUC Trustee.  Such objections and requests for estimation shall be served and filed on or before the Claims Objection Bar Date.

B.  *Allowance of Claims*

After the Effective Date, the GUC Trustee shall have and shall retain any rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan or Allowed by Final Order prior to the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date, including the Confirmation Order, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Case allowing such Claim.

C.  *Estimation of Claims*

The GUC Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether any party in interest previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the GUC Trustee may pursue supplementary proceedings to object to the Allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.  *No Distributions Pending Allowance*

No payment or distribution provided under the Plan shall be made on account of a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

E.  *Resolution of Claims*

Except as otherwise provided herein (including the release provisions hereof) or in the GUC Trust Agreement, Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the GUC Trustee may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether

known or unknown, that the GUC Trustee may hold against any person, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The GUC Trustee may pursue any retained Claims, rights, Causes of Action, suits, or proceedings, as appropriate, in accordance with the Plan and the GUC Trust Agreement.

F. *Retained Amounts*

The GUC Trustee shall withhold and retain from distribution (a) an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims, (b) such lesser amount as estimated by the Bankruptcy Court, or (c) such lesser amount as agreed to between the GUC Trustee and the holders thereof. As Disputed Claims are resolved pursuant to Article VII hereof, the GUC Trustee shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. Such Distributions shall be made on the first Distribution Date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the GUC Trustee in its sole discretion.

G. *Late Filed Claims*

Except as otherwise provided herein or as agreed by the GUC Trustee, any Proof of Claim filed after the Bar Date with respect to such Claim shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely filed by a Final Order.

H. *Amendments to Claims*

A Claim may not be filed, amended, or supplemented without the prior written authorization of the Bankruptcy Court or the GUC Trustee, and any such new, amended, or supplemented Claim filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent permitted by applicable law.

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. *Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts and Unexpired Leases shall be deemed rejected, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, and regardless of whether or not such Executory Contract or Unexpired Lease is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases, unless such Executory Contract or Unexpired Lease: (a) was previously assumed or rejected by the Debtor, pursuant to a Final Order of the Bankruptcy Court; (b) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (c) is the subject of a motion to assume, assume and assign, or reject filed by the Debtor

on or before the date of entry of the Confirmation Order; or (d) with the consent of the UCC, is specifically designated as a contract or lease to be assumed on the Schedule of Assumed Executory Contracts and Unexpired Leases.  Each Executory Contract and Unexpired Lease assumed pursuant to this Article VIII.A of the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Effective Date, shall revest in and be fully enforceable by Jones in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

Entry of the Confirmation Order by the Bankruptcy Court shall, subject to and upon the occurrence of the Effective Date, constitute a Final Order approving the assumptions and/or rejections of the Executory Contracts and Unexpired Leases assumed, assumed and assigned, and/or rejected pursuant to the Plan.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

Notwithstanding anything to the contrary in the Plan, the UCC reserves the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and/or the Schedule of Rejected Executory Contracts and Unexpired Leases to add or remove any Executory Contract or Unexpired Lease at any time prior to the Effective Date.  The UCC shall provide notice of any amendments to the Schedule of Assumed Executory Contracts and Unexpired Leases and/or the Schedule of Rejected Executory Contracts and Unexpired Leases to the parties to the Executory Contracts or Unexpired Leases affected thereby.

For the avoidance of doubt, the Premarital Agreement shall be rejected under the Plan, and all Claims arising thereunder shall be treated as Subordinated Claims.

B. *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (a) the date of notice of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (b) the effective date of such rejection; or (c) the Effective Date.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time may be Disallowed, forever barred from assertion, and may not be enforceable against the Debtor, the Debtor's Estate, or its property.**  For the avoidance of doubt, the notice of the occurrence of the Effective Date served on all parties in interest shall include provisions setting forth the deadline for filing Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan and Confirmation Order.

The UCC and the GUC Trustee reserve the right to classify any Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases as Subordinated Claims.

C.  *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan and the Confirmation Order shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree (the "***Cure Amount***").  In the event of a dispute regarding (a) the amount of any payments to cure such a default; (b) the ability of the Debtor, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assumed and assigned; or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment.  At least ten (10) calendar days prior to the deadline to object to Confirmation of the Plan, the UCC shall provide for notices of proposed assumption or assumption and assignment and proposed Cure Amounts to be sent to applicable counterparties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.  **Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment and related Cure Amount must be Filed, served, and actually received by the UCC by the deadline to object to Confirmation of the Plan.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, or proposed assumption and assignment, or Cure Amount will be deemed to have consented to such matters and will be deemed to have forever released and waived any objection to such proposed assumption, proposed assumption and assignment, and Cure Amount.**  To the extent an Executory Contract or Unexpired Lease is deemed rejected pursuant to Article VIII.A hereof, but the subject counterparty did not receive notice of such rejection by the UCC, such counterparty shall be afforded the ability to dispute whether such assumption satisfies the requirements of Section 365(b) of the Bankruptcy Code; *provided that*, to the extent the UCC and the subject counterparty are unable to consensually resolve any such dispute or the Court determines a Cure Amount in an adverse manner to the UCC, the UCC may deem such Executory Contract or Unexpired Lease to be rejected as of the Effective Date.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assumed and assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment, as applicable.  Any counterparty to an Executory Contract or Unexpired Lease that does not timely object to the notice of the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease shall be deemed to have consented to the assumption or assumption and assignment, as applicable, of the applicable Executory Contract or Unexpired Lease notwithstanding any provision thereof that purports to:  (a) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (b) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtor under such contract or lease or a change, if any, in the ownership or control of the Debtor under such contract or lease to the extent contemplated by the Plan; (c) increase, accelerate, or otherwise alter any obligations or

liabilities of the Debtor under such Executory Contract or Unexpired Lease; or (d) create or impose a Lien upon any property or asset of the Debtor.  Each such provision shall be deemed to not apply to the assumption or assumption and assignment of such Executory Contract or Unexpired Lease pursuant to the Plan and counterparties to assumed Executory Contracts or Unexpired Leases that fail to object to the proposed assumption or assumption and assignment in accordance with the terms set forth in this Article VIII.C, shall forever be barred and enjoined from objecting to the proposed assumption or assumption and assignment or to the validity of such assumption or assumption and assignment (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

## ARTICLE IX.
## RETENTION OF EXEMPT PROPERTY

All of the Exempt Assets shall be retained by Jones.

## ARTICLE X.
## RELEASES AND EXCULPATIONS

A. *Releases*

**Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Releasing Parties, as applicable, from any and all claims and Causes of Action asserted by or assertable on behalf of the Releasing Parties, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in law, equity, contract, tort or otherwise   Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement executed to implement the Plan or any Claim or obligation arising under the Plan.  For the avoidance of doubt, Jones shall not be a Released Party and there shall be no release or exculpation of the Trust Causes of Action, the Non-Dischargeable Claims, or any other Claims or Causes of Action against Jones, non-minor members of his immediate family, or their Insiders or Affiliates, as applicable, subject to the ability of Insiders and Affiliates of Jones to become a Released Party by making a Release Settlement Payment.**

B. *Exculpations*

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action or Claim whether direct or derivate related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Case from the Petition Date to the Effective Date, the formulation, preparation, dissemination, negotiation, or Filing of the Plan, the Specific Disclosure Statement, the Plan Supplement, or any contract, instrument,**

release, or other agreement or document created or entered into before or during the Chapter 11 Case in connection with the Plan, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance of GUC Trust Interests pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, except for Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan and the Confirmation Order.

The Exculpated Parties set forth above have, and upon Confirmation of the Plan, shall be deemed to have, participated in good faith and in compliance with applicable law with respect to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

## ARTICLE XI.
## CONDITIONS PRECEDENT TO EFFECTIVENESS

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived, *provided that* the UCC may, in its sole discretion, waive any such condition.

1.      The GUC Trust shall be established and the GUC Trust Assets vested therein;

2.      The Professional Fee Escrow Account shall have been funded;

3.      Jones shall have complied with his obligation to deliver the Jones Full Disclosure;

4.      the Bankruptcy Court shall have approved the Specific Disclosure Statement, which may be approved by the Confirmation Order; and

5.      The Bankruptcy Court shall have entered the Confirmation Order, which shall be a Final Order, in form and substance reasonably acceptable to the UCC.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters

arising out of, or related to, the Chapter 11 Case, the Plan and the Confirmation Order pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. classify, allow, or disallow Claims and direct distributions of funds under the Plan and to hear and determine any controversies pertaining thereto;

2. hear and determine any and all applications and adversary proceedings and other matters arising out of or related to the Plan;

3. enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, or vacated;

4. liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

5. adjudicate all Claims to any Lien on any property or any proceeds thereof;

6. decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan;

7. hear matters related to the GUC Trust, including, without limitation, discovery matters under Bankruptcy Rule 2004;

8. adjudicate, decide, or resolve any and all matters related to Causes of Action that may arise from or in connection with the consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection therewith;

9. hear and determine disputes arising in connection with the interpretation, implementation, effect, or enforcement of the Plan, the Plan Supplement, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

10. adjudicate, decide, or resolve matters concerning state, local, and U.S. federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

11. enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case with respect to any person or Entity, and resolve any cases, controversies, suits, or disputes that may arise in connection with any person or Entity's rights arising from or obligations incurred in connection with the Plan;

12. hear and determine any disputes concerning Material Misstatements;

13. hear and determine any disputes concerning the Jones Transfer Obligation;

14. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article XI of the Plan; and

15.     adjudicate, decide, or resolve matters brought pursuant to section 1142(b) concerning the delivery and execution of documents required to effect transfers of property necessary for consummation of transactions contemplated by the Plan, the Plan Supplement, or the GUC Trust Agreement.

## ARTICLE XIII.
## MODIFICATION OF PLAN

The UCC and the Sandy Hook Families may propose amendments or modifications of the Plan at any time prior to Confirmation, without leave of the Bankruptcy Court, so long as such amendment or modification meets the requirements of section 1127(a) of the Bankruptcy Code and does not constitute a material modification of the Plan requiring additional disclosure under section 1125 of the Bankruptcy Code.  After the Confirmation Date, the UCC and the Sandy Hook Families may, with approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interests of holders of Claims, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect*

Upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon Jones and any and all holders of Claims (irrespective of whether their Claims are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with Jones.

B. *Discharge*

The provisions of the Plan will bind Jones and all holders of Claims against Jones, whether or not they accept the Plan.  On the Effective Date, all holders of Claims will be precluded and enjoined from asserting any Claim against Jones, Jones's Estate, or Jones's assets or property based upon any transaction or any activity of any kind that have occurred prior to the Effective Date, during the duration of the Plan; *provided, however, that* holders of Non-Dischargeable Claims shall not be precluded or enjoined from asserting such Claims or from pursuing collection actions against Jones or his present or future assets or property (other than GUC Trust Assets) with respect to such Claims, to the extent allowable under non-bankruptcy law.

C. *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by the UCC with respect to the Plan or the Specific Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the UCC unless and until the Effective Date has occurred.

D. *FSS Plan*

Nothing in the Plan shall affect the FSS Case or impair FSS's ability to prosecute and perform under the FSS Plan if confirmed.  Additionally, nothing in the Plan shall limit FSS's rights and obligations under the FSS Plan.

E. *Entire Agreement*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

F. *No Admission*

Nothing in the Plan shall be deemed to be an admission or any kind on behalf of the UCC any member of the Sandy Hook Families.

[*Remainder of page intentionally left blank*]