IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
<u>HOUSTON DIVISION</u>

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **ALEXANDER E. JONES,** | § | Case No. 22-33553 |
| | § | |
| Debtor. | § | |
| | § | |

**<u>DEBTOR'S OBJECTION TO THE OFFICIAL UNSECURED CREDITOR
COMMITTEE'S DISCLOSURE STATEMENT</u>**

Alex E. Jones (the "<u>Debtor</u>" or "<u>Jones</u>"), debtor and debtor-in-possession in the above-referenced case (the "<u>Chapter 11 Case</u>") hereby objects to the *Proposed Specific Disclosure Statement for the Creditors' Non-Uniform Individual Chapter 11 Plan of Liquidation for Alex E. Jones* (the "<u>UCC Disclosure Statement</u>") [Docket No. 539].

**<u>RELEVANT FACTUAL BACKGROUND</u>**

1. On December 2, 2022 (the "<u>Petition Date</u>"), the Debtor filed his voluntary petition for relief under Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). The Debtor has continued possession and is managing as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. An official committee of unsecured creditors (the "<u>Official Committee</u>") was appointed in this Chapter 11 Case on December 13, 2022 [Docket No. 42].

3. Jones continues in possession of his holdings and is managing as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.

4. On or about March 7, 2023, Free Speech Systems, LLC ("<u>FSS</u>") filed its *Plan of Reorganization Under Subchapter V of the Bankruptcy Code* [Case No. 22-60043; Docket No. 502] in its associated case.

5. On or about November 18, 2023, FSS filed its *First Amended Plan of*

*Reorganization Under Subchapter V of the Bankruptcy Code* [Case No. 22-60043; Docket No. 756].

6. On or about December 15, 2023, the Debtor filed his *Plan of Reorganization* (the "Debtor's Plan") [Docket No. 523].

7. On or about December 15, 2023, the Official Committee filed the UCC Plan [Docket No. 525].

8. On or about December 21, 2023, the Debtor filed his *Debtor's Disclosure Statement with Respect to the Debtor's Plan of Reorganization* [Docket No. 523].

9. On or about January 5, 2024, the Official Committee filed its UCC Disclosure Statement [Docket No. 539] (the "UCC Disclosure Statement").

## SPECIFIC OBJECTIONS

10. A disclosure statement's purpose is to provide adequate information to those parties voting on a plan. As defined in section 1125 of the Bankruptcy Code, "adequate information" includes "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor, and the condition of the debtor's books and records…" 11 U.S.C. § 1125(a)(1). The specifics of what constitutes adequate information must be determined on a case-by-case basis. H.R. No. 595, 95th Cong. 1st Sess. 408 (1977). The UCC Disclosure Statement does not contain adequate information as required by section 1125. Without adequate information, creditors are unable to make informed decisions regarding the Plan's desirability, feasibility, or alternatives.

11. Many courts cite the list of factors enumerated by the *Metrocraft* Court in determining the adequacy of a disclosure statement:

    a. The events which led to the filing of the bankruptcy petition;

b. A description of the available assets and their value;

c. The anticipated future of the company;

d. The source of the information stated in the disclosure statement;

e. A disclaimer;

f. The present condition of the debtor while in Chapter 11;

g. The scheduled claims;

h. The estimated return to creditors under a Chapter 7 liquidation;

i. The accounting method utilized to produce financial information and the name of the accountants responsible for such information;

j. The future management of the debtor;

k. The Chapter 11 Plan (or a summary thereof);

l. The estimated administrative expenses, including professional fees;

m. The collectability of accounts receivable;

n. Financial information, data, valuations, or projections relevant to the creditors' decision to accept or reject the Chapter 11 Plan;

o. Information relevant to the risks posed to the creditors under the plan;

p. The actual or projected realized value from recovery of preferential or otherwise avoidable tranfers;

q. Litigation likely to arise in a non-bankruptcy context;

r. Tax attributes of the debtor; and

s. The relationship of the debtor with affiliates.

*In re Metrocraft Publishing Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984), cited by *Westland Oil Development Corp. v. MCorp Management Solutions, Inc.*, 157 B.R. 100, 102

(Bankr. S.D. Tex. 1993).

12. The UCC Disclosure Statement fails to provide adequate information as required by section 1125 and approval should be denied for the following reasons:[1]

    a. <u>Introduction, page 1 of the UCC Disclosure Statement</u> states that,

As a result of this Chapter 11 Case pending for over a year *without a viable path to emergence* and *the Debtor's mismanagement of his affairs and the Estate prior to and after filing for bankruptcy protection*, the UCC and the Sandy Hook Families, as co-proponents of the Creditors' Plan within the meaning of section 1129 of the Bankruptcy Code, determined to propose the Creditors' Plan, which they believe presents the only viable path out of chapter 11 for the Debtor and his creditors.7 The Creditors' Plan (i) provides for the equitable treatment of Claims, including *the Sandy Hook Families' nondischargeable unsecured Claims*; (ii) preserves valuable Estate Causes of Action for the benefit of creditors; (iii) *allocates greater value to unsecured creditors than would a liquidation under chapter 7 of the Bankruptcy Code*; (iv) will garner the requisite support of the creditors entitled to vote on the Creditors' Plan and meets all other requirements for Confirmation under the Bankruptcy Code; (v) has been proposed by the Creditor Plan Proponents in good faith; (vi) is fair and equitable; (vii) is feasible; and (viii) is in the best interests of creditors. (emphasis added)

These statements are inaccurate and misleading. The UCC accuses the Debtor of pre and post-petition mismanagement of his affairs and the estate, implies that the entirety of the Sandy Hook Plaintiffs' claims have been adjudged to be nondischargeable, and claims that the UCC's liquidation plan allocates greater value to unsecured creditors than would a liquidation under chapter 7. The Debtor requests that this section be amended to reflect that the Debtor denies any mismanagement of his affairs and the estate, and that no such allegations have been proven in his case, that the Sandy Hook Plaintiffs' claims have not been found to be fully nondischareable, and how a chapter 11 liquidation plan could possibly garner a greater return for creditors than a chapter 7, given the fees involved with such plan.

    b. <u>Introduction, page 2 of the UCC Disclosure Statement</u> states that, "**Importantly,**

---

[1] The Debtor is reserving for the final hearing on the UCC Disclosure Statement and UCC Plan Confirmation Hearing, any arguments that the UCC Disclosure Statement should be disapproved because it is patently unconfirmable. Though Debtor does not believe the UCC Plan could legally be confirmed as currently drafted, the Debtor is expressly reserving these arguments and would carry same to the final approval hearings.

**DEBTOR'S OBJECTION TO THE OFFICIAL UNSECURED CREDITOR COMMITTEE'S DISCLOSURE STATEMENT - Page | 4**

(Bankr. S.D. Tex. 1993).

12. The UCC Disclosure Statement fails to provide adequate information as required by section 1125 and approval should be denied for the following reasons:[1]

    a. <u>Introduction, page 1 of the UCC Disclosure Statement</u> states that,

As a result of this Chapter 11 Case pending for over a year *without a viable path to emergence* and *the Debtor's mismanagement of his affairs and the Estate prior to and after filing for bankruptcy protection*, the UCC and the Sandy Hook Families, as co-proponents of the Creditors' Plan within the meaning of section 1129 of the Bankruptcy Code, determined to propose the Creditors' Plan, which they believe presents the only viable path out of chapter 11 for the Debtor and his creditors.7 The Creditors' Plan (i) provides for the equitable treatment of Claims, including *the Sandy Hook Families' nondischargeable unsecured Claims*; (ii) preserves valuable Estate Causes of Action for the benefit of creditors; (iii) *allocates greater value to unsecured creditors than would a liquidation under chapter 7 of the Bankruptcy Code*; (iv) will garner the requisite support of the creditors entitled to vote on the Creditors' Plan and meets all other requirements for Confirmation under the Bankruptcy Code; (v) has been proposed by the Creditor Plan Proponents in good faith; (vi) is fair and equitable; (vii) is feasible; and (viii) is in the best interests of creditors. (emphasis added)

These statements are inaccurate and misleading. The UCC accuses the Debtor of pre and post-petition mismanagement of his affairs and the estate, implies that the entirety of the Sandy Hook Plaintiffs' claims have been adjudged to be nondischargeable, and claims that the UCC's liquidation plan allocates greater value to unsecured creditors than would a liquidation under chapter 7. The Debtor requests that this section be amended to reflect that the Debtor denies any mismanagement of his affairs and the estate, and that no such allegations have been proven in his case, that the Sandy Hook Plaintiffs' claims have not been found to be fully nondischareable, and how a chapter 11 liquidation plan could possibly garner a greater return for creditors than a chapter 7, given the fees involved with such plan.

    b. <u>Introduction, page 2 of the UCC Disclosure Statement</u> states that, "**Importantly,**

---

[1] The Debtor is reserving for the final hearing on the UCC Disclosure Statement and UCC Plan Confirmation Hearing, any arguments that the UCC Disclosure Statement should be disapproved because it is patently unconfirmable. Though Debtor does not believe the UCC Plan could legally be confirmed as currently drafted, the Debtor is expressly reserving these arguments and would carry same to the final approval hearings.

**DEBTOR'S OBJECTION TO THE OFFICIAL UNSECURED CREDITOR COMMITTEE'S DISCLOSURE STATEMENT - Page | 4**

**confirmation of the Creditors' Plan will not affect the FSS Case and will not impair the ability of FSS, the Debtor's wholly owned entity that is subject to a bankruptcy proceeding under subchapter V of chapter 11 of the Bankruptcy Code, to prosecute the FSS Plan and perform thereunder if confirmed."** (emphasis in original). This statement is baseless and inaccurate. It has been widely acknowledged by all that without the Debtor, FSS cannot perform as a going concern. Under the UCC Plan, the Debtor would receive no relief whatsoever, no reorganization, just a continuing onslaught of litigation and collection efforts, while creditors attempt to seize every asset he ever owned (and many he did not) and sue all of his friends and family, with no regard as to whether any recovery could outweigh the cost of pursuit. It is highly unlikely this would result in "business as usual" at FSS. Indeed, the Debtor has made it clear without a confirmed plan in his Chapter 11 Case, he is unwilling to work for FSS. Therefore, this statement needs to be corrected to reflect that the impact of the UCC Plan on the Debtor may have a substantial impact on the FSS Plan, potentially resulting in liquidation.

  c. <u>Background and the Underlying State Court Litigation, pages 1-4</u>: This section of the UCC Plan is filled with inflammatory and argumentative statements about the Debtor, including but not limited to "Indeed, the Debtor's campaign of defamation and lies spanned many years and resulted in pervasive harassment and profound damage to the Sandy Hook Families." This section needs to include a disclaimer that the Debtor disagrees with the characterizations of his actions and litigation history.

  d. <u>Filing of Schedules and Statements, pages 6-7</u>: In the final paragraph of this section, the UCC states, "In light of the continuing deficiencies and inaccuracies in the Schedules and Statements, the UCC determined it was therefore necessary to independently investigate the Debtor's assets and confirm the information set forth in the various iterations of the Schedules and

**DEBTOR'S OBJECTION TO THE OFFICIAL UNSECURED CREDITOR COMMITTEE'S
DISCLOSURE STATEMENT - Page | 5**

Statements." This statement is inaccurate as the UCC launched its investigations into the Debtor's assets before the Schedules were filed. See page 10 of UCC Disclosure Statement ("Upon its appointment, the UCC immediately commenced an investigation into the Debtor's assets and financial condition.").

> e. <u>Discovery Process, page 11</u>: In the final paragraph of this section, the UCC states,

> While the UCC has obtained significant information through its discovery requests and depositions, the productions received have been far from complete. Numerous requests for documents and information were answered only partially and incompletely. As of the filing of this Specific Disclosure Statement, the Debtor, certain Debtor Related Entities, and the Debtor's Family Members have failed to make complete productions of the documents and information requested. PQPR has also refused to provide basic information, including information respecting its value, despite the fact that the Debtor indirectly owns 72% of the entity.

This paragraph is misleading in that it implies that the Debtor has not cooperated with the numerous and burdensome discovery requests propounded by the UCC. The Debtor has produced over 33,000 documents totaling over 148,000 pages. He has sat for a 2004 examination as has his financial advisor, and numerous other parties.

> f. <u>Assets, page 12</u>: The UCC implies that funds spent on home repair for the Debtor's homestead may have been in an effort to hinder, delay, or defraud creditors under section 522(o). The Debtor expressly disputes this.

> g. <u>Avoidance Actions Against Erika Jones, pages 14-15</u>: The UCC states,

> On May 3, 2022, the Debtor signed a ratification purporting to obligate himself to make payments and provide other gifts to his current wife, Erika Jones, under an alleged Premarital Agreement. The Debtor signed the ratification after he had been found liable or his statements regarding the Sandy Hook Families and approximately seven months before the commencement of this Chapter 11 Case. From the date of the Debtor's marriage in January 2017, until May 3, 2022, neither the Debtor nor Erika Jones had ratified the Premarital Agreement. The Premarital Agreement specifically requires ratification as a condition precedent in order for the Debtor to have any obligation to make any payment or provide other gifts to Erika Jones. Accordingly, the Estate holds colorable claims to avoid the purported incurrence of any payment obligations to Erika Jones shortly before the Debtor filed

> for bankruptcy protection as constructively and intentionally fraudulent under applicable law. *See* 11 U.S.C. §§ 544, 548; Tex. Bus. & Com. Ann. § 24.001, *et seq*. The Debtor has refused to commence an avoidance action in respect of the incurrence of this obligation and has failed to identify any authority that would indicate that incurrence of obligations is not voidable under the circumstances.

This paragraph is misleading and incorrect. Under Texas law, it was not necessary for the ratification to be signed for the Debtor's premarital agreement to be valid and enforceable. The Debtor has consulted with experts in this area of the law, including those involved with the law's drafting, on this issue. This paragraph should be amended to reflect that the Debtor does not agree with this analysis and whether the UCC has consulted with any Texas family law expert and whether they support this allegation. Further, in a lower paragraph, the UCC claims that the Estate holds a claim to avoid the transfer of vehicles from the Debtor to his wife. The Debtor disputes that the Estate holds a cause of action to avoid vehicles transferred from the Debtor to his wife pursuant to the Premarital Agreement.

      h. <u>Avoidance Actions Against David Jones, pages 15-16</u>: In this section, the UCC accuses the Debtor of backdating documents with respect to the transfer of the Ranch property to Dr. Jones. Both the Debtor and Dr. Jones were examined extensively on this topic, and no such testimony emerged. Notably, no documentary evidence exists either. The Debtor has consulted with experts in this area and the timing of recordation of a transfer of real property does not affect the timing of the actual transfer. The Debtor requests that this section be amended to reflect the Debtor's disagreement with the UCC's legal analysis on this issue, and the lack of evidence to support their claim be stated.

      i. <u>Key Aspects of the Creditor's Plan, page 22</u>: The UCC Plan requires transfer of the Debtor's privileged documents and communications to the GUC Trustee, who is appointed by the Sandy Hook Plaintiffs—the plaintiffs in ongoing litigation of which the Debtor is the defendant.

While trustees of a bankrupt or dissolved corporation receive the power to assert or waive privilege on behalf of the corporation, *see Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 356 (1985), most courts hold that a trustee does not receive such powers in an individual case. *See, e.g., id.* (cautioning that its holding does not apply to individual bankruptcy cases); *In re Hunt*, 153 B.R. 445, 451 (Bankr. N.D. Tex. 1992) (following *Weintraub* and noting that the purpose of attorney-client privilege would be frustrated if "clients cannot expect continued confidentiality when they find themselves in bankruptcy"). The Debtor cannot be forced to forfeit his privilege rights. The Debtor requests that this section be amended to include that the Debtor will not consent to the loss of is attorney-client privilege and does not believe he can be forced to do so under the law.

      j.   <u>Rejection of Executory Contracts and Unexpired Leases, page 23</u>: The UCC Disclosure Statement states that the Debtor's premarital agreement shall be rejected under the Plan and that all Claims thereunder shall be treated as subordinated. This requirement would force the Debtor to breach a valid contract, in violation of Texas law. *See, e.g., In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex. 2004) (noting that courts in Texas generally refuse to invalidate contracts absent breach of public policy). When one party intentionally damages someone else's contractual or business relationships with a third party, the initial party is liable for tortious interference. *Id.* at 77 (listing elements of tortious interference under Texas law). Any attempts by the Official Committee to force the Debtor to violate a contractual agreement, particularly a pre-marital contract, would thus render the UCC liable to Erika Jones for tortious interference, in violation of Section 1129 of the Bankruptcy Code. The UCC Disclosure Statement does not state how or why it has the authority to attempt this. The Debtor would request that this section be amended to include that the Debtor will not agree to this provision, that it is illegal, and believes

that it could create liability for the estate and for members of the UCC.

      k. <u>Classification and Treatment of Claims, page 24</u>: The UCC Disclosure Statement lists $2,099,139,969.58 in General Unsecured Claims. It is unknown where this total comes from and the Debtor does not believe it to be accurate.

      l. <u>The Debtor's Obligations and Covenants, page 28</u>: The UCC Disclosure Statement requires the Debtor to provide an affidavit,

> containing all facts and information concerning his assets, rights, claims, interests, and/or any Causes of Action, held either directly or indirectly and including the assets set forth on the Exempt Asset Schedule, and any transfers of the Debtor's property exceeding $5,000 as to a gift for no exchange of goods or services and $25,000 as to all other transfers in the ten years prior to the Petition Date and running through the Effective Date.

The UCC Disclosure Statement is misleading creditors by promising creditors additional sworn statements without the Debtor's consent. This provision requires the Debtor to recertify information regarding virtually all transfers going back ten (10) years prior to the Petition Date. The Debtor has already provided all known information regarding transfers, financial status, and assets. Such a statement cannot be compelled, and would be unenforceable with no consideration, which it is clear is not granted to the Debtor in the UCC Plan.

      m. <u>Releases and Exculpation, page 29</u>: The UCC Disclosure Statement includes releases and exculpations for the UCC and Sandy Hook Plaintiffs which no consideration has been given. "The law is well settled that a release is not binding unless supported by a consideration." *In re Endeavour Highrise, L.P.*, 432 B.R. 583, 651–52 (Bankr. S.D. Tex. 2010) (citing to *Sw. Fire & Cas. Co. v. Atkins*, 346 S.W.2d 892, 897 (Tex. Civ. App.—Houston 1961, no writ). "Whether . . . a release is enforceable and, thus, whether a release is supported by sufficient consideration, is a question of law." *Endeavour Highrise*, 432 B.R. at 651–52 (citing to *Mickens v. Longhorn DFW Moving, Inc.*, 264 S.W.3d 875, 880 (Tex. App.-Dallas 2008, pet. denied). The Debtor requests that

... 

this section be amended to show the Debtor asserts these releases and exculpations are not binding.

        n. <u>Exhibit B to UCC Plan, Schedule of Assets , page 4</u>: The UCC Plan, attached to the UCC Disclosure Statement as an exhibit thereto, includes a schedule of assets. The UCC references the 2022 Litigation Settlement Trust and claims that it holds the InfoWars.com intellectual property.  After further investigation, it was determined that this intellectual property is owned by FSS, not the Debtor, and therefore will need to be removed from the Debtor's Schedules.  The UCC Disclosure Statement also references 3 Glock 9mm firearms and states that they were not included in the Debtor's Schedules or Disclosure Statement.  These three guns are included in the $73,744.00 firearm value total in the line directly above.  This should be that there are 53 guns valued at $73,744.00, but 2 were claimed as exempt valued collectively at $10,211, making the value of the remaining 51 nonexempt guns $63,533.00. Additionally, the UCC Disclosure Statement includes a reference to four (4) rolex watches estimated in value at $50,000-$90,000. These watches are not in the Debtor's possession, and were either lost or given away outside of the relevant transfer time period. These came from an asset list in 2016 and no evidence of their transfer within the past four years or of them remaining in the Debtor's possession exists.  Finally, the UCC Disclosure Statement has a listing for "a fossil, a polished stone, and two stone lamps" valued at $23,690. The "fossil" was purchased for around $1,000 and the rose quartz and sandstone were either included in a miscellaneous line item by the appraisers or were deemed of so little value that they were not included in the appraisal.  The referenced lamps are not worth more than $100 each. The Debtor requests that this portion of the Schedule of Assets be corrected to reflect actual values.

      13.    The Debtor reserves all rights to amend or supplement this Objection, and to raise issues previewed herein in connection with the Confirmation Hearing.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that, 1) after notice and a hearing, his objections be sustained, 2) that approval of the UCC Disclosure Statement be denied until the above and foregoing objections have been corrected and full disclosure made in connection therewith, and 3) for such other and further relief to which the Debtor may be entitled in law and equity.

Dated:  January 16, 2024

**CROWE & DUNLEVY, P.C.**

By:  */s/ Vickie L. Driver*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon Street, Suite 425
Dallas, TX 75201
Telephone: 214.420.2163
Facsimile:  214.736.1762
Email: vickie.driver@crowedunlevy.com
Email: crissie.stephenson@crowedunlevy.com

**CO-COUNSEL FOR DEBTOR**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing pleading was served upon all parties registered to receive notices via the Court's ECF noticing system on this 16th day of January 2024.

*/s/ Vickie L. Driver*
Vickie L. Driver