IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) ) ) ) | Chapter 11<br><br>Case No. 22-33553 (CML) |
| ALEXANDER E. JONES, |  |  |
| Debtor. |  |  |

**THE CREDITOR PLAN PROPONENTS' REPLY TO
THE DEBTOR'S SPECIFIC DISCLOSURE STATEMENT OBJECTION**

The Official Committee of Unsecured Creditors (the "UCC") appointed in the above-captioned case (the "Chapter 11 Case"), the Connecticut Plaintiffs,[1] and the Texas Plaintiffs[2] (together, the "Sandy Hook Families" and, collectively with the UCC, the "Creditor Plan Proponents"), by and through their respective undersigned counsel, hereby submit this reply (the "Reply") to the *Debtor's Objection to the Official Unsecured Creditor Committee's Disclosure Statement* [ECF No. 549] (the "First Jones Specific Disclosure Statement Objection"), as amended by the *Debtor's Amended Objection to the Official Unsecured Creditor Committee's Disclosure Statement* [ECF No. 551] (the "Amended Jones Specific Disclosure Statement Objection", and, together with the First Jones Specific Disclosure Statement Objection, the "Jones Specific Disclosure Statement Objection"). In support of this Reply, the Creditor Plan Proponents respectfully state as follows.[3]

---

[1] The "Connecticut Plaintiffs" are (i) David Wheeler; (ii) Francine Wheeler; (iii) Mark Barden; (iv) Jacqueline Barden; (v) Nicole Hockley; (vi) Ian Hockley; (vii) Jennifer Hensel; (viii) Donna Soto; (ix) Carlee Soto-Parisi; (x) Carlos M. Soto; (xi) Jillian Soto Marino; (xii) William Aldenberg; (xiii) William Sherlach; (xiv) Robert Parker; and (xv) Erica Lafferty. Due to Erica Lafferty's chapter 7 bankruptcy, the trustee of her chapter 7 estate currently represents her financial interest in this proceeding.

[2] The "Texas Plaintiffs" are: (i) Neil Heslin; (ii) Scarlett Lewis; (iii) Leonard Pozner; (iv) Veronique De La Rosa; and (v) the Estate of Marcel Fontaine.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Creditors' Non-Uniform Individual Chapter 11 Plan of Liquidation for Alexander E. Jones* [ECF No. 525] (as it may be amended, altered, modified, or supplemented, the "Creditors' Plan") and the corresponding *Proposed Specific Disclosure*

**REPLY**

1. Pursuant to Bankruptcy Code section 1125, a disclosure statement must provide holders of claims and interest entitled to vote on the plan with "adequate information" regarding the plan. Bankruptcy Code section 1125(a)(1) defines "adequate information" as "information of a kind, and in sufficient detail . . . that would enable [] a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). Determining whether a disclosure statement contains adequate information is a fact-sensitive inquiry that is left to the discretion of the court. *See In re Cajun Elec. Power Coop., Inc.*, 150 F.3d 503, 518 (5th Cir. 1998). The list of factors that the courts typically consider when evaluating whether a disclosure statement meets the appropriate standard is outlined in *In re Metrocraft*. *See In re U.S. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996).[4]

2. Nowhere in the Jones Specific Disclosure Statement Objection does the Debtor contend—nor could he—that the Specific Disclosure Statement fails to meet the *Metrocraft* factors. Instead, the crux of the Debtor's objection is that the Debtor ***does not agree*** with the Creditor Plan Proponents' characterization of certain historical events, description of the Estate

---

*Statement for the Creditors' Non-Uniform Individual Chapter 11 Plan of Liquidation for Alexander E. Jones*, dated January 5, 2024 [ECF No. 539] (the "Specific Disclosure Statement"). Importantly, the Debtor refers to the Creditors' Plan as the "UCC Plan" and the Specific Disclosure Statement as the "UCC Disclosure Statement" throughout the Jones Specific Disclosure Statement Objection. Notwithstanding this characterization, the UCC is not the sole proponent of the Creditors' Plan—it is proposed by the UCC and the Sandy Hook Families collectively. For the avoidance of doubt, this Reply and **Exhibit A** hereto will use terminology consistent with the Specific Disclosure Statement and the Creditors' Plan.

[4] The factors include: "(1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with the affiliates." *In re United States Brass Corp.*, 194 B.R. at 424-25 (citing *In re Metrocraft Pub. Services, Inc.*, 39 Bankr. 567, 568 (Bankr. N.D.Ga. 1984)).

assets (including certain Estate Causes of Action), and legal positions. The Debtor is entitled to articulate his position in respect of all aspects of the Chapter 11 Case and related circumstances, and indeed has done so in the Jones Plan, the Jones Disclosure Statement, and the Jones Specific Disclosure Statement Objection. None of these concerns, however, calls into question the adequacy of the Specific Disclosure Statement.

3. As such, and for the reasons discussed in further detail herein, the Creditor Plan Proponents respectfully request that the Specific Disclosure Statement be approved on a conditional basis as containing adequate information. *See e.g.*, *In re Destileria Nacional, Inc.*, Case No. 20-01247, 2021 WL 3177287, at *3 (Bankr. D.P.R. July 27, 2021) (approving on a final basis a disclosure statement proposed by a creditor over the objection of the debtor because the debtor could not provide factual evidence to support its baseless claims and disagreements with the creditor's disclosure statement).

4. Notwithstanding the foregoing, and in an effort to address certain of the Debtor's concerns, the Creditor Plan Proponents have agreed to make a number of changes to the Specific Disclosure Statement to note the Debtor's disagreement, where requested, and make other clarifying changes. Attached hereto as **Exhibit A** is a chart detailing each of the Debtor's specific objections to the information contained in the Specific Disclosure Statement, along with responses and proposed modifications to the Specific Disclosure Statement, where appropriate.[5] These proposed revisions have been shared with the Debtor in advance of filing this Reply.

5. As noted above and detailed in **Exhibit A** hereto, the Jones Specific Disclosure Statement Objection raises a number of issues that inarguably relate to confirmation of the

---

[5] Contemporaneously with the filing of this Reply, the Creditor Plan Proponents have filed a modified version of the Specific Disclosure Statement reflecting these additions and changes, along with a modified version of the Creditors' Plan reflecting parallel changes.

3

Creditors' Plan. As such, consideration of these issues at this stage—namely the conditional approval of a disclosure statement for a competing creditor plan—is premature and should be reserved for the Confirmation Hearing. Indeed, the law is well settled that a court should approve a disclosure statement that adequately describes the chapter 11 plan at issue unless the underlying plan "is so fatally flawed that confirmation is impossible." *In re U.S. Brass Corp.*, 194 B.R. at 422; *see also In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (debtors' plan was "not so patently nonconfirmable as to bar consideration of the adequacy of the Disclosure Statement"); *In re Unichem Corp.*, 72 B.R. 95, 98 (Bankr. N.D. Ill. 1987) (courts should disapprove of the adequacy of a disclosure statement on confirmability grounds only "where it is readily apparent that the plan accompanying the disclosure statement could never legally be confirmed").[6]

6. Several courts have explained that a plan is patently unconfirmable where (1) confirmation defects cannot be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure-statement hearing. *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 154-55 (3d Cir. 2012) (citation omitted); *In re Foxwood Hills Prop. Owners Ass'n*, No. 20-02092-HB, 2021 Bankr. LEXIS 1626, at *16 (Bankr. D.S.C. June 1, 2021) (same); *In re K Lunde, LLC*, 513 B.R. 587, 590 (Bankr. D. Colo. 2014) (same). None of the purported confirmation issues identified in the Jones Specific Disclosure Statement Objection rises to level of rendering the plan patently unconfirmable. Specifically, the propriety of the releases, the "best interests" analysis, and the

---

[6] For the avoidance of doubt, the Creditor Plan Proponents have serious concerns about the confirmability of the Jones Plan, in its present form. As set forth in the *Limited Objection and Reservation of Rights of the Creditor Plan Proponents to the Debtor's Motion Seeking Conditional Approval of the Debtor's Proposed Disclosure Statement*, filed on January 16, 2024 [ECF No. 547], the Creditor Plan Proponents reserve all rights in respect of the Jones Plan and intend to raise all arguments in connection with the same at the appropriate time.

Debtor's disclosure obligations under the Bankruptcy Code are all fact-based inquiries that are ripe for evidentiary hearing in connection with plan confirmation. *See, e.g., In re iHeartMedia, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. Sept. 18, 2018), Hr'g Tr. 26:2-5; 27:13-20 (the question of whether there was sufficient consideration to support the scope of the releases was stated to be a confirmation issue); *In re Premiere Network Servs.*, No. 04-33402-HDH-11, 2005 Bankr. LEXIS 2298, at *10 (Bankr. N.D. Tex. July 1, 2005) (stating that "[a] judgment regarding whether the best interests test has been met is to be made on the basis of evidence, not assumptions") (citation omitted).

7. As such, neither these issues, nor anything else contained in the Jones Specific Disclosure Statement Objection, should preclude the conditional approval of the Specific Disclosure Statement.

## **CONCLUSION**

For all the foregoing reasons, the Creditor Plan Proponents respectfully submit that the Jones Specific Disclosure Statement Objection should be overruled and that the Specific Disclosure Statement, as revised, should be approved.

[*Remainder of page intentionally left blank.*]

Dated: January 22, 2024                                  Respectfully submitted,

| | |
|---|---|
| */s/ Marty L. Brimmage, Jr.* | */s/ Ryan E. Chapple* |
| **AKIN GUMP STRAUSS HAUER & FELD LLP** | **CAIN & SKARNULIS PLLC** |
| Marty L. Brimmage, Jr. | Ryan E. Chapple |
| State Bar No. 00793386 | State Bar No. 24036354 |
| 2300 N. Field Street, Suite 1800 | 303 Colorado Street, Suite 2850 |
| Dallas, Texas 75201 | Austin, TX 78701 |
| Telephone: (214) 969-2800 | Telephone: (512) 477-5000 |
| Fax: (214) 969-4343 | Fax: (512) 477-5011 |
| E-mail: mbrimmage@akingump.com | E-mail: rchapple@cstrial.com |

-and-

**KOSKOFF KOSKOFF & BIEDER, PC**
Alinor C. Sterling (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone: (203) 336-4421
E-mail: asterling@koskoff.com

David M. Zensky (admitted *pro hac vice*)
Sara L. Brauner (admitted *pro hac vice*)
Katherine Porter (admitted *pro hac vice*)
Anna Kordas (admitted *pro hac vice*)
Melanie A. Miller (*pro hac vice* pending)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Fax: (212) 872-1002
E-mail: dzensky@akingump.com
           sbrauner@akingump.com
           kporter@akingump.com
           akordas@akingump.com
           mmiller@akingump.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kyle J. Kimpler (admitted *pro hac vice*)
Stephanie P. Lascano (admitted *pro hac vice*)
Vida Robinson (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
E-mail: kkimpler@paulweiss.com
           slascano@paulweiss.com
           virobinson@paulweiss.com

*Counsel to the Official Committee of Unsecured Creditors of Alexander E. Jones*

*Co-Counsel to the Connecticut Plaintiffs*

6

*/s/ Avi Moshenberg*
**MCDOWELL HETHERINGTON LLP**
Avi Moshenberg
State Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, TX 77002
Telephone: (713) 337-5580
Fax: (713) 337-8850
E-mail: avi.moshenberg@mhllp.com

**CHAMBERLAIN, HRDLICKA,
WHITE, WILLIAMS & AUGHTRY, PC**
Jarrod B. Martin
State Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, TX 77002
Telephone: (713) 356-1280
Fax: (713) 658-2553
E-mail: jarrod.martin@chamberlainlaw.com

**WILLKIE FARR & GALLAGHER LLP**
Jennifer J. Hardy
State Bar No. 24096068
600 Travis Street
Houston, TX 77002
Telephone: (713) 510-1766
Fax: (713) 510-1799
E-mail: jhardy2@willkie.com

*-and-*

Rachel C. Strickland (admitted *pro hac vice*)
Stuart R. Lombardi (admitted *pro hac vice*)
Ciara A. Sisco (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Fax: (212) 728-8111
E-mail: rstrickland@willkie.com
       slombardi@willkie.com
       csisco@willkie.com

***Co-Counsel to the Texas Plaintiffs***

7

**EXHIBIT A**

| Debtor's Objection to the Creditor Plan Proponents' Specific Disclosure Statement[7] | Creditor Plan Proponents' Response[8] |
|---|---|
| **a. Introduction, page 1:** "The UCC **[1]** accuses the Debtor of pre and post-petition mismanagement of his affairs and the estate, **[2]** implies that the entirety of the Sandy Hook Plaintiffs' claims have been adjudged to be nondischargeable, and **[3]** claims that the UCC's liquidation plan allocates greater value to unsecured creditors than would a liquidation under chapter 7. The Debtor requests that this section be amended to reflect that the Debtor denies any mismanagement of his affairs and the estate, and that no such allegations have been proven in his case, that the Sandy Hook Plaintiffs' claims have not been found to be fully nondischargeable, and how a chapter 11 liquidation plan could possibly garner a greater return for creditors than a chapter 7, given the fees involved with such plan." | Each of the concerns is addressed in turn below:<br><br>**[1] Mismanagement of the Debtor's Estate:** The Debtor, his counsel and other parties in interest have stated repeatedly during conferences, during depositions, and in Court that the Debtor had little knowledge of his finances and failed to manage both his own finances and his businesses' finances. The following citations represent only a sample of such admissions and acknowledgements.<br><br>• March 8, 2023 Hr'g Tr., 16:3-5 (Ms. Driver: "[W]e have a client in this situation that just has very little knowledge of his financial background."); *id.* 13:21-25 (Ms. Driver: "This is the most disorganized financial case I have ever encountered, and I believe that I've heard the same for Mr. Schwiser (phonetic) and Mr. Kessler, who've been doing this twice as long. And so it has been incredibly complicated.").<br><br>• A. Jones Dep., 82:3-11 [Sept. 12-13, 2023] (Mr. Alex Jones: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).<br><br>• D. Jones Dep. 142:15-21 [Aug. 31, 2023] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. |

---

[7] *See* Jones Specific Disclosure Statement Objection ¶ 12. References to sub-sections of paragraph 12 in the below column are pulled from the Jones Specific Disclosure Statement Objection and mirror the references to the sections and pages of the Specific Disclosure Statement as identified therein. Note that, as previewed in the Reply, while the Jones Specific Disclosure Statement Objection refers to the Creditors' Plan as the "UCC Plan" and the Specific Disclosure Statement as the "UCC Disclosure Statement," this Exhibit uses terminology consistent with the Creditors' Plan and the Specific Disclosure Statement throughout.

[8] Portions of the evidentiary record cited in this **Exhibit A** that are deemed confidential have been redacted pursuant to paragraph 13 of the *Stipulated Confidentiality Agreement and Protective Order*, entered on February 14, 2023 [ECF No. 159].

| **Debtor's Objection to the Creditor Plan Proponents' Specific Disclosure Statement[7]** | **Creditor Plan Proponents' Response[8]** |
|---|---|
| | • *Subchapter V Trustee's Initial Findings of Free Speech Systems, LLC Investigation* [FSS Case; ECF No. 550], p. 2 ("FSS did not generally observe corporate formalities. Prior to the bankruptcy filing, FSS lacked virtually any internal accounting controls."); *id.*, p. 29 ("Mr. Jones is the sole member of FSS. Given the accounting and financial problems, as well as avoidable transfers, it is possible that Mr. Jones did not properly carry out his fiduciary duties to the company to ensure proper financial controls. Mr. Jones also engaged in a number of self-dealing transactions.").<br><br>The Debtor's mismanagement of his affairs and records—both prepetition and after the commencement of the Chapter 11 Case—is clear from the four iterations of Schedules and Statements that have been filed (each reflecting material changes and inconsistencies) and repeated representations that additional changes will be forthcoming. Moreover, as further described in the Specific Disclosure Statement, the Debtor made numerous transfers of significant assets leading up to the Petition Date without receiving adequate consideration in return. Finally, the Debtor's staggering postpetition spending month after month and delay of more than a year in beginning to sell non-exempt assets demonstrate his continued mismanagement of his Estate.[9]<br><br>***Notwithstanding the foregoing, the Creditor Plan Proponents will note in the Specific Disclosure Statement that the Debtor disagrees with these statements.***<br><br>**[2] <u>Nondischargeable Liability</u>:** The referenced paragraph does not state that *all* of the Sandy Hook Families' Claims are nondischargeable. Moreover, the Specific Disclosure Statement is replete with references and explanations regarding the Court's determination that a significant portion—namely more than $1 billion—of the Sandy Hook Families' Claims were confirmed to be nondischargeable by this Court.<br><br>***Nevertheless, the Creditor Plan Proponents will modify this sentence in the Specific Disclosure Statement at the Debtor's request.*** |

---

[9] *See, generally, Reservation of Rights of the Official Committee of Unsecured Creditors in Respect of Alexander E. Jones's July Monthly Operating Report* [ECF No. 419].

| Debtor's Objection to the Creditor Plan Proponents' Specific Disclosure Statement[7] | Creditor Plan Proponents' Response[8] |
|---|---|
| | **[3] Value Available for Creditors:** Whether the Creditors' Plan is in the best interests of creditors in accordance with Bankruptcy Code section 1129(a)(7) is indisputably a confirmation issue. As such, it has no bearing on conditional approval of the Specific Disclosure Statement. The Creditor Plan Proponents reserve all rights with respect to this and all other issues related to confirmation of the Creditors' Plan, which will be addressed at the appropriate time in connection with the Confirmation Hearing. That said, liquidation under chapter 7 of the Bankruptcy Code, which requires appointment of a liquidating trustee entitled to a percentage recovery of all assets sold, the payment of fees for retained professional and a fire sale approach to the liquidation of assets, will result in lower proceeds to creditors than an orderly liquidation in a chapter 11. When analyzing recoveries under chapter 11 plans as compared to a hypothetical chapter 7 liquidation, bankruptcy courts consider that "the increased costs associated with a liquidation under chapter 7 [] further reduce the proceeds available for distribution." *In re Pisces Energy, LLC*, Case Nos. 09-36591-H5-11, 09-36593-H5-11, 2009 WL 7227880, at *12 (S.D. Tex. Dec. 21, 2009). Bankruptcy courts also consider that chapter 7 liquidation values are lower due to the faster pace of a chapter 7 sale. *See In re Lopez Munoz*, Case No. 13-08171, 2018 WL 4501112, at *14 (Bankr. D.P.R. Sept. 18, 2018). In *Cypresswood Land Partners, I*, for instance, the bankruptcy court stated that "liquidating plans may be more cost effective than liquidation under chapter 7 because liquidating plans 'provide[] for the expeditious payment of available proceeds of the [e]state to [a]llowed [c]laims . . . without the need for the delay and expense occasioned by the appointment of a [c]hapter 7 trustee.'" 409 B.R. 396, 428 (Bankr. S.D. Tex. 2009) (quoting *In re WRN*, Case No. 06-41381, 2007 WL 1555812, at *6 (Bankr. E.D. Tex. May 24, 2007). |
| **b. Introduction, page 2:** "[The statement that confirmation of the Creditors' Plan will not affect the FSS Case] needs to be corrected to reflect that the impact of the [Creditors' Plan] on the Debtor may | This is the first time the Debtor has definitively and publicly affirmed that he will not continue working for FSS absent confirmation of a plan acceptable to him in this Chapter 11 Case. The Creditor Plan Proponents reserve the right to argue in connection with the Confirmation Hearing that Jones is improperly tying the outcome of his Chapter 11 Case to the outcome of the FSS Case, which is separately administered and seeks confirmation of its own plan. |

11

| Debtor's Objection to the Creditor Plan Proponents' Specific Disclosure Statement[7] | Creditor Plan Proponents' Response[8] |
|---|---|
| have a substantial impact on the FSS Plan, potentially resulting in liquidation" because "the Debtor has made it clear without a confirmed plan in his Chapter 11 Case, he is unwilling to work for FSS." | *Nevertheless, the Creditor Plan Proponents will include Jones's threat not to work for FSS as a risk factor in the Specific Disclosure Statement. Moreover, the Creditor Plan Proponents further address the uncertainties regarding the future of FSS in the Creditors' Plan Liquidation Analysis.* |
| **c. Background and the Underlying State Court Litigation, pages 1-4:** "This section needs to include a disclaimer that the Debtor disagrees with the characterizations of his actions and litigation history." | The characterization of the underlying state court litigation in the Specific Disclosure Statement was in direct response to the argumentative and inflammatory characterizations of the litigation history included in the Jones Disclosure Statement. *Nevertheless, the Creditor Plan Proponents will note in the Specific Disclosure Statement that the Debtor disagrees with the characterization of his actions and litigation history contained therein.* |
| **d. Filing of Schedules and Statements, pages 6-7:** "[The statement that the UCC's Investigation was prompted by the deficiencies and inaccuracies in the Schedules and Statements] is inaccurate as the UCC launched its investigations into the Debtor's assets before the Schedules were filed." | The UCC undertook the UCC's Investigation in furtherance of its fiduciary obligations to unsecured creditors. *See* 11 U.S.C. § 1103; *In re Advisory Comm. of Major Funding Corp.*, 109 F.3d 219, 224-225 (5th Cir. 1997) ("[Bankruptcy Code] section 1103 essentially requires the committee to act in the best interest of the creditors it represents" and imposes on a committee "the duty to use any tool available under section 1103 to accomplish this goal."). The need to pursue certain discovery became apparent as the case progressed. As such, the UCC's Investigation served multiple functions throughout the Chapter 11 Case and evolved as the case developed. *Nevertheless, the Creditor Plan Proponents will modify this sentence in the Specific Disclosure Statement to make clear the scope of basis of the UCC's Investigation.* |
| **e. Discovery Process, page 11:** "[The quoted] paragraph is misleading in that it implies that the Debtor has not cooperated with the | The Creditor Plan Proponents dispute the characterization of the discovery propounded by the UCC as "burdensome." Further, the Creditor Plan Proponents' characterization of the status of discovery is neither incorrect nor misleading. The Specific Disclosure Statement acknowledges how many documents have been produced and which parties have been deposed in Art. III.F.1. Moreover, although some documents have been produced by the Debtor and third parties, numerous requests for documents and information were answered |

12

| Debtor's Objection to the Creditor Plan Proponents' Specific Disclosure Statement[7] | Creditor Plan Proponents' Response[8] |
|---|---|
| numerous and burdensome discovery requests propounded by the UCC." | only partially and incompletely. As such, the Creditor Plan Proponents do not believe that any modification to the Specific Disclosure Statement in response to this objection is appropriate. |
| **f. Assets, page 12:** "The UCC implies that funds spent on home repair for the Debtor's homestead may have been in an effort to hinder, delay, or defraud creditors under section 522(o). The Debtor expressly disputes this." | The Specific Disclosure Statement does not take a position on whether funds spent on the homestead may have been in an effort to hinder, delay, or defraud creditors, and instead states that the matter remains under investigation. As such, the Creditor Plan Proponents do not believe any modification to the Specific Disclosure Statement is necessary, nor does it appear that the Debtor has requested any such modification. |
| **g. Avoidance Actions Against Erika Jones, pages 14-15:** "[The quoted] paragraph should be amended to reflect that the Debtor does not agree [that the Premarital Agreement was not properly ratified and to disclose] whether the UCC has consulted with any Texas family law expert and whether they support this allegation." | The Creditor Plan Proponents thoroughly investigated the circumstances and the law related to the purported Premarital Agreement, the purported ratification in the lead up to bankruptcy, and the transfers to Mrs. Jones, and determined that the Estate holds valuable claims against Mrs. Jones, as set forth in the Specific Disclosure Statement. Notably, the Creditor Plan Proponents repeatedly asked the Debtor to explain his position and to schedule a discussion with the Debtor's family law advisor—but the Debtor failed to do so. *Nevertheless, the Creditor Plan Proponents will include a statement in the Specific Disclosure Statement that the Debtor disagrees that the Premarital Agreement was not properly ratified.* |
| **h. Avoidance Actions Against David Jones, pages 15-16:** "In this section, the [Creditor Plan Proponents] accuse[] the Debtor of backdating documents with respect to the transfer of the Ranch property to Dr. Jones. . . . The Debtor requests that this section be amended to reflect the Debtor's disagreement with the | Substantial evidence confirms that the document was backdated. The general warranty deed purporting to effectuate the transfer states "IN WITNESS WHEREOF, Grantor has executed and delivered this General Warranty Deed as of the day and year first below written. EXECUTED this day of April 3rd, 2017," with signatures from Alex Jones, his mother, and his sister under the 2017 date. The document was not notarized until five years later, in April 2022. ████████████████████████████████████████ |

13

| **Debtor's Objection to the Creditor Plan Proponents' Specific Disclosure Statement[7]** | **Creditor Plan Proponents' Response[8]** |
|---|---|
| UCC's legal analysis on this issue, and the lack of evidence to support their claim be stated." | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Thus, all evidence indicates that the document was created and signed in 2022, despite the April 3, 2017 date.<br><br>*Nevertheless, the Creditor Plan Proponents will include a statement in the Specific Disclosure Statement that the Debtor disagrees with the Creditor Plan Proponents' analysis on this issue.* |
| **i. Key Aspects of the Creditor's Plan, page 22:** "The Debtor cannot be forced to forfeit his privilege rights. The Debtor requests that this section be amended to include that the Debtor will not consent to the loss of his attorney-client privilege and does not believe he can be forced to do so under the law." | This squarely is a confirmation issue, as it relates to the substance of the Creditors' Plan and not disclosure of information in connection therewith. The Creditor Plan Proponents reserve all rights to address this issue at the appropriate time in connection with the Confirmation Hearing. Nevertheless, and reserving all rights to litigate this issue in connection with the Confirmation Hearing, the Creditor Plan Proponents disagree with the broad assertion that an individual debtor's privileges never transfer to a liquidating trustee. In at least one case from the Northern District of Texas, the court found that "[t]he liquidating trustee now controls the power to waive or invoke the evidentiary privileges that arise in connection with the causes of action transferred to the liquidating trust . . . . With his bankruptcy petition, [the individual debtor] relinquished control over his evidentiary privileges made in connection with potentially avoidable transfers to the debtor in possession, a fiduciary for the bankruptcy estate." *In re Williams*, 152 B.R. 123, 129 (Bankr. N.D. Tex. 1992) (addressing the issue of the transfer of privilege in connection with avoidance claims brought against the debtor's family members). Courts in other jurisdictions agree with the holding in *In re Williams*. *See, e.g., In re Eddy*, 304 B.R. 591, 598 (Bankr. D. Mass. 2004) ("The most numerous, and most recent cases have held that, at least under some circumstances, a trustee may waive the attorney-client privilege in an individual bankruptcy case.") (collecting cases); *Foster v. Hill (In re Foster)*, 188 F.3d 1259 (10th Cir. 1999) (holding that determination of trustee's control over privilege should be based upon a comparison of the harm to the debtor against the trustee's need for information).<br><br>*Nevertheless, the Creditor Plan Proponents will include a statement in the Specific Disclosure Statement that the Debtor disagrees with this position. Additionally, the Creditor Plan Proponents will modify the Specific Disclosure Statement—and will make a* |

14

| Debtor's Objection to the Creditor Plan Proponents' Specific Disclosure Statement[7] | Creditor Plan Proponents' Response[8] |
|---|---|
| | *corresponding change to the Creditors' Plan—to clarify that the books and records that will be transferred to the GUC Trust will be limited to those books and records relating to prepetition transfers of Estate assets and the avoidance actions and estate claims that will be pursued by the GUC Trust.* |
| **j. Rejection of Executory Contracts and Unexpired Leases, page 23:** "The [Specific Disclosure Statement] states that the Debtor's premarital agreement shall be rejected under the Plan and that all Claims thereunder shall be treated as subordinated. This requirement would force the Debtor to breach a valid contract, in violation of Texas law . . . . The Debtor would request that this section be amended to include that the Debtor will not agree to this provision, that it is illegal, and believes that it could create liability for the estate and for members of the UCC." | Again, this is an issue to be addressed in connection with confirmation, and the Creditor Plan Proponents reserve all rights to address this issue at the appropriate time in connection with the Confirmation Hearing. Nevertheless, Bankruptcy Code section 365 allows rejection of an executory contract, which rejection constitutes a breach of such contract and "has only its consequences." *Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019). Moreover, a plan proponent other than a debtor that proposes a confirmable plan has the right, as an estate representative, to assume or reject an executory contract. *See, e.g., In re Dynamic Tooling Sys., Inc.*, 349 B.R. 847, 854 (Bankr. D. Kan. 2006); *In re Nickels Midway Pier, LLC*, 452 B.R. 156, 161 (D.N.J. 2011). If the Premarital Agreement is determined to be a valid, binding contract, (i) rejection is a breach and (ii) Mrs. Jones can assert an unsecured claim as a result of the breach. *See Gulfport Energy Corp. v. FERC*, 41 F.4th 667, 684 (5th Cir. 2022) ("Rejection is just a breach of contract; it transforms the debtor's future performance into an unsecured claim for damages."). <br><br> With respect to threats of tortious interference claims, the UCC and its members unequivocally are protected under numerous doctrines for carrying out their fiduciary duties and would also be protected by the exculpation provisions of the Creditors' Plan. |
| **k. Classification and Treatment of Claims, page 24:** "The [Specific Disclosure Statement] lists $2,099,139,969.58 in General Unsecured Claims. It is unknown where this total comes from and the Debtor does not believe it to be accurate." | *The Creditor Plan Proponents will modify the Specific Disclosure Statement to reflect an updated amount of General Unsecured Claims.* |

| Debtor's Objection to the Creditor Plan Proponents' Specific Disclosure Statement[7] | Creditor Plan Proponents' Response[8] |
|---|---|
| **l. The Debtor's Obligations and Covenants, page 28:** "The [Specific Disclosure Statement] is misleading creditors by promising creditors additional sworn statements without the Debtor's consent. . . . Such a statement cannot be compelled, and would be unenforceable with no consideration, which it is clear is not granted to the Debtor in the [Creditors' Plan]." | This is an issue for confirmation, and the Creditor Plan Proponents reserve all rights to address it at the appropriate time in connection with the Confirmation Hearing. Nevertheless, it is undisputed that debtors have "an express, affirmative duty to disclose all assets." *In re Coastal Plains, Inc.*, 179 F.3d 197, 207–08 (5th Cir. 1999); *see also In re Ozcelebi*, 639 B.R. 365, 397 (Bankr. S.D. Tex. 2022) ("[T]he operation of the bankruptcy system depends on honest reporting.") (citation omitted). While the Chapter 11 Case is open, the Debtor is obligated to make full and accurate disclosures, and it will be the Debtor's burden at confirmation to prove why he should be excused from complying.<br><br>The Debtor and his professionals have represented repeatedly that certain assets identified through the UCC's Investigation were missing or had been transferred at unknown times to unknown third parties prior to the Petition Date, sometimes discovering later that the representation was not accurate. These unsworn representations concerning the dissipation of Estate assets, particularly when made by the Debtor's professionals without first-hand knowledge, are insufficient. The Debtor's Schedules and Statements shifted demonstrably throughout the Chapter 11 Case and remain in flux. Certain assets still remain unaccounted for. Accordingly, a ten-year lookback period, with the value limitations proposed in the Creditors' Plan, is reasonable.<br><br>It is also incorrect that the Debtor will receive no consideration under the Creditors' Plan. While the Debtor does not get a discharge from nondischargeable claims (to which he is not entitled), the Creditors' Plan does discharge certain of the Claims that are paid in full. Additionally, the Creditors' Plan absolves Jones of the obligation to undertake the process of selling his non-exempt assets and pursuing litigation for the benefit of creditors, which obligation is transferred to the GUC Trust. |
| **m. Releases and Exculpation, page 29:** "The [Specific Disclosure Statement] includes releases and exculpations for the UCC and Sandy | The propriety of releases and the scope thereof is a confirmation issue, and the Creditor Plan Proponents reserve all rights to address this issue at the appropriate time in connection with the Confirmation Hearing. Nevertheless, the Fifth Circuit, in *In re Pacific Lumber Co.*, held that releases for creditors' committees are appropriate "for actions within the scope of their duties." 584 F.3d 229, 253 (5th Cir. 2009). The Fifth Circuit also opined that "actions against committee members in their capacity as such should be discouraged," and upheld the |

16

| Debtor's Objection to the Creditor Plan Proponents' Specific Disclosure Statement[7] | Creditor Plan Proponents' Response[8] |
|---|---|
| Hook Plaintiffs [for] which no consideration has been given." | contemplated releases for committee members in their capacity as committee members, as well. *Id.* Bankruptcy courts in the Southern District of Texas, applying *Pacific Lumber*, have upheld such releases in cases more recent than *Endeavour* cited by the Debtor in Jones Specific Disclosure Statement Objection. *See, e.g.*, *In re Fieldwood Energy LLC*, Case No. 20-33948 (MI), 2021 WL 2853151 (Bankr. S.D. Tex. June 25, 2021); *In re Bigler LP*, 442 B.R. 537 (Bankr. S.D. Tex. 2010). Moreover, as stated above, it is incorrect that the Creditor Plan Proponents are not providing any consideration in exchange for the releases—the Creditor Plan Proponents' substantial contribution to the Chapter 11 Case and the Debtor's emergence from the case upon confirmation of the Creditors' Plan provides adequate consideration in exchange for the releases. |
| **n. Exhibit B to [Creditors' Plan], Schedule of Assets, page 4:** "The Debtor requests that [the identified] portion of the Schedule of Assets be corrected to reflect actual values." | As stated above, it is the Debtor's obligation to provide full and accurate disclosure in respect of Estate assets. The UCC has had an extremely difficult time reconciling the Debtor's various inconsistent disclosures, and questions remain open.[10] <br><br> Importantly, an individual chapter 11 debtor cannot retain **any** non-exempt property under a chapter 11 plan and must make all non-exempt assets available for distribution. *See e.g.*, *In re Wilson*, No. 11-50396-rlj-7, 2014 Bankr. LEXIS 3151, at *3-4 n.1 (Bankr. N.D. Tex. July 24, 2014) (stating that confirmation of the debtors' chapter 11 plan was denied because absolute priority rule meant that the debtors could not retain non-exempt property without paying their creditors in full, thus prompting conversion to chapter 7); *In re Joseffy*, 654 B.R. 747 (Bankr. S.D. Fla. 2023) ("The Court concludes that the absolute priority rule continues to apply in individual chapter 11 cases, [and that] it does not preclude debtors from retaining exempt property, but it does preclude them from retaining non-exempt property other than property described in section 1115."). Therefore, identification of all exempt and non-exempt property is of crucial importance in this Chapter 11 Case. |

---

[10] As recently as last week, the Debtor went back and forth on the value of certain non-exempt personal items, changing the value of such assets between the First Jones Specific Disclosure Statement Objection and the Second Jones Specific Disclosure Statement Objection, which was filed just a day later. *Compare First Jones Specific Disclosure Statement Objection* ¶ 12.n *with Second Jones Specific Disclosure Statement Objection* ¶ 12.n.

17

| **Debtor's Objection to the Creditor Plan Proponents' Specific Disclosure Statement[7]** | **Creditor Plan Proponents' Response[8]** |
|---|---|
| | The Debtor now states that "the UCC references the 2022 Litigation Settlement Trust and claims it holds the InfoWars.com intellectual property. After further investigation, it was determined that this intellectual property is owned by FSS, not the Debtor, and therefore will need to be removed from the Debtor's Schedules." This is inconsistent with the Debtor's representations in this Court (and those of his entities) and appears to be incorrect. First, the Debtor's Schedules and Statements disclose that he has an interest in the "2022 Litigation Settlement Trust" which holds three entities—InfoW, LLC, IWHealth, LLC and Prison Planet TV, LLC (together, the "InfoW Debtors"), which own the "Infowars.com, and Infowars.net" domain names.[11] In contrast, FSS, in its schedules and statements, did not list any intellectual property, the InfoW Debtors, or the Litigation Settlement Trust as assets.[12] Furthermore, the InfoW Debtors previously filed for chapter 11 protection in this Court on April 18, 2022. In those cases, the InfoW Debtors filed a motion in which they represented that "Debtor InfoW, owns copyrights and domain names related to 'Infowars.com.' . . . Debtor Prison Planet TV owns copyrights and domain names related to prisonplanet.tv."[13] The InfoW Motion also asserts that prior to the InfoW Debtors' filing, "Jones also owned one hundred percent (100%) of the equity in InfoW, IWHealth and Prison Planet TV" and that "[h]e assigned these equity interests to the 2022 Litigation Settlement Trust before the [InfoW Debtors'] Petition Date."[14] |
| | With respect to the firearms, the Debtor's most recent iteration of his Schedules and Statements states that the Debtor owns 51 firearms with a total value of $73,744.[15] |

---

[11] *Global Notes and Supporting Information Regarding Third Amended Schedules of Assets and Liabilities and Statement of Financial Affairs* at 18 [ECF No. 501] (the "Third SOFA"); *Global Notes and Supporting Information Regarding Second Amended Schedules of Assets and Liabilities and Statement of Financial Affairs* at 7-8 [ECF No. 242].

[12] *Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding Debtor's Schedules and Statements* at 11, *In re Free Speech Systems, LLC*, 22-60043 [ECF No. 121] (Bankr. S.D. Tex., Aug. 29, 2022).

[13] *Debtors' Emergency Application for Interim and Final Orders (A) Authorizing Employment of W. Marc Schwartz as Chief Restructuring Officer, (B) Authorizing Employment of Staff of Schwartz Associates, LLC in Discharge of Duties as Chief Restructuring Officer, and (C) Granting Related Relief* ¶ 7, *In re InfoW, LLC*, 22-60021 (Docket. No. 7) (Bankr. S.D. Tex., Apr. 18, 2022) (the "InfoW Motion").

[14] *Id.* ¶ 9.

[15] Third SOFA at 9, 20.

| Debtor's Objection to the Creditor Plan Proponents' Specific Disclosure Statement[7] | Creditor Plan Proponents' Response[8] |
|---|---|
| | A previous version of the Schedules and Statements listed 54 firearms, but three were removed on the erroneous basis that they belonged to Mrs. Jones. The Specific Disclosure Statement will be modified to note that the Debtor now acknowledges ownership of 54 firearms and an obligation to sell 52 firearms for the benefit of the estate. |
| | With respect to the Rolexes, conclusory 11th hour statements by Debtor's counsel that four watches, with an estimated value of $50,000-$90,000, that the Debtor admitted he owned "were either lost or given away outside of the relevant transfer time period" are facially insufficient to justify the removal of valuable assets from the Creditors' Disclosure Statement. For more than a year, the Debtor has failed to provide any explanation about the whereabouts of the Rolexes or, if they were lost or given away, when and to whom. |
| | With respect to the fossil, polished stone, and two stone lamps, their valuations were determined from documents produced by the Debtor himself and were not included, at any value, in any of the Debtor's disclosures. Since the Debtor has not provided an alternative valuation for consideration, no alteration is possible or appropriate. |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 22, 2024, a true and correct copy of the foregoing Reply was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

*/s/ Marty L. Brimmage, Jr.*
Marty L. Brimmage, Jr.
