IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALEXANDER E. JONES, | § | Case No. 22-33553 |
| | § | |
| Debtor. | § | |
| | § | |

NOTICE OF FILING DEBTOR'S PROPOSED AMENDED PLAN OF
REORGANIZATION AND BLACKLINE SHOWING CHANGES BETWEEN
DEBTOR'S PROPOSED PLAN OF REORGANIZATION AND PROPOSED AMENDED
<u>PLAN OF REORGANIZATION</u>

PLEASE TAKE NOTICE OF THE FOLLOWING[1]:

1.      On December 2, 2022, the above-captioned debtor, Alexander E. Jones (the "<u>Debtor</u>" or "<u>Jones</u>"), filed his voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the United Stated States Bankruptcy Court for the Southern District of Texas.

2.      On December 15, 2023, the Debtor filed his proposed *Plan of Reorganization* (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>") [Docket No 523] with the Court.

3.      The Debtor hereby files this proposed amendment to the Plan (the "<u>Amended Plan</u>"). The Amended Plan contains the following documents (each as defined in the Amended Plan and certain of which continue to be negotiated and will be filed in substantially final form prior to the Effective Date), as may be modified, amended, or supplemented from time to time.

| | |
|---|---|
| **Exhibit A** | Claim amounts for Plaintiffs (both electing and non-electing Plaintiff's and other unsecured creditors with claims |
| **Exhibit B** | List of all litigation that would be terminated with Opt-In Settling Plaintiffs |
| **Exhibit C** | Voting Claim amounts for Plaintiffs (both electing and non-electing Plaintiff's and other unsecured creditors with claims |

Schedule A – Property list with intention/explanation/qualification
Schedule B – Related Parties

4.      Certain documents, or portions thereof, contained in the Amended Plan remain subject to ongoing review, revision, and further negotiation among the Debtor and interested parties with respect thereto. The Debtor reserves the right to alter, amend, modify, or supplement any document in the Amended Plan in accordance with the Plan at any time before the Effective

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**NOTICE OF FILING DEBTOR'S PROPOSED AMENDED PLAN OF REORGANIZATION AND BLACKLINE SHOWING CHANGES BETWEEN DEBTOR'S PROPOSED PLAN OF REORGANIZATION AND PROPOSED AMENDED PLAN OF REORGANIZATION - Page 1**

Date of the Amended Plan or any such other date as may be provided for by the Amended Plan or by order of the Bankruptcy Court; *provided* that if any document in the Amended Plan is altered, amended, modified, or supplemented in any material respect prior to the date of the Confirmation Hearing, the Debtor will file a blackline of such document with the Bankruptcy Court.

5.      A blackline comparing the Debtor's Plan to the proposed Amended Plan of Reorganization is attached hereto as <u>Exhibit A</u>, respectively.

Dated:  January 23, 2024

**CROWE & DUNLEVY, P.C.**


By:  */s/ Vickie L. Driver*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**ATTORNEYS FOR ALEXANDER E. JONES**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing pleading was served upon all parties registered to receive notices via the Court's ECF noticing system on this 23rd day of January, 2024.

*/s/ Vickie L. Driver*
Vickie L. Driver

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALEXANDER E. JONES, | § | |
| | § | |
| Debtor. | § | Case No. 22-33553 (CML) |
| | § | |

---

## DEBTOR'S PROPOSED AMENDED PLAN OF REORGANIZATION

---

Dated: January 23, 2024.

**CROWE & DUNLEVY, P.C.**

Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
        aortiz@jhwclaw.com

**ATTORNEYS FOR ALEXANDER E. JONES**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 5

SUMMARY OF PLAN ........................................................................................................ 5

ARTICLE I: ......................................................................................................................... 6

DEFINITIONS, CONSTRUCTION, AND INTERPRETATION ..................................... 6

ARTICLE II: ...................................................................................................................... 13

UNCLASSIFIED CLAIMS ............................................................................................... 13

    2.01.    *Administrative Claims* ................................................................................ 13

    2.02.    *Priority Tax Claims* .................................................................................. 14

    2.03.    *Domestic Support Obligations.* ................................................................. 15

    2.04.    *U.S. Trustee Fees.* ..................................................................................... 15

ARTICLE III: ..................................................................................................................... 15

CLASSIFICATION OF CLAIMS ..................................................................................... 15

    3.01.    *Introduction.* ............................................................................................ 15

    3.02.    *Claims Against the Debtor.* ...................................................................... 16

ARTICLE IV ...................................................................................................................... 16

IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS ............................. 16

    4.01.    *Unimpaired Claims* .................................................................................. 16

    4.02.    *Impaired Claims* ....................................................................................... 16

    4.03.    *Controversy Concerning Impairment* ..................................................... 16

ARTICLE V ....................................................................................................................... 17

TREATMENT OF CLAIMS .............................................................................................. 17

    5.01.    *Non-Tax Priority Claims – Class 1* ......................................................... 17

    5.02.    *Priority and Secured Tax Claims – Class 2* ............................................ 17

    5.03.    *Secured Claim of Bank of America – Class 3* .......................................... 18

    5.04.    *Secured Claim of Security Bank of Crawford – Class 4* ......................... 18

    5.05.    *"Opt-In Settlement" Unsecured Claims – Class 5* ................................... 18

    5.06.    *General Unsecured Claims – Class 6* ....................................................... 20

    5.07.    *Administrative Convenience Claims – Class 7* ......................................... 20

ARTICLE VI ...................................................................................................................... 21

**MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN** .............................. 21

*6.01.* *The Settlement* ............................................................................... 21

*6.02.* *Sources of Cash and Terms of Payment for Plan Distributions*.................... 22

*6.03.* *Payments.* ................................................................................... 22

*6.04.* *Post Effective Date Management.* ...................................................... 23

**ARTICLE VII**.................................................................................................... 23

**TREATMENT OF EXECUTORY CONTRACTS** .................................................... 23

*7.01.* *General Treatment of Executory Contracts: Rejected*................................ 23

*7.02.* *Cure Payments and Release of Liability* ............................................. 23

*7.03.* *Bar to Rejection Claims* ................................................................. 24

*7.04.* *Rejection Claims* .......................................................................... 24

**ARTICLE VIII** ................................................................................................. 24

**CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION** .............................................................................................. 24

*8.01.* *Conditions Precedent to Confirmation Date*........................................... 24

*8.02.* *Conditions Precedent to the Effective Date* .......................................... 25

*8.03.* *Consequences of Non-Occurrence of Effective Date*................................ 25

**ARTICLE IX** ................................................................................................... 25

**EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE**............................... 25

*9.01.* *Binding Effect* .............................................................................. 25

*9.02.* *Vesting of Assets* .......................................................................... 26

*9.03.* *Assertion of Causes of Action, Defenses and Counterclaims*...................... 26

*9.04* *Discharge of Debtor* ....................................................................... 27

*9.05* *Injunction*.................................................................................... 28

*9.06* *Term of Bankruptcy Injunction or Stays* ............................................. 28

*9.07* *Effectuating Documents; Further Transactions; Timing*............................ 28

**ARTICLE X**..................................................................................................... 29

**OBJECTIONS TO CLAIMS; DISTRIBUTIONS** ................................................... 29

*10.01.* *Objections to Claims* ...................................................................... 29

*10.02.* *Objection Deadline* ........................................................................ 29

*10.03.* *Settlement of Objections to Claims*..................................................... 29

*10.04.* *No Interest on Claims* ..................................................................... 29

10.05.   *Setoffs by the Debtor; No Waiver* ........................................................... 29

10.06.   **Procedures for Treating and Resolving Disputed and Contingent Claims** ................... 30

10.07.   *Distributions Under the Plan* ............................................................. 32

10.08.   *Duty to Disgorge Overpayments* ........................................................ 33

10.09   *Duties of the Disbursement Agent* ...................................................... 33

10.10   *Disbursement Agent Expenses* .......................................................... 34

**ARTICLE XI** ................................................................................. 34

**ACCEPTANCE OR REJECTION OF THE PLAN** ......................................... 34

11.01.   *Impaired Classes Entitled to Vote* ...................................................... 34

11.02.   *Acceptance by an Impaired Class* ....................................................... 34

11.03   *Elimination of Vacant Classes.* .......................................................... 34

11.04.   *Section 1129(b) Cramdown* .............................................................. 34

**ARTICLE XII** ................................................................................ 35

**RETENTION OF JURISDICTION** ...................................................... 35

12.01.   *Jurisdiction* ............................................................................ 35

12.02.   *Examination of Claims* .................................................................. 35

12.03.   *Determination of Disputes* .............................................................. 35

12.04.   *Additional Purposes* .................................................................... 35

12.05.   *Failure of the Bankruptcy Court to Exercise Jurisdiction* .............................. 37

**ARTICLE XIII** ............................................................................... 37

**MISCELLANEOUS PROVISIONS** ...................................................... 37

13.01.   *General Notices* ........................................................................ 38

13.02.   *Exemption From Transfer Taxes* ........................................................ 38

13.03.   *Asserting and Curing Default Under the Plan* ........................................... 38

13.04.   *Revocation or Withdrawal of the Plan* .................................................. 39

13.05.   *Modification of the Plan* ................................................................ 39

13.06.   *Computation of Time* ................................................................... 40

13.07.   *Due Authorization* ..................................................................... 40

13.08.   *Implementation* ........................................................................ 40

13.09.   *Execution of Documents* ................................................................ 40

13.10.   *Bankruptcy Restrictions* ............................................................... 40

13.11.   *Limited Plan Exculpation.* .............................................................. 40

13.12.   *Ratification* ............................................................................ 41

*13.13.*   **Integration Clause.** ........................................................................................ *41*

*13.14*   **Interpretation** ..................................................................................................... *41*

*13.15*   **Severability of Plan Provisions** ......................................................................... *41*

*13.16*   **Governing Law** .................................................................................................... *41*

## INTRODUCTION

Alexander E. Jones proposes this Plan pursuant to Bankruptcy Code section 1121(a). Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtor's assets, liabilities, resolutions of certain material disputes, future income projections, liquidation analysis, risk factors, summary and analysis of the Plan, and certain related matters. The Distributions to be made pursuant to this Plan to Holders of Allowed Claims, in each of the Classes of Claims against the Debtor set forth in Article III of this Plan, are set forth in Article V of this Plan.

THE DEBTOR URGES ALL HOLDERS OF CLAIMS TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY. NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND ANY DOCUMENTS, SCHEDULES OR EXHIBITS ATTACHED THERETO OR REFERENCED THEREIN HAVE BEEN AUTHORIZED BY THE DEBTOR OR THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

## SUMMARY OF PLAN[1]

The Plan provides for the reorganization of the Debtor and the payment of Allowed Claims through: (a) the continued orderly liquidation of certain non-exempt assets of the Debtor; (b) the settlement of various estate claims against individuals and businesses; and (c) the Debtor's commitment to contribute substantial funds from his future income.  More specifically, the Debtor will contribute 100% of the Net Disposable Income of Free Speech System, LLC ("FSS") as set forth in the FSS Plan and 50% of the Debtor's Plan Income to both settling and non-settling parties, until such time as certain minimum payments have been contributed for settling parties, and then 25% of the Debtor's Plan Income over the remaining Plan Term to non-settling parties.  As a result, all allowed administrative claims, priority claims, and secured claims will be paid in full, and allowed unsecured creditors will receive a substantial Distribution (and significantly more than they would receive in a liquidation whether through a liquidating chapter 11 plan or a chapter 7).

The Plan also allows for unsecured creditors to opt in to a "settling class" allowing for faster payment of their claims and repayment from certain non-exempt assets of the Debtor in exchange for settlement of certain existing litigation claims. This settlement class facilitates the Plan and benefits all stakeholders by resolving pending litigation that would otherwise be both costly and time consuming for the Debtor and the bankruptcy estate. Finally, the Plan incentivizes the Debtor to satisfy his obligations to fund the Plan as soon as possible to accelerate payments to creditors.

---

[1] This Summary is intended solely to provide an overview of the Plan.  The Summary shall not be binding on the Debtor, and in the event of any conflict between the Summary and any other provision of the Plan, such other provision shall be controlling.

## ARTICLE I:

## DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

The capitalized terms used herein shall have the respective meanings set forth below. A capitalized term used herein that is not defined in this Article shall have the meaning ascribed to that term, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa. All exhibits and schedules attached to the Plan are incorporated herein.

1.01.    *"Administrative Claim"* means any Claim for an Administrative Expense.

1.02.    *"Administrative Expense"* means any cost or expense of administration of this case incurred on or before the Effective Date that is entitled to priority under section 507(a)(2) and allowed under section 503(b) of the Bankruptcy Code, including, without limitation, Fee Claims and all other claims for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, Cure Claims, and all fees and charges assessed against the Debtor's Estate under the Bankruptcy Code.

1.03.    *"Allowance Date"* means the date on which a Claim, an Administrative Claim, or any Secured Claim becomes an Allowed Claim.

1.04.    *"Allowed"* means, when used with respect to a Claim (including any Administrative Claim), or any portion thereof, a Claim, Administrative Claim, or any portion thereof (a) that has been allowed by a Final Order, (b) that was listed in the Schedules as neither disputed, contingent nor unliquidated and for which no timely Proof of Claim was filed, (c) for which a Proof of Claim in a liquidated amount has been timely filed pursuant to the Bankruptcy Code or as required by any Final Order of the Bankruptcy Court and as to which either (i) no objection to its allowance has been filed on or before the Objection Deadline or within any other period fixed by the Bankruptcy Code or a Final Order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount in the Plan. For the avoidance of doubt, in order to have an Allowed Claim, each Non-Electing Plaintiff must have a Final Order against the Debtor in their respective state court litigation case.

1.05.    *"Avoidance Action"* means any cause of action under any of sections 544, 545, 546, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code, which actions are waived except as specified in the Plan.

1.06.    *"Bankruptcy Case"* means the Debtor's Bankruptcy Case No. 22-33553 under chapter 11 of the Bankruptcy Code.

1.07.    *"Bankruptcy Code"* means the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

**1.08.** *"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or such other court having jurisdiction over this case.

**1.09.** *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

**1.10.** *"Business Day"* means any day on which commercial banks are open for business in Austin, Texas.

**1.11.** *"Cash"* means legal tender of the United States of America or Cash equivalents.

**1.12.** *"Cause of Action"* means any cause of action or right to payment arising under federal, state, or common law, including Avoidance Actions, that the Debtor or the Estate may hold against any Person.

**1.13.** *"Claim"* shall have the meaning provided in section 101(5) of the Bankruptcy Code.

**1.14.** *"Class*" means a category of Holders of Claims as set forth in the Plan.

**1.15.** *"Collateral"* means any property of the Debtor subject to a valid and enforceable lien to secure the payment of a Claim.

**1.16.** *"Confirmation Date"* means the date on which the Bankruptcy Court enters the Confirmation Order.

**1.17.** *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128 on confirmation of the Plan.

**1.18.** *"Confirmation Order"* means the order of the Bankruptcy Court confirming this Plan.

**1.19.** *"Creditor"* shall mean the Holder of a Claim.

**1.20.** *"Cure Claim"* means a Claim arising from the assumption of an Executory Contract under section 365(b) of the Bankruptcy Code.

**1.21.** *"Debtor"* means Alexander E. Jones, and shall also include, where applicable, Jones from and after the Effective Date as reorganized pursuant to this Plan.

**1.22.** *"Disallowed"* means, when used with respect to a Claim, a Claim or the portion thereof which, in a properly entered order of the Bankruptcy Court, is fully and finally (a) denied allowance, or (b) is estimated for purposes of payment or other Plan Distributions at zero ($0.00). Disallowed means, when used with respect to an Administrative Expense of a professional that is a Fee Claim, an Administrative Expense or portion thereof that is denied by the Bankruptcy Court or other court of competent jurisdiction or that is estimated by the Bankruptcy Court for purposes

of payment or other Plan Distributions at zero ($0.00).

1.23.    *"Disbursement Agent"* means a person designated by the Debtor, with the consent of the Electing Plaintiffs, who shall have the responsibilities set forth in Article X of the Plan. The Disbursement Agent may be the same person as the trustee for the FSS Trust.

1.24.    *"Discharge Date"* means the date upon which the Court grants the Debtor a discharge upon the earlier of (i) the Debtor having satisfied his payment obligations under the Plan or (ii) all Allowed Claims shall have been paid.

1.25.    *"Disclosure Statement"* means the Disclosure Statement of Jones with respect to this Plan of Reorganization, as approved by the Court, as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules, together with any Exhibits thereto.

1.26.    *"Disputed"* when used with respect to a Claim, means any such Claim that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated, any Claim that is the subject of an objection filed in the Bankruptcy Court, any Claim that is disputed by the Debtor in any litigation, lawsuit, or adversary proceeding in the Bankruptcy Court or any other court of competent jurisdiction, or any Claim that is not Allowed.

1.27.    *"Distribution"* means the property required by this Plan to be distributed to the Holders of Allowed Claims.

1.28.    *"Domestic Support Obligations"* has the meaning provided in Section 101(14A) of the Bankruptcy Code, as such obligations may be modified from time to time by a court of appropriate jurisdiction.

1.29.    *"Effective Date"* means the first Business Day that is the later of fourteen (14) days after the Confirmation Date of this Plan if the Confirmation Order is not stayed prior to such date or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay.

1.30.    *"Electing Plaintiffs"* means those certain unsecured creditor parties who elect "Opt-In Settlement" Claim Treatment under Class 5 by the Voting Deadline and vote in favor of the Plan.

1.31.    *"Electing Plaintiff Pro Rata Share"* means the ratio, expressed as a percentage, of an Electing Plaintiff's Allowed Claim divided by the Allowed Claims of all Electing Plaintiffs, collectively.

1.32.    "*Estate*" means the Debtor's estate in this case created pursuant to section 541 of the Bankruptcy Code.

1.33.    *"Executory Contract"* means any prepetition executory contract or unexpired lease governed by section 365 of the Bankruptcy Code.

**1.34.** *"Fee Application"* means an application for the allowance of a Fee Claim.

**1.35.** *"Fee Claim"* means a Claim by a Professional or any other party-in-interest pursuant to sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code or otherwise relating to services performed after the Petition Date and prior to and including the Effective Date.

**1.36.** *"Final Decree"* means the final decree entered by the Bankruptcy Court on or after the Effective Date and pursuant to Bankruptcy Rule 3022.

**1.37.** *"Final Order"* means (a) an order as to which the time to appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment has expired and as to which no appeal, petition for certiorari or other proceedings for reargument, rehearing, reconsideration, new trial, or to alter or amend findings  or judgment shall then be pending or (b) in the event that an appeal, writ of certiorari, reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall have expired; <u>provided</u>, <u>however</u> that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 59 or Rule 60 of the Federal Rules of Civil Procedure may be filed.

**1.38.** *"FSS"* means Free Speech Systems, LLC.

**1.39.** *"FSS Plan"* means a plan under Chapter 11 Subchapter V of the Bankruptcy Code for FSS.  "FSS Plan" shall refer specifically to Docket No. 756 in Case No. 22-60043 unless further amended by FSS, at which time "FSS Plan" shall refer to such plan as amended.

**1.40.** *"FSS Trust"* means the Free Speech Systems Settlement Trust established pursuant to the FSS Plan.

**1.41.** *"General Unsecured Claims"* means non-priority unsecured claims held by parties-in-interest.

**1.42.** *"GUC Pro Rata Share* means the ratio, expressed as a percentage, of a Holder of an Allowed General Unsecured Claim in Class 6 divided by the Allowed Claims of all Holders of Allowed General Unsecured Claims in Class 6, collectively.

**1.43.** *"Holder"* means a Person who is the beneficial owner of a Claim. For purposes of a Distribution, a Person must be a Holder as of the Initial Distribution Date. For purposes of voting to accept or reject this Plan, a Person must be a Holder as of the Voting Record Date. A Holder may transfer their claim to another Person for purposes of Distribution.

**1.44.** *"Income Stream Payment"* means for a particular Plan Year during the Plan Term (i) 50% of the Debtor's Plan Income for such Plan Year through the end of the year in which the Payment Trigger occurs; and (ii) 25% of the Debtor's Plan Income for each such Plan Year following

the year in which the Payment Trigger occurs.

**1.45.** ***"Initial Distribution Date"*** means the date, determined by the Disbursement Agent, as soon as reasonably practical after the Effective Date, that Distributions with respect to Priority Tax Claims, Secured Tax Claims and Non-Tax Priority Claims shall commence.

**1.46.** ***"Lien"*** has the meaning provided in Bankruptcy Code section 101(37) and shall include a "statutory lien" as defined in Bankruptcy Code section 101(53).

**1.47.** ***"Minimum Annual Distribution"*** means, for each Electing Plaintiff in any given Plan Year during the Plan Term, the Plaintiff Pro Rata Share for such Plaintiff multiplied by $5.5 million, <u>minus</u>, the amount received by such Electing Plaintiff from the FSS Trust with respect to such Plan Year.

**1.48.** ***"Net Proceeds"*** means any amounts collected by the Debtor from any disposition of any non-exempt property, after payment of all reasonable and customary costs and expenses associated therewith which may be required to be paid under applicable law or agreement to effectuate the receipt of such proceeds, including, without limitation, any reasonable attorney fees not otherwise paid under the Plan as an Administrative Expense.

**1.49.** ***"Non-Electing Payment"*** means, on an annual basis for a particular Plan Year, the Income Stream Payment, minus the Distributions each Electing Plaintiff is entitled to under the Plan.

**1.50.** ***"Non-Electing Plaintiffs"*** means those certain unsecured creditor parties who do not elect "Opt-In Settlement" Claim Treatment under Class 5 and will instead be treated as general unsecured creditors under Class 6.

**1.51.** ***"Non-Exempt Assets"*** means, the Debtor's Cash as of the Effective Date, less the $250,000 reserve for living and post-confirmation legal expenses (as set forth in Section 6.02), as well as assets listed on the schedules of assets of the Debtor (other than assets scheduled on Schedule C as exempt for which there is no pending exemption objection), including, for the avoidance of doubt, any income tax refund owed to the Debtor as of the Petition Date. Notwithstanding the foregoing, Non-Exempt Assets does not include the Charger, the Rolex Oyster Perpetual Date, or any ownership interests the Debtor holds in entities and trusts, which the Debtor will retain post-confirmation due to the expense in replacing a car, the inability of creditors to reach trust corpus, or the inability to liquidate for value above liquidation costs. For clarity, **Schedule A**, attached hereto, contains a chart setting forth the Non-Exempt Assets, Exempt Assets, and those assets this Plan proposes that the Debtor retain that are not exempt.

**1.52.** ***"Non-Tax Priority Claim"*** means any Claim that, if allowed, would be entitled to priority in payment under Bankruptcy Code section 507(a) other than a Priority Tax Claim, an Administrative Claim, or a Domestic Support Obligation.

**1.53.** ***"Objection Deadline"*** means the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective Holder(s) thereof as provided in section 10.02 of the Plan, which date shall be ninety (90) days after the Effective Date unless extended by order of the Bankruptcy Court for good cause shown.

1.54.   **"Opt-In Settlement Unsecured Claims"** means the Claims held by those certain Electing Plaintiffs who elect "Opt-In Settlement" Claim Treatment under Class 5.

1.55.   "**Ordinary Course of Business**" shall have the meaning given to such term as utilized in Section 363(b) of the Bankruptcy Code.

1.56.   "**Payment Trigger**" shall mean the receipt by each Electing Plaintiff of their Plaintiff Pro Rata Share of $55 million, collectively from (i) the FSS Trust; (ii) the Income Stream Payment pursuant to this Plan and (iii) the 70% of proceeds from liquidation of Non -Exempt Assets minus cost of liquidation.

1.57.   **"Person"** means and includes natural persons, corporations, limited partnership, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other organizations, irrespective of whether they are legal entities, governments and agencies and political subdivisions thereof or other entities.

1.58.   **"Petition Date"** means December 2, 2022.

1.59.   **"Plaintiff"** means each of the following: Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, the Estate of Marcel Fontaine, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Sota, Carlee Soto Parisi, Carlos M. Soto, Jilian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker.

1.60.   **"Plaintiff Pro Rata Share"** means the ratio, expressed as a percentage, of a Plaintiff's Allowed Claim divided by the Allowed Claims of all Plaintiffs, collectively.

1.61.   **"Plan"** or **"Plan of Reorganization"** means this Plan of Reorganization either in its present form or as it may hereafter be altered, amended, or modified from time to time.

1.62.   **"Plan Default"** means the occurrence of a default under Article XIII of this Plan.

1.63.   **"Plan Income"** means, on an annual basis, the amount of cash basis income plus taxable fringe benefits received by the Debtor from all sources, including salary, equity distributions, unspecified donations, proceeds from litigation claims after litigation expenses, and other sources net of direct expenses, after deducting estimated taxes, health insurance, and Domestic Support Obligations. The Disbursement Agent has the sole authority to review the Debtor's annual income and deductions as well as FSS financials to ensure all income is reported and all deductions are appropriate hereunder.  Payments for Disbursement Agent expenses shall be deducted from the initial funding of the 30% Net Proceeds of the Non-exempt Asset liquidation; then from Plan Income prior to calculations for Distributions.  Plan Income shall also include, after the payment of senior classes as well as all Administrative Expense Claims and Priority Claims, the net proceeds from liquidating the Non-Exempt Assets and all Cash contributed by the Debtor to the FSS Trust on or after the Effective Date. For the avoidance of doubt, Plan Income shall not include amounts paid by the FSS Trust pursuant to the FSS Plan.

**1.64.**   *"Plan Supplement"* shall mean those certain documents and schedules to be filed no later than seven (7) days prior to the Confirmation Hearing, which shall include the identity of the Disbursement Agent and related agreements, the terms of any proposed settlements with Related Parties and schedules of assumed and rejected contracts to the extent applicable.

**1.65.**   *"Plan Term"* shall mean the period from the Effective Date through 120 months from the Effective Date, as may be extended pursuant to Section 13.03 hereof, unless otherwise determined by a Final Order of the Bankruptcy Court.

**1.66.**   *"Plan Year"* shall mean the twelve month period beginning with the first day of the month following the Effective Date.

**1.67.**   *"Priority Tax Claim"* means any Claim against the Debtor that, if Allowed, would be entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

**1.68.**   *"Professional"* means a Person defined as a professional person in sections 327 or 1103 of the Bankruptcy Code who has been employed pursuant to an order of the Bankruptcy Court in this chapter 11 case and any professional seeking compensation or reimbursement of costs and expenses in connection with this chapter 11 case pursuant to section 503(b)(4) or 1129(a)(4) of the Bankruptcy Code.

**1.69.**   *"Rejection Bar Date"* means the day that is thirty (30) days after the entry of the Confirmation Order.

**1.70.**   *"Rejection Damage Claim"* means a Claim by a party to an Executory Contract with the Debtor that has been rejected by the Debtor pursuant to this Plan or a prior Final Order of the Bankruptcy Court entered in this case.

**1.71.**   *"Related Parties"* means those certain individuals or companies related to the Debtor via blood, marriage, or ownership as identified on **Schedule B**.

**1.72.**   *"Rental Property"* means that certain real property owned by the Debtor located in Travis County, Texas which as of the date of this Plan is occupied by an individual tenant who is not a Related Party.

**1.73.**   *"Secured Claim"* means a Claim that is secured by a security interest in or a lien on property of the Estate to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the Claim Holder. Secured Claims shall include Claims secured by security interests or liens junior in priority to existing security interests or liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property after giving effect to all security interests or liens senior in priority.

**1.74.**   *"Secured Tax Claim"* means a Claim by a governmental unit for the payment of a

tax assessed against property of the Estate and that is secured as of the Effective Date by a Lien against such property, which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the property securing such Claim.

1.75.    *"Schedules"* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement have been or may be supplemented or amended.

1.76.    "*United States Trustee*" means the United States Trustee appointed under Section 591, Title 28, United States Code to serve in the Southern District of Texas.

1.77.    *"Unsecured Claim"* means a Claim that is not a Secured Claim, an  Administrative Claim, a Priority Tax Claim or a Non-Tax Priority Claim.

1.78.    "*Voting Record Date*" means the date on which an Order conditionally approving the Disclosure Statement is signed.

## ARTICLE II:

## UNCLASSIFIED CLAIMS

### 2.01.    Administrative Claims.

(a)    **Time for Filing Administrative Claims.**  The Holder of any Administrative Claim that is incurred, accrued, or in existence prior to the Effective Date, other than (i) a Fee Claim, (ii) an Allowed Administrative Claim, or (iii) a liability incurred in the Ordinary Course of Business must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before thirty (30) days after the Effective Date.  Such request must include at a minimum (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim.  Failure to timely and properly file and serve the request required under this Section shall result in the Administrative Claim being forever barred and discharged.  Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party and the Debtor within thirty (30) days after the filing of the applicable request for payment of an Administrative Claim.

(b)    **Time for Filing Fee Claims.**  Any Person who holds or asserts an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application within sixty (60) days after the Effective Date.  Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being forever barred and discharged. No Fee Claim will be deemed Allowed until an order allowing the Fee Claim becomes a Final Order.  Objections to Fee Applications must be filed and served pursuant to the Bankruptcy Rules on the Debtor and the Person to whose application the objections are directed or made within thirty (30) days after the filing of the Fee Application subject to objection.  No hearing may be held on a specific Fee Application until the foregoing objection period with respect to that Fee Application has expired.

13

(c)      **Allowance of Administrative Claims.**  An Administrative Claim with respect to which a request for payment is required and has been properly filed pursuant to Section 2.01(a) of the Plan shall become an Allowed Administrative Claim if no timely objection is filed.  If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.  An Administrative Claim that is a Fee Claim, and with respect to which a Fee Application has been properly filed and served pursuant to Section 2.01(b) of the Plan, shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.

(d)      **Payment of Allowed Administrative Claims.**  Except to the extent that a Holder of an Allowed Administrative Claim has been paid prior to the Effective Date with respect to Administrative Claims against the Debtor, or agrees to a different treatment, each Holder of an Allowed Administrative Claim (other than Allowed Administrative Claims incurred in the Ordinary Course of Business, which are paid pursuant to Section 2.01(e) below) shall receive from the Debtor, in full satisfaction, release and discharge of and exchange for such Administrative Claim, and after the application of any retainer or deposit held by such Holder, Cash equal to the Allowed amount of such Administrative Claim within ten (10) Business Days after the Allowance Date with respect to such Allowed Administrative Claim.

(e)      **Administrative Claims Incurred in the Ordinary Course of Business.** Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtor during the Bankruptcy Case (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes, or alleged Administrative Claims arising in contract or tort) shall not be required to file any request for payment of such Claims.  Each Administrative Claim incurred in the Ordinary Course of Business of the Debtor will be paid  by the Debtor pursuant to the terms and conditions of the transaction giving rise to such Administrative Claim, without any further action by the Holder of such Administrative Claim. The Debtor reserves and shall have the right to object before the Objection Deadline to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such claim until such time as any objection is resolved pursuant to a settlement or a Final Order.

## 2.02.   Priority Tax Claims.

Except to the extent that an Allowed Priority Tax Claim has been paid or otherwise satisfied prior to the Initial Distribution Date (which shall occur only if reasonably determined by the Debtor to be not material in amount with respect to the Debtor's obligations under the Plan), each Holder of an Allowed Priority Tax Claim, in full satisfaction, release, settlement, and discharge of and exchange for such Claim, shall receive from the Debtor (a) deferred Cash payments over a period not exceeding five (5) years after the Petition Date in an aggregate principal amount equal to the Allowed amount of such Priority Tax Claim, plus interest, from the Petition Date through the date such Claim is paid in full, on the unpaid portion thereof at the rate of interest determined under applicable nonbankruptcy law as of the calendar month in which the Confirmation Date occurs, in equal annual installments with the first payment to be due on the later of (i) the Initial Distribution Date or (ii) five (5) Business Days after the date when a  Priority Tax Claim becomes an Allowed Priority Tax Claim, and subsequent payments to be due on each anniversary of the Initial Distribution Date, or (b) such other less favorable treatment to which such Holder and the Debtor

agree in writing. Notwithstanding the foregoing, (a) any Claim or demand for payment of a penalty (other than a penalty of the type specified in Bankruptcy Code section 507(a)(8)(G)) shall be Disallowed pursuant to the Plan and the Holder thereof shall not assess or attempt to collect such penalty from the Debtor or from any of the assets, and (b) provided that the Debtor has otherwise complied with the terms and provisions of the Plan, the Debtor shall have the right to pay any Allowed Priority Tax Claim, or any unpaid balance of such Claim, in full, at any time after the Effective Date, without premium or penalty.

### 2.03.   Domestic Support Obligations.

On the Effective Date, the Debtor shall make any payments that may be required to comply with any post-petition unfunded obligations on account of any Domestic Support Obligations, as may be required for the Debtor to be current with respect to such Domestic Support Obligations as of the Effective Date as required pursuant to section 1129(a)(14) of the Bankruptcy Code. After the Effective Date the Debtor shall timely make all payments on account of Domestic Support Obligations to the parties entitled to receive such payments, in each case at the times and in the amounts required by the agreements and orders evidencing such Domestic Support Obligations, as such agreements may from time to time be modified in accordance with applicable state law.

### 2.04.   U.S. Trustee Fees.

The Debtor shall continue to remit to the office of the United States Trustee all appropriate post confirmation monthly reports for all relevant time periods until the Bankruptcy Case is closed by order of the Bankruptcy Court or converted to a case under chapter 7 of the Bankruptcy Code. The Debtor shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for all quarters as applicable and shall continue to remit quarterly fee payments based on all disbursements, until the Bankruptcy Case is closed by order of the Bankruptcy Court, or converted to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III:

## CLASSIFICATION OF CLAIMS

### 3.01.   Introduction.

All Claims, except Administrative Claims, are placed in the Classes set forth below. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims have not been classified.

The Plan contemplates separate Classes for the Debtor for voting and Distribution purposes. To the extent a Class contains one or more subclasses, each such subclass is deemed to be a separate Class for all purposes under the Bankruptcy Code and the Plan.

Except for the unclassified Claims discussed in Article II above, Section 3.02 of the Plan sets forth a designation of Classes of all Claims in accordance with Bankruptcy Code section 1122(a). A Claim is classified in a particular Class only to the extent any portion of the Claim qualifies within the description of the Class and is classified in a different Class to the extent any

portion of the Claim qualifies within the description of that different Class.  If a Claim is acquired or transferred, the Claim shall be placed in the Class in which it would have been  placed if it were owned by the original Holder of such Claim.  A Claim is also placed in a particular Class for the purpose of receiving Distributions only to the extent that such Claim is an Allowed Claim in that Class, and such Claim has not been paid, satisfied or released before the Effective Date.

**3.02.   Claims Against the Debtor.**

(a)     Class 1:  Non-Tax Priority Claims

(b)     Class 2:  Priority Tax Claims

(c)     Class 3:  Secured Claim of Bank of America

(d)     Class 4:  Secured Claim of Security Bank of Crawford

(e)     Class 5:  Unsecured "Opt-In Settlement" Claims

(f)     Class 6:  General Unsecured Claims

(g)     Class 7:  Administrative Convenience Claims

## ARTICLE IV

### IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS

**4.01.   Unimpaired Claims**

Claims against the Debtors in Classes 1, 2, 3, and 4 are not impaired under the Plan, and the Holders of those Claims are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are thus not entitled to vote on the Plan.

**4.02.   Impaired Claims**

Claims against the Debtor in Classes 5, 6, and 7 are impaired under the Plan, and the Holders of those Claims are entitled to vote to accept or reject the Plan.

**4.03.   Controversy Concerning Impairment**

In the event of a controversy as to whether any Claim or any Class of Claims is impaired under the Plan, the Bankruptcy Court will determine the controversy, after notice and a hearing.

16

## ARTICLE V

## TREATMENT OF CLAIMS

### 5.01.  Non-Tax Priority Claims – Class 1

On or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Non-Tax Priority Claim, each Holder of such Allowed Non- Tax Priority Claim shall receive from the Disbursement Agent, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Non-Tax Priority Claim, (y) Cash in an amount equal to the Allowed amount of its Non-Tax Priority Claim, or (z) such other, less favorable treatment to which such Holder and the Debtor agrees in writing.  To the extent an Allowed Non-Tax Priority Claim entitled to priority treatment under 11 U.S.C. §§ 507(a)(4) or (5) exceeds the statutory cap applicable to such Claim, such excess amount shall be treated as a Class 6 General Unsecured Claim against the Debtor.

### 5.02. Priority and Secured Tax Claims – Class 2

With respect to any Allowed Priority Tax Claim, to the extent not already paid or otherwise satisfied, on or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive from the Debtor in full satisfaction, settlement, release, and discharge  of  and in exchange for such Allowed Priority Tax Claim, (x) Cash equal to the Allowed Amount of its Allowed Priority Tax Claim, plus interest thereon at the rate provided under applicable non-bankruptcy law pursuant to Section 511 of the Bankruptcy Code from the Petition Date through the date such Claim is paid in full, or (z) such other, less favorable treatment as may be agreed upon in writing by such Holder and the Debtor.

The Holder of a Secured Tax Claim for ad valorem taxes for any tax year from 2023 and thereafter shall retain all rights and remedies for payment thereof in accordance with applicable non-bankruptcy law.

Notwithstanding any other provision of the Plan, each Holder of an Allowed Secured Tax Claim shall retain its Lien on any Collateral that secures its Claim or the proceeds of such Collateral (to the extent such Collateral is sold by the Debtor, free and clear of such Lien) to the same extent and with the same validity and priority as such Lien held as of the Petition Date until (a) the Holder of such Allowed Secured Tax Claim (i) has been paid Cash equal to the value of  its Allowed Secured Tax Claim and/or (ii) has received a return of the Collateral securing its Allowed Secured Tax Claim, or (iii) has been afforded such other treatment as to which such Holder and the Debtor have agreed upon in writing, or (b) such purported Lien has been determined by a Final Order to be invalid or avoidable.  To the extent that a Secured Tax Claim exceeds the value of the interest of the Estate in the property that secured such Claim, such  Claim shall be deemed Disallowed pursuant to Bankruptcy Code section 502(b)(3).

If the Debtor fails to timely make any payment to a Holder of an Allowed Secured Tax Claim as required under Section 5.02 of the Plan, the affected Holder of an Allowed Secured Tax Claim may send written notice of default to the Debtor.  If the default is not cured within twenty-

17

one (21) days after notice of default is mailed, such Holder may proceed with any remedies for collection of amounts due under applicable non-bankruptcy law without further order of the Bankruptcy Court.

### 5.03.   Secured Claim of Bank of America – Class 3

(a)      Allowance.  The Allowed amount of the Class 3 Secured Claim shall be equal to the aggregate of (1) $26,354.73, plus (2) accrued and unpaid interest at the Contract Rate from the Petition Date until the Rental Property is sold and such claim is paid in full, less any payments made on account of such Claim from and after the Petition Date that are required to be applied as payments of principal pursuant to an Order of the Bankruptcy Court.

(b)      Treatment.  Except to the extent that the Holder of the Allowed Class 3 Secured Claim agrees to less favorable treatment of such Allowed Class 3 Secured Claim, the Holder of the Allowed Class 3 Secured Claim shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 3 Secured Claim, Cash in an amount equal to such Allowed Class 3 Secured Claim on the later of (i) the Effective Date, or (ii) the date the Rental Property is sold and the Debtor has received the Net Proceeds of such sale in immediately available funds. As of the Effective Date, the Debtor's obligations under the loan documents giving rise to the Allowed Class 3 Secured Claim, shall be reinstated and Bank of America shall retain its lien rights pending sale of the Rental Property and payment of the Class 3 Claim in full.

### 5.04. Secured Claim of Security Bank of Crawford – Class 4

(a)      Allowance.  The Allowed amount of the Secured Claim of Security Bank of Crawford shall be equal to the aggregate of (1) $80,161.04, plus (2) accrued and unpaid interest at the Contract Rate from the Petition Date until the Effective Date, less any payments made on account of such Claim from and after the Petition Date and applied to the principal amount of such Claims as required by the Bankruptcy Code. Payments are currently being made in accordance with the relevant loan documents by FSS and are scheduled to continue under the FSS Plan.

(b)      Treatment.  From and after the Effective Date, the Debtor shall reinstate his existing guarantor obligations under the applicable loan documents with respect to the Class 4 Claim of Security Bank of Crawford, secured by the existing collateral, until such time as the loan obligations are paid in full.

### 5.05.  "Opt-In Settlement" Unsecured Claims – Class 5

(a)      Allowance.  On the Effective Date, the Opt-In Settlement Unsecured Claims shall consist of the Claims of the Electing Plaintiffs.

    1)      Each Electing Plaintiff shall receive Cash in the amount of:

        i)      such Electing Plaintiff's Electing Plaintiff Pro Rata Share of 70% of the Net Proceeds from the sale or other monetization of Non-Exempt Assets, as soon as reasonably practicable following the receipt of such Net Proceeds; and

      ii)      from the Effective Date until the year in which the Payment Trigger occurs, the greater of such Electing Plaintiff's (x) Minimum Annual Distribution or (y) Plaintiff Pro Rata Share of the Income Stream Payment on an annual basis. The Electing Plaintiffs shall cease receiving Distributions under this Plan beginning the year following the occurrence of the Payment Trigger; provided; that Electing Plaintiffs may continue to receive payments under the FSS Plan and FSS Trust to the extent applicable. Payments under this paragraph shall be made on or before the first Business Day in May of each year following the Effective Date.

The Net Proceeds from the liquidation of the Non-Exempt Assets including Cash paid by the Debtor to the Disbursement Agent on the Initial Distribution shall reduce the Minimum Annual Distribution for the first Plan Year.

      2)      Each Electing Plaintiff shall have an Allowed Claim in the amount set forth next to such person's name on <u>Exhibit A</u> hereto. No further litigation with respect to conduct occurring on or prior to the Confirmation Date shall be pursued on behalf of Electing Plaintiffs against the Debtor or any Related Party.

(b)    <u>Treatment</u>. The Opt-In Settlement Unsecured Claims treatment shall be in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim. Such Claims shall be discharged after payments are made as set forth herein. Also, for each year in which no uncured Plan Default occurs, 10% of each Opt-In Settlement Unsecured Claim shall be waived and forever discharged. However, whatever Opt-In Settlement Unsecured Claims that are not paid under the Plan or waived and discharged pursuant to the preceding sentence, shall be deemed to be non-dischargeable without further court process in the event of a final, uncured Plan Default. The Debtor, the Disbursement Agent and the Electing Plaintiffs will work cooperatively to determine the most tax efficient method of distribution, which may include the Debtor directing FSS to make Income Stream Payments from FSS or from the FSS Trust to the extent practicable.

(c)    <u>Settlement Injunction</u>.

      1)      As consideration for the concessions made by the Electing Plaintiffs herein, the Debtor agrees that, without first obtaining the permission of all Electing Plaintiffs, the Debtor may not in any way publicly discuss the 2012 mass shooting at Sandy Hook Elementary School, the Electing Plaintiffs, the Electing Plaintiffs' family members (including victims of the Sandy Hook shooting) or any Claims or litigation arising from or relating to Debtor's past statements about the Sandy Hook mass shooting—other than to state that he has no comment about such events or individuals. The Debtor will take all reasonable steps to ensure that FSS does not make a public statement that the Debtor would be prohibited from making under this paragraph. Failure

by Debtor to comply with this provision constitutes a Plan Default enforceable by the Electing Plaintiffs.

2)      So long as no Plan Default has occurred and is continuing, the Electing Plaintiffs agree that they will not seek to have Debtor or FSS removed from any forums or platforms (electronic or physical), unless such forums or platforms are owned or controlled by Electing Plaintiffs. So long as no Plan Default has occurred and is continuing, the Electing Plaintiffs agree that they will not seek to have any statements by Debtor or FSS removed from any forums or platforms (electronic or physical), unless such forums or platforms are owned or controlled by Electing Plaintiffs. Notwithstanding anything else to the foregoing, Electing Plaintiffs shall not disparage the Debtor or FSS and will make no public comment on the legal claims giving rise to the Electing Plaintiffs' Allowed Claims, or the treatment thereof under the Plan. If Electing Plaintiffs do not comply with the terms set out in this paragraph, Debtor may seek relief from the Bankruptcy Court, including injunctive relief.

3)      The Bankruptcy Court retains post-confirmation jurisdiction to determine any such disputes.

### 5.06.  General Unsecured Claims – Class 6

Following the Allowance Date of each General Unsecured Claim, after the resolution of any existing appeals or litigation of such Claims, and except to the extent that a Holder of an Allowed General Unsecured Claim agrees, under the terms of a writing executed by such Holder, to less favorable treatment of such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive from the Debtor, in exchange for such Allowed General Unsecured Claim, such Holder's GUC Pro Rata Share of (x) prior to the occurrence of the Plan Trigger, the amount of the Income Stream Payment remaining after Electing Plaintiffs are paid pursuant to the terms of Section 5.05 of the Plan, and (y) beginning the year following the occurrence of the Payment Trigger, all of the Income Stream Payment. Non-Electing Plaintiffs will be enjoined against collecting against the Debtor during the Plan Term; however, such Non-Electing Plaintiffs may, to the extent such Holder has a non-dischargeable claim, collect against the Debtor's non-exempt assets, unless such Claim is otherwise stayed, following the end of the Plan Term. Any Claims of Non-Electing Plaintiffs shall be reduced by any payments received by such claimants under the Plan.

After the Initial Distribution, annual payments shall be made on or before the first Business Day in the fifth month of the Plan Year.

### 5.07.  Administrative Convenience Claims – Class 7

Each Holder of an Allowed Unsecured Claim in the amount of $5,000 or less, or such Holders as agree to reduce their Claim to $5,000, shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim, a Cash payment as soon as reasonably practicable following the Effective Date in the full amount of such Allowed

Claim. Insiders with Allowed Claims may opt to settle their Claims to be paid as an Administrative Convenience Claims Holder, but such Claim will be limited to $5,000, and be deemed fully satisfied upon payment of that amount.

## ARTICLE VI

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN

### 6.01.    The Settlements

(a)      **Opt-In Settlement Unsecured Claims:** Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, in consideration for the classification, Distribution, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of the Opt-In Settlement Unsecured Claims, which shall be binding upon Persons receiving Distributions under the Plan, the Debtor, and any other party treated under the Plan.

As of the Effective Date, all litigation in any jurisdiction, including dischargeability litigation and any appeals thereof, amongst Holders of Opt-In Settlement Unsecured Claims including, without limitation, all litigation listed on Exhibit B, shall each be terminated with prejudice and without further costs to any party, and all necessary parties shall execute and deliver any related satisfactions of judgment or other documentation necessary to terminate such litigation and release any related judgment liens arising in or on account of such matters. The Debtor and the Holders of Opt-In Settlement Unsecured Claims agree that the resolution of such litigation takes into account a good faith evaluation by all parties of the costs and merits of such litigation, and that the dismissal of such ongoing litigation (including without limitation any pending appeals) as set forth herein is a good faith reasonable resolution of such litigation, in exchange for the consideration provided.

(b)      **Claims Against Related Parties:** Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, in consideration for the benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of the estate's Claims against Related Parties, which shall be binding upon Persons receiving Distributions under the Plan, the Debtor, and any other party treated under the Plan. Evidence in support of such settlements will be presented at the Confirmation Hearing. The proposed settlement and resolution of such Claims against Related Parties considers a good faith evaluation by all parties of the costs and merits of such litigation, as well as the collectability of any potential judgments in favor of the estate.

Entry of the Confirmation Order shall constitute a determination by the Bankruptcy Court pursuant to Bankruptcy Rule 9019 that the terms and conditions of the foregoing settlements and the termination of all litigation (including, without limitation, any appeals) required thereunder is reasonable, and in the best interests of the Debtor, his Estate, and all Creditors of the Debtor and other parties in interest.

**6.02. Sources of Cash and Terms of Payment for Plan Distributions**

The sources of Cash necessary for the Debtor to pay Allowed Claims that are to be paid in Cash by the Debtor under the Plan will be: (a) the Cash of the Debtor on hand as of the Effective Date, minus a reserve totaling $250,000 (to account for three (3) months of reasonable living expenses as well as certain post-confirmation legal expenses); and (b) Net Proceeds from the sale of the Debtor's Non-Exempt Assets; and (c) Cash generated or received by the Debtor after the Effective Date from any other source, including but not limited to Cash flow to the Debtor from AEJ Trust and refunded trust expenses.

Funds from payments under the FSS Plan made by the FSS Trust shall be used solely with respect to the calculation of the Minimum Plan Distribution and are not being relied upon for purposes of confirming this Plan.

On the Effective Date, all Avoidance Actions not resolved will vest in the Disbursement Agent or, at the option of the Debtor, the FSS Trust, and they will have the exclusive right to prosecute, settle, or compromise all Avoidance Actions. Any such net payments resolving any Avoidance Actions shall constitute Net Proceeds of Non-Exempt Assets for purposes of the Plan.

**6.03. Payments.**

(a)    The Disbursement Agent shall remit payment of the following Allowed Claims in accordance with the limitations on the amount of such payments as set forth in the Plan, and the other terms and conditions of the Plan:

(i)    Administrative Claims, other than Administrative Claims Incurred in the Ordinary Course of Business as set forth in Section 2.01(d).

(ii)    Non-Tax Priority Claims as set forth in Section 5.01.

(iii)    Administrative Convenience Claims as set forth in Section 5.07.

(iv)    General Unsecured Claims as set forth in Section 5.06.

(v)    Administrative Claims Incurred in the Ordinary Course of Business as set forth in Section 2.01(e).

(vi)    Priority Tax Claims as set forth in Section 2.02.

(vii)    Domestic Support Obligations as set forth in Section 2.03.

(viii)    U.S. Trustee fees as set forth in Section 2.04.

(ix)    Secured Tax Claims as set forth in Section 5.02

(x)    Secured Claim of Bank of America as set forth in Section 5.03.

      (xi)     Secured Claim of Security Bank of Crawford as set forth in Section 5.04.

      (xii)    Unsecured Claims of Opt-In Settlement Claimants as set forth in Section 5.05.

### 6.04.  Post Effective Date Management.

The Debtor shall continue to manage and control his assets after the Effective Date. To the extent this Plan provides for the sale of the Debtor's assets, the Disbursement Agent shall manage and control the sale of such assets and shall liquidate such assets as expeditiously as reasonably possible, consistent with the terms of this Plan and the goal of maximizing the value thereof for the benefit of the Holders of Claims secured by a Lien on those assets and other stakeholders.

## <u>ARTICLE VII</u>

## TREATMENT OF EXECUTORY CONTRACTS

### 7.01.   General Treatment of Executory Contracts: Rejected

The Plan constitutes and incorporates a motion under Bankruptcy Code sections 365 and 1123(b)(2) to (a) reject, as of the Effective Date, all Executory Contracts to which the Debtor is a party, except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and (b) assume all Executory Contracts identified in any schedule of assumed contracts that may be included in the Plan Supplement.

The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date.  Notice of the Confirmation Hearing shall include the proposed Cure Amount with respect to any Executory Contract that may be assumed under the Plan, and the Notice of the Confirmation Hearing shall also notify all non-debtor parties to Executory Contracts that all Executory Contracts will be rejected under the Plan except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and any Executory Contracts identified in the Plan Supplement to be assumed. For the avoidance of doubt, to the extent the Debtor's premarital agreement could be characterized as an executory contract, such agreement shall be assumed under this Plan.  The Debtor does not anticipate any cure costs associated with such agreement.

### 7.02.   Cure Payments and Release of Liability

Except as otherwise provided in a Final Order, pursuant to Bankruptcy Code sections 365(a), (b), (c) and (f), all Cure Claims that may require payment under Bankruptcy Code section 365(b)(1) under any Executory Contract that is assumed pursuant to a Final Order shall be paid by the Debtor as an Allowed Administrative Claim within fifteen (15) Business Days after such order becomes a Final Order with respect to Cure Claims that are not Disputed or within fifteen (15) Business Days after a Disputed Cure Claim is Allowed by agreement of the parties or a Final

Order.  If a party to an assumed Executory Contract has not filed an appropriate pleading on or before the date of the Confirmation Hearing disputing any proposed Cure Claim, the cure of any other defaults, the promptness of the Cure Claim payments, or the provision of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters.  Any party to an assumed Executory Contract that receives full payment of a Cure Claim shall waive the right to receive any payment on a Class 6 General Unsecured Claim that relates to or arises out of such assumed Executory Contract.

### 7.03.  Bar to Rejection Claims

If the rejection of an Executory Contract pursuant to Section 7.01 of the Plan gives rise to a Claim by any non-Debtor party or parties to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Estate, or the agents, successors, or assigns of the foregoing, unless a proof of such Claim is filed with the Bankruptcy Court and served upon the Debtor on or before the Rejection Bar Date.  Any Holder of a Claim arising out of the rejection of an Executory Contract that fails to file a proof of such Claim on or before the Rejection Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtor, the Estate or any of their assets and properties.  Nothing contained herein shall extend the time for filing a proof of Claim for rejection of any Executory Contract rejected before the Confirmation Date.

### 7.04.  Rejection Claims

Any Rejection Damage Claim arising from the rejection of an Executory Contract shall  be treated as a General Unsecured Claim pursuant to the Plan, except as limited by the provisions of Bankruptcy Code sections 502(b)(6) and 502(b)(7) and mitigation requirements under applicable law.  Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Rejection Damage Claim or shall be deemed a waiver by the Debtor or any other party in interest of any objections to such Rejection Claim if asserted.

## ARTICLE VIII

## CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION

### 8.01.  Conditions Precedent to Confirmation Date

The occurrence of the Confirmation Date of the Plan is subject to satisfaction or waiver by the Debtor of each of the following conditions:

(a)     The Bankruptcy Court shall have entered a Final Order, in form and substance acceptable to the Debtor, approving the Disclosure Statement;

(b)     The proposed Confirmation Order shall be in form and substance acceptable to the Debtor; and

(c)     All of the schedules, documents, supplements and exhibits to the Plan shall have

been filed in form and substance acceptable to the Debtor.

**8.02.   Conditions Precedent to the Effective Date**

The occurrence of the Effective Date is subject to the occurrence or waiver by the Debtor of each of the following conditions precedent:

(a)      The Confirmation Date shall have occurred;

(b)      The Confirmation Order shall have become a Final Order in form and substance acceptable to the Debtor; and

(c)      FSS Plan confirmation shall have occurred and the FSS Plan shall become effective.

Without limiting the foregoing, the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order so long as there is no stay in effect and the Debtor so elects in writing.  The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation so long as there is no stay in effect if the Debtor so elects in writing.  In the event of any such appeal, the Debtor or any other party in interest may seek the dismissal of such appeal on any grounds.  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.  The Debtor will file with the Bankruptcy Court, and serve a copy on all parties in interest, a notice of the Effective Date within five (5) Business Days after its occurrence.

**8.03.   Consequences of Non-Occurrence of Effective Date**

If the Effective Date does not timely occur, the Debtor reserves all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and/or that the Plan be null and void in all respects.  If the Bankruptcy Court enters an order vacating the Confirmation Order, the time within which the Debtor may assume and assign, or reject, all Executory Contracts not previously assumed, assumed and assigned, or rejected shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated or as further extended by the Bankruptcy Court.

## <u>ARTICLE IX</u>

## EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE

**9.01.   Binding Effect**

From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, all former, present, and future Holders of Claims, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Case.  Confirmation of the Plan binds each Holder of a Claim to the terms and conditions of the Plan, whether or not such Holder has accepted the Plan.

## 9.02.   Vesting of Assets

Except as otherwise provided in this Plan and the Confirmation Order, all property and assets of the Debtor and the Estate shall vest in the Debtor in accordance with the terms of the Plan, in each case free and clear of all Claims, Liens, encumbrances, charges and other interests. Commencing on the Effective Date, the Debtor may deal with such property and assets and conduct his business without any supervision by, or permission from, the Bankruptcy Court or the Office of the United States Trustee, and free of any restriction imposed on the Debtor by the Bankruptcy Code or by the Bankruptcy Court during the Bankruptcy Case, other than any restrictions contained in the Plan and the Confirmation Order.

**Trusts:** For the avoidance of doubt, the Debtor would clarify through this Plan that certain Trusts are not property of the estate and therefore are not available for distribution to Creditors. Specifically, the Alexander E. Jones Descendent and Beneficiary Trust (the "Descendent Trust"), of which the Debtor is a grantor, is not available to satisfy Creditor Claims. The Debtor is not a beneficiary nor a trustee for the Descendent Trust. Though the Descendent Trust holds certain condominium assets, the Debtor asserts these trust assets are not available to satisfy estate Claims. Second, the Green Leaf Trust: this trust is also not within the control of the Debtor, nor is he a beneficiary, or entitled to direct the Green Leaf Trust. Therefore, the assets of the Green Leaf Trust are not available to satisfy estate Claims. With respect to any remaining trusts, where the Debtor either is a beneficiary and/or maintains some level of control, (x) any assets available for distribution from such trusts as of the Effective Date shall be deemed Non-Exempt Assets subject to liquidation by the Disbursement Agent under the Plan, and (y) any distribution to the Debtor of income generated by such trusts following the Effective Date shall be included as Plan Income under the Plan. See **Schedule A**.

## 9.03.   Assertion of Causes of Action, Defenses and Counterclaims

Except as set forth in the Plan or the Confirmation Order, effective as of the Effective Date, with respect to the Debtor, without further action by any party, all Causes of Action, and all defenses, counterclaims, setoffs, and rights related thereto, shall be and shall be deemed to be vested in the Debtor. From and after the Effective Date, the Debtor shall have the exclusive right to prosecute, settle, or compromise any Cause of Action vested in or transferred to the Debtor under the Plan. Except to the extent otherwise set forth in the Plan, the Debtor shall retain and may prosecute and enforce all other defenses, counterclaims, and rights that it has asserted or could assert against or with respect to all Claims asserted against the Debtor or property of his Estate. No claim, right, Cause of Action, or other asset shall be deemed waived or otherwise forfeited by virtue of the Debtor's failure to identify such property in the Schedules or the Disclosure Statement unless otherwise ordered by the Bankruptcy Court.

Except as provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtor may have or which the Debtor may choose to assert on behalf of the Debtor's Estate under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against

26

the Debtor, and (ii) the turnover of any property of the Debtor's Estate.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan. The Debtor shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which the Debtor had immediately prior to the Petition Date fully as if the Bankruptcy Case had not been commenced, and all of the Debtor's legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date by the Debtor to the same extent as if the Bankruptcy Case had not been commenced.

### 9.04    Discharge of Debtor

*Except as expressly provided in this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtor that arose before the Effective Date. Except as expressly provided in this Plan or the Confirmation Order, on the Discharge Date (and subject to its occurrence), entry of the Confirmation Order shall be deemed to act as a discharge and release under Bankruptcy Code section 1141(d)(1)(A) of all Claims against the Debtor and his assets, arising at any time before the Effective Date, regardless of whether a proof of Claim was filed, whether the Claim is Allowed, or whether the Holder of the Claim votes to accept the Plan or is entitled to receive a Distribution under the Plan, provided, however, that in no event shall occurrence of the Discharge Date discharge  the Debtor from any obligations remaining under the Plan as of the Discharge Date.  No later than five (5) business days after the occurrence of the Discharge Date, the Debtor shall file with the Bankruptcy Court a notice of the occurrence of the Discharge Date, and serve such notice on all creditors.  In addition, following the occurrence of the Discharge Date, the Debtor shall file a motion seeking entry of an order of discharge after notice and a hearing, which motion (and the discharge) shall be granted upon a showing that the Debtor has made all payments required under the Plan. Except as expressly provided in this Plan or the Confirmation Order, any Holder of a discharged Claim will be precluded from asserting against the Debtor or any assets of the Debtor any other or further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Effective. Except as expressly provided in this Plan or the Confirmation Order, and subject to the occurrence of the Discharge Date, the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtor to the extent allowed under Bankruptcy Code section 1141, and the Debtor will not be liable for any Claims and will only have the obligations that are specifically provided for in this Plan.  Notwithstanding the foregoing, nothing contained in the Plan or the Confirmation Order shall discharge the Debtor from (i) any debt excepted from discharge under Bankruptcy Code section 523 by Final Order of the Bankruptcy Court unless the Holders of such Claims have agreed to same.*

*Notwithstanding the foregoing, Allowed Claims of Electing Plaintiffs under Class 5 that have selected Opt-In Settlement Unsecured Claims shall be discharged after receipt of payments that give rise to the occurrence of the Payment Trigger.  Such payment shall be in full*

*satisfaction, settlement, release and discharge of and in exchange for such Allowed Claim.*

*Notwithstanding anything to the contrary set forth in this Section 9.04, Non-Electing Plaintiffs under Class 6 will be enjoined against collecting against the Debtor during the Plan Term; however, such Non-Electing Plaintiffs may collect against the Debtor at the conclusion of the Plan Term if they have a Final Order allowing their Claim and finding such Claim non-dischargeable.*

### 9.05    Injunction

Except as otherwise provided in the Plan, the Confirmation Order shall provide that from and after the Effective Date with respect to the Debtor, all Holders of Claims against the Debtor are permanently enjoined from taking any of the following actions against the Debtor, or any of his property on account of any such Claim:  (a) commencing or continuing in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or Lien; (d) asserting a setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; or (e) commencing or continuing, in any manner or in any place, any action that does not conform to or comply with, or is inconsistent with, the provisions of this Plan.  If allowed by the Bankruptcy Court, any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator. Should a Plan Default have occurred and is continuing, this Plan Injunction shall lift in accordance with a Bankruptcy Court order determining the existence of such Plan Default.

Notwithstanding the foregoing, the Non-Electing Plaintiffs whose claims have been determined to be non-dischargeable by an order of a court of competent jurisdiction that has not been stayed, shall be enjoined from taking action against the Debtor as set forth above solely during the Plan Term, unless otherwise set forth herein.

### 9.06    Term of Bankruptcy Injunction or Stays

Unless otherwise provided herein or in an order of the Bankruptcy Court (including without limitation the Confirmation Order), all injunctions or stays provided in the Bankruptcy Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, with respect to the Debtor.  Upon the Effective Date, the injunction provided in Section 9.05 of the Plan shall be effective.

### 9.07    Effectuating Documents; Further Transactions; Timing

The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously, unless otherwise provided in the Plan.

28

## ARTICLE X

## OBJECTIONS TO CLAIMS; DISTRIBUTIONS

### 10.01.   Objections to Claims

Any party in interest, including the Debtor, may file objections to Claims (other than Claims that have been previously Allowed or that are Allowed under the Plan). The Debtor (or his designees, successors and assigns) are not obligated to object to any Claim but will nevertheless have standing to object to any such Claim from and after the Effective Date, if they so elect. Nothing in this Section is intended to limit the right of any party to object to Claims.

### 10.02.   Objection Deadline

Except as set forth in Sections 2.01(a) and 2.01(b) of the Plan with respect to Administrative Claims and Fee Claims, any objections to Claims must be filed no later than the Objection Deadline. An objection to a Claim will be deemed properly served on the Holder thereof if service is effected by any of the following methods: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto; (c) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of the Holder in the Bankruptcy Case; or (d) if no proof of Claim has been filed, by first class mail, postage prepaid, on the Holder of such Claim at the address set forth in the Schedules.

### 10.03.   Settlement of Objections to Claims

From and after the Effective Date, the Debtor is authorized to approve compromises of all Claims, Disputed Claims, and Liens pursuant to Bankruptcy Rule 9019(b) and to execute necessary documents, including Lien releases (subject to the written consent of the party having such Lien) and stipulations of settlement, compromise, or release, without further order of the Bankruptcy Court; provided that the Debtor cannot settle or compromise the Claim of a Holder of a General Unsecured Claim in an amount in excess of the amount set forth on Exhibit A to this Plan without notice and a hearing.

### 10.04.   No Interest on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim for the period from the Petition Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim. To the extent any Holder of an Allowed Claim is entitled to interest accruing on or after the Petition Date, such interest shall accrue and be payable at the applicable Contract Rate.

### 10.05.   Setoffs by the Debtor; No Waiver

Except as otherwise set forth in the Plan, the Debtor may but shall not be required to, set off against or recoup from any Claim or any payment or Distribution to be made by the Debtor pursuant to the Plan in respect of such Claim, any Claim or Cause of Action of any nature whatsoever that the Debtor may have to the fullest extent permitted under applicable law. Any dispute related to the setoff or recoupment rights of the Debtor shall be determined by the Bankruptcy Court. Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claims or Causes of Action that the Debtor may have against such Holder or any affiliate of such Holder.

### 10.06.  Procedures for Treating and Resolving Disputed and Contingent Claims

(a)      **No Distributions Pending Allowance.**  Notwithstanding any other provision of the Plan, Distributions shall be made only to Holders of Allowed Claims. No Holder of a Claim will receive any Distribution on account thereof until and to the extent that its Claim becomes an Allowed Claim. To the extent a Claim that is paid by the Debtor under the Plan is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtor (in the first instance) on account of a Cause of Action, or which has not otherwise become an Allowed Claim, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Cause of Action has been settled, withdrawn, or determined by a Final Order or such other court having jurisdiction over the matter, or such Claim has otherwise been Allowed as set forth in the Plan.

In determining the amount of a pro rata Distribution due to the Holders of Allowed Claims payable by the Debtor, the Disbursement Agent will make the pro rata calculation as if all Claims of the applicable Class were Allowed in the full amount claimed or in the amount estimated under Section 10.06(b) hereof. For the purposes of claims held by Plaintiffs that are not Allowed by this Plan, Disbursement Agent shall reserve for Claims in the amounts set forth on Exhibit A hereto until such Claim is Allowed or Disallowed in whole or in part by Final Order. The Disbursement Agent shall withhold Distributions otherwise due hereunder to the Holder of a Disputed Claim until the Objection Deadline, to enable the Debtor or any other party in interest to file a timely objection thereto.

(b)      **Claim Estimation.**  The Debtor or Disbursement Agent may request estimation or limitation of any Claim that is not Allowed under this Plan pursuant to Bankruptcy Code section 502(c) regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection; provided, however, that the Bankruptcy Court will determine (i) whether such Claims are subject to estimation pursuant to Bankruptcy Code section 502(c) and (ii) the timing and procedures for such estimation proceedings, if any. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim,  as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or

resolved by any mechanism approved by the Plan or the Bankruptcy Court.

    (c)    **Distribution Reserve Accounts.**

        (i)    On or after the Effective Date, the Disbursement Agent may create one or more separate Distribution Reserve Accounts as is appropriate from the Cash to be distributed to or for the benefit of the Holders of Disputed Claims, Administrative Claims, Non-Tax Priority Claims, Administrative Convenience Claims, or other Claims which have not been Allowed, in each case pending the allowance thereof. Each Distribution Reserve Account may be segregated by Class or, as applicable, by Administrative Claims, Non-Tax Priority Claims, Administrative Convenience Claims, or other Claims. A Holder of a Claim will not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve Account to pay such Claim unless permitted by a Final Order. As stated above, nothing in the Plan will be deemed to entitle the Holder of a Disputed Claim to post-petition interest on such Claim, if Allowed, unless otherwise required under the Plan.

        (ii)    The amount of any Cash allocable to, or retained on account of Claims in the Distribution Reserve Accounts for those Claims that are to be paid in full under the Plan shall be equal to the lesser of (a) the amount of such Claim as estimated pursuant to the procedure in section 10.06(b) of the Plan; (b) the amount of such Claim as asserted by the Holder; or (c) an amount to be agreed upon between the Debtor and the Holder of such Claim. The amount of any Cash allocable to, or retained on account of, any other Claims in the Distribution Reserve Accounts shall be as reasonably determined by the Disbursement Agent from time to time in accordance with the reasonable discretion of the Disbursement Agent, subject to all other terms and conditions of the Plan.

        (iii)    For the avoidance of doubt, the Disbursement Agent shall reserve distributions in a separate Distribution Reserve Account for Class 6 General Unsecured Claims of Non-Electing Plaintiffs which have not yet been Allowed, in the amounts allocated to them pursuant to the treatment set forth herein.

    (d)    **Distributions After Allowance of Claims.** Distributions to each Holder of a Claim that is the subject of a Distribution Reserve Account, to the extent it becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that govern Distributions to such Holders of Claims in the applicable Class. Unless otherwise provided in the Plan, as promptly as practicable after the date on which such Claim becomes an Allowed Claim, and in any event not later than ten (10) Business Days after such Claim becomes an Allowed Claim, the Disbursement Agent shall distribute to the Holder thereof from the applicable Distribution Reserve Account, if any, any Distribution that would have been made to such Holder had its Claim been an Allowed Claim on the date that Distributions were previously made to Holders of Allowed Claims in the applicable Class, without interest (except as otherwise provided by the Plan) and net of any setoff and/or any required withholding of applicable taxes. After all such Claims have been resolved as may be required by a Final Order or other final resolution, any remaining Cash in a relevant Distribution Reserve Account shall be distributed in accordance with the other provisions of the Plan.

(e)     **Allowance of Claims Subject to Bankruptcy Code Section 502(d).**  Allowance of Claims will in all respects be subject to the provisions of Bankruptcy Code section 502(d), except as provided by a Final Order or a settlement among the relevant parties.

**10.07.     Distributions Under the Plan**

(a)     **Means of Cash Payment.**  Except as otherwise provided in the Plan, Cash payments made pursuant to the Plan shall be in U.S. dollars and may be made, at the option of and in the sole discretion of the Disbursement Agent, by checks drawn on or wire transfers from a domestic bank; provided, that in the case of foreign Holders of Allowed Claims, Cash payments may be made, at the option of and in the sole discretion of the Debtor, in such currency and by such means as are necessary or customary in a particular jurisdiction.

(b)     **Delivery of Distributions.**  All Distributions to any Holder of an Allowed Claim shall be made by the Disbursement Agent at the address of each such Holder as set forth on the proof of Claim filed by such Holder (or at the last address of such a Holder known to the Debtor if no proof of Claim is filed or if the Disbursement Agent has been notified in writing of a change of address).  If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Disbursement Agent is notified in writing of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest.  Any Holder of an Allowed Claim whose Distribution is undeliverable must make demand for such Distribution to the Disbursement Agent in writing on or before 120 days after the date such undeliverable Distribution was initially made, after which the Distribution shall be retained by the Disbursement Agent for Distribution to other Holders of Claims pursuant to the terms of the Plan, and any claim by such intended recipient with respect to such undeliverable Distribution shall be discharged and forever barred.  The Disbursement Agent may employ or contract with other Persons as reasonably determined by the Disbursement Agent to assist in or make the Distributions required under the Plan.  **To the extent that the Disbursement Agent is required by applicable law to file information returns regarding payments to creditors with taxing authorities including, but not limited to, the Internal Revenue Service, the Debtor shall obtain an executed Internal Revenue Service Form W-9 (W-8 for non-US entities and individuals) from any or all Holders of a Claim prior to making any Distribution.  Should any Holder of a Claim not provide the Disbursement Agent with such document within 60 days of receipt of the request for a W-9 or W-8, as applicable, then the Disbursement Agent shall provide written notice to such Holder of the failure to provide a W-9 or W-8, as applicable, and 30 additional days to provide such information. Should any Holder of a Claim not timely provide an executed W-9 or W-8, as applicable, within the ninety (90) day period referenced above, the Disbursement Agent may file an objection to the Claim of such non-responding Holder  based on the non-responding Holder's failure to provide the W-9 or W-8 (with all required information) and shall serve the objection on such non-responding Holder via first class mail.  If the non-responding Holder of the Claim fails to respond to the objection or fails to provide to the Disbursement Agent the W-9 or W-8, as applicable (with all required information) within thirty (30) days after the objection is filed, the Bankruptcy Court may disallow such Claim for all purposes and any funds to be paid such Holder of a disallowed Claim shall be distributed in accordance with the terms of the Plan. The Disbursement Agent shall serve any order disallowing the non- responding Holder's Claim within five (5) business days**

**after entry of such order. The Disbursement Agent's right to object to a Claim is limited to the failure of a Holder of a Claim to provide to the Disbursement Agent a W-9 or W-8, as applicable. The Holder of such Disallowed Claim shall be forever barred from pursuing the Debtor or Disbursement Agent for payment of such Claim.**

(c)       **Fractional Dollars; De Minimis Distributions.** Any other provision of the Plan notwithstanding, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being rounded down. No payment of less than twenty-five dollars ($25.00) shall be made with respect to any Allowed Claim, and the Disbursement Agent shall retain any such payment and shall deposit same into a pool for redistribution to other Holders of Allowed Claims in the same Class.

(d)       **Unclaimed Property.** Any Distributions that are unclaimed shall be distributed by the Disbursement Agent to other Holders of Claims pursuant to the terms of the Plan.

(e)       **Payments on Business Days**. In the event any payment, Distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

(f)       **Voting Record Date**. As of the Voting Record Date, any applicable books and records for each of the Classes of Claims as may be maintained by Debtor shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims. The Disbursement Agent will have no obligation to recognize any transfer or sale of Claims on or occurring after the Voting Record Date and will be entitled for all purposes herein, and subject to all of the provisions of the Plan relating to the timing of the allowance of Claims, to recognize and make Distributions on account of Allowed Claims only to those Holders who are identified as Holders of Claims as of the Voting Record Date. Except as otherwise provided in a Final Order, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 prior to the Voting Record Date will be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer may not have expired by the Voting Record Date.

### 10.08.  Duty to Disgorge Overpayments

To the extent the Holder of any Allowed Claim receives more than what such Holder is permitted to receive under the Plan, such Holder shall immediately return such excess payment(s) to the Disbursement Agent, failing which, the Debtor or Disbursement Agent may sue such Holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

### 10.09 Duties of the Disbursement Agent

The Disbursement Agent shall make the Distributions required under the Plan. The Disbursement Agent shall be entitled to review the financial information of FSS and the Debtor in

accordance with the terms of the agreement entered into with the Disbursement Agent. The Disbursement Agent shall also be responsible for the sale or other monetization of Non-Exempt Assets under this Plan.

### 10.10 Disbursement Agent Expenses

The Disbursement Agent shall establish a bank account, initially funded with 30% of the Net Proceeds from the sale of Non-Exempt Assets which may be used to fund the initial expenses of the Disbursement Agent, including payment of the Disbursement Agent's fees, on an ongoing basis. Additional Disbursement Agent Expenses shall be paid directly by the Debtor.

## ARTICLE XI

## ACCEPTANCE OR REJECTION OF THE PLAN

### 11.01.  Impaired Classes Entitled to Vote

Each impaired Class entitled to vote to accept or reject the Plan will vote separately. A Holder of a Claim or Interest as to which an objection has been filed and that has not been temporarily allowed for purposes of voting on the Plan may not vote. A Holder of a contingent or unliquidated Claim may vote on the Plan in an amount based on the portion, if any, of the Claim shown as non-contingent, liquidated, and undisputed in the Schedules, or equal to $1.00 if not so shown. Plaintiffs may vote in the amounts set forth on **Exhibit C.**

### 11.02.  Acceptance by an Impaired Class

A Class of Claims that is entitled to vote to accept or reject the Plan shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan. Any Ballot that is not properly completed and timely received by the Balloting Deadline will not be counted.

### 11.03   Elimination of Vacant Classes.   Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

### 11.04.  Section 1129(b) Cramdown

If any impaired Class of Claims fails to accept the Plan in accordance with Bankruptcy Code section 1129(a), the Debtor will seek confirmation of the Plan by the Bankruptcy Court pursuant to the "cramdown" provisions in Bankruptcy Code section 1129(b). The Debtor asserts that the Plan provides for fair and equitable treatment of all Classes of Claims. The Debtor reserves the right to amend the Plan as may be necessary to obtain confirmation of the Plan  under Bankruptcy Code section 1129(b).

## ARTICLE XII
## RETENTION OF JURISDICTION

### 12.01.  Jurisdiction

Until the Bankruptcy Case is closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction as is legally permissible under applicable law, including under Bankruptcy Code sections 105(a) and 1142, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against the Debtor and to enforce all Causes of Action and any related counterclaims, crossclaims, and/or third-party claims over which the Bankruptcy Court otherwise has jurisdiction.  Nothing contained in the Plan will prevent the Debtor from taking any action as may be necessary to enforce any Cause of Action that may exist on behalf of the Debtor and that may not have been enforced or prosecuted by the Debtor.

### 12.02.  Examination of Claims

Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim and the reexamination of Claims that have been allowed for the purposes of voting, and the determination of any objections as may be filed to Claims.  The failure by the Debtor to object to, or to examine, any Claim for the purposes of voting will not be deemed a waiver of the Debtor's right to object to,  or to re-examine, such Claim in whole or in part, unless such claim is Allowed under the Plan.

### 12.03.  Determination of Disputes

The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine (a) all questions and disputes regarding title to the Debtor's assets, (b) disputes concerning the allowance of Claims, (c) all Causes of Action, controversies, disputes, or conflicts, whether or  not subject to any pending action, as of the Confirmation Date, to recover property pursuant to the provisions of the Bankruptcy Code, and (d) all disputes and controversies regarding the operation, implementation, and interpretation of the Plan, the Confirmation Order, and any agreements that are identified or implement the Plan or the Confirmation Order.

### 12.04.  Additional Purposes

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, occurrence of the Effective Date, and/or substantial consummation of the Plan, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of or related to the Bankruptcy Case and the Plan to the fullest extent permitted by applicable law, including but not limited to jurisdiction to:

(a)     hear and determine any modification of the Plan or the Plan Supplement pursuant to Bankruptcy Code section 1127, to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court,  including the Confirmation Order, in such a manner as may be necessary or appropriate to  carry out the purposes and effects thereof;

35

(b)      hear and determine disputes, issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret,  implement, consummate, or enforce the terms and conditions of the Plan and the transactions contemplated thereunder, the Confirmation Order, the Disclosure Statement, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

(c)      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of or related to the Bankruptcy Case or the  Plan;

(d)      enforce   all   orders,   judgments,   injunctions,   releases,   exculpations, indemnifications, and rulings entered or approved in the Bankruptcy Case;

(e)      hear and determine all disputes involving the existence, nature, or scope of the discharge, plan defaults, injunctions, releases, exculpations, and indemnifications granted pursuant to the  Plan or the Confirmation Order;

(f)      hear  and  determine  disputes  arising  in  connection  with  the  execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions, performance or payments provided for or contemplated in the Plan or the Confirmation Order, or any agreement, instrument or other document governing or relating to any of the foregoing;

(g)      construe and apply any findings of fact and/or conclusions of law made in or in connection with the Confirmation Order;

(h)      adjudicate matters arising in the Bankruptcy Case, including matters relating to the formulation and consummation of the Plan;

(i)      enter any orders, including injunctions, as are necessary to enforce title, rights, and powers of the Debtor or to impose any limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem necessary;

(j)      hear and determine all questions and disputes regarding title to or recovery of the Debtor's assets and property of the Debtor;

(k)      enter a Final Decree closing any or all of the Bankruptcy Case;

(l)      correct any defect, cure any omission, or reconcile any inconsistency in the  Plan, the Plan Supplement, or the Confirmation Order as may be necessary to carry out the purposes and intent of the  Plan, the Plan Supplement, and the Confirmation Order including   the adjustment of the date(s) of performance under the Plan, the Plan Supplement, and any other documents related thereto if the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Supplement, and such other documents may be substantially realized thereby;

(m)      enter, implement or enforce such orders as may be appropriate if the Confirmation

36

Order is for any reason stayed, reversed, revoked, modified, or vacated;

(n)      hear and determine all applications for compensation and reimbursement of expenses of Professionals or any other Person under the Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtor shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

(o)      hear and determine issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of the Plan;

(p)      hear and determine issues concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(q)      hear and determine all matters regarding the assumption or rejection of Executory Contracts, including any disputes concerning Rejection Claims or Cure Claims;

(r)      hear and determine any objection to any Claim (including any Administrative Claim), including the allowance, classification, priority, secured status, compromise, estimation, subordination, or payment thereof;

(s)      allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim (including any Administrative Claim) and to re-examine Claims that have been allowed for purposes of voting;

(t)      hear and determine any Cause of Action and any collection or settlement matters related thereto;

(u)      hear and determine any disputes or litigation regarding the validity, priority, or extent of any Lien and any Claim associated therewith; and

(v)      hear and to determine any other matter related hereto and not inconsistent with the Plan, the Confirmation Order, the Bankruptcy Code, or Title 28 of the United States Code.

### 12.05.  Failure of the Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Case, including the matters set forth in this Article XII, the provisions of this Article XII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

### 13.01.  General Notices

Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served to the parties and addresses set forth below by certified mail, return receipt requested, hand delivery, overnight delivery, first class mail, or fax transmission, and (c) deemed to have been given or made when actually delivered or received:

**-to the Debtor:**

Alexander Jones
2407 S. Congress Ave. E-144
Austin, TX 78704

With a copy to:

Vickie L. Driver
Crowe & Dunlevy, P.C.
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

Shelby A. Jordan
JORDAN & ORTIZ, P.C.
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Email:  sjordan@jhwclaw.com

### 13.02.  Exemption From Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest; or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance, filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment. The Confirmation Order shall direct all appropriate governmental officials or agents to forgo the collection of any such tax or assessment and to accept such documents delivered under the Plan without the imposition or payment of any charge, fee, governmental assessment, or tax.

### 13.03.  Asserting and Curing Default Under the Plan

Except as otherwise provided in the Plan, if the Debtor defaults under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan), any Creditor or party in interest desiring to assert a default will provide the Debtor and his counsel with written notice of the alleged Plan Default.  The Debtor will have thirty (30) days from receipt of written notice to cure the alleged Plan Default.  If the Plan Default is not cured, any

Creditor or party in interest affected by such Plan Default may then file with the Bankruptcy Court, and serve on the Debtor and his counsel, a motion to compel compliance with the applicable provision of the Plan, or otherwise seeking such remedies as may be available to such party in interest under the Bankruptcy Code or other applicable law. The Bankruptcy Court, on finding a Plan Default, will issue orders compelling compliance with the pertinent provisions of the Plan, or providing such other relief as the Court may order. Nothing in the Plan shall be deemed a waiver on the part of any party in interest to seek to assert any such remedies as described in this Section 13.04 upon default by the Debtor under the Plan.

Assets valued at less than $25,000 at the time of receipt by the Debtor, or discovered more than five years after the Effective Date are deemed nonmaterial, and shall not give rise to a Plan Default. Material non-exempt assets discovered by the Debtor post-Effective Date shall be submitted to the Disbursement Agent for distribution in accordance with the Plan. Material and intentional misrepresentations, if properly declared under the Plan, may cause a Plan Default herein. In the event the non-exempt asset was known to the Plaintiffs, their agents or attorneys, the Official Committee of Unsecured Creditors, their agents or attorneys, such asset will be deemed ineligible to cause a Plan Default under this paragraph.

Pursuant to the Opt-In Settlement terms with the Class 5 Electing Plaintiffs, if the Debtor can make 80% of the minimum payments for a given year, but not 100%, then the remaining amount for that year may be amortized over the next two years without giving rise to a Plan Default. However, if the Debtor fails to make minimum payments for two (2) years in a row, a Plan Default will have occurred, and any Electing Plaintiff may seek remedies with respect to such Plan Default as set forth herein. Should the Debtor become incapacitated in a way that prevents him from working and he is unable to make payments under the Plan, such missed payments may be added to the end of the Plan Term, and the Plan Term shall be extended accordingly. If the Debtor, or his personal representative, asserts that he has become incapacitated under the terms of this provision, he must file a notice with the Bankruptcy Court, which may be objected to by any party in interest, and any dispute over same will be determined by the Bankruptcy Court.

### 13.04.   Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke and/or withdraw the Plan at any time before the Confirmation Date. If the Debtor revokes or withdraws this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor or any other Person.

### 13.05.   Modification of the Plan

The Debtor reserves the right to modify the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and (b) the Debtor shall have complied with Bankruptcy Code section 1125. The Debtor further reserves the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, (b) the Debtor

shall have complied with Bankruptcy Code section 1125, and (c) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Bankruptcy Code section 1129. A Holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

### 13.06. Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 13.07. Due Authorization

Each and every Holder of an Allowed Claim that receives a Distribution under the Plan warrants that it is authorized to accept, in consideration of such Claim, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

### 13.08. Implementation

The Debtor may execute such documents, take such other actions, and perform all acts necessary or appropriate to implement the terms and conditions of the Plan without the need for further Bankruptcy Court approval.

### 13.09. Execution of Documents

Upon application by the Debtor, the Bankruptcy Court may issue an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument or document, and to perform any act, necessary for the consummation or implementation of the Plan.

### 13.10. Bankruptcy Restrictions

From and after the Effective Date with respect to the Debtor other than as set forth in the Plan, the Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code (e.g., sections 363 or 364) except as the Bankruptcy Code may specifically provide otherwise. No monthly operating reports will be filed after the Effective Date; however, the Debtor shall provide the U.S. Trustee such financial reports as may be required by law.

### 13.11. Limited Plan Exculpation.

None of Debtor's court employed professionals shall have or incur any liability to the Debtor or any Holder of a Claim for any act or omission in connection with, related to, or arising out of, the Bankruptcy Case, negotiations regarding or concerning the Disclosure Statement or the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Bankruptcy Case, and the pursuit of confirmation of the Plan. Nothing contained in this paragraph shall be deemed to

40

exculpate any party identified herein from any conduct post- Effective Date.

### 13.12.   Ratification

The Confirmation Order will ratify all transactions effected by the Debtor during the pendency of the Bankruptcy.

### 13.13.   Integration Clause.

This Plan is a complete and integrated statement of the binding agreement among the Debtor, the Holders of Claims, and other parties in interest upon the matters herein.  Parol evidence shall not be admissible in an action regarding the Plan or its provisions.

### 13.14    Interpretation

Unless otherwise specified, all Section, Article and exhibit references in the Plan are to the respective Section in, Article of or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The headings of the Articles, paragraphs, and Sections of the Plan and table of contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation.  Nothing herein shall be deemed as a judicial admission by the Debtor.  Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

### 13.15   Severability of Plan Provisions

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void,  or unenforceable before the Confirmation Date, the Bankruptcy Court, upon the request of the Debtor, will have the power to alter or interpret the Plan to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation, provided that the Debtor consents.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.16   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

<div align="center">

**ALEXANDER E. JONES**

  _/s/ DRAFT_
Alexander E. Jones

</div>

# EXHIBIT A

Exhibit A

| Claimant | Claim Amount |
|---|---|
| **Connecticut Plaintiffs** | **$1,438,139,556.22** |
| Carlee Soto Parisi | $98,099,304 |
| Carlos Mathew Soto | $86,899,303.73 |
| David Wheeler | $83,429,303.73 |
| Donna Soto | $74,099,303.73 |
| Erica Lafferty* | $111,429,303.73 |
| Francine Wheeler | $82,099,303.73 |
| Ian Hockley | $118,899,303.73 |
| Jacqueline Barden | $48,499,303.73 |
| Jennifer Hensel | $79,429,303.73 |
| Jillian Soto-Marino | $101,829,303.73 |
| Mark Barden | $86,899,303.73 |
| Nicole Hockley | $108,229,303.73 |
| Robert Parker | $170,099,303.73 |
| William Aldenberg | $130,099,303.73 |
| William Sherlach | $58,099,303.73 |
| **Texas Plaintiffs** | **$480,044,374.80** |
| Neil Heslin | $27,196,411.90 |
| Scarlett Lewis | $22,847,962.90 |
| Leonard Pozner | $200,000,000 |
| Veronique De La Rosa | $180,000,000 |
| The Estate of Marcel Fontaine | $50,000,000 |
| **Total** | **$1,918,183,931.02** |

# EXHIBIT B

**EXHIBIT B**

| Case Title | Case Number | Court |
|---|---|---|
| Marcel Fontaine v. Alex E. Jones, InfoWars, LLC, Free Speech Systems | 22-01022-hcm | U.S. Bankruptcy Court for the Western District of Texas (Austin) |
| Neil Heslin v. Alexander E. Jones, InfoWars, LLC, Free Speech Systems, LLC and Owen Shroyer | 22-01023-hcm | U.S. Bankruptcy Court for the Western District of Texas (Austin) |
| Scarlett Lewis v. Alexander E. Jones, InfoWars, LLC, and Free Speech Systems, LLC | 22-01024-hcm | U.S. Bankruptcy Court for the Western District of Texas (Austin) |
| Gilmore v. Jones et al. | 3:18-cv-00017-NKM-JCH | U.S. District Court for the Western District of Virginia (Charlottesville) |
| Klayman v. Infowars, LLC et al. | 0:20-cv-61912-AMC | U.S. District Court for the Southern District of Florida (Ft. Lauderdale) |
| Murdock v. Jones et al. | 3:21-cv-13184-MAS-DEA | U.S. District Court for the District of New Jersey (Trenton) |
| Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emeric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Gensis Communications Network, | 22-05004 | U.S. Bankruptcy Court for the District of Connecticut (Bridgeport) |

| | | |
|---|---|---|
| Inc., and Midas Resources, Inc. | | |
| William Sherlach v. Alex E. Jones, Free Speech Systems, LLC, Wolfgang Halbig, Cory T. Sklanaka, Genesis Communications Network, Inc. and Midas Resources, Inc. | 22-05005 | U.S. Bankruptcy Court for the District of Connecticut (Bridgeport) |
| William Sherlach v. Alex E. Jones, Free Speech Systems, LLC, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc. | 22-05006 | U.S. Bankruptcy Court for the District of Connecticut (Bridgeport) |
| Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique de la Rosa, Marcel Fontaine v. Info W, LLC, Alex E. Jones, Free Speech Systems, LLC | 22-06004-mmp | U.S. Bankruptcy Court for the Western District of Texas (Waco) |
| Neil Heslin v. Alex E. Jones et al. | D-1GN-18-001835 | 261st District Court of Travis County, Texas |
| Scarlett Lewis v. Alex E. Jones, et al. | D1-GN-18-006623 | 53rd District Court for Travis County, Texas |
| Leonard Pozner and Veronique De La Rosa v. Alex E. Jones, et al. | D1-GN-18-001824 | 345th District Court of Travis County, Texas |
| Marcel Fontaine v. Alex E. Jones, et al. | D1-GN-18-001605 | 459th District Court of Travis County, Texas |
| Lafferty, et al. v. Alex Jones, et al. | UWY-CV-18-6046436-S | Superior Court of Connecticut Judicial District of Waterbury |
| Sherlach v. Jones, et al. | UWY-CV-18-6046437-S | Superior Court of Connecticut Judicial District of Waterbury |
| Sherlach, et al. v. | UWY-CV-18-6046438-S | Superior Court of Connecticut Judicial District of Waterbury |

| | | |
|---|---|---|
| Jones, et al. | | |
| Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Estate of Marcel Fontaine<br>v.<br>Alexander E. Jones | 23-3035 | U.S. Bankruptcy Court for the Southern District of Texas (Houston) |
| David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, Jillian Soto Marino, William Aldenberg, William Sherlach, Robert Parker, and Richard M. Coan, as chapter 7 trustee for the estate of Erica Lafferty<br>v.<br>Alexander E. Jones | 23-3037 | U.S. Bankruptcy Court for the Southern District of Texas (Houston) |
| Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and Estate of Marcel Fontaine<br>v.<br>Alexander E. Jones | 4:23-cv-4238 | U.S. District Court for the Southern District of Texas (Houston) |
| David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, Robert Parker, and Richard M. Coan, as Chapter 7 Trustee for the Estate of Erica Lafferty<br>v.<br>Alexander E. Jones and Free Speech Systems, LLC | 4:23-cv-4240 | U.S. District Court for the Southern District of Texas (Houston) |

# EXHIBIT C

| Plaintiffs | Total |
|---|---|
| Robert Parker | $130,000,000.00 |
| David Wheeler | $65,000,000.00 |
| Francine Wheeler | $64,000,000.00 |
| Jacqueline Barden | $38,800,000.00 |
| Mark Barden | $67,600,000.00 |
| Nicole Hockley | $83,600,000.00 |
| Ian Hockley | $91,600,000.00 |
| Jennifer Hensel | $62,000,000.00 |
| Donna Soto | $58,000,000.00 |
| Carlee Soto-Parisi | $76,000,000.00 |
| Carlos M. Soto | $67,600,000.00 |
| Jillian Soto Marion | $78,800,000.00 |
| William Aldenberg | $100,000,000.00 |
| Erica Lafferty | $86,000,000.00 |
| William Sherlach | $46,000,000.00 |
| Neil Heslin | $27,196,411.90 |
| Scarlett Lewis | $22,847,962.90 |
| Leonard Pozner | $200,000,000.00 |

# SCHEDULE A

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| Asset Description | Exempt/Non-Exempt | Value of Asset (If Exempt) | Liquidated Under Plan (Y/N)? | Asset Available for Creditors (Y/N)? |
|---|---|---|---|---|
| Barrett M107A1 .50 Cal. Rifle w/ Cnight Force Optics Scope | Non-Exempt | N/A | Y | Y |
| H&K SP5K Pistol w/ Holosun HE510C GR Optic | Non-Exempt | N/A | Y | Y |
| Remington Rifle w/ Vortex Scope | Non-Exempt | N/A | Y | Y |
| Remington Rifle w/ Springfield Scope | Non-Exempt | N/A | Y | Y |
| Falkor Defense FD-9S Pistol | Non-Exempt | N/A | Y | Y |
| Falkor Defense FD-9S Pistol w/ Vortex Spitfire Optic | Non-Exempt | N/A | Y | Y |
| Kriss SDP 9MM Pistol w/ Eotech HWS EXPS2 | Non-Exempt | N/A | Y | Y |
| Kriss Vector SDP 10MM Pistol w/ Eotech HWS EXPS2 | Non-Exempt | N/A | Y | Y |
| Sons of Liberty M4 Rifle | Non-Exempt | N/A | Y | Y |
| Spike's Tactical SR15 Pistol w/ Vortex SOARC AR Optic | Non-Exempt | N/A | Y | Y |
| Head Down Products LLC Provectus Rifle | Non-Exempt | N/A | Y | Y |
| Jesse James Nomad 10 Rifle w/ Vortex Razor Scopt& Bipod | Non-Exempt | N/A | Y | Y |

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| Asset Description | Exempt/Non-Exempt | Value of Asset (if Exempt) | Liquidated Under Plan (Y/N)? | Asset Available for Creditors (Y/N)? |
|---|---|---|---|---|
| Springfield M1A Rifle w/ Sling | Non-Exempt | N/A | Y | Y |
| LWRC REPR 7.62 Rifle | Non-Exempt | N/A | Y | Y |
| Head Down Products LLC Arcadius Rifle | Non-Exempt | N/A | Y | Y |
| Beretta A400 Extreme Plus 12GA Shotgun | Non-Exempt | N/A | Y | Y |
| Beretta A400 Extreme Plus 12GA Shotgun | Non-Exempt | N/A | Y | Y |
| Mossberg 935 12GA Shotgun | Non-Exempt | N/A | Y | Y |
| Tristar Raptor 12GA Shotgun | Non-Exempt | N/A | Y | Y |
| Mossberg 930 Tactical 12GA Shotgun | Non-Exempt | N/A | Y | Y |
| Mossberg 930 Tactical 12GA Shotgun | Non-Exempt | N/A | Y | Y |
| Baikal/EAA Corp IZH-43 12 GA Shotgun | Non-Exempt | N/A | Y | Y |
| IAC Michina 99 1887 12 GA Shotgun | Non-Exempt | N/A | Y | Y |
| Keltec KSG 12GA Shotgun | Non-Exempt | N/A | Y | Y |
| Norinco MAK-90 Sporter Rifle w/ Sling | Non-Exempt | N/A | Y | Y |
| Romarm/SA/Cugir Mod. 0 Rifle w/ Sling | Non-Exempt | N/A | Y | Y |
| Arsenal Model SLR-95 Rifle w/ Sling | Non-Exempt | N/A | Y | Y |

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| Asset Description | Exempt/Non-Exempt | Value of Asset (If Exempt) | Liquidated Under Plan (Y/N)? | Asset Available for Creditors (Y/N)? |
|---|---|---|---|---|
| Izhmash Saiga 7.62 Rifle | Non-Exempt | N/A | Y | Y |
| Zastava SPAPM70 7.62 Rifle | Non-Exempt | N/A | Y | Y |
| Beretta 21A(TB) .22LR Pistol | Non-Exempt | N/A | Y | Y |
| Ruger MK3 .22LR Pistol | Non-Exempt | N/A | Y | Y |
| Sig Sauer P365XL 9MM Pistol | Non-Exempt | N/A | Y | Y |
| Walther P22 .22LR Pistol | Non-Exempt | N/A | Y | Y |
| H&K USP .45 ACP Pistol | Non-Exempt | N/A | Y | Y |
| Glock 26 Gen4 9MM Pistol | Non-Exempt | N/A | Y | Y |
| Glock 31 .357 Pistol | Non-Exempt | N/A | Y | Y |
| Glock 34 9MM Pistol | Non-Exempt | N/A | Y | Y |
| Magnum Research Desert Eagle .44 Mag Pistol | Non-Exempt | N/A | Y | Y |
| Colt 1911 Govt Pistol | Non-Exempt | N/A | Y | Y |
| Colt 1911 Govt Pistol | Non-Exempt | N/A | Y | Y |
| Kimber 1911 Pro CDP 2 .45 ACP Pistol | Non-Exempt | N/A | Y | Y |
| CZ Shadow 2 9MM Pistol | Non-Exempt | N/A | Y | Y |
| Taurus The Judge .410/.45 LC Revolver | Non-Exempt | N/A | Y | Y |
| S&W 500 SW MAG Revolver | Non-Exempt | N/A | Y | Y |

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| ASSET DESCRIPTION | EXEMPT/NON-EXEMPT | VALUE OF ASSET (IF EXEMPT) | LIQUIDATED UNDER PLAN (Y/N)? | ASSET AVAILABLE FOR CREDITORS (Y/N)? |
|---|---|---|---|---|
| STOEGER/UBERTI SCHOFIELD .45 COLT REVOLVER | NON-EXEMPT | N/A | Y | Y |
| S&W 60-14 .357 MAG REVOLVER | NON-EXEMPT | N/A | Y | Y |
| TAURUS 85 .38 SPEC. REVOLVER | NON-EXEMPT | N/A | Y | Y |
| STURM RUGER SP101 .357 MAG REVOLVER | NON-EXEMPT | N/A | Y | Y |
| S&W M31-3 .32 S&W L REVOLVER | NON-EXEMPT | N/A | Y | Y |
| STACATTO XC 9MM PISTOL | EXEMPT | $2,500.00 | N | N |
| FALCOR PETRA .300 WIN. MAG. RIFLE | EXEMPT | $3,000.00 | N | N |
| HOMESTEAD HOUSEHOLD GOODS | EXEMPT | $17,940.00 | N | N |
| CAT | EXEMPT | $200.00 | N | N |
| CLOTHES | EXEMPT | $300.00 | N | N |
| TUDOR GENEVA CHRONOMETER WATCH | EXEMPT | $3,000.00 | N | N |
| TAG HEUER AQUARACER WATCH | EXEMPT | $2,000.00 | N | N |
| HOMESTEAD REAL PROPERTY | EXEMPT | $1,633,000.00 | N | N |
| 2017 FORD EXPEDITION | NON-EXEMPT | N/A | Y | Y |
| ROLEX OYSTER PERPETUAL DATE SUBMARINER SUPERLATIVE CHRONOMETER 40MM | NON-EXEMPT | N/A | Y | Y |
| TUDOR GENEVE CHRONOMETER 44MM | NON-EXEMPT | N/A | Y | Y |

## Schedule of Plan and Non-Plan, Non-Cash Assets

| ASSET DESCRIPTION | EXEMPT/NON-EXEMPT | VALUE OF ASSET (IF EXEMPT) | LIQUIDATED UNDER PLAN (Y/N)? | ASSET AVAILABLE FOR CREDITORS (Y/N)? |
|---|---|---|---|---|
| TUDOR GENEVE CHRONOMETER 44MM | NON-EXEMPT | N/A | Y | Y |
| TUDOR GENEVE CHRONOMETER 44MM | NON-EXEMPT | N/A | Y | Y |
| TUDOR GENEVE CHRONOMETER 44MM | NON-EXEMPT | N/A | Y | Y |
| TUDOR GENEVE CHRONOMETER 44MM | NON-EXEMPT | N/A | Y | Y |
| TAG HEUER AQUARACER CALIBRE 5 AUTOMATIC | NON-EXEMPT | N/A | Y | Y |
| TAG HEUER MONACO 41MM | NON-EXEMPT | N/A | Y | Y |
| TAG HEUER CARRERA 41MM | NON-EXEMPT | N/A | Y | Y |
| VICTORONIX 41MM | NON-EXEMPT | N/A | Y | Y |
| VICTORONIX 41MM | NON-EXEMPT | N/A | Y | Y |
| VICTORONIX | NON-EXEMPT | N/A | Y | Y |
| MARATAC 44MM | NON-EXEMPT | N/A | Y | Y |
| HAMILTON AUTOMATIC JAZZMASTER MODEL H325960 44MM | NON-EXEMPT | N/A | Y | Y |
| BERING TITANIUM 38MM | NON-EXEMPT | N/A | Y | Y |
| SEKONDA 41MM | NON-EXEMPT | N/A | Y | Y |
| TREADMILL AND 3 ELECTRIC BIKES | EXEMPT | $2,385.00 | N | N |
| COINS | EXEMPT | $1,680.00 | N | N |
| RENTAL PROPERTY - WW | NON-EXEMPT | N/A | Y | Y |
| LAKE HOUSE | NON-EXEMPT | N/A | Y | Y |
| 2019 DODGE CHALLENGER | NON-EXEMPT | N/A | Y | Y |

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| ASSET DESCRIPTION | EXEMPT/NON-EXEMPT | VALUE OF ASSET (IF EXEMPT) | LIQUIDATED UNDER PLAN (Y/N)? | ASSET AVAILABLE FOR CREDITORS (Y/N)? |
|---|---|---|---|---|
| 2020 DODGE CHARGER | NON-EXEMPT | N/A | N | N |
| 2020 CHEVROLET TAHOE | NON-EXEMPT | N/A | Y | Y |
| 2003 GLASTON GS209 BOAT | NON-EXEMPT | N/A | Y | Y |
| 2016 REGAL BOATS 28 EXPRESS | NON-EXEMPT | N/A | Y | Y |
| 2015 REGAL BOATS 24 FASDECK | NON-EXEMPT | N/A | Y | Y |
| 100% INTEREST IN A. EMRIC PRODUCTIONS, LLC | NON-EXEMPT | N/A | N | N |
| 100% INTEREST IN MAGNOLIA HOLDINGS LIMITED PARTNERSHIP, LLC | NON-EXEMPT | N/A | N | N |
| 100% INTEREST IN MAGNOLIA MANAGEMENT, LLC | NON-EXEMPT | N/A | N | N |
| 100% INTEREST IN AUSTIN SHIPROCK PUBLISHING, LLC | NON-EXEMPT | N/A | N | N |
| 100% INTEREST IN PLANET INFOWARS, LLC | NON-EXEMPT | N/A | N | N |
| 100% INTEREST IN RCGJ, LLC | NON-EXEMPT | N/A | N | N |
| 100% INTEREST IN FREE SPEECH SYSTEMS, LLC | NON-EXEMPT | N/A | N | N[1] |
| 100% INTEREST IN AEJ AUSTIN HOLDINGS, LLC | NON-EXEMPT | N/A | N | N |
| 100% INTEREST IN GUADALUPE | NON-EXEMPT | N/A | N | N |

---

[1] Through the FSS subchapter V plan, FSS's net disposable income will be distributed to holders of an Allowed Claim against both the Debtor and FSS.

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| COUNTY LAND AND WATER, LLC | | | | |
|---|---|---|---|---|
| ASSET DESCRIPTION | EXEMPT/NON-EXEMPT | VALUE OF ASSET (IF EXEMPT) | LIQUIDATED UNDER PLAN (Y/N)? | ASSET AVAILABLE FOR CREDITORS (Y/N)? |
| 100% INTEREST IN EMRIC PRODUCTIONS, LLC | NON-EXEMPT | N/A | N | N |
| 100% INTEREST IN JONES REPORT, LLC | NON-EXEMPT | N/A | N | N |
| 100% INTEREST IN JONES PRODUCTIONS, LLC | NON-EXEMPT | N/A | N | N |
| CRYPTO CURRENCY | NON-EXEMPT | N/A | Y | Y |
| TAX REFUND IN AMOUNT OF $3,807,459.00 | NON-EXEMPT | N/A | Y | Y |
| RANCH located IN GUADALUPE COUNTY, TX | NON-EXEMPT | N/A | Y | Y |
| CRYOGENIC CHAMBER | NON-EXEMPT | N/A | Y | Y |
| LAKE HOUSE FURNITURE, FIXTURES, HOUSEHOLD GOODS AND REC. EQUIP. | NON-EXEMPT | N/A | Y | Y |
| RECHARGE DYNASTY TRUST | NON-EXEMPT | N/A | Y | Y |
| 2022 LITIGATION SETTLEMENT TRUST | NON-EXEMPT | N/A | N | Y |
| RXXCTTGAA TRUST | NON-EXEMPT | N/A | N | Y |
| GREEN LEAF TRUST | NON-EXEMPT | N/A | N | N |
| AEJ 2018 TRUST | NON-EXEMPT | N/A | N | Y |
| THE MISSOURI779384 TRUST | NON-EXEMPT | N/A | Y | Y |
| ALEXANDER E. JONES DESCENDANT AND BENEFICIARY TRUST | NON-EXEMPT | N/A | N | N |
| SUNGLASSES | EXEMPT | $845.00 | N | N |

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| | | | | |
|---|---|---|---|---|
| **AGGREGATE ESTIMATED VALUE OF EXEMPT PERSONAL PROPERTY** | | $33,850.00 | | |

# SCHEDULE B

## SCHEDULE B

a) Erika Jones

b) Dr. David Jones

c) Carol Jones

d) Marleigh Jones

e) Rex Jones

f) Charlotte Jones

g) V. Jones

h) G. Jones

i) PQPR, LLC

j) A. Emeric Productions, LLC

k) Magnolia Holdings Limited Partnership, LLC

l) Magnolia Management, LLC

m) Austin Shiprock Publishing, LLC

n) Planet Infowars, LLC

o) RCGJ, LLC

p) Free Speech Systems, LLC

q) AEJ Austin Holdings LLC

r) Guadalupe Land and Water, LLC

s) Emric Productions, LLC

t) Jones Report, LLC

u) Jones Productions, LLC

v) Recharge Dynasty Trust

w) 2022 Litigation Settlement Trust

x) RXXCTTGAA Trust

y) AEJ 2018 Trust

z) The Missouri779384 Trust

aa) Alexander E. Trust Descendent and Beneficiary Trust

**Exhibit A**

Blackline of Amended Plan of Reorganization

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **ALEXANDER E. JONES,** | § | |
| | § | |
| **Debtor.** | § | **Case No. 22-33553 (CML)** |
| | § | |

**DEBTOR'S PROPOSED AMENDED PLAN OF REORGANIZATION**

Dated: ~~December 15, 2023~~January 23, 2024.                    **CROWE & DUNLEVY, P.C.**

Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
            aortiz@jhwclaw.com

Formatted: Font: +Headings CS (Times New Roman)
Formatted: Font: +Headings CS (Times New Roman), 12 pt
Formatted: Font: +Headings CS (Times New Roman)
Formatted: Font: +Headings CS (Times New Roman)
Formatted: Font: +Headings CS (Times New Roman), 12 pt
Formatted: Space Before:  0 pt
Formatted: Font: +Headings CS (Times New Roman)
Formatted: Font: +Headings CS (Times New Roman)
Formatted: Font: +Headings CS (Times New Roman)
Formatted: Font: +Headings CS (Times New Roman)
Formatted: Font: +Headings CS (Times New Roman)
Formatted: Font: +Headings CS (Times New Roman)
Formatted: Font: +Headings CS (Times New Roman)
Formatted: Font: +Headings CS (Times New Roman)
Formatted: Font: +Headings CS (Times New Roman)
Formatted: Font: +Headings CS (Times New Roman)

**ATTORNEYS FOR ALEXANDER E. JONES**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

SUMMARY OF PLAN ......................................................................................................... 1

ARTICLE I: .......................................................................................................................... 2

DEFINITIONS, CONSTRUCTION, AND INTERPRETATION .................................... 2

ARTICLE II: ........................................................................................................................ 10

UNCLASSIFIED CLAIMS ................................................................................................. 10

    2.01.    Administrative Claims .......................................................................... 10

    2.02.    Priority Tax Claims ............................................................................. 12

    2.03.    Domestic Support Obligations. ............................................................ 12

    2.04.    U.S. Trustee Fees. ................................................................................ 12

ARTICLE III: ....................................................................................................................... 12

CLASSIFICATION OF CLAIMS ....................................................................................... 13

    3.01.    Introduction. ........................................................................................ 13

    3.02.    Claims Against the Debtor ................................................................... 13

ARTICLE IV ......................................................................................................................... 13

IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS ............................. 13

    4.01.    Unimpaired Claims ............................................................................. 13

    4.02.    Impaired Claims .................................................................................. 14

    4.03.    Controversy Concerning Impairment .................................................. 14

ARTICLE V .......................................................................................................................... 14

TREATMENT OF CLAIMS ............................................................................................... 14

    5.01.    Non-Tax Priority Claims – Class 1 ..................................................... 14

    5.02.    Priority and Secured Tax Claims – Class 2 ......................................... 14

    5.03.    Secured Claim of Bank of America – Class 3 ..................................... 15

    5.04.    Secured Claim of Security Bank of Crawford – Class 4 ..................... 15

    5.05.    "Opt-In Settlement" Unsecured Claims – Class 5 .............................. 16

    5.06.    General Unsecured Claims – Class 6 .................................................... 18

    5.07.    Administrative Convenience Claims – Class 7 ..................................... 18

ARTICLE VI ......................................................................................................................... 19

i

Formatted

MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN .............................. 19

    *6.01.*    *The Settlement* ..................................................................................... 19

    *6.02.*    *Sources of Cash and Terms of Payment for Plan Distributions*.................... 20

    *6.03.*    *Payments.* ............................................................................................ 20

    *6.04.*    *Post Effective Date Management.* ........................................................... 21

ARTICLE VII...................................................................................................................... 21

TREATMENT OF EXECUTORY CONTRACTS ............................................................... 21

    *7.01.*    *General Treatment of Executory Contracts: Rejected*............................... 21

    *7.02.*    *Cure Payments and Release of Liability* .................................................. 22

    *7.03.*    *Bar to Rejection Claims* ........................................................................ 22

    *7.04.*    *Rejection Claims* .................................................................................. 22

ARTICLE VIII .................................................................................................................... 22

CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION....................................................................................................... 22

    *8.01.*    *Conditions Precedent to Confirmation Date*............................................ 23

    *8.02.*    *Conditions Precedent to the Effective Date* ............................................. 23

    *8.03.*    *Consequences of Non-Occurrence of Effective Date*................................. 23

ARTICLE IX........................................................................................................................ 24

EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE....................................... 24

    *9.01.*    *Binding Effect* ..................................................................................... 24

    *9.02.*    *Vesting of Assets* .................................................................................. 24

    *9.03.*    *Assertion of Causes of Action, Defenses and Counterclaims*..................... 25

    *9.04*    *Discharge of Debtor*............................................................................. 25

    *9.05*    *Injunction*............................................................................................ 26

    *9.06*    *Term of Bankruptcy Injunction or Stays* ................................................. 27

    *9.07*    *Effectuating Documents; Further Transactions; Timing*............................ 27

ARTICLE X.......................................................................................................................... 27

OBJECTIONS TO CLAIMS; DISTRIBUTIONS ................................................................ 27

    *10.01.*    *Objections to Claims* ........................................................................... 27

    *10.02.*    *Objection Deadline* .............................................................................. 27

    *10.03.*    *Settlement of Objections to Claims* ......................................................... 28

    *10.04.*    *No Interest on Claims* ........................................................................... 28

ii

10.05.    Setoffs by the Debtor; No Waiver..........................................................................28
10.06.    Procedures for Treating and Resolving Disputed and Contingent Claims ..................28
10.07.    Distributions Under the Plan..................................................................................30
10.08.    Duty to Disgorge Overpayments .............................................................................32
10.09    Duties of the Disbursement Agent ...........................................................................32
10.10    ~~Distribution~~Disbursement Agent Expenses...........................................................32

**ARTICLE XI** ........................................................................................................................32

**ACCEPTANCE OR REJECTION OF THE PLAN**...............................................................32

11.01.    Impaired Classes Entitled to Vote ............................................................................32
11.02.    Acceptance by an Impaired Class.............................................................................33
11.03    Elimination of Vacant Classes.................................................................................33
11.04.    Section 1129(b) Cramdown.......................................................................................33

**ARTICLE XII** ......................................................................................................................33

**RETENTION OF JURISDICTION**......................................................................................33

12.01.    Jurisdiction ...............................................................................................................33
12.02.    Examination of Claims ............................................................................................33
12.03.    Determination of Disputes .......................................................................................34
12.04.    Additional Purposes .................................................................................................34
12.05.    Failure of the Bankruptcy Court to Exercise Jurisdiction.......................................36

**ARTICLE XIII.** ...................................................................................................................36

**MISCELLANEOUS PROVISIONS**.....................................................................................36

13.01.    General Notices ........................................................................................................36
13.02.    Exemption From Transfer Taxes ..............................................................................37
13.03.    Asserting and Curing Default Under the Plan ..........................................................37
13.04.    Revocation or Withdrawal of the Plan .....................................................................38
13.05.    Modification of the Plan ...........................................................................................38
13.06.    Computation of Time ................................................................................................38
13.07.    Due Authorization ....................................................................................................38
13.08.    Implementation .........................................................................................................39
13.09.    Execution of Documents ..........................................................................................39
13.10.    Bankruptcy Restrictions ..........................................................................................39
13.11.    Limited Plan Exculpation.........................................................................................39
13.12.    Ratification................................................................................................................39

iii

*13.13.*  *Integration Clause.* ...................................................................... *39*
*13.14*  *Interpretation* ........................................................................... *39*
*13.15*  *Severability of Plan Provisions* ................................................ *40*
*13.16*  *Governing Law* ........................................................................ *40*

**Formatted:** Font: +Headings CS (Times New Roman), 12 pt

**Formatted:** Font: +Headings CS (Times New Roman), 12 pt

**Formatted:** Font: +Headings CS (Times New Roman), 12 pt

**Formatted:** Font: +Headings CS (Times New Roman), 12 pt

**Formatted:** Font: +Headings CS (Times New Roman), 12 pt

**Formatted:** Font: +Headings CS (Times New Roman), 12 pt

**Formatted:** Font: +Headings CS (Times New Roman), 12 pt

**Formatted:** Font: +Headings CS (Times New Roman), 12 pt

**Formatted:** Font: +Headings CS (Times New Roman), 12 pt

**Formatted:** Font: +Headings CS (Times New Roman), 12 pt

**Formatted:** Font: +Headings CS (Times New Roman), 12 pt

**Formatted:** Font: +Headings CS (Times New Roman), 12 pt

**Formatted:** Font: +Headings CS (Times New Roman), 12 pt

## INTRODUCTION

Alexander E. Jones proposes this Plan pursuant to Bankruptcy Code section 1121(a). Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtor's ~~history, business,~~ assets, liabilities, resolutions of certain material disputes, future ~~business~~income projections, liquidation analysis, risk factors, summary and analysis of the Plan, and certain related matters. The Distributions to be made pursuant to this Plan to Holders of Allowed Claims, in each of the Classes of Claims against the Debtor set forth in Article III of this Plan, are set forth in Article V of this Plan.

THE DEBTOR URGES ALL HOLDERS OF CLAIMS TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY. NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND ANY DOCUMENTS, SCHEDULES OR EXHIBITS ATTACHED THERETO OR REFERENCED THEREIN HAVE BEEN AUTHORIZED BY THE DEBTOR OR THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

## SUMMARY OF ~~PLAN¹~~PLAN[1]

The Plan provides for the reorganization of the Debtor and the payment of Allowed Claims through: (a) the continued orderly liquidation of certain non-exempt assets of the Debtor; ~~and (b~~(b) the settlement of various estate claims against individuals and businesses; and (c) the Debtor's commitment to contribute substantial funds from his future income.  More specifically, the Debtor will contribute 100% of the Net Disposable Income of Free Speech System, LLC ("FSS") as set forth in the FSS Plan and 50% of the Debtor's Plan Income ~~over five (5) years~~to both settling and non-settling parties, until such time as certain minimum payments have been contributed for settling parties, and then 25% of the Debtor's Plan Income over ~~an additional five (5) years.~~the remaining Plan Term to non-settling parties,  As a result, all allowed administrative claims, priority claims, and secured claims will be paid in full, and allowed unsecured creditors will receive a substantial ~~distribution~~Distribution (and significantly more than they would receive in a ~~chapter 7~~ liquidation whether through a liquidating chapter 11 plan or a chapter 7).

The Plan also allows for unsecured creditors to opt in to a "settling class" allowing for faster payment of their claims and repayment from certain non-exempt assets of the Debtor in exchange for settlement of certain existing litigation claims. This settlement class facilitates the Plan and benefits all stakeholders by resolving pending litigation that would otherwise be both costly and time consuming for the Debtor and the bankruptcy estate. Finally, the Plan incentivizes the Debtor to satisfy his obligations to fund the  Plan as soon as possible, ~~so as~~ to accelerate payments to creditors.

---

[1] This Summary is intended solely to provide an overview of the Plan.  The Summary shall not be binding on the Debtor, and in the event of any conflict between the Summary and any other provision of the Plan, such other provision shall be controlling.

i

## ARTICLE I:

### DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

The capitalized terms used herein shall have the respective meanings set forth below.  A capitalized term used herein that is not defined in this Article shall have the meaning ascribed to

---

¹ This Summary is intended solely to provide an overview of the Plan.  The Summary shall not be binding on the Debtor, and in the event of any conflict between the Summary and any other provision of the Plan, such other provision shall be controlling.

that term, if any, in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa.  All exhibits and schedules attached to the Plan are incorporated herein.

**1.01.**   *"Administrative Claim"* means any Claim for an Administrative Expense.

**1.02.**   *"Administrative Expense"* means any cost or expense of administration of this case incurred on or before the Effective Date that is entitled to priority under section 507(a)(2) and allowed under section 503(b) of the Bankruptcy Code, including, without limitation, Fee Claims and all other claims for compensation or reimbursement of expenses to the extent  allowed by the Bankruptcy Court under the Bankruptcy Code, Cure Claims, and all fees and charges assessed against the Debtor's Estate under the Bankruptcy Code.

**1.03.**   *"Allowance Date"* means the date on which a Claim, an Administrative Claim,  or any Secured Claim becomes an Allowed Claim.

**1.04.**   *"Allowed"* means, when used with respect to a Claim (including any Administrative Claim), or any portion thereof, a Claim, Administrative Claim, or any portion thereof (a) that has been allowed by a Final Order, (b) that was listed in the Schedules as neither disputed, contingent nor unliquidated and for which no timely Proof of Claim was filed, (c) for which a Proof of Claim in a liquidated amount has been timely filed pursuant to the Bankruptcy Code or as required by any Final Order of the Bankruptcy Court and as to which either (i) no objection to its allowance has been filed on or before the Objection Deadline or within any other period fixed by the Bankruptcy Code or a Final Order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount in the Plan. For the avoidance of doubt, in order to have an Allowed Claim, each ~~Non-Electing Plaintiffs, or any claimant with relief from the automatic stay to liquidate claims in state court~~ Non-Electing Plaintiff must have a Final Order against the Debtor in their respective state court litigation ~~case~~.

**1.05.**   *"Avoidance Action"* means any cause of action under any of sections 544, 545, 546, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code, which actions are waived except as specified in the Plan.

**1.06.**   *"Bankruptcy Case"* means the Debtor's Bankruptcy Case No. 22-33553 under chapter 11 of the Bankruptcy Code.

**~~1.10.~~1.07.**   *"Bankruptcy Code"* means the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

**~~1.11.~~1.08.**   *"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District  of Texas, Houston Division, or such other court having jurisdiction over this case.

**~~1.12.~~1.09.**   *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as

prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

~~1.13.~~1.10.  **"*Business Day*"** means any day on which commercial banks are open for business in Austin, Texas.

~~1.14.~~1.11.  **"*Cash*"** means legal tender of the United States of America or Cash equivalents.

~~1.15.~~1.12.  **"*Cause of Action*"** means any cause of action or right to payment arising under federal, state, or common law, including Avoidance Actions, that the Debtor or the Estate may hold against any Person.

~~1.16.~~1.13.  **"*Claim*"** shall have the meaning provided in section 101(5) of the Bankruptcy Code.

~~1.17.~~1.14.  **"*Class*"** means a category of ~~holders~~Holders of Claims as set forth in the Plan.

~~1.18.~~1.15.  **"*Collateral*"** means any property of the Debtor subject to a valid and enforceable lien to secure the payment of a Claim.

~~1.19.~~1.16.  **"*Confirmation Date*"** means the date on which the Bankruptcy Court enters the Confirmation Order.

~~1.20.~~1.17.  **"*Confirmation Hearing*"** means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128 on confirmation of the Plan.

~~1.21.~~1.18.  **"*Confirmation Order*"** means the order of the Bankruptcy Court confirming this Plan.

~~1.22.~~1.19.  **"*Creditor*"** shall mean the Holder of a Claim.

~~1.23.~~1.20.  **"*Cure Claim*"** means a Claim arising from the assumption of an Executory Contract under section 365(b) of the Bankruptcy Code.

~~1.24.~~1.21.  **"*Debtor*"** means Alexander E. Jones, and shall also include, where applicable, Jones from and after the Effective Date as reorganized pursuant to this Plan.

~~1.25.~~1.22.  **"*Disallowed*"** means, when used with respect to a Claim, a Claim or the portion thereof which, in a properly entered order of the Bankruptcy Court, is fully and finally (a) denied allowance, or (b) is estimated for purposes of payment or other Plan Distributions at zero ($0.00). Disallowed means, when used with respect to an Administrative Expense of a professional that is a Fee Claim, an Administrative Expense or portion thereof that is denied by the Bankruptcy Court or other court of competent jurisdiction or that is estimated by the Bankruptcy Court for

purposes of payment or other Plan Distributions at zero ($0.00).

**1.23.** *"Disbursement Agent"* means a person designated by the Debtor, with the consent of the Electing Plaintiffs, who shall have the responsibilities set forth in Article X of the Plan. The Disbursement Agent may be the same person as the trustee for the FSS Trust.

~~1.26.~~**1.24.** *"Discharge Date"* means the date upon which the Court grants the Debtor a discharge upon the earlier of (i) the Debtor having satisfied his payment obligations under the Plan or (ii) all Allowed Claims shall have been paid.

~~1.27.~~**1.25.** *"Disclosure Statement"* means the Disclosure Statement of Jones with respect to this Plan of Reorganization, as approved by the Court, as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules, together with any Exhibits thereto.

~~1.28.~~**1.26.** *"Disputed"*, when used with respect to a Claim, means any such Claim that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated, any Claim that is the subject of an objection filed in the Bankruptcy Court, any Claim that is disputed by the Debtor in any litigation, lawsuit, or adversary proceeding in the Bankruptcy Court or any other court of competent jurisdiction, or any Claim that is not Allowed.

~~1.29.~~**1.27.** *"Distribution"* means the property required by this Plan to be distributed to the Holders of Allowed Claims.

~~1.30.~~ ~~*"Distribution Agent"* means a person designated by the Debtor, with the consent of the Electing Plaintiffs, who shall have the responsibilities set forth in Article 10 of the Plan.~~

**1.28.** ~~1.31.~~ *"Domestic Support Obligations"* has the meaning provided in Section 101(14A) of the Bankruptcy Code, as such obligations may be modified from time to time by a court of appropriate jurisdiction.

**1.29.** ~~1.32.~~ *"Effective Date"* means the first Business Day that is the later of fourteen (14) days after the Confirmation Date of this Plan if the Confirmation Order is not stayed prior to such date or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay.

**1.30.** ~~1.33.~~ *"Electing Plaintiffs"* means those certain unsecured creditor parties who elect "Opt-In Settlement" Claim Treatment under Class 5 by the Voting Deadline and vote in favor of the Plan.

**1.31.** ~~1.34.~~ *"Electing Plaintiff Pro Rata Share"* means the ratio, expressed as a percentage, of an Electing Plaintiff's Allowed Claim divided by the Allowed Claims of all Electing Plaintiffs, collectively.

**1.32.** *"Estate"* means the Debtor's estate in this case created pursuant to section 541 of the Bankruptcy Code.

**1.33.** ~~1.35.~~ *"Executory Contract"* means any prepetition executory contract or unexpired lease governed by section 365 of the Bankruptcy Code.

**1.34.** ~~1.36.~~ *"Fee Application"* means an application for the allowance of a Fee Claim.

**1.35.** ~~1.37.~~ *"Fee Claim"* means a Claim by a Professional or any other party-in-interest pursuant to sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code or otherwise relating to services performed after the Petition Date and prior to and including the Effective Date.

**1.36.** ~~1.38.~~ *"Final Decree"* means the final decree entered by the Bankruptcy Court on or after the Effective Date and pursuant to Bankruptcy Rule 3022.

**1.37.** ~~1.39.~~ *"Final Order"* means (a) an order as to which the time to appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment ~~that~~ has expired and as to which no appeal, petition for certiorari or other proceedings for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall then be pending or (b) in the event that an appeal, writ of certiorari, reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall have expired, provided, however that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 59 or Rule 60 of the Federal Rules of Civil Procedure may be filed.

**1.38.** ~~1.40.~~ *"FSS"* means Free Speech Systems, LLC.

**1.39.** ~~1.41.~~ *"FSS Plan"* means a plan under Chapter 11 Subchapter V of the Bankruptcy Code for FSS. "FSS Plan" shall refer specifically to Docket No. 756 in Case No. 22-60043 unless further amended by FSS, at which time "FSS Plan" shall refer to such plan as amended.

**1.40.** ~~1.42.~~ *"FSS Trust"* means the Free Speech Systems Settlement Trust established pursuant to the FSS Plan.

**1.41.** *"General Unsecured Claims"* means non-priority unsecured claims held by parties-in-interest.

**1.42.** ~~1.43.~~ *"GUC Pro Rata Share* means the ratio, expressed as a percentage, of a Holder of an Allowed General Unsecured Claim in Class 6 divided by the Allowed Claims of all Holders of Allowed General Unsecured Claims in Class 6, collectively.

**1.43.** *"Holder"* means a Person who is the beneficial owner of a Claim. For purposes of a Distribution, a Person must be a Holder as of the Initial Distribution Date. For purposes of voting to accept or reject this Plan, a Person must be a Holder as of the Voting Record Date. A Holder may transfer their claim to another Person for purposes of ~~distribution~~Distribution.

6

1.44. ~~1.44.~~ **"Income Stream Payment"** means ~~(i) the Net Disposable Income of FSS as set forth in Section 1.1.53 of the FSS~~ for a particular Plan ~~for the calendar year, which for the duration of the FSS~~ Year during the Plan~~, shall mean the projected unsecured creditor plan payments from FSS plus (ii)~~ Term (i) 50% of the Debtor's Plan Income for such Plan Year through the end of the year in which the Payment Trigger occurs; and (ii) 25% of the Debtor's Plan Income for each such Plan Year following the year in which the Payment Trigger occurs.

1.45. ~~1.45.~~ **"Initial Distribution Date"** means the date, determined by the Disbursement Agent, as soon as reasonably practical after the Effective Date, that Distributions with respect to Priority Tax Claims, Secured Tax Claims and Non-Tax Priority Claims shall commence.

1.46. **"Lien"** has the meaning provided in Bankruptcy Code section 101(37) and shall include a "statutory lien" as defined in Bankruptcy Code section 101(53).

1.47. ~~1.46.~~ **"Minimum Annual Distribution"** means, for each Electing Plaintiff~~, in any given Plan Year during~~ the Plan Term, the Plaintiff Pro Rata Share for such Plaintiff multiplied by $5.5 million, minus, the amount received by such Electing Plaintiff from the FSS Trust with respect to such Plan Year.

1.48. ~~1.47.~~ **"Net Proceeds"** means any amounts collected by the Debtor from any disposition of any non-exempt property, after payment of all reasonable and customary costs and expenses associated therewith which may be required to be paid under applicable law or agreement to effectuate the receipt of such proceeds, including, without limitation, any reasonable attorney fees not otherwise paid under the Plan as an Administrative Expense.

1.49. ~~1.48.~~ **"Non-Electing Payment"** means, on an annual basis for a particular ~~calendar year~~ Plan Year, the Income Stream Payment, minus the ~~distributions~~ Distributions each Electing Plaintiff ~~is entitled~~ is entitled to under the Plan.

1.50. ~~1.49.~~ **"Non-Electing Plaintiffs"** means those certain unsecured creditor parties who do not elect "Opt-In Settlement" Claim Treatment under Class 5 and will instead be treated as general unsecured creditors under Class 6.

~~1.50.~~ **"~~Non-Electing Pro-Rata Share~~Exempt Assets,"** means the ~~ratio,~~ Debtor's Cash as ~~a percentage,~~ of ~~a Non-Electing Plaintiff's Allowed Claim divided by~~ the ~~Allowed Claims of all Non-Electing Plaintiffs, collectively.~~

~~1.51.~~ **"~~Non-Exempt Asset Recovery"~~ means**Effective Date, less the ~~net proceeds from the sale of the Non-Exempt Assets, whenever such assets are liquidated or monetized, including,~~$250,000 reserve for ~~the avoidance of doubt, any income tax refund owed to the Debtor~~ living and post-confirmation legal expenses (~~as of the Petition Date.~~

1.51. ~~1.52.~~ **"Non-Exempt Assets"** ~~means~~set forth in Section 6.02), as well as assets listed on the schedules of assets of the Debtor (other than assets scheduled on Schedule C as exempt for which there is no pending exemption objection), including, for the avoidance of doubt, any income tax refund owed to the Debtor as of the Petition Date. Notwithstanding the foregoing, Non-Exempt

Assets does not include the ~~Challenger~~Charger, the Rolex Oyster Perpetual Date, or any ownership interests the Debtor holds in entities and trusts, which the Debtor will retain post-confirmation. due to the expense in replacing a car, the inability of creditors to reach trust corpus, or the inability to liquidate for value above liquidation costs. For clarity, **Schedule A**, attached hereto, contains a chart setting forth the Non-Exempt Assets, Exempt Assets, and those assets this Plan proposes that the Debtor retain that are not exempt.

1.52.   ~~1.53.~~ *"Non-Tax Priority Claim"* means any Claim that, if allowed, would be entitled to priority in payment under Bankruptcy Code section 507(a) other than a Priority Tax Claim, an Administrative Claim, or a Domestic Support Obligation.

1.53.   ~~1.54.~~ *"Objection Deadline"* means the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective Holder(s) thereof as provided in section 10.02 of the Plan, which date shall be ninety (90) days after the Effective Date unless extended by order of the Bankruptcy Court for good cause shown.

1.54.   ~~1.55.~~ *"Opt-In Settlement Unsecured Claims"* means the Claims held by those certain Electing Plaintiffs who elect "Opt-In Settlement" Claim Treatment under Class 5.

1.55.   ~~1.56.~~ *"Ordinary Course of Business"* shall have the meaning given to such term as utilized in Section 363(b) of the Bankruptcy Code.

1.56.   ~~1.57.~~ *"Payment Trigger"* shall mean the receipt by each Electing Plaintiff of their Plaintiff Pro Rata Share of $55 million, collectively from (i) the FSS Trust; (ii) the Income Stream Payment pursuant to this Plan and (iii) the 70% of proceeds from liquidation of Non -Exempt Assets minus cost of liquidation.

1.57.   *"Person"* means and includes natural persons, corporations, limited partnership, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other organizations, irrespective of whether they are legal entities, governments and agencies and political subdivisions thereof or other entities.

1.58.   ~~1.58.~~ *"Petition Date"* means December 2, 2022.

1.59.   ~~1.59.~~ *"Plaintiff"* means each of the following: Neil Heslin, Scarlett Lewis, Leonard ~~Pozner~~Pozner, Veronique De La Rosa, the Estate of Marcel Fontaine, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Sota, Carlee Soto Parisi, Carlos M. Soto, Jilian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker.

1.60.   ~~1.60.~~ *"Plaintiff Pro Rata Share"* means the ratio, expressed as a percentage, of a Plaintiff's Allowed Claim divided by the Allowed Claims of all Plaintiffs, collectively.

1.61.   ~~1.61.~~ *"Plan"* or *"Plan of Reorganization"* means this Plan of Reorganization either in its present form or as it may hereafter be altered, amended, or modified from time to time.

1.62.   ~~1.62.~~ *"Plan Default"* means the occurrence of a default under Article XIII of this

Plan.

1.63.   **"Plan Income"** means, on an annual basis, the amount of cash basis income ~~of~~plus taxable fringe benefits received by, the Debtor from all sources, including salary, equity distributions, unspecified donations, proceeds from litigation claims after litigation expenses, and other sources net of direct expenses, after deducting estimated taxes, health insurance, and Domestic Support Obligations. The Disbursement Agent has the sole authority to review the Debtor's annual income and deductions as ~~defined in the Bankruptcy Code~~ well as FSS financials to ensure all income is reported and all deductions are appropriate hereunder.  Payments for Disbursement Agent expenses shall be deducted from the initial funding of the 30% Net Proceeds of the Non-exempt Asset liquidation; then from Plan Income prior to calculations for Distributions. Plan Income shall also include, after the payment of senior classes as well as all Administrative Expense Claims and Priority Claims, the net proceeds from liquidating the Non-Exempt Assets and all Cash contributed by the Debtor to the FSS Trust on or after the Effective Date. For the avoidance of doubt, Plan Income shall not include amounts paid by the FSS Trust pursuant to the FSS Plan.

1.64.   ~~1.63.~~ **"Plan Supplement"** shall mean those certain documents and schedules to be filed no later than seven (7) days prior to the Confirmation Hearing, which shall include the identity of the Disbursement Agent and related agreements, the terms of any proposed settlements with Related Parties and schedules of assumed and rejected contracts to the extent applicable.

1.65.   **"Plan Term"** shall mean the period from the Effective Date through 120 months from the Effective Date, as may be extended pursuant to Section 13.03 hereof, unless otherwise determined by a Final Order of the Bankruptcy Court.

1.66.   ~~1.64.~~ **"Plan Year"** shall mean the twelve month period beginning with the first day of the month following the Effective Date.

1.67.   **"Priority Tax Claim"** means any Claim against the Debtor that, if Allowed, would be entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.68.   ~~1.65.~~ **"Professional"** means a Person defined as a professional person in sections 327 or 1103 of the Bankruptcy Code who has been employed pursuant to an order of the Bankruptcy Court in this chapter 11 case and any professional seeking compensation or reimbursement of costs and expenses in connection with this chapter 11 case pursuant to section 503(b)(4) or 1129(a)(4) of the Bankruptcy Code.

1.69.   ~~1.66.~~ **"Rejection Bar Date"** means the day that is thirty (30) days after the entry of the Confirmation Order.

1.70.   ~~1.67.~~ **"Rejection Damage Claim"** means a Claim by a party to an Executory Contract with the Debtor that has been rejected by the Debtor pursuant to this Plan or a prior Final Order of the Bankruptcy Court entered in this case.

1.71.   ~~1.68.~~ **"Related Parties"** means those certain individuals or companies related to the Debtor via blood, marriage, or ownership as identified on **Schedule B**.

9

1.72. *"Rental Property"* means that certain real property owned by the Debtor located in Travis County, Texas which as of the date of this Plan is occupied by an individual tenant who is not a Related Party.

1.73. 1.69. *"Secured Claim"* means a Claim that is secured by a security interest in or a lien on property of the Estate to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the Claim Holder. Secured Claims shall include Claims secured by security interests or liens junior in priority to existing security interests or liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property after giving effect to all security interests or liens senior in priority.

1.70.

1.74. *"Secured Tax Claim"* means a Claim by a governmental unit for the payment of a tax assessed against property of the Estate and that is secured as of the Effective Date by a Lien against such property, which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the property securing such Claim.

1.71.

1.75. *"Schedules"* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement have been or may be supplemented or amended.

1.76. 1.72. "*United States Trustee*" means the United States Trustee appointed under Section 591, Title 28, United States Code to serve in the Southern District of Texas.

1.77. 1.73. *"Unsecured Claim"* means a Claim that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim or a Non-Tax Priority Claim.

1.78. 1.74. "*Voting Record Date*" means the date on which an Order conditionally approving the Disclosure Statement under Section 1125 of the Bankruptcy Code is signed.

## ARTICLE II:

## UNCLASSIFIED CLAIMS

2.01.  **Administrative Claims.**

(a)  **Time for Filing Administrative Claims.**  The Holder of any Administrative Claim that is incurred, accrued, or in existence prior to the Effective Date, other than (i) a Fee Claim, (ii) an Allowed Administrative Claim, or (iii) a liability incurred in the Ordinary Course of Business must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before thirty (30) days

after the Effective Date.  Such request must include at a minimum (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim.  Failure to timely and properly file and serve the request required under this Section shall result in the Administrative Claim being forever barred and discharged.  Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party and the Debtor within thirty (30) days after the filing of the applicable request for payment of an Administrative Claim.

(b)    **Time for Filing Fee Claims.**  Any Person who holds or asserts an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application within sixty (60) days after the Effective Date.  Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being forever barred and discharged. No Fee Claim will be deemed Allowed until an order allowing the Fee Claim becomes a Final Order.  Objections to Fee Applications must be filed and served pursuant to the Bankruptcy Rules on the Debtor and the Person to whose application the objections are directed or made within thirty (30) days after the filing of the Fee Application subject to objection.  No hearing may be held on a specific Fee Application until the foregoing objection period with respect to that Fee Application has expired.

(c)    **Allowance of Administrative Claims.**  An Administrative Claim with respect to which a request for payment is required and has been properly filed pursuant to Section 2.01(a) of the Plan shall become an Allowed Administrative Claim if no timely objection is filed.  If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.  An Administrative Claim that is a Fee Claim, and with respect to which a Fee Application has been properly filed and served pursuant to Section 2.01(b) of the Plan, shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.

(d)    **Payment of Allowed Administrative Claims.**  Except to the extent that a Holder of an Allowed Administrative Claim has been paid prior to the Effective Date with respect to Administrative Claims against the Debtor, or agrees to a different treatment, each Holder of an Allowed Administrative Claim (other than Allowed Administrative Claims incurred in the Ordinary Course of Business, which are paid pursuant to Section 2.01(e) below) shall receive from the Debtor, in full satisfaction, release and discharge of and exchange for such Administrative Claim, and after the application of any retainer or deposit held by such Holder, Cash equal to the Allowed amount of such Administrative Claim within ten (10) Business Days after the Allowance Date with respect to such Allowed Administrative Claim.

(e)    **Administrative Claims Incurred in the Ordinary Course of Business.** Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtor during the Bankruptcy Case (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes, or alleged Administrative Claims arising in contract or tort) shall not be required to file any request for payment of such Claims.  Each Administrative Claim incurred in the Ordinary Course of Business of the Debtor will be paid  by the Debtor pursuant to the terms and conditions of the transaction giving rise to such Administrative Claim, without any further action by the Holder of such Administrative Claim. The Debtor reserves and shall have the right to object before the Objection Deadline to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such

claim until such time as any objection is resolved pursuant to a settlement or a Final Order.

**2.02.   Priority Tax Claims.**

Except to the extent that an Allowed Priority Tax Claim has been paid or otherwise satisfied prior to the Initial Distribution Date (which shall occur only if reasonably determined by the Debtor to be not material in amount with respect to the Debtor's obligations under the Plan), each Holder of an Allowed Priority Tax Claim, in full satisfaction, release, settlement, and discharge of and exchange for such Claim, shall receive from the Debtor (a) deferred Cash payments over a period not exceeding five (5) years after the Petition Date in an aggregate principal amount equal to the Allowed amount of such Priority Tax Claim, plus interest, from the Petition Date through the date such Claim is paid in full, on the unpaid portion thereof at the rate of interest determined under applicable nonbankruptcy law as of the calendar month in which the Confirmation Date occurs, in equal annual installments with the first payment to be due on the later of (i) the Initial Distribution Date or (ii) five (5) Business Days after the date when a Priority Tax Claim becomes an Allowed Priority Tax Claim, and subsequent payments to be due on each anniversary of the Initial Distribution Date, or (b) such other less favorable treatment to which such Holder and the Debtor agree in writing.  Notwithstanding the foregoing, (a) any Claim or demand for payment of a penalty (other than a penalty of the type specified in Bankruptcy Code section 507(a)(8)(G)) shall be Disallowed pursuant to the Plan and the Holder thereof shall not assess or attempt to collect such penalty from the Debtor or from any of the assets, and (b) provided that the Debtor has otherwise complied with the terms and provisions of the Plan, the Debtor shall have the right to pay any Allowed Priority Tax Claim, or any unpaid balance of such Claim, in full, at any time after the Effective Date, without premium or penalty.

**2.03.   Domestic Support Obligations.**

On the Effective Date, the Debtor shall make any payments that may be required to comply with any post-petition unfunded obligations on account of any Domestic Support Obligations, as may be required for the Debtor to be current with respect to such Domestic Support Obligations as of the Effective Date as required pursuant to section 1129(a)(14) of the Bankruptcy Code.  After the Effective Date the Debtor shall timely make all payments on account of Domestic Support Obligations to the parties entitled to receive such payments, in each case at the times and in the amounts required by the agreements and orders evidencing such Domestic Support Obligations, as such agreements may from time to time be modified in accordance with applicable state law.

**2.04.   U.S. Trustee Fees.**

The Debtor shall continue to remit to the office of the United States Trustee all appropriate post confirmation monthly reports for all relevant time periods until the Bankruptcy Case is closed by order of the Bankruptcy Court or converted to a case under chapter 7 of the Bankruptcy Code. The Debtor shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for all quarters as applicable and shall continue to remit quarterly fee payments based on all disbursements, until the Bankruptcy Case is closed by order of the Bankruptcy Court, or converted to a case under chapter 7 of the Bankruptcy Code.

**ARTICLE III:**

12

## CLASSIFICATION OF CLAIMS

### 3.01.   Introduction.

All Claims, except Administrative Claims, are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims have not been classified.

The Plan contemplates separate Classes for the Debtor for voting and ~~distribution~~Distribution purposes.  To the extent a Class contains one or more subclasses, each such subclass is deemed  to be a separate Class for all purposes under the Bankruptcy Code and the Plan.

Except for the unclassified Claims discussed in Article II above, Section 3.02 of the Plan sets forth a designation of Classes of all Claims in accordance with Bankruptcy Code section 1122(a).  A Claim is classified in a particular Class only to the extent any portion of the Claim qualifies within the description of the Class and is classified in a different Class to the extent any portion of the Claim qualifies within the description of that different Class.  If a Claim is acquired or transferred, the Claim shall be placed in the Class in which it would have been  placed if it were owned by the original Holder of such Claim.  A Claim is also placed in a particular Class for the purpose of receiving Distributions only to the extent that such Claim is an Allowed Claim in that Class, and such Claim has not been paid, satisfied or released before the Effective Date.

### 3.02.   Claims Against the Debtor.

(a)    Class 1:  Non-Tax Priority Claims

(b)    Class 2:  Priority Tax Claims

(c)    Class 3:  Secured Claim of Bank of America

(d)    Class 4:  Secured Claim of Security Bank of Crawford

(e)    Class 5:  Unsecured "Opt-In Settlement" Claims

(f)    Class 6:  General Unsecured Claims

(g)    Class 7:  Administrative Convenience Claims

## ARTICLE IV

## IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS

### 4.01.   Unimpaired Claims

Claims against the Debtors in Classes 1, 2, 3, and 4 are not impaired under the Plan, and the Holders of those Claims are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are thus not entitled to vote on the Plan.

**4.02.   Impaired Claims**

Claims against the Debtor in Classes 5, 6, and 7 are impaired under the Plan, and the Holders of those Claims are entitled to vote to accept or reject the Plan.

**4.03.   Controversy Concerning Impairment**

In the event of a controversy as to whether any Claim or any Class of Claims is impaired under the Plan, the Bankruptcy Court will determine the controversy, after notice and a hearing.

<u>**ARTICLE V**</u>

**TREATMENT OF CLAIMS**

**5.01.  Non-Tax Priority Claims – Class 1**

On or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Non-Tax Priority Claim, each Holder of such Allowed Non-Tax Priority Claim shall receive from the ~~Disbursing~~Disbursement Agent, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Non-Tax Priority Claim, (y) Cash in an amount equal to the Allowed amount of its Non-Tax Priority Claim, or (z) such other, less favorable treatment to which such Holder and the Debtor agrees in writing.  To the extent an Allowed Non-Tax Priority Claim entitled to priority treatment under 11 U.S.C. §§ 507(a)(4) or (5) exceeds the statutory cap applicable to such Claim, such excess amount shall be treated as a Class 6 General Unsecured Claim against the Debtor.

**5.02. Priority and Secured Tax Claims – Class 2**

With respect to any Allowed Priority Tax Claim, to the extent not already paid or otherwise satisfied, on or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive from the Debtor in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (x) Cash equal to the Allowed Amount of its Allowed Priority Tax Claim, plus interest thereon at the rate provided under applicable non-bankruptcy law pursuant to Section 511 of the Bankruptcy Code from the Petition Date through the date such Claim is paid in full, or (z) such other, less favorable treatment as may be agreed upon in writing by such Holder and the Debtor.

The Holder of a Secured Tax Claim for ad valorem taxes for any tax year from 2023 and thereafter shall retain all rights and remedies for payment thereof in accordance with applicable non-bankruptcy law.

14

Notwithstanding any other provision of the Plan, each Holder of an Allowed Secured Tax Claim shall retain its Lien on any Collateral that secures its Claim or the proceeds of such Collateral (to the extent such Collateral is sold by the Debtor, free and clear of such Lien) to the same extent and with the same validity and priority as such Lien held as of the Petition Date until (a) the Holder of such Allowed Secured Tax Claim (i) has been paid Cash equal to the value of its Allowed Secured Tax Claim and/or (ii) has received a return of the Collateral securing its Allowed Secured Tax Claim, or (iii) has been afforded such other treatment as to which such Holder and the Debtor have agreed upon in writing, or (b) such purported Lien has been determined by a Final Order to be invalid or avoidable.  To the extent that a Secured Tax Claim exceeds the value of the interest of the Estate in the property that secured such Claim, such Claim shall be deemed Disallowed pursuant to Bankruptcy Code section 502(b)(3).

If the Debtor fails to timely make any payment to a Holder of an Allowed Secured Tax Claim as required under Section 5.02 of the Plan, the affected Holder of an Allowed Secured Tax Claim may send written notice of default to the Debtor.  If the default is not cured within twenty-one (21) days after notice of default is mailed, such Holder may proceed with any remedies for collection of amounts due under applicable non-bankruptcy law without further order of the Bankruptcy Court.

### 5.03.  Secured Claim of Bank of America – Class 3

(a)      Allowance.  The Allowed amount of the Class 3 Secured Claim shall be equal to the aggregate of (1) $26,354.73, plus (2) accrued and unpaid interest at the Contract Rate from the Petition Date until the Rental Property is sold and such claim is paid in full, less any payments made on account of such Claim from and after the Petition Date that are required to be applied as payments of principal pursuant to an Order of the Bankruptcy Court.

(b)      Treatment.  Except to the extent that the Holder of the Allowed Class 3 Secured Claim agrees to less favorable treatment of such Allowed Class 3 Secured Claim, the Holder of the Allowed Class 3 Secured Claim shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 3 Secured Claim, Cash in an amount equal to such Allowed Class 3 Secured Claim on the later of (i) the Effective Date, or (ii) the date the Rental Property is sold and the Debtor has received the Net Proceeds of such sale in immediately available funds. As of the Effective Date, the Debtor's obligations under the loan documents giving rise to the Allowed Class 3 Secured Claim, shall be reinstated and Bank of America shall retain its lien rights pending sale of the Rental Property and payment of the Class 3 Claim in full.

### 5.04. Secured Claim of Security Bank of Crawford – Class 4

(a)      Allowance.  The Allowed amount of the Secured Claim of Security Bank of Crawford shall be equal to the aggregate of (1) $80,161.04, plus (2) accrued and unpaid interest at the Contract Rate from the Petition Date until the Effective Date, less any payments made on account of such Claim from and after the Petition Date and applied to the principal amount of such Claims as required by the Bankruptcy Code. Payments are currently being made in accordance with the relevant loan documents by FSS and are scheduled to continue under the FSS Plan.

(b) Treatment. From and after the Effective Date, the Debtor shall reinstate his existing guarantor obligations under the applicable loan documents with respect to the Class 4 Claim of Security Bank of Crawford, secured by the existing collateral, until such time as the loan obligations are paid in full.

**5.05. "Opt-In Settlement" Unsecured Claims – Class 5**

(a) Allowance. On the Effective Date, the Opt-In Settlement Unsecured Claims shall consist of the Claims of the Electing Plaintiffs. ~~Such Claims shall be paid the greater of (x) their percentage share of the Minimum Annual Payment or (y) the Income Stream Payment on an annual basis over a five (5) year term, with a payment of 25% of the Debtor's Plan Income over an additional five (5) years. Class 5 shall also receive 70% of the net proceeds from the sale of non-exempt assets. Each Electing Plaintiff shall have an Allowed Claim in the amount set forth to such person's name on Exhibit A hereto (which shall be filed under seal). No further litigation with respect to conduct occurring on or prior to the Confirmation Date shall be pursued on behalf of Electing Plaintiffs against the Debtor or any related party. The Debtor may fully satisfy his obligations to the Holders of Allowed Class 5 Claims under the Plan at any time during the ten year period following the Effective Date by paying the net present value of the remaining Minimum Annual Payment due to such Holders. The Disbursement Agent shall have reasonable audit and information rights with respect to the Debtor's income information at the expense of the Electing Plaintiffs. In addition, in the event the Debtor's payments exceed the Minimum Annual Payment for any year, such "overage" amount shall be carried forward for a maximum of two years thereafter to count towards the Minimum Annual Payment in those two years.~~

1) Each Electing Plaintiff shall receive Cash in the amount of:

   i) such Electing Plaintiff's Electing Plaintiff Pro Rata Share of 70% of the Net Proceeds from the sale or other monetization of Non-Exempt Assets, as soon as reasonably practicable following the receipt of such Net Proceeds; and

   ii) from the Effective Date until the year in which the Payment Trigger occurs, the greater of such Electing Plaintiff's (x) Minimum Annual Distribution or (y) Plaintiff Pro Rata Share of the Income Stream Payment on an annual basis. The Electing Plaintiffs shall cease receiving Distributions under this Plan beginning the year following the occurrence of the Payment Trigger; provided; that Electing Plaintiffs may continue to receive payments under the FSS Plan and FSS Trust to the extent applicable. Payments under this paragraph shall be made on or before the first Business Day in May of each year following the Effective Date.

The Net Proceeds from the liquidation of the Non-Exempt Assets including Cash paid by the Debtor to the Disbursement Agent on the Initial Distribution shall reduce the Minimum Annual Distribution for the first Plan Year.

Formatted: Font: 11 pt

Formatted: Normal, Line spacing: single, Allow hanging punctuation

Formatted: Font: +Headings CS (Times New Roman), 12 pt

Formatted: Font: +Headings CS (Times New Roman)

Formatted: Indent: Left: 0.67", Keep with next

Formatted: Font: +Headings CS (Times New Roman), 12 pt

Formatted: Font: +Headings CS (Times New Roman)

Formatted: Indent: Left: 0.79", First line: 0"

Formatted: Font: +Headings CS (Times New Roman)

Formatted: Font: 11 pt

Formatted: Normal, Line spacing: single, Allow hanging punctuation

2)    Each Electing Plaintiff shall have an Allowed Claim in the amount set forth next to such person's name on Exhibit A hereto. No further litigation with respect to conduct occurring on or prior to the Confirmation Date shall be pursued on behalf of Electing Plaintiffs against the Debtor or any Related Party.

(b)    Treatment.  The Opt-In Settlement Unsecured Claims treatment shall be in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim. Such Claims shall be discharged after payment of ten (10) year term period unless such Claims payments are satisfied earlier. Should such Claims be satisfied sooner under the terms of the Plan, a discharge shall be granted at that time.made as set forth herein. Also, for each year the Plan is not in which no uncured Plan Default occurs, 10% of each Opt-In Settlement Unsecured Claim shall be waived and forever discharged.  However, whatever Opt-In Settlement Unsecured Claims that are not paid under the Plan or waived and discharged pursuant to the preceding sentence, shall be deemed to be non-dischargeable without further court process in the event of a final, uncured Plan Default. The Debtor, the Disbursement Agent and the Electing Plaintiffs will work cooperatively to determine the most tax efficient method of distribution, which may include the Debtor directing FSS to make Income Stream Payments from FSS or from the FSS Trust to the extent practicable.

(c)    Settlement Injunction.

1)    As consideration for the concessions made by the Electing Plaintiffs herein, the Debtor agrees that, without first obtaining the permission of all Electing Plaintiffs, the Debtor may not in any way publicly discuss the 2012 mass shooting at Sandy Hook Elementary School, the Electing Plaintiffs, the Electing Plaintiffs' family members (including victims of the Sandy Hook shooting) or any Claims or litigation arising from or relating to Debtor's past statements about the Sandy Hook mass shooting—other than to state that he has no comment about such events or individuals. The Debtor will take all reasonable steps to ensure that FSS does not make a public statement that the Debtor would be prohibited from making under this paragraph. Failure by Debtor to comply with this provision constitutes a Plan Default enforceable by the Electing Plaintiffs.

2)    So long as no Plan Default has occurred and is continuing, the Electing Plaintiffs agree that they will not seek to have Debtor or FSS removed from any forums or platforms (electronic or physical), unless such forums or platforms are owned or controlled by Electing Plaintiffs.  So long as no Plan Default has occurred and is continuing, the Electing Plaintiffs agree that they will not seek to have any statements by Debtor or FSS removed from any forums or platforms (electronic or physical), unless such forums or platforms are owned or controlled by Electing Plaintiffs. Notwithstanding anything else to the foregoing, Electing Plaintiffs shall not disparage the Debtor or FSS and will make no public comment on the legal claims giving rise to the

Electing Plaintiffs' Allowed Claims, or the treatment thereof under the Plan. If Electing Plaintiffs do not comply with the terms set out in this paragraph, Debtor may seek relief from the Bankruptcy Court, including injunctive relief.

3)   The Bankruptcy Court retains post-confirmation jurisdiction to determine any such disputes.

**5.06.  General Unsecured Claims – Class 6**

~~Upon allowance of such Claims~~Following the Allowance Date of each General Unsecured Claim, after the resolution of any existing appeals or litigation of such Claims, and except to the extent that a Holder of an Allowed General Unsecured Claim agrees, under the terms of a writing executed by such Holder, to less favorable treatment of such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive from the Debtor, in exchange for such Allowed General Unsecured Claim, such Holder's GUC Pro Rata Share of (x) prior to ~~the remaining percentage share~~occurrence of the Plan Trigger, the amount of the Income Stream Payment remaining after Electing Plaintiffs are paid, ~~for a period of five (5) years, with a payment of the remaining pro rata share~~ pursuant to the terms of ~~25% of the Debtor's Plan~~Section 5.05 of the Plan, and (y) beginning the year following the occurrence of the Payment Trigger, all of the Income ~~over an additional five (5) years.~~Stream Payment. Non-Electing Plaintiffs will be enjoined against collecting against the Debtor during the ~~term of the~~ Plan Term; however, such Non-Electing Plaintiffs may, to the extent such Holder has a non-dischargeable claim, collect against the Debtor's non-exempt assets, unless such Claim is otherwise stayed, ~~at~~following the end of the ~~ten (10) year period. However, any~~Plan Term. Any Claims of Non-Electing Plaintiffs shall be reduced by any payments received by such claimants under the Plan.

~~The initial Distribution to Holders of Allowed General Unsecured Claims shall be made by the Debtor within thirty (30) days of the Effective Date from cash available after payment of the Allowed Administrative Claims (other than Administrative Claims in the Ordinary Course of Business), Allowed Non-Tax Priority Claims, Allowed Priority and Secured Tax Claims, Opt-In Settlement Unsecured Claims, and Administrative Convenience Claims, including, without limitation, as may be permitted under Article 10 hereof.~~
After the Initial Distribution, annual payments shall be made on or before the first Business Day in the fifth month of the Plan Year.

**5.07.  Administrative Convenience Claims – Class 7**

Each Holder of an Allowed Unsecured Claim in the amount of $5,000 or less, or such Holders as agree to reduce their Claim to $5,000, shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim, a Cash payment ~~on~~as soon as reasonably practicable following the Effective Date in the full amount of such Allowed Claim. Insiders with Allowed Claims may opt to settle their Claims to be paid as an Administrative Convenience Claims Holder, but such Claim will be limited to $5,000, and be deemed fully satisfied upon payment of that amount.

**ARTICLE VI**

**MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN**

**6.01.   The ~~Settlement~~Settlements**

(a)   **Opt-In Settlement Unsecured Claims:** Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, in consideration for the classification, ~~distribution~~Distribution, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of the Opt-In Settlement Unsecured Claims, which shall be binding upon Persons receiving Distributions under the Plan, the Debtor, and any other party treated under the Plan.

As of the Effective Date, all litigation in any jurisdiction, including dischargeability litigation and any appeals thereof, amongst Holders of Opt-In Settlement Unsecured Claims including, without limitation, all litigation listed on Exhibit B, shall each be terminated with prejudice and without further costs to any party, and all necessary parties shall execute and deliver any related satisfactions of judgment or other documentation necessary to terminate such litigation and release any related judgment liens arising in or on account of such matters. The Debtor and the Holders of Opt-In Settlement Unsecured Claims agree that the resolution of such litigation takes into account a good faith evaluation by all parties of the costs and merits of such litigation, and that the dismissal of such ongoing litigation (including without limitation any pending appeals) as set forth herein is a good faith reasonable resolution of such litigation, in exchange for the consideration provided.

~~Furthermore, the Debtor and the Holders of Opt-In Settlement Unsecured Claims mutually agree not to disparage one another by publishing to any third party, whether verbally or in writing, derogatory statements that could be construed as damaging or injurious to the other party's business, reputation, or property, and/or that are false. If any Holder of an Opt-In Settlement Unsecured Claim breaches this term and causing financial injury to the Debtor, such party shall forfeit all rights to receive the Minimum Annual Payment. If the Debtor breaches this provision, and causes financial injury to any such Holder, such breach would be deemed a Plan default for which remedies may be had pursuant to Section 13.03 of this Plan. The Court retains post-confirmation jurisdiction to determine any such disputes.~~

(b)   **Claims Against Related Parties:**  Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, in consideration for the benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of the estate's Claims against Related Parties, which shall be binding upon Persons receiving Distributions under the Plan, the Debtor, and any other party treated under the Plan. Evidence in support of such settlements will be presented at the Confirmation Hearing. The proposed settlement and resolution of such Claims against Related Parties considers a good faith evaluation by all parties of the costs and merits of such litigation, as well as the collectability of any potential judgments in favor of the estate.

Entry of the Confirmation Order shall constitute a determination by the Bankruptcy Court pursuant to Bankruptcy Rule 9019 that the terms and conditions of the foregoing ~~settlements~~ settlements and the termination of all litigation (including, without limitation, any appeals) required thereunder is reasonable, and in the best interests of the Debtor, his Estate, and all Creditors of the Debtor and other parties in interest.

**6.02.   Sources of Cash and Terms of Payment for Plan Distributions**

The sources of Cash necessary for the Debtor to pay Allowed Claims that are to be paid in Cash by the Debtor under the Plan will be: (a) the Cash of the Debtor on hand as of the Effective Date, minus a reserve ~~of~~ totaling $250,000 (to account for three (3) months of reasonable living expenses~~;~~ as well as certain post-confirmation legal expenses); and (b) Net Proceeds from the sale of the Debtor's ~~non-exempt assets~~ Non-Exempt Assets; and (c) Cash generated or received by the Debtor after the Effective Date from any other source, including but not limited to Cash flow to the Debtor from AEJ Trust and refunded trust expenses.

~~For meeting the minimum payment to "Opt-In Settlement Claims" of Electing Plaintiffs under Class 5, funds from plan payments of FSS may be included for calculating this minimum, but~~ Funds from payments under the FSS Plan made by the FSS Trust shall be used solely with respect to the calculation of the Minimum Plan Distribution and are not being relied upon for purposes of confirming this Plan.

On the Effective Date, all Avoidance Actions not resolved will vest in the Disbursement Agent or, at the option of the Debtor, the FSS Trust, and ~~the Debtor~~ they will have the exclusive right to prosecute, settle, or compromise all Avoidance Actions~~, in return for which the Debtor or potential defendant~~. Any such net payments resolving any Avoidance Actions shall ~~make a Cash payment, which will be included within and comprise a portion of the Cash generated or received by~~ constitute Net Proceeds of Non-Exempt Assets for purposes of the ~~Debtor after the Effective Date.~~ Plan.

**6.03.   Payments.**

(a)   The ~~Debtor~~ Disbursement Agent shall remit payment of the following Allowed Claims in accordance with the limitations on the amount of such payments as set forth in the Plan, and the other terms and conditions of the Plan~~, as set forth below~~:

(i)   Administrative Claims, other than Administrative Claims Incurred in the Ordinary Course of Business as set forth in Section 2.01(~~e~~d).

(ii)   Non-Tax Priority Claims as set forth in Section 5.01.

(iii)   Administrative Convenience Claims as set forth in Section 5.07.

(iv)   General Unsecured Claims as set forth in Section 5.06.

~~(b)   The Debtor shall remit payment of the following Allowed Claims in accordance with the limitations on the amount of such payments as set forth in the Plan:~~

20

(i)(v)   Administrative Claims Incurred in the Ordinary Course of Business as set forth in Section 2.01(e).

(ii)(vi)  Priority Tax Claims as set forth in Section 2.02.

(iii)(vii)   Domestic Support Obligations as set forth in Section 2.03.

(iv)(viii)   U.S. Trustee fees as set forth in Section 2.04.

(v)(ix)  Secured Tax Claims as set forth in Section 5.02

(vi)(x)  Secured Claim of Bank of America as set forth in Section 5.03.

(xi)   Secured Claim of Security Bank of Crawford as set forth in Section 5.04.

(vii)(xii)   Unsecured Claims of Opt-In Settlement Claimants as set forth in Section 5.05.

**6.04.   Post Effective Date Management.**

The Debtor shall continue to manage and control his assets after the Effective Date, and to. To the extent this Plan provides for the sale of the Debtor's assets, the DebtorDisbursement Agent shall manage and control the sale of such assets and shall liquidate such assets as expeditiously as reasonably possible, consistent with the terms of this Plan and the goal of maximizing the value thereof for the benefit of the Holders of Claims secured by a Lien on those assets and other stakeholders.

**ARTICLE VII**

**TREATMENT OF EXECUTORY CONTRACTS**

**7.01.   General Treatment of Executory Contracts: Rejected**

The Plan constitutes and incorporates a motion under Bankruptcy Code sections 365 and 1123(b)(2) to (a) reject, as of the Effective Date, all Executory Contracts to which the Debtor is a party, except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and (b) assume all Executory Contracts identified in any schedule of assumed contracts that may be included in the Plan Supplement.

The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date. Notice of the Confirmation Hearing shall include the proposed Cure Amount with respect to any Executory Contract that may be assumed under the Plan, and the Notice of the Confirmation Hearing shall also notify all non-debtor parties to Executory Contracts that all Executory Contracts will be rejected under the Plan except for any Executory Contract that was terminated before the Effective

21

Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and any Executory Contracts identified in the Plan Supplement to be assumed. For the avoidance of doubt, to the extent the Debtor's premarital agreement could be characterized as an executory contract, such agreement shall be assumed under this Plan.  The Debtor does not anticipate any cure costs associated with such agreement.

**7.02.   Cure Payments and Release of Liability**

Except as otherwise provided in a Final Order, pursuant to Bankruptcy Code sections 365(a), (b), (c) and (f), all Cure Claims that may require payment under Bankruptcy Code section 365(b)(1) under any Executory Contract that is assumed pursuant to a Final Order shall be paid by the Debtor as an Allowed Administrative Claim within fifteen (15) Business Days after such order becomes a Final Order with respect to Cure Claims that are not Disputed or within fifteen (15) Business Days after a Disputed Cure Claim is Allowed by agreement of the parties or a Final Order.  If a party to an assumed Executory Contract has not filed an appropriate pleading on or before the date of the Confirmation Hearing disputing any proposed Cure Claim, the cure of any other defaults, the promptness of the Cure Claim payments, or the provision of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters.  Any party to an assumed Executory Contract that receives full payment of a Cure Claim shall waive the right to receive any payment on a Class 6 General Unsecured Claim that relates to or arises out of such assumed Executory Contract.

**7.03.   Bar to Rejection Claims**

If the rejection of an Executory Contract pursuant to Section 7.01 of the Plan gives rise to a Claim by any non-Debtor party or parties to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Estate, or the agents, successors, or assigns of the foregoing, unless a proof of such Claim is filed with the Bankruptcy Court and served upon the Debtor on or before the Rejection Bar Date.  Any Holder of a Claim arising out of the rejection of an Executory Contract that fails to file a proof of such Claim on or before the Rejection Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtor, the Estate or any of their assets and properties.  Nothing contained herein shall extend the time for filing a proof of Claim for rejection of any Executory Contract rejected before the Confirmation Date.

**7.04.   Rejection Claims**

Any Rejection Damage Claim arising from the rejection of an Executory Contract shall  be treated as a General Unsecured Claim pursuant to the Plan, except as limited by the provisions of Bankruptcy Code sections 502(b)(6) and 502(b)(7) and mitigation requirements under applicable law.  Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Rejection Damage Claim or shall be deemed a waiver by the Debtor or any other party in interest of any objections to such Rejection Claim if asserted.

**ARTICLE VIII**

**CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE; EFFECT OF**

**PLAN CONFIRMATION**

**8.01.   Conditions Precedent to Confirmation Date**

The occurrence of the Confirmation Date of the Plan is subject to satisfaction or waiver by the Debtor of each of the following conditions:

(a)   The Bankruptcy Court shall have entered a Final Order, in form and substance acceptable to the Debtor, approving the Disclosure Statement;

(b)   The proposed Confirmation Order shall be in form and substance acceptable to the Debtor; and

~~(c)   FSS Plan confirmation and Effective Date; and~~

~~(d)~~(c)   All of the schedules, documents, supplements and exhibits to the Plan shall have been filed in form and substance acceptable to the Debtor.

**8.02.   Conditions Precedent to the Effective Date**

The occurrence of the Effective Date is subject to the occurrence or waiver by the Debtor of each of the following conditions precedent:

(a)   The Confirmation Date shall have occurred;

(b)   The Confirmation Order shall have become a Final Order in form and substance acceptable to the Debtor; and

(c)   ~~The foregoing conditions to the Effective Date may be waived in whole or in part, but only if waived by the Debtor, without notice to any other parties in interest or the Bankruptcy Court, without any hearing or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.~~ FSS Plan confirmation shall have occurred and the FSS Plan shall become effective.

Without limiting the foregoing, the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order so long as there is no stay in effect and the Debtor so elects in writing.  The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation ~~Order without the giving of any notice to any objecting party~~ so long as there is no stay in effect if the Debtor so elects in writing.  In the event of any such appeal, the Debtor or any other party in interest may seek the dismissal of such appeal on any grounds.  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.  The Debtor will file with the Bankruptcy Court, and serve a copy on all parties in interest, a notice of the Effective Date within five (5) Business Days after its occurrence.

**8.03.   Consequences of Non-Occurrence of Effective Date**

23

If the Effective Date does not timely occur, the Debtor reserves all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and/or that the Plan be null and void in all respects.  If the Bankruptcy Court enters an order vacating the Confirmation Order, the time within which the Debtor may assume and assign, or reject, all Executory Contracts not previously assumed, assumed and assigned, or rejected shall be  extended for a period of thirty (30) days after the date the Confirmation Order is vacated or as further extended by the Bankruptcy Court.

<u>ARTICLE IX</u>

**EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE**

**9.01.   Binding Effect**

From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, all former, present, and future Holders of Claims, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Case.  Confirmation of the Plan binds each Holder of a Claim to the terms and conditions of the Plan, whether or not such Holder has accepted the Plan.

**9.02.   Vesting of Assets**

Except as otherwise provided in this Plan and the Confirmation Order, all property and assets of the Debtor and the Estate shall vest in the Debtor in accordance with the terms of the Plan, in each case free and clear of all Claims, Liens, encumbrances, charges and other interests.  Commencing on the Effective Date, the Debtor may deal with such property and assets and conduct his business without any supervision by, or permission from, the Bankruptcy Court or the Office of the United States Trustee, and free of any restriction imposed on the Debtor by the Bankruptcy Code or by the Bankruptcy Court during the Bankruptcy Case, other than any restrictions contained in the Plan and the Confirmation Order.

**Trusts:** For the avoidance of doubt, the Debtor would clarify through this Plan that certain Trusts are not property of the estate and therefore are not available for distribution to Creditors. Specifically, the Alexander E. Jones Descendent and Beneficiary Trust (the "Descendent Trust"), of which the Debtor is a grantor, is not available to satisfy Creditor Claims.  The Debtor is not a beneficiary nor a trustee for the Descendent Trust. Though the Descendent Trust holds certain condominium assets, the Debtor asserts these trust assets are not available to satisfy estate Claims. Second, the Green Leaf Trust: this trust is also not within the control of the Debtor, nor is he a beneficiary, or entitled to direct the Green Leaf Trust.  Therefore, the assets of the Green Leaf Trust are not available to satisfy estate Claims.  With respect to any remaining trusts, where the Debtor either is a beneficiary and/or maintains some level of control, (x) any assets available for distribution from such trusts as of the Effective Date shall be deemed Non-Exempt Assets subject to liquidation by the Disbursement Agent under the Plan, and (y) any distribution to the Debtor of income generated by such trusts following the Effective Date shall be included as Plan Income under the Plan. See **Schedule A.**

24

**9.03.    Assertion of Causes of Action, Defenses and Counterclaims**

Except as set forth in the Plan or the Confirmation Order, effective as of the Effective Date, with respect to the Debtor, without further action by any party, all Causes of Action, and all defenses, counterclaims, setoffs, and rights related thereto, shall be and shall be deemed to be vested in the Debtor.  From and after the Effective Date, the Debtor shall have the exclusive right to prosecute, settle, or compromise any Cause of Action vested in or transferred to the Debtor under the Plan.  Except to the extent otherwise set forth in the Plan, the Debtor shall retain and may prosecute and enforce all other defenses, counterclaims, and rights that it has asserted or could assert against or with respect to all Claims asserted against the Debtor or property of his Estate.  No claim, right, Cause of Action, or other asset shall be deemed waived or otherwise forfeited by virtue of the Debtor's failure to identify such property in the Schedules or the Disclosure Statement unless otherwise ordered by the Bankruptcy Court.

Except as provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtor may have or which the Debtor may choose to assert on behalf of the Debtor's Estate under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative  relief against the Debtor, and (ii) the turnover of any property of the Debtor's Estate.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan.  The Debtor shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which the Debtor had immediately prior to the Petition Date fully as if the Bankruptcy Case had not been commenced, and all of the Debtor's legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date by the Debtor to the same extent as if the Bankruptcy Case had not been commenced.

**9.04    Discharge of Debtor**

*Except as expressly provided in this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtor that arose before the Effective Date.  Except as expressly provided in this Plan or the Confirmation Order, on the Discharge Date (and subject to its occurrence), entry of the Confirmation Order shall be deemed to act as a discharge and release under Bankruptcy Code section 1141(d)(1)(A) of all Claims against the Debtor and his assets, arising at any time before the Effective Date, regardless of whether a proof of Claim was filed, whether the Claim is Allowed, or whether the Holder of the Claim votes to accept the Plan or is entitled to receive a Distribution under the Plan, provided, however, that in no event shall occurrence of the Discharge Date discharge  the Debtor from any obligations remaining under the Plan as of the Discharge Date.  No later than five (5) business days after the occurrence of the Discharge Date, the Debtor shall file with the*

*Bankruptcy Court a notice of the occurrence of the Discharge Date, and serve such notice on all creditors.  In addition, following the occurrence of the Discharge Date, the Debtor shall file a motion seeking entry of an order of discharge after notice and a hearing, which motion (and the discharge) shall be granted upon a showing that the Debtor has made all payments required under the Plan. Except as expressly provided in this Plan or the Confirmation Order, any Holder of a discharged Claim will be precluded from asserting against the Debtor or any assets of the Debtor any other or further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date. Except as expressly provided in this Plan or the Confirmation Order, and subject to the occurrence of the Discharge Date, the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtor to the extent allowed under Bankruptcy Code section 1141, and the Debtor will not be liable for any Claims and will only have the obligations that are specifically provided for in this Plan.  Notwithstanding the foregoing, nothing contained in the Plan or the Confirmation Order shall discharge the Debtor from (i) any debt excepted from discharge under Bankruptcy Code section 523 by Final Order of the Bankruptcy Court unless the Holders of such Claims have agreed to same.*

*Notwithstanding the foregoing, Allowed Claims of Electing Plaintiffs under Class 5 that have selected Opt-In Settlement Unsecured Claims shall be discharged after ~~either 1) payment of claim treatment under Class 5 for the ten (10) year period or 2) payment of such Claims at any time during the ten-year period following the Effective Date at the net present value of the remaining amount due to such Holders.~~receipt of payments that give rise to the occurrence of the Payment Trigger.  Such payment shall be in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Claim.*

*Notwithstanding anything to the contrary set forth in this Section 9.04, Non-Electing Plaintiffs under Class 6 will be enjoined against collecting against the Debtor during the ~~term of the~~ Plan Term; however, such Non-Electing Plaintiffs may collect against the Debtor at the conclusion of the ~~ten (10) year~~ Plan ~~period~~Term if they have a Final Order allowing their Claim and finding such Claim non-dischargeable.*

**9.05   Injunction**

*Except as otherwise provided in the Plan, the Confirmation Order shall provide that from and after the Effective Date with respect to the Debtor, all Holders of Claims ~~with the exception of the Non-Electing Plaintiffs,~~ against the Debtor are permanently enjoined from taking any of the following actions against the Debtor, or any of his property on account of any such Claim:  (a) commencing or continuing in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or Lien; (d) asserting a setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; ~~and~~or (e) commencing or continuing, in any manner or in any place, any action that does not conform to or comply with, or is inconsistent with, the provisions of this Plan~~; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of this Plan or the Confirmation Order.~~  If allowed by the Bankruptcy Court, any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in*

*appropriate circumstances, may recover punitive damages, from the willful violator. Should a Plan Default have occurred and is continuing, this Plan Injunction shall lift in accordance with a Bankruptcy Court order determining the existence of such Plan Default.*

~~The~~ *Notwithstanding the foregoing, the Non-Electing Plaintiffs whose claims have been determined to be non-dischargeable by an order of a court of competent jurisdiction that has not been stayed, shall be enjoined from taking action against the Debtor as set forth above ~~only for the term of~~ solely during the Plan Term, unless otherwise set forth herein.*

### 9.06   Term of Bankruptcy Injunction or Stays

Unless otherwise provided herein or in an order of the Bankruptcy Court (including without limitation the Confirmation Order), all injunctions or stays provided in the Bankruptcy Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, with respect to the Debtor.  Upon the Effective Date, the injunction provided in Section 9.05 of the Plan shall be effective.

### 9.07   Effectuating Documents; Further Transactions; Timing

The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously, unless otherwise provided in the Plan.

### ARTICLE X

### OBJECTIONS TO CLAIMS; DISTRIBUTIONS

### 10.01.   Objections to Claims

Any party in interest, including the Debtor, may file objections to Claims (other than Claims that have been previously Allowed or that are Allowed under the Plan).  The Debtor (or his designees, successors and assigns) are not obligated to object to any Claim but will nevertheless have standing to object to any such Claim from and after the Effective Date, if they so elect.  Nothing in this Section is intended to limit the right of any party to object to Claims.

### 10.02.   Objection Deadline

Except as set forth in Sections 2.01(a) and 2.01(b) of the Plan with respect to Administrative Claims and Fee Claims, any objections to Claims must be filed no later than the Objection Deadline.  An objection to a Claim will be deemed properly served on the Holder thereof if service is effected by any of the following methods:  (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto; (c) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of the Holder in

the Bankruptcy Case; or (d) if no proof of Claim has been filed, by first class mail, postage prepaid, on the Holder of such Claim at the address set forth in the Schedules.

**10.03.    Settlement of Objections to Claims**

From and after the Effective Date, the Debtor is authorized to approve compromises of all Claims, Disputed Claims, and Liens pursuant to Bankruptcy Rule 9019(b) and to execute necessary documents, including Lien releases (subject to the written consent of the party having such Lien) and stipulations of settlement, compromise, or release, without further order of the Bankruptcy Court; provided that the Debtor cannot settle or compromise the Claim of a Holder of a General Unsecured Claim in an amount in excess of the amount set forth on Exhibit A to this Plan without notice and a hearing.

**10.04.    No Interest on Claims**

Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim for the period from the Petition Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim.  To the extent any Holder of an Allowed Claim is entitled to interest accruing on or after the Petition Date, such interest shall accrue and be payable at the applicable Contract Rate.

**10.05.    Setoffs by the Debtor; No Waiver**

Except as otherwise set forth in the Plan, the Debtor may but shall not be required to, set off against or recoup from any Claim or any payment or Distribution to be made by the Debtor pursuant to the Plan in respect of such Claim, any Claim or Cause of Action of any nature whatsoever that the Debtor may have to the fullest extent permitted under applicable law.  Any dispute related to the setoff or recoupment rights of the Debtor shall be determined by the Bankruptcy Court.  Neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claims or Causes of Action that the Debtor may have against such Holder or any affiliate of such Holder.

**10.06.    Procedures for Treating and Resolving Disputed and Contingent Claims**

(a)    **No Distributions Pending Allowance.**  Notwithstanding any other provision of the Plan, Distributions shall be made only to Holders of Allowed Claims.  No Holder of a Claim will receive any Distribution on account thereof until and to the extent that its Claim becomes an Allowed Claim.  To the extent a Claim under the Plan is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtor (in the first instance) on account of a Cause of Action, or which has not otherwise become an Allowed Claim, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Cause of Action has been settled, withdrawn, or determined by a Final Order or such other court having jurisdiction over the matter, or such Claim has otherwise been Allowed as set forth in the Plan.

28

In determining the amount of a pro rata Distribution due to the Holders of Allowed Claims payable by the Debtor, the ~~Debtor may, in his discretion,~~ Disbursement Agent will make the pro rata calculation as if all Claims of the applicable Class were Allowed in the full amount claimed or in the amount estimated under Section 10.06(b) hereof. ~~The Debtor, in his discretion, may~~ For the purposes of claims held by Plaintiffs that are not Allowed by this Plan, Disbursement Agent shall reserve for Claims in the amounts set forth on Exhibit A hereto until such Claim is Allowed or Disallowed in whole or in part by Final Order.  The Disbursement Agent shall withhold Distributions otherwise due hereunder to the Holder of a Disputed Claim until the Objection Deadline, to enable the Debtor or any other party in interest to file a timely objection thereto.

(b)      **Claim Estimation.**  The Debtor or Disbursement Agent may request estimation or limitation of any Claim that is not Allowed under this Plan pursuant to Bankruptcy Code section 502(c) regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection; *provided, however,* that the Bankruptcy Court will determine (i) whether such Claims are subject to estimation pursuant to Bankruptcy Code section 502(c) and (ii) the timing and procedures for such estimation proceedings, if any.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim,  as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Plan or the Bankruptcy Court.

(c)      **Distribution Reserve Accounts.**

(i)      On or after the Effective Date, the ~~Debtor~~ Disbursement Agent may create one or more separate Distribution Reserve Accounts as is appropriate from the Cash to be distributed to or for the benefit of the Holders of Disputed Claims, Administrative Claims, Non-Tax Priority Claims, Administrative Convenience Claims, or other Claims which have not been Allowed, in each case pending the allowance thereof. Each Distribution Reserve Account may be segregated by Class or, as applicable, by Administrative Claims, Non-Tax Priority Claims, Administrative Convenience Claims, or other Claims.   A Holder of a Claim will not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve Account to pay such Claim unless permitted by a Final Order.  As stated above, nothing in the Plan will be deemed to entitle the Holder of a Disputed Claim to post-petition interest on such Claim, if Allowed, unless otherwise required under the Plan.

(ii)      The amount of any Cash allocable to, or retained on account of Claims in the Distribution Reserve Accounts for those Claims that are to be paid in full under the Plan shall be equal to the lesser of (a) the amount of such Claim as estimated pursuant to the procedure in section 10.06(b) of the Plan; (b) the amount of such Claim as asserted by the Holder; or (c) an amount to be agreed upon between the Debtor and the Holder of such

29

Claim. The amount of any Cash allocable to, or retained on account of, any other Claims in the Distribution Reserve Accounts shall be as reasonably determined by the ~~Debtor~~Disbursement Agent from time to time in accordance with the reasonable discretion of the ~~Debtor~~Disbursement Agent, subject to all other terms and conditions of the Plan.

(iii)  For the avoidance of doubt, the Disbursement Agent shall reserve distributions in a separate Distribution Reserve Account for Class 6 General Unsecured Claims of Non-Electing Plaintiffs which have not yet been Allowed, in the amounts allocated to them pursuant to the treatment set forth herein.

(d)  **Distributions After Allowance of Claims.**  Distributions to each Holder of a Claim that is the subject of a Distribution Reserve Account, to the extent it becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that govern Distributions to such Holders of Claims in the applicable Class. Unless otherwise provided in the Plan, as promptly as practicable after the date on which such Claim becomes an Allowed Claim, and in any event not later than ten (10) Business Days after such Claim becomes an Allowed Claim, the ~~Debtor~~Disbursement Agent shall distribute to the Holder thereof from the applicable Distribution Reserve Account, if any, any Distribution that would have been made to such Holder had its Claim been an Allowed Claim on the date that Distributions were previously made to Holders of Allowed Claims in the applicable Class, without interest (except as otherwise provided by the Plan) and net of any setoff and/or any required withholding of applicable taxes. After all such Claims have been resolved as may be required by a Final Order or other final resolution, any remaining Cash in a relevant Distribution Reserve Account shall be distributed in accordance with the other provisions of the Plan.

(e)  **Allowance of Claims Subject to Bankruptcy Code Section 502(d).**  Allowance of Claims will in all respects be subject to the provisions of Bankruptcy Code section 502(d), except as provided by a Final Order or a settlement among the relevant parties.

**10.07.  Distributions Under the Plan**

(a)  **Means of Cash Payment.**  Except as otherwise provided in the Plan, Cash payments made pursuant to the Plan shall be in U.S. dollars and may be made, at the option of and in the sole discretion of the ~~Debtor~~Disbursement Agent, by checks drawn on or wire transfers from a domestic bank; provided, that in the case of foreign Holders of Allowed Claims, Cash payments may be made, at the option of and in the sole discretion of the Debtor, in such currency and by such means as are necessary or customary in a particular jurisdiction.

(b)  **Delivery of Distributions.**  All Distributions to any Holder of an Allowed Claim shall be made by the ~~Distribution~~Disbursement Agent at the address of each such Holder as set forth on the proof of Claim filed by such Holder (or at the last address of such a Holder known to the Debtor if no proof of Claim is filed or if the ~~Debtor~~Disbursement Agent has been notified in writing of a change of address. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the ~~Debtor~~Disbursement Agent is notified in writing of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest. Any Holder of an Allowed Claim whose Distribution is undeliverable must make demand for such Distribution to the

~~Debtor~~Disbursement Agent in writing on or before 120 days after the date such undeliverable Distribution was initially made, after which the Distribution shall be retained by the ~~Debtor~~Disbursement Agent for Distribution to other Holders of Claims pursuant to the terms of the Plan, and any claim by such intended recipient with respect to such undeliverable Distribution shall be discharged and forever barred.  The ~~Debtor~~Disbursement Agent may employ or contract with other Persons as reasonably determined by the ~~Debtor~~Disbursement Agent to assist in or make the Distributions required under the Plan.  **To the extent that the ~~Debtor~~Disbursement Agent is required by applicable law to file information returns regarding payments to creditors with taxing authorities including, but not limited to, the Internal Revenue Service, the Debtor shall obtain an executed Internal Revenue Service Form W-9 (W-8 for non-US entities and individuals) from any or all Holders of a Claim prior to making any Distribution.  Should any Holder of a Claim not provide the ~~Debtor~~Disbursement Agent with such document within 60 days of receipt of the request for a W-9 or W-8, as applicable, then the ~~Debtor~~Disbursement Agent shall provide written notice to such Holder of the failure to provide a W-9 or W-8, as applicable, and 30 additional days to provide such information.  Should any Holder of a Claim not timely provide an executed W-9 or W-8, as applicable, within the ninety (90) day period referenced above, the ~~Debtor~~Disbursement Agent may file an objection to the Claim of such non-responding Holder based on the non-responding Holder's failure to provide the W-9 or W-8 (with all required information) and shall serve the objection on such non-responding Holder via first class mail.  If the non-responding Holder of the Claim fails to respond to the objection or fails to provide to the ~~Debtor~~Disbursement Agent the W-9 or W-8, as applicable (with all required information) within thirty (30) days after the objection is filed, the Bankruptcy Court may disallow such Claim for all purposes and any funds to be paid such Holder of a disallowed Claim shall be distributed in accordance with the terms of the Plan.  The ~~Debtor~~Disbursement Agent shall serve any order disallowing the non- responding Holder's Claim within five (5) business days after entry of such order.  The ~~Debtor's~~Disbursement Agent's right to object to a Claim is limited to the failure of a Holder of a Claim to provide to the ~~Debtor~~Disbursement Agent a W-9 or W-8, as applicable.  The Holder of such Disallowed Claim shall be forever barred from pursuing the Debtor or Disbursement Agent for payment of such Claim.**

(c)      **Fractional Dollars; De Minimis Distributions.**  Any other provision of the Plan notwithstanding, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  No payment of less than twenty-five dollars ($25.00) shall be made with respect to any Allowed Claim, and the ~~Debtor~~Disbursement Agent shall retain any such payment and shall deposit same into a pool for redistribution to other Holders of Allowed Claims in the same Class.

(d)      **Unclaimed Property.**  Any Distributions that are unclaimed shall be distributed by the ~~Debtor~~Disbursement Agent to other Holders of Claims pursuant to the terms of the Plan.

(e)      **Payments on Business Days**.  In the event any payment, Distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on or as soon

as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

(f)     **Voting Record Date**.  As of the Voting Record Date, any applicable books and records for each of the Classes of Claims as may be maintained by Debtor shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims.  The ~~Debtor~~Disbursement Agent will have no obligation to recognize any transfer or sale of Claims on or occurring after the Voting Record Date and will be entitled for all purposes herein, and subject to all of the provisions of the Plan relating to the timing of the allowance of Claims, to recognize and make Distributions on account of Allowed Claims only to those Holders who are identified as Holders of Claims as of the Voting Record Date.  Except as otherwise provided in a Final Order, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 prior to the Voting Record Date will be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer may not have expired by the Voting Record Date.

**10.08.  Duty to Disgorge Overpayments**

To the extent the Holder of any Allowed Claim receives more than what such Holder is permitted to receive under the Plan, such Holder shall immediately return such excess payment(s) to the ~~Debtor~~Disbursement Agent, failing which, the Debtor or Disbursement Agent may sue such Holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

**10.09 Duties of the Disbursement Agent**

The Disbursement Agent shall make the ~~distributions~~Distributions required under the Plan. The Disbursement Agent shall be entitled to review the financial information of FSS and the Debtor in accordance with the terms of the ~~Distribution Agreement~~agreement entered into with the Disbursement Agent. The Disbursement Agent shall also be responsible for the sale or other monetization of Non-Exempt Assets under this Plan.

**10.10 ~~Distribution~~Disbursement Agent Expenses**

The ~~Distribution~~Disbursement Agent shall establish a bank account, initially funded with 30% of the ~~net proceeds~~Net Proceeds from the sale of ~~non-exempt assets~~Non-Exempt Assets which may be used to fund the initial expenses of the ~~Distribution~~Disbursement Agent, including payment of the ~~Distribution~~Disbursement Agent's fees, on an ongoing basis.  Additional Disbursement Agent Expenses shall be paid directly by the Debtor.

**ARTICLE XI**

**ACCEPTANCE OR REJECTION OF THE PLAN**

**11.01.  Impaired Classes Entitled to Vote**

Each impaired Class entitled to vote to accept or reject the Plan will vote separately.  A

32

Holder of a Claim or Interest as to which an objection has been filed and that has not been temporarily allowed for purposes of voting on the Plan may not vote.  A Holder of a contingent or unliquidated Claim may vote on the Plan in an amount based on the portion, if any, of the Claim shown as non-contingent, liquidated, and undisputed in the Schedules, or equal to $1.00 if not so shown.  Plaintiffs may vote in the amounts set forth on **Exhibit C.**

### 11.02.  Acceptance by an Impaired Class

A Class of Claims that is entitled to vote to accept or reject the Plan shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.  Any Ballot that is not properly completed and timely received by the Balloting Deadline will not be counted.

### 11.03   Elimination of Vacant Classes.  Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

### 11.04.  Section 1129(b) Cramdown

If any impaired Class of Claims fails to accept the Plan in accordance with Bankruptcy Code section 1129(a), the Debtor will seek confirmation of the Plan by the Bankruptcy Court pursuant to the "cramdown" provisions in Bankruptcy Code section 1129(b).  The Debtor asserts that the Plan provides for fair and equitable treatment of all Classes of Claims.  The Debtor reserves the right to amend the Plan as may be necessary to obtain confirmation of the Plan  under Bankruptcy Code section 1129(b).

### ARTICLE XII
### RETENTION OF JURISDICTION

### 12.01.  Jurisdiction

Until the Bankruptcy Case is closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction as is legally permissible under applicable law, including under Bankruptcy Code sections 105(a) and 1142, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against the Debtor and to enforce all Causes of Action and any related counterclaims, crossclaims, and/or third-party claims over which the Bankruptcy Court otherwise has jurisdiction.  Nothing contained in the Plan will prevent the Debtor from taking any action as may be necessary to enforce any Cause of Action that may  exist on behalf of the Debtor and that may not have been enforced or prosecuted by the Debtor.

### 12.02.  Examination of Claims

Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim and the reexamination of Claims that have been allowed for the purposes of voting, and the determination of any objections as may be filed to Claims. The failure by the Debtor to object to, or to examine, any Claim for the purposes of voting will not be deemed a waiver of the Debtor's right to object to, or to re-examine, such Claim in whole or in part, unless such claim is Allowed under the Plan.

**12.03.  Determination of Disputes**

The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine (a) all questions and disputes regarding title to the Debtor's assets, (b) disputes concerning the allowance of Claims, (c) all Causes of Action, controversies, disputes, or conflicts, whether or not subject to any pending action, as of the Confirmation Date, to recover property pursuant to the provisions of the Bankruptcy Code, and (d) all disputes and controversies regarding the operation, implementation, and interpretation of the Plan, the Confirmation Order, and any agreements that are identified or implement the Plan or the Confirmation Order.

**12.04.  Additional Purposes**

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, occurrence of the Effective Date, and/or substantial consummation of the Plan, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of or related to the Bankruptcy Case and the Plan to the fullest extent permitted by applicable law, including but not limited to jurisdiction to:

(a)    hear and determine any modification of the Plan or the Plan Supplement pursuant to Bankruptcy Code section 1127, to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary or appropriate to carry out the purposes and effects thereof;

(b)    hear and determine disputes, issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the transactions contemplated thereunder, the Confirmation Order, the Disclosure Statement, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

(c)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of or related to the Bankruptcy Case or the Plan;

(d)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered or approved in the Bankruptcy Case;

(e)    hear and determine all disputes involving the existence, nature, or scope of the discharge, plan defaults, injunctions, releases, exculpations, and indemnifications granted pursuant to the Plan or the Confirmation Order;

(f)     hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions, performance or payments provided for or contemplated in the Plan or the Confirmation Order, or any agreement, instrument or other document governing or relating to any of the foregoing;

(g)     construe and apply any findings of fact and/or conclusions of law made in or in connection with the Confirmation Order;

(h)     adjudicate matters arising in the Bankruptcy Case, including matters relating to the formulation and consummation of the Plan;

(i)     enter any orders, including injunctions, as are necessary to enforce title, rights, and powers of the Debtor or to impose any limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem necessary;

(j)     hear and determine all questions and disputes regarding title to or recovery of the Debtor's assets and property of the Debtor;

(k)     enter a Final Decree closing any or all of the Bankruptcy Case;

(l)     correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Supplement, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, the Plan Supplement, and the Confirmation Order including   the adjustment of the date(s) of performance under the Plan, the Plan Supplement, and any other documents related thereto if the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Supplement, and such other documents may be substantially realized thereby;

(m)     enter, implement or enforce such orders as may be appropriate if the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(n)     hear and determine all applications for compensation and reimbursement of expenses of Professionals or any other Person under the Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtor shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

(o)     hear and determine issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of the Plan;

(p)     hear and determine issues concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(q)     hear and determine all matters regarding the assumption or rejection of Executory Contracts, including any disputes concerning Rejection Claims or Cure Claims;

(r)     hear and determine any objection to any Claim (including any Administrative Claim), including the allowance, classification, priority, secured status, compromise, estimation, subordination, or payment thereof;

(s)     allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim (including any Administrative Claim) and to re-examine Claims that have been allowed for purposes of voting;

(t)     hear and determine any Cause of Action and any collection or settlement matters related thereto;

(u)     hear and determine any disputes or litigation regarding the validity, priority, or extent of any Lien and any Claim associated therewith; and

(v)     hear and to determine any other matter related hereto and not inconsistent with the Plan, the Confirmation Order, the Bankruptcy Code, or Title 28 of the United States Code.

**12.05.  Failure of the Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Case, including the matters set forth in this Article XII, the provisions of this Article XII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

**13.01.  General Notices**

Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served to the parties and addresses set forth below by certified mail, return receipt requested, hand delivery, overnight delivery, first class mail, or fax transmission, and (c) deemed to have been given or made when actually delivered or received:

.to the Debtor:

Alexander Jones
[TBD]
2407 S. Congress Ave. E-144
Austin, TX 78704

With a copy to:

Vickie L. Driver
Crowe & Dunlevy, P.C.

36

2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaservice@crowedunlevy.com

Shelby A. Jordan
JORDAN & ORTIZ, P.C.
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Email:  sjordan@jhwclaw.com

**13.02.  Exemption From Transfer Taxes**

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest; or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance, filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment. The Confirmation Order shall direct all appropriate governmental officials or agents to forgo the collection of any such tax or assessment and to accept such documents delivered under the Plan without the imposition or payment of any charge, fee, governmental assessment, or tax.

**13.03.  Asserting and Curing Default Under the Plan**

Except as otherwise provided in the Plan, if the Debtor defaults under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan), any Creditor or party in interest desiring to assert a default will provide the Debtor and his counsel with written notice of the alleged ~~default~~Plan Default.  The Debtor will have thirty (30) days from receipt of written notice to cure the alleged ~~default~~Plan Default.  If the ~~default~~Plan Default is not cured, any Creditor or party in interest affected by such Plan Default may then file with the Bankruptcy Court, and serve on the Debtor and his counsel, a motion to compel compliance with the applicable provision of the Plan, or otherwise seeking such remedies as may be available to such party in interest under the Bankruptcy Code  or other applicable law.  The Bankruptcy Court, on finding a ~~material default~~Plan Default, will issue orders compelling compliance with the pertinent provisions of the Plan, or providing such other relief as the Court may order.  Nothing in the Plan shall be deemed a waiver on the part of any party in interest to seek to assert any such remedies as described in this Section 13.04 upon default by the Debtor under the Plan.

Assets valued at less than $25,000 at the time of receipt by the Debtor, or discovered more than five years after the Effective Date are deemed nonmaterial, and shall not give rise to a Plan Default. Material non-exempt assets discovered by the Debtor post-Effective Date shall be submitted to the Disbursement Agent for distribution in accordance with the Plan. Material and intentional misrepresentations, if properly declared under the Plan, may cause a Plan Default herein. In the event the non-exempt asset was known to the Plaintiffs, their agents or attorneys, the

Official Committee of Unsecured Creditors, their agents or attorneys, such asset will be deemed ineligible to cause a Plan Default under this paragraph.

Pursuant to the Opt-In Settlement terms with the Class 5 Electing Plaintiffs, if the Debtor can make 80% of the minimum payments for a given year, but not 100%, then the remaining amount for that year may be amortized over the next two years without causing giving rise to a Plan default Default.  However, if the Debtor fails to make minimum payments for two (2) years in a row, a Plan default Default will have occurred, and parties shall have the any Electing Plaintiff may seek remedies with respect to such Plan Default as set forth in the preceding paragraph herein. Should the Debtor become incapacitated in a way that prevents him from working and he is unable to make payments under the Plan, such missed payments may be added to the end of the Plan term Term, and the Plan term Term shall be extended accordingly. If the Debtor, or his personal representative, asserts that he has become in capacitated incapacitated under the terms of this provision, he must file a notice with the Bankruptcy Court, which may be objected to by any party in interest, and any dispute over same will be determined by the Bankruptcy Court.

**13.04.  Revocation or Withdrawal of the Plan**

The Debtor reserves the right to revoke and/or withdraw the Plan at any time before the Confirmation Date.  If the Debtor revokes or withdraws this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor or any other Person.

**13.05.  Modification of the Plan**

The Debtor reserves the right to modify the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and (b) the Debtor shall have complied with Bankruptcy Code section 1125.  The Debtor further reserves the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, (b) the Debtor shall have complied with Bankruptcy Code section 1125, and (c) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Bankruptcy Code section 1129.  A Holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless,  within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

**13.06.  Computation of Time**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

**13.07.  Due Authorization**

Each and every Holder of an Allowed Claim that receives a Distribution under the Plan

38

warrants that it is authorized to accept, in consideration of such Claim, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

### 13.08.  Implementation

The Debtor may execute such documents, take such other actions, and perform all acts necessary or appropriate to implement the terms and conditions of the Plan without the need for further Bankruptcy Court approval.

### 13.09.  Execution of Documents

Upon application by the Debtor, the Bankruptcy Court may issue an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument or document, and to perform any act, necessary for the consummation or implementation of the Plan.

### 13.10.  Bankruptcy Restrictions

From and after the Effective Date with respect to the Debtor other than as set forth in the Plan, the Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code (e.g., sections 363 or 364) except as the Bankruptcy Code may specifically provide otherwise.  No monthly operating reports will be filed after the Effective Date; however, the Debtor shall provide the U.S. Trustee such financial reports as may be required by law.

### 13.11.  Limited Plan Exculpation.

None of Debtor's court employed professionals shall have or incur any liability to the Debtor or any Holder of a Claim for any act or omission in connection with, related to, or arising out of, the Bankruptcy Case, negotiations regarding or concerning the Disclosure Statement or the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Bankruptcy Case, and the pursuit of confirmation of the Plan.  Nothing contained in this paragraph shall be deemed to exculpate any party identified herein from any conduct post- Effective Date.

### 13.12.  Ratification

The Confirmation Order will ratify all transactions effected by the Debtor during the pendency of the Bankruptcy.

### 13.13.  Integration Clause.

This Plan is a complete and integrated statement of the binding agreement among the Debtor, the Holders of Claims, and other parties in interest upon the matters herein. Parol evidence shall not be admissible in an action regarding the Plan or its provisions.

### 13.14   Interpretation

Unless otherwise specified, all Section, Article and exhibit references in the Plan are to the respective Section in, Article of or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The headings of the Articles, paragraphs, and Sections of the Plan and table of contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation.  Nothing herein shall be deemed as a judicial admission by the Debtor.  Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

### 13.15   Severability of Plan Provisions

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable before the Confirmation Date, the Bankruptcy Court, upon the request of the Debtor, will have the power to alter or interpret the Plan to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation, provided that the Debtor consents.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.16   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

**ALEXANDER E. JONES**

/s/ Alexander E. Jones DRAFT

Alexander E. Jones

5486863.v1

40