**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **ALEXANDER E. JONES,** | § | **Case No. 22-33553** |
| | § | |
| **Debtor.** | § | |
| | § | |

**NOTICE OF FILING SOLICITATION VERSION OF THE AMENDED
DISCLOSURE STATEMENT WITH RESPECT TO DEBTOR'S
PLAN OF REORGANIZATION**

PLEASE TAKE NOTICE OF THE FOLLOWING[1]:

1.      On December 21, 2023, the Debtor in the above-captioned case, filed his proposed *Disclosure Statement with Respect to Debtor's Plan of Reorganization* (as amended, altered, modified, or supplemented, the "Disclosure Statement") [Dkt. No. 533] with the United States Bankruptcy Court for the Southern District of Texas (the "Court").

2.      On January 23, 2024, the Debtor filed a *Proposed Amended Disclosure Statement with Respect to Debtor's Plan of Reorganization* (the "Amended Disclosure Statement") [Dkt. No. 569] with the Court.

3.      On January 25, 2024, the Court entered the *Order (I) Approving the Disclosure Statement on a Conditional Basis; (II) Approving the Solicitation Procedures; (III) Approving the Form of Ballot; And (IV) Approving Certain Dates and Deadlines in Connection with Solicitation of the Debtor's Plan* [Dkt. No. 579].

5.      The Debtor hereby files this solicitation version of the Amended Disclosure Statement (the "Solicitation Version"). A blackline comparing the Solicitation Version of the Amended Disclosure Statement to the proposed Amended Disclosure Statement is attached hereto as Exhibit A, respectively.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**NOTICE OF FILING SOLICITATION VERSION OF THE AMENDED DISCLOSURE STATEMENT WITH RESPECT TO DEBTOR'S PLAN OF REORGANIZATION - Page 1**

Dated:  January 29, 2024

**CROWE & DUNLEVY, P.C.**

By: */s/ Vickie L. Driver*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**ATTORNEYS FOR ALEXANDER E. JONES**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon all parties registered to receive notices via the Court's ECF noticing system on this 29th day of January, 2024.

*/s/ Vickie L. Driver*
Vickie L. Driver

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **ALEXANDER E. JONES,** | § | |
| | § | |
| Debtor. | § | **Case No. 22-33553 (CML)** |
| | § | |

**DEBTOR'S AMENDED DISCLOSURE STATEMENT WITH RESPECT TO DEBTOR'S
PLAN OF REORGANIZATION**

**CROWE & DUNLEVY, P.C.**

Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile: (361) 888-5555
Email:  sjordan@jhwclaw.com
               aortiz@jhwclaw.com

**ATTORNEYS FOR ALEXANDER E. JONES**

Dated: January 29, 2024

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   NOTICE TO HOLDERS OF CLAIMS ......................................................................... 1

III.  EXPLANATION OF CHAPTER 11 ............................................................................. 3

    *A.*   *Overview of Chapter 11* ..................................................................................... 3

    *B.*   *Plan of Reorganization* ...................................................................................... 3

IV.  HISTORY OF THE DEBTOR, LITIGATION, AND THE CHAPTER 11 CASE ............. 5

    *A.*   *The Debtor* ........................................................................................................ 5

    *B.*   *The Debtor's Assets* .......................................................................................... 5

    *C.*   *Factors Leading to Chapter 11 Filing* .............................................................. 8

        *1.*   *Sandy Hook Litigation* ........................................................................... 8

    *D.*   *Commencement of the Chapter 11 Case* ............................................................ 9

    *E.*   *Significant Events Since Commencement of Chapter 11 Case* ......................... 9

        1.   Continuation of the Debtor's Business ................................................... 9

        2.   Retention of Professionals ...................................................................... 9

        3.   Schedules and Statements of Financial Affairs .................................. 10

        4.   Motion for Summary Judgment ........................................................... 10

        5.   Committee Discovery Efforts .............................................................. 12

        6.   Filing of Creditors' Plan ..................................................................... 12

        7.   Filing of the Debtor's Plan .................................................................. 12

    *F.*   *Summary of Claims Filed or Asserted Against the Debtor* ........................... 12

V.   SUMMARY OF THE PLAN ...................................................................................... 12

    *A.*   *General Overview* ........................................................................................... 12

    *B.*   *Summary of the Plan* ....................................................................................... 13

    *C.*   *Classification and Treatment* ......................................................................... 13

        1.   Unclassified Claims ............................................................................. 13

        2.   Classified Claims ................................................................................. 15

    *D.*   *Means of Implementation of the Plan* ............................................................ 20

        1.   Settlement ............................................................................................. 20

        2.   Sources of Cash and Terms of Payment for Plan Distributions .......... 22

        3.   Payments .............................................................................................. 22

        4.   Claim Objections/Resolution ............................................................... 23

        5.   Assertion of Estate Actions, Defenses, and Counterclaims ............... 23

        6.   Management After the Effective Date .................................................. 24

7. Revesting of Assets ........................................................................ 24

8. Conditions to Confirmation ........................................................... 25

E. *Plan Confirmation Effect* ......................................................................... 25

1. Debtor's Discharge ......................................................................... 25

2. Injunction ........................................................................................ 26

F. *Retention of Jurisdiction* ........................................................................... 27

G. *Modification of Reservation of the Plan* ................................................. 27

H. *Executory Contracts and Unexpired Leases* .......................................... 27

1. General Treatment; Rejected if Not Assumed ........................... 27

2. Cure Payments and Release of Liability ..................................... 27

3. Bar to Rejection Damages ............................................................. 28

4. Rejection Claims ............................................................................. 28

5. Distributions Under the Plan ....................................................... 28

VI. CONFIRMATION OF THE PLAN ........................................................... 29

A. *Solicitation of Votes: Voting Procedures* .............................................. 29

1. Ballots and Voting Deadlines ....................................................... 29

2. Parties in Interest Entitled to Vote ............................................. 30

3. Definition of Impairment ............................................................. 30

4. Impaired Classes Under the Plan ................................................ 31

5. Unimpaired Classes Under the Plan ........................................... 31

6. Vote Required for Class Acceptance ........................................... 31

B. *Confirmation Hearing* .............................................................................. 31

C. *Requirements for Confirmation of a Plan* ............................................. 32

D. *Cramdown* .................................................................................................. 35

VII. RISK FACTORS ........................................................................................ 37

A. *Insufficient Acceptances* ......................................................................... 37

B. *Confirmation Risks* ................................................................................... 37

C. *Post-Confirmation Risks* .......................................................................... 37

VIII. ALTERNATIVE TO CONFIRMATION AND CONSUMMATION OF THE PLAN:
LIQUIDATION ANALYSIS ........................................................................... 38

IX. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ............ 39

A. *Importance of Obtaining Professional Tax Assistance* ....................... 39

B. *Discharge of Indebtedness* ...................................................................... 39

C. *Impact on Holders of Claims Against Debtors* ..................................... 39

D. *Circular 230 Disclosures* .......................................................................... 39

X.    CONCLUSION ........................................................................................................... 40

## I.    INTRODUCTION

Alexander E. Jones (referred to herein as "Jones" or the "Debtor"), submits this Disclosure Statement (the "Disclosure Statement") in connection with the Amended Plan of Reorganization filed by the Debtor, on January 23, 2024 (the "Plan"). This Disclosure Statement is to be used in connection with the solicitation of votes on the Plan. A copy of the Plan is attached hereto as Exhibit A. Unless otherwise defined herein, capitalized terms used herein have the meanings ascribed thereto in the Plan (see Article I of the Plan entitled "Definitions, Construction, and Interpretation").

## II.    NOTICE TO HOLDERS OF CLAIMS

The purpose of this Disclosure Statement is to enable Holders of Claims against the Debtor whose Claims are impaired under the Plan and are entitled to vote on the Plan to make an informed decision in exercising their right to vote to accept or reject the Plan.

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN. PLEASE READ THIS DOCUMENT CAREFULLY.**

On January 24, 2024, the Bankruptcy Court conducted a hearing provisionally approving the Disclosure Statement and subsequently entered an order pursuant to section 1125 of the Bankruptcy Code (the "Disclosure Statement Order") provisionally approving this Disclosure Statement as containing information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor, typical of the solicited holders of Claims against the Debtor, to make an informed judgment with respect to the acceptance or rejection of the Plan. A copy of the Disclosure Statement Order is included in the materials accompanying this Disclosure Statement.

APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT REGARDING THE FAIRNESS OR MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

Each Holder of a Claim entitled to vote to accept or reject the Plan should read this Disclosure Statement and the Plan in their entirety before voting. No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code. Except for the Debtor and his professionals, no person has been authorized to use or promulgate any information concerning the Debtor, his businesses, or the Plan, other than the information contained herein, in connection with the solicitation of votes to accept or reject the Plan. No Holder of a Claim entitled to vote on the Plan should rely upon any information relating to the Debtor, his businesses, or the Plan other than that contained in the Disclosure Statement and

the exhibits hereto. Unless otherwise indicated, the sources of all information set forth herein are the Debtor and his professionals.

**After carefully reviewing this Disclosure Statement, including the attached exhibits, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed ballot and returning the same, to the address set forth on the ballot, in the enclosed return envelope so that it will be received by the Balloting Agent, Vickie Driver, 2525 McKinnon Street, Suite 425, Dallas, TX 75201, no later than 4:00 p.m. prevailing Central Time on February 12, 2024.**

If you do not vote to accept the Plan, or if you are not entitled to vote on the Plan, you may be bound by the Plan if it is accepted by the requisite Holders of Claims. See "Solicitation of Votes; Voting Procedures," "Vote Required for Class Acceptance," and "Cramdown" in Article VI ("Confirmation of the Plan") below.

**TO BE SURE YOUR BALLOT IS COUNTED, YOUR BALLOT MUST BE RECEIVED NO LATER THAN 4:00 P.M. PREVAILING CENTRAL TIME ON FEBRUARY 12, 2024.** For detailed voting instructions and the name, address, and phone number of the person you may contact if you have questions regarding the voting procedures, see "Ballots and Voting Deadline" in Section VI.A.1 below.

Pursuant to section 1128 of the Bankruptcy Code, the Bankruptcy Court will schedule a hearing to consider confirmation of the Plan (the "Confirmation Hearing") between March 25 and 27, 2024in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. The Bankruptcy Court will also set the deadline for parties to file and serve objections, if any, to confirmation of the Plan in the manner described in Section VI.B below under the caption, "Confirmation Hearing."

**THE DEBTOR SUPPORTS CONFIRMATION OF THE PLAN AND URGES ALL HOLDERS OF IMPAIRED CLAIMS TO ACCEPT THE PLAN.**

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

**Competing plans and disclosure statements have been filed in this Chapter 11 Case by the Debtor and the Creditor Plan Proponents—comprising the UCC and the Sandy Hook Plaintiffs. Creditors entitled to vote on each such plan will be asked to evaluate the competing plans and determine whether to vote in favor of either the Debtor's Plan or the Creditors' Plan based on the information provided in the respective disclosure statements, plans and related documents. The Creditor Plan Proponents have requested inclusion in this Disclosure Statement of a statement that the Creditor Plan Proponents disagree with a number of facts and contentions set forth herein and have concerns about the confirmability of the Debtor's Plan, which issues will be addressed at the appropriate time in connection with the confirmation process. The Creditor Plan Proponents' views regarding various issues in this Chapter 11 Case and the best path forward are set forth in detail in the Creditor Plan Proponents' Specific Disclosure Statement and the Creditors' Plan. As such, the Creditor Plan Proponents have requested this general statement regarding the Creditor Plan Proponents' position in lieu of including numerous notes throughout this Disclosure**

Statement indicating points of disagreement.  The Debtor and the Creditor Plan Proponents each reserve all rights in respect of the Debtor's Plan, the Creditors' Plan, the Debtor's Disclosure Statement, and the Creditor Plan Proponents' Specific Disclosure Statement.

## III.    EXPLANATION OF CHAPTER 11

### A.   *Overview of Chapter 11*

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Pursuant to chapter 11, the debtor in possession attempts to reorganize for the benefit of the debtor, its creditors, and other parties in interest.

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor in property as of the date the bankruptcy petition is filed. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession" unless the bankruptcy court orders the appointment of a trustee. In the present chapter 11 case, the Debtor has remained in possession of his property and continued to operate his businesses as a debtor in possession.

The filing of a chapter 11 petition also triggers the automatic stay provisions of the Bankruptcy Code. Section 362 of the Bankruptcy Code provides, *inter alia*, for an automatic stay of all attempts to collect prepetition claims from the debtor or otherwise interfere with its property or business. Except as otherwise ordered by the bankruptcy court, the automatic stay remains in full force and effect until the effective date of a confirmed plan of reorganization.

The formulation of a plan of reorganization is the principal purpose of a chapter 11 case. The plan sets forth the means for satisfying the claims against and interests in the debtor.

Generally, unless a trustee is appointed, only the debtor may file a plan during the first 120 days of a chapter 11 case (the "Exclusive Period"). However, section 1121(d) of the Bankruptcy Code permits the court to extend or reduce the Exclusive Period upon a showing of "cause." After the Exclusive Period has expired, a creditor or any other party in interest may file a plan, unless the debtor has filed a plan within the Exclusive Period, in which case, the debtor is generally given 60 additional days (the "Solicitation Period") during which it may solicit acceptances of its plan. The Solicitation Period may also be extended or reduced by the court upon a showing of "cause."

In this case, the Exclusive Period expired on or about April 1, 2023.

### B.   *Plan of Reorganization*

Although referred to as a plan of reorganization, a plan may provide anything from a complex restructuring of an individual debtor or a debtor's business(es) and its related obligations to a simple liquidation of the debtor's assets. After a plan of reorganization has been filed, the holders of claims against or interests in a debtor are permitted to vote to accept or reject the plan.

Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires the debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. This Disclosure Statement is presented to Holders of Claims against the Debtor to satisfy the requirements of section 1125 of the Bankruptcy Code.

If all classes of claims and equity interests accept a plan of reorganization, the bankruptcy court may nonetheless decide not to confirm the plan unless the court independently determines that the requirements of section 1129 of the Bankruptcy Code have been satisfied. Section 1129 sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests" test and be "feasible." The "best interests" test generally requires that the value of the consideration to be distributed to the holders of claims and equity interests under a plan may not be less than those parties would receive if the debtor were liquidated pursuant to a hypothetical liquidation occurring under Chapter 7 of the Bankruptcy Code. Under the "feasibility" requirement, the court generally must find that there is a reasonable probability that the debtor will be able to meet its obligations under its plan without the need for further financial reorganization.

The Debtor believes that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code, including, in particular, the "best interests" test and the "feasibility" requirement. The Debtor supports confirmation of the Plan and urges all Holders of impaired Claims to accept the Plan.

Chapter 11 does not require that each holder of a claim against a debtor vote in favor of a plan of reorganization in order for the bankruptcy court to confirm the plan. At a minimum, however, the plan must be accepted by a majority in number and two-thirds in amount of those claims actually voting in at least one class of impaired claims under the plan. The Bankruptcy Code also defines acceptance of the plan by a class of equity interests (equity securities) as acceptance by holders of two-thirds of the number of shares actually voting. In the present case, there are no equity interests in the Debtor and only the Holders of impaired Claims who actually vote will be counted as either accepting or rejecting the Plan.

In addition, classes of claims or equity interests that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and thus are not entitled to vote. Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or equity interests in an impaired class. A class is "impaired" if the legal, equitable, or contractual rights attaching to the claims or equity interests of that class are modified in any way under the plan. Modification for purposes of determining impairment, however, does not include curing defaults and reinstating maturity or payment in full in cash. In this case, Holders of certain Claims are not impaired and are conclusively presumed to accept the Plan and are not entitled to vote on the Plan. See "Summary of the Plan — Classification and Treatment — Classified Claims" in section V.C for an identification of impaired and unimpaired Classes of Claims and Interests.

The bankruptcy court may also confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponents of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is

"fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan. The process of confirming a plan under these conditions is known as a "cramdown."

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a class of rejecting claims if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; and (b) with respect to unsecured claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive or retain on account of such junior claim or equity interest any property at all unless the senior class is paid in full.

A plan does not "discriminate unfairly" against a rejecting class of claims if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims, and (b) no senior class of claims is to receive more than 100% of the amount of the claims in such senior class.

The Debtor believes that the Plan has been structured so that it will satisfy these requirements as to any rejecting Class of Claims, and can therefore be confirmed, if necessary, over the objection of any Classes of Claims. The Debtor, therefore, reserves the right to request confirmation of the Plan under the "cramdown" provisions of section 1129 of the Bankruptcy Code. See "Cramdown" in section VI.D below.

## IV.      HISTORY OF THE DEBTOR, LITIGATION, AND THE CHAPTER 11 CASE

### A.   *The Debtor*

The Debtor is a prominent media broadcast personality who has spent over twenty-five years as a talk show host on radio, television, and internet platforms. The Debtor is most famous for hosting The Alex Jones Show, a news show broadcast through Free Speech System, LLC's ("FSS") platform, which currently airs for approximately three to four hours a day, five days a week, and where the Debtor discusses and provides opinion on current national and international events. The Debtor is the founder, manager, and 100% owner of FSS. Most the Debtor's income stems from merchandise and dietary supplement sales that are marketed under the InfoWars brand name.

### B.   *The Debtor's Assets*

As of the Petition Date, the Debtor's primary assets fell into one of three categories: (i) personal property (including automobiles, boats, watches, etc.); (ii) real property (including a lake house, ranch, home, rental property, etc.); and (iii) the Debtor's interests in various business entities, such as FSS.

As of the date of filing of this Disclosure Statement, the Debtor's assets consist of the following: (i) his homestead in Travis County (the "Homestead"); (ii) the lake house in Travis County (the "Lakehouse"); (iii) the ranch in Guadalupe County (the "Ranch"); (iv) the rental property located in Travis County (the "Rental Property"); (v) non-publicly traded stock and

interests in unincorporated business, including interest in an LLC, partnership, and a joint venture; (vi) interests in trusts such as the AEJ 2018 Trust, The Missouri779384 Trust and the Recharge Dynasty Trust;[1] (vii) cash and securities in the amount of approximately $1,065,913.67 located in several accounts; (viii) an income tax refund of $3,885,071.00; (ix) vehicles including the 2017 Ford Expedition, the 2019 Dodge Challenger, and the 2020 Dodge Charger; (x) two boats: the 2015 Regal Boats 24 Fasdeck and 2016 Regal Boats 28 Express, and associated trailers; (xi) household goods and furnishings; (xii) fifty-four (54) firearms; (xiii) other personal items such as electronics, sports equipment, and clothing; and. (xiv) watches or other jewelry; (xv) the contents of several storage facilities; (xvi) interests in certain executory contracts; and (xvii) various claims against third parties that have not yet been valued. The appraised value as of March 24, 2023, was $171,636 for items noted in (ix), (xii), (xiii) and (xiv). All of the addresses for the above-mentioned real property were filed under seal pursuant to the Court's *Order Granting Motion for Entry of an Order Authorizing Debtor to File Schedules* [Docket No. 530].

The Debtor has filed or will file applications to employ brokers to sell, respectively, the Lakehouse and Ranch properties, as well as the contents of several storage facilities, and has filed a motion with the Court to sell personal property such as the golfcarts, cars, and firearms. The Debtor anticipates these motions will be granted in January 2024.

The fair market value of the Debtor's business entities identified in Exhibit B are not readily ascertainable for numerous reasons, including that their value, in large part, depends on the continued personal services and full commitment of the Debtor, as well as the continued operation of FSS. These companies are dependent on the Debtor providing his continued services, and without his constant personal involvement, they would no longer be in a position to generate net revenue. Additionally, the Debtor's business has experienced a sizeable reduction in revenues due to certain negative media publicity and oversaturation of the internet media and supplement industries. In the weeks and months following the Petition Date, the Debtor began taking steps to reduce overhead costs, consolidate expenses and wind down inactive companies so that his overall business operations remain profitable.

The following is a brief description of the operations of the Debtor's wholly owned companies that are currently active and generating income and expenses:

FSS. FSS is presently engaged in the business of producing and syndicating Jones' radio and video talk shows and selling products targeted to Jones' loyal fan base via the Internet. Today, FSS produces the Debtor's syndicated news/talk show (The Alex Jones Show) from Austin, Texas, which airs via the Genesis Communications Network on over 100 radio stations across the United States and via the internet through websites including Infowars.com. On its Infowars.com website

---

[1] The Greenleaf Trust and the Alexander E. Jones Descendant and Beneficiary Trust (the "Other Trusts"), initially set up by Debtor are not listed as Debtor presently has no interests in these trusts. Therefore, the Other Trusts are irrelevant to this Disclosure Statement. RXXCTTGAA Trust is a privacy trust that owns the Debtor's share of his homestead. The UCC claims that RXXCTTGAA has a bank account with $13,954.01.  If this is correct, and the Debtor is the proper beneficiary of those funds, such funds will be made available to Creditors through the payment terms of the Plan. The 2022 Litigation Settlement Trust is not controlled by the Debtor. The Debtor believes that the assets that were transferred to this trust were owned by FSS, not the Debtor.  However, to the extent this trust did hold funds to which the Debtor was the proper beneficiary or owner, such funds would be made available to Creditors through the payment terms of the Plan.

today, FSS makes available to customers dietary supplements, ranging from Vitamin D3 Gummies, Ultimate Immune Support Pack, Pollen Block, and other health products, including Tea Tree Shampoo. The website also has available books, t-shirts, and other products Jones advertises during his radio talk show. The vast majority of FSS revenues comes from sales of dietary supplements which have traditionally been supplied by PQPR Holdings Limited, LLC ("PQPR"), an affiliated entity. As of the filing date of this Disclosure Statement, FSS has 47 employees. FSS has a unique audience that is highly loyal to the Debtor and purchase products based on the Debtor's credibility. Product sales from Infowars.com stores are a significant source of revenue for FSS. Prepetition, the majority of products were sold through PQPR. However, these sales have steadily decreased, and, through the FSS Plan, the goal is that sales will cease flowing through PQPR. Through its online sales channel, FSS currently sells (i) dietary supplements directly purchased by FSS; (ii) dietary supplements purchased by PQPR and the Debtor; and (iii) books, DVDs, t-shirts, and other merchandise purchased by FSS. The allocation of proceeds from the sale of products after credit card processing charges varies depending upon which of the above categories the product falls under.

PQPR. Debtor owns a beneficial interest in PQPR through the 2018 AEJ Trust. The Debtor is both the sole trustee and beneficiary of the 2018 AEJ Trust, which owns 72% of PQPR. PQPR has historically sold products to FSS, which are then sold through the InfoWars website. The Debtor's 72% interest has not been professionally appraised in over five years, and, since the filing of this Case, PQPR's business has significantly diminished. Further, an outstanding lawsuit by FSS against PQPR (the "PQPR Suit")[2] may yield monetary reward for FSS in the event FSS prevails, thereby further depriving PQPR of value. [*See* Adv. No. 23-0217; Amended Complaint at Docket No. 5]. Any value of this entity is based on the ability of the Debtor to sell through FSS, and FSS's *First Amended Plan of Reorganization Under Subchapter V of the Bankruptcy Code* (the "FSS Plan") shows sales of PQPR supplements substantially diminishing over time. As a result, this will degrade any value the Debtor has in PQPR.

Other Entities in Which the Debtor Has Ownership Interest. Certain entities that the Debtor holds full ownership interests in are inactive and have been since the Petition Date. These entities include Guadalupe County Land and Water, LLC; Magnolia Management, LP; Jones Productions; Emric Productions LLC; Jones Report, LLC; Jones Productions, LLC; Magnolia Holdings Limited Partnerships, LLC; Austin Shiprock Publishing, LLC; AEJ Austin Holdings, LLC; IWHealth, LLC; Planet Infowars, LLC; PJLR Holdings, LLC; Prison Planet TV, LLC; RCGJ, LLC; and AEJ Holdings, LLC (the "Inactive Entities"). Some of these entities have forfeited their existence due to failure to pay administrative fees or file documents necessary to ensure these entities' continued existence. There is currently no intention to revive these Inactive Entities.

Parties in interest who desire a more detailed view of the financial conditions of the Debtor's businesses are directed to the Debtor's Monthly Operating Reports and associated amendments [at Docket Nos. 172, 173, 256, 257, 258, 261, 392, 446] and Statements of Financial Affairs and associated amendments [at Docket Nos. 162, 232, 233, 234, 243, 503].

---

[2] The PQPR Suit seeks, *inter alia*, recovery of funds under theories of fraudulent transfer and preference. While PQPR maintains defenses against the PQPR Suit, the outcome is still pending.

### C. ***Factors Leading to Chapter 11 Filing***

#### *1. Sandy Hook Litigation*

The Debtor is a skeptical person and has a general distrust of the government. When the Sandy Hook shooting occurred, the Debtor viewed the official narrative flowing from local government and mainstream media with skepticism, as he does with virtually all news events covered by mainstream media. One day on his show, Jones claimed that, while he did not know what happened, it would not surprise him if the government staged the Sandy Hook shooting to stir chaos that might lead to restrictions on Americans' access to guns. After, Jones continued to cover the event's official narrative with skepticism, pointing out inconsistencies in the coverage of the shooting and testing the veracity of the official Sandy Hook narrative. The following suits ensued and left Jones liable for approximately $1.5 billion in judgments—an amount that far outweighs any calculation of his assets—thus necessitating the Debtor's bankruptcy filing.

a. Fontaine v. Jones

On April 2, 2018, Marcel Fontaine ("Fontaine") filed suit against Jones, InfoWars, FSS, and one InfoWars employee for defamation, claiming that Jones falsely identified Fontaine as the shooter in the 2018 Stoneman Douglas High School shooting. After Fontaine's death, his estate took over the case. Although the Texas court previously dismissed this suit against the Debtor, the time for further appeal of the decison has not yet run.

b. Pozner and De La Rosa v. Jones

On April 16, 2018, Leonard Pozner and Veronique De La Rosa, parents of one of the Sandy Hook shooting victims, filed suit against Jones, InfoWars, and FSS in Texas state court for defamation. This suit was ultimately combined with the *Heslin v. Jones* suit.

c. Heslin v. Jones

On April 16, 2018, Neil Heslin ("Heslin") and Scarlett Lewis ("Lewis"), also parents of one of the Sandy Hook victims, filed suit in Texas state court for defamation. On September 27, 2021, Judge Guerra issued three default judgments against the Debtor for purported discovery violations, requiring him to pay all damages in the *Pozner* and *Heslin* suits. On August 4, 2022, a Texas jury ordered Jones to pay Heslin and Lewis $4.1 million in compensatory damages. On August 5, 2022, the jury ordered Jones to pay an additional $45.2 million in punitive damages.

d. Lafferty et al. v. Jones

On June 26, 2018, seven families of victims and an FBI agent who responded to the attack filed a defamation suit against Jones in Connecticut against Jones, InfoWars, FSS, Infowars Health, and others. On November 15, 2021, the judge found Jones liable for defamation by default, noting "willful non-compliance" through failure to turn over discoverable documents. On October 12, 2022, the jury awarded $965 million in damages to be distributed among the various plaintiffs.

On November 10, 2022, the judge awarded the plaintiffs an additional $473 million in punitive damages.

e.   Sherlach v. Jones

On July 24, 2018, William Sherlach, husband of one of the victims, filed a defamation suit in Connecticut against Jones, Infowars, FSS, and Infowars Health. This lawsuit was combined with *Lafferty et al. v. Jones*.

### D.   *Commencement of the Chapter 11 Case*

On December 2, 2022, Jones filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532, initiating this bankruptcy case.

### E.   *Significant Events Since Commencement of Chapter 11 Case*

1.   **Continuation of the Debtor's Business**

Since the filing of the Chapter 11 case, the Debtor has continued to operate his businesses and manage his property as debtor-in-possession.

2.   **Retention of Professionals**

a.   Bankruptcy Counsel

On December 20, 2022, the Debtor filed an *Application to Employ Crowe & Dunlevy, P.C., as Bankruptcy Co-Counsel*. The next day, Shelby Jordan filed a similar *Application to Employ Jordan & Ortiz, P.C. as Co-Counsel*. These Applications were approved by the Court on January 20, 2022. Both Crowe & Dunlevy, P.C. and Jordan & Ortiz, P.C. have remained bankruptcy counsel for the Debtor since the inception of the case.

b.   Financial Advisor

On December 29, 2022, the Debtor filed his *Application to Employ Blackbriar Advisors, LLC as Financial Advisor*. This Application was approved by the Court on January 20, 2023. Blackbriar Advisors, LLC have remained in their role as financial advisor for the Debtor since the inception of this case.

c.   Other Professionals

On December 13, 2022, the Debtor filed an *Application to Employ Rachel Kennerly, LLC as Tax Accountant*. This Application was approved by the Court on January 20, 2023. Rachel Kennerly, LLC have remained in their role as a tax accountant for the Debtor since the inception of the case.

On January 7, 2023, the Debtor moved to employ The Reynal Firm, P.C., and Martin, Disiere, Jefferson, & Wisdom, LLP as special counsel. These motions were approved by the Court on February 28, 2023.

On June 20, 2023, the Debtor filed an expedited motion to employ Pattis & Smith, LLC as special counsel. The Application was approved by the Court on July 5, 2023.

On December 21, 2023 the Debtor moved to employ several real estate brokers to liquidate the Lakehouse, Ranch, and contents of the storage facilities. The Court has yet to rule on these motions.

### 3. Schedules and Statements of Financial Affairs

On February 14, 2023, the Debtor filed his Schedules and Statements of Financial Affairs (as amended, the "Schedules and Statements"). Amended Schedules were filed on March 30, 2023; April 18, 2023; and November 26, 2023.

### 4. Motion for Summary Judgment

#### a. Connecticut

On March 10, 2023, Plaintiffs David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, Jillian Soto Marino, William Aldenberg, William Sherlach, Robert Parker, and Erica Lafferty (collectively, the "Connecticut Plaintiffs") filed their Adversary Complaint Seeking Judgment that Sandy Hook Judgment is Non-Dischargeable under Bankruptcy Code § 523(a) (the "Complaint") (Adv. Doc. 1) seeking a declaration that the Debtor's debts to the Connecticut Plaintiffs were nondischargeable. The debts they sought to have declared nondischargeable stem from a state-court judgment entered against the Debtor in the amount of $1.436 billion for statements he made concerning the 2013 Sandy Hook Elementary School shooting. The Connecticut Plaintiffs filed their motion for summary judgment (Adv. Doc. 57-60) on May 12, 2023; the Debtor filed his response (Adv. Doc. 61) on June 13, 2023; and Connecticut Plaintiffs filed their reply (Adv. Doc. 66) on July 14, 2023. On October 19, 2023, the Bankruptcy Court issued its order (Adv. Doc. 76) on Connecticut Plaintiff's motion for summary judgment, where it granted summary judgment on the $965 million debt for compensatory damages awarded in the underlying Connecticut action for defamation and IIED. The court also granted summary judgment on the $150 million debt for punitive damages under the Connecticut Uniform Trade Practices Act ("CUTPA"). However, summary judgment was denied as to the $321.65 million in attorneys' fees and $1,489,555.94 in costs awarded as common law punitive damages.

On November 2, 2023, the Debtor filed a motion for leave to appeal the Bankruptcy Court's interlocutory order in the United States District Court for the Southern District of Texas. *See Wheeler v. Jones*, 23-CV-4240. In his motion, the Debtor asked the district court to hear his interlocutory appeal because it involved a controlling question of law, there were substantial grounds for difference of opinion, and an immediate appeal would materially advance the ultimate termination of the litigation. The Connecticut Plaintiffs filed their response (D.C. Doc. 10) on

November 16, 2023, and the Debtor filed his reply (D.C. Doc. 13) on December 4, 2023. As of the date of this filing, the Southern District of Texas has not made a determination of whether it is going to grant the Debtor leave to file an interlocutory appeal of the Bankruptcy Court's order partially granting the Connecticut Plaintiff's motion for summary judgment.

          b.  Texas

On March 10, 2023, Plaintiffs Neil Heslin, Scarlett Lewis, Leonard Pozner, and Veronique De La Rosa (collectively, the "Texas Plaintiffs" and together with the Connecticut Plaintiffs, the "Sandy Hook Plaintiffs"), filed an adversary action against Debtor seeking a declaratory judgment that the damages arising out of the Heslin/Lewis Action, and the unliquidated damages arising out of the Pozner/De La Rosa Action are nondischargeable under 11 U.S.C. § 523(a)(6). (Adv. Proc. 23-3035, Doc. 1). The debt Helsin and Lewis sought to have declared nondischargeable stem from a state-court judgment entered against Debtor in the amount of approximately $44 million for statements he made concerning the 2013 Sandy Hook Elementary School shooting. The debt Pozner and De La Rosa sought to have declared nondischargeable is an unliquidated judgment that has yet to go to trial for the same statements concerning the 2013 Sandy Hook Elementary School shooting. The Texas Plaintiffs filed their motion for summary judgment (Adv. Doc. 27-28) on May 12, 2023; the Debtor filed his response (Adv. Doc. 32) on June 13, 2023; and the Texas Plaintiffs filed their reply (Adv. Doc. 37) on July 14, 2023. On October 19, 2023, the Bankruptcy Court issued its order (Adv. Doc. 48) on the Texas Plaintiff's motion for summary judgment.

The Bankruptcy Court granted summary judgment on the Heslin defamation debt claim, consisting of $110,000 in compensatory damages and $4.2 million in exemplary damages. The Bankruptcy Court also partially granted summary judgment on Heslin and Lewis's IIED claims, reasoning that the Debtor committed willful and malicious injury to Heslin and Lewis based on the deemed admissions concerning the IIED claims. However, the Bankruptcy Court determined that the jury was asked to find damages based on intentional or reckless acts, and thus, a trial must be conducted to see what damages stem from the admitted allegations constituting willful and malicious injury. Finally, the Court granted summary judgment concerning Pozner and De La Rosa, reasoning that the Debtor committed willful and malicious injury to them based on the deemed admissions concerning the defamation and IIED claims. However, just as it did with the Heslin/Lewis Action, the Bankruptcy Court determined that a trial must proceed in the Bankruptcy Court to determine the amount of damages based on the willful and malicious injuries.

On November 2, 2023, the Debtor filed a motion for leave to appeal the Bankruptcy Court's interlocutory order in the United States District Court for the Southern District of Texas. *See Helsin v. Jones*, 23-CV-4238. In his motion, the Debtor asked the district court to hear his interlocutory appeal because it involved a controlling question of law, there were substantial grounds for difference of opinion, and an immediate appeal would materially advance the ultimate termination of the litigation. (D.C. Doc. 2). Texas Plaintiffs filed their response (D.C. Doc. 10) on November 16, 2023, and the Debtor filed his reply (D.C. Doc. 13) on December 4, 2023. As of the date of this filing, the Southern District of Texas has not made a determination of whether it is going to grant the Debtor leave to file an interlocutory appeal of the Bankruptcy Court's order partially granting the Texas Plaintiff's motion for summary judgment.

5. **Committee Discovery Efforts**

Since the Petition Date, the Debtor has responded to and complied with the Official Committee for Unsecured Creditors' thirty-five (35) 2004 Requests for Examination and five (5) deposition requests. The Debtor has also produced over 33,000 documents totaling over 148,000 pages.

6. **Filing of Creditors' Plan**

On December 15, 2023, the "Creditor Plan Proponents" filed the *Creditors' Non-Uniform Individual Chapter 11 Plan of Liquidation for Alexander E. Jones*.

7. **Filing of the Debtor's Plan**

On December 15, 2023, the Debtor filed *Debtor's Plan of Reorganization*. The Debtor filed his Amended Plan of Reorganization [Docket No. 568] on January 23, 2024.

F. ***Summary of Claims Filed or Asserted Against the Debtor***

As of the date of the filing of this Disclosure Statement, the following Claims are asserted against the Debtor: (a) the Secured Claim of Bank of America in the amount of $26,354.73 plus accrued and unpaid interest; (b) the Security Bank of Crawford Claim in the amount of $80,161.04 plus accrued and unpaid interest; (c) the American Express Claim in the amount of $150,000; (d) the IRS Claim in the amount of $586,884.64; (e) a DSO Claim, not from Erika Jones, identified at item 4.12 of the Schedules and Statements; (f) the Reeves Law, PPLC Claim in the amount of $24,611.13; (g) the City of Austin Claim in the amount of $86.60; and (h) the judgments of the Sandy Hook Plaintiffs totaling approximately $1.4 billion. The Debtor has not yet evaluated the Claims and Claim Objections have not yet been filed.

## V.   SUMMARY OF THE PLAN

A. ***General Overview***

The Plan you are being asked to vote on is attached as **Exhibit A**. You must carefully review the Plan before voting in favor of or against it.

The Debtor believes that the Plan provides for fair and equitable treatment to those creditors. The Plan provides for the treatment of the Claims and provides that the assets of the Debtor will revest in the Debtor on the Effective Date, free and clear of all Claims except as provided under the Plan. After the Effective Date, the Debtor may operate his businesses and buy, use, and otherwise acquire and dispose of its properties free of any restrictions contained in the Bankruptcy Code, except as otherwise provided in the Plan.

### B. *Summary of the Plan*

The Plan provides for the reorganization of the Debtor and the payment of Allowed Claims through: (a) the continued orderly liquidation of certain non-exempt assets of the Debtor; (b) the settlement of various estate claims against individuals and businesses; and (c) the Debtor's commitment to contribute substantial funds from his future income. More specifically, the Debtor will contribute 100% of the Net Disposable Income of Free Speech System, LLC ("FSS") as set forth in the FSS Plan and 50% of the Debtor's Plan Income to both settling and non-settling parties, until such time as certain minimum payments have been contributed for settling parties, and then 25% of the Debtor's Plan Income over the remaining Plan Term to non-settling parties. As a result, all allowed administrative claims, priority claims, and secured claims will be paid in full, and allowed unsecured creditors will receive a substantial Distribution (and significantly more than they would receive in a liquidation whether through a liquidating chapter 11 plan or a chapter 7).

The Plan also allows for unsecured creditors to opt in to a "settling class" allowing for faster payment of their claims and repayment from certain non-exempt assets of the Debtor in exchange for settlement of certain existing litigation claims. This settlement class facilitates the Plan and benefits all stakeholders by resolving pending litigation that would otherwise be both costly and time consuming for the Debtor and the bankruptcy estate. Finally, the Plan incentivizes the Debtor to satisfy his obligations to fund the Plan as soon as possible to accelerate payments to creditors.

### C. *Classification and Treatment*

All Claims except Administrative Claims are placed in the Classes set forth below.

The Plan contemplates separate Classes for the Debtor for voting and distribution purposes. To the extent a Class contains one or more subclasses, each subclass is deemed to be a separate Class for all purposes under the Bankruptcy Code and the Plan.

Except for the unclassified Claims discussed in Article II above, Section 3.02 of the Plan sets forth a designation of Claims in accordance with Bankruptcy Code section 1122(a). A Claim is classified in a particular Class only to the extent any portion of the Claim qualifies within the description of the Class and is classified in a different Class to the extent any portion of the Claim qualifies within the description of that different Class. If a Claim is acquired or transferred, the Claim shall be placed in the Class in which it would have been placed if it were owned by the original Holder of such Claim. A Claim is also placed in a particular Class for the purpose of receiving Distributions only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, satisfied, or released before the Effective Date.

THIS IS ONLY A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN. THE PLAN INCLUDES OTHER PROVISIONS THAT MAY AFFECT YOUR RIGHTS. YOU ARE URGED TO READ THE PLAN IN ITS ENTIRETY BEFORE VOTING ON THE PLAN.

1. **Unclassified Claims**

In accordance with section 1123(a)(1) of the Bankruptcy Code, unclassified Claims against the Debtor consists of Administrative Claims and Domestic Support Obligations. However, for ease of reading, the Plan includes Priority Tax Claims under the Classified Claims section. Based on his books and records and projections for future expenses, the Debtor presently estimates the amounts of such Claims as follows:[3]

| | |
|---|---|
| Administrative Expense Claims | $5.3M |
| Domestic Support Obligations | TBP [4] |

a. Administrative Claims

<u>Time for Filing Administrative Claims</u>. The Holder of any Administrative Claim that is incurred, accrued, or in existence prior to the Effective Date, other than (i) a Fee Claim, (ii) an Allowed Administrative Claim, or (iii) a liability incurred in the Ordinary Course of Business must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before thirty (30) days after the Effective Date. Such request must include at a minimum (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim. Failure to timely and properly file and serve the request required under the Section shall result in the Administrative Claim being forever barred and discharged. Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party and the Debtor within thirty (30) days after the filing of the applicable request for payment of an Administrative Claim.

<u>Time for Filing Fee Claims</u>. Any Person who holds or asserts an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application within sixty (60) days after the Effective Date. Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being forever barred and discharged. No Fee Claim will be deemed Allowed until an order allowing the Fee Claim becomes a Final Order. Objections to Fee Applications must be filed and served pursuant to the Bankruptcy Rules on the Debtor and the Person to whose application the objections are directed or made within thirty (30) days after the filing of the Fee Application subject to objection. No hearing may be held on a specific Fee Application until the foregoing objection period with respect to that Fee Application has expired.

<u>Allowance for Administrative Claims</u>. An Administrative Claim with respect to which request for payment is required and has been properly filed pursuant to Section 2.01 of the Plan shall become an Allowed Administrative Claim if no timely objection is filed. If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order. An Administrative Claim that is a Fee Claim, and with respect

---

[3] The estimates for Administrative Expenses include the estimated fees of the Debtor's professionals through confirmation for the Debtor. To the extent confirmation is delayed beyond the time frame anticipated, Administrative Expenses will increase.

[4] As of the Petition Date, the Debtor owed no Domestic Support Obligations ("<u>DSOs</u>"). Future DSOs will be paid through automatic payroll deductions.

to which a Fee Application has been properly filed and served pursuant to Section 2.01 of the Plan, shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.

Payment of Allowed Administrative Claims. Except to the extent that a Holder of an Allowed Administrative Claim has been paid prior to the Effective Date with respect to Administrative Claims against the Debtor, or agrees to a different treatment, each Holder of an Allowed Administrative Claim (other than Allowed Administrative Claims incurred in the Ordinary Course of Business, which are paid pursuant to Section 2.01), shall receive, in full satisfaction, release and discharge of and exchange for such Administrative Claim, and after the application of any retainer or deposit held by such Holder, Cash equal to the Allowed amount of such Administrative Claim within ten (10) Business Days after the Allowance Date with respect to such Allowed Administrative Claim.

Administrative Claims Incurred in the Ordinary Course of Business. Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtor during the Bankruptcy Case (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes, or alleged Administrative Claims arising in contract or tort) shall not be required to file any request for payment of such Claims. Each Administrative Claim incurred in the Ordinary Course of Business of the Debtor paid pursuant to the terms and conditions of the transaction giving rise to such Administrative Claim. The Debtor reserves and shall have the right to object before the Objection Deadline to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such claim until such time as any objection is resolved pursuant to a settlement or a Final Order.

b.  Domestic Support Obligations

On the Effective Date, the Debtor shall make any payments which may be required to comply with any unfunded obligations on account of any Domestic Support Obligations arising under section 1129(a)(14) of the Bankruptcy Code. The Debtor is not aware of any unpaid DSOs as of the date of the filing of this Disclosure Statement, but future DSOs will be funded in the ordinary course through payroll deductions.

c.  U.S. Trustee Fees

The Debtor shall timely pay to the United States Trustee all quarterly fees incurred by the Debtor pursuant to 28 U.S.C. § 1930(a)(6) until the Bankruptcy Court of the Debtor is closed or dismissed. The Debtor shall serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) after the Effective Date that the Debtor's Bankruptcy Case remains open.

2.  **Classified Claims**

UNLESS OTHERWISE NOTED, THE DEBTOR'S ESTIMATES OF THE NUMBER AND AMOUNT OF CLAIMS IN EACH CLASS SET FORTH IN THE TABLE BELOW INCLUDE ALL CLAIMS ASSERTED AGAINST THE DEBTOR WITHOUT REGARD TO THE VALIDITY OR TIMELINESS OF THE

FILING OF THE CLAIMS. THUS, BY INCLUDING ANY CLAIM IN THE ESTIMATES SET FORTH BELOW, THE DEBTOR IS NOT WAIVING ITS RIGHTS TO OBJECT TO ANY CLAIM ON OR BEFORE THE CLAIM OBJECTION DEADLINE ESTABLISHED BY THE PLAN.

The following tables summarize the classification and treatment of the Claims against the Debtor, an estimate of the numbers and amounts of Claims in each class (such amounts are derived from the Debtor's Schedules, Proofs of Claims filed by Creditors, or other findings of the Court), and the impaired or unimpaired nature of each class:[5]

| Class | Treatment |
|---|---|
| **Class 1: Non-Tax Priority Claims** | Unimpaired.<br><br>The Holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are thus not entitled to vote on the Plan.<br><br>On or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Non-Tax Priority claim shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Non-Tax Priority Claims, (y) Cash in amount equal to the Allowed amount of its Non-Tax Priority Claim, or (z) such other, less favorable treatment to which such Holder and the Debtor agrees in writing. To the extent an Allowed Non-Tax Priority Claim entitled to priority treatment under 11 U.S.C.§§ 507(a)(4) or (5) exceeds the statutory cap applicable to such Claim, such excess amount shall be treated as a Class 6 General Unsecured Claim against the Debtor.<br><br>Estimated Recovery: 100% of Allowed Claim |
| **Class 2: Priority and Secured Tax Claims** | Unimpaired.<br><br>The Holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are thus not entitled to vote on the Plan.<br><br>With respect to any Allowed Priority Tax Claim, to the extent not already paid or otherwise satisfied, on or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date, with respect to a Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive from the Debtor in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (x) Cash equal to the Allowed Amount of its Allowed Priority Tax Claim, plus interest thereon at the rate provided under applicable non-bankruptcy law pursuant to section 511 of the Bankruptcy Code from the Petition Date through the date such Claim is paid in full, or (z) such other, less favorable treatment as may be agreed upon in writing by such Holder and the Debtor. |

[5] Estimated recovery for Classes 5 and 6 cannot be ascertained until the Debtor is able to determine which Claimants opt-in to Class 5. However, for Classes 5 and 6 combined, it is an estimated approximately 3% recovery.

**DEBTOR'S SOLICITATION VERSION OF AMENDED DISCLOSURE STATEMENT WITH RESPECT TO DEBTOR'S PLAN OF REORGANIZATION - Page 16**

| | |
|---|---|
| | Notwithstanding any other provision of the Plan, each Holder of an Allowed Secured Tax Claim shall retain its Lien on any Collateral that secures its Claim or the proceeds of such Collateral (to the extent such Collateral is sold by the Debtor, free and clear of such Lien) to the same extent and with the same validity and priority as such Lien held as of the Petition Date until (a) the Holder of such Allowed Priority Tax Claim (i) has been paid Cash equal to value of its Allowed Priority Tax claim and/or (ii) has received a return of the Collateral securing its Allowed Secured Tax Claim, or (iii) has been afforded such other treatment as to which such Holder and the Debtor have agreed upon in writing, or (b) such purported Lien has been determined by a Final Order to be invalid or avoidable. To the extent that a Priority Claim exceeds the value of the interest of the Estate in the property that secured such Claim, such Claim shall be deemed Disallowed pursuant to Bankruptcy Code 502(b)(3).<br><br>If the Debtor fails to timely make any payments to a Holder of an Allowed Secured Tax Claim as required under Section 5.02 of the Plan, the affected Holder of an Allowed Secured Tax Claim may send written notice of default to the Debtor. If the default is not cured within twenty-one (21) days after notice of default is mailed, such Holder may proceed with any remedies for collection of amounts due under applicable non-bankruptcy law without further order of the Bankruptcy Court.<br><br>Estimated Recovery: 100% of Allowed Claim |
| **Class 3: Secured Claim of Bank of America** | Unimpaired.<br><br>The Holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are thus not entitled to vote on the Plan.<br><br>Allowance. The Allowed amount of the Class 3 Secured Claim shall be equal to the aggregate of (1) $26,354.73, plus (2) accrued and unpaid interest at the Contract Rate from the Petition Date until the Rental Property is sold and such claim is paid in full, less any payment made on account of such Claim from and after the Petition Date that are required to be applied as payments of principal pursuant to an Order of the Bankruptcy Court.<br><br>Treatment. Except to the extent that the Holder of the Allowed Class 3 Secured Claim agrees to less favorable treatment of such Allowed Class 3 Secured Claim, the Holder of the Allowed Class 3 Secured Claim shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 3 Secured Claim, Cash in an amount equal to such Allowed Class 3 Secured Claim on the later of (i) the Effective Date, or (ii) the date the Rental Property is sold and the Debtor has received the Net Proceeds of such sale in immediately available funds. As of the Effective Date, the Debtor's obligations under the loan documents giving rise to the Allowed Class 3 Secured Claim, shall be reinstated and Bank of America shall retain its lien rights pending sale of the Rental Property and payment of the Class 3 Claim in full. |

| | Estimated Recovery: 100% of Allowed Claim |
|---|---|
| **Class 4: Secured Claim of Security of Bank of Crawford** | Unimpaired.<br><br>The Holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are thus not entitled to vote on the Plan.<br><br>Allowance. The Allowed amount of the Secured Claim of Security Bank shall be equal to the aggregation of (1) $ 80,161.04, plus (2) accrued and unpaid interests at the Contract Rate from the Petition Date until the Effective Date, less any payments made on account of such Claim from and after the Petition Date and applied to the principal amount of such Claim as required by the Bankruptcy Code.<br><br>Treatment. From and after the Effective Date, the Debtor shall reinstate his existing guarantor obligations under the applicable loan documents with respect to the Class 4 Claim of Security Bank of Crawford, secured by the existing collateral, until such time as the loan obligations are paid in full.<br><br>Estimated Recovery: 100% of Allowed Claim |
| **Class 5: Unsecured "Opt-In Settlement" Class** | Impaired.<br><br>Allowance. On the Effective Date, the Opt-In Settlement Unsecured Claims shall consist of the Claims of the Electing Plaintiffs.<br><br>Each Electing Plaintiff shall receive Cash in the amount of:<br>i)     such Electing Plaintiff's Electing Plaintiff Pro Rata Share of 70% of the Net Proceeds from the sale or other monetization of Non-Exempt Assets, as soon as reasonably practicable following the receipt of such Net Proceeds; and<br><br>ii)     from the Effective Date until the year in which the Payment Trigger occurs, the greater of such Electing Plaintiff's (x) Minimum Annual Distribution or (y) Plaintiff Pro Rata Share of the Income Stream Payment on an annual basis. The Electing Plaintiffs shall cease receiving Distributions under this Plan beginning the year following the occurrence of the Payment Trigger; provided; that Electing Plaintiffs may continue to receive payments under the FSS Plan and FSS Trust to the extent applicable. Payments under this paragraph shall be made on or before the first Business Day in May of each year following the Effective Date.<br><br>     The Net Proceeds from the liquidation of the Non-Exempt Assets including Cash paid to the Debtor on the Initial Distribution shall reduce the Minimum Annual Distribution for the first Plan Year.<br><br>Each Electing Plaintiff shall have an Allowed Claim in the amount set forth next to such person's name on Plan Exhibit A. No further litigation with respect to conduct occurring on or prior to the Confirmation Date shall be pursued on behalf of Electing Plaintiffs against the Debtor or any Related Party. |

| | |
|---|---|
| | <u>Treatment</u>. The Opt-In Settlement Unsecured Claims treatment shall be in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim. Such Claims shall be discharged after payments are made as set forth herein. Also, for each year in which no uncured Plan Default occurs, 10% of each Opt-In Settlement Unsecured Claim shall be waived and forever discharged.  However, whatever Opt-In Settlement Unsecured Claims that are not paid under the Plan or waived and discharged pursuant to the preceding sentence, shall be deemed to be non-dischargeable without further court process in the event of a final, uncured Plan Default. The Debtor, the Disbursement Agent and the Electing Plaintiffs will work cooperatively to determine the most tax efficient method of distribution, which may include the Debtor directing FSS to make Income Stream Payments from FSS or from the FSS Trust to the extent practicable.<br><br><u>Settlement Injunction</u>.  As consideration for the concessions made by the Electing Plaintiffs herein, the Debtor agrees that, without first obtaining the permission of all Electing Plaintiffs, the Debtor may not in any way publicly discuss the 2012 mass shooting at Sandy Hook Elementary School, the Electing Plaintiffs, the Electing Plaintiffs' family members (including victims of the Sandy Hook shooting) or any Claims or litigation arising from or relating to Debtor's past statements about the Sandy Hook mass shooting—other than to state that he has no comment about such events or individuals. The Debtor will take all reasonable steps to ensure that FSS does not make a public statement that the Debtor would be prohibited from making under this paragraph. Failure by Debtor to comply with this provision constitutes a Plan Default enforceable by the Electing Plaintiffs.<br><br>So long as no Plan Default has occurred and is continuing, the Electing Plaintiffs agree that they will not seek to have Debtor or FSS removed from any forums or platforms (electronic or physical), unless such forums or platforms are owned or controlled by Electing Plaintiffs.  So long as no Plan Default has occurred and is continuing, the Electing Plaintiffs agree that they will not seek to have any statements by Debtor or FSS removed from any forums or platforms (electronic or physical), unless such forums or platforms are owned or controlled by Electing Plaintiffs. Notwithstanding anything else to the foregoing, Electing Plaintiffs shall not disparage the Debtor or FSS and will make no public comment on the legal claims giving rise to the Electing Plaintiffs' Allowed Claims, or the treatment thereof under the Plan.  If Electing Plaintiffs do not comply with the terms set out in this paragraph, Debtor may seek relief from the Bankruptcy Court, including injunctive relief. |
| **Class 6: General Unsecured Claims** | Impaired.<br><br>Following the Allowance Date of each General Unsecured Claim, after the resolution of any existing appeals or litigation of such Claims, and except to the extent that a Holder of an Allowed General Unsecured Claim agrees, under the terms of a writing executed by such Holder, to less favorable |

| | |
|---|---|
| | treatment of such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive from the Debtor, in exchange for such Allowed General Unsecured Claim, such Holder's GUC Pro Rata Share of (x) prior to the occurrence of the Plan Trigger, the amount of the Income Stream Payment remaining after Electing Plaintiffs are paid pursuant to the terms of Section 5.05 of the Plan, and (y) beginning the year following the occurrence of the Payment Trigger, all of the Income Stream Payment. Non-Electing Plaintiffs will be enjoined against collecting against the Debtor during the Plan Term; however, such Non-Electing Plaintiffs may, to the extent such Holder has a non-dischargeable claim, collect against the Debtor's non-exempt assets, unless such Claim is otherwise stayed, following the end of the Plan Term.  Any Claims of Non-Electing Plaintiffs shall be reduced by any payments received by such claimants under the Plan.<br><br>After the Initial Distribution, annual payments shall be made on or before the first Business Day in the fifth month of the Plan Year. |
| **Class 7: Administrative Convenience Claims** | Impaired.<br><br>Each Holder of an Allowed Unsecured Claim in the amount of $5,000 or less, or such Holders as agree to reduce their Claim to $5,000, shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim, a Cash payment as soon as reasonably practicable following the Effective Date in the full amount of such Allowed Claim. Insiders with Allowed Claims may opt to settle their Claims to be paid as an Administrative Convenience Claims Holder, but such Claim will be limited to $5,000, and be deemed fully satisfied upon payment of that amount.<br><br>Estimated Recovery: 100% of Allowed Claim as agreed to by Holder |

D. ***Means of Implementation of the Plan***

    1. **Settlements**

    (a)   **Opt-In Settlement Unsecured Claims:** Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, in consideration for the classification, Distribution, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of the Opt-In Settlement Unsecured Claims, which shall be binding upon Persons receiving Distributions under the Plan, the Debtor, and any other party treated under the Plan.

    As of the Effective Date, all litigation in any jurisdiction, including dischargeability litigation and any appeals thereof, amongst Holders of Opt-In Settlement Unsecured Claims including, without limitation, all litigation listed

on Exhibit B, shall each be terminated with prejudice and without further costs to any party, and all necessary parties shall execute and deliver any related satisfactions of judgment or other documentation necessary to terminate such litigation and release any related judgment liens arising in or on account of such matters. The Debtor and the Holders of Opt-In Settlement Unsecured Claims agree that the resolution of such litigation takes into account a good faith evaluation by all parties of the costs and merits of such litigation, and that the dismissal of such ongoing litigation (including without limitation any pending appeals) as set forth herein is a good faith reasonable resolution of such litigation, in exchange for the consideration provided.

(b)     **Claims Against Related Parties:**   Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, in consideration for the benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of the estate's Claims against Related Parties, which shall be binding upon Persons receiving Distributions under the Plan, the Debtor, and any other party treated under the Plan. Evidence in support of such settlements, including valuation, will be presented at the Confirmation Hearing. The Debtor will file with the Court the terms of any settlement proposed to be approved at the Confirmation Hearing a reasonable period of time in advance thereof as determined between the Debtor and counsel for the Plaintiffs and UCC. The proposed settlement and resolution of such Claims against Related Parties considers a good faith evaluation by all parties of the costs and merits of such litigation, as well as the collectability of any potential judgments in favor of the estate. Specific Related Parties are set forth on Schedule B to the Plan.

The "Creditor Plan Proponents" assert that the Debtor should incur costs and file lawsuits against his wife to attempt to recover funds paid to her or personal property bought for her pursuant to their premarital agreement, regardless of the estate's ability to collect upon any such claims. Proposed Specific Disclosure Statement [Docket No. 539], p. 14-15. The "Creditor Plan Proponents" further argue that the Debtor should incur costs and file lawsuits against his father for the return of gifts made outside of the fraudulent transfer period, as well as the return of repayments for expenses Dr. Jones paid on the Debtor's behalf. *Id.* at p. 15-16. The "Creditor Plan Proponents" also argue that the Debtor should incur costs and file a lawsuit to sue his son, Rex Jones, for the return of a used vehicle. *Id.* at p. 16. The UCC further asserts that the Debtor should pursue causes of action for the return of low or no value gifts to Johnathan Owen Shroyer and Patrick Riley, including a 5-year-old used vehicle, a used watch, and 20-year-old, scrapped out boat. Finally, the "Creditor Plan Proponents" claim that assets of the Alexander E. Jones Descendent and Beneficiary Trust should be made available to the Debtor's creditors, and that certain inter-trust transfers should be avoided. *Id.* at 17.

Entry of the Confirmation Order shall constitute a determination by the Bankruptcy Court pursuant to Bankruptcy Rule 9019 that the terms and conditions of the foregoing settlements and the termination of all litigation (including, without limitation, any appeals) required thereunder is reasonable, and in the best interests of the Debtor, his Estate, and all Creditors of the Debtor and other parties in interest.

2.   **Sources of Cash and Terms of Payment for Plan Distributions**

The sources of Cash necessary for the Debtor to pay Allowed Claims that are to be paid in Cash by the Debtor under the Plan will be: (a) the Cash of the Debtor on hand as of the Effective Date, minus a reserve totaling $250,000 for three (3) months of reasonable living expenses as well as certain post-confirmation legal expenses; and (b) Net Proceeds from the sale of the Debtor's Non-exempt Assets; and (c) Cash generated or received by the Debtor after the Effective Date from any other source, including but not limited to Cash flow to the Debtor from AEJ Trust and refunded trust expenses.

Funds from payments under the FSS Plan made by the FSS Trust shall be used solely with respect to the calculation of the Minimum Plan Distribution and are not being relied upon for purposes of confirming this Plan.

On the Effective Date, all Avoidance Actions not resolved will vest in the Disbursement Agent or, at the option of the Debtor, the FSS Trust, and such vested party will have the exclusive right to prosecute, settle, or compromise all Avoidance Actions. Any such net payments resolving any Avoidance Actions shall constitute Net Proceeds of Non-Exempt Assets for purposes of the Plan. Financial Projections in support of the Debtor's proposed Amended Plan are attached hereto as Exhibit E.

3.   **Payments**

(a)   The Disbursement Agent shall remit payment of the following Allowed Claims in accordance with the limitations on the amount of such payments as set forth in the Plan, and the other terms and conditions of the Plan:

(i)   Administrative Claims, other than Administrative Claims Incurred in the Ordinary Course of Business as set forth in Section 2.01(e).

(ii)   Non-Tax Priority Claims as set forth in Section 5.01.

(iii)   Administrative Convenience Claims as set forth in Section 5.07.

(iv)   General Unsecured Claims as set forth in Section 5.06.

(v)   Administrative Claims Incurred in the Ordinary Course of Business as set forth in Section 2.01(e).

(vi)     Priority Tax Claims as set forth in Section 2.02.

(vii)    Domestic Support Obligations as set forth in Section 2.03.

(viii)   U.S. Trustee fees as set forth in Section 2.04.

(ix)     Secured Tax Claims as set forth in Section 5.02.

(x)      Secured Claim of Bank of America as set forth in Section 5.03.

(xi)     Secured Claim of Security Bank of Crawford as set forth in Section 5.04.

(xii)    Unsecured Claims of Opt-In Settlement Claimants as set forth in Section 5.05.

4.   **Claim Objections/Resolution**

Any party in interest, including the Debtor, may file objections to Claims (other than Claims that have been previously Allowed or that are Allowed under the Plan). The Debtor (or his designees, successors, and assigns) are not obligated to object to any Claim but will nevertheless have standing to object to any such Claim from and after the Effective Date, if they so elect.

Except as set forth in Sections 2.01(a) and 2.01(b) the Plan with respect to Administrative Claims and Fee Claims, any objections to Claims must be filed no later than ninety (90) days after the Effective Date, unless such deadline is extended by the Bankruptcy Court. An objection to a Claim will be deemed properly served on the Holder thereof if service is effected by any of the following methods: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto; (c) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of the Holder in the Bankruptcy Case; or (d) if no proof of Claim that has been filed, by first class mail, postage prepaid, on the Holder of such Claim at the address set forth in the Schedules.

5.   **Assertion of Estate Actions, Defenses, and Counterclaims**

Except as set forth in the Plan or the Confirmation Order, effective as of the Effective Date, with respect to the Debtor, without further action by any party, all Causes of Action, and all defenses, counterclaims, setoffs, and rights related thereto, shall be and shall be deemed to be vested in the Debtor. From and after the Effective Date, the Debtor shall have the exclusive right to prosecute, settle, or compromise any Cause of Action vested in or transferred to the Debtor under the Plan. Except to the extent otherwise set forth in the Plan, the Debtor shall retain and may prosecute and enforce all other defenses, counterclaims, and rights that it has asserted or could assert against or with respect to all Claims asserted against the Debtor or property of his Estate. No claim, right, Cause of Action, or other asset shall be deemed waived or otherwise forfeited by virtue of the Debtor's failure to identify such property in the Schedules or the Disclosure Statement

unless otherwise ordered by the Bankruptcy Court. Causes of Action expressly include, but are not limited to, all claims included on Exhibit C.

Except as provided in the Plan, nothing contained in the Plan or Confirmation Order shall be deemed to be a waiver of the relinquishment of any rights or Causes of Action that the Debtor may have or which the Debtor may choose to assert on behalf of the Debtor's Estate under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaims, and/or Claim for setoff, which seeks affirmative relief against the Debtor, and (ii) the turnover of any property of the Debtor's Estate.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense, which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan. The Debtor shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which the Debtor had immediately prior to the Petition Date fully as if the Bankruptcy Case had not been commenced, and all of the Debtor's legal and equitable rights respecting any Claim Unimpaired by the Plan may be asserted after the Confirmation Date by the Debtor to the same extent as if the Bankruptcy Case had not been commenced.

### 6.  Management After the Effective Date

The Debtor shall continue to manage and control each of his respective assets and any other assets within his control, directly or indirectly, after the Effective Date, and to the extent the Plan provides for the sale of certain of the Debtor's assets, the Disbursement Agent shall manage and control the sale of those assets and shall liquidate such assets as expeditiously as reasonably possible, consistent with the terms of the Plan and the goal of maximizing the value thereof for the benefit of the Holders of Claims secured by a Lien on those assets and other stakeholders.

### 7.  Revesting of Assets

Except as otherwise provided in the Plan or the Confirmation Order, upon the Effective Date, all property of the Debtor's estate, wherever situated, shall vest in the Debtor, as reorganized pursuant to the Plan, free and clear of all Claims to the full extent permitted by law including the Bankruptcy Code.

**Trusts:** For the avoidance of doubt, the Debtor would clarify through this Plan that certain Trusts are not property of the estate and therefore are not available for distribution to Creditors. Specifically, the Alexander E. Jones Descendent and Beneficiary Trust (the "Descendent Trust"), of which the Debtor is a grantor, is not available to satisfy Creditor Claims.  The Debtor is not a beneficiary nor a trustee for the Descendent Trust. Though the Descendent Trust holds certain condominium assets, the Debtor asserts these trust assets are not available to satisfy estate Claims. Second, the Green Leaf Trust: this trust is also not within the control of the Debtor, nor is he a beneficiary, or entitled to direct the Green Leaf Trust.  Therefore, the assets of the Green Leaf Trust are not available to satisfy estate Claims.  With respect to any remaining trusts, where the

Debtor either is a beneficiary and/or maintains some level of control, (x) any assets available for distribution from such trusts as of the Effective Date shall be deemed Non-Exempt Assets subject to liquidation by the Disbursement Agent under the Plan, and (y) any distribution to the Debtor of income generated by such trusts following the Effective Date shall be included as Plan Income under the Plan. See Schedule A.

### 8.  Conditions to Confirmation

The Bankruptcy Court will not enter the Confirmation Order unless and until each of the following conditions has been satisfied or duly waived (if waivable):

(a)     The documents implementing the Plan will be in form and substance acceptable to the Debtor and will have been provided to the Bankruptcy Court.

(b)     The Confirmation Order is in a form and substance acceptable to the Debtor and, among other things, makes findings that particular subsections 1129 of the Bankruptcy Code have been met, including (i) that the Debtor and his representatives have proposed and obtained confirmation of the Plan in good faith; (ii) that the Plan is in the best interests of creditors; and (iii) that the Plan is fair and equitable to Holders of Claims.

(c)     All of the schedules, documents, supplements and exhibits to the Plan shall have been filed in form and substance acceptable to the Debtor.

The foregoing conditions of the confirmation of the Plan may be waived in whole or in part by the Debtor upon approval of the Bankruptcy Code.

### E.  *Plan Confirmation Effect*

### 1.  Debtor's Discharge

Except as expressly provided in the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtor that arose before the Effective Date. Except as expressly provided in the Plan or the Confirmation Order, on the Discharge Date (and subject to its occurrence), entry of the Confirmation Order shall be deemed to act as a discharge and release under Bankruptcy Code section 1141(d)(1)(A) of all Claims against the Debtor and his assets, arising at any time before the Effective Date, regardless of whether a proof of Claim was filed, whether the Claim is Allowed, or whether the Holder of the Claim votes to accept the Plan or is entitled to receive a Distribution under the Plan, provided, however, that in no event shall occurrence of the Discharge Date discharge  the Debtor from any obligations remaining under the Plan as of the Discharge Date.  No later than five (5) business days after the occurrence of the Discharge Date, the Debtor shall file with the Bankruptcy Court a notice of the occurrence of the Discharge Date and serve such notice on all creditors.  In addition, following the occurrence of the

Discharge Date, the Debtor shall file a motion seeking entry of an order of discharge after notice and a hearing, which motion (and the discharge) shall be granted upon a showing that the Debtor has made all payments required under the Plan. Except as expressly provided in the Plan or the Confirmation Order, any Holder of a discharged Claim will be precluded from asserting against the Debtor or any assets of the Debtor any other or further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date. Except as expressly provided in the Plan or the Confirmation Order, and subject to the occurrence of the Discharge Date, the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtor to the extent allowed under Bankruptcy Code section 1141, and the Debtor will not be liable for any Claims and will only have the obligations that are specifically provided for in the Plan. Notwithstanding the foregoing, nothing contained in the Plan or the Confirmation Order shall discharge the Debtor from (i) any debt excepted from discharge under Bankruptcy Code section 523 by Final Order of the Bankruptcy Court unless the Holders of such Claims have agreed to same.

Notwithstanding the foregoing, Allowed Claims of Electing Plaintiffs under Class 5 that have selected Opt-In Settlement Unsecured Claims shall be discharged after receipt of payments that give rise to the occurrence of the Payment Trigger. Such payment shall be in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Claim.

Notwithstanding anything to the contrary set forth in this Section, Non-Electing Plaintiffs under Class 6 will be enjoined against collecting against the Debtor during the Plan Term; however, such Non-Electing Plaintiffs may collect against the Debtor at the conclusion of the Plan Term if they have a Final Order allowing their Claim and finding such Claim non-dischargeable.

## 2. **Injunction**

Except as otherwise provided in the Plan, the Confirmation Order shall provide that from and after the Effective Date with respect to the Debtor, all Holders of Claims against the Debtor are permanently enjoined from taking any of the following actions against the Debtor, or any of his property on account of any such Claim: (a) commencing or continuing in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or Lien; (d) asserting a setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; or (e) commencing or continuing, in any manner or in any place, any action that does not conform to or comply with, or is inconsistent with, the provisions of the Plan . If allowed by the Bankruptcy Court, any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator. Should a Plan Default have occurred and is continuing, this Plan Injunction shall lift in accordance with a Bankruptcy Court order determining the existence of such Plan Default.

Notwithstanding the foregoing, the Non-Electing Plaintiffs whose claims have been determined to be non-dischargeable by an order of a court of competent jurisdiction that has not been stayed, shall be enjoined from taking action against the Debtor as set forth above solely during the Plan Term, unless otherwise set forth herein.

### F.  *Retention of Jurisdiction*

Unless otherwise provided herein or in an order of the Bankruptcy Court (including without limitation the Confirmation Order), all injunctions or stays provided in the Bankruptcy Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, with respect to the Debtor. Upon the Effective Date, the injunction provided in Section 9.05 of the Plan shall be effective.

### G.  *Modification of Reservation of the Plan*

The Debtor reserves the right to modify the Plan either before or after the Confirmation Date to the fullest extent permitted under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, including but not limited to modifications necessary to negotiate the resolution of any objection to confirmation of the Plan. The Debtor may withdraw the Plan at any time before the Confirmation Date, or thereafter prior to the Effective Date. The Debtor may amend the Plan before or after the Effective Date as provided in section 1127 of the Bankruptcy Code.

### H.  *Executory Contracts and Unexpired Leases*

#### 1.   General Treatment; Rejected if Not Assumed

The Plan constitutes and incorporates a motion under Bankruptcy Code sections 365 and 1123(b)(2) to (a) reject, as of the Effective Date, all Executory Contracts to which the Debtor is a party, except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and (b) assume all Executory Contracts identified in any schedule of assumed contracts that may be included in the Plan Supplement.

The Confirmation Order shall constitute an order of the Bankruptcy Court under the Bankruptcy Code sections 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date. Notice of the Confirmation shall constitute notice to any non-debtor party to an Executory Contract that is to be assumed or rejected under the Plan of the proposed assumption or rejection such Executory Contract and proposed Cure Amount. For the avoidance of doubt, to the extent the Debtor's premarital agreement could be characterized as an executory contract, such agreement shall be assumed under this Plan.  The Debtor does not anticipate any cure costs associated with such agreement.

#### 2.   Cure Payments and Release of Liability

Except as otherwise provided in a Final Order, pursuant to Bankruptcy Code sections 365(a), (b), (c), and (f), all Cure Claims that may require payment under Bankruptcy Code section 365(b)(1) under any Executory Contract that is assumed pursuant to a Final Order shall be paid by the Debtor within fifteen (15) Business Days after such order becomes a Final Order with respect to Cure Claims that are not Disputed or within fifteen (15) Business Days after an assumed Executory Contract has not filed an appropriate pleading on or before the date of the Confirmation

Hearing. If a party to an assumed Executory Contract has not filed an appropriate pleading on or before the date of the Confirmation Hearing disputing any proposed Cure Claim, the cure of any other defaults, the promptness of the Cure Claim payments, or the provision of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters. Any party to an assumed Executory Contract that receives full payment of a Cure Claim shall waive the right to receive any payment on a Class 6 General Unsecured Claim that relates to or arises out of such assumed Executory Contract.

### 3.  Bar to Rejection Damages

If the rejection of an Executory Contract pursuant to Section 7.01 of the Plan gives rise to a Claim by any non-Debtor party or parties to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Estate, or the agents, successors, or assigns of the foregoing, unless a proof of such Claim is filed with the Bankruptcy Court and served upon the Debtor on or before the Rejection Bar Date. Any Holder of a Claim arising out of the rejection of an Executory Contract that fails to file a proof of such Claim on or before the Rejection Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtor, the Estate or any of their assets and properties. Nothing contained herein shall extend the time for filing a proof of Claim for rejection of any Executory Contract rejected before the Confirmation Date.

### 4.  Rejection Claims

Any Rejection Damage Claim arising from the rejection of an Executory Contract shall be treated as a General Unsecured Claim pursuant to the Plan, except as limited by the provisions of the Bankruptcy Code sections 502(b)(6) and 502(b)(7) and mitigation requirements under applicable law. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Rejection Damage Claim or shall be deemed a waiver by the Debtor or any other party in interest of any objections to such Rejection Claim if asserted.

### 5.  Distributions Under the Plan

All Distributions to any Holder of an Allowed Claim shall be made by the Disbursement Agent at the address of each such Holder as set forth on the proof of Claim filed by such Holder (or at the last address of such a Holder known to the Debtor if no proof of Claim is filed or if the Disbursement Agent has been notified in writing of a change of address). The Trustee of the RSS Trust may serve as the Disbursement Agent. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Disbursement Agent is notified in writing of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest. Any Holder of an Allowed Claim whose Distribution is undeliverable must make demand for such Distribution to the Disbursement Agent in writing on or before 120 days after the date such undeliverable Distribution was initially made, after which the Distribution shall be retained by the Disbursement Agent for Distribution to other Holders of Claims pursuant to the terms of the Plan, and any claim by such intended recipient with respect to such undeliverable Distribution shall be discharged and forever barred. The Disbursement Agent may employ or contract with other Persons as reasonably

determined by the Disbursement Agent to assist in or make the Distributions required under the Plan. **To the extent that the Disbursement Agent is required by applicable law to file information returns regarding payments to creditors with taxing authorities including, but not limited to, the Internal Revenue Service, the Disbursement Agent shall obtain an executed Internal Revenue Service Form W-9 (W-8 for non-US entities and individuals) from any or all Holders of a Claim prior to making any Distribution. Should any Holder of a Claim not provide the Disbursement Agent with such document within 60 days of receipt of the request for a W-9 or W-8, as applicable, then the Disbursement Agent shall provide written notice to such Holder of the failure to provide a W-9 or W-8, as applicable, and 30 additional days to provide such information. Should any Holder of a Claim not timely provide an executed W-9 or W-8, as applicable, within the ninety (90) day period referenced above, the Disbursement Agent may file an objection to the Claim of such non-responding Holder based on the non-responding Holder's failure to provide the W-9 or W-8 (with all required information) and shall serve the objection on such non-responding Holder via first class mail. If the non-responding Holder of the Claim fails to respond to the objection or fails to provide to the Disbursement Agent the W-9 or W-8, as applicable (with all required information) within thirty (30) days after the objection is filed, the Bankruptcy Court may disallow such Claim for all purposes and any funds to be paid such Holder of a disallowed Claim shall be distributed in accordance with the terms of the Plan. The Disbursement Agent shall serve any order disallowing the non- responding Holder's Claim within five (5) business days after entry of such order. The Disbursement Agent's right to object to a Claim is limited to the failure of a Holder of a Claim to provide to the Disbursement Agent a W-9 or W-8, as applicable. The Holder of such Disallowed Claim shall be forever barred from pursuing the Disbursement Agent for payment of such Claim.**

The Disbursement Agent shall make the Distributions required under the Plan. The Disbursement Agent shall be entitled to review the financial information of FSS and the Debtor in accordance with the terms of the agreement entered into with the Disbursement Agent. The Disbursement Agent shall also be responsible for the sale or other monetization of Non-Exempt Assets under the Plan.

The Disbursement Agent shall establish a bank account, initially funded with 30% of the Net Proceeds from the sale of Non-exempt Assets which may be used to fund the initial expenses of the Disbursement Agent, including payment of the Disbursement Agent's fees, on an ongoing basis. Additional Disbursement Agent expenses shall be paid directly by the Debtor.

**THIS IS ONLY A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN. THE PLAN INCLUDES OTHER PROVISIONS THAT MAY AFFECT YOUR RIGHTS. YOU ARE URGED TO READ THE PLAN IN ITS ENTIRETY BEFORE VOTING ON THE PLAN.**

## VI.    CONFIRMATION OF THE PLAN

### A. *Solicitation of Votes: Voting Procedures*

1. **Ballots and Voting Deadlines**

A ballot to be used for voting to accept or reject the Plan, together with a postage-paid return envelope, is enclosed with all copies of the Disclosure Statement mailed to all Holders of Claims entitled to vote.

**BEFORE COMPLETING YOUR BALLOT, PLEASE READ CAREFULLY THE INSTRUCTIONS SHEET THAT ACCOMPANIES THE BALLOT.**

The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than **4:00 p.m., prevailing Central Time, on February 12, 2024**, at the following address:

> **Vickie Driver**
> **Crowe & Dunlevy**
> **2525 McKinnon Street, Suite 425**
> **Dallas, Texas 75201**

**YOUR BALLOT MAY NOT BE COUNTED IF IT IS RECEIVED AT THE ABOVE ADDRESS AFTER 4:00 P.M., PREVAILING CENTRAL TIME, ON FEBRUARY 12, 2024.**

### 2.  Parties in Interest Entitled to Vote

Any Person who, as of the Voting Record Date (i.e., January 24, 2024) was the Holder of a Claim against the Debtor and whose Claim has not previously been disallowed by the Bankruptcy Court is entitled to vote to accept or reject the Plan, if such Claim is impaired under the Plan and either (i) such Holder's Claim has been scheduled by the Debtor (and such Claim is not scheduled as disputed, contingent, or unliquidated) or (ii) such Holder has filed a timely proof of Claim. Any Claim as to which an objection has been filed is not entitled to vote, unless the Bankruptcy Court, upon application of the Holder to whose Claim an objection has been made, temporarily allows such Claim in an amount that it deems proper for the purpose of accepting or rejecting the Plan. Any such application must be heard and determined by the Bankruptcy Court on or before commencement of the Confirmation Hearing. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

### 3.  Definition of Impairment

As set forth in section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan:

> (a)    leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or

        (b)      notwithstanding any contractual provision or applicable law that entitles the holder of a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:

        (i)      cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code;

        (ii)      reinstates the maturity of such claim or interest as it existed before such default;

        (iii)      compensates the holder of such claim or interest of any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

        (iv)      does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

### 4.  Impaired Classes Under the Plan

Claims against the Debtor in Classes 5, 6, and 7 are impaired under the Plan, and the Holders of those Claims are entitled to vote to accept or reject the Plan.

### 5.  Unimpaired Classes Under the Plan

Claims against the Debtor in Classes 1, 2, 3, and 4 are not impaired under the Plan. The Holders of those Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are thus not entitled to vote on the Plan.

### 6.  Vote Required for Class Acceptance

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class that actually casts ballots for acceptance or rejection of the plan. Thus, class acceptance takes place only if at least two-thirds in amount and a majority in number of the holders of claims voting cast their ballots in favor of acceptance.

## B.  *Confirmation Hearing*

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan. By order of the Bankruptcy Court, the Confirmation Hearing will be scheduled to begin between March 25 and 27, **2024,**in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. The Bankruptcy Court may adjourn the Confirmation Hearing from time to time without further notice other than an announcement made at the confirmation hearing or any adjournment thereof.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. The Bankruptcy Court will also set the deadline for parties to file and serve objections, if any, to confirmation of the Plan, which must be made in writing and filed with the Bankruptcy Court at the following address on or before such deadline:

U.S. Bankruptcy Court
Southern District of Texas, Houston Division
515 Rusk, Courtroom 401
Houston, TX 77002

In addition, any such objection must be served upon and received by the following parties, together with proof of service, no later than such deadline, to be determined by the Bankruptcy Court:

Vickie L. Driver
Crowe & Dunlevy, P.C.
2525 McKinnon St., Suite 425
Dallas, Texas 75201

Shelby Jordan
Jordan & Ortiz, P.C.
500 North Shoreline Blvd., Suite 804
Corpus Christi, TX 78401

**BANKRUPTCY RULE 9014 GOVERNS OBJECTIONS TO CONFIRMATION OF THE PLAN. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, THE BANKRUPTCY COURT MAY NOT CONSIDER IT.**

### C. *Requirements for Confirmation of a Plan*

At the Confirmation Hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in section 1129 of the Bankruptcy Code, the requirements are as follows:

1.    The Plan complies with the applicable provisions of the Bankruptcy Code.

2.    The proponents of the plan complied with the applicable provisions of the Bankruptcy Code.

3.    The plan has been proposed in food faith and not by any means forbidden by law.

4.      Any payment made or promised by the Debtors, by the plan proponents, or by a person, issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.

5.

(a)(i)   The proponent of the plan has disclosed the identify and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtors, an affiliate of the Debtors participating in a joint plan with the Debtor, or a successor to the Debtors under the plan; and

(a)(ii)  the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(b)      the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor and the nature of any compensation for such insider.

6.      Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

7.      With respect to each impaired class of claims or interests:

(a)(i)    each holder of a claim or interest of such class has accepted the plan or will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated on such date under Chapter 7 of the Bankruptcy Code on such date; or

(a)(ii)   if section 111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

8.      With respect to each class of claims or interests:

(a)      such class has not accepted the plan; or

(b)      such class is not impaired under the plan.

9.      Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

(a)      with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(b)      with respect to a class of claims of a kind specified in section 501(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of the Bankruptcy Code, each holder of a claim of such class will receive:

(i)      if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii)      if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claims; and

(c)      with respect to a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of a claim will receive on account of such claim regular installment payments in cash—

(i)      of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii)      over a period ending no later than 5 years after the date of the order for relief under section 301, 302, or 303; and

(iii)      in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

(d)      with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as described in paragraph (c) above.

10.   If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

11.   Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor

to the Debtors under the plan, unless such liquidation or reorganization is proposed in the plan.

12.    All fees payable under 38 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides the payment of all such fees on the effective date of the plan.

13.    The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (c)(1)(B) or (g) of section 1114, at any time prior to confirmation of the plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

14.    In the case in which the Debtor is an individual and in which the holder of an allowed unsecured claim objects to confirmation of the plan—

(a)    the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of the claim; or

(b)    the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be due under the plan, or during the period for which the plan provides payments, whichever is longer.

The Debtor believes that the Plan satisfies all the statutory requirements of Chapter 11 of the Bankruptcy Code that the Debtor has complied or will have complied with all the requirements of Chapter 11, and that the Plan is proposed in good faith.

The Debtor believes that Holders of all Allowed Claims impaired under the Plan will receive payments or distributions under the Plan having a present value as of the Effective Date not less than the amounts likely to be received if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. At the Confirmation Hearing, the Bankruptcy Court will determine whether Holders of Allowed Claims or Interests would receive greater distributions under the Plan than they would receive in liquidation under Chapter 7.

The Debtor also believes that the feasibility requirement for confirmation of the Plan is satisfied by the fact that the Debtor's future operating revenues and income will be sufficient to satisfy the Debtor's obligations under the Plan, and all creditors will ultimately be paid in full. These facts and other demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

### D.    *Cramdown*

In the event that any impaired Class of Claims entitled to vote on the Plan does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each

such impaired Class that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to that Class. A plan of reorganization "does not discriminate unfairly" within the meaning of the Bankruptcy Code if no Class receives more than it is legally entitled to receive for its claims or equity interests.

"Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

1.     With respect to a class of *secured claims*, the plan provides:

(a)(i)   that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii)     that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property

(b)      for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

2.     With respect to a class of unsecured claims, the plan provides:

(a)      that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(b)      the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the Debtor is an individual, the Debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14).

1.     With respect to a class of *interest*, the plan provides:

(a) that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b) that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

In the event that one or more Classes of impaired Claims reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejected impaired Class of Claims. For the reasons set forth above, the Debtor believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired Class of Claims.

## VII. <u>RISK FACTORS</u>

The following is intended as a summary of certain risks associated with the Plan, but it is not exhaustive and must be supplemented by the analysis and evaluation made by each Holder of a Claim of the Plan and this Disclosure Statement as a whole with such Holder's own advisors.

### A. *Insufficient Acceptances*

For the Plan to be confirmed, each impaired Class of Claims is given the opportunity to vote to accept or reject the Plan. With regard to such impaired voting Classes, the Plan will be deemed accepted by claimants in such Class actually voting on the Plan who hold at least two thirds (2/3) in amount and more than one half (1/2) in number of the total Allowed Claims of the Class voted. Only those members of a Class who vote to accept or reject the Plan will be continued for voting purposes. The Debtor reserves the right to request confirmation pursuant to the cramdown provisions in section 1129(b) of the Bankruptcy Code, which will allow confirmation of the Plan regardless of the fact that a particular impaired Class of Claims has not accepted the Plan. However, there can be no assurance that any impaired Class of Claims under the Plan will accept the Plan or that the Debtor would be able to use the cramdown provisions of the Bankruptcy Code for confirmation of the Plan.

### B. *Confirmation Risks*

The following specific risks exist with respect to confirmation of the Plan:

(i) Any objection to confirmation of the Plan filed by a member of a Class of Claims can either prevent confirmation of the Plan or delay confirmation for a significant period of time.

(ii) If the Debtor must seek confirmation of the Plan over the rejection of one or more impaired Classes of Claims, the cramdown process could delay or prevent confirmation.

### C. *Post-Confirmation Risks*

The Debtor's performance of his obligations under the Plan is subject to his ability to continue to generate income in the future from his existing assets and businesses and/or from other

business opportunities that may arise in the future. In many instances, the Debtor's ability to realize income from these businesses is dependent on the continued interest and performance of third parties, such as viewers. While the Debtor believes that he will be able to meet all of his obligations under the Plan, should the Debtor's businesses, particularly FSS, fail to generate sufficient Net Proceeds, the Debtor's ability to meet his obligations under the Plan could be adversely affected. Deplatforming may also adversely affect the Debtor's ability to generate funds, through FSS or otherwise, that contribute to his obligations under the Plan. Further, the Debtor's media and broadcasting company is subject to an increasingly oversaturated media market and fluctuations in interest due to negative publicity received by the Debtor. FSS is also subject to the same industry specific and general economic risk factors that face all similarly situated businesses. The Debtor may experience a health condition or end-of-life event, or become incapacitated, such that he cannot work and thus contribute to the Plan. Before voting on the Plan, each Holder of a Claim entitled to vote on the Plan should carefully consider the risk factors set forth herein as well as all of the information contained in this Disclosure Statement and hereto.

## VIII.       ALTERNATIVE TO CONFIRMATION AND CONSUMMATION OF THE PLAN: LIQUIDATION ANALYSIS

The Debtor has evaluated other alternatives to reorganization under the Plan, including the liquidation of the Debtor. After studying possible alternatives to the Plan, the Debtor has concluded that the Plan is the best alternative and will maximize recoveries by Holders of Claims, assuming confirmation of the Plan and consummation of the transactions contemplated by the Plan. The following discussion provides a summary of the Debtor's analysis leading to its conclusion that the Plan will provide the highest value to Holders of Claims.

In contrast to the Plan, the Debtor could liquidate pursuant to Chapter 7 of the Bankruptcy Code. In a Chapter 7 bankruptcy, a trustee is appointed to collect and liquidate property of the bankruptcy estate for the benefit of all creditors in the order of their priority under the Bankruptcy Code. The Debtor has analyzed whether a Chapter 7 liquidation of the assets of the Debtor would be in the best interests of the Creditors and has determined unsecured creditors would receive less in a Chapter 7 than under the Plan.

Although Chapter 11 administrative costs are subordinated to the Chapter 7 administrative costs, both the administrative costs of the Chapter 11 and Chapter 7 are senior to unsecured creditors. The Debtor does not believe that a Chapter 7 would provide any tangible benefit to unsecured creditors, which could ever exceed the distributions received under the Plan. Indeed, the Debtor believes unsecured creditors would more than likely receive substantially less in a Chapter 7, in large part because, under the Plan, the Debtor will liquidate his most valuable assets for the benefit of the Creditors and contribute millions of dollars in future income to the Plan for distribution, while in a Chapter 7 liquidation unsecured creditors would receive between $4.1M and $6.7M. A more detailed liquidation analysis is attached hereto as Exhibit D.

Accordingly, the Plan satisfies the requirement under the Bankruptcy Code section 1129(a)(7) that requires creditors receive under a plan of reorganization as much as they would receive in a Chapter 7.

## IX.      CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### A.   *Importance of Obtaining Professional Tax Assistance*

THE FOLLOWING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN LIKELY U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN, TO PROVIDE ASSISTANCE AND GENERAL GUIDANCE, IS NOT PROFESSIONAL ADVICE, AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE BELOW DISCUSSION IS FOR GENERAL INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE U.S. FEDERAL, STATE, AND LOCAL, IF APPLICABLE, TAX CONSEQUENCES OF THE PLAN.

### B.   *Discharge of Indebtedness*

The Internal Revenue Code ("IRC") generally provides that a taxpayer must include in income the amount of discharge of indebtedness ("DOI") it realizes when its creditors accept less than full payment in satisfaction of the creditors' undisputed debts. The realized amount of DOI is generally the difference between the amount of indebtedness and the amount received by the creditor in exchange for the indebtedness. However, IRC Section 108(a) provides that DOI will not be included in the taxpayer's taxable income if that taxpayer is under the jurisdiction of a court in a case under Title 11 of the United State Code (i.e., a chapter 11 bankruptcy) and the DOI arises from a court ordered discharge or arises pursuant to a plan of reorganization approved by a bankruptcy court. in the event IRC Section 108(a) excludes DOI from the income of a debtor in bankruptcy, the debtor's tax attributes will be reduced by the amount of DOI from the income of a debtor so general business credit carryovers, capital loss carryovers and the tax basis of its assets. In the alternative, the debtor may make an election to alter the order of attributable reduction such that the tax basis of depreciable property would be reduced first.

### C.   *Impact on Holders of Claims Against Debtors*

With respect to the Distributions to Holders of Claims under the Plan, the Debtor urges any Holder of Claims under the Plan, concerned about tax consequences of the Plan on that party to consult its tax advisor. The tax consequences of the Plan to individual Holders of Claims will obviously hinge on the specific circumstances of that Holder.

### D.   *Circular 230 Disclosures*

The Disclosure Statement was not intended nor written by the Debtor or the Debtor's representatives to be used (and it shall not be used) by any taxpayer to avoid penalties that might otherwise be imposed on the taxpayer in connection with (or as a result of) any of the transactions or matters described herein. This Disclosure Statement was written to support the promotion or

marketing of the transactions or matters addressed in this Disclosure Statement. Each taxpayer should seek tax advice based on his or her particular circumstances from an independent advisor.

## X.     CONCLUSION

The Debtor urges all Holders of Claims to vote to ACCEPT the Plan and to evidence such acceptance by mailing their ballots in the self-addressed stamped envelope so that they will be received by **4:00 p.m., prevailing Central Time, on February 12,** 2024.


**DATED: January 29, 2024**

**ALEXANDER E. JONES**
<u>/s/ *DRAFT* ____</u>

# EXHIBIT A

*Solicitation Version*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **ALEXANDER E. JONES,** | § | |
| | § | |
| Debtor. | § | **Case No. 22-33553 (CML)** |
| | § | |

---

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

---

Dated: January 23, 2024.

**CROWE & DUNLEVY, P.C.**

Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX 78401
Telephone: (361) 884-5678
Facsimile: (361) 888-5555
Email: sjordan@jhwclaw.com
aortiz@jhwclaw.com

**ATTORNEYS FOR ALEXANDER E. JONES**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 5

SUMMARY OF PLAN ....................................................................................................... 5

ARTICLE I: ......................................................................................................................... 6

DEFINITIONS, CONSTRUCTION, AND INTERPRETATION ...................................... 6

ARTICLE II: ...................................................................................................................... 13

UNCLASSIFIED CLAIMS ............................................................................................... 13

    2.01.    *Administrative Claims*.............................................................................. 13

    2.02.    *Priority Tax Claims*................................................................................. 14

    2.03.    *Domestic Support Obligations.* ............................................................... 15

    2.04.    *U.S. Trustee Fees.* .................................................................................... 15

ARTICLE III: ..................................................................................................................... 15

CLASSIFICATION OF CLAIMS ..................................................................................... 15

    3.01.    *Introduction.* ............................................................................................ 15

    3.02.    *Claims Against the Debtor.* ..................................................................... 16

ARTICLE IV ...................................................................................................................... 16

IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS ............................. 16

    4.01.    *Unimpaired Claims* ................................................................................. 16

    4.02.    *Impaired Claims* ...................................................................................... 16

    4.03.    *Controversy Concerning Impairment* .................................................... 16

ARTICLE V ....................................................................................................................... 17

TREATMENT OF CLAIMS.............................................................................................. 17

    5.01.    *Non-Tax Priority Claims – Class 1* ........................................................ 17

    5.02.    *Priority and Secured Tax Claims – Class 2* ........................................... 17

    5.03.    *Secured Claim of Bank of America – Class 3*......................................... 18

    5.04.    *Secured Claim of Security Bank of Crawford – Class 4* ........................ 18

    5.05.    *"Opt-In Settlement" Unsecured Claims – Class 5*.................................. 18

    5.06.    *General Unsecured Claims – Class 6*...................................................... 20

    5.07.    *Administrative Convenience Claims – Class 7* ....................................... 20

ARTICLE VI....................................................................................................................... 21

**MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN** .............................. 21

    *6.01.*    *The Settlement* ..................................................................................... 21

    *6.02.*    *Sources of Cash and Terms of Payment for Plan Distributions*..................... 22

    *6.03.*    *Payments.* .............................................................................................. 22

    *6.04.*    *Post Effective Date Management.* ............................................................. 23

**ARTICLE VII**.................................................................................................... 23

**TREATMENT OF EXECUTORY CONTRACTS** ..................................................... 23

    *7.01.*    *General Treatment of Executory Contracts: Rejected*................................. 23

    *7.02.*    *Cure Payments and Release of Liability* ................................................... 23

    *7.03.*    *Bar to Rejection Claims* ......................................................................... 24

    *7.04.*    *Rejection Claims* ................................................................................... 24

**ARTICLE VIII** .................................................................................................. 24

 **CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION** ............................................................................................. 24

    *8.01.*    *Conditions Precedent to Confirmation Date*............................................. 24

    *8.02.*    *Conditions Precedent to the Effective Date* .............................................. 25

    *8.03.*    *Consequences of Non-Occurrence of Effective Date*.................................. 25

**ARTICLE IX** .................................................................................................... 25

**EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE**................................ 25

    *9.01.*    *Binding Effect* ...................................................................................... 25

    *9.02.*    *Vesting of Assets* ................................................................................... 26

    *9.03.*    *Assertion of Causes of Action, Defenses and Counterclaims*...................... 26

    *9.04*    *Discharge of Debtor*.............................................................................. 27

    *9.05*    *Injunction*............................................................................................ 28

    *9.06*    *Term of Bankruptcy Injunction or Stays* .................................................. 28

    *9.07*    *Effectuating Documents; Further Transactions; Timing*............................. 28

**ARTICLE X**...................................................................................................... 29

**OBJECTIONS TO CLAIMS; DISTRIBUTIONS** ..................................................... 29

    *10.01.*    *Objections to Claims* ........................................................................... 29

    *10.02.*    *Objection Deadline* ............................................................................. 29

    *10.03.*    *Settlement of Objections to Claims*........................................................ 29

    *10.04.*    *No Interest on Claims* .......................................................................... 29

10.05. *Setoffs by the Debtor; No Waiver* ........................................................................... 29

10.06. **Procedures for Treating and Resolving Disputed and Contingent Claims** ................... 30

10.07. **Distributions Under the Plan** ..................................................................................... 32

10.08. **Duty to Disgorge Overpayments** ................................................................................. 33

10.09 **Duties of the Disbursement Agent** .............................................................................. 33

10.10 **Disbursement Agent Expenses** .................................................................................... 34

**ARTICLE XI** ............................................................................................................................. 34

**ACCEPTANCE OR REJECTION OF THE PLAN** ............................................................... 34

11.01. *Impaired Classes Entitled to Vote* ............................................................................... 34

11.02. *Acceptance by an Impaired Class* ................................................................................ 34

11.03 *Elimination of Vacant Classes.* ................................................................................... 34

11.04. *Section 1129(b) Cramdown* .......................................................................................... 34

**ARTICLE XII** ........................................................................................................................... 35

**RETENTION OF JURISDICTION** ....................................................................................... 35

12.01. *Jurisdiction* .................................................................................................................. 35

12.02. *Examination of Claims* ................................................................................................ 35

12.03. *Determination of Disputes* ........................................................................................... 35

12.04. *Additional Purposes* .................................................................................................... 35

12.05. *Failure of the Bankruptcy Court to Exercise Jurisdiction* .......................................... 37

**ARTICLE XIII** .......................................................................................................................... 37

**MISCELLANEOUS PROVISIONS** ....................................................................................... 37

13.01. *General Notices* ........................................................................................................... 38

13.02. *Exemption From Transfer Taxes* .................................................................................. 38

13.03. *Asserting and Curing Default Under the Plan* ............................................................. 38

13.04. *Revocation or Withdrawal of the Plan* ......................................................................... 39

13.05. *Modification of the Plan* .............................................................................................. 39

13.06. *Computation of Time* ................................................................................................... 40

13.07. *Due Authorization* ....................................................................................................... 40

13.08. *Implementation* ............................................................................................................ 40

13.09. *Execution of Documents* .............................................................................................. 40

13.10. *Bankruptcy Restrictions* .............................................................................................. 40

13.11. *Limited Plan Exculpation.* ........................................................................................... 40

13.12. *Ratification* .................................................................................................................. 41

*13.13.*    ***Integration Clause.*** .................................................................................................. ***41***

*13.14*    ***Interpretation*** .......................................................................................................... ***41***

*13.15*    ***Severability of Plan Provisions*** .......................................................................... ***41***

*13.16*    ***Governing Law*** ......................................................................................................... ***41***

## INTRODUCTION

Alexander E. Jones proposes this Plan pursuant to Bankruptcy Code section 1121(a). Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtor's assets, liabilities, resolutions of certain material disputes, future income projections, liquidation analysis, risk factors, summary and analysis of the Plan, and certain related matters. The Distributions to be made pursuant to this Plan to Holders of Allowed Claims, in each of the Classes of Claims against the Debtor set forth in Article III of this Plan, are set forth in Article V of this Plan.

THE DEBTOR URGES ALL HOLDERS OF CLAIMS TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY. NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND ANY DOCUMENTS, SCHEDULES OR EXHIBITS ATTACHED THERETO OR REFERENCED THEREIN HAVE BEEN AUTHORIZED BY THE DEBTOR OR THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

## SUMMARY OF PLAN[1]

The Plan provides for the reorganization of the Debtor and the payment of Allowed Claims through: (a) the continued orderly liquidation of certain non-exempt assets of the Debtor; (b) the settlement of various estate claims against individuals and businesses; and (c) the Debtor's commitment to contribute substantial funds from his future income.  More specifically, the Debtor will contribute 100% of the Net Disposable Income of Free Speech System, LLC ("FSS") as set forth in the FSS Plan and 50% of the Debtor's Plan Income to both settling and non-settling parties, until such time as certain minimum payments have been contributed for settling parties, and then 25% of the Debtor's Plan Income over the remaining Plan Term to non-settling parties.  As a result, all allowed administrative claims, priority claims, and secured claims will be paid in full, and allowed unsecured creditors will receive a substantial Distribution (and significantly more than they would receive in a liquidation whether through a liquidating chapter 11 plan or a chapter 7).

The Plan also allows for unsecured creditors to opt in to a "settling class" allowing for faster payment of their claims and repayment from certain non-exempt assets of the Debtor in exchange for settlement of certain existing litigation claims. This settlement class facilitates the Plan and benefits all stakeholders by resolving pending litigation that would otherwise be both costly and time consuming for the Debtor and the bankruptcy estate. Finally, the Plan incentivizes the Debtor to satisfy his obligations to fund the Plan as soon as possible to accelerate payments to creditors.

---

[1] This Summary is intended solely to provide an overview of the Plan.  The Summary shall not be binding on the Debtor, and in the event of any conflict between the Summary and any other provision of the Plan, such other provision shall be controlling.

## ARTICLE I:

## DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

The capitalized terms used herein shall have the respective meanings set forth below. A capitalized term used herein that is not defined in this Article shall have the meaning ascribed to that term, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa. All exhibits and schedules attached to the Plan are incorporated herein.

1.01.   *"Administrative Claim"* means any Claim for an Administrative Expense.

1.02.   *"Administrative Expense"* means any cost or expense of administration of this case incurred on or before the Effective Date that is entitled to priority under section 507(a)(2) and allowed under section 503(b) of the Bankruptcy Code, including, without limitation, Fee Claims and all other claims for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, Cure Claims, and all fees and charges assessed against the Debtor's Estate under the Bankruptcy Code.

1.03.   *"Allowance Date"* means the date on which a Claim, an Administrative Claim, or any Secured Claim becomes an Allowed Claim.

1.04.   *"Allowed"* means, when used with respect to a Claim (including any Administrative Claim), or any portion thereof, a Claim, Administrative Claim, or any portion thereof (a) that has been allowed by a Final Order, (b) that was listed in the Schedules as neither disputed, contingent nor unliquidated and for which no timely Proof of Claim was filed, (c) for which a Proof of Claim in a liquidated amount has been timely filed pursuant to the Bankruptcy Code or as required by any Final Order of the Bankruptcy Court and as to which either (i) no objection to its allowance has been filed on or before the Objection Deadline or within any other period fixed by the Bankruptcy Code or a Final Order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount in the Plan. For the avoidance of doubt, in order to have an Allowed Claim, each Non-Electing Plaintiff must have a Final Order against the Debtor in their respective state court litigation case.

1.05.   *"Avoidance Action"* means any cause of action under any of sections 544, 545, 546, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code, which actions are waived except as specified in the Plan.

1.06.   *"Bankruptcy Case"* means the Debtor's Bankruptcy Case No. 22-33553 under chapter 11 of the Bankruptcy Code.

1.07.   *"Bankruptcy Code"* means the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

**1.08.** *"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or such other court having jurisdiction over this case.

**1.09.** *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

**1.10.** *"Business Day"* means any day on which commercial banks are open for business in Austin, Texas.

**1.11.** *"Cash"* means legal tender of the United States of America or Cash equivalents.

**1.12.** *"Cause of Action"* means any cause of action or right to payment arising under federal, state, or common law, including Avoidance Actions, that the Debtor or the Estate may hold against any Person.

**1.13.** *"Claim"* shall have the meaning provided in section 101(5) of the Bankruptcy Code.

**1.14.** *"Class"* means a category of Holders of Claims as set forth in the Plan.

**1.15.** *"Collateral"* means any property of the Debtor subject to a valid and enforceable lien to secure the payment of a Claim.

**1.16.** *"Confirmation Date"* means the date on which the Bankruptcy Court enters the Confirmation Order.

**1.17.** *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128 on confirmation of the Plan.

**1.18.** *"Confirmation Order"* means the order of the Bankruptcy Court confirming this Plan.

**1.19.** *"Creditor"* shall mean the Holder of a Claim.

**1.20.** *"Cure Claim"* means a Claim arising from the assumption of an Executory Contract under section 365(b) of the Bankruptcy Code.

**1.21.** *"Debtor"* means Alexander E. Jones, and shall also include, where applicable, Jones from and after the Effective Date as reorganized pursuant to this Plan.

**1.22.** *"Disallowed"* means, when used with respect to a Claim, a Claim or the portion thereof which, in a properly entered order of the Bankruptcy Court, is fully and finally (a) denied allowance, or (b) is estimated for purposes of payment or other Plan Distributions at zero ($0.00). Disallowed means, when used with respect to an Administrative Expense of a professional that is a Fee Claim, an Administrative Expense or portion thereof that is denied by the Bankruptcy Court or other court of competent jurisdiction or that is estimated by the Bankruptcy Court for purposes

of payment or other Plan Distributions at zero ($0.00).

**1.23.** ***"Disbursement Agent"*** means a person designated by the Debtor, with the consent of the Electing Plaintiffs, who shall have the responsibilities set forth in Article X of the Plan. The Disbursement Agent may be the same person as the trustee for the FSS Trust.

**1.24.** ***"Discharge Date"*** means the date upon which the Court grants the Debtor a discharge upon the earlier of (i) the Debtor having satisfied his payment obligations under the Plan or (ii) all Allowed Claims shall have been paid.

**1.25.** ***"Disclosure Statement"*** means the Disclosure Statement of Jones with respect to this Plan of Reorganization, as approved by the Court, as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules, together with any Exhibits thereto.

**1.26.** ***"Disputed"*** when used with respect to a Claim, means any such Claim that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated, any Claim that is the subject of an objection filed in the Bankruptcy Court, any Claim that is disputed by the Debtor in any litigation, lawsuit, or adversary proceeding in the Bankruptcy Court or any other court of competent jurisdiction, or any Claim that is not Allowed.

**1.27.** ***"Distribution"*** means the property required by this Plan to be distributed to the Holders of Allowed Claims.

**1.28.** ***"Domestic Support Obligations"*** has the meaning provided in Section 101(14A) of the Bankruptcy Code, as such obligations may be modified from time to time by a court of appropriate jurisdiction.

**1.29.** ***"Effective Date"*** means the first Business Day that is the later of fourteen (14) days after the Confirmation Date of this Plan if the Confirmation Order is not stayed prior to such date or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay.

**1.30.** ***"Electing Plaintiffs"*** means those certain unsecured creditor parties who elect "Opt-In Settlement" Claim Treatment under Class 5 by the Voting Deadline and vote in favor of the Plan.

**1.31.** ***"Electing Plaintiff Pro Rata Share"*** means the ratio, expressed as a percentage, of an Electing Plaintiff's Allowed Claim divided by the Allowed Claims of all Electing Plaintiffs, collectively.

**1.32.** "***Estate"*** means the Debtor's estate in this case created pursuant to section 541 of the Bankruptcy Code.

**1.33.** ***"Executory Contract"*** means any prepetition executory contract or unexpired lease governed by section 365 of the Bankruptcy Code.

**1.34.** *"Fee Application"* means an application for the allowance of a Fee Claim.

**1.35.** *"Fee Claim"* means a Claim by a Professional or any other party-in-interest pursuant to sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code or otherwise relating to services performed after the Petition Date and prior to and including the Effective Date.

**1.36.** *"Final Decree"* means the final decree entered by the Bankruptcy Court on or after the Effective Date and pursuant to Bankruptcy Rule 3022.

**1.37.** *"Final Order"* means (a) an order as to which the time to appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment has expired and as to which no appeal, petition for certiorari or other proceedings for reargument, rehearing, reconsideration, new trial, or to alter or amend findings  or judgment shall then be pending or (b) in the event that an appeal, writ of certiorari, reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall have expired; provided, however that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 59 or Rule 60 of the Federal Rules of Civil Procedure may be filed.

**1.38.** *"FSS"* means Free Speech Systems, LLC.

**1.39.** *"FSS Plan"* means a plan under Chapter 11 Subchapter V of the Bankruptcy Code for FSS.  "FSS Plan" shall refer specifically to Docket No. 756 in Case No. 22-60043 unless further amended by FSS, at which time "FSS Plan" shall refer to such plan as amended.

**1.40.** *"FSS Trust"* means the Free Speech Systems Settlement Trust established pursuant to the FSS Plan.

**1.41.** *"General Unsecured Claims"* means non-priority unsecured claims held by parties-in-interest.

**1.42.** *"GUC Pro Rata Share* means the ratio, expressed as a percentage, of a Holder of an Allowed General Unsecured Claim in Class 6 divided by the Allowed Claims of all Holders of Allowed General Unsecured Claims in Class 6, collectively.

**1.43.** *"Holder"* means a Person who is the beneficial owner of a Claim. For purposes of a Distribution, a Person must be a Holder as of the Initial Distribution Date. For purposes of voting to accept or reject this Plan, a Person must be a Holder as of the Voting Record Date. A Holder may transfer their claim to another Person for purposes of Distribution.

**1.44.** *"Income Stream Payment"* means for a particular Plan Year during the Plan Term (i) 50% of the Debtor's Plan Income for such Plan Year through the end of the year in which the Payment Trigger occurs; and (ii) 25% of the Debtor's Plan Income for each such Plan Year following

the year in which the Payment Trigger occurs.

      **1.45.**   ***"Initial Distribution Date"*** means the date, determined by the Disbursement Agent, as soon as reasonably practical after the Effective Date, that Distributions with respect to Priority Tax Claims, Secured Tax Claims and Non-Tax Priority Claims shall commence.

      **1.46.**   ***"Lien"*** has the meaning provided in Bankruptcy Code section 101(37) and shall include a "statutory lien" as defined in Bankruptcy Code section 101(53).

      **1.47.**   ***"Minimum Annual Distribution"*** means, for each Electing Plaintiff in any given Plan Year during the Plan Term, the Plaintiff Pro Rata Share for such Plaintiff multiplied by $5.5 million, <u>minus</u>, the amount received by such Electing Plaintiff from the FSS Trust with respect to such Plan Year.

      **1.48.**   ***"Net Proceeds"*** means any amounts collected by the Debtor from any disposition of any non-exempt property, after payment of all reasonable and customary costs and expenses associated therewith which may be required to be paid under applicable law or agreement to effectuate the receipt of such proceeds, including, without limitation, any reasonable attorney fees not otherwise paid under the Plan as an Administrative Expense.

      **1.49.**   ***"Non-Electing Payment"*** means, on an annual basis for a particular Plan Year, the Income Stream Payment, minus the Distributions each Electing Plaintiff is entitled to under the Plan.

      **1.50.**   ***"Non-Electing Plaintiffs"*** means those certain unsecured creditor parties who do not elect "Opt-In Settlement" Claim Treatment under Class 5 and will instead be treated as general unsecured creditors under Class 6.

      **1.51.**   ***"Non-Exempt Assets"*** means, the Debtor's Cash as of the Effective Date, less the $250,000 reserve for living and post-confirmation legal expenses (as set forth in Section 6.02), as well as assets listed on the schedules of assets of the Debtor (other than assets scheduled on Schedule C as exempt for which there is no pending exemption objection), including, for the avoidance of doubt, any income tax refund owed to the Debtor as of the Petition Date. Notwithstanding the foregoing, Non-Exempt Assets does not include the Charger, the Rolex Oyster Perpetual Date, or any ownership interests the Debtor holds in entities and trusts, which the Debtor will retain post-confirmation due to the expense in replacing a car, the inability of creditors to reach trust corpus, or the inability to liquidate for value above liquidation costs. For clarity, **Schedule A**, attached hereto, contains a chart setting forth the Non-Exempt Assets, Exempt Assets, and those assets this Plan proposes that the Debtor retain that are not exempt.

      **1.52.**   ***"Non-Tax Priority Claim"*** means any Claim that, if allowed, would be entitled to priority in payment under Bankruptcy Code section 507(a) other than a Priority Tax Claim, an Administrative Claim, or a Domestic Support Obligation.

      **1.53.**   ***"Objection Deadline"*** means the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective Holder(s) thereof as provided in section 10.02 of the Plan, which date shall be ninety (90) days after the Effective Date unless extended by order of the Bankruptcy Court for good cause shown.

10

1.54.   ***"Opt-In Settlement Unsecured Claims"*** means the Claims held by those certain Electing Plaintiffs who elect "Opt-In Settlement" Claim Treatment under Class 5.

1.55.   "***Ordinary Course of Business***" shall have the meaning given to such term as utilized in Section 363(b) of the Bankruptcy Code.

1.56.   "***Payment Trigger***" shall mean the receipt by each Electing Plaintiff of their Plaintiff Pro Rata Share of $55 million, collectively from (i) the FSS Trust; (ii) the Income Stream Payment pursuant to this Plan and (iii) the 70% of proceeds from liquidation of Non -Exempt Assets minus cost of liquidation.

1.57.   ***"Person"*** means and includes natural persons, corporations, limited partnership, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other organizations, irrespective of whether they are legal entities, governments and agencies and political subdivisions thereof or other entities.

1.58.   ***"Petition Date"*** means December 2, 2022.

1.59.   ***"Plaintiff"*** means each of the following: Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, the Estate of Marcel Fontaine, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Sota, Carlee Soto Parisi, Carlos M. Soto, Jilian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker.

1.60.   ***"Plaintiff Pro Rata Share"*** means the ratio, expressed as a percentage, of a Plaintiff's Allowed Claim divided by the Allowed Claims of all Plaintiffs, collectively.

1.61.   ***"Plan"*** or ***"Plan of Reorganization"*** means this Plan of Reorganization either in its present form or as it may hereafter be altered, amended, or modified from time to time.

1.62.   ***"Plan Default"*** means the occurrence of a default under Article XIII of this Plan.

1.63.   ***"Plan Income"*** means, on an annual basis, the amount of cash basis income plus taxable fringe benefits received by the Debtor from all sources, including salary, equity distributions, unspecified donations, proceeds from litigation claims after litigation expenses, and other sources net of direct expenses, after deducting estimated taxes, health insurance, and Domestic Support Obligations. The Disbursement Agent has the sole authority to review the Debtor's annual income and deductions as well as FSS financials to ensure all income is reported and all deductions are appropriate hereunder.  Payments for Disbursement Agent expenses shall be deducted from the initial funding of the 30% Net Proceeds of the Non-exempt Asset liquidation; then from Plan Income prior to calculations for Distributions.  Plan Income shall also include, after the payment of senior classes as well as all Administrative Expense Claims and Priority Claims, the net proceeds from liquidating the Non-Exempt Assets and all Cash contributed by the Debtor to the FSS Trust on or after the Effective Date. For the avoidance of doubt, Plan Income shall not include amounts paid by the FSS Trust pursuant to the FSS Plan.

11

**1.64.** *"Plan Supplement"* shall mean those certain documents and schedules to be filed no later than seven (7) days prior to the Confirmation Hearing, which shall include the identity of the Disbursement Agent and related agreements, the terms of any proposed settlements with Related Parties and schedules of assumed and rejected contracts to the extent applicable.

**1.65.** *"Plan Term"* shall mean the period from the Effective Date through 120 months from the Effective Date, as may be extended pursuant to Section 13.03 hereof, unless otherwise determined by a Final Order of the Bankruptcy Court.

**1.66.** *"Plan Year"* shall mean the twelve month period beginning with the first day of the month following the Effective Date.

**1.67.** *"Priority Tax Claim"* means any Claim against the Debtor that, if Allowed, would be entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

**1.68.** *"Professional"* means a Person defined as a professional person in sections 327 or 1103 of the Bankruptcy Code who has been employed pursuant to an order of the Bankruptcy Court in this chapter 11 case and any professional seeking compensation or reimbursement of costs and expenses in connection with this chapter 11 case pursuant to section 503(b)(4) or 1129(a)(4) of the Bankruptcy Code.

**1.69.** *"Rejection Bar Date"* means the day that is thirty (30) days after the entry of the Confirmation Order.

**1.70.** *"Rejection Damage Claim"* means a Claim by a party to an Executory Contract with the Debtor that has been rejected by the Debtor pursuant to this Plan or a prior Final Order of the Bankruptcy Court entered in this case.

**1.71.** *"Related Parties"* means those certain individuals or companies related to the Debtor via blood, marriage, or ownership as identified on **Schedule B**.

**1.72.** *"Rental Property"* means that certain real property owned by the Debtor located in Travis County, Texas which as of the date of this Plan is occupied by an individual tenant who is not a Related Party.

**1.73.** *"Secured Claim"* means a Claim that is secured by a security interest in or a lien on property of the Estate to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the Claim Holder. Secured Claims shall include Claims secured by security interests or liens junior in priority to existing security interests or liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property after giving effect to all security interests or liens senior in priority.

**1.74.** *"Secured Tax Claim"* means a Claim by a governmental unit for the payment of a

12

tax assessed against property of the Estate and that is secured as of the Effective Date by a Lien against such property, which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the property securing such Claim.

1.75.   *"Schedules"* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement have been or may be supplemented or amended.

1.76.   "*United States Trustee*" means the United States Trustee appointed under Section 591, Title 28, United States Code to serve in the Southern District of Texas.

1.77.   *"Unsecured Claim"* means a Claim that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim or a Non-Tax Priority Claim.

1.78.   "*Voting Record Date*" means the date on which an Order conditionally approving the Disclosure Statement is signed.

## ARTICLE II:

## UNCLASSIFIED CLAIMS

2.01.   **Administrative Claims.**

(a)   **Time for Filing Administrative Claims.**  The Holder of any Administrative Claim that is incurred, accrued, or in existence prior to the Effective Date, other than (i) a Fee Claim, (ii) an Allowed Administrative Claim, or (iii) a liability incurred in the Ordinary Course of Business must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before thirty (30) days after the Effective Date.  Such request must include at a minimum (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim.  Failure to timely and properly file and serve the request required under this Section shall result in the Administrative Claim being forever barred and discharged.  Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party and the Debtor within thirty (30) days after the filing of the applicable request for payment of an Administrative Claim.

(b)   **Time for Filing Fee Claims.**  Any Person who holds or asserts an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application within sixty (60) days after the Effective Date.  Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being forever barred and discharged. No Fee Claim will be deemed Allowed until an order allowing the Fee Claim becomes a Final Order.  Objections to Fee Applications must be filed and served pursuant to the Bankruptcy Rules on the Debtor and the Person to whose application the objections are directed or made within thirty (30) days after the filing of the Fee Application subject to objection.  No hearing may be held on a specific Fee Application until the foregoing objection period with respect to that Fee Application has expired.

(c)      **Allowance of Administrative Claims.**  An Administrative Claim with respect to which a request for payment is required and has been properly filed pursuant to Section 2.01(a) of the Plan shall become an Allowed Administrative Claim if no timely objection is filed.  If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.  An Administrative Claim that is a Fee Claim, and with respect to which a Fee Application has been properly filed and served pursuant to Section 2.01(b) of the Plan, shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.

(d)      **Payment of Allowed Administrative Claims.**  Except to the extent that a Holder of an Allowed Administrative Claim has been paid prior to the Effective Date with respect to Administrative Claims against the Debtor, or agrees to a different treatment, each Holder of an Allowed Administrative Claim (other than Allowed Administrative Claims incurred in the Ordinary Course of Business, which are paid pursuant to Section 2.01(e) below) shall receive from the Debtor, in full satisfaction, release and discharge of and exchange for such Administrative Claim, and after the application of any retainer or deposit held by such Holder, Cash equal to the Allowed amount of such Administrative Claim within ten (10) Business Days after the Allowance Date with respect to such Allowed Administrative Claim.

(e)      **Administrative Claims Incurred in the Ordinary Course of Business.** Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtor during the Bankruptcy Case (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes, or alleged Administrative Claims arising in contract or tort) shall not be required to file any request for payment of such Claims.  Each Administrative Claim incurred in the Ordinary Course of Business of the Debtor will be paid  by the Debtor pursuant to the terms and conditions of the transaction giving rise to such Administrative Claim, without any further action by the Holder of such Administrative Claim. The Debtor reserves and shall have the right to object before the Objection Deadline to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such claim until such time as any objection is resolved pursuant to a settlement or a Final Order.

### 2.02.   Priority Tax Claims.

Except to the extent that an Allowed Priority Tax Claim has been paid or otherwise satisfied prior to the Initial Distribution Date (which shall occur only if reasonably determined by the Debtor to be not material in amount with respect to the Debtor's obligations under the Plan), each Holder of an Allowed Priority Tax Claim, in full satisfaction, release, settlement, and discharge of and exchange for such Claim, shall receive from the Debtor (a) deferred Cash payments over a period not exceeding five (5) years after the Petition Date in an aggregate principal amount equal to the Allowed amount of such Priority Tax Claim, plus interest, from the Petition Date through the date such Claim is paid in full, on the unpaid portion thereof at the rate of interest determined under applicable nonbankruptcy law as of the calendar month in which the Confirmation Date occurs, in equal annual installments with the first payment to be due on the later of (i) the Initial Distribution Date or (ii) five (5) Business Days after the date when a  Priority Tax Claim becomes an Allowed Priority Tax Claim, and subsequent payments to be due on each anniversary of the Initial Distribution Date, or (b) such other less favorable treatment to which such Holder and the Debtor

agree in writing. Notwithstanding the foregoing, (a) any Claim or demand for payment of a penalty (other than a penalty of the type specified in Bankruptcy Code section 507(a)(8)(G)) shall be Disallowed pursuant to the Plan and the Holder thereof shall not assess or attempt to collect such penalty from the Debtor or from any of the assets, and (b) provided that the Debtor has otherwise complied with the terms and provisions of the Plan, the Debtor shall have the right to pay any Allowed Priority Tax Claim, or any unpaid balance of such Claim, in full, at any time after the Effective Date, without premium or penalty.

### 2.03.    Domestic Support Obligations.

On the Effective Date, the Debtor shall make any payments that may be required to comply with any post-petition unfunded obligations on account of any Domestic Support Obligations, as may be required for the Debtor to be current with respect to such Domestic Support Obligations as of the Effective Date as required pursuant to section 1129(a)(14) of the Bankruptcy Code. After the Effective Date the Debtor shall timely make all payments on account of Domestic Support Obligations to the parties entitled to receive such payments, in each case at the times and in the amounts required by the agreements and orders evidencing such Domestic Support Obligations, as such agreements may from time to time be modified in accordance with applicable state law.

### 2.04.    U.S. Trustee Fees.

The Debtor shall continue to remit to the office of the United States Trustee all appropriate post confirmation monthly reports for all relevant time periods until the Bankruptcy Case is closed by order of the Bankruptcy Court or converted to a case under chapter 7 of the Bankruptcy Code. The Debtor shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for all quarters as applicable and shall continue to remit quarterly fee payments based on all disbursements, until the Bankruptcy Case is closed by order of the Bankruptcy Court, or converted to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III:

## CLASSIFICATION OF CLAIMS

### 3.01.    Introduction.

All Claims, except Administrative Claims, are placed in the Classes set forth below. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims have not been classified.

The Plan contemplates separate Classes for the Debtor for voting and Distribution purposes. To the extent a Class contains one or more subclasses, each such subclass is deemed to be a separate Class for all purposes under the Bankruptcy Code and the Plan.

Except for the unclassified Claims discussed in Article II above, Section 3.02 of the Plan sets forth a designation of Classes of all Claims in accordance with Bankruptcy Code section 1122(a). A Claim is classified in a particular Class only to the extent any portion of the Claim qualifies within the description of the Class and is classified in a different Class to the extent any

portion of the Claim qualifies within the description of that different Class.  If a Claim is acquired or transferred, the Claim shall be placed in the Class in which it would have been  placed if it were owned by the original Holder of such Claim.  A Claim is also placed in a particular Class for the purpose of receiving Distributions only to the extent that such Claim is an Allowed Claim in that Class, and such Claim has not been paid, satisfied or released before the Effective Date.

**3.02.  Claims Against the Debtor.**

(a)    Class 1:  Non-Tax Priority Claims

(b)    Class 2:  Priority Tax Claims

(c)    Class 3:  Secured Claim of Bank of America

(d)    Class 4:  Secured Claim of Security Bank of Crawford

(e)    Class 5:  Unsecured "Opt-In Settlement" Claims

(f)    Class 6:  General Unsecured Claims

(g)    Class 7:  Administrative Convenience Claims

## ARTICLE IV

### IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS

**4.01.  Unimpaired Claims**

Claims against the Debtors in Classes 1, 2, 3, and 4 are not impaired under the Plan, and the Holders of those Claims are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are thus not entitled to vote on the Plan.

**4.02.  Impaired Claims**

Claims against the Debtor in Classes 5, 6, and 7 are impaired under the Plan, and the Holders of those Claims are entitled to vote to accept or reject the Plan.

**4.03.  Controversy Concerning Impairment**

In the event of a controversy as to whether any Claim or any Class of Claims is impaired under the Plan, the Bankruptcy Court will determine the controversy, after notice and a hearing.

## ARTICLE V

## TREATMENT OF CLAIMS

### 5.01.  Non-Tax Priority Claims – Class 1

On or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Non-Tax Priority Claim, each Holder of such Allowed Non- Tax Priority Claim shall receive from the Disbursement Agent, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Non-Tax Priority Claim, (y) Cash in an amount equal to the Allowed amount of its Non-Tax Priority Claim, or (z) such other, less favorable treatment to which such Holder and the Debtor agrees in writing.  To the extent an Allowed Non-Tax Priority Claim entitled to priority treatment under 11 U.S.C. §§ 507(a)(4) or (5) exceeds the statutory cap applicable to such Claim, such excess amount shall be treated as a Class 6 General Unsecured Claim against the Debtor.

### 5.02. Priority and Secured Tax Claims – Class 2

With respect to any Allowed Priority Tax Claim, to the extent not already paid or otherwise satisfied, on or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive from the Debtor in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (x) Cash equal to the Allowed Amount of its Allowed Priority Tax Claim, plus interest thereon at the rate provided under applicable non-bankruptcy law pursuant to Section 511 of the Bankruptcy Code from the Petition Date through the date such Claim is paid in full, or (z) such other, less favorable treatment as may be agreed upon in writing by such Holder and the Debtor.

The Holder of a Secured Tax Claim for ad valorem taxes for any tax year from 2023 and thereafter shall retain all rights and remedies for payment thereof in accordance with applicable non-bankruptcy law.

Notwithstanding any other provision of the Plan, each Holder of an Allowed Secured Tax Claim shall retain its Lien on any Collateral that secures its Claim or the proceeds of such Collateral (to the extent such Collateral is sold by the Debtor, free and clear of such Lien) to the same extent and with the same validity and priority as such Lien held as of the Petition Date until (a) the Holder of such Allowed Secured Tax Claim (i) has been paid Cash equal to the value of  its Allowed Secured Tax Claim and/or (ii) has received a return of the Collateral securing its Allowed Secured Tax Claim, or (iii) has been afforded such other treatment as to which such Holder and the Debtor have agreed upon in writing, or (b) such purported Lien has been determined by a Final Order to be invalid or avoidable.  To the extent that a Secured Tax Claim exceeds the value of the interest of the Estate in the property that secured such Claim, such  Claim shall be deemed Disallowed pursuant to Bankruptcy Code section 502(b)(3).

If the Debtor fails to timely make any payment to a Holder of an Allowed Secured Tax Claim as required under Section 5.02 of the Plan, the affected Holder of an Allowed Secured Tax Claim may send written notice of default to the Debtor.  If the default is not cured within twenty-

one (21) days after notice of default is mailed, such Holder may proceed with any remedies for collection of amounts due under applicable non-bankruptcy law without further order of the Bankruptcy Court.

### 5.03.  Secured Claim of Bank of America – Class 3

(a)    <u>Allowance</u>.  The Allowed amount of the Class 3 Secured Claim shall be equal to the aggregate of (1) $26,354.73, plus (2) accrued and unpaid interest at the Contract Rate from the Petition Date until the Rental Property is sold and such claim is paid in full, less any payments made on account of such Claim from and after the Petition Date that are required to be applied as payments of principal pursuant to an Order of the Bankruptcy Court.

(b)    <u>Treatment</u>.  Except to the extent that the Holder of the Allowed Class 3 Secured Claim agrees to less favorable treatment of such Allowed Class 3 Secured Claim, the Holder of the Allowed Class 3 Secured Claim shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 3 Secured Claim, Cash in an amount equal to such Allowed Class 3 Secured Claim on the later of (i) the Effective Date, or (ii) the date the Rental Property is sold and the Debtor has received the Net Proceeds of such sale in immediately available funds. As of the Effective Date, the Debtor's obligations under the loan documents giving rise to the Allowed Class 3 Secured Claim, shall be reinstated and Bank of America shall retain its lien rights pending sale of the Rental Property and payment of the Class 3 Claim in full.

### 5.04. Secured Claim of Security Bank of Crawford – Class 4

(a)    <u>Allowance</u>.  The Allowed amount of the Secured Claim of Security Bank of Crawford shall be equal to the aggregate of (1) $80,161.04, plus (2) accrued and unpaid interest at the Contract Rate from the Petition Date until the Effective Date, less any payments made on account of such Claim from and after the Petition Date and applied to the principal amount of such Claims as required by the Bankruptcy Code. Payments are currently being made in accordance with the relevant loan documents by FSS and are scheduled to continue under the FSS Plan.

(b)    <u>Treatment</u>.  From and after the Effective Date, the Debtor shall reinstate his existing guarantor obligations under the applicable loan documents with respect to the Class 4 Claim of Security Bank of Crawford, secured by the existing collateral, until such time as the loan obligations are paid in full.

### 5.05.  "Opt-In Settlement" Unsecured Claims – Class 5

(a)    <u>Allowance</u>.  On the Effective Date, the Opt-In Settlement Unsecured Claims shall consist of the Claims of the Electing Plaintiffs.

    1)    Each Electing Plaintiff shall receive Cash in the amount of:

        i)    such Electing Plaintiff's Electing Plaintiff Pro Rata Share of 70% of the Net Proceeds from the sale or other monetization of Non-Exempt Assets, as soon as reasonably practicable following the receipt of such Net Proceeds; and

ii      from the Effective Date until the year in which the Payment Trigger occurs, the greater of such Electing Plaintiff's (x) Minimum Annual Distribution or (y) Plaintiff Pro Rata Share of the Income Stream Payment on an annual basis. The Electing Plaintiffs shall cease receiving Distributions under this Plan beginning the year following the occurrence of the Payment Trigger; provided; that Electing Plaintiffs may continue to receive payments under the FSS Plan and FSS Trust to the extent applicable. Payments under this paragraph shall be made on or before the first Business Day in May of each year following the Effective Date.

The Net Proceeds from the liquidation of the Non-Exempt Assets including Cash paid by the Debtor to the Disbursement Agent on the Initial Distribution shall reduce the Minimum Annual Distribution for the first Plan Year.

2)      Each Electing Plaintiff shall have an Allowed Claim in the amount set forth next to such person's name on Exhibit A hereto. No further litigation with respect to conduct occurring on or prior to the Confirmation Date shall be pursued on behalf of Electing Plaintiffs against the Debtor or any Related Party.

(b)    Treatment. The Opt-In Settlement Unsecured Claims treatment shall be in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim. Such Claims shall be discharged after payments are made as set forth herein. Also, for each year in which no uncured Plan Default occurs, 10% of each Opt-In Settlement Unsecured Claim shall be waived and forever discharged. However, whatever Opt-In Settlement Unsecured Claims that are not paid under the Plan or waived and discharged pursuant to the preceding sentence, shall be deemed to be non-dischargeable without further court process in the event of a final, uncured Plan Default. The Debtor, the Disbursement Agent and the Electing Plaintiffs will work cooperatively to determine the most tax efficient method of distribution, which may include the Debtor directing FSS to make Income Stream Payments from FSS or from the FSS Trust to the extent practicable.

(c)    Settlement Injunction.

1)      As consideration for the concessions made by the Electing Plaintiffs herein, the Debtor agrees that, without first obtaining the permission of all Electing Plaintiffs, the Debtor may not in any way publicly discuss the 2012 mass shooting at Sandy Hook Elementary School, the Electing Plaintiffs, the Electing Plaintiffs' family members (including victims of the Sandy Hook shooting) or any Claims or litigation arising from or relating to Debtor's past statements about the Sandy Hook mass shooting—other than to state that he has no comment about such events or individuals. The Debtor will take all reasonable steps to ensure that FSS does not make a public statement that the Debtor would be prohibited from making under this paragraph. Failure

19

by Debtor to comply with this provision constitutes a Plan Default enforceable by the Electing Plaintiffs.

2)   So long as no Plan Default has occurred and is continuing, the Electing Plaintiffs agree that they will not seek to have Debtor or FSS removed from any forums or platforms (electronic or physical), unless such forums or platforms are owned or controlled by Electing Plaintiffs.  So long as no Plan Default has occurred and is continuing, the Electing Plaintiffs agree that they will not seek to have any statements by Debtor or FSS removed from any forums or platforms (electronic or physical), unless such forums or platforms are owned or controlled by Electing Plaintiffs.  Notwithstanding anything else to the foregoing, Electing Plaintiffs shall not disparage the Debtor or FSS and will make no public comment on the legal claims giving rise to the Electing Plaintiffs' Allowed Claims, or the treatment thereof under the Plan. If Electing Plaintiffs do not comply with the terms set out in this paragraph, Debtor may seek relief from the Bankruptcy Court, including injunctive relief.

3)   The Bankruptcy Court retains post-confirmation jurisdiction to determine any such disputes.

## 5.06.  General Unsecured Claims – Class 6

Following the Allowance Date of each General Unsecured Claim, after the resolution of any existing appeals or litigation of such Claims, and except to the extent that a Holder of an Allowed General Unsecured Claim agrees, under the terms of a writing executed by such Holder, to less favorable treatment of such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive from the Debtor, in exchange for such Allowed General Unsecured Claim, such Holder's GUC Pro Rata Share of (x) prior to the occurrence of the Plan Trigger, the amount of the Income Stream Payment remaining after Electing Plaintiffs are paid pursuant to the terms of Section 5.05 of the Plan, and (y) beginning the year following the occurrence of the Payment Trigger, all of the Income Stream Payment. Non-Electing Plaintiffs will be enjoined against collecting against the Debtor during the Plan Term; however, such Non-Electing Plaintiffs may, to the extent such Holder has a non-dischargeable claim, collect against the Debtor's non-exempt assets, unless such Claim is otherwise stayed, following the end of the Plan Term.  Any Claims of Non-Electing Plaintiffs shall be reduced by any payments received by such claimants under the Plan.

After the Initial Distribution, annual payments shall be made on or before the first Business Day in the fifth month of the Plan Year.

## 5.07.  Administrative Convenience Claims – Class 7

Each Holder of an Allowed Unsecured Claim in the amount of $5,000 or less, or such Holders as agree to reduce their Claim to $5,000, shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of and  in exchange for such Allowed Claim, a Cash payment as soon as reasonably practicable following the Effective Date in the full amount of such Allowed

Claim. Insiders with Allowed Claims may opt to settle their Claims to be paid as an Administrative Convenience Claims Holder, but such Claim will be limited to $5,000, and be deemed fully satisfied upon payment of that amount.

<div align="center">

**ARTICLE VI**

**MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN**

</div>

**6.01.  The Settlements**

(a)  **Opt-In Settlement Unsecured Claims:** Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, in consideration for the classification, Distribution, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of the Opt-In Settlement Unsecured Claims, which shall be binding upon Persons receiving Distributions under the Plan, the Debtor, and any other party treated under the Plan.

As of the Effective Date, all litigation in any jurisdiction, including dischargeability litigation and any appeals thereof, amongst Holders of Opt-In Settlement Unsecured Claims including, without limitation, all litigation listed on Exhibit B, shall each be terminated with prejudice and without further costs to any party, and all necessary parties shall execute and deliver any related satisfactions of judgment or other documentation necessary to terminate such litigation and release any related judgment liens arising in or on account of such matters. The Debtor and the Holders of Opt-In Settlement Unsecured Claims agree that the resolution of such litigation takes into account a good faith evaluation by all parties of the costs and merits of such litigation, and that the dismissal of such ongoing litigation (including without limitation any pending appeals) as set forth herein is a good faith reasonable resolution of such litigation, in exchange for the consideration provided.

(b)  **Claims Against Related Parties:** Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, in consideration for the benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of the estate's Claims against Related Parties, which shall be binding upon Persons receiving Distributions under the Plan, the Debtor, and any other party treated under the Plan. Evidence in support of such settlements will be presented at the Confirmation Hearing. The proposed settlement and resolution of such Claims against Related Parties considers a good faith evaluation by all parties of the costs and merits of such litigation, as well as the collectability of any potential judgments in favor of the estate.

Entry of the Confirmation Order shall constitute a determination by the Bankruptcy Court pursuant to Bankruptcy Rule 9019 that the terms and conditions of the foregoing settlements and the termination of all litigation (including, without limitation, any appeals) required thereunder is reasonable, and in the best interests of the Debtor, his Estate, and all Creditors of the Debtor and other parties in interest.

### 6.02.   Sources of Cash and Terms of Payment for Plan Distributions

The sources of Cash necessary for the Debtor to pay Allowed Claims that are to be paid in Cash by the Debtor under the Plan will be: (a) the Cash of the Debtor on hand as of the Effective Date, minus a reserve totaling $250,000 (to account for three (3) months of reasonable living expenses as well as certain post-confirmation legal expenses); and (b) Net Proceeds from the sale of the Debtor's Non-Exempt Assets; and (c) Cash generated or received by the Debtor after the Effective Date from any other source, including but not limited to Cash flow to the Debtor from AEJ Trust and refunded trust expenses.

Funds from payments under the FSS Plan made by the FSS Trust shall be used solely with respect to the calculation of the Minimum Plan Distribution and are not being relied upon for purposes of confirming this Plan.

On the Effective Date, all Avoidance Actions not resolved will vest in the Disbursement Agent or, at the option of the Debtor, the FSS Trust, and they will have the exclusive right to prosecute, settle, or compromise all Avoidance Actions.  Any such net payments resolving any Avoidance Actions shall constitute Net Proceeds of Non-Exempt Assets for purposes of the Plan.

### 6.03.   Payments.

(a)   The Disbursement Agent shall remit payment of the following Allowed Claims in accordance with the limitations on the amount of such payments as set forth in the Plan, and the other terms and conditions of the Plan:

(i)   Administrative Claims, other than Administrative Claims Incurred in the Ordinary Course of Business as set forth in Section 2.01(d).

(ii)   Non-Tax Priority Claims as set forth in Section 5.01.

(iii)   Administrative Convenience Claims as set forth in Section 5.07.

(iv)   General Unsecured Claims as set forth in Section 5.06.

(v)   Administrative Claims Incurred in the Ordinary Course of Business as set forth in Section 2.01(e).

(vi)   Priority Tax Claims as set forth in Section 2.02.

(vii)   Domestic Support Obligations as set forth in Section 2.03.

(viii)   U.S. Trustee fees as set forth in Section 2.04.

(ix)   Secured Tax Claims as set forth in Section 5.02

(x)   Secured Claim of Bank of America as set forth in Section 5.03.

(xi)    Secured Claim of Security Bank of Crawford as set forth in Section 5.04.

(xii)   Unsecured Claims of Opt-In Settlement Claimants as set forth in Section 5.05.

**6.04.  Post Effective Date Management.**

The Debtor shall continue to manage and control his assets after the Effective Date. To the extent this Plan provides for the sale of the Debtor's assets, the Disbursement Agent shall manage and control the sale of such assets and shall liquidate such assets as expeditiously as reasonably possible, consistent with the terms of this Plan and the goal of maximizing the value thereof for the benefit of the Holders of Claims secured by a Lien on those assets and other stakeholders.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS

**7.01.   General Treatment of Executory Contracts: Rejected**

The Plan constitutes and incorporates a motion under Bankruptcy Code sections 365 and 1123(b)(2) to (a) reject, as of the Effective Date, all Executory Contracts to which the Debtor is a party, except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and (b) assume all Executory Contracts identified in any schedule of assumed contracts that may be included in the Plan Supplement.

The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date.  Notice of the Confirmation Hearing shall include the proposed Cure Amount with respect to any Executory Contract that may be assumed under the Plan, and the Notice of the Confirmation Hearing shall also notify all non-debtor parties to Executory Contracts that all Executory Contracts will be rejected under the Plan except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and any Executory Contracts identified in the Plan Supplement to be assumed. For the avoidance of doubt, to the extent the Debtor's premarital agreement could be characterized as an executory contract, such agreement shall be assumed under this Plan.  The Debtor does not anticipate any cure costs associated with such agreement.

**7.02.   Cure Payments and Release of Liability**

Except as otherwise provided in a Final Order, pursuant to Bankruptcy Code sections 365(a), (b), (c) and (f), all Cure Claims that may require payment under Bankruptcy Code section 365(b)(1) under any Executory Contract that is assumed pursuant to a Final Order shall be paid by the Debtor as an Allowed Administrative Claim within fifteen (15) Business Days after such order becomes a Final Order with respect to Cure Claims that are not Disputed or within fifteen (15) Business Days after a Disputed Cure Claim is Allowed by agreement of the parties or a Final

23

Order.  If a party to an assumed Executory Contract has not filed an appropriate pleading on or before the date of the Confirmation Hearing disputing any proposed Cure Claim, the cure of any other defaults, the promptness of the Cure Claim payments, or the provision of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters.  Any party to an assumed Executory Contract that receives full payment of a Cure Claim shall waive the right to receive any payment on a Class 6 General Unsecured Claim that relates to or arises out of such assumed Executory Contract.

### 7.03.    Bar to Rejection Claims

If the rejection of an Executory Contract pursuant to Section 7.01 of the Plan gives rise to a Claim by any non-Debtor party or parties to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Estate, or the agents, successors, or assigns of the foregoing, unless a proof of such Claim is filed with the Bankruptcy Court and served upon the Debtor on or before the Rejection Bar Date.  Any Holder of a Claim arising out of the rejection of an Executory Contract that fails to file a proof of such Claim on or before the Rejection Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtor, the Estate or any of their assets and properties.  Nothing contained herein shall extend the time for filing a proof of Claim for rejection of any Executory Contract rejected before the Confirmation Date.

### 7.04.    Rejection Claims

Any Rejection Damage Claim arising from the rejection of an Executory Contract shall  be treated as a General Unsecured Claim pursuant to the Plan, except as limited by the provisions of Bankruptcy Code sections 502(b)(6) and 502(b)(7) and mitigation requirements under applicable law.  Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Rejection Damage Claim or shall be deemed a waiver by the Debtor or any other party in interest of any objections to such Rejection Claim if asserted.

## ARTICLE VIII

## CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION

### 8.01.    Conditions Precedent to Confirmation Date

The occurrence of the Confirmation Date of the Plan is subject to satisfaction or waiver by the Debtor of each of the following conditions:

(a)    The Bankruptcy Court shall have entered a Final Order, in form and substance acceptable to the Debtor, approving the Disclosure Statement;

(b)    The proposed Confirmation Order shall be in form and substance acceptable to the Debtor; and

(c)    All of the schedules, documents, supplements and exhibits to the Plan shall have

been filed in form and substance acceptable to the Debtor.

**8.02.   Conditions Precedent to the Effective Date**

The occurrence of the Effective Date is subject to the occurrence or waiver by the Debtor of each of the following conditions precedent:

(a)     The Confirmation Date shall have occurred;

(b)     The Confirmation Order shall have become a Final Order in form and substance acceptable to the Debtor; and

(c)     FSS Plan confirmation shall have occurred and the FSS Plan shall become effective.

Without limiting the foregoing, the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order so long as there is no stay in effect and the Debtor so elects in writing.  The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation so long as there is no stay in effect if the Debtor so elects in writing.  In the event of any such appeal, the Debtor or any other party in interest may seek the dismissal of such appeal on any grounds.  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.  The Debtor will file with the Bankruptcy Court, and serve a copy on all parties in interest, a notice of the Effective Date within five (5) Business Days after its occurrence.

**8.03.   Consequences of Non-Occurrence of Effective Date**

If the Effective Date does not timely occur, the Debtor reserves all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and/or that the Plan be null and void in all respects.  If the Bankruptcy Court enters an order vacating the Confirmation Order, the time within which the Debtor may assume and assign, or reject, all Executory Contracts not previously assumed, assumed and assigned, or rejected shall be  extended for a period of thirty (30) days after the date the Confirmation Order is vacated or as further extended by the Bankruptcy Court.

<u>**ARTICLE IX**</u>

**EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE**

**9.01.   Binding Effect**

From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, all former, present, and future Holders of Claims, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Case.  Confirmation of the Plan binds each Holder of a Claim to the terms and conditions of the Plan, whether or not such Holder has accepted the Plan.

### 9.02.    Vesting of Assets

Except as otherwise provided in this Plan and the Confirmation Order, all property and assets of the Debtor and the Estate shall vest in the Debtor in accordance with the terms of the Plan, in each case free and clear of all Claims, Liens, encumbrances, charges and other interests. Commencing on the Effective Date, the Debtor may deal with such property and assets and conduct his business without any supervision by, or permission from, the Bankruptcy Court or the Office of the United States Trustee, and free of any restriction imposed on the Debtor by the Bankruptcy Code or by the Bankruptcy Court during the Bankruptcy Case, other than any restrictions contained in the Plan and the Confirmation Order.

**Trusts:** For the avoidance of doubt, the Debtor would clarify through this Plan that certain Trusts are not property of the estate and therefore are not available for distribution to Creditors. Specifically, the Alexander E. Jones Descendent and Beneficiary Trust (the "Descendent Trust"), of which the Debtor is a grantor, is not available to satisfy Creditor Claims. The Debtor is not a beneficiary nor a trustee for the Descendent Trust. Though the Descendent Trust holds certain condominium assets, the Debtor asserts these trust assets are not available to satisfy estate Claims. Second, the Green Leaf Trust: this trust is also not within the control of the Debtor, nor is he a beneficiary, or entitled to direct the Green Leaf Trust. Therefore, the assets of the Green Leaf Trust are not available to satisfy estate Claims. With respect to any remaining trusts, where the Debtor either is a beneficiary and/or maintains some level of control, (x) any assets available for distribution from such trusts as of the Effective Date shall be deemed Non-Exempt Assets subject to liquidation by the Disbursement Agent under the Plan, and (y) any distribution to the Debtor of income generated by such trusts following the Effective Date shall be included as Plan Income under the Plan. See **Schedule A**.

### 9.03.    Assertion of Causes of Action, Defenses and Counterclaims

Except as set forth in the Plan or the Confirmation Order, effective as of the Effective Date, with respect to the Debtor, without further action by any party, all Causes of Action, and  all defenses, counterclaims, setoffs, and rights related thereto, shall be and shall be deemed to be vested in the Debtor. From and after the Effective Date, the Debtor shall have the exclusive right to prosecute, settle, or compromise any Cause of Action vested in or transferred to the Debtor under the Plan. Except to the extent otherwise set forth in the Plan, the Debtor shall retain and may prosecute and enforce all other defenses, counterclaims, and rights that it has asserted or could assert against or with respect to all Claims asserted against the Debtor or property of his Estate. No claim, right, Cause of Action, or other asset shall be deemed waived or otherwise forfeited by virtue of the Debtor's failure to identify such property in the Schedules or the Disclosure Statement unless otherwise ordered by the Bankruptcy Court.

Except as provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtor may have or which the Debtor may choose to assert on behalf of the Debtor's Estate under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative  relief against

26

the Debtor, and (ii) the turnover of any property of the Debtor's Estate.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan.  The Debtor shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which the Debtor had immediately prior to the Petition Date fully as if the Bankruptcy Case had not been commenced, and all of the Debtor's legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date by the Debtor to the same extent as if the Bankruptcy Case had not been commenced.

### 9.04   Discharge of Debtor

*Except as expressly provided in this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtor that arose before the Effective Date.  Except as expressly provided in this Plan or the Confirmation Order, on the Discharge Date (and subject to its occurrence), entry of the Confirmation Order shall be deemed to act as a discharge and release under Bankruptcy Code section 1141(d)(1)(A) of all Claims against the Debtor and his assets, arising at any time before the Effective Date, regardless of whether a proof of Claim was filed, whether the Claim is Allowed, or whether the Holder of the Claim votes to accept the Plan or is entitled to receive a Distribution under the Plan, provided, however, that in no event shall occurrence of the Discharge Date discharge  the Debtor from any obligations remaining under the Plan as of the Discharge Date.  No later than five (5) business days after the occurrence of the Discharge Date, the Debtor shall file with the Bankruptcy Court a notice of the occurrence of the Discharge Date, and serve such notice on all creditors.  In addition, following the occurrence of the Discharge Date, the Debtor shall file a motion seeking entry of an order of discharge after notice and a hearing, which motion (and the discharge) shall be granted upon a showing that the Debtor has made all payments required under the Plan. Except as expressly provided in this Plan or the Confirmation Order, any Holder of a discharged Claim will be precluded from asserting against the Debtor or any assets of the Debtor any other or further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Effective. Except as expressly provided in this Plan or the Confirmation Order, and subject to the occurrence of the Discharge Date, the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtor to the extent allowed under Bankruptcy Code section 1141, and the Debtor will not be liable for any Claims and will only have the obligations that are specifically provided for in this Plan.  Notwithstanding the foregoing, nothing contained in the Plan or the Confirmation Order shall discharge the Debtor from (i) any debt excepted from discharge under Bankruptcy Code section 523 by Final Order of the Bankruptcy Court unless the Holders of such Claims have agreed to same.*

*Notwithstanding the foregoing, Allowed Claims of Electing Plaintiffs under Class 5 that have selected Opt-In Settlement Unsecured Claims shall be discharged after receipt of payments that give rise to the occurrence of the Payment Trigger.  Such payment shall be in full*

*satisfaction, settlement, release and discharge of and in exchange for such Allowed Claim.*

*Notwithstanding anything to the contrary set forth in this Section 9.04, Non-Electing Plaintiffs under Class 6 will be enjoined against collecting against the Debtor during the Plan Term; however, such Non-Electing Plaintiffs may collect against the Debtor at the conclusion of the Plan Term if they have a Final Order allowing their Claim and finding such Claim non-dischargeable.*

### 9.05    Injunction

Except as otherwise provided in the Plan, the Confirmation Order shall provide that from and after the Effective Date with respect to the Debtor, all Holders of Claims against the Debtor are permanently enjoined from taking any of the following actions against the Debtor, or any of his property on account of any such Claim: (a) commencing or continuing in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or Lien; (d) asserting a setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; or (e) commencing or continuing, in any manner or in any place, any action that does not conform to or comply with, or is inconsistent with, the provisions of this Plan.  If allowed by the Bankruptcy Court, any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator. Should a Plan Default have occurred and is continuing, this Plan Injunction shall lift in accordance with a Bankruptcy Court order determining the existence of such Plan Default.

Notwithstanding the foregoing, the Non-Electing Plaintiffs whose claims have been determined to be non-dischargeable by an order of a court of competent jurisdiction that has not been stayed, shall be enjoined from taking action against the Debtor as set forth above solely during the Plan Term, unless otherwise set forth herein.

### 9.06    Term of Bankruptcy Injunction or Stays

Unless otherwise provided herein or in an order of the Bankruptcy Court (including without limitation the Confirmation Order), all injunctions or stays provided in the Bankruptcy Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, with respect to the Debtor.  Upon the Effective Date, the injunction provided in Section 9.05 of the Plan shall be effective.

### 9.07    Effectuating Documents; Further Transactions; Timing

The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously, unless otherwise provided in the Plan.

28

## ARTICLE X

## OBJECTIONS TO CLAIMS; DISTRIBUTIONS

### 10.01.   Objections to Claims

Any party in interest, including the Debtor, may file objections to Claims (other than Claims that have been previously Allowed or that are Allowed under the Plan).  The Debtor (or his designees, successors and assigns) are not obligated to object to any Claim but will nevertheless have standing to object to any such Claim from and after the Effective Date if they so elect. Nothing in this Section is intended to limit the right of any party to object to Claims.

### 10.02.   Objection Deadline

Except as set forth in Sections 2.01(a) and 2.01(b) of the Plan with respect to Administrative Claims and Fee Claims, any objections to Claims must be filed no later than the Objection Deadline.  An objection to a Claim will be deemed properly served on the Holder thereof if service is effected by any of the following methods: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto; (c) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of the Holder in the Bankruptcy Case; or (d) if no proof of Claim has been filed, by first class mail, postage prepaid, on the Holder of such Claim at the address set forth in the Schedules.

### 10.03.   Settlement of Objections to Claims

From and after the Effective Date, the Debtor is authorized to approve compromises of  all Claims, Disputed Claims, and Liens pursuant to Bankruptcy Rule 9019(b) and to execute necessary documents, including Lien releases (subject to the written consent of the party having such Lien) and stipulations of settlement, compromise, or release, without further order of the Bankruptcy Court; provided that the Debtor cannot settle or compromise the Claim of a Holder of a General Unsecured Claim in an amount in excess of the amount set forth on Exhibit A to this Plan without notice and a hearing.

### 10.04.   No Interest on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim for the period from the Petition Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim.  To the extent any Holder of an Allowed Claim is entitled to interest accruing on or after the Petition Date, such interest shall accrue and be payable at the applicable Contract Rate.

### 10.05.   Setoffs by the Debtor; No Waiver

Except as otherwise set forth in the Plan, the Debtor may but shall not be required to, set off against or recoup from any Claim or any payment or Distribution to be made by the Debtor pursuant to the Plan in respect of such Claim, any Claim or Cause of Action of any nature whatsoever that the Debtor may have to the fullest extent permitted under applicable law. Any dispute related to the setoff or recoupment rights of the Debtor shall be determined by the Bankruptcy Court. Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claims or Causes of Action that the Debtor may have against such Holder or any affiliate of such Holder.

### 10.06.  Procedures for Treating and Resolving Disputed and Contingent Claims

(a)      **No Distributions Pending Allowance.**  Notwithstanding any other provision of the Plan, Distributions shall be made only to Holders of Allowed Claims. No Holder of a Claim will receive any Distribution on account thereof until and to the extent that its Claim becomes an Allowed Claim. To the extent a Claim that is paid by the Debtor under the Plan is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtor (in the first instance) on account of a Cause of Action, or which has not otherwise become an Allowed Claim, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Cause of Action has been settled, withdrawn, or determined by a Final Order or such other court having jurisdiction over the matter, or such Claim has otherwise been Allowed as set forth in the Plan.

In determining the amount of a pro rata Distribution due to the Holders of Allowed Claims payable by the Debtor, the Disbursement Agent will make the pro rata calculation as if all Claims of the applicable Class were Allowed in the full amount claimed or in the amount estimated under Section 10.06(b) hereof. For the purposes of claims held by Plaintiffs that are not Allowed by this Plan, Disbursement Agent shall reserve for Claims in the amounts set forth on <u>Exhibit A</u> hereto until such Claim is Allowed or Disallowed in whole or in part by Final Order. The Disbursement Agent shall withhold Distributions otherwise due hereunder to the Holder of a Disputed Claim until the Objection Deadline, to enable the Debtor or any other party in interest to file a timely objection thereto.

(b)      **Claim Estimation.**  The Debtor or Disbursement Agent may request estimation or limitation of any Claim that is not Allowed under this Plan pursuant to Bankruptcy Code section 502(c) regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection; <u>provided</u>, <u>however</u>, that the Bankruptcy Court will determine (i) whether such Claims are subject to estimation pursuant to Bankruptcy Code section 502(c) and (ii) the timing and procedures for such estimation proceedings, if any. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim,  as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or

resolved by any mechanism approved by the Plan or the Bankruptcy Court.

(c) **Distribution Reserve Accounts.**

(i)     On or after the Effective Date, the Disbursement Agent may create one or more separate Distribution Reserve Accounts as is appropriate from the Cash to be distributed to or for the benefit of the Holders of Disputed Claims, Administrative Claims, Non-Tax Priority Claims, Administrative Convenience Claims, or other Claims which have not been Allowed, in each case pending the allowance thereof. Each Distribution Reserve Account may be segregated by Class or, as applicable, by Administrative Claims, Non-Tax Priority Claims, Administrative Convenience Claims, or other Claims. A Holder of a Claim will not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve Account to pay such Claim unless permitted by a Final Order. As stated above, nothing in the Plan will be deemed to entitle the Holder of a Disputed Claim to post-petition interest on such Claim, if Allowed, unless otherwise required under the Plan.

(ii)     The amount of any Cash allocable to, or retained on account of Claims in the Distribution Reserve Accounts for those Claims that are to be paid in full under the Plan shall be equal to the lesser of (a) the amount of such Claim as estimated pursuant to the procedure in section 10.06(b) of the Plan; (b) the amount of such Claim as asserted by the Holder; or (c) an amount to be agreed upon between the Debtor and the Holder of such Claim. The amount of any Cash allocable to, or retained on account of, any other Claims in the Distribution Reserve Accounts shall be as reasonably determined by the Disbursement Agent from time to time in accordance with the reasonable discretion of the Disbursement Agent, subject to all other terms and conditions of the Plan.

(iii)     For the avoidance of doubt, the Disbursement Agent shall reserve distributions in a separate Distribution Reserve Account for Class 6 General Unsecured Claims of Non-Electing Plaintiffs which have not yet been Allowed, in the amounts allocated to them pursuant to the treatment set forth herein.

(d)     **Distributions After Allowance of Claims.**  Distributions to each Holder of a Claim that is the subject of a Distribution Reserve Account, to the extent it becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that govern Distributions to such Holders of Claims in the applicable Class. Unless otherwise provided in the Plan, as promptly as practicable after the date on which such Claim becomes an Allowed Claim, and in any event not later than ten (10) Business Days after such Claim becomes an Allowed Claim, the Disbursement Agent shall distribute to the Holder thereof from the applicable Distribution Reserve Account, if any, any Distribution that would have been made to such Holder had its Claim been an Allowed Claim on the date that Distributions were previously made to Holders of Allowed Claims in the applicable Class, without interest (except as otherwise provided by the Plan) and net of any setoff and/or any required withholding of applicable taxes. After all such Claims have been resolved as may be required by a Final Order or other final resolution, any remaining Cash in a relevant Distribution Reserve Account shall be distributed in accordance with the other provisions of the Plan.

(e)      **Allowance of Claims Subject to Bankruptcy Code Section 502(d).**  Allowance of Claims will in all respects be subject to the provisions of Bankruptcy Code section 502(d), except as provided by a Final Order or a settlement among the relevant parties.

**10.07.      Distributions Under the Plan**

(a)      **Means of Cash Payment.**  Except as otherwise provided in the Plan, Cash payments made pursuant to the Plan shall be in U.S. dollars and may be made, at the option of and in the sole discretion of the Disbursement Agent, by checks drawn on or wire transfers from a domestic bank; provided, that in the case of foreign Holders of Allowed Claims, Cash payments may be made, at the option of and in the sole discretion of the Debtor, in such currency and by such means as are necessary or customary in a particular jurisdiction.

(b)      **Delivery of Distributions.**  All Distributions to any Holder of an Allowed Claim shall be made by the Disbursement Agent at the address of each such Holder as set forth on the proof of Claim filed by such Holder (or at the last address of such a Holder known to the Debtor if no proof of Claim is filed or if the Disbursement Agent has been notified in writing of a change of address).  If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Disbursement Agent is notified in writing of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest.  Any Holder of an Allowed Claim whose Distribution is undeliverable must make demand for such Distribution to the Disbursement Agent in writing on or before 120 days after the date such undeliverable Distribution was initially made, after which the Distribution shall be retained by the Disbursement Agent for Distribution to other Holders of Claims pursuant to the terms of the Plan, and any claim by such intended recipient with respect to such undeliverable Distribution shall be discharged and forever barred.  The Disbursement Agent may employ or contract with other Persons as reasonably determined by the Disbursement Agent to assist in or make the Distributions required under the Plan.  **To the extent that the Disbursement Agent is required by applicable law to file information returns regarding payments to creditors with taxing authorities including, but not limited to, the Internal Revenue Service, the Debtor shall obtain an executed Internal Revenue Service Form W-9 (W-8 for non-US entities and individuals) from any or all Holders of a Claim prior to making any Distribution.  Should any Holder of a Claim not provide the Disbursement Agent with such document within 60 days of receipt of the request for a W-9 or W-8, as applicable, then the Disbursement Agent shall provide written notice to such Holder of the failure to provide a W-9 or W-8, as applicable, and 30 additional days to provide such information. Should any Holder of a Claim not timely provide an executed W-9 or W-8, as applicable, within the ninety (90) day period referenced above, the Disbursement Agent may file an objection to the Claim of such non-responding Holder  based on the non-responding Holder's failure to provide the W-9 or W-8 (with all required information) and shall serve the objection on such non-responding Holder via first class mail.  If the non-responding Holder of the Claim fails to respond to the objection or fails to provide to the Disbursement Agent the W-9 or W-8, as applicable (with all required information) within thirty (30) days after the objection is filed, the Bankruptcy Court may disallow such Claim for all purposes and any funds to be paid such Holder of a disallowed Claim shall be distributed in accordance with the terms of the Plan. The Disbursement Agent shall serve any order disallowing the non- responding Holder's Claim within five (5) business days**

**after entry of such order. The Disbursement Agent's right to object to a Claim is limited to the failure of a Holder of a Claim to provide to the Disbursement Agent a W-9 or W-8, as applicable. The Holder of such Disallowed Claim shall be forever barred from pursuing the Debtor or Disbursement Agent for payment of such Claim.**

(c)      **Fractional Dollars; De Minimis Distributions.** Any other provision of the Plan notwithstanding, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being rounded down. No payment of less than twenty-five dollars ($25.00) shall be made with respect to any Allowed Claim, and the Disbursement Agent shall retain any such payment and shall deposit same into a pool for redistribution to other Holders of Allowed Claims in the same Class.

(d)      **Unclaimed Property.** Any Distributions that are unclaimed shall be distributed by the Disbursement Agent to other Holders of Claims pursuant to the terms of the Plan.

(e)      **Payments on Business Days**. In the event any payment, Distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed  to have been completed as of the required date.

(f)      **Voting Record Date**. As of the Voting Record Date, any applicable books and records for each of the Classes of Claims as may be maintained by Debtor shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims. The Disbursement Agent will have no obligation to recognize any transfer or sale of Claims on or occurring after the Voting Record Date and will be entitled for all purposes herein, and subject to all of the provisions of the Plan relating to the timing of the allowance of Claims, to recognize and make Distributions on account of Allowed Claims only to those Holders who are identified as Holders of Claims as of the Voting Record Date. Except as otherwise provided in a Final Order, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 prior to the Voting Record Date will be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer may not have expired by the Voting Record Date.

### 10.08.  Duty to Disgorge Overpayments

To the extent the Holder of any Allowed Claim receives more than what such Holder is permitted to receive under the Plan, such Holder shall immediately return such excess  payment(s) to the Disbursement Agent, failing which, the Debtor or Disbursement Agent may sue such Holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

### 10.09  Duties of the Disbursement Agent

The Disbursement Agent shall make the Distributions required under the Plan.  The Disbursement Agent shall be entitled to review the financial information of FSS and the Debtor in

accordance with the terms of the agreement entered into with the Disbursement Agent. The Disbursement Agent shall also be responsible for the sale or other monetization of Non-Exempt Assets under this Plan.

### 10.10 Disbursement Agent Expenses

The Disbursement Agent shall establish a bank account, initially funded with 30% of the Net Proceeds from the sale of Non-Exempt Assets which may be used to fund the initial expenses of the Disbursement Agent, including payment of the Disbursement Agent's fees, on an ongoing basis.  Additional Disbursement Agent Expenses shall be paid directly by the Debtor.

## ARTICLE XI

## ACCEPTANCE OR REJECTION OF THE PLAN

### 11.01.  Impaired Classes Entitled to Vote

Each impaired Class entitled to vote to accept or reject the Plan will vote separately.  A Holder of a Claim or Interest as to which an objection has been filed and that has not been temporarily allowed for purposes of voting on the Plan may not vote.  A Holder of a contingent or unliquidated Claim may vote on the Plan in an amount based on the portion, if any, of the Claim shown as non-contingent, liquidated, and undisputed in the Schedules, or equal to $1.00 if not so shown.  Plaintiffs may vote in the amounts set forth on **Exhibit C.**

### 11.02.  Acceptance by an Impaired Class

A Class of Claims that is entitled to vote to accept or reject the Plan shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.  Any Ballot that is not properly completed and timely received by the Balloting Deadline will not be counted.

### 11.03   Elimination of Vacant Classes.  Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

### 11.04.  Section 1129(b) Cramdown

If any impaired Class of Claims fails to accept the Plan in accordance with Bankruptcy Code section 1129(a), the Debtor will seek confirmation of the Plan by the Bankruptcy Court pursuant to the "cramdown" provisions in Bankruptcy Code section 1129(b).  The Debtor asserts that the Plan provides for fair and equitable treatment of all Classes of Claims. The Debtor reserves the right to amend the Plan as may be necessary to obtain confirmation of the Plan  under Bankruptcy Code section 1129(b).

**ARTICLE XII**
**RETENTION OF JURISDICTION**

**12.01.  Jurisdiction**

Until the Bankruptcy Case is closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction as is legally permissible under applicable law, including under Bankruptcy Code sections 105(a) and 1142, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against the Debtor and to enforce all Causes of Action and any related counterclaims, crossclaims, and/or third-party claims over which the Bankruptcy Court otherwise has jurisdiction.  Nothing contained in the Plan will prevent the Debtor from taking any action as may be necessary to enforce any Cause of Action that may exist on behalf of the Debtor and that may not have been enforced or prosecuted by the Debtor.

**12.02.  Examination of Claims**

Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim and the reexamination of Claims that have been allowed for the purposes of voting, and the determination of any objections as may be filed to Claims.  The failure by the Debtor to object to, or to examine, any Claim for the purposes of voting will not be deemed a waiver of the Debtor's right to object to,  or to re-examine, such Claim in whole or in part, unless such claim is Allowed under the Plan.

**12.03.  Determination of Disputes**

The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine (a) all questions and disputes regarding title to the Debtor's assets, (b) disputes concerning the allowance of Claims, (c) all Causes of Action, controversies, disputes, or conflicts, whether or  not subject to any pending action, as of the Confirmation Date, to recover property pursuant to the provisions of the Bankruptcy Code, and (d) all disputes and controversies regarding the operation, implementation, and interpretation of the Plan, the Confirmation Order, and any agreements that are identified or implement the Plan or the Confirmation Order.

**12.04.  Additional Purposes**

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, occurrence of the Effective Date, and/or substantial consummation of the Plan, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of or related to the Bankruptcy Case and the Plan to the fullest extent permitted by applicable law, including but not limited to jurisdiction to:

(a)      hear and determine any modification of the Plan or the Plan Supplement pursuant to Bankruptcy Code section 1127, to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court,  including the Confirmation Order, in such a manner as may be necessary or appropriate to  carry out the purposes and effects thereof;

(b)      hear and determine disputes, issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the transactions contemplated thereunder, the Confirmation Order, the Disclosure Statement, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

(c)      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of or related to the Bankruptcy Case or the Plan;

(d)      enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered or approved in the Bankruptcy Case;

(e)      hear and determine all disputes involving the existence, nature, or scope of the discharge, plan defaults, injunctions, releases, exculpations, and indemnifications granted pursuant to the Plan or the Confirmation Order;

(f)      hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions, performance or payments provided for or contemplated in the Plan or the Confirmation Order, or any agreement, instrument or other document governing or relating to any of the foregoing;

(g)      construe and apply any findings of fact and/or conclusions of law made in or in connection with the Confirmation Order;

(h)      adjudicate matters arising in the Bankruptcy Case, including matters relating to the formulation and consummation of the Plan;

(i)      enter any orders, including injunctions, as are necessary to enforce title, rights, and powers of the Debtor or to impose any limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem necessary;

(j)      hear and determine all questions and disputes regarding title to or recovery of the Debtor's assets and property of the Debtor;

(k)      enter a Final Decree closing any or all of the Bankruptcy Case;

(l)      correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Supplement, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, the Plan Supplement, and the Confirmation Order including the adjustment of the date(s) of performance under the Plan, the Plan Supplement, and any other documents related thereto if the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Supplement, and such other documents may be substantially realized thereby;

(m)      enter, implement or enforce such orders as may be appropriate if the Confirmation

Order is for any reason stayed, reversed, revoked, modified, or vacated;

(n)     hear and determine all applications for compensation and reimbursement of expenses of Professionals or any other Person under the Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtor shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

(o)     hear and determine issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of the Plan;

(p)     hear and determine issues concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(q)     hear and determine all matters regarding the assumption or rejection of Executory Contracts, including any disputes concerning Rejection Claims or Cure Claims;

(r)     hear and determine any objection to any Claim (including any Administrative Claim), including the allowance, classification, priority, secured status, compromise, estimation, subordination, or payment thereof;

(s)     allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim (including any Administrative Claim) and to re-examine Claims that have been allowed for purposes of voting;

(t)     hear and determine any Cause of Action and any collection or settlement matters related thereto;

(u)     hear and determine any disputes or litigation regarding the validity, priority, or extent of any Lien and any Claim associated therewith; and

(v)     hear and to determine any other matter related hereto and not inconsistent with the Plan, the Confirmation Order, the Bankruptcy Code, or Title 28 of the United States Code.

### 12.05.  Failure of the Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Case, including the matters set forth in this Article XII, the provisions of this Article XII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

37

### 13.01.  General Notices

Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served to the parties and addresses set forth below by certified mail, return receipt requested, hand delivery, overnight delivery, first class mail, or fax transmission, and (c) deemed to have been given or made when actually delivered or received:

> **-to the Debtor:**
>
> Alexander Jones
> 2407 S. Congress Ave. E-144
> Austin, TX 78704
>
> With a copy to:
>
> Vickie L. Driver
> Crowe & Dunlevy, P.C.
> 2525 McKinnon St., Suite 425
> Dallas, TX 75201
> Telephone: 737.218.6187
> Email: dallaseservice@crowedunlevy.com
>
> Shelby A. Jordan
> JORDAN & ORTIZ, P.C.
> 500 North Shoreline Blvd., Suite 900
> Corpus Christi, TX  78401
> Telephone: (361) 884-5678
> Email:  sjordan@jhwclaw.com

### 13.02.  Exemption From Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest; or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance,  filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment. The Confirmation Order shall direct all appropriate governmental officials or agents to forgo the collection of any such tax or assessment and to accept such documents delivered under the Plan without the imposition or payment of any charge, fee, governmental assessment, or tax.

### 13.03.  Asserting and Curing Default Under the Plan

Except as otherwise provided in the Plan, if the Debtor defaults under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan), any Creditor or party in interest desiring to assert a default will provide the Debtor and his counsel with written notice of the alleged Plan Default.  The Debtor will have thirty (30) days from receipt of written notice to cure the alleged Plan Default.  If the Plan Default is not cured, any

Creditor or party in interest affected by such Plan Default may then file with the Bankruptcy Court, and serve on the Debtor and his counsel, a motion to compel compliance with the applicable provision of the Plan, or otherwise seeking such remedies as may be available to such party in interest under the Bankruptcy Code or other applicable law. The Bankruptcy Court, on finding a Plan Default, will issue orders compelling compliance with the pertinent provisions of the Plan, or providing such other relief as the Court may order. Nothing in the Plan shall be deemed a waiver on the part of any party in interest to seek to assert any such remedies as described in this Section 13.04 upon default by the Debtor under the Plan.

Assets valued at less than $25,000 at the time of receipt by the Debtor, or discovered more than five years after the Effective Date are deemed nonmaterial, and shall not give rise to a Plan Default. Material non-exempt assets discovered by the Debtor post-Effective Date shall be submitted to the Disbursement Agent for distribution in accordance with the Plan. Material and intentional misrepresentations, if properly declared under the Plan, may cause a Plan Default herein. In the event the non-exempt asset was known to the Plaintiffs, their agents or attorneys, the Official Committee of Unsecured Creditors, their agents or attorneys, such asset will be deemed ineligible to cause a Plan Default under this paragraph.

Pursuant to the Opt-In Settlement terms with the Class 5 Electing Plaintiffs, if the Debtor can make 80% of the minimum payments for a given year, but not 100%, then the remaining amount for that year may be amortized over the next two years without giving rise to a Plan Default. However, if the Debtor fails to make minimum payments for two (2) years in a row, a Plan Default will have occurred, and any Electing Plaintiff may seek remedies with respect to such Plan Default as set forth herein. Should the Debtor become incapacitated in a way that prevents him from working and he is unable to make payments under the Plan, such missed payments may be added to the end of the Plan Term, and the Plan Term shall be extended accordingly. If the Debtor, or his personal representative, asserts that he has become incapacitated under the terms of this provision, he must file a notice with the Bankruptcy Court, which may be objected to by any party in interest, and any dispute over same will be determined by the Bankruptcy Court.

### 13.04.   Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke and/or withdraw the Plan at any time before the Confirmation Date. If the Debtor revokes or withdraws this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor or any other Person.

### 13.05.   Modification of the Plan

The Debtor reserves the right to modify the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and (b) the Debtor shall have complied with Bankruptcy Code section 1125. The Debtor further reserves the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, (b) the Debtor

shall have complied with Bankruptcy Code section 1125, and (c) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Bankruptcy Code section 1129. A Holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

### 13.06.  Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 13.07.   Due Authorization

Each and every Holder of an Allowed Claim that receives a Distribution under the Plan warrants that it is authorized to accept, in consideration of such Claim, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

### 13.08.  Implementation

The Debtor may execute such documents, take such other actions, and perform all acts necessary or appropriate to implement the terms and conditions of the Plan without the need for further Bankruptcy Court approval.

### 13.09.  Execution of Documents

Upon application by the Debtor, the Bankruptcy Court may issue an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument or document, and to perform any act, necessary for the consummation or implementation of the Plan.

### 13.10.  Bankruptcy Restrictions

From and after the Effective Date with respect to the Debtor other than as set forth in the Plan, the Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code (e.g., sections 363 or 364) except as the Bankruptcy Code may specifically provide otherwise. No monthly operating reports will be filed after the Effective Date; however, the Debtor shall provide the U.S. Trustee such financial reports as may be required by law.

### 13.11.  Limited Plan Exculpation.

None of Debtor's court employed professionals shall have or incur any liability to the Debtor or any Holder of a Claim for any act or omission in connection with, related to, or arising out of, the Bankruptcy Case, negotiations regarding or concerning the Disclosure Statement or the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Bankruptcy Case, and the pursuit of confirmation of the Plan. Nothing contained in this paragraph shall be deemed to

exculpate any party identified herein from any conduct post- Effective Date.

### 13.12.   Ratification

The Confirmation Order will ratify all transactions effected by the Debtor during the pendency of the Bankruptcy.

### 13.13.   Integration Clause.

This Plan is a complete and integrated statement of the binding agreement among the Debtor, the Holders of Claims, and other parties in interest upon the matters herein.  Parol evidence shall not be admissible in an action regarding the Plan or its provisions.

### 13.14   Interpretation

Unless otherwise specified, all Section, Article and exhibit references in the Plan are to the respective Section in, Article of or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The headings of the Articles, paragraphs, and Sections of the Plan and table of contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation.  Nothing herein shall be deemed as a judicial admission by the Debtor.  Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

### 13.15   Severability of Plan Provisions

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void,  or unenforceable before the Confirmation Date, the Bankruptcy Court, upon the request of the Debtor, will have the power to alter or interpret the Plan to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation, provided that the Debtor consents.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.16   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

**ALEXANDER E. JONES**

  */s/ Alexander E. Jones*
Alexander E. Jones

41

# EXHIBIT B

Exhibit B

| Name of Business | Percentage of Debtor Ownership | Value Notes |
|---|---|---|
| A. Emric Productions, LLC | 100% | $0.00 (tax forfeiture 1-28-11 |
| AEJ Austin Holdings, LLC[1] | 100% | $10,000.00 |
| Austin Shiprock Publishing, LLC | 100% | $0.00 (tax forfeiture 3-10-23) |
| Emric Productions LLC | 100% | $485.27 |
| Free Speech Systems, LLC | 100% | $0.00 |
| Guadalupe county Land and Water LLC | 100% | $0.00 |
| Jones Productions, LLC | 100% | $0.00 |
| Jones Report, LLC | 100% | $7,302.00 |
| Magnolia Holdings Limited Partnership, LLC | 100% | $0.00 |
| Magnolia Management, LLC | 100% | $0.00 |
| Planet Infowars, LLC | 100% | $0.00 (tax forfeiture 3-10-23) |
| RCGJ, LLC | 100% | $0.00 |

---

[1] Prior to September 25, 2018, owned 80% equity ownership of PLJR Holdings Limited, LLC which owns 90% of PQPR Holdings Limited, LLC ("PQPR"), an effective 72% ownership of PQPR. Value of bank balance $10,000 – (Security Bank account #0940). Effective September 25, 2018, AEJ Austin Holdings, LLC, transferred its equity ownership in PLJR Holdings Limited, LLC to The AEJ 2018 Trust in exchange for $25,900,000.00 Note and Security Agreement.  According to the bank records, The AEJ 2018 Trust made one interest payment under the Note, then de minimus transfers note tied to the economics of the Note. Value was determined by a third-party analysis of Briggs & Veselka Co., P.C. as of March 31, 2018.

# EXHIBIT C

Exhibit  C

| Claimant | Claim Amount |
|---|---|
| **Connecticut Plaintiffs** | **$1,438,139,556.22** |
| Carlee Soto Parisi | $98,099,304 |
| Carlos Mathew Soto | $86,899,303.73 |
| David Wheeler | $83,429,303.73 |
| Donna Soto | $74,099,303.73 |
| Erica Lafferty* | $111,429,303.73 |
| Francine Wheeler | $82,099,303.73 |
| Ian Hockley | $118,899,303.73 |
| Jacqueline Barden | $48,499,303.73 |
| Jennifer Hensel | $79,429,303.73 |
| Jillian Soto-Marino | $101,829,303.73 |
| Mark Barden | $86,899,303.73 |
| Nicole Hockley | $108,229,303.73 |
| Robert Parker | $170,099,303.73 |
| William Aldenberg | $130,099,303.73 |
| William Sherlach | $58,099,303.73 |
| **Texas Plaintiffs** | **$480,044,374.80** |
| Neil Heslin | $27,196,411.90 |
| Scarlett Lewis | $22,847,962.90 |
| Leonard Pozner | $200,000,000 |
| Veronique De La Rosa | $180,000,000 |
| The Estate of Marcel Fontaine | $50,000,000 |
| **Total** | **$1,918,183,931.02** |

# EXHIBIT D

**Alex Jones**
**Liquidation Analysis**
Based on Preliminary Balance Sheet as of
December 31,2023

| | Preliminary Dec 2023 | Adjustments to Balance Sheet for exempt | Adjusted Non-Exempt Assets | Estimated Recovery % | | Estimated Proceeds $ | |
|---|---|---|---|---|---|---|---|
| | | | | Low | High | Low | High |
| **ASSETS** | | | | | | | |
| **Current Assets** | | | | | | | |
| Total Bank Accounts (1) | $ 885,026 | | 885,026 | 100% | 100% | 885,026 | 885,026 |
| Total Accounts Receivable (2) | $ 118,139 | | 118,139 | 100% | 100% | 118,139 | 118,139 |
| Other Current Assets | | | - | | | | |
| Bitcoin Account (3) | | | | | | | |
| Cash on Hand (1) | 1,000 | | 1,000 | | | | |
| Federal Income Tax Receivable (4) | 3,370,713 | | 3,370,713 | 100% | 100% | 3,370,713 | 3,370,713 |
| GiveSendGo-Legal (1) | 10,461 | | 10,461 | 100% | 100% | 10,461 | 10,461 |
| Inventory Platinum (5) | 307,081 | | 307,081 | 100% | 100% | 307,081 | 307,081 |
| Petty Cash for Child Care (1) | 120 | | 120 | 35% | 55% | 42 | 66 |
| Prepayment -Legal Account (6) | 50,000 | | 50,000 | 100% | 100% | 50,000 | 50,000 |
| Rental Property Escrow (7) | 6,245 | | 6,245 | 0% | 0% | - | - |
| Undeposited Funds - Car sale (10) | 72,000 | | 72,000 | 100% | 100% | 72,000 | 72,000 |
| Undeposited Funds - IRS checks held/not deposited (4) | 514,358 | | 514,358 | 100% | 100% | 514,358 | 514,358 |
| Total Other Current Assets | $ 4,331,978 | | 4,331,978 | | | 4,324,655 | 4,324,679 |
| Total Current Assets | $ 5,335,143 | $ 0 | $ 5,335,143 | | | $ 5,327,820 | $ 5,327,844 |
| | | | - | | | | |
| **Fixed Assets** | | | | | | | |
| Homestead | 2,612,800 | (2,612,800) | - | 0% | 0% | | |
| Lakehouse (8) | 1,750,000 | | 1,750,000 | 63% | 87% | 1,095,666 | 1,518,700 |
| Ranch Property (8) | 2,189,220 | | 2,189,220 | 92% | 116% | 2,007,870 | 2,540,000 |
| Rental Property (9) | 505,000 | | 505,000 | 92% | 114% | 465,200 | 578,103 |
| Vehicles and Marine Assets | | | - | | | | |
| Dodge Challenger (10) | | | - | | | - | - |
| Dodge Charger | 70,618 | (70,618) | - | 0% | 0% | - | - |
| Ford Expedition (11) | 21,463 | | 21,463 | 79% | 94% | 16,870 | 20,269 |
| Marine Assets (12) | 114,300 | | 114,300 | 87% | 105% | 100,000 | 120,000 |
| Total Vehicles and Marine Assets | $ 206,381 | -$ 70,618 | $ 135,763 | | | 116,870 | 140,269 |
| Total Fixed Assets | $ 7,263,401 | -$ 2,683,418 | $ 4,579,983 | | | $ 3,685,606 | $ 4,777,072 |
| Other Assets | | | | | | | |
| Interests In Trust (13) | 131,466 | | 131,466 | 49% | 49% | 64,521 | 64,521 |
| Ownership Interests in Non Public Entities (14) | 17,302 | | 17,302 | 58% | 58% | 10,000 | 10,000 |
| Personal Property (15) | 171,536 | (39,056) | 132,480 | 70% | 100% | 92,736 | 132,480 |
| Receivable from Descendants Trust (16) | 30,832 | | 30,832 | 100% | 100% | 30,832 | 30,832 |
| Receivable from Mrs. Jones (16) | 8,363 | | 8,363 | 100% | 100% | 8,363 | 8,363 |
| Contingent receivable - Yougevity (17) | | 186,577 | 186,577 | 0% | 100% | - | 186,577 |
| Total Other Assets | $ 359,499 | 147,521 | 507,020 | | | 206,452 | 432,773 |
| TOTAL ASSETS | $ 12,958,043 | -$ 2,535,897 | $ 10,422,146 | | | $ 9,219,879 | $ 10,537,690 |

### Alex Jones
### Liquidation Analysis
**Based on Preliminary Balance Sheet as of**
**December 31, 2023**

| | Preliminary Dec 2023 | Adjustments to Balance Sheet for exempt | Adjusted Non-Exempt Assets | Estimated Recovery % | | Estimated Proceeds $ | |
|---|---|---|---|---|---|---|---|
| | | | | Low | High | Low | High |
| **Liquidation Expenses** | | | | | | | |
| Trustee Fees (18) | | | | | | 302,846 | 342,381 |
| Trustee Counsel (19) | | | | | | 242,277 | 273,905 |
| Liquidation Expenses | | | | | | | |
| Real Estate (8,9) | | | | | | 321,186 | 370,944 |
| Personal Property (15) | | | | | | 13,910 | 26,496 |
| Contingency (20) | | | | | | 138,298 | 158,065 |
| Total Liquidation Costs | | | | | | 1,018,518 | 1,171,791 |
| | | | | | | | |
| **Net Proceeds** | | | | | | 8,201,360 | 9,365,899 |
| | | | | | | | |
| **Allocation of Net Proceeds** | | | | | | | |
| Secured Creditors | | | | | | 28,366 | 28,366 |
| Estimated Priority Claims | | | | | | - | - |
| Legal and Professional Fees - Estimated | | | | | | 5,319,247 | 5,319,247 |
| | | | | | | 5,347,613 | 5,347,613 |
| Total Secured and Administrative Claims | | | | | | | |
| | | | | | | 2,853,747 | 4,018,286 |
| Net Proceeds Available to Unsecured Creditors | | | | | | | |

**NOTES**

(1)  account

(2)  Accounts receivable are for contemporaneous services and are assumed to be 100% recoverable

(3)  Unliquidated bitcoin reflected at no value. Estimated value $1,700 but cost to liquidate will exceed value.

(4)  undeposited funds represent 2 refund checks received and held pending reconciliation when IRS systems are back online.

(5)  Inventory values reflected as recoverable values provided by FSS for similar products.

(6)  Prepaid legal represents retainer that will be offset against court approved legal fees

(7)  Rental property escrow represents excess balance to be refunded to debtor and is 100% recoverable

(8)  Lakehouse and Ranch property values based on realtor engaged to sell property estimated liquidation values under current market conditions. Fees and expenses of 8-9% are reflected in liquidation costs.

(9)  Rental property value based on estimated ranges on Zillow and Realtor.com at 1/12/24. Fees and expenses of 8-9% are reflected in liquidation costs.

(10)  Januray 2024

(11)  2017 Ford expedition value based on current Autotrader range of values.   Vehicle listed for sale.

(12)  Values based on projected sales prices from broker located at Capital Marine - located at marina boats are stored.

(13)  Interests in trusts valued at cash balance of 49% .  No value of assigned for liquidation of non-cash assets.

(14)  Ownership in Non-Public entities ranges in value based on cash value of bank accounts

(15)  Non-exempt personal property value ranges reflected at 70-100% based on Valuepro March 24, 2023 appraisal which include household goods, furniture, watches, jewelry, lake house furniture, firearms, and other non-exempt assets noted in the appraisal. Liquidation fees and expenses are estimated at 15-20%

(16)  Other receivables for expenses paid by the estate are assumed collect ble as related parties have sufficient unencumbered assets.

(17)  Contingent receivable based on discovery from Youngevity.  Collectability not determined.

(18)  Trustee fees range from 3.26-3.31% of gross proceeds

(19)  Trustee counsel estimated at 80% of trustee fees

(20)  Contingency of 1.5% of gross proceeds for unknown costs and expenses

### Alex Jones
### Liquidation Analysis (w FSS)
Based on Preliminary Balance Sheet as of
December 31,2023

| | Preliminary Dec 2023 | Adjustments to Balance Sheet for | Adjusted Non-Exempt Assets | Estimated Recovery % | | Estimated Proceeds $ | |
|---|---|---|---|---|---|---|---|
| | | | | Low | High | Low | High |
| **ASSETS** | | | | | | | |
| **Current Assets** | | | | | | | |
| Total Bank Accounts (1) | $ 885,026 | | 885,026 | 100% | 100% | 885,026 | 885,026 |
| Total Accounts Receivable (2) | $ 118,139 | | 118,139 | 100% | 100% | 118,139 | 118,139 |
| Other Current Assets | | | - | | | | |
| Bitcoin Account (3) | | | | | | | |
| Cash on Hand (1) | 1,000 | | 1,000 | | | | |
| Federal Income Tax Receivable (4) | 3,370,713 | | 3,370,713 | 100% | 100% | 3,370,713 | 3,370,713 |
| GiveSendGo-Legal (1) | 10,461 | | 10,461 | 100% | 100% | 10,461 | 10,461 |
| Inventory Platinum (5) | 307,081 | | 307,081 | 100% | 100% | 307,081 | 307,081 |
| Petty Cash for Child Care (1) | 120 | | 120 | 35% | 55% | 42 | 66 |
| Prepayment -Legal Account (6) | 50,000 | | 50,000 | 100% | 100% | 50,000 | 50,000 |
| Rental Property Escrow (7) | 6,245 | | 6,245 | 0% | 0% | - | - |
| Undeposited Funds - Car sale (10) | 72,000 | | 72,000 | 100% | 100% | 72,000 | 72,000 |
| Undeposited Funds - IRS checks held/not deposited (4) | 514,358 | | 514,358 | 100% | 100% | 514,358 | 514,358 |
| Total Other Current Assets | $ 4,331,978 | | 4,331,978 | | | 4,324,655 | 4,324,679 |
| Total Current Assets | $ 5,335,143 | $ 0 | $ 5,335,143 | | | $ 5,327,820 | $ 5,327,844 |
| | | | - | | | | |
| **Fixed Assets** | | | | | | | |
| Homestead | 2,612,800 | (2,612,800) | - | 0% | 0% | | |
| Lakehouse (8) | 1,750,000 | | 1,750,000 | 63% | 87% | 1,095,666 | 1,518,700 |
| Ranch Property (8) | 2,189,220 | | 2,189,220 | 92% | 116% | 2,007,870 | 2,540,000 |
| Rental Property (9) | 505,000 | | 505,000 | 92% | 114% | 465,200 | 578,103 |
| Vehicles and Marine Assets | | | | | | | |
| Dodge Challenger (10) | | | - | | | - | - |
| Dodge Charger | 70,618 | (70,618) | - | 0% | 0% | - | - |
| Ford Expedition (11) | 21,463 | | 21,463 | 79% | 94% | 16,870 | 20,269 |
| Marine Assets (12) | 114,300 | | 114,300 | 87% | 105% | 100,000 | 120,000 |
| Total Vehicles and Marine Assets | $ 206,381 | -$ 70,618 | $ 135,763 | | | 116,870 | 140,269 |
| Total Fixed Assets | $ 7,263,401 | -$ 2,683,418 | $ 4,579,983 | | | $ 3,685,606 | $ 4,777,072 |
| Other Assets | | | - | | | | |
| Interests In Trust (13) | 131,466 | | 131,466 | 49% | 49% | 64,521 | 64,521 |
| Ownership Interests in Non Public Entities (14) | 17,302 | | 17,302 | 58% | 58% | 10,000 | 10,000 |
| Free Speech Systems (21) | | | | | | 1,408,137 | 1,850,336 |
| Personal Property (15) | 171,536 | (39,056) | 132,480 | 70% | 100% | 92,736 | 132,480 |
| Receivable from Descendants Trust (16) | 30,832 | | 30,832 | 100% | 100% | 30,832 | 30,832 |
| Receivable from Mrs. Jones (16) | 8,363 | | 8,363 | 100% | 100% | 8,363 | 8,363 |
| Contingent receivable - Yougevity (17) | | 186,577 | 186,577 | 0% | 100% | - | 186,577 |
| | | | - | | | | |
| Total Other Assets | $ 359,499 | 147,521 | 507,020 | | | 1,614,589 | 2,283,109 |
| TOTAL ASSETS | $ 12,958,043 | -$ 2,535,897 | $ 10,422,146 | | | $ 10,628,016 | $ 12,388,026 |

**Alex Jones**
**Liquidation Analysis (w FSS)**
Based on Preliminary Balance Sheet as of
December 31,2023

| | Preliminary Dec 2023 | Adjustments to Balance Sheet for | Adjusted Non-Exempt Assets | Estimated Recovery % | | Estimated Proceeds $ | |
|---|---|---|---|---|---|---|---|
| | | | | Low | High | Low | High |
| **Liquidation Expenses** | | | | | | | |
| Trustee Fees (18) | | | | | | 345,090 | 397,891 |
| Trustee Counsel (19) | | | | | | 276,072 | 318,313 |
| Liquidation Expenses | | | | | | | |
| Real Estate (8,9) | | | | | | 321,186 | 370,944 |
| Personal Property (15) | | | | | | 13,910 | 26,496 |
| Contingency (20) | | | | | | 159,420 | 185,820 |
| Total Liquidation Costs | | | | | | 1,115,680 | 1,299,464 |
| | | | | | | | |
| Net Proceeds | | | | | | 9,512,336 | 11,088,562 |
| | | | | | | | |
| Allocation of Net Proceeds | | | | | | | |
| Secured Creditors | | | | | | 28,366 | 28,366 |
| Estimated Priority Claims | | | | | | - | - |
| Legal and Professional Fees - Estimated | | | | | | 5,319,247 | 5,319,247 |
| | | | | | | 5,347,613 | 5,347,613 |
| | | | | | | | |
| Total Secured and Administrative Claims | | | | | | | |
| | | | | | | 4,164,723 | 5,740,949 |
| | | | | | | | |
| Net Proceeds Available to Unsecured Creditors | | | | | | | |

### NOTES

(1) Bank account and cash on hand assumed to be 100% recoverable including net funds available in GiveSendGo account

(2) Accounts receivable are for contemporaneous services and are assumed to be 100% recoverable

(3) Unliquidated bitcoin reflected at no value. Estimated value $1,700 but cost to liquidate will exceed value.

(4) Income tax receivable and undeposited funds total 3,885,071 and are assumed to be 100% collectble. The undeposited funds represent 2 refund checks received and held pending reconciliation when IRS systems are back online.

(5) Inventory values reflected as recoverable values provided by FSS for similar products.

(6) Prepaid legal represents retainer that will be offset against court approved legal fees

(7) Rental property escrow represents excess balance to be refunded to debtor and is 100% recoverable

(8) Lakehouse and Ranch property values based on realtor engaged to sell property estimated liquidation values under current market conditions.  Fees and expenses of 8-9% are reflected in liquidation costs.

(9) Rental property value based on estimated ranges on Zillow and Realtor.com at 1/12/24.  Fees and expenses of 8-9% are reflected in liquidation costs.

(10) 2019 Dodge Challenger sold for $72,000 on 12/29/23.  Check received after close of business and deposited in Januray 2024

(11) 2017 Ford expedition value based on current Autotrader range of values.  Vehicle listed for sale.

(12) Values based on projected sales prices from broker located at Capital Marine - located at marina boats are stored.

(13) Interests in trusts valued at cash balance of 49% .  No value of assigned for liquidation of non-cash assets.

(14) Ownership in Non-Public entities ranges in value based on cash value of bank accounts

(15) Non-exempt personal property value ranges reflected at 70-100% based on Valuepro March 24, 2023 appraisal which include household goods, furniture, watches, jewelry, lake house furniture, firearms, and other non-exempt assets noted in the appraisal.  Liquidation fees and expenses are estimated at 15-20%

(16) Other receivables for expenses paid by the estate are assumed collect ble as related parties have sufficient unencumbered assets.

(17) Contingent receivable based on discovery from Youngevity.  Collectability not determined.

(18) Trustee fees range from 3.26-3.31% of gross proceeds

(19) Trustee counsel estimated at 80% of trustee fees

(20) Contingency of 1.5% of gross proceeds for unknown costs and expenses

(21) Net liquidation proceeds from FSS per their disclosure statement. Filed 11/18/23 dkt 756 page 77

# SCHEDULE A

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| ASSET DESCRIPTION | EXEMPT/NON-EXEMPT | VALUE OF ASSET (IF EXEMPT) | LIQUIDATED UNDER PLAN (Y/N)? | ASSET AVAILABLE FOR CREDITORS (Y/N)? |
|---|---|---|---|---|
| BARRETT M107A1 .50 CAL. RIFLE W/ CNIGHT FORCE OPTICS SCOPE | NON-EXEMPT | N/A | Y | Y |
| H&K SP5K PISTOL W/ HOLOSUN HE510C GR OPTIC | NON-EXEMPT | N/A | Y | Y |
| REMINGTON MODEL 700 .308 CAL. RIFLE W/ VORTEX SCOPE | NON-EXEMPT | N/A | Y | Y |
| REMINGTON MODEL 700 .308 CAL. RIFLE W/ SPRINGFIELD SCOPE | NON-EXEMPT | N/A | Y | Y |
| FALKOR DEFENSE FD-9S PISTOL | NON-EXEMPT | N/A | Y | Y |
| FALKOR DEFENSE FD-9S PISTOL W/ VORTEX SPITFIRE OPTIC | NON-EXEMPT | N/A | Y | Y |
| KRISS SDP 9MM PISTOL W/ EOTECH HWS EXPS2 | NON-EXEMPT | N/A | Y | Y |
| KRISS VECTOR SDP 10MM PISTOL W/ EOTECH HWS EXPS2 | NON-EXEMPT | N/A | Y | Y |
| SONS OF LIBERTY M4 RIFLE | NON-EXEMPT | N/A | Y | Y |
| SPIKE'S TACTICAL SR15 PISTOL W/ VORTEX SOARC AR OPTIC | NON-EXEMPT | N/A | Y | Y |
| HEAD DOWN PRODUCTS LLC PROVECTUS RIFLE | NON-EXEMPT | N/A | Y | Y |
| JESSE JAMES NOMAD 10 RIFLE | NON-EXEMPT | N/A | Y | Y |

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| W/ Vortex Razor Scopt & Bipod | | | | |
|---|---|---|---|---|
| ASSET DESCRIPTION | EXEMPT/NON-EXEMPT | VALUE OF ASSET (IF EXEMPT) | LIQUIDATED UNDER PLAN (Y/N)? | ASSET AVAILABLE FOR CREDITORS (Y/N)? |
| SPRINGFIELD M1A RIFLE W/ SLING | NON-EXEMPT | N/A | Y | Y |
| LWRC REPR 7.62 RIFLE | NON-EXEMPT | N/A | Y | Y |
| HEAD DOWN PRODUCTS LLC ARCADIUS RIFLE | NON-EXEMPT | N/A | Y | Y |
| BERETTA A400 EXTREME PLUS 12GA SHOTGUN | NON-EXEMPT | N/A | Y | Y |
| BERETTA A400 EXTREME PLUS 12GA SHOTGUN | NON-EXEMPT | N/A | Y | Y |
| MOSSBERG 935 12GA SHOTGUN | NON-EXEMPT | N/A | Y | Y |
| TRISTAR RAPTOR 12GA SHOTGUN | NON-EXEMPT | N/A | Y | Y |
| MOSSBERG 930 TACTICAL 12GA SHOTGUN | NON-EXEMPT | N/A | Y | Y |
| MOSSBERG 930 TACTICAL 12GA SHOTGUN | NON-EXEMPT | N/A | Y | Y |
| BAIKAL/EAA CORP IZH-43 12 GA SHOTGUN | NON-EXEMPT | N/A | Y | Y |
| IAC MICHINA 99 1887 12 GA SHOTGUN | NON-EXEMPT | N/A | Y | Y |
| KELTEC KSG 12GA SHOTGUN | NON-EXEMPT | N/A | Y | Y |
| NORINCO MAK-90 SPORTER RIFLE W/ SLING | NON-EXEMPT | N/A | Y | Y |
| ROMARM/SA/CUGIR MOD. 0 RIFLE W/ SLING | NON-EXEMPT | N/A | Y | Y |

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| ASSET DESCRIPTION | EXEMPT/NON-EXEMPT | VALUE OF ASSET (IF EXEMPT) | LIQUIDATED UNDER PLAN (Y/N)? | ASSET AVAILABLE FOR CREDITORS (Y/N)? |
|---|---|---|---|---|
| ARSENAL MODEL SLR-95 RIFLE W/ SLING | NON-EXEMPT | N/A | Y | Y |
| GLOCK MODEL 42 9MM PISTOL | NON-EXEMPT | N/A | N | N |
| GLOCK MODEL 43 9MM PISTOL | NON-EXEMPT | N/A | N | N |
| GLOCK MODEL 43 9MM PISTOL | NON-EXEMPT | N/A | N | N |
| IZHMASH SAIGA 7.62 RIFLE | NON-EXEMPT | N/A | Y | Y |
| ZASTAVA SPAPM70 7.62 RIFLE | NON-EXEMPT | N/A | Y | Y |
| BERETTA 21A(TB) .22LR PISTOL | NON-EXEMPT | N/A | Y | Y |
| RUGER MK3 .22LR PISTOL | NON-EXEMPT | N/A | Y | Y |
| SIG SAUER P365XL 9MM PISTOL | NON-EXEMPT | N/A | Y | Y |
| WALTHER P22 .22LR PISTOL | NON-EXEMPT | N/A | Y | Y |
| H&K USP .45 ACP PISTOL | NON-EXEMPT | N/A | Y | Y |
| GLOCK 26 GEN4 9MM PISTOL | NON-EXEMPT | N/A | Y | Y |
| GLOCK 31 .357 PISTOL | NON-EXEMPT | N/A | Y | Y |
| GLOCK 34 9MM PISTOL | NON-EXEMPT | N/A | Y | Y |
| MAGNUM RESEARCH DESERT EAGLE .44 MAG PISTOL | NON-EXEMPT | N/A | Y | Y |
| COLT 1911 GOVT PISTOL | NON-EXEMPT | N/A | Y | Y |
| COLT 1911 GOVT PISTOL | NON-EXEMPT | N/A | Y | Y |
| KIMBER 1911 PRO CDP 2 .45 ACP PISTOL | NON-EXEMPT | N/A | Y | Y |

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| ASSET DESCRIPTION | EXEMPT/NON-EXEMPT | VALUE OF ASSET (IF EXEMPT) | LIQUIDATED UNDER PLAN (Y/N)? | ASSET AVAILABLE FOR CREDITORS (Y/N)? |
|---|---|---|---|---|
| CZ SHADOW 2 9MM PISTOL | NON-EXEMPT | N/A | Y | Y |
| TAURUS THE JUDGE .410/.45 LC REVOLVER | NON-EXEMPT | N/A | Y | Y |
| S&W 500 SW MAG REVOLVER | NON-EXEMPT | N/A | Y | Y |
| STOEGER/UBERTI SCHOFIELD .45 COLT REVOLVER | NON-EXEMPT | N/A | Y | Y |
| S&W 60-14 .357 MAG REVOLVER | NON-EXEMPT | N/A | Y | Y |
| TAURUS 85 .38 SPEC. REVOLVER | NON-EXEMPT | N/A | Y | Y |
| STURM RUGER SP101 .357 MAG REVOLVER | NON-EXEMPT | N/A | Y | Y |
| S&W M31-3 .32 S&W L REVOLVER | NON-EXEMPT | N/A | Y | Y |
| STACATTO XC 9MM PISTOL | EXEMPT | $2,500.00 | N | N |
| FALCOR PETRA .300 WIN. MAG. RIFLE | EXEMPT | $3,000.00 | N | N |
| HOMESTEAD HOUSEHOLD GOODS | EXEMPT | $17,940.00 | N | N |
| CAT | EXEMPT | $200.00 | N | N |
| CLOTHES | EXEMPT | $300.00 | N | N |
| TUDOR GENEVA CHRONOMETER WATCH | EXEMPT | $3,000.00 | N | N |
| TAG HEUER AQUARACER WATCH | EXEMPT | $2,000.00 | N | N |
| HOMESTEAD REAL PROPERTY | EXEMPT | $1,633,000.00 | N | N |
| 2017 FORD EXPEDITION | NON-EXEMPT | N/A | Y | Y |
| ROLEX OYSTER PERPETUAL DATE SUBMARINER SUPERLATIVE | NON-EXEMPT | N/A | Y | Y |

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| | | | | |
|---|---|---|---|---|
| CHRONOMETER 40MM | | | | |
| **ASSET DESCRIPTION** | **EXEMPT/NON-EXEMPT** | **VALUE OF ASSET (IF EXEMPT)** | **LIQUIDATED UNDER PLAN (Y/N)?** | **ASSET AVAILABLE FOR CREDITORS (Y/N)?** |
| TUDOR GENEVE CHRONOMETER 44MM | NON-EXEMPT | N/A | Y | Y |
| TUDOR GENEVE CHRONOMETER 44MM | NON-EXEMPT | N/A | Y | Y |
| TUDOR GENEVE CHRONOMETER 44MM | NON-EXEMPT | N/A | Y | Y |
| TUDOR GENEVE CHRONOMETER 44MM | NON-EXEMPT | N/A | Y | Y |
| TUDOR GENEVE CHRONOMETER 44MM | NON-EXEMPT | N/A | Y | Y |
| TAG HEUER AQUARACER CALIBRE 5 AUTOMATIC | NON-EXEMPT | N/A | Y | Y |
| TAG HEUER MONACO 41MM | NON-EXEMPT | N/A | Y | Y |
| TAG HEUER CARRERA 41MM | NON-EXEMPT | N/A | Y | Y |
| VICTORONIX 41MM | NON-EXEMPT | N/A | Y | Y |
| VICTORONIX 41MM | NON-EXEMPT | N/A | Y | Y |
| VICTORONIX | NON-EXEMPT | N/A | Y | Y |
| MARATAC 44MM | NON-EXEMPT | N/A | Y | Y |
| HAMILTON AUTOMATIC JAZZMASTER MODEL H325960 44MM | NON-EXEMPT | N/A | Y | Y |
| BERING TITANIUM 38MM | NON-EXEMPT | N/A | Y | Y |
| SEKONDA 41MM | NON-EXEMPT | N/A | Y | Y |
| TREADMILL AND 3 ELECTRIC BIKES | EXEMPT | $2,385.00 | N | N |
| COINS | NON-EXEMPT | N/A | Y | Y |

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| ASSET DESCRIPTION | EXEMPT/NON-EXEMPT | VALUE OF ASSET (IF EXEMPT) | LIQUIDATED UNDER PLAN (Y/N)? | ASSET AVAILABLE FOR CREDITORS (Y/N)? |
|---|---|---|---|---|
| RENTAL PROPERTY - WW | NON-EXEMPT | N/A | Y | Y |
| LAKE HOUSE | NON-EXEMPT | N/A | Y | Y |
| 2019 DODGE CHALLENGER | NON-EXEMPT | N/A | Y | Y |
| 2020 DODGE CHARGER | NON-EXEMPT | N/A | N | N |
| 2016 REGAL BOATS 28 EXPRESS | NON-EXEMPT | N/A | Y | Y |
| 2015 REGAL BOATS 24 FASDECK | NON-EXEMPT | N/A | Y | Y |
| 100% INTEREST IN A. EMRIC PRODUCTIONS, LLC | NON-EXEMPT | N/A | N | N |
| 100% INTEREST IN MAGNOLIA HOLDINGS LIMITED PARTNERSHIP, LLC | NON-EXEMPT | N/A | N | N |
| 100% interest in MAGNOLIA MANAGEMENT, LLC | NON-EXEMPT | N/A | N | N |
| 100% interest in AUSTIN SHIPROCK PUBLISHING, LLC | NON-EXEMPT | N/A | N | N |
| 100% INTEREST IN PLANET INFOWARS, LLC | NON-EXEMPT | N/A | N | N |
| 100% INTEREST IN RCGJ, LLC | NON-EXEMPT | N/A | N | N |
| 100% INTEREST IN FREE SPEECH SYSTEMS, LLC | NON-EXEMPT | N/A | N | N[1] |
| 100% INTEREST IN AEJ AUSTIN HOLDINGS, LLC | NON-EXEMPT | N/A | N | N |
| 100% INTEREST IN GUADALUPE | NON-EXEMPT | N/A | N | N |

---

[1] Through the FSS subchapter V plan, FSS's net disposable income will be distributed to holders of an Allowed Claim against both the Debtor and FSS.

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| County Land and Water, LLC | | | | |
|---|---|---|---|---|
| Asset Description | Exempt/Non-Exempt | Value of Asset (if Exempt) | Liquidated Under Plan (Y/N)? | Asset Available for Creditors (Y/N)? |
| 100% Interest in Emric Productions, LLC | Non-Exempt | N/A | N | N |
| 100% Interest in Jones Report, LLC | Non-Exempt | N/A | N | N |
| 100% Interest in Jones Productions, LLC | Non-Exempt | N/A | N | N |
| Crypto Currency | Non-Exempt | N/A | Y | Y |
| Tax Refund in Amount of $3,807,459.00 | Non-Exempt | N/A | Y | Y |
| Ranch located in Guadalupe County, TX | Non-Exempt | N/A | Y | Y |
| Cryogenic Chamber | Non-Exempt | N/A | Y | Y |
| Lake House Furniture, Fixtures, Household Goods and Rec. Equip. | Non-Exempt | N/A | Y | Y |
| Recharge Dynasty Trust | Non-Exempt | N/A | Y | Y |
| 2022 Litigation Settlement Trust | Non-Exempt | N/A | N | Y |
| RXXCTTGAA Trust | Non-Exempt | N/A | N | Y |
| Green Leaf Trust | Non-Exempt | N/A | N | N |
| AEJ 2018 Trust | Non-Exempt | N/A | N | Y |
| The Missouri779384 Trust | Non-Exempt | N/A | Y | Y |
| Alexander E. Jones Descendant and Beneficiary Trust | Non-Exempt | N/A | N | N |
| Sunglasses | Exempt | $845.00 | N | N |

**Schedule of Plan and Non-Plan, Non-Cash Assets**

| | | | | |
|---|---|---|---|---|
| **AGGREGATE ESTIMATED VALUE OF EXEMPT PERSONAL PROPERTY** | | $33,850.00 | | |

**<u>Exhibit A</u>**

Blackline of  Solicitation Version of the Amended Disclosure Statement

*Solicitation Version*

Formatted: Font: Italic

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **ALEXANDER E. JONES,** | § | |
| | § | |
| Debtor. | § | Case No. 22-33553 (CML) |
| | § | |

---

**DEBTOR'S ~~PROPOSED~~ AMENDED PLAN OF REORGANIZATION**

---

Dated: January 23, 2024.

**CROWE & DUNLEVY, P.C.**

Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

-and-

Shelby A. Jordan
State Bar No. 11016700
S.D. No. 2195
Antonio Ortiz
State Bar No. 24074839
S.D. No. 1127322
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX 78401
Telephone: (361) 884-5678
Facsimile: (361) 888-5555
Email: sjordan@jhwclaw.com
        aortiz@jhwclaw.com

**ATTORNEYS FOR ALEXANDER E. JONES**

## TABLE OF CONTENTS

**INTRODUCTION** ............................................................................................. 5

**SUMMARY OF PLAN** ..................................................................................... 5

**ARTICLE I:** ........................................................................................................ 6

**DEFINITIONS, CONSTRUCTION, AND INTERPRETATION** ..................... 6

**ARTICLE II:** ..................................................................................................... 13

**UNCLASSIFIED CLAIMS** .............................................................................. 13

    *2.01.*   *Administrative Claims.* .................................................................... 13

    *2.02.*   *Priority Tax Claims.* ...................................................................... 14

    *2.03.*   *Domestic Support Obligations.* ..................................................... 15

    *2.04.*   *U.S. Trustee Fees.* .......................................................................... 15

**ARTICLE III:** .................................................................................................... 15

**CLASSIFICATION OF CLAIMS** .................................................................... 15

    *3.01.*   *Introduction.* .................................................................................. 15

    *3.02.*   *Claims Against the Debtor.* ........................................................... 16

**ARTICLE IV** ..................................................................................................... 16

**IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS** ............ 16

    *4.01.*   *Unimpaired Claims* ....................................................................... 16

    *4.02.*   *Impaired Claims.* ........................................................................... 16

    *4.03.*   *Controversy Concerning Impairment* ........................................... 16

**ARTICLE V** ...................................................................................................... 17

**TREATMENT OF CLAIMS** ............................................................................. 17

    *5.01.*   *Non-Tax Priority Claims – Class 1* .............................................. 17

    *5.02.*   *Priority and Secured Tax Claims – Class 2* ................................. 17

    *5.03.*   *Secured Claim of Bank of America – Class 3*................................ 18

    *5.04.*   *Secured Claim of Security Bank of Crawford – Class 4* .............. 18

    *5.05.*   *"Opt-In Settlement" Unsecured Claims – Class 5*........................ 18

    *5.06.*   *General Unsecured Claims – Class 6*............................................ 20

    *5.07.*   *Administrative Convenience Claims – Class 7* ............................. 20

**ARTICLE VI** ..................................................................................................... 21

i

MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN ............................... 21

    *6.01.*    *The Settlement* ........................................................................................................ 21

    *6.02.*    *Sources of Cash and Terms of Payment for Plan Distributions* ............................ 22

    *6.03.*    *Payments.* ............................................................................................................... 22

    *6.04.*    *Post Effective Date Management.* .......................................................................... 23

**ARTICLE VII** ...................................................................................................................... 23

**TREATMENT OF EXECUTORY CONTRACTS** ............................................................. 23

    *7.01.*    *General Treatment of Executory Contracts: Rejected* ......................................... 23

    *7.02.*    *Cure Payments and Release of Liability* .............................................................. 23

    *7.03.*    *Bar to Rejection Claims* ........................................................................................ 24

    *7.04.*    *Rejection Claims* .................................................................................................. 24

**ARTICLE VIII** .................................................................................................................... 24

**CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION** .......................................................................................................... 24

    *8.01.*    *Conditions Precedent to Confirmation Date* ....................................................... 24

    *8.02.*    *Conditions Precedent to the Effective Date* ......................................................... 25

    *8.03.*    *Consequences of Non-Occurrence of Effective Date* ........................................... 25

**ARTICLE IX** ....................................................................................................................... 25

**EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE** ................................ 25

    *9.01.*    *Binding Effect* ....................................................................................................... 25

    *9.02.*    *Vesting of Assets* ................................................................................................... 26

    *9.03.*    *Assertion of Causes of Action, Defenses and Counterclaims* .............................. 26

    *9.04*    *Discharge of Debtor* ............................................................................................. 27

    *9.05*    *Injunction* .............................................................................................................. 28

    *9.06*    *Term of Bankruptcy Injunction or Stays* .............................................................. 28

    *9.07*    *Effectuating Documents; Further Transactions; Timing* ...................................... 28

**ARTICLE X** ........................................................................................................................ 29

**OBJECTIONS TO CLAIMS; DISTRIBUTIONS** .............................................................. 29

    *10.01.*    *Objections to Claims* ......................................................................................... 29

    *10.02.*    *Objection Deadline* ........................................................................................... 29

    *10.03.*    *Settlement of Objections to Claims* ................................................................... 29

    *10.04.*    *No Interest on Claims* ........................................................................................ 29

10.05.    *Setoffs by the Debtor; No Waiver* .................................................... 29

10.06.    *Procedures for Treating and Resolving Disputed and Contingent Claims* ................ 30

10.07.    *Distributions Under the Plan* ....................................................... 32

10.08.    *Duty to Disgorge Overpayments* ...................................................... 33

10.09    *Duties of the Disbursement Agent* ................................................... 33

10.10    *Disbursement Agent Expenses* ........................................................ 34

**ARTICLE XI** ................................................................................... 34

**ACCEPTANCE OR REJECTION OF THE PLAN** ......................................................... 34

11.01.    *Impaired Classes Entitled to Vote* .................................................. 34

11.02.    *Acceptance by an Impaired Class* .................................................... 34

11.03    *Elimination of Vacant Classes.* ..................................................... 34

11.04.    *Section 1129(b) Cramdown* ........................................................... 34

**ARTICLE XII** .................................................................................. 35

**RETENTION OF JURISDICTION** ................................................................... 35

12.01.    *Jurisdiction* ....................................................................... 35

12.02.    *Examination of Claims* .............................................................. 35

12.03.    *Determination of Disputes* .......................................................... 35

12.04.    *Additional Purposes* ................................................................ 35

12.05.    *Failure of the Bankruptcy Court to Exercise Jurisdiction* ........................... 37

**ARTICLE XIII** ................................................................................. 37

**MISCELLANEOUS PROVISIONS** .................................................................... 37

13.01.    *General Notices* .................................................................... 38

13.02.    *Exemption From Transfer Taxes* ...................................................... 38

13.03.    *Asserting and Curing Default Under the Plan* ........................................ 38

13.04.    *Revocation or Withdrawal of the Plan* ............................................... 39

13.05.    *Modification of the Plan* ........................................................... 39

13.06.    *Computation of Time* ................................................................ 40

13.07.    *Due Authorization* .................................................................. 40

13.08.    *Implementation* ..................................................................... 40

13.09.    *Execution of Documents* ............................................................. 40

13.10.    *Bankruptcy Restrictions* ............................................................ 40

13.11.    *Limited Plan Exculpation.* .......................................................... 40

13.12.    *Ratification* ....................................................................... 41

iii

*13.13.*  ***Integration Clause.*** ............................................................................... *41*

*13.14*  ***Interpretation*** ...................................................................................... *41*

*13.15*  ***Severability of Plan Provisions*** ........................................................ *41*

*13.16*  ***Governing Law*** ..................................................................................... *41*

## INTRODUCTION

Alexander E. Jones proposes this Plan pursuant to Bankruptcy Code section 1121(a). Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtor's assets, liabilities, resolutions of certain material disputes, future income projections, liquidation analysis, risk factors, summary and analysis of the Plan, and certain related matters. The Distributions to be made pursuant to this Plan to Holders of Allowed Claims, in each of the Classes of Claims against the Debtor set forth in Article III of this Plan, are set forth in Article V of this Plan.

THE DEBTOR URGES ALL HOLDERS OF CLAIMS TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.  NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND ANY DOCUMENTS, SCHEDULES OR EXHIBITS ATTACHED THERETO OR REFERENCED THEREIN HAVE BEEN AUTHORIZED BY THE DEBTOR OR THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

## SUMMARY OF PLAN[1]

The Plan provides for the reorganization of the Debtor and the payment of Allowed Claims through: (a) the continued orderly liquidation of certain non-exempt assets of the Debtor; (b) the settlement of various estate claims against individuals and businesses; and (c) the Debtor's commitment to contribute substantial funds from his future income.  More specifically, the Debtor will contribute 100% of the Net Disposable Income of Free Speech System, LLC ("FSS") as set forth in the FSS Plan and 50% of the Debtor's Plan Income to both settling and non-settling parties, until such time as certain minimum payments have been contributed for settling parties, and then 25% of the Debtor's Plan Income over the remaining Plan Term to non-settling parties.  As a result, all allowed administrative claims, priority claims, and secured claims will be paid in full, and allowed unsecured creditors will receive a substantial Distribution (and significantly more than they would receive in a liquidation whether through a liquidating chapter 11 plan or a chapter 7).

The Plan also allows for unsecured creditors to opt in to a "settling class" allowing for faster payment of their claims and repayment from certain non-exempt assets of the Debtor in exchange for settlement of certain existing litigation claims. This settlement class facilitates the Plan and benefits all stakeholders by resolving pending litigation that would otherwise be both costly and time consuming for the Debtor and the bankruptcy estate. Finally, the Plan incentivizes the Debtor to satisfy his obligations to fund the  Plan as soon as possible to accelerate payments to creditors.

---

[1] This Summary is intended solely to provide an overview of the Plan   The Summary shall not be binding on the Debtor, and in the event of any conflict between the Summary and any other provision of the Plan, such other provision shall be controlling

## ARTICLE I:

### DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

The capitalized terms used herein shall have the respective meanings set forth below. A capitalized term used herein that is not defined in this Article shall have the meaning ascribed to that term, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa. All exhibits and schedules attached to the Plan are incorporated herein.

1.01.    *"Administrative Claim"* means any Claim for an Administrative Expense.

1.02.    *"Administrative Expense"* means any cost or expense of administration of this case incurred on or before the Effective Date that is entitled to priority under section 507(a)(2) and allowed under section 503(b) of the Bankruptcy Code, including, without limitation, Fee Claims and all other claims for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, Cure Claims, and all fees and charges assessed against the Debtor's Estate under the Bankruptcy Code.

1.03.    *"Allowance Date"* means the date on which a Claim, an Administrative Claim, or any Secured Claim becomes an Allowed Claim.

1.04.    *"Allowed"* means, when used with respect to a Claim (including any Administrative Claim), or any portion thereof, a Claim, Administrative Claim, or any portion thereof (a) that has been allowed by a Final Order, (b) that was listed in the Schedules as neither disputed, contingent nor unliquidated and for which no timely Proof of Claim was filed, (c) for which a Proof of Claim in a liquidated amount has been timely filed pursuant to the Bankruptcy Code or as required by any Final Order of the Bankruptcy Court and as to which either (i) no objection to its allowance has been filed on or before the Objection Deadline or within any other period fixed by the Bankruptcy Code or a Final Order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount in the Plan. For the avoidance of doubt, in order to have an Allowed Claim, each Non-Electing Plaintiff must have a Final Order against the Debtor in their respective state court litigation case.

1.05.    *"Avoidance Action"* means any cause of action under any of sections 544, 545, 546, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code, which actions are waived except as specified in the Plan.

1.06.    *"Bankruptcy Case"* means the Debtor's Bankruptcy Case No. 22-33553 under chapter 11 of the Bankruptcy Code.

1.07.    *"Bankruptcy Code"* means the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

6

**1.08.**   ***"Bankruptcy Court"*** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or such other court having jurisdiction over this case.

**1.09.**   ***"Bankruptcy Rules"*** means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

**1.10.**   ***"Business Day"*** means any day on which commercial banks are open for business in Austin, Texas.

**1.11.**   ***"Cash"*** means legal tender of the United States of America or Cash equivalents.

**1.12.**   ***"Cause of Action"*** means any cause of action or right to payment arising under federal, state, or common law, including Avoidance Actions, that the Debtor or the Estate may hold against any Person.

**1.13.**   ***"Claim"*** shall have the meaning provided in section 101(5) of the Bankruptcy Code.

**1.14.**   ***"Class"*** means a category of Holders of Claims as set forth in the Plan.

**1.15.**   ***"Collateral"*** means any property of the Debtor subject to a valid and enforceable lien to secure the payment of a Claim.

**1.16.**   ***"Confirmation Date"*** means the date on which the Bankruptcy Court enters the Confirmation Order.

**1.17.**   ***"Confirmation Hearing"*** means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128 on confirmation of the Plan.

**1.18.**   ***"Confirmation Order"*** means the order of the Bankruptcy Court confirming this Plan.

**1.19.**   ***"Creditor"*** shall mean the Holder of a Claim.

**1.20.**   ***"Cure Claim"*** means a Claim arising from the assumption of an Executory Contract under section 365(b) of the Bankruptcy Code.

**1.21.**   ***"Debtor"*** means Alexander E. Jones, and shall also include, where applicable, Jones from and after the Effective Date as reorganized pursuant to this Plan.

**1.22.**   ***"Disallowed"*** means, when used with respect to a Claim, a Claim or the portion thereof which, in a properly entered order of the Bankruptcy Court, is fully and finally (a) denied allowance, or (b) is estimated for purposes of payment or other Plan Distributions at zero ($0.00). Disallowed means, when used with respect to an Administrative Expense of a professional that is a Fee Claim, an Administrative Expense or portion thereof that is denied by the Bankruptcy Court or other court of competent jurisdiction or that is estimated by the Bankruptcy Court for purposes

7

of payment or other Plan Distributions at zero ($0.00).

      **1.23.** ***"Disbursement Agent"*** means a person designated by the Debtor, with the consent of the Electing Plaintiffs, who shall have the responsibilities set forth in Article X of the Plan. The Disbursement Agent may be the same person as the trustee for the FSS Trust.

      **1.24.** ***"Discharge Date"*** means the date upon which the Court grants the Debtor a discharge upon the earlier of (i) the Debtor having satisfied his payment obligations under the Plan or (ii) all Allowed Claims shall have been paid.

      **1.25.** ***"Disclosure Statement"*** means the Disclosure Statement of Jones with respect to this Plan of Reorganization, as approved by the Court, as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules, together with any Exhibits thereto.

      **1.26.** ***"Disputed"*** when used with respect to a Claim, means any such Claim that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated, any Claim that is the subject of an objection filed in the Bankruptcy Court, any Claim that is disputed by the Debtor in any litigation, lawsuit, or adversary proceeding in the Bankruptcy Court or any other court of competent jurisdiction, or any Claim that is not Allowed.

      **1.27.** ***"Distribution"*** means the property required by this Plan to be distributed to the Holders of Allowed Claims.

      **1.28.** ***"Domestic Support Obligations"*** has the meaning provided in Section 101(14A) of the Bankruptcy Code, as such obligations may be modified from time to time by a court of appropriate jurisdiction.

      **1.29.** ***"Effective Date"*** means the first Business Day that is the later of fourteen (14) days after the Confirmation Date of this Plan if the Confirmation Order is not stayed prior to such date or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay.

      **1.30.** ***"Electing Plaintiffs"*** means those certain unsecured creditor parties who elect "Opt-In Settlement" Claim Treatment under Class 5 by the Voting Deadline and vote in favor of the Plan.

      **1.31.** ***"Electing Plaintiff Pro Rata Share"*** means the ratio, expressed as a percentage, of an Electing Plaintiff's Allowed Claim divided by the Allowed Claims of all Electing Plaintiffs, collectively.

      **1.32.** ***"Estate"*** means the Debtor's estate in this case created pursuant to section 541 of the Bankruptcy Code.

      **1.33.** ***"Executory Contract"*** means any prepetition executory contract or unexpired lease governed by section 365 of the Bankruptcy Code.

**1.34.** ***"Fee Application"*** means an application for the allowance of a Fee Claim.

**1.35.** ***"Fee Claim"*** means a Claim by a Professional or any other party-in-interest pursuant to sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code or otherwise relating to services performed after the Petition Date and prior to and including the Effective Date.

**1.36.** ***"Final Decree"*** means the final decree entered by the Bankruptcy Court on or after the Effective Date and pursuant to Bankruptcy Rule 3022.

**1.37.** ***"Final Order"*** means (a) an order as to which the time to appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment has expired and as to which no appeal, petition for certiorari or other proceedings for reargument, rehearing, reconsideration, new trial, or to alter or amend findings  or judgment shall then be pending or (b) in the event that an appeal, writ of certiorari, reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall have expired; <u>provided</u>, <u>however</u> that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 59 or Rule 60 of the Federal Rules of Civil Procedure may be filed.

**1.38.** ***"FSS"*** means Free Speech Systems, LLC.

**1.39.** ***"FSS Plan"*** means a plan under Chapter 11 Subchapter V of the Bankruptcy Code for FSS.  "FSS Plan" shall refer specifically to Docket No. 756 in Case No. 22-60043 unless further amended by FSS, at which time "FSS Plan" shall refer to such plan as amended.

**1.40.** ***"FSS Trust"*** means the Free Speech Systems Settlement Trust established pursuant to the FSS Plan.

**1.41.** ***"General Unsecured Claims"*** means non-priority unsecured claims held by parties-in-interest.

**1.42.** ***"GUC Pro Rata Share*** means the ratio, expressed as a percentage, of a Holder of an Allowed General Unsecured Claim in Class 6 divided by the Allowed Claims of all Holders of Allowed General Unsecured Claims in Class 6, collectively.

**1.43.** ***"Holder"*** means a Person who is the beneficial owner of a Claim. For purposes of a Distribution, a Person must be a Holder as of the Initial Distribution Date. For purposes of voting to accept or reject this Plan, a Person must be a Holder as of the Voting Record Date. A Holder may transfer their claim to another Person for purposes of Distribution.

**1.44.** ***"Income Stream Payment"*** means for a particular Plan Year during the Plan Term (i) 50% of the Debtor's Plan Income for such Plan Year through the end of the year in which the Payment Trigger occurs; and (ii) 25% of the Debtor's Plan Income for each such Plan Year following

the year in which the Payment Trigger occurs.

      **1.45.** ***"Initial Distribution Date"*** means the date, determined by the Disbursement Agent, as soon as reasonably practical after the Effective Date, that Distributions with respect to Priority Tax Claims, Secured Tax Claims and Non-Tax Priority Claims shall commence.

      **1.46.** ***"Lien"*** has the meaning provided in Bankruptcy Code section 101(37) and shall include a "statutory lien" as defined in Bankruptcy Code section 101(53).

      **1.47.** ***"Minimum Annual Distribution"*** means, for each Electing Plaintiff in any given Plan Year during the Plan Term, the Plaintiff Pro Rata Share for such Plaintiff multiplied by \$5.5 million, <u>minus</u>, the amount received by such Electing Plaintiff from the FSS Trust with respect to such Plan Year.

      **1.48.** ***"Net Proceeds"*** means any amounts collected by the Debtor from any disposition of any non-exempt property, after payment of all reasonable and customary costs and expenses associated therewith which may be required to be paid under applicable law or agreement to effectuate the receipt of such proceeds, including, without limitation, any reasonable attorney fees not otherwise paid under the Plan as an Administrative Expense.

      **1.49.** ***"Non-Electing Payment"*** means, on an annual basis for a particular Plan Year, the Income Stream Payment, minus the Distributions each Electing Plaintiff is entitled to under the Plan.

      **1.50.** ***"Non-Electing Plaintiffs"*** means those certain unsecured creditor parties who do not elect "Opt-In Settlement" Claim Treatment under Class 5 and will instead be treated as general unsecured creditors under Class 6.

      **1.51.** ***"Non-Exempt Assets"*** means, the Debtor's Cash as of the Effective Date, less the \$250,000 reserve for living and post-confirmation legal expenses (as set forth in Section 6.02), as well as assets listed on the schedules of assets of the Debtor (other than assets scheduled on Schedule C as exempt for which there is no pending exemption objection), including, for the avoidance of doubt, any income tax refund owed to the Debtor as of the Petition Date. Notwithstanding the foregoing, Non-Exempt Assets does not include the Charger, the Rolex Oyster Perpetual Date, or any ownership interests the Debtor holds in entities and trusts, which the Debtor will retain post-confirmation due to the expense in replacing a car, the inability of creditors to reach trust corpus, or the inability to liquidate for value above liquidation costs. For clarity, **Schedule A**, attached hereto, contains a chart setting forth the Non-Exempt Assets, Exempt Assets, and those assets this Plan proposes that the Debtor retain that are not exempt.

      **1.52.** ***"Non-Tax Priority Claim"*** means any Claim that, if allowed, would be entitled to priority in payment under Bankruptcy Code section 507(a) other than a Priority Tax Claim, an Administrative Claim, or a Domestic Support Obligation.

      **1.53.** ***"Objection Deadline"*** means the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective Holder(s) thereof as provided in section 10.02 of the Plan, which date shall be ninety (90) days after the Effective Date unless extended by order of the Bankruptcy Court for good cause shown.

**1.54.**   ***"Opt-In Settlement Unsecured Claims"*** means the Claims held by those certain Electing Plaintiffs who elect "Opt-In Settlement" Claim Treatment under Class 5.

**1.55.**   "***Ordinary Course of Business***" shall have the meaning given to such term as utilized in Section 363(b) of the Bankruptcy Code.

**1.56.**   "***Payment Trigger***" shall mean the receipt by each Electing Plaintiff of their Plaintiff Pro Rata Share of $55 million, collectively from (i) the FSS Trust; (ii) the Income Stream Payment pursuant to this Plan and (iii) the 70% of proceeds from liquidation of Non -Exempt Assets minus cost of liquidation.

**1.57.**   "***Person***" means and includes natural persons, corporations, limited partnership, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other organizations, irrespective of whether they are legal entities, governments and agencies and political subdivisions thereof or other entities.

**1.58.**   ***"Petition Date"*** means December 2, 2022.

**1.59.**   ***"Plaintiff"*** means each of the following: Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, the Estate of Marcel Fontaine, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Sota, Carlee Soto Parisi, Carlos M. Soto, Jilian Soto-Marino, William Aldenberg, William Sherlach, and Robert Parker.

**1.60.**   ***"Plaintiff Pro Rata Share"*** means the ratio, expressed as a percentage, of a Plaintiff's Allowed Claim divided by the Allowed Claims of all Plaintiffs, collectively.

**1.61.**   ***"Plan"*** or ***"Plan of Reorganization"*** means this Plan of Reorganization either in its present form or as it may hereafter be altered, amended, or modified from time to time.

**1.62.**   ***"Plan Default"*** means the occurrence of a default under Article XIII of this Plan.

**1.63.**   ***"Plan Income"*** means, on an annual basis, the amount of cash basis income plus taxable fringe benefits received by the Debtor from all sources, including salary, equity distributions, unspecified donations, proceeds from litigation claims after litigation expenses, and other sources net of direct expenses, after deducting estimated taxes, health insurance, and Domestic Support Obligations. The Disbursement Agent has the sole authority to review the Debtor's annual income and deductions as well as FSS financials to ensure all income is reported and all deductions are appropriate hereunder.  Payments for Disbursement Agent expenses shall be deducted from the initial funding of the 30% Net Proceeds of the Non-exempt Asset liquidation; then from Plan Income prior to calculations for Distributions.  Plan Income shall also include, after the payment of senior classes as well as all Administrative Expense Claims and Priority Claims, the net proceeds from liquidating the Non-Exempt Assets and all Cash contributed by the Debtor to the FSS Trust on or after the Effective Date. For the avoidance of doubt, Plan Income shall not include amounts paid by the FSS Trust pursuant to the FSS Plan.

11

**1.64.** *"Plan Supplement"* shall mean those certain documents and schedules to be filed no later than seven (7) days prior to the Confirmation Hearing, which shall include the identity of the Disbursement Agent and related agreements, the terms of any proposed settlements with Related Parties and schedules of assumed and rejected contracts to the extent applicable.

**1.65.** *"Plan Term"* shall mean the period from the Effective Date through 120 months from the Effective Date, as may be extended pursuant to Section 13.03 hereof, unless otherwise determined by a Final Order of the Bankruptcy Court.

**1.66.** *"Plan Year"* shall mean the twelve month period beginning with the first day of the month following the Effective Date.

**1.67.** *"Priority Tax Claim"* means any Claim against the Debtor that, if Allowed, would be entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

**1.68.** *"Professional"* means a Person defined as a professional person in sections 327 or 1103 of the Bankruptcy Code who has been employed pursuant to an order of the Bankruptcy Court in this chapter 11 case and any professional seeking compensation or reimbursement of costs and expenses in connection with this chapter 11 case pursuant to section 503(b)(4) or 1129(a)(4) of the Bankruptcy Code.

**1.69.** "*Rejection Bar Date*" means the day that is thirty (30) days after the entry of the Confirmation Order.

**1.70.** *"Rejection Damage Claim"* means a Claim by a party to an Executory Contract with the Debtor that has been rejected by the Debtor pursuant to this Plan or a prior Final Order of the Bankruptcy Court entered in this case.

**1.71.** "*Related Parties*" means those certain individuals or companies related to the Debtor via blood, marriage, or ownership as identified on **Schedule B**.

**1.72.** *"Rental Property"* means that certain real property owned by the Debtor located in Travis County, Texas which as of the date of this Plan is occupied by an individual tenant who is not a Related Party.

**1.73.** *"Secured Claim"* means a Claim that is secured by a security interest in or a lien on property of the Estate to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the Claim Holder. Secured Claims shall include Claims secured by security interests or liens junior in priority to existing security interests or liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property after giving effect to all security interests or liens senior in priority.

**1.74.** *"Secured Tax Claim"* means a Claim by a governmental unit for the payment of a

12

tax assessed against property of the Estate and that is secured as of the Effective Date by a Lien against such property, which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the property securing such Claim.

**1.75.** *"Schedules"* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement have been or may be supplemented or amended.

**1.76.** "*United States Trustee*" means the United States Trustee appointed under Section 591, Title 28, United States Code to serve in the Southern District of Texas.

**1.77.** *"Unsecured Claim"* means a Claim that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim or a Non-Tax Priority Claim.

**1.78.** "*Voting Record Date*" means the date on which an Order conditionally approving the Disclosure Statement is signed.

## ARTICLE II:

## UNCLASSIFIED CLAIMS

**2.01.    Administrative Claims.**

(a)    **Time for Filing Administrative Claims.**  The Holder of any Administrative Claim that is incurred, accrued, or in existence prior to the Effective Date, other than (i) a Fee Claim, (ii) an Allowed Administrative Claim, or (iii) a liability incurred in the Ordinary Course of Business must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before thirty (30) days after the Effective Date.  Such request must include at a minimum (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim.  Failure to timely and properly file and serve the request required under this Section shall result in the Administrative Claim being forever barred and discharged.  Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party and the Debtor within thirty (30) days after the filing of the applicable request for payment of an Administrative Claim.

(b)    **Time for Filing Fee Claims.**  Any Person who holds or asserts an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application within sixty (60) days after the Effective Date.  Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being forever barred and discharged. No Fee Claim will be deemed Allowed until an order allowing the Fee Claim becomes a Final Order.  Objections to Fee Applications must be filed and served pursuant to the Bankruptcy Rules on the Debtor and the Person to whose application the objections are directed or made within thirty (30) days after the filing of the Fee Application subject to objection.  No hearing may be held on a specific Fee Application until the foregoing objection period with respect to that Fee Application has expired.

13

(c)     **Allowance of Administrative Claims.**  An Administrative Claim with respect to which a request for payment is required and has been properly filed pursuant to Section 2.01(a) of the Plan shall become an Allowed Administrative Claim if no timely objection is filed.  If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.  An Administrative Claim that is a Fee Claim, and with respect to which a Fee Application has been properly filed and served pursuant to Section 2.01(b) of the Plan, shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.

(d)     **Payment of Allowed Administrative Claims.**  Except to the extent that a Holder of an Allowed Administrative Claim has been paid prior to the Effective Date with respect to Administrative Claims against the Debtor, or agrees to a different treatment, each Holder of an Allowed Administrative Claim (other than Allowed Administrative Claims incurred in the Ordinary Course of Business, which are paid pursuant to Section 2.01(e) below) shall receive from the Debtor, in full satisfaction, release and discharge of and exchange for such Administrative Claim, and after the application of any retainer or deposit held by such Holder, Cash equal to the Allowed amount of such Administrative Claim within ten (10) Business Days after the Allowance Date with respect to such Allowed Administrative Claim.

(e)     **Administrative Claims Incurred in the Ordinary Course of Business.** Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtor during the Bankruptcy Case (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes, or alleged Administrative Claims arising in contract or tort) shall not be required to file any request for payment of such Claims.  Each Administrative Claim incurred in the Ordinary Course of Business of the Debtor will be paid  by the Debtor pursuant to the terms and conditions of the transaction giving rise to such Administrative Claim, without any further action by the Holder of such Administrative Claim. The Debtor reserves and shall have the right to object before the Objection Deadline to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such claim until such time as any objection is resolved pursuant to a settlement or a Final Order.

**2.02.    Priority Tax Claims.**

Except to the extent that an Allowed Priority Tax Claim has been paid or otherwise satisfied prior to the Initial Distribution Date (which shall occur only if reasonably determined by the Debtor to be not material in amount with respect to the Debtor's obligations under the Plan), each Holder of an Allowed Priority Tax Claim, in full satisfaction, release, settlement, and discharge of and exchange for such Claim, shall receive from the Debtor (a) deferred Cash payments over a period not exceeding five (5) years after the Petition Date in an aggregate principal amount equal to the Allowed amount of such Priority Tax Claim, plus interest, from the Petition Date through the date such Claim is paid in full, on the unpaid portion thereof at the rate of interest determined under applicable nonbankruptcy law as of the calendar month in which the Confirmation Date occurs, in equal annual installments with the first payment to be due on the later of (i) the Initial Distribution Date or (ii) five (5) Business Days after the date when a  Priority Tax Claim becomes an Allowed Priority Tax Claim, and subsequent payments to be due on each anniversary of the Initial Distribution Date, or (b) such other less favorable treatment to which such Holder and the Debtor

14

agree in writing.  Notwithstanding the foregoing, (a) any Claim or demand for payment of a penalty (other than a penalty of the type specified in Bankruptcy Code section 507(a)(8)(G)) shall be Disallowed pursuant to the Plan and the Holder thereof shall not assess or attempt to collect such penalty from the Debtor or from any of the assets, and (b) provided that the Debtor has otherwise complied with the terms and provisions of the Plan, the Debtor shall have the right to pay any Allowed Priority Tax Claim, or any unpaid balance of such Claim, in full, at any time after the Effective Date, without premium or penalty.

### 2.03.   Domestic Support Obligations.

On the Effective Date, the Debtor shall make any payments that may be required to comply with any post-petition unfunded obligations on account of any Domestic Support Obligations, as may be required for the Debtor to be current with respect to such Domestic Support Obligations as of the Effective Date as required pursuant to section 1129(a)(14) of the Bankruptcy Code.  After the Effective Date the Debtor shall timely make all payments on account of Domestic Support Obligations to the parties entitled to receive such payments, in each case at the times and in the amounts required by the agreements and orders evidencing such Domestic Support Obligations, as such agreements may from time to time be modified in accordance with applicable state law.

### 2.04.   U.S. Trustee Fees.

The Debtor shall continue to remit to the office of the United States Trustee all appropriate post confirmation monthly reports for all relevant time periods until the Bankruptcy Case is closed by order of the Bankruptcy Court or converted to a case under chapter 7 of the Bankruptcy Code.  The Debtor shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for all quarters as applicable and shall continue to remit quarterly fee payments based on all disbursements, until the Bankruptcy Case is closed by order of the Bankruptcy Court, or converted to a case under chapter 7 of the Bankruptcy Code.

## <u>ARTICLE III:</u>

## CLASSIFICATION OF CLAIMS

### 3.01.   Introduction.

All Claims, except Administrative Claims, are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims have not been classified.

The Plan contemplates separate Classes for the Debtor for voting and Distribution purposes.  To the extent a Class contains one or more subclasses, each such subclass is deemed to be a separate Class for all purposes under the Bankruptcy Code and the Plan.

Except for the unclassified Claims discussed in Article II above, Section 3.02 of the Plan sets forth a designation of Classes of all Claims in accordance with Bankruptcy Code section 1122(a).  A Claim is classified in a particular Class only to the extent any portion of the Claim qualifies within the description of the Class and is classified in a different Class to the extent any

15

portion of the Claim qualifies within the description of that different Class.  If a Claim is acquired or transferred, the Claim shall be placed in the Class in which it would have been  placed if it were owned by the original Holder of such Claim.  A Claim is also placed in a particular Class for the purpose of receiving Distributions only to the extent that such Claim is an Allowed Claim in that Class, and such Claim has not been paid, satisfied or released before the Effective Date.

**3.02.   Claims Against the Debtor.**

(a)      Class 1:  Non-Tax Priority Claims

(b)      Class 2:  Priority Tax Claims

(c)      Class 3:  Secured Claim of Bank of America

(d)      Class 4:  Secured Claim of Security Bank of Crawford

(e)      Class 5:  Unsecured "Opt-In Settlement" Claims

(f)      Class 6:  General Unsecured Claims

(g)      Class 7:  Administrative Convenience Claims

## ARTICLE IV

### IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS

**4.01.   Unimpaired Claims**

Claims against the Debtors in Classes 1, 2, 3, and 4 are not impaired under the Plan, and the Holders of those Claims are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are thus not entitled to vote on the Plan.

**4.02.   Impaired Claims**

Claims against the Debtor in Classes 5, 6, and 7 are impaired under the Plan, and the Holders of those Claims are entitled to vote to accept or reject the Plan.

**4.03.   Controversy Concerning Impairment**

In the event of a controversy as to whether any Claim or any Class of Claims is impaired under the Plan, the Bankruptcy Court will determine the controversy, after notice and a hearing.

16

<u>**ARTICLE V**</u>

**TREATMENT OF CLAIMS**

**5.01.  Non-Tax Priority Claims – Class 1**

On or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Non-Tax Priority Claim, each Holder of such Allowed Non- Tax Priority Claim shall receive from the Disbursement Agent, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Non-Tax Priority Claim, (y) Cash in an amount equal to the Allowed amount of its Non-Tax Priority Claim, or (z) such other, less favorable treatment to which such Holder and the Debtor agrees in writing.  To the extent an Allowed Non-Tax Priority Claim entitled to priority treatment under 11 U.S.C. §§ 507(a)(4) or (5) exceeds the statutory cap applicable to such Claim, such excess amount shall be treated as a Class 6 General Unsecured Claim against the Debtor.

**5.02. Priority and Secured Tax Claims – Class 2**

With respect to any Allowed Priority Tax Claim, to the extent not already paid or otherwise satisfied, on or as soon as practicable after the later of (a) the Initial Distribution Date or (b) the Allowance Date with respect to a Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive from the Debtor in full satisfaction, settlement, release, and discharge  of and in exchange for such Allowed Priority Tax Claim, (x) Cash equal to  the Allowed Amount of its Allowed Priority Tax Claim, plus interest thereon at the rate provided under applicable non-bankruptcy law pursuant to Section 511 of the Bankruptcy Code from the Petition Date through the date such Claim is paid in full, or (z) such other, less favorable treatment as may be agreed upon in writing by such Holder and the Debtor.

The Holder of a Secured Tax Claim for ad valorem taxes for any tax year from 2023 and thereafter shall retain all rights and remedies for payment thereof in accordance with applicable non-bankruptcy law.

Notwithstanding any other provision of the Plan, each Holder of an Allowed Secured Tax Claim shall retain its Lien on any Collateral that secures its Claim or the proceeds of such Collateral (to the extent such Collateral is sold by the Debtor, free and clear of such Lien) to the same extent and with the same validity and priority as such Lien held as of the Petition Date until (a) the Holder of such Allowed Secured Tax Claim (i) has been paid Cash equal to the value of its Allowed Secured Tax Claim and/or (ii) has received a return of the Collateral securing its Allowed Secured Tax Claim, or (iii) has been afforded such other treatment as to which such Holder and the Debtor have agreed upon in writing, or (b) such purported Lien has been determined by a Final Order to be invalid or avoidable.  To the extent that a Secured Tax Claim exceeds the value of the interest of the Estate in the property that secured such Claim, such  Claim shall be deemed Disallowed pursuant to Bankruptcy Code section 502(b)(3).

If the Debtor fails to timely make any payment to a Holder of an Allowed Secured Tax Claim as required under Section 5.02 of the Plan, the affected Holder of an Allowed Secured Tax Claim may send written notice of default to the Debtor.  If the default is not cured within twenty-

one (21) days after notice of default is mailed, such Holder may proceed with any remedies for collection of amounts due under applicable non-bankruptcy law without further order of the Bankruptcy Court.

### 5.03.  Secured Claim of Bank of America – Class 3

(a)    <u>Allowance</u>.  The Allowed amount of the Class 3 Secured Claim shall be equal to the aggregate of (1) $26,354.73, plus (2) accrued and unpaid interest at the Contract Rate  from the Petition Date until the Rental Property is sold and such claim is paid in full, less any payments made on account of such Claim from and after the Petition Date that are required to be applied as payments of principal pursuant to an Order of the Bankruptcy Court.

(b)    <u>Treatment</u>.  Except to the extent that the Holder of the Allowed Class 3 Secured Claim agrees to less favorable treatment of such Allowed Class 3 Secured Claim, the Holder of the Allowed Class 3 Secured Claim shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 3 Secured Claim, Cash in an amount equal to such Allowed Class 3 Secured Claim on the later of (i) the Effective Date, or (ii) the date the Rental Property is sold and the Debtor has received the Net Proceeds of such  sale in immediately available funds. As of the Effective Date, the Debtor's obligations under the loan documents giving rise to the Allowed Class 3 Secured Claim, shall be reinstated and Bank of America shall retain its lien rights pending sale of the Rental Property and payment of the Class 3 Claim in full.

### 5.04.  Secured Claim of Security Bank of Crawford – Class 4

(a)    <u>Allowance</u>.  The Allowed amount of the Secured Claim of Security Bank of Crawford shall be equal to the aggregate of (1) $80,161.04, plus (2) accrued and unpaid interest at the Contract Rate from the Petition Date until the Effective Date, less any payments made on account of such Claim from and after the Petition Date and applied to the principal amount of such Claims as required by the Bankruptcy Code. Payments are currently being made in accordance with the relevant loan documents by FSS and are scheduled to continue under the FSS Plan.

(b)    <u>Treatment</u>.  From and after the Effective Date, the Debtor shall reinstate his existing guarantor obligations under the applicable loan documents with respect to the Class 4 Claim of Security Bank of Crawford, secured by the existing collateral, until such time as the loan obligations are paid in full.

### 5.05.  "Opt-In Settlement" Unsecured Claims – Class 5

(a)    <u>Allowance</u>.  On the Effective Date, the Opt-In Settlement Unsecured Claims shall consist of the Claims of the Electing Plaintiffs.
    1)    Each Electing Plaintiff shall receive Cash in the amount of:
        i)    such Electing Plaintiff's Electing Plaintiff Pro Rata Share of 70% of the Net Proceeds from the sale or other monetization of Non-Exempt Assets, as soon as reasonably practicable following the receipt of such Net Proceeds; and

18

> ii)    from the Effective Date until the year in which the Payment Trigger occurs, the greater of such Electing Plaintiff's (x) Minimum Annual Distribution or (y) Plaintiff Pro Rata Share of the Income Stream Payment on an annual basis. The Electing Plaintiffs shall cease receiving Distributions under this Plan beginning the year following the occurrence of the Payment Trigger; <u>provided</u>; <u>that</u> Electing Plaintiffs may continue to receive payments under the FSS Plan and FSS Trust to the extent applicable. Payments under this paragraph shall be made on or before the first Business Day in May of each year following the Effective Date.

The Net Proceeds from the liquidation of the Non-Exempt Assets including Cash paid by the Debtor to the Disbursement Agent on the Initial Distribution shall reduce the Minimum Annual Distribution for the first Plan Year.

> 2)    Each Electing Plaintiff shall have an Allowed Claim in the amount set forth next to such person's name on <u>Exhibit A</u> hereto. No further litigation with respect to conduct occurring on or prior to the Confirmation Date shall be pursued on behalf of Electing Plaintiffs against the Debtor or any Related Party.

(b)    <u>Treatment</u>. The Opt-In Settlement Unsecured Claims treatment shall be in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim. Such Claims shall be discharged after payments are made as set forth herein. Also, for each year in which no uncured Plan Default occurs, 10% of each Opt-In Settlement Unsecured Claim shall be waived and forever discharged. However, whatever Opt-In Settlement Unsecured Claims that are not paid under the Plan or waived and discharged pursuant to the preceding sentence, shall be deemed to be non-dischargeable without further court process in the event of a final, uncured Plan Default. The Debtor, the Disbursement Agent and the Electing Plaintiffs will work cooperatively to determine the most tax efficient method of distribution, which may include the Debtor directing FSS to make Income Stream Payments from FSS or from the FSS Trust to the extent practicable.

(c)    <u>Settlement Injunction</u>.

> 1)    As consideration for the concessions made by the Electing Plaintiffs herein, the Debtor agrees that, without first obtaining the permission of all Electing Plaintiffs, the Debtor may not in any way publicly discuss the 2012 mass shooting at Sandy Hook Elementary School, the Electing Plaintiffs, the Electing Plaintiffs' family members (including victims of the Sandy Hook shooting) or any Claims or litigation arising from or relating to Debtor's past statements about the Sandy Hook mass shooting—other than to state that he has no comment about such events or individuals. The Debtor will take all reasonable steps to ensure that FSS does not make a public statement that the Debtor would be prohibited from making under this paragraph. Failure

19

by Debtor to comply with this provision constitutes a Plan Default enforceable by the Electing Plaintiffs.

2)   So long as no Plan Default has occurred and is continuing, the Electing Plaintiffs agree that they will not seek to have Debtor or FSS removed from any forums or platforms (electronic or physical), unless such forums or platforms are owned or controlled by Electing Plaintiffs. So long as no Plan Default has occurred and is continuing, the Electing Plaintiffs agree that they will not seek to have any statements by Debtor or FSS removed from any forums or platforms (electronic or physical), unless such forums or platforms are owned or controlled by Electing Plaintiffs. Notwithstanding anything else to the foregoing, Electing Plaintiffs shall not disparage the Debtor or FSS and will make no public comment on the legal claims giving rise to the Electing Plaintiffs' Allowed Claims, or the treatment thereof under the Plan. If Electing Plaintiffs do not comply with the terms set out in this paragraph, Debtor may seek relief from the Bankruptcy Court, including injunctive relief.

3)   The Bankruptcy Court retains post-confirmation jurisdiction to determine any such disputes.

**5.06.  General Unsecured Claims – Class 6**

Following the Allowance Date of each General Unsecured Claim, after the resolution of any existing appeals or litigation of such Claims, and except to the extent that a Holder of an Allowed General Unsecured Claim agrees, under the terms of a writing executed by such Holder, to less favorable treatment of such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive from the Debtor, in exchange for such Allowed General Unsecured Claim, such Holder's GUC Pro Rata Share of (x) prior to the occurrence of the Plan Trigger, the amount of the Income Stream Payment remaining after Electing Plaintiffs are paid pursuant to the terms of Section 5.05 of the Plan, and (y) beginning the year following the occurrence of the Payment Trigger, all of the Income Stream Payment. Non-Electing Plaintiffs will be enjoined against collecting against the Debtor during the Plan Term; however, such Non-Electing Plaintiffs may, to the extent such Holder has a non-dischargeable claim, collect against the Debtor's non-exempt assets, unless such Claim is otherwise stayed, following the end of the Plan Term. Any Claims of Non-Electing Plaintiffs shall be reduced by any payments received by such claimants under the Plan.

After the Initial Distribution, annual payments shall be made on or before the first Business Day in the fifth month of the Plan Year.

**5.07.  Administrative Convenience Claims – Class 7**

Each Holder of an Allowed Unsecured Claim in the amount of $5,000 or less, or such Holders as agree to reduce their Claim to $5,000, shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of and  in exchange for such Allowed Claim, a Cash payment as soon as reasonably practicable following the Effective Date in the full amount of such Allowed

Claim.  Insiders with Allowed Claims may opt to settle their Claims to be paid as an Administrative Convenience Claims Holder, but such Claim will be limited to $5,000, and be deemed fully satisfied upon payment of that amount.

## ARTICLE VI

### MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN

**6.01.   The Settlements**

(a)      **Opt-In Settlement Unsecured Claims:**  Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, in consideration for the classification, Distribution, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of the Opt-In Settlement Unsecured Claims, which shall be binding upon Persons receiving Distributions under the Plan, the Debtor, and any other party treated under the Plan.

As of the Effective Date, all litigation in any jurisdiction, including dischargeability litigation and any appeals thereof, amongst Holders of Opt-In Settlement Unsecured Claims including, without limitation, all litigation listed on <u>Exhibit B</u>, shall each be terminated with prejudice and without further costs to any party, and all necessary parties shall execute and deliver any related satisfactions of judgment or other documentation necessary to terminate such litigation and release any related judgment liens arising in or on account of such matters.  The Debtor and the Holders of Opt-In Settlement Unsecured Claims agree that the resolution of such litigation takes into account a good faith evaluation by all parties of the costs and merits of such litigation, and that the dismissal of such ongoing litigation (including without limitation any pending appeals) as set forth herein is a good faith reasonable resolution of such litigation, in exchange for the consideration provided.

(b)      **Claims Against Related Parties:**  Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, in consideration for the benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of the estate's Claims against Related Parties, which shall be binding upon Persons receiving Distributions under the Plan, the Debtor, and any other party treated under the Plan. Evidence in support of such settlements will be presented at the Confirmation Hearing. The proposed settlement and resolution of such Claims against Related Parties considers a good faith evaluation by all parties of the costs and merits of such litigation, as well as the collectability of any potential judgments in favor of the estate.

Entry of the Confirmation Order shall constitute a determination by the Bankruptcy Court pursuant to Bankruptcy Rule 9019 that the terms and conditions of the foregoing settlements and the termination of all litigation (including, without limitation, any appeals) required thereunder is reasonable, and in the best interests of the Debtor, his Estate, and all Creditors of the Debtor and other parties in interest.

**6.02.   Sources of Cash and Terms of Payment for Plan Distributions**

The sources of Cash necessary for the Debtor to pay Allowed Claims that are to be paid in Cash by the Debtor under the Plan will be: (a) the Cash of the Debtor on hand as of the Effective Date, minus a reserve totaling $250,000 (to account for three (3) months of reasonable living expenses as well as certain post-confirmation legal expenses); and (b) Net Proceeds from the sale of the Debtor's Non-Exempt Assets; and (c) Cash generated or received by the Debtor after the Effective Date from any other source, including but not limited to Cash flow to the Debtor from AEJ Trust and refunded trust expenses.

Funds from payments under the FSS Plan made by the FSS Trust shall be used solely with respect to the calculation of the Minimum Plan Distribution and are not being relied upon for purposes of confirming this Plan.

On the Effective Date, all Avoidance Actions not resolved will vest in the Disbursement Agent or, at the option of the Debtor, the FSS Trust, and they will have the exclusive right to prosecute, settle, or compromise all Avoidance Actions.  Any such net payments resolving any Avoidance Actions shall constitute Net Proceeds of Non-Exempt Assets for purposes of the Plan.

**6.03.   Payments.**

(a)     The Disbursement Agent shall remit payment of the following Allowed Claims in accordance with the limitations on the amount of such payments as set forth in the Plan, and the other terms and conditions of the Plan:

(i)     Administrative Claims, other than Administrative Claims Incurred in the Ordinary Course of Business as set forth in Section 2.01(d).

(ii)     Non-Tax Priority Claims as set forth in Section 5.01.

(iii)     Administrative Convenience Claims as set forth in Section 5.07.

(iv)     General Unsecured Claims as set forth in Section 5.06.

(v)     Administrative Claims Incurred in the Ordinary Course of Business as set forth in Section 2.01(e).

(vi)     Priority Tax Claims as set forth in Section 2.02.

(vii)     Domestic Support Obligations as set forth in Section 2.03.

(viii)     U.S. Trustee fees as set forth in Section 2.04.

(ix)     Secured Tax Claims as set forth in Section 5.02

(x)     Secured Claim of Bank of America as set forth in Section 5.03.

  (xi)  Secured Claim of Security Bank of Crawford as set forth in Section 5.04.

  (xii)  Unsecured Claims of Opt-In Settlement Claimants as set forth in Section 5.05.

**6.04. Post Effective Date Management.**

  The Debtor shall continue to manage and control his assets after the Effective Date. To the extent this Plan provides for the sale of the Debtor's assets, the Disbursement Agent shall manage and control the sale of such assets and shall liquidate such assets as expeditiously as reasonably possible, consistent with the terms of this Plan and the goal of maximizing the value thereof for the benefit of the Holders of Claims secured by a Lien on those assets and other stakeholders.

<div align="center">

**ARTICLE VII**

**TREATMENT OF EXECUTORY CONTRACTS**

</div>

**7.01. General Treatment of Executory Contracts: Rejected**

  The Plan constitutes and incorporates a motion under Bankruptcy Code sections 365 and 1123(b)(2) to (a) reject, as of the Effective Date, all Executory Contracts to which the Debtor is a party, except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and (b) assume all Executory Contracts identified in any schedule of assumed contracts that may be included in the Plan Supplement.

  The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date.  Notice of the Confirmation Hearing shall include the proposed Cure Amount with respect to any Executory Contract that may be assumed under the Plan, and the Notice of the Confirmation Hearing shall also notify all non-debtor parties to Executory Contracts that all Executory Contracts will be rejected under the Plan except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and any Executory Contracts identified in the Plan Supplement to be assumed. For the avoidance of doubt, to the extent the Debtor's premarital agreement could be characterized as an executory contract, such agreement shall be assumed under this Plan.  The Debtor does not anticipate any cure costs associated with such agreement.

**7.02. Cure Payments and Release of Liability**

  Except as otherwise provided in a Final Order, pursuant to Bankruptcy Code sections 365(a), (b), (c) and (f), all Cure Claims that may require payment under Bankruptcy Code section 365(b)(1) under any Executory Contract that is assumed pursuant to a Final Order shall be paid by the Debtor as an Allowed Administrative Claim within fifteen (15) Business Days after such order becomes a Final Order with respect to Cure Claims that are not Disputed or within fifteen (15) Business Days after a Disputed Cure Claim is Allowed by agreement of the parties or a Final

<div align="center">23</div>

Order.  If a party to an assumed Executory Contract has not filed an appropriate pleading on or before the date of the Confirmation Hearing disputing any proposed Cure Claim, the cure of any other defaults, the promptness of the Cure Claim payments, or the provision of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters.  Any party to an assumed Executory Contract that receives full payment of a Cure Claim shall waive the right to receive any payment on a Class 6 General Unsecured Claim that relates to or arises out of such assumed Executory Contract.

**7.03.   Bar to Rejection Claims**

If the rejection of an Executory Contract pursuant to Section 7.01 of the Plan gives rise to a Claim by any non-Debtor party or parties to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Estate, or the agents, successors, or assigns of the foregoing, unless a proof of such Claim is filed with the Bankruptcy Court and served upon the Debtor on or before the Rejection Bar Date.  Any Holder of a Claim arising out of the rejection of an Executory Contract that fails to file a proof of such Claim on or before the Rejection Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtor, the Estate or any of their assets and properties.  Nothing contained herein shall extend the time for filing a proof of Claim for rejection of any Executory Contract rejected before the Confirmation Date.

**7.04.   Rejection Claims**

Any Rejection Damage Claim arising from the rejection of an Executory Contract shall  be treated as a General Unsecured Claim pursuant to the Plan, except as limited by the provisions of Bankruptcy Code sections 502(b)(6) and 502(b)(7) and mitigation requirements under applicable law.  Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Rejection Damage Claim or shall be deemed a waiver by the Debtor or any other party in interest of any objections to such Rejection Claim if asserted.

## <u>ARTICLE VIII</u>

### CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION

**8.01.   Conditions Precedent to Confirmation Date**

The occurrence of the Confirmation Date of the Plan is subject to satisfaction or waiver by the Debtor of each of the following conditions:

(a)     The Bankruptcy Court shall have entered a Final Order, in form and substance acceptable to the Debtor, approving the Disclosure Statement;

(b)     The proposed Confirmation Order shall be in form and substance acceptable to the Debtor; and

(c)     All of the schedules, documents, supplements and exhibits to the Plan shall have

24

been filed in form and substance acceptable to the Debtor.

**8.02.   Conditions Precedent to the Effective Date**

The occurrence of the Effective Date is subject to the occurrence or waiver by the Debtor of each of the following conditions precedent:

(a)      The Confirmation Date shall have occurred;

(b)      The Confirmation Order shall have become a Final Order in form and substance acceptable to the Debtor; and

(c)      FSS Plan confirmation shall have occurred and the FSS Plan shall become effective.

Without limiting the foregoing, the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order so long as there is no stay in effect and the Debtor so elects in writing.  The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation so long as there is no stay in effect if the Debtor so elects in writing.  In the event of any such appeal, the Debtor or any other party in interest may seek the dismissal of such appeal on any grounds.  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time. The Debtor will file with the Bankruptcy Court, and serve a copy on all parties in interest, a notice of the Effective Date within five (5) Business Days after its occurrence.

**8.03.   Consequences of Non-Occurrence of Effective Date**

If the Effective Date does not timely occur, the Debtor reserves all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and/or that the Plan be null and void in all respects.  If the Bankruptcy Court enters an order vacating the Confirmation Order, the time within which the Debtor may assume and assign, or reject, all Executory Contracts not previously assumed, assumed and assigned, or rejected shall be  extended for a period of thirty (30) days after the date the Confirmation Order is vacated or as further extended by the Bankruptcy Court.

## <u>ARTICLE IX</u>

### EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE

**9.01.   Binding Effect**

From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, all former, present, and future Holders of Claims, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Case.  Confirmation of the Plan binds each Holder of a Claim to the terms and conditions of the Plan, whether or not such Holder has accepted the Plan.

**9.02.   Vesting of Assets**

Except as otherwise provided in this Plan and the Confirmation Order, all property and assets of the Debtor and the Estate shall vest in the Debtor in accordance with the terms of the Plan, in each case free and clear of all Claims, Liens, encumbrances, charges and other interests. Commencing on the Effective Date, the Debtor may deal with such property and assets and conduct his business without any supervision by, or permission from, the Bankruptcy Court or the Office of the United States Trustee, and free of any restriction imposed on the Debtor by the Bankruptcy Code or by the Bankruptcy Court during the Bankruptcy Case, other than any restrictions contained in the Plan and the Confirmation Order.

**Trusts:** For the avoidance of doubt, the Debtor would clarify through this Plan that certain Trusts are not property of the estate and therefore are not available for distribution to Creditors. Specifically, the Alexander E. Jones Descendent and Beneficiary Trust (the "Descendent Trust"), of which the Debtor is a grantor, is not available to satisfy Creditor Claims. The Debtor is not a beneficiary nor a trustee for the Descendent Trust. Though the Descendent Trust holds certain condominium assets, the Debtor asserts these trust assets are not available to satisfy estate Claims. Second, the Green Leaf Trust: this trust is also not within the control of the Debtor, nor is he a beneficiary, or entitled to direct the Green Leaf Trust. Therefore, the assets of the Green Leaf Trust are not available to satisfy estate Claims. With respect to any remaining trusts, where the Debtor either is a beneficiary and/or maintains some level of control, (x) any assets available for distribution from such trusts as of the Effective Date shall be deemed Non-Exempt Assets subject to liquidation by the Disbursement Agent under the Plan, and (y) any distribution to the Debtor of income generated by such trusts following the Effective Date shall be included as Plan Income under the Plan. See **Schedule A**.

**9.03.   Assertion of Causes of Action, Defenses and Counterclaims**

Except as set forth in the Plan or the Confirmation Order, effective as of the Effective Date, with respect to the Debtor, without further action by any party, all Causes of Action, and  all defenses, counterclaims, setoffs, and rights related thereto, shall be and shall be deemed to be vested in the Debtor. From and after the Effective Date, the Debtor shall have the exclusive right to prosecute, settle, or compromise any Cause of Action vested in or transferred to the Debtor under the Plan. Except to the extent otherwise set forth in the Plan, the Debtor shall retain and may prosecute and enforce all other defenses, counterclaims, and rights that it has asserted or could assert against or with respect to all Claims asserted against the Debtor or property of his Estate. No claim, right, Cause of Action, or other asset shall be deemed waived or otherwise forfeited by virtue of the Debtor's failure to identify such property in the Schedules or the Disclosure Statement unless otherwise ordered by the Bankruptcy Court.

Except as provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtor may have or which the Debtor may choose to assert on behalf of the Debtor's Estate under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative  relief against

26

the Debtor, and (ii) the turnover of any property of the Debtor's Estate.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan.  The Debtor shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which the Debtor had immediately prior to the Petition Date fully as if the Bankruptcy Case had not been commenced, and all of the Debtor's legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date by the Debtor to the same extent as if the Bankruptcy Case had not been commenced.

**9.04    Discharge of Debtor**

*Except as expressly provided in this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtor that arose before the Effective Date.  Except as expressly provided in this Plan or the Confirmation Order, on the Discharge Date (and subject to its occurrence), entry of the Confirmation Order shall be deemed to act as a discharge and release under Bankruptcy Code section 1141(d)(1)(A) of all Claims against the Debtor and his assets, arising at any time before the Effective Date, regardless of whether a proof of Claim was filed, whether the Claim is Allowed, or whether the Holder of the Claim votes to accept the Plan or is entitled to receive a Distribution under the Plan, provided, however, that in no event shall occurrence of the Discharge Date discharge  the Debtor from any obligations remaining under the Plan as of the Discharge Date.  No later than five (5) business days after the occurrence of the Discharge Date, the Debtor shall file with the Bankruptcy Court a notice of the occurrence of the Discharge Date, and serve such notice on all creditors.  In addition, following the occurrence of the Discharge Date, the Debtor shall file a motion seeking entry of an order of discharge after notice and a hearing, which motion (and the discharge) shall be granted upon a showing that the Debtor has made all payments required under the Plan. Except as expressly provided in this Plan or the Confirmation Order, any Holder of a discharged Claim will be precluded from asserting against the Debtor or any assets of the Debtor any other or further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date. Except as expressly provided in this Plan or the Confirmation Order, and subject to the occurrence of the Discharge Date, the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtor to the extent allowed under Bankruptcy Code section 1141, and the Debtor will not be liable for any Claims and will only have the obligations that are specifically provided for in this Plan.  Notwithstanding the foregoing, nothing contained in the Plan or the Confirmation Order shall discharge the Debtor from (i) any debt excepted from discharge under Bankruptcy Code section 523 by Final Order of the Bankruptcy Court unless the Holders of such Claims have agreed to same.*

*Notwithstanding the foregoing, Allowed Claims of Electing Plaintiffs under Class 5 that have selected Opt-In Settlement Unsecured Claims shall be discharged after receipt of payments that give rise to the occurrence of the Payment Trigger.  Such payment shall be in full*

27

*satisfaction, settlement, release and discharge of and in exchange for such Allowed Claim.*

*Notwithstanding anything to the contrary set forth in this Section 9.04, Non-Electing Plaintiffs under Class 6 will be enjoined against collecting against the Debtor during the Plan Term; however, such Non-Electing Plaintiffs may collect against the Debtor at the conclusion of the Plan Term if they have a Final Order allowing their Claim and finding such Claim non-dischargeable.*

### 9.05 Injunction

*Except as otherwise provided in the Plan, the Confirmation Order shall provide that from and after the Effective Date with respect to the Debtor, all Holders of Claims against the Debtor are permanently enjoined from taking any of the following actions against the Debtor, or any of his property on account of any such Claim:  (a) commencing or continuing in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or Lien; (d) asserting a setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; or (e) commencing or continuing, in any manner or in any place, any action that does not conform to or comply with, or is inconsistent with, the provisions of this Plan.  If allowed by the Bankruptcy Court, any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator. Should a Plan Default have occurred and is continuing, this Plan Injunction shall lift in accordance with a Bankruptcy Court order determining the existence of such Plan Default.*

*Notwithstanding the foregoing, the Non-Electing Plaintiffs whose claims have been determined to be non-dischargeable by an order of a court of competent jurisdiction that has not been stayed, shall be enjoined from taking action against the Debtor as set forth above solely during the Plan Term, unless otherwise set forth herein.*

### 9.06 Term of Bankruptcy Injunction or Stays

Unless otherwise provided herein or in an order of the Bankruptcy Court (including without limitation the Confirmation Order), all injunctions or stays provided in the Bankruptcy Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, with respect to the Debtor.  Upon the Effective Date, the injunction provided in Section 9.05 of the Plan shall be effective.

### 9.07 Effectuating Documents; Further Transactions; Timing

The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously, unless otherwise provided in the Plan.

28

## ARTICLE X

### OBJECTIONS TO CLAIMS; DISTRIBUTIONS

**10.01.   Objections to Claims**

Any party in interest, including the Debtor, may file objections to Claims (other than Claims that have been previously Allowed or that are Allowed under the Plan). The Debtor (or his designees, successors and assigns) are not obligated to object to any Claim but will nevertheless have standing to object to any such Claim from and after the Effective ~~Date, if~~Date if they so elect. Nothing in this Section is intended to limit the right of any party to object to Claims.

**10.02.   Objection Deadline**

Except as set forth in Sections 2.01(a) and 2.01(b) of the Plan with respect to Administrative Claims and Fee Claims, any objections to Claims must be filed no later than the Objection Deadline. An objection to a Claim will be deemed properly served on the Holder thereof if service is effected by any of the following methods: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto; (c) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of the Holder in the Bankruptcy Case; or (d) if no proof of Claim has been filed, by first class mail, postage prepaid, on the Holder of such Claim at the address set forth in the Schedules.

**10.03.   Settlement of Objections to Claims**

From and after the Effective Date, the Debtor is authorized to approve compromises of all Claims, Disputed Claims, and Liens pursuant to Bankruptcy Rule 9019(b) and to execute necessary documents, including Lien releases (subject to the written consent of the party having such Lien) and stipulations of settlement, compromise, or release, without further order of the Bankruptcy Court; provided that the Debtor cannot settle or compromise the Claim of a Holder of a General Unsecured Claim in an amount in excess of the amount set forth on Exhibit A to this Plan without notice and a hearing.

**10.04.   No Interest on Claims**

Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim for the period from the Petition Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim. To the extent any Holder of an Allowed Claim is entitled to interest accruing on or after the Petition Date, such interest shall accrue and be payable at the applicable Contract Rate.

**10.05.   Setoffs by the Debtor; No Waiver**

29

Except as otherwise set forth in the Plan, the Debtor may but shall not be required to, set off against or recoup from any Claim or any payment or Distribution to be made by the Debtor pursuant to the Plan in respect of such Claim, any Claim or Cause of Action of any nature whatsoever that the Debtor may have to the fullest extent permitted under applicable law.  Any dispute related to the setoff or recoupment rights of the Debtor shall be determined by the Bankruptcy Court.  Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claims or Causes of Action that the Debtor may have against such Holder or any affiliate of such Holder.

**10.06.  Procedures for Treating and Resolving Disputed and Contingent Claims**

(a)  **No Distributions Pending Allowance.**  Notwithstanding any other provision of the Plan, Distributions shall be made only to Holders of Allowed Claims.  No Holder of a Claim will receive any Distribution on account thereof until and to the extent that its Claim becomes an Allowed Claim.  To the extent a Claim that is paid by the Debtor under the Plan is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtor (in the first instance) on account of a Cause of Action, or which has not otherwise become an Allowed Claim, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Cause of Action has been settled, withdrawn, or determined by a Final Order or such other court having jurisdiction over the matter, or such Claim has otherwise been Allowed as set forth in the Plan.

In determining the amount of a pro rata Distribution due to the Holders of Allowed Claims payable by the Debtor, the Disbursement Agent will make the pro rata calculation as if all Claims of the applicable Class were Allowed in the full amount claimed or in the amount estimated under Section 10.06(b) hereof. For the purposes of claims held by Plaintiffs that are not Allowed by this Plan, Disbursement Agent shall reserve for Claims in the amounts set forth on Exhibit A hereto until such Claim is Allowed or Disallowed in whole or in part by Final Order.  The Disbursement Agent shall withhold Distributions otherwise due hereunder to the Holder of a Disputed Claim until the Objection Deadline, to enable the Debtor or any other party in interest to file a timely objection thereto.

(b)  **Claim Estimation.**  The Debtor or Disbursement Agent may request estimation or limitation of any Claim that is not Allowed under this Plan pursuant to Bankruptcy Code section 502(c) regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection; provided, however, that the Bankruptcy Court will determine (i) whether such Claims are subject to estimation pursuant to Bankruptcy Code section 502(c) and (ii) the timing and procedures for such estimation proceedings, if any.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim,  as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or

30

resolved by any mechanism approved by the Plan or the Bankruptcy Court.

    (c)    **Distribution Reserve Accounts.**

    (i)    On or after the Effective Date, the Disbursement Agent may create one or more separate Distribution Reserve Accounts as is appropriate from the Cash to be distributed to or for the benefit of the Holders of Disputed Claims, Administrative Claims, Non-Tax Priority Claims, Administrative Convenience Claims, or other Claims which have not been Allowed, in each case pending the allowance thereof. Each Distribution Reserve Account may be segregated by Class or, as applicable, by Administrative Claims, Non-Tax Priority Claims, Administrative Convenience Claims, or other Claims. A Holder of a Claim will not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve Account to pay such Claim unless permitted by a Final Order. As stated above, nothing in the Plan will be deemed to entitle the Holder of a Disputed Claim to post-petition interest on such Claim, if Allowed, unless otherwise required under the Plan.

    (ii)    The amount of any Cash allocable to, or retained on account of Claims in the Distribution Reserve Accounts for those Claims that are to be paid in full under the Plan shall be equal to the lesser of (a) the amount of such Claim as estimated pursuant to the procedure in section 10.06(b) of the Plan; (b) the amount of such Claim as asserted by the Holder; or (c) an amount to be agreed upon between the Debtor and the Holder of such Claim. The amount of any Cash allocable to, or retained on account of, any other Claims in the Distribution Reserve Accounts shall be as reasonably determined by the Disbursement Agent from time to time in accordance with the reasonable discretion of the Disbursement Agent, subject to all other terms and conditions of the Plan.

    (iii)    For the avoidance of doubt, the Disbursement Agent shall reserve distributions in a separate Distribution Reserve Account for Class 6 General Unsecured Claims of Non-Electing Plaintiffs which have not yet been Allowed, in the amounts allocated to them pursuant to the treatment set forth herein.

    (d)    **Distributions After Allowance of Claims.** Distributions to each Holder of a Claim that is the subject of a Distribution Reserve Account, to the extent it becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that govern Distributions to such Holders of Claims in the applicable Class. Unless otherwise provided in the Plan, as promptly as practicable after the date on which such Claim becomes an Allowed Claim, and in any event not later than ten (10) Business Days after such Claim becomes an Allowed Claim, the Disbursement Agent shall distribute to the Holder thereof from the applicable Distribution Reserve Account, if any, any Distribution that would have been made to such Holder had its Claim been an Allowed Claim on the date that Distributions were previously made to Holders of Allowed Claims in the applicable Class, without interest (except as otherwise provided by the Plan) and net of any setoff and/or any required withholding of applicable taxes. After all such Claims have been resolved as may be required by a Final Order or other final resolution, any remaining Cash in a relevant Distribution Reserve Account shall be distributed in accordance with the other provisions of the Plan.

(e)      **Allowance of Claims Subject to Bankruptcy Code Section 502(d).**  Allowance of Claims will in all respects be subject to the provisions of Bankruptcy Code section 502(d), except as provided by a Final Order or a settlement among the relevant parties.

**10.07.      Distributions Under the Plan**

(a)      **Means of Cash Payment.**  Except as otherwise provided in the Plan, Cash payments made pursuant to the Plan shall be in U.S. dollars and may be made, at the option of and in the sole discretion of the Disbursement Agent, by checks drawn on or wire transfers from a domestic bank; provided, that in the case of foreign Holders of Allowed Claims, Cash payments may be made, at the option of and in the sole discretion of the Debtor, in such currency and by such means as are necessary or customary in a particular jurisdiction.

(b)      **Delivery of Distributions.**  All Distributions to any Holder of an Allowed Claim shall be made by the Disbursement Agent at the address of each such Holder as set forth on the proof of Claim filed by such Holder (or at the last address of such a Holder known to the Debtor if no proof of Claim is filed or if the Disbursement Agent has been notified in writing of a change of address). If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Disbursement Agent is notified in writing of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest.  Any Holder of an Allowed Claim whose Distribution is undeliverable must make demand for such Distribution to the Disbursement Agent in writing on or before 120 days after the date such undeliverable Distribution was initially made, after which the Distribution shall be retained by the Disbursement Agent for Distribution to other Holders of Claims pursuant to the terms of the Plan, and any claim by such intended recipient with respect to such undeliverable Distribution shall be discharged and forever barred.  The Disbursement Agent may employ or contract with other Persons as reasonably determined by the Disbursement Agent to assist in or make the Distributions required under the Plan.  **To the extent that the Disbursement Agent is required by applicable law to file information returns regarding payments to creditors with taxing authorities including, but not limited to, the Internal Revenue Service, the Debtor shall obtain an executed Internal Revenue Service Form W-9 (W-8 for non-US entities and individuals) from any or all Holders of a Claim prior to making any Distribution.  Should any Holder of a Claim not provide the Disbursement Agent with such document within 60 days of receipt of the request for a W-9 or W-8, as applicable, then the Disbursement Agent shall provide written notice to such Holder of the failure to provide a W-9 or W-8, as applicable, and 30 additional days to provide such information. Should any Holder of a Claim not timely provide an executed W-9 or W-8, as applicable, within the ninety (90) day period referenced above, the Disbursement Agent may file an objection to the Claim of such non-responding Holder  based on the non-responding Holder's failure to provide the W-9 or W-8 (with all required information) and shall serve the objection on such non-responding Holder via first class mail.  If the non-responding Holder of the Claim fails to respond to the objection or fails to provide to the Disbursement Agent the W-9 or W-8, as applicable (with all required information) within thirty (30) days after the objection is filed, the Bankruptcy Court may disallow such Claim for all purposes and any funds to be paid such Holder of a disallowed Claim shall be distributed in accordance with the terms of the Plan. The Disbursement Agent shall serve any order disallowing the non- responding Holder's Claim within five (5) business days**

after entry of such order. **The Disbursement Agent's right to object to a Claim is limited to the failure of a Holder of a Claim to provide to the Disbursement Agent a W-9 or W-8, as applicable. The Holder of such Disallowed Claim shall be forever barred from pursuing the Debtor or Disbursement Agent for payment of such Claim.**

(c)     **Fractional Dollars; De Minimis Distributions.**  Any other provision of the Plan notwithstanding, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  No payment of less than twenty-five dollars ($25.00) shall be made with respect to any Allowed Claim, and the Disbursement Agent shall retain any such payment and shall deposit same into a pool for redistribution to other Holders of Allowed Claims in the same Class.

(d)     **Unclaimed Property.**  Any Distributions that are unclaimed shall be distributed by the Disbursement Agent to other Holders of Claims pursuant to the terms of the Plan.

(e)     **Payments on Business Days**.  In the event any payment, Distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed  to have been completed as of the required date.

(f)     **Voting Record Date**.  As of the Voting Record Date, any applicable books and records for each of the Classes of Claims as may be maintained by Debtor shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims.  The Disbursement Agent will have no obligation to recognize any transfer or sale of Claims on or occurring after the Voting Record Date and will be entitled for all purposes herein, and subject to all of the provisions of the Plan relating to the timing of the allowance of Claims, to recognize and make Distributions on account of Allowed Claims only to those Holders who are identified as Holders of Claims as of the Voting Record Date.  Except as otherwise provided in a Final Order, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 prior to the Voting Record Date will be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer may not have expired by the Voting Record Date.

**10.08.  Duty to Disgorge Overpayments**

To the extent the Holder of any Allowed Claim receives more than what such Holder is permitted to receive under the Plan, such Holder shall immediately return such excess  payment(s) to the Disbursement Agent, failing which, the Debtor or Disbursement Agent may sue such Holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

**10.09 Duties of the Disbursement Agent**

The Disbursement Agent shall make the Distributions required under the Plan.  The Disbursement Agent shall be entitled to review the financial information of FSS and the Debtor in

accordance with the terms of the agreement entered into with the Disbursement Agent. The Disbursement Agent shall also be responsible for the sale or other monetization of Non-Exempt Assets under this Plan.

**10.10 Disbursement Agent Expenses**

The Disbursement Agent shall establish a bank account, initially funded with 30% of the Net Proceeds from the sale of Non-Exempt Assets which may be used to fund the initial expenses of the Disbursement Agent, including payment of the Disbursement Agent's fees, on an ongoing basis.  Additional Disbursement Agent Expenses shall be paid directly by the Debtor.

<div align="center">

**ARTICLE XI**

**ACCEPTANCE OR REJECTION OF THE PLAN**

</div>

**11.01.  Impaired Classes Entitled to Vote**

Each impaired Class entitled to vote to accept or reject the Plan will vote separately.  A Holder of a Claim or Interest as to which an objection has been filed and that has not been temporarily allowed for purposes of voting on the Plan may not vote.  A Holder of a contingent or unliquidated Claim may vote on the Plan in an amount based on the portion, if any, of the Claim shown as non-contingent, liquidated, and undisputed in the Schedules, or equal to $1.00 if not so shown.  Plaintiffs may vote in the amounts set forth on **Exhibit C.**

**11.02.  Acceptance by an Impaired Class**

A Class of Claims that is entitled to vote to accept or reject the Plan shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.  Any Ballot that is not properly completed and timely received by the Balloting Deadline will not be counted.

**11.03   Elimination of Vacant Classes.**  Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

**11.04.  Section 1129(b) Cramdown**

If any impaired Class of Claims fails to accept the Plan in accordance with Bankruptcy Code section 1129(a), the Debtor will seek confirmation of the Plan by the Bankruptcy Court pursuant to the "cramdown" provisions in Bankruptcy Code section 1129(b).  The Debtor asserts that the Plan provides for fair and equitable treatment of all Classes of Claims.  The Debtor reserves the right to amend the Plan as may be necessary to obtain confirmation of the Plan  under Bankruptcy Code section 1129(b).

<div align="center">34</div>

## ARTICLE XII
## RETENTION OF JURISDICTION

### 12.01.  Jurisdiction

Until the Bankruptcy Case is closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction as is legally permissible under applicable law, including under Bankruptcy Code sections 105(a) and 1142, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against the Debtor and to enforce all Causes of Action and any related counterclaims, crossclaims, and/or third-party claims over which the Bankruptcy Court otherwise has jurisdiction.  Nothing contained in the Plan will prevent the Debtor from taking any action as may be necessary to enforce any Cause of Action that may  exist on behalf of the Debtor and that may not have been enforced or prosecuted by the Debtor.

### 12.02.  Examination of Claims

Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim and the reexamination of Claims that have been allowed for the purposes of voting, and the determination of any objections as may be filed to Claims.  The failure by the Debtor to object to, or to examine, any Claim for the purposes of voting will not be deemed a waiver of the Debtor's right to object to,  or to re-examine, such Claim in whole or in part, unless such claim is Allowed under the Plan.

### 12.03.  Determination of Disputes

The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine (a) all questions and disputes regarding title to the Debtor's assets, (b) disputes concerning the allowance of Claims, (c) all Causes of Action, controversies, disputes, or conflicts, whether or  not subject to any pending action, as of the Confirmation Date, to recover property pursuant to the provisions of the Bankruptcy Code, and (d) all disputes and controversies regarding the operation, implementation, and interpretation of the Plan, the Confirmation Order, and any agreements that are identified or implement the Plan or the Confirmation Order.

### 12.04.  Additional Purposes

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, occurrence of the Effective Date, and/or substantial consummation of the Plan, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of or related to the Bankruptcy Case and the Plan to the fullest extent permitted by applicable law, including but not limited to jurisdiction to:

(a)      hear and determine any modification of the Plan or the Plan Supplement pursuant to Bankruptcy Code section 1127, to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court,  including the Confirmation Order, in such a manner as may be necessary or appropriate to  carry out the purposes and effects thereof;

35

(b)      hear and determine disputes, issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the transactions contemplated thereunder, the Confirmation Order, the Disclosure Statement, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

(c)      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of or related to the Bankruptcy Case or the Plan;

(d)      enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered or approved in the Bankruptcy Case;

(e)      hear and determine all disputes involving the existence, nature, or scope of the discharge, plan defaults, injunctions, releases, exculpations, and indemnifications granted pursuant to the Plan or the Confirmation Order;

(f)      hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions, performance or payments provided for or contemplated in the Plan or the Confirmation Order, or any agreement, instrument or other document governing or relating to any of the foregoing;

(g)      construe and apply any findings of fact and/or conclusions of law made in or in connection with the Confirmation Order;

(h)      adjudicate matters arising in the Bankruptcy Case, including matters relating to the formulation and consummation of the Plan;

(i)      enter any orders, including injunctions, as are necessary to enforce title, rights, and powers of the Debtor or to impose any limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem necessary;

(j)      hear and determine all questions and disputes regarding title to or recovery of the Debtor's assets and property of the Debtor;

(k)      enter a Final Decree closing any or all of the Bankruptcy Case;

(l)      correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Supplement, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, the Plan Supplement, and the Confirmation Order including the adjustment of the date(s) of performance under the Plan, the Plan Supplement, and any other documents related thereto if the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Supplement, and such other documents may be substantially realized thereby;

(m)      enter, implement or enforce such orders as may be appropriate if the Confirmation

36

Order is for any reason stayed, reversed, revoked, modified, or vacated;

(n)     hear and determine all applications for compensation and reimbursement of expenses of Professionals or any other Person under the Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtor shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

(o)     hear and determine issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of the Plan;

(p)     hear and determine issues concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(q)     hear and determine all matters regarding the assumption or rejection of Executory Contracts, including any disputes concerning Rejection Claims or Cure Claims;

(r)     hear and determine any objection to any Claim (including any Administrative Claim), including the allowance, classification, priority, secured status, compromise, estimation, subordination, or payment thereof;

(s)     allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim (including any Administrative Claim) and to re-examine Claims that have been allowed for purposes of voting;

(t)     hear and determine any Cause of Action and any collection or settlement matters related thereto;

(u)     hear and determine any disputes or litigation regarding the validity, priority, or extent of any Lien and any Claim associated therewith; and

(v)     hear and to determine any other matter related hereto and not inconsistent with the Plan, the Confirmation Order, the Bankruptcy Code, or Title 28 of the United States Code.

**12.05.  Failure of the Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Case, including the matters set forth in this Article XII, the provisions of this Article XII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

<u>**ARTICLE XIII**</u>

**MISCELLANEOUS PROVISIONS**

37

**13.01.  General Notices**

Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served to the parties and addresses set forth below by certified mail, return receipt requested, hand delivery, overnight delivery, first class mail, or fax transmission, and (c) deemed to have been given or made when actually delivered or received:

> **-to the Debtor:**
>
> Alexander Jones
> 2407 S. Congress Ave. E-144
> Austin, TX 78704
>
> With a copy to:
>
> Vickie L. Driver
> Crowe & Dunlevy, P.C.
> 2525 McKinnon St., Suite 425
> Dallas, TX 75201
> Telephone: 737.218.6187
> Email: dallaseservice@crowedunlevy.com
>
> Shelby A. Jordan
> JORDAN & ORTIZ, P.C.
> 500 North Shoreline Blvd., Suite 900
> Corpus Christi, TX  78401
> Telephone: (361) 884-5678
> Email:  sjordan@jhwclaw.com

**13.02.  Exemption From Transfer Taxes**

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest; or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance,  filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment. The Confirmation Order shall direct all appropriate governmental officials or agents to forgo the collection of any such tax or assessment and to accept such documents delivered under the Plan without the imposition or payment of any charge, fee, governmental assessment, or tax.

**13.03.  Asserting and Curing Default Under the Plan**

Except as otherwise provided in the Plan, if the Debtor defaults under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan), any Creditor or party in interest desiring to assert a default will provide the Debtor and his counsel with written notice of the alleged Plan Default.  The Debtor will have thirty (30) days from receipt of written notice to cure the alleged Plan Default.  If the Plan Default is not cured, any

38

Creditor or party in interest affected by such Plan Default may then file with the Bankruptcy Court, and serve on the Debtor and his counsel, a motion to compel compliance with the applicable provision of the Plan, or otherwise seeking such remedies as may be available to such party in interest under the Bankruptcy Code or other applicable law. The Bankruptcy Court, on finding a Plan Default, will issue orders compelling compliance with the pertinent provisions of the Plan, or providing such other relief as the Court may order. Nothing in the Plan shall be deemed a waiver on the part of any party in interest to seek to assert any such remedies as described in this Section 13.04 upon default by the Debtor under the Plan.

Assets valued at less than $25,000 at the time of receipt by the Debtor, or discovered more than five years after the Effective Date are deemed nonmaterial, and shall not give rise to a Plan Default. Material non-exempt assets discovered by the Debtor post-Effective Date shall be submitted to the Disbursement Agent for distribution in accordance with the Plan. Material and intentional misrepresentations, if properly declared under the Plan, may cause a Plan Default herein. In the event the non-exempt asset was known to the Plaintiffs, their agents or attorneys, the Official Committee of Unsecured Creditors, their agents or attorneys, such asset will be deemed ineligible to cause a Plan Default under this paragraph.

Pursuant to the Opt-In Settlement terms with the Class 5 Electing Plaintiffs, if the Debtor can make 80% of the minimum payments for a given year, but not 100%, then the remaining amount for that year may be amortized over the next two years without giving rise to a Plan Default. However, if the Debtor fails to make minimum payments for two (2) years in a row, a Plan Default will have occurred, and any Electing Plaintiff may seek remedies with respect to such Plan Default as set forth herein. Should the Debtor become incapacitated in a way that prevents him from working and he is unable to make payments under the Plan, such missed payments may be added to the end of the Plan Term, and the Plan Term shall be extended accordingly. If the Debtor, or his personal representative, asserts that he has become incapacitated under the terms of this provision, he must file a notice with the Bankruptcy Court, which may be objected to by any party in interest, and any dispute over same will be determined by the Bankruptcy Court.

### 13.04. Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke and/or withdraw the Plan at any time before the Confirmation Date. If the Debtor revokes or withdraws this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor or any other Person.

### 13.05. Modification of the Plan

The Debtor reserves the right to modify the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and (b) the Debtor shall have complied with Bankruptcy Code section 1125. The Debtor further reserves the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, (b) the Debtor

39

shall have complied with Bankruptcy Code section 1125, and (c) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Bankruptcy Code section 1129.  A Holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless,   within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

**13.06.  Computation of Time**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

**13.07.   Due Authorization**

Each and every Holder of an Allowed Claim that receives a Distribution under the Plan warrants that it is authorized to accept, in consideration of such Claim, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

**13.08.  Implementation**

The Debtor may execute such documents, take such other actions, and perform all acts necessary or appropriate to implement the terms and conditions of the Plan without the need for further Bankruptcy Court approval.

**13.09.  Execution of Documents**

Upon application by the Debtor, the Bankruptcy Court may issue an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument or document, and to perform any act, necessary for the consummation or implementation of the Plan.

**13.10.  Bankruptcy Restrictions**

From and after the Effective Date with respect to the Debtor other than as set forth in the Plan, the Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code (e.g., sections 363 or 364) except as the Bankruptcy Code may specifically provide otherwise.  No monthly operating reports will be filed after the Effective Date; however, the Debtor shall provide the U.S. Trustee such financial reports as may be required by law.

**13.11.  Limited Plan Exculpation.**

None of Debtor's court employed professionals shall have or incur any liability to the Debtor or any Holder of a Claim for any act or omission in connection with, related to, or arising out of, the Bankruptcy Case, negotiations regarding or concerning the Disclosure Statement or the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Bankruptcy Case, and the pursuit of confirmation of the Plan.  Nothing contained in this paragraph shall be deemed to

40

exculpate any party identified herein from any conduct post- Effective Date.

**13.12.  Ratification**

The Confirmation Order will ratify all transactions effected by the Debtor during the pendency of the Bankruptcy.

**13.13.  Integration Clause.**

This Plan is a complete and integrated statement of the binding agreement among the Debtor, the Holders of Claims, and other parties in interest upon the matters herein.  Parol evidence shall not be admissible in an action regarding the Plan or its provisions.

**13.14     Interpretation**

Unless otherwise specified, all Section, Article and exhibit references in the Plan are to the respective Section in, Article of or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The headings of the Articles, paragraphs, and Sections of the Plan and table of contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation.  Nothing herein shall be deemed as a judicial admission by the Debtor.  Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

**13.15   Severability of Plan Provisions**

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable before the Confirmation Date, the Bankruptcy Court, upon the request of the Debtor, will have the power to alter or interpret the Plan to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation, provided that the Debtor consents.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.16   Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

**ALEXANDER E. JONES**

_/s/ DRAFTAlexander E. Jones_

Alexander E. Jones

41