1          IN THE UNITED STATES BANKRUPTCY COURT

2          FOR THE SOUTHERN DISTRICT OF TEXAS

3                 HOUSTON DIVISION

4   IN RE:                    §     CASE NO. 22-33553-11
                              §     HOUSTON, TEXAS
5   ALEXANDER E. JONES,       §     WEDNESDAY,
                              §     JANUARY 24, 2024
6          DEBTOR.            §     3:41 P.M. TO 4:04 P.M.

7

**STATUS CONFERENCE (VIA ZOOM)**

8
          BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
9              UNITED STATES BANKRUPTCY JUDGE

10

11

12     APPEARANCES:                  SEE NEXT PAGE

13     ELECTRONIC RECORDING OFFICER: ZILDE COMPEAN

14     COURTROOM DEPUTY:             ZILDE COMPEAN

15

16

17

18

19

20            TRANSCRIPTION SERVICE BY:

21       JUDICIAL TRANSCRIBERS OF TEXAS, LLC
              935 Eldridge Road, #144
22            Sugar Land, TX 77478
                 281-277-5325
23          www.judicialtranscribers.com

24
     Proceedings recorded by electronic sound recording;
25      transcript produced by transcription service.

1                    **APPEARANCES (VIA ZOOM):**

2

3  FOR THE DEBTOR:                   CROWE & DUNLEVY, PC
                                     Vickie Driver, Esq.
4                                    2525 McKinnon St.
                                     Suite 425
5                                    Dallas, TX  75201
                                     214-420-2142
6
   FOR THE OFFICIAL COMMITTEE
7  OF UNSECURED CREDITORS:           AKIN GUMP STRAUSS HAUER
                                     & FELD, LLP
8                                    Sara Brauner, Esq.
                                     One Bryant Park
9                                    Bank of America Tower
                                     New York, NY  10036-6745
10
   FOR THE TEXAS PLAINTIFFS:         WILLKIE FARR & GALLAGHER, LLP
11                                   Jennifer Hardy, Esq.
                                     600 Travis Street
12                                   Houston, TX  77002
                                     713-510-1700
13
   FOR THE CONNECTICUT
14 PLAINTIFFS:                       PAUL WEISS WHARTON RIFKIN
                                     & GARRISON, LLP
15                                   Kyle Kimpler, Esq.
                                     1285 Avenue of the Americas
16                                   New York, NY  10019-6064
                                     212-373-3000
17
   FOR THE US TRUSTEE:               OFFICE OF THE US TRUSTEE
18                                   Jayson Ruff, Esq.
                                     515 Rusk St., Ste. 3516
19                                   Houston, TX  77002
                                     713-718-4650
20
   FOR PQPR:                         STREUSAND LANDON OZBURN
21                                   LEMMON, LLP
                                     Steve Lemmon, Esq.
22                                   1801 S. Mopac Expressway
                                     Suite 320
23                                   Austin, TX  78746
                                     512-236-9900
24

25

1                    **APPEARANCES (CONT'D)  (VIA ZOOM)**:

2

3  FOR ESG:                    WALKER & PATTERSON, PC
                               Johnie Patterson, Esq.
4                              4815 Dacoma St.
                               Houston, TX  77092
5                              713-956-5577

6

7  FOR FREE SPEECH SYSTEMS:    LAW OFFICES OF RAY BATTAGLIA,
                               PLLC
8                              Ray Battaglia, Esq.
                               66 Grandbury Circle
9                              San Antonio, TX
                               210-601-9405

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **HOUSTON, TEXAS; WEDNESDAY, JANUARY 24, 2024; 3:41 P.M.**

2            COURT SECURITY OFFICER:  All rise.

3            THE COURT:  Please be seated.

4            Okay.  Let me just thank everyone for their

5    patience.  This is Judge Lopez.  I'm going to call the --

6    what was the 3:00 o'clock, then turned to 3:30, and now the

7    3:40 matter, Alex Jones, 22-33553.

8            Let me take appearances in the courtroom and then

9    we'll take appearances on the line.

10           MS. DRIVER:  Good afternoon, Your Honor.  Vickie

11   Driver and I'll just introduce my partner, Craig Regens from

12   Crowe & Dunlevy.  You graciously entered his pro had today,

13   we appreciate that.  And I'm joined today by Bob Sclizer

14   (phonetic), our financial advisor, and I don't know with the

15   time change if Mr. Jones made it onto the screen, but he may

16   appear on the screen.

17           THE COURT:  Okay.

18           MS. DRIVER:  I don't think we're planning on

19   calling any testimony today, but he just wanted to be here.

20           THE COURT:  Okay.  Thank you very much.

21           MS. BRAUNER:  Good afternoon, Your Honor.  Sara

22   Brauner, Akin, on behalf of the Committee.  With me today

23   are my partners, Katherine Porter, Marty Brimmage, and our

24   colleague, Melanie Norr (phonetic).

25           THE COURT:  Okay.

1          MS. HARDY:  Good afternoon, Your Honor.  Jennifer

2    Hardy of Willkie Farr on behalf of the Texas Plaintiffs.

3    I'm also joined by Jarrod Martin from Chamberlain.

4          THE COURT:  Okay.

5          MR. KIMPLER:  Good afternoon, Your Honor.  Kyle

6    Kimpler from Paul Weiss on behalf of the Connecticut

7    Plaintiffs, joined on the video today by my co-counsel, Ryan

8    Chappel (phonetic) and Allen Sterling (phonetic) and my

9    colleague Stephanie Loscano (phonetic) in the courtroom.

10          Thank you.

11          THE COURT:  Okay.  Good afternoon.

12          MR. RUFF:  Good afternoon, Your Honor.  Jayson

13    Ruff for the United States Trustee's Office.  Excuse me,

14    long day, Your Honor.  Ha Nguyen is with me today, as well.

15          THE COURT:  That's right.  You've been here all

16    day, huh?

17          MR. RUFF:  Yes, sir.

18       (Laughter)

19          MR. RUFF:  You and Judge Isgur hours today.

20       (Laughter)

21          THE COURT:  All righty.  If anyone wishes to make

22    an appearance online, why don't you hit five star.  I have

23    like 70 people on the line and it just makes sense to do it

24    that way.

25          (No audible response.)

1          THE COURT:  All righty.  There's a 512 number.

2          MR. LEMMON:  Your Honor, Steve Lemmon on behalf of

3    PQPR.

4          THE COURT:  Good afternoon, Mr. Lemmon.

5          There's a 713 number.

6          MR. PATTERSON:  Your Honor, Johnie Patterson here

7    for ESG.

8          THE COURT:  Good afternoon, Mr. Patterson.

9          210 number.

10          MR. BATTAGLIA:  Good afternoon, Your Honor.  Ray

11    Battaglia for Free Speech Systems.

12          THE COURT:  All righty.  I think that is everyone.

13          Why don't I -- well, I don't know who to turn it

14    over to.  We have -- anyone in the courtroom, Ms. Driver,

15    you stood up to go first?

16          MS. DRIVER:  I did.  That means I either draw the

17    short or long straw, I don't know which one that is.

18          Your Honor, I am really pleased to report that I

19    don't think we have any objections to handle today on any of

20    our matters, so this is going to be as short and sweet as

21    Your Honor would like it.

22          I do have two unopposed applications to employ

23    that I could take up really quickly, if that pleases the

24    Court?

25          THE COURT:  Okay.  Let's do that.

1          MS. DRIVER:  Your Honor, we had on the 21st of

2    December we filed two applications to employ professionals.

3    One is an auctioneer to assist in the sale of the contents

4    of storage units.  And the second is to employ Kelly

5    Williams as a broker to assist in the sale of a lake

6    property.

7          THE COURT:  Remind me what the Docket numbers are

8    on those?

9          MS. DRIVER:  Yes.  534 is the auctioneer and 535

10   is the broker.

11         THE COURT:  Is that the Order you still want me to

12   sign?

13         MS. DRIVER:  Your Honor, the orders are attached

14   as dash-one on those.  I can get those uploaded to you.

15         THE COURT:  No, no, no.  I just want to make sure

16   nothing has changed.

17         MS. DRIVER:  Nothing has changed, Your Honor.

18         THE COURT:  Okay.  Any objection to the approval

19   -- they've been out since December 21st, so the time has

20   certainly run for an objection.  I did get an opportunity to

21   review that I guess early this morning.

22         So I did see that and the applications looked good

23   to me.  I'm going to get those signed and on the Docket.

24         MS. DRIVER:  Thank you, Your Honor.

25         That gets us to our conditional approval to two

1  Disclosure Statements, one on behalf of the Debtor and one

2  on behalf of the creditors.

3          Your Honor, we've all worked very hard.  You'll

4  see that there were some amended Plans and Disclosure

5  Statements that were filed.  Those all have redline

6  comments.  Not everybody is ready to agree to confirmation,

7  of course.  I don't think anybody is here asking for full

8  approval of a Disclosure Statement.  Simply the conditional

9  approval of a Disclosure Statement in each of these -- for

10  each of these Plans for the purposes of solicitation.  We

11  were going to work together to make sure that our

12  solicitation goes out in one packet so it's not confusing.

13          I think this is a pretty easy one for conditional

14  approval, Your Honor, because there's only about 23

15  creditors, 20 of which are very well represented here in

16  this courtroom.

17          Other than the Plaintiffs, Your Honor, we have the

18  City of Austin, we have -- that have filed Proofs of Claim

19  in the case.

20          THE COURT:  Right, right, right.

21          MS. DRIVER:  The City of Austin, we have the IRS

22  who has withdrawn their claims.  We have a law firm, the

23  Reeves firm who had a little loan outstanding pre-petition,

24  and then American Express.

25          And so those are the only claims on the Docket,

1  Your Honor, on the claims register.  So really, everybody is

2  really going to have a pretty fair shot at getting their

3  lawyers to explain all of this stuff to them.

4       So what's in the Disclosure Statement, while very,

5  very important in many, many cases are a teensy less

6  important here because there's going to be lots of very

7  capable lawyers telling their clients what it says.

8       THE COURT:  Perfect.

9       MS. DRIVER:  Your Honor, I had all kinds of lovely

10  things prepared, but I'm perfectly happy just to tell you

11  that I'm happy to walk you through any of the comments, but

12  candidly Your Honor may not have had a chance to look at the

13  originals that we filed, so the comments might not make much

14  sense.

15       THE COURT:  I read up until -- has there been

16  anything on file since like 1:00 o'clock this afternoon?

17  Was there anything further?

18       MS. DRIVER:  No, Your Honor.  The only other thing

19  may have been a ballot.

20       THE COURT:  The ballot stuff, right?

21       MS. DRIVER:  We just failed -- we just failed to

22  carry through the claim treatment changes to our ballots so

23  we wanted that on the Docket so everyone could see it.

24       THE COURT:  I saw everything through -- and I did

25  not get a chance to see the ballot.  I'm looking at it right

1  now as we speak.

2          I had one question.  What is the version of the --

3  the last version of the DS.  I just had one question and it

4  wasn't --

5          MS. DRIVER:  So the Disclosure Statement at

6  Docket 569 has the last filed clean and blackline Disclosure

7  Statement.

8          THE COURT:  569, there was one question and it may

9  be answered really quickly.

10       (Pause in the proceedings.)

11         THE COURT:  One second.  It's just pulling up.

12         MS. DRIVER:  Sure.

13       (Pause in the proceedings.)

14         THE COURT:  Oh, here it is, okay.  This was the

15  only question I had and is it okay if I put it up on the

16  screen so we can look?

17         MS. DRIVER:  Sure.  Thank you.

18         THE COURT:  All righty.  I just didn't know what

19  it meant.

20         MS. DRIVER:  Well hopefully I can answer.

21         THE COURT:  No, no, no.  So it's this question

22  with the -- it says "DSO" and then it had TBP, then it drops

23  and it says, "We don't think we owe anything."

24          And so I just didn't know what that meant.  I got

25  -- I think it says throughout the time, we don't think we

1   owe anything.  I just didn't know TBP meant.

2           MS. DRIVER:  If there is any amount that is owed

3   as of the filing date or the petition date, we would let you

4   know, but we are current through the date because --

5           THE COURT:  Got it.

6           MS. DRIVER:  -- because they are withdrawn from

7   his paycheck.

8           THE COURT:  Ah, no, no, no.  I got it.  I just

9   didn't know what that --

10          MS. DRIVER:  Thank you.

11          THE COURT:  I'm trying to learn cool new terms.

12      (Laughter)

13          MS. DRIVER:  "To be provided" I think is what that

14  means.

15          THE COURT:  Oh.  I dated myself on that one there.

16          MS. DRIVER:  That's okay.  Your Honor, I did have

17  two --

18          THE COURT:  LOL that's about as far as I go.

19          MS. DRIVER:  I had one agreement with Mr. Kimpler

20  and then one oopsie that I need to correct.

21          THE COURT:  Okay.

22          MS. DRIVER:  We had attached to the Disclosure

23  Statement an Exhibit A that had listed all of the claims

24  that have been filed by the Plaintiffs.

25          THE COURT:  Yes.

1          MS. DRIVER:  And then I had Exhibit C, which would

2     be the amounts that they would vote.  The difference was I

3     had originally anticipated Connecticut voting and only the

4     amounts that had been declared non-dischargeable by Your

5     Honor that's on appeal.  But at the last minute, the math

6     just didn't make sense for us to continue to try to do that.

7          So what I'm essentially going to do is that

8     Exhibit C is no longer going to exist and it'll just change

9     the reference to the already attached as Exhibit A, which

10    has them at their full value.

11          THE COURT:  Got it.

12          MS. DRIVER:  Finally, there was an asset listing.

13    This is in -- it's Schedule A to the Disclosure Statement.

14    We just caught that we included a car that is leased to FSS.

15    We did -- so there's three things.  One is -- and it's on

16    page 104 of 173 if you're looking at that Docket.

17          THE COURT:  Uh-huh.

18          MS. DRIVER:  And the coins are not exempt.  We had

19    changed that in our last exemption and I just probably

20    failed to put the right document in front of the right

21    person when they were putting this together.

22          And then if you just flip the page one more, the

23    2020 Chevrolet Tahoe has been taken off our Schedules.  It

24    was leased to FSS.  And the glass drawn boat is identified

25    in other places as a potential avoidable transfer because it

1  was given to a gentleman by the name of Patrick Riley

2  (phonetic).

3          So I'm just going to take those three things off

4  and with my updated ballot, I hope that I can just fill in

5  the blanks with dates as soon as we get those dates set out

6  here, Your Honor.

7          I think we are asking for the same dates for

8  voting.  The voting record deadline, Your Honor, we're

9  asking for is for it to be today.  So whomever holds the

10 claims as of today will be the voting -- the person who

11 votes those claims.

12         And then we are seeking for February the 12th,

13 2024 to be the voting deadline.  We are going to be

14 soliciting by Monday so that gives a nice cushion for folks

15 to vote.  Most people will vote -- will be receiving this

16 email directly from counsel for the UCC, and then there's

17 just a few that I just mentioned before that will get it by

18 mail per the address that they had requested for the Proof

19 of Claim.

20         THE COURT:  Okay.

21         MS. DRIVER:  We're going to asking for ballots be

22 sent mail and email only.  And that we are asking just for

23 this particular Order not to have a 14-day stay, they can go

24 ahead and go effective so we can immediately -- so that we

25 can go ahead and get solicitation done.

1          THE COURT:  Yeah.

2          MS. DRIVER:  Again, Your Honor, I can give you

3 bullet points on what my plan looks like, but that's

4 probably just something you prefer to hear at confirmation.

5          THE COURT:  Yep, that makes sense to me.

6          What date do we have set for confirmation?

7          MS. DRIVER:  That's one thing that I wanted to

8 speak with Your Honor about.  We had it pegged for the end

9 of February, but I think despite all of our wonderful

10 efforts and desires to move this case to a close as

11 expeditiously as possible, I think in discussions with the

12 Committee and with various creditors that we really feel

13 like we need a little bit more time after the voting date.

14          I'm heartened to say that I've now heard from all

15 our major constituents, and I think everybody really does

16 want to focus on settlement, I think, now that we've got

17 some plans in place and people can evaluate what it really

18 looks like to go left or right.  We may have a chance at one

19 more run at settlement.

20          So in order to give us the opportunity to do that

21 and really flesh that out, I think we're looking at

22 confirmation the last week of March or the first week of

23 April.

24          THE COURT:  Okay.

25          MS. DRIVER:  And I don't think anybody -- I think

1  that the dates still have to be taken back to a few folks

2  from the UCC, so we'd love to get the idea of dates and then

3  confirm with Your Honor.

4           THE COURT:  I like March 27th and March 29th

5  because I know I don't have anything.

6           The weeks before that get really tricky for me.

7  Just there's weird stuff in there.

8           MS. DRIVER:  I understand, Your Honor, that the

9  29th is Good Friday, so we might just want to not --

10          THE COURT:  Oh, whoops, that's not a good day for

11 me.

12      (Laughter)

13          THE COURT:  I believe I could -- all right, how

14 about the 25th or the 27th?

15          MS. DRIVER:  Let us just triple check on our side,

16 but presumably that would be okay.

17          THE COURT:  Well, yeah.  Does it make sense for me

18 to just allow it -- just kind of approve the proposed Orders

19 and then we can set the -- you can confirm with Ms. Saldana

20 a confirmation hearing date today?

21          MS. DRIVER:  Our intention was to get the Court's

22 availability, the parties confer, and settle the Scheduling

23 Order as revised --

24          THE COURT:  Ah, yeah.

25          MS. DRIVER:  -- including potentially pushing some

1  dates.

2          THE COURT:  She'll know that stuff, that's why --

3  yes, okay, you-all are smarter.  Don't trust me, okay.

4          MS. DRIVER:  The dates that won't move, Your

5  Honor, are going to be the voting dates.

6          THE COURT:  Got it.  So I will tell you last week

7  is good, first week in April is bad for me.  So let's figure

8  something out that last week in March.

9          MS. DRIVER:  Well, Your Honor, I think that Good

10 Friday being the bad day, that's my anniversary, too, so

11 I'll just accidentally be able to be home for that.

12         THE COURT:  Okay.

13         MS. DRIVER:  So Your Honor, that's all I have.

14 I'll be happy to cede the podium to Ms. Brauner.

15         THE COURT:  Well, where was the proposed Order

16 that you have, is there one on the Docket now?

17         MS. DRIVER:  There should be a proposed Order that

18 is attached to the Motion to Approve the Disclosure

19 Statement.  Your Honor, if you wouldn't mind, I'd just like

20 to try to fill in a couple of blanks on that and upload it

21 to Your Honor.

22         THE COURT:  Upload a revised?

23         MS. DRIVER:  Yes, Your Honor.

24         THE COURT:  You got it, okay.  Let me --

25         MS. DRIVER:  And it would be materially the same,

1  other than filling in blanks.

2          THE COURT:  Okay.  I'm going to rule on both at

3  the same time just so I can have one finding.

4          Okay.  Thank you.

5          MS. DRIVER:  Certainly, Your Honor.

6          MS. BRAUNER:  For the Record again, Sara Brauner,

7  Akin, on behalf of the Committee.  I'll be very brief.

8          As Ms. Driver said, the parties have worked

9  constructively over the past bunch of days in an effort to

10  make this hearing run as smoothly as possible and not burden

11  the Court with disputes that could be resolved by providing

12  language in our respective Disclosure Statements.

13          You will hear a similar speech when we talk about

14  the creditors' Disclosure Statement, but effectively what

15  the parties have done is include in their respective

16  Disclosure Statements some protection, some language that

17  was requested.

18          THE COURT:  I read it.

19          MS. BRAUNER:  So for purposes of the Debtor's

20  Disclosure Statement, rather than inserting every place the

21  Committee and the Sandy Hook family has had a point of

22  disagreement, we've provided a single block paragraph that

23  was inserted on page 2 of the blackline --

24          THE COURT:  Uh-huh.

25          MS. BRAUNER:  -- that was filed last night that

1   provides some protection that we are comfortable with.

2         With that protection, except subject to one caveat

3   I'll get to in a moment, we are comfortable with the

4   conditional approval of the Debtor's Disclosure Statement --

5         THE COURT:  Okay.

6         MS. BRAUNER:  -- reserving all rights that relate

7   to confirmation, of course, for confirmation, including any

8   disclosure issues that would be taken up on a final basis at

9   that time.

10         THE COURT:  Okay.

11         MS. BRAUNER:  There was just one pure disclosure

12   point that we wanted to flag for the Court.  Again, we

13   believe it has been resolved for purposes of today, but

14   there is a new provision that you will see on page 22 of the

15   Debtor's blackline.  It talks about a process for resolution

16   of estate causes of action.

17         THE COURT:  I did see it.

18         MS. BRAUNER:  That was important to us from a

19   process perspective to ensure that we collectively had

20   adequate time to review any proposed settlement terms

21   because they're not being provided in the Disclosure

22   Statement and object as needed, irrespective of whether a

23   creditor had voted in favor of the Plan.

24         THE COURT:  Uh-huh.

25         MS. BRAUNER:  So with that process that was laid

1   out, again, we are comfortable subject to all of the many

2   reservations of rights that we have put in many documents

3   before Your Honor with the conditional approval.

4             THE COURT:  Okay.

5             MS. BRAUNER:  That was all we had on the Debtor's

6   Disclosure Statement.  I'm happy to flip to the creditors'

7   if that would be --

8             THE COURT:  Let's go to the creditors'.

9             MS. BRAUNER:  -- helpful.  So on the creditors'

10  Disclosure Statement, I would just echo again what

11  Ms. Driver has said.  We have worked constructively.  We

12  attempted to resolve all of the Debtor's disclosure issues

13  by putting in boxed paragraphs of the Debtor's position.

14            We also worked over the last couple of days with

15  the United States Trustee's Office to resolve an issue that

16  made its way to Your Honor by way of an updated Order

17  approving the Disclosure Statement motion, which simply adds

18  an opt-out notice.

19            The one unique feature about the opt-out notice is

20  not just for non-voting classes, but it also provides an

21  opt-out for the Debtor to the extent that the creditors'

22  plan is going forward over the objection of the Debtor --

23            THE COURT:  Ah, that's interesting, yeah, yeah,

24  yeah.

25            MS. BRAUNER:  -- the US Trustee's Office rightly

1  pointed out that that needed to be provided, the

2  optionality --

3          THE COURT:  Ah, no, I don't have a comment.  That

4  makes sense.  That makes sense.

5          MS. BRAUNER:  -- for the Debtor to opt-out, so

6  good on the United States Trustee's Office for noticing

7  that.  We've added that opt-out.

8          THE COURT:  It's value added.

9          MS. BRAUNER:  And of course, we will reserve for

10 confirmation issues of what the universe of Debtor claims

11 would be.  To the extent they are not transferred to a trust

12 pursuant to the terms of our plan, but again, those issues

13 can be attached to confirmation.

14         So I would simply echo Ms. Driver's request

15 pursuant to the terms of our Disclosure Statement motion to

16 approve on a conditional basis the Disclosure Statement and

17 all of the various attachments, including the ballot and the

18 opt-out notice on a conditional basis.

19         THE COURT:  I did get a chance to read them.

20         Just one question for both of you and I may need

21 to bring in Mr. Battaglia.  Are we -- is the FSS one going

22 to get -- are we tracking that one, as well?  I have to

23 enter an Order in that one.  Do I track the dates?  Are we

24 doing this all at one time or are we doing --

25         MS. BRAUNER:  So I would defer to Mr. Battaglia on

1   that.  I think from the Committee's perspective and the

2   family's perspective, we think it makes sense to take them

3   up together, but not our issue directly.

4         THE COURT:  That was my informal way of saying

5   Mr. Battaglia, you might want to -- we might need to loop

6   you in on those dates as well.

7         MR. BATTAGLIA:  Sure, Your Honor.  I beat my head

8   against your particular wall the last time about when the

9   Plan might be set for confirmation and my client, Mr. McGill

10  (phonetic) I know will beat me up if you move the dates, but

11  that's the job of the Debtor's lawyer here.

12        So can we just assume that I've made all of the

13  same arguments that we are ready to proceed and we want to

14  proceed as quickly as possible without having to let you

15  beat me up again over that issue?  You're going to set this

16  whenever you're going to set it, and I appreciate that

17  completely.

18        But if the Court is inclined to set the

19  confirmation towards the end of March, I know there are two

20  Scheduling Orders, one which you entered in the Jones case

21  and one which I've submitted that has not been entered in

22  the FSS case that have dates that some have expired and some

23  have been changed.

24        THE COURT:  I'll take a look at it.

25        MR. BATTAGLIA:  I think they probably all need a

1  little bit of massaging.

2          THE COURT:  Can you email my case manager which

3  one I need to look at?

4          MR. BATTAGLIA:  I could probably tell you.  Let's

5  see if I can look at it right now.

6          THE COURT:  Proposed order, Ms. Brauner, is there

7  any tweaks to it that need to happen?

8          MS. BRAUNER:  No.  So what we filed at 571, which

9  included a blackline.  It's a significant blackline only

10  because we added the ballot and the opt-out notice into the

11  Order for convenience.

12          THE COURT:  Yep.

13          MS. BRAUNER:  To the extent the Court finds that

14  acceptable, we would just request entry of that Order.

15          THE COURT:  Which Order?

16          MS. BRAUNER:  571.

17          THE COURT:  571.  No, I'll take a look at it and I

18  will get it --

19          MS. BRAUNER:  Of course, subject to anything

20  Ms. Driver wanted to say.

21          MR. BATTAGLIA:  Your Honor?

22          THE COURT:  Yes.

23          MR. BATTAGLIA:  If the Court's inclination is to

24  set us, you know, at the same time, I could certainly modify

25  the Order to put the dates in from the Jones case.

1          THE COURT:  Okay.  Yeah, that would be greatly

2   appreciated.

3          I'm going to just note then for the Record that I

4   have authority under 28 USC 157(b)(2) in this case.  I feel

5   certain approval of this Disclosure Statement is a core

6   proceeding.

7          The Court has jurisdiction under 28 USC 1334.

8          Today we are not confirming any Plans.  We are

9   just approving the terms of a Disclosure Statement that will

10  be sent out to parties to have an opportunity to make an

11  informed decision to vote to accept -- either vote to accept

12  or to reject that Plan.

13         There will be two separate Disclosure Statements

14  and Plans that will be sent out to parties.  So that

15  requires some coordination.  I very much appreciate the

16  parties working together.

17         I have reviewed both Disclosure Statements cover

18  to cover and I do find on a preliminary basis that they do

19  provide adequate information within the meaning of

20  Section 1125 of the Bankruptcy Code.  I've reviewed that.  I

21  know that there are some additional dates that need to kind

22  of get plugged in and for folks to take a look at stuff.

23         We will pick one date and we will hold a giant

24  hearing where we may need to have a Status Conference

25  sometime maybe in mid-March to kind of talk, you know, at

1  least staging for it and make sure that we have a big

2  coordinated effort.

3          I will probably speak a lot more at that hearing

4  than I did at my last major hearing in this case, but I very

5  much appreciate everyone's time.

6          I'll get those signed and on the Docket today.

7  Today was just really a procedural -- substantive, but

8  really just setting dates.  Again, people will have an

9  opportunity to read those and to make informed decision and

10  I do believe -- I do appreciate the plain language that was

11  being used in both Disclosure Statements.  I think it helps

12  people make a decision and we'll see where things go.

13          If anything comes up, you know, let me know, okay?

14          MS. BRAUNER:  Thank you, Your Honor.

15          THE COURT:  Thank you.

16          MS. BRAUNER:  We will submit to chambers the

17  revised Scheduling Order --

18          THE COURT:  Yes.

19          MS. BRAUNER:  -- for approval, just so the dates

20  are public.

21          THE COURT:  Okay, perfect.

22          Thank you very much.  We're adjourned.

23          COURT SECURITY OFFICER:  All rise.

24      (Proceeding adjourned at 4:04 p.m.)

25                      *  *  *  *  *

1          *I certify that the foregoing is a correct*

2    *transcript to the best of my ability produced from the*

3    *electronic sound recording of the ZOOM/telephonic*

4    *proceedings in the above-entitled matter.*

5    */S/ MARY D. HENRY*

6    *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

7    *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

8    *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

9    *JTT TRANSCRIPT #68080*

10   *DATE FILED:  JANUARY 31, 2024*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25