# AJ - 3

**Engagement Agreement**

# MAGILL PC
### Accountants & Business Advisors

September 30, 2022

*Via Email: rbattaglialaw@outlook.com*
Free Speech Systems, LLC
c/o Ray Battaglia

> Reference: Bankruptcy Case No 22-60043 filed by Free Speech Systems, LLC, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division ("Bankruptcy Case"); Engagement of Financial Adviser and Chief Restructuring Officer for Free Speech Systems LLC

Gentlemen:

Magill PC (MAGILL) is pleased to assist Free Speech Systems LLC ("FSS") as financial adviser ("FA") and J. Patrick Magill as Chief Restructuring Officer ("CRO") in the design, development and implementation of an appropriate strategy for the confirmation of a Chapter 11 bankruptcy plan in the Bankruptcy Case

MAGILL understands that FSS ownership desires to develop and execute a business strategy to confirm a bankruptcy plan in the Bankruptcy Case that will maximize the return to creditors and stakeholders. Magill acknowledges that time is of the essence.

The services will be provided by MAGILL with your knowledge, and the FSS team will remain an integral participant in the overall effort. The estimated timeframe for consummating the confirmation of a Chapter 11 bankruptcy plan cannot be accurately determined.

This Agreement shall be effective as of the date set forth above and shall continue in effect until the first to occur: (i) the successful completion of a Chapter 11 bankruptcy plan, (ii) expiration of a period of time ending on **DATE**, (iii) the point in time when either party provides written notice of its intention to terminate this Agreement, subject to Bankruptcy court approval.

**MAGILL Participation**

Mr. Patrick Magill, will be directly involved in the effort and will diligently work in a concentrated timeframe to achieve the desired end result. Mr. Magill will have day-to-day responsibility for the effort and will work directly with the FSS representative and employees to complete the activities in support of this effort.

In order to make the most efficient use of the time and efforts of both FSS and MAGILL resources, the FSS representatives and employees will work under my direction on a first priority basis in order to complete this effort in a timely manner.

Scanned with CamScanner

**Fees and Expenses**

Based on the scope, resources, and duration of this engagement, our fees will consist of an initial, refundable $50,000 contract retainer, payable at the time this Agreement is accepted and signed. MAGILL will charge FSS a fixed fee of $50,000.00 per month. The retainer shall be held by MAGILL in trust and applied as a credit at the conclusion of MAGILL's engagement.

Documented out of pocket and travel expenses will be billed separately. Payment for professional fees will be due at the end of each calendar month; out of pocket documented expenses will be due and payable upon receipt of the invoice. Applicable state and local taxes, if any, will be applied.

**Indemnification**

FSS agrees to indemnify, defend, and hold harmless CRO, individually, and Magill PC, its affiliates, the respective partners, directors, officers, agents, contractors, and employees of Magill PC from and against any and all losses, claims, damages, liabilities, or costs, as and when incurred, to which such party may become subject to or which are asserted against any party, directly or indirectly, in any way related to party while acting for FSS under this agreement including, without limitation, in connection with (i) any act or omission by party related to engagement as FA or CRO under the Agreement or (ii) Party's acceptance, performance or non-performance of obligations under said Agreement.

**Other Terms and Conditions**

- As FSS is currently in bankruptcy, any professional fees paid by FSS would need the approval of the bankruptcy court. To avoid the time, expense and uncertainty of filing a fee application with the bankruptcy court, MAGILL requests the fixed fee under Section 328(a).

- Neither FSS nor MAGILL shall be liable to the other for more than the fees to be paid under this letter. In no event shall either party be liable for consequential, incidental, or punitive loss, damage or expenses (including lost profits).

- In addition, the CRO and FA shall, subject to FSS's certificate of incorporation and Bylaws, be given the authority to take whatever actions the CRO deems necessary, including, without limitation, the authority to:

    1. Assist in managing the day-to-day operation and business FSS
    2. Assist FSS with managing due diligence requests and other items that may be requested by its various constituents as part of the restructuring process
    3. Prepare cash flow forecasts and related financial and business models
    4. Hire and terminate professionals
    5. Assist FSS in seeking to obtain credit as needed
    6. Prepare Amended Statements of Financial Affairs and Schedules, as needed
    7. Prepare Monthly Operating Reports, and other similar regular Chapter 11 administrative, financial, and accounting reports required by the United States Bankruptcy Court
    8. Review inventory marketability and provide monetization alternatives as deemed appropriate

Scanned with CamScanner

9. Make operational decisions, with consultation of current ownership, directed to maximizing the value of FSS. Notwithstanding the same, CRO shall be solely responsible for making all operational decisions.
10. Supervise the banking relationships, cash management and budgeting process of FSS and act as a primary signatory and authority on all bank accounts, with full rights to add or remove any signatory authority
11. Supervise management, employees and other personnel of FSS
12. Hire and terminate personnel of FSS
13. Develop and implement restructuring plans, including plans contemplating restructuring of debts, sales of assets, divestitures, liquidations or dispositions of assets of FSS
14. Formulate all strategic direction and alternatives of FSS
15. Implement cost containment measures
16. Negotiate with creditors, prospective purchasers, equity holders, equity committees, official committee of unsecured creditors, and all other parties in interest
17. Be in charge of all business decisions on behalf of FSS as necessary or required, utilizing CRO's business judgment in aid of the restructuring.
18. Execute all documents and take all other actions necessary to effectuate restructuring of FSS, including in the Bankruptcy Case, in consultation with current ownership

- FSS and MAGILL mutually agree that any disputes regarding the interpretation of this Agreement if not settled amicably between FSS and MAGILL, will be presented to the United States Bankruptcy Court for the Southern District of Texas which is presiding over the FSS Bankruptcy.

This Agreement and the terms stated herein set forth the entire understanding between the parties and supersedes all prior agreements, arrangements and communications, whether oral or written, with respect to the subject matter hereof. Neither this letter nor the terms stated herein may be modified or amended except by the mutual written agreement of the parties. The laws of the State of Texas prevail in all disputed matters.

We are pleased to be of service to you, and look forward to assisting you in this important effort. Please indicate your acceptance of this Agreement by signing, dating, and returning this letter to me. Should you have any questions, please contact me at (713) 829-0069

Sincerely,

*[signature]*

J. Patrick Magill
Magill PC

Accepted and Agreed: Free Speech Systems, LLC, Debtor in Possession

*[signature]*

Alex Jones, sole member
Date: October 3, 2022

# J. Patrick Magill

**January 2014- Present**

## Magill, P.C.

Principal of accounting firm providing business advisory, management services, accounting, business valuations and bankruptcy and workout services to small and middle market privately held companies in Texas. Current industries served are healthcare, manufacturing and energy service industries, including pipeline construction and oil field tool manufacturing.

**August 2000- December 31, 2013**

## MCR Capital Advisors Corporation
*Houston, Texas*
**Senior Partner**

Serving as senior partner, lead performance in investment banking, capital advisory, bankruptcies, corporate workouts and financial consulting services from our Houston office to our clients comprised of small and mid-size companies located in the Southwest. Specific industry expertise includes health care, financial services and professional service corporations. Successful projects include bankruptcy reorganizations; completed merger & acquisitions in various industries, including healthcare, technology and light manufacturing; debt restructures for client companies ranging up to $7,500,000; and business advisory services including strategic planning, valuation services, and creditor/ debtor services for pre and post bankruptcies.

**May 1996 – August 2000**

## Health Advance Institute
*Houston, Texas*
**President & Chief Executive Officer**

While President and Chief Executive Officer of this multi-site national clinical research company, our company improved its profit margin from 29% to 47% and reduced operating expenses by 44%. Enrollment in the company's clinical research studies has increased to 94% and all operating sites were profitable. Operating improvements resulted from the closing of under performing clinics, eliminating overstaffing, implementing entrepreneurial operating procedures at the clinic level and consolidating corporate functions. The hiring of heavily

experienced industry savvy individuals reinvigorated the marketing staff, enhanced revenues and interjected new product confidence with our clientele.

Promotion to the senior level position by the board of directors came after two and one half years at the subsidiary level. Board of Directors presented this opportunity to revamp the company operations and take advantage of my previous experience in directing a clinical research company. Company is now in a position to expand beyond its current capital structure and is reviewing merger opportunities.

### Director Clinical Operations- Houston Texas

After merger of Predecessor Company to Health Advance Institute, remained with company to direct research operations in the largest operating unit in the company, which included 35 direct employees, 24 Principal Investigators and 60 ongoing or enrolling research studies involving most specialty areas. Initiated, organized and chaired an advisory board consisting of five experienced physicians to strategically plan for further development of business opportunities, study recruitment and physician recruitment. Worked directly with other divisions to develop and enhance standard operating procedures, revenue recognition reports, study enrollment activity tracking system and worked directly with industry leaders to promote corporate development. Developed activities in five new therapeutic areas for Houston clinical studies and completed working agreements with area clinics to expand the study capabilities in the Houston region.

### reSearch For Health, Inc.
(Merged with Health Advance Institute in July 1997)
*Houston, Texas*
### President & Chief Financial Officer

Hired by Chief Executive Officer and co-founder to take full operating and financial responsibilities for this one site, twelve year old research company, with the initial goal to identify expansion and growth opportunities. During first year, company revenues increased 25% with a pre-tax profit margin of 17%.

Within the first fifteen months, completed a strategic plan, arranged company's first independent audit, computerized the accounting system, secured a $500,000 commercial bank credit arrangement to fund growth and completed corporate strategic plan. Completed initial offer to acquire additional clinical research sites across the country. During this activity, the company received two offers to sell 100% of its outstanding shares and consolidate operations with other research facilities. Negotiated a successful merger with Health Advance Institute in July 1997.

**June 1990 to April 1996**

**Davey, Magill & Ounanian**
**Investment Banking Group**
*Houston, Texas*
**Partner**

Established healthcare investment banking activities primarily with regional healthcare companies to provide mezzanine financing, joint venture partnerships, business valuations, strategic alliances and merger and acquisition activities. Arranged client financing from $500,000 to $5,000,000 for mezzanine financing and acquisitions. Evaluated and initiated public and non-public sale and acquisition transactions ranging from $2,000,000 to $5,000,000 and assisted in negotiations and acted as financial advisors to client companies. Conducted detailed business valuations and management consultation for small to medium size companies.

**June 1982 to June 1990**

**HEI Corporation**
*Houston, Texas*
**Vice President-Operations**
**Secretary, Treasurer**

Directed operations at this $100 million publicly traded diversified healthcare company with operations in Texas and Missouri. Promoted to this combined position as part of the senior management team to develop and execute revised business plan. Company owned and operated seven hospitals; several hospital based home healthcare agencies, a durable medical equipment company, medical office buildings and a medical publishing company. Duties encompassed all aspects of healthcare operations within the company. As Secretary, interacted with Securities & Exchange Commission, shareholders and members of the Board of Directors. As Treasurer, established and maintained commercial banking relationship, arranged company financing and worked on the management team during the sale of the company to Columbia Healthcare in June 1990.

**Vice President of Mergers & Acquisitions**

Promoted to Vice President-Mergers & Acquisitions after work was completed in publishing division. Identified and implemented synergistic healthcare operations to the primary care operations of seven hospitals. Acquired and financed home healthcare and durable medical equipment companies ranging in value from $300,000 to $1,000,000. Responsible for the renovation, expansion and construction of company owned facilities from $50,000 to $7,000,000.

**General Manager & Controller**
**HEI Publishing**
(Division of HEI Corporation)

General operational and financial responsibilities for recently acquired medical publishing division, owner of *Medical World News*, a bi-weekly national news magazine for primary care physicians. Initially moved publishing operations from New York City to Houston, Texas without production interruption. Hired replacement staff in Houston, Texas and expanded circulation to 500,000 primary care physicians nationwide. Developed additional publications for specialized physician groups until the sale of magazine in 1986. Concurrently worked with senior management on Initial Public Offering in 1983.

**May 1979 to June 1982**

**Southwest Chemical Services, Inc.**
**Division of Thiokol Corporation**
*Houston, Texas*
**Director of Corporate Accounting**

Completed the development of an automated accounting system that integrated domestic and foreign operations and consolidated information to the corporate office. Developed platform to convert manual accounting system to automated system and successfully completed system testing in 12-month period. Consolidated monthly financial information from six domestic and two foreign subsidiaries within reporting corporate deadlines. Worked directly with Chief Financial Officer on various projects including financial analysis of operating units and foreign exchange issues.

**June 1978 to May 1979**

**Frazier Construction**
*Houston, Texas*
**Controller**

Opportunity to work in every aspect of the entire accounting function of this petrochemical construction company was the motivation to move from my previous job. This controller position was created immediately prior to my employment, which allowed for the development of an in-house accounting system and the hiring of a staff of two to produce financial statements, job cost analysis and cash management. Worked directly with the board of directors to establish a bank line of credit to fund long-term construction projects.

A downturn in the industry forced the shareholders to sell the business in 1979, thus eliminating the controller position.

**July 1977 to June 1978**

## United Salt Corporation
*Houston, Texas*

### Staff Accountant

Hired to maintain subsidiary financial records of multiple subsidiaries. Position reported to assistant controller and duties required significant accounting knowledge that included bank reconciliations, general ledger postings, job cost and subsidiary ledger maintenance. Special accounting projects were an integral part of the staff accountant position.

**Education & Certifications:**

Bachelor of Business Administration- University of Houston- 1977
Texas State Board of Public Accountancy- Certification # 27735 **(Retired Status)**

**Contact Information:**

Cell: (713) 829-0069
E-mail Address: Patrick@MagillPC.com

Magill P.C.
Client List

### Litgation Support

David J. Moore vs Tel-Tex Network Cabling, Inc,
Terecor, Inc. d/b/a Tel-Tex Communications,
Mascomm Enterprises, Inc. and Thomas W. Moore, Jr. Individually
2001-Cicack

Herrington- Cause # H-00-2656
Herrington Equipment, Inc. and Robert N. Herrington
vs Orix Credit Alliance
2001-2002- Cicack/Evans

Reproduction Equipment Services-Cause # H-2000-36834
Reproductive Equipment Service, Inc. vs Chris E, Rucker,
Robert S. Williams and William H. Pierson, Jr., Individually and
D/B/A Yourprintshop.com
In the 151st Judicial District Court of Harris County, Texas
2002- Cicack

Arthur Gallegher Cause# 2003-59265
HealthHelp, Inc., vs Arthur J. Gallagher, Inc., Healthcare First,
and Gallagher Healthcare Insurance Services, Inc;
In the 157th Judicial District Court of Harris County, Texas
2006- Cicack

Optima International-Cause# 2005-54028
TrueStar Petroleum Corporation, Trinity Barnett, LLC,
tinity Americas, Inc., Charles A Kohlhaas, Dwain M. Immel
vs Optima Services International, Ltd., p/k/a Optima International
Trust Company Limited, The Balaton Group, Robert J. Kubbernus,
M. Carol Coale, John S. Burns and Frederick Bryson Farrill
vs. J.W. Rhea, IV and Robert Chamberlain vs. Thomas F. Cooke,
In 157th Judicial Districk Court of Harris County, Texas
2007-2008- Cicack

Airgas- Cause # 2006-64492
IWS Gas & Supply of Texas, Ltd, Jerry D. Barton,
Robert M. Morton, Jr., Steven P. Lynch and
Ruben G. Pena vs. Airgas-Southwest, Inc:
In the 269th Judicial District Court, Harris County Tex
2007-2008- Butler/Wilcox

### Valuations

Applied Logic Associates

Conceptual Software, Inc

Dupre Industries, Inc.

Gatlin Education Services

Lone Star Ambualnce Inc.

Primary Medicine Center LLC

Automation Solutions, Inc.

### Bankruptcy/Workout

Wood, Lucksinger & Epstein
liquidating trustee

O'Dell Geer Corporation
No. 3-62039
creditor advisory services to
Wright Asphalt Company

Goldstar EMS
Case no. 05-36446-144-11
Chief Restructing Officer

Diagnostic Clinic of Houston
Case No. 07-30396
Chief Restructing Officer

Repros Therapeutics
debtor advisory services

Apex- Katy Pin Oak Medical
Case No. 12-31848
debtor advisory services

Westbury Hospital
pre-bankrusptcy
creditor advisory services to
Downtown Hospital LLC

Watkins Eye Clinic
debtor advisory services

Victory Healthcare
Case No. 15-42373
Chief Restructing Officer

American Nation Carbide
Case No 16-30992
debtor advisory services

The Tifaro Group Ltd
Case No 17-80171
Liquidating Trustee