```
                    UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                       .
IN RE:                                 .   Case No. 22-60043
                                       .   Chapter 11
FREE SPEECH SYSTEMS, LLC,              .   (Jointly administered)
et al.,                                .
                                       .   515 Rusk Street
                 Debtors.              .   Houston, TX 77002
                                       .
                                           Tuesday, August 29, 2023
. . . . . . . . . . . . . . . . . .    .   3:16 p.m.
```

TRANSCRIPT OF EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 105, 361, AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER [6];
BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For Free Speech Systems, LLC: | Law Offices of Ray Battaglia, PLLC<br>By: RAYMOND WILLIAM BATTAGLIA, ESQ.<br>66 Granburg Circle<br>San Antonio, TX 78218<br>(210) 601-9405 |

APPEARANCES CONTINUED.

| | |
|---|---|
| Audio Operator: | Zilde Compean, ECR |
| Transcription Company: | Access Transcripts, LLC<br>10110 Youngwood Lane<br>Fishers, IN 46048<br>(855) 873-2223<br>www.accesstranscripts.com |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

```
APPEARANCES (Continued):

For Alex E. Jones and        Crowe & Dunlevy, P.C.
Free Speech Systems,         By:  VICKIE L. DRIVER, ESQ.
LLC:                         2525 McKinnon Street, Suite 425
                             Dallas, TX 75201
                             (214) 420-2142

For PQPR Holdings            Streusand Landon Ozburn Lemmon LLP
Limited, LLC:                By:  STEPHEN WAYNE LEMMON, ESQ.
                             1801 S. Mopac Expressway, Suite 320
                             Austin, TX 78746
                             (512) 220-2688

For the U.S. Trustee:        Office of the United States Trustee
                             By:  HA MINH NGUYEN, ESQ.
                             515 Rusk Street, Suite 3516
                             Houston, TX 77002
                             (713) 718-4650

For the Subchapter V         The Law Office of Liz Freeman
Trustee:                     By:  ELIZABETH CAROL FREEMAN, ESQ.
                             P.O. Box 61209
                             Houston, TX 77208-1209
                             (832) 779-3580

For the Official             Akin Gump Strauss Hauer & Feld LLP
Committee of Unsecured       By:  KATHERINE PORTER, ESQ.
Creditors:                        SARA L. BRAUNER, ESQ.
                             One Bryant Park
                             Bank of America Tower
                             New York, NY 10036-6745
                             (212) 872-8027

Subchapter V Trustee:        Haselden Farrow PLLC
                             By:  MELISSA A. HASELDEN, ESQ.
                             Pennzoil Place
                             700 Milam, Suite 1300
                             Houston, TX 77002
                             (832) 819-1149

For the Connecticut          Paul Weiss Rifkind Wharton &
Plaintiffs:                  Garrison LLP
                             By:  KYLE KIMPLER, ESQ.
                             1285 Avenue of the Americas
                             New York, NY 10019-6064
                             (212) 373-3253
```

1          (Proceedings commence at 3:16 p.m.)
2          THE COURT: Alrighty. Good afternoon, everyone.
3   This is Judge Lopez. Today is August 29th. I'm going to call
4   the 3:15 case. I'm going to actually call combined the Alex
5   Jones and the Free Speech matters.
6          The line is completely muted. If you know you're
7   going to be speaking today, why don't you go ahead and hit
8   "five star" and I will unmute your line. Why don't I just take
9   appearances for both? If you can, just let me know if you're
10  making appearance in one case or in both, just so we have a
11  clean record.
12         Good afternoon, Mr. Battaglia.
13         MR. BATTAGLIA: Good afternoon, Your Honor. Ray
14  Battaglia for Free Speech Systems. Patrick McGill, the chief
15  restructuring officer, is in the court with me.
16         THE COURT: Okay. Good afternoon.
17         Ms. Haselden, good afternoon.
18         MS. HASELDEN: Good afternoon, Your Honor. Melissa
19  Haselden, Subchapter V trustee. And I believe Liz Freeman,
20  counsel for trustee, is on the video.
21         THE COURT: I do see her on the video.
22         Good afternoon, Ms. Freeman.
23         MR. NGUYEN: Good afternoon. Ha Nguyen for the U.S.
24  Trustee.
25         THE COURT: Okay. Good afternoon, Mr. Nguyen.

1              Okay.  Let's see.  I'm just going to kind of go in
2    the order in which I see them.  So here's a 214 number?
3              MS. DRIVER:  Good afternoon, Your Honor.  Vickie
4    Driver, counsel for Mr. Jones.
5              THE COURT:  Okay.  Good afternoon, Ms. Driver.
6              Just one second.  And if you -- if I unmute your
7    line, just ask that you please monitor yourselves.
8              Here's a 917 number?
9              MS. PORTER:  Good afternoon, Your Honor.  Katherine
10   Porter from Akin for the Committee.
11             THE COURT:  Okay.
12             MS. PORTER:  And with me is my counsel, Sara
13   Brauner -- my partner, Sara Brauner.
14             THE COURT:  Good afternoon to both of you.
15             MS. BRAUNER:  Good afternoon.
16             THE COURT:  512 number?
17             MR. LEMMON:  Your Honor, Steve Lemmon for PQPR.
18             THE COURT:  Good afternoon, Mr. Lemmon.
19             A 713 number?
20             MS. FREEMAN:  Good afternoon, Your Honor.  Elizabeth
21   Freeman, counsel for the Subchapter V trustee.
22             THE COURT:  Good afternoon.
23             And here's a 212 number?
24             MR. KIMPLER:  Good afternoon, Your Honor.  It's Kyle
25   Kimpler from Paul, Weiss on behalf of the Connecticut

1  plaintiffs.

2          THE COURT: Alrighty. Good afternoon.

3          Mr. Battaglia, why don't -- I think we can start with
4  the cash collateral.

5          MR. BATTAGLIA: Pretty short docket today, Your
6  Honor. Ray Battaglia for Free Speech Systems.

7          The cash collateral proposed order was circulated
8  Friday afternoon. I've received no comments or questions. I
9  do want to address a couple of things. We had put in a $15,000
10 approximately number last month for potential travel to Nevada
11 that was earmarked.

12         THE COURT: Mr. Battaglia, get close -- just move
13 that mic just a little bit closer.

14         MR. BATTAGLIA: Sure. Sure.

15         THE COURT: It'll adjust. I just want to make sure
16 everybody can hear you okay in video land.

17         MR. BATTAGLIA: That did not get spent. And just to
18 advise the Court -- and of course, these are -- Mr. McGill
19 prepares the budgets as cash-based budgets, so anything that
20 doesn't get spent doesn't stay out there on accrual basis to be
21 spent on a later date.

22         There's one thing that's not in the budget, and it
23 does pertain to the next matter, the motion to quash, which is,
24 it's going to be a relatively sizable expenditure to do the
25 search that's -- that we're going to talk to you about in a

1  moment.  That is not in the budget yet because we're just
2  getting numbers on -- for an outside provider to do some
3  database searches.  But I'll address that further in the next
4  hearing.  We can talk about whether the Court requires me to
5  come back with something additional in the form of the budget.
6           THE COURT:  Why don't we then -- on the proposed
7  order, does anyone wish to be heard with respect to cash
8  collateral?
9           Mr. Battaglia, before I let you go, maybe -- before I
10 open it up to everyone else, when were you looking to come
11 back?  That's always the --
12          MR. BATTAGLIA:  Towards the end of the month but --
13          THE COURT:  Towards the end of the month?
14          MR. BATTAGLIA:  -- let me see what my -- I'm out of
15 the country till the 25th, so get back on the 25th.  So other
16 than -- after that, I'm available, Judge.
17          THE COURT:  Maybe we can do, like, Wednesday the 27th
18 at like, 10 a.m. on that?
19          MR. BATTAGLIA:  That's fine, Your Honor.
20          THE COURT:  Okay.  Well, let me make sure everybody's
21 okay with this before I -- I'm just thinking out loud with you
22 here.
23          Let me ask, does anyone wish to be heard with respect
24 to cash collateral?
25          MR. LEMMON:  Your Honor?  It's Steve Lemmon.

```
 1              THE COURT:  Yes, Mr. Lemmon.  Good afternoon.
 2              MR. LEMMON:  I have a -- I have to fly to a wedding
 3  on the morning of the 27th, so I'm available virtually any
 4  other time so --
 5              THE COURT:  You want to see if I can push it in the
 6  afternoon?  I am flying on the 28th.  That's what kind of
 7  creates the dynamic here.  No, that looks complicated.
 8              You want to do Tuesday?  What about the 20 --
 9  Mr. Battaglia, I hate to do it to you, would the 26th in the
10  afternoon work?
11              MR. BATTAGLIA:   That's fine, Judge.
12              THE COURT:  Okay.  Could we do the 26th at two
13  o'clock?
14              MR. LEMMON:  Yes, Your Honor.
15              THE COURT:  Okay.  Anyone else wish to be heard?
16              Okay.  I'm going to approve the -- kind of
17  continuing -- everybody's rights are obviously reserved as we
18  continue each time in connection with this.
19              Okay.  Why don't we then turn to the motion to quash
20  in the Jones -- wait --
21              MR. BATTAGLIA:  Your Honor, Ray Battaglia for Free
22  Speech Systems.  The Committee served a discovery -- 2004
23  notice with a rather extensive discovery request a while back.
24  And it -- it's -- it was finally filed after we had some back-
25  and-forth, still subject to issues from the debtors'
```

1  perspective.  Lots of back-and-forth between committee counsel
2  and myself and it's pared-down pretty substantially to what I
3  mentioned just a moment ago, which is a keyword search of the
4  debtors' email database.  The database -- and I'd had a
5  conversation, I think, just yesterday with the Committee
6  counsel about a couple of the terms that I didn't agree to.
7  But other than that, I told them that I was in the process of
8  exploring the cost because the debtor simply does not have the
9  ability, technology wise or personnel wise, to conduct the
10 search that's been requested and so we've reached to outside
11 third-party providers.
12         THE COURT:  To kind of assess with the -- kind of
13 uploading the docs and then running the searches?
14         MR. BATTAGLIA:  It requires the transfer of the
15 database to them.  There's an upload charge, and that, frankly,
16 is the largest cost here.  Based on the size of the database,
17 it would be $25,000 just to upload and keep it resident for 60
18 days; the smaller charges, $5,000 for what is estimated to be
19 the likely relevant materials; and then some additional costs
20 for the personnel to run the searches and so forth.  But that,
21 in the grand scheme of things, is less than $3,000.  So we're
22 talking about a 30-plus thousand-dollar charge.
23         I have not competitively bid it.  But this was a
24 party --
25         THE COURT:  Got it.  I got it.

```
 1            MR. BATTAGLIA:  -- that I'm advised that others have
 2   used called Relativity.  They don't do the search, they have
 3   third-party providers that they work with.
 4            THE COURT:  Yeah, I'm well familiar and --
 5            MR. BATTAGLIA:  It didn't shock --
 6            THE COURT:  I've done my --
 7            MR. BATTAGLIA:  I mean, it shocked me at one level on
 8   the number but not at the other.
 9            THE COURT:  I've done my Relativity tour of duty back
10   in the day, so I'm familiar with who they are.
11            MR. BATTAGLIA:  And so I have --
12            THE COURT:  Not endorsing them, I'm just saying I
13   know who they are, just to --
14            MR. BATTAGLIA:  Understood. And I want to talk to
15   the debtors' IT person to see if there's some way that even the
16   database could be whittled down.  That comes with its own risk,
17   and I certainly don't want to misproduce something.
18            THE COURT:  Got it.  I got it.
19            MR. BATTAGLIA:  We're going to produce whatever is
20   relevant, but --
21            THE COURT:  So is the thought that if there is an
22   agreement on kind of search terms, that you're going to have to
23   -- or I should say, the estate would then -- how would the cost
24   be?  I know you said you wanted to -- you would need to come
25   back to me in connection with --
```

1         MR. BATTAGLIA:  Well it's not in this budget --

2         THE COURT:  It's not in this budget.

3         MR. BATTAGLIA:  -- because I just received this after
4  the budget was submitted and circulated.  So if the parties and
5  the Court consider that we have authority to do that within the
6  parameters that I've outlined, that's fine.  And I expect that
7  what we'll end up with, with the Committee is some agreement
8  that resolves their 2004 notice and my -- Free Speech's motion
9  to quash.

10        As I say, we're all but there.  This was the last
11 piece to try to figure out what was involved from the debtors'
12 side.  We have limited resources in terms of personnel and
13 that's not just the debtor, that's me, to throw at doing a
14 review and making sure that we're producing both relevant and
15 nonprivileged materials.

16        THE COURT:  Yeah, I very much appreciate it.  I got
17 it.

18        Let me just -- I guess, just open it up.

19        Let me hear from the Committee.  It sounds like there
20 is some agreement here.  Make sure it's here -- make sure that
21 y'all are okay with -- you agree with what Mr. Battaglia's
22 statements are.

23        MS. PORTER:  That's right, Your Honor.  Mr. Battaglia
24 has accurately represented the course of negotiations and where
25 we believe we are now.  There are, I think, three terms that

```
 1  are still under discussion and the rest are agreed, a small
 2  number of custodians.  We really worked very hard with
 3  Mr. Battaglia to narrow the request to what was necessary at
 4  this stage in the case.
 5              THE COURT:  Okay.  I appreciate it.
 6              So in terms of what we have now, I think I can just
 7  lean then -- kind of --
 8              MR. BATTAGLIA:  Call this a status conference, Judge.
 9              THE COURT:  Treat it as a status conference?
10              MR. BATTAGLIA:  And we'll upload an appropriate order
11  or stipulation as we get there.
12              THE COURT:  Okay.  If you need to stip it out -- in
13  terms of the amount, you know, obviously, it -- I don't want to
14  get -- just find the best price and if you all agree on a
15  service provider and the amount, then I don't -- and obviously
16  I don't care who it is, as long as you all agree and they can
17  get the job done and timely.
18              And if you need to file an amended budget or
19  something, just take a look at it, and just upload a revised
20  order.  I don't think we need a hearing on that.  I know what's
21  coming and I know what it is.  As long as the parties can kind
22  of stip it out or maybe just an agreed amended, you know, cash
23  collateral order or kind of get --
24              MR. BATTAGLIA:  Perhaps just the stipulation itself,
25  we can set it out in there so it's noticed to everybody.
```

1            THE COURT:  Just whatever's -- whatever makes the
2   most sense and is the most practical.  That kind of makes sure
3   that -- there'll be transparency through the stip or through
4   something so I'm fine with that.
5            MR. BATTAGLIA:  And I'm open to suggestions.  If any
6   of the professionals have someone they think is a -- you know,
7   might be a lower cost, I'm open to suggestions, happy to take
8   an email.
9            THE COURT:  I take it there -- you know, your days of
10  going through boxes are over, Mr. Battaglia.  Those days are --
11           MR. BATTAGLIA:  I -- I've -- I did that in ASARCO for
12  3 million pages of documents so yes, I -- I've been there.
13           THE COURT:  Okay.  So I guess there's nothing for me
14  to sign today or nothing for me to address.
15           Since we're all here, I did just note -- I think
16  we've concluded the matters.
17           Mr. Battaglia, is there anything else you think we
18  needed to handle from the Free Speech point of view?
19           MR. BATTAGLIA:  No, Your Honor.  There's still a few
20  things out there that we're trying to haggle and work our way
21  through, motion to approve an appointment contract with Alex
22  Jones, not before the Court today.  It was just filed this
23  morning.
24           THE COURT:  Oh, yeah, I saw that.
25           MR. BATTAGLIA:  And I'm sure that's going to generate

1  some conversation or other issues that really don't need to be
2  discussed today.
3              THE COURT:  Till --
4              MR. BATTAGLIA:  I'm still trying to work with the
5  platinum and marketing money and think we're getting closer,
6  but every day someone throws something silly out there.
7              THE COURT:  Right.  On the motion, that one being --
8  we need to put on full notice.  And I know that you're thinking
9  about this.  I'm just thinking -- let's see what comes in and
10 then we'll set it for hearing.  Maybe that makes the most
11 sense.
12             MR. BATTAGLIA:  I'm thinking if we don't get anywhere
13 on the platinum ESG motion, the turnover motion that's been
14 there for a while, I'm just going to set it.  I'll ask the
15 Court to set it on the date that we're hearing -- the 26th.
16             THE COURT:  Do we need to take that up?
17             MR. BATTAGLIA:  If we can't get this resolved.  We're
18 working with each other.
19             THE COURT:  Okay.
20             MR. BATTAGLIA:  And it's a numbers game at this point
21 that should be solvable, but --
22             THE COURT:  I will tell you, I want to -- you know,
23 obviously I've got something under advisement, but I want to
24 continue ruling on matters that are set.  And it -- that
25 doesn't mean rush it in front of me, but it does mean I think

1  we're here in that stage of the case and -- where we got to
2  start making decisions.  And I -- so if there are matters that
3  are right for me to adjudicate, let's tee the issue up.
4              MR. BATTAGLIA:  Those are the only two things from
5  the FSS side that are still unresolved and pending at this
6  particular moment.
7              THE COURT:  Okay.
8              MR. BATTAGLIA:  I could be wrong, but I think that's
9  it.
10             THE COURT:  Okay.
11             In the Jones case, I did see a reservation of rights
12 filed by the Committee with respect to the MORs.  I'll open it
13 up.  I don't know if there's anything we need to talk about on
14 that one or where we're going.
15             MS. DRIVER:  Your Honor?
16             THE COURT  Go ahead.
17             MS. DRIVER:  This is Vickie Driver.  I wanted to say
18 that this has been an ongoing conversation the Committee
19 professionals and myself have been having.  We are planning on
20 having a pretty big and it just -- a little bit of timing has
21 sort of caught me this week.  We need to just sit and have what
22 I would consider sort of a powwow over the budget and where we
23 can come to agreement.
24             We have instituted -- Blackbriar is now approving all
25 payments.  They were going through some personal assistants,

1  which we were just having a little bit of a problem trailing in
2  the support for some of those.  Everything so far has been
3  spent.
4            I don't think there's any dispute that we are
5  spending it on what we say we're spending it on.  I don't -- I
6  mean, they may want to -- additional support for that, and
7  we're willing to give it to them.  And I want to do a powwow
8  with them before we really bring anything on the budget to the
9  Court.  I think between Sara and Katherine and I, we -- we've
10 been willing to, you know, try to work through some of these
11 issues.
12           Those functional changes on Blackbriar approving
13 payments really only instituted in the middle of August and
14 were, honestly, a result of the July MOR.  So we are making
15 changes on this side.  We'd like to see and be able to produce
16 a full month of what we consider Blackbriar-approved expenses
17 before we expend a whole lot of attorneys' and professional
18 time trying to have a knockdown drag-out over a budget that,
19 candidly, may -- we may just need to have that fight at a
20 confirmation hearing, and it may just sort of coincide with
21 that.
22           So we're going to have that powwow.  We'll file a
23 response to their reservation of rights.  And to the extent
24 that there's some sort of a motion that we need to take up at
25 that point, I think that's probably when it'll be ripe from the

1  debtors' perspective.
2          THE COURT:  Okay.  Thank you.
3          Does the Committee wish to address the Court?  The
4  matter -- obviously, we're not taking the matter up today, but
5  -- or all right.  There's nothing for me to take up.  But if
6  there's anything the Committee wishes to address the Court
7  since we're here, I'll open it up.
8          MS. PORTER:  I believe my co-counsel, Sara Brauner,
9  would like to address the Court, but may be on mute.
10         THE COURT:  Ms. Brauner, if -- Ms. Brauner, can you -
11 - let me just try to see if I can do this.  Ms. Brauner, I
12 don't see anything on "five star".  Maybe -- are you -- have I
13 unmuted you?  Let me know.  There you are.  Good afternoon.
14         MS. BRAUNER:  Good afternoon, Your Honor. Apologies.
15 Sara Brauner, Akin, on behalf of the Committee.  We did, in
16 fact, file a reservation of rights, and Ms. Driver is correct.
17 The discussions have been ongoing.
18         As we stated in our reservation, we are pleased to
19 see the developments with Blackbriar taking a more active role.
20 We do have some concerns, and I think there likely will be
21 disagreements over, not necessarily the controls in place, but
22 the ultimate kind of magnitude of the budget and the
23 expenditures.  We don't need to litigate now what's in our
24 reservation.  It's there for the Court and everyone to see.
25         We do have some concerns about how long this has

1  taken, understanding there are a lot of balls in the air, so we
2  are happy to continue to work with the debtor.  But as we
3  stated, we think bringing these issues to a head soon, as
4  Your Honor has indicated previously, is going to be important
5  for the next stage of the case.
6          THE COURT:  Alrighty.  Anything else we need to talk
7  about today?
8          Alrighty.  Well, thank you very much, everyone, for
9  your time.  And we'll -- if anything comes up, just let me
10 know.  Thank you very much.  Y'all have a good day.
11         (Proceedings concluded at 3:34 p.m.)
12                          * * * * *
13

14                       **C E R T I F I C A T I O N**
15

16         I, Alicia Jarrett, court-approved transcriber, hereby
17 certify that the foregoing is a correct transcript from the
18 official electronic sound recording of the proceedings in the
19 above-entitled matter.
20
21
22 *[signature: Alicia T. Jarrett]*
23 _____
24 ALICIA JARRETT, AAERT NO. 428    DATE: September 6, 2023
25 ACCESS TRANSCRIPTS, LLC