```
                    UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                        .
IN RE:                                  .  Case No. 22-60043
                                        .  Chapter 11
FREE SPEECH SYSTEMS, LLC,               .
                                        .  515 Rusk Street
                                        .  Houston, TX  77002
                    Debtor.             .
                                        .  Tuesday, September 26, 2023
. . . . . . . . . . . . . . .  .  2:03 p.m.
```

```
    TRANSCRIPT OF DEBTOR'S EMERGENCY MOTION FOR AN INTERIM AND
     FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL
  PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE
        AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B)
          AND (II) GRANTING ADEQUATE PROTECTION TO THE
                 PREPETITION SECURED LENDER [6]
           BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
               UNITED STATES BANKRUPTCY COURT JUDGE
```

TELEPHONIC APPEARANCES:

For the Debtor:            Law Offices of Ray Battaglia, PLLC
                           By:  RAYMOND W. BATTAGLIA, ESQ.
                           66 Granburg Circle
                           San Antonio, TX  78218
                           (210) 601-9405


For the U.S. Trustee:      Office of the United States Trustee
                           By:  JASON B. RUFF, ESQ.
                           515 Rusk Street, Suite 3516
                           Houston, TX  77002
                           (713) 718-4650

APPEARANCES CONTINUED.


Audio Operator:            Court ECR Personnel


Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46048
                           (855) 873-2223
                           www.accesstranscripts.com

    Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):

For the Official              Akin Gump Strauss Hauer & Feld LLP
Committee of Unsecured        By:  MARTY L. BRIMMAGE, ESQ.
Creditors of Alexander        2300 N. Field Street, Suite 1800
E. Jones::                    Dallas, TX  75201
                              (214) 969-2885


                              Akin Gump Strauss Hauer & Feld LLP
                              By:  SARA BRAUNER, ESQ.
                                   KATHERINE PORTER, ESQ.
                                   DAVID ZENSKY, ESQ.
                                   ANNA KORDAS, ESQ.
                              One Bryant Park
                              Bank of America Tower
                              New York, NY  10036-6745
                              (212) 872-1000


For PQPR Holdings             Streusand Landon Ozburn Lemmon LLP
Limited, LLC:                 By:  STEPHEN W. LEMMON, ESQ.
                              1801 S. Mopac Expressway, Suite 320
                              Austin, TX  78746
                              (512) 220-2688


Subchapter V Trustee:         Haselden Farrow PLLC
                              By:  MELISSA A. HASELDEN, ESQ.
                              700 Milam, Suite 1300
                              Houston, TX  77002
                              (832) 819-1149


For Melissa Haselden,         The Law Office of Liz Freeman
Subchapter V Trustee:         By:  LIZ FREEMAN, ESQ.
                              PO Box 61209
                              Houston, TX  77208-1209
                              (832) 779-3580


For Alex E. Jones:            Crowe & Dunlevy, P.C.
                              By:  VICKIE L. DRIVER, ESQ.
                              2525 McKinnon Street, Suite 425
                              Dallas, TX  75201
                              (214) 420-2142

```
For the Texas              Willkie Farr Gallagher LLP
Plaintiffs:                By:  JENNIFER JAYE HARDY, ESQ.
                           600 Travis Street, Suite 2310
                           Houston, TX  77002
                           (713) 510-1766


For the Connecticut        Paul Weiss
Plaintiffs:                By:  KYLE J. KIMPLER, ESQ.
                           1285 Avenue of the Americas
                           New York, NY  10019-6064
                           (212) 373-3253

                           Cain & Skarnulis PLLC
                           By:  RYAN CHAPPLE, ESQ.
                           303 Colorado Street, Suite 2850
                           Austin, TX  78701
                           (512) 477-5019
```

1          (Proceedings commence at 2:03 p.m.)

2          THE COURT:  Okay.  Good afternoon, everyone.  This is

3  Judge Lopez.  Today is September 26.  I'm going to call the 2

4  p.m. case, Free Speech Systems, 22-60043, on a continued cash

5  collateral hearing.  If you know you're going to be speaking

6  today, I'd ask that you please hit "five star" and I will

7  unmute your line.  Why don't I take appearances in the

8  courtroom, and then we will turn to the phone line?

9          Mr. Battaglia.  Good afternoon.

10         MR. BATTAGLIA:  Afternoon, Your Honor.  Ray Battaglia

11  for Free Speech Systems, Patrick McGill, the chief

12  restructuring officer in the courtroom.

13         THE COURT:  Good afternoon, Mr. McGill.

14         MR. BATTAGLIA:  Jeff Schulse (phonetic) may be on the

15  line to the extent there's some questions that may be addressed

16  later.

17         THE COURT:  Okay.  Great.  Thank you.

18         MS. HASELDEN:  Good afternoon, Your Honor.  Melissa

19  Haselden.  And I believe Ms. Liz Freeman is on video, the

20  Subchapter V --

21         THE COURT:  Okay.  Good afternoon.

22         Ms. Driver, good afternoon.

23         MS. DRIVER:  Good afternoon, Your Honor.  Vickie

24  Driver on behalf of Mr. Jones, the 100 percent owner of Free

25  Speech Systems.  I don't know if we're jointly calling his case

1    today, but if anything comes up, I'm here.  Thank you.

2              THE COURT:  Okay.  Thank you.

3              Okay.  I'm just going to go in the order in which I

4    see the unmuted lines.  713 number?  713 -- last three digits

5    666, number, I've just unmuted.

6              MS. HARDY:  Good afternoon, Your Honor.  Jennifer

7    Hardy of Willkie Farr on behalf of the Texas plaintiffs.

8              THE COURT:  Good afternoon, Ms. Hardy.

9              There's a 202 number.

10             MR. RUFF:  Good afternoon, Your Honor.  Jayson Ruff

11   for the U.S. Trustee.

12             THE COURT:  Okay.  Good afternoon, Mr. Ruff.

13             And I got a couple more.  Here's another, is a 212

14   number.

15             MR. KIMPLER:  Good afternoon, Your Honor.  Kyle

16   Kimpler for the Connecticut plaintiffs.  And I'm here today

17   with my co-counsel, Mr. Ryan Chapple.

18             THE COURT:  Okay.  Good afternoon.

19             512 number?

20             MR. LEMMON:  Your Honor, Steve Lemmon for PQPR.

21             THE COURT:  Good afternoon, Mr. Lemmon.

22             There's another 212 number.

23             MS. BRAUNER:  Good afternoon, Your Honor.  Sara

24   Brauner, Akin Gump Straus Hauer & Feld on behalf of the

25   Committee, and with me is my partner, Katherine Porter.

```
 1              THE COURT:  Good afternoon to both of you.

 2              And here's a 713 number.

 3              MS. FREEMAN:  Good afternoon, Your Honor.  Liz

 4    Freeman on behalf of Melissa Haselden, the Subchapter V

 5    Trustee.

 6              THE COURT:  Okay.  Good afternoon.

 7              That's all that I see.  Anyone else wish to make an

 8    appearance, just hit "five star" and I will recognize you in a

 9    moment.

10              If not, why don't I turn it over to Mr. Battaglia?

11              MR. BATTAGLIA:  Good afternoon, Your Honor.  Ray

12    Battaglia for Free Speech Systems.  There's only one matter on

13    the docket today.  There are a couple of things that are

14    implicated in it, and I'll discuss those, and we'll take that

15    as far as the Court would like to hear.

16              THE COURT:  Okay.

17              MR. BATTAGLIA:  The -- this is -- the sixteenth cash

18    collateral order has been uploaded and previously submitted to

19    the constituents for review and comment, and I've received none

20    or have received approvals, as the case may be.  There's one

21    textual change in the order.

22              The order, to date, has provided that we will

23    maintain a DIP account at Access Bank, which has been the

24    debtors' banking -- DIP banking institution since the petition

25    was filed.  Some events happened last week that I'll discuss in
```

1  fullness in a minute, but generally speaking, they shut our

2  accounts down last Thursday without notice or warning.  And so

3  the order provides that we'll maintain the accounts at Axos or

4  another bank approved by the Court, or a DIP account approved

5  by the Court.

6          We're not sure at this point what we're going to do

7  with our bank.  I guess I may as well just jump into it now, no

8  time like the present.  Both Mr. McGill and I were out of the

9  country last week and got some frantic messages from

10 Mr. Schulse that the bank balances were at zero on Thursday

11 morning, when the account balances we show at over $2 million.

12 Contacted Access Bank and were advised that the accounts had

13 been shut down and that they would mail a cashier's check to us

14 for the funds in the bank account, which to say was startling

15 is a gross understatement to a debtor that's an operating

16 entity that has payroll and other obligations that have to be

17 met on a current basis.

18         They indicated -- and Ms. Driver jumped in to the

19 breach and had some communications with Access Bank, with their

20 general counsel, and prepared and drafted a motion.  I know

21 your courtroom staff was aware that we might have been

22 requesting a hearing on an emergency basis last Thursday to

23 deal with this issue.

24         And the -- frankly, the excuses sound more than a bit

25 pretextual to me, that they contacted us in July about a

1   transaction, and we hadn't responded.  There's only one person

2   on the bank account sitting -- and he's sitting right here, and

3   there has been no communication about any concerning

4   transactions.  And then, I think they said that there were

5   unauthorized transactions, which, of course, there are not.

6   We're here regularly with a cash collateral order and a budget.

7   We're here every month with MORs that have copies of the bank

8   statements attached to them.

9           So -- and they also indicated that they had talked to

10  someone, again, about closing the account, that there had, in

11  fact, been notice.  They certainly didn't talk to me.  I know

12  they didn't talk to Mr. McGill.  I'm not sure who else they

13  could have talked to.  Mr. McGill is the only check signer.

14          So we're perplexed.  We have no answers for the

15  Court, and they've not provided us any beyond what I've just

16  related to you.  They've told us that, in light of Ms. Driver's

17  efforts to file a motion, that they would reinstate the

18  accounts for 30 days.  Initially, it said pending a response on

19  these transactions, which they've still not shared with us,

20  they might extend it further.  It's unclear, frankly.  The

21  later emails seem to suggest they have no intention of

22  extending the relationship beyond 30 days, which started

23  running last Thursday.  So we're deeply concerned.

24          I have a call with Mr. Epstein about what a DIP bank

25  is doing, why they're doing this to a debtor, and its

1  creditors.  And Mr. Epstein hasn't called me back.  That's

2  neither here nor there.  That was Thursday.

3       But we're deeply concerned about this.  And so there

4  is a provision in the order that at least contemplates maybe

5  having to move our DIP bank account somewhere else in the near

6  future.  And we may be before this Court again seeking some

7  relief against them or seeking another banking platform because

8  we just don't know who will bank us, for the reasons you've

9  heard over and over in front of this Court.

10       So I -- that's what I have to offer on that

11  particular issue.  And if the Court has any questions,

12  Mr. Schulse's on the line.

13       THE COURT:  No, just let me know if you need

14  anything.  I'll be here.

15       MR. BATTAGLIA:  Okay.  The second thing that's a --

16  I'll say it's implicated in the cash collateral order.  It's

17  really sort of not, is that we've reached an agreement with ESG

18  and with the Jones estate about the distribution of platinum

19  monies which you heard come up.  And there was a contract

20  between Alex Jones and ESG, and then a contract between ESG and

21  FSS dealing with the sale of certain platinum products.

22       The contract was terminated on our end.  Ms. Driver,

23  on behalf of the Jones estate, filed a motion to reject the

24  executory contract, left a whole lot of he-said-she-said finger

25  pointing going on.  In the meantime, Free Speech System stopped

1    distributing the monies to ESG and has held them in trust.

2    Technically -- well, contractually, we would pay ESG, and they

3    would make a disbursement to the Jones estate, and we would

4    hold back the monies that we were entitled to keep.  And in

5    light of the dispute, we simply stopped distributing and all

6    parties were aware of that.

7           We've been working on the accounting, back and forth

8    and back and forth, to make sure that all three parties were

9    comfortable that the distribution that was going to be made was

10   in the appropriate numbers to each party, and also to allow

11   Free Speech Systems to make the disbursements as opposed to

12   sending money to ESG to send on to Alex Jones.  Trust has been

13   shattered here, so it's just easier to do that.

14          And the second component is that there's still

15   platinum product in inventory, not our product, but we

16   continue -- we stopped selling it a couple of weeks ago.  But

17   we will put it back on the market, and we will make

18   disbursements in accordance with the mathematical formulas.

19   But again, we will disburse directly to Alex Jones and ESG.

20          And a stipulation citing all of that has been set

21   forth.  It doesn't contain any releases.  It's really not a

22   9019, but it simply says we're all acknowledging that we're not

23   going to sue each other for the distributions that we're making

24   that are set out in detail in that document.

25          So if the Court deigns to sign that stipulation, we

1  will be making those disbursements.  It's about $332,000 to the

2  Jones estate.  I know they desperately want it.  It's -- I

3  can't remember -- 100 and some-odd to ESG, and 100 and some-odd

4  to the debtor, to FSS.  And we see that as not a disbursement

5  under the cash collateral order, but as a trust fund money

6  that's not ours, that's going out.  But I wanted the Court to

7  be aware that that money is going out --

8           THE COURT:  Yeah.  I appreciate it.

9           MR. BATTAGLIA:  -- and it's not reflected in this

10 budget.  It is reflected in the stipulation that's before the

11 Court.

12           I've received no comments on the cash collateral

13 order or budget and would ask the Court to approve it and set a

14 reset hearing date.

15           THE COURT:  Does anyone --

16           MR. BATTAGLIA:  Is there any questions the Court may

17 have?

18           THE COURT:  No questions.  Let me just ask, does

19 anyone wish to be heard with respect to cash collateral?

20           I have one comment, Mr. Battaglia.  And I don't want

21 to -- it doesn't relate.  I'm going to approve this cash

22 collateral order, and we'll get another one.

23           I have a more general comment, and it's just kind of

24 acknowledging kind of where we are in the history of this case.

25 I think we're -- I am at the point now where I don't know

1   what's going on with mediation.  Obviously, I don't know what's

2   going on, but I'm ending it, to the extent that anything's

3   there.  I will officially end any mediation that's going on

4   between the parties.  I think it is now time for Free Speech to

5   put a plan together and tell me what they want to do and go

6   forth with something and whatever's going to -- I don't -- I'm

7   not in -- I don't know what you're proposing, but it's just

8   time to propose something.  And I know that you had something

9   at one point, so it's not to insinuate that you didn't.  It's

10  just now time to go up, down, or somewhere in with -- in

11  connection with that.

12          And so I know I was the one saying, you know, parties

13  should continue to talk and hold it off.  I'm just ending that

14  officially so that it's clear.  My deep gratitude to Judge

15  Isgur for all his efforts.  I don't know where this leaves the

16  parties.  I just am making an affirmative statement.

17          I'm just about done, I guess, I -- not calling the

18  Jones case, but y'all are all here, I can tell you, I'm just

19  about done with the decisions.  You'll have something no later

20  than kind of the week of October 10, maybe.  The 9th is the

21  federal holiday, so it may be like the 10th or the 11th or

22  12th, somewhere in there you'll have the -- both -- you'll have

23  a decision in the Texas and in the Connecticut case so that'll

24  get posted then, probably wouldn't look for anything before

25  that week.  May just take the weekend and make sure my

1 Bluebooking and all that stuff is right.  But that's when

2 you'll have it.  So it, like -- that will be what it is and

3 those decisions -- that decision will be rendered at that

4 point.

5         That'll -- I think I need Free Speech to kind of

6 coincide and do something.  And I'm -- I don't want to be the

7 one encouraging mediation anymore.  So I want to -- it's just

8 time to just -- and we'll see where things go.  Everybody's

9 been working hard at -- just looking, there's -- everybody's

10 been doing everything I've asked them to do.  You know, I don't

11 want to get to an 18th.

12         MR. BATTAGLIA:  Understood, Your Honor.  And

13 obviously, the summary judgment motions are -- there was a

14 little bit of no, you ask him, you ask him --

15         THE COURT:  Yeah, yeah, yeah.

16         MR. BATTAGLIA:  -- you ask him before you walked in

17 here.  Nobody likes to ask a --

18         THE COURT:  Oh, I know.

19         MR. BATTAGLIA:  -- judge on a difficult issue that is

20 pending.  So we appreciate and understand the time it takes.

21 And -- but that's something that the parties seem to think

22 will -- may move the needle.  I'm honestly not sure why it

23 would or should, but it may, and that's fine.  We continue to

24 talk and will continue to talk.  The issue from the Free Speech

25 side is really a -- the conversations with me are few and far

1  between because the issue is really on the Jones side and what

2  they want to do.  And --

3           THE COURT:  Yeah, I know.  That's what I'm saying.  I

4  want you and Mr. McGill put something forward, and whatever you

5  feel like you got to do.  Y'all are here and make a decision

6  about what -- the course that you think this case should go.

7  But I want to see something as soon as you can get it to me.

8  And if you get a plan on -- you already have one, but if you

9  want to take it and file it, I want to set dates to it.  I want

10 to go forward.

11          MR. BATTAGLIA:  We'll be modifying it.  The structure

12 has some tax issues that we needed to address, and we've hired

13 Hap May as the accountant --

14          THE COURT:  Okay.

15          MR. BATTAGLIA:  -- to come up with some structure to

16 deal with that, and he's come up with some thoughts and ideas

17 that need to be incorporated.  But I don't think, conceptually,

18 the plan will change all that much.  I mean, it's a Sub V.  We

19 contribute net disposable income to payments under the plan for

20 five years.  It's just not that -- it's not that hard.

21          THE COURT:  Yeah.  That's what I want to do.  And I'm

22 hoping by, you know, mid-November, early December, you know, we

23 take it up for consideration on a final basis.  I want to

24 just -- I think y'all are -- that's kind of -- I just wanted --

25 I wanted to just come out and say it --

1          MR. BATTAGLIA:  Yes, sir.

2          THE COURT:  -- as well as kind of give you an

3   indication as to kind of where things stood on the decision

4   there.  I think that's all I'll say.  Not -- today's not the

5   day for me to take up anything else.  I'll sign this order.

6   With that being said --

7          MR. BATTAGLIA:  Your Honor, one other thing that's in

8   the budget that I didn't mention, and what came up at the last

9   hearing, is there's a $16,000 line item for basically discovery

10  costs --

11         THE COURT:  Yeah, yep, yep.  I saw it.

12         MR. BATTAGLIA:  -- related to e-discovery.  I found a

13  vendor.  The database was considerably larger than I thought,

14  but at $7 a gig, as opposed to $30 a gig, the mainline price

15  has come down considerably.  And I've started looking through

16  the database.  It took a -- and this to answer a question

17  Ms. Brauner's associate asked.  The database was not completely

18  uploaded until yesterday, so I've started playing around with

19  my simple knowledge of the software, and we'll get smarter and

20  hopefully have that done early in October, if not the end of

21  September.

22         THE COURT:  And what I'd like to do, and I know I'm

23  asking the parties, so maybe you all can think about this, I'd

24  like to extend cash collateral through November 13th.  And I

25  want to -- I don't want to do this every month.  I want to go

1  November 13th, and I want you to have a plan on file as soon as

2  you can.  Then, we can just then talk about another cash -- if

3  we need to do another further in, and then kind of see where

4  things are, really kind of advancing where we're going.  And I

5  don't want -- I'd rather have a conversation about that.

6          If you get something on file, I'm not telling you

7  when to do it -- but you know, we can have that date,

8  November -- like that Monday, November -- let me make sure I'm

9  making something up correctly.  Yes, there is a Monday,

10  November 13, and it's open now.  Maybe we can just kind of meet

11  early in the afternoon that day, and if there's something on

12  file by then, then we can have a conversation about kind of

13  confirmation issues and -- or where things go.

14          And I want everything wrapped up, discussion about --

15  you know, anything, any investigations with anyone else in

16  terms of what you're going to do, if anything, with respect to

17  other parties and whatever it is.  We're just going to make --

18  go up or down on everything at that point.

19          MR. BATTAGLIA:  Your Honor, our budget goes through

20  the end of October.  Would you like me to submit a two-week

21  budget?

22          THE COURT:  No, I'm just pushing it out.  If you can

23  stay on those terms, which is kind of what you've been doing,

24  then do that.  Yeah, I'm not -- if you need to submit a

25  revised, you can.

1          MR. BATTAGLIA:  I will because it'll -- it's

2  literally a week-by-week budget, so there's two weeks that will

3  be covered.  And I can up --

4          THE COURT:  Yeah.  Why don't you do that?  I'm hoping

5  the parties -- I'm hoping there's no disagreement on that.  I

6  just want -- you can see where I'm headed.  And I don't --

7          MR. BATTAGLIA:  Sure.

8          THE COURT:  Maybe we can all have a discussion.

9          MR. BATTAGLIA:  Or I'll just circulate the budget.

10  If nobody has any objections, we'll consider that to be the

11  budget without a further order of the Court.

12          THE COURT:  That's perfect.

13          MR. BATTAGLIA:  And maybe we'll come before you.

14          THE COURT:  If anything in there, you know,

15  anything -- you've been great in terms of disclosing things.

16  If there's anything there --

17          MR. BATTAGLIA:  Yes, sir.

18          THE COURT:  -- it may be easier to just upload.  No,

19  why don't you just --  if there's a revised one, just file it.

20          MR. BATTAGLIA:  I'll do a notice of a revised budget.

21  That's what I'll do.  That's all I had, Your Honor.

22          THE COURT:  All right.  That's all I had, too.

23  That's -- I'll open it up at this point.

24          Ms. Driver?

25          MS. DRIVER:  Your Honor, I'm just following up on

1   something that Mr. Battaglia said.  We did file that

2   stipulation in both the Jones and the FSS cases.  The Jones

3   case, it's at Docket Number 448, and for Free Speech, it was

4   721.  It's exactly the same stipulation in both cases.

5           But I believe that -- one thing that I've represented

6   to the Committee, that I'll just represent on the record, that

7   any of the funds that come into the Jones estate are earmarked

8   and will solely be used for professional fees.  So it's near

9   and dear to my heart when that can get entered.  So we would

10  appreciate it if Your Honor could take a look at that.

11          THE COURT:  Okay.  No, no, I certainly will.  And

12  I'll open it up.  Thank you.

13          MS. DRIVER:  Thank you very much, Your Honor.

14          THE COURT:  Okay.  Let me just open it up.  Does

15  anyone wish to address the Court on anything?  I don't want

16  this -- I probably opened up a door, but I thought it was

17  important to just talk about.  If anyone wants to just mention

18  anything, discuss anything with me, just let me know.  Okay?

19          MR. BATTAGLIA:  Your Honor, did you have a time on

20  November 13?

21          THE COURT:  Yeah, I'm going to put one o'clock.

22  That's always subject to Ms. Saldana reaching for -- telling me

23  something.  Why don't we just pencil that in?

24          And if you do get kind of a revised plan on file,

25  Mr. Battaglia, I'd -- I don't know if it's possible, but I sure

1   would like something in the next 20 days, if you could, on

2   file, and we'll kind of take it up from there.

3           Mr. Ruff, I probably -- I'm probably echoing a

4   sentiment that the trustee has, I think, something trustee

5   raised earlier, a couple of months ago.  I think it's here

6   and -- yes.  Yeah.  I will -- well, if it's okay with the

7   parties, I will -- I guess you all can tell Judge Isgur that

8   I -- what I said on the record.  I don't want to get in -- I

9   think I want to keep a complete independence about anything

10  that is discussed in connection with the mediation at that

11  point.

12          And that doesn't mean parties shouldn't continue to

13  talk.  It's just we're not -- you're going to put a plan, we're

14  going to go forward on something, and if something comes up,

15  we'll set some dates to plan confirmation.  And you all will

16  tell me what else you need.  And if you need a hearing date on

17  anything related to the bank account, you'll reach out.  Okay?

18          Okay.  I have signed this order, and I will take a

19  look at the stip.  Let me ask you:  Do you think I need to --

20  if I sign this stip, do I need to just need to enter it in

21  both, or do y'all -- do you care?

22          MR. BATTAGLIA:  Probably needs to be in both.

23          THE COURT:  Okay.

24          MR. BATTAGLIA:  Because the deal with ESG is with

25  Alex.  I mean, it's just --

```
 1                THE COURT:  But it's -- is it -- it's the same.

 2                MR. BATTAGLIA:  Same stip.

 3                MS. DRIVER:  It is word-for-word,  the same thing.

 4                MR. BATTAGLIA:  Word-for-word, the same stip.

 5                THE COURT:  All righty.  That makes my -- good.  You

 6   know, that makes my life a little easier --

 7                MS. DRIVER:  Other than the caption.

 8                THE COURT:  -- in terms of these.

 9                All righty, folks.  Anything else we need to talk

10   about today?  Anyone wish to address the Court on anything?

11                Okay.  Thanks for your time.  Thank you.  We're

12   adjourned.

13           (Proceedings concluded at 2:24 p.m.)

14                              *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25
```

1 **C E R T I F I C A T I O N**

2

3         I, Lisa Luciano, court-approved transcriber, hereby

4 certify that the foregoing is a correct transcript from the

5 official electronic sound recording of the proceedings in the

6 above-entitled matter, to the best of my ability.

7

8

9 _____

10 LISA LUCIANO, AAERT NO.  327      DATE:  October 4, 2023

11 ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25