**RedBalloon**

## REDBALLOON RECRUITER ORDER FORM

| **Customer:** Free Speech Systems, LLC | **Contact:** Patrick Magill |
|---|---|
| **Address:** 3019 Alvin Devane, Suite 210, Austin, TX, 78741 | **Phone:** 713.829.0069 |
| | **E-Mail:** patrick@magillpc.com |
| **Services:** On a per-position basis, Red Balloon LLC, an Idaho limited liability company (the "**Company**") will screen, source and interview candidates for employment positions with Customer (each, a "**Position**") using our proprietary process known as "RedBalloon Recruiter", which is described more fully in the SOW (defined below) (the "**Services**"). ||
| **Services Fees**:<br>• $4,500 per Position<br><br>For the initial Service Term, payable in advance upon the execution of this Agreement, subject to the terms of Section 4 herein.<br><br>Services Fees are non-refundable. | **Service Term**: The initial term commences on the date of this Agreement and ends eight (8) weeks after the Position is posted by the Company, following receipt of the Customer's approval of the posting and screening criteria for the Position. After the initial term, the term will terminate automatically. |

## SERVICES AGREEMENT

This Services Agreement ("**Agreement**") is entered into on this __28th__ day of September 2023 (the "**Effective Date**") between RED BALLOON LLC, an Idaho limited liability company with a principal place of business at 104 South Main Street, Suite 200, Moscow, Idaho 83843 ("**Company**"), and the Customer listed above ("**Customer**"). This Agreement includes and incorporates the above Order Form, as well as the attached Terms and Conditions and contains, among other things, warranty disclaimers, liability limitations and use limitations. There shall be no force or effect to any different terms of any related purchase order or similar form even if signed by the parties after the date hereof.

| **RED BALLOON LLC** | **FREE SPEECH SYSTEMS, LLC** |
|---|---|
| *Aaron Youngren* | *J. Patrick Magill* |
| By: _____ | By: _____ |
| Name: Aaron Youngren | Name: Patrick Magill |
| Title: Head of Product & Delivery | Title: CRO |

**TERMS AND CONDITIONS**

**1.     SERVICES**

1.1     Company shall exercise commercially reasonable efforts to provide the Services to Customer during the Service Term, as set out in the Order Form and the Statement of Work.

**2.     RESTRICTIONS AND RESPONSIBILITIES**

2.1     Customer represents, covenants, and warrants that Customer will use the Services, and any materials provided in connection therewith, only in compliance with Company's standard published policies then in effect, including without limitation the terms and conditions available here: https://www.redballoon.work/terms (the "**Policy**") and all applicable laws and regulations. Customer hereby agrees to indemnify, defend and hold harmless Company against any damages, losses, liabilities, settlements and expenses (including without limitation costs and attorneys' fees) in connection with any claim or action that arises from an alleged violation of the foregoing or otherwise from Customer's use of Services. Although Company has no obligation to monitor Customer's use of the Services, Company may do so and may prohibit any use of the Services it believes may be (or alleged to be) in violation of the foregoing.

2.2     Customer shall be responsible for obtaining and maintaining any equipment and ancillary services needed to connect to, access or otherwise use the Services, including, without limitation, modems, hardware, servers, software, operating systems, networking, web servers and the like (collectively, "**Equipment**"). Customer shall also be responsible for maintaining the security of the Equipment, Customer account, passwords (including but not limited to administrative and user passwords) and files, and for all uses of Customer account or the Equipment with or without Customer's knowledge or consent.

**3.     CONFIDENTIALITY; PROPRIETARY RIGHTS**

3.1     Each party (the "**Receiving Party**") understands that the other party (the "**Disclosing Party**") has disclosed or may disclose business, technical or financial information relating to the Disclosing Party's business, including without limitation personally identifiable information of job candidates (hereinafter referred to as "**Proprietary Information**" of the Disclosing Party). Proprietary Information of Company includes non-public information regarding features, functionality and performance of the Services, including Company's methods, data, analysis, etc. Proprietary Information of Customer includes non-public data provided by Customer to Company to enable the provision of the Services ("**Customer Data**"). The Receiving Party agrees: (i) to take reasonable precautions to protect such Proprietary Information, and (ii) not to use (except in performance of the Services or as otherwise permitted herein) or divulge to any third person any such Proprietary Information. The Disclosing Party agrees that the foregoing shall not apply with respect to any information after five (5) years following the disclosure thereof or any information that the Receiving Party can document (a) is or becomes generally available to the public, or (b) was in its possession or known by it prior to receipt from the Disclosing Party, or (c) was rightfully disclosed to it without restriction by a third party, or (d) was independently developed without use of any Proprietary Information of the Disclosing Party or (e) is required to be disclosed by law.

3.2     Customer shall own all right, title and interest in and to the Customer Data. Company shall own and retain all right, title and interest in and to (a) the Services and Software, all improvements, enhancements or modifications thereto, (b) any software, applications, inventions or other technology developed in connection with support, (c) any data that is based on or derived from the Customer Data and provided to Customer as part of the Services and (d) all intellectual property rights related to any of the foregoing.

3.3     Notwithstanding anything to the contrary, Company shall have the right to collect and analyze data and other information relating to the provision, use and performance of various aspects of the Services and related systems and technologies (including, without limitation, information concerning Customer Data and data derived therefrom), and Company will be free (during and after the term hereof) to (i) use such information and data to improve and enhance the Services and for other development, diagnostic and corrective purposes in connection with the Services and other Company offerings, and (ii) disclose such data solely in aggregate or other de-identified form in connection with its business. No rights or licenses are granted except as expressly set forth herein.

**4.     PAYMENT OF FEES**

4.1     Customer will pay Company the then applicable fees described in the Order Form for the Services in accordance with the terms therein (the "**Fees**"). If Customer's use of the Services exceeds the scope of Services set forth on the Order Form or otherwise requires the payment of additional fees (per the terms of this Agreement), Customer shall be billed for such usage and Customer agrees to pay the additional fees in the manner provided herein. Company reserves the right to change the Fees or applicable charges and to institute new charges and Fees at the end of the Service Term upon thirty (30) days prior notice to Customer (which may be sent by email). If Customer believes that Company has billed Customer incorrectly, Customer must contact Company no later than 60 days after the closing date on the first billing statement in which the error or problem appeared, in order to receive an adjustment or credit. Inquiries should be directed to Company's customer support department.

4.2     Company may choose to bill through an invoice, in which case, full payment for invoices issued in any given month must be received by Company thirty (30) days after the mailing date of the invoice. Unpaid amounts are subject to a finance charge of 1.5%

per month on any outstanding balance, or the maximum permitted by law, whichever is lower, plus all expenses of collection and may result in immediate termination of Service. Customer shall be responsible for all taxes associated with Services other than U.S. taxes based on Company's net income.

**5.    TERM AND TERMINATION**

5.1    Subject to earlier termination as provided below, this Agreement is for the Service Term as specified in the Order Form ( the "**Term**").

5.2    In addition to any other remedies it may have, either party may also terminate this Agreement upon thirty (30) days' notice (or without notice in the case of nonpayment), if the other party materially breaches any of the terms or conditions of this Agreement.  Customer will pay in full for the Services up to and including the last day on which the Services are provided. All sections of this Agreement which by their nature should survive termination will survive termination, including, without limitation, accrued rights to payment, confidentiality obligations, warranty disclaimers, and limitations of liability.

**6.    WARRANTY AND DISCLAIMER**

Company shall use reasonable efforts consistent with prevailing industry standards to perform the Services in a professional and workmanlike manner. HOWEVER, COMPANY DOES NOT WARRANT THAT THE SERVICES WILL BE ERROR FREE; NOR DOES IT MAKE ANY WARRANTY AS TO THE RESULTS THAT MAY BE OBTAINED FROM USE OF THE SERVICES.  EXCEPT AS EXPRESSLY SET FORTH IN THIS SECTION, THE SERVICES ARE PROVIDED "AS IS" AND COMPANY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT.

**7.    INDEMNITY**

Each party (the "Indemnifying Party") agrees to indemnify, defend, and hold harmless the other party (the "Indemnified Party") from and against any and all third-party claims asserted against the Indemnified Party arising out of or relating to the Indemnifying Party's performance of this Agreement, except to the extent arising solely from the Indemnified Party's gross negligence, willful misconduct or violation of applicable law.

**8.    LIMITATION OF LIABILITY**

NOTWITHSTANDING ANYTHING TO THE CONTRARY, EXCEPT FOR BODILY INJURY OF A PERSON, COMPANY AND ITS SUPPLIERS (INCLUDING BUT NOT LIMITED TO ALL EQUIPMENT AND TECHNOLOGY SUPPLIERS), OFFICERS, AFFILIATES, REPRESENTATIVES, CONTRACTORS AND EMPLOYEES SHALL NOT BE RESPONSIBLE OR LIABLE WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT OR TERMS AND CONDITIONS RELATED THERETO UNDER ANY CONTRACT, NEGLIGENCE, STRICT LIABILITY OR OTHER THEORY: (A) FOR ERROR OR FOR LOSS OR INACCURACY OR CORRUPTION OF DATA OR COST OF PROCUREMENT OF SUBSTITUTE GOODS, SERVICES OR TECHNOLOGY OR LOSS OF BUSINESS; (B) FOR ANY INDIRECT, EXEMPLARY, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES; (C) FOR ANY MATTER BEYOND COMPANY'S REASONABLE CONTROL; OR (D) FOR ANY AMOUNTS THAT, TOGETHER WITH AMOUNTS ASSOCIATED WITH ALL OTHER CLAIMS, EXCEED THE FEES PAID BY CUSTOMER TO COMPANY FOR THE SERVICES UNDER THIS AGREEMENT IN THE 12 MONTHS PRIOR TO THE ACT THAT GAVE RISE TO THE LIABILITY, IN EACH CASE, WHETHER OR NOT COMPANY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**9.    MISCELLANEOUS**

If any provision of this Agreement is found to be unenforceable or invalid, that provision will be limited or eliminated to the minimum extent necessary so that this Agreement will otherwise remain in full force and effect and enforceable.  This Agreement is not assignable, transferable or sublicensable by Customer except with Company's prior written consent.  Company may transfer and assign any of its rights and obligations under this Agreement without consent.  This Agreement is the complete and exclusive statement of the mutual understanding of the parties and supersedes and cancels all previous written and oral agreements, communications and other understandings relating to the subject matter of this Agreement, and that all waivers and modifications must be in a writing signed by both parties, except as otherwise provided herein.  No agency, partnership, joint venture, or employment is created as a result of this Agreement and Customer does not have any authority of any kind to bind Company in any respect whatsoever.  In any action or proceeding to enforce rights under this Agreement, the prevailing party will be entitled to recover costs and attorneys' fees.  All notices under this Agreement will be in writing and will be deemed to have been duly given when received, if personally delivered; when receipt is electronically confirmed, if transmitted by facsimile or e-mail; the day after it is sent, if sent for next day delivery by recognized overnight delivery service; and upon receipt, if sent by certified or registered mail, return receipt requested.  This Agreement shall be governed by the laws of the State of Idaho without regard to its conflict of laws provisions.  Customer agrees to reasonably cooperate with Company to serve as a reference account upon request, and authorizes Company to use Customer's branding on Company's website and reference them as a customer.

**EXHIBIT A**

**Statement of Work**

This Statement of Work describes the services that RedBalloon LLC, an Idaho limited liability company ("**RedBalloon**" or the "**Company**") will perform for the Customer ("**you**" or the "**Customer**"). Capitalized terms used but not defined in this Statement of Work will have the meaning given such terms in the Agreement.

**RedBalloon Recruiter Services – Standard**

During the initial Service Term the Company will provide the following services:

1. RedBalloon will schedule a 30-minute discovery session with you to understand your company values and vision for your workplace culture, as well as particular skill requirements for the Position.
2. RedBalloon will then create screening criteria and questions for the Position based on those values and that vision. The screening criteria, questions and job description for the Position will be reviewed and approved by the Customer prior to posting on the RedBalloon job board.
3. RedBalloon will screen incoming candidates on the RedBalloon platform and other platforms as needed.
4. RedBalloon will interview candidates to determine if candidates fit the culture and values of your company.
5. RedBalloon will send a one-page recommendation to you immediately for any candidates identified through the interview process who satisfy your screening criteria for the Position. Candidates who do not meet the screening criteria are not recommended to you in real-time but are included in a weekly report.
6. RedBalloon will communicate with all candidates and notify them of their status throughout the screening process.
7. RedBalloon will utilize marketing and recruitment strategies to increase candidate flow for the Position.
8. RedBalloon will send you a weekly report including real-time data obtained for your business about the Position (including, for example, market salary expectations, number of candidates that meet your criteria in a given industry, location, etc.).

EXHIBIT A