# EXHIBIT 2

**PROFESSIONAL SERVICES AGREEMENT-INFOWARS® PLATINUM™
DIETARY SUPPLEMENT PRODUCT LINE**

This Professional Services Agreement ("Agreement") is entered into as of **5 NOVEMBER 2022**, ("Effective Date"), by and between ELEVATED SOLUTIONS GROUP, LLC, ("Elevated" or "Consultant") and ALEXANDER E. JONES ("AEJ" or "Client") (collectively herein Consultant and Client may be referred to as the "Parties.")

RECITALS

A. AEJ has an existing market for certain Dietary Supplement Products. AEJ has invested his own independent funds to initiate this product line, free from any existing businesses and/or agreements.

B. AEJ desires to retain Elevated as an independent contractor to perform certain professional services, as specified in this Agreement, and Elevated desires to provide such services to AEJ.

C. The parties desire to enter into this Agreement to set forth the obligations and responsibilities.

In consideration of the mutual covenants contained herein and other good and valuable consideration, which is hereby acknowledged, the parties hereto agree as follows:

**1. Services:** Client hereby retains Consultant and Consultant hereby agrees to perform professional services as follows: Including, but not limited to (physical and virtual), product conception, product design, production, sales, communication, marketing, infrastructure, fulfillment, and product line expansion of Dietary Supplement Products, under the trade name "INFOWARS® PLATINUM™", with an agreed upon limited use of INFOWARS® branding, as it pertains to the facilitation of this agreement and product line. Consultant will also provide, such other services as reasonably requested from time to time by Client and agreed to by Consultant in writing (the "Services").

   a. The Services shall commence with the creation, and delivery of three INFOWARS® PLATINUM™ Dietary Supplements to initially be sold on "www.infowarsstore.com" as well as additional affiliate marketing channels and associated marketing thereof.

   b. The initial services are planned to include the launch of PAIN-MD™, 1776 TESTOSTERONE BOOST™, and hGH MAX BOOST™ under the INFOWARS® PLATINUM™ Dietary Supplement Product Line, with the understanding to continue to expand the INFOWARS® PLATINUM™ Dietary Supplement Product Line based upon market research. This may change during the scope of work and such specifics will be handled on an individual basis as agreed to by Client and Consultant.

**2. Term:** The term of this Agreement shall commence as of the Effective Date and shall continue in full force for one-year with renewal options each year.

Page 1 of 5

3. <u>Compensation and Expenses:</u>  As compensation for Consultant's services, Client agrees to provide the Consultant with compensation as follows

   a. ==Client will pay all expenses and costs associated with the providing of the Services,== including but not limited to, (physical and virtual), product conception, product design, graphic design, production, sales, packaging/labor, marketing, infrastructure, fulfillment, shipping, Operating Expenses for both physical and E-Commerce Platforms (Hosting Fees, Credit Card Processing Fees, Etc), and product line expansion of Dietary Supplement Products, under the trade name "INFOWARS® PLATINUM™", with an agreed upon limited use of INFOWARS® branding, as it pertains to the facilitation of this agreement and product line. Client shall make payment to Consultant within 10 days of receipt of invoice.

   b. ==Consultant shall retain Twenty Percent (20%) of sale proceeds (calculated prior to the deduction of abovementioned fees) as a fee== for services rendered under this agreement. The remainder of any net proceeds shall be remitted to Client at the time of the underlying sale.

4. <u>Contractor's Representations</u>:  Consultant hereby warrants and represents to the Client that: (i) Consultant has the experience, skill, and authority necessary to perform the Services, (ii) there is no actual or potential conflict of interest between the Services to be performed by Consultant under this Agreement and Consultant's business, financial or other interests, and Consultant shall immediately notify the Client of any actual or potential conflict of interest of which Consultant becomes aware during the term of this Agreement.

5. <u>Relationship of the Parties:</u>  The Consultant under this Agreement is, and shall act as an independent contractor, and not as an agent, partner, or employee of Client.  Nothing in this Agreement shall be construed to imply that Consultant its agents, officers or employees are employees of Client; or that this Agreement creates, in any manner, a partnership, joint venture, or other arrangement between Consultant and Client.

6. <u>Termination:</u>  Termination of this Agreement will not eliminate any compensation owed to the Consultant at the time of termination as defined in the "Compensation and Expenses" of this Agreement. In the event of a termination for any reason, Consultant shall only be entitled to the compensation provided for in the "Compensation and Expenses" that has been earned. Consultant may suspend or terminate performance of Services for failure of Client to make payment hereunder in a timely manner.

**7. Dispute Resolution:** If a dispute arises of any kind under this Agreement the Client and Consultant shall first negotiate in good faith for a period of not less than thirty (30) days prior to taking any legal action. If a dispute cannot be resolved by negotiations of the Parties, then either party may submit the dispute to binding arbitration. The prevailing party shall be entitled to recover from the other party all costs and expenses of suit, including attorney's fees.

**8. Limitation on liability:** To the fullest extent permitted by Law and notwithstanding other provisions of this Agreement, in no event shall a Party be liable to the other Party, whether in contract, warranty, tort, negligence, strict liability, or otherwise, for special, indirect, incidental, multiple, consequential (including lost profits or revenues, business interruption damages and lost business opportunities), exemplary or punitive damages related to, arising out of, or resulting from performance or nonperformance of this Agreement.

**9. Notices:** Any notice of communication to be given under the terms of this Agreement shall be in writing and delivered in person or deposited in the United States Mail, postage prepaid, return receipt requested of by FEDEX overnight to the address in the signature block below. Notices will be effective upon receipt by the addressee.

**10. Indemnification:** Client shall indemnify, defend and hold harmless, Consultant, its parent and affiliates, and each of their officers, directors, employees, attorneys, sub-consultants, agents and successors and assigns (each an "Indemnified Party") from, for and against any and all claims, demands, suits, obligations, payments, liabilities, costs, fines, penalties, sanctions, taxes, judgments, damages, losses or expenses ("Loss") imposed by a third party upon Consultant or incurred in connection with a claim by a third party against the Consultant arising out of, relating to, or resulting from the Client's breach, or performance or non-performance of its obligations under this Agreement or Consultants work on the Property or association with Client (including reasonable attorneys' fees and costs). To the extent Consultant is required to participate in any third-party claims against Client in any legal proceedings, Consultant shall be compensated in accordance with this Agreement.

**11. Interpretation:** In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of authorship of any of the provisions of this Agreement. The headings and section titles contained in this Agreement are solely for convenience and do not constitute a part of this Agreement between the Parties, nor should they be used to aid in any manner in the interpretation of this Agreement.

**12. Modification and Amendment:** This Agreement shall not be altered, waived, or amended in any way, except in writing, signed by both Parties.

**13. Counterparts/Electronic Delivery:** This Agreement may be executed, and delivery of original signatures may be made in PDF format by electronic means, and in counterparts, all of which will be considered one and the same Agreement and will become effective when such counterparts have been signed and delivered, including by electronic means.

**14. Severability:** If any term, provision, or condition of this Agreement is held to be invalid, void or unenforceable by a governmental authority and such holding is subject to no further appeal or judicial

review, then such invalid, void, or unenforceable term, provision or condition shall be deemed severed from this Agreement and all remaining terms, provisions and conditions of this Agreement shall continue in full force and effect. The Parties shall endeavor in good faith to replace such invalid, void or unenforceable provisions with valid and enforceable provisions which achieve the purpose intended by the Parties to the greatest extent permitted by law. If any provision of this Agreement is determined by any court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision will be stricken from this Agreement and the remainder of this Agreement will be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement.

**15.** No Waiver:  No failure or delay on the part of a Party in exercising any of its rights under this Agreement or in insisting upon strict performance of provisions of this Agreement, no partial exercise by either Party of any of its rights under this Agreement, and no course of dealing, usage of trade or course of performance between the Parties shall constitute a waiver of the rights of either Party under this Agreement. Any waiver shall be effective only by a written instrument signed by the Party granting such waiver, and shall not operate as a waiver of, or estoppel with respect to, any subsequent failure to comply therewith. The remedies provided in this Agreement are cumulative and not exclusive of any remedies provided by law.

**16.** Entire Agreement:  This Agreement contains the entire agreement and understanding between the Parties with respect to all of the subject matter contained in this Agreement, and merges and supersedes all prior agreements and representations by the Parties with respect to subject matter of this Agreement, whether written or oral.

**17.** Further Assurances:  The parties hereby agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

**18.** Governing Law; Cost of Enforcement:  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

**19.** Headings; Construction:  Headings or titles to sections or paragraphs of this Agreement are solely for the convenience of the parties and shall have no effect whatsoever on the interpretation of the provisions of this Agreement. All references to "section" or "sections" refer to the corresponding section(s) of this Agreement. All words used in this Agreement will be construed to be of such gender or number, as the circumstances require. Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms.

**20.** No Third Party Beneficiaries:  Nothing in this Agreement nor any action taken shall be construed to create any duty, liability or standard of care to any third party, no third party shall have any rights or interest, direct or indirect, in this Agreement or the Services, and this Agreement is intended solely for the benefit of the Parties. The Parties expressly disclaim any intent to create any rights in any third party as a third-party beneficiary to this Agreement or the Services.

**21.** <u>Assignment:</u>  This Agreement shall inure to the benefit of, and shall be binding upon, the successors and assigns of the Parties. Neither Party may assign this Agreement or any right or delegate any duties of this Agreement without the prior written consent of the other Party.

IN WITNESS WHEREOF, this Professional Services Agreement has been executed as of the Effective Date.

| ELEVATED SOLUTIONS GROUP, LLC | ALEXANDER E. JONES |
|---|---|
| By: Joseph M. Dalessio | By: Alexander E. Jones |
| Its: Member/Manager | Its: Individual |
| Address: 706 W Ben White BLVD | Address: 1400 Barton Creek BLVD |
| Bldg B, Ste 188, Austin TX 78704 | Austin TX 78735 |

## PROFESSIONAL SERVICES AGREEMENT-IW PLATINUM SUPPLEMENT AFFILIATE PROGRAM

This Professional Services Agreement ("Agreement") is entered into as of **4 NOVEMBER 2022**, ("Effective Date"), by and between ELEVATED SOLUTIONS GROUP, LLC, ("Elevated" or "Consultant") and FREE SPEECH SYSTEMS LLC ("Free Speech" or "Client") (collectively herein Consultant and Client may be referred to as the "Parties.")

### RECITALS

A. Free Speech has an existing market for certain Dietary Supplement Products.

B. Free Speech has developed relationships within various industries to promote services and/or products and desires to participate in the IW PLATINUM SUPPLEMENT Affiliate Program.

C. Free Speech desires to retain Elevated as an independent contractor to perform certain professional services, as specified in this Agreement, and Elevated desires to provide such services to Free Speech.

D. The parties desire to enter into this Agreement to set forth the obligations and responsibilities.

In consideration of the mutual covenants contained herein and other good and valuable consideration, which is hereby acknowledged, the parties hereto agree as follows:

<u>Services</u>: Client hereby retains Consultant and Consultant hereby agrees to perform professional services as follows: facilitate and manage the direct communication, manufacturing, marketing, shipping, tracking, and accounting functions of the IW Platinum Supplement Affiliate Program. Elevated will work to pair Free Speech with various IW Platinum Dietary Supplement products as part of the IW Platinum Supplement Affiliate Program contained in Annex A of this agreement (See Annex A).

   a. The Services shall commence as of the effective date of this agreement.

   b. Free Speech will supply weekly Affiliate Program reports directly to Elevated. These reports will include the following at a minimum: Number of IW Platinum Supplement units sold, Cost of Shipping of IW Platinum Supplement units sold, cost of Credit Card Processing Fees associated with IW Platinum Supplement units sold. These reports will be submitted on or before Friday of each week.

   c. Free Speech will execute weekly payouts from the IW Platinum Supplement Affiliate Program to Elevated in accordance with the IW Platinum Supplement Affiliate Program services contained in Annex A of

this agreement (See Annex A). These weekly payouts will be submitted on or before Friday of each week.

**2. Term:** The term of this Agreement shall commence as of the Effective Date and shall continue in full force until terminated as provided herein.

**3. Compensation and Expenses:** Free Speech is authorized to deduct Credit Card Processing Fees (Not to Exceed 6%) and any wire transfer expenses from the IW Platinum Supplement Affiliate Program payout. Any profit share agreements will be split in accordance with "Annex A" of this agreement following the determination of "Net Sales". Net Sales will be determined after Free Speech deducts its related Credit Card Processing Fees and Elevated deducts its related Cost of Goods Sold fees. Free Speech will bill Elevated directly for any pro-rated Shipping Costs associated with the sale of any IW Platinum Supplement products. Any additional expenses must be communicated and mutually agreed upon by both parties. (See Annex A)

**4. Contractor's Representations:** Consultant hereby warrants and represents to the Client that: (i) Consultant has the experience, skill, and authority necessary to perform the Services, (ii) there is no actual or potential conflict of interest between the Services to be performed by Consultant under this Agreement and Consultant's business, financial or other interests, and Consultant shall immediately notify the Client of any actual or potential conflict of interest of which Consultant becomes aware during the term of this Agreement.

**5. Relationship of the Parties:** The Consultant under this Agreement is, and shall act as an independent contractor, and not as an agent, partner, or employee of Client. Nothing in this Agreement shall be construed to imply that Consultant its agents, officers or employees are employees of Client; or that this Agreement creates, in any manner, a partnership, joint venture, or other arrangement between Consultant and Client.

**6. Termination:** Either party may terminate this agreement with thirty (30) days prior written notice to the other. Termination of this Agreement will not eliminate any compensation owed to the Consultant at the time of termination as defined in the "Compensation and Expenses" or "Annex A" sections of this Agreement. In the event of a termination for any reason, Consultant shall only be entitled to the compensation provided for in the "Compensation and Expenses" or "Annex A" sections that has been earned. Consultant may suspend or terminate performance of Services for failure of Client to make payment hereunder in a timely manner.

2

7. Dispute Resolution. If a dispute arises of any kind under this Agreement the Client and Consultant shall first negotiate in good faith for a period of not less than thirty (30) days prior to taking any legal action. If a dispute cannot be resolved by negotiations of the Parties then either party may submit the dispute to binding arbitration. The prevailing party shall be entitled to recover from the other party all costs and expenses of suit, including attorney's fees reasonably incurred.

8. Limitation on liability. To the fullest extent permitted by Law and notwithstanding other provisions of this Agreement, in no event shall a Party be liable to the other Party, whether in contract, warranty, tort, negligence, strict liability, or otherwise, for special, indirect, incidental, multiple, consequential (including lost profits or revenues, business interruption damages and lost business opportunities), exemplary or punitive damages related to, arising out of, or resulting from performance or nonperformance of this Agreement.

9. Notices: Any notice of communication to be given under the terms of this Agreement shall be in writing and delivered in person or deposited in the United States Mail, postage prepaid, return receipt requested of by FEDEX overnight to the address in the signature block below. Notices will be effective upon receipt by the addressee.

10. Indemnification: Client shall indemnify, defend and hold harmless, Consultant, its parent and affiliates, and each of their officers, directors, employees, attorneys, sub-consultants, agents and successors and assigns (each an "Indemnified Party") from, for and against any and all claims, demands, suits, obligations, payments, liabilities, costs, fines, penalties, sanctions, taxes, judgments, damages, losses or expenses ("Loss") imposed by a third party upon Consultant or incurred in connection with a claim by a third party against the Consultant arising out of, relating to, or resulting from the Client's breach, or performance or non-performance of its obligations under this Agreement or Consultants work on the Property or association with Client (including reasonable attorneys' fees and costs). To the extent Consultant is required to participate in any third-party claims against Client in any legal proceedings, Consultant shall be compensated in accordance with this Agreement.

11. Interpretation: In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of authorship of any of the provisions of this Agreement. The headings and section titles contained in this Agreement are solely for convenience and do not constitute a part of this Agreement between the Parties, nor should they be used to aid in any manner in the interpretation of this Agreement.

12. Modification and Amendment: This Agreement shall not be altered, waived, or amended in any way, except in writing, signed by both Parties.

13. Counterparts/Electronic Delivery: This Agreement may be executed, and delivery of original signatures may be made in PDF format by electronic means, and in counterparts, all of which will be considered one and the same Agreement and will become effective when such counterparts have been signed and delivered, including by electronic means.

14. Severability: If any term, provision, or condition of this Agreement is held to be invalid, void, or unenforceable by a governmental authority and such holding is subject to no further appeal or judicial

review, then such invalid, void, or unenforceable term, provision or condition shall be deemed severed from this Agreement and all remaining terms, provisions and conditions of this Agreement shall continue in full force and effect. The Parties shall endeavor in good faith to replace such invalid, void or unenforceable provisions with valid and enforceable provisions which achieve the purpose intended by the Parties to the greatest extent permitted by law. If any provision of this Agreement is determined by any court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision will be stricken from this Agreement and the remainder of this Agreement will be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement.

**15.** No Waiver: No failure or delay on the part of a Party in exercising any of its rights under this Agreement or in insisting upon strict performance of provisions of this Agreement, no partial exercise by either Party of any of its rights under this Agreement, and no course of dealing, usage of trade or course of performance between the Parties shall constitute a waiver of the rights of either Party under this Agreement. Any waiver shall be effective only by a written instrument signed by the Party granting such waiver, and shall not operate as a waiver of, or estoppel with respect to, any subsequent failure to comply therewith. The remedies provided in this Agreement are cumulative and not exclusive of any remedies provided by law.

**16.** Entire Agreement: This Agreement contains the entire agreement and understanding between the Parties with respect to all of the subject matter contained in this Agreement, and merges and supersedes all prior agreements and representations by the Parties with respect to subject matter of this Agreement, whether written or oral.

**17.** Further Assurances: The parties hereby agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

**18.** Governing Law; Cost of Enforcement: This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

**19.** Headings; Construction: Headings or titles to sections or paragraphs of this Agreement are solely for the convenience of the parties and shall have no effect whatsoever on the interpretation of the provisions of this Agreement. All references to "section" or "sections" refer to the corresponding section(s) of this Agreement. All words used in this Agreement will be construed to be of such gender or number, as the circumstances require. Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms.

**20.** No Third-Party Beneficiaries: Nothing in this Agreement nor any action taken shall be construed to create any duty, liability or standard of care to any third party, no third party shall have any rights or interest, direct or indirect, in this Agreement or the Services, and this Agreement is intended solely for the benefit of the Parties. The Parties expressly disclaim any intent to create any rights in any third party as a third-party beneficiary to this Agreement or the Services.

**21.** <u>Assignment:</u>  This Agreement shall inure to the benefit of, and shall be binding upon, the successors and assigns of the Parties.  Neither Party may assign this Agreement or any right or delegate any duties of this Agreement without the prior written consent of the other Party.

IN WITNESS WHEREOF, this Professional Services Agreement has been executed as of the Effective Date.

| ELEVATED SOLUTIONS GROUP, LLC | FREE SPEECH SYSTEMS, LLC |
|---|---|
| By: Joseph M. Dalessio | By: Patrick Magill |
| Its:  Manager | Its: Manager |
| Address: 706 W Ben White BLVD | Address: PO Box 19549 |
| Bldg B, Ste 188, Austin TX 78704 | Austin TX 78760 |

5

# PROFESSIONAL SERVICES AGREEMENT-IW PLATINUM SUPPLEMENT AFFILIATE PROGRAM

## ANNEX A

IW Platinum Supplement Affiliate Program Services and Compensation

1. The initial launch of the IW Platinum Supplement Affiliate Program will consist of three (3) Dietary Supplement Products: 1 x Dietary Supplement supporting healthy testosterone levels, 1 x Dietary Supplement supporting the increase of lean muscle and a healthy libido, and 1 x Dietary Supplement supporting healthy pain relief. The profit share agreement on these initial three (3) products will be as follows:

    - 20% Profit Share of Net Sales paid to Free Speech every seven (7) days
    - 80% Profit Share of Net Sales paid to Elevated every seven (7) days

2. Additional Patriot Collectibles Affiliate Program Services and Compensation may be mutually agreed upon in writing through amendment to this agreement.

Modification and Amendment: Annex A of this agreement shall not be altered, waived, or amended in any way, except in writing, signed by both Parties.

IN WITNESS WHEREOF, this Professional Services Agreement has been executed as of the Effective Date.

| ELEVATED SOLUTIONS GROUP, LLC | FREE SPEECH SYSTEMS, LLC |
|---|---|
| By: Joseph M. Dalessio<br>Its: Manager | By: Patrick Magill<br>Its: Manager |

6