# EXHIBIT 2



**EXHIBIT 1**

11-07-

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
# ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)
NOTICE: Not For Use For Condominium Transactions

1. **PARTIES:** The parties to this contract are __Christopher R. Murray__ **in his capacity as chapter 7 trustee for the bankruptcy estate of Alexander E. Jones** (Seller) and __Texas ERW, LTD and/or assigns__ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:** The land, improvements and accessories are collectively referred to as the Property (Property).
   A. LAND: Lot __3__ Block _____ , __Back of the Moon, Amended Plat__ Addition, City of __Austin__ , County of __Travis__ , Texas, known as __5240 McCormick Mountain Drive__  __78734__ (address/zip code), or as described on attached exhibit.
   B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above described real property.
   C. ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.
   D. EXCLUSIONS: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: _____ _____ .
   E. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ............................................. $ __1,080,000.00__
      The term "Cash portion of the Sales Price" does not include proceeds from borrowing of any kind or selling other real property except as disclosed in this contract.
   B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum, ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum ................ $ _____
   C. Sales Price (Sum of A and B) ..................................................................... $ __1,080,000.00__

4. **LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)
   ☐ A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract.
   ☐ B. FIXTURE LEASES: Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.
   ☐ C. NATURAL RESOURCE LEASES: "Natural Resource Lease" means an existing oil and gas, mineral, water, wind, or other natural resource lease affecting the Property to which Seller is a party.
      ☐ (1) Seller has delivered to Buyer a copy of all the Natural Resource Leases.
      ☐ (2) Seller has not delivered to Buyer a copy of all the Natural Resource Leases. Seller shall provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Natural Resource Leases and the earnest money shall be refunded to Buyer.

TXR-1601         Initialed for identification by Buyer _MER_ _____ and Seller _____ _____    TREC NO. 20-17

Contract Concerning _____5240 McCormick Mountain Drive, Austin, TX  78734_____    Page 2 of 11    11-07-2022
(Address of Property)

**5. EARNEST MONEY AND TERMINATION OPTION:**
   A. DELIVERY OF EARNEST MONEY AND OPTION FEE: Within 3 days after the Effective Date, Buyer must deliver to _____Capital Title - Elizabeth Petter_____ (Escrow Agent) at _____6850 Austin Center Blvd. Suite 127 , Austin, TX  78731_____ (address): $ __10,000.00__ as earnest money and $__500.00__ as the Option Fee. The earnest money and Option Fee shall be made payable to Escrow Agent and may be paid separately or combined in a single payment.
   (1) Buyer shall deliver additional earnest money of $ _____ to Escrow Agent within _____ days after the Effective Date of this contract.
   (2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.
   (3) The amount(s) Escrow Agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.
   (4) Buyer authorizes Escrow Agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases Escrow Agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.
   B. TERMINATION OPTION: For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within __7__ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and Escrow Agent shall release any Option Fee remaining with Escrow Agent to Seller; and (ii) any earnest money will be refunded to Buyer.
   C. FAILURE TO TIMELY DELIVER EARNEST MONEY: If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.
   D. FAILURE TO TIMELY DELIVER OPTION FEE: If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this paragraph 5.
   E. TIME: **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

**6. TITLE POLICY AND SURVEY:**
   A. TITLE POLICY: Seller shall furnish to Buyer at [X] Seller's [ ] Buyer's expense an owner policy of title insurance (Title Policy) issued by _____Texas Living Title, LLC_____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
   (1) Restrictive covenants common to the platted subdivision in which the Property is located.
   (2) The standard printed exception for standby fees, taxes and assessments.
   (3) Liens created as part of the financing described in Paragraph 3.
   (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
   (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
   (6) The standard printed exception as to marital rights.
   (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
   (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:
   [X] (i) will not be amended or deleted from the title policy; or
   [ ] (ii) will be amended to read, "shortages in area" at the expense of [ ] Buyer [ ] Seller.
   (9) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.
   B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

TXR-1601    Initialed for identification by Buyer _MER_ and Seller _____    TREC NO. 20-17
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    Texas ERW, LTD

Contract Concerning _____5240 McCormick Mountain Drive, Austin, TX 78734_____ Page 3 of 11    11-07-2022
(Address of Property)

   C. **SURVEY:** The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)
- ☐ (1) Within _____ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s), Buyer shall obtain a new survey at ☐ Seller's ☐ Buyer's expense no later than 3 days prior to Closing Date.
- ☐ (2) Within _____ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.
- ☒ (3) Within **30** days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

   D. **OBJECTIONS:** Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (9) above; or which prohibit the following use or activity: **single family residential**_____.
Buyer must object the earlier of (i) the Closing Date or (ii) _____**5**_____ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, survey, or Exception Document(s) is delivered to Buyer.

   E. **TITLE NOTICES:**
- (1) **ABSTRACT OR TITLE POLICY:** Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
- (2) **MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S):** The Property ☒ is ☐ is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, or operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instruments may be obtained from the county clerk. <u>**You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.**</u>
Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request. **If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.**
- (3) **STATUTORY TAX DISTRICTS:** If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

TXR-1601        Initialed for identification by Buyer _MER_ and Seller _____ _____        TREC NO. 20-17
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201     www.lwolf.com         Texas ERW, LTD

| Contract Concerning | 5240 McCormick Mountain Drive, Austin, TX 78734 | Page 4 of 11   11-07-2022 |
|---|---|---|
| | (Address of Property) | |

    (4) **TIDE WATERS:** If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

    (5) **ANNEXATION:** If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

    (6) **PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER:** Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

    (7) **PUBLIC IMPROVEMENT DISTRICTS:** If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

    (8) **TRANSFER FEES:** If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

    (9) **PROPANE GAS SYSTEM SERVICE AREA:** If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

    (10) **NOTICE OF WATER LEVEL FLUCTUATIONS:** If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

    (11) **REQUIRED NOTICES:** The following notices have been given or are attached to this contract (for example, MUD, WCID, PID notices): _____

7. **PROPERTY CONDITION:**
   A. **ACCESS, INSPECTIONS AND UTILITIES:** Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.
   B. **SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):**
     (Check one box only)
    [X] (1) Buyer has received the Notice.
    [ ] (2) Buyer has not received the Notice. Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
    [ ] (3) The Seller is not required to furnish the notice under the Texas Property Code.
   C. **SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS** is required by Federal law for a residential dwelling constructed prior to 1978.
   D. **ACCEPTANCE OF PROPERTY CONDITION:** "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.

Contract Concerning _____**5240 McCormick Mountain Drive, Austin, TX  78734**_____ Page 5 of 11    11-07-2022
(Address of Property)

(Check one box only)
[X] (1) Buyer accepts the Property As Is.
[ ] (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____
_____.
(Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)

E. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F. COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, Seller shall complete all agreed repairs and treatments prior to the Closing Date and obtain any required permits. The repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. Seller shall: (i) provide Buyer with copies of documentation from the repair person(s) showing the scope of work and payment for the work completed; and (ii) at Seller's expense, arrange for the transfer of any transferable warranties with respect to the repairs and treatments to Buyer at closing. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete the repairs and treatments.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a provider or administrator licensed by the Texas Department of Licensing and Regulation. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ _____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

8. **BROKERS AND SALES AGENTS:**
   A. BROKER OR SALES AGENT DISCLOSURE: Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: _____
   _____.
   B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**
   A. The closing of the sale will be on or before _____**October 11**_____, **2024**_____, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
   B. At closing:
      (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
      (2) Buyer shall pay the Sales Price in good funds acceptable to the Escrow Agent.
      (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents, transfer of any warranties, and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
      (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.
      (5) Private transfer fees (as defined by Chapter 5, Subchapter G of the Texas Property Code) will be the obligation of Seller unless provided otherwise in this contract. Transfer fees assessed by a property owners' association are governed by the Addendum for Property Subject to Mandatory Membership in a Property Owners Association.

TXR-1601    Initialed for identification by Buyer _MER_ _____ and Seller _____ _____    TREC NO. 20-17
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    Texas ERW, LTD

Contract Concerning _____5240 McCormick Mountain Drive, Austin, TX  78734_____ Page 6 of 11    11-07-2022
(Address of Property)

10. **POSSESSION:**
    A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: [X] upon closing and funding [ ] according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**
    B. SMART DEVICES: "Smart Device" means a device that connects to the internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:
        (1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and
        (2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

11. **SPECIAL PROVISIONS:** (This paragraph is intended to be used only for additional informational items. An informational item is a statement that completes a blank in a contract form, discloses factual information, or provides instructions. Real estate brokers and sales agents are prohibited from practicing law and shall not add to, delete, or modify any provision of this contract unless drafted by a party to this contract or a party's attorney.) __This Agreement is subject to Bankruptcy Court approval. Notwithstanding anything to the contrary in this Agreement, the attached Trustee's Addendum Continued... See Addendum Special provisions 1_____ .

12. **SETTLEMENT AND OTHER EXPENSES:**
    A. The following expenses must be paid at or prior to closing:
        (1) Expenses payable by Seller (Seller's Expenses):
            (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
            (b) Seller shall also pay an amount not to exceed $ __zero_____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
        (2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.
    B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

13. **PRORATIONS:** Taxes for the current year, interest, rents, and regular periodic maintenance fees, assessments, and dues (including prepaid items) will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

14. **CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money

TXR-1601          Initialed for identification by Buyer _MER_ _____ and Seller _____ _____     TREC NO. 20-17

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   Texas ERW, LTD

Docusign Envelope ID: 57E48E50-5F80-43BF-864E-A0513ACBD466

Case 22-33553    Document 837-2    Filed in TXSB on 09/10/24    Page 8 of 19

| Contract Concerning | 5240 McCormick Mountain Drive, Austin, TX  78734 | Page 7 of 11    11-07-2022 |
|---|---|---|
| | (Address of Property) | |

will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

15. **DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

16. **MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

17. **ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or Escrow Agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

18. **ESCROW:**
    A. ESCROW: The Escrow Agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as Escrow Agent. Escrow Agent may require any disbursement made in connection with this contract to be conditioned on Escrow Agent's collection of good funds acceptable to Escrow Agent.
    B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, Escrow Agent may: (i) require a written release of liability of the Escrow Agent from all parties before releasing any earnest money; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow Agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means expenses incurred by Escrow Agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.
    C. DEMAND: Upon termination of this contract, either party or the Escrow Agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the Escrow Agent. If either party fails to execute the release, either party may make a written demand to the Escrow Agent for the earnest money. If only one party makes written demand for the earnest money, Escrow Agent shall promptly provide a copy of the demand to the other party. If Escrow Agent does not receive written objection to the demand from the other party within 15 days, Escrow Agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and Escrow Agent may pay the same to the creditors. If Escrow Agent complies with the provisions of this paragraph, each party hereby releases Escrow Agent from all adverse claims related to the disbursal of the earnest money.
    D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the Escrow Agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.
    E. NOTICES: Escrow Agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by Escrow Agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

TXR-1601    Initialed for identification by Buyer MER     and Seller _____    TREC NO. 20-17
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201    www.lwolf.com    Texas ERW, LTD

Docusign Envelope ID: 57E48E50-5F80-43BF-864E-A0513ACBD466

Contract Concerning _____5240 McCormick Mountain Drive, Austin, TX 78734_____ Page 8 of 11    11-07-2022
(Address of Property)

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

| To Buyer at: c/o Tony and Megan Rankin | To Seller at: Christopher R. Murray, Chapter 7 Trustee |
|---|---|
| 5008 Mcintyre Circle, TX 78734 | |
| Phone: (512)413-5275 | Phone: (832)529-1999 |
| E-mail/Fax: texasrankin@gmail.com | E-mail/Fax: chris@jonesmurray.com |
| E-mail/Fax: tonyrankin@austin.rr.com | E-mail/Fax: erin@jonesmurray.com |
| With a copy to Buyer's agent at: | With a copy to Seller's agent at: transactions@jwteam.com |

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

- [ ] Third Party Financing Addendum
- [ ] Seller Financing Addendum
- [X] Addendum for Property Subject to Mandatory Membership in a Property Owners Association
- [ ] Buyer's Temporary Residential Lease
- [ ] Loan Assumption Addendum
- [ ] Addendum for Sale of Other Property by Buyer
- [ ] Addendum for Reservation of Oil, Gas and Other Minerals
- [ ] Addendum for "Back-Up" Contract
- [ ] Addendum for Coastal Area Property
- [ ] Addendum for Authorizing Hydrostatic Testing
- [ ] Addendum Concerning Right to Terminate Due to Lender's Appraisal
- [ ] Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

- [ ] Seller's Temporary Residential Lease
- [ ] Short Sale Addendum
- [ ] Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
- [ ] Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law
- [ ] Addendum for Property in a Propane Gas System Service Area
- [ ] Addendum Regarding Residential Leases
- [ ] Addendum Regarding Fixture Leases
- [ ] Addendum containing Notice of Obligation to Pay Improvement District Assessment
- [X] Other (list): Non-Realty Items, ABA Continued... See Addendum Other 2

**23. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate brokers and sales agents from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's Attorney is: _____

Seller's Attorney is: _____

Phone: _____

Phone: _____

Fax: _____

Fax: _____

E-mail: _____

E-mail: _____

TXR-1601    Initialed for identification by Buyer [MER] ____ and Seller ____ ____    TREC NO. 20-17

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    Texas ERW, LTD

Contract Concerning _____**5240 McCormick Mountain Drive, Austin, TX 78734**_____ Page 9 of 11   11-07-2022
(Address of Property)

> **EXECUTED the _____ day of _____, _____ (Effective Date).**
> **(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

Signed by:
*Margaret E Rankin, President*                 9/6/2024
_____          _____
Buyer **Texas ERW, LTD and/or assigns**      Seller **Christopher R. Murray**
                                             in his capacity as chapter 7 trustee for the bankruptcy estate
                                             of Alexander E. Jones

_____          _____
Buyer                                        Seller

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-17. This form replaces TREC NO. 20-16.

TXR-1601                                                                                     TREC NO. 20-17

Contract Concerning _____5240 McCormick Mountain Drive, Austin, TX  78734_____   Page 10 of 11   11-07-2022
(Address of Property)

**BROKER INFORMATION**
(Print name(s) only. Do not sign)

| | |
|---|---|
| _____ | **Keller Williams Realty** _____ **9010968** |
| Other Broker Firm          License No. | Listing Broker Firm          License No. |
| represents  ☐ Buyer only as Buyer's agent | represents  ☐ Seller and Buyer as an intermediary |
| ☐ Seller as Listing Broker's subagent | ☒ Seller only as Seller's agent |
| _____ | **Jaymes Willoughby** _____ **348568** |
| Associate's Name          License No. | Listing Associate's Name          License No. |
| _____ | **The Jaymes Willoughby Team aka The JW Team** |
| Team Name | Team Name |
| _____ | **jaymes@jwteam.com** _____ **(512)347-9599** |
| Associate's Email Address          Phone | Listing Associate's Email Address          Phone |
| _____ | **Linda Ramsey** _____ **364174** |
| Licensed Supervisor of Associate          License No. | Licensed Supervisor of Listing Associate          License No. |
| _____ | **1801 S Mopac Blvd STE 100** _____ **(512)347-9599** |
| Other Broker's Address          Phone | Listing Broker's Office Address          Phone |
| _____ | **Austin**                    **TX**         **78746** |
| City          State          Zip | City          State          Zip |
| | _____ |
| | Selling Associate's Name          License No. |
| | _____ |
| | Team Name |
| | _____ |
| | Selling Associate's Email Address          Phone |
| | _____ |
| | Licensed Supervisor of Selling Associate          License No. |
| | _____ |
| | Selling Associate's Office Address |
| | _____ |
| | City          State          Zip |

Disclosure: Pursuant to a previous, separate agreement (such as a MLS offer of compensation or other agreement between brokers), Listing Broker has agreed to pay Other Broker a fee (_____). This disclosure is for informational purposes and does not change the previous agreement between brokers to pay or share a commission.

TXR-1601                                                                                                              TREC NO. 20-17

Contract Concerning _____**5240 McCormick Mountain Drive, Austin, TX 78734**_____  Page 11 of 11  11-07-2022
(Address of Property)

---

## OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____
is acknowledged.

_____  _____
Escrow Agent **Capital Title - Elizabeth Petter**                                                                    Date

---

## EARNEST MONEY RECEIPT

Receipt of $_____ Earnest Money in the form of _____
is acknowledged.

_____  _____
Escrow Agent                              Received by      Email Address                                      Date/Time

_____  _____
Address                                                                                                                    Phone

_____  _____
City                              State                     Zip                                                        Fax

---

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

_____  _____
Escrow Agent                              Received by      Email Address                                      Date

_____  _____
Address                                                                                                                    Phone

_____  _____
City                              State                     Zip                                                        Fax

---

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of $_____ additional Earnest Money in the form of _____
is acknowledged.

_____  _____
Escrow Agent                              Received by      Email Address                                      Date/Time

_____  _____
Address                                                                                                                    Phone

_____  _____
City                              State                     Zip                                                        Fax

---

TXR-1601                                                                                                               TREC NO. 20-17

# ADDENDUM

PROPERTY: **5240 McCormick Mountain Drive, Austin, TX 78734**

**1) Special provisions**
**controls the terms of this Agreement. The Bankruptcy Court for the Southern Distirct of Texas, Houston Division, shall have exclusive jurisdiction to interpret, enforce, and/or resolve any disputes related to this Agreement. The Trustee's Addendum is hereby incorporated by references as if fully incorporated herein.**
**2) Other**
**Disclosure, General Info to Buyers & Sellers, Trustee's Addendum**

Date: 9/6/2024

Signed by:
*Margaret E Rankin, President*
Signature

Date:

Signature

Date:                                 Signature   Christopher R. Murray, in his capacity as chapter 7 trustee for the bankruptcy estate of Alexander E. Jones

Date:

Signature

**Addendum**




PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC) 11-07-2022

# ADDENDUM FOR PROPERTY SUBJECT TO MANDATORY MEMBERSHIP IN A PROPERTY OWNERS ASSOCIATION
(NOT FOR USE WITH CONDOMINIUMS)
ADDENDUM TO CONTRACT CONCERNING THE PROPERTY AT

**5240 McCormick Mountain Drive**     **Austin**
(Street Address and City)

**Back of the Moon HOA**
(Name of Property Owners Association, (Association) and Phone Number)

**A. SUBDIVISION INFORMATION:** "Subdivision Information" means: (i) a current copy of the restrictions applying to the subdivision and bylaws and rules of the Association, and (ii) a resale certificate, all of which are described by Section 207.003 of the Texas Property Code.
(Check only one box):

[X] 1. Within **15** days after the effective date of the contract, Seller shall obtain, pay for, and deliver the Subdivision Information to the Buyer. If Seller delivers the Subdivision Information, Buyer may terminate the contract within 3 days after Buyer receives the Subdivision Information or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer. If Buyer does not receive the Subdivision Information, Buyer, as Buyer's sole remedy, may terminate the contract at any time prior to closing and the earnest money will be refunded to Buyer.

[ ] 2. Within _____ days after the effective date of the contract, Buyer shall obtain, pay for, and deliver a copy of the Subdivision Information to the Seller. If Buyer obtains the Subdivision Information within the time required, Buyer may terminate the contract within 3 days after Buyer receives the Subdivision Information or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer. If Buyer, due to factors beyond Buyer's control, is not able to obtain the Subdivision Information within the time required, Buyer may, as Buyer's sole remedy, terminate the contract within 3 days after the time required or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer.

[ ] 3. Buyer has received and approved the Subdivision Information before signing the contract. Buyer [ ] does [ ] does not require an updated resale certificate. If Buyer requires an updated resale certificate, Seller, at Buyer's expense, shall deliver it to Buyer within 10 days after receiving payment for the updated resale certificate from Buyer. Buyer may terminate this contract and the earnest money will be refunded to Buyer if Seller fails to deliver the updated resale certificate within the time required.

[ ] 4. Buyer does not require delivery of the Subdivision Information.

The title company or its agent is authorized to act on behalf of the parties to obtain the Subdivision Information ONLY upon receipt of the required fee for the Subdivision Information from the party obligated to pay.

**B. MATERIAL CHANGES.** If Seller becomes aware of any material changes in the Subdivision Information, Seller shall promptly give notice to Buyer. Buyer may terminate the contract prior to closing by giving written notice to Seller if: (i) any of the Subdivision Information provided was not true; or (ii) any material adverse change in the Subdivision Information occurs prior to closing, and the earnest money will be refunded to Buyer.

**C. FEES AND DEPOSITS FOR RESERVES:** Buyer shall pay any and all Association fees, deposits, reserves, and other charges associated with the transfer of the Property not to exceed $ **250.00** and Seller shall pay any excess. This paragraph does not apply to: (i) regular periodic maintenance fees, assessments, or dues (including prepaid items) that are prorated by Paragraph 13, and (ii) costs and fees provided by Paragraphs A and D.

**D. AUTHORIZATION:** Seller authorizes the Association to release and provide the Subdivision Information and any updated resale certificate if requested by the Buyer, the Title Company, or any broker to this sale. If Buyer does not require the Subdivision Information or an updated resale certificate, and the Title Company requires information from the Association (such as the status of dues, special assessments, violations of covenants and restrictions, and a waiver of any right of first refusal), [ ] Buyer [ ] Seller shall pay the Title Company the cost of obtaining the information prior to the Title Company ordering the information.

**NOTICE TO BUYER REGARDING REPAIRS BY THE ASSOCIATION:** The Association may have the sole responsibility to make certain repairs to the Property. If you are concerned about the condition of any part of the Property which the Association is required to repair, you should not sign the contract unless you are satisfied that the Association will make the desired repairs.

Signed by:
*Margaret E Rankin, President*     9/6/2024

Buyer **Texas ERW, LTD and/or assigns**     Seller **Christopher R. Murray** , in his capacity as chapter 7 trustee for the bankruptcy estate of Alexander E. Jones

Buyer     Seller

The form of this addendum has been approved by the Texas Real Estate Commission for use only with similarly approved or promulgated forms of contracts. Such approval relates to this contract form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (www.trec.texas.gov) TREC No. 36-10. This form replaces TREC No. 36-9.

TXR-1922     TREC NO. 36-10
Keller Williams Realty, 1801 S Mopac Blvd STE 100 Austin TX 78746     Phone: 5123479599     Fax: 5128577983     Texas ERW, LTD
Jaymes Willoughby     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201     www.lwolf.com

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE

Seller: Alex E. Jones

Buyer: Texas ERW, LTD

Property Address: 5240 McCormick Mountain Drive, Austin, TX 78734

Date: 8/20/2024      From(Agent): Jaymes Willoughby      Office: Keller Willliams Realty SW Market Center

This is to give you notice that your real estate office KW MC 1 Ltd or KW MC 8 Ltd, ("Keller Williams Real Estate Offices"), with which your agent and broker is affiliated, has a business relationship and ownership interest ranging from an estimated 1% to 9% in Texas One Title, LLC, Primrose Title, LLC and/or Texas Living Title, LLC ("Title Companies"). Your agent or broker may also have an ownership interest in Title Companies ranging from an estimated 1% to 5%. Because of these relationships, this referral may provide Keller Williams Real Estate Offices, agents, and/or owners of Title Companies a financial or other benefit. Keller Williams Realty, Inc. ("KWRI"), which is the franchisor of Keller Williams Real Estate Offices has a business relationship with Keller Williams Real Estate Offices with which your agent and broker is affiliated. Certain officers and directors, of KWRI, have an indirect ownership in the Real Estate Offices ranging from an estimated 1 to 15%. KWRI also has a business relationship with City View Home Lending, Keller Mortgage, and Keller Covered to which it is affiliated. Because of these relationships, this referral may provide KWRI owners, officers or directors a financial or other benefit.

Notice is also given for Shaddock Holdings, LLC ("Shaddock"), which also owns 51% of Title Companies and Capital Title, LLC ("CTOT"). CTOT, has a business relationship with UNITED TAX SERVICE, INC.; UNITED E-RECORDING, LLC; PREMIER SURVEYING, LLC; CAMBRIDGE INSURANCE AGENCY, LLC; WILLOWBEND MORTGAGE COMPANY, LLC; SHADDOCK & ASSOCIATES, PC; with ownership ranging from 1% to 100%. CTOT also has a business relationship with First National Title Insurance Company, which is a title insurance underwriting company to which CTOT is affiliated. Because of this relationship, this referral may provide Shaddock Holdings, LLC a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use the listed providers as a condition for settlement of your loan on or purchase, sale, or refinance of the subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| Service Provider | Services Provided | Charge or Range of Charges |
| --- | --- | --- |
| Primrose Title, LLC<br>Texas Living Title, LLC<br>Capital Title, LLC<br>Texas One Title, LLC | Title Operations | 1% of loan amount |
| City View Home Lending | Mortgage Broker Lending Services | 1-3.5% of loan amount |
| Keller Mortgage<br>Willowbend Mortgage | Mortgage Lender | 1-6% of loan amount |
| Keller Covered<br>Cambridge Insurance Agency, LLC | Home Owners Insurance | 1-2% of property value |
| United Tax Service, Inc. | Tax Certificates | $59.80-79.80 |
| United E-Recording | Electronic document recordation | $4.00-$10.00 per recorded document |
| Premier Surveying, LLC | Surveyor | $400-1500 |
| Shaddock & Associates | Document Preparation | $75-$425 |
| First National Title Insurance Agency | Title Insurance | 15% of Title Insurance Premium |

**ACKNOWLEDGMENT**

I/we have read this disclosure form and understand that the referring party is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

Seller _____      Seller _____

Christopher R. Murray, in his capacity as chapter 7 trustee for the bankruptcy estate of Alexander E. Jones

Buyer *Margaret England Rankin, President* 8/20/2024      Buyer _____



APPROVED BY THE TEXAS REAL ESTATE COMMISSION (TREC)    10-10-11
FOR VOLUNTARY USE

# NON-REALTY ITEMS ADDENDUM

TO CONTRACT CONCERNING THE PROPERTY AT

**5240 McCormick Mountain Drive, Austin, TX  78734**
(Address of Property)

**A.** For an additional sum of $ **20,000.00** and other and good valuable consideration, Seller shall convey to Buyer at closing the following personal property (specify each item carefully, include description, model numbers, serial numbers, location, and other information):

**All furniture, furnishings, appliance, and contents of the garage that was at the home on August 18th, 2024. Two golf carts described as "Electric Car,  Model No LT-A627 4+2" and Gas Powered Cart Serial number 3404453 Model 657075G01**

**C. (continued from paragraph C. below).   This Agreement is subject in all respects to the Trustee's Addendum and Bankruptcy Court approval.**

**B.** Seller represents and warrants that Seller owns the personal property described in Paragraph A free and clear of all encumbrances.

**C.** Seller does not warrant or guarantee the condition or future performance of the personal property conveyed by this document.

Signed by:
*Margaret E Rankin, President*   9/6/2024
Buyer
**Texas ERW, LTD and/or assigns**

Seller
**Christopher R. Murray**
in his capacity as chapter 7 trustee for the bankruptcy estate of Alexander E. Jones

Buyer      Seller

This form has been approved by the Texas Real Estate Commission for voluntary use by its licensees. Copies of TREC rules governing real estate brokers, salesperson and real estate inspectors are available at nominal cost from TREC. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov)

(TXR-1924) 10-10-11      TREC NO. OP-M

**TRUSTEE'S ADDENDUM**

**PROPERTY**: the land, improvements and accessories located at Lot 3, Back of the Moon, Amended Plat Addition, City of Austin, County of Travis, known as 5420 McCormick Mountain Drive, Austin, Texas 78734 (the "**Property**")

a. Christopher R. Murray is the duly appointed Chapter 7 Trustee for the bankruptcy estate of Alexander E. Jones (the "**Debtor**"), Case No. 22-33553 pending before the Bankruptcy Court for the Southern District of Texas, Houston Division.

b. In the event of a conflict between the terms and provisions of the printed portions of the *One to Four Family Residential Contract (Resale)* and any attachments or addenda thereto (the "**Agreement**") and this Addendum, the terms and provisions of the Addendum shall govern, control and prevail.

c. The Agreement is subject to Bankruptcy Court approval in all respects.

d. A Bankruptcy Court Order authorizing the sale "free and clear of liens, claims, and interests" shall cure all objections Buyer may have to any defect or encumbrance to the title.

e. Transfer shall be by a Trustee's special warranty deed. Copy of a sample deed available upon request.

f. Trustee may continue to market the Property after accepting a contract and before court approval. Trustee may accept a higher offer and terminate any contract without penalty after closing and prior to court approval.

g. Notwithstanding any statement to the contrary in any portion of the Agreement or any related document, any dispute related to this contract shall be heard before the Bankruptcy Court for the Southern District of Texas, Houston Division, without the need for mediation.

h. Seller offers no warranties on the sale, including but not limited to warranties of condition, habitability or suitability of the property. Sale is as-is where-is with all faults. Seller is a bankruptcy trustee and has no knowledge regarding the condition of the Property.

i. Buyer(s) further acknowledges and agrees that having been given the opportunity to inspect the Property, other than the warranties, representations or covenants (if any) in this addendum and the title warranties in the deed, Buyer(s) is relying solely on its own investigation of the Property and not on any information provided or to be provided by Seller.

j. Buyer(s) further acknowledges and agrees that any information provided or to be provided with respect to the Property was obtained from a variety of sources and that Seller has not made any independent investigation or verification of such information and makes no representations as to the accuracy or completeness of such information. Except as stated herein, Seller is not liable or bound in any manner by any verbal or written statements, representations or information pertaining to the Property, or the operation thereof, furnished

Initial: MERP

   by any real estate broker, agent, employee, servant or other person, including the Debtor, Buyer further acknowledges and agrees that the maximum extent permitted by law, the sale of the Property as provided for extent herein is made on an "AS IS, WHERE IS" and "WITH ALL FAULTS" basis, and Buyer(s) expressly acknowledges that, in consideration of the agreements of Seller, except as stated herein, Seller makes no warranty or representation, expressed or implied, or arising by operation of law, including, but not limited to, any warranty of condition, title, habitability, merchantability or fitness for a particular purpose with respect to the Property or any portion thereof. It is understood and agreed that the purchase price has been adjusted by prior negotiation to reflect that all of the Property being sold by Seller and purchased by Buyer(s) subject to the foregoing. The provisions of this section will survive closing.

k. Buyer(s) acknowledges and agrees that Seller holds title to the Property, if at all, through appointment by the Bankruptcy Court and therefore, Seller sells all that right, title and interest held by the Bankruptcy Estate. Seller has little, if any, knowledge of the physical or economic characteristics of the property. Furthermore, this sale is contingent on Court approval and Buyer(s) acknowledges title to be conveyed by "Special Warranty Deed" or similar instrument. Accordingly, except as expressly stated in this Agreement and the warranties of the Deed, Buyer(s) acknowledges and agrees that Seller has not made, does not make and specifically negates and disclaims any representations, warranties, promises, covenants, agreements or guarantees of any kind or character, whether expressed or implied, oral or written, past, present or future, of, as to, concerning or with respect to (a) the value, nature, quality, quantity, or condition of the Property, including, the water, soil and geology; (b) the income to be derived from the Property; (c) the suitability of the Property for any and all activities and uses which Buyer(s) may conduct thereon; (d) the compliance of or by the Property or its operation with any laws, rules, ordinances or regulations or any applicable governmental authority or body; (e) the habitability, merchantability, marketability, profitability or fitness for a particular purpose of the Property; (f) the manner or quality of the construction or materials, if any, incorporated into the Property; (g) the manner, quality, state of repair or lack of repair of the Property; or (h) any other matter with respect to the Property. Additionally, except as expressly stated in this Agreement, Seller has not made, does not make and specifically disclaims any representations regarding compliance with any environmental protection, pollution or land use laws, rules, regulations, orders or requirements, including solid waste, as defined by the U.S. Environmental Protection Agency Regulations at 40 C.F.R., Part 261., or the disposal or existence, in or on the property, of any hazardous substance, as defined by the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended, and regulations promulgated thereunder; the Resource Conservation and Recovery Act of 1976, as amended, the Texas Water Code, the Texas Solid Waste Disposal Act and the regulations adopted thereunder and/or any other applicable governmental law or authority, or the presence, handling, release, transportation or disposal of any hazardous materials or any other hazardous or toxic substances on, under, around or above the Property, or the Property's compliance or noncompliance with any federal, state or local law, ordinance or regulation relating to the environmental condition of the Property, including, but not limited to, the Endangered Species Act, 16 U.S.C. Section 15341 , et seq, and the Clean Water Act, 33 U.S.C. Section 12541, et seq.

CHRISTOPHER MURRAY, CHAPTER 7 TRUSTEE  [BUYER]



|  |  Signed by: Megan England Rankin, President |
| --- | --- |
| Date:_____ | [Buyer] Date: 9/6/2024_____ |

[Buyer]

Date:_____