# EXHIBIT 2

**AGENCY AND MARKETING AGREEMENT**

This Agency and Marketing Agreement (the "Agreement") entered into this _____ day of August, 2024, between Tranzon Asset Advisors of Texas, LLC, located at 945 McKinney St, #13384, Houston, TX 77002 (hereinafter as "Tranzon" or "Agent") and Christoher R. Murray, Chapter 7 Trustee for the Estate of Alexander E. Jones (Case #22-33553) & not individually, located at 602 Sawyer St, Ste. 400, Houston, TX 77007 (the "Seller").

**1. EXCLUSIVE RIGHT TO SELL AGREEMENT:** The Seller hereby grants the Agent the *Exclusive Right to Sell* the following described real property, together with all improvements and appurtenances unless otherwise excepted. Further, the Seller authorizes Agent to offer and/or solicit to the general public and all potential interested parties and Agent may offer the Property for sale at auction, sealed bid, hybrid sealed bid, online bidding, a combination of any of these methods, or through private negotiations with potential buyers during the term of this Agreement. Seller agrees to refer to Agent all inquiries that Seller may have received prior to, during the term of and any continuance of this Agreement. The Property is commonly described as follows:

The real property (the "Property or Properties") described on Exhibit "A"

**2. FEES AND EXPENSES:** The Agent will charge the Seller a six-percent (6%) commission (the "Commission") based on the total contract sales price. As a commission fee for auction and marketing services rendered the Agent shall receive the Commission in its entirety and the payment of the Commission is a condition of closing.

**3. TERM:** Agreement's term of duration shall begin on the effective date that all parties enter this Agreement and will continue until ninety (90) days following the published auction date or until the date of closing and settlement. Upon expiration of the Agreement or any extension thereof, Agent shall have the right to submit to Seller a list of all prospects obtained by Agent or with whom Agent has negotiated regarding the purchase of the Property. If within ninety (90) days of the expiration of the Agreement or any extension thereof the Seller sells, leases, or otherwise transfers the Property or any portion thereof to any prospect listed, then Seller shall pay to Agent the fee set forth in this Agreement. All compensation due to Agent will be paid to the Seller and distributed to Agent subject to Court approval. The Seller also agrees to pay Agent the fee provided above, based on the accepted total sale price of the Property, if (a) Seller agrees in writing to a sale of the Property and (b) thereafter the sale is not closed due to (i) the unwillingness of the Seller to close the sale, or (ii) the failure or inability of Seller to provide marketable title such that any title insurance company would insure.

**4. MARKETING & EXPENSES:** The Agent agrees to incur up to Twenty-Five Thousand and 00 Dollars ($25,000.00) for the marketing, advertising and travel expenses (the "Expenses") to conduct the sale. Such anticipated expenses are detailed on Exhibit B attached. All Expenses will be reimbursed to the Agent at the time of settlement. The Agent shall provide a final accounting and report for the Seller prior to closing and settlement.

**5. BUYER BROKER COOPERATION:** Agent offers a referral fee (the "Referral Fee") of one percent (1%) of the high bid price to a buyer's broker who properly registers a client that subsequently closes the transaction, provided that the buyer's broker complies with all terms and conditions of the Auction Broker Registration Agreement.

**6. DATE AND TIME OF AUCTION:** TBD but no later than eight weeks following U.S. Bankruptcy Court approval of the motion to sell property free & clear of all liens and encumbrances. Agent reserves the right to reschedule the date of any auction for cause with Seller's approval of the rescheduling or advancement.

**7. PUBLIC INSPECTIONS:** TBD, or approximately one week prior to the auction dates.

**8. CLOSING DEADLINE:** Thirty (30) days from the effective date of the Purchase and Sale Agreement.

**9. TYPE AND METHOD OF AUCTION:** Seller agrees to offer the Property for sale to the general public by the following method of auction:

   **Online Auction:** This type of auction is conducted with the use of timed internet bidding and extended bidding.

The auction will be conducted as the following Method of sale:

1

Initials: _____, _____, _____

**Reserve Auction:** Seller shall offer the Properties to the buying public subject to a Reserve Price to be approved by the Seller for each Property upon completion of a physical inspection and recommendation from Tranzon. Once the high bid has reached the reserve amount the Seller specifies, and/or Seller and Agent further agree to accept the highest current bid on or before the end of the bidding, the auction will <u>automatically convert to an absolute sale</u> and the Agent further has the Seller's full authorization to notify bidders that the Property will sell to the highest bidder and the reserve price has been met.  Seller may reduce or remove the reserve amount at any time upon notice to the Agent but is prohibited and disabled from increasing the reserve unless agreed to in writing with the Agent.

---

**10. PERFORMANCE BY BUYER:** It is expressly agreed and understood that Agent does not guarantee performance or funds presented by the high bidder and, therefore, shall not be responsible if, for any reason, the high bidder refuses to submit a written offer conforming to the bidding at the auction sale, nor shall Agent be responsible if the high bidder fails to perform its agreement to purchase or to comply with escrow instructions that may thereafter be executed.

**11. EARNEST MONEY DEPOSITS:** Within one (1) business day (or as stipulated in the purchase agreement) of being declared the winning bidder, the buyer(s) shall tender to Agent or designated title company a deposit of ten percent (10%) of the Total Sale Price (the "Total Deposit"). The Total Deposit is to be considered non-refundable earnest money and applied toward the Total Sale Price at closing or forfeited to the Seller should the buyer(s) default under the terms of the purchase agreement. A bidding deposit (the "Bid Deposit") may be enforced and required through a valid credit card hold prior to permitting any or all parties to bid on the Property.

**12. DEFAULT OF BUYER:** In the event of default of the purchase agreement by the buyer(s), the Total Deposit will be considered forfeited by buyer(s) to Seller as stipulated in the purchase agreement.  Immediately upon collecting the Total Deposit the Seller shall, without delay, tender one-half (1/2) of the Total Deposit to the Agent as a service fee or as further agreed by the Agent and Seller.

**13. PRORATIONS AND REQUIRED FEE PAYMENTS:** All real estate taxes and leases due and payable, if any, shall be prorated to the date of closing, as is standard and common practice to the area in which the Property is located.  All delinquent taxes, if any, shall be paid by the Seller from the first proceeds of closing. All deposits of tenants shall be turned over to the buyer at closing, if applicable and available.

**14. AGENT'S STATEMENTS:** Seller understands that the Agent must entice buyers to participate in the auction event. Seller hereinafter authorizes Agent to inform prospective buyers that they may anticipate paying at or below market or appraised value. Seller consents to Agent providing press releases and Agent may conduct interviews with media sources prior to and after the auction and to disclose any information unless otherwise deemed confidential in writing.  Should Seller be contacted, through any method of in-person and/or electronic means, the Seller will inform the media that the Agent will be in contact with them by the next business day. The Agent requests that the Seller request from the media representative their identification information, but that is not a requirement of this Agreement.

**15. DISPUTE RESOLUTION AND VENUE:** This Agreement and the obligations of the parties hereunder shall be governed in all respects by the United States Bankruptcy Code and, lacking applicable law thereunder, the laws of the State of Texas. Any dispute arising under or in connection with this Agreement or related to any matter, which is the subject of this Agreement shall be subject to the exclusive jurisdiction and venue of the United States Bankruptcy Court for the Southern District of Texas.. To facilitate judicial resolution and save the parties time and expense, any right to trial by jury is hereby waived by the parties. The Agent and Seller further agree that whichever party prevails in the legal action shall have the right to collect all costs, fees, and expenses, including, but not limited to, reasonable attorney fees for enforcement or defense of its rights under this Agreement.

**16. SELLER'S OBLIGATIONS:** Seller shall (i) reasonably cooperate and use their best efforts to bring about a sale of the Property, (ii) assist in and/or pay the costs related to preparing the Property for the auction sale as requested by Agent, and (iii) provide Agent with any reasonably requested information to assist in the marketing or sale of the Property. Seller shall refer any and all inquiries regarding the Property to the Agent. Seller shall convey the Property by Special Warranty Deed or similar instrument from the owner(s) of record, subject to any easements and restrictions of record not adversely affecting title. Title to the Property shall be free and clear of any and all liens and encumbrances. If Seller fails to deliver free and clear

2



Initials: _____, _____, _____

title, the buyer is solely entitled to a return of the Total Deposit. If Seller fails to deliver free and clear title, Seller shall still be liable for the payment of any and all commissions or expenses due to the Agent as detailed in this Agreement and/or further expenses approved by Seller but yet unpaid.

The Seller specifically acknowledges and understands that where Seller knows of facts materially affecting the value or desirability of the Property, whether said facts are readily observable or not readily observable, the Seller is under a duty to disclose said facts to the Agent. Seller agrees to indemnify and hold harmless Agent and those relying thereon for damages resulting from the inaccuracy of said information and from Seller's failure to disclose any facts materially affecting the value or desirability of the Property.

All of Seller's Obligations under this Agreement are contingent upon approval of this agreement by the United States Bankruptcy Court for the Southern District of Texas.

**17. AGENT'S OBLIGATIONS:** Agent will use its best efforts to obtain the highest available bid for the Property at the auction sale and to endeavor to have the high bidder submit a written offer in the form of a deposit and receipt purchase contract in customary form conforming to the highest bid. Agent shall manage the marketing and advertising activities of this event and report to the Seller the response of the public to the marketing campaign. Agent may engage other real estate brokers and agents to place the Property into the multiple listing services and the Agent will be responsible for any associated costs or expenses. Agent is representing the Seller in this transaction and owes all fiduciary responsibilities to the Seller.

**18. INSPECTIONS:** Seller will allow Agent to enable prospective buyers to reasonably inspect the Property or have an inspector/engineer investigate and prepare a report before and/or after the auction. Allowing the buyer to inspect, survey or have professional reports prepared for their use does not negate or alter, in any manner, the "AS-IS, WHERE-IS" condition of the purchase by the buyer. All surveys and additional investigations of the Property shall be at the sole expense of the buyer. Buyer shall obtain acceptable proof of liability, health and/or workman's comp insurance specifically naming the Seller and Agent as an "Additional Insured Party" before undertaking any activity at the Property.

**19. CLOSING COSTS:** The Seller will pay for title insurance policy, deed preparation, pre-auction title search, and their own attorney fees, if any. The buyer shall pay all other costs of transfer and closing including title insurance policy, taxes due for the full current year and any future year. Should the Seller determine to have a certified land boundary survey completed prior to the auction then, unless otherwise noted, the Seller and buyer will equally divide and settle the cost for the land survey at closing.

**20. TERMS AND CONDITIONS:** The Property is sold in AS-IS, WHERE IS condition. The buyer(s) shall be responsible for their own inspection. In the purchase agreement, the buyer(s) will indemnify the Agent and Seller from any and all liability resulting from their purchase of the aforementioned Property and this release shall survive closing, indefinitely.

**21. ITEMS TO BE FURNISHED BY THE SELLERS:** Any appraisal, title opinion/policy, copy of current deed, copy of tax or utility bills, environmental studies, engineering/safety/occupancy study or report, plat, survey, lease agreement, etc. the Seller possesses or has reasonable access. These documents may be utilized in the marketing at the discretion of the Seller and Agent.

**22. AGENT'S NON-REPRESENTATION AND SELLER'S MOTIVATION:** Seller acknowledges that Agent has made no representation as to the appraised value or Total Sale Price that the market will produce. Seller is motivated and eager to sell the Property in an expeditious manner. Seller understands that an accelerated sale without buyer escape clauses in the purchase agreement offered in "AS-IS, WHERE-IS" condition may cause buyers to discount their offers to adjust for relinquishing their ability to furnish an offer with contingencies, repair allowances and on his/her timetable.

**23. HEADINGS:** The headings in this Agreement are for convenience only and are not a part of the Agreement of the parties, nor shall they be used to interpret this Agreement.

**24. SEVERABILITY:** If any part of this Agreement is invalid, unconstitutional, and/or unenforceable, the remainder of this Agreement shall continue to be valid, constitutional, and enforceable. This Agreement is the entire Agreement of the parties concerning the Agent's engagement, replacing all prior negotiations, representations and agreements. If Seller breaches this Agreement, Seller shall pay Agent any costs and fees, including attorney fees, incurred in enforcing or protecting its rights.

3



Initials: _____, _____, _____

**25. ATTACHMENTS:** Any future documentation, addendum or attachment shall be in writing, signed by all parties and attached to this Agreement.

**26. COPY:** Any copy of this Agreement, either by facsimile or duplicated via any electronic means shall have the same force and effect of the original document.

**27. COMPLIANCE WITH EQUAL RIGHTS AND EQUAL HOUSING GUIDELINES:** The parties to this Agreement shall comply with all local, state, and federal law or governing regulations regarding equal access, equal housing or equal rights, without exception.

**28. PERSONAL PROPERTY, FURNITURE, FIXTURES & EQUIPMENT:** _____

**29. ONLINE/INTERNET BIDDING:** In the event of a default on the purchase contract by a buyer or in the event of any failure by a high bidder to execute and deliver a purchase contract with additional deposit monies as required by the terms and conditions of the auction, any monies deposited by such buyer or bidder shall be forfeited. Notwithstanding the foregoing and notwithstanding any provision of the terms and conditions of the auction that might suggest otherwise, Seller acknowledges that credit card information is provided by registering bidders as a means of authenticating bidder identity and Agent will not likely be able effectively to charge a defaulting buyer or defaulting high bidder's credit card for any liquidated damages or other penalties. Agent cannot disclose max bids to the Seller for an online auction event. Additionally, Seller agrees not to hold the Agent responsible for any technical issues that may arise during an online auction event.

**30. ABSENTEE BIDDING PROCEDURES**: The Seller permits the Agent to accept telephonic, internet originated or absentee bids, if permitted by law, under the same terms and conditions as the auction is conducted to include bidder initial deposit requirements, acceptance of any special instructions, signing a binding purchase and sale agreement, and acceptance and acknowledgement of terms of sale by absentee bidder.

**31. OTHER REQUIRED DOCUMENTATION:** Due to local, state, or federal statute or regulation, there may be additional documentation that is required. Seller agrees to accept, approve, and file with Agent any required reports, disclosures, or forms without undue delay.

**32. PRE-AUCTION TITLE SEARCH:** Seller authorizes Agent to engage a nationally recognized title insurance provider through its local or regional agent, or a title company/attorney of the Seller's choosing, to perform a title search and issue a commitment for title insurance prior to the auction event. Commitment will be provided to prospective purchasers in order to provide assurance that they will receive free and clear title at closing, and that title insurance is available at closing, if the buyer elects to purchase said title insurance at their expense. The cost of this title search will be the responsibility of the Seller, at closing, as listed in Section 19 of this Agreement.

**33. SURVIVORSHIP OF AGREEMENT:** This Agreement, amendments, attachments, and codicils shall be binding on all parties, their heirs, administrators, assigns and trustees that may be assigned by any court of adequate jurisdiction and/or by previous agreement, corporate resolution and/or the binding will or estate instructions as applicable.

**34. FORCE MAJEURE:** Agent or Sellers shall not be required to perform any obligation under this Agreement or be liable to each other for damages so long as performance or non-performance of the obligation is disrupted, delayed, caused, or prevented by Force Majeure. "Force Majeure" is understood to mean hurricanes, epidemic and/or pandemics, floods, extreme weather, earthquakes, fire, or other acts of God, unusual transportation delays, wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods will be extended a reasonable time (to be interpreted as thirty (30) calendar days) after the Force Majeure no longer prevents performance under this Agreement.

**35. COUNTING TIME:** Time shall be considered as calendar days unless otherwise stipulated.

**36. TRANZON, LLC NOT A PARTY TO AGREEMENT:** Seller understands that Agent/Auction Firm is independently owned and operated and uses the Tranzon name by license from Tranzon, L.L.C., which is not a party to, and in no way is or will be involved in the sale of the Property listed in this Agreement.

4

Initials: _____, _____, _____

**Seller and Agent Acceptance of the terms of the Agreement.**
The undersigned Seller is the owner or agent of the owner of the Property and is duly authorized to contract for the legal sale of the Property, including attachments, appurtenances and legal right, title and interests the Seller holds. All parties to this Agreement hereby acknowledge and accept that this is the full and entire Agreement, any counterparts, exhibits and/or addenda to this Agreement shall be in writing, delivered either electronically, by post or express mail, by an agent of the sending party or personal delivery.

**SELLER:   CHRISTOPHER R. MURRAY AS CHAPTER 7 TRUSTEE FOR THE ESTATE OF ALEXANDER E. JONES & NOT INDIVIDUALLY**

BY: _____ Date: _____
**Christopher R. Murray**
**Chapter 7 Trustee**
**602 Sawyer St, Ste. 400**
**Houston, TX 77007**

**AGENT: TRANZON ASSET ADVISORS OF TEXAS, LLC**

BY: _____ Date: _____
**Kelly D. Toney, CAI**
**Executive Vice President**
**945 McKinney St, #13384**
**Houston, TX 77002**
**TX Broker Lic. #0421809**
**TX Auctioneer Lic. #11818**
**Corp TX Broker Lic. #9008058**

NOTE: This is a binding Agreement to sell real estate; if any party does not understand any portion of this Agreement, please seek qualified legal counsel. Tranzon Asset Advisors is an independently owned and operated affiliate company of Tranzon, LLC, its successors, and assigns.  Tranzon, LLC is only a support company that does not participate in nor have any responsibility in any particular auction event; Agent is solely responsible for the operations and management of this auction or sale event.  © Copyright, Tranzon Asset Advisors 2023, all rights reserved.

5



Initials: _____, _____, _____

# EXHIBIT A

**1400 Barton Creek Blvd, Austin, TX 78735**
Legal Description: LOT 16 BARTON CREEK NORTH RIM

**5240 McCormick Mountain Dr, Austin, TX 78734**
Legal Description: LOT 3 BACK OF THE MOON SUBD AMEDNDED PLAT OF

**3540 Clawson Rd, #5, Austin, TX 78704**
Legal Description: UNT 5 BLD 3 ENCLAVE ON CLAWSON ROAD CONDOMINIUMS PLUS 12.5% INT IN COM AREA

**Legal Description: 3540 Clawson Rd, #6, Austin, TX 78704**
UNT 6 BLD 3 ENCLAVE ON CLAWSON ROAD CONDOMINIUMS PLUS 12.5% INT IN COM AREA

6

Initials: _____, _____, _____

**EXHIBIT B**

| | |
|---:|---:|
| Professional Photography | $ 5,000.00 |
| Social Media Marketing | $ 2,800.00 |
| Direct Mail Postcards | $ 4,125.00 |
| Targeted Email Blasts | $ 1,116.50 |
| Google Display | $ 2,500.00 |
| Promoted Listings on Specific Websites | $ 3,750.00 |
| Signage | $    850.00 |
| Print Advertising | $ 1,500.00 |
| Press Releases | $ 1,000.00 |
| **Total** | **$25,141.50** |

7



Initials: _____, _____, _____

Initials: _____, _____, _____

