# EXHIBIT 8

```
                  UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                    .
IN RE:                              .  Case No. 22-33553
                                    .  Chapter 7
ALEXANDER E. JONES,                 .
                                    .  515 Rusk Street
                                    .  Houston, TX 77002
                   Debtor.          .
                                    .  Thursday, June 27, 2024
. . . . . . . . . . . . . . . . .   .  9:01 a.m.



                   TRANSCRIPT OF STATUS CONFERENCE
           BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
              UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:


For the Chapter 7        Jones Murray LLP
Trustee:                 By:  CHRISTOPHER R. MURRAY, ESQ.
                         602 Sawyer Street, Ste 400
                         Houston, TX 77007
                         832-529-1999

ZOOM APPEARANCES:


For the Creditors:       Lawson & Moshenberg PLLC
                         By:  AVI MOSHENBERG, ESQ.
                         801 Travis Street
                         Ste 2101, #838
                         Houston, TX 77002
                         903-316-9155

Audio Operator:          Zilde Compean, ECR

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com
```

    Proceedings recorded by electronic sound recording, transcript produced by transcription service.

```
 1          (Proceedings commence at 9:01 a.m.)

 2          THE COURT:  Please be seated.  Good morning,

 3  everyone.  This is Judge Lopez.  Today is June 27.  I'm going

 4  to call the 9 a.m. case.

 5          Mr. Moshenberg, if you can please hit "five star" and

 6  I'll unmute your line.  Mr. Moshenberg, is that you?

 7          MR. MOSHENBERG:  Yes, Your Honor.  This is Avi

 8  Moshenberg.

 9          THE COURT:  Okay.  Great.  Okay.  Let's see.

10  Mr. Murray and counsel are in the courtroom.  Is that right?

11  Good morning.

12          MR. MURRAY:  Yes, sir.  Good morning.

13          THE COURT:  Okay.  Here's what I -- I know there was

14  a status conference scheduled today and I scheduled it.  Before

15  I kind of take a bunch of appearances, and I know that there

16  are a number of people listening and on the line, let's see.

17  Are there any updates I need to know about before I begin?

18  Since the motion was filed, has there been any further

19  discussion or anything I need to know about?

20          MR. MURRAY:  Discussion, no resolution.  We urge our

21  motion.

22          THE COURT:  Okay.  Well, I'm going to -- well, today

23  is just a status conference or I should call it an initial

24  hearing.

25          Mr. Murray, since you're here officially, kind of on
```

1    the first case, I'm going to kind of -- at least -- sure.  I

2    guess some thoughts at kind of the 10,000-foot level in terms

3    of kind of where we were.  Obviously, there were two separate

4    cases filed, one individual 11, one in a Subchapter V case.

5            The Subchapter V case went on for about two years, as

6    you know.  No settlements were reached in that case, and that's

7    fine.  Sometimes cases settle, sometimes they don't.  No

8    litigation was raised against the case in which you serve as

9    the trustee.  And that's fine, too.

10            The 9019s were about, you know, adversary -- there

11   were several adversary proceedings, but it was Free Speech

12   bringing adversary proceedings.  One was removed with an

13   additional family case in the Subchapter V case.  Plenty of

14   reports were written.

15            So on the agreement, quite frankly, on the motion of

16   the debtor, in your case, I converted one case.  I found that

17   the second case had been going on for two years.  Costs were

18   running high.  I made the decisions that I made, and they're

19   all stated on the record.  I incur -- I think you were here,

20   but I encourage you to go back and listen to what I said, and I

21   got it.  There were a bunch of diverging interests that were

22   there, and I tried to do my best to balance them all and give

23   them all fair consideration.

24            But it was dismissal of a case, but dismissal with

25   certain statements in the order.  It wasn't just dismissed like

1    you would see in a 13 or another kind of a case.  And so my

2    dismissal order, I'm just looking at it now, made you in charge

3    of the bank account.  I asked you on the record to agree to do

4    it, and it sounds like you did it.

5            So and there looks like there was an adversary

6    proceeding that I took jurisdiction over, and that was one

7    involving an entity called PQPR, which had asserted liens over

8    all the cash held by Free Speech.  And there were -- I went

9    into my decision making, they were -- I knew it at the time,

10   probably 18.  I think they stopped counting after 17 interim

11   cash collateral orders.

12           But the issue has never been decided as to who has a

13   lien on the cash and who is entitled to the cash and the extent

14   of the lien.  But I kept jurisdiction over that.  I had to

15   determine if there's going to -- who was going to have access

16   to the cash, but Chris Murray, and there would have to be

17   administrative costs that had to be resolved in the Free Speech

18   case.

19           So -- or bills that had to be paid, administrative

20   costs, other expenses that would have to have been incurred.

21   There was a concern that all the cash -- a straight dismissal

22   without someone controlling the cash, would lead to the

23   inability to satisfy costs that everybody agreed.  At least I

24   should consider fee applications and other administrative

25   costs.

1      So what I said on the record was we're going to
2  transfer the bank account to Mr. Murray in his capacity as
3  Chapter 7 trustee.  And quite frankly, once the case was
4  converted, the Jones case was converted, which I had done
5  during the day, right, and then the Chapter 7 trustee, just as
6  a matter of the Code, became over the equity interest held by
7  Mr. Jones in Free Speech.  Right?

8      So there was a logical progression.  The case was
9  converted, you know, in your capacity as Chapter 7 trustee, and
10 you had been appointed, now you can get the bank accounts.  And
11 so there wasn't just -- there was thought behind the process
12 and organization.  I didn't put the cart before the horse in
13 terms of just giving it to any random person.  So that's kind
14 of where I left things.

15     But there's still some kind of important issues that
16 I still needed to kind of get decided.  I got your motion, and
17 I read it.  And it's styled as an emergency motion, I'm
18 presuming because of the filing that happened in Texas state
19 court.

20     So here's where I then turn to Mr. Moshenberg, who
21 filed that motion and signed it.  Mr. Moshenberg, the motion
22 that you filed in state court seeks -- asked the Court -- and
23 it was filed, it looks like, a couple of hours after the case
24 was dismissed.  You asked for control, including the bank
25 account.  Is that correct?  Did I get that right?  Kind of a

1  yes or no.

2          MR. MOSHENBERG:  I disagree, Judge, for control over

3  the bank accounts.

4          THE COURT:  You asked for the -- okay.  You're --

5          MR. MOSHENBERG:  Judge, if I could clarify, Judge.

6  I'm sorry.

7          THE COURT:  Nope, I'm just asking for your

8  understanding as to what you --- when you asked the state

9  court, did you ask for control?  Did you ask for the cash?

10          MR. MOSHENBERG:  We did, Your Honor.  The --

11          THE COURT:  That was Question 1.

12          MR. MOSHENBERG:  Okay.

13          THE COURT:  Then you asked for the cash held by the

14  bank account controlled by the Chapter 7 trustee.  Is that

15  correct?

16          MR. MOSHENBERG:  Correct, Judge.

17          THE COURT:  Okay.  And then you also asked -- I think

18  in Part 2 was coming with a writ of garnishment, right?

19          MR. MOSHENBERG:  We started garnishment procedure

20  orders, yes.

21          THE COURT:  But I'm saying you filed it, right?  You

22  asked for it?

23          MR. MOSHENBERG:  Correct.

24          THE COURT:  Okay.  So --

25          MR. MOSHENBERG:  Yes, Your Honor.

1          THE COURT:  So when the state court judge entered an

2     order -- well, I forgot about another adversary.  Remind me

3     about it, the Elevated Solution.  When the State Court entered

4     an order authorizing or requiring the debtor to turn over non-

5     exempt assets, were you contemplating that the Chapter 7

6     trustee turn over a bank account that I told the Chapter 7

7     trustee to control?

8          MR. MOSHENBERG:  No, Your Honor.  We don't believe we

9     have --

10          THE COURT:  All right.

11          MR. MOSHENBERG:  -- any right to control the bank

12     account.

13          THE COURT:  No, no, no.  But the cash in the bank

14     account, right?  So in other words, someone has to turn things

15     over.  Right?

16          MR. MOSHENBERG:  Correct, Your Honor.

17          THE COURT:  Free Speech isn't a person.  It's a

18     corporate person, but it's not kind of a person, right?  So you

19     can't just -- so in other words, someone would have to then act

20     on behalf of Free Speech to comply with the state court order.

21     That person would have to be the Chapter 7 trustee because

22     that's who I gave control of the bank account to if you want

23     the cash.

24          I'm sure maybe -- I know it was filed shortly

25     thereafter, but it appears that there's a conflict between what

1   you asked for and got on a Monday after filing something on a

2   Friday and what I wrote in the order and what we talked about

3   in the hearing.  And I read your motion, and I don't think you

4   explained any of that to the state court judge.

5          I don't think the State Court judge knew anything

6   about any of what was requested, but I'm going to ask a little

7   bit more of a basic question.  Who is -- when you asked -- when

8   you submitted an order asking the Free Speech to turn things

9   over, who did you contemplate would be the person turning

10  things over to comply with the order?

11          MR. MOSHENBERG:  Two people, Your Honor.

12          THE COURT:  Huh?

13          MR. MOSHENBERG:  Two people, Your Honor.  I believe

14  that (indiscernible) --

15          THE COURT:  Is the trustee one of them?

16          MR. MOSHENBERG:  Yes, Your Honor.

17          THE COURT:  So I write an order turning something

18  over to the trustee in his capacity to then determine, and for

19  the reasons I state on the record, and then you file something

20  on the record several hours later for the trustee to turn that

21  over, right?  Did I just get that right?

22          MR. MOSHENBERG:  Yes, Your Honor.

23          THE COURT:  Okay.  Okay.

24          MR. MOSHENBERG:  I want to answer your questions,

25  Judge --

```
1              THE COURT:  No, no, I just --

2              MR. MOSHENBERG:  -- but also --

3              THE COURT:  I don't -- I want you to -- I'm just

4    making sure as I flip through --

5              MR. MOSHENBERG:  Sure.

6              THE COURT:  -- as I flip through 362 to make sure

7    that we're all on the same page.  Because now you're requiring

8    a Chapter 7 trustee.  You didn't come to me.  You went to a

9    state court who, quite frankly, had, you know -- and you want a

10   Chapter 7 trustee to comply with your -- with orders that

11   potentially conflict with orders that I wrote.

12             So maybe Judge Lopez just needs to write better

13   orders.  So well, maybe --

14             MR. MOSHENBERG:  No, Judge, it's --

15             THE COURT:  No, let me finish.  And maybe I don't

16   need to question candor or statements, what was written in

17   State Courts and how things were proceeded, including a writ of

18   garnishment.  All right.  Maybe I don't need to go there and

19   question it.  Maybe I'll just say Judge Lopez should write

20   better orders.

21             Mr. Murray, there's another adversary proceeding

22   where -- involving an entity called Elevated Solutions Group

23   where there was money that was deposited into the court

24   registry.  And there's a contract out there where my

25   understanding of it is that Elevated Solutions Group would keep
```

1  kind of 80 percent and the estate would keep 20 percent.

2          The entity who had to pay the money asked me for

3  permission to kind of deposit it with the registry and then

4  kind of figure that out.  But that's still an issue that has to

5  kind of get worked out.  It appeared to me that the 80/20 split

6  was kind of the way the contract read, but there was litigation

7  about that.  And at some point someone's going to have to make

8  a decision about kind of what to do about that.

9          I know that Elevated Solutions Group also has claims

10  against the party or potential claims.  I don't know the merits

11  about any of this.  We didn't get there.  But I know that there

12  are potential claims that Elevated Solutions Group has

13  against -- or may or may not against the entity that submitted

14  the funds into the registry.  But that seems separate than kind

15  of what to do with the cash portion of it.  But that's where

16  we're going.  Okay?

17          MR. MURRAY:  There's cash in the registry today.

18          THE COURT:  There's cash in the registry today, and

19  there's an adversary.  If someone can just put their phone on

20  mute.  There's someone who needs to place their phone on mute

21  just until they're talking.

22          So let me just make it really clear.  And I'm sure

23  you just are -- in Chapter 7 -- interim Chapter 7 trustee, for

24  a short amount of time, and I'm sure you've been kind of --

25  especially in a case like this drinking from the fire hose.

1   And so let me just make it really clear.

2           And I'm sure, and I'll also tell you, you know, the

3   Elevated Solutions Group, the adversary is 24-03038, and there

4   was a deposit made into the registry.  It's about $449,000,

5   $450,000 in there.  And that's already been there.  But that

6   was done on June 17th, so it's there.  But that has to kind of

7   get resolved.

8           In other words, the thought process was there was

9   cash that was going to be put in the registry, cash in a bank

10  account, figure out someone's alleging liens.  We have Texas

11  and Connecticut claiming rights to judgments.  And during both

12  cases, including the Free Speech case, I allowed those

13  litigations to proceed.

14          The minute a motion to lift the stay was filed, like

15  very shortly thereafter, parties proceeded, and those matters

16  are being kind of handled in the state courts in terms of my

17  understanding that there are appeals going on in Texas and

18  Connecticut.  But those litigations started before I became the

19  judge.

20          I simply facilitated and lifted the stay to allow

21  those litigations to continue, my understanding that judgments

22  were entered, right, in those cases, and those matters have

23  been appealed.  I didn't prevent anyone from prosecuting the

24  appeal and -- or defending themselves in the appeals.  That

25  process is being played out.  I don't know what stage they're

1   in, but there was discussion of -- in the closings about kind

2   of race to the courthouse.  That process has little to do with

3   me.

4           There were two separate litigations in two separate

5   states by two different sets of plaintiffs, and those processes

6   are playing themselves out.  And what Free Speech did ask me

7   for at the hearing at the same time was, look, and this is an

8   important point, you know, there has to be a transition with

9   respect to the CRO that was in place, right?

10          What Ms. Catmull asked me was, I need clear guidance.

11  What's his job?  If you dismiss this case, what's his job?

12  Because his name is on a bank account, and you know, there were

13  a lot of things going on at that time.  And so that there can

14  be absolute certainty with respect to what was going to happen.

15  And I told the CRO, appreciate the service, get the accounts to

16  Mr. Murray.  Your service is done.

17          So in essence, any -- the turnover action, the

18  garnishment action, right, there's no CRO in place anymore,

19  because I told the CRO, your job is done.  So anybody asking

20  anyone to do anything on behalf of Free Speech is really asking

21  you at this point, the Chapter 7, trustee, in a case in which I

22  wrote the order saying, it's you.

23          I don't think people -- so what I'm asking is, and

24  maybe I just need to make it really clear, there will be no

25  contempt.  And you are under no obligation, because the order

1   says Free Speech has to turn things over.  That's you. You will

2   not turn over a bank account or access to bank account.

3           At the same time, PQPR, Mr. Lemmon is on the line,

4   and, you know, I -- you know, that effectively hamstrings the

5   secured creditor for being -- right?  So I would be holding the

6   secured creditor unable to defend or exercise any rights,

7   potentially, while everybody could go after the bank account

8   and kind of go do it.

9           But someone may have a lien on all the cash, and I

10  just never got there.  There were 17 interim orders.  No one

11  ever pushed me on a final.  No one ever said, let's tee this

12  issue up.  Parties were mediating, and they were talking, and I

13  get it.  You know, there's a lot of things, and I'm not here to

14  Monday Monday -- I'm not Monday morning quarterbacking.  What I

15  am stating are just facts that never got addressed.

16          And we were a month away from the two-year statute of

17  limitations being run.  I called the hearing.  I think there's

18  a couple of issues that you're going to have to think about,

19  and what I want to do is take the emergency off the table.

20  Maybe you decide that you're going to, you know, you want to

21  liquidate.

22          I'm not here to kind of tell you what to do and not

23  to do.  What I do want to do is take the need for you to make

24  decisions on, you know, on two days' notice because there's a

25  lot of moving other pieces.  Let me take those things off the

1   table, which were already off the table.

2        Maybe Lopez just has to write better orders, and
3   maybe I don't have to question what was said through a state
4   court and how it was said and what the state court was asking
5   or the ramifications of those things.  Maybe I can just write a
6   better amended order, and that's what I'll do.

7        But that way you will have the opportunity with
8   counsel who just got on to say, okay, if the decision is to
9   liquidate, Free Speech, at least you know you will have time,
10  breathing time, to think about the secure creditor out there
11  who's asserting a lien on all the cash and thinking about
12  through those issues what does a Chapter 7 trustee have to do
13  in those situations, whether you choose to do it or not.

14       And I'm not here to tell you what to do, what to
15  think.  You've got 450,000 in an account that looks like it's a
16  part of an 80/20 split.  Maybe some people will disagree on
17  that.  You will make a determination as to how you intend to
18  proceed on that as the equity owner.

19       There are -- there's another litigation.  You know,
20  Mr. Moshenberg is a member of a party where there's another
21  family, and I'm not sure, based upon what I'm hearing, whether
22  he wants to go forward with it or not, but maybe Free Speech is
23  involved in that litigation as well.

24       And you know, the thought was let's just, you know,
25  if there were dueling seven trustees in a case in which the

1   estate may -- Free Speech may have a side of interests and then

2   the Alex Jones estate has a separate interest, right, I could

3   have -- maybe that could have happened.  That could have

4   created a lot of confusion as to what one does.  I thought it

5   was in the best interest of the estate to make sure that the

6   account was in one place and no one was concerned about all

7   money being drained out of the account.

8           I'm not saying it was going to happen or not.  I

9   don't know.  What I'm saying is that there was a process in

10  place to hopefully provide some stability, but at the same time

11  give whoever the Chapter 7 trustee involved an opportunity to

12  think about these issues.

13          And I think the state court order in the requesting

14  of the garnishment runs dangerously close to some provisions of

15  the Bankruptcy Code that I don't need to quote on the record.

16  But if anybody thinks they're going to enjoin you from taking

17  action, whether that was their intent or not, the Code speaks

18  of acts.  All right.  We don't get into intent.

19          We get into intent on other stuff, but the acts

20  themselves is what the Code gets to.  And so I'll just leave it

21  there.

22          And I don't have to kind of ask a bunch of other

23  questions.  There are a lot of people on the line, but what I'm

24  going to do is just make sure it's very clear.  You figure out.

25  There could be equipment there.  You figure out.  I don't know

1   what that stuff is worth either.  You figure out what -- I know

2   what the families are after.  The families are -- and there's

3   two sets of them, and they're both had different divergent

4   views, and I'm not here to get into Texas versus Connecticut.

5           I said what I said at the hearing, and I don't want

6   to kind of add to what I said either, but I do understand that

7   there's divergent views.  But I think the Chapter 7 trustee has

8   some thinking to do, and I think you're entitled to the time to

9   think about that.  And I got it.

10          We can pick a date that makes sense, but you can get

11  with my case manager as to whether you intend to prosecute, but

12  I don't think there's an emergency anymore with the bank

13  accounts.  And you can figure out what you want to do about

14  equipment and things of that nature.  Maybe that stuff has

15  great value.  Maybe it's stuff that the Chapter 7 trustee

16  determined within his power should be abandoned or things of

17  that nature.

18          But I just think you have the time to think about

19  this, and I don't think you have to come into court three days

20  and say, I've got to do this because there's a bunch of moving

21  pieces, and state courts may be requiring me to do things.  I

22  don't think any of that is going to happen.  And I don't want

23  you to feel the pressure in a state court, because I don't

24  think the state court was actually informed of all these

25  issues.

1          I could share about everything.  You know, I'm just
2  thinking who hasn't been involved in what was happening or the
3  hearings and then reads these things.  And it's case dismissed.
4  You know, I don't know what's behind that in the adversary
5  proceedings.  So anyway.

6          Rather than take everyone's time and really ask a
7  bunch of really different questions and have people tell me
8  what they meant and didn't mean and kind of go in there, I'm
9  just going to say, I meant what I said in the order.  I ordered
10 it in the order.  It was intended.

11         And forget my intent, it had the effect of providing
12 the Chapter 7 trustee with the conversion had the effect, the
13 Bankruptcy Code, right, so we had the effect of doing certain
14 things, and so did me putting something in an order, saying
15 that you're in charge of the bank account.

16         So take some time, think about this, and maybe we
17 come back in, I don't know, middle of July and we can have a
18 status conference and kind of see where things go, but I don't
19 think I need to rule on your motion.  I don't think you need to
20 put on evidence today, because I don't -- and I don't think --
21 maybe what you just -- everybody just needed was -- and you
22 worded it clarified.  I know why you did it.  You didn't want
23 to call anyone out saying, so I'll leave it there.

24         You know, I'll write an order.  What I am going to
25 ask is before we meet in the next two weeks, you kind of think

1   about there's cash and then there's other stuff.  Maybe we can

2   talk about the other stuff.  And then I am going to ask you to

3   give me thoughts about the other adversary proceedings.  I

4   think some of them can be resolved fairly quickly.  I think

5   some of them are going to require some additional thought.

6         But I don't -- liquidating an estate and holding cash

7   and then figuring out where it goes, I think is something that

8   we would have to then figure out if you have the bank account,

9   and I think I don't know the answer to that question because we

10  never got -- we never took those issues up.  But certainly

11  that's in my wheelhouse in terms of stuff that we do all the

12  time, determining who has a lien on the cash and priority on

13  cash.  But I think you're entitled to make an assessment of

14  that and give me your thoughts, okay?

15         MR. MURRAY:  Okay.

16         THE COURT:  So that's what we'll do today.  I don't

17  want to take -- I don't want to open up the door.  What I am

18  going to ask is -- and I would ask that you reach out to

19  Mr. Patterson and Ms. Goode about the Elevated Solutions --

20         MR. MURRAY:  Yeah.

21         THE COURT:  -- agreement.  Okay.  So that sounds

22  great.  So start having conversations with them about that, and

23  maybe you can have a conversation with Mr. Moshenberg about the

24  other adversary proceeding and what he intends to do, and

25  Mr. Lemmon about the PQPR.  So I mean, I just think -- let's

1  just do this with process and transparency.  And you know,

2  there were arguments made to me about race to the courthouse.

3        And as you can tell, my focus is more on process, and

4  if you determine, make your determination, then they'll have

5  the legal effect that they do.  The case is dismissed, but

6  there are certain things that were moved.  And that's the piece

7  that we all kind of just think about, the legal ramifications

8  of what they are.

9        But I would just ask everyone, and the last thing I

10  want to do is start kind of hashing out another dispute between

11  two sets of families that have been through enough already.

12  Let's just follow the Code, follow the rules, and follow the

13  orders, and those decisions will be made in alignment with that

14  process.  Okay?

15        That's all I'm going to say today.  Everybody's

16  rights are preserved.  So what I'm going to do is enter an

17  amended order that makes it really clear that I'm aware that

18  there was an order entered by the state court.

19        In my view, it conflicts with my order, and so you're

20  not to turn over any amounts of bank accounts and you'll stay

21  any directive to -- you're under no compulsion to turn anything

22  over or abandon, because, quite frankly, it's more abandonment,

23  I think, in terms of what you may decide to do or not do.  But

24  we'll take those issues out.

25        What I don't want to do is wait two months to kind of

1    have that conversation.  I think we should have it sometime in

2    mid-July.  Let's just talk to like -- mainly why I'm saying

3    mid-July is, quite frankly, next week is July 4th, and people

4    will be in and out.  That second week I'm not around a lot.

5    And then so that I think that July 15th is-- 11th through the

6    15th somewhere is a sweet spot.  At least 15th through the 19th

7    is kind of a sweet spot for me somewhere.

8           Well, I'll have a bunch of hearings, but I think it

9    makes sense to hold a hearing sometime around that time.  But I

10   don't want to pick a date, because I know that this is in the

11   middle of July, and I want people to be able to do -- let's

12   just do it all in order, and you know, we're not jamming

13   anyone, and people can think about those things.  Okay?

14          But and I also didn't want -- I wanted to make sure

15   that the CRO didn't feel that I told them, you know, last day,

16   you don't have to do anything more, but now there's an order of

17   a state court. You know, what are your responsibilities?  Yes

18   or no before we comply with everything.  And the applications

19   will take up in the ordinary course.  There was an order

20   already in place, and there's nothing else to do on that.

21   Okay?

22          Folks, I know I have a 9:30 hearing.  I thank

23   everyone for their time.  We're going to take five minutes.

24   I'm going to keep everything on.  I'm going to allow the kind

25   of court to clear, if you will, virtually, and then I'll take

```
1    up Strudel at 9:30.  Thank you.

2              MR. MURRAY:  Thank you, sir.

3              THE CLERK:  All rise.

4         (Proceedings concluded at 9:30 a.m.)

5                          *  *  *  *  *

6

7

8

9

10

11

12

13

14

15              C E R T I F I C A T I O N

16

17         I, Heidi Jolliff, court-approved transcriber, hereby

18   certify that the foregoing is a correct transcript from the

19   official electronic sound recording of the proceedings in the

20   above-entitled matter.

21

22

23   _____

24   HEIDI JOLLIFF, AAERT NO. 2850    DATE: JULY 2, 2024

25   ACCESS TRANSCRIPTS, LLC
```