UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | § |
| | § Chapter 7 |
| ALEXANDER E. JONES, | § |
| | § Case No. 22-33553 (CML) |
| Debtor. | § |
| | § |

**TRUSTEE'S REPLY IN SUPPORT OF THE TRUSTEE'S
(I) MOTION FOR ENTRY OF AN ORDER AUTHORIZING
THE WINDDOWN OF FREE SPEECH SYSTEMS, LLC, AND
(II) APPLICATION TO EMPLOY TRANZON AND TRANZON360 AS SALE BROKER**
[Relates to Docket Nos. 828, 829 & 845]

Christopher R. Murray, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Alexander E. Jones ("Jones" or the "Debtor") files this reply (the "Reply") in supporting of the Trustee's *Motion for Entry of An Order Authorizing the Winddown of Free Speech Systems, LLC* [Docket No. 829] (the "Motion") and the Trustee's *Application to Employ Tranzon and Tranzon360 as Sale Broker* [Docket No. 828] (the "Application"), and in response to the omnibus objection thereto [Docket No. 845] (the "Objection") filed by Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "U.S. Trustee"). In further support of the Motion and the Application, the Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Notwithstanding the Objection's attempts to cast the Sale[1] as an overstep by both the Trustee and the Court, the Motion constitutes a natural progression of this Court's orders coupled with the Trustee's bankruptcy powers. Well-settled bankruptcy principles allow the

---

[1] Unless otherwise specifically defined, capitalized terms herein carry the meanings ascribe to them in the Motion.

1

15574745

Trustee to step into the Debtor's shoes and succeed to all of his rights, including the Debtor's rights as the sole owner of FSS. Under both state law and the terms of FSS's operating agreement, Jones—and now the Trustee—is able to cause FSS to sell its assets or to seek the dissolution, wind down, and liquidation of FSS. And it is the exercise of this authority, rather than the outright sale of FSS's assets, for which the Trustee seeks the Court's approval by the Motion. Indeed, this Court expressly contemplated that the Trustee would exercise control over FSS (its bank accounts) in its order dismissing FSS's own bankruptcy proceedings.

2. The Sale has widespread support among key stakeholders, and for good reason. Although the Trustee certainly could, as the U.S. Trustee apparently prefers, effect an outright sale of the membership interests in FSS, that would not constitute the highest and best use of this estate's assets. Instead, the Trustee has chosen to make use of the rights attendant to those membership interests in a manner consistent with his sound business judgment and that not only provides all interested parties with meaningful notice of his intentions, but also will fetch a higher price than selling the membership interests themselves. The proceeds will then be used to reduce claims for which FSS and Jones are jointly and severally liable. This approach falls well within the Trustee's authority under the Bankruptcy Code and this Court's jurisdiction.

3. Accordingly, the Trustee respectfully requests that the Court overrule the Objection and grant the Motion.

## ARGUMENT AND AUTHORITIES

**I.  The Motion and Application Constitute a Valid Exercise of the Trustee's Authority Under the Bankruptcy Code and this Court's Orders**

4. The U.S. Trustee does not deny that the Trustee "can step into the shoes of the 100% member and owner of FSS and exercise all rights given to such owner under state law and FSS's corporate governance documents such as working with employees and a manager on the

2

15574745

winddown of the LLC." Objection ¶ 3; *accord Levine v. B & R Acquisition Partners, LLC*, 2024 WL 3829567, at *14 (N.D.N.Y. Aug. 15, 2024) (collecting cases and concluding that the Chapter 7 trustee has the right to control a single-member LLC owned by the debtor). Instead, the U.S. Trustee objects to the Motion and the Application on the grounds that (1) the Bankruptcy Code does not authorize the Trustee to act with respect to the assets of an entity in which the Trustee holds a 100% membership interest; and (2) this Court lacks jurisdiction to supervise a sale of those assets. Neither position is correct.

### A. The Trustee May Use Estate Assets, Including to Effect a Sale Pursuant to State Law

5. The Objection's argument that the non-debtor assets of FSS cannot be sold pursuant to Section 363 misses the mark. For one, the Motion does not rise or fall with whether FSS assets are property of the Debtor's estate under Section 541. Additionally, the Objection cannot be reconciled with this Court's earlier orders.

#### 1. The Trustee, as the Sole Owner of FSS, Is Empowered to Effectuate the Sale

6. Section 541 sweeps broadly in defining property of the estate, capturing "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Courts have repeatedly held that where a debtor owns 100% of the membership interests in an LLC, a trustee steps into the debtor's shoes and is empowered exercise all rights attendant to that ownership interest. *See, e.g.*, *In re Dzierzawski*, 528 B.R. 397, 410 (Bankr. E.D. Mich. 2015) (collecting cases and concluding that the chapter 7 trustee could step into the debtor's shoes as the sole member of the LLC, and exercise the debtor's rights to control the management of the LLC).

7. It is similarly well settled that the property of the estate (eligible for a trustee's use under Section 363) includes a debtor's state law authority to cause a LLC to sell its assets or to

3

seek the dissolution, wind down, and liquidation of the LLC. *See, e.g.*, *In re Cleveland*, 519 B.R. 304, 307 (D. Nev. 2014) (reversing the bankruptcy court and holding that the trustee "has the right to sell or otherwise take ownership of any assets of [the] LLCs"); *In re Thadikamalla*, 488 B.R. 791 (Bankr. N.D. Ga. 2013) ("[The] Trustee is entitled to an order allowing him leave to wind up the Partnership."); *In re Garbinski*, 465 B.R. 423, 427 (Bankr. W.D. Pa. 2012) (concluding that Section 541 "effectively places the Trustee in the shoes of the Debtor, thereby allowing her to exercise rights as a partner/member seeking to obtain a judicial dissolution and winding up of the entities by invoking state law remedies involving dissolution or liquidation of LLC or limited partnership entities"); *In re Klingerman*, 388 B.R. 677, 679 (Bankr. E.D.N.C. 2008) (finding that because a debtor's rights in an LLC, both economic and non-economic, become estate property, the estate representative has standing to seek dissolution of a LLC); *In re Ehmann*, 319 B.R. 200, 206 (Bankr. D. Ariz. 2005) (holding that the trustee had all rights and powers with respect to the company that the debtor held as of the commencement of the case, including the right to seek dissolution).

8. Under the Texas Business Organizations Code, "[w]inding up of a domestic entity is required on . . . a voluntary decision to wind up the domestic entity." TEX. BUS. ORGS. CODE § 11.051(2). The November 16, 2007 Company Agreement of FSS (the "Company Agreement") provides that FSS shall be dissolved upon, among other things, "the written consent of a Required Interest at any time to dissolve and wind up the affairs of the Company." Company Agreement § 11.01; *see also id.* § 3.01 (defining "Required Interest" as "Members holding in aggregate fifty-one percent (51.00%) or more of the Percentage Interests then held by all Members"). The Company Agreement further provides that the wind up of FSS is to be conducted

4

by a Liquidator chosen by FSS's Managers or a Required Interest. *Id.* § 11.02(a).  The Liquidator's powers under the Company Agreement are extensive and include the ability to sell FSS's assets:

> In winding up the affairs of the Company, the Liquidator shall have full right and unlimited discretion, for and on behalf of the Company: (i) to prosecute and defend civil, criminal or administrative suits; (ii) to collect Company assets, including obligations owed to the Company; (iii) to settle and close the Company's business; (iv) to dispose of and convey all Company Property for cash, and in connection therewith to determine the time, manner and terms of any sale or sales of Company Property, having due regard for the activity and condition of the relevant market and general financial and economic conditions; (v) to pay all reasonable selling costs and other expenses incurred in connection with the winding up out of the proceeds of the disposition of Company Property; (vi) to discharge the Company's known liabilities and, if necessary, to set up, for a period not to exceed five (5) years after the date of dissolution, such cash reserves as the Liquidator may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company; (vii) to distribute any remaining proceeds from the sale of Company Property to the Members; (viii) to prepare, execute, acknowledge and file articles of dissolution under the TBOC and any other certificates, tax returns or instruments necessary or advisable under any applicable law to effect the winding up and termination of the Company; and (ix) to exercise, without further authorization or consent of any of the parties hereto or their legal representatives or successors in interest, all of the powers conferred upon the Managers under the terms of this Agreement to the extent necessary or desirable in the good faith judgment of the Liquidator to perform its duties and functions. The Liquidator (if not the Managers) shall not be liable as a Manager to the Members and shall, while acting in such capacity on behalf of the Company, be entitled to the indemnification rights set forth in the Certificate of Formation.

*Id.* § 11.02(b).  Once the Liquidator, in its discretion, considers these activities completed, it is then required to distribute the proceeds of any sales to creditors of FSS and then its members:

> Upon completion of all desired sales of Company Property, and after payment of all selling costs and expenses, the Liquidator shall distribute the proceeds of such sales, and any Company Property that is to be distributed in kind, to the following groups in the following order of priority:
>
> > (a) First, to the extent permitted by law, to satisfy Company liabilities to creditors, including Members who are creditors (other than for past due Company distributions), of the Company, whether by payment or establishment of reserves; and
> >
> > (b) Then, to the Members, in accordance with, and in the ratio of, the positive balances in their respective Capital Accounts.

> The claims of each priority group specified above shall be satisfied in full before satisfying any claims of a lower priority group. If the assets available for disposition are insufficient to dispose of all of the claims of a priority group, the available assets shall be distributed in proportion to the amounts owed to each creditor or the respective Capital Account balances or Percentage Interests of each Member in such group.

*Id.* § 11.04; *accord* TEX. BUS. ORGS. CODE § 11.053.

9. By the Motion, the Trustee seeks the Court's authorization to exercise these powers as Liquidator to effectuate a wind down of FSS and sale of its property in accordance with the Company Agreement and Texas law. The Trustee's use of these rights, which are estate property under Section 541, unquestionably falls within Section 363(b), regardless of whether FSS's property itself constitutes estate property. The U.S. Trustee's argument thus falls flat.

**2. The Trustee's Need for the Court's Authorization Is Highlighted by the Court's Prior Orders**

10. The Objection describes the Court's dismissal of FSS's bankruptcy proceeding as freeing it from the requirements of the Bankruptcy Code. However, in the *Order Dismissing Case* [Case No. 22-60043, Docket No. 956] (the "Dismissal Order"), the Court clarified that "Christopher R. Murray in his capacity as the Chapter 7 Trustee for the bankruptcy estate of Alexander Jones, Case No. 22-33553" was to be given control and signing authority with respect to FSS's bank accounts. Notwithstanding this directive, a group of plaintiffs sought and obtained a turnover order in state court with respect to FSS's property, prompting the Trustee to filed the *Trustee's Emergency Motion to (1) Clarify Transfer of Control and Signing Authority with Respect to Debtor's Bank Accounts, (2) for an Order Extending Automatic Stay in the Alex Jones Case to Free Speech Systems LLC, and (3) Related Relief* [Docket No. 720] (the "Clarification Motion").

11. At the hearing on the Clarification Motion, this Court emphasized the limitations on the effects of dismissal contained in the Dismissal Order and that the Trustee, "as a matter of the Code, became over the equity interest held by Mr. Jones in Free Speech." *See* Transcript of

6

15574745

June 27, 2024 Hearing at 3:24–4:4, 5:1–7.  The Court expressed dismay over state court plaintiffs' attempt to compel the Trustee to turnover property over which the Court had given the Trustee control.  *Id.* at 7:17–9:20.  As the Court said, "anybody asking anyone to do anything on behalf of Free Speech is really asking you at this point, the Chapter 7[] trustee."  *Id.* at 12:19–22.  And although the Court recognized that "Free Speech may have a side of interests and then the Alex Jones estate has a separate interest," that did not mean FSS property was now free of the Bankruptcy Code or the Trustee's control. *Id.* at 14:24–15:12.

12. The Court's clear expectation that the Trustee would exercise control over FSS property seriously undermines the Objection's suggestion that the Dismissal Order severed all connections between FSS and its bankruptcy case, or that the Trustee does not need to consider this Court when acting with respect to FSS property.

**B.     This Court Has Jurisdiction to Authorize the Sale**

13. The Objection makes repeated challenges to this Court's authority or jurisdiction to authorize the Sale. *See* Objection ¶¶ 2, 3, 10, 11.  These are unavailing.

14. First, as discussed above, the Objection significantly overstates the effects of the Dismissal Order.  As the Court was entitled to do under 11 U.S.C. § 349, the Court limited the extent to which the Dismissal Order freed FSS's assets of the bankruptcy process, instead retaining oversight and control over the administration of such assets. *See* 11 U.S.C. § 349(b) (providing for the revesting of property of the estate "unless the court, for cause, orders otherwise"); *cf.* Dismissal Order ¶ 2 (providing the Trustee control over FSS's bank accounts).  In fact, in the Dismissal Order, the Court specifically retained jurisdiction over Adversary Proceeding No. 23-3127, *Free Speech Systems LLC v. PQPR Limited Holdings LLC, et al.*, which involves claims to avoid liens over FSS's assets.  *See also In re Querner*, 7 F.3d 1199, 1201–02 (5th Cir. 1993) (noting that courts possess discretion to retain jurisdiction over related proceedings upon the

7

termination of a bankruptcy case). The Objection's assertions are thus inconsistent with the impact of dismissal contemplated by the Dismissal Order.

15. <u>Second</u>, even in the absence of contrary language in the Dismissal Order, courts have exercised jurisdiction in similar circumstances. For example, in *In re R2D2*, the Ninth Circuit concluded the bankruptcy court had full constitutional and statutory authority to determine and delineate the extent to which the bankruptcy trustee vested with a 100% interest in the debtor's nondebtor limited liability company may use the interest as property of the estate under 11 U.S.C. § 363 consistent with the entity's operating agreement. 591 F. App'x 539, 542 (9th Cir. 2015). In another case, *In re Smith*, the bankruptcy court rejected the exact argument being made in the Objection, finding instead that "the debtor's right, as limited partner, to seek judicial dissolution of the partnership is property of her estate over which the Court has jurisdiction." 185 B.R. 285, 291 (Bankr. S.D. Ill. 1995); *accord In re Thadikamalla*, 488 B.R. 791, 793–94 (Bankr. N.D. Ga. 2013) (finding related-to jurisdiction because [the procedures regarding the wind up of the [nondebtor] Partnership undeniably impact the estate and the administration of the estate"); *Carolina Preservation Partners, Inc. v. Weinhold,* 414 B.R. 754, 759 (M.D. Fla. 2009) (proceeding regarding partnership property is a related to proceeding); *In re Katz*, 341 B.R. 123, 131–32 (Bankr. D. Mass. 2006) (finding related to jurisdiction over a court ordered wind up because the right to make such a request was property of the estate). Likewise here, the Sale fits neatly within the bounds of this Court's jurisdiction.

## II. The Court (Correctly) Granted the Application

16. The Objection challenges the Application, but it fails to acknowledge that the Court already granted the Motion in its September 16, 2024 *Order Authorizing T[r]ustee's Employment and Retention of Tranzon and Tranzon360 as Sale Broker* [Docket No. 844] (the "<u>Order Authorizing Employment</u>"). The Objection is an improper vehicle for challenging the Application.

However, even setting aside that the Objection amounts to a collateral attack on the Order Authorizing Employment, the Objection's arguments fail for the reasons discussed below.

### III. The Sale Will Result in Estate Distributions

17. The Objection contends that because the FSS assets are not estate property and the winddown can be performed outside of bankruptcy, distributions made as part of the FSS winddown do not constitute moneys disbursed or turned over in the case. Objection ¶¶ 14–16. However, "[d]isbursed funds need not be 'property of the estate.' Neither § 326(a)'s plain words nor Courts interpreting the same include the term 'property of the estate' within § 326(a)." *In re Circle Inv'rs, Inc.*, 2008 WL 910062, at *2 (Bankr. S.D. Tex. Apr. 3, 2008) (Isgur, J.). "Courts have held that a trustee can include 100% of the proceeds derived from liquidated property in which a third-party holds an interest." *Id.* at *3. The "crucial test" is "whether the particular property has been justifiably administered during the bankruptcy case and whether the trustee has properly performed services in relation to that property." *Id.* (quotation omitted). Under the circumstances described above, this crucial test is met here.

18. Further, "party in interest" for purposes of Section 326 is not limited to only creditors, as the Objection suggests. Instead, courts have interpreted the term to include "any party who has an actual pecuniary interest in the case, as well as to those parties who have a practical stake in the outcome of the case, or to those parties who will be impacted in any significant way by a decision made in the case." *Id.* at *4 (quotation omitted). Certainly, the creditors with claims totaling roughly $1.5 billion based on judgments awarded jointly and severally against Jones and FSS are "parties in interest" within the meaning of Section 326, regardless of whether they technically receive payment as a creditor of FSS.

9

15574745

**CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court (i) grant the Motion, (ii) overrule the Objection, and (iii) grant such other and further relief as may be just and proper.

Dated: September 23, 2024
      Houston, Texas

Respectfully submitted,

By: */s/ Joshua W. Wolfshohl*
    Joshua W. Wolfshohl (Bar No. 24038592)
    Michael B. Dearman (Bar No. 24116270)
    Jordan T. Stevens (Bar No. 24106467)
    Kenesha L. Starling (Bar No.24114906)
    **PORTER HEDGES LLP**
    1000 Main Street, 36th Floor
    Houston, Texas 77002
    Telephone: (713) 226-6000
    Facsimile: (713) 226-6248
    jwolfshohl@porterhedges.com
    mdearman@porterhedges.com
    jstevens@porterhedges.com
    kstarling@porterhedges.com

*and*

Erin E. Jones (TX 24032478)
**JONES MURRAY LLP**
602 Sawyer Street, Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Fax: (832) 529-3393
erin@jonesmurray.com

*Counsel for Christopher R. Murray, Chapter 7 Trustee*

15574745

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that a copy of the foregoing document was served on September 23, 2024 on all parties receiving ECF service in the above-captioned case and by U.S. First-Class Mail, postage prepaid on the attached service list.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl

15574745