```
 1                  UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF TEXAS
 2                        HOUSTON DIVISION

 3                                  )  CASE NO: 22-33553
                                    )
 4    ALEXANDER E. JONES,           )  Houston, Texas
                                    )
 5            Debtor.               )  Wednesday, Sept. 11, 2024
                                    )
 6                                  )  12:00 PM to 12:25 PM
      ------------------------------)
 7    HESLIN, et al.,               )  CASE NO: 23-03035
                                    )  ADVERSARY
 8                   Plaintiffs,    )
              Vs.                   )
 9    JONES, et al.,                )
                                    )
10                   Defendants.    )
      ------------------------------)
11    WHEELER, et al.,              )  CASE NO: 23-03037
                                    )  ADVERSARY
12                   Plaintiffs,    )
              Vs.                   )
13    JONES, et al.,                )
                                    )
14                   Defendants.    )
      ------------------------------)
15                        STATUS CONFERENCE

16         BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                 UNITED STATES BANKRUPTCY JUDGE
17    APPEARANCES:

18    For Chapter 7 Trustee:   JOSHUA W. WOLFSHOHL
                               Porter Hedges LLP
19                             1000 Main Street, 36th Floor
                               Houston, TX 77002
20
                               ERIN E. JONES
21                             Jones Murray LLP
                               602 Sawyer Street, Suite 400
22                             Houston, TX 77007

23    For U.S. Trustee:        HA NGUYEN
                               Office of the United States Trustee
24                             515 Rusk Street, Suite 3516
                               Houston, TX 77002
25
```

```
 1    For Free Speech          ANNIE CATMULL
      Systems:                 O'ConnorWechsler PPLC
 2                             4400 Post Oak Parkway, Suite 2360
                               Houston, TX 77027
 3
      For Debtor:              DERIC MCCLELLAN
 4                             Crowe & Dunlevy
                               222 North Detroit Avenue, Suite 600
 5                             Tulsa, OK 74120

 6                             VICKIE DRIVER
                               Crowe & Dunlevy
 7                             3663 North Sam Houston Parkway East
                               Suite 628
 8                             Houston, TX 77032

 9    For Connecticut          KYLE J. KIMPLER
      Families:                Paul, Weiss, Rifkind, Wharton &
10                             Garrison LLP
                               1285 Avenue of the Americas
11                             New York, NY 10019-6064

12                             RYAN CHAPPLE
                               Cain & Skarnulis
13                             303 Colorado Street, Suite 2850
                               Austin, TX 78701
14
                               ALINOR STERLING
15                             Koskoff, Koskoff & Bieder PC
                               27 Elm Street
16                             New Haven, CT 06510

17    For Texas Plaintiffs:    AVI MOSHENBERG
                               Lawson & Moshenberg PLLC
18                             801 Travis Street, Suite 2101
                               Houston, TX 77002
19
      Court Reporter:          UNKNOWN
20
      Courtroom Deputy:        UNKNOWN
21
      Transcribed by:          Veritext Legal Solutions
22                             330 Old Country Road, Suite 300
                               Mineola, NY 11501
23                             Tel: 800-727-6396

24

      Proceedings recorded by electronic sound recording;
25    Transcript produced by transcription service.
```

```
1        HOUSTON, TEXAS; WEDNESDAY, SEPTEMBER 11, 2024; 12:00 PM

2                        (Call to Order)

3            CLERK:  All rise.

4            AUTOMATED VOICE:  Conference muted.

5            THE COURT:  Okay.  Good afternoon, everyone.  This

6    is Judge Lopez, today is September the 11th.  I'm going to

7    call Case Number 22-33553, the Alex Jones case here on a

8    status conference.  I hope everyone's doing okay, it's been

9    a while since we've all seen each other.  I'll take

10   appearances in the courtroom and then I'll open it up to

11   folks who wish to make an appearance on the line, just

12   please hit five star.  Good afternoon.

13           MR. MURRAY:  Good afternoon, Judge.  Chris Murray,

14   I'm the Chapter 7 trustee.

15           THE COURT:  Good afternoon.

16           MS. JONES:  Good afternoon, Your Honor, Erin Jones

17   for Christopher Murray, Chapter 7 trustee.

18           THE COURT:  Good afternoon.

19           MR. WOLFSHOHL:  Good afternoon, Your Honor.

20   Joshua Wolfshohl from Porter Hedges on behalf of Chris

21   Murray, Chapter 7 trustee.

22           THE COURT:  Good afternoon.

23           MR. NGUYEN:  Good afternoon, Your Honor.  Ha

24   Nguyen for the US Trustee.

25           THE COURT:  Good afternoon.
```

1          MS. CATMULL:  Good afternoon, Your Honor.  Annie

2   Catmull for here for O'Conner Wechsler.

3          THE COURT:  Good afternoon.  Okay, anyone on the

4   line who wish to make an appearance, please hit five star.

5   There's a 918 number.

6          MR. MCCULLEN:  Yes, Your Honor, this is Derek

7   McCullen on behalf of the Debtor, Alex Jones.

8          THE COURT:  Okay, good afternoon, sir.  So, 212

9   number.

10          MR. KIMPLER:  Good afternoon, Your Honor.  It's

11   Kyle Kimpler from Paul White on behalf of the Connecticut

12   Families.  With me today is my co-counsel Ryan Chapple and

13   Alinor Sterling.

14          THE COURT:  Okay, good afternoon.  And a 713

15   number.

16          MR. MOSHENBERG:  Good afternoon, Judge.  It's Avi

17   Moshenberg here on behalf of the Texas Plaintiffs.

18          THE COURT:  Good afternoon.  Anyone else wish to

19   make an appearance?  Okay.  The purpose of today is just we

20   haven't seen each other in a while.  I thought it made sense

21   to get together.  I know I checked the docket, and it sounds

22   like there was some orders entered by Judge Eskridge in the

23   -- that's the underlying adversary proceeding that was went

24   before the district court at some point.

25          And I thought maybe we could at least just talk

1  about the Jones case itself and kind of what's going on and

2  where things are going, and if you needed anything.

3       MR. MURRAY:  Sure.  So, at the most urgent level

4  we filed and we're hoping to get it set before Friday a

5  motion to sell the lake house.  The time urgency there is

6  that the buyer is in a unique situation, they apparently

7  have to identify the target property for a 10/31 exchange.

8  Their deadline to do that is Friday.  We're hoping to get

9  approval for a sale so that they can designate our property,

10 and we can proceed with the process to sell to them.  We

11 filed that last night.

12      THE COURT:  Okay.  Oh, since I know most of the

13 folks who are involved in that case are here, is there is

14 any objection?  If anyone has any objection about it that

15 someone, please let me know and I'm certainly without

16 everyone's rights.  What else is going on just generally in

17 the case?

18      MR. MURRAY:  So, we also have a pending motion

19 that set for hearing on the 24th of September and that is a

20 motion for authority for me as Chapter 7 trustee in the

21 Jones case to wind down assets of FSS.

22      THE COURT:  Okay.

23      MR. MURRAY:  And that is a liquidation process.

24 We have also filed a motion to retain Transon Advisors as

25 our auctioneer and they've started work preparing the

1    marketing materials.  And the idea there is to auction the

2    assets of FSS.

3           Now, there are disputing claims on those assets as

4    the Chapter 7 estate owns 100 percent of the entity,

5    certainly the entity is insolvent from a balance sheet

6    perspective because of the judgments against it, but you

7    also have PQPR asserting a lien on all the assets.  Our idea

8    it to liquidate the assets of FSS, but all of the proceeds,

9    net of the cost of the liquidation, would be kept pending

10   further court order so that we can punt on all those other

11   issues.

12          We're talking to all the parties.  I think there's

13   at least a fair chance that we might be able to resolve some

14   of those issues short of litigation, but if we have to

15   litigate, we're going to hold everything until those

16   disputes are resolved.

17          THE COURT:  Okay.  Anything else going on just

18   generally?  I -- just it's aside from the -- it sounds like

19   we're having a hearing -- we may have a hearing on Friday,

20   there's a potential hearing -- a hearing on the 24th.  Just

21   generally, how are things going?

22          MR. MURRAY:  So, another sort of general issue it

23   relates more to the FSS estate, but the professional fees

24   were approved there.  There was an order to pay professional

25   fees.  There was some cash of FSS that I've been holding as

1    the Chapter 7 trustee.

2              THE COURT:  Yep, yep.

3              MR. MURRAY:  I paid professional fees for all but

4    one professional who hasn't provided payment instructions

5    yet.  I paid those out of those funds.  What was interesting

6    to me all of the professionals so far have requested that

7    those payments not go to operating, they go to IOLTA

8    accounts.

9              And the concern that's been raised is those are

10   still FSS cash or at least proceeds of FSS cash arguably

11   under the aegis of the turnover order.  Now, Your Honor may

12   recall the -- a turnover order was issued in state court,

13   there was also a garnishment action filed.  Both of those

14   were removed to the bankruptcy court in the western

15   district.  They have now been consolidated in front of Judge

16   Bradley.

17             THE COURT:  Oh, interesting.

18             MR. MURRAY:  There is a pending motion from the

19   Plaintiffs to remand those actions down to state court.  My

20   concern is those orders, and those actions bear directly on

21   the administration of these cases and the FSS matters you've

22   retained jurisdiction over.

23             So, our intention is in the near term to file a

24   motion to at least transfer venue of the removed actions to

25   this Court so, and I think the bankruptcy court supports

1    this, have all related matters heard in front of the same

2    court.  We have not gotten consent from the Plaintiffs to

3    that motion, so that might be contested over in the western

4    district.  But that's sort of where that stands.

5           And so, there's concern among the professionals

6    and some concern among other parties that until that

7    turnover order is -- and that garnishment proceeding are

8    finally resolved, there's a cloud over the authority of

9    what's going on in this Court with these matters.

10          THE COURT:  Okay.  I will -- I'll let the process

11   play out, but if you -- just keep me apprised of what

12   happens with the -- you say there's a motion to transfer.

13          MR. MURRAY:  We haven't filed a motion to transfer

14   venue yet, but we intend to shortly.  And there's a pending

15   motion to remand and obviously we'd like the venue issue to

16   be heard first.  But that's -- that will take place before

17   the western district and before Judge Bradley.

18          THE COURT:  Okay.  I will -- I will -- keep me

19   informed about what's going on.  And if I need to bring the

20   Texas Plaintiffs in here to explain to me what's going on,

21   I'll do it.  But maybe I don't need to.  Okay?

22          MR. MURRAY:  All right.

23          MR. MOSHENBERG:  And Your Honor I'm here.

24          THE COURT:  Well, no, no, no.  I mean, on a

25   separate matter for a -- but I want to respect the process,

1    that's not before me and I don't want to put my thumb on the

2    scale about anything.  I just want to make sure that I stay

3    informed about what's going on and I don't want to put my

4    thumb on something.  Judge Bradley has the case, and I think

5    he gets to make the call on those issues, and he decides and

6    whatever he decides, he decides.  I don't have a say on it

7    one way or another, nor do I want to.  So, --

8             MR. MOSHENBERG:  That's fair, Judge.

9             THE COURT:  Okay.  So, let me -- what else can we

10   -- what else do we need?

11            MR. MURRAY:  That's our status update.

12            THE COURT:  Okay.

13            MR. MURRAY:  If Your Honor has questions about any

14   other aspects, we're here --

15            THE COURT:  No.  No, no, I just wanted to make

16   sure we were all on the -- on kind of operating on the same

17   page and it's been a while since we had talked.  I didn't

18   know if you needed any Court time.  I know that that was

19   that one motion had been filed.  Maybe I can just open it up

20   and just hear from the parties about potentially scheduling

21   a hearing on Friday about this matter.  If we did it, I can

22   tell you now --

23            MR. MURRAY:  Your Honor, is this on the sale

24   motion that we were talking about?

25            THE COURT:  The potential for -- what I'll call

1    the Friday motion.

2            MR. MURRAY:  The Friday motion.  So, just so you

3    know I'm going to be in your Court at 11:30 on a motion to

4    sell in a Texas --

5            THE COURT:  Yes.

6            MR. MURRAY:  -- chemical (indiscernible).  So, if

7    somewhere around that time period could --

8            THE COURT:  How long do you think that will go?

9            MR. MURRAY:  I think it will be a half an hour at

10   the most.  I don't think it's going to be contested.  I

11   think it's mostly just going to be Mr. Summers sort of

12   proffer testimony.

13           THE COURT:  Got it.  Let me just see -- why don't

14   we schedule it tentatively for noon on Friday.  Subject to

15   anyone's rights to come in and tell me otherwise.  So,

16   anyone else in the courtroom?  Ms. Catmull.

17           MS. CATMULL:  Thank you, Your Honor.  Number one,

18   I'm working with Mr. Herold May in a different matter, he's

19   meditating it today, but he asked me to announce to the

20   Court that he, due to an error I think in the proposed order

21   on its fees, I think he's going to be asking, this is just

22   an FYI, he's going to be asking for some sort of amended

23   order that makes a $23,000 difference.  So, that's heading

24   his way.

25           And then, just on the -- we're one of the law

1   firms that's holding the funds in the IOLTA account.  It --
2   we've been, it seems to me, that issue will play out.  It --
3   I've been thinking it through in one of four procedural
4   ways.  One may be the -- could -- well, one, obvious one,
5   would be stay litigation.  Hopefully, it won't come to that.
6        Two, there is the Trustee's pending motion for
7   emergency relief that the Court took up a status conference
8   on in June.  So, maybe it'll get cleared up then.  Three, I
9   guess, if venue gets transferred here, the Court could
10   address it because the Court will have jurisdiction over the
11   turnover order.
12        And then, four, there is still the issue of the
13   Court's amended dismissal order that it discussed at the
14   hearing on the status conference on the Trustee's emergency
15   motion.  So, I'm going to see how those play out and then
16   confer with all the parties in it.
17        THE COURT:  The issue, and I don't want to kind of
18   belabor it, is I wrote an order and it -- so, it's got to
19   have -- so, the question is what affect does my order do and
20   did I just write an order that has no -- that no one can
21   enforce because there's concerns about what the order says?
22        So, did I just write an order in abstention and it
23   just kind just floats out there that no one can actually
24   use, right?  Or I authorized the Trustee to write a check
25   and then someone else came in backdoor and get the cash.

```
1    Someone -- that's what I mean.  But I'll let the process
2    play itself out.
3              MS. CATMULL:  Yes.
4              THE COURT:  I don't want to get in the way of it.
5    But thank you very much, but I don't want to wait really
6    long for that.  But we'll take that up in due course.
7              MS. CATMULL:  Thank you, Your Honor.
8              THE COURT:  Thank you.  Mr. Kimpler, can I just
9    ask you just with respect to the adversary proceedings.  Is
10   there anything -- that's been certainly a while since we
11   talked about that.  Is there anything in any of them that I
12   should kind of be aware of?  Anything we need to do in those
13   cases?  I don't know if there is, but if there is I don't
14   want it to get kind of lost in what we're doing.
15             MR. KIMPLER:  There is, Your Honor.  So, let me
16   just (indiscernible) because it has been a long time since
17   we talked about those.  Your Honor, of course, ruled on the
18   summary judgment last October.
19             THE COURT:  Wow.
20             MR. KIMPLER:  You'll recall that you granted
21   summary judgment on the majority of the claims, denied
22   summary judgment on a portion of them.  Following that
23   decision, Mr. Jones sought interlocutory appeal because the
24   order is not final because you have not fully resolved all
25   of the claims.  That was briefed last year and as you
```

1    already alluded to Judge Eskridge held oral argument about

2    that I believe in late June of this year.

3            Judge Eskridge denied the interlocutory appeal, so

4    what he is saying is we do need to get a final order before

5    you before it can go up on appeal.  So, where that leaves us

6    right now is that we do need to get to a resolution on

7    whether the -- in the Connecticut Plaintiff's case the 300

8    million or so of common law punitive damages are not -- or

9    are or are not dischargeable.  What your order has done,

10   Your Honor, is just denied our motion for summary judgment

11   that they were dischargeable.  I doubt you've looked at the

12   order itself, but if you look at the opinion that Judge

13   Eskridge wrote --

14           THE COURT:  There's kind of a point in there that

15   he wanted me to make sure that I thought about and that was

16   going to be my question.

17           MR. KIMPLER:  He did.  So, there's a suggestion

18   about maybe we should take a second look at that.

19   Obviously, he's not prejudging that and I'm not either.  But

20   one of two things does need to happen before Your Honor.  We

21   either need to get a trial schedule going to get final

22   resolution on that piece or we can file a reconsideration

23   motion.  Our plan is to file a Rule 54B reconsideration

24   motion.  We probably will have that on file, if not, the end

25   of this week, the beginning of next week.  It's a pretty

1    short motion, it lays out the issues it asks you to

2    reconsider.

3           In our view of the appropriate next steps here,

4    and we've had some discussions with Mr. Jone's counsel on

5    this.  But our view of the appropriate next steps is let's

6    brief that issue, I don't think it takes a lot of briefing.

7    Again, I think our brief is probably 12 to 15 pages.  I

8    think you could do it in about 30 days.

9           We'd ask you to take a second look at that.  It

10   may be that you say I got it right the first time there's

11   nothing to reconsider, at which point we then need to start

12   thinking about trial steps to then take that claim to

13   conclusion.  It may be that you take a second look at it,

14   think that maybe you can resolve it, in which case then we

15   have a final order and the whole thing can go back up to

16   Judge Eskridge.

17          THE COURT:  Mr. Kimpler, I think I cut you off on

18   the part where you were actually telling me what the

19   specific issue was.  Can you just identify it for me?

20          MR. KIMPLER:  The specific -- yeah, so, there is

21   300 -- so, there's a $1.4 billion collective judgment for

22   Connecticut Plaintiffs.  Your order found that 1.1 billion

23   of that was nondischargeable.

24          THE COURT:  Right.

25          MR. KIMPLER:  There is 300 million of it that is

1    really attorney's fees, but it's the common law punitive

2    damages.

3              THE COURT:  I remember.

4              MR. KIMPLER:  And you found that because the jury

5    instructions there included an element of (indiscernible)

6    that you could not grant summary judgment.  And not to get

7    too into the reasons but there is case law that just

8    suggests that those ancillary types of obligations follow

9    the underlying conduct.  And so, --

10             THE COURT:  Right.

11             MR. KIMPLER:  -- in preview of what our

12   reconsideration motion will say is if you found the

13   underlying conduct to be willful and malicious, then

14   ancillary obligations such as attorney's fees, expenses are

15   also nondischargeable.  So, that is what we would try to tee

16   up for you on a motion for reconsideration.  Again, I don't

17   want to --

18             THE COURT:  Got it.  I got it.

19             MR. KIMPLER:  -- project (indiscernible).

20             THE COURT:  I remember.

21             MR. KIMPLER:  But as far as next steps for you and

22   court time and things like that, it is our intent to file

23   that motion, again, it's a fairly brief motion, sometime in

24   the next week and then we'd be willing to agree to whatever

25   schedule works for Mr. Jones.

1          But we'd like to get that resolved soon so that we

2     can get a final order in this Court and then get up to the

3     next level of appeal as soon as possible.  It may be that

4     that's not what happens, and we need to then start talking

5     about to resolve the issue, you know, a trial schedule or

6     something like that.

7          THE COURT:  Understood.  Thank you very much.

8     Thank you, thank you.  Oh, okay, it'll -- yep, got it.  Got

9     it.  Mr. Moshenberg, is this -- in the Texas adversary is

10    there something we need to -- can you kind of tell me where

11    things stand there?

12         MR. MOSHENBERG:  Yes, Your Honor, gladly.  We're

13    in similar boats as Mr. Kimpler in terms of the motion to

14    reconsider, the way I understood at least the hearing.  But

15    I think from the word (indiscernible) as well.  More of the

16    issues we moved for summary judgment on was the total amount

17    being nondischargeable.  The court took that there was also

18    a fact issue on that.

19         But one of the arguments we made, and we explained

20    it to Judge Eskridge is the court couldn't have awarded

21    punitive damages unless there was a finding of an

22    intentional (indiscernible) intentionally conflicting

23    emotional distress on someone with an actual intent to do

24    it.  Because the only way to exceed Texas's punitive damages

25    cap is with an intent crime.

1          And the court's opinion talked about how we don't

2     know whether certain damages like punitive damages were

3     awarded out of recklessness or some lower standard that's

4     below a willful and malicious standard.  And so, Judge

5     Eskridge, you know, the way I read (indiscernible) at least,

6     encouraged us to come to come to the Court and reconsider

7     that issue as well.  Now, here's --

8          THE COURT:  That the way that the constitution --

9     but that has the constitutional issue, right?  That's this -

10    -

11         MR. MOSHENBERG:  No, Your Honor, there is no

12    constitutional --

13         THE COURT:  No, no.  I thought there was a -- if I

14    remember correctly, wasn't there kind of a -- I do remember

15    this issue.  Now, I remember what I did and why.  In that

16    one I think there was.  No, it may not be a constitutional

17    issue, but I remember there was a jury charge issue there

18    about the kind of what the jury -- I remember the issue.

19    Yep, let's tee the issues up.  Let's do it that way.

20         MR. MOSHENBERG:  Thank you, Your Honor.

21         THE COURT:  And then, we can kind of proceed.  I'm

22    glad we're having a conversation just to kind of get things

23    -- get things back on track.  What I would ask -- and I'll

24    turn to Jones counsel, what I would ask Mr. Kimpler and Mr.

25    Moshenberg is once you get it -- your pleadings on file,

1   just let my case manager know just so I know it's on and the

2   clock is ticking and that there's going to be a response.

3   And then, I will -- and then, I can take it up.  It would

4   just help me from a scheduling standpoint.

5              MR. KIMPLER:  Sure, Your Honor.

6              MR. MOSHENBERG:  Judge, I'm happy to do that.  One

7   wrinkle I just want to be up front with the Court on this.

8   We, you know, as I've mentioned to the Court on the 14th

9   when we met in person, Your Honor, one of our goals in this

10  bankruptcy was to get closure for our client which we sort

11  of (indiscernible) where there's a payment that's fair and

12  Jones stops talking about Sandy Hook and we move on.  My

13  clients get to move on at least.  And I think that's a

14  little bit of a different goal than what Connecticut has,

15  Your Honor.

16             And in that vein, we've had very constructive

17  talks with Jone's counsel and I'm hoping that at least

18  there's some sort of resolution that we can, you know, tell

19  you about Your Honor.  But the reason I bring all of that up

20  is I think in terms of the timeline of litigating in the

21  adversaries I'm not sure how much -- if we're going to get

22  to a deal, I don't want to burden Your Honor with a bunch of

23  filings and pleadings.  So, I just want to describe that for

24  Your Honor right now because my hope is that this is all

25  moot and there's eventually a deal and closure for my

1    clients.

2             THE COURT:  Thank you.  And look if it -- if the

3    parties want to resolve, just let me know whatever you get

4    on file, just let me know.  I just it's a little bit of a --

5    it would be super helpful for me because I think from a

6    tracking standpoint just so that were -- we stay on pace.

7    So, thank you.  Anyone from Jone's counsel wish to address

8    the Court?  Yeah.

9             MR. MCCULLEN:  Yes, Your Honor, can you hear me?

10            THE COURT:  Just fine.

11            MR. MCCULLEN:  Darren McCullen.

12            THE COURT:  Good -- yes, yes, good afternoon, sir.

13            MR. MCCULLEN:  Good afternoon.  I guess, first of

14   all, I just wanted to say that I think Ms. Driver is on the

15   line, she was telling me that she'd been trying to raise her

16   hand and couldn't get through.

17            THE COURT:  Oh.

18            MR. MCCULLEN:  So, I just wanted to --

19            THE COURT:  No, I see her.  I see her there, thank

20   you.

21            MR. MCCULLEN:  So, I think she's going to let me

22   go first and then she might have something to say afterward.

23            THE COURT:  All righty.

24            MR. MCCULLEN:  Yes, I guess, starting with, you

25   know, what Mr. Kimpler, yeah, I mean, I think I would agree

1    with, you know, what he said, you know, with the status of

2    the case, what the, you know, the southern district said.

3    You know, we had been in talks about, you know, next steps.

4            They had, you know, they kind of told us that

5    maybe they were going to file a Rule 59B motion.  It's

6    sounds like that's what they are going to do.  It sounds

7    like that kind of what the Court wants them to do to get the

8    issues kind of lined out.  You know, we -- I obviously we

9    disagree with the ancillary fee's argument.  We'll address

10   that in briefing.

11           We think that, you know, it's a, you know, that

12   the courts, you know, did not grant -- denied summary

13   judgment on the common law punitives for a disjunctive jury

14   instruction which seems to be what they did that the court -

15   - we argue that the court should have done that with the,

16   you know, the defamation and IED claims.  We'll address that

17   in the briefing if that's the way the Court wants to go.

18           And then, depending on, you know, what Your Honor

19   decides if there is still one claim of damages left then,

20   yeah, I guess, you know, we'll have to get a trial schedule

21   and move on with that from there.

22           THE COURT:  Got it.  Thank you.  Thank you.  Ms.

23   Driver.

24           MR. MCCULLEN:  Thank you, Your Honor.

25           MS. DRIVER:  Good afternoon, Your Honor.  I was

```
 1    almost -- I was almost wondering if you didn't want to hear
 2    from me on this.
 3              THE COURT:  No.
 4              MS. DRIVER:  I just didn't want to make a fool out
 5    of myself waving to you.  Your Honor, Mr. McCullen is
 6    absolutely handling the Connecticut matter, I don't have
 7    anything else to say on that.  And Mr. Moshenberg accurately
 8    described what I think will need to happen in the Texas
 9    adversary in the event we aren't able to finish off our
10    resolution.
11              But I agree with him, we're having productive
12    talks, and I think, you know, our issues for Mr. Jones and
13    what the Texas Plaintiffs are trying to here are going to
14    align in a way that we can resolve those issues, hopefully,
15    without any need for any further hearings in that particular
16    adversary or hopefully any of the Texas appeals and things
17    of that nature.
18              THE COURT:  Okay.  Is there anything -- so, it
19    sounds like there'll be a couple of motions filed in the
20    adversary proceedings and folks will let me know.  We'll
21    come back on Friday, take up the emergency motion and then
22    come back a couple weeks later, I think the 24th, and take
23    up another motion there.  So, anything else that anyone
24    wishes to -- and I guess, you'll keep me apprised as to kind
25    of other matters as they come up.
```

1          But okay, I'm -- let me just check and make sure I

2     didn't forget anyone else who hit five star.  Okay, folks, I

3     think that's it.  I just wanted to just make sure that we --

4     I turned my attention back and made sure that everyone was

5     getting what they needed and touching base again with

6     everything.  So, thank everyone very much, I wish everyone a

7     good day.  Thank you very much, we're adjourned.

8          All:  Thank you, Judge.

9     (Proceedings adjourned at 12:25 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          CERTIFICATION

 2

 3      I certify that the foregoing is a correct transcript from

 4      the electronic sound recording of the proceedings in the

 5      above-entitled matter.

 6

 7      [signature]

 8

 9

10      Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20      Veritext Legal Solutions

21      330 Old Country Road

22      Suite 300

23      Mineola, NY 11501

24

25      Date:  October 11, 2024
```