```
1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF TEXAS
2                          HOUSTON DIVISION

3    ALEXANDER E. JONES and       )  CASE NO: 22-33553-cml
     OFFICIAL COMMITTEE of        )
4    UNSECURED CREDITORS,         )  Houston, Texas
                                  )
5             Debtors.            )  Wednesday, September 11,
                                  )  2024
6                                 )
                                  )  12:00 PM to 12:24 PM
7    -----------------------------)
     NEIL HESLIN, ET AL.,         )  CASE NO: 23-03035
8                                 )  ADVERSARY
                  Plaintiffs,     )
9                                 )
          Vs.                     )
10                                )
     ALEXANDER E. JONES, ET AL.,  )
11                                )
                  Defendants.     )
12   -----------------------------)
     DAVID WHEELER, ET AL.,       )  CASE NO: 23-03037
13                                )  ADVERSARY
                  Plaintiffs,     )
14                                )
          Vs.                     )
15                                )
     ALEXANDER E. JONES, ET AL.,  )
16                                )
                  Defendants.     )
17   -----------------------------)

18                        STATUS CONFERENCE

19           BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                 UNITED STATES BANKRUPTCY JUDGE
20

21   APPEARANCES:

22   For Chapter 7          CHRISTOPHER R. MURRAY
     Trustee:               Jones Murray LLP
23                          602 Sawyer Street, Suite 400
                            Houston, TX 77007
24                          832-529-1999

25
```

| | | |
|---|---|---|
| 1 | For Christopher<br>Murray, Chapter 7 | ERIN E. JONES<br>Jones Murray LLP |
| 2 | Trustee: | 602 Sawyer Street, Suite 400<br>Houston, TX 77002 |
| 3 | | 832-529-1999 |
| 4 | | JOSHUA W. WOLFSHOHL<br>Porter Hedges, LLP |
| 5 | | 1000 Main, 36th Floor<br>Houston, TX 77002 |
| 6 | | 713-226-6000 |
| 7 | For U.S. Trustee: | HA MINH HGUYEN<br>Office of the United States Trustee |
| 8 | | 515 Rusk Street, Suite 3516<br>Houston, TX 77002 |
| 9 | | 202-590-7962 |
| 10 | For Free Speech Systems: | ANNIE E. CATMULL<br>O'ConnorWechsler, PLLC |
| 11 | | 4400 Post Oak Parkway, Suite 2360<br>Houston, TX 77027 |
| 12 | | 281-814-5977 |
| 13 | For Alexander E. Jones: | DERIC J. McCLELLAN<br>Crowe & Dunlevy |
| 14 | | 222 N. Detroit, Suite 600<br>Tulsa, OK 74120 |
| 15 | | 737-218-6187 |
| 16 | For Connecticut<br>Families: | KYLE KIMPLER<br>RYAN CHAPPLE |
| 17 | | ALINOR STERLING<br>Paul Weiss Rifkind Wharton & |
| 18 | | Garrison, LLP<br>1285 Avenue of the Americas |
| 19 | | New York, NY 10019<br>212-373-3253 |
| 20 | | |
| | For Texas Plaintiffs: | AVI MOSHENBERG |
| 21 | | McDowell Hetherington, LLP<br>1001 Fannin Street, Suite 2400 |
| 22 | | Houston, TX 77002<br>713-337-5580 |
| 23 | | |
| 24 | Court Reporter: | Unknown |
| 25 | Courtroom Deputy: | Unknown |

```
 1   Transcribed by:          Veritext Legal Solutions
                              330 Old Country Road, Suite 300
 2                            Mineola, NY 11501
                              Tel: 800-727-6396
 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   Transcript produced by transcription service.
```

```
 1      HOUSTON, TEXAS; WEDNESDAY, SEPTEMBER 11, 2024; 12:00 PM

 2                      (Call to Order)

 3          THE COURT:  Okay.  Good afternoon, everyone.  This

 4  is Judge Lopez.  Today is September the 11th.  I'm going to

 5  call Case Number 22-03353, the Alex Jones case here on a

 6  status conference.  Hope everyone is doing okay.  It's been

 7  a while since we've all seen each other.  I'll take

 8  appearances in the courtroom and then I will open it up to

 9  folks who wish to make an appearance online; just please hit

10  five star.  Good afternoon.

11          MR. MURRAY:  Good afternoon, Judge.  Chris Murray,

12  I'm the Chapter 7 Trustee.

13          THE COURT:  Good afternoon.

14          MS. JONES:  Good afternoon, Your Honor.  Erin

15  Jones for Christopher Murray, Chapter 7 Trustee.

16          THE COURT:  Good afternoon.

17          MR. WOLFSHOHL:  Good afternoon, Your Honor.

18  Joshua Wolfshohl from Porter Hedges on behalf of Chris

19  Murray, Chapter 7 Trustee.

20          THE COURT:  Good afternoon.

21          MR. NGUYEN:  Good afternoon, Your Honor.  Ha

22  Nguyen for the U.S. Trustee.

23          THE COURT:  Good afternoon.

24          MS. CATMULL:  Good afternoon, Your Honor.  Annie

25  Catmull here for O'ConnorWechsler.
```

1          THE COURT:  Good afternoon.  Okay.  Anyone on the

2     line wish to make an appearance, please hit five star.

3     Here's a 918 number.

4          MR. MCCLELLAN:  Yes, Your Honor.  This is Deric

5     McClellan on behalf of the Debtor, Alex Jones.

6          THE COURT:  Okay.  Good afternoon, sir.  There's a

7     212 number.

8          MR. KIMPLER:  Good afternoon, Your Honor.  It's

9     Kyle Kimpler from Paul Weiss on behalf of the Connecticut

10    families.  With me today is my co-counsel, Ryan Chapple and

11    Alinor Sterling.

12         THE COURT:  Okay, good afternoon.  And a 713

13    number.

14         MR. MOSHENBERG:  Good afternoon, Judge.  It's Avi

15    Moshenberg here on behalf of the Texas plaintiffs.

16         THE COURT:  Good afternoon.  Anyone else wish to

17    make an appearance?  Okay.

18         The purpose of today is just we haven't seen each

19    other in a while.  I thought it made sense to get together.

20    I know I checked the docket and it sounds like there were

21    some orders entered by Judge Eskridge; it's the underlying

22    adversary proceeding that went before the District Court at

23    some point.  And I thought maybe we could at least just talk

24    about the Jones case itself and kind of what's going on and

25    where things are going and if you needed anything.

1          MR. MURRAY:  Sure.  So at the most urgent level,

2     we filed and we're hoping to get it set before Friday, a

3     motion to sell the lake house.  The time urgency there is

4     that the buyer is in a unique situation.  They apparently

5     have to identify the target property for a 1031 exchange.

6     Their deadline to do that is Friday.  We're hoping to get

7     approval for a sale so that they can designate our property

8     and we can proceed with the process to sell to them.  We

9     filed that last night.

10          THE COURT:  Okay.  Since I know most of the folks

11     who are involved in that case are here, is there any

12     objection?  If anyone has any objection about it, that

13     someone please let me know and I'm certainly with everyone's

14     rights.  What else is going on just generally in the case?

15          MR. MURRAY:  So we also have a pending motion

16     that's set for hearing on the 24th of September, and that is

17     a motion for authority for me, as Chapter 7 Trustee in the

18     Jones case, to wind down assets of FSS.

19          THE COURT:  Okay.

20          MR. MURRAY:  And that is a liquidation process.

21     We have also filed a motion to retain Tranzon Advisors as

22     our auctioneer, and they've started work preparing the

23     marketing materials, and the idea there is to auction the

24     assets of FSS.  Now they're disputing claims on those

25     assets.  This Chapter 7 estate owns a hundred percent of the

1   entity.  Certainly, the entity is insolvent from a balance

2   sheet perspective because of the judgments against it, but

3   you also have PQPR asserting a lien on all the assets.

4          Our idea is to liquidate the assets of FSS, but

5   all of the proceeds, net of the cost of the liquidation,

6   would be kept pending further court order so that we can

7   punt on all those other issues.  We're talking to all the

8   parties.  I think there's at least a fair chance that we

9   might be able to resolve some of those issues short of

10  litigation.  But if we have to litigate, we're going to hold

11  everything until those disputes are resolved.

12         THE COURT:  Okay.  Anything else going on just

13  generally?  Aside from the -- says that we're having a

14  hearing, we may have a hearing on Friday, there's a

15  potential hearing -- a hearing on the 24th, just generally

16  how are things going?

17         MR. MURRAY:  So another sort of general issue, it

18  relates more to the FSS estate, but the professional fees

19  were approved there.  There was an order to pay professional

20  fees.  There was some cash of FSS that I've been holding as

21  the Chapter 7 Trustee.

22         THE COURT:  Yup.

23         MR. MURRAY:  I paid professional fees for all but

24  one professional who hasn't provided payment instructions

25  yet, paid those out of those funds.  What was interesting to

1    me, all of the professionals so far have requested that

2    those payments not go to operating, but go to IOLTA

3    accounts.  And the concern that's been raised is those are

4    still FSS cash or at least proceeds of FSS cash arguably

5    under the ages of the turnover order.  Now Your Honor may

6    require a turnover issued in state court.  There was also a

7    garnishment action filed.  Both of those were removed to the

8    Bankruptcy Court in the Western District.  They have now

9    been consolidated in front of Judge Bradley.

10          There is a pending motion from the plaintiffs to

11   remand those actions down to state court.  My concern is

12   those orders in those actions bear directly on

13   administration of these cases and the FSS matters you retain

14   jurisdiction over.  So our intention is in the near term to

15   file a motion to at least transfer venue of the removed

16   actions to this court, so -- and I think the Bankruptcy

17   Court supports this -- have all related matters heard in

18   front of the same court.  We have not gotten consent from

19   the plaintiffs to that motion, so that might be contested

20   over in the Western District, but that's sort of where that

21   stands.

22          And so, there's concern among the professionals

23   and some concern among other parties that until that

24   turnover order and that garnishment proceeding are finally

25   resolved, there's a cloud over the authority of what's going

1    on in this court with these matters.

2            THE COURT:  Okay.  I will -- I'll let the process

3    play out, but if you -- just keep me apprised as to what

4    happens with the -- you're saying there's a motion to

5    transfer.

6            MR. MURRAY:  We haven't filed a motion to transfer

7    venue yet, but we intend to shortly.  And there's a pending

8    motion to remand and, obviously, we'd like the venue issue

9    to be heard first, but that will take place before the

10   Western District and before Judge Bradley.

11           THE COURT:  Okay.  I will -- I will -- keep me

12   informed about what's going on.  And if I need to bring the

13   Texas plaintiffs in here to explain to me what's going on,

14   I'll do it, but maybe I don't need to.  Okay?

15           MR. MOSHENBERG:  And, Your Honor, I'm here.

16           THE COURT:  Oh no, no, no.  I mean on a separate

17   matter fully, but I want to respect the process.  That's not

18   before me and I don't want to put my thumb on the scale

19   about anything.  I just want to make sure that I stay

20   informed about what's going on and I don't want to put my

21   thumb on something.  Judge Bradley has the case and I think

22   he gets to make the call on those issues and he decides and

23   whatever he decides, he decides.  I don't -- I don't have a

24   say on it one way or the other, nor do I want to.

25           MR. MOSHENBERG:  That's fair, Judge.

1            THE COURT:  Okay.  So let me -- what else do we

2    need?

3            MR. MURRAY:  That's our status update.

4            THE COURT:  Okay.

5            MR. MURRAY:  If Your Honor has questions about any

6    other aspects, we're here and ready to answer.

7            THE COURT:  No, no, no.  I just wanted to make

8    sure that we were all on the -- kind of operating on the

9    same page and it's been a while since we had talked.  I

10   didn't know if you needed any court time.  I knew that that

11   was that one motion that had been filed.

12           Maybe I can just open it up and just hear from the

13   parties about potentially scheduling a hearing on Friday

14   about this matter.  If we did it, I can tell you now...

15           MR. WOLFSHOHL:  Your Honor, is this on the sale

16   motion that we were talking about?

17           THE COURT:  The potential, what I'll call the

18   Friday motion.

19           MR. WOLFSHOHL:  The Friday motion.  So just so you

20   know, I'm going to be in your court at 11:30 on a motion to

21   sell in the Texmark Chemical Exchange.  So if it's somewhere

22   around that time period...

23           THE COURT:  How long do you think that'll go?

24           MR. WOLFSHOHL:  I think it will be half an hour at

25   the most.  I don't think it's going to be contested.  I

1    think it's mostly just going to be Mr. Sommers, you know,

2    sort of proffering testimony.

3              THE COURT:  Let me just see.  Why don't we

4    schedule it tentatively for noon on Friday, subject to

5    anyone's rights to come in and tell me otherwise.  Anyone

6    else in the courtroom?  Miss Catmull.

7              MS. CATMULL:  Thank you, Your Honor.  Number one,

8    I'm working with Mr. Harold Mane on a different matter.

9    He's mediating it today, but he asked me to announce to the

10   court that due to an error I think in the proposed order on

11   its fees, I think he's going to be asking -- this is just an

12   FYI -- he's going to be asking for some sort of an amended

13   order that makes a $23,000 difference, so that's heading his

14   way.

15             And then just on the -- we're one of the law firms

16   that's holding the funds in our IOLTA account.  We've been -

17   -  it seems to me, that issue will play out -- I've been

18   thinking it through -- in one of four procedural ways.  One

19   may be the -- well, one obviously one would be stay

20   litigation; hopefully, it won't come to that.  Two, there is

21   the Trustee's pending motion for emergency relief that the

22   Court took up on the status conference on in June, so maybe

23   it'll get cleared up then.  Three, I guess if venue gets

24   transferred here, the Court could address it because the

25   Court will have jurisdiction over the turnover order.  And

1    then, four, there is still the issue of the Court's amended

2    dismissal order that it discussed at the hearing -- the

3    status conference on the Trustee's emergency motion.

4         So I'm going to see how those play out and then

5    confer with all the parties.

6         THE COURT:  The issue, and I don't want to kind of

7    belabor it, is I wrote an order so it's got to have -- so

8    the question is what affect does my order do and did I just

9    write an order that has no -- that no one can enforce

10   because there's concerns about what the order says.  So did

11   I just write an order in absentia and just kind of just

12   floats out there that no one can actually use, right, or I

13   authorize the Trustee to write a check and then someone else

14   can then backdoor and get the cash.  That's what I mean, but

15   I'll let the process play itself out.  I don't want to get

16   in the way of it.

17        But thank you very much, but I don't want to wait

18   really long for that.  Well, we'll take that up in due

19   court.

20        MS. CATMULL:  Thank you, Your Honor.

21        THE COURT:  Thank you.  Mr. Kimpler, can I just

22   ask you just with respect to the adversary proceedings, is

23   there anything -- that's been certainly a while since we

24   talked about that.  Is there anything in any of them that I

25   should kind of be aware of, anything we need to do in those

```
 1    cases?  I don't know if there is, but if there is, I don't
 2    want it to get kind of lost in what we're doing.
 3              MR. KIMPLER:  There is, Your Honor.  So let me
 4    just level-set, because it has been a long time since we
 5    talked about those.
 6              Your Honor, of course, ruled on summary judgment
 7    last October.  You'll recall that you granted summary
 8    judgment on the majority of the claim; you denied summary
 9    judgment on a portion of them.
10              Following that decision, Mr. Jones sought
11    interlocutory appeal because the order is not final because
12    you have not fully resolved all of the claims.  That was
13    briefed last year and, as you already alluded to, Judge
14    Eskridge held oral argument about that, I believe, in late
15    June of this year.  Judge Eskridge denied the interlocutory
16    appeal, so what he is saying is we do need to get a final
17    order before you before it can go up on appeal.
18              So where that leaves us right now is that we do
19    need to get to a resolution on whether the -- in the
20    Connecticut plaintiffs' case, the $300 million or so of
21    common law punitive damages are not for far or not
22    dischargeable.  What your order has done, Your Honor, is
23    just denied our motion for summary judgment that they were
24    dischargeable.  I doubt you've looked at the order itself,
25    but if you look at the opinion that Judge Eskridge wrote...
```

1          THE COURT:  There's kind of a point in there that

2     he wanted me to make sure that I thought about and that was

3     going to be my question.

4          MR. KIMPLER:  He did, so there's a suggestion

5     about maybe we should take a second look at that.

6     Obviously, he's not prejudging and I'm not either.  But one

7     of two things does need to happen before Your Honor.  We

8     either need to get a trial schedule going to get final

9     resolution on that piece or we can file a reconsideration

10    motion.  Our plan is to file a Rule 54(b) reconsideration

11    motion.  We probably will have that on file if not the end

12    of this week, the beginning of next week.  It's a pretty

13    short motion.  It lays out the issues it asks you to

14    reconsider.

15         In our view of the appropriate next steps and

16    we've had some discussions with Mr. Jones' counsel on this.

17    But our view of the appropriate next steps is let's brief

18    that issue.  I don't think it takes a lot of briefing.

19    Again, I think our brief is probably 12 to 15 pages.  I

20    think you could do it in about 30 days.  We'd ask you to

21    take a second look at that.  It may be that you say I got it

22    right the first time, there's nothing to reconsider, at

23    which point we then need to start thinking about trial steps

24    to then take that claim to conclusion.  It may be that you

25    take a second look at it, think that maybe you can resolve

1    it, in which case then we have a final order and the whole

2    thing can go back up to Judge Eskridge.

3            THE COURT:  Mr. Kimpler.

4            MR. KIMPLER:  Yes.

5            THE COURT:  I think I cut you off on the point

6    where you were actually telling me what the specific issue

7    was.  Can you just identify for me...

8            MR. KIMPLER:  Yes.  So there is $300- -- so

9    there's a $1.4 billion collective judgment for the

10   Connecticut plaintiffs.  Your order found that $1.1 billion

11   of that was non-dischargeable.

12           THE COURT:  Right.

13           MR. KIMPLER:  Ther is $300 million of it that is

14   really attorneys' fees, but it's the common law punitive

15   damages.

16           THE COURT:  I remember.

17           MR. KIMPLER:  And you found that because the jury

18   instructions there included an element of wantonness, that

19   you could not grant summary judgment.  And not to get too

20   into the weeds, but there is -- there's case law that

21   suggests that those ancillary types of obligations follow

22   the underlying conduct.

23           THE COURT:  Right.

24           MR. KIMPLER:  And so, to preview what our

25   reconsideration motion will say is if you found the

1    underlying conduct to be willful and malicious, then

2    ancillary obligations such as attorneys' fees, expenses are

3    also non-dischargeable.  So that is what we would try to tee

4    up for you on a motion for reconsideration.  Again, I don't

5    want to --

6              THE COURT:  I got it.  I remember.

7              MR. KIMPLER:  But as far as next steps for you and

8    court time and things like that, it is our intent to file

9    that motion -- again, it's a fairly brief motion -- sometime

10   in the next week, and then we'd be willing to agree to

11   whatever schedule works for Mr. Jones.  But we'd like to get

12   that resolved soon so that we can get a final order in this

13   court and then get up to the next level of appeal as soon as

14   possible.  It may be that that's not what happens and we

15   need to then start talking about -- to resolve the issue,

16   you know, a trial schedule or something like that.

17             THE COURT:  Understood.  Thank you very much.

18   Thank you, okay.  Yup, got it.  Got it.

19             Mr. Moshenberg, is this -- in the Texas adversary,

20   is there something we need to -- can you kind of tell me

21   where things stand there?

22             MR. MOSHENBERG:  Yes, Your Honor, gladly.  We're

23   in similar boats as Mr. Kimpler in terms of a motion to

24   reconsider, the way I understood at least the hearing, but I

25   think from the order we gleaned as well.  One of the issues

1    we moved for summary judgment on was the total amount being

2    non-dischargeable.  The Court thought that there was a fact

3    issue on that.

4         But one of the arguments we made and we explained

5    to Judge Eskridge is the Court couldn't have awarded

6    punitive damages unless there was a finding of an intent to

7    apply intentionally inflicting emotional distress on someone

8    with an actual intent to do it, because the only way to

9    exceed Texas's punitive damages cap is with an intent crime.

10   And the Court's opinion talked about how we don't know

11   whether certain damages like punitive damages were awarded

12   out of recklessness or some lower standard that's below

13   willful and malicious standard.

14        And so, Judge Eskridge, you know, the way I read

15   the order at least, encouraged us to come to this Court and

16   reconsider that issue as well.

17        THE COURT:  That's the one with the -- but that

18   has the constitutional issue, right?  That's the --

19        MR. MOSHENBERG:  No, Your Honor, there is no

20   constitutional issue.

21        THE COURT:  No, no, I thought there was a -- if I

22   remember correctly, wasn't there kind of a -- I do remember

23   this issue.  Now, I remember what I did and why in that one.

24   I think there was.  It may not be a constitutional issue,

25   but I remember there was a jury charge issue there about

1    kind of what the jury -- I remember the issue, yup.  Let's

2    tee the issues up, let's do it that way.

3           MR. MOSHENBERG:  Thank you, Your Honor.

4           THE COURT:  And then we can kind of proceed.  I'm

5    glad we're having a conversation just to kind of get things

6    back on track.  What I would ask -- and I'll turn to Jones'

7    counsel -- what I would ask Mr. Kimpler and Mr. Moshenberg

8    is once you get your pleadings on file, just let my case

9    manager know just so I know it's on and the clock is ticking

10   and that there's going to be a response and then I can take

11   it up.  It would just help me from a scheduling standpoint.

12          MR. KIMPLER:  Sure, Your Honor.  I'm happy to do

13   that.  One wrinkle, I just want to be up front with the

14   Court on this, you know, as I've mentioned to the Court on

15   the 14th when we met in person, Your Honor, one of our goals

16   is bankruptcy was to get closure for our clients and reach

17   some sort of outcome where there's a payment that's fair and

18   Jones stops talking about Sandy Hook and we move on.  My

19   clients get to move on at least.

20          And I think that's a little bit of a different

21   goal than what Connecticut has, Your Honor.  And in that

22   vein, we've had very constructive talks with Jones' counsel

23   and I'm hoping that leads to some sort of resolution that we

24   can, you know, tell you about, Your Honor.

25          But the reason I bring all that up is I think in

1    terms of the timeline of litigating and the adversaries, I'm

2    not sure how much -- if we're going to get to a deal, I

3    don't want to burden Your Honor with a bunch of filings and

4    pleadings.  So I just want to advise that for Your Honor

5    right now because, you know, my hope is that this is all

6    moot and there's eventually a deal and closure for my

7    clients.

8           THE COURT:  Thank you.  No, no, look, and if the

9    parties want to resolve, just let me know.  Whatever you get

10   on file, just let me know.  It's a little bit of a -- it

11   would be super helpful for me because I think from a

12   tracking standpoint just so that we stay on pace, so thank

13   you.

14          Anyone from Jones' counsel wish to address the

15   Court?

16          MR. MCCLELLAN:  Yes, Your Honor.  Can you hear me?

17          THE COURT:  Just fine.

18          MR. MCCLELLAN:  This is Mr. McClennan.

19          THE COURT:  Yes, yes.  Good afternoon, sir.

20          MR. MCCLELLAN:  Good afternoon.  I guess first of

21   all, I just wanted to say I think Miss Driver is on the

22   line.  She was telling me that she'd been trying to raise

23   her hand and couldn't get through, so I just wanted to...

24          THE COURT:  Oh, no, I see her.  I see her there.

25   Thank you.

```
 1          MR. MCCLELLAN:  I think she's going to let me go

 2    first and then she might have something to say afterward.

 3          Yes, I guess, you know, starting with, you know,

 4    what Mr. Kimpler said.  Yeah, I mean, I think I would agree

 5    with, you know, what he said with the status of the case,

 6    what the Southern District said.  You know, we had been in

 7    talks about next steps.  They had, you know, kind of told us

 8    that maybe they were going to file a Rule 59(b) motion.  It

 9    sounds like that's what they are going to do.  It sounds

10    like that's kind of what the Court wants them to do to get

11    the issues kind of lined out.  Obviously, we disagree with

12    the ancillary fees argument.  We'll address that in

13    briefing.

14          We think that, you know, the Court did not grant

15    -- denied summary judgment on the common law punitives for a

16    disjunctive jury instruction, which seems to be what they

17    did, at the court.  We argue that the Court should have done

18    that with the, you know, defamation and IED claims.  We'll

19    address that in the briefing if that's the way the Court

20    wants to go.  And then depending on, you know, what Your

21    Honor decides, if there is still one claim of damages left,

22    then I guess we'll have to get a trial schedule and move on

23    from there.

24          THE COURT:  Got it.  Thank you.  Miss Driver.

25          MR. MCCLELLAN:  Thank you, Your Honor.
```

1              MS. DRIVER:  Good afternoon, Your Honor.  I was

2    almost wondering if you didn't want to hear from me.

3              THE COURT:  No.

4              MS. DRIVER:  I just didn't want to make a fool out

5    of myself waving too much.

6              Your Honor, Mr. McClellan is absolutely handling

7    the Connecticut matter.  I don't have anything else to say

8    on that.  And Mr. Moshenberg accurately described what I

9    think will need to happen in the Texas adversary in the

10   event we aren't able to finish off our resolution.  But I

11   agree with him, we're having productive talks.

12             And I think our issues for Mr. Jones and what the

13   Texas plaintiffs are trying to do here are going to align in

14   a way that we can resolve those issues, hopefully, without

15   any need for any further hearings in that particular

16   adversary or, hopefully, in any of the Texas appeals and

17   things of that nature.

18             THE COURT:  Okay.  Is there anything -- so it

19   sounds like there'll be a couple of motions filed in the

20   adversary proceedings and folks will let me know.  We'll

21   come back on Friday, take up the emergency motion, and then

22   come back a couple of weeks later -- I think the 24th -- and

23   take up another motion there.

24             Is there anything else that anyone wishes to -- I

25   guess you'll keep me apprised as to kind of other matters as

1    they come up.  Okay, let me just check, make sure I didn't

2    forget anyone else who hit five star.  Okay.  Folks, I think

3    that's it.  I just wanted to just make sure that I turn my

4    attention back and made sure that everyone was getting what

5    they needed and touching base again with everything.  So

6    thank everyone very much and wish everyone a good day.

7    Thank you very much.  We're adjourned.

8            (Proceedings adjourned at 12:24 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  October 15, 2024
```