**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| | § |
| In re: | § Chapter 7 |
| | § |
| ALEXANDER E. JONES, | § Case No. 22-33553 (CML) |
| | § |
| Debtor. | § |
| | § |
| | § |

**TRUSTEE'S <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER AUTHORIZING**
**(I) THE SALE OF INTELLECTUAL PROPERTY ASSETS IN CONNECTION WITH**
**THE WINDDOWN OF FREE SPEECH SYSTEMS, LLC AND**
**(II) THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS**
[Relates to Docket No. 829]

---

This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.

Represented parties should act through their attorney.

Parties receiving this Motion should locate their names and their contracts on <u>Exhibit A</u> attached hereto.

Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.

---

Christopher R. Murray, the Chapter 7 Trustee (the "***Trustee***") for the bankruptcy estate of

Alexander E. Jones ("***Jones***" or the "***Debtor***") files this motion (the "***Motion***") for entry of an

order authorizing the sale of assets of the Jones bankruptcy estate in connection with the winddown

of Free Speech Systems, LLC ("***FSS***") and the assumption and assignment of certain executory

contracts.  In support of this Motion, the Trustee respectfully states as follows:

1

## PRELIMINARY STATEMENT

1.　　The Court's *Order Granting Trustee's Motion for Entry of an Order Authorizing the Winddown of Free Speech Systems, LLC* [Docket No. 859] (the "***Winddown Order***")[1] which authorized the Trustee to, amongst other things, auction and sell the non-cash assets of FSS.   The Court's *Order Supplementing Order Dismissing Case* [Case No. 22-60043, Docket No. 1021] (the "***Supplemental Dismissal Order***") provided that all property of FSS was deemed vested in the bankruptcy estate of the Debtor upon the dismissal of the FSS bankruptcy case.   The Trustee continues to operate the business of FSS with those assets pursuant to the Supplemental Dismissal Order and the Jones estate's ownership of 100 percent of the outstanding membership interests in FSS.

2.　　In connection with the Winddown Order and the Supplemental Dismissal Order, the Trustee seeks to sell the Jones bankruptcy estate's interest in (i) the social media accounts of Jones (the "***Social Media Accounts***"), (ii) the book entitled *The Great Reset: And the War for the World*, including any royalties related thereto under an agreement with the publisher (collectively, the "***Book Rights***"), and (iii) all rights in the videogame entitled *Alex Jones: NOW Wars*, including any royalties related thereto under an agreement with the videogame developer (the "***Videogame Rights***", and together with the Social Media Accounts and the Book Rights, the "***Jones IP Assets***").   For the avoidance of doubt, the Trustee is not seeking to sell any assets to which the Debtor's estate does not have a right, title or interest.

3.　　The Trustee and his advisors have received interest from multiple parties in purchasing the Social Media Accounts in particular, and in the other Jones IP Assets in general, in

---

[1] The facts surrounding the FSS winddown and the sale timeline are more fully stated in the Trustee's Motion for Entry of an *Order Authorizing the Winddown of Free Speech Systems, LLC* [Docket No. 829] and the FSS Winddown Order, respectively, and are fully incorporated herein by reference.

15546064

connection with indications of interest in the FSS Assets (as defined in the Winddown Order).  The Trustee believes, in his rational business judgment, that including the Jones IP Assets in the IP Assets Auction (as defined in the Winddown Order) will enhance overall recoveries achieved through the IP Assets Auction.

4.      While the Trustee does not believe any party has liens, claims, or interests against the Jones IP Assets, all parties asserting liens, claims, or interests against the Jones IP Assets, to the extent there are any, would retain those rights in the net proceeds, which would be held by the Trustee pending further order of this Court.

## JURISDICTION AND VENUE

5.      The United States Bankruptcy Court for the Southern District of Texas has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and this Court may enter a final order consistent with Article III of the United States Constitution.

6.      Venue is proper pursuant to 28 U.S.C. § 1408.

7.      The bases for the relief requested herein are sections 105, 363, 365 and 704(a) of title 11 of the United States Code (the "***Bankruptcy Code***") and rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Bankruptcy Local Rules***").

## BACKGROUND

I.      **Bankruptcy Proceedings**

8.      On July 29, 2022, FSS filed its voluntary petition for relief under chapter 11 subchapter V of the Bankruptcy Code.

15546064

9.      On December 2, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (prior to the Conversion Date, the "**Jones Chapter 11 Case**", and after the Conversion Date, the "**Jones Chapter 7 Case**").  The Debtor is an employee of FSS.  100 percent of the outstanding membership interests in FSS are owned by the Debtor's bankruptcy estate.

10.     On December 13, 2022, the United States Trustee for Region 7 (Southern and Western Districts of Texas) (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors in the Jones Chapter 11 Case pursuant to Bankruptcy Code section 1102(a)(1).

11.     The Debtor continued managing his assets as debtor and debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code until the Court entered its *Order Converting Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code* [Docket No. 708] on June 14, 2024 (the "**Conversion Date**").  On June 21, 2024, the Court entered an order dismissing the FSS Case [Case No. 22-60043, Docket No. 956] (the "**Dismissal Order**"), while retaining exclusive jurisdiction over several adversary proceedings and the approval of professional fees and expenses, as supplemented by the Supplemental Dismissal Order (as defined below).  On the Conversion Date, the U.S. Trustee appointed Christopher R. Murray as the Chapter 7 Trustee in the Jones Chapter 7 Case.

12.     On August 22, 2024, the Trustee filed the *Trustee's Motion for Entry of an Order Authorizing the Winddown of Free Speech Systems, LLC* [Docket No. 829].

13.     On September 25, 2024, the Court entered the Supplemental Dismissal Order, which provided that effective as of the entry of the Dismissal Order, the property of FSS's bankruptcy estate was deemed vested in the bankruptcy estate of Jones as property of his estate to be administered by the Trustee.  The Trustee continues to operate FSS pursuant to the terms of the

15546064

Dismissal Order, the Supplemental Dismissal Order, and the Jones estate's ownership of 100 percent of the membership interest in FSS.

14.     On September 25, 2024, the Court entered the Winddown Order.

## II.     Jones IP Assets

15.     Over the past two decades, social media accounts of influencers, celebrities, and political personalities have become valuable assets.  Jones' Social Media Accounts are frequently used to promote and post Infowars content, and in some cases have a significant number of followers.  The Social Media Accounts to which the Debtor's estate has an interest are the following:

| Social Media Accounts | |
|---|---|
| X (formerly Twitter): https://x.com/RealAlexJones | Bitclout: https://bitclout.com/u/AlexJones |
| Gab.com: https://gab.com/RealAlexJones | Telegram: https://t.me/AlexJonesChannel |
| Bitchute: https://www.bitchute.com/channel/tVt4srrb0hdW/ | SubscribeStar: https://www.subscribestar.com/alexjones |
| Minds: https://www.minds.com/TheAlexJonesChannel | VK: https://vk.com/alexjoneslive |
| Gettr: https://gettr.com/user/alexjones | Cozy.TV: https://cozy.tv/alexjones |
| Sovren: https://sovren.media/u/alexjones/ | Parler: https://app.parler.com/alexjones |
| BrighteonSocial: https://brighteon.social/@AlexJones | Truth Social: https://truthsocial.com/@realAlexJones |
| Social1776: https://social1776.com/RealAlexJones | FreeTalk45: https://freetalk.app/RealAlexJones |

16.     The Book Rights owned by the Jones bankruptcy estate include the book rights and royalty rights to *The Great Reset: And the War for the World*.  The Debtor is party to a Publishing Agreement (the "***Publishing Agreement***"), dated February 4, 2022, with Skyhorse Publishing Inc. for the publication of the book.  In connection with the Publishing Agreement, the Debtor has a right to receive royalties from the sale of *The Great Reset* and has certain other subsidiary rights related to the book, including a reversionary right to *The Great Reset*'s copyright.  During the Jones Chapter 11 Case, the Debtor filed a motion to assume the Publishing Agreement [Docket

No. 368].   While a hearing regarding the motion was held on November 27, 2023, an order approving the assumption of the Publishing Agreement was never entered.

17.   The Videogame Rights owned by the Jones bankruptcy estate include all rights Jones had as of the Petition Date in the videogame entitled *Alex Jones: NOW Wars*, including any royalties related thereto.   The Debtor is party to the Alex Jones Video Game Agreement (the "***Videogame Agreement***"), dated February 22, 2022, with Mint Studios for the creation, marketing and sale of the videogame.[2]

18.   Upon the Petition Date, the bankruptcy estate's rights and interests in the Social Media Accounts, under the Publishing Agreement, and under the Videogame Agreement became property of his estate.

19.   On August 22, 2024, Trustee filed an application to employ Tranzon Asset Advisors and ThreeSixty Asset Advisors (collectively, "***Tranzon360***") to market, auction, and sell the FSS Assets and assets of Jones' bankruptcy estate [Docket No. 828].   On September 16, 2024, the Court approved the application to employ Tranzon360 [Docket No. 844].

## REQUESTED RELIEF

20.    The Trustee seeks authorization to auction and sell all right, title and interest owned by the Debtor's estate in the Jones IP Assets through the IP Assets Auction, which has been authorized by the Court.   The Trustee believes, in his reasonable business judgment, that the sale of the estate's interest in the Jones IP Assets along with the FSS IP Assets will enhance overall bidding.

21.   The Trustee accordingly seeks entry of an order substantially in the form attached hereto (the "***Proposed Order***"), (i) approving and authorizing inclusion of the Jones estate's

---

[2] The Publishing Agreement and the Videogame Agreement are listed on **Exhibit B** attached hereto.

15546064

interest in the Jones IP Assets in the IP Assets Auction (if any) and sale authorized by the Winddown Order, including authorizing the Trustee to take all actions necessary to close the sale of the Jones IP Assets according to the procedures set forth in the Winddown Order; (ii) approving and authorizing the assumption and assignment of any agreements related to the Social Media Accounts, and to the extent executory, the Videogame Agreement and the Publishing Agreement;[3] and (iii) including the Jones IP Assets in the "IP Assets" category for the purposes of the calculation and payment of the auctioneer compensation and reimbursement of expenses of Tranzon360 (collectively the "***Commission and Reimbursement***") which, for the avoidance of doubt, are:

| IP Assets | 10% on proceeds $0-$500,000.00<br>7% on proceeds $500,000.01 to $2,000,000.00<br>5% on proceeds over $2,000,000.00 |
| --- | --- |
| Remaining Assets | 15% of proceeds of the Remaining Assets |
| Expense Reimbursement | Estimated to be between $70,000 and $75,000 |

## BASIS FOR RELIEF

**I. The Court Should Approve the Sale of the Jones IP Assets**

> **a.   The sale of the Jones IP Assets as part of the IP Assets Auction is a sound exercise of the Trustee's business judgment.**

22.     Section 704(a) of the Bankruptcy Code provides the duties of chapter 7 trustee, and in particular directs the trustee "to collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."[4]   Section 363(b)(1) of the Bankruptcy Code provides that a trustee, "after

---

[3] The Contracts that the Trustee seeks to assume and assign (with respect to the Social Media Accounts) are listed on **Exhibit A** attached hereto.

[4] 11 U.S.C. § 704(a)(1).

notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."[5]   Section 105(a) of the Bankruptcy Code permits a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[6]

23.     A trustee's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets and when there is "some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."[7] Once a trustee articulates a valid business justification, the court should review that request under the business judgment rule.[8]  The business judgment rule protects certain trustee decisions from reevaluation by a court with the benefit of hindsight.[9]  Thus, if a trustee's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.  The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.[10]

---

[5] 11 U.S.C. § 363(b)(1).

[6] 11 U.S.C. § 105(a).

[7] *See, e.g., In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Crutcher Resources Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business but the movant must articulate some business justification for the sale.").

[8] *See In re Gulf Coast Oil Corp.*, 404 B.R. 407, 415 (Bankr. S.D. Tex. 2009) (noting that a debtor in possession has the discretionary authority to exercise business judgment given to an officer or director of a corporation).

[9] *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially.").

[10] *See In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale de-signed to maximize value for the estate."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect

24.     Here, the sale of the Jones IP Assets through the IP Assets Auction (if any) will allow the Trustee to determine the highest or otherwise best price for the assets because of the exposure to the market.[11]   The Trustee has received interest from multiple parties in purchasing the Jones IP Assets, in particular, the Social Media Accounts.  The sale of the Jones IP Assets will lead to greater recoveries for Jones' creditors.  In addition, because of the exposure to the market, the consideration obtained for the Jones IP Assets will be fair and reasonable and at or above market price.

### b.     The estate's interest in the Social Media Accounts may be sold.

25.     The estate's interest in the Social Media Accounts may be sold by the Trustee, and the Trustee requests authority to sell such interests.

26.     Social media accounts have been recognized as valuable assets that may be sold.[12] This is certainly true for individuals, like the Debtor, who use their social media accounts for product promotion, content generation, and other commercially beneficial purposes.  This Court has treated social media accounts as property of a debtor's estate and described them as akin to a subscriber or customer list.[13]

27.     In *dicta*, this Court reasoned that,

> the primary limitation on recognition of a *persona* as estate property is the 13th Amendment's prohibition on involuntary servitude. Just as a debtor may not assume contracts that would require any individual to perform personal services, … a

---

to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (internal citations omitted).

[11] *See Bank of Am. Nat'l Trust & Sav. Ass'n. v. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999); *see also In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (while a "sale transaction does not require an auction procedure," "the auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction").

[12] *See In re CTLI, LLC*, 528 B.R. 356, 366–68 (Bankr. S.D. Tex. 2015).

[13] *Id.* at 367–68 (citing *In re Borders Grp., Inc.*, No. 11-10614 MG, 2011 Bankr. LEXIS 4606, at *13 (Bankr. S.D.N.Y. Sept. 27, 2011)).

debtor may not use estate property in a manner that would require any individual to perform personal services.[14]

Other courts outside the Fifth Circuit have recognized that the rise of the social media influencer has changed the way in which courts must understand ownership of social media accounts.[15]  The *Vital Pharmaceuticals* court observed that, "the social media influencer's account is, arguably, itself the business, and that business is owned by the social media influencer—not the companies whose products the influencer promotes."[16]

28.     Alex Jones' Social Media Accounts are not the ordinary accounts of a private citizen, and the sale of the Jones bankruptcy estate's interests in the Social Media Accounts does not require Alex Jones to perform any personal services that would otherwise violate the 13th Amendment and does not constitute a sale or licensing of Jones' *persona*.  The Trustee only seeks to sell the estate's interests in the Social Media Accounts and is not seeking to compel Mr. Jones to post content on such accounts or license the use of his *persona*.  Importantly, the Social Media Accounts are primarily used by the Debtor to promote the Infowars brand, its broadcasts, Jones' books and the videogame.  The Social Media Accounts are therefore integral to the business of FSS, to Jones' role in furthering that business, and to the Jones estate's business interests as well.

---

[14] *Id.* at 367 (citing *Matter of Tonry*, 724 F.2d 467, 469 (5th Cir. 1984)).  The Court specifically noted that, while a property interest in an individual profile might not ordinarily become property of the debtor's estate, "the official page of a celebrity or public figure that is managed by employees might be treated differently." *Id.* (citing Melissa B. Jacoby & Diane Leenheer Zimmerman, *Foreclosing on Fame: Exploring the Uncharted Boundaries of the Right of Publicity*, 77 N.Y.U. L. Rev. 1322, 1347-57 (2002)).

[15] *See In re Vital Pharm.*, 652 B.R. 392 (Bankr. S.D. Fla. 2023) (developing a framework for determining whether the social media influencer or the company promoted has ownership rights in a social media account).  The holding of the *Vital Pharmaceuticals* case is largely inapplicable to the instant case because there is no argument about whether FSS or Jones owns the Social Media Accounts.  Regardless of *which* is properly the owner of the Social Media Accounts, there is a property interest in the accounts that may be sold.

[16] *Id.* at 407.

Therefore, the estate's interests in the Social Media Accounts are valuable assets that the Trustee reasonably believes should be sold in the IP Assets Auction.

### c.    The estate's rights and interests in and pursuant to the Publishing Agreement may be sold.

29.    The Publishing Agreement is non-executory, and the estate's rights and interests in and arising from the Publishing Agreement may be sold and assigned without assumption.  "[A] contract is executory if 'performance remains due to some extent on both sides' and if 'at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party.'"[17]  "[T]he test for an executory contract is whether, under the relevant state law governing the contract, each side has at least one material unperformed obligation as of the bankruptcy petition date."[18]

30.    The Debtor transferred the copyright to the publisher under the Publishing Agreement, subject to certain reversionary rights held by the Debtor in the copyright for the book. To the Trustee's knowledge, Jones' obligations under the Publishing Agreement have been performed, and he no longer has any material obligations under such agreement.   The estate's interests include the right to receive continued royalty payments under the Publishing Agreement. The Trustee seeks to auction and sell the rights Jones' bankruptcy estate has under the Publishing Agreement.

---

[17] *Argonaut Ins. Co. v. Falcon V, L.L.C. (In re Falcon V, L.L.C.)*, 44 F.4th 348, 352 (5th Cir. 2022) (quoting *In re Provider Meds.*, 907 F.3d 845, 851 (5th Cir. 2018) (citations omitted)).

[18] *In re Weinstein Co. Holdings LLC*, 997 F.3d 497, 504 (3d Cir. 2021).

15546064

      **d.**      **The estate's rights and interests in and pursuant to the Videogame Agreement may be sold**.

31.     The Videogame Agreement is also non-executory, and the estate's rights and interests in and arising from the Videogame Agreement may be sold and assigned without assumption.[19]

32.     No performance obligations remain for the Debtor's estate. For the avoidance of doubt, while the Videogame Agreement is, in part, a license to use the Debtor's likeness and image in the videogame, the Trustee is not attempting to sell any right to use his likeness and image by selling the rights and interests under the Videogame Agreement. The Trustee is only requesting authority to auction and sell whatever interests are owned by the Debtor's estate, which include the right to receive a stream of royalty payments under the Videogame Agreement. Therefore, the Trustee believes the estate's rights and interests under the Videogame Agreement have economic value to the Debtor's estate and, in the Trustee's reasonable business judgment, should be sold.

      **e.**      **The Trustee seeks to assume and assign the executory contracts associated with the Social Media Accounts, and, in the alternative to the relief requested in section I(c) and I(d) *supra,* the Publishing Agreement and the Videogame Agreement.**

33.     To the extent that the Social Media Accounts are governed by terms and conditions that are executory contracts, and to the extent that the Videogame Agreement and the Publishing Agreement are determined by the Court to be executory contracts, the Trustee seeks to assume and assign, in connection with the sale of the Jones IP Assets, such agreements to the successful bidder(s) at the IP Assets Auction (if any). For the avoidance of doubt, the Trustee does not believe the Videogame Agreement and the Publishing Agreement are executory and only seeks relief in this section with respect to those agreements in the alternative.

---

[19] *See Falcon V*, 44 F.4th at 352.

34.     Section 365 of the Bankruptcy Code authorizes a trustee to assume and/or assign an estate's executory contracts and unexpired leases, subject to approval of the court, *provided* that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided.  The Trustee's decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment.[20]

35.     The Trustee further requests that any party that fails to object to the proposed assumption and assignment of executory contracts be deemed to consent to such assumption and assignment pursuant to section 365 of the Bankruptcy Code on the terms set forth in the proposed order.[21]

36.     Here, the Court should approve the decision to assume and assign the contracts, to the extent they are executory, in connection with the sale of the Jones IP Assets.  The assumption and assignment is a sound exercise of the Trustee's business judgment.  The contracts are essential to the value of the Jones IP Assets and therefore essential to achieve the highest or otherwise best offer for the Jones IP Assets.  It is unlikely that any purchaser would acquire the Jones IP Assets unless they were certain the contracts were included in the transaction.

37.     Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code, specifically that a debtor (a) cure, or provide adequate assurance of promptly curing, prepetition

---

[20] *See, e.g.*, *Richmond Leasing*, 762 F.2d at 1309 (applying a business judgment standard to debtor's determination to assume unexpired lease).

[21] *See, e.g.*, *In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objection to sale motion, creditor was deemed to consent); *Pelican Homestead v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

15546064

defaults in the executory contract, (b) compensate parties for pecuniary losses arising therefrom, and (c) provide adequate assurance of future performance thereunder.[22]

38.     The statutory requirements of section 365(b)(1)(A) of the Bankruptcy Code will be satisfied because there are no defaults that must be cured under the contracts.  Similarly, the third requirement of 365(b)(1)(A) of the Bankruptcy Code—adequate assurance of future performance—is also satisfied given the facts and circumstances present here.  "The phrase 'adequate assurance of future performance' adopted from section 2-609(1) of the Uniform Commercial Code, is to be given a practical, pragmatic construction based upon the facts and circumstances of each case."[23] Although no single solution will satisfy every case, "the required assurance will fall considerably short of an absolute guarantee of performance."[24] Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.[25]

39.     As part of the bidding procedures proposed in the Winddown Order, the Trustee will evaluate the financial wherewithal of potential bidders before designating such party a qualified bidder in the IP Assets Auction.  This requires assessing the financial credibility, willingness, and ability of the interested party to perform under any assigned contracts.  In addition, none of the contracts the Trustee proposes to assign require any financial performance from an assignee. The Court therefore has a sufficient basis to authorize the estate's assumption of the

---

[22] *See In re Luce Indus., Inc.*, 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980).

[23] *In re U.L. Radio Corp.*, 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982).

[24] *In re Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994).

[25] *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance present where a prospective assignee has financial resources and has expressed a willingness to devote sufficient funding to a business to give it a strong likelihood of succeeding).

contracts, to the extent they are executory, and assign the contracts to the successful bidder at the IP Assets Auction.

## II.  The Court Should Approve the Trustee's Entry into Purchase Agreement(s) as an Exercise of Sound Business Judgment.

40.     As noted above, the business judgment rule shields a trustee or debtor-in-possession's decisions from judicial second-guessing.[26]  Once a trustee articulates a valid business justification, the court should review that request under the business judgment rule.[27]  The business judgment rule protects certain decisions—such as the Trustee's entry into a purchase agreement—from reevaluation by a court with the benefit of hindsight.[28]  If a trustee's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.  Based on this rationale, courts have authorized a trustee's sale of assets as a sound exercise of business judgment under section 363 of the Bankruptcy Code.

41.     The Trustee has set forth a sound business justification for selling the Jones IP Assets.  The Trustee has a duty to maximize the value of the Debtor's estate.  The Trustee and his advisors have received interest in the Jones IP Assets from several parties but desires to explore a more comprehensive marketing process for the sale of the Jones IP Assets in order to achieve the highest value and best offer for the FSS Assets and the Jones IP Assets, which is in the best interests of the Debtor's estate.  The sale of the Jones IP Assets will be subject to the "market check" of the

---

[26] *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (a "presumption of reasonableness attaches to a debtor's management decisions" and courts generally will not entertain objections to the debtor's conduct after a reasonable basis is set forth).

[27] *See In re Gulf Coast Oil Corp.*, 404 B.R. 407, 415 (Bankr. S.D. Tex. 2009) (noting that a debtor in possession has the discretionary authority to exercise business judgment given to an officer or director of a corporation).

[28] *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially.").

15546064

IP Assets Auction (if any) and will constitute, in the Trustee's reasonable business judgment, the highest or otherwise best offers for the Assets and will provide a greater recovery for the Debtor's estate than any known or practically available alternative.[29]

42.     The purchase agreement, as applicable, of any successful bidder will constitute the highest or otherwise best offer for the Jones IP Assets, which will provide a greater recovery than would be provided by any other available alternative. The Trustee's determination to sell the Jones IP Assets through live auction processes and to enter into a purchase agreement with the successful bidder for such assets will be a valid and sound exercise of the Trustee's business judgment. The Trustee requests that the Court accordingly authorize the proposed sale as a proper exercise of the Trustee's business judgment and pursuant to the procedures set forth in the Winddown Order.

### III.    Sale Should Be Approved Free and Clear Under Section 363(f) of the Bankruptcy Code.

43.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.[30]

44.     Section 363(f) of the Bankruptcy Code is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Assets free and clear of all liens, security interests, pledges, charges, defects, or similar

---

[29] *See, e.g., In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (while a "section 363(b) sale transaction does not require an auction procedure . . . the auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction.").

[30] *See* 11 U.S.C. § 363(f).

16

15546064

encumbrances (collectively, "***Encumbrances***"), except with respect to any Encumbrances that may be assumed Encumbrances under the purchase agreement of a successful bidder.[31]

45.     For the avoidance of doubt, the Trustee does not believe any party has a lien on the Jones IP Assets.  However, any Encumbrance that will not be an assumed liability satisfies or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and any such Encumbrance will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the sale, subject to any claims and defenses the Trustee or the Debtor's estate, may possess with respect thereto.  The Trustee requests authority to convey the Jones IP Assets to the respective successful bidders free and clear of all Encumbrances including liens, claims, rights, interests, charges, and encumbrances, with any such liens, claims, rights, interests, charges, and encumbrances to attach to the proceeds of the sale and to be held until further determination of this Court.

## IV. Administrative Costs of the Sale Should Be Approved.

46.     The Trustee requests that Tranzon360's Commission and Reimbursement should be applied to the purchase price attributable to the Jones IP Assets and be approved as administrative expenses under section 503(b)(1)(A) of the Bankruptcy Code and paid from the proceeds of any sales of the Jones IP Assets at closing.   Tranzon360's Commission and Reimbursement constitutes an "actual and necessary cost of preserving the estate" because their services to market, auction, and sell the Jones IP Assets materially benefit the Debtor's estate by achieving the highest or otherwise best offer for the Assets.[32]  Therefore, the Trustee requests that

---

[31] *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

[32] 11 U.S.C. § 503(b)(1)(A).

15546064

the Court approve the terms of Tranzon360's Commission and Reimbursement and authorize the Trustee to pay Tranzon360 from the proceeds of the sale of the Jones IP Assets.

## DISCLAIMER

47.     For the avoidance of doubt, the Jones IP Assets only include those assets that the Debtor's estate actually owns.  The description or listing of any Jones IP Assets herein is not intended to be a warranty or representation of the estate's right, title, or interest in or to such assets. It is the Trustee's understanding that certain of the Jones IP Assets are subject to challenges as to their transferability.  The sale and transfer of the Jones IP Assets are therefore subject to the risk that one or more of the Jones IP Assets may ultimately be deemed non-transferable under applicable non-bankruptcy law.

## BASIS FOR EMERGENCY RELIEF

48.     The Trustee has requested emergency relief pursuant to Local Rule 9013-1, and such relief is needed as of October 25, 2024, in order to include the Jones IP Assets in the marketing process sufficiently far in advance of bid deadline under the Winddown Order (November 8, 2024) for potential bidders to meaningfully assess the value and submit bids for the Jones IP Assets.  Absent emergency relief, the Trustee and Tranzon360 will be forced to market the Jones IP Assets on a truncated timeline or sell the Jones IP Assets separately from the IP Assets Auction, which will very likely reduce the price for the Jones IP Assets, as parties have been interested in purchasing packages of FSS and Jones intellectual property assets rather than purchasing them piecemeal.  Therefore, the Trustee reasonably believes that delay will only harm the Debtor's estate.

## WAIVER OF BANKRUPTCY RULES 6004(A) and 6004(H)

49.     To implement the foregoing successfully, the Trustee requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and

18

that the Trustee has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

50.     The Trustee will provide notice of this Motion to the following parties or their counsel: (a) the United States Trustee for the Southern District of Texas; (b) counsel for the Debtor; (c) counsel for the Sandy Hook Families; (d) the holders of the 20 largest unsecured claims against the Debtor; (e) the Office of the United States Attorney for the Southern District of Texas; (f) the Texas state attorney general; (g) the Internal Revenue Service; (h) all known holders of liens, encumbrances, and other claims secured by the Assets; (i) each governmental agency that is an interested party with respect to the sale and transactions proposed thereunder; (j) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (k) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).  In light of the nature of the relief requested, no further notice is required.

## CONCLUSION

WHEREFORE, the Trustee respectfully request entry of the Proposed Order (i) authorizing the Trustee to sell the Jones IP Assets in connection with the winddown of FSS and the auction and sale of the non-cash assets of FSS; (ii) authorizing the assumption and assignment of the contracts listed on Exhibit A hereto to the extent executory; and (iii) granting such other and further relief as may be just and proper.

Dated: October 15, 2024
      Houston, Texas


                                        Respectfully submitted,

                          By: */s/ Joshua W. Wolfshohl*
                                Joshua W. Wolfshohl (Bar No. 24038592)
                                Michael B. Dearman (Bar No. 24116270)

Jordan T. Stevens (Bar No. 24106467)
Kenesha L. Starling (Bar No.24114906)
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jwolfshohl@porterhedges.com
mdearman@porterhedges.com
jstevens@porterhedges.com
kstarling@porterhedges.com

*and*

Erin E. Jones (TX 24032478)
**JONES MURRAY LLP**
602 Sawyer Street, Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Fax: (832) 529-3393
erin@jonesmurray.com

*Counsel for Christopher R. Murray, Chapter 7 Trustee*

15546064

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a copy of the foregoing document was served on October 15, 2024 on all parties receiving ECF service in the above-captioned case and by U.S. First-Class Mail, postage prepaid on the attached service list and the parties listed on Exhibit A and Exhibit B attached hereto.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl

15546064

Label Matrix for local noticing
0541-4
Case 22-33553
Southern District of Texas
Houston
Wed Aug 21 20:24:12 CDT 2024

Ally Bank
c/o Quilling, Selander, et al
2001 Bryan Street
Suite 1800
Dallas, TX 75201-3070

Ally Bank, c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

Bank of America N.A.
P.O. BOX 31785
Tampa, FL 33631-3785

Crowe & Dunlevy
2525 McKinnon St
Suite 425
Dallas, TX 75201-1543

Elevated Solutions Group, LLC
c/o Walker & Patterson, P.C.
P.O. Box 61301
Houston, TX 77208-1301

Free Speech Systems, LLC
Free Speech Systems, LLC
c/o Patrick Magill
3019 Alvin Devane Blvd.
Ste 300
Austin,, TX 78741-7417

Jones Murray LLP
602 Sawyer Suite 400
Houston, Tx 77007-7510

Martin, Disiere, Jefferson & Wisdom, LLP
808 Travis, Suite 1100
Houston, TX 77002-5831

Official Committee Of Unsecured Creditors
c/o Marty L. Brimmage, Jr.
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201-4675

PQPR Holdings Limited, LLC
c/o Streusand Landon Ozburn & Lemmon LLP
attn: Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746-9817

Reeves Law, PLLC
702 Rio Grande St., Suite 203
Austin, TX 78701-2720

Reynal Law Firm, P.C.
917 Franklin St., Suite 600
Houston, TX 77002-1764

Security Bank of Texas
P.O. Box 90
Crawford, Tx 76638-0090

Travis County
c/o Jason A. Starks
P.O. Box 1748
Austin, TX 78767-1748

4
United States Bankruptcy Court
PO Box 61010
Houston, TX 77208-1010

ADP Total Source Insurance
10200 Sunset Drive
Miami, FL 33173-3033

ADP TotalSource Payroll
10200 Sunset Drive
Miami, FL 33173-3033

AT&T
PO Box 5001
Carol Stream, IL 60197-5001

AWIO Web Services LLC
6608 Truxton Ln
Raleigh, NC 27616-6694

Addshoppers, Inc
222 S. Church Street , #410M
Charlotte, NC 28202-3213

Airco Mechanical, LTD
PO Box 1598
Round Rock, TX 78680-1598

Alex  E. Jones
c/o Crowe & Dunlevy, PC
Attn: Vickie L. Driver
2525 McKinnon Street, Ste 425
Dallas, TX 75201-1543

Alex E. Jones
c/o Jordan & Ortiz, PC
Attn: Shelby Jordan
500 North Shoreline Blvd, Ste 900
Corpus Christi, TX  78401-0658

Ally Auto
PO Box 9001948
Louisville, KY 40290-1948

Amazon Marketplace
Amazon Payments, Inc.
410 Terry Ave N.
Seattle, WA 98109-5210

Amazon Web Services
410 Terry Avenue North
Seattle, WA 98109-5210

American Express
PO Box 650448
Dallas, TX 75265-0448

American Media/Reality Zone
PO Box 4646
Thousand Oaks, CA 91359-1646

Andrews, Christopher
210 N. Beyer Street
Marion, TX 78124-4014

Atomial, LLC
1920 E. Riverside Drive
Suite A-120 #124
Austin, TX 78741-1350

Balcones Recycling Inc.
PO Box 679912
Dallas, TX 75267-9916

Biodec, LLC
901 S. Mopac Expressway,
Building 4, Ste 285
Austin, TX 78746-5776

Blott, Jacquelyn
200 University Boulevard
Suite 225 #251
Round Rock TX 78665-1096

Brennan Gilmore
c/o Civil Rights Clinic
Attn Andrew Mendrala
600 New Jersey Avenue, NW
Washington, DC 20001-2022

Campco
4625 W. Jefferson Blvd
Los Angeles, CA 90016-4006

Carlee Soto-Parisi
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137

Carlos Soto
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137

Chamberlain Hrdlicka White et al
Attn Jarrod B. Martin
1200 Smith Street, Ste 1400
Houston, TX 77002-4496

Chelsea Green Publishing
85 North Main Street Ste 120
White River Junction, VT 05001-7135

Christopher Sadowski
c/o Copycat Legal PLLC
3111 N. University Drive Ste. 301
Coral Springs, FL 33065-5058

City of Austin
c/o Austin Energy
4815 Mueller
Austin, TX 78723

Cloudflare, Inc
Dept LA 24609
Pasadena, CA 91185-4609

Constant Contact, Inc.
1601 Trapelo Road
Watham, MA 02451-7357

CustomTattooNow.com
16107 Kensington Dr #172
Sugar Land, TX 77479-4224

David Icke Books Limited
c/o Ickonic Enterprises Limited
St. Helen's House King Street
Derby DE1 3EE
United Kingdom

De Lage  Financial
Attn Litigation & Recovery
111 Old Eagle School Road
Wayne, PA 19087-1453

Deese, Stetson
328 Greenland Blvd. #81
Death Valley, CA 92328-9600

DirectTV
PO Box 006
Carol Stream, IL 60197

Donna Soto
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137

EPS, LLC
17350 State Hwy 249, Ste 220, #4331
Houston, TX 77064-1132

ERM Protect
800 South Douglas Road, Suite 940N
Coral Gables, FL 33134-3125

Edgecast, Inc.
Dept CH 18120
Palatine, IL 60055-0001

Elevated Solutions Group
28 Maplewood Drive
Cos Cob, CT 06807-2601

Erica L. Ash
c/o Ryan Chapple
Cain & Skarnulis PLLC
303 Colorado St., Suite 2850
Austin, Texas 78701-0137

Erica Lafferty
c/o Rosemarie Paine
350 Orange Street
New Haven, CT 06511-6447

Erica Lafferty
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137

FW Robert Broadcasting Co
2730 Loumor Ave
Metairie, LA 70001-5425

Francine Wheeler
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137

Free Speech Systems, LLC
3019 Alvin Devane, Suite 350
Austin, Texas 78741-7424

Frost Insurance Agency
401 Congress Avenue, 14th Floor
Austin ,TX 78701-3793

Gabriela Tolentino
5701 S Mopac Expy
Austin, TX 78749-1464


Getty Images, Inc
PO Box 953604
St. Louis, MO 63195-3604

Gracenote
29421 Network Place
Chicago, IL 60673-1294

Greenair, Inc
23569 Center Ridge Road
Westlake, OH 44145-3642


Haivision Network Video
Deot CH 19848
Palatine, IL 60055-9848

Ian Hockley
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137

Impact Fire Services, LLC
PO Box 735063
Dallas, TX 75373-5063


Independent Publishers Group
PO Box 2154
Bedford Park, IL 60499-2154

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA  19101-7346

Iron Mountain, Inc
PO Box 915004
Dallas, TX 75391-5004


JCE SEO
6101 Broadway
San Antonio, TX 78209-4561

JW JIB Productions, LLC
2921 Carvelle Drive
Riviera Beach, FL 33404-1855

Jacqueline Barden
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137


Jennifer Hensel
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137

Jeremy Richman
c/o Koskoff Koskoff & Bieder
350 Fairfield Ave
Bridgeport, CT 06604-6014

Jillian Soto-Marino
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137


Justin Lair
1313 Lookout Ave
Klamath Falls, OR 97601-6533

KI4U.com
212 Oil Patch Lane
Gonzales, TX 78629-8028

Kaster Lynch Farrar & Ball
Attn Mark D. Bankston
1117 Herkimer
Houston, TX 77008-6745


(p)DE LAGE LANDEN FINANCIAL
ATTN LITIGATION & RECOVERY
1111 OLD EAGLE SCHOOL ROAD
WAYNE PA 19087-1453

Koskoff Koskoff & Bieder
Attn Alinor C. Sterling
350 Fairfield Ave
Bridgeport, CT 06604-6002

LIT Industrial
1717 McKinney Ave #1900
Dallas, TX 75202-1253


Leonard Pozner
c/o Avi Moshenberg
McDowell Hetherington
1001 Fannin Street, Ste 2700
Houston, TX 77002-6774

Lincoln-Remi Group, LLC
1200 Benstein Rd.
Commerce Twp., MI 48390-2200

Logo It, LLC
820 Tivy Street
Kerrville, TX 78028-3654


Lumen/Level 3 Communications
PO Box 910182
Denver, CO 80291-0182

MRJR Holdings, LLC
PO Box 27740
Las Vegas, NV 89126-7740

MVD Entertainment Group
203 Windsor Rd
Pottstown, PA 19464-3405

Magento
PO Box 204125
Dallas, TX 75320-4105

Mark Barden
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137

Microsoft Bing Ads
c/o Microsoft Online, Inc.
P.O. Box 847543
1950 N Stemmons Fwy, Ste 5010
Dallas, TX 75207-3199

Miller, Sean
PO Box 763
Wyalusing, PA 18853-0763

Music Videos Distributors
203 Windsor Rd
Pottstown, PA 19464-3405

Neil Heslin
c/o Avi Moshenberg
McDowell Hetherington
1001 Fannin Street, Ste 2700
Houston, TX 77002-6774

NetSuite Inc
Bank of America Lockbox Services
Chicago, IL 60693-0001

New Relic
188 Spear Street, Suite 1200
San Francisco, CA 94105-1752

Newegg.com
9997E. Rose Hills Road
Whittier, CA 90601-1701

Nicole Hockley
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137

One Party America, LLC
6700 Woodlands Parkway, Suite 230-309
The Woodlands, TX 77382-2575

Orkin, Inc.
5810 Trade Center Drive, Suite 300
Austin, TX 78744-1365

PQPR Holdings Limited, LLC
c/o Stephen Lemmon
1801 S. Mopac Expressway
Suite 320
Austin, TX 78746-9817

Payarc
411 West Putnam Avenue, Ste 340
Greenwich, CT 06830-6233

Paymentus
18390 NE 68th St
Redmond, WA 98052-5057

Perfect Imprints.com
709 Eglin Pkwy NE
Fort Walton Beach, FL 32547-2527

Perkins, Wes
General Delivery
Lockhart, TX 78644-9999

Pipe Hitters Union, LLC
PO Box 341194
Austin, TX 78734-0020

Post Hill Press, LLC
8115 Isabella Lane, Ste. 4
Brentwood, TN 37027-9110

Poulsen, Debra
112 Eames St.
Elkhorn, WI 53121-1228

Power Reviews, Inc.
1 N. Dearborn Street
Chicago, IL 60602-4331

Precision  Oxygen
13807 Thermal Dr
Austin, TX 78728-7735

Precision Camera
2438 W Anderson Ln
Austin, TX 78757-1149

Private Jets, LLC
1250 E. Hallandale Beach Blvd, Suite 505
Hallandale, FL 33009-4635

Protection 1 Alarm
PO Box 219044
Kansas City, MO 64121-9044

Public Storage
2301 E. Ben White Blvd
Austin, TX 78741-7110

Randazza Legal Group, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117-3400

RatsMedical.com
c/o Rapid Medical
120 N Redwood Rd
North Salt Lake, UT 84054-2792

Ready Alliance Group, Inc
PO Box 1709
Sandpoint, ID 83864-0901

Reeves Law, PLLC
Attn Bradley Reeves
702 Rio Grande St., Ste 203
Austin, TX 78701-2720

Renaissance
PO Box 8036
Wisconsin Rapids, WI 54495-8036

Restore America
PO Box 147
Grimsley, TN 38565-0147

Richard Coan
Chapter 7 Trustee for Debtor Erica Laffe
c/o Eric Henry
10 Middle Street
Bridgeport, CT  06604-4257

Robert Parker
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137

SLNT
30 N Gould St, Ste 20647
Sheridan, WY 82801-6317

Scarlett Lewis
c/o Avi Moshenberg
McDowell Hetherington
1001 Fannin Street, Ste 2700
Houston, TX 77002-6774

Security Bank of Crawford
PO Box 90
Crawford, TX 76638-0090

Simon & Schuster
PO Box 70660
Chicago, IL 60673-0660

SintecMedia NYC, Inc. DBA Operative
PO Box 200663
Pittsburgh, PA 15251-2662

Skousen, Joel
PO Box 565
Spring City, UT 84662-0565

Skyhorse Publishing
307 West 36th Street, 11th Floor
New York, NY 10018-6592

Sparkletts & Sierra Springs
PO Box 660579
Dallas, TX 75266-0579

Spectrum Enterprise
aka Time Warner Cable
1600 Dublin Road
Columbus, OH  43215-2098

Stamps.com
1990 E Grand Ave.
El Segundo, CA 90245-5013

Stone Edge Technologies, Inc
660 American Avenue, Suite 204
King of Prussia, PA 19406-4032

Stratus Technologies
5 Mill & Main Place, Suite 500
Maynard, MA 01754-2660

Studio 2426, LLC
1920 E. Riverside Drive, Suite A120
Austin, TX 78741-1350

Synergy North America, Inc
11001 W. 120th Avenue, Suite 400
Broomfield, CO 80021-3493

TD Canada Trust
421 7th Avenue SW
Calgary, AB T2P 4K9, Canada

Texas Comptroller
PO Box 13003
Austin, TX 78711-3003

Texas Disposal Systems, Inc
PO Box 674090
Dallas, TX 75267-4090

Texas Gas Service
PO Box 219913
Kansas City, MO 64121-9913

Textedly
133 N. Citrus Ave., Suite 202
Los Angeles, CA 90036

The Creative Group
c/o Robert Half
2884 Sand Hill Road, Ste 200
Menlo Park, CA 94025-7072

The Estate of Marcel Fontaine
c/o McDowell Hetherington LLP
Attn Avi Moshenberg
100 Fannin, Ste 2700
Houston, TX 77002-1915

The Hartford
PO Box 14219
Lexington, KY 40512-4219

The Steam Team, Inc
1904 W. Koeing Lane
Austin, TX 78756-1211

Third Coast Graphics, Inc
110 Del Monte Dr.
Friendswood, TX 77546-4487

Thomas, David
79 Malone Hill Road
Elma, WA 98541-9206

Travelers
PO Box 660317
Dallas, TX 75266-0317

Travis County
PO Box 149328
Austin, TX 78714-9328

U.S. Legal Support
PO Box 4772
Houston, TX 77210-4772

U.S. Trustee's Office
515 Rusk Avenue, Suite 3516
Houston, Texas 77002-2604

US Trustee
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002-2604

Uline Shipping Supply
12575 Uline Drive
Pleasant Prarie, WI 53158-3686

Vazquez, Valdemar Rodriguez
145 Quail Ridge Drive
Kyle TX 78640-9788

Verizon
PO Box 660108
Dallas, TX 75266-0108

Verizon Edgecast
13031 West Jefferson Blvd, Bldg 900
Los Angeles, CA 90094-7002

Veronique De La Rosa
c/o Avi Moshenberg
McDowell Hetherington
1001 Fannin Street, Ste 2700
Houston, TX 77002-6774

Vultr
14 Cliffwood Avenue, Suite 300
Matawan, NJ 07747-3931

WMQM-AM 1600
21 Stephen Hill Road
Atoka, TN 38004-7183

WWCR
1300 WWCR Avenue
Nashville, TN 37218-3800

Waste Connections Lone Star, Inc.
PO Box 17608
Austin, TX 78760-7608

Water Event-Pure Water Solutions
1310 Missouri St
South Houston, TX 77587-4537

Watson, Paul
9 Riverdale Road
Ranmoor Sheffield
South Yorkshire S10 3FA
United Kingdom

Westwood One, LLC
3542 Momentum Place
Chicago, IL 60689-5335

Wheeler, David
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137

William Aldenberg
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137

William Sherlach
c/o Ryan Chapple
Cain & Skarnulis
303 Colorado Street, Ste 2850
Austin, TX 78701-0137

Willow Grove Productions
1810 Rockcliff Road
Austin, TX 78746-1215

Wisconsin Dept. of Revenue
PO Box 3028
Milwaukee, WI 53201-3028

Your Promotional Products, LLC
133 North Friendswood Ste 186
Friendswood, TX 77546-3746

Zendesk, Inc
989 Market Street
San Francisco, CA 94103-1708

Zoom US
55 Almaden Blvd, 6th Floor
San Jose, CA 95113-1608

eBay
2025 Hamilton Avenue
San Jose, CA 95125-5904

eCommerce CDN, LLC
221 E 63rd Street
Savannah, GA 31405-4226

mongoDB Cloud
1633 Broadway 39th Floor
New York, NY 10019-6757

Alexander E. Jones
c/o 2525 McKinnon Street
Suite 425
Dallas, TX 75201

Christina Walton Stephenson
Crowe & Dunlevy
2525 McKinnon St.
Ste 425
Dallas, TX 75201-1543

Christopher R Murray
Jones Murray LLP
602 Sawyer St
Ste 400
Houston, TX 77007-7510

Erica L. Ash
c/o Cain & Skarnulis PLLC
303 Colorado Street
Suite 2850
Austin, TX 78701-0137

Francine Wheeler
Cain & Skarnulis PLLC
Ryan E. Chapple
303 Colorado Street
Suite 2850
Austin, TX 78701-0137

Leonard Pozner
c/o McDowell Hetherington LLP
Attention: Avi Moshenberg
1001 Fannin Street
Suite 2700
Houston, TX 77002-6774

Marcel Fontaine
c/o McDowell Hetherington LLP
Attention: Avi Moshenberg
1001 Fannin
Suite 2700
Houston, TX 77002-6774

Neil Heslin
c/o McDowell Hetherington LLP
Attention: Avi Moshenberg
1001 Fannin Street
Suite 2700
Houston, TX 77002-6774

Richard M. Coan
c/o Cain & Skarnulis PLLC
303 Colorado Street
Suite 2850
Austin, TX 78701-0137

Scarlett Lewis
c/o McDowell Hetherington LLP
Attention: Avi Moshenberg
1001 Fannin Street
Suite 2700
Houston, TX 77002-6774

Shelby A Jordan
Jordan & Ortiz, PC
500 N Shoreline Blvd
Ste 804
Corpus Christi, TX 78401-0335

Veronique De La Rosa
c/o McDowell Hetherington LLP
Attention: Avi Moshenberg
1001 Fannin Street
Suite 2700
Houston, TX 77002-6774

Vickie L Driver
Crowe & Dunlevy, P.C.
2525 McKinnon St.
Ste 425
Dallas, TX 75201-1543

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Konica Minolta Premier Finance
PO Box 41602
Philadelphia, PA 19101-1602

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Akin Gump Strauss Hauer & Feld LLP

(u)Public Storage

(d)Ally Bank
c/o AIS Portfolio Services, LLC
4515 N. Santa Fe Ave. Dept. APS
Oklahoma City, OK  73118-7901

(d)American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

(d)American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

(d)Bank of America N.A.
PO Box 31785
Tampa, FL 33631-3785

(d)Free Speech Systems. LLC
3019 Alvin Devane, Suite 350
Austin, Texas 78741-7424

(u)Carlee Soto Parisi

(u)Carlos M Soto

(u)David Wheeler

(u)David Ross Jones

(u)Donna Soto

(u)Ian Hockley

(u)Jacqueline Barden

(u)Jennifer Hensel

(u)Jillian Soto-Marino

(u)Mark Barden

(u)Nicole Hockley

(u)Robert Parker

(u)William Aldenberg

(u)William Sherlach

End of Label Matrix
Mailable recipients    189
Bypassed recipients     21
Total                  210