# EXHIBIT 4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **ALEXANDER E. JONES** | § | |
| | § | |
| **Debtor.** | § | **Case No. 22-33553** |
| | § | |

### DEBTOR'S MOTION TO ASSUME EXISTING BOOK CONTRACT
### PURSUANT TO 11 U.S.C. § 365 AND APPROVE NEW CONTRACT
### PURSUANT TO 11 U.S.C. §§ 105 AND 363(b)

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

TO THE HONORABLE CHRISTOPHER M. LOPEZ,
UNITED STATES BANKRUPTCY JUDGE:

Alexander E. Jones ("Debtor"), as debtor and debtor-in-possession in the above-captioned

Chapter 11 Case, hereby submits this motion (the "Motion") pursuant to Sections 105, 363(b), and

365 of the United States Bankruptcy Code (the "Code"). In support of this Motion, Debtor

respectfully represents as follows:

### I.    JURISDICTION

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334(b). This matter is a core proceeding and this Application is proper in this district pursuant

to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are Sections 105, 363(b), and 365

of the Code.

## II.     BACKGROUND

3.     Debtor hosts a syndicated radio and video talk show in Austin, Texas.  Free Speech Systems, LLC ("FSS") is a single member LLC, 100% owned by Jones, that produces and syndicates much of the show.  In addition, FSS offers high-end dietary supplement products, books, t-shirts, and other products, which are solely promoted and advertised by Jones during his radio and streaming video talk shows, for online sale to customers at the Infowars web site.

4.     Debtor filed his voluntary chapter 11 bankruptcy case (the "Chapter 11 Case") on December 2, 2022.

5.     On or about February 4, 2022, Debtor entered into that certain Publishing Agreement with Skyhorse Publishing Inc. in connection with that certain literary endeavour entitled, "Reset Wars:  The Great Reset Exposed" (the "2022 Book Contract"). The 2022 Book Contract contains terms for royalties, publishing, intellectual property rights, and an agency clause. Due to the confidentiality terms of the 2022 Book Contract, such exhibit is being filed under seal as **Exhibit 1**.

6.     On or about January 23, 2023, Debtor entered into that certain Publishing Agreement with Skyhorse Publishing Inc. in connection with that certain literary endeavour entitled, "Taking Down the Globalist Puppetmasters" (as amended on April 24, 2023, the "2023 Book Contract").[1] The 2023 Book Contract contains terms for royalties, publishing, intellectual property rights, and an agency clause. Due to the confidentiality terms of the 2023 Book Contract, and such exhibit is being filed under seal as **Exhibit 2**.

---

[1] Upon learning that Debtor signed the agreement, undersigned counsel alerted the publisher of his being in bankruptcy and the possible need for approval before his signature would be effective.  While it could easily be viewed as Debtor's ordinary course of business to enter into a contract with publishers, it is unusual for the Debtor to sign any written contracts, and due to the sensitive nature of this case, approval to enter into this contract is sought out of an abundance of caution.

**MOTION TO ASSUME AND APPROVE BOOK CONTRACTS – Page 2**

## III.     RELIEF REQUESTED AND BASIS THEREFORE

### A. 2022 Book Contract Assumption

7.      Under 11 U.S.C. § 365(a), a debtor in possession "may assume or reject any executory contract or unexpired lease of the debtor" upon approval of the court.  11 U.S.C. § 365(a).  *See Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.,* 872 F.2d 36, 39-40 (3d Cir. 1989); *see also, In re Mirant Corp.*, 348 B.R. 725, 744 (Bankr. N.D. Tex. 2006).

8.      Debtor has determined in his business judgment that assuming the 2022 Book Contract is in the best interest of the estate.

> The court is expected to defer to management's views in applying the business judgment test. *See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.),* 756 F.2d 1043, 1046 (4th Cir.1985); *Polin v. Conductron Corp.,* 552 F.2d 797, 809 (8th Cir.1977). Only if a proposed transaction…does not serve business purposes may the court substitute its judgment for that of management. *In re Richmond Metal Finishers, Inc.,* 756 F.2d at 1047 ("[C]ourts should defer to-should not interfere with-decisions of corporate directors upon matters entrusted to their business judgment except upon a finding of bad faith or gross abuse of their 'business discretion.' "); *Computer Sales Int'l, Inc. v. Fed. Mogul Global, Inc. (In re Fed. Mogul Global, Inc.),* 293 B.R. 124, 126 (D.Del.2003) ("As [the business judgment test is] applied in the Third Circuit, a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction.") (citing *In re Martin,* 91 F.3d 389, 396 (3d Cir.1996) (in turn citing *In re Schipper,* 933 F.2d 513, 515 (7th Cir.1991))).

*In re Mirant Corp.*, 348 B.R. 725, 744 (Bankr. N.D.Tex. 2006).

9.      Debtor anticipates that assuming the 2022 Book Contract will benefit the estate in the form of revenues from book sales in connection with that contract. Rejecting the 2022 Book Contract would have no benefit and would cause substantial harm to the estate via breach of contract claims and lost revenue.

10.      In fact, the Debtor's remaining obligation sunder the 2022 Book Contract are far outweighed by his rights thereunder.  Since the Petition Date, Debtor has received approximately $179,440.00 under the 2022 Book Contract and wishes to continue receiving such royalty

**MOTION TO ASSUME AND APPROVE BOOK CONTRACTS – Page 3**

payments. In exchange, since the book has been released, Debtor remains responsible for revisions needed after February 22, 2024. It is in Debtor's business judgment to continue to perform under the 2022 Book Contract.

**B.    2023 Book Contract Approval**

11.    Section 363(b) of the Code authorizes the debtor in possession to use, sell or lease property of the estate other than in the ordinary course of business after notice and a hearing, subject to bankruptcy court approval.  Debtor submits that the 2023 Book Contract is within the ordinary course of his business.  However, out of an abundance of caution, Debtor seeks the Court's approval of the 2023 Book Contract.   Further, Debtor is not seeking to use, sell, or lease property of the estate with his entry into the 2023 Book Contract.  However, to the extent that Debtor's personal services, or the use of Debtor's time or the value of that time, or his commitment regarding same is deemed in any way the use of property of the estate, Debtor again, out of an abundance of caution, seeks the Court's approval of the 2023 Book Contract.

12.    Irrespective of whether the 2023 Book Contract is ordinary course of business, courts should authorize business transactions outside the ordinary course of business if debtors have exercised sound business judgment. *See In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir.1983).  Debtor has, with the benefit of estate professionals, done the necessary analysis and determined that the 2023 Book Contract will benefit the estate in the form of advances and revenues from book sales in connection with that contract.

13.    Furthermore, Section 105 of the Code directs that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105.  To the extent that such approval is necessary or appropriate, Debtor submits that Section 105, in conjunction with Section 363(b), gives the Court authority to approve the 2023 Book Contract.

14.     Debtor further believes that assuming the 2022 Book Contract and approving the 2023 Book Contract will benefit the estate because the increased funds will allow Debtor to fund additional administrative expenses and budget for greater plan payments going forward.

15.     Accordingly, Debtor has utilized his business judgment and for the foregoing reasons, seeks the Court's authority for assumption of the 2022 Book Contract and approval of the 2023 Book Contract as in the best interest of Debtor, Debtor's estate and creditors.

## IV.     NOTICE

15.     Notice of this Motion has been provided to: (a) the Offices of the United States Trustee; (b) counsel for Debtor's largest unsecured creditors; (c) Debtor's secured lender; (d) counsel for the Official Unsecured Creditors Committee; (e) the publishing house and agent in the 2022 and 2023 Book Contracts; and (f) anyone who has filed notices of appearance in the above-captioned case. Debtor submits the above notice is sufficient and that no further notice is necessary.

WHEREFORE, Debtor respectfully requests the Court enter an order assuming and approving the 2022 and 2023 Book Contracts, and for such other and further relief to which Debtor may show himself justly entitled.

Dated: July 12, 2023.

**CROWE & DUNLEVY, P.C.**

By: */s/ Christina W. Stephenson*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737.218.6187
Email: dallaseservice@crowedunlevy.com

**ATTORNEYS FOR ALEXANDER E. JONES**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing pleading was served upon the parties listed below via email and upon all parties registered to receive notice via the Court's ECF noticing system on this 12th day of July, 2023.

Skyhorse Publishing Inc.
307 West 36th Street 11th Floor
New York, New York 10018

Waterside Productions, Inc.
2055 Oxford Avenue
Cardiff-by-the-Sea, CA 92007

*/s/ Christina W. Stephenson*
Christina W. Stephenson

**MOTION TO ASSUME AND APPROVE BOOK CONTRACTS – Page 6**

# Skyhorse Publishing Inc.

307 West 36th Street
11th Floor
New York, New York 10018

# PUBLISHING AGREEMENT

This Agreement, dated as of the 4th day of February, 2022, between:

**Alex Jones**
**c/o Waterside Productions, Inc.**
**2055 Oxford Avenue**
**Cardiff-by-the-Sea, CA 92007**

(hereinafter called "the Author") and Skyhorse Publishing Inc. (hereinafter called "the Publisher"), a Delaware corporation with offices at 307 West 36th Street, New York, NY 10018, with respect to a work that the Author is writing or compiling, has written or compiled, or to which the Author holds or controls the rights. The Work is tentatively titled:

## Reset Wars: The Great Reset Exposed

## 1) Delivery of Manuscript.

The completed work shall consist of approximately 100,000 words and 0 images, illustrations, or photos and shall include any text and any images, illustrations, or photos (including but not limited to photos of the Author) supplied by the Author for the cover or jacket (hereinafter called "the Work"). The Author agrees to deliver a digital version of the manuscript as a complete Microsoft Word file on or before April 15, 2022 (hereinafter called the "Delivery Date"). All images, illustrations, or photos must be sent electronically (by file transfer, FTP, flash drive, or email) at a resolution suitable for book reproduction. The manuscript and its components, including all images, illustrations, or photos, the table of contents, [an index], and any other materials shall be compiled and delivered at the Author's sole expense. If the Author fails to deliver the manuscript within thirty (30) calendar days of the Delivery Date, the Publisher may, in its sole discretion, either (a) cancel this Agreement and the Author shall, within thirty (30) calendar days of notification by the Publisher, be legally required to repay any advances paid; or (b) enforce this Agreement with an amended Delivery Date. If the Author delivers the manuscript but refuses to make reasonable changes, or provides materials in an incorrect format, the Publisher may complete the manuscript as is necessary and charge the reasonable, documented cost to the Author. If the Author has refused to make

1

CONFIDENTIAL - Professionals'
Eyes Only

AEJ-BR_014764

reasonable changes which have therefore been made by the Publisher, the Author shall nonetheless have the right to approve the changes made by the Publisher which right must be exercised within ten (10) business days of receipt by the Author of the revised manuscript from the Publisher. Approval by the Author shall not be unreasonably withheld or delayed.

If the Author is doing two Works for the Publisher and the first Work is not delivered in a timely manner, Publisher may withhold any remaining advance on the first Work until the second Work is delivered. If the manuscript must be scanned to obtain disks or if any images are created, obtained, or scanned, the Publisher may do this and charge the reasonable, documented cost to the Author. If the completed manuscript is not acceptable to the Publisher for any editorial or legal reason, the Publisher may reject the Work and the Author shall have an additional thirty (30) calendar days (or such extension as is mutually agreed upon by the parties) after receipt of detailed editorial notes within which to resubmit the Work to the Publisher. If the Publisher still rejects the manuscript, and the Author subsequently finds another publisher to publish the Work, the Author shall be required to repay all advances paid to the Author before any rights shall revert to the Author or transfer to the new publisher. In the event a new publisher is not found, the Author of a rejected Work may obtain a reversion upon the repayment to the Publisher of the advance. The Publisher agrees to publish the completed Work in a physical format unless otherwise mutually agreed within six (6) months of delivery and acceptance of the manuscript. If the Publisher does not publish the accepted Work within the specified time, it shall revert all rights to the Author and return the disks and copies of the manuscript, but shall have no further liability.

## 2) Warranties and Indemnity.
Subject to the provisions of Paragraph 2(A) hereof, the Author warrants that Author is either the sole author, the originator, or the proprietor and sole owner of all copyrightable material contained in the Work or will deliver valid written permission for any material created and/or copyrighted by another for which permission is required; such permission shall extend to all the rights granted herein. If the Author fails to deliver such permission, the Publisher shall have the right, at its sole option, either to secure such rights at its own expense (or to create the material itself) and charge those expenses and any and all reasonable fees against future sums due to the Author (including any unpaid advances) or to require that the Author pay those expenses in cash or to reject the manuscript. The Author warrants that Author is the sole and exclusive owner of all rights granted to the Publisher in this Agreement and has not assigned, pledged, or otherwise encumbered the same; that the Work is original, has not been published in book form, and is not in the public domain; that Author has full power to enter into this Agreement and to make the grants herein contained; that the Work does not, in whole or in part, infringe any copyright or violate any right of privacy or other personal or property right whatsoever, or contain any libelous matter or matter otherwise contrary to law; and that all statements asserted as facts are true. The Author further represents and warrants that the use, with reasonable skill and care, of any recipe, instruction, formula, direction, advice, or other material or information contained in the Work will not result in injury to anyone and that the Author shall include in the Work appropriate warnings and safety precautions. In the event of an infringement of the Work by any third party or parties, either the Publisher or the Author

2

CONFIDENTIAL - Professionals'
Eyes Only

AEJ-BR_014765

may, at the Publisher's or the Author's own expense, bring suit and, after recoupment of all costs and fees, any recovery shall be shared fifty percent (50%) to the Publisher and fifty percent (50%) to the Author.

The Publisher reserves the right to insist that the Author alter the text of the Work at its sole discretion for the purpose of removing or clarifying any passage that on the advice of the Publisher's legal counsel may be actionable. Any such alteration or removal shall be without prejudice to and shall not affect the Author's liability under the Author's warranty and indemnification contained herein with respect to any passages other than the ones specifically changed at the Publisher's insistence.

The Publisher shall have the right to extend the Author's warranties to third parties (including licensees of subsidiary rights granted by the Publisher hereunder) and the Author shall be liable thereon to the same extent as if such representations and warranties were made originally or directly to such third parties. The warranties and indemnities set forth herein shall survive in the event this Agreement is terminated or expires or ends for any other reason.

In the event of the assertion of any claim, suit, action, or proceeding inconsistent with any of the foregoing representations and warranties, (a) the Publisher shall have the right to defend the same through counsel of its own choosing, and the Author may join in such defense with counsel of Author's own choosing at the Author's own expense provided that Publisher's counsel will control the defense of any claim; and (b) the Author shall fully cooperate in the Publisher's defense and shall indemnify and hold harmless the Publisher, any seller or distributor of the Work, and the Publisher's successors, licensees, and assigns, and any officers, agents, and employees of the foregoing, from and against any and all liability, damage, loss, expense (including attorney's fees and legal expenses), and settlement costs resulting from any such claim, suit, action, or proceeding.

Until such claim, suit, action, or proceeding has been settled or withdrawn, the Publisher may withhold any sums due to the Author under this or any other agreement. If no action has been taken or is imminent on a claim in twelve (12) months, Publisher shall release such withheld sums to the Author.



### 3) Grant of Rights.

The Author hereby grants to the Publisher for the full, legal term of copyright, throughout World the sole and exclusive right to produce, publish, license, and sell the Work or any part or parts thereof, or any abridgement, or any expansion or adaptation of the Work, (including but not limited to graphic novels), in all languages in physical book form and

3

CONFIDENTIAL - Professionals' Eyes Only

AEJ-BR_014766

in electronic form (including but not limited to the right to make apps or enhanced ebooks) as well as audio rights ("audio rights" being defined as including audio books, podcast rights, radio rights, or the right to read the Work in front of a live or studio audience in its entirety or in excerpted form). Abridgements, expansions, adaptations, or graphic novels of the Work shall be subject to prior Author approval, which shall not be unreasonably withheld or delayed. The Author agrees not to create for anyone or any entity other than the Publisher a work that is substantially similar to the Work or covering essentially the same subject matter, or likely to compete for sales with this Work, during the term of this Agreement.

For purposes of this Agreement, the "electronic form" of the Work is such forms as are digitized and can be encoded, stored, or retrieved from such media as computer disks, CD-ROM, computer databases, ebook readers, and network servers, and include but are not limited to such works as ebooks, enhanced ebooks, and apps, whether such apps run on the Internet, a computer, a phone, or any other device.

A sale of a work in electronic form is defined hereunder to include any revenue realized from transactions entered into by the Publisher with respect to works in electronic form, including but not limited to the sale, licensing, lending for payment, or other revenue generating activity with respect to such works. In the event that works in electronic form generate revenue as a group, the division of such revenue shall be done in a reasonable manner (such as based on downloads if that information is available or a pro rata division among the titles if details as to specific titles cannot be obtained).

With the exception of any work already under contract, the Work will be Author's next published work (whether under Author's own name or under a pseudonym or in collaboration with anyone else), and Author will not, prior to delivery of the complete manuscript of the Work, write or contract with any other publisher to write any other work for publication in book form without the written permission of Publisher.

Any rights not granted to the Publisher hereunder are reserved by the Author.

**4) Editorial and Production.**
The Author agrees to read and correct the galley proofs within ten (10) business days of receipt. Any expenses incurred by the Publisher as a result of the Author's failure to correct the first pass proofs within the time allotted and/or corrections made to the proofs (other than printer's or Publisher's errors) shall be charged against the Author's royalty account, based on evidence of the expenses. Unnecessary or excessive author alterations to the proofs shall also be charged against the Author's royalty account at the Publisher's discretion, based on evidence of the expenses. On the second and subsequent rounds of corrections, the Author's royalty account shall be charged $3 per alteration (other than alterations required due to compositor's errors). The Author agrees, within ten (10) business days of delivery of page proofs, to provide an index if the Publisher decides one is necessary. If the Author does not wish or fails to provide an index, the Publisher may create one at its own expense and charge that expense against the Author's advance or royalties.

The Author is encouraged to work closely with the editor on the appearance of the book. Author hereby grants to the Publisher the sole and exclusive right to decide upon every aspect of the production and publishing process, including the printing and binding, the paper choice, the jacket and its design, the extent of advertising whether inside the

4

CONFIDENTIAL - Professionals'
Eyes Only

AEJ-BR_014767

book or otherwise (for the Work itself or for other works, i.e., "house ads" or for organizations of any kind), the sending out of complimentary copies and the recipients of those copies, the retail price in hardcover or paperback or in a promotional edition, and the format, look, and feel of the original or any other edition.

### 5) Royalties.
(a) The Publisher agrees to pay the Author the following royalties based on net receipts ("net receipts" are defined as the revenue realized from the net sales of the Work, which are the sales after the subtraction of returns from gross sales) and subject to a reasonable reserve for returns.



5

CONFIDENTIAL - Professionals'
Eyes Only

AEJ-BR_014768



6

CONFIDENTIAL - Professionals'
Eyes Only

AEJ-BR_014769



**6) Revised or Updated Editions.**
If after two (2) years from the first publication of the Work by the Publisher, the Publisher (in its sole discretion) decides that updates or revisions are necessary, and the Author agrees to update, edit, or revise the Work, the parties agree to negotiate in good faith an additional advance. If the Author for any reason cannot or will not update, edit, or revise the Work, the Publisher shall have the right to hire someone else to do so or to do that work in-house and to charge the reasonable and documented cost or value of that work against future royalties due to the Author from the Publisher. This Paragraph 6 shall only apply to nonfiction works that can be updated or revised by another author in the event the Author is unwilling or unable to do so. The Author shall have the right to approve any revision, provided such approval shall be exercised within five (5) business

7

CONFIDENTIAL - Professionals'
Eyes Only

days of receipt of notice of a proposed revision and such approval shall not be unreasonably withheld or delayed.

### 7) **Accounting.**

The accounting shall be mailed or emailed to the Author or the Author's agent on or before June 15th and December 15th of each year for copies or rights sold during the periods ending December 31st and June 30th respectively. The accounting shall contain all of the following:

> (a) The net sales of the Work for the period.
>
> (b) An indication of any rights sales for which money has been received during the period and the amount received by the Publisher, less any deductions as set forth in Paragraph (5)(b) above.
>
> (c) An indication of the reasonable reserve for returns that has been withheld (based on factors such as net current sales, Bookscan sales, inventory at major retailers, and library sales). Reasonable reserves may be established for any period in which sales occur, provided that all such reserves shall revert within four (4) accounting periods of being established.

No payment shall be required for any royalty period during which the net amount due is less than $50. Said amount shall be carried over to the subsequent period. The Author shall receive a royalty statement regardless of whether a royalty check is due. If the Author receives an overpayment resulting from copies sold but subsequently returned or any other reason, the overpayment may be deducted by the Publisher from any further sums due to the Author currently or in the future from this Work or any other works by the Author that the Publisher has published or will publish. Sales of prior editions shall not be cumulative with sales of any revised edition for purposes of calculating royalties. No payments, other than the initial advance payment, shall be made prior to the publication of the Work. An unearned advance shall not be deemed an overpayment.

It is the obligation of the Author to notify the Publisher in writing if royalty statements and checks are not received in a timely manner. The Author has twelve (12) months from the date on which a royalty statement is to be sent to indicate either (a) that the statement was not received or is incorrect; or (b) that the royalty payment has not been received for any reason. If the Author does not give notice to the Publisher within such twelve (12) months, the Author (a) waives any right to receive or correct royalty statements for the royalty period at issue; and (b) waives the right to receive royalties not received for the royalty period at issue. If the Author fails to cash a royalty check within forty-five (45) calendar days of the check's issuance date for an author in the United States and ninety (90) calendar days for an author outside the United States and the Publisher stops payment on such check, the Author shall be charged $45 against the Author's royalty account and shall have to wait for the next royalty period to receive a check for that Work.

If the Author or the author's agent requests a change of payee for payments to be made pursuant to this Agreement, there shall be a charge of $100 (unless the prior payee is deceased) and an agreement signed by both the original payee and the new payee must be provided to the Publisher.

8

CONFIDENTIAL - Professionals'
Eyes Only

AEJ-BR_014771



### 9) Original Materials.

The Author hereby releases and forever discharges the Publisher from any and all liability for loss, damage, or destruction of the Work or any part of the Work, including but not limited to artwork, illustrations, photos etc., regardless of the cause and even if the loss, damage, or destruction is the result of the Publisher's negligence or gross negligence. The Author is therefore encouraged not to send any original or valuable materials to the Publisher without first obtaining the proper insurance for such materials.

### 10) Reversion of Rights.

(a) If the Work shall be declared out-of-print or the Publisher shall have stopped selling the Work in all formats, including reprints or editions licensed to other publishers in the United States, or, if five (5) years after the Publisher's initial publication of the Work, it is available only in ebook and/or POD versions and the total copies sold during two (2) consecutive royalty periods do not exceed two hundred (200) copies (without taking account of returns), and if, within six (6) months of a request by the Author the Publisher fails to inform the Author in writing of a plan to reprint, repackage, do a new English language edition, or license an English language edition to another publisher in the United States, then this Agreement can be terminated by the Author in writing. After receipt of the termination letter, the Publisher shall have an additional two (2) weeks to reconsider its options (a total of six [6] months and two [2] weeks) and notify the Author of its decision. If the Publisher still fails to inform the Author of an intention to keep the Work in print in the United States, all rights shall revert to the Author, subject to any grant of rights made by the Publisher prior to the termination date.

(b) If the Publisher is declared bankrupt by a court of competent jurisdiction and is going to cease all operations, the Author shall have the exclusive right to buy back the rights of publication, together with any remaining copies bound or unbound of the Work, at their fair market value (to be determined by agreement between the Publisher and the Author).

9

CONFIDENTIAL - Professionals'
Eyes Only

If the Author shall decide not to purchase the remaining copies, the Publisher may sell them off at the best price it can obtain without any accounting to the Author.

(c) Termination of this Agreement for any reason is subject to (1) the continuation of any options, grants or licenses or other third-party uses and rights arising from the Publisher's pre-termination exercise of the rights granted herein, and (2) Publisher's continued participation, to the extent provided, in any such options, grants, licenses or other third-party uses so granted by Publisher.

**12) Assignment/Beneficiaries.**
The Author shall not make any assignment of this Agreement, in whole or in part, without prior approval in writing and signed by the Publisher. The Publisher shall have the right to assign all its rights and obligations under this Agreement. In the event of the death of the Author, any future royalties payable shall be paid to the Author's agent, if any, and in the absence of an agent to the Author's executor or beneficiaries upon receipt of appropriate written notice and documentation from the party to receive said payments.

**13) Coauthors, Copublishing, Imprint, and Corporate Author.**
In the event that the Author includes more than one person, it shall be assumed that all authors shall equally share the rights and responsibilities under this Agreement and that authorship credit shall be alphabetical, unless Author sends written notification to the Publisher otherwise. The Author consents to the Publisher copublishing with another entity at the Publisher's discretion, provided that in such case the Publisher shall remain fully responsible to fulfill all the terms and conditions of this Agreement. The Author further consents to the Publisher publishing this book under an imprint if the Publisher deems this advisable. In the event that the Author is a corporation, the individual signing for the corporation agrees that Author shall be personally responsible and liable for all obligations of the Author under this Agreement as if the Agreement had been drawn between the Publisher and the Author individually.

**14) Publicity.**
The Author agrees to submit a photograph and to complete an author questionnaire, including an author biography, for publicity purposes. The Author consents to the use of author's name, pre-approved likeness, and pre-approved image to be used in connection with the Work, and agrees to use Author's best efforts in promoting the Work through social media and to participate to the best of Author's ability in the marketing and publicity of the Work. Pursuant to this paragraph, the Author agrees to be available for publicity purposes for the ten (10) business day period commencing with the publication date and to appear on any and all radio, television, and other publicity venues that the Publisher believes will likely increase sales of the Work. If

10

CONFIDENTIAL - Professionals'
Eyes Only

AEJ-BR_014773

publicity appearances require travel beyond a 100-mile radius from the Author's address, Publisher and Author shall mutually agree on how to cover travel costs or Author shall have the right to decline these opportunities. Any reimbursement must be approved by the Publisher in writing before such travel. The Author shall make and provide to Publisher a one-minute video explaining why the Author wrote the Work and what three key points the Author hopes readers will take away from the Work. The Author further agrees to refrain from taking any actions during the publicizing of the Work or thereafter that are likely to hurt sales of the Work. In addition, the Publisher shall have the right to publish without compensation to the Author an excerpt of up to two thousand (2,000) words in any format or form for purposes of promoting the Work or to grant that right free of charge to third parties. In cases where film rights are licensed, the Publisher may allow promotional excerpts free of charge of up to seven thousand five hundred (7,500) words.

**15) Notices, Modifications, Waivers, and Governing Law.**
Notices hereunder shall be made by mail or email. It is the Author's responsibility to communicate any change of address to the Publisher and any payments sent by the Publisher by regular mail that are returned to the Publisher may be withheld from the Author until such time as the Author provides the Publisher with a correct address to which said payment may be sent. This Agreement contains the entire understanding between the parties and supersedes all prior, contemporaneous, or subsequent negotiations between the parties, except those that reference this Agreement, specifically modify its terms, and are signed by both parties. A waiver or default under any provision of this Agreement shall not permit future waivers or defaults under that or any other provisions of this Agreement. No waiver or modification shall be valid or binding unless delivered in writing and signed by the parties. This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, and assigns of the Author and the successors and assigns of the Publisher. This Agreement shall be interpreted and construed in accordance with the laws of the State of New York applicable to contracts made and to be entirely performed therein, without giving effect to New York's choice-of-law rules or to any rule of construction that allows or directs that ambiguities be construed against the drafter of a contract. The state courts of the State of New York in and for New York County, and if the jurisdictional prerequisites exist, the United States District Court for the Southern District of New York, and no other court or tribunal, shall have sole and exclusive jurisdiction to hear and determine any dispute or controversy arising under or concerning this Agreement. With respect to any such action or proceeding, each party hereto irrevocably (a) consents and submits to the personal jurisdiction of said courts, and (b) waives the defense of lack of personal jurisdiction and/or inconvenient forum and/or improper venue. Each party hereby consents to service of process upon him/her/it either personally or by registered or certified mail, postage prepaid, return receipt requested at the addresses given above. Notwithstanding the foregoing, any dispute hereunder in which the principal sum (i.e., before interest, any claim for attorneys' fees or other costs or expenses) is less than $50,000 shall be submitted to binding arbitration before the American Arbitration Association in New York, New York, and settled in accordance with the rules of the American Arbitration

11

CONFIDENTIAL - Professionals'
Eyes Only

AEJ-BR_014774

Association. Judgment upon the arbitration award may be entered in any court having jurisdiction thereof.

**16) Agency Clause.** · 5ᵗ  f ⁴ᵗ  15

The Author hereby requests that all payments of monies due to the Author be sent to:

> **AGENT**
> **STREET ADDRESS**
> **CITY, STATE, ZIP**

the Agent's receipt and acceptance of which shall be deemed a full and sufficient discharge thereof. The Agent shall provide the Publisher with a W9 and no payments shall be made hereunder until such time as the Publisher has the W9. In the event the W9 is not provided with this Agreement, any payments due hereunder based on the date of the signing of the Agreement shall be based on the date of delivery of the W9 instead. For foreign authors a W-8BEN shall be used instead of the W9. For corporations, an EIN must be provided. If any information required pursuant to this Paragraph 16 is incorrect and damages or expenses (including reasonable attorney's fees) result, the Publisher may charge said damages or expenses against the Author's royalty account.

[insert relevant agency clause; make sure agency clause clearly states that all monies go to agent—no splitting payments]

**17) Definition of the Work.**
"The Work" as used throughout this Agreement shall include all materials supplied by the Author to the Publisher (including but not limited to photographs of or by the Author), printed books, ebooks, audio books, large print books, limited editions, computer disks, CD-ROMs, applications, and all other ancillary products or means of distribution, electronic or otherwise, whether now known or hereinafter discovered or developed.

**18) Use of Excerpts in the Publisher's Other Works.**
The Author hereby grants to the Publisher the non-exclusive right to use brief excerpts in compilations that it either creates in-house or hires one of its writers to compile and edit or that is being compiled and edited for the Publisher by another author. The fee for any such use will be $100 for up to fifteen (15) pages, $200 for up to thirty (30) pages, and $300 for up to forty-five (45) pages, all of which shall be treated as a rights sale and accounted for pursuant to Paragraph 7(b). The Publisher waives its right to a percentage of this fee. Any usage pursuant to this Paragraph 18 shall be subject to the Author's approval.

**19) Book Blurbs and Reviews.**
The Author agrees to obtain three to four (3–4) blurbs for use on the back cover of the Work. Such blurbs shall be obtained in a timely manner based on consultation with the editor with respect to the Work's schedule. In addition, the author shall use best efforts to

12

CONFIDENTIAL - Professionals'
Eyes Only

AEJ-BR_014775

obtain at least twenty (20) amazon.com or bn.com reviews from colleagues, experts in the relevant field, or other readers by sending out manuscripts or PDFs of the Work.

**20) Default.**
If the Publisher defaults in the delivery of semi-annual statements or in the making of payments as herein provided and shall neglect or refuse to deliver such statements or make such payments within sixty (60) calendar days after written notice of such default is delivered to publisher via certified mail, this agreement shall terminate at the expiration of such sixty (60) calendar days without prejudice to the Author's claim for any monies which may have accrued under this Agreement.

**21) Force Majeure.**
The failure of Publisher to publish or reissue the Work or otherwise perform its obligations under this Agreement shall not be deemed to be a violation of the Agreement or give rise to any right of termination or reversion if such failure arises from "force majeure." Publisher's time to publish, reissue, or otherwise perform its obligations shall be extended for a period equal to the period of delay caused by the force majeure. For purposes of this Agreement, "force majeure" includes, without limitation, acts of God, fires, national disasters, acts of war or terrorism, restrictions of governmental agencies, labor disputes, or inability to obtain the materials necessary for printing, or any other circumstances beyond Publisher's reasonable control.

13

CONFIDENTIAL - Professionals'
Eyes Only

AEJ-BR_014776

**22) Copyright.**
Notice of copyright in the Work shall appear in each copy of the Work published by
Publisher and shall be in the following name:

**Alex Jones**

**23) Delivery of Signed Contract.**
The contract may be either scanned and returned by either party via email, or faxed, and
the signatures delivered via email or fax shall be deemed original signatures.



IN WITNESS WHEREOF, the parties have signed this Agreement as of the date first set
forth above to constitute it a binding agreement between them.

FOR THE ALEX JONES                    FOR SKYHORSE PUBLISHING, INC.

Signed:_____        Signed: _____

For WILLIAM GLADSONE personally and as the owner of Waterside.

Signed_____         Feb 15 / 2022

In the event that the Author is a corporation, then to effectuate the provisions of
Paragraph 13, the party signing for the corporate author shall also sign here in Author's
individual capacity.

Signed: _____

14

CONFIDENTIAL - Professionals'
Eyes Only

AEJ-BR_014777

**AGENCY CLAUSE**

Author hereby confirms that Author has irrevocably appointed and designated WATERSIDE
PRODUCTIONS, INC. (herein called "Agent"), 2055 Oxford Avenue, Cardiff-by-the-Sea, CA 92007, as
Author's sole and exclusive agent throughout the world with respect to the Work and all rights
herein.  Author hereby irrevocably directs and authorizes Publisher to pay and forward all
statements and monies otherwise accruing from Publisher to Author with respect to the Work
solely to and in the name of Waterside Productions, and Publisher agrees to do so.  Receipt by
Agent shall be deemed receipt by Author.  Author hereby irrevocably empowers Agent to act on
Author's behalf in all matters arising from or pertaining to this Agreement and/or the Work.
Author hereby irrevocably agrees to pay Agent, and Author hereby irrevocably authorizes Agent
to receive and retain, and Author hereby irrevocably assigns and transfers to Agent an amount
equal to fifteen percent (15%) of all monies accruing, payable or paid to Author under this
Agreement and otherwise accruing from Publisher to Author with respect to the Work, and
Publisher hereby accepts and agrees to honor said assignment and transfer.  Author
acknowledges that said appointment and designation of Agent is coupled with an interest.  Agent
shall be considered a third person beneficiary of Publisher's said agreements to make payments
to Author and to honor said assignment.  The term "this Agreement" as used in this paragraph
includes but is not limited to this Agreement and all modifications, amendments, alterations,
renewals and extensions, and supplements to this Agreement, and all transactions between
Author and Publisher pertaining to the Work, whenever and by whomever made.  The term
"Author" as used in this paragraph includes but is not limited to all author(s) named elsewhere in
this Agreement and their successors, assigns, licensees, heirs, legal representatives,
administrators and executors and anyone acting on their behalf or in their place and stead.

Waterside Productions, Inc. Federal Identification Number:
95 3718151.

AGREED UPON AND SIGNED:

_____
Author Signature

15

CONFIDENTIAL - Professionals'
Eyes Only

AEJ-BR_014778

# Skyhorse Publishing Inc.
307 West 36th Street
11th Floor
New York, New York 10018

# PUBLISHING AGREEMENT

This Agreement, dated as of the 23rd day of January, 2023, between:

**Alex Jones**
**c/o Waterside Productions, Inc.**
**2055 Oxford Avenue**
**Cardiff-by-the-Sea, CA 92007**

(hereinafter called "the Author") and Skyhorse Publishing Inc. (hereinafter called "the Publisher"), a Delaware corporation with offices at 307 West 36th Street, New York, NY 10018, with respect to a work that the Author is writing or compiling, has written or compiled, or to which the Author holds or controls the rights. The Work is tentatively titled:

## Taking Down the Globalist Puppetmasters

June 15
2023

## 1) Delivery of Manuscript.
The completed work shall consist of approximately 80,000 words and 0 images, illustrations, or photos and shall include any text and any images, illustrations, or photos (including but not limited to photos of the Author) supplied by the Author for the cover or jacket (hereinafter called "the Work"). The Author agrees to deliver a digital version of the manuscript as a complete Microsoft Word file on or before April 15, 2023 (hereinafter called the "Delivery Date"). All images, illustrations, or photos must be sent electronically (by file transfer, FTP, flash drive, or email) at a resolution suitable for book reproduction. The manuscript and its components, including all images, illustrations, or photos, the table of contents, [an index], and any other materials shall be compiled and delivered at the Author's sole expense. If the Author fails to deliver the manuscript within thirty (30) calendar days of the Delivery Date, the Publisher may, in its sole discretion, either (a) cancel this Agreement and the Author shall, within thirty (30) calendar days of notification by the Publisher, be legally required to repay any advances paid; or (b) enforce this Agreement with an amended Delivery Date. If the Author delivers the manuscript but refuses to make reasonable changes, or provides materials in an incorrect format, the Publisher may complete the manuscript as is necessary and charge the reasonable, documented cost to the Author. If the Author has refused to make

DocuSign Envelope ID: 77373671-DDD0-46D4-8804-C0EA9B88AE79

reasonable changes which have therefore been made by the Publisher, the Author shall nonetheless have the right to approve the changes made by the Publisher which right must be exercised within ten (10) business days of receipt by the Author of the revised manuscript from the Publisher. Approval by the Author shall not be unreasonably withheld or delayed.

If the Author is doing two Works for the Publisher and the first Work is not delivered in a timely manner, Publisher may withhold any remaining advance on the first Work until the second Work is delivered. If the manuscript must be scanned to obtain disks or if any images are created, obtained, or scanned, the Publisher may do this and charge the reasonable, documented cost to the Author. If the completed manuscript is not acceptable to the Publisher for any editorial or legal reason, the Publisher may reject the Work and the Author shall have an additional thirty (30) calendar days (or such extension as is mutually agreed upon by the parties) after receipt of detailed editorial notes within which to resubmit the Work to the Publisher. If the Publisher still rejects the manuscript, and the Author subsequently finds another publisher to publish the Work, the Author shall be required to repay all advances paid to the Author before any rights shall revert to the Author or transfer to the new publisher. In the event a new publisher is not found, the Author of a rejected Work may obtain a reversion upon the repayment to the Publisher of the advance. The Publisher agrees to publish the completed Work in a physical format unless otherwise mutually agreed within six (6) months of delivery and acceptance of the manuscript. If the Publisher does not publish the accepted Work within the specified time, it shall revert all rights to the Author and return the disks and copies of the manuscript, but shall have no further liability.

**2) Warranties and Indemnity.**
Subject to the provisions of Paragraph 2(A) hereof, the Author warrants that Author is either the sole author, the originator, or the proprietor and sole owner of all copyrightable material contained in the Work or will deliver valid written permission for any material created and/or copyrighted by another for which permission is required; such permission shall extend to all the rights granted herein. If the Author fails to deliver such permission, the Publisher shall have the right, at its sole option, either to secure such rights at its own expense (or to create the material itself) and charge those expenses and any and all reasonable fees against future sums due to the Author (including any unpaid advances) or to require that the Author pay those expenses in cash or to reject the manuscript. The Author warrants that Author is the sole and exclusive owner of all rights granted to the Publisher in this Agreement and has not assigned, pledged, or otherwise encumbered the same; that the Work is original, has not been published in book form, and is not in the public domain; that Author has full power to enter into this Agreement and to make the grants herein contained; that the Work does not, in whole or in part, infringe any copyright or violate any right of privacy or other personal or property right whatsoever, or contain any libelous matter or matter otherwise contrary to law; and that all statements asserted as facts are true. The Author further represents and warrants that the use, with reasonable skill and care, of any recipe, instruction, formula, direction, advice, or other material or information contained in the Work will not result in injury to anyone and that the Author shall include in the Work appropriate warnings and safety precautions. In the event of an infringement of the Work by any third party or parties, either the Publisher or



DocuSign Envelope ID: 77373671-DDD0-46D4-8804-C0EA9B88AE79

the Author may, at the Publisher's or the Author's own expense, bring suit and, after recoupment of all costs and fees, any recovery shall be shared fifty percent (50%) to the Publisher and fifty percent (50%) to the Author.

The Publisher reserves the right to insist that the Author alter the text of the Work at its sole discretion for the purpose of removing or clarifying any passage that on the advice of the Publisher's legal counsel may be actionable. Any such alteration or removal shall be without prejudice to and shall not affect the Author's liability under the Author's warranty and indemnification contained herein with respect to any passages other than the ones specifically changed at the Publisher's insistence.

The Publisher shall have the right to extend the Author's warranties to third parties (including licensees of subsidiary rights granted by the Publisher hereunder) and the Author shall be liable thereon to the same extent as if such representations and warranties were made originally or directly to such third parties. The warranties and indemnities set forth herein shall survive in the event this Agreement is terminated or expires or ends for any other reason.

In the event of the assertion of any claim, suit, action, or proceeding inconsistent with any of the foregoing representations and warranties, (a) the Publisher shall have the right to defend the same through counsel of its own choosing, and the Author may join in such defense with counsel of Author's own choosing at the Author's own expense provided that Publisher's counsel will control the defense of any claim; and (b) the Author shall fully cooperate in the Publisher's defense and shall indemnify and hold harmless the Publisher, any seller or distributor of the Work, and the Publisher's successors, licensees, and assigns, and any officers, agents, and employees of the foregoing, from and against any and all liability, damage, loss, expense (including attorney's fees and legal expenses), and settlement costs resulting from any such claim, suit, action, or proceeding.

Until such claim, suit, action, or proceeding has been settled or withdrawn, the Publisher may withhold any sums due to the Author under this or any other agreement. If no action has been taken or is imminent on a claim in twelve (12) months, Publisher shall release such withheld sums to the Author.



**3) Grant of Rights.**
The Author hereby grants to the Publisher for the full, legal term of copyright, throughout World the sole and exclusive right to produce, publish, license, and sell the Work or any part or parts thereof, or any abridgement, or any expansion or adaptation of the Work, (including but not limited to graphic novels), in all languages in physical book form and



DocuSign Envelope Case 2:23-cv-00353-B Document 64-2 Filed in TXSB on 10/23/23 Page 26 of 136
DocuSign Envelope ID: 77373671-DDD0-46D4-8804-C0EA9B88AE79

in electronic form (including but not limited to the right to make apps or enhanced ebooks) as well as audio rights ("audio rights" being defined as including audio books, podcast rights, radio rights, or the right to read the Work in front of a live or studio audience in its entirety or in excerpted form). Abridgements, expansions, adaptations, or graphic novels of the Work shall be subject to prior Author approval, which shall not be unreasonably withheld or delayed. The Author agrees not to create for anyone or any entity other than the Publisher a work that is substantially similar to the Work or covering essentially the same subject matter, or likely to compete for sales with this Work, during the term of this Agreement.

For purposes of this Agreement, the "electronic form" of the Work is such forms as are digitized and can be encoded, stored, or retrieved from such media as computer disks, CD-ROM, computer databases, ebook readers, and network servers, and include but are not limited to such works as ebooks, enhanced ebooks, and apps, whether such apps run on the Internet, a computer, a phone, or any other device.

A sale of a work in electronic form is defined hereunder to include any revenue realized from transactions entered into by the Publisher with respect to works in electronic form, including but not limited to the sale, licensing, lending for payment, or other revenue generating activity with respect to such works. In the event that works in electronic form generate revenue as a group, the division of such revenue shall be done in a reasonable manner (such as based on downloads if that information is available or a pro rata division among the titles if details as to specific titles cannot be obtained).

With the exception of any work already under contract, the Work will be Author's next published work (whether under Author's own name or under a pseudonym or in collaboration with anyone else), and Author will not, prior to delivery of the complete manuscript of the Work, write or contract with any other publisher to write any other work for publication in book form without the written permission of Publisher.

Any rights not granted to the Publisher hereunder are reserved by the Author.

## 4) Editorial and Production.

The Author agrees to read and correct the galley proofs within ten (10) business days of receipt. Any expenses incurred by the Publisher as a result of the Author's failure to correct the first pass proofs within the time allotted and/or corrections made to the proofs (other than printer's or Publisher's errors) shall be charged against the Author's royalty account, based on evidence of the expenses. Unnecessary or excessive author alterations to the proofs shall also be charged against the Author's royalty account at the Publisher's discretion, based on evidence of the expenses. On the second and subsequent rounds of corrections, the Author's royalty account shall be charged $3 per alteration (other than alterations required due to compositor's errors). The Author agrees, within ten (10) business days of delivery of page proofs, to provide an index if the Publisher decides one is necessary. If the Author does not wish or fails to provide an index, the Publisher may create one at its own expense and charge that expense against the Author's advance or royalties.

The Author is encouraged to work closely with the editor on the appearance of the book. Author hereby grants to the Publisher the sole and exclusive right to decide upon every aspect of the production and publishing process, including the printing and binding, the paper choice, the jacket and its design, the extent of advertising whether inside the

DocuSign Envelope ID: 77373671-DDD0-46D4-8804-C0EA9B88AE79

book or otherwise (for the Work itself or for other works, i.e., "house ads" or for organizations of any kind), the sending out of complimentary copies and the recipients of those copies, the retail price in hardcover or paperback or in a promotional edition, and the format, look, and feel of the original or any other edition.

**5) Royalties.**
(a) The Publisher agrees to pay the Author the following royalties based on net receipts ("net receipts" are defined as the revenue realized from the net sales of the Work, which are the sales after the subtraction of returns from gross sales) and subject to a reasonable reserve for returns.





DocuSign Envelope ID: 77373671-DDD0-46D4-8804-C0EA9B88AE79



### 6) Revised or Updated Editions.

If after two (2) years from the first publication of the Work by the Publisher, the Publisher (in its sole discretion) decides that updates or revisions are necessary, and the Author agrees to update, edit, or revise the Work, the parties agree to negotiate in good faith an additional advance. If the Author for any reason cannot or will not update, edit, or revise the Work, the Publisher shall have the right to hire someone else to do so or to do that work in-house and to charge the reasonable and documented cost or value of that work against future royalties due to the Author from the Publisher. This Paragraph 6 shall only apply to nonfiction works that can be updated or revised by another author in the event the Author is unwilling or unable to do so. The Author shall have the right to approve any revision, provided such approval shall be exercised within five (5) business days of receipt of notice of a proposed revision and such approval shall not be unreasonably withheld or delayed.

### 7) Accounting.

The accounting shall be mailed or emailed to the Author or the Author's agent on or before June 15th and December 15th of each year for copies or rights sold during the

DocuSign Envelope ID: 77373671-DDD0-46D4-8804-C0EA9B68AE79

periods ending December 31st and June 30th respectively. The accounting shall contain all of the following:

      (a) The net sales of the Work for the period.

      (b) An indication of any rights sales for which money has been received during the period and the amount received by the Publisher, less any deductions as set forth in Paragraph (5)(b) above.

      (c) An indication of the reasonable reserve for returns that has been withheld (based on factors such as net current sales, Bookscan sales, inventory at major retailers, and library sales). Reasonable reserves may be established for any period in which sales occur, provided that all such reserves shall revert within four (4) accounting periods of being established.

No payment shall be required for any royalty period during which the net amount due is less than $50. Said amount shall be carried over to the subsequent period. The Author shall receive a royalty statement regardless of whether a royalty check is due. If the Author receives an overpayment resulting from copies sold but subsequently returned or any other reason, the overpayment may be deducted by the Publisher from any further sums due to the Author currently or in the future from this Work or any other works by the Author that the Publisher has published or will publish. Sales of prior editions shall not be cumulative with sales of any revised edition for purposes of calculating royalties. No payments, other than the initial advance payment, shall be made prior to the publication of the Work. An unearned advance shall not be deemed an overpayment.

      It is the obligation of the Author to notify the Publisher in writing if royalty statements and checks are not received in a timely manner. The Author has twelve (12) months from the date on which a royalty statement is to be sent to indicate either (a) that the statement was not received or is incorrect; or (b) that the royalty payment has not been received for any reason. If the Author does not give notice to the Publisher within such twelve (12) months, the Author (a) waives any right to receive or correct royalty statements for the royalty period at issue; and (b) waives the right to receive royalties not received for the royalty period at issue. If the Author fails to cash a royalty check within forty-five (45) calendar days of the check's issuance date for an author in the United States and ninety (90) calendar days for an author outside the United States and the Publisher stops payment on such check, the Author shall be charged $45 against the Author's royalty account and shall have to wait for the next royalty period to receive a check for that Work.

      If the Author or the author's agent requests a change of payee for payments to be made pursuant to this Agreement, there shall be a charge of $100 (unless the prior payee is deceased) and an agreement signed by both the original payee and the new payee must be provided to the Publisher.



shipping cost and accepts the risk of loss of the shipment. If the Author desires to buy in carton quantity, the discount will be fifty percent (50%) off retail. The Author may purchase one hundred (100) copies (rounded up to full carton quantities) at sixty percent (60%) off the retail price, sixty five percent (65%) up to 1,000 copies, seventy percent (70%) thereafter. The Author must pay shipping and handling for any copies purchased from the Publisher, regardless of the discount on the books or the timing of the sale. The Author shall not sell copies to bookstores. The Author is encouraged to sell copies of the Work at public speaking engagements, on the Author's website by direct mail, in newsletters, as a premium, to local retailers, or in any other manner. No royalties shall be due on any copies sold directly or indirectly to the Author or to a company where he/she works, or controls, owns or is affiliated with in any way.

### 9) Original Materials.
The Author hereby releases and forever discharges the Publisher from any and all liability for loss, damage, or destruction of the Work or any part of the Work, including but not limited to artwork, illustrations, photos etc., regardless of the cause and even if the loss, damage, or destruction is the result of the Publisher's negligence or gross negligence. The Author is therefore encouraged not to send any original or valuable materials to the Publisher without first obtaining the proper insurance for such materials.

### 10) Reversion of Rights.
(a) If the Work shall be declared out-of-print or the Publisher shall have stopped selling the Work in all formats, including reprints or editions licensed to other publishers in the United States, or, if five (5) years after the Publisher's initial publication of the Work, it is available only in ebook and/or POD versions and the total copies sold during two (2) consecutive royalty periods do not exceed two hundred (200) copies (without taking account of returns), and if, within six (6) months of a request by the Author the Publisher fails to inform the Author in writing of a plan to reprint, repackage, do a new English language edition, or license an English language edition to another publisher in the United States, then this Agreement can be terminated by the Author in writing. After receipt of the termination letter, the Publisher shall have an additional two (2) weeks to reconsider its options (a total of six [6] months and two [2] weeks) and notify the Author of its decision. If the Publisher still fails to inform the Author of an intention to keep the Work in print in the United States, all rights shall revert to the Author, subject to any grant of rights made by the Publisher prior to the termination date.

(b) If the Publisher is declared bankrupt by a court of competent jurisdiction and is going to cease all operations, the Author shall have the exclusive right to buy back the rights of publication, together with any remaining copies bound or unbound of the Work, at their fair market value (to be determined by agreement between the Publisher and the Author). If the Author shall decide not to purchase the remaining copies, the Publisher may sell them off at the best price it can obtain without any accounting to the Author.

(c) Termination of this Agreement for any reason is subject to (1) the continuation of any options, grants or licenses or other third-party uses and rights arising from the Publisher's pre-termination exercise of the rights granted herein, and (2) Publisher's continued

participation, to the extent provided, in any such options, grants, licenses or other third-party uses so granted by Publisher.

**12) Assignment/Beneficiaries.**
The Author shall not make any assignment of this Agreement, in whole or in part, without prior approval in writing and signed by the Publisher. The Publisher shall have the right to assign all its rights and obligations under this Agreement. In the event of the death of the Author, any future royalties payable shall be paid to the Author's agent, if any, and in the absence of an agent to the Author's executor or beneficiaries upon receipt of appropriate written notice and documentation from the party to receive said payments.

**13) Publicity.**
The Author agrees to submit a photograph and to complete an author questionnaire, including an author biography, for publicity purposes. The Author consents to the use of author's name, pre-approved likeness, and pre-approved image to be used in connection with the Work, and agrees to use Author's best efforts in promoting the Work through social media and to participate to the best of Author's ability in the marketing and publicity of the Work. Pursuant to this paragraph, the Author agrees to be available for publicity purposes for the ten (10) business day period commencing with the publication date and to appear on any and all radio, television, and other publicity venues that the Publisher believes will likely increase sales of the Work. If publicity appearances require travel beyond a 100-mile radius from the Author's address, Publisher and Author shall mutually agree on how to cover travel costs or Author shall have the right to decline these opportunities. Any reimbursement must be approved by the Publisher in writing before such travel. The Author shall make and provide to Publisher a one-minute video explaining why the Author wrote the Work and what three key points the Author hopes readers will take away from the Work. The Author further agrees to refrain from taking any actions during the publicizing of the Work or thereafter that are likely to hurt sales of the Work. In addition, the Publisher shall have the right to publish without compensation to the Author an excerpt of up to two thousand (2,000) words in any format or form for purposes of promoting the Work or to grant that right free of charge to third parties. In cases where film rights are licensed, the Publisher may allow promotional excerpts free of charge of up to seven thousand five hundred (7,500) words.

**14) Notices, Modifications, Waivers, and Governing Law.**
Notices hereunder shall be made by mail or email. It is the Author's responsibility to communicate any change of address to the Publisher and any payments sent by the Publisher by regular mail that are returned to the Publisher may be withheld from the Author until such time as the Author provides the Publisher with a correct address to

DocuSign Envelope ID: 77373671-DDD0-46D4-8804-C0EA9B88AE79

which said payment may be sent. This Agreement contains the entire understanding between the parties and supersedes all prior, contemporaneous, or subsequent negotiations between the parties, except those that reference this Agreement, specifically modify its terms, and are signed by both parties. A waiver or default under any provision of this Agreement shall not permit future waivers or defaults under that or any other provisions of this Agreement. No waiver or modification shall be valid or binding unless delivered in writing and signed by the parties. This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, and assigns of the Author and the successors and assigns of the Publisher. This Agreement shall be interpreted and construed in accordance with the laws of the State of New York applicable to contracts made and to be entirely performed therein, without giving effect to New York's choice-of-law rules or to any rule of construction that allows or directs that ambiguities be construed against the drafter of a contract. The state courts of the State of New York in and for New York County, and if the jurisdictional prerequisites exist, the United States District Court for the Southern District of New York, and no other court or tribunal, shall have sole and exclusive jurisdiction to hear and determine any dispute or controversy arising under or concerning this Agreement. With respect to any such action or proceeding, each party hereto irrevocably (a) consents and submits to the personal jurisdiction of said courts, and (b) waives the defense of lack of personal jurisdiction and/or inconvenient forum and/or improper venue. Each party hereby consents to service of process upon him/her/it either personally or by registered or certified mail, postage prepaid, return receipt requested at the addresses given above. Notwithstanding the foregoing, any dispute hereunder in which the principal sum (i.e., before interest, any claim for attorneys' fees or other costs or expenses) is less than $50,000 shall be submitted to binding arbitration before the American Arbitration Association in New York, New York, and settled in accordance with the rules of the American Arbitration Association. Judgment upon the arbitration award may be entered in any court having jurisdiction thereof.

### 15) Agency Clause.

Author hereby confirms that Author has irrevocably appointed and designated WATERSIDE PRODUCTIONS, INC. (herein called "Agent"), 2055 Oxford Avenue, Cardiff-by-the-Sea, CA 92007, as Author's sole and exclusive agent throughout the world with respect to the Work and all rights herein. Author hereby irrevocably directs and authorizes Publisher to pay and forward all statements and monies otherwise accruing from Publisher to Author with respect to the Work solely to and in the name of Waterside Productions, and Publisher agrees to do so. Receipt by Agent shall be deemed receipt by Author. Author hereby irrevocably empowers Agent to act on Author's behalf in all matters arising from or pertaining to this Agreement and/or the Work.
Author hereby irrevocably agrees to pay Agent, and Author hereby irrevocably authorizes Agent to receive and retain, and Author hereby irrevocably assigns and transfers to Agent an amount equal to fifteen percent (15%) of all monies accruing, payable or paid to Author under this Agreement and otherwise accruing from Publisher to Author with respect to the Work, and Publisher hereby accepts and agrees



DocuSign Envelope ID: 77373671-DDD0-46D4-8804-C0EA9B88AE79

to honor said assignment and transfer. Author acknowledges that said appointment and designation of Agent is coupled with an interest. Agent shall be considered a third person beneficiary of Publisher's said agreements to make payments to Author and to honor said assignment. The term "this Agreement" as used in this paragraph includes but is not limited to this Agreement and all modifications, amendments, alterations, renewals and extensions, and supplements to this Agreement, and all transactions between Author and Publisher pertaining to the Work, whenever and by whomever made. The term "Author" as used in this paragraph includes but is not limited to all author(s) named elsewhere in this Agreement and their successors, assigns, licensees, heirs, legal representatives, administrators and executors and anyone acting on their behalf or in their place and stead.

Waterside Productions, Inc. Federal Identification Number: 95 3718151.

## 16) Definition of the Work.
"The Work" as used throughout this Agreement shall include all materials supplied by the Author to the Publisher (including but not limited to photographs of or by the Author), printed books, ebooks, audio books, large print books, limited editions, computer disks, CD-ROMs, applications, and all other ancillary products or means of distribution, electronic or otherwise, whether now known or hereinafter discovered or developed.

## 17) Use of Excerpts in the Publisher's Other Works.
The Author hereby grants to the Publisher the non-exclusive right to use brief excerpts in compilations that it either creates in-house or hires one of its writers to compile and edit or that is being compiled and edited for the Publisher by another author. The fee for any such use will be $100 for up to fifteen (15) pages, $200 for up to thirty (30) pages, and $300 for up to forty-five (45) pages, all of which shall be treated as a rights sale and accounted for pursuant to Paragraph 7(b). The Publisher waives its right to a percentage of this fee. Any usage pursuant to this Paragraph 18 shall be subject to the Author's approval.

## 18) Book Blurbs and Reviews.
The Author agrees to obtain three to four (3–4) blurbs for use on the back cover of the Work. Such blurbs shall be obtained in a timely manner based on consultation with the editor with respect to the Work's schedule. In addition, the author shall use best efforts to obtain at least twenty (20) amazon.com or bn.com reviews from colleagues, experts in the relevant field, or other readers by sending out manuscripts or PDFs of the Work.

## 19) Default.
If the Publisher defaults in the delivery of semi-annual statements or in the making of payments as herein provided and shall neglect or refuse to deliver such statements or make such payments within sixty (60) calendar days after written notice of such default is delivered to publisher via certified mail, this agreement shall terminate at the expiration

DocuSign Envelope ID: 773736/1-DDDD-46D4-88D4-CDEA9B88AE79

of such sixty (60) calendar days without prejudice to the Author's claim for any monies which may have accrued under this Agreement.

**20) Force Majeure.**
The failure of Publisher to publish or reissue the Work or otherwise perform its obligations under this Agreement shall not be deemed to be a violation of the Agreement or give rise to any right of termination or reversion if such failure arises from "force majeure." Publisher's time to publish, reissue, or otherwise perform its obligations shall be extended for a period equal to the period of delay caused by the force majeure. For purposes of this Agreement, "force majeure" includes, without limitation, acts of God, fires, national disasters, acts of war or terrorism, restrictions of governmental agencies, labor disputes, or inability to obtain the materials necessary for printing, or any other circumstances beyond Publisher's reasonable control.

**21) Copyright.**
Notice of copyright in the Work shall appear in each copy of the Work published by Publisher and shall be in the following name:

**Alex Jones**

**22) Delivery of Signed Contract.**
The contract may be either scanned and returned by either party via email, or faxed, and the signatures delivered via email or fax shall be deemed original signatures.





IN WITNESS WHEREOF, the parties have signed this Agreement as of the date first set forth above to constitute it a binding agreement between them.

FOR ALEX JONES                              FOR SKYHORSE PUBLISHING, INC.

Signed: _____                     Signed: _____     2/6/2023

Johanna Maaghul signing for Agency Waterside Productions (representing with Bill Gladstone)

Signed_____        2/6/2023