IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| **ALEXANDER E. JONES,** | § | Case No. 22-33553 |
| | § | |
| Debtor. | § | |
| | § | |

**DEBTOR'S LIMITED OBJECTION TO TRUSTEE'S EMERGENCY MOTION
FOR ENTRY OF AN ORDER AUTHORIZING (I) SALE OF INTELLECTUAL PROPERTY
ASSETS IN CONNECTION WITH THE WINDDOWN OF FREE SPEECH SYSTEMS, LLC
AND (II) THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS**

TO THE HONORABLE CHRISTOPHER M. LOPEZ,
UNITED STATES BANKRUPTCY JUDGE:

Alex E. Jones (the "Debtor" or "Jones"), debtor in the above-referenced case (the "Case") files and makes this limited objection to the *Chapter 7 Trustee's Emergency Motion for Entry of an Order Authorizing (I) Sale of Intellectual Property Assets in Connection with the Winddown of Free Speech Systems, LLC and (II) the Assumption and Assignment of Executory Contracts* ("Emergency Motion") [Docket No. 882], and would show as follows:

**I.
PRELIMINARY OBJECTION**

1. The Trustee is purporting to sell Social Media Accounts that he does not claim, nor warrant, ownership of, all to maximize return to the estate. A trustee has a duty to act as a fiduciary in good faith. Proposing the sale of property without a good faith belief of ownership and the right to transfer title and possession of that property is an invitation to litigation. Setting this matter on an "emergency" basis greatly complicates all of those issues.[1] It appears that the Trustee contends

---

[1] An emergency hearing of these matters is further contra-indicated by the fact that, in the original pleadings on this matter and in the prior hearing, the Trustee expressly represented to the Court that he was *not* seeking to sell Jones' personal IP during the FSS auction. The fact that he is now seeking to do so, and on an emergency basis, when there are complex issues at stake, is especially troubling.

he can offer assets for sale even if those assets are not owned by the Estate, so long as the Trustee disclaims any warranty of title and cautions that the buyer only gets what can be legally transferred, which may be nothing at all. In reality, this position only subjects Jones to litigation into perpetuity.

2.  The Trustee is requesting to sell the Social Media Accounts, for example, Jones' X account "RealAlexJones." Jones limits his objection to the sale of the subject Social Media Accounts owned by Jones that is not transferrable as a matter of law, nor subject to a sale by his Chapter 7 Trustee.

3.  The Trustee appears to take the position that so long as the Estate has no liability for a sale without title, it may properly and legally do so, even if that sale includes an attempted sale of Jones' name, image, likeness, or his unique voice associated with his name, or any liberty interests[2] attributable to Jones. To that end, Jones makes the following limited objections.

## II.
## LIMITED OBJECTIONS

### A.  THE TRUSTEE FAILS TO SHOW THE ESTATE HAS A PROPERTY INTEREST IN THE SOCIAL MEDIA ACCOUNTS

4.  First, Jones objects to the sale of the Social Media Accounts as the Trustee provides no factual or legal support of the Estate's property interest in the same. The Social Media Accounts are not identified as property of the Estate on the Schedules of Assets and Liabilities and Statements of Financial Affairs.[3] In support of his position, the Trustee provides a mere conclusory statement that "[u]pon the Petition Date, the bankruptcy's estate's rights and interests in the Social Media Accounts…became property of [Debtor's] estate." Jones objects to the sale of the Social

---

[2] The Courts have expanded the concept of liberty beyond freedom from physical restraint to include various other protected interests, some statutorily created and some not. These procedural liberty interests are distinct from substantive liberty interests, which may not be infringed through any process absent a sufficient governmental interest. *See Amdt14.S1.6.1 Overview of Substantive Due Process.* Thus, in Ingraham v. Wright, the Court unanimously agreed that school children had a liberty interest in freedom from wrongful or excessive corporal punishment, whether or not such interest was protected by statute.

[3] *See e.g.*, Dkt. No. 749.

Media Accounts as the Estate does not have the requisite property interest to sale the Social Media Accounts.

**B. TRUSTEE PROVIDES NO LEGAL SUPPORT THAT JONES' INDIVIDUAL SOCIAL MEDIA ACCOUNTS CAN BE SOLD**

5. Jones objects to the sale of the Social Media Accounts as the Emergency Motion is void of any legal support for the Trustee's contention that the Social Media Accounts, belonging to Jones individually, may be sold. Every single case relied on by the Trustee involves the sale of <u>a company or entity's</u> social media account.[4] The Trustee has not, and presumably cannot, put forth any support for the contention that <u>an individual's</u> social media account belongs to the Estate and thus can be sold.

    *a.    The Social Media Accounts should be treated as Jones' liberty interest, not a property interest*

6. In *In re CTLI*, this Court stated in *dicta* that an individual social media profile would likely not become the property of the estate because the value in a social media page lies in the ability to reach friends or fans through future communications.[5] Rather, an individual debtor's interest in his social media accounts should be treated as a "liberty" interest instead of a "property" interest.[6] This Court notes that the official social media page of a celebrity or public figure *that is managed by employees* might be treated differently.[7] Such is not the case here. In contrast, this Court stated that the liberty concerns inherent to individual social media accounts do not apply to business social media accounts, *even if the business is closely associated with an individual*.[8]

7. The Trustee concedes that the Social Media Accounts belong solely to Jones in his

---

[4] *See* Emergency Motion [Dkt. No. 882, at ¶ 26-
[5] *In re CTLI, LLC*, 528 B.R. 359, at 367 (Bankr. S.D. Tex. 2015).
[6] *Id*. (citing *See generally* Smita Gautam, bankruptcy: Reconsidering "Property" to Determine the Role of Social Media in the Bankruptcy Estate, 31 Emory Bankr. Dev. J. 127, 127 (2014)).
[7] *Id.*
[8] *Id*. at 373.

individual capacity and are not the property of FSS, a business entity.[9] But the Trustee fails to present any legal or factual support for this Court to proceed with the sale of Jones' personal social media accounts. Thus, Jones objects to the sale of the Social Media Accounts as the sale would improperly result in a "taking" of his liberty interests as previously stated by all courts, including Judge Edith Jones opinion in *Brown* and this Court's opinion in *CTLI* as well.

### b. The bankruptcy Estate includes only the value of the social media reflected by the business goodwill, not the professional goodwill

8. As this Court stated, the value of a social media account is either business goodwill belonging to the business or professional goodwill that follows the individual, it cannot be both.[10] Yet the Emergency Motion impermissibly intertwines the business goodwill of FSS with the professional goodwill of Jones.

9. A business's social media account is, in a sense, the manifestation of the business's accrued goodwill.[11] The goodwill of a company is developed by its employees over the years.[12] If an individual leaves the business and some goodwill is thereby withdrawn, that goodwill is properly characterized as *professional goodwill*.[13] Professional goodwill is the sole property of the departed employee and is inextricably tied to the individual.[14] This Court previously stated that the bankruptcy estate includes only the value of the social media reflected by the business goodwill, and not the individual's professional goodwill.[15]

10. The Trustee states, "the Social Media Accounts are…integral to the business of FSS, to Jones' role in furthering that business, and to the Jones estate's business interests as well"

---

[9] *See* Emergency Motion at fn. 15 ("there is no argument about whether FSS or Jones owns the Social Media Accounts).
[10] *See In re CTLI, LLC*, 528 B.R. at 373.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id. at 374.*

and to "promote the Infowars brand."[16] FSS maintains a business social media account on X, "@infowars." However, the Emergency Motion is silent as to the business's social media account and only seeks permission to sell *Jones' individual Social Media Accounts*—"@RealAlexJones." Yet the only value the Trustee attaches to the Social Media Accounts is based on Jones' professional goodwill. But the professional goodwill Jones provides FSS is inextricably intertwined with Jones' person and cannot follow FSS upon Jones' departure from the business.

11.     Jones objects to the sale of the Social Media Accounts as the sale would impermissibly violate Jones' liberty interests in the Social Media Accounts and professional goodwill, as well as violate his inalienable right to privacy associated with his individual Social Media Accounts.

### C.     THE SALE OF SOCIAL MEDIA ACCOUNTS PROVIDES NO MONETARY VALUE TO THE ESTATE ABSENT JONES

12.     Lastly, Jones objects to the sale of the Social Media Accounts as the sale provides no monetary value to the estate apart from Jones. Jones further objects as the sale of the Social Media Accounts violates the social media platforms' terms and conditions and leaves the purported purchaser vulnerable to litigation or alternatively requires significant material changes to the Social Media Accounts that would further deplete any alleged monetary value associated with the Social Media Accounts.

*a.     The Social Media Accounts provide no monetary value to the estate without Jones.*

13.     As discussed above, the Social Media Accounts belong to Jones individually. The Social Media Accounts are unscheduled IP property and possess no prepetition value. Any potential value currently associated with Social Media Accounts stems directly from Jones' name, image, and likeness, as well as Jones' personal thoughts and views. Removing Jones from these

---

[16] Emergency Motion, [Dkt. No. 882, at ¶ 28.

Social Media Accounts strips the accounts of any alleged monetary value.

### b. The requested sale requires material changes to the Social Media Accounts that deplete any purported value attached to the accounts.

14. X (formerly Twitter) maintains a "misleading and deceptive identities policy."[17] Under this policy, an individual or entity is prohibited from "using false profile information to represent itself as a person or entity that is not affiliated with the account owner, such that it may mislead others who use X."[18] This prohibition includes posing as an existing person, group, or organization to mislead others. X defines a violation of this policy as any account that uses **at least two elements** of another identity, such as name, image, or false claims of affiliation with another individual or organization in their profile.[19]

15. Any purported purchaser of the Social Media Accounts[20] will be required to materially change Jones' individual X account significantly including, removal of Jones' name, image, and claims of affiliation with Jones' entities and affiliations that Jones maintains after the bankruptcy. Alternatively, the purported purchaser would need to indicate in both the account name and account bio that the owner of the account is no longer affiliated with Jones.[21] These changes are necessary for the purported purchaser to not violate the terms and conditions set forth by X. But any of the requisite changes strip the Social Media Accounts of any value, because the value of these accounts is inextricably tied to Jones' name, image, likeness, thoughts, opinions, and views. Also, a sale that violates a Platform's terms and conditions may result in a cancellation which would in effect destroy Alex Jones's rights.

---

[17] https://help.x.com/en/rules-and-policies/x-impersonation-and-deceptive-identities-policy.
[18] *Id.*
[19] *Id.*
[20] Many, if not all, social media platforms maintain similar terms and conditions, or alternatively, stringent verification processes to avoid and prevent misappropriation of an individual's identity.
[21] *Id.*

### c. *Maintaining the Social Media Accounts infringes on Jones' right of publicity*

16. Any attempt by a purported purchaser to maintain the Social Media Accounts without removing Jones' name, image, and likeness violates Jones' right of publicity, in addition to the terms and conditions of the subject social media account platform providers. At its core, the right of publicity is an individual's right to use one's name, likeness, or other indicia of identity for commercial use.[22]

17. Any sale of the Social Media Accounts would be in exchange for monetary value. Should a purported purchaser attempt to maintain the Social Media Accounts in the same manner as Jones to obtain a profit, it would necessarily involve Jones' name, image and likeness. Any unconsented use, or misappropriation, of Jones' name, image, and likeness is a blatant violation of Jones' right of publicity.

18. Jones objects to the requested sale because the sale of the Social Media Accounts provides no monetary value to the Estate and impermissibly violates his right of publicity and leaves him vulnerable to misappropriation.

### D. THE SALE DEFIES THE PURPOSE OF CHAPTER 7 BANKRUPTCY TO PROVIDE A DEBTOR WITH A FRESH START

19. Should this Court allow the sale of the Social Media Assets, it will defeat the very purpose of a Chapter 7 bankruptcy and deprive Jones of the fresh start he would otherwise receive.[23] The purpose of a Chapter 7 bankruptcy, even in the face of the threats of non-dischargeable claims rulings, is to provide a debtor with a fresh start, allowing the debtor to make a clean break from his financial past as may be limited by these discharge issues.[24] If the sale of

---

[22] Restatement (Third) of Unfair Competition §46 (Am. Law Inst. 1995).
[23] *See In re Lots by Murphy, Inc.*, 430 B.R. 431 (Bankr. S.D. Tex. 2010).
[24] *Id.*

the Social Media Accounts is permitted to go forward, Jones will not receive a clean break. Rather, Jones will be further damaged by incurring additional litigation costs and enduring the uncertainties of litigation outcome, into perpetuity, all to protect and defend his personal IP assets and liberties that the Trustee improperly claimed were sold, i.e. the improper purchase and commercialization of his name, image and likeness.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court deny the Emergency Motion to the extent that it seeks to sell Jones' Social Media Accounts, and for such other and further relief to which Alex Jones is entitled, both at law and in equity.

Dated:  October 24, 2024

**ELLIOTT, THOMASON & GIBSON, LLP**

By: */s/ Vickie L. Driver*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
511 N. Akard St., Suite 202
Dallas, TX 75201
Telephone: 214.506.1124
Facsimile:  214.506.1129
Email: vickie@etglaw.com
Email: crissie@etglaw.com

**COUNSEL FOR DEBTOR**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing pleading was served upon all parties registered to receive notices via the Court's ECF noticing system on this 24th day of October 2024.

                                                 */s/ Vickie L. Driver*
                                                 Vickie L. Driver