IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 11 |
| ALEXANDER E. JONES | § | CASE NO. 22-33553 |
| *Debtor* | § | |

## EMERGENCY MOTION TO DISQUALIFY GLOBAL TETRAHEDRON, LLC'S BID

*******************************************************************************

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING, UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

*******************************************************************************

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, FIRST UNITED AMERICAN COMPANIES, LLC ("FUAC"), a party-in-interest and the highest cash bidder in the recent "auction" of certain of the assets (the "Assets") of Free Speech Systems, LLC ("FSS"), and files this Emergency Motion to Disqualify the Bid submitted by Global Tetrahedron, LLC, an affiliate of the Onion (the "Onion").

**Introduction**

1.  The Trustee of the Alexander Jones Chapter 7 case, Christopher Murray (the "Trustee"), recently undertook to sell certain FSS assets (the "Assets") pursuant to this Court's Sale Order as Docket No. 859 (the "Sale Order"). A copy is attached as **Exhibit 1**.

2.  The Trustee filed a Notice of Successful Bidder and Backup Bidder on November 14, 2024, at Docket 903 ("Notice of Successful Bidder'). A copy is attached as **Exhibit 2**. In the Notice of Successful Bidder, the Trustee designated the Onion and Connecticut Families (as defined in the Notice of Successful Bidder) as the Successful Bidder, despite the fact that the Connecticut Families are not paying the estate any money and they are not acquiring any of the Assets.

3.  Attached hereto as **Exhibit 3** is a true and correct copy of FUAC's initial bid, which the Trustee determined was a "qualifying bid." Attached hereto as **Exhibit 4** is a true and correct copy of the Onion's initial bid, which the Trustee also determined was a "qualifying bid." FUAC's initial bid was $1,200,000 and the Onion's was $1,000,000. There were no other qualified bids for the online live auction that was scheduled for November 13, 2024. See ¶ 5 of the Sale Order.

4.  After receiving the initial bids, the Trustee and Tranzon decided to scrap the live auction and conduct a secret final and best bid process without court approval and contrary to the Sale Order (see ¶ 12 of the Sale Order). FUAC's final and best bid was $3.5 million for all of the Assets. The Onion's bid was $1,750,000 for all of the Assets. Incredibly, the Trustee accepted the Onion's bid as the highest and best bid.

**Argument**

**The Trustee Unilaterally and Improperly Changed the Auction Process from a Live Auction to a Secret Process in Violation of the Sale Order**

5.  It is readily apparent that there is nothing complicated or complex about FUAC's initial bid. Despite this obvious fact, the Trustee and Tranzon communicated to FUAC on November 11, 2024 that they determined that the final round auction would take the form of a request for a secret highest

2

and best bid because of the "complexity" of the bids.  Attached as **Exhibit 5** is a copy of the email from Jeff Tanenbaum of Tranzon to FUAC's counsel where the change in the sale process was first communicated.  This change in the sale process in and of itself violates the Sale Order.  Paragraph 12 of the Sale Order expressly provides that the Trustee was authorized to implement other procedures (i.e., other than the scheduled live online auction) only as he and his advisors <u>announced on the record at the Auction</u>. (emphasis added).  The IP Assets Auction was scheduled for November 13, 2024 at 10:30 a.m. (Prevailing Central Time).  Thus, any change to the sale process was required to be announced at the November 13, 2024 IP Assets Auction and on the "record."  The Trustee and Tranzon did not do this.  Moreover, the Sale Order required that any changes to the sale process had to be disclosed to Qualified Bidders such as FUAC.  As discussed in detail below, the Trustee changed other requirements of the Sale Order that were not disclosed, as required by the Sale Order.  The nature of such changes make it very clear why the Trustee did not want to disclose them to FUAC or the Court, and instead decided to cloak the process in secrecy.

**The Trustee Changed the Rules Without Disclosing the Changes to FUAC or Obtaining Court Approval**

6. The only "complexity" about the initial bidding was the Connecticut Families introduction of the concept of a valueless "Distributable Proceeds Waiver" ("DPW") as consideration.  If the Trustee was willing to entertain this concept, he was required to make full disclosure to FUAC and obtain Court approval.  By its very nature, the DPW is conditional, contingent, and provides zero value to the bankruptcy estate.  It does not result in one additional dollar going to the estate.  In essence, it functions only under the fundamentally flawed view that the Connecticut Families are the owners of FSS or the Assets and that they are effectively the seller.  The only context in which the concept of a DPW is found is in the case of distributions to owners of a business entity.  It is conditional and contingent because it is based on the amount of FUAC's bid.  It is not for a set amount, it goes up or down based on the amount of FUAC's bid.  It "floats" depending on the amount of FUAC's bid.

3

**The DPW Has No Value**

7.     The DPW offered by the Connecticut Families provides the estate no additional dollars or value whatsoever.  To be clear, the Onion's final bid for the Assets is only $1,750,000 cash.  The DPW is simply a reallocation of the assumed benefit the unsecured creditors will receive from the Onion's cash bid of $1,750,000.  The Connecticut Families assume they would receive a distribution of $2,625,000 from FUAC's final bid (i.e., $3,500,000) and other unsecured creditors would receive $875,000.  The DPW reshuffles these numbers so that the other unsecured creditors would receive $975,000 from the Onion's money and the Connecticut Families would receive $775,000.  The Connecticut Families want the Court to accept their waiver to a portion of their assumed distribution as "value" to the estate

8.     Their Argument makes no sense.  Whatever the Connecticut Families decide to do with distributions adds nothing to the value of the Onion's bid.  Moreover, the DPW concept is rooted in assumptions that are just wrong.  As of today, there simply is no way to determine the amount of the Connecticut Families' claim – it is not allowed and it is subject to appeal.  It is impossible to value.  Thus, the distribution to which the Connecticut Families may be entitled to in the future is pure speculation.

9.     The DPW is the equivalent of "monopoly" money.  It simply has no value.  It is also the product of impermissible collusion with the Onion in an effort to "rig" the auction with the goal of achieving a specific result desired by the Connecticut Families.  The entire goal of the DPW is to reduce the amount of the cash portion of the bid that is necessary for the Onion to be the "highest" bid.  Its effect is to depress and lower the amount the Onion would need to bid in cash to ensure that it was the winning bid.  This is a text book example of collusion and demonstrates in an attempt to rig the bid process so that the Onion could acquire the Assets for only $1,750,000.  This was not simply collaboration, this was outright collusive bid rigging.

**The New Unauthorized Bid Instructions**

10. Shortly after Tranzon sent its email stating that the initial bids were so complex that they necessitated a complete unauthorized change in the auction process, they sent a new bid form with instructions, a copy of which is attached hereto as **Exhibit 6**. The new bid procedure and instructions were not announced at the live auction, as required by the Sale Order. Paragraph 2 of the "new" bid instructions provides that all bids should quantify the amounts of all consideration in specific dollar amounts with specificity and avoiding references to any formulas or other contingencies. Moreover, the bids were to be highest and best bids – not subject to formulas or contingencies. Incredibly, Tranzon already knew that the inclusion of a DPW in the Onion's initial bid meant that the Onion's initial bid was subject to contingencies and was based on a formula directly tied to the amount of other Qualified Bids. Despite having this knowledge, the Trustee and Tranzon failed to disclose to FUAC that they were considering the concept of a cashless DPW in determining the highest and best bid. The new unauthorized bid instructions falsely represented that bids were not to be based on formulas or subject to contingencies knowing full well that the Onion's bid was based on a formula and was subject to contingencies.

**The Trustee Accepted the Onion's Bid Which Did Not Conform to Either the Sale Order or the Trustee's New Unauthorized Bid Instructions**

11. In good faith, FUAC took the Trustee at his word and made its final and best bid in cash and without the use of formulas or contingencies. FUAC's "final and best" bid is attached hereto as **Exhibit 7**. FUAC's bid can be understood within 5 seconds of review. If FUAC knew that the Trustee was willing to accept a bid relying on formulas and contingencies, FUAC would have made a very different final and best bid.

12. In complete bad faith and with improper collusion with the Connecticut Families, the Onion submitted its overbid with a three-page letter of explanation, a copy of which is attached hereto as **Exhibit 8**. Perhaps after 30 minutes or so of study, one can decipher the range of the bid that is

supposedly "above" the $1,750,000 cash portion of its bid. This bid does not conform with the Sale Order or even the new <u>unauthorized</u> bid instructions. Moreover, it was the product of collusion between the Onion and the Connecticut Families. That is bad enough, but the Trustee went along with this subterfuge and failed to disclose the fact that he was allowing such an amorphous concept as the DPW in a "final and best" bid.

**The Onion's Bid Violated the Sale Order**

13.    The Sale Order clearly contemplated that only cash and non-cash items with a readily ascertainable cash value (e.g., gold, bitcoin) would be acceptable. The Sale Order expressly states that the Purchase Price is to "be a specific amount in U.S. dollars (not a range)". The Onion's bid fails this requirement. Not only is the bid not in specific U.S. dollars, it is couched in terms of ranges based upon the amount of FUAC's bid. Additionally, undersigned counsel specifically asked the Trustee if he would allow the Connecticut Families (or any creditor) to credit bid. He responded unequivocally "No." The Trustee will now say that the DPW is not a credit bid. But, the Trustee knew that counsel's concern was whether any creditor could use their claim as "currency." The Trustee affirmatively deceived undersigned counsel.

**The Onion's Bid was Not a "Highest and Best" Bid**

14.    Moreover, the Onion bid is not a "highest and best" bid as the amount of the non-cash portion is dependent upon the amount of FUAC's bid amount. In essence, the Onion's bid is basically $1,750,000 cash and whatever monopoly money the Connecticut Families need to pledge so that the Onion's bid is $100,000 more than FUAC's bid. That is not a final and best bid. That is the very definition of a contingent bid. It was not disclosed to FUAC that it could couch its highest and best bid in terms of "$100,000 more than the other guy." FUAC took the Trustee at his word and expected him to act impartially and in good faith, which he clearly did not do.

**The Onion Bid Included Improper Formulas and Contingencies**

15. Further, the Onion's bid included impermissible formulas and contingencies based on FUAC's bid. It was also couched in terms of ranges, which was not permitted. The fact is that the Onion's bid was $1,750,000. Period; full stop! Every "dollar" above $1,750,000 is totally and utterly contingent upon the amount of FUAC's bid and faulty assumptions. This was not permitted or disclosed. The fact that the Trustee accepted it without disclosure to FUAC and full transparency to the Court, which was required under the Sale Order, leads to the unmistakable conclusion that the Trustee was bullied into acquiescing to the Connecticut Families' plan to rig the process so that the Connecticut Families' preferred bidder would be the successful bidder. See **Exhibit 8**, the last full paragraph. See also, **Exhibit 9** attached hereto.

**Secret Collusive Bidding Involving the Trustee**

16. The sale process was initially designed and approved by the Court to be fully transparent and provide full disclosure to all potential bidders. Disclosure and transparency are the fundamental tenents of bankruptcy. The Trustee's unauthorized change in the process violated these very basic principles. Not only did the Trustee fail to provide full disclosure, the Trustee made affirmative false disclosures.

17. The Trustee, the Onion, and the Connecticut Families are guilty of devising a scheme with the intent of deceiving Qualified Bidders such as FUAC, and concealing that scheme as described herein, which scheme culminated in the Trustee's filing of the Notice of Successful Bidder. This scheme would not have been uncovered but for the Court's willingness to conduct an emergency status conference at FUAC's request on November 14, 2024. The Court voiced its concern over what it heard at the status conference. But what the Court heard at the status conference was just the tip of the iceberg.

18.     The Trustee's involvement in the collusive bidding scheme amounts to a fraud on the Court which always gives the Court the right to void conduct that is taken in secrecy by fiduciaries *to the court*. "U.S. Bankruptcy law has a strong public policy against enforcing collusive or price-fixed bids in … contracts." *In re SageCrest II, LLC,* No. 3:16-cv-00021 (VAB), 2018 U.S. Dist. LEXIS 54245, at *13 (D. Conn. Mar. 30, 2018). Importantly, it has been noted that "Section 363(n) *complements the court's authority to withhold approval of sales lacking in good faith by reason of finding collusion between the purchaser and other bidders*…." *In re Edwards*, 228 B.R. 552, 563 n.23 (Bankr. E.D. Pa. 1998). Where the Trustee is involved in the lack of good faith, the Court should and must void the contemplated sale.

19.     Additionally, the 363(n) prohibition applies to agreements *that seek to control*, rather than merely affect, the price. *In re New York Trap Rock Corp.*, 42 F.3d 747, 753-54 (2d Cir. 1994). Here the Onion's collusive bid totally controlled the price by the "floating offer" that changed depending on the actual amount of the legitimate highest and best offer. The change was to apply a formula that would minimally top the best cash offer with the offer of (i) a non-changing "cash offer" and (ii) a valueless waiver of a speculative distribution that changed in amount only enough to top the highest cash bidder.

20.     The November 8, 2024, offer by the Onion was known to the Trustee on that date. After this knowledge, this was not only a secret agreement among the Onion and the Connecticut Families *but also the Trustee* who all failed to fairly and transparently give all bidders the new conditions that the Trustee would accept. Here the Trustee, after consultation with only the Onion and the Connecticut Families, changed the sale process from a Court ordered live Auction to a secret single opportunity to make a "highest and best bid" that, as it turned out, applied only to one bidder (being the one offering the most cash consideration -- FUAC). With the Trustee's knowledge, the Onion was never going to make a highest and best offer bid, only offering half of

8

the amount of cash and a bid that would "top" the legitimate highest and best offer of $3.5 million with "fake dollars" in the form of a waiver of assumed speculative distributions up to the amount necessary to win the bid. Under the secret agreement, the estate would never get more cash, but the joint-bidder Connecticut Families would reduce their claimed right to a speculative distribution, in exchange for a future share of the profits (that other creditors did not get).

21. The Trustee knew of the joint bid and knew that it would not result in any additional cash to the estate and would only result in a potentially higher distribution to other unsecured creditors (but no additional money to the creditors as a whole) who would receive a share of the $1.75 million cash consideration. The fact that the Trustee knew that one bidder's plan to top the highest cash bidder with an "agreement" that did not increase the cash consideration at all, and failed to disclose that he would accept something other than cash or its equivalent, knowingly created a playing field on which FUAC could not win. The non-cash portion of the bid (i.e., the DPW) is premised on the Connecticut Families prevailing in the appeal of their Judgment. Thus, it is impossible to "value" the Joint Bid at anything more than its cash value of $1.75 million, which is half of the amount of the legitimate highest and best offer.

## Conclusion

22. The Onion's bid must be disqualified and not considered a qualified bid or conforming bid.

    1) It was the product of improper collusion with the Connecticut Families with the knowledge and even participation of the Trustee.

    2) It was not made in good faith.

    3) It was not a "highest and best" bid.

    4) It was improperly contingent upon the amount of FUAC's final and best bid.

    5) It cannot be determined without reference to a formula, which the Trustee represented he would not accept.

6) It was given in a secret process contrary to the Sale Order and without disclosure or court approval.

7) It was contrary to the Sale Order, which required bids to be a specific U.S. dollar amounts and not in a range.

8) It provided the estate with no value over and above the $1,750,000 cash bid by the Onion, which amount was exactly one-half of the amount bid by FUAC.

9) The concept of a Distributable Proceeds Waiver was not contemplated or disclosed. The very use of such "monopoly" money was improper, unfair, not disclosed and provided the Onion an improper undisclosed advantage. Moreover, it has zero value.

FUAC respectfully requests that the Onion's bid be disqualified and that FUAC's bid be declared the winning bid, and that FUAC be granted such further and additional relief to which it shows itself entitled.

Respectfully submitted,

 */s/ Walter J. Cicack*
WALTER J. CICACK
State Bar No. 04250535
wcicack@hcgllp.com
HAWASH CICACK & GASTON LLP
711 W. Alabama St., Suite 200
Houston, Texas 77006
(713) 658-9015 - tel/fax
***Attorneys for First United American Companies, LLC***

### Certificate of Service

I hereby certify that a true and correct copy of the foregoing document has been served through the Court's ECF noticing system on this 18th day of November, 2024.

 */s/ Walter J. Cicack*
Walter J. Cicack