UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | § Chapter 7 |
| ALEXANDER E. JONES, | § Case No. 22-33553 (CML) |
| Debtor. | § |

**TRUSTEE'S OBJECTION TO EMERGENCY MOTION TO DISQUALIFY
GLOBAL TETRAHEDRON, LLC'S BID**
**[Relates to Docket No. 913]**

Christopher R. Murray, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Alexander E. Jones ("Jones" or the "Debtor") files this objection (the "Objection") to First United American Companies, LLC's ("FUAC") Emergency Motion to Disqualify Global Tetrahedron, LLC's Bid [Docket No. 913] (the "Disqualification Motion"). In support of this Objection, the Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. FUAC's Disqualification Motion, which is in essence an objection to the Trustee's *Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* [Docket No. 915] (the "Sale Motion"), is filled with baseless and legally inaccurate assertions that the Trustee colluded with Global Tetrahedron, LLC ("Global Tetrahedron") and the Connecticut Families (together, the "Successful Bidder") to "rig" the auction of the intellectual property and related assets of Free Speech Systems, LLC ("FSS"). Not only are FUAC's accusations demonstrably false, FUAC has fundamentally misunderstood the nature of the Successful Bidder's bid (the "Successful Bid") and that the Trustee's selection of such bid was

1

firmly within the Trustee's business judgment. Therefore, FUAC's Motion should be denied in its entirety.

2. The facts set forth in paragraphs 7–44 in the Trustee's *Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* [Docket No. 915] (the "Sale Motion") are fully incorporated as if restated herein.[1]

## ARGUMENT

### I. FUAC Lacks Standing to Object to the Successful Bid.

3. To appear in a bankruptcy proceeding, including to raise an objection to a section 363 sale, one must also be a "party in interest" within the meaning of section 1109(b). *See Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 272–73 (2024); *see also In re Caldor, Inc. NY*, 193 B.R. 182, 187 (Bankr. S.D.N.Y. 1996) (requiring party in interest status to raise objection to section 363 motion). The Bankruptcy Code does not specifically define "party in interest," instead providing only a non-exhaustive list of seven examples. *See* 11 U.S.C.§ 1109(b) ("the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee."). "Notably, all of these entities have some type of direct relationship to the debtor or estate property." *In re Heritage Real Estate Inv., Inc.*, 2020 WL 8551776, at *6 (Bankr. S.D. Miss. Sept. 9, 2020); *see In re Cyrus II P'ship*, 358 B.R. 311, 315 (Bankr. S.D. Tex. 2007) (Isgur, J.) ("A party in interest is a person 'whose pecuniary interests are directly affected by the bankruptcy proceedings.'").

4. Courts have frequently withheld "party in interest" status from participants in a bankruptcy sales process because they have no pecuniary interest in the estate outside of their

---

[1] The Trustee further incorporates the *Trustee's Objection to the Debtor's Emergency Application for Temporary Restraining Order* [Adv. P. No. 24-03238 filed contemporaneously herewith] (the "Opposition").

desire to purchase assets.² This logic applies to preclude standing for unsuccessful bidders to object to a sale. *See, e.g.*, *In re Quanalyze Oil & Gas Corp.*, 250 B.R. 83, 89 (Bankr. W.D. Tex. 2000) ("A competing bidder normally lacks standing to even challenge a sale . . . ."); *In re Condere Corp.*, 228 B.R. 615, 624 (Bankr. S.D. Miss. 1998) ("[A] prospective purchaser has no standing to object to a sale."); *In re HST Gathering Co.*, 125 B.R. 466, 467–68 (W.D. Tex. 1991) (concluding an unsuccessful bidder lacks standing to object to a sale). The only narrow exception to this rule (which the Fifth Circuit has yet to recognize) allows bidders to raise questions regarding the integrity of the sales process.³ *See Quanalyze Oil*, 250 B.R. at 89 nn. 5 & 6. And even those courts that do recognize that exception only apply it where the bidder's challenge, if successful, would increase the creditor body's recovery (i.e., when the challenger placed the highest bid). *See, e.g.*, *In re Moran*, 566 F.3d 676, 682 (6th Cir. 2009); *In re Colony Hill Assocs.*, 111 F.3d 269, 274 (2d Cir.1997). The standing granted to unsuccessful bidders, whose interest is obtaining the property, is correlated with the creditors' interest in maximizing their recovery from the estate. The two interests must align for an unsuccessful bidder to have standing." *In re New Energy Corp.*, 2013 WL 1192664, at *4 (N.D. Ind. Mar. 22, 2013) (citing *In re Moran*, 566 F.3d at 682). In other words, the unsuccessful bidder only has standing if its bid would have brought more benefit to the estate's creditors. *See id.* After all, "[t]he bankruptcy statutes governing sales by

---

² *See In re Las Cruces Country Club, Inc.*, 585 B.R. 239, 246 (Bankr. D.N.M. 2018) ("Generally, an entity that is a stranger to the bankruptcy case except for its interest in purchasing an estate asset lacks standing to object to a motion to sell."); *In re Diplomat Construction, Inc.*, 481 B.R. 215, 217 (Bankr. N.D. Ga. 2012) (unsuccessful competing bidders were not parties in interest with respect to the trustee's motion to sell and, therefore, lacked standing to oppose the trustee's motion); *In re Rook Broad. of Idaho, Inc.*, 154 B.R. 970, 974 (Bankr. D. Idaho 1993) (prospective purchaser "ha[d] no interest in the bankruptcy estate, other than its desire to purchase estate assets" and thus no interest "affected by the results of the debtors' bankruptcy, other than incidentally"); *In re Crescent Manufacturing Co.*, 122 B.R. 979, 981 (Bankr. N.D. Ohio 1990) (interested purchaser could not object to motion relating to plan because although reorganization "may increase the res available for distribution to creditors, [a purchaser] will not benefit from this estate"); *In re Karpe*, 84 B.R. 926, 929 (Bankr. M.D. Pa. 1988) (party in interest status denied to bidder for estate property who had no interest in the res that would be created).

³ *Cf. In re Miomni Gaming, Ltd.*, 2024 WL 1911092, at *4 n.1 (B.A.P. 9th Cir. May 1, 2024) (questioning this theory of standing).

3

trustees are meant to protect the estate and the creditors, not potential purchasers." *Id.*; *see also In re NEPSCO, Inc.*, 36 B.R. 25, 27 (Bankr. D. Me. 1983) ("[T]he purposes of [the Bankruptcy Code] would be hindered, not furthered, by permitting a stranger to the estate to object to a sale to which no party in interest objected.").

5. The language of section 363(n) plainly only allows "the trustee" to assert claims thereunder. *In re Butan Valley, N.V.*, 2009 WL 5205343, at *2 (S.D. Tex. Dec. 23, 2009) (observing that section 363(n) "provides clearly that it is the 'trustee' who may avoid a sale"); *accord In re New Energy Corp.*, 739 F.3d 1077, 1079 (7th Cir. 2014) (explaining why "under § 363(n), the trustee rather than a bidder is the right party to protest collusive sales"); *In re Waypoint Leasing Holdings Ltd.*, 607 B.R. 143, 156–57 (Bankr. S.D.N.Y. 2019) (noting that an unsuccessful bidder's ability to challenge the fairness of a sale is distinct from section 363(n)).

6. FUAC is not the Trustee, it is not a creditor, and it has no direct pecuniary interest in the Debtor's estate. Thus, it cannot rely on section 363(n), nor can it object to the Successful Bid. Instead, FUAC necessarily must rely on the narrow exception (never applied by the Fifth Circuit),[4] but as explained more fully below and in the Sale Motion, the exception is inapplicable here for two fundamental reasons: (1) FUAC did not place the "highest or otherwise best" bid; and (2) FUAC's wholly unsubstantiated contentions amount to nothing more than an attempt to negate the Trustee's business judgment and force him to accept FUAC's bid. Accordingly, the Court should deny the Disqualification Motion.

---

[4] Although the Disqualification Motion makes a passing reference to fraud on the Court, *see* Disqualification Motion ¶ 18, it makes no serious attempt to substantiate that claim. But even if it did, such a claim belongs to the estate and is subject to the Trustee's full control (unless the Court grants standing to another party). *See In re Roussos*, 2016 WL 5349717, at *12–13 (Bankr. C.D. Cal. Sept. 22, 2016) (concluding that a fraud on the court claim arising from a section 363 sale was estate property for which the trustee had standing). And in arguing that "the Court [has] the right to void conduct that is taken in secrecy by fiduciaries to the court," FUAC "confuses the Court's inherent authority – what the Court can do – with its own standing – what [FUAC] can do." *In re SunEdison, Inc.*, 2019 WL 2572250, at *8 (Bankr. S.D.N.Y. June 21, 2019).

4

15673090

**II.    FUAC Has No Basis for Asserting that the Successful Bid Was the Product of Improper Conduct.**

**A.    The Selection of the Successful Bid Was the Product of the Trustee's Business Judgment.**

7.    As set forth more fully in the Sale Motion, the Trustee's selection of the Successful Bid was within his business judgment. *See, e.g.*, Sale Motion ¶¶ 53–56. Section 363(b) of the Bankruptcy Code

> incorporates the "business judgment standard" from corporate law. A [trustee] may sell … estate assets while satisfying its fiduciary duties of it gives "some articulated business justification for using, selling, or leasing the property." That standard is less exacting and gives the [trustee] more discretion to sell assets (and pay fees) based on merely "sound business reasons."

*In re Bouchard Transp. Co., Inc.*, 74 F.4th 743, 750 (5th Cir. 2023) (quotations and citations omitted); *see In re Moore*, 608 F.3d 253, 262 (5th Cir. 2010); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re 9 Houston LLC*, 578 B.R. 600, 619 (Bankr. S.D. Tex. 2017) (Bohm, J.) ("A [trustee] certainly has a fiduciary duty to use reasonable care in making decisions, but once those decisions are made the [trustee] is protected by the business judgment rule."); *In re G–1 Holdings, Inc.*, 313 B.R. 612, 657 (Bankr. D.N.J. 2004) ("On the issue of the exercise of a debtor-in-possession's business decision and judgment, a debtor-in-possession's business decision should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice") (quotations omitted).

8.    FUAC claims that "[w]hatever the Connecticut Families decide to do with distributions adds nothing to the value of the Onion's bid." It is the Trustee, not FUAC, who acts as the reasonable determiner of what is valuable to the estate. More fundamentally, the Trustee's consideration of both the cash consideration of the Successful Bid and the increase in the distributions to the estate's other creditors accords with both the purpose of the Bankruptcy Code

and well-reasoned caselaw. Trustees are entitled to look beyond the initial lump sum in a given bid and consider all potential value to the estate. *See In re Scimeca Found., Inc.*, 497 B.R. 753, 779 (Bankr. E.D. Pa. 2013) (agreeing that the central inquiry is "whether the 'Trustee carefully weighed the competing bids rather than mechanistically recommending the facially higher bid'" (quotation omitted)). For example, in *In re Sasso*, the court approved a proposed sale that involved a cash component as well as the release of an unsecured claim. 572 B.R. 331 (Bankr. D.N.M. 2017). In that case, the trustee sought to sell an interest worth an estimated $72,150 to $75,850 in exchange for a $12,000 cash payment and the release of a $573,102.42 unsecured claim. *Id.* at 334–35. The court reasoned that although the cash payment was significantly lower than the value of the interest, the release of the purchaser's claim would significantly increase the distributions of other creditors. *Id.* at 338.

9. As set forth in the Sale Motion, the Trustee exercised his reasonable business judgment in considering the cash and non-cash consideration of the Successful Bid in determining that the net effect on the estate of the Successful Bid would improve recoveries to creditors in contrast to FUAC's bid. Sale Motion ¶ 53-55. Despite FUAC's protests to the contrary, the Winddown Order authorizes the Trustee to consider both the "cash and non-cash components" of bids. Winddown Order ¶ 6.

10. And while FUAC complains that the DPW has no value because the Connecticut Families' claims are subject to appeal, this cannot withstand scrutiny as courts routinely ascribe value to disputed claims.

11. More fundamentally, as explained above, FUAC does not have standing to object to the Successful Bid itself. Instead, if the Court adopts the narrow exception to the widely accepted rule that withholds standing from unsuccessful bidders, FUAC must demonstrate some

6

15673090

intrinsic unfairness in the process by which the Successful Bid was selected. In other words, FUAC would have to conclusively prove that the sale process was infected by fraud, deceit, or other inequitable overreaching, which it cannot do. And given the considerable discretion afforded to the Trustee in the Winddown Order, FUAC's mere disagreement with the value of the Successful Bid is not sufficient grounds for replacing the Trustee's business judgment with its own.

### B. The Trustee's Implementation of Procedures for the Auction Was Within His Reasonable Business Judgment.

12. As explained more fully in the Sale Motion, the Trustee was authorized by the Court to exercise his reasonable business judgment in connection with the Auctions and Sales of the FSS Assets (each as defined in the Winddown Order). *See, e.g.*, Sale Motion ¶¶ 15–44. Importantly, the Winddown Order provides that,

> **The Trustee's right is fully reserved, in his reasonable business judgment and in a manner consistent with his duties and applicable law, to** modify or waive any procedures or requirements with respect to all Potential Bidders, Qualified Bidders or to announce at an Auction modified or additional procedures for such Auction, and in any manner that will best promote the goals of the bidding process, **or impose, before the conclusion of the consideration of bids or an Auction (if held), additional customary terms and conditions on the sale of the IP Assets or the Remaining Assets, as applicable, including without limitation: … (c) modifying the Auction and Sale Procedures or adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction …**

Winddown Order ¶ 29 (emphasis added). The Winddown Order further provides that the Trustee may "modify the foregoing Bid Requirements, to modify any deadlines in paragraph 4 of this Order, to modify any procedures at the IP Assets Auction (if any), and/or to terminate discussions with any Potential Bidders at any time are fully preserved to the extent not materially inconsistent with this Order." *Id.* ¶ 7.

7

13. Each of FUAC's procedural challenges flies in the face of the actual terms of the Winddown Order and the Trustee's reasonable business judgment:

- <u>The Form of the Auction</u>. FUAC complains that the Trustee did not host a "live" auction, but the Winddown Order contained no such requirement. On the contrary, the Winddown Order allowed the Trustee to cancel the auction altogether and otherwise authorized him, "in his reasonable business judgment and in a manner consistent with his duties and applicable law, to modify or waive any procedures or requirements." Winddown Order ¶¶ 5, 29. Therefore, the Trustee's implementation of the "final and best" submission of bids at the Auction, in consultation with estate professionals, was consistent with his exercise of his business judgment and with the Winddown Order.

- <u>The "Floating" Nature of the Successful Bid</u>. The majority of FUAC's challenges rest on the notion that the amount of the Successful Bid included "impermissible formulas and contingencies." This is incorrect. The Successful Bidders provided the amount of the bid with the addition of the Distributable Proceeds Waiver (as defined in the Sale Motion). Sale Motion ¶ 37. The Successful Bid did not contain prohibitable contingencies, such as securing financing. The Trustee valued the bid in the exercise of his reasonable business judgment—which a trustee must necessarily do when considering non-cash components of a bid. Sale Motion ¶¶ 38–44. FUAC's protests regarding contingency are ultimately moot in any event because the Trustee was authorized to waive any procedures or requirements with respect to Qualified Bidders. *See* Winddown Order ¶ 29.

FUAC had ample notice of the Winddown Order and the considerable—and customary—discretion given to the Trustee therein with respect to the sale process, yet chose to participate. FUAC cannot now complain that the Trustee exercised those powers simply because FUAC disagrees with the Trustee's business judgment.

14. Additionally, the Sealed Bid Offering attached as Exhibit B to the Sale Motion was provided to potential bidders and specifies the terms of the offered assets and the procedures for the sale process. Above the signature line of the Bid Form attached to the Bid Package—which all bidders were required to fill-out, sign, and submit to submit a bid—there is a statement that, "I hereby submit my bid for the Packages above *in accordance with the terms and conditions of this bid package*." (emphasis added). Sale Motion, Ex. C at 2. The IP Assets Auction Overbid Form also includes that, "I hereby submit my over bid for the Packages above *in accordance with the*

8

15673090

*terms and conditions of the bid package* and sale order. All bids are irrevocable and final." Sale Motion, Ex. F at 2. The Bid Package states that,

> All Property is being offered through a sale process referred to herein as a sealed bid offering ("Sealed Bid"), wherein interested parties ("Recipient", "Buyer", "Bidder") are being asked to submit offers to the Sales Agent ("Sales Agent", "Auctioneer") for the right, title and interest in certain intellectual, intangible and/or personal property ("Assets") for consideration by the Seller ("Seller", "Trustee", "Estate"). **The Trustee reserves the right to accept or reject bids, evaluate offers compared to other offers received and/or projected revenues from a piecemeal auction, and open up the Sealed Bid for live bidding between competitive bidders ("Auction"). The Sealed Bid and any subsequent auction shall be referred to as the Bid Process as is further defined herein, and all bids submitted to Sales Agent are subject to the terms and conditions specified below.**"

Bid Package at 11 (emphasis added). In addition, the Bid Package includes the following:

> Bids Are Irrevocable. By submitting a bid, the Bidder is making an irrevocable offer to purchase the Assets bid upon. **The Bidder acknowledges and agrees that by submission of its bid, it is accepting the terms and conditions set forth in these Instructions.** Upon submission of a bid, the offers contained therein are irrevocable.

Bid Package at 11 (emphasis added). Also,

> The Bid Process and Terms with any amendments or modifications expressly made by Sales Agent constitute all the terms and conditions with respect to the sale of the Property; **however Sales Agent reserves the right to modify the Bid Process and Terms, as may be necessary and shall notify Bidder accordingly**.

Bid Package at 14 (emphasis added).

15.     The procedure of having the Qualified Bidders submit their highest and best offers was announced to the Qualified Bidders in writing on Monday, November 11, 2024, in advance of the Auction. The Auction occurred by written submission of final and best bids. Neither of the Qualified Bidders objected to the format at the time or after—until FUAC was designated as the Backup Bidder. The Qualified Bidders' signing and submission of the Bid Form and the IP Assets Auction Overbid Form unquestionably indicates the Qualified Bidders' consented to participate in the auction for the IP assets in accordance with the procedures set forth in the Bid Package, which

9

included the Trustee's and the Auctioneer's reservation of rights to amend the procedures for such Auction consistent with the Winddown Order. As a result, FUAC has waived its right to complain about the format of the Auction.

  **C. FUAC Has No Basis for Asserting that the Successful Bid Was the Product of Collusion.**

  16. The Trustee rejects in the strongest possible terms the accusation by FUAC that there was collusion involving the Trustee. *See* Disqualification Motion ¶¶ 16–21. Without any evidence, FUAC asserts that "[t]he Trustee, the Onion, and the Connecticut Families are guilty of devising a scheme with the intent of deceiving Qualified Bidders such as FUAC, and concealing that scheme as described herein, which scheme culminated in the Trustee's filing of the Notice of Successful Bidder. … the collusive bidding scheme amounts to a fraud on the Court." Disqualification Motion ¶¶ 17–18.

  17. "An agreement between two bidders resulting in a single bid in exchange for consideration does not, without more, constitute collusion." *In re GSC, Inc.*, 453 B.R. 132, 154 (Bankr. S.D.N.Y. 2011) (citing *In re Edwards*, 228 B.R. 552, 565 (Bankr. E.D. Pa. 1998)).[5] The Successful Bidder submitted their initial bid and final bid as a "joint bid" and fully disclosed the identity of each entity bidding for the assets. *See* Winddown Order ¶ 6. Additionally, Global Tetrahedron and the Connecticut Families did not act together to lower the value of the sale price; rather, their bid increased recoveries for all other general unsecured creditors, further undermining FUAC's assertions of collusion. *See GSC*, 453 B.R. at 154. Indeed, there is no evidence that

---

[5] Section 363(n) of the Bankruptcy Code was intended "to prohibit only agreements that are intended *to control a sale price*, and not all agreements having the unintended consequence of influencing a sale price." *In re Rumsey Land Co.*, 944 F.3d 1259, 1276 (10th Cir. 2019) (quoting *In re N.Y. Trap Rock Corp.*, 42 F3d 474, 752 (2nd Cir. 1994). FUAC misses the fact, however, that it is the *trustee* who brings an action to avoid a sale under section 363(n).

15673090

Global Tetrahedron and the Connecticut Families—much less the Trustee—sought to control the sale price.

18. All parties were subject to the same bidding requirements and had the same information regarding FSS's assets. Both Qualified Bidders were required to submit their best and final bids in accordance with the overbid procedures implemented for the Auction. Neither party had any indication of the value of other bids. Such a format is customarily used by auctioneers because it forces parties to determine the maximum amount there are willing to bid to acquire the assets. The procedures worked exactly as intended because they resulted in materially better offers from both Qualified Bidders in comparison to their initial bids. Because of the "highest and best" structure for submitting written bids, neither Global Tetrahedron nor the Connecticut Families could have been in a position to control the sale price given that they did not know the amount of FUAC's initial bid or final bid.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court deny FUAC's Disqualification Motion with prejudice.

Dated: November 24, 2024
Houston, Texas.

                        Respectfully submitted,

                        By: */s/ Joshua W. Wolfshohl*
                        Joshua W. Wolfshohl (Bar No. 24038592)
                        Michael B. Dearman (Bar No. 24116270)
                        Jordan T. Stevens (Bar No. 24106467)
                        Kenesha L. Starling (Bar No.24114906)
                        **Porter Hedges LLP**
                        1000 Main Street, 36th Floor
                        Houston, Texas 77002
                        Telephone: (713) 226-6000
                        Facsimile: (713) 226-6248
                        jwolfshohl@porterhedges.com
                        mdearman@porterhedges.com
                        jstevens@porterhedges.com
                        kstarling@porterhedges.com

                        *and*

                        Erin E. Jones (TX 24032478)
                        **Jones Murray LLP**
                        602 Sawyer Street, Suite 400
                        Houston, Texas 77007
                        Telephone: (832) 529-1999
                        Fax: (832) 529-3393
                        erin@jonesmurray.com

                        *Counsel for Christopher R. Murray, Chapter 7 Trustee*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing objection has been served on all parties receiving or entitled to notice through CM/ECF in the above-captioned proceeding on this the 24th day of November, 2024.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl
