IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>ALEXANDER E. JONES,<br><br>Debtor. | ) ) ) ) Chapter 7 ) ) Case No. 22-33553 (CML) ) ) ) |

**CONNECTICUT FAMILIES'
STATEMENT (I) IN SUPPORT OF THE TRUSTEE'S EMERGENCY
MOTION FOR ENTRY OF AN ORDER IN FURTHERANCE OF THE SALE OF
ASSETS OF FREE SPEECH SYSTEMS, LLC AND (II) IN OPPOSITION TO (A) THE
EMERGENCY MOTION TO DISQUALIFY GLOBAL TETRAHEDRON, LLC'S BID
AND (B) THE PLAINTIFFS' COMPLAINT AND EMERGENCY APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

The Connecticut Families,[1] as creditors and joint bidders with Global Tetrahedron, LLC ("Global Tetrahedron," and together with the Connecticut Families, the "Successful Bidders") in the above captioned case, respectfully submit this statement (this "Statement") (a) in support of the sale of Free Speech Systems, LLC's ("FSS") assets, as requested in the *Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* [Docket No. 915] (the "Sale Motion"), and (b) in opposition to the (i) *Emergency Motion to Disqualify Global Tetrahedron, LLC's Bid* (the "Disqualification Motion") [Docket No. 913], filed by First United American Companies, LLC ("FUAC") and (ii) *Plaintiffs' Complaint and Emergency Application for Temporary Restraining Order and Preliminary Injunction Pursuant to Bankruptcy Rule 7065* [Docket No. 917] (the "Jones Complaint"), filed by debtor Alexander E. Jones ("Jones"). The Connecticut Families respectfully state as follows:

---

[1] The "Connecticut Families" are Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, and Erica Ash.

1

**Preliminary Statement**

1.  Christopher R. Murray, the trustee for the bankruptcy estate of Jones (the "Trustee"), conducted a fair and value-driven sale process to maximize recoveries to FSS creditors, as described in the Sale Motion. At the end of that process, the Trustee determined that the final bid submitted by the Successful Bidders yielded the best outcome for creditors of FSS. The Trustee was entitled to make that determination under the Winddown Order[2] approved by this Court and as a matter of business judgment.[3] Unfortunately, it is clear from the pleadings that Jones will do almost anything to avoid giving up control of FSS—including arguing, belatedly, that the Trustee cannot control FSS and making baseless assertions of collusion and other illegitimate actions against the Trustee and the Connecticut Families.

2.  While the Disqualification Motion, the Jones Complaint, and other documents filed by Jones are intended to generate noise and chaos in these proceedings, the concerns couched within them are baseless and irrelevant. The Sale Motion raises a single, narrow issue—whether the Trustee has appropriately exercised his business judgment in conducting the sale process and in designating Global Tetrahedron and the Connecticut Families as the "successful bidders" in the auction process. To be clear, the outcome of this question does not turn on whether the bid selected by the Trustee simply offers the highest cash purchase price. Rather, the applicable standard in evaluating the Trustee's sale process and selection of the "successful bid" asks whether the outcome of the sale process resulted in the Trustee selecting

---

[2] The "Winddown Order" refers to the Order Granting Trustee's Motion for Entry of an Order Authorizing the Winddown of Free Speech Systems, LLC [Docket No. 859].

[3] Courts in this district approve asset sales where the sale "constitutes a reasonable and sound exercise of the Debtor's business judgment[.]" See In re Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. et al. (In re Continental Air Lines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986); In re 9 Houston LLC, 578 B.R. 600, 610–11 (Bankr. S.D. Tex. 2017). The business judgment of a trustee or debtor is considered on a case-by-case basis. In re Continental Airlines, Inc., 780 F.2d at 1226.

the highest *or best* bid.  Clearly, the applicable standard, by its very nature, does not rely solely on a mathematical analysis.

3. Accordingly, the standard requires a trustee, beholden to nobody, to exercise their business judgment in determining what offer is the "best or highest."  For the reasons set forth in this Statement and the Sale Motion, the Connecticut Families contend that the Trustee conducted a good faith and value maximizing sale process, and exercised his reasonable business judgment in selecting the Successful Bidders' bid.  Accordingly, the Connecticut Families fully support the relief requested by the Trustee in the Sale Motion, and file this Statement to correct the record on certain issues raised in the Disqualification Motion and the Jones Complaint.

4. The Disqualification Motion—filed by a disgruntled backup bidder, FUAC, that is working with, or on behalf of, Jones—lacks any legal or factual basis.  At its core, the Disqualification Motion is an objection to the Sale Motion.  Apparently upset that the Trustee's sale process yielded a result that it does not like, FUAC now—only *after* that process concluded—makes a slew of unfounded and defamatory assertions intended to inject chaos and hysteria into a value-maximizing bankruptcy sale process, and to question the legitimacy of such process.

5. *First*, the Disqualification Motion asserts that the Distributable Proceeds Waiver was improper because the amount of the Connecticut Families' claims is not known.  As this Court knows, the amount of the Connecticut Families' claims are fully liquidated.  Further, the only party with legal authority to continue appealing the Connecticut judgments—the Trustee— is *not* prosecuting an appeal of those claims on behalf of FSS.  The Trustee, who owns 100% of FSS, is unquestionably entitled to determine which claims are allowed against FSS, and entitled

3

to make informed business judgments about the extent of claims against FSS, and therefore how to maximize value for those creditors.

6. *Second*, the Disqualification Motion's allegations of bidder "collusion" are not just false, but frivolous. Collusion is definitionally ***among bidders*** and there is no allegation whatsoever that the bidders here—Global Tetrahedron and the Connecticut Families, on the one hand, and FUAC, on the other—conspired among each other. Indeed, the basis of FUAC's objection is that it ***did not know*** the nature of the Global Tetrahedron bid. There is not a single piece of evidence that any bidder offered a lower price for FSS's assets than they otherwise would have in the absence of some purported agreement to depress prices. To the contrary, the uncontested evidence shows that far from ***depressing*** the ultimate sale price, the Connecticut Families' participation in that process with Global Tetrahedron generated ***higher*** bids. There was no collusion—***there are not even credible allegations of collusion***—and those facts will not change no matter how many times, or how loudly or carelessly, FUAC and Jones make such accusations.

7. *Finally*, the Disqualification Motion rests its objection to the Successful Bidders' bid on the false notion that it is somehow "contingent" and therefore prohibited by applicable instructions. This argument is based entirely on patent mischaracterizations of the Sale Order and Bid Instructions. The only "contingency" prohibited by the Bid Instructions—that a bid for a specific "lot" of assets could not be contingent on the bidder winning other "lots" of assets—is wholly inapplicable here. Moreover, there is nothing "contingent" about the Successful Bidders' bid, since both the cash component and the Connecticut Families' waiver were provided in specific dollar amounts and were offered to the Trustee on an irrevocable basis. And in any

event, the Trustee had broad discretion to both change these procedures and select the winning bid in accordance with his business judgment.

8. By all reasonably objective measures, and despite the many obstacles that Jones has placed in the Trustee's path along the way, the Trustee has achieved an incredible outcome in this case—conducting a robust marketing process and pursuing a value-maximizing sale transaction that is in the best interest of the Debtor, FSS, and its creditors, and is supported by the Debtors' largest creditor constituency, the Connecticut Families. Unfortunately, in his unrelenting pursuit to maintain control over FSS's assets, Jones has elected to continue acting in a value-extracting, combative manner as most recently demonstrated by the filing of the Jones Complaint. It should not be lost on the Court that *even now*, Jones and his newly retained counsel take the position that Jones—and not the Trustee—is exclusively entitled to control all of the assets of FSS, (Jones Complaint ¶ 56), an astounding position to take *after* failing to oppose the Winddown Order or the Supplemental Dismissal Order that this Court recently entered.

9. While the Jones Complaint asserts a variety of objections and assertions, all of which are unfounded, and most of which are fantastically inaccurate, the sale process speaks for itself. In accordance with the Winddown Order approved by this Court, the Trustee conducted a fair and competitive multi-round process that ultimately yielded two competitive bids. In accordance with his fiduciary duties, and following a thorough comparison of the final bids, the Trustee, in an exercise of his business judgment, selected what he determined to be the highest or best bid. Ultimately, the issues raised in the blizzard of papers filed over the last two weeks boil down to one key question: did the Trustee reasonably exercise his business judgment in selecting the Successful Bidder? The answer is "yes."

**Argument**

I. **The Trustee Validly Exercised His Business Judgement in Selecting the Successful Bid**

10. The Trustee's selection of the Successful Bidders' bid falls squarely within the Trustee's business judgment. Bankruptcy courts routinely authorize sales of debtors' assets under section 363 of Title 11 of the United States Code (the "Bankruptcy Code") when a debtor articulates a sound business purpose for the sale. *Institutional Creditors of Continental Air Lines, Inc.* v. *Continental Air Lines, Inc., et al.* (*In re Continental Air Lines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986); *see also, In re San Jacinto Glass Industries, Inc.*, 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988). "In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'" *See Chamberlain* v. *Stanziale* (*In re Chamberlain*), 545 B.R. 827, 844 (D. Del. 2016). Generally, "[W]here the trustee articulates a reasonable basis for the business decision (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct*." In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). In other words, the demonstration of a valid business justification by a debtor or trustee leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders* v. *Integrated Res. Inc.* (*In re Integrated Res. Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith* v. *Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Thus, if the Trustee's actions satisfy the business judgment rule, then the transaction should be approved under section 363(b)(1) of Bankruptcy Code.

11.  Business judgment does not depend on price alone, but requires courts to consider all salient factors pertaining to the proceeding and, accordingly, a court may act to further the diverse interests of the debtor, creditors, and equity holders, alike. *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).  The Bankruptcy Code thus affords courts broad flexibility in determining which of several bidders should be deemed the successful bidder at a 363 sale. *In re Tresha-Mob, LLC*, 2019 Bankr. LEXIS 1333, *4-6 (Bankr. W.D. Tex. 2019) (quoting *United States v. Chem. Found.*, 5 F.2d 191, 206 (3d Cir. 1925)) (internal quotations removed).  Courts routinely reject the proposition that reviewing courts or fiduciaries are duty-bound to mechanically accept a bid with the highest dollar amount. *Id.*; *see also*, *In re Scimeca Found., Inc.*, 497 B.R. 753, 779 (Bankr. E.D. Pa. 2013) ("Given the financing contingency and other provisions of the Untermeyer proposal . . . it was within the trustee's sound business judgment to accept a somewhat lower all-cash offer with no contingency."); *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998) (finding "no cogent reason to disagree or interfere with the Trustee's judgment" where "[t]he Trustee carefully weighed the competing bids rather than mechanistically recommending the facially higher bid"); *In re Family Christian, LLC*, 533 B.R. 600, 622 (Bankr. W.D. Mich. 2015) (holding that a debtor is not required to "mechanically accept a bid with the highest dollar amount").  Said another way, it is not always the case that the highest bid is the best bid.  In determining whether the highest bid is the "best bid," the Trustee and reviewing court must consider factors such as "the risks associated with each bid and the probabilities that the proposed terms will come to fruition as well as contingencies, conditions, timing, or other uncertainties in an offer that may render it less appealing." *See In re Tresha-Mob, LLC*, No. 18-52420-RBK, 2019 Bankr. LEXIS 1333, at *5 (Bankr. W.D. Tex. Apr. 3, 2019).

12. The Trustee may also consider societal needs—in this case, whether the FSS assets would be used to continue harming the Connecticut Families—as part of his evaluation. *See In re After Six, Inc.*, 154 B.R. 876, 882 (Bankr. E.D. Pa. 1993) ("We therefore have no doubt that, in an appropriate setting, a bankruptcy court, sitting in the Third Circuit as well as the Second Circuit, could appropriately award a bid to a lower bidder, when that lower bidder had other factors, including even an element as lacking in direct economic impact as 'societal needs,' in its favor. The Bankruptcy Code, like any law, must be read in its context as a tool of mankind, not a body of edicts to which mankind is a slave irrespective of its interests to the contrary."); *see also In re Tresha-Mob, LLC*, No. 18-52420-RBK, 2019 WL 1785431, at *2 (Bankr. W.D. Tex. Apr. 3, 2019) (citing *After Six. Inc.*, 154 B.R. 882). The support of the Connecticut Families—who are the largest creditor constituency in this case—also should be considered. *See, e.g., In re Quality Stores, Inc.*, 272 B.R. at 647–48 (court recognized committee and secured lenders' support of proposed sale and it "was important that their interests be considered" because they bore risk if the sale was not timely consummated); *In re Fam. Christian, LLC*, 533 B.R. 600, 628 (Bankr. W.D. Mich. 2015) (citing to *Quality Stores* and recognizing that the court may place significant emphasis on the support of key stakeholders).

13. Because the standard for approval is not a "mechanical" exercise to find the "highest" bid, but instead requires the consideration of which bid is "best" for the estate, the Trustee is necessarily endowed with discretion. How that discretion is exercised, in turn, is subject to the reasonable exercise of the Trustee's business judgment. Here, the Trustee was given, and exercised, discretion in conducting the sale process and in selecting the winning bid. In both instances, the sole question before the Court is whether the Trustee appropriately exercised his business judgement in exercising such discretion. *See* 3 COLLIER ON

BANKRUPTCY ¶ 363.02. (Richard Levin & Henry J. Sommer eds., 16th ed. 2020). ("The court should not substitute its judgment for the trustee's but should determine only whether the trustee's judgment was reasonable and whether a sound business justification exists supporting the sale and its terms."); *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998) (approving a trustee's business judgment where the trustee "carefully weighed the competing bids [including their risk factors and other provisions] rather than mechanistically recommending the facially higher bid").

14. The Trustee has articulated a sound business purpose for conducting the sale process in the manner in which he did and in selecting the Successful Bidders' bid as the "successful bid" in the auction. Sale Mot. ¶ 53–55. Specifically, the Sale Motion makes clear that the Trustee reasonably exercised his discretion by taking into account the cash and non-cash consideration provided by the Successful Bidders' bid in evaluating the bids. Accordingly, the Connecticut Families respectfully submit that the Trustee's selection of their joint bid with Global Tetrahedron for the sale of FSS assets outside the ordinary course of business fits squarely within the parameters of the business judgment standard.

## II. FUAC's Disqualification Motion Lacks Any Legal or Factual Basis

### A. The Amount of the Connecticut Families' Claims Are Fixed

15. FUAC states that "there simply is no way to determine the amount of the Connecticut Families' claim – it is not allowed and it is subject to appeal." Disqual. Mot. ¶ 8. This is incorrect. The Connecticut Families have filed proofs of claim reflecting the precise amount of the liquidated judgments awarded to the Connecticut Families by a jury as well as punitive damages set by the Connecticut Superior Court. Far from being "impossible to value," the Connecticut Families' claim amounts are knowable, fixed, and certain. Specifically, the

Connecticut Families together hold claims totaling $1,549,568.95 for final and liquidated judgments against FSS (and Jones).

16.  The Trustee is the 100% owner of FSS. All of FSS's assets are property of the Jones chapter 7 estate. *See Order Supplementing Order Dismissing Case* [Case No. 22-60043, Docket No. 1021]. The Trustee is therefore the only party with authority to appeal the Connecticut Judgments on behalf of FSS. Binding Fifth Circuit case law provides that appellate rights, such as the right to appeal the Connecticut Families' judgments against FSS, are property of the bankruptcy estate to be administered by the Trustee. *See Croft* v. *Lowry* (*In re Croft*), 737 F.3d 372, 378 (5th Cir. 2013) ("it is well established that the right to appeal is property of the estate."); *see also In re E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808, 812 (Bankr. N.D.Tex. 1989) ("If an action belongs to the estate, the trustee has the power and duty to prosecute the action for the benefit of all creditors and shareholders in the estate."); *Matter of Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994) ("If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim.").

17.  The Trustee has confirmed that it is "not prosecuting appeals" of the Connecticut Families' claims against FSS. Sale Mot. ¶ 55 n.5. Accordingly, FUAC's (and Jones's) assertion that the quantum of the Connecticut Families' claims against FSS is uncertain, and therefore the value of the Distributable Proceeds Wavier is also uncertain, is meritless. To the contrary, the amount of the Connecticut Families' claims against FSS are uncontested by FSS. In fact, Jones's efforts to prosecute appeals on behalf of FSS constitutes a blatant violation of the automatic stay.

18.  Finally, FUAC's assertions that the Connecticut Families' claims have already been objected to is not true. While, on the eve of Jones' chapter 11 case being converted to a chapter 7 case, **Jones** filed objections to the Connecticut Families' claims **in the Jones chapter**

10

*11 case*, FSS never filed an objection to the *separate* claims that the Connecticut Families filed against FSS in the FSS case. *See Debtors' Consolidated Objection to Proofs of Claim Filed by Connecticut Plaintiffs* [Docket No. 705]; *Connecticut Plaintiffs' Opposition to Jones's Claim Objection* [Docket No. 812]; *see also Global Notes and Statements of Limitations, Methodology, and Disclaimer Regarding Debtor's Schedules and Statements* [Case No. 22-60043, Docket No. 121].

### B. FUAC's "Collusion" Allegations Are Meritless

19. FUAC next makes various completely unsubstantiated allegations of "collusion" among Global Tetrahedron, the Connecticut Families, and even the Trustee. Disqual. Mot. ¶¶ 9, 22. These allegations have no evidentiary support and make no sense for several reasons.

20. *First,* Global Tetrahedron and the Connecticut Families are *joint* bidders. Collusion, definitionally, is among *different* bidders—even FUAC's own quotation of *In re Edwards* in the Disqualification Motion recognizes this. *See* Disqual. Mot. ¶ 18 ("'Section 363(n) *complements the court's authority to withhold approval of sales lacking in good faith by reason of finding collusion between the purchaser and other bidders*….' *In re Edwards*, 228 B.R. 552, 563 n.23 (Bankr. E.D. Pa. 1998)"). The Connecticut Families were clearly never potential bidders in their own right—they offered to pay no cash and they did not have the financing necessary to submit a competitive bid. *See Ross* v. *Kirschenbaum* (*In re Beck Industries, Inc.*), 605 F.2d 624, 635-36 n. 13 (2nd Cir. 1979) ("bidding is not improperly chilled by the mere fact of an association of persons formed for the purpose of bidding at a sale since this may be not only unobjectionable but oftentimes meritorious, if not necessary to enable the persons associating themselves to participate in the bidding, rather than to shut out competition."). Further, for an agreement to be "collusive", it must be intended to *control* the sale price. *See Lone Star Industries, Inc*. v. *Compania Naviera Perez Companc,*

*S.A.C.F.I.M.F.A., Sudacia, S.A.* (*In re New York Trap Rock Corp.*) 42 F.3d 747, 752 (2d Cir. 1994) (The use of the term "collusive" indicates Congress's intended "to prohibit only agreements that are intended to control a sale price, and not all agreements having the unintended consequence of influencing a sale price— i.e., not all agreements that affect a sale price."). As the Second Circuit noted in *In re New York Trap Rock Corp.,* an intention to control sale price arises in a situation where two or more potential bidders, recognizing that competitive bidding will drive up the price of the marketed assets, agree to limit their competitive bidding and share the premium among themselves rather than allow the debtor to realize the difference in value between the final and opening bids. *Id.,* at 753. There is not even a shred of evidence—much less a credible allegation—suggesting that the Successful Bidders intended to control the purchase price of the FSS assets at the auction. And there is, of course, no evidence that the Connecticut Families' actions did anything to depress the ultimate sale price garnered for FSS's assets; in fact, their participation increased Global Tetrahedron's bid and thereby ***raised*** the purchase price for the purchased assets. *See In re GSC, Inc.*, 453 B.R. 132, 154 (Bankr. S.D.N.Y. 2011) (finding no collusive bid where "the parties combined their bids to raise the sale price rather than to lower it."). Moreover, "collusion" itself is defined as "***secret*** cooperation for a fraudulent or deceitful purpose." *In re New York Trap Rock Corp.,* 42 F. 3d at 752. The Connecticut Families' involvement with Global Tetrahedron could hardly be said to be secretive; they submitted a joint bid identifying their role in the bid and the *Notice of Successful Bidder and Backup Bidder in the Auction for the Assets of Free Speech Systems, LLC Free and Clear of Any and All Claims, Interests, and Encumbrances* [Docket No. 903] (the "<u>Sale Notice</u>") publicly declared the Successful Bidders' joint bid the "Successful Bid." *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (the court was "hard pressed" to find bad faith when the

challenged relationship between bidder and debtor "was fully disclosed to the Bankruptcy Court"); *G-K Development Co.* v. *Broadmoor Place Invs., L.P.* (*In re Broadmoor Place Invs., L.P.*), 994 F.2d 744, 746 (10th Cir. 1993) (finding no "collusion" where the contract between bidder and debtor "was specifically set forth" in bid reviewed by the bankruptcy court).

21.    *Second,* FUAC also alleges that there was "Secret Collusive Bidding Involving the Trustee" through a "scheme" and "secret agreement" among the Successful Bidders and the Trustee. Disqual. Mot. ¶¶ 16–21. FUAC has not offered any credible factual evidence whatsoever in support of those accusatory statements. The Successful Bidders were subject to the same process, and received the same information, as FUAC. Both FUAC and the Successful Bidders submitted their "best and final" bids in accordance with the Overbid Procedures—each materially increasing the value of its bid—without any indication of the value of other bids. Indeed, the Trustee's sale process worked exactly as intended, and at the end of this process, the Trustee exercised his business judgment to select which bid yielded the most value for FSS's creditors. While the Court must review the Trustee's business judgment to determine independently whether the judgment is a ***reasonable*** one, "[t]he court should not substitute its judgment for the trustee's but should determine only whether the trustee's judgment was reasonable and whether a sound business justification exists supporting the sale and its terms." 3 COLLIER ON BANKRUPTCY ¶ 363.02. (Richard Levin & Henry J. Sommer eds., 16th ed. 2020). The Connecticut Families submit that the Trustee's exercise of business judgment was reasonable and that the Successful Bidders' bid was the best offer. *See In re Tresha-Mob, LLC*, No. 18-52420-RBK, 2019 Bankr. LEXIS 1333, at *5 (Bankr. W.D. Tex. Apr. 3, 2019); *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998).

22. Accordingly, the Court should not credit FUAC's unfounded attempts to inject uncertainty and disrepute into this sale process. *See In re Pursuit Cap. Mgmt., LLC*, 874 F.3d 124, 136 (3d. Cir. 2017) (rejecting objecting parties' attacks as "conclusory and unpersuasive" where those parties "struggle[d] to point to specific facts that support their contentions," including their argument that "the Trustee's conduct relating to the modification of the auction procedures, and how those procedures were applied to the [objecting parties], constituted bad faith.").

23. Not only is there zero evidence of any improper "collusion" or "bid rigging", as FUAC and Jones repeat *ad nauseum*, there are not even credible ***allegations*** of such improper conduct. FUAC's complains that ***it did not know the terms of the other bids***, yet it maintains that bidders—when it was one of two qualifying bidders—conspired to control the price of the auction. These incoherent assertions highlight the carelessness in which FUAC and Jones have repeatedly accused the Trustee, Global Tetrahedron, and the Connecticut Families of illegal conduct.

### C. The Successful Bid Is not Contingent

24. Finally, FUAC argues that the Successful Bidders' bid includes "impermissible formulas and contingencies" and is therefore improper under the relevant orders and instructions governing the sale. Once again, FUAC is wrong.

25. *First*, nowhere in the Overbid Instructions,[4] Winddown Order, or Offering Memorandum[5] does the Court or Trustee strictly prohibit "contingencies" of any sort; rather, the Overbid Instructions prohibit bids on lots of assets that are "contingent upon another lot." Overbid Instructions ¶ 2. No party alleges any violation of this rule. Elsewhere, the Overbid

---

[4] The "Overbid Instructions" refers to the *IP Assets Auction Bid Instructions* attached hereto as **Exhibit A**.
[5] The "Offering Memorandum" refers to the *Sealed Bid Offering* attached hereto **Exhibit B.**

Instructions advised bidders to "*avoid*" "references to any formulas or other contingencies." Overbid Instructions ¶ 2.

26. *Second*, the Successful Bidders' bid provided the precise dollar amount of its bid, along with, as an additional component, a waiver. Sale Mot. ¶ 37. The waiver was also not a range—it was a specific amount—that would render the Successful Bidder's bid economically equivalent to, in the Successful Bidders' view, a $7 million all-cash bid (the Trustee, in the exercise of his business judgment, viewed it as being equivalent to a $4.75 million all-cash bid because he factored in certain administrative costs to consummate the sale). Sale Mot. ¶¶ 38–44. FUAC points to no instruction that prohibits this, and the Winddown Order explicitly contemplates a bid having both "cash and non-cash components." Winddown Order ¶ 6. Nor was the Successful Bidder's final bid "contingent" on any events; it was submitted on a final and irrevocable basis. It was not tied to financing, diligence, or any other contingencies.

27. *Finally,* the Trustee—as is customary—had absolute discretion to change these instructions in any event, and determine the winning bidder in his business judgment. *See, e.g.*, Winddown Order ¶ 7 (the Trustee may deem bids qualified in his "reasonable discretion" where not "materially inconsistent with" the Winddown Order); *see also* Winddown Order ¶ 13 (the Trustee may "prior to conclusion of an Auction (if any) impose such other terms and conditions upon bidders as the Trustee determines to be in the best interests of the Debtor's estate, FSS and their creditors in this bankruptcy case.").

28. FUAC's after-the-fact complaints and mischaracterizations should not be permitted to poison a well-run and fair sale process that yielded the best outcome for FSS's creditors.

### III. Jones's Attacks On The Sale Are Also Baseless And Add Nothing

29. Finally, although it has not been formally served, the Connecticut Families are aware of the Jones Complaint. Jones's reasons for filing that complaint—a lengthy document which, among other things, purports to collaterally challenge the Connecticut proceedings that led to a judgment against him (Jones Complaint ¶¶ 21–27) and raise numerous other baseless contentions—are unclear. At the November 14 hearing, the Court specifically clarified that the Trustee would file a motion for approval of the sale, and that the Court would hold an evidentiary hearing on that motion. Prior to the filing of Jones's Complaint, the Trustee had filed the Sale Motion, and either way, the Court's resolution of the Sale Motion will moot the challenges in the Jones Complaint. The Connecticut Families intend to move to dismiss the Jones Complaint based on mootness (and likely other grounds) at the appropriate time.

30. The Jones Complaint, along with other pleadings that Jones has filed including the *Plaintiffs' TRO-Related Requests, Notification of Important Interrelated Matters and Requests for Clarification and Continuance of Certain Matters* [Docket No. 926], also requests temporary injunctive relief based on false and fantastical claims. The Connecticut Families refer to, and incorporate by reference, the Trustee's Response to the Jones Complaint. *See Trustee's Objection to the Debtor's Emergency Application for Temporary Restraining Order* [Case No. 24-03238, Docket No. 16]. Jones has produced no evidentiary support for his claims, and has failed to identify why any of this relief is necessary or appropriate given that, as the parties previously discussed with the Court, no sale is proceeding until the Court makes a decision on the Sale Motion. Jones has also failed to justify his request for discovery of the Connecticut Families—an exercise in harassment. He has not articulated why the Connecticut Families would possess unique information to the issue before the Court: whether the Trustee

appropriately exercised his business judgment in conducting the Sale Process and selecting the Successful Bidders.

## Conclusion

31. The Connecticut Families respectfully request that the Court deny the Disqualification Motion, approve the Sale Motion, reject the requests for relief set forth in each of the Disqualification Motion and the Jones Complaint, and grant such further relief as it deems appropriate.

Dated: November 25, 2024 　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Ryan E. Chapple*
　　　　　　　　　　　　　　　　　　　**CAIN & SKARNULIS PLLC**
　　　　　　　　　　　　　　　　　　　Ryan E. Chapple
　　　　　　　　　　　　　　　　　　　State Bar No. 24036354
　　　　　　　　　　　　　　　　　　　303 Colorado Street, Suite 2850
　　　　　　　　　　　　　　　　　　　Austin, TX 78701
　　　　　　　　　　　　　　　　　　　Telephone: (512) 477-5000
　　　　　　　　　　　　　　　　　　　Fax: (512) 477-5011
　　　　　　　　　　　　　　　　　　　E-mail: rchapple@cstrial.com

　　　　　　　　　　　　　　　　　　　**KOSKOFF KOSKOFF & BIEDER, PC**
　　　　　　　　　　　　　　　　　　　Alinor C. Sterling (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　350 Fairfield Avenue
　　　　　　　　　　　　　　　　　　　Bridgeport, CT 06604
　　　　　　　　　　　　　　　　　　　Telephone: (203) 336-4421
　　　　　　　　　　　　　　　　　　　E-mail: asterling@koskoff.com

　　　　　　　　　　　　　　　　　　　**PAUL, WEISS, RIFKIND,**
　　　　　　　　　　　　　　　　　　　**WHARTON & GARRISON LLP**
　　　　　　　　　　　　　　　　　　　Kyle J. Kimpler (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　Paul Paterson (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　Leslie Liberman (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　Vida J. Robinson (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　1285 Avenue of the Americas
　　　　　　　　　　　　　　　　　　　New York, NY 10019-6064
　　　　　　　　　　　　　　　　　　　Telephone: (212) 373-3000
　　　　　　　　　　　　　　　　　　　Fax: (212) 757-3990
　　　　　　　　　　　　　　　　　　　E-mail: kkimpler@paulweiss.com
　　　　　　　　　　　　　　　　　　　　　　　ppaterson@paulweiss.com
　　　　　　　　　　　　　　　　　　　　　　　lliberman@paulweiss.com
　　　　　　　　　　　　　　　　　　　　　　　virobinson@paulweiss.com

　　　　　　　　　　　　　　　　　　　***Co-Counsel to the Connecticut Families***

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing Statement has been served on counsel for the Debtor, the Debtor, and all parties receiving or entitled to notice through CM/ECF on this 25th day of November, 2024.

                                                */s/ Ryan E. Chapple*
                                                Ryan E. Chapple