IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| STATE OF LOUISIANA *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF EDUCATION *et al.*, <br><br> *Defendants*. | No. 24-cv-563 |
| RAPIDES PARISH SCHOOL BOARD, <br><br> *Plaintiff*, <br><br> v. <br><br> U.S. DEPARTMENT OF EDUCATION *et al.*, <br><br> *Defendants*. | No. 24-cv-567 |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR A PARTIAL STAY PENDING APPEAL**

Defendants' memorandum in support of their motion for a partial stay pending appeal, ECF No. 59-1 ("Mot."), explained that this Court's preliminary injunction was impermissibly overbroad in two respects. First, it enjoined numerous provisions of the Rule that Plaintiffs did not challenge and as to which the Court made no finding that Plaintiffs satisfied the preliminary injunction factors. *See generally* Mot. 3-4. Second, as to the provisions that Plaintiffs did challenge, the injunction wrongfully enjoins (1) 34 C.F.R. § 106.10, which does not cause Plaintiffs any injury, and (2) the hostile environment harassment definition in 34 C.F.R § 106.2, as applied to conduct

1

other than gender identity discrimination. *See generally id.* at 4-6. Nothing in Plaintiffs' oppositions, *see generally* RPSB Opp'n, ECF No. 65; States Opp'n, ECF No. 66, undermines that analysis.

## ARGUMENT

**I.    Defendants Are Likely To Succeed on Their Claim That the Injunction Is Unlawfully Overbroad.**

**A.    The Court Erroneously Enjoined Severable Provisions That Plaintiffs Do Not Challenge.**

This Court's determination that Plaintiffs are likely to succeed on the merits focused entirely on a handful of provisions of the Rule as applied to issues of gender identity. *See, e.g.*, Mem. Ruling 19-20, ECF No. 53 (finding "that *Bostock* does not apply to Title IX" and "'sex discrimination' include[s] only biological males or females'"); *id.* at 22 (considering Plaintiffs' argument that § 106.2 "would compel staff and students to use whatever pronouns a person demands"); *id.* at 24 (holding that the Rule will cost "millions of dollars" to construct unisex bathrooms, and implicates an issue of "vast political significance" because its validity will "determine whether biological males that identify as female are allowed in female bathrooms and locker rooms and vice versa"); *id.* at 25 (expressing concern about application of gender identity provisions to athletics); *id.* at 27 ("Defendants do not have the authority to enact regulations which change the meaning of 'sex discrimination' to include gender identity, sexual orientation, sex stereotypes, or sex characteristics"); *id.* at 32 (finding that Rule is arbitrary because Defendants did not "include any requirements for changing one's gender identity" or "consider that biological females and biological males that identify as females have different body parts"); *id.* at 34 ("Defendants did not consider the effect the Final Rule would have on biological females by requiring them to share their bathrooms and locker rooms with biological males."). The States suggest that they "challenged more than the Rule's gender identity-provisions," States Opp'n 3,

2

and the School Board says that it "objects" for "reasons beyond gender identity," RPSB Opp'n 1. The Court's ruling, however, was premised entirely on issues of gender identity discrimination.

Applying principles that the Fifth Circuit again confirmed just last week, the injunction at a minimum should have been limited to the provisions and applications that the Court found unlawful. *See Nat'l Ass'n of Mfrs. v. SEC*, --- F. 4th ----, 2024 WL 3175755, at *9-10 (5th Cir. June 26, 2024). Applying a severability clause that is functionally identical to the clauses in the Final Rule, the Fifth Circuit explained that district courts "should adhere to the text of a severability clause in the absence of extraordinary circumstances," *id.* at *9 (quoting *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335, 2349 (2020) (alterations and quotation marks omitted)), for such a clause "dispels any doubt about what the [agency] would have done if the" invalid provisions "were subtracted," *id.* at *10. Faced with an agency's conclusion that portions of a regulation can operate independently from any invalidated provisions, the Fifth Circuit looked to whether the *challengers* have "shown that the [remaining] portions … cannot function sensibly." *Id.*

Plaintiffs here urge the Court to disregard the Rule's express severability provisions and discussion, suggesting that even these clear agency determinations have "not met [the government's] burden," RPSB Opp'n 3, based on their own view that it would be too difficult to identify severable portions for purposes of a preliminary injunction and would "sow confusion" and "waste resources" to permit the Rule to go into effect in part, *id.* 1; *see also* States Opp'n 4 (asserting that severance is "infeasible and unnecessary"). That, however, is not how severability works: the question is whether the *agency* has determined that individual portions of the Rule are severable such that the remaining provisions can and should go into effect. It is Plaintiffs' burden to show that the Department's determinations on this score are wrong. *See Nat'l Ass'n of Mfrs. v. SEC*, --- F. 4th ----, 2024 WL 3175755, at *10. Defendants are not asking this Court to "go through

3

the Rule with a fine-tooth comb in search of any portion that could potentially operate independently of the challenged provisions," RPSB Opp'n 5; they are simply asking the Court to limit its order to the provisions of the Rule—and the applications thereof—that the Department explained in the Rule are severable and as to which the Court found the preliminary injunction factors were satisfied.

Disregarding the agency's express severability determinations, Plaintiffs press their view that the "challenged provisions are so central to the Rule that it cannot operate without them." RPSB Opp'n 4; *see also* States Opp'n 4 (asserting that "the challenged provisions 'permeate[]' the Rule"). That is not so, as the Department clearly explained that different aspects of its Rule could operate independently. *See* 89 Fed. Reg. at 33,848. Contrary to the School Board's speculation, RPSB Opp'n 5-6, there is no reason why Title IX Coordinators cannot continue to ensure compliance with regulations other than the severable provisions and applications for which the Court found the preliminary injunction factors were satisfied, or why the stay requested here would create confusion about whether individuals who are not lactating may access lactation spaces.

Finally, the School Board's argument that this Court need not engage in a severability analysis because it sought relief pursuant to 5 U.S.C § 705, RPSB Opp'n 3, is wrong for at least two reasons. First, the Court did not enter relief under § 705; its order is styled as an "injunction." Mem. Ruling 39-40. Second, even had the court entered relief under 5 U.S.C. § 705, that provision contemplates preliminary relief subject to traditional equitable principles; it provides that courts may delay the effective date of an agency action only "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705; *see also, e.g.*, H.R. Rep. No. 79-1980, at 277 (1946) (explaining that this relief "is equitable"). The Supreme Court recently held that "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a

4

manner consistent with traditional principles of equity." *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024). For the reasons discussed throughout, wholesale postponement of the entire Rule's effective date is not necessary to avoid irreparable injury when Plaintiffs challenge only a handful of the Rule's provisions.

      **B.    This Court Erred in Enjoining Provisions and Applications That Cause Plaintiffs No Harm.**

Even as to the challenged provisions, the injunction is overbroad insofar as it enjoins provisions of the Rule—and potential applications thereof—that cause Plaintiffs no harm.

*34 C.F.R. § 106.10.* On appeal, Defendants will demonstrate that § 106.10 straightforwardly applies *Bostock v. Clayton County*, 590 U.S. 644 (2020). But even apart from Defendants' likelihood of success on that issue, the Court should grant this motion because Plaintiffs have not established that they will suffer irreparable harm if they are prohibited from engaging in conduct that all parties agree would be "discrimination" against students simply because they are gay, transgender, or pregnant.[1] Plaintiffs certainly have never asserted any *harm* from being barred from, *e.g.*, excluding students from band practice or requiring them to sit in the back of a school bus on the basis of the students' gender identity, sexual orientation, or pregnancy. Imminent irreparable harm is "'[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction,'" *Chambless Enters., LLC v. Redfield*, 508 F. Supp. 3d 101, 119 (W.D. La. 2020) (Doughty, J.) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1 (3d ed. 2013)), and absent a showing of it, this Court

---

[1] Moreover, as noted in Defendants' opening brief, Mot. 4-5, Plaintiffs did not even purport to allege any harm with respect to § 106.10's specification that prohibited sex discrimination under Title IX includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, or sexual orientation, and have offered no reason whatsoever to enjoin those aspects of § 106.10.

cannot properly afford Plaintiffs preliminary injunctive relief as to § 106.10, even if it agrees with them on the merits of their argument regarding *Bostock*.

It is no response for Plaintiffs to speculate that if § 106.10 remains in effect, "Defendants will inevitably classify treating a person consistently with their biological sex as gender-identity discrimination and thus prohibited sex discrimination." States Opp'n 6. Section 106.10, like *Bostock*, provides that discrimination on the basis of gender identity is necessarily a form of prohibited sex discrimination without "purport[ing] to address bathrooms, locker rooms," or other sex-differentiated contexts. 590 U.S. at 681; *see* Mot. 5. It is a separate provision—§ 106.31(a)(2)—that governs how Title IX's prohibition on sex discrimination applies to access to sex-separate spaces like bathrooms and locker rooms. Because only § 106.31(a)(2) addresses this issue, any relief with respect to Plaintiffs' concerns regarding sex-separate facilities, States Opp'n 6, would run at most against that provision. There is no justification for enjoining a provision—like § 106.10's description of Title IX's general nondiscrimination mandate—that Plaintiffs have never suggested they wish to violate. Defendants are thus likely to succeed on their claim that this Court erroneously enjoined § 106.10, a provision that causes Plaintiffs no harm.

**34 C.F.R. § 106.2.** The injunction is also overbroad with respect to § 106.2. That provision defines many terms, but the Court's analysis was focused exclusively on the potential application of § 106.2's definition of hostile environment harassment to speech regarding gender identity, in accordance with Plaintiffs' own focus on that issue. *See* Mem. Ruling 22 (crediting Plaintiffs' argument that "this standard chills and punishes protected speech under the First Amendment because it would compel staff and students to use whatever pronouns a person demands, even when those are contrary to grammar rules, reality, or political ideologies, and it further prohibits staff and students from expressing their own views on certain topics"); States Mot. 17, ECF No.

24 (identifying pronoun use as the only specific example of how the hostile environment harassment definition purportedly chills speech); States Reply 5, ECF No. 46 (explaining fears about the definition's application to use of pronouns); RPSB Mot. 20, ECF No. 27 (stating fears of definition's application to speech expressing view that "sex is 'immutable'" or that "differences between the sexes are 'enduring'"). While Plaintiffs assert that they "challenged the Rule's sexual harassment definition across the board," States Opp'n 3; *see also* RPSB Opp'n 1 (asserting that School Board objects to definition for "reasons beyond gender identity"), their motions for preliminary relief identified no way in which the definition purportedly would chill "protected speech" outside the gender identity context. *See generally* States Mot. 16-17; RPSB Mot. 19-21. It was error for this Court to enjoin § 106.2 as to all of its definitions and all of its applications.

C. **Defendants' Severability Argument Was Not "Forfeited."**

Plaintiffs' contention that Defendants forfeited their severability arguments, RPSB Opp'n 7; States Opp'n at 2, is wrong. Defendants' opposition to Plaintiffs' motions for injunctive relief was perfectly clear: it cited the Rule's express severability discussion, explained that Plaintiffs "challenged only certain portions of the Rule," and cited Supreme Court precedent for the proposition that "if the Court grants preliminary relief as to any of those portions, the remainder of the Rule should be permitted to go into effect, as intended." Defs.' Consol. Opp'n to Pls.' Mots. 39-40, ECF No. 38. That is a far cry from *Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016), where the agency made only a "passing" request that "any stay be 'narrowly tailored.'" Without knowing which provisions the Court would find unlawful, Defendants of course could not have prepared a detailed severability analysis of an opinion that had not yet issued. That does not mean that Defendants waived their argument that the Court would need to engage in a severability analysis in fashioning equitable relief.

## II. The Remaining Factors Favor a Partial Stay.

Finally, the remaining factors tilt decisively in favor of the limited stay requested here. That stay would restore provisions that Plaintiffs have not challenged or that prohibit conduct in which Plaintiffs do not intend to engage—including prohibitions on things like forcing a student to sit in the back of a classroom because he is gay, excluding a student from the lunchroom because he is transgender, sexually harassing a cisgender woman in a manner that meets the regulatory definition of hostile environment harassment, or requiring a new mother to express breastmilk in a bathroom stall. It is true that it took Defendants time to propose, finalize, and issue the Rule including these important provisions, *see* States Opp'n 5, but Defendants' careful compliance with the notice and comment requirements imposed by the Administrative Procedure Act is a reason to let the majority of the Rule's provisions take effect—not to delay their implementation for months or more while an appeal concerning the validity of other provisions is litigated.

While Plaintiffs allege they will incur costs to come into compliance with the Rule, States Opp'n 5, they do not show that such costs are tied to the relevant challenged portions of the Rule—rather than flowing from provisions and applications of the Rule that either have not been held unlawful or that would remain enjoined under the requested stay. *See, e.g.*, *Haaland v. Brackeen*, 599 U.S 255, 296 (2023) (Texas could not claim standing to challenge child-custody placement preferences based on costs of record keeping and notice requirements; "Texas would continue to incur the complained-of costs even if it were relieved of the duty to apply the placement preferences"). And even if those costs were relevant, they would pale in comparison to the federal government's interest in eliminating sex discrimination in education programs and activities funded by the government itself. *Cf. Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008) (explaining that "even if plaintiffs have shown irreparable injury" to marine wildlife, it

would be "outweighed by the public interest and the Navy's interest in effective, realistic training of its sailors").

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' motion, the Court should stay the preliminary injunction to the extent it extends beyond the following provisions of the 2024 Rule: 34 C.F.R. § 106.31(a)(2), and the "hostile environment harassment" definition in 34 C.F.R. § 106.2 as applied to gender identity discrimination.

Dated: July 3, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

/s/ *Benjamin Takemoto*
ELIZABETH TULIS
REBECCA KOPPLIN
BENJAMIN TAKEMOTO
HANNAH SOLOMON-STRAUSS
PARDIS GHEIBI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: 202-532-4252
Fax: (202) 616-8470
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on July 3, 2024, the above document was filed with the CM/ECF filing system.

/s/ *Benjamin Takemoto*