# EXHIBIT 6

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| | § |
| **In re:** | § **Chapter 7** |
| | § |
| **ALEXANDER E. JONES** | § |
| | § **Case No. 22-33553 (CML)** |
| **Debtor.** | § |
| | § |

## TRUSTEE'S APPLICATION TO EMPLOY
## TRANZON AND TRANZON360 AS SALE BROKER

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Christopher R. Murray in his capacity as chapter 7 trustee (the "**Trustee**") for the bankruptcy estate of Alexander E. Jones (the "**Debtor**" or "**Alex Jones**") hereby moves (the "**Motion**") this Court for entry of an order substantially in the form attached hereto under sections 105(a), 327(a), 328(a), and 330 of title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**") authorizing the Trustee to employ Tranzon Asset Advisors ("**Tranzon**") and ThreeSixty Asset Advisors ("**ThreeSixty**") (collectively,

15509336

"**Tranzon360**")[1] as broker for the assets of the Debtor's estate and assets the Trustee administers. In support of this Motion, the Trustee relies on the Declarations of Kelly Toney (the "**Toney Declaration**") and Jeff Tanenbaum (the "**Tanenbaum Declaration**") attached hereto as **Exhibits A** and **B**, respectively. In further support of the Motion, the Trustee, by and through his undersigned counsel, respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

2.      The statutory predicates for the requested relief herein are sections 105(a), 327(a), 328(a), and 330 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Bankruptcy Local Rules 2014-1 and 9013-1.

## BACKGROUND

3.      On July 29, 2022, the Debtor's company, Free Speech Systems, LLC ("**FSS**") filed its petition for relief under chapter 11 of the Bankruptcy Code (the "**FSS Bankruptcy**").

4.      On December 2, 2022 (the "**Petition Date**"), the Debtor filed his individual bankruptcy case seeking relief under chapter 11 of the Bankruptcy Code (the "**Alex Jones Bankruptcy**").

5.      The FSS Bankruptcy and the Alex Jones Bankruptcy (collectively, the "**Bankruptcy Cases**") involve many of the same parties, including litigation creditors and

---

[1] The engagement with Tranzon and ThreeSixty is undertaken as a joint venture between the two firms, the engagement of which is not subject to separate compensation or reimbursement arrangements with the Trustee. Thus, the Trustee seeks retention of Tranzon and ThreeSixty via a singular retention application.

15509336

overlapping disputes. In addition, the bankruptcy estate of Alex Jones owns 100 percent of the membership interests in FSS.

6.      On June 5, 2024, Alex Jones filed his *Motion for Entry of an Order Converting Debtor's Chapter 11 Case under Chapter 7 of the Bankruptcy Code* (the "**Motion to Convert**") seeking conversion of his individual bankruptcy case from a chapter 11 proceeding to one under chapter 7. [Dkt. No. 684]. On June 14, 2024, the Court entered an *Order Converting Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code* (the "**Conversion Order**"). [Dkt. No. 708]. Christopher R. Murray was duly appointed as chapter 7 trustee for the Alex Jones bankruptcy estate.

7.      Also on June 14, 2024, the Court entered an Order in the FSS Bankruptcy Case dismissing the FSS bankruptcy proceeding (the "**Dismissal Order**"). [Dkt. No. 956]. In the Dismissal Order, the Court directed the CRO to transfer control and signing authority with respect to FSS's bank accounts to Christopher R. Murray, in his capacity as Trustee for the Alex Jones bankruptcy estate. The Court also retained exclusive jurisdiction over various matters, including— among others—the adversary proceeding entitled, *Free Speech Systems, LLC v. PQPR Holdings Limited LLC, et al.*, Adv. Case No. 23-03127 (Bankr. S.D. Tex.) (the "**PQPR Adversary Proceeding**"). The assets of FSS are allegedly subject to liens in favor of PQPR which are the subject of the PQPR Adversary Proceeding.

## RELIEF REQUESTED

8.      By this Application, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Trustee respectfully requests entry of an order authorizing the Trustee to retain Tranzon and Tranzon360 as the Trustee's sale broker, pursuant to that certain Bankruptcy Auction Agency Agreement by and between the Trustee, Tranzon, and ThreeSixty, and that certain Agency and Marketing Agreement by and between the Trustee and Tranzon  attached hereto as **Exhibits C** and

3

15509336

**D**, respectively (the "**Agreements**"),[2] to help market, auction, and sell the assets of the Alex Jones bankruptcy estate and any assets the Trustee otherwise administers in his capacity as the owner of FSS. The Trustee also requests approval of the terms of the Tranzon and Tranzon360 fees and expense reimbursements.

## BASIS TO RETAIN TRANZON360 FOR MARKETING AND SALES

**A.    Qualifications**

9.    Tranzon and Tranzon360 have extensive knowledge and professional experience marketing and selling each class of assets the Trustee seeks to administer—including real property, intellectual property, and personal property of all kinds—and are well-positioned to perform sales, brokerage, and consulting services for high-profile sales. Tranzon and Tranzon360 utilize a strategic process that includes (i) the development of a multifaceted marketing plan; (ii) a deep and broad understanding of the subject assets and key factors such as timing, unique circumstances, and market trends; and (iii) a massive database of potential buyers to create the competitive conditions needed to yield the highest bidding prices. Tranzon and Tranzon360's clients have ranged from state and federal courts, Real Estate Investment Trusts, the FDIC, not-for-profit institutions, national loan servicers, lenders and credit unions to individuals and trustees involved in bankruptcy and estate settlement matters.

10.    Tranzon and Tranzon360's national footprint, network of real estate professionals, trademarked Market-Making System, extensive database of targeted, perspective buyers and their ability to leverage traditional approaches, social media, and public relations to generate national and global sales interest allow them to provide a commercially reasonable sale process that maximizes value in an expedited time frame. Tranzon and Tranzon360's significant experience

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Agreements.

with complex projects requiring out-of-the-box thinking, strategies, and policies will provide the Trustee with the tools necessary to market and sell assets consistent with the high-profile nature of this matter.

**B.      The Engagement**

11.      The Trustee seeks to engage Tranzon360 on the terms and condition set forth in the Bankruptcy Auction Agency Agreement and Tranzon, in its sole capacity, pursuant to the Agency and Marketing Agreement. Tranzon is being engaged to market, auction, and sell subject to an order of this Court, real property of the Alex Jones estate, and Tranzon360 is being engaged to sell personal property and intellectual property belonging to FSS and Alex Jones. Accordingly, Tranzon and Tranzon360 will perform the following services[3] on the Trustee's behalf, including but not limited to:

(a)      Assist the Trustee in analyzing assets for sale and develop a marketing strategy designed to achieve the Trustee's goal of creating and executing a value maximizing sale process;

(b)      Identify, collect, and organize information needed to prepare offering materials;

(c)      Establish timeline goals and identify potential sale issues;

(d)      Advise the Trustee regarding market value estimates based on market trends, and timing assumptions;

(e)      Finalize marketing materials and information memorandum and organize data for marketing and internet or other data room presentation (*i.e.*, Tranzon's Market-Making System);

(f)      Distribute teaser and publish select advertising (*i.e.*, Tranzon and ThreeSixty websites, press release distribution, etc.) for broad market exposure and personally connect and engage with prospective bidders, answering both asset related and bid-procedure questions;

(g)      Prepare Trustee-approved messaging to share with potential buyers;

---

[3] This description is a summary of services provided by Tranzon360. If any inconsistencies exist between this description and the terms of the Bankruptcy Auction Agency Agreement, the Bankruptcy Auction Agency Agreement controls.

15509336

(h)     If applicable, receive and review executed confidentiality agreements from buyers;

(i)     Manage buyer activity throughout marketing and assist with buyer data needs;

(j)     Receive bids and advise on bid evaluations;

(k)     Facilitate negotiation of bids to the extent desired by the Trustee; and

(l)     Provide buyer due diligence and closing support as requested by the Trustee.

**C.     Disclosures Concerning Conflicts of Interest**

12.     To check and clear potential conflicts of interest in this case, Tranzon and ThreeSixty have researched their client databases to determine whether either has or had connection with the parties in interest listed on **Schedule 1** to the Toney and Tanenbaum Declarations.

13.     To the best of the Trustee's knowledge, and based upon the Toney and Tanenbaum Declarations, Tranzon, ThreeSixty, and Tranzon360 are each a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code. To the best of the Trustee's knowledge, Tranzon, ThreeSixy, and Tranzon360 do not hold any interest adverse to the Debtor's estate or FSS. Further, to the best of the Trustee's knowledge, neither Tranzon, ThreeSixty, nor Tranzon360 have any connection with the Debtor, FSS, their creditors, or any other party in interest herein, or their respective attorneys or accountants, the U.S. Trustee or any person employed in the office of the U.S. Trustee, except as set forth in the Toney and Tanenbaum Declarations.

14.     From time to time, Tranzon, ThreeSixty, or Tranzon360 may have provided sales and/or marketing services to certain creditors and other parties in interest in matters unrelated to this case. Tranzon, ThreeSixy, and Tranzon360 have informed the Trustee that during their retention by the Trustee in this case, they will not provide services to creditors of the Debtor or FSS, including, without limitation, those listed on **Schedule 1** attached to the Toney and Tanenbaum Declarations, in connection with any matters relating to the Debtor or FSS. However,

6

given their broad practice and client base, Tranzon, ThreeSixty, and Tranzon360 may provide services to clients in matters unrelated to these proceedings who are or become creditors of the Debtor or FSS or who may have interests adverse to such entities in unrelated matters.

**D. Proposed Compensation and Other Expenses**

15. Under the Agreements, Tranzon and Tranzon360's proposed compensation is commission based on the following sales revenue and milestones:

- Intellectual Property Assets – 10% of the sale revenues up to $500,000; 7% of sale revenues from $500,000.01 to $2,000,000; and 5% of sale revenues in excess of $2,000,000.

- Personal Property Assets – 15% of sale revenues.

- Real property Assets – 6% of the total contract sales price.

16. Tranzon360's expense reimbursement for the marketing and sale of intellectual and personal property is approximately $72,100. Tranzon's estimated expense reimbursement is $25,000 for the marketing and sale of real property. Tranzon and Tranzon360 do not intend to file any fee applications for the payment of fees or the reimbursement of expenses in this bankruptcy case. Instead, Tranzon and Tranzon360 will seek approval and payment of fees and reimbursement of expenses in connection with any motion to sell assets filed in this bankruptcy case. Nevertheless, Tranzon and Tranzon360 reserve the right to file applications for payment of fees and the reimbursement of expenses in this bankruptcy case.

## AUTHORITY FOR RELIEF REQUESTED

17. The Trustee seeks to retain Tranzon and Tranzon360 pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. The Trustee respectfully submits that the terms of the proposed engagement of Tranzon and Tranzon360 including, without limitation, its fees, should be approved.

7

18.     The retention of Tranzon and Tranzon360 is proper under section 327(a) of the Bankruptcy Code, which provides in relevant part that "[t]he trustee, with the Court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. §327(a).

19.     The Trustee believes that Tranzon and Tranzon360's commission-based fee will allow the Trustee to obtain the highest or otherwise best offer for the assets the administers by leveraging industry expertise and connections to thousands of registered, accredited bidders. The Trustee also believes: (i) Tranzon and Tranzon360's experience and connections will inure to the benefit of the Debtor's estate and relevant stakeholders in pursuing the sale of various assets, (ii) the value to the Debtor's estate and relevant stakeholders of the services provided by Tranzon and Tranzon360 derives in substantial part from its experience and connections, and (iii) accordingly, the structure and amount of the Tranzon Tranzon360's fees is reasonable.

20.     A trustee or debtor-in-possession's business judgment is afforded significant weight. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm of Equity Sec Holders v. Lionel Corp. (In re Lionel Corp.)* 722 F.2d 1063, 1070 (2d Cir. 1983); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp)*, 60 B.R. 612 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct"). The business judgment rule is respected within the context of a chapter 7 case and shields the trustee from judicial second-guessing.

8

21.     Based on the facts, and for the reasons stated herein and in the Toney and Tanenbaum Declarations, the retention of Tranzon and Tranzon360 as broker for the Trustee pursuant to this Application is reasonable, necessary, and appropriate, and satisfies the requirements of sections 327 and 328 of the Bankruptcy Code and Bankruptcy Rule 2014(a).

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Trustee respectfully requests that the Court enter the proposed order (a) approving the retention of Tranzon and Tranzon360 as the Trustee's broker pursuant to sections 327 and 328 of the Bankruptcy Code; (b) approving the compensation and expense reimbursement terms set out above; and (c) granting such other and further relief as may be just and proper.

[*Remainder of page intentionally blank*]

15509336

Dated: August 22, 2024

/s/ Christopher R. Murray
Christopher R. Murray
Chapter 7 Trustee for the Bankruptcy
Estate of Alexander E. Jones

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, on this 22nd day of August 2024.

/s/ Joshua W. Wolfshohl
Joshua W. Wolfshohl

10

15509336

**<u>Exhibit A</u>**

**Declaration of Kelly Toney**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| **In re:** | § <br> § **Chapter 7** <br> § |
| **ALEXANDER E. JONES** | § <br> § **Case No. 22-33553 (CML)** |
| **Debtor.** | § <br> § <br> § |

## DECLARATION OF KELLY D. TONEY IN SUPPORT OF TRUSTEE'S APPLICATION TO EMPLOY TRANZON AND TRANZON360 AS SALE BROKER

  I, Kelly D. Toney, declare and state under penalty of perjury pursuant to 28 U.S.C. § 1747 that the following is true and correct to the best of my personal knowledge:

  1. I have been a licensed auctioneer and a real estate salesman/broker in Texas since 1992. I have conducted numerous commercial real estate transactions and commercial asset liquidations. I am a member of the National Auctioneers Association, Certified Auctioneers Institute, Texas Auctioneers Association, National Association of Realtors, Texas Association of Realtors, Houston Association of Realtors, and a past Board of Directors member for the Houston Turnaround Management Association.

  2. I am the Executive Vice President of Tranzon Asset Advisors ("**Tranzon**"), a company that specializes in marketing and conducting real estate and personal property sales for bankruptcy estates. For purposes of this engagement, Tranzon and ThreeSixty Asset Advisors ("**ThreeSixty**") (collectively, "**Tranzon360**") have entered a joint venture[1] to market, auction and sell the intellectual and personal property described in the Trustee's motion to employ Tranzon and Tranzon360 to sell the properties at auction. In addition, Tranzon is engaged in its sole capacity to sell certain real property interests as well.

  3. After having reviewed the creditors' matrices in the above bankruptcy case and the Free Speech Systems, LLC ("**FSS**") bankruptcy case, to the best of my knowledge, information, and belief, I, Tranzon, its members and associates, are disinterested persons within the meaning of 11 U.S.C. § 101(13) and are eligible to serve as auctioneers for the Debtor's estate and assets the Trustee administers pursuant to the provisions of 11 U.S.C. § 327(a). To the best of my knowledge, I and Tranzon, represent no interest adverse to the Debtor's estate or FSS in the matters upon which Tranzon and Tranzon360 is to be engaged by the Trustee.

  4. In compliance with FED. R. BANKR. P. 2014, I verify that, to the best of my knowledge, except as may be disclosed herein, neither I, nor Tranzon, have any connections with

---

[1] The marketing, auction, and sale of the intellectual property assets and personal property is undertaken as a joint venture between Tranzon and ThreeSixty and the marketing, auction, and sale of the real property is undertaken in Tranzon's sole capacity.

the Debtor or FSS, any other party in interest, their respective attorneys and accountants, or any person employed by the Debtor or FSS.

5.  I further state that I have not served as examiner in these cases and have not to my knowledge been employed by or connected with any person having an interest adverse to the Debtor or FSS or to any of the general creditors of the Debtor's estate or FSS.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 18th day of August 2024.

DECLARANT:

_____

**KELLY D. TONEY**

**Exhibit B**

**Declaration of Jeff Tanenbaum**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____
                                        §
In re:                                  § Chapter 7
                                        §
ALEXANDER E. JONES                      §
                                        § Case No. 22-33553 (CML)
           Debtor.                      §
_____ §
                                        §

## DECLARATION OF JEFF TANENBAUM IN SUPPORT OF TRUSTEE'S APPLICATION TO EMPLOY TRANZON AND TRANZON360 AS SALE BROKER

I, Jeff Tanenbaum, declare and state under penalty of perjury pursuant to 28 U.S.C. § 1747 that the following is true and correct to the best of my personal knowledge:

1.      I have been in the asset recovery profession since 1985. I have handled all aspects of the profession, including operations and marketing, auctioneering, supervising liquidations, and conducting valuations. I have also handled complex transactions involving multiple asset classes and expansive geographies. I am a member of the National Auctioneers Association, a Certified Auctioneers Institute Designee, a Certified Estate Specialist Designee, and a former officer of the Industrial Auctioneers Association.

2.      I am the President of ThreeSixty Asset Advisors ("**ThreeSixty**"), a company that specializes in full-service auction solutions, including live webcast, online only, and sealed bid auctions. For purposes of this engagement, Tranzon Asset Advisors ("**Tranzon**") and ThreeSixty (collectively, "**Tranzon360**") have entered a joint venture[1] to market, auction and sell the intellectual and personal property described in the Trustee's motion to employ Tranzon and Tranzon360 to sell the properties at auction.

3.      After having reviewed the creditors' matrices in the above bankruptcy case and the Free Speech Systems, LLC ("**FSS**") bankruptcy case, to the best of my knowledge, information, and belief, I, ThreeSixty, its members and associates, are disinterested persons within the meaning of 11 U.S.C. § 101(13) and are eligible to serve as auctioneers for the Debtor's estate and assets the Trustee administers pursuant to the provisions of 11 U.S.C. § 327(a). To the best of my knowledge, I and ThreeSixty, represent no interest adverse to the Debtor's estate or FSS in the matters upon which Tranzon and Tranzon360 is to be engaged by the Trustee.

4.      In compliance with FED. R. BANKR. P. 2014, I verify that, to the best of my knowledge, except as may be disclosed herein, neither I, nor ThreeSixty, have any connections with the Debtor or FSS, any other party in interest, their respective attorneys and accountants, or any person employed by the Debtor or FSS.

_____
[1]   The marketing, auction, and sale of the intellectual property assets and personal property is undertaken as a joint venture between Tranzon and ThreeSixty and the marketing, auction, and sale of the real property is undertaken in Tranzon's sole capacity.

5.      I further state that I have not served as examiner in these cases and have not to my knowledge been employed by or connected with any person having an interest adverse to the Debtor or FSS or to any of the general creditors of the Debtor's estate or FSS.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 17th day of August 2024.

                                        **DECLARANT:**

                                        _____

                                        **JEFF TANENBAUM**

# EXHIBIT C

**Bankruptcy Auction Agency Agreement**



Bankruptcy Auction Agency Agreement | Intellectual & Personal Property

**Date:** August 12, 2024

**Parties:** ThreeSixty Asset Advisors, LLC ("Agent")
25577 Conifer Road, #203, Conifer, CO 80433

Tranzon Asset Advisors of Texas, LLC ("Agent")
945 McKinney St, #13384, Houston, TX 77002

Christopher Murray as Chapter 7 Trustee in the Matter of Alexander E. Jones ("Trustee")

Alexander E. Jones ("Debtor")

**Case #:** 22-33553

**Court:** U.S. Bankruptcy Court, Southern District of Texas ("Bankruptcy Court")

**Assets:** Websites, Social Media Accounts, Production Rights, and related items per Exhibit A-1 ("Intellectual Property Assets")

Production Facility Equipment and Vehicles per Exhibit A-2 ("Personal Property Assets")

**Personal Property Asset Location:** 3019 Alvin Devane Blvd, Austin, TX 78741

**Sale Method:** Intellectual Property Assets – Sealed Bid, with a round of virtual live bidding amongst competitive bidders, if deemed appropriate and necessary by Trustee and Agent. Trustee shall reserve the right to accept or reject any sealed bids submitted.

Personal Property Assets – Online bidding, with links to the bidding site at 360bid.sale and tranzon.com

**Sale Date/Time(s):** Intellectual Property Assets – Sealed Bid Deadline – [DATE TBD]

Personal Property Assets – Online Auction Closing – [DATE TBD], 2024; Online Auction Removal – Approximately 10-14 days following the Auction Closing. Note, for security reasons, no physical inspection shall be provided prior to the Auction.

Dates are Contingent upon receipt of an approved Sale Order by [DATE TBD]

**Compensation:** Intellectual Property Assets – 10% of the first $500,000 of sale revenues; 7% of sale revenues from $501,000 to $2,000,000; 5% of sale revenues in excess of $2,000,000.

Personal Property Assets – 15%

**Expenses:** Agent shall be entitled to reimbursement for its incurred expenses up to the aggregate amount provided for on the budgets attached as Exhibits B-1 and B-2 ("Expenses"). In the event of unanticipated Expenses, Agent shall obtain approval in writing from Trustee before incurring such additional unanticipated Expenses.

Trustee agrees that any Expenses incurred by Agent prior to receipt of the approved Sale Order ("Pre-Approval Expenses") shall be deemed a super-priority administrative expense claim of the bankruptcy estate and shall be reimbursed to Agent from the estate should Trustee not obtain an approved Sale Order.

 Bankruptcy Auction Agency Agreement | Intellectual & Personal Property

1.  Trustee hereby retains Agent to act as its sole and exclusive agent to sell the Assets of Debtor, including but not limited to those items listed above at one or more publicly marketed Sale(s), and to utilize the Asset Location(s) without disruption from engagement through the Removal Period.

2.  Agent shall conduct the Sale(s) in a manner intended to maximize recovery in an expedited time frame, and utilizing the methods that Agent deems, in its professional judgment, to be appropriate and in the best interest of Trustee, and in accordance with the Proposal submitted to Trustee by Agent.

3.  Agent hereby agrees to use its professional skill, knowledge, and experience to the best advantage of both Parties but makes no representations or warranties regarding the outcome of the Sale, except to the extent as may be provided for in this Agreement.

4.  Agent shall be authorized to promote the Sale of the Assets immediately upon execution of this Agreement and shall be authorized to use Debtor's name and logo in all advertising without further consideration; Prior to court approval, any promotions will state that the sale is pending court approval.

5.  Agent shall have the authority to establish appropriate terms of sale consistent with Agent's best practices for Sales of similar nature, subject to Trustee's approval.

6.  All Assets shall be offered for sale on an "As-Is, Where-Is" basis; The sale shall be without reserve.

7.  Agent shall be authorized to accept, as Trustee's agent, cash, cashiers' checks, wire transfer, guaranteed checks, or credit card as payment for the Assets sold. Payment by credit card shall be limited to $5,000 per buyer and subject to a 4% surcharge to cover the cost of associated credit card merchant fees.

8.  Agent shall be responsible to collect, report, and remit sales tax collected during the Sale(s).

9.  Agent shall maintain an insurance liability policy including full coverage for injuries or damage to people and/or property.

10. Within 14 days of the completion of the Sale for all Assets paid for and removed by buyers, Agent shall turn over to the Trustee all Sale Proceeds (exclusive of sales tax collected), and within 21 days of the completion of the Removal Period, Agent shall provide Trustee with an accounting of the Sale income and expenses ("Auctioneers Report") along with any remaining Net Income due Trustee. Within 7 days of Trustee's receipt of the Auctioneers Report, it shall remit to Agent its approved fees and expense reimbursements.

11. Agent shall have the right to convey all Assets to purchasers free and clear of any liens, judgments, or encumbrances whatsoever.  All sales of the Assets shall be made by Agent as agent in fact for Trustee. Title to the Assets shall remain with the Trustee throughout the Sale Term. In the case of vehicles, Trustee shall provide all necessary documents necessary for the conveyance of title to the buyer.

12. Agent's Limitations: i) Agent shall not be responsible for occupancy costs, data backup or destruction, removal of debris or trash from the Asset location, containment, storage, sale or disposition of hazardous materials, or disposition of unsold or abandoned Assets; ii) Agent shall not be responsible for any purchaser that fails to live up to its obligation to complete a purchase of any of the Assets, and iii) Agent's maximum liability for any breach of this Agreement or any and damages sustained by any person or entity that arises from or is related to this Agreement or the Sale shall be limited to the aggregate amounts actually received by Agent as compensation under this Agreement.

13. Except for Paragraph 4 and provisions regarding Pre-Approval Expenses, this Agreement is subject to the jurisdiction and approval of the Bankruptcy Court, and, lacking applicable law thereunder, the laws of the State of Texas.  Trustee shall prepare and file a motion with the Bankruptcy Court and use its reasonable best efforts to ensure the motion is approved by an order ("Sale Order") that provides, among other things, as follows: (i) approval and/or assumption of this Agreement; (ii) for the payment of all Compensation owed and Costs incurred hereunder, to Agent, free and clear of all liens, claims and encumbrances, in accordance with this Agreement, without need for any further order of the Bankruptcy Court; (iii) approval of the transactions contemplated in this Agreement; and (iv) authority for Company and Agent to take such further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement.

 Bankruptcy Auction Agency Agreement | Intellectual & Personal Property

Trustee:

CHRISTOPHER MURRAY, AS CHAPTER 7 TRUSTEE
IN THE MATTER OF ALEXANDER E. JONES


By:_____Date: _____

Agent:

THREESIXTY ASSET ADVISORS, LLC


By:_____Date: _____


Agent:

TRANZON ASSET ADVISORS, LLC


By:_____Date: _____

 Bankruptcy Auction Agency Agreement | Intellectual & Personal Property

EXHIBIT A-1

Intellectual Property Assets

Trustee and Agent shall identify the Intellectual Property Assets to be included, which are anticipated to include but not be limited to:

- Property of Free Speech Systems, including:
    - Infowars related Production Materials and Rights
    - Infowars Trademarks and Branding Materials
    - Infowars Website and eCommerce Site
    - Infowars Customer Lists
    - Infowars Social Media Accounts
- Property of Alex Jones Personally, including:
    - Alex Jones Personal Production Rights
    - Alex Jones Personal Social Media Accounts

Other Alex Jones and/or Free Speech Systems owned brands, websites, trademarks, social media accounts and related intellectual property materials, accounts and rights.



Bankruptcy Auction Agency Agreement | Intellectual & Personal Property

EXHIBIT A-2

Personal Property Assets

Including but not limited to personal property of Alexander E. Jones and Free Speech Systems, including production equipment and vehicles per below:


- 2017 Ford Expedition (TBD)

- 2020 Dodge Charger Hellcat (TBD)

- Assets of Free Speech Systems per the following schedule provided by Free Speech Systems management:



Bankruptcy Auction Agency Agreement | Intellectual & Personal Property



**FREE SPEECH SYSTEMS LLC**
Southern District of Texas
Case #22-60043
*Fixed Asset & Vehicle Schedule - Exhibit E*

| Asset Tag (a) | Description | Item | Category | Location | Est. Cost (b) |
|---|---|---|---|---|---|
| 269 | Desktop Generic | Desktop | Computer Equipment | Black box | 1,500.00 |
| 270 | Desktop Generic | Desktop | Computer Equipment | Black box | 2,500.00 |
| 2676 | Desktop Generic | Desktop | Computer Equipment | Black box | 5,000.00 |
| 178 | LG Curved Monitor | Monitor | Computer Equipment | Black box | 500.00 |
| 271 | LG Curved Monitor | Monitor | Computer Equipment | Black box | 1,200.00 |
| 29 | iMac | Desktop | Computer Equipment | E-Commerce office | 500.00 |
| 30 | New iMac | Desktop | Computer Equipment | E-Commerce office | 1,200.00 |
| 256 | iMac | Desktop | Computer Equipment | Production Office | 500.00 |
| 252 | LG Curved Monitor | Monitor | Computer Equipment | Production Office | 600.00 |
| 15 | iMac | Desktop | Computer Equipment | CS Conference room | 500.00 |
| 653 | Server rack | Rack | Computer Equipment | CS server room | 1,200.00 |
| 657 | ProCurve Switch 4208vl | Switch | Computer Equipment | CS server room | 550.00 |
| 7 | Lenovo ThinkCentre | All in One pc | Computer Equipment | Customer Service | 750.00 |
| 241 | Apple Mac Pro | Desktop | Computer Equipment | Production Office | 8,000.00 |
| 242 | LG Curved Monitor | Monitor | Computer Equipment | Production Office | 600.00 |
| 243 | LG Curved Monitor | Monitor | Computer Equipment | Production Office | 600.00 |
| 1 | iMac | Desktop | Computer Equipment | E-Commerce | 500.00 |
| 53 | iMac | Desktop | Computer Equipment | E-Commerce | 500.00 |
| 2 | iMac | Desktop | Computer Equipment | E-Commerce | 1,000.00 |
| 27 | Canon Printer | Large Printer | Computer Equipment | E-Commerce | 1,200.00 |
| 14 | HP DesignJet | Large Printer | Computer Equipment | E-Commerce | 2,600.00 |
| 40 | LG Curved Monitor | Monitor | Computer Equipment | E-Commerce | 1,300.00 |
| 141 | New iMac | Desktop | Computer Equipment | Empty office | 1,500.00 |
| 142 | UniFi switch 48 | Switch | Computer Equipment | Empty office | 950.00 |
| 18 | Lenovo ThinkCentre | All in One pc | Computer Equipment | Facility manager room | 750.00 |
| 19 | Lenovo ThinkCentre | All in One pc | Computer Equipment | Facility manager room | 750.00 |
| 20 | Lenovo ThinkCentre | All in One pc | Computer Equipment | Facility manager room | 750.00 |
| 21 | Lenovo ThinkCentre | All in One pc | Computer Equipment | Facility manager room | 750.00 |
| 26 | Desktop Generic | Desktop | Computer Equipment | Facility manager room | 800.00 |
| 148 | LG Curved Monitor | Monitor | Computer Equipment | Front waiting room / office | 600.00 |
| 152 | LG Curved Monitor | Monitor | Computer Equipment | Front waiting room / office | 600.00 |
| 112 | iPad | Tablet | Computer Equipment | Gym | 600.00 |
| 74 | PN-V601A LCD Monitor | Monitor | Computer Equipment | Gym / storage | 5,400.00 |
| 75 | PN-V601A LCD Monitor | Monitor | Computer Equipment | Gym / storage | 5,400.00 |
| 76 | PN-V601A LCD Monitor | Monitor | Computer Equipment | Gym / storage | 5,400.00 |
| 77 | PN-V601A LCD Monitor | Monitor | Computer Equipment | Gym / storage | 5,400.00 |
| 78 | PN-V601A LCD Monitor | Monitor | Computer Equipment | Gym / storage | 5,400.00 |
| 71 | Server rack | Rack | Computer Equipment | Gym / storage | 1,600.00 |
| 50 | Lenovo ThinkCentre | All in One pc | Computer Equipment | IT | 750.00 |
| 52 | Lenovo ThinkCentre | All in One pc | Computer Equipment | IT | 750.00 |
| 55 | Lenovo ThinkCentre | All in One pc | Computer Equipment | IT | 750.00 |
| 58 | Lenovo ThinkCentre | All in One pc | Computer Equipment | IT | 750.00 |
| 59 | Lenovo ThinkCentre | All in One pc | Computer Equipment | IT | 750.00 |
| 41 | iMac | Desktop | Computer Equipment | IT | 500.00 |
| 47 | iMac | Desktop | Computer Equipment | IT | 500.00 |
| 48 | iMac | Desktop | Computer Equipment | IT | 500.00 |
| 56 | iMac | Desktop | Computer Equipment | IT | 500.00 |
| 57 | iMac | Desktop | Computer Equipment | IT | 500.00 |
| 51 | MacBook Pro | Laptop | Computer Equipment | IT | 600.00 |
| 46 | LG Curved Monitor | Monitor | Computer Equipment | IT | 600.00 |
| 10 | Dell Desktop | Desktop | Computer Equipment | Customer Service Office | 750.00 |
| 61 | LG Curved Monitor | Monitor | Computer Equipment | Customer Service Office | 600.00 |
| 153 | Thinksmart hub | Video conference | Computer Equipment | Small conference room | 2,400.00 |
| 309 | iMac | Desktop | Computer Equipment | Producers room | 600.00 |
| 308 | Mac Mini | Desktop | Computer Equipment | Production Break Room | 600.00 |
| 237 | LG Curved Monitor | Monitor | Computer Equipment | Security entrance | 600.00 |
| 238 | LG Curved Monitor | Monitor | Computer Equipment | Security entrance | 600.00 |
| 8 | Dell Desktop | Desktop | Computer Equipment | Customer Service Office | 750.00 |
| 202 | Desktop Generic | Desktop | Computer Equipment | Studio B | 1,200.00 |
| 203 | Desktop Generic | Desktop | Computer Equipment | Studio B | 1,200.00 |
| 161 | Desktop Generic | Desktop | Computer Equipment | Studio B | 1,500.00 |
| 206 | Desktop Generic | Desktop | Computer Equipment | Studio B | 2,500.00 |
| 214 | iMac | Desktop | Computer Equipment | Studio B | 600.00 |
| 204 | iMac | Desktop | Computer Equipment | Studio B | 800.00 |
| 205 | iMac | Desktop | Computer Equipment | Studio B | 1,200.00 |
| 220 | PN-V601A LCD Monitor | Monitor | Computer Equipment | Studio B | 5,400.00 |
| 221 | PN-V601A LCD Monitor | Monitor | Computer Equipment | Studio B | 5,400.00 |
| 222 | PN-V601A LCD Monitor | Monitor | Computer Equipment | Studio B | 5,400.00 |
| 223 | PN-V601A LCD Monitor | Monitor | Computer Equipment | Studio B | 5,400.00 |
| 224 | PN-V601A LCD Monitor | Monitor | Computer Equipment | Studio B | 5,400.00 |
| 325 | Desktop Generic | Desktop | Computer Equipment | Studio C | 1,200.00 |
| 315 | Desktop Generic | Desktop | Computer Equipment | Studio C | 1,500.00 |
| 332 | Desktop Generic | Desktop | Computer Equipment | Studio C | 1,500.00 |



Bankruptcy Auction Agency Agreement | Intellectual & Personal Property



**FREE SPEECH SYSTEMS LLC**
**Southern District of Texas**
**Case #22-60043**
*Fixed Asset & Vehicle Schedule - Exhibit E*

| Asset Tag (a) | Description | Item | Category | Location | Est. Cost (b) |
|---|---|---|---|---|---|
| | PN-V601A LCD Monitor | Monitor | Computer Equipment | Studio C | 97,000.00 |
| 801 | Dell Precision T3600 | AUTOCAD | Computer Equipment | Studio C Server Room | 500.00 |
| 814 | Dell Precision T3600 | AUTOCAD | Computer Equipment | Studio C Server Room | 500.00 |
| 812 | Mac Mini | Desktop | Computer Equipment | Studio C Server Room | 500.00 |
| 813 | Mac Mini | Desktop | Computer Equipment | Studio C Server Room | 500.00 |
| 807 | Supermicro SuperServer 1029P-MT SYS-1029P-MT | Rack | Computer Equipment | Studio C Server Room | 1,000.00 |
| 284 | Desktop Generic | Desktop | Computer Equipment | Studio J | 800.00 |
| 285 | Desktop Generic | Desktop | Computer Equipment | Studio J | 800.00 |
| 277 | Desktop Generic | Desktop | Computer Equipment | Studio J | 3,500.00 |
| 278 | Desktop Generic | Desktop | Computer Equipment | Studio J | 3,500.00 |
| 280 | iMac | Desktop | Computer Equipment | Studio J | 600.00 |
| 191 | Pixel Plex | Monitor | Computer Equipment | Studio J | 40,000.00 |
| | PN-V601A LCD Monitor | Monitor | Computer Equipment | Studio J | 130,000.00 |
| 297 | iMac | Desktop | Computer Equipment | Writers Room | 600.00 |
| | | | | **Total Computer Equipment Cost** | **403,800.00** |
| | | | | | |
| 37 | Fridge | Break Room | Facilities | Accounting office | 600.00 |
| 39 | Large TV | TV | Facilities | Accounting office | 500.00 |
| 38 | Vacuum | Vacuum | Facilities | Accounting office | 600.00 |
| 33 | TV | TV | Facilities | E-Commerce office | 600.00 |
| 6 | Fridge | Break Room | Facilities | CS breakroom | 900.00 |
| 4 | Coffee Grinder | Coffee grinder | Facilities | CS breakroom | 900.00 |
| 5 | Coffee Maker | Coffee maker | Facilities | CS breakroom | 1,100.00 |
| 13 | TV | TV | Facilities | CS Conference room | 800.00 |
| 244 | Large TV | TV | Facilities | Producer's Office | 1,200.00 |
| 22 | Zebra RF Gun | RF Gun | Facilities | Facility manager room | 1,300.00 |
| 23 | Zebra RF Gun | RF Gun | Facilities | Facility manager room | 1,300.00 |
| 24 | Zebra RF Gun | RF Gun | Facilities | Facility manager room | 1,300.00 |
| 25 | Zebra RF Gun | RF Gun | Facilities | Facility manager room | 1,300.00 |
| 113 | Air compressor | Air compressor | Facilities | Gym | 5,000.00 |
| 95 | Hoist Bench | Gym equipment | Facilities | Gym | 550.00 |
| 96 | Hoist Bench | Gym equipment | Facilities | Gym | 550.00 |
| 97 | Hoist Bench | Gym equipment | Facilities | Gym | 550.00 |
| 98 | Hoist HD-3700 | Gym equipment | Facilities | Gym | 5,000.00 |
| 103 | Keiser Biaxial Chest press | Gym equipment | Facilities | Gym | 5,000.00 |
| 101 | Keiser Infinity series | Gym equipment | Facilities | Gym | 5,000.00 |
| 104 | Keiser Leg press | Gym equipment | Facilities | Gym | 5,000.00 |
| 105 | Keiser seated leg curl | Gym equipment | Facilities | Gym | 5,000.00 |
| 102 | Keiser Upper Back | Gym equipment | Facilities | Gym | 5,000.00 |
| 106 | Massage table | Gym equipment | Facilities | Gym | 670.00 |
| | Massage table | Gym equipment | Facilities | Gym | 670.00 |
| | Punching bag | Gym equipment | Facilities | Gym | 200.00 |
| | Punching bag | Gym equipment | Facilities | Gym | 200.00 |
| 100 | Rouge Echo Bike | Gym equipment | Facilities | Gym | 900.00 |
| 107 | RowERG | Gym equipment | Facilities | Gym | 1,200.00 |
| 93 | Squat Rack | Gym equipment | Facilities | Gym | 1,200.00 |
| 94 | Squat Rack | Gym equipment | Facilities | Gym | 1,200.00 |
| 99 | Teeter | Gym equipment | Facilities | Gym | 500.00 |
| 122 | Teeter | Gym equipment | Facilities | Gym | 500.00 |
| 92 | TF Leg Press | Gym equipment | Facilities | Gym | 1,500.00 |
| 108 | Weight rack with weights 10-60 lbs | Gym equipment | Facilities | Gym | 1,700.00 |
| 109 | Weight rack with weights 65-100lbs | Gym equipment | Facilities | Gym | 3,000.00 |
| 111 | PA System | Speaker | Facilities | Gym | 900.00 |
| 110 | TV | TV | Facilities | Gym | 300.00 |
| 70 | Ac Unit | AC Unit | Facilities | Gym / storage | 9,500.00 |
| 82 | BBQ Pit | BBQ Pit | Facilities | Gym / storage | 3,000.00 |
| 84 | Philips Selecon Studio light | Lights | Facilities | Gym / storage | 1,800.00 |
| 85 | Philips Selecon Studio light | Lights | Facilities | Gym / storage | 1,800.00 |
| 86 | Philips Selecon Studio light | Lights | Facilities | Gym / storage | 1,800.00 |
| 87 | Philips Selecon Studio light | Lights | Facilities | Gym / storage | 1,800.00 |
| 88 | Philips Selecon Studio light | Lights | Facilities | Gym / storage | 1,800.00 |
| 89 | Philips Selecon Studio light | Lights | Facilities | Gym / storage | 1,800.00 |
| 90 | Philips Selecon Studio light | Lights | Facilities | Gym / storage | 1,800.00 |
| 91 | Philips Selecon Studio light | Lights | Facilities | Gym / storage | 1,800.00 |
| 73 | Electric pallet jack | Pallet jack | Facilities | Gym / storage | 4,000.00 |
| 72 | Pallet jack | Pallet jack | Facilities | Gym / storage | 500.00 |
| 64 | Safe | Safe | Facilities | Gym / storage | 500.00 |
| 67 | Safe | Safe | Facilities | Gym / storage | 500.00 |
| 65 | Safe | Safe | Facilities | Gym / storage | 3,300.00 |
| 66 | Safe | Safe | Facilities | Gym / storage | 3,300.00 |
| 69 | Shipping container | Safe | Facilities | Gym / storage | 6,000.00 |
| 79 | Drone storage case | Storage case | Facilities | Gym / storage | 900.00 |



Bankruptcy Auction Agency Agreement | Intellectual & Personal Property



**FREE SPEECH SYSTEMS LLC**
**Southern District of Texas**
**Case #22-60043**
*Fixed Asset & Vehicle Schedule - Exhibit E*

| Asset Tag (a) | Description | Item | Category | Location | Est. Cost (b) |
|---|---|---|---|---|---|
| 144 | Fridge | Break Room | Facilities | Gym Break room | 1,200.00 |
| 145 | Fridge | Break Room | Facilities | Gym Break room | 1,200.00 |
| 146 | Fridge | Break Room | Facilities | Gym Break room | 1,200.00 |
| 147 | Fridge | Break Room | Facilities | Gym Break room | 1,200.00 |
| 143 | Euhomy Ice box | Kitchen | Facilities | Gym Break room | 500.00 |
| 121 | Air tower elite | Gym equipment | Facilities | Gym Cold Room | 1,300.00 |
| 126 | Elliptical | Gym equipment | Facilities | Gym Cold Room | 1,200.00 |
| 118 | Resistance Fitness Bike | Gym equipment | Facilities | Gym Cold Room | 800.00 |
| 119 | Resistance Fitness Bike | Gym equipment | Facilities | Gym Cold Room | 800.00 |
| 120 | Resistance Fitness Bike | Gym equipment | Facilities | Gym Cold Room | 800.00 |
| 125 | Treadmill | Gym equipment | Facilities | Gym Cold Room | 600.00 |
| 123 | Trueform trainer | Gym equipment | Facilities | Gym Cold Room | 7,000.00 |
| 124 | Trueform trainer | Gym equipment | Facilities | Gym Cold Room | 7,000.00 |
| 114 | Joovv red light | Lights | Facilities | Gym Cold Room | 1,300.00 |
| 116 | Joovv red light | Lights | Facilities | Gym Cold Room | 1,300.00 |
| 117 | Joovv red light | Lights | Facilities | Gym Cold Room | 18,000.00 |
| 115 | TV | TV | Facilities | Gym Cold Room | 600.00 |
| 140 | Large TV | TV | Facilities | Morning Host office | 600.00 |
| 42 | Large TV | TV | Facilities | IT | 500.00 |
| 49 | Large TV | TV | Facilities | IT | 500.00 |
| 43 | Large TV | TV | Facilities | IT | 600.00 |
| 60 | TV | TV | Facilities | IT | 800.00 |
| 138 | Large TV | TV | Facilities | Sales office | 600.00 |
| 11 | TV | TV | Facilities | Customer Service Office | 300.00 |
| 62 | TV | TV | Facilities | Customer Service Office | 200.00 |
| 136 | Large TV | TV | Facilities | Afternoon Host office | 600.00 |
| 137 | Large TV | TV | Facilities | Afternoon Host office | 800.00 |
| 157 | Fridge | Break Room | Facilities | Small conference room | 1,200.00 |
| 154 | TV | TV | Facilities | Small conference room | 1,200.00 |
| 303 | Coffee Maker | Coffee maker | Facilities | Podcast studio | 1,200.00 |
| 311 | TV | TV | Facilities | Producers room | 500.00 |
| 307 | Fridge | Break Room | Facilities | Production Break Room | 2,500.00 |
| 305 | Coffee Grinder | Coffee grinder | Facilities | Production Break Room | 1,000.00 |
| 306 | Coffee Maker | Coffee maker | Facilities | Production Break Room | 1,200.00 |
| 304 | Large TV | TV | Facilities | Production Break Room | 800.00 |
| 232 | Large TV | TV | Facilities | Production Conference room | 2,300.00 |
| 236 | Safe | Safe | Facilities | Security entrance | 1,600.00 |
| 9 | Large TV | TV | Facilities | Customer Service Office | 500.00 |
| 266 | Safe | Safe | Facilities | Studio J | 5,000.00 |
| 298 | TV | TV | Facilities | Writers Room | 600.00 |
| | | | **Total Facilities Cost** | | **180,690.00** |
| | | | | | |
| 17 | Cabinet | Cabinet | Office Furniture | Customer Service | 500.00 |
| 28 | Cabinet | Cabinet | Office Furniture | Facility manager room | 600.00 |
| 32 | Cabinet | Cabinet | Office Furniture | Purchasing office | 600.00 |
| 35 | Cabinet | Cabinet | Office Furniture | Accounting office | 500.00 |
| 44 | Cabinet | Cabinet | Office Furniture | IT | 600.00 |
| 45 | Cabinet | Cabinet | Office Furniture | IT | 500.00 |
| 134 | Cabinet | Cabinet | Office Furniture | Green screen room | 800.00 |
| 12 | Whiteboard | Whiteboard | Office Furniture | CS Conference room | 600.00 |
| 139 | Whiteboard | Whiteboard | Office Furniture | Sales office | 500.00 |
| 155 | Whiteboard | Whiteboard | Office Furniture | Small conference room | 600.00 |
| 233 | Whiteboard | Whiteboard | Office Furniture | Production Conference room | 600.00 |
| 234 | Whiteboard | Whiteboard | Office Furniture | Production Conference room | 500.00 |
| 3 | Table | Table | Office Furniture | E-Commerce | 500.00 |
| 16 | Conference Table | Table | Office Furniture | CS Conference room | 1,200.00 |
| 83 | Conference Table | Table | Office Furniture | Gym / storage | 1,200.00 |
| 156 | Conference Table | Table | Office Furniture | Small conference room | 2,000.00 |
| 231 | Conference Table | Table | Office Furniture | Production Conference room | 3,000.00 |
| 135 | Cabinet | Cabinet | Office Furniture | Bull pen | 500.00 |
| 208 | Cabinet | Cabinet | Office Furniture | Studio B | 800.00 |
| 209 | Cabinet | Cabinet | Office Furniture | Studio B | 800.00 |
| 239 | Cabinet | Cabinet | Office Furniture | Production Office | 500.00 |
| 312 | Cabinet | Cabinet | Office Furniture | Studio C | 600.00 |
| 636 | Cabinet | Cabinet | Office Furniture | Studio C | 500.00 |
| 31 | Couch | Couch | Office Furniture | E-Commerce office | 500.00 |
| 36 | Couch | Couch | Office Furniture | Accounting office | 500.00 |
| 63 | Couch | Couch | Office Furniture | Customer Service Office | 500.00 |
| 151 | Couch | Couch | Office Furniture | Front waiting room / office | 800.00 |
| 299 | Couch | Couch | Office Furniture | Writers Room | 600.00 |
| 34 | Desk | Desk | Office Furniture | Accounting office | 2,000.00 |
| 54 | Big White Desk | Desk | Office Furniture | IT | 500.00 |

Bankruptcy Auction Agency Agreement | Intellectual & Personal Property





**FREE SPEECH SYSTEMS LLC**
Southern District of Texas
Case #22-60043
*Fixed Asset & Vehicle Schedule - Exhibit E*

| Asset Tag (a) | Description | Item | Category | Location | Est. Cost (b) |
|---|---|---|---|---|---|
| 149 | Big White Desk | Desk | Office Furniture | Front waiting room / office | 600.00 |
| 150 | Big White Desk | Desk | Office Furniture | Front waiting room / office | 600.00 |
| 172 | Studio B Desk | Desk | Office Furniture | Studio B | 10,000.00 |
| 253 | Big White Desk | Desk | Office Furniture | Production Office | 600.00 |
| 254 | Big White Desk | Desk | Office Furniture | Production Office | 600.00 |
| 255 | Big White Desk | Desk | Office Furniture | Production Office | 600.00 |
| 257 | Big White Desk | Desk | Office Furniture | Production Office | 600.00 |
| 258 | Big White Desk | Desk | Office Furniture | Production Office | 600.00 |
| 259 | Big White Desk | Desk | Office Furniture | Production Office | 600.00 |
| 261 | Desk | Desk | Office Furniture | Studio J | 45,000.00 |
| 265 | Desk | Desk | Office Furniture | Studio J | 15,000.00 |
| 286 | Desk | Desk | Office Furniture | Studio J | 5,000.00 |
| 287 | Desk | Desk | Office Furniture | Studio J | 5,000.00 |
| 302 | Desk | Desk | Office Furniture | Podcast studio | 5,000.00 |
| 310 | Desk | Desk | Office Furniture | Producers room | 600.00 |
| 317 | Desk | Desk | Office Furniture | Studio C | 3,000.00 |
| 329 | Desk | Desk | Office Furniture | Studio C | 2,500.00 |
| 334 | Desk | Desk | Office Furniture | Studio C | 2,500.00 |
| 349 | Desk | Desk | Office Furniture | Studio C | 15,000.00 |
| 651 | Big White Desk | Desk | Office Furniture | IT | 500.00 |
| 652 | Big White Desk | Desk | Office Furniture | IT | 500.00 |
| | | | | | 138,300.00 |
| | | | | | |
| 313 | Avcom portable spectrum analyzer | Analyzer | Production Equipment | Studio C | 1,200.00 |
| 185 | Distribution Amplifier Pro Plus | Audio Amplifier | Production Equipment | Studio J | 200.00 |
| 159 | AD 22S Audio Delay | Audio Delay | Production Equipment | Studio B | 579.00 |
| 182 | AD 22S Audio Delay | Audio Delay | Production Equipment | Studio J | 580.00 |
| 291 | AD 22S Audio Delay | Audio Delay | Production Equipment | Studio J | 600.00 |
| 184 | Scarlett 18i20 | Audio Interface | Production Equipment | Studio J | 600.00 |
| 791 | BD600 | Broadcast Delay | Production Equipment | Studio C | 4,000.00 |
| 321 | Airtools 6100 | BroadcastDelay | Production Equipment | Studio C | 900.00 |
| 322 | Airtools 6100 | BroadcastDelay | Production Equipment | Studio C | 900.00 |
| 170 | Camera with Tripod | Camera | Production Equipment | Studio B | 6,000.00 |
| 171 | Camera with Tripod | Camera | Production Equipment | Studio B | 7,200.00 |
| 173 | Camera with Tripod and MD-HX | Camera | Production Equipment | Studio J | 8,000.00 |
| 174 | Camera with Tripod and MD-HX | Camera | Production Equipment | Studio J | 8,000.00 |
| 175 | Camera with Tripod and MD-HX | Camera | Production Equipment | Studio J | 8,000.00 |
| 176 | Camera with Tripod and MD-HX | Camera | Production Equipment | Studio J | 8,000.00 |
| 177 | Camera with Tripod and MD-HX | Camera | Production Equipment | Studio J | 8,000.00 |
| 210 | Sony Carl Zeiss | Camera | Production Equipment | Studio B | 700.00 |
| 211 | Panasonic Camera | Camera | Production Equipment | Studio B | 5,000.00 |
| 225 | Camera with Tripod | Camera | Production Equipment | Studio B | 6,000.00 |
| 226 | Camera with Tripod | Camera | Production Equipment | Studio B | 6,500.00 |
| 228 | Sony Carl Zeiss | Camera | Production Equipment | Studio B | 700.00 |
| 283 | Sony Carl Zeiss | Camera | Production Equipment | Studio J | 700.00 |
| 288 | Camera crane with Camera | Camera | Production Equipment | Studio J | 15,000.00 |
| 335 | Sony Carl Zeiss | Camera | Production Equipment | Studio C | 700.00 |
| 351 | Camera with Tripod and MD-HX | Camera | Production Equipment | Studio C | 8,000.00 |
| 355 | Camera with Tripod and MD-HX | Camera | Production Equipment | Studio C | 8,000.00 |
| 356 | Camera with Tripod and MD-HX | Camera | Production Equipment | Studio C | 8,000.00 |
| 357 | Sony camera with tripod | Camera | Production Equipment | Studio C | 1,700.00 |
| 361 | Camera with Tripod and MD-HX | Camera | Production Equipment | Studio C | 8,000.00 |
| | Sony Carl Zeiss | Camera | Production Equipment | Studio C | 600.00 |
| | Canon Camera | Camera | Production Equipment | E-Commerce | 2,500.00 |
| | Sony Carl Zeiss | Camera | Production Equipment | Studio J | 700.00 |
| | Sony Carl Zeiss | Camera | Production Equipment | Studio J | 700.00 |
| 196 | Sony remote control unit | Camera controller | Production Equipment | Studio B | 1,500.00 |
| 207 | DJI Ronin M | Camera controller | Production Equipment | Studio B | 1,400.00 |
| 260 | Sony remote control unit | Camera controller | Production Equipment | Studio J | 800.00 |
| 276 | NovaStar LED digital video display | Camera controller | Production Equipment | Studio J | 4,500.00 |
| 331 | Sony remote control unit | Camera controller | Production Equipment | Studio C | 1,500.00 |
| 183 | 6200 DAB | Digital Audio Broadcast Processor | Production Equipment | Studio J | 1,700.00 |
| 320 | 6200 DAB | Digital Audio Broadcast Processor | Production Equipment | Studio C | 1,700.00 |
| 811 | Optimod 6200 DAB | Digital Audio Broadcast Processor | Production Equipment | Studio C Server Room | 2,000.00 |
| 68 | Drone | Drone | Production Equipment | Gym / storage | 3,000.00 |
| 187 | NC1 I/O | Input Output Module | Production Equipment | Studio J | 5,400.00 |
| 188 | NC1 I/O | Input Output Module | Production Equipment | Studio J | 5,400.00 |
| 314 | NC1 I/O | Input Output Module | Production Equipment | Studio C | 1,200.00 |
| 127 | Socanland Light | Lights | Production Equipment | Green screen room | 1,000.00 |
| 128 | Socanland Light | Lights | Production Equipment | Green screen room | 1,000.00 |
| 131 | Socanland Light | Lights | Production Equipment | Green screen room | 1,000.00 |
| 132 | Socanland Light | Lights | Production Equipment | Green screen room | 1,000.00 |

 Bankruptcy Auction Agency Agreement | Intellectual & Personal Property



**FREE SPEECH SYSTEMS LLC**
Southern District of Texas
Case #22-60043
*Fixed Asset & Vehicle Schedule - Exhibit E*

| Asset Tag (a) | Description | Item | Category | Location | Est. Cost (b) |
|---|---|---|---|---|---|
| 158 | Wheatstone Strata 32 | Soundboard | Production Equipment | Studio B | 75,000.00 |
| 160 | ETC | Soundboard | Production Equipment | Studio B | 4,500.00 |
| 197 | Newtek | Soundboard | Production Equipment | Studio B | 20,000.00 |
| 249 | Newtek | Soundboard | Production Equipment | Studio B | 20,000.00 |
| 273 | Newtek | Soundboard | Production Equipment | Studio J | 20,000.00 |
| 275 | ETC | Soundboard | Production Equipment | Studio J | 3,000.00 |
| 279 | Wheatstone Strata 32 | Soundboard | Production Equipment | Studio J | 75,000.00 |
| 319 | Wheatstone Strata 32 | Soundboard | Production Equipment | Studio C | 75,000.00 |
| 330 | Newtek | Soundboard | Production Equipment | Studio C | 20,000.00 |
| 787 | Access Rack | Stereo | Production Equipment | Studio C | 1,800.00 |
| 788 | Access Rack | Stereo | Production Equipment | Studio C | 1,800.00 |
| 162 | ProSafe GS728TP | Switch | Production Equipment | Studio B | 500.00 |
| 190 | Switch 48 | Switch | Production Equipment | Studio J | 1,200.00 |
| 783 | Catalyst 3650 24 4X1G | Switch | Production Equipment | Studio C | 2,500.00 |
| 800 | Smart Videohub | Switch | Production Equipment | Studio C Server Room | 3,000.00 |
| 809 | ProCurve Switch 4208vl | Switch | Production Equipment | Studio C Server Room | 1,000.00 |
| 810 | DXS-1210-12SC | Switch | Production Equipment | Studio C Server Room | 1,500.00 |
| 129 | Large TV | TV | Production Equipment | Green screen room | 800.00 |
| 130 | Large TV | TV | Production Equipment | Green screen room | 800.00 |
| 198 | Large TV | TV | Production Equipment | Studio B | 2,000.00 |
| 199 | Large TV | TV | Production Equipment | Studio B | 3,000.00 |
| 200 | Large TV | TV | Production Equipment | Studio B | 1,500.00 |
| 201 | TV | TV | Production Equipment | Studio B | 800.00 |
| 216 | TV | TV | Production Equipment | Studio B | 500.00 |
| 217 | Large TV | TV | Production Equipment | Studio B | 500.00 |
| 218 | Large TV | TV | Production Equipment | Studio B | 1,500.00 |
| 219 | Large TV | TV | Production Equipment | Studio B | 1,500.00 |
| 227 | Large TV | TV | Production Equipment | Studio B | 600.00 |
| 250 | Large TV | TV | Production Equipment | Studio C | 600.00 |
| 251 | Large TV | TV | Production Equipment | Studio C | 800.00 |
| 262 | Large TV | TV | Production Equipment | Studio J | 5,500.00 |
| 263 | Large TV | TV | Production Equipment | Studio J | 4,500.00 |
| 264 | Large TV | TV | Production Equipment | Studio J | 1,500.00 |
| 267 | TV | TV | Production Equipment | Studio J | 5,400.00 |
| 268 | Large TV | TV | Production Equipment | Studio J | 1,500.00 |
| 272 | Large TV | TV | Production Equipment | Black box | 1,500.00 |
| 281 | Large TV | TV | Production Equipment | Studio J | 2,500.00 |
| 282 | Large TV | TV | Production Equipment | Studio J | 2,000.00 |
| 300 | TV | TV | Production Equipment | Podcast studio | 1,200.00 |
| 301 | TV | TV | Production Equipment | Podcast studio | 2,800.00 |
| 352 | Large TV | TV | Production Equipment | Studio C | 800.00 |
| 353 | Large TV | TV | Production Equipment | Studio C | 600.00 |
| 354 | Large TV | TV | Production Equipment | Studio C | 3,000.00 |
| 358 | TV | TV | Production Equipment | Studio C | 600.00 |
| 359 | TV | TV | Production Equipment | Studio C | 600.00 |
| 360 | TV | TV | Production Equipment | Studio C | 600.00 |
| | Large TV | TV | Production Equipment | Studio J | 1,200.00 |
| | Large TV | TV | Production Equipment | Studio J | 1,200.00 |
| | Large TV | TV | Production Equipment | Studio J | 1,200.00 |
| | Large TV | TV | Production Equipment | Studio J | 1,200.00 |
| | Large TV | TV | Production Equipment | Studio J | 1,200.00 |
| | Large TV | TV | Production Equipment | Studio J | 1,200.00 |
| 348 | SmartOnline UPS | UPS | Production Equipment | Studio C Server Room | 2,000.00 |
| 802 | GXT4 UPS | UPS | Production Equipment | Studio C Server Room | 7,500.00 |
| 803 | GXT4 UPS | UPS | Production Equipment | Studio C Server Room | 7,500.00 |
| 804 | GXT4 UPS | UPS | Production Equipment | Studio C Server Room | 10,500.00 |
| 805 | GXT4 UPS | UPS | Production Equipment | Studio C Server Room | 10,500.00 |
| 806 | SmartOnline UPS | UPS | Production Equipment | Studio C | 2,000.00 |
| 163 | TalkShow VS-100 | Video Broadcaster | Production Equipment | Studio B | 1,500.00 |
| 164 | TalkShow VS-100 | Video Broadcaster | Production Equipment | Studio B | 1,500.00 |
| 165 | Smart Videohub 40x40 | Video Broadcaster | Production Equipment | Studio B | 3,000.00 |
| 179 | ATEM 1 M/E Production Studio 4k | Video Broadcaster | Production Equipment | Studio J | 2,700.00 |
| 180 | Design Video Assist | Video Broadcaster | Production Equipment | Studio J | 1,000.00 |
| 186 | LU2000 | Video Broadcaster | Production Equipment | Studio J | 5,500.00 |
| 189 | TriCaster TC1 | Video Broadcaster | Production Equipment | Studio J | 16,000.00 |
| 192 | Ultimatte 12 4k | Video Broadcaster | Production Equipment | Studio C | 2,500.00 |
| 193 | HyperDeck Studio Pro | Video Broadcaster | Production Equipment | Studio C | 1,000.00 |
| 194 | HyperDeck Studio Pro | Video Broadcaster | Production Equipment | Studio C | 1,000.00 |
| 195 | HyperDeck Studio Pro | Video Broadcaster | Production Equipment | Studio C | 1,000.00 |
| 245 | TalkShow VS-100 | Video Broadcaster | Production Equipment | Studio B | 600.00 |
| 246 | TalkShow VS-100 | Video Broadcaster | Production Equipment | Studio B | 1,500.00 |
| 293 | TriCaster TC1 | Video Broadcaster | Production Equipment | Studio C | 16,000.00 |
| 316 | TriCaster TC1 | Video Broadcaster | Production Equipment | Studio C | 5,000.00 |

Bankruptcy Auction Agency Agreement | Intellectual & Personal Property





FREE SPEECH SYSTEMS LLC
Southern District of Texas
Case #22-60043
*Fixed Asset & Vehicle Schedule - Exhibit E*

| Asset Tag (a) | Description | Item | Category | Location | Est. Cost (b) |
|---|---|---|---|---|---|
| 133 | Socanland Light | Lights | Production Equipment | Green screen room | 1,000.00 |
| 212 | Socanland Light | Lights | Production Equipment | Studio B | 500.00 |
| 213 | Socanland Light | Lights | Production Equipment | Studio B | 500.00 |
| 215 | Socanland Light | Lights | Production Equipment | Studio B | 600.00 |
| 229 | Socanland Light | Lights | Production Equipment | Studio B | 600.00 |
| 230 | Socanland Light | Lights | Production Equipment | Studio B | 1,200.00 |
| 235 | Socanland Light | Lights | Production Equipment | Security entrance | 600.00 |
| 240 | Socanland Light | Lights | Production Equipment | Studio B | 500.00 |
| 336 | Socanland Light | Lights | Production Equipment | Studio C | 1,200.00 |
| 337 | Socanland Light | Lights | Production Equipment | Studio C | 1,200.00 |
|  | Socanland Light | Lights | Production Equipment | Studio B | 600.00 |
|  | Socanland Light | Lights | Production Equipment | Studio J | 1,200.00 |
|  | Socanland Light | Lights | Production Equipment | Studio J | 1,200.00 |
|  | Socanland Light | Lights | Production Equipment | Studio J | 1,200.00 |
|  | Socanland Light | Lights | Production Equipment | Studio J | 1,200.00 |
|  | Socanland Light | Lights | Production Equipment | Studio J | 1,200.00 |
|  | Socanland Light | Lights | Production Equipment | Studio J | 1,200.00 |
|  | Light | Lights | Production Equipment | Studio J | 2,000.00 |
|  | Socanland Light | Lights | Production Equipment | Studio C | 600.00 |
|  | Socanland Light | Lights | Production Equipment | Studio B | 1,200.00 |
|  | Socanland Light | Lights | Production Equipment | Studio C | 600.00 |
|  | Socanland Light | Lights | Production Equipment | Studio C | 800.00 |
|  | Socanland Light | Lights | Production Equipment | Studio C | 800.00 |
|  | Socanland Light | Lights | Production Equipment | Studio C | 800.00 |
|  | Socanland Light | Lights | Production Equipment | Studio B | 800.00 |
|  | Socanland Light | Lights | Production Equipment | Studio B | 600.00 |
|  | Socanland Light | Lights | Production Equipment | Studio B | 1,200.00 |
| 169 | The Garnet Microphone | Microphone | Production Equipment | Sound Booth | 3,075.00 |
| 167 | Blade-3 | Microphone I/O Network Blade | Production Equipment | Studio B | 5,555.00 |
| 168 | Blade-3 | Microphone I/O Network Blade | Production Equipment | Studio B | 5,555.00 |
| 326 | Blade-3 | Microphone I/O Network Blade | Production Equipment | Studio C | 5,555.00 |
| 350 | Blade-3 | Microphone I/O Network Blade | Production Equipment | Studio C | 5,000.00 |
| 784 | Blade-3 | Microphone I/O Network Blade | Production Equipment | Studio C | 4,200.00 |
| 785 | Blade-3 | Microphone I/O Network Blade | Production Equipment | Studio C | 4,200.00 |
| 797 | Blade-3 | Microphone I/O Network Blade | Production Equipment | Studio C | 4,200.00 |
| 786 | Gibraltar Network | Network Rack | Production Equipment | Studio C | 650.00 |
| 323 | Clear-com MS-702 | Rack | Production Equipment | Studio C | 1,600.00 |
| 324 | Clear-com HME DX210 | Rack | Production Equipment | Studio C | 3,000.00 |
| 338 | Evo SNS 16B64TB-2X10C | Rack | Production Equipment | Studio C Server Room | 35,000.00 |
| 339 | Dell 3930 Rack | Rack | Production Equipment | Studio C Server Room | 2,000.00 |
| 340 | HP ProLiant DL360e Gen 8 | Rack | Production Equipment | Studio C Server Room | 1,100.00 |
| 341 | Haivision Encoders | Rack | Production Equipment | Studio C Server Room | 50,000.00 |
| 342 | Evo Server Rack | Rack | Production Equipment | Studio C Server Room | 50,000.00 |
| 343 | Supermicro SuperServer 1029P-MT SYS-1029P-MT | Rack | Production Equipment | Studio C Server Room | 2,100.00 |
| 344 | UC-IRD Receiver Decoder | Rack | Production Equipment | Studio C Server Room | 2,100.00 |
| 345 | Wave Stream Redundancy Controller | Rack | Production Equipment | Studio C Server Room | 15,000.00 |
| 346 | Tanberg E5770 | Rack | Production Equipment | Studio C Server Room | 3,000.00 |
| 347 | Tandberg EN5990 Digital Encoder | Rack | Production Equipment | Studio C Server Room | 2,500.00 |
| 362 | Creston AV3 | Rack | Production Equipment | Studio C | 2,500.00 |
| 808 | Supermicro SuperServer 1029P-MT SYS-1029P-MT | Rack | Production Equipment | Studio C Server Room | 1,000.00 |
| 274 | Digital radio control | Radio control | Production Equipment | Studio J | 5,100.00 |
| 792 | EW G4 | Radio control | Production Equipment | Studio C | 1,100.00 |
| 794 | True Diversity Receiver 500 | Receiver | Production Equipment | Studio C | 600.00 |
| 795 | True Diversity Receiver 500 | Receiver | Production Equipment | Studio C | 600.00 |
| 796 | True Diversity Receiver 500 | Receiver | Production Equipment | Studio C | 600.00 |
| 166 | Teranex Mini - SDI Distribution 12G | SDI Distribution | Production Equipment | Studio B | 545.00 |
| 181 | Teranex Mini - SDI Distribution 12G | SDI Distribution | Production Equipment | Studio J | 525.00 |
| 289 | Teranex Mini - SDI Distribution 12G | SDI Distribution | Production Equipment | Studio C | 1,200.00 |
| 290 | Teranex Mini - SDI Distribution 12G | SDI Distribution | Production Equipment | Studio C | 700.00 |
| 247 | Tricaster Server | Server | Production Equipment | Studio B | 7,500.00 |
| 248 | Tricaster Server | Server | Production Equipment | Studio B | 7,500.00 |
| 292 | Behringer x32 Rack | Server | Production Equipment | Studio C | 1,600.00 |
| 294 | Tricaster Server | Server | Production Equipment | Studio C | 2,000.00 |
| 295 | Tricaster Server | Server | Production Equipment | Studio C | 10,000.00 |
| 296 | BlackMagic Atem production switcher | Server | Production Equipment | Studio C | 1,000.00 |
| 654 | Server | Server | Production Equipment | CS server room | 600.00 |
| 655 | Server | Server | Production Equipment | CS server room | 700.00 |
| 656 | Server | Server | Production Equipment | CS server room | 1,200.00 |
| 781 | IOT/Embedded System | Server | Production Equipment | Studio C | 1,000.00 |
| 798 | Rockford R331 | Server | Production Equipment | Studio C | 11,000.00 |
| 799 | Rockford R331 | Server | Production Equipment | Studio C | 11,000.00 |
|  | Server | Server | Production Equipment | CS server room | 2,000.00 |

Bankruptcy Auction Agency Agreement | Intellectual & Personal Property





FREE SPEECH SYSTEMS LLC
Southern District of Texas
Case #22-60043
*Fixed Asset & Vehicle Schedule - Exhibit E*

| Asset Tag | (a) | Description | Item | Category | Location | Est. Cost | (b) |
|-----------|-----|-------------|------|----------|----------|-----------|-----|
| 318 | | TriCaster TC1 | Video Broadcaster | Production Equipment | Studio B | 5,000.00 | |
| 327 | | TalkShow VS-100 | Video Broadcaster | Production Equipment | Studio C | 1,500.00 | |
| 328 | | TalkShow VS-100 | Video Broadcaster | Production Equipment | Studio C | 1,500.00 | |
| 333 | | Ultimate 12 4k | Video Broadcaster | Production Equipment | Studio C | 2,500.00 | |
| 782 | | KiPro Rack | Video Broadcaster | Production Equipment | Studio C | 3,000.00 | |
| 789 | | HyperDeck Studio Pro | Video Broadcaster | Production Equipment | Studio J | 1,000.00 | |
| 790 | | HyperDeck Studio Pro | Video Broadcaster | Production Equipment | Studio C | 1,000.00 | |
| | | | | **Total Production Equipment Cost** | | 969,019.00 | |
| | | | | | | | |
| | | | | **TOTAL FIXED ASSETS** | | 1,691,809.00 | |
| | | 2021 Winnenago RV | Vehicle | Vehicles | Alvin Devane Office | 140,000.00 | |
| | | 2006 Acura MX | Vehicle | Vehicles | Alvin Devane Office | 10,000.00 | |
| | | 2015 Ford F450 Teradyne Truck | Vehicle | Vehicles | Gym / storage | 250,000.00 | |
| | | | | **TOTAL VEHICLE COST** | | 400,000.00 | |

(a)  List is the result of a physical count of items located at the FSS Offices and Studios and does not include anything of nominal value such as small
office suplies or personal items.  The threshold of value to be counted and assigned an Asset ID was $500 and higher.  Management does not
believe there is a material amount of liquidation value in the small items that have under $500 of cost when purchased.

(b)  Historical asset values for Free Speech Systems are not complete or reliable.  We researched our records to estimate the costs and management believes
the amounts are materially correct and consistent with prior tax returns and disclosures in this



Bankruptcy Auction Agency Agreement | Intellectual & Personal Property

EXHIBIT B-1

Intellectual Property Budget

| | | |
|---|---|---|
| Sealed Bid Package Prep & Data Room | | $2,500 |
| Marketing | | |
|     Trade Publications | $3,000 | |
|     Direct Email Campaign | $2,000 | |
|     Wall St. Journal | $3,500 | |
|     PR Campaign | $2,500 | |
|     Social Media | $750 | |
|     Ad Preparation | $1,250 | <u>$13,000</u> |
| Total Budget | | $15,500 |



Bankruptcy Auction Agency Agreement | Intellectual & Personal Property

EXHIBIT B-2

Personal Property Budget

Labor

| | | |
|---|---|---|
| Onsite Asset Prep - Supervisor @ 15 Days | $9,000 | |
| Onsite Asset Prep - Support @ 15 Days | $6,000 | |
| Checkout/Removal - Supervisor @ 10 Days | $6,000 | |
| Checkout/Removal - Support @ 10 Days | $4,000 | |
| Auction Administration | $2,000 | $27,000 |

Marketing

| | | |
|---|---|---|
| Trade Publications | $4,000 | |
| Direct Email Campaign | $2,000 | |
| PR Campaign | $2,500 | |
| Social Media | $1,000 | |
| Ad Preparation & Guerilla Marketing | $1,500 | $11,000 |

Marketing

| | | |
|---|---|---|
| Online Bidding Fees (2% of auction) | $10,000* | |
| Transportation, Supplies & Miscellaneous | $3,500 | |
| Security | $5,000** | $18,500 |

| | |
|---|---|
| Total Budget | $56,600 |

\* Estimated cost; to be billed at actual cost

\*\* Estimated cost; to be used as necessary and billed at actual cost

# EXHIBIT D

**Agency and Marketing Agreement**

# AGENCY AND MARKETING AGREEMENT

This Agency and Marketing Agreement (the "Agreement") entered into this _____ day of August, 2024, between Tranzon Asset Advisors of Texas, LLC, located at 945 McKinney St, #13384, Houston, TX 77002 (hereinafter as "Tranzon" or "Agent") and Christoher R. Murray, Chapter 7 Trustee for the Estate of Alexander E. Jones (Case #22-33553) & not individually, located at 602 Sawyer St, Ste. 400, Houston, TX 77007  (the "Seller").

**1. EXCLUSIVE RIGHT TO SELL AGREEMENT:** The Seller hereby grants the Agent the *Exclusive Right to Sell* the following described real property, together with all improvements and appurtenances unless otherwise excepted. Further, the Seller authorizes Agent to offer and/or solicit to the general public and all potential interested parties and Agent may offer the Property for sale at auction, sealed bid, hybrid sealed bid, online bidding, a combination of any of these methods, or through private negotiations with potential buyers during the term of this Agreement.  Seller agrees to refer to Agent all inquiries that Seller may have received prior to, during the term of and any continuance of this Agreement. The Property is commonly described as follows:

The real property (the "Property or Properties") described on Exhibit "A"

**2.  FEES AND EXPENSES:** The Agent will charge the Seller a six-percent (6%) commission (the "Commission") based on the total contract sales price. As a commission fee for auction and marketing services rendered the Agent shall receive the Commission in its entirety and the payment of the Commission is a condition of closing.

**3**. **TERM:** Agreement's term of duration shall begin on the effective date that all parties enter this Agreement and will continue until ninety (90) days following the published auction date or until the date of closing and settlement. Upon expiration of the Agreement or any extension thereof, Agent shall have the right to submit to Seller a list of all prospects obtained by Agent or with whom Agent has negotiated regarding the purchase of the Property. If within ninety (90) days of the expiration of the Agreement or any extension thereof the Seller sells, leases, or otherwise transfers the Property or any portion thereof to any prospect listed, then Seller shall pay to Agent the fee set forth in this Agreement. All compensation due to Agent will be paid to the Seller and distributed to Agent subject to Court approval.  The Seller also agrees to pay Agent the fee provided above, based on the accepted total sale price of the Property, if (a) Seller agrees in writing to a sale of the Property and (b) thereafter the sale is not closed due to (i) the unwillingness of the Seller to close the sale, or (ii) the failure or inability of Seller to provide marketable title such that any title insurance company would insure.

**4. MARKETING & EXPENSES:** The Agent agrees to incur up to Twenty-Five Thousand and 00 Dollars ($25,000.00) for the marketing, advertising and travel expenses (the "Expenses") to conduct the sale.  Such anticipated expenses are detailed on Exhibit B attached.  All Expenses will be reimbursed to the Agent at the time of settlement. The Agent shall provide a final accounting and report for the Seller prior to closing and settlement.

**5.  BUYER BROKER COOPERATION:** Agent offers a referral fee (the "Referral Fee") of one percent (1%) of the high bid price to a buyer's broker who properly registers a client that subsequently closes the transaction, provided that the buyer's broker complies with all terms and conditions of the Auction Broker Registration Agreement.

**6.  DATE AND TIME OF AUCTION:** TBD but no later than eight weeks following U.S. Bankruptcy Court approval of the motion to sell property free & clear of all liens and encumbrances. Agent reserves the right to reschedule the date of any auction for cause with Seller's approval of the rescheduling or advancement.

**7. PUBLIC INSPECTIONS:**  TBD, or approximately one week prior to the auction dates.

**8. CLOSING DEADLINE:** Thirty (30) days from the effective date of the Purchase and Sale Agreement.

**9. TYPE AND METHOD OF AUCTION:** Seller agrees to offer the Property for sale to the general public by the following method of auction:

   **Online Auction:** This type of auction is conducted with the use of timed internet bidding and extended bidding.

The auction will be conducted as the following Method of sale:

1

Initials: _____, _____, _____

**Reserve Auction:** Seller shall offer the Properties to the buying public subject to a Reserve Price to be approved by the Seller for each Property upon completion of a physical inspection and recommendation from Tranzon. Once the high bid has reached the reserve amount the Seller specifies, and/or Seller and Agent further agree to accept the highest current bid on or before the end of the bidding, the auction will <u>automatically convert to an absolute sale</u> and the Agent further has the Seller's full authorization to notify bidders that the Property will sell to the highest bidder and the reserve price has been met. Seller may reduce or remove the reserve amount at any time upon notice to the Agent but is prohibited and disabled from increasing the reserve unless agreed to in writing with the Agent.

---

**10. PERFORMANCE BY BUYER:** It is expressly agreed and understood that Agent does not guarantee performance or funds presented by the high bidder and, therefore, shall not be responsible if, for any reason, the high bidder refuses to submit a written offer conforming to the bidding at the auction sale, nor shall Agent be responsible if the high bidder fails to perform its agreement to purchase or to comply with escrow instructions that may thereafter be executed.

**11. EARNEST MONEY DEPOSITS:** Within one (1) business day (or as stipulated in the purchase agreement) of being declared the winning bidder, the buyer(s) shall tender to Agent or designated title company a deposit of ten percent (10%) of the Total Sale Price (the "Total Deposit"). The Total Deposit is to be considered non-refundable earnest money and applied toward the Total Sale Price at closing or forfeited to the Seller should the buyer(s) default under the terms of the purchase agreement. A bidding deposit (the "Bid Deposit") may be enforced and required through a valid credit card hold prior to permitting any or all parties to bid on the Property.

**12. DEFAULT OF BUYER:** In the event of default of the purchase agreement by the buyer(s), the Total Deposit will be considered forfeited by buyer(s) to Seller as stipulated in the purchase agreement. Immediately upon collecting the Total Deposit the Seller shall, without delay, tender one-half (1/2) of the Total Deposit to the Agent as a service fee or as further agreed by the Agent and Seller.

**13. PRORATIONS AND REQUIRED FEE PAYMENTS:** All real estate taxes and leases due and payable, if any, shall be prorated to the date of closing, as is standard and common practice to the area in which the Property is located. All delinquent taxes, if any, shall be paid by the Seller from the first proceeds of closing. All deposits of tenants shall be turned over to the buyer at closing, if applicable and available.

**14. AGENT'S STATEMENTS:** Seller understands that the Agent must entice buyers to participate in the auction event. Seller hereinafter authorizes Agent to inform prospective buyers that they may anticipate paying at or below market or appraised value. Seller consents to Agent providing press releases and Agent may conduct interviews with media sources prior to and after the auction and to disclose any information unless otherwise deemed confidential in writing. Should Seller be contacted, through any method of in-person and/or electronic means, the Seller will inform the media that the Agent will be in contact with them by the next business day. The Agent requests that the Seller request from the media representative their identification information, but that is not a requirement of this Agreement.

**15. DISPUTE RESOLUTION AND VENUE:** This Agreement and the obligations of the parties hereunder shall be governed in all respects by the United States Bankruptcy Code and, lacking applicable law thereunder, the laws of the State of Texas. Any dispute arising under or in connection with this Agreement or related to any matter, which is the subject of this Agreement shall be subject to the exclusive jurisdiction and venue of the United States Bankruptcy Court for the Southern District of Texas.. To facilitate judicial resolution and save the parties time and expense, any right to trial by jury is hereby waived by the parties. The Agent and Seller further agree that whichever party prevails in the legal action shall have the right to collect all costs, fees, and expenses, including, but not limited to, reasonable attorney fees for enforcement or defense of its rights under this Agreement.

**16. SELLER'S OBLIGATIONS:** Seller shall (i) reasonably cooperate and use their best efforts to bring about a sale of the Property, (ii) assist in and/or pay the costs related to preparing the Property for the auction sale as requested by Agent, and (iii) provide Agent with any reasonably requested information to assist in the marketing or sale of the Property. Seller shall refer any and all inquiries regarding the Property to the Agent. Seller shall convey the Property by Special Warranty Deed or similar instrument from the owner(s) of record, subject to any easements and restrictions of record not adversely affecting title. Title to the Property shall be free and clear of any and all liens and encumbrances. If Seller fails to deliver free and clear

2



Initials: _____, _____, _____

title, the buyer is solely entitled to a return of the Total Deposit. If Seller fails to deliver free and clear title, Seller shall still be liable for the payment of any and all commissions or expenses due to the Agent as detailed in this Agreement and/or further expenses approved by Seller but yet unpaid.

The Seller specifically acknowledges and understands that where Seller knows of facts materially affecting the value or desirability of the Property, whether said facts are readily observable or not readily observable, the Seller is under a duty to disclose said facts to the Agent. Seller agrees to indemnify and hold harmless Agent and those relying thereon for damages resulting from the inaccuracy of said information and from Seller's failure to disclose any facts materially affecting the value or desirability of the Property.

All of Seller's Obligations under this Agreement are contingent upon approval of this agreement by the United States Bankruptcy Court for the Southern District of Texas.

**17. AGENT'S OBLIGATIONS:** Agent will use its best efforts to obtain the highest available bid for the Property at the auction sale and to endeavor to have the high bidder submit a written offer in the form of a deposit and receipt purchase contract in customary form conforming to the highest bid. Agent shall manage the marketing and advertising activities of this event and report to the Seller the response of the public to the marketing campaign. Agent may engage other real estate brokers and agents to place the Property into the multiple listing services and the Agent will be responsible for any associated costs or expenses. Agent is representing the Seller in this transaction and owes all fiduciary responsibilities to the Seller.

**18. INSPECTIONS:** Seller will allow Agent to enable prospective buyers to reasonably inspect the Property or have an inspector/engineer investigate and prepare a report before and/or after the auction. Allowing the buyer to inspect, survey or have professional reports prepared for their use does not negate or alter, in any manner, the "AS-IS, WHERE-IS" condition of the purchase by the buyer. All surveys and additional investigations of the Property shall be at the sole expense of the buyer. Buyer shall obtain acceptable proof of liability, health and/or workman's comp insurance specifically naming the Seller and Agent as an "Additional Insured Party" before undertaking any activity at the Property.

**19. CLOSING COSTS:** The Seller will pay for title insurance policy, deed preparation, pre-auction title search, and their own attorney fees, if any. The buyer shall pay all other costs of transfer and closing including title insurance policy, taxes due for the full current year and any future year. Should the Seller determine to have a certified land boundary survey completed prior to the auction then, unless otherwise noted, the Seller and buyer will equally divide and settle the cost for the land survey at closing.

**20. TERMS AND CONDITIONS:** The Property is sold in AS-IS, WHERE IS condition. The buyer(s) shall be responsible for their own inspection. In the purchase agreement, the buyer(s) will indemnify the Agent and Seller from any and all liability resulting from their purchase of the aforementioned Property and this release shall survive closing, indefinitely.

**21. ITEMS TO BE FURNISHED BY THE SELLERS:** Any appraisal, title opinion/policy, copy of current deed, copy of tax or utility bills, environmental studies, engineering/safety/occupancy study or report, plat, survey, lease agreement, etc. the Seller possesses or has reasonable access. These documents may be utilized in the marketing at the discretion of the Seller and Agent.

**22. AGENT'S NON-REPRESENTATION AND SELLER'S MOTIVATION:** Seller acknowledges that Agent has made no representation as to the appraised value or Total Sale Price that the market will produce. Seller is motivated and eager to sell the Property in an expeditious manner. Seller understands that an accelerated sale without buyer escape clauses in the purchase agreement offered in "AS-IS, WHERE-IS" condition may cause buyers to discount their offers to adjust for relinquishing their ability to furnish an offer with contingencies, repair allowances and on his/her timetable.

**23. HEADINGS:** The headings in this Agreement are for convenience only and are not a part of the Agreement of the parties, nor shall they be used to interpret this Agreement.

**24. SEVERABILITY:** If any part of this Agreement is invalid, unconstitutional, and/or unenforceable, the remainder of this Agreement shall continue to be valid, constitutional, and enforceable. This Agreement is the entire Agreement of the parties concerning the Agent's engagement, replacing all prior negotiations, representations and agreements. If Seller breaches this Agreement, Seller shall pay Agent any costs and fees, including attorney fees, incurred in enforcing or protecting its rights.

3

**tranzon**
A BETTER WAY TO REAL ESTATE

Initials: _____, _____, _____

**25. ATTACHMENTS:** Any future documentation, addendum or attachment shall be in writing, signed by all parties and attached to this Agreement.

**26. COPY:** Any copy of this Agreement, either by facsimile or duplicated via any electronic means shall have the same force and effect of the original document.

**27. COMPLIANCE WITH EQUAL RIGHTS AND EQUAL HOUSING GUIDELINES:** The parties to this Agreement shall comply with all local, state, and federal law or governing regulations regarding equal access, equal housing or equal rights, without exception.

**28. PERSONAL PROPERTY, FURNITURE, FIXTURES & EQUIPMENT:** _____

**29. ONLINE/INTERNET BIDDING:** In the event of a default on the purchase contract by a buyer or in the event of any failure by a high bidder to execute and deliver a purchase contract with additional deposit monies as required by the terms and conditions of the auction, any monies deposited by such buyer or bidder shall be forfeited. Notwithstanding the foregoing and notwithstanding any provision of the terms and conditions of the auction that might suggest otherwise, Seller acknowledges that credit card information is provided by registering bidders as a means of authenticating bidder identity and Agent will not likely be able effectively to charge a defaulting buyer or defaulting high bidder's credit card for any liquidated damages or other penalties. Agent cannot disclose max bids to the Seller for an online auction event. Additionally, Seller agrees not to hold the Agent responsible for any technical issues that may arise during an online auction event.

**30. ABSENTEE BIDDING PROCEDURES**: The Seller permits the Agent to accept telephonic, internet originated or absentee bids, if permitted by law, under the same terms and conditions as the auction is conducted to include bidder initial deposit requirements, acceptance of any special instructions, signing a binding purchase and sale agreement, and acceptance and acknowledgement of terms of sale by absentee bidder.

**31. OTHER REQUIRED DOCUMENTATION:** Due to local, state, or federal statute or regulation, there may be additional documentation that is required. Seller agrees to accept, approve, and file with Agent any required reports, disclosures, or forms without undue delay.

**32. PRE-AUCTION TITLE SEARCH:** Seller authorizes Agent to engage a nationally recognized title insurance provider through its local or regional agent, or a title company/attorney of the Seller's choosing, to perform a title search and issue a commitment for title insurance prior to the auction event. Commitment will be provided to prospective purchasers in order to provide assurance that they will receive free and clear title at closing, and that title insurance is available at closing, if the buyer elects to purchase said title insurance at their expense. The cost of this title search will be the responsibility of the Seller, at closing, as listed in Section 19 of this Agreement.

**33. SURVIVORSHIP OF AGREEMENT:** This Agreement, amendments, attachments, and codicils shall be binding on all parties, their heirs, administrators, assigns and trustees that may be assigned by any court of adequate jurisdiction and/or by previous agreement, corporate resolution and/or the binding will or estate instructions as applicable.

**34. FORCE MAJEURE:** Agent or Sellers shall not be required to perform any obligation under this Agreement or be liable to each other for damages so long as performance or non-performance of the obligation is disrupted, delayed, caused, or prevented by Force Majeure. "Force Majeure" is understood to mean hurricanes, epidemic and/or pandemics, floods, extreme weather, earthquakes, fire, or other acts of God, unusual transportation delays, wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods will be extended a reasonable time (to be interpreted as thirty (30) calendar days) after the Force Majeure no longer prevents performance under this Agreement.

**35. COUNTING TIME:** Time shall be considered as calendar days unless otherwise stipulated.

**36. TRANZON, LLC NOT A PARTY TO AGREEMENT:** Seller understands that Agent/Auction Firm is independently owned and operated and uses the Tranzon name by license from Tranzon, L.L.C., which is not a party to, and in no way is or will be involved in the sale of the Property listed in this Agreement.

4

Initials: _____, _____, _____

**Seller and Agent Acceptance of the terms of the Agreement.**

The undersigned Seller is the owner or agent of the owner of the Property and is duly authorized to contract for the legal sale of the Property, including attachments, appurtenances and legal right, title and interests the Seller holds. All parties to this Agreement hereby acknowledge and accept that this is the full and entire Agreement, any counterparts, exhibits and/or addenda to this Agreement shall be in writing, delivered either electronically, by post or express mail, by an agent of the sending party or personal delivery.

**SELLER:**      **CHRISTOPHER R. MURRAY AS CHAPTER 7 TRUSTEE FOR THE ESTATE OF ALEXANDER E. JONES & NOT INDIVIDUALLY**

BY: _____ Date: _____
           **Christopher R. Murray**
           **Chapter 7 Trustee**
           **602 Sawyer St, Ste. 400**
           **Houston, TX 77007**

**AGENT: TRANZON ASSET ADVISORS OF TEXAS, LLC**

BY: _____ Date: _____
           **Kelly D. Toney, CAI**
           **Executive Vice President**
           **945 McKinney St, #13384**
           **Houston, TX 77002**
           **TX Broker Lic. #0421809**
           **TX Auctioneer Lic. #11818**
           **Corp TX Broker Lic. #9008058**

NOTE: This is a binding Agreement to sell real estate; if any party does not understand any portion of this Agreement, please seek qualified legal counsel. Tranzon Asset Advisors is an independently owned and operated affiliate company of Tranzon, LLC, its successors, and assigns. Tranzon, LLC is only a support company that does not participate in nor have any responsibility in any particular auction event; Agent is solely responsible for the operations and management of this auction or sale event. © Copyright, Tranzon Asset Advisors 2023, all rights reserved.



Initials: _____, _____, _____

# EXHIBIT A

**1400 Barton Creek Blvd, Austin, TX 78735**
Legal Description: LOT 16 BARTON CREEK NORTH RIM


**5240 McCormick Mountain Dr, Austin, TX 78734**
Legal Description: LOT 3 BACK OF THE MOON SUBD AMEDNDED PLAT OF

**3540 Clawson Rd, #5, Austin, TX 78704**
Legal Description: UNT 5 BLD 3 ENCLAVE ON CLAWSON ROAD CONDOMINIUMS PLUS 12.5% INT IN COM AREA

**Legal Description: 3540 Clawson Rd, #6, Austin, TX 78704**
UNT 6 BLD 3 ENCLAVE ON CLAWSON ROAD CONDOMINIUMS PLUS 12.5% INT IN COM AREA

6

Initials: _____, _____, _____

**EXHIBIT B**

| | |
|---|---|
| Professional Photography | $ 5,000.00 |
| Social Media Marketing | $ 2,800.00 |
| Direct Mail Postcards | $ 4,125.00 |
| Targeted Email Blasts | $ 1,116.50 |
| Google Display | $ 2,500.00 |
| Promoted Listings on Specific Websites | $ 3,750.00 |
| Signage | $    850.00 |
| Print Advertising | $ 1,500.00 |
| Press Releases | $ 1,000.00 |
| **Total** | **$25,141.50** |

7



Initials: _____, _____, _____

8

