

EXHIBIT 1

December 2, 2024                                    **PERSONAL & CONFIDENTIAL**

Christopher Murray
Jones Murray LLP
602 Sawyer, Suite 400
Houston, TX 77007

      Case No: 22-33553, In re Alexander E. Jones ("Bankruptcy Case").

Dear Chris:

Thank you for selecting HMP Advisory Holdings, LLC, dba Harney Partners ("HP"), to provide consulting services to You in your capacity as Chapter 7 Trustee ("Trustee" or "Client"), for the bankruptcy estate of Alexander E. Jones, ("Estate"), Case No 22-33553 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division and the Estate's ownership interest in Free Speech Systems, LLC ("FSS"). We appreciate your confidence in HP and want to ensure that we exceed your expectations regarding the services we will provide. This letter agreement ("Agreement") will confirm Client's agreement to engage Karen Nicolaou and HP for the purpose of providing financial consulting, expert testimony (if required) and litigation support services on behalf of Client, as provided below.

**SERVICES AND SCOPE**

It is anticipated that HP will provide the following consulting and litigation support services to You, as follows (the "Services"):

(i)    <u>Preparation of MOR's:</u> Assist the Trustee in filing monthly operating reports relating to the operation of FSS.

(ii)    <u>Forensic Review of Books and Records of FSS:</u> Undertake a review of the books and records of FSS, initially from the time of conversion, June 14, 2024, to present date.

(iii)    <u>Litigation Support:</u> Assist in the evaluation and potential prosecution of claims and causes of action of the Estate and FSS.

(iv)    <u>Other Duties:</u>  Provide other services as agreed to by Client and HP from time to time to assist Client in his administration of the Estate and/or FSS.

The Services to be provided by HP will encompass all services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations and the scope of our engagement.  As you know, the exercise of professional judgment requires an open dialogue.  To provide you the best level of service, we will ask you to timely disclose all pertinent material information to us.

Christopher Murray
Chapter 7 Trustee for Alexander E. Jones
December 2, 2024
P a g e | 2
_____

## **TIMING**
We are ready to commence work immediately.

## **FEES**
The normal hourly rates for HP professionals are:

| | |
|---|---|
| President / EVP | $600 to $700 / hour |
| Managing Director | $500 to $600 / hour |
| Sr. Manager / Director | $400 to $500 / hour |
| Manager | $350 to $450 / hour |
| Sr. Consultant | $275 to $400 / hour |
| Support Staff | $180 to $275 / hour |

For this matter, the Services are anticipated to be provided by Karen Nicolaou (Managing Director) at a rate of $550/hour. She may be supported by a Senior Manager at a rate of $450/hour and/or a Senior Consultant at a rate of $350/hour. Consistent with HP's firm policy, a member of senior management will maintain a supervisory role regarding the delivery of the Services.  Specifically, Greg Milligan (Executive Vice President), at a rate of $675/hour, will assist with overall engagement matters and/or discrete project matters, as needed; however, for purposes of clarity, it is anticipated and intended that the vast majority of the hours billed for the Services will be provided by Ms. Nicolaou and other HP personnel at more junior staffing levels. Additional HP professionals may also participate on the project team as required to properly provide the Services.

Ms. Nicolaou and HP will be employed as Estate professionals under 11 USC §§ 327, 330 and 331. Fees for these Services will be subject to the Order on Interim Compensation procedures (Dkt 793).

Because these factors may evolve over time, HP may modify its hourly rates from time to time, but no more often than every 6 months.

## **TERMS**
This letter agreement incorporates the Standard Terms and Conditions set forth in the attached *Exhibit "A*.*"*

If a court determines that Ms. Nicolaou or Harney Partners is not qualified to testify in this matter, such determination will not be deemed a breach of this Agreement; and the Client will remain liable for payment of fees and expenses as set forth in this Agreement.

## **APPROVAL**
If this letter accurately represents the agreement between the parties, please sign as indicated below and return a PDF copy to gmilligan@harneypartners.com.

Again, thank you for the opportunity.  We look forward to working with you.

[Signature Page Follows]

Christopher Murray
Chapter 7 Trustee for Alexander E. Jones
December 2, 2024
P a g e | 3
_____

          Sincerely,

          **HARNEY PARTNERS**

          By: _____
               Gregory S. Milligan
               *Executive Vice President*

ACCEPTED AND AGREED AS TO FORM AND CONTENT

**Chirstopher Murray**
*In his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Alexander E. Jones, Case No 22-33553*

By: _____    Date: 12/6/2024
Chris Murray                                  _____

Christopher Murray
Chapter 7 Trustee for Alexander E. Jones
December 2, 2024
P a g e | 4

_____

### EXHIBIT "A"

### STANDARD TERMS AND CONDITIONS

1. **SERVICES**:
HMP Advisory Holdings, LLC, dba Harney Partners ("HP") will use reasonable efforts to perform the agreed-upon Services more fully described in the engagement letter to which these Standard Terms and Conditions are attached as *Exhibit "A."* The Client will provide HP with all resources (physical and human) reasonably requested by HP to enable HP to perform the Services.

2. **ACCESS TO CLIENT PERSONNEL AND INFORMATION AND CLIENT REPRESENTATION CONCERNING INFORMATION PROVIDED TO HP**:

    A. The Client recognizes and confirms that, in acting pursuant to this engagement, HP will be using information in reports and other information provided by others, including, without limitation, information provided by or on behalf of the Estate and/or FSS and other third parties. HP does not assume responsibility for and may rely, without independent verification, on the accuracy and completeness of any such reports and information. The Client will provide HP with full access to all Estate and/or FSS personnel, books and records, including those of attorneys for the Estate and FSS (subject to such safeguards as may be necessary to preserve applicable attorney-client privileged communications) and other agents and third-party representatives. The Client also represents and warrants to HP that except as disclosed to HP in writing, all information provided or made available to HP by the Client, his employees, representatives, attorneys and agents at any time shall (to the best of the Client's knowledge: i) be complete and correct in all material respects, and ii) not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements not misleading in light of the circumstances under which such statements are made. Client agrees that it shall notify HP if it learns subsequently that any information provided or made available to HP in accordance with this Agreement is incorrect, inaccurate, or otherwise should not be relied upon.

    B. The services to the Client under this Agreement may include the preparation of recommendations, projections, and other forward-looking statements. The Client acknowledges that numerous factors may affect the Client's actual financial and operational results, and that these results may materially and adversely differ from the recommendations and projections prepared, in whole or in part, by HP. The Client acknowledges that in rendering its services under this Agreement, HP will be using and relying upon the information provided by Client, his employees, representatives and agents.

Christopher Murray
Chapter 7 Trustee for Alexander E. Jones
December 2, 2024
P a g e | 5

_____

Under any of the foregoing circumstances, the Client agrees that HP shall have no duty to verify independently the reliability, accuracy or completeness of such information. The Client also agrees that HP shall incur no liability to the Client or any individual or other entity that may arise if any such information proves to be unreliable, inaccurate or incomplete.

3. **FEES AND EXPENSES**:

   A. All professional fees and expenses will be billed pursuant to the order on interim compensation procedures filed at Docket #793 in the Bankruptcy Case. All out-of-town travel time will be billed at 50% of such HP professional's applicable hourly billing rate.

   B. In the event HP is requested or authorized by the Client or is required by government regulation, subpoena, or other legal process to produce HP's documents or HP's members, employees, agents, contractors, or representatives as witnesses with respect to HP's services for the Client, the Client will reimburse HP for its professional time and expenses at the current rates in effect at such time.

4. **NO THIRD-PARTY BENEFICIARIES:**

The Client acknowledges that all information, whether written or oral, created, prepared, or compiled by HP in connection with this Agreement is intended solely for the benefit and use of the Client, provided however, HP acknowledges and agrees that Client shall utilize HP's work in his administration of the Estate. No other individual or entity shall be entitled to rely on such information for any purpose. Client agrees that such information shall not be reproduced, disseminated, quoted or referred to at any time or in any manner other than to the Client's employees, representatives, attorneys, and other agents who have a need to receive such information, except upon HP's prior written consent. Without limiting the foregoing, the Client shall not (and shall not authorize any other individual or entity to) use HP's name or make available to third parties any information created, prepared, or compiled by HP under this Agreement for any reason, including obtaining or extending credit, offering or setting securities or other assets, or in any representations to third parties without HP's prior written consent. It is also expressly agreed that notwithstanding the above restrictions upon the Client's dissemination and use of information and work product, HP shall have no responsibility or liability relating directly or indirectly to such disclosure (whether authorized or unauthorized) by the Client concerning any information created, prepared, or compiled, in whole or in part, by HP pursuant to this Agreement, which may be disclosed only after prior written approval by HP or as required by applicable laws, or regulatory or administrative process, including stock exchange rules. The foregoing provisions shall not be construed or interpreted to prohibit references to HP's engagement under this Agreement in required public filings or court documents.

Christopher Murray
Chapter 7 Trustee for Alexander E. Jones
December 2, 2024
P a g e | 6

───────────────────────────────

5. **TERMINATION:**

Unless otherwise specified in this Agreement, the engagement can be terminated by either party effective upon one-week written notice to the other party, provided that upon any such termination by the Client, , and subject to requisite approval in the Bankruptcy Case, the Client pays to HP all amounts due and owing hereunder prior to the effective date of termination. Either party shall have the right to terminate this engagement immediately if the other party materially breaches this agreement. The terms of this Exhibit "A" shall survive any termination or expiration of this Agreement or the engagement.

6. **INDEPENDENT CONTRACTOR:**

    A.   HP is an independent contractor under this Agreement, and accordingly, this Agreement shall not be an employment agreement. No one on behalf of any HP Party (as defined below), nor any employees, agents, or independent contractors thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent, or insider of the Client, unless expressly agreed to in a writing signed by both Client and HP. As an independent contractor, HP will have exclusive control over the management and operation of HP, including hiring and paying the wages or other compensation of its personnel. Unless expressly provided otherwise in this Agreement, HP personnel that provide services to the Client under this Agreement may also provide services to other HP clients (past, present or future) in connection with unrelated matters. In addition, HP may utilize the services of qualified project employers, to assist HP with its performance of its services pursuant to this Agreement.

    B.   In rendering its services to Client hereunder, HP is not assuming any responsibility for the Client's underlying business decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any transaction. HP shall not make decisions on behalf of or instead of the Client. The management and decision making of the Client shall, at all times, remain with the Client in accordance with his independent business judgment. HP and Client confirm that each will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other similar advice.

7. **NO FIDUCIARY RELATIONSHIP:**

Nothing in this Agreement is intended to create, or shall be deemed or construed to create a fiduciary relationship between: (a) the Client, including without limitation, the Client's employees, representatives, agents, or creditors, on the one hand: and (b) HP, HP's affiliates, and the respective directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, independent contractors, attorneys, agents, successors or assigns of HP or HP affiliates (all of the foregoing in this subpart (b) collectively, the "HP Parties," and each a "HP Party") on the other hand.

Christopher Murray
Chapter 7 Trustee for Alexander E. Jones
December 2, 2024
P a g e | 7

_____

8. **LIMITATION OF LIABILITY:**
Even if the remedies provided for in this Agreement fail of their essential purpose and even if HP has been advised of the possibility of the following damages, in no event shall any HP Party be liable to Client or to any other person or entity, under any equitable, common law, contractual, statutory, or other theory, for (i) any incidental, special, consequential, indirect, or punitive damages, (ii) any damages measured by lost profits, opportunities or goodwill, or (iii) any damages in excess of the fees paid by Client to HP during the six-month period immediately preceding HP's actual receipt of Client's first express, written assertion of such claim.

9. **INDEMNIFICATION:**
As part of the consideration for the Agreement of HP to furnish its services pursuant to this Agreement, Client agrees to indemnify and hold harmless the HP Parties to the fullest extent lawful from any and all claims, liabilities, losses, damages and expenses (or actions in respect thereof), as incurred, related to or arising out of or in connection with or related to this engagement, including, without limitation. any and all of such HP Parties' reasonable expenses incurred in connection with investigating, preparing, defending or settling any action or claim arising from or relating to such liabilities, including all of such HP Parties' reasonable legal fees and expenses: provided, however, that Client shall not be responsible for any losses, claims, damages, liabilities or expenses of any HP Party to the extent, and only to the extent, that it is finally judicially determined that they are due primarily to such HP Party's gross negligence or willful misconduct. The indemnity and expense reimbursement obligations set forth herein (i) shall be in addition to any liability Client may have to HP at common law or otherwise, (ii) shall survive the expiration of HP's engagement hereunder, (iii) shall apply to any modification of HP's engagement hereunder and shall remain in full force and effect following the completion or termination of the engagement as amended or modified, and (iv) shall be binding on any successor or assign of Client and its successors or assigns.

10. **NON-SOLICITATION:**

[INTENTIONALLY OMITTED]

11. **TRADEMARK LICENSE**:
HP shall have the right, during the term of this agreement and thereafter, to disclose Client's relationship as a Client or former Client of HP and to use Client's trade names, trademarks, service marks and logos, including but not limited to Alexander E. Jones and FSS (collectively, "Client's Marks") for that purpose in any medium. HP shall use Client's Marks in accordance with any commercially reasonable written trademark usage policies provided by Client to HP from time to time. Nothing herein shall affect Client's ownership of Client's Marks.

12. **GOVERNING LAW; VENUE; ARBITRATION; ATTORNEY'S FEES:**
THIS AGREEMENT AND ANY CLAIM RELATED DIRECTLY OR INDIRECTLY TO THIS AGREEMENT (INCLUDING ANY CLAIM CONCERNING ADVICE

Christopher Murray
Chapter 7 Trustee for Alexander E. Jones
December 2, 2024
P a g e | 8

_____

PROVIDED PURSUANT TO THIS AGREEMENT) SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS (EXCEPT ITS CONFLICTS OF LAWS PRINCIPLES).  THE EXCLUSIVE VENUE TO RESOLVE ANY DISPUTE RELATED IN ANY WAY TO THIS AGREEMENT OR THE SERVICES PROVIDED OR TO BE PROVIDED BY HP TO CLIENT SHALL LIE IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS. HP AND CLIENT HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING ARISING IN CONNECTION WITH OR AS A RESULT OF THE ENGAGEMENT PROVIDED FOR IN THIS AGREEMENT.

13. **MISCELLANEOUS**:

If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction to be void, invalid, or otherwise unenforceable, in whole or part, the remaining terms, provisions, covenants and restrictions contained in this Agreement shall remain in effect.  Client shall pay (or if HP pays, reimburse HP for) any applicable sales, use or similar tax imposed in connection with any sale of goods or services by HP to Client.  This Agreement supersedes any prior agreement, understanding, or representation between HP and Client, and can only be modified by a written document signed by both HP and Client, and approved by the Bankruptcy Court, if applicable.