**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | § Chapter 7 |
| | § |
| **ALEXANDER E. JONES,** | § Case No. 22-33553 (CML) |
| | § |
| Debtor. | § |

**TRUSTEE'S EMERGENCY MOTION TO STRIKE**
**ALEXANDER E. JONES RESPONSE AND OBJECTION TO**
**THE TRUSTEE'S EXPEDITED MOTION FOR ENTRY OF AN ORDER IN**
**<u>FURTHERANCE OF THE SALE OF ASSETS OF FREE SPEECH SYSTEMS, LLC</u>**
**[Relates to Docket Nos. 962 & 969]**

> **Emergency relief has been requested. Relief is requested not later than Monday, December 9, 2024, at 1:00 p.m.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **The Trustee requests that this motion be considered prior to hearings currently scheduled in this case on Monday, December 9, 2024, at 1:00 p.m. in Courtroom 401, fourth floor, 515 Rusk, Houston, Texas 77002.**
>
> **You may participate in the hearing either in person or by an audio and video connection**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoTo platform. Connect via the free GoTo application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez." Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "submit" to complete your appearance.**

1

15692546

Christopher R. Murray, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Alexander E. Jones ("Jones" or the "Debtor") files this emergency motion (the "Motion") seeking to strike the *Alexander E. Jones Response and Objection to the Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* [Docket No. 962] (the "Debtor's Objection") and the *Corrected Alexander E. Jones Response and Objection to the Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* [Docket No. 969] (the "Untimely Objection") filed by the Debtor. In support of this Motion, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Debtor does not own the assets the Trustee seeks to sell pursuant to the Sale Motion, they are property of FSS and his personal bankruptcy estate—which he notably failed to include on his sworn Schedules notwithstanding being given multiple opportunities to amend.[1] Nor does the Debtor own the equity in FSS Systems, LLC, which also constitutes property of the Debtor's personal bankruptcy estate. The Debtor's estate and its assets are encumbered by liquidated claims exceeding $1.4 billion and, even in a best-case scenario, unsecured creditors are likely to receive less than a 1% return in the Debtor's chapter 7 case. Accordingly, the relief requested in the Sale Motion has *no conceivable pecuniary impact on the Debtor*.

2. Despite this, the Debtor lodges an entirely baseless objection to the Sale Motion seeking to derail a Court-approved sale process and supplant both the Trustee's business judgment and the Trustee's authority granted under the Bankruptcy Code and Supplemental Dismissal Order (which the Debtor also never objected to or appealed). For good reason, the Bankruptcy Code does not leave room for such conduct. In a chapter 7 bankruptcy case, an insolvent debtor places

---

[1] Capitalized terms in this Preliminary Statement carry the meanings ascribed to them in the remainder of this Motion.

2

his non-exempt assets in the hands of a trustee who administers them for the benefit of creditors. Under this framework, the debtor's wants and desires are irrelevant to the fundamental objective of achieving the best result for creditors. Nothing in the Debtor's Objection dictates otherwise. Under any rational analysis, the Debtor is hopelessly insolvent, he lacks standing to oppose the Sale motion, and his Objection should be stricken.

## BACKGROUND

3.  The facts set forth in paragraphs 7–44 in the Trustee's *Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* [Docket No. 915] (the "Sale Motion") are fully incorporated as if restated herein.[2]

4.  On November 27, 2024, the Trustee filed a *Notice of Hybrid Hearing on Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* [Docket No. 944], which provided notice of a December 9, 2024 hearing on the Sale Motion (the "Sale Hearing") as well as the December 6, 2024 deadline to file any objections to the Sale Motion imposed by the Court at the November 25, 2024 hearing.

5.  On December 6, 2024, Jones filed the Debtor's Objection. That same day, the Connecticut appeals court issued an opinion affirming in part and reversing in part. Specifically, the court upheld the award of $965,000,000 in compensatory damages and $321,650,000 in common-law punitive damages, but reversed the award of $150,000,000 in statutory punitive damages (leaving roughly $1.3 billion of the judgment against Jones intact). *See Lafferty. v. Jones*, Case Nos. AC 46131, 446132 & 46133 (Conn. App. Dec. 10, 2024), attached hereto as **Exhibit A** (the "Connecticut Opinion").

6.  During the evening on December 8, 2024, Jones filed the Untimely Objection.

---

[2] Capitalized terms not otherwise defined herein carry the meanings ascribed to them in the Sale Motion.

15692546

**ARGUMENT**

**I.     The Trustee Does Not Seek to Sell Non-Estate or Exempt Property**

7.     Jones suggests that the Trustee is attempting to sell the Jones Persona and Jones IP Rights but that he is prohibited from doing so because he alleges they are his personal rights and are exempt property. *See Plaintiffs' Complaint and Emergency Application for Temporary Restraining Order and Preliminary Injunction Pursuant to Bankruptcy Rule 7065* [Docket No. 917] (the "Emergency Application"); *see also* Debtor's Objection at 1 (incorporating the arguments from Adv. P. No. 24-03238)

8.     As an initial matter, Jones mischaracterizes the Sale Motion as seeking to dispose of the "Jones Persona" and "Jones IP Rights," which Jones defines as follows:

> (i) internet domain names containing in whole or in part, the name Jones, "Alex Jones," 'Alex E. Jones," (ii) Jones's image or likeness, (iii) Jones's unique voice (iv) other features of Jones which are unique, defining and associated with him (which are called the "Jones Persona"), and (v) the program and broadcasting content Jones has made or which he has produced over the years for all of his media programs and outlets (which are herein called along with the Jones Persona, the "Jones IP Rights").

*See* Emergency Application at 2 n.1. The plain language of the Sale Motion and the Asset Purchase Agreement provides not only that no assets falling within categories (ii) to (iv) are in anyway involved in the sale, but the Assert Purchase Agreement specifically defined "Excluded Assets" to include the domain names fitting within (i). *See* Asset Purchase Agreement at Sched. 1.1(b)(xi). And while the Trustee does seek to sell certain intellectual property rights related to FSS's back catalog of videos and broadcasts (collectively, the "FSS IP Assets"), as set forth below, Jones is incorrect that such assets constitute non-estate or exempt property.

**A.     The FSS IP Assets Are Estate Property**

9.     Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Fifth Circuit instructs

courts to read section 541 "broadly . . . to 'include all kinds of property, including tangible or intangible property [and] causes of action." *In re Equinox Oil Co., Inc.*, 300 F.3d 614, 618 (5th Cir. 2002) (quotation omitted); *see also In re S. Coast Supply Co.*, 91 F.4th 376, 381–82 (5th Cir. 2024) (noting that Congress intended a broad range of property to be included in the estate and that "[t]he conditional, future, speculative, or equitable nature of an interest does not prevent it from being property of the bankruptcy estate," nor does the fact that rights were created by the Bankruptcy Code (quotation omitted)). This is because "[s]weeping all of the debtor's property into the bankruptcy estate created at filing is the means by which the Code achieves effective and equitable bankruptcy administration." *In re OGA Charters, L.L.C.*, 901 F.3d 599, 605 (5th Cir. 2018) (quotation omitted). Thus, "[s]ection 541 . . . provides that virtually all of a debtor's assets, including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition." *Kane v. National Union Fire Insurance Co.*, 535 F.3d 380, 385 (5th Cir. 2008). Indeed, as this Court has observed, "'All' is a broad term, but not an ambiguous one. We all know what 'all' means." *In re Envision Healthcare Corp.*, 655 B.R. 701, 709–10 (Bankr. S.D. Tex. 2023) (Lopez, J.).

10. Jones contends that the FSS IP Assets somehow escaped section 541's grasp. However, section 541 recognizes no such exception for rights associated with digital assets, which instead become property of the estate like virtually all other property of the Debtor. *See, e.g.*, *In re CTLI, LLC*, 528 B.R. 359, 366 (Bankr. S.D. Tex. 2015) (Bohm, J.) (finding social media accounts were property of the estate); *In re Vital Pharm.*, 652 B.R. 392, 413 (Bankr. S.D. Fla. 2023) (same). It is well settled that copyrights and other intangible assets belong to the estate—even if they contain an individual debtor's name. *See, e.g.*, *In re Money Ctrs. of Am.*, 2020 WL 6709971, at \*6 (D. Del. Nov. 16, 2020) (concluding that the "chriswolfington.com domain name

is property of [the debtor's] bankruptcy estate that he was required to disclose"); *In re Larry Koenig & Assoc., LLC*, 2004 WL 3244582, at *7–8 (Bankr. M.D. La. Mar. 31, 2004) (observing that intellectual property rights associated with books, manuals audio and videotapes created by a debtor in connection with his parenting seminar programs were property of his estate); *In re Dillon*, 219 B.R. 781, 784 (Bankr. M.D. Tenn. 1998) (finding that songwriters rights were estate property).[3] After all, "in most states, including Texas, the *persona* is recognized as a property interest, and therefore that falls within the broad reach of 'property of the estate.'" *CTLI*, 528 B.R. at 367 (quotation omitted). If Congress intended to exclude "persona" and "likeness" rights from estate property, it could have done so. Even if an interest in property is excepted from inclusion in the estate, debtors are not relieved from the obligation to fully disclose all assets in which they have an interest. Jones has no excuse for failing for disclose his belated claim to the so-called Jones Persona and Jones IP Rights.

11. As the Trustee seeks *only* to sell estate property and (as discussed more fully below) because Jones is hopelessly insolvent, he lacks standing with respect to the Objection. *See, e.g.*, *In re Baroni*, 643 B.R. 253, 285–86 (Bankr. C.D. Cal. 2022) ("[U]nless they demonstrate a pecuniary interest in the bankruptcy estate or in the asset or debt at issue, chapter 7 debtors lack standing to . . . object to the sale of assets of the estate."). Jones' complaints that the sale would lead to the "destruction of the Jones' property and property rights in both FSS and those jointly-owned assets" thus ring hollow as those are no longer his property rights to protect. Debtor's

---

[3] *See also See, e.g.*, *Money Ctrs.*, 2020 WL 6709971, at *6 (concluding that a domain name must be listed on the debtor's asset schedules and declining discharge under section 727 based on the debtor's failure to schedule a domain name); *In re Old Mkt. Group Holdings Corp.*, 2022 WL 4371544, at *8 (Bankr. S.D.N.Y. Sept. 21, 2022) ("[P]roperty of the estate encompasses both a debtor's tangible and intangible property, including 'the debtor's intellectual property, such as interests in patents, trademarks and copyrights.'" (quotation omitted)).

15692546

Objection ¶ 14; *cf.* Supplemental Dismissal Order (providing that all assets of FSS's estate are deemed property of Jones' estate and subject to the Trustee's control).

**B.     Jones' Failure to Schedule His Alleged Property Is Fatal to His Theories of Standing**

12.     It is beyond peradventure that Jones was required to schedule the FSS IP Assets if, as he contends, they are his property—and indeed, so personal to him that they cannot be owned by another.[4] *See In re Park*, 246 B.R. 837, 842 (Bankr. E.D. Tex. 2000) ("[T]he debtor is required to file comprehensive schedules . . . . The obligation is strict and the law requires such schedules to be as complete and accurate as possible. The burden is on the debtors to complete their schedules accurately."). However, notwithstanding multiple extensions and opportunities to make full and accurate disclosure of his property interests, Jones did not schedule the FSS IP Assets as his personal assets. *See Schedules A/B, C, D, E/F, G, H, I, J, and Summary of Assets and Liabilities* [Docket No. 749] (the "Schedules"). Indeed, Jones affirmatively represented he had no intellectual property interests in his sworn Schedules.

> 26. Patents, copyrights, trademarks, trade secrets, and other intellectual property
> *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
> ☑ No
> ☐ Yes. Give specific information about them. …

*See* Schedules at p. 19 (emphasis added).

13.     FFS, on the other hand, scheduled a number of the FSS IP Assets, such as the InfoWars and the Alex Jones Show Wordmarks, which are property of this estate and subject to

---

[4] *See also In re Comu*, 2014 WL 3339593, at *11 n.208 (Bankr. N.D. Tex. July 8, 2014) ("Domain names are assets that must be disclosed in bankruptcy."); *In re Luby*, 438 B.R. 817, 829–30 (Bankr. E.D. Pa. 2010) (denying discharge for failing to schedule, *inter alia*, domain names).

7

15692546

the Trustee's control pursuant to the Conversion Order, the Dismissal Order, and the Supplemental Dismissal Order.[5] Jones, having signed his Schedules, certified <u>under penalty of perjury</u> that the summary and Schedules filed with his declaration were true and correct. *See Schedules* at p. 54. He takes a different position now in an unsworn pleading because it is expedient for him to do so. Concealment of assets and such gamesmanship is strictly prohibited under the Bankruptcy Code and related laws.

14. Notably, Jones's subterfuge is not limited to misrepresentations in his sworn schedules; but extends to other conduct related to this bankruptcy case.

   a. <u>First</u>, on June 21, 2024, just after the Court entered the Dismissal Order in the FSS Bankruptcy Case, the Texas Families obtained an *ex parte* turnover order from the state district court in Travis County, Texas (the "<u>Turnover Order</u>") ordering FSS to immediately turn over *all* of its assets. Ultimately, the Court instructed that the Turnover Order had no effect on the Trustee's ability to sell FSS assets. Jones did nothing to oppose the Turnover Order or to prevent the turnover and transfer of intellectual property rights he now claims are his personal property and/or are jointly owned property with FSS.

   b. <u>Second</u>, Jones has asked this Court to deny the Sale Motion and authorize the Trustee to consummate a sale with the Back-Up Bidder, First United American Companies, LLC ("<u>FUAC</u>"). *See* Debtor's Objection ¶ 48. FUAC submitted a bid to acquire the very same assets as the Successful Bidder, including but not limited to the FSS IP Assets Jones so fervently contends are not transferable. Jones cannot have his cake and eat it too.

15. Jones expects this Court to overlook his disregard for the obligations he has as a debtor under section 521 and related laws. Remarkably, he appears to believe this Court will reward his misconduct in this Bankruptcy Case by denying the proposed sale to the Successful Bidder and authorizing a sale to the allied Back-Up Bidder. The Debtor's Objection is filed for an improper purpose—his belated assertion of certain property interests in which he previously disavowed any interest (due to his omissions from sworn schedules) is plainly self-serving. Jones

---

[5] It is most curious that Jones did not oppose FSS's characterization of FSS IP Assets on its schedules. If he believed he had any rights in assets claimed by FSS as its property, he could have disclosed any such disputed interest in the schedules he filed upon conversion of his personal chapter 7 case. He did not. And the parties and the Court have relied, to their detriment, upon his sworn (mis)representations.

8

15692546

wants one thing: to help FUAC acquire FSS assets with an objectively inferior bid so that he can continue to create content under the "InfoWars" brand. Jones is so hopelessly insolvent that he has no real motivation to consider the best interests of creditors—he is singularly focused on what is in *his* own best interests. This is precisely the reason that a debtor with no pecuniary interest does not and should not have standing to object to the sale of estate assets under the Bankruptcy Code. Jones's failure to schedule the FSS IP Assets, much less claim any property exemption, precludes him from now asserting an interest in them to try to thwart a sale that is in the best interests of creditors.

1. **Assets that Jones Failed to Schedule Cannot Revert to Him**

16. Jones suggests that if he prevails on his appeal of the state court judgments, he will be entitled to a return of the FSS IP Assets and therefore, because the sale of the assets would harm them, he has a pecuniary interest in the sale. *See* Debtor's Objection ¶ 14. Although he neglects to specify the exact mechanism, it appears he is suggesting that once all of his debts are paid, the remaining estate property will revert to him under section 554(c). This argument fails.

17. Upon filing for bankruptcy, Jones had an "affirmative duty" under the Bankruptcy Code "to schedule his assets and liabilities and cooperate with the trustee." *In re McLain*, 516 F.3d 301, 315 (5th Cir. 2008). His failure to do so with respect to the FSS IP Assets means that "those assets continue to belong to the bankruptcy estate and do not revert to the debtor upon discharge." *Id.* at 315. Jones cannot benefit from his abdication of his obligations as a debtor. *See Love v. Tyson Foods, Inc.*, 677 F.3d 258, 269 (5th Cir. 2012) ("If property was not properly scheduled by the debtor, it is not automatically abandoned at the end of the case . . . . Even after the case is closed, the estate continues to retain its interest in unscheduled property." (quotation omitted)). Accordingly, Jones cannot claim a contingent future springing "reversionary" interest in the FSS IP Assets to manufacture standing to object to the proposed sale.

9

### 2. Jones Cannot Claim an Exemption with Respect to the FSS IP Assets

18. Alternatively, Jones contends that the FSS IP Assets are his exempt property. This argument also fails:

   a. <u>First</u>, Jones's claimed exemptions have not yet been allowed, so none of his property is currently exempt.[6]

   b. <u>Second</u>, Jones elected to use Texas state exemptions pursuant to section 522(b)(3). There are no known property exemptions under Texas law that would exempt the FSS IP Assets.

   c. <u>Third</u>, Jones did not schedule any interest in the FSS IP Assets (or any intellectual property) in his Schedule A/B (property schedules) or his Schedule C (exempt property).[7] It is axiomatic that for a debtor to have exempt property, they must (*at the very least*) actually claim an exemption for that property.

19. Indeed, "[i]t is elementary that assets not scheduled and not claimed as exempt cannot be allowed as exempt." *In re Reeves*, 509 B.R. 35, 73 (Bankr. S.D. Tex. 2014) (quotation omitted). Courts frequently apply equitable principles, such as the doctrine of judicial estoppel, to prevent debtors from making assertions that are at odds with their bankruptcy schedules.[8] *See, e.g.*, *In re Coastal Plains, Inc.*, 179 F.3d 197, 206–07 (5th Cir. 1999); *In re DeRosa-Grund*, 544 B.R. 339, 384–85 (Bankr. S.D. Tex. 2016) (exercising its section 105 powers and concluding that a debtor was judicially estopped from claiming a previously undisclosed asset as exempt property); *In re Walker*, 323 B.R. 188, 195–98 (Bankr. S.D. Tex. 2005). After all, the bankruptcy system relies on accurate, complete, and timely disclosures of information, and courts do not take a

---

[6] *See Stipulation and Agreed Order Extending the Deadline to Object to Debtor's Claimed Exemptions* [Docket No. 945] (extending the objection deadline to January 13, 2025).

[7] *See* Schedules at p. 19; *see also* Schedules at p. 26.

[8] *See also DeRosa-Grund*, 544 B.R. at 370 ("In a bankruptcy case, judicial estoppel both deters the dishonest debtors—whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system—and protects the rights of creditors to an equitable distribution of the estate's assets." (quotation omitted)); *In re McDowell*, 2013 WL 587312 (Bankr. S.D. Tex. Feb. 14, 2013) ("The underlying notion behind applying principles of judicial estoppel in bankruptcy cases is that 'the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.'" (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)).

debtor's shortcomings in this regard lightly. *See Park*, 246 B.R. at 843–44. The Debtor's failure to schedule or designate <u>any intellectual property rights</u>, much less the FSS IP Assets, is fatal to Jones' exemption argument.

## II. The Debtor Has No Pecuniary Interest in the Outcome of the Sale Motion

20. "'Bankruptcy standing' is a form of prudential standing that is more narrow and exacting than constitutional standing under Article III." *In re Howard*, 533 B.R. 532, 543 (Bankr. S.D. Miss. 2015). To appear in a bankruptcy proceeding, including to raise an objection to a section 363 sale, one must have a pecuniary interest that will be directly and adversely affected such that it is a "party in interest." *See In re Cyrus II P'ship*, 358 B.R. 311, 315 (Bankr. S.D. Tex. 2007) (Isgur, J.); *see also In re Adams*, 424 B.R. 434, 435 (Bankr. N.D. Ill. 2010) (requiring a "pecuniary interest in the outcome of the bankruptcy proceedings" to object to a sale (quotation omitted)); *In re Caldor, Inc. NY*, 193 B.R. 182, 187 (Bankr. S.D.N.Y. 1996) (same).

21. In fact, chapter 7 debtors rarely possess a sufficient pecuniary interest in bankruptcy proceedings to give rise to standing to even object. *See, e.g.*, *In re Baroni*, 643 B.R. 253, 285–86 (Bankr. C.D. Cal. 2022) (collecting examples of objections for which debtors lack standing); *see also In re Cyrus II P'ship*, 358 B.R. at 315 ("Generally, chapter 7 debtors are not considered persons with a pecuniary interest in the estate."). The instant case falls well within the "general rule" that "the debtor in a liquidation proceeding is hopelessly insolvent, and thus has no pecuniary interest in the administration of the estate." *In re Solomon*, 129 F.3d 608, at *6 n.10 (5th Cir. 1997) (unpublished).[9] This rule reflects the reality that "no matter how the estate's assets are

---

[9] There are limited exceptions to the general rule, such as where there is a non-speculative potential the debtor will receive a distribution or questions of dischargeability or exempt property, but none are implicated here. *See generally In re Technicool Sys., Inc.*, 896 F.3d 382, 386 (5th Cir. 2018) (finding no standing where the "speculative prospect of harm is far from a direct, adverse, pecuniary hit").

disbursed by the trustee, no assets will revert to the debtor." *Novoa v. Esparza*, 2014 WL 10186158, at *2 (W.D. Tex. Oct. 15, 2014) (quotation omitted). Courts across the nation have routinely applied this rule to preclude a debtor's objection to a sale. *See, e.g.*, *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000); *In re Quanalyze Oil & Gas Corp.*, 250 B.R. 83, 89–90 (Bankr. W.D. Tex. 2000); *In re Hutter*, 215 B.R. 308, 312 (Bankr. D. Conn. 1997).

22. The Debtor's Objection relies primarily on *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268 (2024), which Jones asserts stands for the proposition that standing requires only that he be "potentially concerned with, or affected by, a proceeding." Debtor's Objection ¶ 12. However, *Kaiser Gypsum* is clearly distinguishable. For one, it is a chapter 11 case interpreting section 1109 and does not purport to address or change the longstanding rule regarding standing in a chapter 7 liquidation. *Cf. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 8 (2000) (stating, in a chapter 7 case, that section 1109's language regarding a "party in interest" was "by its terms inapplicable here").[10] In fact, the additional case Jones relies upon, *In re Team Sys. Int'l, LLC*, 2024 WL 4647489 (Bankr. D. Del. Oct. 21, 2024), actually demonstrates that the rule precluding standing to hopelessly insolvent debtors survived *Kaiser Gypsum*. *Id.* at *2 (discussing *Kaiser Gypsum* yet <u>still requiring a possibility of a surplus</u>). Cases issued after *Kaiser Gypsum*, including by the Fifth Circuit (albeit in a slightly different context), similarly continue to require a possibility of a surplus. *See, e.g.*, *In re Okorie*, 2024 WL 4471734, at *2 (5th Cir. Oct. 11, 2024) (requiring equity interest holders to demonstrate the possibility of a

---

[10] *See also* 9 COLLIER ON BANKRUPTCY ¶ 3007.01[2] n. 19 ("The term 'party in interest' may have a different meaning from section to section, and a 'party in interest' under section 1109(b), for example, will not necessarily be a party in interest in a chapter 7 case."). In fact, as *Collier's* explains, the broad construction of section 1109 reflects the policies of the chapter 11 process, which was "was designed to provide a forum for the negotiated resolution of the debtor's case in a manner that is as inclusive and accommodating as possible." 7 COLLIER ON BANKRUPTCY ¶ 1109.01[3][a]. "Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors." *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 389 (1993).

surplus); *In re Ghatanfard*, 2024 WL 4707931, at *3 (S.D.N.Y. Nov. 7, 2024) (applying the general rule); *In re O'Hara*, 2024 WL 4438720, at *1 & n.2 (Bankr. W.D. Mich. Oct. 5, 2024) (same); *White-Lett v. RRA CP Opportunity Tr. 1*, 2024 WL 4331925, at *7 (N.D. Ga. Aug. 19, 2024) (same).

23. By any definition, Jones's bankruptcy estate is "hopelessly insolvent." There are almost $1.4 billion in claims—a sum that dwarfs the value of the assets of his estate. And although Jones argues that *he is appealing* the state court judgments, on December 6, 2024, the Connecticut appellate court upheld approximately $1.3 billion in judgments against FSS and Jones. *See Lafferty l. v. Jones*, Case Nos. AC 46131, 446132 & 46133 (Conn. App. Dec. 10, 2024). Even if that decision was further appealed, Jones needs a clean sweep of both the Texas and Connecticut judgments in order to have any hope of a surplus. To illustrate, merely reducing his debt by $1 billion would still not create even a remote possibility of a surplus. The Fifth Circuit is clear that there is no standing where "speculative prospect of harm is far from a direct, adverse, pecuniary hit." *In re Technicool Sys., Inc.*, 896 F.3d 382, 386 (5th Cir. 2018). Jones may not like the state court judgments, but that does not mean he can ignore them to create standing here based on the mere suggestion he may one day be able to recover the assets slated for sale. *See In re Gentile*, 492 B.R. 580, 584–85 (B.A.P. 1st Cir. 2013) (rejecting chapter 7 debtors' argument that the pending appeal of a state court judgment required staying a section 363 sale of their investment properties given the potential of a surplus should they prevail).

24. Perhaps recognizing that there is no conceivable surplus from the estate, Jones further argues that the sale to the Successful Bidder would harm his personal brand and ability to act as a media figure. *See* Debtor's Objection ¶¶ 13–14. Courts have rejected the notion that the risk of reputational harm can create bankruptcy standing, particularly when none of the creditors

13

have objected. *See In re WBE Co., Inc.*, 2010 WL 2867426, at *5 (Bankr. D. Neb. July 20, 2010) (describing the debtor's standing to object to a compromise as "tenuous," where although there was a realistic possibility of a surplus, the objection was based more on reputational impact and no creditor objected); *see also In re Davidson*, 402 B.R. 87, 8827 (Bankr. S.D. Ind. 2009) (holding that only pecuniary (i.e., monetary) interests confer standing to object).[11] Speculative, indirect impacts of a bankruptcy order do not confer standing. *In re The Watch Ltd.*, 257 F. App'x 748, at *2 (5th Cir. 2007) (unpublished) ("Conjectural or hypothetical injuries do not support standing."); *Adams*, 424 B.R. at 437 (notwithstanding that a higher sale price could reduce the debtors' post-bankruptcy liability, the fact they would never receive a distribution precluded standing).

25. Accordingly, because the Debtor lacks standing with respect to the Sale Motion, he cannot be permitted to prosecute the Debtor's Objection. *See, e.g.*, *In re Morreale*, 2015 WL 3897796, at *7–10, 13 (Bankr. D. Colo. June 22, 2015) (striking a chapter 7 debtor's objections to a trustee's sale motions).

### III. Jones Cannot Assert the Rights of Third Parties

26. Although PQPR itself has not objected to the Sale Motion, the Debtor's Objection makes a passing reference to PQPR's purported liens (which are themselves subject to an adversary proceeding) and the Texas Plaintiffs' state court turnover order. This is not Jones' complaint to raise because he lacks standing. Specifically, a litigant lacks standing to raise the rights of third parties unless "three important criteria are satisfied: The litigant must have suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some

---

[11] After all, the party objecting to the plan *Kaiser Gypsum* was an insurer with responsibility for bankruptcy claims, and thus directly and adversely affected by the plan. *Kaiser Gypsum.*, 602 U.S. at 277.

hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991). Jones does not (and cannot) satisfy these standards.

27.     Accordingly, he lacks standing to object based on the alleged rights of PQPR or the Texas Plaintiffs, which have not raised those objections to the proposed sale. *See Cole v. Rescia*, 2022 WL 4536830, at *9 (D. Conn. Sept. 28, 2022) (holding that the chapter 7 debtor could not object to a sale on the grounds that the trustee sought to sell property belonging to the debtor's business partner).

**IV.     Jones Does Not Have Standing to Appeal the State Court Judgment on Behalf of FSS**

28.     The assumption underlying much of the Debtor's Objection is that both the Texas and Connecticut state court judgments will be overturned on appeal. The Connecticut Opinion has now been issued and largely held against Jones, whereas the appeal of the Texas judgment has been abated by agreement of the parties. *See* Ex. A; *see also Jones v. Heslin*, No. 03-23-00209-CV (Tex. App.—Austin, Sept. 9, 2024). While Jones insists he will pursue these appeals (and ultimately prevail), he overlooks that, according to the Fifth Circuit, "it is well established that the right to appeal is property of the estate."[12] *In re Croft*, 737 F.3d 372, 377–78 (5th Cir. 2013).[13]

29.     It is not Jones' prerogative, at this juncture, to elect to continue the appeal of the Texas judgment or launch an additional appeal of the Connecticut judgment.

---

[12] Further, the fact a debt may be non-dischargeable does not alter this conclusion, as one of the cases relied on by the Fifth Circuit demonstrates. *In re Mozer*, 302 B.R. 892, 896 (C.D. Cal. 2003) ("To be sure, sale of the Defensive Appellate Rights may be unhelpful to her in defeating a non-dischargeability claim, but she is in no worse position than if she were permitted to pursue the state court appeal and lost.").

[13] *Accord Krafick v. Krafick*, 663 A.2d 365, 370–71 (Conn. 1995) (endorsing *Black's* definition of "property" as "everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. It extends to every species of valuable right and interest, and includes real and personal property, easements, franchises, and incorporeal hereditaments.").

15692546

## V.      The Court Should Strike the Untimely Objection

30.     At the November 25, 204 hearing, the Court established a deadline of 5:00 p.m. CST on December 6, 2024, to file objections to the Sale Motion. In complete disregard of this deadline, Jones filed the Untimely Objection. And although Jones styles it as a "Corrected" objection, he admits that the Untimely Objection does not simply correct the Debtor's Objection but has "been further updated with certain testimony of the Trustee and the Auctioneer." A comparison of the two filings reveals Jones' supplementation of the Debtor's Objection was both substantial and substantive.

31.     Accordingly, the Trustee moves to strike the Untimely Objection on this basis, and should the Court choose to excuse Jones' tardiness, the Trustee incorporates the arguments made against the Debtor's Objection and further reserves to respond to the new material added by the Untimely Objection.

## **CONCLUSION**

WHEREFORE, in light of the hopelessly insolvent nature of both FSS and the Jones estate and the Debtor's failure to schedule, much less claim as exempt, the FSS IP Assets, the Trustee respectfully requests that the Court strike (a) the Debtor's Objection and the Untimely Objection with prejudice based on Jones's lack of standing, (b) grant the Sale Motion, and (c) grant the Trustee all such other and further relief to which he is justly entitled.

Dated:  December 8, 2024
Houston, Texas.

                    Respectfully submitted,

                    By: */s/ Joshua W. Wolfshohl*
                    Joshua W. Wolfshohl (Bar No. 24038592)
                    Michael B. Dearman (Bar No. 24116270)
                    Jordan T. Stevens (Bar No. 24106467)
                    Kenesha L. Starling (Bar No.24114906)
                    **Porter Hedges LLP**
                    1000 Main Street, 36th Floor
                    Houston, Texas 77002
                    Telephone: (713) 226-6000
                    Facsimile: (713) 226-6248
                    jwolfshohl@porterhedges.com
                    mdearman@porterhedges.com
                    jstevens@porterhedges.com
                    kstarling@porterhedges.com

                    *and*

                    Erin E. Jones (TX 24032478)
                    **Jones Murray LLP**
                    602 Sawyer Street, Suite 400
                    Houston, Texas 77007
                    Telephone: (832) 529-1999
                    Fax: (832) 529-3393
                    erin@jonesmurray.com

                    *Counsel for Christopher R. Murray, Chapter 7 Trustee*

17

15692546

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing objection has been served on all parties receiving or entitled to notice through CM/ECF in the above-captioned proceeding on December 8, 2024.

                                                */s/ Joshua W. Wolfshohl*
                                                Joshua W. Wolfshohl