IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) ) ) Chapter 7 ) |
| ALEXANDER E. JONES, | ) Case No. 22-33553 (CML) ) |
| Debtor. | ) ) ) |

**CONNECTICUT FAMILIES'
REPLY (I) IN FURTHER SUPPORT OF THE TRUSTEE'S EMERGENCY
MOTION FOR ENTRY OF AN ORDER IN FURTHERANCE OF THE SALE OF
ASSETS OF FREE SPEECH SYSTEMS, LLC AND (II) IN OPPOSITION TO (A) THE
EMERGENCY MOTION TO DISQUALIFY GLOBAL TETRAHEDRON, LLC'S BID
AND (B) THE PLAINTIFFS' COMPLAINT AND EMERGENCY APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

The Connecticut Families,[1] as creditors and joint bidders with Global Tetrahedron, LLC ("Global Tetrahedron") in the above captioned case, respectfully submit this reply (a) in further support of the sale of Free Speech Systems, LLC's ("FSS") assets, as requested in the *Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* [Docket No. 915] (the "Sale Motion"), filed by the Chapter 7 Trustee (the "Trustee") appointed in the above-captioned case, and (b) in opposition to (i) *First United American Companies, LLC's Response to Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC, and Objection to the Proposed Sale to Global Tetrahedron, LLC* (the "FUAC Objection") [Docket No. 963], filed by First United American Companies, LLC ("FUAC") and (ii) *Alexander E. Jones Response and Objection to the Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of*

---

[1] The "Connecticut Families" are Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, and Erica Ash.

1

*Assets of Free Speech Systems, LLC* [Docket No. 962] (the "Jones Objection" and together with the FUAC Objection, the "Objections"), filed by debtor Alexander E. Jones ("Jones" and together with FUAC, the "Objectors"). The Connecticut Families respectfully state as follows:[2]

1. The sole issue in connection with the Sale Motion is whether the Trustee appropriately exercised his business judgment. This is not a case about collusion, bad faith, or illicit "schemes" because, as the Court will quickly realize at the evidentiary hearing, there is no evidence to support those self-serving allegations. These allegations are designed to—at best—distract from the central question of whether the Trustee—an estate fiduciary—reasonably exercised his business judgement in determining the winning bidder.

2. The Objections raise two core questions as to whether the Trustee appropriately exercised his reasonable business judgment. *First*, FUAC and Jones argue that the Trustee was not entitled to ascribe value to the "Distributable Proceeds Waiver" in the Successful Bid. In their view, the Trustee was only permitted to consider and/or accept an all-cash bid. *Second*, the objectors argue that the Trustee was required to hold a "live" auction, and that the Trustee's decision to conduct the auction via a sealed, "best and final" second round of bids was improper. Each of these arguments are wrong, and such complaints do not provide a basis for this Court to overrule the Trustee's business judgment.

   A. **The Trustee Appropriately Valued The Distributable Proceeds Waiver**

3. At their core, the Objections challenge the Trustee's determination to ascribe value to the Distributable Proceeds Waiver, by which the Connecticut Families agreed to forego a significant portion of the Cash Purchase Price so that other creditors of FSS would recover more pursuant to the Successful Bid than they would under the Backup Bid proposed by FUAC.

---

[2] Capitalized terms used herein but otherwise not defined have the meanings ascribed to them in the Sale Motion or the *Trustee's Motion for Entry of an Order Authorizing the Winddown of Free Speech Systems, LLC* [Docket No. 829], as applicable.

2

Notwithstanding FUAC's and Jones' vociferous attacks, the Distributable Proceeds Waiver clearly provides value to the FSS estate that the Trustee was entitled to consider.

4. *First,* the best evidence that the Distributable Proceeds Waiver provides significant value to the FSS estate is the fact that not a **single creditor** has objected to the Sale Motion or raised an objection to the Distributable Proceeds Waiver. If it were true that the Distributable Proceeds Waiver "provides zero value to the estate," FUAC Obj. ¶ 4, one would expect that other creditors would oppose the Sale Motion and demand that the Trustee accept the Backup Bid. Instead, the largest creditor constituency outside of the Connecticut Families simply filed a statement reserving rights with respect to how sale proceeds would be distributed.[3] No other creditors, including PQPR, have objected to the Sale Motion. As these creditors impliedly recognize, the Successful Bid provides value—indeed, the highest value—to FSS's creditors. And as the Court will soon hear, the Trustee thoroughly analyzed the effect of accepting the Successful Bid on all other FSS creditor constituencies and arrived at the same conclusion.

5. While FUAC and Jones stress the purportedly unprecedented and novel use of the Distributable Proceeds Waiver (more on that, below) they ignore a more fundamental anomaly: it would be truly unprecedented for this Court to supplant the business judgement of the Trustee and deny the Sale Motion when not a single creditor opposes the proposed sale. As this Court is well aware, all parties with an economic stake in this case are ably and well represented by counsel; denying the Sale Motion serves no creditor's interest and instead only furthers the interests of FUAC and Jones.[4]

---

[3]  *Statement of the Texas Plaintiffs on the Chapter 7 Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* [Docket No. 961].

[4]  The precise relationship between FUAC and Jones has never been disclosed. According to Jones, there is a formal agreement between Jones and FUAC that would resolve all of the issues Jones raises with the Successful

3

6.  *Second*, the primary basis for FUAC and Jones to attack the value of the Distributable Proceeds Waiver is their argument that the Connecticut Families' claims are "impossible to value." FUAC Obj. ¶ 52. This is not so. The amount of the Connecticut Families' claims are fully liquidated and set forth in proofs of claims filed against FSS. No party has ever objected to the Connecticut Families' claims against FSS. The Trustee was therefore not "guessing" when he assessed the value of the Distributable Proceeds Waiver.

7.  The Objectors place significant weight on the prospect that the Connecticut Families' claims might be overturned on appeal. But last Friday, the Connecticut Appellate Court rendered its appellate decision in *Lafferty* v. *Jones*, AC 46131, at 49 (Con. App. Ct. 2024), which is attached hereto as **Exhibit A**. The Connecticut Appellate Court ***affirmed $1.3 billion*** of the Connecticut Families' claims, including 100% of the $965,000,000 in compensatory damages awarded by the jury and 100% of the nearly $300,000,000 in common law punitive damages. The Connecticut Appellate Court did, however, overturn the $150,000,000 in punitive damages under the Connecticut Unfair Trade Practices Act, meaning that—subject to further appeals—$1.3 billion of the Connecticut Families' claims have already been affirmed on appeal.

8.  The recent affirmance by the Connecticut Appellate Court guts the Objectors' position that the Distributable Proceeds Waiver lacks value. For example, FUAC states that "the sheer magnitude of the dollar amount of the judgment should give any court pause to accept it at face value before the appeal process runs its course." FUAC Obj. ¶ 52. But the Connecticut Appellate Court took up this exact argument, concluding that "[o]ur review of the record reveals that there was sufficient evidence to support the $965,000,000 in compensatory damages

---

Bid. *See* Jones Obj. ¶ 28 ("Each of these issues, or all of these issues, have been resolved between Jones and FUAC Bidder, through Jones commitment to continue to be employed and continue to work and develop the co-interest in all FSS property purchased by FUAC.") Such agreements have not been disclosed to the Court or the Trustee, and the Connecticut Families reserve all rights with respect thereto.

awarded by the jury." *Lafferty* v. *Jones*, AC 46131, at 49 (Con. App. Ct. 2024). After recounting the evidence presented to the jury, the Connecticut Appellate Court held: "In sum, we agree with the court that the evidence supported the jury's verdict and, although substantial, the verdict did not 'so shock the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.'" *Id.* at 50–51. Nor—to the extent that Jones raised them at all on appeal in Connecticut— did the Connecticut Appellate Court credit any of Jones' First Amendment or other Constitutional arguments that he repeatedly invokes in this Court to collaterally attack the judgments in favor of the Connecticut Families.

9. Similarly, the recent affirmance by the Connecticut Appellate Court also confirms, indeed strengthens, the Trustee's business judgment in valuing the Distributable Proceeds Waiver.

10. The Trustee also reasonably valued the amount of the Connecticut Families' claims vis-à-vis the Texas Families' claims. The Texas Families previously reached an agreement with FSS and Jones valuing the Texas Families' unliquidated claims in certain, fixed amounts.[5] Although such settlement was never approved, and the Connecticut Families reserve all rights with respect to such settlement amounts, it was certainly reasonable—albeit conservative—for the Trustee to take the Texas Families' own word (as previously agreed with Jones and FSS) as to the value of their claims for purposes of analyzing whether the Successful Bid is the "highest or best" bid. As set forth in paragraph 43 of the Sale Motion and the revised Proposed Sale Order, the Distributable Proceeds Waiver Amount has been calculated based on these conservative assumptions.

---

[5] See *Debtors' Motion for Approval of Compromise and Settlement Under Federal Rule of Bankruptcy Procedure 9019* [Docket No. 324] and the related *Agreed Order on Debtors' Motion for Approval of Compromise and Settlement Under Federal Rule of Bankruptcy Procedure 9019* [Docket No. 359]; *see also* Exhibit A to *Debtor's Amended Plan of Reorganization* [Docket No. 590].

11.     *Third*, the Objectors argue that the Distributable Proceeds Waiver was impermissible because it was a form of non-cash consideration. *See, e.g.*, Jones Obj. ¶ 3 ("[I]n lieu of a cash payment, the Connecticut Plaintiffs developed a scheme[.]"); FUAC Obj ¶ 9 ("[S]ome bidders were required to submit firm cash offers[.]"). The Winndown Order[6] and Overbid Instructions[7] each explicitly contemplated "non-cash components" of bids. *See* Winndown Order at 6; Overbid Instructions at § 2. And nowhere in the Winndown Order, Offering Memorandum,[8] or Overbid Instructions was the Trustee prohibited from accepting non-cash consideration.

12.     There is simply no precedent for the contention that a bankruptcy trustee must only consider cash consideration in making its determinations about what brings the most value to an estate's creditors. For good and obvious reasons: very often non-cash consideration brings significant value to creditors. The most common example in bankruptcy sales is a buyers' assumption of liabilities as part of a sale. By assuming a contract or other liability, a buyer reduces the liabilities of the estate, and therefore the remaining creditors recover more from the cash proceeds the estate receives. The Distributable Proceeds Waiver works in the same manner. A debtor or trustee is entitled to value such non-cash consideration and compare it to other bids that lack similar forms of non-cash consideration. And there is no rule that such consideration can only "count" if there has been a final order determining that the liabilities assumed are valid; a buyer may assume disputed liabilities (*i.e.,* a lease in which there is dispute over outstanding amounts) and, provided that there is adequate assurance of future performance, later determine the appropriate cure amount. Ultimately, the assumption of liabilities, earn-outs, contingent

---

[6]   The "Winndown Order" refers to the *Order Granting Trustee's Motion for Entry of an Order Authorizing the Winndown of Free Speech Systems, LLC* [Docket No. 859].

[7]   The "Overbid Instructions" refers to the *IP Assets Auction Bid Instructions* attached hereto as **Exhibit B**.

[8]   The "Offering Memorandum" refers to the *Sealed Bid Offering* attached hereto **Exhibit C**.

value rights, and deferred purchase prices are all common and routine examples of non-cash consideration that may not have a fixed value on the date of a sale closing but that constitute value that a trustee may consider. The argument that the Trustee should not have evaluated the Distributable Proceeds Waiver because it was not a "firm cash" offer is simply unmoored from both the bidding procedures and the basic realities of corporate sales.

13. Similarly, the possibility that the Distributable Proceeds Waiver Amount may later change based on the final allowance of claims against FSS does not render the Successful Bid "contingent." As set forth in the revised order approving the Sale Motion, the Connecticut Families have agreed that the Distributable Proceeds Waiver Amount shall be $750,000 (the amount set forth in the Sale Motion using the most conservative assumptions), without prejudice to the rights of the Texas Families to argue that such amount should be higher. In any event, the possibility that the ultimate value of non-cash consideration may be determined post-closing is hardly novel or disqualifying. For example, many corporate sales, including in bankruptcy, involve an "earn-out" feature, whereby a buyer agrees to pay a percentage (e.g., 5%) of future revenues to the seller. While the amount of such earn-out is "contingent" on the amount of future revenues, such feature does not make a bid with an earn-out feature "contingent." All it means is that the seller, exercising its business judgment, has to value the earn-out based on certain assumptions and factor that into the overall purchase price—exactly what happened here.

14. *Finally*, the Successful Bid was not an improper "floating" bid that guaranteed it would always be the highest bid. By its own terms, the Successful Bid recognized that it would not be better than a bid over $7 million, and, under the Trustee's analysis and valuation of the Successful Bid, the Successful Bid may not have prevailed over a bid of $5 million. Had FUAC's best and final bid been higher, it likely would have won. But when asked to submit its

"best and final" bid, FUAC's bid amount did not exceed this threshold. Therefore, it was unsuccessful.

15. In sum, the Trustee reasonably determined (a) that the Distributable Proceeds Waiver had "value" and (b) what the value of the Distributable Proceeds Waiver was, based on well-established, tested, and logical premises. The Trustee's determination that the Distributable Proceeds Waiver, combined with the $1.75 million Cash Purchase Price, was the "highest or best" bid falls well within the reasonable exercise of the Trustee's business judgment.

### B. The Trustee Appropriately Conducted the Auction

16. Other than attacking the Distributable Proceeds Waiver, the Objectors also argue that the Sale Motion should be denied because the Trustee was required to hold a "live" auction. The Connecticut Families adopt the responses to this argument set forth in the replies filed by the Trustee and Global Tetrahedron, which demonstrate that such argument is based on a patent misreading of the Winddown Order and other bid procedures. The fact that FUAC did not object—formally or informally—to the Trustee's conduct of the auction *until after* it learned that it was not the winning bidder, underscores the total lack of merit to these arguments. Any qualified bidder that truly believed the sales process violated the Winddown Order would have objected to such process—either in an email to the Trustee, a conversation with the Trustee, or a filing with the Court—rather than go along with it and raise such concerns after the fact.

*      *      *

17. The Trustee conducted an effective and value-maximizing sale process in which he reasonably exercised his business judgment throughout all stages of the process. The Connecticut Families respectfully request that the Court overrule the FUAC Objection and the Jones Objection and enter the relief requested by the Sale Motion.

8

Dated: December 8, 2024                    Respectfully submitted,

                                                               */s/ Ryan E. Chapple*

**CAIN & SKARNULIS PLLC**
Ryan E. Chapple
State Bar No. 24036354
303 Colorado Street, Suite 2850
Austin, TX 78701
Telephone: (512) 477-5000
Fax: (512) 477-5011
E-mail: rchapple@cstrial.com

**KOSKOFF KOSKOFF & BIEDER, PC**
Alinor C. Sterling (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone: (203) 336-4421
E-mail: asterling@koskoff.com

**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
Kyle J. Kimpler (admitted *pro hac vice*)
Paul Paterson (admitted *pro hac vice*)
Leslie Liberman (admitted *pro hac vice*)
Vida J. Robinson (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
E-mail: kkimpler@paulweiss.com
          ppaterson@paulweiss.com
          lliberman@paulweiss.com
          virobinson@paulweiss.com

*Co-Counsel to the Connecticut Families*

**CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the foregoing statement has been served on counsel for the Debtor, the Debtor, and all parties receiving or entitled to notice through CM/ECF on this 8th day of December, 2024.

                                               */s/ Ryan Chapple*
                                               Ryan Chapple