UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>ALEXANDER E. JONES,<br><br>　　　　Debtor. | § <br> § Chapter 7 <br> § <br> § Case No. 22-33553 (CML) <br> § <br> § <br> § <br> § |

**TRUSTEE'S REPLY IN SUPPORT OF THE TRUSTEE'S
EXPEDITED MOTION FOR ENTRY OF AN ORDER IN FURTHERANCE OF THE
SALE OF ASSETS OF FREE SPEECH SYSTEMS, LLC**
[Relates to Docket Nos. 859, 915, 962, 963 & 969]

Christopher R. Murray, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Alexander E. Jones ("Jones" or the "Debtor") files this reply (the "Reply")[1] in support of the *Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* ("Motion") [Docket No. 915] and in response to the *Alexander E. Jones Response and Objection to the Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* [Docket No. 962] (the "Debtor's Objection") filed by the Debtor and the *First United American Companies, LLC's Response to Trustee's Expedited Motion for Entry of An Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC, and Objection to the Proposed Sale to Global Tetrahedron, LLC* [Docket No. 963] (the "FUAC's Objection" and together with the Debtor's Objection, the "Objections") filed by

---

[1] This Reply incorporates the *Trustee's Objection to Emergency Motion to Disqualify Global Tetrahedron, LLC's Bid* [Docket No. 913] (the "Objection to Motion to Disqualify"), the *Trustee's Objection to the Emergency Application for Temporary Restraining Order* [Adv. P. No. 24-03238, Docket No. 16] (the "Objection to Emergency Application"), and the *Trustee's Emergency Motion to Strike Alexander E. Jones Response and Objection to the Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* filed contemporaneously herewith (the "Motion to Strike").

15701729

First United American Companies, LLC ("FUAC" and together with the Debtor, the "Objectors"). In further support of the Motion, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Objections rest, in large part, on selective and intentionally misleading quotes from various documents, including the Winddown Order, to establish a false narrative—that the Trustee "colluded" with the Successful Bidder to fix the auction results. Setting aside the absurdity of this allegation, a cursory review of the Winddown Order establishes that the Objectors' allegations lack merit and are nothing more than a losing bidder's last-ditch effort to invalidate a fair and value-maximizing sale process. The Objectors' grievances are disingenuous and their purpose is selfish.

2. First, the Trustee's determination to seek "last and best" bids through a sealed bid process is entirely consistent with the Winddown Order, the Bid Package distributed to prospective bidders and the Trustee's business judgment in conducting a bankruptcy sale process. The Objectors' characterization of the Trustee and Tranzon's "unilateral" decision to "deviate" from the scheduled "live" auction is intentionally misleading AND ignores no less than **ten** disclosures in the Winddown Order and the Bid Package that clarify that a "live" auction is *not* required and the decision to hold such an auction was within the Trustee's reasonable discretion. The Winddown Order intentionally gives the Trustee flexibility to run a sale process because of the very unique collection of assets to be sold.

3. FUAC was given **all** the same information that was provided to the Successful Bidder, understood the process and voiced no objection until, of course, its bid was not selected as the winning bid. The process was transparent and fair. Moreover, it was consistent with the intentionally flexible parameters described in the Winddown Order. The Objectors' after-the-fact attempts to rigidly apply out-of-context "pull quotes" from various documents cannot change the

2

reality that the Winddown Order gave the Trustee significant latitude to run a process that maximized value for FSS creditors and the Debtor's estate, *which is exactly what happened*.

4. Notably, FUAC does not credibly argue that their final bid is actually better for unsecured creditors—the only parties with a pecuniary interest in the sale.[2] The CT Families have voluntarily waived and assigned their share of a significant portion of the sale proceeds. The only other creditors with a pecuniary interest in the sale outcome are receiving could receive as much as two times what they would receive under the FUAC Bid. Perhaps *most importantly*, no creditor has objected to the proposed sale. FUAC *clearly* understands this inconvenient fact and has attempted to remedy the lack of creditor support for its inferior bid by submitting a "new" offer at the proverbial eleventh hour. FUAC's new offer proposes a transaction that would divert $500,000 of sales proceeds to creditors *other than the Connecticut Families*. Without the agreement of Connecticut Families to waive their[3] right to a disbursement from the estate, the only way to accomplish a direct payment to all non-Connecticut creditors from the sales proceeds is to make a side payment to the non-Connecticut creditors outside the bankruptcy process. FUAC's proposal ultimately fails because it does not account for the voluntary nature of the Distributable Proceeds Waiver, which the Trustee does not control, and it fails *on its face* to provide a higher recovery to non-Connecticut unsecured creditors.

---

[2] PQPR (an entity that is indirectly 72% owned by Debtor's estate), has not filed an objection to the Sale Motion. There is no conceivable scenario where PQPR's alleged liens, which include alleged liens on FSS cash, will exceed the realizable value of assets of FSS other than those proposed to be sold here. Accordingly, PQPR is not affected by the proposed sale.

[3] The Texas Plaintiffs filed a *Statement of the Texas Plaintiffs on the Chapter 7 Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* [Docket No. 961], but they did not object to sale or otherwise seek to prevent it, instead merely "reserve[ing] their rights in connection with the distribution of the sale proceeds."

15701729

5. In the end, two parties with no pecuniary interest in the estate—FUAC and Jones—filed coordinated objections to the proposed sale for a very simple reason: *their* joint bid did not win.[4] Astonishingly, the Objectors are asking the Court to deny approval of the Trustee's selection of a winning bid and to prevent the consummation of a proposed sale transaction that is *objectively* better for creditors than the Backup Bid submitted by FUAC. The Objectors are asking this Court to give creditors less so they can have more. But they cannot overcome the fundamental reality that the Trustee's sale process complied with the Winddown Order, his selection of the Successful Bid and negotiation of the proposed Asset Purchase Agreement was well within his sound business judgment and the approval of the Sale is in the best interests of the Estate. The Court should overrule the Objections and enter an order authorizing the Trustee to consummate the proposed sale with the Successful Bidder.

## ARGUMENT AND AUTHORITIES

### I. The Objections Cannot Overcome the Trustee's Business Judgment

6. Both the Bankruptcy Code and the Winddown Order afford the Trustee a great deal of flexibility and discretion in carrying out a sale of estate assets. While Jones refuses to even acknowledge the Trustee's discretion, FUAC at least admits that it must ultimately overcome the Trustee's to exercise his reasonable business judgment in connection with a sale. FUAC's Objection ¶ 50. However, neither of the Objectors successfully places their specific challenges within the framework of the business judgment standard and the Winddown Order.

---

[4] While feigning outrage that the Successful Bidders are joint bidders (something clearly allowed under the sale process), FUAC and Jones pretend their own Backup Bid complies with the disclosure requirements of the sale process—which requires disclosure of bid "partners." FUAC failed to disclose Jones's involvement during the bidding. Only now, when their coordination is obvious, they admit it openly in in their pleadings.

### A.     The Trustee Appropriately Conducted the Sale

7.     Although the Objectors spill much ink casting aspersions, their primary complaints regarding the mechanics of the sale relate to matters that were expressly made subject to the Trustee's discretion.

#### 1.     The Trustee's Was Entitled to Seek "Highest and Best Bids" Through a Sealed Bid Process

8.     The Objectors continue to insist that the Winddown Order contained an absolute requirement to host a *live* auction based entirely on the phrase "on the record at the Auction" in Paragraph 12.  The Objectors do not address the numerous provisions in the Winddown Order granting the Trustee considerable discretion over significant aspects of the sale process (*see, e.g.*, Winddown Order ¶¶ D, 5, 12, 13, 29) or the fact that the Winddown Order caveats the mention of the "IP Assets Auction" (or "Auctions") with the words "if any" no less than ten times. *See, e.g.*, Winddown Order ¶¶ 3, 4, 5, 7, 10, 11, 13, 14.  It strains credulity to suggest that the Trustee violated the Winddown Order by holding a written sealed bid process rather than live auction given the Trustee's discretion to forego an auction altogether.

#### 2.     The Trustee Created a Level Playing Field for Bidders

9.     While FUAC concedes that the additional details regarding the auction process were communicated in writing (*see* FUAC's Objection ¶ 18 & Ex. 5), the Objectors nevertheless complain that the request for sealed bids reflecting a bidders "highest and best offer" was not communicated at a live Auction.  Once again, this complaint relies on the same five words of Paragraph 12 of the Winddown Order to the exclusion of all else.  In fact, Paragraph 12  itself allows "such other procedures" to be "disclosed orally or **in writing** to all Qualified Bidders." Winddown Order ¶ 12 (emphasis added).  This makes sense given that, as explained above, the Winddown Order contemplated the possibility of no live auction being held.  And there was

5

certainly no express requirement, as FUAC suggests, that the request for written bids be disclosed in a notice filed with the Court. *See* FUAC's Objection ¶ 18; *cf.* Winddown Order ¶¶ 17, 19 (requiring a filed notice only where the "Auction is cancelled"), ¶ 29 (granting the Trustee considerable flexibility).

10. More fundamentally, the Objectors are utterly unable to articulate how FUAC or Jones (much less the estate) were prejudiced. In contrast to the "secret" and "clandestine" process described by FUAC,[5] the Trustee provided the same information and instructions to both FUAC and GT, and he received no objection or complaint from either party. The "IP Assets Auction Bid Instructions" [Docket No. 913-6] (the "<u>Bid Instructions</u>") informed FUAC that the Trustee would "evaluate bids submitted and award the bids to the best single or combination of bids received based on the highest financial benefit to the creditors." Bid Instructions ¶ 1. The Bid Instructions delivered to FUAC further provided, "[A]ny bids that include components of consideration apart from the cash purchase amounts should quantify the amounts of such consideration in specific dollar amounts with as much specificity as possible and avoiding references to any formulas or other contingencies." Bid Instructions ¶ 2. Despite this, in a desperate attempt to manufacture a controversy, the Objectors now suggest that FUAC had no idea that the Trustee would consider non-monetary consideration but that if it had, FUAC would have "adjust[ed] its bidding strategy" in some unspecified way. *See* FUAC's Objection ¶ 21.

11. The Winddown Order allowed the Trustee to use his business judgment in determining how to conduct the sale process, and that is precisely what he did while providing ample notice and an equal opportunity to win to both FUAC and GT.

---

[5] *See* FUAC's Objection ¶¶ 4, 8, 15, 20–22, 26, 33, 42–45.

**B.     The Trustee Selection of the Successful Bid Constituted a Reasonable Exercise of His Business Judgment**

12.     The Objectors continue their assault on the Trustee's exercise of his business judgment by (a) rewriting the Winddown Order and the Bid Instructions to outright preclude consideration of the Successful Bid; and (b) seeking to substitute the Trustee's business judgment with their own. These arguments rely on the thinnest of reeds and can be easily resolved.

**1.     Neither the Winddown Order nor the Trustee's Instructions Precluded the Selection of the Successful Bid**

13.     The Objectors center on the Winddown Order's statement that the "Purchase Price should be a specific amount in U.S. Dollars (not a range)" and the Bid Instructions' request that bidders "quantify the amounts of such consideration in specific dollar amounts with specificity and avoiding references to any formulas or other contingencies." *See* FUAC's Objection ¶¶ 25, 26; Debtor's Objection ¶ 16. Relying on these provisions misconstrues Bid Requirements intended to provide the Trustee with clarity for purposes of assessing the value of competing bids, not to give competing bidders a tool for eliminating their competition. At any rate, the Trustee does not consider the Successful Bid to be "floating." It was stated in a specific dollar amount and the Trustee assessed the value of the DPW based on such amount. Nor does the fact that the exact amount of the DPW could be affected by future events (such as the determination of the ultimate unsecured creditor pool) render "contingent," much less within the meaning of the Winddown Order (which clearly only prohibits "contingencies" based on obtaining financing or due diligence). *Cf. In re Bakalis*, 220 B.R. 525, 534 (Bankr. E.D.N.Y. 1998) ("Contrary to [the unsuccessful bidder's] cries of unfairness, there is no requirement that competing purchasers be given precise valuations of the non-dollar components of their bids."). In his reasonable business judgment, the Trustee assessed the Successful Bid, including the DPW, and determined that under any reasonable calculation it provided the greatest benefit to unsecured creditors.

7

### 2. The Successful Bid Was the Highest and Otherwise Best Bid

14. Even assuming the Objectors have standing to complain that FUAC's bid was the better one (which they do not),[6] they are incorrect that FUAC's bid was the highest or the best. If that was truly the case, presumably at least one of the actual creditors of this estate would have objected to the Sale Motion. But no creditor has objected to the sale. Nevertheless, the Objectors still complain that FUAC's bid represented the better deal for the estate.

15. The Objections are premised on the idea that the DPW represents no value to the estate. But valuing bids is within the sole province of the Trustee, subject only to this Court's review to ensure his acceptance of a bid comported with his reasonable business judgment. Moreover, the Objectors offer no authority for their assertion that the DPW is inherently improper and "distorts" unspecified bankruptcy principles. *See* FUAC's Objection ¶ 41. Contrary to the suggestion that the DPW represents a "form of consideration that no bankruptcy trustee in history has ever accepted before," the Trustee has already identified at least one case in which a court has approved a similar construct. *See In re Sasso*, 572 B.R. 331, 338 (Bankr. D.N.M. 2017). And there no shortage of precedent for a trustee's acceptance of non-cash consideration. *See, e.g.*, *In re Douglas J. Roger, M.D., Inc., APC*, 393 F. Supp. 3d 940, 966 (C.D. Cal. 2019) (finding that a bankruptcy court abused its discretion by refusing to consider the non-cash benefits of a bid).

16. Ultimately, this dispute comes down to the Trustee's business judgment, and in the exercise of his judgment, he concluded the Successful Bid was in the best interests of the estate. The Objectors' attempt to replace the Trustee's business judgment with their own must fail. *See, e.g.*, *In re Metaldyne Corp.*, 409 B.R. 661, 667 (Bankr. S.D.N.Y. 2009) (collecting authorities for

---

[6] As explained in the Motion to Strike and the Objection to Motion to Disqualify, the Objectors are not "parties in interest" with standing to object to the sale.

the proposition that in evaluating a section 363 sale, " the Court should not substitute its business judgment for that of the [trustee's]").

## II. The Remaining "Obstacles" to the Sale

17. In the Debtor's Objection, Jones ends with a scattershot of arguments he characterizes as "obst[a]cles" to the sale. As explained in the Motion to Strike, he lacks standing to raise the alleged rights of PQPR or the Texas Plaintiffs, and given that those parties have not filed their own objections to the Sale Motion, the Court need not address those issues. Debtor's Objection ¶ 21. As also explained in the Motion to Strike, Jones' speculative right of winning on appeal—which has only become more speculative in light of the Connecticut court's recent ruling—do not allow Jones to prevent the sale. And this Court has repeatedly informed Jones that it will not allow him to relitigate the state court judgments in this forum. This leaves Jones' invocation of FSS's rights and his role as manager of FSS.

18. Jones makes the incredible claim that "[i]t does not appear to be disputed that the Trustee has no rights in the individual assets of FSS." Debtor's Objection ¶ 24. He makes the precise arguments that the Court previously heard in connection with the *Trustee's Motion for Entry of an Order Authorizing the Winddown of Free Speech Systems, LLC* [Docket No. 829]. Specifically, Jones parrots the points previously made by the U.S. Trustee in its objection [Docket No. 845]. But, as the Court may recall, these arguments eventually resulted in the Supplemental Dismissal Order, which conclusively put to rest all questions regarding the status of FSS's assets and the extent of the Trustee's control over them:

> 1. Effective as of the entry of the Order Dismissing Case [Docket No. 956] (the "Dismissal Order"), pursuant to Section 349(b), all property of the estate of Debtor Free Speech Systems, LLC ("FSS") shall be deemed to have vested in the bankruptcy estate of Alexander E. Jones, Case No. 22-33553, as property of that estate pursuant to Section 541 and shall be under the control of the trustee of such estate ("Chapter 7 Trustee").

9

> 2. The Chapter 7 Trustee is authorized to operate the business of FSS pursuant to Section 721 for a period not to exceed one year, absent further order of this Court.

Supplemental Dismissal Order.

19. Jones' suggestion that the sale requires his approval, as manager of FSS, is equally surprising. This Court has previously held that management and voting rights held by a debtor become property of the estate under section 541, which captures "all legal or equitable interests." *In re Envision Healthcare Corp.*, 655 B.R. 701, 710 (Bankr. S.D. Tex. 2023) (Lopez, J.) ("'All' is a broad term, but not an ambiguous one. We all know what 'all' means."). This accords with the legion of decisions demonstrating that when the member of a *single*-member LLC (like FSS) declares chapter 7 bankruptcy, the trustee steps into the role as manager and can exercise any and all associated rights. *See, e.g.*, *In re Fontenot*, 2023 WL 3047842, at *5 (Bankr. W.D. La. Apr. 20, 2023) ("Numerous bankruptcy courts, including this one, have held that 'where a debtor has a membership interest in a single-member LLC and files a petition for bankruptcy under Chapter 7, the Chapter 7 trustee succeeds to all of the debtor's rights, including the right to control that entity, and a trustee need not take any further action to comply with state law before exercising such control.' Moreover, the rights of the Trustee include 'all governance of that entity, including decisions regarding liquidation of the entity's assets.'"). This is not a controversial point.[7]

20. Jones offers a last-ditch argument that the Trustee needed to comply with corporate formalities to remove Jones and become the new manager. *See* Debtor's Objection ¶¶ 23–26; *see also Plaintiffs' Complaint and Emergency Application for Temporary Restraining Order and*

---

[7] This is also to say nothing of the Supplemental Dismissal Order, which separately made FSS's assets part of this estate and subject to the Trustee's control—to the exclusion of Jones whose only role at that point was "to turn over ]FSS's] property to the trustee and to provide certain information to the trustee and to the creditors." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352–53(1985); *see also In re Albright*, 291 B.R. 538, 541 (Bankr. D. Colo. 2003) ("Because the Trustee became the sole member of Western Blue Sky LLC upon the Debtor's bankruptcy filing, the Trustee now controls, directly or indirectly, all governance of that entity, including decisions regarding liquidation of the entity's assets.").

15701729

*Preliminary Injunction Pursuant to Bankruptcy Rule 7065* [Docket No. 962] ¶ 40.  However, the Trustee's succession to Jones' rights as Manager was instant and automatic upon the conversion of his case to chapter 7.  *See Fontenot*, 2023 WL 3047842, at *5 ("Numerous bankruptcy courts, including this one, have held that . . . a trustee need not take any further action to comply with state law before exercising such control."); *In re B & M Land & Livestock, LLC*, 498 B.R. 262, 266–67 (Bankr. D. Nev. 2013) ("A trustee need not take further specific actions to comply with state law before exercising management functions.").

21. Jones speculates that the Trustee "may have rights as an assignee at law" under the TBOC.  It is true that Jones' bankruptcy filing "effectively assign[ed] the entire membership interest in [FSS] to the bankruptcy estate, and the Trustee obtains all [of Jones'] rights in [FSS], including the right to control the management of the [FSS]." *Fresno Rock Taco, LLC v. Nat'l Sur. Corp*, 2013 WL 5276132, at *18 (E.D. Cal. Sept 17, 2013).  But the Trustee "is not a mere assignee, but steps into a [Jones'] shoes, succeeding to all of [his] rights, including the rights to control [FSS]." *In re First Prot., Inc.*, 440 B.R. 821, 830 (B.A.P. 9th Cir. 2010).  And any state law that would prevent that operation is preempted by section 541.  *See Envision*, 655 B.R. at 710–11; *see also First Prot*, 440 B.R. at 830 ("The restrictions Debtors point to under the operating agreement or the Arizona LLC Act did not prevent the vesting of their contractual rights in their bankruptcy estate.").

22. Jones' appeal to corporate formalities and state law is therefore equally unavailing.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court grant the Sale Motion and grant the Trustee all such other and further relief to which he is justly entitled.

11

15701729

Dated:  December 9, 2024
Houston, Texas.

          Respectfully submitted,

          By: */s/ Joshua W. Wolfshohl*
          Joshua W. Wolfshohl (Bar No. 24038592)
          Michael B. Dearman (Bar No. 24116270)
          Jordan T. Stevens (Bar No. 24106467)
          Kenesha L. Starling (Bar No.24114906)
          **Porter Hedges LLP**
          1000 Main Street, 36th Floor
          Houston, Texas 77002
          Telephone: (713) 226-6000
          Facsimile: (713) 226-6248
          jwolfshohl@porterhedges.com
          mdearman@porterhedges.com
          jstevens@porterhedges.com
          kstarling@porterhedges.com

          *and*

          Erin E. Jones (TX 24032478)
          **Jones Murray LLP**
          602 Sawyer Street, Suite 400
          Houston, Texas 77007
          Telephone: (832) 529-1999
          Fax: (832) 529-3393
          erin@jonesmurray.com

          *Counsel for Christopher R. Murray, Chapter 7 Trustee*

15701729

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing objection has been served on all parties receiving or entitled to notice through CM/ECF in the above-captioned proceeding on December 9, 2024.

>/s/ Joshua W. Wolfshohl
>Joshua W. Wolfshohl

15701729