IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>ALEXANDER E. JONES,<br><br>Debtor. | ) Chapter 7<br>)<br>) Case No. 22-33553 (CML)<br>)<br>)<br>)<br>) |

### GLOBAL TETRAHEDRON, LLC'S FURTHER (I) STATEMENT IN SUPPORT OF TRUSTEE'S EXPEDITED MOTION FOR ENTRY OF AN ORDER IN FURTHERANCE OF THE SALE OF ASSETS OF FREE SPEECH SYSTEMS, LLC AND (II) OMNIBUS REPLY RELATED THERETO

Global Tetrahedron, LLC ("Global Tetrahedron"), as joint Successful Bidder[1] and party-in-interest in the above-captioned case (the "Chapter 7 Case"), files this further (i) statement in support of the *Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* [Docket No. 915] (the "Sale Motion") and (ii) omnibus reply to various pleadings filed related thereto and to the sale of the IP Assets to Global Tetrahedron and the Connecticut Plaintiffs[2] (the "Sale") as the joint Successful Bidders (collectively, the "Joint Successful Bidders"). In support of the Sale Motion and the Sale, Global Tetrahedron also incorporates *Global Tetrahedron, LLC's (I) Statement in Support of Trustee's Expedited Motion for*

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Order Granting Trustee's Motion for Entry for an Order Authorizing the Winddown of Free Speech Systems, LLC* [Docket 859] (the "Winddown Order").

[2] "Connecticut Plaintiffs" means Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, and Erica Ash.

*Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC and (II) Omnibus Reply Related Thereto* [Docket No. 932] by reference herein.  Global Tetrahedron also joins in the *Trustee's Emergency Motion to Strike Alexander E. Jones Response and Objection to the Trustee's Expedited Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC* and the *Connecticut Families' Reply (I) In Further Support of the Trustee's Emergency Motion for Entry of an Order in Furtherance of the Sale of Assets of Free Speech Systems, LLC and (II) In Opposition to (A) the Emergency Motion to Disqualify Global Tetrahedron, LLC's Bid and (B) the Plaintiffs' Complaint and Emergency Application for Temporary Restraining Order and Preliminary Injunction*, filed substantially contemporaneously herewith.

1. Despite all of the noise, the Court need only address a simple question to approve the Sale Motion—whether the Trustee exercised his reasonable business judgment in selecting the Successful Bid.  The answer is "yes" as the Trustee acted within its considerable discretion.  The evidence will show that the Sale process was fair and fulsome and *applied equally to all parties*.  There was nothing that advantaged one bidder over another bidder in the process—all bidders were treated the same.  Global Tetrahedron has done everything asked in this Sale process—including weathering significant cost and delay even after the Trustee announced it as the winning bidder—in order to help maximize value for the benefit of the estate.  The objecting parties have asserted various claims of unfairness based on allegations that the evidence has disproven.  Given the propriety of the process and the Trustee's sound business judgment in selecting the winning bid, what would be manifestly unfair is denying Global Tetrahedron the opportunity to realize its bid and move forward in consummating the Sale.

2. At a significant cost to the estate and other parties, First United American Companies, LLC ("FUAC") and the debtor in this chapter 7 case (the "Debtor") (who has no standing to contest the Sale) continue with a series of actions designed to distract, delay, and deprive the estate of the ability to recognize any benefit from the Sale process. These actions cannot counteract the following facts that evidence will prove: the Joint Successful Bidders complied with the bidding process in good faith; the process was permitted by the plain language of the Winddown Order; the process was fair, properly noticed, and applied equally to all bidders; and the Trustee, as fiduciary, after extensive analysis, selected the Joint Successful Bidders as the winning bidders.

### I. The Sale Process Complies With the Winddown Order, Is Fair, and Allegations to the Contrary Are Inaccurate and Should Be Disregarded

3. As the evidence will show at the hearing on the Sale (the "Sale Hearing"), the selection of Global Tetrahedron and the Connecticut Plaintiffs as the Joint Successful Bidders is the culmination of a fair process that was conducted by the chapter 7 trustee (the "Trustee"), in consultation with his court-approved independent third-party advisor ("Tranzon360"), in good faith and in accordance with the terms of the Winddown Order. Consistent with the mandate of this Court in the Winddown Order, the Trustee conducted a competitive bidding process that was designed to generate the greatest level of interest and best value for the IP Assets while affording the Trustee flexibility to implement changes to the bidding procedures that were necessary to promote the goals of the bidding process.[3]

---

[3] *See* Winddown Order ¶¶ 7 ("[T]he Trustee's right to modify . . . any procedures at the IP Assets Auction (if any) . . . at any time are fully preserved to the extent not materially inconsistent with this Order."), 29 ("The Trustee's right is fully reserved, in his reasonable business judgment and in a manner consistent with his duties and applicable law, to modify or waive any procedures or requirements with respect to all Potential Bidders, Qualified Bidders or to announce at an Auction modified or additional procedures for such Auction, and in any manner that will best promote the goals of the bidding process, or impose, before

3

4. Contrary to allegations made in opposition to the Sale, the Sale process was fair and all bidders were treated equally. Global Tetrahedron, the Connecticut Plaintiffs (collectively, the "Joint Successful Bidders"), and FUAC were subject to the same Bid Procedures, the same process and related deadlines—which were disclosed with ample notice to all Qualified Bidders—the same deadlines to submit their binding sealed bids, and the same Bid Requirements. Both parties were provided similar notice of the Trustee's decision to hold the auction by sealed envelope on November 11, 2024—a process that both parties agreed to without objection—and both parties received, at the same time, the overbid form and instructions to submit their best and final offers by the date and time of the IP Assets Auction on November 13, 2024, at 10:30 a.m. (prevailing Central Time).[4]

5. Far from advantaging one Qualified Bidder over another, the Trustee's determination, as an exercise of his reasonable business judgement, to substitute a live auction for an auction by sealed envelope and to ask for best and final offer was the best way to maintain the competitive tension of the process and ensure that each Qualified Bidder put their best offer forward. The Trustee's decision to change the format of the auction in advance of the date of the live auction was also meant to maximize efficiency and ensured that the Trustee could receive each Qualified Bidders' best and final bids without wasting estate and parties' resources. That process was entirely consistent with the flexibility afforded to the Trustee under the Winddown Order.[5]

---

the conclusion of the consideration of bids or an Auction (if held), additional customary terms and conditions on the sale of the IP Assets . . . .").

[4] "Messages were sent to the Qualified Bidders on Monday, November 11, 2024, at 4:39 p.m. (prevailing Central Time), notifying them of the auction format selected for the next round of bidding and providing them with a revised overbid form and instructions to submit their best and final offers by the date and time of the IP Assets Auction on November 13, 2024, at 10:30 a.m. (prevailing Central Time)." Sale Motion ¶ 33.

[5] *See* Winddown Order ¶¶ 12 ("The Trustee is authorized to implement such other procedures as may be announced by the Trustee and his advisors from time to time on the record at Auction; *provided* that such

Importantly, FUAC participated in the Sale process—including by submitting its best and final bid in lieu of a live auction—from its inception through its conclusion and did not raise any objections about how the process was conducted until *after* Global Tetrahedron and the Connecticut Plaintiffs' joint bid (the "GT Bid") was declared the Successful Bid.[6]

6. The Winddown Order and the bidding materials were also unambiguous that bids could include both "cash and non-cash" components, such as the Connecticut Plaintiffs' waiver of their entitlement to certain cash proceeds of the Sale (the "Distributable Proceeds Waiver").[7] As such, allegations that the Trustee afforded some preferential treatment to Global Tetrahedron and the Connecticut Plaintiffs when he determined, in an exercise of his reasonable business judgment, that their bid constituted a Qualified Bid are baseless. In fact, courts regularly find that

---

other procedures are (i) not inconsistent with this Order, the Bankruptcy Code, or any other order of the Court, (ii) disclosed orally or in writing to all Qualified Bidders, and (iii) determined by the Trustee to further the goal of attaining the highest or otherwise best offer for the applicable IP Assets and any other Assets upon which the Qualified Bidder submitted a Qualified Bid."), 29 ("The Trustee's right is fully reserved, in his reasonable business judgement and in a manner consistent with his duties and applicable law, to modify or waive any procedures or requirements with respect to all Potential Bidders . . . and in a manner that will best promote the goals of the bidding process . . . ."); Sale Motion ¶ 32 ("The Trustee determined in his reasonable business judgement, and in consultation with his professionals, that the "final and best" overbid strategy (i) was in the best interest of all bidding parties, (ii) would provide a more equitable method of evaluating the bids, (iii) would provide the best method of maximizing value to the creditors, and (iv) was consistent with the terms of the Sealed Bid Package and Winddown Order and his discretion under the Winddown Order, 'prior to conclusion of an Auction (if any) [to] impose such other terms and conditions upon bidders as the Trustee determines to be in the best interests of the Debtor's estate, FSS and their creditors in this bankruptcy case.'").

[6] The Winddown Order preserved all parties' right to "seek Court relief, including on an expedited basis, with regard to the Auctions and related items." Winddown Order ¶ 30.

[7] Winddown Order ¶ 6 ("Each Sealed Bid must clearly set forth the purchase price to be paid, including cash and non-cash components, if any.").

5

non-cash benefits must be included in 363 sale bids and must be considered when determining bid value,[8] including claim waivers.[9]

7. In these circumstances, the record is clear that the Sale process conducted by the Trustee, in consultation with Tranzon360, was run fairly and in compliance with the Winddown Order. Notwithstanding that fact, FUAC and the Debtor have objected to the Sale Motion in an attempt to halt the Sale process based on allegations that are speculative, inaccurate, and unsupported by fact. As summarized in the following chart, these baseless allegations reflect at a complete misunderstanding of the process and the terms of the Winddown Order.

---

[8] *See, e.g., In re Douglas J. Roger, M.D., Inc. APC*, 393 F.Supp.3d 940, 966 (D. Cal. 2019) (holding that a bankruptcy court may not ignore non-cash benefits afforded to the estate from bid when determining whether bid was the highest and best offer) (citing *In re Lahijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005)).

[9] *See also In re Sasso*, 572 B.R. 331, 338 (Bankr. D.N.M. 2017) (holding that the trustee has sound business reason for selling to debtor's life estate in property for cash consideration and the release of the purchaser's claim against the estate, finding that "[t]he effect of the [purchaser's] withdrawal of its claim on the distribution to creditors adds value to the sales price. In fact, unsecured creditors will receive a much higher percentage distribution on their claims under the terms of the proposed sale than if the [purchaser's] claim is included and the Trustee sold the estate's interest in the Condo for the $74,000 estimated fair market value of a life estate interest under the IRS tables").

| Objection | Why Objection Should be Overruled | Supporting Evidence (Emphasis Added) |
|---|---|---|
| The Trustee did not have the authority under the Winddown Order to cancel the live auction, the cancellation was neither reported to the Court nor announced on the record at the Auction as required by the Winddown Order, and was not disclosed to all Qualified Bidders.<br><br>FUAC Objection [Docket No. 963] ¶¶ 4, 5, 8–9, 15–16, 18, 20, 22, 30, 42, 44.<br><br>Jones Objection [Docket No. 962] ¶ 4. | The Trustee had reasonable discretion under the Winddown Order to adjust the Sale process, including by modifying the auction process, to further the goal of the bidding process and attain the highest and otherwise best offer. The Trustee determined, in its reasonable business judgement, that modifying the process from a live auction to a sealed envelope and asking for best and final offer was the best way to maintain the competitive tension of the process and ensure that each Qualified Bidder put their best offer forward. No further Court approval was required as the Court had already granted that authority to the Trustee in the approved Winddown Order. There is no evidence that this change advantaged one bidder over another bidder.<br><br>The change from a live auction to a sealed envelope auction was communicated to both Global Tetrahedron and FUAC simultaneously, in the same manner, and with sufficient advanced notice. The modification of the auction process maximized efficiency and ensured that the Trustee could receive each Qualified Bidders' best and final bids without wasting estate and parties' resources.<br><br>No party was prejudiced by the fact that the process was modified because the new process was permitted under the approved procedures, applied equally to all parties, and was communicated in advance such that if any party objected, they could have done so *before* the parties proceeded with the sealed envelope auction. | "[T]he Trustee's right to modify the foregoing Bid Requirements, to modify any deadlines in paragraph 4 of this Order, to modify any procedures at the IP Assets Auction (if any) . . . *are fully preserved* to the extent not materially inconsistent with this Order." Winddown Order [Docket No. 859] ¶ 7.<br><br>"*The Trustee's right is fully reserved, in his reasonable business judgment and in a manner consistent with his duties and applicable law, to modify or waive any procedures or requirements* with respect to all Potential Bidders, Qualified Bidders or to announce at an Auction modified or additional procedures for such Auction, and in any manner that will best promote the goals of the bidding process, or impose, before the conclusion of the consideration of bids or an Auction (if held), additional customary terms and conditions on the sale of the IP Assets or the Remaining Assets, as applicable, including without limitation: . . . *(c) modifying the Auction and Sale Procedures or adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling any Auction* . . . ." Winddown Order [Docket No. 859] ¶ 29.<br><br>"*The Trustee is authorized to implement such other procedures as may be announced by the Trustee and his advisors from time to time on the record at Auction*; provided that such other procedures are (i) not inconsistent with this Order, the Bankruptcy Code, or any other order of the Court, (ii) disclosed orally or in writing to all Qualified Bidders, and (iii) determined by the Trustee to further the goal of attaining the highest or otherwise best offer for the applicable IP Assets and any other Assets upon which the Qualified Bidder submitted a Qualified Bid." Winddown Order [Docket No. 859] ¶ 12.<br><br>"The 'IP Assets Auction', *if any*, will be held on November 13, 2024, at 10:30 a.m. (prevailing Central Time) through Tranzon360's selected online auction platform, for the sale of the IP Assets, *subject to rescheduling or cancellation by the Trustee in his reasonable discretion.*" Winddown Order [Docket No. 859] ¶ 5.<br><br>"The Bid Process and Terms with any amendments or modifications expressly made by Sales Agent constitute all the terms and conditions with respect to the sale of the Property; *however Sales Agent reserves the right to modify the Bid Process and Terms, as may be necessary and shall notify Bidder accordingly*." Bidding Package [Docket No. 935-2] at 16.<br><br>"*Messages were sent to the Qualified Bidders on Monday, November 11, 2024, at 4:39 p.m. (prevailing Central Time)*, notifying them of the auction format selected for the next round of bidding and providing them with a revised overbid form and instructions to submit their best and final offers by the date and time of the IP Assets Auction on November 13, 2024, at 10:30 a.m. (prevailing Central Time). Sale Motion [Docket No. 915] ¶ 33. |

| Objection | Why Objection Should be Overruled | Supporting Evidence (Emphasis Added) |
|---|---|---|
| The switch from a live auction process to a sealed bid harmed the transparency that would occur in a live auction and kept competitors in the dark about the Distributable Proceeds Waiver consideration as part of the Joint Successful Bid.<br><br>FUAC Objection [Docket No. 963] ¶¶ 9, 21, 26, 33, 48. | Sealed bids maintain the competitive tension between bidders and force bidders to offer up their best terms irrespective of where other bids sit. This process—which was conducted by sealed envelope submissions—strictly complies with the terms of the Winddown Order which provides the Trustee with the flexibility, in his reasonable business judgement, to modify or cancel the live auction if doing so maximizes the value of the bids for the benefit of the estate. Seal envelope submissions are a common process for running auctions.<br><br>Once the Trustee selected the Successful Bidder, the Trustee publicly disclosed all information about the Qualified Bids, including by disclosing copies of the initial and final bids submitted by each Qualified Bidder. | "To participate in the bidding process for the IP Assets or otherwise participate in the IP Assets Auction, a person or entity interested in purchasing the IP Assets . . . must deliver or have previously delivered to the Trustee the following *in connection with its sealed bid* . . . ." Winddown Order [Docket No. 859] ¶ 6.<br><br>"All Property is being offered through a sale process referred to herein as a *sealed bid offering* . . . ." Bidding Package [Docket No. 935-2] at 13.<br><br>Testimony will be adduced at the Sale Hearing that:<br><br>• A sealed bid auction forces people to put their best dollar amount forward. and is an effective means to get the highest and best price for the client and the creditors.<br><br>• The purpose of doing a sealed bid last and best is to capture the possibility that one bidder wants something much more than another bidder does, and that permits the realization of more value.<br><br>• The less each bidder knows about the number of other bidders and what the other bids look like the better—that incentivizes each bidder to offer as much as they can. |
| The Joint Successful Bid used formulas and contingencies that were forbidden, including a formula where the bid "would automatically adjust to 'top' competing bids," rather than being for a specific cash amount.<br><br>FUAC Objection [Docket No. 963] ¶¶ 9–10, 21, 25–26, 32, 38–39, 49.<br><br>Jones Objection [Docket No. 962] ¶¶ 3–4, 6, 8, 10, 16. | The Winddown Order allows bids to include both cash and non-cash components and there is nothing in the Winddown Order that prohibits the inclusion of a claims waiver as consideration as part of a bid.<br><br>The Distributable Proceeds Waiver is not a formula and the dollar value of the Distributable Proceeds Waiver can be readily ascertained.<br><br>Courts have agreed that non-cash consideration, including a waiver of claims, has value. | "Each Sealed Bid must clearly set forth the purchase price to be paid, *including cash and non-cash components*, if any." Winddown Order [Docket No. 859] ¶ 6.<br><br>"Using these assumptions, the Trustee calculated the value to the [Distributable Proceeds Waiver] under the backup bid as well as under the winning bid. At $3,500,000, the backup bid yields recovery to the Gift Class of $94,050. In contrast, under the winning bid, at a $7,000,000 cash equivalent amount, the Gift Class would receive $209,550. To accomplish that recovery under the actual purchase amount of $1.75 million under the winning bid, the Connecticut Families would waive $173,250 of proceeds." Sale Motion [Docket No. 915] ¶ 42.<br><br>Testimony will be adduced at the Sale Hearing that:<br><br>• The auctioneer wanted a bid on the bid form that had a specific amount. and that is what the Successful Bid provided.<br><br>• Even if the objectors argue there is an alternative way to view the value of the Successful Bid, either way, the Successful Bid was still the higher bid. |

| Objection | Why Objection Should be Overruled | Supporting Evidence (Emphasis Added) |
|---|---|---|
| The Trustee colluded with the Joint Successful Bidders by orchestrating a scheme allowing the Successful Bidders to amend their final bid after that bid was accepted by the Trustee and the notice of successful bidder filed with the Court.<br><br>FUAC Objection [Docket No. 963] ¶¶ 11, 45, 49 54–56 | The objection that the Trustee colluded with the Joint Successful Bidder is wholly unsupported by any evidence and therefore should be overruled.<br><br>The trustee accepted the Successful Bid on a final basis as including a waiver of $7 million of claims and that is what the Sale Motion seeks approval for. The allegations that the Trustee allowed the Successful Bidders to amend their bid are thus inaccurate. | "Each Sealed Bid must clearly set forth the purchase price to be paid, *including cash and non-cash components*, if any." Windown Order [Docket No. 859] ¶ 6.<br><br>Testimony will be adduced at the Sale Hearing that:<br><br>• The Trustee understood the non-cash component of the bid to be the amount that gives the non-Connecticut creditors the amount they would have received had the purchase price been in $7 million cash, the Successful Bidders agreed with accepting this calculation, and the Sale Motion seeks approval on this basis. |
| The Trustee represented to FUAC that unsecured creditors were not allowed to credit bid on account of their claims.<br><br>FUAC Objection [Docket No. 963] ¶ 27 | The Distributable Proceeds Waiver is not a credit bid of unsecured claims. Rather, it is a partial waiver of the Connecticut Plaintiff's claim and entitlement to receive a distribution of asset sale proceeds.<br><br>A credit bid is commonly the use of non-cash currency as a bid, which provides value to the estate by reducing liabilities. The Successful Bid is a cash bid, that allows claimants other than the Connecticut Plaintiffs to recover more than they otherwise would because the Connecticut Plaintiffs are waiving their entitlement to that cash.<br><br>The Connecticut Plaintiffs had not disclosed to the Trustee in advance that they were contemplating submitting consideration in the form of the Distributable Proceeds Waiver. | Testimony will be adduced at the Sale Hearing that:<br><br>• The Connecticut Plaintiffs are not secured creditors such that they cannot credit bid. Instead they are using the value of the cash they would get from this process and giving that to other creditors.<br><br>• The Trustee was not aware of the Successful Bid structure, including the Distributable Proceeds Waiver, until the Successful Bid was submitted. |
| No reasonable bidder would ever believe that using a Distributable Proceeds Waiver for a bid was possible.<br><br>FUAC Objection [Docket No .963] ¶ 49 | There was nothing in the Windown Order or the Bidding Instructions that prohibited the inclusion of the Distributable Proceeds Waiver as part of the bid consideration. It is up to each bidder to submit its best bid forward consistent with the requirements of the Windown Order.<br><br>It is also indisputable that the Distributable Proceeds Waiver provides real value from the perspective of the estate, in the same way that assumption of liabilities or other forms of non-cash consideration provide real value. | "Each Sealed Bid must clearly set forth the purchase price to be paid, *including cash and non-cash components*, if any." Windown Order [Docket No. 859] ¶ 6.<br><br>"This will be a final call for highest and best bids, wherein the Auctioneer and Trustee shall evaluate bids submitted and award the bids to the best single or combination of bids received *based on the highest financial benefit to the creditors*." Bid Instructions [Docket No. 913-6] ¶ 1.<br><br>*In re Douglas J. Roger, M.D., Inc. APC*, 393 F.Supp.3d 940, 966 (D. Cal. 2019) (holding that a bankruptcy court may not ignore non-cash benefits afforded to the estate from bid when determining whether bid was the highest and best offer) (citing *In re Lahijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005)). |

| Objection | Why Objection Should be Overruled | Supporting Evidence (Emphasis Added) |
|---|---|---|
| | Use of non-cash consideration is common as part of a sales process and the use of non-cash consideration, particularly when such concept was **expressly contemplated in the Windown Order**, should not have been surprising. | *In re Sasso*, 572 B.R. 331, 338 (Bankr. D.N.M. 2017) (holding that the trustee has sound business reason for selling to debtor's life estate in property for cash consideration and the release of the purchaser's claim against the estate, finding that "[t]he effect of the [purchaser's] withdrawal of its claim on the distribution to creditors adds value to the sales price. In fact, unsecured creditors will receive a much higher percentage distribution on their claims under the terms of the proposed sale than if the [purchaser's] claim is included and the Trustee sold the estate's interest in the Condo for the $74,000 estimated fair market value of a life estate interest under the IRS tables"). |
| The final terms of the Successful Bid have not been disclosed.<br><br>Jones Objection [Docket No. 926] ¶ 17. | The terms of the Successful Bid have been disclosed at length as part of the Trustee's Sale Motion [Docket No. 915]. | "The final bid submitted by Global Tetrahedron and the Connecticut Families (the "GT Final Bid", and together with the FUAC Final Bid, the "Final Bids") . . . provided a bid of $7,000,000.00 comprised of $1,750,000.00 in cash plus the Distributable Proceeds Waiver (as modified by the bid letter attached with the GT Final Bid form), which provided for the Connecticut Families' waiver of their claim to the proceeds of the Purchased Assets. The GT Final Bid also provided that Global Tetrahedron would pay the Connecticut Families and Texas Families a percentage of future revenues realized from the Purchased Assets. The GT Final Bid was broken out in the following way:<br><br>| Lot Group | Bid |<br>|---|---|<br>| Group 1 Production and E-Commerce Intellectual Property Only (Lot 1b & 2b) | |<br>| Group 2 Production and E-Commerce IP, Equipment & Inventory (Lot 1a & 2a) | |<br>| Group 3 Domain Names (Lot 3 & 4) | |<br>| Group 4 All Intellectual Property, Equipment, Inventory & Domains (Lots 1-4) | $7,000,000.00 |<br>| Group 5 All Intellectual Property & Equipment (no Inventory) (Lots 1a & 2b) | $7,000,000.00 |<br>| Group 6 All Intellectual Property & Inventory (no equipment) (Lots 1b & 2a) | |<br>| Group 7 Equipment & Inventory (no IP) (Lots 1c & 2c) | |<br><br>Sale Motion [Docket No. 915] ¶ 37-38. |
| The Trustee permitted the Joint Bidders to submit less than a 10% deposit on their bid.<br><br>FUAC Objection [Docket No. 963] ¶ 24. | The Trustee did not waive the requirement that the Successful Bidders submit the required deposit on their bid but waived the requirement to provide such deposit on account of the Distributable Proceeds Waiver, the non-cash portion of the bid, consistent with the authority granted to the Trustee under the Windown Order.<br><br>Given the Successful Bidder has already paid the purchase price in full, this point is moot. | "*[T]he Trustee's right to modify the foregoing Bid Requirements* . . . are fully preserved to the extent not materially inconsistent with this Order." Windown Order [Docket No. 859] ¶ 7. |

10

## II. Allegations of Collusion Are Baseless and Factually Inaccurate

8. In opposition to the Sale, FUAC argues Global Tetrahedron and the Connecticut Plaintiffs engaged in bid "collusion" and conduct showing "concerning" "cooperation between bidders."[10] Once again, this objection is based on a fundamental misunderstanding, this time of the law on bid collusion. Bid collusion exists when two parties who are already involved in a bidding process decide to hold back the bidding by teaming up to keep a price down. Allegations of collusion require a showing of price suppression such that the estate is worse off for collusive bidding conduct. In contrast, joint bids do not amount to collusion because joint bidders add more value to the estate over what sole a bidder may be willing to pay. In other words, there can be no collusion when the bid benefited the estate. As recognized in the leading bankruptcy law treatise, "[t]he mere existence of a joint bid does not itself amount to collusive bidding, and it is not uncommon for potential bidders to work together to give themselves more bidding power."[11] Courts have similarly recognized that the mere existence of a joint bid does not amount to collusion.[12] This is why the Winddown Order expressly contemplates joint bids.[13]

---

[10] FUAC Objection [Docket No. 963] ¶¶ 11, 54–55; *cf.* FUAC Motion to Disqualify [Docket No. 913] ¶ 9. Tellingly, while the Debtor previously raised "collusive bidding" in his TRO Complaint, not even he advances this in his present objection. *Compare* TRO Complaint [Docket No. 917] ¶ 2–4, 52–55, *with* Jones Objection [Docket No. 962].

[11] 3 Collier on Bankruptcy P 363.12.

[12] *See In re Edwards*, 228 B.R. 552, 566 (Bankr. E.D. Pa. 1998) ("Thus, the Vogel decision appears to reject Debtor's notion that an agreement between joint bidders that results in a single bid in exchange for some consideration must necessarily evidence bad faith.") (citing *Landscape Properties, Inc. v. Vogel*, 46 F.2d 1416 (8th Cir. 1995)); *In re New Energy Corp.*, 739 F.3d 1077, 1079 (7th Cir. 2014) ("Not that agreement among bidders necessarily deserves opprobrium. Joint ventures have the potential to improve productivity as well as the potential to affect prices; that's why in antitrust law they are analyzed under the Rule of Reason rather than a rule of per se illegality. All Natural Chem offered to show is that two other bidders formed a joint venture; this is short of establishing forbidden collusion. Perhaps the agreement increased the price realized—which could have harmed Natural Chem (had it bid) but would have helped New Energy's creditors and would have been a reason to confirm the sale rather than set it aside.").

[13] Winddown Order ¶ 6 ("Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the

9. Furthermore, section 363(n) of the Bankruptcy Code permits *only* the trustee to avoid a sale for collusion (when "the sale price was controlled by an agreement among potential bidders")—no party has standing to assert collusion other than the Trustee.[14]

10. Even setting aside FUAC's lack of standing to raise the matter, there can be no collusion because the joint bid "increased the price realized" and thus "helped [the estate]'s creditors."[15] The joint bid between Global Tetrahedron and the Connecticut Plaintiffs had the effect of *increasing* the consideration received by the estate, as the joint bid included the Distributable Proceeds Waiver, which conferred material additional value to creditors. For that reason, the Trustee, as fiduciary of the estate, determined following careful consideration that the GT Bid provided the highest value.[16]

11. FUAC has identified no facts that could possibly support a claim of collusion. While the objection attempts to cast doubt on the motives for holding a sealed bid auction instead of a live auction, the Trustee and Tranzon360 both will testify that the sealed bid auction format was chosen because it forces bidders to put their best bid forward to obtain the highest and the best

---

applicable Assets or otherwise participating in connection with such Sealed Bid, and the complete terms of any such participation . . . .").

[14] 11 U.S.C. §363(n) (listing the trustee as the only party authorized to bring a challenge to a sale under 11 U.S.C. § 363(n)); *In re New Energy Corp.*, 739 F.3d 1077, 1079 (7th Cir. 2014) ("[U]nder § 363(n), the trustee rather than a bidder is the right party to protest collusive sales" and explaining that a potential bidder lacks standing to object to an allegedly collusive auction because of the plain language of the statute limiting relief to the trustee and because potential bidders would be helped, not harmed, by collusion that chills the bidding); *In re Butan Valley v. Alkasabi*, 2009 WL 5205343, at *2 (S.D. Tex. Dec. 23, 2009) ("The only two claims asserted in the Adversary Proceeding Complaint are based on § 363(n). That statute provides clearly that it is the 'trustee' who may avoid a sale 'if the sale price was controlled by an agreement among potential bidders at such sale.' Alkasabi is not the 'trustee' and, as a result, he lacks standing to file and pursue a claim under § 363(n).") (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S. Ct. 1942 (2000) (interpreting similar language in different Bankruptcy Code provision as conferring standing on the trustee only)).

[15] *New Energy Corp.*, 739 F.3d at 1079.

[16] *See* Sale Motion ¶¶ 40–44 ("Based on this analysis, the Trustee determined that the GT Final Bid was the highest and best bid received and selected that bid as the winning bidder.").

price for creditors. That is what happened here: GT's bid was the highest and best bid. Indeed, given that FUAC bid against GT as part of a competitive bidding process—and lost—it is hard to claim bidders colluded to suppress price.

### III. The Auction May Not Be Reopened or Set Aside

12. To the extent the Debtor and FUAC seek the Court's discarding of the GT Bid and the Sales process because they are now upset with the result, that is improper. Absent allegations of fraud or similar conduct, court-ordered sales need finality. Finality serves the best interests of the estate and creditors because closing the Sale is the only way creditors realize any proceeds.

13. "The public policy of inspiring confidence in court-ordered sales favors confirmation of the Sale to the highest bidder at the auction if it is fairly conducted."[17] "If parties are to be encouraged to bid at judicial sales, there must be stability in such sales and a time must come when a fair bid is accepted and the proceedings are ended."[18]

14. Global Tetrahedron and the Connecticut Plaintiffs submitted the GT Bid in reliance on the bid process approved by this Court. They followed the procedures. Their combined bid of cash and cash-equivalents were found to be in the best interest of creditors pursuant to the Trustee's business judgment. The Debtor and FUAC have simply "assert[ed] without the submission of any documentary evidence that a better deal has been offered," in spite of the Trustee's business judgment, which cannot "show" either "the auction itself violated the law" nor that setting aside the "auction will prevent some apparent public harm. . . . [F]inality would serve better the ends of justice than [would] further delay."[19]

---

[17] *In re Bigler, LP*, 443 B.R. 101, 108 (Bankr. S.D. Tex. 2010) (quoting *First Nat'l Bank v. M/V Lightning Power*, 776 F.2d 1258, 1259 (5th Cir. 1985).

[18] *In re Webcor*, 392 F.2d 893, 899 (7th Cir. 1968).

[19] *Carroll v. Abide*, 2015 WL 5320917, at *5 n.1 (M.D. La. Sept. 11, 2015).

15. Tellingly, neither the Debtor nor FUAC objected to the auction until *after* FUAC failed to submit a bid higher than that of Global Tetrahedron and the Connecticut Plaintiffs. These "*post hoc* argument[s]" from parties who "never filed an objection at any time throughout the sale process" cannot provide basis for undoing the Sale. *Xu v. Messer*, 2021 WL 4462805, at *11 (E.D.N.Y. Sept. 29, 2021). If they could, it would be hard to finalize any sale—a party like FUAC could always show up after the fact and concoct process objections or claim that it would have submitted a higher bid for the assets. Rewarding such behavior would harm creditors by depriving them of the finality of a sale. And the resulting uncertainty would deter bidders in future bankruptcy sales. These concerns justify the deference embodied in the business judgment rule. And they explain why bidding procedures should not be second guessed when they complied with court orders, were known and open to all, and did not result in any objections until after the winner was announced. Because that describes the process here, the Court should approve the Sale.

Dated: December 9, 2024

Respectfully submitted,

*/s/ Gregg Costa*
**GIBSON, DUNN & CRUTCHER LLP**
Gregg Costa
State Bar No. 24028160
811 Main Street Suite 3000
Houston, TX 77002-6117
Telephone:     (346) 718-6600
Email: GCosta@gibsondunn.com

**GIBSON, DUNN & CRUTCHER LLP**
Jason Z. Goldstein (*pro hac vice* pending)
200 Park Avenue
New York, New York 100166
Telephone:     (212) 351-4000
Email: JGoldstein@gibsondunn.com

**Counsel to Global Tetrahedron, LLC**

**CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the foregoing Statement has been served on counsel for the Debtor, the Debtor, and all parties receiving or entitled to notice through CM/ECF on this 9th day of December, 2024.

                                            */s/ Angel Arias*
                                            Angel Arias