## **EXHIBIT A**

**Redline**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| In re: | § | Chapter 7 |
| | § | |
| ALEXANDER E. JONES, | § | Case No. 22-33553 (CML) |
| | § | |
| Debtor. | § | |
| | § | |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT,
(II) AUTHORIZING SALE OF PURCHASED ASSETS FREE
AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND
OTHER INTERESTS, AND (III) GRANTING OTHER RELATED RELIEF
[Relates to Docket No. ——915]**

Upon the motion (the "Motion"),[1] dated November 18, 2024, of the Trustee, pursuant to sections 105, 363, 365, and 704 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002(a)(2), 6004, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Local Rules") seeking, among other things, entry of an order (this "Sale Order") authorizing and approving the sale of the Purchased Assets to War Is Over LLC (together with its affiliates, including Global Tetrahedron, LLC, the "Purchaser"); and this Court having entered the *Order (I) Authorizing and Approving the Auction and Sale of Assets of Free Speech Systems, LLC Free and Clear of All Liens, Claims and Encumbrances and (II) Granting Related Relief* [Docket No. 859] (the "Winddown Order") authorizing, among other things, the Trustee to sell the assets of Free Speech Systems LLC ("FSS") free and clear of liens, claims, charges, encumbrances and interests pursuant to 11 U.S.C. § 363(b) and (f) pursuant to one or more asset sales; and this Court having entered the *Order*

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*Supplementing Order Dismissing Case* [Case No. 22-60043, Docket No. 1021], which deemed all property of the FSS bankruptcy estate to have vested in the bankruptcy estate of the above-captioned debtor Alexander E. Jones ("Jones" or the "Debtor") and under the control of the Trustee; and upon the Trustee determining, after conducting a sale process in accordance with the Winddown Order, that the joint bid submitted by the Purchaser and the Connecticut Families constitutes the highest and best bid for the Purchased Assets; and upon the *Notice of Successful Bidder and Backup Bidder in the Auction for the Assets of Free Speech Systems, LLC Free and Clear of Any and All Claims, Interests, and Encumbrances* [Docket No. 903] (the "Notice of Successful Bidder") declaring such joint bid the Successful Bid; and upon FSS and the Trustee (together, the "Seller") and the Purchaser having negotiated that certain *Asset Purchase Agreement*, dated as of November [●], 2024 ( (as amended by the terms of this Sale Order (solely with respect to the X Infowars Accounts), the "Asset Purchase Agreement"), a copy of which is annexed to the Motion as **Exhibit A**; and this Court having conducted a hearing to consider the Motion and the transactions contemplated under the Asset Purchase Agreement (collectively, the "Sale Transaction") on November [●]December 9, 2024 (the "Sale Hearing"), at which all interested parties were offered an opportunity to be heard with respect to the Sale Transaction; and it appearing that due and sufficient notice of the Motion, the Sale Hearing, and the Sale Order was provided; and, except as otherwise provided in this Sale Order, all objections to Sale Transaction and this Sale Order having been withdrawn, resolved, or overruled or otherwise addressed as provided for herein; and upon this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and upon the record of the Sale Hearing and this chapter 7 case; and after due deliberation and sufficient cause appearing

2

therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.       **Findings of Fact and Conclusions of Law**.  Findings of fact and conclusions of law herein constitute this Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  The Court's findings shall also include any oral findings of fact and conclusions of law made by this Court during or at the conclusion of the Sale Hearing.  This Sale Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.  Further, findings of fact and conclusions of law in the Winddown Order are incorporated herein by reference.

B.       **Jurisdiction and Venue**.  The Court has jurisdiction to consider the relief requested herein pursuant to 28 U.S.C. § 1334 and venue is proper before this Court pursuant to 28 U.S.C. § 1408.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

C.       **Bases for Relief**.  The bases for the relief requested in the Motion are sections 105, 363, 365, and 704 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 9007, and 9014, and Bankruptcy Local Rule 9013-1.  The consummation of the transaction contemplated by the Asset Purchase Agreement and this Sale Order is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and the Seller and the Purchaser have complied with all of the applicable requirements of such sections and rules in respect of such transaction.

D.       **Notice**.  Based upon the record of the Sale Hearing, and as previously determined by this Court in the Winddown Order, (i) notice of the Motion, the Sale Hearing, and the relief sought in this Sale Order has been provided to all parties in interest and was proper, timely,

3

adequate, and complied in all respects with section 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, the Local Rules, and the Winddown Order, and has been provided to all parties in interest, (ii) such notice was and is good, sufficient, and appropriate under the circumstances and reasonably calculated to reach and apprise all holders of liens, claims, encumbrances, and other interests, of their right to appear and be heard, and was provided in accordance with the applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the procedural due process requirements of the United States Constitution, (iii) no other or further notice of, opportunity to object to, or other opportunity to be heard regarding the Motion, the Sale Hearing, the Sale Transaction, or of the entry of this Sale Order is necessary or shall be required, and (iv) emergency relief being justified under all relevant circumstances.

E.    **Compliance with Winddown Order**.  On September 25, 2024, the Court entered the Winddown Order, which authorized, among other things, the Trustee to sell the assets of FSS free and clear of liens, claims, charges, encumbrances, and interests pursuant to sections 363(b) and (f) of the Bankruptcy Code in one or more asset sales.  The procedures set forth in the Winddown Order provided a full, fair, and reasonable opportunity for any entity or Person to make an offer to purchase the Purchased Assets.  The Seller, the Purchaser, and the Connecticut Families complied with the Winddown Order and the procedures set forth therein, as appropriately modified by the Trustee in the exercise of his business judgment and in accordance and compliance with such procedures.  The Purchaser and the Connecticut Families were designated the Successful Bidder for the Purchased Assets in accordance with the Winddown Order.

F.    **Authority**.  ~~The~~Except as otherwise provided herein, the Purchased Assets (as

modified herein (solely with respect to the X Infowars Accounts)) constitute property of the Jones estate and title thereto is vested in such estate within the meaning of section 541 of the Bankruptcy Code.  The Seller (i) has full power and authority to execute the Asset Purchase Agreement, (ii) has all of the power and authority necessary to consummate the Sale and all transactions contemplated by the Asset Purchase Agreement, (iii) has taken all action necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Seller of the Sale and all transactions contemplated thereby, and (iv) requires no further consents or approvals, other than this Sale Order.

G.     **Marketing and Sale Process**.  As demonstrated by (a) the Motion, the testimony and other evidence proffered or adduced at the Sale Hearing, and the representations of counsel made on the record at the Sale Hearing: (i) the Trustee and his professionals engaged in a robust and extensive marketing and sale process pursuant to the Winddown Order; (ii) the Trustee and his advisors conducted a fair and open sale process; (iii) the sale process and the procedures set forth in the Winddown Order were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Purchased Assets; and (iv) the sale process conducted by the Trustee and his professionals pursuant to the Winddown Order obtained the highest and best value for the Purchased Assets, and there was no other transaction available or presented that would have yielded as favorable an economic result for the Purchased Assets.

H.     **Highest and Best Value; Business Judgment**.  The consideration to be provided by Purchaser and the Connecticut Families consists of (i) cash consideration in the amount of $1,750,000 (the "Cash Purchase Price") and (ii) a commitment by the Connecticut Families to forego the Distributable Proceeds Waiver Amount (as defined below) and the assignment of the

Distributable Proceeds Waiver Amount to the Trustee for the benefit of all other unsecured creditors of FSS.  The "Distributable Proceeds Waiver Amount" means ~~the amount necessary for all other holders of allowed unsecured creditors of FSS to recover $100,000 more, in the aggregate, than they would recover from the sale of the Purchased Assets to the Backup Bidder, up to 100% of the Connecticut Families' entitlement to the Cash Purchase Price.~~ $750,000 of the Cash Purchase Price that the Connecticut Families would otherwise be entitled to receive based on the assumptions set forth in paragraph 43 of the Motion; *provided, however,* that all rights of the Texas Families to assert that the Distributable Proceeds Waiver Amount should be greater than $750,000 are fully preserved and, at such time that the allowed amounts of all claims against FSS are determined, the Texas Families may request that the Court increase the Distributable Proceeds Waiver Amount up to an amount not to exceed the Net Purchase Cash (as defined in paragraph 43 of the Motion) to the extent that the Texas Families would have recovered more if the Successful Bidder provided a Cash Purchase Price of $7,000,000 and the Connecticut Families had not agreed to the Distributable Proceeds Waiver.  The Cash Purchase Price and the Distributable Proceeds Waiver to be provided by the Purchaser and the Connecticut Families, respectively, under the Asset Purchase Agreement and pursuant to this Sale Order is fair and reasonable consideration for the Purchased Assets and constitutes reasonably equivalent value, fair consideration and fair value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable laws of the United States, any state, territory or possession or the District of Columbia.  Such consideration constitutes the highest and best bid for the Purchased Assets and is in the best interests of the estate, its, and all other parties in interest.  No other person or entity, or group of persons or entities, has offered to purchase the Purchased Assets for

15668021

an amount that would provide greater value to the chapter 7 estate than the Purchaser and the Connecticut Families.

I.  **Selection of Purchaser**.  On November 14, 2024, the Trustee filed the Notice of Successful Bidder designating the Purchaser and the Connecticut Families as the Successful Bidder and First United American Companies, LLC as the Backup Bidder.

J.  **Sound Business Purpose**.  The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for entry into the Asset Purchase Agreement, and the other agreements, documents, and instruments deliverable thereunder or attached thereto or referenced therein (collectively, the "Transaction Documents"), and approval of the Sale Transaction.  The Trustee's entry into and performance under the Transaction Documents (i) constitute a sound and reasonable exercise of the Trustee's business judgment consistent with his fiduciary duties, (ii) provide value and are beneficial to the Jones and FSS estates, and are in the best interests of such estates and their stakeholders, and (iii) are reasonable and appropriate under the circumstances.  The business justification for the Sale Transaction includes, but is not limited to, the Cash Purchase Price, the Distributable Proceeds Waiver, and the other terms set forth in the Asset Purchase Agreement constituting the highest and best offer received for the Purchased Assets.

K.  **Time of the Essence**.  Time is of the essence in effectuating the Sale Transaction without interruption, and to maximize the value that the Purchaser and the Trustee may realize from entering into the Asset Purchase Agreement.  Accordingly, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a)(3) and 6004(h) and permit the immediate effectiveness of this Sale Order.

L.  **Sale Free and Clear**.  Except as otherwise expressly provided herein, the Trustee

15668021

is authorized to sell the Purchased Assets to the Purchaser free and clear of all liens, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), property interests, rights, liabilities, encumbrances, pledges, and other interests of any kind or nature whatsoever against the Trustee, Jones, or FSS, or the Purchased Assets owned by the Trustee, Jones, or FSS, including, without limitation, all Excluded Liabilities (as defined in the Asset Purchase Agreement) and any debts, claims, rights, causes of action, and/or suits arising under or out of, in connection with, or in any way relating to, any acts, omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employee retirement or benefit plan claims, severance claims, retiree healthcare or life insurance claims, and/or claims for taxes of or against the Trustee, Jones, or FSS and/or the Purchased Assets to the maximum extent available under applicable law, and any derivative, vicarious, transferee, or successor liability claims, rights, or causes of action (whether in law or in equity, under any law, statute, rule, or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), whether arising prior or subsequent to the commencement of this case, whether known or unknown, whether fixed or contingent, whether anticipated or unanticipated, whether yet accrued or not, and whether imposed by agreement, understanding, law, equity or otherwise arising under or out of, in connection with, or in any way related to the Trustee, Jones, FSS, their respective interests in the Purchased Assets, the operation of FSS's business prior to closing the Sale Transaction, or the transfer of the Trustee's interests in the Purchased Assets to the Purchaser, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of liens, claims, interests, or encumbrances who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction or the Motion have either consented to

15668021

or are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.  In addition, one or more of the other subsections of section 363(f) of the Bankruptcy Code apply and, therefore, holders of liens, claims, interests, or encumbrances with an interest in the Purchased Assets owned by the Trustee, Jones, or FSS are adequately protected by having their claims that constitute interests in such Purchased Assets attach solely to the proceeds of the Sale Transaction in the same order of priority and with the same extent, validity, force, and effect that such holders had prior to the Sale Transaction and by providing for the distributions provided for herein.  All persons having claims of any kind or nature whatsoever against the Trustee, Jones, FSS, or the Purchased Assets shall be forever barred, estopped, and permanently enjoined from pursuing or asserting such claims against the Purchaser or any of its assets, property, affiliates, successors, assigns, or the Purchased Assets.  The Purchaser would not have entered into the Asset Purchase Agreement, and the Purchaser would not have provided the consideration thereunder and set forth herein if the Trustee was not authorized to sell the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests.  A sale of the Purchased Assets, other than one free and clear of all liens, claims, encumbrances, and other interests would yield substantially less value, with less certainty than the Sale Transaction.  For avoidance of doubt, nothing in this paragraph or elsewhere shall be construed as a finding that the Trustee, Jones, FSS, or the Purchaser owns the X Infowars Accounts (as defined herein) nor that any interest transferred in such accounts is free and clear of X Corp.'s ownership of the X Infowars Accounts.

      M.    **Arm's-Length Sale**.  The consideration to be provided by the Purchaser and the Connecticut Families including, for the avoidance of doubt, the Cash Purchase Price and the Distributable Proceeds Waiver, was negotiated at arm's-length and constitutes reasonably

9

equivalent value and fair and adequate consideration for the Purchased Assets under the Bankruptcy Code and the laws of the United States and any state, territory, or possession thereof. The terms and conditions set forth in the Asset Purchase Agreement are fair and reasonable and were not entered into with the intent to nor for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Trustee, Jones, FSS, or any of their respective creditors under any applicable laws.  Neither the Trustee, the Purchaser, nor the Connecticut Families are entering into the Asset Purchase Agreement or proposing to consummate the Sale Transaction fraudulently, for the purpose of statutory or common law fraudulent conveyance, or to fraudulently transfer assets, whether under the Bankruptcy Code or under the laws of the United States, or any state, territory, or possession thereof or any other applicable jurisdiction.

N.     **Good Faith**.  The Sale Transaction was negotiated by the Trustee, the Purchaser, the Connecticut Families, and their respective professionals, and the Asset Purchase Agreement was and entered into, based upon arm's length bargaining, without collusion or fraud, and in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code.  The Purchaser and the Connecticut Families are consummating the Sale Transaction, and the Purchaser is entering into the Asset Purchase Agreement, in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and the court decisions applying or interpreting such provision, and is therefore entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code with respect to all aspects of the transactions contemplated by the Asset Purchase Agreement and this Sale Order and otherwise has proceeded in good faith in all respects in connection with Sale Transaction.  Neither the Trustee, nor the Purchaser, nor the Connecticut Families, nor any of the professionals of the foregoing parties has engaged in any conduct that would cause or permit the Sale Transaction, the Asset Purchase

Agreement, or any related action or the Sale Transaction contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of section 363(m) of the Bankruptcy Code.  Neither the Purchaser nor the Connecticut Families has violated section 363(n) of the Bankruptcy Code by any action or inaction.  Specifically, neither the Purchaser nor the Connecticut Families has acted in a collusive manner with any person in connection with the Sale Transaction, and the price obtained for the Purchased Assets was not controlled by any agreement among bidders.  The prospective performance of the Purchaser and the Connecticut Families, including the payment of amounts owing under the Asset Purchase Agreement and implementation of the Distributable Proceeds Waiver are in good faith and for valid business purposes and uses.

O.      **Insider Status**:  Neither the Purchaser nor the Connecticut Families are an "insider" of Jones, FSS, or the Trustee, as that term is defined in section 101(31) of the Bankruptcy Code.

P.      **No Successor Liability**:  No sale, transfer, or other disposition of the Purchased Assets pursuant to the Asset Purchase Agreement and this Sale Order will subject the Purchaser to any liability for claims, obligations or encumbrances asserted against Jones, FSS, or the Trustee or their respective interests in such Purchased Assets by reason of such transfer under any laws, including any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger, or substantial continuity or similar theories.  By virtue of the consummation of the Sale Transaction contemplated by the Asset Purchase Agreement, (i) the Purchaser is not a continuation of Jones, FSS, their respective estates, or the Trustee, there is no continuity or continuity of enterprise between, on the one hand, the Purchaser, and, on the other hand, Jones, FSS, and/or the Trustee, and there is no

11

common identity between, on the one hand, the Purchaser and, on the other hand, Jones, FSS, and/or the Trustee; (ii) the Purchaser is not holding itself out to the public as a continuation of Jones, FSS, or their respective estates, or the Trustee; and (iii) the Sale Transaction does not amount to a consolidation, merger, or de facto merger of, on the one hand, the Purchaser and, on the other hand, Jones, FSS, or their respective estates, or the Trustee, on the other hand. Accordingly, the Purchaser is not and shall not be deemed a successor to Jones, FSS, their respective estates, or the Trustee as a result of the consummation of the Sale Transaction contemplated by the Asset Purchase Agreement.

Q.     **Validity of Transfer**.  The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets, and will vest the Purchaser with any and all legal, equitable and beneficial right, title, and interest of the Trustee in and to the Purchased Assets, free and clear of all Claims (other than as set forth <u>herein (solely with respect to the X Infowars Accounts) or</u> in the Asset Purchase Agreement).  The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

R.     **Backup Bid**.  First United American Companies, LLC was designated as the Backup Bidder.  The bid submitted by First United American Companies, LLC is the Backup Bid and shall remain open as the Backup Bid in accordance with the Winddown Order.

S.     **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**. The sale of the Purchased Assets must be approved and consummated promptly in order to preserve the value of the Purchased Assets.  Therefore, time is of the essence in consummating the Sale Transaction, and

the Trustee, FSS, and the Purchaser intend to close the Sale Transaction as soon as reasonably practicable.  The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction as contemplated by the Asset Purchase Agreement.  Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regard to the transactions contemplated by this Sale Order.

T.    **X Corp. Objection.**  *X Corp.'s Limited Objection to Trustee's Proposed Sale Motion* [ECF No. 937] (the "X Corp. Objection") is sustained with respect to the X Infowars Accounts, but not with respect to the Alex Jones X Account (as defined in the X Corp. Objection) or any other X account licensed to the Alex Jones bankruptcy estate, to which the rights of all parties are fully reserved.  Solely as to the X Infowars Accounts, the Trustee agrees that the X Infowars Accounts are not property of the Jones Chapter 7 estate or the FSS estate, and the Purchased Assets do not include the X Infowars Accounts.  Neither the Trustee, Jones, nor FSS, have the ability to sell, assign, or otherwise transfer any related license to any party absent the express prior consent of X Corp.

U.    ~~T.~~ **Final Order**.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction as contemplated by the Asset Purchase Agreement.  In the absence of a stay pending appeal, Purchaser, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the sale contemplated by the Asset Purchase Agreement at any time after the entry of this Sale Order and shall not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

13

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

A.   **Motion is Granted**

1.       To the extent not already approved pursuant to the Winddown Order, the Motion and the relief requested therein is granted and approved as set forth herein.

B.   **Objections Overruled**

2.       ~~All~~Except as otherwise provided here with respect to the X Corp. Objection, all objections, statements, and reservations of rights to the relief granted herein that have not been withdrawn with prejudice, waived, or settled are overruled and denied on the merits with prejudice.

C.   **Asset Purchase Agreement Approved and Authorized**

3.       The Asset Purchase Agreement (as amended by this Sale Order (solely with respect to the X Infowars Accounts)), including the Sale Transaction contemplated thereby, and all of the terms and conditions thereof, are hereby authorized and approved in their entirety and are incorporated herein by reference.  The failure specifically to include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement, and the Trustee's entry therein, be authorized and approved in its entirety.

4.       The Trustee is authorized under 11 U.S.C. § 363(b) and (f) to sell and transfer the Purchased Assets free and clear of all liens, claims, encumbrances, and interests pursuant to the terms of the Asset Purchase Agreement and this Sale Order, with all liens, claims, encumbrances, and interests to attach to the proceeds of the Sale Transaction in the same amount and priority, with the  same validity and enforceability, and subject to the same defenses as existed immediately before the closing of the sale except as otherwise provided herein; *provided*

15668021

*that*, for the avoidance of doubt, the Purchased Assets shall not include the X Infowars Accounts.

5.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Trustee is authorized to execute, deliver, perform under, consummate, and implement all additional instruments and documents that may be reasonably necessary or desirable to implement the obligations under and comply with the terms of the Asset Purchase Agreement and the Winddown Order, as applicable, and to consummate the Sale Transaction contemplated herein and in the Asset Purchase Agreement, including, without limitation, by taking any and all further actions as may be (i) reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to ~~the Successful Bidder~~Purchaser, or reducing to possession, the Purchased Assets, (ii) necessary, appropriate, or desirable to implement the Sale Transaction pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement and this Sale Order, or (iii) necessary or appropriate to the performance of the Trustee's obligations contemplated by the Asset Purchase Agreement, all without further order of the Court.

6.      The Asset Purchase Agreement may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order  of the Court, provided  that  any  such  modification,  amendment,  or  supplement  does  not,  based  on  the Trustee's business judgment, and in consultation with the Purchaser (or their designees or representatives), have a material adverse effect on the estates of Jones or FSS or their respective creditors.   The Trustee may make any such modification, amendment, or supplement of the Asset Purchase Agreement solely with the prior written consent of the Purchaser.   For the avoidance of doubt, all other modifications, amendments, or supplements that have a material adverse effect on the estate of Jones or FSS or their respective creditors shall require Court

approval.

D.     **Order Binding**

7.     This Sale Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets.

8.     This Sale Order and the terms and provisions of the Asset Purchase Agreement shall be binding on all of Jones's and FSS's creditors (whether known or unknown), Jones, FSS, the Purchaser, the Connecticut Families, the Trustee, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting a lien, claim, or encumbrance or assert any interest or cause of action in the Purchased Assets. The provisions of this Sale Order and the terms and provisions of the Asset Purchase Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order, and the terms and provisions of the Asset Purchase Agreement, as well as the rights and interests granted pursuant to this Sale Order and the Asset Purchase Agreement, shall continue in these or any superseding cases and shall be binding upon Jones, FSS, the Purchaser, the Connecticut Families, the Trustee, and their respective successors and permitted assigns, and any such successor shall continue to hold the Purchased Assets and any proceeds of the same strictly in trust for the benefit of the Purchaser.

E.     **Distributable Proceeds Waiver**

9.     The Distributable Proceeds Waiver and the Distributable Proceeds Waiver

16

Amount are hereby approved.  The Connecticut Families shall forego the Distributable Proceeds Waiver Amount and assign such amount to the Trustee for the benefit of all other unsecured creditors otherwise entitled to proceeds of FSS assets as part of the Sale Transaction and in connection with the closing thereof.  Notwithstanding the Distributable Proceeds Waiver, the Connecticut Families shall, for purposes of determining the maximum recoverable amount of any claim against FSS or Jones, whether or not such claim is dischargeable or non-dischargeable, be deemed to have recovered their *pro rata* share of a $7,000,000 Cash Purchase Price.  As a result, the Connecticut Families recovery on any claim against FSS or Jones shall be limited to (i) the allowed amount of any claim against Jones or FSS, *minus* (ii) the *pro rata* amount that the Connecticut Families would have received from the Trustee had the Successful Bidder paid a Cash Purchase Price of $7,000,000.

F.     **Transfer of Purchased Assets**

10.     All persons or entities in possession of some or all of the Purchased Assets (as modified herein (solely with respect to the X Infowars Accounts)) are directed to surrender possession of such assets to the Purchaser or its designee at the time of the Asset Purchase Agreement's closing.   To the extent provided by Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, and conveyed to the Purchaser on account of the filing or pendency of Jones's or FSS's bankruptcy cases or the consummation of the Sale Transaction.

G.     **Standing**

11.     The Purchaser and the Connecticut Families are parties in interest and shall have the ability to appear and be heard on all issues that would affect the rights of the Purchaser or the Connecticut Families under this Sale Order, any issues related to or otherwise connected to the

17

Sale Transaction, and the Asset Purchase Agreement.   The Purchaser and the Connecticut Families has standing to seek to enforce, among other things, the terms of this Sale Order.

H.   **Automatic Stay**

12.   The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of their respective remedies under the Asset Purchase Agreement or any other Transaction Documents.   The automatic stay imposed by section 362 of the Bankruptcy Code is modified to the extent necessary to consummate the Asset Purchase Agreement and implement the provisions of this Sale Order.

I.   **No Interference**

13.   Subject to the terms, conditions, and provisions of this Sale Order, all Persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Seller to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Asset Purchase Agreement and this Sale Order and shall not interfere with the Purchaser's ownership or operation of the Purchased Assets.

J.   **Good Faith**

14.   Neither the Trustee, the Purchaser, the Connecticut Families, nor any of the professionals of any of the foregoing parties has engaged in any action or inaction that would cause or permit the Sale Transaction to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

15.   The sale of the Purchased Assets, the consideration to be paid, including the Cash Purchase Price and the Distributable Proceeds Waiver, and entry into the Asset Purchase Agreement is undertaken by the parties thereto without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and the Purchaser and the Connecticut

Families shall be protected by section 363(m) of the Bankruptcy Code in the event that this Sale Order is reversed or modified on appeal. The reversal or modification on appeal of the authorization provided herein to enter into the Asset Purchase Agreement and consummate the Sale Transaction contemplated thereby shall not affect the validity of such transactions, unless such authorization is duly stayed pending such appeal. The Purchaser and the Connecticut Families are entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code. The Sale Transaction is not subject to avoidance pursuant to section 363(n) or chapter 5 of the Bankruptcy Code and the Purchaser and the Connecticut Families are entitled to all of the protections and immunities thereunder.

K.    **Free and Clear**

16.    The Asset Purchase Agreement meets the applicable provisions of section 363(f) of the Bankruptcy Code in full such that the sale of the Purchased Assets shall be free and clear of any and all interest of any kind or nature whatsoever in the Purchased Assets of any entity (collectively, "Interests"), including, without limitation:   (a) all liens and encumbrances relating to, accruing, or arising at any time prior to the closing date (collectively, the "Liens"); and (b) all debts arising under, relating to, or in connection with any act of FSS or Jones or any claims (as defined in Bankruptcy Code section 101(5)), liabilities (including successor or successor-in-interest liability), obligations, demands, guarantees, options in favor of third parties, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of the FSS or Jones bankruptcy cases, and whether imposed by agreement, understanding, law, equity, or otherwise (collectively, the "Claims").   For the avoidance of doubt, the terms "Liens" and "Claims," as used herein, include, without limitation, (a) rights with respect to any Liens and Claims that

purport to give any party a right of setoff or recoupment against, or right or option to affect any forfeiture, modification, profit-sharing interest, right of first refusal, purchase or repurchase option, termination of, any of the Trustee's, FSS's, Jones's, or Purchaser's interest in the Purchased Assets, or any similar rights and (b) in respect of taxes, restrictions, rights of first refusal, charges of interest of any kind and nature, if any, and including, without limitation, any restrictions of use, voting, transfer, receipt of income, or other exercise of any of the attributes of ownership relating to, accruing, or arising at any time prior to the closing, with the exception of any permitted encumbrances or assumed liabilities that are expressly assumed by the Purchaser pursuant to the Asset Purchase Agreement.  The sale of the Purchased Assets will not subject the Purchaser to any liability for any Liens, Claims, and Interests whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability), except as expressly provided in the Asset Purchase Agreement; *provided that*, nothing herein shall or be deemed to impair or otherwise impact X Corp.'s ownership rights in the X Infowars Accounts.

17.    Except as provided in the Distributable Proceeds Waiver, all holders of Liens, Claims, and Interests who did not object, or withdrew their objections to the Sale Transaction, are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy       Code, and all holders of Liens, Claims, and Interests are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their Liens, Claims, and Interests, if any, attach to the proceeds of the Sale Transaction ultimately attributable to the property against or in which they assert Liens, Claims, and Interests, or other specifically dedicated funds, in the same order of priority and with the same validity, force, and effect that such holder had prior to the Sale Transaction, subject to any rights, claims, and

15668021

defenses of the Trustee or the estates of Jones or FSS, as applicable. Those holders of Liens, Claims or Interests who did object and that have an interest in the Property fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

18.    Except as otherwise provided in the Asset Purchase Agreement, effective upon the closing, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, vendors, trade creditors, litigation claimants, and other creditors are hereby forever barred, estopped, and permanently enjoined from asserting, commencing, or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser, its affiliates, successors, assigns or designees, or their respective assets and property (including, without limitation, the Purchased Assets), any (a) Claim arising under or out of, in connection with, or in any way relating to, the Jones, FSS, the Trustee, the Purchased Assets, the operation or ownership of the Purchased Assets by the Trustee prior to the closing, or the Sale Transaction, (b) successor or transferee liability including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien, Claim, or Interest; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating, failing, or refusing to renew any license, permit, or authorization to

15668021

operate any business or conduct any of the businesses operated with respect to such assets.

19.     ~~Following~~Except as provided herein (solely with respect to the X Infowars Accounts), following the closing of the Sale Transaction, no holder of any Lien, Claim, or Interest shall interfere with the Purchaser (or its designee's) title   to or use and enjoyment of the Purchased Assets based on or related to any such Lien, Claim, or  Interest or based on any action the Trustee, Jones, or FSS may take.

20.     The Purchaser shall not be deemed, as a result of any action taken in connection with the Asset Purchase Agreement, the consummation of the Sale Transaction, or the transfer, operation, or use of the Purchased Assets to (a) be a legal successor, or otherwise be deemed a successor to Jones or FSS (other than as set forth in the Asset Purchase Agreement and any liabilities assumed in accordance therewith), (b) have, de facto or otherwise, merged with or into Jones or FSS, or (c) be an alter ego or a mere continuation or substantial continuation of Jones, FSS, or the enterprise of Jones or FSS including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, tax law, products liability law, or other law, rule, or regulation (including, without  limitation, filing requirements under any such laws, rules or regulations), or  under any doctrine with respect to Jones's or FSS's liability under such law, rule, or regulation.

21.     All persons are enjoined from in any way pursuing the Purchaser, or any affiliates or representatives of the Purchaser, or the Purchased Assets to recover any lien, claim, or encumbrance or assert any interest or cause of action, which such person has against Jones, FSS, or the Purchased Assets, which has been released pursuant to this Sale Order.

22.     Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other

governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

L.      **Transaction Closing**

23.     Closing of the foregoing Sale Transaction shall occur in accordance with the Asset Purchase Agreement as modified herein (solely with respect to the X Infowars Accounts), and subject to satisfaction of the conditions set forth in the Asset Purchase Agreement, including but not limited to, the contingencies and the conditions precedent to closing set forth in Article VI of the Asset Purchase Agreement.

24.     At or as promptly as practical after the closing of the Sale Transaction, the Trustee is authorized and directed to pay from the Sale Transaction proceeds the reasonable, and ordinary and customary closing costs, including reasonable and customary professional fees directly related to the Sale Transaction, transfer taxes, delinquent or owing taxes, other fees or costs to be paid by the Trustee on behalf of Jones or FSS, pursuant to the Asset Purchase Agreement.

M.      **Binding Order**

25.     The terms and provisions of this Sale Order and any actions taken pursuant hereto shall survive entry of any subsequent orders which may be entered dismissing this chapter 7 case or modifying the *Order Supplementing Order Dismissing Case* [Case No. 22-60043, Docket No. 1021].

26.     To the extent there is any conflict between the terms of this Sale Order and the Asset Purchase Agreement, the terms of this Sale Order shall control. Nothing in any other order of the Court shall conflict with or derogate from the provisions of the Asset Purchase

Agreement or any other Transaction Document or the terms of this Sale Order.

N.     **X Corp. Settlement**

      a.   **No Sale of X Infowars Accounts**

    27.     Prior to consummating the Sale Transaction, the Trustee shall confirm in writing (email being sufficient) to X Corp. (and its counsel) and the Purchaser that the Trustee has exclusive and full access to the passwords and usernames of (a) the Infowars X account (https://x.com/infowars); (b) the Banned.Video X account https://x.com/BANNEDdotVIDEO); and (c) The War Room X account (https://x.com/WarRoomShow) (collectively, the "X Infowars Accounts"). The Trustee shall be permitted to change the password of each X Infowars Account to ensure exclusive access. Pursuant to the terms of this Sale Order and the Asset Purchase Agreement, X Corp. acknowledges and agrees that the Purchaser is acquiring certain intellectual property rights related to FSS and Infowars (the "Infowars Intellectual Property Rights"), however, the Trustee and the Purchaser acknowledge and agree that the Infowars Intellectual Property Rights do not include the X Infowars Accounts, excluding the Content (as defined in the X TOS (as defined in the X Corp. Objection)) including, for the avoidance of doubt, all nonpublic content) in and posted on the X Infowars Accounts. Notwithstanding, X Corp. understands and agrees that the Purchaser asserts all rights and claims to the intellectual property pursuant to the terms of the Asset Purchase Agreement, including but not limited to, the wordmark "Infowars," all other wordmarks listed in the Asset Purchase Agreement, and their respective corresponding design marks, and all other Infowars Intellectual Property Rights.

      b.   **Ownership of X Infowars Accounts**

    28.     The Trustee acknowledges and agrees solely that the X Infowars Accounts are not property of the Jones Chapter 7 estate or the FSS estate and the Trustee cannot (i) sell, assign or

otherwise transfer the X Infowars Accounts or (ii) sell, assign or otherwise transfer any related license to such accounts, in each case, to any party absent the express consent of X Corp., which X Corp. does not provide; *provided however*, that the foregoing is not intended to and shall not restrict the Trustee from selling the Content to Purchaser and transferring such Content to the Purchaser at the Closing Date.  The Trustee further agrees that the Trustee will not attempt to sell, transfer, or assign any of the X Infowars Accounts to the Purchaser or anyone else in the future absent the consent of X Corp.  For the avoidance of doubt, and notwithstanding anything to the contrary herein, such agreements are solely in connection with a settlement of the disputes concerning the X Infowars Accounts and all parties reserve all rights with respect to all other X accounts licensed to  the Alex Jones Chapter 7 bankruptcy estate.

### c.   Transfer of Content

29.   Upon confirmation that the Trustee has exclusive and full control over the X Infowars Accounts and before consummating the Sale Transactions, the Trustee shall download all Content on the X Infowars Accounts and shall transfer the Content from the X Infowars Accounts to the Purchaser as part of the consummation of the Sale.  After such transfer, the Trustee shall remove all Content from the X Infowars Accounts. The Trustee and the Purchaser shall use their best efforts to complete such transfer.  If they are unable to complete such transfer despite their best efforts, then X Corp. shall provide reasonable assistance to facilitate such transfer.

30.   After consummating the Sale Transaction, the Trustee shall not deactivate or terminate the X Infowars Accounts absent the express prior written consent of the Purchaser (such consent to be provided or withheld by the Purchaser in its sole discretion).   Except as otherwise expressly agreed by the Successful Bidder and the Trustee, in advance in writing, the

Trustee shall otherwise not access the X Infowars Accounts, and shall not allow any third party access to the X Infowars Accounts in any way.  Notwithstanding anything to the contrary herein, X Corp.'s agreement contained in this Sale Order are not, and shall not be construed as, an assurance and/or an agreement by X Corp. to the Purchaser with respect to who would be able to use the usernames related to the X Infowars Accounts in the event of deactivation or termination of such accounts (if any) by the Trustee.

31.     X Corp. acknowledges and agrees that, following the Closing Date, the Purchaser shall own and have exclusive rights to the Content, including, without limitation, the wordmark "Infowars", all other wordmarks listed in the Asset Purchase Agreement, and their respective corresponding design marks, and all other Infowars Intellectual Property Rights.

**d.  Account Access**

32.     The Trustee shall log in to each of the X Infowars Accounts at intervals of no more than fifteen (15) calendar days (the "Account Access Requirement"), unless the Purchaser and the Trustee mutually agree otherwise in writing.  The Trustee shall provide written notice to each of the Purchaser and X Corp. (which may be by e-mail to counsel) within two (2) business days of each log in, which notice shall detail the name of each X Infowars Account so logged in and the date of the most recent log in.

33.     Effective as of the date of the closing of the Sale Transaction, the Purchaser and Trustee hereby absolutely, unconditionally and irrevocably mutually release and forever discharge and acquit each other from any and all obligations and liabilities of the other party (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen

15668021

or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, in each case solely related to the Account Access Requirement; *provided, however*, that the foregoing shall not apply in the case of any action or inaction that constitutes fraud, willful misconduct, or gross negligence.  For the avoidance of doubt, nothing in this release shall relieve any of the parties of their obligations under this this Sale Order.

### e.  Release

34.    Effective as of the date of the closing of the Sale Transaction, the Purchaser and X Corp. hereby absolutely, unconditionally and irrevocably mutually release and forever discharge and acquit each other from any and all obligations and liabilities of the other party (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, in each case arising out of or related to (as applicable) the Asset Purchase Agreement, the Sale Transaction or the negotiation thereof or of the transactions and agreements reflected thereby.  For the avoidance of doubt, nothing in this release shall relieve any of the parties of their obligations under this this Sale Order.

### f.  Enforcement of Settlement

35.    The Bankruptcy Court shall retain exclusive jurisdiction over disputes regarding infringement of the settlement described herein with respect to the X Infowars Accounts and the Purchaser's intellectual property rights; *provided* that the foregoing shall not apply to any

15668021

disputes regarding any alleged third-party infringement of such property rights on the X platform or the application of X Corp.'s TOS or policies to content on the X platform (the jurisdiction of such disputes shall be governed by the then-effective TOS).  The Trustee, the Purchaser, and X Corp. agree that money damages may not be a sufficient remedy for any breach of the respective parties' rights and obligations hereunder or the Purchaser's intellectual property rights and that the Purchaser and X Corp., as applicable, shall each be entitled to seek, in addition to all other rights and remedies available at law or in equity, specific performance and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages) to remedy any breach or threatened breach of their respective obligations hereunder.  Each Party agrees not to oppose such application for relief on the basis that there is an adequate remedy at law and agrees to waive any requirement for securing or posting any bond in connection with such remedy.

O. N. **Waiver**

36. 27. The 14-day stay of this Sale Order under Fed. R. Bankr. P. 6004(h) is waived, for cause, and this Sale Order is effective immediately upon its entry.

P. O. **Exclusive Jurisdiction**

37. 28. The Court shall retain exclusive jurisdiction with respect to the implementation, enforcement, terms and provisions of this Sale Order and the Asset Purchase Agreement.

Q. P. **Inconsistencies with Prior Orders or Pleadings**

38. 29. To the extent this Sale Order is inconsistent or conflicts with any prior order or pleading in this Chapter 7 Case, the terms of this Sale Order shall govern and any prior orders shall be deemed amended or otherwise modified to conform herewith.

**Signed: _____, 2024**

_____
**HONORABLE CHRISTOPHER M. LOPEZ**
**UNITED STATED BANKRUPTCY JUDGE**

15668021