IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: ALEXANDER E. JONES | § | |
| | § | CASE NO. 23-33553 (CML) |
| | § | |
| Debtor. | § | Chapter 7 |

---

**RESPONSE AND OBJECTION TO THE TRUSTEE'S EXPEDITED MOTION FOR
ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT
BY AND BETWEEN THE CHAPTER 7 TRUSTEE, THE CONNECTICUT FAMILIES
AND THE TEXAS FAMILIES AND (II) GRANTED RELATED RELIEF
[Dkt #1011]
AND SUBJECT TO THE PENDING ALEXANDER E. JONES EXPEDITED FIRST
MOTION FOR CONTINUANCE AND FOR EXPEDITED DISCOVERY [Dkt # 1022]
AND
SUBJECT TO HEARING ON AND CONSIDERATION OF THE ALEXANDER E.
JONES'S MOTION TO RECONSIDER THIS COURT'S ORDER DETERMINING
THAT CONNECTICUT JUDGMENT ON APPEAL BARS CHALLENGES TO JONES'S
DISCHARGEABILIY [Dkt # 127 in Adversary #23-03037]**

---

TO THE HONORABLE CHRISTOPHER LOPEZ, UNITED STATES BANKRUPTCY JUDGE:

Alexander E. Jones ("Jones"), as the Chapter 7 Debtor[1] and Defendant in the pending

Objections to Dischargeability, individually, and the sole managing member of Free Speech

Systems, LLC ("FSS") files this Response and Objection (the "Objections") to the Trustee's

Expedited Motion for Entry of an Order (i) Authorizing and Approving the Settlement by and

Between the Chapter 7 Trustee, the Connecticut Families, and the Texas Families and (ii) Granting

Related Relief (the "**Settlement Motion**"), in all things subject to the pending Alexander Jones

Motion for Continuance of, and Expedited discovery related to the this Settlement Motion  [Dkt

---

[1]      Jones status as a Chapter 7 Debtor arises from the Order Converting Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code [Dkt #708] on June 14, 2024 (the "Conversion Date") converting the Jones Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code. On the Conversion Date, the United States Trustee for the Southern District of Texas appointed Christopher R. Murray as the chapter 7 trustee in the Jones Chapter 7 Case [Dkt #709].

#1022] and, further subject to the requested Hearing on the pending Alex Jones Motion to Reconsider the Interlocutory Partial Summary Judgment Order determining that the Connecticut Judgment now on appeal bars challenges to Jones's Dischargeabiliy [Dkt #127 in Adversary #23-03037], and would show as follows:

**I.**
**PRELIMINARY STATEMENT**

**A.    JONES HAS STANDING TO OBJECT TO THE SETTLEMENT MOTION AND ATTEMPT TO ARRANGE THE DISMISSAL OF THE JONES AND FSS APPEALS**

1.     Jones is the Chapter 7 Debtor referenced in the Settlement Motion and against whom relief is sought (although shaded in ambiguities) along with Free Speech Systems, LLC ("FSS").  Accordingly, Jones individually has Article III constitutional and bankruptcy code standing to bring these responsive Objections[2] and Cross-Motions, as the case may be, and

---

[2]     Jones has standing as the Chapter 7 Debtor pursuant to:
• Section §1109(b) provides that "[a] party in interest . . . may appear and be heard on any issue in a case under this chapter." The section goes on to say that parties in interest include
"*the debtor*, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee."
• *Truck Ins. Exch. v. Kaiser Gypsum Co*., 22-1079 (Sup. Ct. June 6, 2024) [standing extends "*to entities that are potentially concerned with or affected by a proceeding*."];  *See, also In re Team Sys. Int'l, LLC*, Nos. 22-10066 (CTG), 561, 2024 Bankr. LEXIS 2573 (Bankr. D. Del. Oct. 21, 2024) [*citing Truck Insurance Exchange* as defining the scope of a party in interest right to participate] ;  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A*., 530 U. S. 1, 7 (2000);
• *Willard v. O'Neil (In re Willard)*, 240 B.R. 664, 669 (Bankr. D. Conn. 1999). As the court explained in In re Toms, 229 B.R. 646, 651 (Bankr. E.D. Pa. 1999):
[I]f there were a claim asserted in a chapter 7 case which would not be discharged, and which is not likely to be paid in full by the trustee, then the chapter 7 debtor will be legally responsible for payment of any remaining claim after the bankruptcy case is concluded. Due to this continuing obligation, the debtor has a pecuniary interest in the disallowance of the claim. Were the claim disallowed or reduced in amount, the debtor's continuing liability after bankruptcy could be affected.
• *In re Morgan*, No. 05-34981-SGJ-7, 2007 WL 2669341, at *4 (Bankr. N.D. Tex. Sept. 6, 2007) [after considering the claims register, the trustee's report of assets, and the fact that the trustee hired accountants to investigate the assets of the debtor, concluded that given the uncertainty of total assets and claims, the debtor had a pecuniary interest in the outcome of the claim objection];  *See, also,  In re Curry*, 409 B.R. 831, 838 (Bankr. N.D. Tex. 2009)the debtor has a pecuniary interest in the outcome of any claims objection and so standing to object if there might be a surplus to be returned to the debtor after satisfying all debts.  Additionally, a debtor may be afforded standing to object to an excessive dischargeable claim whose holder would receive distributions that otherwise would be made to the holder of a nondischargeable claim.  The debtor certainly wants to maximize the distribution to the holder of a nondischargeable claim, because to the extent that this claim is satisfied, the debtor is relieved from some or all of the claim of that creditor which would survive the bankruptcy case. See 4 Collier on Bankruptcy § 502.02[c] at 502-13 (Resnick & Sommers ed. 15th ed. rev. 2009).

continues as the sole managing member of Free Speech Systems, LLC ("FSS").

    2.    Additionally, the standing doctrine is required by the Constitution's text, including the Due Process clause of the Fifth and Fourteenth Amendments.  The Due Process clause prohibit courts from depriving a person of "life, liberty, or property without due process of law."  As Justice Amy Coney Barrett has explained, *stare decisis* can often function similarly to preclusion, and consequently the application of stare decisis can deprive litigants of their life, liberty, or property rights without due process of law.[3]  This is precisely the instruction of the Supreme Court in *Pennzoil Co. v. Texaco, Inc*., *citing with approval Henry* v. *First National Bank of Clarksdale*, 595 F.2d 291, 299-300 (5th Cir. 1979) dealing with collection of a judgment and non-final appeals and the avoidance of irreparable harm for particular Constitutionally-driven appeal cases such as the Judgments against Alex Jones and FSS.  *Pennzoil* dealt precisely with the issues before this Court in rejecting Texaco's argument  of intervention in its appeal bond requirements under Texas law to avoid its bankruptcy by contrasting that of a politically sensitive defendant's (the NAACP) appeal to assert its "fundamental constitutional rights":

> First, relevant to this Court's consideration, is the holding that "[w]hile 'a cost requirement, valid on its face, may offend due process because it operates to foreclose a particular party's opportunity to be heard,' [citing *Boddie* v. *Connecticut*, 401 U.S. 371, 380 (1971)]...."  *Id. Pennzoil at* U.S. 22.

The Supreme Court, in rejecting Texaco's right to receive relief of an affordable appeal bond, cited to several cases where special treatment was a justified exception to loss of the right to appeal under color of state or federal law -- "in the more troublesome situation where a particular corporate litigant has such special attributes as an organization that a trustee in bankruptcy, in its

---

3    https://scholarship.law.nd.edu/law_faculty_scholarship/450/

stead, could not effectively advance the organization's interests on an appeal" [4] and, second, *citing* the Fifth Circuit opinion in *Henry* v. *First National Bank of Clarksdale*, 595 F.2d 291, 299-300 (CA5 1979):

> (the) bankruptcy of NAACP would make state appellate review of First Amendment claims "so difficult" to obtain that federal injunction justified), cert. denied *sub nom. Claiborne Hardware Co*. v. *Henry*, 444 U.S. 1074 (1980).

3.      The Supreme Court, in recognizing that the rights to seize a judgment debtor's assets by State law execution and order a sale of the judgment debtor's assets, held that notwithstanding the state statute that required a cost bond that would bankrupt the NAACP, the exception recited in *Henry v. First National Bank* "… involved fundamental constitutional rights" that would be lost if the execution went forward.  In distinguishing Pennzoil's request for an affordable appeal bond from that of the NCAA's even broader request for injunctive protections from state-issued writs of execution in *Henry v. First National Bank*, because "…the underlying issues in this case (*Pennzoil*) -- arising out of a commercial contract dispute -- ***do not involve fundamental constitutional rights***" to boycott.  In *Henry v. First National Bank*, the NAACP, having suffered a $3 million judgment in Mississippi state court for supporting a boycott of certain white-owned businesses, sought federal injunctive relief which the Fifth Circuit approved.[5]  This is precisely the standing and exception Jones relies, and the "fundamental constitutional rights" of Jones as a media defendant in exercising his constitutional right as both a media defendant and of free speech, that must be protected for appellate review.  [*See*, Jones 2nd Motion for Reconsider

---

[4]      Much less "sell out" the Debtor's appeal rights to the appellants to then dismiss the appeals, or the Trustee's dismissal of the appeals to favor the appellee's desire to have an allowed claim untested by the due process rights to an appeal.

[5]      The Fifth Circuit upheld the District Court's injunction prohibiting the execution on the judgment involving all of the Mississippi NAACP assets including the name NAACP owned by the Mississippi Chapter, and all the confusion that would have caused, until the NAACP could prosecute its appeal of the Constitutional right to boycott. Ultimately, the Supreme Court decided the case on the merits and reversed the judgment as constitutionally infirm.

Partial Interlocutory MSJ, Dkt #127].  [*See, also, infra* ¶ B.(ii), page 8].

4.      Additionally, Jones, acting in the same legal capacities, has intervened in the appeal to the District Court  filed by the Texas Plaintiffs [FSS Docket No. 1021;  District Court Appeal Civil Action 4:24-cv-03882 *In re Free Speech Systems, LLC* – Judge Charles Eskridge] and objects to the dismissal of that District Court appeal.

## B.    TRUSTEE'S MOTION IMPROPERLY SEEKS AN IMPROPER ADVISORY OPINION OF THIS COURT

### i.      The Requested Relief Advising on a Conclusion of Law is Neither Stand-Alone Relief, Nor an Actual Dispute by the Trustee and the Two Largest Contingent Creditors

5.      Simply from a reading of the Settlement Motion, the requested relief sought by this Settlement Motion seeks neither stand-alone relief, nor resolves any actual dispute by the Trustee and the two largest contingent creditors asking the Court to preemptively arrange and all for the unfettered dismissal of the Jones and FSS appeals by either the Trustees or the Plaintiffs [*See*, proposed Order, ¶¶ 14, 21, 22].  In other words, as to all or a substantial portion of the Settlement Agreement sought to be blessed by this Court, none involves a "case in controversy" over dismissal of the Jones and FSS appeals, nor is that relief specifically sought.  In fact, the most significant part of the Settlement Agreement is the Trustee's request for an "advisor opinion" that reflects the pretense of a dispute.  There is no "case in controversy" that justifies opining on the Trustee's rights that are not asserted and sought for specific relief.[6]  Set out in section 22(e) of the Settlement

---

[6]      According to Chief Justice Marshall in Osborn v. Bank of the United States, judicial power is capable of acting only when the subject is submitted in a case and a case arises only when a party asserts his rights in a form prescribed by law. *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738 (1824).  Justiciable cases and controversies not only require that disputes be of the types specified in Article III, Section 2, Clause 1, but also that the disputes be, in fact, actual cases and controversies.  *Atena Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937). Cf. Public Service Comm'n v. Wycoff Co., 344 U.S. 237, 242 (1952).

Adversity requires that the parties be truly adverse to each other with real interests in contention.  *Muskrat v. United States*, 219 U.S. 346 (1911).  As such, suits that are collusive or feigned by two friendly parties to resolve a question of interest to them are not justiciable. *Lord v. Veazie*, 49 U.S. (8 How.) 251 (1850).  A real interest requires that a real issue be presented, as contrasted with speculative, abstract, hypothetical, or moot issues or cases that are

Motion is a "statement" on the suggested status of the law on a Trustee's right to deal with a generic debtors pending appeals:

> *e.* FSS's Right of Appeal. The right of FSS to appeal any judgment(s) awarded in favor of the Families in the State Court Litigation[9] solely as against FSS shall constitute property of the Estate, and *the Trustee shall have the exclusive authority to prosecute or dismiss any such appeal on behalf of FSS.* For the avoidance of doubt, all parties'[7] rights are reserved with respect to Jones' appeal of the State Court Litigation as such appeals relate to judgment(s) awarded to the Families against Jones, *including whether such appellate rights constitute property of the Estate.*

However, the Court must look to the proposed order to understand what is at play. Paragraph 14 of the proposed order, *actually Orders, Adjudged and Decreed that the above is the order of this Court,* so that ¶¶ F titled "Necessary Action", implement subsections ¶¶ 21 and 22 of the proposed orders to file a dismissal of the Appeals:

> 21. The Trustee is authorized to take any and all actions necessary and appropriate to consummate the terms of the Settlement, including but not limited to executing, filing, and/or recording any documents that may be reasonably necessary or desirable to implement the terms of the Settlement or to comply with this Order.

> 22. The Connecticut Families and Texas Families shall take any and all actions necessary and appropriate to consummate the terms of the Settlement, including but not limited to executing, filing, and/or recording any documents that may be reasonably necessary or desirable to implement the terms of the Settlement or to comply with this Order.

Nowhere in the Motion is there any discussion or mention about the Parties unilateral right to file

---

not yet ripe for review. Jump to essay-13Ala. *State Fed'n of Labor v. McAdory,* 325 U.S. 450, 461 (1945) (stating that it is the Court's considered practice not to decide abstract, hypothetical or contingent questions.). Standing concerns who may bring a suit and requires that the party seeking relief has alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends on illumination of difficult constitutional questions. *Baker v. Carr*, 369 U.S. 186, 204 (1962). That persons or organizations have a personal, ideological interest sufficiently strong to create adverseness is not alone enough to confer standing; rather the adverseness is the consequence of one being able to satisfy the Article III requisite of injury in fact.

[7] Aside from the fact that the Settlement Agreement does not define "Parties" or "parties" but ambiguously interchangeably uses the terms to mean the Settlement Parties, and then simply refers to "parties" as if, for instance, Jones is a member of the group called "parties."

Notices in the Connecticut courts or the Texas courts that the Trustee is dismissing the Jones and FSS appeals, or any similar "notice" according to the proposed Order.

6. To state the obvious, this is a case dispositive issue based on a request for an "advisory opinion" of the law regarding a Trustee's right to dismiss a debtor's pending appeal and a remote prior debtor's (FSS) pending appeal. And it is important to note that other than this incomplete statement of law, there is no relief requested in the Settlement Agreement, nor any live case in controversy now involving this incomplete statement of law of a Trustee's right to dismiss a debtor's appeal, that requires this Court to render its Order and opinion on the issue of the Trustee authority and business judgment in attempting to dismiss the FSS Appeals of the Connecticut Judgment and the Texas Judgment. **8**

7. Also, what is not disclosed is the obvious – which is the stand-alone reference to a Trustee's right to bring or dismiss an appeal, that is incorporated into the form of the proposed order Approving this Settlement Motion "in all things." What would have caused the Trustee to seek this advisory opinion when there is no "dispute" alleged, other than the Trustees understanding or informal agreement to actually dismiss the Jones or FSS Connecticut Appeals? Unknown (without discovery) are the discussions between the "Settlement Parties" about the Trustee's right to dismiss the appeal brought by FSS and Jones (as "joint and severally liable" Defendants) seeking to set aside the Connecticut Judgment and the Texas Judgment? More to the point – the Trustee is not seeking, as a term in the Settlement Agreement, to dismiss appeals. But

---

8        "When the fiduciary's "methodologies and procedures are restricted in scope, so shallow in execution, or otherwise so *pro forma* or halfhearted . . . , then inquiry into . . . [the fiduciary's acts] is not shielded by the business judgment rule." *Resolution Trust Co. v. Rahn,* 854 F.Supp. 480, 489 (W.D. Mich. 1994). Moreover, '[t]rustees, like executors and administrators, must use reasonable diligence in the discharge of their duty to 'collect and reduce to money the property of the estates for which they are trustees'". 6 Alan N. Resnick and Henry J. Sommer, *Collier on Bankruptcy* P 704.04[1], at 704-14 (15th ed. rev. 2005). Cf. 11 U.S.C. § 704(a)(1)." *In re Bohannan,* No. 07-32050 (LMW), 2009 Bankr. LEXIS 950, at *13 (Bankr. D. Conn. Jan. 6, 2009).

the Trustee seeks this Court's Order to approve a statement on the law of dismissal of appeals by a Chapter 7 trustee?  In fact, it is the alleged "settlement context" of this Court's involvement that is the pretense.  It appears that the Connecticut Plaintiffs and the Texas Plaintiffs will now seek from this Court, through a motion of the Trustee's exercising his "business judgment", an order of this Court authorizing dismissal of the appeals so that the Connecticut and Texas Plaintiffs' claims. The Trustee, or the Plaintiffs, intends to simply file such notices as soon as this Court enters its advisor opinion so that the Judgments will never be tested and the Plaintiffs' Objections to Dischargeability will finally have some footing in collateral estoppel (by asserting then, a liquidated, ***non-contingent*** Judgment claim).  This is pure codswallop – after this Court's lifting of the stay to allow these Plaintiffs' trials and appeals to proceed, and over this Court two-years of referencing these ongoing appeals and to "clearing the runway for Jones to appeal" and other comments acknowledging not only Jones's right to appeal, but FSS's as well. [*See, below* Subsection iv, pgs. 10-12].

8.      The request that this Court impliedly approve the Settlement Agreement that orders that the Trustee has the exclusive authority to prosecute or dismiss any appeal on behalf of Jones or FSS, and order, as requested, that such advisory opinion is binding on the "parties" (an undefined term) even though the request is to destroy appellate rights of the "Debtor (Jones) and FSS" that is not raised in any such requested relief, is not only a request for an advisory opinion, but also a trap for Jones and FSS to have their appeal dismissed without further Court order[9] – a case dispositive result without actually a pleading seeking that relief  by this Court.  Giving the Trustee and the Plaintiffs an unfettered rights to cause the dismissal of appeals brought by a pre-

---

[9]      Appeals which this Court ordered to go forward as part of the motions to lift the stay for these trials and commented in it recent orders that the "runway" had been cleared" for Jones to prosecute his appeal.  See, Infra ¶4, pg.10.

conversion Debtor and a now-dismissed Debtor is addressed below in more detail (as are the misstatement of the law on the Trustee's right to dismiss appeals addressed above and below), but, suffice it to say, this trickery at play with the Settlement Agreement and proposed Order is not appropriate, especially for such advisory opinion and the results it may cause.

> ii.    **Dismissal of the Jones and FSS Appeals Involve Fundamental Constitutional Rights and is Precisely What the Fifth Circuit Disfavors and Enjoins**

9.    The pretense of approving the Settlement Agreement with an adoption of an incomplete version of federal bankruptcy law is wrong and improper for another reason.  The exact same arguments made by Jones here was made in *Henry v. First National Bank*  – the fundamental First Amendment rights of freedom of the press and its corollary, freedom of speech, of Jones and FSS are at issue and at risk of loss here.  Alex Jones' right to freedom of the press as a media figure have been wholly and completely denied by both the Connecticut and Texas courts under the guise of default judgments.  This is the fear expressed by the Supreme Court in *Pennzoil*, explained by citing the Fifth Circuit's opinion *Henry* v. *First National Bank of Clarksdale* in enjoining the seizure of the assets (including the name of the NAACP) before the federal appeal on constitutional grounds was final. [*See, Supra*, ¶¶ 2, 3, and 4].  The Supreme Court cited with approval the Fifth Circuit's opinion in *Henry vs. First National Bank* that such State sponsored collection by issuance of its writs would so deprive the NAACP of its constitutional rights and due process access to the ability to have those rights to protected on appeal, that injunctive relief was appropriate.  *Henry v. Frist National Bank* found that the injunctive relief outweighed the mandate that in Mississippi only posting a bond could stop the loss of the NAACP's assets by writ of execution.  The comparisons are strikingly similar to Jones and FSS in their appeals.  A trial 28 miles from the Sandy Hook massacre is similar to a trial 45 years ago brought by all white businessmen against all black defendants and their organization the NAACP in Mississippi,

seeking damages arising from the Defendants' boycott of their businesses.  What the Supreme Court recognized was that this *equitable exception* that protects fundamental constitutional rights takes priority *until the appeals are final*.  The Supreme Court eventually heard the NAACP case and reversed, holding the NAACP had a constitutionally protected right to peacefully boycott. Had the injunction not been entered, there would not have been and NAACP appeal at all.  Alex Jones and FSS believe that when their cases involving "fundamental constitutional rights" reaches the Supreme Court, if it requires that level of appeal, the two Judgments will likewise be reversed. Attempting to destroy the Jone and FSS rights to have their appeals tested on denial of Jones' and FSS's fundamental constitutional rights is expressly disfavored and entitles Jones and FSS to injunctive relief *when the issues is actually raised to a case in controversy*.  No such relief has been requested that joins Jones or FSS as an actual "party" – and certainly the unilateral Settlement Agreement does not do so.

10.     The precise threat of adopting the proposed, and at best, an incomplete statement of Circuit law on ownership of appellate rights that may be destroyed by a Chapter 7 Trustee, ignores not only the full scope of Circuit law on the point, but *Henry v. First National Bank*, and the fact that the Connecticut Judgment is *already stayed until all first-round appeals are concluded*.  To now suggest that the Trustee and the Connecticut and Texas Plaintiffs can get together and agree on dismissal of a stayed appeal violates numerous laws of the Fifth Circuit and Connecticut (*See*, Jones Motion for Reconsideration) and policies approved by of both State and Federal Courts and the United States Supreme Court.

### iii.     "Judicial Estoppel" Will Bar the Suggested Relief by Way of the Trustee Dismissing or Selling the Jones and FSS Appellate Rights

11.     This Court has had an active role in the decision to permit not only the trial of the Connecticut Plaintiffs and the Texas Plaintiffs, but the granting of relief on prosecution of the

appeals. As a result, at all times in this case the Plaintiffs, Jones and FSS have operated with the express understanding that the judgments awarded in favor of the Connecticut Plaintiffs and Texas Plaintiffs would be fully subject to appellate review.

12.    Throughout this case, the parties, including the Connecticut Plaintiffs and the Texas Plaintiffs, and the Court have repeatedly acknowledged that the ultimate amounts of the Connecticut Plaintiffs and the Texas Plaintiffs' claims in this bankruptcy case will be controlled by the appellate courts. For example, this Court has repeatedly acknowledged that nothing in this bankruptcy case shall affect Jones's or FSS's appellate rights. This Court's Memorandum opinion partially granting the Texas Plaintiffs' summary judgment states that

> Jones is appealing the Final Judgment in the Heslin/Lewis Action, including the amount of exemplary damages, *and nothing in this bankruptcy case affects his appellate rights*. *He may raise his complaints about not being permitted the right to argue defenses at the damages trial with the appropriate Texas state appellate forum*. It is not, however, a basis for this Court to ignore the plain language of the state court's default judgment orders or Final Judgment. A right to appeal the state court's decision does not change the fact that the Final Judgment (including the default judgment orders and deemed admissions incorporated in it) satisfies the fully and fairly litigated prong.

[*See*, Case 23-03035, Dkt #46]. Furthermore, in granting partial and interlocutory summary judgment on the nondischargeability of the jury awards based on the Heslin/Lewis defamation claims the Court also expressly stated that "[t]he ultimate amount of this nondischargeable debt could change if Jones succeeds on his state court appeal." [*Id.*, footnote 40]. This Court makes the same acknowledgements in its Memorandum Opinion granting partial and interlocutory summary judgment in favor of the Connecticut Plaintiffs. [*See*, Case No. 23-03037, Dkt #76, footnote 43].

13.    In fact, this has been one of the only issues all the parties have agreed.  As further examples, the Proofs of Claim filed by the Connecticut Plaintiffs were objected to on June 13, 2024, on the basis that they are the subject of litigation that is currently on appeal. [Dkt #705]. The response filed by the Connecticut Plaintiffs acknowledges that the decision by the appellate

courts "would end the inquiry." [Dkt #812, ¶17]. The Connecticut Plaintiffs further stated that "*in the interest of judicial efficiency, the Connecticut Plaintiffs submit that the appeals process should be permitted to run its course." Id.* (Emphasis added.)

14.     Furthermore, on December 12, 2022, the Connecticut Plaintiffs and the Texas Plaintiffs filed an Emergency Motion of the Sandy Hook Post-Trial Families for Relief From the Automatic Stay, which sought to lift the automatic stay "to allow the underlying state court verdicts against Jones to proceed to judgment and any subsequent appeal(s) he may pursue to move forward."[10] In response, the Court also entered an agreed order involving Jones, FSS, and the Connecticut Plaintiffs and Texas Plaintiffs on December 19, 2022.[11] The Agreed Order modified the automatic stay to allow the state courts to rule on post-trial motions *and for any appeals by Jones and FSS to proceed. Id.* In the same Agreed Order, the Connecticut Plaintiffs and the Texas Plaintiffs also agreed not to object to an application by Jones and FSS to employ their requested *appellate* counsel. *Id.*[12] Specifically, the Connecticut Plaintiffs and the Texas Plaintiffs agreed to allow the respective cases to proceed with the appellate process. *Id.* Importantly, this was relief granted to the Texas Plaintiffs and the Connecticut Plaintiffs in response to their own motion. Thus, the Connecticut Plaintiffs and the Texas Plaintiffs were granted relief based, in part, on them taking the position that the appeals by Jones and FSS should be allowed to go forward, which relief granted the Plaintiffs now constitutes judicial estoppel on any demand that the appeals be

---

[10]     *See,* Emergency Motion of the Sandy Hook Post-Trial Families for Relief from the Automatic Stay, Case No. 22-33553 (Dkt #38).

[11]     *See,* Agreed Order Modifying the Automatic Stay, Case No. 22-33553 (Dkt #58).

[12]     *Id.* ("Notwithstanding any prior agreements between or among the Parties, the Sandy Hook Post-Trial Families agree not to object to the retention by the Debtor and FSS of appellate counsel in connection with appellate proceedings in the Sandy Hook Post-Trial Families' Cases…").

dismissed by the Trustee or filings by the Plaintiffs.[13]

15.     It is clear that what is now going on behind the scenes is an agreement amongst the Trustee, the Connecticut Plaintiffs, and the Texas Plaintiffs, for the Trustee to dismiss the FSS appeal and allow, with respect to the Texas Plaintiffs, for them to avoid the appellate process altogether by this Court's proposed Order allowing them to assert a liquidated, **non-contingent** claim, and receive an almost immediate payment of $4 million entirely inconsistent with the previous positions taken in this case.  In fact, what is most troubling is the effort to circumvent the application of the doctrine of judicial estoppel that applies here, by seeking an order of this Court that "clears the runway" for the Trustee stop the Jones and FSS appeals.

16.     Without a doubt the record demonstrates that the Trustee's dismissal of either Jones or FSS's appeal combined with the proposed payment of the  $4 million to Texas Plaintiffs would defy both Circuit authority and what every party has already agreed to and acknowledged in this case – the amount of the claims will be determined *after the appellate process is concluded* and the appellate constitutional rights should not be stripped from FSS or Jones at any stage of the process.

### iv.     The Suggested Statement of Fifth Circuit Law is Not Limited to the General Statement That This Court is Asked to Adopt and Order

17.     It is also important to note that other than this incomplete statement of Fifth Circuit law and there is no dismissal relief requested and thus no "case in controversy" currently involving this incomplete statement of law that the Trustee seeks this Court to render its opinion,

---

[13]     *Ergo Sci., Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir.1996).  "The doctrine prevents internal inconsistency, precludes litigants From 'playing fast and loose' with the courts, and prohibits parties from deliberately changing positions based upon the exigencies of the moment.'" Id. (*quoting United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)."

on the issue of the Trustee authority and business judgment in attempting to dismiss the FSS Appeals of the Connecticut Judgment and the Texas Judgment. [*See, supra*, including note 7].

18.     Also, what is not disclosed is also the obvious – what is the need of this Court to enter an order on a stand-alone reference to a Trustee's right to bring or dismiss an appeal, without that relief being sought.  What would have caused the Trustee to seek this advisory opinion when there is no dispute alleged, other than the Trustees tacit or informal agreement to actually dismiss the FSS Connecticut Appeal?  And, what are the discussions between the "Settlement Parties" about the Trustee's right to dismiss the Connecticut Plaintiffs' appeal brought by FSS and Jones (as joint and several Defendants) and by the Texas Plaintiffs (also as jointly and severally liable on the Texas Plaintiffs' Judgment)?  More to the point – this is not the Trustee's concern that motivated the Trustee to include this provision in the Settlement Agreement, or to request this Court to issue a legal opinion on the law of dismissal of appeals by a Chapter 7 trustee even though the Trustee is not seeking that relief.   As noted earlier, it is the settlement context that is the pretense.  It appears clear that the Trustee or the Connecticut Plaintiffs and the Texas Plaintiffs will simply file notices pursuant to ¶¶ 21 and 22 of the proposed order for dismissal of the appeals so that the Connecticut and Texas Plaintiffs' claims will never be tested and their Objections to Dischargeability will finally have some footing in collateral estoppel (by asserting then, a liquidated, non-contingent claim).  This is pure codswallop – after this Court's lifting of the stay to allow these Plaintiffs' and Jones and FSS trials *and appeals* to proceed, and over this Court two-years of  referring to the ongoing appeals, or to "clearing the runway for Jones to appeal" and other comments, estoppel surely prevents this scheme.  Permitting a case dispositive result by implication, and without a pleading seeking that relief of an order giving the Trustee an unfettered rights to dismiss an appeal brought by a pre-conversion debtor is addressed below in more detail (as are the misstatement of the law on the Trustee's right to dismiss appeals addressed below).

Suffice it to say this Settlement Agreement is not appropriate for such advisory opinion.

19.     Case law, including the Supreme Court in *Pennzoil* and the Fifth Circuit in *Henry vs. First National Bank*, illustrate the federal law disfavor of depriving any Judgment Debtor of fundamental constitutional rights, particularly here where the denials are default Judgments on highly questionable grounds and where no "trial" as the commonly understood term is understood. If the Trustee seeks relief by way of dismissal of either Jones' or FSS's right to continue their respective relief, that Trustee must come to this Court with pleadings clearly seeking that relief and provide due process notice sufficient for Jones and FSS to fully raise their defenses to such a case-dispositive Motion.  At this time, no such pleading seeking such relief exist.  That relief cannot be relegated to the Parties to this Settlement Motion disguised by an advisory opinion [¶ 14 of the proposed order] and a notice filing by the Trustee or Plaintiffs with the appellate courts [¶¶ 21, 22 of the proposed order].

> **v.     Dismissal of the Jones and FSS Appeals Involve Fundamental Constitutional Rights and Seeks Precisely What the Fifth Circuit Disfavors**

20.     The pretense of approving the Settlement Agreement with an adoption of an incomplete version of federal bankruptcy law is wrong and improper for another reason.  The exact same arguments made in *Henry v. First National Bank* – the fundamental First Amendment rights of freedom of the press and its corollary, freedom of speech, are at issue and at risk by this Settlement Agreement and the proposed order submitted.  Alex Jones' and FSS's constitutional rights of freedom of the press as a media figure have been wholly and completely denied.  The fear expressed by the Supreme Court in *Pennzoil*, illustrated by the Fifth Circuit opinion in *Henry v. First National Bank of Clarksdale* cited in *Texaco*, was that the seizure of the assets and the name of the NAACP, before their appeal was final, would so deprive the NAACP of constitutional rights and due process access to the ability to have those rights to reviewed and protected that

injunctive relief outweighed the mandate that in Mississippi only a bond could stop the loss of these assets. The comparisons here are more than very similar. A trial 28 miles from the Sandy Hook massacre is similar to a trial 45 years ago by all white businessmen against all black defendants and their organization the NAACP in Mississippi. What the Supreme Court recognized with approval of *Henry v. First National Bank*, was the equitable exception that protection of fundamental constitutional rights take priority *until the appeals are final*. The Supreme Court eventually heard the NAACP case and reversed, holding the NAACP had a constitutionally protected right to peacefully boycott. Alex Jones believes that when his case involving fundamental constitutional rights reaches the US Supreme Court, if it requires that level of appeal, the Jones and FSS Judgments will likewise be reversed.

21.     The precise threat of adopting the proposed, and at best, the incomplete statement of Circuit law on the ownership of appellate rights by a Chapter 7 Trustee is that it ignores not only the full scope of Circuit law on the point (including *Henry v. First National Bank*) but also the fact that the Connecticut Judgment is *already stayed until all first-round appeals are done*. To now suggest that the Trustee and the Connecticut and Texas Plaintiffs can get together and agree on dismissal of a stayed appeal violates numerous laws and policies, of both State and Federal Courts, and the Trustee Settlement Motion should accordingly be denied.

**C.     THE PROPOSED SETTLEMENT IS INTENDED TO DISTRIBUTE FUNDS TO, AND POTENTIALLY SETTLE APPEALS BY, ONLY TWO CREDITORS HOLDING NON-FINAL JUDGMENTS**

22.     Even after Jones and FSS have paid more than $16 million-plus defending and appealing these two suits, and but for the improper "death penalty" sanctions imposed by the respective trial Courts preventing Jones or FSS from defending the Plaintiffs' claims, Jones would be solvent. What is also occurring in this "*phase 1*" Settlement agreement is an effort to tacitly arrange a sale of all of FSS Assets cast most favorable to only the Connecticut Plaintiffs and the

Texas Plaintiffs, to allow a competing offer of non-cash consideration to the now month old pending offer of FUAC to purchase the assets.  Make no mistake, the purchase of the assets by the aid and cooperation of the Connecticut Plaintiffs is solely designed *to prevent Jones from having any "fresh start" by his continued employment.*  The Connecticut Plaintiffs are not interested in any financial recovery – they are only interested in destroying Alex Jones capacity to exercise his constitutional rights as a very successful media defendant to continue his public discourse and free speech (just as promised by the Connecticut Plaintiffs), and not simply discourse about Sandy Hook (which has not been a topic now for twelve (12) years, but to destroy *all his media and free speech constitutional rights* by:

(i)   "buying" the cooperation of the Texas Plaintiffs on their non-final Texas Judgment for $4 million i*n immediate distributions* while on appeal, thereby allowing only the Connecticut Plaintiffs to acquire all FSS assets for pennies on the dollar without interference or complaint by the Texas Plaintiffs and which must be reflected in the Trustees enthusiastic support, only then to be destroyed by the Connecticut Plaintiffs' and their proxy, the Onion, leaving Jones nothing in the event of reversal on appeal;  and

(ii)   arranging the precursor to privately demanding the Trustee dismiss the FSS and Jones appeals and thereby obtain a "final" billion+ dollar non-dischargeable judgment untested by our judicial appellate system.

23.   It is clear that the Trustee has been a participating and a negotiating party to the "Settlement" and has discussed dismissal of the Jones and FSS appeals, yet remarkably, seeks no such relief by this Settlement Motion [*See*, ¶ 22.].  The settlement purports to be for the purpose of resolving "a key dispute at the heart of the Bankruptcy Cases – the allocation of proceeds from the liquidation of the Estate…" *but by and only two creditors – Connecticut Plaintiffs and the Texas Plaintiffs*.  The Trustee is now seeking supporting the "*allowance*" of claims before the

amount that of the claims have been liquidated.  *See*, ¶ 22.a. "Allowance of Families Claims Against FSS and Jones".  The Motion does not have a Schedule 1 – it is only an attachment to the proposed order.  What is occurring and proposed is the result of the Trustee and two creditors *agreeing on the amount of their own allowed claims*, and "*… for all purposes in the Jones Chapter 7 Case*." (Emphasis Added.).  "All purposes" would include "collection" of the massive new proposed "allowed claim" against Jones and FSS; seeking non-dischargeability of this new "allowed" claim against Jones and FSS; and other as yet undisclosed "purposes."  The Settlement Agreement does provide that "[a]ll *parties*' rights are fully reserved *with respect to a determination of the amount of any non-dischargeable judgment under section 523 of the Bankruptcy Code* however it appears that upon entry of the proposed Order, the appeals are relegated to a useless endeavor.  In other words, the appeals are meaningless and Jones and FSS rights have not been fully reserved, but finally destroyed.

24.     And all of these arrangements are being made, according to the Trustee, without any offer from any other person, entity or group (including, according to the Trustee, no offer from Global Tetrahedron or their partners, the Connecticut Plaintiffs) to acquire the FSS assets.  And, by assignment of the Texas Plaintiffs newfound wealth in the $480 million claim to the Connecticut Plaintiffs for $4 million of Estate funds, the Connecticut Plaintiffs have even a greater base to calculate their Distribution Waiver as some form or amount of "cash equivalent" to make their counteroffer to the month old FUAC offer.

### D.     THE TRUSTEE'S MOTIVATION IN IMPLYING A "DISPUTE" WITH THE TRUSTEE IS TO JUSTIFY SETTLEMENT AGREEMENT TERMS – THE DISPUTE IS BETWEEN THE CONNECTICUT AND TEXAS PLAINTIFFS

25.     This is not a "dispute" that the Trustee is involved in, but an arrangement by two creditors that want the Trustee's participation to seek approval in order to not have to prove their own claims before this Court.  There is no mention or description of the "dispute" that the *Trustee*

*is involved* in with the Connecticut Plaintiffs or Texas Plaintiffs, and for which the Trustee seeks to champion the resolution on their behalf. The dispute recited in the Settlement Motion is only between the two largest creditors, seeking to "divvy up" the potential distributions of the Alex Jones Estate [now at approximately $8 million in FSS cash [not reflecting in the Settlement Agreement of the undisclosed offer of FUAC of $8 million for the FSS assets]. This is not a trustee dispute. The only other issue of significance is the Trustee's rights with respect to the Jones and FSS appellate cases. Why would the Trustee feel an immediate need to agree on allowance of claims that will forever prevent the Chapter 7 Debtor, if successful on appeal, from changing or from recovering his assets sold, or challenging the premature distributions of those proceeds to the Plaintiffs? Claims are not even allowed claims, and yet proceeds are going to the Trustee to fund these premature distributions and will likely be offered as some form of "cash equivalent" in a yet-to-be seen competing bid to acquire all of the FSS assets for destruction.

26.     Allowance of disputed claims is exclusively the jurisdiction of this Court. Trustees cannot make distributions on contingent, disputed, and unliquidated claims but here that is precisely what the Trustee seeks and supports. The Trustee, although a fiduciary to the creditors, cannot ignore the impact of his actions on the Estate and the Debtor who seeks reversal of the two largest claims now on appeal. Such reversal would make the estate solvent, particularly in light of the PQPR mediated settlement. However, continually this Trustee has "picked his winners" to pursue, under the disguise of illegitimate disputes, to ignore the impact of his purported business judgment on parties in interest, including other creditors of the Jones Estate.

27.     To be sure that these comments are taken in prospective, it is important to note that the Trustee is so anxious to resolve this "dispute" that the Trustee is agreeing to the "allowed amounts" of these non-final judgments, *by increasing the amounts* and by "allowing" claims by *purported creditors that have not even gone to trial, much less have a judgment*. This is not

mentioned until ¶31, except by vague reference to Schedule 1 attached only to the proposed order, and certainly not disclosed in the text of the Settlement Agreement of the Settlement Motion. Instead, the Court and parties are directed to the proposed order to discover the amounts of the agreed Allowed Claims, for good reason.  The only justification for seeking "allowance" of these absurd amounts is found in a disingenuous reference to *Alex Jones agreeing to these amounts*. The most egregious of the Trustee's representations and arguments is the false assertion that Jones agreed to this new Schedule 1 claims amounts "… in the 9019 Motion" filed in connection with settlements to be included in a Jones and FSS's joint Plan of Reorganizations.  These claims numbers were exclusively dealt with and was conditioned upon inclusion in, the terms of a then being negotiated plan that resolved all of the claims, provided for a payout, and would have allowed Alex Jones to eventually pay a negotiated agreed percentage sum of those clams.  In other words, it was contingent upon the approval of a ***consensual*** plan of reorganization.  The *plan that was rejected by the Settlement Parties, just as the Settlement Parties have rejected every other effort to resolve these claims on an economic basis*.  There was no open-ended consent to increasing claims ten-fold, other than as a confirmed plan provision to accommodate the sharing agreements increasing Texas Plaintiffs from less than 3% of each settlement dollar, to 25% of each settlement dollar, again as a confirmed plan term only.

28.    What the Trustee really wants this Court to do is not mentioned, except by vague reference to Schedule 1 attached only to the proposed order, and certainly not disclosed in the text of the Settlement Agreement of the Settlement Motion, other than ¶31, but is as follows:

a.    First, the Texas Plaintiffs new "allowed" claims *are increased from approximately $48 million to $480 million* which dividends thereon is distributed to five claimants, only two (2) judgments.  This Court has already expressed concern about the Texas Plaintiffs claim

to punitive damages, but not to worry (according to the Trustee) – they now have an "allowed"

claim *for those punitive damages time 10*!

      b.     Next, the Connecticut Plaintiffs claims are to be "allowed" at $1.232 billion,

notwithstanding the results of any further appeal.  Schedule 1 follows:

**SCHEDULE 1:  ALLOWED CLAIM AMOUNTS**

| Claimant | | Allowed Claim Amount |
|---|---|---|
| **Texas Families** | | |
| Neil Heslin | | $27,196,411 |
| Scarlett Lewis | | $22,847,962 |
| Leonard Pozner | no trial or judgment | $200,000,000 |
| Veronique De La Rosa | no trial or judgment | $180,000,000 |
| The Estate of Marcel Fontaine | no trial or judgment | $50,000,000 |
| | Total to Texas Plaintiffs | $475,044,373 |
| **Connecticut Families** | | |
| Carlee Soto Parisi | | $98,099,304 |
| Carlos Mathew Soto | | $86,899,303 |
| David Wheeler | | $83,429,303 |
| Donna Soto | | $74,099,303 |
| Erica Ash | | $111,429,303 |
| Francine Wheeler | | $82,099,303 |
| Ian Hockley | | $118,899,303 |
| Jacqueline Barden | | $48,499,303 |
| Jennifer Hensel | | $79,429,303 |
| Jillian Soto-Marino | | $101,829,303 |
| Mark Barden | | $86,899,303 |
| Nicole Hockley | | $108,229,303 |
| Robert Parker | | $170,099,303 |
| William Aldenberg | | $130,099,303 |
| William Sherlach | | $58,099,303 |

      c.     To be sure that these comments are viewed in prospective, it is important to

note that the Trustee is so anxious to resolve this "dispute" that the Trustee is agreeing to the

"allowed amounts" of these non-final judgments, *by increasing the amounts* and by "allowing"

claims of purported creditors that have not even gone to trial, much less have a judgment.  Hon.

Judge Marvin Isgur, the original mediator, could not even get the Settlement Parties to mediate

such that no mediation was convened by Judge Isgur after numerous attempts.  And when, at the

insistence of Alex Jones, a mediation was convened it resulted in not one single settlement term.

To suggest that Schedule 1 reflects the agreement of Alex Jone or the prior agreement of either

Jones or FSS is false and sanctionable.

29.     While the Trustee claims anxious to resolve some unnamed "dispute" with the Connecticut Plaintiffs and the Texas Plaintiffs, what has gone unmentioned by the Trustee, as if irrelevant to disclosure in this Settlement Motion, is the fact that First United American Corporation ("FUAC") made a second written offer on December 19, 2024, to acquire all of the FSS assets for $8 million.  Although the Trustee has communicated with FUAC about its offer, the Trustee has refused to respond to the offer (*importantly, the offer was not contingent on a settlement of the PQPR lien claim*), obviously preferring to spend its time negotiating with the Connecticut Plaintiffs and the Texas Plaintiffs for this Settlement Motion (and likely other as yet undisclosed understandings) in preparation for their offer which will likely not involve cash, but credits and non-cash equivalents as before.

30.     Thus, instead of responding to the FUAC offer to purchase, the Trustee arranged with counsel with PQPR, LLC ("PQPR") and for David and Carol Jones (Jones Parents) for a mediation held on January 3, 2025.  The mediation settled the PQPR lien of approximately $50 million for $375,000.00 and dismissals of all pending State and Federal fraudulent transfer litigation against PQPR and the Jones Parents.  A Motion is pending to approve that settlement. [*See*, Dkt #1005].  The PQPR settlement Motion (the "PQPR Settlement Motion") was filed the same day as the announced settlement, yet there has still been no response to the FUAC offer or any disclosure by the Trustee of its intentions, until this surprise Settlement Motion.

31.     This Settlement Agreement and the Parties clearly have future intended actions that will flow from this "phase 1"  this Settlement Motion.  Yet the Motion is silent about phase 2 and beyond and standing alone makes no real or practical sense.  This Motion seeks rulings as if in a vacuum, and as though there is no further action intended once the Court approves this Settlement

Agreement.  That simply cannot be the case, and all potential and anticipated further actions discussed among the Parties to this Settlement Agreement must be disclosed.

E.     **THE TRUSTEE SEEKS TO ALLOW THE TEXAS PLAINTIFFS TO IMMEDIATELY MONETIZE THEIR NON-FINAL JUDGMENT FOR A PURPORTED CURRENT DISTRIBUTION OF $4 MILLION PAID TO THE TEXAS PLAINTIFFS**

32.     The Trustee is seeking authority to not only have "allowed" status granted to the respective Plaintiffs in the above amounts, notwithstanding that the amounts do not reflect any liquidated, non-contingent or disputed claims and under a false premise.  Paragraph 29 of the Settlement Motion recites that the Settlement

> Provides significant and near-immediate benefits to the Estate, the (Connecticut Plaintiffs and the Texas Plaintiffs) and all other parties in interest, in contrast to the uncertainty and inherent risk associated with continued litigation.  Pursuant to the Settlement, protracted litigation over the allowed amount of each of the Families respective claims in the Bankruptcy Case, will be resolved consensually.

33.     This is simply not true and gibberish. Only the two groups of Plaintiffs claims are being resolved "consensually" modified and allows, but without the consent of any other "party in interest", and in the case  of the Texas Plaintiffs, increased by ten-fold.  The Trustee claims that by this Settlement the Trustee may "make distributions to the (Plaintiffs) in accordance with the Order _or further order of this Court_, that otherwise would have been forestalled."  *Id*. ¶ 29.  In fact, the proposed Order instructs the Trustee to make distributions on Judgments on appeal, that if reversed will provide no mechanism for recovery by the Estate or FSS.  As the Court noted in its prior interlocutor summary judgment orders, (e.g., footnote 43) even the amount of possible non-dischargeable debt must await finality on appeal, appeals that are now being set up for dismissal.  The Settlement Parties not only want the full amount (or the increased amount) of their judgments but also do not want the claims tested by an appeal.  As a matter of law there can be no distribution until the claims are liquidated and allowed, as this Court stated in prior orders. But

dismissal of the appeals cures that problem, at least according to the Trustee.   As admitted by the Settlement Agreement "otherwise the Settlement Parties would be forced to … wait for years as the various State Court Litigations proceed …" to judgment because, as the Settlement Parties acknowledge that without this type of limited creditor settlement "… distributions would likely be withheld from *all* creditors[14] until each of the (Connecticut Plaintiffs and the Texas Plaintiffs') claims are liquidated and all rights to appeal are exhausted."  Admitting that this Settlement does not take into account any other creditors claims than the Connecticut Plaintiffs and the Texas Plaintiffs, the Trustee then claims that this Settlement Agreement is "a successful outcome *for all parties*…" as if the other creditors, and Jones and FSS appellate rights are irrelevant.  This Settlement Agreement is not between all creditors and parties in interest – only two creditors and their promoter, the Trustee.

34.    Next the Trustee argues at ¶ 30 about the costs "… if the Settlement Parties have to litigate the amount of their allowed claims in Bankruptcy Court …."  There is no litigation is between or among these Plaintiffs that is the subject of litigation in bankruptcy court because all Judgments are on appeal (with costs not paid by the Estate) litigating the basis for, and amount of, the Settlement Parties Judgments.   Administration of the Jones chapter 7, owning and holding all non-exempt property of Jones and FSS combined, upon the sale of those assets will not incur any significant amounts to administer.  And with the Jones exemptions allowed and all FSS assets sold, the costs to administer a no-asset Chapter 7 pending finality on appeal, is minimal.

### F.    THE TRUSTEE IS AIDING THE PLAINTIFFS IN THEIR INTENTION TO MAKE ANOTHER OFFER BASED ON A RE-DISTRIBUTION OF DIVIDENDS WAIVER

---

[14]    The Trustee does not mention the massive downgrade in the value of the group of smaller creditors by increasing the Texas Claim by hundreds of millions of dollars, just as the Trustee does not mention the massive upgrade that the smaller creditors receive if these cases are reversed on appeal.  This is an important consideration.

35.     The Trustee conflates, in ¶ 31, the Settlement Agreement and this Courts urging "all parties to find a way to ensure that the Debtors' (sic) assets are administered in an orderly and efficient manner and these Bankruptcy Cases are concluded."[15]  Yet FUAC's $8 million offer now pending for a month, has had no activity toward a sale process or a sale, because the Trustee has been spending his time working to get the Plaintiffs claims "Allowed" so that these Plaintiffs can have an actual allowed claim to use in its upcoming *Distribution Waiver as cash equivalent offer* the Connecticut Plaintiffs will likely use, along with the Onion, to top $8 million cash now on the table, and also so the funds generated by Alex Jones through FSS services and asset sales can be irrevocably and immediately distributed before their claims are reversed on appeal. [*See*, below the irreparable injury to Alex Jones by current distributions or sales].

### G.     The Trustee is Not in Control of the FSS Liabilities – Only Its Assets

36.     While FSS was in Chapter 11, the filing of claims (and the ultimate holding of an "allowed claim") was required to participate in any distributions of either the FSS Estate or the Jones Estate.  The FSS Estate no longer exists in bankruptcy; the claims docket no longer exists, and the Jones Estate owns, by orders of this Court, all of the Jones "property of the estate" and all of the FSS "property of its estate."  However, FSS proof of claims filed have no longer any meaning at law simply because FSS is no longer in bankruptcy.   And because of the consolidation of all Assets in the Jones Estate, only the *claims filed in the Jones Estate are relevant* (this Court's order vests all assets in a single estate) for distribution purposes.  Jones has thoroughly objected to the filed claims of the Connecticut Plaintiffs and the Texas Plaintiffs, so neither of the Judgments' holders have "allowed claims" in the Jones Estate.  Those Objections have not been

---

[15]     Note, there is only one debtor in bankruptcy, Alexander Jones.  His estate was transferred, by orders of this Court, all of the assets of FSS that is no longer a debtor in any bankruptcy proceeding.  All assets previously owned by FSS now belong to the Jones Estate.

heard and will likely be consolidated with other proceedings to eliminate duplicative trials, but for their now sought "allowance" for purposes of immediate distribution.   The issues of multiple other proceedings involving Jones, FSS, these Plaintiffs, including the newly transferred Western District of Texas counterclaim filed by Jones against the Connecticut Plaintiffs, is not resolved by the Settlement Agreement and further forecloses any right to immediate distribution of Estate funds for non-final creditors' claims.

37.    Finally, as mentioned above, the Austin Federal District Court has transferred to the Southern District of Texas the pending Civil Action (now an Adversary Proceeding) involving the Connecticut Plaintiffs and Jones Counterclaim against each of them.  That matter will need to be addressed again for the purpose of avoiding duplicate trials and is not resolved in the Settlement Agreement, particularly in light of *Miller v. Dunn*, 35 F.4th 1007 (5th Cir. 2022) and the obligation of this Court to allow such case to be tried.  The Trustee may argue that the newly filed Adversary Proceeding seeking declaratory relief belongs to the Jones Estate, however it was only filed by Jones after conversion to Chapter 7, and if an asset of the Estate, must at least be administered by the Trustee.

## II.
## SUMMARY OF THE PROPOSED SETTLEMENT OBJECTIONS

38.    The best summary of the proposed settlement is the proposed Order furnished to the Court.  However, it is unclear what the actual settlement terms are, according to the Trustee in footnote 6 of the Settlement Motion:

> The following is a summary only and does not purport to be a complete description of *all of the terms, provisions, conditions precedent, and agreements contained in the Settlement, and is subject to and qualified in its entirety by reference to the full text of the Settlement,* which is set forth in the Order attached hereto. To the extent there is any inconsistency between this summary and the terms of the Settlement, the terms of the Settlement shall control.

Unless this Court has been furnished a copy of the actual Settlement Agreement, no one knows what the settlement terms actually is, as admitted by the Trustee and no one may rely on the Trustee's pleading as an accurate recital of the actual Settlement terms.

### a. The $4 Million *Premature and Improper* Distribution On Contingent Unliquidated Claims

39.     <u>Jones Objection to Distributions from the (Jones) Estate by the Trustee, ¶ 22(b) as an Irreparable Injury to Jones</u>: "[T]he Trustee shall pay to the Texas Families $4,000,000.00 (the "Settlement Amount").   Although this appears to be a binding amount to settle only the two-party dispute between Connecticut and Texas Plaintiffs, it is all subject to a True up provision, discussed below.  Of this $4 million distribution, the first $1 million will be paid "7 days of the court's order approving the settlement becomes a final order."  The remaining $3 million will be "distributed from time to time by the Trustee" with the intent that that the Settlement Amount is funded "… *within 90 days of entry of the order approving the Settlement*." (Emphasis Added.).  Jones objects to this Payment as an unauthorized premature dividend on a disputed, unliquidated, contingent claims on appeal.  Jones objects to this provision is a premature distribution of funds in which Jones has an interest as a "party in interest" which, if either judgment is reversed on appeal, there is no provision as to how Jones can recover the funds improperly and prematurely distributed to these Plaintiffs (or improperly used by these Plaintiffs as if a cash equivalent when the potential dividend is wholly unknown until the appeals are final).

40.     Jones objects to the ambiguous terms of the Settlement Agreement Motion. It is not addressed, and certainty not clear if Jones will even receive a credit on the Texas Plaintiffs' single Judgment of $48 million or against the proposed "allowed" claims of Texas, *now at $479 million*. The Texas Plaintiffs also will receive a "True Up" payment to make certain that at all times the

Texas Plaintiffs will receive 25% of all distributions by the Trustee[16] and again, it is unclear what this payment will be credited against the Judgments.  Jones further objects to the irreparable injury if f the Texas Plaintiffs appeal is reversed, as it surely will be,[17] there is no provision as to how the Jones Estate will retrieve that $4 million plus in distributions to these Plaintiffs.

41.    Jones further objects as to how claims may be paid on "joint and several" liabilities with only one estate responsible for payment on that amount, and if it is intended that both estates are liable on the new "allowed" $480 million claim, or not, how will an accounting distinguish from funds to be credited to the $480,000 allowed claim and to the lesser amount (now potentially $4 million or less) and to other unsecured creditors of the Jones Estate (now owning all of the FSS assets that must be subject to the FSS creditors' claims).  The process is confusing, ambiguous and should not be approved.

### b.  Jones Objection to The Texas Plaintiffs Must Agree to Step Aside From, or Approve, All Activity of the Connecticut Plaintiffs

42.    Jones objects that there is no law or fact that authorizes, in exchange for a "allowed" $480 million Judgment, the exchange for which the Texas Families must agreement to allow the Connecticut total control of either Jones bankruptcy or the FSS assets.  Jones objects to the provision "except with respect to "***Specified Matters***" exclusion as ambiguous  [*See*, ¶ 22(c)(i)].  For instance, the Texas Plaintiffs cannot file *any pleadings inconsistent with the Connecticut demands or actions* but must support those actions.  In other words, the Connecticut Plaintiffs are using this dividend agreement to buy silence of the Texas Plaintiffs, but for which dividend the

---

[16]    Paragraph 22.(b)(ii) further provides:
The True-Up Payment shall be calculated *at such time that the Trustee makes a final distribution to the Connecticut Families*. At that time, to the extent the Connecticut Families would otherwise receive a distribution that exceeds $12,000,000 in the aggregate from the Estate, the Trustee shall make a payment to the Texas Families equal to 25% of any distribution in excess of $12,000,000.

[17]    As this Court is aware, the actual damages portion of the Judgment is $4 million

Texas Plaintiffs would not have a duty to remain silent.

43.    Next, the Texas Plaintiffs must assign their new-found allowed claim for $480 *million to the Connecticut (Plaintiffs)* (the "Texas FSS Claims Assignment").  To assure at least a double recovery, the Texas Plaintiffs, *retain their Judgment against Jones*, with no description of what that means, nor no obligation to credit any part of their $480,000.00 Judgment with dividends received from the Jones Estate.  Jones objects to this ambiguous provision that may be designed to allow Distributions Waivers based on this $480 million newly allowed claim.

44.    Finally, the Texas Plaintiffs, upon payment of the Settlement Amount, must dismiss the pending appeal (FSS Dkt #1021) now pending in District Court with prejudice.  Jones objects to this dismissal and has intervened in this appeal.

45.    The "Specified Matters" are relegated to footnote to ¶ 22, Note 8, that reads as follows:

> The "Specified Matters" *include:*
> (i)      all claims and causes of action related to the Texas Families' nondischargeability adversary proceeding against the Debtor,
> (ii)     all rights of the Texas Families to enforce the Settlement and the Order, and
> (iii)    other matter in the Jones Chapter 7 Case that directly and adversely affects the Texas Families; provided, however, that a matter shall not constitute a Specified Matter for purposes of (iii) solely because such matter would affect the aggregate quantum of Estate distributions in the Jones Chapter 7 Case.

Jones objects to this provision because this footnote references "include" which signals that this list is not necessarily an exclusive list, and it is it is unknown what other provisions may deal with "Specific Matters" that are not disclosed.  Jones objects to this provision as being ambiguous and potentially allowing for a multiple recovery on the Plaintiff's newly found $480,000 claims.

46.    <u>Jones Objection to the Right to Dismiss the Appeals:</u>  As noted in some detail above, the Settlement also provides that the "FSS Right to Appeal" arising from any of the State

Court Litigation (*e.g.* the two Judgments)[18] is by the Settlement Agreement property of the Estate and "the Trustee shall have the exclusive authority to prosecute or dismiss any appeal on behalf of FSS." Of course, as pointed out above, the Trustee makes no mention of his intention, or even his discussions of what the Trustee intends to do with the FSS Appeal. Obviously, this provision was not inserted without the Trustees involvement, discussion, and agreement to be inserted. And, of course, dismissing the two FSS appeals resolves all of the issues feared by the Plaintiffs of reversal on appeal, and for no consideration it appears. Jones objects to this provision being included in any order signed by the Court without the Trustees pleading clearly its desire for such authority and assuring that Jones and FSS are afforded all due process rights to timely and fully prepare a defense to such an assertion and dismissals.

47.     Jones objects to the provisions regarding the Texas State Court litigation brought by the Texas Plaintiffs for a Turnover and Garnishment of FSS [¶ 22 (f)(i), (ii), and (iii). By agreement, this removed State Court litigation is to be stayed, without reference as to how long. However, this Removed State Court litigation must be remanded by this Court under the terms of the Settlement Agreement, but "subject to the automatic stay" presumably by the Jones Estate. The Estate must, however, waive all claims it may have for violation of the automatic stay [discussed in ¶ 22(f)] and the Connecticut and Texas Plaintiffs waive any claims they have against each other for the ¶ 22(f) actions. Jones objects to this treatment which appears to allow the State Court to simply re-issue further proceedings against assets of FSS or Jones at will.

48.     Jones Objects To Both Texas and Connecticut Reservation of All Rights with

---

[18]     The "State Court Litigation" refers to: (i) Lafferty v. Jones, X06-UWY-CV-18-6046436-S, in the Judicial District of Waterbury of the Connecticut Superior Court; (ii) Sherlach v. Jones, X06-UWY-CV-18-6046437-S, in the Judicial District of Waterbury of the Connecticut Superior Court; (iii) Heslin v. Jones, Cause No. D-1- GN-18-001835 in the 261st District Court of Travis County, Texas; (iv) Lewis v. Jones, Cause No. D-1-GN-18- 006623 in the 98th District Court of Travis County, Texas; (v) Pozner v. Jones, Cause No. D-1-GN-18-001842, in the 345th District Court of Travis County, Texas; and (vi) Fontaine v. Jones, Cause No. D-1-GN-18-001605 in the 459th District Court of Travis County, Texas.

Respect to the Non-Dischargeable Claims against Jones.  *See*, ¶ 22(h).  Jones objects to a reservation of rights whereby the Connecticut Plaintiffs and Texas Plaintiffs obtain rights against Jones without a corresponding reduction in any claims for the purpose of determining non-dischargeability.  Jones objects to these provisions that are neither addressed, much less explained as to how the Settlement Provisions will impact the pending Adversary proceedings dealing with dischargeability, or how these Settlement terms will provide for return of all funds and disallowance of claims that may be reversed on appeal.

### III.
### OBJECTION TO THE IRREPARABLE INJURY TO JONES BY ALLOWING DISTRIBUTIONS ON DISPUTED, UNLIQUIDATED, AND CONTINGENT CLAIMS NOT FINAL ON APPEAL

49.     Even more significant, in Connecticut a money judgment is automatically stayed until the end of the appellate process, although discovery may be conducted to determine the existence of assets that are not exempt, execution on those assets is stayed.[19]  Remarkably, the Connecticut Plaintiffs, although not able to seeks any execution on property under the Connecticut law and rules, apparently believe that if they come to Texas or this bankruptcy court they can avoid the Connecticut law and begin an asset grab on a non-final, interlocutory partial summary judgment, which is the genesis of the newly transferred Adversary of Jones vs. the Connecticut Plaintiffs arose.

50.     However, even if Connecticut law can in some fashion be avoided and the

---

[19]     Connecticut Judgment is Stayed Until a Final Judgment.  The following is from the Connecticut Practice Book – Rules of Court:

Sec. 61-11. Stay of Execution in Noncriminal Cases (a) Automatic stay of execution Except where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment or order shall be automatically stayed until the time to [take] file an appeal has expired. If an appeal is filed, such proceedings shall be stayed until the final determination of the cause. If the case goes to judgment on appeal, any stay thereafter shall be in accordance with Section 71-6 (motions for reconsideration), Section 84-3 (petitions for certification by the Connecticut supreme court), and Section 71-7 (petitions for certiorari by the United States supreme court).

Connecticut stay pending appeal not applicable in Texas, the Connecticut Plaintiffs cannot avoid the Texas law by not allowing supersedeas of any money judgment by Alex Jones until all appeals are final. Under Tex. Civ. Prac. & Rem. Code § 35.001 *et seq*. the Purported Domestication Proceeding or the Foreign Judgment Should Have Been Stayed:

> TCPRC. Sec. 35.006 provide for the Stay of a foreign judgment.
> (a) If the judgment debtor shows the court that an appeal from the foreign judgment is pending or will be taken, that the time for taking an appeal has not expired, ***or that a stay of execution has been granted***, has been requested, or will be requested, and proves that the judgment debtor has furnished *or will furnish the security for the satisfaction of the judgment required by the state in which it was rendered*, *the court shall stay enforcement of the foreign judgment* until the appeal is concluded, the time for appeal expires, or the stay of execution expires or is vacated. (Emphasis Added).

This limitation on a recovery on a non-final judgment obviously is the motivating factor driving in both the Settlement term allowing the Connecticut and Texas Plaintiffs respective claims, and the Settlement Order finding the Trustee may dismiss the Jone and FSS appeals.

51. This Settlement Agreement is simply an end run around the bankruptcy that allows claims procedure, the State law regarding stay of execution until a judgment is final, and the multiple representations by these Plaintiffs that the appeal will be allowed to go forward. This manipulation of multiple judicial processes is improper and should be denied. The Settlement Agreement simply does away with these protection for a premature execution (under state law) or a premature distribution and puts Jones and FSS fully at risk if either or both Judgments are reversed on appeal. Jones objects, and has consistently objected, that a § 363 Sale, or a premature dividend, before these Judgments are final on appeal, because by a § 363 purchase, and the Connecticut Plaintiffs (as individual buyers in partnership with Global Tetrahedron) use of Judgment credits while a non-final Judgment is tantamount to the premature dividends before a claim is final on appeal. Certainly, as this Distribution Waiver-premature dividend used to buy

assets from the Jones Estate will certainly later be argued that the Connecticut Plaintiffs are not personally bound under the Texas law regarding a premature execution on a judgement, where the judgment is later reversed on appeal.  Under Texas law the buyers have liability for the return of the assets taken and the value of those assets, particularly where an operating company was taken and sold.[20]  Collection of these Judgements "under color of federal or state law" by a § 363 Sale utilizing a prospective dividend as a cash equivalent, when in fact it is a premature dividend,  must subject both the Connecticut Plaintiffs and the Texas Plaintiffs individually responsible and liable under Texas law to return the assets received or the market value of those assets. Tex. Civ. Prac. & Rem. Code Ann. § 34.021 (1986).  Such a sale, with no protections of the Estate or Jones is improper, illegal, and subjects Jones and the Estate to irreparable harm.

52.     The most serious of all objections by Jones is the suggestion that his right to appeal the deprivation of his Constitutional rights to freedom of the press and freedom of speech can be disposed of by the Trustee or dismissed by the Trustee.  The exception to the general rule of the Trustee's ownership is recognized by the Fifth Circuit in all case "… ***involving fundamental constitutional rights***" and an appeal by a defendant with special attributes (e.g., a media defendant or a political target of litigating parties).   It cannot be argued that Jones is not a political target when the Judgment holders desire only to financially destroy Jones through destruction of the assets of FSS and intentionally not realize on the value of Jones' going concern value of ownership of FSS operating.  The Supreme Court the Fifth Circuit instruct that in such a case injunctive relief is appropriate to avoid the irreparable injury of loss of the right to appeal by these political sensitive targets of organized litigants.

---

[20]     In Texas, a person is entitled to recover his property that has been seized through execution of a writ issued by a court if the judgment on which the execution is issued is later reversed or set aside, unless the property has been sold at an execution sale.  Tex. Civ. Prac. & Rem. Code Ann. § 34.021 (1986).  If the property has been sold, a person who would otherwise be entitled to recover the property is *entitled to recover from the judgment creditor the market value of the property sold at the time of the sale*. § 34.022.

## IV.
## ARGUMENTS AND AUTHORITIES - RULE 9019 SETTLEMENT
## MOTION SHOULD BE DENIED

53.     The true terms and motivations of the Trustee's Settlement Motion is actually unknown.  The Motion states that there is a formal Settlement Agreement, but it has not been filed or produced.  The caution of the Trustee is that the Court parties cannot rely on their own summary as being accurate without reference to the formal Settlement Agreement.   Although this caution is relegated to a footnote, it admits that the Trustee's pleading cannot be relied on to be accurate. The Settlement Motion Should be Denied.  And the use of ambiguous language, arguments, and suggestions that Jones in part consents to the relief proposed create a dangerous manipulation of the settlement process with unknown and unstated intentions and purposes.   Such a settlement should not be approved.

54.     It appears, although ambiguous and certainly not clear, that the dispute is how to divvi up the dividend money among only two creditors among multiple other creditors – "as if" either creditor had an allowed claim upon which demand for distributions could be made and as if other creditors' claims do not count.  The actual goal of this Settlement Motion is to grab the dividend money before the appellate courts make a decision in the pending appeals, so that if the Judgments are reversed there will be no way that Alex Jones may recoup those funds.   This is the same result as the loss of the FSS $1 million sanction order constructive fraudulent transfer paid to the Texas Plaintiffs and 4 days before the FSS Chapter 11 case, and funded by Alex Jones. The Trustee has done nothing to pursue that million-dollar payment as an asset of the FSS Estate, and likely will not.  Thus, dismissal of the FSS bankruptcy has avoided the Texas Plaintiffs obligation to repay the $1 million sanction award, before any distribution from FSS pursuant to the bankruptcy code.  However, that claim still exists as an asset of FSS and now of the Jones Estate, yet no mention is made by the Trustee.

55.     However, most serious is the obvious scheme and plan to dismiss the Jones and FSS Appeals, clearly hidden from direct view but upon close scrutiny, certainly the purpose of the Settlement Agreement.  This Settlement Agreement is only the first stage of avoidance of the obligation to repay if the Judgments are reversed - by accomplishing a settlement by a distribution on a non-allowed claim and then demanding the Trustee dismiss Appeals (for which the Estate is not paying the costs to prosecute).   There is little doubt that the Trustee is simply a "bit player" in this Settlement Motion in the effort by the Connecticut Plaintiffs and the Texas Plaintiffs to avoid the risk of reversal on appeal or to avoid the collateral estoppel impact of their representations to this Court and for which they received consideration.

56.     Rule 9019(a) of the Federal Rules of Bankruptcy Procedure permits this Court, following notice and a hearing as provided by Bankruptcy Rule 2002, to approve a compromise of controversy.  Rule 9019(a) provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a).   Approval of a compromise is within the sound discretion of the bankruptcy court. *United States v. AWECO, Inc. (In re AWECO, Inc.*), 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel* (*In re Jackson Brewing Co.),* 624 F.2d 599, 602-03 (5th Cir. 1980) (decided under Bankruptcy Act).   In deciding whether to approve a settlement, the following factors must be considered:

a.     **the probability of success in the litigation, with due consideration of the uncertainty in fact and law**; Here, nothing is gained by the Estate [it is not paying for the appellate costs since conversion] and significant irreparable harm will occur if the right of Jones to prosecute his appeals are lost.   This factor favors denial of the Settlement Motion.

b.      **the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay**; Here, it is only delaying as the cost here is not born by the Estate that is not paying the costs.  Jones is paying the costs of continuing the appeals,  Jones is to be deprived of his right to appeal these Judgments that can never be repaid (post judgment interest alone is $100,000,000 a year).  For this Court to approve a Settlement as a windfall to the Judgment Creditors and another death sentence to Jones, for appeals costing the estate nothing, is clearly inequitable and unfair.

c.      **all other factors bearing on the wisdom of the compromise**.

*Jackson Brewing*, 624 F.2d at 602 (citing *TMT Trailer*).

57.      Under the rubric of the third, catch-all provision above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement.

a.      First, **the court should consider "the paramount interest of creditors with proper deference to their reasonable views."**  *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).  This mandates consideration of all creditors, not just the largest two creditors holding contingent, disputed and unliquidated claims.  There are creditors of Jones and FSS that have allowed claims (non-contingent, liquidated and undisputed) not addressed by this Settlement Agreement and whose rights are significantly impacted.  Dividends paid now, on unliquidated claims, deprives the creditors of those funds in the event of reversal of the Judgments on appeal.  Likewise, Jones has an interest as the owner of the assets and funds subject to the payment of only properly "allowed" claims.  The Trustee give no consideration to these real claims and seeks relief that irreparably damages and harms all of these creditors, as well as Jones

b.      Second **the court should consider "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion."**  *Id*. at 918

(citations omitted). There is absolutely no evidence of any "arms-length" settlement negotiations. This is the Trustee following the demands and acting as the lead of the two largest creditors, no matter where it takes him. Recall it was the Trustee that left Houston at 5:00 AM to drive to Austin to shut down operations and demand that the Alex Jones Show "go dark" immediately, an action that has cost the FSS operations hundreds of thousands of dollars in lost revenue, and from which the operations have not yet returned to normal. And, the vague and confusing settlement agreement that seeks to set up the Trustee's decision to dismiss these appeals without ever saying so, is a disservice to other creditors, to Jones, and to the Court that is entitled to be told all of the relevant facts and not be required to wade through disjointed, ambiguous provisions to discover the real intention of the parties.

58.     In *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414,423 (1968)*,* the seminal case on approval of settlements in bankruptcy cases, the United States Supreme Court held that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable, and explained as follows

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation. Id. 309 U.S. at 424.

*See also AWECO*, 725 F.2d at 298-99 (reversing settlement with unsecured litigation claimant due to insufficiency of facts to determine whether settlement was fair and equitable to other creditors); *American Can Co. v. Herpel (In re Jackson Brewing Co*.), 624 F.2d 605, 608 (5th Cir. 1980) (noting that "there must be a substantial factual basis for the approval of a compromise."). Each of these

cases required the Court to delve into the full details of the "good faith" or "bad faith" of the settling parties and determine the true impact of what is to be accomplished, and what is intended by the parties in presenting the settlement for approval. Here the Court suspicion about the vague conclusion of law sought to be approved and adopted by this Court should be cause for the Court to allow Jones and all partiers greater scrutiny of this Settlement Agreement than permitted by an expedited, little or no discovery, hearing. The Court should not approve this Settlement Agreement in the state of play now proposed by the Trustee.

59.     This Settlement Motion and Settlement Agreement fails to consider other creditors with allowed unsecured claims, nor does the Settlement Agreement take into account that, but for these two and very controversial default judgments, Alex Jones would be solvent. Clearly both other unsecured creditors and Alex Jones have *some consideration* due by this Court in response to a Settlement Agreement that grossly exaggerates the Texas Plaintiffs allowed claim and diminishes the other creditors rights, as well as a Settlement Agreement that is designed to quietly arrange the dismissal of the Connecticut and Texas Judgment appeals pending so the outcome of those appeals cannot disrupt the demand for impossible to pay non-dischargeable debt and cannot be tested by a valid and ongoing judicial process of appeals. Jones alleges that this Settlement Agreement is being proffered and is designed in bad faith, notwithstanding the fact that it is supported by the Trustee.

60.     Bankruptcy Rule 9019 empowers a bankruptcy court to approve compromises and settlements if the settlement is "'fair and equitable and in the best interest of the estate.'" *In re Cajun Elec. Power Coop., Inc.,* 119 F.3d 349, 355 (5th Cir. 1997); *In re Foster Mortgage Corp.,* 68 F. 3d 914, 917 (5th Cir. 1995). Moreover, §105(a) states "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title". 11 U.S.C.§105(a). Jones argues that this Settlement Motion is neither fair nor equitable and is pursued

for inequitable and unfair purposes and does not reflect the Trustee's arms-length negotiations. The burden of establishing the fairness of a compromise rests on the proponent(s). *ARS Brook, LLC, v. Jalbert (In re ServiSense.com, Inc.),* 382 F3rd 68. 72 (1st Cir. 2004). Although the Court "is not to decide the numerous questions of law and fact raised" but is to "canvass the issues and see whether the settlement *falls below the lowest point in the range of reasonableness*."[21] This Settlement Agreement is far below any range of reasonableness. Here, the Settlement Agreement, and in particular the Settlement Motion depicts a scheme to abuse the bankruptcy system to the injury of other unsecured creditors and deny constitutional rights to a debtor by removing his impartial appellate forums in exchange for huge bonus claims. Nothing about this Settlement Agreement or Settlement Motion is fair and equitable.

## IV.
## THIS COURT SHOULD HEAR AND CONSIDER THE MOTION FOR RECONSIDERATION PRIOR TO CONSIDERATION OF THE APPROVAL OF THIS SETTLEMENT AGREEMENT

61.     Jones has filed his Motion to Reconsider [Dkt. #127] reflecting the arguments and authorities included in Jones Appeal to the Supreme Court of Connecticut, and as a preface as necessary for Jones Writ of Certiorari to the Supreme Court of the United States. Each of these issues bears directly on not only this Courts determination of the dischargeability of the Connecticut Plaintiffs and Texas Plaintiffs Judgments and may be the last of the Courts under a duty to consider all arguments but also this Courts consideration of this Settlement Agreement. A thorough review of the Motion for Reconsideration will furnish the Court a prospective of the likelihood of the outcome of these threatened appeals and the impact of this proposed Settlement Agreement.

---

[21]     *TMT Trailer*, 390 U.S. at 424; *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993).

## IV.
## CONCLUSION

62.     The significance of the Trustee's Settlement Motion is not in what is written, but in what is intended by the intentional vagueness and ambiguities of what is and is not written or disclosed.  The motion is, above all, an attempt to arrange a *coup* that will entitle the Trustee and the Connecticut Plaintiffs current recovery or use of distributions on non-final claims, in Allowed amounts that dwarf reality.   And it is the *coup d'é·tat* of the Parties ability to dismiss the Jones and FSS pending and prosecuted (at no cost to the Estate) appeals and foreclose the ability of Jones or FSS to test and reverse the constitutional wrongs committed at the behest of both the Connecticut Plaintiffs and the Texas Plaintiffs.  By stealthy seeking an Order of this Court "Ordering" the imprecise and almost irrelevant conclusions of law regarding the Trustee's right to own and dismiss appeals, followed later with the Ordering of the unfettered right and authority granted to the Trustee *and the Connecticut and Texas Plaintiffs* is the license "… for the filing, and/or recording (*in the appellate Courts of the Jones and FCC appeals*) any documents that may be reasonably necessary or desirable to implement the terms of the Settlement or to comply with this Order (*and dismiss the Jones and FCC appeals*)."   This deception by wordsmithing should not be sanctioned by this Court's advisory opinion or this Court's approval Order of the Settlement Agreement.

63.     The Connecticut Plaintiffs and the Texas Plaintiffs are so fearful of the appellate consideration of the constitutional infirmities of their Judgments, and the Trustee so intent on acting on the Plaintiffs' behalf, even to the detriment of other creditors and in particular Jones' and FFS's recognized right to protection of their "fundamental constitutional rights" from dismissal without appellate review, that it not only participates in this deception, but is the leader.

64.     The granting of a ten-fold increase in the Texas Plaintiffs' claims is neither proper nor necessary.  This is simply a method of "allowance" to permit untold confusion in the ultimate

claims treatment of the Plaintiffs' Judgments, wholly without the consent of Jones or FSS and wholly to their mutual detriment.  In particular, Jones never agreed to any open-ended increase in any Plaintiffs' claim for any purpose other than a confirmed Plan that allowed a reasonable payment and a fresh start for Jones by Plan confirmation.  The claim by the Trustee that Jones has consented to this treatment is pure codswallop, absurd, and significantly damaging to Jones and FSS.

WHEREFORE, Premises considered, Alex Jones prays that this Court deny the Settlement Motion and for such other and further relief to which Alex Jones is justly entitled, both at law and in equity.

Dated January 21, 2025                    Respectfully Submitted,

*/s/ Shelby A. Jordan*
SHELBY A. JORDAN
State Bar No. 11016700
S.D. No. 2195
ANTONIO ORTIZ
State Bar No. 24074839
S.D. No. 1127322
**Jordan & Ortiz, P.C.**
500 North Shoreline Blvd., Suite 804
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
          aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com
**CO-COUNSEL FOR ALEX JONES**

*/s/ Ben Broocks*
Ben C Broocks
State Bar No. 03058800
Federal Bar No. 94507
William A. Broocks
St. Bar No. 24107577
Federal Bar No. 3759653
BROOCKS LAW FIRM PLLC
248 Addie Roy Road, Suite B301
Austin, Texas 78746

Phone: (512) 201-2000
Fax: (512) 201-2032
Email: bbroocks@broockslawfirm.com
**CO-COUNSEL FOR ALEX JONES**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon all parties registered to receive notices via the Court's ECF noticing system on January 21, 2025 as well as the following parties.

*/s/ Shelby A. Jordan*
Shelby A. Jordan