# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | § §<br>§ Chapter 7<br>§ |
| ALEXANDER E. JONES, | § Case No. 22-33553 (CML)<br>§ |
| Debtor. | §<br>§<br>§ |

**TRUSTEE'S <u>EXPEDITED</u> MOTION FOR ENTRY OF AN
ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT BY AND
BETWEEN THE CHAPTER 7 TRUSTEE, THE CONNECTICUT FAMILIES,
AND THE TEXAS FAMILIES AND (II) GRANTING RELATED RELIEF**

---

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**Expedited relief has been requested. If the Court considers the motion on an expedited basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that expedited consideration is not warranted, you should file an immediate response.**

---

Christopher R. Murray, in his capacity as the duly appointed chapter 7 trustee (the "**Trustee**") for the bankruptcy estate (the "**Estate**") of the above-captioned debtor (the "**Debtor**"), files this expedited motion (the "**Motion**") seeking entry of an order, substantially in the form attached hereto (the "**Order**"), pursuant to Federal Rule of Bankruptcy Procedure 9019 (a) authorizing and approving the terms of a settlement (the "**Settlement**") by

and among the Trustee, the Connecticut Families,[1] and the Texas Families,[2] (collectively, the "**Settlement Parties**") on the terms and conditions set forth in the Order and (b) granting related relief, and in support hereof, respectfully states as follows:

## Preliminary Statement

1.     The Trustee seeks to expedite this case by resolving several outstanding issues that would otherwise take considerable time to litigate to conclusion. The Settlement:

   a.     Sets allowed amounts for the largest claims in the Estate – those of the Connecticut Families and the Texas Families (each defined below) – that are subject to pending objections in this Court and are based on state judgments that are unliquidated and/or on appeal;

   b.     Stays the pending state enforcement actions – the Turnover Order and Garnishment Application (each defined below) – that were initiated in state court, removed, transferred here, and remain contested and pending in this Court; and

   c.     Dismisses the appeal of this Court's *Order Supplementing Order Dismissing Case* [Docket No. 1021 in the FSS case], which is pending before Judge Eskridge in the District Court.

2.     The proposed Settlement represents the culmination of months of extensive negotiations among the Settlement Parties. The Settlement clears a path to closing this case by resolving the most time-consuming litigation issues – specifically, those relating to the amount, finality, and enforcement of the largest claims in the case, which have been vigorously contested.

3.     The Trustee believes the proposed Settlement is in the best interest of the Estate and its creditors, not only because it efficiently resolves several outstanding disputes, but also

---

[1]   The "**Connecticut Families**" are Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, and Erica Ash.

[2]   The "**Texas Families**" are Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and the Estate of Marcel Fontaine.

because it carries the support of the overwhelming majority of creditors by both number and amount. Further, the Settlement calls for expedited interim distributions that will advance a key goal of the bankruptcy process itself: getting Estate cash into the hands of creditors.

## **Jurisdiction**

4.      The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The legal predicates for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"). This Court has constitutional authority to enter a final order with respect to this Motion.

## **Background**

**A. The Bankruptcy Cases**

6.      Free Speech Systems, LLC ("**FSS**") was formed on November 16, 2007. The Debtor was previously the sole member of FSS and owned 100 percent of the membership interests therein. On July 29, 2022, FSS filed its voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code (the "**FSS Case**").

7.      On December 2, 2022, Jones filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (prior to the Conversion Date (as defined below), the "**Jones Chapter 11 Case**," and after the Conversion Date, the "**Jones Chapter 7 Case**," and together with the FSS Case, the "**Bankruptcy Cases**").

8.      FSS and Jones continued managing their assets as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code until the Court entered (a) that certain *Order Dismissing Case* [*See* Case No. 22-60043 (the "**FSS Docket**"), Docket No. 956] on June 21, 2024 (the "**Dismissal Order**") dismissing the FSS Case for the reasons stated at the hearing held on June 14, 2024, and (b) that certain *Order Converting Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code* [Jones Docket No. 708] on June 14, 2024 (the "**Conversion Date**") converting the Jones Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.  On the Conversion Date, the United States Trustee for the Southern District of Texas appointed Christopher R. Murray as the chapter 7 trustee in the Jones Chapter 7 Case [Jones Docket No. 709].

9.      On September 25, 2024, the Court entered that certain *Order Supplementing Order Dismissing Case* [FSS Docket No. 1021] (the "**Supplemental Dismissal Order**"). The Supplemental Dismissal Order provides that, as of the date of the Dismissal Order, all property of the bankruptcy estate of FSS vested in the Estate and under the control of the Trustee.

**B.  The Connecticut Families' Claims**

10.      In May 2018, a subset of the Connecticut Families brought an action in Connecticut state court against, among others, FSS and Jones, alleging defamation, intentional infliction of emotional distress, invasion of privacy, and civil conspiracy based on statements made by Jones and FSS in the wake of the Sandy Hook Elementary School shooting.  The Connecticut Families obtained judgments exceeding $1.4 billion against FSS, Jones, and certain other defendants in consolidated litigation captioned *Lafferty* v. *Jones*, No. UWY-CV18-6046436-S, Docket No. 1044 (Conn. Super. Ct. Dec. 22, 2022) (the "**Connecticut Judgment**").

4

This judgment was comprised of approximately $965,000,000 in compensatory damages, $300,000,000 in common law punitive damages, and $150,000,000 in punitive damages under the Connecticut Unfair Trade Practices Act.

11.     The Connecticut Families filed proofs of claim in the Bankruptcy Cases reflecting each of the Connecticut Families' respective portions of the Connecticut Judgment.  *See, e.g.*, FSS Claim Nos. 13–16, 19, 20–26.

12.     Jones has appealed the Connecticut Judgment.  Most recently, the Connecticut Appellate Court rendered its appellate decision in *Lafferty* v. *Jones*, AC 46131 (Con. App. Ct. 2024).  The Connecticut Appellate Court affirmed $1.3 billion of the Connecticut Families' claims, including 100% of the compensatory damages awarded by the jury and 100% of the common law punitive damages, but overturned the punitive damages award under the Connecticut Unfair Trade Practices Act.  *Lafferty* v. *Jones*, AC 46131, at 49 (Con. App. Ct. 2024).  Jones has indicated that he intends to further appeal the Connecticut Judgment, in which case, the Connecticut Families intend to cross appeal the Appellate Court's ruling with respect to damages under the Connecticut Unfair Trade Practices Act.

**C.  The Texas Families' Claims**

13.     Also in 2018, the Texas Families brought actions in Texas state court against FSS and Jones.  Actions brought by Neil Heslin and Scarlett Lewis were consolidated, and on January 13, 2023, Heslin and Lewis obtained judgments against FSS and Jones in an aggregate amount of $50,043,653.80 (the "**Texas Judgment**").  *See Heslin* v. *Jones*, Case No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas.  Heslin and Lewis have filed proofs of claim in the Bankruptcy Cases reflecting the amounts of their liquidated judgments.  *See, e.g.*, FSS Claim Nos. 30–31.

14.     Additional lawsuits filed by the three other Texas Families—Veronique De La Rosa, Leonard Pozner, and Marcel Fontaine—were stayed on account of the Bankruptcy Cases. To date, these claims have not been liquidated.  Pozner, Fontaine, and De La Rosa have filed proofs of claim in the Bankruptcy Cases reflecting their unliquidated claims.  *See, e.g.*, FSS Claim Nos. 28–29, 33.

**D.  The Texas Families' 2023 Settlement**

15.     On June 8, 2023, FSS and Jones each filed motions (together, the "**9019 Motions**") seeking approval of settlements by and among the Texas Families, FSS, and Jones resolving the value of the Texas Families' unliquidated claims for purposes of the Bankruptcy Cases.[3]  The 9019 Motions sought approval of a settlement that would allow the Texas Families' claims against FSS and Jones in an aggregate amount of $480,044,373, which amount constitutes 25% of all claims held collectively by the Connecticut Families and the Texas Families (collectively, the "**Families**").   Notably, the terms of the settlements set forth in the 9019 Motions were conditioned on certain criteria being met including, among other things, that the proposed claim amounts would control *solely* in the context of a chapter 11 plan that was supported by the Connecticut Families.

16.     On July 18, 2023, the Court entered orders approving the relief requested in the 9019 Motions.[4]  However, because the relief requested in the 9019 Motions was conditioned on the Connecticut Families' support of a chapter 11 plan, and because no such plan was

---

[3]     *See Debtors' Motion for Approval of Compromise and Settlement Under Federal Rule of Bankruptcy Procedures 9019*, Case No. 22-33553 (the "Jones Docket"), [Jones Docket No. 324]; *Debtors' Motion for Approval of Compromise and Settlement Under Federal Rule of Bankruptcy Procedures 9019*, Case No. 22-60043 [FSS Docket No. 621].

[4]     *See, e.g., Agreed Order on Debtors' Motion for Approval of Compromise and Settlement Under Federal Rule of Bankruptcy Procedure 9019* [Jones Docket No. 374].

6

approved or implemented in any of the Bankruptcy Cases, the quantum of the Texas Families' unliquidated claims for purposes of the Bankruptcy Cases remains unresolved.

**E. The Non-Dischargeability Adversary Proceedings**

17.     On March 10, 2023, the Connecticut Families and the Texas Families each filed adversary complaints in the FSS Case and in the Jones Chapter 11 Case to confirm the nondischargeability of the judgments and awards entered in the underlying Connecticut and Texas state court proceedings, respectively.[5]

18.     On April 13, 2023, the Court entered a stipulation and agreed order abating the FSS adversary proceedings until the earlier of fourteen (14) days after the Fifth Circuit Court of Appeals issued a decision in, or declined to hear, the appeal certified on February 2, 2023 in *Avion Funding, LLC* v. *GFS Industries, LLC*, Case No. 223-90009. *Stipulation and Agreed Order Abating FSS Adversary Proceedings* [Adv. Pro. No. 23-03036, Docket No. 40]. Following the issuance of a decision in *Avion Funding*, the Court entered a stipulation and agreed order on May 2, 2024, which extended FSS's deadline to answer the pending adversary complaints through and to June 28, 2024. *Stipulation & Agreed Order* [Adv. Pro. No. 23-03036, Docket No. 62].

19.     On October 19, 2023, this Court confirmed that the vast majority of the Families' claims—approximately $1.115 billion of the Connecticut Families' claims and $4.3 million of the Texas Families claims—were nondischargeable pursuant to section 523(a)(6) of the Bankruptcy Code in the Jones bankruptcy case.

---

[5]     *See Complaint to Determine Dischargeability of Debt, Heslin v. Jones*, Adv. Pro. No. 23-03035-CML, dated March 10, 2023 [Docket No. 1]; *Adversary Complaint Seeking Judgment that Sandy Hook Judgment is Non-Dischargeable Under Bankruptcy Code § 523(a), Wheeler v. Jones*, No. 23-03037-CML, dated March 10, 2023 [Docket No. 1]; *Complaint to Determine Dischargeability of Debt, Heslin v. Jones*, Adv. Pro. No. 23-03034-CML, dated March 10, 2023 [Docket No. 1]; *Adversary Complaint Seeking Judgment that Sandy Hook Judgment is Non-Dischargeable Under Bankruptcy Code § 523(a), Wheeler v. Jones*, No. 23-03036-CML, dated March 10, 2023 [Docket No. 1].

20.    With respect to the Connecticut Families' claims, the Court issued that certain *Memorandum Decision on Connecticut Plaintiffs' Motion for Summary Judgment Against Jones,* dated October 19, 2023 [Adv. Pro. No. 23-03037, Docket No. 76] and granted summary judgment for the Connecticut Families on all claims, except with respect to the jury's award of common law punitive damages.

21.    With respect to the Texas Families' claims, the Court issued that certain *Memorandum Decision on Texas Plaintiffs' Motion for Summary Judgment Against Jones*, dated October 19, 2023 [Adv. Pro. No. 23-03035, Docket No. 46] and granted partial summary judgment for the Texas Families, holding that: (i) the portion of the Texas Judgment that was awarded based on Jones's liability for defamation was nondischargeable in bankruptcy because Jones's defamatory acts had been intentional; but (ii) the portion (if any) of the Texas Judgment that had been awarded based on Jones's merely reckless conduct in committing intentional infliction of emotional distress would be dischargeable.

### The Settlement

22.    The Settlement is the result of extensive good-faith negotiations by and among the Trustee, the Connecticut Families, and the Texas Families, and would resolve a key dispute at the heart of the Bankruptcy Cases—the allocation of proceeds from the liquidation of the Estate by and among the Families.  The salient terms of the Settlement are as follows:[6]

---

[6]    The following is a summary only and does not purport to be a complete description of all of the terms, provisions, conditions precedent, and agreements contained in the Settlement, and is subject to and qualified in its entirety by reference to the full text of the Settlement, which is set forth in the Order attached hereto.  To the extent there is any inconsistency between this summary and the terms of the Settlement, the terms of the Settlement shall control.  Capitalized terms used herein but not otherwise defined have the meanings provided to them in the Settlement or Order, as applicable.

8

a. <u>Allowance of Families' Claims Against FSS and Jones</u>. The Connecticut Families' and Texas Families' claims against FSS and the Estate (the "**Estate Claims**") shall be allowed in the Jones Chapter 7 Case in the amounts set forth on Schedule 1 to the Order, for all purposes in the Jones Chapter 7 Case. All parties' rights are fully reserved with respect to a determination of the amount of any non-dischargeable judgment under section 523 of the Bankruptcy Code.

b. <u>Settlement Payment to Texas Families</u>. From all amounts distributed by the Trustee on account of the Estate Claims, the Trustee shall pay to the Texas Families $4,000,000.00 (the "**Settlement Amount**") and, to the extent applicable, the True-Up Payment (each as defined below). The Settlement Amount and the True-Up Payment (to the extent applicable) shall be the sole and exclusive recovery of the Texas Families from FSS and the Estate.

    i. <u>The Settlement Amount</u>. The Trustee shall pay the Texas Families (i) $1,000,000.00 within 7 days of the Court's order approving the Settlement becoming final, which payment shall constitute an interim distribution on the Estate Claims, and (ii) the next $3,000,000.00 distributed from time to time by the Trustee on account of the Estate Claims. The Trustee will use reasonable best efforts to seek Court authorization to make further interim distributions as soon as practicable and, if consistent with the Trustee's business judgment regarding the cash availability and needs of the Estate, such that the Settlement Amount is funded within 90 days of entry of the order approving the Settlement.

    ii. <u>The True-Up Payment</u>. In addition to the Settlement Amount, the Texas Families shall also be entitled, to the extent applicable, to a true-up payment ensuring that the Texas Families receive, inclusive of the Settlement Amount, 25% of the aggregate amount of all distributions made on account of the Estate Claims (the "**True-Up Payment**"). The True-Up Payment shall be calculated at such time that the Trustee makes a final distribution to the Connecticut Families. At that time, to the extent the Connecticut Families would otherwise receive a distribution that exceeds $12,000,000 in the aggregate from the Estate, the Trustee shall make a payment to the Texas Families equal to 25% of any distribution in excess of $12,000,000.[7]

c. <u>Texas Families' Settlement Obligations</u>. Upon entry of the Order and receipt of the Settlement Amount, the Settlement Parties each agree that the Texas Families shall:

    i. no longer be a party in interest in the Jones Chapter 7 Case except with

---

[7] It is the intention of the Families that the Texas Families shall, in no event, receive less than the greater of (i) $4,000,0000 and (ii) 25% of all distributions made on account of the Estate Claims (inclusive of the Settlement Amount). For the avoidance of doubt, the Connecticut Families shall receive 75% of any distribution in excess of $12,000,000 on account of the Estate Claims.

17035511

respect to the Specified Matters;[8]

 ii. except with respect to the Specified Matters, not file any pleadings, make appearances, or otherwise take a position with respect to issues arising in the Jones Chapter 7 Case;

 iii. except with respect to the Specified Matters, not take any action in the Jones Chapter 7 Case that is inconsistent with the stated position of the Connecticut Families, and use commercially reasonable and good faith efforts to express support for the positions of the Connecticut Families;

 iv. upon no less than ten (10) business days' notice from the Connecticut Families, assign to the Connecticut Families (or their designee) all liquidated judgments the Texas Families hold against FSS and take any actions necessary to effectuate the same (the "**Texas FSS Claims Assignment**"); *provided*, *however*, that the Texas Families shall have no obligation to assign any judgements they hold against Jones; and

 v. within five (5) business days of receiving the Settlement Amount, dismiss with prejudice their pending appeal of the *Order Supplementing Order Dismissing Case* [FSS Docket No. 1021].

d. <u>Connecticut Families' Settlement Obligations</u>. The Connecticut Families shall consent to (a) the allowance of the Texas Families' claims, as set forth on Schedule 1 to the Order, and (b) the Trustee's payment of the Settlement Amount and the True-Up Payment, if any, to the Texas Families.

e. <u>FSS's Right of Appeal</u>. The right of FSS to appeal any judgment(s) awarded in favor of the Families in the State Court Litigation[9] solely as against FSS shall constitute property of the Estate, and the Trustee shall have the exclusive authority to prosecute or dismiss any such appeal on behalf of FSS. For the avoidance of doubt, all parties' rights are reserved with respect to Jones' appeal of the State Court Litigation as such appeals relate to judgment(s) awarded to the Families against Jones, including whether such appellate rights constitute property of the Estate.

---

[8] The "**Specified Matters**" include (i) all claims and causes of action related to the Texas Families' non-dischargeability adversary proceeding against the Debtor, (ii) all rights of the Texas Families to enforce the Settlement and the Order, and (iii) other matter in the Jones Chapter 7 Case that directly and adversely affects the Texas Families; *provided, however,* that a matter shall not constitute a Specified Matter for purposes of (iii) solely because such matter would affect the aggregate quantum of Estate distributions in the Jones Chapter 7 Case.

[9] The "**State Court Litigation**" refers to: (i) *Lafferty* v. *Jones*, X06-UWY-CV-18-6046436-S, in the Judicial District of Waterbury of the Connecticut Superior Court; (ii) *Sherlach* v. *Jones*, X06-UWY-CV-18-6046437-S, in the Judicial District of Waterbury of the Connecticut Superior Court; (iii) *Heslin* v. *Jones*, Cause No. D-1-GN-18-001835 in the 261st District Court of Travis County, Texas; (iv) *Lewis* v. *Jones*, Cause No. D-1-GN-18-006623 in the 98th District Court of Travis County, Texas; (v) *Pozner* v. *Jones*, Cause No. D-1-GN-18-001842, in the 345th District Court of Travis County, Texas; and (vi) *Fontaine* v. *Jones*, Cause No. D-1-GN-18-001605 in the 459th District Court of Travis County, Texas.

f. <u>Treatment of Certain Ancillary Proceedings</u>.  Upon entry of the Order, the following shall apply with respect to the proceeding captioned *Heslin* v. *Jones*, Cause No. D-1-GN-18-001835A before the 261st District Court of Travis County, Texas (the "**Texas State Court Litigation**"), as such matters may have been removed or transferred from time to time:

    i. <u>The Turnover Order</u>.  That certain *Turnover Order* with respect to the assets of FSS entered on June 21, 2024 in the Texas State Court Litigation (the "**Turnover Order**") shall be stayed indefinitely absent (i) consummation of the Texas FSS Claims Assignment and (ii) written consent of the Trustee and the Connecticut Families; *provided* that the Trustee reserves all rights with respect to any continued prosecution or enforcement of the Turnover Order; *provided however* that the consent of the Trustee shall not be required if the Estate abandons the membership interests in FSS;

    ii. <u>The Garnishment Application.</u>  That certain *Plaintiffs' Application for Post-Judgment Writ of Garnishment* filed by the Texas Families in the Texas State Court Litigation on June 21, 2024 (the "**Garnishment Application**") shall be stayed indefinitely absent (i) consummation of the Texas FSS Claims Assignment and (ii) written consent of the Trustee and the Connecticut Families; *provided* that the Trustee reserves all rights with respect to any continued prosecution or enforcement of the Garnishment Application; *provided however* that the consent of the Trustee shall not be required if the Estate abandons the membership interests in FSS; and

    iii. <u>Remanding the Texas State Court Litigation</u>.  The Texas State Court Litigation pending in the following adversary proceedings:  Nos. 24-03228 and 24-03229, shall otherwise be remanded to the District Court of Travis County, Texas, subject in all respects to the automatic stay under Bankruptcy Code section 362 and the provisions of the Order.

g. <u>Settlement Parties Waiver of Certain Claims</u>.  The Estate shall waive any claims against the other Settlement Parties for alleged violations of the automatic stay in connection with the action taken prior to entry of the Order related to the Turnover Order, the Garnishment Application, and the Receivership Application.[10]  The Connecticut Families and the Texas Families have waived any claims against each other related to the Turnover Order, the Garnishment Application, or the Receivership Application.

h. <u>Reservation of Rights With Respect To Non-Dischargeable Claims</u>.  Nothing in the Settlement or the Order shall modify, limit, impair, or otherwise restrict the Families' right with respect to any non-dischargeable claims against Jones,

---

[10]  The "**Receivership Application**" refers to the *Application for Post-Judgment Turnover and Appointment of Receiver as to Judgment Debtor Alexander E. Jones*, Cause No. D-1-GN-24-004752, filed by the Connecticut Families in the Texas State Court Litigation on October 3, 2024.

including, without limitation, (i) the amount of any non-dischargeable claim against Jones, and (ii) the right to collect and or recover on account of such non-dischargeable claim against Jones from assets other than those assets that are not property of the Estate.

i.  Trustee's Treatment of Group Claims.  For the purposes of the Settlement Amount and any other distributions under the Settlement and the Order, the Trustee shall treat all allowed claims of Connecticut Families, on the one hand, and the Texas Families, on the other, as single allowed claims of each group payable in accordance with the terms of the Order.  Upon making a payment to the designee of the Connecticut Families and the designee of the Texas Families, the Trustee and the Estate shall have no further obligation to the constituent members of such groups with respect to such payment, it being the sole responsibility of the designated recipient to determine allocations, deductions, adjustments or any other matters affecting the allocation of proceeds according to any intra-group agreement or understanding. Subject to payment by the Trustee of the amounts set forth in the Order to the respective group designees, the Families shall be permitted to allocate distributions among themselves in any way that they may agree, irrespective of the allowed claim amounts set forth in Schedule 1 to the Order.

## Relief Requested

23.  The Trustee believes that the proposed Settlement is in the best interest of the Estate, including FSS, their respective creditors, and all other parties in interest and, accordingly, files this Motion seeking entry of an order (i) authorizing and approving the Settlement by and among the Settlement Parties on the terms and conditions summarized herein (and as more fully set forth in the Order), and (ii) granting all other relief that is appropriate under the circumstances.

## Basis for Relief Requested

### A.  The Court Should Approve the Settlement Pursuant to Bankruptcy Rule 9019

24.  Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, equitable, and in the best interest of the estate.  *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (citing *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).  Ultimately, approval of a compromise is within the

12

sound discretion of the bankruptcy court.  *See, e.g.*, *United States* v. *AWECO, Inc.* (*In re AWECO, Inc.*), 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity* v. *Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 599, 602–03 (5th Cir. 1980).  Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated and costly." *Jackson Brewing Co.*, 624 F.2d at 602.  Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing, FED. R. BANKR. P. 9019(a), and Section 105 of the Bankruptcy Code empowers a court to issue any order that is "necessary or appropriate."  11 U.S.C. § 105(a).

25. In the Fifth Circuit, courts consider the following factors when evaluating whether a compromise is fair and equitable:

a. The probability of success in the litigation, with due consideration for uncertainty in fact and law;

b. The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and

c. All other factors bearing on the wisdom of the compromise.

*Official Comm. of Unsecured Creditor v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997).  In addition, under the rubric of the third, catch-all provision, the Fifth Circuit has identified two additional factors that bear on the decision to approve a proposed settlement:

a. Whether the compromise serves "the best interests of the creditors, with proper deference to their reasonable views."  *Id.* (internal citations omitted); and

b. The extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion.  *Id.* (internal citations omitted).

26. The movant bears the burden of establishing that the balance of the settlement factors warrant approval.  However, that burden is not great.  The movant need only show that

the settlement falls within the "range of reasonable litigation alternatives." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *Cook v. Waldron*, 2006 WL 1007489, at *4 (S.D. Tex. Apr. 8, 2006). Moreover, the movant is not required to present a mini-trial or evidentiary hearing to adjudicate the issues being settled. The Court may give weight to the "informed judgments of the . . . debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

27.      Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts* v. *Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc*. v. *Anderson*, 390 U.S. 414, 424 (1968). Moreover, "[g]reat judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co., Inc*. v. *Blackburn/Travis/Cole, Ltd*. (*In re State Park Bldg. Grp., Ltd*.), 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005) (citation omitted). "As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." *Richmond Leasing Co*., 762 F.2d 1303, 1309 (5th Cir. 1985) (citation omitted).

## B. The Settlement Satisfies the Three-Factor Test Courts in the Fifth Circuit Use to Analyze Proposed Settlements

28.      Based on a review and analysis of the Settlement, and after consultation with counsel, the Trustee has determined in his reasonable business judgment that the Settlement is fair and equitable, reasonable, and in the best interest of the Estate, including FSS, their

14

respective creditors, and all other parties in interest.  Accordingly, the Settlement satisfies the standard for approval under Bankruptcy Rule 9019 and should be approved.

29.     *First*, the Settlement provides significant and near-immediate benefits to the Estate, the Families, and all other parties in interest, in contrast to the uncertainty and inherent risk associated with continued litigation.  Pursuant to the Settlement, protracted litigation over the allowed amount of each of the Families' respective claims in the Bankruptcy Cases, and each of the Families' respective allocation of Estate distributions, will be resolved consensually. Significantly, this will allow the Trustee to make distributions to the Families, in accordance with the Order or further order of this Court, that otherwise would have been forestalled.  The Settlement Amount and amounts to be distributed to the Connecticut Families constitute tangible and meaningful recoveries that will be distributed to the Families pursuant to the Settlement's terms.  In contrast, the Settlement Parties would have either been forced to (a) wait for years as the various State Court Litigations proceeded to initial judgments (in the case of certain of the Texas Families) and to final non-appealable orders (in the case of all of the Families), or (b) litigate the merits of any potential settlements that did not include all of the Settlement Parties (*e.g.,* partial settlements between one group of Families and the Trustee and/or Jones, that may be opposed by the others), with no certainty in either case that any Family would ultimately be awarded more than the amounts agreed to in the Settlement, and any such outcome would only come after considerable delay and attendant litigation costs.  Absent the Settlement, Estate distributions would likely be withheld from *all* creditors until each of the Families' claims are liquidated and all rights to appeal are exhausted.  As this Court is aware, the theories of liability implicated by the Families' claims involve highly technical and fact-intensive inquiries and would be subject to potentially years of further appeal, all to the detriment of the Estate and its

15

creditors. Accordingly, the compromise represents a successful outcome for all parties and will ensure a more expeditious conclusion to the Jones Chapter 7 Case and the liquidation of FSS assets.

30. *Second*, should the Settlement Parties have to litigate the amount of their allowed claims in the Bankruptcy Court, such continued litigation would require the Trustee to expend significant Estate resources that could have otherwise been distributed to creditors of the Estate—namely, the Families. The Settlement will, instead, serve to minimize such expense and expedite the administration of the Debtor's Estate for the benefit of creditors who have waited nearly twelve years to receive any recovery on account of their claims. Absent the Settlement, administration of the Debtor's Estate would likely be delayed for years, and the Trustee would incur significant administrative costs to maintain the Jones Chapter 7 Case before he could make a distribution to the Families. As such, the Settlement is appropriate because it would provide significant value to all creditors and ensure that the Estate's limited funds are not unnecessarily depleted by costly and time-intensive litigation.

31. *Third*, the Settlement is in the best interests of creditors as it will resolve the longstanding issue of how to allocate the Estate proceeds among each of the Families and will permit the timely and equitable distribution of Estate assets to creditors. Importantly, the proposed allowed amounts of each of the Families' claims set forth on Schedule 1 of the Order are consistent with those previously agreed to by the Texas Families, FSS, and Jones in the 9019 Motions, and which were approved by this Court. The Settlement is supported by each of the Families—by far, the largest creditor constituency in the Bankruptcy Cases—and will provide the five individual Texas Families with meaningful, guaranteed recovery on an expedited basis, as well as the potential to recover additional amounts via the True Up Payment. The Settlement

16

will permit the Jones Chapter 7 Case to come to a much-needed conclusion more quickly and ensures that the Families, as well as all other creditors, receive their long-awaited recovery. This Court has recently urged all parties to find a way to ensure that the Debtors' assets are administered in an orderly and efficient manner and these Bankruptcy Cases are concluded. *See, e.g.*, Hr'g Tr. 375:11–375:16 (December 10, 2024) ("This case needs to come to a close.…[I]t's December and this is a 2022 case. This case ends in 2025. It has to. And it's got to get back on track.")

32.     *Finally*, the Settlement was negotiated in good faith and is not the product of fraud or collusion. The Settlement is the result of a multi-year effort among the Families regarding an equitable means of allocating recoveries from the Debtor, and months of negotiations among the Families and the Trustee. The Settlement is the product of lengthy, difficult, arm's-length negotiations among the Settlement Parties, and each of the Settlement Parties is represented by sophisticated counsel.

33.     The Trustee believes the proposed Settlement constitutes a favorable resolution of the disputes by and among the Families, FSS, and Jones and falls within the "range of reasonable litigation alternatives." *See Cook*, 2006 WL 1007489, at 4. Accordingly, the Trustee believes that the Settlement is in the best interest of the Estate, FSS, each of their respective creditors, and all other parties in interest.

## Request for Expedited Consideration

34.     The Trustee requests expedited consideration of this Motion. As set forth herein, the Trustee seeks to resolve the allowed amounts of the Families' claims against Jones and FSS, the resolution of which is critical to the administration of the Estate. Any delay in approving the Settlement will cause uncertainty as to the resolution of the Families' claims and their

17

involvement in this case and impact the Trustee's ability to liquidate the Debtor's assets. As such, the Trustee believes that expedited consideration of the Motion is warranted.

### Waiver of Bankruptcy Rules 6004

35.     To implement the foregoing successfully, the Trustee requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

36.     The Trustee will provide notice of this Motion to the following parties or their counsel: (a) the United States Trustee for the Southern District of Texas; (b) counsel for the Debtor; (c) counsel for the Connecticut Families; (d) counsel for the Texas Families; (4) the holders of the 20 largest unsecured claims against the Debtor; (f) the Office of the United States Attorney for the Southern District of Texas; (h) the Texas state attorney general; (h) the Internal Revenue Service; (i) each governmental agency that is an interested party with respect to the Settlement and transactions proposed thereunder; (j) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (k) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d). In light of the nature of the relief requested, no further notice is required.

*[Remainder of page intentionally blank]*

17035511

**Prayer**

WHEREFORE, the Trustee respectfully requests that the Court enter an order: (a) (i) authorizing and approving the Settlement by and among the Settlement Parties on the terms and conditions set forth herein (and as more fully set forth in the Order), and (ii) granting all other relief that is appropriate under the circumstances.

Dated: January 10, 2025

Respectfully Submitted,

By: */s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl (Bar No. 24038592)
Michael B. Dearman (Bar No. 24116270)
Jordan T. Stevens (Bar No. 24106467)
Kenesha L. Starling (Bar No.24114906)
**Porter Hedges LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jwolfshohl@porterhedges.com
mdearman@porterhedges.com
jstevens@porterhedges.com
kstarling@porterhedges.com

*and*

Erin E. Jones (TX 24032478)
**Jones Murray LLP**
602 Sawyer Street, Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Fax: (832) 529-3393
erin@jonesmurray.com

*Counsel for Christopher R. Murray, Chapter 7 Trustee*

19

17035511

## CERTIFICATE OF ACCURACY

I, the undersigned, certify that the foregoing statements are true and accurate to the best of my knowledge.  This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl


## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in the case on January 10, 2025.

*/s/ Joshua W. Wolfshohl*
Joshua W. Wolfshohl

17035511

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| | § |
| | § |
| In re: | § Chapter 7 |
| | § |
| ALEXANDER E. JONES, | § Case No. 22-33553 (CML) |
| | § |
| Debtor. | § |
| | § |

**ORDER (I) AUTHORIZING AND APPROVING SETTLEMENT**
**BY AND BETWEEN THE CHAPTER 7 TRUSTEE, THE CONNECTICUT**
**FAMILIES, AND THE TEXAS FAMILIES AND (II) GRANTING RELATED RELIEF**

**[Related to Docket No. _____ ]**

Upon consideration of the motion (the "Motion")[1] of Christopher R. Murray, the chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of the above-captioned debtor (the "Debtor"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking the entry of this order authorizing and approving the settlement terms herein (the "Settlement") by and among the Trustee on behalf of the Estate, the Connecticut Families,[2] and the Texas Families,[3] (collectively, the "Settlement Parties"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] The "Connecticut Families" are Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, and Erica Ash.

[3] The "Texas Families" are Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and the Estate of Marcel Fontaine.

17034916

proceeding and the Motion in this district is proper pursuant to 28 U.S.C. § 1408; and this Court having found that the relief requested in the Motion is in the best interests of the Estate, its creditors, and other parties in interest; and this Court having found that the Trustee's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and upon all of the proceedings had before this Court; and it appearing, upon due deliberation, that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief requested in the Motion, it is hereby

**FOUND AND DETERMINED THAT:**[4]

A.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, there is no just reason for delay in the implementation of this Order or entry of judgment as set forth herein.

B.      The Settlement was proposed, negotiated, and entered into by the Settlement Parties and each of their applicable employees, agents, attorneys, advisors, and representatives at arm's length, in good faith, and without collusion or fraud. The terms and conditions of the Settlement are fair and reasonable under the circumstances and are not being entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Estate or any of its creditors

---

[4]     The findings of fact and conclusions of law herein constitute this Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by this Court during or at the conclusion of the Hearing. This Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

2

under any applicable law. The consideration to be exchanged by the Settlement Parties under the Settlement constitutes fair and reasonable consideration, reasonably equivalent value, and fair and adequate consideration.

C.      The Settlement (a) satisfies the standards and requirements for the approval of a compromise and settlement under Bankruptcy Rule 9019 and other applicable law, (b) is reasonable, fair, and equitable and supported by adequate consideration, and (c) is in the best interests of the Debtor's Estate, creditors, and all other parties in interest. The Trustee has exercised sound and reasonable business judgment seeking approval of the compromises on the terms described herein and entering into the Settlement described herein.

D.      Notwithstanding anything to the contrary in the Motion or herein, the right to appeal any judgment(s) against Free Speech Systems, LLC ("FSS") awarded in favor of the Connecticut Families or the Texas Families (together, the "Families") in the State Court Litigation[5] constitutes property of the Estate, and the authority to prosecute or dismiss any such appeal, solely with respect to FSS, is vested exclusively in the Trustee.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

**A.      Motion is Granted**

1.      The relief requested is granted and approved as set forth herein. To the extent there is any inconsistency between the Motion and the Order, this Order controls.

---

[5]      The "State Court Litigation" refers to: (i) *Lafferty* v. *Jones*, X06-UWY-CV-18-6046436-S, in the Judicial District of Waterbury of the Connecticut Superior Court; (ii) *Sherlach* v. *Jones*, X06-UWY-CV-18-6046437-S, in the Judicial District of Waterbury of the Connecticut Superior Court; (iii) *Heslin* v. *Jones*, Cause No. D-1-GN-18-001835 in the 261st District Court of Travis County, Texas; (iv) *Lewis* v. *Jones*, Cause No. D-1-GN-18-006623 in the 98th District Court of Travis County, Texas; (v) *Pozner* v. *Jones*, Cause No. D-1-GN-18-001842, in the 345th District Court of Travis County, Texas; and (vi) *Fontaine* v. *Jones*, Cause No. D-1-GN-18-001605 in the 459th District Court of Travis County, Texas.

3

**B.    Objections Overruled**

2.    All objections, statements, and reservations of rights related to the Motion or the relief granted herein that have not been withdrawn with prejudice, waived, or settled are overruled and denied on the merits with prejudice.

**C.    The Settlement is Authorized and the Terms and Conditions of the Settlement are Approved**

3.    Pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, the Settlement is hereby authorized and approved as follows:

**i.    Allowance of Families' Claims Against FSS and the Estate**

4.    The Connecticut Families' and Texas Families' claims against FSS and the Estate (together, the "Estate Claims") shall be allowed in the Debtor's above referenced chapter 7 case (the "Chapter 7 Case") in the amounts set forth on the attached Schedule 1, for all purposes in the Chapter 7 Case.

5.    Notwithstanding allowance of the Estate Claims, all parties' rights are fully reserved with respect to a determination of the amount of any non-dischargeable judgment under Bankruptcy Code section 523.

6.    Notwithstanding anything to the contrary, the rights of Alexander E. Jones, in his individual capacity ("Jones"), to pursue any appeal of any judgments awarded in favor of the Families as against Jones in the State Court Litigation, if any, are preserved.

**ii.    Settlement Payment to Texas Families; Allocation of Distributable Proceeds**

7.    From all amounts distributed on account of the Estate Claims, the Trustee shall pay the Texas Families $4,000,000.00 (the "Settlement Amount"), which, subject to the True-Up Payment (as defined below), shall constitute the sole and exclusive recovery of the Texas Families

17034916

from FSS and the Estate. The Settlement Amount shall be paid (i) $1,000,000.00 within 7 days of this Order becoming final, which payment shall constitute an interim distribution on the Estate Claims, and (ii) the next $3,000,000.00 distributed from time to time by the Trustee on account of the Estate Claims. The Trustee will use reasonable best efforts to seek Court authorization to make further interim distributions as soon as practicable and, if consistent with the Trustee's business judgment regarding the cash availability and needs of the Estate, such that the Settlement Amount is funded within 90 days of entry of this Order.

8.      In addition to the Settlement Amount, the Texas Families shall also be entitled to a true-up payment ensuring that the Texas Families receive, inclusive of the Settlement Amount, 25% of the aggregate amount of all distributions made on account of the Estate Claims (the "True-Up Payment"). The True-Up Payment shall be calculated at such time that the Trustee makes a final distribution to the Connecticut Families. At that time, to the extent the Connecticut Families would otherwise receive a distribution that exceeds $12,000,000 in the aggregate from the Estate, the Trustee shall make a payment to the Texas Families equal to 25% of any distribution in excess of $12,000,000, it being the intention of the Connecticut Families and the Texas Families that in no event shall the Texas Families receive less than the greater of (a) $4,000,000 and (b) 25% of all distributions made on account of the Estate Claims (inclusive of the Settlement Amount). For the avoidance of doubt, the Connecticut Families shall receive 75% of any distribution in excess of $12,000,000 on account of the Estate Claims.

9.      The allocation of distributions from the Estate amongst the Families, as set forth herein, shall not be affected by any subsequent appeal, reversal, modification, or further proceedings of any kind with respect to the State Court Litigation or the Non-Dischargeability

5

Decisions.[6]

### iii.    Texas Families' Settlement Obligations

10.     Upon entry of this Order and receipt of the Settlement Amount, the Settlement

Parties each agree that the Texas Families shall:

a.  no longer be a party in interest in this Chapter 7 Case, except with respect to the Specified Matters (as defined below);

b.   except with respect to the Specified Matters, not file any pleadings, make appearances, or otherwise take a position with respect to issues arising in this Chapter 7 Case;

c.  except with respect to the Specified Matters, not take any action in the Chapter 7 Case that is inconsistent with the stated position of the Connecticut Families, and use commercially reasonable and good faith efforts to express support for the positions of the Connecticut Families;

d.   upon no less than ten (10) business days' notice from of the Connecticut Families, assign to the Connecticut Families (or their designee) all liquidated judgments the Texas Families hold against FSS and take any actions necessary to effectuate the same (the "Texas FSS Claims Assignment"); *provided, however,* that the Texas Families shall have no obligation to assign any judgments against Jones; and

e.   within five (5) business days of receiving the Settlement Amount, dismiss with prejudice their pending appeal of the *Order Supplementing Order Dismissing Case* [Case No. 22-60043, Docket No. 1021].

---

[6]     The "Non-Dischargeability Decisions" refers to the (i) *Memorandum Decision on Texas Plaintiffs' Motion for Summary Judgment*, Case No. 23-03035 [Docket No. 46], and (ii) *Memorandum Decision on Connecticut Plaintiffs' Motion for Summary Judgment*, Case No. 23-03037 [Docket No. 76].

17034916

11.     For purposes of this Order, the "Specified Matters" include (i) all claims and causes of action related to the Texas Families' non-dischargeability adversary proceeding against the Debtor, (ii) all rights of the Texas Families to enforce the Settlement and this Order, and (iii) other matters in the Chapter 7 Case that directly and adversely affect the Texas Families' rights in the Settlement and this Order; *provided, however,* that a Specified Matter for purposes of Paragraph 11(iii), shall not include any matter simply because it might affect the aggregate quantum of Estate distributions in the Chapter 7 Case.

### iv.     Connecticut Families' Settlement Obligations

12.     The Connecticut Families shall consent to (a) the allowance of the Texas Families' claims as set forth in the attached Schedule 1, (b) the Trustee's payment of the Settlement Amount and the True-Up Payment, if any, to the Texas Families.

### v.     Additional Settlement Terms

13.     *Cooperation.*  All Settlement Parties shall cooperate in the implementation of the Settlement and no Settlement Party shall take any action inconsistent therewith.

14.     *Appellate Rights.*  The rights of FSS to appeal any judgment(s) awarded in favor of the Families in the State Court Litigation solely as against FSS shall constitute property of the Estate, and the Trustee shall have the exclusive authority to prosecute or dismiss any such appeal on behalf of FSS.  For the avoidance of doubt, all parties' rights are reserved with respect to Jones' appeal of the State Court Litigation as such appeals related to judgment(s) awarded to the Families against Jones, including whether such appellate rights constitute property of the Debtor's Chapter 7 Estate.

15.     *Treatment of Certain Ancillary Proceedings.*   Upon entry of this Order, the following shall apply with respect to the proceeding captioned *Heslin* v. *Jones*, Case No. D-1-

7

GN-18-001835A before the 261st District Court of Travis County, Texas (the "Texas State Court Litigation"), as such matters may have been removed, remanded or transferred from time to time:

    a.    that certain Turnover Order with respect to the assets of FSS entered on June 21, 2024 in the Texas State Court Litigation shall be stayed indefinitely absent (i) consummation of the Texas FSS Claims Assignment and (ii) written consent of the Trustee and the Connecticut Families; *provided however* that the consent of the Trustee shall not be required if the Estate abandons the membership interests in FSS*; provided further* that the Trustee reserves all rights with respect to any continued prosecution or enforcement of the Turnover Order;

    b.    that certain Plaintiffs' Application for Post-Judgment Writ of Garnishment (the "Garnishment Application") filed by the Texas Families in the Texas State Court Litigation on June 21, 2024 shall be stayed indefinitely absent (i) consummation of the Texas FSS Claims Assignment and (ii) written consent of the Trustee and the Connecticut Families; *provided however* that the consent of the Trustee shall not be required if the Estate abandons the membership interests in FSS; *provided further* that the Trustee reserves all rights with respect to any continued prosecution or enforcement of the Garnishment Application;

    c.    The Texas Families shall be forever barred from enforcing the Turnover Order in any manner; and

    d.    the Texas State Court Litigation, pending in the following adversary proceedings: Nos. 24-03228 and 24-03229, are hereby remanded to the court from which such proceedings were removed in Travis County, Texas, subject in all respect to the automatic stay under Bankruptcy Code section 362 and the provisions of this Order

including, for the avoidance of doubt, Paragraph 15 hereof.

16.     The Estate has waived any claims against other Settlement Parties for alleged violations of the automatic stay in connection with action taken prior to entry of this Order related to the Turnover Order, the Garnishment Application, and the Receivership Application.[7] The Connecticut Families and Texas Families have waived any claims against each other relating to the Turnover Order, the Garnishment Application, or the Receivership Application.

17.     *Reservation of Rights With Respect To Non-Dischargeable Claims.*  Nothing in the Settlement or this Order shall modify, limit, impair, or otherwise restrict the Families' rights with respect to any non-dischargeable claims against Jones, including, without limitation, (a) the amount of any non-dischargeable claim against Jones, and (b) the right to collect and/or recover on account of such non-dischargeable claim against Jones from assets that are not property of the Estate.

18.     *Trustee's Treatment of Group Claims.*  For the purposes of the Settlement Amount and any other distributions under the Settlement and this Order, the Trustee shall treat all allowed claims of Connecticut Families, on the one hand, and the Texas Families, on the other, as single allowed claims of each group payable as follows or as otherwise instructed in writing by counsel to such Families:

    a.   If to the Connecticut Families, by payment by wire to Koskoff Koskoff & Bieder, PC.

    b.   If to the Texas Families, by payment by wire to Lawson & Moshenberg PLLC.

Upon making a payment to such designated party, the Trustee and the Estate shall have no further obligation to the constituent members of such groups with respect to such payments, it being the

---

[7]   The "Receivership Application" refers to the *Application for Post-Judgment Turnover and Appointment of Receiver as to Judgment Debtor Alexander E. Jones*, Cause No. D-1-GN-24-004752, filed by the Connecticut Families in the Texas State Court Litigation on October 3, 2024.

17034916

sole responsibility of the applicable designated recipient to determine allocations, deductions, adjustments or any other matters affecting the allocation of proceeds according to any intra-group agreement or understanding.  Subject to payment by the Trustee of the amounts set forth in this Order to the respective group designees set forth above, the Families shall be permitted to allocate distributions among themselves in any way that they may agree, irrespective of the allowed claim amounts set forth in Schedule 1.

**D.      Modification of Amendment of Settlement Terms**

19.      The terms of the Settlement may be modified, amended, or supplemented only with the prior written consent of each of the Settlement Parties.  The Trustee reserves the right to seek Court approval of any modification, amendment, or supplement to the terms of the Settlement.

**E.      Order Shall Control**

20.      The terms of the Settlement set forth in this Order shall control to the extent there is any inconsistency between the terms described in the Motion and the terms set forth in this Order.

**F.      Necessary Action**

21.      The Trustee is authorized to take any and all actions necessary and appropriate to consummate the terms of the Settlement, including but not limited to executing, filing, and/or recording any documents that may be reasonably necessary or desirable to implement the terms of the Settlement or to comply with this Order.

22.      The Connecticut Families and Texas Families shall take any and all actions necessary and appropriate to consummate the terms of the Settlement, including but not limited to executing, filing, and/or recording any documents that may be reasonably necessary or desirable

to implement the terms of the Settlement or to comply with this Order.

**G.      Binding Order**

23.      This Order and the terms and provisions of the Settlement shall be binding on each of the Settlement Parties, their respective affiliates, successors, and assigns, all interested parties in the Bankruptcy Case, including but not limited to the Debtor, FSS, the Debtor's and FSS's creditors (whether known or unknown).  The terms and provisions of the Settlement, and any actions taken pursuant to this Order or the Settlement shall survive the entry of any order, and the terms and provisions of the Settlement, as well as the rights and interests granted pursuant to this Order and the Settlement, shall continue in these or any superseding cases.  For the avoidance of doubt, the terms and provisions of this Order and any actions taken pursuant hereto shall survive entry of an order dismissing this Chapter 7 Case.

**H.      Automatic Stay**

24.      The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Order and the terms of the Settlement.

**I.      Bankruptcy Rule 6004**

25.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

26.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order and the Settlement are immediately effective and enforceable upon its entry.

**J.        Exclusive Jurisdiction**

27.     The Court shall retain exclusive jurisdiction with respect to the terms and

provisions of this Order and the Settlement.


Houston, Texas
Dated: _____

_____
CHRISTOPHER LOPEZ
UNITED STATES BANKRUPTCY JUDGE

## SCHEDULE 1:  ALLOWED CLAIM AMOUNTS

| Claimant | Allowed Claim Amount |
|---|---|
| **Texas Families** | |
| Neil Heslin | $27,196,411 |
| Scarlett Lewis | $22,847,962 |
| Leonard Pozner | $200,000,000 |
| Veronique De La Rosa | $180,000,000 |
| The Estate of Marcel Fontaine | $50,000,000 |
| | |
| **Connecticut Families** | |
| Carlee Soto Parisi | $98,099,304 |
| Carlos Mathew Soto | $86,899,303 |
| David Wheeler | $83,429,303 |
| Donna Soto | $74,099,303 |
| Erica Ash | $111,429,303 |
| Francine Wheeler | $82,099,303 |
| Ian Hockley | $118,899,303 |
| Jacqueline Barden | $48,499,303 |
| Jennifer Hensel | $79,429,303 |
| Jillian Soto-Marino | $101,829,303 |
| Mark Barden | $86,899,303 |
| Nicole Hockley | $108,229,303 |
| Robert Parker | $170,099,303 |
| William Aldenberg | $130,099,303 |
| William Sherlach | $58,099,303 |

17034916