# EXHIBIT 36

**Fill in this information to identify the case:**

Debtor 1    Alex E. Jones

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Southern District of Texas

Case number    22-33553

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:    Identify the Claim

**1. Who is the current creditor?**

Leonard Pozner
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**
- ☑ No
- ☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Chamberlain Hrdlicka attn: Jarrod B. Martin
Name

1200 Smith Street, Suite 1400
Number    Street

Houston              TX        77002
City              State        ZIP Code

Contact phone 713-356-1280

Contact email jarrod.martin@chamberlainlaw.com

Where should payments to the creditor be sent? (if different)

Name

Number    Street

City        State        ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**
- ☑ No
- ☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
- ☑ No
- ☐ Yes. Who made the earlier filing?

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**  $_____ . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See attached Exhibit A - Amount of Claim is Unliquidated

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

### Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   04/11/2023
                   MM / DD / YYYY

/s/ Avi Moshenberg

Signature

**Print the name of the person who is completing and signing this claim:**

Name        Avi Moshenberg
            First name        Middle name        Last name

Title       Counsel for Leonard Pozner

Company     McDowell Hetherington LLP
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     1001 Fannin Street, Suite 2400
            Number        Street
            Houston                                      TX          77002
            City                                         State       ZIP Code

Contact phone   713-337-5580            Email   avi.moshenberg@mhllp.com

---

| Print | Save As... | Add Attachment | | Reset |

Official Form 410                           **Proof of Claim**                           page 3

## EXHIBIT A

### STATEMENT ON CLAIMS AND RESERVATION OF RIGHTS

1.      Leonard Pozner ("**Pozner**") files this Proof of Claim ("**Proof of Claim**") to preserve his unliquidated claims against Debtor, Alex E. Jones ("**Debtor**" or "**Jones**"), which are pending in the 459th Travis County District Court, *Pozner and De La Rosa v. Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC,* Cause No. D-1-GN-18-001842 ("**District Court Case**"). A true and correct copy of Mr. Pozner's Petition is attached as **Exhibit 1**. Mr. Pozner asserts this Proof of Claim against Debtor for defamation and intentional infliction of emotional distress.[1]

2.      Mr. Pozner brought claims against Debtor as a result of defamatory statements made by Jones following the mass shooting at Sandy Hook Elementary School on December 14, 2012. Jones is a conspiracy theorist radio and internet personality who holds himself out as a journalist. Free Speech Systems, LLC ("**FSS**") owns Infowars.com, a website that hosts Jones' media broadcasts and holds itself out as a news and journalism platform. Along with his various business entities, Jones is the chief amplifier for a group that has persistently perpetuated a lie that the Sandy Hook shooting was a staged hoax; that the families who lost loved ones are actors who faked their relatives' deaths, and promoted harassment and abuse of the victims' families. Jones has deliberately employed these false narratives about the Sandy Hook shooting, the victims, and their families as part of a marketing scheme that has brought him and his business entities tens of millions of dollars per year.[2]

---

[1]  *See* Exhibit 1.

[2]  *See* Seth Brown, *Alex Jones's Media Empire Is a Machine Built to Sell Snake-oil Diet Supplements*, N.Y. MAG. (May 4, 2017), http://nymag.com/selectall/2017/05/how-does-alex-jones-make-money.html; Alex Seitz-Wald, *Alex Jones: Conspiracy, Inc.*, SALON (May 2, 2013), https://www.salon.com/2013/05/02/alex_jones_conspiracy_inc/.

3.      Mr. Pozner, his ex-wife Veronique De La Rosa, and their son Noah were made the centerpiece of Jones' lies and harassment. Mr. Pozner and his family suffered a unique and particular focus of Jones' attention and conduct. From the very beginning, since January 2013, Jones had accused Ms. De La Rosa of faking an interview in Newtown with Anderson Cooper on a blue-screen, calling it the "grand finale" of his January 2013 special "Why People Think Sandy Hook is a Hoax." Mr. Pozner immediately contacted Mr. Jones by email and asked him to stop his accusations, but his underlings rebuffed Mr. Pozner in a terse response, while Jones repeatedly published his lie about Ms. De La Rosa for years. When Mr. Pozner complained about one of Jones' videos in 2015, Jones retaliated by publishing a video claiming his son Noah Pozner "died again in Pakistan." When Mr. Pozner complained again, causing YouTube to remove the video, Jones retaliated again by publishing a two-hour episode focusing on Mr. Pozner. During the episode, Jones told his audience that Mr. Pozner was a threat to the First and Second Amendment and part of a "globalist" plot. Mr. Jones also published Mr. Pozner's email address, as well as his mailing address along with maps showing its location.

4.      From 2014 onward, Mr. Pozner endured a constant stream of death threats and confrontations, including an individual in central Florida who was arrested and sentenced to federal prison after she began threatening Mr. Pozner following the disclosure of his location in Boca Raton by Jones. Jones' lies about Sandy Hook, and in particular his lie about Ms. De La Rosa's interview, continued unabated through 2018, when Mr. Pozner and Ms. De La Rosa filed suit in District Court, the first of the Sandy Hook lawsuits against Mr. Jones.

5.      As a result of the lies promulgated by Jones, Mr. Pozner has been forced to endure malicious and cruel abuse, including physical confrontation and harassment, death threats, and a sustained barrage of harassment and verbal assault on social media. These actions were encouraged

by Jones and his business entities, including FSS, when Jones urged his audience of millions to "investigate" the Sandy Hook shooting and Mr. Pozner in particular. Mr. Pozner's reputation and image have been injured, and he has been exposed to public and private hatred, contempt, and ridicule as a result of the defamatory publications, which have caused Mr. Pozner's actual and substantial damages. Additionally, Mr. Pozner has sustained severe emotional distress.

6. At this time, Mr. Pozner's damages are unliquidated. However, Jones' liability has been conclusively established through entry of a default judgment in the District Court Case.[3] Mr. Pozner submits this Proof of Claim in an unliquidated amount, with pre- and post-judgment interest, which does not include costs, attorney's fees allowed by law, or punitive damages, for which Mr. Pozner reserves all rights.

7. Mr. Pozner files this Proof of Claim to preserve his claims against the Debtor, which would be potentially lost or negatively affected otherwise.

8. Mr. Pozner reserves his right to Article III adjudication of the "liquidation or estimation" of his claims "for distribution purposes" and respectfully does not consent to a final order in the bankruptcy proceeding.[4]

9. Mr. Pozner reserves his right to a jury trial and respectfully does not consent to conducting the jury trial in the bankruptcy proceeding.[5]

10. Mr. Pozner does not waive, by filing this limited Proof of Claim or appearing in this case, and expressly reserves, any right whether jurisdictional, procedural, or otherwise, including, but not limited to, any rights against Jones, and any non-debtor affiliates or insiders,

---

[3] *See* Exhibit 2.
[4] *See* 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(5); *see also Wellness Int'l Network, Ltd. V. Sharif,* 135 S. Ct. 1932, 1944 (2015); *Stern v. Marshall,* 546 U.S. 462, 478-79 (2011); *In re Roman Catholic Church for the Archdiocese of New Orleans,* No. 21-1238, 2021 U.S. Dist. LEXIS 160497 (E.D. La. 2021); *In re Residential Capital, LLC,* 536 B.R. 566 (Bankr. S.D.N.Y. 2015).
[5] 28 U.S.C. § 1411; *See In re Clay,* 25 F. 3d 190

including: (i) members of his family; (ii) FSS; (iii) estates of the foregoing individuals; (iv) entities owned, controlled or operated by Alex Jones, members of his family or estates of the foregoing individuals; (v) Auriam Services; (vi) Blue Ascension; or (vii) PQPR and/or FSS's prepetition counsel or other professionals.

11.     Mr. Pozner does not waive or release his rights or claims against any person, entity or property, including, but not limited to, any and all applicable insurance related to his Proof of Claim.

12.     Mr. Pozner does not waive or release any and all of his remedies and rights under applicable state or federal law outside of title 11.

13.     Mr. Pozner does not waive or release his right to have any and all final orders in any and all non-core matters or proceedings entered only after de novo review by a United States District Court Judge.

14.     Mr. Pozner does not waive or release his right to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceedings, which commenced with respect thereto, or any other proceeding that may be commenced in this cause against or otherwise involving Mr. Pozner.

15.     Mr. Pozner does not waive or release his right to the election of a remedy.

16.     Mr. Pozner reserves his rights to amend, modify, and/or supplement any of the claims set forth in this Proof of Claim, including its exhibits, at any time, including after the claims bar date, in any manner, including but not limited to: (i) supplement or amend this Proof of Claim or any related documents and other information, and to describe further the claims asserted herein; (ii) assert any and all additional amounts that are due or may become due from the Debtor including, without limitation, amounts owed both before and after the date of the commencement

of the Debtor's bankruptcy case that remain outstanding in an undetermined amount, or are otherwise unmatured, unliquidated and/or contingent as of the date hereof; and (iii) fix and liquidate the amount of unmatured, contingent, and unliquidated claims. Mr. Pozner expressly reserves the right to attach, produce, and/or rely upon additional documentation or other evidence that supports his claims, including any additional documents or other evidence that may become available after further investigation or discovery.

Dated: April 11, 2023

Respectfully submitted,

**MCDOWELL HETHERINGTON LLP**

By: */s/ Avi Moshenberg*
Avi Moshenberg
Texas Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, Texas 77002
D: 713-337-5580
F: 713-337-8850
E: Avi.Moshenberg@mhllp.com

*Counsel for Leonard Pozner*

-and-

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY, PC

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
Tara T. LeDay
Texas Bar No. 24106701
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com
E: tara.leday@chamberlainlaw.com

**Bankruptcy Counsel for Leonard Pozner**

-and -

**WILLKIE FARR & GALLAGHER LLP**

By: */s/ Jennifer J. Hardy*
Jennifer J. Hardy
State Bar No. 24096068
600 Travis Street
Houston, Texas 77002
Telephone: 713-510-1700
Fax: 713-510-1799
jhardy2@willkie.com

-and-

Rachel C. Strickland (admitted *pro hac vice*)
Stuart R. Lombardi (admitted *pro hac vice*)
Ciara A. Sisco (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: 212-728-8000
Fax: 212-728-8111
rstrickland@willkie.com
slombardi@willkie.com
csisco@willkie.com

# **EXHIBIT 1**

7/31/2018 4:45 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001842
Nancy Ramirez

CAUSE NO. D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
|    *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 345th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
|    *Defendants* | § | |

## PLAINTIFFS' FIRST AMENDED PETITION

Plaintiffs LEONARD POZNER and VERONIQUE DE LA ROSA file this First Amended Petition against Defendants, ALEX JONES, INFOWARS, LLC, and FREE SPEECH SYSTEMS, LLC, allege as follows:

### DISCOVERY CONTROL PLAN

1.      Plaintiffs intend to seek a customized discovery control plan under Level 3 of Texas Rule of Civil Procedure 190.4.

### PARTIES

2.      Plaintiff Leonard Pozner is an individual residing in the State of Florida.

3.      Plaintiff Veronique De La Rosa (formerly Veronique Pozner) is an individual residing in the State of Florida.

4.      Defendant Alex E. Jones is a resident of Austin, Texas. He is the host of radio and web-based news programing, including "The Alex Jones Show," and he

owns and operates the website InfoWars.com. Mr. Jones has been served and has answered.

5.     Defendant InfoWars, LLC is a Texas limited liability company with principal offices located in Austin, Texas. It has been served and has answered.

6.     Defendant Free Speech Systems, LLC is a Texas limited liability company with principal offices located in Austin, Texas. It has been served and has answered.

## JURISDICTION & VENUE

7.     The damages sought in this case exceed the minimum jurisdictional limits of Travis County District Courts.

8.     Venue is proper in Travis County, Texas, because a suit for damages for defamation may be brought in the county in which a defendant resided at the time of filing, or the domicile of any corporate defendant, at the election of the plaintiff. *See* Tex. Civ. Prac. & Rem. Code §15.017.

## FACTUAL BACKGROUND

9.     Plaintiffs are the parents of deceased minor N.P., a victim of the December 14, 2012 Sandy Hook Elementary School Shooting.

10.    This case arises out of accusations made by InfoWars in 2017, including the false claim that Plaintiff Veronique De La Rosa was an actor in a faked interview with CNN's Anderson Cooper used to cover up the "truth" about Sandy

1480

Hook, as well as other statements meant to support the underlying accusation that the Sandy Hook parents are liars and frauds.

11. This conspiracy theory, which has been pushed by InfoWars and Mr. Jones since the day of the shooting, alleges that the Sandy Hook massacre did not happen, or that it was staged by the government and concealed using actors, and that the parents of the victims are participants in a horrifying cover-up.

12. On April 22, 2017, Mr. Jones broadcast a video entitled "Sandy Hook Vampires Exposed."[1] The information presented was not new. It contained a continuation and elaboration of the same stale attacks Mr. Jones has made about the honesty and identity of the Sandy Hook parents for years.

13. During the April 22, 2017 broadcast, Mr. Jones discussed a CNN interview with Plaintiff Veronique De La Rosa and Anderson Cooper, stating: "So here are these holier than thou people, when we question CNN, who is supposedly at the site of Sandy Hook, and they got in one shot leaves blowing, and the flowers that are around it, and you see the leaves blowing, and they go [gestures]. They glitch. They're recycling a green-screen behind them."[2] The gist of this statement by Mr. Jones is that Mrs. De La Rosa's interview was faked and did not occur at the Edmond Town Hall in Newtown.

14. In the April 22, 2017 broadcast, Mr. Jones next showed video footage of Plaintiff Veronique De La Rosa speaking with Anderson Cooper in her interview.

---

[1] https://www.youtube.com/watch?v=rUn1jKhWTXI
[2] *Id.*

1481

Over this footage, Mr. Jones stated: "And then we've got Anderson Cooper, famously, not just with the flowers blowing and a fake, but when he turns, his nose disappears repeatedly because the green-screen isn't set right. And they don't like to do live feeds because somebody might run up. CNN did that in the Gulf War and admitted it. They just got caught two weeks ago doing it in supposedly Syria. And all we're saying is, if these are known liars that lied about WMDs, and lied to get us in all these wars, and backed the Arab Spring, and Libya, and Syria, and Egypt, and everywhere else to overthrow governments, and put in radical Islamicists (sic), if they do that and have blood on their hands, and lied about the Iraq War, and were for the sanctions that killed half a million kids, and let the Islamicists (sic) attack Serbia, and lied about Serbia launching the attack, when it all came out later that Serbia didn't do it, *how could you believe any of it if you have a memory?* If you're not Dory from 'Finding Dory,' you know, the Disney movie. Thank god you're so stupid, thank god you have no memory. It all goes back to that."[3]

15.     Based on the video footage of the Anderson Cooper interview with Mrs. De La Rosa, Mr. Jones sought to convince his audience that they should not "believe any of it."[4] As will be discussed more fully below, Mr. Jones' allegation regarding Mrs. De La Rosa's participation in a "faked interview" is a central pillar of his years-long assertion that the Sandy Hook tragedy was faked and that the parents are participants in a cover-up.

---

[3] *Id.*
[4] *Id.*

16.     Mr. Jones' assertion that Plaintiff Veronique De La Rosa participated in a faked blue-screen interview from a remote location is manifestly false. Mr. Jones' assertion that the interview did not take place in front of the Edmond Town Hall is also manifestly false. The visual effect described by Mr. Jones is the result of motion compensation video compression, which would have been readily ascertainable at the time Mr. Jones made his claims.[5] Nonetheless, after five years, Mr. Jones continues to push this sick lie about Mrs. De La Rosa and her interview.

17.     On the April 22, 2017 broadcast, Mr. Jones and an InfoWars producer also repeated other statements consistent with their years-long campaign to convince their audience that Sandy Hook was faked and that the parents are lying. An InfoWars producer stated: "They come out first day, have the wrong name of the supposed shooter. They have his older brother. And they've got guns that they're calling out, and then they're pulling guns out of cars, they're finding people in the back woods who are dressed up in SWAT gear."[6]

18.     Mr. Jones responded to the producer's comments by stating: "And that's on helicopter footage, and then they say it never existed, and later admit it does, and the school was closed until that year, in the videos it's all rotting and falling apart and nobody is even in it, and the kids are going in circles, in and out of

---

[5] *See, e.g.,* https://www.metabunk.org/debunked-sandy-hook-anderson-cooper-green-screen-disappearing-nose-with-pozner.t1148/
[6] https://www.youtube.com/watch?v=rUn1jKhWTXI

1483

the building with their hands up, and they never called rescue choppers. I mean, exactly."[7]

19.     The InfoWars producer responded to Mr. Jones by stating: "There's some supposed dash footage where the people are smiling and getting their lunches ready, police officers. You think you're going to have smiling police officers at a time when they're supposedly bringing out twenty dead kids? And they're smiling and getting their lunches ready."[8]

20.     Mr. Jones responded to the producer by stating: "And they had Port-A-Potties being delivered an hour after it happened, for the big media event."[9]

21.     The InfoWars producer responded to Mr. Jones by stating: "We've never seen, there was never been any even blurred photos of any bodies or anything…We didn't even get blurred images with the dead kids in Syria. We got crisp photos."[10]

22.     In totality, the gist of the false comments in this one-hour broadcast on April 22, 2017 is that the Sandy Hook shooting was faked or staged, and that Plaintiffs Veronique De La Rosa and Leonard Pozner are "Sandy Hook Vampires" engaged in a cover-up.[11] Persons familiar with the Plaintiffs would have understood and inferred Mr. Jones to be making an allegation that Mrs. De La Rosa's interview

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

1484

was fake and that the Plaintiffs are lying about the circumstances of Sandy Hook and the death of their son.

23.     On April 28, 2017, Mr. Jones held a press conference in which he was asked if he believes that Sandy Hook was a "false flag." Mr. Jones stated: "I think we should investigate everything because the government has staged so much stuff, and then they lie and say that I said the whole thing was totally fake when I was playing Devil's Advocate in a debate. I said maybe the whole thing is real, maybe the whole thing is fake. They were using blue-screens out there...Yes, governments stage things."[12] Mr. Jones was again asserting that Plaintiff Veronique De La Rosa participated in a fake blue-screen interview, and that this interview was part of a massive criminal conspiracy orchestrated by government forces. Both assertions are manifestly false.

24.     On June 13, 2017, Mr. Jones posted a video to the InfoWars Facebook page in which he once again promoted his defamatory lie about Mrs. De La Rosa's interview on CNN. Mr. Jones stated: "But there's been a cover-up. Anderson Cooper got caught, faking where his location was with blue-screen. I mean, it's all there."[13]

25.     On June 18, 2017, Megan Kelly aired her interview with Mr. Jones, during which he stated: "I do think there's some cover-up and some manipulation."[14] The following exchange took place:

---

[12] https://www.youtube.com/watch?v=StOyqyt0fkY
[13] https://www.facebook.com/80256732576/videos/10155465593882577/
[14] https://realclearpolitics.com/video/2017/06/18/full_video_megyn_kelly_interviews_alex_jones.html

> MEGYN KELLY: But Alex, the parents, one after the other, devastated. The dead bodies that the coroner autopsied ...
>
> ALEX JONES: And they blocked all that. And they won't release any of it. That's unprecedented.[15]

26.     Jones and Kelly then had the following exchange:

> JONES: But then what do you do, when they've got the kids going in circles, in and out of the building with their hands up? I've watched the footage. And it looks like a drill.
>
> MEGYN KELLY: When you say, "parents faked their children's death," people get very angry.
>
> ALEX JONES: Yeah, well, that's - oh, I know. But they don't get angry about the half million dead Iraqis from the sanctions. Or they don't get angry about all the illegals pouring in.[16]

27.     During the June 18, 2017 profile of Jones for her NBC show *Sunday Night with Megyn Kelly*, Ms. Kelly interviewed fellow Sandy Hook parent Neil Heslin about the claims made by Jones, including that "the whole thing was fake" and "a giant hoax."[17] Addressing this hateful lie, Mr. Heslin told Kelly, "I lost my son. I buried my son. I held my son with a bullet hole through his head."[18]

28.     On June 26, 2017, InfoWars' broadcast featured a segment hosted by reporter Owen Shroyer in which Shroyer claimed to have reviewed evidence showing it was impossible for Mr. Heslin to have held his son and see his injury. This

---

[15] *Id.*
[16] *Id.*
[17] https://realclearpolitics.com/video/2017/06/18/full_video_megyn_kelly_interviews_alex_jones.html
[18] *Id.*

1486

broadcast was meant to reinforce and support the underlying lie that the Sandy Hook parents are fakes.

29.     During the broadcast, Shroyer said, "The statement [Mr. Heslin] made, fact-checkers on this have said cannot be accurate. He's claiming that he held his son and saw the bullet hole in his head. That is his claim. Now, according to a timeline of events and a coroner's testimony, that is not possible."[19]

30.     As support for these statements, Shroyer played video footage where the local medical examiner informed reporters that the slain students were initially identified using photographs rather than in person. However, the Sandy Hook parents were permitted to see and hold their children soon thereafter.

31.     Shroyer stated, "You would remember if you held your dead kid in your hands with a bullet hole. That's not something you would just misspeak on."[20]

32.     Stroyer continued by stating that Mr. Heslin was "making a pretty extreme claim that would be a very thing vivid in your memory, holding his dead child."[21]

33.     Shroyer then stated: "The conspiracy theorists on the internet out there have a lot of questions that are yet to be answered. You say whatever you want about the event, that's just a fact."[22]

---

[19] https://www.infowars.com/zero-hedge-discovers-anomaly-in-alex-jones-hit-piece/
[20] *Id.*
[21] *Id.*
[22] *Id.*

34.     At the conclusion of his report, Shroyer stated, "Will there be a clarification from Heslin or Megyn Kelly? I wouldn't hold your breath. [Laugh]. So now they're fueling the conspiracy theory claims. Unbelievable."[23]

35.     The underlying point or gist of Shroyer's report is that Mr. Heslin was lying about the circumstances of his son's tragic death because it didn't happen. While not directly mentioning the Plaintiffs, Mr. Shroyer's statements are further evidence of InfoWars' continuing malicious intent to convince the public that the Sandy Hook parents are lying, and that their participation in media interviews, such as Plaintiff Veronique De La Rosa's interview with Anderson Cooper, are faked acts of manipulation to cover up a horrible secret truth.

## BACKGROUND TO INFOWARS' 2017 DEFAMATORY STATEMENTS

36.     In order to fully appreciate the defamatory impact and the extent of the mental anguish caused by InfoWars' 2017 statements, it is necessary to understand InfoWars' long history of harassing the Sandy Hook parents with defamatory lies. Mr. Jones' 2017 statements are but the latest in a series of false, cruel, and dangerous assertions about the Plaintiffs and the parents of the other victims.

37.     In 2013, Jones called the shooting "staged" and said, "It's got inside job written all over it."[24]

---

[23] *Id.*
[24] https://www.mediamatters.org/blog/2013/04/15/alex-jones-on-boston-blasts-us-govt-is-prime-su/193635; https://www.mediamatters.org/embed/clips/2016/11/29/51289/gcn-alexjones-20130409-sandyhook

1488

38.     In March 2014, Mr. Jones repeated his allegations regarding a "faked" interview between Plaintiff Veronique De La Rosa and Anderson Cooper. This allegation about a "blue-screen" became a central pillar of his assertion that the incident was faked and manipulated by the government through the use of so-called crisis actors. Mr. Jones said on broadcast: "Folks, we've got video of Anderson Cooper with clear blue-screen out there. [Shaking head]. He's not there in the town square. We got people clearly coming up and laughing and then doing the fake crying. We've clearly got people where it's actors playing different parts for different people, the building bulldozed, covering up everything. Adam Lanza trying to get guns five times we're told. The witnesses not saying it was him…I've looked at it and undoubtedly, there's a cover-up, there's actors, they're manipulating, they've been caught lying, and they were pre-planning before it and rolled out with it."[25]

39.     In May 2014, InfoWars published an article titled: "CONNECTICUT TRIES TO HIDE SANDY HOOK TRUTH."[26]

40.     In September 2014, InfoWars published an article titled: "FBI SAYS NO ONE KILLED AT SANDY HOOK."[27]

41.     In December 2014, Jones said on his radio program: "The whole thing is a giant hoax. How do you deal with a total hoax? It took me about a year, with

---

[25] https://www.mediamatters.org/embed/clips/2016/11/29/51283/gcn-alexjones-20140314-shooting
[26] https://www.infowars.com/connecticut-tries-to-hide-sandy-hook-truth/
[27] https://www.infowars.com/fbi-says-no-one-killed-at-sandy-hook/

1489

Sandy Hook, to come to grips with the fact that the whole thing was fake. I did deep research."[28]

42.     In the same December 2014 broadcast, Jones continued: "The general public doesn't know the school was actually closed the year before. They don't know they've sealed it all, demolished the building. They don't know that they had the kids going in circles in and out of the building as a photo-op. Blue-screen, green-screens, they got caught using."[29]

43.     Jones made similar comments in January 2015, stating on InfoWars: "You learn the school had been closed and re-opened. And you've got video of the kids going in circles, in and out of the building, and they don't call the rescue choppers for two hours, and then they tear the building down, and seal it. And they get caught using blue-screens, and an email by Bloomberg comes out in a lawsuit, where he's telling his people get ready in the next 24 hours to capitalize on a shooting. Yeah, so Sandy Hook is a synthetic, completely fake with actors, in my view, manufactured. I couldn't believe it at first. I knew they had actors there, clearly, but I thought they killed some real kids. And it just shows how bold they are that they clearly used actors. I mean they even ended up using photos of kids killed in mass shootings here in a fake mass shooting in Turkey, or Pakistan. The sky is now the limit."[30]

---

[28] https://realclearpolitics.com/video/2017/06/18/full_video_megyn_kelly_interviews_alex_jones.html
[29] https://www.mediamatters.org/embed/clips/2016/11/29/51292/gcn-alexjones-20141228-sandyhook
[30] https://www.mediamatters.org/embed/clips/2016/11/29/51290/gcn-alexjones-20150113-shooting

1490

44.     Mr. Jones' statement about Pakistan refers to a conspiracy theory Jones helped spread involving Plaintiffs' deceased minor child N.P., whose photograph appeared at vigil for children slain a school attack in Peshawar. On the day of the Peshawar incident, a Pakistani woman created a collage of photographs of young people killed in school attacks and posted it to Facebook with the caption "They Went to School and Never Came Back."[31] Because the Peshawar shooting occurred very close to the anniversary of the Sandy Hook massacre, she included a picture of a child from the latter event, along with pictures of Peshawar victims.[32] That collage was then printed out and cut up into the individual photographs displayed by mourners at a vigil for the Peshawar victims.[33]

45.     In January 2015, InfoWars published an article about this event titled: "MYSTERY: SANDY HOOK VICTIM DIES (AGAIN) IN PAKISTAN."[34] The article states: "A large-scale attack on a school in Peshawar, Pakistan, last month left 132 school children and 10 teachers dead. Among the alleged victims emerged the familiar face of [N.P.], one of the children supposedly killed in the December 2012 Sandy Hook school shooting in Newtown, Connecticut."[35] InfoWars' story was meant to reinforce Mr. Jones' persistent lie that N.P. and the other victims of the shooting are not real.

46.     In July 2015, Mr. Jones again emphasized Plaintiff Veronique De La Rosa's interview with Anderson Cooper as evidence of the hoax, stating on his

---

[31] https://www.snopes.com/fact-check/info-boors/
[32] *Id.*
[33] *Id.*
[34] https://www.infowars.com/mystery-sandy-hook-victim-dies-again-in-pakistan/
[35] *Id.*

1491

broadcast: "But you've got green-screen with Anderson Cooper, where I was watching the video, and the flower and plants were blowing in some of them, and then they blow again the same way. It's looped. And then his nose disappears. I mean, it's fake. The whole thing is...I don't know what happened. It's kind of like if you see a hologram at Disney World in the Haunted House. You know? I don't know how they do it, but it's not real. When you take your kids to see the Haunted House and ghosts are flying around, it's not real, folks. It's staged. I mean, a magician grabs a rabbit out of his hat. I know he's got a box under the table that he reaches in and gets the rabbit. I don't know what the trick is here. I've got a good suspicion. But when you've got Wolfgang Halbig...He believed it was real. People called him. He went and investigated. No paperwork, no nothing. It's bull. And now an FBI retired agent, who retired, you know, with decorations. I mean, [InfoWars reporter Rob] Dew, this unprecedented."[36]

47.     In that same month, InfoWars published an article titled: "MEGA MASSIVE COVER UP: RETIRED FBI AGENT INVESTIGATES SANDY HOOK."[37]

48.     In January of 2016, Florida resident Lucy Richards left menacing voicemail messages and sent violent online threats to Plaintiff Leonard Pozner, including messages stating: "you gonna die, death is coming to you real soon" and "LOOK BEHIND YOU IT IS DEATH."[38] When Richards was later sentenced, Senior U.S.

---

[36] https://www.mediamatters.org/embed/clips/2016/11/29/51284/gcn-alexjones-20150707-shooting
[37] https://www.infowars.com/mega-massive-cover-up-retired-fbi-agent-investigates-sandy-hook/
[38] https://www.nbcnews.com/news/us-news/conspiracy-theorist-arrested-death-threats-against-sandy-hook-parent-n693396

1492

District Judge James Cohn stated: "I'm sure [Plaintiff Leonard Pozner] wishes this was false, and he could embrace [N.P.], hear [N.P.'s] heartbeat and hear [N.P.] say 'I love you, Dad'...Your words were cruel and insensitive. This is reality and there is no fiction. There are no alternative facts."[39] As part of her sentence, Ms. Richards will not be permitted to access a list of conspiracy-based websites upon her release, including InfoWars.[40] Ms. Richard's arrest and sentencing are an ominous reminder of the danger posed by Mr. Jones' continuing lies about the Plaintiffs' alleged role in faking Sandy Hook.

49. In November of 2016, Mr. Jones appeared on InfoWars and again ranted about false Sandy Hook claims for twenty minutes.[41]

50. During the November 2016 video broadcast, Mr. Jones again returned to the subject of Plaintiff Veronique De La Rosa's interview with Anderson Cooper, stating: "That shows some kind of cover-up happening. And then I saw Anderson Cooper -- I've been in TV for twenty-something years, I know a blue-screen or a green-screen – turn and his nose disappeared. Then I saw clearly that they were using footage on the green-screen looped, because it would show flowers and other things during other broadcasts that were moving, and then basically cutting to the

---

[39] http://www.nydailynews.com/news/crime/judge-hands-sandy-hook-truther-prison-sentence-article-1.3229754
[40] https://www.buzzfeed.com/claudiakoerner/a-conspiracy-theorist-will-serve-time-for-threatening-a
[41] https://www.youtube.com/watch?v=MwudDfz1yAk

1493

same piece of footage...Then we see footage of one of the reported fathers of the victims, Robbie Parker, doing classic acting training."[42]

51.     The gist of these statements was that the Sandy Hook plaintiffs, including Plaintiffs Veronique De La Rosa and Leonard Pozner, are participating in a sinister manipulation plan to fool the public.

52.     During the November 2016 broadcast, Jones again played video footage of Anderson Cooper interviewing Plaintiff Veronique De La Rosa, at which point Jones stated: "We point out clear chromakey, also known as blue-screen or green-screen being used, and we're demonized. We point out that they're clearly doing fake interviews."[43] Despite his protestations, Mr. Jones is quite aware that he has been using Veronique De La Rosa's interview to spread his lie about the Sandy Hook parents. Mr. Jones knows Veronique De La Rosa did not participate in a faked interview from a remote location. Mr. Jones knows that there was no blue-screen, and that Veronique De La Rosa and Anderson Cooper were standing in front of the Edmond Town Hall in Newtown. He does not care. He lies anyway.

53.     Towards the end of the November 2016 broadcast, Mr. Jones stated: "Why should anybody fear an investigation? If they have nothing to hide? In fact, isn't that in Shakespeare's Hamlet? Methinks you protest too much...This particular case, they are so scared of investigation. Everything they do ends up blowing up in

---

[42] *Id.*
[43] *Id.*

1494

their face. So you guys are going to get what you want now. I'm going to start re-investigating Sandy Hook and everything else that happened with it."[44]

54.     Mr. Jones concluded the video by stating: "So, if children were lost at Sandy Hook, my heart goes out to each and every one of those parents. And the people who say they're parents that I see on the news. The only problem is, I've watched a lot of soap operas. And I've seen actors before. And I know when I'm watching a movie and when I'm watching something real."[45]

55.     The November 2016 video broadcast was entitled, "Alex Jones Final Statement on Sandy Hook." It was Plaintiffs' hope that the title was accurate, and that Mr. Jones would finally end his reckless attacks on the Sandy Hook parents and his assertions that they were liars and actors engaged in a fraud on the American people.

56.     As horrifying as the November 2016 broadcast was, its promise of being the "Final Statement" gave hope to the Plaintiffs that their harassment and defamation by Jones might be coming to an end after four long years.

57.     Those hopes were soon dashed. Instead, Mr. Jones and InfoWars made continuing defamatory comments in 2017 as outlined above. These comments in 2017 repeated the claims which form the rickety structure of Mr. Jones' colossal lie about Sandy Hook, including the allegation that Plaintiff Veronique De La Rosa

---

[44] *Id.*
[45] *Id.*

conducted a fake interview with Anderson Cooper to hide the truth, while telling his viewers not to "believe any of it."[46]

58.     As such, the comments made by InfoWars in 2017 did not occur in isolation. Rather, the statements were a continuation and elaboration of a years-long campaign to falsely attack the honesty of the Sandy Hook parents, casting them as participants in a ghastly conspiracy and cover-up.

59.     By making renewed accusations about the Plaintiffs in 2017, InfoWars breathed new life into this conspiracy and caused intense emotional anguish and despair. For that reason, Plaintiffs bring this suit against Defendants.

**CAUSE OF ACTION**

**I.      Defamation and Defamation *Per Se***

60.     All previous allegations are incorporated by reference.

61.     Plaintiffs are private individuals and are neither public officials nor public figures.

62.     Defendants' April 22, 2017, April 28, 2017, and June 13, 2017 broadcasts described above were false, both in their particular facts and in the main point, essence, or gist in the context in which they were made.

63.     The April 22, 2017, April 28, 2017, and June 13, 2017 broadcasts, while defamatory in their own right, were also continuations and elaborations of an underlying defamatory assertion which Defendants have advanced since 2013,

---

[46] https://www.youtube.com/watch?v=rUn1jKhWTXI

1496

namely that the Plaintiffs have lied to the American people about the death of their son and have participated in a horrifying criminal cover-up.

64.    In viewing the April 22, 2017, April 28, 2017, and June 13, 2017 broadcasts, a reasonable member of the public would be justified in inferring that the publications implicated the Plaintiffs.

65.    In viewing the April 22, 2017, April 28, 2017, and June 13, 2017 broadcasts, individuals who know and were acquainted with the Plaintiffs would understand from viewing the broadcasts that the allegedly defamatory matter implicated the Plaintiffs.

66.    Defendants statements in 2017 were also defamatory because they are reasonably susceptible to a defamatory meaning by innuendo. A reasonable person, reviewing the statements in question, could conclude the Plaintiffs were being accused of engaging in fraudulent or illegal activity. In context, the gist of the statements could be construed as defamatory to the Plaintiffs by an average member of general public.

67.    Though he was not named or depicted by image, Defendants' broadcasts in 2017 were defamatory to Plaintiff Leonard Pozner because a reasonable person, reviewing the broadcasts in question, could conclude that Mr. Pozner was likewise being accused of engaging in fraudulent or illegal activity, whether directly or through innuendo. Individuals who know and were acquainted

with the Plaintiffs would understand from viewing the broadcasts that the allegedly defamatory matter implicated Leonard Pozner as well.

68.    Defendants' defamatory publications were designed to harm the Plaintiffs' reputation and subject the Plaintiffs to public contempt, disgrace, ridicule, or attack.

69.    Defendants acted with actual malice. Defendants' defamatory statements were knowingly false or made with reckless disregard for the truth or falsity of the statements at the time the statements were made.

70.    Defendants' defamatory publications were not privileged.

71.    Defendants' defamatory statements constitute defamation *per se*. The harmful nature of the defamatory statements is self-evident. The defamatory statements implicate the Plaintiffs in heinous criminal conduct. False implications of criminal conduct are the classic example of defamation *per se*.

72.    Defendants publicly disseminated the defamatory publications to an enormous audience causing significant damages to the Plaintiffs.

73.    Defendants' defamatory publications have injured the Plaintiffs' reputation and image, and they have exposed the Plaintiffs to public and private hatred, contempt, and ridicule.

74.    In light of their prior experience with these kind of reckless statements, Defendants knew that their publication could cause the Plaintiffs to suffer harassment and potential violence.

20

75.     Defendants' defamatory publications have and will continue to cause harm to the Plaintiffs. Due to Defendants' conduct, the Plaintiffs have suffered and continue to suffer substantial damages in an amount to be proven at trial.

## II.     Conspiracy

76.     All previous allegations are incorporated by reference.

77.     Defendants acted together, as a cabal, to accomplish their campaign of defamation. Defendants had a meeting of the minds on the object or course of action underlying their pattern of recklessly defamatory broadcasts.

78.     As a result of this meeting of the minds, Defendants collectively committed the unlawful overt acts detailed above.

79.     Defendants are jointly and severally liable for the injuries Plaintiffs suffered due to Defendants' wrongful actions.

## III.     Respondeat Superior

80.     All previous allegations are incorporated by reference.

81.     When InfoWars employees acted in the manner described in this Petition, they did so as agents of InfoWars and within the scope of their authority from Mr. Jones.

82.     InfoWars and Alex Jones are liable for the damages proximately caused by the conduct of employees and agents pursuant to the doctrine of *respondeat superior*.

## IV. Intentional Infliction of Emotional Distress

83.     All previous allegations are incorporated by reference.

84.     Defendants knew or should have known that their broadcasts on November 18, 2016, March 8, 2017, April 22, 2017, June 13, 2017, June 19, 2017, June 26, 2017, and October 26, 2017 would cause Plaintiffs severe emotional distress and cause them to be the subject of harassment, ridicule, and threats to their safety.

85.     Defendants made the statements in these broadcasts in bad faith and with malicious motives, knowing the statements were false or in reckless disregard for the truth.

86.     Severe emotional distress was the primary risk created by Defendants' reckless conduct.

87.     In addition, Defendants have been acting in a continuing course of conduct against Plaintiffs since at least January 27, 2013, when Mr. Jones first made allegations about Mrs. De La Rosa's interview. Since that time, Defendants have been engaged in a non-stop campaign of cruel and dishonest harassment.

88.     Defendants' latest malicious statements were part of a continuous pattern of five years of intentional and reckless harassment accomplished through dozens of disturbing video broadcasts, a relentless stream of recklessly false articles published on InfoWars.com, harassing social media content, as well as the encouragement, aid, and financial support to third-parties in furthering this

1500

harassment. The cumulative quality and quantity of the harassment has been extreme and has shocked the nation.

89. In the course of their harassment, Defendants broadcast the private personal details and addresses of Plaintiff Leonard Pozner in an act of personal retaliation, knowing the danger it would pose to his family's safety.

90. Defendants' conduct, as a whole, was outrageous and intolerable, going beyond all possible bounds of decency.

91. Defendants' five-year campaign of willful and malicious harassment was utterly intolerable in a civilized community.

92. No reasonable person could be expected to endure the emotional distress inflicted upon Plaintiffs.

93. Defendants' actions were not conducted in a public space. Rather, Defendants' actions were conducted on its own private property for the purpose of profit.

## DAMAGES

94. Plaintiffs have suffered general and special damages, including a severe degree of mental stress and anguish which have disrupted their daily routine and caused a high degree of psychological pain.

95. Plaintiffs have also suffered damage to their reputation and image, both up to the present and into the future.

1501

96.     Because Defendants' conduct amounts to defamation *per se*, Plaintiffs are also entitled to an award of presumed damages.

97.     Plaintiffs are also entitled to an award of nominal damages and a judgment clearing their names.

98.     Plaintiffs are also entitled to exemplary damages because the Defendants acted with malice.

99.     Plaintiffs are also entitled to pre-judgment and post-judgment interest, costs of court, and attorney's fees.

100.    Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiffs are seeking relief in excess of $1,000,000.

## JURY DEMAND

101.    Plaintiff demands a jury trial and has tendered the appropriate fee.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs Leonard Pozner and Veronique De La Rosa ask that the Court issue citation for each Defendant to appear and answer, and that Plaintiffs be awarded all the damages set forth above, and to grant whatever further relief to which Plaintiffs are justly entitled.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON

24

State Bar No. 24071066
KYLE W. FARRAR
State Bar No. 24034828
WILLIAM R. OGDEN
State Bar No. 24073531
1010 Lamar, Suite 1600
Houston, Texas 77002
713.221.8300 Telephone
713.221.8301 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2018 the forgoing document was served upon the following in accordance to Rule 21 of the Texas Rules of Civil Procedure:

### *Via E-Sevice: fly63rc@verizon.net*

Mark C. Enoch
Glast, Phillips & Murray, P.C.
14801 Quorum Drive, Ste. 500
Dallas, Texas 75254

1503

# **EXHIBIT 2**

Filed in The District Court
of Travis County, Texas

AR   OCT 15 2021
At     3:30      P.M.
Velva L. Price, District Clerk

### D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | 459th DISTRICT COURT |

## AMENDED ORDER ON PLAINTIFFS' MOTION TO COMPEL
## AND MOTION FOR SANCTIONS

On this day, the Court considered Plaintiffs' Motion to Compel and Motion for Sanctions. The Court finds that the motions should be granted.

### BACKGROUND

On May 29, 2018, Plaintiffs served written discovery on Defendant Free Speech Systems, LLC. Twenty-eight days after service of the requests, Defendants filed a TCPA Motion, which was subsequently denied and appealed. Following remand, Defendants failed to provide responses.

One month after remand, on July 2, 2021, Plaintiffs wrote to the Defendants inquiring about the overdue responses. Plaintiffs offered an additional 14 days for Defendants to provide responses, in which case Plaintiffs agreed to waive any complaint about their timeliness. That same day, Defendants' counsel requested that Plaintiffs' counsel provide a copy of the *Pozner* discovery requests. More than three

weeks later, on July 27, 2021, with no responses provided, Plaintiffs brought the instant motion.

On August 30, 2021, the day prior to the scheduled hearing, Defendants filed a Response assuring the Court that discovery would be provided, and they asked for 14 days before determining if sanctions were warranted. The following day at oral hearing, Defendants repeated this assurance. Three weeks later, on September 23, 2021, Plaintiffs' counsel notified the Court that no discovery responses had been provided.

## FINDINGS

The Court find that Defendants unreasonably and vexatiously failed to comply with their discovery duties. The Court finds that Defendants' failure to comply with discovery in this case is greatly aggravated by Defendants' consistent pattern of discovery abuse throughout the other similar cases pending before this Court. Prior to this latest discovery failure, Defendants repeatedly violated this Court's discovery orders in *Lewis v. Jones, et al.* (D-1-GN-18-006623), *Heslin v. Jones, et al.* (D-1-GN-18-001835), and *Heslin v. Jones, et al.*[1] (D-1-GN-18-004651), all of which are related cases involving Defendants' publications about the Sandy Hook Elementary School shooting. Defendants also failed to timely answer discovery in *Fontaine v. InfoWars, LLC, et al.* (D-1-GN-18-1605), a similar defamation lawsuit involving Defendants' publications about the Stoneman Douglas High School shooting. The Court also notes

---

[1] Subsequently consolidated with D-1-GN-18-001835.

that Defendants have repeatedly violated discovery orders in *Lafferty v. Jones,* a similar defamation lawsuit brought by a different set of Sandy Hook parents in the Superior Court of Connecticut. The Court finds that Defendants' discovery conduct in this case is the result of flagrant bad faith and callous disregard for the responsibilities of discovery under the rules.

It is clear to the Court that discovery misconduct is properly attributable to the client and not the attorney, especially since Defendants have been represented by seven attorneys over the course of the suit. Regardless of the attorney, Defendants' discovery abuse remained consistent.

For these reasons, it is accordingly ORDERED that sanctions be assessed Defendants, including the following remedies allowed under Rule 215:

( )    an order disallowing any further discovery of any kind by the Defendants.

( )    an order charging all of the expenses of discovery or taxable court costs against the Defendants;

( )    an order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order; to wit,

_____

_____

_____.

( ) an order refusing to allow the Defendants to support or oppose designated claims or defenses, or prohibiting them from introducing designated matters in evidence.

( **X** ) a judgment by default against the Defendants, as this Court has considered lesser sanctions and determined they would be inadequate to cure the violation in light of the history of Defendants' conduct in this Court. In reaching its decision, this Court has considered lesser remedies before imposing sanctions that preclude Defendants' ability to present the merits of their liability defense. However, the Court has more than a sufficient record to conclude that an escalating series of judicial admonishments, monetary penalties, and non-dispositive sanctions have all been ineffective at deterring the abuse. This Court rejects lesser sanctions because they have proven ineffective when previously ordered. They would also benefit Defendants and increase the costs to Plaintiffs, and they would not adequately serve to correct the Defendants' persistent discovery abuses. Furthermore, in considering whether lesser remedies would be effective, this Court has also considered Defendants' general bad faith approach to litigation, Mr. Jones' public threats, and Mr. Jones' professed belief that these proceedings are "show trials."

It is further ORDERED that Defendants shall pay reasonable attorney's fees in connection with Plaintiffs' Motion, which are being awarded by separate order.

Dated *October 13*, 2021.

Hon. Maya Guerra Gamble