# EXHIBIT 45

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00008-CV

**Alex E. Jones; Infowars, LLC; and Free Speech Systems, LLC, Appellants**

v.

**Neil Heslin, Appellee**

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-004651, THE HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Alex E. Jones; Infowars, LLC; and Free Speech Systems, LLC, appeal from the district court's order denying their motion to dismiss under section 27.003 of the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code § 27.003.[1] We will affirm the district court's denial of the TCPA motion.

## BACKGROUND

Because the parties refer to earlier opinions of this Court that address what they describe as related matters, we begin with a brief overview of those cases. Appellants in this case are among a group of defendants that have been sued by parents of victims of the December

---

[1] The TCPA was amended in the 2019 legislative session, but those amendments do not apply to this lawsuit, which was filed before the amendments' effective date. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11, 12, 2019 Tex. Gen. Laws 684, 687 (amendments to TCPA apply "only to an action filed on or after" September 1, 2019).

2012 shooting at Sandy Hook Elementary School in four cases (including this one) that have come before this Court on interlocutory appeal under the TCPA.  These cases are all based on statements in various broadcasts that dispute the authenticity of the shooting and ensuing news coverage at Sandy Hook.  *See Jones v. Heslin*, No. 03-19-00811-CV, 2020 Tex. App. LEXIS 2441, at *1, *10-13 (Tex. App.—Austin March 25, 2020, pet. pending) (mem. op.) (noting Jones's statement that the shooting at Sandy Hook was "a giant hoax" in addition to appellants' statements disputing whether Heslin had in fact held his deceased son in his arms); *Jones v. Pozner*, No. 03-18-00603-CV, 2019 Tex. App. LEXIS 9641, at *10-17 (Tex. App.—Austin Nov. 5, 2019, pet. pending) (mem. op.) (quoting portions of broadcasts in which appellants dispute facts surrounding the Sandy Hook shooting and cast it as a "false flag"); *Jones v. Lewis*, No. 03-19-00423-CV, 2019 Tex. App. LEXIS 9016, at *9 (Tex. App.—Austin October 11, 2019, pet. filed) (mem. op.) (noting Jones's statement that the shooting at Sandy Hook was "as phony as a three-dollar bill" and other statements by appellants implying that victims' parents were not genuinely grieving the loss of their children).

The present appeal arises from the second lawsuit filed by Neil Heslin, whose son, Jesse, was killed in the Sandy Hook Elementary School shooting.  Heslin filed his first suit against Appellants in April 2018, asserting a claim for defamation and defamation per se in response to Appellants' broadcasts in June and July 2017 that disputed Heslin's statements that he held his deceased son in his arms.  Appellants moved to dismiss Heslin's defamation claims under the TCPA.  The district court ordered Appellants to respond to limited discovery, which Appellants did not do.  On October 2, 2018, Heslin filed a motion to compel seeking sanctions for Appellants' refusal to comply with the district court's order.  That same day, before the district court had ruled on Appellants' TCPA motion, Appellants filed a notice of appeal, which

2

stayed all proceedings in the district court. *See Jones v. Heslin*, 587 S.W.3d 134, 136-37 (Tex. App.—Austin 2019, no pet.) (dismissing appeal of TCPA ruling for want of jurisdiction where notice of appeal was filed before the district court ruled on the TCPA motion). On August 8, 2019, the day after this Court set the initial appeal for submission on the briefs and while the appeal remained pending, Heslin, who had amended his petition in the defamation suit to include a claim for intentional infliction of emotional distress (IIED), again amended his petition to drop the IIED claim from the defamation suit, and instead filed a separate lawsuit in the district court to assert a claim for IIED based on other statements Appellants made in several broadcasts.

This Court dismissed the initial appeal in the defamation suit in an opinion dated August 30, 2019. *See id.* After our opinion dismissing that appeal issued, the parties continued litigating the defamation and IIED suits separately. In September 2019, Appellants filed motions to dismiss Heslin's IIED claim under the TCPA and under Texas Rule of Civil Procedure 91a. On October 3, the district court held a hearing to resolve the pending TCPA motion in the defamation suit. At that hearing, counsel for Heslin explained that "once the TCPA process is done on both [the defamation claim and the IIED claim], they're obviously going to be consolidated together, and that's where we're headed now." One week after that hearing in the defamation suit, Appellants filed a motion to consolidate the defamation suit and the IIED suits. However, rather than setting that motion for a hearing, Appellants instead set a hearing on their motions to dismiss. The parties set a hearing on October 17, at which they agreed to argue Appellant's motions to dismiss and Heslin's motion for expedited discovery.

At the October 17 hearing, Appellants offered to stipulate to or concede facts pled by the parents in order to avoid responding to limited discovery under the TCPA, a tactic Appellants had also employed in two of the previous Sandy Hook TCPA appeals. *See Heslin*,

3

2020 Tex. App. LEXIS 2441, at *2-3 (affirming denial of TCPA motion to dismiss defamation claims where appellants, to avoid responding to discovery, stipulated that all of the factual allegations in Heslin's pleadings are true); *Lewis*, 2019 Tex. App. LEXIS 9016, at *2-5 (affirming denial of TCPA motion to dismiss Lewis's IIED claim based on broadcasts disputing whether the shooting that killed her son really occurred where appellants conceded, to avoid discovery, that the sole disputed issue was whether plaintiff had to be individually named in the broadcasts to maintain a claim for IIED). In this case, Appellants specifically offered, in lieu of responding to discovery, to stipulate that "all facts as pled in the petition for the sake of the TCPA motion are to be taken as true." Heslin, however, asked that he be allowed to pursue discovery based on his assertion that Appellants have not followed through on past agreements to limit the scope of cases. *See* Tex. Civ. Prac. & Rem. Code § 27.006(b) (allowing limited discovery relevant to the TCPA motion). The district court extended the hearing on the TCPA motion to dismiss and signed an order on October 18, 2019, granting Heslin's motion for expedited discovery. On the same day it granted Heslin's motion for expedited discovery in the IIED suit, the district court denied Appellant's TCPA motion to dismiss Heslin's defamation suit. Appellants filed a notice of appeal on November 7, 2019.

Heslin, unsatisfied with Appellants' responses to discovery in the IIED suit, filed a motion for sanctions that, together with its attachments, exceeded 600 pages. The motion listed examples of what Heslin alleges are discovery abuses in the previous Sandy Hook TCPA appeals before this Court as well as in litigation pending out of state. It highlighted concerns with Appellants' responses, which indicated that Appellants were unaware of the sources for information they presented in broadcasts. It expressed concern regarding Appellants' witness testifying that Appellants had deleted or not preserved evidence from their servers, which

4

Appellants opined should not be held against them because Heslin was free to subpoena third parties to attempt to get the same information. The motion also explained that Appellants presented Rob Dew as a corporate representative for Free Speech Systems to testify about (1) "Sourcing and research for the videos described in Plaintiff's petition" and (2) "Internal editorial discussions regarding Free Speech Systems' coverage of the Sandy Hook Elementary School shooting." It is undisputed that Dew was unprepared to testify and unable to meaningfully speak to these topics. In December 2019, the district court resumed the hearing on the TCPA motion to dismiss and also heard Heslin's motion for sanctions. The district court granted the motion for sanctions, ordering "that pursuant to Rule 215.2(b)(3), the matters regarding which the expedited discovery order dated October 18, 2019, was made (Plaintiff's burdens in responding to Defendants' TCPA Motion) shall be taken to be established in favor of Plaintiff for the purposes of the TCPA Motion." The order further specified that Appellants' failure to produce a corporate representative who was prepared to testify should be treated as contempt of court because Appellants' conduct violated a "clear and unmistakable" court order. In the same order, the district court denied the TCPA motion, explaining that it would have reached that result "even without taking Plaintiff's burdens in responding to Defendant's TCPA motion to be established in favor of Plaintiff pursuant to TRCP 215(b)(3)." In a companion order, the district court denied the Rule 91a motion to dismiss. Appellants filed a notice of appeal from the orders denying their dismissals, but the arguments in their brief relate solely to the denial of their TCPA motion to dismiss, and they do not make any arguments regarding the district court's ruling under Rule 91a. Appellants also do not challenge the district court's order as it relates to sanctions. Accordingly, we consider whether the district court erred in denying

Appellants' motion to dismiss under the TCPA and, if so, whether Appellants must be awarded attorney's fees.

Appellants assert the district court erred in denying their TCPA motion to dismiss because (1) the First Amendment to the United States Constitution bars Heslin's IIED claim because Appellants' statements did not "specifically identify" Heslin or his son, (2) Texas law requires that Heslin or his son be identified in Appellant's statements in order for Heslin to maintain an IIED claim, (3) Heslin's claim sounds in defamation rather than IIED, which is a limited, "gap-filler" tort, and (4) the statute of limitations bars Heslin's claim. Appellants further urge that the district court erred in denying them attorney's fees if any claims brought against them are dismissed.

## ANALYSIS

Generally, "[r]eviewing a TCPA motion to dismiss requires a three-step analysis." *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). As a threshold matter, the moving party must show by a preponderance of the evidence that the TCPA properly applies to the legal action against it. Tex. Civ. Prac. & Rem. Code § 27.005(b). If the moving party meets that burden, the nonmoving party must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). If the nonmoving party satisfies that requirement, the burden shifts back to the moving party to prove each essential element of any valid defense by a preponderance of the evidence. *Id.* § 27.005(d).

"In determining whether a legal action should be dismissed under [the TCPA], the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). We review de novo whether each party

6

carried its assigned burden. *Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.).

As to the first step of our TCPA analysis, Heslin does not dispute the applicability of the TCPA. As to the second step, Appellants do not—and cannot, in light of the district court's unchallenged sanctions order—dispute that Heslin has established a prima facie case for IIED. The sanctions order determined that Heslin has established his prima facie case for IIED. In conformity with their representations in the district court and with the sanctions order, Appellants emphasize in their brief and reply brief that they are "proceeding with their valid defenses under § 27.005(d)." We therefore assume the TCPA applies and that Heslin has met burden to establish a prima facie for his IIED claim, and we proceed to the third step of the TCPA analysis: whether Appellants proved each essential element of a valid defense by a preponderance of the evidence. Tex. Civ. Prac. & Rem. Code § 27.005(d). In this posture, we may consider Appellants' arguments solely as they relate to proving the elements of a valid defense.

**IIED as a "Gap-Filler" Tort**

We first address Appellants' third issue, which asserts that Heslin's claim sounds in defamation rather than IIED. The Texas Supreme Court has stated that "intentional infliction of emotional distress is a 'gap-filler' tort that should not be extended to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines." *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998). Its "purpose is to supplement existing forms of recovery by providing a cause of action for egregious conduct 'that its more established neighbors in tort doctrine would technically fence out.'" *Id.* (quoting

7

*Towards a Jurisprudence of Injury: The Continuing Creations of a System of Substantive Justice in American Law*, 5-11 (Report to the American Bar Association from the Special Committee on the Tort Liability System, 1984)). As such, IIED "has its own boundaries" and was "never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447-48 (Tex. 2004). This is true even though the other causes of actions or remedies "do not explicitly preempt the tort [of intentional infliction of emotional distress], [because] their availability leaves no gap to fill." *Creditwatch*, 157 S.W.3d at 816.

This Court has applied the Supreme Court's precedents in a TCPA case in which the plaintiff raised a defamation claim and IIED claim in the same petition. *See Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 814 (Tex. App.—Austin 2017), *aff'd*, No. 18-0068, 2020 Tex. LEXIS 397 (Tex. May 8, 2020) (holding that IIED claim could not proceed under TCPA because it was based on defamation claim). In analyzing whether those claims survived a TCPA motion to dismiss, this Court said:

> In this case, the facts that [plaintiff] bases this claim on are the same facts that he bases his defamation claim on. [Plaintiff] does not assert that there are any additional, unrelated facts in the record that support his claim for intentional infliction of emotional distress. For this reason, we conclude that [Plaintiff] did not establish a prima facie case of intentional infliction of emotional distress; therefore, the trial court erred by not dismissing this claim.

*Id.* at 814-15. Unlike the plaintiff in *Warner Brothers*, Heslin asserts that the facts that form the basis for his IIED claim differ from the facts that form the basis for his claim for defamation. He

8

urges that at least the two most recent broadcasts on which he bases his IIED claim cannot serve as the basis for his defamation claim because they occurred after the conduct that he alleges as the basis for Heslin's defamation claim.  None of the broadcasts asserted to form the basis of Heslin's IIED claim are in the record.  There is a partial transcript of the October 26, 2017 broadcast.  That October broadcast as well as the April 20, 2018 broadcast are partially described in Heslin's pleading and, to some extent, in Appellants' TCPA motion to dismiss.  Because we have an unchallenged sanction providing that Heslin has met his prima facie burden and a record that does not contain the broadcasts or more than partial descriptions of the broadcasts alleged as the basis for the claims, we cannot conclude that Appellants have carried their burden to prove by a preponderance of the evidence that Heslin's claim sounds solely in defamation.  *Cf. Spencer v. Overpeck*, No. 04-16-00565-CV, 2017 Tex. App. LEXIS 2223, 2017 WL 993093, at *11 (Tex. App.—San Antonio Mar. 15, 2017, pet. denied) (mem. op.) (holding defendant's "'gap-filler' argument is premature" when defendant's only argument with regard to the IIED claim was that the claim is a "gap-filler" that "has no application where other avenues of remedy exist for the conduct about which complaint is made").

      Moreover, we observe that in considering whether to dismiss IIED claims on the ground that there is no gap to fill, courts, including this Court, have generally considered this as part of plaintiff's prima facie case, which Appellants are precluded from challenging because of the sanctions against them.  *See Warner Bros.*, 538 S.W.3d at 814 (analyzing gap-filler argument as part of plaintiff's prima facie case); *Bilbrey v. Williams*, No. 02-13-00332-CV, 2015 Tex. App. LEXIS 2359, at *13-14 (Tex. App.—Fort Worth Mar. 12, 2015, no pet.) (mem. op.) (holding that trial court should have dismissed IIED claim under TCPA because factual basis for claim was same as defamation claim, and plaintiff consequently did not provide "minimum

9

quantum of evidence necessary" to establish a prima facie case for IIED claim); *Young v. Krantz*, 434 S.W.3d 335, 344 (Tex. App.—Dallas 2014, no pet.) (holding that plaintiffs failed to establish prima facie case for defamation and, therefore, their "claim for IIED must likewise fail"), *disapproved of on other grounds by In re Lipsky*, 460 S.W.3d 579 (Tex. 2015). We overrule Appellants' third issue.

**Statute of Limitations**

We next address Appellants' fourth issue, in which they assert that the statute of limitations bars Heslin's claims. Heslin's petition identifies several broadcasts spanning from 2013 to 2019 in which Appellants made statements that he says include "cruel mockery" of victims' families and "outrageous falsehoods about the shooting and subsequent law enforcement investigation and media coverage." Heslin also alleges that other actionable content exists but has been removed from the public domain and cannot be identified by date and title without further discovery. He specifies by date nine videos that he asserts caused him severe emotional distress.

Appellants urge that Heslin's claim sounds solely in defamation, which has a one-year statute of limitation. *See* Tex. Civ. Prac. & Rem. Code § 16.002(a) (one-year limitations period for defamation). They urge that we should dismiss Heslin's IIED claim because none of the broadcasts fall within one year of when Heslin filed his IIED petition. However, they state in their TCPA motion and brief on appeal that "[t]he statute of limitations for IIED is two years. Tex. Civ. Prac. & Rem. Code §16.003," and acknowledge that if Heslin can maintain a gap-filler IIED claim, two broadcasts fall within two years of when Heslin filed his petition: the October 26, 2017 and April 20, 2018 broadcasts. On this record, where Appellants agree that limitations

would only bar the two most recent broadcasts if Heslin's claim sounds in defamation and not IIED, we conclude that Appellants have not carried their burden to prove each essential element of a limitations defense to Heslin's IIED claim by a preponderance of the evidence. We overrule Appellants' fourth issue.

**Identifying the Plaintiffs**

In their first and second issues, Appellants assert that Heslin's claims fail because the statements at issue do not identify or name Heslin or his son, because Heslin "was not personally attacked," and because there was "no pre-existing relationship between the Parties." Appellants' first issue urges that the First Amendment to the United States Constitution bars IIED claims where the victim is not specifically identified, and their second issue alleges that the same requirement exists under Texas law, which Appellants contends provides broader protection for speech than the U.S. Constitution. *See Snyder v. Phelps*, 562 U.S. 443, 451 (2011) ("The Free Speech Clause of the First Amendment . . . can serve as a defense in state tort suits, including suits for intentional infliction of emotional distress." (citing *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 50-51 (1988)). Texas has adopted "the tort of intentional infliction of emotional distress as set out in in § 46 (1) of the Restatement (Second) of Torts." *Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993). Section 46(1) provides:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts § 46(1) (1965). Based on the Restatement, the Texas Supreme Court has held that to recover for IIED, "a plaintiff must prove that 1) the defendant acted

11

intentionally or recklessly, 2) the conduct was 'extreme and outrageous,' 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe." *Standard Fruit*, 985 S.W.2d at 65. Pursuant to the sanctions order based on Appellants' refusal to adequately respond to discovery, Heslin has established these elements.

This Court is not aware of any court that has required a pre-existing relationship between the parties. Appellants cite *Snyder* to suggest that the absence of a personal relationship between the parties precludes Appellants from being liable for IIED. In *Snyder*, the U.S. Supreme Court considered whether members of the Westboro Baptist Church could be liable to the father of a marine killed in the line of duty for IIED for carrying signs expressing sentiments that "God hates and punishes the United States for its tolerance of homosexuality" at a gathering that occurred near the marine's funeral. *Snyder*, 562 U. S. at 448-49. The *Snyder* court observed that the picketing occurred 1000 feet away from the funeral and the "funeral procession passed within 200 to 300 feet of the picket site," which was separated from the church where the funeral took place by "several buildings." *Id.* The court further noted that no violence resulted from the picketing and that "Westboro stayed well away from the memorial service. Snyder could see no more than the tops of the signs when driving to the funeral." *Id.* at 460. The court observed that "[t]here was no pre-existing relationship or conflict between Westboro and Snyder that might suggest Westboro's speech on public matters was intended to mask an attack on Snyder over a private matter." *Id.* at 455. In other words, the court did not indicate that a pre-existing relationship was necessary to state a claim for IIED, but instead acknowledged speech on public matters that was intended to mask a private attack can give rise to liability for IIED where there is a pre-existing relationship. *See Connick v. Myers*, 461 U.S. 138, 145 (1983) (determining

12

public employee speech was a matter of private concern when it was "no coincidence that [the speech] followed upon the heels of the transfer notice" affecting the employee).

Appellants also state that a federal district court in Alabama has "found that *Snyder v. Phelps* requires that there be specific intent to cause emotional harm to a particular person in order to have IIED liability." *See Holloway v. American Media, Inc.*, 947 F. Supp. 2d 1252, 1263 (N.D. Ala. 2013) (stating that "while false speech often must be tolerated in order to foster the free exchange of ideas so integral to our constitutional values, there remain limits upon the right to publish false statements that injure an individual. Those limits appear to be drawn with respect to whether the statements published purport to convey facts (as distinct from opinions) . . . . At the same time, it is clear that the torts of defamation and of intentional infliction are separate and distinct"). *Holloway* states that "*Snyder* implies that knowingly false speech motivated by a specific intent to cause emotional harm to a particular person may also fall outside First Amendment protection." *Id.* In other words, *Holloway* recognized knowingly false speech motivated by specific intent to emotionally harm a particular person as one (but not the only) type of speech to fall outside First Amendment protection. *Holloway* also states that First Amendment protection "does not extend to speech that is not 'honestly' believed." *Id.* To the extent that Appellants' arguments relate to their requisite intent to commit IIED, those arguments speak to Heslin's prima facie case, which has been established and is unchallenged for purposes of this appeal.

Turning to the argument that Appellants' speech must be directed to a particular person to comport with First Amendment, we note that Texas has resisted creating a new element for IIED by requiring conduct to be "directed at a particular individual," *see Johnson v. Standard Fruit & Vegetable Co.*, 984 S.W.2d 633, 639-40 (Tex. App.—Houston [1st Dist.] 1997), *rev'd*

13

*on other grounds*, 985 S.W.2d 62. Such an element encompasses Appellants' assertions that Heslin was not individually identified or "personally attacked." We determine that if such a requirement exists and may be asserted as a valid defense, Appellants have not carried their burden to prove by a preponderance of the evidence that their speech was not directed at Heslin. Appellants' TCPA motion to dismiss acknowledges that "Sandy Hook family victims are discussed by Mr. Jones in this [April 20, 2018] video," though they are not identified by name. Heslin's pleading explains that in the April 20, 2018 broadcast, Jones portrays "the [victims'] families as dishonest not only about Sandy Hook, but about their own torment at his hands." Because there are not sufficient descriptions, transcripts, or copies of at least the two most recent broadcasts in the record, we cannot determine whether the broadcasts identified or personally attacked Heslin. We overrule Appellants' first and second issues.

Because Appellants did not meet their obligation to establish by a preponderance of the evidence the elements of what they assert constitute valid defenses, we need not determine whether these defenses fall within the purview of section 27.005(d) of the TCPA and will assume that Appellants properly pleaded these defenses. *See Dyke v. Hall*, No. 03-18-00457-CV, 2019 Tex. App. LEXIS 9136, 2019 WL 5251139, at *32 n.8 (Tex. App.—Austin Oct. 17, 2019, no pet.) (mem. op.) (analyzing TCPA dismissal by assuming defenses were well pleaded and constituted "valid defenses" for purposes of TCPA); *cf.* Act of May 20, 2019, 86th Leg., R.S., H.B. 2730, § 3 (amending statute to state that dismissal is warranted "if the moving party establishes an affirmative defense or other grounds").

Having determined that Appellants did not carry their burden to prove each essential element of any valid defense by a preponderance of the evidence, we do not reach their argument that the district court erred in not awarding them attorney's fees.

**Sanctions**

Heslin contends this appeal is frivolous and seeks attorney's fees incurred in defending against the appeal and moving for sanctions in addition to an amount sufficient to deter Appellants' future misconduct. *See* Tex. R. App. P. 45. We conclude that sanctions are not appropriate. *See Caldwell v. Zimmerman*, No. 03-17-00273-CV, 2017 Tex. App. LEXIS 10010, *8 (Tex. App.—Austin Oct. 26, 2017, pet. denied) (mem. op.) ("The decision to grant appellate sanctions is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation."); *Easter v. Providence Lloyds Ins. Co.*, 17 S.W.3d 788, 792 (Tex. App.—Austin 2000, pet. denied) (sanctions are unwarranted when party had a reasonable expectation of reversal).

## CONCLUSION

We affirm the district court's denial of Appellants' TCPA motion to dismiss, and we deny Heslin's motion for sanctions.

_____
Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed

Filed: August 14, 2020