# EXHIBIT 46

No. ___-_____

# In the
# Supreme Court of the United States

———————

ALEX EMRIC JONES; FREE SPEECH SYSTEMS, LLC; INFOWARS
HEALTH, LLC; INFOWARS, LLC; PRISON PLANET TV, LLC,

*Petitioners*,

v.

ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER;
JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN
HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN, DONNA SOTO;
CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; WILLIAM
ALDENBERG,

*Respondents.*

———————

**On Petition For Writ of Certiorari to the
Connecticut Supreme Court**

———————

**PETITION FOR WRIT OF CERTIORARI**

———————

Norman A. Pattis
    *Counsel of Record*
Kevin M. Smith
PATTIS & SMITH, LLC
383 Orange Street, 1st Floor
New Haven, Connecticut 06511
Phone: (203) 393-3017
Fax: 203-393-9745
Email: npattis@pattisandsmith.com

*Counsel for Petitioners*

February 12, 2021

## QUESTIONS PRESENTED

American courts possess an inherent supervisory authority over their proceedings. They exercise that authority through orders and, if necessary, sanctions including civil or criminal contempt. They, however, do not possess unlimited authority as United States Constitution places limits on the exercise of their inherent supervisory authority. In this case, a Connecticut trial court sanctioned the Petitioners for extrajudicial statements made by Alex Jones – one of the petitioners and the founder of the others.

Despite acknowledging that Jones' extrajudicial statements – made in the course of a television and radio broadcast – would be entitled to constitutional protection if he were not a litigant, the Connecticut Supreme Court altered this Court's incitement and true threats exceptions to the First Amendment to functionally create an entirely new First Amendment exception that categorically applies to litigants – simply because they are litigants.

The questions presented are:

1. Whether a litigant's extra-judicial statements can be sanctioned when the First Amendment otherwise protects his speech and where there was no order providing prior notice of what speech was sanctionable?

2. Whether a trial court's warning of the possibility of imposing the same criminal sanctions on a litigant for an unrelated matter is sufficient notice for a subsequent matter under the Fourteenth Amendment's Due Process Clause?

ii

## PARTIES TO THE PROCEEDING

The Petitioners are Alex Emric Jones; Free Speech Systems, LLC; Infowars Health, LLC; Infowars, LLC; and Prison Planet TV, LLC. They were the defendants in the Connecticut Superior Court and the Appellants in the Connecticut Supreme Court.

The Respondents are Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, Jillian Soto, and William Aldenberg. They were the plaintiffs in the Connecticut Superior Court and the Appellees in the Connecticut Supreme Court.

## RULE 29.6 CORPORATE DISCLOSURES

Free Speech Systems, LLC; Infowars Health, LLC; Infowars, LLC; and Prison Planet TV, LLC are not owned by any parent or publicly held company. No parent or publicly held company owns 10% or more of their stock.

iii

# TABLE OF CONTENTS

QUESTIONS PRESENTED...................................................................i

PARTIES TO THE PROCEEDING ...............................................ii

RULE 29.6 CORPORATE DISCLOSURES.................................ii

TABLE OF CONTENTS.......................................................................iii

TABLE OF AUTHORITIES ................................................................ v

PETITION FOR A WRIT OF CERTIORARI ................................. 1

OPINIONS BELOW ............................................................................. 3

JURISDICTION..................................................................................... 3

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED ...................... 3

STATEMENT OF THE CASE............................................................ 3

REASONS FOR GRANTING THE PETITION ........................... 7

I.   The Connecticut Supreme Court Created A New Exception To The First Amendment Based On A Broad And Sweeping Assertion Of Judicial Supervisory Authority That Permits A Court To Penalize A Litigant For Extrajudicial Speech Without Any Notice Of What Speech Is Prohibited.................................. 7

   A.   The Connecticut Supreme Court created the case that it wanted to decide rather than the case that the parties presented, raising due process questions as to its impartiality under the party presentation rule, denying Mr. Jones of a meaningful opportunity be heard, and creating a new First Amendment exception that is really an authorization for courts to censor speech based on its content........................................................................ 8

   B.   The Connecticut Supreme Court's characterization of Mr. Jones speech as an imminent and likely threat to the administration of justice creates a new First Amendment exception that this Court has never recognized............................ 11

II.   The Connecticut Supreme Court Fashioned A Rule That Carves A Mixed Motive Analysis Out Of Its Due Process Analysis and Deprives Litigants Of Any Fair Notice Or Meaningful Opportunity To Be Adequately Heard On The Merits........................................................................ 17

CONCLUSION........................................................................ 22

APPENDIX........................................................................ 23

Appendix A
   Opinion of the Connecticut Supreme Court, *Lafferty v. Jones*, SC20327 (July 23, 2000……………………………………………………………………………….App-1
Appendix B
   Order of the Connecticut Supreme Court Denying Reconsideration, *Lafferty v. Jones*, SC20327 (September 15, 2020)………………….…..………………....App-38

Appendix C
>    Transcript Containing the Decision of the Connecticut Superior Court To
>    Impose Sanctions, *Lafferty v. Jones*, Dkt. No. UWY-CV-18-6046437-S; UWY-
>    CV-18-6046438-S; UWYCV- 18-6046436-S (June 18, 2020)……….…….…App-40

Appendix D
>    Respondents' Motion To Seek Review of Mr. Jones' Remarks, *Lafferty v. Jones*,
>    Dkt. No. UWY-CV-18-6046437-S; UWY-CV-18-6046438-S; UWY-CV-18
>    6046436-S (June 17, 2020)……..…………………………………….....App-99

Appendix E
>    Certified Transcript of Excerpt From The Alex Jones Show (June 14,
>    2020)………………………………………………………………….App-106

Appendix F
>    Opening Merits Brief For The Applicants Before The Connecticut Supreme
>    Court In *Lafferty v. Jones*, SC20327 (June 29, 2020)…………………App-144

Appendix G
>    Opening Merits Brief For The Respondents Before The Connecticut Supreme
>    Court In *Lafferty v. Jones*, SC20327 (August 19, 2020)………………App-187

Appendix H
>    Reply Brief On The Merits For The Applicants Before The Connecticut
>    Supreme Court In *Lafferty v. Jones*, SC20327 (August 29, 2020)……..App-231

Appendix I
>    Connecticut Superior Court Docket Sheet In *Lafferty v. Jones*, Dkt. No. UWY-
>    CV-18-6046437-S;     UWY-CV-18-6046438-S;     UWY-CV-18     6046436-
>    S………………………………………………………………………App-253

v

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) .............................................................. 1, 15

*Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942) ..................................................... 1

*Cohen v. California*, 403 U.S. 15 (1971) ....................................................................... 15

*Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991) ................................................. 1

*Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624 (1988) .......................................... 19

*LaChance v. Erickson*, 522 U.S. 262 (1998) ................................................................. 16

*Matthews v. Eldridge*, 424 U.S. 319 (1976) .................................................................. 9

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ................................................................... 16

*Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) .......... 20, 21

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ...................... 18

*National Institute of Family and Life Advocates v. Becerra*, 138 S.Ct. 2361 (2018) 11

*New York Times v. Sullivan*, 376 U.S. 254 (1964) ........................................................ 1

*Reed v. Town of Gilbert, Ariz.*, 135 S.Ct. 2218 (2015) ................................... 10, 11, 12

*United States v. Alvarez*, 567 U.S. 709 (2012) ............................................................ 12

*United States v. Sineneng-Smith*, 140 S.Ct. 1575 (2020) ........................................... 8

*Virginia v. Black*, 538 U.S. 343 (2002) .......................................................................... 1

*Virginia v. Black*, 538 U.S. 343 (2003) ................................................................... 14, 15

**Statutes**

Conn. Gen. Stat. § 52-196a ............................................................................................. 4

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ........................................................................ 15

## PETITION FOR A WRIT OF CERTIORARI

The First Amendment's guarantee of freedom of speech is not absolute. Government may impose sanctions for speech falling within certain prohibited categories of speech, such as fighting words, *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942), true threats, *Virginia v. Black*, 538 U.S. 343 (2002), incitements to violence, *Brandenburg v. Ohio*, 395 U.S. 444 (1969), and defamation, *New York Times v. Sullivan*, 376 U.S. 254 (1964). Courts also have the authority to enforce their own rules, as in cases of attorney discipline for speech in violation of those rules. *See, e.g., Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991).

Little case law, if any, exists on the power of courts to sanction litigants for extrajudicial statements – particularly for otherwise protected speech made outside the courtroom or lacking a connection to a court procedure and is uttered in the course of a television talk show.

In this case, the Connecticut Supreme Court sanctioned the Petitioners by refusing to rule on their motion to dismiss a lawsuit brought against them under Connecticut's anti-SLAPP statute – a statute designed to protect the right to speak freely and to keep speakers from being burdened with frivolous litigation. The sanction entered without meaningful notice or an opportunity to be heard. The sanction also entered – at least in part, if not entirely – in response to Mr. Jones' otherwise protected, on-the-air speech. Neither Jones nor the rest of the Petitioners received any notice of what the trial court would or would not permit, and the trial court entered the sanction against the Petitioners based on opposing counsel's

2

threadbare, implausible, and untested assertion that they were discomfited by words uttered on a television broadcast.

This unprecedented attack on freedom of speech took place under the guise of the Connecticut courts' "inherent supervisory authority" over litigants appearing before those courts. While this matter is a matter of first impression in Connecticut and the United States, the Connecticut Supreme Court's affirmation of the trial court's sanctions will make a mockery of the First Amendment if this Court does not intervene because it will permit litigants to silence the unpopular speakers' constitutionally protected speech just because those speakers have been sued. The Connecticut Supreme Court's decision heralds a new and frightening assertion of judicial power that constitutes a direct, frontal assault on the First Amendment itself.

The Connecticut Supreme Court also crafts a dangerous new course in First Amendment law by creating a vague and highly generalized exception to First Amendment protections that establishes a basis for denying constitutional protection to unpopular and hateful speech. If this Court allows its decision to stand, it will signal to other courts that the First Amendment's guarantees for freedom of speech – even vitriolic and hateful speech – can be relaxed if popular sentiment reaches a generalized consensus that the speech offends delicate sensibilities.

Thus, the Petitioners respectfully ask the Court to grant their petition for a writ of certiorari.

## OPINIONS BELOW

The Connecticut Supreme Court's opinion is reported at 2020 WL 4248476 and reproduced at App.1-37. Its order denying reconsideration is reprinted at App.38-39. The transcript of the Connecticut Superior Court's order is reprinted at App.40-98.

## JURISDICTION

The Connecticut Supreme Court issued its opinion on July 23, 2020. The Petitioners timely moved for reconsideration, which the Connecticut Supreme Court denied on September 15, 2020. On March 19, 2020, the Court issued a general order extending the time for filing any petitions for a writ of certiorari due on or after March 19, 2020 to one hundred and fifty (150) days. The Court has jurisdiction under 28 U.S.C. § 1257.

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

United States Constitution, Amendment I states as follows: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

## STATEMENT OF THE CASE

Alex Jones has staked a fair claim to being the person most unpopular in Connecticut. He founded a national renowned media organization, Infowars, and a series of affiliated companies, and his organization's daily broadcasts – television, radio, and podcasts – reach millions of viewers and listeners. The views that he has

4

personally articulated are often controversial, and many people have labelled him a "conspiracy theorist." App.4.

In the years following the 2012 school shooting at Sandy Hook Elementary School in Newtown, Connecticut that left twenty first- and second-graders and six teachers dead,[1] Jones and his organizations entertained various controversial figures who posited theories about whether the shootings actually took place or whether they were a contrived "false flag" operation – an event manufactured to create hysteria and serve as the emotional basis for unpopular government action. App.4. Jones himself personally posed the same questions over the years, but he eventually stated that he no longer questioned whether the shooting actually took place. App.4

The Respondents – parents and relatives of those killed and first responders – however, remain resolutely committed to using the Sandy Hook tragedy to advocate for political and social policies. The Petitioners drew their ire for personally questioning whether the tragedy had actually occurred and allowing others to be heard on the same subject, and the Respondents initiated this litigation to silence Jones and his organizations because they disagree with and take offense to his speech.

Thus, the Respondents sued the Petitioners, claiming, among other things, unfair trade practices, defamation, and infliction of emotional distress. App.4. Because the lawsuit is based solely on comments made either by Jones or by guests on his broadcasts, the Petitioners filed a special motion to dismiss under

---

[1] https://www.cnn.com/interactive/2012/12/us/sandy-hook-timeline/index.html

5

Connecticut's anti-SLAPP statute,[2] which immunizes the Petitioners from suit for speech protected by the First Amendment or the Connecticut Constitution and guarantees them a swift and efficient determination on whether their speech is constitutionally protected. App.4-5.

Pursuant to the anti-SLAPP statute's provisions, the trial court ordered limited discovery to take place, and the litigation quickly descended into several endless, and largely unnecessary, discovery disputes. App.5-6. During these disputes, the Respondents repeatedly expressed their dissatisfaction with the Petitioners' compliance and the trial court made findings that the Petitioners had shown "substantial compliance" with their discovery obligations. App.5-6.

The Respondents eventually demanded the "meta-data" associated with tens of thousands of emails that the Petitioners produced during this limited discovery. App.6. When the Petitioners produced the "meta-data," the Respondents discovered that many of the emails sent to the Petitioners contained unopened child pornography, which the Petitioners did not know about. App.6. Jones concluded that someone bent on doing him harm had sent the emails with the hope that prosecutors would eventually it, exposing him to prosecution and incarceration. App.107-143.

Jones quickly focused his suspicions on one of the Respondents' lawyers – a former federal prosecutor with political ambitions.[3] App.107-143 He chose to air his

---

[2] Conn. Gen. Stat. § 52-196a.

[3] The lawyer, Christopher Mattei, had recently run for statewide office, seeking the Democratic nomination for Attorney General. Previously, he enjoyed success and publicity as a federal prosecutor, securing a high profile, white-collar conviction of a former Connecticut governor, John G. Rowland.

suspicions on his daily Infowars television show during an interview with the undersigned. App.107-143. He informed his audience that someone had embedded child pornography in "hate" emails – sent to him after the Respondents began their lawsuit against him – excoriating him for his coverage of so-called Sandy Hook conspiracy theories that he had been compelled to turn over in discovery and that the former federal prosecutor serving as the Respondents' counsel had contacted the FBI and, in his opinion, had tried to get him into criminal trouble despite the emails having never been opened. App.124-125.

Jones then grew more and more outraged on live radio and television at what he perceived as a deliberate attempt to cause him criminal trouble. App.124-142. He engaged in a profane and emotional tirade directed at the individuals that he suspected were responsible, and he offered a one-million-dollar reward for evidence that revealed who was responsible for sending him the child pornography. App.125-126. He also declared war and repeated his offer of a bounty directed at whoever sent the emails:

> You're trying to set me up with child porn. I'm going to get your ass. One million dollars. One million dollars, you little gang members. One million dollars to put your head on a pike. One million dollars, bitch. I'm going to get your ass. You understand me now? You're not going to ever defeat Texas, you sacks of shit. So you get ready for that.

App.126-127.

Despite his outrage, however, Jones unmistakably expressed that he only wanted people to act lawfully: "And now I ask my listeners and everyone, you claimed I sent people. I never sent anybody. *And I want legal and lawful action.* But I pray to

God that America awaken[s]. Will Texas be defeated? You will now decide. This is war." App.142. (emphasis added).

A few days later, the Respondents filed motions asking the trial court to review the broadcast and for "an expedited briefing schedule concerning what orders must issue" as a result of Jones' speech. App.99-105. The next day, the trial court held a hearing, and, after argument, it *sua sponte* elected to impose discipline without the benefit of further briefing,[4] denying Mr. Jones and related defendants the right to have their special motions to dismiss heard as a sanction, citing the court's inherent supervisory authority over litigants. App.40-98.

The Petitioners took an expedited appeal known as a public interest appeal to the Connecticut Supreme Court, challenging Judge Bellis' sanctions on First Amendment and due process grounds. App.9. The Connecticut Supreme Court rejected both challenges to Judge Bellis' ruling, and the Petitioners now seek a writ of certiorari from this Court. App.3-37.

## REASONS FOR GRANTING THE PETITION

**I.    The Connecticut Supreme Court Created A New Exception To The First Amendment Based On A Broad And Sweeping Assertion Of Judicial Supervisory Authority That Permits A Court To Penalize A Litigant For Extrajudicial Speech Without Any Notice Of What Speech Is Prohibited.**

---

[4] The Respondents' motion did not even suggest what sanctions that it intended to seek and styled itself more as a notice to Judge Bellis of the Petitioners' conduct. App.. The Respondents' motion also indicated that they would request Judge Bellis to issue an expedited briefing schedule. App.. The Respondents also acknowledged that they intended to file a motion for sanctions up to and including default for Jones' comments, thus conceding that they had not properly moved for sanctions. App..

**A. The Connecticut Supreme Court created the case that it wanted to decide rather than the case that the parties presented, raising due process questions as to its impartiality under the party presentation rule, denying Mr. Jones of a meaningful opportunity be heard, and creating a new First Amendment exception that is really an authorization for courts to censor speech based on its content.**

The trial court did not base its sanctions against the Petitioners on whether Mr. Jones' speech posed an imminent and likely threat to the administration of justice – a fact that the Connecticut Supreme Court acknowledged.[5] App.20-21. Instead, the trial court censured Mr. Jones for his speech under its inherent authority to address extrajudicial, "bad-faith litigation misconduct where there is a claim that a party harassed or threatened or sought to intimidate counsel on the other side." App.20-21, 90. The Connecticut Supreme Court, however, did not simply review and opine on the trial court's stated basis for its decision to sanction the Petitioners. It found its own basis to uphold the sanctions on the Petitioners by recharacterizing Mr. Jones' speech as a threat to the administration of justice – a characterization that no party ever made and the trial court did not address at all.[6] *See* App.20-21.

The Connecticut Supreme Court's decision tramples all over the party presentation rule that the Court just emphatically reaffirmed early this year in another First Amendment case. *See United States v. Sineneng-Smith*, 140 S. Ct.

---

[5] Out of an abundance of caution, the Petitioners, however, expressly argued that Mr. Jones's speech did not threaten the administration of justice before the trial court. App.77-78. They did not raise that argument on appeal because it was not the basis for the trial court's decision.

[6] The Petitioners have included in the Appendix the full briefs of the parties before the Connecticut Supreme Court. As the Court will note, the parties focused on whether Mr. Jones' speech was a true threat or an incitement to violence. App.144-252.

9

1575, 1579 (2020). "In both civil and criminal cases, in the first instance and on appeal...," courts serve as neutral arbiters of the matters that the parties frame and present for their consideration. *Id.* at 1579 (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). While the Court has never explicitly characterized the party presentation rule as a component of due process, it is an undeniable component of due process because it bears directly on the tribunal's impartiality and a litigant's right to an opportunity to be heard on an issue "at a meaningful time and in a meaningful manner" – a fact that this case makes painfully obvious. *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).

Mr. Jones' speech was impassioned and objectionable to cultivated sensibilities. The First Amendment, however, does not require speakers to either elucidate with Shakespearean dignity or to conform "woke" standards. The Court's First Amendment jurisprudence makes clear that no exception would apply to Mr. Jones' speech, thus mandating the reversal of the trial court's order imposing sanctions on the Petitioners. The Connecticut Supreme Court, however, transformed the case into one that the parties never asked for and the trial court never considered — whether Mr. Jones' speech posed an imminent and likely threat to the administration of justice. The Petitioners have no way to question the Connecticut Supreme Court on why it chose to uphold the sanctions under "an imminent and likely threat to the administration of justice" rather than a true threats or incitement analysis as the parties argued for, and the Connecticut Supreme Court did not elaborate beyond stating that Mr. Jones' speech had the potential to influence the

fairness of the proceedings because it produced additional threats from third parties. App.21.

The paramount importance of the party presentation rule as a component of due process reaches its zenith in First Amendment cases in which the content of a speaker's remarks is at issue. If a court transforms the case into issues that the parties neither raised nor argued and ignores the issues that the parties present, the speaker ultimately faces a third adversary: the court itself. When the court finds the content of his speech to be repugnant to its cultivated sensibilities, it can search endlessly for rationales to sanction that speech while giving the speaker no opportunity to be heard on the rationales that it raises sua sponte. Furthermore, when the court that breaks from the party presentation rule is a state supreme court, the speaker has no opportunity to seek review as a matter of right and must appeal to this Court's discretionary review powers, potentially receiving no opportunity to be heard on a state supreme court's transformation of his case based on nothing more than a dislike for the content of his speech.

In sum, a departure from the party presentation rule in First Amendment speech cases opens the door for courts to engage in the content-based regulation of speech as the Connecticut Supreme Court did here. The Court has repeatedly emphasized that content-based regulation of speech is "presumptively unconstitutional." *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2226 (2015) (compiling cases). Here, the Connecticut Supreme Court gave birth to an authorization for courts to engage in the content-based regulation of extrajudicial speech under the guise of

creating a new First Amendment exception. It created that new First Amendment exception because it acknowledged that Jones' speech – considered strictly under this Court's existing exceptions, would be constitutionally protected. App.21. Thus, the well-established rule articulated in *Reed* renders the Connecticut Supreme Court's new "exception" presumptively unconstitutional because it is really an authorization to engage in impermissible content-based censorship of otherwise protected speech.

### B. The Connecticut Supreme Court's characterization of Mr. Jones speech as an imminent and likely threat to the administration of justice creates a new First Amendment exception that this Court has never recognized.

The content of Mr. Jones' speech is the essence of this case. The Connecticut Supreme Court characterized it as a threat against the Respondents' counsel. It also accused Mr. Jones of inciting others to threaten the trial court and the Respondents' counsel. Both the characterization and the accusation came with no analysis under the Court's true threat and incitement exceptions to the First Amendment despite the Connecticut Supreme Court acknowledging that, outside litigation, Mr. Jones' speech "may be protected." App.21. Instead, the Connecticut Supreme Court held that

> the trial court's duty to ensure a fair trial for those appearing before it permits some restrictions on harassing and threatening speech toward participants in the litigation. Without the ability to place such restrictions, trial courts will be left defenseless to stop both actual interference and perceived threats to just adjudications.

App.21.

In 2015, the Court reaffirmed the principle that a government's content-based restrictions on speech are presumptively unconstitutional. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015); *see also Nat'l Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (same). The Court also indicated

that a government regulation of speech is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2227. Of particular egregiousness to the Court was government regulation that regulates speech based on viewpoints. *Id.* at 2230 (citing *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). Innocent motives do not save the regulation either. *Id.* at 2229.

The Court, however, has developed limited exceptions to the First Amendment's strong prohibitions against content-based regulation: incitement, obscenity, defamation, speech integral to criminal conduct, "fighting words," child pornography, fraud and speech presenting some grave and imminent threat the government has the power to prevent. *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (compiling cases). Each of these exceptions, though, is carefully circumscribed by methods of analysis to ensure that they do not swallow the First Amendment whole.

Courts are not above the Constitution. They can transgress on constitutional liberties just as readily as the legislative or executive branches, particularly when they regulate the speech of those subject to their jurisdiction. The Petitioners do not dispute that a court has an important interest in ensuring the fair administration of justice. Protecting that interest, however, cannot come at the expense of the First Amendment's free speech protections.

A litigant stands in a unique position in society. He has intentionally or unwittingly become a participant in one of our nation's great political processes. As a

participant, he gains a unique perspective of how that process works and how its various participants conduct themselves, including all of their infirmities. Thus, his views on the judicial process and the conduct of its various participants are core political speech protected by the First Amendment regardless of whether he expresses them with Shakespearean eloquence or with quintessential American vim and vigor.

The Connecticut Supreme Court, however, distinguished between a litigant's speech and a non-litigant's speech in a manner that is antithetical to the First Amendment. It acknowledged that Mr. Jones' speech would likely be protected by the First Amendment if he was not a litigant, but stated that his status as a litigant made him a participant in a government function: "As a party to a judicial proceeding, Jones is participating in a government function and therefore is under the court's jurisdiction. For this reason, the trial court may sanction him for speech that, when made by a stranger to the litigation, may be acceptable." App.22.

The implications of a rule of this nature pose a serious threat to every litigant's free speech rights. What if a litigant chooses to publicly suggest that the trial court judge was improperly biased? Would he be sanctioned for perverting the administration of justice for raising a legitimate question about the fundamental fairness of the judicial process? What if a litigant chooses to publicly state a belief that the opposing parties had manufactured the lawsuit in an effort to weaponize the judicial process for political purposes and offered a reward for anyone who could get him evidence to support that belief? Would he be sanctioned for ostensibly

discouraging a litigant from availing himself of the judicial process or compromising the fairness of the proceedings?

The Connecticut Supreme Court did establish such a broad and vague rule to place litigants on substantially different ground than non-litigants, and it then harnessed the rule's breadth and vagueness to sanction the Petitioners for Mr. Jones' speech – the content of which was offensive to its sensibilities. In doing so, however, the Connecticut Supreme Court left an Achilles' heel to its analysis when it specified the bases for its decision were that (1) Mr. Jones threatened opposing counsel and (2) Mr. Jones' speech "produced additional threats to those involved in the case and created a hostile atmosphere that could discourage individuals from participating in the litigation." App.20-21.

Despite clearly stating that it found that Mr. Jones threatened opposing counsel and incited additional threats against opposing counsel, the Connecticut Supreme Court's opinion lacks any true threats or incitement analyses. The lack of analysis is unsurprising. Mr. Jones did engage in a profane rant. App.123-142. He did use numerous expletives. App.123-142. He did declare war. App.130, 134, 138, 140-42. He did declare that he was "going to get [his] ass," referring to whoever sent the emails. App.126-27. He did offer a bounty of a million dollars to put whoever's head was responsible on a pike. App.126-27. However, in the midst of his rant, Mr. Jones still made it very clear that he only wanted legal and lawful action. App.142. His attorney – the undersigned – made it clear that they were only looking for legal and lawful action. App.133-137.

The Court's true threat jurisprudence forecloses any finding that Mr. Jones' speech was a true threat. "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). Likewise, "[i]ntimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Id.* at 360. Mr. Jones clearly stated that he was offering a bounty to bring those responsible for the planting of child pornography on his computer servers to justice. App.137. He clearly stated that he wanted legal and lawful action only. App.141. His attorney also stated the same thing. App. 133-137. Thus, while Mr. Jones' rant was indeed overwhelmingly hyperbolic,[7] there was no doubt that the only threat, if any, that Mr. Jones levied at opposing counsel was that of legal action. Thus, the Connecticut Supreme Court could not have found his speech to be a true threat under the Court's true threat jurisprudence.

The Court's incitement jurisprudence is equally unavailing as a basis for the sanctions imposed against the Petitioners. Speech falls within the incitement exception when it "is directed to inciting or producing imminent lawless action and is

---

[7] The Court has held that the government "has no right to cleanse public debate to the point where it is grammatically palatable to the most squeamish among us," reasoning that "one man's vulgarity is another's lyric." *Cohen v. California*, 403 U.S. 15, 25 (1971). Mr. Jones' profanity or perceived vulgarity carries minimal weight in the analysis.

likely to incite or produce such action."[8] *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). As stated above, Mr. Jones did engage in a rant that contained impassioned expressions of his emotions.[9] He, however, made it unmistakably clear that he was only advocating for legal and lawful action. App.142. Thus, the Connecticut Supreme Court could not have found that Mr. Jones incited anyone to lawless action when he made it abundantly clear that he was only advocating lawful action.

Since the Connecticut Supreme Court could not find fault with Mr. Jones' speech by fairly analyzing its content, it chose to punish the Petitioners for the unlawful actions of others while ignoring Mr. Jones' clear advocacy for lawful action. Mr. Jones chose to act lawfully. Others did not. The Connecticut Supreme Court punished the Petitioners for the sins of others, ostensibly because Mr. Jones inspired their sins. The Court's true threat and incitement doctrines, however, both require Mr. Jones to intend to act unlawfully or intend to incite others to act unlawfully. Mr. Jones neither advocated nor intended to advocate for others to act unlawfully.

The Connecticut Supreme Court acknowledged that Mr. Jones' speech would likely be protected if he was not a litigant. It unquestionably would be protected. There is no justification for its arbitrary distinction between litigants and nonlitigants, especially when both would be engaging in core political speech — the criticism of actors in a political process.

---

[8] As a legal term of art, incitement is "the act or an instance of provoking, urging on, or stirring up… The act of persuading another person to commit a crime." *Incitement*, Black's Law Dictionary (11th ed. 2019).
[9] See n.7 *supra*.

II.     **The Connecticut Supreme Court Fashioned A Rule That Carves A Mixed Motive Analysis Out Of Its Due Process Analysis and Deprives Litigants Of Any Fair Notice Or Meaningful Opportunity To Be Adequately Heard On The Merits.**

Due process requires, at a minimum, adequate notice and a meaningful opportunity to be heard. *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). It, however, "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The Connecticut Supreme Court and the trial court, in this case, ignored the fact that they were imposing, and affirming, a sanction for criminal contempt on the Petitioners. Thus, they grossly denied the Petitioners a meaningful opportunity to be heard fully and to present testimony to rebut any reasoning that could have supported the criminal sanctions against them.

In the first place, the Respondents did not file a formal motion for sanctions. App.99-105. Instead, they filed a "Motion For Review of Broadcast By Alex Jones Threatening Plaintiffs' Counsel," which did not request sanctions and stated an intention "to move to seek specific relief on an expedited basis." App.99-105. The Respondents were crystal clear that they were not requesting to be heard on the merits of sanctions immediately, but were only requesting an expedited briefing schedule on sanctions and possibly interim relief. App.51-52, 99-105. The very next day, the trial court took up the issue of Mr. Jones' speech at a hearing initially intended to address discovery issues without letting counsel know that it intended to impose sanctions that day. App.52. At that hearing, it revoked the Petitioners'

statutory right to file a special motion to dismiss as a punishment for Mr. Jones'
speech. App.94-95.

Based on the Respondents' motion, the Petitioners expected that they would
have a chance to fully brief the issue of Mr. Jones' speech before the trial court ruled.
Thus, when the trial court revealed that it would be ruling that same day, the
undersigned had to leave a trial that he was participating in the same courthouse
and only received an hour to prepare an argument against sanctions based on what
First Amendment law he could recall from memory and the case that the trial court
provided him. He then appeared, argued, and asked the trial court to allow Mr. Jones
to testify about his speech – a request that the trial court ignored. App.75.

Even under a minimal standard of due process, the trial court's actions, at best,
fell far short of giving the Petitioners adequate notice and a meaningful opportunity
to be heard. At worst, the notice that the Petitioners received – the Respondents'
motion – was misleading because it led the Petitioners to expect that they would
receive an opportunity to brief the issues pertaining to Mr. Jones' speech. Notice must
be "reasonably calculated, under all the circumstances, to apprise interested parties
of the pendency of the action and afford them an opportunity to present their
objections…. The notice must be of such nature as reasonably to convey required
information." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314
(1950). If the Petitioners had adequate notice, they would have, at the very least,
offered an affidavit from Mr. Jones to further affirm his intentions, and, at best, they

would have offered his testimony. They would have also prepared substantially more detailed arguments to oppose the sanctions.

The Petitioners, however, were entitled to far more than minimal due process because the trial court's sanctions were criminal in character. In *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821 (1994), the Court drew a marked distinction between civil and criminal contempt: "A contempt sanction is considered civil if it 'is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.'" *Bagwell*, 512 U.S. at 827-828 (quoting *Gompers v. Bucks Stove & Range Co*, 221 U.S. 418, 441 (1911)). The Court has further distinguished criminal sanctions from civil sanctions based on whether they are conditional: "An unconditional penalty is criminal in nature because it is 'solely and exclusively punitive in character....' A conditional penalty, by contrast, is civil because it is specifically designed to compel the doing of some act." *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 633 (1988).

Criminal sanctions may not be imposed on someone without giving him the due process protections traditionally associated with criminal proceedings. *Bagwell*, 512 U.S. at 826. That includes the rights to receive adequate notice of proceedings and to receive an opportunity to present an adequate defense. *Id.*

While it is true that the trial court did not imprison or fine the Petitioners, it stripped them of a statutory right in the judicial system, which is a deprivation of their liberty. It did not strip them of that right to compel compliance with any of its orders. Indeed, there was no order that the trial court had issued that would have

put Mr. Jones on notice that his speech was impermissible. Furthermore, its sanctions were not conditional in any sense. Thus, under the Court's jurisprudence, there is no question that the trial court imposed criminal sanctions on Mr. Jones without attaching the label of criminal contempt to them.

The Connecticut Supreme Court, however, held that the Petitioners were properly on notice that sanctions were a possibility and had ample opportunity to prepare their objections because the trial court had repeatedly warned them that it would strip them of their right to file a special motion to dismiss for discovery violations. App.31. This reasoning misses the mark by a wide breadth.

While the trial court did warn the Petitioners that it would strip them of their statutory right to file a special motion to dismiss for discovery noncompliance on several occasions, it only did so in the context of discovery noncompliance. In the hearing that ultimately led to sanction on Mr. Jones, the trial court devoted the entire hearing to discussing his comments and no time to discussing discovery issues. *See* App.40-98. It then ruled on the Respondents' pending motions for discovery compliance and sanctions along with its own initiation of sanctions on the Petitioners for Mr. Jones' speech. App.87-98. While the trial court did find that the Petitioners had not been complying with their discovery obligations, it explicitly ignored and gave no treatment to the Petitioners' counsel's representation that he had sought to physically tender the outstanding discovery to the Respondents and they had refused to accept it. App.56-57.

Thus, the discovery issues were clearly secondary to the trial court's punishment of Mr. Jones' speech, which it did not like and described as "indefensible, unconscionable, despicable, and possibly criminal behavior…." App.91. The trial court specified that, for both the discovery issues and Mr. Jones' speech, it was sanctioning the Petitioners: "So for all these reasons, the Court is denying the Alex Jones defendants the opportunity to pursue their special motions to dismiss…." App.94-95.

In First Amendment employment retaliation cases, the Court has made it clear that a plaintiff need not establish that the sole and primary reason for a government's adverse action against him was its dislike for his constitutionally protected speech. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Instead, a plaintiff only needs to show that it was a motivating factor in an adverse action. *Id.* The standard should be no different when it comes to a court's sanctioning of a litigant for constitutionally protected speech.

Thus, the Connecticut Supreme Court clearly erred by absolving the trial court of any error on due process grounds through its holding that the sanction was appropriately imposed on the separate and independent basis of punishing the Petitioners for discovery violations. The trial court imposed the sanctions for purported discovery violations and for Mr. Jones' speech. Under the Court's precedents, Mr. Jones was entitled to far more notice and a much more meaningful opportunity to be heard than he received.

22

## <u>CONCLUSION</u>

For all these reasons, this Court should grant the petition for certiorari.

Respectfully submitted

NORMAN A. PATTIS
 *Counsel of Record*
PATTIS & SMITH, LLC
383 Orange Street, 1st Fl.
New Haven, CT 06511
(203) 393-3017
npattis@pattisandsmith.com

*Counsel for Petitioner*

February 12, 2021

23

# APPENDIX