# EXHIBIT 49

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO.  03-19-00811-CV

---

**Alex E. Jones; Infowars, LLC; Free Speech Systems, LLC; and Owen Shroyer, Appellants**

**v.**

**Neil Heslin, Appellee**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-001835, THE HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellants Alex E. Jones; Infowars, LLC; Free Speech Systems, LLC; and Owen Shroyer appeal from the district court's order denying their motion to dismiss under section 27.003 of the Texas Citizens Participation Act (TCPA).  *See* Tex. Civ. Prac. & Rem. Code § 27.003.[1]  We will affirm the district court's denial of Appellants' motion to dismiss.

## BACKGROUND

Neil Heslin's son, Jesse, was killed in the Sandy Hook Elementary School shooting in December 2012.  In June 2017, Heslin participated in a television interview during which he responded to claims by Jones that the shooting at Sandy Hook was "a giant hoax."

---

[1]  The TCPA was amended in the 2019 legislative session, but those amendments do not apply to this lawsuit, which was filed before the amendments' effective date.  *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11, 12, 2019 Tex. Gen. Laws 684, 687 (amendments to TCPA apply "only to an action filed on or after" September 1, 2019).

Shortly thereafter, Appellants aired broadcasts disputing Heslin's account of how he lost his son. In response, Heslin sued Appellants for defamation and defamation per se related to Appellants' statements disputing Heslin's claim that he held his deceased son in his arms. On July 13, 2018, Appellants filed a motion to dismiss Heslin's claims under the TCPA. In August 2018, Heslin filed a motion for expedited discovery. Heslin also responded to the motion to dismiss. On August 30, 2018, the district court held a hearing to consider the pending motions. At that hearing, the court determined that it would grant limited discovery relevant to the motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code § 27.006(b). Because Appellants did not respond to any discovery requests, Heslin filed a motion for contempt, seeking sanctions under Rule 215. *See* Tex. R. Civ. P. 215. The day Heslin filed his contempt motion, Appellants filed a notice of appeal, asserting that their TCPA motion had been dismissed by operation of law. *See* Tex. Civ. Prac. & Rem. Code § 27.008(a) (providing for denial by operation of law if a trial court does not rule within the time limits prescribed by the TCPA). This Court dismissed that premature appeal for want of jurisdiction because the district court had not yet ruled on the motion at issue. *Jones v. Heslin*, 587 S.W.3d 134, 136-37 (Tex. App.—Austin 2019, no pet.).

The district court then held a hearing on Appellants' still-pending TCPA motion to dismiss and Heslin's motion for sanctions. At the hearing, Appellants acknowledged that they never responded to discovery and confirmed their agreement to stipulate, for purposes of the TCPA motion, that all of the factual allegations in Heslin's pleadings are true. Appellants' counsel further explained that "it really comes down to whether or not the Court finds that what the defendants are alleged to have done is protected expressions of opinion or alleged statements of fact." The district court granted Heslin's motion for sanctions and ordered that "pursuant to Rule 215.2(b)(3), the matters regarding which the August 31, 2018 order was made (Plaintiff's

2

burdens in responding to Defendants' TCPA Motion) shall be taken to be established in favor of Plaintiff for the purposes of the TCPA Motion." That is, under the district court's order, Heslin has met his burden to establish a prima facie case for defamation under the TCPA. In the same order, the district court denied the TCPA motion, specifying that the motion would have been denied even without taking the Rule 215.2(b)(3) sanctions into account. Appellants assert on appeal that the district court erred in denying their motion to dismiss. However, Appellants do not complain on appeal about the sanctions order. In fact, neither their brief nor their reply mention their stipulation to the facts alleged in Heslin's pleadings nor the sanctions awarded by the district court. Heslin responded, arguing that (1) this appeal is rendered frivolous by the unchallenged contempt sanctions establishing all the matters contained in Heslin's court approved written discovery (the subject of the August 31, 2018 order) and (2) even in the absence of the sanctions, Heslin met his burdens under the TCPA to survive dismissal. Heslin has also moved for sanctions in this Court under Texas Rule of Appellate Procedure 45, arguing that Appellants' appeal is frivolous "for several reasons," including the fact that Appellants' brief ignores the existence of the Rule 215 sanctions establishing discovery responses in Heslin's favor.

## ANALYSIS

Generally, "[r]eviewing a TCPA motion to dismiss requires a three-step analysis." *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). As a threshold matter, the moving party must show by a preponderance of the evidence that the TCPA properly applies to the legal action against it. Tex. Civ. Prac. & Rem. Code § 27.005(b). If the moving party meets that burden, the nonmoving party must establish "by clear and specific evidence a prima facie case for each

essential element of the claim in question." *Id.* § 27.005(c). If the nonmoving party satisfies that requirement, the burden shifts back to the moving party to prove each essential element of any valid defense by a preponderance of the evidence. *Id.* § 27.005(d).

In determining whether a legal action should be dismissed under [the TCPA], the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). We review de novo whether each party carried its assigned burden. *Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.).

Although in their initial brief Appellants argue extensively that the TCPA applies, Heslin does not dispute the applicability of the TCPA. Appellants' brief also argues at length that Heslin has not established a prima facie case for defamation or defamation per se. However, Appellants' reply brief acknowledges that the Rule 215 discovery sanction "relieves [Heslin] of the burden . . . under Tex. Civ. Prac. & Rem. Code §27.005(c)." In other words, Appellants concede that the effect of the district court's unchallenged sanctions order is that Heslin has met his burden to establish a prima facie case for each essential element of defamation and defamation per se. Therefore, Appellants are proceeding solely "under Tex. Civ. Prac. & Rem. Code §27.005(d)," to determine whether they established a valid defense to Heslin's claims. We therefore assume the TCPA applies and consider, in light of Appellants' stipulation to the truth of all facts asserted in Heslin's pleadings and the sanctions imposed by the district court, whether Appellants proved each essential element of a valid defense by a preponderance of the evidence.

**Statute of Limitations**

Appellants first assert the one-year statute of limitations as a defense "to the extent that Heslin's claims are based on any alleged 'long history' of defamatory statements." Although Heslin's pleadings and brief contain Appellants' "history" of statements regarding the death of Heslin's son as background and to show knowledge of falsity or Appellants' intent, the statements that serve as the basis for the current suit were made in two broadcasts:  one in June 2017 and the other in July 2017.  Heslin filed suit in April 2018, and Appellants seem to acknowledge that the broadcasts made in summer of 2017, if they are defamatory "in and of themselves," may serve as the basis of a timely filed claim for defamation.  Having conceded that, for the purposes of the TCPA motion, Heslin established a prima facie case for defamation as to the statements made in the summer of 2017, Appellants are not entitled to dismissal based on the statute of limitations.

**Timely Requesting a Correction**

In their second alleged defense on appeal, Appellants argue that Heslin was required to seek a correction "not later than the 90th day after receiving knowledge of the publication" in order to recover exemplary damages.  Appellants do not present any argument or evidence regarding when Heslin learned of the broadcasts, though they state that he requested a correction on April 11, 2018.  Relying on an affidavit attached to his petition, Heslin argues that he learned of the broadcast during the first week of April 2018, shortly before requesting a correction.  Because Appellants identify no evidence as a basis for their argument that Heslin failed to timely request a correction, they have not met their burden under the TCPA to prove each element of this defense by a preponderance of the evidence, and are therefore not entitled to dismissal.

**Protected Statements of Opinion**

Appellants' third defense is that their statements were opinions.  By agreeing that Heslin established his prima facie case for defamation, as discussed above, which includes the element of publishing a "false statement of fact," Appellants seem to have already acknowledged they made at least one false statement of fact.  *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 380 (Tex. 2019) (listing elements of defamation).  However, without addressing any particular statements alleged as the basis of Heslin's claims, Appellants argue, generally, that their statements are constitutionally protected expressions of opinion, rather than statements of fact.  "Whether a statement is an opinion is a question of law." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018).  "And, like the determination whether a publication is false and defamatory, the determination whether a publication is an actionable statement of fact or a protected expression of opinion depends upon a reasonable person's perception of the entirety of the publication." *Vice v. Kasprzak*, 318 S.W.3d 1, 18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Bentley v. Bunton*, 94 S.W.3d 561, 580 (Tex. 2002)).  To distinguish between fact and opinion, the Texas Supreme Court has determined that we are to use *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), as our guide.  *Bentley*, 94 S.W.3d at 579.  The *Milkovich* court declined to develop an unnecessary and artificial distinction between opinion and factual assertions.  *Id.* at 579-80; *see Milkovich*, 497 U.S. at 19.  The Texas Supreme Court extrapolated from *Milkovich* the following principles that apply in determining whether a statement is one of opinion or fact: (1) the statement must be provable as false, at least "where public-official or public-figure plaintiffs [are] involved"; (2) constitutional protection is afforded to "statements that cannot 'reasonably be interpreted as stating actual facts'" in order to assure "that public debate will not suffer for lack of 'imaginative expression' or . . . 'rhetorical

hyperbole'"; (3) "where a statement of 'opinion' on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth"; or if the statement involves a private figure on a matter of public concern, the "plaintiff must show that the false connotations were made with some level of fault"; and (4) the statements must be given "enhanced appellate review" to assure that these determinations are made in a manner that does not "constitute a forbidden intrusion" into free speech. *Bentley*, 94 S.W.3d at 580.

We note that in Appellants' brief and reply brief, they rely on the Texas Supreme Court's opinion in *Carr v. Brasher*, 776 S.W.2d 567 (Tex. 1989), to argue that their statements constitute opinions rather than facts. However, as the Texas Supreme Court observed in *Bentley*, *Carr* was decided without the benefit of guidance from the United States Supreme Court's decision in *Milkovich*. *Bentley*, 94 S.W.3d at 579 n.36. Both *Bentley* and *Milkovich* are cited in Appellant's brief for other propositions, but these precedents are absent from Appellants' arguments regarding whether Appellants' statements are actionable. *Carr* differed from *Milkovich* in that *Carr* stated that "all assertions of opinion are protected by the first amendment of the United States Constitution and article I, section 8 of the Texas Constitution," 776 S.W.2d at 570, while *Milkovich* refused to make that bright-line distinction on the ground that such an interpretation would "ignore the fact that expressions of 'opinion' may often imply an assertion of objective fact," *Milkovich*, 497 U.S. at 19. Even under *Carr*, false statements of fact (that are otherwise defamatory, as has already been established for purposes of this TCPA motion) would be actionable. *See Carr*, 776 S.W.2d at 570.

To determine whether the two broadcasts at issue contained solely protected statements of opinion, we briefly review some of the statements made in each broadcast.  The June broadcast featured Shroyer, an Infowars reporter, commenting on Heslin's statement about holding his deceased son:

> Neil Heslin, a father of one of the victims, during the interview described what happened the day of the shooting and basically what he said, the statement he made, fact checkers on this have said cannot be accurate.  He's claiming that he held his son and saw the bullet hole in his head. That is his claim. Now, according to a timeline of events and a coroner's testimony, that is not possible.

Shroyer further comments: "You would remember if you held your dead kid in, in your hands with a bullet hole. That's not something that you would just misspeak on.  So let's roll the clip first, Neil Heslin telling Megyn Kelly of his experience with his, with, uh, with his kid."  The broadcast then shows a clip of Heslin telling Megyn Kelly about how his son was murdered at Sandy Hook Elementary and that he held Jesse "with a bullet hole though his head."  Following that clip, Shroyer stated that Heslin was "making a pretty extreme claim that would be a very thing vivid in your memory, holding his dead child.  Now here is an account from the coroner that does not cooperate with that narrative."  At that point, the broadcast shows a clip of a person stating

> We did not bring the bodies and the families into contact.  We took pictures of them, of their facial features.  It's easier on the families when you do that.  There is a time and a place for up close and personal in the grieving process, but to accomplish this, we felt it would be best to do it this way.  You can control the situation depending on your photographer, and I have very good photographers.

In the July broadcast, Alex Jones states that he will play a video that "pointed out an anomaly" "concerning Sandy Hook."  Before playing that video, Jones questioned the honesty of the media, then asked, regarding the events and reporting on Sandy Hook:

> Is there a blue screen where Anderson Cooper's face disappearing?  Are there kids going in circles in the video shots?  Did they hold back the helicopters?  Did they have port-a-potties there in an hour and a half? Did they run it like a big PR operation?  Do they get all these conflicting stories in the media? Absolutely. . . . I'm questioning known liars in the media.

He then introduces the clip of Shroyer from the June broadcast where Shroyer plays the clip of Heslin followed by what Shroyer identifies as a clip of the coroner, commenting that Heslin "needs to clarify" the "anomaly."  Following the Shroyer clip, Jones stated:

> you've got CNN and MSNBC both with different groups of parents and the coroner saying we weren't allowed to see our kids basically ever, what they sound like they're saying, but we see a father, a grieving father saying that he dropped him off with a book bag, got him back in a body bag. . . . we need to get clarification on what went on, and I couldn't ever find out.  The stuff I found was they never let them see their bodies.

In context, at least some of Shroyer's statements in the June broadcast, including the statement "according to a timeline of events and a coroner's testimony, [Heslin having held his son's body] is not possible," are verifiable statements of fact challenging the veracity of Heslin's statement that he held his son's body.  Likewise, at least some of Jones's comments, including the series of questions about the circumstances surrounding the events and reporting on Sandy Hook and his statement that "they never let them see the bodies," are statements of fact that could be proven false and that challenge Heslin's account of events.  Thus, Appellants have not established by a

preponderance of the evidence a defense that their statements were constitutionally protected opinions, and they are not entitled to dismissal based on this defense.

**Substantial Truth Doctrine**

Appellants assert a statutory substantial truth doctrine as their fourth defense. "[M]edia outlets that accurately report allegations made by a third party about matters of public concern can assert the truth as a defense." *Hall*, 579 S.W.3d at 380 (citing Tex. Civ. Prac. & Rem. Code § 73.005(b)). Appellants assert that the June broadcast reported and commented on third-party allegations, and they argue that faithfully reiterating third-party allegations renders Appellants' statements "substantially true," regardless of the actual facts surrounding Sandy Hook. However, in context, some of the comments made by Shroyer and Jones were independent statements of fact that disputed Heslin's account of the events at Sandy Hook and whether he held his son's body. In addition, by stipulating to the truth of the facts asserted in Heslin's pleading, Appellants have stipulated that Shroyer's report was "manifestly false" and that Jones was "lying." In other words, they have stipulated that they made false statements. They have also acknowledged that Heslin has established his prima facie case for defamation, which included a showing that Appellants' statements were false. *See Hall*, 579 S.W.3d at 377 (listing elements of defamation). Moreover, the unchallenged discovery sanctions relieved Heslin of his burden under the TCPA motion with regard to matters discussed at the August 31, 2018 order, which included discovery regarding Appellants' "factual assertions," and a request for admission to Shroyer asking that he admit he "had no legitimate basis to claim it was impossible for Neil Heslin to have held his dead son and saw a bullet wound to his forehead."

Under the circumstances, Appellants are not entitled to dismissal based on the defense of substantial truth in reporting third-party allegations.

**Fair Comment Privilege**

Appellants' fifth defense is the fair comment privilege. "The fair comment privilege is an affirmative defense to a defamation action extending to publications that are 'reasonable and fair comment on or criticism[s] of . . . matter[s] of public concern published for general information.'" *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (quoting Tex. Civ. Prac. & Rem. Code § 73.002(a), (b)(2)). "'[I]f a comment is based upon a substantially false statement of fact the defendant asserts or conveys as true, the comment is not protected by the fair comment privilege.'" *Id.* (quoting *Neely v. Wilson*, 418 S.W.3d 52, 70 (Tex. 2013)). In light of our holdings above and conclusion that Appellants have stipulated that their statements were false, Appellants are not entitled to dismissal based upon the fair comment privilege.

**Liability of Infowars, LLC**

As a final defense, Appellants urge that Infowars, LLC, is not liable for the defamation "based on undisputed facts" because it "does not own or operate the domain name or website located at https://www.infowars.com, where the publications originated"; it has never employed Jones or Shroyer; and it never had authority or control over the content of the broadcasts. In response, Heslin asserts that this Court has previously determined that Infowars, LLC, is a proper party based on evidence that is identical to the evidence in this record. *See Infowars, LLC v. Fontaine*, No. 03-18-00614-CV, 2019 Tex. App. LEXIS 9303, 2019 WL 5444400, at *4-8 (Tex. App.—Austin Oct. 24, 2019, pet. filed) (mem. op.) (determining, based

11

on the same evidence submitted in this case, that appellee "has established by clear and specific evidence the minimum quantum of evidence necessary to support a rational inference that Infowars, LLC is a proper defendant").  The record in *Fontaine*, as here, contains a document entitled "INFOWARS LLC, TERMS OF USE & PRIVACY POLICY" (Terms of Use), which contains Infowars.com's terms of service.[2]  We conclude, as we did in *Fontaine*, that the Terms of Use show that users of Infowars.com initiated a relationship with Infowars, LLC, and that Infowars, LLC, was involved in the website's operation.  *See id.* at *7-8. As a result, we conclude that Heslin has established by clear and specific evidence the minimum quantum of evidence necessary to support a rational inference that Infowars, LLC, is a proper defendant. However, even without considering the Terms of Use, we would nonetheless reach the same conclusion based on the unchallenged discovery sanctions.  Heslin submitted a request for admission that as of the date of the June broadcast "InfoWars, LLC had the right to direct or control" Shroyer's work.  He also submitted a request for admission to Infowars, LLC, asking it to admit that (1) it "was involved in the creation, research, editing, marketing, funding, staffing, distribution, or publication of the" June broadcast; (2) it "possesses intellectual property rights and copyright over any part of the" June broadcast; and (3) it "has the authority to remove content from InfoWars.com if InfoWars, LLC determines that the content violates the rights of others or is not appropriate for the website."  Under the sanctions imposed by the district court, these requests are admitted for purposes of the TCPA motion.  These admissions contradict Appellants' argument that Infowars, LLC, lacked control or authority over at least the June broadcast.  We conclude that Infowars, LLC, is not entitled to dismissal for not being liable

---

[2] Appellants assert that they objected to the Terms of Use as irrelevant because the Terms of Use do not bear on whether Appellants' statements are defamatory.  The district court has not ruled on this objection.

"based on undisputed facts."  Having overruled Appellants' issues relating to their defenses, we next address Heslin's motion for sanctions.

**Sanctions**

Heslin contends this appeal is frivolous and seeks $22,250 for the amount of attorney's fees incurred in defending against the appeal and moving for sanctions.  "If the court of appeals determines that an appeal is frivolous, it may—on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages."  Tex. R. App. P. 45; *see Caldwell v. Zimmerman*, No. 03-17-00273-CV, 2017 Tex. App. LEXIS 10010, *8 (Tex. App.—Austin Oct. 26, 2017, pet. denied) (mem. op.) ("The decision to grant appellate sanctions is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation.").  "To determine whether an appeal is frivolous, we apply an objective test."  *Hunt v. CIT Grp./Consumer Fin., Inc.*, No. 03-09-00046-CV, 2010 Tex. App. LEXIS 2767, at *27 (Tex. App.—Austin Apr. 15, 2010, pet. denied) (mem. op.) (citing *Smith v. Brown*, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied.  We review the record from the advocate's viewpoint and decide whether he had reasonable grounds to believe the judgment could be reversed.  *Id.*  Although bad faith is not dispositive in deciding whether an appeal is frivolous, the presence of bad faith may be relevant to determining the amount of the sanction.  *Id.*

In addition to arguing that Appellants' brief makes a host of factual misrepresentations, Heslin asserts that Appellants' omission of the "critical" fact of the existence of unchallenged discovery sanctions in the district court warrants sanctions here because the district court sanctions had a "dispositive effect."  He further observes in his reply brief that

Appellants' brief "addresses every element of Heslin's burdens as if the discovery misconduct never happened."  Rather than mentioning only the issues before this Court, Appellants' brief seeks to relitigate issues resolved by the district court that remain unchallenged on appeal, such as Heslin's burden to establish a prima facie case for defamation.  We agree with Heslin that this appeal was frivolous.  Our reasons include that Appellants stipulated to the truth of the facts contained in Heslin's pleadings, Appellants incurred a discovery sanction ordering Heslin's burdens in responding to Defendants' TCPA Motion established in Heslin's favor for the purposes of the TCPA Motion, and Appellants presented arguments that lacked legal merit, including those based on caselaw that had been identified as outdated in another case they cited. Accordingly, we conclude Appellants lacked reasonable grounds to believe the judgment could be reversed.  Although not dispositive, we note that most of Appellants' brief addresses issues outside the scope of the appeal, Appellants' brief does not completely address the issues before the Court, and Appellant's brief fails to mention the discovery sanctions.  These factors favor awarding Heslin the fees he has requested.

## CONCLUSION

We affirm the district court's dismissal of Appellants' motion to dismiss, and we grant Heslin's motion for sanctions and award him $22,250 for attorney's fees.

_____
Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed

Filed:   March 25, 2020