# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| **Alexander E. Jones,** | § | Case No. 22-33553 (CML) |
| | § | |
| Debtor. | § | |
| | § | |

| | § | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| **Free Speech Systems, LLC** | § | Case No. 22-60043 (CML) |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |

**TRUSTEE'S <u>EXPEDITED</u> MOTION FOR APPROVAL OF AND AUTHORITY TO COMPROMISE PURSUANT TO BANKRUPTCY RULE 9019**

> This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.
>
> Represented parties should act through their attorney.
>
> Expedited relief has been requested. If the Court considers the motion on an expedited basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the expedited consideration is not warranted, you should file an immediate response.
>
> There will be a hearing on this Motion on January 23, 2025 at 9:00 a.m. [Central Standard Time] before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, Courtroom 401, 515 Rusk, Houston, TX 77002.

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

  Christopher R. Murray, the Chapter 7 Trustee (the "<u>Trustee</u>") for the bankruptcy estate

("<u>Estate</u>") of Alexander E. Jones ("<u>Jones</u>" or the "<u>Debtor</u>"), files this expedited motion (the

1

"Motion") requesting entry of an order approving the compromises described herein and in the proposed order filed herewith (the "Settlement") by and among the Trustee on behalf of the Estate, Free Speech Systems, LLC ("FSS"), and Elevated Solutions Group, LLC ("ESG", together with the Estate and FSS, the "Settling Parties") pursuant to Federal Rule of Bankruptcy Procedure 9019.

### NOTICE OF HEARING / HEARING INSTRUCTIONS

> There will be a hearing on this Motion on January 23, 2025 at 9:00 a.m. [Central Standard Time] before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, Courtroom 401, 515 Rusk, Houston, TX 77002.
>
> This is a hybrid hearing. Parties may participate and attend this hearing remotely by telephone and video conference or in-person.
>
> Audio for remote participation is conducted by phone, Dial-in Number: 832-917-1510, Conference ID: 590153. Audio connection by phone is required for all video participants. Video participation is conducted through GoToMeeting at: https://www.gotomeet.me/JudgeLopez. Additional instructions, rules, and/or procedures on participation may be found on the Court's homepage at: United States Bankruptcy Judge Christopher M. Lopez | Southern District of Texas.

### I. JURISDICTION

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A),(B),(C),(E), and (O). Pursuant to applicable authority, the Court has constitutional authority to enter a final order with respect to this Motion.

### II. BACKGROUND

**A. The Bankruptcy Cases of the Debtor and FSS**

2. FSS was formed on November 16, 2007. Prepetition, Jones was its sole member and owned 100 percent of the membership interests in FSS. On July 29, 2022 (the "FSS Petition Date"), FSS filed its voluntary petition for relief under chapter 11 subchapter V of the Bankruptcy Code (the "FSS Case", pending as Case No. 22-60043).

2

3. For reasons stated on the record at a hearing held on June 14, 2024, the Court entered an order dismissing (the "Dismissal Order") the FSS Case [*See* FSS Case, Docket Nos. 955 and 956]. In the Dismissal Order, the Court expressly retained jurisdiction over various matters and pending adversary proceedings in the FSS Case, including but not limited to *Elevated Solutions Group, LLC v. Free Speech Systems LLC, et al.*, pending as Adversary Proceeding No. 24-03038 ("ESG Adversary").

4. On December 2, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Jones Case") as an individual debtor. The Debtor continued managing his assets as debtor and debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code until the Court entered its *Order Converting Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code* ("Conversion Order", Jones Case Docket No. 708] on June 14, 2024 (the "Conversion Date").

5. On the Conversion Date, Christopher R. Murray was duly appointed as the Chapter 7 Trustee in the Jones Case.

6. On September 25, 2024, the Court entered its *Order Supplementing Order Dismissing Case* [FSS Case, Docket No. 1021] (the "Supplemental Dismissal Order") in furtherance of the Dismissal Order to clarify that, as of the date of the Dismissal Order, all property of the bankruptcy estate of FSS vested in the Jones bankruptcy Estate as property of that Estate pursuant to 11 U.S.C. § 541 and is subject to the control of the Trustee. In the Supplemental Order, the Court also authorized the Trustee to operate FSS pursuant to 11 U.S.C. § 721 [FSS Case, Docket No. 1021]. The Debtor remains an employee of FSS.

**B. The ESG Adversary Proceeding**

7. On March 8, 2024, while the FSS Case was still pending as a chapter 11 case, ESG filed its original *Complaint* ("Complaint")[ESG Adversary Docket No. 1] against defendants, FSS and CMC Consulting, LLC ("CMC"), initiating the ESG Adversary. In its Complaint, ESG asserts claims

3

against: (i) <u>FSS</u> for breach of contract, tortious interference with existing contract, contempt, and unjust enrichment; and (ii) <u>CMC</u> for breach of contract and accounting. ESG also asserted a right to recover exemplary damages, attorneys' fees, expenses, and pre- and post-judgment interest.

8. While there are many details set forth in the parties' pleadings, the essence of the disputes in the ESG Adversary is straightforward:

   a. <u>First</u>, before the FSS Petition Date, ESG entered into a professional services agreement to design, produce, warehouse, and deliver to customers certain collectible coins (the "<u>Patriot Collectibles</u>") marketed and sold by FSS through its e-commerce platform. ESG incurred all the front end-costs of designing, producing, warehousing, and delivering the Patriot Collectibles sold on the FSS platform. In exchange for providing these services, FSS agreed to pay ESG a percentage of the net sales generated by the Patriot Collectibles. ESG alleged in its Complaint that FSS still owes ESG payment in connection with the sale of the Patriot Collectibles.

   b. <u>Second</u>, after the FSS Petition Date, ESG and FSS entered into a professional services agreement pursuant to which ESG was to manage the manufacture, marketing and accounting for a line of supplements (the "<u>Platinum Supplements</u>"). In exchange for providing such professional services, ESG was entitled to receive a percentage of the net sales generated from the sale of Platinum Supplements through the FSS e-commerce platform. A dispute arose over payment delays while FSS was still operating as a chapter 11 debtor-in-possession in the FSS Case. In an effort to resolve the existing payment issues and to set a clear framework for payments and sales reporting going forward, ESG and FSS entered into and this Court approved a *Joint Stipulation and Agreed Order Resolving Distribution of Platinum Products Sales Proceeds* ("<u>Platinum Stipulation</u>")[FSS Case Docket No. 729]. Missed payments and delayed reporting persisted, which is one of the reasons ESG filed its Complaint in the ESG Adversary. ESG alleged in its Complaint that FSS still owes ESG payment for Platinum Supplements sold by FSS. Additionally, FSS has continued to sell Platinum Supplements since the Conversion Date and there are still unsold Platinum Supplements in FSS's inventory. The proposed Settlement would not only resolve payment disputes relating to Platinum Supplements that arose prior to conversion of the Jones Case and dismissal of the FSS Case but it would also allow for a final reconciliation of any amounts due to ESG from sales after the Conversion Date.

   c. <u>Third</u>, before the FSS Petition Date, ESG and CMC entered into a professional services agreement whereby CMC would broker relationships and contacts to ESG to aid ESG in identifying vendors looking to promote and sell their products on third party platforms. Pursuant to a separate professional services agreement between ESG and FSS, ESG would then facilitate agreements with those vendors (brokered to ESG by CMC) to market, sell, and deliver their products through the FSS e-commerce platform to FSS customers. CMC processed customer payments for the sale of these products. Pursuant to the professional service agreement with CMC, CMC was entitled to be paid a percentage of the sales proceeds from the sale of any such products by FSS through its e-commerce platform, with the balance of the sales proceeds being split between ESG and FSS under their

4

separate professional services agreement. In its Complaint, ESG requested an accounting from CMC and alleged that it was still owed payment from CMC and that FSS may have received an overpayment from the sales proceeds.

9. On April 15, 2024, FSS filed its *Answer and Affirmative Defenses* ("FSS Answer")[ESG Adversary Docket No. 6], responding to the allegations in ESG's Complaint and asserting various affirmative defenses to the claims asserted against it by ESG. FSS also asserted a right to recover attorneys' fees and costs against ESG pursuant to applicable law.

10. On April 22, 2024, CMC filed its *Answer and Counterclaim and Crossclaim for Interpleader* [ESG Adversary Docket No. 7] ("CMC Responsive Pleading") responding to the allegations in ESG's Complaint, asserting various affirmative defenses, asserting a counterclaim against ESG for interpleader of certain Disputed Funds (as defined herein), and asserting a cross-claim against FSS for interpleader of certain Disputed Funds. CMC represented that it had no interest in the Disputed Funds and that any disagreement over the right to the Disputed Funds existed solely between ESG and FSS.

11. On May 6, 2024, FSS filed its *Answer to Cross-Claims Filed by CMC Consulting, LLC* ("FSS Answer to CMC Cross-Claim")[ESG Adversary Docket No. 9].

12. On June 13, 2024, the Court entered its *Order* ("Registry Order")[ESG Adversary Docket No. 19] for CMC to deposit $449,827.73 in disputed funds to the Registry of the Court (the "Disputed Funds"). CMC deposited the Disputed Funds to the Registry of the Court pursuant to the Registry Order, where such Disputed Funds have remained on deposit pending a resolution of the competing claims of ESG and FSS. CMC claims no interest in or right to receive any portion of the Disputed Funds.

13. The next day, on June 14, 2024, the Court held hearings in the Jones Case and the FSS Case regarding the conversion and/or dismissal of each of those cases. After evidentiary hearings, the Court issued its oral ruling that the FSS Case would be dismissed with an order that would be forthcoming setting forth the terms of dismissal and the Court entered its Conversion Order in the

5

Jones Case converting it to a chapter 7 case. The Court retained jurisdiction over the ESG Adversary and ordered the Trustee, in his capacity as chapter 7 trustee for the Jones bankruptcy Estate, to take control of FSS cash.

14. Shortly after his appointment, the Trustee and his retained professionals began to investigate the disputes between the parties to the ESG Adversary, which are now the subject of this proposed Settlement.

15. Due to a lack of visibility into sales figures, inventory, and reporting required to be provided by CMC and/or FSS (respectively), ESG did not have sufficient information to precisely calculate its damages in the Complaint. To assist the Trustee in understanding the scope of the disputes with ESG, the Trustee's professionals spoke extensively with counsel for CMC and ESG, former FSS counsel, and financial professionals employed by FSS and the Debtor. The Trustee and his professionals also evaluated the contracts between ESG and CMC and ESG and FSS (respectively), the course of conduct between those parties, and their respective business/financial records (including sales reports, account ledgers, and inventory reports).

16. The Trustee has worked cooperatively and in good faith with ESG to exchange records and information to aid in a reconciliation of accounts between ESG and FSS. The Trustee and ESG engaged in extensive negotiations to resolve the disputes in the ESG Adversary, including reconciling past and current amounts due, as well as determining how to treat any contractual rights relating to the future sale of products or inventory that have not yet been sold but in which ESG claims an interest in the sales proceeds (the "ESG Inventory"). The Trustee believes the proposed Settlement, described herein, appropriately addresses and resolves all disputes between the Estate, FSS, and ESG and is in the best interests of the Estate and its creditors, FSS and its creditors, and other parties-in-interest.

6

17. The Trustee learned that FSS did not assert any claims against CMC in the ESG Adversary. The Trustee confirmed with counsel for CMC that it has no claims against FSS or the Estate relating to ESG Adversary and that CMC claims no interest in the Disputed Funds on deposit in the Registry of the Court. Thus, the only claims in the ESG adversary involving CMC are between ESG and CMC.

18. Subject to entry of an order approving the proposed Settlement, ESG and CMC have agreed to voluntarily dismiss any remaining claims between them in the ESG Adversary with prejudice pursuant to FED. R. CIV. P. 41 (made applicable by FED. R. BANKR. P. 7041). The form of the proposed order of dismissal has already been prepared and approved by ESG and CMC and will be filed in the ESG Adversary upon entry of an order approving the proposed Settlement. Upon entry of an order approving the proposed Settlement and the agreed dismissal order between ESG and CMC, all claims in the ESG Adversary will be disposed of and that proceeding can be closed by the Clerk of the Court.

19. The proposed Settlement will deliver a complete resolution of all disputes between ESG, the Estate, FSS, and CMC that are the subject of the ESG Adversary and will terminate the parties' respective rights and obligations under the existing professional services agreements and the Platinum Stipulation so that there will be no future disputes arising from the events and transactions that are the subject of the ESG Adversary. For these reasons and as set forth below, the Trustee believes that the proposed Settlement is fair and reasonable and in the best interests of the Estate and its creditors. The Trustee urges this Court to approve the proposed Settlement as set forth herein and in the proposed order filed with this Motion.

### III. THE PROPOSED SETTLEMENT

20. Subject to the Court's approval, the material terms of the proposed Settlement are as follows:

   a. **Settlement Payments.** The Trustee agrees to pay ESG $500,000 (the "Settlement Payment"), which amount shall be paid in two disbursements: (i) first, from a disbursement to ESG of the $449,827.73 (together with any accrued interest) on deposit in the Registry of the Court (the "Registry Disbursement"); and (ii) second, with any remaining balance to be paid by a cash payment from FSS assets in the Estate within 3 business days after ESG receives the Registry Disbursement.

   b. **Releases.** On behalf of FSS and/or the Estate, the Trustee hereby releases and waives any and all claims against ESG and anyone acting on its behalf and ESG hereby releases and waives any and all claims against the Estate, the Trustee, and/or FSS arising from or relating in any way to the events or transactions that are the subject of the ESG Adversary, the Platinum Stipulation, and/or the termination or rejection of the contracts and/or agreements between ESG and FSS effectuated by the Settlement. The Parties are authorized to execute any documents necessary to memorialize, effectuate, and exchange the mutual release of claims between the Trustee, the Estate, FSS, and ESG.

   c. **Dismissal of ESG Adversary.** Upon entry of an order approving the proposed Settlement, the ESG Adversary will be dismissed with prejudice. A separate joint agreed order of dismissal will be filed in the ESG Adversary to effectuate a voluntary dismissal of claims between CMC and ESG with prejudice and to dismiss CMC as a party in the ESG Adversary. At that point, the ESG Adversary will be completely resolved and the Clerk of the Court can close that case.

   d. **Platinum Stipulation.** Upon entry of an order approving the proposed settlement, all rights and/or obligations under the Platinum Stipulation shall terminate and any obligations thereunder shall be deemed fully satisfied and discharged.

   e. **Waiver of Rights in ESG Inventory and Termination/Rejection of Contracts.** Upon entry of an order approving the proposed settlement, ESG waives any interest in the ESG Inventory, including any claims or rights to receive to any further payments relating to the sale of any ESG Inventory. The contracts and/or agreements between the Parties that are the subject of the Adversary Proceeding and/or Platinum Stipulation are hereby terminated and/or rejected pursuant to 11 U.S.C. §365.

### IV. RELIEF REQUESTED

21. The Trustee believes that the proposed Settlement resolving the dispute with the Settling Defendants is in the best interest of the Estate, FSS, their creditors and all parties in interest

8

and, accordingly, files this Motion seeking entry of an order (i) granting this Motion; (ii) approving the Settlement; and (iii) granting all other relief that is appropriate under the circumstances.

## V. REQUEST FOR EXPEDITED CONSIDERATION

22. The Trustee seeks to resolve the disputes in the ESG Adversary in an effort to narrow the disputes amongst the various parties and to bring an end to protracted litigation relating to the FSS Case and the Jones Case. Resolving the disputes in the ESG Adversary will assist the Trustee in winding down the operations of FSS in furtherance of administration of the Jones Estate. The resolution of ESG's claims against FSS and/or the Estate and the disposition of the Disputed Funds held in the Registry of the Court is a crucial part of the administration of the Jones Estate, which includes the Estate's interest in FSS and its assets. In furtherance of the administration of the Jones Estate, the Trustee is also in the process of negotiating a sale of the FSS assets. The Trustee has other proposed settlements pending that will also aid in the expeditious administration of the Jones Estate and the winddown of FSS operations, which will be considered by the Court on an expedited basis on January 23, 2025. As such, the Trustee believes that expedited consideration of the Motion is warranted.

## VI. BASIS FOR RELIEF REQUESTED

23. Bankruptcy Rule 9019(a) authorizes settlements if they are "fair and equitable and in the best interest of the estate." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (citing *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). Courts consider the following factors when evaluating whether a compromise is fair and equitable:

a. The probabilities of success in the litigation, with due consideration for uncertainty in fact and law;

b. The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and

c. All other factors bearing on the wisdom of the compromise.

9

*Official Comm. of Unsecured Creditor v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997). In addition, under the rubric of the third, catch-all provision, the Fifth Circuit has identified two additional factors bear on the decision to approve a proposed settlement:

    a.    Whether the compromise serves "the best interests of the creditors, with proper deference to their reasonable views." *Id.* (internal citations omitted).

    b.    The extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion. *Id.* (internal citations omitted).

24. The movant bears the burden of establishing that the balance of the settlement factors warrant approval. However, that burden is not great. The movant need only show that the settlement falls within the "range of reasonable litigation alternatives." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *Cook v. Waldron*, 2006 WL 1007489, at *4 (S.D. Tex. Apr. 8, 2006). Moreover, the movant is not required to present a mini-trial or evidentiary hearing to adjudicate the issues being settled. The Court may give weight to the "informed judgments of the . . . debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

25. Based on a review and analysis of the proposed Settlement, the facts underlying the claims in the ESG Adversary, and after consultation with counsel, the Trustee has determined in his reasonable business judgment that entering into the proposed Settlement is in the best interest of the Estate, FSS, their creditors, and other parties in interest.

26. Given the risk inherent in further litigating the ESG Adversary, the current status of the Jones Case, and the funds available for distribution to creditors from FSS assets, the Trustee believes that the proposed Settlement is in the best interests of the Estate, FSS, their creditors, and parties in interest. The Settlement represents a good faith, extensively negotiated arm's length resolution of the disputes between the Settling Parties. Continued litigation of the ESG Adversary will

10

be time-consuming, costly, may result in additional claims against the Estate and/or FSS, and could potentially risk a scenario where there is no net return for creditors.

27. The Trustee believes that ESG would not likely prevail on its claim for exemplary damages, but the Trustee has determined that there are amounts due to ESG pursuant to the Platinum Stipulation and the professional services agreements between ESG and FSS, which may entitle ESG to recover attorneys' fees, costs, and interest if a judgment is entered in its favor. If ESG prevails on all of its claims against FSS, its actual damages could be as much as $650,000. Moreover, FSS continues to hold ESG Inventory, which could result in future claims against FSS and complicates the wind down of FSS operations, the sale of FSS assets, and ultimately the administration of the Jones Estate. The proposed Settlement prevents additional claims against FSS and/or the Estate and stops the accrual of fees and expenses that would be incurred if the current litigation continues or future litigation arises. The proposed Settlement promotes finality and a more efficient and expeditious administration of the Estate.

28. The Trustee believes the proposed Settlement constitutes a favorable resolution of the dispute with the Settling Defendants and certainly falls within the "range of reasonable litigation alternatives." *See Cook*, 2006 WL 1007489, at 4. Accordingly, the Trustee believes that the proposed Settlement is in the best interest of the Estate, FSS, their creditors and parties in interest and files this Motion seeking Court approval of the Settlement.

## PRAYER

WHEREFORE, the Trustee respectfully requests that the Court enter an order**:** (1) granting this Motion; (ii) approving the Settlement; and (iii) granting all other relief that is appropriate under the circumstances.

Dated: January 16, 2025.

Respectfully Submitted,

By: */s/ Erin E. Jones*
Erin E. Jones (TX 24032478)
**Jones Murray LLP**
602 Sawyer Street, Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Fax: (832) 529-3393
erin@jonesmurray.com

*and*

Joshua W. Wolfshohl (Bar No. 24038592)
Michael B. Dearman (Bar No. 24116270)
Jordan T. Stevens (Bar No. 24106467)
Kenesha L. Starling (Bar No.24114906)
**Porter Hedges LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jwolfshohl@porterhedges.com
mdearman@porterhedges.com
jstevens@porterhedges.com
kstarling@porterhedges.com

*Counsel for Christopher R. Murray, Chapter 7 Trustee*

**CERTIFICATE OF ACCURACY**

The undersigned hereby certifies that, to the best of my knowledge, the statements regarding the reasons expedited relief has been requested are the true and accurate reasons expedited relief was requested. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Christopher R. Murray*
Christopher R. Murray

**CERTIFICATE OF SERVICE**

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in the case on January 16, 2025.

*/s/ Erin E. Jones*
Erin E. Jones