# EXHIBIT 4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Free Speech Systems, LLC | § | CASE NO. 22-60043 |
| | § | |
| Debtor | § | |
| | § | |
| ELEVATED SOLUTIONS GROUP, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| FREE SPEECH SYSTEMS, LLC, | § | |
| and CMC CONSULTING, LLC, | § | ADVERSARY NO. 24-_____ |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## COMPLAINT

**COMES NOW**, Elevated Solutions Group, LLC, and files this *Complaint,* and respectfully show the Court as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Elevated Solutions Group, LLC is a Texas limited liability corporation and may be served through counsel.

2. Defendant CMC Consulting, LLC is a California limited liability company and may be served through its registered agent Charles Cicack, 4548 Valley Spring Dr., Westlake, CA 91362.

3. Defendant Free Speech Systems, LLC is the Debtor and may be provided notice and served through its registered agent John C. Carsey, 1100 Guadalupe St., Austin, TX 78701.

## FACTS

4. Elevated Solutions Group LLC ("**ESG**") is a Texas Veteran owned and operated management and operations company. ESG conducts business optimization and business development for companies of all sizes, with a focus on brand development, branding and marketing strategies, E-commerce strategies, website development, logistics, and strategic affiliate marketing agreements.

5. On July 29, 2022 (the "Petition Date"), Free Speech Systems LLC filed its voluntary Subchapter V Chapter 11 petition.

### PLATINUM PRODUCTS

6. Effective November 4, 2022 the Debtor entered into a *Professional Services Agreement* with the Plaintiff, ESG, pursuant to which ESG was to manage the manufacture, market and account for products referred to as the Platinum Supplement Affiliate Program consisting of three (3) products (the "**Agreement**"). Exhibit 1

7. Payment for the services provided by ESG, as provided in the Agreement were 20% of Net Sales to Free Speech and 80% to ESG.

8. ESG performed their functions by developing, producing and delivering the products as contracted for.

9. Payment issues developed between ESG and Free Speech during the course of the Agreement resulting in a Stipulation entered by the Court on September 27, 2023 (the "**Stipulation**"). Exhibit 2

10. Pursuant to the Stipulation, Free Speech was to immediately deliver $105,824.24 to ESG with an obligation to then continue weekly distributions thereafter. Also pursuant to the Stipulation, existing inventory was to be sold and would not be replenished.

### CMC AGREEMENT

11. On or about March 9, 2022, ESG and CMC Consulting LLC ("**CMC**") entered into a *Professional Services Agreement – Affiliate Revenue Share* (the "**CMC Agreement**"). Exhibit 3

12. Contemporaneously, ESG and Free Speech entered into a *Professional Services Agreement-CMC Affiliate Program Revenue Share* (the "**FS/ESG Agreement**"). Exhibit 4

13. Each contract was a separate agreement, with the only common party to each being ESG. With respect to the identified transactions, Free Speech and CMC had no contractual relationship.

14. Pursuant to the CMC Agreement, CMC would *broker* relationships and contacts to ESG to effectively pair ESG with various vendors seeking to promote and sell various products. In return, ESG would utilize its relationship with Free Speech pursuant to its FS/ESG Agreement to facilitate and manage the marketing and delivery of these products and to provide other services as necessary through the Free Speech platform.

15. Pursuant to the agreements, ESG would utilize the contacts provided by CMC, identify and package a proposal of products and/or services to potentially be sold and delivered through the Free Speech platform. ESG would then propose these product packages to Free Speech for fit and profitability. Free Speech would then identify attractive relationships for marketing. ESG then managed the marketing and delivery of the identified products and/or services.

16. As compensation, and pursuant to the identified agreements, CMC would be responsible for the accounting and proceeds produced by the sale of products and/or services by each vendor resulting from the services of ESG; CMC was to

provide the accounting and payment on a regular basis to ESG pursuant to the contractual schedule; in return and after receipt of payment from CMC, ESG was to provide accounting and a portion of the revenue to Free Speech.

### PATRIOT COLLECTIBLES

17. On or about March 1, 2022, ESG and Free Speech entered into that certain *Professional Services Agreement-Patriot Collectibles Affiliate Program* (the "**Collectibles Agreement**").

18. Pursuant to the Collectibles Agreement, ESG would design and produce collectible coins for marketing and sale on the Free Speech Platform. ESG fronted all costs in designing, producing, warehousing and delivering the collectible coins sold on the Free Speech Platform.

19. Free Speech would be paid a percentage of the Net Sales of the collectible coins.

### POST-PETITION ADOPTION

20. On or about November 30, 2022, Free Speech and ESG entered into that certain Professional Services Agreement-Affiliate Marketing MOU (the "**MOU**"). Exhibit 6.

21. Pursuant to the MOU, ESG would continue to provide the services contemplated in the FS/ESG Agreements at a rate of 30% of Net Sales to Free Speech.

## CAUSES OF ACTION

### BREACH OF CONTRACT AND ACCOUNTING (CMC)

22. ESG and CMC entered into a valid contract, *i.e.*, the CMC Agreement.

23. ESG has performed all of its obligations required of them pursuant to the CMC Agreement. The CMC Agreement did not contain any conditions precedent, however if it is determined that such conditions exist in the CMC Agreement, all have been satisfied.

24. ESG has performed its obligations pursuant to the CMC Agreement.

25. CMC has failed to comply with the CMC Agreement in material ways, including failing to pay funds and proceeds due and owing to ESG.

26. The breach of the Agreement by CMC has damaged ESG monetarily.

27. Pursuant to the terms of the CMC Agreement, CMC owes ESG in excess of $495,000.00.

28. Due to the intentional and material breach of the CMC Agreement by CMC, CMC is obligated to pay ESG for its reasonable attorney fees and expenses for the prosecution of this adversary.

29. Due to the contractual relationship between ESG and CMC and the failure of CMC to account for funds currently owing to ESG, ESG is entitled to a full accounting related to the contractual relationship between the parties.

**TORTIOUS INTERFERENCE WITH EXISTING CONTRACT (FREE SPEECH)**

30. ESG has a valid and binding contract with CMC (the CMC Agreement) that provided for, among other things, timely accounting and payment of funds due.

31. Free Speech intentionally and willfully interfered with that contract by pressuring and causing CMC to withhold funds and accounting rightfully owed to ESG.

32. By its actions and words, Free Speech caused CMC to withhold payment and continues to cause CMC to withhold payment of funds due and payable. The actions of Free Speech induced CMC to breach its contract with ESG by causing them to withhold payments due and owing.

33. The interference of Free Speech with the CMC contract has caused serious and material damage to ESG.

34. ESG is entitled to its actual damages for the interference in amount not less than $495,000.00.

35. Due to the intentional and willfull actions of Free Speech in inducing CMC to breach its contract with ESG, ESG is entitled to exemplary damages.

36. Due to the actions of Free Speech, ESG is entitled to recover its actual and necessary attorney fees and costs associated with the prosecution of this action.

**BREACH OF CONTRACT/CONTEMPT (FREE SPEECH)**

37. ESG and Free Speech entered into a valid contract referred to above as the Agreement, further modified by the Stipulation.

COMPLAINT

38. ESG has performed its obligations pursuant to the Agreement and the Stipulation.

39. Free Speech has failed to comply with the Agreement and Stipulation in material ways, including failing to provide both timely and accurate accounting, and pay funds and proceeds due and owing to ESG.

40. The breach of the Agreement and Stipulation by Free Speech has damaged ESG monetarily.

41. Pursuant to the terms of the CMC Agreement, CMC owes ESG in excess of $22,000.00.

42. Due to the intentional and material breach of the Agreement by Free Speech, Free Speech is obligated to pay ESG for its reasonable attorney fees and expenses for the prosecution of this adversary.

43. In addition, the obligations of Free Speech are contained in the Stipulation which was signed and entered by the Court as an order of the Bankruptcy Court.

44. The terms and conditions of the Stipulation are clear and mandated Free Speech to make regular accounting disclosures and payments to ESG.

45. Free Speech has failed to comply with the order of the Court.

46. Free Speech should be held in contempt of the order and required to pay sanctions in the amount of the reasonable attorney fees and expenses incurred by ESG seeking enforcement and compliance with the Stipulation.

47. In addition, the Court should impose a daily sanction for Free Speech's continued contempt of the Stipulation.

## BREACH OF CONTRACT - RETURN OF ESG FUNDS AS UNEARNED AND UNJUSTLY RETAINED (FREE SPEECH)

48. ESG and Free Speech entered into a valid contract referred to above as the Collectibles Agreement.

49. Pursuant to the Agreement, ESG designed, had minted and warehoused 9,750 certain silver collectible coins referred to as the Theodore Roosevelt "Man in the Arena" Custom Silver Round (the "Silver Coins").

50. Postpetition, Free Speech approached ESG regarding their cash flow/cash deposit issues.

51. In an attempt to support its customer, ESG agreed to advance distributions to Free Speech prior to the actual sale of the remaining inventory of the Silver Coins.

52. In October, 2022, ESG advanced $226,454.26 to Free Speech which accounted for the distributions on the Silver Coins not yet sold.

53. Through no fault of ESG, the then remaining inventory of Silver Coins were never sold.

54. Even though requested and demanded initially on 12 January 2023, Free Speech has failed and refused to return the remaining funds from the 4,000 units that went unsold, totaling $92,880.00.

55. The $92,880.00 was never earned by Free Speech and the funds remain property of ESG.

56. In the alternative, Free Speech owes ESG $92,880.00 for failure to comply with the Collectibles Agreement.

57. It would be unjust to allow Free Speech to retain the funds, having failed to properly market the coins, making it impossible to sell the coins.

58. ESG is entitled to also collect its reasonable attorney fees and expenses incurred in prosecuting this adversary.

**WHEREFORE**, Plaintiffs request the Court to enter judgment against CMC and Free Speech for funds due and owing, award exemplary damages and award ESG its attorney fees and expenses together with pre and post judgment interest, and for such other relief, at law or in equity, to which ESG may show itself entitled.

Dated:  March 8, 2024.

Respectfully submitted,

By:  */s/ Johnie Patterson*
Johnie Patterson
SBN#15601700
COUNSEL FOR PLAINTIFF

OF COUNSEL:
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208-1301
(713) 956-5577
(713) 956-5570 (fax)
**jjp@walkerandpatterson.com**

DALESSIO-000040

# PROFESSIONAL SERVICES AGREEMENT-IW PLATINUM SUPPLEMENT AFFILIATE PROGRAM

This Professional Services Agreement ("Agreement") is entered into as of **4 NOVEMBER 2022**, ("Effective Date"), by and between ELEVATED SOLUTIONS GROUP, LLC, ("Elevated" or "Consultant") and FREE SPEECH SYSTEMS LLC ("Free Speech" or "Client") (collectively herein Consultant and Client may be referred to as the "Parties.")

## RECITALS

A.     Free Speech has an existing market for certain Dietary Supplement Products.

B.     Free Speech has developed relationships within various industries to promote services and/or products and desires to participate in the IW PLATINUM SUPPLEMENT Affiliate Program.

C.     Free Speech desires to retain Elevated as an independent contractor to perform certain professional services, as specified in this Agreement, and Elevated desires to provide such services to Free Speech.

D.     The parties desire to enter into this Agreement to set forth the obligations and responsibilities.

In consideration of the mutual covenants contained herein and other good and valuable consideration, which is hereby acknowledged, the parties hereto agree as follows:

Services: Client hereby retains Consultant and Consultant hereby agrees to perform professional services as follows: facilitate and manage the direct communication, manufacturing, marketing, shipping, tracking, and accounting functions of the IW Platinum Supplement Affiliate Program. Elevated will work to pair Free Speech with various IW Platinum Dietary Supplement products as part of the IW Platinum Supplement Affiliate Program contained in Annex A of this agreement (See Annex A).

a.     The Services shall commence as of the effective date of this agreement. Sales shall commence in accordance with Annex A of this agreement upon delivery of the first set of IW Platinum Supplement products to the Free Speech shipping facility. Delivery of IW Platinum Supplement products to the Free Speech shipping facility do not constitute ownership of any kind by Free Speech, all products will remain owned by Elevated during the duration of this agreement. IW Platinum Supplement products delivered to the Free Speech shipping facility will be considered "Consignment Inventory" in accordance with Annex A of this agreement. Additionally, at no time should any IW Platinum Supplement products be removed or relocated from the Free Speech shipping facility without the prior consent of Elevated.

DALESSIO-000041

    b. Free Speech will supply weekly Affiliate Program reports directly to Elevated. These reports will include the following at a minimum: Number of IW Platinum Supplement units sold, Cost of Shipping of IW Platinum Supplement units sold, cost of Credit Card Processing Fees associated with IW Platinum Supplement units sold. These reports will be submitted on or before Friday of each week.

    c. Free Speech will execute weekly payouts from the IW Platinum Supplement Affiliate Program to Elevated in accordance with the IW Platinum Supplement Affiliate Program services contained in Annex A of this agreement (See Annex A). These weekly payouts will be submitted on or before Friday of each week.

**2.** <u>Term:</u> The term of this Agreement shall commence as of the Effective Date and shall continue in full force until terminated as provided herein.

**3.** <u>Compensation and Expenses:</u> Free Speech is authorized to deduct Credit Card Processing Fees (Not to Exceed 6%) and any wire transfer expenses from the IW Platinum Supplement Affiliate Program payout. Any profit share agreements will be split in accordance with "Annex A" of this agreement following the determination of "Net Sales". Net Sales will be determined after Free Speech deducts its related Credit Card Processing Fees and Elevated deducts its related Cost of Goods Sold fees. Free Speech will bill Elevated directly for any pro-rated Shipping Costs associated with the sale of any IW Platinum Supplement products. Any additional expenses must be communicated and mutually agreed upon by both parties. (See Annex A)

**4.** <u>Contractor's Representations:</u> Consultant hereby warrants and represents to the Client that: (i) Consultant has the experience, skill, and authority necessary to perform the Services, (ii) there is no actual or potential conflict of interest between the Services to be performed by Consultant under this Agreement and Consultant's business, financial or other interests, and Consultant shall immediately notify the Client of any actual or potential conflict of interest of which Consultant becomes aware during the term of this Agreement.

**5.** <u>Relationship of the Parties:</u> The Consultant under this Agreement is, and shall act as an independent contractor, and not as an agent, partner, or employee of Client. Nothing in this Agreement shall be construed to imply that Consultant its agents, officers or employees are employees of Client; or that this Agreement creates, in any manner, a partnership, joint venture, or other arrangement between Consultant and Client.

**6.** <u>Termination:</u> Either party may terminate this agreement with thirty (30) days prior written notice to the other. Termination of this Agreement will not eliminate any compensation owed to the Consultant at the time of termination as defined in the "Compensation and Expenses" or "Annex A" sections of this Agreement. In the event of a termination for any reason, Consultant shall only be entitled to the compensation provided for in the "Compensation and Expenses" or "Annex A" sections that has been earned. Consultant may suspend or terminate performance of Services for failure of Client to make payment hereunder in a timely manner.

DALESSIO-000041

**7.** Dispute Resolution. If a dispute arises of any kind under this Agreement the Client and Consultant shall first negotiate in good faith for a period of not less than thirty (30) days prior to taking any legal action. If a dispute cannot be resolved by negotiations of the Parties then either party may submit the dispute to binding arbitration. The prevailing party shall be entitled to recover from the other party all costs and expenses of suit, including attorney's fees reasonably incurred.

**8.** Limitation on liability. To the fullest extent permitted by Law and notwithstanding other provisions of this Agreement, in no event shall a Party be liable to the other Party, whether in contract, warranty, tort, negligence, strict liability, or otherwise, for special, indirect, incidental, multiple, consequential (including lost profits or revenues, business interruption damages and lost business opportunities), exemplary or punitive damages related to, arising out of, or resulting from performance or nonperformance of this Agreement.

**9.** Notices: Any notice of communication to be given under the terms of this Agreement shall be in writing and delivered in person or deposited in the United States Mail, postage prepaid, return receipt requested of by FEDEX overnight to the address in the signature block below. Notices will be effective upon receipt by the addressee.

**10.** Indemnification: Client shall indemnify, defend and hold harmless, Consultant, its parent and affiliates, and each of their officers, directors, employees, attorneys, sub-consultants, agents and successors and assigns (each an "Indemnified Party") from, for and against any and all claims, demands, suits, obligations, payments, liabilities, costs, fines, penalties, sanctions, taxes, judgments, damages, losses or expenses ("Loss") imposed by a third party upon Consultant or incurred in connection with a claim by a third party against the Consultant arising out of, relating to, or resulting from the Client's breach, or performance or non-performance of its obligations under this Agreement or Consultants work on the Property or association with Client (including reasonable attorneys' fees and costs). To the extent Consultant is required to participate in any third-party claims against Client in any legal proceedings, Consultant shall be compensated in accordance with this Agreement.

**11.** Interpretation: In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of authorship of any of the provisions of this Agreement. The headings and section titles contained in this Agreement are solely for convenience and do not constitute a part of this Agreement between the Parties, nor should they be used to aid in any manner in the interpretation of this Agreement.

**12.** Modification and Amendment: This Agreement shall not be altered, waived, or amended in any way, except in writing, signed by both Parties.

**13.** Counterparts/Electronic Delivery: This Agreement may be executed, and delivery of original signatures may be made in PDF format by electronic means, and in counterparts, all of which will be considered one and the same Agreement and will become effective when such counterparts have been signed and delivered, including by electronic means.

**14.** Severability: If any term, provision, or condition of this Agreement is held to be invalid, void, or unenforceable by a governmental authority and such holding is subject to no further appeal or judicial

DALESSIO-000043

review, then such invalid, void, or unenforceable term, provision or condition shall be deemed severed from this Agreement and all remaining terms, provisions and conditions of this Agreement shall continue in full force and effect. The Parties shall endeavor in good faith to replace such invalid, void or unenforceable provisions with valid and enforceable provisions which achieve the purpose intended by the Parties to the greatest extent permitted by law. If any provision of this Agreement is determined by any court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision will be stricken from this Agreement and the remainder of this Agreement will be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement.

**15.** No Waiver: No failure or delay on the part of a Party in exercising any of its rights under this Agreement or in insisting upon strict performance of provisions of this Agreement, no partial exercise by either Party of any of its rights under this Agreement, and no course of dealing, usage of trade or course of performance between the Parties shall constitute a waiver of the rights of either Party under this Agreement. Any waiver shall be effective only by a written instrument signed by the Party granting such waiver, and shall not operate as a waiver of, or estoppel with respect to, any subsequent failure to comply therewith. The remedies provided in this Agreement are cumulative and not exclusive of any remedies provided by law.

**16.** Entire Agreement: This Agreement contains the entire agreement and understanding between the Parties with respect to all of the subject matter contained in this Agreement, and merges and supersedes all prior agreements and representations by the Parties with respect to subject matter of this Agreement, whether written or oral.

**17.** Further Assurances: The parties hereby agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

**18.** Governing Law; Cost of Enforcement: This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

**19.** Headings; Construction: Headings or titles to sections or paragraphs of this Agreement are solely for the convenience of the parties and shall have no effect whatsoever on the interpretation of the provisions of this Agreement. All references to "section" or "sections" refer to the corresponding section(s) of this Agreement. All words used in this Agreement will be construed to be of such gender or number, as the circumstances require. Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms.

**20.** No Third-Party Beneficiaries: Nothing in this Agreement nor any action taken shall be construed to create any duty, liability or standard of care to any third party, no third party shall have any rights or interest, direct or indirect, in this Agreement or the Services, and this Agreement is intended solely for the benefit of the Parties. The Parties expressly disclaim any intent to create any rights in any third party as a third-party beneficiary to this Agreement or the Services.

Page **4** of **6**

DALESSIO-000044

**21.** Assignment:  This Agreement shall inure to the benefit of, and shall be binding upon, the successors and assigns of the Parties.  Neither Party may assign this Agreement or any right or delegate any duties of this Agreement without the prior written consent of the other Party.


IN WITNESS WHEREOF, this Professional Services Agreement has been executed as of the Effective Date.


ELEVATED SOLUTIONS GROUP, LLC    FREE SPEECH SYSTEMS, LLC

By: Joseph M. Dalessio    By: Patrick Magill
Its:  Manager    Its: Manager / CRO
Address: 706 W Ben White BLVD    Address: PO Box 19549
Bldg B, Ste 188, Austin TX 78704    Austin TX 78760

Page **5** of **6**

DALESSIO-000045

## PROFESSIONAL SERVICES AGREEMENT-IW PLATINUM SUPPLEMENT AFFILIATE PROGRAM

### ANNEX A

IW Platinum Supplement Affiliate Program Services and Compensation

1.  The initial sales launch of the IW Platinum Supplement Affiliate Program will consist of three (3) Dietary Supplement Products: 1 x Dietary Supplement supporting healthy testosterone levels, 1 x Dietary Supplement supporting the increase of lean muscle and a healthy libido, and 1 x Dietary Supplement supporting healthy pain relief. The profit share agreement on these initial three (3) products will be as follows:

    -   20% Profit Share of Net Sales paid to Free Speech every seven (7) days
    -   80% Profit Share of Net Sales paid to Elevated every seven (7) days

2.  Additional IW Platinum Supplement Affiliate Program Services and Compensation may be mutually agreed upon in writing through amendment to this agreement.

Modification and Amendment: Annex A of this agreement shall not be altered, waived, or amended in any way, except in writing, signed by both Parties.

IN WITNESS WHEREOF, this Professional Services Agreement has been executed as of the Effective Date.

ELEVATED SOLUTIONS GROUP, LLC      FREE SPEECH SYSTEMS, LLC

By: Joseph M. Dalessio               By: Patrick Magill
Its: Manager                         Its: Manager / CRO

Page 6 of 6

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 27, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 (Subchapter V) |
| | § | |
| **FREE SPEECH SYSTEMS, LLC,** | § | **Case No. 22-60043** |
| | § | |
| Debtor. | § | |
| ------------------------------------------------- | § | |
| In re: | § | |
| | § | |
| **ALEXANDER E. JONES,** | § | **Case No. 22-33553** |
| | § | |
| Debtor. | § | |

### JOINT STIPULATION AND AGREED ORDER RESOLVING DISTRIBUTION OF PLATINUM PRODUCTS SALES PROCEEDS

WHEREAS, Free Speech Systems, LLC (the "Debtor" or "FSS") and ELEVATED SOLUTIONS GROUP. LLC. ("ESG") are parties to that certain Professional Services Agreement – IW Platinum Supplement Affiliate Program (the "FSS/ESG Agreement"), pursuant to which ESG provides certain services regarding the sale of IW Platinum Supplements through FSS's sales channels; and

WHEREAS Alex Jones ("AEJ") and ESG entered into that certain Professional Services Agreement – Inforwars Platinum Dietary Supplement Product Line (the "AEJ/ESG Agreement"), pursuant to which specified products ESG would provide services in connection with the acquisition, marketing, sale and fulfillment of three specific dietary supplements purchased and paid for by AEJ.

WHEREAS FSS terminated the FSS/ESG Agreement effective on April 17, 2023;

WHEREAS AEJ filed his *Motion for Entry of an Order Authorizing Rejection of Certain Executory Contracts* (the "Motion to Reject") seeking to reject the AEJ/ESG Agreement, which Motion is opposed by ESG;

JOINT 3215318_1

WHEREAS FSS as of April 17, 2023, FSS suspended disbursements of proceeds from the sale of Platinum Products pursuant to terms of the FSS/ESG Agreement;

WHEREAS FSS, AEJ and ESG disputed the allocation of the proceeds from the sale of Platinum products under the FSS/ESG Agreement and the AEJ/ESG Agreement (collectively the "Agreements") and the rights of the parties following the termination of those Agreements; and

WHEREAS following extensive review of the distribution of sales proceeds generated from the sale of Platinum dietary supplements pursuant to the Agreements and negotiations between the parties, FSS, AEJ and ESG have reached agreement regarding disbursement of the proceeds generated from the sale of Platinum products under the Agreement to date and have also agreed to the sale of the remaining inventory of Platinum products[1] and the distribution of the proceeds generated from the sale of that remaining inventory.

NOW, THEREFORE, it is stipulated and agreed to by FSS, AEJ and ESG (collectively the "Parties") and upon approval by the Bankruptcy Court, ordered that:

1.  FSS has received proceeds from the sales of Platinum Products under the Agreements for the period from April 8, 2023, through August 20, 2023, in the total amount of $605,532.76 ("Gross Sales Proceeds").

2.  The parties agree that the distribution of the Gross Sales Proceeds shall be One Hundred Five Thousand, Eight Hundred Twenty-four dollars and 24 cents ($105,824.24) to be distributed to ESG; Three Hundred Thirty-Two Thousand, One Hundred Fifty-Six dollars and 84 cents ($332,156.84) to be distributed to Jones;

---

[1] Platinum products means those products identified in the Agreements (the "Platinum Products"). FSS directly purchases Platinum products from time to time that are not subject to the Agreements and are not implicated in this Stipulation.

JOINT STIPULATION AND AGREED ORDER

and One hundred Sixty-Seven Thousand Five Hundred Twenty Three Dollars and 68 cents ($167,523.68) to be retained by FSS.

3.      FSS shall make the distributions directly to ESG and AEJ upon entry of this Stipulation by the Court.

4.      FSS will resume sales of the remaining inventory Platinum Products through FSS sales channels under the existing terms of the Agreements, with the FSS/ESG Agreement modified to increase the permitted credit card processing fee to seven percent (7%) for Platinum Product sales after August 21. 2023.

5.      FSS will make distributions directly to ESG and AEJ for Platinum Product sales on a weekly basis and shall provide AEJ and ESG weekly reports reflecting sales, related costs and expenses and the resulting distribution to the Parties.

6.      The Parties agree that AEJ will not reinvest his distributions in additional Platinum Product sales and the agreement of the Parties in this Stipulation shall terminate upon the sale of the remaining Platinum Product inventory to a point that the continued listing of the Platinum Product on FSS's sales channels is no longer economically justifiable as may be agreed to by the Parties.

The Agreement of the Parties set forth in this Stipulation shall be in full satisfaction of any and all claims the Parties may have among themselves related to the distributions provided for in this Stipulation. The Parties otherwise retain all rights and claims arising from the performance of the agreements contained in this Stipulation.

Signed:  September 27, 2023

_____
Christopher Lopez
United States Bankruptcy Judge

JOINT STIPULATION AND AGREED ORDER

STIPULATED AND AGREED ON September 20, 2023, BY AND BETWEEN:


CROWE & DUNLEVY, P.C.


By: */s/ Vickie L. Driver*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon St., Suite 425
Dallas, TX 75201
Telephone: 737-218-6187
Email: dallaseservice@crowedunlevy.com

ATTORNEYS FOR ALEXANDER E. JONES


LAW OFFICES OF RAY BATTAGLIA, PLLC

By: */s/ Raymond W. Battaglia*
Raymond W. Battaglia
State Bar No. 01918055
66 Granburg Circle
San Antonio, TX 78218
Telephone: 210-601-9405
Email: rbattaglialaw@outlook.com

ATTORNEY FOR FREE SPEECH SYSTEMS, LLC


WALKER & PATTERSON, P.C.


By*: /s/ Johnie Patterson*
Johnie Patterson
State Bar No. 15601700
WALKER & PATTERSON, P.C.
P.O. BOX 61301
Houston, TX 77208
Telephone: 713-956-5577
Email: jjp@walkerandpatterson.com

ATTORNEY FOR ELEVATED SOLUTIONS GROUP, LLC

DALESSIO-000008

## PROFESSIONAL SERVICES AGREEMENT-AFFILIATE REVENUE SHARE

This Professional Services Agreement ("Agreement") is entered into as of **9 MARCH 2022**, ("Effective Date"), by and between ELEVATED SOLUTIONS GROUP LLC, ("Elevated" or "Affiliate") and CMC CONSULTING LLC ("CMC" or "Consultant") (collectively herein Consultant and Affiliate may be referred to as the "Parties") This Professional Services Agreement contains the complete terms and conditions regarding the Affiliate Revenue Share Program ("Affiliate Program") and the referral of traffic from Elevated and its promotions to product websites.

## RECITALS

A.  CMC has developed relationships for Elevated and has brokered and Affiliate Program to generate revenue for Elevated. CMC continues to act as a broker and assist in the Affiliate Program in which Elevated will continue to participate via the terms of this agreement.

B.  Elevated has developed relationships within various industries to promote services and/or products and desires to participate in the Affiliate Program brokered by CMC.

In consideration of the mutual covenants contained herein and other good and valuable consideration, which is hereby acknowledged, the parties hereto agree as follows:

1.  <u>Services:</u> CMC will work to pair Elevated with various vendors as part of the Affiliate Program contained in Annex A of this agreement (See Annex A).

2.  <u>Term:</u> The term of this Agreement shall commence as of the Effective Date and shall continue in full force until terminated as provided herein.

3.  <u>Compensation:</u>  CMC will pay Elevated in accordance with the Affiliate Program services contained in Annex A of this agreement (See Annex A).

4.  Expenses: CMC is authorized to deduct wire transfer expenses from Affiliate Program payout. Any additional expenses must be communicated and mutually agreed upon by both parties.

5.  <u>Contractor's Representations</u>: CMC hereby warrants and represents to Elevated that: (i) CMC has the experience, skill, and authority necessary to perform the Services, (ii) there is no actual or potential conflict of interest between the Services to be performed by CMC under this Agreement and CMC's business, financial or other interests, and CMC shall immediately notify Elevated of any actual or potential conflict of interest of which CMC becomes aware during the term of this Agreement. This agreement does not pertain to any historic, current and/or future Affiliate Program deals between CMC and third parties.

6.  <u>Relationship of the Parties:</u>  The Consultant under this Agreement is, and shall act as an independent contractor, and not as an agent, partner, or employee of Affiliate.  Nothing in this Agreement shall be construed to imply that Consultant its agents, officers or employees are

DALESSIO-000008

DALESSIO-000009

employees of Affiliate; or that this Agreement creates, in any manner, a partnership, joint venture, or other arrangement between Consultant and Affiliate.

**7.** Termination: Either party may terminate this agreement with thirty (30) days prior written notice to the other. Termination of this Agreement will not eliminate any compensation owed to the Affiliate at the time of termination as defined in the "Compensation and Expenses (See Annex A)" section of this Agreement. In the event of a termination for any reason, Affiliate shall only be entitled to the compensation provided for in the "Compensation and Expenses (See Annex A)" section that has been earned.

**8.** Limitation on liability. To the fullest extent permitted by Law and notwithstanding other provisions of this Agreement, in no event shall a Party be liable to the other Party, whether in contract, warranty, tort, negligence, strict liability, or otherwise, for special, indirect, incidental, multiple, consequential (including lost profits or revenues, business interruption damages and lost business opportunities), exemplary or punitive damages related to, arising out of, or resulting from performance or nonperformance of this Agreement.

**9.** Indemnification: Affiliate shall indemnify, defend and hold harmless, Consultant, its parent and affiliates, and each of their officers, directors, employees, attorneys, sub-consultants, agents and successors and assigns (each an "Indemnified Party") from, for and against any and all claims, demands, suits, obligations, payments, liabilities, costs, fines, penalties, sanctions, taxes, judgments, damages, losses or expenses ("Loss") imposed by a third party upon Consultant or incurred in connection with a claim by a third party against the Consultant arising out of, relating to, or resulting from the Affiliate's breach, or performance or non-performance of its obligations under this Agreement or Consultants work on the Property or association with Affiliate (including reasonable attorneys' fees and costs). To the extent Consultant is required to participate in any third party claims against Affiliate in any legal proceedings, Consultant shall be compensated in accordance with this Agreement. Neither party shall be liable for any claims, statements, or any promotional materials of the other, nor shall CMC or Elevated be held liable for any and all promotions or claims from third party affiliate groups, such as American Tax Solutions, EvaTac Plus, or any other affiliate group brought into this agreement through amendment.

**10.** Modification and Amendment: This Agreement shall not be altered, waived or amended in any way, except in writing, signed by both Parties.

IN WITNESS WHEREOF, this Professional Services Agreement has been executed as of the Effective Date.

ELEVATED SOLUTIONS GROUP, LLC

CMC CONSULTING, LLC

By: Joseph M. Dalessio
Its: Manager

By: Charles Cicack
Its: Manager

2

DALESSIO-000009

DALESSIO-000010

# PROFESSIONAL SERVICES AGREEMENT-AFFILIATE REVENUE SHARE

## ANNEX A

Affiliate Program Services and Compensation

1. American Tax Solution / Get A Tax Lawyer (JonesTaxReleif.com)
   - 40% Revenue Share paid to Elevated every seven (7) days for the lifetime of the deal subject to receiving funds from American Tax Solution, as detailed in the parent agreement between CMC and American Tax Solutions.

2. SWERD LLC (EvatacPlus.com)
   - 50% Revenue Share paid to Elevated every fourteen (14) days for the lifetime of the deal subject to receiving funds from SWERD LLC.

3. Additional Affiliate Program Services and Compensation may be mutually agreed upon in writing through amendment to this agreement. In addition, compensation for CMC's work may be mutually agreed upon by both parties in writing through amendment to this agreement.

Modification and Amendment: Annex A of this agreement shall not be altered, waived or amended in any way, except in writing, signed by both Parties.

IN WITNESS WHEREOF, this Professional Services Agreement has been executed as of the Effective Date.

| ELEVATED SOLUTIONS GROUP, LLC | CMC CONSULTING, LLC |
|---|---|
| By: Joseph M. Dalessio | By: Charles Cicack |
| Its:  Manager | Its: Manager |

3

DALESSIO-000073

## PROFESSIONAL SERVICES AGREEMENT-CMC AFFILIATE PROGRAM REVENUE SHARE

This Professional Services Agreement ("Agreement") is entered into as of **9 MARCH 2022**, ("Effective Date"), by and between ELEVATED SOLUTIONS GROUP, LLC, ("Elevated" or "Consultant") and FREE SPEECH SYSTEMS LLC ("Free Speech" or "Client") (collectively herein Consultant and Client may be referred to as the "Parties.")

## RECITALS

A.     Elevated has developed relationships for Free Speech and has brokered various Affiliate Programs to generate revenue for Free Speech.

B.     Free Speech has developed relationships within various industries to promote services and/or products and desires to participate in the Affiliate Programs brokered by Elevated.

C.     Free Speech desires to retain Elevated as an independent contractor to perform certain professional services, as specified in this Agreement, and Elevated desires to provide such services to Free Speech.

D.     The parties desire to enter into this Agreement to set forth the obligations and responsibilities.

In consideration of the mutual covenants contained herein and other good and valuable consideration, which is hereby acknowledged, the parties hereto agree as follows:

Services: Client hereby retains Consultant and Consultant hereby agrees to perform professional services as follows: facilitate and manage the direct communication, marketing, tracking, and accounting functions of various Affiliate Programs. Elevated will work to pair Free Speech with various vendors as part of the Affiliate Program contained in Annex A of this agreement (See Annex A).

a.     The Services shall commence as of the effective date of this agreement.

b.     Elevated will supply weekly Affiliate Program reports directly to Alexander E. Jones, Manager, Free Speech. If for any reason reports have not been received from the various vendors participating in the Affiliate Program, the Affiliate Program weekly report will be executed upon report/payout reconciliation from the vendor(s).

c.     Elevated will execute weekly payouts from the Affiliate Program to Free Speech in accordance with the Affiliate Program services contained in Annex A of this agreement (See Annex A).

**2.**     Term: The term of this Agreement shall commence as of the Effective Date and shall continue in full force until terminated as provided herein.

DALESSIO-000074

**3.** <u>Compensation and Expenses:</u>  Elevated is authorized to deduct wire transfer expenses from Affiliate Program payout. Any additional expenses must be communicated and mutually agreed upon by both parties. (See Annex A)

**4.** <u>Contractor's Representations</u>: Consultant hereby warrants and represents to the Client that: (i) Consultant has the experience, skill, and authority necessary to perform the Services, (ii) there is no actual or potential conflict of interest between the Services to be performed by Consultant under this Agreement and Consultant's business, financial or other interests, and Consultant shall immediately notify the Client of any actual or potential conflict of interest of which Consultant becomes aware during the term of this Agreement.

**5.** <u>Relationship of the Parties:</u>  The Consultant under this Agreement is, and shall act as an independent contractor, and not as an agent, partner, or employee of Client.  Nothing in this Agreement shall be construed to imply that Consultant its agents, officers or employees are employees of Client; or that this Agreement creates, in any manner, a partnership, joint venture, or other arrangement between Consultant and Client.

**6.** <u>Termination:</u> Either party may terminate this agreement with thirty (30) days prior written notice to the other. Termination of this Agreement will not eliminate any compensation owed to the Consultant at the time of termination as defined in the "Compensation and Expenses" or "Annex A" sections of this Agreement. In the event of a termination for any reason, Consultant shall only be entitled to the compensation provided for in the "Compensation and Expenses" or "Annex A" sections that has been earned.  Consultant may suspend or terminate performance of Services for failure of Client to make payment hereunder in a timely manner.

**7.** <u>Dispute Resolution</u>. If a dispute arises of any kind under this Agreement the Client and Consultant shall first negotiate in good faith for a period of not less than thirty (30) days prior to taking any legal action. If a dispute cannot be resolved by negotiations of the Parties then either party may submit the dispute to binding arbitration. The prevailing party shall be entitled to recover from the other party all costs and expenses of suit, including attorney's fees reasonably incurred

**8.** <u>Limitation on liability.</u>  To the fullest extent permitted by Law and notwithstanding other provisions of this Agreement, in no event shall a Party be liable to the other Party, whether in contract, warranty, tort, negligence, strict liability, or otherwise, for special, indirect, incidental, multiple, consequential (including lost profits or revenues, business interruption damages and lost business opportunities), exemplary or punitive damages related to, arising out of, or resulting from performance or nonperformance of this Agreement.

**9.** <u>Notices:</u> Any notice of communication to be given under the terms of this Agreement shall be in writing and delivered in person or deposited in the United States Mail, postage prepaid, return receipt requested of by FEDEX overnight to the address in the signature block below.  Notices will be effective upon receipt by the addressee.

**10.** <u>Indemnification:</u> Client shall indemnify, defend and hold harmless, Consultant, its parent and affiliates, and each of their officers, directors, employees, attorneys, sub-consultants, agents and

2

DALESSIO-000075

successors and assigns (each an "Indemnified Party") from, for and against any and all claims, demands, suits, obligations, payments, liabilities, costs, fines, penalties, sanctions, taxes, judgments, damages, losses or expenses ("Loss") imposed by a third party upon Consultant or incurred in connection with a claim by a third party against the Consultant arising out of, relating to, or resulting from the  the Client's breach, or performance or non-performance of its obligations under this Agreement or Consultants work on the Property or association with Client (including reasonable attorneys' fees and costs).  To the extent Consultant is required to participate in any third party claims against Client in any legal proceedings, Consultant shall be compensated in accordance with this Agreement.

**11.** <u>Interpretation:</u>   In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of authorship of any of the provisions of this Agreement. The headings and section titles contained in this Agreement are solely for convenience and do not constitute a part of this Agreement between the Parties, nor should they be used to aid in any manner in the interpretation of this Agreement.

**12.** <u>Modification and Amendment:</u> This Agreement shall not be altered, waived or amended in any way, except in writing, signed by both Parties.

**13.** <u>Counterparts/Electronic Delivery:</u>  This Agreement may be executed and delivery of original signatures may be made in PDF format by electronic means, and in counterparts, all of which will be considered one and the same Agreement, and will become effective when such counterparts have been signed and delivered, including by electronic means.

**14.** <u>Severability:</u>  If any term, provision or condition of this Agreement is held to be invalid, void or unenforceable by a governmental authority and such holding is subject to no further appeal or judicial review, then such invalid, void, or unenforceable term, provision or condition shall be deemed severed from this Agreement and all remaining terms, provisions and conditions of this Agreement shall continue in full force and effect. The Parties shall endeavor in good faith to replace such invalid, void or unenforceable provisions with valid and enforceable provisions which achieve the purpose intended by the Parties to the greatest extent permitted by law.

**15.** <u>No Waiver:</u> No failure or delay on the part of a Party in exercising any of its rights under this Agreement or in insisting upon strict performance of provisions of this Agreement, no partial exercise by either Party of any of its rights under this Agreement, and no course of dealing, usage of trade or course of performance between the Parties shall constitute a waiver of the rights of either Party under this Agreement. Any waiver shall be effective only by a written instrument signed by the Party granting such waiver, and shall not operate as a waiver of, or estoppel with respect to, any subsequent failure to comply therewith. The remedies provided in this Agreement are cumulative and not exclusive of any remedies provided by law.

**16.** <u>Severability:</u>  If any provision of this Agreement is determined by any court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision will be stricken from this Agreement and the remainder of this

3

Agreement will be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement.

**17.** Entire Agreement: This Agreement contains the entire agreement and understanding between the Parties with respect to all of the subject matter contained in this Agreement, and merges and supersedes all prior agreements and representations by the Parties with respect to subject matter of this Agreement, whether written or oral.

**18.** Further Assurances: The parties hereby agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

**19.** Governing Law; Cost of Enforcement: This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

**20.** Headings; Construction: Headings or titles to sections or paragraphs of this Agreement are solely for the convenience of the parties and shall have no effect whatsoever on the interpretation of the provisions of this Agreement. All references to "section" or "sections" refer to the corresponding section(s) of this Agreement. All words used in this Agreement will be construed to be of such gender or number, as the circumstances require. Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms.

**21.** No Third Party Beneficiaries: Nothing in this Agreement nor any action taken shall be construed to create any duty, liability or standard of care to any third party, no third party shall have any rights or interest, direct or indirect, in this Agreement or the Services, and this Agreement is intended solely for the benefit of the Parties. The Parties expressly disclaim any intent to create any rights in any third party as a third-party beneficiary to this Agreement or the Services.

**22.** Assignment: This Agreement shall inure to the benefit of, and shall be binding upon, the successors and assigns of the Parties. Neither Party may assign this Agreement or any right or delegate any duties of this Agreement without the prior written consent of the other Party.

IN WITNESS WHEREOF, this Professional Services Agreement has been executed as of the Effective Date.

ELEVATED SOLUTIONS GROUP, LLC    FREE SPEECH SYSTEMS, LLC

By: Joseph M. Dalessio            By: Alexander E. Jones
Its: Manager                   Its: Manager
Address: 706 W Ben White BLVD    Address: PO Box 19549
Bldg B, Ste 188, Austin TX 78704    Austin TX 78760

4

DALESSIO-000077

# PROFESSIONAL SERVICES AGREEMENT-CMC AFFILIATE PROGRAM REVENUE SHARE

## ANNEX A

Affiliate Program Services and Compensation

1. American Tax Solution / Get A Tax Lawyer (JonesTaxReleif.com)
   - 50% Revenue Share paid to Free Speech every seven (7) days subject to receiving funds from American Tax Solution

2. SWERD LLC (EvatacPlus.com)
   - 50% Revenue Share paid to Free Speech every fourteen (14) days subject to receiving funds from SWERD LLC.

3. Additional Affiliate Program Services and Compensation may be mutually agreed upon in writing through amendment to this agreement.

Modification and Amendment: Annex A of this agreement shall not be altered, waived or amended in any way, except in writing, signed by both Parties.

IN WITNESS WHEREOF, this Professional Services Agreement has been executed as of the Effective Date.

ELEVATED SOLUTIONS GROUP, LLC

By: Joseph M. Dalessio
Its: Manager

FREE SPEECH SYSTEMS, LLC

By: Alexander E. Jones
Its: Manager

5

DALESSIO-000077

DALESSIO-000059

## PROFESSIONAL SERVICES AGREEMENT-PATRIOT COLLECTIBLES AFFILIATE PROGRAM

This Professional Services Agreement ("Agreement") is entered into as of **1 MARCH 2022**, ("Effective Date"), by and between ELEVATED SOLUTIONS GROUP, LLC, ("Elevated" or "Consultant") and FREE SPEECH SYSTEMS LLC ("Free Speech" or "Client") (collectively herein Consultant and Client may be referred to as the "Parties.")

## RECITALS

A.      Free Speech has an existing market for certain custom precious metal items and collectibles.

B.      Free Speech has developed relationships within various industries to promote services and/or products and desires to participate in the Patriot Collectibles Affiliate Program.

C.      Free Speech desires to retain Elevated as an independent contractor to perform certain professional services, as specified in this Agreement, and Elevated desires to provide such services to Free Speech.

D.      The parties desire to enter into this Agreement to set forth the obligations and responsibilities.

In consideration of the mutual covenants contained herein and other good and valuable consideration, which is hereby acknowledged, the parties hereto agree as follows:

Services: Client hereby retains Consultant and Consultant hereby agrees to perform professional services as follows: facilitate and manage the direct communication, marketing, tracking, and accounting functions of the Patriot Collectibles Affiliate Program. Elevated will work to pair Free Speech with various custom precious metal items and collectibles as part of the Patriot Collectibles Affiliate Program contained in Annex A of this agreement (See Annex A).

a.      The Services shall commence as of the effective date of this agreement.

b.      Elevated will supply weekly Affiliate Program reports directly to Alexander E. Jones, Manager, Free Speech. If for any reason reports have not been received from Patriot Collectibles, the Patriot Collectibles Affiliate Program weekly report will be executed upon report/payout reconciliation from the vendor.

c.      Elevated will execute weekly payouts from the Patriot Collectible Affiliate Program to Free Speech in accordance with the Patriot Collectible Affiliate Program services contained in Annex A of this agreement (See Annex A).

**2.  Term:** The term of this Agreement shall commence as of the Effective Date and shall continue in full force until terminated as provided herein.

DALESSIO-000060

**3.** <u>Compensation and Expenses:</u> Elevated is authorized to deduct wire transfer expenses from the Patriot Collectible Affiliate Program payout. Any additional expenses must be communicated and mutually agreed upon by both parties. (See Annex A)

**4.** <u>Contractor's Representations:</u> Consultant hereby warrants and represents to the Client that: (i) Consultant has the experience, skill, and authority necessary to perform the Services, (ii) there is no actual or potential conflict of interest between the Services to be performed by Consultant under this Agreement and Consultant's business, financial or other interests, and Consultant shall immediately notify the Client of any actual or potential conflict of interest of which Consultant becomes aware during the term of this Agreement.

**5.** <u>Relationship of the Parties:</u> The Consultant under this Agreement is, and shall act as an independent contractor, and not as an agent, partner, or employee of Client. Nothing in this Agreement shall be construed to imply that Consultant its agents, officers or employees are employees of Client; or that this Agreement creates, in any manner, a partnership, joint venture, or other arrangement between Consultant and Client.

**6.** <u>Termination:</u> Either party may terminate this agreement with thirty (30) days prior written notice to the other. Termination of this Agreement will not eliminate any compensation owed to the Consultant at the time of termination as defined in the "Compensation and Expenses" or "Annex A" sections of this Agreement. In the event of a termination for any reason, Consultant shall only be entitled to the compensation provided for in the "Compensation and Expenses" or "Annex A" sections that has been earned. Consultant may suspend or terminate performance of Services for failure of Client to make payment hereunder in a timely manner.

**7.** <u>Dispute Resolution.</u> If a dispute arises of any kind under this Agreement the Client and Consultant shall first negotiate in good faith for a period of not less than thirty (30) days prior to taking any legal action. If a dispute cannot be resolved by negotiations of the Parties then either party may submit the dispute to binding arbitration. The prevailing party shall be entitled to recover from the other party all costs and expenses of suit, including attorney's fees reasonably incurred

**8.** <u>Limitation on liability.</u> To the fullest extent permitted by Law and notwithstanding other provisions of this Agreement, in no event shall a Party be liable to the other Party, whether in contract, warranty, tort, negligence, strict liability, or otherwise, for special, indirect, incidental, multiple, consequential (including lost profits or revenues, business interruption damages and lost business opportunities), exemplary or punitive damages related to, arising out of, or resulting from performance or nonperformance of this Agreement.

**9.** <u>Notices:</u> Any notice of communication to be given under the terms of this Agreement shall be in writing and delivered in person or deposited in the United States Mail, postage prepaid, return receipt requested of by FEDEX overnight to the address in the signature block below. Notices will be effective upon receipt by the addressee.

**10.** <u>Indemnification:</u> Client shall indemnify, defend and hold harmless, Consultant, its parent and affiliates, and each of their officers, directors, employees, attorneys, sub-consultants, agents and successors and assigns (each an "Indemnified Party") from, for and against any and all claims,

2

DALESSIO-000061

demands, suits, obligations, payments, liabilities, costs, fines, penalties, sanctions, taxes, judgments, damages, losses or expenses ("Loss") imposed by a third party upon Consultant or incurred in connection with a claim by a third party against the Consultant arising out of, relating to, or resulting from the  the Client's breach, or performance or non-performance of its obligations under this Agreement or Consultants work on the Property or association with Client (including reasonable attorneys' fees and costs).  To the extent Consultant is required to participate in any third party claims against Client in any legal proceedings, Consultant shall be compensated in accordance with this Agreement.

**11.** Interpretation:  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of authorship of any of the provisions of this Agreement. The headings and section titles contained in this Agreement are solely for convenience and do not constitute a part of this Agreement between the Parties, nor should they be used to aid in any manner in the interpretation of this Agreement.

**12.** Modification and Amendment: This Agreement shall not be altered, waived or amended in any way, except in writing, signed by both Parties.

**13.** Counterparts/Electronic Delivery:  This Agreement may be executed and delivery of original signatures may be made in PDF format by electronic means, and in counterparts, all of which will be considered one and the same Agreement, and will become effective when such counterparts have been signed and delivered, including by electronic means.

**14.** Severability:  If any term, provision or condition of this Agreement is held to be invalid, void or unenforceable by a governmental authority and such holding is subject to no further appeal or judicial review, then such invalid, void, or unenforceable term, provision or condition shall be deemed severed from this Agreement and all remaining terms, provisions and conditions of this Agreement shall continue in full force and effect. The Parties shall endeavor in good faith to replace such invalid, void or unenforceable provisions with valid and enforceable provisions which achieve the purpose intended by the Parties to the greatest extent permitted by law.

**15.** No Waiver:  No failure or delay on the part of a Party in exercising any of its rights under this Agreement or in insisting upon strict performance of provisions of this Agreement, no partial exercise by either Party of any of its rights under this Agreement, and no course of dealing, usage of trade or course of performance between the Parties shall constitute a waiver of the rights of either Party under this Agreement. Any waiver shall be effective only by a written instrument signed by the Party granting such waiver, and shall not operate as a waiver of, or estoppel with respect to, any subsequent failure to comply therewith. The remedies provided in this Agreement are cumulative and not exclusive of any remedies provided by law.

**16.** Severability:  If any provision of this Agreement is determined by any court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision will be stricken from this Agreement and the remainder of this Agreement will be enforced as if such invalid, illegal or unenforceable clause or provision had (to the

3

extent not enforceable) never been contained in this Agreement.

**17.** <u>Entire Agreement</u>: This Agreement contains the entire agreement and understanding between the Parties with respect to all of the subject matter contained in this Agreement, and merges and supersedes all prior agreements and representations by the Parties with respect to subject matter of this Agreement, whether written or oral.

**18.** <u>Further Assurances</u>: The parties hereby agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

**19.** <u>Governing Law; Cost of Enforcement</u>: This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

**20.** <u>Headings; Construction</u>: Headings or titles to sections or paragraphs of this Agreement are solely for the convenience of the parties and shall have no effect whatsoever on the interpretation of the provisions of this Agreement. All references to "section" or "sections" refer to the corresponding section(s) of this Agreement. All words used in this Agreement will be construed to be of such gender or number, as the circumstances require. Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms.

**21.** <u>No Third Party Beneficiaries</u>: Nothing in this Agreement nor any action taken shall be construed to create any duty, liability or standard of care to any third party, no third party shall have any rights or interest, direct or indirect, in this Agreement or the Services, and this Agreement is intended solely for the benefit of the Parties. The Parties expressly disclaim any intent to create any rights in any third party as a third-party beneficiary to this Agreement or the Services.

**22.** <u>Assignment</u>: This Agreement shall inure to the benefit of, and shall be binding upon, the successors and assigns of the Parties. Neither Party may assign this Agreement or any right or delegate any duties of this Agreement without the prior written consent of the other Party.

IN WITNESS WHEREOF, this Professional Services Agreement has been executed as of the Effective Date.

ELEVATED SOLUTIONS GROUP, LLC     FREE SPEECH SYSTEMS, LLC

By: Joseph M. Dalessio                   By: Alexander E. Jones
Its:  Manager                            Its:  Manager
Address: 706 W Ben White BLVD            Address: PO Box 19549
Bldg B, Ste 188, Austin TX 78704         Austin TX 78760

4

DALESSIO-000063

## PROFESSIONAL SERVICES AGREEMENT-PATRIOT COLLECTIBLES AFFILIATE PROGRAM

### ANNEX A

Patriot Collectibles Affiliate Program Services and Compensation

1. 1oz Tree of Liberty Founding Member Silver Round
   - 10% Revenue Share per unit sold paid to Free Speech every seven (7) days subject to receiving funds from PatriotCollectibles.
   - $10.00 Fulfillment Fee per order paid to Free Speech every seven (7) days subject to receiving funds from PatriotCollectibles.

2. 1oz Come And Take It Founding Member Silver Round
   - 10% Revenue Share per unit sold paid to Free Speech every seven (7) days subject to receiving funds from PatriotCollectibles.
   - $10.00 Fulfillment Fee per order paid to Free Speech every seven (7) days subject to receiving funds from PatriotCollectibles.

3. Founding Member Silver Round Set
   - 50% Revenue Share per unit sold paid to Free Speech every seven (7) days subject to receiving funds from PatriotCollectibles.
   - $10.00 Fulfillment Fee per order paid to Free Speech every seven (7) days subject to receiving funds from PatriotCollectibles.

4. Additional Patriot Collectibles Affiliate Program Services and Compensation may be mutually agreed upon in writing through amendment to this agreement.

Modification and Amendment: Annex A of this agreement shall not be altered, waived or amended in any way, except in writing, signed by both Parties.

IN WITNESS WHEREOF, this Professional Services Agreement has been executed as of the Effective Date.

ELEVATED SOLUTIONS GROUP, LLC    FREE SPEECH SYSTEMS, LLC

By: Joseph M. Dalessio                          By: Alexander E. Jones
Its:  Manager                                          Its:  Manager

5

DALESSIO-000064

**PROFESSIONAL SERVICES AGREEMENT-PATRIOT COLLECTIBLES**
**AFFILIATE PROGRAM**

### ANNEX A

Patriot Collectibles Affiliate Program Services and Compensation

1. 1oz Tree of Liberty Founding Member Silver Round
   - 10% Revenue Share per unit sold paid to Free Speech every thirty (30) days subject to receiving funds from PatriotCollectibles.
   - $10.00 Fulfillment Fee per order paid to Free Speech every thirty (30) days subject to receiving funds from PatriotCollectibles.

2. 1oz Come And Take It Founding Member Silver Round
   - Celebrity Endorsement Payment in the amount of $250,000.00 paid directly to Alexander E. Jones upon reaching $500,000.00 in gross sales.
   - $15.00 Fulfillment Fee per order paid to Blue Asension Logistics within seven (7) days of receiving an invoice, subject to receiving funds from PatriotCollectibles.

3. Founding Member Silver Round Set
   - 50% Revenue Share per unit sold paid to Free Speech every thirty (30) days subject to receiving funds from PatriotCollectibles.
   - $15.00 Fulfillment Fee per order paid to Blue Asension Logistics within seven (7) days of receiving an invoice, subject to receiving funds from PatriotCollectibles.

4. 1oz Theodore Roosevelt "Man In The Arena" Custom Silver Round
   - 30% Revenue Share per unit sold paid to Free Speech every thirty (30) days subject to receiving funds from PatriotCollectibles.
   - $15.00 Fulfillment Fee per order paid to Blue Asension Logistics within seven (7) days of receiving an invoice, subject to receiving funds from PatriotCollectibles.

5. Additional Patriot Collectibles Affiliate Program Services and Compensation may be mutually agreed upon in writing through amendment to this agreement.

Modification and Amendment: Annex A of this agreement shall not be altered, waived or amended in any way, except in writing, signed by both Parties.

IN WITNESS WHEREOF, this Professional Services Agreement has been executed as of the Effective Date.

5

DALESSIO-000064

DALESSIO-000065

ELEVATED SOLUTIONS GROUP, LLC

By: Joseph M. Dalessio
Its: Manager

FREE SPEECH SYSTEMS, LLC

By: Alexander E. Jones
Its: Manager

6

DALESSIO-000162

# PROFESSIONAL SERVICES AGREEMENT-AFFILIATE MARKETING MOU

This Professional Services Memorandum of Understanding ("MOU") is entered into as of **30 NOVEMBER 2022**, ("Effective Date"), by and between ELEVATED SOLUTIONS GROUP, LLC, ("Elevated") and FREE SPEECH SYSTEMS LLC ("Free Speech")

## RECITALS

A.     Free Speech has an existing market for certain Affiliate Marketing Services and/or Products.

B.     Free Speech has developed relationships within various industries to promote services and/or products and desires to participate in the AFFILIATE MARKETING MOU.

C.     Free Speech desires to retain Elevated as an independent contractor to perform certain professional services, as specified in this MOU, and Elevated desires to provide such services to Free Speech.

D.     The parties desire to enter into this MOU to set forth the obligations and responsibilities.

In consideration of the mutual covenants contained herein and other good and valuable consideration, which is hereby acknowledged, the parties hereto agree as follows:

Services: Free Speech hereby allows Elevated to perform professional marketing affiliate services as follows: facilitate and manage the direct communication, accounting, and marketing of select affiliate services and/or products. Elevated will work to pair Free Speech with various Affiliate Marketing Services and/or Products as part of this MOU. These Affiliate Marketing Services and/or Products will be a zero-cost marketing revenue stream for Free Speech. Elevated will handle all associated costs to include but not limited to, wire fees, graphic design, photography, b-roll, web banners, and AD creation. Free Speech will allow Elevated to place marketing materials on Free Speech associated websites, live shows, podcasts, etc.

Term: The term of this Agreement shall commence as of the Effective Date and shall continue in full force for 90 days. Following the execution of the 90-day MOU, discussions for a sustainable contract may take place.  *60 M*

Compensation and Expenses:  Free Speech will be paid a revenue share of 30% of Net Sales received during the execution of this Affiliate Marketing Services and/or Products MOU. Net Sales is determined by deducting any associated expenses Elevated may have to include but not limited to, wire fees, graphic design, photography, b-roll, web banners, and AD creation. Any additional expenses must be communicated and mutually agreed upon by both parties. (See Annex A)

Contractor's Representations: Elevated hereby warrants and represents to Free Speech that: (i) Elevated has the experience, skill, and authority necessary to perform the Services, (ii) there is no

DALESSIO-000163

actual or potential conflict of interest between the Services to be performed by Elevated under this MOU and Elevated's business, financial or other interests, and Elevated shall immediately notify Free Speech of any actual or potential conflict of interest of which Elevated becomes aware during the term of this MOU.

Relationship of the Parties:  Elevated is, and shall act as an independent contractor, and not as an agent, partner, or employee of Free Speech.  Nothing in this MOU shall be construed to imply that Elevated, its agents, officers or employees are employees of Free Speech; or that this MOU creates, in any manner, a partnership, joint venture, or other arrangement between Elevated and Free Speech.

Termination: Either party may terminate this agreement with thirty (30) days prior written notice to the other. Termination of this MOU will not eliminate any compensation owed to Elevated or Free Speech at the time of termination as defined in the "Compensation and Expenses" section of this MOU. In the event of a termination for any reason, Free Speech shall only be entitled to the compensation provided for in the "Compensation and Expenses" section that has been earned.

Dispute Resolution. If a dispute arises of any kind under this MOU, Free Speech and Elevated shall first negotiate in good faith for a period of not less than thirty (30) days prior to taking any legal action. If a dispute cannot be resolved by negotiations of the Parties then either party may submit the dispute to binding arbitration. The prevailing party shall be entitled to recover from the other party all costs and expenses of suit, including attorney's fees reasonably incurred.

Limitation on liability.  To the fullest extent permitted by Law and notwithstanding other provisions of this MOU, in no event shall a Party be liable to the other Party, whether in contract, warranty, tort, negligence, strict liability, or otherwise, for special, indirect, incidental, multiple, consequential (including lost profits or revenues, business interruption damages and lost business opportunities), exemplary or punitive damages related to, arising out of, or resulting from performance or nonperformance of this MOU.

Governing Law: Cost of Enforcement:  This MOU shall be governed by and construed in accordance with the laws of the State of Texas.

IN WITNESS WHEREOF, this MOU has been executed as of the Effective Date.

ELEVATED SOLUTIONS GROUP, LLC      FREE SPEECH SYSTEMS, LLC

By: Joseph M. Dalessio               By: Patrick Magill
Its:  Manager                        Its: Manager / CRO
Address: 706 W Ben White BLVD        Address: PO Box 19549
Bldg B, Ste 188, Austin TX 78704     Austin TX 78760

DALESSIO-000163