United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 19, 2023
Nathan Ochsner, Clerk

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 22-33553 |
| ALEXANDER E. JONES, | § | |
| | § | CHAPTER 11 |
| Debtor. | § | |
| | § | |
| DAVID WHEELER, *et al.*, | § | |
| | § | |
| v. | § | ADVERSARY NO. 23-03037 |
| | § | |
| ALEXANDER E. JONES, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM DECISION ON CONNECTICUT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST JONES

    Plaintiffs are parents of children murdered in the Sandy Hook Elementary School tragedy and a first responder. Before this bankruptcy case started, the Plaintiffs sued Alexander E. Jones and other defendants in a Connecticut state court. Three years into the litigation, the state court entered a default judgment against Jones based on repeated violations of discovery orders. The default judgment made Jones liable for the defamation and emotional distress claims. And, under Connecticut law, deemed Jones to have admitted all allegations in the Plaintiffs' state court petition. A jury awarded about $1.4 billion in compensatory and punitive damages for defamation, intentional infliction of emotional distress, and the Connecticut Unfair Trade Practices Act claims.

    Jones and an entity he owns named Free Speech Systems, LLC filed separate bankruptcy cases in 2022. Free Speech elected to proceed under Subchapter V of the Bankruptcy Code. Jones is in a traditional chapter 11 case, not Subchapter V. This decision involves Jones's case only.

    The Bankruptcy Code provides that some debts are excepted from a bankruptcy "discharge" and remain enforceable against the debtor even after a bankruptcy case ends. Plaintiffs started this adversary proceeding seeking an order stating that the debts related to the state court action are excepted from discharge under § 523(a)(6) of the Bankruptcy Code. They also believe that the state court record, including court orders and jury awards, prove that there are no material

EXHIBIT
7

issues of disputed fact and that summary judgment is warranted as a matter of law. Jones disagrees.

After careful consideration, and for the reasons explained in detail below, the Court grants summary judgment on all claims, except common-law punitive damages.

## **Background**

In May 2018, thirteen of the Plaintiffs started the lawsuit captioned *Lafferty, et al. v. Jones, et al.*, UWY-CV-18-6046436-S, in the Judicial District of Fairfield at Bridgeport in Connecticut Superior Court.[1] Then in December 2018 and January 2019, two substantively similar complaints—captioned *Sherlach, et al. v. Jones, et al.*, UWY-CV-18-6046437-S and *Sherlach, et al. v. Jones, et al.*, UWY-CV-18-6046438-S—were consolidated with the *Lafferty* complaint (the "**Connecticut Action**").[2] Plaintiffs alleged the defendants were liable for, among other things, (i) invasion of privacy, (ii) defamation and defamation per se, and (iii) intentional infliction of emotional distress.[3] They also alleged the defendants violated the Connecticut Unfair Trade Practices Act ("**CUTPA**").[4]

In November 2021, the state court entered a default judgment against the defendants for repeated violation of discovery orders.[5] The court stated on the record that the Jones defendants withheld analytics and information that were "critical to the plaintiffs' ability to conduct meaningful discovery and to prosecute their claims."[6] That the "callous disregard of their obligations to fully and fairly comply with discovery and Court orders on its own merits a default against the Jones defendants."[7] And that "the Jones defendants were not just careless" but "their failure to produce critical documents, their disregard for the discovery process and procedure and for Court orders" was a "consistent pattern of obstructive conduct."[8]

---

[1] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 1, ECF No. 57-4.

[2] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 2, 3, ECF Nos. 57-5, 57-6.

[3] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶¶ 336–84, 2 at ¶¶ 329–77, and 3 at ¶¶ 416–64, ECF Nos. 57-4, 57-5, 57-6.

[4] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶¶ 385–94, 2 at ¶¶ 378–87, and 3 at ¶¶ 465–74, ECF Nos. 57-4, 57-5, 57-6.

[5] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 74, ECF No. 59-24.

[6] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 74 at 14:12–15, ECF No. 59-24.

[7] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 74 at 14:15–18, ECF No. 59-24.

[8] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 74 at 15:1–4, ECF No. 59-24.

The Connecticut Action proceeded to a jury trial on damages for intentional infliction of emotional distress, defamation/defamation per se, invasion of privacy, and CUTPA claims against Jones and Free Speech.[9]

The state court issued lengthy jury instructions. The court instructed jurors that under applicable law, each defendant was responsible for the other's conduct and the entirety of the harm to the Plaintiffs.[10] Here are some of the jury instructions for defamation and intentional infliction of emotional distress:[11]

| Defamation | Intentional Infliction of Emotional Distress |
|---|---|
| Certain defamatory statements, whether orally or in writing, are considered to be so harmful in and of themselves that the person to whom they relate is entitled to recover general damages . . . | The defendants intended to inflict emotional distress or . . . knew or should have known that emotional distress was the likely result of their conduct. |
| The defendants defamed the plaintiffs by accusing them of faking their children's death, being crisis actors, and fraudulently misrepresenting themselves to the public at large. | The conduct was extreme and outrageous. The conduct was the cause of emotional distress experienced by the plaintiffs. The emotional distress sustained by the plaintiff was severe. |
| The law conclusively presumes that there is injury to the plaintiff's reputation. A plaintiff is not required to prove that his or her reputation was damaged. The plaintiff is entitled to recover as general damages for the injury to his or her reputation and for the humiliation and mental suffering caused. | It is established that the defendants inflicted such emotional distress on the plaintiffs. |
| [D]efendants proximately caused harm to the plaintiffs by spreading lies about the plaintiffs to their audience and the public by urging their audience and the public | The court has determined that the defendants are liable for having invaded the privacy of each plaintiff by placing him or her in a false light before the public by publicizing material about him or her that is false and is such a major misrepresentation of his or her |

---

[9] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 6, 11–12, ECF No. 57-21.

[10] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 6, ECF No. 57-21. Thus, any argument that findings about the defendants' conduct do not apply to Jones individually is wrong.

[11] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 12, 14, 15, 23, ECF No. 57-21.

3 / 18

| | |
|---|---|
| to investigate and look into the plaintiffs and to the stop the people supposedly being the Sandy Hook hoax. | character, history, activities or beliefs that a reasonable person in the plaintiff's position would either be expected to take serious offense or be justified in feeling offended and aggrieved. |

The state court also instructed the jury it could award common law punitive damages if the defendants' actions were willful, wanton, or malicious.[12] A "willful and malicious" harm was one inflicted intentionally, and "wanton" was "reckless misconduct."[13]

The state court also determined that the defendants were liable for violating CUTPA because "their business conduct was predicated on damaging the plaintiffs and was immoral, unethical, oppressive, or unscrupulous."[14] The jury charge states that the CUTPA claim would be assessed separately by the state court.[15]

In October 2022, the jury awarded the Plaintiffs a total of $965 million in compensatory damages for defamation and emotional distress.[16] The award consisted of $403.6 million in defamation damages and $561.4 million in emotional distress damages. They also awarded common-law punitive damages in an amount left for the state court to award separately.

The Plaintiffs also moved for an award of punitive damages under CUTPA, which Jones opposed.[17] Under Connecticut law, CUTPA claims are determined by a court, not a jury. In November 2022, the state court issued a memorandum opinion setting the jury's award of common-law punitive damages for attorney's fees at $321.65 million and costs of about $1.5 million and awarding CUTPA punitive damages of $150 million.[18] The court found that the defendants (including Jones) engaged in intentional and malicious conduct certain to harm the Plaintiffs:[19]

---

[12] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 23–24, ECF No. 57-21.

[13] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 24, ECF No. 57-21.

[14] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 23, ECF No. 57-21.

[15] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 23, ECF No. 57-21.

[16] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 19, ECF No. 57-22. The emotional distress damages consisted of damages for invasion of privacy and damages "for other emotional distressed suffered." See Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 21, ECF No. 57-21.

[17] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 20, ECF No. 57-23.

[18] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 22 at 45–46, ECF No. 58-2.

[19] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 22 at 43–44, ECF No. 58-2.

> The defendants' concealment of their conduct and wrongdoing, by virtue of their stunningly cavalier attitude toward both their discovery obligations and court orders regarding discovery throughout the entire pendency of the case, their unprepared corporate representative, and intentional discovery abuses, militates in favor of a substantial award of punitive damages.
>
> The record clearly supports the plaintiffs' argument that the defendants' conduct was intentional and malicious, and certain to cause harm by virtue of their infrastructure, ability to spread content, and massive audience.
>
> The record also establishes that the defendants repeated the conduct and attacks on plaintiffs for nearly a decade, including the trial, wanton, malicious, and heinous conduct that caused harm to the plaintiffs.
>
> This depravity, and cruel, persistent course of conduct by the defendants establishes the highest degree of reprehensibility and blameworthiness.[20]

In December 2022, Jones filed his chapter 11 bankruptcy petition.[21] Soon after, this Court entered an agreed order involving Jones, Free Speech, and the Plaintiffs.[22] The agreed order modified the automatic stay to allow the state court to rule on post-trial motions and for any appeals by the defendants to proceed.[23] The Plaintiffs also agreed not to object to an application by Jones and Free Speech to employ their requested appellate counsel.[24] With the automatic stay modified, the state court denied a motion for new trial and Jones appealed the judgments to a Connecticut appellate court.[25]

The Plaintiffs started this adversary proceeding to determine the nondischargeability of the judgment debts against Jones.[26] They seek summary judgment mainly on the theory that the damages opinion, jury verdict, and admitted allegations from the Connecticut Action satisfy the requirements of

---

[20] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 22 at 41–44, ECF No. 58-2.

[21] *See* Voluntary Ch. 11 Pet. of Alexander E. Jones, Case No. 22-33553, ECF No. 1.

[22] *See* Agreed Order Modifying the Automatic Stay, Case No. 22-33553, ECF No. 58.

[23] *See* Agreed Order Modifying the Automatic Stay, Case No. 22-33553, ECF No. 58.

[24] *See* Agreed Order Modifying the Automatic Stay, Case No. 22-33553, ECF No. 58.

[25] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 23, 24, ECF No. 58-3, 58-4.

[26] Brief in Supp. of Mot. for Summ. J. at 1, ECF No. 60.

collateral estoppel on the issue of willful and malicious injury under § 523(a)(6).[27] In the alternative, they believe that the state court record establishes willful and malicious injury.[28]

Jones argues that summary judgment is not appropriate because (i) the issue of "willful and malicious injury" was not essential to the judgment in the Connecticut Action, (ii) federal law does not require federal courts to grant full faith and credit to allegedly unconstitutional state court judgments, (iii) public policy concerns about fairness, quality, and extent of the Connecticut Action outweigh any convenience afforded by the finality of judgment, (iv) collateral estoppel should not be applied when it appears the prior proceeding was skewed with the intent to obtain a non-dischargeable judgment in anticipation of bankruptcy, and (v) the record evidence produced by the Plaintiffs does not independently establish that they are entitled to judgment as a matter of law on a § 523(a)(6) claim.[29]

## Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction under 28 U.S.C. § 1334. The parties' express and implied consent also provides this Court constitutional authority to enter a final judgment under *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 678–83 (2015) and *Kingdom Fresh Produce, Inc. v. Stokes Law Off., L.L.P. (In re Delta Produce, L.P.)*, 845 F.3d 609, 617 (5th Cir. 2016).

## Legal Standard

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment, "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings. FED. R. BANKR. P. 7056. A movant is entitled to summary judgment by showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A material fact is one that might affect the outcome of the suit under governing law." *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018).

Plaintiffs, as the movants here, bear the burden of proof at trial. So they must show the lack of a genuine issue of disputed fact that entitles them to judgment as a matter of law. If successful, the burden shifts to the nonmovant, Jones, to identify specific record evidence and articulate precisely how the evidence

---

[27] Brief in Supp. of Mot. for Summ. J. at 2–3, ECF No. 60.

[28] Brief in Supp. of Mot. for Summ. J. at 3, ECF No. 60.

[29] Def.'s Resp. to Mot. for Summ. J. at 10–12, ECF No. 61.

purports to defeat summary judgment. *See Matson v. Sanderson Farms, Inc.*, 388 F. Supp. 3d 853, 869 (S.D. Tex. 2019) (citing *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)). In determining whether summary judgment is appropriate, all inferences are drawn in Jones's favor. *See Harville v. City of Houston, Mississippi*, 945 F.3d 870, 874 (5th Cir. 2019).

## Analysis

Interpreting the Bankruptcy Code begins with analyzing the text. *See Whitlock v. Lowe (In re DeBerry)*, 945 F.3d 943, 947 (5th Cir. 2019) ("In matters of statutory interpretation, text is always the alpha."); *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires [the court] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'") (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).

### I. Section 523(a)(6) and Collateral Estoppel

A creditor must prove nondischargeability of a debt by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 286–87 (1991). Section 523(a) of the Bankruptcy Code excepts certain debts from discharge against an individual debtor. The Bankruptcy Code defines a "debt" as a "liability on a claim." 11 U.S.C. § 101(12). A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed . . . ." § 101(5).

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity. . . ." The Bankruptcy Code does not define "willful" or "malicious." In *Kawaauhau v. Geiger*, the U.S. Supreme Court held that a "willful and malicious injury" means a "deliberate or intentional injury." 523 U.S. 57, 61 (1998). This means that there must be intent to cause the injury, not just the act which leads to the injury. *Id.* at 61–62. In the Fifth Circuit, intent to cause injury exists "where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *In re Shcolnik*, 670 F.3d 624, 629 (5th Cir. 2012) (quoting *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998)). The objective standard requires a court to analyze from a reasonable person's perspective "whether the defendant's actions were substantially certain to cause harm, [and] are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Chowdary v. Ozcelebi (In re Ozcelebi)*, 640 B.R. 884, 905 (Bankr. S.D. Tex. 2022) (citing *Berry v. Vollbracht (In re Vollbracht)*, 276 Fed. App'x. 360, 361–62 (5th Cir. 2007)). Substantial certainty does not mean absolute certainty, but it must be something more than a high probability. *See Mahadevan v. Bikkina (In re Mahadevan)*, 617 F.

7 / 18

Supp. 3d 654, 660 (S.D. Tex. 2022) (citing *In re D'Amico*, 509 B.R. 550, 561 (S.D. Tex. 2014)).[30]

Because of this intent requirement, debts arising from reckless or negligently inflicted injuries are not excepted under § 523(a)(6). *Geiger*, 523 U.S. at 64. For example, debts related to a debtor's act of intentionally driving a car into a crowded bar and killing a creditor's relatives were found to be based on willful and malicious injuries. *See Mahadevan*, 617 F. Supp. 3d at 660 (citing *Red v. Baum* (*In re Red*), 96 F. App'x 229, 230 (5th Cir. 2004)). But debts related to a debtor's act of illegally selling a rifle to an individual, who years later shot people, were not based on a willful and malicious injury. *See Leyva et al. v. Braziel (In re Braziel)*, 653 B.R. 537, 558 (Bankr. N.D. Tex. 2023). The debtor intended to sell the rifle to the third party. *Id.* at 557. And while the sale itself was an intentional illegal act, it was not an act intended to harm the victims under either an objective or subjective standard. *Id.*

Plaintiffs can invoke collateral estoppel to establish that a debt is nondischargeable. *See Grogan v. Garner,* 498 U.S. 279, 284 n.11 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). Collateral estoppel prevents parties from relitigating issues of fact that were already "determined by a valid and final judgment" in a prior lawsuit in any future lawsuit involving the same parties. *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). Federal courts must give full faith and credit to state-court judgments. *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986) ("[U]nder the Full Faith and Credit Act a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give."); *Shimon v. Sewerage & Water Bd. Of New Orleans,* 565 F.3d 195, 199 (5th Cir. 2009) (quoting *Parsons Steel*).

The laws of the state in which the judgments were entered determine whether collateral estoppel applies. *Gober v. Terra + Corp.* (*In re Gober*), 100 F.3d 1195, 1201 (5th Cir. 1996). A Connecticut state court entered the judgment, so the Connecticut rules of issue preclusion apply here. Under Connecticut law, collateral estoppel "prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim." *Lighthouse Landings, Inc. v. Conn. Light & Power Co.*, 15 A.3d 601, 613 (Conn. 2011). Plaintiffs must establish that: "[1] [t]he issue must have been fully and fairly litigated in the first action, [2] it must have been actually decided, and [3] the decision must have been necessary to the judgment." *Wiacek Farms,*

---

[30] The plain meaning of willful and malicious tracks the objective and subjective tests under *Shcolnik* and *Miller*. Willful means "done deliberately: intentional." *Willful*, Merriam-Webster Online Dictionary (https://www.merriam-webster.com/dictionary/willful) (last visited Oct. 17, 2023). And malicious means "having or shown a desire to cause harm to someone" Malicious, Merriam-Webster Online Dictionary (https://www.merriam webster.com/dictionary/malicious) (last visited Oct. 17, 2023).

*LLC v. City of Shelton*, 30 A.3d 27, 32 (Conn. 2011) (quoting *Busconi v. Dighello*, 668 A.2d 716, 723 (Conn. App. Ct. 1995)).

An issue is actually litigated if it was "properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." *See Solon v. Slater*, 287 A.3d 574, 586 (Conn. 2023). Fully and fairly litigated means that the party to be estopped "had an adequate opportunity to litigate the matter in the earlier proceeding." *Custom Pools v. Underwriters Inc.*, No. CV 940135908, 1996 WL 66264, at *2 (Conn. Super. Ct. Jan. 19, 1996); *Jackson v. R.G. Whipple, Inc.*, 627 A.2d 374, 380 (Conn. 1993). To be necessary to the judgment, the determination of the issue must have been central to the judgment rendered (i.e., the judgment could not have been rendered without the determination). *See Wiacek Farms*, 30 A.3d at 32. In other words, "an issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." *Cumberland Farms, Inc. v. Town of Groton*, 808 A.2d 1107, 1116 n.17 (Conn. 2002) (internal citations omitted). It is not enough that a fact could have been determined by the prior court but was not. *World Wrestling Entm't, Inc. v. THQ, Inc.*, No. X05CV065002512S, 2008 WL 4307568, at *6 (Conn. Super. Ct. Aug. 29, 2008) (citing *State v. Aparo*, 614 A.2d 401, 412 (Conn. 1992)).

Connecticut courts also note that there must be an identity of issues between the state court action and the issues to be decided here before collateral estoppel applies. *See, e.g.*, *Peterson v. iCare Mgmt., LLC*, 250 A.3d 720, 729 (Conn. 2021). This requires a court to assess the facts underlying a plaintiff's claim in the first proceeding. *See Solon*, 287 A.3d at 587. A court should determine "what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding." *Id.* (quoting *Aetna Casualty & Sur. Co. v. Jones*, 596 A.2d 414, 421 (Conn. 1991)). Plaintiffs bear the burden of showing collateral estoppel applies here.

A bankruptcy court does not necessarily need a full state court record to apply collateral estoppel. *See Fielder v. King (In re King)*, 103 F.3d 17, 19 n.1 (5th Cir. 1997). But a state court record devoid of factual findings to support a dischargeability determination is not entitled to summary judgment. *See Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997) (denying application of collateral estoppel where state court record lacked findings of fact).

## II.   Summary Judgment is Granted on Compensatory Damages

### A.   The issues were "fully and fairly litigated" and "actually decided"

Under Connecticut law, the allegations in a petition are deemed admitted, and the defendant's liability is established if a default judgment is entered against a defendant based on discovery abuse. *Smith v. Snyder*, 839 A.2d 589, 598 (Conn. 2004). "[A] default judgment is a decision on the merits and has the same preclusive

effect as any other judgment decided on its merits, so long as the party who is precluded had an 'adequate opportunity to litigate the matter in the earlier proceeding.'" *Leblanc-Jones v. Massie (In re Massie)*, No. 14-50579, 2018 WL 3218847, at *3 (Bankr. D. Conn. June 29, 2018) (quoting *State v. Ellis*, 497 A.2d 974, 989 n.22 (Conn. 1985)).

As noted above, the fully and fairly litigated prong is satisfied under Connecticut law where there is opportunity to litigate the matter, whether or not the defendant benefits from it. *Custom Pools*, 1996 WL 66264, at *2. Jones had the opportunity to participate in the state court litigation for three years before the default judgment was entered. He then participated in the damages trial and presented evidence on that issue. He also submitted argument before the state court ruled on common-law and CUTPA punitive damages. Thus, finding that the state court default judgment order and the resulting damages awards have the effect of fully and fairly adjudicating the issues decided in connection with the defamation, intentional infliction of emotional distress, and CUTPA claims is consistent the reasoning and holdings in Connecticut cases.

Jones argues that the precise issue of "willful and malicious injury" was not litigated in the Connecticut Action and that he did not have a chance to present certain defenses at trial. Neither argument changes the outcome here. Remember that Connecticut law focuses on the facts underlying the claims to determine identity of issues, and here those facts show identical issues. *See Solon*, 287 A.3d at 587. Federal courts focus on whether a state court made specific findings about an injury to a plaintiff that meets the test for willful and maliciousness under § 523(a)(6), and not the specific label of "willful and malicious." *See, e.g.*, *Mahadevan*, 617 F. Supp. 3d at 660 (analyzing collateral estoppel principles on defamation and intentional infliction of emotional distress claims); *In re Scarbrough*, 516 B.R. 897 (Bankr. W.D. Tex. 2014) (same); *Guion v. Sims (In re Sims)*, 479 B.R. 415, 421 (Bankr. S.D. Tex. 2012) (same).

The Plaintiffs' complaints contain multiple well pleaded allegations about Jones's intent to cause the Plaintiffs harm or substantial certainty that Jones's actions would cause harm, all of which are deemed admitted as a result of the default judgment. They, along with the jury award, also constitute fully and fairly adjudicated issues (and actually decided ones) for purposes of collateral estoppel.

- "Jones is the chief amplifier for a group that has worked in concert to create and propagate loathsome, false narratives about the Sandy Hook shooting and its victims, and promote their harassment and abuse."[31]

---

[31] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 7, 3 at ¶ 7, ECF Nos. 57-4, 57-6.

- "Jones . . . has persisted in the perpetuation and propagation of this outrageous, deeply painful, and defamatory lie in the face of a mountain of evidence to the contrary, and with no supporting evidence."[32]

- "Alex Jones does not in fact believe that the Sandy Hook Shooting was a hoax — and he never has."[33]

- "Jones has deliberately employed these false narratives about the Sandy Hook shooting, the victims, and their families as part of a marketing scheme that has brought him and his business entities tens of millions of dollars per year."[34]

- "As a result of Jones's campaign, the families and survivors of the Sandy Hook shooting have been forced to endure malicious and cruel abuse at the hands of ruthless and unscrupulous people."[35]

- "On a regular basis, the families and survivors have faced physical confrontation and harassment, death threats, and a sustained barrage of harassment and verbal assault on social media."[36]

- "Jones and Infowars purposefully sought to direct their message and spur 'investigation' of the Sandy Hook families."[37]

- "Jones and his subordinates say what they say not because they are eager to educate or even to entertain their audience. Rather, they deliberately stoke social anxiety and political discord in their listeners . . ."[38]

---

[32] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 8, 3 at ¶ 8, ECF Nos. 57-4, 57-6.

[33] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 9, 3 at ¶ 9, ECF Nos. 57-4, 57-6.

[34] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 11, 3 at ¶ 11, ECF Nos. 57-4, 57-6.

[35] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 13, 3 at ¶ 13, ECF Nos. 57-4, 57-6.

[36] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 14, 3 at ¶ 14, ECF Nos. 57-4, 57-6.

[37] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 83, 3 at ¶ 89, ECF Nos. 57-4, 57-6.

[38] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 97, 3 at ¶ 103, ECF Nos. 57-4, 57-6.

- "The defendants' outrageous, cruel and malicious conduct was the cause of the plaintiff's distress."[39]

- "The defendants, as part of a campaign of harassment and abuse, broadcast numerous outrageous lies about the plaintiffs. . ."[40]

- "The defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[41]

- "The defendants' defamatory publications have injured the plaintiffs' reputations and images, and they have exposed the plaintiffs to public and private hatred, contempt, and ridicule. These false publications have caused the plaintiffs actual and substantial damages."[42]

Jones tries to argue that these issues were not fully and fairly litigated because there was never a trial on liability. But the argument lacks merit because of the legal effect of the default judgment. Jones also claims he was deprived of certain constitutional rights by the state court. This Court cleared the runway for Jones to appeal the Connecticut judgment, including the amount of punitive damages, and nothing in this bankruptcy case affects that appellate right. He may raise complaints about not being permitted the right to argue certain defenses at the damages trial or his constitutional arguments with the appropriate state appellate forum. It is not, however, a basis for this Court to ignore the plain language of the state court's default judgment or the damages awards. A right to appeal the state court's decision aside, the fully and fairly litigated and actually decided prongs are satisfied. *See, e.g.*, *Sims*, 479 B.R. at 421 (citing *Prager v. El Paso Nat. Bank,* 417 F.2d 1111, 1112 (5th Cir. 1969)); *In re Dahlin*, No. 16-36169, 2018 WL 2670501, at *4 (Bankr. S.D. Tex. May 16, 2018) (finding that, under full faith and credit, defendant could not argue against nondischargeability because death penalty sanctions were improperly ordered). The Court rejects Jones's argument that it does not have to give full faith and credit to the state court default judgment order or the resulting damages awards.

---

[39] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 377, 3 at ¶ 457, ECF Nos. 57-4, 57-6.

[40] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 337, 3 at ¶ 417, ECF Nos. 57-4, 57-6.

[41] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 365, 3 at ¶ 445, ECF Nos. 57-4, 57-6.

[42] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 14, 3 at ¶ 433, ECF Nos. 57-4, 57-6.

This Court also agrees with the reasoning in cases like *Herbstein v. Bretman*, 266 B.R. 676, 685 (N.D. Ill. 2001), which held:

> [W]here [a litigant] participated extensively then failed to comply with an express court order issued multiple times at a risk of incurring default, [then] we agree with the Bankruptcy Court . . . that [the litigant] should not now be able to sidestep the collateral estoppel doctrine and litigate an issue in this forum that was forestalled in [another court] due solely to [the litigant's] decisions. [The litigant] is not entitled to a second bite at the apple. The issue underlying the … default judgment were "actually litigated" for purposes of the collateral estoppel doctrine.

### B. The issues were necessary to the judgment, including the jury award of damages

The findings about Jones's willful and malicious injury to the Plaintiffs' were also necessary to the judgment and the jury award of damages.

A defamatory statement is "a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Hopkins v. O'Connor,* 925 A.2d 1030, 1042 (Conn. 2007). To establish a prima facie case of defamation in Connecticut, the plaintiff must show that the defendant published a defamatory statement, which identified the plaintiff to a third person, and that the plaintiff's reputation suffered because of the statement. *Cweklinsky v. Mobil Chem. Co.*, 837 A.2d 759, 763–64 (Conn. 2004).

As noted earlier, the jury was instructed, among other things, that "the defendants defamed the plaintiffs by accusing them of faking their children's death, being crisis actors, and fraudulently misrepresenting themselves to the public at large."[43] The jury was also instructed that the Jones defendants proximately harmed the Plaintiffs by spreading lies about them to their audience and the public by urging people to investigate the Plaintiffs about the alleged "Sandy Hook hoax."[44]

To establish intentional infliction of emotional distress under Connecticut law, a plaintiff must show: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the

---

[43] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 14, ECF No. 57-21.

[44] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 15, ECF No. 57-21.

emotional distress sustained by the plaintiff was severe." *Appleton v. Board of Educ.,* 757 A.2d 1059, 1062 (Conn. 2000) (internal quotation marks omitted) (quoting *Petyan v. Ellis*, 510 A.2d 1337, 1342 (Conn. 1986)).

The jury was instructed, among other things, that the defendants were liable for intentional infliction of emotional distress:

> These four elements thus have been established. One, the defendants intended to inflict emotional distress or the defendants knew or should have known that emotional distress was the likely result of their conduct. Two, that the conduct was extreme and outrageous. Three, that the conduct was the cause of emotional distress experienced by the plaintiff; and four, that the emotional distress sustained by the plaintiff was severe.

Thus, there are specific findings about an objective certainty of harm and a subjective motive to cause harm in connection with the defamation and intentional infliction of emotional distress claims. These are findings about a deliberate and intentional act meant to cause injury, not just a deliberate act that leads to injury. The jury considered damages in a multi-day trial and awarded damages based on these findings.

Nothing in the jury instruction for defamation or intentional infliction of emotional distress contemplates that a lesser standard of intent should apply to Jones's knowledge of the injury. Therefore, the damages for defamation and intentional infliction of emotional distress were necessarily awarded based on the finding that Jones intended to harm the Plaintiffs. On compensatory damages, the jury charge contains specific findings premised on the default judgment—not a broad general charge lacking in detail. This Court focuses on what the jury charge actually says, and not what it *could* say or *could* imply.

This case is like the bankruptcy court decision in *In re Scarbrough*. In *Scarbrough*, state court findings about a debtor's actions supported a finding that the debtor acted with a subjective motive to cause harm, so the debt was nondischargeable under § 523(a)(6). *Scarbrough*, 516 B.R. at 912. The state court findings included, for example, that the debtor damaged another's reputation and failed to turn over evidence for the express purpose of causing that party harm so the debtor could win his case. *Id*. at 905. The defamation jury instruction was that the debtor made statements he "knew were false or which he made with a high degree of awareness that were probably false, to an extent that he in fact had serious doubts as to the truth of the statement(s)." *Id*. at 912. That instruction mirrors the defamation instruction in this case.

14 / 18

The Fifth Circuit Court of Appeals later affirmed the bankruptcy court's holding. *Scarbrough v. Purser (In re Scarbrough)*, 836 F.3d 447, 456 (5th Cir. 2016). The Fifth Circuit held that the jury's finding of damages for defamation independently supported the judgment, was binding, and precluded relitigating that issue in another case. *Id.* Therefore, in Jones's case, the language of the jury instruction confirms that the damages awarded flow from the allegation of intent to harm the Plaintiffs—not allegations of recklessness. *See Caton v. Trudeau (In re Caton)*, 157 F.3d 1026, 1029 (5th Cir. 1998), *as amended on reh'g* (Nov. 3, 1998) (finding that the factual allegations on which liability was based in a state court proceeding showed that the defendant acted with intent to cause injury). Summary judgment on the nondischargeability of the jury awards for compensatory damages is granted.[45]

### III. Summary Judgment is Granted on CUTPA Punitive Damages

For the reasons explained above, the issue of willful and malicious injury was also fully and fairly (and finally) litigated in relation to the CUTPA punitive damages award. Jones had the opportunity to participate in the state court litigation, and he did so. He also submitted argument about CUTPA punitive damages.

The findings on willful and maliciousness were also necessary to the judgment. These findings were actually litigated and determined. There is no question that the issues to be estopped are identical. The state court issued a 45-page opinion on the CUTPA and common law punitive damages.[46] The court determined that the material allegations in the Plaintiffs' complaints, "which have been established by virtue of the defaults" entitled them to an award of CUTPA punitive damages. On CUTPA punitive damages, the court stated it assessed factors such as (i) the degree of the defendants' relative blameworthiness— whether it was reckless, intentional, or malicious; (ii) whether the defendant's action was taken or omitted to augment profit; (iii) whether the wrongdoing was hard to detect; (iv) whether the injury and compensatory damages were small, providing a low incentive to bring the action; and (v) whether the award will deter the defendant and others from similar conduct.[47]

The court considered the degree of blameworthiness the most important consideration and found that Jones's actions were intentional and malicious, and

---

[45] The ultimate amount of this nondischargeable debt could change if Jones succeeds on his state court appeal.

[46] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 22 at 39, ECF No. 58-2.

[47] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 22 at 29–30, ECF No. 58-2 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 418 (2003)).

awarded punitive damages based on these findings.[48] The state court did not base any of the CUTPA punitive damages on recklessness:

> The record clearly supports the plaintiffs' argument that *the defendants' conduct was intentional and malicious, and certain to cause harm* by virtue of their infrastructure, ability to spread content, and massive audience including the "infowarriors." . . . This depravity, and cruel, persistent course of conduct by the defendants establishes *the highest degree of reprehensibility and blameworthiness*. . . Having considered the factors in light of the record before the court, the court awards the sum of $10 million in CUTPA punitive damages to each of the fifteen plaintiffs.[49]

These are specific findings about an objective certainty of harm and a subjective motive to cause harm in connection with the defamation and intentional infliction of emotional distress claims. They are not, as Jones argues, superfluous findings about intent related to the Plaintiffs' harm. It is irrelevant that the state court could have awarded damages on reckless acts. What is important is what the court actually did. Here there are findings about a deliberate and intentional act meant to cause injury, not just a deliberate act that leads to injury. The state court also considered the additional factors listed above, but the focus remained on willful and intentional acts, and not on a lesser standard like recklessness.

In sum, the state court made specific findings that went directly to the amount of punitive damages. They were necessary to the judgment. So summary judgment is granted on the debt for CUTPA punitive damages.

## IV. Summary Judgment is Denied on Common-law Punitive Damages

In Connecticut, common-law punitive damages are limited to the expense of litigation (attorneys' fees and costs) less taxable costs. *See, e.g.*, *Bifolck v. Philip Morris, Inc.*, 152 A.3d 1183, 1213 (Conn. 2016). The jury charge instructed that common-law punitive damages could be awarded if the defendants' actions were willful, wanton, or malicious.[50] A willful and malicious harm is based on an intent without just cause or excuse.[51] And "the intentional injury aspect may be satisfied if

---

[48] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 22 at 43, ECF No. 58-2.

[49] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 22 at 44–45, ECF No. 58-2.

[50] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 24, ECF No. 57-21.

[51] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 24, ECF No. 57-21.

the resultant harm was the direct and natural consequence of the intended act."[52] But wanton misconduct is defined as "reckless misconduct."[53]

There are bankruptcy cases holding that punitive damages should be found nondischargeable based on findings of willful and malicious injury when the compensatory damages and punitive damages flow from the same conduct. *See, e.g.*, *Macris v. Saxton (In re Saxton)*, No. 10-44412, 2011 WL 2293320, at *8 (Bankr. N.D. Tex. June 8, 2011). In *Gober*, the Fifth Circuit held that "the status of ancillary obligations such as attorney's fees and interest depends on that of the primary debt. When the primary debt is nondischargeable due to willful and malicious conduct, the attorney's fees and interest accompanying compensatory damages, including post-judgment interest, are likewise nondischargeable." *Gober*, 100 F.3d at 1208.

It is logical to presume that the findings of willful and malicious injuries based on defamation and intentional infliction of emotional distress were necessary to the award of common-law punitive damages. But unlike the instructions for defamation and intentional infliction of emotional distress, the jury had a right to award common-law punitive damages based on reckless actions *or* actual intent to cause harm. This proves fatal on summary judgment.

Under Fifth Circuit law, recklessness does not meet the standard for willful and malicious injury under § 523(a)(6). *Miller*, 156 F.3d at 603. And there must be intent to cause the injury, not just an act which leads to the injury. *Kawaauhau*, 523 U.S. at 61–62. The record is not expressly clear on whether the damages were solely based on willfulness and maliciousness. Thus, summary judgment is denied on the debt for common-law punitive damages.

## V.  Summary Judgment does not Violate Policy or Jones's Constitutional Rights

Finally, Jones argues that the Court should not grant summary judgment because the state court judgment was entered in anticipation of this bankruptcy proceeding. But there is no evidence of manipulation that even remotely warrants serious consideration of this argument based on the record before the Court. This ancillary argument, and related arguments by Jones about his disagreements with the state court default judgment order and damages awards do not change the

---

[52] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 24, ECF No. 57-21.

[53] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 24, ECF No. 57-21.

outcome.[54] Again, he can make such argument to the appropriate state appellate court.

## Conclusion

For the reasons stated above:

1. Summary judgment is granted on the $965 million debt for compensatory damages awarded in the Connecticut Action for defamation and intentional infliction of emotional distress.

2. Summary judgment is granted on the $150 million debt for CUTPA punitive damages.

3. Summary judgment is denied on the $321.65 million in attorneys' fees and $1,489,555.94 in costs awarded as common law punitive damages.

4. All other objections raised by Jones not specifically addressed above are denied.

Signed: October 19, 2023

_____
Christopher Lopez
United States Bankruptcy Judge

---

[54] Jones also makes several arguments best described as grounds for appeal which this Court declines to address (for example, Jones argues that the CUTPA award was improper based on the allegations in the complaints). Def.'s Resp. to Mot. for Summ. J. at 43, ECF No. 61. These arguments are rejected.