| | |
|---|---|
| PSC_____<br>AC 46131, 46132 and 46133 | SUPREME COURT |
| ERICA LAFFERTY, ET AL.<br>v.<br>ALEX E. JONES, ET AL. | STATE OF CONNECTICUT<br><br>JANUARY 21, 2025 |

## PETITION FOR CERTIFICATION

TRIAL COURT: .... *I don't think that we need to talk about the Second Amendment, the First - I want to steer - this is a hearing in damages. I don't want to hear about the Second Amendment, First Amendment. President's, elections*. A244-45.

### I.   INTRODUCTION

Pursuant to Practice Book § 84-1 et seq., Defendants Alex Jones and his company, Free Speech Systems, LLC (collectively, "Jones"), respectfully petition the Supreme Court of the State of Connecticut to appeal from the decision of the Appellate Court entered in this case on December 10, 2024, and reported at *Lafferty v. Jones*, 229 Conn. App. 487, 537 (2024), and attached hereto at appendix page A159.

Defendants seek certification of issues relating to protections and rights the U.S. and Connecticut Constitutions' guarantees which, for different reasons, the trial court denied, and the Appellate Court refused to consider.  This resulted in an award against media defendant Jones of $1,436,620,000, believed the largest in Connecticut history.  Although the victims of the Sandy Hook tragedy were 20 young children and 6 adult teachers/administrators, suit was brought by various family members of eight of the victims, including parents, siblings, daughters, and husbands, and one of hundreds of law enforcement officers, none of whom had Constitutional standing.  Although no Plaintiff was identified by name (with two

limited exceptions), all claimed to have been defamed by unspecified and/or partially specified opinions of Jones, one of Jones's guests, and actions allegedly taken by unaffiliated third parties about the very public aftermath of Sandy Hook and the gun control efforts it spawned. The legal validity of those claims was never determined by a fact finder because the trial court entered "Death Penalty Sanctions" that, in violation of the U.S. and Connecticut Constitutions, judicially decreed liability and damage causation for everything pleaded by Plaintiffs, including falsity, fault, malice, damage and responsibility for opinions of a guest and actions of unknown "listeners." Two of the three specified reasons for sanctions were tied to the CUTPA claim, which the Appellate Court reversed.

## II. STATEMENT OF THE QUESTIONS PRESENTED FOR REVIEW

1. In connection with this media case brought by public figure plaintiffs, against a media defendant, regarding matters of public concern, did it violate U.S. and Connecticut Constitutions (collectively, "Constitutions") and/or state policies for the trial court to issue sanctions and associated jury instructions curtailing and/or eliminating what Plaintiffs were Constitutionally required to prove and/or the burdens of proof by which they were to be proved (including a judicial decree that statements were not opinions, their falsity, Jones's fault, Plaintiffs' damages in fact, and punitive damages).

2. Can this Court, which is Constitutionally required to independently review the entire record to ensure Constitutional facts were proven, do so when the Sanctions and the record do not otherwise provide such support.

3. Did it violate the Constitutions and/or state policies to allow Plaintiffs to bring defamation and related claims for (i) expressed opinions about

an event for Plaintiffs unnamed in publications; (ii) opinions and statements made by guests; and (iii) actions taken by alleged listeners.

4. Did it violate the Constitutional protections and/or state policies to allow Plaintiffs, who lacked constitutional standing to assert, and be awarded, presumed damages when libel *per se* is not available regarding a media defendant, and Plaintiffs had not validly (i) pleaded and proved libel *per se* or libel *per quod*, or particularized harm of a pecuniary nature, (ii) received "Double Recoveries," (iii) excessive damages and (iv) in the case of intentional infliction, were awarded unconstitutional damages based on a negligence standard.

5. In connection with this media case, did it violate the Constitutions and/or state policies to issue sanctions and associated jury instructions when the sanctions were associated with an improperly asserted CUTPA claim and/or were excessively punitive, especially when lesser sanctions were available and/or the underlying requests were substantially complied with.

## III.   BRIEF HISTORY OF THE CASE

In May 2018, five years after the Sandy Hook tragedy, Plaintiffs filed suit against Jones and others [A1] asserting causes of action for (i) invasion of privacy, (ii) defamation and defamation *per se*, (iii) intentional infliction of emotional distress, and (iv) CUTPA (the "Claims"). *Id.* At a hearing on November 15, 2021 [A89; hereafter "Sanctions Transcript], the trial court entered "death penalty sanctions" ("Sanctions") judicially decreing Jones liable to all Plaintiffs for all claims. Jones filed a notice of defenses [A106] which the trial court struck because of the Sanctions.

Plaintiffs admit Jones is a media defendant. [A1, A3, A4, A5]. As such, he was entitled to all protections afforded media defendants by the Constitutions. The Sandy Hook murders garnered global coverage, prompted controversial

public cries for gun control, and resulted in were untold scores of public reports/comments about perceived anomalies and inconsistencies in published accounts of the tragedy and its aftermath. These, in turn, lead many commentators to express opinions suggesting that some aspects of reporting may have been a "hoax." These were matters of public concern and controversy.

Plaintiffs became public figures, including by voluntarily interjecting themselves into these public controversies and concerns by (i) filing suits (including against the perpetrator's mother, the school, and the gun manufacturer), (ii) giving scores of public interviews, (iii) making public statements, (iv) forming or joining advocacy campaigns, (v) attending and being recognized at highly public events such as President Barack Obama's 2013 State of the Union address and the 2016 Democratic National Convention; and (vi) being awarded presidential medals.

The jury in the ensuing "damages-only" trial, was repeatedly instructed [A112] that the trial court had previously determined all aspects of liability and causation as pleaded by Plaintiffs, including that all statements attributed to Jones (i) were "lies" [A126], (ii) actually said by Jones, (iii) false, (iv) defamatory, and (v) made with legal malice. The jury was further instructed Jones was legally responsible for guest's statements [A118] and everything any possible "listener" may have perpetrated [A126] and to "…consider that it is already established that the defendants' conduct was extreme and outrageous." A132. There was no proof establishing these.

The jury was instructed that Plaintiffs were presumed to have been damaged [A113; 123–29; 131; 133] and that causation of those damages had been judicially determined, obviating need of proof. A126–27; 129. Those instructions within the Charge are collectively called "Jury Instructions." The verdict and ensuing judgment was awarded in four groups for all causes: "**defamation/slander damages**" (which included emotional distress) of

$403,600,000; "**emotional distress damages**" of $561,400,000; **common law punitive damages** of $321,620,000; and **CUTPA punitive damages** of $150,000,000. A142-56.

On appeal, the Appellate Court determined (i) Sanctions were appropriate; (ii) constitutional issues were waived due to inadequate briefing; and (iii) Plaintiffs had no CUTPA cause of action.

The Appellate Court did not specifically decide the questions presented for review in this petition. Nevertheless, the size and interconnected nature of the Constitutional claims with procedural default rules makes this an important case for this state's jurisprudence.

## IV.   ARGUMENT

This case is virtually identical to *Gleason v. Smolinski*, 319 Conn. 394, 396 (2015) in which review was granted for claims pursuant to *State v. Golding*, 213 Conn. 233, 239-40 (1989) and *In re Yasiel R.*, 317 Conn. 773, 781 (2015). The record is adequate to review the alleged claim of error as the Complaint [A1], given the Death Penalty Sanctions Transcript [A89] and Jury Charge [A112]. The numerous claims and defenses Jones was denied are all of constitutional magnitude alleging the violation of fundamental rights.  For example, in violation of constitutional rules, Plaintiffs were not required to prove falsity or fault and certainly did not have to prove them by clear and convincing evidence as constitutionally required.  *Phila. Newspapers v. Hepps*, 475 U.S. 767, 775-76 (1986).  These constitutional violations clearly exist and deprived Jones of a fair trial.  Given U.S. and Connecticut Supreme Court authorities cited hereafter, the errors were not harmless, and Plaintiffs cannot demonstrate their harmlessness beyond a reasonable doubt.  *Gleason* at 402 n. 10.

Review is also warranted under the "plain error review" set forth under Practice Book § 60-5 because the unaddressed issues implicate interests of fundamental justice.  *Lynch v. Granby Holdings,* 230 Conn. 95, 99 (1994).  Also review is requested under this Court's general supervisory authority.

## A. IN A DEFAMATION CASE, SANCTIONS CANNOT BE ENTERED AGAINST A MEDIA DEFENDANT REMOVING PLAINTIFFS' BURDENS

The fact that Jones was a media defendant, the plaintiffs were public figures, and the subject of the alleged defamation was matters of public concern, imposed preempting state and federal constitutional mandates that distinguish

normal garden-variety libel cases from libel cases asserted against media defendants. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 3, (1990). The First Amendment to the Constitution protects freedom of speech and press. U.S. Const. Amend. 1. These freedoms are echoed in the Connecticut Constitution. Art. I., §§ 4-5. Connecticut constitutional jurisprudence is believed to be in accord with federal. [1]

This Court has summarized the issues the Plaintiffs here were Constitutionally required to prove, and the standards of proof associated with each, all of which the Sanctions improperly eliminated. *Holbrook v. Casazza*, 204 Conn. 336, 358 (1987) (citing *Gertz v. Robert Welch*, 418 U.S. 323, 342 (1974) and *Rosenbloom v. Metromedia*, 403 U.S. 29, 30 (1971)). Additionally, defamation requires that the plaintiff have been personally identified, which almost none were. *Cweklinsky v. Mobil Chem. Co.,* 267 Conn. 210, 216-18 (2004). These proof requirements are unalterable "**constitutional rules**," superseding all contrary state laws, rules and procedures. *Phila. Newspapers v. Hepps*, 475 U.S. 767, 775-76 (1986).

To reiterate, one of these unalterable constitutional rules, for example, required Plaintiffs to prove falsity of every challenged statement and do so by clear and convincing evidence, which requirement the Sanctions eliminated. *Id*. Another eliminated constitutional requirement forbade a state from finding defamation against a media defendant without showing actual malice by clear and convincing evidence. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). This Court itself has emphasized this constitutional requirement in *Gleason*, 319

---

[1] As stated in *State v. Geisler*, 222 Conn. 672, 684 (1992) federal constitutional law establishes a minimum national standard for the exercise of individual rights. Hence the Connecticut Constitution is at least coextensive with the federal constitution and may be broader

Conn. at 432-33. It was not done. Importantly, the $321,620,000 in common law punitive damages and $150,000,000 in now-reversed CUTPA punitive damages, was awarded without proof of actual malice by clear and convincing evidence, *Gleason* at 432.

The U.S. Supreme Court has repeatedly stated its constitutional requirements preempt any conflicting substantive or procedural state laws. *N.Y. Times* at 271. This Court has recognized these Constitutional limits. *Gleason* at 430-31. The Supreme Court has stated these restrictions apply beyond defamation, to related claims such as intentional infliction claims [*Snyder v. Phelps,* 562 U.S. 443, 451 (2011)] and all other claims that have as their base defamation-like claims, recognized by this Court. *Gleason* at 432.

Yet the Sanctions imposed here impermissibly excused Plaintiffs from having to plead and prove, (i) identified specific statements, in context (ii) that identified each Plaintiff, (iii) uttered or published by Jones, (iv) falsity in some material respect to be proved by "clear and convincing evidence"; and (v) legal malice, that Jones published specific statements subjectively knowing them to be false or having subjective serious doubts as to their truth; rather the Sanctions declared all of these to have been affirmatively established. Thus, all constitutionally required findings were eliminated by the Sanctions. As a result, the judgment entered against Jones is unconstitutional and must be reversed.

**B.     THIS COURT IS CONSTITUTIONALLY REQUIRED TO INDEPENDENTLY REVIEW THE ENTIRE RECORD TO ENSURE CONSTITUTIONAL FACTS PROVED BY THE REQUIRED STANDARDS – A REVIEW IT CANNOT PERFORM**

The Supreme Court mandates that the facts of this case be independently reviewed by this Court to confirm constitutional conformity. *Bose Corp. v.*

*Consumers Union*, 466 U.S. 485, 499.  This review is to focus on whether required constitutional *facts* have been proved by the required "clear and convincing evidence."  *Rosenbloom*, 403 U.S. at 55.  This Court's focus is particularly required, "where a federal right has been denied on the basis of a fact without evidence to support it …"  *Bose* at 506 n.24; *see also State v. Liebenguth*, 336 Conn. 685, 698-99 (2020).

This Court's duty is not limited to making sure the trial court elaborated or espoused constitutional principles, which it did not as the very opening line of this Motion demonstrates, but to make "….a conscious determination of the existence or nonexistence of the critical facts."  *Time, Inc. v. Firestone*, 424 U.S. 448, 463 (1976).  The "conscious determination" of "critical facts" requires the examination of the "content, form, and context" of each alleged libel "as revealed by the whole record" [*Snyder*, 562 U.S. at 453]  reviewing de novo the specific statements at issue and the circumstances under which they were made to determine whether each alleged libelous statement is of a character that the principles of the First Amendment are protected.  *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749 (1985).  As this Court has said: "Context is a vital consideration…" *Netscout Sys. v. Gartner, Inc.,* 334 Conn. 396, 412 (2020).

Here, a review to confirm that constitutional issues have been properly decided by the fact finder to the requisite "clear and convincing" standard is impossible because no such determinations were made and no adequate record exists, given the Sanctions' decrees.  While the record available does demonstrate massive constitutional issues at stake, the Sanctions and actions of the trial court have improperly precluded the development of a proper record from which this Court could make the review required by the Supreme Court.  At the ensuing damages-only trial, Jones was even forbidden to offer any defense [A112, 117, 122 – 125] even though he had filed a notice of defenses [A106] entitling their

presentation.  *De Blasio v. Aetna Life & Cas. Co.*, 186 Conn. 398, 401 (1982); *see also* PB § 17-34.  This was a constitutional deprivation of Jones's rights as he was precluded from making the very record this Court is charged with reviewing and is being denied.  The inability of this Court to review a full record required to determine that all constitutional issues have been properly proven mandates reversal.

**C.    CONSTITUTIONAL LIMITATIONS REQUIRE PLAINTIFFS PROVE (A) SPECIFIC STATEMENTS, (B) NAMING PLAINTIFFS, (C) MADE BY JONES AND (D) FORBID JONES'S LIABILITY FOR ACTS OF UNRELATED THIRD PARTIES**

The Constitution and this Court's precedents require that "[t]he starting point for our analysis is an examination of the statements at issue." *State v. Krijger*, 313 Conn. 434, 452 (2014).  This requires specification of the "content, form, and context" of the alleged defamatory speech, "include[es] what was said, where it was said, and how it was said." *Snyder*, 562 U.S. at 453-54.  And "[e]ach statement … requires proof of each of the elements for defamation." *Gleason*, at 431.  Here, nowhere was there any specification of the entirety of what was said, where it was said, and how it was said.

Moreover, phrases such as "hoax" and "fake as a three-dollar-bill," cited out of context in the Complaint, are plainly opinions about events, lacking any specific "what, where, or how" to explain or support them.  They are opinions about events, specific news accounts or news conferences, made in a broader social context. *Montgomery v. Risen*, 875 F.3d 709, 714 (D.C. Cir. 2017) ("hoax" is "loose, figurative, or hyperbolic" and "may not serve as a basis for liability") (citing *Milkovich,* 497 U.S. at 21).  Moreover, it is not even clear what the "hoax" reference pertains too; a press conference? a specific news coverage segment?

The media landscape is rife with groups challenging various events, including Holocaust denial, moon landing skepticism, 9/11 conspiracies, and even flat Earth claims. However, such statements critique or dismiss the events themselves, not the character, conduct, or reputation of those associated with them. Referring to an event as a "hoax" targets the nature of the event, not any specific individual. *Rosenblatt v. Baer*, 383 U.S. 75, 81 (1966) (alleged libel must be "specifically directed at the plaintiff"). Aside from the fatal constitutional obstacles, from a standpoint of plain error, creating liability to media defendants and conferring standing to claiming damages to extended families and law enforcement officials for opinions about publicly discussed events, creates a nightmare of identifying potential plaintiffs, which implicates interests of fundamental justice.

Further fatal, none of the plaintiffs (with two limited exceptions) were identified, named, singled out, or directly referenced in any way. "At common law, '[t]o establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; [and] (2) the defamatory statement identified the plaintiff to a third person…" *Gleason*, at 430-31. Particularly missing is how any individual Plaintiff was "defamed" by statements directed at generalized events, not at any individual person. No statement complained of alleged misconduct, dishonesty, or moral failing on the part of any Plaintiff. No Plaintiff who was not identified in any challenged statement thus has constitutional standing to sue a media defendant for defamation or any defamation-related claim.

Further, the trial court instructed the jury that Jones was legally responsible for all statements/opinions of guests [A118] such as Wolfgang Halbig, an independent journalist who alleged made defamatory statements as a program guest. A4. However, there were no allegations or proof making Jones responsible for Halbig's statements other than the conclusory allegation that

"Jones specifically directed and encouraged Halbig to continue his Sandy-Hook-related activities in Connecticut." A8.[2]  The Charge also stated "[D]efendants proximately caused harm to the plaintiffs by …urging their audience and the public to investigate and look into the plaintiffs …" [A126] "result[ing] in members of the defendants' audience and the public cyberstalking, attacking, harassing, and threatening the plaintiffs…" A126.  However, there was no allegation in the Complaint nor offered proof tying Jones to actions taken by third parties.  Therefore, to make Jones liable for these actions was unconstitutional.  *See McKesson v. Doe*, 144 S. Ct. 913, 914 (2024) (Sotomayer, J., concurring) (summarizing the law forbidding liability for "incitement" of third parties to act, echoing the proscriptions of *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982)).  It was thus unconstitutional for Jones to be decreed liable for guest comments, certainly absent malice, or acts of strangers.

**D.    DAMAGES AWARDED ARE UNCONSTITUTIONAL WHERE (A) AWARDED ON PRESUMED DAMAGES, (B) LIBEL *PER SE* NOT PRESENT, (C) THEY ARE DOUBLE RECOVERIES AND EXCESSIVE AND (E) WRONG STANDARDS USED**

Damages awarded [A141-58] are unconstitutional and violate Connecticut public policy.  Constitutionally, media defendants cannot be charged with presumed damages without proof of malice [*Milkovich,* 497 U.S. at 15-16] yet the jury was repeatedly instructed damages are presumed.  A126-27, 129, 133. This is

---

[2] In the damages trial, Plaintiff FBI agent Aldenberg said Halbig was "an associate of Mr. Jones and Infowars," solely based on his appearance as a guest on Jones's show. A224.

reversible error.

Defamation *per se* charges a plaintiff with a crime involving moral turpitude punishable by imprisonment or to which an infamous penalty is attached. *Gleason*, at 947. Here, the Complaint asserts defamation *per se* [A34] but only in conclusory fashion states the alleged defamations "implicate…heinous criminal conduct." [*Id*.]. Pleading and proof of libel *per se* allows a plaintiff to recover general damages for reputational injury, humiliation and mental suffering as was done here. *Gleason,* at 947. But there is no libel *per se* present here because (i) nowhere in the pleading did it state what that the "heinous crime" was, (ii) no proof was offered, and (iii) constitutionally there can be no libel *per se* for a media defendant sued by a public figure. *Nunes v. Lizza,* 2023 U.S. Dist. LEXIS 71719, at *107 (N.D. Iowa 2023). As the damage award was based on libel *per se*, it must be vacated.

That libel *per se* is not present, leaves only libel *per quod*, which requires pleading and proof of actual economic damages of a pecuniary nature, *i.e.*, loss of a business opportunity or position, which no Plaintiff pled or proved. *Urban v. Hartford Gas Co.,* 139 Conn. 301, 308-09 (1952).

CUTPA reversal means the associated compensatory and punitive damage awards must be reversed. In determining that amount, it is apparent CUTPA damages were awarded in the same measures as the other claims, consisting of "**defamation/slander damages**" and "**emotional distress**" [A141-58]. As "defamation damages" encompasses both reputational and emotional distress damages, [*Chugh v. Kalra*, 342 Conn. 815, 850-51 (2022)] reversal of CUTPA reveals the "double recovery" which violates Connecticut law and requires reversal. *Haynes v. Yale-New Haven Hospital*, 243 Conn. 17, 22 n.6 (1997).

Additionally, Plaintiffs received $561,400,000 for emotional distress, but that was submitted based on a negligence, "knew or should have known" standard. A123. *See Erickson Prods. v. Kast,* 921 F.3d 822, 833 (9th Cir. 2019).

This is unconstitutional. *Gertz*, 418 U.S. at 334. Additionally, the amounts awarded when no plaintiff has experienced economic damage, bodily harm, or even consulted mental health professionals, is excessive, shocking the conscience requiring reversal.

### E.   SANCTIONS WERE UNCONSTITUTIONALLY EXCESSIVE, PARTICULARLY SINCE THEY WERE PRIMARILY BASED ON NOW-REVERSED CUTPA CLAIM, AND JONES MADE SUBSTANTIAL COMPLIANCE

This Court has yet to determine whether there is an outer limit to the proportionality analysis reviewing courts engage in to determine whether sanctions awards are appropriate. Here, the Sanctions were not proportionate to the offenses and as they were tied to now-vacated CUTPA claim should have never been entered.

The Sanctions Transcript states three reasons. First, Jones's lawyer filed a motion for leave to depose Hillary Clinton [A246] containing the statement: "*On advice of counsel, at least one plaintiff has refused to answer how so many of the clients all ended up represented by the same firm. The witness claimed not to know how her legal fees were being paid,*" claiming they violated a protective order. A53. The trial court denied the deposition request [*id.*] and later held this as one of three grounds for Sanctions. It is not a knowing violation of a discovery order and was unjust, as the two offending sentences did not disclose testimony and revealed nothing of substantive testimony. Sanctions based on this were disproportionate to the penalty of denying Jones his Constitutional due process rights.

Second, Jones's lawyers could not retrieve in satisfactory form, never-used Analytics data showing sales ("Analytics Data"), *i.e.*, a subset of the issues presented to this Court earlier. *Lafferty v. Jones*, 336 Conn. 332, 378 & n. 35

(2020).  Third, Jones's lawyers could not retrieve accounting "subaccounts" from their accounting journal entries also sought for sales information ("Sub-ledger Data").  The Analytics and Subledger Data have nothing to do with defamation, as the U.S. Supreme Court has plainly stated a profit motive is irrelevant in libel cases and causes based on First Amendment speech issues. *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 667 (1989).  Thus, both were tied directly to the now reversed CUTPA claim, as Plaintiffs admitted: "**These allegations are significant to the plaintiffs' Connecticut Unfair Trade Practices Act claims.**"  A239.  As CUTPA was reversed the Sanctions should be as well.

Moreover, the death penalty sanctions were disproportionately punitive. *Ridgeway v. Mount Vernon Dire Ins. Co.*, 238 Conn. 60 (2018) and *Millbrook Owners Assn., Inc. v. Hamilton Standard*, 258 Conn. 1 (2001).  Making sure "the punishment fits the crime" is the key to proportionality.  It is not here.  Jones appeared, substantially complied with discovery, engaged in motion practice, attended endless "status" conferences, sat for dozens of depositions and provided tens of thousands of pages of documents to Plaintiffs.  For Sanctions to stand in the face of Jones's efforts and the vacating of the CUTPA claim, is a denial of Constitutional Due Process and disproportionate.

Upon final resolution of this case, the holdings of the trial court and Appellate Court be reversed and the case sent back for retrial.

## V.  CONCLUSION

For the reasons stated herein, Jones requests that this Petition for Certification be granted.

Dated: January 21, 2025    DEFENDANTS-APPELLANTS

*/s/ Jay M. Wolman*
Jay M. Wolman, Juris No. 433791 of
**Randazza Legal Group**
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel.: (203) 539-6666
Email: jmw@randazza.com

**COUNSEL FOR ALEX JONES AND FREE SPEECH SYSTEMS, LLC**

*/s/ Ben C Broocks*
*Pro Hac Vice*
Ben C Broocks, Juris No. 446537
Texas State Bar No. 03058800
**BROOCKS LAW FIRM PLLC**
248 Addie Roy Road, Suite B301
Austin, Texas 78746
Phone: (512) 201-2000
Fax: (512) 201-2032
Email: bbroocks@broockslawfirm.com

**COUNSEL FOR ALEX JONES**

## **CERTIFICATION**

Pursuant to Practice Book §§ 62-7 and 84-5, it is hereby certified that a copy of the foregoing was sent electronically this 21st day of January 2025, to:

Alinor Sterling, Josh Koskoff, and Christopher M. Mattei
**Koskoff, Koskoff & Bieder, P.C.**
350 Fairfield Ave.
Bridgeport, CT 06604
Tel.: (475) 766 – 4989
Email: asterling@koskoff.com
cmattei@koskoff.com
jkoskoff@koskoff.com

It is also certified that this document has been redacted or does not contain any names or other personal identifying information that is prohibited from disclosure by rule, statute, court order, or case law.  It is also certified that this document complies with all applicable rules of appellate procedure.  It is also certified that this petition, exclusive of the case caption, signature block of counsel of record, certifications, and appendix, is 3984 words.

/s/ Jay M. Wolman
Jay M. Wolman, Juris No. 433791 of
**Randazza Legal Group**
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel.: (203) 539-6666
Email: jmw@randazza.com

## **CERTIFICATION OF INTERESTED ENTITY**

Pursuant to Practice Book § 82-3, Plaintiff, Free Speech Systems, LLC is an interested entity, as defined by Practice Book § 60-4. Free Speech Systems, LLC is owned or controlled as follows: Alex E. Jones: 100%.

Alex Jones has also instituted a Chapter 7 bankruptcy proceeding before the Southern District of Texas, Houston Division. *See In re: Free Speech System, LLC*, Case No. 22-60043 and the Chapter 7 Trustee, Christopher R. Murray may claim an interest in the assets and/or ownership of Free Speech Systems, LLC.

The undersigned certifies that the above listed persons or entities have either (1) an ownership interest of 10 percent or more in the party; or (2) a financial or other interest in the outcome of the proceeding that the justices should consider in determining whether to disqualify themselves under Rule 2.11 of the Code of Judicial Conduct.

*/s/ Jay M. Wolman*
Jay M. Wolman, Juris No. 433791 of
**Randazza Legal Group**
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel.: (203) 539-6666
Email: jmw@randazza.com

| | | |
|---|---|---|
| PSC_____  AC 46131, 46132 and 46133 | | SUPREME COURT |
| ERICA LAFFERTY, ET AL. | | STATE OF CONNECTICUT |
| v. | | |
| ALEX E. JONES, ET AL. | | JANUARY 21, 2025 |

## APPENDIX TO PETITION FOR CERTIFICATION

Table of Contents

Plaintiffs' Complaint ................................................................................................................A1

Plaintiffs' Amended Complaint (Trial Docket No. 989) ......................................................A40

November 15, 2021 Trial Transcript ....................................................................................A89

Defendants' Notice of Defenses (Trial Docket No. 594) ....................................................A106

October 7, 2022 Jury Charge Transcript[1] .........................................................................A112

Jury Verdict (Trial Docket No. 1010) ................................................................................A141

Appellate Court Decision ....................................................................................................A159

List of All Parties to Appeal ................................................................................................A221

Portions of September 13, 2022 (Vol. II of III) Trial Transcript ........................................A222

Plaintiffs' Motion for Sanctions (Trial Docket No. 450) ....................................................A225

Portions of September 21, 2022 (Vol. II of IV) Trial Transcript ........................................A244

Defendants' Motion to Take Out of State Deposition (Trial Docket No. 384) ...................A246

Order Denying Motion for Commission for Deposition (Trial Docket No. 385.20) ..........A253

---

[1] This document was obtained from a filing made in an Adversary Proceeding in the Bankruptcy Court for the Southern District of Texas, Houston Division, *David Wheeler, et al. v. Alex E. Jones, et al.,* Adv. 23-03037, Dkt. 57.  The document accordingly bears the court's CM/ECF number.