IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) ) ) Chapter 7 ) |
| ALEXANDER E. JONES, | ) Case No. 22-33553 (CML) ) |
| Debtor. | ) ) |

**JOINT REPLY OF THE SANDY HOOK FAMILIES
IN SUPPORT OF THE SETTLEMENT MOTION**

The Connecticut Families[1] and the Texas Families[2] (collectively, the "Sandy Hook Families"), as creditors and parties in interest in the above-captioned case, file this reply to the Jones Objection[3] filed by Alexander E. Jones ("Jones") and in further support of the Settlement Motion.[4] In support hereof, the Sandy Hook Families respectfully state as follows:

1. The Proposed Settlement represents a major breakthrough in this case, resolving the allowed claim amounts of the Debtor's largest creditors—the Sandy Hook Families—and paving the way for the Trustee to begin making interim distributions. In addition, the Proposed

---

[1] The "Connecticut Families" are Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, and Erica Ash.

[2] The "Texas Families" are Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and the Estate of Marcel Fontaine.

[3] The "Jones Objection" refers to the *Response and Objection to the Trustee's Expedited Motion for Entry of an Order (I) Authorizing and Approving the Settlement By and Between the Chapter 7 Trustee, the Connecticut Families and the Texas Families and (II) Granting Related Relief and Subject to the Pending Alexander E. Jones Expedited First Motion for Continuance and for Expedited Discovery and Subject to Hearing on and Consideration of the Alexander E. Jones's Motion to Reconsider this Court's Order Determining that Connecticut Judgment on Appeal Bars Challenges to Jones's Dischargeability* [Docket No. 1023].

[4] The "Settlement Motion" refers to the *Trustee's Expedited Motion for Entry of an Order (I) Authorizing and Approving the Settlement By and Between the Chapter 7 Trustee, the Connecticut Families, and the Texas Families and (II) Granting Related Relief* [Docket No. 1011]. The "Proposed Settlement" refers to the settlement by and between the Connecticut Families, the Texas Families, and the chapter 7 Trustee (the "Trustee"), embodied in the Settlement Motion.

1

Settlement resolves various state court collection actions that Jones has removed and sought to transfer to this court (the "Court"), as well as the pending appeal of this Court's Supplemental FSS Dismissal Order.[5] By any measure, the Proposed Settlement falls well within the range of reasonableness.

2. Jones is the only party to raise an objection to the Proposed Settlement. The Jones Objection rests entirely on willful mischaracterizations of the Proposed Settlement, a baseless theory that the Trustee cannot administer this chapter 7 estate until Jones has exhausted every possible appeal, no matter how long that takes, and a repugnant effort to paint himself as a victim of the Sandy Hook Families. As set forth below, each of these suggestions is baseless, and the Proposed Settlement should be approved as being in the best interests of the chapter 7 estate.

### A. The Jones Objection is Premised on A Willful Mischaracterization of the Proposed Settlement

3. The bulk of the Jones Objection rests on Jones's repeated assertion that the Proposed Settlement somehow authorizes the Trustee to dismiss Jones's appeals of the judgments rendered against him personally in the State Court Litigation[6], therefore prejudicing Jones with respect to those non-dischargeable judgments. Jones Obj. at ¶¶ 2, 4(b), 5, 7. This allegation is baseless and mischaracterizes the Proposed Settlement. Indeed, the Proposed Settlement explicitly does *not* impair Jones's right to continue appealing the judgments rendered in the State Court Litigation as against him. The proposed order approving the Proposed

---

[5] The "Supplemental FSS Dismissal Order" refers to the *Order Supplementing Order Dismissing Case* [Case No. 22-6004, Docket No. 1021].

[6] The "State Court Litigation" refers to: (i) Lafferty v. Jones, X06-UWY-CV-18-6046436-S, in the Judicial District of Waterbury of the Connecticut Superior Court; (ii) Sherlach v. Jones, X06-UWY-CV-18-6046437-S, in the Judicial District of Waterbury of the Connecticut Superior Court; (iii) Heslin v. Jones, Cause No. D-1-GN-18-001835 in the 261st District Court of Travis County, Texas; (iv) Lewis v. Jones, Cause No. D-1-GN-18-006623 in the 98th District Court of Travis County, Texas; (v) Pozner v. Jones, Cause No. D-1-GN-18-001842, in the 345th District Court of Travis County, Texas; and (vi) Fontaine v. Jones, Cause No. D-1-GN-18-001605 in the 459th District Court of Travis County, Texas.

2

Settlement [Docket No. 1011-1] (the "Proposed Settlement Order") specifically states, "Notwithstanding anything to the contrary, the rights of [Jones], in his individual capacity, to pursue any appeal of any judgments awarded in favor of the [Sandy Hook Families] as against Jones in the State Court Litigation, if any, are preserved." Prop. Settl. Ord. at ¶ 6.

4. The Proposed Settlement does provide that the appellate rights of Free Speech Systems, LLC ("FSS") constitute property of FSS and therefore are under the Trustee's control. Prop. Settl. Ord. at ¶ 14. Notably, this provision applies solely to the appellate rights of FSS and *not* Jones. This provision is appropriate for several reasons. *First*, the Supplemental FSS Dismissal Order provided that, effective as of June 14, 2024, all property of the bankruptcy estate of FSS vested in the Jones bankruptcy estate. Such property necessarily includes claims and causes of action belonging to FSS, including defensive appellate rights. *See Croft* v. *Lowry (In re Croft)*, 4737 F.3d 372, 378 (5th Cir. 2013) (holding that defensive appellate rights constitute property of the estate within the purview of the trustee). *Second*, Jones no longer owns or controls FSS—a decision he made when he *chose* to convert his case to a chapter 7 proceeding—and therefore has no right to continue prosecuting appeals on behalf of FSS. *See Commodity Futures Trading Comm'n* v. *Weintraub,* 471 U.S. 343, 352–53 (1985) ("the Bankruptcy Code gives the trustee wide-ranging management authority over the debtor. In contrast, the powers of the debtor's directors are severely limited. Their role is to turn over the corporation's property to the trustee and to provide certain information to the trustee and to the creditors. Congress contemplated that when a trustee is appointed, he assumes control of the business, and the debtor's directors are completely ousted.").[7] *Third*, there was no discharge ordered in the FSS case, and the Trustee has made clear his intent to sell FSS's assets, meaning

---

[7] Yet, last week, Jones continued to file appellate proceedings in Connecticut where he (and his counsel) purported to act on behalf of FSS despite having *no authority* to do so; a blatant violation of the automatic stay.

3

that, unlike Jones personally, Jones has no personal interest in continuing to appeal judgments against FSS.  Ultimately, the Trustee is empowered to administer this chapter 7 case, which includes the assets of FSS, and therefore is exclusively entitled to determine whether to continue prosecuting appeals *on behalf of FSS*.

5. The Proposed Settlement preserves Jones's personal appellate rights, while appropriately recognizing that FSS is differently situated.  Jones's allegations that the Proposed Settlement somehow impairs his personal appellate rights are baseless.

**B. The Trustee is Authorized to Settle Claims Against FSS and the Jones Estate**

6. Jones next argues that the Proposed Settlement is somehow improper, and that the Trustee is advancing it for some pretextual reason, because there is "no dispute" involving the Trustee to settle.  This argument (incorrectly) assumes that the Trustee has no role in resolving claims against FSS or the Jones estate.  Likewise, Jones argues that the Trustee *cannot* settle the Sandy Hook Families' claims against the estate, but is instead *required* to passively wait until such time that *Jones* exhausts every single appellate right available to him.  These arguments, which demand unthinkable delay to the administration of this case, are equally baseless.  The Trustee is squarely authorized to settle claims against the estate (including claims held by or against FSS) if doing so satisfies the requirements of Rule 9019 of the Federal Rules of Bankruptcy Procedure and otherwise aids in the expedient administration of the chapter 7 estate.

7. While no specific provision of the Bankruptcy Code explicitly sets forth a chapter 7 trustee's general authority to compromise claims and to enter into settlements on behalf of a debtor estate, it is a generally accepted principle that such authority arises as a natural consequence of a chapter 7 trustee's statutory responsibilities to reduce to money property of the

4

estate, to object to the allowance of claims, and to otherwise close the estate as expeditiously as is compatible with the best interests of creditors and other parties in interest. *In re Levine*, 287 B.R. 683, 691 (Bankr. E.D. Mich. 2002). In fact, a trustee is required to reach an informed judgment as to whether continued litigation of a claim objection is in the best interests of an estate and other parties in interest. *In re DVR, LLC*, 582 B.R. 507 (Bankr. D. Colo. 2018). Similarly, in instances where fixing the value of an unliquidated claim would otherwise delay the administration of a case, section 502(c) of the Bankruptcy Code *requires* that the Court estimate the value of such claim, so as not to delay the administration of the case.

8. Jones's position—that claims can only be allowed in bankruptcy once all state court appellate rights have been exhausted—is not only unprecedented, it is unfathomable on the facts of this case. For example, certain of the Texas Families' claims have not yet reached the trial phase, meaning that, under Jones's theory, such claims could only be allowed after such trial concludes, all state court appeals (or motions for reconsideration) are resolved, and petitions for certiorari before the United States Supreme Court are fully resolved. Allowing such process to unfold would likely entail a delay of up to *six years*, during which time the Trustee would be unable to make distributions from or otherwise fully administer the chapter 7 estate. It is no surprise that no bankruptcy court has ever adopted such position, which would, of course, incentivize Jones to delay matters indefinitely.

9. This is precisely the scenario against which section 502 of the Bankruptcy Code is intended to protect—and for which trustees routinely invoke Rule 9019—and Jones should not be permitted to hold the estate hostage to protracted litigation. *See In re DVR, LLC*, 582 B.R. 507, 517 (Bankr. D. Colo. 2018) ("Thus, the trustee's settlement power allows him to protect the

5

interests of the overall estate. To hold otherwise, would permit a creditor to hold the estate hostage to protracted litigation.").

10. The Proposed Settlement reflects a reasonable exercise of the Trustee's inherent claims estimation and settlement powers, and provides a path forward to realize tangible benefits that further the interests of the overall Jones estate. The Proposed Settlement not only represents a compromise of divergent viewpoints held by the Sandy Hook Families—who are, by far, Jones's largest creditor constituencies—regarding the allocation of estate distributions, but it also represents the Trustee's informed business judgment regarding the best interests of the Jones estate and all creditors.

11. This Court has made clear its desire to end this chapter 7 case in 2025, and settlement of the largest claims against the estate represents the *only* viable means for achieving that goal. *See Bankr. Ct. Hr'g Tr.* 375:11–375:16 (December 10, 2024) ("This case needs to come to a close.…[I]t's December and this is a 2022 case. This case ends in 2025. It has to. And it's got to get back on track."). Jones merely seeks delay. In sum, there is a live "dispute"—i.e., the allowed amount of the Sandy Hook Families' claims—and the Proposed Settlement resolves them in a reasonable manner.

### C. Jones's Repeated Allegations That the Sandy Hook Families Want to "Destroy" Him Should Not Be Entertained

12. Littered throughout the Objection are Jones's accusations that *he* is a victim, a "political target" of "organized litigants," and that the Sandy Hook Families are only interested in "destroying" him. *See* Jones Obj. at ¶¶ 22, 52. Perhaps even more astonishing, Jones claims that Sandy Hook has "not been a topic now for twelve (12) years" on his show *Id*. at ¶ 22.

13. In reality, Jones continues to stoke the belief that the Sandy Hook shooting is a hoax, continues to defame the Sandy Hook Families, and—as recently as December—threatened

6

the Sandy Hook Families. Proving that old habits die hard, Jones encouraged his listeners to also threaten the Sandy Hook Families. On December 9, 2024, Jones utilized FSS's broadcast (i.e., estate property) assets to exclaim:

> "So, it doesn't matter what I do or what goes on. I'm never going stop suing [the Sandy Hook Families]. I'm never going to stop exposing you, ever. And, I've got a posse of listeners and activists that we're a rallying point like a Roman standard the enemy army wants to capture."

*See, The War Room*, December 9, 2024 (available at: https://banned.video/watch?id=675797531481d077225bfe1e) at 16:38. Thereafter, Jones stated that the bodies of the Sandy Hook Families' children were "piled up in a pyramid" "with no blood," facts that he insinuated were evidence that the shooting had been staged. *Id.* Notwithstanding uncontroverted sworn testimony in the State Court Litigation, Jones stated that the Sandy Hook Families "know full well that nobody peed on their kids' graves." *Id.* A few days later, Jones again used his media platforms (i.e., estate property) to claim that the Sandy Hook Families "made up all this stuff I supposedly did to raise money off me." *See, The Alex Jones Show*, December 11, 2024 (available at: https://banned.video/watch?id=675a3e03c4e095750998c803).

14. The Sandy Hook Families do not seek to "destroy" Jones. They are motivated, justifiably, to both maximize their recovery in a timely manner and to protect themselves from Jones's continued abuse and harassment. As explained above, the Proposed Settlement ensures that the Sandy Hook Families, who have waited years to receive any recovery from Jones, are fairly and equitably compensated in a timely manner. The Sandy Hook Families are also motivated to protect themselves from incessant abuse by Jones.

15.     Contrary to the false assertions in the Jones Objection, Jones not only continues to spread lies about and defame the Sandy Hook Families, but he does so *while being paid $45,000 per month by the estate*.  It is therefore no surprise that Jones has chosen to pursue a scorched earth litigation approach that allows him to continue using FSS's broadcast assets and being paid by the estate while delaying payments to his creditors.  It is abhorrent to the Sandy Hook Families that Jones is able to continue using FSS's assets, which should be operating for the benefit of Jones's creditors, as a launch pad for his continued attacks against them.  In light of Jones's actions, the Sandy Hook Families submit that their interests in minimizing the reach of Jones's harmful remarks and in protecting themselves from harassment are entirely justified.

### D. Conclusion

16.     The Sandy Hook Families submit that the Proposed Settlement is in the best interest of the estate and all other parties in interest and, accordingly, requests that this Court authorize and approve the Settlement Motion.

[*Remainder of page intentionally left blank*]

Dated: February 3, 2025                                    Respectfully submitted,

| | |
|---|---|
| */s/ Avi Moshenberg* | */s/ Ryan E. Chapple* |
| **LAWSON & MOSHENBERG PLLC** | **CAIN & SKARNULIS PLLC** |
| Avi Moshenberg | Ryan E. Chapple |
| State Bar No. 24083532 | State Bar No. 24036354 |
| 801 Travis Street | 303 Colorado Street, Suite 2850 |
| Suite 2101 #838 | Austin, TX 78701 |
| Houston, TX 77002 | Telephone:  (512) 477-5000 |
| Telephone:  (832) 280-5670 | Fax:  (512) 477-5011 |
| E-mail:  Avi.Moshenberg@lmbusinesslaw.com | E-mail:  rchapple@cstrial.com |
| **CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, PC** | **KOSKOFF KOSKOFF & BIEDER, PC** |
| Jarrod B. Martin | Alinor C. Sterling (admitted *pro hac vice*) |
| State Bar No. 24070221 | 350 Fairfield Avenue |
| 1200 Smith Street, Suite 1400 | Bridgeport, CT 06604 |
| Houston, TX 77002 | Telephone:  (203) 336-4421 |
| Telephone: (713) 356-1280 | E-mail:  asterling@koskoff.com |
| Fax: (713) 658-2553 | |
| E-mail: jarrod.martin@chamberlainlaw.com | **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |
| **WILLKIE FARR & GALLAGHER LLP** | Kyle J. Kimpler (admitted *pro hac vice*) |
| Jennifer J. Hardy | Paul Paterson (admitted *pro hac vice*) |
| State Bar No. 24096068 | Leslie Liberman (admitted *pro hac vice*) |
| 600 Travis Street | Vida J. Robinson (admitted *pro hac vice*) |
| Houston, TX 77002 | 1285 Avenue of the Americas |
| Telephone: (713) 510-1766 | New York, NY 10019-6064 |
| Fax: (713) 510-1799 | Telephone:  (212) 373-3000 |
| E-mail: jhardy2@willkie.com | Fax:  (212) 757-3990 |
| | E-mail:  kkimpler@paulweiss.com |
| **WILLKIE FARR & GALLAGHER LLP** |              ppaterson@paulweiss.com |
| Stuart R. Lombardi (admitted *pro hac vice*) |              lliberman@paulweiss.com |
| Ciara A. Sisco (admitted *pro hac vice*) |              virobinson@paulweiss.com |
| 787 Seventh Avenue New York, NY 10019 | |
| Telephone: (212) 728-8000 | *Co-Counsel to the Connecticut Families* |
| Fax: (212) 728-8111 | |
| E-mail: slombardi@willkie.com | |
| E-mail: csisco@willkie.com | |
| | |
| *Co-Counsel to the Texas Families* | |

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing objection and reply has been served on counsel for Jones and all parties receiving or entitled to notice through CM/ECF on this 3rd day of February, 2025.

                                           */s/ Ryan E. Chapple*
                                           Ryan E. Chapple