EXHIBIT 20

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ALEXANDER E. JONES and        )  CASE NO: 22-33553-cml
OFFICIAL COMMITTEE of         )
UNSECURED CREDITORS,          )  Houston, Texas
                              )
          Debtor.             )  Tuesday, September 24, 2024
                              )  2:31 PM to 3:06 PM
------------------------------)
                              HEARING

BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Chapter 7        CHRISTOPHER R. MURRAY
Trustee:             Jones Murray LLP
                     602 Sawyer Street, Suite 400
                     Houston, TX 77007
                     832-529-1999

For Christopher      ERIN JONES
Murray, Chapter 7    Jones Murray LLP
Trustee:             602 Sawyer Street, Suite 400
                     Houston, TX 77007
                     832-529-1999

                     JOSHUA WOLFSHOHL
                     Porter Hedges LLP
                     1000 Main Street, 36th Floor
                     Houston, TX 77002
                     713-226-6000

For U.S. Trustee:    HA MIN NGUYEN
                     Office of the United States Trustee
                     515 Rusk Street, Suite 3516
                     Houston, TX 77002
                     202-590-7962

For Free Speech      ANNIE E. CATMULL
Systems, LLC:        O'Connor Wechsler PLLC
                     4400 Post Oak Parkway, Suite 2360
                     Houston, TX 77027
                     281-814-5977

EXHIBIT 20

For Texas Plaintiffs      AVI MOSHENBERG
                          Lawson & Moshenberg PLLC
                          801 Travis Street, Suite 2101, #838
                          Houston, TX 77002
                          903-316-9155

                          JARROD MARTIN
                          Chamberlain Hrdlicka
                          1200 Smith Street, Suite 1400
                          Houston, TX 77002
                          713-356-1280

For PQPR Holdings         RHONDA MATES
Limited, LLC:             Streusand Landon Ozburn Lemmon LLP
                          1801 S. Mopac Expressway, Suite 320
                          Austin, TX 78746
                          512-236-9900

For Connecticut           KYLE KIMPLER
Plaintiffs:               ALAN HALPERIN
                          Paul Weiss
                          1285 Avenue of the Americas
                          New York, NY 10019
                          212-373-3253

                          RYAN CHAPPLE
                          Cain & Skarnulis PLLC
                          303 Colorado Street, Suite 2850
                          Austin, TX 78701

For BlackBriar            VICKIE L. DRIVER
Advisors, LLC:            Crow & Dunlevy, P.C.
                          2525 McKinnon Street, Suite 245
                          Dallas, TX 75201
                          214-420-2142

Court Reporter:           ROSARIO SALDANA

Courtroom Deputy:         ZILDE MARTINEZ

Transcribed by:           Veritext Legal Solutions
                          330 Old Country Road, Suite 300
                          Mineola, NY 11501
                          Tel: 800-727-6396

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

**EXHIBIT 20**

INDEX

| PLAINTIFFS' WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|

| GOVERNMENT'S WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|

| PLAINTIFFS' EXHIBITS | | RECEIVED |
|---|---|---|

| GOVERNMENT'S EXHIBITS | | RECEIVED |
|---|---|---|

**EXHIBIT 20**

HOUSTON, TEXAS; TUESDAY, SEPTEMBER 24, 2024; 2:31 P.M.

(Call to Order)

THE COURT:  Afternoon, everyone.  This is Judge Lopez.  I thank everyone for patience today.  I'm going to call the -- what is the 2:00 p.m. case?  23-33553, the Alex Jones case here in connection with a motion to sell.

Why don't I take appearances in the courtroom and then I'll take appearances from folks online.  If you wish to make an appearance, I would ask that you please hit five-star.  Okay.

MR. MURRAY:  Good afternoon, Judge.  Chris Murray, Chapter 7 Trustee.

THE COURT:  Okay.  Good afternoon.  Mr. Nguyen, good afternoon.

MR. NGUYEN:  Good afternoon, Your Honor.  Ha Nguyen for the U.S. Trustee.

THE COURT:  Okay.

MS. JONES:  Good afternoon, Your Honor.  Erin Jones for Christopher Murray, Chapter 7 Trustee.

THE COURT:  Okay.  Good afternoon.

MR. WOLFSHOHL:  Good afternoon, Your Honor.  Joshua Wolfshohl for Christopher Murray, Chapter 7 Trustee.

THE COURT:  Okay.

MS. CATMULL:  Good afternoon, Your Honor.  Annie Catmull, C-A-T-M-U-L-L, here on behalf of O'Connor Wechsler

EXHIBIT 20

PLLC.  Thank you.

MR. MOSHENBERG:  Good afternoon, Your Honor.  Avi Moshenberg here on behalf of the Texas plaintiffs.

THE COURT:  Okay.  On the line I've got a 512 number.  Ms. Mates, you may have muted yourself.

MS. MATES:  I did.  Thank you.  Rhonda Mates on behalf of PQPR.

THE COURT:  Okay.  There's a 214 number.

MS. DRIVER:  Good afternoon, Your Honor.  Vickie Driver on behalf of Alex Jones.

THE COURT:  Good afternoon.  There's an 832 number.

MR. MARTIN:  Good afternoon, Your Honor.  Jarrod Martin also with Avi Moshenberg for the Texas families.

THE COURT:  Okay.  And a 212 number.

MR. KIMPLER:  Good afternoon, Your Honor.  Kyle Kimpler on behalf of the Connecticut Plaintiffs.  I am joined with my co-counsel, Ryan Chapple and (indiscernible).

THE COURT:  Okay, good afternoon.  Anyone else who wishes to make an appearance?  I would ask that you just please hit five-star, and I will unmute your line.  Other than that, I will turn to Mr. Murray.  Good afternoon.

MR. MURRAY:  Good afternoon, Judge.  We've got two things on for today.  We have a status in the PQPR adversary, and then we also have a hearing on my motion to

**EXHIBIT 20**

wind down FSS.  And unless Your Honor prefers a different course, Mr. Wolfshohl was going to handle the sale motion hearing first, and then Ms. Jones could handle the status update on PQPR.

THE COURT:  Okay with me.

MR. WOLFSHOHL:  And, Your Honor, I think while this is probably largely legal in nature, the objection that the U.S. Trustee filed, the way I would suggest we proceed, unless there is any issue with this, is that I simply proffer the Trustee's testimony.  Most of what I think he is going to say through the proffer is my argument.  Happy to proceed that way.  Happy to make opening arguments.  It doesn't matter to me.  I want to just move the thing along.

THE COURT:  Mr. Nguyen?

MR. NGUYEN:  No objection to Mr. Wolfshohl's suggestion.

THE COURT:  Okay.  Mr. Wolfshohl, you're going to proffer the testimony of Mr. Murray.

Mr. Murray, why don't you stand up.  Raise your right hand.  Do you swear to tell the truth, the whole truth, and nothing but the truth?

MR. MURRAY:  I do.

THE COURT:  Okay.  We will proceed by proffer.  Counsel is going to make statements.  I'm going to ask you if they are true and correct, if there's any corrections you

EXHIBIT 20

would make. You would be adopting the proffer as your testimony. Do you understand that?

MR. MURRAY: I do.

THE COURT: Okay. Mr. Wolfshohl, you may proceed.

MR. WOLFSHOHL: Thank you, Your Honor. First off, can we -- the Trustee would like to move to admit Exhibits 1 through 16. They were filed on the docket at Docket Number 847.

THE COURT: Any objection to the admission of 1 through 16 at 847?

Okay, they are admitted.

(Exhibits 1 through 16 admitted into evidence)

MR. WOLFSHOHL: Thank you, Your Honor. If called to testify, the Trustee would testify that when he was appointed, shortly after he was appointed, Your Honor entered a dismissal order for FSS. Referring to FSS, Your Honor understands that that's Free Speech Systems.

Upon that dismissal order getting entered, the Trustee analyzed the dismissal order, understood that from the dismissal order, the Court was retaining jurisdiction over certain matters and was also specifically delineating certain things that the Trustee was to do, including taking control over cash of the estate. And the Trustee believed at the time and still believes that that was within the Court's authority to do that.

EXHIBIT 20

The Trustee immediately upon his appointment began discussions with the various parties in the case to primarily focus on how to deal with the FSS entity and how to essentially wind the company down.  Those parties included the Texas and the Connecticut plaintiffs.  The Debtor and the Debtor's representatives -- and when I say the Debtor, I am talking about Alex Jones specifically.  The FSS professionals, PQPR, which Your Honor I think -- I believe you understand that they assert a lien on certain assets of FSS -- as well as numerous prospective buyers and bidders.

The Trustee also consulted with Tranzon and 360, the entities that he has gotten the Court to enter an order approving the retention of in connection with the sale process.  He visited the FSS studios with Tranzon and he communicated with Tranzon about various things that they needed in order to basically put a bid package together.  Information gathering, diligence, creating marketing materials.  Like I said, putting together bid packages and also setting up a process for communicating with parties who had inquiries about the assets and were interested in potentially participating in an auction process.

That was an iterative process.  There were continuous over the course of several weeks communications with Tranzon about how that process would look.  The trustee

**EXHIBIT 20**

also analyzed the various information that he was getting from the various parties as well as from prospective bidders to determine what the highest and best -- what the process that would yield the highest and best result for creditors.

The Trustee is asking the Court for authority to winddown FSS through an orderly auction and sale process. The Trustee believes that's consistent with the FSS LLC agreement, Your Honor.  The operating agreement is at Exhibit 3.  He also believes it's consistent with state law as well as the Court's prior order and statements made by the Court on the record.

The auction process that the Trustee is asking for approval to proceed with is multi-phase.  It starts with a sealed bid process for the IP assets.  And then depending on what the result of that is, there might be an actual auction process with the IP assets.

THE COURT:  Can you make a distinction between the IP assets that you're describing?  And I know that Mr. Jones wanted a clarification about certain other IP assets.  I just want to make sure that there's clarity what I'm being asked.  I know that there's some language in the order that kind of clarifies it, but perhaps you can clarify it now.

MR. WOLFSHOHL:  Sure, Your Honor.  And if I don't clarify it correctly, I will let Mr. Murray correct me.

But the idea is that we are selling in this

EXHIBIT 20

process -- and it's not that we won't come back to Your Honor to discuss selling intellectual property assets of Alex Jones --

THE COURT: For purposes of what I'm being asked for today.

MR. WOLFSHOHL: Today it would be intellectual property of FSS.

THE COURT: Okay.

MR. WOLFSHOHL: And so that is the clarification. I think that's what we included in the redline that we uploaded today, Your Honor. I don't know if Mr. Murray has anything different to say about that.

THE COURT: I just want to make sure that there's clarity that -- I'm reading the proposed order. It says that you're not going to sell or purport to sell any personal IP of Mr. Jones. So I'm understanding if it comes to the point where there's someone disagreeing that someone would then come to me and then I can sort out whether this is -- what bucket it goes. But it's not your intention I think to sell personal IP.

Go ahead, Mr. Murray.

What I'm trying to do is just make sure to anticipate, provide some level of clarity so that we have a level playing field.

MR. MURRAY: So for today I am seeking authority

EXHIBIT 20

to sell the IP that FSS owns.  There is some concern from Mr. Jones that he is asserting rights to personal IP that are not alienable in his view.  I am not today seeking authority to sell any IP owned in the Chapter 7 estate directly.  I anticipate filing a motion soon to add potentially IP from the individual estate to the sale process.  And that's in response to some requests I've gotten from potential bidders.  I don't think that's for today.

It's also my intention when we do that to reserve all of Mr. Jones' rights, whatever they are.  I don't intend to litigate ownership of the IP as part of this process; I'm simply trying to sell what I have.

THE COURT:  Understood.  Thank you.

MR. WOLFSHOHL:  Thank you, Your Honor.  And the process would then, after the actual auction of the IP assets, there would be what we were referring to in the motion as remaining assets auction, which would include certain things like hard assets as well as other assets that are -- personal property that's located at the FSS studios.

Your Honor, the Trustee is also asking for permission to pay fees and commission out of the FSS cash so that the FSS cash -- because this process obviously is being done for the benefit of FSS and its creditors that the costs of that be allocated to FSS.  That includes the 326 trustee

EXHIBIT 20

fee. And in our reply brief we tried to address what we believe is the law that supports a 326 fee based on that disbursement.

THE COURT: I think you all are looking at this wrong, at least the way you just described it. And let me tell you. And I'll just put it out there.

When I converted this -- when I dismissed FSS, I did a couple of things. I explicitly told Mr. Murray that he was in charge of the bank account and that he had control of the equity of FSS. He's in charge. And that's -- and I said it on the record, and I remember Ms. Catmull was sitting in the same -- right around there. And I said -- because I didn't want dual seven trustees being around. All this can be done with one trustee. He's in charge of the equity of FSS and he can do what he wants with it.

I know folks are -- I've heard that some folks may take issue with that. And that's fine. And I know that the Texas plaintiffs tried to argue that they were in charge of the -- the Chapter 7 trustee, before I dismissed this case, which I had authority to do unless the court orders otherwise under 349, I gave Murray the bank account and the equity, made sure that he had the equity in FSS.

The creditors of FSS are one and the same of the creditors of Mr. Jones. They are the same. So this is not being done for the benefit of FSS creditors. This is being

EXHIBIT 20

done for the benefit of the Jones creditors who sued FSS and Jones. And now the Trustee holds the equity for them. Everything is going to them through this estate. But there's cash there, and you're just using a particular portion of the cash that's available through FSS to then liquidate the FSS stuff. But ultimately it will be distributed through the Jones Chapter 7 case for the benefit of the same creditors who have been appearing. They're in one and the same. And the families here and PQPR, they're all standing here in the same -- that case is gone. But what was left was Murray being in control of FSS and having the equity.

So the Trustee is going to try to convince me that somehow being in control of FSS equity means that all you can do is sell it. And he's going to have to point to a provision in the Bankruptcy Code that says that. Because if not, then you step into the shoes. And there's plenty -- you step into the shoes as the equity holder, and you can do whatever you want. If you want to wind it down, you can wind it down. There's some clarity about you can't -- you're not today seeking to sell assets that belong solely to Mr. Jones. But I got it. But there's different buckets of the stuff that Mr. Murray holds in his capacity as Chapter 7 trustee. One of them, before I dismiss this case, is what goes there. Because that was to address the very

EXHIBIT 20

concern that Kyle Kimpler, who is looking at me, was afraid to, of rush to the courthouse. And I still remember him holding up the pistol in his hands and saying, you know, we're going to go off to the races.

This was intended to -- it wasn't going to happen because he was in charge of the bank account. There wasn't going to be a run. And he has the equity of FSS. This is being distributed for the benefit of Jones' creditors. It just happened to be the same.

And so I got it, but I just want to make sure everybody is really clear that your exercise of business judgement, if that's what you're telling me, these are for -- this is going to go -- you can call them the Texas families and the Connecticut -- they're still the same people here. They may go to pay bills of orders that I entered. You know, towards professionals. And that's cash that went out that was FSS cash. But I just want to make really, really, really clear. And this is -- I'm just telling you the way I construed my orders when I converted this case that he wasn't doing stuff for FSS; he was doing -- he held FSS, and he was going to distribute it in this estate for the benefit.

I'm just telling everybody the way I've construed these orders the entire time, which is why I took issue when someone tried to then go, from what I heard, tried to go

EXHIBIT 20

seize cash from professionals which they were paid and were trying to go after the professional. You know, wait for me to issue an order. Then the order gets paid, and now the professional has to hold it in an escrow or in an IOLTA account because they're -- I'm just telling you that's the way I've always seen this. If I need to clarify my order or add sentences, that's consistent with what I said today. And I was there. And it's consistent with what I said where Mr. Murray asked me to clarify exactly what his role was. There's been no change in what that is. He holds the stuff. He can distribute it, or he can do what he wants. And there's no -- you can do a couple of different things. If you own the equity or if you hold the equity, you step into the shoes, you can do it. Just as if he owned the business or any other Chapter 7 trustee.

This case gets more attention because of what the equity interest is. It's a really simple case. If this was just a guy named Alex Jones who owned a business called Free Speech that no one had ever heard of, this would be a really simple dispute. We wouldn't even be here today. But we are where we are. And let's just go through it. But I just -- anyway.

Go ahead and continue your proffer.

MR. WOLFSHOHL: So I appreciate that, Your Honor.

THE COURT: I understand that -- I'm just saying

EXHIBIT 20

that's the way I view -- that's always been what I have been saying.  And so I got it.  I just want to make sure that we're really precise on the language that we're using and what Mr. Murray understands where the distribution is going to go.  He's the Chapter 7 Trustee.  He makes distributions in Chapter 7 cases in which he is administering.  It just so happens it's going to go to the same people, but that was always the plan.

MR. WOLFSHOHL:  Your Honor's comments are very helpful.  I hope -- and I actually think by what you just said it's consistent with what we thought that you wanted us to do.  I hope Your Honor appreciates that part of why we felt the need to come in here and get the order that we're asking for -- and I do think that there's reason under 363 to get this order even though maybe the actual assets we're selling are not property of the Alex Jones estate, part of why we have felt the need to do this is because of --

THE COURT:  It is property of the Alex Jones estate, because Alex Jones owned the equity interest in FSS. 541, all legal or equitable interests.  All.  And all has got to mean all.

MR. WOLFSHOHL:  Okay.  And I prefer that interpretation.

THE COURT:  No, no, it's not my interpretation. It's Congress.  Congress used the word all.  All legal and

EXHIBIT 20

equitable interests of the debtor become property of the estate. All means all. And we can't shortchange what all means. And -- and upon conversion unless otherwise ordered. I know what I said on the record there. And if I need to amend the seven order, I'm happy to do it. If you want me to bring FSS back up here, I'll do that, too. It's just going to cost a lot of money. And we're spending a lot of money today, I think. I'm concerned because -- but no one disputes that Alex Jones owned a hundred percent of the equity interest in FSS. And all has got to mean all. And we don't get to kind of pick and choose what all means. I just -- I am just calling it like I see it. And that's been consistent with my rulings in Envision as well. Envision Healthcare. I said all legal and equitable interest comes in. Any smidgeon of it comes in. And if you own the equity interest in FSS, then it is property of his estate. It would be property of his estate if he just filed Chapter 7. He'd have to list it on his schedules.

I'm just a little confused about what we're doing here today. And again, I'm -- well, I don't know what's different than any other bankruptcy case in which someone who filed Chapter 7 and they owned the business and what you're asking me for today.

MR. WOLFSHOHL: Well, Your Honor, a turnover order is the reason we feel like we need the protection of your

EXHIBIT 20

additional order.  Yeah.

THE COURT:  I know what you're asking.  I understand what you're asking me for today.  But what I'm saying is it's already there.  What you're asking for is belt and suspenders.  Let's not act like it's not already there.

MR. WOLFSHOHL:  I would prefer to --

THE COURT:  If a Chapter 7 debtor owned equity interest of a donut shop, he would have to list it on his schedule.  Right?  Owning a hundred percent interest in a donut shop, right?  People can go sue a donut shop if they want to.  But that doesn't mean, you know, the Chapter 7 trustee of a debtor, depending on how they claim the exemptions or not, wouldn't own a hundred percent interest.  Because it's property of the estate until it gets exempted out.  That's all.  Right?

I understand the concerns today and I understand the need to be clear.  I understand what you're asking for.  But what you're asking me for really is belt and suspenders.

MR. WOLFSHOHL:  I think that's right.

THE COURT:  And I've got it.  I just...

MR. WOLFSHOHL:  And, Your Honor, we may not be here if we didn't have sort of the overhang of this turnover order that's still out there.  We removed that case to the Western District of Texas.  But frankly everybody at this

EXHIBIT 20

point is wanting Your Honor to issue orders to make sure -- and I appreciate what you're saying, and we've always approached it --

THE COURT: I had a case yesterday -- and I don't want to get into -- I think it's before Judge Bradley, isn't it?

MR. WOLFSHOHL: That is correct, Your Honor.

THE COURT: I'm going to -- stayed out of Jersey business yesterday. I'll stay out of Austin business today. You know, I'm not going to do that.

But I'm just telling you I know what I did. I'll create the -- happy to go through the expense. Not me. Doing it, I'll do it. I don't want to -- I'm not going to get in the way of what Judge Bradley is going to do. I'm not going to tell another bankruptcy judge on what timetable to go or what to do. I'm going to allow Judge Bradley to (indiscernible). I've got it.

So for purposes of selling today, tell me what you all want.

MR. WOLFSHOHL: Your Honor, we want you to enter the order that was uploaded in the redline -- well, reflecting the redline changes obviously that we uploaded today. We're asking -- we think that the Code authorizes it. We think Your Honor's prior order authorizes it. We think it's authorized under state law. We think it's

EXHIBIT 20

authorized under the FSS operating agreement.  WE have overwhelming support from the vast majority of the creditors that the plaintiff's PQPR I understand supports the sale process.  Their liens are being preserved so that we can resolve those through the adversary proceeding.  It also has a status conference set today.

We also just think that this sale is in the best interest of the estate because it's going to yield the highest potential recovery.  And even if you think of these creditors as being part of different estates, it's better for their creditor claims to get more money even if you're looking at it as the FSS versus Alex Jones.  I agree with Your Honor.  They are all the same creditors essentially. And we think this is in the best interest of the estate.

And I can address Mr. Nguyen's arguments after he makes them in his closing, but I just think that this is within the Trustee's business judgement.  I think it's appropriate for a number of the reasons Your Honor has mentioned today.  And the Trustee would ask that the sale be approved or the winddown process be approved pursuant to the order.

THE COURT:  Let me make sure I'm clear about what the process is.  You're going to hold and just kind of follow Texas law.  Hire someone, a professional to go out there and just help wind the process down.

EXHIBIT 20

Mr. Murray, do I understand that you believe this is going to yield the highest amount of return for creditors?

MR. MURRAY:  Yes, I do.  And even aside from the authority issue --

THE COURT:  Tell me why.

MR. MURRAY:  Well, the conclusion that this would be the best interest of the estate is based on in large part input from Tranzon and the professionals who auction business assets and IP in particular in other cases.  They have a national reputation.  I've worked with them in other cases.  They are the ones who proposed sort of a two-stage auction process.  Start with the IP and then sell the rest of it later.  Because who ends up buying the IP will have a lot to do -- will inform very much how we sell the rest of it.  So that's sort of the basis for splitting it up.

But in addition to this Court's authority, which I've always thought was clear and I think it always has been and I think the jurisdiction has always been there, I do need a sale order.  I would need that to sell anything else.  And I do want and would appreciate the Court's order because it also sets out for the parties sort of what the process is and sort of sets expectations, so people know how to engage the sale process.

THE COURT:  Do I understand it right that Mr.

EXHIBIT 20

Jones doesn't -- subject to this resolves the objection?

MR. WOLFSHOHL: It does.

THE COURT: It does, right? For purposes of this order, right?

MR. WOLFSHOHL: His limited objection related to his --

THE COURT: Yes.

MR. WOLFSHOHL: Yes. That is resolved by what we put in the redline and the new order.

THE COURT: The relief requested today.

MR. WOLFSHOHL: That's right. His objection is resolved is my understanding.

THE COURT: Texas and Connecticut have filed statements in support.

MR. WOLFSHOHL: That's correct, yes.

THE COURT: No party has objected to this other than the Office of the United States Trustee. Is that correct?

MR. WOLFSHOHL: That's right.

THE COURT: Everybody with an economic interest has not objected to this relief requested, right?

MR. WOLFSHOHL: Yes.

THE COURT: Okay. Well, the Office of the United States has standing to be heard. Any proceeding? Do we have a watchdog? Let me hear what they have to say. .

EXHIBIT 20

MR. NGUYEN: Thank you, Your Honor. Ha Nguyen for the U.S. Trustee.

Your Honor, I just wanted to start out by saying I really do appreciate the Chapter 7 Trustee and his effort. I remember the day the Cout was considering conversation of this case. I called Mr. Murray and Mr. Murray agreed to take on a very difficult case. Not all of our panel trustee was willing to do it. Mr. Murray was there. You know, we just have differences in opinion in terms of the legality and the statute and the Code. There's (indiscernible) between Mr. Murray. We have good relationship. We work well together, and we work on many cases, Your Honor.

But we filed this objection to the winddown motion particularly because of our reading of the statute and our understanding. I know Your Honor says under 541 all means all. But there are basic tenets of American corporation laws that the U.S. Supreme Court has said that -- you know, just because you own a hundred percent of the equity, you don't own a hundred -- the estate itself doesn't own the assets.

So over the ten years I've been doing this, I've examined individual debtors that own businesses like Your Honor have seen. And when we examine them, for example --

THE COURT: Is it easier if I just amended my order? Because everybody knows that's what I intended to

EXHIBIT 20

do.  Would it just make it easier for you if I just amended the order?

MR. NGUYEN:  That would be, Your Honor.  Under 349 if you bring those assets in.  But it's a little bit --

THE COURT:  That was always the intent.  Right? And we can disagree about that.  But I'm just saying that was always the intent.  Everybody knew.  Everybody understood that at the time.  If that wasn't clear or -- no one raised it to me then when winddown was being discussed. If you want me to do that, I am more than happy -- because it sounds like everybody needs it anyway -- I'm more than happy to clarify in my order that all the assets -- if it didn't include it in the assets, that's why he has the cash, right?  That's why he's got the cash and that's why he's got the equity interest.  He's got everything.  That was always the intent as to what was going on.  But if that makes this easy, I'm happy to do it.  Because I think you and I actually agree a lot here.  I just think we're getting in the technicalities here.  But that certainly was what I ordered at the time.

MR. NGUYEN:  Your Honor, it's not the technicality.  It's actually what the Code says.  And in reading your order, there was two retention of jurisdiction. One was the PQPR litigation and two was the bank account --

THE COURT:  And then they came back and asked me

EXHIBIT 20

for clarification. I'm just saying I'm happy to do it. And no one is going to dispute it. I'm happy to do it. If that makes everybody's life happier, I'm happy to do it.

MR. NGUYEN: It would make things easier, Your Honor. But it's a little bit unusual to dismiss a case but retain all of the assets with --

THE COURT: Unless otherwise ordered by the Court. We don't have to get into what's unusual or not. Everything is case specific. That's why the -- I think that's why Congress gave everyone flexibility, because you just don't know what you don't know. And this case is certainly different than any other case out there. I shouldn't say that. There are some others that resemble it.

MR. NGUYEN: Your Honor, I understand amending the order. And I think it would be very helpful in terms of actually clarifying what Mr. Murray has the actual -- because in everyday cases where you have owners that come in here that have an equity interest, I don't ask them -- for example, Debtor Nguyen owns a donut shop, you know, and the donut shop is a corporation, all Debtor Nguyen has to do is list the hundred percent. I don't ask for the mixing bowls and the chairs and stuff like that.

THE COURT: No, no, I understand that. And I think my statements were a little different. But I think clarifying on the record -- I don't think anybody is going

EXHIBIT 20

to --

MR. NGUYEN:  But I think there's an issue with that too in terms of the allocation.  Because the creditor bodies are the same, but they are two different entities.  And I think there's certain creditors when you upstream it, there's going to be issues of allocations.

THE COURT:  I'm just authorizing a sale.  Where the money goes people can fight about.  But I'm just authorizing a winddown here.  I think everybody's rights are reserved as to where the money goes.  I'm just -- this is more bidding procedures to me.

MR. NGUYEN:  Your Honor, if you clarify the order to include all of FSS hard assets as property of the estate, the U.S. Trustee won't have any objection.  I think you are able -- you have discretion under 349 to order otherwise.  As long as that order is clear, we're fine with that.

THE COURT:  Mr. Wolfshohl, what about that?  And I think you can work with Ms. Driver just to make sure that I don't -- anything that we were to write to amend the order just doesn't run afoul the deal that you all agreed to today, or reserves rights, or does something.  I just don't want -- I'm going to give you all the assets of FSS.  I'm going to clarify that that's what you always had, the assets of FSS.  And I just want to make sure that other people look at it so that no one then -- I sign something and then

EXHIBIT 20

somebody comes in and asks me to reamend the order.

MR. WOLFSHOHL: Maybe we could chat about that. Because I think that's largely where the proposed order gets us. But it would be even more clear if -- you're talking about amending the dismissal order, to clarify that? That would help -- I think it would help. We could propose some language.

THE COURT: I'm just saying just run it by the trustee, run it by folks. You know who needs to look at it. Just upload the order. And I'm telling you, I will do it -- if folks can't agree with it, I will go back and read what I did. And I feel like it's a clarifying order. It's not really amending the order. Well, it's more -- I don't want to come up with bankruptcy terms for orders, but you know what I mean. It's more of a -- whether you can call it -- you can call it -- I don't care what you call it. You can call it amended order or modified order, a clarifying order.

MR. WOLFSHOHL: An order in furtherance.

THE COURT: Just make -- what I want to do is just have Mr. Nguyen take a look at the language and just make sure that everybody's comfortable with the terms so that no one then comes back and gets it here. But if that's the case -- we're in agreement. And I think you all need the clarity anyway one way or the other.

So I'll sign -- get me that language. I'll sign

EXHIBIT 20

that, and then I'll sign this.

MR. WOLFSHOHL:  Okay.  We can do that, Your Honor.

THE COURT:  Okay.

MR. NGUYEN:  Thank you, Your Honor.

THE COURT:  All right, folks.  Status conference, PQPR, and then I'll turn to Stewart.

MS. JONES:  Thank you, Your Honor.  Erin Jones for Christopher Murray, Chapter 7 Trustee.  And I think everybody else is on the line.

THE COURT:  I just want to know briefly just kind of where we are.

MS. JONES:  The Trustee has been in discussions with the parties in this litigation, PQPR and the Connecticut families regarding potential resolution to this, as obviously the resolution of the PQPR issue is going to ultimately impact how funds get distributed.  And so we have to get to this point, a decision point in order to sort of move forward.

However, we haven't quite gotten there yet.  We continue to have conversations.  I think it is important to have a trajectory forward towards a resolution.  And we'll run parallel tracks, as we always do, trying to reach a business solution.  But I do think it would make sense.  And I will let the other parties speak as well.  But there are pending MSJs that are full briefed.  I don't know whether

EXHIBIT 20

Your Honor wants to hear argument on that at some point.

THE COURT:  No.

MS. JONES:  Not today, obviously.

THE COURT:  No, no, no, no.  What I'm saying is if they're fully briefed MSJs, I'm just going to turn to them, and I'll get working on them.

MS. JONES:  Okay.  And then otherwise, if that doesn't resolve everything, maybe come in for a scheduling conference to discuss the scheduling order to maybe just kind of get a path towards trial.

THE COURT:  So what I'll do is then just rule on the MSJs and then after I rule on the MSJs, I'll give parties a few days and then everybody can kind of give everyone kind of an opportunity to read it and think about it.  And then I'll call the parties maybe four or five days later and we'll talk scheduling at that point.

MS. JONES:  That would work for the trustee.

THE COURT:  Okay.  All right, folks.

(Whereupon these proceedings were concluded at 3:06 PM)

EXHIBIT 20

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date: September 26, 2024