**EXHIBIT 31**

1

JURY CHARGE



THE COURT:  Make yourselves comfortable.

So ladies and gentlemen of the jury, you've listened to the evidence and to the arguments of counsel and it now becomes my duty to instruct you concerning the law of the case.  And I apologize but I must read most of this because it becomes somewhat technical in places and it's very important that I not miss anything.

But before I do that, I would like to thank you, ladies and gentlemen, for your attention throughout the trial.  I noted that you have all been paying very close attention to everything that has gone on here. You've been unfailingly on time and even early for all the breaks and for each morning and for that, we are all very grateful.

As I instructed you before the start of evidence, generally, a civil trial such as this has two issues, liability and damages.  As you will recall, here you are tasked with addressing the issue of damages, as the court previously determined that the defendants are liable.  As a result this trial focused on damages.  As I previously instructed you, you are not to speculate as to why the court previously determined that the defendants were liable but you are simply to accept it

**EXHIBIT 31**

as a given and focus on the amount of damages to be awarded and the degree of the defendants' wrongdoing. The plaintiffs' burden at a hearing in damages such as this is to simply prove that the damages claimed is properly supported by the evidence and to prove the extent of the defendants' wrongdoing for purposes of punitive damages.

You as the jury and I as the judge have two separate functions. It is your function to find what the facts are in this hearing in damages; with respect to the facts, you and you alone are charged with that responsibility. My function is to instruct you as to the law to be applied to the facts that you find in order to decide this case.

With respect to the law, what I say to you is binding upon you and you must follow my instructions. I do not have any preference as to the outcome of this case. I have not meant to convey by facial expression or tone of voice or in any other way at any time during the trial any preference or inclination as to how you should decide the facts and you should not make any such interpretations. If in my instructions to you, I refer to one party more than the other or do anything that in your mind suggests a preference for one side or the other, it is not done on purpose.

My task has been to apply the rules of evidence and to instruct you as to the law. It is for you alone

**EXHIBIT 31**

to decide on the amount of damages in this case. It is your duty to follow my instructions and conscientiously apply the law as I give it to you to the facts as you find them in order to arrive at your ultimate verdict. If you should have a different idea of what the law is or even what you feel it ought to be, you must disregard your own notions and apply the law as I give it to you.

The parties are counting on having their claims decided according to particular legal standards that are the same for everyone and those are the standards I will give you and that you must follow. If what counsel said about the law differs from what I tell you, you will dismiss from your minds what they may have said to you. You must decide this case based only on the law that I furnish to you and on the basis of all the law as I give it to you regardless of the order of my instructions. You must not single out any particular instruction or give it more or less emphasis than any other but rather must apply all of my instructions on the law that apply to the facts as you find them.

You are to determine what the facts are by careful consideration of all the evidence presented and based solely upon the evidence giving to each part of the evidence the weight you consider it deserves in reaching your ultimate conclusion. When I say

**EXHIBIT 31**

4

evidence, I include the following; testimony by witnesses in court including what you may have observed in any demonstrations they presented during their testimony, testimony by witnesses by way of the reading of transcripts or the showing of videotapes, exhibits that have been received into evidence as full exhibits, including any pictures or documents that are full exhibits.  The testimonial evidence includes both what was said on direct examination and what was said on cross examination without regard to which party called the witness.

The following are not evidence and you must not consider them as evidence in deciding the facts of this case; opening statements and closing arguments by the attorneys, questions and objections of the attorneys, and testimony or exhibits that I instructed you to disregard.

Additionally, testimony or exhibits that I told you was to be used only for a limited purpose is not evidence for any other purpose.  Your duty is to decide the case based on the testimony of the witnesses in court along with what has been admitted into evidence in the courtroom only and not on any other information about the issues that was not presented into evidence in this courtroom.  It is my right to make comments to you on the evidence but where I do that, such comments are merely to suggest to you what point of law or what

EXHIBIT 31

controversy I'm speaking about. If I refer to certain facts or certain evidence in the case, do not assume that I mean to emphasize those facts or that evidence and do not limit your consideration to the things that I may have mentioned. Likewise, you should attach no importance to it if I should mention one party more than the other. If I should overlook any evidence in the case, you will supply it from your own recollection. If I incorrectly state anything about the evidence in relation to what you remember, you should apply your own recollection and correct my error. In the same way, what any of the lawyers may have said in their respective summaries to you as to the facts or evidence in the case should have weight with you only if their recollection agrees with your own. Otherwise, it is your own recollection of the facts and evidence which should have weight in your deliberations.

Please understand that your decision must not be reached on the basis of sympathy for or prejudice against any party. The parties come to court asking simply for a cool impartial determination of the disputed issues based on the facts and the law. That is what they are entitled to and that is how you should approach the decision of this case.

You have heard that one of the parties in this lawsuit, is the defendant Free Speech Systems, LLC,

**EXHIBIT 31**

which is an entity created by the law. All parties are equal before the law. The mere fact that one of the parties is a natural person and one is a creation of the law, should not play any part in your deliberations. You must treat all parties in an equal and unbiased fashion.

I instruct you that Free Speech Systems, LLC, is owned, controlled and operated by Alex Jones and it is employed to hold and generate revenue for him. I further instruct you that under the law applicable to this case, Alex Jones and Free Speech Systems are legally responsible for each other's wrongful conduct and are each responsible for the entirety of the harm to the plaintiffs in this case.

You will recall the testimony of Brittany Paz the corporate designee of Free Speech Systems. When asked to do so, corporations are required to designate an individual to testify for them. The opposing party has no say in who that person is. The corporation here, Free Speech Systems, LLC is given notice of the topics on which testimony is requested. It then chooses its designee and it is required to provide that designee with all the relevant information necessary to speak for it on that topic. Because it is important that the corporate designee be prepared to testify accurately, a corporation has the right to produce different designees for different topics. The corporation has an

EXHIBIT 31

affirmative obligation to educate its designee as to the matters regarding the corporation. Even if the documents are voluminous and the review of the documents would be burdensome, the corporation is required to have its designee review them in order to testify.

Under Connecticut law, a corporation is generally responsible for the actions of its employees. In this case the court has determined that Free Speech Systems, LLC and Alex Jones both are responsible for the actions and statements of the employees of Free Speech Systems, LLC. Under Connecticut law when a broadcaster invites others on his show whom he expects will make false statements, the broadcaster is responsible for those false statements just as if the broadcaster had said them.

You have heard evidence that the defendants invited guests onto their broadcasts and those broadcasters falsely stated that the plaintiffs are actors and the Sandy Hook shooting was a hoax. These guests included Steve Piecscenik, James Tracy, Wolfgang Halbig, and others. I instruct you that it is established that the defendants are legally responsible for the statements of these guests on Infowars.

There are generally speaking two types of evidence from which a jury can properly find the truth as to the facts of the case. One is direct evidence, such as the

EXHIBIT 31

testimony of an eye witness.  The other is indirect or circumstantial evidence, that is, the inferences which may be drawn reasonably and logically from the proven facts.  Let me give you an example of what I mean by direct and circumstantial evidence.  If you're looking out a third floor window and you see smoke rising outside the window, that's direct evidence that there's smoke outside.

It is also circumstantial evidence that there is a fire of some sort below the window.  As a general rule, the law makes no distinction between direct and circumstantial evidence but simply requires that the jury find the facts in accordance with a preponderance of all the evidence in the case, both direct and circumstantial.  Thus, both direct and circumstantial evidence are permissible evidence and each type should be treated equally.

In your consideration of the evidence, you are not limited to the bald statements of the witness, that is, the exact words that they use.  On the contrary, you are permitted to draw from facts which you find to have been proven such reasonable inferences as seem justified in the light of your experience.  While you may make inferences and rely on circumstantial evidence, you should be careful not to resort to guesswork or speculation or conjecture to determine the facts in the case.

EXHIBIT 31

While the plaintiffs requested all Sandy Hook videos broadcast by the defendants and all analytics regarding Infowars social media, website and marketing materials and financial data, the defendants did not produce complete information in response and as a result, the plaintiffs had no ability to present the missing information to you.

The credibility of witnesses and the weight to be given to their testimony are matters for you as jurors to determine.  However, there are some things to keep in mind.  It is the quality and not the quantity of testimony that controls.  In weighing the testimony of each witness, you may consider whether the witness has any interest in the outcome of the trial.  You should consider a witness's opportunity and ability to observe facts correctly and to remember them truly and accurately, and you should test the evidence each witness gives you by your own knowledge of human nature and the motives that influence and control human actions.  You may consider the reasonableness of what the witness says and the consistency or inconsistency of his or her testimony.  You may consider his or her testimony in relation to facts that you find to have been otherwise proven.  You may believe all of what a witness tells you, some of what a witness tells you or none of what a particular witness tells you.  You need not believe any particular number of witnesses and you

**EXHIBIT 31**

10

may reject uncontradicted testimony if you find it reasonable to do so.

In short, you are to apply the same considerations and use the same sound judgment and common sense that you use for questions of truth and veracity in your own daily lives. While most of the witnesses whose testimony has been presented to you were here to testify in person, the testimony of some witnesses were presented to you by the showing of videotapes of questions asked and answers given by those witnesses under oath at an earlier time. Testimony that is presented in this manner may be accepted or rejected by you in the same way as the testimony of witnesses who have been physically present in court. You should disregard any objections you hear made in those depositions and you may consider the responses.

We have had in this case the testimony of one expert witness Mr. Clint Watts. Expert witnesses such as engineers or doctors are people who, because of their training, education, and experience have knowledge beyond that of the ordinary person. Because of that expertise our law allows expert witnesses to give their opinions. Ordinarily a witness cannot give an opinion about anything but rather is limited to testimony as the facts and that witness's personal knowledge. Here an expert witness has given opinions. However, the fact that a witness may qualify as an

EXHIBIT 31

expert does not mean that you have to accept his opinion. You can accept those opinions or reject them. An expert's testimony is subject to your review like any other witness. In considering an expert's opinion, you should consider the expert's education, training and experience in the particular field, the information available to the expert, including the facts the expert had and the documents available to the expert, the expert's opportunity and ability to examine those things, the expert's ability to recollect the activity and facts that form the basis for the opinion, and the expert's ability to tell you accurately about the facts, activity, and the basis for the opinion. You should ask yourselves about the methods employed by the expert and the reliability of the result.

You should further consider whether the opinion stated by the expert have a rational and reasonable basis in the evidence. Based on all of those things together with your general observation and assessment of the witness, it is then up to you to decide whether or not to accept the opinion. You may believe all, some, or none of the testimony of an expert witness. In other words, an expert witness's testimony is subject to your review like that of any other witness.

The defendants have been found liable for the following violations of each plaintiffs' legal rights. Defamation, intentional infliction of emotional

**EXHIBIT 31**

distress, false light, invasion of privacy, and violation of the Connecticut Unfair Trade Practices Act. I will define each of these shortly.

It is your duty as jurors to determine the extent of damages. You should award those damages you find to have been proven by a preponderance of the evidence and as I further instruct you. Your award must be fair just and reasonable. The date on which the plaintiffs filed this case and the timing of the lawsuit is irrelevant to your consideration and you should not consider that in any way in determining the damages in this case.

As I have instructed you, the court has determined that the defendants are liable for having intentionally inflicted emotional distress on each plaintiff. Four elements must be shown to establish intentional infliction of emotional distress. These four elements thus have been established. One, the defendants intended to inflict emotional distress or the defendants knew or should have known that emotional distress was the likely result of their conduct. Two, that the conduct was extreme and outrageous. Three, that the conduct was the cause of emotional distress experienced by the plaintiff; and four, that the emotional distress sustained by the plaintiff was severe. It is established that the defendants inflicted such emotional distress on the plaintiffs.

**EXHIBIT 31**

As I have instructed you, the court has determined that the defendants are liable for having invaded the privacy of each plaintiff by placing him or her in a false light before the public by publicizing material about him or her that is false and is such a major misrepresentation of his or her character, history, activities or beliefs that a reasonable person in the plaintiff's position would either be expected to take serious offense or be justified in feeling offended or aggrieved. Thus, these three elements have been established; one, that the defendants' publicized material or information about each plaintiff that was false. Two, that the defendants either knew that the publicized material was false and would place the plaintiff in a false light or acted with reckless disregard as to whether the publicized material was false and would place the plaintiff in a false light; and three, that the material so misrepresented the plaintiff's character, history, activities or beliefs that a reasonable person in the plaintiffs' position would find the material highly offensive. It is established that by their conduct the defendants deprived the plaintiffs of their privacy by casting them in a false light before the public as I have described.

The court has determined that the defendants are liable for defamation. The defendants are liable to

EXHIBIT 31

14

the plaintiffs in this case and it does not matter to their liability whether or not Alex Jones singled them out by their individual names. Defamation is false communication that tends to harm the reputation of another person to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, to deter a third person from associating or dealing with him or her or to provoke adverse, derogatory, or unpleasant feelings or opinions against him or her. Certain defamatory statements whether orally or in writing, are considered to be so harmful in and of themselves that the person to whom they relate is entitled to recover general damages for injury to reputation without proving that any special or actual damages were caused by the statements.

The law conclusively presumes that there is injury to the plaintiff's reputation. A plaintiff is not required to prove that his or her reputation was damaged. The plaintiff is entitled to recover as general damages for the injury to his or her reputation and for the humiliation and mental suffering caused. In this case, the court has determined that the defendants defamed the plaintiffs by accusing them of faking their children's death, being crisis actors, and fraudulently misrepresenting themselves to the public at large.

I hereby charge you that causation of the

**EXHIBIT 31**

plaintiffs' damages is already established. Under Connecticut law, the defendants' conduct is a proximate cause of an injury if it was a substantial factor in bringing the harm about. In other words, if the defendants' conduct contributed materially and not just in a trivial or inconsequential manner to the production of the harm, then the defendants' conduct was a substantial factor. That standard has been met here.

Causation of harm has been established by virtue of the court's prior rulings to the satisfaction of the law. That is, it has been established in this case that the defendants proximately caused harm to the plaintiffs by spreading lies about the plaintiffs to their audience and the public by urging their audience and the public to investigate and look into the plaintiffs and to stop the people supposedly behind the Sandy Hook hoax, resulting in members of the defendants' audience and the public cyberstalking, attacking, harassing, and threatening the plaintiffs, as you have heard in the evidence in this case.

In sum, it has been established that the defendants caused harm to the plaintiffs in all the ways I just described. The defendants' statements and conduct caused reputational harm to the plaintiffs, invasion of privacy, and emotional distress. The extent of the harm is what you will be measuring in

EXHIBIT 31

16

your verdict. The cause of the harm is not in question.

Although the court has already determined that the defendants are liable to the plaintiffs, I must still instruct you on the burden of proof in a civil case such as this. In order for you to award more than nominal damages, a plaintiff must satisfy you that his or her claims of damages are more probable than not. You may have heard in criminal cases that proof must be beyond a reasonable doubt, but I must emphasize to you that this is not a criminal case and you are not deciding criminal guilt or innocence.

In civil cases such as this one, a different standard of proof applies. The party who asserts a claim has the burden of proving it by a fair preponderance of the evidence, that is, the better or weightier evidence must establish that more probably than not the assertion is true. In weighing the evidence, keep in mind that it is the quality and not the quantity of evidence that is important. One piece of believable evidence may weigh so heavily in your mind as to overcome a multitude of less credible evidence. The weight to be accorded each piece of evidence is for you to decide. As an example of what I mean, imagine in your mind the scales of justice. Put all the credible evidence on the scales regardless of which party offered it, separating the evidence

EXHIBIT 31

17

favoring each side. If the scales remain even or if they tip against the party making the claim, then that party has failed to establish that assertion. Only if the scales incline even slightly in favor of the assertion, may you find the assertion has been proved by a fair preponderance of the evidence.

The rule of damages is as follows; insofar as money can do it, a plaintiff is to receive fair just and reasonable compensation for all harms and losses past and future which are proximately caused by the defendants' wrongful conduct. As I have already instructed you here, it has already been established that the defendants' wrongful conduct proximately caused harm to each plaintiff.

Under the rule compensatory damages, the purpose of an award of damages is not to punish or penalize the defendants for their wrongdoing but to compensate the plaintiffs for the resulting harms and losses. You must attempt to put each plaintiff in the same position as far as money could do it, that they would have been in had the defendants not engaged in the wrongful conduct. Our laws impose certain rules to govern the award of damages in any case where liability is proven. To recover more than nominal damages, a plaintiff has the burden of proving that the amount of damages claimed is derived from the harm suffered and is properly supported by the evidence. You may not guess

EXHIBIT 31

18

or speculate as to the nature or extent of a plaintiffs' losses or harms. Your decision must be based on reasonable probabilities in light of the evidence presented at trial. Harms and losses for which a plaintiff should be compensated, include those they have suffered up to and including the present time and those they are reasonably likely to suffer in the future as a proximate result of the defendants' wrongful conduct.

In your consideration of future damages, you should consider the probable length of the plaintiffs' lives. This may be proven through standardized mortality tables and evidence of a plaintiff's age, health, physical condition, habits, activities, and any other factor that may affect the duration of their life. According to the standardized mortality tables, the plaintiffs' life expectancy is the following number of years from today. Bill Aldenberg 27 years. Jacqueline Barden 28 years. Mark Barden 23 years. Jennifer Hensel 28 years. Ian Hockley 28 years. Nicole Hockley 33 years. Erica Lafferty 46 years. Robert Parker 39 years. William Sherlach 19 years. Carlee Soto Parisi 53 years. Donna Soto 22 years. Jillian Soto Marino 48 years. Matthew Soto 52 years. David Wheeler 21 years. And Francine Wheeler 29 years. Bear in mind these figures are only an estimate of a plaintiff's length of life based upon statistical data

**EXHIBIT 31**

19

and it is just one element to consider in determining a plaintiff's life expectancy. You may find that a plaintiff will live a longer or shorter period of time based upon your assessment of all the evidence regarding a plaintiff's condition and the circumstances of their life.

Once the plaintiffs have proven the nature and extent of their compensable harms and losses, it becomes your job to determine what is fair just and reasonable compensation for those harms and losses. There's often no mathematical formula in making this determination. Instead, you must use human experience and apply sound common sense in determining the amount of your verdict. The compensatory damages that you are considering here are monies awarded as compensation for non-monetary losses and harms which the plaintiffs have suffered or are reasonably likely to suffer in the future as a result of the defendants' wrongful conduct. They are awarded for such things as mental and emotional pain and suffering, and loss or diminution of the ability to enjoy life's pleasures.

As I have told you, it has been determined that the defendants violated the plaintiffs' privacy by casting them in a false light and also inflicted emotional distress on the plaintiffs by their extreme and outrageous course of conduct. It is your role and your role alone to determine the amount of damages due

**EXHIBIT 31**

20

to each of the plaintiffs. The plaintiffs are entitled to be compensated for the harm to their privacy interest in being placed before the public in an objectionable false light or false position. They are also entitled to recover for any and all additional emotional distress damages. In assessing the invasion of the plaintiffs' privacy and their emotional distress damages, you may consider that it is already established that the defendants' conduct was extreme and outrageous, indeed, in many cases, the defendant's extreme and outrageous conduct is clear evidence that emotional distress existed the duration of the conduct; the defendants' conduct in spreading the statements and their actual spread; the harassment the plaintiff endured; the plaintiff's fear of harassment, the nature and duration of the invasions of the plaintiff's privacy including future invasions the nature and duration of the plaintiff's emotional distress including future distress; the plaintiffs' testimony concerning their damages.

Invasion of privacy and emotional distress may be inferred from all the circumstances as they are proven to you. The invasion of privacy and emotional distress for which a plaintiff should be compensated include what he or she has suffered up to and including the present time and what he or she is reasonably likely to suffer in the future. You must attempt to put each

**EXHIBIT 31**

21

plaintiff in the same position as far as money can do it, that he or she would have been in had the defendants not acted wrongfully.

As far as money can compensate the plaintiff for such damages and their consequences, you must award a fair just and reasonable sum. You simply have to use your own good judgment in awarding damages in this category. You must use all your experience, your knowledge of human nature, your knowledge of human events, past and present, your knowledge of the motives which influence and control human action and test the evidence in the case according to such knowledge and render your verdict accordingly. The damages I have described for you in this instruction are called emotional distress damages. You should include both damages for invasion of privacy and damages for other emotional distress suffered in your award of emotional distress damages.

In this case the court has determined that the defendants accused the plaintiffs of faking their children's death, being crisis actors, and fraudulently misrepresenting themselves to the public at large. The law presumes that there is injury to the plaintiffs' reputations. A plaintiff is not required to prove that his or her reputation was damaged. The plaintiff is entitled to recover, as general damages for injury to his or her reputation and for humiliation and mental

**EXHIBIT 31**

suffering.

In determining the amount of general damages to award for an injury to a plaintiff's reputation, you should consider what reputation the plaintiff had when the statements were made. You should consider all of the circumstances surrounding the making of the statement. You may also compensate the plaintiff for damages that he or she would likely incur in the future. These damages can include additional damage to his or her reputation that occurs as a result of the bringing of this lawsuit. Each plaintiff has suffered a violation of his or her legal rights entitling him or her to at least to nominal damages.

Nominal damages may be awarded if you find that the defamatory material is of an insignificant character or because you find that a plaintiff had a bad character so that no substantial harm has been done to a plaintiff's reputation or there is no proof that serious harm has been done to the plaintiff's reputation.

If on the other hand, you find that the defamatory material is of significant character or because you find that the plaintiff had a good character, so substantial harm has been done to the plaintiff's reputation or you find there is proof that there is serious harm done to the plaintiff's reputation, then you may award substantial damages. You may award

EXHIBIT 31

23

punitive damages as a matter of discretion. At a minimum, each plaintiff is entitled to nominal damages of at least one dollar.

The court has determined that the defendants are liable for violating the Connecticut Unfair Trade Practices Act, a Connecticut law commonly known as CUTPA. Therefore, it has been established by the court that the defendants engaged in an unfair trade practice because their business conduct was predicated on damaging the plaintiffs and was immoral, unethical, oppressive, or unscrupulous. Damages due to the defendants' violation of the Connecticut Unfair Trade Practices Act are included in the other damages measures that I am describing to you and you will not assess them separately.

In closing argument, counsel mentioned some formulas or amounts that might figure in your verdict and that is permitted under our law. I caution you that figures suggested by counsel, do not constitute evidence. It is up to you to decide what fair just and reasonable compensation is whatever you find that figure might be, regardless of amounts that may have been suggested by counsel in argument.

In addition to seeking compensatory damages, the plaintiffs seek an award of punitive damages which in Connecticut are limited to attorney's fees and expenses. Punitive damages may be awarded if you find

that the defendants' actions in this case were wilful wanton or malicious. A wilful and malicious harm is one inflicted intentionally without just cause or excuse. Wilfulness and malice alike import intent. Its characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. The intentional injury aspect may be satisfied if the resultant harm was the direct and natural consequence of the intended act.

Wanton misconduct is reckless misconduct. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. These damages, however, are not awarded as a matter of right but as a matter of discretion to be determined by you after you consider all the evidence. If you determine that they should be awarded, then I will determine in a separate hearing after this trial ends and based on evidence concerning the plaintiffs' attorney's fees and litigation costs, how much that compensation will be. If you determine they should not be compensated, then I will enter nominal damages of one dollar in this category of damages.

You are to determine whether the plaintiffs should be compensated for attorney's fees and costs by considering the extent to which you find the defendants' conduct is outrageous, the degree to which

EXHIBIT 31

you find the defendants were recklessly indifferent to the rights of the plaintiffs or intentionally and wantonly violated their rights. Whether you will award the plaintiffs reasonable attorney's fees and costs in an amount later determined by me or whether you will award the plaintiffs only nominal damages is a matter for your sound discretion.

Now as I told you at the beginning of the trial the notes you may have taken are simply aids to your individual memory. When you deliberate, you should rely on your independent recollection of the evidence you have seen and heard during the trial. You should not give precedence to your own notes or to any other juror's notes over your independent recollection of the evidence because as we all know, notes are not necessarily accurate or complete. Jurors who have not taken notes, should rely on their own recollection of the evidence and should not be influenced in any way by the fact that other jurors have taken notes. Your deliberations should be determined not by what is or is not in your notes but by your independent recollection of the evidence. If you have a question about any particular testimony, you may ask that it be read or played back to you from the official record so there is no need to rely on notes.

Each of you has taken an oath to return a true verdict according to the evidence. No one must be

EXHIBIT 31

26

false to that oath but you have a duty not only as individuals, but also collectively to express your views to the other jurors and to listen to theirs. That is the strength of the jury system. Each of you takes with you into the jury deliberation room your individual experience and wisdom. Your task is to pool that experience and wisdom in considering the evidence. You do that by giving your views and listening to the views of others. There must necessarily be discussion and give and take within the scope of your oath. That is the way in which agreement is reached.

You must not discuss this case unless all members of the jury are present. We will take the usual breaks and the lunch recess, but you must not discuss the case in twos or threes during those breaks. You can deliberate only when all six of you are together and only in the jury deliberating room and this is important. We have had cases that had to be retried all over again because this rule was violated, so please be very careful not to discuss the case with your fellow jurors except when all of you are together deliberating and you are in the jury deliberating room.

When you have reached a verdict, you will knock on the door and Mr. Ferraro will alert me. When you are told to enter the courtroom, the foreperson should sit in the first seat in the first row. When the jury is asked if it has reached a verdict, the foreperson

**EXHIBIT 31**

27

should respond.  Mr. Ferraro will then hand the verdict form to me and the verdict will be read twice to you. You will each be asked to respond whether it is your verdict as a check that the verdict is in fact unanimous.  You should not at that point expect me to make any comment about your verdict.  It has been my task to rule on issues of evidence and to instruct you on the law.  It is your task to decide the case and I will leave that strictly up to you and make no comment on what you decide.  It is of course merely the division of duties and not any lack of appreciation of your efforts, that keeps me from commenting on your decision.

At this time ladies and gentlemen, I will explain the verdict forms to you and then you'll be escorted to the jury deliberation room.  You should not begin your deliberations until the exhibits and the verdict forms are delivered to you by Mr. Ferraro.  This will occur after the lawyers have had an opportunity to check that all the exhibits are present and to tell me if they think that any different or additional instructions to you are necessary.  I will recall you to the courtroom if I conclude that further instructions are needed. When the exhibits are delivered to you, your first task will be to elect a foreperson who will serve as your clerk.

After you have received the exhibits and then

EXHIBIT 31

28

elected the foreperson, you will begin deliberating. If you have questions during your deliberations, the foreperson should write the jury's question on a sheet of paper, sign and date it and knock on the door. Mr. Ferraro will then bring the question to me and I will respond to it in open court. It may take a few minutes to assemble the staff before you are brought to the courtroom to hear the response. Please try to make any questions very precise. We cannot engage in an informal dialogue and I will respond only to the question on the paper. If you need to have any testimony or any part of my instructions played or read back, you'll follow the same procedure. On a sheet of paper specify what it is that you want to hear as precisely as you can. For example, if you know that you want to hear only the direct examination or only the cross examination of a particular witness, specify that. Otherwise we will have to repeat the whole testimony. Also, if you need to re-watch any video exhibit, please follow the same procedure.

We will now go over the verdict form. Each line must be filled out and the foreperson, when you have reached a verdict, should initial each page of the verdict form and sign and date the last page. Your verdict must be unanimous. There is no such thing as a majority vote of a jury in Connecticut, rather you must all agree on the verdict. No one will hurry you. If

EXHIBIT 31

you are not able to reach a verdict today, you will resume your deliberations tomorrow.  You may have as much time as you need to reach a verdict.  And at this point I will have Mr. Ferraro escort you to the deliberating room.