UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION

ALEXANDER E. JONES AND          )  CASE NO: 22-33553-cml
THE OFFICIAL COMMITTEE OF       )
UNSECURED CREDITORS,            )  Houston, Texas
                                )
        Debtors.                )  Monday, January 13, 2025
                                )
                                )  11:06 AM to 11:37 AM
-----------------------------)


                            HEARING

        BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
               UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Alexander E. Jones:    SHELBY JORDAN (TELEPHONICALLY)
                           Jordan & Ortiz, PC
                           500 N. Shoreline Blvd.
                           Corpus Christi, TX 78401

For Chapter 7 Trustee:     JOSHUA WOLFSHOHL
                           Porter Hedges LLP
                           1000 Main Street
                           Houston, TX 77002

                           CHRISTOPHER R. MURRAY
                           Jones Murray LLP
                           602 Sawyer Street
                           Houston, TX 77007

For Global Tetrahedron:    JASON GOLDSTEIN (TELEPHONICALLY)
                           Gibson Dunn & Crutcher, LLP
                           200 Park Avenue
                           New York, NY 10166

For Connecticut           KYLE KIMPLER (TELEPHONICALLY)
Families:                 Paul Weiss Rifkind Wharton &
                          Garrison LLP
                          1285 Avenue of the Americas
                          New York, NY 10019

                                    RYAN CHAPPLE (TELEPHONICALLY)
                                    Cain & Skarnulis PLLC
                                    303 Colorado Street
                                    Austin, TX 78701

     For PQPR:                      STEPHEN LEMMON
                                    Streusand Landon Ozburn Lemmon LLP
                                    1801 S. Mopac Expressway
                                    Austin, TX 78746

     For Texas Plaintiffs:          AVI MOSHENBERG
                                    Lawson & Moshenberg PLLC
                                    801 Travis Street
                                    Houston, TX 77002

     Court Reporter:                UNKNOWN

     Courtroom Deputy:              UNKNOWN

     Transcribed by:                Veritext Legal Solutions
                                    330 Old Country Road, Suite 300
                                    Mineola, NY 11501
                                    Tel: 800-727-6396


     Proceedings recorded by electronic sound recording;
     Transcript produced by transcription service.

HOUSTON, TEXAS; MONDAY, JANUARY 13, 2025; 11:06 AM

(Call to Order)

THE COURT:  Good morning, everyone.  I haven't seen many of you so I will wish you still a happy new year.  Judge Lopez.  I'm going to call the 11:00 a.m. case of Alexander Jones.  I'll take appearances in the courtroom and if anyone wishes to make an appearance online, please hit 5 star and I will unmute your line.  Mr. Wolfshohl, good morning.

MR. WOLFSHOHL:  Morning, Your Honor.  Joshua Wolfshohl on behalf of the Chapter 7 trustee Christopher Murray.  Happy new year as well.  Mr. Murray's in the courtroom today.

THE COURT:  Okay.  Good morning.

MR. LEMMON:  Your Honor, Steve Lemmon.  I represent PQPR in the case --

THE COURT:  Good morning.

MR. LEMMON:  -- if it comes up (indiscernible).

THE COURT:  Good morning.

MR. MOSHENBERG:  Morning, Your Honor.  Avi Moshenberg here on behalf of the Texas Plaintiffs.

THE COURT:  Good morning.  Good morning.  Anyone else in the courtroom wish to make an appearance?  I will turn to the folks online.  There's a 212 number.  I unmuted you then muted you.

MR. KIMPLER:  Yes.  Good morning, Your Honor.  Can you hear me?

THE COURT:  Yes.  Mr. Kimpler, good morning.

MR. KIMPLER:  Good morning.  It's Kyle Kimpler together with Ryan Chapple on behalf of the Connecticut families.

THE COURT:  Good morning.  There's a 361 number.  Mr. Jordan, you may have muted yourself.  I know that's you, though.

MR. JORDAN:  Yes, I did.  Sorry, Judge.  Thank you.  Shelby Jordan, counsel for Alex Jones, (indiscernible).  I'm not certain.

THE COURT:  Okay.  There's a 212 number.

MR. GOLDSTEIN:  Hi, Your Honor.  It's Jason Goldstein from Gibson Dunn on behalf of Global Tetrahedron.

THE COURT:  Good morning, Mr. Goldstein.  Okay.

MR. GOLDSTEIN:  Morning.

THE COURT:  Anyone else wish to make an appearance?  Okay.  Mr. Wolfshohl, maybe I turn it over to you.

MR. WOLFSHOHL:  Thank you, Your Honor.  Your Honor, we're here today on a motion that the trustee filed on the 6th asking for a further extension of the deadline to assume or reject executory contracts in the individual Chapter 7 case.

Your Honor has extended that deadline twice so far.  There was one was entered at the docket on docket number 820 and there was another one at 873.  The deadline for assuming or rejecting executory contracts is today.

At the time, just to make it clear, the trustee is not aware of any executory contracts that are in need of assumption or rejection.  The purpose of this motion is really just sort of an abundance of caution and part of it -- and we didn't spell this out as much in the motion but just to give the Court some color -- as Your Honor knows, in the context of the sale process and then ultimately the sale hearings, Mr. Jones has made some allegations regarding certain IP rights held by him individually.  These are IP rights that have not been scheduled in his schedules, and so the trustee is, first of all, not aware of them really existing or -- and certainly not aware of them, you know, being actually his rather than FSS's.

To the extent that there are executory contracts that in any way relate to those, we just don't know what's out there.  We are still in the process of sorting that out. I do not expect us to come back to you and ask you for another extension.  This is just a 90-day extension.  This is something that, you know, really kind of came to fruition -- or at least our understanding of it came to fruition -- over the course of the last, say, 45 to 60 days.

I think we will probably come to the conclusion that there's nothing here for us to do, but just, as we saw the deadline approaching, we decided it made sense just as – – like I said, as an abundance of caution to come into the Court and say, can we get another 90 days.

I don't expect us to come back for another request.  I also don't expect us to assume or reject any executory contracts in the individual case.  And again, this is not related to FFS.  Given that FFS is not in bankruptcy, I don't believe that the restrictions of 365 apply to it.  I know that the assets of FSS are in the Jones' estate, but I don't think that necessarily means that 365 applies to it.

So, hopefully that gives Your Honor a little bit of context.  I can certainly answer questions if you have any.

THE COURT:  No.  No, I think this makes sense and let me just ask if anyone wishes to be heard in connection with this relief requested.  All right.  I will note.  This is a D-1 extension, isn't it?  Yeah.

MR. WOLFSHOHL:  Yes, Your Honor.

THE COURT:  So, I would then just note at docket 1006, there's a request -- an emergency motion filed by the Chapter 7 trustee seeking to extend the time by which the trustee must assume or reject executory contracts or unexpired leases of residential real property under Section

365(d)(1) under the bankruptcy code seeking an extension through and including April 14, 2025, which is a 90-day extension.  I'm going to find that there's been proper notice and service under the circumstances and I'm going to consider emergency relief today.  Emergency relief is warranted because the deadline expires today.

Man, that is a unique provision to Chapter 7, and if the trustee doesn't assume or reject by a certain period of time for executory contracts or expired leases of residential property then the code says that they're rejected and so that just happens by operation of law.  And I think these statements made by Mr. Wolfshohl provide adequate -- a legal justification.  I think this makes a lot of sense, and I will grant the relief requested.  And I've signed the order at docket 1006.  I just wanted to check. The deadline is through -- you said April 14th which falls on a Monday, so that's perfect.

Okay.  I will get this signed and on the docket.

MR. WOLFSHOHL:  Thank you, Your Honor.  And we don't -- we're not asking for any other relief today, but I thought I'd probably give the Court just a very brief sort of status update.

We were here a month ago, as Your Honor knows, for two days late into the night, and I just kind of wanted to give the Court -- we do have a couple of motions on file and

if it's possible to just -- I don't want to talk about the substance of them.  I'd just like to talk a little bit about whether we might be able to get some hearing dates on this.

THE COURT:  Okay.

MR. WOLFSHOHL:  Your Honor, at the last hearing when Your Honor heard the trustee's motion to sell, at the conclusion of the hearing -- and I hope Your Honor -- I think you understand this extension of 90 days is not us continuing to try to push things out.  I think Your Honor made it clear at the hearing that you are interested in this case moving forward.  I think the words that you used were, this case ends in 2025.  Our desire is for it to end in 2025.  We also sort of heard Your Honor loud and clear about pushing forward with trying to get some resolutions that have been, you know -- and disputes that have been pending and have plagued this case, frankly, for the last two and a half years.

THE COURT:  Well before you all got involved, yeah.

MR. WOLFSHOHL:  Three years, maybe.  Yes, that's right.  And I'm -- and that being specifically the PQPR dispute as well the dispute between the families that really sort of came to fruition near the end of the Chapter 11.

THE COURT:  Correct.

MR. WOLFSHOHL:  And I'm pleased to report -- I

mean, we spent most of the holidays, you know, sort of working through all of those issues.  I think Your Honor knows because you've entered an order that we went to mediation on the PQPR matter in front of Judge Mott. Immediately after mediation, we filed a motion to approve a settlement with PQPR.

In this case, that's docket number 1005, and just so Your Honor knows, we also filed the motion in the FSS case.  And we really did that because in that case, when you issued your dismissal order, you retained jurisdiction, and that case was filed -- the adversary was filed in the FSS. So, we just filed it in both.

THE COURT:  Got it.  No, no, I got it.  Makes sense.

MR. WOLFSHOHL:  So, we filed that as an expedited motion.  That resolves the PQPR dispute in its entirety. The -- this Friday -- we continued to work on the issues between Texas and Connecticut -- and this past Friday, at docket 1011, the trustee filed a motion to approve a compromise between the trustee, the Texas families, and the Connecticut families dealing with, primarily the -- sort of the allocation of the estate's fund in a way that everybody agrees.

And if Your Honor remembers, back in the 11, that was one of the things that was certainly at the height of

some of the disputes that were being negotiated.  It was also very much front and center that that was still being discussed, you know, when we were at this court in the sale hearing back in early December.  And so, that was something that we were able to get across the finish line and now we're asking the Court to consider.  Both those have been filed.

And there was another adversary proceeding involving a company called Elevated Solutions Group.  We have an order that's been agreed to.  We just need to get the motion on file, and I actually think we're going to get that motion on file this week.  So, we now have basically three disputes that the trustee did inherit that we've been working to resolve, and we are now in a position where we think we're going to be -- at minimum, we've got the two motions on file.  Expect to have the other one on file.

And so we'd like to get those teed up for a decision, Your Honor, and I think that that -- I think the way we heard Your Honor in early December that those things -- that we needed to focus on things and try to get this case back on track.  I think this does that.  And I think that from that, we are going to -- we've been working sort in parallel, but we're going to pivot our attention to the FSS sale process.

And I will say that -- Your Honor, since that

hearing, we received an unsolicited bid -- a new bid -- from First United that more than doubles the price that they were paying previously.  We also expect to get another bid from Global Tetrahedron.  The trustee anticipates evaluating those and coming back to the Court.  Now that we've got these other -- that you got the other issues resolved, which I think were important to get resolved, we anticipate coming back to the Court.

I don't know exactly what it's going to look like.  We're still sort of evaluating it, but I think we come back to the Court and say, Judge, here's what we've got.  Let's talk about a sale process, one that Your Honor's comfortable with, possibly with an auction -- maybe even an auction in the Court depending on what we see.  So, that's kind of where things are.

I just wanted -- Your Honor said also at the end of the hearing, I'm going to ask you in 30 days where the case and that's -- we're about --

THE COURT:  What happens when we hold too late?  I tend to talk too much.  But yeah.  I apologize.

MR. WOLFSHOHL:  We had it transcribed and we read it very carefully so -- but I'm happy to report that, you know, 30 days have passed and a whole lot has gotten -- we've accomplished a whole lot in 30 days.  I just want to make sure Your Honor knew that we weren't just sitting on

our hands.

THE COURT:  No, I appreciate it.  No, I've been watching and monitoring the docket.  I didn't know about the Elevated -- that's -- I can certainly tell a lot of work happened and I can tell during the time period in which it was happening which was clearly during the holidays.  So, I know folks have been really busy and doing a lot.

Mr. Wolfshohl, when do you -- what's the plan?  Do you want to kind of hold like a -- one hearing date where you can kind of consider all three settlements at the same time or what do you -- are you -- what dates do you need?  Maybe that's the better way --

MR. WOLFSHOHL:  Yeah.  No, that's a good question, Your Honor.  I think for sure PQPR and -- the settlement with PQPR as well as the Texas/Connecticut settlement, I would like those to be on the same day.

THE COURT:  When do you want it?  When do you want that?

MR. WOLFSHOHL:  I'm thinking, you know, as early as next week.  I mean, we did file them as expedited.  You know, we definitely want to get in front of the Court on them.  If the Court has availability next week, I think we would be happy to do it next week.  But, certainly, want to, you know --

THE COURT:  We do.  Ms. Aria, could I do the 21st

at 1:00?  No?  21st at 1:00.  Would that work?  I know a week from today is just -- the courts are going to be closed, and I promise to keep everyone here during business hours.

MR. JORDAN:  I'm not sure if you can hear me, but I have my hand raised.

THE COURT:  Mr. Jordan.

MR. JORDAN:  (indiscernible) a few comments (indiscernible)

THE COURT:  Just about the hearing date, Mr. Jordan?  I'll certainly open it up for comments, but in terms of the hearing date, does the 21st --

MR. JORDAN:  It's about the hearing date.  I know Mr. Brooks and I cannot attend the 21st.

THE COURT:  Okay.  What dates can you do maybe next week?  Let's see --

MR. JORDAN:  For next week -- (indiscernible)

THE COURT:  The (indiscernible) coming in on the 22nd and they're -- is that what that is -- the 22nd?  Okay.  I'm going to give you -- what about the 23rd at 1:00.  Does that work?

MR. LEMMON:  Your Honor, my (indiscernible) has the 14 as the presentation in San Antonio that afternoon.  So, if I could avoid that afternoon, it would be best.

THE COURT:  What about the 23rd at 9:00 a.m.

MR. LEMMON:  Yes, sir.  If I can attend remotely.

THE COURT:  Oh, absolutely, you can.  Absolutely, you can.  23rd at 1:00.  Does that work?

MR. WOLFSHOHL:  9:00 a.m., Your Honor?

THE COURT:  9:00 a.m.

MR. WOLFSHOHL:  That works for me, Your Honor.

THE COURT:  Okay.

MR. JORDAN:  And, Your Honor, that schedule will work for (indiscernible) I want to let the Court know that we are working on responses to both of those motions.  I think probably not issues that we're going to contest in connection with the mediation settlement.  But there's some substantial and material questions that need to be resolved.  And in the face of the appellate status in Connecticut, we (indiscernible) our motion for reconsideration to (indiscernible) enjoin the issues of the (indiscernible) in Connecticut were reversed.

Quite frankly, the issues in that case that were reversed, two of the three reasons that there was a (indiscernible) involved that (indiscernible) claims.  So, significant portions of the motion for reconsideration we file today raise those issues that have been critical to what I think is -- although, I'm not sure I understand exactly what it is the Plaintiffs are pursuing -- we will be informally in touch with the trustee's counsel and be sure

we're understanding the scope of what they want to do, but we will be taking an active role.  So, I just want to let the Court know that.

THE COURT:  You're referring to a reconsideration filed in Connecticut state court or --

MR. JORDAN:  No, no.  The reconsideration filed in your judgment in connection with the Connecticut Plaintiffs.  That's (indiscernible) motions for summary judgment that -- interlocutory (indiscernible) motions.

THE COURT:  That's why I'm glad we have these status conferences.  Let's see.

MR. WOLFSHOHL:  Your Honor, I'm definitely happy to speak with Mr. Jordan.  The intent here is not to affect their rights relative to the non-dischargeability issues.  So, if we can do things to clarify that, I'm definitely -- you know, Mr. Jordan can certainly pick up the phone.  I'm happy to talk to him.

THE COURT:  Yeah.  No, no, let me --

MR. JORDAN:  It's (indiscernible) --

THE COURT:  I have no idea.

MR. JORDAN:  I may have confused the issue.  We are filing it today.  We have not filed today.

THE COURT:  Oh.  I was going to say, what's he talking about.  Okay.  Got it, Mr. Jordan.

MR. JORDAN:  I apologize about that.

THE COURT:  I appreciate it.

MR. JORDAN:  Okay.  Thank you.

THE COURT:  No.  Absolutely.  Okay.  So, we'll proceed on the 23rd at 9:00 a.m.  And Mr. Lemmon, you're -- no issues with the virtual appearance at that hearing.  And I would note --

MR. JORDAN:  Your Honor, I'm sorry.  Looking at my calendar and that was the reason I told you quickly I couldn't do the earlier date, I need -- I'm looking at it.  It says that I have a hearing involving a case that's been set on January 23, but I can't tell if my calendar says that's the date to exchange exhibits or it's the -- and Crystal, if you're on the line, will you please clarify so I don't confuse the schedule?  But it appears that the date is not the hearing date.  It's the date on -- set to exchange - - yeah, to exchange exhibits.

I apologize, Your Honor, I didn't want to come back later and create another problem.  So, no, the 23rd is clear.

THE COURT:  Okay.  Perfect.

MR. WOLFSHOHL:  Your Honor, if we -- I assume that we will probably filing that other one -- the other motion to compromise -- within the next few days.  As long as we get it filed the next -- I'd say, you know, by Thursday, can we go ahead and self-calendar that for the same day?

THE COURT:  Yeah.

MR. WOLFSHOHL:  Okay.

THE COURT:  (indiscernible) everyone's right, yeah.  Absolutely.

MR. WOLFSHOHL:  Of course, yeah.

THE COURT:  No, no.  That's exactly right.  I think that -- I do take comfort -- the first motion was filed on the 3rd, so, I mean, that's a lot of notice for folks on the PQPR one.  So -- and the next motion, we will be providing -- yeah.  It's -- this is expedited, not emergency.  So, it's well within the time period.  So, that makes sense to me.  So, okay.  So, it looks like we'll see each other in ten days at 9:00 a.m.

Okay.  Is there anything else?

MR. WOLFSHOHL:  I don't think so, Your Honor.

MR. JORDAN:  Yeah, one other question.

THE COURT:  Just hold a second, Mr. Jordan.  Let me just see if there's anyone in the courtroom and then I'll turn to folks online.  Anything else from anyone in the courtroom?  Okay.  Mr. Jordan and then I'll open it up to anyone else.

MR. JORDAN:  Yes, Your Honor.  I just want to be sure the Court knew, we will be attending live at that -- there was some requirements for the last hearing.  The Court mentioned that witnesses and parties should attend live, but

I don't know if that's case in this motion.  But I want to be sure the Court knows we'll be there live.

THE COURT:  Okay.  Sounds great.  Thank you.

MR. JORDAN:  Thank you, Judge.

THE COURT:  Anyone else?  Okay.

MR. MOSHENBERG:  Yeah.  (indiscernible)

THE COURT:  Oh, absolutely, Mr. Moshenberg.  Please come on up.

MR. MOSHENBERG:  This is just a brief comment.  First of all, I didn't mention that Jery Barton's also here on behalf of the Texas Plaintiffs.  I know that I didn't mention it because he told me.

But separate and apart from that, Judge, in respect to the 9019 motion, I just want to be on the record that the Texas --

THE COURT:  Which 9019?

MR. MOSHENBERG:  With the Texas and Connecticut Plaintiffs, Your Honor.

THE COURT:  Yes, sir.

MR. MOSHENBERG:  I just want to be absolutely clear that Texas and Connecticut families are one hundred percent aligned, and this is an agreement that we're really proud of, that when -- just to echo what the trustee said.  A lot of work went in over the holidays on that.  As the Court knows, we haven't always agreed, but this 9019 really

reflects what all the families view as justice as it relates to Alex Jones.

And in the past, we've had different views of what justice looks like, but this is really a view that we now share and is reflected in this deal, Your Honor. And I just want to compliment Kyle Kimpler, the Connecticut teams, the trustee. A lot of people went in and put a lot of time and work, and a lot of respect went into this process. And I just couldn't leave this hearing today without acknowledging all of that, Your Honor. I wanted you to be aware of that.

THE COURT: Okay. We'll talk about it in -- let me just -- Mr. Wolfshohl, this is going to be kind a tricky question for you, but I'm going to carve off the entire morning, kind of 9:00 through noon, for -- you will have much better sense. If we need less time than that, that's fine. We'll just -- I don't need to know anything.

If it turns out that we may need more time, just let me know, but I'm going to carve out the morning for now. If you all think it's going to -- I just don't know what I don't know, and I'm not saying it's going to be (indiscernible) I'm just carving out time here. You know, we'll carve out the morning just so we kind of have as much -- then everybody can take as much time as they need.

MR. WOLFSHOHL: That makes sense.

THE COURT: That's not saying we need the entire

time.  It'll just -- as of right now, I'll carve out three hours for --

MR. WOLFSHOHL:  Yeah, that's great, Your Honor.  And look, I -- I'm going to -- you know, to the extent Mr. Jordan and Mr. Brooks have question and we can narrow to the extent there are any disputes, we'll do that so that we're hopefully not here for two days and late into the night.  I think this should --

THE COURT:  No, no.  We will finish -- we will only have business hours hearings going forth on this one, but we'll see.

MR. WOLFSHOHL:  Your Honor --

THE COURT:  Mr. Jordan, are you anticipating you and Mr. Brooks coming?  Is that what you meant by the "we?"

MR. JORDAN:  Yes.  We're both (indiscernible) to be in your courtroom.

THE COURT:  Okay.  Sounds great.  Thank you.

MR. LEMMON:  Your Honor, given the hearing setting, could we also get a deadline for filing objections just so -- you know, for purposes of understanding what evidence we're going to have to put on?

THE COURT:  I think with respect to the PQPR and the two motions that are file, I think any response by -- because it's expedited -- the 21st at noon.  And I think with respect to the -- not the PQPR -- if you get Elevated

Solution and that one goes on, I think it's only fair to that they get a little bit more time, and so I'll go the 22nd at noon on that.

MR. LEMMON:  That makes sense, Your Honor.  Okay.  Perfect.

MR. JORDAN:  And, Your Honor, with respect to responses or exhibits, what -- when do the exhibits need to be filed?

THE COURT:  I would think for the purposes of -- the 21st at -- you know, I think if somebody's going to -- for everyone, we ought to go on this one, 21st at 5:00 p.m. so that you can get our exhibits on and filed but then they get to read what you wrote and then they can think about exhibits as well.

But for the Elevated Solution, I'll do the 22nd at noon for all.  That's just -- someone's going to object to that, then get our exhibits on file for that, Mr. -- I think what makes sense is just to get all your exhibits on file on the 21st by noon, and then just deal with the objection for the Elevated Solutions one if that's what you want to do.

MR. LEMMON:  And Your Honor said 21st at 5:00, right?

THE COURT:  5:00 p.m.  Yes, do not keep -- they've got to file a response by noon, but I figure --

MR. LEMMON:  It gives me a little bit of time --

THE COURT:  -- you'll got time to kind of get a sense of where things are and then you can --

MR. LEMMON:  That makes sense, Your Honor.

THE COURT:  -- talk there.  And we'll go from there.  And then, Mr. Jordan, the motion for reconsideration, you're filing it -- is that in the adversary that that's going to get filed?

MR. JORDAN:  Yes.  It will be filed in the adversary.  The point I wanted to make and it's (indiscernible) in response to the general description of what --

THE COURT:  What am I reconsidering?  I thought there was already a motion for reconsideration on file that Mr. Kimpler had filed and I -- you want me to then reconsider the portion that I disallowed in light of a ruling by the Connecticut court?

MR. JORDAN:  Partially in light of the ruling by the Connecticut court which impacts the entire judgment in our opinion as we cited to you in the (indiscernible)

THE COURT:  Is this the New York Times versus Sullivan argument that's coming?

MR. JORDAN:  Yes, it is.  That's part of it.

THE COURT:  I just want to make sure that --

MR. JORDAN:  And --

THE COURT:  I just want -- okay.  I -- oh, I'm

tempted.  I won't.  I will reserve my comments for the motion for reconsideration.

Why don't we -- when do you plan on getting that on file?

MR. JORDAN:  Today.  It should be on file -- let say (indiscernible)

THE COURT:  What I'm tempted to do is just take it all up on the 23rd unless the parties tell me they want more time to respond.  Mr. Kimpler, you -- we can do that --

MR. KIMPLER:  Your Honor --

THE COURT:  -- we can do that when -- well, why don't you now -- why don't you get it on file and then we'll see where this goes.  I don't want to preempt -- I don't know what -- I think everybody's entitled to kind of read it and give it thought and give a full opportunity to respond to it.  So, okay.

Maybe we don't set that for the same day.  We stick with these, take things up in the ordinary course, let things get filed, and then we'll take a look at everything.  Get stuff on file and then we can all read it and make intelligent decisions at that point.  Let me not get ahead of myself.

Okay.  Is there anything else?

MR. KIMPLER:  Your Honor, it's Kyle Kimpler.  If I may just for one second.

THE COURT:  Yeah, absolutely.

MR. KIMPLER:  I appreciate what you just said.  I was going to say please don't put me on the spot.  I'd like to read it.  We'll obviously respond to that as soon as possible.  We're not going to seek a delay here and I'm happy to work with Mr. Jordan and his counsel on setting an appropriate schedule once it's read.  And if it's possible to get it teed up next week and we can respond in time, we'll be happy to do that.

THE COURT:  Okay.

MR. KIMPLER:  I'll just echo what Mr. Moshenberg said.  I think the settlement with the Texas families is kind of a milestone event in this case and I think it puts the families back on the same side, which I think is a great development in this case.  We look forward to explaining to you the settlement next week, and likewise, if Mr. Jones and his counsel have questions about that, I'd love to talk to them in advance, work with the trustee on that.

You know, it really was structured to be -- you know, preserve all of his rights that Mr. Jones has, given the non-dischargeability issues in the case which we recognized were out there.  So, we're happy to work with folks in advance to try to get the hearing to be as straight lined as possible.

THE COURT:  Okay.  Thank you very much.  And so,

for sure, on the 23rd, we're going to take up docket number 1005 and the 9019 with the families.  Those two are for sure.  If you get the Elevated Solutions Group, we'll take that one up as well.  Those will be the three matters that we definitely set for the 23rd.

Once the motion for reconsideration gets on file, what I would just ask is -- parties can just read it and if we need this -- I'm not inclined to set it on the 23rd unless the parties ask me to do it.  We just ought to take these three matters up and take the other one up in due course.  So, maybe parties can just reach out to my case manager, and we can set an appropriate date.

But if everybody is in agreement to go forward, I'll do it, but I'm not inclined to do it just sua sponte.  Let's all read it and be smart.  But those three matters for sure -- the ones that I've given you authority to do -- we'll go forward.  The other matter -- the motion for reconsideration -- we'll take up and we'll just pick a date for it.  Okay?  All right, folks.  Thank you very much.  Have a good day.  Thank you.  We're adjourned.

MR. WOLFSHOHL:  Thank you, Judge.

(Whereupon these proceedings were concluded at 11:37 AM)

CERTIFICATION

I certify that the foregoing is a correct transcript from

the electronic sound recording of the proceedings in the

above-entitled matter.

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date:  February 4, 2025