```
 1                    UNITED STATES BANKRUPTCY COURT
                       SOUTHERN DISTRICT OF TEXAS
 2                          HOUSTON DIVISION

 3    ALEXANDER E. JONES AND         )  CASE NO: 22-33553-cml
      THE OFFICIAL COMMITTEE OF      )
 4    UNSECURED CREDITORS,           )  Houston, Texas
                                     )
 5          Debtors.                 )  Wednesday, February 5, 2025
                                     )
 6                                   )  9:00 AM to 9:26 AM
      ------------------------------)

 7

 8                              HEARING

 9          BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                 UNITED STATES BANKRUPTCY JUDGE
10

11    APPEARANCES:

12    For Alexander E. Jones:   SHELBY JORDAN
                                ANTONIO ORTIZ
13                              Jordan & Ortiz, PC
                                500 N. Shoreline Blvd.
14                              Corpus Christi, TX 78401

15                              BEN BROOCKS
                                WILLIAM BROOCKS
16                              Broocks Law Firm PLLC
                                6207 Bee Cave Road, Suite 120
17                              Austin, TX 78746

18    For Chapter 7 Trustee:    JOSHUA WOLFSHOHL
                                KENESHA STARLING
19                              JORDAN STEVENS
                                Porter Hedges LLP
20                              1000 Main Street
                                Houston, TX 77002
21
                                CHRISTOPHER R. MURRAY
22                              ERIN JONES
                                Jones Murray LLP
23                              602 Sawyer Street
                                Houston, TX 77007
24

25
```

```
 1   For Connecticut            KYLE KIMPLER
     Families:                  PAUL PATERSON
 2                              Paul Weiss Rifkind Wharton &
                                Garrison LLP
 3                              1285 Avenue of the Americas
                                New York, NY 10019
 4
                                RYAN CHAPPLE
 5                              Cain & Skarnulis PLLC
                                303 Colorado Street
 6                              Austin, TX 78701

 7   For Texas Plaintiffs:      AVI MOSHENBERG
                                Lawson & Moshenberg PLLC
 8                              801 Travis Street
                                Houston, TX 77002
 9
                                JARROD MARTIN
10                              Chamberlain Hrdlicka White Williams
                                & Aughtry, P.C.
11                              1200 Smith Street, Suite 1400
                                Houston, TX 77002
12
                                JENNIFER HARDY
13                              Willkie Farr Gallagher LLP
                                600 Travis Street, Suite 2310
14                              Houston, TX 77002

15   Court Reporter:            UNKNOWN

16   Courtroom Deputy:          UNKNOWN

17   Transcribed by:            Veritext Legal Solutions
                                330 Old Country Road, Suite 300
18                              Mineola, NY 11501
                                Tel: 800-727-6396
19

20   Proceedings recorded by electronic sound recording;
     Transcript produced by transcription service.
21

22

23

24

25
```

1 <u>HOUSTON, TEXAS; WEDNESDAY, FEBRUARY 5, 2025; 9:00 AM</u>

2 (Call to Order)

3 THE COURT: -- 9:00 a.m. case, Alex Jones. Why
4 don't I take appearances in the courtroom and then we'll get
5 started.

6 MR. WOLFSHOHL: Good morning, Your Honor. Joshua
7 Wolfshohl, Kenesha Starling, and Jordan Stevens from Porter
8 Hedges, for the Trustee. And Mr. Murray is here as well --

9 THE COURT: Okay. Good morning.

10 MR. WOLFSHOHL: -- as well as co-counsel --

11 MS. JONES: (indiscernible)

12 MR. WOLFSHOHL: -- Erin Jones.

13 THE COURT: Good morning.

14 MR. JORDAN: Your Honor, Shelby Jordan and Antonio
15 Ortiz, co-counsel, along with Mr. Ben Broocks and Mr.
16 William Broocks, here in the courtroom today.

17 THE COURT: Good morning.

18 MR. JORDAN: And that's -- I'm sorry -- co-counsel
19 for Mr. Jones.

20 THE COURT: Yes, thank you.

21 MR. KIMPLER: Good morning, Your Honor. Kyle
22 Kimpler, from Paul Weiss, on behalf of the Connecticut
23 families. I'm joined by my partner, Mr. Paterson, and on
24 the screen, Mr. Ryan Chapple.

25 THE COURT: Good morning. Oh, I should turn my

1   camera on.  I apologize.

2          MR. MOSHENBERG:  Good morning, Judge.  Avi
3   Moshenberg, here on behalf of the Texas Plaintiffs.  Also
4   with me is Jarrod Martin and Jennifer Hardy, Your Honor.

5          THE COURT:  Good morning.  Anyone else wish to
6   make an appearance?  Okay.  Here on the 9019 settlement, and
7   I know that there are some related motions that we should
8   talk about.

9          MR. JORDAN:  Your Honor, if I might?

10         THE COURT:  Sure.

11         MR. JORDAN:  Shelby Jordan.  We have made -- we
12  being the Alex Jones team of lawyers, two firms and lawyers
13  that have been very, very busy -- we've made every effort we
14  possibly could to get a grasp on what has turned out to be a
15  very, very complex matter that could, if we are not careful,
16  be a case dispositive motion.  We could walk out today and
17  have nothing to show for the values of the appeal or for
18  other matters that --

19         THE COURT:  Let me -- let me stop.  I've studied
20  this 9019 over the past several days very carefully.  I know
21  we had a status conference and I knew that there were some
22  discovery-related issues.

23         The Free Speech case originally started as a
24  Subchapter IV -- was originally a lawyer and CRO.  I find
25  professionals -- I thought there was a conflict between

1    those professionals and the Jones estate, so I didn't
2    approve them.  Then came in another set of lawyers and
3    another CRO.  The two cases, the Jones case, the Free Speech
4    case, proceeded on a track, side-by-side track basis.
5             We held the hearings on the non-dischargeability
6    claims in the Jones case.  Non-dischargeability claims were
7    put in abeyance in the Free Speech case because the Fifth
8    Circuit had agreed to take up the issue.  The Fifth Circuit
9    ruled.  They got it exactly right.  It's exactly what I
10   would have ruled.  But theirs is more important.  So we were
11   left with the summary judgment in the Jones case.  Never
12   really took it up in Free Speech.
13            There were a couple of other adversary
14   proceedings, some related Texas parties who never had their
15   day in front of me.  Parties, Texas families, a group of
16   them, and Connecticut families were in mediation with other
17   parties.  I know the Jones folks were there.  I know Free
18   Speech was there a while, about a year.  Nothing came of it.
19   There was a 9019.  But then it was contingent upon approval
20   of a plan that never happened for the 90 -- that went away.
21   But I was prepared to approve that.
22            The case had been going on for about two years.
23   Then they went to mediation again before another judge in
24   another district.  That was unsuccessful.  Mediation
25   sometimes work; they don't.  My point is that people have

1  been trying to consensually resolve these issues for two
2  years, and it didn't happen.  And the Free Speech case could
3  have either converted or been dismissed.  But it couldn't
4  hang out in Chapter 11 because there was no way it was going
5  to be able to confirm a plan.
6          And to say that they stretched -- and I allowed it
7  to happen -- stretched the limits of Subchapter V and what
8  it was intended to do is an understatement in terms of
9  timing; not in terms of ruling, but in terms of timing to
10 get a plan on.  But people were mediating.  And I thought it
11 made sense that if people were going to try to reach a deal,
12 if you were going to put together a plan and this all worked
13 out, then I didn't want to put my thumb on the scale.  So,
14 ultimately, I made a decision to dismiss the Free Speech
15 case.
16         We were left with the Jones case.  But I retained
17 -- I told Murray he could keep -- Mr. Murray, the Chapter 7
18 Trustee appointed then in the Jones case, because the Jones
19 case converted as well -- keep the cash from Free Speech in
20 the bank accounts, and kept two adversary proceedings, one
21 involving PQPR, another one involving Elevated Solutions
22 Group.  No professionals started coming to me.  I don't know
23 if it's true or not, but anyway.
24         But Texas families were able to try to collect on
25 their judgment against Free Speech.  They had rights given

1    by a Texas court, I think even going after some of the Free
2    Speech professionals who were working to preserve the
3    estate.
4           When it came time to potentially sell assets, Mr.
5    Murray and his counsel told me that they think that the real
6    way to maximize value is to sell stuff, and not just the
7    equity.  They wanted the opportunity to go do this, and they
8    thought they could do this by an auction.
9           They had, over an objection of the United States
10   Trustee, told me just let them sell the equity.  I entered a
11   supplemental order so that to ensure you have the Trustee
12   cover that he could sell the assets.  That's what that order
13   was intended to do.  The supplemental dismissal order was
14   just to make sure, because that was the request.
15          We had the auction process.  I won't recount what
16   happened, but I didn't approve the proposed sale.  I had a –
17   – I think the evidence is clear -- a backup bidder at the
18   beginning.  We didn't even know what the winning bid was.  I
19   had an auctioneer who got on the stand and didn't even know
20   what he was going to get paid, or under what terms he was
21   going to get paid.
22          I had a winning bid that was clearly based on a
23   contingency.  There was a sliding scale in the agreement.
24   The proposed order submitted originally had the very
25   language showing it was a contingency.  And the Trustee was

1  telling me that it wasn't a contingency. That was his
2  understanding.
3           So I was asked to approve a sale that had a
4  contingency clearly in it, but was told to act like there
5  wasn't a contingency, upon a sale price that no one really
6  could articulate, because depending on how you took it as a
7  contingency or not a contingency. And we couldn't figure
8  out exactly what the auctioneer was even going to get paid,
9  because I don't even think he knew.
10          I then denied that auction. We were here until,
11 what, 10:30 that night? So I didn't want -- and then I
12 asked -- this case has been going on, I said -- I gave some
13 (indiscernible) speech, told them it's been going on for
14 like three years, and let's just get this back on track, get
15 back to doing -- no, I should back up and mention that the
16 supplemental order was appealed by the Texas families. I
17 think that matter is still pending.
18          MR. JORDAN: It is, Judge.
19          THE COURT: I lose jurisdiction over that
20 immediately.
21          MR. JORDAN: It's still -- it is still pending.
22          THE COURT: But I think the appeal was something
23 like, Judge, you can't do that, was the basis of the appeal.
24 I don't have authority to go vest the property of the
25 estate.

1 So the sale didn't happen, and I said, I don't
2 want any more contingencies. If there's going to be a sale
3 of assets, then cash will be king. But if there's confu- --
4 if there's -- gets complicated, like it was last time, where
5 you had IP assets, and people weren't bidding against each
6 other.
7 I also said the sale price was low. Turns out
8 there's been an offer made since that day, which almost
9 doubles the amount that was -- increased the offer by a
10 week. A week, like it was there. That's fine. Then if
11 things get -- I told folks, if you want to sell it, cash
12 will be king. Get back to doing just -- you want to sell
13 the equity? Sell the equity, but cash will be king.
14 I took up the motion for reconsideration filed by
15 the Connecticut families. I know that the Jones side has a
16 motion for reconsideration pending that will run its own
17 course. But as things sit today, as I see them -- I could
18 be wrong -- no, I'm not wrong on this, and maybe just
19 slightly off on the numbers -- but I know that the
20 Connecticut court has -- in Appellate Connecticut court, a
21 second level of revision has taken some of the
22 (indiscernible) amounts. And now that's subject to further
23 appeal, and parties will appeal.
24 I haven't denied anyone any ability to pursue.
25 Jones was able to hire his own lawyers. Connecticut family

1  was able to pursue those judgments.  My non-dischargeability
2  order in the Jones case kind of has a mechanism saying, this
3  is what I found based on summary judgment, based on the
4  collateral estoppel of the findings made in the Connecticut
5  court.  The Connecticut court ultimately finds that X is the
6  number, will then kind of compare it to what I did, and
7  there's a kind of an adjustment so that I'm not allowing any
8  more than a Connecticut court would have allowed.
9           Same thing for Texas.  I think there was a portion
10 that I didn't approve for Texas, I know, and for Connecticut
11 as well, that I didn't find -- I didn't think there were
12 basis for collateral estoppel findings, and appellate courts
13 will review what I did, and that's the way the process
14 works.  I've got no issues with that.
15          So that's where things stand.  I don't know,
16 around a billion dollars for Connecticut right now, subject
17 to further appeal, non-dischargeable.  Around $50 million
18 for Texas, subject to further appeals.  The numbers could
19 stay the same, numbers could be zero, numbers could go up.
20 I don't know.  It's all subject to state court appeals now.
21          But FSS, that estate is closed.  That case is
22 closed.  That case is closed.  Which means that someone has
23 a contract dispute with FSS.  You don't come to me.  You
24 have whatever rights you have outside the bankruptcy.  The
25 bankruptcy doesn't affect your claims one way or the other.

1                    There were several individuals who had a case.
2     They were suing Jones in Texas state courts.  They can
3     continue their trials in state courts.  There's nothing
4     stopping anyone from pursuing any claims in Texas state
5     court.  The bankruptcy has no impact.  In other words, the
6     bankruptcy itself, the estate, there's no automatic stay
7     stopping -- no one has to come ask me for permission.  You
8     have whatever rights you have.
9                    I already said, multiple years to try to reach a
10    settlement, and they didn't.  And I'm not saying anybody
11    should have settled.  I don't get into why people settle and
12    don't settle.  Not my purview.  I'm there to evaluate
13    settlements and determine whether they're in the best
14    interest of the estate.  That's my job.
15                    So, kind of where we are.  Several years of
16    negotiating, no settlement, no plan.  FSS gets dismissed.
17    Failed auction.  Now there's a 9019.  The 9019 now wants me
18    to allow claims against FSS.  And I don't -- and I can't do
19    that.  And all bankruptcy lawyers know that I can't do that.
20    Because there's no estate.  There's no bankruptcy estate to
21    allow a claim against.  People can go to state court right
22    now.  If FSS Free Speech doesn't pay someone's bills, you
23    don't come to me and ask for an admin claim.  You go to
24    state court.  You go to court where you can go to court, but
25    you don't have to come to me.

1   So, now the Trustee is asking me to approve a 9019
2 settlement where I'm allowing over $400 million of claims
3 against Free Speech.  And now the Texas families are saying
4 that the matter that they very much appealed, they're now
5 embracing.  The supplemental order is now embraced.
6   The Trustee who asked me for a specific order for
7 a specific purpose is now using that order.  But it was only
8 for one purpose, to see if he could sell the assets.  To now
9 use those words, knowing what we did and why we did it, and
10 everybody was in the room when we did it.  Ha Nguyen was
11 here.  The U.S. Trustee was sitting right there telling me.
12   So, now it's going to be expanded to then allow
13 $480 million worth of claims against an entity in a case
14 that I dismissed.  I'm being asked to allow claims -- allow
15 -- and allow is bankruptcy buzzword 101.
16   And here we are again.  Before we would pit the
17 families against each other, where Connecticut and Texas
18 would disagree on whether the form of relief being requested
19 was appropriate.  Happened during the auction too, where
20 Texas said, I don't understand what we're doing here and I
21 don't understand how this is going to work.
22   So, now I'm told we're all aligned and you just --
23 Lopez, just have to allow a claim against an entity in a
24 case that's been dismissed.  I can't do that.  I cannot do
25 that.  I don't have authority to do it.  And I'm not going

1  to use the supplemental order, which was used for one
2  purpose and one purpose alone, and that purpose is now gone.
3  Gone.  I'm very much inclined to vacate that order because
4  it serves no purpose.  I'm not allowing a sale of the assets
5  anymore.  Pure sale of the equity.
6          We're going to -- I've got to -- this case keeps
7  taking twists and turns and trying to come up with really
8  masterful and creative lawyering.  But at its core, it's
9  something I can't approve.  Would come -- you know...
10          And so, I know...  I read the revised settlement.
11  Read the revised order.  Bankruptcy lawyers know I can't do
12  this unless we get really, really, really creative.  And I
13  think on a case like this, we've got -- with multiple
14  appeal, any party, regardless of what I do, people have
15  their rights.
16          So, before everyone gets started, let me just tell
17  you, I can't do this.  I'm going to again turn to Mr.
18  Moshenberg and tell him, you'd better -- I need you to tell
19  me what you want to do on your -- this non-dischargeability
20  action.
21          I know that there's a pending motion in the other
22  one.  I've now approved the two matters in which there's
23  9019s and the two settlement matters.  Money's going to go
24  out the door.  You don't have to tell me now.  I want you to
25  file something and tell me exactly what you all are going to

1 do.

2      MR. MOSHENBERG:  Understood, Your Honor.

3      THE COURT:  And just play it down the line, in
4 other words.  People have rights and I'm not telling you to
5 put you on the spot or anything, I just know.

6      Mr. Murray, if you want to sell the equity, go
7 sell the equity.  This case -- people have rights and
8 they've been...  If you want to go pursue claims against
9 Jones in state court against Free Speech, I don't -- I
10 dismissed the case and I know what comes along with that.
11 Those arguments were made to me and I know what they are.

12      No, you don't have to say anything.  I know what
13 the rights are.  And I'm not -- so you can consider any use
14 of the supplemental order null and void, because the purpose
15 for which it served was the auction of the assets, and we're
16 not doing that anymore.  I don't trust the process.  I would
17 have to do it -- me, myself -- and I'm not overseeing it.

18      So kind of get comfortable with the process so
19 that we don't kind of do the same thing.  We've already did
20 it really long and complicated and brought in auctioneers
21 and had lots and -- enough has been -- and I think what this
22 Debtor needs and what these families need is finality of the
23 bankruptcy process so that they can pursue whatever it is
24 that they want in judgments in state court, which is where
25 they started in the 1st place; Connecticut, Texas, for the

1  most part.  I know that there's some other litigation
2  pending out there.
3         I just -- I don't have the ability to allow a
4  claim against an entity.  And in a case that has been
5  dismissed in which I literally gave specific authori- -- you
6  keep the cash; we're going to keep these two adversaries.
7  I'm going to settle these.  I'm going to keep jurisdiction
8  over these two things and this one.  And I'm not going to do
9  it for anything else.
10         I can't use the supplemental order to then go --
11  for a purpose in which it was never intended.  And I get to
12  construe my own orders and I retain jurisdiction over them.
13  This case will be highly simplified.  And I know Mr.
14  Wolfshohl said he's been listening to these transcripts
15  carefully.  I made it super simple for you this time.
16         There will be -- I don't know.  Someone has a
17  case, bring it.  There have been multiple years of
18  investigations.  No lawsuits have been (indiscernible) in
19  front of me.  Maybe one is coming.  I don't know.  If it
20  does, we'll take it up and I'll rule.
21         I'm not sure anybody's ever been happy about --
22  completely set in my rulings.  I'm not sure Mr. Jones has
23  been entirely happy to know that I found on summary judgment
24  that he's liable for over a billion dollars in non-
25  dischargeable debt and over $49 million dollars.  I'm sure

1  he -- appealing -- he is appealing.  And that's his right.
2          So, I'm sure the Connecticut and the Texas family
3  -- I'm sure the Connecticut families weren't too happy about
4  my decision about the auction.  Sure Global Tetrahedron
5  wasn't too happy about it.  But I'm really trying to do what
6  I think is my duty and my job upon careful analysis of the
7  law.
8          And so I'm not approving.  I cannot on its face.
9  You don't have to put on any evidence.  I can't approve this
10 sale.  I can't allow $480 million dollars.  And I don't want
11 folks to put it up.  And we don't need to take up TROs and
12 Connecticut and Texas.
13         Texas, you have whatever rights you have.
14 Connecticut, you have whatever rights you have against Free
15 Speech, case against Jones.  If you want to have another --
16 if you want to settle with the Trustee on Jones related
17 matters, do it.  Tee it up.  We'll take it up.  But these
18 things are inextricably linked and multiple appeals going
19 on.  Well, I don't know if they're still going on.  They
20 probably will on the non-dischargeability front, by the way.
21 You have whatever rights you have on the supplemental order.
22         MAN 1:  Judge, if I could comment --
23         THE COURT:  Won't be used again.  No, no, no.  I
24 don't need you to comment on anything.  I don't -- because
25 it's going to open the door.  I just wish everyone a good

1  day.  Thank you.
2           CLERK:  All rise.
3           (Whereupon these proceedings were concluded at
4  9:26 AM)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1  INDEX

2

3  RULINGS

4                                                         Page    Line

5  Motion to Approve Sale, Denied                          16      8

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  <u>CERTIFICATION</u>

2

3  I certify that the foregoing is a correct transcript from

4  the electronic sound recording of the proceedings in the

5  above-entitled matter.

6

7  *[Signature: Sonya M. Ledanski Hyde]*

8

9

10 Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20 Veritext Legal Solutions

21 330 Old Country Road

22 Suite 300

23 Mineola, NY 11501

24

25 Date: February 6, 2025