**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | ) )  Chapter 7 |
| ALEXANDER E. JONES, | )  Case No. 22-33553 (CML) |
| Debtor. | )  Re: Docket No. 1089 |

**JOINT OBJECTION OF THE SANDY HOOK FAMILIES
TO FUAC'S MOTION REQUESTING LEAVE TO FILE A MOTION APPROVING
THE SALE OF FSS ASSETS, AND REQUEST FOR A STATUS CONFERENCE**

The Connecticut Families[1] and the Texas Families[2] (collectively, the "Sandy Hook Families"), as creditors and parties in interest in the above-captioned case, file this objection to the *Expedited Motion Requesting Leave to File a Motion Approving the Sale of FSS Assets, and Request for a Status Conference* [Docket No. 1089] (the "FUAC Sale Motion"), filed by First United American Companies, LLC ("FUAC"). In support hereof, the Sandy Hook Families respectfully state as follows:

1.      In the over three years since FSS[3] and Jones[4] first filed their bankruptcy cases, more than $10 million has been billed by estate professionals in these cases, either defending Jones or responding to objections from Jones. And yet, the Sandy Hook Families have not yet received—and are no closer to receiving—a single dollar in distributions from either Jones or FSS through the bankruptcy cases. The FUAC Sale Motion asks for more of the same; another opportunity for Jones and FUAC to try to dictate the terms of the case, oppose any outcome that

---

[1]    The "Connecticut Families" are Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, and Erica Ash.
[2]    The "Texas Families" are Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and the Estate of Marcel Fontaine.
[3]    "FSS" refers to Free Speech Systems, LLC.
[4]    "Jones" refers to Alexander E. Jones, the above-captioned debtor.

does not return the FSS assets back to Jones, and to pursue scorched earth litigation knowing that the costs to Jones' estate (the "Estate") will be borne by the Sandy Hook Families.  Only weeks ago this Court held "I'm not allowing a sale of the assets anymore."[5]  And yet, Jones and FUAC—parties that have no economic standing in the case—are asking for the Court to reverse itself and for the chapter 7 trustee in the Jones case (the "Trustee"), to incur additional fees, including by responding to the FUAC Sale Motion itself.

2.      The Sandy Hook Families have determined that the best path for collecting on their judgments against FSS is to work together and pursue remedies in state court, which they will be doing in short order.  In pursuing state court remedies, the Sandy Hook Families will coordinate, as appropriate, with the Trustee, who is the 100% equity owner of FSS.  The Families no longer see any benefit to pursuing a costly and litigious sale process in this Court. For this reason and several others, detailed below, the Sandy Hook Families oppose the relief requested by the FUAC Sale Motion.

3.      *First*, this Court has expressly rejected the remedy that FUAC seeks.  It explicitly instructed that it is "not allowing a sale of the assets [of FSS] anymore"[6] and that "you can consider any use of the supplemental order null and void, because the purpose for which it served was the auction of the assets, and we're not doing that anymore.  I don't trust the process. I would have to do it—me, myself—and I'm not overseeing it."[7]  FUAC does not argue that circumstances have changed since this Court decided to disallow an auction of FSS's assets. FUAC merely wants a second bite at the apple after its previous disappointment and asks that the Court reverse its unequivocal decision not to pursue a sale of FSS's assets without offering any new information or changed circumstances to warrant such a reversal.

---

[5]     Feb. 5, 2025 Hr'g Tr., 13:4-5.

[6]     *Id.*

[7]     Feb. 5, 2025 Hr'g Tr., 14:13-17.

4.      *Second*, FUAC is only a disappointed bidder who lacks standing to file the motion it seeks to submit in this case.  In support of the remedy it seeks, FUAC offers only self-serving arguments about how much time and how many resources it has spent attempting to acquire FSS's assets.  The costs and expenses involved in preparing a bid do not confer standing on a party who has no other interest in a bankruptcy case.  *See In re HST Gathering Co.*, 125 B.R. at 468 (holding that a bidder who "went to 'considerable expense' to prepare and submit his bid" did not have standing because he was "on notice that the cost of preparing and submitting the bid was merely a cost of doing business because acceptance was not guaranteed"); *see also Ordower v. Martino*, Nos. 93 C 5252, 92 B 12333, 1993 WL 500813, at *3 (N.D. Ill. Nov. 10, 1993) (holding that a bidder's claim of "nominal expenses in preparation of his bid to the Trustee" did not establish cognizable injury to confer standing).  In circumstances like this, FUAC does not have standing.  *See Wallach v. Kirschenbaum*, No. 11 CV 0795 (SJF), 2011 WL 2470609, at *4 (E.D.N.Y. June 16, 2011) ("A prospective purchaser . . . lacks standing to challenge a bankruptcy court's disallowance of a proposed sale of an asset of the bankruptcy estate."); *In re Quanalyze Oil  Gas Corp.*, 250 B.R. 83, 89 (Bankr. W.D. Tex. 2000) (citation omitted) ("A competing bidder normally lacks standing to even challenge a sale, much less seek reconsideration of an order approving sale."); *In re HST Gathering Co.*, 125 B.R. 466, 468 (W.D. Tex. 1991) (citation omitted) (bidders are not within the "zone of interests intended to be protected" under the bankruptcy statutes and rules); *In re Gulf States Steel, Inc. of Ala.*, *Inc.*, 285 B.R. 739, 742 (Bankr. N.D. Ala. 2002) (collecting cases) ("There are numerous authorities which hold that a non-creditor, whose only connection with a bankruptcy case is that the party was an unsuccessful bidder at a bankruptcy sale, lacks standing to challenge the right of other bidders to consummate the sale."); *In re Linett*, BAP No. SC-23-1102-FBC, 2023 WL 8813825, at *4 (9th

Cir. BAP Dec. 20, 2023) ("An aggrieved prospective bidder does not have standing to appeal a sale or settlement order."); *In re Diplomat Constr. Inc.*, 481 B.R. 215, 217 (Bankr. N.D. Ga. 2012) (unsuccessful bidders were not parties in interest and lacked standing to oppose motion to sell); *Greenwald v. Pocmont Props., LLC*, 23-CV-02875 (RPK), 2024 WL 3045205, at *5 (E.D.N.Y. June 17, 2024) (citation omitted) ("the Bankruptcy Court correctly observed that 'a prospective purchaser of assets of a bankruptcy estate is not within the zone of interests intended to be protected by the Bankruptcy Code and, therefore, typically does not have standing to challenge the sale of the assets to another party.'"). FUAC appeared for the first time in this case as a prospective bidder for FSS's assets—it is neither a creditor nor party-in-interest in the Jones bankruptcy case. Accordingly, FUAC does not have standing to bring the FUAC Sale Motion under the Bankruptcy Code. Rather, the Trustee is the only party that has the authority to seek a sale of the FSS assets in the Jones bankruptcy case—to allow a potential *bidder* to force the Trustee to initiate another sales process would be particularly unusual.

5.      *In addition,* the fact that FUAC "remains willing to pay $8 million for the Assets but simply cannot agree to acquire the equity of FSS" does not transform it into a party-in-interest. It is not a creditor in this case. Thus, this Court should not revisit its decision on the sale order. *See, e.g.*, *In re Gordon*, No. 07-36315-H3-7, 2009 WL 1065127, at *3 (Bankr. S.D. Tex. Feb. 27, 2009) (citation omitted) ("The appearance of a 'better offer,' standing alone does not constitute grounds for reconsidering a sale order . . . ."). Given FUAC's lack of standing, the Sandy Hook Families oppose FUAC's motion to seek leave to file a motion approving the sale of FSS assets.

6.      *Third*, given the Court's February 5 ruling that it does not have authority to allow claims against FSS, it makes no sense to require the Trustee to sell FSS's assets. The sale

process requested by the FUAC Sale Motion would only lock up sale proceeds with the Trustee, as it provides no mechanism by which the Trustee may distribute these proceeds to creditors of FSS (*i.e.*, the Sandy Hook Families).  The Court made clear in the February 5 ruling that there is no FSS "bankruptcy estate to allow a claim against."  Feb. 5 Tr. at 11:20–11:21; *see also* Feb. 5 Tr. at 11:17–11:20 ("The 9019 now wants me to allow claims against FSS. . . and I can't do that. Because there's no estate."); Feb. 5 Tr. at 12:23–12:25 (stating, in respect of allowing a claim against FSS, the Court "can't do that.  I cannot do that.  I don't have authority to do that.").

7.      In light of the Court's rulings, the Court should not compel a process by which the Trustee monetizes FSS's assets for the benefit of its creditors but lacks the tools necessary to determine which creditor is entitled to such sale proceeds.  If the Trustee sells FSS's assets— rather than the FSS equity, which is property of the Estate—the Trustee would then need to distribute such sale proceeds to creditors but would not have authority to determine which claims are allowed and therefore entitled to such proceeds.  A separate proceeding against FSS is therefore necessary to determine which creditors are entitled to share in the proceeds resulting from the disposition of FSS's assets, and consistent with the Court's February 5 ruling, the Sandy Hook Families will look to state law remedies to liquidate FSS's assets.[8]  A bankruptcy sale process would, of course, halt the Sandy Hook Families' state court collection efforts, but would not provide any mechanism by which the Sandy Hook Families may actually collect any recoveries.  Accordingly, the relief requested by the FUAC Sale Motion would only hinder creditors' recoveries, by obstructing their ability to pursue remedies in state court, while at the

---

[8]     *See, e.g.*, Feb. 5 Tr. at 10:23–10:24 ("FSS, that estate is closed.  That case is closed. . . You have whatever rights you have outside the bankruptcy."); Feb. 5 Tr. at 11:3–11:5 ("There's nothing stopping anyone from pursuing any claims in Texas state court.  The bankruptcy has no impact."); Feb. 5 Tr. at 11:21–11:24 ("People can go to state court right now.  If FSS . . . doesn't pay someone's bills, you don't come to me and ask for an admin claim.  You go to state court.").

same time locking up sale proceeds with the Trustee, who has no ability to apportion and distribute those sale proceeds.

8.     *Finally*, a further contested sale process would inevitably result in significant, additional administrative expenses to the Estate—a cost directly borne by the Sandy Hook Families.  No matter the process or outcome, in any sale Jones's scorched-earth litigation tactics will unquestionably result in material, additional expenses to the Estate.  Compounding this, two parties—FUAC and WOW.AI LLC[9]—have already expressed interest in acquiring the FSS assets through a bankruptcy sale, laying the groundwork—even before any bidding procedures are even considered by this Court—for a contested sale process.

9.     Another contested sale process would significantly harm creditors' recoveries—which have already been delayed by years, while millions of dollars are paid to estate professionals.  Counsel to the Trustee alone has incurred over $1.4 million in fees through January 31, 2025.[10]  Nearly $800,000 of such fees were incurred between November 2024 and January 2025, the period of time during which the first contested sale hearing took place.  *See* Interim Fee Application.  The Sandy Hook Families have indulged enough resources leaving the Estate, all of which would otherwise be used to pay their claims, and do not support further Estate resources being spent toward a bankruptcy sale.  Instead, the Sandy Hook Families—consistent with the Court's directive—intend to pursue their remedies under state law, which they believe represents the most efficient and value-maximizing path forward.

---

[9]     *See Limited Joinder to FUAC's Expedited Motion: (I) Requesting Leave to File Motion Approving Sale of FSS Assets, and (II) Requesting Status Conference* [Docket No. 1093].

[10]    *See Second Interim Fee Application of Porter Hedges LLP, as Bankruptcy Counsel for Chapter 7 Trustee, Christopher R. Murray, for Allowance of Compensation and Reimbursement of Expenses for the Period from November 1, 2024 Through and Including January 31, 2025* [Docket No. 1085] (the "Interim Fee Application").

Dated: March 11, 2025

Respectfully submitted,

/s/ Avi Moshenberg
**MCDOWELL HETHERINGTON LLP**
Avi Moshenberg
State Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, TX 77002
Telephone: (713) 337-5580
Fax: (713) 337-8850
E-mail: Avi.Moshenberg@mhllp.com

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, PC**
Jarrod B. Martin
State Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, TX 77002
Telephone: (713) 356-1280
Fax: (713) 658-2553
E-mail: jarrod.martin@chamberlainlaw.com

**WILLKIE FARR & GALLAGHER LLP**
Jennifer J. Hardy
State Bar No. 24096068
600 Travis Street
Houston, TX 77002
Telephone: (713) 510-1766
Fax: (713) 510-1799
E-mail: jhardy2@willkie.com

**WILLKIE FARR & GALLAGHER LLP**
Stuart R. Lombardi (admitted *pro hac vice*) Ciara A. Sisco (admitted *pro hac vice*)
787 Seventh Avenue New York, NY 10019
Telephone: (212) 728-8000
Fax: (212) 728-8111
E-mail: slombardi@willkie.com
E-mail: csisco@willkie.com

***Co-Counsel to the Texas Families***

/s/ Ryan E. Chapple
**CAIN & SKARNULIS PLLC**
Ryan E. Chapple
State Bar No. 24036354
303 Colorado Street, Suite 2850
Austin, TX 78701
Telephone: (512) 477-5000
Fax: (512) 477-5011
E-mail: rchapple@cstrial.com

**KOSKOFF KOSKOFF & BIEDER, PC**
Alinor C. Sterling (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone: (203) 336-4421
E-mail: asterling@koskoff.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kyle J. Kimpler (admitted *pro hac vice*)
Paul Paterson (admitted *pro hac vice*)
Leslie Liberman (admitted *pro hac vice*)
Vida J. Robinson (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
E-mail: kkimpler@paulweiss.com
    ppaterson@paulweiss.com
    lliberman@paulweiss.com
    virobinson@paulweiss.com

***Co-Counsel to the Connecticut Families***

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing objection has been served on counsel for Jones and all parties receiving or entitled to notice through CM/ECF on this 11th day of March, 2025.

*/s/ Ryan E. Chapple*
Ryan E. Chapple