# Exhibit 1

**Lafferty Fed Ct. Remand File (Full), Trial Ct. Dckt. 112.00**

CLOSED,EFILE,PROSE

**U.S. District Court**
**District of Connecticut (New Haven)**
**CIVIL DOCKET FOR CASE #: 3:18–cv–01156–JCH**

Lafferty et al v. Jones et al
Assigned to: Judge Janet C. Hall
Cause: 28:1332 Diversity–Libel,Assault,Slander

Date Filed: 07/13/2018
Date Terminated: 11/05/2018
Jury Demand: None
Nature of Suit: 320 Assault Libel & Slander
Jurisdiction: Diversity

**Plaintiff**

**Erica Lafferty**

represented by **Matthew Blumenthal**
Koskoff Koskoff & Bieder, P.C.
350 Fairfield Ave
Ste Floor 5
Bridgeport, CT 06604
203–336–4421
Email: mblumenthal@koskoff.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Bloss**
Koskoff, Koskoff & Bieder, P.C.
350 Fairfield Ave.
Bridgeport, CT 06604
203–336–4421
Fax: 203–368–3244
Email: bbloss@koskoff.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Wheeler**

represented by **Matthew Blumenthal**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Bloss**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Francine Wheeler**

represented by **Matthew Blumenthal**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Bloss**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jacqueline Barden**

represented by **Matthew Blumenthal**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Bloss**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mark Barden**                              represented by **Matthew Blumenthal**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

                                             **William M. Bloss**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nicole Hockley**                           represented by **Matthew Blumenthal**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

                                             **William M. Bloss**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ian Hockley**                              represented by **Matthew Blumenthal**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

                                             **William M. Bloss**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jennifer Hensel**                          represented by **Matthew Blumenthal**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

                                             **William M. Bloss**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jeremy Richman**                           represented by **Matthew Blumenthal**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

                                             **William M. Bloss**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Donna Soto**                               represented by **Matthew Blumenthal**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

                                             **William M. Bloss**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Carlee Soto–Parisi**                           represented by   **Matthew Blumenthal**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Bloss**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Carlos M. Soto**                               represented by   **Matthew Blumenthal**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Bloss**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jillian Soto**                                 represented by   **Matthew Blumenthal**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Bloss**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**William Aldenberg**                            represented by   **Matthew Blumenthal**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M. Bloss**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Alex Emric Jones**                             represented by   **Jay Marshall Wolman**
Randazza Legal Group, PLLC
100 Pearl St., 14th Floor
Hartford, CT 06103
702–420–2001
Fax: 305–437–7662
Email: jmw@randazza.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Infowars, LLC**                                represented by   **Jay Marshall Wolman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Free Speech Systems, LLC**                     represented by   **Jay Marshall Wolman**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Infowars Health, LLC**                     represented by   **Jay Marshall Wolman**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Prison Planet TV, LLC**                    represented by   **Jay Marshall Wolman**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Wolfgang Halbig**                          represented by   **Wolfgang Halbig**
                                                              25526 Hawks Run Lane
                                                              Sorrento, FL 32776
                                                              352–729–2559
                                                              Email: wolfgang.halbig@comcast.net
                                                              PRO SE

**Defendant**

**Cory T. Sklanka**                          represented by   **Jay Marshall Wolman**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Lawrence L. Connelli**
                                                              Regnier, Taylor, Curran & Eddy
                                                              100 Pearl Street, 4th Floor
                                                              Hartford, CT 06103
                                                              860–249–9121 x223
                                                              Fax: 860–527–4343
                                                              Email: lconnelli@rtcelaw.com
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Genesis Communications Network,**          represented by   **Jay Marshall Wolman**
**Inc.**                                                      (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Midas Resources, Inc.**                    represented by   **Jay Marshall Wolman**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Nicole R Cuglietto**
                                                              Wilson, Elser, Moskowitz, Edelman &
                                                              Dicker , LLP – Stmfd CT
                                                              1010 Washington Boulevard
                                                              Stamford, CT 06901
                                                              203–388–2382
                                                              Fax: 203–388–9101
                                                              Email: nicole.cuglietto@wilsonelser.com
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Stephen P. Brown**
                                                              Wilson, Elser, Moskowitz, Edelman &
                                                              Dicker , LLP – Stmfd CT
                                                              1010 Washington Boulevard

Stamford, CT 06901
203–388–9100
Fax: 203–388–9101
Email: Stephen.brown@wilsonelser.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/13/2018 | 1 | NOTICE OF REMOVAL by Free Speech Systems, LLC, Infowars Health, LLC, Infowars, LLC, Alex Emric Jones, Prison Planet TV, LLC from Superior Court, Judicial District of Fairfield at Bridgeport, Connecticut, case number FBT–CV18–6075078–S. Filing fee $ 400 receipt number ACTDC–4899662, filed by Free Speech Systems, LLC, Infowars Health, LLC, Infowars, LLC, Alex Emric Jones, Prison Planet TV, LLC. (Attachments: # 1 Exhibit 1 – Summons and Complaint, # 2 Exhibit 2 – Wolman Appearance, # 3 Exhibit 3 – Initial Return of Service, # 4 Exhibit 4 – Supplemental Return of Service, # 5 Exhibit 5 – Jones Declaration, # 6 Exhibit 6 – Halbig Consent to Remove, # 7 Exhibit 7 – Midas Consent to Remove, # 8 Exhibit 8 – Genesis Consent to Remove, # 9 Exhibit – Civil Cover Sheet)(Wolman, Jay) (Entered: 07/13/2018) |
| 07/13/2018 | 2 | Corporate Disclosure Statement by Infowars, LLC. (Wolman, Jay) (Entered: 07/13/2018) |
| 07/13/2018 | 3 | Corporate Disclosure Statement by Free Speech Systems, LLC. (Wolman, Jay) (Entered: 07/13/2018) |
| 07/13/2018 | 4 | Corporate Disclosure Statement by Infowars Health, LLC. (Wolman, Jay) (Entered: 07/13/2018) |
| 07/13/2018 | 5 | Corporate Disclosure Statement by Prison Planet TV, LLC. (Wolman, Jay) (Entered: 07/13/2018) |
| 07/13/2018 | 6 | NOTICE by Alex Emric Jones *Notice of Pending Motions* (Attachments: # 1 Exhibit A – Halbig Motion to Dismiss)(Wolman, Jay) (Entered: 07/13/2018) |
| 07/13/2018 | 7 | NOTICE by Alex Emric Jones *Statement Pursuant to Standing Order on Removed Cases* (Wolman, Jay) (Entered: 07/13/2018) |
| 07/13/2018 | 8 | NOTICE by Alex Emric Jones *Notice to Counsel Re: Local Rule 5(b)* (Wolman, Jay) (Entered: 07/13/2018) |
| 07/13/2018 | 9 | NOTICE by Alex Emric Jones re 7 Notice (Other) *Notice of Errata* (Wolman, Jay) (Entered: 07/13/2018) |
| 07/13/2018 | 10 | NOTICE by Alex Emric Jones re 1 Notice of Removal,,, *Notice of Filing* (Attachments: # 1 Exhibit A – Supplemental Return)(Wolman, Jay) (Entered: 07/13/2018) |
| 07/13/2018 | 11 | MOTION to Dismiss for Lack of Jurisdiction by Wolfgang Halbig.Responses due by 8/3/2018 (Hushin, Z.) (Entered: 07/13/2018) |
| 07/13/2018 |  | Judge Janet C. Hall added. (Anastasio, F.) (Entered: 07/13/2018) |
| 07/13/2018 | 12 | Order on Pretrial Deadlines: Motions to Dismiss due on 10/13/2018. Amended Pleadings due by 9/11/2018 Discovery due by 1/12/2019 Dispositive Motions due by 2/11/2019 Signed by Clerk on 7/13/2018.(Anastasio, F.) (Entered: 07/13/2018) |
| 07/13/2018 | 13 | ELECTRONIC FILING ORDER FOR COUNSEL – PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER Signed by Judge Janet C. Hall on 7/13/2018.(Anastasio, F.) (Entered: 07/13/2018) |
| 07/13/2018 | 14 | STANDING PROTECTIVE ORDER Signed by Judge Janet C. Hall on 7/13/2018.(Anastasio, F.) (Entered: 07/13/2018) |
| 07/13/2018 | 15 | Standing Order re: Discovery Signed by Judge Janet C. Hall on 7/13/2018.(Anastasio, F.) (Entered: 07/13/2018) |

| | | |
|---|---|---|
| 07/13/2018 | 16 | NOTICE TO COUNSEL/SELF–REPRESENTED PARTIES : Counsel or self–represented parties initiating or removing this action are responsible for serving all parties with attached documents and copies of 3 Corporate Disclosure Statement filed by Free Speech Systems, LLC, 2 Corporate Disclosure Statement filed by Infowars, LLC, 5 Corporate Disclosure Statement filed by Prison Planet TV, LLC, 11 MOTION to Dismiss for Lack of Jurisdiction filed by Wolfgang Halbig, 1 Notice of Removal,,, filed by Infowars, LLC, Infowars Health, LLC, Free Speech Systems, LLC, Prison Planet TV, LLC, Alex Emric Jones, 9 Notice (Other) filed by Alex Emric Jones, 14 Protective Order, 6 Notice (Other) filed by Alex Emric Jones, 10 Notice (Other) filed by Alex Emric Jones, 8 Notice (Other) filed by Alex Emric Jones, 12 Order on Pretrial Deadlines, 13 Electronic Filing Order, 15 Order, 7 Notice (Other) filed by Alex Emric Jones, 4 Corporate Disclosure Statement filed by Infowars Health, LLC<br>Signed by Clerk on 7/13/2018. (Attachments: # 1 Standing Order on Removal Cases)(Anastasio, F.) (Entered: 07/13/2018) |
| 07/13/2018 | 17 | CERTIFICATE OF SERVICE by Alex Emric Jones re 11 MOTION to Dismiss for Lack of Jurisdiction, 16 Electronic Service Documents,,,, 14 Protective Order, 12 Order on Pretrial Deadlines, 13 Electronic Filing Order, 15 Order (Wolman, Jay) (Entered: 07/13/2018) |
| 07/16/2018 | | Set Deadlines/Hearings: Rule 26 Meeting Report due by 8/27/2018 (DeRubeis, B.) (Entered: 07/16/2018) |
| 07/16/2018 | 18 | NOTICE of Appearance by Lawrence L. Connelli on behalf of Cory T. Sklanka (Connelli, Lawrence) (Entered: 07/16/2018) |
| 07/19/2018 | 19 | NOTICE of Appearance by Stephen P. Brown on behalf of Midas Resources, Inc. (Brown, Stephen) (Entered: 07/19/2018) |
| 07/19/2018 | 20 | NOTICE of Appearance by Nicole R Cuglietto on behalf of Midas Resources, Inc. (Cuglietto, Nicole) (Entered: 07/19/2018) |
| 07/20/2018 | 21 | MOTION to Dismiss by Free Speech Systems, LLC, Infowars Health, LLC, Infowars, LLC, Alex Emric Jones, Prison Planet TV, LLC.Responses due by 8/10/2018 (Wolman, Jay) (Entered: 07/20/2018) |
| 07/20/2018 | 22 | Memorandum in Support re 21 MOTION to Dismiss filed by Free Speech Systems, LLC, Infowars Health, LLC, Infowars, LLC, Alex Emric Jones, Prison Planet TV, LLC. (Attachments: # 1 Exhibit 1 – FBI Crime Statistics, # 2 Exhibit 2 – Lafferty Article)(Wolman, Jay) (Entered: 07/20/2018) |
| 07/23/2018 | 23 | First MOTION for Extension of Time until 7/30/18 Respond to Plaintiff's Complaint 1 Notice of Removal,,, by Midas Resources, Inc.. (Brown, Stephen) (Entered: 07/23/2018) |
| 07/23/2018 | 24 | NOTICE of Appearance by William M. Bloss on behalf of William Aldenberg, Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto–Parisi, David Wheeler, Francine Wheeler (Bloss, William) (Entered: 07/23/2018) |
| 07/24/2018 | 25 | ORDER granting 23 Motion for Extension of Time. SO ORDERED by Judge Janet C. Hall on 7/24/2018. (Lewis, D) (Entered: 07/24/2018) |
| 07/24/2018 | | Answer deadline updated for Midas Resources, Inc. to 7/30/2018. (Lewis, D) (Entered: 07/24/2018) |
| 07/24/2018 | 26 | MOTION for Extension of Time until August 7, 2018 to move or file responsive pleading by Cory T. Sklanka. (Connelli, Lawrence) (Entered: 07/24/2018) |
| 07/26/2018 | 27 | ORDER granting 26 MOTION for Extension of Time until August 7, 2018 to move or file responsive pleading. SO ORDERED by Judge Janet C. Hall on 7/26/2018. (Lewis, D) (Entered: 07/26/2018) |
| 07/26/2018 | | Answer deadline updated for Cory T. Sklanka to 8/7/2018. (Lewis, D) (Entered: 07/26/2018) |

| | | |
|---|---|---|
| 07/26/2018 | 28 | NOTICE OF E–FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. In Court Status Conference set for 8/6/2018 03:30 PM in Courtroom One, 141 Church St., New Haven, CT before Judge Janet C. Hall. (DeRubeis, B.) (Entered: 07/26/2018) |
| 07/27/2018 | 29 | PROPOSED ORDER *Proposed Scheduling Order* by William Aldenberg, Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto–Parisi, David Wheeler, Francine Wheeler. (Blumenthal, Matthew) (Entered: 07/27/2018) |
| 07/27/2018 | 30 | MOTION for Extension of Time *and* Scheduling Order by William Aldenberg, Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto–Parisi, David Wheeler, Francine Wheeler. (Blumenthal, Matthew) (Entered: 07/27/2018) |
| 07/30/2018 | 31 | MOTION to Dismiss *Defendant Midas Resources Inc Motion to Dismiss* by Midas Resources, Inc..Responses due by 8/20/2018 (Brown, Stephen) (Entered: 07/30/2018) |
| 07/30/2018 | 32 | Memorandum in Support re 31 MOTION to Dismiss *Defendant Midas Resources Inc Motion to Dismiss Memorandum in Support of Motion to Dismiss for Dailure to State a Claim* filed by Midas Resources, Inc.. (Brown, Stephen) (Entered: 07/30/2018) |
| 07/31/2018 | 33 | Appearance Self Represented Party by Wolfgang Halbig (Anastasio, F.) (Entered: 07/31/2018) |
| 07/31/2018 | 34 | Consent to Electronic Notice by Wolfgang Halbig (Anastasio, F.) (Entered: 07/31/2018) |
| 07/31/2018 | 35 | OBJECTION re 29 Proposed Order, 30 MOTION for Extension of Time *and* Scheduling Order filed by Wolfgang Halbig. (Anastasio, F.) (Entered: 07/31/2018) |
| 07/31/2018 | 36 | MOTION to Postpone Status Conference by Wolfgang Halbig. (Anastasio, F.) (Entered: 07/31/2018) |
| 07/31/2018 | 37 | MOTION to Remand to State Court by William Aldenberg, Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto–Parisi, David Wheeler, Francine Wheeler.Responses due by 8/21/2018 (Bloss, William) (Entered: 07/31/2018) |
| 07/31/2018 | 38 | Memorandum in Support re 37 MOTION to Remand to State Court filed by William Aldenberg, Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto–Parisi, David Wheeler, Francine Wheeler. (Bloss, William) (Entered: 07/31/2018) |
| 07/31/2018 | 39 | NOTICE of Related Case by Alex Emric Jones (Wolman, Jay) (Entered: 07/31/2018) |
| 08/01/2018 | 40 | ORDER terminating as moot 36 Motion for Extension of Time. SO ORDERED by Judge Janet C. Hall on 8/1/2018. (Lewis, D) (Entered: 08/01/2018) |
| 08/01/2018 | 41 | NOTICE re 28 Calendar Entry: In Court Status Conference set for 8/6/2018 has been cancelled. (Lewis, D) (Entered: 08/01/2018) |
| 08/02/2018 | 42 | ORDER granting over objection 30 Motion for Extension of Time. SO ORDERED by Judge Janet C. Hall on 8/2/2018. (Lewis, D) (Entered: 08/02/2018) |
| 08/02/2018 | 43 | ORDER: Time to oppose the pending motion to dismiss is stayed until 21 days after the court's Ruling on Motion to Remand. SO ORDERED by Judge Janet C. Hall on 8/2/2018.(Lewis, D) (Entered: 08/02/2018) |
| 08/02/2018 | 44 | ORDER TO SHOW CAUSE re: Motion to Remand (Doc. No. 37). Show Cause Response due by 8/29/2018. Signed by Judge Janet C. Hall on 8/2/2018.(Anastasio, F.) (Entered: 08/03/2018) |
| 08/06/2018 | 45 | MOTION to Dismiss by Cory T. Sklanka.Responses due by 8/27/2018 (Connelli, Lawrence) (Entered: 08/06/2018) |

| | | |
|---|---|---|
| 08/06/2018 | 46 | Memorandum in Support re 45 MOTION to Dismiss *for Failure to State a Claim on which Relief can be Granted* filed by Cory T. Sklanka. (Connelli, Lawrence) (Entered: 08/06/2018) |
| 08/08/2018 | 47 | AFFIDAVIT Signed By Wolfgang S. Halbig filed by Wolfgang Halbig. (Anastasio, F.) (Entered: 08/08/2018) |
| 08/17/2018 | 48 | MOTION for Extension of Time to File Response/Reply as to 37 MOTION to Remand to State Court until September 28, 2018 by Free Speech Systems, LLC, Genesis Communications Network, Inc., Wolfgang Halbig, Infowars Health, LLC, Infowars, LLC, Alex Emric Jones, Midas Resources, Inc., Prison Planet TV, LLC, Cory T. Sklanka. (Wolman, Jay) (Entered: 08/17/2018) |
| 08/21/2018 | 49 | MOTION for Extension of Time until September 28, 2018 to respond to Motion to Remand 37 MOTION to Remand to State Court by Midas Resources, Inc.. (Cuglietto, Nicole) (Entered: 08/21/2018) |
| 08/23/2018 | 50 | ORDER granting 48 Motion for Extension of Time to File Response/Reply re 37 MOTION to Remand to State Court (Responses due by 9/28/2018, ); granting 49 Motion for Extension of Time. SO ORDERED by Judge Janet C. Hall on 8/23/2018. (Lewis, D) (Entered: 08/23/2018) |
| 09/25/2018 | 51 | Memorandum in Opposition re 37 MOTION to Remand to State Court filed by Free Speech Systems, LLC, Infowars Health, LLC, Infowars, LLC, Alex Emric Jones, Prison Planet TV, LLC. (Wolman, Jay) (Entered: 09/25/2018) |
| 09/28/2018 | 52 | RESPONSE TO 44 Order to Show Cause filed by Wolfgang Halbig. (Attachments: # 1 Envelope)(Anastasio, F.) (Entered: 09/28/2018) |
| 09/28/2018 | 53 | NOTICE by Infowars Health, LLC, Infowars, LLC, Alex Emric Jones re 51 Memorandum in Opposition to Motion (Wolman, Jay) (Entered: 09/28/2018) |
| 09/28/2018 | 54 | OBJECTION re 37 MOTION to Remand to State Court filed by Midas Resources, Inc.. (Brown, Stephen) (Entered: 09/28/2018) |
| 10/09/2018 | 55 | MOTION for Extension of Time to File Response/Reply *to Defendants' Opposition* as to 37 MOTION to Remand to State Court until October 19, 2018 by William Aldenberg, Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto–Parisi, David Wheeler, Francine Wheeler. (Blumenthal, Matthew) (Entered: 10/09/2018) |
| 10/10/2018 | 56 | ORDER granting 55 Motion for Extension of Time to File Response/Reply re 37 MOTION to Remand to State Court Responses due by 10/19/2018. SO ORDERED by Judge Janet C. Hall on 10/10/2018. (Lewis, D) (Entered: 10/10/2018) |
| 10/19/2018 | 57 | REPLY to Response to 37 MOTION to Remand to State Court filed by William Aldenberg, Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto–Parisi, David Wheeler, Francine Wheeler. (Attachments: # 1 Exhibit Affidavit and Evidence of Video Recordings)(Blumenthal, Matthew) (Entered: 10/19/2018) |
| 11/05/2018 | 58 | RULING: For the reasons stated herein, the 37 Motion for Remand is GRANTED, and this case is REMANDED to state court. Plaintiffs request for costs and attorneys fees is DENIED. Because this case is remanded to state court, the defendants pending Motions to Dismiss (Doc. Nos. 11 , 21 , 31 , and 45 ) are TERMINATED AS MOOT. The Clerk is ordered to close this case.. Signed by Judge Janet C. Hall on 11/5/2018. (Lewis, D) (Entered: 11/05/2018) |
| 11/05/2018 | | JUDICIAL PROCEEDINGS SURVEY – FOR COUNSEL ONLY: The following link to the confidential survey requires you to log into CM/ECF for SECURITY purposes. Once in CM/ECF you will be prompted for the case number. Although you are receiving this survey through CM/ECF, it is hosted on an independent website called SurveyMonkey. Once in SurveyMonkey, the survey is located in a secure account. The survey is not docketed and it is not sent directly to the judge. To ensure anonymity, completed surveys are held up to 90 days before they are sent to the judge for review. We hope you will take this opportunity to participate, please click on this link: |

| | | https://ecf.ctd.uscourts.gov/cgi–bin/Dispatch.pl?survey (Lewis, D) (Entered: 11/05/2018) |
|---|---|---|
| 11/09/2018 | 59 | MOTION for Reconsideration of 58 RULING by Wolfgang Halbig. (Pesta, J.) (Entered: 11/09/2018) |
| 11/20/2018 | 60 | RULING denying 59 MOTION for Reconsideration re 58 Order on Motion to Dismiss,,,, Order on Motion to Remand to State Court,,,, Order on Motion to Dismiss/Lack of Jurisdiction, filed by Wolfgang Halbig. Signed by Judge Janet C. Hall on 11/20/2018. (Lewis, D) (Entered: 11/20/2018) |
| 11/20/2018 | 61 | Case remanded to State Court Judicial District of Bridgeport. (Lewis, D) (Entered: 11/20/2018) |

**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG,

         Plaintiffs,

         v.

ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC.,

         Defendants.

Case No. 3:18-cv-01156

July 13, 2018

**<u>NOTICE OF REMOVAL</u>**

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

    PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(a), 1441(a), and 1446, the Defendants Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, LLC (hereinafter "Infowars Defendants"), hereby remove to this Court the civil action from the Superior Court, Judicial District of Fairfield at Bridgeport, Connecticut ("state court") described below and in support state as follows:

    1.    On May 23, 2018, Plaintiffs Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, Jillian Soto, and William Aldenberg, filed an action against the Infowars Defendants, and others, in the state court, entitled *Lafferty, et al. v. Jones, et al.*, bearing a return date of June 26, 2018, and a Case No. FBT-CV18-6075078-S;

- 1 -

2.      On June 13, 2018, Alex Emric Jones ("Jones") was served with a copy of Plaintiffs' original Writ, Summons, and Complaint, by attachment to the front door of his usual place of abode in Austin, Texas.  A copy of the Complaint and Summons served upon Mr. Jones in the state court are attached hereto as **Exhibit 1**.  Such documents were received by Mr. Jones on June 13, 2018.

3.      The Infowars Defendants have not yet answered or otherwise responded to the referenced Complaint.  An Appearance for the Infowars Defendants was filed in the state court on June 28, 2018 (**Exhibit 2**).

4.      Plaintiff filed an initial return of service on May 23, 2018 (**Exhibit 3**) and a supplemental return as to Mr. Jones on June 14, 2018 (**Exhibit 4**).

5.      Defendant Jones may be deemed to have first received a copy of the Complaint on June 13, 2018, when it was served upon his place of abode.  This Notice of Removal is timely and filed with this Court within the 30 days after receipt by Mr. Jones of the initial pleadings setting forth the claims for relief upon which this action is based.

6.      Upon information and belief, all Plaintiffs are citizens and residents of the State of Connecticut, with the exception of Plaintiff William Aldenberg, a citizen and resident of the Commonwealth of Massachusetts.  *See* Complaint at ¶¶ 22-28.

7.      Defendant Alex Emric Jones is a citizen and resident of the State of Texas.  *See* Declaration of Alex Emric Jones ("Jones Decl."), attached as **Exhibit 5**, at ¶ 4.

8.      Defendant Infowars, LLC, is a limited liability company organized under the laws of the State of Texas and has its principal place of business therein.  *See* Jones Decl. at ¶ 5. Mr. Jones is the sole member of Infowars, LLC.  *See id.* at ¶ 6.

9.      Defendant Free Speech Systems, LLC, is a limited liability company organized under the laws of the State of Texas and has its principal place of business therein.  *See* Jones Decl. at ¶ 7.  Mr. Jones is the sole member of Free Speech Systems, LLC.  *See id.* at ¶ 8.

10.     Defendant Infowars Health, LLC, is a limited liability company organized under the laws of the State of Texas and has its principal place of business therein. *See* Jones Decl. at ¶ 9. Mr. Jones is the sole member of Infowars Health, LLC. *See id.* at ¶ 10.

11.     Defendant Prison Planet TV, LLC, is a limited liability company organized under the laws of the State of Texas and has its principal place of business therein. *See* Jones Decl. at ¶ 11. Mr. Jones is the sole member of Prison Planet TV, LLC. *See id.* at ¶ 12.

12.     Upon information and belief, Defendant Wolfgang Halbig is a citizen and resident of the State of Florida. *See* Complaint at ¶ 36.

13.     Upon information and belief, Defendant Genesis Communications Network, Inc., ("Genesis") is a privately held company organized under the laws of the State of Minnesota and has its principal place of business therein. *See* Complaint at ¶ 38. Upon information and belief, Genesis does not do business in the State of Connecticut, nor has it otherwise appointed the Secretary of State for the State of Connecticut as its registered agent for service of process, thus it was not properly served within the meaning of 28 U.S.C. § 1446(b)(2)(A).

14.     Upon information and belief, Defendant Midas Resources, Inc., is a privately held company organized under the laws of the State of Minnesota and has its principal place of business therein. *See* Complaint at ¶ 39.

15.     Upon information and belief, Defendant Cory T. Sklanka ("Sklanka") is a citizen and resident of the State of Connecticut. *See* Complaint at ¶ 37. **Sklanka is not properly joined as a defendant pursuant to 28 U.S.C. § 1441(b)(2) & 1446(b)(2)(A).**

16.     Plaintiffs' Complaint prays for damages in excess of $15,000, including monetary damages, punitive damages, attorneys' fees, and costs. *See* Complaint at ¶ 38.

17.     Pursuant to 28 U.S.C. § 1446(d), copies of this Notice have been served on counsel for Plaintiff and all other parties and filed with the Clerk of the Superior Court, Judicial District of Fairfield. A Notice of Filing this Notice of Removal was also filed with the said Clerk. In addition, a copy of all pleadings filed in the State Court action are filed herewith.

18.     The action is removable pursuant to the provisions of 28 U.S.C. §§ 1332(a) & 1441(a) because there is complete diversity of citizenship between the properly joined parties. All plaintiffs are Connecticut and Massachusetts citizens.  The defendants are citizens of Florida, Minnesota, and Texas, with the exception of Defendant Cory Sklanka, a Connecticut citizen, who was improperly joined.

19.     As set forth by the Second Circuit, "[j]oinder will be considered fraudulent when it is established that there can be no recovery against the defendant under the law of the state on the cause alleged." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001).  Simply put, "there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against" Mr. Sklanka "in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).

20.     Factual allegations in the Complaint as to Sklanka are minimal—his sole purpose as a defendant is a clear attempt to break diversity.  He is identified as working closely with defendant Halbig by acting as driver and camera operator and "on information and belief, participating in the operation of" a website and broadcasts.  Complaint at ¶ 37.  He allegedly "facilitated" Halbig and "assisted and was present with Halbig when he filmed and harassed children families," *not identified as Plaintiffs*, "on June 2, 2015." *Id*. at ¶ 60.  He allegedly "acted as Halbig's driver, and actively facilitated [Halbig's] appearance on Infowars." *Id*. at ¶ 80.  He is vaguely alleged to have somehow acted with other defendants to "develop, disseminate, and propagate" the allegedly false statements. *Id*. at ¶ 85.  He is also allegedly a "servant, agent, apparent agent, employee, and/or joint venturer" of other defendants. *Id*. at ¶ 88.

21.     Five claims are alleged against all defendants, including Sklanka: false light invasion of privacy; defamation *per quod* and *per se*; intentional infliction of emotional distress; negligent infliction of emotional distress; and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*  Each of the first four claims also includes a claim for conspiracy, and the CUTPA claim uses similar language. None of the claims identify any specific actionable defamatory statement, statement putting a plaintiff in a false light, unfair

trade practice, or action causing emotional distress by Mr. Sklanka, necessary to maintain a valid direct claim. The allegations speak more to the notion of a conspiracy.

22. The Complaint fails to sufficiently "allege the commission of a tortious act in furtherance of the conspiracy, which of course is necessary to establish liability for civil conspiracy, which is not an independent cause of action, but rather a separate legal basis upon which two or more persons can intentionally combine to commit an underlying legal wrong." *Weissman v. Koskoff, Koskoff & Bieder, P.C.*, No. HHDCV106012922S, 2011 Conn. Super. LEXIS 181, at *29 (Super. Ct. Jan. 19, 2011). A conspiracy requires that "one or more persons, by express or tacit agreement, act in combination with another for a particular purpose or to attain a particular end." *Harp v. King*, 266 Conn. 747, 781, 835 A.2d 953, 973 (2003). There is no plausible allegation Mr. Sklanka entered into any agreement or had a particular purpose or end to harm plaintiffs. No actual role in the website or broadcasts is alleged as harming Plaintiffs. Merely driving and filming Mr. Halbig in some unspecified manner, especially where the sole allegation of semi-specific conduct by Mr. Sklanka does not mention Plaintiffs at all. Complaint at ¶ 60. None of the other allegations as to Mr. Halbig, for whom Mr. Sklanka allegedly worked, for May 13, 2014, September 25, 2014, December 12, 2014, March 4, 2015, May 28, 2015, and May 29, 2015, even mention Mr. Sklanka. *Id*. at ¶¶ 129-170 & 189-219. In fact, the June 2, 2015 alleged incident appears nowhere in the so-called "Campaign of Abuse". *Id*. at ¶¶ 101-end.

23. Neither are any of the allegations as to Mr. Sklanka timely. All of the common law claims are governed by a two-year statute of limitations. *See* Conn. Gen. Stat. §§ 52-577, 52-584, & 52-597. All of the incidents involving Mr. Sklanka, the latest being June 2, 2015, were more than two years before the civil action was initiated.

24. Further, there is no basis to suggest that Mr. Sklanka, or any of the defendants, could be liable under CUTPA, which seems only to be included as it has a longer statute of limitations. Although the CUTPA claim has a three-year statute of limitations, per Conn. Gen. Stat. § 42-110g(f), such claim is not alleged as a conspiracy and the Complaint fails to identify any conceivable activity that would constitute an unfair trade practice by him. An essential criterion

for determining whether a practice violates CUTPA is whether it causes substantial injury to consumers, competitors, or other businessmen. *McLaughlin Ford, Inc. v. Ford Motor Co.*, 192 Conn. 558, 568, 473 A.2d 1185 (1984). Plaintiffs are not consumers, competitors, or related businessmen, and the CUTPA claim is ripe for dismissal as to all Defendants. Thus, Mr. Sklanka was improperly joined as a defendant and the matter may be properly removed.

25. The remaining defendants, being Defendants Halbig, Midas Resources, and Genesis Communications Network, have all consented to this removal.[1] *See* **Exhibits 6**, **7**, & **8**.

26. Although the Complaint only sets forth that the amount in controversy exceeds $15,000, per Conn. Gen. Stat. § 52-91, it actually exceeds $75,000. Two of the causes are for infliction of emotional distress. "In the Second Circuit, 'garden variety emotional distress claims generally merit $30,000 to $125,000 awards.'" *MacMillan v. Millennium Broadway Hotel*, 873 F. Supp. 2d 546, 561 (S.D.N.Y. 2012) (quoting *Olsen v. Cty. of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009)) (internal marks omitted). Thus, those causes meet the amount in controversy requirement. Similarly, as to the defamation claim, the plaintiffs allege that audiences hearing the allegedly false statements "included hundreds of thousands, if not millions, of people." *See* Complaint at ¶¶ 119, 128, 144, 157, 164 (hundreds of thousands only), 170, 179, 184 (hundreds of thousands only), 188, 202, 210, 219, 228, 235, 244, 262, 285 (millions), 288, 298, 317 (more than three million), 325, & 334 (tens of thousands, if not millions), 352 (millions). Given the widespread nature of the alleged reputational harm, if a jury awarded 10 cents per audience member, the damages would exceed the amount in controversy requirement.

27. The Infowars Defendants have requested that the Clerk of the Superior Court for the Judicial District of Fairfield certify or attest copies of all records or proceedings filed in the State Court and all docket entries therein, with the same to be filed with this Court within 30 days.

---

[1] As Mr. Sklanka was improperly joined as a defendant, his consent to removal is not required. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001).

WHEREFORE the Infowars Defendants, in the above action, now pending in the Superior

Court for the Judicial District of Fairfield at Bridgeport, prays that such action be removed to this

Court.

Dated: July 13, 2018.   Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel:  702-420-2001
Fax:  305-437-7662
ecf@randazza.com

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel:  702-420-2001
Fax:  305-437-7662
ecf@randazza.com

*Attorneys for Infowars Defendants*

Case No. 3:18-cv-01156

## CERTIFICATE OF SERVICE

I hereby certify that, on this 13th day of July 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

William M. Bloss
Matthew S. Blumenthal
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgebort, CT 06604
<wbloss@koskoff.com>
<mblumenthal@koskoff.com>

*Attorneys for Plaintiffs*

Stephen P. Brown
WILSON ELSER MOSKOWITZ
 EDELMAN & DICKER
1010 Washington Blvd., 8th Floor
Stamford, CT 06901
<stephen.brown@wilsonelser.com>

*Attorney for Defendant*
*Midas Resources, Inc.*

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Lawrence L. Connelli
REGNIER TAYLOR CURRAN & EDDY
100 Pearl Street, 4th Floor
Hartford, Connecticut 06103
<LConnelli@rtcelaw.com>

*Attorney for Defendant*
*Cory T. Sklanka*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*

/s/ Jay M. Wolman
Jay M. Wolman

- 8 -

# EXHIBIT 1

Summons and Complaint

*Lafferty, et al., v. Jones, et al.*
Judicial District of Fairfield
Dkt. No. FBT-CV-18-6075078-S
May 23, 2018

# SUMMONS - CIVIL
JD-CV-1 Rev. 4-16
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. §§ 3-1 through 3-21, 8-1, 10-13

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
www.jud.ct.gov

**See other side for instructions**

[ ] "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.

[X] "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.

[ ] "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed (Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk (with area code) | Return Date (Must be a Tuesday) |
|---|---|---|
| **1061 Main St., Bridgeport 06604** | **( 203 )579-6527** | **June** Month **26** Day **, 2 018** Year |

| | At (Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349) | Case type code (See list on page 2) |
|---|---|---|
| [X] Judicial District  [ ] G.A. Number: [ ] Housing Session | **Bridgeport** | Major: **T**   Minor: **50** |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) | Juris number (to be entered by attorney only) |
|---|---|
| **Koskoff Koskoff & Bieder, P.C., 350 Fairfield Ave., Bridgeport, CT 06604** | **032250** |

| Telephone number (with area code) | Signature of Plaintiff (If self-represented) |
|---|---|
| **( 203 )  336-4421** | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. | [X] Yes [ ] No | Email address for delivery of papers under Section 10-13 (if agreed to) **mblumenthal@koskoff.com** |
|---|---|---|

| Number of Plaintiffs: **14** | Number of Defendants: **9** | [X] Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name (Last, First, Middle Initial) and Address of Each party (Number; Street; P.O. Box; Town; State; Zip; Country, if not USA) | |
|---|---|---|
| First Plaintiff | Name: **Lafferty, Erica** Address: **c/o Koskoff Koskoff & Bieder, 350 Fairfield Ave., Bridgeport, CT 06604** | P-01 |
| Additional Plaintiff | Name: **Wheeler, David** Address: **c/o Koskoff Koskoff & Bieder, 350 Fairfield Ave., Bridgeport, CT 06604** | P-02 |
| First Defendant | Name: **Jones, Alex Emric** Address: **15101 Back of the Moon, Austin, TX 78734** | D-01 |
| Additional Defendant | Name: **Infowars, LLC** Address: **100 Congress Ave., 22nd Floor, Austin, TX 78701** | D-02 |
| Additional Defendant | Name: **Free Speech Systems, LLC** Address: **100 Congress Ave., 22nd Floor, Austin, TX 78701** | D-03 |
| Additional Defendant | Name: **Infowars Health LLC** Address: **100 Congress Ave., 22nd Floor, Austin, TX 78701** | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at www.jud.ct.gov under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at www.jud.ct.gov under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed (Sign and "X" proper box) | [X] Commissioner of the Superior Court [ ] Assistant Clerk | Name of Person Signing at Left **Matthew S. Blumenthal** | Date signed **05/23/2018** |
|---|---|---|---|

| If this Summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts. b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law. c. The Clerk is not permitted to give any legal advice in connection with any lawsuit. d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | File Date |

| I certify I have read and understand the above: | Signed (Self-Represented Plaintiff) | Date | Docket Number |
|---|---|---|---|

(Page 1 of 2)

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**
JD-CV-2   Rev. 9-12

**STATE OF CONNECTICUT**
**SUPERIOR COURT**

First named Plaintiff *(Last, First, Middle Initial)*
**Lafferty, Erica**

First named Defendant *(Last, First, Middle Initial)*
**Jones, Alex Emric**

## Additional Plaintiffs

| Name *(Last, First, Middle Initial, if individual)*   Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|
| **Wheeler, Francine c/o Koskoff Koskoff & Bieder, 350 Fairfield Ave., Bridgeport, CT  06604** | 03 |
| **Barden, Jacqueline   c/o Koskoff Koskoff & Bieder, 350 Fairfield Ave., Bridgeport, CT  06604** | 04 |
| **Barden, Mark   c/o Koskoff Koskoff & Bieder, 350 Fairfield Ave., Bridgeport, CT  06604** | 05 |
| **Hockley, Nicole   c/o Koskoff Koskoff & Bieder, 350 Fairfield Ave., Bridgeport, CT  06604** | 06 |
| **Hockley, Ian   c/o Koskoff Koskoff & Bieder, 350 Fairfield Ave., Bridgeport, CT  06604** | 07 |
| **Hensel, Jennifer  c/o Koskoff Koskoff & Bieder, 350 Fairfield Ave., Bridgeport, CT  06604** | 08 |
| **Richman, Jeremy  c/o Koskoff Koskoff & Bieder, 350 Fairfield Ave., Bridgeport, CT  06604** | 09 |
| **Soto, Donna   c/o Koskoff Koskoff & Bieder, 350 Fairfield Ave., Bridgeport, CT  06604** | 10 |
| **Soto-Parisi, Carlee  c/o Koskoff Koskoff & Bieder, 350 Fairfield Ave., Bridgeport, CT  06604** | 11 |
| **Soto, Carlos M.   c/o Koskoff Koskoff & Bieder, 350 Fairfield Ave., Bridgeport, CT  06604** | 12 |
| **Soto, Jillian  c/o Koskoff Koskoff & Bieder, 350 Fairfield Ave., Bridgeport, CT  06604** | 13 |

## Additional Defendants

| Name *(Last, First, Middle Initial, if individual)*   Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|
| **Prison Planet TV LLC   100 Congress Avenue, 22nd Floor, Austin, TX  78701** | 05 |
| **Halbig, Wolfgang  25526 Hawks Run Lane, Sorrento, FL  32776** | 06 |
| **Sklanka, Cory T.  515 Gracey Avenue, Meriden, CT  06451** | 07 |
| **Genesis Communications Network, Inc.   190 Cobblestone Lane, Burnsville, MN  55337** | 08 |
| **Midas Resources, Inc.  190 Cobblestone Lane, Burnsville, MN  55337** | 09 |
|  | 10 |
|  | 11 |

| | | *FOR COURT USE ONLY - File Date* |
|---|---|---|
|  | 12 |  |
|  | 13 |  |
|  | 14 | Docket number |

**CIVIL SUMMONS-Continuation**

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**
JD-CV-2   Rev. 9-12

STATE OF CONNECTICUT
**SUPERIOR COURT**

First named Plaintiff *(Last, First, Middle Initial)*
**Lafferty, Erica**

First named Defendant *(Last, First, Middle Initial)*
**Jones, Alex Emric**

## Additional Plaintiffs

| Name *(Last, First, Middle Initial, if individual)* | Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|---|
| **Aldenberg, William   c/o Koskoff Koskoff & Bieder, 350 Fairfield Ave., Bridgeport, CT  06604** | | 03 |
| | | 04 |
| | | 05 |
| | | 06 |
| | | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |
| | | 12 |
| | | 13 |

## Additional Defendants

| Name *(Last, First, Middle Initial, if individual)* | Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|---|
| | | 05 |
| | | 06 |
| | | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |

| | | | FOR COURT USE ONLY - File Date |
|---|---|---|---|
| | 12 | | |
| | 13 | | |
| | 14 | | Docket number |

**CIVIL SUMMONS-Continuation**

| RETURN DATE: JUNE 26, 2018 | : | JUDICIAL DISTRICT |
|---|---|---|
| | : | |
| ERICA LAFFERTY, ET AL, | : | OF FAIRFIELD |
| | : | |
| v. | : | AT BRIDGEPORT |
| | : | |
| ALEX JONES, ET AL. | : | MAY 23, 2018 |

## COMPLAINT

### INTRODUCTION

1. This is a civil action for damages leading from the mass shooting that happened at Sandy Hook Elementary School on December 14, 2012.

2. Just before 9:30 AM that morning, Adam Lanza shot his way into the locked school with a Bushmaster XM15-E2S.

3. In less than five minutes, he shot and killed 20 first-grade children and 6 adults. Two others were wounded.

4. That tragic day left behind 26 families that will never be whole again.

5. Every day since, those families have struggled to reconcile themselves with the irrevocable loss of their beloved sons, daughters, sisters, brothers, and mothers.

6. Even though overwhelming—and indisputable—evidence exists showing exactly what happened at Sandy Hook Elementary School on December 14, 2012, certain individuals have persistently perpetuated a monstrous, unspeakable lie: that the Sandy Hook shooting was staged, and that the families who lost loved ones that day are actors who faked their relatives' deaths.

7. Defendant Alex Jones is a conspiracy-theorist radio and internet personality who holds himself out as a journalist. He is the most prolific among those fabricators. But he does not work alone: along with his various business entities, Jones is the chief amplifier for a group that has worked in concert to create and propagate loathsome, false narratives about the Sandy Hook shooting and its victims, and promote their harassment and abuse.

8. Jones, along with these others, has persisted in the perpetuation and propagation of this outrageous, deeply painful, and defamatory lie in the face of a mountain of evidence to the contrary, and with no supporting evidence.

9. Alex Jones does not in fact believe that the Sandy Hook Shooting was a hoax—and he never has.

1

10.     Nevertheless, time and again, Jones has accused Sandy Hook families, who are readily identifiable, of faking their loved ones' deaths, and insisted that the children killed that day are actually alive.

11.     Jones has deliberately employed these false narratives about the Sandy Hook shooting, the victims, and their families as part of a marketing scheme that has brought him and his business entities tens of millions of dollars per year.[1]

12.     Jones has an audience of millions. He has repeatedly urged them to "investigate" the Sandy Hook shooting. He has purposely published statements by other people who falsely assert that the Sandy Hook shooting was a hoax.

13.     As a result of Jones's campaign, the families and survivors of the Sandy Hook shooting have been forced to endure malicious and cruel abuse at the hands of ruthless and unscrupulous people.

14.     On a regular basis, the families and survivors have faced physical confrontation and harassment, death threats, and a sustained barrage of harassment and verbal assault on social media.

15.     They have confronted strange individuals videotaping them and their children.

16.     Some of them have moved to undisclosed locations to avoid this harassment.

17.     The plaintiffs bring this action in defense of the values protected by the First Amendment to the U.S. Constitution, not in derogation of it.

18.     Like any marketplace, the marketplace of ideas that the First Amendment was meant to protect cannot function properly without accountability for reprehensible conduct like the defendants'. In fact, the defendants themselves have proven this to be so by their successful propagation of the blatantly false and harmful aspersions described in this Complaint.

19.     The First Amendment has never protected demonstrably false, malicious statements like the defendants'. This is because "there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust and wide-open' debate on public issues."[2]

---

[1] See Seth Brown, *Alex Jones's Media Empire Is a Machine Built to Sell Snake-Oil Diet Supplements*, N.Y. MAG. (May 4, 2017), http://nymag.com/selectall/2017/05/how-does-alex-jones-make-money.html; Alex Seitz-Wald, *Alex Jones: Conspiracy, Inc.*, SALON (May 2, 2013), https://www.salon.com/2013/05/02/alex_jones_conspiracy_inc/.

[2] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). While the Supreme Court has afforded "a measure of strategic protection" to certain kinds of falsehoods to ensure that speech protected by the First Amendment has "the breathing space to survive," it has never wavered in its determination that falsehoods have no First Amendment value. *Id.* at 342. None of the Court's protective doctrines interfere with the plaintiffs' claims in this case.

20.     This lawsuit is about holding Jones and the other defendants accountable for the effects of their outrageous, malicious, and deeply hurtful lies.

**PARTIES**

21.     The plaintiffs are the immediate family of four children and two educators killed at Sandy Hook Elementary School, in Newtown, Connecticut, on December 14, 2012, as well as one first-responder to the scene.

22.     Plaintiffs Jacqueline Barden and Mark Barden are the parents of murdered first-grader Daniel Barden, who was seven years old at his death on December 14, 2012. They reside in Fairfield County, Connecticut.

23.     Plaintiffs Nicole Hockley and Ian Hockley are the parents of murdered first-grader Dylan Hockley, who was six years old at his death on December 14, 2012. They reside in Fairfield County, Connecticut.

24.     Plaintiffs Francine Wheeler and David Wheeler are the parents of murdered first-grader Benjamin Wheeler, who was six years old at his death on December 14, 2012. They reside in Fairfield County, Connecticut.

25.     Plaintiffs Jennifer Hensel and Jeremy Richman are the parents of murdered first-grader Avielle Richman, who was six years old at her death on December 14, 2012. They reside in Fairfield County, Connecticut.

26.     Plaintiffs Donna Soto is the mother, and Carlee Soto-Parisi, Carlos M. Soto, and Jillian Soto are the siblings, of murdered first-grade teacher Victoria Leigh Soto, who was 27 years old when she died shielding her students from Adam Lanza's murderous rampage at Sandy Hook Elementary School on December 14, 2012. They reside in Fairfield County, Connecticut.

27.     Plaintiff Erica Lafferty is the daughter of Dawn Hochsprung, the principal of Sandy Hook Elementary School on December 14, 2012. Dawn died that day trying to save her students from Adam Lanza's murderous rampage. Erica resides in Litchfield County, Connecticut.

28.     Plaintiff William Aldenberg was a first responder to Sandy Hook Elementary School on December 14, 2012, and was depicted in iconic photographs and video footage from those events. He has been antagonized by some of the defendants and their followers, who claim that he is a crisis actor. He resides in Worcester County, Massachusetts.

29.     The defendants are out-of-state business entities and individuals residing in Connecticut, Texas, and Florida.

30.     Defendant Alex Emric Jones ("Alex Jones" or "Jones") is a radio and internet personality who holds himself out as a journalist and is a resident of Austin, Texas. He is the host of shows including "The Alex Jones Show," and owns and operates the websites Infowars.com

3

and PrisonPlanet.com. Jones's shows have millions of weekly listeners and are syndicated on approximately 60 radio stations.

31.     Defendant Infowars, LLC ("Infowars") is a Texas limited liability company that produces and broadcasts Alex Jones' Infowars, which holds itself out as a news and journalism platform. Its principal offices are located at 100 Congress Avenue, 22nd Floor, Austin, Texas 78701.

32.     Defendant Free Speech Systems, LLC is a Texas limited liability company. It owns Infowars.com. Its principal offices are located at 100 Congress Avenue, 22nd Floor, Austin, Texas 78701.

33.     Defendant Infowars Health LLC is a Texas limited liability company. Its principal offices are located at 100 Congress Avenue, 22nd Floor, Austin, Texas 78701.

34.     Defendant Prison Planet TV LLC is a Texas limited liability company. Its principal offices are located at 100 Congress Avenue, 22nd Floor, Austin, Texas 78701.

35.     All the above-mentioned Texas business-entity defendants are owned, controlled, and/or operated by defendant Alex Jones and are employed to hold and generate revenue for him. They and Jones shall hereinafter be referred to collectively as "the Jones defendants."

36.     Defendant Wolfgang Halbig holds himself out as a journalist and investigator and resides in Sorrento, Florida. He is the creator and operator of the defamatory and predatory websites SandyHookJustice.com and MonteFrank.com.

37.     Defendant Cory T. Sklanka holds himself out as a journalist and investigator and resides in Meriden, Connecticut. He has worked closely with Halbig in Halbig's Sandy Hook "investigative" work, including acting as driver and camera operator when Halbig has visited Connecticut to conduct those activities, and, on information and belief, participating in the operation of SandyHookJustice.com and co-hosting Sandy Hook Justice broadcasts.

38.     Defendant Genesis Communications Network, Inc., is a privately held company incorporated in Minnesota. It distributes radio programs produced by Alex Jones and Infowars, and was founded by Ted Anderson, who has appeared many times on Jones's shows, to promote his other business, defendant Midas Resources.[3] Its principal offices are located at 190 Cobblestone Lane, Burnsville, Minnesota, 55337.

39.     Defendant Midas Resources, Inc., is a privately held company incorporated in Minnesota. Its principal offices are located at 190 Cobblestone Lane, Burnsville, Minnesota, 55337. It has sold precious metals, dietary supplements, and other items as advertised by and in cooperation with defendant Genesis Communications and the Jones defendants.[4]

---

[3] https://www.youtube.com/watch?v=M-aQntV8meQ; Nate Blakeslee, *Alex Jones Is About to Explode*, TEX. MONTHLY (Mar. 2010) https://www.texasmonthly.com/politics/alex-jones-is-about-to-explode/.
[4] *Id.*

4

## THE DEFENDANTS' KNOWLEDGE, ASPIRATIONS, AND INFLUENCE

40. Jones has a radio audience of more than two million people. The Alex Jones Show is syndicated on more than 60 radio stations. On the internet, Jones and Infowars reach millions more. Jones's YouTube channel has more than 2.3 million subscribers.

41. Jones has repeatedly expressly stated that he aspires to spur his followers to action, and has acknowledged that his exhortations have that effect. This is especially true with regard to the Sandy Hook shooting.

42. For instance, on June 12, 2017, The Alex Jones Channel posted a video. Speaking of his interview with Megyn Kelly on NBC and specifically about Sandy Hook, Jones stated, "That's why you keep missing the main calculation. I am a precision-guided heavy munition coming in on top of you . . . . So I hit the barbed wire, and everyone comes in over me. Have you seen what we've done how talk radio now sounds just like me . . . . Have you seen how the whole paradigm is globally shifting and you can't hold it back?"

43. Later in the video, Jones stated, "I'm making it safe for everyone else to speak out just like Trump's doing, on a much bigger scale."

44. Jones has not just attempted to give his followers permission to question reality. He also has specifically urged them to action.

45. His followers have shown themselves ready to comply.

46. On November 27, 2016, for instance, Jones spoke at length about "Pizzagate," a baseless conspiracy theory alleging that Democratic operatives were running a child-sex ring out of a Washington, D.C. pizza restaurant. He urged his followers to "investigate" the matter.

47. "You have to go investigate it for yourself," he told them. "But I will warn you, this story that's been the biggest thing on the internet for several weeks, Pizzagate as it's called, is a rabbit hole that is horrifying to go down . . . . Something's going on. Something's being covered up. This needs to be investigated."

48. Jones's followers came running to his call, as he knew they would.

49. The pizzeria received hundreds of threats. Its owner told *The New York Times*, "[W]e've come under constant assault. I've done nothing for days but try to clean this up and protect my staff and friends from being terrorized."

50. The owner and staff, along with some of their families, were harassed on social media websites. The owner received death threats. Even musical groups that had performed at the pizzeria and nearby businesses were harassed.

51.     On December 4, 2016, Edgar Maddison Welch, a self-described Alex Jones follower, drove from Salisbury, North Carolina, to Washington, D.C., and fired three rounds into the pizzeria with an AR-15-style rifle.

52.     Welch told police that his objective was to "self-investigate" the Pizzagate conspiracy theory. In fact, just days before embarking on his violent "self-investigation," Welch urged a friend to watch "PIZZAGATE: The Bigger Picture," an Infowars video.

53.     Shortly thereafter, Jones removed his November 27, 2016 video and scrubbed references to his advocacy of the Pizzagate conspiracy theory.

54.     Similarly, many of the persons who have directly harassed or abused Sandy Hook families have been motivated by Jones's urging that his listeners "investigate."

55.     In 2017, a Florida woman was sentenced to prison for threatening the father of a child killed at Sandy Hook.

56.     She made four voicemail and email threats to the father, with statements like "you gonna die, death is coming to you real soon" and "LOOK BEHIND YOU IT IS DEATH."

57.     The woman's defense lawyer stated that she was primarily motivated by what she had read and seen on Infowars.com, Jones's website.

58.     On numerous occasions, Jones has hosted on his show Wolfgang Halbig, a self-styled investigator who is amongst the most prominent of those people who falsely claim that the Sandy Hook shooting was a hoax.

59.     Halbig is a 70-year-old former police officer and school administrator living in Florida. He has made more than 22 trips to Connecticut relating to the allegations of this Complaint, including delivering highly confrontational testimony before the Newtown Board of Education, and was warned by police that he would be charged with harassment unless he ceased contacting Newtown residents.

60.     Defendant Sklanka has facilitated Halbig's harassing and defamatory activities in Connecticut. He has acted as Halbig's driver, camera operator, helped Halbig operate his website, and co-hosted broadcasts asserting that the Sandy Hook shooting was a hoax. On information and belief, Sklanka assisted and was present with Halbig when he filmed and harassed children families at the St. Rose of Lima church in Newtown, Connecticut on June 2, 2015.

61.     Kevin Laprade, an Infowars videographer, accompanied Halbig on at least some of his "investigative" trips to Connecticut.[5]

---

[5] https://www.facebook.com/mert.melfa/videos/539807396217619/.

62. Halbig has filed numerous Freedom of Information Act requests over the years since the shooting, seeking police documents, insurance claims, portable toilet orders, and other types of information.

63. Halbig has raised more than $100,000, largely on GoFundMe.com, for his activities.

64. Tiffany Moser helped Halbig search Newtown Board of Education documents for evidence that the school was closed before the shooting. When she reported that all the evidence indicated that the school had been open, Halbig dismissed her.

65. Halbig was banned from St. Rose of Lima, a Newtown church, after he and others were seen videotaping children entering and exiting the building. On information and belief, Sklanka participated in this venture.

66. In May 2014, Halbig spoke at a public meeting of the Newtown Board of Education, in Newtown, Connecticut.

67. After the meeting, Leonard Pozner emailed Halbig, seeking to persuade him to leave the Sandy Hook families alone. Halbig never responded, but another person did. He stated: "Wolfgang does not wish to speak with you unless you exhume Noah's body and prove to the world you lost your son."

68. Halbig's activities were well known when he first appeared on the Alex Jones Radio Show, and throughout the times during which Jones hosted his appearances; in fact, Jones invited and hosted him on his show, time and again, precisely because of his activities.

69. On his show, Jones expressly encouraged Halbig to continue these activities on numerous occasions.

70. During that broadcast of the Alex Jones Radio Show, Jones repeatedly advertised Halbig's website, sandyhookjustice.com.

71. Halbig's website made numerous false, outrageous, and defamatory statements about the plaintiffs.

> A. For instance, the website accused Jeremy Richman, father of Avielle Richman, who was murdered at Sandy Hook Elementary School on December 14, 2012, of having fabricated his daughter's identity and faked her death "to steal money from hard-working Americans." Those false and outrageous accusations were accompanied by pictures of Jeremy, Avielle, and an unrelated Newtown child.

> B. Halbig's website further stated that "Jeremy Richman & Jennifer Hensel continue to deceive and defraud the American public and collect donations for The Avielle Foundation, for Avielle Richman claiming she is dead, when in

7

reality, she is alive and was never their daughter." It further stated: "The corruption, fraud, and treason must stop, especially at the Bridgeport, Connecticut Law Firm of Pullman & Comley LLC, managers of the My Sandy Hook Family Fund, actively engaging in FRAUD by soliciting donations from the public for a murder victim who is still alive."[6]

C. Halbig's website contained links to numerous Infowars and/or Alex Jones videos claiming that the Sandy Hook shooting was a hoax, as well as videos that contained imagery and the names of some of the plaintiffs' children.[7]

D. It also published images, text, and video asserting that plaintiffs William Aldenberg and David Wheeler are in fact the same person, who is a crisis actor.

E. Faced with invasion-of-privacy lawsuits, Halbig took down his website in August 2016. However, he has continued to publish false, malicious, and defamatory statements regarding the Sandy Hook shooting and its victims continually through Facebook, email, and various radio and internet media outlets.

72.     Halbig has also published Facebook posts containing images and text asserting that plaintiffs William Aldenberg and David Wheeler are in fact the same person, and that person is a crisis actor.[8] His Facebook page continues to display those publications.

73.     Jones was aware that Halbig had published such statements through his website and other outlets. In fact, Jones brought Halbig onto his shows for the very purpose of eliciting and publishing such statements.

74.     In addition to hosting Halbig on his show time and again, Jones specifically directed and encouraged Halbig to continue his Sandy-Hook-related activities in Connecticut. Jones and other Infowars personnel specifically solicited that their audience contribute funds to Halbig so that he could continue his efforts.

75.     In fact, Jones and Infowars sent Infowars personnel to Connecticut to conduct live "reporting" on Halbig's activities and publish his false, defamatory, and outrageous accusations about the plaintiffs.

---

[6] https://web.archive.org/web/20160322115755/http://sandyhookjusticereport.com:80/monte-frank/avielle-richman-1-20-students-supposedly-died-sandy-hook-school-shooting-verified-28-year-veteran-forensic-expert-witness-girl-photos-lenie-urbina/.
[7] https://web.archive.org/web/20150731014342/http://www.sandyhookjustice.com:80/.
[8] *See, e.g.*, https://www.facebook.com/wolfgang.halbig.1/posts/196562527355324;
https://www.facebook.com
/wolfgang.halbig.1/posts/195439914134252.
https://www.facebook.com/photo.php?fbid=196561627355414&set=pb.100010047343967.-2207520000.1526661423.&type=3&theater.

8

76.     For instance, on May 29, 2015, The Alex Jones Channel published an Infowars video, now posted on YouTube with the title "School Administrator Exposes Sandy Hook Stonewall."[9]

77.     The video was introduced by David Knight. The video then cut to Dan Bidondi, an Infowars reporter, who was reporting from Halbig's Freedom of Information Act hearing in Hartford, Connecticut.

78.     Infowars reporter Dan Bidondi had traveled to Hartford, CT to "report" on this hearing on behalf of Infowars and Alex Jones.

79.     On information and belief, other Infowars employees, apparent agents, and/or agents, including videographer Kevin Laprade,[10] traveled to and were located in Hartford, Connecticut, for the creation of this video.

80.     Sklanka acted as Halbig's driver, and actively facilitated his appearance on Infowars.[11]

81.     On July 7, 2015, The Alex Jones Show broadcast a video now posted on YouTube with the title "Retired FBI Agent Investigates Sandy Hook: MEGA MASSIVE COVER UP."[12]

82.     Jones noted, referring to the May 29, 2015 video, "I knew that we'd sent a reporter, Dan Bidondi, there for days, to cover the city council hearings about it, the fact that they're sealing everything."[13]

83.     Jones and Infowars purposefully sought to direct their message and spur "investigation" of the Sandy Hook families and the Newtown, Connecticut community in other ways, as well. For example, Jones took calls from listeners who called claiming to live close to Newtown, Connecticut, and encouraged them to continue their "investigations."[14]

84.     Jones and the rest of the Jones defendants acted together to develop, disseminate, and propagate the false statements described in this Complaint.

85.     Similarly, Sklanka and Halbig acted together, and they both acted together with the Jones defendants, to develop, disseminate, and propagate many of the false statements described in this Complaint.

---

[9] https://www.youtube.com/watch?v=SO8Xb-t4nT4.
[10] https://www.facebook.com/photo.php?fbid=10209638407182257&set=a.3495510351748.2134051.1391267684&type=3&theater.
[11] https://www.youtube.com/watch?v=4_2FznkfcBU.
[12] https://www.mediamatters.org/embed/clips/2016/11/29/51284/gcn-alexjones-20150707-shooting; https://www.youtube.com/watch?v=8YV1eWq8YSc.
[13] https://www.youtube.com/watch?v=jCOe3qIgyFA.
[14] https://www.youtube.com/watch?v=TGCfi_ot0CU.

9

86.     Jones and other Infowars personnel mentioned in this Complaint were at all relevant times servants, agents, apparent agents, employees, and/or joint venturers of the Jones defendants.

87.     Defendant Halbig was at all relevant times a servant, agent, apparent agent, employee, and/or joint venturer of the Jones defendants.

88.     Defendant Sklanka was at all relevant times a servant, agent, apparent agent, employee, and/or joint venturer of Halbig and the Jones defendants.

89.     Defendants GENESIS COMMUNICATIONS and MIDAS RESOURCES both participated in this conspiracy and independently distributed the publications contained in this Complaint.

## THE DEFENDANTS' SANDY-HOOK-BASED BUSINESS MODEL

90.     The Jones defendants and their co-conspirators' conduct is based on a simple motive: greed. The defendants' business model is based on their fabrication, propagation, and amplification of conspiracy-minded falsehoods like those about Sandy Hook. It is a very lucrative business model.

91.     The Jones defendants have developed and cultivated an audience through the propagation of narratives revolving around paranoia, social anxiety, and political discord, a known motivator for some people.[15]

92.     The false claim that the Sandy Hook shooting was a government-sponsored hoax designed to lead to gun control was therefore a prime narrative for attracting, augmenting, and agitating Jones's audience.

93.     Jones and his subordinates hold themselves out as trusted newsmen, assiduously assuming the paraphernalia and symbology of television and radio journalism. This is obvious to anyone watching or listening to Infowars content: the consciously deepened voice; the news-anchor's huge Lucite desk; the shuffling of papers; the clipped news-anchor's diction and regular tone modulation; the title-and-picture callouts by story; the breaking-news broadcast opening and transition graphics using Infowars logos; the regular references to Infowars "reporters" and "investigations."

94.     Once he has their attention and trust, Jones exploits his audience by selling them products in line with the paranoid worldview he promotes. In his internet-based and broadcast radio shows, the Jones defendants hawk "open currency" precious metals, pre-packaged food and dietary supplements, "male enhancement" elixirs and radiation-defeating iodine tablets, gas

---

[15] *See generally* Richard J. Hofstadtler, *The Paranoid Style in American Politics, and Other Essays* (1964).

masks and body armor, and various customized AR-15 "lower receivers" (the extruded metal frame that encloses the breach, ammunition feed and firing mechanism of the rifle).[16]

95.     According to non-parties Bankrate LLC and Celebrity Net Worth, in mid-2017, Alex Jones himself had a personal net worth of approximately $10,000,000. According to non-party Worth of the Web, an Internet-based clearinghouse that brokers sales among existing websites and web-based businesses, Infowars.com is worth approximately $68,000,000.

96.     In May 2013, just six months after the Sandy Hook shootings, when his false narrative about those events was beginning to crescendo, an investigative reporter estimated that Alex Jones was making approximately $10,000,000 annually, which excluded any additional revenue attributable to book and DVD sales, remunerated speaking engagements and on-line merchandise sales, promotional tie-ins and royalties.[17]

97.     In other words, the Jones defendants concoct elaborate and false paranoia-tinged conspiracy theories because it moves product and they make money. Jones and his subordinates say what they say not because they are eager to educate or even to entertain their audience. Rather, they deliberately stoke social anxiety and political discord in their listeners, because distrust in government and cultural tribalism motivate those listeners to buy their products.

98.     News reports confirm that Jones and his business entities engage in the kind of conduct described in this Complaint not because they truly believe what they are saying, but rather because it increases profits.

99.     Former employees described "money-bomb fundraisers" that raised $100,000 in a day (for a for-profit entity), and programming being chosen based on its "being sensational and making money." "People were just so taken by the information we'd been pushing they'd do anything," one said.[18]

100.    In fact, during the legal proceedings in which Jones sought custody of his three children, Jones's own attorney argued that Jones's two decades of activities were mere "performance art" and that "he's playing a character."[19]

---

[16] https://www.INFOWARSstore.com/gear/personal-protective-gear/victory-series-2-minuteman-limited-edition-80-lower-ar-receiver.html.

[17] Alex Seitz-Wald, *Alex Jones: Conspiracy, Inc.*, Salon (May 2, 2013).

[18] Charlie Warzel, Alex Jones Will Never Stop Being Alex Jones, *Buzzfeed* (May 3, 2017), https://www.buzzfeed.com/charliewarzel/alex-jones-will-never-stop-being-alex-jones?utm_term=.yqXeXzdLEZ#.qewdqoN0m2.

[19] Corky Siemaszko, *InfoWars'Alex Jones Is a 'Performance Artist,' His Lawyer Says in Divorce Hearing*, NBCNews (Apr. 17, 2017), https://www.nbcnews.com/news/us-news/not-fake-news-infowars-alex-jones-performance-artist-n747491.

## THE CAMPAIGN OF ABUSE

101. Jones's and Infowars's campaign of abuse began only days after the plaintiffs lost their loved ones to Adam Lanza's murderous rampage.

102. On December 19, 2012, Infowars.com published an article entitled "FATHER OF SANDY HOOK VICTIM ASKS 'READ THE CARD?' SECONDS BEFORE TEAR-JERKING PRESS CONFERENCE."[20]

103. That article alleges that Robbie Parker, father of six-year-old Emilie Parker, read off a card at a press conference the day after his daughter was killed. The article asked, "Is the establishment media trying to steer the victims' reactions?"

104. An embedded video was entitled: "Sandy Hook Shooting Exposed As a Fraud."

105. At the bottom of the article, a "Statement from Alex Jones" said, "It appears that members of the media or government have given him a card and are telling him what to say as they steer reaction to this event, so this needs to be looked into."

106. On January 8, 2013, Infowars.com published an article entitled: "COLLEGE PROFESSOR SAYS 'CRISIS ACTORS' MAY HAVE PLAYED PART IF SANDY HOOK WAS INDEED A HOAX."[21]

107. The article quoted James Tracy, a former Professor at Florida Atlantic University who has since been fired: "After such a harrowing event why are select would-be family members and students lingering in the area and repeatedly offering themselves for interviews? . . . A possible reason is that they are trained actors working under the direction of state and federal authorities and in coordination with cable and broadcast network talent to provide tailor-made crisis acting that realistically drives home the event's tragic features."

108. In the narratives and parlance of mass-shooting conspiracy theorists, "crisis actors" are actors employed by government agencies or other powerful actors to stage shootings, in which they play victims, witnesses, and bystanders.

109. The article is accompanied by an embedded video with the title "Sandy Hook Mass Media Psyop: Outtakes and Bloopers."

110. A reasonable person would understand these statements, including the title of the embedded video, to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

---

[20] Infowars.com, *Father of Sandy Hook Victim Asks 'Read the Card?' Seconds Before Tear Jerking Press Conference*, Infowars (Dec. 19, 2012), https://www.infowars.com/father-of-sandy-hook-victim-asks-read-the-card-seconds-before-tear-jerking-press-conference/.

[21] Infowars.com, *College Professor says 'Crisis Actors' May Have Played Part if Sandy Hook was Indeed a Hoax*, Infowars (Jan. 8, 2013), https://www.infowars.com/college-professor-says-crisis-actors-may-have-played-part-if-sandy-hook-was-indeed-a-hoax/.

**January 27, 2013**

111. On January 27, 2013, the Alex Jones Channel posted a video now advertised on YouTube under the title: "Why People Think Sandy Hook is A Hoax."[22] Just over a month had passed since the shooting at Sandy Hook.

112. Jones appeared in that video. During the video, he stated, "Now again, in the last month and a half, I have not come out and clearly said that this was a staged event. Unfortunately, evidence is beginning to come out that points more and more in that direction, and we're going to show you that evidence in the moment. Now a lot of the tens of millions of video views on YouTube concerning the Sandy Hook hoax surround CNN, and what appears to be people who've been coached, people who have been given cue cards, people who are behaving like actors."

113. Later in the video, Jones stated, "One of the big issues out there that has people asking questions is Robby Parker, who reportedly lost one of his daughters. And people see the photos out there where it looks like Obama's meeting with all three of his children, and things like that. And, when you watch the footage, I know grieving parents do strange things, but it looks like he's saying, 'Okay, do I read off the card,' he's laughing, and then he goes over, and starts, um, breaking down and crying."

114. Jones then played a video of Robby Parker making a statement the day after the shooting. Parker lost his daughter, Emilie, in the Sandy Hook shooting.

115. Under the video was a chyron with the words "Odd Parent Reaction from SandyHook [sic]."

116. As the video of Parker played, Jones commented over it. "I haven't touched this," he said. "All I know is they're seizing on it. They staged fast and furious . . . . that killed thousands, our government, to blame the Second Amendment, they'd stage anything."

117. Later in the broadcast, Jones said, "This needs to be investigated. They're clearly using this to go after our guns . . . . Something though, really, is starting to get suspicious here . . . . But the fact that this whole thing could be staged, it's just mindblowing. Tell us what you think. Great job to all the people out there with the crowdsourcing, that are resourcing all these clips."

118. A reasonable person would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

119. The audience for this broadcast has included hundreds of thousands, if not millions, of people.

**March 2013**

---

[22] https://www.youtube.com/watch?v=tM5ZdO-IgEE.

13

120. On March 14, 2014, Jones stated, "We've clearly got people where it's actors playing different parts of different people."

121. He continued, "I've looked at it and undoubtedly there's a cover up, there's actors, they're manipulating, they've been caught lying, and they were pre-planning before it and rolled out with it."

122. The audience for these broadcasts has included hundreds of thousands, if not millions, of people.

## May 27, 2013

123. On May 27, 2013, Dr. Steve Pieczenik appeared on the Alex Jones Radio Show in an episode advertised on YouTube under the title "Sandy Hook was A Total False Flag!"[23]

124. During that appearance, Pieczenik stated, "Sandy Hook was a total false flag. There was no individual involved; there was no Asperger's; there was no 24 kids who were killed."

125. In the parlance and narratives of mass-shooting conspiracy theorists, "false flag" is the idea that a shooting or other attack was staged by the government or other powerful forces.

126. A reasonable person would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

127. On information and belief, this episode was also broadcast through Jones's radio affiliates.

128. The audience for this broadcast has included hundreds of thousands, if not millions, of people.

## May 13, 2014

129. On May 13, 2014, The Alex Jones Radio Show broadcast an episode advertised on YouTube under the title "Bombshell: Sandy Hook Massacre Was A DHS Illusion Says School Safety Expert."[24]

130. That day, Jones hosted Wolfgang Halbig.

131. During this video, Halbig stated: "I think the reason they're not answering those questions 'cause I think it's going to expose their whole scam."

---

[23] The Alex Jones Channel, *Dr. Steve Pieczenik: Sandy Hook was A Total False Flag!*, YouTube (Mar. 27, 2013), https://www.youtube.com/watch?v=5EfyD7Wu5fQ&t=18s.

[24] Alex Jones Channel, *Bombshell: Sandy Hook Massacre Was A DHS Illusion Says School Safety Expert*, YouTube (May 13, 2014), https://www.youtube.com/watch?v=x2a1FwYEZS4.

14

132. Jones asked Halbig, "What are the big smoking guns . . . what are the big red flags?"

133. Halbig responded, "The red flags is that you're looking at $29 million . . . and there are 39 other community nonprofit organizations within Newtown that received a lot of funds."

134. Jones interjected: "You're saying a motive for the locals to go along with the fraud is money."

135. Later, Jones prompted Halbig, "What about the kids going in circles, back and forth, the same people, into the school for the helicopters; it looked like a fake drill . . . just go through those points."

136. Jones summarized, stating, "The cover up is the prima facie proof of the larger crime, and that we're being lied to."

137. He continued, "The whole thing, you've got 'em jumping gun . . . that Bloomberg was saying get ready the day before, get ready to fundraise on mass shootings . . . had a false start, didn't you, Bloomy."

138. Jones was asserting that former Mayor of New York City Michael Bloomberg knew about the shooting beforehand. The clear implication of this statement is that the shooting was "staged" and a hoax.

139. Halbig understood Jones. He responded, "Children did not die, teachers did not die, on December 14, 2012."

140. Halbig further stated, "Alex, we've never had a time in our history, where Sandy Hook, a school massacre, the biggest illusion ever portrayed by Homeland Security and FEMA . . . ."

141. During that show, Jones stated, in reference to the Sandy Hook shooting, "I mean it's fake . . . it's fake . . . you've got parents acting . . . it just is the fakest thing since the three-dollar bill."

142. A reasonable person would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

143. On information and belief, this episode was also broadcast through Jones's radio affiliates.

144. The audience for this broadcast has included hundreds of thousands, if not millions, of people.

15

## September 25, 2014

145. On September 25, 2014, the Alex Jones Radio Show broadcast an episode advertised on YouTube under the title "FBI Says Nobody Killed at Sandy Hook Massacre."[25]

146. This assertion was a complete fabrication: the FBI had made no such statement.

147. During the September 25, 2014 broadcast of the Alex Jones Radio Show, Jones and Halbig asserted that FBI crime statistics showed that no one was killed at Sandy Hook.

148. This was a false statement. FBI crime statistics showed no such thing.

149. Jones stated that video from the day of the shooting showed that the same children were cycled in and out of the school and that no emergency helicopters were sent to the school, and were "clearly staged."

150. Jones stated that two supposed former high-level national-defense officials had declared that Sandy Hook and the Boston bombing were faked.

151. Halbig asserted that "there were no trauma helicopters" sent to Newtown, that the other 600 children at the school could not be found, and that Sandy Hook Elementary School was "a toxic waste dump . . . . the filthiest, most deplorable school . . . that I have ever seen."

152. Jones asserted that the school was "a cut-out" used as a stage for the event.

153. Jones and Halbig both stated "I wish it was real instead of fake."

154. Halbig stated that Connecticut state troopers "used they [sic] script," that "it's nothing but corruption in Connecticut," and that 16 Connecticut state troopers lied under oath.

155. Halbig accused a company called Obsidian, located in Washington, D.C., of scripting well-known crises around the world, including Sandy Hook.

156. Halbig stated that "nobody died" at Sandy Hook. He stated that "they never allowed the paramedics or EMTs ever inside the school."

157. The audience for this broadcast has included hundreds of thousands, if not millions, of people.

158. On September 26, 2014, Infowars.com published an article by Adan Salazar entitled "SANDY HOOK INVESTIGATOR: CONNECTICUT PD HAD FBI FALSIFY CRIME STATISTICS."

---

[25] https://www.youtube.com/watch?v=N1RlzXvGy2s. This video has since been removed "for violating YouTube's policy on harassment and bullying," but is now available at https://www.youtube.com/watch?v=eqVqmFy4KW0.

159.     The article repeatedly quoted Wolfgang Halbig, who alleged that he had "discovered various anomalies which have led him to believe the entire incident was a contrived event."

160.     The article contained the following quote: "The American people need to wake up and listen to what these exercises are," says Halbig. "A Homeland Security FEMA Capstone Exercise, it starts at the White House, at the president's desk, goes all the way through Congress, through the Attorney General, down through the FBI, all the way down to the local government. It is a whole community event, and that's what I think happened at Sandy Hook."

161.     The article quoted Halbig as saying that there was "a 'script' followed during the event."

162.     It quoted him again, saying, "I'm telling you nobody died [at Sandy Hook] . . . I've been a school administrator for 30 some odd years. When I have a child with a broken arm, or I've got a fight on the school bus, or a child's been stabbed or shot, the first thing we get ready for are lawsuits. Alex, if there would have been just 2 or 3 lawsuits filed by the parents or loved ones who lost someone that day at Sandy Hook, I'd go away."

163.     A reasonable person would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

164.     On information and belief, the article has been viewed by hundreds of thousands of persons.

### December 12, 2014

165.     On December 12, 2014, Infowars Nightly News broadcast an episode now advertised on YouTube under the title "The Ultimate Sandy Hook Debate As The 2nd Anniversary Looms."[26]

166.     The episode consisted of a debate between Keith Johnson (a self-described conspiracy theorist with americanfreepress.net) and Halbig, about Sandy Hook, moderated by an Infowars personality named Rob Dew.

167.     During that broadcast, Halbig asserted that Sandy Hook Elementary School had been used as a toxic waste dump before December 14, 2012, and therefore no shooting took place there.

168.     Halbig stated, "On behalf of Dawn Hochsprung, who supposedly was the principal and was shot [in the massacre] . . . I can tell you this with certainty: Dawn Hochsprung would never, ever, in her life, have allowed her school . . . to look so filthy and so deplorable . . . . she would have never . . . allowed her school to become a toxic waste dump exposing every one

---

[26] The Alex Jones Channel, *The Ultimate Sandy Hook Debate As The 2nd Anniversary Looms*, YouTube (Dec. 12, 2014), https://www.youtube.com/watch?v=6aK0P-WxjU8.

of her children and school staff members to serious lifelong health risks . . . . The doors are rotten, they're filthy . . . there's mildew."

169.    A reasonable person would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

170.    The audience for this broadcast has included hundreds of thousands, if not millions, of people.

### December 28, 2014

171.    On December 28, 2014, during The Alex Jones Radio Show, Jones took a call from Kevin, a listener who called in claiming to live close to Newtown, Connecticut.[27]

172.    Kevin said, "I'm calling about Sandy Hook. My take on it is . . . The whole thing is pretty much the next step in reality TV, because with other false flags, like 9/11 or Oklahoma City, or the Boston bombing, at least something happened. With Sandy Hook, there's no there there. You've got a bunch of people walking around a parking lot, pretty much what it comes down to."

173.    Jones interrupted Kevin. "No, no, I've had the investigators on, the state police have gone public, you name it," he said. "The whole thing is a giant hoax. And the problem is, how do you deal with a total hoax? How do you even convince the public something's a total hoax?"

174.    Kevin responded, "I always tell people the same thing: go out and prove the official story. And . . . I know the millisecond this happened, with that now-fake picture of the kids being led out of the school, that there's nothing that's going to sell this agenda like dead elementary school kids."

175.    Jones interrupted Kevin again. "The general public doesn't know the school was actually closed the year before," he said. "They don't know they've sealed it all, demolished the building. They don't know that they had the kids going in circles in and out of the building as a photo-op. Blue screen, green screens, they got caught using."

176.    Jones continued, "People just instinctively know that there's a lot of fraud going on. But it took me about a year with Sandy Hook to come to grips with the fact that the whole thing was fake. I mean, even I couldn't believe it. I knew they jumped on it, used the crisis, hyped it up. But then I did deep research—and my gosh, it just pretty much didn't happen."

177.    A reasonable person would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

178.    On information and belief, this episode was also broadcast through Jones's radio affiliates.

---

[27] https://www.youtube.com/watch?v=TGCfi_ot0CU.

18

179. The audience for this broadcast has included hundreds of thousands, if not millions, of people.

## January 2, 2015

180. On January 2, 2015, Infowars.com published an article by Adan Salazar entitled "MYSTERY: SANDY HOOK VICTIM DIES (AGAIN) IN PAKISTAN."

181. The article alleged that the "face . . . one of the children supposedly killed in the December 2012 Sandy Hook shooting in Newtown, Connecticut" had "without explanation . . . appeared in multiple photos and reports" related to an attack conducted by the Pakistani Taliban on a Pakistan Army school on December 16, 2015.

182. "Can the photo's misuse simply be brushed off as another bumbling Google image search mistake?" the article stated. "Or could it be willful subterfuge aimed at poking fun at those who question the validity of the Sandy Hook event?"

183. The pictures used were images of Noah Pozner.

184. Upon information and belief, hundreds of thousands of people have viewed this article.

## January 13, 2015

185. On January 13, 2015, during a broadcast of The Alex Jones Radio Show, Jones said, "Yeah, so, Sandy Hook is a synthetic completely fake with actors, in my view, manufactured. I couldn't believe it at first. I knew they had actors there, clearly, but I thought they killed some real kids. And it just shows how bold they are, that they clearly used actors. I mean they even ended up using photos of kids killed in mass shootings here in a fake mass shooting in Turkey—so yeah, or Pakistan. The sky is now the limit. I appreciate your call."[28]

186. A reasonable person would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

187. On information and belief, this episode was also broadcast through Jones's radio affiliates.

188. The audience for this broadcast has included hundreds of thousands, if not millions, of people.

---

[28] https://www.youtube.com/watch?v=Ap-DvMoiMOY.

19

**March 4, 2015**

189. On March 4, 2015, The Alex Jones Radio Show broadcast an episode now advertised on YouTube under the title "New Bombshell Sandy Hook Information In-Bound."[29]

190. Jones hosted Halbig on that episode.

191. During the broadcast, Jones asked Halbig to explain why Sandy Hook was "completely phony."

192. Halbig stated the school was not in operation at the time of the shooting.

193. Jones stated that the school was suddenly reopened, received a "falling report" [sic], and did not look like a real school.

194. Halbig stated that it was the "most filthiest [sic] most deplorable school" and "loaded with lead paint . . . asbestos . . . PCP."

195. Halbig stated that trauma helicopters were not called and that paramedics were not allowed to enter the school.

196. Jones stated, "I'm saying it was a drill, a giant piece of theater, did they really kill some kids? I don't know."

197. Referring to video of parents of children killed in the shooting, Jones stated that "they . . . bring in actors to break down and cry. . . used the same actors as different people."

198. Both Jones and Halbig stated that Connecticut police ate lunch inside the school the day of the shooting.

199. Halbig encouraged listeners to contact the Newtown school board and ask them his questions.

200. A reasonable person would understand Jones's and Halbig's statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

201. On information and belief, this episode was also broadcast through Jones's radio affiliates.

202. The audience for this broadcast has included hundreds of thousands, if not millions, of people.

---

[29] https://www.youtube.com/watch?v=_7ib5WkULBY.

20

**May 28, 2015**

203. On May 28, 2015, Infowars Nightly News broadcast an episode now advertised on YouTube under the title: "Sandy Hook: The Lies Keep Growing."[30]

204. David Knight hosted Halbig on Infowars Nightly News.

205. Halbig accused Newtown police chief Mike Kehoe of committing perjury.

206. Halbig once again appeared, and stated that the school was unsanitary and unsafe.

207. Halbig's website was repeatedly advertised and listeners were encouraged to support him financially.

208. A reasonable person would understand Halbig's statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

209. On information and belief, this episode was also broadcast through Jones's radio affiliates.

210. The audience for this broadcast has included hundreds of thousands, if not millions, of people.

**May 29, 2015**

211. On May 29, 2015, The Alex Jones Channel published an Infowars video, now posted on YouTube with the title "School Administrator Exposes Sandy Hook Stonewall."[31]

212. The video was introduced by David Knight. The video then cut to Dan Bidondi, an Infowars reporter, who was reporting from Wolfgang's Freedom of Information Act hearing in Hartford, Connecticut.

213. The video cut back and forth between excerpts from the hearing and interviews of Halbig by Bidondi in the hallway outside the hearing room.

214. Infowars reporter Dan Bidondi traveled to Hartford, CT to report on this hearing on behalf of Infowars and Alex Jones.

215. On information and belief, other Infowars agents, including the person doing the video recording, traveled to and were located in Hartford, Connecticut, for the creation of this video.

---

[30] https://www.youtube.com/watch?v=Ml3KVj2nVRA.
[31] https://www.youtube.com/watch?v=SO8Xb-t4nT4.

21

216. Later on May 29, 2015, the Alex Jones Channel published another Infowars video on YouTube, entitled "New Sandy Hook Questions Arise from FOIA Hearing."[32] The video featured David Knight interviewing Wolfgang Halbig by streaming video.

217. During the interview, Halbig stated that Sandy Hook Elementary School was "a toxic waste dump . . . . and yet, we have parents who would allow their children to attend that type of a school? I don't believe so. And if they did, those parents are negligent for putting their children at risk."

218. Halbig was clearly suggesting that the school was empty on the day of the shooting, and therefore that the shooting did not happen—and that the Sandy Hook parents are lying about their children's deaths.

219. On information and belief, these statements were heard by hundreds of thousands, if not millions, of people.

**July 7, 2015**

220. On July 7, 2015, The Alex Jones Radio Show broadcast a video now posted on YouTube with the title "Retired FBI Agent Investigates Sandy Hook: MEGA MASSIVE COVER UP."[33]

221. Jones noted, referring to the May 29, 2015 video, "I knew that we'd sent a reporter Dan Bidondi there for days, to cover the city council hearings about it, the fact that they're sealing everything."[34]

222. "[T]he more we look at Sandy Hook," he said, "I don't want to believe it's a false flag. I don't know if kids really got killed, but you've got green screen with Anderson Cooper . . . . and then his nose disappears. It's fake! The whole thing, it's—I don't know what happened."

223. He continued, "It's kind of, you see a hologram at Disney World in the haunted house, I don't know how they do it, it's not real. When you take your kids to the haunted house and there are ghosts flying around, it's not real, it's staged . . . I don't know what the trick is here, I got a good suspicion. But when you've got Wolfgang Halbig . . . . he went and investigated, no paperwork, no nothing, it's bull."

224. Later, Jones stated, "But what about how for a mass shooting in Pakistan, they got photos of Sandy Hook kids," and referring to an Infowars article, stated, "it's like the same P.R. company is running this . . . . and then they try to hit us with fake copyright deals whenever we show this."

---

[32] https://www.youtube.com/watch?v=5cll79t7Mrw.

[33] https://www.mediamatters.org/embed/clips/2016/11/29/51284/gcn-alexjones-20150707-shooting; https://www.youtube.com/watch?v=8YV1eWq8YSc.

[34] https://www.youtube.com/watch?v=jCOe3qlgyFA.

225. Jones put the article on the screen and read the headline: "Mystery: Sandy Hook Victim Dies (Again) in Pakistan."

226. A reasonable person would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

227. On information and belief, this episode was also broadcast through Jones's radio affiliates.

228. The audience for this broadcast has included hundreds of thousands, if not millions, of people.

### November 17, 2016

229. On November 17, 2016, the Alex Jones Show broadcast an episode in which Alex Jones claimed that he had never claimed that Sandy Hook was a hoax. Almost immediately thereafter, he rehearsed a number of his common arguments that Sandy Hook was a hoax.

230. These included that "Anderson Cooper is using a green screen, his nose disappears"; "they have kids going in circles back into the buildings"; "the building was closed years before"; "it was filthy"; "no emergency helicopters were launched"; and "they're sealing the death certificates and everything."

231. Jones continued, "we've sent reporters up there, man, and that place is like *Children of the Corn* or something. I mean it is freaking weird."

232. Jones further referenced "weird videos of reported parents of kids laughing and then all of a sudden they do the hyperventilating to cry to go on TV," suggesting that parents of children killed at Sandy Hook were acting.[35]

233. A reasonable person would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

234. On information and belief, this episode was also broadcast through Jones's radio affiliates.

235. The audience for this broadcast has included hundreds of thousands, if not millions, of people.

### November 18, 2016

236. On November 18, 2016, Jones broadcast a video now advertised on YouTube under the title, "Alex Jones Final Statement on Sandy Hook."[36]

---

[35] https://www.youtube.com/watch?v=KxwnPqwxeag; https://www.mediamatters.org/blog/2016/11/17/trump-ally-alex-jones-doubles-down-sandy-hook-conspiracy-theories/214524.
[36] https://www.youtube.com/watch?v=MwudDfz1yAk.

237. During that video, Jones stated, "I want to reach out to my listeners as well and just clarify where I stand on the reported tragedy at Sandy Hook that took place at that elementary school."

238. He continued: "For the last three or four years, it's been mainstream media's number-one attack against me to say that I said there was never anyone that actually died there. I've hosted debates against both sides, and I've been criticized by both sides—people that say that no one died there and people who say that the official story is exactly as we've been told. And I've always said that I'm not sure about what really happened, that there's a lot of anomalies and there has been a cover-up of whatever did happen there."

239. He stated: "There's a few clips Hillary used in her campaign of me out of context saying I can see how people that look at all this evidence say no kids died there and this whole thing is a giant hoax, but at the same time there is some evidence that people died there. They take that out of context and misrepresent it. That's why they're the deceptive corporate media. But for those who do have an attention span for, say, 10 minutes or so, I will present to you the questions. And I'm going to be quite frank, I don't know what really happened. I know there are real mass shootings. I know people lose children. I'm a father. It hurts my heart. So I don't know what the truth is. All I know is the official story of Sandy Hook has more holes in it than Swiss cheese."

240. Jones rehearsed several of his most commonly employed arguments that the Sandy Hook shooting was staged, including that Anderson Cooper was standing in front of "a blue screen or a green screen," that video was "looped," and that "one of the reported fathers of the victims . . . [was] doing classic acting training."

241. In closing, Jones said, "This is a tragedy. I wish it never would have happened. But quite frankly, I wish that the official story was true because that's a lot less scary than them staging something like this. But when you think about how they staged [weapons of mass destruction] to kill over a million Iraqis, when you think about all the other hoaxes, all the other lies, all the other rigging, and the way they're freaking out about it and trying to cover up every level of it, it just makes me ask what really happened there?"

242. The clear implication of these statements is that the accepted account of Sandy Hook—that the plaintiffs lost their loved ones in the shooting—is false, and that the plaintiffs have fabricated their loved ones' deaths.

243. On information and belief, this episode was also broadcast through Jones's radio affiliates.

244. The audience for this broadcast has included hundreds of thousands, if not millions, of people.

24

**November 28, 2016**

245.     On November 11, 2016, plaintiff Erica Lafferty published an op-ed in USA Today asking President-Elect Trump to disavow Alex Jones and other people who falsely assert that the Sandy Hook shooting was a hoax.[37]

246.     In response to the open letter, Infowars broadcasted a five-minute rant by Owen Shroyer, an Infowars "reporter," defending Jones and attacking Lafferty.[38]

247.     Shroyer directly addressed Lafferty, stating, "Your logic [about gun control] failed your mother."

248.     Shroyer directly addressed Lafferty, accusing her of saying, "without any proof," that Alex Jones had said that Sandy Hook was a hoax.

249.     Shroyer stated, "[Jones is] not the one who's denying Sandy Hook ever happened."

250.     These statements were obviously untrue: Alex Jones has denied many times that Sandy Hook ever happened.

251.     Shroyer stated falsely that Lafferty had asserted that then-President-Elect Trump needed to face the death of a loved one.

252.     This statement falsely described Lafferty's appeal to sympathy as if it were a threat on the family of the President-Elect of the United States.

253.     Shroyer repeatedly cited Halbig, saying that he has "done the best reporting" on the Sandy Hook shooting.

254.     He stated to Lafferty, "Why are you butting heads with people [Jones and Halbig] that want to find out the truth of what happened to your mother?"

255.     The truth about Lafferty's mother, Dawn Hochsprung, is that she is dead.

256.     Dawn Hochsprung is dead because, on the morning of December 14, 2012, she sacrificed her life trying to save her students from Adam Lanza's murderous rampage at Sandy Hook Elementary School.

---

[37] Erica Lafferty, *Mr. Trump, denounce Alex Jones : Sandy Hook Principal's Daughter*, USA Today (Nov. 25, 2016), https://www.usatoday.com/story/opinion/2016/11/25/donald-trump-sandy-hook-alex-jones-column/94335420/.

[38] https://www.youtube.com/watch?v=9PdrlrSCLu0.

25

## March 8, 2017

257. On the March 8, 2017 edition of The Alex Jones Show, Jones hosted Eddie Bravo.

258. During the interview, Bravo stated, "Dr. Steve Pieczenik, and you got some heat for this, this is kind of changing the subject a little bit. Dr. Steve Pieczenik, on your show, said that no kids died at Sandy Hook, that it was a homeland security drill that they passed off as a real—"

259. Jones stated, "He says that. And I've been hit really hard with it. I can't prove it one way or the other. I know Anderson Cooper is standing up there and turns and his whole nose disappears. I work in TV, I know what a blue screen is, bro."

260. A reasonable person would understand Jones and Bravo to have been stating that the Sandy Hook massacre was faked, and that the plaintiffs participated in a fraud that was based on lying about the deaths of their loved ones.

261. On information and belief, this episode was also broadcast through Jones's radio affiliates.

262. The audience for this broadcast has included hundreds of thousands, if not millions, of people.

## April 22, 2017

263. On April 22, 2017, the Alex Jones Show broadcast an episode, also released on YouTube, entitled "Sandy Hook Vampires Exposed."[39]

264. During that episode, Jones showed video footage of an interview between one of the Sandy Hook parents and Anderson Cooper. Over this footage, Mr. Jones stated: "And then we've got Anderson Cooper, famously, not just with the flowers blowing and a fake, but when he turns, his nose disappears repeatedly because the green-screen isn't set right. And they don't like to do live feeds because somebody might run up. CNN did that in the Gulf War and admitted it. They just got caught two weeks ago doing it in supposedly Syria. And all we're saying is, if these are known liars that lied about WMDs, and lied to get us in all these wars, and backed the Arab Spring, and Libya, and Syria, and Egypt, and everywhere else to overthrow governments, and put in radical Islamicists [sic], if they do that and have blood on their hands, and lied about the Iraq War, and were for the sanctions that killed half a million kids, and let the Islamicists [sic] attack Serbia, and lied about Serbia launching the attack, when it all came out later that Serbia didn't do it, how could you believe any of it if you have a memory? If you're not Dory from 'Finding Dory,' you know, the Disney movie. Thank god you're so stupid, thank god you have no memory. It all goes back to that."

265. Jones told his audience that they should not "believe any of it."

---

[39] https://www.youtube.com/watch?v=rUn1jKhWTX1.

26

266.     As discussed throughout this complaint, the "faked" Anderson Cooper interview is one of Jones's favorite arguments that the entire Sandy Hook massacre was fabricated and that the plaintiffs were actors who faked their loved ones' deaths.

267.     During the April 22, 2017 broadcast, Jones and an Infowars producer made other statements rehearsing familiar themes from the defendants' campaign of lies and abuse.

268.     In conversation with the producer, Jones stated: "And that's on helicopter footage, and then they say it never existed, and later admit it does, and the school was closed until that year, in the videos it's all rotting and falling apart and nobody is even in it, and the kids are going in circles, in and out of the building with their hands up, and they never called rescue choppers. I mean, exactly."

269.     The Infowars producer responded: "There's some supposed dash footage where the people are smiling and getting their lunches ready, police officers. You think you're going to have smiling police officers at a time when they're supposedly bringing out twenty dead kids? And they're smiling and getting their lunches ready."

270.     Mr. Jones responded: "And they had Port-A-Potties being delivered an hour after it happened, for the big media event."

271.     The Infowars producer responded: "We've never seen, there was never been any even blurred photos of any bodies or anything . . . . We didn't even get blurred images with the dead kids in Syria. We got crisp photos."

272.     Especially knowing the defendants' previous statements, a reasonable person would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones. A reasonable person would also understand the defendants to be stating that the plaintiffs were "Sandy Hook Vampires."

**April 28, 2017**

273.     On April 28, 2017, Jones held a press conference in which he was asked if he believes that Sandy Hook was a "false flag." Jones stated: "I think we should investigate everything because the government has staged so much stuff, and then they lie and say that I said the whole thing was totally fake when I was playing devil's advocate in a debate. I said maybe the whole thing is real, maybe the whole thing is fake. They were using blue screens out there . . . . . Yes, governments stage things."[40]

274.     Especially knowing the defendants' previous statements, a reasonable person would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

---

[40] https://www.youtube.com/watch?v=StOyqyt0fkY.

27

## June 13, 2017

275.     On June 13, 2017, Jones posted a video to the InfoWars Facebook page in which he once again rehearsed his lie about the "faked" CNN interview. Jones stated: "But there's been a cover-up. Anderson Cooper got caught, faking where his location was with blue-screen. I mean, it's all there."[41]

276.     Especially knowing the defendants' previous statements, a reasonable person would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

## The Megyn Kelly Interview

### *The Preview*

277.     On June 11, 2017, television news personality Megyn Kelly interviewed Jones for her weekly news magazine on NBC News.

278.     NBC released a preview of the interview on the internet on the following day.

279.     In footage contained in the preview, Jones stated, "Well, Sandy Hook's complex because I have had debates where, we devil's advocates have said the whole story is true, and then I have had debates where I have said that none of it is true."

280.     Later, Kelly stated, "When you say parents faked their children's deaths, people get very angry."

281.     In response, Jones asserted that people do not get angry about the deaths that resulted from the sanctions against Iraq or other tragedies in the world, and complained about the media's coverage of such events. He did not deny claiming that the plaintiff parents faked their children's deaths.

282.     Kelly stated, "That doesn't excuse what you did and said about Newtown, and you know it."

283.     Jones stated, "Here's the difference. I looked at all the angles of Newtown, and I made my statements long before the media even picked up on it."

284.     The most reasonable interpretation of this statement is that Jones was saying that his account—in which he repeatedly stated that the shooting was staged, that parents were actors, and that no children were killed—was more reliable than the established media account, and true.

285.     These statements were heard by millions of people.

---

[41] https://www.facebook.com/80256732576/videos/10155465593882577/.

28

*June 15, 2017 – Infowars*

286. During a video released on Infowars on June 15, 2017, Jones stated the following about his interview with Megyn Kelly: "She said things like, 'Oh, you talked about Newtown not happening and hurt people's feelings,' and I explained, 'No I looked at all different angles, [unintelligible] could have happened, but they staged the WMDs in Iraq and they staged the babies in the incubators, so they've lied about babies before . . . I said, they've staged babies in incubators in Bush I, and then they did it again . . . so it could've been staged, because they stage things.'"

287. Especially knowing the defendants' previous statements, a reasonable person would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

288. The audience for this broadcast has included hundreds of thousands, if not millions, of people.

### Alex Jones's June 18, 2017 Pre-NBC-Broadcast Programming

289. The final version of Jones's interview with Megyn Kelly aired on NBC News on June 18, 2017.

290. Before the interview aired that day, Jones published several pre-show videos on Infowars.

291. During those videos, he made repeated statements suggesting that the Sandy Hook shooting did not happen and/or that the plaintiffs' loved ones did not die there.

    A. In one, he said, "But I'm looking at it I think Newtown did happen. But I'm not the creator of people questioning Newtown and Sandy Hook. My guests covered it, I've covered it."

    B. Later, he said, "My intel is that I've seen the parents and it looked real to me. If I can't prove something one hundred percent I'm not going to go there. We know governments have staged things and you have a right to question it."

    C. He continued, "But you have the total right to question Sandy Hook. You know, I'm tempted to make a documentary about it, just for my own hellish experience. It's like the babies in the incubators . . . none of it was true."

    D. He added, "No, I've been saying since it happened that I don't know whether the official story's true or not. And now you can't prove it one way or the other there's some anomalies. But the parents look pretty legitimate to me."

    E. While interspersed with vacillations, Jones's statements convey a clear message: that the accepted account of the Sandy Hook shooting—that the

29

plaintiffs lost their loved ones there—is untrue, and that the plaintiffs fabricated the deaths of their loved ones. Of special note was his abnormal and "official" tone, which a reasonable person knowing Jones's show would interpret as a "wink" at his audience.

292. Later that day, Jones hosted Dr. Steve Pieczenik as a guest on his program.

293. As discussed in paragraphs 123 through 128 of this complaint, Pieczenik had stated in a previous appearance on Jones's show that no children died at Sandy Hook and that the parents were actors.

294. In introducing Pieczenik on this occasion, Jones stated, "He's a smart guy, he doesn't buy into what happened, reportedly there in Newtown I personally can't prove it one way or the other so I'm just going to say that my heart goes out to the families and I believe it happened."

295. During his appearance on the show, Pieczenik said, "All the hedge fund owners . . . left down to Miami thanks to Dan Malloy and Sandy Hook. So every one of these paid [Sandy Hook] parents, whoever they may be, are totally, totally disingenuous."

296. In response to Pieczenik's statement, Jones said, in his abnormal, "official" tone, "All I know is that they've staged fake things before."

297. A reasonable person would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

298. These statements were heard by hundreds of thousands, if not millions of people.

### The June 18, 2017 NBC Broadcast

299. During the interview with Kelly that aired on NBC, Jones made several additional statements suggesting that the shooting never happened.

300. At one point, Kelly read Jones's previous statement describing the Sandy Hook shooting as a hoax, recounted in paragraphs 171 through 179 of this complaint.

301. In response, Jones stated, "At that point—and I do think there was some cover up and some manipulation—that is pretty much what I believed. But then I was also going into devil's advocate, but then we know there's mass shootings and these things happen. So again—"

302. Later, Kelly said, "If you wrongly went out there and said it was a hoax. That's wrong."

303. In response, Jones said, "But what I already answered your question was—listeners and other people are covering this—I didn't create that story."

30

304. Later, Kelly stated, "But Alex, the parents—one after the other—devastated. The dead bodies that the coroner autopsied."

305. In response, Jones said, "And they blocked all that and they won't release any of it. That's unprecedented—"

306. Later, Kelly asked Jones if he was playing "devil's advocate" when he said "the whole thing is a giant hoax."

307. Jones responded, "Yes, because I remember in, even that day— I will go back for memory—them saying but then some of it looks like it's real. But what do you do when they got the kids going in circles in and out of the building with their hands up. I've watched the footage and it looks like a drill."

308. Even in that statement, while claiming—falsely—that he was playing "devil's advocate" when making those previous statements, Jones again asserted that the Sandy Hook shooting did not happen.

309. Next, Kelly said, "When you say parents faked their children's deaths, people get very angry."

310. Jones responded, "Oh, I know—but they don't get angry about the half million that Iraq from the sanctions or the don't get angry about all the legal—"

311. Later, Kelly said, "That doesn't excuse what you did and said about Newtown, you know it."

312. Jones responded, "Here's the difference, here's the difference—I looked at all the angles of Newtown and I made my statements long before the media even picked up on it."

313. In a voiceover, Kelly than noted that Jones, despite being "asked . . . numerous times what he now believes . . . never completely disavowed his previous statements."

314. It then played clip of Jones saying, "I tend to believe that children probably did die there, but then you look at all the evidence on the other side, I can see how other people believe nobody died there."

315. There is no evidence "on the other side."

316. A reasonable person would understand Jones's statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

317. More than three million people saw and heard these statements by Jones.

31

### *Alex Jones's June 18, 2017 Counter-Programming*

318.     Meanwhile, as the interview played on NBC, Jones himself was broadcasting a live play-by-play video commentary on Infowars.

319.     The Sandy Hook segment of the NBC interview began with a Megyn Kelly voiceover describing Jones's statements that Sandy Hook was a hoax. As the voiceover played, Jones said, "Babies in the incubators."

320.     As evidenced by statements recounted previously in this complaint, "babies in the incubators" is a well-established Alex Jones metonym for a staged event.

321.     This statement is properly interpreted as a reiteration and reaffirmation of Jones's previous statements that the Sandy Hook shooting was staged and that no children died there.

322.     Later, as his statement that he "looked at all the angles of Newtown" in the NBC interview played in the background, Jones said, "I said I thought it happened before they were picked up. They never showed my final analysis."

323.     This statement appears to be an admission that Jones never actually believed that Sandy Hook was a hoax, even as he maintained unequivocally that it was.

324.     On information and belief, these statements were also broadcast on Alex Jones's radio affiliates.

325.     Hundreds of thousands, if not millions, of people heard these statements.

### *June 26, 2017*

326.     During the June 18, 2017 profile of Jones for her NBC show Sunday Night with Megyn Kelly, Ms. Kelly interviewed one of the Sandy Hook parents, Neil Heslin, about the claims made by Jones, including that "the whole thing was fake" and "a giant hoax." Addressing Jones's lies, Heslin told Kelly, "I lost my son. I buried my son. I held my son with a bullet hole through his head."

327.     On June 26, 2017, Infowars broadcast a segment hosted by "reporter" Owen Shroyer in which Shroyer claimed to have reviewed evidence showing it was impossible for Mr. Heslin to have held his son and seen his injury. This broadcast was meant to reinforce and support the underlying lie that the Sandy Hook parents are fakes.[42]

328.     Shroyer stated: "The statement [Heslin] made, fact-checkers on this have said cannot be accurate. He's claiming that he held his son and saw the bullet hole in his head. That is his claim. Now, according to a timeline of events and a coroner's testimony, that is not possible."

---

[42] https://www.infowars.com/zero-hedge-discovers-anomaly-in-alex-jones-hit-piece/.

32

329. Shroyer's support for this statement was video footage in which the local medical examiner informed reporters that the slain students were initially identified using photographs rather than in person. However, the Sandy Hook parents were permitted to see and hold their children soon thereafter.

330. Shroyer stated: "You would remember if you held your dead kid in your hands with a bullet hole. That's not something you would just misspeak on." He continued, noting that Heslin was "making a pretty extreme claim that would be a very thing vivid in your memory, holding his dead child."

331. Shroyer then stated: "The conspiracy theorists on the internet out there have a lot of questions that are yet to be answered. You say whatever you want about the event, that's just a fact."

332. In concluding his report, Shroyer stated: "Will there be a clarification from Heslin or Megyn Kelly? I wouldn't hold your breath. [Laugh]. So now they're fueling the conspiracy theory claims. Unbelievable."

333. A reasonable person would understand these statements, including the title of the embedded video, to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones.

334. These statements were heard by at least tens of thousands, if not millions, of people.

335. On information and belief, the defendants have published other similar statements of which the plaintiffs do not know at this time, but would obtain with reasonable discovery.

### COUNT ONE – Invasion of Privacy by False Light; Civil Conspiracy
**(Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto-Parisi, David Wheeler, Francine Wheeler, & William Aldenberg v. All Defendants)**

336. All previous allegations in this complaint are incorporated as if fully set forth herein.

337. The defendants, as part of a campaign of harassment and abuse, broadcast numerous outrageous lies about the plaintiffs that represented such major misrepresentations of the plaintiffs' character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable person in their position.

338. The false light in which the defendants' statements placed the plaintiffs would be highly offensive to a reasonable person.

339. The defendants had knowledge that their statements were lies, or acted with reckless disregard as to the falsity of their statements and the false light in which the plaintiffs

would be placed.

340.    These false publications have caused the plaintiffs actual and substantial damages.

341.    In light of their prior experience with similar sorts of reckless and false statements, the defendants knew that their publications could cause the plaintiffs to suffer harassment and potential violence.

342.    The plaintiffs are private individuals and are neither public officials nor public figures.

343.    The defendants broadcast their outrageous, cruel, and malicious lies about the plaintiffs with knowledge that the statements were false or with reckless disregard as to whether or not they were true.

344.    The defendants combined to conduct their campaign of harassment and abuse, which included numerous unlawful acts or lawful acts by unlawful means.

345.    The defendants combined to perform these unlawful acts pursuant to their scheme to harass and abuse the plaintiffs and in furtherance of that scheme.

346.    These acts of the defendants resulted in damage to the plaintiffs.

### COUNT TWO – Defamation and Defamation *per se*; Civil Conspiracy
**(Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto-Parisi, David Wheeler, Francine Wheeler, & William Aldenberg v. All Defendants)**

347.    All previous allegations in this complaint are incorporated as if fully set forth herein.

348.    In repeatedly publishing false statements asserting or reasonably understood to be asserting that the plaintiffs' loved ones did not die; and/or that the episode in which they were killed was staged or their loved ones were still alive; and/or the plaintiffs were actors who faked their loved ones' deaths; the defendants published numerous defamatory statements.

349.    These publications were not only individually defamatory, but part of a continuous campaign of statements, starting in 2013 and continuing through at least 2017, stating, asserting, implying and suggesting that the plaintiffs faked their loved ones' deaths and/or are actors lying about the deaths of their loved ones.

350.    The statements contained in the defendants' campaign of harassment and abuse constitute defamation *per se*. The harmful nature of the defamatory statements is self-evident. The defamatory statements implicate the Plaintiffs in heinous criminal conduct. False implications of criminal conduct represent classic defamation *per se*.

34

351. The defendants' defamatory publications readily identified the plaintiffs to millions of people.

352. The defendants' defamatory publications were broadcast to millions of people.

353. The defendants' defamatory publications have injured the plaintiffs' reputations and images, and they have exposed the plaintiffs to public and private hatred, contempt, and ridicule. These false publications have caused the plaintiffs actual and substantial damages.

354. In light of their prior experience with similar sorts of reckless and false statements, the defendants knew that their publications could cause the plaintiffs to suffer harassment and potential violence.

355. The plaintiffs are private individuals and are neither public officials nor public figures.

356. The defendants broadcast their outrageous, cruel, and malicious lies about the plaintiffs with knowledge that the statements were false or with reckless disregard as to whether or not they were true.

357. The defendants combined to conduct their campaign of harassment and abuse, which included numerous unlawful acts or lawful acts by unlawful means.

358. The defendants combined to perform these unlawful acts pursuant to their scheme to harass and abuse the plaintiffs and in furtherance of that scheme.

359. These acts of the defendants resulted in damage to the plaintiffs.

**COUNT THREE – Intentional Infliction of Emotional Distress; Civil Conspiracy**
**(Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto-Parisi, David Wheeler, Francine Wheeler, & William Aldenberg v. All Defendants)**

360. All previous allegations in this complaint are incorporated as if fully set forth herein.

361. In broadcasting their campaign of outrageous and false statements about the plaintiffs, the defendants intended to inflict emotional distress or knew, or should have known, that emotional distress was the likely result of their conduct.

362. The defendants' conduct was extreme and outrageous.

363. The defendants' conduct was the cause of the plaintiffs' distress.

364. The emotional distress sustained by the plaintiffs was severe.

35

365.    The defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

366.    In light of their prior experience with similar sorts of false and reckless statements, the defendants knew that their publications could cause the plaintiffs to suffer harassment and potential violence.

367.    The plaintiffs have suffered actual and substantial damages.

368.    The plaintiffs are private individuals and are neither public officials nor public figures.

369.    The defendants broadcast their outrageous, cruel, and malicious lies about the plaintiffs with knowledge that the statements were false or with reckless disregard as to whether or not they were true.

370.    The defendants combined to conduct their campaign of harassment and abuse, which included numerous unlawful acts or lawful acts by unlawful means.

371.    The defendants combined to perform these unlawful acts pursuant to their scheme to harass and abuse the plaintiffs and in furtherance of that scheme.

372.    These acts of the defendants resulted in damage to the plaintiffs.

**COUNT FOUR – Negligent Infliction of Emotional Distress; Civil Conspiracy**
**(Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto-Parisi, David Wheeler, Francine Wheeler, & William Aldenberg v. All Defendants)**

373.    All previous allegations in this complaint are incorporated as if fully set forth herein.

374.    The defendants' campaign of outrageous, cruel, and malicious lies created an unreasonable risk of causing the plaintiffs emotional distress.

375.    The plaintiffs' distress was foreseeable.

376.    The plaintiffs' emotional distress was severe enough that it might result in illness or bodily harm.

377.    The defendants' outrageous, cruel, and malicious conduct was the cause of the plaintiff's distress.

378.    The plaintiffs have suffered actual and substantial damages.

36

379. In light of their prior experience with similar sorts of reckless and false statements, the defendants knew that their publications could cause the plaintiffs to suffer harassment and potential violence.

380. The plaintiffs are private individuals and are neither public officials nor public figures.

381. The defendants broadcast their outrageous, cruel, and malicious lies about the plaintiffs with knowledge that the statements were false or with reckless disregard as to whether or not they were true.

382. The defendants combined to conduct their campaign of harassment and abuse, which included numerous unlawful acts or lawful acts by unlawful means.

383. The defendants combined to perform these unlawful acts pursuant to their scheme to harass and abuse the plaintiffs and in furtherance of that scheme.

384. These acts of the defendants resulted in damage to the plaintiffs.

**COUNT FIVE: Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.***
**(Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto-Parisi, David Wheeler, Francine Wheeler, & William Aldenberg v. All Defendants)**

385. All previous allegations in this complaint are incorporated as if fully set forth herein.

386. The defendants unethically, oppressively, immorally, and unscrupulously developed, propagated, and disseminated outrageous and malicious lies about the plaintiffs and their family members, and they did so for profit.

387. This campaign of lies, abuse, and harassment was a deceptive practice and offended public policy.

388. The defendants' reprehensible conduct caused substantial injury to the plaintiffs and other consumers that is not outweighed by any countervailing benefits to anyone, and that the plaintiffs themselves could not have reasonably avoided.

389. The defendants' conduct was a foreseeable cause of and a substantial factor causing the plaintiffs' injury.

390. The plaintiffs are private individuals and are neither public officials nor public figures.

391. The defendants broadcast their outrageous, cruel, and malicious lies about the plaintiffs with knowledge that the statements were false or with reckless disregard as to whether

or not they were true.

392.    The defendants combined to conduct their campaign of harassment and abuse, which included numerous unlawful acts or lawful acts by unlawful means.

393.    The defendants combined to perform these unlawful acts pursuant to their scheme to harass and abuse the plaintiffs and in furtherance of that scheme.

394.    These acts of the defendants resulted in damage to the plaintiffs.

WHEREFORE, THE PLAINTIFFS CLAIM DAMAGES IN EXCESS OF FIFTEEN THOUSAND DOLLARS AND THE FOLLOWING RELIEF AS FURTHER SET FORTH BELOW:

Plaintiffs seek relief as follows:

A.    Monetary damages;

B.    Punitive damages;

C.    Attorneys' fees;

D.    Costs;

E.    Declarative relief;

This matter is within the jurisdiction of this court.

Of this writ, with your doings thereon, make due service and return.

Dated at Bridgeport, Connecticut this 23rd day of May, 2018.

THE PLAINTIFFS,

By    _____

WILLIAM M. BLOSS
MATTHEW S. BLUMENTHAL
KOSKOFF KOSKOFF & BIEDER
350 FAIRFIELD AVENUE
BRIDGEPORT, CT 06604
PHONE: (203) 336-4421
FAX: (203) 368-3244
wbloss@koskoff.com
mblumenthal@koskoff.com
JURIS #32250

39

# EXHIBIT 2

Appearance

Attorney Jay M. Wolman

*Lafferty, et al., v. Jones, et al.*
Judicial District of Fairfield
Dkt. No. FBT-CV-18-6075078-S
June 28, 2018

# APPEARANCE

JD-CL-12 Rev. 1-12
P.B. §§ 3-1 thru 3-6, 3-8, 10-13, 25A-2

**STATE OF CONNECTICUT**
## SUPERIOR COURT
www.jud.ct.gov

**Instructions** — *See Back/Page 2*

### Notice To Self-Represented Parties

*A self-represented party is a person who represents himself or herself. If you are a self-represented party and you filed an appearance before and you have since changed your address, you must let the court and all attorneys and self-represented parties of record know that you have changed your address by checking the box below:*

☐ *I am filing this appearance to let the court and all attorneys and self-represented parties of record know that I have changed my address. My new address is below.*

| Return date |
|---|
| **Jun-26-2018** |
| Docket number |
| **FBT-CV-18-6075078-S** |

**Name of case** *(Full name of Plaintiff vs. Full name of Defendant)*

**LAFFERTY, ERICA Et Al v. JONES, ALEX EMRIC Et Al**

| ☒ | ☐ | ☐ | ☐ | Address of Court *(Number, street, town and zip code)* |
|---|---|---|---|---|
| Judicial District | Housing Session | Small Claims | Geographic Area number ____ | **1061 MAIN STREET BRIDGEPORT, CT 06604** |

Scheduled Court date *(Criminal/Motor Vehicle Matters)*

## Please Enter the Appearance of

Name of self-represented party *(See "Notice to Self-Represented Parties" at top)*, or name of official, firm, professional corporation, or individual attorney

**JAY MARSHALL WOLMAN**

| Juris number of attorney or firm |
|---|
| **433791** |

**Mailing Address** *(Number, street) (Notice to attorneys and law firms - The address to which papers will be mailed from the court is the one registered or affiliated with your juris number. That address cannot be changed in this form.)*

**100 PEARL STREET 14TH FLOOR**

| Post office box | Telephone number *(Area code first)* |
|---|---|
| | **702-420-2001** |

| City/town | State | Zip code | Fax number *(Area code first)* | E-mail address |
|---|---|---|---|---|
| **HARTFORD** | **CT** | **06103** | **305-437-7662** | **jmw@randazza.com** |

in the case named above for: *("x" one of the following parties; if this is a Family Matters case, also indicate the scope of your appearance)*

☐ The Plaintiff *(includes the person suing another person)*.
☐ All Plaintiffs.
☐ The following Plaintiff(s) only: _____
☐ The Defendant *(includes the person being sued or charged with a crime)*.
☐ The Defendant for the purpose of the bail hearing only *(in criminal and motor vehicle cases only)*.
☐ All Defendants.
☒ The following Defendant(s) only: **Pty# D-01 ALEX EMRIC JONES \*See additional page**
☐ Other *(Specify)*: _____
☐ This is a Family Matters case and my appearance is for: *("x" one or both)*
   ☐ matters in the Family Division of the Superior Court    ☐ Title IV-D Child Support matters

*Note: If other counsel or a self-represented party has already filed an appearance for the party or parties "x'd" above, put an "x" in box 1 or 2 below:*

1. ☐ This appearance is in place of the appearance of the following attorney, firm or self-represented party on file *(P.B. Sec. 3-8)*: _____
*(Name and Juris Number)*

2. ☐ This appearance is in addition to an appearance already on file.

**I agree to accept papers (service) electronically in this case under Practice Book Section 10-13**   ☒ Yes   ☐ No

| Signed *(Individual attorney or self-represented party)* | Name of person signing at left *(Print or type)* | Date signed |
|---|---|---|
| ▶ **433791** | **JAY MARSHALL WOLMAN** | **Jun 28 2018** |

## Certification

I certify that a copy of this document was mailed or delivered electronically or non-electronically on *(date)* **Jun 28 2018** to all attorneys and self-represented parties of record and that written consent for electronic delivery was received from all attorneys and self-represented parties receiving electronic delivery.

| Name and address of each party and attorney that copy was mailed or delivered to* | For Court Use Only |
|---|---|
| **KOSKOFF KOSKOFF & BIEDER PC - 350 FAIRFIELD AVENUE/BRIDGEPORT, CT 06604**<br>**REGNIER TAYLOR CURRAN & EDDY - 100 PEARL STREET/4TH FLOOR/HARTFORD, CT 06103** | |

| Signed *(Signature of filer)* | Print or type name of person signing | Date signed | Telephone number |
|---|---|---|---|
| ▶ **433791** | **JAY MARSHALL WOLMAN** | **Jun 28 2018** | **702-420-2001** |

*If necessary, attach an additional sheet or sheets with the name of each party and the address which the copy was mailed or delivered to.

**Continuation of JDCL12 Appearance Form for FBT-CV-18-6075078-S**

**Submitted By JAY MARSHALL WOLMAN (433791)**

**Additional Party(ies) (Continued from JDCL12)**

**For these party(ies)**

Pty# D-02 INFOWARS, LLC

Pty# D-03 FREE SPEECH SYSTEMS, LLC

Pty# D-04 INFOWARS HEALTH LLC

Pty# D-05 PRISON PLANET TV LLC

**\*\*\*\*\* End of Party List \*\*\*\*\***

**Continuation of JDCL12 Appearance Form for FBT-CV-18-6075078-S**

**Submitted By JAY MARSHALL WOLMAN (433791)**

**Certification of Service (Continued from JDCL12)**

**Name and Address at which service was made:**

WOLFGANG HALBIG (Self Represented) - 25526 HAWKS RUN LANE SORRENTO, FL 32776

**\*\*\*\*\* End of Certification of Service \*\*\*\*\***

# **<u>EXHIBIT 3</u>**

Initial Return of Service

*Lafferty, et al., v. Jones, et al.*
Judicial District of Fairfield
Dkt. No. FBT-CV-18-6075078-S
May 23, 2018

STATE OF CONNECTICUT:

             : SS: HARTFORD               MAY 23, 2018

COUNTY OF HARTFORD  :

Then and by virtue hereof, and by direction of the Plaintiff's Attorney, pursuant to C.G.S. Section 52-59b, I left a verified, true and attested copy of the within original WRIT, SUMMONS and COMPLAINT at the office of Denise Merrill, Secretary of State, Statutory Agent for Service and duly authorized to accept service on behalf of the within named Defendant **ALEX EMRIC JONES** and paid statutory fees in the amount of $50.00, at 30 Trinity Street, in the Town of Hartford, County of Hartford.

And afterward, on the 23rd day of May, 2018, a verified, true and attested copy of the within original WRIT, SUMMONS, COMPLAINT and DEFENDANT'S RETURN with an endorsement thereon of service upon the Connecticut Secretary of State was deposited in the U.S. Mail, Rocky Hill, CT, Certified Mail and Return Receipt Requested, addressed to the within named Defendant:
**ALEX EMRIC JONES**
**15101 BACK OF THE MOON STREET**
**AUSTIN, TX 78734**

The complete address is stated above.
Supplemental return to follow.

And afterward, on the 23rd day of May, pursuant to C.G.S. Section 34-275a, I left two verified, true and attested copies of the within original WRIT, SUMMONS and COMPLAINT at the office of Denise Merrill, Secretary of State, Statutory Agent for Service and duly authorized to accept service on behalf of the within named Defendant **INFOWARS, LLC** and paid statutory fees in the amount of $50.00, at 30 Trinity Street, in the Town of Hartford, County of Hartford.

And afterward, on the 23rd day of May, pursuant to C.G.S. Section 34-275a, I left two verified, true and attested copies of the within original WRIT, SUMMONS and COMPLAINT at the office of Denise Merrill, Secretary of State, Statutory Agent for Service and duly authorized to accept service on behalf of the within named Defendant **FREE SPEECH SYSTEMS, LLC** and paid statutory fees in the amount of $50.00, at 30 Trinity Street, in the Town of Hartford, County of Hartford.

And afterward, on the 23rd day of May, pursuant to C.G.S. Section 34-275a, I left two verified, true and attested copies of the within original WRIT, SUMMONS and COMPLAINT at the office of Denise Merrill, Secretary of State, Statutory Agent for Service and duly authorized to accept service on behalf of the within named Defendant **INFOWARS HEALTH, LLC** and paid statutory fees in the amount of $50.00, at 30 Trinity Street, in the Town of Hartford, County of Hartford.

And afterward, on the 23rd day of May, pursuant to C.G.S. Section 34-275a, I left two verified, true and attested copies of the within original WRIT, SUMMONS and COMPLAINT at the office of Denise Merrill, Secretary of State, Statutory Agent for Service and duly authorized to accept service on behalf of the within named Defendant **PRISON PLANET TV, LLC** and paid statutory fees in the amount of $50.00, at 30 Trinity Street, in the Town of Hartford, County of Hartford.

And afterward, on the 23rd day of May, 2018, pursuant to C.G.S. Section 52-59b, I left a verified, true and attested copy of the within original WRIT, SUMMONS and COMPLAINT at the office of Denise Merrill, Secretary of State, Statutory Agent for Service and duly authorized to accept service on behalf of the within named Defendant **WOLFGANG HALBIG** and paid statutory fees in the amount of $50.00, at 30 Trinity Street, in the Town of Hartford, County of Hartford.

And afterward, on the 23rd day of May, 2018, a verified, true and attested copy of the within original WRIT, SUMMONS, COMPLAINT and DEFENDANT'S RETURN with an endorsement thereon of service upon the Connecticut Secretary of State was deposited in the U.S. Mail, Rocky Hill, CT, Certified Mail and Return Receipt Requested, addressed to the within named Defendant:
**WOLFGANG HALBIG**
**25526 HAWKS RUN LANE**
**SORRENTO, FL 32776**

Supplemental return to follow.


And afterward, on the 23rd day of May, 2018, I left a verified, true and attested copy of the within original WRIT, SUMMONS and COMPLAINT at the usual place of abode of the within named Defendant **CORY T. SKLANKA** at 515 Gracey Avenue, in the Town of Meriden, County of New Haven.

I verified the Defendant's address with the Town Assessors office. He owns the property. I also called the CT Department of Motor Vehicles and confirmed that the car that was in the driveway was owned by him. His girlfriend answered the door and confirmed that he resides there.

And afterward, on the 23rd day of May, 2018, pursuant to C.G.S. Section 33-929(b)(1) a verified, true and attested copy of the within original WRIT, SUMMONS and COMPLAINT was deposited in the U.S. Mail, Rocky Hill, CT, Certified Mail and Return Receipt Requested, addressed to the within named Defendant:
**GENESIS COMMUNICATIONS NETWORK, INC.**
**C/O THE SECRETARY**
**190 COBBLESTONE LANE**
**BURNSVILLE, MN 55337**

Supplemental return to follow.


And afterward, on the 23rd day of May, 2018, pursuant to C.G.S. Section 33-929(b)(1) a verified, true and attested copy of the within original WRIT, SUMMONS and COMPLAINT was deposited in the U.S. Mail, Rocky Hill, CT, Certified Mail and Return Receipt Requested, addressed to the within named Defendant:
**MIDAS RESOURCES, INC.**
**C/O THE SECRETARY**
**190 COBBLESTONE LANE**
**BURNSVILLE, MN 55337**

Supplemental return to follow.

The within are the original WRIT, SUMMONS and COMPLAINT with my doings hereon endorsed.

| | | |
|---|---|---|
| SERVICE: | $ | 240.00 |
| PAID SEC OF STATE | | 300.00 |
| PAID POSTAGE | | 36.28 |
| PAGES | | 632.00 |
| 40 MILES | | 21.80 |
| ENDORSEMENTS | | 13.20 |
| TOTAL | $ | 1243.28 |

ATTEST:

BARBARA COFFEY
CONNECTICUT STATE MARSHAL
HARTFORD COUNTY

# EXHIBIT 4

Supplemental Return of Service

*Lafferty, et al., v. Jones, et al.*
Judicial District of Fairfield
Dkt. No. FBT-CV-18-6075078-S
June 14, 2018

AFFIDAVIT OF PROCESS SERVER

| | | |
|---|---|---|
| Docket No: FBT-CV-18-6075078-S | : | STATE OF CONNECTICUT |
| | : | |
| ERICA LAFFERTY, ET AL. | : | JUDICIAL DISTRICT |
| | : | |
| v. | : | OF FAIRFIELD |
| | : | |
| ALEX JONES, ET AL. | : | AT BRIDGEPORT |

I, Barbara C. Stinnett, received the below documents on Wednesday, June 13, 2018 at 8:39 AM to be delivered to the within named defendant ALEX EMRIC JONES.

Then and by virtue hereof, and by direction of the Plaintiffs' Attorney, I left a verified, true and attested copy of the WRIT, SUMMONS and COMPLAINT attached to the front door at the usual place of abode of the within named defendant ALEX EMRIC JONES, at 15101 Back of the Moon, Unit D, Austin, TX 78734 on Wednesday, June 13, 2018 at 11:38 AM.

I verified the address with two neighbors and with the land records on the Travis Central Appraisal District website.

ATTEST:

Barbara C. Stinnett
Process Server
PSC-1181; Exp: 7/31/2020
P.O. Box 684627
Austin, TX 78768

In the State of TEXAS, County of TRAVIS. Subscribed and Sworn to before me on the 14th day of June, 2018 by the affiant who is personally known to me.

Notary Public

HARRISON STINNETT
My Notary ID # 129047716
Expires July 9, 2020

# **EXHIBIT 5**

Declaration of Alex Jones

DocuSign Envelope ID: B6FF405A-D314-4DC6-8EC1-B4BEC743A1C5

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG,

        Plaintiffs,

        v.

ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC.,

        Defendants.

Case No. _____

July 13, 2018

### DECLARATION OF ALEX JONES

I, Alex Emric Jones, declare under penalty of perjury:

1.     I am over the age of 18 years and am fully competent to make this Declaration.

2.     The facts set forth in this Declaration are within my personal knowledge and are true and correct to the best of my knowledge and belief.

3.     I am a Defendant in the above-captioned lawsuit.

4.     I am a citizen and resident of the State of Texas.

5.     Defendant Infowars, LLC, is a limited liability company organized under the laws of the State of Texas and has its principal place of business therein.

6.     I am the sole member of Infowars, LLC.

7.     Defendant Free Speech Systems, LLC, is a limited liability company organized under the laws of the State of Texas and has its principal place of business therein.

8.     I am the sole member of Free Speech Systems, LLC.

- 1 -

DocuSign Envelope ID: B6FE405A-D314-4DC6-8EC1-B4BEC743A1C5

- 2 -

9.      Defendant Infowars Health, LLC, is a limited liability company organized under the laws of the State of Texas and has its principal place of business therein.

10.      I am the sole member of Infowars Health, LLC.

11.      Defendant Prison Planet TV, LLC, is a limited liability company organized under the laws of the State of Texas and has its principal place of business therein.

12.      I am the sole member of Prison Planet TV, LLC.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _7/13/2018_____.

DocuSigned by:

_Alex Jones_

4A4C02FF1C41465...

_____

ALEX EMRIC JONES

- 2 -

# EXHIBIT 6

## Consent to Removal

## Defendant Wolfgang Halbig

Case 22-33553 Document 1120-1 Filed in TXSB on 03/19/25 Page 75 of 405
Case 3:18-cv-01156-JCH Document 1-6 Filed 07/13/18 Page 1 of 2

DocuSign Envelope ID: 86932275-0FDD-4253-B494-14316FD55435

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ERICA LAFFERTY, DAVID WHEELER, FRANCINE WHEELER, JACQUELINE BARDEN, MARK BARDEN, NICOLE HOCKLEY, IAN HOCKLEY, JENNIFER HENSEL, JEREMY RICHMAN, DONNA SOTO, CARLEE SOTO-PARISI, CARLOS M. SOTO, JILLIAN SOTO, and WILLIAM ALDENBERG,

             Plaintiffs,

      v.

ALEX EMRIC JONES, INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC, INFOWARS HEALTH, LLC, PRISON PLANET TV, LLC, WOLFGANG HALBIG, CORY T. SKLANKA, GENESIS COMMUNICATIONS NETWORK, INC., and MIDAS RESOURCES, INC.,

             Defendants.

Case No.

July 13, 2018

## CONSENT TO REMOVAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(a), 1441(a), and 1446, the Defendant, Wolfgang Halbig, hereby consents to the removal to this Court, by Defendant Alex Emric Jones, the civil action from the Superior Court, Judicial District of Fairfield at Bridgeport, Connecticut ("state court") entitled *Lafferty, et al. v. Jones, et al.*, bearing a return date of June 26, 2018, and a Case No. FBT-CV18-6075078-S.

Such consent should not be deemed a waiver of any substantive, procedural, or jurisdictional defenses to the claims of the plaintiffs, which are all hereby preserved.

Dated: July 11, 2018

Respectfully submitted,

*Wolfgang Halbig*
78A82C0BEA1A495...
     *pro se*
25526 Hawks Run Lane
Sorrento, Florida 32776
Tel: (352) 729-2559
Fax: (352) 729-2559
Wolfgang.halbig@comcast.net

# EXHIBIT 7

Consent to Removal

Defendant Midas Resources, Inc.

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ERICA LAFFERTY, DAVID WHEELER, : 
FRANCINE WHEELER, JACQUELINE : 
BARDEN, MARK BARDEN, NICOLE :   Case No.
HOCKLEY, IAN HOCKLEY, JENNIFER : 
HENSEL, JEREMY RICHMAN, DONNA : 
SOTO, CARLEE SOTO-PARISI, CARLOS :   July 13, 2018
M. SOTO, JILLIAN SOTO, and WILLIAM : 
ALDENBERG, :

       Plaintiffs, :

     v. :

ALEX EMRIC JONES, INFOWARS, LLC, : 
FREE SPEECH SYSTEMS, LLC, : 
INFOWARS HEALTH, LLC, PRISON : 
PLANET TV, LLC, WOLFGANG : 
HALBIG, CORY T. SKLANKA, GENESIS : 
COMMUNICATIONS NETWORK, INC., : 
and MIDAS RESOURCES, INC., :

       Defendants. :

## CONSENT TO REMOVAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(a), 1441(a), and 1446, the

Defendant, Midas Resources, Inc., hereby consents to the removal to this Court, by Defendant

Alex Emric Jones, the civil action from the Superior Court, Judicial District of Fairfield at

Bridgeport, Connecticut ("state court") entitled *Lafferty, et al. v. Jones, et al.*, bearing a return

date of June 26, 2018, and a Case No. FBT-CV18-6075078-S.

Such consent should not be deemed a waiver of any substantive, procedural, or jurisdictional

defenses to the claims of the plaintiffs, which are all hereby preserved.

Dated: July 10, 2018

Respectfully submitted,
MIDAS RESOURCES, INC.,
By its attorneys,

# EXHIBIT 8

Consent to Removal

Defendant
Genesis Communication Network, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ERICA LAFFERTY, DAVID WHEELER,     :
FRANCINE WHEELER, JACQUELINE     :
BARDEN, MARK BARDEN, NICOLE     :   Case No.
HOCKLEY, IAN HOCKLEY, JENNIFER     :
HENSEL, JEREMY RICHMAN, DONNA     :
SOTO, CARLEE SOTO-PARISI, CARLOS     :   July 13, 2018
M. SOTO, JILLIAN SOTO, and WILLIAM     :
ALDENBERG,     :
    :
    Plaintiffs,     :
    :
    v.     :
    :
ALEX EMRIC JONES, INFOWARS, LLC,     :
FREE SPEECH SYSTEMS, LLC,     :
INFOWARS HEALTH, LLC, PRISON     :
PLANET TV, LLC, WOLFGANG     :
HALBIG, CORY T. SKLANKA, GENESIS     :
COMMUNICATIONS NETWORK, INC.,     :
and MIDAS RESOURCES, INC.,     :
    :
    Defendants.     :

## CONSENT TO REMOVAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(a), 1441(a), and 1446, the

Defendant, Genesis Communications Network, Inc., hereby consents to the removal to this

Court, by Defendant Alex Emric Jones, the civil action from the Superior Court, Judicial District

of Fairfield at Bridgeport, Connecticut ("state court") entitled *Lafferty, et al. v. Jones, et al.*,

bearing a return date of June 26, 2018, and a Case No. FBT-CV18-6075078-S.

Such consent should not be deemed a waiver of any substantive, procedural, or jurisdictional

defenses to the claims of the plaintiffs, which are all hereby preserved. By giving the instant

consent, such is not intended to constitute an appearance in the civil action in either the state court or the District Court.

Dated: July 10, 2018

Respectfully submitted,
GENESIS COMMUNICATIONS
NETWORK, INC.,
By its President,

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, Minnesota 55337
Tel:
Fax:
T.anderson@gcnlive.com

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Erica Lafferty, et al.

**(b)** County of Residence of First Listed Plaintiff  Litchfield County, CT
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
William M. Bloss, KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue Bridgeport, CT 06604
(203) 336-4421 <wbloss@koskoff.com>

## DEFENDANTS

Alex Emric Jones, et al.

County of Residence of First Listed Defendant  Travis County, TX
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Jay M. Wolman, RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor, Hartford, CT 06103
(702) 420-2001 <ecf@randazza.com>

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1  U.S. Government
     Plaintiff

❏ 2  U.S. Government
     Defendant

❏ 3  Federal Question
     *(U.S. Government Not a Party)*

☒ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ☒ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 196 Franchise | | | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| | | | | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| | | | | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement Income Security Act | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

❏ 1 Original Proceeding
☒ 2 Removed from State Court
❏ 3 Remanded from Appellate Court
❏ 4 Reinstated or Reopened
❏ 5 Transferred from Another District *(specify)*
❏ 6 Multidistrict Litigation - Transfer
❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332, 1441, 1446
Brief description of cause:
False Light, Defamation, NIED, IIED, and Connecticut Unfair Trade Practices Act

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ❏ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
07/13/2018

SIGNATURE OF ATTORNEY OF RECORD
/s/ Jay M. Wolman

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG, | : : : : : : : : : : | Case No. 3:18-cv-01156 |
| Plaintiffs, | : : | July 13, 2018 |
| v. | : : : | |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | : : : : : : : : | |
| Defendants. | : | |

**DEFENDANT INFOWARS, LLC'S**
**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. Civ. P. 7.1, Defendant Infowars, LLC discloses that it has no parent and that no publicly held corporation owns 10% of more of its stock.

Dated: July 13, 2018.          Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: 702-420-2001
ecf@randazza.com

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
ecf@randazza.com

*Attorneys for Infowars Defendants*

- 1 -

Case No. 3:18-cv-01156

## CERTIFICATE OF SERVICE

I hereby certify that, on this 13th day of July 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

William M. Bloss
Matthew S. Blumenthal
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgebort, CT 06604
<wbloss@koskoff.com>
<mblumenthal@koskoff.com>

*Attorneys for Plaintiffs*

Stephen P. Brown
WILSON ELSER MOSKOWITZ
  EDELMAN & DICKER
1010 Washington Blvd., 8th Floor
Stamford, CT 06901
<stephen.brown@wilsonelser.com>

*Attorney for Defendant*
*Midas Resources, Inc.*

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Lawrence L. Connelli
REGNIER TAYLOR CURRAN & EDDY
100 Pearl Street, 4th Floor
Hartford, Connecticut 06103
<LConnelli@rtcelaw.com>

*Attorney for Defendant*
*Cory T. Sklanka*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*

/s/ Jay M. Wolman
Jay M. Wolman

- 2 -

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG, | : : : : : : : : : : | Case No. 3:18-cv-01156 |
| Plaintiffs, | : : : : | July 13, 2018 |
| v. | : : | |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | : : : : : : : : : : | |
| Defendants. | : | |

**DEFENDANT FREE SPEECH SYSTEMS, LLC'S**
**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. Civ. P. 7.1, Defendant Free Speech Systems, LLC discloses that it has no parent and that no publicly held corporation owns 10% of more of its stock.

Dated: July 13, 2018.                    Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: 702-420-2001
ecf@randazza.com

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
ecf@randazza.com

*Attorneys for Infowars Defendants*

- 1 -

Case No. 3:18-cv-01156

## CERTIFICATE OF SERVICE

I hereby certify that, on this 13th day of July 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

William M. Bloss
Matthew S. Blumenthal
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgebort, CT 06604
<wbloss@koskoff.com>
<mblumenthal@koskoff.com>

*Attorneys for Plaintiffs*

Stephen P. Brown
WILSON ELSER MOSKOWITZ
  EDELMAN & DICKER
1010 Washington Blvd., 8th Floor
Stamford, CT 06901
<stephen.brown@wilsonelser.com>

*Attorney for Defendant*
*Midas Resources, Inc.*

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Lawrence L. Connelli
REGNIER TAYLOR CURRAN & EDDY
100 Pearl Street, 4th Floor
Hartford, Connecticut 06103
<LConnelli@rtcelaw.com>

*Attorney for Defendant*
*Cory T. Sklanka*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*

/s/ Jay M. Wolman
Jay M. Wolman

- 2 -

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG, | : : : : : : : : : : : | Case No. 3:18-cv-01156 |
| Plaintiffs, | : : : | July 13, 2018 |
| v. | : : : | |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | : : : : : : : : : | |
| Defendants. | : | |

## DEFENDANT INFOWARS HEALTH, LLC'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. Civ. P. 7.1, Defendant Infowars Health, LLC discloses that it has no parent and that no publicly held corporation owns 10% of more of its stock.

Dated: July 13, 2018.              Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: 702-420-2001
ecf@randazza.com

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
ecf@randazza.com

*Attorneys for Infowars Defendants*

- 1 -

Case No. 3:18-cv-01156

## CERTIFICATE OF SERVICE

I hereby certify that, on this 13th day of July 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

William M. Bloss
Matthew S. Blumenthal
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgebort, CT 06604
<wbloss@koskoff.com>
<mblumenthal@koskoff.com>

*Attorneys for Plaintiffs*

Stephen P. Brown
WILSON ELSER MOSKOWITZ
 EDELMAN & DICKER
1010 Washington Blvd., 8th Floor
Stamford, CT 06901
<stephen.brown@wilsonelser.com>

*Attorney for Defendant*
*Midas Resources, Inc.*

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Lawrence L. Connelli
REGNIER TAYLOR CURRAN & EDDY
100 Pearl Street, 4th Floor
Hartford, Connecticut 06103
<LConnelli@rtcelaw.com>

*Attorney for Defendant*
*Cory T. Sklanka*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*

/s/ Jay M. Wolman
Jay M. Wolman

- 2 -

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

ERICA LAFFERTY; DAVID WHEELER;     :
FRANCINE WHEELER; JACQUELINE       :
BARDEN; MARK BARDEN; NICOLE        :
HOCKLEY; IAN HOCKLEY; JENNIFER     :
HENSEL; JEREMY RICHMAN; DONNA      :    Case No. 3:18-cv-01156
SOTO; CARLEE SOTO-PARISI; CARLOS   :
M. SOTO; JILLIAN SOTO; and WILLIAM :
ALDENBERG,                         :
                                   :
      Plaintiffs,                  :    July 13, 2018
                                   :
      v.                           :
                                   :
ALEX EMRIC JONES; INFOWARS, LLC;   :
FREE SPEECH SYSTEMS, LLC;          :
INFOWARS HEALTH, LLC; PRISON       :
PLANET TV, LLC; WOLFGANG           :
HALBIG; CORY T. SKLANKA; GENESIS   :
COMMUNICATIONS NETWORK, INC.;      :
and MIDAS RESOURCES, INC.,         :
                                   :
      Defendants.                  :

## DEFENDANT PRISON PLANET TV, LLC'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. Civ. P. 7.1, Defendant Prison Planet TV, LLC discloses that it has no parent

and that no publicly held corporation owns 10% of more of its stock.

Dated: July 13, 2018.        Respectfully submitted,

        /s/ Jay M. Wolman
        Jay M. Wolman, ct29129
        RANDAZZA LEGAL GROUP, PLLC
        100 Pearl Street, 14th Floor
        Hartford, Connecticut 06103
        Tel:  702-420-2001
        ecf@randazza.com

        Marc J. Randazza, *pro hac vice* forthcoming
        RANDAZZA LEGAL GROUP, PLLC
        2764 Lake Sahara Drive, Suite 109
        Las Vegas, Nevada 89117
        Tel:  702-420-2001
        ecf@randazza.com

        *Attorneys for Infowars Defendants*

- 1 -

Case No. 3:18-cv-01156

## CERTIFICATE OF SERVICE

I hereby certify that, on this 13th day of July 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

William M. Bloss
Matthew S. Blumenthal
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgebort, CT 06604
<wbloss@koskoff.com>
<mblumenthal@koskoff.com>

*Attorneys for Plaintiffs*

Stephen P. Brown
WILSON ELSER MOSKOWITZ
  EDELMAN & DICKER
1010 Washington Blvd., 8th Floor
Stamford, CT 06901
<stephen.brown@wilsonelser.com>

*Attorney for Defendant*
*Midas Resources, Inc.*

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Lawrence L. Connelli
REGNIER TAYLOR CURRAN & EDDY
100 Pearl Street, 4th Floor
Hartford, Connecticut 06103
<LConnelli@rtcelaw.com>

*Attorney for Defendant*
*Cory T. Sklanka*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*

/s/ Jay M. Wolman
Jay M. Wolman

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG, | : : : : : : : : : : : | Case No. 3:18-cv-01156 |
| Plaintiffs, | : : | July 13, 2018 |
| v. | : : : | |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | : : : : : : : : : | |
| Defendants. | : : | |

## NOTICE OF PENDING MOTIONS

Pursuant to the Standing Order on Removed Cases, Defendant Alex Emric Jones hereby gives notice of pending motions that require action by a Judge of this Court, specifically that Defendant Wolfgang Halbig filed a Motion to Dismiss on April 12, 2018, a true and correct copy of which is attached hereto as Exhibit A. No other papers were yet filed in support or in opposition to that motion. There are no other pending motions that require action by a Judge of this Court.

Dated: July 13, 2018.  Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: 702-420-2001
ecf@randazza.com

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
ecf@randazza.com

*Attorneys for Infowars Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 13th day of July 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

William M. Bloss
Matthew S. Blumenthal
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgebort, CT 06604
<wbloss@koskoff.com>
<mblumenthal@koskoff.com>

*Attorneys for Plaintiffs*

Stephen P. Brown
WILSON ELSER MOSKOWITZ
   EDELMAN & DICKER
1010 Washington Blvd., 8th Floor
Stamford, CT 06901
<stephen.brown@wilsonelser.com>

*Attorney for Defendant*
*Midas Resources, Inc.*

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Lawrence L. Connelli
REGNIER TAYLOR CURRAN & EDDY
100 Pearl Street, 4th Floor
Hartford, Connecticut 06103
<LConnelli@rtcelaw.com>

*Attorney for Defendant*
*Cory T. Sklanka*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*

/s/ Jay M. Wolman
Jay M. Wolman

# EXHIBIT A

Halbig's Motion to Dismiss, With Legal
Authority Incorporated

*Lafferty, et al., v. Jones, et al.*
Judicial District of Fairfield
Dkt. No. FBT-CV-18-6075078-S
July 12, 2018

OF THE CLERK
SUPERIOR COURT
2018 JUL 12 PH 2:00
JUDICIAL DISTRICT OF
FAIRFIELD AT BRIDGEPORT
STATE OF CONNECTICUT

ERICA LAFFERTY, et al.,      )   JUDICIAL DISTRICT

    Plaintiffs,           )

                        )   OF FAIRFIELD

vs.                 )

                        )   AT BRIDGEPORT, CONNECTICUT

                        )

ALEX JONES, et al.,        )   **CASE NO:  FBT-CV18-6075078-S**

                        )

    Defendants.          )

---

## HALBIG'S MOTION TO DISMISS, WITH LEGAL AUTHORITY INCORPORATED

Defendant Wolfgang Halbig, a resident of the State of Florida, pro se and in the first person henceforth, hereby files his Motion to Dismiss, with Legal Authority Incorporated, based both on lack of personal jurisdiction and lack of subject matter jurisdiction.

I.    *The complaint must be dismissed for lack of personal jurisdiction.*

In *Pronovost v. Tierney*, 174 Conn. App. 368, 166 A.2d 852 (2017), the Connecticut appellate court reviewed the two-part test for determining whether it had personal jurisdiction over a nonresident defendant. The first part of the test involves application of Connecticut's long-arm statute, which states in pertinent part as follows:

> **Sec. 52-59b. Jurisdiction of courts over nonresident individuals, foreign partnerships and foreign voluntary associations. Service of process.** (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual... who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, *except as to a cause of action for defamation of character arising from the act*; (3) commits a tortious act outside the state causing injury to person or property within the state, *except as to a cause of action for defamation of character arising from the act*, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or

1

104

international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

(Emphasis added.) Plaintiffs have not alleged I own, use, or possess any real property situated within Connecticut, nor that I have used a computer or computer network located within the state. Thus, grounds (4) and (5) are inapplicable.

As to grounds (2) and (3), as can be seen from the italicized language the long-arm statute excludes jurisdiction over me for any cause of action related to defamation. Count II, defamation and defamation per se, is automatically excluded from the court's jurisdiction under the long-arm statute, therefore, and the other four counts are, as well, being derivative of or functionally equivalent to defamation: Count I, false light invasion of privacy (based on "outrageous lies about the plaintiffs that represented … major misrepresentations of the plaintiffs' character, history, activities, or beliefs"); Count III, intentional infliction of emotional distress (based on "outrageous and false statements about the plaintiffs"); Count IV, negligent infliction of emotional distress (based on "malicious lies"); and Count V (based on the "dissemination of lies" under the Connecticut Unfair Trade Practices Act). These counts may not be maintained against me, per the express terms of the long-arm statute. Although Counts I through IV also include claims of civil conspiracy, the conspiracy is dependent on the tort of defamation. It is not independently actionable. *Weissman v. Koskoff, Koskoff & Bieder, P.C.*, Superior Court, judicial district of Hartford, Docket No. CV–10–6012922–S, 2011 WL 590461 (January 19, 2011), *aff'd*, 136 Conn.App. 557, 46 A.3d 943 (2012).

The only ground which is left to justify personal jurisdiction over me is "(1) transacts any business in the state." Plaintiffs have failed to allege that I have transacted any business in the

2

State of Connecticut. Delivering testimony to a school board, contacting residents of a Connecticut city, and filing requests for public records under Connecticut statutory law do not constitute the transaction of business. Although par. 63 alleges I have "raised more than $100,000, largely on GoFundMe.com, for [my] activities," there is nothing to suggest that "my activities" involve the transaction of business. Instead, they constitute the exercise of my rights of free association and speech under the First Amendment to the United States Constitution, including petitioning the government for redress of grievances.

As in *Provonost*, the analysis under Connecticut's long-arm statute is sufficient to determine that the court lacks personal jurisdiction over me. The case against me must be dismissed with prejudice.

*II. The complaint must be dismissed for lack of subject matter jurisdiction, since the plaintiffs lack standing to sue.*

As mentioned, Plaintiffs' complaint contains five claims against me, all of which are defamation or its functional equivalent: they rely on the falsity of my statements about the plaintiffs.

Due process requires that defamation be pleaded with specificity. A plaintiff must specifically allege what defamatory statements were made, by whom, and to whom. Imprecise pleading is not permitted. *Stevens v. Helming*, 163 Conn. App. 241 (2016). In *Stevens*, the court examined whether a claim by the plaintiff that a statement the defendant had made, referred to as the "one-to-five year allegation," had been specifically pleaded. To support its finding that it was not, in fn. 3 it recited a litany of Superior Court holdings it found persuasive:

> A claim of [defamation] must be *pl[eaded] with specificity, as the precise meaning and choice of words employed is a crucial factor* in any evaluation of falsity. The allegations should set forth facts ... sufficient to apprise the defendant of the claim made against

3

him.... [*A*] *complaint for defamation must, on its face, specifically identify what allegedly defamatory statements were made, by whom, and to whom....*" *Chertkova v. Connecticut General Life Ins. Co.*, Superior Court, judicial district of New Britain, Docket No. CV–98–0486346–S, 2002 WL 1902988 (July 12, 2002), *aff'd*, 76 Conn.App. 907, 822 A.2d 372 (2003); see also *Weissman v. Koskoff, Koskoff & Bieder, P.C.*, [*supra*],; *Crosby v. HSBC North American Holdings, Inc.*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV–06–5000378–S, 2007 WL 1599848 (May 16, 2007). ...

(Emphasis added.) The same standard applies to false light invasion of privacy, as *Weissman*, *supra*, held. The *Weissman* case is of particular interest, since the defendant law firm Koskoff, Koskoff & Bieder, P.C., represents the plaintiffs in the present case. Its motion for summary judgment on the ground that the claims of defamation and false light invasion of privacy made by its former employee—a smear campaign which closed all doors on possible future employment—were not specific enough was granted. Koskoff has committed the same fault in this case, and dismissal--by the precedent it advanced and won on in *Weissman*--is warranted.

Finally, in *Parnoff v. Mooney*, 2008 WL 1822778 (unpublished), at 3, the superior court for the District of Fairfield said, "Although the plaintiff alleges that 'the defendant caus[ed] to be published, on one or more occasions, to one or more parties, false, libelous and derogatory information concerning the plaintiff, the effect of which was to impugn the plaintiff's reputation, general competence and integrity in the operation of his business and the practice of his profession' ... [t]he plaintiff does not adequately specify anything." The court thus struck the defamation count.

The plaintiffs in the present case have similarly failed to meet the standard of specificity. Nowhere in their complaint do they set forth any actual statement alleged to be defamatory—and the choice of words is crucial--or identify when or to whom I made it. For example, at par. 59 of the Complaint, they allege I have:

4

...made more than 22 trips to Connecticut relating to the allegations of this Complaint, including delivering highly confrontational testimony before the Newtown Board of Education....

"Relating to the allegations of this Complaint" does not meet the standard, since it does not specify what words were used, nor does "confrontational" mean "false," nor is any specific statement recited.

At par. 58, they say, "On numerous occasions, [Defendant Alex] Jones has hosted on his show Wolfgang Halbig, a self-styled investigator who is amongst the most prominent of those people who falsely claim that the Sandy Hook shooting was a hoax." This is also a general statement which does not refer to any of the plaintiffs by name. Although Plaintiffs recite a statement, at par. 67, which someone connected to me supposedly made to Leonard Pozner ("Wolfgang does not wish to speak with you unless you exhume Noah's body and prove to the world you lost your son"), not only is Leonard Pozner not a plaintiff in this suit, but I am not even the one who made the statement.[1] The United States Supreme Court has held, as a matter of First Amendment law, that a statement must be "of and concerning" the plaintiff for that individual to bring a defamation claim over that statement. *Rosenblatt v. Baer*, 383 U.S. 75, 81 (1966); *New York Times v. Sullivan*, 376 U.S. 254, 289 (1964).

At par. 71(A), Plaintiffs allege that my website accused Jeremy Richman, father of Avielle Richman, of "having fabricated his daughter's identity and faked her death 'to steal money from hard-working Americans.'" At par. 71(B), they say the website "further stated that Jeremy Richman and Jennifer Hensel continue to deceive and defraud the American public and collect donations for the Avielle foundation, for Avielle Richman, claiming she is dead, when in

---

[1] For the court's information, Leonard Pozner sued me in district court in Florida, but never appeared, even when ordered by the court to submit to a deposition. Thus, his case was dismissed.

5

reality she is alive and was never their daughter." At par. 71(D) they say the website published images, text, and video asserting that plaintiffs William Aldenberg and David Wheeler are the same person, who is a crisis actor. These are the only statements set forth which refer to any of the plaintiffs by name; but because no date is provided, they too fail the test of specificity.[2] Lastly, at paragraphs 139 and 140, referring to an appearance I made on Alex Jones's show on May 13, 2014, I am quoted as saying "Children did not die, teachers did not die, on December 14, 2012," and "Sandy Hook, a school massacre, the biggest illusion ever portrayed by Homeland Security and FEMA." Again none of the plaintiffs are referred to by name.

A review of the Complaint turns up no other allegations that even arguably set forth statements about any of the plaintiffs personally, let alone meet the requirements of specificity. This means they have not adequately alleged injury personal to themselves, so lack standing to sue. The same is true also in connection with their claims of intentional and negligent infliction of emotional distress, to the extent they might be construed as not relying simply on false statements: the only allegation I can find which arguably supports the claims of emotional distress is the one that I "filmed and harassed children families [sic] at the St. Rose of Lima church in Newtown, Connecticut, on June 2, 2015." Par. 60. Even if true (and of course I dispute that it is), they do not say that *they* were filmed and harassed. An allegation of injury to third persons does not confer standing on the plaintiffs.

Plaintiffs' lack of standing means that this court lacks subject matter jurisdiction over the suit against me, as a matter of hornbook law. "Standing is '[t]he requisite personal interest that must exist at the commencement of the litigation.'"" *Pharmacia Corp. v. Suggs*, 932 So. 2d 95,

---

[2] The plaintiffs even note, at par. 71(E), that the website was taken down in August 2016, two years ago.

6

98 (Ala. 2005). When a statement is not "of and concerning" the plaintiff he lacks standing to sue. *Vice v. Kasprzak*, 318 S.W. 3d 1, 14 (Tex. App. 2009); *Marshall Investments Corp. v. R.P. Carbone Co.*, 2006 WL 2644959, at *4 (E.D. La. Sept. 13, 2006). The plaintiffs' lack of standing means this court lacks subject matter jurisdiction to hear the case, and it must be dismissed.

Dated this ₁ₒ day of July, 2018.

BY DEFENDANT HALBIG PRO SE:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL  32776

## CERTIFICATE OF SERVICE

I certify, by my signature below, that I have served the foregoing "Halbig's Motion to Dismiss, with Legal Authority Incorporated" on the other parties this ___ day of July, 2018, by email to, and by depositing a copy in the U.S. mail, postage prepaid, addressed as follows:

William M. Bloss, Esq.
Matthew S. Blumenthal, Esq.
Koskoff Koskoff & Bieder
350 Fairfield Ave.
Bridgeport, CT  06604

Jay Marshall Wolman (433791)
100 Pearl Street
14th Floor
Hartford, Ct 06103

Regnier Taylor Curran & Eddy (049254)
100 Pearl Street
4th Floor
Hartford, Ct 06103

Wilson Elser Moskowitz Edelman & Dicker (412712)
1010 Washington Blvd

7

8th Floor
Stamford, Ct 06901

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG, | : | |
| Plaintiffs, | : | Case No. 3:18-cv-01156 |
| v. | : | July 13, 2018 |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | : | |
| Defendants. | : | |

## STATEMENT PURSUANT TO STANDING ORDER ON REMOVED CASES

Pursuant to the Standing Order on Removed Cases, Defendant Alex Emric Jones, who removed the instant action to this Court pursuant to 28 U.S.C. § 1441, hereby files and serves the following signed statement, setting forth the following information:

**1. The date on which each defendant first received a copy of the summons and complaint in the state court action.**

Defendant hereby states that, upon information and belief, each defendant first received a copy on the following dates:

    (a)    <u>Alex Emric Jones:</u>  June 13, 2013

    (b)    <u>Infowars, LLC:</u>

    (c)    <u>Free Speech Systems, LLC:</u>

    (d)    <u>Infowars Health, LLC:</u>

    (e)    <u>Prison Planet TV, LLC:</u>

    (f)    <u>Wolfgang Halbig:</u>  May 26, 2018

    (g)      Cory T. Sklanka:

    (h)      Genesis Communications Network, Inc.:  May 29, 2018

    (i)      Midas Resources, Inc.:  May 25, 2018

**2.      The date on which each defendant was served with a copy of the summons and complaint, if any of those dates are different from the dates set forth in item 1.**

Defendant hereby states that, upon information and belief, each defendant was served on the following dates:

    (a)      Alex Emric Jones:  June 13, 2013

    (b)      Infowars, LLC:  May 23, 2018

    (c)      Free Speech Systems, LLC:  May 23, 2018

    (d)      Infowars Health, LLC:  May 23, 2018

    (e)      Prison Planet TV, LLC:  May 23, 2018

    (f)      Wolfgang Halbig:  May 23, 2018

    (g)      Cory T. Sklanka:  May 23, 2018

    (h)      Genesis Communications Network, Inc.:  May 23, 2018

    (i)      Midas Resources, Inc.:  May 23, 2018

**3.      In diversity cases, whether any defendant who has been served is a citizen of Connecticut. Also, if any party is a partnership, limited liability partnership or limited liability company or corporation, the citizenship of each partner, general partner, limited partner and member, and if any such partner, general partner, limited partner or member is itself a partnership, limited liability partnership or limited liability company or corporation, the citizenship of each member.**

Connecticut Citizenship:

Defendant Cory T. Sklanka is an improperly joined citizen of Connecticut.

Corporate Citizenship:

    (a)      Infowars, LLC:  The sole member of this defendant is Alex Jones, a citizen of Texas.

    (b)      Free Speech Systems, LLC:  The sole member of this defendant is Alex Jones, a citizen of Texas.

     (c)       <u>Infowars Health, LLC:</u>  The sole member of this defendant is Alex Jones, a citizen of Texas.

     (d)       <u>Prison Planet TV, LLC:</u>  The sole member of this defendant is Alex Jones, a citizen of Texas.

     (e)       <u>Genesis Communications Network, Inc.:</u>  Upon information and belief, this defendant is wholly owned by Ted Anderson, a citizen of Minnesota.

     (f)       <u>Midas Resources, Inc.:</u>  Upon information and belief, this defendant is wholly owned by Ted Anderson, a citizen of Minnesota.

**4.**    **If removal takes place more than thirty (30) days after any defendant first received a copy of the summons and complaint, the reasons why removal has taken place at this time.**

Removal has taken place within 30 days of receipt by Defendant Jones of the copy of the summons and complaint.  Such is timely as "district courts in this Circuit have generally applied the last-served defendant rule, in which defendants have thirty days from the date that the last defendant is served to file a notice of removal." Barnhart v. Federated Dep't Stores, Inc., No. 04 CIV. 3668 (JGK), 2005 U.S. Dist. LEXIS 3631, 2005 WL 549712, at \*6 (S.D.N.Y. Mar. 8, 2005).

**5.**    **The name of any defendant served prior to the filing of the notice of removal who has not formally joined in the notice of removal and the reasons why any such defendant did not join in the notice of removal.**

Defendant states that Cory T. Sklanka did not formally consent to the removal.  As an improperly joined defendant, his consent is not required.  *See, e.g., In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 295 (S.D.N.Y. 2001).

**6.**    **For each party, list the name and firm name of all counsel of record for that party or state that the party is self-represented.**

Defendant hereby states as follows:

<u>For All Plaintiffs:</u>    William M. Bloss, Koskoff Koskoff & Bieder

                      Matthew S. Blumenthal, Koskoff Koskoff & Bieder

For Defendants:

(a)     <u>Alex Emric Jones:</u>  Jay M. Wolman of Randazza Legal Group, PLLC

(b)     <u>Infowars, LLC:</u>  Jay M. Wolman of Randazza Legal Group, PLLC

(c)     <u>Free Speech Systems, LLC:</u>  Jay M. Wolman of Randazza Legal Group, PLLC

(d)     <u>Infowars Health, LLC:</u>  Jay M. Wolman of Randazza Legal Group, PLLC

(e)     <u>Prison Planet TV, LLC:</u>  Jay M. Wolman of Randazza Legal Group, PLLC

(f)     <u>Wolfgang Halbig:</u>  Self-Represented

(g)     <u>Cory T. Sklanka:</u>  Lawrence Connelli, Regnier Taylor Curran & Eddy

(h)     <u>Genesis Communications Network, Inc.:</u>  Self-Represented

(i)     <u>Midas Resources, Inc.:</u>  Stephen Brown, Wilson Elser Moskowitz Edelman & Dicker

Dated: July 13, 2018.

Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel:  702-420-2001
Fax:  305-437-7662
ecf@randazza.com

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel:  702-420-2001
Fax:  305-437-7662
ecf@randazza.com

*Attorneys for Infowars Defendants*

- 4 -

Case No. 3:18-cv-01156

## CERTIFICATE OF SERVICE

I hereby certify that, on this 13th day of July 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

William M. Bloss
Matthew S. Blumenthal
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgebort, CT 06604
<wbloss@koskoff.com>
<mblumenthal@koskoff.com>

*Attorneys for Plaintiffs*

Stephen P. Brown
WILSON ELSER MOSKOWITZ
  EDELMAN & DICKER
1010 Washington Blvd., 8th Floor
Stamford, CT 06901
<stephen.brown@wilsonelser.com>

*Attorney for Defendant*
*Midas Resources, Inc.*

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Lawrence L. Connelli
REGNIER TAYLOR CURRAN & EDDY
100 Pearl Street, 4th Floor
Hartford, Connecticut 06103
<LConnelli@rtcelaw.com>

*Attorney for Defendant*
*Cory T. Sklanka*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*

/s/ Jay M. Wolman
Jay M. Wolman

- 5 -

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG,

Plaintiffs,

v.

ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC.,

Defendants.

Case No. 3:18-cv-01156

July 13, 2018

**NOTICE OF ERRATA TO STATEMENT PURSUANT TO**
**STANDING ORDER ON REMOVED CASES [DKT. NO. 7]**

PLEASE TAKE NOTICE that Defendant Alex Emric Jones hereby files this Notice of Errata to his Statement Pursuant to Standing Order on Removed Cases [Dkt. No. 7] as follows:

Section # 2 reads "Defendant hereby states that, upon information and belief, each defendant was served on the following dates:". This section should read "Defendant hereby states that, upon information and belief, each defendant was allegedly served on the following dates:".

The word "allegedly" was unintentionally omitted. Defendants do not admit that service on any defendant was valid.

Dated: July 13, 2018.

Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: 702-420-2001
ecf@randazza.com

- 1 -

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel:   702-420-2001
ecf@randazza.com

*Attorneys for Infowars Defendants*

Case No. 3:18-cv-01156

## CERTIFICATE OF SERVICE

I hereby certify that, on this 13th day of July 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

William M. Bloss
Matthew S. Blumenthal
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgebort, CT 06604
<wbloss@koskoff.com>
<mblumenthal@koskoff.com>

*Attorneys for Plaintiffs*

Stephen P. Brown
WILSON ELSER MOSKOWITZ
  EDELMAN & DICKER
1010 Washington Blvd., 8th Floor
Stamford, CT 06901
<stephen.brown@wilsonelser.com>

*Attorney for Defendant
Midas Resources, Inc.*

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Lawrence L. Connelli
REGNIER TAYLOR CURRAN & EDDY
100 Pearl Street, 4th Floor
Hartford, Connecticut 06103
<LConnelli@rtcelaw.com>

*Attorney for Defendant
Cory T. Sklanka*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant
Genesis Communications Network, Inc.*

/s/ Jay M. Wolman
Jay M. Wolman

- 3 -

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG, | : : : : : : : : : : : | Case No. 3:18-cv-01156 |
| Plaintiffs, | : : : | July 13, 2018 |
| v. | : : | |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | : : : : : : : : | |
| Defendants. | : | |

**NOTICE OF FILING SUPPLEMENTAL RETURN**

PLEASE TAKE NOTICE that Defendant Alex Emric Jones hereby files as Exhibit A the Supplemental Return dated July 2, 2018, filed on July 13, 2018 in the Superior Court, Judicial District of Fairfield at Bridgeport, Connecticut in the matter of *Lafferty, et al., v. Jones, et al.*, Case No. Case No. FBT-CV18-6075078-S. Such was unintentionally omitted when the Notice of Removal was filed.

Dated: July 13, 2018.

Respectfully submitted,
/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: 702-420-2001
ecf@randazza.com

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
ecf@randazza.com
*Attorneys for Infowars Defendants*

- 1 -

Case No. 3:18-cv-01156

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 13th day of July 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

William M. Bloss
Matthew S. Blumenthal
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgebort, CT 06604
<wbloss@koskoff.com>
<mblumenthal@koskoff.com>

*Attorneys for Plaintiffs*

Stephen P. Brown
WILSON ELSER MOSKOWITZ
  EDELMAN & DICKER
1010 Washington Blvd., 8th Floor
Stamford, CT 06901
<stephen.brown@wilsonelser.com>

*Attorney for Defendant*
*Midas Resources, Inc.*

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Lawrence L. Connelli
REGNIER TAYLOR CURRAN & EDDY
100 Pearl Street, 4th Floor
Hartford, Connecticut 06103
<LConnelli@rtcelaw.com>

*Attorney for Defendant*
*Cory T. Sklanka*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*

/s/ Jay M. Wolman
Jay M. Wolman

- 2 -

# EXHIBIT A

Supplemental Return

*Lafferty, et al., v. Jones, et al.*
Judicial District of Fairfield
Dkt. No. FBT-CV-18-6075078-S
July 13, 2018

STATE OF CONNECTICUT :
                   : SS:  ROCKY HILL            JULY 2, 2018
COUNTY OF HARTFORD  :

RE: ERICA LAFFERTY, ET AL
VS: ALEX EMRIC JONES, ET AL

### SUPPLEMENTAL RETURN

     I received the enclosed envelope, returned from the U.S. Post Office, addressed to the within named Defendant:

ALEX EMRIC JONES

Marked: Not Deliverable as Addressed, Unable to Forward, on the 29th day of June, 2018.

ATTEST:

_Barbara Coffey_
BARBARA COFFEY
CONNECTICUT STATE MARSHAL
HARTFORD COUNTY



## USPS CERTIFIED MAIL™

B. Coffey
PO BOX 497
SOUTH GLASTONBURY CT 06073-0497

US POSTAGE AND FEES PAID

**FIRST-CLASS**
May 23 2018
Mailed from ZIP 06073
6 oz First-Class Mail Flat Rate

CID: 77569

071S00534813

endicia.com

### USPS CERTIFIED MAIL

9414 8106 9994 5031 6860 29

Alex Emric Jones
15101 BACK OF THE MOON ST
AUSTIN TX 78734-1731

RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

Simple Certified Mail

# EXHIBIT A

Halbig's Motion to Dismiss, With Legal
Authority Incorporated

*Lafferty, et al., v. Jones, et al.*
Judicial District of Fairfield
Dkt. No. FBT-CV-18-6075078-S
July 12, 2018

OF THE CLERK
SUPERIOR COURT

2018 JUL 12 PH 2:00

JUDICIAL DISTRICT OF
FAIRFIELD AT BRIDGEPORT
STATE OF CONNECTICUT

| | | |
|---|---|---|
| ERICA LAFFERTY, et al., | ) | JUDICIAL DISTRICT |
| | ) | |
| Plaintiffs, | ) | |
| | ) | OF FAIRFIELD |
| vs. | ) | |
| | ) | AT BRIDGEPORT, CONNECTICUT |
| | ) | |
| ALEX JONES, et al., | ) | CASE NO:  FBT-CV18-6075078-S |
| | ) | |
| Defendants. | ) | |

---

## HALBIG'S MOTION TO DISMISS, WITH LEGAL AUTHORITY INCORPORATED

---

Defendant Wolfgang Halbig, a resident of the State of Florida, pro se and in the first person henceforth, hereby files his Motion to Dismiss, with Legal Authority Incorporated, based both on lack of personal jurisdiction and lack of subject matter jurisdiction.

I. *The complaint must be dismissed for lack of personal jurisdiction.*

In *Pronovost v. Tierney*, 174 Conn. App. 368, 166 A.2d 852 (2017), the Connecticut appellate court reviewed the two-part test for determining whether it had personal jurisdiction over a nonresident defendant. The first part of the test involves application of Connecticut's long-arm statute, which states in pertinent part as follows:

> **Sec. 52-59b. Jurisdiction of courts over nonresident individuals, foreign partnerships and foreign voluntary associations. Service of process.** (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual… who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, *except as to a cause of action for defamation of character arising from the act*; (3) commits a tortious act outside the state causing injury to person or property within the state, *except as to a cause of action for defamation of character arising from the act*, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or

1

104

international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

(Emphasis added.) Plaintiffs have not alleged I own, use, or possess any real property situated within Connecticut, nor that I have used a computer or computer network located within the state. Thus, grounds (4) and (5) are inapplicable.

As to grounds (2) and (3), as can be seen from the italicized language the long-arm statute excludes jurisdiction over me for any cause of action related to defamation. Count II, defamation and defamation per se, is automatically excluded from the court's jurisdiction under the long-arm statute, therefore, and the other four counts are, as well, being derivative of or functionally equivalent to defamation: Count I, false light invasion of privacy (based on "outrageous lies about the plaintiffs that represented ... major misrepresentations of the plaintiffs' character, history, activities, or beliefs"); Count III, intentional infliction of emotional distress (based on "outrageous and false statements about the plaintiffs"); Count IV, negligent infliction of emotional distress (based on "malicious lies"); and Count V (based on the "dissemination of lies" under the Connecticut Unfair Trade Practices Act). These counts may not be maintained against me, per the express terms of the long-arm statute. Although Counts I through IV also include claims of civil conspiracy, the conspiracy is dependent on the tort of defamation. It is not independently actionable. *Weissman v. Koskoff, Koskoff & Bieder, P.C.,* Superior Court, judicial district of Hartford, Docket No. CV–10–6012922–S, 2011 WL 590461 (January 19, 2011), *aff'd*, 136 Conn.App. 557, 46 A.3d 943 (2012).

The only ground which is left to justify personal jurisdiction over me is "(1) transacts any business in the state." Plaintiffs have failed to allege that I have transacted any business in the

2

State of Connecticut. Delivering testimony to a school board, contacting residents of a Connecticut city, and filing requests for public records under Connecticut statutory law do not constitute the transaction of business. Although par. 63 alleges I have "raised more than $100,000, largely on GoFundMe.com, for [my] activities," there is nothing to suggest that "my activities" involve the transaction of business. Instead, they constitute the exercise of my rights of free association and speech under the First Amendment to the United States Constitution, including petitioning the government for redress of grievances.

As in *Provonost*, the analysis under Connecticut's long-arm statute is sufficient to determine that the court lacks personal jurisdiction over me. The case against me must be dismissed with prejudice.

*II. The complaint must be dismissed for lack of subject matter jurisdiction, since the plaintiffs lack standing to sue.*

As mentioned, Plaintiffs' complaint contains five claims against me, all of which are defamation or its functional equivalent: they rely on the falsity of my statements about the plaintiffs.

Due process requires that defamation be pleaded with specificity. A plaintiff must specifically allege what defamatory statements were made, by whom, and to whom. Imprecise pleading is not permitted. *Stevens v. Helming*, 163 Conn. App. 241 (2016). In *Stevens*, the court examined whether a claim by the plaintiff that a statement the defendant had made, referred to as the "one-to-five year allegation," had been specifically pleaded. To support its finding that it was not, in fn. 3 it recited a litany of Superior Court holdings it found persuasive:

> A claim of [defamation] must be *pl[eaded] with specificity, as the precise meaning and choice of words employed is a crucial factor* in any evaluation of falsity. The allegations should set forth facts ... sufficient to apprise the defendant of the claim made against

3

him.... [*A*] *complaint for defamation must, on its face, specifically identify what allegedly defamatory statements were made, by whom, and to whom....*" *Chertkova v. Connecticut General Life Ins. Co.,* Superior Court, judicial district of New Britain, Docket No. CV-98-0486346-S, 2002 WL 1902988 (July 12, 2002), *aff'd,* 76 Conn.App. 907, 822 A.2d 372 (2003); see also *Weissman v. Koskoff, Koskoff & Bieder, P.C.,* [*supra*],; *Crosby v. HSBC North American Holdings, Inc.,* Superior Court, judicial district of Ansonia-Milford, Docket No. CV-06-5000378-S, 2007 WL 1599848 (May 16, 2007). ...

(Emphasis added.) The same standard applies to false light invasion of privacy, as *Weissman, supra,* held. The *Weissman* case is of particular interest, since the defendant law firm Koskoff, Koskoff & Bieder, P.C., represents the plaintiffs in the present case. Its motion for summary judgment on the ground that the claims of defamation and false light invasion of privacy made by its former employee—a smear campaign which closed all doors on possible future employment—were not specific enough was granted. Koskoff has committed the same fault in this case, and dismissal--by the precedent it advanced and won on in *Weissman*--is warranted.

Finally, in *Parnoff v. Mooney,* 2008 WL 1822778 (unpublished), at 3, the superior court for the District of Fairfield said, "Although the plaintiff alleges that 'the defendant caus[ed] to be published, on one or more occasions, to one or more parties, false, libelous and derogatory information concerning the plaintiff, the effect of which was to impugn the plaintiff's reputation, general competence and integrity in the operation of his business and the practice of his profession' ... [t]he plaintiff does not adequately specify anything." The court thus struck the defamation count.

The plaintiffs in the present case have similarly failed to meet the standard of specificity. Nowhere in their complaint do they set forth any actual statement alleged to be defamatory—and the choice of words is crucial--or identify when or to whom I made it. For example, at par. 59 of the Complaint, they allege I have:

4

Case 3:18-cv-01156-JCH Document 11 Filed 07/15/18 Page 6 of 9

> ...made more than 22 trips to Connecticut relating to the allegations of this Complaint, including delivering highly confrontational testimony before the Newtown Board of Education....

"Relating to the allegations of this Complaint" does not meet the standard, since it does not specify what words were used, nor does "confrontational" mean "false," nor is any specific statement recited.

At par. 58, they say, "On numerous occasions, [Defendant Alex] Jones has hosted on his show Wolfgang Halbig, a self-styled investigator who is amongst the most prominent of those people who falsely claim that the Sandy Hook shooting was a hoax." This is also a general statement which does not refer to any of the plaintiffs by name. Although Plaintiffs recite a statement, at par. 67, which someone connected to me supposedly made to Leonard Pozner ("Wolfgang does not wish to speak with you unless you exhume Noah's body and prove to the world you lost your son"), not only is Leonard Pozner not a plaintiff in this suit, but I am not even the one who made the statement.[1] The United States Supreme Court has held, as a matter of First Amendment law, that a statement must be "of and concerning" the plaintiff for that individual to bring a defamation claim over that statement. *Rosenblatt v. Baer*, 383 U.S. 75, 81 (1966); *New York Times v. Sullivan*, 376 U.S. 254, 289 (1964).

At par. 71(A), Plaintiffs allege that my website accused Jeremy Richman, father of Avielle Richman, of "having fabricated his daughter's identity and faked her death 'to steal money from hard-working Americans.'" At par. 71(B), they say the website "further stated that Jeremy Richman and Jennifer Hensel continue to deceive and defraud the American public and collect donations for the Avielle foundation, for Avielle Richman, claiming she is dead, when in

---

[1] For the court's information, Leonard Pozner sued me in district court in Florida, but never appeared, even when ordered by the court to submit to a deposition. Thus, his case was dismissed.

reality she is alive and was never their daughter." At par. 71(D) they say the website published images, text, and video asserting that plaintiffs William Aldenberg and David Wheeler are the same person, who is a crisis actor. These are the only statements set forth which refer to any of the plaintiffs by name; but because no date is provided, they too fail the test of specificity.[2] Lastly, at paragraphs 139 and 140, referring to an appearance I made on Alex Jones's show on May 13, 2014, I am quoted as saying "Children did not die, teachers did not die, on December 14, 2012," and "Sandy Hook, a school massacre, the biggest illusion ever portrayed by Homeland Security and FEMA." Again none of the plaintiffs are referred to by name.

A review of the Complaint turns up no other allegations that even arguably set forth statements about any of the plaintiffs personally, let alone meet the requirements of specificity. This means they have not adequately alleged injury personal to themselves, so lack standing to sue. The same is true also in connection with their claims of intentional and negligent infliction of emotional distress, to the extent they might be construed as not relying simply on false statements: the only allegation I can find which arguably supports the claims of emotional distress is the one that I "filmed and harassed children families [sic] at the St. Rose of Lima church in Newtown, Connecticut, on June 2, 2015." Par. 60. Even if true (and of course I dispute that it is), they do not say that *they* were filmed and harassed. An allegation of injury to third persons does not confer standing on the plaintiffs.

Plaintiffs' lack of standing means that this court lacks subject matter jurisdiction over the suit against me, as a matter of hornbook law. "Standing is '[t]he requisite personal interest that must exist at the commencement of the litigation.'''" *Pharmacia Corp. v. Suggs*, 932 So. 2d 95,

---

[2] The plaintiffs even note, at par. 71(E), that the website was taken down in August 2016, two years ago.

6

98 (Ala. 2005). When a statement is not "of and concerning" the plaintiff he lacks standing to sue. *Vice v. Kasprzak*, 318 S.W. 3d 1, 14 (Tex. App. 2009); *Marshall Investments Corp. v. R.P. Carbone Co.*, 2006 WL 2644959, at *4 (E.D. La. Sept. 13, 2006). The plaintiffs' lack of standing means this court lacks subject matter jurisdiction to hear the case, and it must be dismissed.

Dated this ＿ day of July, 2018.

BY DEFENDANT HALBIG PRO SE:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL   32776

## CERTIFICATE OF SERVICE

I certify, by my signature below, that I have served the foregoing "Halbig's Motion to Dismiss, with Legal Authority Incorporated" on the other parties this ＿ day of July, 2018, by email to, and by depositing a copy in the U.S. mail, postage prepaid, addressed as follows:

William M. Bloss, Esq.
Matthew S. Blumenthal, Esq.
Koskoff Koskoff & Bieder
350 Fairfield Ave.
Bridgeport, CT   06604

Jay Marshall Wolman (433791)
100 Pearl Street
14th Floor
Hartford, Ct 06103

Regnier Taylor Curran & Eddy (049254)
100 Pearl Street
4th Floor
Hartford, Ct 06103

Wilson Elser Moskowitz Edelman & Dicker (412712)
1010 Washington Blvd

Case 3:18-cv-01156-JCH Document 11 Filed 07/13/18 Page 9 of 9

8th Floor
Stamford, Ct 06901

_____

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

<u>ORDER ON PRETRIAL DEADLINES</u>

This Order is issued pursuant to the Standing Order on Scheduling In Civil Cases which appears in the Appendix to the Local Civil Rules. Unless otherwise ordered by the Judge to whom this case is assigned, the parties shall adhere to the following deadlines:

(a) In accordance with Local Civil Rule 26(f), within thirty days of the appearance of a defendant, the parties shall confer for the purposes described in Fed. R.Civ. P. 26(f). Within fourteen days thereafter, the parties shall jointly file a report on Form 26(f), which appears in the Appendix to the Local Civil Rules.

(b) All motions relating to joinder of parties, claims or remedies, class certification, and amendment of the pleadings shall be filed within 60 days after filing of the complaint, the filing of a petition for removal, or the transfer of an action from another District.

(c) All motions to dismiss based on the pleadings shall be filed within 90 days after the filing of the complaint, the filing of a petition for removal, or the transfer of an action from another District. The filing of a motion to dismiss shall not result in the stay of discovery or extend the time for completing discovery.

(d) Formal discovery pursuant to the Federal Rules of Civil Procedure may not commence until the parties have conferred as required by Fed. R. Civ. P. 26(f) and Local Civil Rule 26(f) but parties may commence formal discovery immediately thereafter without waiting for entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b). Informal discovery by agreement of the parties is encouraged and may commence at any time. Unless otherwise ordered, discovery shall be completed within 6 months after the filing of the complaint, the filing of a petition for removal, or the date of transfer of an action from another District.

Unless specifically ordered by the Court, an extension of time to comply with any one of the time limits in this Order does not automatically extend the time to comply with subsequent time limits.

Counsel for plaintiff or removing defendant shall be responsible for serving a copy of this order on all parties to the action.

By Order of the Court
Robin D. Tabora, Clerk

(Rev. 6/6/17)

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELECTRONIC FILING ORDER IN CIVIL CASES

The Court orders that the parties shall file all documents in this case electronically. Counsel are reminded that they must comply with the following requirements:

1.      Counsel must comply with all applicable Federal Rules of Civil Procedure, the District's Local Rules, the requirements set forth in the District's CM/ECF Policies and Procedures Manual, and any other rules and administrative procedures which implement the District's CM/ECF system.

2.      Documents filed electronically must be filed in OCR text searchable PDF format.

3.      Unless otherwise ordered, on the business day next following the day on which a document is filed electronically, counsel must provide Chambers with one paper copy of the following e-filed documents:

All pleadings (including briefs and exhibits) relating to the following:

a.      Applications for temporary restraining orders, preliminary injunctions or prejudgment remedies;
b.      Dispositive motions (motions to dismiss, motion for judgment on the pleadings, or for summary judgment);
c.      Requested jury instructions;
d.      Compliance with Pretrial Orders
e.      Trial briefs, including proposed findings of fact and conclusions of law; and
f.      Any other motion, request or application which, taking it together with all related filings (e.g., memo in support, affidavits) are in excess of 20 pages.

SO ORDERED.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

rev. 4/29/15

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**STANDING PROTECTIVE ORDER**

1.      It is hereby ordered by the Court that the following shall apply to information, documents, excerpts from documents, and other materials produced in this action pursuant to Federal and Local Rules of Civil Procedure governing disclosure and discovery.

2.      Information, documents and other materials may be designated by the producing party in the manner permitted ("the Designating Person").  All such information, documents, excerpts from documents, and other materials will constitute "Designated Material" under this Order.  The designation shall be either (a) "CONFIDENTIAL" or (b) CONFIDENTIAL-ATTORNEYS' EYES ONLY."  This Order shall apply to Designated Material produced by any party or third-party in this action.

3.      "CONFIDENTIAL" information means information, documents, or things that have not been made public by the disclosing party and that the disclosing party reasonably and in good faith believes contains or comprises (a) trade secrets, (b) proprietary business information, or (c) information implicating an individual's legitimate expectation of privacy.

4.      "CONFIDENTIAL-ATTORNEY'S EYES ONLY" means CONFIDENTIAL information that the disclosing party reasonably and in good faith believes is so highly sensitive that its disclosure to a competitor could result in significant competitive or commercial disadvantage to the designating party.

5.      Designated Material shall not be used or disclosed for any purpose other than the litigation of this action and may be disclosed only as follows:

   a. *Parties:* Material designated "CONFIDENTIAL" may be disclosed to parties to this action or directors, officers and employees of parties to this action, who have a legitimate need to see the information in connection with their responsibilities for overseeing the litigation or assisting counsel in preparing the action for trial or settlement.  Before Designated Material is disclosed for this purpose, each such person must agree to be bound by this Order by signing a document substantially in the form of Exhibit A.

b. *Witnesses or Prospective Witnesses:* Designated Material, including material designated "CONFIDENTIAL-ATTORNEYS' EYES ONLY," may be disclosed to a witness or prospective witness in this action, but only for purposes of testimony or preparation of testimony in this case, whether at trial, hearing, or deposition, but it may not be retained by the witness or prospective witness. Before Designated Material is disclosed for this purpose, each such person must agree to be bound by this Order, by signing a document substantially in the form of Exhibit A.

c. *Outside Experts:* Designated Material, including material designated "CONFIDENTIAL-ATTORNEYS' EYES ONLY," may be disclosed to an outside expert for the purpose of obtaining the expert's assistance in the litigation. Before Designated Material is disclosed for this purpose, each such person must agree to be bound by this Order, by signing a document substantially in the form of Exhibit A.

d. *Counsel:* Designated Material, including material designated "CONFIDENTIAL-ATTORNEYS' EYES ONLY," may be disclosed to counsel of record and in-house counsel for parties to this action and their associates, paralegals, and regularly employed office staff.

e. *Other Persons:* Designated Material may be provided as necessary to copying services, translators, and litigation support firms. Before Designated Material is disclosed to such third parties, each such person must agree to be bound by this Order by signing a document substantially in the form of Exhibit A.

6. Prior to disclosing or displaying any Designated Material to any person, counsel shall:

a. Inform the person of the confidential nature of the Designated Material; and

b. Inform the person that this Court has enjoined the use of the Designated Material by him/her for any purpose other than this litigation and has enjoined the disclosure of that information or documents to any other person.

7. The confidential information may be displayed to and discussed with the persons identified in Paragraphs 5(b) and (c) only on the condition that, prior to any such display or discussion, each such person shall be asked to sign an agreement to be bound by this Order in the form attached hereto as Exhibit A. In the event such person refuses to

sign an agreement in substantially the form attached as Exhibit A, the party desiring to disclose the confidential information may seek appropriate relief from the Court.

8.      A person having custody of Designated Material shall maintain it in a manner that limits access to the Designated Material to persons permitted such access under this Order.

9.      Counsel shall maintain a collection of all signed documents by which persons have agreed to be bound by this Order.

10.     Documents shall be designated by stamping or otherwise marking the documents with the words "CONFIDENTIAL" or "CONFIDENTIAL-FOR ATTORNEYS' EYES ONLY" thus  clearly identifying the category of Designated Material for which protection is sought under the terms of this Order.  Designated Material not reduced to documentary form shall be designated by the producing party in a reasonably equivalent way.

11.     The parties will use reasonable care to avoid designating as confidential documents or information that does not need to be designated as such.

12.     A party may submit a request in writing to the party who produced Designated Material that the designation be modified or withdrawn.  If the Designating Person does not agree to the redesignation within fifteen business days, the objecting party may apply to the Court for relief.  Upon any such application, the burden shall be on the Designating Person to show why the designation is proper.  Before serving a written challenge, the objecting party must attempt in good faith to meet and confer with the Designating Person in an effort to resolve the matter.  The Court may award sanctions if it finds that a party's position was taken without substantial justification.

13.     Deposition transcripts or portions thereof may be designated either (a) when the testimony is recorded, or (b) by written notice to all counsel of record, given within ten business days after the Designating Person's receipt of the transcript in which case all counsel receiving such notice shall be responsible for marking the copies of the designated transcript or portion thereof in their possession or control as directed by the Designating Person.  Pending expiration of the ten business days, the deposition transcript shall be treated as designated.  When testimony is designated at a deposition, the Designating Person may exclude from the deposition all persons other than those to whom the Designated Material may be disclosed under paragraph 5 of this Order.  Any party may mark Designated Material as a deposition exhibit, provided the deposition witness is one to whom the exhibit may be disclosed under paragraph 5 of this Order

and the exhibit and related transcript pages receive the same confidentiality designation as the original Designated Material.

14. Any Designated Material which becomes part of an official judicial proceeding or which is filed with the Court is public. Such Designated Material will be sealed by the Court only upon motion and in accordance with applicable law, including Rule 5(e) of the Local Rules of this Court. This Protective Order does not provide for the automatic sealing of such Designated Material. If it becomes necessary to file Designated Material with the Court, a party must comply with Local Civil Rule 5 by moving to file the Designated Material under seal.

15. Filing pleadings or other papers disclosing or containing Designated Material does not waive the designated status of the material. The Court will determine how Designated Material will be treated during trial and other proceedings as it deems appropriate.

16. Upon final termination of this action, all Designated Material and copies thereof shall be returned promptly (and in no event later than forty-five (45) days after entry of final judgment), returned to the producing party, or certified as destroyed to counsel of record for the party that produced the Designated Material, or, in the case of deposition testimony regarding designated exhibits, counsel of record for the Designating Person. Alternatively, the receiving party shall provide to the Designating Person a certification that all such materials have been destroyed.

17. Inadvertent production of confidential material prior to its designation as such in accordance with this Order shall not be deemed a waiver of a claim of confidentiality. Any such error shall be corrected within a reasonable time.

18. Nothing in this Order shall require disclosure of information protected by the attorney-client privilege, or other privilege or immunity, and the inadvertent production of such information shall not operate as a waiver. If a Designating Party becomes aware that it has inadvertently produced information protected by the attorney-client privilege, or other privilege or immunity, the Designating Party will promptly notify each receiving party in writing of the inadvertent production. When a party receives notice of such inadvertent production, it shall return all copies of inadvertently produced material within three business days. Any notes or summaries referring or relating to any such inadvertently produced material subject to claim of privilege or immunity shall be destroyed forthwith. Nothing herein shall prevent the receiving party from challenging the propriety of the attorney-client privilege or work product immunity or other applicable privilege designation by submitting a challenge to the Court. The Designating Party

bears the burden of establishing the privileged nature of any inadvertently produced information or material.  Each receiving party shall refrain from distributing or otherwise using the inadvertently disclosed information or material for any purpose until any issue of privilege is resolved by agreement of the parties or by the Court.  Notwithstanding the foregoing, a receiving party may use the inadvertently produced information or materials to respond to a motion by the Designating Party seeking return or destruction of such information or materials.  If a receiving party becomes aware that it is in receipt of information or materials which it knows or reasonably should know is privileged, Counsel for the receiving party shall immediately take steps to (i) stop reading such information or materials, (ii) notify Counsel for the Designating Party of such information or materials, (iii) collect all copies of such information or materials, (iv) return such information or materials to the Designating Party, and (v) otherwise comport themselves with the applicable provisions of the Rules of Professional Conduct.


19.    The foregoing is entirely without prejudice to the right of any party to apply to the Court for any further Protective Order relating to Designated Material; or to object to the production of Designated Material; or to apply to the Court for an order compelling production of Designated Material; or for modification of this Order; or to seek any other relief from the Court.

20.    The restrictions imposed by this Order may be modified or terminated only by further order of the Court.

<div style="text-align:center">IT IS SO ORDERED,</div>


<u>/s/ Janet C. Hall</u>
Janet C. Hall
United States District Judge

**EXHIBIT A**

  I have been informed by counsel that certain documents or information to be disclosed to me in connection with the matter entitled_____ _____have been designated as confidential.  I have been informed that any such documents or information labeled "CONFIDENTIAL PRODUCED PURSUANT TO PROTECTIVE ORDER" are confidential by Order of the Court.

  I hereby agree that I will not disclose any information contained in such documents to any other person.  I further agree not to use any such information for any purpose other than this litigation.

_____DATED:_____

Signed in the presence of:

_____(Attorney)

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT


## STANDING ORDER RELATING TO DISCOVERY

Any discovery dispute must first be the subject of a one (1) page letter, briefly identifying the dispute. If the dispute involves written discovery requests, a copy of only the requests and response in dispute must be attached to the letter.

If the court fails within seven (7) days of receipt of the letter in Chambers to docket a calendar scheduling a conference on the dispute, the party sending the letter should file a Motion to Compel. The time period in Local Rule 7 does not apply to such a Motion. The party(ies) opposing such a Motion to Compel must file any opposition within fourteen (14) days of the filing of the Motion to Compel. There will be no reply.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 10th day of July, 2015.


 /s/ Janet C. Hall
Janet C. Hall, Chief Judge
United States District Court



# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| 141 Church Street | 450 Main Street | 915 Lafayette Blvd |
|---|---|---|
| New Haven, CT 06510 | Hartford, CT 06103 | Bridgeport, CT 06604 |
| (203) 773-2140 | (860) 240-3200 | (203) 579-5861 |

## NOTICE TO COUNSEL AND PRO SE PARTIES

The attached case has been assigned to District Judge Janet C. Hall who sits in New Haven. Counsel and Pro Se Parties should file all future pleadings or documents in this matter with the Clerk's Office in New Haven. Any attempt to file pleadings or other documents related to this action in any of the other seats of Court will result in those pleadings or documents being refused at the Court or being returned to you. See D. Conn. L. Civ. R. 3(a).

Counsel and Pro Se Parties are required to become familiar with and abide by the Federal Rules of Civil Procedure, the Local Rules of Civil Procedure for the District of Connecticut and Standing Orders regarding scheduling in civil cases and the filing of trial memoranda.

Counsel and Pro Se Parties are hereby notified that failure to file and serve a memorandum in opposition to a motion, within 21 days after the motion is filed, may be deemed sufficient cause to grant the motion. Failure to file and serve a memorandum in opposition to a motion to dismiss within 21 days after the motion is filed may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion. See D. Conn. L. Civ. R. 7(a)2.

Counsel and Pro Se Parties are further notified that they are required to comply with requirements relating to Motions for Summary Judgment as set forth in Fed. R. Civ. P. 56 and D. Conn. L. Civ. R. 56. A party may move for Summary Judgment when that party believes there is no genuine issue of material fact requiring trial and the party is entitled to judgment as a matter of law. The motion may be directed toward all or part of a claim or defense and it may be made on the basis of the pleadings or other portions of the record in the case or it may be supported by affidavits and other materials outside the pleadings.

When a party seeking Summary Judgment (the "moving party") files a supporting affidavit, the party opposing Summary Judgment must file an affidavit, or other documentary evidence, contradicting the moving party's submissions to demonstrate that there are factual issues requiring a trial. Facts asserted in the affidavit(s) of the moving party will be taken as true if not controverted by counter-affidavits or other documentary evidence.

Local Civil Rule 56(a) requires the party seeking Summary Judgment to file a document entitled "Local Rule 56(a)1 Statement," Which sets forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried. The material facts set forth in this statement shall be deemed admitted unless controverted by the "Local Rule 56(a)2

1

Statement" required to be served by the opposing party.  The paragraphs in the 56(a)2 statement shall correspond to the paragraphs in the 56(a)1 statement and shall state whether the facts asserted by the moving party are admitted or denied.  The Local Rule 56(a)2 statement must also include in a separate section a list of each issue of material fact as to which it is contended there is a genuine issue to be tried.

Counsel and Pro Se Parties are alerted to the requirements of Fed. R. Civ. P. 26(f) and Local Civil Rule 26, which require that the parties conduct a case management planning conference and prepare and file a report of the conference on Form 26(f) which appears in the Appendix to the Local Rules.

Counsel and Pro Se Parties are further advised that they may request a referral of their case to a United States Magistrate Judge for disposition.  See 28 U.S.C. 636 and Rule 77.2 of the Local Rules for United States Magistrate Judges.

Robin D. Tabora, Clerk

Revised 1/25/18



**UNITED STATES DISTRICT COURT**

DISTRICT OF CONNECTICUT

# ORDER RE: DISCLOSURE STATEMENT

Any nongovernmental corporate party to an action in this court shall file a statement identifying all its parent corporations and listing any publicly held company that owns 10% or more of the party's stock. A party shall file the statement with its initial pleading filed in the court and shall supplement the statement within a reasonable time of any change in the information. Counsel shall append a certificate of service to the statement in compliance with local rule 5(c).

Counsel for plaintiff or removing defendant shall be responsible for serving a copy of this order upon all parties to the action.

By Order of the Court
Robin D. Tabora, Clerk

Revised 1/25/18

**TIPS FOR SUCCESSFUL CM/ECF EFILING**

- To efile on a case, you must have an individual, upgraded PACER account. To register for an individual PACER account, go to www.pacer.gov.

- Do not efile on a case that has not been designated as an efiled case. If there is no EFILE flag, DO NOT EFILE ON THE CASE!

- Do not attempt to re-docket something that you think may have been done incorrectly. Call the Clerk's Office for assistance before attempting to make any corrections!

- When efiling a Memorandum in Support/Opposition/Reply/Affidavit/Exhibit relating to a Motion, you must link the memo/reply/affidavit/exhibit to the underlying motion.

- Make sure the PDF document does not exceed 75,000 KB, is readable, the correct one to be filed and is right-side up if scanned.

- Do not use the apostrophe or tilde in the text of the entry.

- When efiling documents in a multi-defendant criminal case, be sure to check ONLY the box for the defendant(s) that relate to the document you are efiling, and not the entire case.

- Include your electronic signature (/s/ followed by your name) on the signature line for both the document and the certification of service.

- IMPORTANT INFORMATION RE PRIVACY ACT: All filings with the court - including attachments - must comply with Fed. R. Civ. P. 5.2 or Fed. R. Crim. P. 49.1: Social Security or taxpayer-identification numbers; dates of birth; names of minor children; financial account numbers; and home addresses in criminal cases, may not appear, except as allowed by the applicable rule.

**Affidavits**

Affidavits may be efiled with the signature page scanned or with a /s/ on the signature line. If the affidavit is related to a motion, it must be linked to the motion.

**Amended Complaints**

If a new party is being added, please select the "Add/Create New Party" on the appropriate filers screen. New plaintiff(s) should be added on the filers screen with the heading "Select the Filer," new defendant(s) should be added on the filers screen with the heading, "Please select the party that this filing is **against**." Enter the name of the business or last name of the individual and click "search" to see if the name of the party is already in our system. If not, continue to create the new party following the Instructions for Searching and Adding Parties located on the District Court's website. See also www.ctd.uscourts.gov. Make sure that you select the role of the party. Do not put any information in the other fields except for "Party Text" when necessary. The "Party Text" field is used as a descriptive text as explained in the Instructions. Update

Revised 1/25/18

the Jury Demand when prompted.

## Appearances

You may not efile an appearance on behalf of another attorney. The attorney filing the appearance must be the attorney that is logged into CMECF. You must click on the following box to create an association between you and the party(ies) that you are representing:

> The following attorney/party associations do not exist for this case. Please check which associations should be created for this case:
>
> [√] Party Name (pty:pla) represented by Your name (aty) [√] Lead [√] Notice

## Attachments

You must name your attachment by either selecting something from the "Type" drop down menu or by entering something in the "Description" field. Whatever you select or enter from both of these options will appear in the docket text.

## Discovery

The Court does not accept Discovery pursuant to Local Rule 5(f).

## Filers

If there is more than one party as a filer, hold the CTRL key while selecting the applicable parties.

## Motions

Do not use this event if you are not asking for some relief from the court. If there is more than one relief in your motion, select the applicable reliefs by clicking on them in the box to the left. The reliefs you have selected will appear in the box to the right.

If you are efiling a motion asking permission to file something or to amend something already filed, you must attach the proposed document as an exhibit to your motion. Do not efile the proposed document until your motion has been granted - then efile the document you asked for permission to file.

Do not combine motions with responses to other documents. Motions and responses should be filed as separate documents.

## Notice (other)

If you find you are frequently using this event, call the Clerk's Office for assistance in locating the correct event for your submission.

## Notice of Manual Filing

The Notice of Manual Filing should be efiled using the event for the item you are filing in paper. Do not use the "Notice (Other)" event. For example, if you are filing exhibits manually, use the "Exhibit" event and attach the pdf of the Notice of Manual Filing. Mail the exhibits along with copies of the Notice of Electronic Filing and the Notice of Manual filing to the Clerk's Office.

Revised 1/25/18

**<u>Returns of Service</u>**
Returns on executed summonses should be efiled using either the "Summons Executed" or "Summons Returned Executed as to USA". There is a separate event for "Waiver of Return of Service." See the <u>Attorney Instructions for eFiling Civil Returns of Service</u> on our website.

**<u>Sealed Documents</u>**
Attorneys may EFILE sealed documents in Civil and Criminal Cases. See the Sealed Docketing Cheat Sheets for Attorneys- <u>Civil</u> or <u>Criminal</u> on the Court's website for helpful information.

DO NOT EFILE documents in Cases that are filed under seal. You are required to submit the document in paper along with a PDF version on a CD.

Revised 1/25/18

**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

**STANDING ORDER ON REMOVED CASES**
**(Amended March 19, 2018)**

All parties removing actions to this Court pursuant to 28 U.S.C. § 1441 shall, no later than seven (7) days after filing a notice of removal, file and serve a signed statement that sets forth the following information:

1. The date on which each defendant first received a copy of the summons and complaint in the state court action.

2. The date on which each defendant was served with a copy of the summons and complaint, if any of those dates are different from the dates set forth in item 1.

3. In diversity cases, whether any defendant who has been served is a citizen of Connecticut. Also, if any party is a partnership, limited liability partnership or limited liability company or corporation, the citizenship of each partner, general partner, limited partner and member, and if any such partner, general partner, limited partner or member is itself a partnership, limited liability partnership or limited liability company or corporation, the citizenship of each member.

4. If removal takes place more than thirty (30) days after any defendant first received a copy of the summons and complaint, the reasons why removal has taken place at this time.

5. The name of any defendant served prior to the filing of the notice of removal who has not formally joined in the notice of removal and the reasons why any such defendant did not join in the notice of removal.

6. For each party, list the name and firm name of all counsel of record for that party or state that the party is self-represented.

At the time a removal notice is filed with the Clerk of this Court, the removing party shall also file with the Clerk a separate notice, entitled "Notice of Pending Motions," specifying any pending motions that require action by a Judge of this Court and attaching a true and complete copy of each such motion and all supporting and opposition papers.

**NOTICE TO COUNSEL RE LOCAL RULE 5(b)**

To ensure that our records are complete and to ensure that you receive notice of hearings and any court rulings, PLEASE FILE AN APPEARANCE with this office in accordance with Local Rule 5(b) of the Local Rules of Civil Procedure for the District of Connecticut.

Counsel for the removing defendant(s) is responsible for immediately serving a copy of this notice on all counsel of record and all self-represented parties at their last known addresses.

Rev: 3-19-18

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY, *et al.,* | : | |
| Plaintiffs, | : | Case No. 3:18-cv-01156 |
| | : | |
| v. | : | |
| | : | July 13, 2018 |
| ALEX EMRIC JONES, *et al.,* | : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

Pursuant to the orders and instructions of the Court, counsel for Defendant Alex Emric Jones hereby certifies that, on this 13th day of July 2018, copies of the following documents were caused to be served by electronic mail and U.S. Mail upon the parties on the enclosed Service List:

Dkt. 11:    Halbig's Motion to Dismiss, with Legal Authority Incorporated

Dkt. 12:    Order on Pretrial Deadlines

Dkt. 13:    Electronic Filing Order in Civil Cases

Dkt. 14:    Standing Protective Order

Dkt. 15:    Standing Order Relating to Discovery

Dkt. 16:    Notice to Counsel and Pro Se Parties

Dkt. 16-1:    Standing Order on Removed Cases

Dated: July 13, 2018.            Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel:  702-420-2001
ecf@randazza.com

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel:  702-420-2001
ecf@randazza.com

*Attorneys for Infowars Defendants*

- 1 -

## SERVICE LIST

William M. Bloss
Matthew S. Blumenthal
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgebort, CT 06604
<bbloss@koskoff.com>
<mblumenthal@koskoff.com>

*Attorneys for Plaintiffs*

Stephen P. Brown
WILSON ELSER MOSKOWITZ
  EDELMAN & DICKER
1010 Washington Blvd., 8th Floor
Stamford, CT 06901
<stephen.brown@wilsonelser.com>

*Attorney for Defendant*
*Midas Resources, Inc.*

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Lawrence L. Connelli
REGNIER TAYLOR CURRAN & EDDY
100 Pearl Street, 4th Floor
Hartford, Connecticut 06103
<LConnelli@rtcelaw.com>

*Attorney for Defendant*
*Cory T. Sklanka*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*

- 2 -

Case No. 3:18-cv-01156

## CERTIFICATE OF SERVICE

   I hereby certify that, on this 13th day of July 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

   I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

William M. Bloss
Matthew S. Blumenthal
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgebort, CT 06604
<wbloss@koskoff.com>
<mblumenthal@koskoff.com>

*Attorneys for Plaintiffs*

Stephen P. Brown
WILSON ELSER MOSKOWITZ
   EDELMAN & DICKER
1010 Washington Blvd., 8th Floor
Stamford, CT 06901
<stephen.brown@wilsonelser.com>

*Attorney for Defendant*
*Midas Resources, Inc.*

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Lawrence L. Connelli
REGNIER TAYLOR CURRAN & EDDY
100 Pearl Street, 4th Floor
Hartford, Connecticut 06103
<LConnelli@rtcelaw.com>

*Attorney for Defendant*
*Cory T. Sklanka*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*

/s/ Jay M. Wolman
Jay M. Wolman

- 3 -

# UNITED STATES DISTRICT COURT

ERICA LAFFERTY; DAVID WHEELER;
FRANCINE WHEELER; JACQUELINE
BARDEN; MARK BARDEN; NICOLE
HOCKLEY; IAN HOCKLEY; JENNIFER
HENSEL; JEREMY RICHMAN; DONNA
SOTO; CARLEE SOTO-PARISI; CARLOS
M. SOTO; JILLIAN SOTO; and WILLIAM
ALDENBERG,

       Plaintiffs,

v.

ALEX EMRIC JONES; INFOWARS, LLC;
FREE SPEECH SYSTEMS, LLC INFOWARS
HEALTH, LLC; PRISON PLANET TV, LLC;
WOLFGANG HALBIG; CORY T. SKLANKA;
GENESIS COMMUNICATIONS NETWORK,
INC.; and MIDAS RESOURCES, INC.,

       Defendants,

# APPEARANCE

**CASE NUMBER:** 3:18-CV-01156

**To the Clerk of this court and all parties of record:**

**Enter my appearance as counsel in this case for:**
Corey T. Sklanka

| 7/16/18 | /s/ |
|---|---|
| **Date** | **Signature** |
| | |
| CT06278 | Lawrence Connelli |
| | **Print Clearly or Type Name** |
| | Regnier, Taylor, Curran & Eddy |
| (860) 249-9121 | 100 Pearl Street 4th Floor, Hartford, CT 06103 |
| **Telephone Number** | **Address** |

I hereby certify that on 7/16/18 a copy of the foregoing appearance, was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing a indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/
_____
**Signature**
Lawrence L. Connelli – CT06278

**(Use additional pages, if necessary, to list the name and address of each attorney or party for which you are certifying service)**

# UNITED STATES DISTRICT COURT

for the

District of Connecticut

ERICA LAFFERTY, ET AL.

|                          |   |          |                     |
|--------------------------|---|----------|---------------------|
| Plaintiff                | ) |          |                     |
|                          | ) |          |                     |
| v.                       | ) | Case No. | 3:18-cv-01156-JCH   |
|                          | ) |          |                     |
| ALEX EMRIC JONES, ET AL. | ) |          |                     |
| Defendant                | ) |          |                     |

## NOTICE OF APPEARANCE

To:     The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

**Midas Resources, Inc.**

Date:     **Jul 19, 2018**

**/s/ Stephen P. Brown**

_Attorney's signature_

Stephen P. Brown ct19876

_Printed name and bar number_

**Wilson Elser Moskowitz
Edelman & Dicker LLP
1010 Washington Blvd., Stamford, CT 06901**

_Address_

**Stephen.Brown@wilsonelser.com**

_E-mail address_

**(203) 388-9100**

_Telephone number_

**(203) 388-9101**

_FAX number_

Case 3:18-cv-01156-JCH   Document 19   Filed 07/19/18   Page 1 of 2

Rev. 5/4/2011

## CERTIFICATE OF SERVICE

I hereby certify that on **Jul 19, 2018**, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to [Below list the names and addresses of anyone unable to accept electronic filing] as indicate on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

**Matthew Blumenthal**
**Koskoff Koskoff & Bieder, P.C.**
**350 Fairfield Ave**
**Ste Floor 5**
**Bridgeport, CT 06604**
**mblumenthal@koskoff.com**

**Jay M. Wolman**
**Randazza Legal Group, PLLC**
**100 Pearl St., 14th Floor**
**Hartford, CT 06103**
**jmw@randazza.com**

**Lawrence L. Connelli**
**Regnier, Taylor, Curran & Eddy**
**100 Pearl Street, 4th Floor**
**Hartford, CT 06103**
**lconnelli@rtcelaw.com**

**/s/ Stephen P. Brown ct19876**

*Attorney's signature*

# UNITED STATES DISTRICT COURT

for the

District of Connecticut

ERICA LAFFERTY, ET AL.

|  |  |  |  |
|---|---|---|---|
| *Plaintiff* | ) | | |
| | ) | | |
| v. | ) | Case No. | **3:18-cv-01156-JCH** |
| | ) | | |
| ALEX EMRIC JONES, ET AL. | ) | | |
| *Defendant* | ) | | |

## NOTICE OF APPEARANCE

To:   The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

**Midas Resources, Inc.**

Date:          **Jul 19, 2018**

/s/ **Nicole R. Cuglietto**

*Attorney's signature*

**Nicole R. Cuglietto ct29311**

*Printed name and bar number*

**Wilson Elser Moskowitz
Edelman & Dicker LLP
1010 Washington Blvd., Stamford, CT 06901**

*Address*

**Nicole.Cuglietto@wilsonelser.com**

*E-mail address*

**(203) 388-9100**

*Telephone number*

**(203) 388-9101**

*FAX number*

*Rev. 5/4/2011*

## CERTIFICATE OF SERVICE

I hereby certify that on **Jul 19, 2018**, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to [Below list the names and addresses of anyone unable to accept electronic filing] as indicate on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

**Matthew Blumenthal**
**Koskoff Koskoff & Bieder, P.C.**
**350 Fairfield Ave**
**Ste Floor 5**
**Bridgeport, CT 06604**
**mblumenthal@koskoff.com**

**Jay M. Wolman**
**Randazza Legal Group, PLLC**
**100 Pearl St., 14th Floor**
**Hartford, CT 06103**
**jmw@randazza.com**

**Lawrence L. Connelli**
**Regnier, Taylor, Curran & Eddy**
**100 Pearl Street, 4th Floor**
**Hartford, CT 06103**
**lconnelli@rtcelaw.com**

**/s/ Nicole R. Cuglietto/ct29311**

*Attorney's signature*

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG,

       Plaintiffs,

       v.

ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC.,

       Defendants.

Case No. 3:18-cv-01156-JCH

July 20, 2018

## SPECIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR, IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants Alex Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, LLC, hereby move this Honorable Court to dismiss Plaintiffs' Complaint (Dkt. No. 1-1) under Connecticut's Anti-SLAPP statute, Conn. Gen. Stat. § 52-196a, or, alternately, to dismiss this action for failure to state a claim. Plaintiffs' Complaint should be dismissed in its entirety, as the claims are based on speech on an issue of public concern and Plaintiffs cannot succeed on the merits of their claims. In support hereof, Defendants rely upon the memorandum of law submitted herewith.

As set forth more fully in the memorandum of law, examination of the alleged statements made about Plaintiffs, involuntary and/or limited purpose public figures, shows they are neither capable of being deemed false statements of fact nor made with actual malice. No underlying torts occurred and there is no conspiracy or agency relationship among the defendants.

ORAL ARGUMENT REQUESTED

- 2 -

WHEREFORE Defendants respectfully request the Complaint be dismissed with prejudice, and the Court award Defendants the reasonable costs and attorneys' fees as prescribed by the statute, though Defendants waive any fees in excess of one dollar.

Dated: July 20, 2018.

Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: 702-420-2001
ecf@randazza.com

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
ecf@randazza.com

Attorneys for Infowars Defendants

RANDAZZA | LEGAL GROUP

- 2 -

Case No. 3:18-cv-01156-JCH

## CERTIFICATE OF SERVICE

I hereby certify that, on this 20th day of July 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*


/s/ Jay M. Wolman
Jay M. Wolman

RANDAZZA | LEGAL GROUP

- 3 -

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG, | : : : : : : : : : : : | |
| Plaintiffs, | : : | Case No. 3:18-cv-01156-JCH |
| v. | : : : | July 20, 2018 |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | : : : : : : : : | |
| Defendants. | : : | |

## <u>MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR, IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: 702-420-2001
ecf@randazza.com

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
ecf@randazza.com

Attorneys for Infowars Defendants

ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

1.0     FACTUAL BACKGROUND ................................................................................ 2

2.0     LEGAL STANDARD ........................................................................................... 4

   *2.1    Anti-SLAPP Standard* ............................................................................. 4

   *2.2    Application of Anti-SLAPP in Federal Court* ......................................... 5

   *2.3    Dismissal Under Rule 12(b)(6)* .............................................................. 6

3.0     ANALYSIS ........................................................................................................... 7

   *3.1    This Lawsuit Should be Dismissed Under the Connecticut Anti-SLAPP Statute* .. 7

   *3.2    Defendants' Speech is Constitutionally Protected* ................................... 9

   *3.3    The Speech is Protected as Fair Comment* ............................................ 13

   *3.4    Most of the Allegations are Time-Barred* .............................................. 14

   *3.5    None of the Claims are Plausible* ........................................................... 15

      3.5.1  Defendants are Not Liable for False Light Invasion of Privacy ............................. 15

      3.5.2  Defendants are Not Liable for Defamation *Per Quod* or *Per Se* ........................... 18

      3.5.3  Defendants are Not Liable for Intentional Infliction of Emotional Distress ......... 21

      3.5.4  Defendants are Not Liable for Negligent Infliction of Emotional Distress ............ 23

      3.5.5  Plaintiffs' Conspiracy Claims Lack Merit ................................................................ 25

      3.5.6  Defendants are Not Liable Under CUTPA ............................................................... 26

      3.5.7  Defendants are Not Agents of Each Other and the Complaint Insufficiently Pleads Specific Liability ........................................ 27

4.0     CONCLUSION .................................................................................................. 31

## TABLE OF AUTHORITIES

**CASES**

*Abbas v. Foreign Policy Grp., LLC*,
783 F.3d 1328 (D.C. Cir. 2015) .................................................................................. 5

*Abramson v. Pataki*,
278 F.3d 93 (2d Cir. 2002) ....................................................................................... 18

*Adams v. Hartford Courant*, No. 3-03-cv-0477 (JCH),
2004 U.S. Dist. LEXIS 8546 (D. Conn. May 14, 2004) (Hall, U.S.D.J.) ................................ 24

*Adams v. I-Flow Corp.*, Case No. CV09-09550 R (SSx),
2010 U.S. Dist. LEXIS 33066 (CD. Cal. Mar. 30, 2010) .......................................... 29

*Adelson v. Harris*,
774 F.3d 803 (2d Cir. 2014) .................................................................................. 5, 6

*Algarin v. Town of Wallkill*,
421 F. 3d 137 (2d Cir. 2005) .................................................................................. 16

*Allen v. Verizon Wireless*,
2013 U.S. Dist. LEXIS 80228 (D. Conn. June 6, 2013) ........................................... 15

*Appleton v. Bd. of Educ.*,
254 Conn. 205, 757 A.2d 1059 (2000)..................................................................... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... 6, 12, 30

*Avery v. City of W. Haven*, 3:99-CV-00013 (EBB),
2001 U.S. Dist. LEXIS 24394 (D. Conn. Feb. 1, 2001)........................................ 22, 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................... 6, 26, 30

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
151 F. Supp. 3d 287 (E.D.N.Y. 2015)...................................................................... 19

*Berry v. Ronald*, No. FBTCV175032673,
2018 Conn. Super. LEXIS 324 (Super. Ct. Feb. 20, 2018)....................................... 17

*Biro v. Conde Nast*,
807 F.3d 541 (2d Cir. 2015).................................................................... 6, 7, 11, 12

*Biro v. Conde Nast*,
964 F. Supp. 2d 255 (S.D.N.Y. 2013)....................................................................... 7

*Bose Corp. v. Consumers Union, Inc.*,
466 U.S. 485 (1984) ............................................................................................. 12

RANDAZZA | LEGAL GROUP

*Brady v. Bickford*, No. KNLCV116007541,
2015 Conn. Super. LEXIS 585 (Super. Ct. Mar. 13, 2015) ................................................ 14, 15

*Brewer v. Memphis Pub. Co., Inc.*,
626 F.2d 1238 (5th Cir. 1980) ......................................................................................... 10

*Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*,
691 F. App'x 515 (10th Cir. 2017)................................................................................... 29

*Burke v. State*, No. MMXCV065000409S,
2010 Conn. Super. LEXIS 282 (Super. Ct. Feb. 2, 2010) .................................................. 23

*Carson v. Allied News Company*,
529 F.2d 206 (7th Cir. 1976) ........................................................................................... 10

*Celle v. Filipino Reporters Enters.*,
209 F.3d 163 (2d Cir. 2000) ........................................................................................... 12

*Chaiken v. W Publishing Corp.*,
907 F. Supp. 689 (S.D.N.Y. 1995), aff'd, 119 F.3d 1018 (1997) ...................................... 21

*Charles Parker Co. v. Silver City Crystal Co.*,
142 Conn. 605, 116 A.2d 440 (1955)................................................................................ 13

*Chase Grp. Alliance LLC v. N.Y.C. Dep't of Fin.*,
620 F.3d 146 (2d Cir. 2010) .............................................................................................. 2

*City of Roseville v. Zisk*, No. C073496,
2015 Cal. App. Unpub. LEXIS 4193 (June 16, 2015) ........................................................ 8

Cole v. Patricia A. Meyer & Associates,
2016 Cal. App. 4th 1095 (2012)...................................................................................... 7, 8

*Colon v. Town of W. Hartford*,
2001 U.S. Dist. LEXIS 484 (D. Conn. Jan. 5, 2001) ................................................. 17, 19

*Combs v. Stryker Corp.*, No. 2:09-cv-02018-JAM-GGH,
2009 U.S. Dist. LEXIS 115920, 2009 WL 4929110 (E.D. Cal. Dec. 14, 2009)................. 29, 30

*Comm'r, Dep't of Emergency Servs. & Pub. Prot. v. Freedom of Info. Comm'n*,
No. HHBCV156029797S, 2016 Conn. Super. LEXIS 786 (Super. Ct. Apr. 8, 2016) .............. 8

*Cowras v. Hard Copy*, No. 3:95cv99 (AHN),
1997 U.S. Dist. LEXIS 23514 (D. Conn. Sep. 29, 1997)................................................... 16

*Crane v. Northwestern CT Young Mens Christian Assoc.*, No. CV044001019,
2005 Conn. Super. LEXIS 1614 (Sup. Ct. 2005) .............................................................. 23

*Cuba v. Pylant*,
814 F.3d 701 (5th Cir. 2016)............................................................................................. 1

*Curtis Publ'g Co. v. Butts*,
388 U.S. 130 (1967) ......................................................................................................... 6

RANDAZZA | LEGAL GROUP

*Daddona v. Liberty Mobile Home Sales, Inc.*,
209 Conn 243, 550 A.2d 1061 (1988) .......................................................................... 26

*Dameron v. Washington Magazine, Inc.*,
250 U.S. App. D.C. 346, 779 F.2d 736 (D.C. Cir. 1985) ........................................... 10

*Davis v. Davis*,
112 Conn. App. 56, 962 A.2d 140 (2009) .................................................................. 22

*Degroat v. Cooper*,
2014 U.S. Dist. LEXIS 66089 (D.N.J. May 14, 2014) ............................................... 16

*Dellacamera v. New Haven Register*, No. CV000436560,
2002 Conn. Super. LEXIS 3403 (Conn. Super. Ct. Oct. 28, 2002) ........................... 13

*Devone v. Finley*, No. 3:13-CV-00377 (CSH),
2014 U.S. Dist. LEXIS 36356 (D. Conn. Mar. 20, 2014) ..................................... 18, 19

*Diaz v. NBC Universal, Inc.*,
337 F. App'x 94 (2d Cir. 2009) .................................................................................. 16

*Dittman v. DJO, LLC*, No. 08-cv-02791-WDM-KLM,
2009 U.S. Dist. LEXIS 97106 (D. Colo. Oct. 5, 2009) .............................................. 30

*Doe v. Yale Univ.*,
252 Conn. 641, 748 A.2d 834 (2000) .......................................................................... 28

*Dong v. Board of Trustees of Leland Stanford University*,
191 Cal. App. 3d 1572, 236 Cal. Rptr. 912 (1987) .................................................... 20

*Dow v. New Haven Indep., Inc.*,
41 Conn. Supp. Ct. 31 (1987) ..................................................................................... 17

*Eder Bros. v. Wine Merchants. Of Conn., Inc.*
275 Conn. 363 (Conn. 2005) ....................................................................................... 26

*Elec. Assocs., Inc. v. Automatic Equip. Dev. Corp.*,
185 Conn. 31, 440 A.2d 249 (1981) ............................................................................ 28

*Ernst v. Carrigan*,
814 F.3d 116 (2d Cir. 2016) .......................................................................................... 4

*Estate of Gomez v. Larson*, CV 980084646,
1999 Conn. Super. LEXIS 1535 (Super. Ct. June 8, 1999) ....................................... 20

*Fichera v. Mine Hill Corp.*,
207 Conn. 204, 541 A.2d 472 (1988) .......................................................................... 15

*Flamm v. Am. Ass'n of Univ. Women*,
201 F.3d 144 (2d Cir. 2000) ........................................................................................ 13

*Friedman v. Boston Broadcasters, Inc.*,
402 Mass. 376, 522 N.E.2d 959 (1988) ...................................................................... 19

RANDAZZA | LEGAL GROUP

*Gambardella v. Apple Health Care, Inc.*,
291 Conn. 620, 969 A.2d 736 (Conn. 2009) ........................................................... 18

*Gambardella v. Apple Health Care, Inc.*,
86 Conn. App. 842, 863 A.2d 735 (2005) ................................................................ 21

*Garrison v. Louisiana*,
379 U.S. 64 (1964) ............................................................................................. 11, 20

*Gertz v. Robert Welch*,
418 U.S. 323 (1974) ................................................................................................... 9

*Gilmore v. DJO, Inc.*,
663 F. Supp. 2d 856, 2009 U.S. Dist. LEXIS 96690 (D. Ariz. 2009) ...................... 30

*Goodrich v. Waterbury Republican-American, Inc.*,
188 Conn. 107, 448 A.2d 1317 (1982) .................................................... 13, 16, 17, 19

*Greenbelt Cooperative Publishing Association v. Bresler*,
398 U.S. 6 (1970) ..................................................................................................... 11

*Grigorenko v. Pauls*,
297 F. Supp. 2d 446 (D. Conn. 2003) ...................................................................... 15

*Harasz v. Katz*,
239 F. Supp. 3d 461, 482-83 (D. Conn. 2017) ........................................................ 12

*Harp v. King*, 266 Conn.
747, 835 A.2d 953 (2003) ........................................................................................ 25

*Harris v. Bradley Memorial Hosp. and Health Center, Inc.*,
296 Conn. 315, 994 A.2d 153 (2010) ...................................................................... 27

*Haskins v. Zimmer Holdings, Inc.*, No. 1:09-CV-236,
2010 U.S. Dist. LEXIS 7690, 2010 WL 342 (D. Vt. Jan. 29, 2010) ................... 29, 30

*Hawker v. Sandy City Corp.*,
774 F.3d 1243 (10th Cir. 2014) .................................................................................. 8

*Haywood v. St. Michael's College*,
536 F. App'x 123 (2d Cir. 2013) ................................................................................ 7

*Hendrikx v. State*, No. 2:13-cv-0087-RJS,
2013 U.S. Dist. LEXIS 155217 (D. Utah Oct. 29, 2013) ......................................... 29

*Henry v. Lake Charles Am. Press LLC*,
566 F.3d 164 (5th Cir. 2009) ..................................................................................... 5

*Hotchner v. Castillo-Puche*,
551 F.2d 910 (2d Cir. 1977) ............................................................................... 13, 19

*Hughes v. Twenty-First Century Fox, Inc.*,
304 F. Supp. 3d 429 (S.D.N.Y. 2018) ...................................................................... 12

RANDAZZA | LEGAL GROUP

*In re Trilegiant Corp.*,
11 F. Supp. 3d 82 (D. Conn. 2014) ................................................................... 5

*Indiaweekly.com, LLC v. Nehaflix.com, Inc.*,
596 F.Supp.2d 497 (D. Conn. 2009) ................................................................ 19

*Izzarelli v. R.J. Reynolds Tobacco Co.*,
117 F. Supp. 2d 167 (D. Conn. 2000) .............................................................. 14

*J.K. Scanlan Co. v. Constr. Grp., Inc.*,
80 Conn. App. 345 (2003) ................................................................................. 9

*Kester v. Zimmer Holdings, Inc.*, No. 2:10-cv-00523,
2010 U.S. Dist. LEXIS 59869 (W.D. Pa. June 16, 2010) ............................... 30

*Langer v. Mail Delivery & Courier Services, Inc.*, CV054008535,
2006 Conn. Super. LEXIS 336 (Sup. Ct. 2006) .............................................. 23

*Learning Care Grp., Inc. v. Armetta*, No. 3:13-CV-01540 (VLB),
2014 U.S. Dist. LEXIS 140132 (D. Conn. Sep. 30, 2014) .............................. 18

*Lerman v. Flynt Distrib. Cor.*,
745 F.2d 123 (2d Cir. 1984) ................................................................. 7, 10, 20

*Lewis v. Michigan Millers Mutual Ins. Co.*,
154 Conn. 660, 228 A.2d 803 (1967) .............................................................. 28

*Lewis v. Newtown Bd. of Educ.*, No. CV156075650S,
2018 Conn. Super. LEXIS 934 (Super. Ct. May 7, 2018) ................................. 8

*Liberty Synergistics Inc. v. Microflo Ltd.*,
718 F.3d 138 (2d Cir. 2013) ............................................................................. 5

*Machleder v. Diaz*,
801 F.2d 46 (2d Cir. 1986) .............................................................................. 16

*McGaffin v. Roberts*,
193 Conn. 393, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050 (1985) ............. 14

*McLaughlin Ford, Inc. v. Ford Motor Co.*,
192 Conn. 558, 473 A.2d 1185 (1984) ............................................................ 27

*Meeropol v. Nizer*,
560 F.2d 1061 (2d Cir. 1977) cert. denied, 434 U.S. 1013 (1978) ................. 10

*Mercer v. Brunt*,
272 F. Supp. 2d 181, 2002 U.S. Dist. LEXIS 26561 (D. Conn. 2002) ................. 22

*Miles v. City of Hartford*,
719 F. Supp. 2d 207 (D. Conn. 2010) ............................................................. 16

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990) ............................................................................................. 19

RANDAZZA | LEGAL GROUP

*Montgomery v. Risen*,
    197 F. Supp. 3d 219 (D.D.C. 2016) ........................................................................ 17

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015) ..................................................................................... 8

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) .......................................................................................... 6, 9, 13

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018) ............................................................................................ 27

*Nat'l Shooting Sports Found., Inc. v. Malloy*,
    986 F. Supp. 2d 118 (D. Conn. 2013) ....................................................................... 8

*NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*,
    745 F.3d 742 (5th Cir. 2014) .................................................................................... 5

*Olson v. Bristol-Burlington Health District*,
    87 Conn. App. 1, 863 A.2d 748 (2005) ................................................................... 24

*Packingham v. North Carolina*,
    137 S. Ct. 1730 (2017) .............................................................................................. 8

*Pan Am Sys. v. Atl. Ne. Rails & Ports, Inc.*,
    804 F.3d 59 (1st Cir. 2015) ..................................................................................... 17

*Perodeau v. Hartford*,
    259 Conn. 729, 792 A.2d 752 (2002) ...................................................................... 24

*Peruta v. Freedom of Info. Comm'n*, No. HHBCV135015745S,
    2013 Conn. Super. LEXIS 2572 (Super. Ct. Nov. 7, 2013) ...................................... 8

*Peterson v. Breg, Inc.*, 2:09-cv-2044 JWS,
    2010 U.S. Dist. LEXIS 48985 (D. Ariz. April 28, 2010) ....................................... 29

*Phantom Touring, Inc. v. Affiliated Publ'ns*,
    953 F.2d 724 (1st Cir. 1992) ................................................................................... 17

*Price v. Viking Penguin, Inc.*,
    676 F. Supp. 1501 (D. Minn. 1988) ........................................................................... 9

*Roberts v. Kelley*, CV 980418904,
    1999 Conn. Super. LEXIS 908 (Super. Ct. Apr. 8, 1999) ...................................... 22

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ..................................................................................... 5

*Schmidt v. Housing Authority of the City of Bristol*, No. 065001979,
    2007 Conn. Super. LEXIS 2617 (Sup. Ct. Oct. 4, 2007) ....................................... 23

*Scott v. Town of Monroe*,
    306 F. Supp. 2d 191 (D. Conn. 2004) ....................................................................... 6

*Sedensky v. Freedom of Info. Comm'n*, No. HHBCV136022849S,
2013 Conn. Super. LEXIS 2716 (Super. Ct. Nov. 26, 2013) ...................................... 8

*Sentementes v. General Elec. Co.*,
2014 WL 2881441 (D. Conn. June 25, 2014) ............................................................. 7

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ................................................................................................... 5

*Sherman v. Stryker Corp.*, No SAVC 09-224 JVS (ANx),
2009 U.S. Dist. LEXIS 34105 (CD. Cal. March 30, 2009) ...................................... 30

*Simms v. Seaman*,
308 Conn. 523, 69 A.3d 880 (Conn. 2013) ............................................................. 18

*Sinotte v. City of Waterbury*,
121 Conn. App. 420, 995 A.2d 131 (2010) ............................................................. 15

*Skakel v. Grace*,
2014 U.S. Dist. LEXIS 30124, 2014 WL 902675 (D. Conn. March 7, 2014) .......... 19

*St. Amant v. Thompson*,
390 U.S. 727 (1968) ................................................................................................. 12

*Strada v. Conn. Newspapers, Inc.*,
193 Conn. 313, 477 A.2d 1005 (1984) .................................................................... 20

*Suburban Restoration Co. v. ACMAT Corp.*,
700 F.2d 98 (2d Cir. 1983) ..................................................................................... 27

*TD Props., LLC v. VP Bldgs., Inc.*,
602 F. Supp. 2d 351 (D. Conn. 2009) ..................................................................... 28

*Telkamp v. Vitas Healthcare Corp. Atl.*, No. 3:15-CV-726 (JCH),
2016 U.S. Dist. LEXIS 25232 (D. Conn. Feb. 29, 2016) (Hall, U.S.D.J.) .............. 21

*Time Was Garage, LLC v. Giant Steps, Inc.*, No. LLICV106002895S,
2013 Conn. Super. LEXIS 2957 (Super. Ct. Dec. 20, 2013) ................................... 14

*Timmons v. Linvatec Corp.*,
263 F.R.D. 582, 2010 U.S. Dist. LEXIS 14057 (C.D. Cal. 2010) ........................... 29

*Tomlinson v. Bd. of Educ.*,
226 Conn. 704, 629 A.2d 333 (1993) ...................................................................... 28

*Tracy v. New Milford Public Schools*,
101 Conn. App. 560, 922 A.2d 280, cert. denied, 284 Conn. 910, 931 A.2d 935 (2007) ......... 22

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir. 1999) ..................................................................................... 5

*United States v. Alvarez*,
567 U.S. 709 (2012) ................................................................................................. 27

RANDAZZA | LEGAL GROUP

*Urban v. Hartford Gas Co.*,
139 Conn. 301, 93 A.2d 292 (1952) .............................................................. 20

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*,
517 F.3d 104 (2d Cir. 2008) ......................................................................... 6

*Watts v. Chittenden*,
301 Conn. 575, 22 A.3d 1214 (2011) ...................................................... 14, 15

*Weissman v. Koskoff, Koskoff & Bieder, P.C.*, No. HHDCV106012922S,
2011 Conn. Super. LEXIS 181 (Super. Ct. Jan. 19, 2011) ........................... 25

*Weldon v. MTAG Servs., LLC*, No. 3:16-cv-783 (JCH),
2017 U.S. Dist. LEXIS 27660 (D. Conn. Feb. 28, 2017) ............................. 27

*Woodcock v. Journal Publishing Co., Inc.*,
230 Conn. 525, 646 A.2d 92 (Conn. 1994) .................................................. 18

*Yavis v. Sullivan*,
137 Conn. 253, 76 A.2d 99 (1950) ............................................................... 20

*Zupnik v. Associated Press, Inc.*,
31 F. Supp. 2d 70 (D. Conn. 1998) ........................................................... 9, 10

## STATUTES

Conn. Gen. Stat. § 34-275a ............................................................................. 14

Conn. Gen. Stat. § 42-11a ............................................................................... 26

Conn. Gen. Stat. § 42-110g ............................................................................. 14

Conn. Gen. Stat. § 52-196a ...................................................................... *passim*

Conn. Gen. Stat. § 52-577 ............................................................................... 14

Conn. Gen. Stat. § 52-584 ............................................................................... 14

Conn. Gen. Stat. § 52-597 ............................................................................... 14

NRS 41.650 ...................................................................................................... 5

Tex. Civ. Prac. & Rem. Code § 27.001 ............................................................ 1

## OTHER AUTHORITIES

1 Restatement (Second), Torts § 46 (1965) ..................................................... 22

2017 Legis. Bill Hist. CT S.B. 981 (Mar. 31, 2017) ........................................ 4

Restatement (Second) of Torts § 652G (Am. Law Inst. 1977) ......................... 13

Restatement (Third) of Agency § 7.03 (2006) ................................................. 29

**RULES**

Fed. R. Civ. P. 12 ............................................................................................................... 6, 7

Fed. R. Civ. P. 4 ................................................................................................................ 14

Fed. R. Civ. P. 8 ............................................................................................................ 12, 29

Tex. R. Civ. P. 106 ............................................................................................................ 14

## MEMORANDUM OF POINTS AND AUTHORITIES

The assassination of President Kennedy. The lunar landings. The September 11 attacks. Sandy Hook. From these shocking events emerged some people who thought them so disruptive that they questioned whether they even happened, scouring records in support of evidence that might prove them hoaxes. Alex Jones, host of a radio show and publisher of InfoWars, firmly believes that the December 14, 2012, shooting at Sandy Hook Elementary School was **not** a hoax. As a proponent of free and open debate, he **permitted others** to state their opinions that it was a hoax and comment on the evidence in support of those opinions.

A *New York Times* article helped lead to the publication of the records of Project MKUltra, subject of conspiracy theories before then. Bob Woodward and Carl Bernstein relied on allegations from "Deep Throat" to link the Nixon Administration to the Watergate break-in. Such journalism, questioning official narratives, would be chilled if reporters were subject to liability if they turned out to be wrong.

Plaintiffs suffered a horrible tragedy. Alex Jones and InfoWars are not responsible for that tragedy. To punish them for First Amendment protected speech on this matter of public concern will not bring back the lives lost. To stifle the press (by making them liable for merely interviewing people who have strange theories) will simply turn this human tragedy into a Constitutional one.

Defendants, therefore, file a special motion to dismiss pursuant to Conn. Gen. Stat. § 52-196a[1] or, alternately, to dismiss for failure to state a claim.[2]

---

[1]    Defendants, however, waive any fees over and above the sum of $1. They have no desire to collect money from the parents of Sandy Hook victims. Nevertheless, the First Amendment implications of this case are so significant, that they felt that they must invoke the Anti-SLAPP law.

[2]    To the extent applicable, this motion is also brought under the Texas Citizens' Participation Act, Tex. Civ. Prac. & Rem. Code § 27.001, *et seq.* Unlike the Connecticut counterpart, discussed below, the Texas law does not require the showing of a matter of public concern and requires, instead of probable cause of prevailing, a "*prima facie* case for each essential element of the claim." *Id.* § 27.005; *see also Cuba v. Pylant*, 814 F.3d 701, 707 (5th Cir. 2016). No choice of law analysis is required, as dismissal is warranted under either act; since dismissal is proper as a matter of law, there can be neither probable cause of prevailing nor a *prima facie* case, to the extent these standards differ.

## 1.0    FACTUAL BACKGROUND

On December 14, 2012, Adam Lanza shot and killed 20 first-grade children and 6 adults at Sandy Hook Elementary School.  Complaint, Dkt. No. 1-1, at ¶¶ 1–3.[3]  Plaintiffs are the immediate family of six victims, plus a first-responder to the scene.  *Id.* at ¶ 21.  Defendant Alex Jones is a journalist and radio host who is the publisher of the Infowars.com and PrisonPlanet.com websites.  *Id.* at ¶ 30.  Infowars, LLC produces and broadcasts Mr. Jones's programming.  *Id.* at ¶ 31.  Free Speech Systems, LLC owns Infowars.com.  *Id.* at ¶ 32.  Infowars Health, LLC and Prison Planet TV, LLC are also owned and operated by Mr. Jones, but no specific allegations of fault are expressly attributed to their individual actions in the Complaint.[4]  *See id.* at ¶¶ 33–35 and *passim*.

Wolfgang Halbig claims the shooting was a hoax.  Complaint at ¶ 58.  Mr. Jones and the other Infowars Defendants are generally alleged to have reported on Halbig's theory by having him as a guest on a radio show, disclosing his website's URL, and sending videographer(s) and a reporter to document Mr. Halbig's activities.  *Id.* at ¶¶ 58–85.  Plaintiffs generally assert that reporting on the hoax theory implies that Plaintiffs "fabricated the deaths of their loved ones."  *Id.* at ¶ 110 and *passim*.

Despite the Complaint being filled with statements attributed to Mr. Jones and the Infowars Defendants, few are explicitly identified as being false.  And, not a single plaintiff was ever named by any Defendant.  Rather, the Complaint tends to assert that reasonable listeners "would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones."  *Id.* at ¶ 118 (Jan. 27, 2013); ¶ 126 (May 27, 2013); ¶¶ 138 & 142 (May 13, 2014, being a "clear implication"); ¶ 163 (Sept. 26, 2014); ¶ 169

---

[3]    For purposes of this motion, Defendants recite the factual allegations as pleaded by Plaintiffs in the Complaint, as, for a motion to dismiss, the court "constru[es] the complaint liberally, accepting all [well-pleaded] factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Chase Grp. Alliance LLC v. N.Y.C. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (citation and internal quotations omitted).  Though Defendants may agree with some of the factual allegations, the recitation of the facts herein should not be construed as an admission of all alleged facts, nor should it be deemed as relieving Plaintiffs of any evidentiary burdens they may have under the applicable anti-SLAPP laws.

[4]    Collectively, Infowars, LLC, Infowars Health, LLC, Prison Planet TV, LLC, and Free Speech Systems, LLC, shall be referred to as "Infowars Defendants."

(Dec. 12, 2014); ¶ 177 (Dec. 28, 2014); ¶ 186 (Jan. 13, 2015); ¶ 200 (Mar. 4, 2015); ¶ 208 (May 28, 2015); ¶ 219 (May 29, 2015, being "clearly suggesting"); ¶ 226 (Jul. 7, 2015); ¶ 233 (Nov. 17, 2016); ¶ 242 (Nov. 18, 2016, being a "clear implication"); ¶ 260 (Mar. 8, 2017, the understanding being "plaintiffs participated in a fraud that was based on lying about the deaths); ¶¶ 266 & 272 (Apr. 22, 2017, and that Defendants would be understood to state Plaintiffs were "Sandy Hook Vampires"); ¶ 274 (Apr. 28, 2017); ¶ 276 (Jun. 13, 2017); ¶¶ 287 & 297 (Jun. 15, 2017); ¶ 316 (Jun. 18, 2017); and ¶ 333 (Jun. 26, 2017).

The allegations in the Complaint as to Mr. Jones's statements are all either summaries of what others said, questions about evidence, or opinions as to the credibility of evidence. The sole exception is from December 28, 2014, more than three years before the Complaint was filed, where Mr. Jones referred to the shooting as a "hoax" and "fake" in less than two minutes of an 83-minute show. *Id.* at ¶¶ 173 & 176. However, Mr. Jones has come to the conclusion that the shooting happened. Complaint at ¶ 314. He has said so many times since then.

Explicit allegations of false statements in the Complaint only include September 25, 2014, statements about FBI crime statistics purporting to show no one was killed at Sandy Hook (¶¶ 146 & 148),[5] and Nov. 28, 2016, statements by non-party Owen Shroyer, on InfoWars, that Plaintiff Lafferty, in a November 25, 2016 *USA Today* op-ed, had falsely accused Mr. Jones of calling the shooting a hoax and that she had asserted President Trump needed to face a loved one's death. *See* Erica Lafferty, "Mr. Trump, denounce Alex Jones: Sandy Hook principal's daughter," USA TODAY (Nov. 25, 2016), attached as **Exhibit 2**;[6] *see also* Owen Shroyer response video.[7] Ms. Lafferty specifically wrote "I've faced the cold, hard truth of the murder of my mother, and

---

[5] Specifically, Table 8 of the FBI's Crime in the United States 2012 Report, Connecticut, Offenses Known to Law Enforcement, by City, 2012 lists "0" for Newtown, under "Murder and nonnegligent manslaughter." *See* **Exhibit 1**, available at: <https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/tables/8tabledatadecpdf/table-8-state-cuts/table_8_offenses_known_to_law_enforcement_by_connecticut_by_city_2012.xls> (last accessed Jul. 20, 2018).

[6] Available at: <https://www.usatoday.com/story/opinion/2016/11/25/donald-trump-sandy-hook-alex-jones-column/94335420/> (last accessed July 20, 2018).

[7] Available at: <https://www.mediamatters.org/embed/clips/2016/11/29/51281/alexjones-alexjones-20161128-sandyhook> (last accessed July 20, 2018).

it's time for Trump to face one of his own." *See* **Exhibit 2**. Mr. Shroyer's actual response was that it "sounds like she's calling for Trump to have to face someone, a loved one, dying from gun violence."[8] None of these allegations give rise to actionable claims.

## 2.0 LEGAL STANDARD

### 2.1 Anti-SLAPP Standard

On June 30, 2017, Public Act 71, entitled "An Act Concerning Strategic Litigation Against Public Participation and a Special Motion to Dismiss" was enacted in Connecticut, going into effect January 1, 2018. The Act was later codified at Conn. Gen. Stat. § 52-196a (hereinafter "Connecticut anti-SLAPP statute").[9] As set forth in the Joint Favorable Report of the Senate Judiciary Committee, the reason for the law was that the "CT Broadcasters Association wanted to see legislation end these types of lawsuits (SLAPP) which affect the media the most in their exercise of first amendment rights to free speech and not have to fight constant frivolous and often expensive litigation." 2017 Legis. Bill Hist. CT S.B. 981 (Mar. 31, 2017); *see also* Statement of Rep. William Tong, Connecticut House Transcript (Jun. 5, 2017) (the statute protects against suits "designed to chill free speech and the expression of constitutional rights" by filing a "special motion to dismiss … a frivolous or abusive claim that has no merit.").[10]

Pursuant to Section (b) of the Connecticut anti-SLAPP statute, "[i]n any civil action in which a party files a complaint, … against an opposing party that is based on the opposing party's exercise of its right of free speech … under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss the complaint…." Conn. Gen. Stat. § 52-196a(b). Section (e)(3) sets forth the applicable standard:

> The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint … is based on the moving party's exercise of its right of free speech …

---

[8] *See* Owen Troyer response video, *supra*, at 02:45–03:05.

[9] "SLAPP is an acronym for a 'strategic lawsuit against public participation,' which is a suit that is brought primarily to chill the valid exercise of a defendant's right to free speech[.]" *Ernst v. Carrigan*, 814 F.3d 116, 117 (2d Cir. 2016).

[10] Available at: <https://cga.ct.gov/2017/trn/H/2017HTR00605-R01-TRN.htm> (last accessed Jul. 20, 2018).

RANDAZZA | LEGAL GROUP

under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, unless the party that brought the complaint … sets forth with particularity the circumstances giving rise to the complaint … and demonstrates to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint ….

Conn. Gen. Stat. § 52-196a(e)(3). As set forth below, the Complaint is based on Defendants exercise of free speech in connection with a matter of public concern and Plaintiffs lack probable cause of prevailing on the merits.

### 2.2 Application of Anti-SLAPP in Federal Court

The Connecticut Anti-SLAPP law applies in this Court. Courts in this Circuit rely on Justice Stevens's concurring opinion in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 425 n. 8 (2010) to find that Federal rules cannot supersede state substantive rights. *See In re Trilegiant Corp.*, 11 F. Supp. 3d 82, 115-16 (D. Conn. 2014). State anti-SLAPP statutes are typically found to be substantive and, thus, applicable. *See, e.g.*, *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999) (applying California statute); *Henry v. Lake Charles Am. Press LLC*, 566 F.3d 164, 168-169 (5th Cir. 2009) (applying Louisiana statute); *Godin v. Schencks*, 629 F.3d 79, 86-87 (1st Cir. 2010) (applying Maine statute); *but see Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015) (declining to apply D.C. statute based on procedural nature).[11] The Second Circuit Court of Appeals has permitted a state anti-SLAPP statute to be applied. *See Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (applying Nevada statute); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138 (2d Cir. 2013) (applying California statute). The Texas anti-SLAPP law has also been applied in diversity matters. *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 752-53 (5th Cir. 2014). The substantive rights to immunity from suit and fee-shifting will ordinarily apply, whereas procedural aspects such as filing deadlines and discovery stays would not apply. *See Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016) (discussing California statute).

---

[11] Some anti-SLAPP statutes explicitly state the substantive rights created by the statutes. *See, e.g.,* NRS 41.650 (Nevada anti-SLAPP statute providing that "[a] person who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication").

RANDAZZA | LEGAL GROUP

The Connecticut anti-SLAPP statute is new and no court, state or Federal, has issued a published opinion interpreting or applying it. There is no reason to believe that the substantive rights in the Connecticut statute would be applied differently than the others the courts have found applicable. The operative provision, Section (b), focuses on the substantive right to dismissal in the face of a lawsuit arising from free speech on a matter of public concern. *See* Conn. Gen. Stat. § 52-196a(b). Section (e)(3) addresses the substantive burden. *See* Conn. Gen. Stat. § 52-196a(e)(3). And, Section (f) provides a substantive right to attorneys' fees. *See* Conn. Gen. Stat. § 52-196a(f). Those provisions are as substantive, and therefore as applicable, as those of the laws of the states discussed above.

### 2.3    Dismissal Under Rule 12(b)(6)

An action may be both dismissed under state anti-SLAPP law and Fed. R. Civ. P. 12(b)(6). *See Adelson*, 774 F.3d at 805. In considering a motion under Fed. R. Civ. P. 12 (b)(6), the plaintiffs must have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of the motion, the allegations are accepted as true. *Twombly*, *supra*, at 572. While the Court must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims…." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). Nothing in the Complaint gives rise to viable claims against Defendants.

Furthermore, public figures, including limited-purpose public figures, must meet a heightened standard and "show that the statements were made with 'actual malice' – that is, with knowledge that the statements were false or with reckless disregard as to their falsity." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) (public officials); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 154-55 (1967) (public

figures); *Lerman v. Flynt Distrib. Cor.*, 745 F.2d 123, 137, 139 (2d Cir. 1984) (limited-purpose public figures)). Actual malice "must be alleged plausibly in accordance with Rule 8." *Biro*, 807 F.3d at 545.

The Second Circuit has affirmed the dismissal of defamation claims for failure to plausibly plead facts that satisfy the exacting actual malice standard. *See, e.g., Biro*, 807 F.3d at 546; *Haywood v. St. Michael's College*, 536 F. App'x 123, 124 (2d Cir. 2013) (summary order) (stating that "the complaint simply does not plausibly allege that [defendants] acted with actual malice"); *Sentementes v. General Elec. Co.*, 2014 WL 2881441, *11 (D. Conn. June 25, 2014) (dismissing defamation claim where plaintiffs failed to allege facts tending to show knowledge of falsity or reckless disregard for the truth, "despite using the word 'maliciously' in their pleadings"). The Southern District of New York emphasized that "in defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Biro v. Conde Nast*, 964 F. Supp. 2d 255, 279 (S.D.N.Y. 2013).

## 3.0 ANALYSIS

This is a quintessential SLAPP suit. Defendants are alleged to have spoken on matters of public concern and the allegations arise solely from that speech. All of the speech is constitutionally protected and the claims are otherwise unmeritorious.

### 3.1 This Lawsuit Should be Dismissed Under the Connecticut Anti-SLAPP Statute

The Connecticut anti-SLAPP statute provides a proper basis for dismissal. The first element, that the civil action is in connection with the exercise of free speech, is met. The "right of free speech" under the statute "means communicating, or conduct furthering communication, in a public forum on a matter of public concern." *See* Conn. Gen. Stat. § 52-196a(a)(2). The causes of action are all based on "statements" or so-called "lies" attributed to Defendants. *See, e.g.*, Dkt. No. 1-1 at ¶¶ 338, 348, 361, 374, & 386. Defendants made these statements on public forums, namely online web sites that were accessible to the general public. A generally accessible web site is considered a public forum for purposes of anti-SLAPP statutes. *See, e.g., Cole v.*

RANDAZZA | LEGAL GROUP

*Patricia A. Meyer & Associates*, 2016 Cal. App. 4th 1095, 1121 (2012); *see also Packingham v. North Carolina,* 137 S. Ct. 1730, 1735 (2017) (defining a public forum as a place "all persons have access to … speak and listen, and then, after reflection, speak and listen once more" and noting that "[w]hile in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general.") (citation omitted). None of the statements meet any category of unprotected speech under the First Amendment.

Nor should the second element, that the speech is on a matter of public concern, be of any doubt. The anti-SLAPP statute defines "matter of public concern" as "an issue related to (A) health or safety, (B) environmental, economic or community well-being, … [or] (D) a public official or public figure …." Conn. Gen. Stat. § 52-196a(1). The Sandy Hook shooting was "[t]he nation's second deadliest school shooting [.]" *Hawker v. Sandy City Corp.*, 774 F.3d 1243, 1244 n.3 (10th Cir. 2014). The shooting "garnered national attention." *City of Roseville v. Zisk*, No. C073496, 2015 Cal. App. Unpub. LEXIS 4193, at *14 (June 16, 2015). In addition to shocking the nation, it spurred gun control legislation in at least New York and Connecticut as a direct consequence thereof. *See N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 248 (2d Cir. 2015); *Peruta v. Freedom of Info. Comm'n*, No. HHBCV135015745S, 2013 Conn. Super. LEXIS 2572, at *11 (Super. Ct. Nov. 7, 2013); *Nat'l Shooting Sports Found., Inc. v. Malloy*, 986 F. Supp. 2d 118, 120 (D. Conn. 2013) (Hall, U.S.D.J.). Audio tapes of the 911 calls were the subject of Freedom of Information Act litigation. *See Sedensky v. Freedom of Info. Comm'n*, No. HHBCV136022849S, 2013 Conn. Super. LEXIS 2716, at *1 (Super. Ct. Nov. 26, 2013). One court found there "is unquestionably a heightened public interest in" the materials that belonged to the shooter. *Comm'r, Dep't of Emergency Servs. & Pub. Prot. v. Freedom of Info. Comm'n*, No. HHBCV156029797S, 2016 Conn. Super. LEXIS 786, at *1 (Super. Ct. Apr. 8, 2016). Public litigation was filed by two families (not parties here) against the school district for wrongful death. *See Lewis v. Newtown Bd. of Educ.*, No. CV156075650S, 2018 Conn. Super. LEXIS 934 (Super. Ct. May 7, 2018).

- 8 -

One of the worst school shootings in history is unquestionably "an issue related to … health and safety." The fallout following the shooting constituted "an issue of … community well-being." And, as explained in Section 3.2, *infra*, Defendants' statements concerned public figures. Thus, the speech was on a matter of public concern.

The third element, lack of probable cause of prevailing, is discussed below as to each claim. For civil litigation, Connecticut defines probable cause as "a *bona fide* belief in the existence of the facts essential under the law . . . such as would warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *J.K. Scanlan Co. v. Constr. Grp., Inc.*, 80 Conn. App. 345, 350 (2003) (quotations omitted). As set forth below, there is no probable cause to support Plaintiffs' claims, and such claims are subject to dismissal under the Connecticut anti-SLAPP statute.

### 3.2 Defendants' Speech is Constitutionally Protected

Under the First Amendment, public officials and public figures must prove "actual malice" to recover for claims based on speech. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Gertz v. Robert Welch*, 418 U.S. 323 (1974). "For the purpose of determining the constitutional protection afforded a defendant's speech under the First Amendment to the United States Constitution, the court must first address whether the plaintiff is a public figure." *Zupnik v. Associated Press, Inc.*, 31 F. Supp. 2d 70, 72 (D. Conn. 1998). Plaintiff Aldenberg, an FBI agent, is a public official. *See Price v. Viking Penguin, Inc.*, 676 F. Supp. 1501, 1512 (D. Minn. 1988) ("First Amendment policy concerns behind the *New York Times* decision favor extending the concept of public official to include FBI agents when acting publicly in the course of their duties. The conduct of such agents in exerting their federal authority is a matter of legitimate public interest.") The remaining plaintiffs are public figures.

Plaintiffs, at a minimum, are involuntary public figures, ones who "become a public figure through no purposeful action of [their] own." *Gertz*, 418 U.S. at 345. In *Zupnik*, the Court found that family members and participants in high profile events can have "notoriety spilled over" and be drawn "into the public spotlight[,]" collecting cases in support thereof, to wit:

RANDAZZA | LEGAL GROUP

> *Carson v. Allied News Company*, 529 F.2d 206, 210 (7th Cir. 1976) (Johnny Carson's wife a public figure); *Dameron v. Washington Magazine, Inc.*, 250 U.S. App. D.C. 346, 779 F.2d 736, 741 (D.C. Cir. 1985) (Air Traffic Controller who was "an ordinary citizen … and never acquired any notoriety apart from the crash … [was raised] involuntarily, to the status of a limited purpose public figure"); *Meeropol v. Nizer*, 560 F.2d 1061, 1066 (2d Cir. 1977) cert. denied, 434 U.S. 1013, 54 L. Ed. 2d 756, 98 S. Ct. 727 (1978) ("In the course of extensive public debate revolving about the Rosenberg Trial [their children] were cast into the limelight and became public figures under the Gertz standards"); *Brewer v. Memphis Pub. Co., Inc.*, 626 F.2d 1238, 1257 (5th Cir. 1980) (The husband of a woman who once dated Elvis Presley was also a public figure.).

*Zupnik*, 31 F. Supp. 2d at 73. Plaintiffs similarly meet this standard. With the exception of Mr. Aldenberg, Plaintiffs' close family members were killed in a high-profile shooting. Mr. Aldenberg himself, in addition to being a public official, is akin to the air traffic controller in *Dameron*. Though they did not seek to be thrust into the spotlight, they are public figures, nonetheless.

Additionally, Plaintiff Lafferty is a limited purpose public figure. To be deemed a limited purpose public figure, a plaintiff must have: "(1) successfully invited public attention to [its] views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected [itself] into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media." *Lerman*, 745 F.2d at 136-37. By publishing an op-ed in *USA Today*, addressed to President-elect Trump, she invited public attention to her views to influence others, voluntarily injecting herself into the controversy (the hoax debate), in prominent fashion. And she has maintained wide media access. *See, e.g.,* Erica Lafferty, "'My Mom Was Killed at Sandy Hook—And Now I Have to Watch Another School Shooting Unfold,'" WOMEN'S HEALTH (Feb. 16, 2016);[12] Erin Delmore, "How The Daughter Of Sandy Hook's Principal Is Taking On Trump, 140 Characters At A Time," BUSTLE (Oct. 5, 2017);[13] Erica Lafferty, "My Mom Was Killed in Sandy

---

[12] Available at: <https://www.womenshealthmag.com/life/a18210605/erica-lafferty-florida-school-shooting-response/> (last accessed Jul. 20, 2018).

[13] Available at: <https://www.bustle.com/p/how-the-daughter-of-sandy-hooks-principal-is-taking-on-trump-140-characters-at-a-time-2793051> (last accessed Jul. 20, 2018).

Hook. Now I'm Fighting to Prevent Gun Violence," INSTYLE (Feb. 16, 2018);[14] Erica Lafferty, "My Mother Died at Sandy Hook. Megyn Kelly Has 'Profited Off My Pain,'" TIME (Jun. 14, 2017).[15]  Thus, Ms. Lafferty is both an involuntary public figure and a limited-purpose public figure.[16]

Plaintiff did not plausibly allege actual malice necessary under the First Amendment. Public figures and officials "who seek damages for defamatory statements must show that the statements were made with 'actual malice'—that is, with knowledge that the statements were false or with reckless disregard as to their falsity." *Biro*, 807 F.3d at 544.  "Actual malice" in the context of the First Amendment does not include "spite, hostility or intention to harm."  *Greenbelt Cooperative Publishing Association v. Bresler*, 398 U.S. 6, 10 (1970); *see also Garrison v. Louisiana*, 379 U.S. 64, 78-79 (1964) (reckless disregard not established by a finding of "ill-will, enmity, or a wanton desire to injure.").  Actual malice only exists where a defendant has actual, subjective knowledge of falsity or an awareness of a strong likelihood the statement is false; "reckless conduct is not measured by whether a reasonably prudent man would have published, or

---

[14]   Available at: <https://www.instyle.com/news/gun-violence-erica-lafferty> (last accessed Jul. 20, 2018).
[15]   Available at: <http://time.com/4816317/sandy-hook-victim-outraged-megyn-kelly-alex-jones/> (last accessed Jul. 20, 2018).
[16]   Other plaintiffs also appear to be limited purpose public figures as well, having taken prominent, public roles after the shooting. *See, e.g.*, Oprah Winfrey, "'He Has Become Our Light': Oprah Talks to the Wheelers," Oprah.com (2013), available at: <http://www.oprah.com/spirit/oprah-talks-to-francine-and-david-wheeler-sandy-hook-parents> (last accessed Jul. 20, 2018) (Oprah Winfrey interview with David & Francine Wheeler); Sarah Childress, "Jackie and Mark Barden, Parents of Newtown Victim: Daniel Was 'A Kind Little Soul,'" PBS (Feb. 19, 2013), available at: <https://www.pbs.org/wgbh/frontline/article/jackie-and-mark-barden-parents-of-newtown-victim-daniel-was-a-kind-little-soul/> (last accessed Jul. 20, 2018) (PBS interview with Jacqueline and Mark Barden); Philip Sherwell, "Sandy Hook school shooting: British victim's grieving family fight for their son's legacy," THE TELEGRAPH (Dec. 13, 2014), available at: <https://www.telegraph.co.uk/news/worldnews/northamerica/usa/11291893/Sandy-Hook-school-shooting-British-victims-grieving-family-fight-for-their-sons-legacy.html> (last accessed Jul. 20, 2018) (Nicole & Ian Hockley); Nanci G. Hutson, "Sandy Hook parent: 'We fell off a cliff without a safety net,'" THE CONNECTICUT POST (Nov. 15, 2014), available at: <https://www.ctpost.com/local/article/Sandy-Hook-parent-We-fell-off-a-cliff-without-a-5894867.php> (last accessed Jul. 20, 2018) (Jennifer Hensel & Jeremy Richman); Christine Roberts, "Iconic photo of woman's anguish before learning her sister died in the Newtown massacre is a reminder that 'kills,' Carlee Soto says," NEW YORK DAILY NEWS (Dec. 18, 2012), available at: <http://www.nydailynews.com/news/national/photo-reaction-kills-sister-teacher-killed-newtown-article-1.1223033> (last accessed Jul. 20, 2018) (Donna Soto & Carlee Soto-Parisi); Edith Honan, "Newtown victim's sister turns gun control 'accidental activist,'" REUTERS (Jun. 14, 2013), available at: <https://www.reuters.com/article/us-usa-shooting-newtown-soto/newtown-victims-sister-turns-gun-control-accidental-activist-idUSBRE95D06N20130614> (last accessed Jul. 20, 2018) (Jillian Soto); Joseph Wenzel IV, "Family, friends remember Victoria Soto," WFSB (2013), available at: <http://www.wfsb.com/story/24174421/family-friends-remember-victoria-soto> (last accessed Jul. 20, 2018) (Carlos Soto).

would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Finally, a defamation plaintiff must establish actual malice by clear and convincing evidence. *See Bose Corp. v. Consumers Union, Inc.*, 466 U.S. 485, 511 (1984); *see also Celle v. Filipino Reporters Enters.*, 209 F.3d 163, 183 (2d Cir. 2000).

Actual malice must be plausibly alleged under Fed. R. Civ. P. 8. *Harasz v. Katz*, 239 F. Supp. 3d 461, 482-83 (D. Conn. 2017) (citing *Biro, supra*). Plaintiffs made a single, *pro forma,* conclusory allegation that "[t]he defendants had knowledge that their statements were lies, or acted with reckless disregard as to the falsity of their statements," without any connection to the facts. These mere "'naked assertions' or 'conclusory statements' are not enough." *Biro*, 807 F.3d at 544 (quoting *Iqbal*, 556 U.S. 662). Nothing in the Complaint asserts nonconclusory knowledge of falsity or reckless disregard. To the contrary, the Complaint is replete with references to the factual basis for the hoax theory. *See, e.g.,* Dkt. No. 1-1 at ¶¶ 102-105 (victim's father asking "read the card," seemingly reading scripted remarks); ¶¶ 106-107 (FAU Communications Professor discussing motives of interviewees); ¶ 137 (Statement by Mayor Bloomberg before the shooting); ¶ 147 (FBI Crime Statistics omission of homicides in Newtown); ¶ 168 (molded physical appearance of the school); ¶ 181 (photographic resemblance of one victim to a victim of an unrelated event); ¶ 195 (absence of expected response personnel); ¶ 198 (Connecticut police casually eating lunch inside school); ¶ 221 (sealed nature of records); ¶ 222 (reporting by Anderson Cooper seeming to have used a green-screen); ¶ 269 (demeanor of police); ¶ 270 (immediacy of portable toilets on scene for media); and ¶ 271 (lack of clear photos of victims). The Plaintiffs do not allege Defendants knew these facts to be false or recklessly disregarded their falsity in relying on them to assess whether the shooting happened; in fact, they do not dispute them at all. Thus, there is no plausible allegation of actual malice. *See Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 453 (S.D.N.Y. 2018) (granting Rule 12(b)(6) motion because "[t]he Complaint's allegations regarding the element of actual malice are conclusory and provide no detail as to each Defendants' knowledge or mental state").

### 3.3 The Speech is Protected as Fair Comment

In Connecticut, the "fair comment" privilege is a "qualified privilege to express an opinion or otherwise comment on matters of public interest." *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 114 (1982). It has generally been deemed "elevated to constitutional status" and governed by *New York Times* and its progeny. *Id*. at 115. "Under any circumstances that would give rise to a conditional privilege for the publication of defamation, there is likewise a conditional privilege for the invasion of privacy." Restatement (Second) of Torts § 652G (Am. Law Inst. 1977); *see also Dellacamera v. New Haven Register*, No. CV000436560, 2002 Conn. Super. LEXIS 3403, at *13 (Conn. Super. Ct. Oct. 28, 2002) (citing Restatement (Second) of Torts § 652G) ("[P]rivileges applicable to defamation claim, such as fair report privilege, also apply to false light claim.").

As noted by the Second Circuit, "[a] writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be." *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977). Under the privilege, "expressions of 'pure' opinion (those based upon known or disclosed facts) are guaranteed virtually complete constitutional protection. Expressions of 'mixed' opinion, however, are privileged only where made (1) by members of the press or news media; (2) about matters of public interest or concern; and (3) without knowingly or recklessly distorting the facts upon which they are based." *Id*. at 118-119. Defendants are media members.[17] *See* Dkt. No. 1-1 at ¶¶ 40 & 93. As discussed above, the Sandy Hook shooting is a matter of public interest and concern. And, to the extent Mr. Jones concluded at one point that the shooting was a hoax, it was based on the factual bases described above, none of which were knowingly or recklessly distorted.

The business entity defendants similarly enjoy the privilege. *See Charles Parker Co. v. Silver City Crystal Co*., 142 Conn. 605, 619 (1955) ("Unless it could be shown that that defendant company maliciously permitted its facilities to be used, or that it knew that the facts stated were

---

[17] Under the First Amendment, "a distinction drawn according to whether the defendant is a member of the media or not is untenable." *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 149 (2d Cir. 2000).

- 13 -

false and yet allowed the broadcast, or otherwise acted in bad faith, it too is shielded by the privilege."). There is no malice. There is no knowledge of falsehood. There is no bad faith. Thus, the claims are all barred by the fair comment privilege.

### 3.4 Most of the Allegations are Time-Barred

The bulk of the allegations are not timely. "In Connecticut, an action is commenced on the date of service of the writ upon the defendant…." *McGaffin v. Roberts*, 193 Conn. 393, 401-402 n.9 (1984), cert. denied, 470 U.S. 1050 (1985) (citations omitted). All of the common law claims are governed by a two-year statute of limitations. *See* Conn. Gen. Stat. §§ 52-577, 52-584, & 52-597. The Connecticut Unfair Trade Practices Act has a three-year statute of limitations. Conn. Gen. Stat. § 42-110g(f).

Although Plaintiffs purportedly served Mr. Jones on June 13, 2018, such service was invalid. None of the means of service under Fed. R. Civ. P. 4(e) were met. According to the returns of service, he was served by copy to the Connecticut Secretary of State, who is not an agent of service, and by affixation to a house that is not his usual place of abode. Neither is such service authorized under Texas Rule 106. Similarly, the limited liability companies are not registered to do business in Connecticut, nor did they transact business in Connecticut, rendering service on the Secretary of State invalid. *See* Fed. R. Civ. P. 4(h)(1)(B); Conn. Gen. Stat. § 34-275a.

Each alleged act of defamation was a distinct event, giving rise to a separate cause of action. *See Time Was Garage, LLC v. Giant Steps, Inc.*, No. LLICV106002895S, 2013 Conn. Super. LEXIS 2957, at *25 (Super. Ct. Dec. 20, 2013). Nor is there some special relationship between the parties that would warrant application of the "continuing course of conduct" doctrine for the defamation claim. Similarly, the doctrine does not apply to false light invasion of privacy claims. *See Brady v. Bickford*, No. KNLCV116007541, 2015 Conn. Super. LEXIS 585, at *23-24 (Super. Ct. Mar. 13, 2015).

Defendants acknowledge that the CUTPA claim and the emotional distress claims could be subject to the doctrine. *See Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 177 (D. Conn. 2000) (CUTPA); *Watts v. Chittenden*, 301 Conn. 575, 596 (2011) (intentional infliction

- 14 -

of emotional distress); *Brady*, 2015 Conn. Super. LEXIS 585, at \*14-15 (citing cases suggesting it may apply to negligent infliction claims). "To support a finding of a 'continuing course of conduct' that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong." *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 209 (1988). However, there is no "special relationship," supporting a claim of breach of duty, between Plaintiffs and Defendants that would make the doctrine applicable for the CUTPA or negligent infliction claims. *Sinotte v. City of Waterbury*, 121 Conn. App. 420, 440-41 (2010). The only instance where the special relationship/ duty requirement has been abrogated is for intentional infliction claims. *See Watts v. Chittenden*, 301 Conn. 575 (2011). Thus, for purposes of the common law claims, excepting the intentional inflict claim, only actions after July 20, 2016 and for the statutory claim, July 20, 2015, may be generally considered, at the earliest.

### 3.5     None of the Claims are Plausible

Not only are the alleged statements constitutionally infirm and subject to the fair comment privilege, they are implausible. Nothing in the Complaint could plausibly give rise to liability and they are subject to dismissal outright.

### 3.5.1   Defendants are Not Liable for False Light Invasion of Privacy

Plaintiffs were not put in a false light. "The definition of false light invasion of privacy is as follows: One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Allen v. Verizon Wireless*, 2013 U.S. Dist. LEXIS 80228, at \*27 (D. Conn. June 6, 2013) (Hall, U.S.D.J.), quoting *Grigorenko v. Pauls*, 297 F. Supp. 2d 446, 448 (D. Conn. 2003). Plaintiffs do not meet these elements.

First, Plaintiffs were not placed before the public by Mr. Jones. "Under the group libel doctrine, a plaintiff's claim is insufficient if the allegedly defamatory statement referenced the plaintiff solely as a member of a group, unless the plaintiff can show that the circumstances of the publication reasonably give rise to the conclusion that there is a particular reference to the plaintiff." *Diaz v. NBC Universal, Inc.*, 337 F. App'x 94, 96 (2d Cir. 2009) (citing *Algarin v. Town of Wallkill*, 421 F. 3d 137, 139 (2d Cir. 2005). The standard for "group libel" may also be considered in evaluating a group false light claim. *See, e.g.*, *Degroat v. Cooper*, 2014 U.S. Dist. LEXIS 66089, at *15-16 (D.N.J. May 14, 2014). With the exception of Ms. Lafferty in one instance, none of the plaintiffs were identified by name. Twenty-six people were killed by Adam Lanza. They each had a multitude of family members, of whom the plaintiffs are a small subset. There were approximately 325 first responders, of whom Mr. Aldenberg was only one. *See* Mark Zaretsky, "Connecticut officials honor Sandy Hook responders," NEW HAVEN REGISTER (Jul. 8, 2014).[18] Nothing about the statements would reasonably give rise to the conclusion that the statements were particularly referring to them.

Second, Defendants did not have knowledge of or act in reckless disregard as to the alleged falsity of the publicized matter. This is the same actual malice standard discussed generally above. *See Cowras v. Hard Copy*, No. 3:95cv99 (AHN), 1997 U.S. Dist. LEXIS 23514, at *43-44 (D. Conn. Sep. 29, 1997). If "[t]here is nothing false about th[e] statement" at issue, then there can be "no claim of false light." *Miles v. City of Hartford*, 719 F. Supp. 2d 207, 216-17 (D. Conn. 2010) ("[T]he Connecticut courts have only recognized a false light claim where the defendant has published a falsehood."); *Machleder v. Diaz*, 801 F.2d 46, 53 (2d Cir. 1986) ("[T]ruth … is a complete defense to a false light invasion of privacy cause of action"); *Goodrich*, 188 Conn. at 131-32 (1982) (when "the published statements concerning … [plaintiff's] affairs [a]re true," any "claim for a false light invasion of privacy" is defeated). "As long as the matter published is substantially true, [a] defendant [i]s constitutionally protected from liability for a false light

---

[18]     Available    at:    <https://www.nhregister.com/connecticut/article/Connecticut-officials-honor-Sandy-Hook-responders-11371762.php> (last accessed Jul. 20, 2018).

- 16 -

invasion of privacy[.]" *Id.* at 113, 132 (substantially true means that "the main charge, or gist" of the allegedly defamatory statement is true) (emphasis added). As set forth above, the Complaint is replete with the factual bases for the hoax theory. Plaintiffs do not deny those particular facts. Thus, Defendants' factual statements are substantially true and it cannot be shown that they otherwise acted with knowledge of falsity or in reckless disregard thereof.

Third, calling the shooting "fake" or a "hoax" is a matter of opinion. "[T]he essence of a claim for invasion of privacy by way of false light depends upon the falsity of the statement, a clear expression of an opinion which is neither objectively true or untrue—is insufficient to support such a cause of action." *Berry v. Ronald*, No. FBTCV175032673, 2018 Conn. Super. LEXIS 324, at *9 (Super. Ct. Feb. 20, 2018). As noted by the First Circuit Court of Appeals, as to the words "fake" and "phony," those "adjectives admit of numerous interpretations," meaning they are "unprovable" and are not actionable opinion. *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 728 (1st Cir. 1992); *see also Pan Am Sys. v. Atl. Ne. Rails & Ports, Inc.*, 804 F.3d 59, 65 n.2 (1st Cir. 2015). Similarly, as to hoaxes, "[a] person's opinion concerning which events rank among the greatest hoaxes in American history is a quintessential example of a subjective opinion. There is simply no method to objectively verify where an event ranks among the greatest hoaxes in American history—or whether a particular event even makes the list." *Montgomery v. Risen*, 197 F. Supp. 3d 219, 249 (D.D.C. 2016).[19]

Defendants set forth the factual bases for the opinions, rendering them protected. *See Dow v. New Haven Indep., Inc.*, 41 Conn. Supp. Ct. 31, 38 (1987) (when "the defendant states the fact upon which he or she bases the opinion" their "statements clearly fall within the protection of the first amendment"); *Colon v. Town of W. Hartford*, No. 3:00CV168(AHN), 2001 U.S. Dist. LEXIS 484, at *16 (D. Conn. Jan. 5, 2001) (opinion was privileged where writer "disclose[d] the factual basis for her opinion"). Thus, there is no plausible claim for false light invasion of privacy.

---

[19] As to Ms. Lafferty, as discussed above, Mr. Shroyer accurately reflected that she called upon President Trump to suffer a personal tragedy. As to disputing whether Mr. Jones had called the shooting fake or a hoax, she does not allege that Mr. Shroyer knew that, two years prior, he had used such terminology or recklessly disregarded it.

### 3.5.2 Defendants are Not Liable for Defamation *Per Quod* or *Per Se*

Defendants did not defame Plaintiffs. Under Connecticut law, in order "[t]o establish a prima facie case of defamation" a party "must demonstrate that: (1) [the defendant] published a defamatory statement; (2) this defamatory statement identified [the plaintiff] to a third person; (3) this defamatory statement was published to a third person; and (4) [the plaintiff's] reputation suffered injury as a result of the defamatory statement." *Simms v. Seaman*, 308 Conn. 523, 547-48, 69 A.3d 880 (Conn. 2013), quoting *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627-28 (Conn. 2009).

First, Plaintiffs cannot recover under the group libel doctrine. *See Abramson v. Pataki*, 278 F.3d 93, 102-03 (2d Cir. 2002) (finding individual Javits Center workers could not bring claims where there were repeated references to corruption among them). The statements were not "of and concerning" Plaintiffs. Under Connecticut law,

> [t]o establish a prima facie case of defamation, a plaintiff must allege a defamatory statement that identifies the plaintiff to a third party. Where the defamatory statement is not made about the plaintiff, the defamation claim must fail. Indeed, the Connecticut Supreme Court has observed that proving that a defamatory statement was made "of and concerning" the plaintiff is a constitutional prerequisite to recovery for defamation. Although a defamatory statement may be "of and concerning" the plaintiff even though on its face it refers to another person, more is required than a mere pleading of defamation by association; rather, a reasonable recipient must understand that the defamatory statement is "in substance, actually about" the third party.

*Learning Care Grp., Inc. v. Armetta*, No. 3:13-CV-01540 (VLB), 2014 U.S. Dist. LEXIS 140132, at *49-50 (D. Conn. Sep. 30, 2014) (internal citations omitted). At best, Plaintiffs plead defamation by association; recipients would not understand it to be about them, by name. With the exception of Ms. Lafferty, none of the plaintiffs were specifically referenced, and she was only referenced a single time, without general relation to the "fake" or "hoax" claim.

Second, for a statement to be defamatory, it must be false. *Devone v. Finley*, No. 3:13-CV-00377 (CSH), 2014 U.S. Dist. LEXIS 36356, at *24 (D. Conn. Mar. 20, 2014). Moreover, a "defendant will not be held liable as long as the statements at issue are substantially true." *Woodcock v. Journal Publishing Co., Inc.*, 230 Conn. 525, 554 (Conn. 1994). Thus, "[w]here the

main charge, or gist, of the [defamation] is true, minor errors that do not change a reader's perception of the statement do not make the statement actionable." *Skakel v. Grace*, 2014 U.S. Dist. LEXIS 30124, 2014 WL 902675, at *4-5 (D. Conn. March 7, 2014) (internal quotation marks and citations omitted). These statements are all either substantially true or non-factual statements. "For a statement to be defamatory, it must be one of fact, rather than one of opinion." *Devone*, 2014 U.S. Dist. LEXIS at *24; *Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 596 F.Supp.2d 497, 503 (D. Conn. 2009) (under Connecticut common law, "a defamation claim requires a statement that is an assertion of fact, either explicit or implied, and not merely an opinion"). "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known…. An opinion, on the other hand, is a personal comment about another's conduct, qualifications or character that has some basis in fact." *Goodrich*, 188 Conn. at 111 (internal citations and quotation marks omitted). Generally, "expressions of 'pure' opinion (those based upon known or disclosed facts) are guaranteed virtually complete constitutional protection." *Id*. at 118. Put simply, "[a]n assertion that cannot be proved false cannot be held libellous [sic]." *Hotchner*, 551 F.2d at 913. As discussed above, the matters such as the cue card, Anderson Cooper's appearance, etc., are not denied. Thus, the factual portions of the statements are substantially true.

The conclusions of it being "fake" and a "hoax" are statements of protected opinion. "An author is constitutionally permitted to use exaggeration, hyperbole, ridicule, sarcasm, stylistic touches and figurative expressions to embellish disclosed facts." *Colon*, 2001 U.S. Dist. LEXIS 484, at *15 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). Not infrequently, "courts have found that use of the word 'fraud' can be offered as a statement of opinion rather than as a factual declaration." *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 294 (E.D.N.Y. 2015) (collecting cases); *see also Friedman v. Boston Broadcasters, Inc.*, 402 Mass. 376, 379-80, 522 N.E.2d 959 (1988) (characterizing plaintiffs as "insurance crooks," who engaged in "insurance fraud" constitutes a statement of opinion and not fact); *Dong v. Board of Trustees of Leland Stanford University*, 191 Cal. App. 3d 1572, 1585-1586, 236 Cal. Rptr. 912

(1987) (letter stating that plaintiff had engaged in "public fraud" was a statement of opinion based on disclosed facts). Similarly, as discussed above, courts have also deemed calling something "fake" or a "hoax" as opinion.

Neither were Plaintiffs defamed by implication. "Connecticut has not recognized defamation by implication." *Estate of Gomez v. Larson*, CV 980084646, 1999 Conn. Super. LEXIS 1535, at \*16 (Super. Ct. June 8, 1999). As to defamation by innuendo, "[i]n the absence of [] undisclosed facts, first amendment considerations dictate that an article concerning a public figure composed of true or substantially true statements is not defamatory regardless of the tone or innuendo evident." *Strada v. Conn. Newspapers, Inc.*, 193 Conn. 313, 323 (1984). Here, Defendants disclosed the factual bases for their opinions, which Plaintiffs set forth in detail in the Complaint.

Further, Mr. Jones and the Infowars Defendants are only liable for their own statements, not those of Mr. Halbig or Mr. Shroyer. As discussed below, there was no conspiracy. A defendant transmitting defamatory material from a third party is not liable unless the defendant can be "shown to have had 'a high degree of awareness of the statement's probable falsity' or to have 'in fact entertained serious doubts as to the truth of his publication.'" *Lerman*, 745 F.2d at 139, cert. denied, 471 U.S. 1054 (1985) (quoting *Garrison*, 379 U.S. at 74). Plaintiffs do not and cannot assert an awareness of falsity or doubt at the time of transmission. Thus, there is no actionable defamation.

Third, Plaintiffs fail to allege recoverable damages. In a defamation claim, Plaintiffs must allege and prove special damages. *See Yavis v. Sullivan*, 137 Conn. 253, 259 (1950). Special damages "must be of a material and, generally, of a pecuniary nature. It must result from the conduct of a person other than the defamer or the defamed, and that conduct must be directly caused by the publication of the slander." *Urban v. Hartford Gas Co.*, 139 Conn. 301, 308 (1952). Plaintiffs do not allege material or pecuniary losses, such as the loss of a job prospect, as a result of the statements. Thus, the claim for defamation *per quod* fails.

Neither are the claims for defamation *per se* tenable. "In limited circumstances, a plaintiff may be able to argue that she was per se defamed, thus obviating the need to establish the fourth element of reputational harm." *Telkamp v. Vitas Healthcare Corp. Atl.*, No. 3:15-CV-726 (JCH), 2016 U.S. Dist. LEXIS 25232, at *34-35 (D. Conn. Feb. 29, 2016) (Hall, U.S.D.J.). The essential difference between claims of defamation and defamation per se is that, "[a]s to the final prong of the prima facie case of defamation, that of injury to reputation, when a plaintiff claims defamation per se, she need not prove damages." *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 842, 850 (2005). "In general, there are two classes of libel that are actionable per se: (1) libels charging crimes and (2) libels which injure a man in his profession and calling." *Id*. Here, Plaintiffs merely claim that the statements "implicate the Plaintiffs in heinous criminal conduct." Complaint at ¶ 350. No actual crime is identified and there is no allegation Defendants asserted they committed a crime rather than merely being "implicate[d]." Thus, there is no *per se* claim for defamation.

### 3.5.3   Defendants are Not Liable for Intentional Infliction of Emotional Distress

The torts of intentional and negligent infliction of emotional distress can "not be used to circumvent the established and carefully balanced framework of constitutional and state libel law." *Chaiken v. W Publishing Corp.*, 907 F. Supp. 689, 699 (S.D.N.Y. 1995), aff'd, 119 F.3d 1018 (1997). Thus, just as Defendants' speech is protected under the First Amendment from claims of libel, it is also protected from emotional distress claims based on the same protected speech.

As to the elements, Defendants are not liable for intentional infliction of emotional distress. To recover, Plaintiffs must prove that:

> (a) defendants intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of [its] conduct; (b) defendants' conduct was extreme and outrageous; (c) defendants' conduct caused the plaintiff's distress; and (d) the emotional distress suffered by the plaintiff was severe. The standard in Connecticut for conduct reaching the level of "extreme and outrageous" is defined as "that which exceeds all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."

RANDAZZA | LEGAL GROUP

*Mercer v. Brunt*, 272 F. Supp. 2d 181, 188, 2002 U.S. Dist. LEXIS 26561 (D. Conn. 2002) (citations omitted). These elements are not met.

First, nothing in the factual background suggests Defendants had any intention to harm Plaintiffs or had reason to foresee their words would cause harm. They were discussing a matter of public concern, generally without reference to any named person who had some relationship to a victim.

Second, Defendants' speech was not extreme and outrageous. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" *Tracy v. New Milford Public Schools*, 101 Conn. App. 560, 569-70, cert. denied, 284 Conn. 910 (2007) (internal quotation marks omitted.). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 211 (2000). Similarly, "plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Davis v. Davis*, 112 Conn. App. 56, 67 (2009), quoting 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965).

Plaintiffs fail to set forth what, exactly, they claim was extreme and outrageous. *See Avery v. City of W. Haven*, 3:99-CV-00013 (EBB), 2001 U.S. Dist. LEXIS 24394, at *20-21 (D. Conn. Feb. 1, 2001) (dismissing claim that "merely allege[d] Defendants' conduct was extreme and outrageous — a legal conclusion.") Even with the most charitable construction of the claims, publicly calling someone a liar does not reach that high standard. *See Roberts v. Kelley*, CV 980418904, 1999 Conn. Super. LEXIS 908, at *4-5 (Super. Ct. Apr. 8, 1999). One court summarized a series of cases in which extreme and outrageous conduct was **not** found:

> *Schmidt v. Housing Authority of the City of Bristol*, Superior Court, judicial district of New Britain, Docket No. 06 5001979, 2007 Conn. Super. LEXIS 2617 (October 4, 2007, Shapiro, J.) (motion to strike granted where defendants made false and misleading statements that the plaintiff violated a drug-free workplace policy; intentionally hired a known drug user; engaged in a conspiracy to hide drug usage by using a masking agent to foil drug testing; repeatedly republished the same untrue and misleading representations; spread rumors and innuendos about her; and caused the plaintiff to be terminated from her employment; withheld and hid information from her, created pretexts for investigation and terminating her, and demanded that she report to work while she was disabled and on approved leave). *See also Crane v. Northwestern CT Young Mens Christian Assoc.*, No. CV 04 4001019 Superior Court, judicial district of Litchfield at Litchfield, 2005 Conn. Super. LEXIS 1614 (Bozzuto, J., 2005) (defendants spoke and/or published defamatory statements about plaintiff's capabilities as a swim coach, and maliciously contacted plaintiff's other employer); *Langer v. Mail Delivery & Courier Services, Inc.*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 05 4008535, 2006 Conn. Super. LEXIS 336 (Hiller, J., 2006) (defendants made statements in front of plaintiff's daughter that plaintiff was a thief and a liar, and that customers smelled alcohol on his breath, that customers hated him, and that he was a useless cheat, loafer and common drunkard, these statements were insufficient to support a claim of intentional infliction of emotional distress).

*Burke v. State*, No. MMXCV065000409S, 2010 Conn. Super. LEXIS 282, at *14-16 (Super. Ct. Feb. 2, 2010). As those cases could not meet the high burden of showing extreme and outrageous conduct, neither do Plaintiffs.

Nor do Plaintiffs properly plead the element of severe emotional distress. They only make conclusory allegations that they suffered "emotional distress" that was "severe" caused by Defendants. Complaint at ¶¶ 363, 364 & 367. This is insufficient as a matter of law. *See Avery*, *supra* ("Nor do Plaintiffs allege how, and in what manner they all suffer from mental distress of a very serious kind.") As a result, the intentional infliction of emotional distress claim cannot proceed.

### 3.5.4 Defendants are Not Liable for Negligent Infliction of Emotional Distress

The First Amendment, as stated above, protects Defendants from claims of negligent infliction of emotional distress. Assuming, *arguendo*, such claims survive constitutional scrutiny, the elements of the claim are not met.

> The elements of negligent infliction of emotional distress are: 1) that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional

- 23 -

distress; 2) the plaintiff's distress was foreseeable; 3) the emotional distress was severe enough that it might result in illness or bodily harm; and 4) the defendant's conduct was the cause of the plaintiff's distress.

*Adams v. Hartford Courant*, No. 3-03-cv-0477 (JCH), 2004 U.S. Dist. LEXIS 8546, at *14 (D. Conn. May 14, 2004) (Hall, U.S.D.J.). Nothing in the Complaint could warrant a finding of liability.

As with intentional infliction, Plaintiffs make insufficient, conclusory allegations as to their harm, with a *pro forma* recitation that they suffered emotional distress, caused by Defendants, "severe enough that it might result in illness or bodily harm." Complaint at ¶¶ 375-378. The Complaint is devoid of detail as to their alleged distress, illness, or physical harms suffered.

Neither was that harm foreseeable. "The foreseeability requirement in a negligent infliction of emotional distress claim is more specific than the standard negligence requirement that an actor should have foreseen that his tortious conduct was likely to cause harm…. In order to state a claim for negligent infliction of emotional distress, the plaintiff must plead that the actor should have foreseen that her behavior would likely cause harm of a specific nature, i.e., emotional distress likely to lead to illness or bodily harm." *Olson v. Bristol-Burlington Health District*, 87 Conn. App. 1, 5, cert. granted on other grounds, 273 Conn. 914 (2005) (appeal withdrawn May 25, 2005) (citation omitted). "In negligent infliction of emotional distress claims, unlike general negligence claims, the foreseeability of the precise nature of the harm to be anticipated [is] a prerequisite to recovery even where a breach of duty might otherwise be found.…" *Perodeau v. Hartford*, 259 Conn. 729, 754 (2002) (emphasis added; internal quotation marks omitted).

The speech at issue was all of a matter of public concern, to a general audience, not specifically targeting Plaintiffs. Even as to Ms. Lafferty, the statement by Mr. Shroyer would be a reasonably anticipated rebuttal of her *USA Today* op-ed, a public position that would invite a response. Engaging her on that issue did not represent an "unreasonable risk" and it was not foreseeable that she, or any other plaintiff, would suffer illness or bodily harm as a result of a general discussion of the circumstances of the shooting and the conclusions drawn therefrom. Thus, the claim must be dismissed.

### 3.5.5 Plaintiffs' Conspiracy Claims Lack Merit

Counts One through Four of the Complaint all allege civil conspiracy as part of the underlying tort, pleading for each:

- The defendants combined to conduct their campaign of harassment and abuse, which included numerous unlawful acts or lawful acts by unlawful means.

- The defendants combined to perform these unlawful acts pursuant to their scheme to harass and abuse the plaintiffs and in furtherance of that scheme.

Complaint at ¶¶ 344, 345, 357, 358, 370, 371, 382 & 383. Plaintiffs also make general allegations that the defendants "acted together to develop, disseminate, and propagate" the allegedly false statements. *Id*. at ¶¶ 84-85. These naked allegations are insufficient.

Under Connecticut law, "there is no independent claim of civil conspiracy. Rather, the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself. Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Harp v. King*, 266 Conn. 747, 779 n.37 (2003) (internal citation and quotation marks omitted). A conspiracy requires that "one or more persons, by express or tacit agreement, act in combination with another for a particular purpose or to attain a particular end." *Id.* at 781. As a result, a plaintiff must "allege the commission of a tortious act in furtherance of the conspiracy, which of course is necessary to establish liability for civil conspiracy, which is not an independent cause of action, but rather a separate legal basis upon which two or more persons can intentionally combine to commit an underlying legal wrong." *Weissman v. Koskoff, Koskoff & Bieder, P.C.*, No. HHDCV106012922S, 2011 Conn. Super. LEXIS 181, at *29 (Super. Ct. Jan. 19, 2011).

First, as discussed above, there are no substantive torts alleged that survive scrutiny. There is no plausible allegation Defendants entered into any agreement or had a particular purpose or end to harm Plaintiffs. As to Mr. Sklanka, no actual role in the website or broadcasts is alleged as harming Plaintiffs. Merely driving and filming Mr. Halbig in some unspecified manner does not state a conspiracy, especially where the sole allegation of semi-specific conduct by Mr. Sklanka

- 25 -

does not mention Plaintiffs at all. Complaint at ¶ 60. None of the other allegations as to Mr. Halbig, for whom Mr. Sklanka allegedly worked, for May 13, 2014, September 25, 2014, December 12, 2014, March 4, 2015, May 28, 2015, and May 29, 2015, even mention Mr. Sklanka. *Id*. at ¶¶ 129–170 & 189–219. In fact, the June 2, 2015 alleged incident appears nowhere in the so-called "Campaign of Abuse." *Id*. at ¶¶ 101–end.

Similarly, as to Mr. Halbig, there is no basis to suggest Mr. Jones or the Infowars Defendants made any agreement—the only nonconclusory factual allegation is that Mr. Halbig was a repeat guest. Sens. John McCain and Robert Dole and Vice President Joseph Biden each appeared on NBC News's *Meet the Press* dozens of times; it would be ludicrous to suggest there is any combination among them on that basis. *See* Linda Qiu, "John McCain says he holds the record for 'Meet the Press' appearances," POLITIFACT (Aug. 27, 2014).[20] There is no cognizable conspiracy claim for any of the four common law claims.

### 3.5.6 Defendants are Not Liable Under CUTPA

In their fifth cause of action, Plaintiffs allege that Defendants' speech is in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-11a, *et seq*. Plaintiffs' CUTPA claim is insufficiently pled, and impermissibly made up of mere conclusions and a formulaic recitation of the elements of a cause of actions. *Twombly*, 550 U.S. at 555.

"The purpose of CUTPA is to protect the public from unfair trade practices in the conduct of any trade or commerce, 'and whether a practice is unfair depends upon the finding of a violation of an identifiable public policy.'" *Eder Bros. v. Wine Merchants. Of Conn., Inc.* 275 Conn. 363, 380 (Conn. 2005) quoting *Daddona v. Liberty Mobile Home Sales, Inc.*, 209 Conn 243, 257 (1988). Plaintiffs' allegations do not amount to a CUTPA violation.

The following factors, known as the "cigarette rule," determine whether a trade practice is unfair or deceptive:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common

---

[20] Available at: <http://www.politifact.com/truth-o-meter/statements/2014/aug/27/john-mccain/john-mccain-says-he-holds-record-meet-press-appear/> (last accessed Jul. 20, 2018).

law, or otherwise – whether, in other words, it is within at least a penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen.

*Harris v. Bradley Memorial Hosp. and Health Center, Inc.*, 296 Conn. 315, 350 (2010).  None of the factors are met.

First, as set forth above, there is no cognizable common law claim.  Plaintiffs do not allege any other violation of an established concept of unfairness.  First Amendment protected activity cannot give rise to a CUTPA violation.  "The Second Circuit has concluded that CUTPA and Connecticut common law claims must be interpreted—and would be interpreted by Connecticut state courts—so as to avoid 'serious constitutional problems.'"  *Weldon v. MTAG Servs., LLC*, No. 3:16-cv-783 (JCH), 2017 U.S. Dist. LEXIS 27660, at *37 (D. Conn. Feb. 28, 2017) (Hall, U.S.D.J.), quoting *Suburban Restoration Co. v. ACMAT Corp.*, 700 F.2d 98, 102 (2d Cir. 1983).

Second, there is no immoral, unethical, oppressive, or unscrupulous conduct.  The basis of the claim is that Defendants allegedly spread lies for profit.  Complaint at ¶¶ 386-387.  But the Supreme Court specifically refrained from declaring "false speech" as an unprotected category of speech.  *See United States v. Alvarez*, 567 U.S. 709, 721-22 (2012) (plurality); *see also Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) (relying upon *Alvarez* plurality).  Again, Plaintiffs' theory runs afoul of the First Amendment.

Third, an essential criterion for determining whether a practice violates CUTPA is whether it causes substantial injury to consumers, competitors, or other businessmen.  *See McLaughlin Ford, Inc. v. Ford Motor Co.*, 192 Conn. 558, 568 (1984).  Plaintiffs are not consumers, competitors, or related businessmen, and the CUTPA claim is ripe for dismissal as to all Defendants.

### 3.5.7  Defendants are Not Agents of Each Other and the Complaint Insufficiently Pleads Specific Liability

Plaintiffs generally plead that Defendants were "servants, agents, apparent agents, employees, and/or joint venturers" of each other.  Dkt. No. 1-1 at ¶¶ 86-88.  There are no factual

allegations in the Complaint to plausibly suggest Mr. Halbig or Mr. Sklanka were servants, agents, apparent agents, employees, and/or joint venturers of Mr. Jones or the Infowars Defendants.

There is no master/servant, agency, or employment relationship. The "right to control" test is dispositive of all three categories, and asks whether the "putative employer [or master or principal] has the right to control the means and methods used by the [employee, servant, or agent] in the performance of his or her job." *Doe v. Yale Univ.*, 252 Conn. 641, 680-81 (2000). There is no plausible allegation Mr. Jones or the Infowars Defendants had the right to control Mr. Halbig or Mr. Sklanka, or vice-versa.

There was no apparent agency. "Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses." *Lewis v. Michigan Millers Mutual Ins. Co.*, 154 Conn. 660, 665 (1967); *TD Props., LLC v. VP Bldgs., Inc.*, 602 F. Supp. 2d 351, 360 n.7 (D. Conn. 2009). To establish apparent agency, "First, it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly, permitted the agent to act as having such authority. Second, the party dealing with the agent must have, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent's action." *Tomlinson v. Bd. of Educ.*, 226 Conn. 704, 734-35 (1993) (internal citations and quotation marks omitted). Neither Mr. Halbig nor Mr. Sklanka were held out as having authority from Mr. Jones or the Infowars Defendants, nor was there any reasonable reliance thereon.

There is no joint venture. "A joint venture is a special combination of two or more persons who combine their property, money, effects, skill, and knowledge to seek a profit jointly in a single business enterprise without any actual partnership or corporate designation. The relationship between contracting parties cannot amount to a joint venture unless the parties so intend." *Elec. Assocs., Inc. v. Automatic Equip. Dev. Corp.*, 185 Conn. 31, 35 (1981) (internal citations omitted). There is no plausible business enterprise, nor is there a factual basis to suggest Defendants intended to enter into a joint venture.

- 28 -

In the absence of such relationships, there is insufficient pleading as to each purported Defendant's liability. Throughout the Complaint, Plaintiffs lump Mr. Jones and the Infowars Defendants together, without specifically alleging who did what, and when. "[I]t is particularly important to make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*, 691 F. App'x 515, 519 (10th Cir. 2017) (internal citation and quotation marks omitted). Courts in this Circuit and elsewhere have repeatedly and regularly dismissed claims where the complaints haphazardly lump defendants together. *See Haskins v. Zimmer Holdings, Inc.*, No. 1:09-CV-236, 2010 U.S. Dist. LEXIS 7690, 2010 WL 342 (D. Vt. Jan. 29, 2010); *Hendrikx v. State*, No. 2:13-cv-0087-RJS, 2013 U.S. Dist. LEXIS 155217, at *6 (D. Utah Oct. 29, 2013) (finding Rule 8(a) standard not met where "[t]he Complaint wholly fails to give the Defendants adequate notice of the misconduct each is alleged to have committed."); *Combs v. Stryker Corp.*, No. 2:09-cv-02018-JAM-GGH, 2009 U.S. Dist. LEXIS 115920, 2009 WL 4929110 (E.D. Cal. Dec. 14, 2009); *Timmons v. Linvatec Corp.*, 263 F.R.D. 582, 2010 U.S. Dist. LEXIS 14057 (C.D. Cal. 2010); *Adams v. I-Flow Corp.*, Case No. CV09-09550 R (SSx), 2010 U.S. Dist. LEXIS 33066 (CD. Cal. Mar. 30, 2010); *Peterson v. Breg, Inc.*, 2:09-cv-2044 JWS, 2010 U.S. Dist. LEXIS 48985 (D. Ariz. April 28, 2010). Although the Complaint does specify what individual speakers said, it does not specify how or why each other Defendant may be liable for that speech beyond asserting implausible conspiracy or agency relationships. Plaintiffs' lumping together of Defendants fails to meet the Rule 8(a) pleading standard.

Similarly, even if one of the Infowars Defendants might be liable for something said by someone other than Mr. Jones, he would not share that liability, nor would the other individual companies. The Restatement (Third) of Agency provides that a principal may be liable for the acts of the agent, but not vice-versa. *See* Restatement (Third) of Agency § 7.03 (2006); *see also* Restatement (Third) of Agency § 7.03 cmt. b (2006) (confirming that "[p]rincipals, not agents, are subject to vicarious liability"). Thus, it was incumbent on Plaintiffs to specifically plead the factual

predicate for each Defendant's alleged liability, which it failed to do, rather than lumping them together.

The speculative and collective identification of the Defendants fails to adequately identify which Defendant caused each Plaintiff's alleged injury. *See Kester v. Zimmer Holdings, Inc*., No. 2:10-cv-00523, 2010 U.S. Dist. LEXIS 59869, at *17 (W.D. Pa. June 16, 2010) (dismissing product liability claim where "the speculative and collective identification of the Defendants fails to adequately identify which Defendant caused Plaintiff's alleged injury and the Complaint, therefore, is insufficient and speculative under *Twombly* and *Iqbal*"); *Haskins*, 2010 U.S. Dist. LEXIS 7690, at *5 (dismissing product liability claim because the "threshold allegation" of pleading what a specific defendant did by name "is necessary to show a plausible entitlement to relief.").

A plaintiff's generic averments and formulaic recitations that do not disambiguate defendants fail under the federal pleading standard. *See Sherman v. Stryker Corp*., No SAVC 09-224 JVS (ANx), 2009 U.S. Dist. LEXIS 34105 (CD. Cal. March 30, 2009); *Dittman v. DJO, LLC*, No. 08-cv-02791-WDM-KLM, 2009 U.S. Dist. LEXIS 97106 (D. Colo. Oct. 5, 2009); *Gilmore v. DJO, Inc*., 663 F. Supp. 2d 856, 2009 U.S. Dist. LEXIS 96690 (D. Ariz. 2009). Relying on *Twombly* and *Iqbal*, district courts dismiss complaints that "conspicuously fail[] to allege" what specific conduct a defendant engaged in that caused the alleged injury." *Sherman*, 2009 U.S. Dist. LEXIS 34105, at *12; *see also Dittman*, 2009 U.S. Dist. LEXIS 97106, *8-9 (noting, in the products liability context, that plaintiff's failure to sufficiently allege any of the defendants' product was used on plaintiff was a "deficiency fatal to the claim" since plaintiff "had no facts, only speculation, on which to base his claim that defendants' products caused or contributed to his injury").

Plaintiffs failed to plead specific allegations of wrongdoing as to each defendant. Rather, they collectively plead while merely speculating that all Defendants could be liable. *Compare Combs*, 2009 U.S. Dist. LEXIS 115920, *6-7 (dismissing claim where complaint speculated as to potential liability for particular defendant). Thus, the claims are insufficient as a matter of law.

## 4.0    CONCLUSION

Plaintiffs suffered a horrible tragedy, but Defendants did not cause it.  It is one thing to sue the estate of Adam Lanza, it is another to trample upon the First Amendment simply because they do not like what Defendants may have said or who they may have interviewed.  Suing Mr. Jones and the Infowars Defendants will not bring back the children.  If they want a stage to dispute the hoax theory, they have numerous media outlets to choose from; the judicial system is not that stage.  The only thing this litigation can accomplish is to force Defendants to expend unnecessary fees in defense of their right to freedom of speech.  And that is why Connecticut enacted its anti-SLAPP statute—to prevent this very type of suit.  The claims should be dismissed and Defendants should be awarded nominal, fees.

Dated: July 20, 2018.

Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: 702-420-2001
ecf@randazza.com

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
ecf@randazza.com

Attorneys for Infowars Defendants

RANDAZZA | LEGAL GROUP

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this 20th day of July 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*

/s/ Jay M. Wolman
Jay M. Wolman

# EXHIBIT 1

"Crime in the United States 2012"
Federal Bureau of Investigation
Table 8, Connecticut

Home (https://ucr.fbi.gov) • Crime in the U.S. (https://ucr.fbi.gov/crime-in-the-u.s) • 2012 (https://ucr.fbi.gov/crime-in-the-u.s/2012) • Crime in the U.S. 2012 (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012) • Tables (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/tables) • 8TableDataDecPDF (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/tables/8tabledatadecpdf) • Table 8 State cuts (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/tables/8tabledatadecpdf/table-8-state-cuts) • Table 8 - Connecticut

**U.S. DEPARTMENT OF JUSTICE • FEDERAL BUREAU OF INVESTIGATION • CRIMINAL JUSTICE INFORMATION SERVICES DIVISION**

# CRIME in the United States 2012

Criminal Justice Information Services Division

**Feedback** (http://forms.fbi.gov/ucr-feedback-2012) | **Contact Us** (/about-us/cjis/ucr/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/resource-pages/contact-us) | **Data Quality Guidelines** (/about-us/cjis/ucr/data_quality_guidelines) | **UCR Home** (/about-us/cjis/ucr)

**CIUS Home (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/cius_home)**

**Offenses Known to Law Enforcement (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/offenses-known-to-law-enforcement/offenses-known-to-law-enforcement(ht)ps://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/violent-crime/violent-crime)**

**Table 8**

**Property Crime (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/property-crime/property-crime)**

**CONNECTICUT**

Offenses Known to Law Enforcement

**Clearances (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/offenses-known-to-law-enforcement/clearances)**

by City, 2012

**Persons Arrested (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/persons-arrested/persons-arrested)**

**Police Employee Data (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/police_employee_data/police-empolyee-data)**

**About CIUS (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/resource-pages/about-cius/about-cius)**

Data Declaration (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/tables/8tabledatadecpdf/table-8-state-cuts/table_8_offenses_known_to_law_enforcement_by_connecticut_by_city_2012.xls/@@template-layout-view?override-view=data-declaration)

Download Excel (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/tables/8tabledatadecpdf/table-8-state-cuts/table_8_offenses_known_to_law_enforcement_by_connecticut_by_city_2012.xls/output.xls)

Table 8 State Listing (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/tables/8tabledatadecpdf/table_8_offenses_known_to_law_enforcement_by_state_by_city_2012.xls/view)

| City | Population | Violent crime | Murder and nonnegligent manslaughter | Forcible rape | Robbery | Aggravated assault | Property crime | Burglary | Larceny-theft | Motor vehicle theft | Arson |
|------|-----------|---------------|--------------------------------------|---------------|---------|--------------------|----------------|----------|---------------|---------------------|-------|
| Ansonia | 19,271 | 29 | 0 | 4 | 15 | 10 | 455 | 80 | 317 | 58 | 1 |
| Avon | 18,162 | 5 | 0 | 2 | 2 | 1 | 169 | 25 | 143 | 1 | 0 |
| Berlin | 19,935 | 21 | 0 | 0 | 5 | 16 | 309 | 55 | 243 | 11 | 2 |

| City | Population | Violent crime | Murder and nonnegligent manslaughter | Forcible rape | Robbery | Aggravated assault | Property crime | Burglary | Larceny-theft | Motor vehicle theft | Arson |
|------|-----------|---------------|--------------------------------------|---------------|---------|--------------------|----------------|----------|---------------|---------------------|-------|
| Bethel | 18,822 | 6 | 0 | 3 | 2 | 1 | 321 | 48 | 263 | 10 | 2 |
| Bloomfield | 20,557 | 31 | 0 | 5 | 8 | 18 | 505 | 69 | 404 | 32 | 0 |
| Branford | 28,055 | 21 | 0 | 0 | 10 | 11 | 675 | 56 | 595 | 24 | 1 |
| Bridgeport | 146,030 | 1,760 | 22 | 388 | 606 | 744 | 5,153 | 1,377 | 2,908 | 868 | 25 |
| Bristol | 60,688 | 93 | 3 | 9 | 51 | 30 | 1,590 | 355 | 1,123 | 112 | 7 |
| Brookfield | 16,662 | 2 | 0 | 0 | 0 | 2 | 191 | 36 | 149 | 6 | 0 |
| Canton | 10,328 | 1 | 0 | 1 | 0 | 0 | 88 | 7 | 78 | 3 | 0 |
| Cheshire | 29,295 | 4 | 0 | 0 | 4 | 0 | 265 | 48 | 210 | 7 | 0 |
| Clinton | 13.326 | 27 | 0 | 16 | 3 | 8 | 302 | 53 | 241 | 8 | 1 |

Case 3:18-cv-01156-JCH   Document 22-1   Filed 07/20/18   Page 5 of 5

| City | Population | Violent crime | Murder and nonnegligent manslaughter | Forcible rape | Robbery | Aggravated assault | Property crime | Burglary | Larceny-theft | Motor vehicle theft | Arson |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Coventry | 12,451 | 2 | 0 | 2 | 0 | 0 | 170 | 67 | 101 | 2 | 0 |
| Cromwell | 14,075 | 11 | 0 | 1 | 6 | 4 | 290 | 44 | 233 | 13 | 0 |
| Danbury | 81,891 | 109 | 1 | 23 | 45 | 40 | 1,562 | 287 | 1,201 | 74 | 6 |
| Darien | 20,998 | 2 | 0 | 0 | 1 | 1 | 99 | 13 | 85 | 1 | 0 |
| Derby | 12,917 | 28 | 1 | 8 | 10 | 9 | 397 | 92 | 271 | 34 | 2 |
| East Hampton | 13,024 | 5 | 1 | 1 | 1 | 2 | 148 | 34 | 109 | 5 | 0 |
| East Hartford | 51,431 | 192 | 2 | 26 | 83 | 81 | 1,573 | 362 | 1,029 | 182 | 11 |
| East Haven | 29,288 | 32 | 1 | 6 | 15 | 10 | 875 | 166 | 642 | 67 | 4 |
| Easton | 7,584 | 0 | 0 | 0 | 0 | 0 | 40 | 17 | 22 | 1 | 0 |
| East Windsor | 11,200 | 18 | 0 | 7 | 6 | 5 | 338 | 61 | 268 | 9 | 4 |
| Enfield | 44,806 | 30 | 0 | 0 | 12 | 18 | 820 | 198 | 591 | 31 | 5 |
| Fairfield | 60,122 | 33 | 0 | 2 | 13 | 18 | 1,301 | 231 | 1,000 | 70 | 1 |
| Farmington | 25,429 | 24 | 0 | 2 | 17 | 5 | 629 | 50 | 549 | 30 | 1 |
| Glastonbury | 34,547 | 22 | 0 | 3 | 9 | 10 | 326 | 55 | 258 | 13 | 1 |
| Granby | 11,321 | 2 | 0 | 0 | 1 | 1 | 96 | 5 | 91 | 0 | 0 |
| Greenwich | 61,948 | 23 | 0 | 2 | 6 | 15 | 368 | 45 | 301 | 22 | 4 |
| Groton | 10,397 | 17 | 0 | 4 | 3 | 10 | 157 | 8 | 139 | 10 | 3 |
| Groton Long Point | 518 | 0 | 0 | 0 | 0 | 0 | 14 | 3 | 9 | 2 | 0 |
| Groton Town | 29,231 | 48 | 0 | 8 | 8 | 32 | 610 | 72 | 515 | 23 | 6 |
| Guilford | 22,400 | 24 | 0 | 3 | 7 | 14 | 293 | 51 | 235 | 7 | 0 |
| Hamden | 61,032 | 322 | 2 | 3 | 39 | 278 | 1,382 | 196 | 1,089 | 97 | 2 |
| Hartford | 125,203 | 1,655 | 23 | 27 | 640 | 965 | 5,319 | 1,050 | 3,467 | 802 | 88 |
| Madison | 18,288 | 2 | 0 | 0 | 1 | 1 | 116 | 25 | 89 | 2 | 1 |
| Manchester | 58,444 | 111 | 1 | 12 | 46 | 52 | 1,797 | 288 | 1,417 | 92 | 7 |
| Meriden | 60,934 | 222 | 5 | 25 | 76 | 116 | 1,812 | 421 | 1,223 | 168 | 9 |
| Middlebury | 7,583 | 4 | 0 | 2 | 1 | 1 | 70 | 20 | 45 | 5 | 0 |
| Middletown | 47,878 | 72 | 1 | 1 | 25 | 45 | 900 | 156 | 661 | 83 | 3 |
| Milford | 52,817 | 46 | 0 | 2 | 33 | 11 | 1,586 | 150 | 1,371 | 65 | 4 |
| Monroe | 19,728 | 3 | 0 | 1 | 1 | 1 | 159 | 41 | 115 | 3 | 0 |
| Naugatuck | 31,896 | 30 | 0 | 7 | 11 | 12 | 632 | 92 | 498 | 42 | 2 |

| City | Population | Violent crime | Murder and nonnegligent manslaughter | Forcible rape | Robbery | Aggravated assault | Property crime | Burglary | Larceny-theft | Motor vehicle theft | Arson |
|---|---|---|---|---|---|---|---|---|---|---|---|
| New Britain | 73,458 | 317 | 3 | 5 | 179 | 130 | 2,917 | 775 | 1,749 | 393 | 0 |
| New Canaan | 19,992 | 6 | 1 | 0 | 2 | 3 | 130 | 14 | 114 | 2 | 0 |
| New Haven | 129,934 | 1,870 | 17 | 55 | 844 | 954 | 6,516 | 1,451 | 4,351 | 714 | 15 |
| Newington | 30,668 | 28 | 1 | 8 | 14 | 5 | 784 | 99 | 636 | 49 | 4 |
| New London | 27,643 | 366 | 3 | 10 | 45 | 308 | 764 | 183 | 515 | 66 | 10 |
| New Milford | 28,047 | 21 | 0 | 9 | 1 | 11 | 363 | 4 | 335 | 24 | 1 |
| Newtown | 27,904 | 7 | 0 | 5 | 0 | 2 | 185 | 32 | 151 | 2 | 1 |
| North Branford | 14,422 | 5 | 1 | 1 | 1 | 2 | 201 | 34 | 160 | 7 | 0 |
| North Haven | 24.119 | 12 | 0 | 0 | 11 | 1 | 578 | 63 | 478 | 37 | 0 |

| City | Population | Violent crime | Murder and nonnegligent manslaughter | Forcible rape | Robbery | Aggravated assault | Property crime | Burglary | Larceny-theft | Motor vehicle theft | Arson |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Norwalk | 86,693 | 272 | 3 | 9 | 68 | 192 | 1,713 | 250 | 1,352 | 111 | 4 |
| Norwich | 40,517 | 99 | 1 | 18 | 35 | 45 | 963 | 274 | 639 | 50 | 15 |
| Old Saybrook | 10,293 | 9 | 0 | 0 | 0 | 9 | 162 | 7 | 152 | 3 | 0 |
| Orange | 13,971 | 7 | 0 | 2 | 5 | 0 | 376 | 33 | 332 | 11 | 4 |
| Plainfield | 15,410 | 14 | 0 | 3 | 5 | 6 | 121 | 36 | 72 | 13 | 1 |
| Plainville | 17,778 | 44 | 0 | 0 | 4 | 40 | 665 | 145 | 482 | 38 | 0 |
| Plymouth | 12,202 | 8 | 0 | 4 | 0 | 4 | 210 | 38 | 157 | 15 | 2 |
| Portland | 9,556 | 10 | 0 | 0 | 2 | 8 | 76 | 21 | 52 | 3 | 0 |
| Putnam | 9,588 | 29 | 0 | 6 | 3 | 20 | 200 | 51 | 142 | 7 | 3 |
| Redding | 9,275 | 0 | 0 | 0 | 0 | 0 | 59 | 8 | 47 | 4 | 0 |
| Ridgefield | 24,952 | 1 | 0 | 0 | 1 | 0 | 88 | 10 | 77 | 1 | 1 |
| Rocky Hill | 19,776 | 3 | 0 | 2 | 1 | 0 | 276 | 33 | 234 | 9 | 0 |
| Seymour | 16,558 | 10 | 0 | 2 | 2 | 6 | 161 | 45 | 106 | 10 | 1 |
| Shelton | 40,062 | 22 | 0 | 7 | 12 | 3 | 432 | 134 | 265 | 33 | 0 |
| Simsbury | 23,591 | 7 | 1 | 0 | 2 | 4 | 176 | 25 | 147 | 4 | 0 |
| Southington | 43,219 | 28 | 1 | 5 | 11 | 11 | 751 | 130 | 585 | 36 | 7 |
| South Windsor | 25,798 | 9 | 0 | 3 | 2 | 4 | 372 | 48 | 307 | 17 | 0 |
| Stamford | 124,201 | 351 | 5 | 25 | 145 | 176 | 1,932 | 290 | 1,472 | 170 | 10 |
| Stonington | 18,556 | 11 | 0 | 3 | 1 | 7 | 330 | 66 | 257 | 7 | 1 |
| Stratford | 52,041 | 104 | 0 | 15 | 28 | 61 | 1,413 | 245 | 1,070 | 98 | 9 |
| Suffield | 15,789 | 4 | 0 | 1 | 0 | 3 | 131 | 25 | 105 | 1 | 0 |
| Thomaston | 7,859 | 4 | 0 | 0 | 0 | 4 | 138 | 58 | 72 | 8 | 0 |
| Torrington | 36,264 | 51 | 0 | 18 | 11 | 22 | 842 | 111 | 711 | 20 | 4 |
| Trumbull | 36,474 | 14 | 0 | 0 | 11 | 3 | 531 | 52 | 449 | 30 | 0 |
| Vernon | 29,217 | 46 | 0 | 5 | 7 | 34 | 311 | 65 | 237 | 9 | 2 |
| Wallingford | 45,183 | 15 | 0 | 2 | 10 | 3 | 914 | 161 | 728 | 25 | 2 |
| Waterbury | 110,486 | 328 | 5 | 7 | 185 | 131 | 4,713 | 662 | 3,538 | 513 | 8 |
| Waterford | 19,529 | 45 | 1 | 0 | 6 | 38 | 515 | 55 | 451 | 9 | 0 |
| Watertown | 22,437 | 25 | 2 | 4 | 3 | 16 | 520 | 86 | 412 | 22 | 0 |
| West Hartford | 63,487 | 46 | 0 | 2 | 35 | 9 | 1,695 | 243 | 1,348 | 104 | 2 |

| City | Population | Violent crime | Murder and nonnegligent manslaughter | Forcible rape | Robbery | Aggravated assault | Property crime | Burglary | Larceny-theft | Motor vehicle theft | Arson |
|---|---|---|---|---|---|---|---|---|---|---|---|
| West Haven | 55,626 | 319 | 1 | 1 | 58 | 259 | 1,447 | 197 | 1,076 | 174 | 1 |
| Weston | 10,309 | 3 | 0 | 0 | 0 | 3 | 41 | 11 | 30 | 0 | 0 |
| Westport | 26,728 | 11 | 0 | 0 | 2 | 9 | 318 | 40 | 271 | 7 | 0 |
| Wethersfield | 26,762 | 23 | 0 | 1 | 11 | 11 | 410 | 62 | 328 | 20 | 1 |
| Willimantic | 17,818 | 27 | 0 | 1 | 13 | 13 | 433 | 104 | 276 | 53 | 4 |
| Wilton | 18,291 | 2 | 1 | 0 | 0 | 1 | 93 | 17 | 75 | 1 | 0 |
| Winchester | 11,205 | 15 | 0 | 2 | 4 | 9 | 253 | 81 | 161 | 11 | 1 |
| Windsor | 29,145 | 15 | 0 | 4 | 7 | 4 | 429 | 55 | 361 | 13 | 0 |
| Windsor Locks | 12.541 | 10 | 0 | 2 | 4 | 4 | 225 | 49 | 166 | 10 | 0 |

Case 22-33553   Document 1120-1   Filed in TXSB on 03/19/25   Page 201 of 405
Case 3:18-cv-01156-JCH   Document 22-1   Filed 07/20/18   Page 5 of 5

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Wolcott | 16,697 | 6 | 0 | 1 | 5 | 0 | 318 | 78 | 226 | 14 | 0 |
| Woodbridge | 9,000 | 8 | 0 | 1 | 2 | 5 | 107 | 23 | 77 | 7 | 0 |

**Data Declaration (https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/tables/8tabledatadecpdf/table-8-state-cuts/table_8_offenses_known_to_law_enforcement_by_connecticut_by_city_2012.xls/@@template-layout-view?override-view=data-declaration)**

Provides the methodology used in constructing this table and other pertinent information about this table.

# **EXHIBIT 2**

Erica Lafferty,
"Mr. Trump, denounce Alex Jones:
Sand Hook principal's daughter,"
USA TODAY
(Nov. 25, 2016)

Case 22-33553   Document 1120-1   Filed in TXSB on 03/19/25   Page 203 of 405
Case 3:18-cv-01156-JCH   Document 22-2   Filed 07/20/18   Page 2 of 3

# Mr. Trump, denounce Alex Jones: Sandy Hook principal's daughter

| Erica Lafferty | Published 6:06 a.m. ET Nov. 25, 2016 |
|---|---|

*He leads a fringe movement of 'Sandy Hook truthers' who promote hateful conspiracy theories.*



*(Photo: Mark Wilson, Getty Images)*

This Thanksgiving, I sat at a dinner table with an empty seat. It's the very seat where my mother, Dawn Lafferty Hochsprung, should be. Smiling, laughing and enjoying a holiday meal with her daughters and grandchildren. Instead, my mom wasn't there because nearly four years ago, she was murdered in Newtown, Conn., along with five of her colleagues and 20 first-graders (/story/news/nation/2012/12/14/school-shooting-connecticut/1769367/). That day, as the principal of Sandy Hook Elementary School, she died a hero trying to protect her innocent students.

My heart — and my dinner table — reflect the hole in my life that will never be repaired. And while I've chosen a path of gun safety advocacy that not everyone agrees with, some opponents of gun violence prevention follow a different, darker path. A fringe movement of "Sandy Hook truthers" promotes hateful conspiracy theories that the shooting never took place. My Thanksgiving table tells a different story. And so does the reality of the families who had their loved ones ripped out of their arms by senseless gun violence.

The most prominent popularizer of the "Sandy Hook hoax (http://www.politifact.com/texas/statements/2016/sep/01/hillary-clinton/hillary-clinton-correct-austins-alex-jones-said-no/)" theory is the radio and Web personality Alex Jones. He is the kind of person you'd expect to be confined to the darkest echo chambers of the Internet. Yet, Jones has been bolstered (http://www.newyorker.com/news/daily-comment/donald-trump-and-the-amazing-alex-jones) by the very man who has proclaimed he'll make our country great again: President-elect Donald Trump.

A quick Google search for the phrase "Sandy Hook truthers" will turn up thousands of stories about how the worst day of my life was actually an elaborate conspiracy that never happened at all. It's insanity.

This Thanksgiving, don't ignore politics. Democracy depends on it. (https://www.usatoday.com/story/opinion/voices/2016/11/22/thanksgiving-politics-talk-democracy-future/94280266/)

Even after an election that exposed deep divisions in our country, surely we can all agree on this: The mass shooting at Sandy Hook happened. Twenty-six families, including mine, were torn apart and will never be the same. Any preposterous ideas to the contrary cannot be allowed to seep into our country's mainstream discourse. They must be swiftly and publicly refuted.

Surely, the newly elected leader of the free world can see that.

Yet Donald Trump has promised (https://www.washingtonpost.com/lifestyle/style/how-alex-jones-conspiracy-theorist-extraordinaire-got-donald-trumps-ear/2016/11/17/583dc190-ab3e-11e6-8b45-f8e493f06fcd_story.html) to again appear on Jones' program — to chat with a man who claims that one of the worst mass shootings in American history was a hoax. President-Elect Trump has praised (http://www.newyorker.com/news/daily-comment/donald-trump-and-the-amazing-alex-jones) Alex Jones' "amazing" reputation and promised he won't let him down.

Mr. President-elect: You are letting me down.

I believe in free speech. I believe that a wide range of opinions can be accommodated in our democracy. And I know that the vast majority of Americans — like me — support the Second Amendment and don't believe Jones. I believe that it is only a tiny fraction of extremists who subscribe to the idea that my mother's death is a fiction.

But part of what allows the president-elect to entertain chatting with Jones is the indifference of decent people to stand up and condemn the thinking of those like Jones in the first place.

Case 22-33553 Document 1120-1 Filed in TXSB on 03/19/25 Page 204 of 405

Case 3:18-cv-01156-JCH Document 22-2 Filed 07/20/18 Page 3 of 3

We cannot normalize fact-denying behavior. We cannot shrug our shoulders and chalk it up to "Trump being Trump," yet do nothing about it. Whether I like it or not, Donald Trump is the face of America to all our citizens and the rest of the world. We may approach the issue of gun violence in America differently, but we must all realize that claiming mass shootings are elaborate, government-manufactured hoaxes is deeply hateful and hurtful to those of us living this terrible truth.

President-elect Trump will face the same kinds of tragedies President Obama has lived through. He'll need to visit with the broken-hearted, and he'll need to prove he's the kind of man — and president — who can represent us all. A man who ran on a campaign to "improve our country" simply cannot embrace a man whose preposterous theories are antithetical to our shared values.

NRA wants you to remember the ladies: Jason Sattler (https://www.usatoday.com/story/opinion/2016/09/29/nra-ad-trump-clinton-guns-second-amendment-column/91128998/)

**POLICING THE USA: A look at race, justice, media (http://preview.usatoday.com/policing/)**

This is particularly true for traditional conservatives. Conservative thinkers may interpret the Second Amendment differently than I do, but most of the conservatives I know cherish both facts and civility. For example, I've worked closely with Sen. Pat Toomey, R-Pa., and consider him to be among the kindest public servants I've encountered. I know conservatives like him do not subscribe to the conspiracy theories of Alex Jones and his ilk.

Deep down, I do not want to believe that the Jones and the trolls who constantly bombard me with hate on Twitter are reflective of conservatives. But if mainstream conservatives won't disavow fringe thinkers such as Alex Jones, how on earth can they claim the moral high ground?

I am asking conservatives and all Americans to join me (http://every.tw/2f1GwXn) in telling President-elect Trump this: Alex Jones represents the worst of our country. It's time to disavow the man who calls my mother's death a hoax and not appear on his show.

I've faced the cold, hard truth of the murder of my mother, and it's time for Trump to face one of his own. American presidents are held to higher standards than reality television stars, and our new president-elect must learn that. He must openly denounce Jones and the hateful fictions that he spews. Countless survivors of gun violence and I urge him to do so now.

*Erica Lafferty's mother, Dawn Lafferty Hochsprung, was the principal of Sandy Hook School and was murdered while protecting her students. Erica is partnerships manager at Everytown for Gun Safety (http://everytown.org/). Follow her on Twitter: @EricaSmegs (https://twitter.com/EricaSmegs)*

*You can read diverse opinions from our Board of Contributors (http://preview.usatoday.com/reporters/boc.html) and other writers on the Opinion front page (http://preview.usatoday.com/opinion/), on Twitter @USATOpinion (http://preview.usatoday.com/opinion/) and in our daily Opinion newsletter (http://profile.usatoday.com/newsletters/manage/). To respond to a column, submit a comment to letters@usatoday.com (mailto:letters@usatoday.com).*

Read or Share this story: http://usat.ly/2fYVqBY

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ERICA LAFFERTY, et al                          :
                                               :
        PLAINTIFFS,                            :
                                               :
                                               :
v.                                             :      Civil Action No.:
                                               :      3:18-cv-01156-JCH
                                               :
                                               :
ALEX EMRIC JONES, et al                        :
                                               :
        DEFENDANTS.                            :

MOTION FOR ENLARGEMENT OF TIME TO PLEAD

Pursuant to F. R. Civ. Pro. 6(b) and Local Rule 7(b) of the Local Rules of Civil Procedure for the District of Connecticut, defendant Midas Resources, Inc. ("Midas"), by and through its attorneys, Wilson Elser Moskowitz Edelman & Dicker LLP, hereby respectfully requests an extension of seven (7) days up to and including July 30, 2018 in which to move or file a responsive pleading to Plaintiffs' complaint, removed to this Court on July 13, 2018, and with a return date in the Connecticut Superior Court of June 26, 2018. Midas requires the additional time in order to prepare a proper responsive pleading and/or motion to the allegations contained in Plaintiffs' multi-count complaint.

Counsel for Midas has inquired of Plaintiffs' position, and Plaintiffs' counsel has consented to the request. This is Midas' first request for an enlargement of time and no party will be prejudiced by the granting of this motion.

WHEREFORE, for good cause shown, Midas respectfully requests that this motion for enlargement of time be granted.

675367v.1

Dated:   Stamford, Connecticut
       July 23, 2018

                         Respectfully Submitted,

                         Wilson Elser Moskowitz Edelman & Dicker LLP

                         By:/s/ Stephen P. Brown
                            Stephen P. Brown (ct19876)
                         *Attorneys for Defendant*
                         *Midas Resources, Inc.*
                         1010 Washington Boulevard
                         Stamford, Connecticut 06901
                         Telephone No.: (203) 388-9100
                         Facsimile No.: (203)388-9101
                         Stephen.Brown@wilsonelser.com

<div align="center">2</div>

675367v.1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that July 23, 2018, a copy of the foregoing motion for enlargement of time to plead was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By:/s/ Stephen P. Brown
    Stephen P. Brown (ct19876)
Wilson Elser Moskowitz Edelman
    & Dicker LLP
1010 Washington Boulevard
Stamford, Connecticut 06901
Telephone No.: (203) 388-9100
Facsimile No.: (203)388-9101
Stephen.Brown@wilsonelser.com

3

675367v.1

# UNITED STATES DISTRICT COURT

for the

District of Connecticut

**ERICA LAFFERTY, ET AL**

_____

*Plaintiff*

v.

**ALEX EMRIC JONES, ET AL**

_____

*Defendant*

)
)
)
)
)
)

Case No.          **3:18-cv-01156-JCH**

## NOTICE OF APPEARANCE

To:     The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

**ALL PLAINTIFFS**

Date:          **Jul 23, 2018**

_____
*Attorney's signature*

**WILLIAM M. BLOSS, ct01008**
_____
*Printed name and bar number*

**KOSKOFF KOSKOFF & BIEDER**
**350 FAIRFIELD AVENUE**
**BRIDGEPORT, CT  06604**
_____
*Address*

**bbloss@koskoff.com**
_____
*E-mail address*

**203-336-4421**
_____
*Telephone number*

**203-368-3244**
_____
*FAX number*

*Rev. 5/4/2011*

# CERTIFICATE OF SERVICE

I hereby certify that on **Jul 23, 2018** , a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to [Below list the names and addresses of anyone unable to accept electronic filing] as indicate on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Jay M. Wolman
Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor
Hartford, CT  06103
jmw@randazza.com

Lawrence L. Connelli
Regnier Taylor Curran & Eddy
100 Pearl Street, 4th Floor
Hartford, CT  06103
lconnelli@rtcelaw.com

Nicole R. Cuglietto
Wilson Elser Moskowitz Edelman & Dicker,
LLP
1010 Washington Boulevard
Stamford, CT  06901
nicole.cuglietto@wilsonelser.com

Stephen P. Brown
Wilson Elser Moskowitz Edelman & Dicker,
LLP
1010 Washington Boulevard
Stamford, CT  06901
stephen.brown@wilsonelser.com

*Attorney's signature*

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ERICA LAFFERTY, et al      :      CIVIL ACTION NO:
Plaintiffs                     3:18-cv-01156-JCH

v.

ALEX EMRIC JONES, et al
Defendants      :      JULY 24, 2018

## MOTION FOR ENLARGEMENT OF TIME TO PLEAD

Pursuant to F.R. Civ. Pro. 6(b) and Local Rule 7(b) of the Local Rules of Civil Procedure for the District of Connecticut, defendant Cory Sklanka ("Sklanka"), by and through his attorneys, Regnier, Taylor, Curran & Eddy, hereby respectfully requests an extension of fourteen (14) days up to and including August 7, 2018 in which to move or file a responsive pleading to plaintiffs' Complaint, removed to this Court on July 13, 2018, and with a return date in the Connecticut Superior Court of June 26, 2018. Sklanka requires the additional time in order to prepare a proper responsive pleading and/or motion to the allegations contained in plaintiff's multi-count Complaint.

Counsel for Sklanka has inquired of plaintiffs' position, and plaintiffs' counsel has consented to the request. This is Sklanka's first request for an enlargement of time and no party will be prejudiced by the granting of this motion.

WHEREFORE, for good cause shown, Sklanka respectfully requests that this

motion for enlargement of time be granted.

Dated:      Hartford, Connecticut
              July 24, 2018


Respectfully Submitted,

Regnier, Taylor, Curran & Eddy


By    /s/ Lawrence L. Connelli
        Lawrence L. Connelli (ct06278)
        Attorneys for Defendant,
        Cory Sklanka

        100 Pearl Street – 4TH Floor
        Hartford, CT 06103
        860-249-9121
        860-527-4343 (fax)
        lconnelli@rtcelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2018, a copy of the foregoing motion for enlargement of time to plead was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By /s/ Lawrence L. Connelli
   Lawrence L. Connelli (ct06278)
   Regnier, Taylor, Curran & Eddy
   100 Pearl Street – 4TH Floor
   Hartford, CT  06103
   860-249-9121
   860-527-4343 (fax)
   lconnelli@rtcelaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:18-cv-01156-JCH |
| | ) | |
| v. | ) | |
| | ) | |
| ALEX JONES, *et al.*, | ) | July 27, 2018 |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION FOR EXTENSION OF TIME AND FOR ENTRY OF A SCHEDULING ORDER

Pursuant to Federal Rule of Civil Procedure 6(b), plaintiffs William Aldenberg, Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto-Parisi, David Wheeler, Francine Wheeler move the Court to enter a scheduling order concerning remand briefing, Rule 12(b)(6) briefing, and the parties' automatic disclosure and planning conference obligations under Rule 26. Plaintiffs propose that the Court enter a briefing schedule which addresses jurisdiction first. Only after the Court determines it has subject matter jurisdiction should the parties proceed with briefing under Rule 12(b)(6).

### I.        Applicable Legal Standard

Pursuant to Federal Rule of Civil Procedure 6(b), courts have "wide discretion" to grant requests for extensions and set briefing schedules. *Ramashwar v. City of New York*, 231 F. App'x 26, 28 (2d Cir. 2007); 4B Wright & Miller, Fed. Prac. & Proc. Civ. § 1165 (4th ed.) ("[F.R.C.P. 6(b)] gives the court extensive flexibility to modify the fixed time periods found throughout the rules, whether the extension is sought before or after the actual termination of the allotted time.").

### II.        Factual and Procedural Background.

1

This action stems from the shooting at Sandy Hook Elementary School in Newtown on December 14, 2012 that killed twenty first-grade children and six educators and wounded two others. For a number of years, the defendants engaged in a campaign of harassment and abuse, in the course of which they published or conspired to publish many hurtful, outrageous, and malicious falsehoods about the plaintiffs—namely, that the Sandy Hook shooting was a hoax and that the plaintiffs did not lose their loved ones that day, but are in fact are faking their loved ones' deaths. The Court set out an initial scheduling order under which the defendants were required to file Motions to Dismiss by October 13, 2018.

### A.     The Allegations of the Complaint.

This action stems from of the shooting at Sandy Hook Elementary School in Newtown on December 14, 2012 that killed twenty first-grade children and six educators and wounded two others. Plaintiffs' Complaint ¶ 1, May 23, 2018. Overwhelming and indisputable evidence shows exactly what happened at Sandy Hook Elementary School on December 14, 2012. *Id.* ¶ 6. Nonetheless, certain individuals have persistently perpetuated a monstrous, unspeakable lie: that the Sandy Hook shooting was staged, and that the families who lost loved ones that day are actors who faked their relatives' deaths. *Id.* ¶ 6. The defendants all have participated in the generation, publication, and propagation of this lie, in the resulting harassment against the plaintiffs, and participated in a civil conspiracy to do both. See *id.* ¶¶ 30–39. They did so with knowledge that the statements were false or with reckless disregard as to whether or not they were true. See, *id.* ¶¶ 339, 343, 356, 359, 381, 391.

The Complaint detailed a campaign of abuse, harassment, and outrageous falsehoods by the defendants, and detailed how they combined to effect the various tortious actions that formed the backbone of that campaign. Wolfgang Halbig and Corey Sklanka combined for some number

2

of Halbig's more-than-twenty-two visits to Connecticut, during which they harassed the plaintiffs and generated "investigative" content for Halbig's websites and media appearances. *Id.* ¶¶ 37, 59–72, 80, 85.  Sklanka acted as Halbig's driver and camera operator in this venture. *Id.* ¶¶ 37, 60. Sklanka also purposefully facilitated Halbig's statements on his websites and in media appearances where Halbig repeatedly claimed that the Sandy Hook shooting was a hoax, that no one died there, and that the family members of those lost there are actors who fabricated their loved ones' deaths. *Id.* ¶¶ 37, 60, 59–72, 145–170, 189–219.

Meanwhile, Alex Jones and the rest of the Jones defendants had built a highly profitable media empire based on conspiracy-minded falsehoods like those Halbig was propagating about the Sandy Hook shooting. *Id.* ¶¶ 90–100. Almost immediately after the shooting, he and his entities (which are under his control) also began claiming that the shooting was fake and that the families who had lost loved ones were actors. *Id.* ¶¶ 101–119. Jones and his entities combined with Halbig to promote Halbig's falsehoods and abuse by repeatedly having him on Jones's and his entities shows for the express purpose of eliciting Halbig's false and outrageous claims. *Id.* ¶¶ 73–88, 145–170, 189–219. On numerous occasions, Jones would agree with Halbig, or make on his own statements asserting that the Sandy Hook shooting was a hoax, that no one died there, and that the families who lost loved ones there were actors fabricating their loved ones' deaths. See generally *id.* ¶¶ 145–170, 189–219. He and his entities also promoted Halbig's abusive and tortious activities by encouraging Halbig to continue them, helping Halbig solicit funds from Jones's followers, and sending Infowars personnel to document and promote Halbig's activities. See, *e.g.*, *id.* ¶¶ 70, 75–83, 207.

Jones also independently made statements asserting that the Sandy Hook shooting was a hoax, that no one died there, and that the families who lost loved ones there were actors fabricating

their loved ones' deaths, and broadcast them to his millions of followers. See generally *id.* ¶¶ 145–335. He and his entities also recruited other guests and solicited and answered callers with the express purpose of eliciting, discussing, and promoting similar claims by them. See, *e.g.*, *id.* ¶¶ 123–128, 257–262, 292–298. Jones and his entities did this because it was a part of their business model: they cultivate an audience through the propagation of narratives revolving around paranoia, social anxiety, and political discord, a known motivator for some people. *Id.* ¶¶ 90–91. They acquire their audience's attention and trust, and then hawk them products in line with that worldview. *Id.* ¶¶ 93–94. This business model has proved extremely lucrative. *Id.* ¶¶ 94–96, 99. False claims that the Sandy Hook shooting was a hoax represented a perfect vehicle to promote it. *Id.* ¶ 95. Jones and his entities took the actions and published the statements detailed in this Complaint not because they believed they were true, but to make more money. *Id.* ¶¶ 97–100.

Defendant Genesis Communications distributed all the publications by the Jones defendants detailed in this Complaint to broadcasting affiliates all over the United States, vastly increasing their audience. *Id.* ¶¶ 38–39. Midas Resources combined with Genesis and the Jones defendants to help monetize his business model. *Id.* Ted Anderson, who owns both Genesis and Midas, was a follower of and frequent guest on the Jones defendants' shows. *Id.* Nonetheless, he continued to distribute the Jones defendants' programs. *Id.* In fact, the Jones defendants' programs formed the lion's share (and the most profitable) of the programs distributed by Genesis and Midas. *Id.* at 4 nn.3, 4.

Based on these allegations, the plaintiffs brought claims for invasion of privacy by false light, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, civil conspiracy to commit the foregoing torts, and violations of the Connecticut Unfair Practices Act (CUTPA), Conn. Gen. Stat. §§ 42-110a *et seq.*, against each of the defendants.

4

Nearly all the plaintiffs are residents of Connecticut. *Id.* ¶¶ 22–28. Defendant Corey Sklanka is a resident of Connecticut. *Id.* ¶ 37.

### B.    The Notice of Removal.

The Jones defendants removed the case to this Court on July 13, 2018. They claim diversity jurisdiction as the sole basis for federal subject matter jurisdiction. The plaintiffs, however, are citizens of Connecticut; so is defendant Sklanka. Notice of Removal ¶¶ 6, 15, D. Ct. Doc. 1, July 13, 2018. Thus on the face of the pleadings, there is no diversity jurisdiction.

In an effort to manufacture complete diversity, the Jones defendants claim that Sklanka is fraudulently joined, asserting that the plaintiffs' claims against Sklanka cannot succeed.

On July 20, 2018, the Jones defendants filed a Rule 12(b)(6) motion to dismiss, invoking Conn. Gen. Stat. Ann. § 52-196a. They claim that none of the plaintiffs' claims against them have merit.

On July 13, 2018, defendant Wolfgang Halbig filed a Rule 12(b)(6) motion to dismiss.

Although the plaintiffs have until August 12, 2018, to file a motion to remand, they plan to move the Court to remand the case to Connecticut Superior Court for lack of subject matter jurisdiction on July 30, 2018 or shortly thereafter.

Defendants are presently scheduled to file Motions to Dismiss by October 13, 2018.

### III.    PROPOSED BRIEFING SCHEDULE.

Plaintiffs move the Court to set a briefing schedule which first addresses jurisdiction in two phases, as further set forth below. Plaintiffs propose that the Court order Rule 12(b)(6) briefing to

proceed only after it addresses jurisdiction. The plaintiffs have filed no previous motions for extension of time on any time limitation.

## A.     Determination of Subject Matter Jurisdiction.

Phase One:

Plaintiffs' Motion to Remand will be filed on or about July 30, 2018.

Defendants' Memoranda in Opposition shall be filed on or before August 29, 2018.

Plaintiffs' Reply Briefs shall be filed by September 12, 2018.

Phase Two

The need for compliance with the deadlines in Phase Two will arise only if the Court determines it has jurisdiction after considering the parties' briefing in Phase One.

1) Motions to Dismiss

The Jones defendants filed their Rule 12(b)(6) Motion on July 20, 2018, and defendant Wolfgang Halbig filed his motion to dismiss on July 14, 2018. The deadline for all defendants' motions to dismiss will be 21 days after the Court rules whether it has jurisdiction.

The deadline for plaintiffs to file their Memoranda in Opposition to all of the defendants' Rule 12(b)(6) Motions shall be 21 days after the defendants' deadline for filing their Rule 12(b)(6) Motions.

More particularly, plaintiffs' deadline to respond to the Jones Defendants' and Halbig's Motions to Dismiss shall be suspended until the Court rules concerning subject matter jurisdiction after consideration of the Phase One briefing and, if necessary, the Phase Two briefing. In the event the Court determines that it has jurisdiction, plaintiffs' deadline to respond to the Jones defendants' and Halbig's Motions to Dismiss shall be the same as plaintiffs' deadline to oppose the other defendants' Motions to Dismiss.

The defendants' Reply Briefs shall be filed fourteen days after the filing of plaintiffs' Memoranda in Opposition.

2) Rule 26 Automatic Disclosures and Report of the Parties' Planning Conference.

These deadlines and obligations shall be stayed pending the Court's Ruling on Phase One.

**IV.     The Court Should Enter Plaintiffs' Scheduling Order.**

**A.        The Parties' Positions**.

Counsel for the Jones defendants is unable to obtain his clients' position at this time, but will advise this Court of it as soon as he is able to obtain it.

Defendant Wolfgang Halbig's position is: "I do not consent to an extension for Plaintiffs to respond to my motion to dismiss, since I am prejudiced by delay.  We must assume the court has jurisdiction until it rules that it does not, and if it does not, then your response will be ready to go in the state court.  For the same reason I do not consent to a suspension or stay of other deadlines, nor of the 21-day time limitation, you propose to put on my right to file additional motions to dismiss. I note that my motion to dismiss was filed in the state court on July 12th, not July 14th.  The deadline for Plaintiffs' response, per the federal court's order, is August 2nd."

Defendant Cory Sklanka consents to the plaintiffs' proposed briefing schedule.

Defendant Midas Resources has no objection to the proposed briefing schedule at this time.

Defendant Genesis Communications has no objection to the proposed briefing schedule at this time.

**B.        The Court Should Address Subject Matter Jurisdiction First.**

 "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (striking down the doctrine of "hypothetical jurisdiction" by which difficult subject matter jurisdiction questions were bypassed to allow the district courts to resolve cases on easier merits arguments).  It is elementary that the Court must address its jurisdiction before turning to substantive issues.  The current ad hoc briefing

schedule requires briefing on the defendants' motion to dismiss before briefing on whether this Court has jurisdiction.

Moreover, a briefing schedule would allow the parties and this Court to deal with the relevant issues most efficiently. See *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (noting district courts' "inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases"). There are numerous plaintiffs and defendants in this case. So far, at least two defendants have submitted multiple motions on different timelines. Neither the plaintiffs nor this Court should have to respond to similar motions by various defendants piecemeal. Even under circumstances with far stronger countervailing concerns, courts consider the efficiency of resolving related motions simultaneously sufficient "good cause" for amendments to already-existing schedules. See, *e.g.*, *United States v. Cohan*, No. 3:11-CV-412 CSH, 2012 WL 4758142, at *2 (D. Conn. Oct. 5, 2012) (noting that courts "consider[ ] the efficiency gained by addressing the summary judgment issues simultaneously to constitute good cause" in allowing consideration of untimely cross-summary judgment motion); *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 CIV. 7488 (CM), 2017 WL 3613663, at *2 (S.D.N.Y. Aug. 21, 2017) (ordering consolidated briefing of motions to dismiss because doing so "would allow Defendants to efficiently brief the issues without needing to duplicate arguments").

Finally, staying deadlines pending a determination of subject matter jurisdiction is generally appropriate. *Cf. Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.,* 200 F.3d 795, 804 (Fed. Cir. 1999) ("When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved.").

For these reasons, plaintiffs request their Motion be granted.

THE PLAINTIFFS,


**Respectfully submitted,**

**By**        **/s/ William Bloss, ct01008**
         **WILLIAM BLOSS, ct01008**
         **MATTHEW S. BLUMENTHAL, ct30448**
         KOSKOFF KOSKOFF & BIEDER
         350 FAIRFIELD AVENUE
         BRIDGEPORT, CT  06604
         bbloss@koskoff.com
         mblumenthal@koskoff.com
         Telephone:     (203) 336-4421
         Fax:            (203) 368-3244

         **ATTORNEYS FOR PLAINTIFFS**

9

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2018, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing under the court's CM/ECF System.

<div style="text-align:right">

    **/s/ William M. Bloss, ct01008**    
**WILLIAM M. BLOSS, ct01008**
**MATTHEW S. BLUMENTHAL, ct30448**

</div>

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERICA LAFFERTY, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:18-cv-01156-JCH |
| | ) | |
| v. | ) | |
| | ) | |
| ALEX JONES, *et al.*, | ) | July 27, 2018 |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION FOR EXTENSION OF TIME AND FOR ENTRY OF A SCHEDULING ORDER

Pursuant to Federal Rule of Civil Procedure 6(b), plaintiffs William Aldenberg, Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto-Parisi, David Wheeler, Francine Wheeler move the Court to enter a scheduling order concerning remand briefing, Rule 12(b)(6) briefing, and the parties' automatic disclosure and planning conference obligations under Rule 26. Plaintiffs propose that the Court enter a briefing schedule which addresses jurisdiction first. Only after the Court determines it has subject matter jurisdiction should the parties proceed with briefing under Rule 12(b)(6).

### I. Applicable Legal Standard

Pursuant to Federal Rule of Civil Procedure 6(b), courts have "wide discretion" to grant requests for extensions and set briefing schedules. *Ramashwar v. City of New York*, 231 F. App'x 26, 28 (2d Cir. 2007); 4B Wright & Miller, Fed. Prac. & Proc. Civ. § 1165 (4th ed.) ("[F.R.C.P. 6(b)] gives the court extensive flexibility to modify the fixed time periods found throughout the rules, whether the extension is sought before or after the actual termination of the allotted time.").

### II. Factual and Procedural Background.

1

This action stems from the shooting at Sandy Hook Elementary School in Newtown on December 14, 2012 that killed twenty first-grade children and six educators and wounded two others. For a number of years, the defendants engaged in a campaign of harassment and abuse, in the course of which they published or conspired to publish many hurtful, outrageous, and malicious falsehoods about the plaintiffs—namely, that the Sandy Hook shooting was a hoax and that the plaintiffs did not lose their loved ones that day, but are in fact are faking their loved ones' deaths. The Court set out an initial scheduling order under which the defendants were required to file Motions to Dismiss by October 13, 2018.

### A.    The Allegations of the Complaint.

This action stems from of the shooting at Sandy Hook Elementary School in Newtown on December 14, 2012 that killed twenty first-grade children and six educators and wounded two others. Plaintiffs' Complaint ¶ 1, May 23, 2018. Overwhelming and indisputable evidence shows exactly what happened at Sandy Hook Elementary School on December 14, 2012. *Id.* ¶ 6. Nonetheless, certain individuals have persistently perpetuated a monstrous, unspeakable lie: that the Sandy Hook shooting was staged, and that the families who lost loved ones that day are actors who faked their relatives' deaths. *Id.* ¶ 6. The defendants all have participated in the generation, publication, and propagation of this lie, in the resulting harassment against the plaintiffs, and participated in a civil conspiracy to do both. See *id.* ¶¶ 30–39. They did so with knowledge that the statements were false or with reckless disregard as to whether or not they were true. See, *id.* ¶¶ 339, 343, 356, 359, 381, 391.

The Complaint detailed a campaign of abuse, harassment, and outrageous falsehoods by the defendants, and detailed how they combined to effect the various tortious actions that formed the backbone of that campaign. Wolfgang Halbig and Corey Sklanka combined for some number

2

of Halbig's more-than-twenty-two visits to Connecticut, during which they harassed the plaintiffs and generated "investigative" content for Halbig's websites and media appearances. *Id.* ¶¶ 37, 59–72, 80, 85. Sklanka acted as Halbig's driver and camera operator in this venture. *Id.* ¶¶ 37, 60. Sklanka also purposefully facilitated Halbig's statements on his websites and in media appearances where Halbig repeatedly claimed that the Sandy Hook shooting was a hoax, that no one died there, and that the family members of those lost there are actors who fabricated their loved ones' deaths. *Id.* ¶¶ 37, 60, 59–72, 145–170, 189–219.

Meanwhile, Alex Jones and the rest of the Jones defendants had built a highly profitable media empire based on conspiracy-minded falsehoods like those Halbig was propagating about the Sandy Hook shooting. *Id.* ¶¶ 90–100. Almost immediately after the shooting, he and his entities (which are under his control) also began claiming that the shooting was fake and that the families who had lost loved ones were actors. *Id.* ¶¶ 101–119. Jones and his entities combined with Halbig to promote Halbig's falsehoods and abuse by repeatedly having him on Jones's and his entities shows for the express purpose of eliciting Halbig's false and outrageous claims. *Id.* ¶¶ 73–88, 145–170, 189–219. On numerous occasions, Jones would agree with Halbig, or make on his own statements asserting that the Sandy Hook shooting was a hoax, that no one died there, and that the families who lost loved ones there were actors fabricating their loved ones' deaths. See generally *id.* ¶¶ 145–170, 189–219. He and his entities also promoted Halbig's abusive and tortious activities by encouraging Halbig to continue them, helping Halbig solicit funds from Jones's followers, and sending Infowars personnel to document and promote Halbig's activities. See, *e.g.*, *id.* ¶¶ 70, 75–83, 207.

Jones also independently made statements asserting that the Sandy Hook shooting was a hoax, that no one died there, and that the families who lost loved ones there were actors fabricating

3

their loved ones' deaths, and broadcast them to his millions of followers. See generally *id.* ¶¶ 145–335. He and his entities also recruited other guests and solicited and answered callers with the express purpose of eliciting, discussing, and promoting similar claims by them. See, *e.g.*, *id.* ¶¶ 123–128, 257–262, 292–298. Jones and his entities did this because it was a part of their business model: they cultivate an audience through the propagation of narratives revolving around paranoia, social anxiety, and political discord, a known motivator for some people. *Id.* ¶¶ 90–91. They acquire their audience's attention and trust, and then hawk them products in line with that worldview. *Id.* ¶¶ 93–94. This business model has proved extremely lucrative. *Id.* ¶¶ 94–96, 99. False claims that the Sandy Hook shooting was a hoax represented a perfect vehicle to promote it. *Id.* ¶ 95. Jones and his entities took the actions and published the statements detailed in this Complaint not because they believed they were true, but to make more money. *Id.* ¶¶ 97–100.

Defendant Genesis Communications distributed all the publications by the Jones defendants detailed in this Complaint to broadcasting affiliates all over the United States, vastly increasing their audience. *Id.* ¶¶ 38–39. Midas Resources combined with Genesis and the Jones defendants to help monetize his business model. *Id.* Ted Anderson, who owns both Genesis and Midas, was a follower of and frequent guest on the Jones defendants' shows. *Id.* Nonetheless, he continued to distribute the Jones defendants' programs. *Id.* In fact, the Jones defendants' programs formed the lion's share (and the most profitable) of the programs distributed by Genesis and Midas. *Id.* at 4 nn.3, 4.

Based on these allegations, the plaintiffs brought claims for invasion of privacy by false light, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, civil conspiracy to commit the foregoing torts, and violations of the Connecticut Unfair Practices Act (CUTPA), Conn. Gen. Stat. §§ 42-110a *et seq.*, against each of the defendants.

Nearly all the plaintiffs are residents of Connecticut. *Id*. ¶¶ 22–28. Defendant Corey Sklanka is a resident of Connecticut. *Id.* ¶ 37.

### B.      The Notice of Removal.

The Jones defendants removed the case to this Court on July 13, 2018.  They claim diversity jurisdiction as the sole basis for federal subject matter jurisdiction.  The plaintiffs, however, are citizens of Connecticut; so is defendant Sklanka. Notice of Removal ¶¶ 6, 15, D. Ct. Doc. 1, July 13, 2018.  Thus on the face of the pleadings, there is no diversity jurisdiction.

In an effort to manufacture complete diversity, the Jones defendants claim that Sklanka is fraudulently joined, asserting that the plaintiffs' claims against Sklanka cannot succeed.

On July 20, 2018, the Jones defendants filed a Rule 12(b)(6) motion to dismiss, invoking Conn. Gen. Stat. Ann. § 52-196a. They claim that none of the plaintiffs' claims against them have merit.

On July 13, 2018, defendant Wolfgang Halbig filed a Rule 12(b)(6) motion to dismiss.

Although the plaintiffs have until August 12, 2018, to file a motion to remand, they plan to move the Court to remand the case to Connecticut Superior Court for lack of subject matter jurisdiction on July 30, 2018 or shortly thereafter.

Defendants are presently scheduled to file Motions to Dismiss by October 13, 2018.

### III.      PROPOSED BRIEFING SCHEDULE.

Plaintiffs move the Court to set a briefing schedule which first addresses jurisdiction in two phases, as further set forth below.  Plaintiffs propose that the Court order Rule 12(b)(6) briefing to

5

proceed only after it addresses jurisdiction. The plaintiffs have filed no previous motions for extension of time on any time limitation.

## A.     Determination of Subject Matter Jurisdiction.

Phase One:

Plaintiffs' Motion to Remand will be filed on or about July 30, 2018.

Defendants' Memoranda in Opposition shall be filed on or before August 29, 2018.

Plaintiffs' Reply Briefs shall be filed by September 12, 2018.

Phase Two

The need for compliance with the deadlines in Phase Two will arise only if the Court determines it has jurisdiction after considering the parties' briefing in Phase One.

1) Motions to Dismiss

> The Jones defendants filed their Rule 12(b)(6) Motion on July 20, 2018, and defendant Wolfgang Halbig filed his motion to dismiss on July 14, 2018. The deadline for all defendants' motions to dismiss will be 21 days after the Court rules whether it has jurisdiction.

> The deadline for plaintiffs to file their Memoranda in Opposition to all of the defendants' Rule 12(b)(6) Motions shall be 21 days after the defendants' deadline for filing their Rule 12(b)(6) Motions.

> More particularly, plaintiffs' deadline to respond to the Jones Defendants' and Halbig's Motions to Dismiss shall be suspended until the Court rules concerning subject matter jurisdiction after consideration of the Phase One briefing and, if necessary, the Phase Two briefing. In the event the Court determines that it has jurisdiction, plaintiffs' deadline to respond to the Jones defendants' and Halbig's Motions to Dismiss shall be the same as plaintiffs' deadline to oppose the other defendants' Motions to Dismiss.

> The defendants' Reply Briefs shall be filed fourteen days after the filing of plaintiffs' Memoranda in Opposition.

2) Rule 26 Automatic Disclosures and Report of the Parties' Planning Conference.

> These deadlines and obligations shall be stayed pending the Court's Ruling on Phase One.

6

**IV.    The Court Should Enter Plaintiffs' Scheduling Order.**

    **A.    The Parties' Positions**.

Counsel for the Jones defendants is unable to obtain his clients' position at this time, but will advise this Court of it as soon as he is able to obtain it.

Defendant Wolfgang Halbig's position is: "I do not consent to an extension for Plaintiffs to respond to my motion to dismiss, since I am prejudiced by delay.  We must assume the court has jurisdiction until it rules that it does not, and if it does not, then your response will be ready to go in the state court.  For the same reason I do not consent to a suspension or stay of other deadlines, nor of the 21-day time limitation, you propose to put on my right to file additional motions to dismiss. I note that my motion to dismiss was filed in the state court on July 12th, not July 14th.  The deadline for Plaintiffs' response, per the federal court's order, is August 2nd."

Defendant Cory Sklanka consents to the plaintiffs' proposed briefing schedule.

Defendant Midas Resources has no objection to the proposed briefing schedule at this time.

Defendant Genesis Communications has no objection to the proposed briefing schedule at this time.

    **B.    The Court Should Address Subject Matter Jurisdiction First.**

 "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (striking down the doctrine of "hypothetical jurisdiction" by which difficult subject matter jurisdiction questions were bypassed to allow the district courts to resolve cases on easier merits arguments).  It is elementary that the Court must address its jurisdiction before turning to substantive issues.  The current ad hoc briefing

schedule requires briefing on the defendants' motion to dismiss before briefing on whether this Court has jurisdiction.

Moreover, a briefing schedule would allow the parties and this Court to deal with the relevant issues most efficiently. See *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (noting district courts' "inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases"). There are numerous plaintiffs and defendants in this case. So far, at least two defendants have submitted multiple motions on different timelines. Neither the plaintiffs nor this Court should have to respond to similar motions by various defendants piecemeal. Even under circumstances with far stronger countervailing concerns, courts consider the efficiency of resolving related motions simultaneously sufficient "good cause" for amendments to already-existing schedules. See, *e.g.*, *United States v. Cohan*, No. 3:11-CV-412 CSH, 2012 WL 4758142, at *2 (D. Conn. Oct. 5, 2012) (noting that courts "consider[ ] the efficiency gained by addressing the summary judgment issues simultaneously to constitute good cause" in allowing consideration of untimely cross-summary judgment motion); *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 CIV. 7488 (CM), 2017 WL 3613663, at *2 (S.D.N.Y. Aug. 21, 2017) (ordering consolidated briefing of motions to dismiss because doing so "would allow Defendants to efficiently brief the issues without needing to duplicate arguments").

Finally, staying deadlines pending a determination of subject matter jurisdiction is generally appropriate. *Cf. Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.,* 200 F.3d 795, 804 (Fed. Cir. 1999) ("When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved.").

For these reasons, plaintiffs request their Motion be granted.

THE PLAINTIFFS,


**Respectfully submitted,**

By     **/s/ William Bloss, ct01008**
**WILLIAM BLOSS, ct01008**
**MATTHEW S. BLUMENTHAL, ct30448**
KOSKOFF KOSKOFF & BIEDER
350 FAIRFIELD AVENUE
BRIDGEPORT, CT  06604
bbloss@koskoff.com
mblumenthal@koskoff.com
Telephone:     (203) 336-4421
Fax:           (203) 368-3244

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2018, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing under the court's CM/ECF System.

>                 **/s/ William M. Bloss, ct01008**
>                 **WILLIAM M. BLOSS, ct01008**
>                 **MATTHEW S. BLUMENTHAL, ct30448**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERICA LAFFERTY, et al | : | |
| | : | |
| PLAINTIFFS, | : | |
| | : | |
| v. | : | Civil Action No.: |
| | : | 3:18-cv-01156-JCH |
| | : | |
| ALEX EMRIC JONES, et al | : | |
| | : | |
| DEFENDANTS. | : | |

## DEFENDANT MIDAS RESOURCES, INC.'S MOTION TO DISMISS

Pursuant to D. Conn. L. Civ. R. 7 (a) and Fed R. Civ. P. 12 (b)(6), Defendant, Midas Resources, Inc. (hereinafter "Midas"), by and through its counsel, Wilson Elser Moskowitz Edelman & Dicker, LLP, hereby moves this Court to dismiss Plaintiffs' Complaint as against Midas. As discussed more thoroughly in the accompanying memorandum of law, the counts alleged by Plaintiffs as against Midas fail to state a claim upon which relief may be granted and must therefore be dismissed.

WHEREFORE, Midas Resources, Inc. respectfully requests that the Court enter an order dismissing Plaintiff's complaint as against Midas, in its entirety.

676180v.1

Dated: July 30, 2018

Respectfully Submitted,

Wilson Elser Moskowitz Edelman & Dicker LLP

By:/s/ Stephen P. Brown
      Stephen P. Brown (ct19876)
*Attorneys for Defendant*
*Midas Resources, Inc.*
1010 Washington Boulevard
Stamford, Connecticut 06901
Telephone No.: (203) 388-9100
Facsimile No.: (203)388-9101
Stephen.Brown@wilsonelser.com

2

676180v.1

Case 3:18-cv-01156-JCH Document 31 Filed 07/30/18 Page 3 of 3

## CERTIFICATE OF SERVICE

I hereby certify that, on this 30th day of July 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

Wolfgang Halbig 25526 Hawks Run Lane
Sorrento, FL 32776
wolfgang.halbig@comcast.net
*Self-Represented Defendant*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
t.anderson@gcnlive.com
*Representative for Defendant*
*Genesis Communications Network, Inc.*

3

676180v.1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ERICA LAFFERTY, et al                 :

              :

     PLAINTIFFS,            :

              :

  v.                    :         Civil Action No.:

              :         3:18-cv-01156-JCH

              :

ALEX EMRIC JONES, et al          :

              :

     DEFENDANTS.        :

## MEMORANDUM IN SUPPORT OF MOTION
## TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiffs suffered a horrible tragedy on December 14, 2012. The allegations in Plaintiffs'

Complaint revolve around Alex Jones, host of a radio show and publisher of InfoWars. As stated

by Mr. Jones in his Motion to Dismiss, he firmly believes that the December 14, 2012 shooting at

Sandy Hook Elementary School was not a hoax. Mr. Jones argues that as a proponent of free and

open debate, he permitted others to state their opinions that it was a hoax and comment on the

evidence in support of those opinions. *See* Dkt. 21, Jones Memorandum of Law at P. 2.

Plaintiffs make allegations against several other defendants, including Midas Resources, Inc.

("Midas"), a privately held company, incorporated in Minnesota, who allegedly sold precious metals,

dietary supplements, and other items as advertised by and in cooperation with several defendants,

including the Jones defendants. *See* Complaint at P. 4. Plaintiffs make one factual allegation as to

Midas, in Paragraph 89 that "Defendants…Midas…participated in this conspiracy and independently

distributed the publications contained in this Complaint." *Complaint* at P. 10. No further direct

allegations are made as to Midas or the alleged impermissible conduct of Midas. Instead, Plaintiffs

make general claims against Midas of 1) invasion of privacy by false light: civil conspiracy; 2)

defamation and defamation per se: civil conspiracy; 3) intentional infliction of emotional distress:

I

676103v.1

civil conspiracy; 4) negligent infliction of emotional distress: civil conspiracy; and 5) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Section 42-110a et seq. Plaintiffs' allegations are devoid of specific fact pleading to withstand a motion to dismiss.

## FACTUAL BACKGROUND

On December 14, 2012, Adam Lanza shot and killed 20 first-grade children and 6 adults at Sandy Hook Elementary School. Complaint, Dkt. No. 1-1, at ¶¶ 1–3.[3] Plaintiffs are the immediate family of six victims, and a first-responder to the scene. *Id.* at ¶ 21. Defendant Alex Jones, a journalist and radio host, is the publisher of the Infowars.com and PrisonPlanet.com websites. *Id.* at ¶ 30. Infowars, LLC produces and broadcasts Mr. Jones's programming. *Id.* at ¶ 31. Free Speech Systems, LLC owns Infowars.com. *Id.* at ¶ 32. Wolfgang Halbig claims the shooting was a hoax. Complaint at ¶ 58. Mr. Jones and the Infowars Defendants are generally alleged to have reported on Halbig's theory by having him as a guest on a radio show, disclosing his website's URL, and sending videographer(s) and a reporter to document Mr. Halbig's activities. *Id.* at ¶¶ 58–85. Plaintiffs generally assert that reporting on the hoax theory implies that Plaintiffs "fabricated the deaths of their loved ones." *Id.* at ¶ 110.

The Complaint sets forth statements attributed to Mr. Jones and the Infowars Defendants, only. No direct statements are claimed to have been made by Midas or a representative of Midas, nor was a single plaintiff ever named by any defendant, including Midas, during the time in question. Rather, the Complaint claims that reasonable listeners "would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones." *Id.* at ¶ 118; ¶ 126; ¶¶ 138 & 142; ¶ 163; ¶ 169; ¶ 177; ¶ 186; ¶ 200; ¶ 208; ¶ 219; ¶ 226; ¶ 233; ¶ 242; ¶ 260; ¶¶ 266 & 272; ¶ 274; ¶ 276; ¶¶ 287 & 297; ¶ 316; and ¶ 333.

2

676103v.1

The allegations in the Complaint as to the actions of Midas are summarily stated as against all defendants and are either summaries of what others said, questions about evidence, or opinions as to the credibility of evidence. None of these allegations give rise to actionable claims.

## I.   LEGAL STANDARD

### Dismissal Under Rule 12(b)(6)

An action may be dismissed under Fed. R. Civ. P. 12(b)(6). *See Adelson*, 774 F.3d at 805. In considering a motion under Fed. R. Civ. P. 12 (b)(6), the plaintiffs must have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims...." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). Nothing in the Complaint gives rise to viable claims against Midas.

In addition to basic pleading standards, public figures, including limited-purpose public figures, must meet a heightened standard and "show that the statements were made with 'actual malice' – that is, with knowledge that the statements were false or with reckless disregard as to their falsity." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) (public officials); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 154-55 (1967) (public figures); *Lerman v. Flynt Distrib. Cor.*, 745 F.2d 123, 137, 139 (2d Cir.

3

1984) (limited-purpose public figures)). Actual malice "must be alleged plausibly in accordance with Rule 8." *Biro*, 807 F.3d at 545.

The Second Circuit has affirmed the dismissal of defamation claims for failure to plausibly plead facts that satisfy the actual malice standard. *See, e.g., Biro*, 807 F.3d at 546; *Haywood v. St. Michael's College*, 536 F. App'x 123, 124 (2d Cir. 2013) (summary order) (stating that "the complaint simply does not plausibly allege that [defendants] acted with actual malice"); *Sentementes v. General Elec. Co.*, 2014 WL 2881441, *11 (D. Conn. June 25, 2014) (dismissing defamation claim where plaintiffs failed to allege facts tending to show knowledge of falsity or reckless disregard for the truth, "despite using the word 'maliciously' in their pleadings").

## II.    ANALYSIS

### A. Plaintiffs Fail to Meet General Pleading Requirements

Throughout the Complaint, Plaintiffs lump Midas and all other defendants together, without specifically alleging who did what, and when. "[I]t is particularly important to make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*, 691 F. App'x 515, 519 (10th Cir. 2017) (internal citation and quotation marks omitted). Courts have regularly dismissed claims where the complaints generally lump defendants together. *See Haskins v. Zimmer Holdings, Inc.*, No. 1:09-CV-236, 2010 U.S. Dist. LEXIS 7690, 2010 WL 342 (D. Vt. Jan. 29, 2010); *Hendrikx v. State*, No. 2:13-cv-0087-RJS, 2013 U.S. Dist. LEXIS 155217, at *6 (D. Utah Oct. 29, 2013) (finding Rule 8(a) standard not met where "[t]he Complaint wholly fails to give the Defendants adequate notice of the misconduct each is alleged to have committed."); *Timmons v. Linvatec*

*Corp.*, 263 F.R.D. 582, 2010 U.S. Dist. LEXIS 14057 (C.D. Cal. 2010); *Peterson v. Breg, Inc.*, 2:09-cv-2044 JWS, 2010 U.S. Dist. LEXIS 48985 (D. Ariz. April 28, 2010).

While the Complaint does specify what individually named speakers said, the Complaint does not specify how or why each other defendant, including Midas, may be liable for that speech beyond asserting conspiracy. Plaintiffs' lumping together of Midas and codefendants fails to meet the Rule 8(a) pleading standard. Similarly, even if one of the defendants might be liable for something said by some other defendant, including Mr. Jones, Midas would not share that liability, nor would the other individual companies. Plaintiffs were to specifically plead the factual basis for each defendants' alleged liability, including Midas, which it failed to do. The speculative and collective identification of the defendants fails to adequately identify which defendant caused each Plaintiff's alleged injury. *See Kester v. Zimmer Holdings, Inc.*, No. 2:10-cv-00523, 2010 U.S. Dist. LEXIS 59869, at *17 (W.D. Pa. June 16, 2010) (dismissing product liability claim where "the speculative and collective identification of the Defendants fails to adequately identify which Defendant caused Plaintiff's alleged injury and the Complaint, therefore, is insufficient and speculative under *Twombly* and *Iqbal*"); *Haskins*, 2010 U.S. Dist. LEXIS 7690, at *5 (dismissing product liability claim because the "threshold allegation" of pleading what a specific defendant did by name "is necessary to show a plausible entitlement to relief.").

Plaintiffs fail to plead specific allegations of wrongdoing. As such, the claims are insufficient as a matter of law and must be dismissed as to Midas.

### B. The Alleged Speech is Constitutionally Protected

Assuming that any of the alleged statements in the Complaint can be attributed to Midas, which Midas denies, under the First Amendment, public officials and public figures must prove "actual malice" to recover for claims based on speech. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254,

676103v.1

279-80 (1964); *Gertz v. Robert Welch*, 418 U.S. 323 (1974). "For the purpose of determining the constitutional protection afforded a defendant's speech under the First Amendment to the United States Constitution, the court must first address whether the plaintiff is a public figure." *Zupnik v. Associated Press, Inc.*, 31 F. Supp. 2d 70, 72 (D. Conn. 1998). Plaintiff Aldenberg, an FBI agent, is a public official. *See Price v. Viking Penguin, Inc.*, 676 F. Supp. 1501, 1512 (D. Minn. 1988) ("First Amendment policy concerns behind the New York Times decision favor extending the concept of public official to include FBI agents when acting publicly in the course of their duties. The conduct of such agents in exerting their federal authority is a matter of legitimate public interest.") The remaining plaintiffs are public figures.

Plaintiffs, at a minimum, are involuntary public figures, as they "become a public figure through no purposeful action of [their] own." *Gertz*, 418 U.S. at 345. In *Zupnik*, the Court found that family members and participants in high profile events can have "notoriety spilled over" and be drawn "into the public spotlight[,]". Plaintiffs similarly meet this standard. With the exception of Mr. Aldenberg, Plaintiffs' family members were killed in a high-profile shooting.

Public figures and officials "who seek damages for defamatory statements must show that the statements were made with 'actual malice'—that is, with knowledge that the statements were false or with reckless disregard as to their falsity." *Biro*, 807 F.3d at 544. Actual malice only exists where a defendant has actual, subjective knowledge of falsity or an awareness of a strong likelihood the statement is false; "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). A defamation plaintiff must establish actual malice by clear and convincing evidence. *See Bose Corp. v. Consumers Union, Inc.*, 466 U.S. 485, 511 (1984); *see also Celle v. Filipino Reporters Enters.*, 209 F.3d 163, 183 (2d Cir. 2000).

6

Plaintiffs make one conclusory allegation that "[t]he defendants had knowledge that their statements were lies, or acted with reckless disregard as to the falsity of their statements," without any connection to the facts. These "'naked assertions' or 'conclusory statements' are not enough." *Biro*, 807 F.3d at 544 (quoting *Iqbal*, 556 U.S. 662). Plaintiffs fail to assert nonconclusory knowledge of falsity or reckless disregard. Moreover, Plaintiffs do not allege that Midas made the alleged statements, but assuming arguendo that such allegation was set forth, Plaintiffs fail to allege that Midas and the defendants knew these facts to be false or recklessly disregarded their falsity in relying on them to assess whether the shooting occurred. Thus, there is no plausible allegation of actual malice. *See Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 453 (S.D.N.Y. 2018) (granting Rule 12(b)(6) motion because "[t]he Complaint's allegations regarding the element of actual malice are conclusory and provide no detail as to each Defendants' knowledge or mental state").

## C. Several Allegations are Time-Barred

"In Connecticut, an action is commenced on the date of service of the writ upon the defendant...." *McGaffin v. Roberts*, 193 Conn. 393, 401-402 n.9 (1984), cert. denied, 470 U.S. 1050 (1985) (citations omitted). The common law claims are governed by a two-year statute of limitations. *See* Conn. Gen. Stat. §§ 52-577, 52-584, & 52-597. The Connecticut Unfair Trade Practices Act has a three-year statute of limitations. Conn. Gen. Stat. § 42-110g(f).

Although Plaintiffs initiated service on Midas on May 23, 2018, such service was invalid. None of the means of service under Fed. R. Civ. P. 4e were met. According to the return of service, Midas was served by copy to the Connecticut Secretary of State, who is not an agent of service, and it is not registered to do business in Connecticut, nor did they transact business in Connecticut,

7

676103v.1

rendering service on the Secretary of State invalid. *See* Fed. R. Civ. P. 4(h)(1)(B); Conn. Gen. Stat. § 34-275a.

While Midas maintains that Plaintiffs make no specific allegation against it as to defamation, assuming an allegation was made, each alleged act of defamation was a distinct event, giving rise to a separate cause of action. *See Time Was Garage, LLC v. Giant Steps, Inc.*, No. LLICV106002895S, 2013 Conn. Super. LEXIS 2957, at *25 (Super. Ct. Dec. 20, 2013). Nor is there some special relationship between the parties such that "continuing course of conduct" would apply. Similarly, the doctrine does not apply to false light invasion of privacy claims. *See Brady v. Bickford*, No. KNLCV116007541, 2015 Conn. Super. LEXIS 585, at *23-24 (Super. Ct. Mar. 13, 2015).

Midas acknowledges that the CUTPA claim and the emotional distress claims could be subject to the doctrine. *See Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 177 (D. Conn. 2000) (CUTPA); *Watts v. Chittenden*, 301 Conn. 575, 596 (2011) (intentional infliction of emotional distress); *Brady*, 2015 Conn. Super. LEXIS 585, at *14-15 (citing cases suggesting it may apply to negligent infliction claims). "To support a finding of a 'continuing course of conduct' that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong." *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 209 (1988). However, there is no "special relationship," supporting a claim of breach of duty, between Plaintiffs and Midas that would make the doctrine applicable for the CUTPA or negligent infliction claims. *Sinotte v. City of Waterbury*, 121 Conn. App. 420, 440-41 (2010). In any event, Plaintiffs fail to allege that Midas was engaged in a continuing course of conduct such that tolling might apply.

8

## D. Midas is Not Liable for False Light Invasion of Privacy

Plaintiffs were not put in a false light nor do Plaintiffs make specific allegations that Midas put them in a false light. "The definition of false light invasion of privacy is as follows: One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Allen v. Verizon Wireless*, 2013 U.S. Dist. LEXIS 80228, at *27 (D. Conn. June 6, 2013) (Hall, U.S.D.J.), quoting *Grigorenko v. Pauls*, 297 F. Supp. 2d 446, 448 (D. Conn. 2003). Plaintiffs do not meet these elements.

First, Plaintiffs were not placed before the public by Midas, nor is such an allegation made. "Under the group libel doctrine, a plaintiff's claim is insufficient if the allegedly defamatory statement referenced the plaintiff solely as a member of a group, unless the plaintiff can show that the circumstances of the publication reasonably give rise to the conclusion that there is a particular reference to the plaintiff." *Diaz v. NBC Universal, Inc.*, 337 F. App'x 94, 96 (2d Cir. 2009) (citing *Algarin v. Town of Wallkill*, 421 F. 3d 137, 139 (2d Cir. 2005). The standard for "group libel" may also be considered in evaluating a group false light claim. *See, e.g., Degroat v. Cooper*, 2014 U.S. Dist. LEXIS 66089, at *15-16 (D.N.J. May 14, 2014). Plaintiffs also fail to allege that Midas identified any Plaintiffs by name.

Second, Plaintiffs fail to allege that Midas had knowledge of or acted in reckless disregard as to the alleged falsity of the publicized matter. If "[t]here is nothing false about th[e] statement" at issue, then there can be "no claim of false light." *Miles v. City of Hartford*, 719 F. Supp. 2d 207, 216-17 (D. Conn. 2010) ("Connecticut courts have only recognized a false light claim where the

9

defendant has published a falsehood."); *Machleder v. Diaz*, 801 F.2d 46, 53 (2d Cir. 1986) ("[T]ruth ... is a complete defense to a false light invasion of privacy cause of action"); *Goodrich*, 188 Conn. at 131-32 (1982) (when "the published statements concerning ... [plaintiff's] affairs [a]re true," any "claim for a false light invasion of privacy" is defeated). "As long as the matter published is substantially true, [a] defendant [i]s constitutionally protected from liability for a false light invasion of privacy[.]" *Id.* at 113, 132 (substantially true means that "the main charge, or gist" of the allegedly defamatory statement is true) (emphasis added).

The Complaint is full with the factual bases for the hoax theory as to the individual defendants, only, not as to Midas. Assuming the bases set forth can be attributed to Midas, which Midas denies, Plaintiffs do not deny those particular facts. Not only have Plaintiffs failed to allege particular factual statements made by Midas which are untrue, but assuming that such an allegation was made, the individual defendants' factual statements are arguably substantially true and it cannot be shown that they otherwise acted with knowledge of falsity or in reckless disregard thereof. Thus, there is no plausible claim for false light invasion of privacy.

## E. Midas is Not Liable for Defamation *Per Quod* or *Per Se*

Midas did not defame Plaintiffs nor have Plaintiffs made such allegation. In Connecticut, "[t]o establish a prima facie case of defamation" a party "must demonstrate that: (1) [the defendant] published a defamatory statement; (2) this defamatory statement identified [the plaintiff] to a third person; (3) this defamatory statement was published to a third person; and (4) [the plaintiff's] reputation suffered injury as a result of the defamatory statement." *Simms v. Seaman*, 308 Conn. 523, 547-48, 69 A.3d 880 (Conn. 2013), quoting *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627-28 (Conn. 2009).

10

First, Plaintiffs cannot recover under the group libel doctrine. *See Abramson v. Pataki*, 278 F.3d 93, 102-03 (2d Cir. 2002) (finding individual Javits Center workers could not bring claims where there were repeated references to corruption among them). Not only do Plaintiffs fail to set forth statements allegedly made by Midas, but the alleged statements made by codefendants in this Complaint were not "of and concerning" Plaintiffs. Under Connecticut law,

> [t]o establish a prima facie case of defamation, a plaintiff must allege a defamatory statement that identifies the plaintiff to a third party. Where the defamatory statement is not made about the plaintiff, the defamation claim must fail. Indeed, the Connecticut Supreme Court has observed that proving that a defamatory statement was made "of and concerning" the plaintiff is a constitutional prerequisite to recovery for defamation. Although a defamatory statement may be "of and concerning" the plaintiff even though on its face it refers to another person, more is required than a mere pleading of defamation by association; rather, a reasonable recipient must understand that the defamatory statement is "in substance, actually about" the third party.

*Learning Care Grp., Inc. v. Armetta*, No. 3:13-CV-01540 (VLB), 2014 U.S. Dist. LEXIS 140132, at *49-50 (D. Conn. Sep. 30, 2014) (internal citations omitted). Plaintiffs arguably plead defamation by association; recipients would not understand it to be about them, by name, nor are these defamation allegations claimed to have been made by Midas or its representatives.

Second, for a statement to be defamatory, it must be false. *Devone v. Finley*, No. 3:13-CV-00377 (CSH), 2014 U.S. Dist. LEXIS 36356, at *24 (D. Conn. Mar. 20, 2014). A "defendant will not be held liable as long as the statements at issue are substantially true." *Woodcock v. Journal Publishing Co., Inc.*, 230 Conn. 525, 554 (Conn. 1994). Thus, "[w]here the main charge, or gist, of the [defamation] is true, minor errors that do not change a reader's perception of the statement do not make the statement actionable." *Skakel v. Grace*, 2014 U.S. Dist. LEXIS 30124, 2014 WL 902675, at *4-5 (D. Conn. March 7, 2014) (internal quotation marks and citations omitted). The statements at issue in the Complaint are not only allegedly made by codefendants, not including Midas, but are all of opinion. "For a statement to be defamatory, it must be one of fact, rather than

11

one of opinion." *Devone*, 2014 U.S. Dist. LEXIS at *24; *Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 596 F.Supp.2d 497, 503 (D. Conn. 2009) (under Connecticut common law, "a defamation claim requires a statement that is an assertion of fact, either explicit or implied, and not merely an opinion"). "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known.... An opinion, on the other hand, is a personal comment about another's conduct, qualifications or character that has some basis in fact." *Goodrich*, 188 Conn. at 111 (internal citations and quotation marks omitted). Generally, "expressions of 'pure' opinion (those based upon known or disclosed facts) are guaranteed virtually complete constitutional protection." *Id.* at 118. Here, Plaintiffs make no specific allegation as to statements allegedly made by Midas in the timeline of events described, including statements that were allegedly false, therefore, there can be no claim for defamation.

Plaintiffs also were not defamed by Midas by implication. "Connecticut has not recognized defamation by implication." *Estate of Gomez v. Larson*, CV 980084646, 1999 Conn. Super. LEXIS 1535, at *16 (Super. Ct. June 8, 1999). "In the absence of [] undisclosed facts, first amendment considerations dictate that an article concerning a public figure composed of true or substantially true statements is not defamatory regardless of the tone or innuendo evident." *Strada v. Conn. Newspapers, Inc.*, 193 Conn. 313, 323 (1984). Here, Plaintiffs fail to set forth allegations as to Midas regarding defamation by implication.

Further, Midas is only liable for their own statements, not those of the codefendants. As discussed below, there was no conspiracy. Moreover, Plaintiffs have failed to allege that Midas transmitted alleged defamatory material and even assuming such allegation was made, a defendant transmitting defamatory material from a third party is not liable unless the defendant can be "shown to have had 'a high degree of awareness of the statement's probable falsity' or to have 'in

12

676103v.1

Case 3:18-cv-01156-JCH Document 32 Filed 07/30/18 Page 13 of 20

fact entertained serious doubts as to the truth of his publication.'" *Lerman*, 745 F.2d at 139, cert. denied, 471 U.S. 1054 (1985) (quoting *Garrison*, 379 U.S. at 74). Plaintiffs fail to make these allegations as to Midas. Thus, there is no actionable defamation.

Third, Plaintiffs fail to allege recoverable damages. In a defamation claim, Plaintiffs must allege and prove special damages. *See Yavis v. Sullivan*, 137 Conn. 253, 259 (1950). Special damages "must be of a material and, generally, of a pecuniary nature. It must result from the conduct of a person other than the defamer or the defamed, and that conduct must be directly caused by the publication of the slander." *Urban v. Hartford Gas Co.*, 139 Conn. 301, 308 (1952). Plaintiffs do not allege material or pecuniary losses, thus, the claim for defamation *per quod* fails.

Neither are the claims for defamation *per se* conceivable. "In limited circumstances, a plaintiff may be able to argue that she was per se defamed, thus obviating the need to establish the fourth element of reputational harm." *Telkamp v. Vitas Healthcare Corp. Atl.*, No. 3:15-CV-726 (JCH), 2016 U.S. Dist. LEXIS 25232, at *34-35 (D. Conn. Feb. 29, 2016) (Hall, U.S.D.J.). The important difference between claims of defamation and defamation per se is that, "[a]s to the final prong of the prima facie case of defamation, that of injury to reputation, when a plaintiff claims defamation per se, she need not prove damages." *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 842, 850 (2005). "In general, there are two classes of libel that are actionable per se: (1) libels charging crimes and (2) libels which injure a man in his profession and calling." *Id*. Here, Plaintiffs claim that the statements "implicate the Plaintiffs in heinous criminal conduct." Complaint at ¶ 350. No actual crime is identified and there is no allegation Midas committed a crime rather than merely being "implicate[d]." Thus, there is no *per se* claim for defamation.

13

**F. Midas is Not Liable for Intentional Infliction of Emotional Distress**

The torts of intentional and negligent infliction of emotional distress can "not be used to circumvent the established and carefully balanced framework of constitutional and state libel law." *Chaiken v. W Publishing Corp.*, 907 F. Supp. 689, 699 (S.D.N.Y. 1995), aff'd, 119 F.3d 1018 (1997). To recover for intentional infliction, Plaintiffs must prove that:

> (a) defendants intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of [its] conduct; (b) defendants' conduct was extreme and outrageous; (c) defendants' conduct caused the plaintiff's distress; and (d) the emotional distress suffered by the plaintiff was severe. The standard in Connecticut for conduct reaching the level of "extreme and outrageous" is defined as "that which exceeds all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."

*Mercer v. Brunt*, 272 F. Supp. 2d 181, 188, 2002 U.S. Dist. LEXIS 26561 (D. Conn. 2002) (citations omitted). These elements are not met.

First, nothing in the factual background alleges that Midas or any representative of Midas had any intention to harm Plaintiffs or had reason to foresee their alleged distribution of goods across any media platform would cause harm. Plaintiffs make no allegation that Midas made any statement whatsoever in this matter, let alone a statement intending to cause distress.

Second, Plaintiffs have failed to allege that any claimed speech by Midas or a representative was extreme and outrageous. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" *Tracy v. New Milford Public Schools*, 101 Conn. App. 560, 569-70, cert. denied, 284 Conn. 910 (2007) (internal quotation marks omitted.). "Conduct on the part of the defendant that is merely

14

insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 211 (2000).

Plaintiffs fail to set forth what, exactly, they claim was extreme and outrageous as to Midas. *See Avery v. City of W. Haven*, 3:99-CV-00013 (EBB), 2001 U.S. Dist. LEXIS 24394, at *20-21 (D. Conn. Feb. 1, 2001) (dismissing claim that "merely allege[d] Defendants' conduct was extreme and outrageous — a legal conclusion.") Nor do Plaintiffs properly plead the element of severe emotional distress. They only make conclusory allegations that they suffered "emotional distress" that was "severe" caused by defendants collectively, to include Midas. *See* Complaint at ¶¶ 363, 364 & 367. This is insufficient as a matter of law. *See Avery, supra* ("Nor do Plaintiffs allege how, and in what manner they all suffer from mental distress of a very serious kind.") As a result, the intentional infliction of emotional distress claim cannot survive.

## G. Midas is Not Liable for Negligent Infliction of Emotional Distress

The elements of a negligent infliction of emotional distress claim are not met. Plaintiff must allege and prove: 1) that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; 2) the plaintiff's distress was foreseeable; 3) the emotional distress was severe enough that it might result in illness or bodily harm; and 4) the defendant's conduct was the cause of the plaintiff's distress. *Adams v. Hartford Courant*, No. 3-03-cv-0477 (JCH), 2004 U.S. Dist. LEXIS 8546, at *14 (D. Conn. May 14, 2004) (Hall, U.S.D.J.). Nothing alleged in the Complaint could warrant a finding of liability as to Midas.

Plaintiffs make insufficient, conclusory allegations as to their harm, restating that they suffered emotional distress, caused by Midas, "severe enough that it might result in illness or bodily harm." Complaint at ¶¶ 375-378. The Complaint is devoid of detail as to their alleged distress, illness,

15

676103v.1

or physical harms suffered. Plaintiffs also fail to allege that the harm was foreseeable by Midas. "The foreseeability requirement in a negligent infliction of emotional distress claim is more specific than the standard negligence requirement that an actor should have foreseen that his tortious conduct was likely to cause harm.... In order to state a claim for negligent infliction of emotional distress, the plaintiff must plead that the actor should have foreseen that her behavior would likely cause harm of a specific nature, i.e., emotional distress likely to lead to illness or bodily harm." *Olson v. Bristol-Burlington Health District*, 87 Conn. App. 1, 5, cert. granted on other grounds, 273 Conn. 914 (2005) (appeal withdrawn May 25, 2005) (citation omitted).

Plaintiffs make no claim that Midas, specifically, inflicted distress upon them. Instead, Plaintiffs lump all defendants together and allege that the statements made through media platforms inflicted said distress. However, as argued by codefendants in their motions to dismiss, the speech at issue by codefendants was a matter of public concern, to a general audience, not specifically targeting Plaintiffs. Thus, for the reasons set forth above, the claim must be dismissed.

## H. Plaintiffs' Conspiracy Claims Lack Merit

Counts One through Four of the Complaint all allege civil conspiracy as part of the underlying tort in that:

- The defendants combined to conduct their campaign of harassment and abuse, which included numerous unlawful acts or lawful acts by unlawful means.
- The defendants combined to perform these unlawful acts pursuant to their scheme to harass and abuse the plaintiffs and in furtherance of that scheme.

*Complaint* at ¶¶ 344, 345, 357, 358, 370, 371, 382 & 383. Plaintiffs also make general allegations that the defendants "acted together to develop, disseminate, and propagate" the allegedly false statements. *Id.* at ¶¶ 84-85. These allegations are insufficient.

In Connecticut, "there is no independent claim of civil conspiracy. Rather, the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy

16

itself. Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Harp v. King*, 266 Conn. 747, 779 n.37 (2003) (internal citation and quotation marks omitted). A conspiracy requires that "one or more persons, by express or tacit agreement, act in combination with another for a particular purpose or to attain a particular end." *Id.* at 781. As such, a plaintiff must "allege the commission of a tortious act in furtherance of the conspiracy, which of course is necessary to establish liability for civil conspiracy, which is not an independent cause of action, but rather a separate legal basis upon which two or more persons can intentionally combine to commit an underlying legal wrong." *Weissman v. Koskoff, Koskoff & Bieder, P.C.*, No. HHDCV106012922S, 2011 Conn. Super. LEXIS 181, at *29 (Super. Ct. Jan. 19, 2011).

As discussed above, there are no substantive torts alleged and there is no plausible allegation Midas or any representative of Midas entered into any agreement or had the intent to harm Plaintiffs. Thus there is no cognizable conspiracy claim for the four common law claims.

## I. Midas is Not Liable Under CUTPA

Plaintiffs allege, generally, that defendants' speech is in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-11a, *et seq*. Not only do Plaintiffs fail to allege any statement made by Midas, but assuming such allegation was made, which Midas denies, Plaintiffs' CUTPA claim is woefully inadequate to meeting pleading standards. *Twombly*, 550 U.S. at 555.

"The purpose of CUTPA is to protect the public from unfair trade practices in the conduct of any trade or commerce, 'and whether a practice is unfair depends upon the finding of a violation of an identifiable public policy.'" *Eder Bros. v. Wine Merchants. Of Conn., Inc.* 275 Conn. 363, 380 (Conn. 2005) quoting *Daddona v. Liberty Mobile Home Sales, Inc.*, 209 Conn 243, 257 (1988). Plaintiffs' allegations as to Midas do not amount to a CUTPA violation.

17

676103v.1

The "cigarette rule" determines whether a trade practice is unfair or deceptive:

(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least a penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen.

*Harris v. Bradley Memorial Hosp. and Health Center, Inc.*, 296 Conn. 315, 350 (2010). None of the factors are met.

Initially, Plaintiffs make no direct allegation of unfairness as to Midas. Next, there is no immoral, unethical, oppressive, or unscrupulous conduct alleged against Midas. The basis of the claim is that the defendants, generally, and allegedly spread lies for profit through its media platforms. *See* Complaint at ¶¶ 386-387. Not only do Plaintiffs fail to allege that Midas made statements to support these theories, but assuming that Plaintiffs did make these allegations, which Midas denies, the Supreme Court specifically refrained from declaring "false speech" as an unprotected category of speech. *See United States v. Alvarez*, 567 U.S. 709, 721-22 (2012) (plurality); *see also Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) (relying upon *Alvarez* plurality).

Lastly, Plaintiffs are not consumers, competitors, or related businessmen, and therefore the CUTPA claim against Midas must be dismissed. *See McLaughlin Ford, Inc. v. Ford Motor Co.*, 192 Conn. 558, 568 (1984).

## III. CONCLUSION

Plaintiffs suffered a horrible tragedy, however Midas played no role whatsoever in causing it. The allegations set forth by Plaintiffs in this action fall woefully short of pleading standards necessary to maintain those claims and as a result, all claims as to Midas Resources, Inc. should be dismissed.

676103v.1

Dated: July 30, 2018.                                    Respectfully submitted,

                                                          Wilson Elser Moskowitz Edelman & Dicker
                                                          LLP

                                                          By:/s/ Stephen P. Brown _____
                                                                  Stephen P. Brown (ct19876)
                                                          *Attorneys for Defendant*
                                                          *Midas Resources, Inc.*
                                                          1010 Washington Boulevard
                                                          Stamford, Connecticut 06901
                                                          Telephone No.: (203) 388-9100
                                                          Facsimile No.: (203)388-9101
                                                          Stephen.Brown@wilsonelser.com

19

Case 3:18-cv-01156-JCH Document 32 Filed 07/30/18 Page 20 of 20

## CERTIFICATE OF SERVICE

I hereby certify that, on this 30th day of July 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.
I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

Wolfgang Halbig 25526 Hawks Run Lane
Sorrento, FL 32776
wolfgang.halbig@comcast.net
*Self-Represented Defendant*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
t.anderson@gcnlive.com
*Representative for Defendant*
*Genesis Communications Network, Inc.*

676103v.1

# UNITED STATES DISTRICT COURT
## District of Connecticut

FILED

2018 JUL 31  A 11: 12

U.S. DISTRICT COURT
NEW HAVEN, CT.

Erica Lafferty, Et al.
_____
Plaintiff

v.

Alex Jones, et al.
_____
Defendant

Case No. 3-18-CV-01156-JCH

## NOTICE OF PRO SE APPEARANCE

To: The clerk of court and all parties of record, I am representing myself in the matter above.

July 30, 2018
_____
Date

_____
Filer's signature

Wolfgang W. Halbig
_____
Printed name

25526 Hawks Run Lane
_____
Address

Sorrento, Florida  32776
_____
City, State, Zip Code

352-729-2559
_____
Telephone number

## CERTIFICATE OF SERVICE

I hereby certify that on   July 30, 2018 _____, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to [Below list the names and addresses of anyone unable to accept electronic filing] as indicate on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

List here: See memorandum of service to four law firms and their respective attorneys attached to this "NOTICE OF PRO SE APPEARANCE"

_____
Filer's signature

Rev. 8/11/15

NOTICE OF PRO SE APPEARANCE MEMORANDUM OF SERVICE

Dated this **29** day of July, 2018.

BY DEFENDANT HALBIG PRO SE:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
Wolfgang.halbig@comcast.net

## CERTIFICATE OF SERVICE

I certify, by my signature above, that I have served the foregoing "Halbig's NOTICE OF PRO SE APPEARANCE" on the other parties this **29** day of July, 2018, by depositing true copies in the U.S. mail postage prepaid, and sending courtesy copies by email, addressed as follows:

William M. Bloss, Esq.
Matthew S. Blumenthal, Esq.
Koskoff Koskoff & Bieder
350 Fairfield Ave.
Bridgeport, CT 06604
bbloss@koskoff.com
mblumenthal@koskoff.com

Jay Marshall Wolman, Esq.
100 Pearl Street
14th Floor
Hartford, Ct 06103
jmw@randazza.com

Lawrence L. Connelli, Esq.
Regnier Taylor Curran & Eddy
100 Pearl Street
4th Floor
Hartford, Ct 06103
lconnelli@rtcelaw.com

Nicole R. Cuglietto, Esq.
Stephen P. Brown, Esq.
Wilson Elser Moskowitz Edelman & Dicker
1010 Washington Blvd
8th Floor
Stamford, Ct 06901
nicole.cuglietto@wilsonelser.com
Stephen.brown@wilsonelser.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2018 JUL 31 A II: 12

U.S. DISTRICT COURT
NEW HAVEN, CT.

ERICA LAFFERTY, ET AL., Plaintiff

V.

ALEX JONES, ET AL., Defendant

Case No.
[Put case number here]
3:18-CV-01156-JCH

CONSENT TO ELECTRONIC NOTICE
BY SELF-REPRESENTED LITIGANT

A.      [Complete the first line for electronic notification from the court]

I, WOLFGANG W. HALBIG _____ hereby consent to the court
(name of self-represented litigant)
using my email address, as listed below, for the purpose of sending me notification of orders
and notices issued by the court.

B.      [Complete the second line for electronic service from opposing counsel; DO NOT
COMPLETE THIS LINE IF YOU WANT OPPOSING COUNSEL TO SEND PAPERS
BY REGULAR MAIL]

I, WOLFGANG W. HALBIG _____ hereby consent to opposing
(name of self-represented litigant)
counsel using my email address, as listed below, for the purpose of sending me papers filed
with the court.

        In the event I change my email provider or discontinue my email service, I will notify
the court immediately of the address change so my court records may be updated.

WOLFGANG W. HALBIG
Name of Self-represented Litigant

25526 HAWKS RUN LANE
Street Address
                        32776
Sorrento, FLORIDA     352-729-2559
City, State, Zip Code          Telephone

WOLFGANG.HALBIG@COMCAST.NET
Email Address

7/30/2018
Date

Signature

Certificate of Service

I hereby certify that on ___29 July___ [date] a copy of the foregoing "Motion by Self-represented Litigant to Participate in Electronic Filing" was filed and served by mail on the following:  [insert name and address of every person served].

_____
Signature of Self-represented Litigant

William M. Bloss, Esq.
Matthew S. Blumenthal, Esq.
Koskoff Koskoff & Bieder
350 Fairfield Ave.
Bridgeport, CT  06604
bbloss@koskoff.com
mblumenthal@koskoff.com

Jay Marshall Wolman, Esq.
100 Pearl Street
14th Floor
Hartford, Ct 06103
jmw@randazza.com

Lawrence L. Connelli, Esq.
Regnier Taylor Curran & Eddy
100 Pearl Street
4th Floor
Hartford, Ct 06103
lconnelli@rtcelaw.com

Nicole R. Cuglietto, Esq.
Stephen P. Brown, Esq.
Wilson Elser Moskowitz Edelman & Dicker
1010 Washington Blvd
8th Floor
Stamford, Ct 06901
nicole.cuglietto@wilsonelser.com
Stephen.brown@wilsonelser.com

Revised: November 29, 2017

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ERICA LAFFERTY, *et al.*,          )
                                   )
    Plaintiffs,                     )    Case No: 3:18-cv-01156-JCH
                                   )
vs.                                )
                                   )
                                   )
                                   )
ALEX JONES, *et al.*,              )
                                   )
    Defendants.                     )

---

### HALBIG'S OBJECTION TO NOTICE; REQUEST TO POSTPONE STATUS CONFERENCE; AND OBJECTION TO PLAINTIFFS' MOTION FOR EXTENSION AND ENTRY OF SCHEDULING ORDER

---

Defendant Wolfgang Halbig, pro se and in the first person henceforth, respectfully objects to the lack of notice of the August 6, 2018, status conference, and asks that the conference be postponed until after his motion to dismiss is ruled upon. In the alternative he asks the court for permission to participate by telephone. I also reiterate my objection to Plaintiffs' motion for extension and entry of a scheduling order (Doc. 29, filed 7/27/18), since it mischaracterizes the motion I have before the court.

As grounds therefor, I state as follows:

1.    I am a resident of the State of Florida, and filed an appearance in the state court action which was removed to this court. I also filed a motion to dismiss in the state court case based on lack of personal jurisdiction, as well as lack of subject matter jurisdiction. That motion is now pending in this court with an Aug. 3, 2018, date set for Plaintiffs' response.

1

2.  To this point I have received service of NO DOCUMENTS WHATSOEVER in this case.  I am filing herewith my consent to receive electronic service, but was entitled to receive everything by mail, before.  I am particularly concerned about a notice from the court which was not even issued as a separate notice, but is buried in a docket entry on PACER, about a status conference set for August 6, 2018, at 3:30, saying "this is the only notice the parties will receive."  I am a party (involuntarily) and should not have to consult PACER--and pay--to obtain pleadings I am entitled to service of directly.  Moreover, PACER is not a method of service or notice.  Thankfully, I have friends who are monitoring PACER for activities in this case or I would have had no way of knowing about this status conference.

3.  That "notice" further requires the parties to appear in person.  It constitutes a hardship for me to travel to Connecticut, especially on such short notice.  More important, I have alleged, in my motion to dismiss, that the court does not have jurisdiction over me.  The court must decide that motion, within the timelines set by its current scheduling order, without first taking up the Plaintiffs' motion to enter a new scheduling order and suspend everything in the case.  The Aug. 3 deadline this court set on Plaintiffs' response to my motion is the same deadline they had to meet in the state court.  I am entitled to a ruling on my motion to dismiss before I am required to invest more time and resources into defending this matter.

4.  Although Plaintiffs set forth my objection in their "Motion for Extension of Time and for Entry of a Scheduling Order" (Doc. 29, filed 7/27/18), they mischaracterize my motion as being brought under Fed.R.Civ.P. 12(b)(6).  Instead, the applicable federal rules are Fed. R. Civ. P. 12(b)(1) and (2).  Although I can appreciate that they want the court first to decide whether it has diversity jurisdiction—in other words, whether Cory Sklanka is rightfully in this

2

case--I think the court's first duty is to decide whether *I* am rightfully in this case. All the wrongful acts Plaintiffs allege against Mr. Sklanka are derivative of the wrongful acts they allege against me.

WHEREFORE, cause being shown; this court being unable to proceed until my allegations that it lacks jurisdiction are decided; and the court's having issued no proper or timely notice of this August 6th status conference at which it has ordered the parties to appear in person, the status conference should be postponed until my motion to dismiss is decided, or I should be given leave to participate in it by phone, in the interest of justice.

Dated this 29 day of July, 2018.

BY DEFENDANT HALBIG PRO SE:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL   32776
wolfgang.halbig@comcast.net

## CERTIFICATE OF SERVICE

I certify, by my signature below, that I have served the foregoing "Halbig's Objection to Notice; Request to Postpone Status Conference; and Objection to Plaintiffs' Motion for Extension and Entry of Scheduling Order" on the other parties who have consented to electronic service this 29 day of July, 2018, addressed as follows:

William M. Bloss, Esq.
Matthew S. Blumenthal, Esq.
Koskoff Koskoff & Bieder
bbloss@koskoff.com
mblumenthal@koskoff.com

Jay Marshall Wolman, Esq.
jmw@randazza.com

Lawrence L. Connelli, Esq.
Regnier Taylor Curran & Eddy
lconnelli@rtcelaw.com

Nicole R. Cuglietto, Esq.
Stephen P. Brown, Esq.
Wilson Elser Moskowitz Edelmann & Dicker
nicole.cuglietto@wilsonelser.com
Stephen.brown@wilsonelser.com

4

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ERICA LAFFERTY, *et al.*,     )
                        )
     Plaintiffs,     )     Case No: 3:18-cv-01156-JCH
                        )
vs.                  )
                        )
                        )
ALEX JONES, *et al.*,     )
                        )
     Defendants.     )

FILED

---

## HALBIG'S OBJECTION TO NOTICE; REQUEST TO POSTPONE STATUS CONFERENCE; AND OBJECTION TO PLAINTIFFS' MOTION FOR EXTENSION AND ENTRY OF SCHEDULING ORDER

---

Defendant Wolfgang Halbig, pro se and in the first person henceforth, respectfully objects to the lack of notice of the August 6, 2018, status conference, and asks that the conference be postponed until after his motion to dismiss is ruled upon. In the alternative he asks the court for permission to participate by telephone. I also reiterate my objection to Plaintiffs' motion for extension and entry of a scheduling order (Doc. 29, filed 7/27/18), since it mischaracterizes the motion I have before the court.

As grounds therefor, I state as follows:

1.     I am a resident of the State of Florida, and filed an appearance in the state court action which was removed to this court. I also filed a motion to dismiss in the state court case based on lack of personal jurisdiction, as well as lack of subject matter jurisdiction. That motion is now pending in this court with an Aug. 3, 2018, date set for Plaintiffs' response.

1

2.      To this point I have received service of NO DOCUMENTS WHATSOEVER in this case. I am filing herewith my consent to receive electronic service, but was entitled to receive everything by mail, before. I am particularly concerned about a notice from the court which was not even issued as a separate notice, but is buried in a docket entry on PACER, about a status conference set for August 6, 2018, at 3:30, saying "this is the only notice the parties will receive." I am a party (involuntarily) and should not have to consult PACER--and pay--to obtain pleadings I am entitled to service of directly. Moreover, PACER is not a method of service or notice. Thankfully, I have friends who are monitoring PACER for activities in this case or I would have had no way of knowing about this status conference.

3.      That "notice" further requires the parties to appear in person. It constitutes a hardship for me to travel to Connecticut, especially on such short notice. More important, I have alleged, in my motion to dismiss, that the court does not have jurisdiction over me. The court must decide that motion, within the timelines set by its current scheduling order, without first taking up the Plaintiffs' motion to enter a new scheduling order and suspend everything in the case. The Aug. 3 deadline this court set on Plaintiffs' response to my motion is the same deadline they had to meet in the state court. I am entitled to a ruling on my motion to dismiss before I am required to invest more time and resources into defending this matter.

4.      Although Plaintiffs set forth my objection in their "Motion for Extension of Time and for Entry of a Scheduling Order" (Doc. 29, filed 7/27/18), they mischaracterize my motion as being brought under Fed.R.Civ.P. 12(b)(6). Instead, the applicable federal rules are Fed. R. Civ. P. 12(b)(1) and (2). Although I can appreciate that they want the court first to decide whether it has diversity jurisdiction—in other words, whether Cory Sklanka is rightfully in this

2

case--I think the court's first duty is to decide whether *I* am rightfully in this case. All the wrongful acts Plaintiffs allege against Mr. Sklanka are derivative of the wrongful acts they allege against me.

WHEREFORE, cause being shown; this court being unable to proceed until my allegations that it lacks jurisdiction are decided; and the court's having issued no proper or timely notice of this August 6th status conference at which it has ordered the parties to appear in person, the status conference should be postponed until my motion to dismiss is decided, or I should be given leave to participate in it by phone, in the interest of justice.

Dated this 29 day of July, 2018.

BY DEFENDANT HALBIG PRO-SE:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL  32776
wolfgang.halbig@comcast.net

3

## CERTIFICATE OF SERVICE

I certify, by my signature below, that I have served the foregoing "Halbig's Objection to Notice; Request to Postpone Status Conference; and Objection to Plaintiffs' Motion for Extension and Entry of Scheduling Order" on the other parties who have consented to electronic service this 2⁹ day of July, 2018, addressed as follows:

William M. Bloss, Esq.
Matthew S. Blumenthal, Esq.
Koskoff Koskoff & Bieder
bbloss@koskoff.com
mblumenthal@koskoff.com

Jay Marshall Wolman, Esq.
jmw@randazza.com

Lawrence L. Connelli, Esq.
Regnier Taylor Curran & Eddy
lconnelli@rtcelaw.com

Nicole R. Cuglietto, Esq.
Stephen P. Brown, Esq.
Wilson Elser Moskowitz Edelmann & Dicker
nicole.cuglietto@wilsonelser.com
Stephen.brown@wilsonelser.com

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERICA LAFFERTY, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:18-cv-01156-JCH |
| | ) | |
| v. | ) | |
| | ) | |
| ALEX JONES, *et al.*, | ) | July 31, 2018 |
| | ) | |
| Defendants. | ) | |

### PLAINTIFFS' MOTION TO REMAND

Plaintiffs hereby move pursuant to 28 U.S.C. § 1447(c) to remand this case to the State

of Connecticut Superior Court, Judicial District of Fairfield at Bridgeport, on the ground that this

Court lacks subject matter jurisdiction over this case. A memorandum accompanies this motion.

To summarize the reason why this case must be remanded, the defendants' only asserted

basis for federal jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332. Section 1332

requires complete diversity: that is, "in a case with multiple plaintiffs and multiple defendants,

the presence in the action of a single plaintiff from the same State as a single defendant deprives

the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v.*

*Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) (citing *Strawbridge v. Curtiss,* 3 Cranch 267

(1806)). Nearly all the plaintiffs in this case are citizens of Connecticut. Defendant Corey

Sklanka is also a citizen of Connecticut. As a result, 28 U.S.C. § 1332 is unsatisfied, and this

Court does not have subject-matter jurisdiction over this case. Defendants attempt to address

this by claiming that Sklanka was fraudulently joined, but they cannot meet their burden of

showing "by clear and convincing evidence . . . that there is *no possibility*, based on the

1

pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998) (emphasis added).

<div style="margin-left: 50%;">

THE PLAINTIFFS,


**Respectfully submitted,**

By       **/s/ William Bloss, ct01008**
          **WILLIAM BLOSS, ct01008**
          **MATTHEW S. BLUMENTHAL, ct30448**
          KOSKOFF KOSKOFF & BIEDER
          350 FAIRFIELD AVENUE
          BRIDGEPORT, CT  06604
          bbloss@koskoff.com
          mblumenthal@koskoff.com
          Telephone:    (203) 336-4421
          Fax:           (203) 368-3244

          **ATTORNEYS FOR PLAINTIFFS**

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2018, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing under the court's CM/ECF System.

                              /s/ William M. Bloss, ct01008
                              **WILLIAM M. BLOSS, ct01008**
                              **MATTHEW S. BLUMENTHAL, ct30448**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:18-cv-01156-JCH |
| | ) | |
| v. | ) | |
| | ) | |
| ALEX JONES, *et al.*, | ) | July 31, 2018 |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE PLAINTIFFS' MOTION TO REMAND**

The defendants have noticed removal. Knowing that the case lacks the complete diversity

required for federal subject-matter jurisdiction under 28 U.S.C. § 1332(a), see *Strawbridge v.*

*Curtiss*, 7 U.S. 267 (1806), the defendants claim that defendant Cory Sklanka is fraudulently

joined. He is not. To demonstrate fraudulent joinder, the *defendants* must show that "by clear and

convincing evidence . . . that there is *no possibility*, based on the pleadings, that a plaintiff can

state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR*

*Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1991) (emphasis added). The defendants do not come

close to meeting this high bar. As a result, this Court must remand this case to the Connecticut

Superior Court. Because the defendants did not have an objectively reasonable basis for removal,

this Court should award the plaintiffs removal fees.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

This action stems from of the shooting at Sandy Hook Elementary School in Newtown on

December 14, 2012 that killed twenty first-grade children and six educators and wounded two

others. Plaintiffs' Complaint ¶ 1, May 23, 2018. Overwhelming and indisputable evidence shows

exactly what happened at Sandy Hook Elementary School on December 14, 2012. *Id.* ¶ 6.

1

Nonetheless, certain individuals have persistently perpetuated a monstrous, unspeakable lie: that the Sandy Hook shooting was staged, and that the families who lost loved ones that day are actors who faked their relatives' deaths. *Id.* ¶ 6. The defendants all have participated in the generation, publication, and propagation of this lie, in the resulting harassment against the plaintiffs, and participated in a civil conspiracy to do both. See *id.* ¶¶ 30–39. They did so with knowledge that the statements were false or with reckless disregard as to whether or not they were true. See, *id.* ¶¶ 339, 343, 356, 359, 381, 391.

The Complaint detailed a campaign of abuse, harassment, and outrageous falsehoods by the defendants, and detailed how they combined to effect the various tortious actions that formed the backbone of that campaign. Wolfgang Halbig and Cory Sklanka teamed up for some number of Halbig's more-than-twenty-two visits to Connecticut, during which they harassed the plaintiffs and generated "investigative" content for Halbig's websites and media appearances. *Id.* ¶¶ 37, 59–72, 80, 85.  Sklanka acted as Halbig's driver and camera operator in this venture. *Id.* ¶¶ 37, 60. Sklanka also purposefully facilitated Halbig's statements on his websites and in media appearances where Halbig repeatedly claimed that the Sandy Hook shooting was a hoax, that no one died there, and that the family members of those lost there are actors who fabricated their loved ones' deaths. *Id.* ¶¶ 37, 60, 59–72, 145–170, 189–219.

Sklanka combined with Halbig to publish these falsehoods by helping Halbig operate his websites, including SandyHookJustice.com and MonteFrank.com, and by himself co-hosting broadcasts asserting that the Sandy Hook shooting was a hoax. *Id.* Sklanka and Halbig also promoted and propagated claims that William Aldenberg (an FBI agent and first-responder to the Sandy Hook shooting) was actually the same person as David Wheeler (who lost his son Ben in the shooting), and that he is actually a so-called "crisis actor." *Id.* ¶ 71–72. And Halbig's

2

campaign of falsehoods and abuse was not just a hobby: he and Sklanka used it to raise more than $100,000 from people he had convinced to believe his falsehoods. *Id.* ¶ 63.

Meanwhile, Alex Jones and the rest of the Jones defendants built a highly profitable media empire based on conspiracy-minded falsehoods like those Halbig was advancing about the Sandy Hook shooting. *Id.* ¶¶ 90–100. Almost immediately after the shooting, Jones and his entities (which are under his control) also began claiming that the shooting was fake and that the families who had lost loved ones were actors. *Id.* ¶¶ 101–119. Jones and his entities combined with Halbig to promote Halbig's falsehoods and abuse by repeatedly having him on Jones's and his entities shows for the express purpose of eliciting Halbig's false and outrageous claims and broadcasting them to his millions of followers. *Id.* ¶¶ 73–88, 145–170, 189–219. On numerous occasions, Jones would agree with Halbig, or make on his own statements asserting that the Sandy Hook shooting was a hoax, that no one died there, and that the families who lost loved ones there were actors fabricating their loved ones' deaths. See generally *id.* ¶¶ 145–170, 189–219. He and his entities also promoted Halbig's abusive and tortious activities by encouraging Halbig to continue them, helping Halbig solicit funds from Jones's followers, and sending Infowars personnel to document and promote Halbig's activities. See, *e.g.*, *id.* ¶¶ 70, 75–83, 207.

Jones also independently made and broadcast statements asserting that the Sandy Hook shooting was a hoax, that no one died there, and that the families who lost loved ones there were actors fabricating their loved ones' deaths. See generally *id.* ¶¶ 145–335. He and his entities also recruited other guests and solicited and answered callers with the express purpose of eliciting, discussing, and promoting similar claims by them. See, *e.g.*, *id.* ¶¶ 123–128, 257–262, 292–298.

Jones and his entities did this because it was a part of their business model: they cultivate an audience through the propagation of narratives revolving around paranoia, social anxiety, and

3

political discord, a known motivator for some people. *Id.* ¶¶ 90–91. They acquire those people's

attention and trust, and then hawk products in line with that worldview. *Id.* ¶¶ 93–94. This

business model has proved extremely lucrative. *Id.* ¶¶ 94–96, 99. False claims that the Sandy

Hook shooting was a hoax represented a perfect vehicle to promote it and grow their audience.

*Id.* ¶ 95. Jones and his entities took the actions and published the statements detailed in this

Complaint not because they believed they were true, but to make money. *Id.* ¶¶ 97–100.

Defendant Genesis Communications distributed all the publications by the Jones

defendants detailed in this Complaint to broadcasting affiliates all over the United States, vastly

increasing their audience. *Id.* ¶¶ 38–39. Midas Resources combined with Genesis and the Jones

defendants to help monetize his business model. *Id.* Ted Anderson, who owns both Genesis and

Midas, was a follower of and frequent guest on the Jones defendants' shows. *Id.* He knew that

they regularly published statements about the plaintiffs like those detailed in this Complaint.[1]

Nonetheless, he continued to distribute the Jones defendants' programs. *Id.* In fact, the Jones

defendants' programs formed the lion's share (and the most profitable) of the programs

distributed by Genesis and Midas. *Id.* at 4 nn.3, 4.

Based on these allegations, the plaintiffs brought claims for invasion of privacy by false

light, defamation, intentional infliction of emotional distress, negligent infliction of emotional

distress, civil conspiracy to commit the foregoing torts, and violations of the Connecticut Unfair

Practices Act (CUTPA), Conn. Gen. Stat. §§ 42-110a *et seq.*, against each of the defendants.

Nearly all the plaintiffs are citizens of Connecticut. *Id*. ¶¶ 22–28. Defendant Cory Sklanka is a

---

[1] While this allegation is not expressly pleaded in the Complaint, it is reasonably inferred
from the allegations and could be proved under the complaint. See *Forbes v. Ballaro*, 31 Conn.
App. 235, 239 (1993) (facts considered for motion to strike "include[] the facts necessarily implied
and fairly provable under the allegations"). In any event, the plaintiffs could and would expressly
allege this fact when amending as of right on remand. See Part II.A.2.d of this Memorandum.

4

citizen of Connecticut. *Id.* ¶ 37.

On July 13, 2018, the Jones defendants filed a notice of removal in Connecticut Superior Court and U.S. District Court for the District of Connecticut. Notice of Removal, D. Ct. Doc. 1, July 13, 2018.

## II. ARGUMENT

In accordance with the axiom that they "are courts of limited jurisdiction," federal courts "construe the removal statute narrowly, resolving any doubts against removability." See *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013). This case must be remanded—and it is not a close call.

This case lacks any basis for federal jurisdiction. The defendants maintain that defendant Sklanka was fraudulently joined, and as a result, diversity jurisdiction exists under 28 U.S.C. § 1332. This is manifestly not the case. To succeed, the defendants must establish by clear and convincing evidence that the plaintiffs have no possibility of stating any claim against Sklanka; in fact, the plaintiffs state ones. The defendants do not come close to meeting the high bar for proving fraudulent joinder. Moreover, the defendants had no objectively reasonable basis for removal. This Court should award removal fees to the plaintiffs as a result.

### A. The Case Must be Remanded Because the Court Is Without Jurisdiction

This case lacks the complete diversity required for federal jurisdiction under 28 U.S.C. § 1332. The defendants cannot come close to meeting the heavy burden to prove fraudulent joinder. The case must therefore be remanded to Connecticut Superior Court.

#### 1. The Case Lacks Complete Diversity of Citizenship as Required by 28 U.S.C. § 1332(a)

Federal jurisdiction under 28 U.S.C. § 1332 requires complete diversity: that is, "in a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff

5

from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) (citing *Strawbridge v. Curtiss,* 3 Cranch 267 (1806)). Nearly all the plaintiffs in this case are citizens of Connecticut. Defendant Cory Sklanka is also a citizen of Connecticut. As a result, 28 U.S.C. § 1332 is unsatisfied, and this Court does not have subject-matter jurisdiction over this case.

##### 2. The Plaintiffs Plead Well-Established State-Law Claims Against Defendant Sklanka

A defendant seeking to establish fraudulent joinder "bears [a] heavy burden." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011). Fraudulent joinder, is in some ways, a misnomer for the doctrine: "the motive for joinder is immaterial . . . even if it is to prevent the removal and oust the federal court from jurisdiction." *Norwalk v. Air-Way Elec. Appliance Corp.*, 87 F.2d 317, 320 (2d Cir. 1937). Rather, to establish fraudulent joinder, "a defendant must demonstrate, by clear and convincing evidence, either [1] that there has been outright fraud committed in the plaintiff's pleadings, or [2] that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 460–61. "This standard has been strictly applied in [the Second] Circuit." *Dieterle v. Rite Aid Pharmacy*, 2015 WL 1505666, at *3 (D. Conn. Mar. 31, 2015).

The defendants have not alleged "outright fraud" in the plaintiffs' pleadings—nor could they. In the absence of outright fraud, joinder is only "considered fraudulent when it is established that there can be no recovery against the defendant under the law of the state on the cause alleged." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001). In making this determination, "all factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia*, 138 F.3d at 461. Importantly, defendants must establish that *all* the plaintiffs'

6

claims have no possibility of success—if a single claim has a possibility of recovery, the entire case must be remanded. See *Pampillonia*, 138 F.3d at 461 n.3 (noting as equivalent rephrasing of fraudulent joinder question "whether mere possibility exists that plaintiff can establish *any cause of action* against a defendant" (citation omitted) (emphasis added)); *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 411–12 (5th Cir. 2004) (noting that "the existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court"); *Labrecque v. Johnson & Johnson*, 2015 WL 5824724, at *3 n.1 (D. Conn. Oct. 2, 2015) (expressly not evaluating other claims and remanding because one claim survived fraudulent joinder analysis).

The Court must view the issues as a Connecticut court would, recognizing that federal precedent represents at most persuasive authority. See *CUSA LLC v. Travelers Co., Inc.*, 2007 WL 3046270, at *3 (D. Conn. Oct. 15, 2007) (Hall, J.) (observing that Second Circuit decision binding district court did not bind Connecticut court, and that *Pampillonia* standard required that "the plaintiff's claims must be judged by how they would fare in state court, not by how they would fare in *federal* court" (emphasis in original)). The court looks primarily to the pleadings at the time of the removal, *Wise v. Lincoln Logs, Ltd.*, 889 F. Supp. 549, 552 (D. Conn. 1995), although it may look beyond the pleadings, *Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 150 (2d Cir. 2006) (court "has discretion to [look beyond pleadings] when determining whether it has subject matter jurisdiction"). The Court must read the pleadings even more generously than Connecticut's motion-to-strike standard, under which "the pleadings must be construed broadly and realistically, rather than narrowly and technically." *Connecticut Coal. for Justice in Educ. Funding, Inc. v. Rell*, 295 Conn. 240, 253 (2010). In fact, "[e]ven allegations that are 'general and at times in barebones

7

language' may be sufficient to defeat a claim of fraudulent joinder." *Zhaoyin Wang v. Beta Pharma, Inc.*, 2015 WL 5010713, at *5 (D. Conn. Aug. 24, 2015) (quoting *Ulysse v. AAR Aircraft Component Servs.,* 841 F.Supp.2d 659, 684 (E.D.N.Y. 2012) (finding no fraudulent joinder and remanding case)).

Moreover, if pertinent questions of law are unsettled or even ambiguous, remand is compulsory. See, *e.g.*, *Ret. Program for Employees of the Town of Fairfield*, 642 F. Supp. 2d at 97–98 ("That there is at minimum a recognized dispute on this issue in the case law is a sufficient basis on which to conclude that Plaintiffs' claim against [the non-diverse defendant] survives this [fraudulent joinder] assessment."); *Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*, 512 F. App'x 485, 490 (6th Cir. 2013) (affirming award of removal fees to plaintiff because, "[g]iven the unsettled nature of Ohio law on this issue and the [fraudulent joinder] standard, remand was a foregone conclusion" (citation omitted)); *Moorhouse v. Bayer Healthcare Pharm., Inc.*, 2008 WL 2477389, at *3 (N.D. Cal. June 18, 2008) (absence of any case allowing liability insufficient to preclude remand). Even if a state court has *already dismissed* the plaintiff's claims, they may still survive fraudulent joinder analysis. See *Deming v. Nationwide Mut. Ins. Co.*, 2004 WL 332741, at *4 (D. Conn. Feb. 14, 2004) (Droney, J.) ("[The defendant] cannot satisfy the heavy burden of demonstrating fraudulent joinder merely by a showing that the Connecticut Superior Court has already ruled against [the plaintiff] on the merits of her claims against the non-diverse defendants.").

Into these stiff legal headwinds, the defendants toss a handful of conclusory arguments. In many of the cases cited above, state-law precedent directly on point strongly favored the removing defendant. Nonetheless, these courts remanded when state law (or facts) were even arguably contested. Here, the defendants do not cite a single case showing that the plaintiffs

cannot succeed; their failure to satisfy *Pampillonia* is plain. The reason for their failure is also

plain: the plaintiffs assert ordinary, unremarkable, and well-established Connecticut common-law

and statutory claims against Sklanka, amply supported by factual allegations concerning his

conduct; it is enough that any one of them has a *possibility* of success. The Court must heed

*Pampillonia*'s directive and remand.

### a. The Defendants Cannot Establish by Clear and Convincing Evidence that there Is No Possibility the Plaintiffs' Claims Against Sklanka Are Within the Relevant Statutes of Limitations

Contrary to the defendants' assertion, the statute of limitations is not two years for all

claims. In fact, the statute of limitations for intentional infliction of emotional distress, false

light, and CUTPA is three years from the date of the act. See *Geiger v. Carey*, 170 Conn. App.

459, 490 (2017) (citing Conn. Gen. Stat. § 52–577); *Jonap v. Silver*, 1 Conn. App. 550, 554

(1984) (§ 52–577 provides false light statute of limitations); Conn. Gen. Stat. § 42-110g(f)

(CUTPA statute of limitations).

The statute of limitations for negligent infliction of emotional distress is two years from

the date when the injury is first sustained or discovered or in the exercise of reasonable care

should have been discovered, and no longer than three years from the allegedly tortious act. See

*Geiger*, 170 Conn. App. at 490 (negligent infliction of emotional distress). The plaintiffs did not

know of Sklanka's involvement in Halbig's campaign until recently.[2] Since Sklanka's actions

with Halbig were behind the scenes, there was no reason they should have discovered his role

earlier. As a result, the plaintiffs may avail themselves of the longer three-year limitations period

---

[2] The statute of limitations is a special defense in state practice and cannot ordinarily be decided on a motion to strike or to dismiss. *Greco v. United Techs. Corp.*, 277 Conn. 337, 346 n.6 (2006); Conn. Practice Book § 10-50. While this fact is not expressly pleaded in the plaintiffs' complaint, it is one that they could and would plead in a response to a special defense of the statute of limitations, as is proper under state practice. See Conn. Practice Book §§ 10-56, 10-57.

for all claims except defamation. Sklanka's conduct fits within that statute of limitations.

Moreover, the defendants cannot establish that the continuing course of conduct doctrine does

not toll the statute of limitations for any of these claims.[3] See *Blinkoff v. O & G Indus., Inc.*, 113

Conn. App. 1, 14 (2009) ("When the wrong sued upon consists of a continuing course of

conduct, the statute does not begin to run until that course of conduct is completed. . . . The

continuing course of conduct doctrine is conspicuously fact-bound." (citation omitted)).

Even if this were not the case, however, the Complaint alleges acts in furtherance by

Sklanka within the two-year period; it asserts that Sklanka took actions to assist Halbig in his

campaign of harassment and tortious statements through August 2016. For instance, Halbig's

website, SandyHookJustice.com, published numerous false, outrageous, and defamatory

statements as late as August 2016. See Compl. ¶ 71–72; Conn. Gen. Stat. § 52-597 (statute of

limitations for defamation two years from the date of act). Sklanka helped operate that website

and thereby combined with Halbig to publish those statements. See, *e.g.*, *id.* ¶¶ 37, 60, 71, 85,

88; *Miles v. Perry*, 11 Conn. App. 584, 607 (1987) (discussing civil conspiracy liability for

defamation). Additionally, Sklanka facilitated and combined in Halbig's harassing activities in

Newtown and targeted at the plaintiffs, actionable as intentional infliction of emotional distress

or a CUTPA violation, at least as late as June 2, 2015. See, *e.g.*, *id.* ¶ 60; *Massey v. Town of

Branford*, 2008 WL 3307084, at *9 (Conn. Super. Ct. July 15, 2008) (noting that intentional

infliction of emotional distress may "constitute the underlying substantive tort of the

alleged conspiracy").

---

[3] Under state practice, the plaintiffs would also invoke the continuing course of conduct doctrine in a reply to a statute of limitations special defense. See *supra* at n.2.

10

The defendants need to show there is "*no possibility* . . . that [the plaintiffs] can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 460–61. Even without "all factual and legal issues [being] resolved in favor of the plaintiff," as is required, the defendants do not come close to meeting this burden. *Id.* at 461. The plaintiffs' claims against Sklanka are not clearly outside the relevant statutes of limitations; on the contrary, the allegations of the Complaint show them to be timely. Any statute of limitations defense is no object to defendant Sklanka's being properly joined to this action.

### b. The Defendants Cannot Establish by Clear and Convincing Evidence that there is No Possibility the Plaintiffs Can Allege a Proper Civil Conspiracy and Underlying Tort Claim Against Defendant Sklanka

Next, the defendants claim that Sklanka cannot be held liable for civil conspiracy. Ironically, we need venture no further than the Connecticut Supreme Court case cited by the defendants themselves to see that just the opposite is true. See *Harp v. King*, 266 Conn. 747, 779–80 (2003) (finding conspiracy pleaded where, "even though the complaint does not contain an express allegation that the defendants engaged in a conspiracy to harm the plaintiff professionally [through defamation], the plaintiff's claims all are founded on a conspiracy theory"). The plaintiffs' allegations readily meet the elements of civil conspiracy.

To show liability for civil conspiracy, the plaintiff must demonstrate "(1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." *Id.* "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or

11

encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." *Pediatric Occupational Therapy Servs., Inc. v. Town of Wilton*, 2004 WL 886394, at *13 (Conn. Super. Ct. Apr. 7, 2004) (quoting *Restatement (Second) of Torts* § 876(a) (1979)).

The Complaint in this case alleges that defendant Sklanka "worked closely with Halbig in Halbig's Sandy Hook 'investigative' work, including acting as driver and camera operator when Halbig has visited Connecticut to conduct those activities." Complaint ¶ 37. It further alleges that Sklanka "participat[ed] in the operation of SandyHookJustice.com and co-host[ed] Sandy Hook Justice broadcasts." *Id.* SandyHookJustice.com, of course, published numerous false, outrageous, malicious, and defamatory statements that formed part of the basis for the plaintiffs' injuries, and were published as late as August 2016. See Complaint ¶¶ 71–72. In other words, Sklanka closely assisted Halbig in making these publications through SandyHookJustice.com and its broadcasts.

Halbig's "investigatory activities" in Connecticut were an essential part of his hoaxing enterprise. Halbig "made more than 22 trips to Connecticut relating to the allegations of this Complaint," and his activities resulted in him being "warned by police that he would be charged with harassment unless he ceased contacting Newtown residents." *Id.* ¶ 59. Sklanka "facilitated Halbig's harassing and defamatory activities in Connecticut." *Id.* ¶ 60. In addition to acting as driver and camera operator, Sklanka "helped Halbig operate his website, and co-hosted broadcasts asserting that the Sandy Hook shooting was a hoax." *Id.* Moreover, "Sklanka assisted and was present with Halbig when he filmed and harassed [] families at the St. Rose of Lima church in Newtown, Connecticut on June 2, 2015." *Id.* Sklanka also "actively facilitated [Halbig's] appearance on Infowars," *id.* ¶ 80, where Halbig repeatedly made false, malicious,

12

and outrageous statements about the plaintiffs. See generally *id.* ¶¶ 129–170, 189–219. Finally, "Sklanka and Halbig acted together, and they both acted together with the Jones defendants, to develop, disseminate, and propagate many of the false statements described in this Complaint." *Id.* ¶ 85.

In working together as alleged, Halbig and Sklanka combined to perform all these tasks. Certainly, these allegations amount to "a combination between two or more persons." *Harp*, 266 Conn. 779. Moreover, this combination was effected to perform "an unlawful act or a lawful act by . . . unlawful means," *id.*—that is, Halbig's and Jones's tortious publications and harassment of the plaintiffs. See, *e.g.*, Compl. ¶ 80; *Miles*, 11 Conn. App. at 607 (discussing civil conspiracy liability for defamation); *Massey*, 2008 WL 3307084, at *9 (intentional infliction of emotional distress "could constitute the underlying substantive tort of the alleged conspiracy"); *Presto v. Goodchild*, 2010 WL 5646058, at *3 (Conn. Super. Dec. 30, 2010) (denying motion to strike on claims for civil conspiracy where underlying torts were defamation, false light, intentional infliction of emotional distress, and negligent infliction of emotional distress).

The Complaint alleges *many* "act[s] done by one or more of the conspirators pursuant to the scheme and in furtherance of the object." These include not only Halbig's tortious statements and harassment, but also the various ways the Complaint alleges that Sklanka knowingly logistically facilitated Halbig's activities, giving him substantial assistance—driving him, acting as camera operator, operating his websites, co-hosting his broadcasts—with the intent of helping him spread his tortious statements and realize his campaign of harassment against the plaintiffs. Finally, there can be no doubt that the acts—Halbig's publications and harassment, as well as Sklanka's facilitation of them—were alleged to have "result[ed] in damage to the plaintiff[s]." *Id.*; Compl. ¶¶ 325–94. These sorts of acts constitute time-honored bases for civil conspiracy

liability. See, *e.g.*, *Rea v. Rubino*, 2010 WL 5646065, at *2 (Conn. Super. Ct. Dec. 30, 2010)

(allegation that "the modification and alteration of the operation report 'could not have been

performed absent the assistance and cooperation by the hospital staff,'" sufficient for civil

conspiracy claim); *Streeter v. Exec. Jet Mgmt., Inc.*, 2004 WL 2039797, at *2 (Conn. Super. Ct.

June 29, 2004) (conspiracy claim stated against charter airline that transported plaintiff mother's

children although it "knew, remained willfully blind and/or egregiously refused to see" father's

tortious actions). [4]

Finally, the plaintiffs properly alleged the underlying torts. The defendants do not contest

this in their notice of removal, and with good reason: as alleged, their actions clearly meet the

elements of defamation, invasion of privacy by false light, intentional infliction of emotional

distress (IIED), and negligent infliction of emotional distress (NIED). The essence of the

plaintiffs' allegations is that the defendants perpetuated a more-than-four-year campaign of

reckless or knowing falsehoods about the plaintiffs, most notably that they were actors who

faked their loved ones' deaths. They spread these falsehoods to millions of people. Many of those

people believed the defendants and then harassed the plaintiffs, who still grieve the loss of their

loved ones.

Clearly, these allegations meet the remaining elements of defamation and false light. See

*Gleason v. Smolinski*, 319 Conn. 394, 430 (2015) ("A defamatory statement is . . . a

communication that tends to harm the reputation of another as to lower him in the estimation of

---

[4] While some of these cases also address "aiding and abetting" liability, aiding and abetting and conspiracy claims substantially overlap, are not easily distinguishable under Connecticut law, and have, in fact, often been treated interchangeably. See, *e.g.*, *Streeter*, 2004 WL 2039797, at *2; *Rea*, 2010 WL 5646065, at *1; see also *Talit v. Peterson*, 44 Conn. Supp. 490, 495 (Super. Ct. 1995) (discussion of long history of civil conspiracy liability in Connecticut). In any event, the plaintiffs would be entitled to allege aiding and abetting liability against defendant Sklanka when amending as of right on remand. See *infra* at Part II.A.2.d.

the community or to deter third persons from associating or dealing with him[.]"); *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 131 (1982) ("The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; and (2) is such a 'major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position.'" (citations omitted)). Such conduct could reasonably be found to have caused reputational damage, see *Gleason v. Smolinski*, 319 Conn. 394, 430 (2015) (defamation), and severe emotional distress, see *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 442–44 (2003) (IIED and NIED), as the plaintiffs alleged it did. See, *e.g.*, Compl. ¶¶ 13–14, 28, 353–54, 362–64, 375–77.

The defendants' actions also rise far above those traditionally considered sufficiently outrageous and extreme to state a claim for intentional infliction of emotional distress. See, *e.g.*, *Gleason*, 319 Conn. at 426 (noting that "calling the plaintiff offensive names, following her, and videotaping her activities" could form independent basis for IIED); *Brown v. Ellis*, 40 Conn. Supp. 165, 168 (Super. Ct. 1984) (plaintiff stated claim for IIED where defendant, knowing plaintiff's fear of heights, ordered work involving photography at heights); *Mellaly v. Eastman Kodak Co.*, 42 Conn. Supp. 17, 21 (Super. Ct. 1991) (plaintiff stated claim for IIED where supervisor taunted and harassed plaintiff regarding his alcoholism).

Even if the defendants' actions were not sufficiently outrageous and extreme on their own, it is well-accepted that "[t]he extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." *Delise v. Metro-N. R. Co.*, 646 F. Supp. 2d 288, 292 (D. Conn. 2009) (quoting *Restatement (Second) of Torts* § 46 comm. f). In order to participate in their scheme, the defendants had to know that the plaintiffs were grieving

15

the loss of loved ones murdered in a terrible, well-known tragedy. As a result, the defendants were unmistakably aware that the plaintiffs would be "peculiarly susceptible to emotional distress" as a result of their conduct. *Id.* The plaintiffs also highly plausibly alleged the defendants' actions caused them severe emotional distress, and that those actions created a foreseeable and unreasonable risk of emotional distress. See *Carrol*, 262 Conn. at 444 (NIED).

The defendants simply cannot establish that Sklanka could not be held liable for civil conspiracy to engage in a number of tortious actions alleged in the Complaint. Again, even before we apply *Pampillonia*'s requirement that all questions of fact and law be resolved in favor of the plaintiffs, it is plain that the defendants cannot come close to meeting their burden of showing "*no possibility* . . . that [the plaintiffs] can state a cause of action" against Sklanka. *Pampillonia*, 138 F.3d at 460–61 (emphasis added).

<div style="text-align:center">

c.  **The Defendants Cannot Establish by Clear and Convincing Evidence that there Is No Possibility the Plaintiffs Can Allege Proper CUTPA Claims Against Defendant Sklanka**

</div>

"[T]he purpose of CUTPA is to protect the public from unfair practices in the conduct of any trade or commerce." *Willow Springs Condominium Ass'n, Inc. v. Seventh BRT Development Corp.*, 245 Conn. 1, 42 (1998). "[W]hether a practice is unfair depends upon the finding of a violation of an identifiable public policy." *Id.* "The entire act is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit." *Id.* (internal quotation marks and citations omitted). It "applies to a broad spectrum of commercial activity." *Id.*

Under CUTPA, "[t]rade or commerce . . . is broadly defined as the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or

<div style="text-align:center">16</div>

thing of value in this state." *Id.* Importantly, "it is not the type of relationship between the two parties but rather the defendant's actual conduct that is dispositive of whether the actions took place in the course of a trade or business" under CUTPA. *Nastro v. D'Onofrio*, 263 F. Supp. 2d 446, 457 (D. Conn. 2003).

As alleged in the Complaint, Sklanka combined with Halbig to promote legally actionable and outrageous falsehoods about the plaintiffs, and to harass them. See Compl. ¶¶ 37, 60, 80, 85, 71–72. Halbig used this enterprise to raise over $100,000 from people supporting their activities. *Id.* ¶ 63. Additionally, "Sklanka and Halbig acted together . . . with the Jones defendants, to develop, disseminate, and propagate" many of the legally actionable statements and harassment recounted in the Complaint. *Id.* ¶ 85. As discussed in detail in paragraphs 90 through 100 of the Complaint, Jones used these legally actionable statements and harassment to build an audience he "exploit[ed] . . . by selling them products in line with the paranoid worldview he promotes." *Id.* ¶ 94. The Complaint alleges that Jones has made vast sums of money through this business model. *Id.* ¶¶ 95–97.

Sklanka's actions formed a significant part of both Halbig's and Jones's business activities. Indeed, actions far more removed from business than Sklanka's have been found to meet CUTPA's "trade or commerce" requirement. See, *e.g.*, *Nastro*, 263 F. Supp. 2d at 457 (finding that defendant's transfers of personal property were performed in trade or commerce under CUTPA because he was hiding them from a judgment that arose in dispute related to his business). By allegedly assisting Halbig and Jones in their enterprises, Sklanka was engaged in "trade or commerce" under CUTPA.

The criteria for establishing a violation of CUTPA are flexible. It is "well settled" that the criteria for a CUTPA violation are determined by "the criteria set out in the cigarette rule by the

17

federal trade commission." *Am. Car Rental, Inc. v. Comm'r of Consumer Prot.*, 273 Conn. 296, 305 (2005). The cigarette rule considers "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]." *Id.* (citations and internal quotation marks omitted).

Contrary to the defendants' contention, see Notice of Removal ¶ 24, conduct need not cause injury to "consumers, competitors, or other businessmen" to constitute a CUTPA violation. *Id.* After all, whether a practice causes substantial injury to consumers, [competitors or other businesspersons]" is only one of the three cigarette-rule criteria, and "[a]ll three criteria do not need to be satisfied to support a finding of unfairness." *Id.* Indeed, any single criterion—or mix of them—will do: "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three[.]" *Id.* CUTPA is broadly construed because it "reflects a public policy that favors remedying wrongs that may not be actionable under other bodies of law." *Willow Springs Condo. Ass'n*, 245 Conn. at 42.

The Complaint alleges that the defendants profited from propagating outrageous, hurtful false statements about the plaintiffs, who were victims of a horrific tragedy, harassing them, and promoting their harassment. These actions were not only "unlawful," but egregiously "offend[] public policy as it has been established by statutes, the common law, or . . . [an] established concept of unfairness." *Am. Car Rental*, 273 Conn. at 305. They were also highly "immoral, unethical, oppressive, [and] unscrupulous." *Id.* They therefore squarely meet the first two criteria of the cigarette test. *Id.* Sklanka participated in this scheme. Clearly, he may be found liable

18

under CUTPA—and the defendants have offered no case stating otherwise. They cannot show that Sklanka is not properly joined as a defendant under CUTPA.

### d. The Case Must Be Remanded Even if there Are Pleading Deficiencies in the Plaintiffs' Claims Against Defendant Sklanka

Under the doctrine of fraudulent joinder, defects in the pleadings are no obstacle to remand: what matters is whether, based on the facts alleged, "it is possible that [the plaintiff] *could* state a claim." *Deming*, 2004 WL 332741 at *4 (finding no fraudulent joinder because, "despite apparent defects in the pleadings, it is possible that [the plaintiff] could state a claim," and therefore ordering remand (citing *Harp*, 266 Conn. at 783)) (emphasis added). Indeed, the mere capability of correcting anything missing is sufficient reason in itself to reject a fraudulent joinder claim. See *Kenneson v. Johnson & Johnson, Inc.*, 2015 WL 1867768, at *4 (D. Conn. Apr. 23, 2015) (rejecting fraudulent joinder and remanding because "[t]he defendants have not shown that [the plaintiff] is incapable of amending his pleadings to comply" with the relevant statute) (Shea, J.); *id.* (citing *California Dump Truck Owners Ass'n v. Cummins Engine Co.*, 24 F. App'x 727, 729–30 (9th Cir. 2001) (rejecting fraudulent joinder claim because "it is very possible that the state court would have granted plaintiffs leave to amend their complaint, allowing them to address the [asserted] deficiencies")).

Here, that is not just a possibility that the plaintiffs could take advantage of such an opportunity, but a certainty. Because fewer than 30 days have passed since the return date, the plaintiffs may still amend their complaint as of right. See *Sheehan v. Zoning Comm'n of Town of Old Saybrook*, 173 Conn. 408, 413 (1977) (plaintiff may amend complaint as of right within 30 days of return date (citing Conn. Gen. Stat. § 52-128 and Conn. Practice Book § 10-59)); *Silano v. Hammell*, 2017 WL 3176032, at *3 (Conn. Super. Ct. June 26, 2017) (collecting and agreeing with cases holding that removal tolls Conn. Practice Book pleading deadlines). Given the

19

opportunity, the plaintiffs could—and would—submit an amended complaint containing additional allegations, or would plead them in a reply to a statute of limitations defense, as would be their absolute right. See *Greco*, 277 Conn. at 346 n.6. These would include, among others:

1. On information and belief, Cory Slanka actively assisted in operating the websites MonteFrank.com and SandyHookJustice.com through at least September 2016.

2. Cory Sklanka knew that Wolfgang Halbig's objective in his activities in Connecticut, on his websites, and in his broadcasts, was to publish Halbig's outrageous, hurtful, and defamatory statements about the plaintiffs, and to harass the plaintiffs, as alleged in this Complaint. In fact, he facilitated Halbig's activities, and agreed with Halbig to facilitate Halbig's activities, with the knowing purpose of achieving this objective, as well as the objective of giving Halbig's harassment and publications maximum reach.

3. Sklanka knew that the websites' purpose was to publish defamatory and otherwise legally actionable false statements about the plaintiffs, including that: (1) the Sandy Hook shooting was a hoax; (2) children or educators did not die in the Sandy Hook shooting; (3) the families of victims in the Sandy Hook shooting are actors or otherwise lying about their loved ones' deaths; and (4) families of Sandy Hook victims are engaging in fraud to profit from their loved ones' deaths. In fact, that is why he assisted Halbig in his "investigatory," defamatory, and harassing activities.

4. On information and belief, on September 3, 2016, Sklanka posted under a pseudonym, or facilitated the posting of, an article on MonteFrank.com, asserting:

> Avielle Richman is a fabricated identity using the real life person Lenie Urbina of Sandy Hook, CT. Jeremy Richman of The Avielle Foundation continues to commit Fraud against the American public and against the world, collecting donations under false pretenses that his daughter died.[5]

5. The article also asserted:

> Now that "Avielle Richman" and Lenie Urbina have been exposed as being the same person, we know that the "Avielle Foundation" is actively engaging in fraud and theft of donor's [sic] money. The Richman and Urbina families have been caught red-handed and have a lot of explaining to do. This includes Sandy Hook Medical Examiner Dr. H. Wayne Carver who claimed to have performed an autopsy on "Avielle"/Lenie.[6]

---

[5] Barry Miller, *Update: Wolfgang Halbig Threatened & MonteFrank.com Is Not Going Down*, MonteFrank.com (Sept. 3, 2016), https://archive.is/e44tV#selection-203.0-203.284.

[6] *Id.*

20

6. Sklanka also hosted and published his own podcasts on YouTube about the Sandy Hook shooting under the username "SleightofSin." Based on witness statements, these podcasts contain numerous publications within the statute of limitations asserting that the Sandy Hook shooting was a hoax, that the families of victims fabricated their children's deaths.

7. Faced with this lawsuit, Sklanka deleted his YouTube profile and other social media accounts, thus hiding those videos from public view. However, with reasonable discovery, the plaintiffs would gain access to the videos containing Sklanka's legally actionable publications and be able to enumerate them in greater detail.

8. The plaintiffs were not aware of Sklanka's activities with Halbig until within the past year. Because Sklanka operated behind the scenes and under a pseudonym, the plaintiffs had no reason to know of his role in the activities related to this complaint.

## B. This Court Should Award the Plaintiffs Just Costs and Actual Expenses, Including Attorney's Fees, under 28 U.S.C. § 1447(c)

The defendants had no reasonable basis for noticing removal. Surely, they knew this. Any reasonable survey of the law of fraudulent joinder, combined with the plaintiffs' allegations, would alert the defendants that they could not come close to meeting the standard.

"Absent unusual circumstances, courts should award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). This is just such a case. See, *e.g.*, *Ritacco v. Whole Life, Inc.*, 2010 WL 3021529, at *4 (D. Conn. July 29, 2010) (awarding removal fees because no objectively reasonable basis for removal); *Massad v. Greaves*, 554 F. Supp. 2d 163, 167 (D. Conn. 2008) (awarding attorney's fees under § 1447(c) because "defendant's removal was untimely and without any legal basis" and therefore "the removing party lacked an objectively reasonable basis" for removal); *Kent State*, 512 F. App'x at 490 (affirming award of removal fees because "unsettled nature" of law made "remand . . . a foregone conclusion"). This Court should order that removal fees be awarded to the plaintiffs.

21

## III.    CONCLUSION

For the foregoing reasons, this Court must remand this case to the Connecticut Superior

Court and should order the award of removal fees to the plaintiffs.

**Respectfully submitted,**

By    **/s/ William Bloss, ct01008**
       **WILLIAM BLOSS, ct01008**
       **MATTHEW S. BLUMENTHAL, ct30448**
       KOSKOFF KOSKOFF & BIEDER
       350 FAIRFIELD AVENUE
       BRIDGEPORT, CT  06604
       bbloss@koskoff.com
       mblumenthal@koskoff.com
       Telephone:    (203) 336-4421
       Fax:            (203) 368-3244

       **ATTORNEYS FOR PLAINTIFFS**

22

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2018, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing under the court's CM/ECF System.

          **/s/ William M. Bloss, ct01008**
          **WILLIAM M. BLOSS, ct01008**
          **MATTHEW S. BLUMENTHAL, ct30448**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG, | : : : : : : : : : : : : | |
| Plaintiffs, | : : | Case No. 3:18-cv-01156-JCH |
| v. | : : | July 31, 2018 |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | : : : : : : : : | |
| Defendants. | : : | |
| WILLIAM SHERLACH, | : : : | |
| Plaintiff, | : : | |
| v. | : : | Case No. 3:18-cv-01269-MPS |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | : : : : : : : : : : | July 31, 2018 |
| Defendants. | : : | |

**NOTICE OF RELATED CASES**

Pursuant to Local Rule 40(b)(2), Defendant Alex Emric Jones hereby gives notice of related cases pending before this Court.

Both of the above-captioned proceedings, *Lafferty, et al., v. Jones, et al.*, Case No. 3:18-cv-01156-JCH and *Sherlach v. Jones, et al.*, relate to the same allegations brought by similarly situated plaintiffs against the same defendants.

- 1 -

The *Lafferty* matter was filed on May 23, 2018 in the Superior Court, Judicial District of Fairfield at Bridgeport, Connecticut, and removed by Defendants Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, LLC on July 13, 2018. The proceeding was assigned to District Judge Janet C. Hall.

The *Sherlach* matter was filed on July 6, 2018 in the same Superior Court against the same Defendants as the *Lafferty* matter, and was removed by Defendants Alex Emric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, LLC on July 31, 2018. The proceeding was assigned to District Judge Michael P. Shea.

The underlying complaints in both matters make factually identical allegations and bring the same claims against the same defendants. Defendants noted the related nature of the cases on the civil cover sheet filed with the Notice of Removal in the *Sherlach* matter.

Accordingly, Defendant files this Notice of Related Cases.

|  |  |
|---|---|
| Dated: July 31, 2018. | Respectfully submitted, |
|  | /s/ Jay M. Wolman |
|  | Jay M. Wolman, ct29129 |
|  | RANDAZZA LEGAL GROUP, PLLC |
|  | 100 Pearl Street, 14th Floor |
|  | Hartford, Connecticut 06103 |
|  | Tel: 702-420-2001 |
|  | ecf@randazza.com |

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
ecf@randazza.com

*Attorneys for Infowars Defendants*

- 2 -

Case Nos. 3:18-cv-01156-JCH & 3:18-cv-01269-MPS

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 31st day of July 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

William M. Bloss
Matthew S. Blumenthal
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgebort, CT 06604
<bbloss@koskoff.com>
<mblumenthal@koskoff.com>

*Attorneys for Plaintiff*

Stephen P. Brown
Nicole R Cuglietto
WILSON ELSER MOSKOWITZ
   EDELMAN & DICKER
1010 Washington Blvd., 8th Floor
Stamford, CT 06901
<stephen.brown@wilsonelser.com>
<nicole.cuglietto@wilsonelser.com>

*Attorney for Defendant*
*Midas Resources, Inc.*

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Lawrence L. Connelli
REGNIER TAYLOR CURRAN & EDDY
100 Pearl Street, 4th Floor
Hartford, Connecticut 06103
<LConnelli@rtcelaw.com>

*Attorney for Defendant*
*Cory T. Sklanka*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*

/s/ Jay M. Wolman
Jay M. Wolman

- 3 -

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY, ET AL., | : | |
| Plaintiffs. | : | CIVIL ACTION NO. |
| | : | 3:18-CV-01156 (JCH) |
| v. | : | |
| | : | |
| | : | |
| ALEX EMRIC JONES, ET AL., | : | AUGUST 2, 2018 |
| Defendants. | : | |

**ORDER TO SHOW CAUSE**

Defendants are hereby ordered to show cause why the plaintiffs' Motion to

Remand (Doc. No. 37) should not be granted. The defendants must file their response

on or before August 29, 2018. The plaintiffs must file their reply on or before September

12, 2018.

**SO ORDERED.**

Dated at New Haven, Connecticut this 2nd day of August, 2018.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ERICA LAFFERTY,et al                          :          CIVIL ACTION NO:
        PLAINTIFFS,                                      3:18-cv-01156-JCH

v.

ALEX EMRIC JONES, et al
        DEFENDANTS                            :          AUGUST 6, 2018


### DEFENDANT CORY T. SKLANKA'S MOTION TO DISMISS

Pursuant to D. Conn. L. Civ. R. 7(a) and Fed R. Civ. P. 12(b)(6), Defendant, Cory

T. Sklanka, by and through its counsel, hereby moves this Court to dismiss Plaintiff's

Complaint as against Cory T. Sklanka,. The plaintiffs' complaint as against Cory T.

Sklanka, fails to state a claim upon which relief may be granted and must therefore be

dismissed.

WHEREFORE, Cory T. Sklanka respectfully requests that the Court enter an order

dismissing the plaintiff's complaint as against Cory T. Sklanka, in its entirety.


Dated:      Hartford, Connecticut
            August 06, 2018

Respectfully Submitted,

Regnier, Taylor, Curran & Eddy

By /s/ Lawrence L. Connelli
  Lawrence L. Connelli (ct06278)
  Attorneys for Defendant
  Cory T. Sklanka

  100 Pearl Street – 4th Floor
  Hartford, CT 06103
  860-249-9121
  860-527-4343 (fax)
  lconnelli@rtcelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2018, a copy of the foregoing motion to dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By /s/ Lawrence L. Connelli
  Lawrence L. Connelli (ct06278)
  Regnier, Taylor, Curran & Eddy
  100 Pearl Street – 4TH Floor
  Hartford, CT 06103
  860-249-9121
  860-527-4343 (fax)
  lconnelli@rtcelaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ERICA LAFFERTY,et al            :      CIVIL ACTION NO:
       PLAINTIFFS,                 3:18-CV-01156-JCH

        v.

ALEX EMRIC JONES, et al
       DEFENDANTS            :       AUGUST 6, 2018

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED**

This case arises out of the terrible tragedy which occurred on December 14, 2002 at the Sandy Hook Elementary School in Sandy Hook, Connecticut. On that date a crazed gunman, Adam Lanza, opened fire at the school which resulted in the tragic deaths of 26 people: 20 first grade students and 6 adults. The allegations in the Complaint center around Alex Jones, who hosts a radio show and publishes InfoWars, and his penchant for facilitating debate on even the most outlandish theories. Plaintiffs make conclusory allegations against several defendants, including Cory T. Sklanka. These allegations include: (1) a civil conspiracy to invade privacy by false light, (2) a civil conspiracy to defame and defamation per se, (3) a civil conspiracy to cause intentional infliction of emotional distress, (4) civil conspiracy that negligently inflicted emotional distress, and (5) violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. 42-110a. These

allegations do not plead enough facts against Mr. Sklanka, to state a claim upon which relief may be granted, and should therefore be properly dismissed.

## LEGAL STANDARD

### Dismissal Under Federal Rules of Civil Procedure 12(b)(6)

An action should be dismissed under Fed. R. Civ. P. 12(b)(6), if the plaintiffs have not alleged, "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court must "draw all reasonable inferences in favor of the non-moving party," Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims..." Scott v. Town of Monroe, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). None of the facts pled in the complaint give rise to a claim against Mr. Sklanka.

## ANALYSIS

### Plaintiff's Claims of Civil Conspiracy are without Factual Support

The plaintiff claims in Counts 1 – 4 of the complaint, that to commit each underlying tort the defendants: "combined to conduct their campaign of harassment

and abuse, which included numerous unlawful acts or lawful acts by unlawful means," and/or "combined to perform these unlawful acts pursuant to their scheme to harass and abuse the plaintiffs and in furtherance of that scheme." Complaint at ¶¶ 344, 345, 357, 358, 370, 371, 382 & 383. The plaintiffs also make general allegations that the defendants "acted together to develop, disseminate and propagate" the allegedly false statements. Id. ¶ 85. All of these allegations fail due to lack of factual support.

In Connecticut, the elements of a civil conspiracy action are: "(1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." Harp v. King, 266 Conn. 747, 779 (2003). Also, "there is no independent claim of civil conspiracy. Rather, the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself. Thus, to state a cause of action , a claim of civil conspiracy must be joined with an allegation of a substantive tort." Id. at 779 n.37. In order to allege a conspiracy the plaintiff must, "allege the commission of a tortious act in furtherance of the conspiracy, which of course is necessary to establish liability for civil conspiracy, which is not an independent cause of action but rather a separate legal basis upon which two or more persons can intentionally combine to commit an

underlying legal wrong." Weissman v. Koskoff, Kosfkoff & Bieder, P.C., No. HHDCV106012922S, 2011 WL 590461, at *11 (Super. Ct. Jan. 19, 2011).

There are no plausible allegations that Mr. Sklanka entered into any agreement or had an intent to harm the plaintiffs. The factual allegations against him in the complaint are minimal. He allegedly "assisted and was present with Halbig when he [Halbig] filmed and harassed children families at the St. Rose of Lima church in Newtown, Connecticut on June 2, 2015." Complaint at ¶60. He allegedly "acted as Halbig's driver, and actively facilitated his appearance on InfoWars." Complaint at ¶80. Plaintiff vaguely alleges that Mr. Sklanka and Mr. Halbig "acted together, as they both acted together with the Jones defendants, to develop, disseminate and propagate many of the false statements described in this complaint." Complaint at ¶85. Plaintiffs also makes the conclusory allegation, without any supporting factual allegations, that Mr. Sklanka "was at all relevant times a servant, agent, apparent agent, employee, and/or joint venture of Halbig and the Jones Defendants." Complaint at ¶88.

As shown above, none of these allegations allege a particular action or statement made by Mr. Sklanka that would rise to the level of a "tortious act in furtherance of the conspiracy." Even as the plaintiffs attempt to allege this, they seem to simply lump Mr. Sklanka in with the other defendants in a conclusory

manner. They heave loaded language at Mr. Sklanka but provide no specific facts against him.

Picking up even a reprehensible individual from an airport or taking pictures/video of them would hardly qualify as tortious. If that were the case we would be required to lump-in every Uber driver the individual ever used, or any news camera operator around him. The complaint simply neglects to allege any specific facts that give rise to liability for Mr. Sklanka. The law requires more facts to show an individual was a member of a civil conspiracy, and as noted above the plaintiffs fail in that regard. Therefore, there is no cognizable conspiracy claim against Mr. Sklanka.

**The Alleged Speech is Constitutionally Protected**

Even if we assume that any of the alleged statements in the Complaint can be attributed to Mr. Sklanka, which Mr. Sklanka denies, under the First Amendment, public officials and public figures must prove "actual malice" to recover for claims based on speech. N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); Gertz v. Robert Welch, 418 U.S. 323 (1974). "For the purpose of determining the constitutional protection afforded a defendant's speech under the First Amendment to the United States Constitution, the Court must first address whether the plaintiff is a public figure." Zupnik v. Associated Press, Inc., 31 F. Supp. 2d 70, 72 (D. Conn.

1998). Plaintiff Aldenberg, an FBI agent, is a public official. See Price v. Viking Penguin, Inc., 676 F. Supp. 1501, 1512 (D. Minn. 1988).

These plaintiffs are public figures. At minimum, they are involuntary public figures, as they "become a public figure through no purposeful action of [their] own." Gertz, 418 U.S. at 345. In Zupnik, the Court found that family members and participants in high profile events can have "notoriety spilled over" and be drawn "into the public spotlight." Plaintiffs similarly meet this standard. With the exception of Mr. Aldenberg, Plaintiffs' family members were killed in a high-profile shooting.

Public figures and officials "who seek damages for defamatory statements must show that the statements were made with 'actual malice' - that is, with knowledge that the statements were false or with reckless disregard as to their falsity." Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015). In a defamation suit the plaintiff must establish actual malice by clear and convincing evidence. See Bose Corp. Consumers Union, Inc., 466 U.S. 485, 511 (1984). The plaintiffs plead in each count some version of, "[t]he defendants broadcast their outrageous, cruel, and malicious lies about the plaintiffs with knowledge that the statements were false, or with reckless disregard as to whether or not they were true." Complaint at ¶¶343, 356, 369, 381 and 391. Plaintiffs are simply reciting the elements of the claim and fail to assert any facts regarding defendants' knowledge of falsity or reckless disregard. These types of "'naked assertions' or 'conclusory statements'

are not enough." <u>Biro</u>, 807 F.3d at 544 (quoting Iqbal, 556 U.S. 662). Plaintiff also does not assert that Mr. Sklanka made any of the statements alleged or that he had any knowledge of their falsity or reckless disregard thereof. Thus, there is no plausible allegation of actual malice by Mr. Sklanka.

**The Allegations Against Mr. Sklanka are Outside the Applicable Statutes of Limitations**

This action was commenced on May 23, 2018. The claim of negligent infliction of emotional distress is barred by a two-year statute of limitations. See Conn. Gen. Stat. §52-584. The remaining common-law claims are governed by a three-year statute of limitations. See Conn. Gen. Stat. §52-577. The Connecticut Unfair Trade Practices Act Claim has a three-year statute of limitations. See Conn. Gen. Stat. § 42-110g(f).

The last and only dated action attributable to Mr. Sklanka in the complaint occurred on June 2, 2015. Therefore, the claim of negligent infliction of emotional distress, against Mr. Sklanka, immediately fails. It falls clearly outside the two-year statute of limitations.

Although the plaintiffs claim that there was an action by Mr. Sklanka on June 2, 2015 this would be too generous an interpretation of the complaint. The complaint alleges that on June 2, 2015, Mr. Sklanka "*assisted* and was *present* with Halbig when he [Halbig] filmed and harassed children families at the St. Rose of

Lima church in Newtown, Connecticut" (emphasis added.) Complaint at ¶60. There are no further factual descriptions of what exactly Mr. Sklanka is alleged to have done. Being present somewhere certainly does not give rise to any liability, otherwise, everyone in attendance could be made part to the conspiracy. Assisting could mean anything and does not necessarily give rise to any liability and is exactly the type of pleading that Twombly seeks to prevent. It is not enough to simply recite the elements of a cause of action but plaintiffs have to provide "enough facts to state a claim to relief that is plausible on its face." Twombly, at 570. There are no facts pled here at all, and without this specific date all claims against Mr. Sklanka fall outside of even the more generous three-year statute of limitations.

**Mr. Sklanka is Not Liable for False Light Invasion of Privacy**

Plaintiff's do not make specific factual allegations that Mr. Sklanka put them in a false light. Connecticut courts define the tort of false light invasion of privacy as giving, "publicity to a matter concerning another that places the other before the public in a false light." Grigorenko v. Pauls, 297 F. Supp. 2d 446, 448 (D. Conn. 2003). Further a plaintiff is liable for this tort if, "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

As stated above plaintiffs have not shown that the defendants had knowledge of or acted in reckless disregard as to the alleged falsity of the publicized matter. Plaintiffs are simply reciting the elements of the claim and fail to assert any facts. These types of "'naked assertions' or 'conclusory statements' are not enough." Biro, 807 F.3d at 544 (quoting Iqbal, 556 U.S. 662). Plaintiff also does not assert that Mr. Sklanka made any of the statements alleged nor that he had any knowledge of their falsity or reckless disregard thereof. Thus, there is no plausible allegation of false light invasion of privacy against Mr. Sklanka.

**Mr. Sklanka is Not Liable to the Plaintiffs for Defamation Per Quod or Per Se**

In Connecticut, "to establish a prima facie case of defamation" a party "must demonstrate that: (1) [the defendant] published a defamatory statement; (2) this defamatory statement identified [the plaintiff] to a third person; (3) this defamatory statement was published to a third person; and (4) [the plaintiff's] reputation suffered injury as a result of the defamatory statement." Simms v. Seaman, 308 Conn. 523, 547-548 (Conn. 2003), quoting Gambardella v. Apple Health Care, Inc., 291 Conn. 620, 627-628 (Conn. 2009).

As stated above, the conspiracy claim must necessarily fail and therefore we need only look to see if a claim can be held against Mr. Sklanka alone. The complaint does not allege any statement that Mr. Sklanka made that can be

identified. Without a statement, the first element cannot be met and the claim against Mr. Sklanka should fail in its entirety.

Plaintiffs must also allege recoverable damages. In a defamation claim, Plaintiffs must allege and prove special damages. See Yavis v. Sullivan, 137 Conn. 253, 259 (1950). Special damages, "must be of a material and, generally, of a pecuniary nature. It must results from the conduct of a person other than the defamer or the defamed, and that conduct must be directly caused by the publication of the slander." Urban v. Hartford Gas Co., 139 Conn. 301, 308 (1952). Plaintiffs do not allege any material or pecuniary losses in Count 2 of the complaint; therefore, the claim for defamation *per quod* fails.

The claim for defamation *per se* also fails. The difference between claims of defamation and defamation per se is that, "the final prong of the prima facie case of defamation, that of injury to reputation, when a plaintiff claims defamation per se, she need not prove damages." Gambardella v. Apple Health Care, Inc., 86 Conn. App. 842, 850 (2005). "In general there are two classes of libel that are actionable per se: (1) libels charging crimes and (2) libels which injure a man in his profession and calling." Id. In an attempt to get around the deficiencies with their defamation elements, plaintiffs attempt to claim that the statements made "implicate the Plaintiffs in heinous criminal conduct." Complaint at ¶350. However, the exact

crimes they are referring to are conveniently omitted. Thus, there is no *per se* claim

for defamation.

**Mr. Sklanka is not Liable for Intentional Infliction of Emotional Distress**

In order to recover for intentional infliction of emotional distress, Plaintiffs

must prove that:

> (a) Defendants intended to inflict emotional distress, or knew or should
> have known that emotional distress was a likely result of [its] conduct;
> (b) defendant's' conduct was extreme and outrageous; (c) defendants'
> conduct caused the plaintiff's distress; and (d) the emotional distress
> suffered by the plaintiff was severe. The standard in Connecticut for
> conduct reaching the level of "extreme and outrageous" is defined as
> "that which exceeds all bounds usually tolerated by a decent society,
> of a nature which is especially calculated to cause, and does cause,
> mental distress of a very serious kind.

Mercer v. Brunt, 272, F.Supp. 2d 181, 188, (D. Conn. 2002). The plaintiffs have

failed to meet these elements.

First, plaintiffs make no allegation that Mr. Sklanka had any intention to harm

the plaintiffs or had reason to foresee that any of his actions would cause them

harm. There are no allegations in the complaint that Mr. Sklanka made any

statements at all.

Second, the plaintiffs have failed to allege that any speech, if there was any,

made by Mr. Sklanka was outrageous. They have again simply pled the elements of

the claim. They have also not identified what type of "emotional distress", suffered

Case 3:18-cv-01150-JCH Document 46 Filed 08/06/18 Page 12 of 15

by the plaintiffs, was so "severe". These again are simply hollow recitations without sufficient facts to state a claim upon which relief could be granted.

**Mr Sklanka is not Liable for Negligent Infliction of Emotional Distress**

"To prevail on a claim of negligent infliction of emotional distress, the plaintiff must plead and prove the following: (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress.... Thus, [t]he plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." (Citation omitted; internal quotation marks omitted.) Stancuna v. Schaffer, 122 Conn. App. 484, 490 (2010), quoting Davis v. Davis, 112 Conn. App. 56, 68 (2009). There are no facts alleged in the complaint that would allow a finding of liability as to Mr. Sklanka.

Plaintiffs again simply pleaded the elements of the claim. They have also not identified what "emotional distress" suffered by the plaintiffs was so "severe enough that it might result in illness or bodily harm". Complaint at ¶376. They simply state that the "the plaintiffs' distress was foreseeable." Complaint at ¶ 375. These again

are just hollow recitations without sufficient facts to state a claim upon which relief could be granted.

**Mr. Sklanka is Not Liable under the Connecticut Unfair Trade Practices Act**

"The purpose of CUTPA is to protect the public from unfair trade practices in the conduct of any trade or commerce." Eder Bros. v. Wine Merchants of Conn., Inc., 275 Conn. 363, 380 (Conn. 2005). The elements of what constitutes an unfair or deceptive trade practice are outlined as:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise - whether, in other words, it is within at least a penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen.

Harris v. Bradley Memorial Hosp. and Health Center, Inc., 296 Conn. 315, 250 (2010). None of these elements are met.

Plaintiffs make no allegations of unfairness against the Mr. Sklanka. In fact Mr. Sklanka is not said to be engaged in any trade or commerce whatsoever. It is impossible to see from the complaint how CUTPA would apply to him in any way. Plaintiffs once again merely asserted elements in an attempt to raise a claim but neglect to provide a factual basis. Additionally,

plaintiffs are not consumers, competitors or related businessmen, and therefore the CUTPA claim must be dismissed as well.

**CONCLUSION**

Plaintiffs have been dealing with a tragedy the likes of which we hope no one will have to deal with again. Mr. Sklanka however does not have anything to do with causing it. Plaintiffs fail to properly plead their case in accordance with generally accepted pleading standards and fail to state a claim upon which relief can be granted. Therefore, the entirety of the case against Mr. Sklanka should be summarily dismissed.

Respectfully Submitted,

Regnier, Taylor, Curran, & Eddy

By   /s/ Lawrence L. Connelli
Lawrence L. Connelli (ct06278)
Attorneys for Defendant,
Cory Sklanka

100 Pearl Street – 4th Floor
Hartford, CT 06103
860-249-9121
860-527-4343 (fax)
lconnelli@rtcelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2018, a copy of the foregoing memorandum of law in support of motion to dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By    /s/ Lawrence L. Connelli
Lawrence L. Connelli (ct06278)
Regnier, Taylor, Curran & Eddy
100 Pearl Street – 4TH Floor
Hartford, CT 06103
860-249-9121
860-527-4343 (fax)
lconnelli@rtcelaw.com

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

ERICA LAFFERTY, *et al.*,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　)　　Case No:　3:18-cv-01156-JCH
　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
ALEX JONES, *et al.*,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　)

---

## HALBIG'S AFFIDAVIT RE CORY T. SKLANKA

---

Defendant Wolfgang S. Halbig, of age and duly sworn, provides this affidavit to assist the Court in deciding whether it has diversity jurisdiction, and states under oath as follows:

1. Paragraph 37 of Plaintiffs' complaint alleges that Cory T. Sklanka "has worked closely with Halbig in Halbig's Sandy Hook 'investigative' work, including acting as driver and camera operator when Halbig has visited Connecticut … and participating in the operation of SandyHook Justice.com and co-hosting Sandy Hook Justice broadcasts." This paragraph is almost entirely false. Cory Sklanka did drive me around when I visited Connecticut. However, Mr. Sklanka did not operate any camera; he did not have a camera; he has never touched a camera in my presence. He has had nothing to do with SandyHookJustice.com, nor has he co-hosted any broadcasts with me.

2. Par. 60 of Plaintiffs' complaint alleges the same activities as Par. 37, but also says, "On information and belief, Sklanka assisted and was present with Halbig when he filmed and harassed children at the St. Rose of Lima church in Newtown, Connecticut, on June 2, 2015." Par. 65 further alleges that Mr. Sklanka and I and others "were seen videotaping children entering and exiting the building." Neither Mr. Sklanka nor I filmed or harassed children when I visited St. Rose of Lima church, nor did he or I videotape children entering or exiting the building, nor did Mr. Sklanka assist me in running a website. He was my driver, only.

3. Par. 80 says, "Sklanka acted as Halbig's driver, and actively facilitated his appearance on Infowars." Sklanka had nothing to do with my appearance on Infowars.

1

4. Par. 85 says, "Similarly, Sklanka and Halbig acted together, and they both acted together with the Jones defendants, to develop, disseminate, and propagate many of the false statements described in this Complaint." I have not acted together with Sklanka in any of the activities alleged in this paragraph.

5. Par. 88 says, "Defendant Sklanka was at all relevant times a servant, agent, apparent agent, employee, and/or joint venturer of Halbig and the Jones defendants." Sklanka is (and was) *not* my agent or apparent agent, or my employee, servant, or joint venturer, at *any* time. His drove me around free of charge, in his own vehicle.

FURTHER AFFIANT SAITH NOT.

_____
Wolfgang S. Halbig

STATE OF FLORIDA    )
                 ) ss.
COUNTY OF LAKE    )

Subscribed and sworn to before me this 6 day of August, 2018, by Wolfgang S. Halbig.

WITNESS MY OFFICIAL SEAL:

BRENDA LIZ ROSARIO
Notary Public, State of Florida
Commission# GG 142351
My comm. expires Sept. 12, 2021

_____
Notary Public

My commission expires: 09|12|2021

2

**CERTIFICATE OF SERVICE**

I certify, by my signature below, that I have served the foregoing "HALBIG'S AFFIDAVIT RE CORY T. SKLANKA" on the other parties this _6_ day of August, 2018, by by email, addressed as follows:

William M. Bloss, Esq.
Matthew S. Blumenthal, Esq.
Koskoff Koskoff & Bieder
350 Fairfield Ave.
Bridgeport, CT   06604
bbloss@koskoff.com
mblumenthal@koskoff.com

Jay Marshall Wolman, Esq.
100 Pearl Street
14th Floor
Hartford, Ct 06103
jmw@randazza.com

Lawrence L. Connelli, Esq.
Regnier Taylor Curran & Eddy
100 Pearl Street
4th Floor
Hartford, Ct 06103
lconnelli@rtcelaw.com

Nicole R. Cuglietto, Esq.
Stephen P. Brown, Esq.
Wilson Elser Moskowitz Edelman & Dicker
1010 Washington Blvd
8th Floor
Stamford, Ct 06901
nicole.cuglietto@wilsonelser.com
Stephen.brown@wilsonelser.com

Wolfgang S. Halbig

3

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; July 2013: All rights reserved.

# MAIL ★
# XPRESS™

STEST SERVICE IN THE U.S.

POSTAL SERVICE
1007

**$27.45**
R2305H127042-12

10

EM 069700413 US

**UNITED STATES POSTAL SERVICE** ®

**PRIORITY ★ MAIL ★ EXPRESS™**

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)          PHONE (      )

W Haibig
25526 Hawks Run Lne
Sorrento, Fl. 32776

**PAYMENT BY ACCOUNT (if applicable)**

| USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. No. |
|---|---|

**DELIVERY OPTIONS (Customer Use Only)**

☒ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

**TO: (PLEASE PRINT)**          PHONE (      )

Clerk of the Court
U.S. District Court
141 Church Street
New Haven, CT

ZIP + 4® (U.S. ADDRESSES ONLY)

0 6 5 1 0 - ___ ___ ___ ___

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☐ 1-Day | ☒ 2-Day | ☐ Military | ☐ DPO |
|---|---|---|---|

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|
| 32776 | 8-9-18 | $ 24.70 |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
|---|---|---|---|
| 8-7-18 | ☐ 10:30 AM ☒ 3:00 PM ☐ 12 NOON | $ | $ |

| Time Accepted | 10:30 AM Delivery Fee | Return Receipt Fee | Live Animal Transportation Fee |
|---|---|---|---|
| 11:52 ☒ AM ☐ PM | $ | $ 2.75 | $ |

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
|---|---|---|
| $ | $ | 27.45 |

| Weight | ☒ Flat Rate | Acceptance Employee Initials |
|---|---|---|
| lbs.    ozs. | | JP |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |

LABEL 11-B, OCTOBER 2018    PSN 7690-02-000-9996    **1-ORIGIN POST OFFICE COPY**

SED INTERNATIONALLY,
STOMS DECLARATION
L MAY BE REQUIRED.


EMS

uly 2013   OD: 12.5 x 9.5

TU
ER FREE SUPPLIES ONLINE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG, | : : : : : : : : : : : : : | Case No. 3:18-cv-01156-JCH August 17, 2018 |
| Plaintiffs, | : : | |
| v. | : : : | |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | : : : : : : : : | |
| Defendants. | : : | |

**MOTION TO EXTEND DEADLINE TO RESPOND TO MOTION TO REMAND**

Defendants Alex Jones, InfoWars, LLC, Infowars Health, LLC, Free Speech Systems, LLC, and Prison Planet TV, LLC, hereby move, pursuant to Fed. R. Civ. P. 6(b) and Local Rule 7(b), for a 30-day extension of time to respond to the Motion to Remand (Dkt. No. 37), until September 28, 2018. In support hereof, Defendants state as follows:

(1) On July 13, 2018, Defendants removed *Lafferty, et al. v. Jones, et al.*, Case No. FBT-CV18-6075078-S from the Superior Court, Judicial District of Fairfield at Bridgeport, Connecticut, ("Lafferty Case") to this Court (Case No. 3:18-cv-01156), on the basis of diversity jurisdiction, asserting improper joinder of Defendant Corey Sklanka;

(2) On July 31, 2018, the plaintiffs in the Lafferty Case filed a motion to remand (Lafferty Case, Dkt. No. 37), with a deadline to respond of August 21, 2018;

- 1 -

(3) On August 2, 2018, the Court issued an Order to Show Cause in the Lafferty Case (Lafferty Case, Dkt. No. 44), setting the response deadline of August 29, 2018 (with a September 12, 2018 reply deadline);

(4) The Court also stayed the deadline to respond to the pending dispositive motions in the Lafferty Case until 21 days following disposition of the motion to remand (Lafferty Case, Dt. No. 43);

(5) In related litigation, Defendants removed *Sherlach v. Jones, et al.*, Case No. FBT-CV18-6076475-S, from the Superior Court, Judicial District of Fairfield at Bridgeport, Connecticut, ("Sherlach Case") to this Court (Case No. 3:18-cv-01269), on the same basis;

(6) On August 15, 2018, Mr. Sherlach filed a parallel motion to remand the Sherlach Case (Sherlach Case, Dkt. No. 28), with a deadline to respond of September 5, 2018;

(7) That same day, Mr. Sherlach filed a motion for extension of time and for entry of scheduling order (Sherlach Case, Dkt. No. 27), seeking to harmonize the briefing schedules in the two cases.[1]

Due to the conflicts and obligations of counsel for Defendants, an extension of thirty days from the current deadline in the Lafferty Case, being 24 days in the Sherlach Case, until September 28, 2018 is warranted. During the previously scheduled response period, Defendants' counsel has had, among other things, to devote significant time to a Second Circuit oral argument and heavy discovery on tight deadlines. Although a shorter extension would ordinarily be sought, a longer extension is requested due to Defendants' counsel's observance of the upcoming Jewish holidays of Rosh Hashana, Yom Kippur, and Sukkot.

---

[1] That motion anticipated the filing of this motion and indicated the consent of counsel for all plaintiffs to the relief requested herein. Defendants do not oppose the relief sought in the extension motion in the Sherlach Case (Sherlach Case, Dkt. No. 27).

Pursuant to Local Rule 7.1(b)(2), movants have inquired of all non-moving parties and there is agreement to the motion. This is the first motion for extension of time filed by the movants with respect to this time limitation.

WHEREFORE Defendants respectfully request that the deadline to respond to the motion to remand be extended to September 28, 2018.

Dated: August 17, 2018.

Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: 702-420-2001
Fax: 305-437-7662
ecf@randazza.com

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
ecf@randazza.com

Attorneys for Infowars Defendants

- 3 -

Case No. 3:18-cv-01156-JCH

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 17th day of August 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

Self-Represented Defendant

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

Representative for Defendant
Genesis Communications Network, Inc.


/s/ Jay M. Wolman
Jay M. Wolman

- 4 -

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERICA LAFFERTY, et al | : | |
| | : | |
| PLAINTIFFS, | : | |
| | : | |
| v. | : | Civil Action No.: |
| | : | 3:18-cv-01156-JCH |
| | : | |
| ALEX EMRIC JONES, et al | : | |
| | : | |
| DEFENDANTS. | : | |

### DEFENDANT'S MOTION TO EXTEND DEADLINE
### TO RESPOND TO MOTION TO REMAND

Pursuant to F. R. Civ. Pro. 6(b) and Local Rule 7(b) of the Local Rules of Civil Procedure for the District of Connecticut, defendant Midas Resources, Inc. ("Midas"), by and through its attorneys, Wilson Elser Moskowitz Edelman & Dicker LLP, hereby respectfully requests an extension of 30 days up to and including September 28, 2018 to respond to Plaintiffs' motion to remand (Dkt. No. 37). In support hereof, Defendants state as follows:

(1) On July 13, 2018, the Jones defendants removed *Lafferty, et al. v. Jones, et al.*, Case No. FBT-CV18-6075078-S from the Superior Court, Judicial District of Fairfield at Bridgeport, Connecticut, ("Lafferty Case") to this Court (Case No. 3:18-cv-01156), on the basis of diversity jurisdiction, asserting improper joinder of Defendant Corey Sklanka;

(2) On July 31, 2018, the plaintiffs in the Lafferty Case filed a motion to remand (Lafferty Case, Dkt. No. 37), with a deadline to respond of August 21, 2018;

(3) On August 2, 2018, the Court issued an Order to Show Cause in the Lafferty Case (Lafferty Case, Dkt. No. 44), setting the response deadline of August 29, 2018 (with a September 12, 2018 reply deadline);

(4) The Court also stayed the deadline to respond to the pending dispositive motions in the Lafferty Case until 21 days following disposition of the motion to remand (Lafferty Case, Dt. No. 43);

(5) In related litigation, the Jones defendants removed *Sherlach v. Jones, et al.*, Case No. FBTCV18-6076475-S, from the Superior Court, Judicial District of Fairfield at

679838v.1

Bridgeport, Connecticut, ("Sherlach Case") to this Court (Case No. 3:18-cv- 01269), on the same basis;

(6) On August 15, 2018, Mr. Sherlach filed a parallel motion to remand the Sherlach Case (Sherlach Case, Dkt. No. 28), with a deadline to respond of September 5, 2018;

(7) That same day, Mr. Sherlach filed a motion for extension of time and for entry of scheduling order (Sherlach Case, Dkt. No. 27).

Midas seeks an additional thirty days from the current deadline in the Lafferty Case, being 24 days in the Sherlach Case, until September 28, 2018 to adequately review the Plaintiffs' motion and orders of the Court in conjunction with its position. This request by Midas mirrors the request by counsel for the Jones Defendants to similarly keep briefing schedules consistent.

Plaintiffs consent to this request by Midas. Similarly, counsel for the Jones Defendants and Mr. Sklanka consent, as well as the representative of defendant Genesis. Defendant Halbig has not responded to Midas' request as of the date of this filing. This is Midas' first request for an extension of time with regard to Plaintiffs' motion to remand and no party will be prejudiced by the granting of this motion.

WHEREFORE, for good cause shown, Midas respectfully requests that this motion for extension of time as to Plaintiffs' motion to remand until September 28, 2018 be granted.

2

679838v.1

Dated: Stamford, Connecticut
       August 21, 2018

                                    Respectfully Submitted,

                                    Wilson Elser Moskowitz
                                      Edelman & Dicker LLP

By:   /s/ Stephen P. Brown
       Stephen P. Brown (ct19876)
       *Attorneys for Defendant*
       *Midas Resources, Inc.*
       1010 Washington Boulevard
       Stamford, Connecticut 06901
       Telephone No.: (203) 388-9100
       Facsimile No.: (203)388-9101
       Stephen.Brown@wilsonelser.com

679838v.1

CERTIFICATE OF SERVICE

I hereby certify that August 21, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Wolfgang Halbig 25526 Hawks Run Lane
Sorrento, FL 32776
wolfgang.halbig@comcast.net
*Self-Represented Defendant*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
t.anderson@gcnlive.com
*Representative for Defendant*
*Genesis Communications Network, Inc.*

By:/s/ Stephen P. Brown
    Stephen P. Brown (ct19876)
Wilson Elser Moskowitz Edelman
    & Dicker LLP
1010 Washington Boulevard
Stamford, Connecticut 06901
Telephone No.: (203) 388-9100
Facsimile No.: (203)388-9101
Stephen.Brown@wilsonelser.com

4

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG, | : : : : : : : : : : : | Case No. 3:18-cv-01156-JCH |
| Plaintiffs, | : : | September 25, 2018 |
| v. | : : : | |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | : : : : : : : : | |
| Defendants. | : : | |

## OPPOSITION TO MOTION TO REMAND

Cory Sklanka had nothing to do with the alleged defamation and other claims asserted by Plaintiffs. They cannot avoid this Court's jurisdiction merely by naming him and claiming, unsupported by evidence, that he, somehow, is liable to them. Defendants Alex Jones, Infowars, LLC, Infowars Health, LLC, Free Speech Systems, LLC, and Prison Planet TV, LLC (hereinafter "Infowars Defendants") hereby oppose Plaintiffs' Motion to Remand (Dkt. No. 37) and, pursuant to the Order of August 2, 2018 (Dkt. No. 44), show cause why that motion should not be granted.

## 1.0 PROCEDURAL HISTORY

On May 23, 2018, Plaintiffs executed a Summons and Complaint in the Connecticut Superior Court in the Judicial District of Fairfield, at Bridgeport, alleging claims for 1) Invasion of Privacy by False Light & Civil Conspiracy; 2) Defamation & Defamation per se & Civil Conspiracy; 3) Intentional Infliction of Emotional Distress & Civil Conspiracy; 4) Negligent Infliction of Emotional Distress & Civil Conspiracy; and 5) Violation of the Connecticut Unfair

- 1 -

Trade Practices Act, against the Infowars Defendants, Wolfgang Halbig, Midas Resources, Inc., Genesis Communications, Inc., and Cory Sklanka. *See* Dkt. No. 1-1. On July 13, 2018, the Infowars Defendants filed a timely Notice of Removal of that action to this Court pursuant to 28 U.S.C. §§ 1332(a), 1441(a), & 1446. *See* Dkt. No. 1.

Although the Notice of Removal observed that Mr. Sklanka is a Connecticut citizen, the Infowars Defendants also set forth that he was not properly joined as a defendant under 28 U.S.C. § 1441(b)(2) & 1446(b)(2)(A). *See id*. at ¶¶ 15 & 18. The Infowars Defendants thereupon explained why he was not properly joined, as there is no possibility of any cause against Mr. Sklanka. *See id*. at ¶¶ 19-24, incorporated herein by reference.

Plaintiffs filed a motion to remand and memorandum in support thereof, asserting that Mr. Sklanka was properly joined. *See* Dkt. Nos. 37 & 38. Plaintiffs' motion consisted entirely of argument based on allegations in their Complaint without any evidence in support thereof[1]. *See id*. Subsequently, Mr. Sklanka filed a motion to dismiss and memorandum in support thereof. *See* Dkt. Nos. 45-46. That motion expounds upon the arguments made by the Infowars Defendants in their Notice of Removal[2]. Mr. Halbig also filed an affidavit evidencing Mr. Sklanka's absence of liability. *See* Dkt. No. 47. Mr. Sklanka's motion and Mr. Halbig's affidavit show that Mr. Sklanka was joined as a defendant merely for driving Mr. Halbig, without making any contribution to the speech giving rise to Plaintiffs' claim for damages. By this measure, had Mr. Halbig taken a taxi around Sandy Hook, the Plaintiffs could have sued the taxi driver in order to keep this case out of federal court.

## 2.0  LEGAL STANDARD

Ordinarily, Mr. Sklanka's Connecticut citizenship would defeat diversity of citizenship and require remand[3]. *See* 28 U.S.C. §§ 1332 & 1441. However, "a plaintiff may not defeat a federal

---

[1]     Pursuant to this Court's Orders of August 2, 2018 (Dkt. Nos. 42 & 43), Plaintiffs' obligation to respond to Mr. Sklanka's motion to dismiss appears stayed until 21 days after adjudication of the motion to remand. The Infowars Defendants, Midas Resources, and Mr. Halbig had also filed earlier motions to dismiss (Dkt. Nos. 11, 21, 22, 31, & 32), which are also stayed.

[2]     To the extent applicable, the Infowars Defendants incorporate Mr. Sklanka's arguments by reference.

[3]     Plaintiffs assert no basis other than citizenship of Mr. Sklanka in support of remand.

court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco. Inc.,* 138 F.3d 459, 460-61 (2d Cir. 1998). In *Pampillonia*, the Second Circuit set forth the test, stating that "[i]n order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court."[4] *Id*. at 461.

As this Court has observed, "[i]n conducting a fraudulent joinder inquiry, courts can look beyond the pleadings to determine if the pleadings can state a cause of action" as this is a jurisdictional issue. *Read v. Nationwide Mut. Ins. Co,* No. 3-06-cv-00514 (JCH), 2006 U.S. Dist. LEXIS 68299, at *6 (D. Conn. Sep. 13, 2006) (Hall, U.S.D.J.; internal quotation marks and citation omitted); *Oliva v. Bristol-Myers Squibb Co.,* No. 3-05-cv-00486 (JCH), 2005 U.S. Dist. LEXIS 35881, at *7-8 (D. Conn. Dec. 15, 2005) (same). Here, the affidavit of Mr. Halbig (Dkt. No. 47), in conjunction with the deficiencies of the Complaint, shows that Plaintiffs have no possibility of stating a claim against Mr. Sklanka, even were they to attempt to amend. Thus, the motion to remand should be denied.

## 3.0 ANALYSIS

### 3.1 Plaintiffs' Threadbare Allegations Do Not Give Rise to a Possible Claim

As set forth in the Infowars Defendants' Notice of Removal, the allegations in the Complaint against Mr. Sklanka are limited:

He is identified as working closely with defendant Halbig by acting as driver and camera operator and "on information and belief, participating in the operation of" a website and broadcasts. Complaint at ¶ 37. He allegedly "facilitated" Halbig and "assisted and was present with Halbig when he filmed and harassed children

---

[4] As correctly noted by Plaintiffs, the Infowars Defendants do not claim "outright fraud", only that there is no possibility a cause of action may be stated against Mr. Sklanka.

families," not identified as Plaintiffs, "on June 2, 2015." *Id*. at ¶ 60. He allegedly "acted as Halbig's driver, and actively facilitated [Halbig's] appearance on Infowars." *Id*. at ¶ 80. He is vaguely alleged to have somehow acted with other defendants to "develop, disseminate, and propagate" the allegedly false statements. *Id*. at ¶ 85. He is also allegedly a "servant, agent, apparent agent, employee, and/or joint venturer" of other defendants. *Id*. at ¶ 88.

Dkt. No. 1 at ¶ 19.

In their motion to remand, Plaintiffs generally highlight paragraphs 37, 59-72, 80, 85, 145-170, 189-219 of their Complaint, in their discussion of Mr. Sklanka specifically. Dkt. No. 38 at 2-3. Other than paragraph 65 of the Complaint, which asserts Mr. Sklanka "participated" in Mr. Halbig's alleged videotaping outside St. Rose of Lima in Newtown, Connecticut, which was already alleged in paragraph 60, none of the other paragraphs in the Complaint cited by Plaintiffs mention Mr. Sklanka or discuss any activities allegedly connected to him. In fact, none of the statements or publications that Plaintiffs assert give rise to their claims relate to any statement on the website, SandyHookJustice.com, that Plaintiffs allege Mr. Sklanka "participat[ed] in the operation" of. Dkt. No. 1-1 at ¶ 37.

Plaintiffs also assert that, if given the opportunity, they would amend their Complaint to assert that Mr. Sklanka "actively assisted" the operation of two websites (unrelated to the statements giving rise to the Complaint) through September 2016, that Mr. Sklanka "agreed with Halbig to facilitate Halbig's activities", that he knew those two websites had the alleged purpose of publishing allegedly defamatory material (i.e. the claim that the shooting was a hoax), that Mr. Sklanka posted an article on MonteFrank.com regarding two non-plaintiffs on September 3, 2016, that Mr. Sklanka allegedly broadcast now-deleted podcasts under a pseudonym (unrelated to the statements giving rise to the Complaint) regarding the hoax claim, and that Plaintiffs were unaware of Mr. Sklanka's role until the past year[5]. Dkt. No. 38 at 20-21.

---

[5] Infowars Defendants do not dispute that Plaintiffs may have an opportunity to amend. As discussed below, however, the putative amendments do not support remand.

Although Plaintiffs recognized that the Court may look beyond the pleadings, they offered no evidence in support of remand.  *See* Dkt. No. 38 at 7 citing *Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.,* 448 F.3d 138, 150 (2d Cir. 2006).  In contrast to Plaintiffs' non-evidenced allegations, the affidavit of Mr. Halbig presents clear and convincing evidence (and the only record evidence) that Mr. Sklanka cannot possibly be liable to Plaintiffs.  As averred by Mr. Halbig:

a) Mr. Sklanka did not act as a cameraman for Mr. Halbig (Dkt. No. 47 at ¶ 1);

b) Mr. Sklanka had nothing to do with the SandyHookJustice.com website (*id.*); Mr. Sklanka co-hosted no broadcasts (*id.*);

c) Mr. Sklanka did not harass children at the church (*id.* at ¶ 2);

d) Mr. Sklanka did not videotape children at the church (*id.*);

e) Mr. Sklanka did not assist Mr. Halbig in running any website (*id.*);

f) Mr. Sklanka "had nothing to do" with Mr. Halbig's Infowars appearance (*id.* at ¶ 3); Mr. Sklanka did not act with Mr. Halbig in developing, disseminating or propagating any of the allegedly false statements (*id.* at ¶ 4);

g) Mr. Sklanka was not Mr. Halbig's agent, apparent agent, employee, servant, or joint venture at any time (*id.* at ¶ 5); and

h) Mr. Sklanka's sole relationship to Mr. Halbig was as a driver in Connecticut (*id.* at ¶¶ 1, 2 & 5).

In the month and a half since Mr. Halbig filed his affidavit, Plaintiffs have not supplemented the record with any countervailing evidence.  Neither have they sought jurisdictional discovery to test Mr. Halbig's averments.  Although Plaintiffs sought and obtained a stay of discovery (Dkt. Nos. 30 & 42), a district court "may have... to authorize... discovery" on the issue of subject matter jurisdiction.  *Cantor Fitzgerald, L.P, v. Peaslee*, 88 F.3d 152, 155 (2d Cir. 1996) (discussing a motion to remand); *see also Fein v. Chrysler Corp.*, No. 98 Civ. 4113 (CPS), 1998 U.S. Dist. LEXIS 15644, 1998 WL 34032284, at *10 (E.D.N.Y. Sept. 29, 1998) ("[T]he cases. indicate a preference, even a requirement, for jurisdictional discovery, if necessary [regarding a

motion to remand]."). Having forfeited the opportunity to take jurisdictional discovery and contest Mr. Halbig's affidavit, its unrebutted nature presents clear and convincing evidence that no claim lies against Mr. Sklanka.

### 3.2     Plaintiffs Failed to State a Claim Against Mr. Sklanka

None of the five claims alleged against Mr. Sklanka are viable. As argued by Mr. Sklanka in his motion to dismiss (Dkt. Nos. 45 & 46), incorporated herein by reference, the Complaint is subject to dismissal as to him under Fed. R. Civ. P. 12(b)(6). Many of Mr. Sklanka's arguments mirror those set forth in the Infowars Defendants' motion to dismiss (Dkt. Nos. 21 & 22). Some Circuits hold that fraudulent joinder claims cannot rest on a common defense that equally disposes of the claims against all other defendants. *See Smallwood v. Illinois Central RR Co.,* 385 F.3d 568 (5th Cir. 2004) (en banc); *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108 (3d Cir. 1990). However, to the extent applicable here, the arguments as to the overall sufficiency of the claims as to the defendants generally are incorporated herein by reference and show that there is no possibility of success against any defendant, including Mr. Sklanka. Infowars Defendants will otherwise address their arguments specifically to the claims against Mr. Sklanka which, on their own, are independently subject to dismissal. Such is in further accordance with the Court's order (Dkt. No. 43) that consideration of that motion is stayed until resolution of the motion to remand.

### 3.2.1   Plaintiffs Make No Direct Claim in Tort Against Mr. Sklanka

In their motion to remand, Plaintiffs do not address specific actions taken by Mr. Sklanka that directly give rise to claims for false light, defamation, or intentional or negligent infliction of emotional distress. *See* Dkt. No. 38 at 14-16. Instead, all arguments discuss "defendants" as a whole. *Id*.

First, there is no direct claim for false light invasion of privacy. "The definition of false light invasion of privacy is as follows: One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity

of the publicized matter and the false light in which the other would be placed." *Allen v. Verizon Wireless*, 2013 U.S. Dist. LEXIS 80228, at \*27 (D. Conn. June 6, 2013) (Hall, U.S.D.J.), quoting *Grigorenko v. Pauls*, 297 F. Supp. 2d 446, 448 (D. Conn. 2003). There is no allegation or evidence that Mr. Sklanka, himself, gave publicity to a matter concerning any Plaintiff. Merely driving Mr. Halbig around is not giving publicity to the Plaintiffs. Even if Plaintiffs were permitted to amend their complaint, they do not assert that Mr. Sklanka's alleged article gave publicity to any one of them.

Second, there is no direct claim for defamation. Under Connecticut law, in order "[t]o establish a prima facie case of defamation" a party "must demonstrate that: (1) [the defendant] published a defamatory statement; (2) this defamatory statement identified [the plaintiff] to a third person; (3) this defamatory statement was published to a third person; and (4) [the plaintiff's] reputation suffered injury as a result of the defamatory statement." *Simms v. Seaman*, 308 Conn. 523, 547-48, 69 A.3d 880 (Conn. 2013), quoting *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627-28 (Conn. 2009). There is no allegation or evidence that Mr. Sklanka, himself, published any statement, let alone a defamatory one, concerning any Plaintiff. Merely driving Mr. Halbig around is not publication. Even if Plaintiffs were permitted to amend their complaint, they do not assert that Mr. Sklanka's alleged article identified any one of them or that their reputation(s) suffered on account thereof.

Third, there is no direct claim for intentional infliction of emotional distress. To recover, Plaintiffs must prove that:

> (a) defendants intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of [its] conduct; (b) defendants' conduct was extreme and outrageous; (c) defendants' conduct caused the plaintiff's distress; and (d) the emotional distress suffered by the plaintiff was severe. The standard in Connecticut for conduct reaching the level of "extreme and outrageous" is defined as "that which exceeds all bounds usually tolerated by a decent society, of a nature

- 7 -

which is especially calculated to cause, and does cause, mental distress of a very serious kind."

*Mercer v. Brunt*, 272 F. Supp. 2d 181, 188, 2002 U.S. Dist. LEXIS 26561 (D. Conn. 2002) (citations omitted). Here, there is no factual basis to suggest Mr. Sklanka intended to inflict emotional distress or knew it was likely. Driving Mr. Halbig is neither extreme nor outrageous conduct; if it were, every taxi, Uber, and bus driver in the state could be liable for the actions of any passenger. Even if Plaintiffs were permitted to amend, they have not identified specific statements or conduct of Mr. Sklanka that is extreme and outrageous. Instead, they make reference to hearsay about podcasts and articles that are not claimed to be extreme or outrageous. Dkt. No. 38 at pp. 20-21.

Fourth, there is no direct claim for negligent infliction of emotional distress against Mr. Sklanka. Under Connecticut law:

> [t]he elements of negligent infliction of emotional distress are: 1) that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; 2) the plaintiff's distress was foreseeable; 3) the emotional distress was severe enough that it might result in illness or bodily harm; and 4) the defendant's conduct was the cause of the plaintiff's distress.

*Adams v. Hartford Courant*, No. 3-03-cv-0477 (JCH), 2004 U.S. Dist. LEXIS 8546, at *14 (D. Conn. May 14, 2004) (Hall, U.S.D.J.) Mr. Sklanka driving Mr. Halbig did not create an unreasonable risk of causing Plaintiffs emotional distress. Driving a person does not make emotional distress foreseeable. And there is no basis that driving Mr. Halbig caused Plaintiffs' distress. Even if Plaintiffs were to amend, neither the website nor podcasts created a foreseeable, unreasonable risk and there is no suggestion the Plaintiffs' distress was caused by either.

Just as Mr. Sklanka is not liable at common law, he is not liable under CUTPA. The following factors, known as the "cigarette rule," determine whether a trade practice is unfair or deceptive:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least a penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen.

*Harris v. Bradley Memorial Hosp. and Health Center, Inc.*, 296 Conn. 315, 350 (2010). Although all three criteria need not be satisfied, at least one must. *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn. 602, 609-10, 119 A.3d 1139, 1143 (2015). Driving Mr. Halbig is neither unlawful nor unfair, nor is it inherently immoral, unethical, oppressive, or unscrupulous. And such driving could not have harmed Plaintiffs as consumers, competitors, or businessmen.

Moreover, Mr. Sklanka was not engaged in trade or commerce. Even an amended complaint, including allegations of a website article and podcasting, would not meet these hurdles. That Mr. Sklanka may have even developed some of the alleged statements that were later disseminated by one or more of the other defendants for profit (as argued at Dkt. No. 38 at 17) does not place Mr. Sklanka in commerce. Plaintiffs' citation to *Nastro v. D'Onofrio*, 263 F. Supp. 2d 446 (D. Conn. 2003) is inapposite. In *Nastro*, the conduct at issue was deemed in furtherance of prior conduct that was already adjudicated to be an unfair trade practice by one of those very same defendants. 263 F. Supp. 2d at 457-458. Here, Mr. Sklanka's driving of Mr. Halbig (or even alleged website and podcasting) had nothing to do with any trade or commerce by any other defendant at the time he did it.

### 3.2.2   Plaintiffs Cannot Proceed with their Conspiracy Claims

As Mr. Sklanka did not, himself, commit any tortious or otherwise actionable conduct, Plaintiffs primarily argue that he is liable in civil conspiracy. *See* Dkt. No. 38 at 11-14. Counts One through Four of the Complaint all allege civil conspiracy as part of the underlying tort, pleading for each:

a) The defendants combined to conduct their campaign of harassment and abuse, which included numerous unlawful acts or lawful acts by unlawful means.

b) The defendants combined to perform these unlawful acts pursuant to their scheme to harass and abuse the plaintiffs and in furtherance of that scheme.

Complaint at ¶¶ 344, 345, 357, 358, 370, 371, 382 & 383. Plaintiffs also make general allegations that the defendants, presumably including Mr. Sklanka, "acted together to develop, disseminate, and propagate" the allegedly false statements. *Id.* at ¶¶ 84-85.

First, under Connecticut law, "there is no independent claim of civil conspiracy. Rather, the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself. Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Harp v. King*, 266 Conn. 747, 779 n.37 (2003) (internal citation and quotation marks omitted). As a result, a plaintiff must "allege the commission of a tortious act in furtherance of the conspiracy, which of course is necessary to establish liability for civil conspiracy, which is not an independent cause of action, but rather a separate legal basis upon which two or more persons can intentionally combine to commit an underlying legal wrong." *Weissman v. Koskoff, Koskoff & Bieder, P.C.,* No. HHDCV106012922S, 2011 Conn. Super. LEXIS 181, at *29 (Super. Ct. Jan. 19, 2011). As discussed above and in the Infowars Defendants' motion to dismiss, as well as those by Mr. Sklanka and Midas Resources, there are generally no substantive torts alleged that survive scrutiny.

Second, a conspiracy requires that "one or more persons, by express or tacit agreement, act in combination with another for a particular purpose or to attain a particular end." Harp, supra at 781. Notwithstanding even the putative amended complaint's claims as to Mr. Sklanka, the evidence of record (i.e. Mr. Halbig's affidavit) establishes that Mr. Sklanka was not party to any such agreement or combination.

Mr. Sklanka had no actual role in the websites. Merely driving Mr. Halbig in some unspecified manner does not create a conspiracy. Even if Mr. Sklanka were a cameraman as well and bothered some third parties at a church, there is no basis to suggest an agreement or

combination to achieve the purpose of harming Plaintiffs. The sole allegation of semi-specific conduct by Mr. Sklanka, the June 2, 2015, event at the church, does not mention Plaintiffs at all. Complaint at ¶ 60. In fact, the June 2, 2015 alleged incident appears nowhere in the so-called "Campaign of Abuse." *Id.* at ¶¶ 101–end.

Plaintiffs' case citations demonstrate the absence of a possible conspiracy claim against Mr. Sklanka. In *Miles v. Perry*, 11 Conn. App. 584, 608-09, 529 A.2d 199, 212 (1987), concert of action necessary to support a conspiracy to defame was found where:

> all of the defendants carefully organized, called, and orchestrated the church
> meeting, prepared the texts, which were then read by one or more of the defendants
> at the meeting, and selected the slides reproducing various checking transactions
> which were then shown at the meeting. Furthermore, all of the defendants spoke at
> the meeting and acted as a unified whole.

Mr. Sklanka took no similar actions regarding the statements of Mr. Halbig and the Infowars Defendants alleged in the Complaint. In *Rea v. Rubino*, No. HHDCV085019382S, 2010 Conn. Super. LEXIS 3390, at *3-4 (Super. Ct. Dec. 30, 2010), a claim for conspiracy to violate CUTPA was permitted to proceed where a hospital's staff allegedly helped a physician to modify records of medical malpractice; here, Mr. Sklanka had no similar granular involvement with the ultimate publications at issue. As Mr. Sklanka lacks the requisite concert of action, the conspiracy claim fails.

Plaintiffs have suggested they might replead to allege Mr. Sklanka's liability for aiding and abetting. *See* Dkt. No. 38 at 14 n. 4. Such fares no better. "To sustain a cause of action for aiding and abetting, a plaintiff is required to plead and prove: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of [its] role as part of an overall illegal or tortious activity at the time [it] provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Streeter v. Exec. Jet Mgmt.*, No. X01CV020179481S, 2004 Conn. Super. LEXIS 2304, at *5-6 (Super. Ct. June 29, 2004). Here, aside from the absence of a wrongful act by the other defendants, Mr. Sklanka did

not aid the Infowars Defendants. There is no basis to suggest Mr. Sklanka was aware of his role in the alleged torts by the Infowars Defendants when he drove Mr. Halbig (or even published his own article or podcasted). Finally, driving Mr. Halbig did not substantially assist the subsequent publications and statements at issue.

### 3.2.3 Plaintiffs' Claims Against Mr. Sklanka are Time-Barred

The last dated action attributed to Mr. Sklanka in the Complaint was June 2, 2015. *See* Dkt. No. 1-1 at ¶ 60. The action was commenced May 23, 2018. Thus, the claim for negligent infliction of emotion distress is barred by the two-year statute of limitations. *See Conn. Gen. Stat.* § 52-584. There is no reason why his identity could not have been found sooner, warranting application of the discovery rule. *See Geiger v. Carey*, 170 Conn. App. 459, 490 (2017). Similarly, the defamation claims also are time-barred under the two-year limitation of Conn. Gen. Stat. § 52-597.

As to the remaining claims, Infowars Defendants agree that a three-year statute of limitations applies. *Conn. Gen. Stat.* §§ 42-110g(f) & 52-577. However, there is no allegation Mr. Sklanka took any action between May 23, 2015 and June 2, 2015 that gives rise to liability for false light invasion of privacy, intentional infliction of emotional distress, or CUTPA. Notably, the June 2, 2015 event does not itself relate to any of the injuries claimed by Plaintiffs, who are not alleged to have even been present.

Plaintiffs claim the statute of limitations is tolled by the "continuing course of conduct" doctrine. Dkt. No. 38 at 10. As recently set forth by the Connecticut Supreme Court:

> The continuous course of conduct doctrine generally requires proof that the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty. Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such

a continuing duty or some later wrongful conduct of a defendant related to the prior

act.

*Bouchard v. State* Emples. Ret. Comm'n, 328 Conn. 345, 374-75, 178 A.3d 1023, 1039 (2018) (internal quotation marks and citations omitted). Setting aside the lack of an initial wrong, Mr. Sklanka owed no continuing duty after June 2, 2015, nor is there allegation of continual breach. There is no "special relationship", such as where the Plaintiffs were under Mr. Sklanka's control or there was a "close personal relationship", like an attorney-client relationship. *Id.* at 375.

Finally, Plaintiffs claim that the Complaint can broadly be read to include allegations regarding Mr. Sklanka through August 2016 regarding the SandyHookJustice.com website. Dkt. No. 38 at 10. They also claim they would amend the Complaint to include allegations regarding that website and the MonteFrank.com website, including publication of an article under a pseudonym on September 3, 2016. *Id.* at 20. However, the undisputed evidence, being the affidavit of Mr. Halbig, demonstrates that Mr. Sklanka was not involved in the websites, rendering that reading and amendment an exercise in futility.

### 3.3    Attorneys' Fees Should Not be Awarded

Assuming, arguendo, the Court remands the matter, fees should not be awarded. "Absent unusual circumstances" the plaintiff "may only recover attorney's fees if the 'removing party lacked an objectively reasonable basis for seeking removal.'" *CUSA, LLC v. Travelers, Co.,* No. 3:07-cv-00968 (JCH), 2007 U.S. Dist. LEXIS 76992, at *11 (D. Conn. Oct. 12, 2007) (Hall, U.S.D.J.) quoting *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005). Infowars Defendants had a more than objectively reasonable basis for removal.

As in CUSA, the allegations of wrongdoing against Mr. Sklanka are sparse. Plaintiffs do not make specific argument for individual, direct liability of Mr. Sklanka. Neither did his alleged actions appear akin to those warranting a finding of conspiracy. And, Plaintiffs recognize that the claims could be deemed time-barred, but for application of the continuing course doctrine. First, CUSA has not argued that any of its non-CUIPA/CUTPA claims has any traction against DRE. *See* CUSA's Mot. to Remand at 4-7. Second, although CUSA's Complaint could be read to allege

- 13 -

sufficient facts to state a CUIPA/CUTPA claim against DRE, the allegations of wrongdoing were sparse. It was not unreasonable for defendants to think that the Complaint alleged facts that were clearly insufficient to maintain a CUTPA claim.

Cases cited by Plaintiffs are inapposite. Fees were awarded in *Ritacco v. Whole Life, Inc.,* No. 3:09-cv-792 (VLB), 2010 U.S. Dist. LEXIS 76750, at *7 (D. Conn. July 29, 2010) where the issue involved a settled issue of federal preemption in the face of undisputed facts. Such is not the case here. In *Massad v. Greaves*, 554 F. Supp. 2d 163, 167 (D. Conn. 2008), fees were awarded where the removal was untimely, and no federal question lay. That, again, is not present here. Rather, as set forth in *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.* 512 F. App'x 485, 492 (6th Cir. 2013) (internal citations omitted)*:*

> There are cases where it is obvious, according to settled state-law precedent, that a particular defendant is not liable, and no fees are appropriate in that case because the remand action itself should be denied. On the other hand, there are cases where according to state-law precedent it is obvious that the defendant may be liable, and in that case a fraudulent joinder claim would be frivolous. In between there is a spectrum of cases. And…removal in some—but not all—of these in-between cases must be considered objectively reasonable.

Here, should the Court issue a remand order, this case should be deemed on that spectrum. Of note, the arguments made by the Infowars Defendants are supported by the objectively reasonable arguments of the other defendants in their motions to dismiss. Thus, the request for fees should be denied.

### 4.0     CONCLUSION

Mr. Sklanka is not a proper defendant. There are no possible claims against him. His improper presence in this case, as the driver of a man who made some statements that did not mention any plaintiff, cannot be used to defeat diversity jurisdiction. The motion to remand should be denied.

Dated: September 25, 2018.                    Respectfully submitted,

                                              /s/ Jay M. Wolman
                                              Jay M. Wolman, ct29129
                                              RANDAZZA LEGAL GROUP, PLLC
                                              100 Pearl Street, 14th Floor
                                              Hartford, Connecticut 06103
                                              Tel:  702-420-2001
                                              Fax:  305-437-7662
                                              ecf@randazza.com

                                              Marc J. Randazza, *pro hac vice* forthcoming
                                              RANDAZZA LEGAL GROUP, PLLC
                                              2764 Lake Sahara Drive, Suite 109
                                              Las Vegas, Nevada 89117
                                              Tel:  702-420-2001
                                              ecf@randazza.com

                                              Attorneys for Infowars Defendants

Case No. 3:18-cv-01156-JCH

## CERTIFICATE OF SERVICE

I hereby certify that, on this 25th day of September 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

Self-Represented Defendant

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

Representative for Defendant
Genesis Communications Network, Inc.


/s/ Jay M. Wolman
Jay M. Wolman

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ERICA LAFFERTY, *et al.*,        )

                             )      Case No: 3:18-cv-01156-JCH

      Plaintiffs,       )

                             )

vs.                        )

                             )

                             )

ALEX JONES, *et al.*,         )

                             )

      Defendants.       )

---

## HALBIG'S JOINDER IN OTHER DEFENDANTS' LEGAL ARGUMENTS

---

Defendant Wolfgang Halbig, pro se and in the first person henceforth, in response to the court's Order to Show Cause (Doc. 44), hereby joins in the legal argument of Cory Sklanka's "Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted" and Memorandum in support of that motion (Docs. 45 and 46, filed 8/6/18), as well as in the "Opposition to Motion to Remand" filed by the Jones Defendants on Sept. 25, 2018 (Doc. 51).

Dated this 26th day of September, 2018.

BY DEFENDANT HALBIG PRO SE:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776

1

## CERTIFICATE OF SERVICE

I certify, by my signature below, that I have served the foregoing "HALBIG'S JOINDER IN OTHER DEFENDANTS' LEGAL ARGUMENTS" on the other parties this 27 day of September, 2018, by email, and by depositing a copy in the U.S. mail postage prepaid, addressed as follows:

William M. Bloss, Esq.
Matthew S. Blumenthal, Esq.
Koskoff Koskoff & Bieder
350 Fairfield Ave.
Bridgeport, CT   06604

Jay Marshall Wolman (433791)
100 Pearl Street
14th Floor
Hartford, Ct 06103

Lawrence L. Connelli, Esq.
Regnier Taylor Curran & Eddy
100 Pearl Street
4th Floor
Hartford, Ct 06103

Wilson Elser Moskowitz Edelman & Dicker
1010 Washington Blvd
8th Floor
Stamford, Ct 06901





# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG, | : : : : : : : : : : | |
| Plaintiffs, | : | Case No. 3:18-cv-01156 |
| v. | : : : | September 28, 2018 |
| ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., | : : : : : : : : | |
| Defendants. | : | |

## <u>NOTICE OF ERRATA TO OPPOSITION TO REMAND [DKT. NO. 51]</u>

PLEASE TAKE NOTICE that on September 25, 2018, Defendants Alex Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, LLC (collectively, "Infowars Defendants") filed their Opposition to Motion to Plaintiffs' Motion to Remand. *See* Dkt. No. 51. The sentences in the last paragraph of page 13 beginning with the word "First", three lines up from the bottom, through the end of that paragraph on the top of page 14 should be ignored. They are an artifact of the drafting process, quoting the *CUSA* case referenced therein, that were intended to be excised prior to filing.

Dated: September 28, 2018.        Respectfully submitted,

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: 702-420-2001
ecf@randazza.com

- 2 -

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
ecf@randazza.com

*Attorneys for Infowars Defendants*

Case No. 3:18-cv-01156

## CERTIFICATE OF SERVICE

    I hereby certify that, on this 28th day of July 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

    I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

William M. Bloss
Matthew S. Blumenthal
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgebort, CT 06604
<wbloss@koskoff.com>
<mblumenthal@koskoff.com>

*Attorneys for Plaintiffs*

Stephen P. Brown
WILSON ELSER MOSKOWITZ
  EDELMAN & DICKER
1010 Washington Blvd., 8th Floor
Stamford, CT 06901
<stephen.brown@wilsonelser.com>

*Attorney for Defendant*
*Midas Resources, Inc.*

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

*Self-Represented Defendant*

Lawrence L. Connelli
REGNIER TAYLOR CURRAN & EDDY
100 Pearl Street, 4th Floor
Hartford, Connecticut 06103
<LConnelli@rtcelaw.com>

*Attorney for Defendant*
*Cory T. Sklanka*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*

/s/ Jay M. Wolman
Jay M. Wolman

- 3 -

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ERICA LAFFERTY, et al                           :
                                                :
                PLAINTIFFS,                      :
                                                :
        v.                                       :       Civil Action No.:
                                                :       3:18-cv-01156-JCH
                                                :
ALEX EMRIC JONES, et al                          :
                                                :
                DEFENDANTS.                       :

## DEFENDANT'S OPPOSITION TO MOTION TO REMAND

Defendant Midas Resources, Inc. ("Midas"), by and through its attorneys, Wilson Elser

Moskowitz Edelman & Dicker LLP, hereby respectfully opposes Plaintiffs' motion to remand

this matter to Superior Court for the State of Connecticut. Cory Sklanka had no part in the

alleged defamation and other claims asserted by Plaintiffs. Jurisdiction cannot be avoided by

simply naming him and claiming, unsupported by evidence, that he is liable.

## I.  PROCEDURAL HISTORY

On May 23, 2018, Plaintiffs executed a Summons and Complaint in the Connecticut

Superior Court in the Judicial District of Fairfield, at Bridgeport, alleging claims for 1) Invasion

of Privacy by False Light & Civil Conspiracy; 2) Defamation & Defamation per se & Civil

Conspiracy; 3) Intentional Infliction of Emotional Distress & Civil Conspiracy; 4) Negligent

Infliction of Emotional Distress & Civil Conspiracy; and 5) Violation of the Connecticut Unfair

Trade Practices Act, against the Infowars Defendants, Wolfgang Halbig, Midas Resources, Inc.,

Genesis Communications, Inc., and Cory Sklanka. *See* Dkt. No. 1-1. On July 13, 2018, the

Infowars Defendants filed a timely Notice of Removal of that action to this Court pursuant to 28

U.S.C. §§ 1332(a), 1441(a), & 1446. *See* Dkt. No. 1.

685250v.1

Although the Notice of Removal observed that Mr. Sklanka is a Connecticut citizen, defendants set forth that he was not properly joined as a defendant under 28 U.S.C. § 1441(b)(2) & 1446(b)(2)(A). *See id.* at ¶¶ 15 & 18. Plaintiffs filed a motion to remand and memorandum in support thereof, asserting that Mr. Sklanka was properly joined. *See* Dkt. Nos. 37 & 38. Plaintiffs' motion consisted entirely of argument based on allegations in their Complaint without any evidence in support thereof[1]. *See id.* Subsequently, Mr. Sklanka filed a motion to dismiss and memorandum in support thereof. *See* Dkt. Nos. 45-46. That motion expounds upon the arguments made by the Infowars Defendants in their Notice of Removal[2]. Mr. Halbig also filed an affidavit evidencing Mr. Sklanka's absence of liability. *See* Dkt. No. 47. Mr. Sklanka's motion and Mr. Halbig's affidavit show that Mr. Sklanka was joined as a defendant merely for driving Mr. Halbig, without making any contribution to the speech giving rise to Plaintiffs' claims.

## II. LEGAL STANDARD

Mr. Sklanka's Connecticut citizenship would defeat diversity of citizenship and require remand[3]. *See* 28 U.S.C. §§ 1332 & 1441. However, "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco. Inc.,* 138 F.3d 459, 460-61 (2d Cir. 1998). In *Pampillonia,* the Second Circuit set forth the test, stating that "[i]n order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has

Case 3:18-cv-01156-JCH   Document

---

[1] Pursuant to this Court's Orders of August 2, 2018 (Dkt. Nos. 42 & 43), Plaintiffs' obligation to respond to Mr. Sklanka's motion to dismiss appears stayed until 21 days after adjudication of the motion to remand. The Infowars Defendants, Midas Resources, and Mr. Halbig had also filed earlier motions to dismiss (Dkt. Nos. 11, 21, 22, 31, & 32), which are also stayed.

[2] To the extent applicable, the Infowars Defendants incorporate Mr. Sklanka's arguments by reference.

[3] Plaintiffs assert no basis other than citizenship of Mr. Sklanka in support of remand.

2

been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court."[4] *Id.* at 461.

As this Court has observed, "[i]n conducting a fraudulent joinder inquiry, courts can look beyond the pleadings to determine if the pleadings can state a cause of action" as this is a jurisdictional issue. *Read v. Nationwide Mut. Ins. Co,* No. 3-06-cv-00514 (JCH), 2006 U.S. Dist. LEXIS 68299, at *6 (D. Conn. Sep. 13, 2006) (Hall, U.S.D.J.; internal quotation marks and citation omitted); *Oliva v. Bristol-Myers Squibb Co.,* No. 3-05-cv-00486 (JCH), 2005 U.S. Dist. LEXIS 35881, at *7-8 (D. Conn. Dec. 15, 2005) (same). Here, the affidavit of Mr. Halbig (Dkt. No. 47), as well as the deficiencies of the Complaint, shows that Plaintiffs cannot state a claim against Mr. Sklanka. Thus, the motion to remand should be denied.

## III. ANALYSIS

### A. Plaintiffs' Allegations Do Not Give Rise to a Possible Claim

As set forth in the Notice of Removal, the allegations in the Complaint against Mr. Sklanka are limited:

> He is identified as working closely with defendant Halbig by acting as driver and camera operator and "on information and belief, participating in the operation of" a website and broadcasts. Complaint at ¶ 37. He allegedly "facilitated" Halbig and "assisted and was present with Halbig when he filmed and harassed children families," not identified as Plaintiffs, "on June 2, 2015." *Id.* at ¶ 60. He allegedly "acted as Halbig's driver, and actively facilitated [Halbig's] appearance on Infowars." *Id.* at ¶ 80. He is vaguely alleged to have somehow acted with other defendants to "develop, disseminate, and propagate" the allegedly false statements. *Id.* at ¶ 85. He is also allegedly a "servant, agent, apparent agent, employee, and/or joint venturer" of other defendants. *Id.* at ¶ 88.

Dkt. No. 1 at ¶ 19.

Case 3:18-cv-01156-JCH   Document 54   Filed 09/28/18   Page

---

[4] As correctly noted by Plaintiffs, Midas does not claim "outright fraud", only that there is no possibility a cause of action may be stated against Mr. Sklanka.

3

In their motion to remand, Plaintiffs highlight paragraphs 37, 59-72, 80, 85, 145-170, 189-219 of their Complaint, in their discussion of Mr. Sklanka specifically. *See* Dkt. No. 38 at 2-3. Other than paragraph 65 of the Complaint, which asserts Mr. Sklanka "participated" in Mr. Halbig's alleged videotaping outside St. Rose of Lima in Newtown, Connecticut, which was alleged in paragraph 60, none of the other paragraphs in the Complaint cited by Plaintiffs mention Mr. Sklanka or discuss any activities allegedly connected to him. *See* Dkt. No. 1-1 at ¶ 37.

Plaintiffs also assert that, if given the opportunity, they would amend their Complaint to assert that Mr. Sklanka "actively assisted" the operation of two websites (unrelated to the statements giving rise to the Complaint) through September 2016, that Mr. Sklanka "agreed with Halbig to facilitate Halbig's activities", that he knew those two websites had the alleged purpose of publishing allegedly defamatory material (i.e. the claim that the shooting was a hoax), that Mr. Sklanka posted an article on MonteFrank.com regarding two non-plaintiffs on September 3, 2016, that Mr. Sklanka allegedly broadcast now-deleted podcasts under a pseudonym (unrelated to the statements giving rise to the Complaint) regarding the hoax claim, and that Plaintiffs were unaware of Mr. Sklanka's role until the past year[5]. Dkt. No. 38 at 20-21.

Although Plaintiffs recognized that the Court may look beyond the pleadings, they offered no evidence in support of remand. *See* Dkt. No. 38 at 7 citing *Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.,* 448 F.3d 138, 150 (2d Cir. 2006). In contrast, the affidavit of Mr. Halbig presents clear and convincing evidence (and the only record evidence) that Mr. Sklanka cannot possibly be liable to Plaintiffs. As stated by Mr. Halbig:

Case 3:18-cv-01156-JCH  Document 21-1 Filed 11/16/18  Page 8

---

[5] Midas does not dispute that Plaintiffs may have an opportunity to amend. As discussed below, however, the putative amendments do not support remand.

685250v.1

a) Mr. Sklanka did not act as a cameraman for Mr. Halbig (Dkt. No. 47 at ¶ 1);

b) Mr. Sklanka had nothing to do with the SandyHookJustice.com website (*id.*); Mr. Sklanka co-hosted no broadcasts (*id.*);

c) Mr. Sklanka did not harass children at the church (*id.* at ¶ 2);

d) Mr. Sklanka did not videotape children at the church (*id.*);

e) Mr. Sklanka did not assist Mr. Halbig in running any website (*id.*);

f) Mr. Sklanka "had nothing to do" with Mr. Halbig's Infowars appearance (*id.* at ¶ 3); Mr. Sklanka did not act with Mr. Halbig in developing, disseminating or propagating any of the allegedly false statements (*id.* at ¶ 4);

g) Mr. Sklanka was not Mr. Halbig's agent, apparent agent, employee, servant, or joint venture at any time (*id.* at ¶ 5); and

h) Mr. Sklanka's sole relationship to Mr. Halbig was as a driver in Connecticut (*id.* at ¶¶ 1, 2 & 5).

Since Mr. Halbig filed his affidavit, Plaintiffs have not supplemented the record with any countervailing evidence. Thus, Mr. Halbig's affidavit is unrebutted.

### B. Plaintiffs Failed to State a Claim Against Mr. Sklanka

None of the five claims alleged against Mr. Sklanka are viable. As argued by Mr. Sklanka in his motion to dismiss (Dkt. Nos. 45 & 46), incorporated herein by reference, the Complaint is subject to dismissal as to him under Fed. R. Civ. P. 12(b)(6).

Case 3:18-cv-01156-JCH   Document 54   Filed 09/28/18   Page 1 of 14 **1.   Plaintiffs Make No Direct Claim Against Mr. Sklanka**

In their motion to remand, Plaintiffs do not address specific actions taken by Mr. Sklanka that directly give rise to claims for false light, defamation, or intentional or negligent infliction of

emotional distress. *See* Dkt. No. 38 at 14-16. Instead, all arguments discuss "defendants" as a whole. *Id.* First, there is no direct claim for false light invasion of privacy. "The definition of false light invasion of privacy is as follows: One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Allen v. Verizon Wireless*, 2013 U.S. Dist. LEXIS 80228, at *27 (D. Conn. June 6, 2013) (Hall, U.S.D.J.), quoting *Grigorenko v. Pauls*, 297 F. Supp. 2d 446, 448 (D. Conn. 2003). There is no allegation or evidence that Mr. Sklanka, himself, gave publicity to a matter concerning any Plaintiff. Driving Mr. Halbig around is not giving publicity to the Plaintiffs. Even if Plaintiffs were permitted to amend their complaint, they do not assert that Mr. Sklanka's alleged article gave publicity to any one of them.

Second, there is no direct claim for defamation. Under Connecticut law, in order "[t]o establish a prima facie case of defamation" a party "must demonstrate that: (1) [the defendant] published a defamatory statement; (2) this defamatory statement identified [the plaintiff] to a third person; (3) this defamatory statement was published to a third person; and (4) [the plaintiff's] reputation suffered injury as a result of the defamatory statement." *Simms v. Seaman*, 308 Conn. 523, 547-48, 69 A.3d 880 (Conn. 2013), quoting *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627-28 (Conn. 2009). There is no allegation or evidence that Mr. Sklanka, himself, published any statement, let alone a defamatory one, concerning any Plaintiff. Again, driving Mr. Halbig around is not publication. Even if Plaintiffs were permitted to amend their

Case 3:18-cv-01156-JCH   Document [illegible] 09/28/18 [illegible] 14

6

complaint, they do not assert that Mr. Sklanka's alleged article identified any one of them or that their reputation(s) suffered on account thereof.

Third, there is no direct claim for intentional infliction of emotional distress. To recover, Plaintiffs must prove that:

> (a) defendants intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of [its] conduct; (b) defendants' conduct was extreme and outrageous; (c) defendants' conduct caused the plaintiff's distress; and (d) the emotional distress suffered by the plaintiff was severe. The standard in Connecticut for conduct reaching the level of "extreme and outrageous" is defined as "that which exceeds all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."

*Mercer v. Brunt*, 272 F. Supp. 2d 181, 188, 2002 U.S. Dist. LEXIS 26561 (D. Conn. 2002) (citations omitted). Here, there is no factual basis to suggest Mr. Sklanka intended to inflict emotional distress or knew it was likely. Driving Mr. Halbig is neither extreme nor outrageous conduct. Even if Plaintiffs were permitted to amend, they have not identified specific statements or conduct of Mr. Sklanka that is extreme and outrageous. Instead, they make reference to hearsay about podcasts and articles that are not claimed to be extreme or outrageous. Dkt. No. 38 at pp. 20-21.

Fourth, there is no direct claim for negligent infliction of emotional distress against Mr. Sklanka. Under Connecticut law:

> [t]he elements of negligent infliction of emotional distress are: 1) that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; 2) the plaintiff's distress was foreseeable; 3) the emotional distress was severe enough that it might result in illness or bodily harm; and 4) the defendant's conduct was the cause of the plaintiff's distress.

*Adams v. Hartford Courant*, No. 3-03-cv-0477 (JCH), 2004 U.S. Dist. LEXIS 8546, at *14 (D. Conn. May 14, 2004) (Hall, U.S.D.J.) Mr. Sklanka driving Mr. Halbig did not create an unreasonable risk of causing Plaintiffs emotional distress and there is no basis that driving Mr.

7

Halbig caused Plaintiffs' distress. Even if Plaintiffs were to amend, neither the website nor podcasts created a foreseeable, unreasonable risk and there is no suggestion the Plaintiffs' distress was caused by either outlet.

Just as Mr. Sklanka is not liable at common law, he is not liable under CUTPA. The following factors, known as the "cigarette rule," determine whether a trade practice is unfair or deceptive:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least a penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen.

*Harris v. Bradley Memorial Hosp. and Health Center, Inc.*, 296 Conn. 315, 350 (2010). Although all three criteria need not be satisfied, at least one must. *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn. 602, 609-10, 119 A.3d 1139, 1143 (2015). Driving Mr. Halbig is neither unlawful nor unfair, nor is it inherently immoral, unethical, oppressive, or unscrupulous. And such driving could not have harmed Plaintiffs as consumers, competitors, or businessmen.

Moreover, Mr. Sklanka was not engaged in trade or commerce. That Mr. Sklanka may have even developed some of the alleged statements that were later disseminated by one or more of the other defendants for profit (as argued at Dkt. No. 38 at 17) does not place Mr. Sklanka in commerce. Plaintiffs' citation to *Nastro v. D'Onofrio*, 263 F. Supp. 2d 446 (D. Conn. 2003) is Case 3:18-cv-01156-JCH   Document 54   Filed 09/28/18   Page 8 of 14 inapposite. In *Nastro*, the conduct at issue was deemed in furtherance of prior conduct that was already adjudicated to be an unfair trade practice by one of those very same defendants. 263 F. Supp. 2d at 457-458. Here, Mr. Sklanka's driving of Mr. Halbig (or even alleged website and podcasting) had nothing to do with any trade or commerce by any other defendant.

<div align="center">8</div>

## 2. Plaintiffs Cannot Proceed with their Conspiracy Claims

As Mr. Sklanka did not, himself, commit any tortious or otherwise actionable conduct, Plaintiffs primarily argue that he is liable in civil conspiracy. *See* Dkt. No. 38 at 11-14. Counts One through Four of the Complaint allege civil conspiracy as part of the underlying tort. Complaint at ¶¶ 344, 345, 357, 358, 370, 371, 382 & 383. Plaintiffs also make general allegations that the defendants, presumably including Mr. Sklanka, "acted together to develop, disseminate, and propagate" the allegedly false statements. *Id.* at ¶¶ 84-85.

First, under Connecticut law, "there is no independent claim of civil conspiracy. Rather, the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself. Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Harp v. King*, 266 Conn. 747, 779 n.37 (2003) (internal citation and quotation marks omitted). As discussed above and in Midas' motion to dismiss, as well as those by co-defendants, there are generally no substantive torts alleged that survive scrutiny.

Second, a conspiracy requires that "one or more persons, by express or tacit agreement, act in combination with another for a particular purpose or to attain a particular end." *Harp*, supra at 781. Here, the evidence of record (Mr. Halbig's affidavit) establishes that Mr. Sklanka was not party to any such agreement or combination. Mr. Sklanka had no actual role in the websites. Merely driving Mr. Halbig in some unspecified manner does not create a conspiracy. Even if Mr. Sklanka were a cameraman as well, there is no basis to suggest an agreement or combination to achieve the purpose of harming Plaintiffs. The sole allegation of semi-specific conduct by Mr. Sklanka, the June 2, 2015, event at the church, does not mention Plaintiffs. Complaint at ¶ 60.

9

685250v.1

Plaintiffs' case citations demonstrate the absence of a conspiracy claim against Mr. Sklanka. In *Miles v. Perry*, 11 Conn. App. 584, 608-09, 529 A.2d 199, 212 (1987), action necessary to support a conspiracy to defame was found where:

> all of the defendants carefully organized, called, and orchestrated the church meeting, prepared the texts, which were then read by one or more of the defendants at the meeting, and selected the slides reproducing various checking transactions which were then shown at the meeting. Furthermore, all of the defendants spoke at the meeting and acted as a unified whole.

Mr. Sklanka took no similar actions. In *Rea v. Rubino*, No. HHDCV085019382S, 2010 Conn. Super. LEXIS 3390, at \*3-4 (Super. Ct. Dec. 30, 2010), a claim for conspiracy to violate CUTPA was permitted to proceed where a hospital's staff allegedly helped a physician to modify records of medical malpractice; here, Mr. Sklanka had no similar involvement with the publications at issue. As Mr. Sklanka lacks the requisite concert of action, the conspiracy claim fails.

Plaintiffs have suggested they might replead to allege Mr. Sklanka's liability for aiding and abetting. *See* Dkt. No. 38 at 14 n. 4. This would not pass muster. "To sustain a cause of action for aiding and abetting, a plaintiff is required to plead and prove: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of [its] role as part of an overall illegal or tortious activity at the time [it] provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Streeter v. Exec. Jet Mgmt.*, No. X01CV020179481S, 2004 Conn. Super. LEXIS 2304, at \*5-6 (Super. Ct. June 29, 2004). Here, aside from the absence of a wrongful act by the other defendants, Mr. Sklanka did not aid Midas in any manner. There is no basis to suggest Mr. Sklanka was aware of his role in the alleged torts when he drove Mr. Halbig (or even published his own article or podcasted). Finally, driving Mr. Halbig did not substantially assist the subsequent publications and statements at issue.

10

### 3. Plaintiffs' Claims Against Mr. Sklanka are Time-Barred

The last dated action attributed to Mr. Sklanka in the Complaint was June 2, 2015. *See* Dkt. No. 1-1 at ¶ 60. The action was commenced May 23, 2018. Thus, the claim for negligent infliction of emotion distress is barred by the two-year statute of limitations. *See* Conn. Gen. Stat. § 52-584. Similarly, the defamation claims also are time-barred under the two-year limitation of Conn. Gen. Stat. § 52-597.

As to the remaining claims, Midas agrees that a three-year statute of limitations applies. Conn. Gen. Stat. §§ 42-110g(f) & 52-577. However, there is no allegation Mr. Sklanka took any action between May 23, 2015 and June 2, 2015 that gives rise to liability or false light invasion of privacy, intentional infliction of emotional distress, or CUTPA. Notably, the June 2, 2015 event does not itself relate to any of the injuries claimed by Plaintiffs, who are not alleged to have even been present.

Plaintiffs claim the statute of limitations is tolled by the "continuing course of conduct" doctrine. Dkt. No. 38 at 10. As recently set forth by the Connecticut Supreme Court:

> The continuous course of conduct doctrine generally requires proof that the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty. Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act.

*Bouchard v. State Emples. Ret. Comm'n*, 328 Conn. 345, 374-75 (2018) (internal quotation

Case 3:18-cv-01156-JCH   Document 54   Filed 09/28/18   Page 11 of 14

marks and citations omitted). Setting aside the lack of an initial wrong, Mr. Sklanka owed no continuing duty after June 2, 2015, nor is there allegation of continual breach. There is no "special relationship", such as where the Plaintiffs were under Mr. Sklanka's control or there was a "close personal relationship", like an attorney-client relationship. *Id.* at 375.

11

Finally, Plaintiffs claim that the Complaint can broadly be read to include allegations regarding Mr. Sklanka through August 2016 regarding the SandyHookJustice.com website. Dkt. No. 38 at 10. They also claim they would amend the Complaint to include allegations regarding that website and the MonteFrank.com website, including publication of an article under a pseudonym on September 3, 2016. *Id.* at 20. However, the undisputed evidence, being the affidavit of Mr. Halbig, demonstrates that Mr. Sklanka was not involved in the websites.

## C. Attorneys' Fees Should Not be Awarded

Assuming, arguendo, the Court remands the matter, fees should not be awarded. "Absent unusual circumstances" the plaintiff "may only recover attorney's fees if the 'removing party lacked an objectively reasonable basis for seeking removal.'" *CUSA, LLC v. Travelers, Co.*, No. 3:07-cv-00968 (JCH), 2007 U.S. Dist. LEXIS 76992, at *11 (D. Conn. Oct. 12, 2007) (Hall, U.S.D.J.) quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Defendants had a more than objectively reasonable basis for removal.

Cases cited by Plaintiffs are inapposite. Fees were awarded in *Ritacco v. Whole Life, Inc.*, No. 3:09-cv-792 (VLB), 2010 U.S. Dist. LEXIS 76750, at *7 (D. Conn. July 29, 2010) where the issue involved a settled issue of federal preemption in the face of undisputed facts. Such is not the case here. In *Massad v. Greaves*, 554 F. Supp. 2d 163, 167 (D. Conn. 2008), fees were awarded where the removal was untimely, and no federal question lay. That, again, is not present here. Rather, as set forth in *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.* 512 F. App'x 485, 492 (6th Cir. 2013) (internal citations omitted):

> There are cases where it is obvious, according to settled state-law precedent, that a particular defendant is not liable, and no fees are appropriate in that case because the remand action itself should be denied. On the other hand, there are cases where according to state-law precedent it is obvious that the defendant may be liable, and in that case a fraudulent joinder claim would be frivolous. In

12

between there is a spectrum of cases. And…removal in some—but not all—of these in-between cases must be considered objectively reasonable.

Here, should the Court issue a remand order, this case should be deemed similar and the request for fees should be denied.

## IV.  CONCLUSION

Mr. Sklanka is not a proper defendant. There are no possible claims against him. His improper presence in this case, as the driver of a man who made statements that did not mention any plaintiff, cannot be used to defeat diversity jurisdiction. The motion to remand should be denied.

Dated:  Stamford, Connecticut
        September 28, 2018

Respectfully Submitted,

Wilson Elser Moskowitz Edelman & Dicker LLP

By:/s/ Stephen P. Brown
        Stephen P. Brown (ct19876)
*Attorneys for Defendant*
*Midas Resources, Inc.*
1010 Washington Boulevard
Stamford, Connecticut 06901
Telephone No.: (203) 388-9100
Facsimile No.: (203)388-9101
Stephen.Brown@wilsonelser.com

Case 3:18-cv-01156-JCH   Document 54   Filed 09/28/18   Page 13 of 14

13

685250v.1

CERTIFICATE OF SERVICE

I hereby certify that September 28, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Wolfgang Halbig 25526 Hawks Run Lane
Sorrento, FL 32776
wolfgang.halbig@comcast.net
*Self-Represented Defendant*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
t.anderson@gcnlive.com
*Representative for Defendant*
*Genesis Communications Network, Inc.*

By:/s/ Stephen P. Brown
    Stephen P. Brown (ct19876)
Wilson Elser Moskowitz Edelman
    & Dicker LLP
1010 Washington Boulevard
Stamford, Connecticut 06901
Telephone No.: (203) 388-9100
Facsimile No.: (203)388-9101
Stephen.Brown@wilsonelser.com

14

685250v.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:18-cv-01156-JCH |
| | ) | |
| v. | ) | |
| | ) | |
| ALEX JONES, *et al.*, | ) | October 9, 2018 |
| | ) | |
| Defendants. | ) | |

### PLAINTIFFS' MOTION FOR EXTENSION OF TIME

Pursuant to Federal Rule of Civil Procedure 6(b) and District of Connecticut Local Rule 7(b), the plaintiffs move for a seven-day extension of the time allowed for them to file their brief in reply to the defendants' memoranda in opposition to remand (Doc. 51, 52, 54), until October 19, 2018. In support, the plaintiffs state:

(1)     On July 13, 2018, Defendants removed Lafferty, et al. v. Jones, et al., Case No. FBT-CV18-6075078-S from the Superior Court, Judicial District of Fairfield at Bridgeport, Connecticut, ("Lafferty Case") to this Court (Case No. 3:18-cv-01156), on the basis of diversity jurisdiction, asserting improper joinder of Defendant Corey Sklanka;

(2)     On July 31, 2018, the plaintiffs in the Lafferty Case filed a motion to remand (Lafferty Case, Doc. 37), with a deadline to respond of August 21, 2018;

(3)     On August 2, 2018, the Court issued an Order to Show Cause in the Lafferty Case (Lafferty Case, Doc. 44), setting the response deadline of August 29, 2018 (with a September 12, 2018 reply deadline);

1

(4)     The Court also stayed the deadline to respond to the pending dispositive motions in the Lafferty Case until 21 days following disposition of the motion to remand (Lafferty Case, Dt. No. 43);

(5)     In related litigation, Defendants removed Sherlach v. Jones, et al., Case No. FBT-CV18-6076475-S, from the Superior Court, Judicial District of Fairfield at Bridgeport, Connecticut, ("Sherlach Case") to this Court (Case No. 3:18-cv-01269), on the same basis;

(6)     On August 15, 2018, Mr. Sherlach filed a parallel motion to remand the Sherlach Case (Sherlach Case, Doc. 28), with a deadline to respond of September 5, 2018;

(7)     That same day, Mr. Sherlach filed a motion for extension of time and for entry of scheduling order, Sherlach Case, Doc. No. 27, seeking to harmonize the briefing schedules in the two cases.

(8)     On August 17, 2018, this Court granted the plaintiffs' motion for extension of time and accepted the proposed harmonized briefing schedules. Sherlach Case, Doc. 31.

(9)     That same day, the Infowars defendants moved for a 30-day extension of time in which to file their opposition to the plaintiffs' motion to remand. Lafferty Case, Doc. 48. Defendant Midas Resources, Inc., joined in that motion on August 21, 2018. Lafferty Case, Doc. 49.

(10)    On August 21, 2018, the Infowars defendants moved for a 30-day extension of time in which to file their opposition to the plaintiffs' motion to remand in the Sherlach case. Sherlach Case, Doc. 48.

(11)    On August 23, 2018, this Court granted defendants' motions for 30-day extensions of time in which to file their oppositions to remand, setting a new deadline of

September 28, 2018 (with an October 12, 2018 reply deadline). Lafferty Case, Doc. 50; Sherlach Case, Doc. 35.

(12)     The Infowars Defendants filed their oppositions to remand on September 25 and September 28, 2018. Sherlach Case, Doc. 38; Lafferty Case, Doc. 51. Defendants Wolfgang Halbig and Midas Resources, Inc. filed their oppositions to remand on September 28, 2018. Lafferty Case, Doc. 52, 54; Sherlach Case, Doc. 37, 39. The Infowars defendants filed a Notice of Errata on September 28, 2018. Lafferty Case, Doc. 53.

Due to the conflicts and obligations of counsel for the plaintiffs, an extension of seven days from the current deadline in the Lafferty and Sherlach cases is warranted. The plaintiffs will file an omnibus brief in reply to the defendants' several memoranda in opposition to the motion to remand. During the previously scheduled period, plaintiffs' counsel has had to (and continues to) devote significant time to preparation of expedited briefing and oral argument before the Connecticut Supreme Court.

Pursuant to Local Rule 7.1(b)(2), the movants have inquired of all non-moving parties' positions. Defendants Midas Resources and Sklanka are agreed. The Infowars defendants and defendant Genesis Communications Network, Inc. "do not object in principle." Despite diligent effort, including making the inquiry in sufficient time to afford nonmovant a reasonable opportunity to respond, the movant has been unable to ascertain the position of defendant Wolfgang Halbig. (Defendant Halbig has not responded to the plaintiffs' counsel's email inquiry, although he has sent plaintiffs' counsel other unrelated email in the interim.)

This is the first motion for extension of time filed by the movants with respect to this time limitation.

WHEREFORE the plaintiffs respectfully request that the deadline to reply to the defendants' oppositions to remand be extended to October 19, 2018.

For the foregoing reasons, plaintiffs request their Motion be granted.

THE PLAINTIFFS,

**Respectfully submitted,**

By   **/s/ William Bloss, ct01008**
      **WILLIAM BLOSS, ct01008**
      **MATTHEW S. BLUMENTHAL, ct30448**
      KOSKOFF KOSKOFF & BIEDER
      350 FAIRFIELD AVENUE
      BRIDGEPORT, CT 06604
      bbloss@koskoff.com
      mblumenthal@koskoff.com
      Telephone:    (203) 336-4421
      Fax:        (203) 368-3244

      **ATTORNEYS FOR PLAINTIFFS**

4

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2018, a copy of the foregoing Motion was filed

electronically and served by mail on anyone unable to accept electronic filing.  Notice of this

filing will be sent by e-mail to all parties by operation of the court's electronic filing system or

by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic

Filing.  Parties may access this filing under the court's CM/ECF System.

<p style="text-align:right">_____/s/ William M. Bloss, ct01008_____<br>
**WILLIAM M. BLOSS, ct01008**<br>
**MATTHEW S. BLUMENTHAL, ct30448**</p>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:18-cv-01156-JCH & |
| | ) | 3:18-cv-01269-JCH |
| v. | ) | |
| | ) | |
| ALEX JONES, *et al.*, | ) | October 19, 2018 |
| | ) | |
| Defendants. | ) | |

<u>PLAINTIFFS' OMNIBUS REPLY TO DEFENDANTS' OPPOSITIONS TO REMAND</u>
<u>(Lafferty Dkt. 51, 52, 54; Sherlach Dkt. 37, 38, 39)</u>

The defendants "must demonstrate, by clear and convincing evidence . . . that there is *no possibility*, based on the pleadings, that a plaintiff can state a cause of action against [Sklanka] in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1991) (emphasis added). Rather than meeting this "heavy burden," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011), they hinge their claims on an affidavit that, to the extent it is at all credible, strengthens the plaintiffs' claims; cite no case even arguably foreclosing Sklanka's liability for *any* of the plaintiffs' claims; and make merits arguments that have no place in this remand analysis. The Court lacks jurisdiction, and the case must be remanded.

**I.      Defendant Halbig's Affidavit Should Not Be Considered and In Any Event Confirms the Plaintiffs' Claims**

As a general matter, "where *jurisdictional facts* are placed in dispute," a court may "decide issues of fact by reference to evidence outside the pleadings." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (emphasis added) (citations omitted). But for fraudulent joinder, that inquiry is limited to jurisdictional facts only: "a district court must not step 'from the threshold jurisdictional issue into a decision on the merits.'" *In re Briscoe*, 448 F.3d 201, 219 (3d Cir. 2006) (noting that "a district court must accept any well-

1

pleaded allegations as true" and suggesting evidence for statute-of-limitations inquiry should be of similar reliability to that "subject to judicial notice"); Charles Wright & Arthur Miller, 13F *Fed. Prac. & Proc. Juris.* § 3641.1 n.25 (3d ed. 2018) (collecting cases for same).

Evidence outside the pleadings should be considered in fraudulent joinder analysis only if, "based on the pleadings," it demonstrates there is "no possibility" a plaintiff can state any claim. *Pampillonia*, 138 F.3d at 461.[1] A rebuttal of the pleadings does not do the trick: "[i]n a fraudulent joinder inquiry, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Deming v. Nationwide Mut. Ins. Co.*, 2004 WL 332741, *4 (D. Conn. Feb. 14, 2004) (quoting *Pacheco De Perez,* 139 F.3d 1368, 1380–81 (11th Cir. 1998).

An affidavit that simply refutes some allegations (and corroborates others) impermissibly invites the Court to determine the merits of the plaintiffs' allegations. "A 'defendant may not use removal proceedings as an occasion to adjudicate the substantive issues of a case.'" *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 329 (S.D.N.Y. 2007) (Sullivan, J.) (disregarding evidence proffered in support of fraudulent joinder) (quoting Wright & Miller, 14C *Fed. Prac. & Proc. Juris.* § 3721); *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 182 (S.D.N.Y. 2003) (Lynch, J.) (refusing to consider whether claim properly alleged in fraudulent joinder analysis). It is enough that the pleadings could possibly state a cause of action—the court should not weigh affidavits or other evidence against those pleadings.

This rule derives from two concerns. First, "because the effect of removal is to deprive the state court of jurisdiction over a case properly before the state court, removal raises

---

[1] While *Pampillonia* addressed affidavits from the plaintiff and defendant on a merits issue, it was the *plaintiff* that urged their consideration there (his pleadings alleged nothing about RJR Nabisco except its citizenship). The Court found the plaintiff's affidavit legally insufficient, rejected fact-finding, and noted the case could be decided on the pleadings. 138 F.3d at 461 n.5.

federalism concerns that mandate strict construction[.]" *Deming*, 2004 WL 332741 at *1 (quoting 16 *Moore's Federal Practice,* § 107.05 (3d ed. 2002)). Second, "[28 U.S.C. §] 1359 . . . expresses a policy against the creation of federal jurisdiction and not against its avoidance." *McSparran v. Weist*, 402 F.2d 867, 875 (3d Cir. 1968) (citations omitted). That's why courts have suggested that evidentiary inquiries into jurisdictional facts are best kept to the "outright fraud" species of fraudulent joinder—the "cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*). Certainly, adjudicating merits issues during remand proceedings does not serve judicial economy. See *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586 (1999) (concerns for "a State's dignitary interest," "judicial economy," and "restraint" guide remand decisions).

Considering Halbig's affidavit, as the defendants urge, Defs.' Opp. to Remand 4–6, Lafferty Dkt. 51,[2] would roundly violate this rule. Halbig's affidavit denies a number of the substantive allegations against Sklanka. It denies Sklanka assisted Halbig in camera work, website operation, or co-hosting broadcasts. See Halbig Aff. ¶ 1, Doc. 47. It denies Halbig and Sklanka did (at all) several acts alleged. *Id.* ¶¶ 2–5. It is a broadside against the Complaint's substantive allegations of Halbig and Sklanka's coordinated activities. As a result, it is well outside the jurisdictional fact-finding inquiry appropriate for remand proceedings.

Ironically, Halbig's affidavit does not advance the defendants' burden to preclude any possibility the plaintiffs can state a claim against Sklanka—it undercuts it. It confirms that Sklanka "did drive [Halbig] when [he] came to Connecticut." Halbig Aff. ¶ 1. It further states that Sklanka "drove [Halbig] around free of charge, in [Sklanka's] own vehicle." *Id.* ¶ 5. The

---

[2] This Memorandum cites exclusively to the Infowars Defendants' Opposition to Remand, Lafferty Dkt. 51, both for brevity's sake and because it contains all defense arguments.

affidavit does not rebut that Sklanka's driving facilitated Halbig's development and propagation of Sandy-Hook-related lies. That Sklanka regularly drove Halbig for free around Connecticut in his own car suggests Sklanka understood Halbig's purpose there and sought to further it, just as the plaintiffs allege.[3]

If they do conduct jurisdictional fact-finding, as it would be doing if it considered affidavits, district courts "should take care to 'give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'"[4] *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)). Here, that inquiry would require significant documentary and forensic discovery into the merits of the case against Sklanka and others. It would require: written discovery and depositions of at least Sklanka and Halbig; discovery of videos and podcasts they created (and deleted or blocked); forensic computer investigation to determine whether Sklanka operated the alleged websites; third-party discovery of now-deleted videos; and/or transactions conducted while the two "drove . . . around" Connecticut. This sort of discovery is clearly inappropriate for remand proceedings, and exactly kind of the adjudication of the merits precluded by the rule discussed above. The case should be remanded based on the pleadings.

Finally, to find Halbig's affidavit "clear and convincing," this Court would have to find it credible. And Halbig's credibility is not exactly unblemished. For one thing, this very suit is about his years-long (and ongoing) public campaign of outrageous lies. Just as importantly, the plaintiffs already possess evidence belying his averments. To substantiate this point, the

---

[3] Sklanka may be found liable for acting as Halbig's driver with sufficient understanding of the objective or effect of Halbig's activities. See Part II of this Memorandum

[4] The plaintiffs have not "forfeited" any right to jurisdictional discovery. Defs.' Opp. 6. Discovery is unnecessary and inappropriate here. Moreover, as the defendants noted, discovery is stayed in this case; where jurisdictional discovery is appropriate, it is directed by the court. See generally *Potter*, 343 F.3d at 627. Finally, the defendants' complaint about the time elapsed is a bit rich—the cause was their own 30-day extension.

plaintiffs have submitted Plaintiffs' Exhibit A, which provides evidence of videos contradicting Halbig's claims that Sklanka "did not have a camera," "never touched a camera in [Halbig's] presence," and participated in no SandyHookJustice.com broadcasts. Halbig Aff. ¶ 1.

**II.     The Defendants Come Nowhere Close to Establishing by Clear and Convincing Evidence There Is No Possibility Sklanka Is Liable for Civil Conspiracy or Any Underlying or Direct Tort**

The crux of the defendants' argument that the plaintiffs cannot state a claim against defendant Sklanka is that his alleged actions were insufficient to give rise to liability for civil conspiracy or an underlying tort. This argument relies on stripping Sklanka's actions of context, misinterpreting the law of civil conspiracy, and inaccurate representations. What the defendants' arguments do *not* rely on is equally notable: they fail to cite a single case precluding liability.

**A.  The Plaintiffs State Strong Civil-Conspiracy Claims Against Sklanka**

The defendants' argument that Sklanka lacked the "requisite concert of action" or "granular involvement" for civil-conspiracy or aiding-and-abetting liability, Defs.' Opp. to Remand 11, is meritless. A civil conspiracy claim "impose[s] civil liability for damages on those who agree to join in a tortfeasor's conduct and, thereby, become liable for the ensuing damage, simply by virtue of their agreement to engage in the wrongdoing." *Macomber v. Travelers Prop. & Cas. Corp.*, 277 Conn. 617, 636–37 (2006). No special character or level of "granular involvement" is required; it is agreement and concerted action that give rise to liability. See *Talit v. Peterson*, 44 Conn. Supp. 490, 493 (Super. Ct. 1995) (describing archetypal civil-conspiracy fact-pattern where persons who "block [the plaintiff's] escape" are equally liable for assault as those punching and kicking him (citing *Lamb v. Peck*, 183 Conn. 470, 472 (1981))).

Actions blameless in the abstract, like driving, camera operation, website operation, and other logistical facilitation, may give rise to civil-conspiracy liability when done as part of an agreement to effectuate an improper purpose. See, *e.g.*, *Mar. v. Bricklayers' & Plasterers' Union*

5

*No. 1*, 79 Conn. 7 (Conn. 1906) (union conspired illegally in charging $100 extra for bricks to compensate for plaintiff's having previously purchased non-union bricks on earlier occasion); *Gardner v. Preston*, 2 Day 205, 206 (Conn. 1805) (transporting money created liability for civil conspiracy). Indeed, a person may incur civil-conspiracy liability, literally, by doing *nothing*— even without a duty to do anything. See *Governors Grove Condo. Ass'n, Inc. v. Hill Dev. Corp.*, 36 Conn. Supp. 144, 154 (Super. Ct. 1980) (citing cases for principle that defendant may be liable for conspiracy not to disclose defects regardless of their own duty to disclose).

The agreement need not be alleged or proved in any specific way. "[I]t is not necessary to establish that the defendant and his coconspirators signed papers, shook hands, or uttered the words we have an agreement." *Am. Diamond Exch., Inc. v. Alpert*, 101 Conn. App. 83, 100–01 (2007) (citation omitted). Indeed, "the requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts." *Id.* (evidence one defendant "did not stop activity in [defendants'] joint account" sufficient to sustain his civil-conspiracy verdict). There is good reason for this policy: "conspiracies, by their very nature, are formed in secret and only rarely can be proved otherwise than by circumstantial evidence." *Id.* (citation omitted).

It is hard to imagine a jury finding that Sklanka conducted his coordinated activities and support with any purpose *other* than furthering Halbig's outrageous lies about the plaintiffs. The Complaint demonstrates Sklanka knew Halbig's purpose in Connecticut was to further his Sandy-Hook-related harassing and defamatory activities. As alleged in the Complaint, Halbig was famous for them—indeed, mass-shooting hoaxing is the *only* thing for which he was known. See Compl. ¶¶ 37, 58–85. We know from Sklanka's podcasts, videos, and other broadcasts with Halbig that Sklanka was intimately familiar with Halbig's objectives and shared the same interests. *Id.* ¶ 37. Halbig's websites, which Sklanka allegedly helped operate, were filled with

6

outrageous and harmful lies about the plaintiffs. *Id.* ¶ 71; Pls.' Mot. to Remand 20 (proposed additional website allegations for remand). There is little doubt Sklanka allegedly facilitated Halbig's activities, including his visits to Connecticut, with the purpose of assisting him in his campaign of outrageous lies about the plaintiffs. Compl. ¶¶ 37, 58–85. The already-existing allegations and evidence, both direct and circumstantial, point inexorably toward the conclusion that Sklanka assisted Halbig pursuant to an agreement to promote Halbig's tortious activities.

### B. The Plaintiffs State Strong Direct Tort Claims Against Sklanka

The defendants' arguments regarding the direct claims against Sklanka are similarly meritless. The plaintiffs largely rest upon the law and argument in their memorandum in support of remand. But it bears noting: a jury could easily find that Sklanka actively assisted in the operation of the websites in posting the outrageous, hurtful, defamatory lies about the plaintiffs included in the complaint, Compl. ¶ 37, or the proposed added allegations, Pls.' Mot. to Remand 20, and him thereby liable for all the torts alleged. Other actions may trigger the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. §§ 42-110a, *et seq.*, as well.

Because fraudulent joinder cannot rest on a common defense that applies equally to all defendants, the defendants' one-sentence attempt to incorporate by reference their motions to dismiss should be ignored. See *Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 153–54 (1914) (holding arguments with effect that case is "ill founded as to all the defendants" are "[p]lainly . . . not such a showing" sufficient for fraudulent joinder); *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990) (following *Cockrell* for same rule); *Smallwood*, 385 F.3d at 575 (same); *Intershoe, Inc. v. Filanto S.P.A.*, 97 F. Supp. 2d 471, 475 (S.D.N.Y. 2000) (Wood, J.) (same). Applying the rule accords with the principle that, "in light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts

7

against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013).

The defendants argue Sklanka cannot be liable for any potentially tortious statements whose publication he allegedly made or facilitated on the websites SandyHookJustice.com and MonteFrank.com.[5] Defs.' Opp. to Remand 4, 7. This argument is discarded easily enough: it depends on the defendants' representation that those the statements did not concern plaintiffs in this case. *Id.* That representation is false. In fact, the statements published on those websites concerned plaintiffs Jeremy Richman, Jennifer Hensel, David Wheeler, and William Aldenberg. See Compl. ¶ 71; Pls.' Mot. to Remand 20. The defendants' contention that these allegations are "unrelated to the statements giving rise to the complaint" is equally baffling. Defs.' Opp. 4. They *are* tortious publications giving rise to the complaint. There is no basis to state otherwise.[6] To the extent Sklanka published or facilitated the publication and propagation of these statements, he may be held liable for the damages flowing from them.

The defendants attempt to eliminate the remaining allegations by divesting them of any context and ignoring inconvenient allegations. Defs.' Opp. 6–9. To state the obvious, "[c]ontext matters." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) (explaining importance of context in employment-related tort law). It is a fundamental principle of law that actions blameless in the abstract may give rise to liability when done in an improper manner or with an improper objective or effect. (Just ask the getaway driver in a bank robbery.) When considered in the proper context—that Sklanka knew that the purpose and effect of his actions was to assist and promote the spread of outrageous, hurtful, and defamatory lies about the plaintiffs, who were particularly vulnerable to such behavior, Compl. ¶¶ 37, 58–85—Sklanka's

---

[5] The defendants concede the plaintiffs may amend the complaint to include the proposed MonteFrank.com allegations on remand and that this rule is relevant to the remand analysis. Defs.' Opp. 4 n.5. They merely claim those additional allegations would be futile. *Id.*

[6] That those allegations were placed in a particular section for narrative effect is of no moment; each claim for relief incorporated all foregoing allegations.

wrongdoing is actionable. The defendants fail to cite a single case holding otherwise, let alone proving such a claim impossible by clear and convincing evidence.

Finally, the plaintiffs state strong CUTPA claims against Sklanka. Putting aside all Sklanka's other alleged actions assisting Halbig's promotion of his outrageous, hurtful, and defamatory lies about the plaintiffs, acting as Halbig's driver could give rise to CUTPA liability. Halbig used his enterprise to raise over $100,000 from people supporting his and Sklanka's activities. Compl. ¶ 63. Even if Halbig never distributed any of these funds to Sklanka, Sklanka performed functions essential to Halbig receiving them. *Id.* ¶¶ 37, 58–85. (It also seems likely that Halbig and Sklanka spent these funds in their activities in Connecticut—that was, after all, their purpose.) As alleged in the complaint, spreading lies about Sandy Hook and harassing the plaintiffs was a trade or business—and a lucrative one. *Id.* ¶¶ 63, 90–100. Sklanka participated in a scheme to do just that, for which at least Halbig, his associate, received money. *Id.* ¶¶ 37, 58–85. This is more than enough for "trade or commerce" in the CUTPA context. See *Willow Springs Condominium Ass'n, Inc. v. Seventh BRT Development Corp.*, 245 Conn. 1, 42 (1998) ("Trade or commerce [under CUTPA] . . . is broadly defined as . . . the distribution of any services . . . or thing of value in this state.").

Moreover, driving Halbig with the purpose of assisting his activities (let alone other logistical facilitation or promotion of lies and harassment) would "offend[] public policy" by being "within at least a penumbra of [an] . . . established concept of unfairness" and "immoral, unethical, oppressive, or unscrupulous." *Am. Car Rental, Inc. v. Comm'r of Consumer Prot.*, 273 Conn. 296, 305 (2005). The defendants do not provide a single case suggesting otherwise. It's no mystery why: CUTPA "must be liberally construed" because it "reflects a public policy that favors remedying wrongs that may not be actionable under other bodies of law." *Willow Springs*, 245 Conn. at 42.

**III.** **The Defendants Come Nowhere Close to Establishing by Clear and Convincing Evidence that there Is No Possibility the Plaintiffs' Claims Against Sklanka Meet the Statute of Limitations**

A cursory glance at the Complaint and the proposed additional allegations reveals there is no basis for the defendants' statutes-of-limitations defense, let alone one meeting the high bar for fraudulent joinder. First, at least the allegations about Sklanka's role in operating Halbig's websites meet *all* the relevant statutes of limitations. Others, including that Sklanka assisted in logistical facilitation and podcasts, meet the three-year statutes of limitations for the claims of intentional infliction of distress, invasion of privacy by false light, and CUTPA.

Even if this were not true, the defendants cannot disprove that the continuing course of conduct doctrine tolls the plaintiffs' claims. Incorrectly insisting the plaintiffs must show a "special relationship giving rise to a continuing duty," Defs.' Opp. 12–13, they list only one option for invoking the doctrine—the one primarily addressed to cases where defendants' *in*action caused the wrong. *Flannery v. Singer Asset Fin. Co., LLC*, 312 Conn. 286, 311–13 (2014). The other, of course, is "some later wrongful conduct of a defendant related to the prior act." *Id.* The latter—repeated related wrongful acts, only some within the statute of limitations— is the doctrine's archetypal fact pattern, and the one that applies here. See *Giglio v. Connecticut Light & Power Co.,* 180 Conn. 230, 429 A.2d 486 (1980) (continuous course of conduct because installer gave repeated instructions); 12 *Conn. Prac., Unfair Trade Practices* § 5.3 (collecting cases). Finally, the defendants offer no reason whatsoever why the plaintiffs should have discovered Sklanka's actions, which were done pseudonymously and often with affirmative concealment of his identity, earlier. See Defs.' Opp. 12.

**IV.** **Conclusion**

For all the foregoing reasons, this case must be remanded to Connecticut Superior Court.

**Respectfully submitted,**

By    **/s/ William Bloss, ct01008**
       **WILLIAM BLOSS, ct01008**
       **MATTHEW S. BLUMENTHAL, ct30448**
       KOSKOFF KOSKOFF & BIEDER
       350 FAIRFIELD AVENUE
       BRIDGEPORT, CT  06604
       bbloss@koskoff.com
       mblumenthal@koskoff.com
       Telephone:    (203) 336-4421
       Fax:        (203) 368-3244

       **ATTORNEYS FOR PLAINTIFFS**

11

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2018, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing under the court's CM/ECF System.

<div align="right">

     /s/ William M. Bloss, ct01008

**WILLIAM M. BLOSS, ct01008**
**MATTHEW S. BLUMENTHAL, ct30448**

</div>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERICA LAFFERTY, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:18-cv-01156-JCH & |
| | ) | 3:18-cv-01269-JCH |
| v. | ) | |
| | ) | |
| ALEX JONES, *et al.*, | ) | October 19, 2018 |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF MATTHEW S. BLUMENTHAL

1.      My name is Matthew S. Blumenthal. I am over the age of 18 and believe in the obligation of an oath. I submit this affidavit in support of Plaintiffs' Motion to Remand, and in particular to show both the Halbig Affidavit's potential falsity and the breadth of discovery required to respond to it fully.

2.      Defendant Wolfgang Halbig filed an affidavit in this case stating that defendant Cory T. Sklanka "did not operate any camera; he did not have a camera; he has never touched a camera in my presence." Halbig Aff. ¶ 1, Dkt. 47, Aug. 8, 2018. It also states that Sklanka "has had nothing to do with SandyHookJustice.com, nor has he co-hosted any broadcasts with [Halbig]." *Id.*

3.      Having reviewed images and video of Sklanka where he is identified by name, to the best of my knowledge and ability, Sklanka appears to be depicted in the still images in Plaintiffs' Exhibit A. He is identified by a red circle. Halbig is identified by a yellow circle.

4.      The still images depicted in Plaintiffs' Exhibit A are taken from video recordings in the possession of the plaintiffs depicting the Connecticut Freedom of Information Act hearing of April 2015 regarding defendant Halbig's information requests related to the Sandy Hook shooting.

5.      The still images (and videos) depicted in Plaintiffs' Exhibit A depict Sklanka acting as a camera operator, recording defendant Halbig and the hearing in Halbig's presence.

6.      The plaintiffs also possess audiovisual evidence that Sklanka co-hosted and/or participated in SandyHookJustice.com podcasts and/or other podcasts with Halbig.

7.      If this Court decides to consider the Halbig Affidavit, the plaintiffs will play the videos depicted in Plaintiffs' Exhibit A for the Court at the hearing on remand.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on October 19, 2018.

_____
Matthew S. Blumenthal

STATE OF CONNECTICUT           )
CITY OF ~~BRIDGEPORT~~ Stamford  ) ss.
COUNTY OF FAIRFIELD            )

Subscribed and sworn before me this 19th day of October, 2018, by Matthew S. Blumenthal.

WITNESS MY OFFICIAL SEAL:

_____
Notary Public

My commission expires: 03.31.2023

ANDREEA PAMINT
*NOTARY PUBLIC*
MY COMMISSION EXPIRES MARCH 31, 2023

# PLAINTIFFS' EXHIBIT A











**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 3:18-CV-1156 (JCH) |
| v. | : | |
| | : | |
| ALEX EMERIC JONES, et al., | : | NOVEMBER 5, 2018 |
| Defendants. | : | |

**RULING RE: MOTION FOR REMAND (DOC. NO. 37)**

## I.     INTRODUCTION

Before the court is plaintiffs' Motion to Remand (Doc. No. 37).  In addition,

plaintiffs seek an award of attorney's fees.  Defendants argue that the Motion to

Remand should be denied because plaintiffs fraudulently joined a non-diverse party to

defeat diversity jurisdiction.[1]  For the reasons stated below, the Motion for Remand is

**GRANTED,** insofar as it seeks to remand the case, and **DENIED** insofar as it seeks

attorney's fees.

## II.     BACKGROUND

This case arises out of the shooting at Sandy Hook Elementary School in

Newtown, Connecticut, on December 14, 2012.  See Notice of Removal, Ex. 1

(Summons and Complaint) ("Complaint") (Doc. No. 1-1) ¶ 1.  Plaintiffs Erica Lafferty,

David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley,

---

[1] Defendants filed two Oppositions to the Plaintiffs' Motion to Remand.  The first was submitted by defendants Alex Jones, Infowars, LLC, Infowars Health, LLC, Free Speech Systems, LLC, and Prison Planet TV, LLC.  See generally Infowars Defendants' Opposition to Motion to Remand (Doc. No. 51). The second was submitted by defendant Midas Resources, Inc.  See generally Midas Opposition (Doc. No. 54).  Significant portions of the two filings are identical, and they raise substantially the same arguments.  Defendant Halbig joined in the legal arguments of the Opposition filed by defendants Jones, et al.  See Halbig's Joinder in Other Defendants' Legal Arguments (Doc. No. 52).

1

Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, and Jillian Soto (collectively "plaintiffs"), filed suit against defendants Alex Emeric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc. (collectively "defendants"), in the Superior Court, Judicial District of Fairfield at Bridgeport, Connecticut, on May 23, 2018. Id. Plaintiffs alleged that defendants are liable for (1) invasion of privacy by false light; (2) defamation; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; and (6) violation of Conn. Gen. Stat. § 42-110a, et. seq, the Connecticut Unfair Trade Practices Act ("CUTPA"). See id. ¶¶ 336–94.

On July 13, 2018, defendants filed a Notice of Removal. See generally, Notice of Removal (Doc. No. 1). Defendants argued that removal was proper because plaintiffs fraudulently joined the only non-diverse defendant, Cory Sklanka. See id. ¶ 18. They argued that plaintiffs' "sole purpose" in naming Sklanka as a defendant was to "attempt to break diversity," see id. ¶ 10, and that "there is no possibility, based on the pleadings, that [plaintiffs could] state a cause of action against Mr. Sklanka in state court," id. ¶ 19 (quotations and citations omitted).

On July 31, 2018, plaintiffs filed the Motion to Remand now pending before this court. See generally, Motion to Remand ("Mot. to Remand") (Doc. No. 37). In their Memorandum of Law in Support of the Motion to Remand ("Pls.' Mem. in Supp.") (Doc. No. 38), plaintiffs argued that this court lacks subject matter jurisdiction because (1) complete diversity of citizenship between the parties is lacking, and (2) defendants failed to meet their burden to prove that plaintiffs fraudulently joined. See Pls.' Mem. in

2

Supp. at 1.  Defendants Alex Jones, Infowars, LLC, Infowars Health, LLC, Free Speech Systems, LLC, and Prison Planet TV, LLC filed an Opposition to the Motion to Remand on September 25, 2018.  See Infowars Defendants' Opposition to Motion to Remand ("Infowars Defs.' Opp'n") (Doc. No. 51) at 1.  Defendant Midas Resources, Inc. filed an Opposition to the Motion to Remand on September 28, 2018.  See generally Midas Resources, Inc.'s Opposition to Motion to Remand ("Midas Opp'n") (Doc. No. 54).  Plaintiffs filed an Omnibus Reply to Defendants' Oppositions to Remand ("Pls.' Reply") (Doc. No. 57), on October 19, 2018.[2]

## III.    Legal Standard

Defendants bear the burden of proving that removal is proper.  See O'Donnell v. AXA Equitable Life Ins. Co., 887 F.3d 124, 128 (2d Cir. 2018) (citing California Pub. Employees' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004)).  Federal courts strictly construe the removal statute, section 1441 of title 28 of the United States Code, and resolve any doubts against removability.  Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002) (holding that "statutory procedures for removal are to be strictly construed"); Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 201 (2d Cir. 2001).  Strict construction of the removal statute is consistent with congressional intent to restrict federal court jurisdiction, and due respect for principles of federalism and the independence of state courts.  See, e.g., Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994).

---

[2] A closely related case, brought by a different plaintiff against the same defendants, is pending before this court.  See Sherlach v. Jones, 3:18-cv-01269 (JCH).  The plaintiff in Sherlach filed the same Omnibus Reply as the plaintiffs in this case.  The court will address Sherlach in a separate ruling.

Defendants may remove "any civil action of which the district courts . . . have original jurisdiction." 28 U.S.C. § 1441(a). Generally, district courts have diversity jurisdiction over an action only where all plaintiffs are citizens of different states from all defendants. Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806); Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 460 (2d Cir.1998); 28 U.S.C. § 1332. However, plaintiffs may not join non-diverse defendants against whom they have no real claims, in an effort to defeat federal jurisdiction. The doctrine of "fraudulent joinder" is designed to prevent this tactic. See Briarpatch Ltd., L.P. v. Phoenix Pictures Inc., 373 F.3d 296, 302 (2d Cir. 2004).

Under the doctrine of fraudulent joinder, courts disregard the presence of non-diverse parties "if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." Briarpatch, 373 F.3d at 302 (citing Pampillonia, 138 F.3d at 461).[3] District courts in this Circuit strictly apply the "no possibility" standard. See Mihok v. Medtronic, Inc., 119 F. Supp. 3d 22, 34 (D. Conn. 2015) (collecting cases). Defendants bear the heavy burden of proving fraudulent joinder by clear and convincing evidence, "with all factual and legal ambiguities resolved in favor of plaintiff." Briarpatch, 373 F.3d at 302. To meet their burden, "defendants must do more than show that the plaintiff has failed to state a claim upon which relief can be granted." Read v. Nationwide Mut. Ins. Co., No. 3:06-CV-00514 (JCH), 2006 WL 2621652, at *1 (D. Conn. Sept. 13, 2006) (citing Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F.Supp.2d 177 (S.D.N.Y. 2003)).

---

[3] A defendant may also show that a fraudulent joinder has occurred by demonstrating, by clear and convincing evidence, that there has been "outright fraud" committed in the pleadings. Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). The defendants do not make such a claim here.

In determining whether a fraudulent joinder occurred, the court may examine evidence outside of the pleadings, but only if that evidence "clarifies or amplifies claims actually made in the notice of removal." Wilmington Sav. Fund Soc'y, FSB v. Universitas Educ., LLC, 164 F. Supp. 3d 273, 284 (D. Conn. 2016) (quoting 16 Moore's Federal Practice – Civil § 107.52 (2018)) (alterations omitted). However, the court will not reach the merits of the case, "beyond determining whether the claim is arguable under state law." 16 Moore's Federal Practice – Civil § 107.52 (2018).

## IV. DISCUSSION

Plaintiffs argue that this court is without jurisdiction, and this case must be remanded to the Connecticut Superior Court, because complete diversity of the parties is lacking, and because the defendants failed to meet their burden to demonstrate that Sklanka was fraudulently joined. See Pls.' Mem. in Supp. at 1. The defendants respond that the Motion to Remand should be denied because plaintiffs fraudulently joined Sklanka as a defendant, and he should be overlooked for the purposes of diversity, and this court therefore has jurisdiction over the underlying claims. See Infowars Defs.' Opp'n at 14; Midas Opp'n at 13. The parties do not dispute, however, that if Sklanka is properly joined, his Connecticut citizenship bars diversity jurisdiction and mandates a remand of this action to state court. See Infowars Defs.' Opp'n at 2 ("Ordinarily, Mr. Sklanka's Connecticut citizenship would defeat diversity of citizenship and require remand."); Midas Opp'n at 2 (same).

The question before this court, then, is whether there is any possibility that plaintiffs could assert their claims against Sklanka in state court. If there is such a possibility as to any of the plaintiffs' claims, the entire case must be remanded to state

court.  This is so because "absent complete diversity a case is not removable . . . .  A failure of complete diversity, unlike the failure of some claims to meet the requisite amount in controversy, contaminates every claim in the action."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 564 (2005).

### A.  Sklanka's Alleged Conduct

References to Sklanka in the Complaint focus on the assistance he is alleged to have provided to another named defendant, Wolfgang Halbig.  Plaintiffs allege that Halbig "is the creator and operator of the defamatory and predatory websites SandyHookJustice.com and MonteFrank.com."  Compl. ¶ 36.  Halbig's website, SandyHookJustice.com, is alleged to have made "numerous false, outrageous, and defamatory statements about the plaintiffs," including, inter alia, that parents of the children killed in the shooting were paid actors, that the children killed in the shooting were not in fact related to their parents, and that the children were not killed in the shooting.  Id. ¶ 71.  Sklanka is alleged to have "worked closely with Halbig in Halbig's Sandy Hook 'investigative' work," id. ¶ 37, and to have "facilitated Halbig's harassing and defamatory activities in Connecticut."  Id. ¶ 60.  The Complaint alleges that Sklanka "acted as Halbig's driver [and] camera operator, helped Halbig operate his website, and co-hosted broadcasts asserting that the Sandy Hook shooting was a hoax."  Id.  Sklanka, the plaintiffs allege, was "at all relevant times a servant, agent, apparent agent, employee, and/or joint venturer of the Jones defendants."  Id. ¶ 87.  The Complaint also alleges that Sklanka and Halbig "acted together, and they both acted together with the Jones defendants, to develop, disseminate, and propagate many of the false statements described in [the] Complaint."  Id. ¶ 85.

6

Plaintiffs brought claims of invasion of privacy by false light, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and violation of CUTPA, against all defendants, including Sklanka; the plaintiffs also alleged a civil conspiracy to commit each of the substantive claims, with the exception of the alleged CUTPA violation.  See generally Compl.; see also Pls' Mem. in Supp. at 4.  As noted above, see supra, at 5–6, if the defendants cannot prove, by clear and convincing evidence, that there is no possibility plaintiffs could assert any of these claims against Sklanka, this matter must be remanded to the state court.  The court first addresses the defamation claims and related civil conspiracy claim against Sklanka.

B.      Defamation and Civil Conspiracy Claim Against Sklanka

Count Two of the Complaint alleges that the defendants, including Sklanka, are liable to plaintiffs for defamation, defamation per se, and civil conspiracy to commit defamation.  See Compl. ¶¶ 347–59.  In Connecticut, to state a claim of defamation, a plaintiff must show that "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." Cweklinsky v. Mobil Chem. Co., 267 Conn. 210, 217 (2004).  "The statute of limitations for a defamation claim begins on the date of publication, [and] a new cause of action arises with each publication." Id. at 224.  To state a claim of civil conspiracy, a plaintiff must make a prima facie showing of the following elements:

> (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff.

Macomber v. Travelers Prop. & Cas. Corp., 277 Conn. 617, 635–36 (2006).  A claim of
civil conspiracy must be joined with a substantive tort claim.  Id. at 636.

The Complaint alleges that Halbig's website "made numerous false, outrageous,
and defamatory statements about the plaintiffs."  Compl. ¶ 71.  The Complaint also lists
allegations of specific defamatory statements, published on Halbig's website, which
referenced a number of the plaintiffs.  Id. ¶¶ 71(A)–71(D); see also Pls.' Mem. in Supp.
at 12.  While the Complaint does not provide dates that these statements were
published, it does allege that Halbig operated the website until August 2016.  Id.
¶ 71(E).  Plaintiffs also allege that Sklanka "helped Halbig operate his website, and co-
hosted broadcasts asserting that the Sandy Hook shooting was a hoax."  Id. ¶ 60.

Defendants argue that (1) the claims against Sklanka are time-barred, and
(2) the evidence before the court, in the form of an Affidavit submitted by Halbig,
establishes that there is no possibility that plaintiffs could raise claims against Sklanka.
The court addresses each argument in turn.

        1.      Statute of Limitations

Defendants argue that plaintiffs' defamation claims against Sklanka are barred by
Connecticut's two-year statute of limitations on such claims.  See Conn. Gen. Stat. §
52-597.  The defendants' argument rests on the fact that the "last dated action attributed
to Mr. Sklanka in the Complaint was June 2, 2015," while the Complaint was filed on
May 23, 2018.  Infowars Defs.' Opp'n at 12; see also Midas Opp'n at 12.  Plaintiffs
argue that "the allegations about Sklanka's role in operating Halbig's websites meet all
the relevant statutes of limitations."  Pls.' Reply at 9 (emphasis in original).

The Complaint alleges that multiple defamatory statements about the plaintiffs were published on Halbig's website, and that Halbig operated his website until August 2016. If Halbig published any of the allegedly defamatory material within two years of the plaintiffs filing their Complaint, Halbig's conduct would fall within the statute of limitations. Moreover, accepting as true the allegation in the Complaint that Sklanka helped operate Halbig's website, and that the website was operated through August, 2016, Sklanka could face liability for defamation if his actions involved the publication or dissemination of the alleged defamatory materials. The Complaint also alleges that Sklanka acted together with Halbig and the other defendants "to develop, disseminate, and propagate many of the false statements described in [the] Complaint." Compl. ¶ 85. Though the Complaint is ambiguous as to whether these statements include those posted on Halbig's website, the court must resolve such ambiguities in favor of the plaintiffs. See Briarpatch, 373 F.3d at 302. In addition to potential liability for publishing defamatory material himself, Sklanka could face liability for civil conspiracy if Halbig published or disseminated defamatory information within the statute of limitations, pursuant to the alleged implied or actual agreement between Halbig and Sklanka. See Compl. ¶ 85.

The court's role at this stage is not to address the merits of a dispute over Connecticut's statute of limitations on defamation claims. Instead, its inquiry is limited to determining whether the defendants have shown, by clear and convincing evidence, that there is no possibility that the plaintiffs could raise a claim of defamation against Sklanka, based on the pleadings, which would fall within the statute of limitations. Because, taking the facts in the Complaint as true and resolving factual and legal

9

ambiguities in favor of the plaintiffs, there is a possibility that the plaintiffs could raise

claims against Sklanka that would fall within the statute of limitations—in particular, at

least defamation and conspiracy—the court concludes that the defendants have failed

to meet their burden.

2.      Halbig's Affidavit

Defendants' also rely heavily on an Affidavit submitted by Halbig.  See Affidavit of

Wolfgang Halbig (Doc. No. 47) ("Halbig Affidavit").  Halbig avers, inter alia, that "Sklanka

did not operate any camera; he did not have a camera; he has never touched a camera

in my presence.  He has had nothing to do with SandyHookJustice.com, nor has he

cohosted any broadcasts with me."  Id. ¶ 1.  The defendants argue that, "[i]n contrast to

Plaintiffs' non-evidenced allegations, the affidavit of Mr. Halbig presents clear and

convincing evidence (and the only record evidence) that Mr. Sklanka cannot possibly be

liable to Plaintiffs."  Infowars Defs.' Opp'n at 5; see also Midas Opp'n at 9 (arguing that

Halbig's Affidavit establishes that Sklanka was not part of a conspiracy).

However, the Complaint alleges that Sklanka "helped Halbig operate his website,

and co-hosted broadcasts asserting that the Sandy Hook shooting was a hoax."  Compl.

¶ 60.  Moreover, Plaintiffs submitted an Affidavit, as part of their Reply, which avers that

plaintiffs "possess audiovisual evidence that Sklanka co-hosted and/or participated in

SandyHookJustice.com podcasts and/or other podcasts with Halbig."  Affidavit of

Matthew S. Blumenthal (Doc. No. 57-1) ("Blumenthal Affidavit") ¶ 6.  Thus, contrary to

defendants' assertions, Halbig's Affidavit is not "unrebutted."  See Midas Opp'n at 5.

Defendants further argue that Halbig's Affidavit "establishes" that Sklanka was

not part of an agreement, either tacit or explicit, to engage in tortious activity, and that

10

the civil conspiracy claims could not possibly be raised in state court.  See Infowars

Defs.' Opp'n at 10; Midas Opp'n at 9.  First, the court notes that the Affidavit does not

address all the allegations in the Complaint.  Compare e.g., Compl. ¶ 71 with Halbig

Affidavit ¶¶ 1–5.  Further, as the court has noted, the Complaint alleges that Sklanka

"worked closely with Halbig in Halbig's Sandy Hook 'investigative' work, including acting

as driver and camera operator . . . [and] participating in the operation of

SandyHookJustice.com . . . ."  Compl. ¶ 37.  In his Affidavit, Halbig denies, inter alia,

that Sklanka did anything the plaintiffs allege but drive him.  Halbig Affidavit ¶ 2.

However, plaintiffs have countered with screenshots of Sklanka videotaping Halbig.

See Blumenthal Affidavit, Exhibit A.  Finally, while Halbig denies the allegation, see

Halbig Affidavit ¶ 4, the Complaint alleges that "Sklanka and Halbig acted together, and

. . . with the Jones defendants, to develop [and] disseminate" defamatory material.

Compl. ¶ 85.  As the case law makes perfectly clear, on a motion to remand, this court

is not trying the case.  See, e.g., Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314

F. Supp. 2d 177, 182 (S.D.N.Y. 2003); 16 Moore's Federal Practice – Civil § 107.52

(2018).  Resolving all ambiguities in plaintiffs' favor, see Briarpatch, 373 F.3d at 302,

the court concludes that the allegations are arguably sufficient to allege that Sklanka

participated in a conspiracy to commit tortious acts, see Harp v. King, 266 Conn. 747,

778–79 (2003) (holding complaint that failed to use the term "conspiracy" nevertheless

alleged a civil conspiracy, where plaintiff alleged "joint action" and "agreement" between

defendants); see also Zhaoyin Wang v. Beta Pharma, Inc., No. 3:14-CV-01790 (VLB),

2015 WL 5010713, at *5 (D. Conn. Aug. 24, 2015) ("Even allegations that are general

11

and at times in barebones language may be sufficient to defeat a claim of fraudulent joinder.") (quotation omitted).[4]

Whether Sklanka's actions were sufficient to establish liability for publishing defamatory materials, or for a civil conspiracy to do the same, are questions of pleading beyond the scope of a fraudulent joinder determination. It is enough that the pleadings raise a possibility of recovery under state law. In their removal and their Opposition to remand, the defendants in essence seem to want to have a trial on the merits in the context of the Motion to Remand. See, e.g., Infowars Defs.' Opp'n at 13 (citing to the "undisputed evidence"). Defendants may not "use removal proceedings as an occasion to adjudicate the substantive issues of a case." Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F. Supp. 2d 177, 182 (S.D.N.Y. 2003). To the extent that the defendants' claims are contradictory to the plaintiffs', the court must resolve all factual and legal ambiguities in favor of the plaintiffs. See Briarpatch, 373 F.3d at 302. A determination of the merits, beyond whether a defamation claim is arguable under state law, is appropriately left to the state court. See 16 Moore's Federal Practice – Civil § 107.52 (2018).

Taking the plaintiffs' allegations as true, and resolving factual and legal ambiguities in their favor, the court concludes that the defendants have failed to meet their burden of showing, by clear and convincing evidence, that the plaintiffs could not possibly raise any claim in state court against Sklanka. Because the court has determined that complete diversity of the parties is lacking as to at least one claim in the

---

[4] Only allegations of fraud must be specific. See Fed. R. Civ. P. 9(b).

case at issue, see supra at 9–12, this court lacks subject matter jurisdiction. See Exxon Mobil Corp., 545 U.S. at 564; 28 U.S.C. § 1332. Thus, the court need not reach the remaining claims against Sklanka. Plaintiffs' Motion to Remand is granted insofar as it seeks to remand the case to the Superior Court, Judicial District of Fairfield, at Bridgeport, Connecticut.

### C. Costs, Expenses, and Attorney's Fees

In addition to seeking remand of the case, plaintiffs argue that they are entitled to just costs and actual expenses, including attorney's fees. See Mot. to Remand at 21; 28 U.S.C. § 1447. "Absent unusual circumstances, courts may award attorney's fees under [section] 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Plaintiffs argue that "[a]ny reasonable survey of the law of fraudulent joinder, combined with the plaintiffs' allegations, would alert the defendants" that there was no objective basis for noticing removal. Id. Defendants argue that noticing removal was objectively reasonable because (1) the allegations against Sklanka are sparse; (2) plaintiffs made general allegations against all defendants; (3) the allegations against Sklanka were not clearly sufficient to warrant a finding of conspiracy; and (4) it was objectively reasonable to believe the actions were time barred. See Infowars Defs.' Opp'n at 13.

Notwithstanding plaintiffs' arguments to the contrary, the court concludes that the defendants had a basis, albeit thin, upon which to seek removal. There was, for example, a question as to whether the claims against Sklanka were time-barred. The defendants' presumably good-faith belief that the statute of limitations would require the termination of the only non-diverse defendant in the dispute was some basis, albeit a

13

failed one, upon which to believe this court had subject matter jurisdiction over the underlying complaint.  See Rose v. Horan, No. 17-CV-6408 (MKB), 2018 WL 4344954, at *4 n.7 (E.D.N.Y. Sept. 11, 2018) (noting that "the Court may consider a statute of limitations defense in considering allegations of fraudulent joinder").  Thus, plaintiffs request for fees is denied.

## V.      CONCLUSION

For the reasons stated herein, the Motion for Remand is **GRANTED**, and this case is **REMANDED** to state court.  Plaintiffs' request for costs and attorney's fees is **DENIED**.  Because this case is remanded to state court, the defendants' pending Motions to Dismiss (Doc. Nos. 11, 21, 31, and 45) are **TERMINATED AS MOOT**.  The Clerk is ordered to close this case.

### SO ORDERED.

Dated at New Haven, Connecticut this 5th day of November, 2018.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge

FILED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

2018 NOV -9 ⧠ 2: 32

U.S. DISTRICT COURT
NEW HAVEN, CT.

| | | |
|---|---|---|
| ERICA LAFFERTY, *et al.*, | ) | |
| | ) | Case No: 3:18-cv-01156-JCH |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| ALEX JONES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

---

### HALBIG'S REQUEST TO RECONSIDER, OBJECTIONS, AND RESPONSIVE AFFIDAVIT RE CORY T. SKLANKA

---

Defendant Wolfgang W. Halbig, in the first person henceforth, respectfully requests leave to correct the record, and for reconsideration of the court's order (Doc. 58) remanding this case.

As grounds for reconsideration, I state that I traveled out of state, for personal reasons, at approximately the same time Mr. Matthew Blumenthal filed his reply on the motion to remand (Doc. 57), in which he appears to establish that I made a misrepresentation in my own affidavit (Doc. 47). I had no computer access while I was gone; and am not on the electronic service list, anyway, and these are the reasons I did not respond earlier. I returned home on Sunday, Nov. 4th, and learned on Nov. 5th that the court had granted the motion to remand.

For my objection, I first state that Mr. Blumenthal's affidavit is based on no personal knowledge, and purports to offer opinions even though the affiant has laid no foundation for

1

qualification as an expert. His affidavit—unlike mine, which *is* based on personal knowledge--is thus inadmissible and without evidentiary effect.

Mr. Blumenthal offers to show a video to the court at any hearing which may take place on his motion to remand. I object to any hearing being held, due to my pending challenge to the court's personal jurisdiction over me, as well as its subject matter jurisdiction, and respectfully inform the court that I will not attend any such hearing. The burden in this matter was the plaintiffs'. They had the opportunity to meet it and have not.

To correct the record I now state under oath as follows:

1. The photograph produced by Mr. Blumenthal of several people in the hearing room for one of my Connecticut Freedom of Information appeals does appear to show that Cory Sklanka is present, and possibly operating a camera, although it could be a cellphone. I did not know Mr. Sklanka at that time. The woman next to me, my attorney Kay Wilson, Esq., always picked me up at the airport and drove me to these hearings, which took place in 2015 and 2016. It was not until after I terminated her services in 2017 that a third party arranged for Mr. Sklanka to pick me up at the airport and drive me. He did so on one occasion only. That was to St Rose Lima Church and a Newtown, CT School Board meeting. I paid him for the gas.

1. The remainder of my original affidavit has not been put in issue via Mr. Blumenthal's affidavit. I reiterate that Cory Sklanka has had nothing to do with my website or any of my other activities.

2

FURTHER AFFIANT SAITH NOT.

_____
Wolfgang W. Halbig

STATE OF FLORIDA )
                Seminole ) ss.
COUNTY OF ~~LAKE~~ )
                         SP

Subscribed and sworn to before me this __8^TH_ day of November, 2018, by Wolfgang W. Halbig.

WITNESS MY OFFICIAL SEAL:



SEAN M. PRICE
Notary Public, State of Florida
Commission# FF 178868
My comm. expires Nov. 23, 2018

_____
Notary Public

My commission expires: 11/23/2018

### CERTIFICATE OF SERVICE

    I certify, by my signature below, that I have served the foregoing "HALBIG'S REQUEST TO RECONSIDER, OBJECTIONS AND RESPONSIVE AFFIDAVIT RE CORY T. SKLANKA" on the other parties this 8 day of November, 2018, by email, addressed as follows:

William M. Bloss, Esq.
Matthew S. Blumenthal, Esq.
Koskoff Koskoff & Bieder
350 Fairfield Ave.
Bridgeport, CT 06604
bbloss@koskoff.com
mblumenthal@koskoff.com

Jay Marshall Wolman, Esq.
100 Pearl Street
14th Floor
Hartford, Ct 06103
jmw@randazza.com

Lawrence L. Connelli, Esq.
Regnier Taylor Curran & Eddy

3

100 Pearl Street
4th Floor
Hartford, Ct 06103
lconnelli@rtcelaw.com

Nicole R. Cuglietto, Esq.
Stephen P. Brown, Esq.
Wilson Elser Moskowitz Edelman & Dicker
1010 Washington Blvd
8th Floor
Stamford, Ct 06901
nicole.cuglietto@wilsonelser.com
Stephen.brown@wilsonelser.com

_____
Wolfgang W. Halbig

4

MAIL ★
PRESS™

ST SERVICE IN THE U.S.

INTERNATIONALLY,
MS DECLARATION
Y BE REQUIRED.

013   OD: 12.5 x 9.5

**UNITED STATES POSTAL SERVICE®** | **PRIORITY MAIL EXPRESS®**



EE 368 483 812 US

**CUSTOMER USE ONLY**

**FROM:** (PLEASE PRINT)     PHONE (          )

W Halbig
25526 Hacks Run Ld
Sorrento, Fl. 32776

10

**DELIVERY OPTIONS (Customer Use Only)**

☐ SIGNATURE REQUIRED *Note:* The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
   *Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT)     PHONE (          )

Clerk of U.S District Court
141 church Street
New Haven, Ct

ZIP + 4® (U.S. ADDRESSES ONLY)

O 6 5 1 0 - ___ ___ ___ ___

✉ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
✉ $100.00 insurance included.

**👉 PEEL FROM THIS CORNER**

**PAYMENT BY ACCOUNT** (if applicable)

USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| ☒1-Day | ☐2-Day | ☐Military | ☐DPO |
|---|---|---|---|

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|
| 32776 | 11-9-18 | $ 24.70 |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
|---|---|---|---|
| 11-8-18 | ☐10:30 AM  ☐3:00 PM  ☒12 NOON | $ | $ |

| Time Accepted | 10:30 AM Delivery Fee | Return Receipt Fee | Live Animal Transportation Fee |
|---|---|---|---|
| 12:42 ☐AM ☒PM | $ | $ | $ |

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
|---|---|---|
| $ | $ | 24.70 |

| Weight | ☒Flat Rate | Acceptance Employee Initials |  |
|---|---|---|---|
| ___ lbs. ___ ozs. | | JP | $ |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐AM ☐PM | |

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐AM ☐PM | |

LABEL 11-B, JULY 2018     PSN 7690-02-000-9996

destinations. See DMM and IMM at pe.usps.com.

+ Money Back Guarantee for U.S. destinations only.

  

**SIT US AT USPS.COM®**
RDER FREE SUPPLIES ONLINE

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; July 2013; All rights reserved.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 3:18-CV-1156 (JCH) |
| v. | : | |
| | : | |
| ALEX EMERIC JONES, et al., | : | NOVEMBER 20, 2018 |
| Defendants. | : | |

**RULING RE: DEFENDANT HALBIG'S MOTION FOR RECONSIDERATION**
**(DOC. NO. 59)**

Defendant, Wolfgang W. Halbig, has requested the court to reconsider its Ruling on the Motion to Remand (Doc. No. 58).

The standard for granting a motion for reconsideration is strict. Reconsideration will be granted only if the moving party can identify controlling decisions or data that the court overlooked and that would reasonably be expected to alter the court's decision. See Analytical Surveys, Inc. v. Tonga Partners, 684 F.3d 36, 52 (2d Cir. 2012) (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). When reviewing a motion for reconsideration, the court considers three questions: (1) whether there has been "an intervening change of controlling law;" (2) whether the movant is presenting new evidence that was not available when the original motion or response was filed; and (3) whether there is a "need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013) (quoting Virgin Atl. Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits,

1

or otherwise taking a second bite at the apple." <u>Analytical Surveys</u>, 684 F.3d at 52 (internal quotation marks omitted).

In his Request, Halbig states that he had traveled out of state at approximately the same time as the plaintiff's filed their Reply on the Motion to Remand. He disputes the materials submitted by plaintiff's counsel in the Reply. Nothing in Halbig's Request suggests that there has been a change in law or that there was new evidence that was not available when he originally filed his Opposition to the Motion to Remand. The court does not discern in his Request any basis to conclude that there is a need to correct clear error or prevent manifest injustice. In essence, Mr. Halbig seeks to have this court find that he is not liable to the plaintiffs and therefore, he is a fraudulently joined party. However, as the court explains in its Ruling, a Motion to Remand is not a time for consideration of the merits of the case, but is merely a time to determine if it is possible that the plaintiffs have a claim against the defendant in question. The court concluded in its Ruling (Doc. 58) that it clearly was possible. Nothing in Mr. Halbig's Request, or his recent Affidavit, leads the court to conclude otherwise. Therefore, the Request to Reconsider (Doc. No. 59) is denied.

**SO ORDERED.**

Dated at New Haven, Connecticut this 20th day of November, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

2