UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---

| | |
|---|---|
| In Re: | ) Chapter 7 |
| | ) |
| ALEXANDER E. JONES | ) Bankruptcy Case No. 22-33553 (CML) |
| | ) |
| Debtor. | ) |

---

**MOTION FOR LEAVE TO APPEAL ORDER DENYING INTERVENTION
TO PRESENT EVIDENCE OF FRAUDULENT JUDGMENT**

The undersigned Pro Se Attorney Intervenor/Interested Party, **Robert Wyn Young**, hereby moves the District Court, pursuant to 28 U.S.C. § 158(a)(3) and (c)(1)(A) and FRBP 8004, for an order granting the undersigned leave to appeal the Bankruptcy Court's April 22, 2025, **Order Denying Motion for Leave to Intervene** in Case No. 22-33553 (CML) (Docket 1129, copy attached). The grounds for this **Motion for Leave to Appeal** are more fully set forth below.

## RELEVANT FACTS

The subject Chapter 7 bankruptcy arises, in large part, from an alleged final judgment of $1.43 Billion entered against the Debtor, Alexander E. Jones (herein referred to as "Alex Jones" or "Jones"), on December 22, 2022, in consolidated Connecticut state court defamation cases arising from or related to an alleged mass school shooting in Sandy Hook, Connecticut, occurring on December 14, 2012, and styled as <u>Erica Lafferty, et al. v. Alex Emric Jones, et al.</u>, UWY-CV-18-6046436-S; <u>William Sherlach v. Alex Jones, et al.</u>, UWY-CV-18-6046437-S; and <u>William</u>

1

Sherlach v. Alex Emric Jones, et al., UWY-CV-18-6046438-S (herein also collectively referred to as "the Connecticut defamation cases" or as "the consolidated Connecticut defamation cases").[1]

On appeal by Jones, the Connecticut Appellate Court ruled that: "The judgments are reversed only as to the plaintiffs' CUTPA claim and the cases are remanded with direction to vacate the court's award of $150,000,000 in punitive damages pursuant to CUTPA; the judgments are affirmed in all other respects." Erica Lafferty, et al. v. Alex Emric Jones, et al., No. AC 46131, slip op. at 62 (Conn. App. Ct. December 10, 2024). Thus, the Connecticut Appellate Court reduced the alleged final judgment against Alex Jones in the consolidated Connecticut defamation cases from approximately $1.43 Billion, to approximately $1.3 Billion.

In late 2023 or early 2024, the undersigned heard Alex Jones and Attorney Norm Pattis speaking in a cagey way on Infowars about their Connecticut Sandy Hook appeal, and the undersigned decided to look into it. In then reviewing the trial and appellate court dockets in the matter of Lafferty, et al. v. Jones, et al., CT A.C. No. 46131, appeal from Superior Court Docket No. UWY-CV18-6046436-S (both also fully cited, *supra*), the undersigned **promptly** discovered **unequivocal** evidence that Alex Jones threw the defense of the Connecticut Sandy Hook defamation cases with his **very first responsive pleadings** (i.e., by deliberately failing to claim **federal question jurisdiction** when removing the related Lafferty and Sherlach Connecticut **1st Amendment** lawfare cases to federal court). Indeed, as the undersigned came to learn in conducting further and diligent research, Jones' doing so was part of a broader, two~part and **treasonous** conspiracy to undermine or destroy our **1st** and **2nd Amendments**. Upon

---

[1] Unless specified otherwise in this **Motion for Leave to Appeal**, all references to the "Trial Ct. Dckt." pertain to the trial court Case Detail/Docket for Erica Lafferty, et al. v. Alex Emric Jones, et al., UWY-CV-18-6046436-S (viewable at: https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=UWYCV186046436S). All citations to "(Docket ___)" reference the case docket in the bankruptcy proceeding, Case No. 22-33553 (CML).

discovering confirming probable cause evidence of the two~part and **treasonous** Sandy Hook conspiracy, the undersigned became **duty~bound**, as a state and federally~licensed attorney, who is oathbound to support and defend the United States Constitution, **to expose it**. On November 1, 2024, the undersigned began publicly pursuing a public advocacy case to expose the two~part and treasonous Sandy Hook conspiracy.

On February 24, 2025, the undersigned emailed the Chapter 7 Trustee a **written explanatory statement** and **evidentiary submission** concerning the fraud or collusion described herein. (Docket 1120-4 through 1120-10) Receiving no response, the undersigned again emailed the Chapter 7 Trustee again on February 27, 2025, requesting confirmation of receipt of the first email, providing an executive summary of the operative evidence of fraud giving rise to the subject Chapter 7 bankruptcy (i.e., **Alex Jones' deliberate failure to claim federal question jurisdiction in 1st Amendment cases**), and submitting additional evidence in the form of a demonstrative PowerPoint exhibit summarizing the Connecticut U.S. District Court Remand file (cited in full, below). (Docket 1120-11 and 1120-12) On February 28, 2025, the Chapter 7 Trustee sent the undersigned an email confirming his receipt of the February 24th and 27th emails. The Chapter 7 Trustee's February 28th email did **not**, in any way, respond to the credible allegations, written explanations, or evidentiary submissions regarding fraud/collusion the undersigned had submitted.

On March 4, 2025, the undersigned sent a reply email to the Chapter 7 Trustee, his two (2) attorneys, and the attorney for the United States Trustee, **(1)** setting forth/reiterating reasonable and well~founded administrative questions/requests, **(2)** providing an additional demonstrative aid/exhibit regarding a Chapter 7 trustee's duties in response to a credible allegation of fraud or collusion, and **(3)** issuing well~founded and substantive **Legal Notices & Demands** concerning a

proper and statutorily/ethically~mandated response to the undersigned's credible allegation of fraud/collusion. (Docket 1120-14 and 1120-15)

**Neither** the Chapter 7 Trustee, **nor** any of the three (3) attorneys (who were copied on the Chapter 7 Trustee's February 28th "responsive" email and on the undersigned's March 4th reply email) responded **in any way** to the undersigned's March 4th reply, well~founded ministerial/ administrative requests and questions, or well~founded and substantive **Legal Notices & Demands**, set forth therein. For this reason, among others identified in the **Motion for Leave to Intervene** (Docket 1120 at 8-9), it became incumbent upon the undersigned to promptly seek leave on March 19, 2025, to intervene in the subject bankruptcy proceeding, as a pro se litigant, to protect the undersigned's interests as a United States citizen and state and federally~licensed attorney in ensuring: **(1)** the integrity of the federal judicial system; **(2)** the protection of the **1st Amendment** to the United States Constitution; and **(3)** the efficacy of the undersigned's efforts in fulfilling the undersigned's duties to protect and defend the Constitution. These **legitimate** and **substantial** interests were and are **not** being adequately represented by the Chapter 7 Trustee, or by any of the creditors or other parties, all of whom, to date, had failed or refused to bring the egregious and obvious fraud (more fully described *infra*) to the attention of the Bankruptcy Court.

On April 8, 2025, the Connecticut Families creditors filed an **Opposition to Motion for Leave to Intervene by Robert Wyn Young** (Docket 1124) that failed to comply with the pre~response conference requirements of **BLR 9013-1(g)(1)** and which argued only that the undersigned lacks standing to intervene. On April 11, 2025, the undersigned filed a **Motion to Strike Connecticut Families' Opposition to Motion for Leave to Intervene** (Docket 1126) and a **Reply in Support of Motion for Leave to Intervene to Present Evidence of Fraudulent Judgment** (Docket 1128) [in the event the Court denied the undersigned's **Motion to Strike**

4

(Docket 1126), or if the Court otherwise considered any of the arguments asserted in the **Connecticut Families' Opposition** (Docket 1124)].

On April 22, 2025, the Bankruptcy Court issued an **Order Denying Motion for Leave to Intervene** (Docket 1129) on the basis of lack of standing, i.e., according to the Bankruptcy Court: "Young has no identifiable economic interest in this case." and "The concerns raised by Young are adequately represented by existing parties and permitting intervention risks causing undue delay in a case that has been pending since December 2022." (Docket 1129 at 2) The Bankruptcy Court provided no rationale for these conclusory statements/holdings. Further, the Bankruptcy Court simply adopted the lack of standing argument the Connecticut Families asserted in their non~compliant **Opposition to Motion for Leave to Intervene**, making no mention of the undersigned's well~founded and properly~supported **Motion to Strike** the same. (Docket 1126 and 1129) Instead, the Bankruptcy Court cited In re Acis Cap. Mgmt., 604 B.R. 484, 513 (N.D. Tex. 2019), for the position that: "The decision whether to allow intervention is wholly discretionary under Rule 2018...even where each required element is met." (Docket 1129 at 1)

The undersigned respectfully submits that, under the circumstances of this case and controlling statutory and case law, the Bankruptcy Court abused its discretion in denying the requested intervention to present operative, admissible, and dispositive evidence of fraud or collusion between parties to the $1.3 Billion default judgment debt at issue and the bankruptcy proceeding chiefly arising therefrom.

[Remainder of page intentionally left blank for pagination.]

## QUESTION PRESENTED

In view of the **absolute bar** of bankruptcy discharge for debts incurred by fraud or collusion under **Section 523(a)(2)(A)** of the Bankruptcy Code [as recognized/confirmed by unanimous decision of the Supreme Court in **Bartenwerfer v. Buckley**, 598 U.S. 69 (2023)], does a bankruptcy court abuse its discretion in denying a **Motion for Leave to Intervene to Present Evidence of Fraudulent Judgment** where: **(1)** operative and admissible evidence demonstrates **collusion between the parties** to the underlying lawsuit/judgment debt and the bankruptcy proceeding arising therefrom; **(2)** the **Chapter 7 Trustee fails or refuses** to fulfill his duties **to investigate and report** the credible allegation of fraud or collusion; and **(3)** the intervenor has suffered at least a **minimal** or **indirect injury** as a result of the existing parties' fraud or collusion and seeks intervention for the limited and specific purpose of submitting evidence of said fraud or collusion to the bankruptcy court?

The undersigned respectfully submits that the question presented should be answered **affirmatively** and that, under the circumstances of this case, it was, indeed, an **abuse of discretion** for the Bankruptcy Court to deny the undersigned's requested intervention to present evidence of fraudulent judgment.

## RELIEF SOUGHT

On appeal, the undersigned Pro Se Attorney Intervenor/Interested Party, **Robert Wyn Young**, respectfully requests the following forms of relief: **(1)** a **reversal** of the **Order Denying Motion for Leave to Intervene** (Docket 1129); **(2)** a **legal finding** that Alex Jones' obviously and deliberately~ineffective July 2018 Notices of Removal in the Lafferty and Sherlach cases constitute **operative evidence** of **(a) collusion** or **self~sabotage by the defense** and, thus, of **(b)** the **fraudulent nature** of the $1.3 Billion Connecticut state court judgment giving rise to the

6

instant Chapter 7 bankruptcy, **as a matter of law**, because reasonable minds cannot reasonably differ in this regard; and **(3)** a **remand** of this matter to the Bankruptcy Court with appropriate instructions based upon and affirming the **reversal of Order** and **legal finding** herein requested.

## WHY LEAVE TO APPEAL SHOULD BE GRANTED

**1.     The $1.3 Billion Connecticut State Court Judgment is Blatantly Fraudulent.**

The following **red flags** associated with and pointing to the fraudulent nature of the $1.3 Billion Connecticut state court judgment giving rise to the instant Chapter 7 bankruptcy are obvious and impossible to miss: **(1)** a $1.43 Billion (now, $1.3 Billion) judgment entered in consolidated defamation cases against a journalist, **(2)** by default and after appearance was made, **(3)** following a remand (or remands) of the consolidated Connecticut Sandy Hook cases by the federal court for **lack of subject matter jurisdiction**, **(4)** in consolidated **1st Amendment** lawfare cases. The described **red flags** point any reasonable and diligent creditor or investigator to the Lafferty **U.S. District Court remand file** [Lafferty Fed Ct. Remand File (Full), Trial Ct. Dckt. 112.00, 11/21/18 (Docket 1120-1)] which, of course, is both part of and included in the Lafferty Connecticut state court case file.

**How, in the world, could the United States District Court for the District of Connecticut have ever, possibly, lacked subject matter jurisdiction to rule on the 1st Amendment~based, Anti~SLAPP Special Motion to Dismiss** that Alex Jones filed with said federal court in the Lafferty case on July 20, 2018?? (Docket 1120-1) There's **only one way** that could possibly have happened; and that was **for Alex Jones to deliberately fail to claim federal question jurisdiction, under 28 U.S.C. § 1331, in his July 13, 2018, Notice of Removal of the**

7

**Lafferty case**. And that is exactly what Alex Jones did[2, 3], and that is exactly what the Connecticut Sandy Hook Plaintiffs pointed out on the 1st page of their successful July 31, 2018, Motion to Remand, specifically, that: "defendants' only asserted basis for federal jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332." Diversity of citizenship, as it happens, did **not** even exist on the face of the Lafferty Complaint. (Docket 1120-1)

The consolidated Connecticut defamation cases against Alex Jones should **never**, following **honest** and **proper** (i.e., **non~collusive**) removals to federal court, have been back to the state and local Connecticut court, the worst possible venue for resolution of these highly~charged, highly~controversial, and highly~suspicious defamation cases. The proof is in the pudding; and the pudding here is an outrageous, **1st Amendment speech~chilling $1.43 Billion default judgment**, boiled~down to a mere $1.3 Billion by the Connecticut Appellate Court after hearing the best arguments Alex Jones had to offer.

Alex Jones' obviously and deliberately~ineffective July 2018 Notices of Removal in the Lafferty and Sherlach cases constitute **operative evidence of collusion or self~sabotage by the defense** and, thus, of the fraudulent nature of the $1.3 Billion Connecticut state court judgment giving rise to the instant Chapter 7 bankruptcy, **as a matter of law**, meaning that reasonable minds cannot reasonably differ in this regard.

---

[2] See Alex Jones' Notice of Removal in Lafferty, U.S. District Court Case No. 3:18-cv-01156, Document 1, Filed 07/13/18 (attached as Exhibit A to Alex Jones' 07/13/18 Lafferty state court Notice of Filing Notice of Removal, Trial Ct. Dckt. 106.00, and appearing in the Lafferty Fed Ct. Remand File (Full), Trial Ct. Dckt. 112.00).

[3] See, also, Alex Jones' Notice of Removal in Sherlach, U.S. District Court Case No. 3:18-cv-01269, Document 1, Filed 07/31/18 [attached as Exhibit A to Alex Jones' 07/31/18 Lafferty state court Notice of Filing Notice of Removal (of the related Sherlach case); see Lafferty Trial Ct. Dckt. 110.00].

"Collusion" is both defined as and occurs "when two or more parties secretly agree to **defraud** a third-party of their rights or accomplish an illegal purpose." [Legal Encyclopedia, Legal Information Institute, Cornell Law School, https://www.law.cornell.edu/wex/collusion (last visited March 16, 2025), emphasis added.]  Section 523(a)(2)(A) of the Bankruptcy Code states:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The quoted statutory prohibition of Chapter 7 discharge for fraudulently~incurred debts is **absolute**. In Bartenwerfer v. Buckley, 598 U.S. 69 (2023), the Supreme Court of the United States unanimously held that **debts incurred by fraud cannot be discharged in bankruptcy**, even if the debtor didn't personally commit the fraud.

Jones' filing of a **deliberately~ineffective** Notice of Removal in Lafferty on July 13, 2018, followed promptly by his July 20, 2018, filing of a potentially~dispositive **1st Amendment ~based, Anti~SLAPP Special Motion to Dismiss** (which Jones **effectively ensured** would not be worth the paper it was written on) (Docket 1120-1) was a cynical and sophomoric sleight of hand to abuse and undermine not only **federal judicial process**, but also the **Constitution**, itself, which both establishes the federal judiciary and enumerates our Bill of Rights.

 2.    **Bankruptcy Relief Cannot Be Provided for Debts Incurred by Fraud or Collusion; the Undersigned Meets the Requirements for Intervention Under FRBP 2018(a); and the Bankruptcy Court Abused its Discretion in Denying the Requested Intervention to Present Evidence of Fraudulent Judgment.**

The Bankruptcy Court's only statement (apparently) regarding the undersigned's peer~reviewed (Docket 1120-10) and fully and properly evidenced allegation of fraud/collusion was that: "The Connecticut judgment was entered against Jones and he is represented by

9

sophisticated counsel in this case and a related adversary case involving a determination about whether all or part of the Connecticut judgment is excepted from any discharge entered in this case." (Docket 1129 at 2)

That judgment was entered against Jones in Connecticut is neither disputed nor even relevant to the issue of whether Jones and the Connecticut Families **colluded** to produce the $1.3 Billion Connecticut default judgment. Further, that Jones was/is represented by sophisticated counsel in the bankruptcy proceeding, Case No. 22-33553 (CML), and in Adv. Proc. No. 23-03037 [a related adversary proceeding to determine whether Jones was collaterally estopped from relitigating the nondischargeability, under Section 523(a)(6), of debt(s) incurred for willful or malicious injury], is, likewise, neither disputed nor even relevant to the issue of whether Jones and the Connecticut Families **colluded** to produce the $1.3 Billion Connecticut default judgment. Jones and his Randazza attorneys, i.e., other counsel, **deliberately** threw the defense of the Connecticut cases with Jones' first responsive pleadings, i.e., the **deliberately** ineffective Notices of Removal in the Lafferty and Sherlach cases. The **deliberate** failure to claim federal question jurisdiction under 28 U.S.C. § 1331 ensured the Connecticut Families would never even have to answer Jones' July 20, 2018, potentially~dispositive **1st Amendment~based, Anti~SLAPP Special Motion to Dismiss**, which would be and was rendered moot by the Connecticut Families' successful **Motion to Remand** for lack of subject matter jurisdiction. (Docket 1120-1)

The Bankruptcy Court similarly and summarily ruled that the undersigned "has no identifiable economic interest in this case" (Docket 1129 at 2); but, as noted in both the **Motion for Leave to Intervene to Present Evidence of Fraudulent Judgment** (Docket 1120 at 10) and the **Reply in Support** of same (Docket 1128 at 6), the undersigned had to quit full~time and sustenative employment as a contract attorney in mid~January 2025 to meet the gargantuan

10

demands of this public advocacy case which the undersigned is **oath** and **duty~bound** to pursue. How can **collusive** and **treasonous** conduct, which triggers a **duty** for an attorney who becomes aware of it to **expose it**, even to the point of sacrificing means of livelihood, be said to **not** have an adverse "economic" impact on that **duty~bound** attorney?? **Merriam-Webster** provides five (5) definitions of the adjective "**economic**", the third of which is: "having practical or industrial significance or uses: **affecting material resources**". (Retrieved from: https://www.merriam-webster.com/dictionary/economic.) [Emphasis added.] While the undersigned's "economic" interest in this case might be **indirect**, it is nevertheless and most assuredly **substantial** and **real**.

The Bankruptcy Court similarly and summarily ruled that: "The concerns raised by [the undersigned] are adequately represented by existing parties". (Docket 1129 at 2) How can **colluding parties** adequately represent the interests of **third parties** they are colluding to harm?? The undersigned's identified **legitimate** and **substantial** interests are most assuredly **not** being adequately represented by the Chapter 7 Trustee, by the debtor, or by any of the creditors or other parties, all of whom, to date, have either **failed** or **refused** (even in spite of statutorily and ethically imposed duties)[4] to bring clear evidence of egregious and obvious fraud to the attention of the Bankruptcy Court. The ruling in this regard defies both logic and common sense.

Additionally, the Bankruptcy Court similarly and summarily ruled that "permitting intervention risks causing undue delay in a case that has been pending since December 2022." (Docket 1129 at 2) **Merriam-Webster** defines "undue" as: "exceeding or violating propriety or fitness: excessive".[5] In Bartenwerfer, *supra*, the Supreme Court of the United States unanimously

---

[4] See "**Partners in Combatting Crime**", quoted at Page 5 of the **Motion for Leave to Intervene**, stating: "Both the USTP and chapter 7 trustees have a statutory responsibility to identify and refer potential fraud or criminal activity in a case." (Docket 1120)

[5] Retrieved from: https://www.merriam-webster.com/dictionary/undue

11

held that **debts incurred by fraud cannot be discharged in bankruptcy**, even if the debtor didn't personally commit the fraud. If the Connecticut state court judgment is fraudulent (which it is), then, under Bartenwerfer, **no other proceedings toward relief are or will ever become relevant**, because **no relief** may be afforded in bankruptcy based upon a fraudulent or collusive judgment. Accordingly, any delay caused by the requested intervention will not be "undue".

In Sylvester v. Chaffe McCall, No. 23-30003 (5th Cir. September 8, 2023), the Fifth Circuit outlined the following standards for abuse of discretion in the context of a bankruptcy case:

> "An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard, reviewed de novo, . . . or (2) rests its decision on findings of fact that are clearly erroneous." . . . We will only overturn the factual findings of the bankruptcy court if "we are left with a 'firm and definite conviction' that the bankruptcy court committed a mistake." *In re Bradley*, 960 F.2d 502, 507 (5th Cir. 1992) (quoting in part *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Sylvester, at 4. Further, "An abuse of discretion can occur if (1) the court fails to 'actually . . . exercise discretion, deciding instead as if by general rule, or even arbitrarily'; (2) the court fails to take relevant facts 'constraining its exercise' of discretion into account; or (3) its decision is based on erroneous conclusions of law or fact." United States v. Roberson, 188 B.R. 364, 365 (D. Md. 1995) (citing James v. Jacobson, 6 F.3d 233, 239 (4th Cir.1993)).

The undersigned respectfully submits that, in this case, the Bankruptcy Court's findings of fact with respect to the **standing issues** identified above are clearly erroneous and that, in considering the undersigned's **Motion for Leave to Intervene to Present Evidence of Fraudulent Judgment** (Docket 1120), the Bankruptcy Court decided "as if by general rule, or even arbitrarily".

Additionally, a bankruptcy court's discretion may be limited when dealing with an **ultimate** or **dispositive issue**. As a pertinent article from the Civil Resource Manual at Justice.gov states:

> ***Appellate courts may hear interlocutory appeals, in their discretion where "exceptional circumstances warrant," when (1) the order appealed from involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.*** *28 U.S.C. §§ 158(a) (district courts from bankruptcy courts), 158(c) (bankruptcy appellate panels from bankruptcy courts), 1292(b) (circuit courts from district courts); Matter of Zech, 185 B.R. 334 (D. Neb. 1995); In re Ionosphere Clubs, Inc., 179 B.R. 24, 26-27 (S.D.N.Y. 1995); In re EDP Med. Computer Sys., Inc., 178 B.R. 57, 59-60 (M.D. Pa. 1995); In re 1820-1838 Amsterdam Equities Inc., 176 B.R. 127, 129 (S.D.N.Y. 1994); In re IBI Sec. Serv., Inc., 174 B.R. 664, 669-71 (E.D.N.Y. 1994) (all discussing factors; citing cases).* ***"To establish that an order contains a controlling question of law, it must be shown that either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation."*** *IBI Sec. Serv., 174 B.R. at 670; see In re Capen Wholesale, Inc., 184 B.R. 547 (N.D. Ill. 1995) (controlling issue of law need not be outcome determinative; it need only be an "important one, which could have significantly affected the bankruptcy proceedings below").*[6] [Emphasis as in original.]

The undersigned respectfully submits that, in this case, the **Order Denying Motion for Leave to Intervene** (Docket 1129) involves a controlling question of law, and that the requested leave for an immediate appeal from said **Order** may materially advance or affect the ultimate outcome or termination of the instant bankruptcy proceeding, because, under Section 523(a)(2)(A) and Bartenwerfer, *supra*, bankruptcy relief is unequivocally **not** available for debts incurred by **fraud** or **collusion**.

Accordingly, the Bankruptcy Court erred in denying the undersigned's requested intervention, pursuant to FRBP 2018(a), to present clear, plain, and operative evidence that the $1.3 Billion Connecticut state court default judgment was and is **fraudulent**.

---

[6] United States Department of Justice, Civil Resource Manual: 96. The "Who, What, When, Where, Why, And How" of Appeals in Bankruptcy Proceedings – Generally, at p. 7 of 11. [https://www.justice.gov/archives/jm/civil-resource-manual-96-who-what-when-where-why-and-how-appeals-bankruptcy-proceedings] (accessed April 27, 2025).

13

**3.      Any Validation of the Fraudulent $1.3 Billion Default Judgment, by Provision of Bankruptcy Relief Respecting Same, Will Undermine the Federal Judicial System and Will Further Damage the 1st Amendment.**

The "**Alex Jones Sandy Hook Case**" (as the consolidated Connecticut defamation actions are known), with its headline~grabbing $1.43 Billion (now $1.3 Billion) adverse default judgment against a purported journalist, has developed to become one of the most infamous legal proceedings in the history of our republic, receiving massive media attention both domestically and abroad. The **chilling effects** on free speech and freedom of the press of a $1.3 Billion adverse default judgment against an alleged journalist are difficult to calculate and impossible to avoid.

The collusive and deliberately~ineffective removal of the Connecticut defamation cases to federal court, followed by the filing of a potentially~dispositive **1st Amendment~based, Anti~SLAPP Special Motion to Dismiss** (which Jones **effectively ensured** would not be worth the paper it was written on) (Docket 1120-1), was nothing less than an **abuse of federal judicial process**. Jones colluded with the Connecticut Families to make **a show of a fight** in federal court, wasting the valuable time and limited resources of the Connecticut U.S. District Court, and generating a **false impression** among the public, via Jones' filed, but terminated **Special Motion to Dismiss**, that well~established **1st Amendment** jurisprudence [e.g., N.Y. Times Co. v. Sullivan, 376 U.S. 254 (1964)] is no longer valid or has been reversed. (Docket 1120-1)

This **abuse of federal judicial process**, by colluding parties, continues unabated in the instant Chapter 7 bankruptcy proceeding. It is ironic, indeed, that the Bankruptcy Court is concerned with "undue delay" in a proceeding that has been pending, **needlessly** and **unjustly**, since December 2022, particularly because the intervention the undersigned seeks, in order to present plain and operative evidence of fraud or collusion, can promptly bring a termination to what is most assuredly **not** a real case or controversy.

In an April 29, 2025, article titled, "**Alex Jones, citing 'devastating' results of $1.4B Sandy Hook debt, to seek U.S. Supreme Court review**", the News-Times reports that: "Attorneys for bankrupted Infowars host Alex Jones will ask the nation's highest court to overturn his $1.4 billion debt to Sandy Hook families that he defamed."[7]

The issue of fraud or collusion was never raised or litigated in the consolidated Connecticut defamation cases for the simple reason that the parties to said cases (and this Chapter 7 bankruptcy proceeding) were and are acting in collusion. If the requested appeal is **not** allowed, and the plain and operative evidence of fraud or collusion described herein (see Docket 1120-1) is **not** presented and given **due consideration**, then the damage done to the **1st Amendment** by the collusive $1.3 Billion Connecticut default judgment might not just continue to be difficult to calculate; the damage done might become **incalculable**.

## CONCLUSION

**WHEREFORE**, **for the Foregoing Reasons**, Pro Se Attorney Intervenor/Interested Party, **Robert Wyn Young**, respectfully submits that the undersigned's **Motion for Leave to Appeal Order Denying Intervention to Present Evidence of Fraudulent Judgment** is **well~taken**, and **it** should be **granted**. In accordance with **FRBP 8004(b)(1)(E)**, the undersigned is attaching a copy of the Bankruptcy Court's April 22, 2025, **Order Denying Motion for Leave to Intervene** (Docket 1129).

---

[7] Ryser, Rob. "Alex Jones, citing 'devastating' results of $1.4B Sandy Hook debt, to seek U.S. Supreme Court review". News-Times, April 29, 2025:
https://www.newstimes.com/news/article/alex-jones-us-supreme-court-sandy-hook-debt-family-20300091.php?utm_content=hed&sid=67d25a8d609e2

                                          Respectfully submitted,

Date:  **05/04/25**                                        */s/ Robert Wyn Young*
                                                        Robert Wyn Young (OH Bar #0064876)
                                                        Law Office of R. Wyn Young, Esq.
                                                        1421 Lexington Avenue, #180
                                                        Mansfield, OH 44907
                                                         Email: rwynyoung25@gmail.com
                                                         Phone: (513) 238~2821
                                                        *Pro Se Attorney Intervenor/Interested Party*

## FRBP 8015(h) CERTIFICATE OF COMPLIANCE

      I hereby certify that the foregoing **Motion for Leave to Appeal** complies with the applicable 5,200~word limitation under FRBP 8013(f)(3)(A), excluding parts exempted under FRBP 8015(g) (239 words), and that such certification is based on a **4,245~word** calculation of said **Motion** by my word processing program.

                                                         */s/ Robert Wyn Young*
                                                         Robert Wyn Young

## CERTIFICATE OF SERVICE

      I hereby certify that on **May 4, 2025**, I caused a copy of the foregoing **Motion for Leave to Appeal**, and the attached **Order** (Docket 1129) being appealed, to be served on all subscribed parties by the Electronic Case Filing System of the United States Bankruptcy Court for the Southern District of Texas.

                                                         */s/ Robert Wyn Young*
                                                         Robert Wyn Young