UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

━━━━━━━━━━━━━━━━━━━━━━━━━━━

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| ROBERT WYN YOUNG | ) | Civil Action No. 4:25-cv-02057 |
| | ) | |
|    Appellant. | ) | |

━━━━━━━━━━━━━━━━━━━━━━━━━━━

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| ALEXANDER E. JONES | ) | Bankruptcy Case No. 22-33553 (CML) |
| | ) | |
|    Debtor. | ) | |

━━━━━━━━━━━━━━━━━━━━━━━━━━━

### APPELLANT'S REQUEST FOR CERTIFICATION UNDER 28 U.S.C. § 158(d)(2)(A)

Pursuant to **FRBP 8006(f)**, the undersigned Pro Se Attorney Intervenor/Interested Party~Appellant, **Robert Wyn Young** ("Appellant", "Interested Party~Appellant", or "the undersigned"), hereby requests certification by the **District Court**, under **28 U.S.C. § 158(d)(2)(A)**, to allow for an immediate and direct appeal to the **Fifth Circuit Court of Appeals**, of the Bankruptcy Court's April 22, 2025, **Order Denying Motion for Leave to Intervene** in Case No. 22-33553 (CML) (Docket 1129, copy attached). The grounds for this **Request for Certification under 28 U.S.C. § 158(d)(2)(A)** are more fully set forth below.

1

**RELEVANT FACTS**

The subject Chapter 7 bankruptcy arises, in large part, from an alleged final judgment of $1.43 Billion entered against the Debtor~Appellee, Alexander E. Jones (herein referred to as "Alex Jones" or "Jones"), on December 22, 2022, in consolidated Connecticut state court defamation cases arising from or related to an alleged mass school shooting in Sandy Hook, Connecticut, occurring on December 14, 2012, and styled as <u>Erica Lafferty, et al. v. Alex Emric Jones, et al.</u>, UWY-CV-18-6046436-S; <u>William Sherlach v. Alex Jones, et al.</u>, UWY-CV-18-6046437-S; and <u>William Sherlach v. Alex Emric Jones, et al.</u>, UWY-CV-18-6046438-S (herein also collectively referred to as "the Connecticut defamation cases" or as "the consolidated Connecticut defamation cases").[1]

On appeal by Jones, the Connecticut Appellate Court ruled that: "The judgments are reversed only as to the plaintiffs' CUTPA claim and the cases are remanded with direction to vacate the court's award of $150,000,000 in punitive damages pursuant to CUTPA; the judgments are affirmed in all other respects." <u>Erica Lafferty, et al. v. Alex Emric Jones, et al.</u>, No. AC 46131, slip op. at 62 (Conn. App. Ct. December 10, 2024). Thus, the Connecticut Appellate Court reduced the alleged final judgment against Alex Jones in the consolidated Connecticut defamation cases from approximately $1.43 Billion, to approximately $1.3 Billion.

In late 2023 or early 2024, the undersigned heard Alex Jones and Attorney Norm Pattis speaking in a cagey way on Infowars about their Connecticut Sandy Hook appeal, and the undersigned decided to look into it. In then reviewing the trial and appellate court dockets in the

---

[1] Unless specified otherwise in this **Request for Certification**, all references to the "Trial Ct. Dckt." pertain to the trial court Case Detail/Docket for <u>Erica Lafferty, et al. v. Alex Emric Jones, et al.</u>, UWY-CV-18-6046436-S (viewable at: https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=UWYCV186046436S). All citations to "(Docket __)" reference the case docket in the bankruptcy proceeding, Case No. 22-33553 (CML).

2

matter of <u>Lafferty, et al. v. Jones, et al.</u>, CT A.C. No. 46131, appeal from Superior Court Docket No. UWY-CV18-6046436-S (both also fully cited, *supra*), the undersigned **promptly** discovered **unequivocal** evidence that Alex Jones threw the defense of the Connecticut Sandy Hook defamation cases with his **very first responsive pleadings** (i.e., by deliberately failing to claim **federal question jurisdiction** when removing the related <u>Lafferty</u> and <u>Sherlach</u> Connecticut **1st Amendment** lawfare cases to federal court). Indeed, as the undersigned came to learn in conducting further and diligent research, Jones' doing so was part of a broader, two~part and **treasonous** conspiracy to undermine or destroy our **1st** and **2nd Amendments**. Upon discovering confirming probable cause evidence of the two~part and **treasonous** Sandy Hook conspiracy, the undersigned became **duty~bound**, as a state and federally~licensed attorney, who is oathbound to support and defend the United States Constitution, **to expose it**. On November 1, 2024, the undersigned began publicly pursuing a public advocacy case to expose the two~part and treasonous Sandy Hook conspiracy.

On February 24, 2025, the undersigned emailed the Chapter 7 Trustee a **written explanatory statement** and **evidentiary submission** concerning the fraud or collusion described herein. (Docket 1120-4 through 1120-10) Receiving no response, the undersigned again emailed the Chapter 7 Trustee again on February 27, 2025, requesting confirmation of receipt of the first email, providing an executive summary of the operative evidence of fraud giving rise to the subject Chapter 7 bankruptcy (i.e., **Alex Jones' deliberate failure to claim federal question jurisdiction in 1st Amendment cases**), and submitting additional evidence in the form of a demonstrative PowerPoint exhibit summarizing the Connecticut U.S. District Court Remand file (cited in full, below). (Docket 1120-11 and 1120-12) On February 28, 2025, the Chapter 7 Trustee sent the undersigned an email confirming his receipt of the February 24th and 27th emails. The Chapter 7

Trustee's February 28th email did **not**, in any way, respond to the credible allegations, written explanations, or evidentiary submissions regarding fraud/collusion the undersigned had submitted. (Docket 1120-13)

On March 4, 2025, the undersigned sent a reply email to the Chapter 7 Trustee, his two (2) attorneys, and the attorney for the United States Trustee, **(1)** setting forth/reiterating reasonable and well~founded administrative questions/requests, **(2)** providing an additional demonstrative aid/exhibit regarding a Chapter 7 trustee's duties in response to a credible allegation of fraud or collusion, and **(3)** issuing well~founded and substantive **Legal Notices & Demands** concerning a proper and statutorily/ethically~mandated response to the undersigned's credible allegation of fraud/collusion. (Docket 1120-14 and 1120-15)

**Neither** the Chapter 7 Trustee, **nor** any of the three (3) attorneys (who were copied on the Chapter 7 Trustee's February 28th "responsive" email and on the undersigned's March 4th reply email) responded **in any way** to the undersigned's March 4th reply, well~founded ministerial/administrative requests and questions, or well~founded and substantive **Legal Notices & Demands**, set forth therein. For this reason, among others identified in the **Motion for Leave to Intervene** (Docket 1120 at 8-9), it became incumbent upon the undersigned to promptly seek leave on March 19, 2025 (Docket 1120), to intervene in the subject bankruptcy proceeding, as a pro se litigant, to protect the undersigned's interests as a United States citizen and state and federally~licensed attorney in ensuring: **(1)** the integrity of the federal judicial system; **(2)** the protection of the **1st Amendment** to the United States Constitution; and **(3)** the efficacy of the undersigned's efforts in fulfilling the undersigned's duties to protect and defend the Constitution. These **legitimate** and **substantial** interests were and are **not** being adequately represented by the Chapter 7 Trustee, or by any of the creditors or other parties, all of whom, to date, had failed or

4

refused to bring the egregious and obvious fraud (more fully described *infra*) to the attention of the Bankruptcy Court.

On April 8, 2025, the Connecticut Families creditors filed an **Opposition to Motion for Leave to Intervene by Robert Wyn Young** (Docket 1124) that failed to comply with the pre~response conference requirements of **BLR 9013-1(g)(1)** and which argued only that the undersigned lacks standing to intervene. On April 11, 2025, the undersigned filed a **Motion to Strike Connecticut Families' Opposition to Motion for Leave to Intervene** (Docket 1126) and a **Reply in Support of Motion for Leave to Intervene to Present Evidence of Fraudulent Judgment** (Docket 1128) [in the event the Court denied the undersigned's **Motion to Strike** (Docket 1126), or if the Court otherwise considered any of the arguments asserted in the **Connecticut Families' Opposition** (Docket 1124)].

On April 22, 2025, the Bankruptcy Court issued an **Order Denying Motion for Leave to Intervene** (Docket 1129) on the basis of lack of standing, i.e., according to the Bankruptcy Court: "Young has no identifiable economic interest in this case." and "The concerns raised by Young are adequately represented by existing parties and permitting intervention risks causing undue delay in a case that has been pending since December 2022." (Docket 1129 at 2) The Bankruptcy Court provided no rationale for these conclusory statements/holdings. Further, the Bankruptcy Court simply adopted the lack of standing argument the Connecticut Families asserted in their non~compliant **Opposition to Motion for Leave to Intervene**, making no mention of the undersigned's well~founded and properly~supported **Motion to Strike** the same. (Docket 1126 and 1129) Instead, the Bankruptcy Court cited In re Acis Cap. Mgmt., 604 B.R. 484, 513 (N.D. Tex. 2019), for the position that: "The decision whether to allow intervention is wholly discretionary under Rule 2018...even where each required element is met." (Docket 1129 at 1)

The undersigned respectfully submits that, under the circumstances of this case and controlling statutory and case law, the Bankruptcy Court abused its discretion in denying the requested intervention to present operative, admissible, and dispositive evidence of fraud or collusion between parties to the $1.3 Billion default judgment debt at issue and the bankruptcy proceeding chiefly arising therefrom.

## QUESTION PRESENTED

In view of the **absolute bar** of bankruptcy discharge for debts incurred by fraud or collusion under **Section 523(a)(2)(A)** of the Bankruptcy Code [as recognized/confirmed by unanimous decision of the Supreme Court in **Bartenwerfer v. Buckley**, 598 U.S. 69 (2023)], does a bankruptcy court abuse its discretion in denying a **Motion for Leave to Intervene to Present Evidence of Fraudulent Judgment** where: **(1)** operative and admissible evidence demonstrates **collusion between the parties** to the underlying lawsuit/judgment debt and the bankruptcy proceeding arising therefrom; **(2)** the **Chapter 7 Trustee fails or refuses** to fulfill his duties **to investigate and report** the credible allegation of fraud or collusion; and **(3)** the intervenor has suffered at least a **minimal** or **indirect injury** as a result of the existing parties' fraud or collusion and seeks intervention for the limited and specific purpose of submitting evidence of said fraud or collusion to the bankruptcy court?

The undersigned respectfully submits that the question presented should be answered **affirmatively** and that, under the circumstances of this case, it was, indeed, an **abuse of discretion** for the Bankruptcy Court to deny the undersigned's requested intervention to present evidence of fraudulent judgment.

## RELIEF SOUGHT

On appeal, the undersigned Pro Se Attorney Intervenor/Interested Party~Appellant, **Robert Wyn Young**, respectfully requests the following forms of relief: **(1)** a **reversal** of the **Order Denying Motion for Leave to Intervene** (Docket 1129); **(2)** a **legal finding** that Alex Jones' obviously and deliberately~ineffective July 2018 Notices of Removal in the <u>Lafferty</u> and <u>Sherlach</u> cases constitute **operative evidence** of **(a) collusion** or **self~sabotage by the defense** and, thus, of **(b)** the **fraudulent nature** of the $1.3 Billion Connecticut state court judgment giving rise to the instant Chapter 7 bankruptcy, **as a matter of law**, because reasonable minds cannot reasonably differ in this regard; and **(3)** a **remand** of this matter to the Bankruptcy Court with appropriate instructions based upon and affirming the **reversal of Order** and **legal finding** herein requested.

## WHY A DIRECT APPEAL SHOULD BE ALLOWED

1. **An Immediate Appeal from the Order Denying Motion for Leave to Intervene (Docket 1129) May Materially Advance the Progress or Affect the Ultimate Outcome or Termination of the Chapter 7 Case in Which this Appeal is Taken Because: (A) the $1.3 Billion Connecticut State Court Judgment is Blatantly Fraudulent, and (B) Bankruptcy Relief is Unequivocally <u>Not</u> Available for Debts Incurred by Fraud or Collusion under Section 523(a)(2)(A) and <u>Bartenwerfer v. Buckley</u>, 598 U.S. 69 (2023).**

    **A. The $1.3 Billion Connecticut State Court Judgment is Blatantly Fraudulent.**

    The following **red flags** associated with and pointing to the fraudulent nature of the $1.3 Billion Connecticut state court judgment giving rise to the instant Chapter 7 bankruptcy are obvious and impossible to miss: **(1)** a $1.43 Billion (now, $1.3 Billion) judgment entered in consolidated defamation cases against a journalist, **(2)** by default and after appearance was made, **(3)** following a remand (or remands) of the consolidated Connecticut Sandy Hook cases by the federal court for **lack of subject matter jurisdiction**, **(4)** in consolidated **1st Amendment** lawfare

7

cases. The described **red flags** point any reasonable and diligent creditor or investigator to the Lafferty **U.S. District Court remand file** [Lafferty Fed Ct. Remand File (Full), Trial Ct. Dckt. 112.00, 11/21/18 (Docket 1120-1)] which, of course, is both part of and included in the Lafferty Connecticut state court case file.

**How, in the world, could the United States District Court for the District of Connecticut have ever, possibly, lacked subject matter jurisdiction to rule on the 1st Amendment~based, Anti~SLAPP Special Motion to Dismiss** that Alex Jones filed with said federal court in the Lafferty case on July 20, 2018?? (Docket 1120-1, at 151~204) There's **only one way** that could possibly have happened; and that was **for Alex Jones to deliberately fail to claim federal question jurisdiction, under 28 U.S.C. § 1331, in his July 13, 2018, Notice of Removal of the Lafferty case**. And that is exactly what Alex Jones did[2,3], and that is exactly what the Connecticut Sandy Hook Plaintiffs pointed out on the 1st page of their successful July 31, 2018, Motion to Remand, specifically, that: "defendants' only asserted basis for federal jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332." (Docket 1120-1, at 268~293) Diversity of citizenship, as it happens, did **not** even exist on the face of the Lafferty Complaint. (Docket 1120-1, at 19~61)

The consolidated Connecticut defamation cases against Alex Jones should **never**, following **honest** and **proper** (i.e., **non~collusive**) removals to federal court, have been back to

---

[2] See Alex Jones' Notice of Removal in Lafferty, U.S. District Court Case No. 3:18-cv-01156, Document 1, Filed 07/13/18 **(Docket 1120-1, at 11~82)**.

[3] See, also, Alex Jones' Notice of Removal in Sherlach, U.S. District Court Case No. 3:18-cv-01269, Document 1, Filed 07/31/18 [attached as Exhibit A to Alex Jones' 07/31/18 Lafferty state court Notice of Filing Notice of Removal (of the related Sherlach case); see Lafferty Trial Ct. Dckt. 110.00]; and Alex Jones' Motion to Extend Deadline to Respond to Motion to Remand (both Lafferty and Sherlach cases removed on asserted basis of diversity, alone). **(Docket 1120-1, at 319~322)**.

8

the state and local Connecticut court, the worst possible venue for resolution of these highly~charged, highly~controversial, and highly~suspicious defamation cases. The proof is in the pudding; and the pudding here is an outrageous, **1st Amendment speech~chilling $1.43 Billion default judgment**, boiled~down to a mere $1.3 Billion by the Connecticut Appellate Court after hearing the best arguments Alex Jones had to offer.

Alex Jones' obviously and deliberately~ineffective July 2018 Notices of Removal in the Lafferty and Sherlach cases constitute **operative evidence of collusion or self~sabotage by the defense** and, thus, of the fraudulent nature of the $1.3 Billion Connecticut state court judgment giving rise to the instant Chapter 7 bankruptcy, **as a matter of law**, meaning that reasonable minds cannot reasonably differ in this regard.

### B. Bankruptcy Relief is Unequivocally <u>Not</u> Available for Debts Incurred by Fraud or Collusion under Section 523(a)(2)(A) and Bartenwerfer v. Buckley, 598 U.S. 69 (2023).

"Collusion" is both defined as and occurs "when two or more parties secretly agree to **defraud** a third-party of their rights or accomplish an illegal purpose." [Legal Encyclopedia, Legal Information Institute, Cornell Law School, https://www.law.cornell.edu/wex/collusion (last visited March 16, 2025), emphasis added.] Section 523(a)(2)(A) of the Bankruptcy Code states:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The quoted statutory prohibition of Chapter 7 discharge for fraudulently~incurred debts is **absolute**. In Bartenwerfer v. Buckley, 598 U.S. 69 (2023), the Supreme Court of the United States

9

unanimously held that **debts incurred by fraud cannot be discharged in bankruptcy**, even if the debtor didn't personally commit the fraud.

Jones' filing of a **deliberately~ineffective** Notice of Removal in <u>Lafferty</u> on July 13, 2018, followed promptly by his July 20, 2018, filing of a potentially~dispositive **1st Amendment ~based, Anti~SLAPP Special Motion to Dismiss** (which Jones **effectively ensured** would not be worth the paper it was written on) (Docket 1120-1, at 11~82 and 151~ 204) was a cynical and sophomoric sleight of hand to abuse and undermine not only **federal judicial process**, but also the **Constitution**, itself, which both establishes the federal judiciary and enumerates our Bill of Rights.

A bankruptcy court's discretion may be limited when dealing with an **ultimate** or **dispositive issue**. As a pertinent article from the Civil Resource Manual at Justice.gov states:

> *Appellate courts may hear interlocutory appeals, in their discretion where "exceptional circumstances warrant," when (1) the order appealed from involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.* *28 U.S.C. §§ 158(a) (district courts from bankruptcy courts), 158(c) (bankruptcy appellate panels from bankruptcy courts), 1292(b) (circuit courts from district courts); Matter of Zech, 185 B.R. 334 (D. Neb. 1995); In re Ionosphere Clubs, Inc., 179 B.R. 24, 26-27 (S.D.N.Y. 1995); In re EDP Med. Computer Sys., Inc., 178 B.R. 57, 59-60 (M.D. Pa. 1995); In re 1820-1838 Amsterdam Equities Inc., 176 B.R. 127, 129 (S.D.N.Y. 1994); In re IBI Sec. Serv., Inc., 174 B.R. 664, 669-71 (E.D.N.Y. 1994) (all discussing factors; citing cases).* *"To establish that an order contains a controlling question of law, it must be shown that either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation."* *IBI Sec. Serv., 174 B.R. at 670; see In re Capen Wholesale, Inc., 184 B.R. 547 (N.D. Ill. 1995) (controlling issue of law need not be outcome determinative; it need only be an "important one, which could have significantly affected the bankruptcy proceedings below").*[4] [Emphasis as in original.]

---

[4] United States Department of Justice, Civil Resource Manual: 96. The "Who, What, When, Where, Why, And How" of Appeals in Bankruptcy Proceedings – Generally, at p. 7 of 11. [https://www.justice.gov/archives/jm/civil-resource-manual-96-who-what-when-where-why-and-how-appeals-bankruptcy -proceedings] (accessed April 27, 2025).

The undersigned respectfully submits that, in this case, the **Order Denying Motion for Leave to Intervene** (Docket 1129) involves a controlling question of law, and that the requested certification for an immediate appeal from said **Order** may materially advance or affect the ultimate outcome or **termination** of the instant bankruptcy proceeding, because, under Section 523(a)(2)(A) and Bartenwerfer, *supra*, bankruptcy relief is unequivocally **not** available for debts incurred by **fraud** or **collusion**.

Accordingly, as an immediate appeal from the Order denying intervention to present evidence of fraudulent judgment (Docket 1129) may materially advance the progress or affect the ultimate outcome or **termination** of the instant Chapter 7 case, certification is appropriate under **28 U.S.C. § 158(d)(2)(A)(iii)**.

2. **The Order Denying Intervention to Present Evidence of Fraudulent Judgment in Alex Jones' Pending Chapter 7 Bankruptcy Case Involves a Matter of Public Importance.**

The Order herein appealed (Docket 1129) involves a matter of public importance because any validation of the fraudulent $1.3 Billion Connecticut state court default judgment against Alex Jones, by provision of bankruptcy relief respecting same, will further undermine the **federal judicial system** and will further damage the **1st Amendment**.

The "**Alex Jones Sandy Hook Case**" (as the consolidated Connecticut defamation actions are known), with its headline~grabbing $1.43 Billion (now $1.3 Billion) adverse default judgment against a purported journalist, has developed to become one of the most infamous legal proceedings in the history of our republic, receiving massive media attention both domestically and abroad. The **chilling effects** on free speech and freedom of the press of a $1.3 Billion adverse default judgment against an alleged journalist are difficult to calculate and impossible to avoid.

According to Google AI, which is aptly referenced for collective public thought/sentiment on matters of public note: "Leading publications have discussed the potential chilling effect of the

$1.4 billion judgment against Alex Jones on freedom of speech and the press. The concern is that this large financial burden could discourage individuals and media outlets from expressing views that might be perceived as controversial or harmful, even if they are protected by the First Amendment." The public importance of the $1.3 Billion Connecticut state court default judgment, and of an Order (i.e., Docket 1129) keeping the **true nature** of said default judgment from being or becoming publicly known and appreciated, is also and well demonstrated by the fact that **even before** the unprecedented verdict and default judgment for $1.43 Billion was returned and entered in the fall of 2022, William & Mary Law School convened a panel of experts and published an article in the summer of 2022 titled, "**What Does the Alex Jones Case Mean for the First Amendment and Disinformation? Leading Scholars, Lawyers Provide Analysis**".[5]

The collusive and deliberately~ineffective removal of the Connecticut defamation cases to federal court, followed by the filing of a potentially~dispositive **1st Amendment~based, Anti~SLAPP Special Motion to Dismiss** (which Jones **effectively ensured** would not be worth the paper it was written on) (Docket 1120-1, at 11~82 and 151~ 204), was nothing less than an **abuse of federal judicial process**. Jones colluded with the Connecticut Families to make **a show of a fight** in federal court, wasting the valuable time and limited resources of the Connecticut U.S. District Court, and generating a **false impression** among the public, via Jones' filed, but terminated **Special Motion to Dismiss**, that well~established **1st Amendment** jurisprudence [e.g., N.Y. Times Co. v. Sullivan, 376 U.S. 254 (1964)] is no longer valid or has been reversed. (Docket 1120-1, at 151~204 and 385~398)

---

[5] Freeman, George; Lidsky, Lyrissa Barnett; Oberlander, Lynn; and Zick, Timothy, "What Does the Alex Jones Case Mean for the First Amendment and Disinformation? Leading Scholars, Lawyers Provide Analysis" (August 8, 2022). Popular Media. 591. https://scholarship.law.wm.edu/popular_media/591

This **abuse of federal judicial process**, by colluding parties, continues unabated in the instant Chapter 7 bankruptcy proceeding. It is ironic, indeed, that the Bankruptcy Court is concerned with "undue delay" in a proceeding that has been pending, **needlessly** and **unjustly**, since December 2022, particularly because the intervention the undersigned seeks, in order to present plain and operative evidence of fraud or collusion, can promptly bring a termination to what is most assuredly **not** a real case or controversy.

In an April 29, 2025, article titled, "**Alex Jones, citing 'devastating' results of $1.4B Sandy Hook debt, to seek U.S. Supreme Court review**", the News-Times reports that: "Attorneys for bankrupted Infowars host Alex Jones will ask the nation's highest court to overturn his $1.4 billion debt to Sandy Hook families that he defamed."[6]

The issue of fraud or collusion was never raised or litigated in the consolidated Connecticut defamation cases for the simple reason that the parties to said cases (and this Chapter 7 bankruptcy proceeding) were and are acting in collusion. If the requested appeal is **not** allowed, and the plain and operative evidence of fraud or collusion described herein (see Docket 1120-1) is **not** presented and given **due consideration**, then the damage done to the **1st Amendment** by the collusive $1.3 Billion Connecticut default judgment might not just continue to be difficult to calculate; the damage done might become **incalculable**.

Accordingly, as the Order herein appealed (Docket 1129) involves a matter of public importance, certification for a direct and immediate appeal to the Fifth Circuit Court of Appeals is appropriate under **28 U.S.C. § 158(d)(2)(A)(i)**.

---

[6] Ryser, Rob. "Alex Jones, citing 'devastating' results of $1.4B Sandy Hook debt, to seek U.S. Supreme Court review". News-Times, April 29, 2025:
https://www.newstimes.com/news/article/alex-jones-us-supreme-court-sandy-hook-debt-family-20300091.php?utm_content=hed&sid=67d25a8d609e2

## CONCLUSION

**WHEREFORE**, **for the Foregoing Reasons**, Pro Se Attorney Intervenor/Interested Party~Appellant, **Robert Wyn Young**, respectfully submits that **Appellant's Request for Certification Under 28 U.S.C. § 158(d)(2)(A)** is **well~founded**, and it should be **granted**. In accordance with FRBP 8006(f)(2)(E), the undersigned is attaching a copy of the Bankruptcy Court's April 22, 2025, **Order Denying Motion for Leave to Intervene** (Docket 1129).

Respectfully submitted,

Date:  **05/15/25**                                              */s/ Robert Wyn Young*
                                                                              Robert Wyn Young (OH Bar #0064876)
                                                                              Law Office of R. Wyn Young, Esq.
                                                                              1421 Lexington Avenue, #180
                                                                              Mansfield, OH 44907
                                                                              Email: rwynyoung25@gmail.com
                                                                              Phone: (513) 238~2821
                                                                              *Pro Se Attorney Intervenor/*
                                                                              *Interested Party~Appellant*

## FRBP 8015(h) CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing **Appellant's Request for Certification Under 28 U.S.C. § 158(d)(2)(A)** complies with the 5,200~word limitation under FRBP 8013(f)(3)(A), **if applicable**, excluding parts exempted under FRBP 8015(g) (290 words), and that such certification is based on a **3,645~word** calculation of said **Request** by my word processing program.

*/s/ Robert Wyn Young*
Robert Wyn Young

## CERTIFICATE OF SERVICE

I hereby certify that on **May 15, 2025**, I caused a copy of the foregoing **Appellant's Request for Certification Under 28 U.S.C. § 158(d)(2)(A)**, and the attached **Order** being appealed (Docket 1129), to be served on all subscribed parties by the Electronic Case Filing System of the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Robert Wyn Young*
Robert Wyn Young