**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| | § |
| **In re:** | § **Chapter 7** |
| | § |
| **ALEXANDER E. JONES,** | § **Case No. 22-33553 (CML)** |
| | § |
| **Debtor.** | § |
| | § |

**SUMMARY COVERSHEET TO THE THIRD INTERIM FEE APPLICATION**
**OF JONES MURRAY LLP, AS BANKRUPTCY COUNSEL FOR CHAPTER 7**
**TRUSTEE, CHRISTOPHER R. MURRAY, FOR ALLOWANCE OF COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD**
**FROM FEBRUARY 1, 2025 THROUGH AND INCLUDING APRIL 30, 2025**

| | | |
|---|---|---|
| **Name of Applicant:** | Jones Murray LLP | |
| **Applicant's Role in Case:** | Bankruptcy Counsel for the Chapter 7 Trustee, Christopher R. Murray | |
| **Date Order of Appointment Signed:** | July 30, 2024 [Order at DE 794] | |
| | **Beginning of Period** | **End of Period** |
| **Time period covered by this Application:** | 02/01/20205 | 04/30/2025 |
| **Time period(s) covered by prior Applications:** | 06/14/2024 | 01/31/2025 |
| **Total amounts awarded in all prior Applications:** | | $907,681.40 |
| **Total fees requested in this Application and in all prior Applications:** | | $1,030,409.50 |
| **Total fees requested in this Application:** | | $130,977.50 |
| **Total professional fees requested in this Application:** | | $130,932.50 |
| **Total actual professional hours covered by this Application:** | | 183.80 |
| **Average hourly rate for professionals:** | | $712.36 |
| **Total paraprofessional fees requested in this Application:** | | $45.00 |
| **Total paraprofessional hours covered by this Application:** | | 0.2 |
| **Average hourly rate for paraprofessionals:** | | $225.00 |
| **Reimbursable expenses sought in this Application:** | | $1,455.30 |
| **Application Cost (not included in above fees):** | | - |

| | |
|---|---:|
| **Total of other payments paid to secured claimants** | - |
| **Total of other payments paid to administrative claimants** | $6,813,399.00 |
| **Estimated Total for distribution to priority unsecured creditors** | Undetermined |
| **Estimated percentage dividend to priority unsecured creditors** | Undetermined |
| **Estimated total for distribution to general unsecured creditors** | Undetermined |
| **Estimated percentage dividend to general unsecured creditors** | Undetermined |
| **Receipts to date in Chapter 7 to date** | $12,104,671 |
| **Disbursements to date in Chapter 7 to date**[1] | $6,813,399 |
| **Current balance in the Trustee's accounts to date** | $5,291,272 |

---

[1] The figures in this table do not include ordinary course transactions of FSS.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | § |
| | § Chapter 7 |
| | § |
| ALEXANDER E. JONES, | § Case No. 22-33553 (CML) |
| | § |
| Debtor. | § |
| | § |

**THIRD INTERIM FEE APPLICATION**
**OF JONES MURRAY LLP, AS BANKRUPTCY COUNSEL FOR CHAPTER 7**
**TRUSTEE, CHRISTOPHER R. MURRAY, FOR ALLOWANCE OF COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD**
**FROM FEBRUARY 1, 2025 THROUGH AND INCLUDING APRIL 30, 2025**

---

**This application seeks an order that may adversely affect you. If you oppose the application, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the application and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the application at the hearing.**

**Represented parties should act through their attorney.**

---

**TO THE HONORABLE CHRISTOPHER M. LOPEZ,**
**UNITED STATES BANKRUPTCY JUDGE:**

Jones Murray, LLP ("***JM***" or the "***Applicant***"), as Bankruptcy Counsel for the Chapter 7 Trustee, Christopher R. Murray (the "***Trustee***"), files this *Third Interim Application for Payment of Compensation and Reimbursement of Expenses* ("***Application***") for the period from February 1, 2025 through and including April 30, 2025 (the "***Application Period***"), and respectfully represents as follows:

## JURISDICTION

1.      JM submits this Application pursuant to section 330 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rule 2016 of the Federal Rules of Bankruptcy Procedures (the "***Bankruptcy Rules***"), and Rule 2016-1 of the Bankruptcy Local Rules (the "***Local Rules***").

2.      The Court has jurisdiction over the Application pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. § 1408.

## RELIEF REQUESTED

3.      JM requests that the Court enter an order (i) allowing JM's compensation for professional and paraprofessional services to the Trustee rendered during the Application Period in the amount of **$130,977.50** and reimbursement of actual and necessary expenses incurred by JM in the amount of **$1,455.30**; and (ii) award and order to be paid to JM the balance of any such fees and costs paid from funds available in the Debtor's estate.

## BACKGROUND

**A.  Bankruptcy Case Background**

4.      On July 29, 2022, Free Speech Systems, LLC ("***FSS***") filed its voluntary petition for relief under chapter 11 subchapter V of the Bankruptcy Code (the "***FSS Case***").

5.      On December 2, 2022 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (prior to the Conversion Date, the "***Jones Chapter 11 Case***", and after the Conversion Date, the "***Jones Chapter 7 Case***").  The Debtor is an employee of FSS. 100 percent of the outstanding membership interests in FSS are owned by the Debtor's bankruptcy estate.

3

6. On December 13, 2022, the United States Trustee for Region 7 (Southern and Western Districts of Texas) (the "***U.S. Trustee***") appointed the Official Committee of Unsecured Creditors in the Jones Chapter 11 Case pursuant to Bankruptcy Code section 1102(a)(1).

7. The Debtor continued managing his assets as debtor and debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code until the Court entered its *Order Converting Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code* [DE 708] on June 14, 2024 (the "***Conversion Date***"). On June 21, 2024, the Court entered an order dismissing the FSS Case [Case No. 22-60043, DE 956] (the "***Dismissal Order***"), while retaining exclusive jurisdiction over several adversary proceedings and the approval of professional fees and expenses, as supplemented by the Supplemental Dismissal Order (as defined below). On the Conversion Date, the U.S. Trustee appointed Christopher R. Murray as the Chapter 7 Trustee in the Jones Chapter 7 Case.

**B. JM Retention and Fees**

8. On July 3, 2024, Trustee filed the *Application to Employ Jones Murray LLP as General Bankruptcy Co-Counsel for the Chapter 7 Trustee* [DE 755], which the Court approved on July 30, 2024 [DE 794].

9. On July 30, 2024, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Trustee* [DE 793] (the "***Interim Compensation Order***").

10. On December 10, 2024, the Court entered the *Order Granting First Interim Fee Application* [DE 981] and JM was awarded fees of $427,773.00 and reimbursement of expenses of $5,442.62.

11.     On March 11, 2025, the Court entered the *Order Granting Second Interim Fee Application* [DE 1112] and JM was awarded fees of $471,659.00 and reimbursement of expenses of $2,806.78.

12.     This is JM's third interim fee application. During the Application Period, JM filed three (3) monthly fee statements, which are attached hereto as **Exhibit 4**, and are summarized below:

| Period | Expenses Incurred | Fees Incurred | Total Fees and Expenses Paid | Amount Outstanding |
|---|---|---|---|---|
| 02/01/25-02/28/25 | $1,455.30 | $69,612.00 | $57,144.90 | $13,922.40 |
| 03/01/25-03/31/25 | $0.00 | $31,368.00 | $25,094.40 | $6,273.60 |
| 04/01/25-04/30/25[1] | $0.00 | $29,997.50 | $23,998.00 | $5,999.50 |
| **Total:** | **$1,455.30** | **$130,977.50** | **$106,237.30** | **$26,195.50** |

13.     This Application requests that the Court enter an order (i) allowing JM's compensation for professional and paraprofessional services to the Trustee rendered during the Application Period in the amount of **$130,977.50** and reimbursement of actual and necessary expenses incurred by JM in the amount of **$1,455.30** and (ii) award and order to be paid to JM the balance of any such fees and costs paid from funds available in the Debtor's estate. Summary calculations of the fees and expenses requested in this Application are attached hereto as **Exhibit 1**, **Exhibit 2**, and **Exhibit 3**, with detailed monthly interim statements attached hereto as **Exhibit 4**.

14.     The fees and expenses requested are reasonable and all amounts requested were for actual and necessary services rendered on behalf of the Trustee.

---

[1] The objection deadline to JM's *Eleventh Monthly Fee Statement* (April 1, 2025 to April 30, 2025) is May 26, 2025. JM does not anticipate any objections to its *Eleventh Monthly Fee Statement* and anticipates that it will receive payment in accordance with the Interim Compensation Order prior to entry of an order approving this Application. This line reflects receipt of that anticipated payment.

16.     JM reserves the right to request additional compensation for the Application Period to the extent that it is later determined that time or disbursement charges for services rendered or disbursements incurred during such time period have not yet been submitted.

18.     No agreement or understanding exists between JM and any other entity for sharing of any compensation or reimbursement in this case.

19.     JM has provided the information required by the U.S. Trustee's Guidelines and the Interim Compensation Order.

20.     JM has served as general bankruptcy co-counsel to the Trustee and, in that capacity, has rendered legal services for the benefit of the Trustee and the Debtor's estate.

## STANDARDS RELEVANT TO AWARDING REASONABLE COMPENSATION

21.     Section 330 of the Bankruptcy Code authorizes the Court to award JM reasonable compensation for its actual and necessary services rendered and reimbursement of its actual and necessary expenses incurred in the rendering of services as special counsel to the Trustee.  Section 330 provides:

(a)(1)   After notice to the parties in interest and to the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103:

(A)   reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person or attorney and by any paraprofessional person employed by any such person; and

(B)   reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

22.     This Fee Application substantiates the total amount that JM seeks for fees and expenses in accordance with each element of the customary standards applied to fee applications.

These standards are set forth in (i) Bankruptcy Rule 2016 and (ii) *In re First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir. 1977), *cert. denied*, 431 U.S. 904 (1977).

23.     In *First Colonial*, the Fifth Circuit adopted the following twelve factors to apply to the determination of awards of attorneys' fees in bankruptcy cases: (i) time and labor required; (ii) the novelty and difficulty of the questions; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the professional due to acceptance of the case; (v) the customary fee; (vi) whether the fee is contingent or fixed; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *First Colonial*, 544 F.2d at 1298-99. These factors were taken from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), a non-bankruptcy case, and are commonly referred to as the "*Johnson* factors." The original *Johnson* factors, as embraced by *First Colonial,* remain applicable to the determination of reasonableness of fees awarded under the Bankruptcy Code. *See* 15 King, *Collier on Bankruptcy*, ¶ 330.04[3] at 330-35 to 330-41. A majority of the *Johnson* factors are now codified under Bankruptcy Code Section 330(a). *Id.*

24.     The Fifth Circuit has rejected the "hindsight" or "material benefit" standard that was originally set forth in *In re Pro-Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir. 1998). In its place, the Fifth Circuit enunciated a new, prospective standard based on whether the services of counsel were reasonably likely to benefit the estate at the time such services were rendered. *See In re Woerner*, 783 F.3d 266, 276 (5th Cir. 2015).  All services rendered by JM satisfy the *Woerner* standard because they were reasonably likely to benefit the estate at the time rendered.

## NATURE AND EXTENT OF SERVICES PROVIDED BY JM

25.     JM expended **184** hours of time to provide legal services during the Application Period. The total fees of $130,977.50 include professional fees in the amount of **$130,932.50** and paraprofessional fees in the amount of **$45.00**.

26.     A summary of fees requested by professional is attached hereto as **Exhibit 1**. A summary of fees by project category is attached hereto as **Exhibit 2**. A summary of expenses is attached hereto as **Exhibit 3**. Copies of JM's monthly fee statements are attached hereto as **Exhibit 4** in accordance with the Court's procedures and provide detailed descriptions of the services JM rendered with respect to each of these categories.

27.     JM classified all services performed for which compensation is sought in eight (8) categories.  JM attempted to divide its services rendered to the Trustee in these bankruptcy cases into appropriate categories.  However, because certain services may relate to more than a single category, services pertaining to one category may be included in another category.

28.     Services rendered by JM during the Application Period related to the following non-exhaustive list of matters: (i) remand of removed state court litigation; (ii) disposition of assets, including abandonment of certain assets; (iii) administration of nonexempt assets; (iv) administration of certain contractual rights, including but not limited to book contracts and any property or payment rights thereunder; (v) assumption or rejection of executory contracts; (vi) on-going litigation between the Debtor and third parties, including the Connecticut and Texas Families, the Debtor's pending divorce proceeding, and removed matters; (vii) pending appellate matters in state and federal court; (viii) claims of Connecticut and Texas Families; (ix) compromise relating to claims of Connecticut and Texas Families; (x) representing the Trustee in discovery propounded by the Debtor, including a deposition of the Trustee conducted by the Debtor; (xi)

FUAC's interest in purchasing assets of FSS; (xii) potential sale of equity interests of FSS; (xiii) evaluation of potential claims and/or causes of action against third parties; (xiv) inquiries and demands of non-party in interest without standing and their failed attempt to intervene in the bankruptcy case; (xv) compliance relating to professional compensation; and (xvi) general case administration, project management, and responding to inquiries of creditors or parties-in-interest.

## A. Asset Analysis and Recovery

29.     JM expended **61.4** hours of time to provide services in this category. Professional and paraprofessional fees in this category total **$47,585.00**.

30.     The majority of time billed by JM during the Application Period in this category relate to a potential equity sale, analyzing next steps with respect to the Debtor's assets and status of FSS assets, and evaluation of property interests including royalties due under various book contracts, an assigned lien relating to PQPR compromise, options for sale of non-exempt assets including real estate in South Austin and current status of tenant occupying that property, turnover of certain non-exempt assets. Services rendered in this category included but were not limited to: (i) many conference calls with parties regarding a potential sale of FSS equity interests; (ii) conferences with Debtor's counsel regarding same and regarding status of FSS assets and non-exempt assets; (iii) conferences with counsel for creditors regarding same; (iv) strategic discussions and evaluation of potential sale of FSS equity interests; (v) multiple conferences with counsel for FUAC regarding interest in purchasing FSS assets but lack of interest in purchasing equity interests of FSS and motion filed by FUAC [DE 1089] relating to same; (vi) conferences with opposing counsel and with Trustee legal team regarding lien assignment to Estate from PQPR compromise; (vii) conferences and investigation relating to potential causes of action against third parties; (viii) conferences and investigation relating to pending divorce proceedings between

Debtor and current spouse; (ix) conferences regarding Debtor's self-styled *Motion for Reconsideration of this Court's Determination that No Auction for Free Speech Systems Assets Will be Conducted by the Jones Chapter 7 Estate* [DE 1131], including any response to same; (x) evaluation and investigation into various contractual interests; (xi) conferences with Debtor's book agent and publisher relating to book contracts, historic and current sales, and royalty payments made and/or due under those contracts; and (xii) Trustee legal team work and strategy sessions regarding all of the foregoing and general project management relating to all of the foregoing.

**B. Asset Disposition**

31.     JM expended **9.6** hours of time to provide services in this category. Professional and paraprofessional fees in this category total $**7,440.00**.

32.     The majority of time billed by JM during the Application Period in this category related to the evaluation of potential sale options for non-exempt assets of the Debtor, standards for abandonment of assets, and consummation of compromises approved by this Court with PQPR and ESG pursuant to Federal Bankruptcy Rule 9019. Services rendered in this category included but were not limited to: (i) Trustee legal team work and strategy sessions regarding the foregoing and general project management relating to same; (ii) conferences with counsel for ESG and PQPR regarding consummation of approved compromises; (iii) drafting of pleadings and/or documents necessary to carry out compromises with ESG and PQPR; (iv) discussions with representatives of the Debtor regarding turnover of non-exempt property, including various watches, vehicles, and real property in South Austin occupied by a month-to-month tenant; and (v) Trustee legal team work and strategy discussions regarding standards for abandonment of assets and drafting of various documents relating to same.

### C.  Assumption and Rejection of Executory Contracts/Leases

33.     JM expended **3.4** hours of time to provide services in this category. Professional and paraprofessional fees in this category total $**2,278.00**

34.     The majority of time billed by JM during the Application Period in this category relates to analyzing known contracts between the Debtor and third parties to determine whether such contracts were executory in nature, to evaluate whether to assume or reject any executory contracts, to evaluate severability issues under certain contracts that potentially had executory and non-executory provisions, and various internal Trustee legal team meetings and discussions regarding same.

### D.  Case Administration

35.     JM expended **8.5** hours of time to provide services in this category. Professional and paraprofessional fees in this category total $**6,222.50**.

36.     The majority of time billed by JM during the Application Period in this category relates meetings with the Trustee and legal team regarding general case strategies, status of pending matters, and project management relating to each of the detailed substantive matters described in other project categories. Services provided in this category also include limited discussions regarding tax matters, and communications with and responding to inquiries of interested parties and/or creditors.

### E.  Claims Administration and Objections

37.     JM expended **1.8** hours of time to provide services in this category. Professional and paraprofessional fees in this category total $**1,395.00**.

38.     The majority of time billed by JM during the Application Period in this category related to the evaluation of the Connecticut and Texas Families' claims, the appeal of litigation to

the Connecticut Supreme Court as well as its denial of the Debtor's petition for certification, and issues relating to resolution between Connecticut and Texas Families regarding their claims.

## F.  Employment/Fee Applications

39.     JM expended **33** hours of time to provide services in this category. Professional and paraprofessional fees in this category total $**16,166.50**.

40.     The majority of time billed by JM during the Application Period in this category is related to assistance with the preparation of interim fee statements and/or interim applications for retained professionals other than JM, including N&N (IT professional), Harney Partners (financial advisor), and TPS-West (accountant). Additionally, JM dedicated time in this category for the preparation of its own interim fee statements and/or interim fee applications.

41.     Services in this category included: (i) preparation of JM's *Ninth Monthly Fee Statement* [DE 1107], *Tenth Monthly Fee Statement* [DE 1125], and *Eleventh Monthly Fee Statement* [DE 1142]; (ii) preparation of JM's *Second Interim Fee Application* [DE 1086]; (iii) preparation of N&N's *Second Monthly Fee Statement* [DE 1077] and *Third Monthly Fee Statement* [DE 1109]; (iv) preparation of N&N's *First Interim Fee Application* [DE 1087]; (v) preparation of Harney Partners' *First Monthly Fee Statement* [DE 1078]; (vi) preparation of Harney Partners' *First Interim Fee Application* [DE 1088]; and (vii) preparation of TPS West's *First Monthly Fee Statement* [DE 1008] and *Second Monthly Statement* [DE 1139].

## G.  Litigation/Other Contested Matters

42.     JM expended **66.3** hours of time to provide services in this category. Professional and paraprofessional fees in this category total $**49,890.50**.

43.     The majority of time billed by JM during the Application Period in this category relates to many of the same substantive issues described in the "Asset Analysis and Recovery"

category described above. Services in this category included but were not limited to: (i) handling discovery requests and the deposition of the Trustee by the Debtor; (ii) briefing and preparing for various hearings and status conferences regarding proposed compromises; (iii) preparation of witness examinations and evidence relating to hearings on proposed compromises; (iv) drafting pleadings relating to various proposed compromises; (v) administration of assets; (vi) preparation of pleadings and evaluation of other parties' pleadings relating to the administration of various assets, preparation of pleadings relating to pending appeals,; (vii) preparation of pleadings relating to remand of removed actions; (viii) evaluation of jurisdictional and stay concerns; (ix) evaluation of potential state court enforcement proceedings; (x) effect of assigned lien on same; (xi) standards for abandonment of assets; (xii) conferences with opposing counsel; (xiii) extensive meetings with Trustee legal team to discuss strategies relating to same; and (xiv) legal research relating to same, conferences with Connecticut and Texas Families' counsel relating to resolutions between them relating to claims, conferences with Connecticut and Texas Families' counsel relating to remand of removed matters,

## ADDITIONAL STANDARDS FOR AWARDING OF ATTORNEYS' FEES

### A.   NOVELTY AND DIFFICULTY OF LEGAL PROBLEMS INVOLVED

44.    The first *Johnson* factor examines the degree of novelty and difficulty of the issues encountered by JM.  With respect to the matters described herein, numerous difficult and complex legal problems have been addressed and considered by JM, all of which have required knowledge of the application of the Bankruptcy Code, the Bankruptcy Rules, state and federal law, and court decisions interpreting the same.

### B.   CUSTOMARY FEE

45.     The next relevant factor to be considered is the reasonable hourly rate by which the reasonable number of hours expended by JM are to be multiplied. Subsumed in this analysis are the following guidelines, as noted in *Johnson*:  the customary fee charged by the applicant, awards in similar cases, the level of skill necessary, the amount involved, the results obtained, the reputation of the professional and the undesirability of the case.

46.     JM's hourly billing rates are computed at the rates JM regularly charges its hourly clients.

47.     The hourly rates charged by JM are commensurate or lower than the customary fees charged by professionals of similar experience, reputation and abilities in this community, as well as those rates charged regionally and nationally. Additionally, the hourly rates charged by JM are consistent with the amount involved in these cases, the nature of the disputes and issues addressed in these cases, the results obtained by JM, and the level of skill necessary to perform the work. Accordingly, the hourly billing rates charged by JM are reasonable.

### C.   SKILL REQUIRED FOR PERFORMANCE OF LEGAL SERVICES

48.     The number of difficult issues and matters addressed in these cases has required a high degree of skill and expertise.  JM's attorneys, with varying levels of experience and seniority, have been used effectively and efficiently to perform the tasks assigned to them and have provided valuable and effective assistance to the Trustee. A thorough understanding of the Bankruptcy Code and Bankruptcy Rules together with other state and federal law was blended with business expertise to assist the Trustee. In addition, multiple issues in these bankruptcy cases, including, but not limited to, ongoing litigation related to the Texas and Connecticut Families, appellate claims and complex issues relating to jurisdiction, remand, and removal, the FSS Case and the

Jones Case, the potential sale of equity, and examination of payment rights under various contracts, have required additional expertise from JM's attorneys. The compensation requested by JM is consistent with the compensation awarded in other cases of similar size and complexity.

### D.   RESULTS OBTAINED

49.     JM's services in this case have assisted the Trustee in his efforts to maximize the value of the estate and efficiently administer this case. This case has been handled in a professional and cost-effective manner under the circumstances.  The requested compensation is reasonable in view of the time expended, the parties involved, and the results obtained in this case.

### E.   EXPERIENCE, REPUTATION, AND ABILITY OF JM

50.     JM's attorneys, over many years, have appeared throughout the United States providing legal representation to trustees, debtors, secured creditors, unsecured creditors, and creditors' committees in proceedings under the Bankruptcy Code. Further, partners of JM, including those who have provided legal services in the instant cases, have for many years actively participated in leadership positions in various professional organizations and bar associations, and have written for local and national publications and spoken at local, state and national institutes for continuing legal education in the area of bankruptcy, creditors rights, restructuring, and fiduciary litigation.  JM's attorneys are experienced in all aspects of bankruptcy matters, possess a high level of expertise, and have an excellent reputation in the business and legal communities. Furthermore, JM has particular experience in the areas of insolvency, workouts and corporate reorganization, and the representation of trustees in bankruptcy proceedings.

### F.   CONTINGENT NATURE OF FEES AND UNDESIRABILITY OF CASE

51.     No contingent fees are requested in these cases.

### G.    TIME LIMITATIONS IMPOSED BY THE CASE

52.    The time demands of this representation have, at times, been significant for JM but JM has worked quickly, diligently, and efficiently to address the serious challenges faced by the Debtor's estate within the Application Period.

53.    These fees and costs were necessary for the proper and successful administration of the bankruptcy cases.  JM made every effort to keep all fees and costs to a minimum.

54.    At all times covered by this Fee Application, JM diligently fulfilled its duty as bankruptcy counsel for the Trustee. All services rendered by JM benefited the estates at the time that such services were rendered. Services performed by JM throughout these cases were done in a professional, skilled, and expeditious manner, requiring substantially less time than would have been required by counsel with less experience. Every action of JM was taken to reduce the legal hours expended and matters not demanding the services of senior attorneys were assigned to junior associates, or paralegals.

55.    No agreement exists between JM and any other person, firm or entity for division or sharing of compensation in these cases.

56.    The above narrative portion of this Application is primarily intended to serve as a summary recapitulation of the major areas of JM's activities and responsibilities. The exhibits provide complete summaries of the acts taken by JM on behalf of the Trustee during these cases.

**WHEREFORE**, JM requests that the Court enter an order (i) allowing JM's compensation for professional and paraprofessional services to the Trustee rendered during the Application Period in the amount of **$130,977.50** and reimbursement of actual and necessary expenses incurred by JM in the amount of **$1,455.30**; and (ii) award and order to be paid to JM the balance of any such fees and costs paid from funds available in the Debtor's estate.

Dated:  May 15, 2025.

Respectfully Submitted,

**JONES MURRAY LLP**

By:    _/s/ Erin E. Jones_
Erin E. Jones (Bar No. 24032478)
Jacqueline Q. Chiba (Bar No. 24116899)
602 Sawyer St., Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Facsimile: (832) 529-3633
erin@jonesmurray.com
jackie@jonesmurray.com

_Co-Counsel for the Chapter 7_
_Trustee, Christopher R. Murray_

## <u>CERTIFICATE OF SERVICE</u>

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in the case on May 15, 2025.

*/s/ Jacqueline Q. Chiba* _____
Jacqueline Q. Chiba

**EXHIBIT 1**

**TIMEKEEPER SUMMARY**

| Professional | Title | Rate | Hours | Total Fees |
|---|---|---|---|---|
| Erin E. Jones | Partner | $775.00 | 156.5 | $117,412.50[1] |
| Jacqueline Q. Chiba | Associate | $520.00 | 27.3 | $13,520.00[2] |
| Nancy Santana | Senior Paralegal | $225.00 | 0.2 | $45.00 |
| | | | **184** | **$130,977.50** |

[1]

---

[1] Erin Jones provided 156.5 hours of service at the hourly rate of $775.00 which totals $121,287.50. However, 5 of those hours were no charged, lowering the final fee total to $117,412.50.

[2] Jacqueline Chiba provided 27.3 hours of services at the hourly rate of $520.00 which totals $14,196.00. However, 1.3 of those hours were no charged, lowering the final fee total to $13,520.00.

**EXHIBIT 2**

**PROJECT CATEGORIES**

| PROJECT CATEGORY | TOTAL HOURS | TOTAL FEES REQUESTED |
|---|---|---|
| Asset Analysis and Recovery | 61.4 | $47,858.00 |
| Asset Disposition | 9.6 | $7,440.00 |
| Assumption and Rejection of Contracts/Leases | 3.4 | $2,278.00 |
| Case Administration | 8.5 | $6,222.50 |
| Claims Administration and Objections | 1.8 | $1,395.00 |
| Employment/Fee Application | 33 | $16,166.50 |
| Litigation/Contested Matters | 66.3 | $49,890.50 |
| | **184** | **$130,977.50** |

**<u>EXHIBIT 3</u>**

**EXPENSES**

| EXPENSES | COST |
|---|---|
| Filing/Court Fees | $502.00 |
| Travel Expenses | $14.00 |
| Litigation and Related | $939.30 |
| | **$1,455.30** |

## **EXHIBIT 4**

### **MONTHLY FEE STATEMENTS**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| | § |
| **In re:** | § **Chapter 7** |
| | § |
| **ALEXANDER E. JONES,** | § **Case No. 22-33553 (CML)** |
| | § |
| **Debtor.** | § |
| | § |

**ORDER GRANTING THIRD INTERIM FEE APPLICATION**
**OF JONES MURRAY LLP, AS BANKRUPTCY COUNSEL FOR CHAPTER 7**
**TRUSTEE, CHRISTOPHER R. MURRAY, FOR ALLOWANCE OF COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD**
**FROM FEBRUARY 1, 2025 THROUGH AND INCLUDING APRIL 30, 2025**
**[Relates to Docket No. _____]**

The Court has considered the Third Interim Application of Jones Murray LLP (the

"***Applicant***"), as Bankruptcy Counsel for Chapter 7 Trustee, Christopher R. Murray, for Allowance

of Compensation and Reimbursement of Expenses for the Period from February 1, 2025 through

and including April 30, 2025 (the "Application").  The Court orders:

1.      The Applicant is allowed interim compensation in the amount of **$130,977.50** and

reimbursement of actual and necessary expenses in the amount of **$1,455.30** for the period set forth

in the Application.

2.      The Trustee is authorized to disburse **$26,195.50** which represents the unpaid

amounts allowed by paragraph 1 of this Order.

SIGNED: _____, 2025.

_____
**HONORABLE CHRISTOPHER M. LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**