IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| IN RE:  ALEXANDER E. JONES | § | CASE NO. 22-33553 (CML) |
| | § | |
| Debtor | § | Chapter 7 |

**REPLY TO THE
JOINT OBJECTION OF THE SANDY HOOK FAMILIES TO ALEXANDER E.
JONES'S MOTION FOR RECONSIDERATION OF THIS COURT'S
DETERMINATION THAT NO AUCTION OF FREE SPEECH SYSTEMS
ASSETS WILL BE CONDUCTED BY THE JONES CHAPTER 7 ESTATE**

TO THE HONORABLE CHRISTOPHER LOPEZ, UNITED STATES BANKRUPTCY JUDGE:

Movant Alexander E. Jones ("Jones) files this Reply to the Joint Objection [Dkt #1150] of the Sandy Hook and Texas Plaintiffs jointly (the "Plaintiffs" or "Auction Proponents") filed objection regarding the Motion of Jones for Reconsideration of This Court's Determination That No Auction of Free Speech Systems Assets Will Be Conducted By the Jones Chapter 7 Estate (the "Jones Estate) which is currently administered by its Chapter 7 Trustee Christopher R. Murray (the "Trustee"), filed individually and as manager of the now non-debtor company, Free Speech Systems, LLC ("FSS") [Collectively Jones and FSS are also referred to as "Jones"].

**I.
PRELIMINARY REPLY STATEMENT**

    A.    **Significant Changes Have Occurred Since the Entry and Appeal of the Supplemental Order**

1. Jones agrees that the relief Jones seeks was the same auction relief sought several times *by the Connecticut Plaintiffs* but denied each time as a result of improper manipulation of the bankruptcy code provisions and the purpose and terms of the Supplemental Order. [*See,* Reply brief pg.1]. Each time the non-Plaintiff participants (including FUAC and Jones) opposed *only the manner and procedures* demanded by the Trustee and the Plaintiffs for such auctions but *never*

*opposed the auction itself*. In fact, the Plaintiffs that now claim the Supplemental Order has nothing to do with an Auction yet, in fact, these Plaintiffs supported an auction based on the Supplemental Order and did so twice. Judicial Estoppel, and argument below, show this argument has no merit.

2. Jones does not agree with the Connecticut and Texas Plaintiffs that "nothing has changed" to justify reconsideration [*See*, Reply brief pg. 1]. In fact, two major changes have occurred:

a. First, the Plaintiffs have dismissed their appeal of the Supplemental Order which found both proper jurisdiction to transfer the FSS assets to the estate for administration and proper and legal basis under state law for such transfer. That Supplemental Order is a final Order now that the dismissal of the appeal had been filed. The Plaintiffs dismissal and support of that dismissal is a judicial admission of the jurisdiction to transfer those assets as the Supplemental Order does, and the legal correctness in having done so. Those were the issues on appeal that have now been resolved in favor of this Court's Supplemental Order. Thus, Plaintiffs' allegation that this Court has no jurisdiction to transfer the FSS assets and to conduct an auction pursuant to the Supplemental Order is without merit.

b. Second, the Plaintiffs have changed their position to now oppose *any auction* but only in this Court – and for an obvious reason: the Plaintiffs opposed any auction that the Plaintiffs cannot manipulate and guaranty the outcome in their favor, which was the Court's criticism of the prior two Trustee-Plaintiffs auction efforts soundly rejected by the Court.

3. This continued manipulation to avoid a fair market sale by auction flies in the face of the Plaintiffs' disingenuous complaint that after three years the Plaintiffs have "not yet received a dollar from Jones or FSS …." Jones' Motion points out in detail in his Motion that this

manipulation and political agenda are the direct results of the Plaintiffs' not receiving a dividend. The Plaintiffs, aided by the Trustee's manipulations of this Court's Supplemental Orders and procedures for both auctions (and mediations failures) have been designed to further their political motives, not their rights as creditors. Remarkably, almost all of Jones' Motion deals with the obvious facts that this political agenda has driven the failures of the proposed Plans, the mediations, and the auctions (to mention only a few) yet most of Jones' Motion is not even mentioned in the Plaintiffs' Objection, simply because those pleadings are true and correct and the Plaintiffs do not desire to emphasize their own manipulations and misconduct further than has already been disclosed by this Court.

    **B.    Plaintiffs Attempt to Mislead the "Purpose" of This Court's Supplemental Order**

    4.    Plaintiffs are correct that the FSS bankruptcy, but not the Jones bankruptcy, has been dismissed. The Plaintiffs argue that two "faulty premises" of the Jones Motion (and one legal argument already resolved in Jones favor by this Court) are reasons to deny the Motion, to allow the Plaintiffs to pursue a State Court writ of execution remedy that will obviously bring the minimum amount to be applied to any Allowed Claims of the Plaintiffs, Creditors, and to the Jones Judgments. Those three reasons and the arguments are as follows:

        **i.    First, Plaintiffs' "dancing on the head of a pin argument". The Plaintiffs argue that the Supplemental Order *never required an auction*, even though the Plaintiffs caused millions of dollars to be spent by the Trustee attempting to implement the Plaintiffs demands for an auction, but an auction designed only to benefit the Plaintiffs**

    5.    Regarding the Reply that Jones cannot "Enforce" the Supplemental Order to Force a Sale that the Order never required" [Reply, pg. 5, ¶ II.] makes no sense. This argument further illustrates the bad intentions of Plaintiffs from the beginning. It is axiomatic that a Chapter 7 estate

with unencumbered assets having value must be liquidated by a Trustee, by private or public sale. The Supplemental Order places full right and title to those assets with the Trustee and automatically and procedurally compels the trustee to protect and liquidate those assets for the benefit of all creditors. And the Trustee in this case commenced precisely what the bankruptcy code mandates, and what the Court contemplated by the entry of the Supplemental Order. With the full blessing of the Plaintiffs (and Jones, the other creditors, the Code, and the Court) an auction process was commenced, notwithstanding that the Supplement Order did not contain a provision compelling the form of liquidation.

6. However, the Trustee "commencing" a well-established auction process in this case was not followed with implementing and finalizing the well-established auction process utilized in bankruptcy. Instead, for the first attempt at an auction, Plaintiffs devised *non-ordinary procedures* of cash plus credits against non-final judgments, soundly rejected by this Court. Instead of pivoting to a well-established auction process and promptly responding to a second $8 million dollar cash off for the assets, the Trustee and Plaintiffs devised an even *more "non-ordinary procedure"* giving the Texas Plaintiffs an allowed $480 million allowed claim that would be used to receive dividends, which would upon the payment of a specified amount, then be assigned to the Connecticut Plaintiffs. The sole purpose of the Supplemental Order was for the Trustee to administer the FSS assets as the Trustee administered the Jones assets.

7. The Plaintiffs ignored this announced purpose and now attempt to argue that the Supplemental Order had nothing to do with a Trustee administration of those assets. This baseless and meritless argument is inserted to give the Plaintiffs some relief from their intentional conduct ignoring what this Court ordered by the Supplemental Order.

      **ii.**    **Second, Responding to the legally correct and accurate position of Jones, recited by this Court, that the Supplement Order on**

> **appeal by the Texas Plaintiffs prevented any modification of the Supplemental Order, the Plaintiffs now incorrectly allege that appeal by the Texas Plaintiffs (and in which the Connecticut Plaintiffs intervened) has been voluntarily dismissed by only the Texas Plaintiffs and this Court has no jurisdiction to enforce the Supplemental Order.**

8. As noted above, this argument is without merit. The dismissal of the appeal now returns to this Court all issues raised by Jones' Motion but not encumbered by appellate proceedings, or orders entered earlier when the Court did not have jurisdiction to modify the order *while on appeal*.

9. This Court's Supplemental Order is now a final, non-appealable order of this Court. The numerous arguments found in Section IV. B. (pg. 9 through 12) of the Plaintiffs' Objection suggesting that this Court does not have jurisdiction over the assets. The argument is meritless as a direct result of the decision to dismiss the appeal. That Supplemental Order determined jurisdiction, and determined the authority to have transferred the assets. Consistent with the Supplemental Order is the Order neither Plaintiff nor the Trustee criticizes – the transfer of all of the cash of FSS to the Trustee. The Supplemental Order is now a final, non-appealable order which the Plaintiffs cannot now try to flip for their benefit. The Plaintiffs have judicially admitted that this Court has jurisdiction over the assets and purpose of the Supplemental Order and their denial of jurisdiction over those assets is false.

> **iii. Contradicting several contrary rulings of this Court, the Plaintiffs continue to argue that Jones has no standing to bring or prosecute the Motion**

10. The Plaintiffs repeat the lack of standing arguments raised in both auction motions, and generally in the motion practice surrounding these two failed auction attempts. This Court has repeatedly overruled this objection in favor of Jones' standing. Those arguments are set out in the Motion and nothing in the Plaintiffs' Joint Objection or the Trustee's Response, changes the law

to consider nor justifies this Court reversing its prior rulings.

### C. Rule 60(b)(6), Fed.R.Civ.Proc is Literally Ignored by Plaintiffs Objection

11. Next, the Plaintiffs suggest that the premise for this Motion to Reconsider pursuant to Rule 60(b)(6) Fed. R. Civ. Proc. mandates only relief under "extraordinary circumstances."

12. First, this case is a poster-child of extraordinary circumstances where a straightforward unambiguous order of this Court is intentionally manipulated, not to fulfill the purpose and intention of the order, but to exclusively benefit the Plaintiffs by manipulation of that auction process – and twice.

13. Remarkably, the undisputed and undeniable result of the Plaintiffs' conduct continues to confirm that the actions of the Plaintiffs, joined by the Trustee, are politically motivated, not creditor motivated. The Plaintiffs know that the result of the State Court writ of execution and sale will result in no competitive bidding and will result in *millions of dollars less cash to these Plaintiffs*. Why would a Plaintiff in any event seek a remedy that results in far less cash to the Plaintiffs, and only a small credit to the judgment? The same reason announced multiple times by these Plaintiffs, their lawyers, by the Onion and their owners: to destroy the value of these assets in their continued efforts to remove Jones from any public discourse of any significance.

14. Plaintiffs can only make this argument that Rule 60(b)(6) is not applicable by Plaintiffs totally ignoring that Rule 60(b)(6) significant body of case law that it should be invoked "in extraordinary circumstances" *that include cases* where the order to be reconsidered involves "***the risk of injustice to the parties' and the risk of undermining the public's confidence in the judicial process***." *Gonzales v. Davis*, 788 F. App'x 250, 253 (5th Cir. 2019) (*quoting Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988))

(Emphasis Added). That omission (of this legal argument and authorities) by any reply at all did not occur accidentally. Plaintiffs have no response to the facts outlined in detail in the Motion that both a substantial injustice will occur and that injustice is, due to the nature of Jones' and the publicity paid for by the Plaintiffs, the undermining of "the public's confidence in the judicial process." To allow this history of manipulation to the level of corruption, then wash this Court's "judicial hands" of the mess created by this Court's own Trustee and the politically motivated claims of the Plaintiffs as "purported" creditors but designed only to create a substantial injustice (not the repayment of a debt) cautions the public that certain conduct intended to create a "mess" will be tolerated. It should not be.

15. The injustice of these two efforts, not even considering the more than $2 million the Estate spent on administering these failed auctions and dealing with these assets, however pales to the results of this conduct. This Court clearly expressed dislike regarding the first auction proposal, then expressed disgust and resulting washing its hands of this auction conduct, *which did no injury to the Plaintiffs (or to the Trustee and its professionals who have all been rewarded handsomely by these manipulations*). The injury is to the other creditors of FSS who will receive nothing in the now-demanded right to go to state court for a sale, and the resulting hit to "… *the public's confidence in the judicial process*." *Id. Gonzales v. Davis*, at 253 (5th Cir. 2019) (*quoting Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, at 863-64. Jones will suffer yet another manipulation by politically motivated "purported creditors" who are not seeking status as a creditor to be paid, but using the bankruptcy system and their status as claims holders to further their political agenda – to injure Jones, not receive payment from Jones. Political motives are fine, so long as the Court does not adopt those motive to enforce bankruptcy code's policies all designed for fairness *in distributions* when, as here, it is the opposite that these Plaintiffs and this Trustee

have demonstrated.

16.     The Plaintiffs' actions in ignoring the efforts to initially mediate this dispute, and their continued efforts to manipulate the process to avoid cash bidding for the FSS assets, have been designed to keep Jones from receiving the value of his assets in a fair and open bidding process (simply because Plaintiffs cannot destroy that which they do not own) and to prevent Jones from accessing his public platform and destroy his ability to earn an income.

## II.
## CONCLUSION

17.     Facing the Jones Motion to enforce a true and open bidding process that begins with the $8 million cash bid that remains active today, the Plaintiffs do not want $8 million but seek to *reduce the value of these assets* for the purpose of acquisition, *then to destroy the value of those assets as their announced intention*.

18.     This intention is no secret.  After telling the jury that its judgment should be designed to prevent Jones from any public discourse, the goal has been the publicly announced by the Plaintiffs (the quotes and references are partially set out in the Jones Motion).  The intention and design to acquire the Jones' assets far below their true value, and then destroy those assets to prevent Jones from (i) exercising his Article I Constitutional rights; and (ii) at the same time destroy his ability to earn a living that could result in relief from these Judgments (particularly to the extent either judgment becomes final on appeal) while at the same time seeking the non-dischargeability of those Judgments.

19.     After failure to acquire those assets by manipulation, now the Plaintiffs believe that deferring all efforts to the State Court will end any meaningful interference of an auction process supervised by a U.S. Bankruptcy Court, in favor of their non-cash bidding scheme by the Plaintiffs.

20.      This Court should not allow the abuse of this bankruptcy system in favor of

political motives of parties claiming to be creditors but acting only to accomplish a political agenda.

Wherefore, Movant Alexander E. Jones individually and as manager of Free Speech Systems, LLC requests the relief set out in the original Motion, and for such other and further relief to which Movants may be justly entitled, both at law and in equity.

Dated: May 27, 2025

                                      /s/ Shelby A. Jordan
SHELBY A. JORDAN
State Bar No. 11016700
S.D. No. 2195
ANTONIO ORTIZ
State Bar No. 24074839
S.D. No. 1127322
Jordan & Ortiz, P.C.
500 North Shoreline Blvd., Suite 804
Corpus Christi, TX  78401
Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com
       aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com
**CO-COUNSEL FOR ALEX JONES and FSS**

BEN C. BROOCKS
State Bar No. 03058800
Federal Bar No. 94507
WILLIAM A. BROOCKS
St. Bar No. 24107577
Federal Bar No. 3759653
BROOCKS LAW FIRM PLLC
248 Addie Roy Road, Suite B301
Austin, Texas 78746
Phone: (512) 201-2000
Fax: (512) 201-2032
Email: bbroocks@broockslawfirm.com
**CO-COUNSEL FOR ALEX JONES And FSS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing pleading was served upon all parties registered to receive notices via the Court's ECF noticing system on May 27, 2025.

                                          */s/ Shelby A. Jordan*
                                        Shelby A. Jordan