## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | § |
| | § Chapter 7 |
| ALEXANDER E. JONES, | § |
| | § Case No. 22-33553 (CML) |
| Debtor. | § |
| | § |
| | § |
| CHRISTOPHER R. MURRAY, | § |
| CHAPTER 7 TRUSTEE | § Adv. Pro. No. _____ |
| | § |
| v. | § |
| | § |
| AEJ AUSTIN HOLDINGS, LLC, AEJ 2018 | § |
| TRUST, THE MISSOURI TRUST779384 | § |
| TRUST, ALEXANDER E. JONES, DAVID | § |
| JONES, PLJR HOLDINGS, LLC, JLJR | § |
| HOLDINGS, LLC, AND PQPR | § |
| HOLDINGS LIMITED, LLC | § |
| | § |

## TRUSTEE'S COMPLAINT

Christopher R. Murray (the "***Trustee***"), Chapter 7 Trustee for the Bankruptcy Estate of Alexander E. Jones ("***Alex Jones***" or the "***Debtor***"), by and through his undersigned counsel, respectfully alleges as follows:

## NATURE OF THE ACTION

1.       The Trustee files this complaint (the "***Complaint***") seeking a declaratory judgment to determine property of the estate and turnover with respect to the 90% interest (the "***PLJR Interests***") in PLJR Holdings, LLC ("***PLJR***") and the proceeds of PLJR Interests and to recover and avoid fraudulent transfers of proceeds of the PLJR Interests to several entities connected to the Debtor.

17258558

2.     The PLJR Interests are held by the AEJ 2018 Trust (the "***Trust***"), which is a self-settled trust of which the Debtor and his father, David Jones, are co-trustees.  The PLJR Interests are subject to collection by creditors of the Debtor under Texas state law.  Originally, the Debtor wrongfully transferred, without receiving any consideration and around the time of incurring massive debts, the PLJR Interests to a limited liability company, AEJ Austin Holdings, LLC ("***AEJ Holdings***"), which is wholly owned by the Trust as its sole member and managed by the Debtor and David Jones as non-member managers.  AEJ Holdings later conveyed the PLJR Interests, likewise for no real value and in a blatant attempt to shield the Debtor's assets from the Debtor's substantial creditors. As a result of its purported ownership of the PLJR Interests, the Trust received distributions from PLJR, PQPR Holdings Limited, LLC, and Free Speech Systems, LLC.  In turn, the cash received by the Trust on account of the PLJR Interests was then distributed to numerous insiders and affiliates of the Debtor, including AEJ Holdings, The Missouri779384 Trust ("***Missouri Trust***"), PLJR, JLJR Holdings, LLC ("***JLJR***"), Free Speech Systems, LLC ("***FSS***"), and PQPR Holdings Limited, LLC ("***PQPR***").  Between July 24, 2018, and the Debtor's petition date on December 2, 2022, the amount of the transfers from the Trust to the Missouri Trust, PLJR, JLJR, and PQPR totaled not less than $1,472,694.93.  Neither the Trust nor the Debtor received reasonably equivalent value in connection with the transfers of these funds, which ultimately constitute property of the estate that has been spread through a web of persons and entities as part of an obvious scheme to place the Debtor's property beyond the reach of his creditors.  Such transfers are avoidable fraudulent transfers of estate property under the Bankruptcy Code and Texas state law.

<u>**JURISDICTION AND VENUE**</u>

3.     The United States Bankruptcy Court for the Southern District of Texas (the "***Court***") has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334(b) and

17258558

the Standing Order of the United States District Court for the Southern District of Texas (the "**Southern District of Texas**") referring to the Bankruptcy Judges of the Southern District of Texas all cases and proceedings arising under title 11 of the Bankruptcy Code.

4.      This adversary proceeding constitutes a "core" proceeding as defined in 28 U.S.C. § 157.

5.      The Trustee consents to the entry of final orders or judgments pursuant to Fed. R. Bankr. P. 7008.  Pursuant to Bankruptcy Local Rule 7008-1, the Trustee further consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6.      Venue in the Southern District of Texas is and was proper under 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under and in connection with a case commenced under the Bankruptcy Code.

## PARTIES

7.      Alexander E. Jones is the Debtor in this Chapter 7 Case.  The Debtor filed for bankruptcy relief under chapter 11 of the Bankruptcy Code on December 2, 2022 (the "**Petition Date**").  The Debtor is a resident of Austin, Texas.  The Debtor is a co-trustee of the Trust and non-member manager of AEJ Holdings.  The Debtor is named in this adversary proceeding in his capacity as co-trustee of the Trust, and may be served wherever found.

8.      Defendant Dr. David Ross Jones ("**David Jones**") is a resident of Austin, Texas. Dr. Jones is the Debtor's father and the trustee of the Trust and the Missouri Trust (as defined below), the owner of equity interests in JLJR, and a non-member manager of AEJ Holdings.  David

17258558

Jones is named in this adversary proceeding in his capacity as co-trustee of the Trust, and may be served wherever found. He can be served at 3402 Clawson Road, Austin, Texas 78704.[1]

9.      Defendant AEJ Holdings is a Texas limited liability company that may be served through its registered agent, David Jones at 3402 Clawson Road, Austin, Texas 78704.

10.     Defendant AEJ 2018 Trust is a trust formed in Texas.  Alex Jones and David Jones are co-trustees of the Trust. Alex Jones may be served wherever found and David Jones may be served at 3402 Clawson Road, Austin, Texas 78704.

11.     Defendant Missouri Trust is a trust formed in Texas.  David Jones is the trustee of the Missouri Trust and may be served at 3402 Clawson Road, Austin, Texas 78704.

12.     Defendant JLJR is a Nevada limited liability company. It may be served at the address of its registered agent, Registered Agents Inc., at 732 S 6th St., Suite R, Las Vegas, NV 89101.

13.     Defendant PLJR is a Nevada limited liability company.  It may be served at the address of its registered agent, Registered Agents Inc., at 732 S 6th St., Suite R, Las Vegas, NV 89101.

14.     Defendant PQPR is a Nevada limited liability company.  It may be served at the address of its registered agent, Registered Agents Inc., at 732 S 6th St., Suite R, Las Vegas, NV 89101.

---

[1] The Trustee expressly reserves the right to assert other claims against Dr. Jones at a later date, including breach of fiduciary duty, breach of trust, and claims related to the numerous entities Dr. Jones has established or managed related to the Debtor and his various businesses.

17258558

## FACTS

### A.  Prepetition Events and Bankruptcy Cases

15.    On December 14, 2012, a mass shooting occurred at Sandy Hook Elementary School, resulting in the deaths of twenty first-grade children and six adults.  The Debtor and his wholly owned companies began a willful and malicious campaign of defamation and lies against the families of those victims.  Subsequently, after another school shooting at Marjory Stoneman Douglas High School in Parkland, Florida in 2018, the Debtor falsely accused Marcel Fontaine of being the shooter.

16.    The targets of the Debtor's defamation commenced lawsuits against the Debtor and certain of his companies, including Free Speech Systems, LLC ("**FSS**").  The first action was filed on April 2, 2018, and subsequent actions followed shortly thereafter.[2]  Due to the Debtor's noncompliance with discovery and conduct in those litigations, default judgments were entered against the Debtor in the Texas Litigation in September 2021, and in the Connecticut Litigation in November 2021.

17.    Two of the plaintiffs in the Texas Litigation, Neil Heslin and Scarlett Lewis, proceeded to a damages trial.  In August 2022, the jury awarded Heslin and Lewis more than $4 million in compensatory damages and approximately $45 million in exemplary damages.  The Connecticut Litigation also proceeded to trial on the question of damages.  In November 2022, the Connecticut Plaintiffs were awarded $965 million in compensatory damages and more than $470

---

[2] *Heslin v. Jones*, Cause No. D-1-GN-18-001835 in the 261st District Court of Travis County, Texas; *Lewis v. Jones*, Cause No. D-1-GN-18-006623 in the 98th District Court of Travis County, Texas; *Pozner v. Jones*, Cause No. D-1-GN-18-001842, in the 345th District Court of Travis County, Texas; *Fontaine v. Jones*, Cause No. D-1-GN-18-001605 in the 459th District Court of Travis County, Texas (collectively, the "**Texas Litigation**").  *Lafferty v. Jones*, X06-UWY-CV-18-6046436-S, in the Judicial District of Waterbury of the Connecticut Superior Court; *Sherlach v. Jones*, X06-UWY-CV-18-6046437-S, in the Judicial District of Waterbury of the Connecticut Superior Court; and *Sherlach v. Jones*, X06-UWY-CV-18-6046438-S, in the Judicial District of Waterbury of the Connecticut Superior Court (collectively, the "**Connecticut Litigation**").

million in additional common law and statutory punitive damages, for a total of $1,438,139,555.94.[3]  The remaining plaintiffs, Leonard Pozner, Veronique De La Rosa, and Marcel Fontaine, had not yet proceeded to the damages trial at the time that their litigation was stayed by the Debtor's various bankruptcy filings.  The lawsuits were as follows:

- *Marcel Fontaine vs. Alex E., Jones, Infowars, LLC, Free Speech Systems, LLC and Kit Daniels*, Cause No. D-1-GN-18-001605 in the 459th Judicial District Court of Travis County, Texas;

- *Neil Heslin vs. Alex E. Jones, Infowars, LLC, and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001835 in the 261st Judicial District Court of Travis County, Texas;

- *Veronique de la Rosa and Leonard Pozner vs. Alex E. Jones, InfoWars, LLC, and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001842 in the 345th Judicial District Court of Travis County, Texas;

- *Scarlett Lewis vs. Alex E. Jones, InfoWars, LLC, Free Speech Systems, LLC and Owen Shroyer*, Cause No. D-1-GN-18-006623 in the 98th Judicial District Court of Travis County, Texas;

- *Erica Lafferty, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto Parisi, Carlos Soto, Jillian Soto, and William Aldenberg v. Alex Emric Jones, Infowars LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Corey T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046436-S in the Superior Court of Connecticut, Waterbury Division; and

- *William Sherlach and Robert Parker v. Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc.*, Cause No. X06-UWY-CV-18-6046437-S in the Superior Court of Connecticut, Waterbury Division.

18.     Facing this liability, the Debtor began placing his companies, which were co-defendants in the litigation, into bankruptcy in Spring 2022.

---

[3] The Connecticut Litigation has advanced since the Petition Date: *Lafferty v. Jones*, 327 A.3d 941, 981 (Conn. App. Ct. 2024) (affirming $965 million in compensatory damages in favor of Connecticut plaintiffs); *Lafferty v. Jones*, PSC-240253, Order on Petition for Certification to Appeal (Conn. Apr. 8, 2025) (denying the Debtor's and FSS's petition to appeal the Connecticut judgment to the Connecticut Supreme Court); *Lafferty v. Jones*, AC46131, Order on Motion to Stay (Conn. App. Ct. May 13, 2025) (denying stay of enforcement of Connecticut judgment pending the Debtor's petition for writ of certiorari to the United States Supreme Court).

17258558

19.     Between April 17 and 18, 2022, the Debtor caused InfoW, LLC, IWHealth, LLC, and Prison Planet TV, LLC to file for chapter 11 bankruptcy protection before this Court.[4]  Then, on July 29, 2022, the Debtor caused FSS to file for chapter 11 bankruptcy protection before this Court as well.[5]

20.     Finally, on December 2, 2022, the Debtor filed for personal bankruptcy and commenced this bankruptcy case under chapter 11 of the Bankruptcy Code.

21.     The Debtor continued managing his assets as debtor and debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code until the Court entered its *Order Converting Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code* [Docket No. 708] on June 14, 2024 (the "***Conversion Date***"). On June 21, 2024, the Court entered an order dismissing the FSS Case [Case No. 22-60043, Docket No. 956], while retaining exclusive jurisdiction over several adversary proceedings and the approval of professional fees and expenses. On the Conversion Date, the U.S. Trustee appointed Christopher R. Murray as the Chapter 7 Trustee in the Jones Chapter 7 Case.

**B.  The Debtor's Transfer of PLJR Interests to Trust.**

22.     PQPR was founded in 2013.  The business began operations in September 2013. PQPR is engaged in the online sale and marketing of primarily nutritional supplements which PQPR sells under its own label as well as acquiring nutritional supplements for FSS.

---

[4] *In re InfoW LLC*, Case No. 22-60020-CML (Bankr. S.D. Tex. April 17, 2022); *In re IWHealth, LLC*, Case No. 22-60021-CML (Bankr. S.D. Tex. April 18, 2022); *In re Prison Planet TV, LLC*, Case No. 22-60022-CML (Bankr. S.D. Tex. April 18, 2022).

[5] *In re Free Speech Systems LLC*, Case No. 22-60043-CML (Bankr. S.D.T.X. July 29, 2022).

23.     PQPR is owned by PLJR (80%) and JLJR (20%).  PLJR was owned by Carol Jones (10%) and by Alex Jones (90%).  David Jones and Carol Jones own 100% of JLJR.  PQPR is managed by David Jones.

24.     Around the time the first action was filed on April 2, 2018, the Debtor and David Jones began moving assets and cash between various entities and trusts controlled by the Debtor, David Jones, or Carol Jones, the Debtor's mother.

25.     The Debtor and David Jones orchestrated the creation of the Trust and AEJ Holdings in an attempt to shield the Debtor's PLJR Interests and distributions received on account of such interests from the Debtor's creditors.

26.     On July 24, 2018, the Trust was established under a trust agreement dated as of July 24, 2018, between David Jones, as settlor, and Alex Jones, as trustee.  David Jones funded the Trust with $5,000 in cash.

27.     The Trust is an irrevocable, discretionary, spendthrift trust for the exclusive benefit of Alex Jones during his lifetime. Under the Trust Agreement, Alex Jones and David Jones, as co-trustees, have the power to make distributions of net income and principal to Alex Jones, or for the benefit of Alex Jones, for his "support, maintenance, health and education."  The Debtor is the sole current beneficiary of the Trust.

28.     The Debtor has a limited power exercisable during his lifetime to appoint Trust property in favor of any one or more of his descendants, as well as a limited power exercisable by will at his death to appoint Trust property in favor of any persons other than himself, his estate, his creditors, and creditors of his estate.

29.     The Trust is a self-settled trust under Texas law and applicable bankruptcy law and is reachable by creditors of the Trust.

8

30.     Alex Jones appointed David Jones as co-trustee of the Trust by an instrument dated September 12, 2019.[6]

31.     The Trust made a substantial number of transfers to the Missouri Trust, PLJR, JLJR, and PQPR between December 2, 2018, and December 2, 2022.

32.     Neither Alex Jones nor David Jones qualifies as an "independent trustee," as defined in the agreement governing the Trust, so they are not authorized to make distributions to or for the benefit of Alex Jones for unlimited purposes.

33.     On September 24, 2018, the certificate of formation of AEJ Austin Holdings, LLC ("***AEJ Holdings***") was filed with the Texas Secretary of State.  The Trust was the sole member of AEJ Holdings from its inception, and Alex Jones and David Jones were non-member managers.

34.     On September 24, 2018, Briggs & Veselka, a Houston accounting firm, issued a valuation report, addressed to Alex Jones, valuing a 72% equity interest in PQPR on a controlling, non-marketable basis as of March 31, 2018 at $25,900,000.00.

35.     On September 25, 2018, Alex Jones assigned his 90% membership interest in PLJR to AEJ Holdings for no consideration (the "***PLJR Interests Transfer***").

36.     On September 25, 2018, the Debtor or David Jones caused AEJ Holdings to assign the 90% membership interest in PLJR to Alex Jones, as sole trustee of the Trust, in exchange for the execution and delivery of a $25,900,000.00 promissory note (the "***Note***") and security agreement (the "***Security Agreement***") by the Trust in favor of AEJ Holdings.

37.     The principal amount of the Note payable by the Trust to AEJ Holdings is $25,900,000, with interest payable annually at a rate of 3.02%.  The Security Agreement grants

---

[6] The Debtor's conversion schedules list him as the sole trustee and beneficiary of the Trust. [Case No. 33553, Docket No. 749 at 11].

AEJ Holdings a security interest in the 90% membership interest assigned to the Trust. The Note is entirely illusory, unenforceable, and of no value.

38.     As of the Petition Date, there was no UCC financing statement filed evidencing perfection of a security interest in the PLJR Interests in favor of AEJ Holdings.

39.     The Debtor's Second Amended Schedules state that property on hand in the Trust as of the petition date includes (i) $10,002 held in the Trust's Security Bank account and (ii) 100% of AEJ Holdings, which owns 90% of PLJR, which in turn owns 80% of PQPR. The Schedules do not assign a value to the Trust's interest in AEJ Holdings.

40.     The Trust owns, at minimum, (i) the cash in the Trust's Security Bank account, (ii) 90% of PLJR, which owns 80% of PQPR, and (iii) 100% of the membership interests in AEJ Holdings.

41.     The Trust and AEJ Holdings have continued to receive transfers of cash since their formation as a result of the Trust's ownership of the PLJR Interests.

42.     Between September 25, 2018, and the Petition Date, the Trust received cash transfers as a result of its purported ownership of the PLJR Interests in an amount of not less than $6,189,180.00.  During the same period, the Trust made transfers or distributions to the Debtor, AEJ Holdings, the Missouri Trust, PLJR, JLJR, FSS, and PQPR.  The Trust's transfers to the following parties were in amounts *not less than* the following:[7]

| | |
|---|---|
| AEJ Holdings | $2,433,088.35 |
| Missouri Trust | $500,000.00 |
| PLJR | $206,800.00 |
| JLJR | $165,000.00 |
| FSS | $1,600,000.00 |
| PQPR | $600,894.93 |

---

[7] The Trustee reserves the right to amend this Complaint to include additional amounts transferred to these parties.

The transfers from the Trust to the Missouri Trust (the "***Missouri Trust Transfer***"), PLJR (the "***PLJR Transfers***"), JLJR (the "***JLJR Transfers***"), and PQPR (the "***PQPR Transfer***") are collectively referred to herein as the "***Cash Transfers***" and are each set forth on **Exhibit A** attached hereto.  The amount of the Cash Transfers is not less than $1,472,694.93.

43.     The Cash Transfers do not comply with the terms of the agreement governing the Trust—and which provided no value to the Trust or the Debtor—and the Cash Transfers were not authorized by such terms.  The Cash Transfers ultimately represent funds that rightfully belong to the Debtor's estate but were diverted elsewhere pursuant to sham transactions concocted to frustrate the collection efforts of the Debtor's creditors.

44.     Between September 25, 2018, and the Petition Date, AEJ Holdings received cash transfers from the Trust and David Jones in an amount not less than $2,433,088.35, which amounts were received on account of the Trust's purported ownership of the PLJR Interests and the Note held by AEJ Holdings.  During the same period, AEJ Holdings made distributions to the Debtor of not less than $1,745,833.35 and to FSS of not less than $725,000.00.

45.     As a result of the relationships of the parties, Alex Jones, David Jones, PLJR, JLJR, the Trust, and AEJ Holdings are "insiders" under section 101(31) of the Bankruptcy Code.

## COUNT 1 – Declaratory Judgment
### (AEJ 2018 Trust and AEJ Austin Holdings, LLC)

46.     The Trustee realleges, as if fully restated herein, paragraph 1–45.

47.     Section 541(a)(1) provides that,

(a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of this case.

17258558

. . . .

 (6) Proceeds, product, offspring, rents, or profits of or from property of the estate . . . .

11 U.S.C. § 541(a)(1), (6).  Bankruptcy Code section 541 is broadly construed to include all of a debtor's legal and equitable property interests, whether reachable by state-law creditors or not, and whether vested or contingent, and all proceeds from property of the estate.  11 U.S.C. § 541(a)(1), (6); *U.S. v. Rauer*, 963 F.2d 1332 (10th Cir. 1992); *In re Yonikus*, 996 F.2d 866 (7th Cir. 1993) (holding that virtually all property of debtor becomes property of the estate; in fact, every conceivable interest of the debtor, including future, non-possessory, contingent, speculative, and derivative, is within the scope of Section 541); *see also In re S.I. Acquisition, Inc.,* 817 F.2d 1142, 1149 (5th Cir. 1987) ("the term 'all legal and equitable interests of the debtor in property' is all-encompassing and includes rights of action as bestowed by either federal or state law" (quoting *In re MortgageAmerica*, 714 F.2d 1266, 1274 (5th Cir. 1983))).

 48. Under Texas law, the property of a self-settled trust is reachable by creditors.  *See* TEX. PROP. CODE § 112.035(d); *In re Shurley*, 115 F.3d 333 (5th Cir. 1997) (finding that the self-settled property of a spendthrift trust is reachable by creditors under Texas law and therefore property of the estate); *see also In re Bradley*, 501 F.3d 421, 429 (5th Cir. 2007) ("Under Texas law, which is applicable to this case, a spendthrift provision in a trust protects trust property from the beneficiary's creditors unless the settlor is also a beneficiary of the trust.") (quotation omitted); RESTATEMENT (SECOND) OF TRUSTS § 156 (1959) ("Where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interest.").  Where a debtor contributes property to a trust for his or her own benefit a trust is self-settled.  *See In re Vazquez*, 2012 Bankr. LEXIS 642, at *11 (Bankr.

W.D. Tex. Feb. 23, 2012).  Transfers of property to a self--ettled trust are reachable by creditors under Texas law and are property of a debtor's estate.

49.     The Trust is a self-settled trust under applicable law to the extent of the PLJR Interests and the Cash Transfers received by the Trust between its formation and the Petition Date.

50.     The Debtor transferred the PLJR Interests to AEJ Holdings, which was at the time and is now wholly-owned by the Trust, for no consideration.  The Debtor and/or David Jones caused the PLJR Interests to be transferred by AEJ Holdings to the Trust.

51.     The Trustee seeks a declaratory judgment (a) that the PLJR Interests are property of the Debtor's estate, and (b) that the cash received by the Trust attributable to the PLJR Interests is property of the Debtor's estate, whether held by AEJ Holdings or the Trust and whether subject to one or more of the Cash Transfers.

## COUNT 2 – Turnover
### (All Defendants)

52.     The Trustee realleges, as if fully restated herein, paragraph 1–51.

53.     Section 542(a) of the Bankruptcy Code requires persons in possession of property of the estate to turn over that property to a debtor in possession.  Specifically, the Bankruptcy Code provides that,

> … an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

54.     In order to secure the turnover of estate property, a debtor must establish that the property sought to be recovered is property of the debtor's estate and was in possession or control of the party proceeded against at the time of the proceeding.  *See In re Longhorn Paving & Oilfield*

*Servs.*, 647 B.R. 679, 689–90 (Bankr. S.D. Tex. 2022); *In re Bathrick*, 1 B.R. 428, 432 (Bankr. S.D. Tex. 1979).

55.     The PLJR Interests and the Cash Transfers are property of the Debtor's estate.

56.     The PLJR Interests are in the possession or control of the Trust by virtue of the assignment of the PLJR Interests by AEJ Holdings.

57.     On information and belief, the Missouri Trust Transfer, the PLJR Transfers, the JLJR Transfers, and the PQPR Transfer are in the possession or control of the Missouri Trust, PLJR, JLJR, and/or PQPR as of the time of this proceeding.

58.     Therefore, the Trustee is entitled to and seeks turnover of the PLJR Interests to the estate.

59.     The Trustee is entitled to  and seeks the turnover of the Cash Transfers as proceeds of the PLJR Interests, which are property of the estate, from the Defendants.

### COUNT 3 – Avoidance of Security Interest in PLJR Interests Pursuant to
### 11 U.S.C. § 544(a)(1)
### (The Trust and AEJ Holdings)

60.     The Trustee realleges, as if fully restated herein, paragraph 1–59.

61.     Section 544(a)(1) of the Bankruptcy Code provides that a trustee

> may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1).

62.     The PLJR Interests and any proceeds of the PLJR Interests constitute property of the Debtor's estate.

63.     AEJ Holdings did not properly perfect a security interest in the PLJR Interests as of the Petition Date by filing a financing statement in Texas or Nevada (where PLJR was formed).

14

64.     The Note and Security Agreement are part of a sham transaction because (i) the PLJR Interests were transferred to AEJ Holdings by the Debtor for no consideration, (ii) AEJ Holdings was already wholly owned by the Trust before the transfer of the PLJR Interests into the Trust, and (iii) the Note is otherwise illusory.

65.     The security interest held by AEJ Holdings in the PLJR Interests is voidable by the Trustee.

66.     Therefore, the Trustee requests avoidance of the security interest held by AEJ Holdings in the PLJR Interests and the proceeds of the PLJR Interests.

**COUNT 4 – Actual Fraudulent Transfer of Missouri Trust Transfer Pursuant to**
**11 U.S.C. § 544 and Tex. Bus. Com. Code § 24.005**
**(Missouri Trust)**

67.     The Trustee realleges, as if fully restated herein, paragraph 1–66.

68.     The Missouri Trust Transfer was made by the Trust to the Missouri Trust, and constitutes an actual fraudulent transfer in violation of the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code §§ 24.001 et seq. ("*TUFTA*"), and which the Trustee may avoid pursuant to 11 U.S.C. § 544.

69.     The Missouri Trust Transfer was a transfer of interests in property owned by the Debtor or otherwise reachable by the Debtor's creditors.

70.     The Missouri Trust is the initial transferee of the Missouri Trust Transfer.

71.     The Missouri Trust Transfer occurred within four years of the Petition Date.

72.     The Missouri Trust Transfer was made with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became indebted on or after the date such transfers were made.

15

73.     The Debtor effectively retained possession or control of the PLJR Interests and the proceeds of the PLJR Interests (including the Missouri Trust Transfer) after the transfer of the PLJR Interests to AEJ Holdings because Alex Jones and David Jones, are co-trustees of the Trust, which owns the PLJR Interests, and Alex Jones and David Jones are the managers of AEJ Holdings.  David Jones is the trustee of the Missouri Trust, which makes it an "insider" as to the Debtor and the Trust.

74.     The transfer of the PLJR Interests and the proceeds thereof, including the Missouri Trust Transfer, were concealed.  The Debtor's schedules list only the Debtor as the trustee of the Trust [Docket No. 749 at 10, 11].  The Debtor's schedules also list AEJ Holdings as the owner of 80% of the ownership interests of PLJR.  *Id.* at 5.  The Missouri Trust Transfer was not disclosed in the statements of financial affairs filed by the Debtor.

75.     The Missouri Trust Transfer occurred during a time period when the Debtor was incurring substantial debts based on the defamatory statements made against the Texas Plaintiffs and the Connecticut Plaintiffs.  The Missouri Trust Transfer occurred after the first of the lawsuits related to the Sandy Hook shooting were filed in or around April 2018.  Therefore, the claims of creditors who were defrauded by the Debtor predate the Missouri Trust Transfer.

76.     The Debtor had been sued or threatened to be sued before the Missouri Trust Transfer.  The claims of creditors who were harmed by Debtor's defamatory statements pre-date the Missouri Trust Transfer.

77.     The Debtor did not receive reasonable equivalent value for the Missouri Trust Transfer.

78.     The Debtor was insolvent at the time of the Missouri Trust Transfer.

79.     The Debtor concealed the Missouri Trust Transfer from creditors by virtue of his transfer of the PLJR Interests to AEJ Holdings and then to the Trust.

80.     Therefore, a creditor exists whose claim arose before or within a reasonable time after the occurrence of the Missouri Trust Transfer for whom the Trustee can act.

81.     Under section 550 of the Bankruptcy Code, the Trustee may recover the avoidable transfers for the benefit of the estate.

### COUNT 5 – Constructive Fraudulent Transfer of Missouri Trust Transfer Pursuant to 11 U.S.C. § 544 and Tex. Bus. Com. Code § 24.005(a)(2) (Missouri Trust)

82.     The Trustee realleges, as if fully restated herein, paragraph 1–81.

83.     The Missouri Trust Transfer constitutes a constructive fraudulent transfer in violation of TUFTA, which the Trustee may avoid pursuant to 11 U.S.C. § 544.

84.     The Missouri Trust Transfer was a transfer of interests in property owned by the Debtor or otherwise reachable by the Debtor's creditors.

85.     The Missouri Trust is the initial transferee of the Missouri Trust Transfer.

86.     The Missouri Trust Transfer occurred within four years of the Petition Date.

87.     The Debtor received no value or less than reasonably equivalent value from the Missouri Trust in exchange for the Missouri Trust Transfer.

88.     The Debtor was insolvent at the time of the Missouri Trust Transfer.

89.     The Missouri Trust Transfer occurred during a time period when the Debtor was incurring substantial debts based on the defamatory statements made against the Texas Plaintiffs and the Connecticut Plaintiffs.  The Missouri Trust Transfer occurred after the first of the lawsuits related to the Sandy Hook shooting were filed in or around April 2018.  Therefore, the claims of creditors who were defrauded by the Debtor predate the Missouri Trust Transfer.

90.     The Debtor had been sued or threatened to be sued before the Missouri Trust Transfer.  The claims of creditors who were harmed by Debtor's defamatory statements pre-date the Missouri Trust Transfer.

91.     At the time of the Missouri Trust Transfer, the Debtor intended to incur debts that would be beyond its ability to pay as such debts matured. The Missouri Trust Transfer occurred during a time period when the Debtor was incurring substantial debts based on the defamatory statements made against the Texas Plaintiffs and the Connecticut Plaintiffs.

92.     The claims of creditors who were harmed by Debtor's defamatory statements pre-date the Missouri Trust Transfer to the Missouri Trust.

93.     Therefore, a creditor exists whose claim arose before or within a reasonable time after the occurrence of the Missouri Trust Transfer for whom the Trustee can act.

94.     Under section 550 of the Bankruptcy Code, the Trustee may recover the avoidable transfers for the benefit of the estate.

**COUNT 6 – Actual Fraudulent Transfer of PLJR Transfers pursuant to 11 U.S.C. §§ 544, 548(a)((1)(A) and Tex. Bus. Com. Code § 24.005**
**(PLJR)**

95.     The Trustee realleges, as if fully restated herein, paragraph 1–94.

96.     The PLJR Transfers constitute actual fraudulent transfers, which the Trustee may avoid pursuant to TUFTA and 11 U.S.C. § 544 as well as 11 U.S.C. § 548(a)(1)(A).

97.     The PLJR Transfers were transfers of interests in property owned by the Debtor or otherwise reachable by the Debtor's creditors.

98.     PLJR is the initial transferee of the PLJR Transfer.

99.     The PLJR Transfers occurred within two years of the Petition Date and therefore also occurred within four years of the Petition Date.

17258558

100.    The PLJR Transfers were made with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became indebted on or after the date such transfers were made.

101.    Debtor effectively retained possession or control of the PLJR Interests and the proceeds of the PLJR Interests (including the PLJR Transfers) after the transfer of the PLJR Interests to AEJ Holdings because Alex Jones and David Jones, are co-trustees of the Trust, which holds the PLJR Interests, and Alex Jones and David Jones are the managers of AEJ Holdings. Carol Jones is the manager of PLJR.  PLJR is thus an "insider" as to the Debtor and the Trust.

102.    The transfer of the PLJR Interests and the proceeds thereof, including the PLJR Transfers were concealed.  The Debtor's schedules list only the Debtor as the trustee of the Trust [Docket No. 749 at 10, 11].  The Debtor's schedules also list AEJ Holdings as the owner of 80% of the ownership interests of PLJR *Id.* at 5.

103.    The PLJR Transfers occurred during a time period when the Debtor was incurring substantial debts based on the defamatory statements made against the Texas Plaintiffs and the Connecticut Plaintiffs.  The PLJR Transfers occurred after the first of the lawsuits related to the Sandy Hook shooting were filed in or around April 2018.  Therefore, the claims of creditors who were defrauded by the Debtor predate the PLJR Transfers.

104.    The Debtor had been sued or threatened to be sued before the PLJR Transfers.  The claims of creditors who were harmed by Debtor's defamatory statements pre-date the PLJR Transfers.

105.    The Debtor did not receive reasonable equivalent value for the PLJR Transfers.

106.    The Debtor was insolvent at the time of the PLJR Transfers.

107.    The Debtor concealed the PLJR Transfers from creditors by virtue of his transfer of the PLJR Interests to AEJ Holdings and later to the Trust.

108.    Therefore, a creditor exists whose claim arose before or within a reasonable time after the occurrence of the PLJR Transfers for whom the Trustee can act.

109.    Under section 550 of the Bankruptcy Code, the Trustee may recover the avoidable transfers for the benefit of the estate.

### COUNT 7 – Constructive Fraudulent Transfer of PLJR Transfer pursuant to 11 U.S.C. §§ 544, 548(a)(1)(B) and Tex. Bus. Com. Code § 24.005 (PLJR)

110.     The Trustee realleges, as if fully restated herein, paragraph 1–109.

111.    The PLJR Transfers constitute constructive fraudulent transfer subject to avoidance under TUFTA and 11 U.S.C. § 544 as well as 11 U.S.C. § 548(a)(1)(B).

112.    The PLJR Transfers were transfers of interests in property owned by the Debtor or otherwise reachable by the Debtor's creditors.

113.    PLJR is the initial transferee of the PLJR Transfers.

114.    The PLJR Transfers occurred within two years of the Petition Date, and accordingly within four years of the Petition Date.

115.    The Debtor received no value or less than reasonably equivalent value from the PLJR in exchange for the PLJR Transfers.

116.    The Debtor was insolvent at the time of the PLJR Transfers.

117.    The PLJR Transfers occurred during a time period when the Debtor was incurring substantial debts based on the defamatory statements made against the Texas Plaintiffs and the Connecticut Plaintiffs.  The PLJR Transfers occurred after the first of the lawsuits related to the Sandy Hook shooting were filed in or around April 2018.  Therefore, the claims of creditors who were defrauded by the Debtor predate the PLJR Transfers.

17258558

118.    The Debtor had been sued or threatened to be sued before the PLJR Transfers.  The claims of creditors who were harmed by Debtor's defamatory statements pre-date the PLJR Transfers.

119.    At the time of the PLJR Transfers, the Debtor intended to incur debts that would be beyond its ability to pay as such debts matured. The PLJR Transfers occurred during a time period when the Debtor was incurring substantial debts based on the defamatory statements made against the Texas Plaintiffs and the Connecticut Plaintiffs.

120.    The claims of creditors who were harmed by Debtor's defamatory statements pre-date the PLJR Transfers to the PLJR.

121.    Therefore, a creditor exists whose claim arose before or within a reasonable time after the occurrence of the PLJR Transfers for whom the Trustee can act.

122.    Under section 550 of the Bankruptcy Code, the Trustee may recover the avoidable transfers for the benefit of the estate.

### COUNT 8 – Actual Fraudulent Transfer of JLJR Transfers Pursuant to 11 U.S.C. §§ 544, 548(a)((1)(A) and Tex. Bus. Com. Code § 24.005 (JLJR)

123.     The Trustee realleges, as if fully restated herein, paragraph 1–122.

124.    The JLJR Transfers constitute actual fraudulent transfers, which the Trustee may avoid pursuant to TUFTA and 11 U.S.C. § 544 as well as 11 U.S.C. § 548(a)(1)(A).

125.    The JLJR Transfers were transfers of interests in property owned by the Debtor or otherwise reachable by the Debtor's creditors.

126.    JLJR is the initial transferee of the JLJR Transfers.

127.    The JLJR Transfers occurred within two years of the Petition Date and therefore also occurred within four years of the Petition Date.

21

128. The JLJR Transfers were made with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became indebted on or after the date such transfers were made.

129. Debtor effectively retained possession or control of the PLJR Interests and the proceeds of the PLJR Interests (including the JLJR Transfers) after the transfer of the PLJR Interests to AEJ Holdings because Alex Jones and David Jones, are co-trustees of the Trust, which holds the PLJR Interests, and Alex Jones and David Jones are the managers of AEJ Holdings. David Jones is the manager of JLJR. JLJR is thus an "insider" with respect to both the Debtor and the Trust.

130. The transfer of the PLJR Interests and the proceeds thereof, including the JLJR Transfers were concealed. The Debtor's schedules list only the Debtor as the trustee of the Trust [Docket No. 749 at 10, 11]. The Debtor's schedules also list AEJ Holdings as the owner of 80% of the ownership interests of PLJR *Id.* at 5. The JLJR Transfers were not disclosed in the statements of financial affairs filed by the Debtor.

131. The JLJR Transfers occurred during a time period when the Debtor was incurring substantial debts based on the defamatory statements made against the Texas Plaintiffs and the Connecticut Plaintiffs. The JLJR Transfers occurred after the first of the lawsuits related to the Sandy Hook shooting were filed in or around April 2018. Therefore, the claims of creditors who were defrauded by the Debtor predate the JLJR Transfers.

132. The Debtor had been sued or threatened to be sued before the JLJR Transfers. The claims of creditors who were harmed by Debtor's defamatory statements pre-date the JLJR Transfers.

133. The Debtor did not receive reasonable equivalent value for the JLJR Transfers.

134. The Debtor was insolvent at the time of the JLJR Transfers.

22

135.    The Debtor concealed the JLJR Transfers from creditors by virtue of his transfer of the JLJR Interests to AEJ Holdings and later to the Trust.

136.    Therefore, a creditor exists whose claim arose before or within a reasonable time after the occurrence of the JLJR Transfers for whom the Trustee can act.

137.    Under section 550 of the Bankruptcy Code, the Trustee may recover the avoidable transfers for the benefit of the estate.

### COUNT 9 – Constructive Fraudulent Transfer of JLJR Transfers Pursuant to 11 U.S.C. §§ 544, 548(a)((1)(B) and Tex. Bus. Com. Code § 24.005 (JLJR)

138.     The Trustee realleges, as if fully restated herein, paragraph 1–137.

139.    The JLJR Transfers constitute constructive fraudulent transfer subject to avoidance under TUFTA and 11 U.S.C. § 544 as well as 11 U.S.C. § 548(a)(1)(B).

140.    The JLJR Transfers were transfers of interests in property owned by the Debtor or otherwise reachable by the Debtor's creditors.

141.    JLJR is the initial transferee of the JLJR Transfers.

142.    The JLJR Transfers occurred within two years of the Petition Date, and accordingly within four years of the Petition Date.

143.    The Debtor received no value or less than reasonably equivalent value from the JLJR in exchange for the JLJR Transfers.

144.    The Debtor was insolvent at the time of the JLJR Transfers.

145.    The JLJR Transfers occurred during a time period when the Debtor was incurring substantial debts based on the defamatory statements made against the Texas Plaintiffs and the Connecticut Plaintiffs.  The JLJR Transfers occurred after the first of the lawsuits related to the

Sandy Hook shooting were filed in or around April 2018.  Therefore, the claims of creditors who were defrauded by the Debtor predate the JLJR Transfers.

146.     The Debtor had been sued or threatened to be sued before the JLJR Transfers.  The claims of creditors who were harmed by Debtor's defamatory statements pre-date the JLJR Transfers.

147.     At the time of the JLJR Transfers, the Debtor intended to incur debts that would be beyond its ability to pay as such debts matured. The JLJR Transfers occurred during a time period when the Debtor was incurring substantial debts based on the defamatory statements made against the Texas Plaintiffs and the Connecticut Plaintiffs.

148.     The claims of creditors who were harmed by Debtor's defamatory statements pre-date the JLJR Transfers to the JLJR.

149.     Therefore, a creditor exists whose claim arose before or within a reasonable time after the occurrence of the JLJR Transfers for whom the Trustee can act.

150.     Under section 550 of the Bankruptcy Code, the Trustee may recover the avoidable transfers for the benefit of the estate.

### COUNT 10 – Actual Fraudulent Transfer of PQPR Transfer Pursuant to 11 U.S.C. § 544 and Tex. Bus. Com. Code § 24.005
### (PQPR)

151.      The Trustee realleges, as if fully restated herein, paragraph 1–150.

152.     The PQPR Transfer constitutes an actual fraudulent transfer, which the Trustee may avoid pursuant to TUFTA and 11 U.S.C. § 544.

153.     The PQPR Transfers were transfers of interests in property owned by the Debtor or otherwise reachable by the Debtor's creditors.

154.     PQPR is the initial transferee of the PQPR Transfer.

24

155.    The PQPR Transfer occurred within four years of the Petition Date.

156.    The PQPR Transfer was made with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became indebted on or after the date such transfers were made.

157.    Debtor effectively retained possession or control of the PLJR Interests and the proceeds of the PLJR Interests (including the PQPR Transfers) after the transfer of the PLJR Interests to AEJ Holdings because Alex Jones and David Jones, are co-trustees of the Trust, which holds the PLJR Interests, and Alex Jones and David Jones are the managers of AEJ Holdings. David Jones is the manager of PQPR.  PQPR is thus an "insider" with respect to the Debtor and the Trust.

158.    The transfer of the PLJR Interests and the proceeds thereof, including the PQPR Transfer, were concealed.  The Debtor's schedules list only the Debtor as the trustee of the Trust [Docket No. 749 at 10, 11].  The Debtor's schedules also list AEJ Holdings as the owner of 80% of the ownership interests of PLJR *Id.* at 5.  The PQPR Transfer was not disclosed in the statements of financial affairs filed by the Debtor.

159.    The PQPR Transfer occurred during a time period when the Debtor was incurring substantial debts based on the defamatory statements made against the Texas Plaintiffs and the Connecticut Plaintiffs.  The PQPR Transfer occurred after the first of the lawsuits related to the Sandy Hook shooting were filed in or around April 2018.  Therefore, the claims of creditors who were defrauded by the Debtor predate the PQPR Transfer.

160.    The Debtor had been sued or threatened to be sued before the PQPR Transfer.  The claims of creditors who were harmed by Debtor's defamatory statements pre-date the PQPR Transfer.

161.    The Debtor did not receive reasonable equivalent value for the PQPR Transfer.

17258558

162.     The Debtor was insolvent at the time of the PQPR Transfer.

163.     The Debtor concealed the PQPR Transfer from creditors by virtue of his transfer of the PLJR Interests to AEJ Holdings and later to the Trust.

164.     Therefore, a creditor exists whose claim arose before or within a reasonable time after the occurrence of the PQPR Transfer for whom the Trustee can act.

165.     Under section 550 of the Bankruptcy Code, the Trustee may recover the avoidable transfers for the benefit of the estate.

**COUNT 11 – Constructive Fraudulent Transfer of PQPR Transfer Pursuant to
11 U.S.C. § 544 and Tex. Bus. Com. Code § 24.005
(PQPR)**

166.     The Trustee realleges, as if fully restated herein, paragraph 1–165.

167.     The PQPR Transfer constitutes a constructive fraudulent transfer, which the Trustee may avoid pursuant to TUFTA and 11 U.S.C. § 544.

168.     The PQPR Transfer was a transfer of interests in property owned by the Debtor or otherwise reachable by the Debtor's creditors.

169.     PQPR is the initial transferee of the PQPR Transfer.

170.     The PQPR Transfer occurred within four years of the Petition Date.

171.     The Debtor received no value or less than reasonably equivalent value from PQPR in exchange for the PQPR Transfers.

172.     The Debtor was insolvent at the time of the PQPR Transfers.

173.     The PQPR Transfers occurred during a time period when the Debtor was incurring substantial debts based on the defamatory statements made against the Texas Plaintiffs and the Connecticut Plaintiffs.  The PQPR Transfers occurred after the first of the lawsuits related to the

Sandy Hook shooting were filed in or around April 2018.  Therefore, the claims of creditors who were defrauded by the Debtor predate the PQPR Transfers.

174.    At the time of the PQPR Transfers, the Debtor intended to incur debts that would be beyond its ability to pay as such debts matured. The PQPR Transfers occurred during a time period when the Debtor was incurring substantial debts based on the defamatory statements made against the Texas Plaintiffs and the Connecticut Plaintiffs.

175.    The claims of creditors who were harmed by Debtor's defamatory statements pre-date the PQPR Transfer.

176.    Therefore, a creditor exists whose claim arose before or within a reasonable time after the occurrence of the PQPR Transfer for whom the Trustee can act.

177.    Under section 550 of the Bankruptcy Code, the Trustee may recover the avoidable transfers for the benefit of the estate.

### COUNT 12 – Recovery of Cash Transfers Under Texas Law
**(All Defendants)**

178.    The Trustee incorporates paragraphs 1–177 as if fully set forth herein.

179.    The Trustee seeks (i) the avoidance of the Cash Transfers and (ii) the return of the value of the Cash Transfers and/or money damages against Defendant pursuant to Tex. Bus. & Com. Code Ann. § 24.008.

### COUNT 13 – Recovery of PLJR Interests and Cash Transfers Under 11 U.S.C. § 550
**(All Defendants)**

180.    The Trustee incorporates paragraphs 1–179 as if fully set forth herein.

181.    Each Defendant was either (i) the initial transferee of one or more of the Cash Transfers; (ii) the entity for whose benefit one or more of the Cash Transfers were made; or (iii) an immediate or mediate transferee thereof.

27

182.     Under section 550 of the Bankruptcy Code, the Trustee may recover the Cash Transfers, or the value of the Cash Transfers, any mediate or immediate transferee upon the avoidance of the Cash Transfers pursuant to sections 544 or 548 of the Bankruptcy Code.

183.     Accordingly, the Trustee may recover the Cash Transfers or the value of the Cash Transfers from AEJ Holdings, or any other Defendant who was a mediate or immediate transferee of AEJ Holdings, under section 550 of the Bankruptcy Code.

184.     AEJ Holdings and the Trust were beneficiaries of the PLJR Interests Transfer and the remaining Defendants were beneficiaries of the Cash Transfers.  Therefore, the Trustee is entitled to an order and judgment against the AEJ Holdings, the Trust and any other Defendant who was the mediate or immediate transferee of the Defendants to recover the PLJR Interests Transfer or the Cash Transfers or the value of the Transfers under section 550(a) of the Bankruptcy Code together with an award of pre- and post-judgment interest to the estate.

## ATTORNEYS' FEES

185.     The Trustee requests an award of his reasonable fees and costs pursuant to TUFTA § 24.013 and other applicable law.

## REQUEST FOR PRE- AND POST-JUDGMENT INTEREST

186.     The Trustee seeks pre-judgment interest on the value of the PLJR Interests and the Cash Transfers from the date of transfer through the date of judgment at the rate of 5% per annum. The Trustee seeks post-judgment interest on all money damages awarded hereunder from the date of judgment until paid at the prevailing federal judgment rate

## RESERVATION OF RIGHTS

187.     The Trustee reserves the right to bring any and all other causes of action it may maintain against the Defendants including, without limitation, causes of action arising out of the

17258558

same transactions set forth in this Complaint, and to the extent discovery is necessary in this action or further investigation by the Trustee reveals such other causes of action.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee requests that this Court enter judgment as set forth above and to grant such other relief as is just.

Dated: June 13, 2025
      Houston, Texas

Respectfully submitted,

By:  */s/ Joshua W. Wolfshohl*
    Joshua W. Wolfshohl (Bar No. 24038592)
    Michael B. Dearman (Bar No. 24116270)
    Jordan T. Stevens (Bar No. 24106467)
    **PORTER HEDGES LLP**
    1000 Main Street, 36th Floor
    Houston, Texas 77002
    Telephone: (713) 226-6000
    Facsimile: (713) 226-6248
    jwolfshohl@porterhedges.com
    mdearman@porterhedges.com
    jstevens@porterhedges.com

    *and*

    Erin E. Jones (TX 24032478)
    **JONES MURRAY LLP**
    602 Sawyer Street, Suite 400
    Houston, Texas 77007
    Telephone: (832) 529-1999
    Fax: (832) 529-3393
    erin@jonesmurray.com

    *Counsel for Christopher R. Murray, Chapter 7 Trustee*

17258558