UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | § Chapter 7 |
| ALEXANDER E. JONES, | § Case No. 22-33553 (CML) |
| Debtor. | § |

SUMMARY COVERSHEET TO THE FOURTH INTERIM FEE APPLICATION
OF JONES MURRAY LLP, AS BANKRUPTCY COUNSEL FOR CHAPTER 7
TRUSTEE, CHRISTOPHER R. MURRAY, FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD
FROM MAY 1, 2025 THROUGH AND INCLUDING JULY 31, 2025

| Name of Applicant: | Jones Murray LLP | |
|---|---|---|
| Applicant's Role in Case: | Bankruptcy Counsel for the Chapter 7 Trustee, Christopher R. Murray | |
| Date Order of Appointment Signed: | July 30, 2024 (Doc. No. 794) | |
| | **Beginning of Period** | **End of Period** |
| Time period covered by this Application: | 05/01/2025 | 07/31/2025 |
| Time period(s) covered by prior Applications: | 06/14/2024 | 04/30/2025 |
| Total amounts awarded in all prior Applications: | | $1,030,409.50 |
| Total fees requested in this Application and in all prior Applications: | | $1,176,079.00 |
| Total fees requested in this Application: | | $145,669.50 |
| Total professional fees requested in this Application: | | $145,669.50 |
| Total actual professional hours covered by this Application: | | 200.2 |
| Average hourly rate for professionals: | | $727.62 |
| Total paraprofessional fees requested in this Application: | | - |
| Total paraprofessional hours covered by this Application: | | - |
| Average hourly rate for paraprofessionals: | | - |
| Reimbursable expenses sought in this Application: | | $1,145.12 |
| Application Cost (not included in above fees): | | - |
| Total of other payments paid to secured claimants | | $21,042 |

| | |
|---|---:|
| **Total of other payments paid to administrative claimants** | $7,151,613 |
| **Estimated Total for distribution to priority unsecured creditors** | Unknown[1] |
| **Estimated percentage dividend to priority unsecured creditors** | Unknown |
| **Estimated total for distribution to general unsecured creditors** | Unknown |
| **Estimated percentage dividend to general unsecured creditors** | Unknown |
| **Receipts to date in Chapter 7 to date** | $12,166,339 |
| **Disbursements to date in Chapter 7 to date[2]** | $7,172,655 |
| **Current balance in the Trustee's accounts to date** | $4,993,684 |

---

[1] These amounts depend in large part on pending litigation.
[2] The figures in this table do not include ordinary course transactions of FSS.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 7** |
| | § | |
| **ALEXANDER E. JONES,** | § | **Case No. 22-33553 (CML)** |
| | § | |
| Debtor. | § | |
| | § | |

**FOURTH INTERIM FEE APPLICATION
OF JONES MURRAY LLP, AS BANKRUPTCY COUNSEL FOR CHAPTER 7
TRUSTEE, CHRISTOPHER R. MURRAY, FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD
FROM MAY 1, 2025 THROUGH AND INCLUDING JULY 31, 2025**

> **This application seeks an order that may adversely affect you. If you oppose the application, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the application and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the application at the hearing.**
>
> **Represented parties should act through their attorney.**

Jones Murray, LLP ("***JM***" or the "***Applicant***"), as Bankruptcy Counsel for the Chapter 7 Trustee, Christopher R. Murray (the "***Trustee***"), files this Fourth Interim Application for Allowance of Compensation and Reimbursement of Expenses (the "***Application***") for the period from May 1, 2025 through and including July 31, 2025 (the "***Application Period***"), and respectfully represents as follows:

## JURISDICTION

1. JM submits this Application pursuant to section 330 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Bankruptcy Local Rules (the "**Local Rules**").

2. The Court has jurisdiction over the Application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. § 1408.

## RELIEF REQUESTED

3. JM requests that the Court enter an order (i) allowing JM's compensation for professional and paraprofessional services to the Trustee rendered during the Application Period in the amount of **$145,669.50** and reimbursement of actual and necessary expenses incurred by JM in the amount of **$1,145.12**; and (ii) award and order to be paid to JM the balance of any such fees and costs paid from funds available in the Debtor's estate.

## BACKGROUND

**A. Bankruptcy Case Background**

4. On July 29, 2022, Free Speech Systems, LLC ("**FSS**") filed its voluntary petition for relief under chapter 11 subchapter V of the Bankruptcy Code (the "**FSS Case**").

5. On December 2, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (prior to the Conversion Date, the "**Jones Chapter 11 Case**", and after the Conversion Date, the "**Jones Chapter 7 Case**"). The Debtor is an employee of FSS. 100 percent of the outstanding membership interests in FSS are owned by the Debtor's bankruptcy estate.

6. On December 2, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (prior to the Conversion Date, the "**Jones**

3

*Chapter 11 Case*", and after the Conversion Date, the "***Jones Chapter 7 Case***"). The Debtor is an employee of FSS. 100 percent of the outstanding membership interests in FSS are owned by the Debtor's bankruptcy estate.

7. On December 13, 2022, the United States Trustee for Region 7 (Southern and Western Districts of Texas) (the "***U.S. Trustee***") appointed the Official Committee of Unsecured Creditors in the Jones Chapter 11 Case pursuant to Bankruptcy Code section 1102(a)(1).

8. The Debtor continued managing his assets as debtor and debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code until the Court entered its *Order Converting Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code* [Docket No. 708] on June 14, 2024 (the "***Conversion Date***"). On June 21, 2024, the Court entered an order dismissing the FSS Case [Case No. 22-60043, Docket No. 956] (the "***Dismissal Order***"), while retaining exclusive jurisdiction over several adversary proceedings and the approval of professional fees and expenses. On the Conversion Date, the U.S. Trustee appointed Christopher R. Murray as the Chapter 7 Trustee in the Jones Chapter 7 Case.

**B.  JM Retention and Fees**

1. On July 3, 2024, Trustee filed the *Application to Employ Jones Murray LLP as General Bankruptcy Co-Counsel for the Chapter 7 Trustee* [Docket. No. 755], which the Court approved on July 30, 2024 [Docket No. 794].

2. On July 30, 2024, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Trustee* [Docket No. 793] (the "***Interim Compensation Order***").

4

3. On December 10, 2024, the Court entered the *Order Granting First Interim Fee Application* [DE 981] and JM was awarded fees of $427,773.00 and reimbursement of expenses of $5,442.62.

4. On March 11, 2025, the Court entered the *Order Granting Second Interim Fee Application* [DE 1112] and JM was awarded fees of $471,659.00 and reimbursement of expenses of $2,806.78.

5. On June 18, 2025, the Court entered the *Order Granting Third Interim Fee Application* [DE 1195] and JM was awarded fees of $130,977.50 and reimbursement of expenses of $1,455.30.

6. This is JM's fourth interim fee application in the Jones Chapter 7 Case. During the Application Period, JM filed three (3) monthly fee statements, which are attached hereto as **Exhibit 3**, and are summarized below:

| Period | Expenses Incurred | Fees Incurred | Total Fees and Expenses Paid | Amount Outstanding |
|---|---|---|---|---|
| 05/01/25-05/31/25 | $0.00 | $42,081.00 | $33,664.80 | $8,416.20 |
| 06/01/25-06/30/25 | $350.19 | $78,003.00 | $62,752.59 | $15,600.60 |
| 07/01/25-07/31/25 | $794.93 | $25,585.50 | $21,263.33 | $5,117.10 |
| **Total:** | **$1,145.12** | **$145,669.50** | **$117,680.72** | **$29,133.90** |

7. This Application requests that the Court enter an order (i) allowing JM's compensation for professional and paraprofessional services to the Trustee rendered during the Application Period in the amount of **$145,669.50** and reimbursement of actual and necessary expenses incurred by JM in the amount of **$1,145.12**; and (ii) award and order to be paid to JM the balance of any such fees and costs paid from funds available in the Debtor's estate. Summary calculations of these fees and expenses are attached hereto as **Exhibit 2** and **Exhibit 4**, respectively.

5

8. The fees and expenses requested are reasonable and all amounts requested were for actual and necessary services rendered on behalf of the Trustee.

16. JM reserves the right to request additional compensation for the Application Period to the extent that it is later determined that time or disbursement charges for services rendered or disbursements incurred during such time period have not yet been submitted.

18. No agreement or understanding exists between JM and any other entity for sharing of any compensation or reimbursement in this case.

19. JM has provided the information required by the U.S. Trustee's Guidelines and the Interim Compensation Order.

20. JM has served as bankruptcy co-counsel to the Trustee and, in that capacity, has rendered legal services for the benefit of the Trustee and the Debtor's estate.

## STANDARDS RELEVANT TO AWARDING REASONABLE COMPENSATION

21. Section 330 of the Bankruptcy Code authorizes the Court to award JM reasonable compensation for its actual and necessary services rendered and reimbursement of its actual and necessary expenses incurred in the rendering of services as bankruptcy counsel to the Trustee. Section 330 provides:

> (a)(1) After notice to the parties in interest and to the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103:
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

6

22. This Application substantiates the total amount that JM seeks for fees and expenses in accordance with each element of the customary standards applied to fee applications. These standards are set forth in (i) Bankruptcy Rule 2016 and (ii) *In re First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir. 1977), *cert. denied*, 431 U.S. 904 (1977).

23. In *First Colonial*, the Fifth Circuit adopted the following twelve factors to apply to the determination of awards of attorneys' fees in bankruptcy cases: (i) time and labor required; (ii) the novelty and difficulty of the questions; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the professional due to acceptance of the case; (v) the customary fee; (vi) whether the fee is contingent or fixed; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *First Colonial*, 544 F.2d at 1298-99. These factors were taken from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), a non-bankruptcy case, and are commonly referred to as the "*Johnson* factors." The original *Johnson* factors, as embraced by *First Colonial,* remain applicable to the determination of reasonableness of fees awarded under the Bankruptcy Code. *See* 15 King, *Collier on Bankruptcy*, ¶ 330.04[3] at 330-35 to 330-41. A majority of the *Johnson* factors are now codified under Bankruptcy Code Section 330(a). *Id.*

24. The Fifth Circuit has rejected the "hindsight" or "material benefit" standard that was originally set forth in *In re Pro-Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir. 1998). In its place, the Fifth Circuit enunciated a new, prospective standard based on whether the services of counsel were reasonably likely to benefit the estate at the time such services were rendered. *See In*

7

*re Woerner*, 783 F.3d 266, 276 (5th Cir. 2015). All services rendered by JM satisfy the *Woerner* standard because they were reasonably likely to benefit the estate at the time rendered.

### NATURE AND EXTENT OF SERVICES PROVIDED BY JM

25. JM classified all services performed for which compensation is sought in six (6) categories. JM attempted to divide its services rendered to the Trustee in this bankruptcy case into appropriate categories. However, because certain services may relate to more than a single category, services pertaining to one category may be included in another category. Copies of JM's monthly fee statements are attached hereto as **Exhibit 3** in accordance with the Court's procedures and provide detailed descriptions of the services JM rendered with respect to each of these categories. A summary of compensation requested by project category is attached hereto as **Exhibit 2**.

**A. Asset Analysis and Recovery**

26. The majority of time billed by JM in this category during the Application Period related to a variety of assets to be administered by the Estate and the evaluation of same. There is significant, if not complete overlap, with the category labeled as "Litigation/Other Contested Matters." The description of services provided in this section are also application to section F below relating to "Litigation/Other Contested Matters."

Services in this category include but are not limited to: (i) a reviewing, analyzing potential claims and causes of action to assert in three separate adversary proceedings and drafting and filing related complaints; (ii) analyzing documents related to potential claims and causes of action; (iii) conferencing with Trustee and co-counsel regarding potential claims and causes of action; (iv) preparing and filing pleadings, including exhibits to initiate three adversary proceedings; (v) preparing and serving summons and complaint on defendants in three adversary proceedings; (vi)

conferring with defendants and/or counsel for defendants regarding complaints and responsive pleading deadlines; (vii) representing the Trustee in connection with filings of Robert Wyn Young, including appeals relating to same and drafting respond to motion for stay pending appeal (Case No. 4:25cv2057); (viii) conferencing about and revising responses to Alex Jones' motions to reconsider remand and legal research relating to same; (ix) preparing for and representing Trustee at June 5 status conference; (x) conferencing with Trustee, co-counsel, and JM team regarding case strategy; (xi) analyzing letter regarding FSS assets from OnMedia, LLC; (xii) continue to draft, edit, revise draft motion to abandon certain assets; (xiii) continue to analyze book royalties and request and review records relating to reconciliation of book sales and royalties due to be paid; and (xiv) evaluation of sale of non-exempt personal property, including rental property and confer with Trustee and legal team regarding same, including addressing potential issues with month-to-month tenant and options for same if tenant refuses to vacate premises.

27. JM expended 76.3 hours of time to provide such services. Professional fees in this category total $58,087.00.

**B. Asset Disposition**

28. The majority of time billed by JM during the Application Period in this category related to coordinating with the auctioneer to sell certain non-exempt property of Alex Jones, including but not limited to certain real property occupied by a month-to-month tenant and several watches. The time billed by JM in this category also related to drafting pleadings and documents related to the sale of the same non-exempt property.

29. JM expended 9.0 hours of time to provide such services. Professional fees in this category total $4,680.00.

**C. Case Administration**

30. The majority of time billed by JM during the Application Period in this category related to ensuring the efficient and smooth administration of legal services related to the Jones Chapter 7 Case. In particular, services rendered in this category during the Application Period included, but were not limited to: (i) Trustee legal team work and strategy sessions regarding the foregoing and general project management relating to same; (ii) Trustee legal team work and strategy discussions status of claims and liabilities in Estate, abandonment of assets, chapter 11 administrative expenses, analysis of waterfall, responding to creditor inquiries and drafting of various documents relating to same; (iii) preparation for status hearing set by the Court and responding to inquiries of parties relating to status of various matters; (iv) reconciliation of Form 1 with filed schedules and global notes with caveats and qualifications; (v) managing and administering the bankruptcy case, such as maintenance of case calendars, task lists, docket updates, and ongoing scheduling of key deadlines; (vi) coordinating filing and service of motions, orders, and other documents; (vii) coordinating receipt of discovery; (viii) ensuring compliance with service and notice requirements; (ix) filing statements and objections in the bankruptcy case and related appeal; and (x) drafting and filing certificates of no objection.

31. JM expended 30.3 hours of time to provide such services. Professional fees in this category total $23,482.50.

### D. Claims Administration and Objections

32. The majority of time expended by JM in this category related to, but is not limited to: (i) review of pending chapter 11 fees and coordinating with chapter 11 professionals regarding same and conferring with the Trustee regarding same; (ii) review of claims, review waterfall and discuss same with Trustee; (iii) review and coordinate payment to secured creditor with lien on rental property to be sold at auction, including preparation of pleadings and conferring with Trustee

10

regarding same [Docket Nos. 1222, 1224]; and (iv) responding to creditor inquiries regarding status of their claims and generally regarding the case.

33. JM expended 7.5 hours of time to provide such services. Professional fees in this category total $5,532.00.

**E.  Employment/Fee Applications**

34. The majority of time billed by JM during the Application Period in this category related to (i) the preparation of interim fee statements, interim applications, proposed orders, and certificates of no objection for retained professionals other than JM, including N&N (IT professional)[Docket Nos. 1152, 1183, 1184, 1192, 1196], Harney Partners (financial advisor)[Docket Nos. 1185, 1194, 1207, 1208, 1223], and TPS-West (accountant)[Docket Nos. 1139, 1149, 1186, 1187]; (ii) preparation of JM's interim fee statements [Docket Nos. 1179, 1212, and 1228] and JM's Third Interim Fee Application [Docket No. 1146 and 1195]; (iii) corresponding about and coordinating service for monthly fee statements; (iv) corresponding with PH team and Trustee regarding fee statements and fee applications [Docket Nos. 1145, 1180, 1181, 1211]; and (v) assisting with revising of orders and obtaining entry of final fee orders for chapter 11 professionals, including Rachel Kennerly (Docket Nos. 1158, 1167], Teneo [Docket Nos. 1160, 1166], Crowe Dunlevy [Docket Nos. 1165, 1197], Blackbriar [Docket Nos. 1159, 1169], and Jordan & Ortiz [Docket Nos. 1157, 1168].

35. JM expended 25.6 hours of time to provide such services. Professional fees in this category total $15,352.50.

**F.  Litigation/Other Contested Matters**

36. The majority of time billed by JM during the Application Period in this category related to the same matters discussed under Asset Analysis & Recovery. JM incorporates

11

paragraphs 26 through 27 herein by reference in support of time entries billed under "Litigation/Other Contested Matters."

37. JM expended 51.5 hours of time to provide such services. Professional fees in this category total $38,535.50.

## ADDITIONAL STANDARDS FOR AWARDING OF ATTORNEYS' FEES

### A.   NOVELTY AND DIFFICULTY OF LEGAL PROBLEMS INVOLVED

38. The first *Johnson* factor examines the degree of novelty and difficulty of the issues encountered by JM. With respect to the matters described herein, numerous difficult and complex legal problems have been addressed and considered by JM, all of which have required knowledge of the application of the Bankruptcy Code, the Bankruptcy Rules and court decisions interpreting the same.

### B.   CUSTOMARY FEE

39. The next relevant factor to be considered is the reasonable hourly rate by which the reasonable number of hours expended by JM are to be multiplied. Subsumed in this analysis are the following guidelines, as noted in *Johnson*: the customary fee charged by the applicant, awards in similar cases, the level of skill necessary, the amount involved, the results obtained, the reputation of the professional and the undesirability of the case.

40. JM's hourly billing rates are computed at the rates JM regularly charges its hourly clients.

41. The hourly rates charged by JM are commensurate or lower than the customary fees charged by professionals of similar experience, reputation and abilities in this community, as well as those rates charged regionally and nationally. Additionally, the hourly rates charged by JM are consistent with the amount involved in these cases, the nature of the disputes and issues addressed

in these cases, the results obtained by JM, and the level of skill necessary to perform the work. Accordingly, the hourly billing rates charged by JM are reasonable.

        **C.**      **SKILL REQUIRED FOR PERFORMANCE OF LEGAL SERVICES**

42.      The number of difficult issues and matters addressed in these cases has required a high degree of skill and expertise. JM's attorneys, with varying levels of experience and seniority, have been used effectively and efficiently to perform the tasks assigned to them and have provided valuable and effective assistance to the Trustee. A thorough understanding of the Bankruptcy Code and Bankruptcy Rules together with other state and federal law was blended with business expertise to assist the Trustee. In addition, multiple issues in these bankruptcy cases, including, but not limited to, ongoing litigation related to the TX and CT families, appellate claims and complex issues regarding jurisdiction, remand, and removal, the FSS Case and the Jones Case, the potential sale of equity, and examination of book royalties, have required additional expertise from JM's attorneys. The compensation requested by JM is consistent with the compensation awarded in other cases of similar size and complexity.

        **D.**      **RESULTS OBTAINED**

43.      JM's services in this case have assisted the Trustee in his efforts to maximize the value of the estate and efficiently administer this case. This case has been handled in a professional and cost-effective manner under the circumstances. The requested compensation is reasonable in view of the time expended, the parties involved, and the results obtained in this case.

        **E.**      **EXPERIENCE, REPUTATION, AND ABILITY OF JM**

44.      JM's attorneys, over many years, have appeared throughout the United States providing legal representation to trustees, debtors, secured creditors, unsecured creditors, and creditors' committees in proceedings under the Bankruptcy Code. Further, partners of JM,

including those who have provided legal services in the instant cases, have for many years actively participated in leadership positions in various professional organizations and bar associations, and have written for local and national publications and spoken at local, state and national institutes for continuing legal education in the area of bankruptcy, creditors rights, restructuring, and fiduciary litigation. JM's attorneys are experienced in all aspects of bankruptcy matters, possess a high level of expertise, and have an excellent reputation in the business and legal communities. Furthermore, JM has particular experience in the areas of insolvency, workouts and corporate reorganization, and the representation of trustees in bankruptcy proceedings.

F. **CONTINGENT NATURE OF FEES AND UNDESIRABILITY OF CASE**

45. No contingent fees are requested in these cases.

G. **TIME LIMITATIONS IMPOSED BY THE CASE**

46. The time demands of this representation have, at times, been significant for JM but JM has worked quickly, diligently, and efficiently to address the serious challenges faced by the Debtor's estate within the Application Period.

47. These fees and costs were necessary for the proper and successful administration of the bankruptcy cases. JM made every effort to keep all fees and costs to a minimum.

48. At all times covered by this Fee Application, JM diligently fulfilled its duty as bankruptcy counsel for the Trustee. All services rendered by JM benefited the estates at the time that such services were rendered. Services performed by JM throughout these cases were done in a professional, skilled, and expeditious manner, requiring substantially less time than would have been required by counsel with less experience. Every action of JM was taken to reduce the legal hours expended and matters not demanding the services of senior attorneys were assigned to junior associates, or paralegals.

49. No agreement exists between JM and any other person, firm or entity for division or sharing of compensation in these cases.

50. The above narrative portion of this Application is primarily intended to serve as a summary recapitulation of the major areas of JM's activities and responsibilities. The exhibits provide complete summaries of the acts taken by JM on behalf of the Trustee during these cases.

WHEREFORE, JM requests that the Court enter an order (i) allowing JM's compensation for professional and paraprofessional services to the Trustee rendered during the Application Period in the amount of **$145,669.50** and reimbursement of actual and necessary expenses incurred by JM in the amount of **$1,145.12**; and (ii) award and order to be paid to JM the balance of any such fees and costs paid from funds available in the Debtor's estate.

Dated: September 15, 2025.

Respectfully Submitted,

**JONES MURRAY LLP**

By: */s/ Erin E. Jones*
Erin E. Jones (Bar No. 24032478)
Jacqueline Q. Chiba (Bar No. 24116899)
602 Sawyer St., Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Facsimile: (832) 529-3633
erin@jonesmurray.com
jackie@jonesmurray.com

*Co-Counsel for the Chapter 7 Trustee, Christopher R. Murray*

**CERTIFICATE OF SERVICE**

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in the case on September 15, 2025.

*/s/ Erin E. Jones*
Erin E. Jones

15