D-1-GN-18-001835

**EXHIBIT**

**8**

Alexander E. Jones; 22-33553

exhibitsticker.com

| | | |
|---|---|---|
| NEIL HESLIN and | § | IN DISTRICT COURT OF |
| SCARLETT LEWIS | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | 261st DISTRICT COURT |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | |
| OWEN SHROYER | § | |

---

### PLAINTIFFS' REPLY IN SUPPORT OF CHALLENGE TO NET WORTH DECLARATION AND MOTION FOR SANCTIONS FOR FALSE AND FRIVOLOUS PLEADING

---

Defendants' counsel seek to convince the Court to ignore a bankruptcy ruling by alleging a lack of jurisdiction, or alternatively, convince the Court that Judge Lopez actually granted their request for reconsideration, or alternatively, convince the Court that an error in editing the proposed turnover order has now revived Judge Lopez's supplemental order. As shown below, each of these arguments is frivolous and made in bad faith.

### ARGUMENT

**I.      An Errant Citation in the Proposed Order does not Revive Judge Lopez's Supplemental Order.**

Defendants' counsel claims that the Supplemental Order is in force because the order submitted by Plaintiffs and Intervenors "specifically recites the Supplemental Order." (Def. Resp., p. 2). Defendants' counsel seek to exploit what they know is a citation error in editing the order. Some background is useful.

When dismissing the FSS bankruptcy case in June 2024, Judge Lopez included an order -- which everyone agrees is still in force -- giving the Chapter 7 trustee signing authority

over FSS' bank accounts and the power to dispose of its assets for the benefit of creditors.[1] This order was made at the request of the Texas and Connecticut families, who were concerned that Alex Jones may dissipate FSS assets before those assets could be liquidated.

A few months later, in September 2024, Judge Lopez issued his Supplemental Order for the sale of assets. The Trustee retained his authority, and in addition, the assets were then vested in the trustee for the purposes of an auction. As the Court is aware, the Supplemental Order was later found to be nullified, while the June 2024 order remained in effect.

The turnover order proposed by Plaintiffs and Intervenors contained a statement noting that the Bankruptcy Court took action in "dismissing the FSS Bankruptcy Case and vesting authority in the Trustee to take control of the Judgment Debtor Free Speech Systems, LLC, including its assets and bank accounts." (*See* Proposed Order, p. 3). This statement is accurate, but there was an error in not updating the citation. The statement cites "Dkt. 956 (June 21, 2024) and Dkt. 1021 (September 25, 2024)." At the time of early drafting, that citation was also accurate, since the June 2024 order gave the trustee signing authority over FSS accounts and the September 2024 Supplemental Order carried that authority forward in preparation for an auction. The proposed order was originally drafted using a procedural history paragraph describing this period when both orders were in force.

However, because the bankruptcy court later ruled that the Supplemental Order had been nullified, the entry for "Dkt. 1021 (September 25, 2024)" on the proposed turnover

---

[1] Jones' counsel agree on this point, as they had Jones state in his affidavit:

"On June 21, 2024, Bankruptcy Judge Lopez entered an order in the FSS Bankruptcy case (herein called the "June Order," in Docket entry 956 in Case No. 22-60043) that both (a) dismissed the FSS bankruptcy and (b) at the same time transferred control and signing authority with respect to all FSS's bank accounts to the Chapter 7 Trustee."

order should have been removed from the citation prior to its filing, leaving only "Dkt. 956 (June 21, 2024)." Unfortunately, by error, it was not. Nor was this mistake caught in the courtroom at the recent hearing. However, the mistake in not removing "Dkt. 1021" from the citation is made evident from the clear position of Intervenors and Plaintiffs when seeking turnover: that the Supplemental Order was nullified and that the assets of FSS are not judicially vested in the Trustee. Nonetheless, pursuant to the June 2024 order, the Trustee still has authority and control to distribute FSS assets for the benefit of creditors. In other words, the statement in this Court's turnover order -- that Judge Lopez placed "authority in the Trustee to control of Judgment Debtor Free Speech Systems, including its assets and bank accounts" -- is a correct statement accompanied by an inaccurate citation that should have been updated.

Defendants now seek to turn this oversight into a "gotcha" moment, but it has no consequence. While the citation was in error, and this Court ultimately entered an order with an inaccurate citation in its procedural recitation, that citation in the Court's order does not magically breathe life back into Judge Lopez's Supplemental Order. Indeed, the stark difference between the mistake of not removing the citation to the nullified order compared to Defendants' intentional use of the nullified order illustrates the sanctionable nature of their conduct. *See, e.g., In re Lerma*, 144 S.W.3d 21, 23 (Tex. App.—El Paso 2004, no pet.) (Finding that inclusion of a voided order in an appendix through mistake is not sanctionable, while intentionally using that voided order to obtain benefit is sanctionable.)

Finally, Defendants' counsel claims that Plaintiffs must know the Supplemental Order is in force because Plaintiffs' proposed order required the turnover of FSS assets "subject only to approval of the Trustee." (Def. Resp., p. 4). Defendants' counsel claims "[t]here is no

logical explanation for the inclusion of this caveat other than to demonstrate Plaintiffs' knowledge of the continuing viability of the Supplemental Order." (*Id.*). In truth, that statement demonstrates the continuing viability of the **June 2024 order**, known as the "Initial Cash Order," which is the order that gave signing authority to the Trustee and permitted him to dispense assets for the benefit of creditors.

Thus, Defendants' counsel are wrong when claiming that the Trustee's approval "would only be an issue if the Supplemental Order had viability." (Def. Resp., p. 9). The Trustee's approval is an issue not because the Supplemental Order has continued viability, but because the June 2024 order giving him signing authority has continued viability. Defendants' counsel know and understand this reality, just as they know the inclusion of a citation to the September order was in error by Plaintiffs and Intervenors. Their attempt to capitalize on that error is cynical and disingenuous.

## II.     This Court Cannot Ignore a Bankruptcy Court's Order Based on an Alleged Lack of Jurisdiction.

In their Motion, Plaintiffs predicted that Defendants' counsel would "ask this Court to disregard [Judge Lopez's] rulings by arguing that [he] lacked jurisdictional authority to issue those decisions." (Pltf. Mot., p. 13). Defendants' counsel have done exactly that, and they have ignored the warnings in Plaintiffs' Motion that such an argument would be frivolous.

Defendants' allegations that Judge Lopez lacked jurisdiction to act are foreclosed by the U.S. Supreme Court's 1938 decision in *Stoll* and the long legacy of cases that have applied its mandates. The Fifth Circuit explained *Stoll* as follows:

> In *Stoll v. Gottlieb*, 305 U.S. 165, 59 S. Ct. 134, 83 L. Ed. 104 (1938), a bankruptcy court had previously confirmed a debtor's reorganization plan that provided for the discharge of certain gold bonds and the cancellation of the guaranty ... over the objection of creditors ... Following confirmation, Gottlieb [one of

the creditors] brought an action in a state municipal court to enforce the guaranty of Stoll.

After he brought the state court action, Gottlieb moved the bankruptcy court to modify its plan on the ground that the bankruptcy court lacked the power and authority to cancel Stoll's guaranty. This petition was denied and no appeal was taken. The state court case was thereafter appealed to the Supreme Court of Illinois which held that Gottlieb was entitled to enforce Stoll's guaranty and rejected Stoll's defense of res judicata.

On petition for writ of certiorari, the United States Supreme Court assumed, without deciding, that the bankruptcy court lacked jurisdiction of the subject matter and addressed the question of the conclusiveness of the bankruptcy order. The Court held that a court by necessity has the authority to determine its own jurisdiction over the parties and subject matter, and does so either tacitly or expressly, by rendering a judgment. Consequently, to allow a party to collaterally attack a court's jurisdiction is to allow retrial of issues already decided.

Therefore, after a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact. We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation.

*Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1052 (5th Cir. 1987). Here, the principles of res judicata likewise prevent this Court from inquiring into jurisdictional matters.

In *Republic Supply,* the defendant "attempt[ed] to distinguish *Stoll* on its facts" by claiming that the "the question of jurisdiction was neither 'determined [nor] raised' by the bankruptcy judge here." *Id.* Yet the Fifth Circuit noted that "the question of the authority of the bankruptcy judge to act was clearly placed before the bankruptcy court by Republic's counsel." *Id.* Regardless, the Fifth Circuit noted that "*Stoll* answers Republic's contention that

'the question of jurisdiction was not determined' by the bankruptcy court: 'Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter.'" *Id.* Moreover, the Fifth Circuit pointed out that "later cases have made clear that the parties need only have had the opportunity to raise the question of jurisdiction." *Id.* at 1053.

In the years after *Republic Supply,* the U.S. Supreme Court has consistently applied its opinion in *Stoll* when holding that parties may not collaterally attack a bankruptcy court's ruling by arguing that the court lacked jurisdiction if they had the opportunity to make that argument in the bankruptcy court. *See, e.g., Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 153 (2009) ("So long as respondents or those in privity with them were parties to the Manville bankruptcy proceeding, and were given a fair chance to challenge the Bankruptcy Court's subject-matter jurisdiction, they cannot challenge it now by resisting enforcement of the 1986 Orders."), citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, n. 9 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not ... reopen that question in a collateral attack upon an adverse judgment.").

Texas state courts dutifully follow *Stoll* and *Republic Supply.* For instance, in *Tanguy v. West,* the appellant argued to the First District Court of Appeals that a "Bankruptcy Judge signed a judgment ... over which that Judge had no Article III jurisdiction under the United States Constitution." *Tanguy v. West*, 516 S.W.3d 13, 16-17 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). However, the appellant had "raised this jurisdictional argument" in the federal court. *Id.* Applying *Stoll* and *Republic Supply,* the court held that "the issue cannot be retried here." *Id.; see also Taylor Drilling Co. v. Amend*, 438 S.W.2d 144, 149 (Tex. Civ. App.—

Amarillo 1969, writ ref'd n.r.e.) (refusing to address issue of federal court's jurisdiction when that issue had been raised in federal court). And as Texas courts have long acknowledged, even if the bankruptcy court "did commit some error of law … , the erroneous action should have been promptly challenged and the correctness of the decision tested by appeal in the time and manner provided by law, instead of … raising the question … in a collateral proceeding in the State court." *Wheat v. Tex. Land & Mortg. Co.*, 163 S.W.2d 880, 884 (Tex. Civ. App.—Eastland 1942, writ ref'd w.o.m.).

As such, it is improper to raise the question of the bankruptcy court's jurisdiction in this Court. Yet here, Defendants' counsel did not even do that, as they did not even "raise the question." Defendants' counsel skipped the question entirely. Instead, they had their client attest under oath that the nullified order was actually in force. As pointed out in Plaintiffs' Motion, "Defendants' counsel deliberately withheld the material facts to even raise the question, much less answer it." (Pltf. Mot., p. 13).

**III.     Attempts by Defendants' Counsel to Parse Judge Lopez's Words are Meaningless.**

Plaintiffs' Motion predicted that "Defendants' counsel will likely respond by quoting excerpts from discussions in the hearing on their motion to reconsider where it appeared Judge Lopez was sympathetic to their positions." (Pltf. Mot., p. 12). Again, this prediction proved accurate. Yet in reality, these excerpts merely highlight Judge Lopez's awareness of the substantive argument made in Defendants' Motion to Reconsider. Judge Lopez clearly understood that while an order is under appeal, the district court's jurisdiction to act on the order is constrained, and the district court can only take steps to construe those orders or act in furtherance thereof, but it cannot revoke or modify those orders. And it is equally clear that Judge Lopez was of the opinion that he did not "revoke" or "modify" anything in his

February ruling. (Pltf. Mot., Ex. 3, 47:8-13) Defendants' counsel clearly disagrees with the idea that Judge Lopez construed and acted in furtherance his original sale orders to find that the supplemental order was nullified following the unsuccessful auction. Yet whether that position is ultimately meritorious is of no consequence. As noted above, the exclusive venue for resolving that question is a federal appellate court.

Here, there is no amount of parsing which can explain away the facts and outcome, nor any basis for believing the February ruling or the March order confirming the same had been withdrawn or superseded, or that any reconsideration had been granted. And interestingly, both Plaintiffs and Defendants' briefs quote many of the same statements by Judge Lopez while reaching very different conclusions about what is being said. This is exactly why we do not treat excerpts of colloquy between judges and lawyers in oral hearing as rulings. What judges say during hearings can be helpful in understanding the judge's thought process behind a certain order or ruling, but it is not dispositive of how judges ultimately rule or do not rule. This is especially true when a judge repeatedly emphasizes that they are not making any rulings.

Indeed, the most troubling aspect of counsel's response brief is the lengths it goes to parse innuendo in excerpts from the early portion of the hearing while completely ignoring the clear and unequivocal statements made by Judge Lopez in the latter portions of the hearing. The brief cites excerpts from pages 40–49 of the transcript, but it fails to even address Judge Lopez's statements shortly thereafter:

- "Let me think about it. I don't want to rule today. I want to think about everything and think about this." (*Id.* at 52:3–5).

- Mr. Broocks, I'm certainly going to give you the opportunity to speak, but I don't want to rule one way or the other." (*Id.* at 54:5–8).

Further, as the hearing neared its conclusion, Judge Lopez stated, "I don't think my position has changed in terms of what I said in February." (*Id.* at 66:23-67:1-3). This is a reference to the February ruling in which Judge Lopez declared the Supplemental Order had been nullified by the failed auction, which is the ruling Defendants sought Judge Lopez to reconsider. Yet in the face of these statements, Defendants' counsel now tell this Court that Judge Lopez actually agreed with them and reconsidered his February ruling. On top of this, the brief also ignores the fact that Judge Lopez gave his blessing to Plaintiffs' counsel request for permission to "pursue our state court remedies." (*Id.* at 68:6–13).

## IV.    Defendants' Counsel Continue to Make Dishonest Statements

Alternatively, Defendants' counsel argues that this Court should pay no mind to the failure of the motion for reconsideration filed with Judge Lopez. In an act of dishonesty that would be stunning in any other context, Defendants' counsel tell this Court that "Defendants' Motion for Reconsideration sought a reconsideration of the auction, not the Supplemental Order." (Def. Resp., p. 11).

An honest witness against this lie is the motion itself, which began by stating in bold-face type:

> a.    THIS MOTION SEEKS RECONSIDERATION OF THE COURT'S IMPROPER DECLARING THE SUPPLEMENTAL ORDER "NULL AND VOID."   On June 21, 2024 this

The motion for reconsideration also stated:

> However, in a subsequent Order entered on February 5, 2025, this Court declared that the Supplemental Order was "null and void." This Motion **requests the reconsideration of that declaration.**

(*See* Pltf. Mot., Ex. 5, FSS Mt. to Reconsider, p. 3) (emphasis added). The motion argued that "[h]olding to the position that the Supplemental Order is void will create past, present and future chaos." (*Id.*, p. 5). Thus, the Defendants "request[ed] this Court reconsider its prior rulings." (*Id.,* p. 9). There is no way square these statements with the statement made by counsel to this Court: "Defendants' Motion for Reconsideration sought a reconsideration of the auction, not the Supplemental Order." (Def. Resp., p. 11). Importantly, the counsel who strenuously argued for Judge Lopez to reconsider the nullification of the Supplemental Order are the same counsel now telling this Court that their motion did not seek reconsideration of the nullification of the Supplemental Order. This is not a matter of advocacy or interpretation. This is a matter of up is down and east is west. This kind of conduct should be considered in determining an appropriate sanction.

**V.      Counsel's Arguments Regarding Money Judgments have no Support.**

While seemingly now acknowledging that the *Heslin* judgment should not be considered as a liability, Defendants' counsel insists that the Connecticut judgment is somehow different. The brief never explains why the Connecticut judgment is different. Presumably, because it was incurred in an out-of-state court and not in the instant case? Yet it remains a money judgment, and as Texas courts have repeatedly noted, "the plain language of the statute does not include a contingent money judgment in calculating net worth." *Bus. Staffing, Inc. v. Jackson Hot Oil Serv.*, 392 S.W.3d 183, 187 (Tex. App.—El Paso 2012, no pet.).

Next, Defendants' counsel makes the argument that one of the cases cited by Plaintiffs, *Senior Care Living,* involved liabilities consisting of bonds payable which ultimately resulted in a judgment, "which is distinct from the underlying money judgment." (Def. Resp., p. 15). As a result, the bond liabilities were permitted, because "this pre-existing liability [was not]

transformed into a contingent liability because of the trial court's final judgment." *Id.* That holding is irrelevant here. The Connecticut judgment did not transform a pre-existing liability.

Finally, Defendants' counsel argues that including a money judgment as a liability "is within the court's discretion." (Def. Resp. 16). The brief cites the 14th District's decision in *Ramco Oil,* but it provides no elaboration. In *Ramco Oil,* the dispute centered on whether a court must consider assets versus liabilities to determine net worth, or whether it may consider market capitalization as a measure of net worth. The 14th District concluded the trial courts do not have the discretion to consider market capitalization. Importantly, [a]lthough trial courts have discretion under section 52.006 to determine the *amount* of a judgment debtor's net worth, they have no discretion to alter the meaning of the term "net worth." *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 914 (Tex. App.— Houston [14th Dist.] 2005, no pet.) (emphasis in original). Further, "even if the legislative history stated that the trial court has unbridled discretion to determine the judgment debtor's net worth or that 'net worth' has no fixed meaning or definition whatsoever, we would not be able to give effect to this legislative history because it would contradict the unambiguous language of the statute." *Id.* at 915. As noted above, Texas courts have repeatedly emphasized that "the plain language of the statute does not include a contingent money judgment in calculating net worth." *Bus. Staffing, Inc. v. Jackson Hot Oil Serv.*, 392 S.W.3d 183, 187 (Tex. App.—El Paso 2012, no pet.); *see also McCullough v. Scarbrough, Medlin & Associates, Inc.*, 362 S.W.3d 847, 2012 Tex. App. LEXIS 1975 (Tex.App.--Dallas 2012, no pet.) (same); *Anderton v. Cawley*, 326 S.W.3d 725, 726 (Tex.App.--Dallas 2010, no pet.) (same).

Most importantly, Defendants' counsel did not cite any case which has ever considered a money judgment when determining net worth under TRAP 24.1. This is because, as Plaintiffs first pointed out nearly three years ago when Defendants filed their first frivolous appellate bond request, "there is no reported decision in which a trial court has concluded that a judgment liability should go onto a balance sheet so as to lessen overall net worth." James Holmes, *Superseding Money Judgments in Texas: Four Proposed Reforms to Help the Business Litigant and to Further Improve the Texas Civil Justice System*, 51 ST. MARY'S L.J. 69, 98-99 (2020).

## CONCLUSION

For all these reasons, Plaintiffs ask this Court to hold a hearing and assess sanctions against Defendants' counsel under TRCP 13, TCPRC Chapter 10, and/or the Court's inherent authority.

Respectfully submitted,

**FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax
mark@fbtrial.com
bill@fbtrial.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2025, the forgoing document was served upon all counsel of record via electronic service.

MARK D. BANKSTON