ACCEPTED
03-25-00617-cv
105912861
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/22/2025 2:52 PM
JEFFREY D. KYLE
CLERK

No. 03-25-00617-CV

_____

**IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS**

| EXHIBIT |
| --- |
| **15** |
| Alexander E. Jones; 22-33553 |

_____

FREE SPEECH SYSTEMS, LLC
*Appellant*,

v.

DAVID WHEELER, FRANCINE WHEELER, JACQUELINE BARDEN, MARK BARDEN, NICOLE HOCKLEY, IAN HOCKLEY, JENNIFER HENSEL, DONNA SOTO, CARLEE SOTO PARISI, CARLOS M. SOTO, JILLIAN SOTO- MARINO, WILLIAM ALDENBERG, WILLIAM SHERLACH, ROBERT PARKER, ERICA ASH, NEIL HESLIN, SCARLETT LEWIS, AND GREGORY S. MILLIGAN
*Appellees*.

_____

On Appeal from the 459th District Court of Travis County, Texas
Trial Cause No. D-1-GN-18-001835

_____

**APPELLANT'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR IMMEDIATE STAY OF VOID TURNOVER ORDER ISSUED IN VIOLATION OF THE BANKRUPTCY AUTOMATIC STAY**

_____

TO THE HONORABLE THIRD COURT OF APPEALS:

On August 13, 2025, Appellees induced the trial court to enter a Turnover Order [**Appendix A**][1], which has precipitated this appeal. On August 27, 2025,

---

[1] FSS incorporates by reference the arguments, authorities, defined terms, and appendices included in the Motion.

Appellant filed an Emergency Motion for Immediate Stay (the "Motion"). On August 28, 2025, this Court "temporarily [stayed] the Turnover Order until further order of this Court pending our review of the Motion and any response." On September 11, 2025, Appellees filed their Response to the Appellant's Emergency Motion for Immediate Stay (the "Response").   Appellant submits this reply in support of the Motion and to address arguments raised in the Response:

## A.   THIS COURT HAS THE POWER TO PROTECT ITS JURISDICTION TO AFFORD EFFECTIVE RELIEF ON APPEAL, INCLUDING TEMPORARY RELIEF

Appellees' very first argument is suggestive that this Court does not have the power to issue temporary relief on appeal—

> In its typical haphazard fashion, Free Speech Systems LLC (FSS) has not stated which statute, rule, or other body of law grants the Court authority to stay the Turnover Order pending appeal. Given the underlying facts, the granting authority is determinative of whether the Court must deny the stay.

Response, p. 4.  Of course, part of FSS's complaint is that the trial court has not given effect to its cost bond in lieu of supersedeas, and temporary relief is therefore permitted under TEX. R. APP. P. 24.4(c).  As the Court will learn through motion practice in the related appeal in Cause No. 03-23-00209-CV under TEX. R. APP. P. 24.4(a), the trial court has sustained objections to FSS's cost bond in lieu of supersedeas, and now will no longer give credence to its efforts to stay execution.

2

Thus, temporary relief is available relating the trial court's failure to give credence to the cost bond filed by FSS.

But the more fundamental issue informs this Court's consideration of its temporary relief powers?  Can, and should, a court of appeals act to preserve the relief that it can afford on appeal, to prevent some of the relief being sought on appeal from being lost or rendered moot?  That answer is surely "Yes."

The Texas Supreme Court has reasoned that "[t]he power of the courts of appeals to protect their jurisdiction is essential for the orderly administration of justice." *Dallas Morning News v. Fifth Court of Appeals*, 842 S.W.2d 655, 658 (Tex. 1992).  Under this rationale, the Texas Supreme Court has held that a court of appeals had the duty to issue temporary relief to preserve its power to grant effective appellate relief, to ensure that the issues raised before it do not become moot pending appeal.  *See H&R Block, Inc. v. Haese*, 992 S.W.3d 437 (Tex. 1999) (court of appeals required to issue temporary orders to prevent portion of relief requested on appeal from becoming moot).[2]  Indeed, in *Haese*, the Texas Supreme Court issued mandamus relief as to a court of appeals' failure to grant temporary relief to preserve the issues on appeal.

---

[2] *See also Parsons v. Galveston County Employees Credit Union*, 576 S.W.2d 99, 99 (Tex. Civ. App.—Houston [1st Dist.] 1978, no writ) ("Such transactions will change or destroy the subject matter of this appeal, making it likely to become at least partially moot by the time its final disposition is reached. Therefore, we grant the stay to preserve the jurisdiction of this court.").

The *Haese* case not only justifies but compels this Court to consider the issuance of temporary orders to prevent some of the effective relief sought in this Court from becoming moot pending review. 992 S.W.3d at 439. In *Haese*, the trial court issued an order that prohibited defendants from taking action in certain new transactions pending appeal, although the validity of this order and requirement were some of the bases for appeal.  The Texas Supreme Court noted that, if the defendants were to comply with this order pending appeal, some of the relief that defendants were seeking on appeal would be moot: "Were defendants forced to comply with the order pending appeal, they would forever lose their right to obtain agreements from repeat customers to arbitrate disputes in connection with new loans.  *Id.*  As to those rights, defendants' appeal would be mooted."  Thus, the Texas Supreme Court observed that the court of appeals had erred in failing to issue temporary orders to protect its ability to fashion effective appellate relief on disposition of the appeal: "Accordingly, the court of appeals should have stayed the order pending its review to prevent a portion of the appeal from becoming moot."  *Id.*

A similar justification for temporary relief was discussed in *In re Verizon Wireless Personal Communications, LP*, 2024 WL 4544922, *1-2 (Tex. App.—Waco Oct. 22, 2024) (order). There, the appellant filed both and motion for temporary relief as well as seeking an injunction from the court of appeals to protect its jurisdiction pending appeal: "Verizon filed its motion for temporary relief and

petition for writ of injunction to protect the subject matter of the receivership during the appeal as well as this Court's jurisdiction." 2024 WL 4544922 at *1. The court of appeals explained that it could issues relief to preserve the relief that was being sought pending appeal—

> An appellate court may issue a writ of injunction if necessary to protect the Court's jurisdiction over the subject matter of a pending appeal, or to prevent an unlawful interference with the enforcement of its judgments and decrees. *See* Tex. Gov't Code Ann. § 22.221(a); *In re Alamo Defs. Descendants Ass'n*, 619 S.W.3d 363, 367 (Tex. App.—El Paso 2021, orig. proceeding). Thus, we are authorized to protect our jurisdiction by preserving the subject matter of the appeal in order to make our decrees effective. *In re Alamo Defs. Descendants Ass'n*, 619 S.W.3d at 367. Because the patents are subject to the turnover order, and the receivership and turnover order are the subjects of pending appeal Cause Number 10-23-00081-CV, we grant the petition for writ of injunction to preserve this Court's jurisdiction over the appeal.

2024 WL 4544922, *1-2. In granting injunctive relief on appeal—a stay just as would be in an order for temporary relief—the court was concerned that some of the rights sought on appeal would be lost or impaired without a stay pending appeal. Notably, this injunctive relief issued on appeal from a turnover order, the very same situation as is facing the Court here.

**B.    ABSENT A TEMPORARY RELIEF, FSS WILL SUFFER IRREPARABLE HARM, LOSING SOME OF THE RIGHTS THAT WOULD HAVE BEEN PRESERVED BY THIS APPEAL**

In granting a stay pending appeal, the Texas Supreme Court has focused on the potential impairment of rights pending appeal. *In re State of Texas*, 711 S.W.3d

641 (Tex. 2024).  In that decision, the Texas Supreme Court granted what it referred to as an "administrative stay," preserving the court of appeals' ability to address the appeal on the merits, while granting temporary relief so that the appellant's rights would not be permanently impaired along the way.  *Id.* at 646 n. 2.  There will be harm here, rights lost, assets divested, and a business destroyed, absent temporary relief here.

Pursuant to the terms of the Turnover Order, FSS is obligated to comply with the Turnover Order and within five (5) days to begin turning over all "Turnover Property" to the Court appointed receiver, Gregory S. Milligan. If allowed to be enforced, FSS must immediately turn over to the Receiver: bank statements, pass books, and other back or financial institution records, real property deeds and deeds of trust, any other record or document, evidencing any ownership to real of personal property or to any debt owed or money had, and all documents listing or summarizing property owned by FSS. Pursuant to the terms of the Turnover Order, the Receiver has the express authority to: collect all accounts receivable of FSS, change the locks at all premises at which any property is situated, and exercise control over any website of FSS and direct the administrator or web server to allow Receiver full access1to the management of the website. If the Receiver is permitted to proceed, as intended, his actions to enforce the Turnover Order will have devastating and irreversible effects on business of FSS.

6

The Turnover Order, a post-judgment enforcement order, gives the Receiver the ability to control assets of FSS. Rule 24.2(d) of the Texas Rules of Appellate Procedure provides that a "trial court may not make any order that interferes with the judgment debtor's use, transfer, conveyance, or dissipation of assets in the normal course of business." The Turnover Order violates Rule 24.2(d) because it interferes with FSS's use, transfer, conveyance, or dissipation of assets in the normal course of business. *See Nelson v. Vernco Constr., Inc*. 367 S.W.3d 516, 523 (Tex. App.—El Paso 2012, no pet.). While it is not required to do so in order to be entitled to a stay, FSS can demonstrate that absent a stay, the Turnover Order would interfere with FSS's ongoing business.

Absent a stay of the turnover order, the Receiver may impair or divest assets that should have been protected by a bankruptcy stay, and that should have been protected by a supersedeas. The turnover order is not likely to stand up on direct appeal of that turnover order itself. And what of the appeal of the judgment under D-1-GN-18-001835, which at a minimum stands to be substantially reduced? Shouldn't that have an effect of a turnover order issued under a Cause Number that may be reversed on appeal? Nor will restitution under *Miga v. Jenson*, 299 S.W.3d 98 (Tex. 2009) cure things, especially where the harm to FSS may exceed the net worth of the plaintiffs, where the amounts could not be recovered back from them, where it could not be determined whether execution was done by

the Texas Plaintiffs or the Connecticut plaintiffs under their undisclosed settlement deal, and especially where FSS should have been subject to execution in the first place.  Under these circumstances, where rights of FSS to avoid a turnover order (that should not have issued) would lead to irreparable harm, temporary relief is authorized and indeed required.

**C.     APPELLEES' RESPONSE TO THE AUTOMATIC STAY IS UNAVAILING.**

A crucial part of the appeal and the pending Motion to Stay, involves what is called the "Supplemental Order" of the bankruptcy court that (a) transferred all of FSS assets to the bankruptcy estate of Alex Jones, Christopher Murray Trustee and (b) consequently made the automatic stay provisions of 11 U.S.C. §362(a) applicable to those assets and thus making void any state court order entered with respect to those assets. There are several preliminary points on which either the parties agree and/or the case law is crystal clear.

*First* Texas law is crystal clear that a turnover order directed at assets covered by the automatic stay is void -- not voidable.  *York v. State*, 373 S.W.3d 32, 39-40 (Tex. 2012).  Appellees do not contest this because it is an ironclad fact.

*Second* it is undisputed and unchallenged, that even in the event of uncertainty as to whether assets are part of a bankruptcy estate, the automatic stay applies, and the Turnover Order is void.  *See Brown v. Chesnut (In re Chesnut),* 422 F.3d 298, 300 (5th Cir. 2005).  *See also Bonneville Power Admin. v. Mirant Corp. (In re Mirant*

8

*Corp.)*, 440 F.3d 238, 251 (5th Cir. 2006) ("...this Court has recognized the automatic stay's broad application and noted that such breadth reflects a congressional intent that courts will presume protection of property when faced with uncertainty or ambiguity.").

*Third*, it is not in dispute that while the Supplemental Order was on appeal to the United States District Court, it could not be modified or vacated.  The authorities for this proposition are set forth in our Opening Brief and will be repeated here but are incorporated by reference.  Further, Appellees do not disagree with this legal fact.

*Fourth*, there is no dispute that the so-called Supplemental Order entered by the bankruptcy court transferred FSS assets to the Bankruptcy Estate of Jones.  No dispute on this is possible as the wording of the Supplemental Order is crystal clear:

United States Bankruptcy (
Southern District of Texa

**ENTERED**

September 25, 202

Nathan Ochsner, Cler

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

In re: § Chapter 11
§
FREE SPEECH SYSTEMS, LLC, § Case No. 22-60043 (CML)
§
Debtor. §
§

**ORDER SUPPLEMENTING ORDER DISMISSING CASE**
[Related to Docket No. 956]

1. Effective as of the entry of the Order Dismissing Case [Docket No. 956] (the "Dismissal Order"), pursuant to Section 349(b), all property of the estate of Debtor Free Speech Systems, LLC ("FSS") shall be deemed to have vested in the bankruptcy estate of Alexander E. Jones, Case No. 22-33553, as property of that estate pursuant to Section 541 and shall be under the control of the trustee of such estate ("Chapter 7 Trustee").

2. The Chapter 7 Trustee is authorized to operate the business of FSS pursuant to Section 721 for a period not to exceed one year, absent further order of this Court.

Signed: September 25, 2024

Christopher Lopez
United States Bankruptcy Judge

Rather Appellees' sole argument is that (a) in a hearing on February 5, 2025, the bankruptcy court "nullified" the Supplemental Order, (b) it reaffirmed that nullification in March, 2025, and (c) at a hearing on June 5, 2025 when Appellees claim Appellants asked Judge Lopez to "reconsider " his nullification, Judge Lopez both reaffirmed his previous nullification but said he may "reconsider" that nullification which the bankruptcy court has yet to do.

Appellees contend these points are so clear that "No reasonable attorney could conclude that Judge Lopez had granted FSS's motion to reconsider," [Resp., p. 18]

and thus the Supplemental Order is still nullified.   There is no charitable way to say it, but this is pure nonsense. Appellees know full well that the Supplemental Order is in full force and effect and have built an argument on a house of cards by asserting these points as an after-the-fact argument to avoid the inescapable. Appellants will address each of these points but in a slightly different order.

1. *THE TURNOVER ORDER SPECIFICALLY STATES THAT THE SUPPLEMENTAL ORDER IS VALID AND BINDING AS A FINDING OF THE COURT*

For convenience, the relevant portion of Judge Gamble's Order is restated:

> **The Court also FINDS that** Judgment Debtor Free Speech Systems, LLC filed for bankruptcy under chapter 11 of the Bankruptcy Code on July 29, 2022 (the FSS Petition Date) in the Bankruptcy Court as case no. 22-60043 (the FSS Bankruptcy Case). Following a hearing on June 14, 2024, the Bankruptcy Court issued two orders in the FFS Bankruptcy Case dismissing the FFS Bankruptcy Case and vesting authority in the Trustee to take control of Judgment Debtor Free Speech Systems, LLC, including its assets and bank accounts.  *See* Dkt. 956 (June 21, 2024) and Dkt. 1021 (September 25, 2024), No. 22-60043 (Bankr. S.D. Tex.).  Accordingly, the Application only seeks relief relating to the following (cumulatively, the Turnover Property):
>
> (i)   as to Judgment Debtor Free Speech Systems, LLC, all its assets (subject only to approval of the Trustee).

First, it must be noted that the Order signed by Judge Gamble references the Supplemental Order as a "finding of fact" made by the Court included at Appellees' hands.

Plaintiffs refer to this multiple times as an "errant citation error"[Resp., p. 21 heading] or a "citation error in editing the order" [Resp., p. 21], a simple error made because an early draft of the Order tendered for signature "was originally drafted using a procedural history paragraph describing this period when both orders were in force" [Resp., p. 23] and that FSS is turning this ""inaccurate citation" into a "gotcha moment" that "magically breathe[s] life back into Judge Lopez' Supplemental Order..." [p. 24].

While none of that is correct, Judge Gamble lost plenary power to alter her Order on or around March 28, 2023 and it cannot now be changed. *See* TEX. R. CIV. P. 329b; *Custom Corporates, Inc. v. Sec. Storage, Inc*., 207 S.W.3d 835, 838 (Tex. App.—Houston [14th Dist.] 2006, no pet.).  It is law of the case.  And as this matter is on appeal to this Court, Judge Gamble could not change her Turnover Order if she wanted to.

Moreover, as to it being an errant vestige of an earlier draft, it is notable that that alleged earlier draft is neither dated nor attached; it is impossible to conceive how a definitive finding of fact, could have been errantly included.

But even more fundamentally, Appellees' characterizations of the two operative orders -- the June Order [Dkt. 956] and the Supplemental Order [Dkt.1021] -- are just plain bogus.

2. *THE JUNE ORDER DID NOT GIVE THE TRUSTEE POWER OVER FSS ASSETS*

Appellees contend that the June Order gave the Chapter 7 trustee dual powers including "signing authority over FSS' bank accounts and the power to dispose of its assets for the benefit of creditors, though those assets remained the property of FSS." [Resp., p. 23]. They even claim FSS filings agree, misquoting Jones' Declaration on this point. *Id*. n. 5.[3]

But the June Order **DID NOT** give the Trustee power or authority over FSS assets, only its bank accounts and that is why the Supplemental Order was necessary, the June Order being clear as to the scope of its coverage:

> ## ORDER DISMISSING CASE
>
> For the reasons stated on the record at the hearing held on June 14, 2024, this case is dismissed. It is further ORDERED:
>
> 1.      The employment of all professionals retained in these chapter 11 cases and the Subchapter V Trustee's service is terminated. Except as otherwise set forth below, the Debtor's CRO shall have no further responsibilities with respect to the Debtor's operations.
>
> 2.      The CRO is authorized to transfer control and signing authority with respect to the Debtor's bank accounts to Christopher R. Murray in his capacity as the Chapter 7 Trustee for the bankruptcy estate of Alexander Jones, Case No. 22-33553.

As the June Order by its terms only covers FSS bank accounts and nothing else, it is inexplicable that the Appellees would repeatedly characterize this June

---

[3] Jones' Declaration merely refers to the June Order as having "transferred control and signing authority with respect to FSS 's bank accounts..." not FSS assets.

Order as transferring *both* FSS cash and its assets,[4] when the words of the June Order say no such thing and specifically dealt only with FSS cash.

3. *THE APPEAL OF THE SUPPLEMENTAL ORDER BY THE TEXAS PLAINTIFFS AND INTERVENTION BY THE CONNECTICUT PLAINTIFFS DEMONSTRATES PLAINTIFFS' DISHONESTY*

As noted in Appellants' Motion to Stay, the Texas Plaintiffs appealed the bankruptcy court's entry of the Supplemental Order to the District Court for the Southern District of Texas and did so for the very reason that FSS assets were transferred. **Appendix G**. In their statement of the issues on appeal, the Texas Plaintiffs stated to the United States District Court to whom bankruptcy appeals first go, precisely what the Supplemental Order did:

> **STATEMENT OF ISSUES**
>
> 1. Did the Bankruptcy Court err when, without notice, it entered an order [Docket No. 1021]—three months after dismissing the Free Speech Systems, LLC bankruptcy [Docket No. 956]—that retroactively vested all property of former debtor Free Speech Systems, LLC into the bankruptcy estate of Alex Jones?

---

[4] **Resp. p. 23** ("Nonetheless, pursuant to the June 2024 order, the Trustee still has authority to distribute FSS assets for the benefit of creditors."); **Resp. p. 23-24** ("Judge Lopez placed 'authority in the Trustee to control of Judgment Debtor Free Speech Systems, including its assets and bank accounts' -- is a correct statement accompanied by an inaccurate citation that should have been updated.); **Resp. p. 24** ("... the June 2024 order, known as the "Initial Cash Order," which is the order that gave signing authority to the Trustee and permitted him to dispense assets for the benefit of creditors.")

14

The Texas Plaintiffs' Statement Of Issues And Designation Of Record To Be Presented On Appeal, Case No. 4:24-cv-03882, Dkt No. 14-1, in the United States Bankruptcy Court for the Southern District of Texas. **Appendix H**.

The Connecticut Plaintiffs here intervened in that appeal. **Appendix J**. In that intervention, contrary to what is argued here, the Connecticut Plaintiffs stated that in the June Order they themselves sought "the Bankruptcy Court specifically authorized the transfer of control and signing authority over the FSS bank accounts to the Jones Chapter 7 Trustee (the 'Dismissal Order')..." [**Appendix J,** p. 4.] and then assert that the Texas Plaintiffs acquired a state court turn over from Judge Gamble and did so "notwithstanding the Bankruptcy Court's Dismissal Order—entered two hours earlier—vesting control of FSS bank accounts in the Jones Chapter 7 Trustee." **Appendix J,** p. 5. The Connecticut Plaintiffs went on to characterize the Supplement Order

> 14.    On September 25, 2024, the Bankruptcy Court entered the Supplemental Dismissal Order on the FSS docket. (Bankr. Dkt. 1021). This Supplemental Dismissal Order clarified that as of the entry of the original Dismissal Order, all property of FSS was deemed to have vested in the bankruptcy estate of its 100% equity owner, Alex Jones, as property of that estate under the control of the Chapter 7 Trustee. *Id.*

15

**Appendix J,** p. 8. For Connecticut Plaintiffs to now claim the June Order gave the Trustee FSS's assets and the Supplemental Order was solely to allow their auction, is not true.

4. *THE TURNOVER ORDER REQUIREMENT FOR TRUSTEE APPROVAL SHOWS THE SUPPLEMENTAL ORDER STILL IN EFFECT*

The Connecticut Plaintiffs are forced into this prevarication because they also included in the Turnover Order, the proviso that the turnover of FSS assets required approval of the Bankruptcy Trustee, Judge Gamble's Order stating: "as to Judgment Debtor Free Speech Systems, LLC, all its assets (subject only to the approval of the Trustee.").

FSS has argued that the inclusion in Plaintiffs Turnover Order of a proviso that seizure and sale of FSS assets requires approval of the bankruptcy Trustee (Murray), is an acknowledge that including Trustee approval could only be done if the Trustee had control over FSS assets which he got from the Supplemental Order. Because of that reality, Connecticut Plaintiffs were forced to re-write the history of the June Order arguing to this Court that the June Order gave the Trustee some control over FSS assets, notwithstanding its clear indication it dealt only with bank accounts. But the argument that the June Order conveyed control over assets to the Trustee when it doesn't, is not sustainable.

As the transcript of the bankruptcy hearing on September 24, 2024 demonstrates, when Judge Lopez entered the Supplemental Order, he stated first as

16

to the June Order, that the bankruptcy Trustee (Murray) over the estate of Jones, held

the equity in FSS and had control of FSS bank accounts, the Court stating:

> "I explicitly told Mr. Murray [the bankruptcy Trustee] that he was in charge of the bank account and that he had control of the equity of FSS. He's in charge." BK Transcript September 24 hearing, p. 12, lines 8-10.

And again:

> "...it wasn't going to happen because he was in charge of the bank account. There wasn't going to be a run. And he has the equity of FSS."  Id. at p. 14, line 5-7.

But the purpose of the September 2024 hearing that resulted in the

Supplemental Order, was to convince Judge Lopez that that something more was

needed and that simply because Trustee Murray held the FSS equity did not mean

he could sell FSS assets:

> "THE COURT:  So the [US] Trustee is going to try to convince me that somehow being in control of FSS equity means that['s] all you can do is sell it."  BK Transcript September 24 hearing, p. 13, lines 13--15.

And that is what US Trustee Ha Min Nguyen (not to be confused with bankruptcy

trustee Murray) did, explaining to the bankruptcy court that holding and selling the

equity of a company was not the same thing as holding and selling the assets of an

entity:

> "But there are basic tenets of American corporation laws that the U.S. Supreme Court has said that -- you know, just because you own a hundred percent of the equity, you don't own a hundred -- the estate itself doesn't own the assets."

*Id*. at p. 23, line 16-20.  Following this, the Supplemental Order was then signed to vest FSS assets in the trustee to allow their sale of FSS assets; and it was denominated a "Supplemental Order" because that is what Judge Lopez said he had intended to accomplish in June but recognized the need to now clarify by the Supplemental Order:

> THE COURT: That was always the intent. Right? And we can disagree about that. But I'm just saying that was always the intent. Everybody knew. Everybody understood that at the time. If that wasn't clear or -- no one raised it to me then when winddown was being discussed. If you want me to do that, I am more than happy -- because it sounds like everybody needs it anyway -- I'm more than happy to clarify in my order that all the assets -- if it didn't include it in the assets, that's why he has the cash, right? That's why he's got the cash and that's why he's got the equity interest. He's got everything. That was always the intent as to what was going on. But if that makes this easy, I'm happy to do it. Because I think you and I actually agree a lot here. I just think we're getting in the technicalities here. But that certainly was what I ordered at the time.
>
> MR. NGUYEN [US Trustee]: Your Honor, it's not the technicality. It's actually what the Code says.

*Id*. p. 24, lines 5-22.   Therefore, precisely because the Bankruptcy Court's June Order was not clear as to the status of FSS assets, the Supplemental Order -- i.e., supplementing the June Order -- was entered.

In summary, Appellees' argument is that the wording of the Turnover Order that it "only seeks relief .... as to Judgment Debtor Free Speech Systems, LLC [of] all its assets (subject only to approval of the Trustee)" was included because the June

Order conveyed FSS assets to the Trustee, is not credible. Rather, their conveyance was accomplished by the Supplemental Order.

And apart from all this, even if Appellees were correct that the June Order gave control over FSS assets to the Trustee of Jones' bankruptcy estate such that his consent to their sale would be required, this is tantamount to an admission that the automatic stay provisions are in force and the Turnover Order violates them.

5. *PLAINTIFFS ARGUMENTS THAT THE BANKRUPTCY COURT'S ACKNOWLEDGEMENT OF ITS INABILITY TO MODIFY OR VACATE ITS SUPPLEMENTAL ORDER WHILE IT WAS ON APPEAL DID NOT PREVENT IT FROM NULLIFYING IT MAKE NO SENSE*

Appellees concede as they must that as the Texas Plaintiffs had appealed the entry of the Supplemental Order, the bankruptcy court had no authority to modify or vacate it.  They do not quibble with the Court's own words, stating precisely that:[5]

---

[5] Plaintiffs oddly assert FSS is collaterally attacking the bankruptcy court orders which they claim cannot be done if FSS "had the opportunity to make that argument in the bankruptcy court." Resp. p. 19, n. 4. Clearly FSS did bring this to J. Lopez's attention, and he corrected his errors. Furthermore, a void judgment can always be collaterally attacked.  *York*, 373 S.W.3d 32 (Tex. 2012).

somebody wants to buy the equity, which someone can always do in Chapter 7.  I read your pleadings and I think -- I went back and listened to it, and I'll take the blame for not being incredibly as precise as I should have been.

The matter was currently pending.  That order was currently pending on appeal at the time, so I couldn't revoke one way or the other, right?  Once bankruptcy, once an appeal is filed, the Court loses jurisdiction over that.  What I intended to say and certainly communicate to the parties is conducting -- well, I can't, I'm not going to| force the trustee to put up another sale, put on auction.  The trustee can exercise business judgment, but here are the matters, here are the things the trustee needs to think about before we bring

**Appendix M**, p. 40.  And also

someone suing them because they really didn't own something that I sold and so I haven't revoked anything.  I didn't have authority to do it anyway, but to me, putting up another auction process would be incredibly complicated, incredibly

Appellees' argument, however, is that while the Bankruptcy Court admittedly could not modify or vacate and any effort to do so was a legal nullity, it nevertheless "interpreted" the Supplemental Order as being a nullity.  Said differently, the Appellees appear to argue that while the bankruptcy court could not nullify its Supplemental Order, it could interpret that order to be a nullity, which of course makes no sense.

Aside from the facial absurdity of this, further revealing it as a pure canard is the Bankruptcy Court's own statements at the June 2025 hearing where it said it had

not modified the Supplemental Order in February because it could not, but asked if it should do so now:

```
THE COURT:  I don't think I modify the order --

MR. JORDAN:  You didn't.

THE COURT:  -- back in February.

MR. JORDAN:  No.

THE COURT:  The question is, do I do it now?  It's
the question you're telling me.
```

**Appendix M**, p. 47.  Asking "do I do it now" would be an absurd question had the Court already interpreted the Supplemental Order as a nullity.

6. *THE FACT THAT THE TRANSCRIPT OF THE JUNE 2025 HEARING DISCUSSES WHETHER THE BANKRUPTCY COURT WOULD CONSIDER AUTHORIZING ANOTHER SALE EFFORT OF FSS ASSETS SHOWS THE CONTINUED VIABILITY OF THE SUPPLEMENTAL ORDER*

And while nothing else is needed to thoroughly debunk Appellees' frantic, "Hail Mary" effort to re-write history, the fact that the Bankruptcy Court repeatedly asked at the June 2025 hearing whether it should allow the Trustee to again attempt to sell FSS assets, only makes sense if the Trustee still has control of them.

21

The matter was currently pending.  That order was currently pending on appeal at the time, so I couldn't revoke one way or the other, right?  Once bankruptcy, once an appeal is filed, the Court loses jurisdiction over that.  What I intended to say and certainly communicate to the parties is conducting -- well, I can't, I'm not going to force the trustee to put up another sale, put on auction.  The trustee can exercise business judgment, but here are the matters, here are

another motion for the sale of the assets.  And here's a laundry list of issues that I've got.

Trustee is going to have to think about whether I approve any sale process because it would have to be conducted by me.  It would have to be cash only and we'd have to sort out all the intellectual property issues.  So I don't want someone buying something -- and I expressed this a while back

There is simply no way the bankruptcy court would be thinking about authorizing another sale of FSS assets if they were not in the Trustee's control via the Supplemental Order.  The Appellees even quote one of the June 2025 transcript exchanges where Judge Lopez again ruminates on another sale effort:

> The question is do we do another sale?  That's the
> real question.  Or another proposed sale with another proposed
> hearing and determining what the assets are there and then who
> will conduct the sale and who would do the auction and whether
> you do some cash or and what the analysis would be to get me
> comfortable that those assets are actually owned by FSS.  And

And Appellees' response to the question of how these matters could be even on the discussion table if the Supplemental Order had been nullified, is to assert with no basis whatsoever, that "Any future sale would require its own Supplemental Order, which had become nullified after the first sale." Resp. p. 15.  This is just as nonsensical as the remainder of their arguments, as Plaintiffs never explain how the bankruptcy court could enter a new order conveying FSS assets when FSS has now been dismissed from bankruptcy court over a year.

## D.   TURNOVER PROCEEDING IS PROCEDURAL DEVICE AND DOES NOT ADJUDICATE SUBSTANTIVE RIGHTS.

Appellees' argument that their request for the trial court to enter a turnover order in favor of non-parties to the underlying litigation is substantively baseless and contrary to applicable law.

It is well settled law that the standard by which a party is permitted to intervene in a lawsuit is measured by whether the intervenor has a "justiciable interest" in a pending suit. *In re Union Carbide Corp.*, 273 S.W.3d 152, 154 (Tex.

23

2008) (citing *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990)). As the Supreme Court has phrased it, the "justiciable interest" requirement protects pending cases from having interlopers disrupt the proceedings. *Id*. To constitute a justiciable interest, "[t]he intervenor's interest must be such that if the original action had never been commenced, and he had first brought it as the sole plaintiff, he would have been entitled to recover in his own name to the extent at least of a part of the relief sought" in the original suit. *Id*. at 155.

FSS does not contend that courts, including this one, have found that intervention after a final judgment has been determined is procedurally improper. However, the timeliness of Appellees' intervention does not dispense with the requirement that Appellees must nonetheless have a justiciable interest in the lawsuit they have sought to intervene in. This requirement of demonstrating an interest in the underlying judgment has also been applied by this Court in the turnover proceeding context where this Court has determined that the turnover statute should "...not be applied by Texas courts to non-judgment debtors, and ... being merely a "procedural device," it may not be used to determine the "substantive rights" of judgment debtors—not to mention non-judgment debtors—when there is a dispute over ownership of assets that are the subject of collection efforts." *WC 4th v. Colo. Third St., LLC*, No. 03-22-00781-CV, 2024 Tex. App. LEXIS 5923, at *13-14 (Tex. App.—Austin Aug. 15, 2024, pet. denied). Appellees reliance on *Breazeale v.*

*Casteel*, which was distinguished by the Supreme Court in *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 585 n.38 (Tex. 2018), focuses on the timeliness of the intervention and accepts, without challenge, the prerequisite justiciable interest that must be determined to exist. Appellees' argument misses the mark.

Additionally, the fact that a turnover proceeding is a purely procedural device, which does not adjudicate substantive rights is well settled. *Id*. As the Supreme Court has phrased the standard, "While some opinions view intervention as a proper method for a third party to protect its rights in a turnover proceeding, none go as far as holding that intervention enables a court to adjudicate third party rights in what is otherwise a purely procedural device." *Id*. This Court has interpreted the nature and scope of a trial court's ability to enter a turnover order as follows: A turnover order is a statutory procedural device that permits a trial court to order a judgment debtor to turn over nonexempt property that is in the judgment debtor's possession or control. *In re Raggio-2204 Jesse Owens, LLC*, No. 03-18-00213-CV, 2018 Tex. App. LEXIS 5252, at *4 (Tex. App.—Austin July 12, 2018, no pet.). The Supreme Court's opinion in *Alexander Dubose* makes clear that a party seeking to intervene in a pending matter must assert a cause of action, which is an assertion of a substantive right and not properly adjudicated in a turnover proceeding. Incredibly, Appellees claim in the Response:

25

"Any such issues have been resolved, as is evidenced by the Plaintiffs'
agreement to join in collection efforts. Nor are the Connecticut
Plaintiffs seeking in this proceeding to establish their rights under the
Connecticut Judgment – that has already happened."

Response, p. 28. First, there has never been *any* evidence of an agreement that has been reached by Appellees, either before any state or federal court.  There have been numerous references to such an agreement, but no such agreement has ever been corroborated by any evidence. Yet most alarming is the assertion that any rights under the Connecticut Judgment have been established. The only possible time when any rights under the Connecticut Judgment could have been established is when the trial court granted the Turnover Application. If this Court needed any further demonstration that the trial court's granting of the Turnover Order was a determination of substantive rights, it needs to look no farther than Appellees own admission.

Accordingly, the Connecticut Plaintiffs have sought to intervene in a controversy for which they have failed to establish they have a justiciable interest, and instead they have asked the trial court to determine the substantive rights of non-parties in a turnover proceeding. It was clear error for the trial court to permit such activity against the backdrop of clearly established precedent.

**E.    AN EXAMINATION OF THE TURNOVER APPLICATION DEMONSTRATES IT IS NOT SUPPORTED BY NECESSARY EVIDENCE.**

Finally, the Response argues that contrary to the lack of evidence that supports the Turnover Application, Appellees maintain "[t]he application for the Turnover Order attached affidavits swearing to FSS's ownership of non-exempt property and citing FSS's own discovery responses as support." Response, p. 29. Citing to "FSS's App. C, ¶12," which is the Turnover Application, paragraph 12 does reference non-exempt property, but the Declaration of Alinor C. Sterling does not attest to any non-exempt property and certainly does not attach any such evidence. FSS does not intend to spend significant time responding to this argument as this Court can readily determine for itself by examining the record that no such evidence exists and certainly none was received by the trial court.

## REQUEST FOR RELIEF

Free Speech Systems, LLC respectfully requests that this Court continue to the temporary stay that has already been entered and continue to stay the enforcement of the Turnover Order and all collection and judgment enforcement activities undertaken in connection therewith, until this Court rules on FSS's motion on the merits of the Turnover Order. FSS further requests all other relief to which it may be entitled.

Respectfully Submitted,

/s/ Ben C Broocks
Ben C Broocks
State Bar No. 03058800
William A. Broocks

27

State Bar No. 24107577
**BROOCKS LAW FIRM, PLLC**
248 Addie Roy Rd, Suite B301
Austin, Texas 78746
(512) 201-2002 - Telephone
(512) 201-2034 - Fax
bbroocks@broockslawfirm.com
wbroocks@broockslawfirm.com

Alan B. Daughtry
State Bar No: 00793583
alan@alandaughtrylaw.com
3355 West Alabama, Suite 444
Houston, Texas 77098
Telephone:   (281) 300-5202
Facsimile:    (281) 404-4478

Shelby A. Jordan
State Bar No. 11016700
Antonio Ortiz
State Bar No. 24074839
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 804
Corpus Christi, TX 78401
Telephone: (361) 884-5678
Facsimile: (361) 888-5555
Email: sjordan@jhwclaw.com
aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**ATTORNEYS FOR APPELLANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of September, 2025, a true and correct copy of the foregoing was served upon the following counsel of record in accordance with the Texas Rules of Appellate Procedure.

28

Ryan E. Chapple
State Bar No. 24036354
rchapple@cstrial.com
Benjamin D. Evans
State Bar No. 24081285
bevans@cstrial.com
**CAIN & SKARNULIS, PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile

Mark D. Bankston
State Bar No. 24071066
mark@fbtrial.com
**KASTER LYNCH FARRAR & BALL LLP**
1117 Herkimer
Houston, Texas 77008
713-221-8300
713-221-8301—Facsimile

**ATTORNEYS FOR APPELLEES**

William R. "Trip" Nix
State Bar No. 24092902
tnix@krcl.com
**KANE RUSSELL COLEMAN & LOGAN, PC**
401 Congress Ave., Suite 2100
Austin, Texas 78701
512-487-6650

**ATTORNEY FOR GREGORY S. MILLIGAN**

/s/ Ben C Broocks
Ben C Broocks

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kay Smith on behalf of Ben Broocks
Bar No. 03058800
ksmith@broockslawfirm.com
Envelope ID: 105912861
Filing Code Description: Response
Filing Description: Reply ISO Stay
Status as of 9/22/2025 3:48 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ryan Chapple | 24036354 | rchapple@cstrial.com | 9/22/2025 2:52:46 PM | SENT |
| Mark Bankston | 24071066 | mark@fbtrial.com | 9/22/2025 2:52:46 PM | SENT |
| William Nix | 24092902 | tnix@krcl.com | 9/22/2025 2:52:46 PM | SENT |
| Shelby Jordan | | sjordan@jhwclaw.com | 9/22/2025 2:52:46 PM | SENT |
| Ben  Broocks | | bbroocks@broockslawfirm.com | 9/22/2025 2:52:46 PM | SENT |
| William Broocks | | wbroocks@broockslawfirm.com | 9/22/2025 2:52:46 PM | SENT |
| Antonio Ortiz | | aortiz@jhwclaw.com | 9/22/2025 2:52:46 PM | SENT |
| Chrystal Madden | | cmadden@jhwclaw.com | 9/22/2025 2:52:46 PM | SENT |
| Alan Daughtry | | alan@alandaughtrylaw.com | 9/22/2025 2:52:46 PM | SENT |