**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>**ALEXANDER E. JONES**,<br>Debtor. | Case No. 22-33553 (CML)<br><br>Chapter 7 |

# EXHIBIT 2

ACCEPTED
03-25-00617-cv
104941748
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/27/2025 5:38 PM
JEFFREY D. KYLE
CLERK

No. 03-25-00617-CV

_____

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/27/2025 5:38:53 PM
JEFFREY D. KYLE
Clerk

### IN THE COURT OF APPEALS
### FOR THE THIRD DISTRICT OF TEXAS

_____

FREE SPEECH SYSTEMS, LLC
*Appellant*,

v.

DAVID WHEELER, FRANCINE WHEELER, JACQUELINE BARDEN, MARK BARDEN, NICOLE HOCKLEY, IAN HOCKLEY, JENNIFER HENSEL, DONNA SOTO, CARLEE SOTO PARISI, CARLOS M. SOTO, JILLIAN SOTO-MARINO, WILLIAMS ALDENBERG, WILLIAM SHERLACH, ROBERT PARKER, ERICA ASH, NEIL HESLIN, SCARLETT LEWIS, AND GREGORY S. MILLIGAN
*Appellees*.

_____

On Appeal from the 459th District Court of Travis County, Texas
Trial Cause No. D-1-GN-18-001835

_____

**APPELLANT'S EMERGENCY MOTION FOR IMMEDIATE STAY OF VOID TURNOVER ORDER ISSUED IN VIOLATION OF THE BANKRUPTCY AUTOMATIC STAY**

_____

TO THE HONORABLE THIRD COURT OF APPEALS:

This is yet another case involving Alex Jones and his company, Free Speech

Systems, LLC ("FSS") where attorney Mark Bankston has yet again led the

Honorable Judge Maya Gamble into significant error, this time the error requiring emergency relief which this Motion requests pending the appeal in this matter.[1]

Specifically Judge Gambe has now entered a void turnover order as to FSS assets and compounded this error by appointing a receiver over those assets. (Dec. Broocks, **Appendix A**).  That turnover/receivership order is void, not voidable, for a number of reasons and Defendant has filed a notice of appeal on this order, or in the alternative a motion for writ of mandamus, with respect thereto, although briefing has yet to occur.  Nevertheless, for a number of reasons Defendant asks this Court to stay the effectiveness of that Order until Defendant's appeal on the merits of this matter (or mandamus if appropriate) can be determined.

## I.    SUMMARY OF ARGUMENTS

### A. THE TURNOVER/RECEIVER ORDER IS VOID BECAUSE IT VIOLATES THE AUTOMATIC STAY.

First, the turnover/receiver order is void as it violates the automatic stay of 11 U.S.C. §362(a).  The assets of FSS have been judicially transferred to and vested in the Chapter 7 bankruptcy estate of Alex Jones, where Christopher Murray has been appointed as Trustee, which Judge Gamble's turnover/receiver order acknowledges. As such FSS's assets are thus encompassed within the automatic stay provisions of

---

[1] This application is supported by the attached declaration of Shelby Jordan.  It is also supported by the attached declaration of Ben Broocks to which the referenced Appendix are attached by the indicated numbers.

§362(a) and cannot be made the subject of a turnover order. As this Court itself has confirmed: If "... a party or state court takes action in violation of the bankruptcy stay, such action is void." *S. Cal. Sunbelt Developers, Inc. v. Grammer,* No. 03-19-00192-CV, 2019 Tex. App. LEXIS 11185, at *36 (Tex. App.—Austin 2019, pet. denied) (*citing York v. State*, 373 S.W.3d 32, 37-40 (Tex. 2012) and *Thuesen v. Amerisure Ins*., 487 S.W.3d 291, 297 (Tex. App.—Houston [14th Dist.] 2016, no pet.)). Although apprised of this fact, Judge Gamble proceeded with entry of the turnover/receiver order notwithstanding, commenting: "So, I'm going to sign it. [Bankruptcy] Judge Lopez can scold everyone, including me, all the way from Houston, it's happened before, it can happen again." August 13, 2025, Transcript, p. 46, l: 6 – 9. (Dec. Broocks, **Appendix B**). It is not about getting a "scolding" from a bankruptcy judge. It is about honoring the rule of law and not intentionally disregarding it. Granting a turnover and allowing a receiver to take control of and make decisions under a void turnover order runs the risks of unnecessary but extreme prejudice and confusion. This reason alone mandates the effectiveness of that Order be stayed until this Court can rule on the appeal.

**B. THE TURNOVER/RECEIVER ORDER IS VOID BECAUSE IT WAS ENTERED IN FAVOR OF FIFTEEN STRANGERS TO THIS CASE -- NOT THE NAMED PLAINTIFFS -- AND THESE STRANGERS HAVE NO STANDING.**

Second, the turnover/receiver ordered was not entered in favor of the two Texas plaintiffs who received a judgment in Judge Gamble's court (i.e., Neil Heslin

3

and his former spouse Scarlett Lewis). Rather it was issued in favor of fifteen people who received a different judgment in Connecticut and now have brought their Connecticut judgment directly into a case that has nothing to do with them via intervention and they have done so after Judge Gamble lost plenary power.  They have done this because they want Judge Gamble's judicial assistance in collecting their Connecticut Judgment.  The fifteen Connecticut Plaintiffs, however, were not parties to the Texas case and thus are strangers to that action.  Moreover, these strangers were actually at one time opposed to the Texas plaintiffs (Heslin/Lewis) but now -- without evidence -- claim in their joint motion to enter the turnover order [Dec. Broocks**, Appendix C, p. 3**] that resulted in the Connecticut Plaintiffs' receipt of the Order, that the groups have worked out some kind of agreement among themselves:

> 4.      The Judgment Creditors have agreed to divide the proceeds derived from the Receiver's collection efforts pursuant to the terms of a binding settlement agreement (the Judgment Creditors' Settlement Agreement).

This unsubstantiated agreement seems to include their selection of Judge Gamble as the one they want to assist them in their now-joint collection efforts.  But these fifteen strangers with their Connecticut Judgment have no justiciable interest in the Texas Judgment of Heslin/Lewis and therefore lack standing to request a turnover/receiver in a Texas case in which they were not involved to collect their

4

Connecticut judgment and which smacks of transparent forum shopping. The turnover/receiver order was thus issued to strangers who lacking standing, which makes that order entered in their favor void.

**C. THE TURNOVER/RECEIVER ORDER IS VOID BECAUSE THE TWO TEXAS JUDGMENT PLAINTIFFS AND FIFTEEN CONNECTICUT JUDGMENT PLAINTIFFS CANNOT USE A PROCEDURAL TURNOVER ORDER AS A DEVICE TO DEAL WITH SUBSTANTIVE ISSUES AMONG THEMSELVES VERSUS PURELY PROCEDURAL ONES**

A third and related reason is the Texas Supreme Court has made crystal clear that a turnover proceeding is purely procedural. *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577 (Tex. 2018) Yet here with the improper intervention of the fifteen strangers to the Texas Judgment of Heslin/Lewis, they have sought to interject Judge Gamble into the role of the arbiter of the collection agreement they claim to have independently reached, which role Judge Gamble has willingly accepted given her demonstrated antipathy towards Defendants.[2] On information and belief, the two Texas Plaintiffs and the

---

[2]  Judge Gamble's animosity towards Jones is apparent.  For example, all at the urging of attorney Mark Bankston, Judge Gamble  (i) entered a liability default judgment against media defendants Jones and FSS in violation of a host of United States Supreme Court cases that required the two Texas Plaintiffs to prove falsity of specific statements made by Jones and FSS, and also prove Jones/FSS's malice, with the Supreme Court mandating that plaintiffs prove malice by clear and convincing evidence; (ii) granted the two Texas Plaintiffs a post-trial pleading amendment to assert a punitive-damages cap busting claim asserting that the two Texas Plaintiffs were disabled; (iii) ruled that these two plaintiffs were disabled -- a determination to made by the Jury, and (iv) sanctioned Defendants and their attorneys at virtually every possible opportunity.

At the turnover hearing at which Defendants' counsel was not permitted to speak until Judge Gamble had already approved the turnover and sent it for typing, she said of Bankston. *See* App.  B, pp.5, 20.

Fifteen Connecticut Plaintiffs are not the only parties to this unsubstantiated "agreement." Rather, the turnover order itself recites that actions the receiver may take are "subject to the approval of the bankruptcy trustee" so that person is somehow a party although not named or joined. Additionally, on information and belief, at least three other people who are plaintiffs in cases in Texas that have yet to try, are believed parties to the agreement the Texas and Connecticut Plaintiffs reference but do not substantiate.[3] The turnover/receiver order is not a procedural turnover but a union of formerly adverse parties who now have selected Judge Gamble instead of the bankruptcy court, as the court they want to administer their collection agreement and adjudicate their internal disputes. But that kind of forum shopping is not permitted as it wrongly turns a "purely procedural" device into a substantive matter, forbidden by the Texas Supreme Court.

The balance of this Motion elaborates on these points and raises other issues, all of which justify this Court entering a Stay of the effectiveness of the turnover/receiver order until this Court hears the appeal of this matter.

## II.   THE TURNOVER/RECEIVER ORDER IS VOID AS IT VIOLATES THE AUTOMATIC STAY

The order at issue here (sometimes, "Order") is formally entitled "*Order Granting Application for Post-Judgment Turnover and Appointment of Receiver as*

---

[3] Marcel Fontaine, Leonard Pozner, and Veronica De La Rosa.

*to Judgment Debtor Free Speech Systems, LLC."* A copy is attached as **Appendix A**. It was signed by Judge Gamble on August 13, 2025. The Order effects a turnover of all assets of FSS to a receiver, Greg Milligan, who was appointed by Judge Gamble.

The Order was originally sought by both the Texas Plaintiffs and the Connecticut Plaintiffs against both Alex Jones and his company FSS. [Dec. Broocks, Appendix C]. Jones is currently in bankruptcy court and matters related to turnover as to Jones were removed to the Bankruptcy Court where his bankruptcy case is currently pending. [Dec. Broocks, Appendix D]. Additionally, collection actions asserted against FSS have been stayed given the deposit of cash in lieu of a bond, which precludes collection of any portion of the Order on any assets of FSS. See TEX. R. APP. P. 24.1(f). [Dec. Broocks, Appendix E].

Given the removal to the bankruptcy court of claims pertaining to Jones and the deposit of cash in lieu of a bond, at the turnover hearing on August 13, 2025, after allowing Bankston to make a speech accusing FSS and its counsel of misleading the court with respect to the very matters herein addressed, Judge Gamble allowed the intervening Connecticut plaintiffs to press on for turnover and appointment of a receiver with respect to their Connecticut judgment. Allowing the intervening Connecticut Plaintiffs to proceed and then granting them turnover relief, was a willful violation of the automatic stay provisions of 11 U.S.C.A. §362(a).

The applicability of §362(a) to the Order, which addresses assets of FSS, turns on two orders issued by the United States Bankruptcy Court for the Southern District of Texas, both of which are referenced Judge Gamble's Order itself, namely an order entered by the bankruptcy court on June 21, 2024 (the "*June Order*") and another order entered on September 25, 2024 that supplements the June Order the "*September Order*").[4]  Here is the portion of Judge Gamble's Order referencing both the June and September Orders entered by the bankruptcy court that specifically state that FSS assets have been transferred to the Bankruptcy Estate of Jones and are thus protected by §362(a):

---

[4] At the start of the August 13, 2025 hearing Judge Gamble allowed Mark Bankson to make an impassioned and largely false claim that the September Order had been declared void by the bankruptcy judge who entered it in the first place and refused to let FSS counsel address this vastly false statement before she entered the Order.  [Appendix B, pp.5 - 17]. When FSS's counsel was finally allowed to speak after Judge Gamble had granted the Order it was first pointed out that this while Bankston claimed the September Order was void, the very form of the order tendered asking her to sign recited the September Order and its effectiveness and that recitation remained even in the revised order the Connecticut Plaintiffs asked be entered.  [Appendix B, pp. 37 - 39].  Judge Gamble did not care.

> The Court also FINDS that Judgment Debtor Free Speech Systems, LLC filed for bankruptcy under chapter 11 of the Bankruptcy Code on July 29, 2022 (the FSS Petition Date) in the Bankruptcy Court as case no. 22-60043 (the FSS Bankruptcy Case). Following a hearing on June 14, 2024, the Bankruptcy Court issued two orders in the FFS Bankruptcy Case dismissing the FFS Bankruptcy Case and vesting authority in the Trustee to take control of Judgment Debtor Free Speech Systems, LLC, including its assets and bank accounts. See Dkt. 956 (June 21, 2024) and Dkt. 1021 (September 25, 2024), No. 22-60043 (Bankr. S.D. Tex.). Accordingly, the Application only seeks relief relating to the following (cumulatively, the Turnover Property):
>
> (i) as to Judgment Debtor Free Speech Systems, LLC, all its assets (subject only to approval of the Trustee).

Appendix A, p. 3. Notably, referring to the June and September Orders, Judge Gamble's Order states that they "...vested authority in the [bankruptcy] Trustee to take control of ...[FSS], including its assets and bank accounts." And further, orders turnover "subject only to the approval of the [Bankruptcy] Trustee," which clearly shows knowledge of the continuing viability of the September Order.[5]

That recitation is sufficient to demonstrate that FSS assets sought to be turned over were then and are now in the control of the Trustee of the Bankruptcy Estate of Alex Jones and protected by §362(a). But the September Order actually goes further and not just *gives* the FSS assets but vests the assets themselves in bankruptcy estate of Alex Jones – i.e. a transfer. Here is what the September Order actually says:

_____

[5] Limiting the turnover "subject only to the approval of the [bankruptcy] Trustee" is meaningless; it is the Bankruptcy Court that must approve.

9

> 1.    Effective as of the entry of the Order Dismissing Case [Docket No. 956] (the "Dismissal Order"), pursuant to Section 349(b), all property of the estate of Debtor Free Speech Systems, LLC ("FSS") shall be deemed to have vested in the bankruptcy estate of Alexander E. Jones, Case No. 22-33553, as property of that estate pursuant to Section 541 and shall be under the control of the trustee of such estate ("Chapter 7 Trustee").

Dec. Broocks, Appendix F.

Indeed, Heslin/Lewis actually appealed the validity of the September Order to the United States District Court on October 11, 2024.  *See* Dec. Broocks, Appendix G, Dkt. 1.  And on December 18, 2024, filed a notice with the District Court stating that the issue in that appeal was " Did the Bankruptcy Court err when ... it entered an order [Docket No. 1021...that retroactively vested all property of former debtor Free Speech Systems, LLC into the bankruptcy estate of Alex Jones." *See* Dec. Broocks, Appendix H, Dkt. 14-1.  The Bankruptcy Trustee –who has not been made a party to this turnover/receiver order -- was designated as the appellee. *See* Dec. Broocks, Appendix I, Dkt. 14-2.

On November 11, 2024 the fifteen Connecticut parties who convinced Judge Gamble to enter the void turnover order actually intervened in the appeal acknowledging that at the hearing on September 24, 2024 that produced the September Order " the Bankruptcy Court stated that it would [enter] a supplemental order holding that control of all FSS assets vests with the Jones Chapter 7 Trustee—

10

which the Bankruptcy Court said was the entire basis on which it had dismissed the FSS bankruptcy..." and went on to say that the Supplemental Order "clarified that... all property of FSS was deemed to have vested in the bankruptcy estate of its 100% equity owner, Alex Jones, as property of that estate under the control of the Chapter 7 Trustee." Dec. Broocks, Appendix J, pp. 7-8.

On May 6, 2025, the two Texas plaintiffs here who had appealed the September Order and the fifteen Connecticut Plaintiffs and the Bankruptcy Trustee who had adamantly supported the September Order, voluntarily dismissed the appeal. Dec. Broocks, Appendix K, Dkt. 22. Thus, at the very latest by June 5, 2025 –30 days after dismissal of the appeal – the September Order became a final unappealable judgment. It cannot be challenged.

Based on the arguments Texas and Connecticut made at the August 13, 2025 hearing and assuming they will be re-raised here, particularly those of Mark Bankston, it is expected the false argument will be made to this Court that in a hearing on February 5, 2025, the Bankruptcy Judge declared the Order void. At the very best, this is a false "half-truth."

First, the fact that the September Order has not been voided is established because the very order the Texas and Connecticut Plaintiffs asked Judge Gamble to sign [Appendix C, proposed order p. 3] -- and the one she did sign [Appendix A] -- specifically recites the September Order as having continued viability. The relevant

11

portion of her Order is quoted verbatim *supra*.  Any question of the continued viability of the September Order should end there.  But there is more.

By way of brief background, after the Bankruptcy Trustee's repeated disobedience of the Bankruptcy Court's order to sell FSS assets, an exasperated Bankruptcy Court did state in February 2025 that he was rescinding the September Order. While the Bankruptcy Court's exasperation with the Texas and Connecticut parties was well justified, after it was pointed out to the Bankruptcy Court that a perfected appeal removed his jurisdiction to alter, expand or vacate an order while on appeal,[6] the Bankruptcy Court quickly corrected course and acknowledged that based on the pending appeal by the Texas Plaintiffs, it lacked jurisdiction to void the Supplemental Order, the Bankruptcy Court stating:

> THE COURT…I should back up and mention that the supplemental order was appealed by the Texas families. I think that matter is still pending.
>
> MR. JORDAN: It is, Judge.
>
> THE COURT: I lose jurisdiction over that immediately.

Dec. Broocks, Appendix L, p: 8, l: 15 – 19.  And this lack of authority was again repeated several times by the Bankruptcy Court at a June 5, 2025 hearing where the Bankruptcy Court stated:

---

[6] *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) ("In general, filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal."); *Sherman v. SEC (In re Sherman),* 491 F.3d 948, 967 (9th Cir. 2007); *Robertson v. Ranger Ins. Co.*, 689 S.W.2d (Tex. 1985).

THE COURT "... That order was currently pending on appeal at the time, so I couldn't revoke one way or the other, right? Once bankruptcy, once an appeal is filed, the Court loses jurisdiction over that."

\*\*\*\*\*

"... so I haven't revoked anything. I didn't have authority to do it anyway..."

Dec. Broocks, Appendix M, p: 40, l: 5 – 11 & 23-24.

As a last point on this, while it is a certainty that all FSS assets are part of the Jones Bankruptcy estate and thus protected by the automatic stay, the law is crystal clear that certainty of ownership is not required; the automatic stay applies if a bankruptcy estate has even an arguable interest.  In *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 300 (5th Cir. 2005) the Fifth Circuit clearly so held, stating:

> "Here, we face the question whether the creditor violates the stay if, without permission of the bankruptcy court, he forecloses on an asset to which the debtor has only an arguable claim of right (hereafter, 'arguable property'). We answer in the affirmative, reverse the district court, affirm the judgment of the bankruptcy court, and remand to that court for further proceedings."

And this holding has been re-affirmed.  *See Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 251 (5th Cir. 2006) *(citing Brown v. Chesnut* ("...this Court has recognized the automatic stay's broad application and noted that such breadth reflects a congressional intent that courts will presume protection of property when faced with uncertainty or ambiguity.")

## III.    THE TURNOVER IS VOID AS IT WAS ISSUED FOR 15 STRANGERS TO THIS LAWSUIT

13

A turnover order may only be issued against a judgment debtor **in that case** and in favor of a judgment creditor **in that case**.  Clearly, a turnover order cannot be used to levy on property in the possession of strangers to that judgment. *Parks v. Parker*, 957 S.W.2d 666, 668 (Tex. App.—Austin 1997, no pet.).  Similarly, a judgment creditor from a different matter is no less a stranger to the underlying judgment in a different case and thus has no standing to utilize the turnover machinery for his benefit in collecting a second, unrelated judgment.  And "agreement" of the actual creditor cannot overcome these barriers set by the constitution, statutes, and/or case law, even if satisfactory evidence of such "agreement" were adduced which it has not been here.

## A. THE CONNECTICUT PARTIES ARE STRANGERS TO THE TEXAS CASE WITH NO STANDING

This lawsuit – the Texas lawsuit – was initiated by two plaintiffs, Neil Heslin and his former spouse, Scarlett Lewis. After entry of a liability-default judgment,[7] in the later damages-only trial, Heslin was awarded $110,000.00 for his defamation compensatory damages based on claims he was defamed (a) by a reporter on one of Jones's shows (Owen Shroyer) who, in light of statements made by the official

---

[7] The liability default judgment was requested and entered in spite of the fact it violated a host of US Supreme Court mandates that plaintiffs - Heslin and Lewis -- must plead and prove specific statements made were false, in the context in which they were made and that they were published when the speaker knew they were false. *See e.g., Phila. Newspapers v. Hepps,* 475 U.S. 767, 775-76 (1986).  And the plaintiffs were required to prove knowledge of falsity by clear and convincing evidence. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342 (1974).

14

coroner, on June 26, 2017 disputed the accuracy of Heslin's claims to have held his son's body and personally observed a bullet hole in his son's head and[8] (b) by Jones who allegedly echoed Shroyer's claims even though Jones actually said the opposite, Jones stating:

> "...NBC needs to clarify because the coroner said none of the parents were allowed to touch the kids or see the kids and maybe they mean[t] at the school, **I'm sure later maybe the parents saw their children**. The point is, is that because the media lies so much, you can't blame the public asking question and you can't ban free speech of people that are asking questions…" (emphasis added) [Dec. Broocks, Appendix O]

Heslin was also awarded $4,200,000 in defamation punitive damages. Scarlett Lewis did not sue for defamation.

Heslin and Lewis both asserted claims for intentional infliction of emotional distress ("IIED"), referencing in their petition nine broadcasts alleged to have indiscriminately inflicted such distress, two of which were the June and July broadcasts that were the basis of Heslin's defamation claim [Dec. Broocks, Appendix N]:[9]

---

[8] Heslin's own petition contained a URL, still live, to the coroners statements as reported in Connecticut media, where the coroner's statements, as reported were corroborated.  Dec. Broocks, Appendix N.

[9] In listing the broadcasts that were the basis of their IIED claims, Heslin and Lewis included two Heslin had claimed to be defamatory, thus violating this Court's precedent that an IIED claim based on the same conduct as a defamation claim is not permitted. *Warner Bros. Entm't, Inc. v. Jones,* 538 S.W.3d 781, 814–15 (Tex. App.—Austin 2017), aff'd, 611 S.W.3d 1 (Tex. 2020).



**CAUSES OF ACTION**

I.   **Defamation and Defamation *Per Se* by All Defendants Against Neil Heslin.**

\*\*\*\*\*

88.   The June 26, 2017 and July 20, 2017 broadcasts by Defendants were false, both in their particular facts and in the main point, essence, or gist in the context in which they were made.

\*\*\*\*\*

II.   **Intentional Infliction of Emotional Distress by Alex Jones, InfoWars, LLC, and Free Speech Systems, LLC Against Neil Heslin and Scarlett Lewis.**

99.   All previous allegations are incorporated by reference.

100.   Defendants knew or should have known that their videos on November 18, 2016, March 8, 2017, April 22, 2017, June 13, 2017, June 19, 2017, June 26, 2017, July 20, 2017, October 26, 2017, and April 20, 2018 would cause Plaintiffs severe

For these IIED claims, Heslin and Lewis were each awarded $2,000,000 in compensatory damages and $20,500,000 in punitive damages for a total final judgment award of $49,310,000. Dec. Broocks, **Appendix P**.  Judge Gamble entered her final judgment for the Texas Plaintiffs in the Texas Case on January 12, 2023[10] and lost plenary power on or around March 28, 2023.

In an unrelated suit in Connecticut, Jones and his FSS, were sued by the fifteen Connecticut Plaintiffs, one of whom was an FBI agent and others were sisters, parents or spouses of some of the Sandy Hook victims.  As in Texas, the Connecticut trial court entered a default judgment as to liability, judicially decreeing Jones to have knowingly made false and defamatory statements with the Connecticut

---

[10] After post-trial motions Jones/FSS appealed to this Court where oral argument occurred on May 28, 2025.

Plaintiffs being judicially spared of having to prove anything but damages.  In the ensuing damages only trial, the fifteen Connecticut Plaintiffs were awarded roughly $1,400,000,000.00 in compensatory and punitive damages, which was later reduced by $150,000,000.00.[11]

### B. JUDGE GAMBLE LOST PLENARY POWER TO DO ANYTHING BUT ENFORCE HER TEXAS JUDGMENT

A turnover order may only be issued in favor of a judgment creditor in that case against a judgment debtor in that case.  A turnover order cannot be used to levy on property in the possession of strangers to that judgment. *Parks v. Parker*, 957 S.W.2d 666, 668 (Tex. App.—Austin 1997, no pet.).  A judgment creditor from a different matter is no less a stranger to the underlying judgment and thus has no standing to utilize the turnover machinery associated with collecting one judgment for his benefit in collecting a second judgment.  Indeed, this Court has held that the Turnover Statute should

> "...not be applied by Texas courts to non-judgment debtors, and ... being merely a "procedural device," it may not be used to determine the "substantive rights" of judgment debtors—not to mention non-judgment debtors—when

---

[11] The Connecticut Court of Appeals refused to consider arguments involving the US Constitution, stating those issues had not been adequately briefed by Jones's separate counsel there, not the undersigned. *Lafferty v. Jones*, 327 A.3d 941, 961-62, n. 26 (Conn. App. 2024).  And the Connecticut Supreme Court refused to review the case even though they could have under-established Connecticut precedent allowing the Connecticut Supreme Court to review cases involving unbriefed Constitutional arguments. *Gleason v. Smolinski*, 319 Conn. 394, 396, 125 A.3d 920, 927 (2015); *State v. Golding*, 213 Conn. 233, 239-40, 567 A.2d 823 (1989); *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).  U.S. Supreme Court Justice Sotomayor has granted the request of Jones and FSS to extend their time for filing a petition for cert review by the US Supreme Court.

there is a dispute over ownership of assets that are the subject of collection efforts."

*WC 4th v. Colo. Third St., LLC*, No. 03-22-00781-CV, 2024 Tex. App. LEXIS 5923, at *13-14 (Tex. App.—Austin Aug. 15, 2024, pet. denied).  Even more so it cannot be used by nonjudgment creditors who had nothing to do with the underlying judgment.

The fifteen Connecticut strangers to the Texas action intervened in Heslin/Lewis's Texas action[12] asserting they have reached an agreement to share proceeds of their respective judgments.  Dec. Broocks, Appendix C.  While it is believed they have done so to by-pass the normal Central Docket rules of Travis County and improperly insert themselves before Judge Gamble, the "agreement" of the actual creditor in the original case cannot overcome these barriers set by the constitution, statutes, and/or case law, even if satisfactory evidence of such "agreement" were adduced -- which it has not been here -- as jurisdiction cannot be conferred by agreement.[13]

After plenary power expired, the only power Judge Gamble retained was the power to enforce her orders and judgments for Heslin and Lewis.  And even then,

---

[12] A motion to strike that intervention has been filed but not yet heard.

[13] As further evidence of this, Heslin/Lewis along with the fifteen parties from Connecticut filed their motion for turnover and the parties were advised that they were assigned to Judge Lyttle and it so appeared on the Central Docket postings.  Moments before the hearing a paralegal somehow found out that the hearing had been switched to Judge Gamble.  Defendants have no idea how that transfer from one court to Judge Gamble occurred, but intend to find out. Appendix Q.

her ability to do so cannot be inconsistent with the original judgment for

Heslin/Lewis and must not constitute a material change in substantially-adjudicated

portions of the judgment. *Donalson v. City of Canton*, 2025 Tex. App. LEXIS 6101,

at *8 (Tex. App.—Tyler Aug. 13, 2025, no pet. h.).    As the Court in *Donalson*

explained:

> "Upon the expiration of the trial court's plenary power, the trial court permanently loses jurisdiction substantially to modify the final judgment, and any judicial action taken after a trial court's plenary power has expired is void."

*Id*. at 9 (*citing Cook v. Stallcup*, 170 S.W.3d 916, 920 (Tex. App.—Dallas 2005, no

pet.).  That has been improperly done here.

Although the recently-rendered *Donalson* case (decided in August 2025), is

technically an improper intervention case (discussed in the next section, *infra*) its

teachings are relevant here.  There, the City of Canton (City) sued Donalson over

violations of the Health and Safety Code. Donalson claimed he had no ownership in

the property and was dropped from the suit and new defendants were inserted who

settled with the City, that judgment becoming final on July 5, 2020.  On December

31, 2024, Donalson intervened in the case claiming he had later purchased some

interest from a foreclosing lender.  The City argued Donalson lacked standing -- and

thus the trial court lacked jurisdiction -- because he had no legal interest in the

property. Of initial relevance, the Tyler Court of Appeals held that an intervening

party -- here the 15 Connecticut strangers -- have "... the burden to demonstrate a

justiciable interest in the suit." *Donalson* at *5.  The Tyler court noted that when the trial court lost plenary power it, it "permanently lost jurisdiction" and the trial court lacked jurisdiction to "take any action inconsistent with its final judgment..." *Donalson* at *9.  Hence any action other than strictly enforcing its judgment -- such as allowing an intervention as here --   is void:  "...any judicial action taken after a trial court's plenary power has expired is void."  *Donalson* at *8.

The Tyler Court went further, however, and stated that to the extent Donalson was trying to enforce the existing judgment, he still had to demonstrate by evidence that he had taken an actual assignment of an interest of an interest in the case.  *Id* at 9 ("To the extent Donalson's plea in intervention sought enforcement of the judgment, Donalson still was required to plead that he had a justiciable interest in the cause.").  Here the 15 Connecticut parties claim to have reached some agreement with the Texas plaintiffs [Dec. Broocks, Appendix C] but the record is devoid of any evidence other than a conclusory, self-serving statement.[14]

## IV.    THE CONNECTICUT PLAINTIFFS HAVE NO STANDING TO BRING THEIR CONNECTICUT JUDGMENT TO JUDGE GAMBLE

As courts have held on a number of occasions, a turnover order is a procedural device that empowers a trial court to assist a judgment creditor in reaching a

---

[14] Even were the claims of the fifteen Connecticut plaintiffs being asserted solely as assignees of interests from the Texas Plaintiffs, issuance of a turnover order on that basis would be void as the Texas judgment has been the deposit of cash in lieu of a bond, which precludes collection of any portion of the Order on any assets of FSS.  See TEX. R. APP. P. 24.1(f). [Dec. Broocks, Appendix E].

judgment debtor's property that under traditional remedies was beyond a creditor's reach. *Kennedy v. Hudnall*, 249 S.W.3d 520, 524 (Tex. App.—Texarkana 2008, no pet.). As the Supreme Court has instructed that turnover proceedings are "....limited to their purely procedural nature, and thus, bars use of the turnover statute to determined parties' and non-judgment debtors' substantive rights." *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 583 (Tex. 2018) *Alexander*, 540 S.W.3d 577 at 583 (Tex. 2018). The Supreme Court went on to find that "[i]f trial courts are in fact precluded from ruling upon the substantive rights of parties to the judgment sought to be enforced, it defies logic to hold the same court is empowered to determine the rights of complete strangers to the underlying judgment it is enforcing in that very proceeding. *Id*. In distinguishing substantive versus non-substantive claims, and also this Court's decision in *Breazeale v. Casteel*, 4 S.W.3d 434 (Tex. App.—Austin 1999, pet. denied), the Supreme Court stated:

> "Although some opinions view intervention as a proper method for a third party to protect its rights in a turnover proceeding, none go as far as holding that intervention enables a court to adjudicate third-party rights in what is otherwise a purely procedural device…And the turnover statute has no provision conferring authority on trial courts to decide the substantive rights of the parties properly before it in a turnover proceeding, let alone the rights of strangers to the underlying judgment."

*Id*. at 585. In the Texas Case here, the Connecticut Plaintiffs had no justiciable interest in the Texas Judgment. They are clearly strangers to the Texas Judgment by

any definition, yet they have been permitted free rein to plunder the assets of FSS despite clear prohibitions against doing so.

V.   **AS FSS ASSETS HAVE BEEN CONVEYED TO THE BANKRUPTCY TRUSTEE, FSS HAS NO ASSETS; THIS FAILURE TO LIST ASSETS IS FATAL TO THE ORDER AS OWNERSHIP OF SOME NAMED ASSETS IS REQUIRED**.

Under the turnover statute, a judgment creditor may seek turnover relief against a judgment debtor if the judgment debtor owns property that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities. TEX. CIV. PRAC. & REM. CODE § 31.002(a). While the trial court is not required to identify the specific property subject to turnover in the order, there must be some evidence that the judgment debtor has nonexempt property. *See Gillet v. ZUPT, LLC*, 523 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2017, no pet.).  The record that will be presented to this Court will demonstrate that no evidence was admitted by the trial court in entering the Turnover Application, and none showing FSS actually owned any assets.

Section 31.002(a) specifies that a judgment creditor may receive aid from a court under its provisions "if" the judgment debtor owns property that is nonexempt and that could not readily be attached or levied on by ordinary legal process. TEX. CIV. PRAC. & REM. CODE § 31.002(a). Conversely then, a judgment creditor may not receive aid from the court under the provisions of section 31.002 if the judgment debtor does not own property that is nonexempt and that could not readily be

22

attached or levied on by ordinary legal process. *Id*. The relief allowed by section 31.002(b), therefore, may be granted only when the conditions in section 31.002(a) exist.

The language of subsection (h), which permits a trial court to enter or to enforce an order requiring turnover without identifying the specific property subject to turnover in the order, does not eliminate the fundamental, preliminary requirement of subsection (a). *Tanner v. McCarthy*, 274 S.W.3d 311, 322 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Section 31.002 does not specify, or restrict, the manner in which evidence may be received in order for a trial court to determine whether the conditions of section 31.002(a) exist, nor does it require that such evidence be in any particular form, that it be at any particular level of specificity, or that it reach any particular quantum before the court may grant aid under section 31.002. However, a trial court must nonetheless determine that the request for aid pending before the court falls within the scope of section 31.002 before it enters an order granting relief under that section. *Tanner*, 274 S.W.3d at 322. *See also Gillet*, 523 S.W.3d at 754.

In this instance, not only was no evidence admitted whereby this Court could review the sufficiency of the record in the Turnover Application but the Turnover Application itself does not attach any evidence that the judgment debtor has non-exempt property, as all has been conveyed to the Estate of Alex Jones.  This is

demonstrative of itself that the trial court abused its discretion in entering the turnover application.

## **REQUEST FOR RELIEF**

Free Speech Systems, LLC respectfully requests that this Court enter a Temporary Order, staying the enforcement of the Turnover Order and all collection and judgment enforcement activities undertaken in connection therewith, until this Court rules on FSS's motion on the merits of the Turnover Order.  FSS further requests all other relief to which it may be entitled.

Respectfully Submitted,

*/s/ Ben C Broocks*
Ben C Broocks
State Bar No. 03058800
William A. Broocks
State Bar No. 24107577
**BROOCKS LAW FIRM, PLLC**
248 Addie Roy Rd, Suite B301
Austin, Texas 78746
(512) 201-2002 - Telephone
(512) 201-2034 - Fax
bbroocks@broockslawfirm.com
wbroocks@broockslawfirm.com

Alan B. Daughtry
State Bar No: 00793583
alan@alandaughtrylaw.com
3355 West Alabama, Suite 444
Houston, Texas 77098
Telephone:   (281) 300-5202
Facsimile:   (281) 404-4478

Shelby A. Jordan
State Bar No. 11016700
Antonio Ortiz
State Bar No. 24074839
**JORDAN & ORTIZ, P.C.**
500 North Shoreline Blvd., Suite 804
Corpus Christi, TX 78401
Telephone: (361) 884-5678
Facsimile: (361) 888-5555
Email: sjordan@jhwclaw.com
aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com

**ATTORNEYS FOR APPELLANT**

25

## CERTIFICATION OF APPENDIX MATERIALS

I certify, as counsel for Appellant, that I have reviewed the factual statements contained in this Emergency Motion for Immediate Stay of Void Turnover Order Issued In Violation of the Bankruptcy Automatic Stay and have concluded that every factual statement in the Motion is true and correct and is supported by competent evidence included in the Appendix or Record. I further certify that the materials attached hereto as appendices are true and correct copies of what they purport to be, and that a Clerk's Record containing these materials has been requested in this matter.

*/s/ Ben C Broocks*
Ben C Broocks

## CERTIFICATE OF CONFERENCE AND COMPLIANCE WITH EXPEDITED NOTICE REQUIREMENTS

I certify that, prior to filing this motion, I contacted counsel for Appellees, to inquire whether Appellees are opposed to the relief sought in this motion. Appellees' counsel did not indicate whether they were opposed to the relief sought; accordingly, the Court should consider Appellees opposed. I further certify that, on the August 27, 2025, I notified Appellees' counsel that a motion for temporary relief was being filed.

*/s/ Ben C Broocks*
Ben C Broocks

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August, 2025, a true and correct copy of the foregoing was served upon the following counsel of record in accordance with the Texas Rules of Appellate Procedure.

Ryan E. Chapple
State Bar No. 24036354
rchapple@cstrial.com
Benjamin D. Evans
State Bar No. 24081285
bevans@cstrial.com
**CAIN & SKARNULIS, PLLC**

26

303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile

Mark D. Bankston
State Bar No. 24071066
mark@fbtrial.com
**KASTER LYNCH FARRAR & BALL LLP**
1117 Herkimer
Houston, Texas 77008
713-221-8300
713-221-8301—Facsimile

**ATTORNEYS FOR APPELLEES**

William R. "Trip" Nix
State Bar No. 24092902
tnix@krcl.com
**KANE RUSSELL COLEMAN & LOGAN, PC**
401 Congress Ave., Suite 2100
Austin, Texas 78701
512-487-6650

**ATTORNEY FOR GREGORY S. MILLIGAN**

*/s/ Ben C Broocks*
Ben C Broocks