**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

In re:

**ALEXANDER E. JONES**,
Debtor.

Case No. 22-33553 (CML)

Chapter 7

# EXHIBIT 5

                    UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION

ALEXANDER E. JONES AND          )  CASE NO: 22-33553-cml
THE OFFICIAL COMMITTEE OF       )
UNSECURED CREDITORS,            )  Houston, Texas
                                )
         Debtors.               )  Wednesday, February 5, 2025
                                )
                                )  9:00 AM to 9:26 AM
------------------------------)


                              HEARING

          BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Alexander E. Jones:  SHELBY JORDAN
                         ANTONIO ORTIZ
                         Jordan & Ortiz, PC
                         500 N. Shoreline Blvd.
                         Corpus Christi, TX 78401

                         BEN BROOCKS
                         WILLIAM BROOCKS
                         Broocks Law Firm PLLC
                         6207 Bee Cave Road, Suite 120
                         Austin, TX 78746

For Chapter 7 Trustee:   JOSHUA WOLFSHOHL
                         KENESHA STARLING
                         JORDAN STEVENS
                         Porter Hedges LLP
                         1000 Main Street
                         Houston, TX 77002

                         CHRISTOPHER R. MURRAY
                         ERIN JONES
                         Jones Murray LLP
                         602 Sawyer Street
                         Houston, TX 77007

For Connecticut Families:     KYLE KIMPLER
                              PAUL PATERSON
                              Paul Weiss Rifkind Wharton &
                              Garrison LLP
                              1285 Avenue of the Americas
                              New York, NY 10019

                              RYAN CHAPPLE
                              Cain & Skarnulis PLLC
                              303 Colorado Street
                              Austin, TX 78701

For Texas Plaintiffs:         AVI MOSHENBERG
                              Lawson & Moshenberg PLLC
                              801 Travis Street
                              Houston, TX 77002

                              JARROD MARTIN
                              Chamberlain Hrdlicka White Williams
                              & Aughtry, P.C.
                              1200 Smith Street, Suite 1400
                              Houston, TX 77002

                              JENNIFER HARDY
                              Willkie Farr Gallagher LLP
                              600 Travis Street, Suite 2310
                              Houston, TX 77002

Court Reporter:               UNKNOWN

Courtroom Deputy:             UNKNOWN

Transcribed by:               Veritext Legal Solutions
                              330 Old Country Road, Suite 300
                              Mineola, NY 11501
                              Tel: 800-727-6396


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

HOUSTON, TEXAS; WEDNESDAY, FEBRUARY 5, 2025; 9:00 AM

(Call to Order)

THE COURT:  -- 9:00 a.m. case, Alex Jones.  Why don't I take appearances in the courtroom and then we'll get started.

MR. WOLFSHOHL:  Good morning, Your Honor.  Joshua Wolfshohl, Kenesha Starling, and Jordan Stevens from Porter Hedges, for the Trustee.  And Mr. Murray is here as well --

THE COURT:  Okay.  Good morning.

MR. WOLFSHOHL:  -- as well as co-counsel --

MS. JONES:  (indiscernible)

MR. WOLFSHOHL:  -- Erin Jones.

THE COURT:  Good morning.

MR. JORDAN:  Your Honor, Shelby Jordan and Antonio Ortiz, co-counsel, along with Mr. Ben Broocks and Mr. William Broocks, here in the courtroom today.

THE COURT:  Good morning.

MR. JORDAN:  And that's -- I'm sorry -- co-counsel for Mr. Jones.

THE COURT:  Yes, thank you.

MR. KIMPLER:  Good morning, Your Honor.  Kyle Kimpler, from Paul Weiss, on behalf of the Connecticut families.  I'm joined by my partner, Mr. Paterson, and on the screen, Mr. Ryan Chapple.

THE COURT:  Good morning.  Oh, I should turn my

camera on.  I apologize.

MR. MOSHENBERG:  Good morning, Judge.  Avi Moshenberg, here on behalf of the Texas Plaintiffs.  Also with me is Jarrod Martin and Jennifer Hardy, Your Honor.

THE COURT:  Good morning.  Anyone else wish to make an appearance?  Okay.  Here on the 9019 settlement, and I know that there are some related motions that we should talk about.

MR. JORDAN:  Your Honor, if I might?

THE COURT:  Sure.

MR. JORDAN:  Shelby Jordan.  We have made -- we being the Alex Jones team of lawyers, two firms and lawyers that have been very, very busy -- we've made every effort we possibly could to get a grasp on what has turned out to be a very, very complex matter that could, if we are not careful, be a case dispositive motion.  We could walk out today and have nothing to show for the values of the appeal or for other matters that --

THE COURT:  Let me -- let me stop.  I've studied this 9019 over the past several days very carefully.  I know we had a status conference and I knew that there were some discovery-related issues.

The Free Speech case originally started as a Subchapter IV -- was originally a lawyer and CRO.  I find professionals -- I thought there was a conflict between

those professionals and the Jones estate, so I didn't approve them.  Then came in another set of lawyers and another CRO.  The two cases, the Jones case, the Free Speech case, proceeded on a track, side-by-side track basis.

We held the hearings on the non-dischargeability claims in the Jones case.  Non-dischargeability claims were put in abeyance in the Free Speech case because the Fifth Circuit had agreed to take up the issue.  The Fifth Circuit ruled.  They got it exactly right.  It's exactly what I would have ruled.  But theirs is more important.  So we were left with the summary judgment in the Jones case.  Never really took it up in Free Speech.

There were a couple of other adversary proceedings, some related Texas parties who never had their day in front of me.  Parties, Texas families, a group of them, and Connecticut families were in mediation with other parties.  I know the Jones folks were there.  I know Free Speech was there a while, about a year.  Nothing came of it.  There was a 9019.  But then it was contingent upon approval of a plan that never happened for the 90 -- that went away.  But I was prepared to approve that.

The case had been going on for about two years.  Then they went to mediation again before another judge in another district.  That was unsuccessful.  Mediation sometimes work; they don't.  My point is that people have

been trying to consensually resolve these issues for two years, and it didn't happen. And the Free Speech case could have either converted or been dismissed. But it couldn't hang out in Chapter 11 because there was no way it was going to be able to confirm a plan.

And to say that they stretched -- and I allowed it to happen -- stretched the limits of Subchapter V and what it was intended to do is an understatement in terms of timing; not in terms of ruling, but in terms of timing to get a plan on. But people were mediating. And I thought it made sense that if people were going to try to reach a deal, if you were going to put together a plan and this all worked out, then I didn't want to put my thumb on the scale. So, ultimately, I made a decision to dismiss the Free Speech case.

We were left with the Jones case. But I retained -- I told Murray he could keep -- Mr. Murray, the Chapter 7 Trustee appointed then in the Jones case, because the Jones case converted as well -- keep the cash from Free Speech in the bank accounts, and kept two adversary proceedings, one involving PQPR, another one involving Elevated Solutions Group. No professionals started coming to me. I don't know if it's true or not, but anyway.

But Texas families were able to try to collect on their judgment against Free Speech. They had rights given

by a Texas court, I think even going after some of the Free Speech professionals who were working to preserve the estate.

When it came time to potentially sell assets, Mr. Murray and his counsel told me that they think that the real way to maximize value is to sell stuff, and not just the equity.  They wanted the opportunity to go do this, and they thought they could do this by an auction.

They had, over an objection of the United States Trustee, told me just let them sell the equity.  I entered a supplemental order so that to ensure you have the Trustee cover that he could sell the assets.  That's what that order was intended to do.  The supplemental dismissal order was just to make sure, because that was the request.

We had the auction process.  I won't recount what happened, but I didn't approve the proposed sale.  I had a – – I think the evidence is clear -- a backup bidder at the beginning.  We didn't even know what the winning bid was.  I had an auctioneer who got on the stand and didn't even know what he was going to get paid, or under what terms he was going to get paid.

I had a winning bid that was clearly based on a contingency.  There was a sliding scale in the agreement.  The proposed order submitted originally had the very language showing it was a contingency.  And the Trustee was

telling me that it wasn't a contingency.  That was his understanding.

So I was asked to approve a sale that had a contingency clearly in it, but was told to act like there wasn't a contingency, upon a sale price that no one really could articulate, because depending on how you took it as a contingency or not a contingency.  And we couldn't figure out exactly what the auctioneer was even going to get paid, because I don't even think he knew.

I then denied that auction.  We were here until, what, 10:30 that night?  So I didn't want -- and then I asked -- this case has been going on, I said -- I gave some (indiscernible) speech, told them it's been going on for like three years, and let's just get this back on track, get back to doing -- no, I should back up and mention that the supplemental order was appealed by the Texas families.  I think that matter is still pending.

MR. JORDAN:  It is, Judge.

THE COURT:  I lose jurisdiction over that immediately.

MR. JORDAN:  It's still -- it is still pending.

THE COURT:  But I think the appeal was something like, Judge, you can't do that, was the basis of the appeal. I don't have authority to go vest the property of the estate.

So the sale didn't happen, and I said, I don't want any more contingencies.  If there's going to be a sale of assets, then cash will be king.  But if there's confu- -- if there's -- gets complicated, like it was last time, where you had IP assets, and people weren't bidding against each other.

I also said the sale price was low.  Turns out there's been an offer made since that day, which almost doubles the amount that was -- increased the offer by a week.  A week, like it was there.  That's fine.  Then if things get -- I told folks, if you want to sell it, cash will be king.  Get back to doing just -- you want to sell the equity?  Sell the equity, but cash will be king.

I took up the motion for reconsideration filed by the Connecticut families.  I know that the Jones side has a motion for reconsideration pending that will run its own course.  But as things sit today, as I see them -- I could be wrong -- no, I'm not wrong on this, and maybe just slightly off on the numbers -- but I know that the Connecticut court has -- in Appellate Connecticut court, a second level of revision has taken some of the (indiscernible) amounts.  And now that's subject to further appeal, and parties will appeal.

I haven't denied anyone any ability to pursue. Jones was able to hire his own lawyers.  Connecticut family

was able to pursue those judgments.  My non-dischargeability order in the Jones case kind of has a mechanism saying, this is what I found based on summary judgment, based on the collateral estoppel of the findings made in the Connecticut court.  The Connecticut court ultimately finds that X is the number, will then kind of compare it to what I did, and there's a kind of an adjustment so that I'm not allowing any more than a Connecticut court would have allowed.

Same thing for Texas.  I think there was a portion that I didn't approve for Texas, I know, and for Connecticut as well, that I didn't find -- I didn't think there were basis for collateral estoppel findings, and appellate courts will review what I did, and that's the way the process works.  I've got no issues with that.

So that's where things stand.  I don't know, around a billion dollars for Connecticut right now, subject to further appeal, non-dischargeable.  Around $50 million for Texas, subject to further appeals.  The numbers could stay the same, numbers could be zero, numbers could go up. I don't know.  It's all subject to state court appeals now.

But FSS, that estate is closed.  That case is closed.  That case is closed.  Which means that someone has a contract dispute with FSS.  You don't come to me.  You have whatever rights you have outside the bankruptcy.  The bankruptcy doesn't affect your claims one way or the other.

There were several individuals who had a case. They were suing Jones in Texas state courts. They can continue their trials in state courts. There's nothing stopping anyone from pursuing any claims in Texas state court. The bankruptcy has no impact. In other words, the bankruptcy itself, the estate, there's no automatic stay stopping -- no one has to come ask me for permission. You have whatever rights you have.

I already said, multiple years to try to reach a settlement, and they didn't. And I'm not saying anybody should have settled. I don't get into why people settle and don't settle. Not my purview. I'm there to evaluate settlements and determine whether they're in the best interest of the estate. That's my job.

So, kind of where we are. Several years of negotiating, no settlement, no plan. FSS gets dismissed. Failed auction. Now there's a 9019. The 9019 now wants me to allow claims against FSS. And I don't -- and I can't do that. And all bankruptcy lawyers know that I can't do that. Because there's no estate. There's no bankruptcy estate to allow a claim against. People can go to state court right now. If FSS Free Speech doesn't pay someone's bills, you don't come to me and ask for an admin claim. You go to state court. You go to court where you can go to court, but you don't have to come to me.

So, now the Trustee is asking me to approve a 9019 settlement where I'm allowing over $400 million of claims against Free Speech.  And now the Texas families are saying that the matter that they very much appealed, they're now embracing.  The supplemental order is now embraced.

The Trustee who asked me for a specific order for a specific purpose is now using that order.  But it was only for one purpose, to see if he could sell the assets.  To now use those words, knowing what we did and why we did it, and everybody was in the room when we did it.  Ha Nguyen was here.  The U.S. Trustee was sitting right there telling me.

So, now it's going to be expanded to then allow $480 million worth of claims against an entity in a case that I dismissed.  I'm being asked to allow claims -- allow -- and allow is bankruptcy buzzword 101.

And here we are again.  Before we would pit the families against each other, where Connecticut and Texas would disagree on whether the form of relief being requested was appropriate.  Happened during the auction too, where Texas said, I don't understand what we're doing here and I don't understand how this is going to work.

So, now I'm told we're all aligned and you just -- Lopez, just have to allow a claim against an entity in a case that's been dismissed.  I can't do that.  I cannot do that.  I don't have authority to do it.  And I'm not going

to use the supplemental order, which was used for one purpose and one purpose alone, and that purpose is now gone. Gone.  I'm very much inclined to vacate that order because it serves no purpose.  I'm not allowing a sale of the assets anymore.  Pure sale of the equity.

We're going to -- I've got to -- this case keeps taking twists and turns and trying to come up with really masterful and creative lawyering.  But at its core, it's something I can't approve.  Would come -- you know...

And so, I know...  I read the revised settlement. Read the revised order.  Bankruptcy lawyers know I can't do this unless we get really, really, really creative.  And I think on a case like this, we've got -- with multiple appeal, any party, regardless of what I do, people have their rights.

So, before everyone gets started, let me just tell you, I can't do this.  I'm going to again turn to Mr. Moshenberg and tell him, you'd better -- I need you to tell me what you want to do on your -- this non-dischargeability action.

I know that there's a pending motion in the other one.  I've now approved the two matters in which there's 9019s and the two settlement matters.  Money's going to go out the door.  You don't have to tell me now.  I want you to file something and tell me exactly what you all are going to

do.

MR. MOSHENBERG:  Understood, Your Honor.

THE COURT:  And just play it down the line, in other words.  People have rights and I'm not telling you to put you on the spot or anything, I just know.

Mr. Murray, if you want to sell the equity, go sell the equity.  This case -- people have rights and they've been...  If you want to go pursue claims against Jones in state court against Free Speech, I don't -- I dismissed the case and I know what comes along with that.  Those arguments were made to me and I know what they are.

No, you don't have to say anything.  I know what the rights are.  And I'm not -- so you can consider any use of the supplemental order null and void, because the purpose for which it served was the auction of the assets, and we're not doing that anymore.  I don't trust the process.  I would have to do it -- me, myself -- and I'm not overseeing it.

So kind of get comfortable with the process so that we don't kind of do the same thing.  We've already did it really long and complicated and brought in auctioneers and had lots and -- enough has been -- and I think what this Debtor needs and what these families need is finality of the bankruptcy process so that they can pursue whatever it is that they want in judgments in state court, which is where they started in the 1st place; Connecticut, Texas, for the

most part.  I know that there's some other litigation pending out there.

I just -- I don't have the ability to allow a claim against an entity.  And in a case that has been dismissed in which I literally gave specific authori- -- you keep the cash; we're going to keep these two adversaries.  I'm going to settle these.  I'm going to keep jurisdiction over these two things and this one.  And I'm not going to do it for anything else.

I can't use the supplemental order to then go -- for a purpose in which it was never intended.  And I get to construe my own orders and I retain jurisdiction over them.  This case will be highly simplified.  And I know Mr. Wolfshohl said he's been listening to these transcripts carefully.  I made it super simple for you this time.

There will be -- I don't know.  Someone has a case, bring it.  There have been multiple years of investigations.  No lawsuits have been (indiscernible) in front of me.  Maybe one is coming.  I don't know.  If it does, we'll take it up and I'll rule.

I'm not sure anybody's ever been happy about -- completely set in my rulings.  I'm not sure Mr. Jones has been entirely happy to know that I found on summary judgment that he's liable for over a billion dollars in non-dischargeable debt and over $49 million dollars.  I'm sure

he -- appealing -- he is appealing.  And that's his right.

So, I'm sure the Connecticut and the Texas family -- I'm sure the Connecticut families weren't too happy about my decision about the auction.  Sure Global Tetrahedron wasn't too happy about it.  But I'm really trying to do what I think is my duty and my job upon careful analysis of the law.

And so I'm not approving.  I cannot on its face.  You don't have to put on any evidence.  I can't approve this sale.  I can't allow $480 million dollars.  And I don't want folks to put it up.  And we don't need to take up TROs and Connecticut and Texas.

Texas, you have whatever rights you have.  Connecticut, you have whatever rights you have against Free Speech, case against Jones.  If you want to have another -- if you want to settle with the Trustee on Jones related matters, do it.  Tee it up.  We'll take it up.  But these things are inextricably linked and multiple appeals going on.  Well, I don't know if they're still going on.  They probably will on the non-dischargeability front, by the way.  You have whatever rights you have on the supplemental order.

MAN 1:  Judge, if I could comment --

THE COURT:  Won't be used again.  No, no, no.  I don't need you to comment on anything.  I don't -- because it's going to open the door.  I just wish everyone a good

day.  Thank you.

CLERK:  All rise.

(Whereupon these proceedings were concluded at 9:26 AM)

                         I N D E X


                          RULINGS

                                           Page      Line

Motion to Approve Sale, Denied             16        8

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

matter..

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date:  February 6, 2025