**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **IN RE: ALEXANDER E. JONES** | § | **CASE NO. 22-33553 (CML)** |
| | § | |
| Debtor | § | **Chapter 7** |

---

**RESPONSE TO THE SANDY HOOK FAMILIES' EMERGENCY JOINT MOTION FOR ENTRY OF AN ORDER CONFIRMING THAT FSS ASSETS ARE NOT SUBJECT TO THE AUTOMATIC STAY (AS PROPERTY OF THE ALEXANDER E. JONES CHAPTER 7 ESTATE)**
**[Dkt. 1241]**

TO THE HONORABLE CHRISTOPHER LOPEZ, UNITED STATES BANKRUPTCY JUDGE:

Alexander E. Jones, Chapter 7 Debtor and party-in-interest (herein "Jones") files this Response and Objection to The Sandy Hook Families' (herein "Plaintiffs") "Emergency Joint Motion for Entry of an Order Confirming That FSS Assets are Not Subject to the Automatic Stay" (the "Joint Emergency Motion"), and would show the Court as follows:

**I.**
**PRELIMINARY STATEMENT**

1.      First, this Court should know that oral argument took place before the Third Court of Appeals in Austin on the Texas Judgment in May, 2025.  A petition for writ of certiorari has been filed with the United States Supreme Court on the Connecticut Judgment.  See **Exhibit A** attached hereto.  The Jones Parties are optimistic about their chances in both.  Neither of these important facts is even mentioned in the so-called "emergency motion."

2.      As to their Emergency Motion itself, procedurally, this is not an emergency.  While the Plaintiffs have known about these issues for literally months they waited until 3:35 p.m. [Friday September 26] to file their Emergency Motion and at first set it for hearing on Friday October 3, only to then re-set their "Emergency" Motion for hearing for Wednesday October 1, giving the

Jones Parties literally 1 1/2 business days to respond.  In addition to the fact that this is not an emergency, this is a denial of due process.

3.      Substantively, were the Jones Parties being charitable, we would say the Plaintiffs' Motion borders on the fraudulent.  In truth it so badly misstates the record in this Court and other courts that the border between truth and prevarication is nowhere in sight.  The pivotal issues here revolve around two orders entered by this Court and two hearings.  As to the two orders, one was entered in June 2024 [FSS Dkt. 956] herein called the "June Order" or the "Initial Cash Order", and the other was entered in September 2024 [FSS Dkt. 1021] herein called the "September Order" or the "Supplemental Order."  As to the hearings, one occurred in February 2025 (the transcript is **Exhibit B**, Dkt. 1072) and the other in June 2025 (the transcript is **Exhibit C** Dkt. 1193).

4.      For starters, the Plaintiffs repeatedly claim that in the February 2025 hearing this Court held the Supplemental Order "null and void," and they cite the transcript of the February 5 hearing no less than eleven (11) times.  But the Jones Parties ask with tongue firmly in cheek, have the Plaintiffs forgotten the Jones Parties filed a Motion to Reconsider [Dkt. 1131] that resulted in a June 5 hearing, the transcript of which [**Exhibit C** Dkt. 1193] shows this very Court repeatedly acknowledging, first in the February 5, 2025 hearing,[1] and later on June 5, 2025, that is because the Supplemental Order had been appealed, this Court could do nothing and had done nothing, i.e. any declaration of voidness in February was itself void?

5.      The Plaintiffs must have forgotten this inconvenient fact because the June 5 hearing is not referenced one single time in their Motion.  In their desperation to mislead -- which they have done in every court in which they have appeared on this issue -- they don't even mention let alone address the June 5 hearing or the Court's own words that there stated precisely that:

---

[1]      February 5, 2025 Tr. p. 8, l: 15 – 19; See, *infra* full quote.

> 1   somebody wants to buy the equity, which someone can always do
> 2   in Chapter 7.  I read your pleadings and I think -- I went
> 3   back and listened to it, and I'll take the blame for not being
> 4   incredibly as precise as I should have been.
> 5         The matter was currently pending.  That order was
> 6   currently pending on appeal at the time, so I couldn't revoke
> 7   one way or the other, right?  Once bankruptcy, once an appeal
> 8   is filed, the Court loses jurisdiction over that.  What I
> 9   intended to say and certainly communicate to the parties is
> 10  conducting -- well, I can't, I'm not going to force the trustee
> 11  to put up another sale, put on auction.  The trustee can
> 12  exercise business judgment, but here are the matters, here are
> 13  the things the trustee needs to think about before we bring

And did so not once but multiple times.

> 22  someone suing them because they really didn't own something
> 23  that I sold and so I haven't revoked anything.  I didn't have
> 24  authority to do it anyway, but to me, putting up another
> 25  auction process would be incredibly complicated, incredibly

**Exhibit C** Dkt. 1193 BK Hearing June 2025, p. 40.  That Plaintiffs do not even mention the June 5 hearing or this Court's statements that it had taken no action is inexplicable.

6.     And some relevant introductory background is in order.  At the February 5 hearing, Plaintiffs and Trustee presented a settlement which involved in part "allowing" over $400,000,000 of claims of three persons who have not even tried a case.  Frustration because of the continued disobedience to this Court's instructions resulted in the Court's use of the words "null and void" in February, but also that the pending appeal prevent that result.

7.     Even though this Court clearly recognized again in June on the record that it could not have done so because of the pending appeal, Plaintiffs' response is to ignore this -- like the ostrich.  Then Plaintiffs take the position that in February this Court merely "enter[ed] a 'clarifying

order' interpreting the Supplemental Order," citing bromide cases on a court's authority to interpret its orders in the injunction context. But in no defensible way can a nullification be called an interpretation. See *Weight Watchers Int'l v. Luigino's, Inc.*, 423 F.3d 137, 141-42 (2d Cir. 2005) ("Whether an order interprets or modifies an injunction is determined by its actual effect. An interpretation does not change the status of the parties, while a modification alters the legal relationship between the parties, or substantially changes the terms and force of the injunction. We therefore consider the effect of each order and its relationship to the other."). See also *Anderson v. Hutson*, 114 F.4th 408, 415 (5th Cir. 2024) (Emphasis Added). "Interpretation, then, is not modification. Taking a practical view of modification, we look beyond the terms used by the parties and the district court to the substance of the action."") (in both, cleaned up; internal cites and quotes omitted).

8.      So, this Court could not nullify the September Order, did not nullify the September Order and neither could it "interpret" it as a nullity.

9.      Knowing these problems, in a last-ditch effort, in the last two pages they raise FRCP 60(b)(6) improperly and without proper evidence ask the Court to do so now. In so doing, however, Plaintiffs ignore current United States Supreme Court cases, some decided in 2025 like *BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612 (2025), that clarify just how difficult establishing entitlement to a FRCP 60(b)(6) motion is: "The text and structure of Rule 60 make clear that relief under Rule 60(b)(6) is available only in narrow circumstances" and making clear that 60(b)(6) is applicable only in "extraordinary circumstances." Id. at 161. The Fifth Circuit has recently emphasized this April 2025 holding "...also we have also narrowly circumscribed its availability, holding that Rule 60(b)(6) relief will be granted only if extraordinary circumstances are present." *In re Westcott*, 135 F.4th 243, 248 (5th Cir. 2025). In no conceivable way, have Plaintiffs established their entitlement to Rule 60(b)6) relief.

10.     In light of this recent authority, it should not go unnoticed that when the Plaintiffs decided to abandon the Supplemental Order appeal, they did nothing to avoid finality (e.g., Motions under Rule 59(e) or 60(b)(6)) but simply sat by and waited until one year had passed before filing this "Emergency" Motion.   The "emergency" was upon their dismissal of the appeal – not four months later after Plaintiffs allowed the Supplemental Order to become a final order.

11.     Perhaps most troubling of all is the radically inconsistent positions the Plaintiffs have taken before the Texas state courts, in stark contrast to what they are advising this Court. Before this Court, Plaintiffs argued that the Supplemental Order is null, and void and the Trustee has no interest in FSS assets.  However, in the state courts Plaintiffs have also taken a radically different position, claiming that this Court's June Initial Cash Order 2024 Order gave the Chapter 7 trustee dual powers including both "signing authority over FSS' bank accounts and the power to dispose of its assets for the benefit of creditors, though those assets remained the property of FSS." [Resp., p. 23].

12.     Plaintiffs were forced to take this position because they had induced the Texas trial judge -- who literally despises Alex Jones --  to sign a Turnover Order that referenced both the June Order and the September Order and qualified both with the notation that FSS assets would be seized only with the approval of the Bankruptcy Trustee and the Bankruptcy Court,[2] the turnover order finding reading:

---

[2]     17. Exempt Property. Nothing in this Order shall be construed to apply to exempt property, if any, of Judgment Debtor, *or any property of the Chapter 7 Estate* (expect up approval of the Trustee or Bankruptcy Court). See, **Exhibit E,** Dkt. 1246-5, Order Granting Application for Post-Judgment Turnover and Appointment of Receiver as to Judgment Debtor Free Speech Systems, LLC (Emphasis Added).

> **The Court also FINDS that** Judgment Debtor Free Speech Systems, LLC filed for bankruptcy under chapter 11 of the Bankruptcy Code on July 29, 2022 (the FSS Petition Date) in the Bankruptcy Court as case no. 22-60043 (the FSS Bankruptcy Case). Following a hearing on June 14, 2024, the Bankruptcy Court issued two orders in the FFS Bankruptcy Case dismissing the FFS Bankruptcy Case and vesting authority in the Trustee to take control of Judgment Debtor Free Speech Systems, LLC, including its assets and bank accounts. *See* Dkt. 956 (June 21, 2024) and Dkt. 1021 (September 25, 2024), No. 22-60043 (Bankr. S.D. Tex.). Accordingly, the Application only seeks relief relating to the following (cumulatively, the Turnover Property):
>
> (i)     as to Judgment Debtor Free Speech Systems, LLC, all its assets (subject only to approval of the Trustee).

13.     Forced to explain why they would include a reference to the Supplemental Order if it had been truly declared void, Plaintiffs claimed their reference to the September Supplemental Order was a mere clerical error. Laughable.

14.     But Plaintiffs still had to explain their inclusion of the "subject to the approval of the Trustee" (and later "subject to the approval of the Bankruptcy Court) which would only make sense if the Trustee had FSS assets via the Supplemental Order. Thus, to explain the inconsistency of their positions, the Plaintiffs were forced to prevaricate, articulating a position they have hidden here from this Court. Specifically, Plaintiffs there argued that this Court's June 2024 Order gave the Chapter 7 trustee dual powers including both "signing authority over FSS' bank accounts and the power to dispose of its assets for the benefit of creditors, though those assets remained the property of FSS." [Resp., p. 23]. Notably, Plaintiffs ask for no relief or interpretational assistance on the June Order.

15.     Thus, given this position, the relief they seek here will do nothing as they are still

stuck with their claims that the June Order -- on which they seek no relief -- conveyed the assets to the Trustee.

16.     At the June 5 hearing, and even before in the filings of the Jones Parties, the Plaintiffs were advised that after the Texas Plaintiffs dropped their appeal this Court lost plenary power to sua sponte nullify the Supplemental Order 20 days after the appeal was dismissed and the Supplemental Order became final.   They were further advised on the record, that the Supplemental Order having become a final judgment, FRCP 60 was their only hope of relief -- yet they did nothing for almost 4 months, waiting until their turnover efforts were in danger.

17.     Here, referencing the February 5 hearing, they ask this Court to now "confirm" what it did not and could not do:  nullify or modify the final, unappealable Supplemental Order. And the Court should not nullify the Supplemental Order even if it could. Nullification means void ab initio. The Trustee will be forced to return all money and assets he has received.  All settlements will be called into jeopardy.  The bankruptcy trustee will have misappropriated millions of dollars from a company that is not in bankruptcy and whose assets are not part of the bankruptcy estate. Nullification could be a catastrophe.  This Court should decline the invitation to be the catalyst for such reckless endangerment.  But the Plaintiffs do not care.

18.     To the contrary, Plaintiffs' motives are to acquire the FSS assets in order to destroy the Jones and FSS/InfoWars brand and prevent Jones from exercising his constitutional right to freedom of the press and freedom of speech.  The relief sought by Plaintiffs is an abuse of the bankruptcy process disapproved by the Fifth Circuit rejecting a creditor's demands motivated not by recovery on a just debt, but by the ulterior motive of destroying a debtor ability to earn an income and apply his trade by destroying his constitutional rights to freedom of the press and free speech – all for a political ulterior motive of taking a conservative off the air-ways and out of the public discourse.  This abuse of the bankruptcy process, particularly when it has been made known

to this Court and thus is not an open question, should not be ignored, especially when important constitutional rights will be destroyed.

19.     As a final point in this preliminary statement, Plaintiffs have doubled down on their horrific claims in state court, not only ridiculing Jones' counsel for relying on this Court's Orders and its candid statements that the Order could not have been vacated but also seeking to have counsel sanctioned over $100,000 in fees and repeatedly questioning counsel's ethics.  The high stakes created by Plaintiffs do not justify the disregard of law they presume from this Court.  The motion should be denied.

## II.
## RESPONSE TO PLAINTIFFS MOTION

### A.     Plaintiffs' Motion Seeks the "Confirmation" of That Which Did Not Happen

20.     The Connecticut and Texas Plaintiffs (the "Plaintiffs") have filed an Emergency Motion on Friday, September 26, 2025, seeking an order of this court "*confirming" that*  the FSS assets vested in the Bankruptcy Estate of Jones by virtue of the Supplemental Order entered on September 24, 2024 (FSS Dkt. 1021) [the "Supplemental Order"] are not subject to the automatic stay imposed by 11 U.S.C.A. §362(a). The Emergency Motion asks the Court to "confirm that the Supplemental Dismissal Order has no force or effect, that FSS's assets are not property of Jones' bankruptcy estate, and confirming that FSS's assets are not subject to the automatic stay and may be turned over to the receiver." [See, Emergency Motion, ¶4]. The basis of the Motion is that, according to the Plaintiffs, on February 5, 2025, *while the Texas Plaintiffs' appeal of the Supplemental Order was pending at the District Court*, this Court voided the Supplemental Order and made clear that FSS's assets are not property of the Chapter 7 Estate [and] not protected by the automatic stay." *Id.* at ¶6.

21.     There is no dispute that the Supplemental Order entered by this Court transferred

FSS assets to the Bankruptcy Estate of Jones.  No dispute on this is possible as the wording of the Supplemental Order is crystal clear. It is also not in dispute that while the Supplemental Order was on appeal to the United States District Court, it could not be modified or vacated. Thus, on February 5th, the Court was without the power to nullify the Supplemental Order even if he had desired to do so. As the United States Supreme Court has explained, the "filing of a notice appeal is an event of jurisdictional significance." *Griggs v. Provident Consumer Disc. Co*., 459 U.S. 56, 58 (1982). Such an appeal confers exclusive jurisdiction on the appellate court while divesting the lower court "of its control over those aspects of the case involved in the appeal." *Id*. What the Plaintiffs claim occurred – that the February hearing resulted in the nullification of the Supplemental Order – is an absolute impossibility under the law.[3]

22.     There can be only one result: the FSS assets vested into the Jones estate are protected by the automatic stay. It is undisputed and unchallenged, that even in the event of uncertainty as to whether assets are part of a bankruptcy estate, the automatic stay applies, and the Turnover Order is void.  *See Brown v. Chesnut (In re Chesnut),* 422 F.3d 298, 300 (5th Cir. 2005). *See also Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 251 (5th Cir. 2006) ("...this Court has recognized the automatic stay's broad application and noted that such breadth reflects a congressional intent that courts will presume protection of property when faced with uncertainty or ambiguity.").

23.     Remarkably, in making its arguments that the Court rescinded the Supplemental Order by cherry picking quotes from the February 5, 2025 transcript, not once do the Plaintiffs

---

[3]     *See e.g. Sherman v. SEC (In re Sherman),* 491 F.3d 948, 967 (9th Cir. 2007); *See, e.g., Mesabi Metallics Co. LLC v. Cleveland-Cliffs, Inc. (In re Essar Steel Minn. LLC)* Nos. Chapter 11, Case No. 16-11626, Adv. Proc. No. 17-51210, Related Docket No. 1020, 2024 Bankr. LEXIS 856, at *20 (Bankr. D. Del. Apr. 8, 2024) ["it is true that when a case is on appeal, a lower court loses jurisdiction over the subject matter involved in the appeal…"] citing *In re Port Neches Fuels, LLC*, No. 23-255, 660 B.R. 177, 2024 U.S. Dist. LEXIS 55757, 2024 WL 1298590, *12 (D. Del. Mar. 27, 2024).

mention the June 5, 2025 hearing wherein the Court repeatedly clarified its statements made in February 2025. And not once do the Plaintiffs mention to the other tribunals or the Austin court of appeals that during the June 2025 hearing the Court expressed several times it would consider allowing another auction of the FSS assets in the Jones bankruptcy. This was not mentioned because Plaintiffs are attempting to violate the automatic stay by seeking a turnover of those assets.

24.     Yet, amazingly, Plaintiffs claim that it is Jones and FSS that "have sown chaos and confusion regarding Your Honor's rulings regarding the scope of the automatic stay in Jones' bankruptcy … [because] they argue to other tribunals that FSS's assets are subject to that stay and that the Sandy Hook Families cannot enforce remedies, including pursuing a turnover and receivership order, against FSS's assets in state court." [Motion, ¶3]. What's amazing about Plaintiffs' claim is that not only are Plaintiffs the ones who have sown chaos and confusion by twisting this Court's words in any manner that fits their agenda, but they have even used their falsehoods as a basis to seek sanctions against counsel for Jones and FSS for the simple reason that counsel for Jones and FSS referenced the Supplemental Order being a valid order that vested the assets of FSS in the Jones Estate.

25.     Rather Plaintiffs' sole argument is that (a) in a hearing on February 5, 2025, the Bankruptcy Court "nullified" the Supplemental Order, (b) it reaffirmed that nullification in March, 2025, and (c) Jones and FSS filed a Motion for Reconsideration which "acknowledged that the Supplemental Dismissal Order was no longer in effect." [See, Motion, ¶24].

26.     Plaintiffs then claim that "all of the chaos related to the Supplemental Order stems solely from the Debtor's conduct in willfully misrepresenting orders in Texas state courts. Plaintiffs know full well that the Supplemental Order is in full force and effect and have built an argument on a house of cards by asserting these points as an after-the-fact argument to avoid the inescapable.  Movants will address all of these arguments but in a slightly different order.

27.     While this Court did express during the February 5, 2025, hearing a desire to "void" the Supplemental Order after expressing (justified) frustration with the Bankruptcy Trustee's repeated attempts to use the Supplemental Order for various purposes for which it was never intended, this Court acknowledged that based on the pending appeal by the Texas Plaintiffs, it lacked jurisdiction to void the Supplemental Order.[4]   However, it is this February 5 hearing that Plaintiffs' argued to the State District Court and the Court of Appeals *that this Court set aside the Supplemental Order – while the case was on appeal to the District Court* by the Texas Plaintiffs. Yet in all of Plaintiffs' arguments Plaintiffs did not cite or discuss this Court's statement of jurisdiction while the Texas Plaintiffs appeal was pending.

**B.     The Court Had No Jurisdiction to Nullify the Supplemental Order – A Fact Acknowledged by the Court During the February and June Hearings**

28.     As this Court is aware, the Texas Plaintiffs appealed the bankruptcy court's entry of the Supplemental Order to the District Court for the Southern District of Texas and did so for the very reason that FSS assets were transferred.  In their statement of the issues on appeal, the Texas Plaintiffs stated to the United States District Court to whom bankruptcy appeals first go, precisely what the Supplemental Order did:

---

[4]     February 5, 2025, Hearing Transcript:

15          ….               No, I should back up and mention that the
16     supplemental order was appealed by the Texas families.  I
17     think that matter is still pending.
18          Mr. JORDAN:   It is, Judge.
19          THE COURT:   *I lose jurisdiction over that*
20     *immediately*.

p. 8: 15-20.

**STATEMENT OF ISSUES**

1.      Did the Bankruptcy Court err when, without notice, it entered an order [Docket No. 1021]—three months after dismissing the Free Speech Systems, LLC bankruptcy [Docket No. 956]—that retroactively vested all property of former debtor Free Speech Systems, LLC into the bankruptcy estate of Alex Jones?

[See, Texas Plaintiffs' Statement of Issues and Designation of Record to be Presented on Appeal, Case No. 4:24-cv-03882 Dkt. 14-1, in the United States Bankruptcy Court for the Southern District of Texas (Dkt. 1246-11)].  Importantly and unaddressed by the Plaintiffs is the argument that upon appealing the Supplemental Order, the Bankruptcy Court immediately lost jurisdiction to alter the Supplemental Order, which is unquestionably the law.[5]

**C.      The Court Repeatedly Clarified that it Had Not Modified the Supplemental Order**

29.      However, what is most revealing about Plaintiffs' argument is the fact that it wholly ignores the Court's numerous statements during the **June 5, 2025**, hearing when it clarified that it absolutely did not modify the Supplemental Order during the February hearing:

```
8          THE COURT:  I don't think I modify the order --
9          MR. JORDAN:  You didn't.
10         THE COURT:  -- back in February.
11         MR. JORDAN:  No.
12         THE COURT:  The question is, do I do it now?  It's
13   the question you're telling me.
```

---

[5]      As the United States Supreme Court has explained, the "filing of a notice appeal is an event of jurisdictional significance." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Such an appeal confers exclusive jurisdiction on the appellate court while divesting the lower court "of its control over those aspects of the case involved in the appeal." *Id*.

June 5, 2025 Tr., p. 47, lines 8-13. The Court repeated the fact that it did not have authority to nullify the Supplemental Order several times, including:

```
5              The matter was currently pending.  That order was
6    currently pending on appeal at the time, so I couldn't revoke
7    one way or the other, right?  Once bankruptcy, once an appeal
8    is filed, the Court loses jurisdiction over that.  What I
```

...

```
23   that I sold and so I haven't revoked anything.  I didn't have
24    authority to do it anyway, but to me, putting up another
```

June 5, 2025, p. 40, l: 5-8, 23-24. There is no ambiguity in the Court's ruling. In short, the Bankruptcy Court did not nullify the Supplemental Order.

30.    The Court elaborated and confirmed, yet again, that the Supplemental Order remains valid, acknowledging that all that was denied was the proposed sale attempted by the Trustee under the Supplemental Order:

```
10            THE COURT:  No, I agree.  I don't know how people
11   are construing it.  Maybe I can provide some clarity there.
12   There is an order out there.  That order, there was a sale, a
13   proposed sale under that order.  He didn't -- I denied it.
```

June 5, 2025, p. 48:10-13.   If there was any doubt about the continuing viability of the Supplemental Order the Court's statements confirming it is still out there should remove any such doubts notwithstanding that the Court denied the first and second effort to conduct an auction and compromise claims in that auction process, including an attempt to authorize claims against FSS, which is not in bankruptcy.

The Plaintiffs do not cite either of this Court's June 5, 2025 express pronouncements of *no jurisdiction to void an order of the Court while it is pending appeal* in this Emergency Motion and did not do so in their pleadings filed in the Austin Court of Appeals. It is as if no such statements of fact and law exist to these Plaintiffs.  And except for Alex Jones and FSS, these critical statements would not even be discussed. It is not in dispute that while the Supplemental Order was on appeal to the United States District Court, it could not be modified or vacated.

### D.    Plaintiffs Failed to Seek a Reconsideration of the Supplemental Order

31.    During the June 5, 2025 hearing the Plaintiffs announced that they had dismissed their appeal on May 5, 2025, and argued that the Jones-FSS Motion had been "mooted" by the dismissal and thus the jurisdictional obstacle to voiding the Supplemental Judgment had been removed.  Jones and FSS counsel pointed out that pursuant to Fed. R.Civ.P. 59(e) after 14 days (or the latest 30 days) after an order or judgment becomes final after appeal, the trial court (here the Bankruptcy Court) could not *sua sponte* overturn the final judgment thereafter.  It could only be done by Motion under FRCP 60(b)(1)-(5) [not longer than one year from entry] or FRCP 60(b)(6) brought within a reasonable time.  The Court agreed.

```
24            MR. JORDAN:  What I want, but what I want you to
25      hear is that Federal Rule 59(e) is gone; 28 days have passed.

1       Nobody filed a motion and you didn't pick it up and decide you
2       wanted to do something.
3               60(b)  provides  for  a  reasonable  time  to  do
4       something.  That reasonable time probably hadn't passed or
5       maybe it has, who knows, but it's only on motion.  It's not
6       on sua sponte of the Court.
7               THE COURT:  Oh, I agree with that.
```

June 5, 2025 Tr. pp. 47:24-48:7.  For the first time, and now in the Emergency Motion filed after

one (1) year from entry of the Supplemental Order, Plaintiffs have discussed FRCP 60(b)(6) for the very first time.  That Motion has not been set for hearing.  However, the relief sought by Plaintiffs pursuant to FRCP 60(b)(6) is clearly an admission that they are well aware of the fact that this Court did not previously rescind the Supplemental Order as Plaintiffs claimed to the Travis County District Court (which was also used as a basis for seeking sanctions) and the Austin Court of Appeals.

      **E.**    **This Court Further Notified the Parties That it Would Consider a Sale of the Assets by the Court**

    32.    In the continued recognition of the Supplemental Order this Court announced at the June 5, 2025 hearing that it would consider having another auction for the sale of FSS's assets:

```
 6              The question is do we do another sale?  That's the
 7    real question.  Or another proposed sale with another proposed
 8    hearing and determining what the assets are there and then who
 9    will conduct the sale and who would do the auction and whether
10    you do some cash or and what the analysis would be to get me
11    comfortable that those assets are actually owned by FSS.  And
```

June 5, 2025 Tr. p. 49:6-11. And also:

```
14    another motion for the sale of the assets.  And here's a
15    laundry list of issues that I've got.
16              Trustee is going to have to think about whether I
17    approve any sale process because it would have to be conducted
18    by me.  It would have to be cash only and we'd have to sort
19    out all the intellectual property issues.  So I don't want
20    someone buying something -- and I expressed this a while back
```

June 5, 2025 Tr. p. 40:16-19. The fact that the Bankruptcy Court repeatedly asked at the June 2025 hearing whether it should allow the Trustee to again attempt to sell FSS assets, only makes sense if the Trustee still has control of them. There is simply no way the bankruptcy court would be thinking about authorizing another sale of FSS assets if they were not in the Trustee's control via the Supplemental Order.

> **F.     There Has Been No Attempt to Seek Any Reconsideration By Plaintiffs From The Bankruptcy Court's Unequivocal Rulings of February 5 and June 5, 2025 – Until Now**

33.     Over the past 8 months from February 5, 2025, the Plaintiffs have had no restriction that would have prevented them seeking months ago the declaration they now seek.  In fact, as noted this issue was raised and the Court clarified and clearly ruled on June 5, 2025 [*See*, footnote 6 *infra*] that it had not voided the Supplemental Order. [*See, infra* Note 3].  Plaintiffs made no objection to the Court's June 5, 2025, rulings until now and the Motion does not even acknowledge this Court's clear statements that none of its comments amount to voiding the Supplemental Order.

34.     In fact, the conduct of Plaintiffs reflects that the Plaintiffs knew that this Court had not voided or set aside the Supplemental Order.  When the Plaintiffs' filed their new 2025 Turnover and Receivership Application the Motion and the Proposed Order contemplated and admitted the continued viability of the Supplemental Order.  The Motion (**Exhibit D** attached hereto) and the Proposed Order (**Exhibit E** attached hereto) both intentionally specified that all relief related to FSS's assets was "subject only to approval of the Trustee."

> 2024), No. 22-60043 (Bankr. S.D. Tex.).  Accordingly, the Application only seeks relief relating to the following (cumulatively, the Turnover Property):
>
> (i)     as to Judgment Debtor Free Speech Systems, LLC, all its assets (subject only to approval of the Trustee].

See, Application for Turnover. There is no other logical explanation for the inclusion of this caveat.

**G.      Plaintiffs Even Went So Far As To Attempt to Have FSS's Counsel Sanctioned in State Court for Representing the Supplemental Order Had Not Been Rescinded by the Bankruptcy Court**

35.      At the turnover hearing on August 13, 2025, Plaintiffs' counsel, Mark Bankston made an impassioned and largely false claim that the Supplemental Order had been declared void by the Bankruptcy Court.  He then repeatedly accused FSS and its counsel of intentionally lying to the court by claiming in the Jones Declaration that "[o]n September 25, 2024, Bankruptcy Judge Lopez entered another order supplementing his June Order, stating that as the date of his first order above all property of FSS was judicially deemed to have vested in the bankruptcy estate of Alexander E. Jones, Case No. 22-33553, as property of that estate pursuant to Section 541." He also proceeded to proclaim that he would be seeking to have FSS's counsel sanction, even referring to it as "litigation misconduct"[6], "disturbing"[7], and "disgusting"[8].

36.      Once the Proposed Order was entered, counsel for FSS was permitted a brief response that included a response to the Plaintiffs' sanctions argument for representing that the Supplemental Order was in place and a response that the sanctions motion conflicted with the Order just entered that acknowledged the continuing jurisdiction of the bankruptcy court over the FSS assets.

**H.      Plaintiffs Filed a Motion to Sanction Alex Jones and FSS Counsel for "Lying" to the Court That the Supplemental Order Was Still In Place**

37.      On August 18, 2025, Texas Plaintiffs filed "Plaintiffs' Challenge to Net Worth

---

[6]       August 13, 2025 Transcript, p. 6:3-4 (Bankston: "…I'm about to reveal to you litigation misconduct that you don't know anything about yet.").
[7]       August 13, 2025 Transcript, p. 6:10-12 (Bankston: "…And I'm going to reveal some things to you today that, again, I'm very disturbed about.").
[8]       August 13, 2025 Transcript, p. 15: 16-21 (Bankston: "To tell the Court, here is an order it's in force, this prevents judgment, that's ridiculous. That's disgusting. And it's being profited off of. We can't do much about this today except that you can conclude today, you can conclude that that statement is false.").

Declaration and Motion for Sanctions for False and Frivolous Pleading" (the "Motion for Sanctions"). Amazingly, just as Plaintiffs' counsel Mark Bankston proclaimed during the prior hearing, Texas Plaintiffs doubled down on their absurd claims that the Supplemental Order was "nullified" and that FSS's counsel was making misrepresentations to the court, and actually sought sanctions against counsel for Jones and FSS claiming that counsel misrepresented the status of the Bankruptcy Court's final, non-appealable Supplemental Order referenced in the Jones Declaration filed in the Travis County Suit.

38.     During the hearing on September 16, 2025, before Judge Maya Gamble Plaintiffs were permitted to argue for and sought sanctions against Jones and FSS lawyers for this claimed gross misrepresentation.   Plaintiffs suggested sanctions of $100,000.00 or more might be appropriate but after the Court characterized Jones and FSS counsel in an unfavorable light, no sanctions were imposed.

**I.       If the Supplemental Order Was Set Aside in February 2025, the Trustee Has Been Operating Assets Without Authority and With Full Notice of Plaintiffs Who Have Remained Silent**

39.     The Trustee has been operating the FSS assets of FSS with full authority of the Court.  It is Plaintiffs introduction of chaos by not going to the Court when it decided that the assets of FSS no longer were owned by the Trustee but making no complaint, filing motions and pleadings that supported the continuation of the Supplemental Order through August 2025, and taking actions and conduct wholly inconsistent with their now purported beliefs.  If Plaintiffs truly believed that the Supplemental Order was voided on February 5, 2025 how could that be squared by their opposite positions taken and their failure to assert their position.

**J.       No Party To the Bankruptcy Proceeding Has Ever Sought, By Any Motion or Pleading, To Have the Bankruptcy Court Set Aside The Supplemental Order**

40.     It was announced by the Bankruptcy Rule on February 5, 2025 that the pending

appeal prevented setting aside the Supplemental Order.  No action was taken by Plaintiffs.   In May

2025 the Texas Plaintiffs dismissed their appeal of the Supplemental Order. No action was taken

by Plaintiffs.  In June 2025 the same issue came before the Court and the Court reaffirmed its past

ruling, but no action was taken.  Remaining silent, even for strategic reasons, has consequences.

As this Bankruptcy Court noted, because Federal Rule 59(e) only allows *sua sponte* avoidance of

an order of a federal court for 28 days, there is no longer jurisdiction of the Bankruptcy Court to

do so *on its own*.[9]

### K.      There are No Extraordinary Circumstances Justifying Relief Under FRCP Rule 60(b)(6)

41.      Plaintiffs relief under Federal Rule of Civil Procedure 60(b)(6) is unwarranted.

Courts have long held that this particular provision can only be satisfied by the presence of

"extraordinary circumstances." Certainly not the "extraordinary circumstances" these Plaintiffs

created themselves.[10] The very high bar standard was addressed by the Supreme Court in *BLOM*

*SAL v. Honickman*, 605 U.S. 204 (2025) in a decision issued on June 5, 2025. In *BLOM*, plaintiffs

declined several opportunities to amend their complaint. Instead, they opted to stand on their

original pleadings and then appeal after the district court dismissed their complaint with prejudice

for failing to plead facts sufficient to support their aiding and abetting claim. The Second Circuit

affirmed the dismissal, holding that the district court imposed too high a foreseeability requirement

in dismissing the aiding-and-abetting claim, but concluding that the claim failed under the correct,

less exacting standard. Returning to the district court, plaintiffs moved under Rule 60(b)(6) to

---

[9]       *See*, June 5, 2025 Tr. pp. 47:24-48:7.
[10]      It was the Plaintiffs that dismissed their appeal and then did nothing. Even after the June 5, 2025 hearing
where the Court confirmed that the Supplemental Order was not voided, they did not seek any relief from the Court
by any means – no FRCP Motion under Rule 59(e);  no FRCP Motion under Rule 60(b)(6) before the dismissed appeal
was a final order after dismissal – nothing until 4 months after they dismissed their appeal did they make a half-hearted
suggestion that the final order they allowed to occur was "extraordinary circumstances" allowing reconsideration – it
is not.

vacate the already-affirmed final judgment, arguing that the district court should grant them an opportunity to file an amended complaint under the correct standard. The district court denied the motion, holding that the Second Circuit's clarification of the standard did not constitute "extraordinary circumstances" necessary to justify relief under Rule 60(b)(6). Plaintiffs again appealed, and the Second Circuit reversed, holding that the district court must balance Rule 60(b)'s finality principles and Rule 15(a)'s liberal amendment policy. The Supreme Court rejected the Second Circuit's approach, holding that "a party seeking to reopen his case and replead must first satisfy Rule 60(b) on its own terms and obtain Rule 60(b) relief before Rule 15(a)'s liberal amendment standard can apply." Relief under Rule 60(b)(6) requires extraordinary circumstances, and this "standard does not change when a party seeks to reopen his case to amend his complaint." Here, just as the Plaintiffs with full knowledge of the Court's position that the order had not been voided did nothing, the plaintiff in *BLOM* refused to amend and lost the right to do so.

42.     The Court emphasized the importance of Rule 60(b)'s finality principles, especially since there is no time bar for bringing a Rule 60(b)(6) motion. Too broad an interpretation of this catchall provision would circumvent the time limitations of Rule 60(b)(1)-(3). Litigation must end at some point, and "free, calculated, deliberate choices," such as plaintiffs' decision not to amend their complaint when given the opportunity, "are not to be relieved from." A strict interpretation of Rule 60(b)(6) is "essential to preserve the finality of judgments."

43.     Jones and FSS argue that assets "vested" in the Chapter 7 Estate of Alex Jones constitutes "property of the estate" or "arguable" property of the estate to which the automatic stay from seizures or attachment, and the like is prohibited.  11 U.S.C. §362(a).   Texas law is crystal clear that a turnover order directed at assets covered by the automatic stay is void -- not voidable. *York v. State*, 373 S.W.3d 32, 39-40 (Tex. 2012).  Even in the event of uncertainty as to whether assets are part of a bankruptcy estate, the automatic stay applies, and the Turnover Order is void.

*See Brown v. Chesnut (In re Chesnut),* 422 F.3d 298, 300 (5th Cir. 2005).  *See also Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 251 (5th Cir. 2006) ("...this Court has recognized the automatic stay's broad application and noted that such breadth reflects a congressional intent that courts will presume protection of property when faced with uncertainty or ambiguity.").

**III**.

**THE BASIS FOR JONES AND FSS NEW REQUEST FOR AN ORDER PROVIDING FOR A PUBLIC SALE OF THE FSS ASSETS BY CASH-ONLY,  SEALED BID-ONLY, AND SOLD ONLY AND TO THE HIGHEST CASH BIDDER**

> **A.      The Texas and Connecticut Plaintiffs' Bad Faith and Bad Acts Caused Loss of This Court's Confidence in an Auction Sale By the Trustee and a Seven (7) Month Delay in Resolving the Sale of the FSS Assets**

44.      The Connecticut Plaintiffs are not interested in achieving a sale of the FSS assets at the highest value, but only a sale that results in the destruction of the Alex Jones "brand" of InfoWars (*e.g.*, The Onion attempted purchase).  The Connecticut and Texas Plaintiffs (and the Onion) have announced to the trial Courts, to the media, and to this Bankruptcy Court through their conduct and their frequent statements, that their true motive is not to obtain the highest value, so that their just debt may be repaid, but to destroy the value of the Debtor and his assets and obtain a non-dischargeable debt that will prevent Alex Jones from exercising his freedom of the press and free speech rights.

45.      This Court is the gatekeeper on issues of ulterior motives and bad faith.  *Cont'l Ins. Co. v. La. Oil Ref. Corp.,* 89 F.2d 333, 337 (5th Cir. 1937).[11]  A creditor may not cast his vote for an ulterior purpose and expect to have it counted.  Ulterior motives have been held to include 'pure

---

11      "The judge in acting on a plan must investigate the good faith and purity of the acceptance, and the time of acquiring the claims so voting. Paragraphs (e), (f) (6), of section 77B, 11 U.S.C.A. § 207(e), (f) (6); Texas Hotel Securities Corporation v. Waco Development Co. (C.C.A.) 87 F.(2d) 395, 396."

malice, strikes and blackmail, and the purpose to destroy an enterprise in order to advance the interests of a competing business.'" *In re Save Our Springs (S.O.S.) All., Inc.,* 388 B.R. 202, 230 (Bankr. W.D. Tex. 2008). [12]

46.     The destruction of the InfoWars brand and Alex Jones ability to exercise his freedom of the press and free speech is an abusive ulterior motive:

> Ulterior motives which can constitute bad faith include "pure malice, 'strikes', blackmail, and ***the [destruction of an entity]*** in order to advance the interests of a competing business."

*In re Landing Assocs., Ltd.,* 157 B.R. 791, 802 (Bankr. W.D. Tex. 1993) citing *In re Federal Support Co.*, 859 F.2d 17, 19 (4th Cir. 1988).[13]   The Law in the Fifth Circuit is the same as In re Landing Assoc:

> *See Town of Belleair, Fla. v. Groves*, 132 F.2d 542, 543 (5th Cir. 1942). In *Groves*, a plan of reorganization was denied confirmation on the grounds that "special inducements" had been used to secure the acceptance of the plan by a group of creditors who were also bondholders of the debtor corporation. *See Groves*, 132 F.2d 542-43. The court found that the creditor-bondholders had been principally motivated by the existence of the "special benefits" which benefitted their bondholder interests rather than their interests as creditors, and that such ulterior motives breached the requirement of good faith. *Id.* at 543.[14]

---

[12]     citing *Insinger Mach. Co. v. Fed. Support Co. (In re Fed. Support Co.),* 859 F.2d 17, 19 (4th Cir. 1988), *citing In re Pine Hill Collieries Co.,* 46 F.Supp. 669, 671 (E.D. Pa. 1942), and *In re MacLeod Co., Inc.,* 63 B.R. 654 (Bankr. S.D. Ohio 1986).

[13]     Also citing *In re MacLeod Co., Inc.*, 63 Bankr. at 655 *and In re Featherworks Corp.*, 36 Bankr. at 463 (both citing *P-R Holding Corp.* with approval). In *P-R Holding Corp.*, the court stated that "when the [questioned activity] is in aid of an interest other than an interest *as a creditor*, [it] may amount to bad faith. . . ."

[14]     *In re Mangia Pizza Invs., LP,* 480 B.R. 669, 681 (Bankr. W.D. Tex. 2012): *citing In re Landing Assocs., Ltd.,* 157 B.R. 791, 807 (Bankr. . W.D. Tex. 1993) ("[W]hen the voting process is being used as a device with which to accomplish some ulterior purpose, out of keeping with the purpose of the reorganization process itself, and only incidentally related to the creditor's status *qua* creditor, section 1126(e) is rightly invoked.").   *In re Mangia Pizza Invs., LP*, 480 B.R. 669, 682 (Bankr. W.D. Tex. 2012) cited I*n re Allegheny Int'l, Inc.*, 118 B.R. 282 (Bankr. W.D. Pa. 1990), noted that the creditor in that case had purchased its claims only after the debtor's disclosure statement was approved, and then "almost exactly in the amount required to block the plan of reorganization." *Id.* at 289-90. In addition, in determining that the creditor's true motive was to "take over and control the debtor," the court noted that the two classes in which the creditor had purchased claims had "directly opposite interests with respect to the . . . litigation." *Id.*

*In re Dernick*, 624 B.R. 799, 808 (Bankr. S.D. Tex. 2020) instructs that "… a court must assess "the true interest being benefitted by the questioned activity" to determine whether the creditor is seeking to benefit itself in some way other than as a creditor acting on its claim.  Here, the determination is simple.  The "creditors" Plaintiffs are seeking a political "gun control" victory which Plaintiffs define as the destruction of the Alex Jones "brand" of InfoWars.  This is a the "ulterior motive" that is not permitted in the process of bankruptcy, whether reorganization or liquidation (at both stages, the Plaintiffs acted in bad faith on their ulterior motive).

47.     This conduct is not an allowed motive of a creditor, it is the motive of a political view bent on destruction of an opposed political view (*i.e.*, the conservative voice of Alex Jones by his political opponents, the far-left progressive movement seeking gun control, financed by such organization as Bloomberg and its supported foundations Every Town and The Onion) (the "Political Motive").  This Political Motive is not recognized in bankruptcy and cannot be rewarded by a federal court where the goal is wholly inconsistent with the rights of a legitimate creditor and the constitutional rights of the debtor.

48.     Because this Bankruptcy Court refused to permit the Connecticut and Texas Plaintiffs control of the bankruptcy auction and Trustee, the Plaintiffs *now oppose any auction* of the FSS assets.  The Plaintiffs have not sought a fair and equitable distribution of bankruptcy proceeds, but to control the bankruptcy assets to accomplish an abuse of the bankruptcy process.  Most critically, that abuse involves the prevention of a debtor of the right to future exercise constitutional rights – freedom of the press and free speech

49.     It is the sale proceeds that must then be applied to those Judgments as credits of the sale process, and depending on the outcome of the appeals, may even allow payment in full of one or both of these judgments.  Allowing the operation and protection of these assets has and will continue to be for the benefit of the creditors and the Jones Estate until the sale concludes, which

will not be the result if a State law execution sale is conducted or if the Connecticut Plaintiffs acquire the assets in other than through a fair, non-collusive process.[15]

50.     Although Connecticut Plaintiffs have been consistent in their demand *to destroy Jones' ability to earn an income from his exclusively-owned "persona" (his image, name, voice, etc.)* to silence his free expression of political and other opinions as an "on air" news media, not only that position is irrelevant to the economic interest of the bankruptcy system itself but also when it rises to the level of abuse of process that uses the bankruptcy system to accomplish an unconstitutional political goal (to take away Jones First Amendment rights).[16]   In fact, abuse of process conduct it is contrary to the bankruptcy fresh start, even where a claim is found non-dischargeable.  If the demands of Connecticut are to have its debt declared nondischargeable then it cannot, under any good faith application of ay bankruptcy policy approved by the Supreme Court or Congressional intent, be consistent with destroying the Debtor's ability to earn an income to pay its non-dischargeable debts.  This counter-intuitive position is the definition of "abuse of process" or its modern counterpart, "lawfare" - when a political agenda, as here, is the ulterior motive, defined as taking a lawful legal position only to advance a contrary political agenda.[17]

---

[15]     Although the Plaintiffs are free to acquire the FSS assets through a fair bidding process for cash, the stated purpose of the purchase is to destroy the value of the "Infowars" or "Alex Jones" brand.  This perverted motive is addressed below, and its impact on the claims allowance process.

[16]     *See, e.g.* the Fifth Circuit opinion in *Ridgeway v. Stryker Corp. (In re Ridgeway),* 973 F.3d 421, 427-28 (5th Cir. 2020):

     The Bankruptcy Code 'provides equitable powers for the bankruptcy court to use at its discretion.' *In re Sadkin,* 36 F.3d at 478-79; *see* 11 U.S.C. § 105(a). This [*428] includes the power to sanction a party.  *See Carroll v. Abide (In re Carroll)*, 850 F.3d 811, 816 (5th Cir. 2017); 2 Collier on Bankruptcy ¶ 105.02[6][b] (16th ed. 2020) ('[Bankruptcy courts] may sanction attorneys or their clients for abuses of process and other harms. The ability to sanction may take the form of civil contempt, sanctions not otherwise authorized in the Code or Bankruptcy Rules[,] or general damages.').  *Id.* at 428.

[17]     "Lawfare" is a weapon designed to destroy the enemy by using, misusing, and abusing the legal system and the media in order to raise a public outcry against that enemy. The term "lawfare" is also a clever play on words, a pun, and a neologism that needs to be deconstructed in order to explain the linguistic and political power of the term. https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1866448

Bankruptcy Courts have the jurisdiction to remedy and sanction abuse of process and lawfare, and do so.[18]

51.     Ultimately, to the extent that any part of these two Plaintiffs' Judgments is rendered final on appeal, the rights of Jones to *a reasonable effort to achieve a maximum credit against those Judgments* should include the Debtor's right to actually achieve the highest value reasonably obtainable from the sale process most reliably capable of achieving that result – a bankruptcy sale – uncontrolled by any outside source other than this Bankruptcy Court enforcing its own orders to sell.  A private cash only one time offer that goes to the highest bidder.  That simply private sale will assure the motives of Plaintiffs to destroy Alex Jones brand will not be rewarded.

## IV.
## CONCLUSION

**WHEREFORE, PREMISES CONSIDERED,** the Court should deny Plaintiffs their request for an order finding that the FSS assets are not property of the Chapter 7 Estate, and for such other relief which Movants shall be justly entitled.

Dated: September 30, 2025

*/s/ Shelby A. Jordan*
SHELBY A. JORDAN
State Bar No. 11016700
S.D. No. 2195
ANTONIO ORTIZ
State Bar No. 24074839
S.D. No. 1127322
Jordan & Ortiz, P.C.
500 North Shoreline Blvd., Suite 804
Corpus Christi, TX  78401

---

[18]     *Ridgeway v. Stryker Corp. (In re Ridgeway),* 973 F.3d 421, 427-28 (5th Cir. 2020). Christopher Martin Ridgeway and his former employer have waged scorched earth lawfare against one another… Id. at 423.  … The Bankruptcy Code "provides equitable powers for the bankruptcy court to use at its discretion." *In re Sadkin,* 36 F.3d at 478-79; *see* 11 U.S.C. § 105(a). This  [*428]  includes the power to sanction a party.  *See Carroll v. Abide (In re Carroll),* 850 F.3d 811, 816 (5th Cir. 2017); 2 Collier on Bankruptcy ¶ 105.02[6][b] (16th ed. 2020) ("[Bankruptcy courts] may sanction attorneys or their clients for abuses of process and other harms. The ability to sanction may take the form of civil contempt, sanctions not otherwise authorized in the Code or Bankruptcy Rules[,] or general damages.").  *Id.* at 427-428.

Telephone: (361) 884-5678
Facsimile:  (361) 888-5555
Email:   sjordan@jhwclaw.com
        aortiz@jhwclaw.com
Copy to: cmadden@jhwclaw.com
**CO-COUNSEL FOR ALEX JONES and FSS**

BEN C. BROOCKS
State Bar No. 03058800
Federal Bar No. 94507
WILLIAM A. BROOCKS
St. Bar No. 24107577
Federal Bar No. 3759653
BROOCKS LAW FIRM PLLC
248 Addie Roy Road, Suite B301
Austin, Texas 78746
Phone: (512) 201-2000
Fax: (512) 201-2032
Email: bbroocks@broockslawfirm.com
**CO-COUNSEL FOR ALEX JONES And FSS**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon all parties registered to receive notices via the Court's ECF noticing system on September 30, 2025.

_/s/ Shelby A. Jordan_
Shelby A. Jordan