```
                                                    ┌─────────────────────┐
                                                    │      EXHIBIT        │
1            UNITED STATES BANKRUPTCY COURT         │                     │
              SOUTHERN DISTRICT OF TEXAS            │        2            │
2                  HOUSTON DIVISION                 │ Alexander E. Jones; 22-33553 │
                                                    └─────────────────────┘
3    ALEXANDER E. JONES AND       )  CASE NO: 22-33553-cml
     OFFICIAL COMMITTEE OF        )
4    UNSECURED CREDITORS,         )  Houston, Texas
                                  )
5            Debtors.             )  Wednesday, October 1, 2025
                                  )
6    ─────────────────────────── )  1:03 PM to 1:59 PM

7

8                          HEARING

9        BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
            UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:

12   For Alexander E. Jones    SHELBY A. JORDAN
     and Free Speech Systems:  ANTONIO ORTIZ
13                             Jordan & Ortiz, PC
                               500 N Shoreline Blvd.
14                             Corpus Christi, TX 78401

15   For Alexander E. Jones:   BEN C. BROOCKS
                               Broocks Law Firm PLLC
16                             6207 Bee Cave Road
                               Austin, TX 78746
17
     For Christopher R.        JOSHUA W. WOLFSHOHL
18   Murray:                   Porter Hedges LLP
                               1000 Main Street
19                             Houston, TX 77002

20                             ERIN ELIZABETH JONES
                               CHRISTOPHER R. MURRAY
21                             Jones Murray LLP
                               602 Sawyer Street
22                             Houston, TX 77007

23   For Connecticut           KYLE J. KIMPLER
     Families:                 Paul, Weiss, Rifkind, Wharton &
24                             Garrison
                               1285 Avenue of the Americas
25                             New York, NY 10019
```

```
 1    For United States        HA MINH NGUYEN
      Trustee:                 Office of the United States Trustee
 2                             515 Rusk Street
                               Houston, TX 77002
 3
      Court Reporter:          UNKNOWN
 4
      Courtroom Deputy:        UNKNOWN
 5
      Transcribed by:          Veritext Legal Solutions
 6                             330 Old Country Road, Suite 300
                               Mineola, NY 11501
 7                             Tel: 800-727-6396

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Proceedings recorded by electronic sound recording;

25    Transcript produced by transcription service.
```

```
 1          HOUSTON, TEXAS; WEDNESDAY, OCTOBER 1, 2025; 1:03 PM

 2                          (Call to Order)

 3          THE COURT:  Okay.  Good afternoon.  This is Judge

 4   Lopez.  Today is October the 1st.  I'll call the 1:00 p.m.

 5   case in the Alex Jones matter in connection with an

 6   emergency motion to confirm that the automatic stay does not

 7   apply to assets related to Free Speech.  Why don't I take

 8   appearances in the courtroom and then somebody can tell me

 9   why we're here?

10          MR. JORDAN:  Your Honor, Shelby Jordan, and my

11   partner Alex -- I'm sorry, my partner Antonio Ortiz on

12   behalf of Alex Jones, Debtor, and non-debtor FSS, Free

13   Speech Systems and Mr. Ben Broocks.

14          THE COURT:  Okay.  Good afternoon.  Good to see

15   everyone.

16          MR. WOLFSHOHL:  Good afternoon, Your Honor.

17   Joshua Wolfshohl and Erin Jones on behalf of Christopher

18   Murray, the Trustee who's also here.

19          THE COURT:  Thank you.

20          MR. NGUYEN:  Good afternoon, Your Honor.  Ha

21   Nguyen for the U.S. Trustee.

22          THE COURT:  Thank you for being here, Mr. Nguyen.

23   Anyone else wish to make an appearance?  Okay.  Somebody

24   tell me why we're still asking these questions about whether

25   -- what is -- what's going on here.  I thought I was clear
```

1   the last time, but it clearly -- Mr. Murray, your side filed

2   a motion, so, maybe you can tell me what's going on.  And

3   Mr. Kimpler, I can hit five star.  Oh, I'm sorry, I forgot.

4        MR. MURRAY:  It was not filed by the Trustee, Your

5   Honor, just to be clear.

6        THE COURT:  No, I know, but I'm just -- maybe

7   y'all can tell me.  Mr. Kimpler?

8        MR. KIMPLER:  Yes.  Hi, Your Honor.  It's Kyle

9   Kimpler from Paul, Weiss on behalf of the Connecticut

10   families.  The motion was filed jointly by the Connecticut

11   and the Texas families, and I'm happy to take the lead in

12   explaining why it was filed and why we're here today.

13        THE COURT:  Well, I read the papers.  The question

14   is, what's unclear?  What remains unclear?

15        MR. KIMPLER:  Well, from our perspective, Your

16   Honor, nothing remains unclear.  We think that you have very

17   clearly told us on two occasions in February and in June,

18   that the families were, in fact, authorized to pursue

19   whatever rights they may have in state court.  Both myself

20   and Mr. Rosenberg, when we were here in June, told you we

21   intended to do exactly that.  At no point in time did the

22   Court or Mr. Jones raise the problem that actually state

23   courts have no jurisdiction over FSS assets, that the

24   automatic stay applies to FSS assets, or that we would be

25   violating the automatic stay.  All of those arguments are

1   now being raised by Mr. Jones.

2            THE COURT:  Right.

3            MR. KIMPLER:  These are fringe arguments.  These

4   are the core arguments he's raising in state court.  And so,

5   we are here today to, one, get clarity on that.  And part of

6   that is because I don't take the accusation that I'm

7   violating the stay lightly.  That's an issue I obviously

8   feel incumbent to come to the Court and get clarity right

9   away.  You know, I do think it's telling that these

10  accusations are being made in state court and that the

11  Debtor who has a conviction that the stay is being violated

12  has not come to Your Honor.  So, we don't really believe

13  there is anything unclear.  I'd rather not have to be here

14  today, Your Honor, seeking this, but unfortunately --

15           THE COURT:  It is what it is.  I'm okay.  I just

16  want to make sure that crystallized the issue.  Just since

17  we've been here for a while, Mr. Murray, have you made a

18  determination on the equity yet, and what you're going to do

19  with it?

20           MR. MURRAY:  Not yet, but we're leaning toward

21  abandonment.  We've gotten minor indications of interest,

22  but no one's made an offer.

23           THE COURT:  Can you lean in October?

24           MR. MURRAY:  Yes, sir.

25           THE COURT:  Okay.  Thank you.  I just want to --

1    we've just got to get to an answer on that.  Okay.  Why

2    don't I ask the Jones side to tell me how the automatic stay

3    applies in this case, and we're just talking bankruptcy law,

4    facts won't matter.  We're just talking law.

5           MR. BROOCKS:  Your Honor, to be more precise about

6    why we're here, as you remember, in February of this year we

7    had a hearing.  They asked you to approve the settlement and

8    you did not approve the settlement.

9           THE COURT:  I did not approve the settlement.

10          MR. BROOCKS:  And lots of words were exchanged,

11   and I think there was frustration about the failure to

12   actually move the process along.  And then in June we filed,

13   or May, end of May, we filed, our side filed, a motion to

14   reconsider, which we told you that the -- let me put this up

15   on the screen if I may, Your Honor.

16          THE COURT:  It's okay.  Let's just talk.

17          MR. BROOCKS:  Is that okay?

18          THE COURT:  You're asking me to reconsider an

19   order?  Well, we -- no, not necessarily.  We wanted to bring

20   to your attention that what you had done was not proper,

21   that the Supreme Court of America said that when --

22          THE COURT:  Can you get close to a mic?

23          MR. BROOCKS:  -- when the matter is on appeal, the

24   district court, as the Texas Plaintiffs said, appeals your

25   supplemental September judgment.

1          THE COURT:  Right.

2          MR. BROOCKS:  It divests this Court of any

3   authority to do anything with that judgment, and you agreed

4   with that.

5          THE COURT:  I agree with that.

6          MR. BROOCKS:  Yeah, but so when --

7          THE COURT:  What does the order say?

8          MR. BROOCKS:  Well, I'll show -- that's what I was

9   going to show you.

10          THE COURT:  Well, let's just read it.  It says,

11   "Effective as of the date of this pursuant to 349(b), all

12   property of the estate shall be deemed to have vested in the

13   estate as property of the estate."  So, it's deemed as

14   property of the estate, but that doesn't mean it's property

15   of the estate.

16          MR. BROOCKS:  Well, it's -- well, the order that

17   you signed said, "All property of the estate shall be

18   vested."

19          THE COURT:  "Shall be deemed to have vested."

20          MR. BROOCKS:  Well, that was the whole point.

21   That's when the Texas Plaintiffs went back to the Texas

22   court.

23          THE COURT:  I know, but let's just -- I'm just

24   saying that's what the words say, "Shall be deemed to have

25   vested."  I can't -- I don't have authority, nor does any

1    bankruptcy judge in America, to make something property of

2    the estate.  Not one.  It is what it is.  The code says what

3    it is.  It is what it is.  "Shall be deemed to have been

4    vested as property of the estate and shall be under the

5    control of the trustee," so -- and then Paragraph 2 says,

6    "The trustee is authorized to operate the business for a

7    period not to exceed a year," right?

8            And that order was signed on September 25, 2024.

9    Let me just tell you the way I read my order because I know

10   exactly what I was thinking, and maybe it's helpful if I

11   just provide clarity.  Section -- upon the filing of a

12   bankruptcy case, property of the estate is determined,

13   right?  You can also take a look sometimes upon conversion,

14   but it's whatever interest the debtor had, and that interest

15   is determined as a matter of state law.  The automatic stay

16   under Section 362 protects any act you take to go against or

17   to collect or to exercise control over property of the

18   estate.

19           So, something has to be property of the estate,

20   but 541 says what it is, right?  So, what was happening in

21   this order, and if everybody remembers back when this was

22   happening -- well, I don't want to get into that, but it was

23   -- there were a lot of moving pieces there.  In terms of

24   what -- somebody could go into it or not.  "This put the

25   property of Free Speech, and it shall be deemed to have

1   vested."  That's the most that I could do.  I cannot convert

2   something into property of the estate, so the automatic stay

3   can never go into effect with respect to that.

4         Normally what happens in bankruptcy, and Mr.

5   Shelby knows this, is that the bankruptcy judge sometimes

6   can extend the stay, or do 105, or use some combination of

7   362 and 105 over that, but that usually works.  You've got

8   to get a motion on that, and the Court would issue a

9   temporary -- essentially a preliminary injunction or an

10  injunction enjoining any actions against a non-debtor,

11  because sometimes the actions against the non-debtor

12  essentially impact property of the estate.  I never signed

13  any of those orders.

14        Technically, the Trustee was authorized to operate

15  for a period of a year, until September 25th.  That has

16  expired, so the Trustee can't even operate under my order.

17  This has never been property of the estate.  It was treated

18  as if it was, and it was done for a specific purpose.  Mr.

19  Broocks, you weren't here during that time, and I don't hold

20  it against you, and I got what the words are, but the,

21  "Shall be deemed to have vested," right?  It doesn't make it

22  541, and I don't have authority.  No one does under 541 to

23  convert something into property.  It's the only way the

24  automatic stay would apply, and the automatic stay would

25  only apply if I issued -- well, it just never applies.

 1              Normally, what you would be looking for is an

 2      injunction over assets -- over non-debtor assets.  This is

 3      an easy answer, and it's for that same reason, quite

 4      frankly, that when the settlement came across my way where

 5      the -- I believe it was the Texas families and the

 6      Connecticut families reached a deal, and they wanted an

 7      allowed claim against FSS in the bankruptcy case, I said I

 8      don't have authority to do that.  I don't have authority to

 9      settle any claims because I don't have jurisdiction over

10      that.  And so, this was very specifically to try to see if

11      one could, quite frankly, stabilize things that were going

12      on at that time in September 2024, which were -- there were

13      a lot of kind of moving pieces and allegations that were

14      being made about stuff that was happening outside the court,

15      to stabilize this, see if you could get to a sale.  Maybe

16      parties could agree to maximize value.  This order was

17      entered.  But at a max, you can read 541.

18              So, it's -- this is just an easy answer.  The code

19      provides the answer, and unless somebody is going to point

20      to me to a section under 541, this gets really easy.  I can

21      deem something to be treated as property of the estate, so

22      Mr. Murray has the authority to go exercise it and try to go

23      sell it.  But what I said in the last hearing was I'm not

24      authorizing any sales anymore.  So, the effect of this order

25      was to void it because I'm not approving any sales.  And so

1    -- but now, we're well beyond September 25, 2025, so Mr.

2    Murray has nothing to do with Free Speech anymore.  I mean,

3    he still owns the equity.  Well, holds it, you know, in

4    terms of his rights as the Trustee, I should say.

5           And I've asked multiple times if anybody wants to

6    buy that.  They can.  It's not going to be free and clear,

7    but you can buy it.  This is -- I went back and read the

8    order because I was confused about what we were doing here.

9    I don't know what is said in the state courts, and I really

10   don't want to get into that.  I can just tell you as a

11   matter of pure bankruptcy law, that 541 does not apply to

12   any assets that are owned by Free Speech, and I don't want

13   to get into what Free Speech actually owns, what's happening

14   in the state courts, what is said one way or the other.  I

15   can just tell you this order was supplemented a dismissal of

16   a debtor.

17          So, Free Speech is a non-debtor.  And I said at

18   the time, Mr. Kimpler came to me, Your Honor, we're just

19   going to start the clock and people are going to start to

20   have their collection remedies.  We all knew that was going

21   to happen.  Connecticut families weren't too happy about the

22   decision I made to dismiss the case because they knew that

23   the Texas courts had issued some orders that arguably gave

24   the Texas parties some rights.  But there's nothing in here

25   that makes it 541.  And there's no case that anybody can

1    cite to me.  There's no law that anyone can cite to me that

2    converts a speaker or a microphone or a camera that is in

3    the name and is owned by Free Speech into property of the

4    estate.  Not one.  No one can cite to that.  And that's what

5    I'm being asked to confirm today.  And if that's what I'm

6    being asked to confirm today, that's the answer it's always

7    been.  This order never changed that.  The words were used

8    carefully here.  I don't know what law anyone is citing to

9    me.

10            MR. BROOCKS:  I'm going to -- may I respond?

11            THE COURT:  Please.

12            MR. BROOCKS:  Yes.  So, Your Honor, I think that

13   my memory and understanding is different from reading the

14   transcripts.  But when you issued your June order called the

15   cash order, the question became what happens to the assets.

16   You said you gave -- I don't know whether you deemed, I'm

17   not sure I follow the distinction between deemed and doing.

18            THE COURT:  I can't deem anything under 541.

19   That's what I mean.  I can't do it.  I can't convert

20   something into 541.

21            MR. BROOCKS:  But, Your Honor, I'm not arguing --

22            THE COURT:  That's what I mean.

23            MR. BROOCKS:  -- with you.  I'm simply telling you

24   what you did.

25            THE COURT:  No, no, no.  But my point is you're

1   asking me, you didn't understand the distinction.  And then

2   I -- that's the distinction.  If somebody is going to ask me

3   whether the automatic stay applies, I've never issued an

4   injunction.  I've never said the stay.  I don't recall ever

5   saying the automatic stay would apply to that, and I've

6   never issued an injunction over any non-debtor assets.  Nor

7   has anyone ever asked me to that I can recall.

8          I understand, and that's why I'm trying to just

9   stay in my lane and not get into what is being argued in

10  state court.  I can just tell you I don't think this order,

11  quite frankly, even applies anymore because one goes with

12  two.  And two says it's not to exceed for a year absent

13  further order of the Court.  And I know there's no way I do

14  that.  I'm just telling you where it is.  Free Speech has

15  whatever rights it has, Mr. Broocks.  And you can -- I know

16  you've mentioned to me that you've had First Amendment

17  arguments.  I've never blocked Free Speech from the

18  opportunity to go make whatever arguments they wanted.

19  Wanted to go to the Supreme Court of the United States,

20  never, never, never prohibited any lawyers that Free Speech

21  wanted to hire, Alex Jones wanted to hire.

22          I've never prevented any arguments from anyone in

23  any court, whether in Connecticut or in Texas.  And I have

24  no idea where things stand now.  So, I don't want to get

25  into what was said to some court versus another court.  I

1    can just tell you what this order does.  And there's nothing

2    in this order that could make the automatic stay apply.  And

3    if this is the basis for the automatic stay applying, I can

4    assure you the automatic stay doesn't apply.

5              MR. BROOCKS:  Your Honor, and I accept that, but I

6    just would like to explain why we got here from our

7    perspective.  If could you just give me two minutes?

8              THE COURT:  Oh, yeah, absolutely.  I'll stay

9    quiet.

10             MR. BROOCKS:  But when you entered the June order,

11   the September order, I'm going to put this up on the screen

12   if I can, because it's much more helpful to talk about it.

13   How do I do that?  Do I have permission to?

14             THE COURT:  Yeah, sure.  Rosario, can we give --

15   which form of tech are you using?

16             MR. BROOCKS:  I've got PowerPoint.

17             THE COURT:  Are you using -- no, I'm saying are

18   you using GoTo Meeting or what?  Wait.

19             MAN 1:  We have both up.

20             MR. BROOCKS:  Yeah, GoTo Meet.  We have GoTo Meet.

21             THE COURT:  Okay.  Just tell me where you are.

22   Which parson you are, because I going to have to give you

23   the presenter.

24             MR. BROOCKS:  Oh, Ben Broocks.

25             THE COURT:  Huh?

```
 1              MR. BROOCKS:  Ben Broocks.

 2              THE COURT:  Oh, Ben Broocks.  You got it.

 3              MR. BROOCKS:  Let me see right here.  So, how do I

 4    get it up on the screen?

 5              THE COURT:  There's a William Broocks and a Ben

 6    Broocks.  I've got Ben Broocks.

 7              MR. BROOCKS:  Yeah.

 8              THE COURT:  Okay.

 9              MR. BROOCKS:  While he's doing that, Your Honor,

10    what I'm going to show you is the -- from a history

11    standpoint, the June order of 2024 that you signed gave the

12    cash to the Trustee.

13              THE COURT:  Mm hmm.

14              MR. BROOCKS:  The Plaintiffs, the Connecticut

15    Plaintiffs and the Texas Plaintiffs, were not aligned at

16    that time.  They were opposing one another.

17              THE COURT:  That's correct.

18              MR. BROOCKS:  And the Connecticut Plaintiffs came

19    in with the Trustee and said -- and basically said to Your

20    Honor, well, Your Honor, you give them the cash, the

21    Trustee, but Alex Jones can still run the assets.  And I've

22    got your June or September of 2024 transcript where you

23    said, listen, my intention all along, and I've got it, I can

24    show it in a minute, was to put everything in the estate of

25    Alex Jones under the control of the Trustee.
```

1          THE COURT:  Mm hmm.

2          MR. BROOCKS:  That is why the Texas Plaintiffs

3     appealed.  They appealed because you --

4          THE COURT:  Yeah.  They didn't give me a chance to

5          MR. BROOCKS:  Sorry?

6          THE COURT:  Yeah.

7          MR. BROOCKS:  So, now we come to the September

8     order, which you entered, and I'm -- I don't know.  Let me

9     see.

10         THE COURT:  I agree with you 100 percent.

11         MR. BROOCKS:  But the point, though, is that the

12    Texas Plaintiffs appealed your September order and to the

13    district court.  What were they appealing?

14         THE COURT:  I have no idea.  That's what I'm

15    saying, I don't get to talk about those things.

16         MR. BROOCKS:  Well, I'm going to show you what

17    they were appealing.  They were appealing -- the notice of

18    appeal that they filed.

19         THE COURT:  Okay.

20         MR. BROOCKS:  It says -- it specifically says --

21    I've got to put this up on the screen.  Drag it to the

22    right?  I'm going to drag this up there.  You do it for me,

23    please.  That document right there up on that screen.  I'm

24    just going to walk over here.

25              So, their notice of appeal -- where's the cursor?

1    I apologize.  I wasn't expecting to do this, but this is

2    something different.  So, let me -- bear with  me to get to

3    it.  I want to scroll that down until I say stop.

4         THE COURT:  What document is this?

5         MR. BROOCKS:  This is just simply -- I filed in a

6    different court, but I quoted what you said in the -- what

7    they said in their notice of appeal.  Keep going, keep

8    going, keep going, keep going.  Going, going, going, going.

9    Go ahead.

10        THE COURT:  Yeah.

11        MR. BROOCKS:  More, more, more.  More.  Go.  Keep

12   going.  Keep going -- you're going to -- Ben, you're going

13   to the top of the document.  So, we're going to go to the

14   top.  Okay, stop right there.  Go a little bit.  You went

15   too far.  I'll tell you when to stop.  Keep going.  Go to

16   Page 9.  Right there.  Up there, it's in black.  There's

17   such a lag on there, I can't tell.

18        MAN 1:  Yeah, sorry.

19        MR. BROOCKS:  This is the question that the Texas

20   Plaintiffs posed to the district court.  "Did the bankruptcy

21   court err, and without notice it entered in Docket Number

22   121, pretty much after dismissing, that retroactively vested

23   all property of former Debtors', Free Speech, into the

24   bankruptcy papers."  I don't see the word deemed; it says

25   vested.  Now, the --

```
 1              THE COURT:  I didn't write that one.

 2              MR. BROOCKS:  No, I know that.  I know that.

 3              THE COURT:  Okay.

 4              MR. BROOCKS:  But that's what the understanding

 5     was because if you --

 6              THE COURT:  No, no.  That wasn't my understanding.

 7     That -- I don't have control of it.  No one filed a motion

 8     for reconsideration on that.  I would have been more than

 9     happy to explain what that meant at that time.  But once

10     things get appealed, I don't touch them anymore, and I don't

11     read them anymore.  I lose jurisdiction immediately, and so

12     I don't comment on -- I don't comment.  It would be highly

13     improper for me to comment on what was happening.

14              MR. BROOCKS:  But, Your Honor, the point, though,

15     was that if you did not transfer the assets, that was the

16     whole purpose of the U.S. Trustee's making comments to you.

17     How can Mr. Murray have spent since September trying to sell

18     assets he didn't own?  How can he do it?  You can't sell

19     assets you don't own, and the distinction between, I deem

20     these to have been vested, versus they are actually vested

21     is a distinction that I'm not familiar with.  You can't sell

22     something that you don't own.

23              THE COURT:  No, I think Alex Jones owns Free

24     Speech.  Alex Jones can go tell somebody to go sell assets

25     in Free Speech.  That's the point that I've been trying to
```

```
1    make -- well, I would have made it years ago.  Of course he
2    can, he owns the business.  He owns Free Speech.  If he
3    wants to go sell assets of Free Speech, he can -- the
4    Trustee now sits there in the shoes.  The Trustee can always
5    go tell Alex Jones -- Alex Jones can, in his capacity as
6    trustee over the Jones estate, he owns the business.  He
7    wants to go sell something; he can tell somebody to go sell
8    it.  That's the point that I was trying to, by the deemed,
9    to make.
10           But it doesn't make it property of the estate.
11   And I can't comment on what people said, nor am I going to
12   ask them what they did.  They certainly had the right to go
13   file what they wanted, but I think there's an easy answer to
14   that question.
15           MR. BROOCKS:  Your Honor, but if I may just
16   continue because I'm deeply confused now because for the
17   last -- you know, since September of last year, Mr. Murray
18   has been running FSS trying to sell it, and in the hearing
19   we had in June of this last year, just June, the discussion
20   and colloquy back and forth was, what about a future sale?
21   What are we going to do?  And you -- and not just to the
22   equity.  You were talking about the assets, and I can show
23   you a chapter and verse.  How do you sell assets under an
24   order that doesn't give Mr. Murray the ability to actually
25   sell because you said, and I can show you where you said it,
```

1    if we do it again.  I don't want to do an auction, but I'm

2    going to have to be involved.  There's going to be cash and

3    lots of complications and things.  This is -- I'm bewildered

4    that you would say --

5              THE COURT:  How are you bewildered?  I'm just

6    explaining it to you.  No one has -- I don't think anybody -

7    - have I said anything inconsistent with what I've said

8    before?

9              MR. BROOCKS:  I believe you have.

10             THE COURT:  I don't -- we'll just agree to

11   disagree.  I don't want to get into the back and forth about

12   this, but maybe we'll just agree to disagree, but none of

13   what I'm saying is inconsistent.  Christopher Murray is the

14   Trustee over Alex Jones' estate.  Alex Jones owns FSS.  If

15   he wants to go sell the assets, he can.  I tried to create a

16   forum which would maximize value for everyone and to create

17   a stable environment because there were concerns at the

18   time, before you got involved, Mr. Broocks, where there was

19   concerns about people coming in and raiding the place and

20   raiding the cash, and then there were concerns about the

21   government taking over.

22             There were allegations.  This is all stuff that

23   was said in the hearing, so we created -- I created a forum

24   in which it was deemed to have vested in the estate.  Mr.

25   Murray controlled the cash so that we can stabilize this,

1    and folks can get paid and get to where it goes.  But it's

2    never property of the estate.  I don't have the authority to

3    go do that under the bankruptcy bill.

4              MR. BROOCKS:  Judge, if you --

5              THE COURT:  And they did -- they thought.

6              MR. BROOCKS:  -- weren't protecting them by that,

7    then how -- if you were concerned about people coming in and

8    grabbing assets, the only mechanism that you would have had

9    to protect that was an automatic stay.

10             THE COURT:  No, that's not bankruptcy 101.  I

11   can't do that.

12             MR. BROOCKS:  But you did it.

13             THE COURT:  No.  It doesn't make it subject to the

14   automatic stay anyway.

15             MR. BROOCKS:  But, Your Honor, that's the only way

16   one could protect the assets for other people, the creditors

17   and the government, the litany of people who --

18             THE COURT:  That's what I'm saying.  You're just

19   not versed in bankruptcy law.

20             MR. BROOCKS:  I'm versed enough to know that --

21             THE COURT:  No, you're not because people issue

22   injunctions all the time in bankruptcy that have nothing to

23   do with the automatic stay.  Look --

24             MR. BROOCKS:  Yes, sir.

25             THE COURT:  -- you can disagree with that, but

1    none of what everybody is saying makes law.  And I'm not

2    trying to stay law.  I'm trying to stay consistent with what

3    I have said, and those words mattered.  And we can't read

4    out, "Shall be deemed," out of the order.  And we can't also

5    read that he's authorized to operate the business of FSS at

6    a time which we have removed the CRO and there was

7    uncertainty that he could operate for a year, and that has

8    lapsed.  Mr. Jordan, what can you tell me?

9            MR. JORDAN:  Your Honor, well, first of all, I can

10   tell you --

11           THE COURT:  I don't mean to sound disrespectful

12   that someone isn't versed in bankruptcy law, but I can't

13   make the automatic stay apply.  It either does or it

14   doesn't.  And I understand there was a statement of issue on

15   appeal.  It's the first time -- it is literally the first

16   time that I have read it.  No one took this issue up.  I

17   don't recall.  If I do, someone will correct me.  I don't

18   recall someone filing a motion for reconsideration where we

19   had a colloquy on this point.  It was appealed to which I

20   stopped reading at that point.

21           MR. JORDAN:  Your Honor, if I might address.

22   First of all, this is a focus that I've never had in this

23   case, and it's not your fault.  It says what it says.  But

24   let me just address it from the standpoint of what kind of

25   practice I've been involved with.  First of all, if you

1    recall, as soon as you entered the order, it was overlapping

2    with an attempt to get a turnover order and a turnover in

3    state court.  That was removed to this Court and effectively

4    stayed those actions.  At that point, no one raised the fact

5    that, no, there's no automatic stay.  Anybody can go get any

6    of the property they want.  Nobody said that, and I'm only

7    saying it because that was not the approach.  And then --

8          THE COURT:  I'm not -- that's what I'm saying.

9    I'm not trying to get into why people did things and why

10   they didn't do it.  I'm not mad that you're arguing that you

11   thought it applied.  I understand that, and I'm not upset at

12   anyone.  What I am saying is it's not property of the

13   estate, and it's not subject to the automatic stay.  It's

14   just not, and this is a non-debtor asset.

15         And again, I don't want to get into specifics

16   about what assets are specifically held by the non-debtor,

17   but whatever assets are held by Free Speech are -- people

18   have rights under state law, but then parties, I think you

19   all have the right to go appeal as well.  And I have no idea

20   where those matters are, but they're not subject to the

21   automatic stay.  I don't mean to come across as anything

22   other than just stressing -- I understand, you read

23   transcripts.  They read matters on appeal.  I can't convert

24   something that's not property of the estate into property of

25   the estate, nor can I say the automatic stay applies to

1    something where it doesn't, and I haven't issued kind of a

2    105, what we would call a 105 extension to non-debtor that

3    you normally would see in these instances to protect assets

4    against the non-debtor.

5           I won't do it either, but no one has asked that.

6    So, it's the only kind of wrinkle.  Then I go back, and I

7    realize, well, maybe Murray still has the authority to go

8    operate and Murray doesn't.  Then I said, Murray, I don't

9    even want you selling this stuff anymore.  Tell me what you

10   want to do with the equity.  I don't -- again, I'm not -- I

11   don't want to change -- I got it, people write transcripts

12   and maybe we need to just ask me what to construe the order,

13   but that's --

14          MR. JORDAN:  Well, Your Honor, if I might just --

15   let me say one thing about the conduct of the parties with

16   respect to that order.

17          THE COURT:  Sure.

18          MR. JORDAN:  Everybody treated that order

19   respectfully.  Everybody did not believe they had a right to

20   go grab assets that were in the exclusive jurisdiction of

21   the bankruptcy court.  I would read -- let me read this to

22   the Court, the Supreme Court of the United States.

23          THE COURT:  Mm hmm.

24          MR. JORDAN:  "The temporal line of demarcation is

25   not impervious, and a legal claim that accrues post-petition

1    can be deemed property of estate if it is sufficiently

2    rooted in the pre-petition past."  And I'm only reading --

3    quoting the Court from Segal v. Rochelle, 382 U.S. 375.  And

4    so, the concept that you are -- and here's the dilemma if I

5    might say.  I don't doubt at all that exactly what you said

6    you intended was that you were not creating property of

7    estate.  I'm not arguing with that at all because you're the

8    author.  You know what you intended.  You did it.

9         And within the process that was employed

10   subsequent to that, the process being parties all had to

11   deal with the Trustee.  The Trustee has spent over $2

12   million trying to sell the property.  The thing that was

13   created, the parties to this estate, all treated it as the

14   property was transferred and vested, and I know the word is

15   deemed vested, as property of estate.  So, my first request

16   is this, I -- quite honestly, I'm caught a little flat-

17   footed.  I didn't -- I never focused on that word being

18   something that was -- I mean, this is the first time I think

19   the Court has said this, and it's clear that you recall what

20   you meant, but --

21        THE COURT:  It's also what I said, right?  I think

22   there's a difference.  Textualism would tell me.  Sometimes

23   you just look at the words, and the words mean what they

24   mean.  In other words, I'm enforcing the order as written.

25   You know, it's -- my recollection is consistent with what I

1    wrote, and there's a lapse in time.  Like Murray has -- you

2    cannot -- there's no operation of the business anymore.

3    That business -- I don't know this for sure, but I suspect

4    Alex Jones himself is now -- whoever is in charge of FSS

5    will operate FSS.

6             MR. JORDAN:  Well, of course, it has been treated

7    as both the ownership and as the assets vested in the

8    estate.  So, everything has been done through the Trustee

9    and through the estate since the order was entered.  And

10   what I'm suggesting is that, it's not that your memory is

11   not correct.  What I'm suggesting is that there has been a

12   process in place that everyone involved with these assets

13   has appreciated, that it was deemed property of the estate,

14   and that's what it would be.

15            Because that -- the case law, when you read the

16   phrase, deemed property of the estate, they all deal with

17   whether or not it has a close relationship with the Debtor -

18   -

19            THE COURT:  Mm hmm.

20            MR. JORDAN:  -- whether it is rooted in the

21   Debtor.  And we're talking about a single-member LLC being

22   in bankruptcy with the single member.  And so, it fits the

23   other things.  What I would -- what I'd ask the Court to do,

24   only because this revelation is going to create the

25   existence of the property of the estate that was deemed by

1    the supplemental order, has been a major topic of whether or

2    not you had set the supplemental order aside.  In your

3    February rulings, the state court has been told that you

4    voided it while it was on appeal.  And they said that that -

5    -

6              THE COURT:  Oh, I have no idea what they said.

7              MR. JORDAN:  Well, but I say -- here's the

8    important --

9              THE COURT:  No, no, I got it.  I got it.  It could

10   cut both ways, in other words.  People are making statements

11   to state courts that may or may not be accurate both ways.

12             MR. JORDAN:  But the problem was that when we told

13   the state court that you did not, for instance in the order

14   of February of this year, that you did not void the

15   supplemental order.  In fact, you found in that February 5th

16   transcript, you say, wait a minute, let me go back, this is

17   on appeal.  And I said, yes, sir, it is.

18             THE COURT:  Mm hmm.

19             MR. JORDAN:  Yes, Judge, it is.  And you said,

20   well, I have no jurisdiction.  I can't do this.  Now, you

21   also repeated that in June --

22             THE COURT:  Mm hmm.

23             MR. JORDAN:  -- in great detail.  The problem that

24   is happening right now is that we were -- that sanctions

25   were sought against us for saying that, no, on February 5th,

1    the Court didn't -- they claimed a $100,000 sanction for us

2    telling the state court judge that you didn't void it on

3    February 5th, showing the quoted language.  So, all I can

4    suggest right now today is that as a result of now I hear

5    what your focus was, I would appreciate, and we need some

6    time to address this single issue.  Because you're correct

7    that the proper operations expire.

8         THE COURT:  What do you mean by the single issue?

9    Just so I'm clear.

10        MR. JORDAN:  Well, the effect of your order now

11   saying it was never a property of the estate, it was never

12   subject to an automatic stay, it was always subject to any

13   creditor wanting to come grab it and lien with it, that's so

14   contrary to the practice that we have spent.

15        In fact, I don't know how we undo that because the

16   estate, I would assume, will owe for the attorney's fees and

17   all the expenses they pay.  I'm not sure what happens if

18   that's --

19        THE COURT:  But again, I'm being really clear.  I

20   signed an order authorizing the trust to operate FSS, and

21   I've also said that the Trustee had ownership of the asset,

22   of the equity, and you could always tell the equity to go

23   sell, right?  And so, I don't know -- what I have in front

24   of me is a motion to confirm that the automatic stay doesn't

25   apply.  That's the only matter that's before me.  I don't

1    have any other request for relief before me, and that relief

2    is granted.  I'm just confirming it, but I'm providing some

3    additional reasoning behind it, because I always thought

4    that was the answer, and when I said the voiding of the

5    order, we were always talking about selling assets, like,

6    you know, the extent that people are seeing within this

7    order that you could go sell stuff.

8            I don't want another sales order.  If somebody

9    puts up a lot of money and cash is king, and we're not

10   talking about contingencies or allowed claims, I think it

11   benefited everybody to see if you could sell that asset.

12   It would benefit Jones' estate, quite frankly.  That was --

13           MR. JORDAN:  Well, Your Honor, at the June hearing

14   where all the parties were present --

15           THE COURT:  Mm hmm.

16           MR. JORDAN:  -- including the Trustee and counsel

17   --

18           THE COURT:  Mm hmm.

19           MR. JORDAN:  -- this issue was raised about the

20   viability of the supplemental order.

21           THE COURT:  Mm hmm.

22           MR. JORDAN:  And the reason it was being raised

23   was that they were seeking access to the assets, and the

24   issue that we asked to address, and the Court did address

25   for us was that the supplemental order was not voided in

1    February, and you confirmed that in detail.  You said, I

2    didn't do anything in February, and I can't do it.  I can't

3    do it when the appeal is in process.

4           THE COURT:  I think that's right.

5           MR. JORDAN:  And so, the supplemental order itself

6    has continued through today.  Now, back to my -- my

7    suggestion is that I think the parties have treated your

8    supplemental order as written, and that is that where an

9    asset is rooted in the pre-petition Debtor, and the Court

10   orders that it will be deemed --

11          THE COURT:  No, no, don't put words in there.  I'm

12   not talking about rooted in there.  I just wrote what I

13   wrote.   You're trying to -- you're using case law.

14          MR. JORDAN:  Yes, no, all I was referencing was

15   case law, not this Court, because I'm now confronted with

16   something I may have not even considered.

17          THE COURT:  Mr. Shelby, you thought -- you're

18   telling me -- no, let me not go there.  Let me not go there.

19   Tell me what you're asking.

20          MR. JORDAN:  Well, at this point, I'm asking for

21   some additional time to brief this issue in this position.

22          THE COURT:  I don't have a request for relief.

23          MR. JORDAN:  And then --

24          THE COURT:  In other words, you can file a motion.

25   I can take something up, but I need something.  All I have

1   is a motion confirming that it does not apply to FSS assets,

2   and that's what I can say.  That's what I can confirm.  In

3   other words, I'm just confirming that the automatic stay

4   doesn't apply to FSS assets.  That's the requested relief

5   before me.  I don't need -- if there's somebody that wants

6   me to do something else, you've got to ask for the relief

7   requested, and I'll take it up in due course.  But I don't

8   want to --

9           MR. JORDAN:  Well, you know, I think the Court's

10  confirmed that the supplemental order is still in effect.

11  You've never set it aside, that's number one.

12          THE COURT:  I don't think it's in effect anymore,

13  now that we sit here today on October 1st, when you have a

14  September 25th order.

15          MR. JORDAN:  Operationally, it may not be in

16  effect.  I mean, you're precisely correct that the

17  provisions were for a one-year operation.

18          THE COURT:  But I -- again, I'm -- well, I don't

19  want to confuse dates.  I know that there was a period --

20  well, I can't remember.  I thought we had a hearing after

21  the appeal was over.

22          MR. JORDAN:  We did.  That's the June 5th hearing.

23          THE COURT:  And I think at that hearing, I said --

24  well, I don't remember.  Tell me what you're asking, though,

25  Mr. Jordan?

 1           MR. JORDAN:  Well, at that -- what we were asking

 2    at that hearing --

 3           THE COURT:  No, no, no.  I'm saying, what are you

 4    asking for today?  In other words, you're asking for

 5    supplemental briefing on something.

 6           MR. JORDAN:  Well, actually, that's new, because

 7    the issue has not -- I have not even considered the issue,

 8    and as a result of the Court's --

 9           THE COURT:  I'm surprised by that, to be honest

10    with you, to hear.

11           MR. JORDAN:  Yeah.

12           THE COURT:  Seriously, I'm surprised, because it's

13    362 is 362, and 105 is 105 over non-debtor assets.  I'm --

14    what I can do is enter an order saying the motion is

15    granted, period; the automatic stay imposed in respect that

16    the Jones case does not apply to FSS or any of its assets.

17    Like, I don't want to -- that's the request.  That's what

18    I'm comfortable --

19           MR. JORDAN:  Well, actually the --

20           THE COURT:  -- entering an order for.

21           MR. JORDAN:  -- request was -- in our response,

22    the request was to allow a private sale, cash sale, to

23    individuals on a bid basis, one bid only, and the highest

24    bidder wins.  That's the request that we had, because we

25    know that there are substantial bidders in the wings, and we

1    know that those will not be even considered if the matter is

2    turned over to the Plaintiffs who have -- they've announced

3    multiple times their intention to acquire the assets, which,

4    as the Court recognizes, there was an effort to do it at the

5    lowest price possible with the highest claims possible, and

6    then to destroy the assets.

7            In fact, recently, Mr. Moshenberg is quoted as

8    saying that, "Based upon the appointment of the receiver,

9    it's time to shut it down," and that's what's going to

10   happen.  The value of these assets, the ability of the

11   assets to have value to be applied to even a billion-dollar

12   judgment, a debtor has the right to have a reasonable

13   treatment of his collateral to be applied to the debt that,

14   in both cases, are not yet even final.  The Supreme Court

15   has the writ of cert.  We'll know as a result of the 10th.

16           THE COURT:  Okay.  No.  No, I didn't know.

17           MR. JORDAN:  Oh, okay.  Well, the Supreme Court

18   has a writ of cert.  It'll be heard to the full panel.

19   We've made past the first little obstacle, and the full

20   panel is going to consider it on the 10th.  They project for

21   us that it comes out the following Monday or Tuesday, which

22   ought to be the 14th, so the Supreme Court's going to either

23   make our day or make the argument moot.  So, that is going

24   forward, and with respect then to what we asked for.

25           THE COURT:  Is it going with respect to the

1    Connecticut judgment or the Texas judgment or both?

2              MR. JORDAN:  The Connecticut judgment.  The Court

3    of Appeals has the Texas judgment and --

4              THE COURT:  The Texas Court of Appeals has that

5    judgment?

6              MR. JORDAN:  They have the Texas judgment.

7              THE COURT:  Okay.

8              MR. JORDAN:  And that's the one we discussed in

9    the last hearing where the Plaintiffs appeared and said they

10   wished there was a meaningful appeal, but it didn't mean

11   anything because they'd made a deal with the Connecticut

12   Plaintiffs.  So, those two --

13             THE COURT:  Oh, okay.  Yeah, I remember that.

14             MR. JORDAN:  So, those two matters are still

15   pending, and what I'm asking for in connection with this

16   issue is that we not turn loose, open the gate, as of now,

17   on the supplemental order or on the language deemed until

18   we've had a chance to report back to the Court very

19   promptly.  I mean, I only looked on the Supreme Court's

20   docket to find a case that says that assets that are not

21   property of the estate on the petition date can be deemed

22   property of the estate if it's sufficiently rooted.  Now, my

23   dilemma is this.  I do want time.  This is a total surprise

24   and --

25             THE COURT:  You can't be surprised that I've said

1   that an asset against a dismissed debtor is not property of

2   the estate.

3          MR. JORDAN:  Well, you're giving me a lot more

4   credit than I deserve then, Judge, because quite frankly,

5   you know, like I said, I have in the past dealt with the

6   issues of we're going to deem this property of the estate.

7   Even --

8          THE COURT:  I've also said that parties would be

9   entitled to their collection remedies.  I know I've said

10  that on several occasions.

11         MAN 1:  A lot.

12         THE COURT:  On several occasions, that parties

13  will be able to revert rights, as well as you'd be able to

14  file whatever you wanted in the state court.  Whatever the

15  state court did, the state court did.  I recall, you know,

16  it's --

17         MR. JORDAN:  Well, Judge, you said that, and your

18  memory is good, but the --

19         THE COURT:  Well --

20         MR. JORDAN:  -- language you used was that you can

21  go to state court and exercise whatever rights you have.

22  But I didn't hear that, but I did hear it, because that's

23  been often said by bankruptcy courts, which is, look, this

24  property is in this estate.  You can go to state court and

25  exercise whatever rights you've got, but you don't get to

1 exercise bankruptcy rights in state court.  Just, you can go

2 do what you want to do in state court.  FSS is not in

3 bankruptcy.  You may pursue whatever remedies that you have.

4    THE COURT:  How could someone pursue a remedy if

5 the automatic stay was in effect?

6    MR. JORDAN:  That's right, and that's what I'm

7 arguing.

8    THE COURT:  In other words --

9    MR. JORDAN:  You know, they could pursue a remedy

10 --

11    THE COURT:  But you would have come to me.  That's

12 what I'm saying, you would have come to me, right?  If

13 somebody would have filed anything, any kind of collection

14 action in state court, you would have come to me immediately

15 and said, Your Honor, violation of the automatic stay, and a

16 matter of fact --

17    MR. JORDAN:  We did.

18    THE COURT:  Huh?

19    MR. JORDAN:  We did do that.  The first time that

20 they came back, we were -- first of all, the first time they

21 did it in 2024, we removed the case, and that's in your

22 Court.  The second time they did it, we filed our motion and

23 removed only Alex Jones.  He's the only Debtor.  We left FSS

24 alone.

25    THE COURT:  Why?

```
 1              MR. JORDAN:  Because there's other -- because
 2    there are other things that maybe they claim FSS has or does
 3    or is entitled to.  So, we were never arguing that of any of
 4    the language you made.  You did -- you repeated that the
 5    order is in place, and you repeated that.  You said it in
 6    February and repeated it in June.  And for the sake of it
 7    being in place, we were operating under that order, and I
 8    think everyone else was because --
 9              THE COURT:  I don't think these folks ever agreed
10    that the automatic stay was in effect, right?  There was
11    just a disagreement about the very issue.  The Connecticut
12    families, I'm sure Mr. Kimpler filed a motion to confirm
13    that it wasn't in effect.
14              MR. JORDAN:  Well, in effect, they did agree.
15    There are two exhibits that we have for our presentation
16    today in which it's the motion that they filed for turnover.
17    It all recognized, made findings of the supplemental order,
18    and it provided that the receiver couldn't go get assets
19    unless he got the consent of the Trustee in the bankruptcy
20    court.  And we cited to you the page and line where that is.
21    So, that -- now that has changed.  Subsequent to that, that
22    order is on appeal.  The order appointing the receiver is on
23    appeal.
24              THE COURT:  Texas?
25              MR. JORDAN:  Texas.  Yeah, to the Court of
```

1    Appeals, where the same panel where the other appeal is

2    pending.  And there is then a to-be-entered supplemental

3    order finding that non-pro-tem, that that was a mistake.

4    That's what they claim.  It was in their motion, in the

5    order they proposed, in the order that was entered, that it

6    was subject to the Trustees.

7            And here is the dilemma that I'm having.  I'm

8    trying to figure out how I'm going to brief this.  I've --

9    you know, I've missed things before, so I'm not putting that

10   on the Court.  I --

11           THE COURT:  What is the briefing that you're

12   asking for?  I guess that's what I'm --

13           MR. JORDAN:  Well, this issue is because here's

14   what's happened.  As a result of that language and the case

15   law that will support it, saying, yes, that can be property

16   of the estate, and I've only started the Supreme Court,

17   there has been things that have happened, including our

18   position at risk, that we represented that the supplemental

19   order was still in place, only with the implication that the

20   automatic stay was involved because it was deemed property

21   of the estate.

22           THE COURT:  And that's why I'm trying to avoid

23   anyone saying, in state court.  I don't know what has been

24   said or not said, but I certainly don't want anyone to leave

25   this Court today thinking that I am endorsing in any way any

1  finding that people did anything improperly in a state

2  court.  I mean this as it respects anything you or Mr.

3  Broocks or anybody has said.  It's why I'm purposely not

4  asking those questions, and people cite transcripts, and

5  then they cite portions of transcripts.  I'm just answering

6  a legal question that is presented to me today as to whether

7  the automatic stay applies, and it does not.

8       MR. JORDAN:  Well, actually, what you're being

9  asked to do, which is --

10      MR. KIMPLER:  Your Honor, just one point?

11      THE COURT:  Yeah.

12      MR. KIMPLER:  Thank you.

13      THE COURT:  I will.  And then, folks, I've got a 2

14  o'clock, but go ahead.  Go ahead, Mr. Jordan, and then I'll

15  turn to Mr. Kimpler.

16      MR. JORDAN:  What's being asked today is for you

17  to make a finding that you voided the supplemental order

18  back in February.

19      THE COURT:  I'm just saying I'm entering an order

20  saying the relief requested in this motion is granted to the

21  extent provided herein.  The automatic stay imposed under

22  Section 362 does not apply to FSS or any of FSS assets.

23  That's what I can confirm.

24      MR. JORDAN:  Okay.  Well, I've got 14 days to come

25  back and ask.  If I can come up with an issue that I am

1    hoping the Court hadn't thought of what will help further

2    our position, because what we're really concerned about,

3    have always been concerned about with respect to these

4    assets, is that you -- and we know you -- I mean, you've

5    always said, look, follow the purpose of my order.  Follow

6    what I told you to do.  Well, that never happened.  It

7    didn't happen in the first attempt at an auction, and it

8    didn't happen in the second group of things, including a

9    settlement agreement that gave them -- that they asked for

10   an approved, allowed claim in the Jones estate.  Not just

11   that -- I know FSS, you couldn't do it.  They wanted a $400

12   million allowed claim in the Jones estate for the Texas

13   Plaintiffs.  Allowed claim --

14        THE COURT:  And I couldn't do that.

15        MR. JORDAN:  -- in a settlement.  And you didn't

16   do that.  But what I'm suggesting is that the status and the

17   things that we might have done, had I focused on your

18   intention that deemed  --

19        THE COURT:  It's not my intentions.  It's my

20   words.

21        MR. JORDAN:  It's your words, of course.  Well --

22   yes.  And I did not perceive that deemed property of the

23   estate could never be property of the estate, because at

24   this point I don't quite agree with that conclusion.  I'm

25   not arguing with the Court at all.

```
 1          THE COURT:  Again, I'm just saying, if someone can
 2    point to me to something in 541 that works, I'm more than
 3    happy to -- you can.
 4          MR. BROOCKS:  I think -- again, I can quote you.
 5    In September, when Mr. Wolfshohl asked you for this
 6    September order, he said, we need it because these assets
 7    aren't assets of the estate of Alex Jones.  And you said,
 8    no, it is property of the estate of assets of Alex Jones.
 9    Alex Jones owns the equity interest in FSS, 541, all legal
10    and equitable interest.  All has to mean all.  And you said,
11    that's not my interpretation, that's Congress.  Congress
12    uses the word all.  All means all legal and equitable
13    interest.  And then you said it again.  You said --
14          THE COURT:  That's why I remember that, Mr.
15    Broocks.  I remember that conversation.  I had it with Mr.
16    Wentz.
17          MR. BROOCKS:  But I didn't really give him to you.
18    I just deemed him given to you.
19          THE COURT:  It's what I wrote, Mr. Broocks.  Now,
20    you can argue about that -- well, I'm done arguing about
21    what I wrote.
22          MR. BROOCKS:  Okay.  I'm just saying you said all
23    the assets.
24          THE COURT:  All right.  Okay.  What else are we
25    talking about here?  What else are we talking about?
```

1          MR. JORDAN:  Your Honor, I think that at this

2     stage, that's probably the -- that is probably the

3     conclusion of the hearing.  Again, subject to going back and

4     --

5          THE COURT:  I'm just you whether the automatic

6     stay applies to the Jones asset, to the FSS assets?  The

7     answer is no.  That's what I'm saying today.  I did say

8     before -- I did say, I remember saying, I can't do it

9     because it's on appeal.  But if it comes back to me, I'm

10    going to void the order; that's what I said.  That's what I

11    said.  I was going to void the order because I wanted to

12    make sure that we were clear that I was kind of done with

13    the efforts to try to go sell FSS and all that stuff.

14          I just went back and looked.  It's kind of done on

15    its own.  I don't need to void anything.  I said I would.

16    You asked me, Judge, can you think about it before you do

17    it?  That's the last I remember.  It's kind of just done on

18    its own.  I don't see any legal effect that this order has.

19    This order, one went with two.  Two is gone.  Two expired on

20    September 25, 2025.  I don't -- so, I can't void anything.

21    I can't void an order that I think is already, on its own

22    terms, void.  So, I can't -- so, what I can do is confirm

23    that the automatic stay doesn't apply.

24          And I can tell Mr. Murray to make a decision in

25    October as to what he -- which I asked him to do earlier.  I

1    want an answer on the equity of FSS because, quite frankly,

2    if he wants to sell the equity in FSS, that takes it out of

3    the estate whether he abandons it or not.  It takes it out

4    of the estate one way or the other.  Like, FSS will be

5    middle of November one way or the other.  It's either going

6    to be sold or likely abandoned.  So, we're going to move on

7    with the Jones case.  And I'm trying to find and be as fair

8    as possible to everyone, fair and equitable, not just a fair

9    textual reading of where we are.  Mr. Kimpler, I promise you

10   a word, and then I'm just going to sign the order.

11            MR. KIMPLER:  Your Honor, I'll be --

12            THE COURT:  Go ahead.

13            MR. KIMPLER:  (indiscernible), I disagree with

14   that part.  I just want to cut to the chase.  We think that

15   what you said, what you outlined as an order that you'd be

16   willing to enter today, that is simple, that the automatic

17   stay doesn't apply.  We would recommend that it says that

18   the FSS assets are not property of the estate; nothing more.

19   That's all we need.  I've seen this movie before.  There are

20   -- we have 45-minute colloquies and then people take those

21   transcripts, and they cite them to other Courts.  I think

22   what we really need, what both parties need here is a very

23   simple order.  What you have outlined is completely

24   acceptable to us, and we'd very much appreciate it if you

25   would enter that order.

1          MR. JORDAN:  And, Your Honor, I understand you

2    have a 2 o'clock.  Could we have a five- or 10-minute recess

3    to allow counsel to discuss quickly this development, and --

4          THE COURT:  What is this development?

5          MR. JORDAN:  Well, should I say my memory lapse?

6          THE COURT:  No, no, no, no.  I don't want you to

7    be sorry.  I'm just going to enter an order.  I'll enter my

8    own order.  I got a proposed order, I'll sign it.  I'm not -

9    - I'm not voiding -- in other words, I'm not voiding an

10   order.  I'm being asked -- I was asked to void an order.

11   When I went back and looked at the order, I think the order

12   is on its own as expired on its own terms.  You know, you

13   can't operate the business of FSS anymore, okay.  And I

14   think I've said multiple times, sell the equity if you want.

15   Cash will be king.  I don't want you trying to sell assets

16   anymore.  I've now come back -- before I've asked you to

17   make a determination on the equity, whether you -- what you

18   want to do or abandon it.

19          I'm now asking that there be an answer for

20   purposes of where we are.  And the reason I'm saying that,

21   and I want to be really clear is that this case is a 2022

22   case; it converted to a 7.  But I think in fairness to all

23   parties involved, and that goes to Mr. Jones as well, it is

24   time we do whatever bankruptcy work needs to get done and

25   allow the process to play out in whatever state, federal

1    appellate courts may have jurisdiction to hear those

2    matters.  I think every order that I've written has said

3    that to the extent that nothing that I have signed in any

4    way locks in any amount.

5          State Connecticut courts come back and change the

6    judgment.  That number, nothing in here changes it.  The

7    dischargeability order that I entered, you know, it's easy

8    to track if that portion got knocked out.  Then it's easy to

9    figure out what portion would be non-dischargeable.  State

10   court orders, federal Supreme Court says something.  It just

11   gets really simple.  I'm just -- and I'm not trying to push

12   the issue.  What I'm trying to do is just, folks, it's Free

13   Speech was a '22 Subchapter 5.  And it's a dismissed case,

14   right?

15         It just -- I don't know what rights people have

16   outside of my jurisdiction.  I don't because I don't track

17   it.  And I don't know what people are alleging or saying,

18   and that's kind of -- I shouldn't be in the business of

19   tracking it.  What I can do is just answer the questions

20   that are before me.

21         Mr. Kimpler, you're asking for confirmation that

22   the assets are not property of the estate.  I think I've

23   answered that question, and I said why.

24         MR. JORDAN:  Your Honor, with respect to any order

25   that you're going to enter, I'm assuming that the 14-day

1    stay rule is going to be in place?  You're not going to

2    enter some order that creates an effectiveness before --

3              THE COURT:  I don't think the 14-day rule would

4    even, to my knowledge, even apply, like, for a waiver of

5    what I'm asking for.  I don't even think it comes into play.

6    There's no -- it's just an order confirming that the stay

7    doesn't apply.

8              In other words, this isn't like a sale where -- to

9    answer your question in the affirmative, I'm not -- nothing

10   I'm doing today, you know, kind of changes any deadlines to

11   seek appellate review.

12             MR. JORDAN:  All right.

13             THE COURT:  Okay?  All right, folks, thank you

14   very much.  We're adjourned.  I'll come back for the 2

15   o'clock in about two minutes.

16        (Proceedings adjourned at 1:59 p.m.)

17

18

19

20

21

22

23

24

25

1                     <u>CERTIFICATION</u>

2

3    I certify that the foregoing is a correct transcript from

4    the electronic sound recording of the proceedings in the

5    above-entitled matter.

6

7    *Sonya M. Ledanski Hyde*

8

9

10   Sonya Ledanski Hyde

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  October 3, 2025