**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

In re:

ALEXANDER E. JONES,

      Debtor.

Chapter 7

Case No. 22-33553 (CML)

# EXHIBIT A

(ORDER LIST: 607 U.S.)

TUESDAY, OCTOBER 14, 2025

ORDERS IN PENDING CASES

25M20 ANDERSON, LATISHA V. UNITED STATES

  The motion for leave to file a petition for a writ of certiorari with the supplemental appendix under seal is granted.

25M21 CAMPBELL, ANGELA V. EVERS, TONY, ET AL.

25M22 BAUER, CHRISTOPHER M. V. JOB SERVICE NORTH DAKOTA, ET AL.

25M23 BELTON, KEVIN V. OSBORNE, CLIFFORD, ET AL.

  The motions to direct the Clerk to file petitions for writs of certiorari out of time are denied.

25M24 WENGER, DONALD V. WARREN, JUDGE, ET AL.

  The motion for leave to proceed as a veteran is denied.

25M25 TRAN, THANH C. V. LIBERTY MUTUAL GROUP INC., ET AL.

  The motion for leave to file a petition for a writ of certiorari under seal with redacted copies for the public record is granted.

25M26 SKELLCHOCK, DEREK V. DEAN, JUDGE, ET AL.

  The motion for leave to proceed as a veteran is denied.

25M27 LOGAN, LINDA A., ET AL. V. ANTAYA, HEATHER, ET AL.

  The motion to direct the Clerk to file a petition for a writ of certiorari out of time is denied.

25M28 BOBB, JEREMIAH V. UNITED STATES

  The motion for leave to file a petition for a writ of certiorari with the supplemental appendix under seal is granted.

1

24-621        NRSC, ET AL. V. FEC, ET AL.

              The motion of the Solicitor General for divided argument is

       granted.   The motion of Court-appointed *amicus curiae* and

       intervenors for divided argument is granted.

24-758        GEO GROUP, INC. V. MENOCAL, ALEJANDRO, ET AL.

              The motion of the Solicitor General for leave to participate

       in oral argument as *amicus curiae* and for divided argument is

       granted.

24-820   )    RUTHERFORD, DANIEL V. UNITED STATES
         )
24-860   )    CARTER, JOHNNIE M. V. UNITED STATES

              The motion of petitioners for divided argument is granted.

24-872        HAMM, COMM'R, AL DOC V. SMITH, JOSEPH C.

24-924        HENCELY, WINSTON T. V. FLUOR CORP., ET AL.

              The motions of the Solicitor General for leave to

       participate in oral argument as *amicus curiae* and for divided

       argument are granted.

24-999        PREMIER NUTRITION CORP. V. MONTERA, MARY B.

              The joint motion to hold the petition in abeyance is granted.

24-1287 )     LEARNING RESOURCES, INC., ET AL. V. TRUMP, PRESIDENT OF U.S., ET AL.
        )
25-250  )     TRUMP, PRESIDENT OF U.S., ET AL. V. V.O.S. SELECTIONS, INC., ET AL.

              The motion of Susan Webber, et al. for leave to intervene is

       denied.

25-113        RENTERIA, BREANNA, ET AL. V. NM OFFICE, SUPT. OF INS., ET AL.

25-119        HIGHLAND CAPITAL MANAGEMENT V. NEXPOINT ADVISORS, ET AL.

              The Solicitor General is invited to file briefs in these

       cases expressing the views of the United States.

25-5291       SALDANA, CONSUELO, ET AL. V. CAMPANA, WILLIAM

25-5359       JOYCE, ROBERT V. CONSOL. EDISON CO. OF NY, INC.

25-5589      STEVENS, SHANE V. COLORADO

   The motions of petitioners for leave to proceed *in forma pauperis* are denied.  Petitioners are allowed until November 4, 2025, within which to pay the docketing fees required by Rule 38(a) and to submit petitions in compliance with Rule 33.1 of the Rules of this Court.

### CERTIORARI DENIED

24-965       JUDICIAL WATCH, INC. V. WEBER, CA SEC. OF STATE

24-1084      HOHN, STEVEN M. V. UNITED STATES

24-1173      EVANS HOTELS, LLC, ET AL. V. UNITE HERE! LOCAL 30, ET AL.

24-1207      RICHARDSON, ANGELA S. V. DUNCAN, KRYSTLE R.

24-1262      RDFS, LLC, ET AL. V. FERC, ET AL.

24-1328      UNITED STATES V. BAXTER, KESHON D.

24-7189      HEKEL, HANNAH V. HUNTER WARFIELD, INC.

24-7208      SLATER, CORNELL V. UNITED STATES

24-7240      FERNANDEZ, LUIS V. UNITED STATES

24-7302      ATKINS, STERLING V. BEAN, WARDEN, ET AL.

24-7346      GILLARD, SEAGA E. V. NORTH CAROLINA

25-3         MALCO ENTERPRISES OF NV, INC. V. WOLDEYOHANNES, ALELIGN

25-31        ADAMS, BENJAMIN V. ARNOLD, COMM'R, IN DOC, ET AL.

25-57        ARNOLD, EDWARD R. V. ALLSTATE INSURANCE COMPANY

25-116       RAMLOW, NICHOLAS R. V. MITCHELL, AMANDA M.

25-131       WALTON, DAVID C. L. V. NEHLS, ASHLEY

25-135       FORTENBERRY, KELVIN V. SHACK, ESTHER, ET AL.

25-136       PALARDY, FRANCIS V. AT&T SERVICES INC., ET AL.

25-140       LABUZAN-DELANE, JENNINE V. COCHRAN & COCHRAN LAND, ET AL.

25-142       SANGERVASI, WILLIAM G. V. SAN JOSE, CA, ET AL.

25-143       HARTZELL, REBECCA V. MARANA SCH. DIST., ET AL.

| | |
|---|---|
| 25-147 | POLELLE, MICHAEL J. V. BYRD, CORD, ET AL. |
| 25-155 | PAREMSKY, GENNADY Y. V. INGHAM COUNTY, MI, ET AL. |
| 25-167 | MANSOUR, ALVIN, ET AL. V. NV DEPT. OF BUSINESS & INDUS. |
| 25-172 | MAZZA, MARK, ET UX. V. BANK OF NEW YORK MELLON |
| 25-176 | HEINZ, TRISTRAM V. PHILADELPHIA BUREAU OF ADMIN. |
| 25-182 | WELLS, CURTIS L. V. FUENTES, JAVIER, ET AL. |
| 25-186 | ESTEVIS, ALEJANDRO V. CANTU, IGNACIO, ET AL. |
| 25-200 | GOLPHIN, KEVIN S. V. NORTH CAROLINA |
| 25-205 | COLE, SCHUYLER E., ET AL. V. HONOLULU, HI |
| 25-209 | SPOKOINY, ELIZABETH V. UNIV. OF WA MEDICAL CENTER |
| 25-212 | THAI, ANH T. V. LOS ANGELES COUNTY, CA, ET AL. |
| 25-242 | HOUSTON, TX V. COMMONS OF LAKE HOUSTON, LTD. |
| 25-258 | ZANTE, INC. V. MI DEPT. OF AGRICULTURE |
| 25-263 | POE, CHERI V. NORTHWESTERN MUT. LIFE INS. CO. |
| 25-265 | GALLO, ALEXANDER V. DISTRICT OF COLUMBIA |
| 25-268 | JONES, ALEX E., ET AL. V. LAFFERTY, ERICA, ET AL. |
| 25-270 | KHAN, NAZIR V. MERIT MEDICAL SYS., INC. |
| 25-275 | FROST, CLIFFORD J. V. NESSEL, ATT'Y GEN. OF MI |
| 25-279 | WOOD, MATTHEW V. NEW MEXICO |
| 25-291 | GEORGIA-PACIFIC PROD., ET AL. V. INTERNATIONAL PAPER CO., ET AL. |
| 25-298 | BI-QEM SA DE CV, ET AL. V. TRADE LINKS, LLC |
| 25-304 | KOELEMIJ, KEVIN J. V. DIXON, SEC., FL DOC |
| 25-324 | KLEINHAMMER, RICHARD W. V. CALIFORNIA |
| 25-5004 | HALE, DELANO V. COOL, WARDEN |
| 25-5074 | HORTON, MICHAEL V. GILCHRIST, CAPTAIN, ET AL. |
| 25-5098 | NELSON, ELIZABETH, ET AL. V. SERV. TOWING, INC., ET AL. |
| 25-5243 | BAEZ, KAREN Y. V. SYNECTICS FOR MGMT., ET AL. |
| 25-5245 | CROUCH, ZACHARY C. V. TN DEPT. OF HUMAN SERVICES |

4

25-5246     CLEMONS, LOUIS R. V. TEXAS

25-5254     AMES, XENA V. FED. EXPRESS CORP.

25-5256     GARRETT, LEROY A. V. PDV HOLDING

25-5260     SIFUENTES, DAVID A. V. MICHIGAN

25-5268     SCHWALB, ROBERT L. V. JJ. OF THE APP. CT. OF IL

25-5270     NEWMAN, LAWRENCE, ET UX. V. HERITAGE VILLAGE, ET AL.

25-5272     POWELL, MICHAEL A. V. GUERRERO, DIR., TX DCJ

25-5285     KOGER, FREDERICK V. SAID ISKAN INVESTMENTS, LLC

25-5290     CONNER, STACY L. V. PAXTON, ATT'Y GEN. OF TX, ET AL.

25-5304     LOGGINS, JONATHAN D. V. ALBERT, RONNY, ET AL.

25-5308     GADDY, MICHAEL J. V. PFEIFFER, C., ET AL.

25-5310     MOORE, MAURICE B. V. HEBERT, FORMER JUDGE, ET AL.

25-5314     JUSTICE, THEODORE V. McANGUS GOUDELOCK, ET AL.

25-5316     GU, FEIFEI V. SHER, MICHAEL, ET AL.

25-5317     BRYANT, STEPHEN C. V. ANDERSON, ACTING DIR., ET AL.

25-5320     YOO, HEON J. V. BARKER, BRIAN, ET AL.

25-5321     WIMBERLY, JEFFREY R. V. MICHIGAN

25-5323     JENKINS, CLARENCE B. V. OFFICE OF THE SC GOV., ET AL.

25-5324     LINVILLE, KENNETH A. V. WASHINGTON

25-5325     HASSETT, ROBERT W. V. DELAWARE

25-5326     LANGWORTHY, GENEVA V. SUPREME COURT OF NM

25-5340     MITCHELL, JEFFREY J. V. DOTSON, DIR., VA DOC

25-5349     BRUCE, PAUL V. UPTON, WARDEN

25-5350     CURTIS, MONICA V. JUSTICE COURT OF NV

25-5353     TRAN, HUY T. V. CATES, WARDEN

25-5354     HENDERSON, MICHAEL J. V. BONDI, ATT'Y GEN., ET AL.

25-5355     GIBSON, TOYA V. RIDGEWELLS CATERING

25-5356     OROPEZA, OSCAR V. RIOS, WARDEN, ET AL.

5

25-5360     GOODE, RACHEL V. BISIGNANO, COMM'R, SOCIAL SEC.

25-5364     KAUFFMAN, DAVID R. V. USDC WD PA

25-5374     HAMMONDS, ARTEZ V. ALABAMA

25-5380     CHOW, PETER S. V. UNITED STATES

25-5384     KINES, CHRISTOPHER V. GUERRERO, DIR., TX DCJ

25-5385     ROLLINS, ERIC D. V. TEXAS

25-5402     PLOTKIN, MARTIN G. V. CIR

25-5426     JOHNSON, REGINALD B. V. DIXON, SEC., FL DOC, ET AL.

25-5432     SCOTT, PLEADRO J. V. DIXON, SEC., FL DOC

25-5445     WOODSON, CARLOS L. V. DIXON, SEC., FL DOC

25-5450     WILLIAMS, JOHN T. V. USDC SD NY

25-5504     KESSLER, JUSTIN E. V. UNITED STATES

25-5515     SMITH, JESSIE V. UNITED STATES

25-5517     RODRIGUEZ, JOSHUA V. UNITED STATES

25-5519     HENDERSON, DEMARIO D. V. UNITED STATES

25-5527     JEWELL, DAVID V. DELAWARE

25-5528     VITASEK, ARTHUR L. V. THORNELL, DIR., AZ DOC, ET AL.

25-5536     MADISON, FLOYD V. FLORIDA

25-5538     AMBROSIO-VAIL, EZEQUIEL V. UNITED STATES

25-5540     CONTRERAS-AVALOS, BRAYAN A. V. UNITED STATES

25-5542     BURNS, FRANCIS V. UNITED STATES

25-5545     HOMEDES, MIGUEL A. V. UNITED STATES

25-5548     SCHEXNAYDER, LOUIE M. V. VANNOY, WARDEN

25-5549     AKSENOV, VLADISLAV K. V. UNITED STATES

25-5554     ROSS, MARCUS J. V. UNITED STATES

25-5585     MILLER, ARSELES D. V. DIXON, SEC., FL DOC, ET AL.

25-5606     DOE, JOAN V. BD. OF TRUSTEES UNIV. AR, ET AL.

25-5623     ANDERSON, DEVON J. V. CARVER, WARDEN, ET AL.

25-5628      SHAPIRO, STEPHEN, ET AL. V. HARBOR FREIGHT TOOLS USA, INC.

25-5636      MAYHEW, GORDON M. V. ARIZONA

25-5693      RUBIO, YASMANI G. V. ALEXANDRIA, VA, ET AL.

   The petitions for writs of certiorari are denied.

24-923       SAVE JOBS USA V. DEPT. OF HOMELAND SEC., ET AL.

   The petition for a writ of certiorari is denied.  Justice
Kavanaugh took no part in the consideration or decision of this
petition.

24-985       OHIO V. SMITH, GARRY

   The motion of respondent for leave to proceed *in forma pauperis*
is granted.  The petition for a writ of certiorari is denied.

24-1189      CA STEM CELL TREATMENT, ET AL. V. UNITED STATES

   The motion of Goldwater Institute for leave to file a brief
as *amicus curiae* is denied.  The petition for a writ of
certiorari is denied.

24-1202      DOE, JOHN V. GRINDR INC., ET AL.

   The motion of Public Health Advocacy Institute for leave to
file a brief as *amicus curiae* is denied.  The petition for a
writ of certiorari is denied.

25-41        PETERS, JAN V. COHEN, MALIA M.

   The motion of FK Financial, Inc. for leave to file a brief
as *amicus curiae* is denied.  The petition for a writ of
certiorari is denied.

25-128       KOREAN CLAIMANTS V. DOW SILICONES CORP., ET AL.

   The petition for a writ of certiorari is denied.  Justice
Alito took no part in the consideration or decision of this
petition.

25-5033      LAY, WADE G. V. OKLAHOMA

     The petition for a writ of certiorari is denied.  Justice

Gorsuch took no part in the consideration or decision of this

petition.

25-5295      LETTIERI, DAVID C. V. DEPT. OF JUSTICE, ET AL.

     The motion of petitioner for leave to proceed *in forma

pauperis* is denied, and the petition for a writ of certiorari is

dismissed.  See Rule 39.8.  As the petitioner has repeatedly

abused this Court's process, the Clerk is directed not to accept

any further petitions in noncriminal matters from petitioner

unless the docketing fee required by Rule 38(a) is paid and the

petition is submitted in compliance with Rule 33.1.  See *Martin*

v. *District of Columbia Court of Appeals*, 506 U. S. 1 (1992)

(*per curiam*).

**HABEAS CORPUS DENIED**

25-5645      IN RE DERRICK L. JOHNSON

25-5661      IN RE RONALD FREEMAN

25-5664      IN RE AMY B. ANDERSON

25-5699      IN RE MARK WOODS

25-5703      IN RE STEVEN R. WYCOFF

     The petitions for writs of habeas corpus are denied.

25-5719      IN RE FLENOID GREER

     The motion of petitioner for leave to proceed *in forma

pauperis* is denied, and the petition for a writ of habeas corpus

is dismissed.  See Rule 39.8.

**MANDAMUS DENIED**

25-175       IN RE ANDY DESTY

25-5300      IN RE ONOFRE SERRANO

25-5307        IN RE SARA MURRAY

      The petitions for writs of mandamus are denied.

25-5255        IN RE ALEX ANDERSON

      The petition for a writ of mandamus and/or prohibition is denied.

## PROHIBITION DENIED

25-5296        IN RE JOSHUA I. MARTINEZ

      The petition for a writ of prohibition is denied.

## REHEARINGS DENIED

24-6496        IN RE MAESTRO M. FAISON

24-6629        CLEVELAND, GEORGE, ET AL. V. SC DEPT. OF SOCIAL SERVICES

24-6832        BOYD, MICHAEL L. V. LAY, WARDEN, ET AL.

24-7003        HARRIS, HALE R. V. DIXON, SEC., FL DOC

24-7047        IN RE SEFE A. ALMEDOM

      The petitions for rehearing are denied.

Cite as: 607 U. S. \_\_\_\_ (2025)                    1

SOTOMAYOR, J., dissenting

# SUPREME COURT OF THE UNITED STATES

### STACEY IAN HUMPHREYS, PETITIONER *v.* SHAWN EMMONS, WARDEN

#### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 24–826.   Decided October 14, 2025

The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN and JUSTICE JACKSON join, dissenting from the denial of certiorari.

In 2007, a Georgia jury convicted Stacey Humphreys of murder and robbery, and sentenced him to death. It did so only after one of the jurors, during *voir dire*, misleadingly omitted critical details of her own experience as a victim of a similar crime and then bullied the other jurors into voting for death based on that prior experience. The extreme juror misconduct in this case illustrates the harms of an ironclad no-impeachment rule that prevents consideration of juror testimony to undermine a death verdict. Because our review of that question is buried in a procedural thicket that could be clarified by the Court of Appeals, I would at the very least vacate and remand for the Eleventh Circuit to supply the needed clarity on the important issues raised by this case. I therefore respectfully dissent from the denial of certiorari.

Humphreys was charged with murdering two women inside a construction company's model home, during which he forced both to undress and robbed them at gun point. The State of Georgia sought the death penalty. During *voir dire*, juror Chancey stated that she had previously been the victim of an attempted rape and robbery in her home, by a convicted murderer who had escaped from a mental institution. She swore under oath, however, that nothing

about that prior experience would prevent her from being a fair juror. She explained that her attacker never physically harmed her because she had escaped the building before he entered. She also swore that she would be able to "honestly consider" all three sentencing options: life with parole, life without parole, and death. App. to Pet. for Cert. 72a. As later revealed, these statements directly contradicted what she told other jurors during deliberations.

During the penalty phase deliberations, she disclosed to the other jurors that her attacker had in fact assaulted her while she was naked in her bed. In light of that experience, the jury foreperson later reported, Chancey "'had her mind made up'" from "'day one'" of trial that Humphreys "'deserve[d] to die.'" *Id.*, at 71a.

On the second day of deliberations, "even when the other eleven jurors . . . voted for life without parole" in an internal poll, "Chancey would not even consider it." *Id.*, at 71a–72a. At that point, the foreperson wrote a note to the trial court explaining that the jurors were "'unable to come to a *unanimous* decision on either death or life imprisonment without parole as a sentence.'" *Id.*, at 9a. Chancey, believing the note as written would result in a mistrial, revised the note to say that the jurors were "'*currently* unable to come to a unanimous decision.'" *Id.*, at 9a–10a. The court instructed the jury to continue deliberating.

Chancey then "snapped." *Humphreys* v. *Sellers*, No. 1:18–cv–02534 (ND Ga., Sept. 19, 2018), ECF Doc. 42–7, p. 443. She yelled, cursed, and screamed that she would "stay [t]here till forever if" that is what it took "for [Humphreys] to get death." App. to Pet. for Cert. 9a. She threw the victims' photos across the table and demanded, "'[D]o you want this to happen to someone you know?'" *Ibid.* She reminded the jurors of the similar details of her own attack, and told them that "'they had to reach a unanimous decision or [Humphreys] would be paroled,'" which was not true under Georgia law. *Ibid.* She then levied personal

SOTOMAYOR, J., dissenting

attacks against the jurors and refused to engage in any debate.

Perhaps unsurprisingly, jury deliberations almost completely broke down. Screaming could be overheard from the courtroom. One juror "'took a swing'" at Chancey and punched a hole in the wall. *Ibid*. Jurors were seen crying on several occasions. A juror later recalled that "it was as if an evil force took over . . . Chancey." ECF Doc. 33–12, p. 13. The foreperson even wrote a note asking to be removed from the jury because of the "'hostile nature of one of the jurors.'" App. to Pet. for Cert. 12a. The court instead gave an *Allen* charge and instructed the jury to deliberate further. See *Allen* v. *United States*, 164 U. S. 492 (1896). It also rejected defense counsel's renewed motion for a mistrial. On the third morning of deliberations, the jury returned a unanimous verdict of death.

The above facts constitute a likely violation of Humphreys's Sixth Amendment right to an impartial jury. The problem for Humphreys is that these facts came to light largely through juror affidavits and juror testimony obtained after the trial. The Georgia courts held this evidence inadmissible under Georgia's no-impeachment rule, which generally prohibits the use of juror testimony to impeach a verdict, even in death penalty cases. See App. to Pet. for Cert. 325a (citing *Spencer* v. *State*, 260 Ga. 640, 643, 398 S. E. 2d 179, 184 (1990)). The no-impeachment rule, however, is not an absolute shield, and in extreme cases it must give way to constitutional guarantees.

A form of the no-impeachment rule is followed in every State and in the federal system, and it serves important purposes. The rule "gives stability and finality to verdicts" and "promotes full and vigorous discussion by providing jurors with considerable assurance that after being discharged they will not be summoned to recount their

4                HUMPHREYS *v.* EMMONS

SOTOMAYOR, J., dissenting

deliberations." *Pena-Rodriguez* v. *Colorado*, 580 U. S. 206, 218 (2017).*

The rule, however, is not without limits. This Court has long recognized that the rule has exceptions in the "gravest and most important" cases. *McDonald* v. *Pless*, 238 U. S. 264, 268–269 (1915). Indeed, there "may be cases of juror bias so extreme that, almost by definition, the jury trial right has been abridged." *Warger* v. *Shauers*, 574 U. S. 40, 51, n. 3 (2014). "If and when such a case arises," courts should "consider whether the usual safeguards are or are not sufficient to protect the integrity of the process." *Ibid.* For example, one such exception to the no-impeachment rule is in an "egregious cas[e]" in which a "juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant." *Pena-Rodriguez*, 580 U. S., at 225, 229. In those situations, "blatant racial prejudice . . . must be confronted . . . despite the general bar of the no-impeachment rule" because such prejudice is "antithetical to the functioning of the jury system." *Id.*, at 229.

This case illustrates another "extreme" situation in which the no-impeachment rule likely should have yielded because the juror's extreme misconduct threatened Humphreys's Sixth Amendment right to an impartial jury. *Warger*, 574 U. S., at 51, n. 3.

The "usual safeguards" were plainly insufficient "to protect the integrity of the process." *Ibid.* For instance, the "suitability of an individual for the responsibility of jury service" is typically "examined during *voir dire*." *Tanner* v. *United States*, 483 U. S. 107, 127 (1987). *Voir dire*,

———————

*\**Pena-Rodriguez* involved Colorado's no-impeachment rule, which largely tracked the version of the rule set forth in Federal Rule of Evidence 606(b). See 580 U. S., at 218. Rule 606(b) is analogous in all relevant respects to Georgia's no-impeachment rule. See App. to Pet. for Cert. 36a. In any event, Georgia's interpretation of its own evidentiary rules cannot abridge an individual's federal constitutional rights.

SOTOMAYOR, J., dissenting

however, cannot meaningfully screen out an individual like Chancey, who both misleadingly omitted crucial details about her prior assault when questioned and then undertook bad-faith tactics in the jury room by leveraging that experience to coerce her peers. Similarly, jurors' behavior is normally "observable by the court, by counsel, and by court personnel" during the trial, and jurors "may report inappropriate juror behavior to the court *before* they render a verdict." *Ibid.* Here, the trial court declined to investigate the possibility of inappropriate behavior despite hearing screaming and crying from the jurors and receiving the foreperson's note reporting the "'hostile nature of one of the jurors'" and requesting to be removed from the jury. App. to Pet. for Cert. 12a.

Importantly, Chancey's misconduct appears to have singlehandedly changed the verdict from life without parole to death. That places this case squarely among the "gravest and most important" cases in which the no-impeachment rule should yield to avoid "'violating the plainest principles of justice.'" *McDonald*, 238 U. S., at 269. Acknowledging an exception here is essential because there is a heightened "need for reliability in the determination that death is the appropriate punishment in a specific case." *Woodson* v. *North Carolina*, 428 U. S. 280, 305 (1976) (plurality opinion); see *California* v. *Ramos*, 463 U. S. 992, 998–999 (1983) ("The Court . . . has recognized that the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination"). "It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." *Gardner* v. *Florida*, 430 U. S. 349, 358 (1977) (plurality opinion).

The proper application of the no-impeachment rule to Humphreys's underlying juror-misconduct claim, however, is not directly presented in Humphreys's petition to this

SOTOMAYOR, J., dissenting

Court. That is because, despite learning about Chancey's misconduct after the trial, Humphreys's lawyers failed to raise a juror-misconduct claim on direct appeal. New post-conviction counsel eventually raised the claim on state habeas review. The Supreme Court of Georgia held that the claim was thus procedurally defaulted and that the default was not excused by the ineffectiveness of Humphreys's appellate counsel on direct appeal. The court addressed the no-impeachment rule in the context of its ineffective-assistance-of-counsel analysis by holding that Humphreys was not prejudiced by his lawyers' failure to raise the claim because the underlying evidence was barred by the rule.

When Humphreys sought review of his juror-misconduct claim in federal court, his case took a further unexpected turn. Like the Supreme Court of Georgia, the Eleventh Circuit rejected the claim as procedurally defaulted. In so doing, the court seemingly deferred under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) to the state court's holding that Humphreys's default could not be excused by ineffective assistance of counsel. See App. to Pet. for Cert. 34a (suggesting that the standard of review for the juror-misconduct claim requires "apply[ing] AEDPA deference on top of *Strickland* [v. *Washington*, 466 U. S. 668 (1984)] deference"); *id.*, at 74a (Rosenbaum, J., concurring) (explaining that the panel's decision was required by a "faithfu[l] appl[ication of] AEDPA's standard of review").

By its terms, however, AEDPA deference applies only to a "claim that was adjudicated on the merits in State court proceedings." 28 U. S. C. §2254(d). AEDPA says nothing about the cause-and-prejudice inquiry that federal habeas courts undertake in deciding whether the state prisoner can "overcome the prohibition on reviewing procedurally defaulted claims." *Davila* v. *Davis*, 582 U. S. 521, 528 (2017); see *Coleman* v. *Thompson*, 501 U. S. 722, 750 (1991);

SOTOMAYOR, J., dissenting

*Wainwright* v. *Sykes*, 433 U. S. 72, 90–91 (1977). Nor has this Court held that AEDPA deference applies when a federal court considers whether the ineffectiveness of counsel establishes "cause" to excuse the procedural default. In fact, most courts of appeals to consider the issue have found that such deference has no place in the federal cause-and-prejudice inquiry. See *Fischetti* v. *Johnson*, 384 F. 3d 140, 154–155 (CA3 2004); *Hall* v. *Vasbinder*, 563 F. 3d 222, 236–237 (CA6 2009); *Visciotti* v. *Martel*, 862 F. 3d 749, 769 (CA9 2016); but see *Richardson* v. *Lemke*, 745 F. 3d 258, 273 (CA7 2014).

Humphreys seeks review in this Court only on the issue whether the Eleventh Circuit correctly applied AEDPA deference to the cause-and-prejudice inquiry, not on the merits of the underlying juror-misconduct claim. In response, respondent does not contend that AEDPA deference should apply. Instead, he points to ambiguities in the Eleventh Circuit's opinion and argues that the Eleventh Circuit never applied AEDPA deference to the procedural-default question. See Brief in Opposition 13–16. Under these circumstances, the Court's reluctance to grant plenary review is understandable because the decision below may not be implicated by the question presented. Nevertheless, the court should vacate and remand and seek clarification from the Eleventh Circuit about the basis for its decision.

In a capital case with a potentially meritorious juror-misconduct claim, mere confusion about a lower court's reasoning does not justify closing the door to relief altogether. Nor is so harsh an outcome necessary here. Faced with a similarly "unclear" lower court opinion just last year, this Court remanded a capital case for further consideration, recognizing that the "ultimate assessment" of the petition would "depend on the basis for the Eleventh Circuit's decision." *Hamm* v. *Smith*, 604 U. S. 1, 2–3 (2024)

8                    HUMPHREYS *v.* EMMONS

SOTOMAYOR, J., dissenting

(*per curiam*).  The Court should have done the same thing in this case.

Tragically, the Court denies review instead, allowing a death sentence tainted by a single juror's extraordinary misconduct to stand.  Because it is at best "unclear" whether the Eleventh Circuit applied the correct standard of review in declining to adjudicate Humphreys's claim on the merits, I would vacate and remand the case for further clarification rather than leave Humphreys's juror-misconduct claim caught in a web of procedural barriers.

To avoid a similar result in future cases of extreme juror misconduct, courts considering such claims *ab initio* should carefully weigh the aims of the no-impeachment rule against the constitutional requirement to ensure the impartiality of a death-empaneled jury.  Applying the no-impeachment rule too reflexively and restrictively risks a "systemic loss of confidence in jury verdicts, a confidence that is a central premise of the Sixth Amendment trial right," *Pena-Rodriguez*, 580 U. S., at 225, and that is all the more imperative when the difference between life and death is at stake.  I respectfully dissent from the denial of certiorari.

Cite as: 607 U. S. \_\_\_\_ (2025)  1

Statement of GORSUCH, J.

# SUPREME COURT OF THE UNITED STATES

### CORRINE MORGAN THOMAS, ET AL. *v.* HUMBOLDT COUNTY, CALIFORNIA, ET AL.

#### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 24–1180.  Decided October 14, 2025

The petition for a writ of certiorari is denied.

Statement of JUSTICE GORSUCH respecting the denial of certiorari.

In *Minneapolis & St. Louis R. Co.* v. *Bombolis*, 241 U. S. 211, 217 (1916), this Court held that the Seventh Amendment's civil jury trial right is not enforceable against the States. Petitioners ask us to reconsider that decision. But a number of "vehicle" problems make it unlikely that we could do so in this case. See Brief in Opposition 21–44. Accordingly, I agree with the Court's decision to deny review. At the same time, I do not doubt that *Bombolis* warrants a second look.

As petitioners observe, *Bombolis* is something of a relic. There, the Court dismissed as "strange" the notion that the Seventh Amendment—or, for that matter, *any* of the Bill of Rights—might be enforceable against the States. 241 U. S., at 217–218. But what once might have seemed strange almost goes without saying today. In the years since *Bombolis*, this Court has "shed any reluctance" about the idea that the Fourteenth Amendment "incorporate[s]" against the States many of the liberties enshrined in the Bill of Rights. *McDonald* v. *Chicago*, 561 U. S. 742, 764 (2010).

To be sure, debates exist around the edges. There are, for example, those who hold that the Fourteenth Amendment incorporates provisions of the Bill of Rights through its Due Process Clause, while others believe that the Privileges or Immunities Clause supplies the truer source of authority

for the job.  See generally *Timbs* v. *Indiana*, 586 U. S. 146, 157 (2019) (GORSUCH, J., concurring).  Similarly, some have argued that the Fourteenth Amendment selectively incorporates only fundamental or deeply rooted aspects of the Bill of Rights, while others have suggested that, under that test or any other, the Fourteenth Amendment renders all of the first eight Amendments enforceable against the States.  Compare *Wolf* v. *Colorado*, 338 U. S. 25, 27 (1949) (overruled by *Mapp* v. *Ohio*, 367 U. S. 643 (1961)), with *Adamson* v. *California*, 332 U. S. 46, 74–75 (1947) (Black, J., dissenting).

But whatever one's position on matters like those, it is hard to imagine how the Seventh Amendment might not be among those rights the Fourteenth Amendment secures against the States.  Under this Court's contemporary case law, States must respect the First Amendment's Establishment Clause, the Second Amendment's right to bear arms, the Fifth Amendment's protections against self-incrimination and its Takings Clause, the Eighth Amendment's Excessive Fines Clause; the list goes on.  See, *e.g.*, *McDonald*, 561 U. S., at 764, n. 12; *Timbs*, 586 U. S., at 150 (majority opinion).  On what account should the Seventh Amendment be treated differently?

Surely, those who founded our Nation considered the right to trial by jury a fundamental part of their birthright.  See *SEC* v. *Jarkesy*, 603 U. S. 109, 121 (2024).  So much so that they cited its deprivation at the hands of colonial authorities as one of the reasons for breaking ties with England.  *Ibid.*  After the Revolution, too, the new States promptly "restored the institution . . . to its prior prominence."  *Parklane Hosiery Co.* v. *Shore*, 439 U. S. 322, 340–341 (1979) (Rehnquist, J., dissenting).  "Indeed, [t]he right to trial by jury was probably the only one universally secured by the first American state constitutions."  *Id.*, at 341 (internal quotation marks omitted).  If the Federalists and Anti-Federalists disagreed about anything when it came to

the civil jury trial right, it may have only been about whether the right was "*the* most important of all individual rights, or simply one of the most important rights." K. Klein, The Myth of How to Interpret the Seventh Amendment Right to a Civil Jury Trial, 53 Ohio St. L. J. 1005, 1010 (1992) (emphasis in original).

Nor had much changed by the time of the Fourteenth Amendment's adoption. The right to a civil jury trial remained so deeply rooted that perhaps 97% of Americans at the time lived in States that guaranteed the right. See S. Calabresi & S. Agudo, Individual Rights Under State Constitutions When the Fourteenth Amendment Was Ratified in 1868, 87 Texas L. Rev. 7, 116 (2008). In fact, the civil jury trial right may have enjoyed even more robust protection in American States than various other rights this Court has deemed fit for incorporation. See *Timbs*, 586 U. S., at 152 (35 out of 37 States expressly forbade excessive fines at the time of the Fourteenth Amendment's adoption); *McDonald*, 561 U. S., at 777 (22 of the 37 States "explicitly protected the right to keep and bear arms" in 1868).

That *Bombolis* lingers on the books not only leaves our law misshapen, it subjects ordinary Americans to a two-tiered system of justice. Take just one example. When a federal agency accuses someone of fraud and seeks civil penalties, the Seventh Amendment guarantees that individual the right to have the case heard by a jury of his peers—not by other agency officials who work side by side with those bringing the charges. See *Jarkesy*, 603 U. S., at 120–121. But, thanks to *Bombolis*, state and local agencies pursuing similar charges and similar relief sometimes claim that they are free to dispense with the hassle of proving their case to a jury. For those in the government's crosshairs, that difference is no costless affair. No less than at the founding, civil juries today play a critical role in checking governmental overreach, holding public officials ac-

4    THOMAS *v.* HUMBOLDT COUNTY

Statement of GORSUCH, J.

countable, and ensuring a fair hearing for those who come before our courts.

*Bombolis* may survive today, but this Court should confront its Seventh Amendment holding soon.  A right "'of such importance,'" one that "'occupies so firm a place in our history,'" deserves no less.  *Jarkesy*, 603 U. S., at 121 (quoting *Dimick* v. *Schiedt*, 293 U. S. 474, 486 (1935)).

Cite as: 607 U. S. \_\_\_\_ (2025)          1

Statement of ALITO, J.

# SUPREME COURT OF THE UNITED STATES

### JONATHAN LEE, ET AL. *v.* POUDRE SCHOOL DISTRICT R–1

#### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

No. 25–89.   Decided October 14, 2025

The petition for a writ of certiorari is denied.

Statement of JUSTICE ALITO, with whom JUSTICE THOMAS and JUSTICE GORSUCH join, respecting the denial of certiorari.

I concur in the denial of certiorari because petitioners do not challenge the ground for the ruling below. But I remain concerned that some federal courts are "tempt[ed]" to avoid confronting a "particularly contentious constitutional questio[n]": whether a school district violates parents' fundamental rights "when, without parental knowledge or consent, it encourages a student to transition to a new gender or assists in that process." *Parents Protecting Our Children, UA* v. *Eau Claire Area School Dist.*, 604 U. S. \_\_\_, \_\_\_–\_\_\_ (2024) (ALITO, J., dissenting from denial of certiorari) (slip op., at 1–2) (citing *Troxel* v. *Granville*, 530 U. S. 57, 70 (2000) (plurality opinion)). Petitioners tell us that nearly 6,000 public schools have policies—as respondent allegedly does—that purposefully interfere with parents' access to critical information about their children's gender-identity choices and school personnel's involvement in and influence on those choices. Pet. for Cert. 24. The troubling—and tragic—allegations in this case underscore the "great and growing national importance" of the question that these parent petitioners present. *Parents Protecting Our Children*, 604 U. S., at \_\_\_ (slip op., at 1).