IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>ALEXANDER E. JONES,<br><br>Debtor. | ) <br> ) <br> ) Chapter 7 <br> ) <br> ) Case No. 22-33553 (CML) <br> ) <br> ) <br> ) |

**THE SANDY HOOK FAMILIES' OPPOSITION TO NOTICE OF ABANDONMENT**

The Connecticut Families[1] and the Texas Families[2] (the "Sandy Hook Families" or "Families"), as creditors and parties in interest in the above-captioned case file this opposition to the *Trustee's Notice of Proposed Abandonment* [Docket No. 1254] (the "Abandonment Notice") filed by Christopher Murray, the chapter 7 trustee appointed in the above-captioned case (the "Trustee"). In support of this opposition, the Sandy Hook Families respectfully state as follows:

**Preliminary Statement**

1. The Trustee's proposed abandonment of the estate's equity interests in Free Speech Systems LLC ("FSS" and the "FSS Interests") is premature. While the Sandy Hook Families recognize that the Trustee may ultimately need to abandon the FSS Interests—and agree that this Chapter 7 case should **not** be prolonged by even one day on account of such interests—there is no reason to abandon them now. To the contrary, abandoning the FSS Interests now will likely harm the estate's creditors, forego potential recoveries, and lead to even further delays and litigation.

---

[1] The "Connecticut Families" are Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, and Erica Ash.
[2] The "Texas Families" are Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and the Estate of Marcel Fontaine.

2.	Initially, continuing to hold the FSS Interests does not drain the estate's resources. The Trustee has not made nor proposed any distributions to creditors, recently commenced three separate lawsuits for the benefit of creditors that remain in their early stages, and is therefore unlikely to be in a position to close this chapter 7 case in the coming months.  Given these facts, there is no urgency to abandoning the FSS Interests now and the continued ownership of the FSS Interests is not delaying the administration of this case.

3.	There are, however, several reasons to delay any potential abandonment of the FSS Interests.

4.	*First*, the Sandy Hook Families have appointed a receiver over FSS's assets in the state court action styled *Neil Heslin and Scarlett Lewis v. Alex E. Jones and Free Speech Systems, LLC*, Cause No. D-1-GN-18-001835 before the 261st Judicial District Court of Travis County, Texas (the "Texas State Court," and such action, the "State Court Action").  On August 13, 2025, the Texas State Court appointed Gregory S. Milligan as the receiver of FSS (the "Receiver"). While currently subject to a temporary stay pending Jones's appeal of the receivership order, the Sandy Hook Families expect that the Receiver will soon commence a liquidation of FSS's assets. In connection with the Receiver's sale of FSS assets, the Sandy Hook Families believe that a buyer would also be willing to purchase the FSS Interests from the Trustee.  Abandoning the FSS Interests now, however, will preclude a buyer of the FSS assets from also purchasing the FSS Interests.

5.	*Second*, there is no question what Jones would do with the FSS Interests if they are abandoned to him:  he will file FSS for bankruptcy ***again*** for the purpose of staying the State Court Action and the Receiver and further delaying the Families' collection efforts.  That is precisely what Jones has attempted to do by incorrectly arguing in three different courts that FSS is ***already***

protected by the automatic stay. Abandoning the FSS Interests now will simply put the parties—and the Court—back in the position they were in 18 months ago.

6. The Sandy Hook Families understand that, at some point in the future, the Trustee may need to abandon the FSS Interests in order to complete his administration of the chapter 7 case. But that point is not now, and the Trustee has not identified any urgency that would require abandonment of the FSS Interests in the coming weeks. The Trustee bears the burden of showing that abandonment is in the best interests of the estate under section 554(a) of the Bankruptcy Code. The Trustee has not carried that burden here.

## Opposition

**I.  The Trustee Has Not Met Its Burden to Show the FSS Interests Should Be Abandoned.**

7. Section 554(a) of the Bankruptcy Code provides that the Trustee may abandon the FSS Interests only if it is either "burdensome to the estate" or "of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The FSS Interests do not cause the estate to incur any additional fees or expenses, nor do they otherwise burden the estate. The Sandy Hook Families also believe the FSS Interests can be sold for value in parallel with the Receiver's sale of FSS's assets for the benefit of Jones's creditors. Accordingly, the Trustee has not met his burden to show that the FSS Interests should be abandoned. *See In re Pilz Compact Disc, Inc.*, 229 B.R. 630, 635 (Bankr. E.D. Pa. 1999) ("Abandonment should only be approved when property either is a 'burden' to the estate or of inconsequential value and benefit to the estate . . . issues upon which the trustee, as the moving party, has the evidentiary burden."(internal citation omitted)).

8. *First*, retaining the FSS Interests does not burden the estate in any material way. The FSS Interests do not utilize estate resources or cause the estate to incur additional costs and

expenses. Retaining the FSS Interests will not, for example, result in increased property taxes, insurance costs, or administrative burden. *See, e.g.*, 5 Collier on Bankruptcy ¶ 554.02 (16th ed. 2025) (discussing typical grounds for abandonment). If, for example, the Trustee continued to hold the FSS Interests until such time that he proposed to close the chapter 7 case, it would not result in any material decrease in the assets available for distribution to creditors.

9. Moreover*,* retaining the FSS Interests will not result in any delay to the administration of Jones's chapter 7 case. The Trustee is not preparing to make final distributions to creditors, and can expect Jones to object to any attempt to allow the Texas Families' claims until every possible appeal has been exhausted. Additionally, the Trustee recently filed three separate lawsuits to recover property for the benefit of the estate, each of which remain pending before the Court.[3] It is therefore unlikely that the Jones chapter 7 case will be closed in the next few months.

10. Accordingly, the FSS Interests do not "burden" the estate and the Trustee has provided no argument to the contrary in his Abandonment Notice.

11. *Second*, the FSS Interests may have value, and in any event, provide a benefit to the Jones chapter 7 estate. The Sandy Hook Families expect that the optimal time to sell the FSS Interests will be in conjunction with the Receiver's sale of FSS assets in the State Court Action. However, the Receiver's progress has been halted by Jones's arguments that (i) FSS is protected by the automatic stay in this chapter 7 case, which this Court recently confirmed is incorrect, and (ii) the Connecticut Judgments[4] will be overturned on appeal, which efforts the Supreme Court recently denied. Accordingly, the Sandy Hook Families expect that the temporary stay will soon

---

[3] *See Murray* v. *AEJ Austin Holdings, LLC*, Adv. Proc. No. 25-03419 (Bankr. S.D. Tex. June 13, 2025); *Murray* v. *RCGJ, LLC,* Adv. Proc. No. 25-03420 (Bankr. S.D. Tex. June 13, 2025); *Murray* v. *Jones*, Adv. Proc. No. 25-03421 (Bankr. S.D. Tex. June 13, 2025).

[4] The "Connecticut Judgments" refer to those judgments defined in the *Connecticut Families' Notice of United States Supreme Court Denial of Certiorari* [Docket No. 1268].

- 4 -

be lifted, the Receiver will commence a sale of FSS assets and the proceeds will be applied to reduce their judgments. In connection with such sale, the Families anticipate that the FSS Interests could also be purchased, either directly by the Receiver (enabling the Receiver to sell the FSS Interests and FSS assets together to a single buyer), or by a third-party purchaser that also acquires the FSS assets. Until such time that the Trustee is ready to close the chapter 7 case, the Trustee should permit the State Court Action to progress to determine whether there is an actionable offer to acquire the FSS Interests in conjunction with a potential sale of FSS's assets.

12. Finally, the Sandy Hook Families are working to organize a bid for the FSS Interests in the event that no actionable offer materializes in the State Court Action or the Trustee is authorized to abandon such Interests before an offer is made in the State Court Action. While the Sandy Hook Families need additional time to properly diligence a potential purchase, they expect to be able to engage substantively with the Trustee on a purchase of the FSS Interests in the coming weeks.

13. Putting aside whether the FSS Interests could be sold for value, it is nonetheless true that the FSS Interests are independently of "benefit to the estate." 11 U.S.C. § 554(a). In particular, as discussed *infra,* it is likely that Jones would cause FSS to file for bankruptcy if the FSS Interests reverted to him. A subsequent FSS bankruptcy will harm the Jones chapter 7 estate. *First*, it will delay the Sandy Hook Families' recovery from FSS, which will, in turn, delay and/or preclude the reduction of the same liabilities of Jones in this case. *Second*, the Trustee and its counsel will almost certainly expend resources monitoring and participating in any such bankruptcy case. As Jones has recently argued, "FSS assets and financial survival are wholly dependent and inextricably intertwined with the Jones Chapter 7 Estate as to be considered a single

entity."[5]  In short, a competing FSS bankruptcy case is **not** in the best interests of this chapter 7 estate or its creditors, who unanimously oppose abandonment of the FSS Interests at this time.

14. In sum, abandonment of the FSS Interests at this time is premature, and the Court should not approve the Trustee's request.  *See generally In re Jolly Props. Inc.*, No. 09-30872-H4-7, 2009 WL 2460865, at *4-5 (Bankr. S.D. Tex. Aug. 11, 2009) (denying motion to abandon equity as premature where additional time was needed to determine if the equity was of inconsequential value and beneficial or burdensome to the estate).

**II.     The FSS Interests Should Not Be Abandoned to the Debtor.**

15. "An order compelling abandonment is the exception, not the rule. Abandonment should only be compelled in order to help the creditors by assuring some benefit in the administration of each asset."  *In re K.C. Mach. & Tool Co.*, 816 F.2d 238, 246 (6th Cir. 1987).

16. Jones has proven time and time again that he will seek to delay and prolong this case to prevent the Sandy Hook Families from collecting on their over one billion dollars' worth of judgments against him and FSS for as long as possible.  Jones has employed various strategies over the past three years to frustrate the Families' efforts to collect any of what they are owed, including (most recently) arguing that the automatic stay in the ***Jones*** case protects non-debtor FSS.[6]  Jones continues his efforts in this Court as well by filing several motions to reconsider this Court's clear and unequivocal orders regarding FSS's assets.[7]  This Court recently rejected Jones's

---

[5] *Motion for Reconsideration and Rehearing of this Court's Order Confirming That FSS Assets are Not Property of the Estate of Alexander E. Jones and Not Subject to the Automatic Stay [Dkt. No. 1251] and Renewed Request for the Pending Relief of a Private Sale of the FSS Assets for Cash [Dkt. No. 1131, 1248]* [Docket No. 1259], at ¶ 52.

[6] *See Response to the Sandy Hook Families' Emergency Joint Motion for Entry of An Order Confirming That FSS Assets Are Not Subject to the Automatic Stay (As Property of the Alexander E. Jones Chapter 7 Estate)* [Docket No. 1248], at 8-9.

[7] *See Motion for Reconsideration and Rehearing of This Court's Order Confirming that FSS Assets Are Not Property of the Estate of Alexander E. Jones and Not Subject to the Automatic Stay [Dkt. No. 1251] and Renewed Request for the Pending Relief of a Private Sale of the FSS Assets for Cash [Dkt. No. 1131, 1248]* [Docket No. 1259]; *Motion for*

- 6 -

argument, which finds no support in the Bankruptcy Code. And on October 14, 2025, the Supreme Court of the United States denied Jones's *writ of certiorari* from the Connecticut Judgment, clearing the way for the Sandy Hook Families to continue to pursue their collection action in Texas State Court.

17. The practical result of allowing the Trustee to abandon the FSS Interests would be to set this case back by nearly 18 months. "[P]roperty abandoned under [§] 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed." *In re Derosa-Grund*, 544 B.R. 339, 384 (Bankr. S.D. Tex. 2016) (quoting *Kane v. Nat'l Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008)). If the FSS Interests were to revert to Jones, the Sandy Hook Families have no doubt that Jones would immediately seek to file FSS for bankruptcy once again to obtain the protection of the automatic stay that he claims already protects FSS. While the Sandy Hook Families would seek to dismiss such a repeat filing as patently in bad faith, the automatic stay would apply while such litigation is resolved, causing yet further delay. In short, a second FSS bankruptcy filing would cause further gridlock in the parties' respective positions and forestall any progress in the Sandy Hook Families' collection efforts after several years of delay.

18. Additionally, Jones argues that the Sandy Hook Families are stayed from enforcing their non-dischargeable claims against him personally, even with respect to assets that are *not* part of his chapter 7 estate. *See Notice of Partial Removal of a Civil Action*, *Heslin v. Jones*, Case No. 25-03753 [Docket No. 1], at ¶ ¶ 22-23. According to Jones, because a discharge order has not been entered in this chapter 7 case, he continues to be shielded by the automatic stay under section 362(c) of the Bankruptcy Code from all claims, regardless of whether the claim seeks recovery

---

*Reconsideration of this Court's Determination that no Auction of Free Speech Systems will be Conducted by the Jones Chapter 7 Estate [sic]* [Docket No. 1131].

from property of the chapter 7 estate.[8] Thus, Jones will argue (and has argued) that, once the FSS Interests are abandoned to him, the Sandy Hook Families cannot pursue any remedies against Jones to collect from such FSS Interests, notwithstanding the Families' nearly $1 billion in non-dischargeable claims.

19. To avoid this result and preserve value for creditors, this Court should exercise its powers under 11 U.S.C. § 554(c) and § 105(a) to bar the Trustee from abandoning the FSS Interests at this time since abandonment would directly benefit Jones by revesting him with the power to shield FSS from the Families' collection efforts. *In re Derosa-Grund*, 544 B.R. 339 (Bankr. S.D. Tex. 2016) is instructive. There, an individual debtor sought to reopen a chapter 7 case to schedule an asset that the court concluded would be used by the individual debtor solely to pursue vexatious litigation. To stop the debtor from abusing the judicial process, the court held:

> This Court will do even more to ensure that the Debtor's persistent, pernicious, perfidy towards the judicial system stops. It is possible—although unlikely—that the Trustee, after investigating the history of the Treatment and the litigation over this asset, concludes that the Treatment either has no value or is of inconsequential value. Stated differently, it is possible that the Trustee concludes that he cannot administer the Treatment for the benefit of the Estate. Under this scenario, the normal result would be that the Treatment would be abandoned to the Debtor pursuant to § 554(c) once the case was closed. . . . Although the Debtor is barred under *Reed* from receiving any benefit from the Trustee's administration of the Treatment, the Debtor could still wind up with title to this asset revesting in his name. Such a result would accord him the standing that he needs to file yet another lawsuit against New Line once again alleging that New Line has wrongfully appropriated the Treatment and needs to pay him damages for so doing.
>
> . . .
> Fortunately, the Code allows this Court to prevent this scenario from occurring. Section 554(c) sets forth that property of the estate that a Trustee abandons is deemed abandoned to the debtor unless "the court orders otherwise." Given the Debtor's perjurious conduct in this case, and his penchant for filing multiple suits in the District

---

[8] The failure to enter a discharge order in this case appears to be an administrative oversight, and the Sandy Hook Families support the Court entering such order, subject to the Court's prior non-dischargeability rulings, to confirm that the stay no longer protects Jones personally with respect to non-estate property.

Court, this Court, as part of its decision to reopen this case, will "order otherwise" by barring the Trustee from ever abandoning the Treatment. If necessary, the Court will close this case with the Treatment simply remaining part of the Estate. The Court will take this action using its powers under § 105(a). Whatever else happens, this Debtor will never again be able to have a scintilla of an argument that he has standing to bring suit on the grounds that he has an interest in the Treatment and that therefore he is entitled to damages for its misappropriation. It is time to put a stop to the Debtor's vexatious and fraudulent litigation tactics.

*Id.* at 383–84 (internal citations omitted).

20. This Court should follow Judge Bohm's lead in *re Derosa-Grund* and find that, under Section 554(c), cause exists for this Court to prevent the FSS Interests from reverting to Jones at a time when such interests will be used to further frustrate the Families' legitimate collection activities on fully final judgments. *See also Richards* v. *Marshack*, Case No. 8:23-cv-01973-SB, 2025 WL 885250, at *2 (C.D. Cal. Mar. 18, 2025) (affirming Bankruptcy Court's denial of abandonment where the "trustee conceded that [the debtor's] claims are of inconsequential value to the estate but opposed abandonment to prevent [the debtor] from pursuing frivolous and harassing litigation"); *In re Sakon*, Case No. 19-21619 (JJT), 2023 WL 4030079, at *3 (Bankr. D. Conn. June 14, 2023) (denying request to abandon because "[n]either this Court nor the Trustee will or should endorse what appears to be nothing more than a wasteful, frivolous, speculative, and ill-conceived gambit to fuel a proliferation of lawsuits").

### Conclusion

21. The Sandy Hook Families have no interest in delaying this case any longer than necessary. However, the Sandy Hook Families believe that abandonment of the FSS Interests is premature, and it is appropriate for the estate to continue holding such interests to determine if a buyer emerges in connection with the State Court Action and to prevent the Debtor from utilizing the FSS Interests to further frustrate the Sandy Hook Families' collection efforts.

Dated: October 17, 2025

| | |
|---|---|
| */s/ Jennifer J. Hardy* | */s/ Ryan E. Chapple* |
| **WILLKIE FARR & GALLAGHER LLP** | **CAIN & SKARNULIS PLLC** |
| Jennifer J. Hardy | Ryan E. Chapple |
| State Bar No. 24096068 | State Bar No. 24036354 |
| 600 Travis Street | 303 Colorado Street, Suite 2850 |
| Houston, TX 77002 | Austin, TX 78701 |
| Telephone: (713) 510-1766 | Telephone: (512) 477-5000 |
| Fax: (713) 510-1799 | Fax: (512) 477-5011 |
| E-mail: jhardy2@willkie.com | E-mail: rchapple@cstrial.com |

**WILLKIE FARR & GALLAGHER LLP**
Stuart R. Lombardi (admitted *pro hac vice*)
Deanna Drenga (admitted *pro hac vice*)
787 Seventh Avenue New York, NY 10019
Telephone: (212) 728-8000
Fax: (212) 728-8111
E-mail: slombardi@willkie.com
ddrenga@willkie.com

**KOSKOFF KOSKOFF & BIEDER, PC**
Alinor C. Sterling (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone: (203) 336-4421
E-mail: asterling@koskoff.com

**LAWSON & MOSHENBERG PLLC**
Avi Moshenberg
State Bar No. 24083532
801 Travis Street, Suite 2101, #838
Houston, TX 77002
Telephone: (713) 449-9644
E-mail: avi.moshenberg@lmbusinesslaw.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Kyle J. Kimpler (admitted *pro hac vice*)
Paul Paterson (admitted *pro hac vice*)
Daniel S. Sinnreich (admitted *pro hac vice*)
Vida J. Robinson (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
E-mail: kkimpler@paulweiss.com
      ppaterson@paulweiss.com
      dsinnreich@paulweiss.com
      virobinson@paulweiss.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
Jarrod B. Martin
State Bar No. 24070221
600 Travis Street, Suite 5600
Houston, TX 77002
Telephone: (713) 576-0388
Fax: (713) 576-0301
E-mail: jbmartin@bradley.com

*Co-Counsel to the Connecticut Families*

*Co-Counsel to the Texas Families*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing instrument was filed and served on all persons entitled to receive notice via operation of this Court's CM/ECF system on October 17, 2025.

                                                */s/ Jennifer J. Hardy*
                                                Jennifer J. Hardy