**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 7** |
| | § | |
| **ALEXANDER E. JONES,** | § | **Case No. 22-33553 (CML)** |
| | § | |
| **Debtor.** | § | |
| | § | |
| | § | |

**SUMMARY COVERSHEET TO THE FIFTH INTERIM FEE APPLICATION**
**OF JONES MURRAY LLP, AS BANKRUPTCY COUNSEL FOR CHAPTER 7**
**TRUSTEE, CHRISTOPHER R. MURRAY, FOR ALLOWANCE OF COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD**
**FROM AUGUST 1, 2025 THROUGH AND INCLUDING JANUARY 31, 2026**

| | | |
|---|---|---|
| **Name of Applicant:** | Jones Murray LLP | |
| **Applicant's Role in Case:** | Bankruptcy Counsel for the Chapter 7 Trustee, Christopher R. Murray | |
| **Date Order of Appointment Signed:** | July 30, 2024 [Order at DE 794] | |
| | **Beginning of Period** | **End of Period** |
| **Time period covered by this Applicatio** | 08/01/2025 | 01/31/2026 |
| **Time period(s) covered by prior Applications** | 06/14/2024 | 07/31/2025 |
| **Total amounts awarded in all prior Applications** | | $1,186,929 |
| **Total fees requested in this Application and in all prior Applications** | | $1,343,121 |
| **Total fees requested in this Application** | | $167,042 |
| **Total professional fees requested in this Application** | | $167,042 |
| **Total actual professional hours covered by this Application** | | 232.7 |
| **Average hourly rate for professionals** | | $718 |
| **Total paraprofessional fees requested in this Application** | | $0 |
| **Total paraprofessional hours covered by this Application** | | $0 |
| **Average hourly rate for paraprofessionals** | | n/a |
| **Reimbursable expenses sought in this Application** | | $0 |
| **Application Cost (not included in above fees)** | | $0 |
| **Total of other payments paid to secured claimants** | | $21,042 |

| | |
|---|---|
| **Total of other payments paid to administrative claimants** | $3,640,174 |
| **Estimated Total for distribution to priority unsecured creditors** | Unknown |
| **Estimated percentage dividend to priority unsecured creditors** | Unknown |
| **Estimated total for distribution to general unsecured creditors** | Unknown |
| **Estimated percentage dividend to general unsecured creditors** | Unknown |
| **Receipts to date in Chapter 7** | $4,772,191 |
| **Disbursements to date in Chapter 7** | $3,661,215 |
| **Current balance in the Trustee's accounts** | $1,110,976 |

15623963

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | § |
| | §   **Chapter 7** |
| **ALEXANDER E. JONES,** | § |
| | §   **Case No. 22-33553 (CML)** |
| **Debtor.** | § |
| | § |
| | § |

**FIFTH INTERIM FEE APPLICATION**
**OF JONES MURRAY LLP, AS BANKRUPTCY COUNSEL FOR CHAPTER 7**
**TRUSTEE, CHRISTOPHER R. MURRAY, FOR ALLOWANCE OF COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD**
**FROM AUGUST 1, 2025 THROUGH AND INCLUDING JANUARY 31, 2026**

> **This application seeks an order that may adversely affect you. If you oppose the application, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the application and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the application at the hearing.**
>
> **Represented parties should act through their attorney.**

**TO THE HON. CHRISTOPHER M. LOPEZ,**
**UNITED STATES BANKRUPTCY JUDGE:**

Jones Murray, LLP ("***JM***" or the "***Applicant***"), as Bankruptcy Counsel for the Chapter 7 Trustee, Christopher R. Murray (the "***Trustee***"), files this *Fifth Interim Application for Payment of Compensation and Reimbursement of Expenses* ("***Application***") for the period from August 1, 2025 through and including January 31, 2026 (the "***Application Period***"), and respectfully represents as follows:

## JURISDICTION

1.     JM submits this Application pursuant to section 330 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rule 2016 of the Federal Rules of Bankruptcy Procedures (the "***Bankruptcy Rules***"), and Rule 2016-1 of the Bankruptcy Local Rules (the "***Local Rules***").

2.     The Court has jurisdiction over the Application pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. § 1408.

## RELIEF REQUESTED

3.     JM requests that the Court enter an order (i) allowing JM's compensation for professional and paraprofessional services to the Trustee rendered during the Application Period in the amount of **$167,042.00**; and (ii) award and order to be paid to JM the balance of any such fees and costs paid from funds available in the Debtor's estate. JM does not seek reimbursement of expenses in this interim application but reserves the right to seek them in a final application.

## BACKGROUND

**A.  Bankruptcy Case Background**

4.     On July 29, 2022, Free Speech Systems, LLC ("***FSS***") filed its voluntary petition for relief under chapter 11 subchapter V of the Bankruptcy Code (the "***FSS Case***").

5.     On December 2, 2022 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (prior to the Conversion Date, the "***Jones Chapter 11 Case***", and after the Conversion Date, the "***Jones Chapter 7 Case***").  The Debtor is an employee of FSS.  100 percent of the outstanding membership interests in FSS are owned by the Debtor's bankruptcy estate.

6. On December 13, 2022, the United States Trustee for Region 7 (Southern and Western Districts of Texas) (the "*U.S. Trustee*") appointed the Official Committee of Unsecured Creditors in the Jones Chapter 11 Case pursuant to Bankruptcy Code section 1102(a)(1).

7. The Debtor continued managing his assets as debtor and debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code until the Court entered its *Order Converting Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code* [Docket No. 708] on June 14, 2024 (the "*Conversion Date*").  On June 21, 2024, the Court entered an order dismissing the FSS Case [Case No. 22-60043, Docket No. 956] (the "*Dismissal Order*"), while retaining exclusive jurisdiction over several adversary proceedings and the approval of professional fees and expenses, as supplemented by the Supplemental Dismissal Order [Docket No. 1021] On the Conversion Date, the U.S. Trustee appointed Christopher R. Murray as the Chapter 7 Trustee in the Jones Chapter 7 Case.

**B.  JM Retention and Fees**

8. On July 3, 2024, Trustee filed the *Application to Employ Jones Murray LLP as General Bankruptcy Co-Counsel for the Chapter 7 Trustee* [Docket. No. 755], which the Court approved on July 30, 2024 [Docket No. 794].

9. On July 30, 2024, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Trustee* [Docket No. 793] (the "*Interim Compensation Order*").

10. On December 10, 2024, the Court entered the Order Granting First Interim Fee Application [DE 981] and JM was awarded fees of $427,773.00 and reimbursement of expenses of $5,442.62.

11. On March 11, 2025, the Court entered the Order Granting Second Interim Fee Application [DE 1112] and JM was awarded fees of $471,659.00 and reimbursement of expenses of $2,806.78.

12. On June 18, 2025, the Court entered the Order Granting Third Interim Fee Application [DE 1195] and JM was awarded fees of $130,977.50 and reimbursement of expenses of $1,455.30.

13. On October 10, 2025, the Court entered the Order Granting Fourth Interim Fee Application [DE 1264] and JM was awarded fees of $145,669.50 and reimbursement of expenses of $1,145.12.

14. This is JM's fifth interim fee application. During the Application Period, JM filed one monthly fee statement for August 2025, for $29,972.00 in fees and no expenses, and on which the Trustee paid $23,977.60, or 80% pursuant to the Interim Compensation Order.

15. Given the decline in fees incurred during the intervening period, JM elected to forego monthly fee statements from September 2025 through January 2026, and instead seeks compensation through this interim application. Therefore the Trustee seeks approval of total fees incurred during the Application Period of $167,042.00 and payment of the only the unpaid amount of those fees in the total amount of $143,064.40.

16. The following table summarizes fees by professional during the Application Period:

| Professional | Hours | Fees |
|---|---|---|
| Erin Jones | 185.1 | $142,290.00 |
| Jacqueline Chiba | 47.6 | $24,752.00 |

17. The fees and expenses requested are reasonable and all amounts requested were for actual and necessary services rendered on behalf of the Trustee.

16.     JM reserves the right to request additional compensation for the Application Period to the extent that it is later determined that time or disbursement charges for services rendered or disbursements incurred during such time period have not yet been submitted.

18.     No agreement or understanding exists between JM and any other entity for sharing of any compensation or reimbursement in this case.

19.     JM has provided the information required by the U.S. Trustee's Guidelines and the Interim Compensation Order.

20.     JM has served as general bankruptcy co-counsel to the Trustee and, in that capacity, has rendered legal services for the benefit of the Trustee and the Debtor's estate.

## STANDARDS RELEVANT TO AWARDING REASONABLE COMPENSATION

21.     Section 330 of the Bankruptcy Code authorizes the Court to award JM reasonable compensation for its actual and necessary services rendered and reimbursement of its actual and necessary expenses incurred in the rendering of services as special counsel to the Trustee.  Section 330 provides:

(a)(1)   After notice to the parties in interest and to the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103:

(A)     reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person or attorney and by any paraprofessional person employed by any such person; and

(B)     reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

22.     This Fee Application substantiates the total amount that JM seeks for fees and expenses in accordance with each element of the customary standards applied to fee applications.

These standards are set forth in (i) Bankruptcy Rule 2016 and (ii) *In re First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir. 1977), *cert. denied*, 431 U.S. 904 (1977).

23.     In *First Colonial*, the Fifth Circuit adopted the following twelve factors to apply to the determination of awards of attorneys' fees in bankruptcy cases: (i) time and labor required; (ii) the novelty and difficulty of the questions; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the professional due to acceptance of the case; (v) the customary fee; (vi) whether the fee is contingent or fixed; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *First Colonial*, 544 F.2d at 1298-99. These factors were taken from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), a non-bankruptcy case, and are commonly referred to as the "*Johnson* factors." The original *Johnson* factors, as embraced by *First Colonial,* remain applicable to the determination of reasonableness of fees awarded under the Bankruptcy Code. *See* 15 King, *Collier on Bankruptcy*, ¶ 330.04[3] at 330-35 to 330-41. A majority of the *Johnson* factors are now codified under Bankruptcy Code Section 330(a). *Id.*

24.     The Fifth Circuit has rejected the "hindsight" or "material benefit" standard that was originally set forth in *In re Pro-Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir. 1998). In its place, the Fifth Circuit enunciated a new, prospective standard based on whether the services of counsel were reasonably likely to benefit the estate at the time such services were rendered. *See In re Woerner*, 783 F.3d 266, 276 (5th Cir. 2015).  All services rendered by JM satisfy the *Woerner* standard because they were reasonably likely to benefit the estate at the time rendered.

**<u>NATURE AND EXTENT OF SERVICES PROVIDED BY JM</u>**

25.     JM classified all services performed for which compensation is sought in six (6) categories.  JM attempted to divide its services rendered to the Trustee in these bankruptcy cases into appropriate categories.  However, because certain services may relate to more than a single category, services pertaining to one category may be included in another category.  Copies of JM's monthly fee statements are attached hereto.

26.     JM expended 232.7 hours of time to provide legal services during the Application Period.  Professional fees totaled $167,042.00.

17.     The following table summarizes fees by project category:

| Category | Hours | Fees |
|---|---|---|
| Asset Analysis and Recovery | 32.3 | $24,905.00 |
| Asset Disposition | 80.4 | $61,213.50 |
| Case Administration | 59 | $44,144.00 |
| Claims Administration and Objections | 3.4 | $2,635.00 |
| Fee/Employment Applications. | 10.1 | $5,787.50 |
| Other Contested Matters | 47.5 | $28,357.00 |

**A.  Asset Analysis and Recovery**

27.     The majority of time billed by JM during the Application Period in this category related to the ongoing evaluation of the Debtor's non-exempt assets, including real property, personal property (vehicles and watches), intellectual property assets, business interests, litigation claims and book royalty interests. Services rendered in this category included but were not limited to: (i) evaluation and negotiation regarding the Debtor's proposal to compromise regarding a vehicle and watch in connection with unused but unclaimed exemptions; (ii) ongoing analysis of book royalty reconciliation, including communications with the Debtor's literary agent and

publisher regarding historical and current royalty payments; (iii) evaluation of the limited vesting of FSS assets in the bankruptcy estate for purposes of sale and related Rule 60 issues; (iv) review and analysis of pleadings filed by the Debtor related to issues of ownership and control of FSS assets; (v) analysis of the receivership order entered in state court and its effect on the administration of bankruptcy estate assets; (vi) review of sale of firearms and related schedules and docket entries; (vii) waterfall analysis updates and claims analyses; (viii) strategy sessions with the Trustee regarding administration of personal assets including abandonment of certain assets; (ix) responding to inquiries of various persons; and (x) general Trustee legal team work sessions and strategy discussions regarding all of the foregoing.

**B.  Asset Disposition**

28.     This category primarily involved disposition of the Debtor's non-exempt real property located in Austin, Texas (the "Rental Property"), the turnover of FSS cash to the receiver, and the resolution of the state court receivership. Services rendered in this category included but were not limited to: (i) preparing the Rental Property for auction, including review of sale orders, notices to tenant, and coordination with the retained auctioneer; (ii) addressing a squatter at the Rental Property, including research into the identity of the squatter, preparation of an expedited motion to enforce the sale order and show cause, coordination with law enforcement, and ongoing communications with the auctioneer regarding the effect on the sale process; (iii) review and revision of the purchase and sale agreement for the Rental Property, including tax proration issues; (iv) closing issues on the sale of the Rental Property, including lease amendments and extensions of closing dates; (v) review of and response to the families' objection to abandonment of assets; (vi) extensive review of and response to the Debtor's motion to reconsider regarding the order confirming no stay, including review of all citations to the record, preparation of a Rule 11 letter,

and drafting the Trustee's response; (vii) negotiation and drafting of a proposed order regarding turnover of FSS cash; (viii) ongoing conferences with counsel for the state court receiver regarding the status of the receivership and pending state court appeals; (ix) meetings with the receiver in Austin, including travel; (x) review of the court's order authorizing the sale of the Rental Property, the Tranzon employment order, and related obligations of the Trustee in connection with consummation of the sale; and (xi) evaluation of issues relating to remaining assets and completion of estate administration.

## C. Case Administration

29.     Administrative matters included but were not limited to: (i) Trustee legal team meetings regarding workflows, pending projects, and case strategy; (ii) responding to information inquiry, including extensive research into the background of the request, the scope of the mandate referenced therein, and preparation of the Trustee's response; (iii) review and analysis of pending state court appeals, including the petition for certiorari to the United States Supreme Court and its denial; (iv) tax-related issues, including communications regarding tax returns and employment of the Trustee's accountant; (v) evaluation and response to the Debtor's motion to transfer venue; (vi) review of the Rule 60(b) motion regarding the supplemental dismissal order; (vii) insurance policy review for the Rental Property; (viii) responding to inquiries from creditors and other parties; and (ix) communications with chapter 11 professionals regarding status of their fee claims.

## D. Claims Administration and Objections

30.     Limited services in this category involved ongoing administration of claims, including communications regarding auction expenses, the status of motions to pay expenses, and issues relating to cash transfers, allocation, and disbursements. Services rendered in this category

also included conferences with the Trustee regarding concepts for global resolution and status of pending projects.

## E. Employment/Fee Applications

31.    JM prepared (i) its Fourteenth and Fifteenth Monthly Fee Statement [DE 1228, 1238, incorporated herein for all purposes]; (ii) fee statements for other retained professionals, including N&N Forensics and TPS West; and (iii) Certificate of No Objection for JM's Fourth Interim Fee Application. Work in this category also included related communications with professionals and the Trustee.

## F. Litigation/Other Contested Matters

32.    Several contested matters required advice and representation of the Trustee during the Application Period, including (i) review of partial removal pleadings relating to the state court case and appointment of a receiver, including identifying factual inaccuracies and issues relating to the estate; (ii) review and analysis of the motion to transfer venue and representations made therein; (iii) review of answers filed in adversary proceedings and motions to withdraw the reference; (iv) preparation of Trustee's response to the motion to withdraw the reference and reservation of rights in Adversary Nos. 25-03420 and 25-03421; (v) preparation of the expedited motion to enforce the sale order and request for hearing to show cause regarding the squatter at the Rental Property; (vi) preparation for and attendance at the hearing on the families' emergency motion to confirm no stay; (vii) extensive review of the Debtor's written objection to the families' joint emergency motion regarding no stay; (viii) supplementary legal research on receivers, including the resolution between bankruptcy estates and receivership estates regarding disputed assets and interests; (ix) comprehensive legal research and preparation of a legal brief analyzing trustee obligations, with focus on the treatment of government and regulatory entities and

discovery obligations regarding third parties in bankruptcy cases; and (x) review and analysis of various state court dockets and appellate filings.

## ADDITIONAL STANDARDS FOR AWARDING OF ATTORNEYS' FEES

### A.   NOVELTY AND DIFFICULTY OF LEGAL PROBLEMS INVOLVED

33.   The first *Johnson* factor examines the degree of novelty and difficulty of the issues encountered by JM.  With respect to the matters described herein, numerous difficult and complex legal problems have been addressed and considered by JM, all of which have required knowledge of the application of the Bankruptcy Code, the Bankruptcy Rules, state and federal law, and court decisions interpreting the same.

### B.   CUSTOMARY FEE

34.   The next relevant factor to be considered is the reasonable hourly rate by which the reasonable number of hours expended by JM are to be multiplied. Subsumed in this analysis are the following guidelines, as noted in *Johnson*:  the customary fee charged by the applicant, awards in similar cases, the level of skill necessary, the amount involved, the results obtained, the reputation of the professional and the undesirability of the case.

35.   JM's hourly billing rates are computed at the rates JM regularly charges its hourly clients.

36.   The hourly rates charged by JM are also lower than or commensurate with the customary fees charged by professionals of similar experience, reputation and abilities in this community, as well as those rates charged regionally and nationally. Additionally, the hourly rates charged by JM are consistent with the amount involved in these cases, the results obtained by JM, and the level of skill necessary to perform the work. Accordingly, the hourly billing rates charged by JM are reasonable.

**C.      SKILL REQUIRED FOR PERFORMANCE OF LEGAL SERVICES**

37.      The number of difficult issues and matters addressed in these cases has required a high degree of skill and expertise.  JM's attorneys, with varying levels of experience and seniority, have been used effectively and efficiently to perform the tasks assigned to them and have provided valuable and effective assistance to the Trustee. A thorough understanding of the Bankruptcy Code and Bankruptcy Rules together with other state and federal law was blended with business expertise to assist the Trustee. In addition, multiple issues in these bankruptcy cases, including, but not limited to, the dismissal of the FSS Case, ongoing litigation related to the FSS Case and the Jones Case, the potential sales of Jones and FSS, potential litigation relating to transfers to the Debtor and insiders, potential litigation relating to claimed exemptions, and the evaluation of certain trusts set up by Jones or for which Jones is the trustee, have required additional expertise from JM's attorneys. The compensation requested by JM is consistent with the compensation awarded in other cases of similar size and complexity.

**D.      RESULTS OBTAINED**

38.      JM's services in this case have assisted the Trustee in his efforts to maximize the value of the estates and efficiently administer these cases. These cases have been handled in a professional and cost-effective manner.  The requested compensation is reasonable in view of the time expended, the parties involved, and the results obtained in these cases.

**E.      EXPERIENCE, REPUTATION, AND ABILITY OF JM**

39.      JM's attorneys, over many years, have appeared throughout the United States providing legal representation to trustees, debtors, secured creditors, unsecured creditors, and creditors' committees in proceedings under the Bankruptcy Code. Further, partners of JM, including those who have provided legal services in the instant cases, have for many years actively

participated in leadership positions in various professional organizations and bar associations, and have written for local and national publications and spoken at local, state and national institutes for continuing legal education in the area of bankruptcy, creditors rights, restructuring, and fiduciary litigation.  JM's attorneys are experienced in all aspects of bankruptcy matters, possess a high level of expertise, and have an excellent reputation in the business and legal communities. Furthermore, JM has particular experience in the areas of insolvency, workouts and corporate reorganization, and the representation of trustees in bankruptcy proceedings.

F.      CONTINGENT NATURE OF FEES AND UNDESIRABILITY OF CASE

40.     No contingent fees are requested in these cases.

G.      TIME LIMITATIONS IMPOSED BY THE CASE

41.     The time demands of this representation have, at times, been significant for JM but JM has worked quickly, diligently, and efficiently to address the serious challenges faced by the Debtor's estate within the Application Period.

42.     These fees and costs were necessary for the proper and successful administration of the bankruptcy cases.  JM made every effort to keep all fees and costs to a minimum.

43.     At all times covered by this Fee Application, JM diligently fulfilled its duty as bankruptcy counsel for the Trustee. All services rendered by JM benefitted the estates at the time that such services were rendered. Services performed by JM throughout these cases were done in a professional, skilled, and expeditious manner, requiring substantially less time than would have been required by counsel with less experience. Every action of JM was taken to reduce the legal hours expended and matters not demanding the services of senior attorneys were assigned to junior associates, or paralegals.

44.     The above narrative portion of this Application is primarily intended to serve as a summary recapitulation of the major areas of JM's activities and responsibilities. The exhibits attached hereto as **Exhibit 1** provide detailed time entries describing the acts taken and services performed by JM on behalf of the Trustee during these cases.

**WHEREFORE**, JM requests that the Court enter the proposed order and grant such other relief as may be just and appropriate.

Dated:  March 17, 2026.

Respectfully Submitted**,**

**JONES MURRAY LLP**

By:     */s/ Erin E. Jones*
Erin E. Jones
Texas Bar No.: 24032478
JONES MURRAY LLP
602 Sawyer St., Suite 400
Houston, Texas 77007
Telephone: (832) 529-1999
Facsimile: (832) 529-3633
erin@jonesmurray.com

*Co-Counsel for the Chapter 7*
*Trustee, Christopher R. Murray*

### CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in the case on March 17, 2026.

*/s/ Erin E. Jones*
Erin E. Jones